James R. Condo (#005867)
Amanda C. Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Telephone: (602) 382-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

Attorneys for Defendants C. R. Bard, Inc. and
Bard Peripheral Vascular, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' NOTICE OF COMMENTS REGARDING PROPOSED CASE MANAGEMENT ORDER REGARDING RULES, POLICIES, PROCEDURES, GUIDELINES RELATING TO ESTABLISHING COMMON BENEFIT FEE AND EXPENSE FUND** |

On November 6, 2015, the plaintiffs' leadership in this MDL filed a proposed case management order to establish a fund for common benefit fees and expenses. At first glance, one would assume that such an order (which governs how the lead plaintiffs' attorneys will be compensated for their work in the MDL) would only be of concern to the plaintiffs' counsel, and that the defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") have little standing to complain about the order. However, experience has shown that such orders have long-term implications in MDL proceedings,

in that they often adversely impact both plaintiffs represented by attorneys who are not part of the leadership structure and defendants such as Bard.

Because of its concern about the future impact of a common benefit order in this litigation, Bard submits these comments on the proposal submitted by the plaintiffs' leadership for the court's consideration. Bard's principal concerns are twofold. First, the order proposed by the plaintiffs is overly sweeping in the scope of the fund they envision, and excessive in the rate utilized to calculate the fund. Second, the proposed order seeks to impose affirmative obligations on the defendants that are overly onerous. For those reasons, Bard respectfully requests that the court consider modifying and limiting certain aspects of the compensation structure and process suggested by the plaintiffs.

## I.   SCOPE AND AMOUNT OF THE FUND

Although widely utilized in MDL proceedings, the concept of a common fund had its genesis in class action litigation. A number of scholars have criticized the expansion of the concept to the MDL context. *See* Charles Silver and Geoffrey P. Miller, The Quasi-Class Action Method of Managing Multi-District Litigations: Problems and a Proposal, at p. 13 (March 3, 2009)[1] ("[I]n MDLs, the common fund doctrine is a misfit."). When utilized in an MDL, a common fund assessment on attorneys who do not participate in the leadership structure functions as a sort of "tax" on those attorneys, reducing the fee they contractually agreed upon with their clients. *See* William B. Rubenstein, On What a "Common Benefit Fee" Is, Is Not, and Should Be, 3 Class Action Att'y Fee Dig. 87, 89 (2009), attached as Exhibit "A." It has been Bard's experience that the opportunity to achieve reasonable settlements will be impaired if the recovery of that "tax" – caused by the mandatory common fund assessments – is sought from the defendants in the settlement negotiation process. That often serves as a real impediment to the resolution of many claims as an MDL proceeds.

---

[1] NYU Law and Economics Research Paper No. 09-09; U of Texas Law, Law and Econ Research Paper No. 147. Available at SSRN: http://ssrn.com/abstract=1352646 or http://dx.doi.org/10.2139/ssrn.1352646.

2

Bard therefore has a keen interest in ensuring that any common benefit fund established in this litigation be narrowly constructed, so as to limit as much as possible the scope of the "tax" imposed. The fund proposed by the plaintiffs here, however, is unusually expansive. First, the plaintiffs' proposal, if adopted, would provide several attorneys a "windfall" for work previously accomplished prior to the formation of this MDL. In addition, the rate of the assessment proposed by the plaintiffs is excessive compared to the percentages used in most MDLs.

### A. Compensation for Pre-MDL Work

The plaintiffs' proposal would broadly compensate five firms for work performed over the last three years. (The plaintiffs refer to those firms as "Consortium Attorneys".) Bard has been unable to find any precedent for such a sweeping recovery for legal work performed prior the formation of an MDL. In fact, in the vast majority of instances, a common benefit order in an MDL expressly limits the recovery to work performed after the MDL has been established.[2] In other instances, an MDL court has not categorically

