Robert W. Boatman (009619) - rwb@gknet.com
Paul L. Stoller (016773) - paul.stoller@gknet.com
Shannon L. Clark (019708) - SLC@gknet.com
Lincoln Combs (025080) – lincoln.combs@gkent.com
**GALLAGHER & KENNEDY, P.A.**
2575 East Camelback Road
Phoenix, Arizona  85016-9225
602-530-8000

Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
**LOPEZ McHUGH LLP**
100 Bayview Circle, Suite 5600
Newport Beach, California  92660
949-812-5771

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC |
|---|---|
| | **PLAINTIFFS' REPLY TO DEFENDANTS' NOTICE OF COMMENTS REGARDING PROPOSED CASE MANAGEMENT ORDER REGARDING RULES, POLICIES, PROCEDURES, GUIDELINES RELATING TO ESTABLISHING COMMON BENEFIT FUND AND EXPENSE FUND** |

Defendants C.R. Bard, Inc.'s and Bard Peripheral Vascular, Inc.'s ("Bard") comments
to plaintiffs' proposed common benefit order are inappropriate and incorrect.  Bard's attempt
to interfere with the organizational efforts of the Plaintiffs' Steering Committee fails to

recognize the important policies supporting plaintiffs' proposals and misstates the controlling law.

## I.  BARD IS ATTEMPTING TO IMPROPERLY INTERFERE WITH PLAINTIFFS' CASE PREPARATION

Plaintiffs' counsel have all agreed on a common benefit assessment that both appropriately incentivizes and compensates plaintiff's counsel for necessary future work and equitably spreads the cost of prior common benefit work on behalf of all plaintiffs.  No plaintiff's counsel has challenged the fairness of the proposed assessment.

Plaintiffs agree with Bard that the Court has an important obligation to make sure that any common benefit assessment treats all plaintiffs fairly.  Bard, however, asserts that plaintiffs' proposed assessment somehow constitutes an excessive "tax" which will unfairly burden Bard and deter settlement.  See Defendants' Notice of Comments (doc. 272) at 2 and Exhibit "A" thereto (citing and attaching William B. Rubinstein, On What a "Common Benefit Fee" Is, Is Not, and Should Be, 3 Class Action Att'y Fee Dig. 87, 89 [hereinafter "Rubinstein"]). But Bard has no standing to challenge the percentage set for any common benefit assessment or which work the Court will allow to be compensated, as Bard's cited authority concludes.  Rubinstein at 89 n. 3 (noting that "defendants have no real interest in [the common benefit fee] issue").    Bard's comments are an attempt to dictate the terms under which its opposition will be compensated so as to discourage and to disincentivize plaintiffs' counsel from engaging in common benefit work.  This is counter to one of the most important purposes of providing for a common benefit fee assessment: ensuring "that

competent counsel continue to be willing to undertake risky, complex and novel litigation." Manual for Complex Litigation (Fourth) § 14.121 (2004).

As Professor Rubenstein points out, another important purpose of a common benefit fee is to address the unfairness of having "PSC attorneys do work for the common benefit of all claimants, but have the costs of that work covered solely by the fees paid by their individual clients." Rubinstein at 89.   Plaintiffs submit that the Court should decide whether, based on the particular circumstances of this litigation, the proposed assessments further those goals.

## II.  THE PROPOSED ORDER PROVIDES REASONABLE INCENTIVES AND EQUITABLE COST SHARING

### A.    Compensation for Prior Work Performed by Consortium Attorneys Fairly Spreads the Expenses of the Litigation.

Prior work by consortium attorneys benefits all plaintiffs by narrowing the issues and length of discovery in the MDL.  It is only fair that plaintiffs (and their attorneys) who are getting the benefit of this prior work pay their fair share for it.  Bard has argued that the quality and breadth of the pre-MDL discovery should decrease the extent of future discovery allowed.  At the same time, however, Bard now attempts to burden a small number of plaintiffs and their attorneys with the entire cost of conducting such discovery.

Bard argues that the fact that it has settled some cases for undisclosed amounts, with some firms and some plaintiffs means that the cost of this discovery has already been recouped.  But this would impose the burden of financing all of the pre-MDL discovery on the seventeen plaintiffs whose cases it settled.  It would be unfair for those plaintiffs who settled first to absorb those costs when that work will now be used in the MDL to benefit

hundreds or even thousands of new plaintiffs.    Again, it is worth noting that no plaintiff's

counsel has objected to compensating consortium attorneys for pre-MDL work.  The only

objection comes from Bard, who, as the saying goes, "doesn't have a dog in this fight."

