## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION | §<br>§<br>§ MDL Docket No. 07-1842-ML |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | §<br>§ JUDGE LISI<br>§ |

## [PROPOSED] PRACTICE AND PROCEDURE ORDER NUMBER 22

WHEREFORE, this Order is entered to provide for the fair and equitable sharing among plaintiffs of the cost of services performed and expenses incurred by attorneys acting for MDL administration and common benefit of all plaintiffs in this complex litigation.

WHEREFORE, this Court has authority under applicable law, the common benefit doctrine, and other principles of efficiency and equity to appoint Liaison Counsel and a Plaintiff's Steering Committee ("PSC") and create a common benefit fund to compensate them for the services they provide, and expenses they incur, for the benefit of all plaintiffs in the Coordinated Litigation. *See e.g.*, Manual for Complex Litigation, Fourth §§ 14.211, 20.312, 22.927 (2008).

WHEREFORE, on September 28, 2007, the Court entered Practice and Procedure Order No. 2, which, among other things, designated Plaintiffs' Liaison Counsel, Plaintiffs' Co-Lead Counsel and a Plaintiffs' Steering Committee. *See* PPO No. 2. The Court also designated Plaintiffs' Liaison Counsel as treasurer for a litigation fund to pay reasonable litigation expenses. *Id.* at ¶ 13. Since that date, Plaintiffs' Liaison Counsel, as treasurer for the litigation, has made payment of expenses for the common benefit of expenses for plaintiffs in this MDL. In addition, Plaintiffs' Co-Lead Counsel has initiated and coordinated services ("common benefit work") on behalf of plaintiffs in this MDL.

WHEREFORE, the Court finds it appropriate to establish a Common Benefit Fund from which payments may be made to attorneys who provide authorized and approved services or

incur authorized and approved expenses for the joint and common benefit of plaintiffs in addition to their own client(s).

IT IS HEREBY ORDERED:

1. Establishment of a Common Benefit Fund

    A. The Common Benefit Fund will be created in one or more of the following ways: (1) assessments on plaintiffs who obtain a monetary recovery with or without trial as more fully defined in paragraph 2 below; (2) a separately negotiated payment from defendants, or on their behalf, separate from and in addition to any payment made to any plaintiff, which separate payment(s) is intended to be for common benefit attorneys fees and expenses; or (3) a combination of (1) and (2) or some derivation thereof. Regardless of which method results in the funding of the Common Benefit Fund, payments from that fund for expenses and services will be made at the direction of Plaintiffs' Co-Lead Counsel, subject to the approval of the Court.

    B. Plaintiffs' Co-Lead Counsel and C.R. Bard, Inc.'s and Davol, Inc.'s (collectively "Defendants") counsel will jointly recommend to the Court a person qualified to be the Court-appointed Special Master (the "Special Master"). The Special Master shall to establish an interest-bearing account and act as escrow agent to receive and disburse funds, keep detailed records of all deposits and withdrawals and to prepare tax returns and other tax filings. These funds will be held as funds subject to the direction of the Court. The specific requirements of how the Special Master shall manage the Common Benefit Fund will be the subject of future briefing by the parties and the Special Master and future Court Order.

    C. Defendants shall provide at least monthly notice and certification to the Special Master, *in camera*, of all claim or case settlements or judgments, including the name of the Plaintiff or Claimant, the case name and number (if applicable), the name of the original court (if applicable), the date of the judgment or settlement, the total amount of the judgment or settlement, the amount withheld and mechanics for calculating the gross monetary recovery and the twelve percent (12%) amount thereof due the Common Benefit Fund. The Special Master together with his partners, employees and agents, shall keep strictly confidential and shall not

disclose this information to anyone, including plaintiffs and their counsel, without the express permission of the Court.

2. <u>Assessments for the Common Benefit Fund</u>

A. All plaintiffs and their attorneys who are subject to this Order and who have agreed or agree to settle, compromise, dismiss, or reduce the amount of a claim or, with or without trial, recover a judgment for monetary damages, with respect to any relevant products contained within the scope of this MDL,[1] personal injury claims are subject to a twelve percent (12%) assessment of the gross monetary recovery. Eight percent (8%) of this assessment is for the payment of attorneys' fees, and four percent (4%) of this assessment is for the payment of costs and expenses.

B. For those cases subject to this Order, Defendants agree to transfer the payable funds, once the total resolution amount passes the $100,000 threshold, as ordered by the Court.

C. For all cases in which a settlement was or is entered into, or a judgment was or is paid, defendants are directed to withhold this assessment from any amounts paid to a plaintiff and her counsel in the following cases:

    i. any case pending in the MDL, including cases remanded from this MDL to transferor court for purposes of trial;

    ii. any state court or unfiled case where the plaintiffs attorney and/or his or her firm has executed an agreement to cooperate with the MDL and to pay the assessment; and

    iii. any case in which a member of the MDL PSC has a fee interest, whether or not that case is filed or unfiled in state or federal court.

