James R. Condo (#005867)
Amanda Sheridan (#005867)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
JCondo@swlaw.com
ASheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
Telephone: (404) 322-6000
Richard.North@nelsonmullins.com
Matthew.Lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation | MDL NO. 15-02641-PHX-DGC |
| This Document Relates to: | |
| WILLIAM OWENS, JR., | |
| Plaintiff, | Case No. CV-15-2142-PHX-DGC |
| v. | |
| C. R. BARD, INC., a foreign corporation, and BARD PERIPHERAL VASCULAR INC., an Arizona corporation, | **DEFENDANTS C. R. BARD, INC. AND BARD PERIPHERAL VASCULAR, INC.'S ANSWER AND AFFIRMATIVE DEFENSES AND DEMAND FOR TRIAL BY JURY** |
| Defendants. | |

Defendants C. R. Bard, Inc. ("Bard") and Bard Peripheral Vascular, Inc. ("BPV") (Bard and BPV are collectively "Defendants") answer the Complaint ("Plaintiff's Complaint") of Plaintiff William Owens, Jr. ("Plaintiff") as follows:

## INTRODUCTORY ALLEGATIONS

1.    Defendants are without knowledge or information sufficient to form a truth as to the truth of the allegations contained in Paragraph 1 of Plaintiff's Complaint regarding either the residency and citizenship of Plaintiff or the trade name of any inferior vena cava filter implanted in Plaintiff and, and, on that basis, deny them. Defendants deny the remaining allegations contained in Paragraph 1 of Plaintiff's Complaint.

2.    Defendants admit that Bard is a New Jersey Corporation and that Bard is authorized to do business, and does business, in the State of Colorado, including Arapahoe County. Defendants admit that Bard owns a facility where vena cava filters are manufactured, including filters that were manufactured under the trademark Eclipse™ Filter System. Defendants deny any remaining allegations contained in Paragraph 2 of Plaintiff's Complaint.

3.    Defendants admit that BPV is an Arizona Corporation and that BPV is authorized to do business, and does business, in the State of Colorado, including Arapahoe County. Defendants further admit that BPV designs, sells, markets, and distributes inferior vena cava filters and that BPV has designed, sold, marketed, and distributed filters under the trademark Eclipse™ Filter System. Defendants further admit that BPV is a wholly owned subsidiary of Bard. Defendants deny any remaining allegations contained in Paragraph 3 of Plaintiff's Complaint.

4.    The allegations of Paragraph 4 of Plaintiff's Complaint contain no factual allegations and, as a result, require no response by Defendants. However, to the extent Paragraph 4 purports to cast liability either directly or indirectly upon Defendants, said Paragraph is expressly denied.

**JURISDICTION AND VENUE**

5.     Regarding Paragraph 5 of Plaintiff's Complaint, Defendants do not contest that the injuries and damages alleged within Plaintiff's Complaint exceed the jurisdictional limit of this Court. However, Defendants deny that they are liable to Plaintiff for any amount whatsoever and deny that Plaintiff has suffered any damages whatsoever. Defendants do not dispute that, based on the facts as alleged by Plaintiff, which have not been, and could not have been confirmed by Defendants, jurisdiction appears to be proper in the United States District Court for the District of Colorado.

6.     Regarding Paragraph 6 of Plaintiff's Complaint, Defendants do not dispute that, based on the facts as alleged by Plaintiff, which have not been and could not have been confirmed by Defendants, venue appears to be proper in the United States District Court for the District of Colorado.

**GENERAL FACTUAL ALLEGATIONS**

7.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation regarding the time frame when inferior vena cava filters were first introduced on the market or the identity of manufacturers of inferior vena cava filters. Defendants deny any remaining allegations of Paragraph 7 of Plaintiff's Complaint.

8.     Defendants admit that inferior vena cava filters are intended to prevent injury or death resulting from venous thrombosis and pulmonary embolism. Defendants further admit that inferior vena cava filters may be designed for permanent placement, temporary placement, or both. Defendants deny any remaining allegations of Paragraph 8 of Plaintiff's Complaint.

9.     Defendants admit that the inferior vena cava is a large vein that receives blood from the lower regions of the body and delivers it to the right atrium of the heart. Defendants further admit that deep vein thrombosis and pulmonary emboli present dangerous risks to human health, including sometimes death. Defendants deny any remaining allegations of Paragraph 9 of Plaintiff's Complaint.

10.     Defendants admit that inferior vena cava filters are intended to prevent injury or death resulting from venous thrombosis and pulmonary embolism. Defendants further admit that inferior vena cava filters may also be used to treat patients who are at a high risk for developing deep vein thrombosis and pulmonary embolism. The remaining allegations contained in Paragraph 10 of Plaintiff's Complaint are conclusions of law, to which no response is required. To the extent a response is required, Defendants deny those allegations.

11.     Defendants deny the allegations contained in Paragraph 11 of Plaintiff's Complaint.

12.     Defendants admit that patients at a high risk for developing deep vein thrombosis and pulmonary embolism are frequently treated with anticoagulation therapy, including but not limited to the medications listed in Paragraph 12 of Plaintiff's Complaint. Defendants further admit that inferior vena cava filters may also be used to treat patients who are at a high risk for developing deep vein thrombosis and pulmonary embolism. Defendants lack knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in Paragraph 12 of Plaintiff's Complaint and, on that basis, deny them.

