David R. Ongaro (State Bar No. 154698)
dongaro@ongaropc.com
ONGARO PC
50 California Street, Suite 3325
San Francisco, CA 94111
Telephone:   (415) 433-3900
Facsimile:   (415) 433-3950

Attorneys for Plaintiff WAYNE RUDEN

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE:  Bard IVC Filters Product Liability Litigation | Case No. 2:15-MD-02641-DGC<br><br>**PLAINTIFF WAYNE RUDEN'S NOTICE OF MOTION AND MOTION TO VACATE CONDITIONAL TRANSFER ORDER; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Complaint Filed:  October 7, 2015<br><br>***ORAL ARGUMENT REQUESTED*** |

# TABLE OF CONTENTS

I. INTRODUCTION……………………………………………………………………...1

II. ISSUE TO BE DECIDED…...……………………………………………………….2

III. SUCCINCT STATEMENT OF RELEVANT FACTS……………………………2

    A. Factual Background……………………………………………………...2

    B. Relevant Procedural History…………………………………………………..3

IV. ARGUMENT…...……………………………………………………….……………4

    A. Legal Standard…………………………………………………………...4

    B. Transfer to MDL 2461 Is Improper Because There Is No Federal Jurisdiction……………………………………………………………………….5

        1. Mr. Ruden and CPMC Are California Residents…………………...5

        2. CPMC Is An Indispensable Party Which Cannot Be Severed……...6

    C. Transfer To MDL 2461 Would Inconvenience All Parties and Witnesses...7

        1. Transfer to MDL 2461 Is Inconvenient As The Forum Is Hundreds Of Miles From The Parties and Witnesses………………………….7

        2. Transfer To MDL 2461 Is Inconvenient As It Deprives Mr. Ruden Of The Right To Choose His Forum………………………………..8

        3. Transfer to MDL 2641 Is Inconvenient As It Will Delay Resolution Of Mr. Ruden's Case………………………………………………..9

    D. Transfer To MDL 2641 Would Not Serve The Interests of Judicial Efficiency…...…………………………………………………………………..10

    E. At A Minimum, The CTO Should Be Vacated Pending The Outcome of Mr. Ruden's Remand Motion…………………………………………………..11

V. CONCLUSION AND RELIEF REQUESTED…………………………………12

1

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO VACATE;
MEMORANDUM OF POINTS AND AUTHORITIES**

# TABLE OF AUTHORITIES

**CASES**

*Black v. Merck & Co., Inc.*
   2004 WL 5392660 (C.D. Cal. 2004) .................................................................................... 6

*Dent v. Lopez*
   (E.D. Cal.) 2014 WL 3057456............................................................................................... 6

*Duncan v. Stuetzle*
   (9th Cir. 1996) 76 F.3d 1480 ................................................................................................. 6

*Early v. Northrop Grumman Corp.*
   (C.D. Cal. 2013) 2013 WL 3872218 ..................................................................................... 6

*Gilmore v. DJO Inc.*
   2010 WL 1050535 (D. Ariz. 2010................................................................................... 10

*In re Air Crash Disaster at Pago Pago, Am. Samoa, on Jan. 30, 1974*
   394 F. Supp. 799(J.P.M.L. 1975) ......................................................................................... 5

*In Re Air Crash Disaster Near Silver Plume, Colo.*,
   368 F. Supp. 810 (Jud. Pan. Mult. Lit. 1973)........................................................................ 8

*In re Grain Shipments*
   319 F. Supp. 533 (J.P.M.L. 1970) ........................................................................................ 5

*In re iPhone Application Litig.*,
   2011 WL 2149102, *3 (N.D. Cal. 2011) .............................................................................. 9

*In re Norplant Contraceptive Products Liability Litigation*
   168 F.R.D. 579 (E.D. Tex. 1996) ......................................................................................... 7

*In re: Accutane Products Liab. Litig.*
   560 F. Supp.2d 1370 (U.S. Jud. Pan. Mult. Lit. 2008) ........................................................ 12

*Jurin v. Transamerica Life Ins. Co.*,
   2014 WL 4364901 (N.D. Cal 2014) ..................................................................................... 6

*Landis v. North Amer. Co.*
   299 U.S. 248 (1936)............................................................................................................ 10

