# EXHIBIT H

1  David R. Ongaro (State Bar No. 154698)
   dongaro@ongaropc.com
2  Glen Turner (State Bar No. 212417)
   gturner@ongaropc.com
3  ONGARO PC
   50 California Street, Suite 3325
4  San Francisco, CA  94111
   Telephone:    (415) 433-3900
5  Facsimile:    (415) 433-3950

6  Attorneys for Plaintiff WAYNE RUDEN

7

**UNITED STATES DISTRICT COURT**

8

**NORTHERN DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| 10  WAYNE RUDEN, | Case No. 4:15-cv-05189-JSW |
| 11           Plaintiff, | **PLAINTIFF WAYNE RUDEN'S OPPOSITION TO BARD'S MOTION FOR STAY** |
| 12       vs. | |
| 13  C.R. BARD, INC., a New Jersey corporation, BARD PERIPHERAL VASCULAR, INC., (a subsidiary and/or division of defendant C.R. BARD, INC.) an Arizona corporation, CALIFORNIA PACIFIC MEDICAL CENTER, and DOES 1-100 INCLUSIVE, | Date:       January 8, 2016<br>Time:       9:00 a.m.<br>Location:   Courtroom 5: Second Floor<br><br>Complaint Filed:  October 7, 2015 |
| 17           Defendants. | |

**PLAINTIFF WAYNE RUDEN'S OPPOSITION TO BARD'S MOTION TO STAY**

# TABLE OF CONTENTS

I. INTRODUCTION……………………………………………………………………..………..1

II. STATEMENT OF FACTS……………………………………………………………………..2

    A. The Action………………………..…………………………………………………2

    B. The Complaint and Claims Pled Against Defendants……………………………..2

    C. Relevant Procedural History of the Federal Proceedings…………………………3

III. ARGUMENT…………………………………………………………………………………...4

    A. Legal Standard………………………………………………………………............4

    B. Mr. Ruden's Remand Motion is Meritorious……………………………………..……4

        1. This Matter Should Be Remanded Because Of The Forum Defendant Rule…………..…………………………………………………..6

        2. This Matter Should Be Remanded Because It Was Removed Under An Unapproved Theory That Would Not Apply Even if Approved………………………………………………………………………6

    C. The MDL Court is Not Resolving Related Issues………………………………...…8

    D. There Will Be No Prejudice to Bard Absent A Stay, While Mr. Ruden Would Be Severely Prejudiced Should The Case Be Stayed…………..………..10

IV. CONCLUSION……………………………………………………………………………......12

---

**PLAINTIFF WAYNE RUDEN'S OPPOSITION TO BARD'S MOTION TO STAY**

# TABLE OF AUTHORITIES

## CASES

*Addison v. Bristol–Meyers Squibb Co.*,
  No. 13–2166, 2013 WL 3187859, at *1 (N.D. Cal. June 21, 2013) .......................................... 5

*Allen v. Pfizer, Inc.*,
  2013 WL 6091766, at *2 (N.D. Cal. 2013) ........................................................................ 9, 10

*Black v. Merck & Co., Inc.*,
  2004 WL 5392660 (C.D. Cal. 2004) ....................................................................................... 7

*Carper v. Adknowledge, Inc.*,
  2013 WL 5954898, *4 (N.D. Cal. 2013) ................................................................................. 7

*Conway v. Fresh Del Monte Produce, Inc.*,
  325 F.Supp.2d 1049 (N.D. Cal. 2004) .................................................................................... 4

*Davis v. Prentiss Properties Ltd., Inc.*,
  66 F. Supp. 2d 1112 (C.D. Cal. 1999) .................................................................................... 7

*Dent v. Lopez*
  2014 WL 3057456 (E.D. Cal. 2014) ....................................................................................... 6

*Emrich v. Touche Ross & Co.*
  846 F.2d 1190 (9th Cir. 1988) ................................................................................................ 6

*Garza v. Organon USA, Inc.*,
  2013 WL 6443433, at *2 (N.D. Cal. 2013) ............................................................................ 8

*Good v. Prudential Ins. Co. of Am.*,
  5 F.Supp.2d 804 (N.D. Cal. 1998) .......................................................................................... 4

*Greene v. Wyeth*,
  344 F.Supp.2d 674 (D.Nev.2004) ........................................................................................... 7

