# EXHIBIT I

Steven J. Boranian (SBN 174183)
Email: sboranian@reedsmith.com
Mark A. Sentenac (SBN 286810)
Email: msentenac@reedsmith.com
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Defendants C. R. Bard, Inc. and
Bard Peripheral Vascular, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WAYNE RUDEN,<br><br>Plaintiff,<br><br>vs.<br><br>C. R. BARD, INC., a New Jersey corporation, BARD PERIPHERAL VASCULAR, INC. (a subsidiary and/or division of defendant C. R. BARD, INC.) an Arizona corporation, CALIFORNIA PACIFIC MEDICAL CENTER, and DOES 1-100 INCLUSIVE,<br><br>Defendants. | Case No.: 4:15-cv-05189-JSW<br><br>Honorable Jeffrey S. White<br><br>**DEFENDANTS C. R. BARD, INC. AND BARD PERIPHERAL VASCULAR, INC.'S REPLY IN SUPPORT OF MOTION TO STAY**<br><br>Date: January 8, 2016<br>Time: 9:00 a.m.<br>Location: Courtroom 5; Second Floor<br><br>Compl. Filed: October 7, 2015<br>FAC Filed: December 3, 2015 |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard") hereby file this Reply in Further Support of their Motion to Stay[1]:

## I.    INTRODUCTION

Bard and Defendant California Pacific Medical Center ("CPMC") agree that the gravamen of Plaintiff's Complaint is products liability, and that CPMC has been improperly joined in the litigation by Plaintiff for the purpose of defeating federal jurisdiction. *See* CPMC's Mot. to Dismiss [Dkt. No. 28] at pp.11, 15. This case belongs in the Bard IVC Filter MDL No. 2641, which was established by the Judicial Panel on Multidistrict Litigation for the efficient resolution of IVC filter cases against Bard.  Moreover, Bard agrees that CPMC should not be required to defend itself in the MDL. *See* CPMC's Opp. to Bard's Mot. to Stay [Dkt. No. 27] at p. 1. That is precisely why Bard argued that CPMC has been fraudulently misjoined in this case and that the claims against CPMC should be severed and remanded back to state court. *See* Bard's Notice of Removal [Dkt. No. 1] at pp. 6-10.

## II.    LEGAL ARGUMENT

### A.  Plaintiff's Opposition Is Untimely

Bard filed its Motion to Stay on November 17, 2015. *See* Bard's Motion to Stay [Dkt. No. 12]. Oppositions were due on or before December 1, 2015. *See* Docket Text for Dkt. No. 12 ("Responses due by 12/1/2015."); *see also* N.D. Cal. L.R. 7.3. Plaintiff's Opposition to Bard's Motion to Stay is untimely because it was filed on December 4, 2015, three days after it was due. *See* Pl.'s Opp. [Dkt. No. 33]. Contrary to Plaintiff's argument, Bard did not file an "amended Motion to Stay." *See id.* at p. 3. Instead, in accordance with the Court's November 19, 2015 Order (*see* Dkt. No. 16), Bard renoticed its Motion to Stay by filing an Amended Notice of Motion on November 20, 2015. *See* Bard's Amended Notice of Motion to Stay [Dkt. No. 19]. While the hearing date on Bard's Motion to Stay was reset from January 14, 2016 at 1:30 p.m., *see* Docket Text for Dkt. No. 12, to January 8, 2016 at 9:00 a.m., *see* Docket Text for November 24, 2015 untitled docket entry, the briefing deadlines were not reset.

[1] Bard files this Reply in response to Plaintiff's untimely Opposition to Bard's Motion to Stay [Dkt. No. 33], and to Defendant California Pacific Medical Center's Response in Opposition to Bard's Motion to Stay [Dkt. No. 27].

