IN RE:  Bard IVC Filters Products Liability Litigation
USDC, District of Arizona, Case No. 2:15-MD-02641-DGC

## DEFENDANTS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM TO SEAL

## SUPPLEMENTAL LIST OF EXHIBITS

Reply in Support of Motion for Protective Order Exhibit

| | | |
|---|---|---|
| Exhibit A | Exhibit C | HHE, Apr. 27, 2004 – FILED UNDER SEAL |
| Exhibit B | | Affidavit of Robert Carr, Aug. 28, 2014 |

23283566

# EXHIBIT B

## DECLARATION OF ROBERT CARR

I, Robert Carr, declare under penalty of perjury that the following is true and correct:

1. I am over the age of 21 and am a resident of the state of Arizona. I declare of my own personal knowledge and upon the basis of the documents maintained by Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard") in the regular course of business, under the penalties of perjury, that the foregoing is true and correct.

2. I am presently employed as the Senior Director of Research and Development at Bard Peripheral Vascular Inc. ("BPV"), a subsidiary of C. R. Bard, Inc. ("C. R. Bard"). Bard manufactures and distributes inferior vena cava ("IVC") filters and has manufactured and distributed the Recovery® Filter, G2® Filter, G2® Express Filter, and Eclipse™ Filter (collectively, "Bard Filters"), each of which is an FDA-cleared product indicated for treatment of blood flow problems posing the risk of pulmonary embolism. Before joining BPV in 2002, I was employed by Nitinol Medical Technologies ("NMT"), where I was also responsible for that company's research and development of IVC filters. This declaration is based upon my personal knowledge and review of certain business records prepared and maintained in the ordinary course of business of Bard. It is submitted in support of Bard's Motion to Seal. I could and would competently testify to the matters set forth herein if called as a witness in this matter.

3. Bard or its affiliates are engaged in the development, design, manufacturing, and distribution of medical devices, including the Bard Filters. Many documents involving the Bard Filters are confidential and are maintained as such by Bard for the reasons listed below. Many of the documents at issue relate to Bard Filters other than the device implanted in the plaintiff.

4. The medical device business for IVC filters is a highly technical and sophisticated industry. It is also a highly competitive industry in which each company carefully guards its company documents, data, systems, processes, research and development, analysis, marketing strategies and trade secrets from competitors.

5. As part of and during the course of my work with Bard, I have become familiar with Bard's efforts to protect its trade secret and confidential proprietary information and

1

documents. This is information is maintained internally at Bard and distributed to employees with a need to know the information to perform their duties. It is not available outside the company. Outside physician consultants working with the company who have access to this information sign confidentiality agreements.

6. As part of and during the course of my work with NMT and Bard, I have become familiar with documentation and records associated with the design, development, and manufacture of the Bard Filters.

   a. Plaintiffs filed under seal in multiple cases certain confidential and proprietary documents concerning the design, development, testing, and manufacture of Bard Filters.

   b. These exhibits include: a confidential, internal proposal to acquire Nitinol Medical Technologies, Inc.'s IVC filter product line, a confidential presentation regarding new product introduction and design modifications, a design verification and validation report, a design input summary, an email analyzing testing results, and a characterization testing protocol. These exhibits include detailed records of Bard's product development strategy, plans, and procedures.

   c. The information contained in these exhibits required years for Bard to develop and is Bard's critical business information which is not made public by Bard.

   d. The information contained in these exhibits would be of economic value to Bard's competitors. Moreover, such value would extend not only to manufacturers of other IVC filters, but also to manufacturers of other medical devices, as the value and utility of this information is not limited to IVC filters.

7. As part of and during the course of my work with NMT and Bard, I have become familiar with documentation and records associated with the sales and marketing of the Bard Filters.

   a. Plaintiffs filed under seal in multiple cases certain confidential and proprietary documents concerning the sales and marketing of Bard Filters.

2

    b. These exhibits include an email and attachment internally circulating a draft Eclipse™ Filter Product Opportunity Appraisal, which contains detailed financial data regarding the development and marketing of the filter, and emails internally discussing strategy on how to posture the Recovery® Filter in the marketplace. These exhibits include confidential information concerning Bard's pricing, business methods and strategies, and sales projections.

    c. Information and strategy concerning Bard's pricing strategy, business methods, and sales projections required years for Bard to develop and is Bard's critical business information which is not made public by Bard.

    d. The information contained in these exhibits would be of economic value to Bard's competitors. Moreover, such value would extend not only to manufacturers of other IVC filters, but also to manufacturers of other medical devices, as the value and utility of this information is not limited to IVC filters.

8. As part of and during the course of my work with NMT and Bard, I have become familiar with documentation and records associated with quality system procedures, complaint and adverse event responses, reporting, and handling, device tracking procedures, and corrective action procedures with regard to Bard Filters.

    a. Plaintiffs filed under seal in multiple cases certain confidential and proprietary documents concerning the quality system procedures, complaint and adverse event responses, reporting and handling, device tracking procedures, and corrective action procedures relating to Bard Filters.

    b. These exhibits include: internal emails and memoranda regarding adverse event reporting, investigation and responses, Health Hazard Evaluations, Remedial Action Plans, documents related to a Crisis Communication Plan, emails and attachments regarding an FDA meeting, a presentation regarding adverse event analysis, and a chart compiling adverse event data. The information contained within these documents includes confidential business information and

      correspondence concerning Bard's complaint handling processes, quality control and quality system procedures, device tracking methods, and corrective action strategies, policies, and procedures. They represent the implementation of these processes, procedures, and policies, which Bard has in part developed in order to comply with the technical requirements provided for by the FDA and/or Bard's internal requirements.

    c. These exhibits also include a copy of the December 2004 Lehmann Report which I understand Bard has asserted is a privileged and attorney work-product document. The Report also includes concerning Bard's complaint handling processes, quality control and quality system procedures, and testing and adverse event analysis.

    d. The information contained in these exhibits is confidential business information that required years for Bard to develop and is Bard's critical business information which is not made public by Bard.

    e. The information contained in these exhibits would be of economic value to Bard's competitors. Moreover, such value would extend not only to manufacturers of other IVC filters, but also to manufacturers of other medical devices, as the value and utility of this information is not limited to IVC filters.

9. As part of my involvement with past and ongoing litigation related to the Bard Filters, I have become familiar with the deposition process and expert witness reports in this litigation, and the trade secret and confidential proprietary information and documents that are sometimes discussed during these depositions and in these expert reports.

    a. Plaintiffs conditionally filed under seal selected testimony from certain depositions taken in this litigation, including those of treating physicians and Bard and BPV employees. Plaintiffs also conditionally filed under seal certain expert reports issued in this litigation.

      b. Some of the information quoted and discussed in the testimony and expert reports concerns confidential and proprietary business information and documents which are not made public by Bard. As with the documents addressed above, the testimony refers to information that has economic value to Bard.

10. Bard invests very substantial sums of money in medical device research, testing, development, design, analysis, regulatory compliance, evaluation, and marketing. If the information Bard has developed over the years pertaining to the Bard Filters was obtained by its competitors, it would give an unfair economic advantage to those competitors.

11. Due to the economic disadvantage that would result if Bard's trade secrets and other confidential, proprietary information regarding its products were disclosed to one of its competitors, Bard seeks Protective Orders and Confidentiality Agreements to be executed by all parties seeking confidential, proprietary and trade secret information in civil lawsuits, including in products liability/personal injury litigation.

Dated: August 28, 2014.

                                                  _____
                                                  ROBERT CARR