**EXHIBIT 2**

1
Robert W. Boatman (009619) - rwb@gknet.com
Paul L. Stoller (016773) - paul.stoller@gknet.com
2
Shannon L. Clark (019708) - SLC@gknet.com
**GALLAGHER & KENNEDY, P.A.**
3
2575 East Camelback Road
Phoenix, Arizona 85016-9225
4
Telephone: (602) 530-8000

5
Ramon Rossi Lopez (CA Bar No. 86361)
(admitted *pro hac vice*)
6
**LOPEZ McHUGH LLP**
100 Bayview Circle, Suite 5600
7
Newport Beach, California 92660
rlopez@lopezmchugh.com
8

*Co-Lead/Liaison Counsel for Plaintiffs*
9

10
## IN THE UNITED STATES DISTRICT COURT

11
### FOR THE DISTRICT OF ARIZONA

12
IN RE:  BARD IVC FILTERS
PRODUCTS LIABILITY LITIGATION
13

MD No. 02641

**PLAINTIFFS' SECOND SET OF**
**REQUESTS FOR PRODUCTION OF**
**DOCUMENTS**
14

15

16
Plaintiffs, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 34,
17
hereby request that Defendants CR Bard Incorporated and Bard Peripheral Vascular
18
Incorporated produce the documents identified in the following Requests for Production
19
of Documents within thirty (30) days of this Request.  Production shall be made at the
20
offices of Gallagher & Kennedy, P.A., 2575 East Camelback Road, Phoenix, Arizona
21
85016.

22
### INSTRUCTIONS FOR REQUESTS FOR PRODUCTION
23
1.      The response to each Request shall include all documents within your
24
possession, custody, or control, including, but not limited to, documents in the possession,
25
custody, or control of your investigators, consultants, attorneys, or other agents.  Any
26
reference to "you" shall include your consultants, attorneys, or other agents.
27
2.      As used herein, the term "document" means all written, recorded, and
28
graphic and electronically stored matter of every type and description encompassed by

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

Fed. R. Civ. P. 34(a)(1), including, but not limited to, writings, graphs, charts, photographs, sound recordings, images, drawings, notes, contracts, agreements, correspondence, letters, memoranda, appointment books, calendars, all forms of communication (including physical documents, e-mail, instant messaging, texts, tweets, social-media postings and communications), and all electronically stored information in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

3.    You shall produce any and all documents responsive to each Request unless an objection is stated to a Request. If you object to all or any part of a Request, you shall state the reasons for the objection. If objection is made to part of an item or category, the part shall be specified. If you object to only part of an item or category, you shall produce any and all documents responsive to the part or parts of the item or category to which you do not object.

4.    If you contend that an identified document would be excludable from production, state the reasons for such objection or grounds for exclusion and identify each person having knowledge of the factual basis, if any, on which the privilege or other ground is asserted.

5.    You should produce documents for inspection as they are kept in the usual course of business or, alternatively, organize and label them to correspond with the categories in the request.

6.    Production of Electronically Stored Information (ESI).

a.    Production of Native Form. ESI should be produced in native form with all metadata intact unless such form would not be reasonably usable by third parties (such as ESI from legacy or proprietary systems).

b.    Production in Non-Native Form for ESI not Reasonably Usable. If ESI would not be reasonably usable by third parties, it should be produced as follows:

2

Conversion to TIFF.  ESI should be converted into *.tif image format with single-page files at 300 DPI, Group IV compression, with original orientation maintained.  All available fielded metadata and text-searchable information shall be extracted from the native document and produced with the ESI as part of the document.  Any bates labeling on the *.tif images should be done in a consistent font and should not obscure any visible text, image, or portion of the original file.

Extracted Full Text.  The producing party should produce the full extracted text in the form of a single *.txt file for each non-native file. The text file name shall correspond to the bates label of the associated document.

Production of Metadata.  The producing party should provide the following metadata (as applicable by file type) for all ESI: begdoc, enddoc, begattach, endattach, custodians, recordtype, doctype, emailsubject, docauthor, to, cc, bcc, docdate, parentdate, datesent, timesent, datercvd, timercvd, datelastmod, timelastmod, datelastprint, timelastprint, filename, title, attachname, docext, filesize, md5hash, numattach, pgcount, nativefile, textfile, organization, comments, lastauthor, revision, and locations.

