# EXHIBIT 4

# Nelson Mullins

**Nelson Mullins Riley & Scarborough LLP**
Attorneys and Counselors at Law
Atlantic Station / 201 17th Street, NW / Suite 1700 / Atlanta, GA  30363
Tel: 404.322.6000  Fax: 404.322.6050
www.nelsonmullins.com

Matthew B. Lerner
(Admitted in GA & FL)
Tel: 404.322.6158
matthew.lerner@nelsonmullins.com

December 16, 2015

**VIA E-MAIL**

Paul L. Stoller, Esq.
Gallagher & Kennedy
2575 E. Camelback Road
Suite 1100
Phoenix, AZ 85016

  Re:  *ESI Issues*

Dear Paul:

  I am writing to follow up on my previous correspondence to you regarding ESI issues and to respond to your December 2, 2015 letter. I appreciate the opportunity to continue to work with you on these ESI issues and hope that each step of this meet and confer process will allow us to make a joint submission to the court on these issues.

**ESI Types and Location Within Bard's Information Systems**

  As an initial matter, Bard and I are struggling with your requests because, while you characterize those requests as ones that can be "easily answered," we are finding them very difficult, if not impossible, to respond to given the sheer breadth of the requests and considering Bard's worldwide operations. Bard is a multi-national corporation with numerous subsidiaries and divisions throughout the world and the United States. (The vast majority of those entities have no connection or involvement whatsoever with the company's IVC filter products.) So, as one might expect, Bard maintains many types of information on many systems and that data may span decades. So, as phrased, your broad requests would also require Bard to provide information relating to discovery for its systems around the world, down to, for example, how systems that control how elevators or heating and air systems are run in each building.

  As you know, Bard Peripheral Vascular, Inc. (BPV) in Tempe, Arizona is and has been the division responsible for Bard's IVC filters. BPV has had responsibility for the design,

*With offices in the District of Columbia, Florida, Georgia, Massachusetts, New York, North Carolina, South Carolina, Tennessee and West Virginia*

Paul L. Stoller, Esq.
December 16, 2015
Page 2

development, marketing, regulatory clearance, complaint handling, and post-market surveillance of Bard's IVC filters. Even within BPV, there are numerous departments and employees who do not work on Bard IVC filters, as the division sells a wide variety of vascular and biopsy products. So, even limiting your requests to where and how information is stored at BPV would be a tremendous undertaking and one that far outweigh the minimal benefit, if any, of having that information.

Thus, keeping the foregoing context in mind, I hope you can appreciate why your questions – such as "What types of information does Bard have?" and "Where does it keep its various sources of information?" – are not so easily answered and would in fact be an enormous, if not impossible, undertaking to identify. How and where information is stored is dependent on the division, department, and employees involved. Over the years, we have collected and produced materials based on our discussions with employees with relevant information about Bard IVC filters, and in our ESI productions, have provided metadata fields.

Regarding your questions relating to QUMAS and Master Control, as you note, those are both document management systems. QUMAS, as I previously noted, is the predecessor to Master Control. Information stored in those systems is dependent on the division and department. As a general matter, both QUMAS and Master Control are/were used to store all "controlled documents." These documents are not limited to specific types of data, but rather are used for any document that Bard designates as a "controlled document". While we have not performed a formal ESI collection of those databases given the complexities and burden in attempting to duplicate them, we have pulled countless documents which have been responsive to discovery requests from them over the years. We do not have any screenshots of those systems from the times we collected documents from them, and because Master Control is web-based and is not structured by folders, it will be difficult, if not impossible, to provide the type of file-structure printout you appear to be requesting. Moreover, even it were possible to obtain screenshots of the folder structure of QUMAS, the burden of taking screenshots of the thousands of folder and subfolders within that system would far outweigh the minimal (if any) benefit of obtaining that information.

Regarding your request for a more legible copy of the "MH Campus LAN diagram," we are working on identifying and providing that to you.

