1  David R. Ongaro (California State Bar No. 154698)
   dongaro@ongaropc.com
2  Glen Turner (California State Bar No. 212417)
   gturner@ongaropc.com
3  ONGARO PC
   50 California Street, Suite 3325
4  San Francisco, CA  94111
   Telephone:   (415) 433-3900
5  Facsimile:    (415) 433-3950

6  Attorneys for Plaintiff WAYNE RUDEN

7

8                  **UNITED STATES DISTRICT COURT**

9                     **DISTRICT OF ARIZONA**

10

11  IN RE:  BARD IVC FILTERS
12  PRODUCT LIABILITY LITIGATION,

13  THIS DOCUMENT RELATES TO:              MDL Docket No. 15-02641

14  WAYNE RUDEN,
15  C. A. No.:  CV-16-00344-PHX-DGC

16  _____

17  WAYNE RUDEN,                           **PLAINTIFF WAYNE RUDEN'S**
                                           **NOTICE OF MOTION AND MOTION**
                  Plaintiff,               **FOR REMAND; MEMORANDUM OF**
18                                         **POINTS AND AUTHORITIES**
19          vs.
                                           Complaint Filed:  October 7, 2015
20  C.R. BARD, INC., et al.,
                                           **\*ORAL ARGUMENT REQUESTED\***
                  Defendants.
21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    STATEMENT OF ISSUES TO BE DECIDED ........................................................ 1

II.   SUCCINCT STATEMENT OF RELEVANT FACTS ............................................ 1

    A.    Mr. Ruden................................................................................................... 2

    B.    CPMC .......................................................................................................... 2

    C.    Bard ............................................................................................................. 3

III.  LEGAL STANDARD ............................................................................................ 4

IV.  ARGUMENT ........................................................................................................ 4

    A.    There Is No Unanimity of Defendants, Mooting Bard's Removal
        Request. ........................................................................................................ 5

    B.    The Highly Criticized Doctrine of Fraudulent Misjoinder is Not
        Recognized As A Removal Basis in the 9th Circuit or The Northern
        District. ......................................................................................................... 5

        1.    The Fraudulent Misjoinder Doctrine is Not Approved by the Ninth
            Circuit or Northern District. ................................................................ 6

        2.    The Fraudulent Misjoinder Doctrine is Bad Policy. ......................... 7

        3.    Bard's Cited Cases Do Not Support The Removal Request............. 8

    C.    Even Under the Untenable Fraudulent Misjoinder Doctrine, the Matter
        Should Be Remanded as Mr. Ruden's Claims Arise From The Same
        Transaction and Occurrence, and CPMC Is An Indispensable Party. .......... 9

        1.    The Claims Against CPMC and Bard Arise From the Same
            Transaction or Occurrence. .............................................................. 10

    D.    CPMC Is An Indispensable Party ............................................................. 11

    E.    Perfecting Diversity by Severance Is An Improper Basis For Removal..... 12

    F.    Because Removal Is Disfavored, Ambiguities Are Resolved Against
        Removal. .................................................................................................... 13

    G.    Mr. Ruden Is Entitled To Costs and Expenses........................................... 13

V.    CONCLUSION AND RELIEF REQUESTED ...................................................... 15

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REMAND;
MEMORANDUM OF POINTS AND AUTHORITIES**

1

## <u>TABLE OF AUTHORITIES</u>

2

## CASES

3  *Black v. Merck & Co., Inc.*
       2004 WL 5392660 (C.D. Cal. 2004) ................................................................. 11
4
   *Brown v. Francis*
5      (9th Cir. 1995) 75 F.3d 860 .............................................................................. 4

6  *Carper v. Adknowledge, Inc.*
       (N.D. Cal. 2013) 2013 WL 5954898 ................................................................. 7
7
   *Central Bank v. Jerrolds*
8      (W.D. Tenn. 2015) 2015 WL 1486368 .............................................................. 9

9  *Chicago, R. I. & P. Ry. Co. v. Martin*,
       178 U.S. 245 (1900) .......................................................................................... 5
10
   *Coughlin v. Rogers*
11     (9th Cir. 1997) 130 F.3d 1348 .......................................................................... 12

12 *Davis v. Prentiss Properties Ltd., Inc.*
       (C.D. Cal. 1999) 66 F. Supp. 2d 1112 .............................................................. 9
13
   *Dent v. Lopez*
14     (E.D. Cal.) 2014 WL 3057456 .......................................................................... 6

15 *Early v. Northrop Grumman Corp.*
       (C.D. Cal. 2013) 2013 WL 3872218 ................................................................. 6
16
   *Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*,
17     644 F.2d 1310 (9th Cir. 1981) .......................................................................... 5

18 *Emrich v. Touche Ross & Co.*
       (9th Cir. 1988) 846 F.2d 1190 .................................................................. 4, 5, 7, 9
19
   *Gasu v. Miles, Inc.*
20     (9th Cir. 1992) 980 F.2d 564 ............................................................................ 4

