# EXHIBIT C

1 Steven J. Boranian (SBN 174183)
Email: sboranian@reedsmith.com
2 Mark A. Sentenac (SBN 286810)
Email: msentenac@reedsmith.com
3 REED SMITH LLP
101 Second Street
4 Suite 1800
San Francisco, CA 94105-3659
5 Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269
6
Attorneys for Defendants C. R. Bard, Inc. and
7 Bard Peripheral Vascular, Inc.

8 UNITED STATES DISTRICT COURT

9 NORTHERN DISTRICT OF CALIFORNIA

10 SAN FRANCISCO DIVISION

| | |
|---|---|
| 11 WAYNE RUDEN,<br><br>12         Plaintiff,<br><br>13     vs.<br><br>14 C. R. BARD, INC., a New Jersey corporation,<br>BARD PERIPHERAL VASCULAR, INC. (a<br>15 subsidiary and/or division of defendant C. R.<br>BARD, INC.) an Arizona corporation,<br>16 CALIFORNIA PACIFIC MEDICAL CENTER,<br>and DOES 1-100 INCLUSIVE,<br>17<br>        Defendants.<br>18 | Case No.:<br><br>[Removal from Superior Court of California,<br>Count of San Francisco, Case No. CGC-15-<br>548341]<br><br>**DEFENDANTS C. R. BARD, INC. AND<br>BARD PERIPHERAL VASCULAR, INC.'S<br>NOTICE OF REMOVAL OF ACTION<br>UNDER 28 U.S.C. § 1441(B)**<br><br>[Filed Concurrently With Civil Cover Sheet,<br>Corporate Disclosure Statement, Notice of<br>Pendency of Other Actions or Proceedings,<br>Certification of Interested Entities or Persons,<br>and Jury Trial Demand] |

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE THAT** Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard" or "Defendants") hereby remove this action from the Superior Court of the State of California, County of San Francisco, to the United States District Court for the Northern District of California. Removal is based on 28 U.S.C. §§ 1332, 1441, and 1446.

In support of this Notice of Removal, Bard states as follows:

## I. PROCEDURAL BACKGROUND AND RELEVANT FACTS

### A. Multidistrict Litigation Proceedings

1. Product liability cases alleging personal injuries from Bard's line of inferior vena cava ("IVC") filters, which are prescription medical devices designed to prevent potentially fatal blood clots from migrating from patients' hips and legs to their lungs, have been filed in numerous federal courts around the country.

2. On August 17, 2015, the Judicial Panel on Multidistrict Litigation established MDL No. 2641, *In re: Bard IVC Filters Products Liability Litigation*, in the District of Arizona to coordinate all federal products liability litigation involving Bard's line of IVC filters. *See* Transfer Order, Aug. 17, 2015, attached as Exhibit "A." One of the Bard IVC filters that is at issue in MDL No. 2641 is the Bard Recovery® Filter, which is the device allegedly at issue in this action.

3. Bard will identify this action, which involves product liability claims related to a Bard Recovery® IVC Filter, as a potential "tag-along" to the MDL proceeding.

### B. Plaintiff Wayne Ruden's State Court Action

4. On or about October 7, 2015, Plaintiff Wayne Ruden ("Plaintiff") commenced this action in the Superior Court of the State of California for the County San Francisco, entitled *Wayne Ruden v. C. R. Bard, Inc., et al.*, Case No. CGC-15-548341. Pursuant to 28 U.S.C. § 1446(a), Bard has attached copies of the state court docket, including all process, pleadings, and orders served on it in the above-referenced action as Exhibit "B" to this Notice of Removal.

5. On October 13, 2015, C. R. Bard, Inc.'s agent for service of process received via uncertified mail a copy of Plaintiff's Complaint accompanied by a notice and acknowledgement of

– 1 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

receipt. C. R. Bard, Inc. timely executed and returned the Notice and Acknowledgement of Receipt on October 28, 2015. Bard Peripheral Vascular, Inc. has not yet been served with the Complaint.

6. No further proceedings have been had in the state court action.

7. Plaintiff alleges that in or around March 2004, he was implanted with a Bard Recovery® Filter. *See* Ex. B, Compl. ¶ 31. Plaintiff asserts claims against Bard for negligence, strict product liability (failure to warn, design defect, and manufacturing defect), breach of implied warranty of merchantability, negligent misrepresentation, and negligent failure to recall/retrofit; Plaintiff is also seeking punitive damages. *Id.* at ¶¶ 43-53, ¶¶ 63-118, and ¶¶ 127-143.

8. Plaintiff also asserts claims against Defendant California Pacific Medical Center ("CPMC") for medical negligence and breach of fiduciary duty. *Id.* at ¶¶ 54-62 and ¶¶ 119-126. Notably, Plaintiff's claims against CPMC arise not from CPMC's care or treatment of Plaintiff when Plaintiff allegedly received his Bard Recovery® Filter in or around 2004, but from CPMC's alleged inaction in failing to inform Plaintiff about a publically available FDA Public Health Notification ("FDA PHN") directed to physicians and health care providers on August 9, 2010, _more than six years after_ CPMC's treatment of Plaintiff.

9. This case is removable under 28 U.S.C. § 1441(b) because no defendant who is "properly joined and served" is a citizen of the State of California.

10. To the best of Bard's knowledge, Defendant CPMC has not yet been served with a copy of the Summons and the Complaint. The consent of unserved defendants is not required for successful removal. *See, e.g.*, 28 U.S.C. § 1441(b); s*ee also Salveson v. Western States Bankcard Ass'n.*, 731 F.2d 1423, 1429 (9th Cir.1984) (noting that "a party not served need not be joined" in a petition for removal); *Roberts v. Palmer*, 354 F. Supp. 2d 1041, 1044 (E.D. Mo. 2005) ("It is well recognized that the consent of unserved defendants need not be obtained to effectuate removal.").

11. Even if CPMC has been served, CPMC's consent to remove is not necessary because CPMC is fraudulently misjoined in this action. *See, e.g., Sutton v. Davol*, Inc., 251 F.R.D. 500, 505-06 (E.D. Cal. 2008) (consent of fraudulently misjoined party not required for removal); *see also United Computer Systems, Inc. v. AT & T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) (fraudulently joined defendant need not join in removal petition).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## II.    BARD HAS MET THE PROCEDURAL REQUIREMENTS FOR REMOVAL

12.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiff, and a copy is being filed with the Clerk of the Court for the Superior Court of the State of California for the County of San Francisco.

13.    This Notice of Removal is properly filed in the Northern District of California pursuant to 28 U.S.C. § 1446(a).

14.    The United Stated District Court for the Northern District of California, San Francisco Division, is the proper district to where this matter should be assigned because it is the District Court embracing the Superior Court of California, Country of San Francisco, where Plaintiff's state court action is pending.  *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 84(c)(1).

15.    C. R. Bard, Inc. received a copy of the Complaint on October 13, 2015.  This Notice of Removal is being filed within 30 days of that date; therefore, the Notice is timely pursuant to 28 U.S.C. § 1446 (b).

16.    No previous application has been made for the relief requested herein.

17.    As discussed at length below, Defendant CPMC is fraudulently misjoined in this action, and, thus, CPMC's consent to removal is not required.  *See, e.g., Sutton,* 251 F.R.D. at 505-506*; see also United Computer Systems, Inc.*, 298 F.3d at 762 (fraudulently joined defendant need not join in removal petition).

18.    No party in interest properly joined and served as a defendant is a citizen of the State in which this action was brought, California.  *See* 28 U.S.C. §1441(b).  The Complaint purports to name CPMC, upon information and belief, a California citizen; however, because CPMC is fraudulently misjoined in this lawsuit, its California citizenship is not a barrier to removal jurisdiction.  *See* 28 U.S.C. § 1441(c); *see also United Computer Sys. Inc.*, 298 F.3d at 762.

## III.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441

19.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, where the properly joined parties are citizens of different states.

– 3 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## A. The Amount in Controversy Requirement Is Satisfied

20.     Bard filed this Notice of Removal in good faith and on a reasonable basis in law and in fact that the requisite amount in controversy is being sought in this action.  When the amount in controversy is not specified in the complaint, the court may consider the facts alleged in the complaint as well as in the notice of removal.  *See Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002).

21.     To determine the amount in controversy, a district court takes into account claims for general damages, pain and suffering, out-of-pocket loss, emotional distress, and punitive damages. *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 449-50 (S.D. Cal. 1995).  Additionally, the "amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated."  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (quoting *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993)).

22.     Plaintiff alleges that he has "incurred significant medical expenses and has endured extreme pain and suffering, fear of death, loss of enjoyment of life, and other losses, some of which are permanent in nature."  Ex. B, Compl. ¶ 31.  Plaintiff further alleges that as a result of the failure of his Bard Recovery® Filter, he "lives in constant fear that the [Bard Recovery® Filter] will continue to migrate, pierce his heart, and kill him."  *Id.*  He also alleges that he "has become impaired and his ability to earn wages has been diminished, and will remain so in the future . . . [and] is required to attend regular physicians' visits and to undergo imaging studies."  *Id.*  Finally, he alleges that he "has suffered permanent and continuing injury, loss of enjoyment of life, pain, suffering, and impairment.  Plaintiff has suffered emotional trauma, harm, and injuries.  Plaintiff's ability to carry on the affairs of his daily life has been impacted and diminished, and will continue to diminish in the future."  *Id.* at ¶ 32.  As result of his alleged injuries, Plaintiff seeks past and future general damages; past and future economic and special damages; loss of earnings and impaired earning capacity; past and future medical expenses; past and future mental and emotional distress; punitive damages; costs of suit incurred herein; pre-judgment interest; loss of consortium damages; and such other and further relief as the Court may deem just and proper.  *See id.* at Prayer for

– 4 –

Damages ¶¶ a-d.  Plaintiff's punitive damages claim is included when determining the amount in controversy.  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established that punitive damages are part of the amount in controversy in a civil action."); *see also Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 240 (1943).

23.     It is thus facially apparent from the Complaint that Plaintiff claims in excess of $75,000.00.  *See Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (amount in controversy requirement met where plaintiff alleged "damages for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework after the hospitalization" as a result of heart failure allegedly caused by the defendant); *Evans v. CDX Servs., LLC*, 528 F. Supp. 2d 599, 606 (S.D. W. Va. 2007) (denying remand where plaintiffs alleged injury but did not specify damages; "When the Court 'considers the additional elements of pain and suffering and future damages, one can easily conclude the amount in controversy is satisfied.'"); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (concluding that complaint "obviously asserts a claim exceeding $75,000" where plaintiff sought "compensatory and punitive damages" for alleged serious medical conditions and economic losses due to use of a prescription medication).

**B.  There is Complete Diversity of Citizenship Between the Plaintiff and the Properly Joined Defendants**

24.     There is complete diversity between Plaintiffs and the properly joined defendants.

25.     Plaintiff is a resident and citizen of the State of California.  *See* Ex. B, Compl. ¶ 3.

26.     Defendant C. R. Bard, Inc. is a New Jersey corporation with its principal place of business in the State of New Jersey.  Therefore, C. R. Bard, Inc. is a citizen of New Jersey.  *See* 28 U.S.C. § 1332(c).

