# Exhibit E

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF ARIZONA

 3

 4

      IN RE: BARD IVC FILTERS PRODUCTS    )
 5    LIABILITY LITIGATION                ) MD No.: 02641
      _____)
 6

 7

 8

 9

10    DO NOT DISCLOSE - SUBJECT TO FURTHER CONFIDENTIALITY REVIEW

11

12

13      CONTINUED VIDEOTAPED DEPOSITION OF CHAD MICHAEL MODRA

14

15
                            Phoenix, Arizona
16                          January 20, 2016
                               9:01 a.m.
17

18

19

20

21

22

23    REPORTED BY:

24    Robin L. B. Osterode, RPR, CSR

25    AZ Certified Reporter No. 50695
```

Golkow Technologies, Inc.                                      Page 370

Do Not Disclose - Subject to Further Confidentiality Review

```
 1   a good idea?

 2            MR. NORTH:  Objection to the form.

 3            THE WITNESS:  Those events for the filter

 4   is typically the events are reported at either

 5   explant -- so whether we went back or not, I don't

 6   believe it was necessary.

 7   BY MR. LOPEZ:

 8       Q.   I mean, aren't you concerned that maybe a

 9   lot of the early reports for the Recovery and the G2

10   were reported by your company as malfunctions to FDA,

11   and, in fact, they involved deaths and other serious

12   injuries, like open heart surgery --

13            MR. NORTH:  Objection --

14   BY MR. LOPEZ:

15       Q.   -- aren't you concerned about that?

16            MR. NORTH:  Objection to the form.

17            THE WITNESS:  Obviously, I'm concerned very

18   much about injuries.

19   BY MR. LOPEZ:

20       Q.   Okay.  So why not do for those people what

21   you've done for the people that got reported, you

22   know, after 2013 or --

23            MR. NORTH:  Objection to the form.

24            THE WITNESS:  As far as incorrectly

25   checking the wrong box on the report to FDA, that
```

Golkow Technologies, Inc.                                        Page 484

```
 1   didn't change anything related to the investigation
 2   that we did, the trending that we did, related to the
 3   devices.  In fact, I looked back and the rates for
 4   those key events, fracture, migration, tilt, before
 5   and after the retrospective reviews of these
 6   complaint files, didn't change, which -- which
 7   confirmed that the designation was originally there.
 8   BY MR. LOPEZ:
 9        Q.   Yeah, but, sir, at FDA on the -- the FDA is
10   the MAUDE database.  Right?  In other words --
11        A.   Yes.
12        Q.   -- that put things -- so the MAUDE, aren't
13   you concerned that the MAUDE database has got 30
14   percent malfunctions that should say 30 percent
15   serious injuries from reports that came to your
16   company over a two-year period?
17        A.   It's concerning, because I want to make
18   sure that we're reporting things to the level of
19   expectation.
20        Q.   Right.  And shouldn't you have that same
21   concern for all of the reporting that preceded that
22   30 percent failure rate?
23        A.   The reporting, whether or not it was
24   reported, is independent of what we did to trend it,
25   track it, take corrective action or not.
```

Do Not Disclose - Subject to Further Confidentiality Review

```
 1   injury, and go back and make sure that all reports
 2   dealing with all filters prior to those thousand are
 3   now corrected and designated as serious injury
 4   reports?
 5       A.   And --
 6       Q.   Don't you think you should do that?
 7            MR. NORTH:  Objection to the form.
 8            THE WITNESS:  I responded here, and I
 9   didn't, because I didn't think --
10   BY MR. LOPEZ:
11       Q.   So you don't think you should?
12            MR. NORTH:  Objection, he's --
13            MR. LOPEZ:  I know, but I'm asking a real
14   specific question and he wants to give me some kind
15   of answer that has nothing to do with the question.
16            THE WITNESS:  Well, I wanted to explain my
17   answer.
18   BY MR. LOPEZ:
19       Q.   No, but the question is -- but the question
20   is, don't you think you should go back and audit the
21   same database or files that predate those thousand,
22   to see if you have inaccurately categorized any
23   number of those at that same percentage or even
24   greater as being not serious injury when they should
25   have been categorized as serious injury?
```

Golkow Technologies, Inc.                                   Page 501

Do Not Disclose - Subject to Further Confidentiality Review

