# Exhibit F

Peter C. Wetherall, Esq., NV Bar # 4414
Lindsay Easton, Esq., NV Bar # 12364
WHITE & WETHERALL
9345 W. Sunset Road
Suite 100
Las Vegas, NV 89148
Telephone: (602) 288-1626
Facsimile: (888) 838-8952

Ramon Rossi Lopez, Esq., CA Bar #86361
Troy A. Brenes, Esq., CA Bar # 249776
LOPEZ McHUGH LLP
100 Bayview Circle
Suite 5600
Newport Beach, CA 92660
(admitted pro hac vice)
Attorneys for Plaintiff KEVIN PHILLIPS

*Attorneys for Plaintiff Kevin Phillips*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| KEVIN PHILLIPS,<br><br>Plaintiff,<br><br>vs.<br><br>C. R. BARD, INC., et al.,<br><br>Defendants. | Civil Action No.:<br>3:12-cv-00344-RCJ-WGC<br><br>**FIRST AMENDED NOTICE OF TAKING RULE 30(b)(6) DEPOSITION: ADVERESE EVENTS/POST-MARKETING SURVEILLANCE** |

**PLEASE TAKE NOTICE** PLEASE TAKE NOTICE that, pursuant to Rule 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs, by and through their undersigned attorneys, will take the deposition of C.R. BARD, Inc. on March 28, 2013, at 10:00 a.m. at the offices of Snell & Wilmer, One Arizona Center, 400 East Van Buren Street, Suite 1900, Phoenix, AZ 85004-2202, or at another date and/or location mutually agreed upon by the parties. Pursuant to Fed. R. Civ. P. 30(b)(6), Bard shall designate and produce a designated representative or representatives, as may be required, to testify on behalf of Bard concerning the topics identified in **Schedule A** attached hereto.

1

NOTICE OF TAKING RULE 30(b)(6) DEPOSITION: ADVERSE EVENTS/POST MARKETING SURVEILLANCE

The deposition will be taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28, and will continue from day-to-day, excluding Sundays and court-recognized holidays, until the examination is completed. The deposition will also be videotaped. Please take further notice that the deponent(s) shall produce the materials identified in **Schedule B**.

Dated: February 6, 2012

**PLAINTIFF'S COUNSEL**

By: _____

TROY A. BRENES
Lopez McHugh LLP
100 Bayview Circle
Newport Beach, CA 92660
(949) 737-1501
tbrenes@lopezmchugh.com
Attorney for Plaintiff KEVIN PHILLIPS

By: _____

JULIA REED ZAIC
Heaviside Reed Zaic
312 Broadway, Ste. 203
Laguna Beach, CA 92651
(949) 715-5120
julia@hrzlaw.com
Attorney for Plaintiff KEVIN PHILLIPS

## SCHEDULE A

## DEFINITIONS & INSTRUCTIONS

As used in this Notice, the term "document" means, without limitation, the following terms, whether printed or recorded or reproduced by any other mechanical process, or written or produced by hand: agreements, communications, State and Federal governmental hearings and reports, correspondence, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, graphs, reports, notebooks, note charts, plans, drawings, sketches, maps, summaries or records of meetings or conferences, summaries or reports of investigations or negotiations, opinions or reports of consultants, radiographs, photographs, motion picture films, brochures, pamphlets, advertisements, circulars, press releases, drafts, letters, any marginal comments appearing on any document, and all other writings.

As used in this Notice, the term "Defendant" means, without limitation, the responding party.

As used in this Notice, the term "You" means the corporate defendant answering these requests, and any person acting on that corporation's behalf.

When you are asked to "identify" a particular employee or person, you are to provide that person's full name, current or last job title, and current physical work address if still employed by you; if the person is not still employed by you, provide the last known address, phone numbers, e-mail address or other available contact information.

You are advised that you must designate one or more officers, directors, managing agents, or other persons who will testify on your behalf regarding the matters listed in Schedule A which are known or reasonably available to Defendants C.R. BARD, INC and BARD PERIPHERAL VASCULAR, INC. (hereinafter "BARD, INC. et al").

"Communication" means the transmittal of information by any medium, whether written, oral, or electronic (in the form of facts, ideas, inquiries, or otherwise).

"Computer" means all devices utilizing microchips to facilitate processing, analysis, or

storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (personal digital assistants or "PDAs"), minicomputers and mainframe computers.

"Document" or any similar term is used in its broadest possible sense and shall include, but not be limited to, any writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information, and any other data or data compilations stored in any medium from which information can be obtained and translated, if necessary, by the responding defendant into reasonably usable form,  The term "Document" also includes the original, reproduction, or copy, and non-identical copy (i.e., copy with marginal notes, deletions, etc.) of any kind of written, printed, typed, electronically created or stored, or other graphic matter of any type, documentary material, or drafts thereof, including, but not limited to, any correspondence, memoranda, interoffice or intra-office communications, notes, diaries, journals, calendars, contract documents, publications, calculations, estimates, vouchers, minutes of meetings, invoices, reports, studies, computer tapes, computer disks, CDs, DVDs, computer cards, computer files, e-mails, photographs, photograph negatives, photographic and/or radiographic slides, dictation belts, voice tapes, telegrams, and notes of telephone conversations and/or other oral communications.

