David R. Ongaro (State Bar No. 154698)
dongaro@ongaropc.com
Glen Turner (State Bar No. 212417)
gturner@ongaropc.com
ONGARO PC
50 California Street, Suite 3325
San Francisco, CA  94111
Telephone:   (415) 433-3900
Facsimile:   (415) 433-3950

Attorneys for Plaintiff WAYNE RUDEN

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  BARD IVC FILTERS PRODUCT LIABILITY LITIGATION,<br><br>THIS DOCUMENT RELATES TO:<br><br>WAYNE RUDEN,<br>C. A. No.:  CV-16-00344-PHX-DGC | MDL Docket No. 15-02641 |
| WAYNE RUDEN,<br>           Plaintiff,<br>    vs.<br>C.R. BARD, INC., a New Jersey corporation, BARD PERIPHERAL VASCULAR, INC., (a subsidiary and/or division of defendant C.R. BARD, INC.) an Arizona corporation, CALIFORNIA PACIFIC MEDICAL CENTER, and DOES 1-100 INCLUSIVE,<br>           Defendants. | **PLAINTIFF WAYNE RUDEN'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REMAND**<br><br>Complaint Filed:  October 7, 2015<br><br>**\*ORAL ARGUMENT REQUESTED\*** |

**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

# TABLE OF CONTENTS

I. INTRODUCTION……………………………………………………………………...1

II. ARGUMENT…………………………………………………………………………...1

    A. The Presence of a Proper California Defendant Destroys Diversity as Required For Removal…………………………………………………….1

        1. Fraudulent Misjoinder is Not Accepted in This Circuit…………….2

        2. Jurisdictions that Accept Fraudulent Misjoinder Would Not Apply it Here……………………………………………………….3

            a. CPMC is a Necessary and Indispensable Party……………..3

            b. Bard's Separate Transaction or Occurrence Arguments Fail……………………………………………………………..4

            c. Bard's Original-Complaint Removal Arguments Fail………6

            d. Bard's MDL-Transfer "Compelling" Argument Fails………8

    B. Mr. Ruden Should Be Awarded Attorney's Fees…………………………..8

III. CONCLUSION AND RELIEF REQUESTED……………………………………….9

# TABLE OF AUTHORITIES

**Cases**

*Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*,
   2014 WL 5580967, *2 (*4* D. Haw. 2014) .................................................................. 3

*Carper v. Adknowledge, Inc.*
   2013 WL 5954898, *4 (N.D. Cal. 2013) ................................................................. 3

*Dent v. Lopez*
   2014 WL 3057456, *6 (E.D. Cal 2014) .................................................................. 2

*Greene v. Wyeth*
   344 F.Supp.2d 674 (D. Nev. 2004) ................................................................ 2, 4, 5

*In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*
   2007 WL 2572048 (D. Minn. 2007) ...................................................................... 5

*In re Rezulin Products Liability Litigation*
   168 F.Supp.2d 136 (S.D. N.Y. 2001) .................................................................... 5

*Kruso v. International Telephone & Telegraph Corp.*
   872 F.2d 1416 (9th Cir. 1989) ................................................................................ 6

*Lopez v. Pfeffer*
   2013 WL 5367723, *2 (N.D. Cal. 2013) ................................................................ 2

*Moore-Thomas v. Alaska Airlines, Inc.*
   553 F.3d 1241 (9th Cir. 2009) ................................................................................ 6

*Ramirez v. Speltz*
   2015 WL 5882065, *2 (N.D. Cal. 2015) ................................................................ 5

*Richmond v. Lumisol Elec. Ltd.*
    2014 WL 1716447, *3 (D. N.J. 2014) ................................................................... 3

*Stonebrae, L.P. v. Toll Bros., Inc.*
   2008 WL 2157000 ................................................................................................. 6

*Sutton v. Davol*
   251 F.R.D. 500 (E.D. Cal. 2008) .................................................................... 2, 5, 8

*Tapscott v. MS Dealer Service Corp.*
   77 F.3d 1353 (11th Cir. 1996) ............................................................................ 2, 4

