# EXHIBIT "A"

EFiled: Sep 23 2015 03:26PM EDT
Transaction ID 57910174
Case No. N15C-09-207 CLS

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| BIANCA FRASER-JOHNSON and MICHAEL JOHNSON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No.: |
| C.R. BARD, INC., BARD PERIPHERAL VASCULAR, INC., CHRISTIANA CARE HEALTH SERVICES, INC., CHRISTIANA CARE HEALTH SYSTEM, INC., THOMAS BAUER, M.D., CYNTHIA HELDT, M.D., | ) ) ) ) ) ) ) ) | TRIAL BY JURY DEMANDED |
| Defendants. | ) ) | |

## COMPLAINT

### (Allegations Common to All Counts)

1.      Plaintiffs Bianca Fraser-Johnson ("Bianca") and Michael Johnson ("Michael") are residents of New Castle County, Delaware and are lawfully married to each other.

2.      C.R. Bard, Inc. ("Bard") is a New Jersey corporation with its principal offices located at 730 Central Avenue, Murray Hill, New Jersey 07974.  Bard's registered agent in New Jersey is Samrat S. Khichi, 730 Central Avenue, Murray Hill, New Jersey 07974.

3.      At all times relevant to this action, Bard designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, distributed and sold a retrievable inferior vena cava ("IVC") Filter as part of its Recovery ® Filter System (hereinafter "Bard filter") for implantation in patients throughout the United States, including Pennsylvania and Delaware.

01:17390928.1

4.      Defendant Bard Peripheral Vascular, Inc. ("Bard PV") is an Arizona corporation and is a wholly owned subsidiary corporation of Bard, with its principal offices located at 1625 West 3rd Street, Tempe, Arizona 85281. Bard PV's registered agent in Arizona is CT Corporation System, 3800 N. Central Avenue, Suite 460, Phoenix, Arizona 85012.

5.      At all times relevant to this action, Bard PV designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, distributed and sold the IVC filter described in paragraph 3 for implantation in patients throughout the United States, including Pennsylvania and Delaware.

6.      At all times relevant to this action, Bard transacted business in Pennsylvania and Delaware and/or regularly did or solicited business in Pennsylvania and Delaware and derived substantial revenue from services or things used in Pennsylvania and Delaware.

7.      At all times relevant to this action, Bard PV transacted business in Pennsylvania and Delaware and/or regularly did or solicited business in Pennsylvania and Delaware and derived substantial revenue from services or things used in Pennsylvania and Delaware.

8.      Defendant Christiana Care Health Services, Inc. is a Delaware corporation, whose registered agent is Christiana Care Health Services, Inc., 501 West 14th Street, Wilmington, Delaware 19801.

9.      Defendant  Christiana Health System, Inc. is a Delaware corporation, whose registered agent is Christiana Care Health System, Inc., 501 West 14th Street, Wilmington, Delaware 19801.

10.     At all times relevant to this action, defendants Christiana Care Health

Services, Inc. and/or Christiana Care Health System, Inc. (hereinafter collectively referred to as

"Christiana Care"), owned, operated, managed and/or controlled hospital facilities in New Castle

County, Delaware, including the Christiana Hospital located at 4755 Ogletown-Stanton Road,

Newark, Delaware 19718 and various other satellite facilities where care and services are

provided to patients by Christiana Care employees, agents, contractors, subcontractors, licensed

professionals and physicians in various specialties, including, but not limited to, thoracic surgery

and internal medicine.

11.     At all times relevant to this action, the Christiana Care defendants were

healthcare providers within the meaning of Chapter 68 of Title 18 of the Delaware Code.

12.     Defendant Thomas Bauer, M.D. ("Dr. Bauer") is a physician licensed to

practice medicine the Delaware with a specialty in thoracic surgery.

13.     At all times relevant to this action, Dr. Bauer was employed by and/or

affiliated with Christiana Care and was acting within the course and scope of his employment

and/or affiliation with Christiana Care.

14.     At all times relevant to this action, Dr. Bauer was a healthcare provider

within the meaning of Chapter 68 of Title 18 of the Delaware Code.

15.     Defendant Cynthia Heldt, M.D. ("Dr. Heldt") is a physician licensed to

practice in Delaware with a specialty in internal medicine.

16.     At all times relevant to this action, Dr. Heldt was employed by and/or

affiliated with Christiana Care and was acting within the course and scope of her employment

and/or affiliation with Christiana Care.

