James R. Condo (#005867)
Amanda C. Sheridan (#027360)
**SNELL & WILMER L.L.P.**
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
Telephone:  602.382.6000
Facsimile:  602.382.6070
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
Telephone: (404) 322-6000
Telephone: (602) 382-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

Attorneys for Defendants C. R. Bard, Inc. and
Bard Peripheral Vascular, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' NOTICE OF SUBMISSION REGARDING PROPRIETY, NECESSITY, AND PROCEDURE FOR EARLY RESOLUTION OF APPLICABILITY OF PLAINTIFFS' CLAIM OF EQUITABLE TOLLING DUE TO FRAUDULENT CONCEALMENT** |

As noted at past conferences, Defendants believe that the Court's ruling on an exemplar motion addressing the narrow issue of whether the statute of limitations can be tolled beyond the time of actual discovery of an alleged injury (and the injury's relation to a Bard product) would be appropriate and justified at this time.  Specifically, a ruling on this threshold issue would impact a substantial number of cases already pending in MDL 2641, would streamline discovery in both filed and future cases, would provide certainty

1   with respect to the filing of future cases, and would ensure that an ultimate resolution of
2   the litigation is not hindered by the proliferation of meritless cases.  Defendants have met
3   and conferred with the plaintiffs on this proposal.  The plaintiffs have indicated that they
4   do not agree to Defendants' proposed procedure for the reasons stated in section IV(2)(a)
5   of the parties' Joint Report Pursuant to Case Management Order No. 2.

6   Defendants make this submission and provide additional information and analysis
7   about their proposal, which sets forth a procedure for the consideration of an exemplar
8   Motion for Summary Judgment, similar to the procedure employed by Judge Cathy Seibel
9   in *In re: Mirena IUD Products Liability Litigation* pending in the United States District
10  Court for the Southern District of New York.[1]  There, as here, the plaintiffs vigorously
11  opposed the motion, maintaining that determination of the applicability of equitable
12  tolling in circumstances such as those present here should be delayed until the facts of
13  each case were known in their entirety and could be considered on an individual basis.
14  Judge Seibel disagreed with the plaintiffs and decided that consideration of Defendants'
15  motion would, at worst, result in a "slight detour" (if the motion was denied), and, if the
16  motion was granted, could provide guidance in other cases in that litigation.[2]

17  Such is the case here.  Defendants propose a procedure designed to facilitate the
18  early resolution of the very narrow legal question of whether, under the discovery rule,
19  alleged fraudulent concealment can toll the applicable statutes of limitation beyond
20  discovery of an actual injury when that injury's relationship to a Bard filter is known.
21  Defendants believe that a ruling on this threshold issue is likely to impact the potential for
22  "elasticity"[3] with respect to this litigation by providing certainty regarding the viability of

---

[1]   Defendants' proposed Case Management Order concerning Early Resolution of Issues Related to Statutes of Limitations is attached hereto as Exhibit A.

[2]   Judge Seibel further noted that, when faced with the proposition of selecting an 'Initial Disposition Pool' of cases to serve as potential bellwethers, "[i]t will be a shame if we picked a case that then went away on Statute of Limitations grounds, then we have to go back and find another one."

[3]   As discussed in the legal literature, certain torts have the potential to become mass torts because of their "elasticity," or capacity for expanding through inclusion of additional plaintiffs (such as those that would be otherwise time-barred) and/or additional damages.  An example of an inelastic mass tort would be one that arises

- 2 -

not only a substantial number of filed cases currently in this MDL, but a significant number of unfiled claims as well. As discussed in various commentaries regarding mass-tort litigation, it is well-recognized that, by its very nature, mass-tort litigation is susceptible to unwarranted expansion by way of the aggregation of a large number of plaintiffs and the process of burying many cases that, standing alone, lack merit.[4] The risk of that phenomenon occurring here is very real, since Defendants' investigation has revealed that the plaintiffs' attorneys are spending in excess of $1 million each month (and perhaps significantly more) in television advertising for this litigation.

