James R. Condo (#005867)
Amanda Sheridan (#005867)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
JCondo@swlaw.com
ASheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
Telephone: (404) 322-6000
Richard.North@nelsonmullins.com
Matthew.Lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation | MDL NO. 15-02641-PHX-DGC |
| This Document Relates to: | |
| BIANCA FRASER-JOHNSON and MICHAEL JOHNSON, | |
| Plaintiffs, | |
| v. | Case No. CV-16-00336-PHX-DGC |
| C. R. BARD, INC., BARD PERIPHERAL VASCULAR, INC., CHRISTIANA CARE HEALTH SERVICES, INC., CHRISTIANA CARE HEALTH SYSTEM, INC., THOMAS BAUER, M.D., CYNTHIA HELDT, M.D., | **DEFENDANTS C. R. BARD, INC.'S AND BARD PERIPHERAL VASCULAR, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND** |
| Defendants. | |

1    Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, the "Bard
2    Defendants" or "Bard") hereby file their response in opposition to Plaintiffs' Motion to
3    Remand (MDL 2641 Dkt. No. 1077).  For the following reasons, and reasons set forth in
4    Bard's Notice of Removal (Dkt. No. 1) and Motion to Sever and Remand Claims Against
5    Defendants Christiana Care Health Services, Inc., Christiana Care Health System, Inc.,
6    Thomas Bauer, M.D., and Cynthia Heldt, M.D. (collectively the "Health Care Defendants")
7    (Dkt. No. 5-6), as well as the Health Care Defendants' Joinder in Bard's Motion to Sever and
8    Remand (Dkt. No. 11), this action was properly removed to federal court because the Health
9    Care Defendants are fraudulently misjoined and/or the claims against the Health Care
10   Defendants should be severed and remanded pursuant to Federal Rules of Civil Procedure 19
11   and 21 because they are not necessary or indispensible parties.

12                               **I.  <u>INTRODUCTION</u>**

13       The Bard Defendants properly removed this case on October 23, 2015, because
14   Plaintiffs' medical negligence claims against the Health Care Defendants are fraudulently
15   misjoined to the product liability claims against the Bard Defendants and, thus, the
16   citizenship of the Health Care Defendants should be disregarded for purposes of diversity
17   jurisdiction.  Plaintiffs argue that the entire case should be remanded because the two
18   categories of claims arise from the same transaction or occurrence.  Yet, the facts of this case
19   dictate otherwise.

20       Unlike cases where courts ruled that medical negligence and product liability claims
21   arose from the same transaction or occurrence and, hence, allowed joinder, in this case
22   Plaintiffs' medical negligence claims against the Health Care Defendants do not relate to
23   Ms. Fraser-Johnson's implant of her Bard inferior vena cava ("IVC") filter.  In fact, the
24   claims against the Health Care Defendants relate exclusively to a missed diagnosis *<u>eight</u>*
25   *<u>years after</u>* Ms. Fraser-Johnson's filter implant and have no relationship to the product
26   liability claims against Bard, which involve alleged deficiencies in the design, manufacturing,
27   and labeling of the filter *before* Ms. Fraser-Johnson's implantation.  Accordingly, Plaintiffs'

28

product liability claims against Bard and medical negligence claims against the Health Care Defendants do not arise from the same transaction or occurrence, and the claims against the Health Care Defendants should be severed and remanded while the claims against Bard remain in this MDL.

In the alternative, if this Court finds that the Health Care Defendants were not fraudulently misjoined, this Court should sever and remand the claims against them pursuant to Federal Rule of Civil Procedure 21 because they are not necessary and indispensable parties under Rule 19.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this action in the Superior Court of the State of Delaware in and for New Castle County on September 23, 2015.  On October 23, 2015, the Bard Defendants timely removed the case to the United States District Court for the District of Delaware based on diversity jurisdiction under 18 U.S.C. § 1332 (Dkt. No. 1).  Plaintiffs filed a Motion to Remand the entire case (Dkt. No. 10), and Bard filed its Motion to Sever and Remand Plaintiffs' claims against the Health Care Defendants (Dkt. No. 5-6) and a Motion to Stay All Proceedings Pending a Ruling on Transfer to MDL 2641 (Dkt. No. 14).  On January 8, 2016, the district court orally granted Bard's Motion to Stay.  On February 4, 2016 the JPML issued a transfer order sending the case to this Court (Dkt. No. 23).  On March 12, 2016 Plaintiffs filed their Motion to Remand (MDL 2641 Dkt. No.  1077).

