James R. Condo (#005867)
Amanda C. Sheridan (#027360)
**SNELL & WILMER L.L.P.**
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Telephone: (602) 382-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

Attorneys for Defendants C. R. Bard, Inc. and
Bard Peripheral Vascular, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' NOTICE OF SUBMISSION REGARDING PROPRIETY, NECESSITY, AND PROCEDURE FOR EARLY RESOLUTION OF APPLICABILITY OF PLAINTIFFS' CLAIM OF EQUITABLE TOLLING DUE TO FRAUDULENT CONCEALMENT** |

In their Opposition to Defendants' Notice of Submission Regarding Propriety, Necessity, and Procedure for Early Resolution of Applicability of Plaintiffs' Claim of Equitable Tolling, Plaintiffs offer a variety of justifications why the Court should deny Defendants' request. However, none of those reasons warrant the denial of Defendants'

proposal, which sets forth a procedure for the parties to obtain a ruling on the threshold question of whether the statute of limitations can be tolled beyond the time of actual discovery of an alleged injury when the relation of that injury to a Bard product is known. Plaintiffs' motivation in opposing Defendants' proposal is understandable, given the fact that denial of the proposal will make it easier for claims that are time-barred to maintain a low-profile among the sheer volume of cases in this MDL.  But consideration of this issue at this juncture will promote economy and efficiency and, contrary to Plaintiffs' assertions, actual avoid the waste of valuable resources, as set forth in Defendants' Notice of Submission and further discussed below.

### A.  None of Plaintiffs' Objections to Defendants' Proposed Procedure Warrant Its Rejection.

In an effort to prevent a threshold determination of the narrow issue of applicability of Plaintiffs' equitable tolling argument in instances where an injury <u>and</u> the relationship between that injury and a Bard filter are <u>known</u>, Plaintiffs raise a myriad of arguments against the proposal, none of which warrant the Court's rejection of it.

#### 1.  *Discovery Rule*

Plaintiffs first argue that Defendants' proposal "ignores the 'discovery rule' . . . and instead advocates a prophylactic substantive rule that injury alone triggers accrual of the statute of limitations."  Plaintiffs' Response in Opposition at 2.  Plaintiffs either misstate or fail to understand Defendants' proposal. To clarify, at no point in their Notice of Submission do Defendants argue that the discovery rule does not apply in cases in MDL 2641 where the applicable state's law recognizes or employs a discovery rule and, by its own terms, the discovery rule would apply.  In the exemplar motion to dismiss considered in *In Re: Mirena*, the Court analyzed whether, <u>in light of the application of the discovery rule</u>, the plaintiffs' claims were timely brought.  Or, whether, as plaintiffs there argued in vain, alleged concealment of certain facts could equitably toll an applicable statute of limitations beyond the time when a plaintiff knew of (a) an injury, and (b) the relationship between that injury and the defendant's product.  Defendants do not argue that the

doctrine of equitable tolling or statutes of limitations are identical in every state; rather, Defendants argue that the ultimate outcome of certain cases in MDL 2641 would be the same under every state's iteration of the discovery rule.

The example Bard provided in their Notice of Submission pertained to Plaintiff Schweska. Ms. Schweska alleges multiple failed retrieval attempts culminating in surgery to remove her filter (in its entirety) on May 16, 2007.[1] Bard believes that equitable tolling due to alleged fraudulent concealment can not apply to this case under any state's law, and, further, believes that no state's application of the discovery rule could save this case from its inevitable fate of dismissal as a result of being time-barred. Moreover, not a single case included on Plaintiffs' Exhibit 1 would support a finding that Plaintiff Schweska's case was timely brought.

Defendants do not seek to avoid the discovery rule. Rather, it is the doctrine of equitable tolling that cannot obscure the discovery rule in facts such as these, because under no iteration of the discovery rule would Plaintiff Schweska's claims survive. Bard believes the same is true of a number of cases currently in this MDL, and a number of claims that have not yet been filed. The plaintiffs attempt to frame the "core dispute" as revolving around whether or not Bard fraudulently concealed facts related to its products. But that approach endeavors to sidestep the threshold question of whether a limitations period can possibly be tolled where the injury and the injury's relation to the defendant's product are known.

---

[1] Giving Plaintiff all benefit of the doubt, as is appropriate on a motion for summary judgment, Bard does not argue that the limitations period was triggered by a mere failed retrieval, nor that multiple failed retrievals make this case "representative", as Plaintiffs protest at page 8 in their Opposition. Rather, the May 16, 2007, date that Bard identifies as the date upon which the limitations period began running, at the latest, was the date on which Plaintiff Schweska had surgery to have the filter removed in its entirety. She alleges no further sequelae related to the filter after that date. Plaintiffs' "confidence" that "the number of cases involving multiple unsuccessful attempts to remove a filter is relatively small" is irrelevant for purposes of Defendants' proposed motion.

