**EXHIBIT E**

| Section 1.a. of Letter dated April 4, 2016 |

### Plaintiffs' Examples

| Log | Control | Date | Author | Recipient | CC | Description | Privilege | Bates Begin | Bates End | Plaintiffs' Challenge | Bard's Response |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Log 2 | 809 | 7/18/2005 | Wendy Hayes | Brian Brown; Mandy Ferrin; Kellee Jones; Judy Ludwig; Stephanie Lyke; Leigh Toole; Cindi Walcott | Richard Bliss (Consultant) | Email regarding legal advice of Suzanne Carpenter (Litigation Manager) about pending litigation provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | Bard has failed to establish that the communication was made for the primary purpose of obtaining legal advice. First, Ms. Carpenter is not a lawyer and, therefore, cannot give legal advice. Second, Bard has not provided any facts suggesting how the matter being discussed is of legal importance. Finally, any privilege was waived by disclosure to Mr. Bliss. | This is an email about a pending lawsuit involving communications with Suzanne Carpenter, a paralegal in Bard's Law Department. Ms. Carpenter worked at the direction of in-house counsel at Bard. (See Ex. I, Camarata Declaration Paras. 2-7.) The communication also involves Richard Bliss, who worked at Bard as the functional equivalent of a Bard employee. (See Ex. H, Carr Declaration Para. 5.) Bard incorporates its Memorandum Sections B.3.and B.5. Bard notes that, while not listed on the log, this document is also work product and incorporates Section C. |
| Log 6 | 8 | 2/20/2012 | N/A | N/A | | Portion of document seeking legal advice of Sabina Downing (Litigation Manager), and Suzanne Carpenter (Litigation Manager), about Filter litigation. | Attorney-Client Privilege; Work Product | BPVEFILTER-01-00100020 | BPVEFILTER-01-00100020 | This is a document dated February 20, 2012 with no listed author or recipient. Bard claims privilege and work product protection on the basis that it reflect "legal advice" that was sought from two non-lawyer employees, Sabina Downing and Suzanne Carpenter, about filter litigation. Bard refers to these employees as "Litigation managers." Bard has failed to establish privilege as no facts have been presented supporting that the communication reveals a solicitation for or a rendering of legal from a lawyer. Bard has also failed to establish work product protection as no facts were presented to indicate that this communication was not made because of normal business activities, i.e. investigation and creation of complaint files as required by the FDA. Finally, Bard has not acted to preserve confidentiality given that the allegedly protected material is kept in the general complaint database that anyone at Bard can access. | This spreadsheet was produced in redacted form at cells H71 and H288 on the "All Filter complaints" tab. The redacted portions are comminications within the Bard legal department relating to information gathered for purposes of on-going litigation. The communications involve Sabina Downing and Suzanne Carpenter, paralegals in Bard's Law Department who worked under the direction of in-house counsel. (See Ex. I, Camarata Decl. Paras. 2-7.) Bard incorporates its Memorandum Sections B.3 and C. |
| Log 6 | 193 | 10/11/2005 | Kellee Jones | Rich Bliss | | Email reflecting legal advice of Sabina Downing (Litigation Manager) about potential adverse events provided to employees who need the information to perform their job function. | Attorney-Client Privilege; Work Product | BPVEFILTER-01-00120409 | BPVEFILTER-01-00120410 | The entry involves a communication from Kellee Jones (Executive Administrative Assistant) to Rich Bliss (third party consultant) allegedly communicating independent legal advice of Sabina Downing (non-lawyer) "about potential adverse events." Bard's claim of attorney-client privilege should be denied for numerous reasons. First, Bard has failed to establish that the communication involves a request for legal advice from a lawyer. "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining *legal* advice *from the lawyer.*" Richey, 632 F.3d at 566 n. 3 (quoting *United States v. Gurtner*, 474 F.2d 297, 299 (9th Cir. 1973) (emphasis in original) (other quotation marks and citation omitted). Yet, here Bard is claiming that privilege should attach because a non-lawyer is independently giving legal advice. Second, the communication involves a normal business activity that Bard would have been required to conduct regardless of litigation, i.e. investigation of adverse events and, if and what type of corrective action is necessary. Further any claims of attorney-client privilege has been waived and work product cannot apply as Bard has not established any facts supporting that Mr. Bliss was retained by Bard's lawyers to help prepare for litigation or that he was merely helping Bard's lawyers interpret already privileged material. | This email is a request from the in-house law department for information that it needed relating to litigation at the time. The communications involve Sabina Downing and Suzanne Carpenter, paralegals in Bard's Law Department who worked under the direction of in-house counsel (see Ex. I, Camarata Decl. Paras. 2-7); Donna Passero, who was Bard's in-house counsel responsible for litigation (see Ex. G, Passero Decl. Para. 3-5); and Richard Bliss, who worked at Bard as the functional equivalent of a Bard employee (see Ex. H, Carr Declaration Para. 5.) Bard incorporates its Memorandum Sections B.3., B.5., and C. |

