**EXHIBIT G**

## AFFIDAVIT OF DONNA L. PASSERO, ESQUIRE

I, Donna L. Passero, Esquire, first being sworn under oath, depose and say:

1. I am over the age of 21 and am a resident of the state of New Jersey. I have personal knowledge of the facts set forth in this Affidavit.

2. Since 1991, I have been Assistant General Counsel for C. R. Bard, Inc. ("Bard"), which is one of the defendants in the above-captioned matter.

3. Bard's in-house Law Department -- of which I am a part -- provides a variety of legal services and counsel to the corporation. In furtherance of said services and counsel, the Bard Law Department routinely communicates with and provides legal advice to employees of the corporation as well as to employees of Bard's subsidiaries, including Bard Peripheral Vascular, Inc.

4. Those communications and legal advice often pertain to, but are not necessarily limited to, advice about product complaints, unlitigated claims, potential litigation, ongoing litigation, reports of adverse events, product assessment, regulatory matters, trademark and patent opinions, consultant agreements, and other areas in which Bard seeks legal advice and consultation.

5. Communications between and among Bard's employees and Bard's Law Department or outside legal counsel, which are made for the purpose of giving or receiving legal advice, as a matter of Bard's policies and procedures, are kept confidential. Likewise, other communications that reflect legal advice from counsel, documents created at the direction of counsel for purposes of giving or receiving legal advice, and documents created in anticipation of litigation, as a matter of Bard's policies and procedures, are kept confidential.

**Dr. Lehmann's Retention and Report:**

6. At the beginning of November 2004, I -- in conjunction with Bard's Law Department -- retained Dr. John Lehmann for the purpose of providing outside consultation services to the Law Department regarding anticipated and ongoing product liability litigation. Specifically, Dr. Lehmann was retained for the purpose of conducting an independent

-1-

investigation and drafting a report concerning Bard's Recovery® Filter, which I -- in conjunction with Bard's Law Department -- requested for the purpose of providing Bard with legal advice concerning the Recovery® Filter and to prepare for and assist with anticipated and ongoing litigation.

7. At the time that Dr. Lehmann was retained in November 2004 by the Bard Law Department, he was not an employee of Bard or any of Bard's subsidiaries.

8. In connection with Dr. Lehmann's retention, and shortly after the same, Dr. Lehmann signed a contract with Bard's Law Department, which memorialized Bard's Law Department's retention of Dr. Lehmann.

9. Before Dr. Lehmann began his work for the Bard Law Department, I -- in conjunction with the Bard Law Department -- informed Dr. Lehmann that his work was commissioned to enable myself and the Bard Law Department to provide Bard with legal advice concerning the Recovery® Filter and to prepare for and assist with anticipated and ongoing litigation. I further informed him that the results of his investigation and his report should only be relayed to Bard's Law Department or to those whom Bard's Law Department may direct.

10. Pursuant to the contract executed by Bard's Law Department and Dr. Lehmann, and under my direction, Dr. Lehmann conducted his investigation during November and December 2004. During the course of this investigation -- and at my direction and the direction of Bard's Law Department -- Dr. Lehmann communicated with a small and limited number of Bard employees for the purpose of obtaining and providing information in order to fulfill his duties pursuant to the contract he signed with Bard's Law Department.

11. On or about December 15, 2004, Dr. Lehmann submitted his final report to me. I distributed Dr. Lehmann's report to five Bard employees (one of whom was a member of the Bard Law Department), all of whom had instructions that the report and associated materials were confidential and that any further distribution of the report should be limited to only those employees or consultants who need the report to perform their proper job functions.

12. Following the submission of Dr. Lehmann's report, Dr. Lehmann provided

additional consultation services to me and Bard's Law Department pursuant to the contract referenced in Paragraph 8. These additional consultation services – which he provided through the spring of 2005 -- were limited to follow-up items related to and which arose out of the report he submitted on or about December 15, 2004.

**Dr. Richard Holcomb's Retention:**

13.     In mid-November 2004, Dr. Richard Holcomb was retained to assist Dr. Lehmann with certain aspects of the report that the Bard Law Department requested for the purpose of providing Bard with legal advice concerning the Recovery® Filter and to prepare for and assist with anticipated and ongoing litigation.

14.     At the time that Dr. Holcomb was retained, he was not an employee of Bard or any of Bard's subsidiaries.

15.     In connection with Dr. Holcomb's retention, and shortly after the same, Dr. Holcomb signed a contract with Bard's Law Department, which memorialized Bard's Law Department's retention of Dr. Holcomb.

16.     Before Dr. Holcomb began his work for the Bard Law Department, I -- in conjunction with the Bard Law Department -- informed Dr. Holcomb that his work was commissioned to enable myself and the Bard Law Department to provide Bard with legal advice concerning the Recovery® Filter and to prepare for and assist with anticipated and ongoing litigation. I further informed him that the results of his work should only be relayed to Bard's Law Department or to those whom Bard's Law Department may direct.

17.     Pursuant to the contract executed by Bard's Law Department and Dr. Lehmann, Dr. Holcomb assisted Dr. Lehmann with his investigation during November and December 2004. During the course of this investigation -- and at my direction and the direction of Bard's Law Department -- Dr. Holcomb communicated with a small and limited number of Bard employees and Dr. Lehmann for the purpose of obtaining and providing information in order to fulfill his duties pursuant to the contract he signed with Bard's Law Department.

18.     Following the submission of Dr. Lehmann's report, Dr. Holcomb continued to

assist Dr. Lehmann, myself, and Bard's Law Department pursuant to the contract referenced in Paragraph 15. This additional assistance -- which he provided through the spring of 2005 -- was limited to follow-up items related to and which arose out of the report submitted by Dr. Lehmann on or about December 15, 2004.

**Bard Law Department's Corporate Management Committee Reports:**

19. On a monthly basis since the early 1990s, Bard's Law Department has prepared Litigation Reports, which are currently called "Corporate Management Committee" reports.

20. These CMC reports are distributed by Bard's Law Department only to members of Bard's senior corporate management or to those who need the information to perform their job functions (e.g., Risk Management).

21. These CMC reports are provided to Bard's senior corporate management for the purpose of providing legal services and counsel to the corporation and providing information to the corporation concerning ongoing and anticipated litigation, including, among other things, litigation strategy, status and mental impressions of various cases and claims, and information concerning settlement and settlement negotiations.

FURTHER AFFIANT SAYETH NOT.

_____
Donna L. Passero, Esquire

Sworn to and subscribed before me

on this 12 day of February, 2013.

_____
NOTARY PUBLIC

My Commission Expires: _____

**LYNN MARIE DIAKOGIANNAKIS**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires 4/18/2016**