**EXHIBIT H**

## DECLARATION OF ROBERT CARR

I, Robert Carr, declare under penalty of perjury that the following is true and correct:

1. I am over the age of 21 and am a resident of the state of Arizona. I declare of my own personal knowledge and upon the basis of the documents maintained by Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard") in the regular course of business, under the penalties of perjury, that the foregoing is true and correct.

2. I am presently employed as the Vice President of International at Bard Peripheral Vascular ("BPV") a subsidiary of C. R. Bard, Inc. ("C. R. Bard"). Until October 2015, I was Senior Director of Research and Development at BPV. Bard manufactures and distributes inferior vena cava ("IVC") filters and has manufactured and distributed the Recovery® Filter, G2® Filter, G2® Express Filter, Eclipse™ Filter and Denali® Filter (collectively, "Bard Filters"), each of which is an FDA-cleared product indicated for treatment of blood flow problems posing the risk of pulmonary embolism. Before joining BPV in 2002, I was employed by Nitinol Medical Technologies ("NMT"), where I was also responsible for that company's research and development of IVC filters. This declaration is based upon my personal knowledge and review of certain business records prepared and maintained in the ordinary course of business of Bard. I could and would competently testify to the matters set forth herein if called as a witness in this matter.

3. Bard or its affiliates are engaged in the development, design, manufacturing, and distribution of medical devices, including the Bard Filters. The medical device business for IVC filters is a highly technical and sophisticated industry. It is also a highly competitive industry in which each company carefully guards its company documents, data, systems, processes, research and development, analysis, marketing strategies and trade secrets from competitors.

4. As part of and during the course of my work with Bard, I am familiar with Bard's in-house Law Department. I am aware that the in-house lawyers and other professionals who work for the in-house lawyers provide a variety of legal services and counsel to the corporation.

1

The Bard Law Department routinely communicates with and provides legal advice to employees of BPV.

5. Richard Bliss is a former employee of Bard who worked, pursuant to a consulting contract, for BPV in 2004 and 2005. During that time, he worked full time in BPV's facilities in Arizona and served as Head of Quality and Regulatory for BPV while Bard searched for a permanent employee to fill that position. Mr. Bliss reported to Chris Ganser who was Bard Corporate Vice President of Quality and the entire BPV quality department reported to him. He was responsible for the day to day operations of the BPV quality department.

6. The documents Vol 3_003028 relate to work being done at BPV and Bard at the request and direction of Bard attorneys Gina Dunsmuir, Assistant General Counsel, Compliance and Greg Dadika, Associate General Counsel, Litigation. Because of regulatory and litigation issues at the time, the lawyers asked that a group work with them to evaluate the G2® and G2X® filter IFUs.

7. Document Vol 3_000335 relates to a patent application for the G2® filter. Dr. John Kauffman worked with Bard as a consultant and was an inventor on the patent. Bard's in-house intellectual property lawyers were responsible for the legal work relating to processing the patent.

8. Document Vol3_001697 relates to the negotiations and drafting of documents regarding a potential business transaction between BPV and another company, Phase One. Thomas Conniff in Bard's Law Department was responsible for providing legal advice and counsel relating to the transaction. The other recipients of the email were on the BPV group working on the possible transaction.

Dated: April 15, 2016.

_____
ROBERT CARR