**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC<br>Filter Products Liability Litigation. | No. MDL 15-02641 PHX DGC<br>**ORDER** |

Defendants have proposed a procedure for the Court to rule on whether the statute of limitations can be equitably tolled beyond the time a plaintiff discovered an injury related to a Bard filter. Docs. 1146, 1437. Plaintiffs oppose the procedure. Doc. 1351. Although the Court generally favors procedures that assist in resolving cases consolidated in this MDL, the Court is not persuaded that it should adopt Defendants' proposed procedure at this time.

Defendants' procedure is based on that employed in *In re: Mirena IUD Products Liability Litigation*, No. 13-md-2434-CS-LMS (S.D.N.Y). In the *Mirena* litigation, plaintiffs asserted claims against the manufacturer of Mirena IUDs, asserting that the IUDs had spontaneously migrated in their bodies and caused perforation of the uterus and similar injuries. The defendants proposed to file an exemplar motion to dismiss to test their argument that these claims accrued, for statute of limitations purposes, when a plaintiff discovered that her uterus had been pierced by a Mirena IUD. The court allowed Defendants to file such a motion in the case of *Truitt v. Bayer*. After briefing and oral argument, the court granted the motion, explaining that under either Indiana or Texas law

1  the statute of limitations was triggered when "Plaintiff learned that the Mirena had
2  perforated her uterus and surgery was required to remove it." *In re: Mirena IUD Prods.*
3  *Liab. Litig.*, 29 F. Supp. 3d 345, 357 (S.D.N.Y. 2014) ("*Truitt* ").   The court found that
4  this event would have prompted "a reasonably diligent individual to inquire into why the
5  Mirena perforated her uterus," leading to discovery of a claim against the manufacturer.
6  *Id.*

7  After the *Truitt* decision, the *Mirena* court established a procedure to govern
8  similar cases in the MDL.  The order provided that Defendants could submit three-page
9  letters explaining why other cases should be dismissed under *Truitt*.   13-md-2434-CS-
10 LMS, Doc. 1510.   The plaintiffs in those cases would then be required to either
11 voluntarily dismiss their cases with prejudice or provide their own three-page letters
12 explaining why the ruling in *Truitt* did not apply to them.  *Id.*  Using this procedure, the
13 court dismissed 31 additional cases, applying the law of several states.  *In re: Mirena*
14 *IUD Prods. Liab. Litig.*, 2015 WL 144214, at *1 (Jan. 9, 2015) ("*Abrams*"), *appeal filed*,
15 No. 15-382 (2d. Cir., Feb. 9, 2015).

16 Defendants ask the Court to adopt a similar procedure.  *See* Doc. 1146-1 at 1-3.
17 They propose to file a motion for summary judgment in an MDL case of their selection,
18 with the motion to be briefed under normal procedures.   If the motion is granted,
19 Defendants propose the procedure followed in *Mirena*: they will serve three-page letters
20 on plaintiffs in specific cases, those plaintiffs may either dismiss their claims or serve
21 three-page letters in response, and Defendants can then serve a three-page reply.
22 Plaintiffs would also be permitted to submit affidavits setting forth additional facts that
23 bear on whether their claim is time-barred.  If the Court concluded that additional
24 briefing was warranted, it could order such briefing in particular cases.  *Id.*

25 For several reasons, the Court cannot conclude that such a procedure should be
26 adopted at this time.

27
28

First, the Court is very uncomfortable with the notion that it would be granting summary judgment on the basis of three-page letters. *Mirena* involved motions to dismiss under Rule 12(b)(6), not motions for summary judgment under Rule 56. Motions to dismiss are confined to the allegations of the complaint and present the possibility of allowing amended pleadings; motions for summary judgment must consider all relevant evidence collected and presented by the parties. Although Defendants propose that the Court could request additional briefing where warranted, the Court expects that it would do so in most if not all cases in light of the case-dispositive nature of the motion and the need to examine the facts specific to each Plaintiff's discovery of his or her claim. In addition, Plaintiffs are entitled to respond to motions for summary judgment with a request for further discovery under Rule 56(d), a procedure that could result in the kind of case-specific discovery that MDLs typically seek to avoid. Much of the desired benefit in the *Mirena* approach turned on the expedited nature of the procedures and briefing – procedures that the presiding judge described as a "slight detour." The Court fears that Defendants' summary judgment proposal would seriously side-track this MDL into case-specific litigation.

