Robert W. Boatman (009619) - rwb@gknet.com
Paul L. Stoller (016773) - paul.stoller@gknet.com
Shannon L. Clark (019708) - SLC@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
602-530-8000

Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California  92660
949-812-5771

*Co-Lead/Liaison Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC<br><br>**PLAINTIFFS' MEMORANDUM IN REPLY TO DEFENDANTS' RESPONSE TO THE PLAINTIFFS' PRIVILEGE LOG CHALLENGE** |

In its response brief (doc. 1476), Bard makes a strange mishmash of arguments based on both federal and Arizona law, apparently believing that it can pick and choose whichever law is most favorable to its privilege claims. This is mistaken. Plaintiffs have argued in their motion to compel (doc. 1214) [hereinafter "Motion"] that a general privilege law based on both state and federal common law applies, and reiterate that this is the correct legal standard to apply for this MDL. To the extent that a specific state law applies, then it should be the law of New Jersey, the home of C.R. Bard, Inc. and the Bard corporate legal department, from which virtually all of Bard's privilege claims flow. New Jersey law is not materially different from the general common law of privilege.

Meanwhile, neither the fact that one of Bard's subsidiaries is based in Arizona nor that this litigation is centralized here supports imposition of Arizona's privilege law to govern every case in this MDL. Arizona's attorney-client privilege is statutory, arising out of a unique legislative response to a specific Arizona case. There is no basis for applying Arizona's statute to the communications of a New Jersey corporate defendant for plaintiffs all over the country. But if the Court accepts Bard's argument, then Arizona law applies to *all privilege claims*; it is not "silent" where Bard would rather have some other law apply.

I.   ARGUMENT ADDRESSING WHICH PRIVILEGE LAW CONTROLS

   A.   **New Jersey law and federal common law are both instructive in the applicability of attorney-client privilege in this multidistrict litigation.**

In diversity actions, Rule 501 states that "with respect to an element of a claim or defense as to which State law supplies the rule of decision," matters of privilege are to "be determined in accordance with State law." Rule 501, Fed. R. Evid. Bard makes the unsupported assumption that because one of its subsidiaries is headquartered in Arizona and because this MDL is in Arizona then Arizona privilege law must apply to all claims pending in the MDL. But the question is not so simple: "When Rule 501 requires application of state privilege law and there are factual connections to more than one state, federal courts apply state choice of law rules to determine which state's privilege law controls." *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Prac. And Prods. Liab. Litig.*, 2011 WL 1375011, at *4 (S.D. Ill. Apr. 12, 2011) [hereinafter "*In re Yasmin*"]. In *In re Yasmin*, Judge Herndon noted that "there is no controlling authority" addressing what happens with cases filed directly into an MDL from all over the country and held that MDL plaintiffs should not automatically be subject to the state law of the transferee court. *Id.* at *6.

Plaintiffs do agree with Bard that because all of the claims and defenses in this action are rooted in state law that state privilege law controls. *See id.* at *7. And when state law applies, the Second Restatement holds that the privilege law of the state with the most significant relationship to the communication should apply. *In re Yasmin*, 2011 WL 1375011, at *7 (citing Restatement (Second) Conflict of Laws § 139 (1971)).

Contrary to Bard's contention that the presence of its subsidiary's headquarters in Arizona is dispositive, however, both the parent corporation and almost all of the in-house Bard attorneys who allegedly provided the legal advice at issue reside in New Jersey.[1] And New Jersey's privilege law is materially the same as the general common law privilege advocated by Plaintiffs in their Motion; in New Jersey the attorney-client privilege protects communications "(1) in which legal advice is sought, (2) from an attorney acting in his capacity as a legal advisor, (3) and the communication is made in confidence, (4) by the client." *Hedden v. Kean Univ.*, 82 A.3d 238, 244 (N.J. App. Div. 2013); *cf.* Motion at 1 n.1.

While in a perfect world privilege issues would be decided based on the privilege law of each particular plaintiff's home jurisdiction, this is impossible in an MDL. The most reasonable solution is for the Court to use New Jersey law, federal common law, and the common law of other states who share the same general legal parameters. *See generally In re Yasmin*, 2011 WL 1375011 (relying at times upon federal common law and conceding that there is a lack of authority on how to handle privilege issues in an MDL).

