Chart of the Parties' Privilege Log Examples
*In Re: Bard IVC Filters Products Liability Litigation*

Section 1.b. of Letter dated April 4, 2016

**Plaintiffs' Examples**

| Log | Control | Date | Author | Recipient | CC | Description | Privilege | Bates Begin | Bates End | Plaintiffs' Challenge |
|---|---|---|---|---|---|---|---|---|---|---|
| Log 3 | 2295 | 2/1/2010 | Dara Englert (Trademark Manager) | Bret Baird | DeAnn Goodrich (Paralegal) | Email regarding legal advice about trademark issues | Attorney-Client Privilege | | | Bard has failed to establish that the primary purpose of the communication was to obtain legal advice from a lawyer. The person alleged to be giving legal advice, is not a lawyer and, therefore, privilege cannot apply. |
| Log 3 | 3028 | 2/5/2009 | Jon Conaway | Gin Schulz | Mike Randall; Robin Smithson | Email and attachments reflecting request for legal advice of Gina Dunsmuir, Esquire and Greg Dadika, Esquire about product risk review provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | BPVE-502d-00000574 | BPVE-502d-00000575 | This entry contains an email chain that has now been produced and an attachment that is still being withheld. The email chain begins with an email from Mike Randall dated February 5, 2009 to Brett Baird (Marketing Manager), Genevieve Balutowski (Regulatory Affairs Specialist), Jon Conaway (Quality Assurance), John Reviere (Director, Clinical Affairs), and Robert Carr with a subject line entitled "G2 Expand Completed Action item Summary." In the Body he requests review and comment on the draft so he can send it out "today". On the same day he responds to the same people that the summary has been updated based on their feedback. Jon Conaway then sends an email with the attached "G2 Expand Meeting Action Item Summary Final" to gin Schulz, Mike Randall and Robin Smithson requesting to speak ASAP. Bard claims the attachment reveals legal advice about a product risk review. Bard has failed to establish any facts suggesting the attachment was prepared for the primary purpose of soliciting legal advice. There are no lawyers involved in the email chain or listed as authors of the attachments. Further, the attachment seems to relate to a marketing and/or business plan relating the the G2 Filter. There does not appear to be anything indicating legal significance to the document. The emails also clearly indicates that the attachment was prepared by non-lawyers. |

## Chart of the Parties' Privilege Log Examples
### In Re: Bard IVC Filters Products Liability Litigation

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Log 4 | 29 | 5/10/2001 | Elizabeth Dunn (Bard Law Department) | Suzanne Carpenter (Paralegal) | | Fax regarding product failure analysis to Suzanne Carpenter (Litigation Manager) sent in furtherance of providing information to the legal department needed for providing legal advice. | Attorney-client privilege | BPVE-502d-00000540 | BPVE-502d-00000552 | This is described as a fax transmission dated May 10, 2001 from Elizabeth Dunn (non-lawyer) to Suzanne Carpenter (non-lawyer) regarding a "product failure analysis." Bard's claim of attorney-client privilege should be denied as Bard has failed to establish that the communication reveals a request for or rendering of advice from a lawyer, and because Bard failed disclose any facts suggesting legal advice was being provided or solicited. Notably, the communication does not involve a lawyer and Bard has refused to identify any specific lawyer that was associated with this communication. |

### Bard's Examples

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Log 6 | 191 | 2/21/2013 | Mike Connors | Alex Tessmer | | Email reflecting legal advice of the Bard Legal Department about filter litigation preparation and discovery provided to employees who need the information to perform their job function. | Attorney-Client Privilege; Work Product | | | The entry is described as an email between between Mike Connors (programmer) and Alex Tessmer (engineer) allegedly "reflecting legal advice" of "Bard's Legal Department." Bard's claim of attorney-client privilege should be denied as Bard has failed to establish that communication reveals a request to or rendering of advice from a lawyer, disclose any facts suggesting legal advice was being provided or solicited, or that confidentiality was maintained. Notably, the communication does not involve any lawyer and Bard fails to identify any specific lawyer that was solicited to provide and/or did provide legal advice. Bard's mentions the law department, but as seen elsewhere Bard believes non-lawyers may give their own independent legal advice. Bard has also failed to provide sufficient facts establishing that the communication was prepared because of anticipated litigation. |
| Log 3 | 57 | 9/2/2010 | Cindi Walcott | Bret Baird | Brian Hudson; Bill Little; John Van Vleet | Email requesting and reflecting legal advice of Greg Dadika, Esquire about a patient inquiry provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | BPVE-502d-00000001 | BPVE-502d-00000002 | Log 3, Nos. 57, 127-130, 135 and 136 are all similiar. This is a long email chain that begins on September 1, 2010 with a communication from a patient with a G2 Filter asking whether the risk of failure goes up the longer these devices are left in place. He asks if he should worry and mentions he cannot get an answer form his doctor. There are then a series of internal emails that eventually lead to an in-house lawyer being asked to comment on how Bard should respond. To the extent that the in-house lawyer is merely parroting Bard's position on what to tell or not tell such patients, this is not legal advice. Further, given his response is likely being taken and shared with the public, the communication is not meant to be confidential. |

