Chart of the Parties' Privilege Log Examples
*In Re: Bard IVC Filters Products Liability Litigation*

Section 3 of Letter dated April 4, 2016

Plaintiffs' Examples

| Log | Control | Date | Author | Recipient | CC | Description | Privilege | Bates Begin | Bates End | Plaintiffs' Challenge |
|---|---|---|---|---|---|---|---|---|---|---|
| Log 1 | 115 | 3/18/2005 | John Lehmann | David Ciavarella | Richard Holcomb; Chris Ganser; Brian Barry; Donna Passero, Esquire. | Email from John Lehmann regarding Recovery® Filter clinical data and attaching spreadsheet pursuant to 11/24/04 contract with the Bard legal department | Attorney-client privilege Work product | | | Bard's December 2004 Health Hazard Evaluation advised that Bard should evaluate a the possibility of clincial trial to assess the risks and benfits of the Recovery Filter in light of substantially higher reported failure rates. Bard then used Dr. Lehmann and Richard Holcomb to perform that assessment. There is no question that this assessment would have been performed in a substantially similar manner regardless of litigation and there were sufficient motivating business reasons for performing it. Bard should not be allowed to manufacture a privilege over a planned and required business activity by simply using in-house counsel to outsource the work to "consultants." Thus Bard has failed to establish that the primary purpose of the communciation was to obtain or provide legal advice, or that the communication was performed "because of" anticipated litigation. The Phillips court found Joint Selection No. 26 discussing Dr. Lehman's and Mr Holcombs work regarding the clincial study strategies to not be protected. , Phillips v. C.R. Bard, Inc., 290, F.R.D. 615; 652-53 (D. Nev. 2013) |
| Log 2 | 403 | 10/3/2005 | Janet Hudnall | Shari Allen | Kevin Shifrin | Email and attachments regarding legal advice of Donna Passero, Esquire about G2 sales force call provided to employees who need the information to perform their job functions at the direction of counsel. | Attorney-Client Privilege | | | Bard's claim of attorney-client privilege should be denied as Bard has failed to: establish that the communication reveals a solicitation for or rendering of advice from a lawyer, discloses any facts suggesting legal advice was being provided or solicited, or that confidentiality was expected or maintained. The communication does not include legal personnel. Bard has also failed to identify who authored the attachments. Further, the communications do not involve a legal matter. Instead they involve a traditional business matter, promotional and marketing practices. See, *Phillips v. C.R. Bard, Inc.*, 290, F.R.D. 615, 644, 653-654 (D. Nev. 2013)(finding Joint Selection No. 5 (Sales Communication) and No. 29 (Colleague letter) not privileged). Bard has also failed to identify who authored the attachments. |
| Log 3 | 334 | 3/24/2006 | Janet Hudnall | Gin Schulz | | Email reflecting legal advice of Brian Leddin, Esquire about phone call from customer and provided to employees who need the information to perform thei job functions. | Attorney-Client Privilege | BPVE-502d-00000191 | BPVE-502d-00000191 | This entry consists of an email chain regarding a hospital risk manager calling about two adverse events, including death case, and about whether Bard reported these to FDA. Bard has failed to establish that the rdacted communications reveal a request for or rendering of legal advice. The subject matter invovled seems to be a simply business matter, where the events reported or not. Further, to the extent that the in-house lawyer is simply parroting the company approved message, that certainly would not be privileged. Further to the extent that anything said by the lawyer was shared with the risk manager, confidentiality would not exist. |

