**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

**Section 4 of Letter dated April 4, 2016**

**Plaintiffs' Examples**

| Log | Control | Date | Author | Recipient | CC | Description | Privilege | Bates Begin | Bates End | Plaintiffs' Challenge |
|---|---|---|---|---|---|---|---|---|---|---|
| Log 2 | 293 | 12/30/2004 | Mary Edwards | Pat Rodewald | Shari Allen | Email and attachments regarding legal advice of Judith Reinsdorf, Esquire and Donna Passero, Esquire about sales communication provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | Bard's claim of attorney-client privilege should be denied as Bard has failed to establish that the communication made for the primary purpose of obtaining legal advice. No lawyer is listed as a party to the communication or as an author to the attachments. Further, a sales communication is a general business matter and cerainly is not a traditionally legal instrument once would expect lawyers to comment on. |
| Log 3 | 1965 | 12/6/2006 | Brian Hudson | Stephanie Klocke; Natalie Wong | | Email and attachments regarding legal advice of Brian Leddin, Esquire about G2 Jugular R002 provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | Bard's claim of privilege should be denied as Bard has failed to establish that either the email or attachment was made for the primary purpose of requesting or providing legal advice. There is no question that Bard had an independent business duty under the FDA regulations (21 C.F.R. § 820.100) and its own procedures. (RA-STD-002 procedure, Ex. 2) Thus, there was a separate and sufficient cause for these communications to have taken place. Further, simply providing line edits on a non-traditional legal instrument is generally considered a general business matter. |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| Log | # | Date | From | To | CC | Description | Privilege | Begin Bates | End Bates | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Log 6 | 54 | 9/23/2010 | Patty Christian | John DeFord | Gina Dunsmuir, Esquire | Email reflecting legal advice of Gina Dunsmuir, Esquire about the response to a request for information provided to employees who need the information to perform their job function. | Attorney-Client Privilege | BPVE-502d-00000148 | BPVE-502d-00000150 | This an email chain with an attachment, with the first email being sent by Gina Dunsmuir (in-house counsel) on September 23, 2010 to John Deford (Senior Vice President, Science, Technology, and Clinical Affairs) and Patty Christian (Vice President Regulatory Affairs). The email has an attachment, which consists of Ms. Dunsmuir editing a letter prepared by someone with the initials JVV. The letter is a response to a communication from the Agency for Health Care Research and Quality apparently requesting that Bard identify published studies it was aware of regarding clinical outcomes for its filters. [Again Bard's ESI vendor appears to have had technical difficulties as no attachment line is listed.] Ms. Christian responds on the same day that she accepted the edits. Bard's claim of privilege should be denied as Bard has failed to establish that either the email or attachment was made for the primary purpose of requesting or providing legal advice. As discussed in the *Vioxx* case, simply providing line edits or commenting on traditional business matters such as scientific reports, articles, study proposals, or marketing matters is not providing primarily legal advice. *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 801-03 (E.D. La. 2007). Further, this communication is not analogous to Warning Letter from the FDA, where formal findings of safety violations have been made. Bard is simply responding to a request to identify what medical literature may exist regarding its products. Finally, confidentaility cannot exist over the attachment as the email indicated it was approved and was being distributed to a thrid party. |

**Bard's Examples**

| Log | # | Date | From | To | CC | Description | Privilege | Begin Bates | End Bates | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Log 3 | 423 | 11/26/2007 | Janet Hudnall | Brett Enlow; John Van Vleet | | Email and attachments reflecting legal advice of Gina Dunsmuir, Esquire about revisions to sales force guidance provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | Same or similiar to Log 3, No. 264. Bard has failed to establish that primary purpose of communication was seeking or providing legal advice or that confidentiality was maintained. This is a communication between non-lawyers regarding a business activity and not legal advice. As noted by the magistrate judge in Phillips, grammatical, editorial, and word choice comments are not legal advice. |

