**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

**Section 5 of Letter dated April 4, 2016**

**Plaintiffs' Examples**

| Log | Control | Date | Author | Recipient | CC | Description | Privilege | Bates Begin | Bates End | Plaintiffs' Challenge |
|---|---|---|---|---|---|---|---|---|---|---|
| Log 2 | 816 | 10/5/2004 | Christopher Ganser | Brian Barry; Mary Edwards | David Ciavarella; Donna Passero, Esquire; Doug Uelmen | Email regarding legal advice about Dear Doctor letter. | Attorney-Client Privilege | BPVE-502d-00000587 | BPVE-502d-000000588 | Bard has failed to establish that the communication was made for the primary purpose of obtaining legal advice. First, Donna Passero was only copied on the communication. Second, Bard does not explain how an email relating to a dear Dr. Letter indicates the solicitation or provision of legal advice. This is general business matter not something that is traditionally a legal instrument. The *Phillips* court determined a strikingly similar document to not be privileged for the same reasons. *See, Phillips* Order disccusing Joint Selection 26. |
| Log 2 | 859 | 8/18/2004 | Brian Barry | Robert Carr; Doug Uelmen | Shari Allen; David Ciavarella; Mary Edwards; Christopher Ganser; Kim Gonzales; Janet Hudnall; Karen Hutchison; Pete Palermo; Donna Passero, Esquire | Email regarding legal advice about Recovery Filter IFU revisions. | Attorney-Client Privilege | | | Bard has failed to establish that the redacted communications were made for the purpose of obtaining legal advice. The email just realtes to a team effort to review and comment on a proposed IFU. This is a non-legal function, which is certainly supported by the group effort. Further, given the wide distribution confidentiality was not maintained or expected. |

Chart of the Parties' Privilege Log Examples
*In Re: Bard IVC Filters Products Liability Litigation*

| Log 3 | 3987 | 8/10/2010 | John Van Vleet | Jim Beasley; Brian Doherty; Bill Little; Abtihal Raji-Kubba; Gin Schulz | Gina Dunsmuir, Esquire | Email requesting legal advice about IVC filter article and provided to employees who need the information to perform functions. | Attorney-Client Privilege | | | Bard's claim of attorney-client privilege should be denied as Bard has failed to establish that the communication reveals a confidential solicitation for or rendering of legal advice from a lawyer. Here, a regulatory and clinical affairs manager emails a sales manager, a marketing manager, a research and development manager, VP of quality assurance, and the President of Bard Peripheral Vascular and copies in-house counsel and allegedly requests legal advice regarding an IVC filter article. Bard has not provided any facts explaining how how or why legal advice was implicated regarding a medical article. Further, given that counsel was merely copied is suggestive that this was really a business communication. Finally, Bard has not explained why such a wide range of personnel would need the alleged legal advice to fulfill the purpose for which the advice was sought. |
|---|---|---|---|---|---|---|---|---|---|---|

**Bard's Examples**

| Log 1 | 114 | 3/18/2005 | John Lehmann and Richard Holcomb | David Ciavarella | Donna Passero, Esquire; Brian Barry; Chris Ganser | File folder regarding clinical data strategies for Recovery® Filter with March 2005 report by Independent Consultant #1 and Richard Holcomb regarding clinical data strategies for Recovery® Filter | Attorney-client privilege Work product | | | Bard's December 2004 Health Hazard Evaluation advised that Bard should evaluate a the possibility of clincial trial to assess the risks and benfits of the Recovery Filter in light of substantially higher reported failure rates. Bard then used Dr. Lehmann and Richard Holcomb to perform that assessment. There is no question that this assessment would have been performed in a substantially similar manner regardless of litigation and there were sufficient motivating business reasons for performing it. Bard should not be allowed to manufacture a privilege over a planned and required business activity by simply using in-house counsel to outsource the work to "consultants." Thus Bard has failed to establish that the primary purpose of the communciation was to obtain or provide legal advice, or that the communication was performed "because of" anticipated litigation. The *Phillips* court in found Joint Selection No. 26 discussing Dr. Lehman's and Mr Holcombs work regarding the clincial study strategies to not be protected. , *Phillips v. C.R. Bard, Inc.*, 290, F.R.D. 615, 652-53 (D. Nev. 2013) |
|---|---|---|---|---|---|---|---|---|---|---|

Chart of the Parties' Privilege Log Examples
In Re: Bard IVC Filters Products Liability Litigation

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Log 3 | 3161 | 3/23/2010 | Mike Randall | Nikki Church (Legal Assistant) | Gina Dunsmuir, Esquire; Adam Rappaport, Esquire | Email and attachments reflecting legal advice of attorneys Adam Rappaport and Gina Dunsmuir regarding filter study sent to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | This entry is long email chain regarding a request by physicians at the University of Michigan to have Bard fund a study on IVC filters that they were proposing. The final email in the chain is an email from Mike Randall (Project Lead, Research & Development ) to Nikki Church (Document Control) and copied to two in-house lawyers. Mr. Randall mentions that attached to his email is "signed off grant request," the study proposal, and the University Policy on grants. Documents are sent to "Document Control" when they are finalized, so that all final documents can be preserved. Mr. Randall confirms this by asking Mr. Church to let him know if she need any further information. There is nothing about his email that suggest these attachments were being transmitted to obtain legal advice from a lawyer. Rather, these business attachments are being sent so that the proposed study can be funded by Bard. |

