Chart of the Parties' Privilege Log Examples
*In Re: Bard IVC Filters Products Liability Litigation*

**Section 6 of Letter dated April 4, 2016**

**Plaintiffs' Examples**

| Log | Control | Date | Author | Recipient | CC | Description | Privilege | Bates Begin | Bates End | Plaintiffs' Challenge |
|---|---|---|---|---|---|---|---|---|---|---|
| Log 3 | 809 | 4/18/2008 | Suzanne Carp | Cindi Walcott | | Email and attachments regarding legal advice about a Recovery Filter lawsuit provided to employee who needs the information to perform her job function. | Attorney-Client Privilege; Work Product | BPV-COMP-TW-00002991 | BPV-COMP-TW-00002993 | There was likely a typo in designating this challenge. Plaintiffs will withdraw the challenge if Defendants agree to identify the bates number of the produced email and attachments. If not, plaintiffs maintain the challenge as an example of two non-lawyers engaging in simultaneous review. Bard fails to identify what lawyers allegedly provided legal advice. Moreover, given that this letter is being distributed to a third party, confidentiality was not expected or maintained. |
| Log 6 | 251 | 6/7/2004 | David Ciavarella | Mary Edwards | | Email and attachments reflecting legal advice and other information prepared at request of Bard Legal Department about questions for a clinician panel provided to employees who need the information to perform their job function. | Attorney-Client Privilege | BPVE-502d-00000608 | BPVE-502d-00000608 | Bard's claim of attorney-client privilege should be denied as Bard has failed to establish that communication reveals a request to or rendering of advice from a lawyer, disclose any facts suggesting legal advice was being provided or solicited, or that confidentiality was maintained. The communication is between David Ciavarella (Medical Director) and Mary Edwards (Vice President, Regulatory & Clinical Affairs and appears to relate to a physician panel that Bard conducted as part of its normal course of business to investigate its device failures and determine if corrective action was needed. |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Log 3 | 175 | 10/12/2006 | John McDermott | Shari Allen; Joe DeJohn; Janet Hudnall; Gin Schulz | Mary Minske, Kevin Shifrin | Email reflecting legal advice of Judith Reinsdorf, Esquire about a communication plan provided to employees who need the information to perform their job functions. | Attorney-Client Privilege | | | Entries from Log 3, Nos. 175, 505.01, 519, 520.01, 521, 523 and 3804 all invovle the same disputed information. This is an email chain that begins with John McDermott emailing Judith Reinsdorf (Vice President, Secretary, and General Counsel of C.R. Bard) on October 10, 2006 and copying Brian Barry, Dr. Ciavarella, Christopher Ganser, Shari Allen, Janet Hudnall, and Gin Schulz with the subject line "G2", as in G2 Filter. The email apparently contained an attached "action and communication" plan prepared by Mr. McDermott. Ms. Reinsdorf replies on October 12, to Mr. McDermott and copies John Weiland, and Brian Barry. She notes that she has reviewed Mr. McDermott's action and communication plan with Brian Barry and John Weiland and they are in agreement on a number of issues regarding the plan, which she goes on to identify. The entire email is the forwarded four more times and is seen by multiple different employees, including, for example, Cindi Walcott (Field Assurance Manager), who is responsible for investigating adverse events.<br><br>Bard's privilege claim should be denied as it has failed to establish that the communication was made for the primary purpose of soliciting legal advice or that confidentiality was expected or maintained. First, there is nothing that appears to be of legal significance to the communications. This is simply a marketing communication, which is certainly not the type of traditional legal document discussed in the Vioxx case. Further, while Ms. Reinsdorf is a lawyer, she also held the positions of Vice President and Secretary for C.R. Bard. Thus, she was not necessarily acting in her role as a lawyer. The initial email was also sent out for simultaneous review and comment to other non-lawyers. Indeed, Ms. Reinsdorf makes it clear that she did in fact review the plan with other non-lawyers and that her suggestions were reached jointly with the non-lawyers. This strongly indicated that the primary purpose was business related. Finally, Bard has not established why the numerous employees who were provided with this email chain needed it to fulfill the purpose for why the lawyer was consulted. |
| | | | | | | **Bard's Examples** | | | | |
| Log 3 | 2099 | 4/6/2009 | Brian Hudson | Bret Baird | | Email requesting legal advice from counsel, Greg Dadika, Esquire and Gina Dunsmuir, Esquire, about sales force talking points and provided to other employees who need the information to perform their job functions. | Attorney-Client Privilege | | | This is an email chain with starting with an email on April 4, 2009 from Bret Baird to Bill Little, Brian Doherty, Greg Dadika, Gina Dunsmuir, Brian Hudson, and Gin Schulz. In the email, Mr. Hudson request simultaneous review and comments on a cover letter and talking points document he prepared for the sales force. Bard has now produced the email redacted but is still withholding the attachment. Bard has failed to establish that the primary purpose of this communication was to obtain legal advice. First, the subject matter is something that is far more closely relate to general business matter, i.e. instructing the sales force how best to promote the product to achieve sales. The fact that this was drafted by a non-lawyer and was submitted for simultaneous review further suggests the primary purpose of the communication as something other than to obtain legal advice. given that the attachment is not listed as in the email header, this entry presents another example of a poor technical production of ESI information |

