Robert W. Boatman (009619)
Paul L. Stoller (016773)
Shannon L. Clark (019708)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone: (602) 530-8000
rwb@gknet.com
paul.stoller@gknet.com
SLC@gknet.com

Ramon Rossi Lopez (CA Bar No. 86361)
(admitted *pro hac vice*)
LOPEZ McHUGH LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660
rlopez@lopezmchugh.com
*Co-Lead/Liaison Counsel for Plaintiffs*

James R. Condo (#005867)
Amanda C. Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
E-Mail: jcondo@swlaw.com
            asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
Nelson Mullins Riley & Scarborough, LLP
201 17th St. NW, Suite 1700
Atlanta, GA 30363
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com
*Attorneys for Defendants C. R. Bard, Inc.
and Bard Peripheral Vascular, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re Bard IVC Filters Products Liability Litigation | NO. MD-15-02641-PHX-DGC<br><br>**PARTIES' JOINT REPORT AND DISPUTE MATRIX REGARDING ESI DISCOVERY AND CUSTODIANS** |

In accordance with Case Management Order No. 10 [Doc. 1319], the parties submit this this report on the status of ESI discovery and a matrix of their present disputes with respect to custodians from whom collections should be taken.

**I.     Joint Report on Status**

In accordance with the parties' last report [Doc. 1151] and their updates to the Court at the last case management conference on March 31, 2016, Plaintiffs have taken two depositions and conducted one informal interview of Bard employees regarding the corporate structure, the information structure, and the information systems architecture of C.R. Bard, Inc., Bard Peripheral Vascular, Inc., and their related entities.  Arising out of those depositions and interview, and Bard's interrogatory responses concerning the foregoing subject matter, the parties have had several meet-and-confer sessions to discuss the identification, collection, search, and production of ESI and the disclosure of information that was not provided by Plaintiffs' discovery to date.

Those discussions are ongoing but the parties have agreed on the following issues:

A.     <u>Updating Collections From Previously-Collected Custodians</u>

The parties have agreed on a list of 21 previously-collected custodians for whom Defendants will update their collections of ESI.  In agreeing to an update for those custodians, the Defendants contend that the individuals in question have had significant ongoing roles at the companies regarding the filter products.  Defendants further contend that this subset of custodians includes (but is not limited to) all previously searched custodians who have been identified as having a role with the later generation filters (the Eclipse, the Meridian and the Denali).

Plaintiffs have also asked Defendants to review the timing of collection for 32 additional previously-collected custodians whose employment with Defendants appears to have ended at or after the general time frames for which Defendants have indicated they collected those custodians' ESI in the past.  Plaintiffs have requested that Defendants confirm that their prior collections were such that they captured all of the ESI from those custodians.

1     Defendants believe that the Plaintiffs' demand for the update of 62 total custodians
2  (a number which includes the 21 custodians agreed upon by the parties, the 32 referenced
3  here, and the 9 referenced below), in addition to the many new custodians requested by
4  the Plaintiffs, may be excessive and overly burdensome, in view of the marginal relevance
5  of many of those custodians.  Moreover, Bard believes the custodian requests are
6  excessive given the 90-plus custodians whose ESI has already been reviewed and
7  produced, using – among other key words – the names of Bard's later generation filters
8  (Eclipse, Meridian, and Denali).  Nonetheless, Defendants have agreed to review the
9  timing of the collections from those custodians.  The parties have agreed to meet and
10 confer thereafter as to whether additional collection is necessary or warranted for any
11 custodians for whom Defendants cannot so confirm.

12    Plaintiffs have also provided Defendants a list of nine previously-collected
13 custodians whose ESI collection Plaintiffs would like Defendants to update.  Without
14 conceding that updated collections from those additional custodians are either necessary
15 or warranted, Defendants are reviewing that list and will meet and confer with Plaintiffs
16 on that list this week.  If the parties are ultimately in disagreement on any of the
17 custodians, they will submit any such disputes to the Court by no later than June 1.

18    B.    New Custodians

19    The parties have agreed on a list of 24 new custodians for whom Defendants will
20 collect ESI.  Defendants contend that this list includes all custodians requested by
21 Plaintiffs who have previously been identified as having a significant role with the later
22 generation filters, as well as other custodians who Defendants recognize as having
23 substantial involvement with filters over the years.  Defendants have agreed to commence
24 collections from those custodians immediately.  The parties have also agreed that there
25 will be collections made from additional new custodians and that they will have further
26 discussions regarding such custodians.  The parties anticipate that this will be an iterative
27 process by which Plaintiffs will identify new potential custodians, the parties will meet
28

and confer with respect to those custodians, and the parties will bring to the Court disputes as they arise.

