James R. Condo (#005867)
Amanda C. Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

Attorneys for Defendants C. R. Bard, Inc. and
Bard Peripheral Vascular, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' MEMORANDUM ADDRESSING CHOICE OF LAW CONCERNING THE ATTORNEY-CLIENT PRIVILEGE** |

Defendants C. R. Bard, Inc. ("C. R. Bard") and Bard Peripheral Vascular, Inc. ("BPV") (C. R. Bard and BPV are collectively referred to as "Bard"), by and through counsel, submit their Memorandum Addressing Choice of Law Concerning the Attorney-Client Privilege, pursuant to the Court's June 13, 2016, Order [Dkt. No. 2132], as follows:

- The paramount consideration in deciding which state's law will apply under *Restatement (Second) of Conflict of Laws* § 139 (1971) (hereinafter "Restatement Section 139") is identifying the state central to the prior relationship between the parties to a communication. Here, that pre-existing

relationship, which concerned the business, regulatory, and legal activity regarding BPV's product line, was Arizona. Thus, pursuant to the Restatement, Arizona attorney-client privilege law should apply.

- The remaining factors identified in Restatement Section 139 comment e only apply if no prior relationship existed between BPV and C. R. Bard. Although Bard thinks that these factors are inapplicable given the companies' prior relationship, the factors nonetheless indicate that Arizona has the most significant relationship to the communications because nearly all of the communications at issue were received either exclusively in Arizona or simultaneously in Arizona and New Jersey. Therefore, Arizona law should apply, a result that is consistent with other choice-of-law principles.

- Under Restatement Section 139(1), Arizona's judicial and legislative treatment (A.R.S. § 12-2234) regarding the scope of the corporate attorney-client privilege amounts to a "strong public policy of the forum."

For these reasons, Arizona law should govern Bard's claims of attorney-client privilege.

**FACTUAL BACKGROUND**

BPV is an Arizona corporation with its principal place of business in Arizona. (Aff. of Robert Carr, Mar. 18, 2015, at ¶ 3, attached as Exhibit A.) Since before it began selling IVC filters, BPV has been a subsidiary of C. R. Bard, which is a New Jersey corporation with its principal place of business in New Jersey. (*See id.*). In-house lawyers at C. R. Bard and outside counsel send legal advice to BPV in Arizona (Dep. Tr. of Robert Carr, 24:20-24, Mar. 18, 2016, attached as Exhibit B). Most of the in-house lawyers are located at C. R. Bard's headquarters in New Jersey.

For all of the inferior vena cava filters at issue in this litigation (i.e. the Recovery, G2, G2X, G2 Express, Eclipse, Meridian and Denali filters), BPV is the company that was and is primarily responsible for the activities related to the filters. (Ex. A, Carr Aff ¶ 4.)

From its facilities in Arizona, BPV had, and continues to have, principal responsibility for designing the filters, testing the filters, directing the manufacture of the filters, developing the contents for the instructions for use that accompany the filters, communicating with the FDA regarding the filters, developing the contents of the marketing material for the filters, developing and maintaining a quality and post-market surveillance system regarding the filters, and deciding when each new generation of filter is first marketed and when the previous generation stops being marketed. (*Id.* ¶ 5.)

During the course of the MDL, the plaintiffs have challenged Bard's assertions of the attorney-client privilege, and the parties have narrowed the dispute to 132 documents. Of these 132 documents, 119 involve communications received exclusively in Arizona, or received in both Arizona and New Jersey simultaneously via e-mail. (Decl. of Elizabeth C. Helm, June 20, 2016, at ¶¶ 4-6, attached as Exhibit C.) Only 13 privileged communications were received exclusively in New Jersey; those communications are described in more detail in Exhibit B.

## ARGUMENT

**I.   As the state with the most significant relationship with the communications at issue, Arizona law should govern Bard's attorney-client privilege claims.**

Comment e to Restatement Section 139 provides as follows:

> The state where the communication took place will be the state of most significant relationship in situations where there was no prior relationship between the parties to the communication. If there was such a prior relationship between the parties, the state of most significant relationship will be that where the relationship was centered unless the state where the communication took place has substantial contacts with the parties and the transaction.

BPV's and C. R. Bard's prior relationship was centered in Arizona. Pursuant to comment e, if the parties to a communication have a prior relationship, then the law of the state central to that relationship governs determinations of attorney-client privilege.[1]  BPV

---

[1] The exception to this rule, "unless the state where the communication took place has substantial contacts with the parties and the transaction," is inapplicable to the parties' choice of law dispute.

- 3 -

has been a wholly owned subsidiary of C. R. Bard since before the company's introduction of its line of IVC filters. Since that time, BPV has operated from Arizona, the state of its incorporation and principal place of business. (*See* Ex. A, Carr Aff. ¶ 3.) Nearly all activity concerning the relationship between the companies has occurred in Arizona: design of BPVs products (including IVC filters), testing, development of product warnings, marketing, sales-force training, and regulatory contacts and submissions. (*See id.* ¶ 5.) C. R. Bard's involvement in BPV's activity is limited to ensuring that BPV's business and activity is generally aligned with C. R. Bard's business plan for all of its subsidiaries. (Ex. B, Carr Dep. Tr., 16:23 to 18:12.) Thus, Arizona is the state where the relationship between BPV and C. R. Bard was centered, Arizona is the state of most significant relationship, and Arizona substantive law should govern Bard's attorney-client privilege claims.

