Robert W. Boatman (009619) - rwb@gknet.com
Paul L. Stoller (016773) - paul.stoller@gknet.com
Shannon L. Clark (019708) - SLC@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
602-530-8000

Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California  92660
949-812-5771

*Co-Lead/Liaison Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC |
|---|---|
| | **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' PRIVILEGE LOG CHALLENGE** |

In its 1994 article on the then-recent amendments to A.R.S. § 12-2234, the Court described the "difficulties posed by the corporate attorney-client privilege" which have "vexed judicial and legislative lawmakers for decades." David G. Campbell, A Legislative Response to Samaritan, 31 Ariz. Att'y 29, 29 (Dec. 1994) [hereinafter "Article"].  The privilege log issue in this multi-district litigation involving two parent-subsidiary corporate co-defendants in jurisdictions with different privilege law adds additional layers of complexity.  The rules in the Restatement (Second) of Conflict of Laws § 139 [hereinafter "Section 139"] for determining the jurisdiction "which has the most significant relationship with the communication" are not easily applied where the communications at issue originate from and were received in both New Jersey and Arizona.

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

Ultimately, however, New Jersey is logically the jurisdiction with the most significant relationship to the communications at issue because it is Bard's headquarters and all legal advice emanated from there.  Arizona's privilege laws only come into play when they conflict with New Jersey's; in that situation Section 139 may require that Arizona's narrower privilege law govern as the law of the forum.

**I.  Arizona and New Jersey privilege rules conflict in key areas.**

The threshold question in conflicts of laws analysis is whether there is an actual conflict.  *Sterling Finance Mgmt. v. UBS PaineWebber*, 782 N.E. 2d 895, 899 (Ill. App. 2002).  Thus New Jersey and Arizona privilege law must be differentiated.

**A.  New Jersey privilege law.**

The attorney-client privilege in New Jersey is based upon the fundamental privilege principles expressed in *Upjohn Co. v. United States*, 499 U.S. 383, 389 (1981), and was codified by the legislature at N.J.S.A. 2A:84A-20.  *See Stengart v. Loving Care Agency, Inc.*, 990 A.2d 650, 659 (N.J. 2010); *Hedden v. Kean University*, 182 A.3d 238, 244-45 (N.J. App. 2013). Under the New Jersey privilege, "communications between lawyers and clients 'in the course of that relationship and in professional confidence' are privileged and therefore protected from disclosure." *Hedden*, 182 A.3d at 244 (quoting N.J.S.A. 2A:84A-20(1) and N.J.R.E. 504(1)).   Thus, the privilege applies, with certain exceptions, to communications (1) made in confidence (2) in which legal advice is sought, (3) from an attorney acting in his or her capacity as an legal advisor, (4) by the client.  *Id.*  The privilege extends to a corporation or other organization or association, which necessarily must act through agents, including officers and employees.  *Id.*  New Jersey recognizes, however, that the privilege is neither absolute nor sacrosanct and must be "strictly limited to the purposes for which it exists, *i.e.*, the need for consultation between attorney and client without fear of public disclosure." *State v. Humphreys*, 215 A.2d 32, 35 (N.J. App. 1965); *see also Hedden*, 182 A.3d at 244-45.

**B.  Arizona privilege law.**

As discussed in Plaintiffs' reply brief and as the Court described in detail in its 1994 article, Arizona's civil attorney-client privilege statute is unique and was specifically crafted

to legislatively overrule a 1993 Arizona Supreme Court opinion, *Samaritan Foundation v. Superior Court*, 176 Ariz. 497, 862 P.2d 870 (1993).  *See* Article at 29.  In *Samaritan*, the Supreme Court affirmed Arizona's public policy of strictly construing the attorney-client privilege and narrowly applied § 12-2234 to provide only limited protection to intra-corporate communications directly between counsel and employees.  *Samaritan*, 176 Ariz. at 503-04, 508, 862. P.2 at 876-77, 881.  The Arizona Legislature responded by amending § 12-2234 to broaden corporate privilege.  Article at 30.  As the Court described in its article, since those amendments the Arizona attorney-client privilege applies to communications:

1. between an attorney for a corporation . . . or an employer
2. and any employee, agent or member of the entity or employer
3. regarding acts or omissions of or information obtained from the employee, agent, or member
4. if the communication is either for the purpose of or providing legal advice to the entity or employer or to the employee, agent or member, or
5. for the purpose of obtaining new information in order to provide legal advice to the entity or employer or to the employee, agent or member.

