Robert W. Boatman (009619) - rwb@gknet.com
Paul L. Stoller (016773) - paul.stoller@gknet.com
Shannon L. Clark (019708) - SLC@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
602-530-8000

Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California  92660
949-812-5771

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC |
|---|---|
| | **PLAINTIFFS' BRIEF RE: BARD'S DISCOVERY REQUESTS RE:  FDA AND MEDIA CONTACTS AND PLAINTIFFS' FUNDING AS TO ALL PLAINTIFFS** |

Plaintiffs' Leadership Counsel submits this brief regarding Defendants' discovery requests to all Plaintiffs pursuant to Case Management Order No. 15 (Dkt. 3214).

A.  <u>Expanding Case-Specific Discovery Is Inefficient, Contrary to the Purpose of the MDL, and Undermines Agreements Previously Reached by the Parties</u>.

As the Court is well aware, the parameters for case-specific discovery of individual plaintiffs in this MDL are established by Case Management Order ("CMO") Nos. 5 and 11, which established both a Plaintiff Profile Form ("PPF") and a Plaintiff Fact Sheet ("PFS").  Each plaintiff in the Initial Plaintiff Pool must complete and serve a 5-page PPF on Defendants, and any plaintiff placed in PFS/DFS Group 1 must also complete and serve a 29-page PFS.[1]  MDL courts typically require extensive discovery of potential

---

[1] The PFS, which must be completed by any potential bellwether plaintiff, contains 18 separate document requests, including any documents concerning communications between the plaintiff and the FDA or a media outlet.

bellwether plaintiffs while limiting discovery in remaining cases in order to achieve the goals of an MDL, which are to "serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation" and "conserve the resources of the parties, their counsel, and the judiciary." *See* August 17, 2015 Initial Transfer Order, Dkt. No. 1, at 1.

Defendants conveniently ignore that the PPF and PFS authorized by the Court were the products of extensive meet and confer negotiations between the parties. As with most agreed orders, both Plaintiffs and Defendants made compromises in order to avoid the uncertainty that is inherent when a dispute is submitted to the Court for resolution. Defendants undoubtedly would have preferred that the PPF and PFS solicit even more information from individual plaintiffs, while Plaintiffs felt the PPF and PFS were already too cumbersome and wished it would have been abbreviated further. These compromises–made voluntarily by both Plaintiffs and Defendants–are what make agreed orders possible. Defendants now seek to make an end run around the discovery limitations to which they previously consented, and thereby re-open the PFS and PPF to require additional case-specific discovery of each plaintiff.[2] Plaintiffs never would have agreed to the PPF and PFS currently in use if they had known that Defendants would come back later and ask for even more discovery in each and every case.

B.   Contacts With the FDA or Media Are Not Discoverable.

Defendants will receive documents regarding PFS/DFS Group 1 plaintiff's communications with both the FDA and media outlets, if any such documents exist. But Defendants now seek to also require the approximately 800 other plaintiffs and their counsel to search for this information as well. In addition to violating the letter and the spirit of this Court's prior case management orders, Defendants' request for FDA and media communications seeks information that is irrelevant, privileged, and will place a significant burden on Plaintiffs.

---

[2] Notably, at the time Defendants agreed to the PPF and the PFS, they were aware of both the FDA warning letter and the NBC news story, and yet still agreed to limit discovery of FDA and media communications to PFS/DFS Group 1 plaintiffs.

Defendants have yet to explain how communications with the FDA or media by one plaintiff should be admissible in the trial of a different plaintiff.  Any such communications would constitute inadmissible hearsay, and none of the recognized exceptions to the hearsay rule apply.  Most notably, unlike the plaintiff whose claims are being tried, the statements of a non-trial plaintiff (or his/her counsel) do not qualify as an admission by a party opponent, and therefore remain inadmissible.  Given that the purpose of the case management plan instituted by the Court is to prepare representative cases for trial, there is no rationale by which Defendants can justify their request to impose significant additional discovery burdens on plaintiffs (1) whose cases will not be set for trial in this MDL, and (2) whose statements are not admissible in the cases that are set for trial.