---

[2] *See, e.g.*, *In re: Benicar (Olmesartan) Prods. Liab. Litig.*, Case No. 1:15-md-2606 (MDL No. 2606), CMO No. 3 [Dkt. No. 21] at p. 11 (D.N.J. May 22, 2015) ("The first time and expense report, due July 15, 2015, will be cumulative for the hours expended and expenses incurred during this MDL litigation up to and including June 30, 2015."); *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, Case No. 1:14-cv-1748 (MDL No. 2545), CMO #16 [Dkt. No. 486] at p. 4 (N.D. Ill. Nov. 23, 2014) ("Only time and expenses incurred after the entry of CMO #4 by this Court appointing Plaintiffs' Leadership on July 31, 2014 (plus any time and expense incurred by those appointed to leadership in complying with the terms of CMO #1) shall be submitted and considered for common benefit consideration."); *In re: Incretin Mimetics Prods. Liab. Litig.*, Case No. 13md2452 AJB (MDD) (MDL No. 2452), Dkt. No. 576, at p. 4 (S.D. Cal. Aug. 26, 2014) ("Only time and expense incurred after the entry of the Order by the Court appointing Plaintiffs' Leadership on Oct. 21, 2013 (plus any time and expense incurred by those appointed to leadership) shall be submitted and considered for common benefit consideration."); *In re: Stryker Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.*, Case No. 0:13-md-02441-DWF-FLN) MDL No. 13-2441, PTO #18 [Dkt. No. 327] at p.22 (D. Minn. May 28, 2014) ("The date on which Participating Counsel can be considered to have accrued common benefit time and expenses is July 5, 2013, the date of this Court's order appointing interim lead and liaison counsel."); *In re: Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 3:12-md-02385-DRH-SCW (MDL No. 2385), CMO #16 [Dkt. No. 61] at p. 5 (S.D. Ill. Nov. 13, 2012) ("Only time and expense incurred after the entry of CMO #4 by this Court appointing Plaintiffs' Leadership on Sept. 27, 2012 (plus any time and expense incurred by those appointed to leadership in complying with the terms of CMO #1) shall be submitted and considered for common benefit consideration."); *In re: Darvocet, Darvon and Propoxyphene Prods. Liab. Litig.*, 2:11-md-02226-DCR (MDL No. 2226), Dkt. No. 874 at p. 6 (E.D. Ky. Jan. 12, 2012) ("The first time and expense submission shall be made on February 1, 2012, and shall include all

foreclosed the possibility of recovery for pre-MDL work, but has created a presumption that any such work is not compensable. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, No. 01-MD-01407-ORD (MDL No. 1407), CMO #20, 2004 WL 1784348, at *2 (W.D. Wash. Aug. 2, 2004) ("Billings for time spent prior to August 28, 2001 [the date the MDL was formed] shall be presumptively non-compensable subject to a clear showing that the work product generated by the time spent was thereafter utilized for the common benefit of MDL plaintiffs, as described above.").

Bard recognizes that this MDL presents somewhat of a unique situation, because of the maturity of this litigation. Bard also recognizes – and in fact has argued – that much of the work performed by those five firms (and others) is relevant in this MDL and should therefore significantly reduce the amount of discovery still to be accomplished. However, the plaintiffs' proposal ignores the fact that the Consortium Attorneys have already been significantly paid for that work. Over the last three years, Bard has settled a total of 17 cases with those five firms. The aggregate amount of those settlements has been substantial.[3] For that reason, the plaintiffs' counsel have already recouped much of their expenses and been paid for much of their services incurred or performed prior to the creation of this MDL. To now let them obtain additional payment for those same expenses and services from a common benefit fund created for this MDL would be an obvious "windfall" for them, and would inequitably increase the demands made against that fund (and ultimately the "tax" imposed on non-leadership attorneys and Bard).

To limit this windfall, Bard would propose that the Court adopt several restrictions

---

time and expense entries from the inception of the case through November 30, 2011."); *In re: Zimmer Durom Hip Cup Prods. Liab. Litig.*, Case No. 2:09-cv-04414-SDW-SCM (MDL No. 2158), CMO #3 [Dkt. No. 33] at p. 9 (D.N.J. Jan. 21, 2011) ("The initial time and expense report shall cover the time period from inception of the MDL through January 31, 2011, and shall be submitted by February 20, 2011."); *In re: Bextra and Celebrex Marketing Sales Pracs. and Prod. Liab. Litig.*, Case No. M:05-cv-01699-CRB (MDL No. 1699), PTO #8, 2006 WL 471782 at *5 (N.D. Cal. Feb. 28, 2006) ("The first submission [seeking compensation for time spent on common benefit work] is due on March 15, 2006 and should include all time beginning with the date the MDL was assigned by the MDL Panel to this MDL to this Court through February 28, 2006.").

[3] The amounts of those settlements are confidential, but Bard would be willing to provide the court with a break-down of the settlements for an in camera review.