Similarly, Bard has no legitimate interest in determining what pre-MDL work qualifies

for reimbursement.  Whatever the Court allows will not change how much or what discovery

was done prior to the MDL.  All submissions for work performed and expenses incurred,

whether for pre-MDL or post-MDL work, will be evaluated using the same policies,

procedures, guidelines, and protocol.  See Plaintiffs' proposed Case Management Order re

Common Benefit Fee and Expense Fund (doc. 264-1) [hereinafter "Proposed CB CMO"] at 8

(describing criteria, definitions, and protocols for common benefit work eligible for

reimbursement).  These procedures, and the right of any aggrieved plaintiffs to petition the

Court, are more than sufficient protection against abuse of the process.   Plaintiffs' counsel,

not Bard, are the best judges of what work and expenses should be compensated.[1]

**B.       The Proposed Percentages Are Reasonable.**

A reasonable assessment must ensure that there are sufficient funds available to

reasonably compensate PSC attorneys for their common efforts.  What constitutes a

reasonable percentage for the assessment depends in part upon the number of potential

plaintiffs.  Where there are a large number of plaintiffs, a smaller percentage assessment can

provide the same actual amount as a larger percentage assessment applied to a smaller

[1]       Under, of course, the ultimate authority of the Court

-4-

number of plaintiffs. As stated at the initial hearing, it is anticipated that there will be 1,000

plaintiffs in this present MDL.  By contrast, the following MDLs were much larger:

|  | No. of Plaintiffs |
|---|---|
| In re VIOXX Products Liability Litigation, <br> U.S.D.C. E. D. LA, C.A. No: 05-2921,  MDL No. 1657 | 10,559 |
| In re Yasmin and Yaz(Drospirenone) Marketing Sales Practices <br> and Relevant Products Liability Litigation, <br> U.S.D.C. S. D. Ill. 3:09-md-02100-DRH-CJP, MDL No. 2100 | 11,886 |
| In re Avandia Marketing Sales Practices and <br> Products Liability Litigation, <br> U.S.D.C. E. D. of Penn. MDL Docket No. 1871 | 5,340 |
| In re DePuy Orthopaedics, Inc. ASR Hip <br> Implant Product Liability Litigation, <br> U.S.D.C. N.  D. Tex, Case No. 1:10-md-2197, MDL No. 2197 | 9,852 |
| In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant <br> Product Liability Litigation, <br> U.S.D.C. N. D. Tex, Case No. 3:11-md-02244, MDL No. 2244 | 8,125 |

Accordingly, the assessments allowed in other MDL proceedings have little relevance to the

propriety of the percentages proposed in this litigation.  Nonetheless, even Bard's own

submission, which it attaches as Exhibit B to its "Comments" sets forth at least five instances

of assessments of 9% or greater, with one as large as 15% and an additional four cases in

which the assessment was 8%.

More recently, C.R. Bard was the defendant in the In Re: Kugel Mesh Hernia Patch

Products Liability Litigation, MDL No. 1842, involving only 2,272 cases where Chief Judge

Mary M. Lisi ordered the common benefit assessment at 12%.  "Eight percent (8%) of this

assessment [was] for payment of attorneys' fees, and four percent (4%) of this assessment

[was] for the payment of costs and expenses." See id., Practice and Procedure Order No. 22 (doc. 2382), attached at Exhibit "A", at 3. Yet despite this higher assessment, Bard was able to successfully reach a global settlement. Although determination of a reasonable percentage must be made on the basis of the unique facts of each litigation, there is nothing presumptively unfair or unreasonable about a 9% assessment.

Bard selectively quotes Professor Rubenstein for his finding that the most common assessments are in the 4-6% range. But Bard omits his caution that such data should not be used as evidence of a reasonable percentage: "I emphasize the 4-6% figures solely because they are most commonly used. That alone doesn't mean that they are on target. It could be that common benefit lawyers are being underpaid or overpaid." Rubenstein at 91.

The common benefit assessment does not increase the overall fee to any client. The attorney fees assessment comes out of the fees paid to each plaintiff's attorney. If there were no such assessment, the client would still pay the same amount in attorney fees, except that all the fees would be kept by their individual attorney rather than a portion paid to other attorneys for common benefit work. And for all common benefit work, both pre- and post-MDL, time will undergo the same close scrutiny applying the same standards, all subject to approval and recommendation by both a court-approved third party and ultimately the Court. Proposed CB CMO at 8-9 (defining common benefit work and establishing procedures for vetting time sheets); 13 (establishing procedure for judicial oversight of any common benefit fund distributions to attorneys who have performed common benefit work).