---

[1] "Relevant Product(s)" means all nine (9) models of Bard® Composix® Kugel® Hernia Patches (Product Codes 0010201 through 0010209); all other Davol hernia patches with rings, including the Bard® Kugel® Hernia Patch; Bard® Ventralex® Hernia Patch; Bard CK Parastomal Patch; and Bard® Modified KugelTM Patch; and other Davol hernia meshes with dual-mesh technology, including the Bard® Composix® E/X Mesh. The term "dual-mesh" refers to all hernia mesh products incorporating both an expanded Teflon or ePTFE material and a monofilament polypropylene or PPM material.

D. Defendants are directed to withhold this assessment from amounts paid to plaintiffs and their counsel, and to pay the assessment directly into the Common Benefit Fund as a credit against the settlement or judgment, subject to paragraph 2.B above. If for any reason the assessment is not or has not been so withheld, the plaintiff, his counsel and Defendants are jointly responsible for promptly paying the assessment into the Common Benefit Fund.

E. For all settlements entered into by Defendants that it believes are not identified in section 2.C.i-iv above and therefore not subject to this Order, Defendants shall provide Plaintiffs' Co-Lead Counsel with the names of the attorneys and the firms (hereinafter referred as "Settling Plaintiff's Attorney") in which a settlement has been concluded to allow Plaintiffs' Co-Lead Counsel five days in which to provide notice in writing that the PSC believes that the settlement with the Settling Plaintiff's Attorney is subject to this Assessment Order. If so notified, Defendants shall hold the assessment amount in escrow until advised by Plaintiffs' Co-Lead Counsel and the Settling Plaintiff's Attorney or by the Court as to how the assessment amount held in escrow should be distributed. In the event there is a dispute as to whether a case should be on the list, Defendants shall provide Plaintiffs' Co-Lead Counsel with a list of cases that the Settling Plaintiff's Attorney has resolved with the Defendants and Plaintiffs' Co-Lead Counsel shall resolve the matter with the particular Settling Plaintiff's Attorney either informally or upon motion to the Special Master, unless the Settling Plaintiff's Attorney or Plaintiffs' Co-Lead Counsel requests that it be considered by the Court.

F. The Court will establish additional guidelines, including possible refunds, in whole or in part, if the Common Benefit Fund is funded by a separately negotiated payment by defendants, or on their behalf, separate from and in addition to any payment made to any plaintiff, which separate payment(s) is intended to be for common benefit attorneys' fees and expenses.

G. Nothing in this Order shall be deemed to modify, alter, or change the terms of any contracts relating to fees or costs between plaintiffs' counsel and their individual clients. Nor is

this Order intended to make any findings with regard to any Common Benefit Fees or Expenses which may be sought in this matter.

3.  Non-participation in MDL

    A.  Any plaintiffs' attorney who has case(s) solely in state court actions, and who chooses not to execute a participation agreement, may seek access to MDL and/or PSC non-work product materials by contacting Plaintiffs' Co-Lead Counsel in writing. However, Plaintiffs' Co-Lead Counsel shall have no obligation to allow such attorney access to any MDL materials. Further, nothing in this Order shall limit the Plaintiffs' Co-Lead Counsel's right or ability to seek an equitable contribution against any state court case in which the plaintiff's attorney was provided access to MDL work product.

4.  Disbursements from the Common Benefit Fund

    A.  Upon order of the Court, payments may be made from the Common Benefit Fund to attorneys who provide services or incur expenses for the joint and common benefit of plaintiffs in addition to their own client(s). Attorneys eligible are limited to Plaintiffs' Co-Lead Counsel, members of the Plaintiff's Steering Committee, members of Plaintiffs' Liaison Counsel and other attorneys called upon by them to assist in performing their responsibilities. All time and expenses are subject to proper and timely submission (each month) of contemporaneous records certified to have been timely received by Wexler Wallace LLP.

    B.  Payments to non-lawyers will only be allowed for special services performed, and to reimburse for special expenses incurred, for the joint and common benefit of all plaintiffs, which have been specifically authorized by Plaintiffs' Co-Lead Counsel. Payment may, for example, be made for services and expenses related to obtaining, reviewing, and indexing hard copies or computerized images of documents; conducting depositions; general liability experts or consultants, and activities connected with the coordination of federal and state litigation. The Common Benefit Fund will not, however, be used to pay for services and expenses related to a particular case, such as the deposition of a treating physician, excluding common benefit services

and expenses relating to the bellwether, ADR, and/or neutral evaluation cases, even if such activity results in some incidental and/or consequential benefit to other plaintiffs.

C. Payments will not exceed the fair value of the services performed, plus any approved multiplier, or the reasonable amount of the expenses incurred and, depending upon the amount of the Common Benefit Fund, may be limited to part of the value of such services and expenses.

D. No amounts will be disbursed without review and approval by the Court or such other mechanism as the Court may deem just and proper under the circumstances.