13.     Defendants lack knowledge or information or information sufficient to form a belief as to the truth of the allegation regarding the time frame when inferior vena cava filters were first introduced on the market. Defendants also lack knowledge or information sufficient to form a belief as to the truth of the allegation regarding the time frame when optional or retrievable filters came to be marketed or the other allegations regarding optional or retrievable filters marketed by other manufacturers. Defendants deny any remaining allegations contained in Paragraph 13 of Plaintiff's Complaint.

14.     Defendants admit that Bard has distributed the Simon Nitinol Filter in the United States since at least 1992. Defendants admit that, as part of their continuing efforts to constantly evaluate the medical devices they sell, in conjunction with the ever-changing state-of-the-art, they are continually striving to improve the life-saving performance of those devices. The Recovery® Filter was developed in furtherance of those efforts. Defendants

further admit that the Recovery® Filter was cleared by the FDA for optional use as a retrievable inferior vena cava filter. Defendants deny any remaining allegations contained in Paragraph 14 of Plaintiff's Complaint.

15.     Defendants deny the allegations contained in Paragraph 15 of Plaintiff's Complaint.

16.     Defendants deny the allegations contained in Paragraph 16 of Plaintiff's Complaint.

17.     Defendants deny the allegations contained in Paragraph 17 of Plaintiff's Complaint.

18.     Defendants admit that the Recovery® Filter was cleared by the FDA for permanent placement on November 27, 2002, pursuant to an application submitted under Section 510(k) of the Food, Drug and Cosmetic Act. The allegations contained in Footnote 1 regarding the 510(k) process are conclusions of law, to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny any remaining allegations contained in Paragraph 18 of Plaintiff's Complaint, including any additional allegations in Footnote 1.

19.     Defendants admit that the Recovery® Filter was cleared by the FDA for retrievable placement on July 25, 2003, pursuant to applications submitted under Section 510(k) of the Food, Drug and Cosmetic Act. Defendants deny any remaining allegations contained in Paragraph 19 of Plaintiff's Complaint.

20.     Defendants deny the allegations contained in Paragraph 20 of Plaintiff's Complaint.

21.     Defendants deny the allegations contained in Paragraph 21 of Plaintiff's Complaint.

22.     Defendants admit that the Recovery® Filter consists of twelve, shape-memory Nitinol wires emanating from a central Nitinol sleeve. Defendants further admit that the twelve wires form two levels of filtration for emboli:  the legs provide the lower level of

filtration, and the arms provide the upper level of filtration. Defendants deny any remaining allegations contained in Paragraph 22 of Plaintiff's Complaint.

23.    Defendants admit that the Recovery® Filter was designed to be inserted endovascularly. Defendants further admit that the Recovery® Filter is designed to be delivered via an introducer sheath, which is included in the delivery system for the device. Defendants deny any remaining allegations of Paragraph 23 of Plaintiff's Complaint.

24.    Defendants admit that, as part of their continuing efforts to constantly evaluate the medical devices they sell, in conjunction with the ever-changing state-of-the-art, they are continually striving to improve the life-saving performance of those devices. The Recovery® Filter was developed in furtherance of those efforts. Defendants deny the remaining allegations contained in Paragraph 24 of Plaintiff's Complaint, including any sub-parts thereof.

25.    Defendants deny the allegations contained in Paragraph 25 of Plaintiff's Complaint.

26.    Defendants deny the allegations contained in Paragraph 26 of Plaintiff's Complaint.

27.    Defendants deny the allegations contained in Paragraph 27 of Plaintiff's Complaint, including all sub-parts thereof.

28.    Defendants deny the allegations contained in Paragraph 28 of Plaintiff's Complaint.

29.    Defendants deny the allegations contained in Paragraph 29 of Plaintiff's Complaint.

30.    Defendants deny the allegations contained in Paragraph 30 of Plaintiff's Complaint, including all sub-parts thereof.

31.    Defendants deny the allegations contained in Paragraph 31 of Plaintiff's Complaint, including all sub-parts thereof.

32.     Defendants deny the allegations contained in Paragraph 32 of Plaintiff's Complaint.

33.     Defendants deny the allegations contained in Paragraph 33 of Plaintiff's Complaint. By way of further response, Defendants admit that there are various well-documented complications that may occur as a result of the fracture, perforation, and/or migration of any inferior vena cava filter. Defendants further admit that it is well documented that many instances of filter fracture and/or migration result in no complications whatsoever but, rather, are completely asymptomatic. Bard further states that there are incidents related to the occurrence of known complications associated with every manufacturer of inferior vena cava filters. Defendants deny the remaining allegations of Paragraph 33 of Plaintiff's Complaint.

34.     Defendants deny the allegations contained in Paragraph 34 of Plaintiff's Complaint, including all sub-parts thereof.

35.     Defendants deny the allegations contained in Paragraph 35 of Plaintiff's Complaint, including all sub-parts thereof.

36.     Defendants deny the allegations contained in Paragraph 36 of Plaintiff's Complaint.

37.     Defendants deny the allegations contained in Paragraph 37 of Plaintiff's Complaint.

38.     Defendants deny the allegations contained in Paragraph 38 of Plaintiff's Complaint as stated. Defendants state that, as part of their continuing efforts to constantly evaluate the medical devices they sell, in conjunction with the ever-changing state-of-the-art, they are continually striving to improve the life-saving performance of those devices. Defendants deny any remaining allegations contained in Paragraph 38 of Plaintiff's Complaint.