*Lopez v. Pfeffer*
   (2013) 2013 WL 5367723 ..................................................................................................... 6

*Meyers v. Bayer AG*
   143 F.Supp.2d 1044 (E.D. Wisconsin 2001) ........................................................................ 8

*Robinson v. Swedish Health Servs.*
   (W.D. Wash. 2010) 2010 WL 816818.................................................................................. 6

*Spiers v. McKesson Corp.*
   2013 WL 4671231 (N.D. Cal. 2013) .............................................................................. 5, 11

*The Fair v. Kohler Die & Specialty Co.,*
    228 U.S. 22 (1913) ................................................................................................................ 8

**STATUTES**

28 U.S.C. § 1407 ............................................................................................................................. 1, 4

28 U.S.C. § 1407(a) ............................................................................................................................ 1

28 U.S.C. 1441(b)(2) .......................................................................................................................... 6

**OTHER AUTHORITIES**

*Multidistrict Litigation and the Judicial Panel, Transfer and Tag–Along Orders Prior to
    a Determination of Remand: Procedural and Substantive Problem or Effective
    Judicial Public Policy?\*
    23 Memphis St. U.L.Rev. 841 (1993) ................................................................................... 8

*The Mechanics of Motion Practice Before the Judicial Panel on Multidistrict Litigation,*
    175 F.R.D. 589, 590 (1998) ................................................................................................... 8

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that Plaintiff Wayne Ruden will and hereby does move this Court to vacate its November 19, 2015 Conditional Transfer Order ("CTO"), Docket #154.

This motion is based on 28 U.S.C. § 1407, this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of David Ongaro, the pleadings and papers on file herein, the pleadings and papers filed in *Ruden v. C.R. Bard, Inc., et al.*, U.S. District Court, Northern District of California, Case No. 4:15-cv-05189-JSW ("N.D. Case"), and upon other matters as may be presented to the Court at hearing. Mr. Ruden respectfully requests oral argument.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The CTO, which does not meet the standard for transfer to multi-district litigation pursuant to 28 U.S.C. § 1407(a), should be vacated. Mr. Ruden's case should not be in federal court in the first place, since removal from state court was based on diversity and diversity does not exist. That is the subject of a remand motion in the Northern District of California.

Even if federal jurisdiction were proper, litigation in the Northern District of Arizona is (1) not convenient for witnesses and parties, and (2) creates judicial inefficiencies as there are unique, threshold matters to be resolved prior to commencing discovery, and there are unique, complex issues of fact to address during litigation.

## II.   ISSUE TO BE DECIDED

1.   Whether the CTO should be vacated.

## III.   SUCCINCT STATEMENT OF RELEVANT FACTS

### A.   Factual Background.

Mr. Ruden, a San Francisco resident, sues for serious injuries sustained as a result of the surgical implantation of a Bard Recovery Filter ("BRF") in his heart. Insertion of the device, designed and manufactured by C.R. Bard, Inc. and Bard Peripheral Devices, Inc. (collectively, "Bard"), was recommended by agents and employees of California Pacific Medical Center ("CPMC"), a hospital with offices and a principal place of business in San Francisco, California.

CPMC knew the BRF was defective, was unreasonably dangerous, and was causing injury and death to patients who received it. (First Amended Complaint ["FAC"], filed in the Northern District of California, ¶10, Declaration of Glen Ongaro ["Ongaro Decl."] Exh. A.) Yet, CPMC did not disclose the risks and other information known to it, including information regarding the BRF's alarmingly high rate of fracture, migration, and excessive tilting and perforation of the wall of the inferior vena cava. (*Id.*) Trusting CPMC's expertise, Mr. Ruden had the device implanted in 2004. (*Id.* ¶¶10, 12, 14, 18, 34.) Mr. Ruden continued treating at CPMC after 2004, yet CPMC never communicated a 2010 FDA letter warning of dangers of IVC filters, especially when left in situ over a long period. (*Id.* ¶¶ 57, 60.)