*Hardin v. Merck & Co.*,
  2007 WL 1056790, at *3 (N.D. Cal. 2007) ............................................................................ 8

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ................................................................................................................ 7

*In re iPhone Application Litig.*,
  2011 WL 2149102, *3 (N.D. Cal. 2011) .............................................................................. 12

*In re Norplant Contraceptive Products Liability Litigation*,
  168 F.R.D. 579 (E.D. Tex. 1996) ........................................................................................... 8

*Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*,
  2001 WL 34048067, at *6 (W.D. Tenn. 2001) ....................................................................... 8

*Jones v. Bristol-Myers Squibb Co.*,
  2013 WL 3388659, at *2 (N.D. Cal. 2013) ............................................................................ 9

**PLAINTIFF WAYNE RUDEN'S OPPOSITION TO BARD'S MOTION TO STAY**

*Jurin v. Transamerica Life Ins. Co.*,
   2014 WL 4364901, *3-4 (N.D. Cal 2014) ................................................................ 6

*Landis v. North Am. Co.*,
   299 U.S. 248 (1936) ................................................................................................ 4

*League to Save Lake Tahoe v. Tahoe Regional Planning Agency*,
   558 F.2d 914 (9th Cir. 1977) ................................................................................... 6

*Lopez v. Pfeffer*
   2013 WL 5367723, *2 (N.D. Cal. 2013) ................................................................. 6

*Marble v. Organon USA, Inc.*,
   2012 WL 2237271, at *3 (N.D. Cal. 2012) ............................................................. 5

*Meyers v. Bayer AG*,
   143 F. Supp. 2d 1044 (E.D. Wis. 2001) ............................................................. 5, 12

*Nichols v. DePuy Orthopedics, Inc.*,
   2011 WL 5335619, *2 (N.D. Cal. 2011) ............................................................. 5, 8

*Osborn v. Metropolitan Life Ins. Co.*,
   341 F.Supp.2d 1123 (2004) ..................................................................................... 7

*Robinson v. Swedish Health Servs.*
   2010 WL 816818, *2 (W.D. Wash. 2010) ............................................................... 7

*Rubio v. Arndal*,
   2013 WL 796669, at *3 (E.D. Cal. 2013) ................................................................ 9

S*cheuer v. Rhodes*,
   416 U.S. 232 (1974) ................................................................................................. 7

*Shwiff v. Hartford Cas. Ins. Co.*
   2013 WL 5129688, *2 (N.D. Cal. 2013) ................................................................. 6

*Spiers v. McKesson Corp.*,
   2013 WL 4671231, *1 (N.D. Cal. 2013) ................................................. 5, 6, 10, 11

*The Fair v. Kohler Die & Specialty Co.*,
   228 U.S. 22 (1913) ................................................................................................. 11

*United Mine Workers of Am. v. Gibbs*
   383 U.S. 715 (1966) ................................................................................................. 6

**STATUTES**

28 U.S.C. § 1407 ................................................................................................................. 4

FRCP § 20(a)(2)(A)-(B) ..................................................................................................... 7

**OTHER AUTHORITIES**

Wright, Miller & Cooper, Fed. Prac. & Proc., Jurisdiction 3d § 3723 ................................ 7

## I. INTRODUCTION

Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") are in a hurry. Within a few days and without proper legal grounds, Bard removed this matter to federal court,[1] filed a motion to stay and transfer to another federal court, applied for a conditional transfer order, and filed a motion to dismiss pursuant to Rule 12(b)(6), among other actions. Bard's sole objective is to rush this case into the multi-district litigation—where it does not belong—before this Court can determine whether the suit was properly removed from state court in the first case. Tellingly, Bard's motion to stay provides no concrete reasons why a stay is necessary, but contains only generalities lifted straight from statutes.

As discussed below, before deciding Bard's motion to stay, the Court must review the merits of Mr. Ruden's motion for remand. Even a cursory look will show that a stay is improper and the matter should be returned to the San Francisco Superior Court, where it was initially filed. No party's interest, nor the interest of judicial economy, will suffer if Bard's stay request is denied. In fact, just the opposite would occur. Staying this action and transferring it to the Multi District Litigation ("MDL") 2641 would mean that the MDL, which is in its infancy, would be burdened with new, unique and temporary issues until Mr. Ruden's remand request is inevitably granted. After a lengthy delay, the parties will go back to square one: the Superior Court for San Francisco County, where Mr. Ruden—a man who may have no time to lose because a broken piece of metal from a Bard Recovery Filter ("BRF") is stuck in his heart—will finally have his day in court.