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**B.  Plaintiff's And CPMC's Oppositions Apply The Wrong Standard To Determine Whether A Stay Is Appropriate**

Plaintiff's and CPMC's Oppositions are based on a fundamentally flawed assumption regarding the legal standard by which federal courts in the Northern District of California assess a motion to stay where a motion to remand is also pending. Relying on a three-step approach from *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049 (N.D. Cal. 2004), Plaintiff argues that this Court must first address the merits of a motion to remand before determining whether to stay proceedings. *See* Pl.'s Opp. [Dkt. No. 33] at p. 4.[2] But Plaintiff fails to point out that the court in *Conroy* unambiguously stated that "[t]he Ninth Circuit has not expressly adopted this approach." *Conroy*, 325 F. Supp. 2d at 1053. Thus, the approach from *Conroy* is not binding on this Court. Indeed, **numerous subsequent opinions** from the Northern District of California have explicitly rejected the approach from *Conroy* or otherwise declined to address the merits of a motion to remand before ruling on a motion to stay. *See, e.g.*, *Fortune v. McKesson Corp.*, No. C 13-03172 JSW, 2013 WL 4104121, at *2 (N.D. Cal. Aug. 12, 2013) (granting motion to stay pending transfer to MDL, notwithstanding pending motion to remand); *Aud v. McKesson Corp.*, No. C 13-03111 JSW, 2013 WL 3944436, at *2 (N.D. Cal. July 29, 2013) (granting motion to stay pending transfer to MDL, notwithstanding pending motion to remand); *see also, e.g.*, *Guinn v. Bristol-Myers Squibb Co.*, No. C 13-01487 WHA, 2013 WL 1964937, at *1 (N.D. Cal. May 10, 2013) ("In fact, following *Conroy*, other courts in the Northern District . . . have made clear that courts are not bound to preliminarily consider the merits of a remand motion before considering a motion to stay." (internal quotation marks and citation omitted)); *Jones v. Bristol-Myers Squibb Co.*, No. C 13-2415 PJH, 2013 WL 3388659, at *4 (N.D. Cal. July 8, 2013) (rejecting the three-step approach from *Conroy* and instead granting the defendant's motion to stay before addressing the merits of the plaintiff's motion to remand); *Scroggins v. Hoffman-La Roche, Inc.*, No. C 12-2615 SI, 2012 WL 2906574, at *2 (N.D. Cal. July 16, 2012) (granting motion to stay pending transfer to MDL, notwithstanding pending motion to remand); *Freitas v. McKesson Corp.*, No. C 11-05967 JW, 2012 WL 161211, at *2 (N.D.

---

[2] Without citing *Conroy* or any other authority, CPMC makes the same flawed assumption as Plaintiff that the Court needs to address whether it has jurisdiction before it can exercise its power to stay the case or sever certain claims. *See* CPMC's Opp. [Dkt. No. 27] at p. 1.

DEFENDANTS C. R. BARD, INC. AND BARD PERIPHERAL VASCULAR, INC.'S REPLY IN SUPPORT OF
MOTION TO STAY PENDING TRANSFER TO MULTIDISTRICT LITIGATION

Cal. Jan. 10, 2012) ("[T]he Court finds that Plaintiffs' reliance on *Conroy* is misplaced. First, the court in *Conroy* made clear that the 'Ninth Circuit has not expressly adopted' the approach followed by the court in that case. Second, following *Conroy,* other courts in the Northern District, including this one, have made clear that courts are *not* bound to preliminarily consider the merits of a remand motion before considering a motion to stay." (internal citation omitted)); *Nichols v. DePuy Orthopaedics, Inc.*, No. C 11-04748 JW, 2011 WL 5335619, at *2 (N.D. Cal. Nov. 2, 2011) ("[T]he Court finds that Plaintiffs' reliance on *Conroy* is misplaced. First, the court in *Conroy* made clear that the 'Ninth Circuit has not expressly adopted' the approach followed by the court in that case. Second, following *Conroy*, other courts in the Northern District have made clear that the court is not bound to 'preliminarily consider the merits of [a] remand motion before even considering a stay.'" (internal citation omitted)); *Hardin v. Merck & Co.*, No. C 07 0070 SBA, 2007 WL 1056790, at *3 (N.D. Cal. Apr. 5, 2007) (granting motion to stay pending transfer to MDL, notwithstanding pending motion to remand).