Production of Load File.  For all Non-native productions, the producing party should produce an appropriate data load file in Concordance (.dat) format (DAT files should be produced in UTF8) and image load file in Opticon (.opt) format.

Preservation of Document Relationships.  In the production of TIFF format images, the producing party should preserve all relationships, such as parent-child, between documents by producing relating documents sequentially.  For parent documents with

3

attachments (or exhibits), the attachments should be produced as independent files immediately following the main/parent document. Likewise, embedded files should be produced as separate files as attachments to the file in which they were embedded.

c.  ESI with Links to other ESI or Database(s).  For any ESI files that contain links to other documents, files, ESI, web addresses, or to database information, the producing party should ensure that the relationship between the files is preserved and that such links remain active.  Where the form of production precludes the ability to have active links, the producing party should produce copies of the linked documents, files, ESI, or web addresses as related documents.  If produced ESI includes a link to a database or information in a database, the producing party should provide reasonable access to the database or to the database information in such a way that Plaintiffs can reasonably access or determine the linked information.

d.  ESI requiring Proprietary Software.  If proprietary software unavailable to Plaintiffs is required to review the producing party's ESI in native form, the producing party should provide reasonable access to the proprietary software for purposes of review of ESI by Plaintiffs or their representatives.

7.  For each document requested which you are unable to produce and which was at any time in your possession, custody or control or which you had access to, specify in detail:

a.  The nature and author of the document;

b.  All recipients of the document and any copies thereof;

c.  A summary of the information contained in the document;

d.  The date and manner in which you lost possession, custody or control of the document;

4

1          e.      Identify all persons who had access to the document while it was

2                 within your possession, custody or control; and,

3          f.      Identify all persons who have knowledge of the contents of the

4                 document.

5                         **DEFINITIONS**

6     1.     "Bard" means C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.

7     2.     "BPV" means Bard Peripheral Vascular, Inc.

8     3.     "C.R. Bard" means C.R. Bard, Inc.

9     4.     "FDA" means the federal Food and Drug Administration.

10    5.     "IVC" means inferior vena cava.

11                  **REQUEST FOR PRODUCTION**

12  **Request for Production No. 9:**

13       Complete complaint files from 1998 to the present for all Bard IVC filter products,

14  including all information related to any IVC filter complaints or adverse events on Bard's

15  Trackwise systems as well as the format of such files that predate the adoption of

16  Trackwise.

17

18  **Request for Production No. 10:**

19       All internal policies and procedures in place at any time from 2003 to the present

20  relating to:

21     a.     quality assurance,

22     b.     corrective or preventative actions,

23     c.     design controls,

24     d.     design testing,

25     e.     field assurance,

26     f.     post-market surveillance,

27     g.     complaint evaluation, investigation, or handling,

28     h.     risk management,

1          i.      risk evaluation,

2          j.      process for making a determine of malfunction versus serious injury,

3          k.      acceptance of incoming product, and

4          l.      inspection, testing, or other verification of incoming products as conforming

5                  to specified requirements.

6    This request includes all current and former policies and procedures relating to the

7    foregoing subjects.

8

9    **Request for Production No. 11:**

10         All training materials that have been used at any time from 2003 to the present for

11   quality assurance or complaint handling, including but not limited to materials in the form

12   of procedures, standard operating procedures, forms, work instructions, training logs,

13   training requirements, and testing or quizzes

14

15   **Request for Production No. 12:**

16         All documents that evince, relate, or refer to communications with King &

17   Spalding regarding Bard's response to the FDA's inspections of Bard facilities in October

18   2014 through January 2015 and the FDA's findings of violations, including the FDA's

19   issuance of Form FDA-483s to C.R. Bard and BPV, dated respectively November 25,

20   2014 and January 5, 2015, and the "Warning Letter" to C.R. Bard, dated July 13, 2015,

21   including but not limited to any and all drafts of communications to the FDA, emails or

22   other communications relating to such drafts, as well as final communications in any form

23   to the FDA.