Regarding shared drives, you have asked us to "identify any other shared drives in Bard's information systems" and their "locations within Bard's WAN and any and all LANs, including the specific server or servers on which it resides or resided." You then again note that these "questions as to type of information and locations can be easily answered." However, for the reasons I noted in the beginning of this letter, these are not questions that can easily be answered, and Bard and I are struggling to understand how these sorts of very detailed information are of any relevance or even discoverable. Read literally, your request would require Bard to canvass thousands of employees and divisions worldwide. Moreover, the type of information contained within the shared drives was discussed in my previous

Paul L. Stoller, Esq.
December 16, 2015
Page 3

letters.  Based on our discussions and interviews of employees relating to Bard IVC filters over the years, we have identified the shared drives where information relating to filters was and is stored, and have collected and produced material from those drives.

**Bard Collection Efforts to Date**

In your letter, you request various information relating to Bard's collection efforts. I have previously provided you with information relating to the collections and custodians from whom data was collected and produced.  You have now requested very broad additional information relating to those collection efforts that is far beyond the scope of discovery and is not relevant to any claims or defenses of the parties, particularly considering that the recent amendments to Rule 26 of the Federal Rules of Civil Procedure limit discovery to "any nonprivileged matter that is relevant to any party's claim or defense."

As previously noted, the first document collection relating to the Bard IVC filter litigation occurred in 2005, and it included collection from over 70 custodians as well as collection of shared drives.  Bard conducted additional collections in 2010/2011 and in 2013. In using the term "custodian," I am referring to individual employees of the company. I previously provided you a list of custodians from whom we collected and produced data.  You nonetheless ask us to identify and produce any and all reports or contemporaneous documentation by Bard, Nelson Mullins, or BIA that relate to those collections. In addition to being beyond the scope of permissible discovery under Rule 26 of the Federal Rules of Civil Procedure, your requests also seek information which is protected work product and attorney-client privilege material.  If you have authority which you believe supports our providing you with material beyond that which we have already provided, I would ask that you provide those to me for consideration.

Regarding your request on how we determined what documents, files, and other ESI to collect and where that data was located, we determined that information in 2005 based on our extensive interviews of over 80 employees. We have continued to talk with multiple employees over the years (often on a weekly basis) to assist us in identifying where documents and information responsive to various requests might be located.

Regarding your request for custodian information, for the list of 2010/2011 custodians we provided to you in our previous letter from whom we collected and produced data, those collections occurred between October 5, 2010, and January 24, 2011, for the employees still employed by Bard at that time.  The location from where we collected data is included in the metadata we have provided.  To the extent you are requesting information beyond this, or beyond that which we have already provided, please provide us with authority for consideration supporting your position, as those requests on their face seek information which is not relevant under Rule 26 to any claim or defense in this matter under the amendments to Rule 26 of the Federal Rules of Civil Procedure.

Paul L. Stoller, Esq.
December 16, 2015
Page 4

Finally, for the shared drives we collected in 2005 and 2006, we have not done a formal refresh collection of those shared drives since that time. We have, over the years, periodically collected documents that have been responsive to discovery requests from those drives and the other drives I referenced in my prior letters.

**Plaintiff ESI/Social Media**

In your letter, you did not address the questions I raised relating to the plaintiffs' ESI. I am including those requests below and ask that you provide us with the requested information.

As to ESI and social media regarding the MDL plaintiffs, what has been done in the past and what is being done now to ensure that relevant ESI relating to the plaintiffs and their claims is being preserved, collected, and produced?

Have the plaintiffs been notified of their duties to preserve ESI? If so, when and in what manner were they notified?

Has anything been collected? If so, when? Also, what methodology and search process has been employed to collect potentially-relevant ESI? How has the location of potentially-relevant information identified?

In addition, what steps have been taken in the past and what steps are being taken now to ensure that potentially-relevant social media (e.g., Facebook, Instagram, Twitter, YouTube, etc.) is being preserved, and what steps are plaintiffs taking going forward?

***

Lastly, we are producing the enclosed updated versions of the policies we previously produced to you. After you have time to consider my letter, it probably makes sense to have a call to discuss these matters further. We are committed to resolving any disagreements we have and hope the parties are able to make a joint submission to the court in January.

Sincerely,

Matthew B. Lerner

MBL:jbruner

Enclosures