21 *Greene v.* Wyeth
       (D. Nev. 2004) 344 F.Supp.2d 674 ................................................................ 8, 9
22
   *Hannig v. Juarez*
23     (D. Nevada 2013) 2013 WL 7095748 ............................................................... 12

24 *Harlow v. Fitzgerald*
       (1982) 457 U.S. 800 ......................................................................................... 9
25
   *HVAC Sales, Inc. v. Zurich Am. Ins. Grp.*
26     (N.D. Cal. 2005) 2005 WL 2216950 ................................................................. 12

27 *In re Norplant Contraceptive Products Liability Litigation*
       168 F.R.D. 579 (E.D. Tex. 1996) ..................................................................... 11

28

i

*Jurin v. Transamerica Life Ins. Co.*,
   2014 WL 4364901 (N.D. Cal 2014) .................................................................. 6

*League to Save Lake Tahoe v. Tahoe Regional Planning Agency*
   558 F.2d 914 (9th Cir. 1977) .......................................................................... 7

*Lively v. Wild Oats Markets, Inc.*
   (9th Cir. 2006) 546 F.3d 933; S. Rep. No. 1830, 85th Cong., 2d Sess ................. 13

*Lopez v. Pfeffer*
   (2013) 2013 WL 5367723 ........................................................................... 5, 6

*Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*
   (1999) 526 U.S. 344 .......................................................................................... 5

*Osborn v. Metropolitan Life Ins. Co.*
   341 F.Supp.2d 1123 (2004) .............................................................................. 9

*Pan Am. World Airways, Inc. v. U.S. Dist. Court for Cent. Dist. of California*
   (9th Cir. 1975) 523 F.2d 1073 .......................................................................... 9

*Parrino v FHP, Inc.*
   (9th Cir. 1988) 146 F.3d 699 ............................................................................ 5

*Perry v. Luu*
   (E.D. Cal. 2013) 2013 WL 3354446 ............................................................... 8, 9

*Ramirez v. Speltz*
   2015 WL 5882065 (N.D. Cal. 2015) ................................................................ 10

*Robinson v. Swedish Health Servs.*
   (W.D. Wash. 2010) 2010 WL 816818 ........................................................ 11, 12

*Scheuer v. Rhodes*
   (1974) 416 U.S. 232 .......................................................................................... 9

*Shamrock Oil & Gas Corp. v. Sheets*
   (1941) 313 U.S. 100 .......................................................................................... 4

*Shwiff v. Hartford Cas. Inso. Co.*
   (N.D. Cal. 2013) 2013 WL 5129688 ............................................................... 7, 9

*St. Paul Mercury Indem. Co. v. Red Cab Co.*
   (1938) 303 U.S. 283 .......................................................................................... 4

*Sturm v. United Servs. Auto Ass'n*
   (N.D. Cal. 2012) 2012 WL 2135356 ........................................................ 6, 7, 13

*Sutton v. Davol, Inc.*
   (E.D. Cal. 2008) 251 F.R.D. 500 ................................................................... 8, 9

*Thee Sombrero, Inc. v. Murphy*
   (C.D. Cal. 2015) 2015 WL 4399631 .................................................................. 8

ii
**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REMAND;**
**MEMORANDUM OF POINTS AND AUTHORITIES**

*United Mine Workers of Am. v. Gibbs*
    (1966) 383 U.S. 715 .................................................................................. 7, 10

*Watson v. Gish*
    (N.D. Cal. 2011) 2011 WL 2160924 ......................................................... 11

**STATUTES**

1958 U.S. Code Cong. & Admin. News 3099 .................................................. 13

28 U.S.C. § 1441(a) .......................................................................................... 4

28 U.S.C. § 1441(b)(2) ..................................................................................... 13

28 U.S.C. § 1447(c) ............................................................................... 1, 13, 14

28 U.S.C. § 3723 ............................................................................................... 9

28 U.S.C. §§ 1446(b) ........................................................................................ 5

28 U.S.C. §1441 ............................................................................................... 6

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REMAND;
MEMORANDUM OF POINTS AND AUTHORITIES**

<u>**NOTICE OF MOTION AND MOTION**</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that Plaintiff Wayne Ruden will and hereby does move the Court to remand this cause to the State of California, San Francisco County Superior Court pursuant to 28 U.S.C. § 1447(c).  California Pacific Medical Center ("CPMC") is an indispensable, non-diverse defendant who has not consented to removal.[1]  Therefore, C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard")'s request for removal has not been perfected, and removal is improper under 28 U.S.C. § 1441(b).  Mr. Ruden also seeks an award of fees and costs incurred as a result of the improper removal request pursuant to 28 U.S.C. § 1447(c).

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Glen Turner, the pleadings and papers on file herein including plaintiff's First Amended Complaint ("FAC"), and upon other matters as may be presented to the Court at the time of the hearing.  Mr. Ruden respectfully requests oral argument.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    STATEMENT OF ISSUES TO BE DECIDED**

1)  Whether this matter should be remanded to the State of California, San Francisco County Superior Court pursuant to U.S.C. § 1447(c).