27.     Defendant Bard Peripheral Vascular, Inc. is an Arizona corporation with its principal place of business in the State of Arizona.  Therefore, Bard Peripheral Vascular, Inc. is a citizen of Arizona.  *Id.*

28.     Upon information and belief, none of the DOE defendants has been substituted with any named defendants or been served with process in the state court action.  For purposes of

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C.

2    § 1441(b)(1); *accord Soliman v. Phillip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002); *McCabe v.*

3    *General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). Therefore, the citizenship of DOES 1

4    through 100 should be disregarded for purposes of diversity.

5    **C. The California Defendant Is Fraudulently Misjoined, and CPMC's Presence Will**

6    **Not Defeat Diversity**

7    29.    Upon information and belief, Defendant CPMC, at the time the state court action was

8    commenced and at the time of this Notice, is a citizen of the State of California.

9    30.    CPMC is fraudulently misjoined in this action, and, thus, CPMC's presence will not

10   defeat diversity. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996) (holding

11   diversity of citizenship requirement was satisfied by reason of fraudulent misjoinder doctrine

12   because the alleged transactions involving the non-diverse defendants were wholly distinct from the

13   alleged transactions involving the diverse defendants), *abrogated on other grounds in Cohen v.*

14   *Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684-85

15   (D. Nev. 2004) ("[T]his Court agrees with the Fifth and Eleventh Circuits that the [Tapscott] rule is a

16   logical extension of the established precedent that a plaintiff may not fraudulently join a defendant in

17   order to defeat diversity jurisdiction in federal court.") (internal citations omitted); *see also Sutton*,

18   251 F.R.D. at 505 (applying the doctrine of fraudulent misjoinder and holding that the plaintiff's

19   joinder of a non-diverse, medical malpractice defendant in a product liability case was "improper").

20   31.    The only claims against CPMC are for medical malpractice and breach of fiduciary

21   duty. *See* Ex. B, Compl. ¶¶ 54-62 and ¶¶ 119-126. Both claims are premised on CPMC's alleged

22   failure to inform Plaintiff about a publically available FDA Public Health Notification ("FDA

23   PHN") directed to physicians and health care providers on August 9, 2010. *See id.* at ¶¶ 61, 125.

24   32.    Critically, Plaintiff's claims against CPMC arise not from CPMC's treatment and care

25   of Plaintiff when he allegedly received a Bard Recovery® Filter in or around March 2004, but from

26   CPMC's alleged inaction that occurred *more than six years after* CPMC's treatment and care of

27   Plaintiff. Thus, Plaintiff's claims against CPMC will likely turn, at least in in part, on whether

28

CPMC even owed a duty (either a duty of care of a fiduciary duty) to Plaintiff six years after CPMC treated him.

33. Federal courts have frequently applied the doctrine of fraudulent misjoinder to cases involving claims for medical negligence and products liability. For instance, in *Sutton*, 251 F.R.D. at 503-505, the plaintiff joined product liability claims against the manufacturer of a prescription medical device with a medical negligence claim against his healthcare provider. Specifically, the plaintiff alleged that his healthcare providers had failed to timely act in response to an FDA recall notice, and that as a result, plaintiff was implanted with a recalled device. *Id.* at 502. The court found "compelling" the defendants' argument that the plaintiff's product liability claims were so factually distinct from the claims against plaintiff's healthcare providers for failing to respond to a recall warning as to constitute fraudulent misjoinder. *Id.* at 505. The defendant's arguments were particularly persuasive in light of the fact that the fraudulent misjoinder deprived the defendants' of their right to have the product liability claims transferred to multidistrict litigation, where they could be handled in an efficient and consistent matter in a single forum in the MDL. *Id.* at 504. Thus, the court severed the claims against the healthcare providers and remanded them to state court "so as to preserve the removing Defendants' right to removal in the remaining multidistrict action and to preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum." *Id.* at 505; *see also In re Guidant Corp., Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708, Case No. 07-1129, 2007 WL 5377783, *7 (D. Minn. Jun. 4, 2007) (severing and remanding only the claims against defendant hospital because "the basis for the causes of action against [the hospital] do not arise from the same transaction and occurrences as those in the causes of action against the [medical device manufactures]; *Greene*, 344 F. Supp. 2d at 684-85 (remanding medical malpractice claims against non-diverse doctor while retaining jurisdiction over product liability claims); *In re Rezulin Prod. Liab. Litig.*, MDL No. 1348, 2003 WL 21276425, at *1-2 (S.D.N.Y June 2, 2003) (finding claims against non-diverse physician were misjoined with claims against drug manufacturer); *Stone v. Zimmer, Inc.*, No. 09-08202-CIV, 2009 WL 1809990, at *4 (S.D. Fla. June 25, 2009) ("The joinder of the malpractice claim against [the doctor] and the [pain management center] with the product

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    liability claim against [the product manufacturer] is thus inappropriate because these claims do not

2    both involve common questions of law or fact and do not assert joint, several or alternative liability

3    arising out of the same transaction, occurrence or series of transactions or occurrences.") (internal

4    quotation omitted).

5        34.    Like the plaintiff's claims in *Sutton*, Plaintiff's claims against CPMC do not arise out

6    of the same transaction or occurrence as the products liability claims brought against Bard.  Instead,

7    the claims against CPMC are legally and factually distinct from the claims against Bard.  The

8    products liability claims against Bard are based on the "development, testing, assembling,

9    manufacture, packaging, labeling, preparing, distribution, marketing, supplying, and/or selling" of

10   the Bard Recovery® Filter.  Ex. B, Compl. ¶ 1.  By contrast, the medical malpractice and breach of

11   fiduciary duty claims against CPMC are based on whether CPMC owed a duty to Plaintiff six years

12   after it provided its treatment and care for Plaintiff, and whether CPMC's breached the duty of care

13   and/or its fiduciary duty to Plaintiff by allegedly failing to inform Plaintiff about a publically

14   available FDA Public Health Notification directed to physicians and health care providers on August

15   9, 2010.  *See Burgess v. Superior Court*, 2 Cal. 4th 1064, 1077 (1992) (stating the elements of a

16   medical malpractice claim); *Jameson v. Desta*, 215 Cal. App. 4th 1144, 1164 (2013) (stating the

17   elements of a breach of fiduciary duty claim against a physician).  The crucial aspects of the claims

18   against Bard, on the one hand, and against CPMC, on the other hand, are legally and factually

19   separate and distinct such that they do not arise from the same transaction or occurrence.  *See Sutton*,

20   251 F.R.D. at 505 ("Plaintiffs' claims based on strict products liability against the removing

21   Defendants are separate from Plaintiffs' claims of medical malpractice against the California

22   Defendants in implanting a previously recalled patch in Plaintiff . . . [the] claims against the

23   California Defendant are not based on the allegedly negligent testing and manufacture of the Patch

24   and cannot be under California law.").

25       **D. Alternatively, Plaintiff's Claims Against CPMC Should Be Severed Pursuant to**

26       **Rule 21 Because it Is Not A Necessary and Indispensable Party**

27       35.    In the alternative, even if CPMC was not fraudulently misjoined, this Court should

28   sever and remand Plaintiff's medical malpractice and breach of fiduciary duty claims against CPMC

– 8 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

pursuant to Federal Rule of Civil Procedure 21 because it is not a necessary and indispensable party. Under Rule 21, courts may sever claims against non-diverse defendants and thereby perfect diversity jurisdiction. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) ("[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable party to be dropped at any time").

36. Courts have previously used Rule 21 to perfect diversity jurisdiction, including in product liability actions where an MDL has been formed against a pharmaceutical or medical device company and the plaintiff joins medical malpractice claims against a non-diverse physician. Indeed, that is precisely what the Eastern District of California did in *Sutton v. Davol, Inc.*,[1] where the plaintiff attempted to join non-diverse California health care providers in a product liability action against two medical device companies. *See Sutton*, 251 F.R.D. at 501. Finding that the interests of judicial expediency and justice favored removal so that the case could be part of an MDL, the court severed the medical malpractice claims against the non-diverse California defendants and remanded those claims to state court. *See Sutton*, 251 F.R.D. at 505 (severing and remanding the plaintiff's claims against a non-diverse California defendant pursuant to Rule 21 "so as to preserve the removing Defendants' right to removal in the remaining multidistrict action and to preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum"); *see also Greene*, 344 F. Supp. 2d at 683-84 (severing and remanding claims because manufacturing and marketing of drug and alleged wrongdoing of prescribing physician were dissimilar acts); *Sullivan v. Calvert Mem. Hosp.*, -- F. Supp. 3d --, 2015 WL 4614467, at *3 (D. Md. July 30, 2015) (severing medical malpractice claims against non-diverse doctors to retain jurisdiction over product liability claims against medical device manufacturer before transfer to the MDL, noting that although the two sets of claims "may involve the same physical object that is the source of the products liability claims against the Ethicon Defendants, the medical negligence claims against the Maryland Healthcare Defendants involve legal standards and factual inquiries distinctly different from the products liability claims"); *Mayfield v. London Women's Care, PLLC*, No. 15-19-DLB, 2015 WL 3440492, at *4 (E.D. Ky. May 28, 2015) (same,

---

[1] Davol, Inc. is a subsidiary of C. R. Bard, Inc.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

noting that the medical malpractice claim "is highly distinct from the various claims brought . . . for products liability"); *Akin v. Stryker Corp. et al.*, Case No. 13-cv-01811(DWF/FLN), 2013 WL 6511855, at \*3-5 (D. Minn. Dec. 12, 2013) (severing and remanding claims against non-diverse medical provider defendants from claims against manufacturer defendants, even though the misjoinder was not "egregious," because a finding of bad faith is not required to find that non-diverse defendants have been fraudulently misjoined); *Cooke-Bates v. Bayer Corp.*, No. 3:10-CV-261, 2010 WL 3984830, at \*4-5 (E.D. Va. Oct. 8, 2010) (severing medical malpractice claims against non-diverse doctors to retain jurisdiction over product liability claims against medical device manufacturer before transfer to the MDL); *Joseph v. Baxter International, Inc.*, 614 F. Supp. 2d 868, 873 (N.D. Ohio 2009) (concluding that severance under Rule 21 was appropriate because "the plaintiffs will benefit from the MDL process: they will not bear the burden of having to engage on their own, and at their sole expense, in discovery vis-a-vis Baxter," and "the inconvenience and potential prejudice to Baxter if I remand substantially outweigh the inconvenience and possible prejudice to the plaintiffs from remaining before me.").