```
 1      A.    Well, that's an assumption that it would
 2   have been greater.
 3      Q.    Exactly.  But that's why don't you think
 4   you should go back and look?
 5      A.    No, we went back a number of years --
 6      Q.    Don't you think you should go back and look
 7   is all I'm asking you?
 8            MR. NORTH:  Objection to the form.
 9   Argumentative.
10            THE WITNESS:  No.  Because of the fact that
11   the key severe -- severity, serious injury and
12   death-related complaints had been reported originally
13   that way to the FDA.
14   BY MR. LOPEZ:
15      Q.    Well, we don't -- we don't know that
16   because you haven't audited them.  You haven't done
17   an audit of those?
18            MR. NORTH:  Objection to the form.
19            THE WITNESS:  Well, I look at the rates --
20   BY MR. LOPEZ:
21      Q.    No, but you --
22      A.    -- before and after the retrospective
23   review on those key failure modes, and there was no
24   difference between them, which means there was no
25   difference in effect in any of those records.
```

Golkow Technologies, Inc.                                    Page 502

Do Not Disclose - Subject to Further Confidentiality Review

```
 1      Q.    I know, but -- you "believe we do"?
 2      A.    Yeah, because we've double-checked it
 3   internally, and we've had others look at it outside
 4   of our organization, internal to Bard, but we haven't
 5   had an outside person review yet --
 6      Q.    Okay.
 7      A.    -- which is one more step we want to do.
 8      Q.    Okay.  Let me see if I understand what you
 9   just said.  So have you taken this same body of
10   evidence, these MDRs, these approximate thousand
11   MDRs --
12      A.    Uh-huh.
13      Q.    -- where there were approximately 300 that
14   were reported as malfunctions, and have now looked to
15   see if you have trended those to include those 300 as
16   serious injuries?
17      A.    They were --
18      Q.    Sir, have you done that?
19      A.    No, because they were trended before.
20      Q.    Okay.
21      A.    There would be no value to trend them only
22   as serious injury.  You want to trend them for the
23   reported failure mode.  So you don't just trend it on
24   a serious injury and then -- and do it that way.  You
25   have to have greater granularity to it, so we trend
```

Do Not Disclose - Subject to Further Confidentiality Review

```
 1   it based on the reported event code, stuck in

 2   delivery system, fracture, movement, whatever it

 3   might be.

 4       Q.    Tilting, perforation?

 5       A.    Tilting, perforation.

 6       Q.    Pleural effusion?

 7       A.    Right.  So independent of its reporting, we

 8   would look at it based on an event, not so much

 9   reporting.

10       Q.    Okay.  My question is, have you gone back

11   and looked at your trending of those 300 misreported

12   events and have determined that your company, in

13   fact, internally had tracked and trended those 300 as

14   injuries or failure modes?

15       A.    No, I did it based on the reported event,

16   and verified that there wasn't any impact; there was

17   no difference in the number reported for those

18   injuries that you mentioned, the fracture, migration,

19   tilt, perforation.

20       Q.    Okay.  I'm not understanding that, because

21   I thought you said that irrespective of how you may

22   report to FDA, let's talk about these 300, internally

23   within the company, you would have picked up those

24   300, and they would have become part of your trending

25   and tracking information?
```

Do Not Disclose - Subject to Further Confidentiality Review

1   A.   They were -- they were always part of the
2   trending and tracking; I'm sorry if I was -- wasn't
3   clear.
4   Q.   So who does that and how does that come
5   about?
6   A.   It's part of our field assurance and
7   post-market surveillance.  Those events are placed
8   into validated Excel spreadsheets and tracked and
9   trended on a --
10  Q.   So --
11  A.   -- monthly basis.
12  Q.   So internally, the company is keeping track
13  of injuries and how it's trended, and how many there
14  are, what categories they can go in.  That's all
15  being done internally.  Right?
16  A.   Correct.
17  Q.   And -- but as far as the way those are
18  being reported to a database, meaning the FDA,
19  they're not being reported as the same way you're
20  trending them, because you're reporting them as
21  malfunctions and not failure modes or serious
22  injuries?
23  A.   Well, now they've -- they've all been
24  submitted.
25  Q.   They've been fixed now.  Right?