"Electronic data" or "data" means the original (or identical duplicate where the original is unavailable), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  Electronic data includes, but is not limited to, computer programs, programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, PDF files, .tif files, and any and all miscellaneous files and file

4

fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment. Electronic data includes any and all items stored on computer memories, hard disks, floppy disks, CDs, DVDs, CD-ROMS, removable media (Zip disks, flash or jump drives), Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tapes, computer chips (including EPROM, PROM, RAM and ROM), on or in any other vehicle for digital data storage and transmittal. The term electronic data also includes the file, folder tabs and containers and labels appended thereto, or associated with, any physical storage device associated with each original and copy.

"Electronic media" means any magnetic or other storage media device used to record electronic data.

"FDA" means the United States Food and Drug Administration, any center, regulatory office, review office, committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

"Custodial file" refers to the compilation of all documents and records within the possession of the designated person while employed by BARD, INC. et al including records, memoranda, letters, handwritten notes, working papers, minutes of meetings and notes therefrom, electronic writings, e-mail, intra-or inter-company communications, reports, articles or other writings and recordings as defined in the Federal Rules of Civil Procedure.

"Identify" - When the identity of any person is requested by virtue of the documents and materials requested in this Request, the information sought is:

    A.  If the person is a natural person: The name, residential address, business address, residential phone number, business phone number, place of employment, employment title or position, name of employer, and if employer has several offices, the address of the office at which the person is currently employed. Also, if at the time of the action or omission referred to in the Complaint for Damages the person's employment or position differed from that which is current, please furnish the above described information relative to employment, at the time of

5

NOTICE OF TAKING RULE 30(b)(6) DEPOSITION: ADVERSE EVENTS/POST MARKETING SURVEILLANCE

1  the subject action or omission relative to the allegations in the Complaint for Damages.

2      B. If the person is not a natural person: Identify the type of entity and provide the business address, telephone number, names and identities of directors, officer, and managing agents of the entity, and, in the event the response to these Requests relate to actions or omissions by a non-natural person through its agents or employees, the name of the agents or employees responsible for such action or omission, identifying such agent or employee as a natural person in the manner described in Section 1 above.

       C. When "identity of a document" is requested, state its physical description, e.g., letter, memo, tape, etc., its date, its author, and medium on which it is located; if a communication is requested, state its sender and/or author, its addressee(s) and/or intended recipient(s).

       D. As used throughout these requests, the term "physician" refers to any healthcare provider, regardless of degree or specialty, including but not limited to medical doctors, allopathic physicians, osteopathic physicians, physicians' assistants, nurse practitioners, or registered nurses, or licensed vocational nurses, and radiology technicians.

       E. "Person" shall include any natural person or any corporation, partnership, association, or other governmental, legal or quasi-legal entity, existing either by formal or informal agreement or circumstances.

       F. Each request refers to documents, electronic information, and things in the custody, control, and possession of Defendant or known to Defendant, as well as in the custody, control and possession of, or known to, Defendant's counsel, representatives, agents, servants, investigators, and consultants unless otherwise privileged, their counsel, employees, representatives, agents, servants, investigators, and consultants; or documents and things within the possession, custody, or control of third parties over or to whom responding Defendant has control and/or access, respectively.

       G. Any document falling within the scope of these requests which are withheld under a claim of attorney-client privilege, attorney work product, or any other ground is to be

identified in writing and must include a statement of the legal basis asserted for withholding such document, shall identify its date, the identity of its author and signatories, the type of document, a summary of its content, its present location and custodian, a listing of all persons to whom the contents of such documents have been disclosed and all persons who have or have had possession, custody, or control of the documents. Notwithstanding any claim of privilege relative to a requested document, electronic information, or thing, any purportedly privileged document containing non-privileged matter must be disclosed with the privileged portion redacted, with the redacted portion indicated on the document itself and listed on the privilege log to be provided pursuant to this paragraph.

H. These Requests are of a continuing nature and require your further and supplemental response and production when you acquire, obtain, or create additional responsive documents after service of the initial Response and production of documents.

## DEPOSITION SUBJECT MATTER

1. The organization of any division, segment, or office of Defendants that participates in the receipt, collection, evaluation, analysis, or reporting of information to any regulatory agency regarding serious adverse events (SAEs) and/or adverse events (AEs) in patients who have received an inferior vena cava filter manufactured by BARD, INC. et al (hereinafter, "IVC filter") at any time Bard received any complaints related to the Recovery®, G2®, G2 Express® Eclipse® and Meridian® IVC filters.

2. A complete description of any database, computer program or other means used to track any and all reports of adverse events in patients prescribed IVC filters from pre-marketing clinical trials to present.