*The Fair v. Kohler Die & Specialty Co.,*
   228 U.S. 22 (1913) ................................................................................................. 3

*Umamoto v. Insphere Ins. Solutions, Inc.*
   2013 WL 2084475, *6 (N.D. Cal. 2013) ................................................................ 6

*Widder v. State Farm Fire & Cas. Co.*
   2010 WL 4386698, *2 (E.D. Cal. 2010), .............................................................. 7

---

**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

**Statutes**

28 U.S.C. § 1441 ............................................................................................................... 1

28 U.S.C. § 1446(b) .......................................................................................................... 2

28 U.S.C. § 1447(c) .......................................................................................................... 1

**Rules**

*Fed. R. Civ. Proc. 11(b)* .................................................................................................. 9

Fed. R. Civ. Proc. 19(a)(1)(B) ......................................................................................... 4

Fed. R. Civ. Proc. 20 ........................................................................................................ 6

## I. INTRODUCTION

Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard") improperly removed this matter *from* state court, where it belongs. Bard's removal was based on a doctrine—fraudulent misjoinder—which has been thoroughly and consistently discredited in the Northern District, and was based on facts that even those scarce jurisdictions that embrace the doctrine would reject as insufficient. Further, in opposition to Mr. Ruden's motion for remand, Bard misrepresents Mr. Ruden's First Amended Complaint ("FAC") to this Court, wrongly asserting that Mr. Ruden's causes of action sound only in product liability. They do not. Bard mischaracterizes Mr. Ruden's claims against CPMC as pertaining only to a 2010 FDA letter, when a full reading either of Mr. Ruden's FAC or of his original Complaint shows allegations that CPMC is negligent for failing to discover and communicate its knowledge of the dangerous propensities of the Bard Recovery Filter (the "BRF") prior to its recommendation for implantation in 2004, and then continuously from 2004 to 2010.

Because this case was removed improperly, it should be remanded promptly so that it can seasonably progress. Further, Bard, on removal, failed to make a good-faith argument for the extension of the fraudulent misjoinder doctrine, instead presenting the discredited doctrine as if it were accepted law. Accordingly, Bard should be ordered to pay Mr. Ruden's costs and fees incurred as a result of the improper removal as authorized by 28 U.S.C. § 1447(c).

## II. ARGUMENT

### A. The Presence of a Proper California Defendant Destroys Diversity as Required For Removal.

Bard does not dispute three key points: (1) a state court case may not be properly removed to federal court when a non-diverse defendant is present (28 U.S.C. § 1441); (2) a state court case may not be properly removed to federal court unless all defendants

**CERTIFICATE OF SERVICE**

consent (28 U.S.C. § 1446(b)); and (3) CPMC is a non-diverse defendant which does not consent to removal.  For these reasons alone, the case should be remanded to state court.

Bard relies on a single theory, the theory of fraudulent misjoinder, to avoid the effects both of the presence of a non-diverse defendant, and of the decision by that defendant not to consent to removal.  Bard claims that CPMC was fraudulently misjoined, and that therefore both their non-diversity and their non-consent may be disregarded.

There are two serious problems with Bard's argument.  One is that the Ninth Circuit has never adopted the fraudulent misjoinder doctrine, and in fact district courts in the Ninth Circuit have rejected it in almost every case.  The other is that even the few jurisdictions that have adopted the doctrine would not apply it in this instance, since Mr. Ruden's claims against CPMC and some of his claims against Bard are closely related to the point of inter-dependence.  CPMC's presence in this matter utterly defeats both diversity and unanimous consent.

### 1.     Fraudulent Misjoinder is Not Accepted in This Circuit.

As Mr. Ruden pointed out in his moving papers, Bard removed this matter "on law that does not exist in this district." *Lopez v. Pfeffer*, 2013 WL 5367723, *2 (N.D. Cal. 2013); *accord Dent v. Lopez*, 2014 WL 3057456, *6 (E.D. Cal *2014*) (fraudulent misjoinder "is simply inoperative in this circuit."); *see* Plaintiff's opening memorandum at 5:17-7:1.  Bard's Opposition does not improve upon the law in its Notice of Removal, as it simply cites the same cases, *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359-60 (11th Cir. 1996), *Greene v. Wyeth*, 344 F.Supp.2d 674, 683-84 (D. Nev. 2004), and *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 504 (E. D. Cal. 2008) that it cited there.  Mr. Ruden already distinguished these cases in his moving papers.  Plaintiff's MPA, pp. 8:1-9:5, 11:26-12:10, 12:27-13:7.