01:17390928.1

3

17.    At all times relevant to this action, Dr. Heldt was a healthcare provider within the meaning of Chapter 68 of Title 18 of the Delaware Code.

18.    At all times relevant to the claims asserted against them in this action, Bianca was a patient of Christiana Care, Dr. Bauer and Dr. Heldt.

19.    On July 5, 2005, Bianca had implanted in her at the University of Pennsylvania Hospital in Philadelphia, Pennsylvania, a Bard filter, which was designed, manufactured, marketed, distributed and sold by Bard and/or Bard PV for implantation in patients to prevent pulmonary embolisms.

20.    While under the care of Christiana Care and Dr. Bauer for significant pain and spasm in her chest in July, 2013, Bianca underwent the surgical removal of a 4.5 cm wire in her chest that extended to the pericardium of her heart.  The surgery was performed by Dr. Bauer at the Christiana Hospital on July 10, 2013.

21.    Dr. Bauer did not determine the source of the 4.5 cm wire that was removed from Bianca on July 10, 2013, nor did he request that anyone else determine its source.

22.    Dr. Heldt did not determine the source of the 4.5 cm wire that was removed from Bianca on July 10, 2013, nor did she request that anyone else determine its source.

23.    In late April or early May, 2015, Bianca again experienced significant pain and spasm in her chest, which she reported to Dr. Heldt, who advised Bianca of the need to be urgently evaluated by an interventional radiologist.

24.    Following up on Dr. Heldt's medical advice, Bianca promptly consulted with an interventional radiologist who determined that the Bard filter had fractured and that its broken parts had migrated to other areas of Bianca's body, including her heart, necessitating surgeries to remove the filter and broken parts on June 4 and 9, 2015.

01:17390928.1

4

25.     As a direct and proximate result of the misconduct and negligence of the defendants hereinafter described, Bianca experienced significant injury and damage to her chest and heart, required multiple surgical procedures, incurred expenses for her care and treatment that may continue in the future, sustained a loss of earned income that may continue in the future, and experienced in the past and will experience in the future considerable pain, suffering, discomfort, embarrassment, mental anguish and emotional upset and distress.

26.     As a direct and proximate result of the misconduct and negligence of the defendants hereinafter described, Michael experienced a loss of his wife's comfort, companionship, society, services, and consortium.

## COUNT I

### (Negligence – Bard Defendants)

27.     Paragraphs 1 through 26 are incorporated herein.

28.     The Bard defendants knew or should have known that the Bard filter was prone to an unreasonably high risk of failure and patient injury following placement in the human body.  When such failures occur, the device degrades, comes apart and migrates to other areas of the body, including the heart, where it can cause cardiac tamponade, perforation of the atrial wall, myocardial infarction and death.

29.     The Bard defendants knew or should have known that the Bard filter posed a high risk of tilting and perforating the vena cava walls.  When such failures occur, the device can perforate the duodenum, small bowel, ureter, which may lead to retroperitoneal hematomas, small bowel obstructions, extended periods of severe pain, and death.

01:17390928.1

30.     The Bard defendants knew or should have known from adverse event reports involving retrievable IVC filters that the Bard filter was significantly more prone to service failure than were other similar IVC filters.

31.     The Bard defendants knew or should have known that the Bard filter was not designed or manufactured to withstand the normal anatomical and physiological loading cycles exerted when implanted in the human body.

32.     The Bard defendants did not conduct appropriate clinical testing to determine whether the Bard filter would perform safely once implanted in the human body and subjected to normal and expected stresses within the human body.

33.     Soon after the Bard filter was introduced to the market in 2003, the Bard defendants began receiving a significant number of adverse event reports from healthcare providers who reported that the Bard filter was fracturing and migrating and that the fractured pieces and/or the entire filter were migrating to other areas of the human body, including the heart and lungs.   The Bard defendants also received a significant number of adverse event reports demonstrating that the Bard filters being implanted in patients were found to have excessively tilted and/or perforated the inferior vena cava.

34.     The aforementioned problems with the Bard filters are associated with reports of:

(a)     death;

(b)     hemorrhage;

(c)     cardiac/pericardial tamponade (pressure caused by a collection of blood in the area around the heart);

(d)     cardiac arrhythmia;

01:17390928.1

6

(e)     severe and persistent pain; and

(f)     perforation of tissue, vessels and organs.