Under the circumstances, Defendants believe the consideration of the issue of equitable tolling at this juncture will ultimately promote economy and efficiency and avoid wasting resources. Addressing the issue now would allow determination of this issue outside the discovery pool and bellwether pool process, while simultaneously providing some certainty with respect to the applicability of equitable tolling of the statutes of limitations going forward. Not only is the Court's early consideration of this threshold issue permissible, but the question actually falls precisely within the ambit of topics identified as those appropriately addressed by a transferee Court in early Rule 16 conferences:

> Products liability MDLs frequently involve claims and defenses asserted under various federal and state laws. In early Rule 16 conferences and status conferences, work with counsel to narrow the issues, claims, and defenses. . . . Issues to be taken up early in the litigation may include the following . . . whether claims are barred by statutes of limitations or other legal bars[.]

---

from an aircraft crash case. An example of an elastic mass tort is the asbestos litigation. *See* Francis E. McGovern, <u>An Analysis of Mass Torts for Judges</u>, 73 Tex. L. Rev. 1821, 1827 (1995).

[4] *See id.* at 1838-41 (recognizing various tactics designed to expand mass-tort litigation, including the tactic of arguing to "minimize the scope of defenses, such as statutes of limitations, statutes of repose, and contributory negligence. The strategy, in other words, is to promote liability, causation, and damages that are not individually dependent, that apply to large numbers of people at the same time, and that can be proven by large numbers of people at the same time."); *see also* Barbara J. Rothstein, et al., <u>A Model Mass Tort: The PPA Experience</u>, 54 Drake Law Rev. 621, 623 (2006) (recognizing the phenomenon and motivations behind the strategy of amassing large inventories of cases with minimal assessment of the merits in the push toward global settlement of the entire inventory, including those cases with little merit).

Barbara J. Rothstein & Catherine R. Borden, <u>Managing Multidistrict Litigation in Products Liability Cases: A Pocket Guide for Transferee Judges</u>, 19 (2011).

### **FACTUAL ANALYSIS**

In their Master Complaint, the plaintiffs claim that alleged fraudulent concealment of "the defective and unreasonably dangerous nature of the Bard IVC Filters, and the causal connection between these defects and the plaintiffs' injuries and damages" effectively cloaks the plaintiffs' claims with immunity from the applicable statutes of limitations, even in instances when the alleged injury (i.e., filter fracture, perforation, migration, etc.) is known to a particular plaintiff.  (*See* Plaintiffs' Master Compl. at ¶¶ 161-165.)  Defendants do not believe such an unlimited expansion of the discovery rule has been adopted by any jurisdiction, even in the face of alleged fraudulent concealment, and instead believe that the tolling of statutes of limitations due to fraudulent concealment is inapplicable in the cases presently pending in the MDL.

The claims of certain plaintiffs in this MDL are particularly ripe for a determination of the applicability of equitable tolling under the facts as alleged by the plaintiffs.  As just one example, with respect to the case brought by Plaintiff Lisa Schweska, the plaintiffs allege that there were three failed attempts to percutaneously retrieve her filter between January 2007 and March 2007.  Ms. Schweska's filter was surgically removed on May 16, 2007, but her case was not filed for more than eight years, at which point her case was filed on June 25, 2015, in the United States District Court for the Central District of Illinois.  The two-year limitations period would have expired with respect to Plaintiff Schweska's product liability claim in May 2009, at the latest, absent equitable tolling.  While the plaintiffs' counsel included Plaintiff Schweska as part of a tolling agreement in late 2013, the tolling agreement specified that nothing in it could revive a claim otherwise time-barred by the statute of limitations.

There are numerous other instances of similarly positioned cases pending in this MDL, and, perhaps more importantly, Defendants believe that many of the known but thus far unfiled claims suffer similar defects.  As a result, an early resolution of the

1  applicability of equitable tolling under these or similar circumstances is warranted so as to
2  streamline the issues for discovery, promote efficiency, and provide certainty with respect
3  to future filings or potential filings.  Among other efficiencies, such a ruling will likely
4  relieve the parties from a situation in which they are forced to test this legal theory on a
5  case to be selected as a bellwether case, thereby requiring that prospective bellwether case
6  to proceed apace through case-specific document collection, case-specific fact
7  depositions, and case-specific expert depositions before Defendants' next opportunity to
8  obtain a ruling on this threshold legal question.  Even once such a later ruling and
9  potentially a dismissal were obtained, Defendants would be left waiting until the close of
10 case-specific fact discovery and expert discovery in each case before a similar dispositive
11 motion might be considered.