This is one of at least three cases currently pending before MDL 2641 which involve jurisdictional issues arising from removal based on fraudulent misjoinder and/or the request for Rule 21 severance of diversity-destroying health care defendants who are not necessary and indispensable parties under Rule 19.  *See Ruden v. C.R. Bard, Inc., et al.,* Case No. CV-16-00344-PHX-DGC, and *Wolfe v. C.R. Bard, Inc., et al.,* Case No. CV-16-00786-PHX-DGC.

### III.  ARGUMENT AND CITATION OF AUTHORITY

**A.     Bard's Removal Was Proper Because Plaintiffs' Claims Against the Health Care Defendants Are Fraudulently Misjoined With the Product Liability Claims Against Bard.**

The fraudulent misjoinder doctrine, first discussed by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996) and *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284 (11th Cir. 1998), prevents improper party joinder from defeating diversity jurisdiction when there is "no real connection" between the underlying facts of the two classes of claims.  Specifically, fraudulent misjoinder "involves a purposeful attempt to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal, and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard provided under Rule 20 of the Federal Rules of Civil Procedure."  *Stone v. Zimmer, Inc.*, No. 09-80252-CIV, 2009 WL 1809990, at *2 (S.D. Fla. June 25, 2009). *See also Sutton v. Davol, Inc.,* 251 F.R.D. 500, 505 (E.D. Cal. 2008) (applying fraudulent misjoinder doctrine and holding that claims involving products liability and medical negligence do not arise out of the same transaction or occurrence and should not be joined together); *In Re Stryker Rejuvenate & ABG II Hip Implant Products Liab. Litig.,* No. CIV 13-1811 DWF/FLN, 2013 WL 6511855, at *4 (D. Minn. Dec. 12, 2013) ("The joinder of any malpractice, negligence, or misrepresentation claim against the Hospital Defendants with the other product liability claims (that are properly asserted against the device manufacturer) is inappropriate because the claims do not both involve common questions of law or fact and assert joint, several, or alternative liability 'arising out of the same transaction, occurrence, or series of transactions or occurrences'"); *In re Guidant Corp., Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708, Case No. 07-1129, 2007 WL 5377783, at *7 (D. Minn. June 4, 2007) (severing and remanding only the claims against defendant hospital because "the basis for the causes of action against [the hospital] do not arise from the same transaction and occurrences as those in the causes of action against the

[medical device manufacturers]"); *In re Rezulin Products Liab. Litig.*, No. 00 CIV 2843 (LAK), 2003 WL 21276425, at *1 (S.D.N.Y. June 2, 2003) (plaintiff fraudulently misjoined medical malpractice claims with product liability claims "because the claims do not involve common questions of law or fact and assert 'joint, several, or alternative liability . . . arising from the same transaction, occurrence, or series of transactions or occurrences'"); *In re Fosamax (Alendronate Sodium) Products Liab. Litig. (No. II)*, 2012 WL 1118780, at *2-3 (D.N.J. Apr. 3, 2012) *aff'd*, 751 F.3d 150 (3d Cir. 2014).

Rule 20(a) allows permissive joinder of defendants as follows:

> Persons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a).[1]  If a party is fraudulently misjoined, the Court can disregard its citizenship for purposes of diversity jurisdiction and sever and remand the claims to state court.  *See, e.g., In re Fosamax (Alendronate Sodium) Products Liab. Litig. (No. II)*, 2012 WL at *6; *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832-33 (1989) ("Rule 21 invests district courts with authority to dismiss a dispensable party whose presence spoils statutory diversity jurisdiction."); *Bhatla v. U.S. Capital Corp.*, 990 F.2d 780, 786 (3d Cir. 1993) (using Rule 21 to sever and dismiss the claims against the nondiverse, dispensable parties to retain diversity jurisdiction).