- 3 -

2.  *Latent or Generic Injuries*

The plaintiffs' concern that certain of their cases involve "pains, soreness, or difficulty breathing" – which a jury will have to identify as effects of product malfunction versus foreseeable side effects – is misplaced.  Bard's proposed procedure seeks to test the applicability of equitable tolling in cases where an injury and the relation of that injury to Bard's filter were known.  Bard's proposal does not implicate an instance where the relationship between plaintiffs' generic pain or soreness and a Bard filter was unknown.  The cases at issue are those where there was "no mystery" in the connection between an injury and a Bard filter.  *See In Re: Mirena IUD Prods. Liab. Litig.*, No. 7:14-cv-01675 (S.D.N.Y. July 2, 2014) ("As stated previously, unlike toxic tort or other latent injury cases, there was no mystery that the Mirena had harmed Plaintiff.  Once Plaintiff learned that the Mirena had perforated her uterus and needed to be removed, she had enough information to inquire into causation and, therefore, the statute of limitations began to run.").

3.  *Applicability of Proposed Ruling*

As yet another reason they oppose Bard's proposal, the plaintiffs argue that the Court's determination of this threshold question for a single plaintiff would have no impact on any of the other cases in this litigation.  This position appears to miss the point.  Instead of proposing a procedure that would "likely result in dozens (if not hundreds) of case-specific, state-law-specific motions that must be heard by the Court," as the plaintiffs mistakenly suggest, the procedure employed in *In Re: Mirena*, which is like what Bard suggests here, established a very streamlined process by which defendants would identify via letter to plaintiffs an individual or groups of plaintiffs which Defendants believed are time-barred under the same legal basis as that discussed in the Court's *Truitt* Order.  Upon receipt of such a letter, a plaintiff has 30 days to respond by either filing a dismissal or a 3-page letter establishing why the case is distinguishable from the *Truitt* Order's holding.  After receipt of a plaintiff's letter, the Court would decide whether additional briefing was necessary.  Moreover, instead of the 32 dismissals the plaintiffs concede resulted from the

- 4 -

*In Re: Mirena* procedure, in actuality, <u>more than 160 cases have been dismissed in that litigation pursuant to the procedure set forth in CMO 22A</u>. The vast majority of those have been voluntary dismissals or the result of a plaintiff simply failing or declining to oppose or respond to a letter from Defendants identifying the case as one potentially subject to dismissal pursuant to the *Truitt* ruling.

This Court's ruling on an exemplar motion for summary judgment would provide guidance as to whether equitable tolling is a viable theory with respect to a plaintiff who knew of both the injury <u>and</u> the relationship of that injury to a Bard filter. Defendants are confident that this Court will find equitable tolling does <u>not</u> apply, particularly since Defendants are not aware of a single state's laws that would support equitable tolling under those circumstances.[2] Once the parties have such a ruling, they can govern

---

[2] Defendants believe the plaintiffs are also aware of the absence of case law to support their argument. None of the cases cited in the lengthy 50-state-survey attached as Exhibit 1 to their Response supports a finding that Plaintiff Schweska's claims are timely. In fact, only a handful (five or less) of the cases in Exhibit 1 occur in the pharmaceutical or medical device context, some actually involve a case where the cause of action was for "fraudulent concealment," and some of the cases completely undermine the plaintiffs' argument. An example is a Kentucky case, *Fluke v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010). In Exhibit 1, the plaintiffs' parenthetical of *Fluke* states: "Under Kentucky's discovery rule, 'a cause of action will not accrue until the plaintiff discovers (or in the exercise of reasonable diligence should have discovered) not only that he has been injured, but also that this injury may have been caused by the defendant's conduct." And that's where the plaintiffs' parenthetical ends. However, in the very next sentence, the case continues: "*But the discovery rule is available only in cases where the fact of injury or offending instrumentality is not immediately evident or discoverable with the exercise of reasonable diligence, such as in cases of medical malpractice or latent injuries or illnesses.*" *Id.*, emphasis added.