### Bard's Examples

| Log | Control | Date | Author | Recipient | CC | Description | Privilege | Bates Begin | Bates End | Plaintiffs' Challenge | Bard's Response |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Log 3 | 3184 | 9/29/2009 | Cindi Walcott | Brian Hudson | | Email with legal advice of Suzanne Carpenter (Litigation Manager) about litigation file created in anticipation of and furtherance of litigation and provided to employees who need the information to perform their job functions. | Attorney-Client Privilege; Work Product | | | Bard describes the entry as an email dated September 29, 2009 from Cindi Walcott (Field Assurance Manager) to Brian Hudson (Quality Engineering Manager) regarding legal advice of Suzanne Carpenter (non-lawyer) about a litigation file. First, this cannot be legal advice as Ms. Carpenter is not a lawyer. Second, Bard has failed to establish attorney-client privilege or work product as it has not established that this communication involved legal matters or that it would not have been created in substantially the same manner absent litigation. These employees are tasked with investigating reported adverse events and ensuring adequate corrective actions to prevent further failures as part of Bard's mandatory requirements under FDA regulations. There is nothing to suggest that they are doing anythign different here, regardless of whether the adverse event was reported as part of a lawsuit or directly from a doctor. | This is an example of a communication from Suzanne Carpenter, a paralegal in Bard's Law Department. Ms. Carpenter worked at the direction of in-house counsel at Bard. It communicates about a pending lawsuit and activities to take place because of it. (See Ex. I, Camarata Decl. Para. 3.) Bard incorporates its Memorandum Sections B.3. and C. |
| Log 3 | 2244 | 10/7/2009 | DeAnn Goodrich (Paralegal) | Jeffrey Pellicio | Bret Baird; Dara Englert (Trademark Manager) | Email containing legal advice of DeAnn Goodrich (Trademark Manager) regarding trademark registration. | Attorney-Client Privilege | | | Bard has failed to establish that the primary purpose of the communication was to obtain legal advice from a lawyer. The person alleged to be giving legal advice, is not a lawyers and, therefore, privilege cannot apply. | This is an example of a communication from DeAnn Goodrich, a intellectual property paralegal in the Bard Law Department, relating to information necessary for registration of a trademark. Ms. Goodrich worked at the direction of in-house counsel at Bard. (See Ex. I, Camarata Decl. Para. 3.) Bard incorporates its Memorandum Section B.3 |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| <td colspan="12" style="text-align:center">**Section 1.b. of Letter dated April 4, 2016**</td> |
| <td colspan="12" style="text-align:center">**Plaintiffs' Examples**</td> |
| **Log** | **Control** | **Date** | **Author** | **Recipient** | **CC** | **Description** | **Privilege** | **Bates Begin** | **Bates End** | **Plaintiffs' Challenge** | **Bard's Response** |
| Log 3 | 2295 | 2/1/2010 | Dara Englert (Trademark Manager) | Bret Baird | DeAnn Goodrich (Paralegal) | Email regarding legal advice about trademark issues. | Attorney-Client Privilege | | | Bard has failed to establish that the primary purpose of the communication was to obtain legal advice from a lawyer. The person alleged to be giving legal advice, is not a lawyers and, therefore, privilege cannot apply. | This communication is from Dara Englert, a paralegal in Bard's Law Department working under the direction of counsel. Ms. Englert is relaying legal information concerning an intellectual property matter. (See Ex. I, Camarata Decl. Para. 2-7.) Bard incorporates its Memorandum Section B.3. |
| Log 3 | 3028 | 2/5/2009 | Jon Conaway | Gin Schulz | Mike Randall; Robin Smithson | Email and attachments reflecting request for legal advice of Gina Dunsmuir, Esquire and Greg Dadika, Esquire about product risk review provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | This entry contains an email chain that has now been produced and an attachment that is still being withheld. The email chain begins with an email from Mike Randall dated February 5, 2009 to Brett Baird (Marketing Manager), Genevieve Balutowski (Regulatory Affairs Specialist), Jon Conaway (Quality Assurance), John Reviere (Director, Clinical Affairs), and Robert Carr with a subject line entitled "G2 Expand Completed Action item Summary." In the Body he requests review and comment on the draft so he can send it out "today". On the same day he responds to the same people that the summary has been updated based on their feedback. Jon Conaway then sends an email with the attached "G2 Expand Meeting Action Item Summary Final" to gin Schulz, Mike Randall and Robin Smithson requesting to speak ASAP. Bard claims the attachment reveals legal advice about a product risk review. Bard has failed to establish any facts suggesting the attachment was prepared for the primary purpose of soliciting legal advice. There are no lawyers involved in the email chain or listed as authors of the attachments. Further, the attachment seems to relate to a marketing and/or business plan relating the the G2 Filter. There does not appear to be anything indicating legal significance to the document. The emails also clearly indicates that the attachment was prepared by non-lawyers. | The e-mail attaches a memorandum that was prepared at the the request and direction of counsel, including Gina Dunsmuir and Greg Dadika, relating to regulatory compliance and litigation issues at the time. Non-attorneys who received the memorandum needed the information to perform their jobs. (See Ex. I, Camarata Decl. Para.2-7.) Bard incorporates its Memorandum Sections B.2.and B.4. |
| Log 4 | 29 | 5/10/2001 | Elizabeth Dunn (Bard Law Department) | Suzanne Carpenter (Paralegal) | | Fax regarding product failure analysis to Suzanne Carpenter (Litigation Manager) sent in furtherance of providing information to the legal department needed for providing legal advice. | Attorney-client privilege | | | This is described as a fax transmission dated May 10, 2001 from Elizabeth Dunn (non-lawyer) to Suzanne Carpenter (non-lawyer) regarding a "product failure analysis." Bard's claim of attorney-client privilege should be denied as Bard has failed to establish that the communication reveals a request for or rendering of advice from a lawyer, and because Bard failed disclose any facts suggesting legal advice was being provided or solicited. Notably, the communication does not involve a lawyer and Bard has refused to identify any specific lawyer that was associated with this communication. | This document was produced with handwritten comments on the first two pages redacted. The redactions are commnications to Suzanne Carpenter, a paralegal in Bard's Law Department who worked at the direction of in-house counsel, providing her information that she requested to be gathered for the Law Department. (See Ex. I, Camarata Decl. Para. 2-7.) Bard incorporates its Memorandum Section B.3. |
| <td colspan="12" style="text-align:center">**Bard's Examples**</td> |

Chart of the Parties' Privilege Log Examples
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Log 6 | 191 | 2/21/2013 | Mike Connors | Alex Tessmer | | Email reflecting legal advice of the Bard Legal Department about filter litigation preparation and discovery provided to employees who need the information to perform their job function. | Attorney-Client Privilege; Work Product | | | The entry is described as an email between between Mike Connors (programmer) and Alex Tessmer (engineer) allegedly "reflecting legal advice" of "Bard's Legal Department." Bard's claim of attorney-client privilege should be denied as Bard has failed to establish that communication reveals a request to or rendering of advice from a lawyer, disclose any facts suggesting legal advice was being provided or solicited, or that confidentiality was maintained. Notably, the communication does not involve any lawyer and Bard fails to identify any specific lawyer that was solicited to provide and/or did provide legal advice. Bard's mentions the law department, but as seen elsewhere Bard believes non-lawyers may give their own independent legal advice. Bard has also failed to provide sufficient facts establishing that the communication was prepared because of anticipiated litigation. | Plaintiffs challenge this entry as not being between lawyers. This is an example of work product. The email is between a representative of Bard's ESI vendor and employees of Bard regarding additional ESI seraches to be done. It is passed on to the people at Bard who are involved and necessary to the search. Bard incorporates its Memorandum Sections B.3 and C. |
| Log 3 | 57 | 9/2/2010 | Cindi Walcott | Bret Baird | Brian Hudson; Bill Little; John Van Vleet | Email requesting and reflecting legal advice of Greg Dadika, Esquire about a patient inquiry provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | Log 3, Nos. 57, 127-130, 135 and 136 are all similiar. This is a long email chain that begins on September 1, 2010 with a communication from a patient with a G2 Filter asking whether the risk of failure goes up the longer these devices are left in place. He asks if he should worry and mentions he cannot get an answer form his doctor. There are then a series of internal emails that eventually lead to an in-house lawyer being asked to comment on how Bard should respond. To the extent that the in-house lawyer is merely parroting Bard's position on what to tell or not tell such patients, this is not legal advice. Further, given his response is likely being taken and shared with the public, the communication is not meant to be confidential. | Plaintiffs challenge this as a communication not involving a lawyer and not providing legal advice. The redacted portion clearly reflects the legal advice of Bard inhouse counsel Greg Dadika. (See Ex. I, Camarata Decl. Para. 3.) Bard incorporates its Memorandum Sections B.1., B.2. and B.4. |