Second, although it is true that a transferee court may decide case-specific dispositive motions, *In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976), the court should only do so if it will serve "the convenience of parties and witnesses" and "the just and efficient conduct" of the litigation. 42 U.S.C. § 1407(a). In general, these ends are not served by considering motions that pertain to only a small number of cases or that turn on the application of state-specific law. *See* Manual on Complex Litigation, § 22.36 at 372 (2004) ("If the summary judgment motion pertains to one or few cases, or rests on application of the transferor court's conflicts-of-law or substantive law rules, the transferor judge may be able to decide the motions most efficiently.") (citing cases).

Defendants do not identify the number of cases in which they would seek to apply their proposed procedure. If it is too many, the process will bog down this proceeding in a way inconsistent with the purposes of MDLs; if it is too few, little will be gained by the case-specific litigation. Defendants contend that the question they seek to litigate is present in a substantial number of cases, but they provide no information from which the Court can reach that conclusion. Defendants identify only one case currently before the Court, *Schweska et al. v. C.R. Bard Inc., et al.*, No. 2:15-cv-01879-DGC.

Third, the Court is not persuaded that applying the discovery rule and equitable tolling principles from various states would be as easy as Defendants suggest. Defendants argue that cases like *Schweska* – where plaintiff alleges injury based on the removal of her Bard filter in 2007 – would be dismissed as untimely under the law of any jurisdiction. Defendants are correct that in some jurisdictions the statute of limitations begins to run when a plaintiff knows that she has been injured by the defendant, even if she does not know that the defendant's act was tortious. *See, e.g., Timberlake v. A.H. Robins Co.,* 727 F.2d 1363 (5th Cir. 1984) (applying Texas law). But other jurisdictions appear to apply the discovery rule more generously. For example, Rhode Island cases hold, in the drug products liability context, that "the running of the statute of limitations would begin when the person discovers, or with reasonable diligence should have discovered, *the wrongful conduct of the manufacturer*." *Anthony v. Abbott Labs.*, 490 A.2d 43, 46 (R.I. 1985) (emphasis added). Thus, whether a claim like Ms. Schweska's is timely will depend on the particulars of state law. It will also depend on facts specific to Ms. Schweska.

Fourth, the Court knows from experience that a state's case law on the discovery rule and equitable tolling can appear to have inconsistencies and can be difficult to apply. For example, in the *Abrams* decision, the *Mirena* court held that the California statute of limitations began to run upon a plaintiff's discovery of an injury attributable to a medical device. 2015 WL 144214 at *7. But some California cases state that "a cause of action is delayed until the plaintiff is aware of her injury *and its negligent cause*." *Jolly v. Eli Lilly*

- 4 -

*& Co.*, 751 P.2d 923, 927 (Cal. 1988) (emphasis added); *see also Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 924 (Cal. 2005) ("a plaintiff's ignorance of wrongdoing involving a product's defect will usually delay accrual" if wrongdoing is essential to the plaintiff's cause of action). It may well be that transferor judges, who are familiar with the law of the states in which they sit, are better equipped than the undersigned to sort through the vagaries of a particular state's tort law.

Fifth, the facts of this case differ in potentially important ways from *Mirena*. Plaintiffs in this case allege that Defendants were actively suppressing information about the defects of their retrievable filters, leading the FDA, Plaintiffs' medical providers, and the public to believe that the failure rate of Bard filters was comparable to that of other filters, when it was actually far higher. No comparable allegations appear to have been made in *Mirena*. These allegations may affect the application of the fraudulent concealment doctrine. Under Indiana law, for example, fraudulent concealment tolls the statute of limitations until "the plaintiff obtains information that would lead to the discovery of the cause of action through ordinary diligence." *Truitt*, 29 F. Supp. 3d 345, 352-53 (quoting *Doe v. United Methodist Church*, 673 N.E.2d 839, 844 (Ind. Ct. App. 1996)). The court concluded in *Truitt* that, upon sustaining injury attributable to her IUD, the plaintiff had sufficient information to discover the defendants' wrongdoing through the exercise of ordinary diligence. *Id.* at 354. But it is not clear that the Court could make a similar finding here if the facts show that Defendants deliberately suppressed evidence that its filters were defective, making it difficult to discover this information even in the exercise of ordinary diligence. *See Evenson v. Osmose Wood Preserving Co. of Am.*, 899 F.2d 701, 705 (7th Cir. 1990) (in applying Indiana's discovery rule, "district courts will necessarily be bound to a fact-specific inquiry"). At minimum, the Court would likely need to defer the question pending further factual development. The second phase of discovery now underway could produce evidence relevant to this issue.

For these reasons, the Court will not enter Defendants' proposed case management

order (Doc. 1146-1) at this time.  If Defendants believe that a procedure addressing these issues would be workable at some point in the future, they certainly can raise the issue with the Court.

Dated this 20th day of April, 2016.

_____
David G. Campbell
United States District Judge