**B.   Arizona's unique privilege statute should not control in this MDL, and if it does apply must be strictly applied based on its plain language to all of Bard's privilege claims.**

Arizona's privilege statute, A.R.S. § 12-2234, is a unique statute that was a legislative reaction to a 1993 Arizona Supreme Court decision, *Samaritan Foundation v. Goodfarb*, 176 Ariz. 497, 862 P.2d 870 (1993). *See Roman Catholic Diocese of Phoenix v. Superior Court ex rel. County of Maricopa*, 204 Ariz. 225, 227 ¶ 11, 62 P.3d 970, 972 (App. 2003) ("We conclude from the language of the statute and the legislative history that the Legislature intended to modify the ruling in *Samaritan Foundation*"); *see also id.* n. 4, 7 (citing David G. Campbell, A Legislative Response to Samaritan, 31 Ariz. Att'y 29 (Dec. 1994) for the discussion of the history of the 1994 amendments to § 12-2234). It is materially different

---

[1] To the extent that any of the alleged legal advice at issue was provided by Bard's long-time IVC filter litigation counsel Nelson Mullins, that firm has offices in Florida, Georgia, Massachusetts, New York, North Carolina, South Carolina, Tennessee, West Virginia, and the District of Columbia (but not Arizona).

from the general common law privilege of New Jersey and other jurisdictions, as Bard's response brief demonstrates. Bard tries to avail itself of some of the Arizona statute's more unique characteristics while pointedly ignoring it for other issues where it is less favorable law. Because of these material distinctions it is a very poor choice to be the sole legal guidance for all privilege issues and every plaintiff in this MDL.[2]

If the Court does decide that the Arizona statute wholly controls the Court's privilege analysis in this MDL, then the scope of the privilege is based solely on the statute's plain language, strictly construing the text to keep the privilege as narrow as possible. *See Salvation Army v. Bryson*, 229 Ariz. 204, 210 ¶ 21, 273 P.3d 656, 662 (App. 2012) ("[W]e will strictly construe a privilege granted by statute."); *Roman Catholic Diocese*, 204 Ariz. at 229 ¶¶ 9, 11, 62 P.3d at 974 (strictly construing § 12-2234 to apply only to civil and not criminal matters); *see also Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379, 381 (holding that because plain language of § 12-2234 only granted privilege to communications with an attorney that communications between non-lawyers were not privileged). And Arizona law then applies to *all* privilege issues, a double-edged sword for Bard at best. Bard asserts for some categories of privilege that where there is no Arizona appellate opinion on point some other law can apply, but the statute's plain language is always the governing authority.

II. **ARGUMENT ADDRESSING CATEGORIES OF BARD'S PRIVILEGE CLAIMS**

  A. **Categorical privilege rulings are necessary to timely evaluate Bard's thousands of privilege claims.**

After several years' worth of discussions between the parties and multiple sampling efforts, including in this MDL, there are still enormous issues with Bard's privilege logs. It has taken almost six months to even get to this point of briefing a limited sampling subset of log entries to present some general legal issues and categories for the Court to decide.

---

[2] Bard's response brief is the first time in this litigation—including hundreds of written communications and dozens of hours of discussions between counsel—that Bard has argued that Arizona law and § 12-2234 govern the privilege issues in this case. There has thus been no meet and confer discussions on the issue of which privilege law the Court should apply.

-4-

Without categorical rulings to help the parties resolve their disputes, discovery will close long before Plaintiffs will have effectively vetted Bard's privilege logs, a process which in the past has led to the release by Bard of an enormous percentage of documents it had initially declared privileged.  *See* Motion at 2-3.  There is urgent need for a large-scale resolution of privilege issues, and precedent for dealing with dispositive privilege rulings on a collective basis.  *See In re: Vioxx Products Liability Litigation*, 501 F. Supp. 2d 789, 796 (E.D. La. 2007) [hereinafter "*In re Vioxx*"].  Plaintiffs' categorical approach substantially tracks the procedure in *Vioxx*, where a special master established general guidelines and then applied those guidelines to make global rulings on categories of documents.  *See id.* at 808-13 (promulgating guidelines for categories of privilege claims). After preliminary categorical rulings were made, the parties were afforded an option to challenge those rulings as to particular documents via a motion for reconsideration and particularized showings that a particular document was or was not subject to the attorney-client privilege.  This is essentially the procedure Plaintiffs ask the Court to adopt.