Chart of the Parties' Privilege Log Examples
*In Re: Bard IVC Filters Products Liability Litigation*

| Bard's Response | Plaintiffs' Response |
|---|---|
| This communication is from Dara Englert, a paralegal in Bard's Law Department working under the direction of counsel. Ms. Englert is relaying legal information concerning an intellectual property matter. (See Ex. 1, Camarata Decl. Para. 2-7.) Bard incorporates its Memorandum Section B.3. | Regardless of whether Arizona or Non-Arizona law applies, a non-lawyer cannot render legal advice independent of an attorney. (Category 1a.) A.R.S. Section 12-2234 merely makes it clear that confidentiality is not waived because the attorney's "paralegal, assistant, secretary, stenographer or clerk" communicates the attorney's advice or requests information on the attorney's behalf. (Category 1a). Bard has also failed to establish that the purpose for the communication was to render legal advice of a lawyer or obtain information so that a lawyer could render legal advice. (Categories 2-3). Providing an affidavit from someone that did begin working at Bard until three years after the communication and who does not claim any personal knowledge of the communication, why it took place, or who was involved, is not sufficient. |
| The e-mail attaches a memorandum that was prepared at the the request and direction of counsel, including Gina Dunsmuir and Greg Dadika, relating to regulatory compliance and litigation issues at the time. Non-attorneys who received the memorandum needed the information to perform their jobs. (See Ex. 1, Camarata Decl. Para.2-7.) Bard incorporates its Memorandum Sections B.2 and B.4.<br><br>Bard's reply (Pursuant to CMO No. 10, Bard is addressing in reply only certain of the entries based on new issues or arguments that plaintiffs made in their response):<br><br>The fact that a document is not "a traditionally legal document" is not a factor in determining whether it contains communications or information protected by the attorney client privilege. Plaintiffs rely on *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 800 (E.D. La. 2007). That court specifically noted that "we have come to appreciate how services that initially appear to be non-legal in nature, like commenting upon and editing television ads and other promotional materials could, in fact, be legal advice . . . . Without question, the pervasive nature of governmental regulation is a factor that must be taken into account"). | To the extent Arizona law applies, privilege fails as the communication is not between Bard's attorney, or his or her "paralegal, assistant, secretary, stenographer or clerk," and "any employee, agent or member of the entity or employer...." (Category 1b.) Privilege also does not attach because marketing and promotional materials like this have a sufficient general business purpose (categories 2-3.) Further, this is not somthing that would be deemed a traditionally legal document (Category 4.) Further, contrary to the claim made by Bard, there is no admissible evidence that this communication was requested and prepared at the "request and direction of counsel." The declaration of Mr. Camarata is irrelvant because she was not employed at Bard until 2013 and she not claim to have personal knowledge of this communication who was invovled in it, or why it was taking place. |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | |
|---|---|
| This document was produced with handwritten comments on the first two pages redacted. The redactions are communications to Suzanne Carpenter, a paralegal in Bard's Law Department who worked at the direction of in-house counsel, providing her information that she requested to be gathered for the Law Department. (See Ex. I, Camarata Decl. Para. 2-7.) Bard incorporates its Memorandum Section B.3. | Regardless of whether Arizona or Non-Arizona law applies, a non-lawyer cannot render legal advice independent of an attorney. (Category 1a.) A.R.S. Section 12-2234 merely makes it clear that confidentiality is not waived because the attorney's "paralegal, assistant, secretary, stenographer or clerk" communicates the attorney's advice or requests information on the attorney's behalf. (Category 1a). For that matter, there is no evidence as to what Ms. Carpenter's position was at that time or who she was working for. Bard has also failed to establish that the purpose for the communication was to render legal advice of a lawyer or obtain information so that a lawyer could render legal advice. (Categories 2-3). There is no indication that this is not just part of Bard's normal obligation to investigate adverse events as they arise. (Categories 2-3). Given the timing of this communication, this likely relates to an adverse event that occurred during Dr. Asch's premarket clinical trial. Providing an affidavit from someone that did begin working at Bard until 12 years after the communication and who does not claim any personal knowledge of the communication, why it took place, or who was involved does not meet bard's evidentiary burden. |
| Plaintiffs challenge this entry as not being between lawyers. This is an example of work product. The email is between a representative of Bard's ESI vendor and employees of Bard regarding additional ESI seraches to be done. It is passed on to the people at Bard who are involved and necessary to the search. Bard incorporates its Memorandum Sections B.3 and C. | To the extent Arizona law applies, privilege fails as the communication is not between Bard's attorney, or his or her "paralegal, assistant, secretary, stenographer or clerk," and "any employee, agent or member of the entity or employer...." (Category 1b.) If under non-Arizona law, Privilege also fails as there is no evidence that the communication was made to render legal advice, to obtain evidence to give legal advice, or that communication of this information between non-lawyers was necessary to fulfill some purpose for which a lawyer had been consulted. The declaration of Mr. Camarata is inadmissible because she was not employed at Bard until November 2013 and she does not claim to have personal knowledge of this communication, who was involved in it, or why it was taking place. |
| Plaintiffs challenge this as a communication not involving a lawyer and not providing legal advice. The redacted portion clearly reflects the legal advice of Bard inhouse counsel Greg Dadika. (See Ex. I, Camarata Decl. Para. 3.) Bard incorporates its Memorandum Sections B.1., B.2. and B.4. | Defendants have not established any admissible evidence rebutting Plaintiffs' argument that this communication is not of legal significance but is rather just a general business matter. Bard's in-house counsel is simply repeating the approved company line about how to respond to questions on this topic. That is not legal advice. Further, given that his response is meant to be shared with a third part, confidentiality does not exist. |