Chart of the Parties' Privilege Log Examples
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | Bard's Examples |
|---|---|---|---|---|---|---|---|---|---|---|
| Log 2 | 794 | 7/28/2004 | Cindi Walcott | Robert Carr | Chris Dorvee; Don vonLinden | Email conveying legal advice of Donna Passero, Esquire about testing on Recovery Filters conducted in anticipation of litigation and provided to employees who need the information to perform their job functions. | Attorney-Client Privilege; Work Product | | | Bard has failed to establish that the communication was created in anticipation of litigation and would not have been created in substantially similar form otherwise. Bard has also failed to establish that the primary purpose of the communication was to provide or obtain legal advice. No lawyer is listed as being a party to the communication. The employees involved are the ones that would typically test returned product as part of Bard's general requirement to test all returned product associated with adverse events and/or exemplar products to determine the cause of failures. Bard has not established any facts suggesting that Bard's lawyers requested this action be done or that it was being done to prepare for litigation. See *Phillips* order discussing Joint Selection 27, which found work product did not apply where there no declaration stating the testing had been ordered by Bard's attorneys. |
| Log 5 | 203 | 4/19/2004 | Brian Barry | John Lehmann | | Email reflecting information provided to Donna Passero, Esquire for purposes of obtaining legal advice about product complaint and provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | This is an email dated April 19, 2004 from Brian Barry to John Lehmann, in which Mr. Barry thanks Dr. Lehmann for his "Review of Miami Recovery patient autopsy report." There is a prior email that is redacted, which likely contained factual information about the deceased patient. Bard claims attorney-client privilege because the review was allegedly commissioned by Donna Passero. Bard's claim should be denied as Bard cannot show that the primary purpose of Dr. Lehmann's review was to obtain legal advice. Bard is required under 21 C.F.R. 820.100 to investigate adverse events, to determine if corrective action is needed, and to ensure such action is sufficient to prevent future failures. Indeed, Bard's prior Remedial Action Plans and Health Hazard evaluations included an analysis by Dr. Lehmann of the autopsy. Thus, there was clearly a sufficient business reason for this review to have occurred. The question becomes, therefore, can Bard use its in-house counsel as a middleman to redistribute normally required business activities so as to obtain privilege. The answer should be no. See, *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2001),"[n]o privilege can attach to any communication as to which a business purpose would have served as a *sufficient cause*, i.e., any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice." |

Chart of the Parties' Privilege Log Examples
In Re: Bard IVC Filters Products Liability Litigation