Chart of the Parties' Privilege Log Examples
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Log 4 | 4 | 3/15/2004 | Donna Passero, Esquire | Mary Edwards, John Lehmann, Christopher Ganser, Paul Kowalczyk, Brian Berry | Janet Hudnall, Doug Uelmen, Joe DeJohn, Len DeCant, John McDermott | Email requesting and reflecting legal advice of Donna Passero, Esquire regarding sales force communications provided to employees who need the information to perform their job functions | Attorney-client privilege | | | Bard describes this as a single email dated March 15, 2004 from Donna Passero to Mary Edwards, John Lehmann, Christopher Ganser, Paul Kowalczyk, Brian Barry and copied to Janet Hudnall, Doug Uelmen, Joe DeJohn, Len DeCant, John McDermott and "reflecting Ms. Passero's legal advice regarding sales force communications. This appears to be the same email chain that was challenged in the Phillips case as Joint Selection 5. The court found that "the 'primary purpose' of the communication is a business determination with no apparent legal implication." Phillips v. C.R. Bard, Inc., 290 F.R.D. 615, 645 (D. Nev. 2013). Whether or not this is the same email chain, Bard has failed to establish that the primary purpose of the communication was to obtain or solicit legal advice. There is no legal significance to informing the sales force of a device failure. At most, this is simply editing a traditionally non-legal document. |

Chart of the Parties' Privilege Log Examples
In Re: Bard IVC Filters Products Liability Litigation

| Bard's Response | Plaintiffs' Response |
|---|---|
| This is an email discussing edits that Bard's Law Department made to a draft communication. The attachment incorporates the edits that two Bard attorneys, Judith Reinsdorf and Donna Passero, made to the draft. Bard incorporates its Memorandum Section B.2.<br><br>Bard's reply:<br><br>The fact that a document is not "a traditionally legal document" is not a factor in determining whether it contains communications or information protected by the attorney client privilege. Plaintiffs rely on *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 800 (E.D. La. 2007). That court specifically noted that "we have come to appreciate how services that initially appear to be non-legal in nature, like commenting upon and editing television ads and other promotional materials could, in fact, be legal advice. . . . Without question, the pervasive nature of governmental regulation is a factor that must be taken into account"). | of her assistants, so the communication cannot be privileged under Arizona Law. (Category 1a.) Even under Non-Arizona law, the communication is not privileged because Bard has not established how this communication is legal in nature or why disclosure was necessary to fulfill the purpose for why the lawyer was consulted. (Category 1b.) Further, providing edits on regarding marketing and promotional material is not something that is primarily legal in nature. (Categories 2-4). There is also no evidence supporting that a lawyer drafted the attachment or that it was prepared for lawyer so she could give legal advice. (Category 7). Both cited Declarations are irrelevant because neither one claims personal knowledge about this communication, such as who was involved, what the purpose of the communication was, or who drafted the attachments and why. |
| The email notes that comments of in-house counsel, Brian Leddin, are incorporated into the attached document. Mr. Leddin's comments in the attachment concern regulatory compliance. The recipients who were forwarded the legal advice needed the information to perform their jobs. (*See* Ex. I, Camarata Decl. Paras. 2-7.) Bard incorporates its Memorandum Sections B.2. and B.4.<br><br>Bard's reply:<br><br>Plaintiffs' challenge of legal advice regarding documents prepared in compliance with regulatory requirements is misplaced. As is set forth in Bard's Memorandum, numerous courts have recognized the need for legal advice of this very type. A review of the document reveals that Mr. Leddin, in-house counsel at Bard, was providing legal advice regarding language in the document. Again, the court in *In re Vioxx Prods. Liab. Litig.*, on which Plaintiffs rely, recognizes the need and protection for this type of communication. | Simply claiming that something concerns "regulatory compliance" does not satisfy Bard's burden to establish that the primary purpose of the communication was legal in nature. (Categories 2-4). Bard does not dispute that it had a business duty to create this document under its RA-STD-002 policy or FDA regulations. Bard also does not argue that the communication would have been created in the same form absent any alleged legal implications. Bard also fails to cite any evidence establishing that a lawyer authored the attachment. (Category 7). |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | |
|---|---|
| This document was produced with redactions covering legal comments made by, or reflecting the substance of, Bard's in-house counsel, Gina Dunsmuir. Ms. Dunsmuir provided legal edits to a draft response to an inquiry from a regulatory agency. Bard incorporates its Memorandum Section B.2.<br><br>Bard's reply:<br><br>The fact that a document is not "a traditionally legal document" is not a factor in determining whether it contains communications or information protected by the attorney client privilege. Plaintiffs rely on *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 800 (E.D. La. 2007). That court specifically noted that "we have come to appreciate how services that initially appear to be non-legal in nature, like commenting upon and editing television ads and other promotional materials could, in fact, be legal advice … Without question, the pervasive nature of governmental regulation is a factor that must be taken into account"). A review of the redacted portions of the document reflects that they are Ms. Dunsmuir's legal advice and analysis under the totality of the circumstances of this document. | Bard makes no effort to explain how commenting on this response is legal in nature. Bard does not claim that Ms. Dunsmuir is giving advice regarding legal implications of a proposed course of action. Bard also does not dispute that this is not a traditional legal document. Bard seems to continue to believe anything written by a lawyer regardless of the topic is privileged because a lawyer is involved. |
| This is an email and attachments that reflect that were prepared by counsel and are labeled as "Attorney Work Product." The email describes them as prepared by Gina Gunsmuir, Assistant General Counsel, Compliance. (*See* Ex. 1, Camarata Decl. Paras. 2-3). Bard incorporates its Memorandum Sections B.1, B2 and B.4. Finally Bard notes that a similar document was found to be privileged by the Court in *Phillips* in Joint Selection 46 and under the analysis followed by that Court. | The communication does not involve legal counsel or his or her assistants, so the communication cannot be privileged under Arizona Law. (Category 1a.) Even under Non-Arizona law, the communication is not privileged because Bard has not established how this communication is legal in nature or why disclosure was necessary to fulfil the purpose for why the lawyer was consulted. (Category 1b.). Further, Defendants fail to explain how a communication regarding "sales force guidance" is not primarily business related or how this relates to a "pending lawsuit" as claimed. (Categories 2-4). There is also no evidence supporting that a lawyer drafted the attachment or that it was prepared for lawyer so she could give legal advice. (Category 7). The cited Declaration is inadmissible and irrelevant because the communication took place 6 years before she was employed by Bard, and |