Chart of the Parties' Privilege Log Examples
In Re: Bard IVC Filters Products Liability Litigation

| Bard's Response | Plaintiffs' Response |
|---|---|
| This communication requests legal and regulatory advice regarding communication with the FDA. (See Ex. G, Passero Decl. Para. 3-5, Ex. I, Camarata Decl. 2-7.) Bard incorporates its Memorandum Section B.2.<br><br>Bard's reply:<br><br>As is addressed in Bard's memorandum and previously in the matrix, the fact that a document is not a "legal document" such as a pleading or contract does not prevent it from being subject to legal advice in drafting and review. Again, this was addressed by the court in the case on which plaintiffs primarily rely, *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 800 (E.D. La. 2007). That court specifically noted that "we have come to appreciate how services that initially appear to be non-legal in nature, like commenting upon and editing television ads and other promotional materials could, in fact, be legal advice . . . . Without question, the pervasive nature of governmental regulation is a factor that must be taken into account"). This email is an example of advice being solicited from both a regulatory business person and in house counsel regarding materials that are required to be submitted to the FDA. | Bard provides no explanation of how a communication to physicians implicates legal advice. Further, Defendants offer no evidence to rebut the logical conclusion that a communication sent to business people and just copied to lawyers is likely at best intended for both business and legal reasons. The cited declarations are irrelevant as neither declaration discusses this communication, who was asked to do what, what legal advice if any was given. |
| This email chain was produced redacted. The redacted portions reflect the legal advice of Bard in-house and outside lawyers. (See Ex. G, Passero Decl. Para. 3-5.) Bard incorporates its Memorandum Section B.2.<br><br>Bard's reply:<br><br>As is addressed in Bard's memorandum and previously in the matrix, the fact that a document is not a "legal document" such as a pleading or contract does not prevent it from being subject to legal advice in drafting and review. Again, this was addressed by the court in the case on which plaintiffs primarily rely, *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 800 (E.D. La. 2007). That court specifically noted that "we have come to appreciate how services that initially appear to be non-legal in nature, like commenting upon and editing television ads and other promotional materials could, in fact, be legal advice    . Without question, the pervasive nature of governmental regulation is a factor that must be taken into account"). A review of this email clearly reflects that it includes the advice and in-house and outside counsel regarding a the IFU for a filter. | Bard offers no evidence to rebut the logical conclusion that a communication sent to such a large number non-lawyers and just copied to lawyers is likely at best intended for both business and legal reasons. The cited declarations are irrelevant as neither declaration discusses this communication, who was asked to do what, what legal advice was allegedly given and/or requested. |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | |
|---|---|
| This email is a draft correspondence sent to in-house counsel responsible for regulatory compliance, Gina Dunsmuir, and other management-level employees. Although not directly written to counsel, it's heading "ATTORNEY CLIENT PRIVILEGED COMMUNICATION" explicitly seeks legal advice. Bard incorporates its Memorandum Section B.2. | Bard has still not provided any facts explaining how or why legal advice is implicated regarding a medical article. Further, given that counsel was merely copied is suggestive that this was really a business communication. Finally, Bard has not explained why such a wide range of personnel would need the alleged legal advice to fulfill the purpose for which the advice was sought. Finally, simply labeling something privileged does not render it privileged. |
| This is not Joint Selection 25 from *Phillips*. To the contrary this is part of the work that was performed by Dr. Lehmann and Mr. Holcombe and found to be work product. By this Court. The email is directed to Dr. Ciavarella, Ms. Passero is copied and it specifically states that it is part of the ongoing work pursuant to the Nov. 2004 contract with the Bard Law Department. (See Ex. G, Passero Decl.) Bard incorporates it Memorandum Sections B.1, B.2. and C.<br><br>Bard's reply:<br><br>Plaintiffs include this as a challenge as a business and regulatory required document. To the contrary, this is a document similar to Joint Selection 25 in *Phillips*. This is part of the work product preformed by Dr. Lehmann and Mr. Holcomb found to be work product by this Court and the court in *Phillips*. The email is directed to Dr. Ciavarella. Ms. Passero is copied and it specifically states that it is part of the ongoing work pursuant to the Nov. 2004 contract with the Bard Law Department. (See, Ex. G, Passero Decl.); Bard incorporates its Memorandum Sections B.1., B.2. and C. | The Health Hazard Evaluation clearly puts Bard on notice of a potentially serious public safety hazard and suggests that Bard conduct a clinical study to evaluate the safety and effectiveness of the Recovery filter. (See, Ex. A to Pls.' Reply). Thus, under 21 C.F.R. Section 820.100 and its own RA-STD-002 procedure, Bard had a business duty to investigate the possibility of conducting a clinical trial. Bard had a sufficient reason for doing the evaluation and it would have been in a substantially similar format regardless of who did it. However, Bard seeks to assert privilege over its assessment of the feasibility and its reasons for choosing not to conduct the study on the basis that it outsourced the work to consultants. Bard should not be allowed to engineer protection over what was a required business activity simply by outsourcing the work. Bard's supposed effort to distinguish the document from entry 26 from the Phillips case fails. |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | |
|---|---|
| This is an email chain seeking legal advice on a contract and agreement relating to a study. The email chain requests legal advice from Adam Rappaport, Assistant General Counsel, and Gina Dunsmuir, Assistant General Counsel, Compliance. The last email is to a legal assistant who assists Ms. Dunsmuir in compliance and the lawyers are copied. It passes on that same reqeust for advice and information needed for the grant request. (*See* Ex. I, Camarata Decl. Paras 3-4.) Bard incorporates its Memorandum Sections B.1, B2 and B3. | Bard has not disputed that these documents were final. Further, the declarations do not support the cited position and are inadmissible for lacking personal knowledge. Neither declaration alleges to have knowledge regarding this communication, who was involved in it, what legal advice was being request and by whom, or whether or not the documents were final. Nor is there any evidence as to what position Ms. Church held and to who she reported. |