Chart of the Parties' Privilege Log Examples
*In Re: Bard IVC Filters Products Liability Litigation*

| Log | No. | Date | From | To | CC | Description | Privilege | Bates Begin | Bates End | Plaintiffs' Position |
|---|---|---|---|---|---|---|---|---|---|---|
| Log 2 | 816 | 10/5/2004 | Christopher Ganser | Brian Barry, Mary Edwards | David Ciavarella; Donna Passero, Esquire; Doug Uelmen | Email regarding legal advice about Dear Doctor letter. | Attorney-Client Privilege | BPVE-502d-00000587 | BPVE-502d-00000588 | Bard has failed to establish that the communication was made for the primary purpose of obtaining legal advice. First, Donna Passero was only copied on the communication. Second, Bard does not explain how an email relating to a dear Dr. Letter indicates the solicitation or provision of legal advice. This is general business matter not something that is traditionally a legal instrument. The *Phillips* court determined a strikingly similar document to not be privileged for the same reasons. *See, Phillips* Order disccusing Joint Selection 26. |

Chart of the Parties' Privilege Log Examples
*In Re: Bard IVC Filters Products Liability Litigation*

| Bard's Response | Plaintiffs' Response |
|---|---|
| This document was not included on Plaintiffs' matrix and was not in the disputed entries the parties agreed to present to the Court. It is not an example of a document sent to lawyers and non-lawyers for simultaneous review. It is an email from a Bard paralegal responsible for litigation forwarding a draft letter to be sent to a plaintiffs' lawyer representing a party making a claim about an IVC filter. The final version of the letter sent was produced with HIPAA redactions. (See Ex. I, Camarata Decl. Paras. 2-4). Bard incorporates its Memorandum Section B. 3.<br><br>Bard's reply:<br><br>The bates ranges of the document produced were included in the Matrix when filed with Bard's response. | |
| After further review and investigation, Bard determined that the attachment referred to in this email was produced. Bard has produced the email.<br><br>Bard's reply:<br><br>This document was produced on April 29, 2016. | Plaintiffs request that the documents still be submitted to the Court for review for the Court to have an accurate understanding of the types of documents still being claimed as privileged. Indeed, Bard has expressly argued that any documents released from the privilege logs are only being released pursuant to a 502(d) order and are actually still privileged. Bard also states that just because a documents is removed cannot be taken as support that similar documents should be removed. Further, because Bard failed to provide bates numbers, Plaintiffs have no way to verify these documents were actually produced. |