The parties have identified an area of dispute with respect to sales personnel, which is addressed in Section II, below.

### C.   Collection Locations

The parties have agreed on collection from certain locations with respect to individual custodians.  The parties continue to discuss how to identify information for collection from certain shared drives and systems.  Defendants have agreed to provide Plaintiffs additional information regarding the organization and search capability those drives and systems in the coming week.  The parties will then meet and confer further regarding the best way to identify and collect information from those shared drives and systems.

### D.   Search Methodology

The parties have conferred about the search methodology to use once Defendants have collected the additional ESI.  The parties previously agreed to de-duplication procedures and to certain metadata and content extraction as part of the agreed ESI Form and Format Protocol [Case Management Order No. 9, Doc. 1259].  For the search and production of ESI, the parties have agreed to an iterative approach.  Once Defendants complete their initial collection for this MDL, their ESI vendor will run a set of keywords across all collected data and provide a hits report to the parties regarding the frequency of the hits for each keyword as well as the frequency of its occurrence with other keywords on the list.  The parties will then meet and confer regarding using productive keywords and/or Boolean searches to do an initial culling of the complete ESI pool to a smaller set, including testing of representative non-responsive documents and files.

Once that initial culling process is complete, the parties will meet and confer regarding how to proceed and whether and what additional search methodologies will be used for production of documents and files.

1 **II.     Dispute Regarding Collections from Sales Personnel – Regional Managers**

2                                            General Statement

3       The parties have a dispute regarding the collection of certain identified individuals within the Bard Peripheral Vascular Sales department.  Specifically, the parties disagree as to whether this Court's prior ruling in Case Management Order No. 9 precludes Plaintiffs from taking discovery from the individuals who were Regional Managers in the Sales Department during the relevant time period.

       This subject relates to the following individuals:

       Bob Cortelezzi - Eastern Regional Manager (2004-2007)
       Robert De Leon - Western Regional Manager (2004-2007)
       Jack Sullivan - Central/Western Regional Manager (2006-2011)
       Dan Orms - Eastern Regional Manager (2008-2012)
       Hans Yentz - Central Regional Manager (2010-2012)
       Tim Hug - West/Central Regional Manager (2012-2013)
       Mike Curtis - East Regional Manager (2013)
       Ron Curry - West Regional Manager (2013); West Vascular Regional Manager (2016)
       Evin Macaluso - Central Regional Manager (2014)
       Todd Dieckhoner - East Regional Manager (2015)

| **Plaintiffs' Statement** | **Defendants' Statement** |
|---|---|
| In Case Management Order No. 8 [Doc. 519], this Court permitted Plaintiffs to take discovery of Defendants' "national sales and marketing practices."  In accordance with that order, Plaintiffs reviewed Defendants' organization charts from 2003 through 2016 to identify individuals who held senior positions in the Sales Department of Bard Peripheral Vascular (the entity that sold the IVC filters at issue in this MDL) over that 14-year period.  During that time, BPV has had three separate Vice Presidents of Sales (Messrs. DeJohn, Doherty, and O'Brien) responsible for the department.  Each of those VPs of Sales had a senior staff of five to seven positions that reported directly to them.  Three of those positions were the regional (East, West, and Central) managers.  (The exception is 2013 when the regional | The parties' present dispute – pending the completion of the investigation of the individual employees only recently identified by the Plaintiffs – is extremely limited.  At this stage, the Defendants are only objecting to the Plaintiffs' attempt to expand their discovery scope to regional and divisional sales personnel, in contravention of the Court's instructions in CMO No. 8 (Doc. No. 519, at p. 6), where the Court indicated that the Plaintiffs should begin with discovery concerning "national" sales practices, and raise the issue of discovery regarding "regional sales and marketing practices" only after completion of that initial discovery.

CMO No. 8 specifically delays discovery from regional sales personnel until after the Plaintiffs first complete discovery of |

manager reported to an intermediary Director of Sales.)

Defendants disagree as to the collection of ESI from these "district" managers, contending that they are not "national" sales personnel.

But, that argument elevates form (or title) over substance. Despite their title, these "regional" managers are national positions. Each year from 2003 through the present, BPV's organization chart shows that there are only five to seven positions in the Sales Department that report directly to the VP of Sales. That group is effectively the national management board for Bard's Sales Department; and the "regional manager" positions are part of that board.