<u>Even if no prior relationship existed between BPV and C. R. Bard, the Restatement Section 139 comment e factors weigh in favor of applying Arizona law</u>. Pursuant to comment e, if the parties to a communication had no prior relationship, then the state with the most significant relationship to a communication will usually be "the state where an oral interchange between persons occurred, where a written statement was received or where an inspection was made of a person or thing." Bard's privilege log concerns written communications only, such that the only relevant comment e factor for consideration is "where a written statement was received." To the extent that this factor is applicable given the prior relationship of BPV and C. R. Bard, "where a written statement was received" weighs in favor of applying Arizona attorney-client privilege law.

Courts that have addressed the comment e factor, "where a written statement was received," have concluded that the law of the state where the recipient of the written legal advice is located (i.e., the state where the client is located) will control. *See, e.g., Morisch v. United States*, No. CIV. 07-145-GPM, 2009 WL 6506656, at *4 (S.D. Ill. June 16, 2009) ("Turning then to the matter of the state with the most significant relationship to the communications at issue, with respect to the documents furnished by Kreisman's

Case 2:15-md-02641-DGC Document 2219 Filed 06/20/16 Page 5 of 10

Nelson Mullins Riley & Scarborough L.L.P., 201 17th Street NW, Suite 1700, Atlanta, GA 30363, (404) 322-6000

attorneys [in Illinois] to Mr. Freed [in Kentucky] and the letters mailed by Kreisman's counsel to him, the state with the most significant relationship to these communications is Kentucky, where the communications were received."); *Morrill v. Becton, Dickinson & Co.*, No. 81-112C(C), 1981 WL 138040, at *3 (E.D. Mo. Sept. 28, 1981) (applying privilege law of state where "virtually every one of the disputed documents was received . . . and the majority of them originated"); *In re Arterial Vascular Eng'g, Inc.*, No. 05-99-01753-CV, 2000 WL 1726287, at *12 (Tex. App. Nov. 21, 2000) (letter from attorney located in New York sent to client in California governed by privilege law of California).

Here, the written communications at issue involve the conduct of Arizona-based BPV as it relates to IVC filters. As in *Morrill*, virtually every communication at issue was received exclusively in Arizona, or received in both Arizona and New Jersey simultaneously via e-mail (119 of 132 communications at issue). On relatively rare occasions (13 of 132), privileged communications were received exclusively in New Jersey, but those likewise related to activities regarding the IVC filters centered in Arizona. Thus, on balance, comment e's "where a written statement was received" factor heavily favors application of Arizona law.

The Court also should note that the American Law Institute drafted Section 139 in 1971 before the internet and e-mail age where communications can be sent from anywhere and simultaneously received by many people in many different locations. Thus, the drafters did not have in mind the complexities of internet communication, and applying the comment e factors to e-mails, e-mail chains, and large numbers of e-mails is difficult. Legal scholars also have observed that using the Restatement Section 139 to resolve privilege issues in an interstate context is rare and that the case law is sparse and inconsistent. Lilly & Shade, *When Privilege Fails: Interstate Litigation and the Erosion of Privilege Law*, 66 Ark. L. Rev. 613, 620 (2013). As applied to e-mail communications, Bard's research suggests that application of the comment e factors to co-defendant corporations located in different states may be an issue of first impression. In light of the difficulty in applying the comment e factors to e-mail communications, Professors Lilly

- 5 -

and Shade urge courts to give primary consideration to the location of the holder of the privilege in determining the state with the most significant relationship to the communications. *Id.* at 649-50. Here, C. R. Bard's Law Department and outside counsel provide legal advice to the client and holder of the privilege, BPV. *See, e.g., Gordon v. Indus. Comm'n*, 23 Ariz. App. 457, 459, 533 P.2d 1194, 1196 (1975) ("[P]rivileges as to confidential communication belong to the client."); *Fellerman v. Bradley*, 99 N.J. 493, 498, 493 A.2d 1239, 1242 (1985) ("[T]he privilege belongs to the client, rather than the attorney."); *see In re Arterial Vascular Eng'g, Inc.*, No. 05-99-01753-CV, 2000 WL 1726287, at *12 (Tex. App. Nov. 21, 2000) (letter from attorney located in New York sent to client in California governed by privilege law of California, in part because action on the legal advice was to be taken in California).