Article at 30-31.  Notably, there are a number of distinctions between *Upjohn* and the Arizona privilege statute as amended.  Article at 32-33 (discussing distinctions between Arizona privilege under amended § 12-2234 and federal common law following *Upjohn*).

### C. Conflicts between New Jersey and Arizona privilege law.

Because of their different structure and history, inconsistencies in the privilege law of New Jersey and Arizona are inevitable.  Admittedly, for many privilege claims the end result will be identical under the two different schemes.  But there are some categories where there are material distinctions.  For example, Bard in numerous contexts has asserted that communications between employees who are not lawyers or legal staff can still be privileged, including where non-legal staff employees are allegedly disseminating internal policies created by Bard's in-house and outside counsel.  Under New Jersey law, dissemination of privileged communications within a corporation by non-legal personnel is arguably privileged.  *Rowe v. E.I. duPont de Nemours and Co.*, 2008 WL 4514092, at *11 (D.N.J. Sept. 30, 2008) (applying New Jersey law).  But no Arizona case has ever so held and under

the plain text of Arizona's statute, communications not "between an attorney . . . and any employee" are not privileged, regardless of context.  *See Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379, 381-82 (D. Ariz. 2010) (holding that communications between non-lawyer employees were not privileged under A.R.S. § 12-2234(B)).  Whether in the "dissemination of legal advice" context or any other, under Arizona law there is simply no corporate privilege for communications that don't involve a lawyer.  Thus there are communications at issue where the choice of law is outcome-determinative.

## II. Under the factors identified in comment e to Section 139, New Jersey is the state which has the most significant relationship to the communications at issue.

### A.  Bard employees in both New Jersey and Arizona have a "prior relationship" with Bard's attorneys by virtue of their employment.

Bard employees form a relationship with Bard's in-house and outside counsel the moment that they are hired.  At that point Bard could be bound by their actions legally, and thus Bard's attorneys' advice would both guide and be guided by the employee's actions.

Under comment e to Section 139, if there was a prior relationship between the communicants then "the state of most significant relationship will be that where the relationship was centered . . . ."  The state where the relationship between Bard's employees is "centered" is New Jersey.  There is a strong argument that, in the intra-corporate communications context, the parent and wholly-owned subsidiary should be treated as one entity.  *See Teleglobe Communications Corp. v. BCE Inc.*, 493 F.3d 345, 370-71 (3d Cir. 2007) (describing that "the wholly owned corporate family . . . is really one client" for many legal issues).  But even if the parent and subsidiary are differentiated, New Jersey is the parent company's corporate headquarters, where all of the Bard Peripheral Vascular employees' superiors reside, where all corporate decision-making occurs for both C.R. Bard and BPV, and where all of the Bard attorneys reside (except for a single patent attorney based in Arizona).  *See Interphase Corp. v. Rockwell Intern. Corp.*, 1998 WL 664969, at *1 (N.D. Tex. Sept. 22, 1998) (holding that California was state with most significant relationship where corporation was headquartered in California and in-house counsel were housed there even though outside counsel was outside California).  When advising Bard employees on

-4-

privilege, it is reasonable to presume that Bard's lawyers relied on New Jersey law.  *See Compuware Corp. v. Moody's Investors Svcs., Inc.*, 222 F.R.D. 124, 133 (E.D. Mich. 2004) (holding that New York company's lawyers advising on privilege "surely relied on the protections of New York law"); *Harrisburg Auth. v. CIT Capital USA, Inc.*, 716 F. Supp. 2d 380, 393 (M.D. Penn. 2010) (holding that attorneys for New York corporate defendant "*probably*  would have consulted New York law to resolve any attorney-client disputes . . . ." in part because New York's attorney-client privilege was "well-established" (emphasis in original).  While Bard may submit declarations to the contrary, notably Bard's lawyers *never mentioned Arizona law* in dozens of hours of meet and confer discussions regarding the propriety of Bard's privilege claims going back several years, and many times referenced general federal common law principles consistent with New Jersey law.