Defendants' request for communications by plaintiff's counsel should likewise be flatly denied.  Because Plaintiffs' attorneys are not parties to this action, Defendants cannot obtain discovery from them.[3]  And even if they could, any statements by counsel are inadmissible.[4]  Accordingly, the Court should deny Defendants from obtaining any discovery from counsel.

---

[3] *See Hickman v. Taylor*, 329 U.S. 495, 504 (1947) ("Rule 34, like Rule 33, is limited to parties to the proceeding, thereby excluding their counsel or agents."). Defendants may suggest that where the discovery is directed at the party but there are documents in the possession of the party's attorney, then such documents should be deemed under the party's control.  However, even in this scenario, the discovery remains directed at the party, not the party's counsel.  More importantly, courts recognize that a party's "control" over documents held by the party's attorney is limited.  The mere fact that a party's attorney "has possession of a document does not make his possession of the document the possession of the party."  *XTO Energy, Inc. v. ATD, LLC*, No. 14-CIV-1021, 2016 WL 1730171, at *24 (D.N.M. Apr. 1, 2016) (internal citations omitted); *see also M.L.C., Inc. v. N. Am. Philips Corp.*, 109 F.R.D. 134, 136 (S.D.N.Y. 1986) ("Whether documents in the possession of a party's attorney are under the control of the party is resolved by discerning their origin.") (*citing Hanson v. Gartland Steamship Co.*, 34 F.R.D. 493, 496 (N.D.Ohio 1964).  Defendants have not suggested, let alone demonstrated, that any contacts with the FDA by counsel were done at the behest of an individual plaintiff.  Absent such a showing, the rule remains that discovery of counsel is not permissible.

[4] *See Walker v. Alta Colleges, Inc.*, 2010 U.S. Dist. LEXIS 67153, *17 (W.D. Texas July 6, 2010) ("In regard to counsel's communications with the media, the slight probative value – which is not entirely clear as statements to the media by an attorney in a case

3

1  Additionally, any communications initiated by Plaintiffs' attorneys with the FDA
2  are protected by the work product doctrine. *See Sherwood v. Bayer Healthcare*
3  *Pharmaceuticals, Inc.*, No. 10-CV-200, 2011 WL 2112474, at *2 (D.Me. May 25, 2011)
4  (citing attorney work product as basis for denying motion to compel counsel's FOIA
5  request to the FDA). Permitting discovery of these communications would reveal
6  counsel's mental impressions as they pertain to contested issues in the litigation. *See*
7  *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, No. 88-CV-9752, 1991 WL 211223, at
8  *8 (E.D.Pa. Oct. 9, 1991).

9  With respect to media reports, and as stated by Plaintiffs at the last status
10 conference, Plaintiffs concur with Defendants that news stories published by NBC or
11 other media outlets are not admissible. In light of this recognition, and similar to the
12 request for FDA communications, Defendants have no argument as to why
13 communications by Plaintiffs' counsel with NBC (if any) are relevant. Counsel's
14 statements to the media are not evidence, and are certainly not admissible at trial.
15 Additionally, to the extent any such statements reflect counsel's mental impressions
16 and were made in confidence with the understanding that they were off the record, they
17 constitute protected attorney work product. *See Samuels v. Mitchell*, 155 F.R.D. 195, 200
18 (N.D. Cal. 1994) (disclosing work product to third parties waives protection only if the
19 disclosure substantially increases the opportunity for potential adversaries to obtain the
20 information) (internal citations and quotations omitted).