4

on any claims against the fund for pre-MDL work, including the following:

(1) All claims made by the Consortium Attorneys for fees and expenses incurred prior to August 17, 2015 (the day the JPML issued the order forming this MDL) should be reduced by a set percentage (perhaps 40%) reflecting the substantial amounts already recovered in the 17 settlements;[4]

(2) The Consortium Attorneys should be barred from claiming any fees and expenses associated with the deposition of a Bard employee or consultant they seek to re-depose in this MDL;

(3) Multiple firms from the Consortium Attorneys should not be permitted to make a claim for attending the same deposition; and

(4) Excluding from consideration case-specific activities accomplished in individual cases that have been settled (i.e., summary judgment motions; trial attendance; the handling and deposition of case-specific experts).

### B.   The Proposed Assessment Rate

The plaintiffs' proposed order would require 9% of all settlements to be deposited in the common fund. Although not completely unprecedented, that rate far exceeds the typical rate of 4-6% in MDLs. Attached as Exhibit "A" is an article from a Harvard Law School professor surveying the common fund fees in a number of MDL proceedings as of 2009. The author noted that, in the 21 cases surveyed, "almost all have common benefit assessment around 4-6%." *See* Ex. A, Rubenstein at p. 90; *see also* Paul D. Rheingold, Litigating Mass Tort Cases, at § 7:35 (2015) ("[P]ercentages awarded for common funds in recent MDLs . . . were in the 4–6% range.") (citation omitted). Attached as Exhibit "B" is a survey Bard made of a larger pool of MDLs (35 in number) that includes all pending medical device and pharmaceutical MDLs since 2010 for which Bard has been able to

---

[4] At the time this MDL was created, 21 cases filed by the Consortium Attorneys were pending in federal courts, and an additional 5 cases in state courts (although one of the state court cases has been filed by a plaintiff who also has a federal action pending). As a consequence, approximately 40% (17 of 42) of the cases filed by the Consortium Attorneys prior to the creation of this MDL have been settled.

5

identify an order setting an assessment percentage for a common benefit fund. The assessment rates ordered in those proceedings had a mean of 6.35% and median of 6%.

Here, the plaintiffs make no effort to justify a common benefit fee 50% higher than the norm. There is nothing unique about this MDL that would warrant such a significant upward deviation from the range used by the majority of MDL courts.

The higher the assessment rate, the more pressure will be placed on attorneys who are not part of the leadership team and therefore subject to the contribution requirement. As happens consistently in MDL settings, those attorneys will inevitably attempt to recoup all or part of that "tax" as a part of any settlement. Then, as also happens consistently, the common benefit obligation will therefore become an impediment to settlement. To minimize that impact, this Court should reduce any assessment rate to a figure more commensurate with the rate utilized in other MDLs.

## II. BURDENSOME OBLIGATIONS PLACED ON THE DEFENDANTS

The plaintiffs' proposed order also attempts to place burdens on the defendants that are neither necessary nor fair. As one example, the order seeks to require the defendants, rather than the plaintiffs, to be responsible for transmitting monies to the common benefit fund. The order also imposes a disclosure requirement on Bard regarding state court actions based on an undefined occurrence. The defendants therefore ask that the first obligation be eliminated, and the second obligation be clarified.

### A. Transmittal of Fee Assessments

Under the order submitted by the plaintiff's leadership, an assessment is owed only by those plaintiffs' counsel who sign a Participation Agreement and thereby commit to paying an assessment in exchange for access to the common benefit work product. A plaintiffs' counsel's obligation to pay an assessment arises from a contract, which has its own legal force. Providing further protection, the payment obligation is supported by an order of this Court, which makes a contempt of court citation available as an enforcement remedy, if the agreement is breached. Thus, the Plaintiffs' Steering Committee has more than adequate assurance that an assessment will be paid by plaintiffs' counsel when owed.

The plaintiffs nonetheless seek to shift that obligation to the defendants, rather than the plaintiffs' counsel whose cases are at issue, to (1) provide notice of every settlement; (2) withhold assessments owed in settlement of plaintiffs' claims or in satisfaction of any judgments; (3) provide an accounting of each such payment; and (4) pay the assessment to the common benefit fund. The proposal also seeks to block dismissal of settled cases – despite the defendants' compliance with all their obligations under any settlement agreements – until the plaintiffs' and defense counsel both certify that related assessments will be withheld and paid by defense counsel.