Similarly, assessments for expenses are intended only to provide a fund sufficient to reimburse plaintiffs' firms for actual common benefit expenses incurred. In the event that the

percentage for expenses ultimately results in a greater amount being withheld than actual expenses incurred, the amount of that overage will be refunded.   Clients are merely being asked to pay their proportionate share of the expenses incurred for their benefit.  And their share of this expense is a small fraction of their expenses if they were forced to litigate their claim individually.

Bard provides no support for its assertion that the proposed percentages will make these cases harder to settle.  Significantly, in the two weeks since plaintiffs' proposed case management order was filed not a single MDL plaintiff or plaintiff's attorney has objected that the assessments will deny them fair compensation or make these cases harder to settle. In fact, pre-MDL Bard made no wide-scale attempt to mediate or settle cases, capitulating only on the courthouse steps or during trial, because of its resource advantages when litigating cases individually.  Only now, with all plaintiffs able to benefit from common benefit work, will wide-scale settlements be possible because what incentivizes Bard and other mass tort defendants to settle is a balanced playing field of resources on the plaintiffs' side of the "v". Diminishing plaintiffs' ability to marshal their resources through appropriate common benefit fees is the true goal of Bard's comments.

Professor Rubenstein's article does not identify increased difficulty of settlement as a concern.  Instead, his sole concern is that "when common benefit fees are high, local lawyers will simply abandon that mass tort and look for other ones."  Rubenstein, supra at 90.  So according to Bard's authority, it should welcome an excessive percentage assessment as this would decrease the number of suits filed against it.  That Bard is instead vigorously

1  contesting the assessment suggests Bard does not really view it as excessive, but rather has an

2  ulterior motive for opposing plaintiffs' proposed order.

### III.    PLAINTIFFS' PROPOSED COMMON BENEFIT ORDER IMPOSES NO BURDEN ON BARD

There is nothing burdensome or onerous about plaintiffs' proposed order.  Plaintiffs are not asking for some novel  procedure in this MDL; having defendants pay settlement funds directly to the common benefit fund is the norm in nearly every mass tort MDL (outside of the handful of outlier examples cited by Bard).  Indeed, this is the procedure in Bard's other MDLs.  See In Re C. R. Bard, Inc., Pelvic Repair System Products Liability Litigation, MDL. 2187; In Re: Kugel Mesh Hernia Patch Products Liability Litigation, MDL No. 1842; see also In Re Pradaxa (Dabigatran Etexilate) Products Liability Litigation, MDL No. 2385, (S.D. Ill.), Case Management Order No. 16 (ordering precise procedure proposed here).  When Bard settles cases, on a global basis or otherwise, it simply has to cut two checks instead of one, based on a percentage fixed by the Court.  As the examples of the other mass tort MDLs across the country demonstrate, if this simple procedure is followed the chances of Bard somehow becoming involved in a dispute among plaintiffs' counsel is extremely remote.  On the other hand, if Bard can settle cases with plaintiffs and their lawyers who might not even have filed suit so as to be subject to the Court's jurisdiction but who are reaping the rewards of common benefit work, fee disputes and litigation could proliferate.

As to Bard giving notice to plaintiffs' leadership in this MDL of state court filings, Bard's proposed amendment to Plaintiffs' proposed order is acceptable.

## IV. CONCLUSION

Thus, for the reasons set forth above, plaintiffs request the Court adopt their proposed case management order without modification.

RESPECTFULLY SUBMITTED this 20th day of November, 2015.

ON BEHALF OF PLAINTIFFS


By: */s/ John A. Dalimonte*
John A. Dalimonte
(Admitted Pro Hac Vice)
KARON & DALIMONTE LLP
85 Devonshire Street, Suite 1000
Boston, MA 02109
Tel:  617-367-3311
Fax:  617-742-9130
Email:  johndalimonte@kdlaw.net


By:  */s/ Ramon R. Lopez*
Ramon R. Rossi
(Admitted Pro Hac Vice)
LOPEZ MCHUGH LLP
100 Bayview Cir., Ste. 5600
Newport Beach, CA 92660
Tel: 949-737-1501
Fax:  949-737-1504
Email:  rlopez@lopezmchugh.com


By:   */s/ Robert W. Boatman*
Robert W. Boatman
rwb@gknet.com
GALLAGHER & KENNEDY
2575  East Camelback Road
Phoenix, AZ 85016
(802) 530-8000
(802) 530-8500 (facsimile)

1

2

## CERTIFICATE OF SERVICE

3

        I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record through the Court's CM/ECF system on this 20th day of November, 2015.

4

5

                                        /s/ Kelly Saltsman
                                        Kelly Saltsman

5115345/26997-1

6

5140862v1/26997-0001

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22