E. If the Common Benefit Fund exceeds the amount needed to make all payments of court approved costs, fees, and any Court approved multiplier on any fees, the Court may order a refund to those who have contributed to the Common Benefit Fund. Any such refund will be made in proportion to the amount of the contributions.

5. Common Costs and Submission of Time and Expenses

   A. Compliance

   Failure to follow any of the standards and procedures outlined herein or timely submit any of the monthly reports may result in partial or complete disallowance of the claimed time or expenses. Plaintiffs' Co-Lead Counsel, or a designated committee on their behalf, reserve the right to audit the detail of any time and expense report submitted in this litigation at any time.

   B. Representations as to Time and Expense Submissions

   Each attorney submitting a time or expense report shall be considered as representing that the time and expense submitted meets the criteria set forth herein.

   C. Time Reporting

   i. Only time spent on matters common to all claimants in MDL No. 1842 ("common benefit work") will be considered in determining fees. No time spent on developing or processing individual issues in any case for an individual client (claimant), with the exception of bellwether, ADR, or neutral evaluation cases, will be considered or should be submitted.

ii. All time must be accurately and contemporaneously maintained. All counsel shall keep a daily record of their time spent in connection with common benefit work on this litigation, indicating with specificity the hours and particular activity.

iii. All time spent by each firm on matters relating to MDL No. 1842 shall be maintained in one-tenth increments.

iv. All time records for common benefit work shall be summarized by accumulated total of all time incurred by the firm during the particular reporting period and in prior periods.

D. <u>Expense Reporting</u>

i. Plaintiffs' Liaison Counsel maintains a litigation fund for "Shared Expenses" of MDL No. 1842 for payment of expenses that may include experts, deposition transcripts and court reporter costs, document depository, witness fees, administrative matters (e.g., bank charges, equipment charges, PSC conference calls, meeting costs, legal and accounting fees), investigative services and other necessary shared expenses common to MDL No. 1842. Plaintiffs' Liaison Counsel is charged with administering this fund and those expenditures are administered separately from expenses incurred and submitted in the monthly time and expense reports.

ii. "Held Expenses" are those expenses authorized, incurred and submitted in the monthly time and expense reports that are not client specific, but inure to the global benefit of plaintiffs in MDL No. 1842 and may include, among other things, authorized travel costs, postage, photocopies, computerized legal research and meals.

iii. All supporting receipts, logs or documentation for held expenses must be maintained for auditing purposes. Failure to maintain these supporting documents may result in a partial or complete disallowance of the claimed expenses. Moreover, Plaintiffs' Co-Lead Counsel may require monthly submission of expenses as the litigation progresses.

iv. Only the price of a coach seat for a reasonable itinerary for airfare will be reimbursed, unless there are extraordinary conditions requiring travel at a higher fare and this expenditure is approved by Plaintiffs' Co-Lead Counsel prior to the travel taking place.

v. Hotel room charges must be reasonable, taking into account the availability of business class hotels in the location of the event requiring the hotel stay. As the litigation progresses, Plaintiffs' Co-Lead Counsel reserves the right to impose a cap on the price of hotel rooms.

vi. Meal expenses must be reasonable and reasonably tied to the work being performed in MDL 1842.

vii. Miscellaneous cash expenses for which receipts are not generally available (*e.g.*, tips, luggage handling) will be reimbursed up to $50.00 per trip, as long as these expenses are properly documented.

viii. Luxury rental automobiles will not be fully reimbursed, unless they are the only automobiles available for rental. When luxury automobiles are rented and non-luxury automobiles are available, then the difference between the luxury and non-luxury vehicle rates must be shown and only the non-luxury rate may be claimed.

ix. If a mileage claim is submitted, documentation must be kept stating the origination point, destination, total miles and the purpose of the trip. Approved mileage claims will be reimbursed at the maximum rate allowed by the IRS.

x. A contemporaneous log must be maintained for in-house photocopy charges, which are subject to reimbursement at a maximum of 15 cents per page.

xi. Claims for electronic research (*e.g.*, Westlaw, Lexis) should be in the exact amount charged to the firm for these services.

6. <u>Procedures To Be Established by Plaintiffs' Liaison Counsel for Cost and Time Submission</u>

Plaintiffs' Liaison Counsel previously established forms and procedures to implement and carry out time and expense submissions required by the Court and for reimbursement from the PSC MDL No. 1842 Shared costs Fund. These forms may be obtained from Plaintiffs' Liaison Counsel. The forms shall be certified by a partner in each firm attesting to the accuracy and correctness for the submissions.

7. <u>Questions and Disputes</u>

A. Questions regarding the guidelines or procedures or the completion of any forms should be directed to Plaintiffs' Liaison Counsel in the first instance, and the Court only if necessary to comply with the terms of this Order.

B. Disputes arising under this Order that cannot be resolved by agreement of counsel will be resolved by the Court in the exercise of its jurisdiction under the equitable principles of the common fund/common benefit doctrine.

SO ORDERED:

_____
Mary M. Lisi
Chief United States District Judge
November 20, 2009