39.     Defendants deny the allegations contained in Paragraph 39 of Plaintiff's Complaint.

40.     Defendants deny the allegations contained in Paragraph 40 of Plaintiff's Complaint.

41.     Defendants deny the allegations contained in Paragraph 41 of Plaintiff's Complaint.

42.     Defendants deny the allegations contained in Paragraph 42 of Plaintiff's Complaint.

43.     Defendants deny the allegations contained in Paragraph 43 of Plaintiff's Complaint.

44.     Defendants deny the allegations contained in Paragraph 44 of Plaintiff's Complaint.

45.     Defendants deny the allegations contained in Paragraph 45 of Plaintiff's Complaint. Defendants deny that the Recovery® Filter is unreasonably dangerous or defective in any manner. By way of further answer, Defendants state that, as part of their continuing efforts to constantly evaluate the medical devices they sell, in conjunction with the ever-changing state-of-the-art, they are continually striving to improve the life-saving performance of those devices. The G2® Filter was developed in furtherance of those efforts. Defendants deny any remaining allegations contained in Paragraph 45 of Plaintiff's Complaint.

46.     Defendants admit the G2® Filter System was cleared by the United States Food and Drug Administration pursuant to an application submitted under Section 510(k) of the Food, Drug and Cosmetic Act in 2005. Defendants deny any remaining allegations contained in Paragraph 46 of Plaintiff's Complaint.

47.     Defendants admit the G2® Filter System was cleared by the United States Food and Drug Administration for both permanent and retrievable use pursuant to an application submitted under Section 510(k) of the Food, Drug and Cosmetic Act. Defendants further admit that the G2® Filter was originally cleared by the FDA for permanent use and was subsequently cleared in 2008 by the FDA for optional use as a retrievable inferior vena cava

filter. Defendants deny any remaining allegations contained in Paragraph 47 of Plaintiff's Complaint.

48.     Defendants deny the allegations contained in Paragraph 48 of Plaintiff's Complaint.

49.     Defendants deny the allegations contained in Paragraph 49 of Plaintiff's Complaint.

50.     Defendants deny the allegations contained in Paragraph 50 of Plaintiff's Complaint.

51.     Defendants deny the allegations contained in Paragraph 51 of Plaintiff's Complaint.

52.     Defendants deny the allegations contained in Paragraph 52 of Plaintiff's Complaint.

53.     Defendants deny the allegations contained in Paragraph 53 of Plaintiff's Complaint.

54.     Defendants deny the allegations contained in Paragraph 54 of Plaintiff's Complaint.

55.     Defendants deny the allegations contained in Paragraph 55 of Plaintiff's Complaint.

56.     Defendants deny the allegations contained in Paragraph 56 of Plaintiff's Complaint, including all sub-parts thereof.

57.     Defendants deny the allegations contained in Paragraph 57 of Plaintiff's Complaint, including all sub-parts thereof.

58.     Defendants deny the allegations contained in Paragraph 58 of Plaintiff's Complaint.

59.     Defendants admit the G2® Express Filter System was cleared by the United States Food and Drug Administration pursuant to an application submitted under Section 510(k) of the Food, Drug and Cosmetic Act in 2008. Defendants further admit that

the G2® Express Filter is similar to the G2® Filter, but includes a snare on the sheath of the filter to enhance retrievability. Defendants deny any remaining allegations contained in Paragraph 59 of Plaintiff's Complaint.

60.     Defendants deny that the G2® Filter is unreasonably dangerous or defective in any manner. Defendants admit that the Eclipse™ Filter System was cleared by the United States Food and Drug Administration pursuant to an application submitted under Section 510(k) of the Food, Drug and Cosmetic Act in 2010. Defendants further admit that, as part of their continuing efforts to constantly evaluate the medical devices they sell, in conjunction with the ever-changing state-of-the-art, they are continually striving to improve the life-saving performance of those devices. The Eclipse™ Filter was developed in furtherance of those efforts. Defendants deny any remaining allegations contained in Paragraph 60 of Plaintiff's Complaint.

61.     Defendants deny the allegations contained in Paragraph 61 of Plaintiff's Complaint.

62.     Defendants deny the allegations contained in Paragraph 62 of Plaintiff's Complaint, as stated. Defendants deny that the G2® Filter is unreasonably dangerous or defective in any manner. By way of further response, Defendants admit that, as part of their continuing efforts to constantly evaluate the medical devices they sell, in conjunction with the ever-changing state-of-the-art, they are continually striving to improve the life-saving performance of those devices. In this regard, and pursuant to an application submitted under Section 510(k) of the Food, Drug and Cosmetic Act, BPV received FDA clearance on August 24, 2011, for the Meridian® Filter. Defendants deny the remaining allegations of Paragraph 62 of Plaintiff's Complaint.

63.     Defendants admit that, as part of their continuing efforts to constantly evaluate the medical devices they sell, in conjunction with the ever-changing state-of-the-art, they are continually striving to improve the life-saving performance of those devices. The Meridian™

1   Filter was developed in furtherance of those efforts. Defendants deny any remaining
2   allegations of Paragraph 63 of Plaintiff's Complaint.

3       64.     Defendants deny the allegations contained in Paragraph 64 of Plaintiff's
4   Complaint.