Eleven years after insertion, with no knowledge that the BRF may cause harm due to the high risk of fracture or migration, in March, 2015 Mr. Ruden learned that the BRF

2
**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO VACATE;
MEMORANDUM OF POINTS AND AUTHORITIES**

had both fractured *and* migrated.  (*Id*. ¶¶10, 34.)  Despite a surgical attempt to remove it, the device left fragments in his heart, causing extreme pain, physical and emotional suffering, and an ongoing, untreatable danger to Mr. Ruden's health and life.  (*Id*. ¶16.)  For the rest of his life, Mr. Ruden must undergo regular medical monitoring.  (*Id*.)  He's incurred significant medical expenses.  (*Id*.)  His earning capacity has been significantly diminished.  (*Id*. ¶34.)  Worse, though: the fragments could migrate further at any time, causing Mr. Ruden's premature death.  (*Id*.)  Experts at Stanford have informed Mr. Ruden that further surgery to remove the fragments from the right atrium of his heart is too risky, the risk of death is too great, and would not perform further surgery.  (*Id*. ¶16.)

**B.     Relevant Procedural History**.

On November 12, 2015, following service of the San Francisco Superior Court Complaint and citing non-existent diversity, Bard improperly removed this matter to the Federal District Court, Northern District of California.  (N.D. Case [Docket #1], Exh. B to Ongaro Decl.)  Mr. Ruden promptly filed a Motion for Remand, on calendar for January 22, 2015.  (*Id*. [Docket #38, Re-Noticed Docket #40], Exhs. C and D to Ongaro Decl.)

On November 13, 2015, Bard filed a Notice of Pendency of Other Actions or Proceedings, alerting the Northern District Court of the existence of this multi-district litigation ("MDL 2641.")  (*Id*. [Docket #4], Exh. E to Ongaro Decl.)  Bard also served a Notice of Potential Tag-Along in this Court.  (MDL 2641 [Docket #143.])  On November 17, 2015, Bard served and requested a stay of the Northern District proceedings and transfer to the MDL.  (N.D. Case [Docket # 12.] Exh. F to Ongaro Decl.)  Mr. Ruden

and CPMC have filed oppositions, and Bard has filed its reply.  (*Id*. [Docket ## 27, 33, 41].)  The motion must be decided prior to any other activity in the case.

## IV.     ARGUMENT

Transfer of this matter to MDL 2641 is not appropriate for several reasons.  First, this case does not belong in federal court and is the subject of a meritorious remand motion in the Northern District of California.  Second, the interests of the parties are not served by forcing a man with a serious medical condition, living in San Francisco, to travel to Phoenix, Arizona on a regular basis in order to participate in proceedings which would otherwise occur near his residence.  CPMC is based in San Francisco, the physicians who treated Mr. Ruden work in San Francisco, and physical evidence, if any, would be located in San Francisco.  This is a unique case, with unique players and a unique set of San Francisco-based facts.

Finally, as a result of those unique facts, if the case is transferred this Court will be forced to resolve issues unique to Mr. Ruden and CPMC, including the remand request, as well as unique factual questions involving Bard's communications with CPMC, Mr. Ruden's communications with CPMC, when CPMC learned of the danger the device posed when being left in situ for long periods, what was known to CPMC physicians, and similar issues.  These issues have not, and will not, be litigated by any other party in MDL 2641.

### A.     Legal Standard.

28 U.S.C. Section 1407 empowers the judicial panel on multidistrict litigation to transfer an action for coordinated or consolidated pretrial proceedings **only** when the

4

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO VACATE;
MEMORANDUM OF POINTS AND AUTHORITIES**

transfer will be "for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." (*In re Air Crash Disaster at Pago Pago, Am. Samoa, on Jan. 30, 1974*, 394 F. Supp. 799, 800 (J.P.M.L. 1975).) In making the determination as to whether transfer would be for the convenience of parties and witnesses and would promote judicial efficiency, the prior existence of a Conditional Transfer Order ("CTO") bears no weight, for the CTO is just that—conditional.

> [T]he [CTO] is an administrative device used to expeditiously transfer apparently related cases where there is no opposition to such a transfer. It should not be considered by counsel as a decision or judgment by the Panel which must be reversed before such an order can be vacated. It is simply an administrative act of the Clerk which can be and will be vacated upon the showing of good cause by any party.

(*In re Grain Shipments,* 319 F. Supp. 533, 534 (J.P.M.L. 1970) (citation omitted).)