---

[1] Mr. Ruden is filing a Motion for Remand concurrently with this Opposition. All arguments contained in Mr. Ruden's remand papers are incorporated herein by reference.

1
**PLAINTIFF WAYNE RUDEN'S OPPOSITION TO BARD'S MOTION TO STAY**

## II. STATEMENT OF FACTS

### A. The Action

This action brought by Plaintiff Wayne Ruden ("Mr. Ruden" or "Plaintiff") seeks to recover damages for personal injuries and emotional distress Mr. Ruden suffered as a result of a defective medical device known as a Bard Recovery Filter ("BRF"). The BRF was designed, manufactured, distributed, and/or sold by Defendants C.R. Bard and Bard Peripheral Vascular, Inc. (collectively referred to herein as "Bard" or "Bard Defendants"). First Amended Complaint ("FAC"), ¶ 1. Mr. Ruden was a patient of hospital defendant California Pacific Medical Center ("CPMC"), when the decision was made to implant the BRF into his body in 2004 to ameliorate a clotting condition, upon the advice and recommendation of CPMC and its agents and employees, and he had an ongoing patient relationship with CPMC through 2015. *Id.*, ¶ 10.

Bard knew of the defective nature of the device before it was implanted into Mr. Ruden's body in 2004, and CPMC should have known the same if its agents and employees were properly trained to investigate the safety of medical devices which they implanted surgically. *Id.*, ¶¶ 10-12. In 2010, the FDA issued a warning letter based on 921 adverse events involving IVC filters including the BRF, especially when left in situ over a long period of time, as here. *Id.*, ¶ 13. Mr. Ruden never learned of the FDA letter or the newly-discovered risks before 2015, when he was informed the device had fractured, leaving a broken metal arm embedded in his heart and lungs, although Bard knew of adverse events contemporaneously and either informed CPMC, who negligently failed to inform Mr. Ruden, or failed to inform CPMC and the public. *Id.*, ¶¶ 13, 15. Mr. Ruden's surgeon deemed removal of the embedded fragments too risky. *Id.*, ¶ 15.

### B. The Complaint and Claims Pled Against Defendants

Mr. Ruden, a life-long San Francisco resident, filed the Complaint for Damages on October 7, 2015 in San Francisco Superior Court (Case No. 4:15-cv-05189-JSW, Docket #1), against the Bard

2

**PLAINTIFF WAYNE RUDEN'S OPPOSITION TO BARD'S MOTION TO STAY**

Defendants and CPMC. *Id*., ¶ 4. Defendant C.R. Bard, Inc. is a New Jersey corporation, and Defendant Bard Peripheral Vascular, Inc. is an Arizona corporation. Defendant CPMC, a Sutter Health associate, is located in San Francisco, California. *Id*., ¶¶ 5, 8-10.

The Complaint asserts causes of action for negligence against Bard and CPMC, strict liability and breach of implied warranty against Bard, negligent misrepresentation against Bard and CPMC, breach of fiduciary duty against CPMC, negligence – recall/retrofit against Bard and punitive damages against all defendants. Each claim is also asserted against Doe defendants.

**C.  Relevant Procedural History of the Federal Proceedings.**

Following service of the Complaint, the Bard Defendants filed removal papers on November 12, 2015, to the Federal District Court, Northern District of California. Docket #1. On November 13, 2015, Bard Defendants filed a Notice of Pendency of Other Actions or Proceedings, alerting the Court of the existence of MDL No. 2641, *In Re: Bard IVC Filters Products Liability Litigation,* in the federal District of Arizona, and purporting that said MDL is related to the instant matter. On the same date, November 13, Bard Defendants served and filed in the Bard multi-district litigation ("MDL") a Notice of Potential Tag-Along. Docket #143, U.S. Judicial Panel on Multidistrict Litigation Case No. MDL 2641 ("MDL 2641").