In accordance with the numerous other decisions in the Northern District of California, this Court should reject the rigid, three-step approach from *Conroy* in favor or a more pragmatic test that focuses on whether a stay furthers the goals of judicial economy without prejudicing the non-moving party. *See, e.g.*, *Fortune*, No. C 13-03172 JSW, 2013 WL 4104121, at *2 ("In the context of a motion to stay pending a motion to consolidate cases before the JPML, district courts should consider the following factors: (1) potential prejudice to the nonmoving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated.").

### C.  Granting A Stay Will Promote Judicial Efficiency

Plaintiff argues that a court should deny a motion to stay when a motion to remand is pending if "the jurisdictional issue has not yet arisen before the MDL." Pl.'s Opp. [Dkt. No. 33] at p. 5. The Court should reject Plaintiff's inflexible rule for two reasons. First, under Plaintiff's rule, no court would ever grant a motion to stay. The first court to face the issue would deny a stay because the MDL court has not had a chance to rule on the issue. Every subsequent district court, following this rule, would reach the same result for the same reason. The result would be that Plaintiff's rule

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   would foreclose the possibility of an MDL court addressing jurisdictional issues altogether, at the

2   same time foreclosing the judicial efficiencies that come with a central court deciding issues that are

3   repeating.

4        Second, although the issue of fraudulent misjoinder is not presently before the Bard IVC

5   Filter MDL court, the issue is one that is **likely to recur**.  Joining a local or non-diverse defendant,

6   such as a local healthcare provider or sales distributor, is common in medical device and

7   pharmaceutical litigation, and it is often done for the purpose of frustrating federal jurisdiction, as it

8   was here.  The issue therefore will arise again in other IVC filter cases.  Indeed, in another Bard IVC

9   Filter matter, Bard removed the case to the District of Delaware on the basis of fraudulent

10  misjoinder. *See Fraser-Johnson v. C. R. Bard, Inc.*, Case No. 1:15-cv-00968-UNA [Dkt. No. 1] (D.

11  Del. Oct. 23, 2015). The plaintiff has moved to remand the case, *see id.* [Dkt. No. 10], and to vacate

12  the JPML's Conditional Transfer Order. *See Fraser-Johnson v. C. R. Bard, Inc.*, MDL No. 2641,

13  DE/1:15-cv-00968 [Dkt. No. 10] (J.P.M.L. Nov. 18, 2015). Because the JPML will likely finalize

14  transfer of the *Fraser-Johnson* matter to the Bard IVC Filter MDL,[3] the issue of fraudulent

15  misjoinder is one that is ***likely*** to be addressed by the MDL.

16       The Bard IVC Filter MDL is relatively new, having been created by the JPML on August 17,

17  2015. Therefore, it should not be surprising that to date only a few plaintiffs have attempted to

18  circumvent the efficiencies of the MDL by fraudulently misjoining non-diverse defendants. That the

19  Bard IVC Filter MDL is at its infancy should not foreclose a stay of this action. The issue of

20  fraudulent misjoinder will inevitably arise again in the Bard IVC Filter litigation, either in this

21  District or in another Federal District Court, where a plaintiff seeks to avoid the MDL by artificially

22  destroying diversity. Where, as here, a jurisdictional issue will likely arise in other cases transferred

23  to an MDL, granting a defendant's request for a stay so that the MDL court can uniformly resolve

24

25  [3]  The JPML routinely finalizes Conditional Transfer Orders even if they are opposed on
    jurisdictional grounds. *See* Bard's Motion to Stay [Dkt. No. 12] at p. 3; *see also, e.g.*, *In re: Lipitor
26  (Atorvastatin Calcium) Mkt., Sales Pracs. and Prods. Liab. Litig.*, MDL No. 2502, 2015 WL
    7769022, at *2 (J.P.M.L. June 8, 2015) (transferring cases for consolidation despite pending
27  objections to federal jurisdiction); *In re: Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354
    (J.P.M.L. 2005) ("[The] pendency of a motion to remand to state court is not a sufficient basis to
28  avoid inclusion in Section 1407 proceedings. We note that motions to remand . . . can be presented
    to and decided by the transferee judge.").