24

25   **Request for Production No. 13:**

26         All documents that evince, relate, or refer to communications with Hogan Lovells

27   regarding Bard's response to the FDA's inspections of Bard facilities in October 2014

28   through January 2015 and the FDA's findings of violations, including the FDA's issuance

1  of Form FDA-483s to C.R. Bard and BPV, dated respectively November 25, 2014 and

2  January 5, 2015, and the "Warning Letter" to C.R. Bard, dated July 13, 2015, including

3  but not limited to any and all drafts of communications to the FDA, emails or other

4  communications relating to such drafts, as well as final communications in any form to

5  the FDA.

7  **Request for Production No. 14:**

8  All documents that evince, relate, or refer to any communications by King &

9  Spalding on behalf of Bard with the FDA regarding Bard's response to the FDA's

10  inspections of Bard facilities in October 2014 through January 2015 and the FDA's

11  findings of violations, including the FDA's issuance of Form FDA-483s to C.R. Bard and

12  BPV, dated respectively November 25, 2014 and January 5, 2015, and the "Warning

13  Letter" to C.R. Bard, dated July 13, 2015.

15  **Request for Production No. 15:**

16  All documents that evince, relate, or refer to any communications by Hogan

17  Lovells on behalf of Bard with the FDA regarding Bard's response to the FDA's

18  inspections of Bard facilities in October 2014 through January 2015 and the FDA's

19  findings of violations, including the FDA's issuance of Form FDA-483s to C.R. Bard and

20  BPV, dated respectively November 25, 2014 and January 5, 2015, and the "Warning

21  Letter" to C.R. Bard, dated July 13, 2015.

23  **Request for Production No. 16:**

24  All documents, files, or drafts that relate to the monthly reports provided to the

25  FDA by Bard in 2015 relating to the FDA's inspections of Bard facilities in October 2014

26  through January 2015 and the FDA's findings of violations, including the FDA's issuance

27  of Form FDA-483s to C.R. Bard and BPV, dated respectively November 25, 2014 and

28  January 5, 2015, and the "Warning Letter" to C.R. Bard, dated July 13, 2015, including

7

but not limited to the native files of the "periodic updates" to the FDA on which Chad
Modra worked with King & Spalding or Hogan Lovells.

**Request for Production No. 17:**

The documents that reflect the personnel at King & Spalding in addition to Mr.
Niedelmann who worked with Chad Modra in responding to the FDA arising out of the
FDA's inspections of Bard facilities in October 2014 through January 2015 and the
FDA's findings of violations, including the FDA's issuance of Form FDA-483s to C.R.
Bard and BPV, dated respectively November 25, 2014 and January 5, 2015, and the
"Warning Letter" to C.R. Bard, dated July 13, 2015.

**Request for Production No. 18:**

All files for or communications with Dr. Shane Gad and/or Dr. Scott Terratola,
relating to the FDA's inspections of Bard facilities in October 2014 through January 2015
and the FDA's findings of violations, including the FDA's issuance of Form FDA-483s to
C.R. Bard and BPV, dated respectively November 25, 2014 and January 5, 2015, and the
"Warning Letter" to C.R. Bard, dated July 13, 2015, or Bard's responses thereto.

**Request for Production No. 19:**

All communications with Dr. Shane Gad regarding IVC filter issues, including but
not limited to any analysis or reports by or from Dr. Gad regarding IVC filters.

**Request for Production No. 20:**

All communications with Dr. Scott Terratola regarding IVC filter efficacy, safety,
or performance, including but not limited to any analysis or reports by or from Dr.
Terratola regarding IVC filters.

8

**Request for Production No. 21:**

All internal information and reports by Bard regarding tracking, trending, or analysis with respect to any and all Bard IVC filters from 2003 through the present, including but not limited to:

      a.      modes of failure,

      b.      impact on patients,

      c.      patient outcomes,

      d.      the types or severity of events,

      e.      failure, severity, or event codes,

      f.      FDA codes, and/or

      g.      the nature of events.

This request includes any and all reports generated on routine or irregular bases

**Request for Production No. 22:**

All documents relating to any and all annual internal audits of Bard's quality systems from 2003 through the present.