2)  Whether Mr. Ruden is entitled to costs, including attorney fees, incurred as a result of Bard's improper request for removal.

**II.   SUCCINCT STATEMENT OF RELEVANT FACTS**

Mr. Ruden brings this case for serious injuries suffered as a result of CPMC's recommendation for the surgical implantation of a medical device designed and

---

[1] *See*, CPMC's Opposition to Bard Defendants' Motion for Stay p. 1, attached as Exhibit A to the Declaration of Glen Turner ("Turner Decl.") ("CPMC opposes co-defendant BARD's motion to stay all proceedings as moot.  BARD removed the action asserting diversity jurisdiction.  But the parties are not diverse.  CPMC is a California corporation, and plaintiff is a resident of California.")

**PLAINTIFF'S DEMAND FOR JURY TRIAL**

1  manufactured by Bard, the Bard Recovery Filter ("BRF") into his inferior vena cava.  As

2  CPMC and Bard knew it might, the device fractured, resulting in the embolization of two

3  arm fragments into Mr. Ruden's proximal right pulmonary arteries and the embolization

4  of one fractured arm fragment into his right atrium, where it remains to this day as a

5  ticking time bomb.

6  On October 7, 2015 Mr. Ruden filed suit against CPMC, a general medical and

7  surgical hospital with multiple locations and a principal place of business in San

8  Francisco, California.  Mr. Ruden also filed suit against Bard.  Bard, without the consent

9  of CPMC, has improperly attempted to have this case removed from state to federal court.

10  **A.    Mr. Ruden**

11  Upon the advice of agents and employees of CPMC, in 2004 San Francisco

12  resident Wayne Ruden had a BRF placed in his inferior vena cava.  Eleven years later, in

13  March, 2015, Mr. Ruden learned the implanted BRF had fractured, causing extreme pain

14  and both physical and emotional suffering.  Mr. Ruden must undergo regular medical

15  monitoring and has incurred sizable medical bills.  His earning capacity has been greatly

16  diminished.  The fragments could migrate at any time, causing Mr. Ruden's premature

17  death.  Experts at Stanford have told Plaintiff that surgery to remove the fragments from

18  the right atrium of his heart is too risky, and would not perform the surgery.

19  **B.    CPMC**

20  CPMC is a general medical and surgical hospital and academic medical center

21  operating at multiple locations and with a principal place of business in San Francisco,

22  California.  (First Amended Complaint ["FAC"], ¶10, Turner Decl. exh. B)  Mr. Ruden

23  was a CPMC patient when the decision was taken to implant a BRF, and was an ongoing

24  CPMC patient thereafter.  He was hospitalized and/or seen in consultation at CPMC

25  multiple times between 2004, when the device was implanted, and 2015, when removal

26  was attempted, leaving fragments behind.  (*Id*.)

27  CPMC knew the BRF was defective and unreasonably dangerous and was causing

28  injury and death to patients who received it.  (*Id*.)  Yet, CPMC did not disclose the risks

2

1   and other information known to it, including that the BRF had hidden dangers, including a

2   high rate of fracture, migration, and excessive tilting and perforation of the wall of the

3   inferior vena cava.  (*Id.*)  Further, CPMC failed to insure that its agent and employee care

4   providers were adequately trained to perform their relevant duties, including their duty to

5   reasonably inform themselves of the risks of utilizing the BRF as part of Mr. Ruden's

6   treatment, and subsequently failed to adequately inform Mr. Ruden.  (*Id.*)

7          CPMC had an ongoing duty to reasonably warn Plaintiff of newly-discovered

8   risks.  (*Id.*; FAC ¶ 57.)  However, CPMC did not communicate a FDA 2010 warning

9   letter regarding dangers of IVC filters, especially when left in situ over a long period, or

10  any intermediate information it obtained.  (FAC ¶¶ 57, 60.)

11         As to CPMC, Mr. Ruden has properly asserted claims for (1) negligence, (2) breach

12  of fiduciary duty, and (3) negligence-recall/retrofit.  (*See*, FAC.)

13         **C.     Bard**

14         Bard is no stranger to litigation.  The instant controversy involves Bard inferior

15  vena cava ("IVC") filters.  Bard IVC filters have spawned over 80 lawsuits, many of

16  which have been sent to this Multidistrict Litigation ("MDL") and many of which have

17  not.  A 2010 study by Dr. William H. Nicholson discovered that an appalling 25% of

18  BRFs—one type of Bard IVC filter and the type pertinent to this litigation—fractured and

19  embolized, with 71% of those fracture/embolization cases including embolization to the

20  patient's heart, with sequelae including sudden death. In 2010, the FDA published a

21  warning letter noting more than 900 adverse events associated with IVC filters, including

22  migration, fracture, embolization, and perforation of the inferior vena cava, and

23  recommended that treaters consider removing retrievable filters once the initial

24  emergency requiring insertion had passed.