37.     Likewise, here, CPMC is not an indispensable party. The claims against CPMC deal with its alleged failure to provide appropriate information to Plaintiff six years after Plaintiff received his Bard IVC filter, whereas Plaintiff's product liability claims against Bard deal with entirely different issues of the design, manufacture, and labeling the Recovery® Filter. Moreover, transfer of Plaintiff's claims against Bard to the Bard IVC Filter MDL will advance the convenience and efficiency of the case, eliminate duplicative discovery, prevent inconsistent pre-trial rulings, and conserve the resources of the judiciary, the parties, and their counsel. Accordingly, even if the Court finds that CPMC is not fraudulently misjoined, the Court should sever and remand the claims against CPMC to perfect diversity jurisdiction over Bard.

38.     By removing this action to this Court, Bard does not waive any defenses, objections or motions available to them under state or federal law.

39.     Bard reserves the right to amend or supplement this Notice of Removal.

40.     Bard requests a trial by jury on all issues so triable.

– 10 –

DEFENDANTS C. R. BARD, INC.'S AND BARD PERIPHERAL VASCULAR, INC.'S
NOTICE OF REMOVAL UNDER 28 U.S.C. § 1441(B)

WHEREFORE, Bard prays that this action be removed from the Superior Court of the State of California for the County of San Francisco to the United States District Court for the Northern District of California.

DATED:  November 12, 2015

REED SMITH LLP

By: /s/ Steven J. Boranian
Steven J. Boranian
Mark A. Sentenac
Attorneys for Defendants C. R. Bard, Inc. and
Bard Peripheral Vascular, Inc.

DEFENDANTS C. R. BARD, INC.'S AND BARD PERIPHERAL VASCULAR, INC.'S
NOTICE OF REMOVAL UNDER 28 U.S.C. § 1441(B)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# EXHIBIT A

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**IN RE: BARD IVC FILTERS PRODUCTS
LIABILITY LITIGATION**

MDL No. 2641

## TRANSFER ORDER

**Before the Panel:**[*]  Plaintiff in an action in the Eastern District of Pennsylvania (*Ebert*)
moves under 28 U.S.C. § 1407 to centralize pretrial proceedings in the Northern District of Texas
or the District of Nevada.  The litigation consists of 22 actions listed on Schedule A.[1]

Plaintiffs in fifteen actions and five potential tag-along actions support the motion and,
plaintiffs in six of these actions alternatively suggest centralization in the Middle District of Florida.
Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (BPV and together, Bard) oppose
centralization or, alternatively, suggest centralization in the District of Arizona or the Middle District
of Florida.

After considering the argument of counsel, we find that the actions in this litigation involve
common questions of fact, and that centralization in the District of Arizona will serve the
convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.
All actions involve common factual questions arising from allegations that defects in the design of
Bard's retrievable inferior vena cava filters ("IVC filters") make them more likely to fracture,
migrate, tilt, or perforate the inferior vena cava, causing injury.  Centralization will eliminate
duplicative discovery, avoid inconsistent pretrial rulings (including with respect to discovery,
privilege, and *Daubert* motion practice), and conserve the resources of the parties, their counsel and
the judiciary.

In opposing centralization, Bard does not dispute that these actions share questions of fact
or that discovery will overlap.  Rather, Bard argues, *inter alia*, that (1) the common discovery left
to be completed is individual in nature, (2) continued informal coordination among the limited
number of counsel is a better solution than formal centralization, and (3) the status of these cases
counsels against centralization.  The parties dispute the status of discovery, with responding
plaintiffs arguing, for example, that Bard has refused to produce updated discovery since its initial
productions to previous plaintiffs, while Bard argues that plaintiffs have not sought additional

---

[*]  Judge Sarah S. Vance took no part in the decision of this matter.

[1]  The Panel has been informed of sixteen additional related federal actions pending in
thirteen district courts.  Those actions and any other related federal actions are potential tag-along
actions.  *See* Panel Rules 1.1(h), 7.1, and 7.2.

-2-

discovery in two years. At oral argument, plaintiffs argued that they will seek to reopen discovery in all cases to seek information relating to a recent warning letter issued to Bard by the Food and Drug Administration (FDA), while Bard argued that the letter is largely irrelevant to the pending actions and that it will produce its communications with the FDA. While acknowledging that there has been some duplication in pretrial motions practice, Bard argues that this is because plaintiffs insist on pressing the same privilege issue unsuccessfully in various courts. Centralization will streamline these discovery disputes, allow the parties to brief plaintiffs' request for additional discovery once, and result in one ruling on the contested privilege issue. Even if plaintiffs' counsel are successfully coordinating their discovery efforts and scheduling, re-litigation of the same issues in different courts significantly impacts the parties and the judiciary.

Several of the pending cases have completed discovery and some are near trial. Given the ongoing overlapping discovery disputes, we find that centralization still would promote efficiencies. While it may be that some cases are too advanced to substantially benefit from inclusion in centralized proceedings, the parties have not specifically identified any that should be excluded. The Panel has held that the transferee court is in the best position to identify claims that should be excluded from an MDL. *See In re: Nat'l Football League Players' Concussion Injury Litig.*, 842 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) ("[W]e are persuaded that the transferee judge is in the best position to determine whether those claims are sufficiently related to the NFL claims to remain in centralized proceedings. If the transferee judge determines after close scrutiny that remand of any claims is appropriate, procedures are available whereby this may be accomplished with a minimum of delay.").

We are persuaded that the District of Arizona is an appropriate transferee district for this litigation. Defendant BPV—the Bard entity responsible for the design, testing, marketing, labeling, and post-market surveillance of Bard's IVC filters—is headquartered in this district and, therefore, documents and witnesses will be found there. The District of Arizona is not burdened by many MDLs and has the capacity and resources to successfully guide this litigation. Judge David G. Campbell, who sits in this district, is an experienced transferee judge who can prudently steer the litigation. Though a related action is not currently pending in the District of Arizona, we have found that is not a bar to centralization in a particular district. *See, e.g., In re: New Motor Vehicles Canadian Exp. Antitrust Litig.*, 269 F. Supp. 2d 1372, 1373 (J.P.M.L. 2003) (centralizing six actions in the District of Maine though no constituent action was pending in that district).

-3-

IT IS THEREFORE ORDERED that the actions listed on Schedule A are transferred to the District of Arizona, and, with the consent of that court, assigned to the Honorable David G. Campbell for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

Marjorie O. Rendell
Acting Chair

| | |
|---|---|
| Charles R. Breyer | Lewis A. Kaplan |
| Ellen Segal Huvelle | R. David Proctor |
| Catherine D. Perry | |

**IN RE: BARD IVC FILTERS PRODUCTS**
**LIABILITY LITIGATION**                                        MDL No. 2641

# SCHEDULE A

Central District of California

SIZEMORE v. C.R. BARD, INC., ET AL., C.A. No. 2:15-01945

Middle District of Florida

TILLMAN v. C.R. BARD, INC., ET AL., C.A. No. 3:13-00222
WYATT v. C.R. BARD, INC., ET AL., C.A. No. 6:14-01853
OCASIO, ET AL. v. C.R. BARD, INC., ET AL., C.A. No. 8:13-01962

Middle District of Georgia

MILTON v. C.R. BARD, INC., ET AL., C.A. No. 5:14-00351

Northern District of Illinois

JACKSON, ET AL. v. C.R. BARD, INC., ET AL., C.A. No. 1:14-04080

Eastern District of Michigan

MCCLARTY, ET AL. v. C.R. BARD, INC., ET AL., C.A. No. 4:14-13627

Northern District of Mississippi

MUNSON v. C.R. BARD, INC., ET AL., C.A. No. 3:14-00279

Western District of Missouri

LEUS v. C.R. BARD, INC., ET AL., C.A. No. 4:13-00585

District of Nebraska

KRUSE v. C.R. BARD, INC., ET AL., C.A. No. 8:15-00108

District of New Mexico

ROWE v. C.R. BARD, INC., ET AL., C.A. No. 1:15-00173

- A2 -

**MDL No. 2641 Schedule A (Continued)**

<u>Western District of New York</u>

MERRITT v. C.R. BARD, INC., ET AL., C.A. No. 1:14-00917

<u>Northern District of Ohio</u>

ROEDER v. C.R. BARD, INC., C.A. No. 3:15-00858

<u>Eastern District of Pennsylvania</u>

WETZEL v. C.R. BARD, INC., ET AL., C.A. No. 2:14-02729
EBERT v. C.R. BARD, INC., ET AL., C.A. No. 5:12-01253
KEEN v. C.R. BARD, INC., ET AL., C.A. No. 5:13-05361

<u>Middle District of Tennessee</u>

MILLER v. C.R. BARD, INC., ET AL., C.A. No. 3:15-00533

<u>Northern District of Texas</u>

BRANCH v. C.R. BARD, INC., ET AL., C.A. No. 3:15-01131

<u>Southern District of Texas</u>

CORONADO v. C.R. BARD, INC., C.A. No. 2:15-00205
CONN, ET AL. v. C.R. BARD, INC., ET AL., C.A. No. 4:14-00298

<u>Eastern District of Wisconsin</u>

ANDERSON v. BARD PERIPHERAL VASCULAR, INC., ET AL., C.A. No. 1:15-00574
HENLEY, ET AL. v. C.R. BARD, INC., ET AL., C.A. No. 2:14-00059

# EXHIBIT B

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| David Ongaro (SBN 154698), Glen Turner (SBN 212417) <br> ONGARO PC <br> 50 California Street, Suite 3325 <br> San Francisco, CA 94111 <br> TELEPHONE NO.: 415-433-3900    FAX NO. *(Optional):* 415-433-3950 <br> E-MAIL ADDRESS *(Optional):* gturner@ongaropc.com <br> ATTORNEY FOR *(Name):* Plaintiff Wayne Ruden | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco 94102-4515
BRANCH NAME: Civic Center Courthouse

PLAINTIFF/PETITIONER: Wayne Ruden

DEFENDANT/RESPONDENT: C.R. Bard., Inc., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: <br> CGC-15-548341 |
|---|---|

TO *(insert name of party being served):* C.R. Bard, Inc.

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: October 8, 2015

Derrick Payne
    (TYPE OR PRINT NAME)         ▶       (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify):*
   Civil Case Coversheet, Notice of Case Management Conference on Mar-09-2016, Alternative Dispute Resolution Program Information Packet

*(To be completed by recipient):*

Date this form is signed:

    ▶

    (TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,         (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
    ON WHOSE BEHALF THIS FORM IS SIGNED)         ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

---

Page 1 of 1

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure, <br> §§ 415.30, 417.10 <br> www.courtinfo.ca.gov |
|---|---|---|

**POS-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>David Ongaro (SBN 154698), Glen Turner (SBN 212417)<br>ONGARO PC<br>50 California Street, Suite 3325<br>San Francisco, CA 94111<br>TELEPHONE NO.: 415-433-3900   FAX NO. *(Optional)*: 415-433-3950<br>E-MAIL ADDRESS *(Optional)*: gturner@ongaropc.com<br>ATTORNEY FOR *(Name)*: Plaintiff Wayne Ruden | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco 94102-4515
BRANCH NAME: Civic Center Courthouse

PLAINTIFF/PETITIONER: Wayne Ruden

DEFENDANT/RESPONDENT: C.R. Bard., Inc., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>CGC-15-548341 |
|---|---|

TO *(insert name of party being served)*: C.R. Bard, Inc.