3. All colleagues, entities and/or third parties with whom Defendants contract (including, but not limited to, Functional Service Providers [FSPs], Contract Research Organization [CROs], vendors and/or consultants and/or other third parties related to the

7

collection, processing, evaluating, analysis of, reporting, and/or publication of SAEs and/or AEs at any time Bard received complaints related to Bard's Recovery®, G2®, G2 Express® Eclipse® and Meridian® IVC filters.

    4.    Procedures by which Defendants ensure appropriate communication of relevant information ( e.g. information regarding risks of perforation, migration and/or fracture) related to SAEs and AEs to interested parties (e.g., physician, patients and/or regulatory authorities) in a timely manner whether or not formally reported to regulatory authorities at any time Bard received complaints related to Bard's Recovery®, G2®, G2 Express® Eclipse® and Meridian® IVC filters.

    5.    Post Market reporting and/or Post Marketing Surveillance documents and materials including all Medwatch forms, all SAE and AE reports, including, but not limited to, any and all corresponding documents, materials, notes, written and electronic data, medical records, correspondence, follow up communications, investigations and memoranda relating to every and all adverse experiences and/or events concerning the use of IVC filters, reported to, aware of and/or known by, defendants.

    6.    Policies and/or procedures related to the content, maintenance and/or storage of all files containing or relating to all adverse event experiences, including but not limited to, original source documentation, back-up files, complaint files, complaint records and/or receipts, forms, memoranda, e-mails, consultant reports and/or other material that supports any and all data collected by Defendant or its colleagues or contractors irrespective of whether the data were reported to regulatory agencies, or to third party consultants, and which files and material are available to those responsible for reviewing, analyzing, summarizing, investigating and reporting all Adverse Experiences to any source, including FDA.

7. Policies and procedures related to any language or algorithms used for causality and communication when adverse events including, but not limited to, death may be attributable to a product, including IVC filters.

8. Policies and procedures for collecting information related to adverse event experiences including, but not limited to, the collection of follow-up information/data after the initial adverse event report/alert to any BARD, Inc. et al. employee and/or its agents or contractors.

9. Databases, computer programs or other means used to track any and all reports of adverse events in patients who received IVC filters, including the EASYTRACK and TRACKWISE databases.

10. All efforts BARD, INC. et al made to determine failure rates of its IVC Filter devices and how these failure rates were actually determined.

## SCHEDULE B

## DOCUMENTS TO BE PRODUCED

1. Policies, procedures, training material, instructions, protocols, definitions and other writings which in any way relate to the collecting, analysis, follow-up, investigation, grading and reporting of injuries and damages associated with, the use of IVC filters.

2. Any and all Post Market reporting and/or Post Marketing Surveillance documents and materials including all Medwatch forms, all Adverse Experience (AE) reports, including, but not limited to, any and all corresponding documents, materials, notes, written and electronic data, medical records, correspondence, follow up communications, investigations and memoranda relating to every and all adverse experiences and/or events concerning the use of IVC filters, reported to, aware of and/or known by, defendants."

3. Copies of each source file or back-up file that contains documentation, records, memoranda, emails, consultant reports and other material that supports any and all data reported to FDA, foreign regulatory agencies, third party consultants and company safety surveyors, and which files and material are available to those responsible for reviewing, analyzing, summarizing, investigating and reporting Adverse Experiences to any source, including FDA

4. Databases, computer programs or other means used to track any and all reports of adverse events in patients who received IVC filters.

5. Any and all information Defendants have presented to any Regulatory Agency, including the FDA and any foreign regulatory agency, regarding the submission of any adverse events, including any and all documents provided to the Regulatory Agencies in reporting adverse events.

6. Any and all standard operating procedures used to identify which adverse events will be reported to any regulatory agency, and the manner and timeframe in which the adverse events will be reported.

7. Any and all data analysis or trends of adverse events that were reported to Defendants in patients who received IVC filters, including any studies, research or documents prepared to reflect any analysis or trend.

8. Any and all writings which reflect, discuss and include adverse event reports evaluations, safety-related hypothesis and the use of techniques to evaluate these hypotheses.

9. Educational, promotional and instructive initiatives designed to emphasize the responsibility of Health Care Providers to identify and report adverse events related to the use of IVC filters.

10. Databases, computer programs or other means used to report to FDA, senior management at your company, outside consultants and company representatives who interact and communicate with health care providers any and all reports of adverse events in patients who received IVC filters.

11. Written material, brochures, sales aids, training material, scripts and instructions provided to company representatives who interact and communicate with health care providers regarding any and all reports of adverse events in patients who received IVC filters.

12. Any and all writings which reflect, discuss or analyze the nature, scope, details, positions and results of any post-marketing investigation by any Regulatory Agency regarding IVC filters, including but not limited to any investigation in preparation for, or as a result of, any FDA Advisory Panel or Committee meeting, or other FDA or foreign regulator meeting or inquiry relating to the safety, efficacy, marketing practices, adverse reports and/or labeling/instructions for use of IVC filters.

NOTICE OF TAKING RULE 30(b)(6) DEPOSITION: ADVERSE EVENTS/POST MARKETING SURVEILLANCE

EXHIBIT F
Page 11