The fraudulent misjoinder doctrine has been roundly criticized in this circuit because it essentially requires a federal court to decide a defendant's motion to sever parties prior to inquiring into its own jurisdiction, as opposed to allowing a state court

1  which undoubtedly has jurisdiction over the parties to make such decisions.  *Carper v.*
2  *Adknowledge, Inc.*, 2013 WL 5954898, *4 (N.D. Cal. 2013).  While Bard argues (Opp'n
3  MPA, p. 11:6-18) that it might still be unable to remove the matter even if CPMC's
4  claims were severed in state court, Bard's essential complaint is merely that it "would be
5  deprived of its right to a federal forum." *Id*., p. 11:14-15.  However, Bard has no such
6  right because it is elementary that a plaintiff chooses the forum.  *The Fair v. Kohler Die*
7  *& Specialty Co.,* 228 U.S. 22, 25 (1913).
8      Bard does not and cannot dispute that neither the Ninth Circuit nor the District of
9  Arizona (nor the original removal district, the Northern District of California) has
10 adopted the fraudulent misjoinder doctrine.  Opp'n MPA, p. 7:12-14.

### 2. Jurisdictions that Accept Fraudulent Misjoinder Would Not Apply it Here.

Mr. Ruden will not rehash all of the arguments in his moving papers, however, abundant facts exist demonstrating CPMC is a necessary and indispensable party.  Not even the 11th Circuit, which is the only Circuit that recognizes fraudulent misjoinder, would apply it under the facts of this case.  Even the most forgiving of standards only apply the doctrine to parties that are actually "misjoined," and not to proper parties in the case like CPMC.

### a.  CPMC is a Necessary and Indispensable Party.

Fraudulent misjoinder, *by definition*, can only apply when a party is "misjoined," meaning that the claims against it do not arise from the same transaction or occurrence as the claims against other defendants.  *See, e.g., Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*, 2014 WL 5580967, *2-*3 (*4* D. Haw. 2014), citing *Richmond v. Lumisol Elec. Ltd.,* 2014 WL 1716447, *3 (D. N.J. 2014) (surveying cases finding misjoinder because claims did not arise from same transaction or occurrence) (some citations omitted).  Here, it is readily apparent that a relationship exists between defendants CPMC and Bard and between Plaintiff's claims against the two entities, as Mr. Ruden pointed out at length in his opening papers.  Plaintiff's MPA, pp. 9:6-12:10.  Bard manufactured a product and

1  released it into the stream of commerce, it was acquired by CPMC, and CPMC used as it
2  was intended to be used, by implanting it into Plaintiff's body, where it fractured, with a
3  fragment entering Plaintiff's heart.  Both Bard and CPMC shared a joint duty to ensure
4  that the Bard Recovery Filter ("BRF") was safe for use by the end user.  Bard had a duty
5  to make the product's dangerous propensities known to users and the general public and
6  CPMC had a duty to learn of (or insure that its medical provider staff learned of) those
7  same dangerous propensities, meaning that, at least to some extent, Bard's and CPMC's
8  liabilities to the Plaintiff are measured by each other's actions.  Did Bard communicate
9  what it had a duty to communicate?  Did CPMC learn what it had a duty to learn?

10  This is not a case that merely alleges that two defendants conduct a similar
11 business practice, as in Bard's case *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353,
12 1359-60 (11th Cir. 1996), nor is it like Bard's case *Greene v. Wyeth*, 344 F.Supp.2d 674,
13 683-84 (D. Nev. 2004), where the majority of the plaintiffs had no relationship at all to
14 the non-diverse defendants.  Indeed, Bard itself would incur a substantial risk of incurring
15 a double obligation should Plaintiff prevail against Bard in a federal suit while CPMC
16 cross-claims against Bard in a state court suit, claiming that Bard hid the dangerous
17 propensities of the BRF from CPMC.  *See* Fed. R. Civ. Proc. 19(a)(1)(B).