35.     In late 2004 or early 2005, the Bard defendants began redesigning the Bard filter in an attempt to correct design and manufacturing defects in the Bard filter but made no effort to notify consumers of the risks inherent in the use of the Bard filter that was originally marketed and sold for implantation in patients.

36.     Defendants knew or should have known that the Bard filter was dangerous or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

37.     The Bard defendants were negligent because said defendants:

(a)     designed and manufactured the Bard filter in such a manner as to present an unreasonable risk of fracturing;

(b)     designed and manufactured the Bard filter in such a manner as to present an unreasonable risk of migration of the filter and/or parts of the filter;

(c)     designed and manufactured the Bard filter in such a manner as to present an unreasonable risk of the filter tilting and/or perforating the vena cava wall;

(d)     designed and manufactured the Bard filter in such a manner as to have insufficient strength or structural integrity to withstand placement within the human body;

(e)     failed to properly test the Bard filter before it was marketed and sold to consumers;

(f)     failed to properly label the Bard filter and instruct physicians about the potential for substantial harm to patients in whom the Bard filter was implanted;

(g)     advertised, marketed and recommended the use of the Bard filter, while concealing and failing to disclose or warn of the dangers known by defendants to be connected with and inherent in the use of the Bard filter;

(h)     represented that the Bard filter was safe for its intended use when in fact the defendants knew or should have known that the product was not safe for its intended purpose;

(i)     continued to manufacture and sell the Bard filter with the knowledge that said product was dangerous, not reasonably safe, and in non-compliance with governmental manufacturing regulations;

(j)     failed to use reasonable and prudent care in the design, research, manufacture and development of the Bard filter so as to avoid the risk of serious harm associated its use;

(k)     failed to establish and implement an appropriate and adequate quality assurance program in the manufacturing of the Bard filter; and

(l)     failed to establish and maintain an appropriate and adequate post-market surveillance program for the Bard filter.

38.     The conduct of the Bard defendants was grossly negligent, willful, wanton and reckless and demonstrates a conscious disregard for the safety of consumers, including Bianca, because the defendants possessed actual knowledge of the dangers of the Bard filter but:

(a)     failed to inform or warn Bianca, Bianca's physicians, or the public at large of these dangers;

(b)     failed to establish and maintain appropriate and adequate quality assurance and post-market surveillance programs; and

01:17390928.1

8

(c)     failed to promptly recall the Bard filter from the market.

39.     As a direct and proximate result of the negligent, grossly negligent, willful, wanton and reckless misconduct of the Bard defendants, Bianca suffered significant harm and injuries, incurred expenses, and sustained losses for which a substantial an award of damages is sought in this action.

## COUNT II

### (Strict Products Liability – Failure to Warn – Bard Defendants)

40.     Paragraphs 1 through 39 are incorporated herein.

41.     The Bard defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Bard filter, including the one implanted in Bianca, into the stream of commerce and, in the course of same, directly advertised and marketed the device to consumers or persons responsible for consumers.

42.     At the time the Bard defendants designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the device into the stream of the commerce, the Bard defendants knew or should have known the device presented an unreasonable danger to users of the product when put in its intended and reasonably anticipated use.  Specifically, the Bard defendants knew or should have known at the time they manufactured, assembled, distributed and sold the Bard filter that was implanted in Bianca, that the Bard filter posed a significantly higher risk than other similar devices for failure, including fracture, migration, tilting and perforation of the vena cava wall resulting in serious injuries.

43.     The Bard defendants had a duty to warn of the risk of harm associated with the use of the Bard filter and to provide adequate instructions on the safe and proper use of

its product and had a duty to warn of dangers and proper safety instructions that it became aware of after its product was distributed and implanted in Bianca.

44.    The Bard defendants failed to adequately warn of material facts regarding the safety and efficacy of the Bard filter and further failed to adequately provide instructions on the safe and proper use of its product.

45.    Bianca's healthcare providers would not have used the Bard filter in the manner directed if the aforementioned facts had been made known to them.

46.    The health risks associated with the Bard filter as described herein are of such a nature that ordinary consumers would not have been expected to appreciate them or recognize the potential harm.

47.    Bianca and Bianca's healthcare providers used the device in a normal, customary, intended, and foreseeable manner, namely as a surgically implanted device used to prevent pulmonary embolisms.