12 Although the entertainment of this proposed motion necessarily involves
13 consideration of case-specific facts, the application of those facts to the question of
14 equitable tolling will be instructive to the parties and has the potential to result in a great
15 deal of efficiency.  Moreover, the concept of equitable tolling due to alleged fraudulent
16 concealment is governed by the practical application of the same or largely similar
17 standard, as demonstrated by the fact that in *In re: Mirena*, Judge Seibel has reached the
18 same outcome after applying the law of seven different states – to state it otherwise, under
19 none of the states' laws to which she has applied the question of equitable tolling, when
20 an injury and the relation of that injury to the Defendants' product was known, has Judge
21 Seibel found the alleged tolling to apply.  The concept is simply inapplicable under such
22 circumstances, as Defendants believe this proposed process will ultimately reveal.  Given
23 that, the plaintiffs' opposition to Defendants' proposal comes as no surprise.

## LEGAL ANALYSIS

25 The procedure suggested by Defendants in their proposed Case Management Order
26 concerning Early Resolution of Issues Related to Statutes of Limitations largely adheres to
27 the procedure implemented by United States District Court Judge Cathy Seibel in *In re:*
28 *Mirena IUD Products Liability Litigation*, No. 13-md-2434-CS-LMS, which cases were

- 5 -

transferred to Judge Seibel based upon the JPML's April 8, 2013 order. In *In re: Mirena*, the plaintiffs alleged injuries due to perforation, embedment, or migration of a MIRENA intrauterine contraceptive device. There, as here, the injuries claimed by the plaintiffs were unlike those cases where a pharmaceutical product caused a latent injury or a generic injury (i.e., a heart attack) with no immediately apparent connection to the product at issue. Instead, the nature of the alleged injuries was such that the involvement of the MIRENA device was obvious from the very diagnosis of injury.

A summary of the procedure employed in *In re: Mirena* may be helpful. There, the plaintiffs opposed implementation of a procedure intended to facilitate early determination of equitable tolling of the statutes of limitations, arguing that such a process would provide little guidance with respect to other cases in the MDL and that questions of statutes of limitations are inappropriate for MDL review, as they involve questions of fact and state-specific law. Judge Seibel ultimately disagreed and entertained the defendants' motion to dismiss a claim as time-barred, after allowing the plaintiff at issue leave to amend her complaint in order to assuage the plaintiff's concerns that consideration of the motion was prejudicial given that additional facts may come to light during discovery. After the motion to dismiss was fully briefed and argued, Judge Seibel dismissed the plaintiff's product liability claims as time barred, noting:

> Once Plaintiff learned that the Mirena had perforated her uterus and surgery was required to remove it, she had clearly suffered an injury from the device's perforation and migration, which would have prompted a reasonably diligent individual to inquire into why the Mirena perforated her uterus. Whether that inquiry revealed the Mirena perforated her uterus because of the doctor's malpractice or the product's failure is simply irrelevant to the issue of when the statute of limitations was triggered on Plaintiff's product liability claims.
>
> \*   \*   \*
>
> As stated previously, unlike toxic tort or other latent injury cases, there was no mystery that the Mirena had harmed Plaintiff. Once Plaintiff learned that the Mirena had perforated her uterus and needed to be removed, she had enough information to inquire into causation and, therefore, the statute of limitations began to run.

*In Re: Mirena IUD Prods. Liab. Litig.*, No. 7:14-cv-01675 (S.D.N.Y. July 2, 2014).