In this case, the Health Care Defendants are misjoined as parties and should be severed from this action to sustain this Court's diversity jurisdiction, because Plaintiffs' medical negligence claims against the Health Care Defendants do not arise from the same transaction

---

[1] Federal Rule of Civil Procedure 20(a) and Delaware Rule of Civil Procedure 20(a) have the same permissive joinder standard for defendants.  *See* Fed. R. Civ. P. 20; Del. Super. Ct. R. Civ. P. 20. Thus, regardless of whether the federal or state rule applies in determining whether joinder is proper, the same analysis will apply.

1    or occurrence as Plaintiffs' product liability claims against the Bard Defendants.[2]  Plaintiffs

2    allege product liability claims against Bard relating to the design, manufacture, and labeling

3    of its IVC filter before and up to the time it was implanted in Ms. Fraser-Johnson at the

4    University of Pennsylvania Hospital on July 5, 2005.  (Complaint, Dkt. No. 1-2, ¶¶ 19-24, 27-

5    91.)   In stark contrast, Plaintiffs assert medical negligence claims against the Health Care

6    Defendants relating exclusively to medical care provided in Delaware in July 2013, _eight_

7    _years_ after Plaintiff's filter was implanted and before the filter was removed by a non-party

8    physician.  (_Id._ ¶¶ 19-24, 93.)

9          Specifically, Plaintiffs allege that in July 2013, eight years after her filter implant in

10   Pennsylvania, Ms. Fraser-Johnson was under the care of Defendants Christiana Care Health

11   Services, Inc. and Christiana Care Health System, Inc. (the "Christiana Care Defendants") in

12   Delaware, and underwent surgical removal of a 4.5 cm wire from her chest after experiencing

13   pain.  (_Id._ ¶ 20.)  Plaintiffs further claim that Defendant Thomas Bauer, M.D. performed the

14   surgery and that he, along with Defendant Cynthia Heldt, M.D. and the Christiana Care

15   Defendants, were negligent in providing health care services because they failed to properly

16   diagnose the cause of Plaintiff's chest symptoms and determine the source of the wire that

17   was surgically removed from Ms. Fraser-Johnson, which Plaintiffs allege was from

18   Ms. Fraser-Johnson's IVC filter.  (_Id._ ¶¶ 19-24, 93.)

19         An analysis of the facts in this matter are critical to support a finding of fraudulent

20   misjoinder – mainly that (1) Plaintiff's filter was implanted in 2005, and explanted in 2015,

21   by physicians and at medical facilities with no relationship to the Health Care Defendants (_id._

22   ¶¶ 19-24) and (2) Plaintiffs' medical negligence claims against the Health Care Defendants

23   relate _exclusively_ to their alleged missed diagnosis in July 2013, eight years after Ms. Fraser-

24   Johnson's filter implantation (_id._ ¶¶ 19-24, 93).  Plaintiffs argue that their claims against Bard

---

[2]   Plaintiffs do not allege, nor is there basis to conclude, that the Bard Defendants and Health Care Defendants are subject to joint and several liability.  (_See generally_, Plaintiffs' Motion to Remand, MDL 2641 Dkt. No.  1077.)

and the Health Care Defendants are properly joined under Rule 20 and that "the facts of this case comport with other similar cases in which medical defendants were found to be properly joined with those made against a medical device manufacturer." (Plaintiffs' Motion to Remand, MDL 2641 Dkt. No. 1077, at 9.) First, Plaintiffs ignore the substantial number of cases in which courts have severed claims against medical defendants (including those who implanted the medical devices at issue) on the grounds that their claims were improperly joined with claims against medical device manufacturers. *See, e.g., Sullivan v. Calvert Mem. Hosp.*, 117 F. Supp. 3d 702 (D. Md. 2015) (severing claims against healthcare defendants who implanted medical device and noting that "[s]everance is particularly appropriate in this case" because it would allow for the transfer of the plaintiff's claims against the manufacturer defendants to the pelvic mesh MDL); *Mayfield v. London Women's Care, PLLC*, 2015 WL 3440492 (E.D. Ky. May 28, 2015) (severing medical malpractice claims against implanting physician because they were "highly distinct" from the products liability claims against the manufacturer); *Cooke-Bates v. Bayer Corp.*, 2010 WL 3984830 (E.D. Va. Oct. 8, 2010) (severing and remanding claims against prescribing physician on the grounds that physician was not necessary under Rule 19, so that claims against manufacturer could proceed in MDL).[3]

Second, Plaintiffs have not cited a single case where the physician defendant did not implant the device that was the subject of product liability claims against the defendant medical device manufacturer, and the claims asserted against the physician defendant allegedly arose years later. Accordingly, Plaintiffs' cited case law is inapposite to the facts of this matter.[4]

---

[3] Bard is also aware of one case involving an IVC filter in which the trial court remanded claims against Bard and an implanting physician. *Stavropoulos v. Bard Peripheral Vascular, Inc., et al,* 2015 WL 6810856 (E.D. Pa. Nov. 5, 2015). In *Stavropoulos*, however, the court acknowledged that a number of other courts had ruled in favor of severance and proceeding in the applicable MDL. *Id.* at 4.