Another example of a case relied upon by plaintiffs that support Defendants' position rather than the plaintiffs is the case *Timberlake v. A.H. Robins Co.*, 727 F.2d 1363 (5th Cir. 1984). In *Timberlake*, the plaintiff had an IUD implanted after which she developed pelvic inflammatory disease and had the IUD removed. She later required a hysterectomy, which her surgeon told her at the time had been caused by the IUD. However, the plaintiff did not file a cause of action until after the statute of limitations had run and after she had seen a lawyer advertisement regarding the device. The court held that the statute of limitations began to run when her doctor informed her that her injuries were caused by the device, not when she saw the advertisement and discovered alleged wrongdoing by the manufacturer. The court rejected the plaintiff's fraudulent concealment argument, stating, "*Even if we assume that Robins had a duty to reveal and instead concealed defects in the Dalkon Shield, Timberlake's actual knowledge of her injury and its cause was adequate to put her on notice that she had a cause of action.*" The court further noted that nothing prevented the plaintiff from undertaking an investigation or filing suit, and that there could be no fraudulent

themselves accordingly, whether by identifying by letter additional cases that should likewise be dismissed, or by filing with impunity cases like Ms. Schweska's, where the only medical sequalae due to the filter, and known at the time to have been related to the filter, occurred more than 8 years before the case was filed. Most importantly, the parties will be relieved of having to expend significant resources conducting full blown discovery and work-up for bellwether trial one or more cases which are destined to be dismissed on summary judgment, based on facts that are currently known to all.

**B. The Procedure Proposed By Defendants Will Promote Economy and Efficiency, As Well As Provide Certainty For All.**

In their Opposition, the plaintiffs profess concern that it would be "counter-productive for the parties to invest considerable MDL time and effort – likely to the delay of other universally common issues" on this issue. The Defendants could not disagree more.

In *In Re: Mirena*, Judge Seibel cited the impending bellwether discovery process as a critical reason why the "slight detour" of considering the defendants' exemplar motion was worth the trip, stating, with respect to the bellwether process, "[i]t will be a shame if we picked a case that then went away on Statute of Limitations grounds, then we have to go back and find another one." Here, Plaintiffs seem to welcome the prospect of expending significant time, expense, and effort conducting full-blown discovery, including: record collection; depositions of plaintiffs, fact witnesses, and treating physicians; and expert reports and expert depositions on one or more cases, only to have them dismissed based on statute of limitations grounds. Defendants do not share in Plaintiffs' enthusiasm for embarking upon an avoidable expenditure of such resources when all facts necessary to the implementation of the process Defendants propose are known to all right now. Whether or not the statute of limitations can be tolled beyond the

---

concealment of facts that were or should have been known by the plaintiff. *Id., emphasis added.*

- 6 -

1  time of actual discovery of an injury and that injury's relation to a Bard product is a
2  question that is ripe for determination.

3        Practically speaking, there are, of course, other reasons why Defendants do not
4  believe this question is one best left to the bellwether process.  Following the plaintiffs'
5  suggestion of letting this question be one determined by the bellwether process to its
6  logical conclusion, what then?  If Plaintiff Schweska was picked by the parties (almost
7  certainly by Defendants rather than plaintiffs) as a bellwether case and ultimately
8  dismissed on summary judgment, to what process could Defendants turn to have similarly
9  situated cases likewise dismissed?  Defendants' options at that point would like be to (a)
10 request this Court adopt a procedure at that time like what they now propose, or (b)
11 request that all cases be remanded for all additional case-specific discovery and
12 dispositive motions practice. Neither option furthers the goals of judicial economy or
13 efficiency.

14       That the plaintiffs are so vehement that the recesses of this corner of the law
15 remain unexplored for as long as possible is understandable.  However, as set forth in
16 their Notice of Submission, Defendants believe that their proposed procedure will not
17 only impact a number of cases currently in the MDL, as well as potentially alleviating the
18 parties from having to conduct full-blown discovery on one or more cases that are clearly
19 time-barred but for equitable tolling, Defendants also believe that the proposed procedure
20 will have a substantial impact on a number of claims that have not yet been filed.

## **CONCLUSION**

22       Plaintiffs' objections to Defendants' proposal do not warrant its rejection.  For the
23 reasons stated herein, as well as its Notice of Submission Regarding Propriety, Necessity,
24 and Procedure for Early Resolution of Applicability of Plaintiffs' Claim of Equitable
25 Tolling Due to Fraudulent Concealment, Defendants request that the Court enter a case
26 management order that sets forth a procedure for resolution of one or more exemplar cases
27 by way of dispositive motion, such as that set forth in Defendants' Proposed Case

1 Management Order regarding Early Resolution of Issues Related to Statutes of
2 Limitations.

3     DATED 11th day of April, 2016.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/ Richard B. North, Jr.
Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
201 17th Street, NW, Suite 1700
Atlanta, GA 30363

James R. Condo
Amanda C. Sheridan
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2202

Attorneys for C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2016, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

 s/ Richard B. North, Jr.
Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Nelson Mullins Riley & Scarborough LLP
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Attorneys for C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.