| Section 2 of Letter dated April 4, 2016 |||||||||||
|---|---|---|---|---|---|---|---|---|---|---|
| Plaintiffs' Examples |||||||||||
| Log | Control | Date | Author | Recipient | CC | Description | Privilege | Bates Begin | Bates End | Plaintiffs' Challenge | Bard's Response |
| Log 2 | 403 | 10/3/2005 | Janet Hudnall | Shari Allen | Kevin Shifrin | Email and attachments regarding legal advice of Donna Passero, Esquire about G2 sales force call provided to employees who need the information to perform their job functions at the direction of counsel. | Attorney-Client Privilege | | | Bard's claim of attorney-client privilege should be denied as Bard has failed to: establish that the communication reveals a solicitation for or rendering of advice from a lawyer, discloses any facts suggesting legal advice was being provided or solicited, or that confidentiality was expected or maintained. The communication does not include legal personnel.  Bard has also failed to identify who authored the attachments.  Further, the communications do not involve a legal matter. Instead they involve a traditional business matter, promotional and marketing practices. See, *Phillips v. C.R. Bard, Inc*., 290, F.R.D. 615, 644, 653-654 (D. Nev. 2013)(finding Joint Selection No. 5 (Sales Communication) and No. 29 (Colleague letter) not privileged). Bard has also failed to identify who authored the attachments. | This document was redacted for attorney-client privilege.  The redacted sentence contains legal advice from Donna Passero, Bard's in-house counsel, regarding a regulatory compliance matter.  The attachments to the email were withheld as attorney-client privilege because they reflect material gathered at Ms. Passero's request. (See Ex. G, Passero Decl. Paras. 3-5; Ex. I, Camarata Decl. Paras. 2-7.) Bard incorporates its Memorandum Section B.1. |
| Log 3 | 1697 | 12/6/2006 | Robert Carr | John McDermott; Carl Rickenbaugh | Janet Hudnall | Email regarding legal advice of Thomas Conniff, Esquire about a draft term sheet provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | This is basically the same as entry 1569 from log 3. This is an email chain involving Bard's negotiations to buy an safer IVC filter design from Phase One Medical.  The first email sent by Carl Rickenbaugh on December 5, 2006 to Thomas Connif (outside counsel) and Luke Harada (VP Business Development) and copied to Robert Carr, John McDermott (BPV President), Kevin Shifrin (VP Marketing), Bob Mellen (VP Planning and Business Development), Janet Hudnall (Marketing Manager), and Bill Krueger (Finance Manager) with a subject line "Phase One Term Sheet." He then goes on to discuss his negotiations with Phase One and his advice for moving forward. Importantly, he does not request any legal advice. Bard has now produced the email but has redacted significant parts of Mr. Rickenbaugh's advice and planning. Bard privilege redacted should be overruled as Bard has not established that this communication as made for the primary purpose of requesting legal advice. Indeed, the author is simply providing his own advice for moving forward. The email simply reflect a business negotiation being done by a non-lawyer. Further, Bard fails to explain why people such as to why the marketing employees would need sensitive legal information. | This document relates to a potential transaction between Bard Peripheral Vascular and a company called Phase One Medical.  Thomas Conniff was Bard's inhouse counsel responsible for providing legal advice on the potential transaction. (*See* Ex. H, Carr Decl. Para. 8.)  The information was provided to him for his legal advice and to advise others in the company working on the transaction.  Bard incorporates its Memorandum Section B. |
| Log 6 | 65 | 1/20/2010 | John Van Vleet | John DeFord | | Email and attachments reflecting legal advice of Gina Dunsmuir, Esquire about promotional practices provided to employees who need the information to perform their job function. | Attorney-Client Privilege | | | Bard's claim of attorney-client privilege should be denied as Bard has failed to: establish that the communication reveals a solicitation for or rendering of advice from a lawyer, disclose any facts suggesting legal advice was being provided or solicited, or that confidentiality was maintained.  The communication does not include legal personnel. Instead it is a communication between two regulatory and clinical affairs employees John Van Vleet and John Deford.  Further, the email does not appear to involve a legal matter. Instead it appears to involve a traditional business matter, promotional and marketing practices. See, *Phillips v. C.R. Bard, Inc*., 290, F.R.D. 615, 644, 653-654 (D. Nev. 2013)(finding Joint Selection No. 5 (Sales Communication) and No. 29 (Colleague letter) not privileged). Bard has also failed to identify who authored the attachments. Finally, to the extent the attachments represent a discussion of a quality audit, such activity was required by a business requirement under 21 C.F.R. 820.22. | Bard previously produced the cover email, but wittheld the attachment as attorney-client privilege.  The attachment reflects legal advice of both in-house and outside counsel regarding improper competitor marketing, which encompasses regulatory and potentially adversarial legal issues.   Bard incorporates its Memorandum Section B.2. |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Bard's Examples** | | | | | |
| Log 3 | 1694 | 6/8/2007 | Carl Rickenbaugh | Robert Carr; Thomas Conniff, Esquire; Robert Coyne, Esquire; Luke Harada; Kevin Kramer, Esquire | | Email and attachments regarding legal advice about a negotiation letter for potential acquisition. | Attorney-Client Privilege | | | This is another communication regarding Bard's negotiation to buy another safer alternative design filter from Phase One Medical. Bard privilege claim fails as the primary purpose of the communication was not to obtain or provide legal advice. As seen in Log 3, Nos. 1569 and 1697, Carl Rickenbaugh was the one doing the negotiating and providng advice and planning on how to move forward. There is no suggestion that he was requesting legal advice from these lawyers. | This is an email from outside counsel for Bard forwarding a letter he drafted to respond to opposing counsel regarding the negotiations with Phase One Medical. (*See* Ex. H, Carr Decl. Para. 8.) Bard incorporates its Memorandum Section B.1. |
| Log 2 | 741 | 10/6/2004 | Glenn Norton | Kim Gonzales | | Email conveying legal advice from Bard Corporate Legal Department (Gary Mitchell) about product IFU changes and provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | Bard has failed to establish that the email was sent for the primary purpose of obtaining legal advice. No lawyer is listed as being part of the communication. Nor is there an explanation as to how the lawyer's advice regarding changes to the IFU has legal importance. Unless the lawyer is discussing proposed changes and identifying potential resulting legal implications, privilege should not apply. | This is an email chain regarding the draft of the Recovery filter IFU. Plaintifs claim it does not seek or provide legal advice. However, the email is directed to Bard inhouse counsel, Gary Mitchell and he provides legal advice regarding the UCC. That information is then passed on to others within Bard who need it. Bard incorporates it Memorandum Sections B.1., B.2. and B.4. |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| <td colspan="12">**Section 3 of Letter dated April 4, 2016**</td> |
| <td colspan="12">**Plaintiffs' Examples**</td> |
| Log | Control | Date | Author | Recipient | CC | Description | Privilege | Bates Begin | Bates End | **Plaintiffs' Challenge** | **Bard's Response** |
| Log 1 | 115 | 3/18/2005 | John Lehmann | David Ciavarella | Richard Holcomb; Chris Ganser; Brian Barry; Donna Passero, Esquire. | Email from John Lehmann regarding Recovery® Filter clinical data and attaching spreadsheet pursuant to 11/24/04 contract with the Bard legal department | Attorney-client privilege Work product | | | Bard's December 2004 Health Hazard Evaluation advised that Bard should evaluate a the possibility of clincial trial to assess the risks and benfits of the Recovery Filter in light of substantially higher reported failure rates. Bard then used Dr. Lehmann and Richard Holcomb to perform that assessment. There is no question that this assessment would have been performed in a substantially similiar manner regardless of litigation and there were sufficient motivating business reasons for performing it. Bard should not be allowed to manufacture a privilege over a planned and required business activity by simply using in-house counsel to outsource the work to "consultants." Thus Bard has failed to establish that the primary purpose of the communication was to obtain or provide legal advice, or that the communication was performed "because of" anticipated litigation. The Phillips court in found Joint Selection No. 26 discussing Dr. Lehman's and Mr Holcombs work regarding the clincial study strategies to not be protected. , Phillips v. C.R. Bard, Inc., 290, F.R.D. 615, 652-53 (D. Nev. 2013) | This document is a communication from Dr. John Lehmann as part of his November 2004 contract with Bard's Law Department. The communication specifically provides that it is "Privileged and confidential Attorney work product Pursuant to contract dated 11/24/2004," and reflects subject matter described in Schedule A of the November 2004 contract with Bard's Law Department. The plaintiffs are inaccurate in their description of the *Phillips* Court's findings. Richard Holcomb, who was also a consultant to Bard's Law Department in anticipation of litigation, is cc:ed on the communication in furtherance of his work for the Law Department. (*See* Ex. G, Passero Decl. Paras. 12, 13 and 18.) Bard incorporates its Memorandum Sections B.2 and C. |
| Log 2 | 403 | 10/3/2005 | Janet Hudnall | Shari Allen | Kevin Shifrin | Email and attachments regarding legal advice of Donna Passero, Esquire about G2 sales force call provided to employees who need the information to perform their job functions at the direction of counsel. | Attorney-Client Privilege | | | Bard's claim of attorney-client privilege should be denied as Bard has failed to: establish that the communication reveals a solicitation for or rendering of advice from a lawyer, discloses any facts suggesting legal advice was being provided or solicited, or that confidentiality was expected or maintained. The communication does not include legal personnel. Bard has also failed to identify who authored the attachments. Further, the communications do not involve a legal matter. Instead they involve a traditional business matter, promotional and marketing practices. See, *Phillips v. C.R. Bard, Inc* ., 290, F.R.D. 615, 644, 653-654 (D. Nev. 2013)(finding Joint Selection No. 5 (Sales Communication) and No. 29 (Colleague letter) not privileged). Bard has also failed to identify who authored the attachments. | The plaintiffs also challenged this document as part of "Category 2" in their April 4, 2016, letter. (Ex. B, Ltr. from Counsel for Pls. to Counsel for Bard, Apr. 4, 2016.) As Bard stated in response to the Category 2 challenge, this document was redacted for attorney-client privilege. The redacted sentence contains legal advice from Donna Passero, Bard's in-house counsel, regarding a regulatory compliance matter. The attachments to the email were withheld as attorney-client privilege because they reflect material gathered at Ms. Passero's request. (See Ex. G, Passero Decl. Para. 3-5; Ex. I, Camarata Decl. Para. 2-7.) Bard incorporates its Memorandum Section B.1. |
| Log 3 | 334 | 3/24/2006 | Janet Hudnall | Gin Schulz | | Email reflecting legal advice of Brian Leddin, Esquire about phone call from customer and provided to employees who need the information to perform thei job functions. | Attorney-Client Privilege | | | This entry consists of an email chain regarding a hospital risk manager calling about two adverse events, including death case, and about whether Bard reported these to FDA. Bard has failed to establish that the rdacted communicaitons reveal a request for or rendering of legal advice. The subject matter invovled seems to be a simply business matter, where the events reported or not. Further, to the extent that the in-house lawyer is simply parroting the company approved message, that certainly would not be privileged. Further to the extent that anything said by the lawyer was shared with the risk manager, confidentiality would not exist. | This document was produced with a redacted sentence that reflects the legal advice of Brain Leddin, an in-house attorney at Bard, regarding how to respond to a call from a hospital's risk management department. Bard incorporates its Memorandum Sections B.1 and B.2. |
| <td colspan="12">**Bard's Examples**</td> |