### B. Category-by-category analysis of Bard's privilege claims.

In Case Management Order No. 10, the Court asked Plaintiffs to identify the categories of privilege into which most of its privilege challenges fell.  Plaintiffs did so via letter of April 4, 2016.  *See* Exhibit C to Bard response brief (doc. 1476), Letter from Troy Brenes to Kate Helm.  Bard's response does not organizationally track with those categories, but Plaintiffs will stick with that organization for rebutting Bard's response brief arguments except as where noted below.

    **1.    Entries where Defendants have failed to establish that the communication evidences a request made to or from a lawyer for the purpose of obtaining or providing legal advice of the lawyer.**

        **a.    Entries where non-attorney employees are alleged to have given legal advice independent of a lawyer.**

If general common law and not Arizona law applies, then for this category Plaintiffs incorporate by reference their arguments in Section IV.B.1 of their Motion, which Bard did not rebut.  But even if Arizona law applies, Bard has not cited any Arizona authority that a

-5-

non-attorney can render legal advice independent of an attorney. Arizona law is to the contrary. Section 12-2234 requires that the purpose of the communication be to provide legal advice from an attorney or to request information so the attorney can provide legal advice. Bard argues that §12-2234(A) extends privilege to communications to and from paralegals. However, the statute merely extends the privilege to communications from the attorney's "paralegal, assistant, secretary, stenographer or clerk" that convey *the attorney's* advice or request information on *the attorney's* behalf. Privilege does not attach to communications where a non-lawyer has given or been requested to give his or her own independent legal advice. Similarly, where Bard cannot describe the attorney on whose behalf the non-lawyer was allegedly communicating the privilege also does not apply.

### b. Entries where both author and recipient are non-attorneys and defendants fail to identify the attorney involved.

As to general common law, Plaintiffs once again stand by their arguments (in Sections IV.B.1 and IV.B.3.d) in their Motion. New Jersey law is in accord; New Jersey's version of Rule 501 expressly extends the attorney-client privilege only to lawyers. N.J.S.A. 2A:84A-20(1); *see also L.J. v. J.B.,* 375 A.2d 1202, 377 (N.J. App. 1977) (holding that "the sine qua non of the privilege is that the client has consulted *the lawyer* [in his] capacity as an attorney" (emphasis added)). As previously stated, Bard must establish the identity of the lawyer allegedly requested to give the legal advice, the purpose for why the lawyer was consulted, and why disclosure to non-lawyers was necessary to fulfill the purpose for which the lawyer was consulted. For communications where Bard cannot provide this information, there is no privilege and the communications must be produced.

Arizona law is even more hostile to Bard's claims of privilege for communications between non-lawyers. Section 12-2234's plain language only grants the privilege to communications "between an attorney for a corporation . . . and any employee, agent, or member of the [corporation]." Indeed, this Court has already evaluated this issue and determined that communications "not 'between an attorney' and an employee of the corporation . . . do not fall within the specific language of the statute." *Bickler,* 266 F.R.D.

-6-

379 (D. Ariz. 2010). Therefore, if Arizona law is applied, all communication not including Bard's lawyers or their paralegals, assistants, secretaries, stenographers, or clerks must be categorically removed from Bard's privilege logs and produced to Plaintiffs.

  **2.**  **Entries that do not reflect any legal advice was given or requested.**

  **3.**  **Entries where a business purpose would have provided a sufficient cause for the communication.**

  **4.**  **Entries where in-house counsel was being asked to edit or comment on non-traditional legal documents versus traditional legal instruments.**

Bard responds to all three of the above categories in Section B.2 of their response brief, leaving it unclear as to which argument aligns with which of the above categories. By necessity, Plaintiffs will respond accordingly.

Bard makes no arguments under Arizona law as to these categories, but to the extent that Arizona law applies Arizona law is consistent with the case law previously cited by Plaintiffs (in Sections IV.B.2, IV.B.3.a, IV.C, and IV.B.3.b of their Motion) holding that privilege does not apply to business advice. *See G & S Investments v. Belman*, 145 Ariz. 258, 264-65, 700 P.2d 1358, 1364-65 (App. 1984) (holding that "the privilege does not apply where one consults an attorney not as a lawyer but as a friend or business advisor").

Turning to general common law, Bard makes several different arguments. First, all communications involving a lawyer are not presumptively privileged. Bard's cases only apply this presumption for communications with *outside* counsel. *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2001). And even where this presumption applies, privilege does not attach to communications involving non-legal matters. *See United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (communications not protected merely because they are directed to an attorney); *Super Tire Engineering Co. v. Bandag, Inc.,* 562 F. Supp. 439, 441 (E.D. Pa. 1983) (communications at meetings attended by attorneys are not automatically privileged as a result of attorney's presence).