| Bard's Response | Plaintiffs' Response. |
|---|---|
| This document is a communication from Dr. John Lehmann as part of his November 2004 contract with Bard's Law Department. The communication specifically provides that it is "Privileged and confidential Attorney work product Pursuant to contract dated 11/24/2004," and reflects subject matter described in Schedule A of the November 2004 contract with Bard's Law Department. The plaintiffs are inaccurate in their description of the *Phillips* Court's findings. Richard Holcomb, who was also a consultant to Bard's Law Department in anticipation of litigation, is cc:ed on the communication in furtherance of his work for the Law Department. (*See* Ex. G, Passero Decl. Paras. 12, 13 and 18.) Bard incorporates its Memorandum Sections B.2 and C. | The Health Hazard Evaluation clearly puts Bard on notice of a potentially serious public safety hazard and suggests that Bard conduct a clinical study to evaluate the safety and effectiveness of the Recovery filter. (See, Ex. A to Pls.' Reply). Thus, under 21 C.F.R. Section 820.100 and its own RA-STD-002 procedure, Bard had a business duty to investigate the possibility of conducting a clinical trial. Thus, Bard had a sufficient reason for doing the evaluation and it would have been in a substantially similar format regardless of who did it. However, Bard seeks to assert privilege over its assessment of the feasibility and its reasons for choosing not to conduct the study on the basis that it outsourced the work to consultants. Bard should not be allowed to engineer protection over what was a required business activity simply by outsourcing the work. Bard's supposed effort to distinguish the document from entry 26 from the Phillips case fails. |
| The plaintiffs also challenged this document as part of "Category 2" in their April 4, 2016, letter. (Ex. B, Ltr. from Counsel for Pls. to Counsel for Bard, Apr. 4, 2016.) As Bard stated in response to the Category 2 challenge, this document was redacted for attorney-client privilege. The redacted sentence contains legal advice from Donna Passero, Bard's in-house counsel, regarding a regulatory complaince matter. The attachments to the email were withheld as attorney-client privilege because they reflect material gathered at Ms. Passero's request. (See Ex. G, Passero Decl. Para. 3-5; Ex. I, Camarata Decl. Para. 2-7.) Bard incorporates its Memorandum Section B.1. | The communication does not involve legal counsel or his or her assistants, so the communication cannot be privileged under Arizona Law. (Category 1a.) Even under Non-Arizona law, the communication is not privileged because Bard has not established how this communication is legal in nature or why disclosure was necessary to fulfil the purpose for why the lawyer was consulted. (Category 1b.). Further a communication regarding a "sales force call" is not something that is legal in nature. (Categories 2-4). There is also no evidence supporting that a lawyer drafted the attachment or that it was prepared for lawyer so she could give legal advice. (Category 7). Both cited Declarations are irrelevant because neither one claims personal knowledge about this communication, such as who was involved, what the purpose of the communication was, or who drafted the attachments and why. |
| This document was produced with a redacted sentence that reflects the legal advice of Brain Leddin, an in-house attorney at Bard, regarding how to respond to a call from a hospital's risk management department. Bard incorporates its Memorandum Sections B.1 and B.2. | The communication does not involve legal counsel or his or her assistants, so the communication cannot be privileged under Arizona Law. (Category 1a.) Even under Non-Arizona law, the communication is not privileged because Bard has not established how this communication is legal in nature or why disclosure was necessary to fulfil the purpose for why the lawyer was consulted. (Category 1b.). To extent that counsel is merely stating whether or not events were reported and/or repeating company approved message, these are primarily business matters |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | |
|---|---|
| Plaintiffs challenge this as being a business purpose rather than legal advice. However, the email clearly reflects the legal advice of Donna Passero. (*See* Ex G, Passero Decl.) Bard incorporates its Memorandum Sections B.1., B.2. and B.4.<br><br>Bard's reply:<br><br>A review of the document reveals that it clearly communicates the legal advice of Ms. Passero regarding the handling of returned filters to comply with legal requirements, including preserving evidence in litigation. It was passed on to employees with a need to know. *cf. United States v. Chen*, 99 F.3d 1495, 1500 (9th Cir. 1996) ("Lawyers are constantly called upon to tell people, in advance of action or developed controversy, what their duties are to other people and to the government . . . ."). | The communication does not involve legal counsel or his or her assistants, so the communication cannot be privileged under Arizona Law. (Category 1a.) Even under Non-Arizona law, the communication is not privileged because Bard has not established how this communication is legal in nature or why disclosure was necessary to fulfil the purpose for why the lawyer was consulted. (Category 1b.). Further, Defendants offer no admissible evidence as to how or why this activity is something different in nature than what Bard would have had to do as part of normal regulatory and internal procedure requirements. (See 21 CFR 820.100, RA-STD-002). The employees involved are the ones that would typically test returned product as part of Bard's general requirement to test all returned product associated with adverse events and/or exemplar products to determine the cause of failures. Bard has not established any evidence suggesting that Bard's lawyers requested this action be done or that it was being done to prepare for litigation. Notably, Ms. Camarata was not employed by Bard until 9 years after the communication and cannot have any personal knowledge regarding this communication. |
| Again, this email reflects a request for information from Bard inhouse counsel Donna Passero. *See* Declaration of Passero. The email reflects that Ms. Passero requested a review of information regarding a patient with a Bard filter and the information and analysis was provided by then then Bard Medical Director, Dr. John Lehmann. Bard incorporates its Memorandum Sections B.1., B.2. and B.4. Finally, Bard notes that the Court in *Phillips* found a similar document to be privileged in Joint Selection No. 7.<br><br>Bard's reply:<br><br>One responsibility of an in-house lawyer, such as Ms. Passero, is to evaluate claims and potential claims asserted against the company. This document was clearly prepared for that purpose, and thus is privileged. | Bard has not established or even argued that there was not a sufficient business purpose for the communication to have been created. Bard has also not established or even argued that the document would not have been created in substantially similar form but for the prospect of litigation. Further, this is factual information, which does not become protected merely because Bard's in-house lawyer, who also sits on the Product Assessment Team required under RA-STD-002, is used to redistribute required business communications materials. |