Chart of the Parties' Privilege Log Examples
In Re: Bard IVC Filters Products Liability Litigation

| | |
|---|---|
| This is an email reflecting changes made to internal communications at Bard because of proposed changes to the IFU. Because of regulations in the industry both the Vice President of Regulatory and inhouse counsel reviewed and revised the document. (*See* Ex. G, Passero Decl. Paras. 2-4; Ex. I, Camarata Decl. Para. 4). Bard incorporates it Memorandum Sections B.1. and B.2.<br><br>Bard's reply:<br><br>This is not same document as Joint Selection 5 in *Phillips*. That document was an email dated March 16, 2004 from Mary Edwards. That document was produced by Bard following the *Phillips* ruling. As was discussed with counsel during the meet and confer process, this is a separate version of the email chain that contains handwritten legal advice from Donna Passero. Further, the fact that the document concerns a sales communication does not render the advice non-privileged. As the Court in *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 800 (E.D. La. 2007) specifically noted that "we have come to appreciate how services that initially appear to be non-legal in nature, like commenting upon and editing television ads and other promotional materials could, in fact, be legal advice. . . . Without question, the pervasive nature of governmental regulation is a factor that must be taken into account"). | Defendants apparently do not dispute that this document was already ruled to be not privileged in the Phillips case. Bard further offers no explanation for how in-house jointly reviewing an editing a sales force communication regarding a product failure is somehow legal in nature. Simply, claiming that the medical industry is highly regulated is not sufficient to establish privilege over in-house counsel editing technical, marketing, promotional or management communications. (Categories 2-4). |