Chart of the Parties' Privilege Log Examples
In Re: Bard IVC Filters Products Liability Litigation

| | |
|---|---|
| Plaintffs have combined 8 separate entries in the matrix. These documents are not examples of a document sent to lawyers and non-lawyers for simultaneous review. The entry at issue is an email that was produced redacted. The redacted portions reflect the request for and legal advice provided by Judith Reinsdorf, the General Counsel of Bard, to the President of BPV, the President of Bard, and the V.P. of Regularoty Affairs for Bard. It is then forwarded to management level employess of BPV who need the information. Bard incorporates its Memorandum Sections B.1. and B.2.<br><br>Bard's reply:<br><br>A review will reveal (and plaintiffs were told in the meet and confer) that this email chain starts as a request for review and legal advice from John McDermott, the president of BPV, to Ms. Reinsdorf, the General Counsel of Bard. Again, the fact that a document is not "a traditionally legal document" is not a factor in determining whether it contains communications or information protected by the attorney client privilege. Plaintiffs rely on *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 800 (E.D. La. 2007). That court specifically noted that "we have come to appreciate how services that initially appear to be non-legal in nature, like commenting upon and editing television ads and other promotional materials could, in fact, be legal advice .... Without question, the pervasive nature of governmental regulation is a factor that must be taken into account"). Obviously, those types of documents are often created by non-lawyers and circulated to lawyers for review. BPV's management is clearly seeking legal advice about an action plan and documents from the General Counsel. | Bard fails to explain how this email and the promotional action and communication plan are not primarily business related. Further, the express language of the emails contradict Bard's claim that Mr. McDermott's action and communication plan was not sent for simultaneous review. Ms. Dunsmuir expressly states that she reviewed it with Brian Barry and John Weiland and they are in agreement on a number of issues regarding the plan, which she goes on to identify. Bard also fails to provide a declaration or any other evidence claiming and attempting to explain how she was acting in a legal role versus her role as Vice President and Secretary for C.R. Bard. |
| This is a follow up email that was produced redacted and is an example of a document sent for simultaneous review to a group that will provide legal and non-legal input. In addition to seeking business input, Mr. Baird is requesting input from inhouse lawyers responsible for litigation and regulatory compliance. In 2009, Bard was addressing both areas relating to its IVC filters. (*See* Ex. I, Camarata Decl. Paras. 3-7). Bard incorporates its Memorandum Sections B.1, B.2. and B.4. | Bard has not provided any evidence supporting the claim that Ms. Carpenter was acting on behalf of a lawyer in respect to the communication. Bard also fails to explain how a talking points memo prepared by a non-lawyer to teach the sales for how best to promote the product is somehow primarily a legal activity. |

**Chart of the Parties' Privilege Log Examples**
*In Re: Bard IVC Filters Products Liability Litigation*

| | |
|---|---|
| This is an email sent to lawyers and non lawyers for regulatory and legal advice relating to drafts to go to doctors and the FDA. It specifically requests input from Ms. Passero an inhouse lawyer at Bard. (*See* Ex. I, Camarata Decl. Paras. 3-7.) Bard incorporates its Memorandum Sections B.1 and B.2. As the *Phillips* Court noted, including a lawyer in an email communication can have the same effect as emailing her directly for advice. *Phillips* Joint Selection 42<br><br>Bard's reply<br><br>This is another example of a business person seeking legal advice and business advice regarding a course of action and a potential business document. | Bard offers no evidence supporting the claim that a lawyer is being asked to act as a lawyer - give legal advice regarding potential implications of a propose course of conduct. Nor is there any evidence that these materials are created for the FDA. "[f]acially, it appear[s] far more probable that the non-lawyers were being seen the communications for separate business reasons. Therefore, it [is] the burden of [the corporate defendant] to overcome the logical inference created by the pattern of distribution." In re Vioxx Products Liab. Litig., 501 F.Supp.2d at 809. |