The regional managers are more akin to Assistant Vice Presidents of Sales by virtue of their position within the Sales Department and their direct reporting to the VP of Sales; they would necessarily have been involved in national decisions of the Sales Department. Indeed, although Defendants refer to other Sales Department employees as being the "national" employees, the other direct reporting positions are the National Training Managers, Professional Development managers, Director of National Accounts (and, in later years, a Sales and Accounting Manager), and a Sales Administration Manager. Their responsibilities are clear from their titles, and none of those positions are responsible for the national sales force as is the case with the Regional Managers.

Moreover, unlike many companies that divide into numerous regions with diverse responsibilities and reporting (which would not be involved in national decisions) and

national personnel. Separate and apart from the 9 regional managers the Plaintiffs have now identified as ESI custodians, the Plaintiffs have demanded ESI from more than a dozen other individuals handling sales functions on the national level. The Defendants are presently analyzing the roles of those national employees, and will meet and confer with the Plaintiffs promptly about those individuals. However, until such time as discovery is concluded from those individuals, the Defendants believe that it is still premature to extend discovery to a regional or divisional level.

The prematurity of expanding the scope of discovery in that regard is confirmed by the limited role of Bard's sales department in the promotion of filters. BPV maintains a distinct marketing department, which is solely responsible at the national level for producing the promotional material for devices such as filters and which is the primary conduit of information to the sales force in the field. The sales force, in turn, obtains its information from the national marketing personnel. Bard has agreed to work with Plaintiffs regarding ESI from the pertinent marketing personnel. As a consequence, there is no justification for prematurely pursuing discovery from sales personnel below the national level.

Lastly, the Plaintiffs' attempt to characterize the regional sales managers as "national" is simply not accurate. Nor is the Plaintiffs' attempt to somehow transform regional managers into national executives accurate. The Plaintiffs have misconstrued the organizational charts, which clearly indicate only titles and lines of reporting. Those charts do not somehow create national management boards, or

6

| | |
|---|---|
| that report up to a person in charge of the sales force, Bard only has three "regions" (and some years only two); and those three regional managers are responsible for the sales force. (For one ear in the last 14 [2013], the regional managers reported to a Direct, Sales rather than directly to the VP of Sales. Subsequently, however, they resumed a direct-reporting relationship.) Bard has multiple "districts" (each with their own managers) that report up to the regional managers. Those positions and the decisions at those levels are clearly not national, and Plaintiffs do not seek them. But, given that the regional managers are responsible for large geographic areas and are the only people among the small handful of direct reports to the VP of Sales who are responsible for the sales force, those positions are surely directly involved in national sales issues.<br><br>Tellingly, Bard has previously collected and produced ESI from Jack Sullivan and Dan Orms, who held regional manager responsibilities for six and five years respectively. | convert managers into de facto vice-presidents. Moreover, the Plaintiffs' characterizations of the organizational charts are not completely accurate. In some years, as many as 8 or 9 individuals report to the Director of Sales; in a few years (more than one), the regional managers do not even report directly to the Vice-President of Sales, but instead, report to a Director who then reports to the Vice-President.<br><br>Unlike the regional managers, other individuals (many of whom have been designated by Plaintiffs as potential custodians) have responsibility for sales issues nationwide. By definition, the regional sales managers do not. Given that the Plaintiffs have already identified 12+ potential custodians at the national sales level, their associated demand that 9 more individuals who at some point held a regional manager position is excessive. Consistent with the terms of CMO No. 8, the Plaintiffs should first complete discovery at the national level before seeking discovery from personnel at the regional and/or divisional level. |

DATED this 16th day of May 2016.

**ATTORNEYS FOR PLAINTIFFS**

 /s/ *Paul L. Stoller*
Ramon R. Lopez (admitted pro hac vice)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, CA  92660

Robert W. Boatman
Paul L. Stoller
Gallagher & Kennedy PA
2575 E Camelback Road, Suite 1100
Phoenix, AZ  85016-9225

*Co-Lead/Liaison Counsel for Plaintiffs*

**ATTORNEYS FOR DEFENDANTS**

 /s/ Richard B. North
James R. Condo
Amanda C. Sheridan
Snell & Wilmer
One Arizona Center
400 E. Van Buren
Phoenix, AZ  85004-2202

Richard B. North, Jr. (admitted *pro hac vice*)
Nelson Mullins Riley & Scarborough LLP
201 17th St. NW, Suite 1700
Atlanta, GA 30363

*Attorneys for Defendants*
*C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of May 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

/s/   Deborah Yanazzo

5418731/26997-0001