Giving primary consideration to the location of the client in deciding which state's privilege law to apply is also consistent with the general choice-of-law factors contained in *Restatement (Second) of Conflict of Laws* section 6. The section 6 factors include, among other things, "the needs of interstate and international systems; the relevant policies of the forum; . . . the protection of justified expectations; the basic policies underlying the particular field of law; certainty, predictability and uniformity of result; and ease in the determination and application of the law to be applied." The holder of the attorney-client privilege (i.e., BPV) has a justified expectation that the legal advice it requests and receives is afforded the protections against disclosure that Arizona law provides. As Professors Lilly and Shade point out, looking to the location of the client reflects the basic policy underlying the attorney-client privilege in encouraging a client's full and frank discussion with its attorneys. Finally, applying the privilege law of the state of the client gives clients certainty, predictability, uniformity of result, and eases the determination and application of the privilege law to be applied. Consider the plaintiff's argument that New Jersey privilege law should apply as a counter-example. Under the plaintiff's logic, New Jersey privilege law would apply to every single privilege law conflict involving every single Bard subsidiary, regardless of the state or country of the

subsidiary, and regardless of the forum state. The plaintiff's attorney-centric rule also proposes that the privilege laws of the states of Bard's outside counsel would apply to their communications instead of New Jersey or the location of the division, requiring a different legal analysis for different privileged documents depending on the location of the counsel involved in the communication. The analysis becomes more complicated in the common scenario of a request for legal advice sent by e-mail to both in-house counsel and outside counsel who are located in different states; or in a case where a Massachusetts lawyer who is admitted *pro hac vice* in a case pending in Florida has a privileged communication with an employee at BPV and Florida local counsel. By contrast, applying Arizona law to BPV's privileged communications simplifies the analysis and gives the client the predictability and uniformity of results that the Restatement aims to provide.

Therefore, whether the Court considers the Restatement Section 139 comment e factors, the location of the client, or the Restatement Section 6 factors, the outcome should be the same, and Arizona law should apply to assertions of the attorney-client privilege in this litigation.

## II. A.R.S. § 12-2234 Constitutes a "Strong Public Policy of the Forum" for Purposes of Section 139(1)

Restatement § 139(1) clearly points to Arizona law as controlling in the present dispute. However, even if it did not, the provision dictates that evidence which might otherwise not be privileged should be treated as privileged under the local law of the forum if the forum's privilege law reflects a "strong public policy." A.R.S. § 12-2234 is precisely the type of "strong public policy" that warrants application of this exception.

In short, Arizona first grappled with the scope of the corporate attorney-client privilege in 1992 in *Samaritan Foundation v. Superior Court*, 844 P.2d 593 (Ariz. App. 1992) ("*Samaritan I*"). After the Court of Appeals adopted a modified control-group test, the Arizona Supreme Court vacated the ruling in *Samaritan Foundation v. Goodfarb*, 862 P.2d 870 (Ariz. 1993) ("*Samaritan II*"), and adopted a modified subject-matter test that

was unique to Arizona. Less than six months later, the Arizona legislature had drafted, held hearings, passed, and the Arizona governor had signed A.R.S. § 12-2234, which legislatively overturned *Samaritan II* in favor of a significantly broader scope of the corporate attorney-client privilege. 1994 Ariz. Sess. Laws Ch. 334; *see Roman Catholic Diocese of Phoenix v. Superior Court ex rel. Cty. of Maricopa*, 62 P.3d 970, 974 (Ariz. App. 2003) (discussing the current scope of the corporate attorney-client privilege in Arizona). A.R.S. § 12-2234 has not been amended since its enactment in 1994.

The vacating of *Samaritan I* by the Arizona Supreme Court in *Samaritan II*, and the almost immediate and enduring legislative response of A.R.S. § 12-2234 in overruling the Arizona Supreme Court's *Samaritan II* decision clearly reflects a "strong public policy" in Arizona concerning the scope of the corporate attorney-client privilege.[2] Indeed, the current scope of the corporate attorney-client privilege in Arizona reflects the will of the people to broaden the scope of the attorney-client privilege.

## CONCLUSION

For the foregoing reasons, the Court should apply Arizona law to Bard's attorney-client privilege claims.

DATED this 20th day of June, 2016.

> s/ Matthew B. Lerner
> Richard B. North, Jr.
> Georgia Bar No. 545599
> Matthew B. Lerner
> Georgia Bar No. 446986
> NELSON MULLINS RILEY & SCARBOROUGH, LLP
> Atlantic Station
> 201 17th Street, NW / Suite 1700
> Atlanta, GA  30363
> PH: (404) 322-6000
> FX: (404) 322-6050
> richard.north@nelsonmullins.com
> matthew.lerner@nelsonmullins.com
>
> James R. Condo (#005867)
> Amanda Sheridan (#005867)
> SNELL & WILMER L.L.P.

---

[2] Even the plaintiffs agree that A.R.S. § 12-2234 "is a unique statute that was a legislative reaction" to *Samaritan* . . . ." (Doc. 1590 at 3-4).

One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
JCondo@swlaw.com
ASheridan@swlaw.com

**Attorney for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 20, 2016, I electronically filed the foregoing document with the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants in this matter.

s/Matthew B. Lerner
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
PH: (404) 322-6000
FX: (404) 322-6050
matthew.lerner@nelsonmullins.com