In contrast, Bard's connections with Arizona are limited.  BPV has a significant office in Arizona of 50 or more employees (judging by corporate organizational charts), but it has only one location in Tempe and is hardly a major Arizona employer.  It is the only one of about a dozen Bard subsidiaries based in Arizona.  BPV does not specifically market in Arizona, has no retail locations here, and some of its products including IVC filters are manufactured elsewhere.  All legal and other corporate support as well as all strategic decisions come from its parent's New Jersey headquarters.  Arizona has little ties to Bard.

**B.  Any relevant oral communications would have taken place between Bard employees in several different jurisdictions.**

Plaintiffs are not currently aware of any oral conversations that are the subject of privilege issues.  Those may develop as discovery proceeds, but for now Plaintiffs' challenges to Bard's privilege assertions focus on the written communications described on Bard's privilege logs.  To the extent that any oral communications become an issue, they could have taken place in Arizona, in New Jersey, telephonically between the two states, or between Bard employees in New Jersey or Arizona and employees or consultants elsewhere.  This factor thus provides little guidance even if it becomes applicable.

### C.  The written communications between Bard employees at issue were sent and received in both New Jersey and Arizona.

It is difficult to make any global or categorical determinations about the geography of Bard's privileged communication claims because of the number of communications at issue and the variety of people and topics.  Plaintiffs did a brief analysis of the 132 privilege claims at issue following the sampling and meet and confer process.  *See* Exhibit A to Plaintiffs' Motion to Compel (Doc. 1214).  Looking at just those communications, which admittedly may or may not be a representative sample, Plaintiffs found that:[1]

- 166 total people were involved in the communications, 104 were non-Arizona parties, and 62 were Arizona parties.

- Of the 132 total communications, 63 involved parties in more than one state, i.e., Arizona, New Jersey, or elsewhere; 51 involved only Arizona parties; and 17 did not involve anyone in Arizona.

- 75 of the 132 communications were received by only Arizona parties, 45 received by parties outside Arizona, and 12 had mixed recipients.

No clear bias towards either New Jersey or Arizona emerges from this analysis, and regardless conflict of law decisions in Arizona are not made based solely on raw numbers. *See Wendelken v. Superior Court*, 137 Ariz. 455, 458, 671 P.2d 896, 899 (1983) (noting that determination of which state has most significant contacts with a matter is qualitative, not quantitative).  This factor thus provides little guidance, and certainly does not favor the applicability of Arizona law over the law of Bard's corporate headquarters.

### D.  Plaintiffs do not believe there are any inspections relevant to this analysis.

This factor does not apply because inspections are not relevant to the privilege issue.

### E.  A.R.S. § 12-2234 is not the "strong public policy" of Arizona.

There is no legal authority supporting a claim that § 12-2234 is of such vital policy importance to Arizona that it should trump the law of New Jersey and preclude admission of

---

[1]     These calculations are somewhat rough as Plaintiffs do not have a comprehensive list of which Bard employees are with BPV in Arizona and which with the parent entity in New Jersey.  Plaintiffs relied on organizational charts and publicly available information in determining the residence of Bard's employees, so the analysis may have some minor errors, although Plaintiffs conservatively erred on the side of assigning Bard employees to Arizona so any errors are immaterial.

a communication that would not be admissible under the law of Bard's home state.  If anything, Arizona has a strong public policy of favoring admissibility over privilege.  *Tracy v. Superior Court*, 168 Ariz. 23, 43, 810 P.2d 1030, 1050 (1991) (holding that "professional privileges . . . have been held to contravene the fundamental principle that 'the public has a right to every man's evidence,' and they are therefore strictly construed and weighed against other policy considerations" (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980))); *see also Johnson v. O'Connor ex rel. County of Maricopa*, 235 Ariz. 85, 92 ¶ 27, 327 P.3d 218, 225 (App. 2014) (quoting *Tracy* with approval).