21 The claims involving Defendants' product have understandably generated media
22 interest. Permitting discovery regarding every possible contact between a plaintiff's
23 attorney and a member of the media, in addition to being burdensome, would have a
24 chilling effect on counsel if every time they talked about their case to third parties they

---

26 would not be admissible – does not justify the burden of producing such documents.");
27 *U.S. ex rel. Smith v. Boeing Co.*, 2011 U.S. Dist. LEXIS 79941, at *9-10 (D. Kan. July 22, 2011) (denying discovery related to counsel's communication with news media, noting that "[c]ounsels' comments about the case to journalists are not evidence and . . . the
28 request for opposing counsels' 'communications' appears designed to discourage any contact with the media.").

4

would be duty bound to disclose this contact to Defendants. Permitting such discovery could potentially hamstring counsels' ability to even investigate a matter, which is exactly the type of outcome that *Hickman* was intended to avoid.[5]

To the extent there is *any* relevance to contacts with NBC, it is only for the purpose of impeachment. Plaintiffs' counsel, of course, will not be testifying at trial, and thus the potential for impeachment does not establish the relevance of counsel's contacts with NBC (or any other media outlet for that matter). At most, contacts by an individual plaintiff who is included in the bellwether pool (Discovery Group 1) may be relevant, since they could potentially reveal information that might be used to impeach the plaintiff. However, Plaintiffs have already consented to producing this information through the PFS. Thus, Defendants' request for discovery that goes beyond that contained in the PFS should be denied.

D.      Third Party Financing Is Not Discoverable

Bard has no basis for believing that any plaintiff has entered into a third party funding agreement, but nonetheless theorizes that a witch hunt on this issue might possibly lead to evidence somehow relevant to i) whether plaintiffs implanted with these dangerously defective devices are parties in interest in their own cases, ii) damages, iii) *voir dire*, and/or iv) outside influence on settlement motives. None of these grasping theories justifies the fishing expedition Bard proposes.

Third party funding agreements are not discoverable because they are not reasonably calculated to lead to the discovery of admissible evidence. For example, the court in *Miller*

---

[5] Notably, Plaintiffs' counsel have a fundamental right to communicate with the press, especially here, where their clients' claims involve serious and previously undisclosed risks concerning a medical product that is widely used. As the Supreme Court observed, "the operation of the court system is a matter of utmost public concern." *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 839 (1978). Balanced against this important public policy, Defendants' request appears to be nothing more than a fishing expedition that hopes to uncover some kind of damaging statement that could be attributable to Plaintiffs' counsel. To allow Defendants' request here, without any showing that Defendants' suspicions have any basis in reality, would result in something far more troublesome – namely, invading communications with the press and undermining the public policy supporting an open court system.

5

*UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711 (N.D. Ill. 2014), denied the defendant's motion to compel production of the plaintiff's contract with a litigation funder, reasoning:

> The actual transactional documents between Miller and its funder – the "deal documents" reflect the terms of the funding agreement, the amount funded, and the details about how any recovery is to be divided between Miller and the funder if Miller wins the case and what happens if it does not. This and related information … have nothing to do *with the claims or defenses in the case* – contrary to Caterpillar's arguments to the contrary.

*Id.* at 740 (emph. supp.). Rejecting the theory that a funder supplanted the plaintiff as the real party in interest, the court pointedly explained that Caterpillar's argument misstated the nature of the agreement: "Abraham Lincoln once was asked how many legs a donkey has if you call its tail a leg. His answer was four: calling a tail a leg does not make it one." *Id.* at 730 (cit. om.). The court cautioned that the discovery rules "were never intended to be an excursion ticket to an unlimited exploration of every conceivable matter that captures an attorney's interest" and concluded that the third party funding "*is simply irrelevant.*" *Id.* at 721, 742 (emph. supp.). The court added that, compelling production "would be a disservice to the parties and to the due administration of justice." *Id.* at 742.