None of these requirements and limitations are necessary to ensure that assessment payments are made when owed. Instead, the mechanism needlessly adds to the defendants' costs and will impede settlements and dismissals. Although some courts have adopted provisions like those suggested by the plaintiffs, others have declined to shift those burdens to the defendants. In the *Zyprexa* MDL, Judge Jack B. Weinstein of the United States District Court for the Eastern District of New York declined to impose these burdens on the defendant Eli Lilly and Company. *See In re: Zyprexa Prods. Liab. Litig.*, Case No. 1:04-md-01596-JBW-RLM (MDL No. 1596), Order Regarding Common Benefit Fund [Dkt. No. 1369] (E.D.N.Y. Aug. 17, 2007) (adopting the Recommendation and Proposed Order of the Special Discovery Master, which at page 6 directs the plaintiffs' counsel to set aside and remit the assessment to the Executive Committee of the plaintiffs' steering committee). Other courts have similarly refused to make defendants legally responsible for enforcing agreements among plaintiffs. *See, e.g.*, *In re: Darvocet, Darvon and Propoxyphene Prods. Liab. Litig.*, Case No. 2:11-md-02226-DCR (MDL No. 2226), Dkt. No. 874 at p. 6 (E.D. Ky. Jan. 12, 2012) (ordering counsel for the plaintiff to provide written notice of settlement within 10 days of settlement and to remit payment for the 5% assessment to the common benefit fund, notwithstanding the plaintiffs' argument that the defendants should be responsible for those tasks). It is possible that different considerations may have been at play in other cases adopting such a provision. By way of example, in some MDLs, there may be a question whether the steering committee would

1 necessarily be aware of the identity of counsel who might owe an assessment. Here, however, an assessment would be owed only by plaintiffs' counsel who sign the Participation Agreement proposed by the plaintiffs. As a consequence, the plaintiffs' leadership can readily identify those counsel subject to the obligation.

Undoubtedly, the premise underlying the procedure proposed by the plaintiffs' leadership is the belief that the defendants are more likely to satisfy a payment obligation than a given plaintiffs' counsel. This is not an adequate justification to make the defendants' the enforcers of the plaintiffs' contractual obligations. The Plaintiffs' Steering Committee and the individual plaintiffs' counsel who are bound by contract and the order of this Court to pay the assessment to the common benefit fund should alone be responsible for ensuring payment. Any eventual settlement process should not be encumbered, and dismissals should not be delayed or disrupted, through an extension of those responsibilities to the defendants.

### B.   Notice of State Court Filings

The plaintiffs' proposed order would require the defendants' counsel to notify the plaintiffs' leadership "[u]pon learning of a case being filed in any state court." The submission then notes that notice be provided within 30 days after service of a complaint. In turn, the provision requires the defendants to provide several details regarding the new state court filing.

The first sentence of the plaintiffs' proposal is ambiguous as to whether the obligation is triggered by notice of filing or service. For the sake of clarity and certainty, Bard would ask that the provision be revised to make it clear that actual service triggers the obligation. The defendants also submit that the obligation should require nothing more than forwarding a copy of the filing to the Plaintiffs' Co-Lead Counsel. The plaintiffs' leadership can then investigate to obtain any additional information desired.

To accommodate those concerns, Bard asks that Paragraph No. IV.B.4 on page 10 of the proposed order be revised as follows:

"Within 30 days of service of a state court complaint on Defendant(s), the

Defendants' counsel shall forward a copy of the complaint to the Plaintiffs' Co-Lead Counsel."

### III.  CONCLUSION

Bard recognizes that common benefit funds have become commonplace in medical device and pharmaceutical MDLs, and Bard does not necessarily object in principle to the creation of such a fund in this MDL. However, given the impediment that common benefit funds can be towards reaching a resolution of claims within an MDL, any common benefit fund established in this MDL should be narrowly constructed – with an assessment percentage that is reasonable – so as to limit the taxing effect that the fund will inevitably have. Moreover, any order regarding a common benefit fund should not include onerous obligations on Bard that require it to assist the plaintiffs' leadership in securing their fees.

DATED this 13th day of November, 2015.

SNELL & WILMER L.L.P.

By: s/Amanda C. Sheridan
James R. Condo
Amanda C. Sheridan
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
Nelson Mullins Riley & Scarborough LLP
201 17th Street, NW / Suite 1700
Atlanta, GA 30363

Attorneys for C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.

### CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2015, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

s/Amanda C. Sheridan

22914080