5       65.     Defendants deny the allegations contained in Paragraph 65 of Plaintiff's
6   Complaint.

7       66.     Defendants deny the allegations contained in Paragraph 66 of Plaintiff's
8   Complaint.

9       67.     Defendants deny that the G2® or Meridian™ Filter Systems were unreasonably
10  dangerous or defective in any manner. Defendants admit that, as part of their continuing
11  efforts to constantly evaluate the medical devices they sell, and in conjunction with the ever-
12  changing state-of-the-art, they are continually striving to improve the life-saving performance
13  of those devices. The Denali™ Filter was developed in furtherance of those efforts.
14  Defendants further admit that the Denali™ Filter was cleared by the FDA for permanent
15  placement on May 15, 2013, pursuant to an application submitted under Section 510(k) of the
16  Food, Drug and Cosmetic Act. Defendants deny any remaining allegations contained in
17  Paragraph 67 of Plaintiff's Complaint.

18      68.     Defendants deny that the G2® or G2® Express Filter Systems were
19  unreasonably dangerous or defective in any manner. Defendants admit that, as part of their
20  continuing efforts to constantly evaluate the medical devices they sell, and in conjunction
21  with the ever-changing state-of-the-art, they are continually striving to improve the life-
22  saving performance of those devices. The Denali™ Filter was developed in furtherance of
23  those efforts. Defendants deny any remaining allegations contained in Paragraph 68 of
24  Plaintiff's Complaint.

25      69.     Defendants deny the allegations contained in Paragraph 69 of Plaintiff's
26  Complaint.

27

28

70.     Defendants deny the allegations contained in Paragraph 70 of Plaintiff's Complaint.

71.     Defendants deny the allegations contained in Paragraph 71 of Plaintiff's Complaint.

72.     Defendants admit that Bard received a warning letter from the FDA's Los Angeles District Office dated July 13, 2015. Defendants deny the remaining allegations of Paragraph 72 of the Complaint as stated.

73.     Defendants deny the allegations contained in Paragraph 73 of Plaintiff's Complaint.

74.     Defendants deny the allegations contained in Paragraph 74 of Plaintiff's Complaint.

75.     Defendants deny the allegations contained in Paragraph 75 of Plaintiff's Complaint.

76.     Defendants deny the allegations contained in Paragraph 76 of Plaintiff's Complaint.

77.     Defendants deny the allegations contained in Paragraph 77 of Plaintiff's Complaint.

78.     Defendants deny the allegations contained in Paragraph 78 of Plaintiff's Complaint.

79.     Defendants deny the allegations contained in Paragraph 79 of Plaintiff's Complaint.

80.     Defendants deny the allegations contained in Paragraph 80 of Plaintiff's Complaint.

81.     Defendants deny the allegations contained in Paragraph 81 of Plaintiff's Complaint.

82.     Defendants deny the allegations contained in Paragraph 82 of Plaintiff's Complaint.

83.     Defendants deny the allegations contained in Paragraph 83 of Plaintiff's Complaint.

84.     Defendants deny the allegations contained in Paragraph 84 of Plaintiff's Complaint.

85.     Defendants deny the allegations contained in Paragraph 85 of Plaintiff's Complaint.

## FIRST CAUSE OF ACTION

### NEGLIGENCE

86.     Defendants incorporate by reference their responses to Paragraphs 1-85 of Plaintiff's Complaint as if fully set forth herein.

87.     Defendants admit that Bard owns a facility where vena cava filters are manufactured and that filters under the trademark Eclipse™ Filter Systems were manufactured at that facility. Defendants further admit that BPV designs, sells, markets, and distributes inferior vena cava filters and that BPV designed, sold, marketed, and distributed filters under the trademark Eclipse™ Filter Systems. Defendants deny any remaining allegations contained in Paragraph 87 of the Complaint.

88.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the trade name of any inferior vena cava filter implanted in Plaintiff and, on that basis, deny them. Defendants deny any remaining allegations of Paragraph 88 of the Complaint.

89.     The allegations contained in Paragraph 89 regarding Defendants' duty are legal conclusions of law, and no answer is required. To the extent a response is required, Defendants deny the allegations. Defendants deny any remaining allegations contained in Paragraph 89 of the Complaint.

90.     Defendants deny the allegations contained in Paragraph 90 of Plaintiff's Complaint.

91.     Defendants deny the allegations contained in Paragraph 91 of Plaintiff's Complaint.

92.     Defendants deny the allegations contained in Paragraph 92 of Plaintiff's Complaint.

93.     Defendants deny the allegations contained in Paragraph 93 of Plaintiff's Complaint.

94.     Defendants deny the allegations contained in Paragraph 94 of Plaintiff's Complaint, including all sub-parts thereof.

95.     Defendants deny the allegations contained in Paragraph 95 of Plaintiff's Complaint.

## SECOND CAUSE OF ACTION

## STRICT LIABILITY – FAILURE TO WARN

96.     Defendants incorporate by reference their responses to Paragraphs 1-95 of Plaintiff's Complaint as if fully set forth herein.

97.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the trade name of any inferior vena cava filter implanted in Plaintiff and, on that basis, deny them. By way of further response, Defendants admit that Bard owns a facility where vena cava filters are manufactured and that filters under the trademark Eclipse™ Filter System were manufactured at that facility. Defendants further admit that BPV designs, sells, markets, and distributes inferior vena cava filters and that BPV designed, sold, marketed, and distributed filters under the trademark Eclipse™ Filter System. Defendants deny any remaining allegations contained in Paragraph 97 of Plaintiff's Complaint.