### B. Transfer to MDL 2461 Is Improper Because There Is No Federal Jurisdiction.

Both Mr. Ruden and CPMC are California residents; as a result, remand to state court must occur. "[R]emoval in violation of the forum defendant rule alone is sufficient basis to grant a remand." (*Spiers v. McKesson Corp.*, 2013 WL 4671231 (N.D. Cal. 2013) at *2.)

#### 1. Mr. Ruden and CPMC Are California Residents.

Both Mr. Ruden and CPMC are California residents. (FAC, *supra*, ¶¶4, 5, 10; CPMC's Opposition to Bard's Northern District Motion to Stay, *supra*, pp. 3:23-4:13 [CPMC arguing against federal jurisdiction due to lack of diversity, as both it and Mr. Ruden are California residents].) CPMC was properly joined and served prior to removal. (*Id.*) As a result, it is clear that federal diversity jurisdiction does not exist.

(*See*, 28 U.S.C. 1441(b)(2) ["A civil action otherwise removable solely on the basis of…[diversity] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."].)[1]

### 2. CPMC Is An Indispensable Party Which Cannot Be Severed.

Although Bard throws up a "Hail Mary" argument that Mr. Ruden's suit against CPMC should be severed from its litigation against Bard, the analysis fails. CPMC is a necessary and indispensable party. Requiring Mr. Ruden to litigate claims which are part of a single series of transactions/occurrences in two separate courts would be severely prejudicial and is not appropriate under the facts of this case.

Mr. Ruden's allegations are part of a series of transactions and occurrences, and must be litigated in the same forum. (*See Robinson v. Swedish Health Servs.* 2010 WL 816818, *2 (W.D. Wash. 2010) [all claims arose from decedent's death, the question of whether the subject drug caused the death was common to the liability of all defendants, and plaintiff would be harmed by having to pursue his claims in two separate courts]; *accord Black v. Merck & Co., Inc.*, 2004 WL 5392660, *1, *4 and fn. 9, (C.D. Cal.

---

[1] Although Bard attempted to get around this argument by claiming "fraudulent misjoinder," Bard's theory is not recognized in the Ninth Circuit. (*See, e.g*, *Dent v. Lopez*, 2014 WL 3057456, at *6 (E.D. Cal. 2014) [recognizing that the doctrine of fraudulent misjoinder "is simply inoperative in this circuit."].) Nearly every District Court in the Ninth Circuit that has encountered the doctrine has harshly criticized and refused to apply it. (*Jurin v. Transamerica Life Ins. Co.*, 2014 WL 4364901, *3-4 (N.D. Cal 2014) [Ninth Circuit "repeatedly and consistently declined to adopt the [fraudulent misjoinder] doctrine"]; *Early v. Northrop Grumman Corp*. (C.D. Cal. 2013) 2013 WL 3872218, *2 ["While fraudulent joinder is a well-established exception to the complete-diversity rule, the doctrine of procedural or fraudulent misjoinder is a recent and unwarranted expansion of jurisdiction, one which the Court is not inclined to adopt"]; *Lopez v. Pfeffer* 2013 WL 5367723, *2 (N.D. Cal. 2013) [Defendant's fraudulent misjoinder argument is based on "law that does not exist in this district"]; *Duncan v. Stuetzle* (9th Cir. 1996) 76 F.3d 1480, 1485 ["Like many other courts in the circuit, the court 'finds it inappropriate to apply the novel theory of fraudulent misjoinder, especially considering the requirement that federal

6

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO VACATE;**
**MEMORANDUM OF POINTS AND AUTHORITIES**

2004), citing *In re Norplant Contraceptive Products Liability Litigation*, 168 F.R.D. 579, 581 (E.D. Tex. 1996).)  As such, claims against Bard and CPMC cannot properly be severed.

Consider: Mr. Ruden alleges that CPMC had an ongoing duty to warn him of the risks of the BRF, and that CPMC was unable to discover the BRF's defective condition prior to implantation because it relied on Bard's negligent misrepresentation.  (FAC, *supra*, ¶¶ 10-12, 52, 55.)  Bard's liability is measured, at least partially, by how much it told CPMC and when; CPMC's liability is measured, at least partially, by how much Bard told CPMC and when.  That is an overriding common question of fact, as is the more basic question of whether the BRF injured Mr. Ruden, how and why.  Further, Bard's communication with CPMC is a single series of transactions and occurrences.  CPMC is not only a necessary party to this action, it is an indispensable party because there is an overriding, common question of fact that could lead to inconsistent judgments if resolved separately in two court cases.