On November 17, 2015, Bard served and filed in the present Court this Motion to Stay the matter and transfer it to the MDL. [Docket # 12]. On November 19, 2015, Bard filed here a Motion to Dismiss several causes of action and punitive damages, pursuant to Fed. R. Civ. Proc. 12(b)(6). [Docket #18]. On November 20, 2015, the Bard Defendants filed an Amended Motion to Stay, [Docket # 19], which was subsequently renoticed on November 23, 2015, [Docket # 20]. On November 24, 2015, the notice for the Amended Motion to Stay was modified by the Court. On December 1, 2015, CPMC filed a Motion to Dismiss for Lack of Jurisdiction, or in the Alternative, Motion to Remand. [Docket #28].

3

**PLAINTIFF WAYNE RUDEN'S OPPOSITION TO BARD'S MOTION TO STAY**

## III. ARGUMENT

Bard's stay request must be denied for several reasons. First, Bard improperly removed this case to federal court based on diversity jurisdiction, which does not exist. As a result, the case must be remanded to state court. Second, the MDL 2641 court has not resolved and is not resolving related issues. Finally, there is no prejudice to Bard, but severe prejudice to Mr. Ruden, should this proceeding be stayed prior to a hearing on Mr. Ruden's remand request.

### A. Legal Standard

The decision to grant or deny a stay of proceedings pending a ruling on the transfer of the matter to the MDL lies within this Court's discretion. *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936); *Good v. Prudential Ins. Co. of Am.*, 5 F.Supp.2d 804, 809 (N.D. Cal. 1998); see also Rules of the Judicial Panel on MDL, Rule 1.5 ("The pendency of a motion…before the Panel concerning transfer…of an action pursuant to 28 U.S.C. 1407 does not affect or suspend orders and proceedings in the district court in which the action is pending and does not in any way limit the jurisdiction of that court.")

In deciding whether to rule on a motion to remand (as should be done here) or to stay an action pending transfer to an MDL court for ruling on a motion, this Court should: (1) give preliminary scrutiny to the merits of the remand motion and grant it if removal, as here, was clearly improper; (2) if jurisdictional issues appear factually or legally difficult, determine whether identical or similar issues have been raised in other cases that have been or may be transferred to the requested MDL proceeding; and (3) only if the jurisdictional issues are both difficult and similar/identical to those in cases transferred or likely to be transferred, stay the action. *Conway v. Fresh Del Monte Produce, Inc.*, 325 F.Supp.2d 1049, 1053 (N.D. Cal. 2004); 28 U.S.C. § 1407.

### B. Mr. Ruden's Remand Motion is Meritorious.

The initial factor in relation to this Court's analysis of Bard's stay request is to analyze the merits of Mr. Ruden's remand motion. Mr. Ruden refers this Court to the memorandum of points and authorities in support of the motion for a more detailed analysis, but sets forth the general grounds, below. Numerous Northern District courts have reached the precise issue

4
**PLAINTIFF WAYNE RUDEN'S OPPOSITION TO BARD'S MOTION TO STAY**

presented here: whether a pending motion to remand should be considered prior to transferring a matter to an MDL. Courts are in agreement that, when a jurisdictional issue such as a motion to remand is pending while transfer to an MDL is considered, the motion to stay should be denied when the jurisdictional issue has not yet arisen before the MDL.

Judge Alsup addressed this question, citing Northern District precedent, in *Spiers, supra*:

> The question of whether a motion to stay, pending transfer to an MDL, should be decided before a motion to remand occurs frequently. It is best to rule in the way that most furthers judicial economy, unless this would unreasonably prejudice one of the parties. Thus, when a jurisdictional issue has not yet arisen before the MDL, a motion to stay has been denied and the action remanded to state court because burdening the MDL with a new jurisdictional issue would not be in the interest of judicial economy. *Marble v. Organon,* No. 12–2213, 2012 WL 2237271, at *3 (N.D. Cal. June 15, 2012). Where, however, other cases pending before the MDL have raised the same jurisdictional issue, a stay was granted because it would be in the interest of judicial economy to have all these issues decided together. *See, e.g.,Addison v. Bristol–Meyers Squibb Co.,* No. 13–2166, 2013 WL 3187859, at *1 (N.D. Cal. June 21, 2013)."