DEFENDANTS C. R. BARD, INC. AND BARD PERIPHERAL VASCULAR, INC.'S REPLY IN SUPPORT OF
MOTION TO STAY PENDING TRANSFER TO MULTIDISTRICT LITIGATION

the issue best serves the interests of judicial economy. *See Addison v. Bristol-Myers Squibb Co.*, No. C 13-02166 WHA, 2013 WL 3187859, at *1 (N.D. Cal. June 21, 2013) (granting motion to stay, where jurisdictional issue "will likely be raised in every other action"); *Nichols v. DePuy Orthopaedics, Inc.*, No. C 11-04748 JW, 2011 WL 5335619, at *2 (N.D. Cal. Nov. 2, 2011) (granting motion to stay, where jurisdictional issue would likely arise in other, similar actions).

**D. CPMC Will Not Be Prejudiced by a Stay; Instead, Its Interests Are Aligned With Bard's Interests**

The only prejudice that CPMC alleges it will suffer in the event of a stay (and the resulting transfer of this case to the MDL) is that it will be required to "defend[] itself in a foreign jurisdiction," i.e., the MDL in Arizona. CPMC's Opp. to Bard's Mot. to Stay [Dkt. No. 27] at p. 1. Bard agrees with CPMC that CPMC should not be required to litigate the merits of Plaintiff's claims against it in the MDL in Arizona. Granting Bard's Motion to Stay achieves this result.

Bard's position in this case is that CPMC—a fraudulently misjoined party—should be severed and remanded to state court. *See* Bard's Notice of Removal [Dkt. No. 1] at pp. 6-8; *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008) (severing and remanding fraudulently misjoined medical malpractice claims against health care providers in product liability action against medical device manufacturer). In the alternative, Plaintiff's claims against CPMC should be severed and remanded pursuant to Rule 21 because CPMC is not a necessary and indispensible party. *See* Bard's Notice of Removal [Dkt. No. 1] at pp. 8-10. CPMC argues in its Motion to Dismiss that Plaintiff has failed to state a claim against it. *See* CPMC's Mot. to Dismiss [Dkt. No. 28] at pp. 5-11. Staying this case allows the MDL court to consider all of these positions. If the MDL court agrees that CPMC is a fraudulently misjoined party or is not a necessary and indispensible party, the MDL court will sever and remand the medical malpractice case to state court, where it belongs, and retain the products liability case in the MDL, where it belongs. Alternatively, if the MDL court grants CPMC's Motion to Dismiss, CPMC will be dismissed from the case altogether. If the MDL court disagrees with Bard's jurisdictional argument and denies CPMC's Motion to Dismiss, the entire action will be remanded to state court. Under all of the possible scenarios, CPMC will not be required to litigate the merits of Plaintiff's claims against it in the MDL in Arizona. Therefore, Bard and CPMC's

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  positions are aligned insofar as both parties believe that the federal court action against CPMC

2  should be terminated.

3  **E. Plaintiff Will Not Be Prejudiced By A Stay, Whereas Bard Will Prejudiced Without A Stay**

4

5  Plaintiff's arguments that he will be prejudiced by a stay are unavailing. His assertion that he

6  will be prejudiced by having to litigate against competing "empty chair" defenses is speculative, at

7  best, and he cites no authority for his position. Additionally, while Plaintiff argues that he will be

8  prejudiced by having to litigate on two fronts (both state and federal court), that is simply the result

9  of Plaintiff trying to fraudulently misjoin two, legally and factually distinct claims. Furthermore,

10 Plaintiff's concern about having to litigate his case in a "foreign federal court hundreds of miles

11 from his home" overstates the inconvenience, if any, of litigating in another district and disregards

12 Bard's right to removal and transfer to the MDL, where judicial economy is best served. *See Sutton

13 v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008) (recognizing the defendants' "right to removal

14 in the remaining multidistrict action," which "preserve[s] the interests of judicial expediency and

15 justice."[4] Finally, Plaintiff's assertion that a stay somehow unnecessarily delays his action has been

16 rejected by other courts addressing similar arguments by plaintiffs. *See, e.g., Little v. Pfizer, Inc.*,

17 No. C-14-1177 EMC, 2014 WL 1569425, at *3 (N.D. Cal. Apr. 18, 2014) (granting a motion to stay,

18 with a resulting delay on a decision on a motion to remand, "does not constitute prejudice sufficient

19 to outweigh the efficiency gains of staying this action"); *Walker v. Merck & Co.*, No. 05-CV-360-

20 DRH, 2005 WL 1565839, at *2 (S.D. Ill. June 22, 2005) ("[T]he Court finds that while Plaintiffs

21 might well be subjected to some delay as a result of the issuance of a stay, that prejudice does not

22 outweigh the judicial economy interests.").