**Request for Production No. 23:**

All documents relating to any and all external audits of Bard's systems, processes, devices, or files that include files relating to IVC filters, its quality systems, or its complaint files.

**Request for Production No. 24:**

All Failure Mode Effect Analyses (FMEAs) for Bard IVC filters from 2003 through the present.

**Request for Production No. 25:**

All clinical severity checklists relating to IVC filters that have been in effect from any time from 2003 through the present.

**Request for Production No. 26:**

The complete employment files at Bard for:

a.   Chad Modra,

b.   Maureen Uebelocker,

c.   John Wheeler, and

d.   Judy Ludwig.

**Request for Production No. 27:**

All job descriptions for the positions held by Chad Modra, Maureen Uebelocker, John Wheeler, and Judy Ludwig in 2014 and 2015.

**Request for Production No. 28:**

All information packets, agendas and "output action items" for the meetings of the "management board" responsible for the management review process.

**Request for Production No. 29:**

Chad Modra's file of notes and related materials for the meetings or actions of the "management board" responsible for the management review process.

**Request for Production No. 30:**

The notes or files of any other Bard employee relating to the meetings or actions of the "management board" responsible for the management review process.

1   **Request for Production No. 31:**

2   All documents that reflect or embody or have as any part of their subject matter the

3   management board's guidelines or rules regarding injury frequency or severity for any

4   Bard IVC filters.

5

6   **Request for Production No. 32:**

7   All documents relating to any and all Corrective and Preventative Actions (CAPA)

8   relating to any Bard IVC filter.

9

10   **Request for Production No. 33:**

11   Any and all documents that demonstrate communications from the FDA regarding

12   whether the failure of an IVC filter to deploy is a reportable event to the FDA, including

13   but not limited to any correspondence from the FDA to Bard's medical director and any

14   "meeting minutes" as testified to by Chad Modra.

15

16   **Request for Production No. 34:**

17   All documents that evince, relate, or refer to FDA guidance given to Bard

18   regarding the classification of events for purposes of reporting adverse events to the FDA,

19   including but not limited to all communications and correspondence with the FDA as well

20   as internal Bard communications such as memoranda, emails, notes, and agendas.

21

22   **Request for Production No. 35:**

23   All internal communications (including all emails) of Bard employees and agents

24   regarding the FDA's inspections of Bard facilities in October 2014 through January 2015

25   and the FDA's findings of violations, including the FDA's issuance of Form FDA-483s to

26   C.R. Bard and BPV, dated respectively November 25, 2014 and January 5, 2015, and the

27   "Warning Letter" to C.R. Bard, dated July 13, 2015, or Bard's responses thereto.  This

28   request specifically includes but is not limited to all communications regarding the

11

1  retrospective review of IVC filter complaint records and the reclassification of

2  reportability status for such records.

3

4  DATED this 4th day of January 2016.

5  **GALLAGHER & KENNEDY, P.A.**

6

7  By: _____

8  Robert W. Boatman
   Paul L. Stoller
   Shannon L. Clark
9  2575 East Camelback Road
   Phoenix, Arizona  85016-9225

10

11  **LOPEZ McHUGH LLP**
    Ramon Rossi Lopez (CA Bar No. 86361)
12  (admitted *pro hac vice*)
    100 Bayview Circle, Suite 5600
13  Newport Beach, California 92660

14  *Co-Lead/Liaison Counsel for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on January 4, 2016, a true and correct copy of the foregoing

3  was sent via U.S. Mail and/or Electronic Mail to:

4                          James R. Condo
                        Snell & Wilmer LLP
5                         One Arizona Center
                      400 East Van Buren Street
6                            Suite 1900
                      Phoenix, Arizona 85004
7                       *Attorneys for Defendants*

8                         Richard B. North, Jr.
             Nelson Mullins Riley & Scarborough LLP
9                          Atlantic Station
                   201 17th Street NW, Suite 1700
10                       Atlanta, Georgia 30363
                      *Attorneys for Defendants*

11
              *Counsel for Plaintiffs will be served in accordance
12              with the Court's Case Management Order No. 1

13

14                          _____
                                 Nancy Jo Koenes
15

16  5178716v1/26997-0001

17

18

19

20

21

22

23

24

25

26

27

28