25         On July 13, 2015, the FDA sent a warning letter directly to Bard, accusing Bard of

26  (1) filing mere device malfunction reports in at least eight cases where Bard should have

27  filed serious injury or death reports, (2) failing to report failed IVC filter removal attempts

28  in sufficient detail to allow adequate investigation, and (3) failing to insure that device

complaints were adequately evaluated for cause or that appropriate corrective action was implemented.  Former C.R. Bard consultant Kay Fuller alleges that, because she would not endorse C.R. Bard's testing protocol, her name was forged on C.R. Bard's application for FDA approval of the BRF – the very device at issue in this matter.

## III.   LEGAL STANDARD

An action is removable to a federal court only if it might have been brought there originally. (28 U.S.C. § 1441(a).)  Because removal ousts a state court of jurisdiction, "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the [removal] statute has defined."  (*Shamrock Oil & Gas Corp. v. Sheets* (1941) 313 U.S. 100, 108-109).  The burden of establishing federal jurisdiction is on the party seeking removal; here, Bard.  (*Emrich v. Touche Ross & Co.* (9th Cir. 1988) 846 F.2d 1190, 1195; *see also*, *Gasu v. Miles, Inc.* (9th Cir. 1992) 980 F.2d 564, 566, quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.* (1938) 303 U.S. 283, 288-90 ("The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper.")

When ruling on a motion for remand, a district court must resolve all contested issues of substantive fact and any uncertainties as to the controlling law in favor of the plaintiff.  (*Brown v. Francis* (9th Cir. 1995) 75 F.3d 860, 865).  "If there is any doubt as to the propriety of removal, that case should not be removed to federal court."  (*Id.*)

## IV.   ARGUMENT

Removal is improper and this case should be remanded to the San Francisco Superior Court for three reasons.  First, there is no unanimity of defendants, rendering the removal request moot.  Second, Bard's sole basis for removal—the "fraudulent misjoinder" doctrine—is not recognized in the Ninth Circuit; even so, the doctrine would not apply to CPMC.  Finally, CPMC, a California citizen and non-severable indispensable party, defeats diversity jurisdiction.

### A.     There Is No Unanimity of Defendants, Mooting Bard's Removal Request.

In order to perfect its removal request, Bard must file a proper notice of removal in the appropriate federal district court within thirty days after service of Mr. Ruden's complaint.  (28 U.S.C. §§ 1446(b); *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc*. (1999) 526 U.S. 344, 347.)  In order for such a notice to be "proper," all defendants must join in or consent to removal. (*Parrino v FHP, Inc.* (9th Cir. 1988) 146 F.3d 699, 703.)  CPMC did not join or consent to the removal notice in this case and has stated in its pleadings that it will not do so.  (*See*, Notice of Removal of Action, Turner Decl. C; CPMC's Opposition to Bard's Motion to Stay, Turner Decl. A.)  Without CPMC's consent, the removal request is procedurally defective and therefore moot.  (*See*, *Emrich v. Touche Ross & Co.* (1987) 846 F.2d 1190 [Failure to join all proper defendants in removal petition renders petition procedurally defective normally requires remand].)  CPMC's refusal to join in the removal motion is an independent and sufficient basis for remand.  *Chicago, R. I. & P. Ry. Co. v. Martin*, 178 U.S. 245, 248 (1900); *Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1314 (9th Cir. 1981).

### B.     The Highly Criticized Doctrine of Fraudulent Misjoinder is Not Recognized As A Removal Basis in the 9th Circuit or The Northern District.

Bard's removal papers are based exclusively on the theory of "fraudulent misjoinder," a novel theory never adopted by the Ninth Circuit.  Although Bard's papers give the impression that fraudulent misjoinder is black-letter law, Bard provides **no** binding authority.[2]  It is no accident that Bard served the Notice of Removal with a heaping helping of Eleventh Circuit cases that do not control this Court's decision, as Bard unilaterally removed this matter without the aid of controlling law.  *See, e.g.*, *Lopez*

---

[2] Further, as shown *infra*, even if the doctrine *were* controlling law, it would not apply in this matter as necessary or indispensable parties such as CPMC are not proper parties for the application of the doctrine in the limited jurisdictions that follow it.

*v. Pfeffer,* 2013 WL 5367723, *2 (N.D. Cal. 2013) (doctrine of fraudulent misjoinder, adopted by the Eleventh Circuit, is not relevant for removal to Ninth Circuit courts which have not adopted the theory.)