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: October 8, 2015

Derrick Payne
    (TYPE OR PRINT NAME)

▶ *(signature)*
    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify)*:

    Civil Case Coversheet, Notice of Case Management Conference on Mar-09-2016, Alternative Dispute Resolution Program Information Packet

*(To be completed by recipient):*

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶

_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

C.R. BARD, INC., a New Jersey corporation
(See Attached Defendants List)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

WAYNE RUDEN

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior Court of California<br><br>County of San Francisco<br>400 McAllister Street, San Francisco, CA 94102-4515 | CASE NUMBER:<br>*(Número del Caso):*<br>CGC-15-548341 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David Ongaro, ONGARO PC, 50 California Street, Suite 3325, San Francisco, CA 94111, 415-433-3900

| DATE: ,<br>*(Fecha)* | OCT - 7 2015 | Clerk, by CLERK OF THE COURT<br>*(Secretario)* Bonnie Otero | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☑ on behalf of *(specify)*: C.R. BARD, INC., a New Jersey corporation

under: ☑ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)

        ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |



**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Wayne Ruden v. C.R. Bard, Inc., et al. | CGC-15-548341 |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[ ] Plaintiff   [✓] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

C.R. BARD, INC., a New Jersey corporation;
BARD PERIPHERAL VASCULAR, INC., (a subsidiary and/or division of defendant C.R. BARD, INC.) an Arizona corporation;
CALIFORNIA PACIFIC MEDICAL CENTER;
and DOES 1-100 INCLUSIVE,

Page __1__ of __1__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| David Ongaro (SBN 154698), Glen Turner (SBN 212417)<br>ONGARO PC<br>50 California Street, Suite 3325<br><br>TELEPHONE NO.: 415-433-3900    FAX NO. *(Optional):* 415-433-3950<br>E-MAIL ADDRESS *(Optional):* gturner@ongaropc.com<br>ATTORNEY FOR *(Name):* Plaintiff Wayne Ruden | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Francisco
STREET ADDRESS:  400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE:  San Francisco 94102-4515
BRANCH NAME:  Civic Center Courthouse

| PLAINTIFF/PETITIONER: Wayne Ruden | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: C.R. Bard, Inc., et al. | CGC-15-548341 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. [✓] summons
   b. [✓] complaint
   c. [✓] Alternative Dispute Resolution (ADR) package
   d. [✓] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [ ] other *(specify documents):*

3. a. Party served *(specify name of party as shown on documents served):*

   C.R. Bard, Inc.

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   818 West 7th Street, Suite 930, Los Angeles, CA 90017

5. I served the party *(check proper box)*
   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on *(date):*                    (2) at *(time):*
   b. [ ] **by substituted service.** On *(date):*                    at *(time):*          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*          from *(city):*                    or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

| PLAINTIFF/PETITIONER: Wayne Ruden | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: C.R. Bard, Inc., et al. | CGC-15-548341 |

5. c. ☑ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):* October 8, 2015     (2) from *(city):* San Francisco

    (3) ☑ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☑ On behalf of *(specify):* C.R. Bard, Inc.
    under the following Code of Civil Procedure section:

    ☑ 416.10 (corporation)      ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)      ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)      ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)      ☐ 415.46 (occupant)
                         ☐ other:

7. **Person who served papers**
  a. Name: Derrick Payne
  b. Address: 50 California Street, Suite 3325, San Francisco, CA 94111
  c. Telephone number: 415-433-3900
  d. **The fee** for service was: $ 0
  e. I am:
    (1) ☑ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
      (i) ☐ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: October 8, 2015

Derrick Payne                ▶ _____
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)         (SIGNATURE )

POS-030

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>David Ongaro (SBN 154698), Glen Turner (SBN 212417)<br>ONGARO PC<br>50 California Street, Suite 3325<br>San Francisco, CA 94111<br><br>TELEPHONE NO.:415-433-3900 FAX NO. *(Optional):*415-433-3950<br>E-MAIL ADDRESS *(Optional)*:gturner@ongaropc.com<br>ATTORNEY FOR *(Name):*Plaintiff Wayne Ruden | **FOR COURT USE ONLY** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS:400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE:San Francisco 94102-4515
BRANCH NAME:Civic Center Courthouse

PETITIONER/PLAINTIFF:Wayne Ruden

RESPONDENT/DEFENDANT:C.R. Bard, Inc., et al.

| | |
|---|---|
| **PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL** | CASE NUMBER:<br>CGC-15-548341 |

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:
   50 California Street, Suite 3325
   San Francisco, CA 94111

3. On *(date):*October 8, 2015    I mailed from *(city and state):* San Francisco, CA
   the following **documents** *(specify):*
   Summons, Complaint, Notice of Case Management Conference on Mar-09-2016, Alternative Dispute
   Resolution Program Information Packet, Notice and Acknowledgment of Receipt - Civil

   ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)*
   (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one):*
   a. ☑ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this
      business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is
      placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in
      a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
   a. **Name** of person served: CT Corporation System
   b. **Address** of person served:

      C.R. Bard, Inc.
      818 West 7th Street, Suite 930
      Los Angeles, CA 90017

   ☐ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service
   by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: October 8, 2015

Derrick Payne                                               ▶
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)              (SIGNATURE OF PERSON COMPLETING THIS FORM)

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>POS-030 [New January 1, 2005] | **PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**<br>**(Proof of Service)** | Code of Civil Procedure, §§ 1013, 1013a<br>www.courtinfo.ca.gov |

CASE NUMBER: CGC-15-548341 WAYNE RUDEN VS. C.R. BARD, INC., A NEW JERSEY CO

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

| | |
|---|---|
| **DATE:** | **MAR-09-2016** |
| **TIME:** | **10:30AM** |
| **PLACE:** | **Department 610** |
| | **400 McAllister Street** |
| | **San Francisco, CA 94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference. However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.10. For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3869

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | |
|---|---|

David Ongaro (SBN 154698)
Glen Turner (SBN 212417)
Ongaro PC
50 California St., Ste. 3325, San Francisco, CA 94111
  TELEPHONE NO.: 415-433-3900     FAX NO.: 415-433-3950
ATTORNEY FOR *(Name):* Plaintiff Wayne Ruden

ENDORSED ONLY
F I L E D
San Francisco County Superior Court

OCT 0 7 2015

CLERK OF THE COURT
DEBORAH STEPPE
BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Francisco
  STREET ADDRESS: 400 McAllister Street
  MAILING ADDRESS:
  CITY AND ZIP CODE: San Francisco, California 94102-4515
  BRANCH NAME: Civic Center Courthouse

CASE NAME:
Wayne Ruden v. C.R. Bard., Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ✔ **Unlimited** ☐ **Limited** | | ☐ Counter ☐ Joinder | | CGC - 15 - 548341 |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
✔ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ✔ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ✔ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ✔ punitive
4. Number of causes of action *(specify):* 10
5. This case ☐ is  ✔ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: October 7, 2015
Glen Turner
   (TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|



CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

1  David R. Ongaro (State Bar No. 154698)
   dongaro@ongaropc.com
2  Glen Turner (State Bar No. 212417)
   gturner@ongaropc.com
3  ONGARO PC
   50 California Street, Suite 3325
4  San Francisco, CA 94111
   Telephone:  (415) 433-3900
5  Facsimile:  (415) 433-3950

6  Attorneys for Plaintiff WAYNE RUDEN

ENDORSED
F I L E D
San Francisco County Superior Court

OCT 0 7 2015

CLERK OF THE COURT
BY: ___DEBORAH STEPPE___
                    Deputy Clerk

7                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                     **COUNTY OF SAN FRANCISCO**

9
10   WAYNE RUDEN,                          Case No. C G C - 15 - 5 4 8 3 4 1

11                   Plaintiff,            **COMPLAINT FOR DAMAGES**

12        vs.                             **DEMAND FOR JURY TRIAL**

13   C.R. BARD, INC., a New Jersey
     corporation, BARD PERIPHERAL
14   VASCULAR, INC., (a subsidiary and/or
     division of defendant C.R. BARD, INC.) an
15   Arizona corporation, CALIFORNIA
     PACIFIC MEDICAL CENTER, and DOES
16   1-100 INCLUSIVE,

17                   Defendants.

18
19
20
21
22
23
24
25
26
27
28

---

                      **COMPLAINT**

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff WAYNE RUDEN (the "Plaintiff"), by and through his undersigned attorneys, hereby sues Defendants C.R. BARD, INC.; BARD PERIPHERAL VASCULAR, INC., a subsidiary corporation and/or division of C.R. BARD, INC. (collectively the "Bard Defendants"); California Pacific Medical Center ("CPMC"), and DOES 1 to 100 inclusive (collectively, the "Defendants") and allege as follows:

1. This is an action for damages against the Bard Defendants and Does relating to the development, testing, assembling, manufacture, packaging, labeling, preparing, distribution, marketing, supplying, and/or selling the defective product sold under the name "inferior vena cava filter" (hereinafter "IVC filter").

2. This is an action for damages against all Defendants relating to the supplying, providing, implanting and/or selling the defective IVC filter and failure to reasonably disclose or to reasonably inform Plaintiff Wayne Ruden of defects which were known or apparent at the time of implantation or that became known or apparent at a later date, in derogation of duties to provide reasonable professional care or to uphold fiduciary and confidential duties to the Plaintiff.

**PARTIES**

**Plaintiff**

3. Plaintiff, Wayne Ruden, is and has at all pertinent times been a resident of San Francisco, California, which is located in the City and County of San Francisco, California.

4. Venue is proper before this Court as a substantial part of the events or omissions giving rise to the claim occurred within this County, Defendant CPMC has a principal place of business in this County, and the Defendants regularly conduct business in this County.

**Defendants**

5. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. When the true names

1
**COMPLAINT**

and capacities of said Defendants have been ascertained, Plaintiff will amend this complaint accordingly. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiff, as hereinafter alleged.

6. At all times herein mentioned, each of the Defendants was the agent, servant, partner, licensee and licensor, aider and abettor, co-conspirator, employee and/or joint venture of its co-Defendants, and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employment, partnership, conspiracy, license, and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that its conduct constituted breach of duty owed to Plaintiffs. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, Defendants **C.R. BARD, INC., DEFENDANT BARD PERIPHERAL VASCULAR, INC., DEFENDANT CALIFORNIA PACIFIC MEDICAL CENTER and DOES 1-100 INCLUSIVE** were individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California.

7. Defendant C.R. Bard, Inc. ("Bard") is a corporation duly organized and existing under the laws of the state of Delaware and has its principal place of business in New Jersey. Bard, at all times relevant to this action, designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Bard Recovery Filter ("BRF") to be implanted in patients throughout the United States, including California. At all times relevant hereto, Defendant Bard was or has been engaged in business in California, and has conducted substantial business activity in California. Defendant has also carried on solicitations or service activities in the State of California.