18  The question of what Bard told CPMC (and the public), and when it told it to
19 them, is crucial to the resolution of the misrepresentation claims against both Bard and
20 the CPMC.  *See* Mr. Ruden's MPA, pp. 10:3-12:10.  This question crystallizes the
21 interrelated nature of Plaintiff's claims against Bard and CPMC.  If Mr. Ruden is forced
22 to pursue his claims against these two defendants separately in two different forums,
23 judicial economy will suffer and there is a grave risk that Mr. Ruden will not receive
24 justice in either forum.

25  **b.  Bard's Separate Transaction or Occurrence Arguments Fail.**
26  Bard's denial of the fact that Mr. Ruden's claims against CPMC are based on the
27 same series of transactions and occurrences as his claims against Bard is primarily empty
28 rhetoric, lacking factual analysis or citation to authority.  *See* Opp'n MPA, p. 7:23-10:9.

4
**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

1  To the limited extent that Bard *does* engage in factual analysis, it is misguided and
2  misleading as it wrongly states that Mr. Ruden's claims against Bard are limited to the
3  manufacture, development, testing and marketing (with *other* related activities) of the
4  BRF. *Id*., p. 8:6-8. Further, *each* of the authorities cited by Bard in this section – *In re*
5  *Guidant Corp. Implantable Defibrillators Products Liability Litigation*, 2007 WL
6  2572048 (D. Minn. 2007), *In re Rezulin Products Liability Litigation*, 168 F.Supp.2d
7  136, 148 (S.D. N.Y. 2001), *Greene v. Wyeth*, 344 F.Supp.2d 674, 683-84 (D. Nev. 2004)
8  and *Sutton v. Davol, Inc.*, 251 F.R.D. 500 (E.D. Cal. 2008) – stand *only* for the
9  proposition that product liability claims typically do not rise from the same transaction or
10 occurrence as medical malpractice claims, an irrelevant point. Mr. Ruden's claims
11 against Bard are *not* limited to product liability, and his claims against CPMC are *not*
12 limited to medical negligence. Mr. Ruden's FAC alleges negligent misrepresentation
13 against Bard, and specifically that Bard "negligently provided Plaintiff, Plaintiff's health
14 care providers, and the general medical community with false or incorrect information"
15 involving certain specified subject areas." Declaration of Glen Turner ("Turner Decl."),
16 Exh. 1, FAC, ¶¶ 105-06; *see also Id*., Exh. 2, Mr. Ruden's original Complaint filed with
17 Bard's Notice of Removal, ¶¶ 109-12. Bard also mischaracterizes Mr. Ruden's claims
18 against CPMC, which are *not* solely related to failure to communicate a 2010 letter, but
19 also encompass the failure to communicate - or to insure that its medical staff was
20 properly trained to learn of and then communicate - the growing evidence against the
21 BRF from prior to its 2004 insertion to 2010 and afterward, which evidence CPMC and
22 its agents should have learned from Bard and other sources.
23      When Bard misstates the nature of Mr. Ruden's Complaint and FAC by ignoring
24 an entire cause of action, Bard misses the entire point—not to mention the law—which
25 supports construing a complaint as broadly as possible in favor of remand. *See, e.g.,*
26 *Ramirez v. Speltz*, 2015 WL 5882065, *2 (N.D. Cal. 2015). The question of what Bard
27 told CPMC (and the public), and when it told it to them, is absolutely crucial to the
28 resolution of the misrepresentation claims against both Bard and the CPMC, as

5

**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

1 Mr. Ruden pointed out at length in his opening papers. Plaintiff's MPA, pp. 10:3-12:10.
2 Bard did not address this argument in its opposition papers. Bard has no good answer to
3 a question which closely knits together the liabilities of Bard and CPMC, such that
4 severing Bard and CPMC into separate actions would raise a serious risk of inconsistent
5 judgments. *See* Fed. R. Civ. Proc. 20 (permitting joinder when "*any* right to relief is
6 asserted against them . . . arising out of the same . . . series of transactions or
7 occurrences" and "*any* question of law or fact common to all defendants will arise in the
8 action") (emphasis added).