48.    The Bard filter implanted in Bianca was defective and unreasonably dangerous at the time of its release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

49.    The Bard filter implanted in Bianca was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by the Bard defendants.

50.    As a direct and proximate result of the Bard defendants, Bianca suffered significant harm and injuries, incurred expenses and sustained losses for which a substantial award of damages is sought in this action.

01:17390928.1

## COUNT III

### (Strict Products Liability – Design Defect – Bard Defendants)

51.     Paragraphs 1 through 50 are incorporated herein.

52.     At all times relevant to this action, the Bard defendants developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce the Bard filter, including the Bard filter implanted in Bianca.

53.     The Bard filter was expected to, and did, reach its intended consumers without substantial change in the condition in which it left the Bard defendants' possession.

54.     The Bard filter implanted in Bianca was defective in design because it failed to perform in a manner reasonably expected by consumers given its nature and intended function.

55.     The Bard filter implanted in Bianca was defective in design in that its risk of harm exceeded its claimed benefits.

56.     Bianca and Bianca's healthcare providers used the Bard filter in a manner that was reasonably foreseeable to the Bard defendants.

57.     Neither Bianca nor Bianca's healthcare providers could have by the exercise of reasonable care discovered the Bard filter's defective condition or appreciated its unreasonable dangers prior to its implantation in Bianca.

58.     As a direct and proximate result of the defective design of the Bard filter, Bianca suffered significant harm and injuries, incurred expenses, and sustained losses for which a substantial award of damages is sought in this action.

Case 2:15-md-02641-DGC   Document 1077-1   Filed 03/12/16   Page 13 of 21

## COUNT IV

**(Strict Products Liability – Manufacturing Defect – Bard Defendants)**

59.     Paragraphs 1 through 58 are incorporated herein.

60.     The Bard defendants designed, set specifications, manufactured, prepared compounded, assembled, processed, marketed, labeled, distributed and sold the Bard filter that was implanted in Bianca.

61.     The Bard filter implanted in Bianca was in a condition, which the Bard defendants did not intend, at the time it left the Bard defendants' control and possession.

62.     Bianca and Bianca's healthcare providers used the Bard filter in a manner that was reasonably foreseeable to the Bard defendants.

63.     As a result of its defective condition, the Bard filter failed to perform as safely as ordinary consumers would expect when used in a reasonably foreseeable manner, and foreseeably caused injury to consumers, including Bianca.

64.     As a direct and proximate result of the Bard filter's manufacturing defect, Bianca suffered significant harm and injuries, incurred expenses, and sustained losses for which a substantial award of damages is sought in this action.

## COUNT V

**(Breach of Implied Warranty of Merchantability – Bard Defendants)**

65.     Paragraphs 1 through 64 are incorporated herein.

66.     At all times relevant to this action, the Bard defendants designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold and distributed into the stream of commerce the Bard filter for use as a surgically implanted

device to prevent pulmonary embolisms and for uses other than as approved and indicated in the product's instructions, warnings and labels.

67.    At the time and place of the distribution and sale of the Bard filter to Bianca by way of Bianca's healthcare providers and medical facilities, the Bard defendants represented and warranted, by labeling materials submitted with the product, that the Bard filter was safe and effective for its intended and reasonably foreseeable use.

68.    The Bard defendants knew of the intended and reasonably foreseeable use of the Bard filter at the time they marketed, sold, and distributed the product for use by Bianca, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use.

69.    The Bard defendants impliedly represented and warranted to the healthcare community, Bianca and Bianca's healthcare providers that the Bard filter was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

70.    The representations and implied warranties made by the Bard defendants were false, misleading and inaccurate because the Bard filter was defective, unsafe, unreasonably dangerous and not of merchantable quality when used in its intended and/or reasonably foreseeable manner.  Specifically, at the time of Bianca's purchase of the Bard filter from the defendants, through Bianca's physicians and medical facilities, it was not in a merchantable condition because:

(a)    it was designed in such a manner as to be prone to a statistically high incidence of failure, including fracture, migration, excessive tilting, and perforation of the inferior vena cava;

01:17390928.1

(b)     it was designed in such a manner as to result in a statistically significant incidence of injury to tissue and organs; and

(c)     it was manufactured in such a manner that the exterior surface of the Bard filter was inadequately, improperly and inappropriately prepared and/or finished causing the device to weaken and fail.