Following Judge Seibel's July 2, 2014 ruling (hereinafter, the "*Truitt* Order"), the Court entered Case Management Order No. 22A, establishing a procedure by which the parties could determine the potential applicability of that opinion to other cases in their MDL.  As part of that procedure, if the defendants felt that dismissal pursuant to the July 2, 2014 Order was appropriate, the defendants could file and serve on a particular plaintiff's counsel a 3-page letter stating why the case should be dismissed.  Upon receipt of such a letter, the plaintiff's counsel would have 30 days to respond by either filing a dismissal or filing a 3-page letter establishing why the case was distinguishable from the *Truitt* Order's holding, and also allowing the plaintiff leave to amend her complaint if desired.  After allowing the defendants a 3-page reply letter, the Court would determine whether dismissal was appropriate, or whether additional briefing was necessary.  Pursuant to this procedure, and without the necessity of additional briefing or oral argument, Judge Seibel dismissed 31 additional cases as time-barred, consistent with the holding in the *Truitt* Order, in January 2015.  In so doing, Judge Seibel found the outcome to be the same under each of the seven different state's laws which have been applied thus far.

Here, a number of cases in MDL 2641 invoke the same analysis when addressing the threshold issue of whether equitable tolling can apply in instances of an alleged injury where both the injury itself <u>and</u> the relation of the injury to the filter is known.  Many of the plaintiffs in MDL 2641 allege that their filter fractured or migrated, or that the filter is perforating their inferior vena cavas, thereby causing them injury.  The question of <u>whether knowledge of a fractured filter and the resulting medical course related to that alleged injury triggers the running of the statute of limitations, under any interpretation of the discovery rule</u>, is one that is ripe for determination at this juncture.  On the other hand, if the Court declines to consider Defendants' proposal or forthcoming motion, on the basis that the issue is a fact-specific one that involves application of state law or otherwise, the plaintiffs' filing of cases long time-barred will continue unimpeded, resulting in what has come to be known as the "super-highway" of litigation, hurtling litigation forward based

only upon the sheer number of cases, without consideration whether these cases are frivolous.  *See* McGovern, supra, at 1840 (regarding mass torts, "[i]f you build a super-highway, there will be a traffic jam.").  Certainly, a decision not to consider the issue at this juncture does not theoretically preclude its consideration at some date in the future; however, as a practical matter, it might, since meritless cases often become buried in the mass litigation and subsumed in a global resolution before they are exposed.  Moreover, it can hardly be said that judicial economy or efficiency would be promoted by such subsequent and individual filings which might then require the parties to expend one or more bellwether selections in order to obtain resolution and certainty with respect to this issue.  Nor can it be said that economy or efficiency will benefit from the eventual consideration of this issue by a wide variety of transferor courts across the country.  To the contrary, consideration of the proposed motion and procedure at this juncture would, at worst, result in the "slight detour" Judge Seibel was willing to embark upon, and, at best, provide certainty regarding filed and as-yet-unfiled cases, all the while promoting efficiency and economy for all.

## CONCLUSION

For the reasons stated herein, Defendants request that the Court enter a case management order that sets forth a procedure for resolution of one or more exemplar cases by way of dispositive motion, such as that set forth in Defendants' Proposed Case Management Order regarding Early Resolution of Issues Related to Statutes of Limitations.

DATED 18th day of March, 2016.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/ Richard B. North, Jr.
Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
201 17th Street, NW, Suite 1700
Atlanta, GA 30363

|   |   |
|---|---|
| 1 | |
| 2 | James R. Condo<br>Amanda C. Sheridan<br>SNELL & WILMER L.L.P.<br>One Arizona Center<br>400 E. Van Buren, Suite 1900<br>Phoenix, AZ 85004-2202 |
| 3 | |
| 4 | Attorneys for C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. |

*(Left margin: Nelson Mullins Riley & Scarborough L.L.P., 201 17th Street NW, Suite 1700, Atlanta, GA 30363, (404) 322-6000)*

Line numbers 1–28 shown along left side.

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2016, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

                     s/ Richard B. North, Jr.
                     Richard B. North, Jr. (admitted *pro hac vice*)
                     Georgia Bar No. 545599
                     Nelson Mullins Riley & Scarborough LLP
                     201 17th Street, NW, Suite 1700
                     Atlanta, GA 30363
                     Attorneys for C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.