[4] Further, almost all of the cases cited by Plaintiffs on page 5 of their Motion to Remand for the preposition that "an overwhelming number of district courts in the Third Circuit have declined to apply the fraudulent misjoinder doctrine" involved either the alleged fraudulent misjoinder of

1    Medical negligence claims relating to a missed diagnosis years after implantation of a

2    medical device, like the claims against the Health Care Defendants, do not arise from the

3    same transaction or occurrence as product liability claims against a medical device

4    manufacturer.  *Stone v. Zimmer, Inc.*, No. 09-80252-CIV, 2009 WL 1809990, at *2 (S.D. Fla.

5    June 25, 2009) is illustrative on this point.  In *Stone*, the plaintiff underwent implantation of a

6    hip replacement device in 2006 which, unbeknownst to the plaintiff subsequently broke into

7    pieces.  *Id.* at *1.  In 2007, the plaintiff presented to the defendant physician and health care

8    group for pain management.  The physician did not diagnose the fractured hip implant as the

9    source of pain and, instead, treated the plaintiff for chronic myofascial pain.  *Id.*  In 2008, the

10   plaintiff was treated by a non-party physician who ordered an x-ray and discovered the

11   broken hip implant.  *Id.*  The plaintiffs asserted product liability claims against the device

12   manufacturer and medical negligence claims against the physician and health care group that

13   failed to diagnose the fractured hip implant in 2007.  *Id.*

14       In holding that the plaintiffs' claims against the healthcare defendants were

15   fraudulently misjoined to the product liability claims against the medical device

16   manufacturer, the court distinguished cases "where a malpractice claim against a surgeon

17   implanting [or explanting] a medical device is joined with a product liability claim against the

18   manufacturer of that device."  *Id.* at *3.  The Court went on to find that the facts that would

19   support a cause of action against the medical defendants would "involve the quality of

20   medical care given to [the plaintiff] a year after his initial [] implant surgery" with the

21   product-liability defendant's product.  *Id.*  Meanwhile, the facts that would support a claim

22   against the product-liability defendant "instead focus on the design, manufacture and

23   sufficiency of warnings provided with" the product-liability defendant's product.  *Id.*  Finally,

24   as to the evidence required, the court reasoned that the medical-negligence claims "would

25   require evidence on medical care, treatment and services" while the product-liability claims

26

27   ───────────────────────────

     multiple plaintiffs' claims, or the cited cases did not involve product liability claims joined with
     medical malpractice claims.  (Plaintiffs' Motion to Remand, MDL 2641 Dkt. No.  1077, at 5.)
28

1    "would require evidence on the development, manufacture and testing of [the] implant, along

2    with evidence of [the product-liability defendant's] knowledge, warnings and

3    representations." *Id.* at *4.

4            Ultimately, because of these findings, the *Stone* court held that the plaintiffs' claims

5    against the healthcare defendants were fraudulently misjoined to the product liability claims

6    against the medical device manufacturer because the claims did not arise from the same

7    transaction or occurrence. *Id.* Thus, the court severed the misjoined claims and remanded

8    them to state court, while retaining federal jurisdiction over the products liability claims. *Id.*

9    at *1.

10           Other courts agree with the reasoning in *Stone* regarding the misjoinder of medical

11   negligence claims relating to a missed diagnosis after implantation of a subject device with

12   product liability claims against the device manufacturer, and reach the same result. For

13   example, in *DeGidio v. Centocor, Inc.*, No. 3:09CV721, 2009 WL 1867676, at *3 (N.D. Ohio

14   July 8, 2009), the court reasoned that the differences between the medical negligence and

15   product liability claims were exemplified by the fact that the medical defendant did not

16   "prescribe[] or administer[]" the medical product to the plaintiff. Rather, the claims against

17   the medical defendant focused upon separate alleged failures to "timely diagnose [the

18   plaintiff's] condition" and "refer [the plaintiff] to a specialist." *Id.* at *1. Thus, the "claims

19   against the [] defendants involve different legal standards and different factual allegations."