Chart of the Parties' Privilege Log Examples
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Log 2 | 794 | 7/28/2004 | Cindi Walcott | Robert Carr | Chris Dorvee; Don vonLinden | Email conveying legal advice of Donna Passero, Esquire about testing on Recovery Filters conducted in anticipation of litigation and provided to employees who need the information to perform their job functions. | Attorney-Client Privilege; Work Product | | | Bard has failed to establish that the communication was created in anticpation of litigation and would not have been created in substantially similar form otherwise. Bard has also failed to establish that the primary purpose of the communication was to provide or obtain legal advice. No lawyers are listed as being a party to the communication. The employees invovled are the ones that would typically test returned product as part of Bard's general requirement to test all returned product associated with adverse events and/or exemplar products to determine the cause of failures. Bard has not established any facts suggesting that Bard's lawyers requested this action be done or that it was being done to prepare for litigation. See *Phillips* order discussing Joint Selection 27, which found work product did not apply where there no declaration stating the testing had been ordered by Bard's attorneys. | Plaintiffs challenge this as being a business purpose rather than legal advice. However, the email clearly reflects the legal advice of Donna Passero. (*See* Ex. G, Passero Decl.) Bard incorporates its Memorandum Secions B.1., B.2. and B.4. |
| Log 5 | 203 | 4/19/2004 | Brian Barry | John Lehmann | | Email reflecting information provided to Donna Passero, Esquire for purposes of obtaining legal advice about product complaint and provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | This is an email dated April 19, 2004 from Brian Barry to John Lehmann, in which Mr. Barry thanks Dr. Lehmann for his "Review of Miami Recovery patent autopsy report." There is a prior email that is redacted, which likely contained factual information about the deceased patient. Bard claims attorney-client privilege because the review was allegedly commissioned by Donna Passero. Bard's claim should be denied as Bard cannot show that the primary purpose of Dr. Lehmann's review was to obtain legal advice. Bard is required under 21 C.F.R. 820.100 to investigate adverse events, to determine if corrective action is needed, and to ensure such action is sufficient to prevent future failures. Indeed, Bard's prior Remedial Action Plans and Health Hazard evaluations included an analysis by Dr. Lehmann of the autopsy. Thus, there was clearly a sufficient business reason for this review to have occurred. The question becomes, therefore, can Bard use its in-house counsel as a middleman to redistribute normally required business activities so as to obtain privilege. The answer should be no. *See , United States v. Chevron Texaco Corp.* , 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2001),"[n]o privilege can attach to any communication as to which a business purpose would have served as a *sufficient cause,* i.e., any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice." | Again, this email reflects a request for information from Bard inhouse counsel Donna Passero. See Declaration of Passero. The email reflects that Ms. Passero requested a review of information regarding a patient with a Bard filter and the information and analysis was provided by then then Bard Medical Director, Dr. John Lehmann. Bard incorporates its Memorandum Secions B.1., B2. and B.4. FInally, Bard notes that the Court in *Phillips* found a similar document to be privileged in Joint Selection No. 7 |

Chart of the Parties' Privilege Log Examples
*In Re: Bard IVC Filters Products Liability Litigation*