Second, like the district court in *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615 (D. Nev. 2013), this court should look to decisional law in the Ninth Circuit for guidance where a

communication may have a dual business or legal purpose. *Id.* at 627. And, for attorney-client privilege, the Ninth Circuit generally follows the "primary purpose" test for dual purpose communications (unlike work product privilege where the "because of" test is the law in the Ninth Circuit). *Id.* at 628; *see also United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011); *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 240 n.38 (N.D. Cal. 2015) (agreeing with *Phillips* and disagreeing with *In re CV Therapeutics, Inc. Securities Litig.*, 2006 WL 1699536 (N.D. Cal. June 16, 2006) (slip op.), that the "because of" test used in work product analysis should not be extended to attorney-client privilege). Under the primary purpose test, privilege does not attach to communications to which a business purpose would have served as a sufficient cause, i.e., the communication would have been made because of a business purpose even if there had been no perceived additional interest in securing legal advice. *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990); *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2001); *Apple Inc.*, 306 F.R.D. at 240-41.

Third, there is no support for Bard's pervasive regulation theory. Bard seems to argue that because the medical device industry is a "highly regulated industry" and Bard relies on in-house counsel to ensure it remains compliant, that any communication with in-house counsel regarding regulatory matters is privileged. But this pervasive regulation theory has been made and resoundingly rejected on numerous occasions because it would allow medical device and pharmaceutical companies to shield from discovery nearly all internal communications by simply including in-house counsel in communications or using them as a conduit for redistribution of communications. *See*, *e.g.*, *In re Vioxx*, 501 F. Supp. 2d at 805; *In re Seroquel Products Liab. Litig.*, 2008 WL 1995058, at *1 (M.D. Fla. May 7, 2008); *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 2009 WL 4641707, at *2 (E.D. Pa. Dec. 7, 2009); *Phillips*, 290 F.R.D. at 629.

Fourth, Bard claims that Plaintiffs assert that any communication involving a federally regulated issue can never be privileged. This is false. What Plaintiffs are saying, however, is that if the attorney is just giving business advice, i.e., he or she is not "giving advice with

respect to the legal implications of a proposed course of conduct," then privilege does not apply. *In re Vioxx*, 501 F. Supp. 2d at 798 (quoting *Hercules Inc. v. Exxon Corp.,* 434 F. Supp. 136, 147 (D. Del. 1977)). There are many purely business reasons for why communications may take place regarding technical, scientific, public relations, management, marketing and safety issues relating to a medical device. For example, *Vioxx* explained that

> If a product were not scientifically or medically valid it would not be marketable. If a good product does not obtain necessary government approval it cannot be placed on the market. If public relations does not effectively increase the company's name recognition and good will, doctors will not prescribe the product or consumers will gravitate to a competing name.

*Id.* at 803. Regulations imposed by the FDA require all manufacturers to conduct quality audits, investigate adverse events, identify and implement corrective actions to prevent further device failures, and to use statistical analysis where necessary. 21 C.F.R. §§ 820.22, 820.100. Thus, the *Vioxx* court found that where grammatical or editorial comments were made to non-legal communications such as scientific reports, articles, and study proposals the materials were not privileged. *In re Vioxx*, 501 F. Supp. 2d at 801 (E.D. La. 2007).

> **5.  Entries where both the author and the recipient are non-lawyers and an attorney was merely copied on the communication.**
>
> **6.  Entries describing a communication to non-lawyers and attorneys seeking simultaneous review and comment.**

Bard did not address these two categories. Plaintiffs thus stand by their arguments in Section IV.B.3.c of their Motion as to these categories. *See also In re Buspirone Antitrust Litig.*, 211 F.R.D. 249, 253 (S.D.N.Y. 2002) (holding that a document sent for simultaneous review and comment by both attorneys and non-attorneys could not be privileged because "[w]here non-legal personnel are asked to provide a response to a matter raised in a document, it cannot be said that the 'primary' purpose of the document is to seek legal advice."); *In re CV Therapeutics, Inc. Securities Litigation*, 2006 WL 2585038 (N.D. Cal., Aug. 30, 2006) (holding that log indicating attorney was cc'd on documents sent to corporate decision makers was insufficient to establish attorney-client privilege absent a showing by the

defendant that the communication was intended to facilitate legal advice); *In re Vioxx*, 501 F. Supp. 2d at 810 (communications to both lawyers and non-lawyers were not facially for primarily legal purposes and so could not be privileged attorney-client communications).