III.   **Under Section 139(2), where the two states' laws conflict privilege does not apply.**

Section 139 favors admissibility over privilege.  Graham C. Lilly & Molly Bishop Shadel, *When Privilege Fails: Interstate Litigation and the Erosion of Privilege Law*, 66 Ark. L. Rev. 613, 617-18 (2013) ("The Second Restatement generally favors admission of evidence unless some special reason exists for not doing so.").  Thus even where a communication is privileged under New Jersey law, Section 139(2) requires admissibility if Arizona would not find the communication privileged.  *Id.* cmt. d ("The state of the forum will wish to reach correct results in domestic litigation.  It will therefore have a strong policy favoring disclosure of all relevant facts that are not privileged under its own local law.").  The exception would be where there are "countervailing considerations."  *Id.*; *see also Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 430 n.4 (N.D. Cal. 2014) (citing Section 139 in  noting that whether communications privileged under California but not Arizona law would be admissible would depend on whether "some special reason" existed to not give effect to Arizona law).  Comment d lists four factors to be considered in determining whether or not to apply the law of the forum over the law of the state with the most significant relationship, including materiality of the documents (which is obviously an individualized analysis).  Courts have found that the forum state's less-exclusionary privilege law should apply even when some of the four factors favored application of the law of the state with the most significant relationship.  *See, e.g.*, *Sterling Finance*, 782 N.E. 2d. at 904-05 (finding after consideration of countervailing considerations "no special reason why

Illinois's strong policy favoring discoverability should not be given effect"); *Alliance Ins. Co. v. Guidant Corp.*, 869 N.E.2d 1042, 1058-59 (Ill. App. 2007) (same, following *Sterling Finance* and despite finding some factors favored applying California or Indiana law); *see also Kuhn and Kogan, Chtd. v. Jeffrey C. Mensch & Assocs.*, 77 F. Supp. 2d 52, 55 (D.D.C. 1999) (holding that accountant-client privilege did not apply under District of Columbia law even when both client and accountant were Maryland residents and communications occurred in Maryland); *Independent Petrochemical Corp. v. Aetna Cas. and Sur. Co.*, 117 F.R.D. 292, 295 (D.D.C. 1987) (finding no special reason why Florida's accountant-client privilege should be enforced in District of Columbia).

Some of these factors, particularly the well-established nature of the attorney-client privilege, favor application of New Jersey law even given Arizona's at-times narrower privilege rule. But in some cases, especially communications between Arizona non-lawyers, Arizona law should apply despite New Jersey being the state with the most significant relationship. Thus there is no "one size fits all" for the choice of privilege law analysis in this litigation under Section 139, and some determinations—where New Jersey and Arizona law conflict—the privilege analysis will have to be on a communication-by-communication basis.

**IV.   Conclusion.**

For the foregoing reasons, the Court should find that New Jersey is the state with the most significant relationship to this litigation such that its privilege law presumptively applies; hold that privilege log entries that fall within the categories identified by Plaintiffs in their April 4, 2016, letter to Bard fail to meet the criteria for attorney-client privilege under New Jersey law and thus must be disclosed to Plaintiffs immediately; and order the production of the items listed in Exhibit A to Plaintiffs' Reply (Doc. 1590) or, to the extent review of individual items is necessary to make a final determination on privilege, order an *in camera* production of the documents for judicial review. Because there likely will need to be individualized Section 139 analyses of at least some privilege claims, appointment of a Special Master may be appropriate.

RESPECTFULLY SUBMITTED this 20th day of June, 2016.

GALLAGHER & KENNEDY, P.A.

By:   */s/ Robert W. Boatman*
     Robert W. Boatman
     Paul L. Stoller
     Shannon L. Clark
     2575 East Camelback Road
     Phoenix, Arizona  85016-9225

LOPEZ McHUGH LLP
     Ramon Rossi Lopez (CA Bar No. 86361)
     (admitted *pro hac vice*)
     100 Bayview Circle, Suite 5600
     Newport Beach, California 92660

*Co-Lead/Liaison Counsel for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of June, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

/s/  Kelly Saltsman

5467197v2/26997-0001