The injustice of allowing such discovery was further described in *Estate of McPherson ex rel. Liebreich v. Church of Scientology Flag Service Organization, Inc.*, 815 So. 2d 678 (Fla. Dist. Ct. App. 2002), which quashed a trial court order allowing defendant discovery regarding the source of any significant contributions funding plaintiff's case. The court found that the discovery would cause irreparable harm and that disclosure of the amount received by plaintiff would allow the defendant to calculate how long plaintiff could last before "throw[ing] in the towel." *Id.* at 679. The *McPherson* court also concluded that the funding information sought was not reasonably calculated to lead to the discovery of admissible evidence.[6]

---

[6] *See also Matthews v. City of Maitland*, 923 So. 2d 591, 594 (Fla. Dist. Ct. App. 2006) (following *McPherson* and granting certiorari to quash a trial court order requiring disclosure of the names of persons contributing to the lawsuit); *cf. U.S. for Use & Benefit of P.W. Berry Co. v. Gen. Elec. Co.*, 158 F.R.D. 161, 164 (D. Or. 1994) (plaintiff's financial condition, including sums borrowed from lending institutions, was not reasonably calculated to lead to admissible evidence)

6

Even in class action cases where, unlike here, defendants might have *some* articulable rational basis for discovery of third party funding agreements,[7] defendants' *unsupported* theories as to why such information might be relevant have been rejected as "'provid[ing] no nonspeculative basis for raising such concerns.'" *Kaplan v. S.A.C. Capital Advisors, L.P.*[8] Notably, the *Kaplan* defendant's discovery theory was deemed speculative even though there, unlike here, the fact of third-party funding was admitted. The *Kaplan* court also expressly rejected defendant's argument that the third-party funding arrangement was discoverable because of a risk that the funding could affect plaintiffs' counsel's strategic decisions.

In *Mitchell-Tracey v. United Gen. Title Ins. Co.*, No. CIV. AMD-05-1428, 2006 WL 149105, at *2 (D. Md. Jan. 9, 2006), defendants postulated possible reasons why plaintiffs' fee agreements with class counsel might be relevant, including that the agreements might grant counsel settlement authority. In rejecting defendants' motion to compel the fee agreements, the court reasoned:

> Defense arguments are plainly insufficient. The requisite relevance has not been demonstrated. Defendants' arguments are bereft of any supporting authority (and any basis in fact) and do suggest a fishing expedition that this court will not endorse.[9]

---

[7] For example, named class members' financial agreements and resources are arguably relevant to the adequacy of representation as required in Rule 23(b)(3), and ability to provide notice to class members under Rule 23(c)(2)(B).

[8] No. 12-CV-9350, 2015 WL 5730101, at *5 (S.D. N.Y. Sept. 10, 2015)[quoting *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09 Civ. 3701, 2013 WL 1896934, at *2 (S.D. N.Y. May 7, 2013) (citing *Piazza v. First American Title Ins. Co.*, No. 3: 06 CV 765, 2007 WL 4287469, at *1 (D. Conn. Dec. 5, 2007) (fee agreement is irrelevant to class certification when there was no basis for defendants' speculation regarding conflicts of interest)]).

[9] *Id*. at *2. *See also Lee-Bolton v. Koppers Inc.*, No. 1:10-CV-253-MCR-GRJ, 2015 WL 11110545, at *2 (N.D. Fla. June 10, 2015) (rejecting defendant's argument that discovery of engagement letters was necessary to reveal the presence or absence of a conflict of interest and concluding that, "there is no compelling reason at this stage of the case to inspect the fee arrangements between the class representative and Plaintiffs' counsel") (citing *Mitchell-Tracey*); *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 322 (N.D. Ohio 2009) (explaining that the majority rule is that pre-certification discovery of fee and retainer

Discovery requests may not be made for the purpose of harassing an opponent,[10] which is the only way to characterize Bard's attempt to essentially blame IVC Plaintiffs over what transpired in pelvic mesh cases in West Virginia. There, the defendant pursued discovery against third parties that apparently were funding unnecessary surgeries.[11] Bard has no basis to claim that any of the plaintiffs before the Court have had any unnecessary medical procedures – much less that a third party funded them. Justice would not be served by allowing Bard to win a relevance argument through scurrilous, fact-free intimations levied against other members of the bar.