98.     Defendants deny the allegations contained in Paragraph 98 of Plaintiff's Complaint.

99.     Defendants deny the allegations contained in Paragraph 99 of Plaintiff's Complaint.

100. Defendants deny the allegations contained in Paragraph 100 of Plaintiff's Complaint.

101. Defendants deny the allegations contained in Paragraph 101 of Plaintiff's Complaint.

102. Defendants deny the allegations contained in Paragraph 102 of Plaintiff's Complaint.

103. Defendants deny the allegations contained in Paragraph 103 of Plaintiff's Complaint.

104. Defendants deny the allegations contained in Paragraph 104 of Plaintiff's Complaint.

105. Defendants deny the allegations contained in Paragraph 105 of Plaintiff's Complaint.

106. Defendants deny the allegations contained in Paragraph 106 of Plaintiff's Complaint.

107. Defendants deny the allegations contained in Paragraph 107 of Plaintiff's Complaint.

108. Defendants deny the allegations contained in Paragraph 108 of Plaintiff's Complaint.

109. Defendants deny the allegations contained in Paragraph 109 of Plaintiff's Complaint.

110. Defendants deny the allegations contained in Paragraph 110 of Plaintiff's Complaint.

111. Defendants deny the allegations contained in Paragraph 111 of Plaintiff's Complaint.

## **THIRD CAUSE OF ACTION**

## **STRICT LIABILITY – DESIGN DEFECT**

112.    Defendants incorporate by reference their responses to Paragraphs 1-111 of Plaintiff's Complaint as if fully set forth herein.

113.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the trade name of any inferior vena cava filter implanted in Plaintiff and, on that basis, deny them. By way of further response, Defendants admit that Bard owns a facility where vena cava filters are manufactured and that filters under the trademark Eclipse™ Filter System were manufactured at that facility. Defendants further admit that BPV designs, sells, markets, and distributes inferior vena cava filters and that BPV designed, sold, marketed, and distributed filters under the trademark Eclipse™ Filter System. Defendants deny any remaining allegations contained in Paragraph 113 of Plaintiff's Complaint.

114.    Defendants deny the allegations contained in Paragraph 114 of Plaintiff's Complaint.

115.    Defendants deny the allegations contained in Paragraph 115 of Plaintiff's Complaint.

116.    Defendants deny the allegations contained in Paragraph 116 of Plaintiff's Complaint.

117.    Defendants deny the allegations contained in Paragraph 117 of Plaintiff's Complaint.

118.    Defendants deny the allegations contained in Paragraph 118 of Plaintiff's Complaint.

119.    Defendants deny the allegations contained in Paragraph 119 of Plaintiff's Complaint.

1  **FOURTH CAUSE OF ACTION**

2  **STRICT LIABILITY – MANUFACTURING DEFECT**

3      120.   Defendants incorporate by reference their responses to Paragraphs 1-119 of

4  Plaintiff's Complaint as if fully set forth herein.

5      121.   Defendants deny that the Eclipse™ Filter System is unreasonably dangerous or

6  defective in any manner. Defendants are without knowledge or information sufficient to form

7  a belief as to the truth of the allegations regarding the trade name of any inferior vena cava

8  filter implanted in Plaintiff and, on that basis, deny them. By way of further response,

9  Defendants admit that Bard owns a facility where vena cava filters are manufactured and that

10  filters under the trademark Eclipse™ Filter System were manufactured at that facility.

11  Defendants further admit that BPV designs, sells, markets, and distributes inferior vena cava

12  filters and that BPV designed, sold, marketed, and distributed filters under the trademark

13  Eclipse™ Filter System. Defendants deny any remaining allegations contained in

14  Paragraph 121 of Plaintiff's Complaint.

15      122.   Defendants deny the allegations contained in Paragraph 122 of Plaintiff's

16  Complaint.

17      123.   Defendants deny the allegations contained in Paragraph 123 of Plaintiff's

18  Complaint.

19      124.   Defendants deny the allegations contained in Paragraph 124 of Plaintiff's

20  Complaint.

21  **FIFTH CAUSE OF ACTION**

22  **BREACH OF EXPRESS WARRANTY**

23      125.   Defendants incorporate by reference their responses to Paragraphs 1-124 of

24  Plaintiff's Complaint as if fully set forth herein.

25      126.   Defendants admit that Bard owns a facility where vena cava filters are

26  manufactured and that filters under the trademark Eclipse™ Filter System were manufactured

27  at that facility. Defendants further admit that BPV designs, sells, markets, and distributes

28

inferior vena cava filters and that BPV designed, sold, marketed, and distributed filters under the trademark Eclipse™ Filter System. Defendants deny any remaining allegations contained in Paragraph 126 of Plaintiff's Complaint.