### C. Transfer To MDL 2461 Would Inconvenience All Parties and Witnesses.

Transfer of this action to MDL 2641 should not occur, as it is inconvenient to the parties and witnesses.

#### 1. Transfer To MDL 2461 Is Inconvenient As The Forum Is Hundreds Of Miles From Parties and Witnesses.

All events pertinent to this matter, including all of the medical care rendered to Mr. Ruden, occurred in the San Francisco Bay Area.  It is obviously more convenient to

---

jurisdiction 'must be rejected if there is any doubt as to the right of removal in the first instance.'"].)

7

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO VACATE;
MEMORANDUM OF POINTS AND AUTHORITIES**

all parties to litigate these matters near the sources of witnesses and evidence, rather than hundreds of miles away in Arizona. (*See, e.g. In Re Air Crash Disaster Near Silver Plume, Colo*., 368 F. Supp. 810 (Jud. Pan. Mult. Lit. 1973) [CTO properly remanded when the plaintiff's theory of liability was based on an alleged breach of warranty while plaintiffs in the MDL alleged liability based on certification/operation of the aircraft].)

### 2. Transfer To MDL 2461 Is Inconvenient As It Deprives Mr. Ruden Of The Right To Choose His Forum.

Mr. Ruden, as a San Francisco native and near-lifetime San Francisco resident, has elected to have his action heard by a jury of his peers in San Francisco. He has a right to choose his own forum. (*The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25 (1913).) This right should not be lightly disturbed—especially when being thrust into multi-district litigation. As has been explained by a district court in Wisconsin:

> Concerns about being hailed into distant courts are particularly implicated by the MDL system. Not only is the judge unknown, but the proceeding is all but certain to be even farther from home, and plaintiff's chosen counsel may have little power to shape the course of the litigation.

(*Meyers v. Bayer AG*, 143 F.Supp.2d 1044 (E.D. Wisconsin 2001), noting Earle F. Kyle, IV, *The Mechanics of Motion Practice Before the Judicial Panel on Multidistrict Litigation,* 175 F.R.D. 589, 590 (1998) ["the Panel can seize control of your case, thrust you into someone else's litigation halfway across the country, and relegate you to '100th chair' status in an already over-lawyered mass litigation"]; Mike Roberts, *Multidistrict Litigation and the Judicial Panel, Transfer and Tag–Along Orders Prior to a Determination of Remand: Procedural and Substantive Problem or Effective Judicial Public Policy?,* 23 Memphis St. U.L.Rev. 841, 843 (1993) [observing that a plaintiff

8

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO VACATE;
MEMORANDUM OF POINTS AND AUTHORITIES**

may be "swiftly transferred from his state court to his home federal district and then whisked to an unknown . . . . United States district judge…"].)

This wrongful maneuver is exactly what Bard has done here: the lightning-fast whisking away of a plaintiff from his home court into a federal court and then moving swiftly again into a foreign federal court hundreds of miles from his home.  Mr. Ruden's choice of forum should be upheld.

### 3. Transfer to MDL 2641 Is Inconvenient As It Will Delay Resolution of Mr. Ruden's Case.

Mr. Ruden's heart may be pierced at any moment due to Bard and CPMC's wrongdoing.  Transfer to MDL 2641 will serve only to delay Mr. Ruden's day in court, as, even should the case be transferred to MDL 2641, it will ultimately be remanded to the San Francisco County Superior Court.  However, this process could be some months down the road.  Alternatively, the Northern District court is scheduled to hear Mr. Ruden's remand motion on January 22.

Even more than in a normal case, time is of the essence in bringing Mr. Ruden's action to trial because there is a broken piece of metal in his heart and his doctors do not know whether it will continue to work its way into his heart where it could end his life suddenly, and if so, when that might occur.  This factor multiplies the effect of any waste of time, an obvious prejudice to any plaintiff obliged to engage in pointless delay of a matter which will ultimately be remanded anyway. (*See, e.g.*, *In re iPhone Application Litig.*, 2011 WL 2149102, *3 (N.D. Cal. 2011) [stay would be "clearly prejudicial to Plaintiffs' interests in a timely resolution of their claims."].)