*Id*. at *1; *see also Nichols v. DePuy Orthopedics, Inc.*, 2011 WL 5335619, *2 (N.D. Cal. 2011) ("Deferring to the MDL panel is `most appropriate' where a plaintiff's motion to remand `raises issues likely to arise in other actions pending in the MDL transferee court.'"); *Marble v. Organon USA, Inc.*, 2012 WL 2237271, at *3 (N.D. Cal. 2012) ("Therefore, deciding on plaintiffs' motion to remand would not unnecessarily duplicate the work of Judge Sippel or lead to results inconsistent with the MDL as Judge Sippel has not considered the liability of NuvaRing® distributors or the validity of their joinder as defendants. Because no other case in the MDL thus far has presented the McKesson issue, there is no economy in sending this action to MDL for resolution."); *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001) (courts should "determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding. The only reason to permit the transferee court to decide the jurisdictional issue would be to further judicial economy and consistency.").

Bard admits in their moving papers that this is the standard (Bard's MPA, p. 4:6-13).

5
**PLAINTIFF WAYNE RUDEN'S OPPOSITION TO BARD'S MOTION TO STAY**

### 1. This Matter Should Be Remanded Because of the Forum Defendant Rule.

"A civil action otherwise removable solely on the basis of . . . [diversity] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). CPMC was properly joined and served prior to removal. *See* CPMC's Opposition to Motion to Stay, pp. 3:23-4:13.

"[R]emoval in violation of the forum defendant rule alone is sufficient basis to grant a remand." *Spiers v. McKesson Corp.*, 2013 WL 4671231 (N.D. Cal. 2013) at *2. Because CPMC was properly joined and served, following which the case was improperly removed, the motion to stay should be denied.

### 2. This Matter Should Be Remanded Because It Was Removed Under An Unapproved Theory That Would Not Apply Even If Approved.

Bard's Notice of Removal was brought primarily pursuant to the theory of "fraudulent misjoinder." However, the Ninth Circuit "has not adopted, approved, nor applied" the theory of fraudulent misjoinder. *Dent v. Lopez* 2014 WL 3057456 (E.D. Cal. 2014), at *6 (recognizing that the doctrine of fraudulent misjoinder "is simply inoperative in this circuit".); accord *Jurin v. Transamerica Life Ins. Co.*, 2014 WL 4364901, *3-4 (N.D. Cal 2014); *Early v. Northrop Grumman Corp*. 2013 WL 3872218, *2 (C.D. Cal. 2013); *Lopez v. Pfeffer* 2013 WL 5367723, *2 (N.D. Cal. 2013).

Plaintiff respectfully suggests that this Court should not become the first court in the Northern District to adopt the doctrine because the fraudulent misjoinder doctrine ignores the well-settled strong presumptions against fraudulent joinder (*see, e.g., Shwiff v. Hartford Cas. Ins. Co.* 2013 WL 5129688, *2 (N.D. Cal. 2013) and removal (*see, e.g.*, *Emrich v. Touche Ross & Co.* 846 F.2d 1190, 1195 (9th Cir. 1988)), and in favor of the broadest actions allowable under the rules. (*United Mine Workers of Am. v. Gibbs* 383 U.S. 715, 724 (1966); *see also League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977) (citing *Gibbs*.) A better practice is to challenge joinder in state court, where the sticky legal questions facing a federal court attempting to, in essence, sever parties and claims from a case over which it has not yet determined that it has jurisdiction, are cleanly avoided. *See*

6
**PLAINTIFF WAYNE RUDEN'S OPPOSITION TO BARD'S MOTION TO STAY**

1 *Carper v. Adknowledge, Inc.,* 2013 WL 5954898, *4 (N.D. Cal. 2013).

2      A further reason that this Court should not adopt the fraudulent misjoinder doctrine is
3 that such adoption would rightly constitute mere *dicta* in this matter, which would not be a
4 proper matter for the fraudulent misjoinder doctrine even in the 11th Circuit, where it is
5 accepted. Because fraudulent misjoinder "appears to be part of the fraudulent joinder doctrine,"
6 (*Osborn v. Metropolitan Life Ins. Co.*, 341 F.Supp.2d 1123, 1127 (2004), citing Wright, Miller
7 & Cooper, Fed. Prac. & Proc., Jurisdiction 3d § 3723 at 656; *Greene v. Wyeth,* 344 F.Supp.2d
8 674, 684–85 (D.Nev.2004), (fraudulent misjoinder is a "logical extension" of the fraudulent
9 joinder doctrine), it is only available when the plaintiff obviously cannot state a cause of action
10 against a defendant even after amending his or her complaint. *Davis v. Prentiss Properties Ltd.,*
11 *Inc.*, 66 F. Supp. 2d 1112, 1113, 1115-16 (C.D. Cal. 1999); *accord* S*cheuer v. Rhodes*, 416 U.S.
12 232, 236 (1974), *abrogated on other grounds* in *Harlow v. Fitzgerald*, 457 U.S. 800, 814
13 (1982).