---

23 [4] Plaintiff's concern also disregards the fact that Congress has enacted the MDL legislation that
   allows a single MDL court to exercise nationwide personal jurisdiction without regard to traditional
24 concerns of *in personam* jurisdiction and venue. *See In re Agent Orange Prod. Liab. Litig.*, MDL
   No. 381, 818 F.2d 145, 163 (2d Cir. 1987) ("Congress may, consistent with the due process clause,
25 enact legislation authorizing the federal courts to exercise nationwide personal jurisdiction. . . . One
   such piece of legislation is 28 U.S.C. § 1407 (1982), the multidistrict litigation statute.") (internal
26 citation omitted); *In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L.1976)
   ("Transfers under Section 1407 are simply not encumbered by considerations of in personam
27 jurisdiction and venue . . . Following a transfer, the transferee judge has all the jurisdiction and
   powers over pretrial proceedings in the actions transferred to him that the transferor judge would
28 have had in the absence of transfer.").

DEFENDANTS C. R. BARD, INC. AND BARD PERIPHERAL VASCULAR, INC.'S REPLY IN SUPPORT OF
MOTION TO STAY PENDING TRANSFER TO MULTIDISTRICT LITIGATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

On the other hand, without a stay, Bard will suffer the prejudice of potentially inconsistent rulings by different federal courts addressing the same jurisdictional issue, as well as other issues. Additionally, without a stay, before this case is transferred to the MDL, Bard will be required to litigate this action in parallel proceedings in multiple courts without the full benefit of the highly organized process of the MDL proceedings. This creates the risk that Bard could be forced litigate the same issues in this case before this Court and the MDL court. For example, if this Court denies Bard's Motion to Stay and then also denies Plaintiff's Motion to Remand and the case is transferred to the MDL, Judge Campbell could revisit the jurisdictional issue, forcing Bard to litigate it twice. *See Jones v. Bristol-Myers Squibb Co.*, No. C 13–2415 PJH, 2013 WL 3388659, at *3 (N.D. Cal. Jul. 8, 2013) (describing this and other prejudice that could befall a defendant if a court denies a motion to stay when a motion to remand is also pending). Thus, while Plaintiff will not be prejudiced by a stay, Bard will suffer prejudice.

**F. Plaintiff Has Fraudulently Misjoined CPMC**

As demonstrated in Bard's Notice of Removal, Plaintiff has fraudulently misjoined CPMC, and Bard properly removed this case to federal court. *See* Bard's Notice of Removal [Dkt. No. 1] at pp. 6-8. Where a defendant is fraudulently misjoined, its presence will not defeat diversity. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996) (holding diversity of citizenship requirement was satisfied by reason of fraudulent misjoinder doctrine because the alleged transactions involving the non-diverse defendants were wholly distinct from the alleged transactions involving the diverse defendants), *abrogated on other grounds in Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684-85 (D. Nev. 2004) ("[T]his Court agrees with the Fifth and Eleventh Circuits that the [*Tapscott*] rule is a logical extension of the established precedent that a plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction in federal court.") (internal citations omitted); *see also Sutton*, 251 F.R.D. at 505 (applying the doctrine of fraudulent misjoinder and holding that the plaintiff's joinder of a non-diverse, medical malpractice defendant in a product liability case was "improper").

Other courts have held that claims against a health care provider for medical malpractice are not properly joined with a product liability action against a manufacturer if they do not arise out of

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   the same transaction or occurrence and, instead, are legally and factually distinct from one another.