        **1.**        **The Fraudulent Misjoinder Doctrine is Not Approved by the Ninth Circuit or District of Arizona.**

The Ninth Circuit "has not adopted, approved, nor applied," the theory of fraudulent misjoinder, which only applies when plausible claims have been asserted but joinder is improper due to a lack of some real connection between the defendants.  (*Dent v. Lopez* 2014 WL 3057456, at *6 (E.D. Cal. 2014) (recognizing that the doctrine of fraudulent misjoinder "is simply inoperative in this circuit.")  In fact, nearly every District Court in the Ninth Circuit that has encountered the doctrine has harshly criticized and refused to apply it.  (*Jurin v. Transamerica Life Ins. Co.*, 2014 WL 4364901, *3-4 (N.D. Cal 2014) (Ninth Circuit "repeatedly and consistently declined to adopt the [fraudulent misjoinder] doctrine" and it is "inappropriate to apply the novel theory of fraudulent misjoinder, especially considering the requirement that federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance"); *Early v. Northrop Grumman Corp*., 2013 WL 3872218, *2 (C.D. Cal. 2013) ("While fraudulent joinder is a well-established exception to the complete-diversity rule, the doctrine of procedural or fraudulent misjoinder is a recent and unwarranted expansion of jurisdiction, one which the Court is not inclined to adopt"); *Lopez v. Pfeffer* 2013 WL 5367723, *2 (N.D. Cal. 2013)  (Defendant's fraudulent misjoinder argument is based on "law that does not exist in this district").  As the Ninth Circuit recognized when first addressing the doctrine of fraudulent misjoinder, "[e]specially considering that 28 U.S.C. §1441 is strictly construed against removal, the state court, not the federal court, should decide whether there is a sufficient nexus" between a plaintiff's claim against various defendants.  *Sturm v. United Servs. Auto Ass'n,* 2012 WL 2135356, *3 (N.D. Cal. 2012, citing *Cal. Dump Truck Pwners Ass'n v. Cummins Engine Co., Inc.*, 24 F. App'x 727, 729-30 (9th Cir. 2001).  Plaintiff has not located

1    District of Arizona cases evaluating the doctrine.

2                    **2.      The Fraudulent Misjoinder Doctrine is Bad Policy.**

3           The fraudulent misjoinder doctrine is bad policy because it improperly requires the

4    Court to determine whether joinder is proper under Federal Rules of Civil Procedure 20

5    and 21 and then to irrevocably sever parties and claims from the case *without first*

6    *determining whether it has jurisdiction over the matter*.  The doctrine, particularly as

7    Bard would apply it here, would ignore the well-settled strong presumptions against

8    fraudulent joinder (*see, e.g., Shwiff v. Hartford Cas. Ins. Co.,* 2013 WL 5129688, *2

9    (N.D. Cal. 2013)) and removal (*see, e.g.*, *Emrich v. Touche Ross & Co.,* 846 F.2d 1190,

10   1195 (9th Cir. 1988)), and in favor of the broadest actions allowable under the rules.

11   *United Mine Workers of Am. v. Gibbs* 383 U.S. 715, 724 (1966); *see also League to Save*

12   *Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977).

13          The better practice is to bring a motion in state court to challenge joinder:

14                  If a defendant can demonstrate that the plaintiffs are
15                  improperly joined under state law, it could move the state
                    court to sever the action. Then there would be little doubt
16                  about which portions of a dispute are properly removable and
                    which are not. [¶]  But by removing first and answering
17                  questions later, a removing defendant invoking fraudulent
18                  misjoinder is requesting that the federal court be the one to
                    "gauge whether severance of improperly joined parties is
19                  warranted."  The federal court, *before or as part of its inquiry*
                    *into its own jurisdiction,* must entertain what is, in effect, a
20                  defendant's motion to sever.  Among the many questions this
21                  request raises is this one: which forum's severance and joinder
                    rules, and which bodies of decisional law, should the court
22                  apply?

23

24   (*Carper v. Adknowledge, Inc.,* 2013 WL 5954898, *4 (N.D. Cal. 2013) (emphasis in

25   original, citation omitted); *Sturm v. United Servs. Auto. Ass'n* (N.D. Cal. 2012) 2012 WL

26   2135356, *5.)

27

28

---

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REMAND;**
**MEMORANDUM OF POINTS AND AUTHORITIES**

### 3.     Bard's Cited Cases Do Not Support The Removal Request

In its removal papers, Bard cites the only two (non-binding) District Court cases in the Ninth Circuit that actually applied the fraudulent misjoinder doctrine, *Greene v. Wyeth*, 344 F.Supp.2d 674 (D. Nev. 2004)  and *Sutton v. Davol, Inc.,* 251 F.R.D. 500 (E.D. Cal. 2008) .  Each case is readily distinguishable.

In *Greene*, only two of the five plaintiffs held claims against the non-diverse defendants, and, unlike here, common actions by defendants were not even pled. (*Greene* at 674, 683-84.)  The District Court held it appropriate to "sever claims where the joinder . . . clearly accomplishes no other objective than the manipulation of the forum," and "where the non-diverse party cannot be properly joined under the Federal Rules of Civil Procedure." (*Id*. at 683-84.)  In this case, Bard has not even argued that CPMC was joined to manipulate the forum.

In *Sutton*, plaintiffs' claims against the California defendant hospital of implanting a previously recalled patch were entirely separate from their claims of strict product liability against the removing defendants.  *Sutton* at 505 (citation omitted).