2

Complaint

8. Defendant Bard Peripheral Vascular, Inc. ("BPV") is a wholly owned subsidiary corporation of defendant Bard, with its principal place of business at 1625 West 3rd Street, Tempe, Arizona. BPV at all times relevant to this action, designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the BRF to be implanted in patients throughout the United States, including California. At all times relevant hereto, Defendant BPV was or has been engaged in business in California, and has conducted substantial business activity in California. Defendant has also carried on solicitations or service activities in the State of California.

9. Defendant CPMC is a general medical and surgical hospital and academic medical center operating at multiple locations in San Francisco, California, where its principal place of business is located. CPMC, at all times relevant to this action, distributed, sold and utilized the BRF and implanted the same through its agents, including in the body of Plaintiff. At all times relevant hereto, Defendant CPMC was or has been engaged in business in California, and has conducted substantial business activity in California. Defendant has also carried on solicitations or service activities in the State of California.

## JURISDICTION AND VENUE

10. Jurisdiction is proper in this court because each defendant has engaged in and conducted substantial business activity in California, and because all of the events and omissions giving rise to liability in this matter occurred in California. The Bard defendants manufactured and sold the BRF, which entered California through the stream of commerce. CPMC is located in California.

11. Venue is proper in this court because Defendant CPMC resides in the City and County of San Francisco County, because the decision to insert the BRF in plaintiff's body was made in the City and County of San Francisco, and because various of the breaches, bad acts and omissions alleged herein occurred in the City and County of San Francisco.

///

///

3

Complaint

**A.** **GENERAL FACTUAL ALLEGATIONS (ALL DEFENDANTS AND DOES 1-100 INCLUSIVE)**

12. Plaintiff brings this case for serious injuries he suffered as a result of a surgically implanted medical device, known as a Bard Recovery Filter ("BRF"), which fractured, resulting in the embolization of two arm fragments into the proximal right pulmonary arteries, and the embolization of one fractured arm fragment into the right atrium of his heart, where it remains to this day.

13. The BRF was designed, manufactured, prepared, compounded, assembled, processed, labeled, marketed, distributed, and sold by Defendants for prevention of blood clots (thrombi) from traveling from the lower portions of the body to the heart and lungs.

14. Prior to Plaintiff Wayne Ruden being implanted with a BRF on or about March 2004, Defendants knew or should have known that the device was defective and unreasonably dangerous for, *inter alia*, the following reasons:

15. a.  Defendants failed to conduct any clinical testing, such as animal studies, to determine how the device would function once permanently implanted in the human body.

    b.  Defendants knew and/or should have known that the BRF had a high rate of fracture, migration, and excessive tilting and perforation of the vena cava wall once implanted in the human body.  Defendants know and/or should have known that such failures exposed patients to serious injuries, including: death; hemorrhage; cardiac/pericardial tamponade; cardiac arrhythmia and other symptoms similar to myocardial infarction; severe and persistent pain; perforations of tissue, vessels, and organs; and inability to remove the device.  Further, Defendants knew and should have known that these risks for the BRF were and are substantially higher than other similar devices.

    c.  Further, Defendants knew and/or should have known that the BRF contained conditions which Defendants did not intend, which resulted in the device not performing as safely as the ordinary customer would expect.

    d.  Despite being aware of these risks, Defendants misrepresented, omitted, and/or failed to provide adequate warnings of these risks or instructions for safe use.

4

Complaint

e. Even when Defendants designed and began marketing what they alleged to be a device that specifically reduced these risks, they still failed to issue a recall or notify consumers that a safer device was available.

### INFERIOR VENA CAVA FILTERS GENERALLY

16. The IVC filter at issue in this case was manufactured, marketed, and sold by the Bard Defendants, C.R. Bard, Inc. and/or Bard Peripheral Vascular, Inc., at all pertinent times. The Bard Defendants continue to manufacture and sell the BRF's successor, the G2 device, throughout the United States of America and abroad.

17. IVC Filters first came on the medical market decades ago. Over the years, several different medical device manufacturers have introduced several different designs of IVC filters.

18. An IVC filter is a device that is designed to filter or "catch" blood clots (called "thrombi") that travel from the lower portions of the body to the heart and lungs. IVC filters may be designed to be implanted, either permanently or temporarily, in the human body, more specifically, within the inferior vena cava.

19. The inferior vena cava is a vein that returns blood to the heart from the lower portions of the body. In certain people, for various reasons, thrombi travel from the vessels in the legs and pelvis, through the vena cava and into the lungs. Oftentimes, these thrombi develop in the deep leg veins. These thrombi are called "deep vein thrombosis" or "DVT." Once thrombi reach the lungs, they are considered "pulmonary emboli" or "PE." Pulmonary emboli present grave risks to human health.

20. Certain people are at increased risk for the development of DVT or PE. Those people at risk for DVT/PE can undergo medical treatment to manage the risk. For example, a doctor may prescribe medications like Heparin, Warfarin, or Lovenox to regulate the clotting factor of the blood. In some people who are at high risk for DVT/PE, or who cannot manage their conditions with medications, physicians may recommend surgically implanting an IVC filter to prevent thromboembolic events.

21. Over the years, a concern developed within the medical community (and was shared by

5

Complaint

1    IVC filter manufacturers) that an IVC filter should be designed and manufactured so that
2    it can be retrieved from the human body. Eventually, retrievable IVC filter designs were
3    offered in the market. However, these IVC filter designs were not intended to remain
4    within the human body for indeterminate periods of time. In other words, the initial
5    designs of retrievable IVC filters were intended to remain implanted for a finite period of
6    time. The BRF (discussed in more detail *infra*) was introduced to the market in late 2002
7    or 2003 (and subsequently removed from the market in late 2005) as an IVC filter that
8    was able to be retrieved after an indeterminate time of placement within the human body.

9                               **THE BARD RECOVERY FILTER**

10   22. The BRF is a medical device constructed of a nickel-titanium alloy (also called
11       "Nitinol") designed to filter blood clots (thrombi) from the human circulatory system.
12       Nitinol material is unique. Nitinol is actually an acronym that stands for Nickel
13       Titanium Naval Ordnance Laboratory. Nitinol is also unique as it possesses "shape
14       memory." That is, Nitinol will change shape according to change in temperature, and
15       then, retake its prior shape after returning to its initial temperature. This quality makes
16       Nitinol appealing for use in certain medical devices, including IVC Filters.

17   23. Soon after the BRF's introduction to the market, reports were made that portions of
18       the device were fracturing and migrating to the anatomy and vital organs of the
19       patients in whom it was implanted. These reports continued to surface and were made
20       to healthcare providers, the FDA, and to the Defendants. In fact, as early as 2003, the
21       Defendants were made aware that the BRF was flawed and was causing injury and
22       death to patients who had the filter implanted in their bodies.

23   24. The BRF was plagued with manufacturing and design defects which caused it to
24       experience a significant rate of fracture and migration of the device. Studies performed
25       in the medical and scientific communities established that the BRF had a 21% to
26       31.7% rate of fracture.

27   25. The failure of the BRF, as aforesaid, was attributable, in part, to the fact that the BRF
28       was not designed so as to be able to withstand the normal anatomical and physiological

                                              6

                                          Complaint

1    loading cycles exerted *in vivo*.

2    26. Sometime after 2003, the Defendants made a decision to introduce a substitute vena

3        cava filter for Bard Peripheral Vascular's vena cava filter product line. This substitute

4        vena cava filter was meant to replace the BRF. It was to be called the "G2 Filter."

5        G2 stands for "second generation."

6    27. In 2005, the Defendants submitted an application to the Food and Drug Administration

7        ("FDA") for introduction of the G2$^{TM}$ Filter to the global market. The application was

8        submitted under Section 510(k) of the United States Food, Drug and Cosmetic Act

9        ("Act") of 1976 (21 U.S.C. 321 *et seq*. Under Section 510(k), a medical device

10       manufacturer may represent that the device which is offered for approval is

11       "substantially similar" to a "predicate device." With regard to the G2 Filter, the

12       Defendants represented to the F.D.A that it was substantially similar to the

13       Recovery$^{TM}$ Filter System (the predicate device).

14   28. The Defendants first received clearance from the FDA to market the G2$^{TM}$ Filter

15       System as a permanent placement vena cava filter. The Defendants began selling the

16       G2$^{TM}$ Filter System in September of 2005. Later, in 2008, the G2$^{TM}$ Filter was

17       cleared by the FDA as a retrievable (option) IVC filter.

18       **WHAT HAPPENS WHEN THE BRF FAILS?**

19   29. The failure (fracture and/or migration) of the BRF leads to a number of different, and

20       potentially fatal, complications. These complications include, but are not limited to:

21       a.   Death;

22       b.   Hemorrhage;

23       c.   Cardiac/pericardial tamponade (pressure caused by a collection of blood in the area

24            around the heart);

25       d.   Severe and persistent pain; and

26       e.   Perforation of tissue, vessels and organs.

27   30. The person who experiences failure (fracture and/or migration) of the BRF often

28

7

Complaint

1 experiences an acute onset of chest pain and shortness of breath. This typically
2 results in the person presenting to an emergency room, hospital, and/or physician for
3 evaluation.

4 31. The BRF was placed in Plaintiff's body on or about March 2004. Plaintiff discovered
5 for the first time on or about March 2015 that the BRF had fractured, injuring him by
6 causing the embolization of two arm fragments into the proximal right pulmonary arteries,
7 and the embolization of one fractured arm fragment into the right atrium of his heart.
8 Plaintiff has incurred significant medical expenses and has endured extreme pain
9 and suffering, fear of death, loss of enjoyment of life, and other losses, some of
10 which are permanent in nature. As a result of the failure of the BRF, Plaintiff lives
11 in constant fear that the BRF will continue to migrate, pierce his heart, and
12 kill him. Plaintiff has become impaired and his ability to earn wages has been
13 diminished, and will remain so in the future. The defective BRF remains in
14 Plaintiff's body. Plaintiff is required to attend regular physicians' visits and to
15 undergo imaging studies.

16 32. As a direct and proximate result of the conduct and defective product of the Bard
17 Defendants, as alleged in this Complaint, and of the failure by Defendant CPMC to
18 disclose information about said defective product that it had a duty to disclose, Plaintiff
19 Wayne Ruden has suffered permanent and continuing injury, loss of enjoyment of
20 life, pain, suffering, and impairment. Plaintiff has suffered emotional trauma, harm
21 and injuries. Plaintiff's ability to carry on the affairs of his daily life has been
22 impacted and diminished, and will continue to diminish in the future.

23 33. As a direct and proximate result of the conduct and defective product of the
24 Defendants, as alleged in this Complaint, medical monitoring is necessary for Plaintiff
25 Wayne Ruden. Medical monitoring includes:

26 a. Regularly scheduled CT scans or other appropriate imaging studies; and/or
27 b. Potential cardiac catheterization or other endovascular procedure to detect the
28 presence of migrated pieces of the BRF; and or physicians' visits and examinations.