### c. Bard's Original-Complaint Removal Arguments Fail.

10 Although Bard argues that the propriety of removal is to be judged based on the
11 original Complaint, fraudulent misjoinder is a branch of the fraudulent joinder doctrine
12 and should only be applied when a plaintiff obviously cannot state a cause of action even
13 after amending the complaint. *See* Plaintiff's MPA, pp. 9:6-17 and fn. 3. Therefore,
14 even if the Court considers the original Complaint, the FAC may serve as one example of
15 how the original complaint could have been amended.

16 Bard's citation to *Stonebrae, L.P. v. Toll Bros., Inc.*, 2008 WL 2157000, *4,
17 misses the point entirely, as *Stonebrae* did not consider whether a complaint *could* be
18 stated in that matter, but only whether a complaint *was* stated. *Stonebrae's* holding was
19 based entirely on a faulty reading of *Kruso v. International Telephone & Telegraph*
20 *Corp.*, 872 F.2d 1416, 1419-20 (9th Cir. 1989). *Stonebrae* at *4.

21 *Stonebrae's* cramped reading of the pertinent passage in *Kruso* differs from that
22 followed by multiple other district courts because the Ninth Circuit in *Kruso* "emphasized
23 the fact that the plaintiffs had not only failed to state a claim against the defendants but
24 also *could not* have stated a claim under the circumstances of that case." *Umamoto v.*
25 *Insphere Ins. Solutions, Inc.*, 2013 WL 2084475, *6-*7 (N.D. Cal. 2013) (discussing
26 *Kruso* at 1426-27 and fn. 12 and holding, based on *Moore-Thomas v. Alaska Airlines,*
27 *Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) that remand was proper because "there is a non-
28 fanciful possibility that Plaintiffs may be able to cure their failure to allege that Feeny

6
**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

was the originator of the allegedly defamatory statement in an amended complaint") (emphasis in original).  The *Umamoto* court, citing *Widder v. State Farm Fire & Cas. Co.*, 2010 WL 4386698, *2-*3 (E.D. Cal. 2010), explained that "district courts have considered *Kruso* and nevertheless remanded on the basis that the plaintiff may be able to cure deficiencies in previously alleged claims." *Umamoto* at *7 and fn. 5.  Therefore the Court should entertain not only acts or causes pled in the FAC but any acts or causes that *could* be pled, as Plaintiff made no new claims in the FAC.  Further, a complaint must be strictly construed against removal, which strict construction would lead to the same result, i.e., consideration of hypothetical claims that could have been pled.  Plaintiff's MPA, pp. 9:6-17 and fn. 3.  In any case, the claims in the original Complaint are plainly broader than Bard's asserted explanation of them.

Bard is simply incorrect when it asserts that plaintiff's breach of fiduciary duty claims against CPMC in the original Complaint were limited to CPMC's failure to inform plaintiff of a 2010 FDA Notification (Opp'n MPA, p. 8:8-14), and that plaintiff's claims "do not relate to CPMC's care and treatment of Plaintiff when he received his Bard IVC Filter in 2004." *Id*., p. 4:4-6.  Plaintiff's original Complaint alleges that "at **all times relevant to this cause**," Defendants negligently provided false or incorrect information or failed to disclose material information regarding the BRF.  Turner Decl., Exh. 2, ¶ 109 (emphasis added).  Plaintiff also clearly alleged that CPMC created an **ongoing** duty at the time of device insertion **in 2004** to warn the plaintiff of newly-discovered risks.  *Id*., ¶¶ 56, 57, 122.  Paragraphs 113-118 of the Complaint allege that plaintiff's health-care providers (e.g., CPMC) relied on Bard's misrepresentations, which reliance led to plaintiff's injuries.