71.     Bianca and Bianca's healthcare providers reasonably relied on the superior skill and judgment of the Bard defendants as the designers, researchers and manufacturers of the products, as to whether the Bard filter was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the Bard filter was manufactured and sold.

72.     The Bard defendants placed the Bard filter into the stream of commerce in a defective, unsafe, and unreasonably dangerous condition, and the product was expected to and did reach Bianca without substantial change in the condition in which the Bard filter was manufactured and sold.

73.     The Bard defendants breached their implied warranties because the Bard filter was not fit for its intended use and purpose.

74.     As a direct and proximate result of the Bard defendants' breach of implied warranties, plaintiff suffered significant harm and injuries, incurred expenses, and sustained losses for which a substantial award of damages is sought in this action.

## COUNT VI

### (Negligent Misrepresentation – Bard Defendants)

75.     Paragraphs 1 through 74 are incorporated herein.

76.     At all times relevant to this cause, the Bard defendants negligently provided Bianca, Bianca's health care providers, and the general medical community with false or incorrect information, or omitted or failed to disclose material information concerning the Bard filter, including, but not limited to, misrepresentations with regard to:

     (a)     the safety of the Bard filter;

     (b)     the efficacy of the Bard filter;

     (c)     the rate of failure of the Bard filter; and

     (d)     the approved uses of the Bard filter.

77.     On information and belief, the Bard defendants distributed information to the public, the medical community and Bianca's health care providers in the form of reports, press releases, advertising campaigns, labeling materials, print advertisements, commercial media containing material representations, which were false and/or misleading, and contained omissions and concealment of the truth about the dangers of the use of the Bard filter. The Bard defendants made the foregoing misrepresentations when they knew or should have known that they were false or without reasonable basis. These materials included instructions for use in warning documents, which were included in the package insert of the Bard filter that was implanted in Bianca.

78.     The Bard defendants' misrepresentations about the Bard filter were made to deceive and/or mislead the medical community, including Bianca's health care providers, about the efficacy of using the Bard filters and were made by the Bard defendants to promote the continued use of the Bard filter when the Bard defendants knew or should have known that the Bard filter was the subject of numerous adverse incident reports and was not fit for use.

01:17390928.1

79.     Contrary to the representations of the Bard defendants about the Bard filter, the Bard filter is not safe, fit and effective for human implantation in its intended and reasonably foreseeable use and purpose.  The Bard filter in fact has a serious propensity to cause users to suffer serious injuries, including without limitation, the injuries Bianca suffered, and has a significantly higher rate of failure and injury than do IVC filters of other manufacturers.

80.     In reliance upon the negligent misrepresentations and omissions about the Bard filter made by the Bard defendants, Bianca and Bianca's health care providers were induced to, and did use, the Bard filter, thereby causing Bianca to sustain significant harm and serious injuries.

81.     The Bard defendants knew or should have known that Bianca, Bianca's health care providers, and the general medical community did not have the ability to determine the true facts that were purposefully and/or negligently concealed and misrepresented by the Bard defendants, and would not have prescribed or implanted the Bard filter, if the true facts regarding the Bard filter had not been concealed and misrepresented by the Bard defendants.

82.     The Bard defendants purposefully did not share with Bianca, Bianca's healthcare providers or the general medical community the material facts they possessed concerning the defective nature of the Bard filter and its propensity to cause serious and dangerous side effects and injuries to persons in whom it was implanted.

83.     During the time that the Bard defendants failed to disclose and misrepresented the efficacy of the Bard filter, and at the time Bianca used the Bard filter, Bianca and Bianca's health care providers were unaware of the Bard defendants' negligent misrepresentations and omissions.

01:17390928.1

16

84.     Bianca, Bianca's health care providers and general medical community reasonably relied upon the misrepresentations and omissions of the Bard defendants under circumstances where the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Bard filter.

85.     Bianca and Bianca's health care provider's reliance on the aforementioned misrepresentations by and omissions of the Bard defendants was a direct and proximate cause of the plaintiffs' injuries, damages and losses as alleged herein.