20   *Id.* at *3.

21           Here, the same analysis as in *Stone* and *Centocor, Inc.* applies with the same result.

22   The Health Care Defendants are misjoined because Plaintiffs' claims against them and the

23   Bard Defendants do not arise out of the same "transaction, occurrence, or series of

24   transactions or occurrences." *See* Fed. R. Civ. P. 20(a). Substantively, the basis for the

25   claims against the Health Care Defendants is medical negligence. Plaintiffs allege that they

26   "were negligent in providing healthcare services" with respect to their failure in July 2013 (in

27   Delaware) to properly diagnose the cause of Ms. Fraser-Johnson's chest symptoms and

28

1    determine the source of the wire that was surgically removed approximately eight years after

2    she received the Bard Defendants' IVC filter  (in Pennsylvania) in July 2005.  (Complaint,

3    Dkt. No. 1-2, ¶¶ 19-24, 93.)  In contrast, Plaintiffs' claims against the Bard Defendants arise

4    under product liability and are premised on an alleged failure to properly design and

5    manufacture the IVC Filter and to properly warn of risks allegedly associated with its use

6    prior to Ms. Fraser-Johnson's filter implantation.  (*See id.* at ¶¶ 27-91.)

7         Additionally, the facts and evidence relating to the claims against the Health Care

8    Defendants would be focused on the quality of medical care, treatment, and services provided

9    long after Ms. Fraser-Johnson received the Bard Defendants' product.  Such evidence differs

10   from the pre-implant evidence on design, manufacture, warnings, and knowledge necessary to

11   prove any product liability claim against the Bard Defendants.[5]

12        In short, as the courts in *Stone* and *Centocor, Inc.* held, the subsequent misdiagnosis

13   medical negligence claims (occurring approximately eight years after filter implantation)

14   against the Health Care Defendants are procedurally misjoined from the defect and warnings-

15   based product liability claims against the Bard Defendants.  Thus, the claims against the

16   Health Care Defendants should be severed and remanded and the claims against the Bard

17   Defendants should remain in this MDL, resulting in significant economy to the parties and

18   judiciary.

19

20

21

22   ─────────────────
     [5] Further, under Delaware's application of the Restatement's "most significant relationship test" to
23   determine choice of law, it is likely that a Delaware court would apply Pennsylvania law to
     Plaintiffs' product liability claims against Bard and Delaware law to Plaintiffs' medical
24   negligence claims against the Health Care Defendants.  *See Liggett Grp. Inc. v. Affiliated FM Ins.
     Co.*, 788 A.2d 134, 137 (Del. Super. 2001).  This is because Plaintiffs' product liability claims
25   relate to the design, manufacture, and labeling of Bard's IVC filter before and up to the time it
     was implanted in Ms. Fraser-Johnson in Pennsylvania.  By contrast, the Health Care Defendants'
26   treatment of Ms. Fraser-Johnson and alleged missed diagnosis all occurred in Delaware.  The fact
     that the product liability and medical negligence claims will likely be adjudicated under the laws
27   of different states further shows that these claims do not arise out of the same transaction or
     occurrence.
28

- 10 -

1  **B.     Alternatively, Plaintiffs' Claims Against the Health Care Defendants Should Be**
2       **Severed and Remanded Pursuant to Fed. R. Civ. P. 19 and 21 Because the Health**
3       **Care Defendants Are Not Necessary and Indispensible Parties.**

4       For the reasons set forth in the preceding Section, Plaintiffs' claims against the Health
5  Care Defendants are fraudulently misjoined to the product liability claims against Bard and
6  should therefore be severed and remanded.  In the alternative, if this Court finds that the
7  Health Care Defendants were not fraudulently misjoined, this Court should sever and remand
8  the claims against them pursuant to Federal Rule of Civil Procedure 21 because they are not
9  necessary and indispensable parties under Rule 19.