| Section 4 of Letter dated April 4, 2016 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Plaintiffs' Examples** | | | | | | | | | | | |
| Log | Control | Date | Author | Recipient | CC | Description | Privilege | Bates Begin | Bates End | Plaintiffs' Challenge | Bard's Response |
| Log 2 | 293 | 12/30/2004 | Mary Edwards | Pat Rodewald | Shari Allen | Email and attachments regarding legal advice of Judith Reinsdorf, Esquire and Donna Passero, Esquire about sales communication provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | Bard's claim of attorney-client privilege should be denied as Bard has failed to establish that the communication made for the primary purpose of obtaining legal advice. No lawyer is listed an a party to the communication or as an author to the attachments. Further, a sales commmunication is a general business matter and ceranily is not a traditionally legal instrument once would expect lawyers to comment on. | This is an email discussing edits that Bard's Law Department made to a draft communication. The attachment incorporates the edits that two Bard attorneys, Judith Reinsdorf and Donna Passero, made to the draft. Bard incorporates its Memorandum Section B.2. |
| Log 3 | 1965 | 12/6/2006 | Brian Hudson | Stephanie Klocke; Natalie Wong | | Email and attachments regarding legal advice of Brian Leddin, Esquire about G2 Jugular R002 provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | Bard's claim of privilege should be denied as Bard has failed to establish that either the email or attachment was made for the primary purpose of requesting or providing legal advice. There is no question that Bard had an independent business duty under the FDA regulations (21 C.F.R. § 820.100) and its own procedures . (RA-STD-002 procedure, Ex. 2).Thus, there was a separate and sufficient cause for these communications to have taken place. Further, simply providing line edits on a non-traditional legal instrument is generally considered a general business matter. | The email notes that comments of in-house counsel, Brian Leddin, are incorporated into the attached document. Mr. Leddin's comments in the attachment concern regulatory compliance. The recipients who were forwarded the legal advice needed the information to perform their jobs. (*See* Ex. I, Camarata Decl. Paras. 2-7.) Bard incorporates its Memorandum Sections B.2. and B.4. |
| Log 6 | 54 | 9/23/2010 | Patty Christian | John DeFord | Gina Dunsmuir, Esquire | Email reflecting legal advice of Gina Dunsmuir, Esquire about the response to a request for information provided to employees who need the information to perform their job function. | Attorney-Client Privilege | | | This an email chain with an attachment, with the first email being sent by Gina Dunsmuir (in-house counsel) on September 23, 2010 to John Deford (Senior Vice President, Science, Technology, and Clinical Affairs ) and Patty Christian (Vice President Regulatory Affairs). The email has an attachment, which consists of Ms. Dunsmuir editing a letter prepared by someone with the initials JVV. The letter is a response to a communication from the Agency for Health Care Research and Quality apparently requesting that Bard identify published studies it was aware of regarding clinical outcomes for its filters. [Again Bard's ESI vendor appears to have had technical difficulties as no attachment line is listed.] Ms. Christian responds on the same day that she accepted the edits. Bard's claim of privilege should be denied as Bard has failed to establish that either the email or attachment was made for the primary purpose of requesting or providing legal advice. As discussed in the *Vioxx* case, simply providing line edits or commenting on traditional business matters such as scientific reports, articles, study proposals, or marketing matters is not providing primarily legal advice*In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 801-03 (E.D. La. 2007). Further, this communication is not analogous to Warning Letter from the FDA, where formal findings of safety violations have been made. Bard is simply responding to a request to identify what medical literature may exist regarding its products. Finally, confidentaility cannot exist over the attachment as the email indicated it was approved and was being distributed to a thrid party. | This document was produced with redactions covering legal comments made by, or reflecting the substance of, Bard's in-house counsel, Gina Dunsmuir. Ms. Dunsmuir provided legal edits to a draft response to an inquiry from a regulatory agency. Bard incorporates its Memorandum Section B.2. |
| **Bard's Examples** | | | | | | | | | | | |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Log 3 | 423 | 11/26/2007 | Janet Hudnall | Brett Enlow; John Van Vleet | | Email and attachments reflecting legal advice of Gina Dunsmuir, Esquire about revisions to sales force guidance provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | Same or similiar to Log 3, No. 264. Bard has failed to establish that primary purpose of communication was seeking or providing legal advice or that confidentiality was maintained. This is a communication between non-lawyers regarding a business activity and not legal advice. As noted by the magistrate judge in Phillips, grammatical, editorial, and word choice comments are not legal advice. | This is an email and attachments that reflect that were prepared by counsel and are labeled as "Attorney Work Product." The email describes them as prepared by Gina Gunsmuir, Assistant General Counsel, Compliance. *See* Ex. I, Camarata Decl. Paras. 2-3). Bard incorporates its Memorandum Sections B.1, B2 and B.4. Finally Bard notes that a similar document was found to be privileged by the Court in *Phillips* in Joint Selection *46* and under the analysis followed by that Court. |
| Log 4 | 4 | 3/15/2004 | Donna Passero, Esquire | Mary Edwards, John Lehmann, Christopher Ganser, Paul Kowalczyk, Brian Berry | Janet Hudnall, Doug Uelmen, Joe DeJohn, Len DeCant, John McDermott | Email requesting and reflecting legal advice of Donna Passero, Esquire regarding sales force communications provided to employees who need the information to perform their job functions | Attorney-client privilege | | | Bard describes this as a single email dated March 15, 2004 from Donna Passero to Mary Edwards, John Lehmann, Christopher Ganser, Paul Kowalczyk, Brian Barry and copied to Janet Hudnall, Doug Uelmen, Joe DeJohn, Len DeCant, John McDermott and "reflecting Ms. Passero's legal advice regarding sales force communications. This appears to be the same email chain that was challenge in the Phillips case as Joint Selection 5. The court found that "the 'primary purpose' of the communication is a business determination with no apparent legal implication." Phillips v. C.R. Bard, Inc., 290 F.R.D. 615, 645 (D. Nev. 2013). Whether or not this is the same email chain, Bard has failed to establish that the primary purpose of the communication was to obtain or solicit legal advice. There is no legal significance to informing the sales force of a device failure. At most, this is simply editing a traditionally non-legal document. | This is an email reflecting changes made to internal communications at Bard because of proposed changes to the IFU. Because of regulations in the industry both the Vice President of Regulatory and inhouse counsel reviewed and revised the document. (*See* Ex. G, Passero Decl. Paras. 2-4; Ex. I, Camarata Decl. Para. 4). Bard incorporates it Memorandum Sections B.1. and B.2. |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| colspan | | | | | | | | | | | |