### 7. Entries that do not describe the author or recipient of the communication, including attachments.

Bard claims privilege for communications with attachments regarding business matters such as promotional and marketing materials, but fails to identify the attorney who authored, received, or requested the attachment. Despite repeated requests for this information, Bard has not provided it. Nor did Bard choose to respond to Plaintiffs' arguments regarding this category, as set forth in their Motion at Sections IV.B.1 and IV.C. Therefore, Plaintiffs request an order that all entries, including attachments, where the author of the communication is not identified should presumptively be deemed not privileged.

### 8. Entries where a non-party is an author or listed as receiving a copy of the communication.

Plaintiffs addressed this category in Sections IV.B.3.e and IV.C of their Motion, and Bard responded in Section B.5. of its brief. It is true that courts, in very limited situations, have determined that third-party consultants are covered by attorney-client privilege. However, courts have cautioned that the privilege should only extend where the consultative services are closely tied to the giving of legal, rather than business, advice. *See United States v. Davis*, 636 F.2d 1028, 1041, 1044 (5th Cir. 1981); *FTC v. TRW, Inc.*, 628 F. 2d at 207, 212 (D.C. Cir 1980). The communications involving Dr. Kaufman and Mr. Bliss were not closely tied to the giving of legal advice; they seem to relate to general business matters. Mr. Bliss for example, consulted on quality issues for the Bard, and there is no admissible evidence[3] that he was ever hired or requested to consult by Bard's lawyers, or that he was ever requested to provide information to Bard's lawyers so that they could provide legal advice.

---

[3] Bard's declarations submitted in support of their response would never be admissible in trial and have questionable foundation, including a lack of first-hand knowledge as to many of the issues they are trying to support.

-10-

Similarly, there is no evidence that Dr. Kaufman was ever asked by Bard's lawyers to consult on a legal issue or that he was asked to provide information so that Bard's lawyers could provide legal advice.  Notably, *Phillips* found two of the sampled entries it reviewed to not be privileged because there was no evidence that Bard's lawyers had retained Mr. Bliss to assist with legal matters.  *See id.* at 653-54 (finding no privilege as to Mr. Bliss and ordering production of Joint Selections 27 and 29).

To the extent that Arizona law applies, Arizona has never adopted the functional equivalent test. Instead, the Arizona statute only allows privilege if it was a communication between Bard's lawyer (or his or her paralegal, assistant, or clerk) and an agent of Bard for the purpose of rendering legal advice or gathering information necessary to render legal advice. Any communications not involving Bard's lawyer or his or her direct assistants are not privileged. Further, unless Bard establishes that the communication was relating to legal advice, privilege also does not apply.

**C.     The parties have compiled a matrix of sampled log entries.**

Pursuant to CMO No. 10, attached at Exhibit A is a matrix of sampled entries with both parties' arguments for each specific entry.

**III.   ARGUMENT ADDRESSING WORK PRODUCT PRIVILEGE**

Bard's claims of work product privilege were generally addressed in Plaintiffs' Motion and are addressed individually in the matrix attached at Exhibit A.

**IV.    CONCLUSION**

For the foregoing reasons, the Court should:

- Find that general common law privilege principles should control this MDL, as argued in Plaintiffs' Motion;
- Find that privilege log entries that fall within the categories identified by Plaintiffs in their April 4, 2016, letter to Bard are not proper bases for attorney-client privilege; and
- Order the production of the items listed in Exhibit A or, to the extent the Court needs to review individual items to make a final determination on privilege,

-11-

order *in camera* production of the documents, find that Bard has improperly withheld as privileged those documents therein, and then order their production to Plaintiffs.

RESPECTFULLY SUBMITTED this 29th day of April, 2016.

GALLAGHER & KENNEDY, P.A.

By: */s/ Robert W. Boatman*
    Robert W. Boatman
    Paul L. Stoller
    Shannon L. Clark
    2575 East Camelback Road
    Phoenix, Arizona  85016-9225

LOPEZ McHUGH LLP
    Ramon Rossi Lopez (CA Bar No. 86361)
    (admitted *pro hac vice*)
    100 Bayview Circle, Suite 5600
    Newport Beach, California 92660

*Co-Lead/Liaison Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of April, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

    */s/  Kelly Saltsman*

5395562v2/26997-0001