Bard's theory that the jury needs to be questioned regarding ties to imagined financiers is unfounded because such information concerning plaintiffs' finances is inadmissible.[12]

In addition, sauce for the goose is sauce for the gander. Allowing discovery of counsel's financial agreements for the purpose of testing motives *vis-a-vis* settlement would actually be a bonanza for Plaintiffs: defense counsel's billable hours skyrocket during a trial. However, allowing review of opposing counsel's finances for the purpose of scrutinizing motive would create ongoing, unsavory discovery battles on collateral issues.

---

agreements is rarely appropriate, citing *Piazza,* and refusing to compel production of fee and retainer agreements in class action case); *In re Nissan Motor Corp. Antitrust Litig.*, 22 Fed. R. Serv. 2d 63, 1975 WL 166141, at *2 (S.D. Fla. 1975) (fee-financial arrangements between the plaintiffs and counsel are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence).

[10] *See* FED. R. CIV. P. 26(g)(1)(B)(ii) (signature on every discovery request certifies discovery is not for an improper purpose "such as to harass").

[11] *See, e.g., In re American Med. Sys., Inc. Pelvic Repair Product Liab. Litig.*, No. 2:14-cv-29706 *et al.*, 2016 WL 756485 (S.D. W. Va. Feb. 25, 2016).

[12] *E.g., In re Homestore.com, Inc*., No. CV 01-11115 RSWL CWX, 2011 WL 291176, at *1 (C.D. Cal. Jan. 25, 2011) (excluding any reference at trial to or evidence of plaintiff's financial condition); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-01819 CW, 2010 WL 10086747, at *2 (N.D. Cal. Dec. 16, 2010) (granting motion to exclude any reference to or evidence of the class representative's financial condition, fee arrangements or other litigation); *cf. Foulk v. Kotz*, 138 Ariz. 159, 161, 673 P.2d 799, 801 (Ct. App. 1983) (the question of insurance coverage is not to be injected into a negligence action).

Finally, even in cases where, unlike here, there is a nonspeculative theory as to why the documents might be relevant, the discovery dispute requires individualized review and analysis because these types of documents (even were they to exist here) are prepared in anticipation of litigation and are therefore privileged.[13] Thus this issue is individualized and inappropriate for MDL resolution.

RESPECTFULLY SUBMITTED this 2nd day of September, 2016.

        GALLAGHER & KENNEDY, P.A.

        By: */s/Robert W. Boatman*
            Robert W. Boatman
            Paul L. Stoller
            Shannon L. Clark
            2575 East Camelback Road
            Phoenix, Arizona  85016-9225

        LOPEZ McHUGH LLP
            Ramon Rossi Lopez (CA Bar No. 86361)
            (admitted *pro hac vice*)
            100 Bayview Circle, Suite 5600
            Newport Beach, California 92660

        *Attorneys for Plaintiffs*

---

[13] For example, in *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, No. CV 7841-VCP, 2015 WL 778846, at *10 (Del. Ch. Feb. 24, 2015), a funding arrangement was relevant for the markedly distinguishable reason that defendants' funding of intervenors' separate litigation allegedly violated prior releases with plaintiffs; nonetheless, the court concluded that the documents were entitled to work product protection. *See also Devon It, Inc. v. IBM Corp.*, No. CIV.A. 10-2899, 2012 WL 4748160, at *1 & n. 1(E.D. Pa. Sept. 27, 2012) (granting plaintiffs' motion to quash subpoena requesting a third party funding agreement and related documents).

**<u>Certificate of Service</u>**

I hereby certify that on this 2nd day of September, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

                                              */s/Deborah Yanazzo*
                                              Deborah Yanazzo

5600166/26997-0001