127.  Defendants deny the allegations contained in Paragraph 127 of Plaintiff's Complaint.

128.  Defendants deny the allegations contained in Paragraph 128 of Plaintiff's Complaint.

129.  Defendants deny the allegations contained in Paragraph 129 of Plaintiff's Complaint.

130.  Defendants deny the allegations contained in Paragraph 130 of Plaintiff's Complaint.

131.  Defendants deny the allegations contained in Paragraph 131 of Plaintiff's Complaint.

132.  Defendants deny the allegations contained in Paragraph 132 of Plaintiff's Complaint.

133.  Defendants deny the allegations contained in Paragraph 133 of Plaintiff's Complaint.

134.  Defendants deny the allegations contained in Paragraph 134 of Plaintiff's Complaint.

135.  Defendants deny the allegations contained in Paragraph 135 of Plaintiff's Complaint.

## SIXTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS

136.  Defendants incorporate by reference their responses to Paragraphs 1-135 of Plaintiff's Complaint as if fully set forth herein.

137.  Defendants admit that Bard owns a facility where vena cava filters are manufactured and that filters under the trademark Eclipse™ Filter System were manufactured

1   at that facility. Defendants further admit that BPV designs, sells, markets, and distributes
2   inferior vena cava filters and that BPV designed, sold, marketed, and distributed filters under
3   the trademark Eclipse™ Filter System. Defendants deny any remaining allegations contained
4   in Paragraph 137 of Plaintiff's Complaint.

5       138.   Defendants deny the allegations contained in Paragraph 138 of Plaintiff's
6   Complaint.

7       139.   Defendants deny the allegations contained in Paragraph 139 of Plaintiff's
8   Complaint.

9       140.   Defendants deny the allegations contained in Paragraph 140 of Plaintiff's
10  Complaint, including all sub-parts thereof.

11      141.   Defendants deny the allegations contained in Paragraph 141 of Plaintiff's
12  Complaint.

13      142.   Defendants deny the allegations contained in Paragraph 142 of Plaintiff's
14  Complaint.

15      143.   Defendants deny the allegations contained in Paragraph 143 of Plaintiff's
16  Complaint.

17      144.   Defendants deny the allegations contained in Paragraph 144 of Plaintiff's
18  Complaint.

19                           **SEVENTH CAUSE OF ACTION**
20                           **FRAUD AND CONCEALMENT**

21      145.   Defendants incorporate by reference their responses to Paragraphs 1-144 of
22  Plaintiff's Complaint as if fully set forth herein.

23      146.   Defendants deny the allegations contained in Paragraph 146 of Plaintiff's
24  Complaint.

25      147.   Defendants deny the allegations contained in Paragraph 147 of Plaintiff's
26  Complaint.

27

28

148.   Defendants deny the allegations contained in Paragraph 148 of Plaintiff's Complaint.

149.   Defendants deny the allegations contained in Paragraph 149 of Plaintiff's Complaint.

150.   Defendants deny the allegations contained in Paragraph 150 of Plaintiff's Complaint.

151.   Defendants deny the allegations contained in Paragraph 151 of Plaintiff's Complaint.

152.   Defendants deny the allegations contained in Paragraph 152 of Plaintiff's Complaint.

153.   Defendants deny the allegations contained in Paragraph 153 of Plaintiff's Complaint.

## PRAYER FOR RELIEF

Furthermore, responding to the unnumbered Paragraph, including sub-parts, following the heading "PRAYER FOR RELIEF" and beginning "WHEREFORE," Defendants deny the allegations contained in such Paragraph and all sub-parts thereof.

Defendants further deny each and every allegation not specifically admitted herein.

## DEFENSES

Defendants allege as affirmative defenses the following:

1.   Plaintiff's Complaint filed herein fails to state a claim or claims upon which relief can be granted under Rule 12 of the Federal Rules of Civil Procedure.

2.   The sole proximate cause of Plaintiff's damages, if any were sustained, was the negligence of a person or persons or entity for whose acts or omissions Defendants were and are in no way liable.

3.   Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and/or statute of repose.

4.     If Plaintiff has been damaged, which Defendants deny, any recovery by Plaintiff is barred to the extent Plaintiff voluntarily exposed himself to a known risk and/or failed to mitigate his alleged damages. To the extent Plaintiff has failed to mitigate his alleged damages, any recovery shall not include alleged damages that could have been avoided by reasonable care and diligence.

5.     If Plaintiff has been damaged, which Defendants deny, such damages were caused by the negligence or fault of Plaintiff.

6.     If Plaintiff has been damaged, which Defendants deny, such damages were caused by the negligence or fault of persons and/or entities for whose conduct Defendants are not legally responsible.

7.     The conduct of Defendants and the subject product at all times conformed to the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 301, *et seq.*, and other pertinent federal statutes and regulations. Accordingly, Plaintiff's claims are barred, in whole or in part, under the doctrine of federal preemption, and granting the relief requested would impermissibly infringe upon and conflict with federal laws, regulations, and policies in violation of the Supremacy Clause of the United States Constitution.

8.     If Plaintiff has been damaged, which Defendants deny, such damages were caused by unforeseeable, independent, intervening, and/or superseding events for which Defendants are not legally responsible.

9.     There was no defect in the product at issue with the result that Plaintiff is not entitled to recover against Defendants in this cause.

10.     If there were any defect in the products – and Defendants deny that there were any defects – nevertheless, there was no causal connection between any alleged defect and the product on the one hand and any damage to Plaintiff on the other with the result that Plaintiff is not entitled to recover against Defendants in this cause.

11.     Plaintiff's injuries, losses or damages, if any, were caused by or contributed to by other persons or entities that are severally liable for all or part of Plaintiff's alleged

injuries, losses or damages. If Defendants are held liable to Plaintiff, which liability is specifically denied, Defendants are entitled to contribution, set-off, and/or indemnification, either in whole or in part, from all persons or entities whose negligence or fault proximately caused or contributed to cause Plaintiff's alleged damages.