9
**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO VACATE;
MEMORANDUM OF POINTS AND AUTHORITIES**

### D. Transfer To MDL 2641 Would Not Serve The Interests of Judicial Efficiency.

The CTO should be vacated because this Court is not resolving related issues in MDL 2641. For example, there are no motions for remand on the MDL 2641 docket, let alone motions for remand under Northern District law. There is no indication on this docket that the doctrine of fraudulent misjoinder—at issue in Mr. Ruden's remand motion—is being considered. CPMC is not a defendant in MDL 2641, and there are no entries concerning CPMC on this Court's MDL 2641 docket.

Further, there is no indication on the docket that any plaintiff is raising the issue of why a BRF remained in his body for over a decade. In fact, it appears from this Court's docket that the primary issues this Court has dealt with, to date, are the (1) admission of numerous civil matters into the MDL and (2) preliminary issues regarding the appointment of a Plaintiff's Leadership Council, a schedule for future discovery, and still-unresolved disputes over the handling of electronically stored information. There are also items on the docket concerning privilege disputes and the sealing of documents.

If Bard had been able to demonstrate a concrete gain in judicial efficiency from transferring this matter to MDL 2641, Bard would have done so in the moving papers related to its motion for stay, which turns in part by demonstrating judicial efficiency. (*Gilmore v. DJO Inc.*, 2010 WL 1050535 (D. Ariz. 2010), citing *Landis v. North Amer. Co.*, 299 U.S. 248, 255 (1936) and *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Florida 2006) ["A party requesting a stay of proceedings has the burden of demonstrating a "clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."]; *accord*

*Spiers v. McKesson Corp.*, 2013 WL 4671231, *1 (N.D. Cal. 2013).)  Yet, Bard made no showing in its stay papers that the MDL is considering any issue related to those the Court would deal with in resolving the motion to remand.  (Bard's Motion to Stay, *supra*; Bard's Reply Re: Motion to Stay, *supra*.)  Bard's statement in their moving papers that "[t]here is nothing in the record indicating that [the Northern District Judge] will unduly delay hearing any objections to federal jurisdiction" is a virtual admission Bard has no evidence that the Court has current plans to adjudicate such matters.  (*See*, Exh. D, p. 7:11-13).

Should this matter be transferred, instead of one plaintiff waiting to hear a decision on remand, 69 plaintiffs will all have to wait for the MDL court to make that single, unique decision.  This Court should be free to manage plaintiffs and defendants who are litigating *joint* issues in MDL 2641 instead of dealing with the unique procedural and factual issues that the injection of Mr. Ruden's claims and CPMC's defenses would bring to the table.

### E.  At A Minimum, The CTO Should Be Vacated Pending The Outcome of Mr. Ruden's Remand Motion

In the unlikely event that this Court is not inclined to vacate the CTO in its entirety, Mr. Ruden requests that the CTO be vacated long enough for the Northern District of California to rule on his Motion for Remand, scheduled for hearing on January 22, 2015.  The Motion is best decided by a court in the Northern District of California.  It would be neither convenient to the parties, who reside in and have retained counsel in the Northern District of California, nor would it promote judicial economy, for this Court to be forced to familiarize itself with the substantive law at issue in that

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO VACATE;
MEMORANDUM OF POINTS AND AUTHORITIES**

Motion, which is already being considered in the Northern District of California. Adoption of the CTO would delay the hearing on Mr. Ruden's Motion. At a minimum, this Court should vacate the CTO pending the result of Mr. Ruden's remand request. (*See, e.g., In re: Accutane Products Liab. Litig.*, 560 F. Supp.2d 1370 (U.S. Jud. Pan. Mult. Lit. 2008) [CTO vacated when matter was fully briefed and scheduled for hearing in the transferring court].)

## V.   CONCLUSION AND RELIEF REQUESTED

Mr. Ruden respectfully requests that the Court grant his motion and vacate the conditional transfer order. In the alternative, Mr. Ruden requests that this Court vacate the conditional transfer order long enough for the Northern District of California court to rule on its motion for remand.

Dated: December 15, 2015                    ONGARO PC

                                            By:  */s/ David Ongaro*
                                                  David Ongaro
                                                  Attorneys for Plaintiff
                                                  WAYNE RUDEN

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of December, 2015, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

                                        */s/ David Ongaro*
                                          David Ongaro