14      However, Mr. Ruden's claims against Bard and his claims against CPMC arise, at least
15 partially, from the same transaction and occurrence, and therefore the two defendants are
16 properly joined together. FRCP § 20(a)(2)(A)-(B). Mr. Ruden's claims are clearly based on an
17 injury caused him by a device that was placed in the stream of commerce by Bard and
18 implanted in Mr. Ruden by CPMC's agents and employees after receiving it from that same
19 stream of commerce. Further, communications between CPMC and Bard are directly relevant
20 to the fact that the device remained in Mr. Ruden's body for some 11 years prior to the
21 discovery that, at some point, it had fractured and gone into his heart. That is one series of
22 transactions and occurrences. *See Robinson v. Swedish Health Servs.* 2010 WL 816818, *2
23 (W.D. Wash. 2010) (all claims arose from decedent's death, the question of whether the subject
24 drug caused the death was common to the liability of all defendants, and plaintiff would be
25 harmed by having to pursue his claims in two separate courts); *accord Black v. Merck & Co.,*
26 *Inc.*, 2004 WL 5392660 (C.D. Cal. 2004), *1, *4 and fn. 9, citing *In re Norplant Contraceptive*

27
28

*Products Liability Litigation*, 168 F.R.D. 579, 581 (E.D. Tex. 1996).[2]

Because removal was improper, the motion to stay should be denied and instead, the matter should be remanded to the San Francisco County Superior Court

### C. The MDL Court is Not Resolving Related Issues.

Even if, *arguendo*, this Court concluded that the case should not be immediately remanded, this matter should not be stayed because the MDL court is not resolving related issues. Unlike the present case, each case cited by Bard in support of its stay request included a showing that the transferee MDL court *was already hearing and deciding similar issues*. *See Hardin v. Merck & Co.*, 2007 WL 1056790, at *3 (N.D. Cal. 2007) ("given that [MDL court] Judge Fallon apparently has fifty or so other cases where the fraudulent joinder of McKesson and/or Amerisource as defendants is at issue, Judge Fallon undoubtedly possesses great familiarity with the facts and precise legal issues involved."); *Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*, 2001 WL 34048067, at *6 (W.D. Tenn. 2001) ("The Court notes that because this case may join many others in the Eastern District of Louisiana, where the same jurisdictional issues are under consideration, the considerations of judicial efficiency and uniformity of result warrant a deferral of Plaintiffs' Motion to Remand to allow Judge Fallon in the Eastern District of Louisiana to determine whether this case should become an MDL case."); *Garza v. Organon USA, Inc.*, 2013 WL 6443433, at *2 (N.D. Cal. 2013) (citation omitted) ("Since the question whether McKesson is a proper defendant in the NuvaRing cases is now before the MDL, the court finds that judicial economy would be better served by staying this case pending the transfer, rather than by considering the motion to remand."); *Nichols v. DePuy Orthopaedics, Inc.*, 2011 WL 5335619, at *2 (N.D. Cal. Nov. 2, 2011) (citation omitted) ("Over 200 cases involving Defendant DePuy and similar questions of fact regarding the Pinnacle Cup System have been transferred to MDL No. 2244. Thus, the Court finds that granting a stay in this case would prevent the Court from needlessly duplicating work that will be done by the MDL transferee court, and would also eliminate the possibility of this Court

---

[2] See Mr. Ruden's briefing in support of his simultaneously filed Motion to Remand for a broader discussion of why the fraudulent misjoinder doctrine fails in this matter.