2   *See, e.g.*, *In re Guidant Corp., Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708,

3   Case No. 07-1129, 2007 WL 5377783, at *7 (D. Minn. June 4, 2007) (severing and remanding only

4   the claims against defendant hospital because "the basis for the causes of action against [the

5   hospital] do not arise from the same transaction and occurrences as those in the causes of action

6   against the [medical device manufactures]"); *Stone v. Zimmer, Inc.*, No. 09-08202-CIV, 2009 WL

7   1809990, at*4 (S.D. Fla. June 25, 2009) ("The joinder of the malpractice claim against [the doctor]

8   and the [pain management center] with the product liability claim against [the product manufacturer]

9   is thus inappropriate because these claims do not both involve common questions of law or fact and

10  do not assert joint, several or alternative liability arising out of the same transaction, occurrence or

11  series of transactions or occurrences.") (internal quotation omitted).

12      Like the plaintiff's claims in *Sutton*, Plaintiff's claims against CPMC do not arise out of the

13  same transaction or occurrence as the products liability claims brought against Bard.[5] The products

14  liability claims against Bard are based on the "development, testing, assembling, manufacture,

15  packaging, labeling, preparing, distribution, marketing, supplying, and/or selling" of the Bard

16  Recovery® Filter. Bard's Notice of Removal [Dkt. No. 1], Ex. B, Compl. ¶ 1. By contrast, the

17  medical malpractice and breach of fiduciary duty claims against CPMC are based on whether CPMC

18  owed a duty to Plaintiff six years after it provided its treatment and care for Plaintiff, and whether

19  _____

20  [5] Although Plaintiff filed a First Amended Complaint on December 1, 2015 [Dkt. No. 31] in an
    apparent attempt to address the multiple problems in his Original Complaint as pointed out by Bard
21  in its Notice of Removal [Dkt. No. 1] and by all defendants' in their Motions to Dismiss [Dkt. Nos.
    18 and 28], for purposes of determining whether this Court has subject matter jurisdiction, it should
22  look at the Original Complaint on file at the time of Bard's Notice of Removal and disregard
    Plaintiff's First Amended Complaint. *See Stonebrae, L.P. v. Toll Bros.*, No. C-08-0221 EMC, 2008
23  WL 2157000, at *5 (N.D. Cal. May 21, 2008) (refusing to consider the plaintiff's first amended
    complaint, filed four days after removal in an attempt to defeat diversity jurisdiction, instead
24  considering only the plaintiff's original complaint); *Int'l Ins. Co. v. Red & White Co.*, No. C-93-0659
    MHP, 1994 WL 706362, at *2 (N.D. Cal. Dec. 12, 1994) (refusing to consider the allegations in an
25  amended complaint when determining whether removal is proper, stating that "the right of removal
    is determined by reference to the complaint *at the time the removal petition was filed*") (emphasis in
26  original); *see also Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 n.12 (9th Cir. 1989)
    (noting that because the right of removal is determined by the pleadings as they stand when the
27  petition for removal is filed, the court "will not consider the allegations contained in [an] unfiled
    Proposed First Amended Complaint"); *Collins v. Liberty Life Assur. Co. of Boston*, No. C07-1214 JF
28  (RS), 2007 WL 1430088, at *2 (N.D. Cal. May 14, 2007) ("The propriety of removal must be
    considered based upon the complaint at the time of the removal.").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    CPMC breached the duty of care and/or its fiduciary duty to Plaintiff by allegedly failing to inform

2    Plaintiff about a publically available FDA Public Health Notification directed to physicians and

3    health care providers on August 9, 2010. *See, e.g.*, *id.* at ¶¶ 54-62.

4          Plaintiff's Complaint would require one jury to analyze Bard's state of knowledge at the time

5    that the filter at issue was designed, developed, tested, and sold, and to also assess the knowledge of

6    and standard of care applicable to a hospital in assessing a notice by the FDA about IVC filters years

7    after the filter was developed and sold. Of note, the FDA notice relied on by Plaintiff in its action

8    against CPMC does not deal specifically with the Recovery® Filter or even filters manufactured by

9    Bard, but instead deals with all IVC filters that had ever been marketed up to that time. Therefore,

10   Plaintiff's theory against Bard is specific to the Recovery® Filter, whereas, Plaintiff's theory against

11   CPMC would require a jury to assess CPMC's duty to inform all of its patients that ever had an IVC

12   filter placed prior to the FDA's notice in 2010.  Plaintiff's claims allege divergent theories against

13   Bard and CPMC that involve different duties, different time frames, and different products. Thus, the

14   claims against CPMC are legally and factually distinct from the claims against Bard, and they are

15   fraudulently misjoined.