Both cases are distinguished from the instant matter, where Mr. Ruden's claims of, for example, negligent misrepresentation against all defendants and breach of fiduciary duty against CPMC, are reliant on the same factual questions concerning communications between CPMC and Bard, constituting a single series of transactions and occurrences involving common questions of fact and law that would have to be litigated twice in two courts, once against CPMC and once against Bard, possibly leading to inconsistent outcomes if CPMC is severed into state court while Bard is removed to federal court.

Noting that *Greene* and *Sutton* are the *only* two cases in the Ninth Circuit that have applied the doctrine of fraudulent misjoinder, the court in *Thee Sombrero, Inc. v. Murphy*, (C.D. Cal. 2015) 2015 WL 4399631 criticized those cases because fraudulent misjoinder requires the severance of non-diverse defendants under Federal Rule of Civil Procedure 20, yet Rule 20 "presumes the Court has jurisdiction to act." (*Id*. at *4, citing *Perry v. Luu* (E.D. Cal. 2013) 2013 WL 3354446, *5; *see also Central Bank v. Jerrolds* (W.D.

8

Tenn. 2015) 2015 WL 1486368, *4 [disapproving *Sutton* and declining to recognize the fraudulent misjoinder doctrine because "[f]or this [C]ourt to rule on joinder issues before determining whether it has subject matter jurisdiction puts the cart before the horse" and therefore "the better course of action is for the state court to rule on the propriety of joinder under the state's joinder law in the first instance"].)

      **C.**     **Even Under the Untenable Fraudulent Misjoinder Doctrine, the Matter Should Be Remanded as Mr. Ruden's Claims Arise From The Same Transaction and Occurrence, and CPMC Is An Indispensable Party.**

      Even if, *arguendo*, this Court adopted the fraudulent misjoinder doctrine, it **follows the same test applied for fraudulent joinder[3] and is only available** when the plaintiff obviously cannot state a claim against a defendant even after amending his or her complaint. *Davis v. Prentiss Properties Ltd., Inc.,* 66 F. Supp. 2d 1112, 1113, 1115-16 (C.D. Cal. 1999); *accord S*cheuer v. Rhodes, 416 U.S. 232, 236 (1974), *abrogated on other grounds* in *Harlow v. Fitzgerald,* 457 U.S. 800, 814 (1982).  Further, a complaint must be strictly construed against removal and the application of the doctrine. *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir. 1988) (citations omitted); *Shwiff v. Hartford Cas. Ins. Co.,* 2013 WL 5129688, *2 (N.D. Cal. 2013).

      Removing non-diverse defendants and causes of action related to those defendants under the doctrine of fraudulent misjoinder may only be accomplished by using Rules 20 and 21 to sever misjoined parties. *Pan Am. World Airways, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 523 F.2d 1073, 1079 (9th Cir. 1975); *Perry v. Luu,* 2013 WL 3354446, *5 (E.D. Cal. 2013) ("fraudulent misjoinder requires the severance of non-diverse defendants under Federal Rule of Civil Procedure 20. . . .Rule 20, however, 'presumes the Court has jurisdiction to act.'") CPMC is clearly properly

---

    [3] This is because "[f]raudulent misjoinder is a branch of the fraudulent joinder doctrine." *Osborn v. Metropolitan Life Ins. Co.*, 341 F.Supp.2d 1123, 1127 (2004), citing Wright, Miller & Cooper, Fed. Prac. & Proc., Jurisdiction 3d § 3723 at 656; *Greene v. Wyeth,* 344 F.Supp.2d 674, 684–85 (D.Nev.2004) ("Courts that apply this `fraudulent misjoinder' doctrine apply it as a `logical extension of the better-established `fraudulent joinder' doctrine.").

1  joined under the federal joinder rules, making severance improper and remand

2  appropriate.

### 1.   The Claims Against CPMC and Bard Arise From the Same Transaction or Occurrence.

5       Under Federal Rule of Civil Procedure 20(a)(2)(A)-(B), defendants may be

6  joined when any cause of action is asserted against them "arising out of the same

7  transaction, occurrence, or series of transactions or occurrences; and any question of law

8  or fact common to all defendants will arise in the action."  In other words, applying the

9  strong presumptions outlined above to the federal joinder rules means that severance is

10 appropriate only if there is no "glimmer of hope" and "absolutely no possibility" that the

11 causes of action against Bard and CPMC arose from the same series of transactions or

12 occurrences or "absolutely no possibility" that there is a common question of law or fact

13 and further, that the Complaint could not be amended to so state.  *Ramirez v. Speltz*,

14 2015 WL 5882065, at *2 (N.D. Cal. 2015).