8

Complaint

///

## THE DEFENDANTS'KNOWLEDGE OF THE FAILURE OF THE BRF AND THE
## DANGERS ASSOCIATED WITH THE DEVICE

34. Upon information and belief, Plaintiff alleges that, at all pertinent times including prior to the implantation of the BRF in Plaintiff in March 2004, the Bard Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. were aware and had knowledge of the fact that the BRF was defective and unreasonably dangerous and was causing injury and death to patients who had received the BRF.

35. Upon information and belief, the Bard defendants caused regulatory approval to be obtained for the device through deceptive means, and with full knowledge of its dangerous propensities and unacceptable failure rate.

36. Upon information and belief, Plaintiff alleges that CPMC was aware and had knowledge of the fact that the BRF was defective and unreasonably dangerous and was causing injury and death to patients who had received the BRF.

37. Data established that the failure rate of the BRF was/is exceedingly higher than the rates the Defendants have published in the past, and currently continue to publish to the medical community, members of the public, and the FDA.

38. Over 921 adverse events were identified by the FDA through a warning issued in August of 2010 regarding risks associated with IVC filter complications.

39. Upon information and belief, from the time the BRF became available on the market, the Bard Defendants embarked on an aggressive campaign of "off-label marketing" concerning the BRF. This included representations made to physicians, healthcare professionals, and other members of the medical community that the BRF was safe and effective for retrievable use prior to the FDA clearing the BRF for retrievable use in 2008.

40. The conduct of the Bard Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. as alleged in this Complaint, constituted willful, wanton, gross and outrageous corporate conduct that demonstrates a conscious disregard for the safety of the Plaintiff

9

Complaint

Wayne Ruden. The Bard Defendants had actual knowledge of dangers to the life health and well-being of the Plaintiff Wayne Ruden presented by the BRF, yet consciously failed to act reasonably to:

a.   Inform or warn the Plaintiff, his physicians, or the public at large of the dangers; and

b.   Recall the BRF from the market in a timely and safe fashion;

41. Despite having knowledge at all pertinent times of the unreasonably dangerous and defective nature of the product, the Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. consciously disregarded the known risks, failed to warn physicians and existing users of the great risk of long-term retention of the device, and continued to actively market and offer for sale the BRF.

42. Plaintiff further alleges that the Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. acted in a willful, wanton and gross manner, and in total disregard for the health and safety of the users or consumers of its BRF, including Plaintiff Wayne Ruden, and acted to serve their own interests and consciously pursued a course of conduct knowing that such conduct created a substantial risk of significant harm to other persons. Therefore, Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. should be required to pay a punitive or exemplary damage award to the Plaintiff.

**FIRST CAUSE OF ACTION: NEGLIGENCE**
**(BARD DEFENDANTS AND DOES 1-100 INCLUSIVE)**

43. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

44. At all times relevant to this cause of action, the Bard Defendants were in the business of designing, developing, setting specifications, manufacturing, marketing, selling, and distributing the BRF.

45. The Bard Defendants designed, manufactured, marketed, inspected, labeled, promoted, distributed and sold the BRF that was implanted in Plaintiff.

10

Complaint

46. The Bard Defendants had a duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the BRF so as to avoid exposing others to foreseeable and unreasonable risks of harm.

47. At the time the BRF was implanted in Plaintiff's body, all Defendants knew or reasonably should have known that the BRF was dangerous or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

48. At the time of manufacture and sale of the BRF, the Bard Defendants knew or should have known that the BRF:

   a.   Was designed and manufactured in such a manner so as to present an unreasonable risk of fracture of portions of the device;

   b.   Was designed and manufactured so as to present a unreasonable risk of migration of the device and/or portions of the device; and/or

   c.   Was designed and manufactured so as to present a unreasonable risk of the device tilting and/or perforating the vena cava wall; and/or

   d.   Was designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement within the human body.

49. At the time of manufacture and sale of the BRF, the Bard Defendants knew or should have known that using the BRF in its intended use or in a reasonably foreseeable manner created a significant risk of a patient suffering severe health side effects, including, but not limited to: hemorrhage; cardiac/pericardial tamponade; cardiac arrhythmia and other symptoms similar to myocardial infarction; perforations of tissue, vessels and organs; and other severe personal injuries and diseases, which are permanent in nature, including, but not limited to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life, continued medical care and treatment due to chronic injuries/illness proximately caused by the device; and the continued risk of requiring additional medical and surgical procedures including general anesthesia, with attendant risk of life threatening complications.

11

Complaint

50. At the time the BRF was implanted in Plaintiff's Body, all Defendants knew or reasonably should have known that consumers of the BRF would not realize the danger associated with using the device in its intended use and/or in a reasonably foreseeable manner.

51. Defendants breached their duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the BRF in, among other ways, the following acts and omissions:

    a. Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures to reduce or avoid harm;

    b. Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other device available for the same purpose;

    c. Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications or from other typical units from the same production line;

    d. Failing to use reasonable care to warn or instruct, including pre- and post-sale, Plaintiff, Plaintiff's physicians, or the general health care community about the BRF's substantially dangerous condition or about facts making the product likely to be dangerous;

    e. Failing to perform reasonable pre and post-market testing of the BRF to determine whether or not the product was safe for its intended use;

    f. Failing to provide adequate instructions, guidelines, and safety precautions, including pre- and post-sale, to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the BRF;

    g. Advertising, marketing and recommending the use of the BRF, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the BRF;

12

Complaint

h. Representing that the BRF was safe for its intended use when in fact, Defendants knew and should have known the product was not safe for its intended purpose;

i. Continuing manufacture and sale of the BRF with the knowledge that said product was dangerous and not reasonably safe, and failing to comply with good manufacturing regulations of the Food and Drug Administration;

j. Failing to use reasonable and prudent care in the design, research, manufacture, and development of the BRF so as to avoid the risk of serious harm associated with the use of the BRF;

k. Advertising, marketing, promoting and selling the BRF for uses other than as approved and indicated in the product's label;

l. Failing to establish an adequate quality assurance program used in the manufacturing of the BRF; and

m. Failing to establish and maintain an adequate post-market surveillance program.

52. A reasonable manufacturer, distributor, seller or medical provider under the same or similar circumstances would not have engaged in the before-mentioned acts and omissions.

53. As a direct and proximate result of the foregoing negligent acts and omissions by Defendants, Plaintiff has suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION: NEGLIGENCE
## (CPMC AND DOES 1-100 INCLUSIVE)

54. Plaintiff re-alleges each and every allegation in this Complaint and incorporates each allegation into this Count, as if set forth at length, in its entirety.

55. CPMC, through its own acts and the acts of its agents, created a fiduciary or special relationship with the Plaintiff when they and their agents recommended and advised the insertion of a BRF in Plaintiff, and when they and their agents inserted a BRF in Plaintiff

13

Complaint

1   on or about March 2004.

2   56. The implantation of the BRF in Plaintiff created a danger, which arose from the fiduciary
3       or special relationship between CPMC and plaintiff.

4   57. CPMC therefore had an ongoing duty to reasonably warn the Plaintiff of newly-
5       discovered risks related to this danger based on their fiduciary and special relationship
6       with the Plaintiff.

7   58. On August 9, 2010, the FDA issued a warning letter regarding IVC filters, reporting 921
8       adverse events associated with the devices. The FDA advised that the events could be
9       related to a retrievable filter remaining in the body for long periods of time.

10  59. The FDA advised treaters to consider the risks and benefits of filter removal for each
11      patient.

12  60. On information and belief, CPMC received this warning.

13  61. CPMC failed to communicate with the Plaintiff, including by requesting that he undergo
14      reasonable imaging examinations to determine the status of the BRF in his body or by
15      asking him to undergo other appropriate and reasonable testing or examination or by
16      providing information related to his health.

17  62. CPMC did not act with reasonable care when it failed to communicate with the Plaintiff in
18      said fashion. Its failure to use reasonable care was gross, oppressive and malicious.

19                              **THIRD CAUSE OF ACTION**

20                  **STRICT PRODUCTS LIABILITY - FAILURE TO WARN**

21                  **(BARD DEFENDANTS AND DOES 1-100 INCLUSIVE)**

22  63. Plaintiff re-alleges and incorporates by reference each and every allegation contained in
23      the foregoing paragraphs as though fully set forth herein.

24  64. The Bard Defendants designed, set specifications, manufactured, prepared, compounded,
25      assembled, processed, marketed, labeled, distributed and sold the BRF, including the one
26      implanted into Plaintiff, into the stream of commerce and in the course of same, directly
27      advertised and marketed the device to consumers or persons responsible for consumers.

28

                                        14

65. At the time the Bard Defendants designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the device into the stream of commerce, the Bard Defendants knew or should have known the device presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated use.

66. Defendants knew or should have known at the time the BRF was implanted in Plaintiff, that the BRF, *inter alia*, posed a significant and higher risk than other similar devices of device failure (fracture, migration, tilting, and perforation of the vena cava wall) and resulting serious injuries.

67. Therefore, Defendants had a duty to warn of the risk of harm associated with the use of the device and to provide adequate instructions on the safe and proper use of the device. Defendants further had a duty to warn of dangers and proper safety instructions that it became aware of even after the device was distributed and implanted in Plaintiff.

68. Despite this duty, Defendants failed to adequately warn of material facts regarding the safety and efficacy of the BRF, and further failed to adequately provide instructions on the safe and proper use of the device.

69. No health care provider, including Plaintiff's physicians, or patient would have used the device in the manner directed, had those facts been made known to the prescribing healthcare providers and/or ultimate users of the device.

70. The health risks associated with the device as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

71. Plaintiff and Plaintiff's health care providers used the device in a normal, customary, intended, and foreseeable manner, namely as a surgically implanted device used to prevent pulmonary embolisms.

72. After it was implanted, the device continued to function in a normal, customary, intended, and foreseeable manner, namely as a surgically implanted device used to prevent pulmonary embolisms.

73. Therefore, the BRF implanted in Plaintiff was defective and unreasonably dangerous at

15

Complaint

the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

74. The BRF implanted in Plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by the Bard Defendants.

75. As a direct and proximate result of Defendants' lack of sufficient warning and/or instructions, Plaintiff has suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY –

## DESIGN DEFECT – CONSUMER EXPECTATION

## (BARD DEFENDANTS AND DOES 1-100 INCLUSIVE)

76. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

77. At all times relevant to this action, the Bard Defendants developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce the BRF, including the one implanted in Plaintiff.

78. The BRF was expected to, and did, reach its intended consumers without substantial change in the condition in which it was in when it left Defendants' possession. In the alternative, any changes that were made to the BRF implanted in Plaintiff were reasonably foreseeable to Defendants.

79. The BRF implanted in Plaintiff was defective in design because it failed to perform as safely as an ordinary consumer would have expected it to perform at the time of use.