Obviously, plaintiff is not able to allege what exactly Bard misrepresented and omitted in its communications with CPMC and the public and when, and what exactly Bard informed CPMC of, and when.  Finding that out is a large part of the point of this entire litigation.  Plaintiff alleges he was not informed *at any time* between the insertion of the device in 2004 and its removal in 2015 of the continuing drip, drip of information

1  regarding the BRF's dangerous propensities.  That drip of information *culminated* in the
2  2010 FDA Notification.  It did not *begin* with that communication.
3      Did Bard keep CPMC and the public fully informed as it learned of the BRF's
4  dangers, and was CPMC therefore guilty of breaching its duty to warn the plaintiff of
5  newly-discovered risks?  Did Bard hide the information it had a duty to divulge from
6  CPMC and the public, leaving all the guilt on Bard's head?  Or did Bard hide some
7  information and reveal other information, leading to a shared fault?  Only a trial in which
8  *both* of these defendants are joined – i.e., a state court trial – can fully and satisfactorily
9  answer this question.

### d.  Bard's MDL-Transfer "Compelling" Argument Fails.

11      Bard argues, without factual analysis, that the case for applying fraudulent
12  misjoinder is "particularly `compelling'" when an MDL is pending.  Bard's MPA, pp.
13  6:2-12.  Bard's entire argument is based on a single over-stated passage from *Sutton v.*
14  *Davol*, 251 F.R.D. 500, 504 (E.D. Cal. 2008).
15      The highly case-specific passage relied on – stating only that "[d]efendants'
16  [Davol's] legal and factual position is compelling, especially in the context of
17  MultiDistrict Litigation" -  means only that the defendant in *Davol* had a compelling
18  position under the facts of that case.  *Davol*, which involved only product liability and
19  medical negligence claims, and *not* the misrepresentation claims at issue here, says
20  nothing at all about whether the doctrine of fraudulent misjoinder is more or less
21  "compelling" in the MDL context.  *Id*.  There is no indication in the opinion that the
22  *Davol* court dealt with any interrelated claims or any questions of inconsistent judgments,
23  or that any party raised the presumptions against remand and in favor of a broad
24  construction of pleadings.  *Davol* does not control.

### B.    Mr. Ruden Should Be Awarded Attorney's Fees.

26      In his moving papers, Mr. Ruden argued that he should be awarded attorney's fees
27  because Bard based its removal on a theory that is not accepted by the Ninth Circuit or
28  the Northern District, and without acknowledging the existence of contrary authority.

1 Plaintiff's MPA, pp. 13:25-15:1.  Bard does not deny that it failed to acknowledge
2 existing contrary authority or that it is sophisticated in removal law.
3       As Mr. Ruden has demonstrated, abundant contrary authority exists in the Ninth
4 Circuit – and particularly in the Northern District of California, to which Bard removed
5 the matter - showing that fraudulent misjoinder is not an accepted theory, yet Bard
6 couched its removal papers as if fraudulent misjoinder was good law.  This could
7 scarcely be considered "a nonfrivolous argument for extending, modifying, or reversing
8 existing law or for establishing new law." Fed. R. Civ. Proc. 11(b).
9       Removal is an act by which a defendant can unilaterally stop a case in its tracks,
10 and it is obviously important that such license should not be allowed to flourish
11 unchecked.  It is understandable that Bard wanted to move this case to the MDL;
12 however, failing to obtain CPMC's consent and using a doctrine that has specifically
13 been rejected in this District should not be rewarded.  This case has now been off the
14 tracks for nearly four months, and Bard intentionally derailed it.  By doing so, Bard cost
15 Mr. Ruden and his counsel a great deal of time and money.  It is just that Bard should pay
16 for its intentional acts.

17 **III.   CONCLUSION AND RELIEF REQUESTED**

18       Mr. Ruden respectfully *requests* that the Court grant his motion, remand the
19 case to the San Francisco County Superior Court, and award $16,360 in attorney's fees
20 and costs.

21

22 Dated:  March 4, 2016                    ONGARO PC

23                                       By:   */s/ Glen Turner*
24                                             Glen Turner
                                            Attorneys for Plaintiff
25                                             WAYNE RUDEN

26

27

28

**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

# CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of March, 2016, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

*/s/Glen Turner*
Glen Turner