## COUNT VII

### (Deceptive Trade Practice – Bard Defendants)

86.     Paragraphs 1 through 85 are incorporated herein.

87.     At all relevant times, the Bard defendants committed deceptive trade practices as defined in the Delaware Deceptive Trade Practices Act, 6 *Del. C.* § 2531 *et. seq.*, in that the Bard defendants:

(a)     by purposefully making false or misleading statements caused a likelihood of confusion or of misunderstanding of the fitness and safety of the Bard filter;

(b)     represented that the Bard filter was safe to implant in humans when in fact it was unsafe to use because of the propensity of the Bard filter to migrate, break apart and cause injury and death;

(c)     advertised the Bard filter with the intent of not selling their product as advertised; and

(d)     engaged in conduct that created a likelihood of confusion or of misunderstanding about a product, which was dangerous and unsafe to implant in humans.

01:17390928.1

88.     As a direct and proximate result of the Bard defendants' commission of deceptive trade practices, the plaintiffs suffered injuries, damages and losses for which plaintiffs seek an award of treble damages and attorneys' fees, in accordance with applicable state law, including 6 *Del. C.* § 2533, and such other relief as the Court shall deem appropriate.

## COUNT VIII

### (Punitive Damages Allegations)

89.     Paragraphs 1 through 88 are incorporated herein.

90.     The Bard defendants acted in their own self-interests consciously pursuing a course of conduct that they knew or should have known created a substantial risk of significant harm to others, including Bianca.

91.     The Bard defendants' willful, wanton and reckless misconduct and its purposefully fraudulent and malicious acts and omissions demonstrate a conscious disregard for the safety and welfare of the public, including Bianca, entitling the plaintiffs to an award of punitive damages.

## COUNT IX

### (Medical Negligence – Christiana Care, Dr. Bauer and Dr. Heldt)

92.     Paragraphs 1 through 91 are incorporated herein.

93.     Defendants Christiana Care, Dr. Bauer and Dr. Heldt were negligent in providing healthcare services to Bianca because said defendants:

(a)     failed to properly diagnose the cause of Bianca's chest symptoms in July, 2013;

(b)     failed to determine the source of the foreign object that was surgically removed from Bianca's chest in July, 2013;

(c)     wrongly concluded that the foreign object removed from Bianca's chest was unrelated to the Bard filter;

(d)     failed to conduct appropriate tests to determine whether the Bard filter had broken apart and migrated to other areas of Bianca's body;

(e)     failed to inform Bianca that the Bard filter should be removed because of the likelihood that it would fracture and migrate;

(f)     failed to warn Bianca of the substantial risk of harm and serious injury if the Bard filter was not promptly removed;

(g)     misled Bianca by informing her that the foreign object removed from her chest was probably related to something other than the Bard filter;

(h)     failed to refer Bianca to other specialists who could determine the source of the foreign object;

(i)     failed to retain the foreign object removed from Bianca's chest so that it could be inspected and evaluated to determine its origin; and

(j)     breached applicable standards of care.

94.     As a proximate result of the aforesaid negligence of the defendants Christiana Care, Dr. Bauer and Dr. Heldt, the Bard filter implanted in Bianca was not removed in a timely manner and Bianca suffered significant harm and injuries, required multiple surgical procedures, and incurred expenses for her care and treatment and other losses related to her injuries as described herein.

95.     As a proximate result of the aforesaid negligence of the defendants Christiana Care, Dr. Bauer and Dr. Heldt, Michael suffered a loss of his wife's comfort, companionship, services, society and consortium.

01:17390928.1

19

96.     Affidavits of merit of appropriately credentialed experts, together with the curriculum vitae of said experts, have been filed with the Court under seal in accordance with 18 *Del. C.* § 6853(a)(1).

97.     A Notice of Intent to Investigate Medical Negligence Claims Pursuant to 18 *Del. C.* § 6856(4) was sent to the defendants Christiana Care, Dr. Bauer and Dr. Heldt by Certified Mail, Return Receipt Requested, on July 2, 2015 and was delivered by the United States Postal Service at the defendants' regular places of business.  Copies of the aforesaid Notices are attached to the Complaint as Exhibit A.

WHEREFORE, plaintiffs demand judgment against all defendants, individually, jointly and severally for their compensatory damages, including pre-judgment interest and costs, and demand judgment against the Bard defendants, individually, jointly and severally for treble damages, punitive damages, pre-judgment interest, attorneys fees, costs and such other relief as the Court shall deem appropriate.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/Richard A. Zappa*

Richard A. Zappa (#528)
Timothy E. Lengkeek (#4116)
Rodney Square
1000 North King Street
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6626/6605
Attorney for Plaintiffs

Dated:  September 23, 2015

01:17390928.1