10      In addition to the cases cited above, numerous other courts have used Rule 21 in
11 conjunction with Rule 19 regarding required joinder of parties to sever and remand medical
12 malpractice actions against nondiverse health care defendants, when they are joined to
13 product liability claims against pharmaceutical or medical device manufacturers (like Bard)
14 and an MDL has been formed.  For example, in *Joseph v. Baxter International, Inc*., 614 F.
15 Supp. 2d 868, 870 (N.D. Ohio 2009), the plaintiffs filed a complaint in state court, alleging
16 wrongful death after the decedent's exposure to the prescription drug Heparin.  The plaintiffs
17 asserted product liability claims against Baxter International, Inc. and medical malpractice
18 claims against the decedent's non-diverse treating physicians and related healthcare entities.
19 *Id*.  A Heparin MDL had been established, and the court concluded that the treating
20 physicians were not indispensable parties under Rule 19 because the "medical malpractice
21 allegations differ from [plaintiffs'] products liability claim, which focuses on Baxter's
22 conduct in designing, manufacturing, labeling and recalling tainted Heparin." *Id*. at 872.  The
23 court then concluded that severance under Rule 21 was appropriate because "the plaintiffs
24 will benefit from the MDL process: they will not bear the burden of having to engage on their
25 own, and at their sole expense, in discovery vis-à-vis Baxter," and "the inconvenience and
26 potential prejudice to Baxter if I remand substantially outweigh the inconvenience and
27 possible prejudice to the plaintiffs from remaining before me."  *Id*. at 873; *see id* at 874

28

(discussing numerous JPML decisions under similar facts, finding that medical malpractice claims do not share sufficient questions of fact in common with product liability claims, and severing and remanding the medical malpractice claims before transfer of the product liability claims to the MDL).  *See also Sullivan v. Calvert Mem. Hosp.*, 117 F. Supp. 3d 702 (D. Md. 2015) (severing medical malpractice claims against nondiverse doctors and hospital to retain jurisdiction over product liability claims against medical device manufacturer before transfer to the MDL, noting that although the two sets of claims "may involve the same physical object that is the source of the products liability claims against the Ethicon Defendants, the medical negligence claims against the Maryland Healthcare Defendants involve legal standards and factual inquiries distinctly different from the products liability claims"); *Mayfield v. London Women's Care, PLLC*, No. 15-19-DLB, 2015 WL 3440492 (E.D. Ky. May 28, 2015) (same); *Cooke-Bates v. Bayer Corp.*, No. 3:10-cv-261, 2010 WL 3984830 (E.D. Va. Oct. 8, 2010) (same).  *See also Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (finding that doctor who performed an implant surgery was not a necessary party to a products liability action against the medical device's manufacturer); *Todd by Todd v. Merrell Dow Pharms., Inc.*, 942 F.2d 1173, 1176-78 (7th Cir. 1991) (finding that medical malpractice defendant was not indispensable in a products liability case against a drug manufacturer). Like the medical negligence claims in these cases, the Health Care Defendants' claims should be severed from the product liability claims against Bard because the Health Care Defendants are not necessary or indispensible parties under Rule 19.

A party is necessary under Rule 19(a) only if "1) relief cannot be accorded without the third party; 2) an adjudication of the parties' rights 'would impair or impede an absent party's ability to protect its interests in the subject matter of the litigation; and 3) there would otherwise be a substantial risk of multiple or inconsistent obligations."  *Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, at 356 n. 7 (E.D. Pa. 2000) (citations omitted).  Further, the factors to determine whether a party is indispensable under Rule 19(b) are (1) the extent to which a judgment rendered in the party's absence might be prejudicial to

any of the parties; (2) the extent to which the prejudice can be lessened or avoided; and (3) whether a judgment rendered in the party's absence will be adequate.  Fed. R. Civ. P. 19(b); *Enza, Inc. v. We The People, Inc.*, 838 F. Supp. 975, 978 (E.D. Pa. 1993).  In their Motion to Remand (MDL 2641 Dkt. No. 1007), Plaintiffs have failed to rebut Bard's showing that the Health Care Defendants are not necessary or indispensible parties based on the above factors.