| | | colspan="12" | **Section 5 of Letter dated April 4, 2016** |

| | | | | | | | **Plaintiffs' Examples** | | | | |
| Log | Control | Date | Author | Recipient | CC | Description | Privilege | Bates Begin | Bates End | Plaintiffs' Challenge | Bard's Response |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Log 2 | 816 | 10/5/2004 | Christopher Ganser | Brian Barry; Mary Edwards | David Ciavarella; Donna Passero, Esquire; Doug Uelmen | Email regarding legal advice about Dear Doctor letter. | Attorney-Client Privilege | | | Bard has failed to establish that the communication was made for the primary purpose of obtaining legal advice. First, Donna Passero was only copied on the communication. Second, Bard does not explain how an email relating to a dear Dr. Letter indicates the solicitation or provision of legal advice. This is general business matter not something that is traditionally a legal instrument. The *Phillips* court determined a strikingly similar document to not be privileged for the same reasons. *See, Phillips* Order disccusing Joint Selection 26. | This communication requests legal and regulatory advice regarding communication with the FDA. (*See* Ex. G, Passero Decl. Para. 3-5; Ex. I, Camarata Decl. 2-7.) Bard incorporates its Memorandum Section B.2 . |
| Log 2 | 859 | 8/18/2004 | Brian Barry | Robert Carr; Doug Uelmen | Shari Allen; David Ciavarella; Mary Edwards; Christopher Ganser; Kim Gonzales; Janet Hudnall; Karen Hutchison; Pete Palermo; Donna Passero, Esquire | Email regarding legal advice about Recovery Filter IFU revisions. | Attorney-Client Privilege | | | Bard has failed to establish that the redacted communications were made for the purpose of obtaining legal advice. The email just realtes to a team effort to review and comment on a proposed IFU. This is a non-legal function, which is certainly supported by the group effort. Further, given the wide distribution confidentiality was not maintained or expected. | This email chain was produced redacted. The redacted portions reflect the legal advice of Bard in-house and outside lawyers. (*See* Ex. G, Passero Decl. Para. 3-5.) Bard incorporates its Memorandum Section B.2. |
| Log 3 | 3987 | 8/10/2010 | John Van Vleet | Jim Beasley; Brian Doherty; Bill Little; Abtihal Raji-Kubba; Gin Schulz | Gina Dunsmuir, Esquire | Email requesting legal advice about IVC filter article and provided to employees who need the information to perform functions. | Attorney-Client Privilege | | | Bard's claim of attorney-client privilege should be denied as Bard has failed to establish that the communication reveals a confidential solicitation for or rendering of legal advice from a lawyer. Here, a regulatory and clinical affairs manager emails a sales manager, a marketing manager, a research and development manager, VP of quality assurance, and the President of Bard Peripheral Vascular and copies in-house counsel and allegedly requests legal advice regarding an IVC filter article. Bard has not provided any facts explaining how how or why legal advice was implicated regarding a medical article. Further, given that counsel was merely copied is suggestive that this was really a business communication. Finally, Bard has not explained why such a wide range of personnel would need the alleged legal advice to fulfill the purpose for which the advice was sought. | This email is a draft correspondence sent to in-house counsel responsible for regulatory compliance, Gina Dunsmuir, and other management-level employees. Although not directly written to counsel, it's heading "ATTORNEY CLIENT PRIVILEGED COMMUNICATION" explicitly seeks legal advice. Bard incorporates its Memorandum Section B.2. |
| | | | | | | | **Bard's Examples** | | | | |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Log 1 | 114 | 3/18/2005 | John Lehmann and Richard Holcomb | David Ciavarella | Donna Passero, Esquire; Brian Barry; Chris Ganser | File folder regarding clinical data strategies for Recovery® Filter with March 2005 report by Independent Consultant #1 and Richard Holcomb regarding clinical data strategies for Recovery® Filter | Attorney-client privilege Work product | | | Bard's December 2004 Health Hazard Evaluation advised that Bard should evaluate the possibility of clincial trial to assess the risks and benfits of the Recovery Filter in light of substantially higher reported failure rates. Bard then used Dr. Lehmann and Richard Holcomb to perform that assessment. There is no question that this assessment would have been performed in a substantially similiar manner regardless of litigation and there were sufficient motivating business reasons for performing it. Bard should not be allowed to manufacure a privilege over a planned and required business activity by simply using in-house counsel to outsource the work to "consultants." Thus Bard has failed to establish that the primary purpose of the communcication was to obtain or provide legal advice, or that the communication was performed "because of" anticipated litigation. The *Phillips* court in found Joint Selection No. 26 discussing Dr. Lehman's and Mr Holcombs work regarding the clincial study strategies to not be protected. , Phillips v. C.R. Bard, Inc., 290, F.R.D. 615, 652-53 (D. Nev. 2013) | This is not Joint Selection 26 from *Phillips* . To the contrary, like Joint Selection 25 in *Phillips,* this is part of the work that was performed by Dr. Lehmann and Mr. Holcombe and found to be work product. By this Court. The email is directed to Dr. Ciavarella, Ms. Passero is copied and it specifically states that it is part of the ongoing work pursuant to the Nov. 2004 contract with the Bard Law Department. ( *See* Ex. G, Passero Decl.) Bard incorporates it Memorandum Sections B.1, B.2. and C. |
| Log 3 | 3161 | 3/23/2010 | Mike Randall | Nikki Church (Legal Assistant) | Gina Dunsmuir, Esquire; Adam Rappaport, Esquire | Email and attachments reflecting legal advice of attorneys Adam Rappaport and Gina Dunsmuir regarding filter study sent to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | This entry is long email chain regarding a request by physicians at the University of Michigan to have Bard fund a study on IVC filters that they were proposing. The final email in the chain is an email from Mike Randall (Project Lead, Research & Development ) to Nikki Church (Document Control) and copied to two in-house lawyers. Mr. Randall mentions that attached to his email is "signed off grant request," the study proposal, and the University Policy on grants. Documents are sent to "Document Control" when they are finalized, so that all final documents can be preserved. Mr. Randall confirms this by asking Mr. Church to let him know if she need any further information. There is nothing about his email that suggest these attachments were being transmitted to obtain legal advice from a lawyer. Rather, these business attachments are being sent so that the proposed study can be funded by Bard. | This is an email chain seeking legal advice on a contract and agreement relating to a study. The email chain requests legal advice from Adam Rappaport, Assistant General Counsel, and Gina Dunsmuir, Assistant General Counsel, Compliance. The last email is to a legal assistant who assists Ms. Dunsmuir in compliance and the lawyers are copied. It passes on that same reqeust for advice and information needed for the grant request. (*See* Ex. I, Camarata Decl. Paras. 3-4.) Bard incorporates its Memorandum Sections B.1, B2. and B3. |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| <td colspan="12" align="center">**Section 6 of Letter dated April 4, 2016**</td> |
| <td colspan="12" align="center">**Plaintiffs' Examples**</td> |
| **Log** | **Control** | **Date** | **Author** | **Recipient** | **CC** | **Description** | **Privilege** | **Bates Begin** | **Bates End** | **Plaintiffs' Challenge** | **Bard's Response** |