12.     Plaintiff's claims are barred to the extent that the injuries alleged in the Plaintiff's Complaint were caused by the abuse, misuse, abnormal use, or use of the product at issue in a manner not intended by Defendants and over which Defendants had no control.

13.     Plaintiff's claims are barred to the extent that the injuries alleged in the Plaintiff's Complaint were caused by a substantial change in the product after leaving the possession, custody, and control of Defendants.

14.     Plaintiff's breach of warranty claims are barred because: (1) Defendants did not make any warranties, express or implied, to Plaintiff; (2) there was a lack of privity between Defendants and Plaintiff; and (3) notice of an alleged breach was not given to the seller or Defendants.

15.     Plaintiff's claims for breach of implied warranty must fail because the product was not used for its ordinary purpose.

16.     Defendants neither had nor breached any alleged duty to warn with respect to the product, with the result that Plaintiff is not entitled to recover in this cause.

17.     Plaintiff's claims are barred by Defendants' dissemination of legally adequate warnings and instructions to learned intermediaries.

18.     At all relevant times, herein, Plaintiff's physicians were in the position of sophisticated purchasers, fully knowledgeable and informed with respect to the risks and benefits of the subject product.

19.     If Plaintiff has been damaged, which Defendants deny, the actions of persons or entities for whose conduct Defendants are not legally responsible and the independent knowledge of these persons or entities of the risks inherent in the use of the product and other

independent causes, constitute an intervening and superseding cause of Plaintiff's alleged damages.

20.     To the extent that injuries and damages sustained by Plaintiff, as alleged in Plaintiff's Complaint, were caused directly, solely, and proximately by sensitivities, medical conditions, and idiosyncrasies peculiar to Plaintiff not found in the general public, they were unknown, unknowable, or not reasonably foreseeable to Defendants.

21.     Defendants believe, and upon that ground allege, that Plaintiff was advised of the risks associated with the matters alleged in Plaintiff's Complaint and knowingly and voluntarily assumed them. Pursuant to the doctrine of assumption of the risk, informed consent, release, waiver, or comparative fault, this conduct bars in whole or in part the damages that Plaintiff seeks to recover herein.

22.     At all relevant times during which the device at issue was designed, developed, manufactured, and sold, the device was reasonably safe and reasonably fit for its intended use, was not defective or unreasonably dangerous, and was accompanied by proper warnings, information, and instructions, all pursuant to generally recognized prevailing industry standards and state-of-the-art in existence at the time.

23.     Plaintiff's claims are barred because Plaintiff suffered no injury or damages as a result of the alleged conduct and do not have any right, standing, or competency to maintain claims for damages or other relief.

24.     Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or laches.

25.     If Plaintiff suffered any damages or injuries, which is denied, Defendants state that Plaintiff's recovery is barred, in whole or in part, or subject to reduction, under the doctrines of contributory and/or comparative negligence.

26.     In the further alternative, and only in the event that it is determined that Plaintiff is entitled to recover against Defendants, recovery should be reduced in proportion to the degree or percentage of negligence, fault or exposure to products attributable to Plaintiff,

1    any other defendants, third-party defendants, or other persons, including any party immune

2    because bankruptcy renders them immune from further litigation, as well as any party, co-

3    defendant, or non-parties with whom Plaintiff has settled or may settle in the future.

4          27.   Should Defendants be held liable to Plaintiff, which liability is specifically

5    denied, Defendants would be entitled to a setoff for the total of all amounts paid to Plaintiff

6    from all collateral sources.

7          28.   Plaintiff's claims may be barred, in whole or in part, from seeking recovery

8    against Defendants pursuant to the doctrines of res judicata, collateral estoppel, release of

9    claims, and the prohibition on double recovery for the same injury.

10         29.   The injuries and damages allegedly sustained by Plaintiff may be due to the

11   operation of nature or idiosyncratic reaction(s) and/or pre-existing condition(s) in Plaintiff

12   over which Defendants had no control.

13         30.   The conduct of Defendants and all activities with respect to the subject product

14   have been and are under the supervision of the Federal Food and Drug Administration

15   ("FDA"). Accordingly, this action, including any claims for monetary and/or injunctive relief,

16   is barred by the doctrine of primary jurisdiction and exhaustion of administrative remedies.

17         31.   Defendants assert any and all defenses, claims, credits, offsets, or remedies

18   provided by the Restatements (Second and Third) of Torts and reserve the right to amend

19   their Answer to file such further pleadings as are necessary to preserve and assert such

20   defenses, claims, credits, offsets, or remedies.

21         32.   The device at issue complied with any applicable product safety statute or

22   administrative regulation, and therefore Plaintiff's defective design and warnings-based

23   claims are barred under the Restatement (Third) of Torts: Products Liability § 4, *et seq.* and

24   comments thereto.

25         33.   Plaintiff cannot show that any reasonable alternative design would have

26   rendered the Eclipse™ Filter inferior vena cava filter device as alleged in Plaintiff's

27   Complaint to be safer overall under the Restatement (Third) of Product Liability § 2, cmt. f,

28

1  nor could Defendants have known of any alternative design that may be identified by
2  Plaintiff.