1 issuing a ruling inconsistent with the MDL court's."); *Rubio v. Arndal*, 2013 WL 796669, at *3
2 (E.D. Cal. 2013) (citation omitted) ("Defendants explain that the jurisdictional question raised
3 in Plaintiffs' motion to remand: the fraudulent misjoinder of a non-diverse defendant, is
4 currently pending before Judge Goodwin in an identical Ethicon MDL case removed to the
5 Central District of California. Therefore, any ruling by this Court on an identical jurisdictional
6 question could produce an inconsistent ruling."); *C.A. by Allen v. Pfizer, Inc.*, 2013 WL
7 6091766, at *2 (N.D. Cal. 2013) ("It is undisputed that this action involves common issues with
8 cases previously transferred to the Zoloft MDL, including the issue of whether McKesson is a
9 fraudulently joined defendant. Staying this case and permitting the MDL court to resolve the
10 issue of fraudulent joinder globally, as opposed to adjudicating the issue prior to transfer,
11 promotes judicial consistency and uniformity and avoids conflicting results."); *Jones v. Bristol-*
12 *Myers Squibb Co.*, 2013 WL 3388659, at *2 (N.D. Cal. 2013) (citations omitted) ("More
13 importantly, other courts in this district have found that the same fraudulent joinder issue BMS
14 raises here, `will likely be raised in every other action involving McKesson,' and should be
15 decided by the MDL.")

16 This is simply not the case here. A copy of the docket of *IN RE: Bard IVC Filters*
17 *Products Liability Litigation*, Case No. 2:15-md-02641-DGC, D. Arizona (the "MDL Case"), as
18 of the time of drafting this motion, is attached hereto. Turner Decl., Exh. A, docket as of
19 December 4, 2015. There are no motions for remand on this docket. *Id*. There is no indication
20 on this docket that the doctrine of fraudulent misjoinder is being considered. *Id*. CPMC is not
21 a defendant, and there are no entries concerning CPMC on this docket. *Id*. There is no
22 indication on the docket that any plaintiff is raising the issue of why a BRF or any other Bard
23 filter remained in his body for over a decade. *Id*. In fact, it appears from this docket that the
24 primary issues the MDL Court has dealt with, to date, are the (1) admission of numerous civil
25 matters into the MDL and (2) preliminary issues regarding the appointment of a Plaintiff's
26 Leadership Council, a schedule for future discovery, and still-unresolved disputes over the
27 handling of electronically stored information. *Id*., Exh. B, Docket nos. 203, 237, 248-49. There
28 are also items on the docket concerning privilege disputes and the sealing of documents. *See*

*also Id.*, Exh. C, Civil Docket for Case MDL No. 2641.

Bard made no showing in their stay papers that the MDL is considering any issues related to those the Court would deal with in resolving the motion to remand. Bard's moving papers put the cart before the horse when they state that "[t]here is nothing in the record indicating that Judge Campbell will unduly delay hearing any objections to federal jurisdiction." (Bard's MPA, p. 7:11-13). Consistent with Judge Alsup's holding in *Spiers v. McKesson Corp.*, 2013 WL 4671231, *1 (N.D. Cal. 2013), and with every case cited by Bard in which a stay was granted instead of hearing a motion to remand, it is necessary to make a showing that the MDL court is already burdened with similar issues to justify a stay and *not* necessary to make a showing that the MDL court is *not* already burdened with similar issues to justify *denial* of a stay. Otherwise, judicial economy is not merely non-existent, it is negative: instead of one plaintiff waiting to hear a decision on remand, 69 plaintiffs in the MDL court will all have to wait for the MDL court to make that single, unique decision.

### D. There Will Be No Prejudice to Bard Absent A Stay, While Mr. Ruden Would Be Severely Prejudiced Should The Case Be Stayed.

Bard asserts that it will be prejudiced if stay is denied because it will be forced to engage in "parallel proceedings in numerous courts." Bard's MPA, pp. 7:23-8:1. However, it is not Mr. Ruden's fault that Bard has been haled into court in over 80 actions around the nation based on its IVC filters, and Bard does not have the right to summon every plaintiff into the same Court merely because it has been sued many times. In fact, the authority Bard relies on for the above proposition, *C.A. by Allen v. Pfizer, Inc.*, 2013 WL 6091766 (N.D. Cal. 2013) is, of course, a case where the MDL court was already hearing the pertinent issue of fraudulent joinder. *Id*. at *2 ("this action involves common issues with cases previously transferred to the Zoloft MDL, including the issue of whether McKesson is a fraudulently joined defendant").

Even Bard would benefit by having this action heard in state court, where both Bard and CPMC would litigate identical issues together. In such case, the issue of Bard's communications with CPMC and the public could be resolved once and for all, as opposed to Bard being a defendant in a federal action and sending its employees as witnesses to a state court action

10
**PLAINTIFF WAYNE RUDEN'S OPPOSITION TO BARD'S MOTION TO STAY**

adjudicating identical issues, where Bard could risk double judgment for a single series of wrongs.