16         Bard acknowledges that certain federal district court opinions in California have declined to

17   apply the doctrine of fraudulent misjoinder. However, Plaintiff's and CPMC's briefs fail to address

18   Bard's argument that the legal and factual basis for applying fraudulent misjoinder in this action is

19   particularly "compelling" in the context of a pending MDL, where the claims against Bard can be

20   handled in the most efficient and consistent manner. *Sutton*, 251 F.R.D. at 504 ("Defendants' legal

21   and factual position [advocating for the application of fraudulent misjoinder) is compelling,

22   especially in the context of Multidistrict Litigation.").

23         Finally, CPMC argues that fraudulent misjoinder requires "egregious" misjoinder for the

24   doctrine to apply. However, while the *Tapscott* opinion uses the term "egregious," it did not

25   explicitly state that egregiousness is a prerequisite for a finding of fraudulent misjoinder. Other

26   courts applying the doctrine of fraudulent misjoinder have refused to require a finding of

27   egregiousness. *See, e.g.*, *Greene*, 344 F. Supp. 2d at 685 (severing and remanding medical

28   malpractice claims against a health care provider in a products liability action against a

Case No. 4:15-cv-05189-JSW          – 9 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   pharmaceutical company, where the plaintiffs' joinder was not "an egregious act or fraud upon the

2   Court"); *In re: Rezulin Prods. Liab. Litig.*, 168 F.Supp.2d 136, 147-48 (S.D.N.Y. 2001) (same).

3   Refusing to require an element of egregiousness is consistent with the similar doctrine of fraudulent

4   joiner, which similarly does not require an act of bad faith or intent to deceive the court. *See Plute v.*

5   *Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 n.2 (N.D. Cal. 2001) ("The term

6   'fraudulent joinder' is a term of art, used for removal purposes, and does not connote any intent to

7   deceive on the part of plaintiff or his counsel.").

8         Severing claims against a fraudulently misjoined defendant even in the absence of egregious

9   misjoinder is consistent with the Court's authority under Federal Rules of Civil Procedure, Rule 21,

10   to "add or drop a party" or to "sever any claim against a party" "on just terms." Fed. R. Civ. Proc.

11   21. Where, as here, a plaintiff's claims against two defendants in a products liability case are legally

12   and factually distinct from one another, it is "just" to sever the claims against the non-diverse

13   defendant to allow the diverse defendant to exercise its "right to removal in the remaining

14   multidistrict action and to preserve the interests of judicial expediency and justice so that all pre-trial

15   discovery on the products liability case can be coordinated in a single forum." *Sutton*, 251 F.R.D. at

16   505.

17                   **III.    CONCLUSION**

18         Contrary to Plaintiff's and CPMC's position, jurisdictional challenges are not a bar to the

19   issuance of a stay. Instead, granting a stay is necessary in this case to allow a single, MDL court to

20   resolve jurisdictional issues that are likely to repeat in this litigation. Granting a stay will not

21   prejudice CPMC or Plaintiff, but denying a stay will prejudice Bard. Thus, for the foregoing reasons,

22   Bard respectfully requests that this Court grant the Motion and issue a stay pending the JPML's

23   decision on transferring this case to MDL No. 2641.

24         DATED:  December 8, 2015        REED SMITH LLP

25

26                       By: /s/ Mark A. Sentenac

27                          Steven J. Boranian
                         Mark A. Sentenac

28                          Attorneys for Defendants C. R. Bard, Inc. and
                         Bard Peripheral Vascular, Inc.

DEFENDANTS C. R. BARD, INC. AND BARD PERIPHERAL VASCULAR, INC.'S REPLY IN SUPPORT OF
MOTION TO STAY PENDING TRANSFER TO MULTIDISTRICT LITIGATION