15      Bard's assertion in its Notice of Removal that the allegations against CPMC are

16 limited to CPMC's failure to inform Mr. Ruden of a 2010 FDA communication is

17 unsupported by the FAC's text and 180 degrees from the proper approach to the

18 complaint under the authorities cited *supra*.  Those authorities dictate construing the

19 complaint as broadly as possible in favor of remand.  *See also United Mine Workers of*

20 *Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("the impulse is toward entertaining the

21 broadest possible scope of action consistent with fairness to the parties; joinder of

22 claims, parties and remedies is strongly encouraged.")  As to CPMC, Mr. Ruden's

23 complaint alleges both that CPMC had an ongoing duty to reasonably warn plaintiff of

24 the newly-discovered risks of the device, and that CPMC was unable to discover the

25 BRF's defective condition *prior to implantation* because it relied on Bard's negligent

26 misrepresentation.  (FAC ¶¶ 10-12, 52, 55.)

27      It is disingenuous for Bard to argue that Mr. Ruden does not have causes of

28 action against both Bard and CPMC that arise from the same series of transactions or

occurrences, or that there are no common questions of law or fact.  Each of Bard's

misjoinder cases, discussed above, is distinguishable on this point (even if they arose in

controlling jurisdictions, which they do not), because the court in each of those matters

found that the liability of the severable defendant either arose from a different

transaction or occurrence than the transaction or occurrence that was the basis of the

liability for the non-severable defendant, or else that the liabilities of the subject

defendants were not based on a common question of law or fact.

Here, that is simply not the case.  Bard made a device and placed it into the

stream of commerce.  CPMC obtained the same device from the same stream of

commerce and used it as it was intended to be used by inserting it into plaintiff, where it

fractured and went into his heart.  That is one series of transactions and occurrences.

(*See Robinson v. Swedish Health Servs.* (W.D. Wash. 2010) 2010 WL 816818, *2 [all

claims arose from decedent's death, the question of whether the subject drug caused the

death was common to the liability of all defendants, and plaintiff would be harmed by

having to pursue his claims in two separate courts]); *accord Black v. Merck & Co., Inc.*,

2004 WL 5392660 (C.D. Cal. 2004), *1, *4 and fn. 9, citing *In re Norplant

Contraceptive Products Liability Litigation*, 168 F.R.D. 579, 581 (E.D. Tex. 1996).

### D.     CPMC Is An Indispensable Party

Bard's liability is measured, at least partially, by how much it told CPMC and

when; CPMC's liability is measured, at least partially, by how much Bard told CPMC

and when.  That is an overriding common question of fact, as is the more basic question

of whether the BRF injured Mr. Ruden, how and why.  Further, Bard's communications

with CPMC is a single series of transactions and occurrences.  CPMC is not only a

necessary party to this action, it is an indispensable party because there is a common

question that could lead to inconsistent judgments if resolved separately in two cases.

Mr. Ruden's claims should be determined in a single matter, because, as in

*Watson v. Gish,* 2011 WL 2160924, *4 (N.D. Cal. 2011) ("it is readily apparent that an

interrelationship exists between the Defendants in this case that was absent in [the case

11

1  cited by Bard,] *Tapscott*"); *see also HVAC Sales, Inc. v. Zurich Am. Ins. Grp.,* 2005 WL

2  2216950, *6 (N.D. Cal. 2005) (reading "*Tapscott* to apply in the rare circumstance

3  where the egregiousness of plaintiffs' misjoinder is readily apparent" because "plaintiffs

4  did not even attempt to justify their conglomeration of various unrelated defendants");

5  *Hannig v. Juarez,* 2013 WL 7095748, *6 (D. Nevada 2013), *report and*

6  *recommendation rejected on other grounds* by *Hannig v. Juarez*, 2014 WL 29402, *1-2

7  (distinguishing case from *Tapscott* because "an interrelationship exists between the

8  Defendants in this case" when, *inter alia*, all claims were "premised on the allegedly

9  harmful effects produced by" the medical device produced by the manufacturer

10 defendants and surgically installed by the health care defendants in that matter.)

11        **E.     Perfecting Diversity by Severance Is An Improper Basis For Removal.**

12        Bard argues, in the alternative, that this Court could simply elect on its own to

13 perfect diversity by severing CPMC.  (*See* Notice of Removal.)  This is not an

14 appropriate case in which to apply this rarely-used maneuver, and Bard has adduced no

15 cases where the doctrine was used to justify removal.  At any rate, the Court only has

16 discretion to sever when the test for permissive joinder is not satisfied.  *Coughlin v.*

17 *Rogers,* 130 F.3d 1348, 1350 (9th Cir. 1997).  As shown above, this is most certainly a

18 case where permissive joinder is appropriate, as the various liabilities of Bard and

19 CPMC are largely interdependent, and witnesses from each defendant would testify in

20 the other defendant's case should the matters be tried separately.