80. The BRF implanted in Plaintiff was defective in design, in that its risks of harm exceeded its claimed benefits.

81. Plaintiff and Plaintiff's health care providers used the BRF in a manner that was reasonably foreseeable to and intended by Defendants.

82. Neither Plaintiff, nor Plaintiff's health care providers could have by the exercise of

16

Complaint

1  reasonable care discovered the device's defective condition or perceived its unreasonable

2  dangers prior to Plaintiff's implantation with the device.

3  83. As a direct and proximate result of the BRF's defective design, Plaintiff has suffered and

4  will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life,

5  ongoing fear and dread, disability, and other losses, in an amount to be determined at

6  trial.

7  **FIFTH CAUSE OF ACTION**

8  **STRICT PRODUCTS LIABILITY –**

9  **DESIGN DEFECT – RISK-BENEFIT TEST**

10  **(BARD DEFENDANTS AND DOES 1-100 INCLUSIVE)**

11  84. Plaintiff re-alleges and incorporates by reference each and every allegation contained in

12  the foregoing paragraphs as though fully set forth herein.

13  85. At all times relevant to this action, the Bard Defendants developed, tested, designed,

14  manufactured, inspected, labeled, promoted, distributed and sold into the stream of

15  commerce the BRF, including the one implanted in Plaintiff.

16  86. As a direct and proximate result of the BRF's defective design, Plaintiff has suffered and

17  will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life,

18  ongoing fear and dread, disability, and other losses, in an amount to be determined at

19  trial.

20  87. The BRF implanted in Plaintiff was defective in design, in that its risks of harm exceeded

21  its claimed benefits

22  88. The BRF implanted in Plaintiff was defective in design because it was not designed to

23  withstand the stress of long-term implantation *in vivo*.

24  89. The BRF implanted in Plaintiff was defective in design because of the unacceptably high

25  risk of fracture and fragmentation.

26  90. The BRF implanted in Plaintiff was defective in design, because, on information and

27  belief, safer alternative designs existed.  An example is the inferior vena cava filter

28  designs used by other manufacturers that did not result in such a high fragmentation rate.

17

Complaint

91. The BRF implanted in Plaintiff was defective in design because, on information and believe, the cost of an alternative design was less than the grave risk of releasing the product onto the market in the state it was released.

## SIXTH CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

## (BARD DEFENDANTS AND DOES 1-100 INCLUSIVE)

92. Plaintiff re-alleges and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

93. The Bard Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the BRF that was implanted into Plaintiff.

94. The BRF implanted in Plaintiff contained a condition, which Defendants did not intend; at the time it left Defendants' control and possession.

95. Plaintiff and Plaintiff's health care providers used the device in a manner that was reasonably foreseeable to Defendants.

96. As a result of this condition, the product injured Plaintiff and failed to perform as safely as an ordinary consumer would expect when used in a reasonably foreseeable manner.

97. As a direct and proximate result of the BRF's manufacturing defect, Plaintiff has suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## (BARD DEFENDANTS AND DOES 1-100 INCLUSIVE)

98. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

99. At all times relevant to this action, Defendants designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce the BRF for use as a surgically implanted device

18

Complaint

1    used to prevent pulmonary embolisms and for uses other than as approved and indicated

2    in the product's instructions, warnings, and labels.

3  100. At the time and place of the sale, distribution, and supply of the Defendants' BRF to

4    Plaintiff by way of Plaintiff's health care providers and medical facilities, Defendants

5    expressly represented and warranted, by labeling materials submitted with the product,

6    that the BRF was safe and effective for its intended and reasonably foreseeable use.

7  101. Defendants knew of the intended and reasonably foreseeable use of the BRF, at the time

8    they marketed, sold, and distributed the product for use by Plaintiff, and impliedly

9    warranted the product to be of merchantable quality, and safe and fit for its intended use.

10  102. Defendants impliedly represented and warranted to the healthcare community, Plaintiff

11    and Plaintiff's health care providers, that the BRF was safe and of merchantable quality

12    and fit for the ordinary purpose for which the product was intended and marketed to be

13    used.

14  103. The representations and implied warranties made by Defendants were false, misleading,

15    and inaccurate because the BRF was defective, unsafe, unreasonably dangerous, and not

16    of merchantable quality, when used in its intended and/or reasonably foreseeable manner.

17    Specifically, at the time of Plaintiff's purchase of the BRF from the Defendants, through

18    Plaintiff's physicians and medical facilities, it was not in a merchantable condition in

19    that:

20    a. It was designed in such a manner so as to be prone to a statistically high incidence of

21        failure, including fracture, migration, excessive tilting, and perforation of the inferior

22        vena cava;

23    b. It was designed in such a manner so as to result in a statistically significant incidence of

24        injury to the organs and anatomy; and

25    c. It was manufactured in such a manner so that the exterior surface of the BRF was

26        inadequately, improperly and inappropriately prepared and/or finished causing the

27        device to weaken and fail.

28  104. Plaintiff and Plaintiff's health care providers reasonably relied on the superior skill and

1    judgment of Defendants as the designers, researchers and manufacturers of the product,

2    as to whether the BRF was of merchantable quality and safe and fit for its intended use,

3    and also relied on the implied warranty of merchantability and fitness for the particular

4    use and purpose for which the BRF was manufactured and sold.

5    105. Defendants placed the BRF into the stream of commerce in a defective, unsafe, and

6    unreasonably dangerous condition, and the product was expected to and it did reach

7    Plaintiff without substantial change in the condition in which the BRF was manufactured

8    and sold.

9    106. Defendants breached their implied warranty because their BRF was not fit for its

10    intended use and purpose.

11    107. As a proximate result of Defendants breaching their implied warranties, Plaintiff has

12    suffered and will continue to suffer serious physical injuries, economic loss, loss of

13    enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

## (BARD DEFENDANTS AND DOES 1-100 INCLUSIVE)

17    108. Plaintiff re-alleges and incorporates by reference each and every allegation contained in

18    the foregoing paragraphs as though fully set forth herein.

19    109. At all times relevant to this cause, and as detailed *supra*, Defendants negligently

20    provided Plaintiff, Plaintiff's health care providers, and the general medical community

21    with false or incorrect information, or omitted or failed to disclose material information

22    concerning the BRF, including, but not limited to, misrepresentations relating to the

23    following subject areas:

24    a. The safety of the BRF;

25    b. The efficacy of the BRF;

26    c. The rate of failure of the BRF;

27    d. The approved uses of the BRF.

28    110. The information distributed by Defendants to the public, the medical community and

20

Complaint

1    Plaintiff's health care providers was in the form of reports, press releases, advertising

2    campaigns, labeling materials, print advertisements, commercial media containing

3    material representations, which were false and misleading, and contained omissions and

4    concealment of the truth about the dangers of the use of the BRF. Defendants made the

5    foregoing misrepresentations knowing that they were false or without reasonable basis.

6    On information and belief, these materials included instructions for use and warning in a

7    document that was included in the package of the BRF that was implanted in Plaintiff.

8  111. Defendants' intent and purpose in making these misrepresentations was to deceive and

9    defraud the public and the medical community, including Plaintiff's health care

10   providers; to gain the confidence of the public and the medical community, including

11   Plaintiff's health care providers; to falsely assure them of the quality of the BRF and its

12   fitness for use; and to induce the public and the medical community, including

13   Plaintiff's healthcare providers, to request, recommend, prescribe, implant, purchase, and

14   continue to use the BRF.

15 112. The foregoing representations and omissions by Defendants were in fact false. The BRF

16   is not safe, fit, and effective for human use in its intended and reasonably foreseeable

17   manner. The use of the BRF is hazardous to the user's health, and said device has a

18   serious propensity to cause users to suffer serious injuries, including without limitation,

19   the injuries Plaintiff suffered. Further, the device has a significantly higher rate of failure

20   and injury than do other comparable devices.

21 113. In reliance upon the false and negligent misrepresentations and omissions made by

22   Defendants, Plaintiff and Plaintiff's health care providers were induced to, and did use

23   the BRF, thereby causing Plaintiff to sustain severe and permanent personal injuries.

24 114. Defendants knew and had reason to know that Plaintiff, Plaintiff's health care providers,

25   and the general medical community did not have the ability to determine the true facts

26   intentionally and/or negligently concealed and misrepresented by Defendants, and would

27   not have prescribed and implanted same, if the true facts were known to them.

28 115. Defendants had sole access to material facts concerning the defective nature of the

21

Complaint

product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the BRF.

116. At the time Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the BRF, Plaintiff and Plaintiff's health care providers were unaware of said Defendants' negligent misrepresentations and omissions.

117. Plaintiff, Plaintiff's health care providers and the general medical community reasonably relied upon misrepresentations and omissions made by Defendants where the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the BRF.

118. Plaintiff and Plaintiff's health care provider's reliance on the foregoing misrepresentations and omissions by Defendants' were the direct and proximate cause of Plaintiff's injuries as described herein.

## NINTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

## (CPMC AND DOES 1-100 INCLUSIVE)

119. Plaintiff re-alleges each and every allegation in this Complaint and incorporates each allegation into this Count, as if set forth at length, in its entirety.

120. CPMC, through its own acts and the acts of its agents, created a fiduciary or special relationship with the Plaintiff when its and its agents recommended and advised the insertion of a BRF in Plaintiff, and when it and its agents inserted a BRF in Plaintiff on or about March 2004.

121. The implantation of the BRF in Plaintiff created a danger, which arose from the fiduciary or special relationship between CPMC and plaintiff.

122. CPMC therefore had an ongoing duty to warn the Plaintiff of newly-discovered risks related to this danger based on its fiduciary and special relationship with the Plaintiff.

123. On August 9, 2010, the FDA issued a warning letter regarding IVC filters, reporting 921 adverse events associated with the devices. The FDA advised that the events could be related to a retrievable filter remaining in the body for long periods of time.

22

Complaint

124. The FDA advised treaters to consider the risks and benefits of filter removal for each patient.

125. CPMC did not advise the Plaintiff of the FDA warning or of the association of adverse events with a retrievable IVC filter remaining in the body for a long period of time, even though the BRF had already been in the Plaintiff's body for over 6 years when the warning was issued.

126. CPMC did not contact the Plaintiff to obtain information or to advise testing to gather all possible information on the severe dangers to which they knew the Plaintiff was exposed.

## TENTH CAUSE OF ACTION

## NEGLIGENCE – RECALL/RETROFIT

## (ALL DEFENDANTS AND DOES 1-100 INCLUSIVE)

127. Plaintiff re-alleges each and every allegation in this Complaint and incorporates each allegation into this Count, as if set forth at length, in its entirety.

128. Defendants manufactured, distributed and sold the BRF.

129. Defendants knew or reasonably should have known that the BRF was dangerous or was likely to be dangerous when used in a reasonably foreseeable manners.

130. On August 9, 2010, the FDA issued a warning letter regarding IVC filters, reporting 921 adverse events associated with the devices. The FDA advised that the events could be related to a retrievable filter remaining in the body for long periods of time.