Instead, Plaintiffs argue that they would suffer prejudice if the Health Care Defendants' claims were severed and that judicial economy requires that those claims and the claims against the Bard Defendants be tried together in state court.  (*See* Plaintiffs' Motion to Remand, MDL 2641 Dkt. No. 1007, at 12-13.)  This is simply not the case.  If this Court does not sever the claims against the Health Care Defendants, it is the Bard Defendants and the Health Care Defendants that would suffer prejudice, not Plaintiffs, who can freely adjudicate their medical negligence claims in state court without Bard.  Failure to sever the Health Care Defendants almost certainly would subject the Bard Defendants to multiple and inconsistent rulings by having this case adjudicated in Delaware state court, while being denied the benefits of centralization that Bard's Filter MDL provides.  *See Sullivan,* 117 F. Supp. 3d at 707 (any inconvenience in pursuing two cases is far exceeded by the prejudice to the manufacturer and would defeat the purpose of an MDL); *Mayfield*, 2015 WL 3440492 at \*5 (noting "the undeniable upside" to the MDL, including lower cost to the plaintiff in litigating against the medical device manufacturer, the plaintiffs' enhanced ability to potentially negotiate a settlement, and the ability to proceed with discovery of the medical malpractice claim in state court immediately and more efficiently); *Joseph*, 614 F. Supp. 2d at 873 (noting that plaintiff will benefit from the MDL process).

Similarly, the Health Care Defendants would suffer prejudice by having to litigate and defend themselves in a product liability case focusing on the design, manufacture, and warnings of Bard's IVC filters prior to July 5, 2005, when those facts have nothing whatsoever to do with whether the Health Care Defendants complied with the medical standard of care eight years later in July 2013.  Lastly, as the JPML found when forming

1    Bard's Filter MDL, adjudicating Plaintiffs' product liability claims in Bard's Filter MDL

2    "will serve the convenience of the parties and witnesses and promote the just and efficient

3    conduct of the litigation."  (*See* MDL No. 2641 Transfer Order, Dkt. No. 6-1.)

4                                    **IV.  CONCLUSION**

5            For the foregoing reasons, and those cited in Bard's Notice of Removal (Dkt. No. 1)

6    and Motion to Sever and Remand (Dkt. No. 5-6), as well as the Health Care Defendants'

7    Joinder in the Bard Defendants' Motion to Sever and Remand (Dkt. No. 11), Bard

8    respectfully requests that the medical negligence claims against Christiana Care Health

9    Services, Inc., Christiana Care Health System, Inc., Thomas Bauer, M.D., and Cynthia Heldt,

10   M.D. be severed and remanded to Delaware state court and that this Court maintain

11   jurisdiction over the product liability claims against C. R. Bard, Inc. and Bard Peripheral

12   Vascular, Inc.

13           This 28th day of March, 2016.

14

15                                   s/Richard B. North, Jr.
                                     Richard B. North, Jr.
16                                   Georgia Bar No. 545599
                                     Matthew B. Lerner
17                                   Georgia Bar No. 446986
                                     NELSON MULLINS RILEY & SCARBOROUGH, LLP
18                                   Atlantic Station
                                     201 17th Street, NW / Suite 1700
19                                   Atlanta, GA  30363
                                     PH: (404) 322-6000
20                                   FX: (404) 322-6050
                                     Richard.North@nelsonmullins.com
21
                                     James R. Condo (#005867)
22                                   Amanda Sheridan (#005867)
                                     SNELL & WILMER L.L.P.
23                                   One Arizona Center
                                     400 E. Van Buren
24                                   Phoenix, AZ 85004-2204
                                     PH: (602) 382-6000
25                                   JCondo@swlaw.com
                                     ASheridan@swlaw.com
26
                                     **Attorneys for Defendants C. R. Bard, Inc. and**
27                                   **Bard Peripheral Vascular, Inc.**

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

3          I HEREBY CERTIFY that on March 28, 2016, I electronically filed the foregoing with

4   the Clerk of the Court by using the CM/ECF system which will send notification of such

5   filing to all counsel of record.

6

7                                                    s/Richard B. North, Jr.
                                                     Richard B. North, Jr.
8                                                    Georgia Bar No. 545599
                                                     NELSON MULLINS RILEY & SCARBOROUGH, LLP
9                                                    Atlantic Station
                                                     201 17th Street, NW / Suite 1700
10                                                   Atlanta, GA  30363
                                                     PH: (404) 322-6000
11                                                   FX: (404) 322-6050
                                                     Richard.North@nelsonmullins.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28