| Log 3 | 809 | 4/18/2008 | Suzanne Carr | Cindi Walcott | | Email and attachments regarding legal advice about a Recovery Filter lawsuit provided to employee who needs the information to perform her job function. | Attorney-Client Privilege; Work Product | BPV-COMP-TW-00002991 | BPV-COMP-TW-00002993 | | This document was not included on Plaintiffs' matrix and was not in the disputed entries the parties agreed to present to the Court. It is not an example of a document sent to lawyers and non-lawyers for simultaneous review.  It is an email from a Bard paralegal responsible for litigation forwarding a draft letter to be sent to a plaintiffs' lawyer representing a party making a claim about an IVC filter.  The final version of the letter sent was produced with HIPAA redactions. (See Ex. I, Camarata Decl. Paras. 2-4).  Bard incorporates its Memorandum Section B. 3. |
| Log 6 | 251 | 6/7/2004 | David Ciavarella | Mary Edwards | | Email and attachments reflecting legal advice and other information prepared at request of Bard Legal Department about questions for a clinician panel provided to employees who need the information to perform their job function. | Attorney-Client Privilege | | | Bard's claim of attorney-client privilege should be denied as Bard has failed to establish that communication reveals a request to or rendering of advice from a lawyer, disclose any facts suggesting legal advice was being provided or solicited, or that confidentiality was maintained.  The communication is between David Ciavarella (Medical Director) and Mary Edwards (Vice President, Regulatory & Clinical Affairs) and appears to relate to a physician panel that Bard conducted as part of its normal course of business to investigate its device failures and determine if corrective action was needed. | After further review and investigation, Bard determined that the attachment referred to in this email was produced.  Bard has produced the email. |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Log 3 | 175 | 10/12/2006 | John McDermott | Shari Allen; Joe DeJohn; Janet Hudnall; Gin Schulz | Mary Minske; Kevin Shifrin | Email reflecting legal advice of Judith Reinsdorf, Esquire about a communication plan provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | Entries from Log 3, Nos. 175, 505.01, 519, 520.01, 521, 523 and 3804 all invovle the same disputed information. This is an email chain that begins with John McDermott emailing Judith Reinsdorf (Vice President, Secretary, and General Counsel of C.R. Bard) on October 10, 2006 and copying Brian Barry, Dr. Ciavarella, Christopher Ganser, Shari Allen, Janet Hudnall, and Gin Schulz with the subject line "G2", as in G2 Filter. The email apparently contained an attached "action and communication" plan prepared by Mr. McDermott. Ms. Reinsdorf replies on October 12, to Mr. McDermott and copies John Weiland, and Brian Barry. She notes that she has reviewed Mr. McDermott's action and communication plan with Brian Barry and John Weiland and they are in agreement on a number of issues regarding the plan, which she goes on to identify. The entire email is the forwarded four more times and is seen by multiple different employees, including, for example, Cindi Walcott (Field Assurance Manager), who is responsible for investigating adverse events.<br><br>Bard's privilege claim should be denied as it has failed to establish that the communication was made for the primary purpose of soliciting legal advice or that confidentiality was expected or maintained. First, there is nothing that appears to be of legal significance to the communications.  This is simply a marketing communication, which is certainly not the type of traditional legal document discussed in the Vioxx case. Further, while Ms. Reinsdorf is a lawyer, she also held the positions of Vice President and Secretary for C.R. Bard. Thus, she was not necessarily acting in her role as a lawyer.  The initial email was also sent out for simultaneous review and comment to other non-lawyers. Indeed, Ms. Reinsdorf makes it clear that she did in fact review the plan with other non-lawyers and that her suggestions were reached jointly with the non-lawyers. This strongly indicated that the primary purpose was business related. Finally, Bard has not established why the numerous employees who were provided with this email chain needed it to fulfill the purpose for why the lawyer was consulted. | Plaintffs have combined 8 separate entries in the matrix. These documents are not examples of a document sent to lawyers and non-lawyers for simultaneous review.   The entry at issue is an email that was produced redacted.  The redacted portions reflect the request for and legal advice provided by Judith Reinsdorf, the General Counsel of Bard, to the President of BPV, the President of Bard, and the V.P. of Regularoty Affairs for Bard. It is then forwarded to management level employess of BPV who need the information. Bard incorporates its Memorandum Sections B.1. and B.2. |
| | | | | | | | **Bard's Examples** | | | | |
| Log 3 | 2099 | 4/6/2009 | Brian Hudson | Bret Baird | | Email requesting legal advice from counsel, Greg Dadika, Esquire and Gina Dunsmuir, Esquire, about sales force talking points and provided to other employees who need the information to perform their | Attorney-Client Privilege | | | This is an email chain with starting with an email on April 4, 2009 from Bret Baird to Bill Little, Brian Doherty, Greg Dadika, Gina Dunsmuit, Brian Hudson, and Gin Schulz. In the email, Mr. Hudson request simultaneous review and comments on a cover letter and talking points document he prepared for the sales force.  Bard has now produced the email redacted but is still withholding the attachment. Bard has failed to establish that the primary purpose of this communication was to obtain legal advice. First, the subject matter is something that is far more closely relate to general business matter, i.e. instructing the sales force how best to promote the product to achieve sales.  The fact that this was drafted by a non-lawyer and was submitted for simultaneous review further suggests the primary purpose of the communication as something other than to obtain legal advice. given that the attachment is not listed as the email header, this entry presents another example of a poor technical production of ESI information. | This is a follow up email that was produced redacted and is an example of a document sent for simultaneous review to a group that will provide legal and non-legal input. In addition to seeking business input, Mr. Baird is requesting input from inhouse lawyers responsible for litigation and regulatory compliance.  In 2009, Bard was addressing both areas relating to its IVC filters. (See, Exhibit G, Passero Decl. and Ex. I, Camarata Decl. Paras. 3-7.)  Bard incorporates its Memorandum Sections B.1, B.2. and B.4. |
| Log 2 | 816 | 10/5/2004 | Christopher Ganser | Brian Barry; Mary Edwards | David Ciavarella; Donna Passero, Esquire; Doug Uelmen | Email regarding legal advice about Dear Doctor letter. | Attorney-Client Privilege | | | Bard has failed to establish that the communication was made for the primary purpose of obtaining legal advice.  First, Donna Passero was only copied on the communication. Second, Bard does not explain how an email relating to a dear Dr. Letter indicates the solicitation or provision of legal advice. This is general business matter not something that is traditionally a legal instrument. The *Phillips* court determined a strikingly similar document to not be privileged for the same reasons. *See, Phillips* Order disccusing Joint Selection 26. | This is an email sent to lawyers and non lawyers for regulatoryand legal advice relating to drafts to go to doctors and the FDA.  It specifically requests input from Ms. Passero an inhouse lawyer at Bard. *See* Ex. I, Camarata Decl. Paras. 3-7.) Bard incorporates its Memorandum Sections B.1 and B.2. As the Phillips Court noted, including a lawyer in an email communication can have the same effect as emailing her directly for advice. *Phillips* Joint Selection 42. |