3      34.    The device at issue was not sold in a defective condition unreasonably
4  dangerous to the user or consumer, and therefore Plaintiff's claims are barred under the
5  Restatement (Second) of Torts: Products Liability § 402A and comments thereto, and
6  comparable provisions of the Restatement (Third) of Torts (Products Liability).

7      35.    At all relevant times during which the device at issue was designed, developed,
8  manufactured, and sold, the device was reasonably safe and reasonably fit for its intended
9  use, was not defective or unreasonably dangerous, and was accompanied by proper warnings,
10 information, and instructions, all pursuant to generally recognized prevailing industry
11 standards and state-of-the-art in existence at the time.

12     36.    Defendants specifically plead all affirmative defenses under the Uniform
13 Commercial Code ("UCC") now existing or which may arise in the future, including those
14 defenses provided by UCC §§ 2-607 and 2-709.

15     37.    Plaintiff's alleged damages, if any, should be apportioned among all parties at
16 fault, and any non-parties at fault, pursuant to the Uniform Contribution Among Tortfeasors
17 Act.

18     38.    No act or omission of Defendants was malicious, willful, wanton, reckless, or
19 grossly negligent, and, therefore, any award of punitive damages is barred.

20     39.    To the extent the claims asserted in Plaintiff's Complaint are based on a theory
21 providing for liability without proof of defect and proof of causation, the claims violate
22 Defendants' rights under the Constitution of the United States and analogous provisions of
23 the Colorado Constitution.

24     40.    To the extent Plaintiff seeks punitive damages, Defendants specifically
25 incorporate by reference any and all standards of limitations regarding the determination
26 and/or enforceability of punitive damages awards that arose in the decisions of *BMW of*
27 *No. America v. Gore*, 517 U.S. 559 (1996); *Cooper Industries, Inc. v. Leatherman Tool*

28

*Group, Inc.*, 532 U.S. 424 (2001); *State Farm Mut. Auto Ins. Co. v. Campbell*, 123 S. Ct. 1513 (2003); and *Exxon Shipping Co. v. Baker*, No. 07-219, 2008 U.S. LEXIS 5263 (U.S. June 25, 2008) and their progeny as well as other similar cases under both federal and state law.

41.     Any of Plaintiff's claims for punitive or exemplary damages violate, and are therefore barred by, the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and similar provisions of the Colorado Constitution, on grounds including the following:

(a)     it is a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution to impose punitive damages, which are penal in nature, against a civil defendant upon the plaintiffs satisfying a burden of proof which is less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

(b)     the procedures pursuant to which punitive damages are awarded may result in the award of joint and several judgments against multiple defendants for different alleged acts of wrongdoing, which infringes upon the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution;

(c)     the procedures to which punitive damages are awarded fail to provide a reasonable limit on the amount of the award against Defendants, which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

(d)     the procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of the award of punitive damages which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

(e)     the procedures pursuant to which punitive damages are awarded result in the imposition of different penalties for the same or similar acts, and thus violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

(f)     the procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the maximum criminal fine for the same or similar conduct, which thereby infringes upon the Due Process Clause of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

(g)     the procedures pursuant to which punitive damages are awarded permit the imposition of excessive fines in violation of the Eighth Amendment of the United States Constitution;

(h)     the award of punitive damages to the plaintiff in this action would constitute a deprivation of property without due process of law; and

(i)     the procedures pursuant to which punitive damages are awarded permit the imposition of an excessive fine and penalty.

42.     Defendants expressly reserve the right to raise as an affirmative defense that Plaintiff has failed to join all parties necessary for a just adjudication of this action, should discovery reveal the existence of facts to support such defense.

43.     Defendants reserve the right to raise such other affirmative defenses as may be available or apparent during discovery or as may be raised or asserted by other defendants in this case. Defendants have not knowingly or intentionally waived any applicable affirmative defense. If it appears that any affirmative defense is or may be applicable after Defendants have had the opportunity to conduct reasonable discovery in this matter, Defendants will assert such affirmative defense in accordance with the Federal Rules of Civil Procedure.

## REQUEST FOR JURY TRIAL

Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. demand a trial by jury on all issues appropriate for jury determination.

**WHEREFORE**, Defendants aver that Plaintiff is not entitled to the relief demanded in the Plaintiff's Complaint, and these Defendants, having fully answered, pray that this action against them be dismissed and that they be awarded their costs in defending this action and that they be granted such other and further relief as the Court deems just and appropriate.

This 4th day of December, 2015.

s/Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
PH: (404) 322-6000
FX: (404) 322-6050
Richard.North@nelsonmullins.com

James R. Condo (#005867)
Amanda Sheridan (#005867)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
JCondo@swlaw.com
ASheridan@swlaw.com

**Attorney for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

1

## <u>CERTIFICATE OF SERVICE</u>

2

3        I HEREBY CERTIFY that on December 4, 2015, I electronically filed the foregoing

4  with the Clerk of the Court by using the CM/ECF system which will send notification of such

5  filing to all counsel of record.

6

7                                    s/Richard B. North, Jr.
                                     Richard B. North, Jr.
8                                    Georgia Bar No. 545599
                                     NELSON MULLINS RILEY & SCARBOROUGH, LLP
9                                    Atlantic Station
                                     201 17th Street, NW / Suite 1700
10                                   Atlanta, GA  30363
                                     PH: (404) 322-6000
11                                   FX: (404) 322-6050
                                     Richard.North@nelsonmullins.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28