Mr. Ruden, however, would suffer multiple types of legally cognizable prejudices were the case to be stayed. First, severance of these inseparable claims into two matters could easily mean that a federal jury would accept Bard's "empty chair" defense and blame CPMC, while a state jury accepts CPMC's "empty chair" defense and blames Bard, leaving Mr. Ruden with no recovery even though both juries agreed he has been injured by culpable conduct.

Second, it is clear enough that severance of Mr. Ruden's claims into two separate actions means that he would have to maintain attorneys for, and devote his own time to, two separate actions instead of one, with all the attendant cost and energy. *Spiers v. McKesson Corp.*, 2013 WL 4671231, at *3 (N.D. Cal. 2013) ("[I]t would cause undue prejudice to plaintiffs to be forced to file and argue motions to remand in two different courts before being sent back to square one – state court, where this action belongs.")

Third, Mr. Ruden, as a San Francisco native and near-lifetime resident, has elected to have his action heard by a jury of his peers in San Francisco, and has a right to choose his own forum. *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25 (1913). This right should not be lightly disturbed, as has been explained by a district court in Wisconsin:

> Removing a case to federal court has long been known to impose a burden upon plaintiffs; at a minimum, it requires the plaintiff to present its arguments for remand in a foreign forum, often at a considerable distance from the local county courthouse and before a judge who might be less sympathetic to the plaintiff's cause than a judge who is local. . . . Concerns about being hailed into distant courts are particularly implicated by the MDL system. Not only is the judge unknown, but the proceeding is all but certain to be even farther from home, and plaintiff's chosen counsel may have little power to shape the course of the litigation. Earle F. Kyle, IV, *The Mechanics of Motion Practice Before the Judicial Panel on Multidistrict Litigation,* 175 F.R.D. 589, 590 (1998) ("the Panel can seize control of your case, thrust you into someone else's litigation halfway across the country, and relegate you to '100th chair' status in an already over-lawyered mass litigation"); Mike Roberts, *Multidistrict Litigation and the Judicial Panel, Transfer and Tag–Along Orders Prior to a Determination of Remand: Procedural and Substantive Problem or Effective Judicial Public Policy?,* 23 Memphis St. U.L.Rev. 841, 843 (1993) (observing that a plaintiff may be "swiftly transferred from his state court to his home federal district and then whisked to an unknown, unpredictable United States district judge").

11
**PLAINTIFF WAYNE RUDEN'S OPPOSITION TO BARD'S MOTION TO STAY**

*Meyers v. Bayer AG*, 143 F.Supp.2d 1044, 1048-49 (E.D. Wisconsin 2001). That is exactly what Bard is undertaking here: the lightning-fast whisking away of a plaintiff from his home court into a federal court and then swiftly again into a foreign federal court hundreds of miles from his home.

Ironically, Bard's hurried actions will inevitably bring about only delay, because they are bound to eventually fail, leaving this action right back in San Francisco Superior Court some months down the road with nothing at all having been accomplished. Even more so than is the normal case, here time is of the essence in bringing Mr. Ruden's action because there is a broken piece of metal in his heart and his doctors do not know whether it will continue to work its way into his heart, where it could end his life suddenly, and if so, when that might occur. This factor multiplies the effect of the waste of time, an obvious prejudice to any plaintiff obliged to engage in pointless delay of a matter which will ultimately be remanded anyway. *See, e.g.*, *In re iPhone Application Litig.*, 2011 WL 2149102, *3 (N.D. Cal. 2011) (stay would be "clearly prejudicial to Plaintiffs' interests in a timely resolution of their claims.")

**IV.  CONCLUSION**

Mr. Ruden respectfully requests that this Court deny Bard's motion to stay this action and transfer it to MDL 2641, and instead consider his motion for remand and remand this action to the San Francisco Superior Court, where it was properly brought.

Dated: December 4, 2015        ONGARO PC

By: */s/ Glen Turner*
    Glen Turner
    Attorneys for Plaintiff
    WAYNE RUDEN

12
**PLAINTIFF WAYNE RUDEN'S OPPOSITION TO BARD'S MOTION TO STAY**