21        Further, severance is inappropriate if any substantive right of plaintiff would be

22 violated.  *Id.*  Plaintiff has the right to a forum of his own choosing and has the right to

23 settle one indivisible controversy in one court case.  *Robinson v. Swedish Health Servs.,*

24 2010 WL 816818, *2 (W.D. Wash. 2010).  If this case is severed, Plaintiff will be

25 severely prejudiced by having to conduct two court cases, at double cost, to adjudicate

26 the same operative facts.  *Id.*

27        And make no mistake, there *will* be a state court trial, even if CPMC is severed.

28 Bard's witnesses will be summoned into the state court case to testify as to what they told

1    CPMC, and CPMC's witnesses will be summoned into the federal matter to testify as to

2    what CPMC heard from Bard.  Defendants in each matter will inappropriately be able to

3    use the "empty-chair defense," pointing to the missing defendant.  *See Sturm v. United*

4    *Servs. Auto Ass'n*, *supra*, 2012 WL 2135356, *7 ("*Tapscott* is distinguishable because

5    there was no threat of an "empty chair" defense.)   Inconsistent judgments could easily

6    arise, where the jury in the state court case concludes Bard was at fault and acquits

7    CPMC, while the jury in the federal case concludes CPMC was at fault and acquits Bard.

8        **F.    Because Removal Is Disfavored, Ambiguities Are Resolved Against**

9             **Removal.**

10       CPMC is a California resident.  (CPMC Opposition to Motion for Stay, p. 5,

11   Turner Decl., Exh. A.)  Congress permitted diversity jurisdiction to prevent local

12   prejudice against out-of-state defendants.  *Lively v. Wild Oats Markets, Inc*., 546 F.3d

13   933 (9th Cir. 2006); S. Rep. No. 1830, 85th Cong., 2d Sess., reprinted in 1958 U.S. Code

14   Cong. & Admin. News 3099, 3102 (the "purpose of diversity of citizenship legislation . .

15   . is to provide a separate forum for out-of-state citizens against the prejudices of local

16   courts and local juries by making available to them the benefits and safeguards of the

17   federal courts.")

18       Because in-state defendants need no protection from local bias, Congress

19   prohibited removal—even when diversity jurisdiction otherwise exists—when a

20   defendant is a citizen of the forum state.  *See, e.g.*, *Lively v. Wild Oats Mkts., Inc.*, *supra*,

21   456 F.3d at 939-940 (9th Cir. 2006).  Specifically, 28 U.S.C. § 1441(b)(2) provides that

22   removal is improper "if any of the parties in interest properly joined and served as

23   defendants is a citizen of the State in which such action is brought."  These principles

24   demand remanding this case to state court.

25       **G.    Mr. Ruden Is Entitled To Costs and Expenses.**

26       "An order remanding the case may require payment of just costs and any actual

27   expenses, including attorney fees, incurred as a result of the removal."  (28 U.S.C. §

28   1447(c).)

> The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff. The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

(*Martin v. Franklin Capital Corp.* (2005) 546 U.S. 132, 140.) Mr. Ruden is entitled to his attorney fees in defending Bard's improper removal request pursuant to 28 U.S.C. § 1447(c).

Bard removed this case on a discredited doctrine. In violation of Federal Rule of Civil Procedure 11, Bard failed to mention that no cases from the Ninth Circuit or Northern District of California – the District Bard removed the matter too - espouse the doctrine, and did not acknowledge the existence of *abundant* contrary authority. Bard should be very familiar with removal law since it is involved in at least two MDLs (MDL 2641 and the pelvic mesh MDL in the Southern District of West Virginia, MDL 2187), yet removed this case on improper authority. Since removal is an action that a party may unilaterally employ to delay a case, Plaintiff submits that Bard should bear responsibility for wrongfully delaying this case.

Billed at the same hourly rates that they charge their product liability defense clients, David Ongaro expended $2,200 worth of time, Kirsten McNelly Bibbes expended $2,760 worth of time, and Glen Turner expended $12,600 worth of time, for a total amount of $17, 60. Turner Decl., ¶ 2.

By unilaterally and improperly removing this case from the San Francisco Superior Court, Bard has already managed to freeze the progress of this litigation for over two months, requiring Mr. Ruden to live with a sharp piece of Bard metal embedded in his heart yet no closer to justice. The delay should end. This case should be remanded and, since Bard had no reasonable basis for removal, Bard should pay the

14

1   costs and fees that its unjustified conduct has caused.

2   **V.    CONCLUSION AND RELIEF REQUESTED**

3        Mr. Ruden respectfully requests that the Court grant his motion, remand the case

4   to the San Francisco County Superior Court, and grant such other relief to which he is

5   justly entitled.

6   Dated:  February 9, 2016        ONGARO PC

7                        By:  _/s/ David R. Ongaro_

8                           David R. Ongaro
                              Attorneys for Plaintiff

9                              WAYNE RUDEN

1

## **CERTIFICATE OF SERVICE**

2

3        I hereby certify that on this 9th day of February, 2016, a copy of the foregoing was

4   served electronically and notice of the service of this document will be sent to all parties

5   by operation of the Court's electronic filing system to CM/ECF participants registered to

6   receive service in this matter.  Parties may access this filing through the Court's system.

7
                                */s/David R. Ongaro*
8                                  David R. Ongaro

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**CERTIFICATE OF SERVICE**