131. The FDA advised treaters to consider the risks and benefits of filter removal for each patient.

132. After learning of this defect, Defendants did not advise the Plaintiff of the FDA warning or of the association of adverse events with a retrievable IVC filter remaining in the body for a long period of time, even though the BRF had already been in the Plaintiff's body for over 6 years when the warning was issued.

133. The Defendants did not contact the Plaintiff to obtain information or to advise testing to understand the severe dangers to which they knew the Plaintiff was exposed.

134. The Defendants did not take available actions to recall the BRF from the market.

23

Complaint

135. A reasonable manufacturer, distributor, seller or health care provider, under the same or similar circumstances, would have recalled the BRF.

136. Plaintiff Wayne Ruden was harmed by this conduct.

137. Defendants' failure to recall the BRF was a substantial factor in causing Plaintiff Wayne Ruden's harm.

## PUNITIVE DAMAGES ALLEGATIONS
## (ALL DEFENDANTS AND DOES 1-100 INCLUSIVE)

138. Plaintiff re-alleges each and every allegation in this Complaint and incorporates each allegation into this Count, as if set forth at length, in its entirety.

139. Plaintiff is entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total reckless disregard for the public safety and welfare.

140. Defendants had knowledge of, and were in possession of evidence demonstrating that, the BRF was defective and unreasonably dangerous and had a substantially higher failure rate than did other similar devices on the market. Yet, Defendants failed to:

   a. Withdraw the BRF from the market as soon as they learned of its excessive dangers;

   b. Withdraw the BRF from the market once the FDA issued its warning letter;

   c. Inform or warn Plaintiff or his health care providers of the excessive dangers prior to or after the insertion of the BRF into his body;

   d. Establish and maintain an adequate quality and post-market surveillance system; and

   e. Timely inform the Plaintiff that the FDA had issued a warning for the BRF.

141. Defendants so acted to serve their own pecuniary interests. Having reasons to know and consciously disregarding the substantial risk that their product might kill or significantly harm patients, or significantly injure and impair the rights of others, Defendants consciously pursued a course of conduct knowing that such conduct created a substantial risk of significant harm to other persons.

142. Alternatively, Defendants recklessly and willfully pursued a course of conduct knowing that such conduct created a substantial risk of significant harm to other persons.

24

Complaint

143. As a direct, proximate, and legal result of Defendants' acts and omissions as described herein, and Plaintiff implantation with Defendants' defective product, Plaintiff has suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## PRAYER FOR DAMAGES

**WHEREFORE**, Plaintiff, Wayne Ruden, prays for relief on the entire complaint, as follows:

   a.  Judgment to be entered against all defendants on all causes of action of this Complaint, including but not limited to:

      1.  Physical pain and suffering in the past and which, in reasonable probability, he will continue to suffer in the future;

      2.  Physical impairment and incapacity in the past and which, in reasonable probability, he will continue to suffer in the future;

      3.  Mental anguish in the past and which, in reasonable probability, he will sustain in the future;

      4.  Reasonable and necessary medical expenses for treatment received in the past and, based upon reasonable medical probability, the reasonable medical expenses he will need in the future;

      5.  Disfigurement in the past and which, in reasonable probability, he will continue to suffer in the future;

      6.  Loss of earning capacity in the past and future; and

      7.  Punitive damages.

   b.  Plaintiff be awarded full, fair, and complete recovery for all claims and causes of action relevant to this action;

   c.  Plaintiff be awarded all appropriate costs, fees, expenses, and pre-judgment and post judgment interest pursuant to the laws of the State of California as authorized by law on the judgments entered in Plaintiff's behalf; and,

   d.  Such other relief the court deems just and proper.

1

2

3

4

Dated:  October 7, 2015

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ONGARO PC

By: _____
     Glen Turner
     Attorneys for Plaintiff
     WAYNE RUDEN

Complaint



# Superior Court of California, County of San Francisco
## Alternative Dispute Resolution
## Program Information Package



> The plaintiff must serve a copy of the ADR information package
> on each defendant along with the complaint.  (CRC 3.221(c))

## WHAT IS ADR?
Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial.  There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences.  In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to court.

## WHY CHOOSE ADR?
"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial." (Local Rule 4)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.**  A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.**  The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.**  For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

## HOW DO I PARTICIPATE IN ADR?
Litigants may elect to participate in ADR at any point in a case.  General civil cases may voluntarily enter into the court's ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet)
- Indicating your ADR preference on the Case Management Statement (also attached to this packet); or
- Contacting the court's ADR office (see below) or the Bar Association of San Francisco's ADR Services at 415-782-8905 or www.sfbar.org/adr for more information.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA   94102
415-551-3869

***Or, visit the court ADR website at www.sfsuperiorcourt.org***

The San Francisco Superior Court offers different types of ADR processes for general civil matters; each ADR program is described in the subsections below:

## 1) SETTLEMENT CONFERENCES

The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute early in the litigation process.

**(A) THE BAR ASSOCIATION OF SAN FRANCISCO (BASF) EARLY SETTLEMENT PROGRAM (ESP):** ESP remains as one of the Court's ADR programs (see Local Rule 4.3) but parties must select the program – the Court no longer will order parties into ESP.

**Operation:** Panels of pre-screened attorneys (one plaintiff, one defense counsel) each with at least 10 years' trial experience provide a minimum of two hours of settlement conference time, including evaluation of strengths and weakness of a case and potential case value. On occasion, a panelist with extensive experience in both plaintiff and defense roles serves as a sole panelist. BASF handles notification to all parties, conflict checks with the panelists, and full case management. The success rate for the program is 78% and the satisfaction rate is 97%. Full procedures are at: www.sfbar.org/esp.

**Cost:** BASF charges an administrative fee of $295 per party with a cap of $590 for parties represented by the same counsel. Waivers are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see enclosed brochure.

**(B) MANDATORY SETTLEMENT CONFERENCES:** Parties may elect to apply to the Presiding Judge's department for a specially-set mandatory settlement conference. See Local Rule 5.0 for further instructions. Upon approval of the Presiding Judge, the court will schedule the conference and assign the case for a settlement conference.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO,** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending.

**Operation:** Experienced professional mediators, screened and approved, provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. The BASF website contains photographs, biographies, and videos of the mediators as well as testimonials to assist with the selection process. BASF staff handles conflict checks and full case management. Mediators work with parties to arrive at a mutually agreeable solution. The success rate for the program is 64% and the satisfaction rate is 99%.

**Cost:** BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the administrative fee are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see the enclosed brochure.

**(B) JUDICIAL MEDIATION** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at anytime throughout the litigation process.

**Operation:** Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge for the Judicial Mediation program.

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may elect any private mediator of their choice; the selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

## 3) ARBITRATION

An arbitrator is neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION:** When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.

**Operation:** Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.2 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after the filing of a complaint. There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF TO ENROLL IN THE LISTED BASF PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF.



# Superior Court of California
## County of San Francisco



HON. JOHN K. STEWART
PRESIDING JUDGE

## Judicial Mediation Program

JENIFFER B. ALCANTARA
ADR ADMINISTRATOR

The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to personal injury, professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial Mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable Michael I. Begert  
The Honorable Suzanne R. Bolanos  
The Honorable Angela Bradstreet  
The Honorable Andrew Y.S. Cheng  
The Honorable Samuel K. Feng  
The Honorable Charles F. Haines  

The Honorable Harold E. Kahn  
The Honorable Curtis E.A. Karnow  
The Honorable Charlene P. Kiesselbach  
The Honorable James Robertson, II  
The Honorable Richard B. Ulmer, Jr.  
The Honorable Mary E. Wiss  

Parties interested in Judicial Mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program and deliver a courtesy copy to Department 610. A preference for a specific judge may be indicated on the request, and although not guaranteed, every effort will be made to fulfill the parties' choice. Please allow at least 30 days from the filing of the form to receive the notice of assignment. The court's Alternative Dispute Resolution Administrator will facilitate assignment of cases that qualify for the program.

Note: Space and availability is limited. Submission of a stipulation to Judicial Mediation does *not* guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Alternative Dispute Resolution  
400 McAllister Street, Room 103, San Francisco, CA 94102  
(415) 551-3869

03/2015 (ja)

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: <br> ATTORNEY FOR (Name): | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO <br> 400 McAllister Street <br> San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER: <br><br> DEFENDANT/RESPONDENT: | |
| **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER: <br><br> **DEPARTMENT 610** |

**1)  The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐  **Early Settlement Program of the Bar Association of San Francisco (BASF) -** Pre-screened experienced attorneys provide a minimum of 2 hours of settlement conference time for a BASF administrative fee of $295 per party. Waivers are available to those who qualify. BASF handles notification to all parties, conflict checks with the panelists, and full case management. www.sfbar.org/esp

☐  **Mediation Services of BASF -** Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐  **Private Mediation -** Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐  **Judicial Arbitration -** Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org

☐  **Judicial Mediation -** The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days  ☐ 90-120 days  ☐ Other (please specify) _____

☐  **Other ADR process (describe)** _____

**2)  The parties agree that the ADR Process shall be completed by (date):** _____

**3)  Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____


| _____ <br> Name of Party Stipulating | _____ <br> Name of Party Stipulating |
|---|---|
| _____ <br> Name of Party or Attorney Executing Stipulation | _____ <br> Name of Party or Attorney Executing Stipulation |
| _____ <br> Signature of Party or Attorney | _____ <br> Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  03/15 · · · · · · · · **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

JS 44 (Rev. 12/12) cand rev (1/15/13)

Case 2:15-md-02641-DGC Document 604-3 Filed 02/09/16 Page 63 of 63
Case 4:15-cv-05189-KAW Document 1-1 Filed 11/12/15 Page 1 of 1

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| WAYNE RUDEN | C. R. BARD, INC.; BARD PERIPHERAL VASCULAR, INC.; CALIFORNIA PACIFIC MEDICAL CENTER |

**(b)** County of Residence of First Listed Plaintiff    San Francisco, CA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Union, New Jersey
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
David R. Ongaro (SBN 154698); Glen Turner (SBN 212417)
Ongaro PC, 50 California Street, Suite 3325, San Francisco, CA 94111
Tel: (415) 433-3900 / Fax: (415) 433-3950

Attorneys *(If Known)*
Steven J. Boranian (SBN 174183); Mark A. Sentenac (SBN 286810)
ReedSmith LLP, 101 2nd St., Suite 1800, San Francisco, CA 94105
Tel: (415) 543-8700 / Fax: (415) 391-8269

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government
    Plaintiff

☐ 3 Federal Question
    *(U.S. Government Not a Party)*

☐ 2 U.S. Government
    Defendant

☒ 4 Diversity
    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding    ☒ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1332; 1441; 1446
Brief description of cause:
Product liability action involving prescription medical device

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE   11/12/2015

SIGNATURE OF ATTORNEY OF RECORD
/s/ Steven J. Boranian

## IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)

(Place an "X" in One Box Only)    ☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE    ☐ EUREKA