Chart of the Parties' Privilege Log Examples
*In Re: Bard IVC Filters Products Liability Litigation*

| Section 7 of Letter dated April 4, 2016 |
|---|
| **Plaintiffs' Examples** |

| Log | Control | Date | Author | Recipient | CC | Description | Privilege | Bates Begin | Bates End | Plaintiffs' Challenge | Bard's Response |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Log 2 | 403 | 10/3/2005 | Janet Hudnall | Shari Allen | Kevin Shifrin | Email and attachments regarding legal advice of Donna Passero, Esquire about G2 sales force call provided to employees who need the information to perform their job functions at the direction of counsel. | Attorney-Client Privilege | | | Bard's claim of attorney-client privilege should be denied as Bard has failed to: establish that the communication reveals a solicitation for or rendering of advice from a lawyer, discloses any facts suggesting legal advice was being provided or solicited, or that confidentiality was expected or maintained. The communication does not include legal personnel. Bard has also failed to identify who authored the attachments. Further, the communications do not involve a legal matter. Instead they involve a traditional business matter, promotional and marketing practices. See, *Phillips v. C.R. Bard, Inc*., 290, F.R.D. 615, 644, 653-654 (D. Nev. 2013)(finding Joint Selection No. 5 (Sales Communication) and No. 29 (Colleague letter) not privileged). Bard has also failed to identify who authored the attachments. | This document was produced redacted. The redacted sentence is legal advice from Bard's inhouse counsel regarding a legal and regulatory matter, and was forwarded to employees with a need to know. This entry was also addressed in Section 2 of Plaintiffs' April 4, 2016 letter. (See Ex. G, Passero Decl. Paras. 3-5; Ex. I, Camarata Decl. Paras. 2-7.) Bard incorporates its Memorandum Sections B.1, B.2, B.4 |
| Log 3 | 224 | 9/7/2006 | John McDermott | Janet Hudnall | Shari Allen; Joe DeJohn; Kevin Shifrin | Email and attachment reflecting legal advice of Judith Reinsdorf, Esquire and Donna Passero, Esquire about product communication plan to sales force provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | Bard has failed to establish that the primary purpose of the communications was to obtain or provide legal advice. Bard has not established that any lawyer authored the attachments or in what way did lawyers provide "legal" advice about the proposed sales force comminication. These are not taditionally legal documents, such that edits and commentary would be protected. | The entry on the privilege log clearly states that the attachment witheld contains legal advice of two Bard inhouse lawyers. A review of the document shows that it was prepared by Donna Passero and Judith Reinsdorf, both lawyers in the Bard Law Department and that it contains legal advice and regulatory advice. (See Ex. G, Passero Decl. Paras. 3-5; Ex. I, Camarata Decl. Paras. 2-7.) Bard incorporates its Memorandum Sections B.1. and B.2. |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Log 6 | 330 | 6/21/2013 | Denise Marie Barton, Esquire | John Kaufman | | Document containing legal advice of Denise Marie Barton, Esquire about filter litigation. | Attorney-Client Privilege; Work Product | | | The entry contains multiple communications, including the disclosed communication between Dr. Kaufman and Ms. Barton, as well multiple undisclosed attached communications between Dr. Kaufman and non-lawyers.  Bard's claim of privilege should be denied as Bard has refused to disclose who retained Ms. Barton, provide any facts establishing that communications were being made to obtain or provide legal advice, and confidentiality was not maintained as the communications were made to a third party. There are no facts supporting that Dr. Kaufman was merely helping Bard's lawyers interpret already privileged material. Instead he appears to be providing his own advice and working on non-legal matters. The work product claim should also be denied as Bard has failed to establish that there was impending litigation and/or that the communications would not have been made in substantially similar form but for the prospect of litigation. In particular, the multiple communications between Dr. Kaufman and non-legal employees were clearly made for the purpose of obtaining FDA clearance to market the device. | After further review of the circumstances involving this document, which was created in 2001, and involving litigation between Bard and NMT Medical Inc., Bard agrees that it is not privileged and has produced it to Plaintiffs. |
| | | | | | | **Bard's Examples** | | | | | |
| Log 6 | 115 | 10/21/2009 | Tim Ring | Diana Doyle | | Email and attachments reflecting legal advice of Stephen Long, Esquire about communications about product litigation provided to employees who need the information to perform their job function. | Attorney-Client Privilege | | | This is an email with an attachment dated October 20, 2009 sent by Stephen Long (in-house counsel) to Tim Ring (Chairman & Chief Executive Officer), John Weiland (President, COO), Todd Schermerhorn (Senior Vice President and Chief Financial Officer), John Deford (Senior Vice President, Scient, Technology, and Clinical Affairs) and Eric Shick (Vice President, Investor Relations). The subject of the email is an upcoming presentation to shareholders and the attachment is the talking points for all of those involved.  Of note, Bard has been unable to identify who wrote the attachment and has refused Plaintiffs request to examine the metadata as to the author.  Privilege does not apply as Bard has failed to establish that the communication reveals a request for or rendering of advice from a lawyer, disclose any facts suggesting legal advice was being provided or solicited, or confidentiality was expected or maintained. First, the subject matter here does not appear legal in nature. This about a script that is being used during a meeting with shareholders. This is certainly not something that is traditionally legal in nature as discussed in the *Vioxx* decision. Second, confidentiality was not maintained as the talking points were disclosed to shareholders. Third, Bard has not even established that the in-house lawyer authored the attachment. | This document is an email from Bard inhouse counsel Stephen Long to Bard senior management (Tim Ring is CEO, John Weiland is President) forwarding a document that reflects that it was prepared by counsel, and is providing legal advice regarding communicaitons relating to Bard products which are the subject of litigation.  Bard incorporates its Memorandum Sections B.1 and B.2. |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Log 3 | 3089 | 2/6/2009 | Mike Randall | Bret Baird; Genevieve Balutowski; Robert Carr; Patty Christian; Jon Conaway; Gina Dunsmuir, Esquire; Bill Little; Mike Randall; John Reviere; Richard North, Esquire; Dennis Salzmann; Gin Schulz; John Van Vleet | Greg Dadika, Esquire; Abtihal Raji-Kubba | Email and attachments reflecting request for legal advice of Gina Dunsmuir, Esquire and Greg Dadika, Esquire about product risk review provided to employees who need the information to perform their job functions. | Attorney-Client Privilege; Work Product | | | Bard describes this as an email and attachment sent by Mike Randall on February 6, 2009 to 12 non-lawyers, three in-house counsel, and Richard North reflecting legal advice of Gina Dunsmuir and Greg Dadika about a product risk review. This appears to be a similiar documents to what the *Phillips* court determined to not be privileged in Joint Selection No. 36. Bard has failed to establish that these were confidential communications made for the primary purpose of obtaining or providing legal advice. Notably, Bard has refused to identify who authored the attachments. Further, numerous other alleged "risk reviews" have turned out to be monthly summaries of failures that were being collected and submitted to Bard management to comply with regulatory requirement of engaging in post-market surveillance. Further, the breadth and simultaneous nature of the disclosure suggests that it was not confidential and was not for the primarily legal purpose. Bard has also failed to establish that the communication would not have been made in a substantially similar form but for anticipated litigation. | This is an email from the Program Manager for IVC Filters to a team working on the IFU for the G2 and G2X filters. It was sent to both non-lawyers and inhouse and outside lawyers who were a part of the team. The attachment shows the work done by both lawyers and non-lawyers, and the issues identified by the team and lawyers. Bard incorporates its Memorandum Sections B.1. and B.2. |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Section 8 of Letter dated April 4, 2016** ||||||||||||
| **Plaintiffs' Examples** ||||||||||||
| Log | Control | Date | Author | Recipient | CC | Description | Privilege | Bates Begin | Bates End | Plaintiffs' Challenge | Bard's Response |
| Log 2 | 502 | 8/16/2005 | Christopher Ganser | Suzanne Carpenter (Litigation Manager); Kellee Jones | Richard Bliss (Consultant); Sabina Downing (Litigation Manager); Cindi Walcott | Email to Bard Legal Department providing information in response to request from same for information concerning Recovery Filter reports. | Attorney-Client Privilege | | | Bard has failed to establish that the email or attachments were made for the primary purpose of obtaining legal advice. No lawyer is listed as being part of the communication or having requested the information. Bard also fails to identify who authored the attachments. There is nothing to suggest that these were not communications regarding normal investigations of adverse events or post-market trending. Indeed, Bard preapred monthly trending summaries of failure data so that management could track the failure rates. These were sent to Mr. Ganser who then shared them with John Weiland and Tim Ring. This email chain is just part of the normal process. Further, Bard waived any privilege by disclosing the material to a third party consultant. | This document is challenged on the basis of waiver because it went to Richard Bliss. Mr. Bliss was the functional equivalent of an employee at the time. (See Ex. H, Carr Decl. Para. 5.) Bard incorporates its Memorandum Section B.5. To the extent that plainitffs also challenge this document because it is a request for information from a paralegal. (See Ex. I, Camarata Decl. Para. 3). Bard incorporates its Memorandum Sections B.3. and B.5. |
| Log 2 | 1220 | 9/13/2005 | Charis Campbell | John Kaufman | | Email and attachments conveying legal advice of Thomas Klein, Esquire about contract documents and provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | Bard has failed to establish that the communication was made for primary purpose of securing legal advice. No lawyers are listed as participants to the communication. Further no explanation is given as to how this communication reveals legal advice, or who authored the attachments. Even if privilege did exist, it was waived by disclosure to Dr. Kaufman. | Bard has produced this document unredacted. |
| Log 3 | 335 | 4/21/2006 | Janet Hudnall | John Kaufman | | Email and attachments reflecting legal advice of Khoi Ta, Esquire about product application and provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | Bard has failed to establish that the primary purpose of this communication was obtain or provide legal advice. There is no evidence that Dr. Kaufman was retained to assist with the preparation of the patent or that he helped in interpret any already privileged material. Rather, Bard seems to have simply sent him a copy of the application and suggested he be listed as a patent holder. Certain materials produced in this litigation suggest that Bard tried to funnel money to leading physcians by listing them as patent holders. To the extent any privilege existed, it was waived by disclosing the documents to Dr. Kaufman. | This is a communication between Bard's in house intellectual property lawyer and Dr. Kauffman who was under a consulting agreement with Bard and was an inventor on a patent application along wth Bard employees. (*See* Ex. H, Carr Decl. Para. 7). Bard incorporates its Memorandum Section B.5. |
| **Bard's Examples** ||||||||||||

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Log 3 | 326 | 5/5/2006 | Khoi Ta, Esquire | John Kaufman | Len DeCant; Janet Hudnall; David Laub, Esquire | Email and attachments conveying legal advice of Khoi Ta, Esquire regarding product patent application. | Attorney-Client Privilege | | | Bard has failed to establish that the primary purpose of this communication was obtain or provide legal advice. There is no evidence that Dr. Kaufman was retained to assist with the preparation of the patent or that he helped in interpret any already privileged material. Rather, Bard seems to have simply sent him a copy of the application and suggested he be listed as a patent holder. Certain materials produced in this litigation suggest that Bard tried to funnel money to leading physcians by listing them as patent holders. To the extent any privilege existed, it was waived by disclosing the documents to Dr. Kaufman. | This is an example of the type of commmunication forwarding legal advice and communications from the Law Department to Mr. Bliss while he was working for Bard as a functional equivalent of an employee as Head of Quality and Regulatory for BPV. (*See* Ex. H, Carr Decl. Para. 5.) Bard incorporates is Memorandum Sections B.2., B.4. and B.5. |
| Log 2 | 336 | 10/10/2005 | Annette Everett | Richard Bliss (Consultant); Kellee Jones; Gin Schulz; Leigh Toole | Wendy Hayes | Email containing information prepared to assist counsel in providing legal advice about Recovery Filter. | Attorney-Client Privilege | | | Bard has failed to establish that the primary purpose of this communication was to obtain or provide legal advice. No lawyers as listed as being a party to the communication and any confidentiality was waived by disclosure to a third party consultant. There is also no declaration from anyone in the legal department stating that Richard Bliss was retained to provide consultative services to Bard in anticipation of litigation or that the subject memo was done at the direction of the Law Department. See *Phillips* order as to Joint Selection 27. | This is another example of privileged communication between Dr. Kauffman as an inventor on a patent and the Bard inhouse lawyer responsible for providing legal advice regarding the patent application. (*See* Ex. H, Carr Decl. Para. 7). Bard incorporates its Memorandum Sections B.5. |