James R. Condo (#005867)
Amanda C. Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Telephone: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

Attorneys for Defendants C. R. Bard, Inc. and
Bard Peripheral Vascular, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC |
|---|---|
| | **DEFENDANTS' MEMORANDUM REGARDING DISCOVERABILITY OF COMMUNICATIONS BETWEEN PLAINTIFFS AND THE FDA AND/OR NBC, AND SOURCES OF THIRD-PARTY FINANCING** |

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Communications that the plaintiffs and their counsel had with the FDA or NBC, as well as sources of third-party litigation funding, are relevant and within the scope of discovery.  Communications that the plaintiffs or their counsel had with the FDA or NBC about Bard's IVC Filters are relevant as they may establish that the plaintiffs helped to create or influence the very evidence they are now using against Bard.  They should not be permitted to resist discovery about their own involvement which may demonstrate bias in the evidence on which they rely.  Finally, the existence and terms of litigation funding or medical funding agreements will allow Bard to assess sources of bias impacting the plaintiffs or their counsel, as well as to better assess plaintiffs' damages.  For these reasons, the Court should order the plaintiffs to fully respond to Bard's discovery requests.[1]

### ARGUMENT

1. <u>**Plaintiffs' and their counsels' voluntary contacts with the FDA are discoverable in the MDL**</u>.

The plaintiffs are seeking to make five Section 483 and Warning letters[2] about IVC filters that the FDA has sent to Bard since November 2014 ("the FDA Letters") are centerpieces of the MDL.  Even before the MDL was formed, the plaintiffs argued to the Judicial Panel on Multidistrict Litigation that they wanted to "reopen discovery in all cases to seek information relating to a recent warning letter issued to Bard by the Food and Drug Administration," and the JPML cited this argument in its decision to centralize the plaintiffs' claims to "streamline" such discovery. *In re: Bard IVC Filters Prods. Liab. Litig.*, MDL N. 2641 Tr. Or. (Doc. 63), at 2 (J.P.M.L. Aug. 17, 2015), attached as Exhibit C.  Throughout the MDL, the plaintiffs have demanded the production of documents and questioned witnesses about the FDA Letters.  At the outset of discovery in the MDL, the

---

[1] Defs.' First Set of Interrogatories to All Plaintiffs, May 27, 2016, attached as Exhibit A; Defs.' First Requests for Production of Documents to All Plaintiffs, May 27, 2016, attached as Exhibit B.

[2] Ltr. from FDA to Bard, Mar. 2, 2016; Ltr. from FDA to Bard, Feb. 26, 2016; Ltr. from FDA to Bard, July 13, 2015; Ltr. from FDA to Bard, Jan 5, 2015; Ltr. from FDA to Bard, Nov. 25, 2014.

Nelson Mullins Riley & Scarborough
— L.L.P. —
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

plaintiffs even conducted a two-day Rule 30(b)(6) deposition of Bard on the issues surrounding the FDA Letters.[3]  And, to date, the plaintiffs have examined at least five current and former Bard employees about the FDA Letters and their content.[4]  Thus, the plaintiffs have been permitted to develop extensive discovery about the FDA Letters that will be available to all MDL plaintiffs in the prosecution of their claims.

Given the role that the FDA Letters have played, and continue to play, in the litigation, Bard should be entitled to discovery about any role that the plaintiffs or their counsel[5] had in the Letters' creation.  Communications that the plaintiffs or their counsel had with the FDA about Bard's filters may have biased the FDA, may reflect improper motivation for the FDA Letters' creation, and may signal that the content of the FDA Letters lack the trustworthiness necessary under Federal Rule of Evidence 803(8) for their admissibility at trial.[6]  The plaintiffs have also argued in this litigation that Bard made efforts to "influence" FDA actions, but now that they are confronted with discovery requests that would reveal *their* efforts to "influence" FDA actions, they refuse to respond.

Courts that have confronted these issues agree that a litigant's communications to a government agency are discoverable.  In short, a party (or the party's counsel) cannot seek agency action to gain an advantage in litigation, and then resist discovery of its efforts.

[3] Bard 30(b)(6) Dep. Trs., Dec. 15, 2015 & Jan. 20, 2016.
[4] Brett Baird Dep. Tr., 382:22 to 383:8, June 9, 2016; Judy Ludwig Dep. Tr., *passim*, July 27, 2016; William Little Dep. Tr., 250:4 to 253:15; 401:17 to 418:20, July 27, 2016; John Wheeler Dep. Tr., 127:7 to 164:24, July 29, 2016; Maureen Uebelacker Dep. Tr., 12:22 to 14:5; 95:10 to 107:4, Aug. 9, 2016.
[5] *Hickman v. Taylor*, 329 U.S. 495, 504, 67 (1947) ("A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney.").  Clearly, counsel's communications with the FDA and the media were done to gain an advantage against Bard in this litigation, and therefore counsel should not be permitted to claim that any communications that they had were divorced from their clients and beyond the scope of discovery.
[6] The Court should note that Bard reserves its right to challenge the admissibility of any of the FDA Letters at trial, and thinks that they should be inadmissible for several reasons. However, for purposes of discovery, Bard needs to prepare for the possibility that the letters may appear at trial.  Moreover, whether the communications between plaintiffs or their counsel and the FDA are themselves admissible or inadmissible is not the issue. Rather, the lack of trustworthiness of the FDA Letters that plaintiff influence would reveal strengthens Bard's argument that the FDA Letters should be inadmissible.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Thus, courts allow "liberal discovery of statements made, or documents submitted, to a governmental agency prior to the initiation of an investigation . . . ." *Three Crown Ltd. P'ship v. Salomon Bros.*, No. 92 CIV. 3142 (RPP), 1993 WL 277182, at *2 (S.D.N.Y. July 21, 1993). Courts have observed that "[a] well-travelled route to achieving relief in civil litigation has been to persuade the government to take action against a party and thereby gain, if possible, the advantage of collateral estoppel in later civil litigation against that party. The party who travels that route should not be protected from disclosure of its statements." *Id.*; *Cante v. Baker*, No. 07-CV-1716 (ERK), 2008 WL 2047885, at *1 (E.D.N.Y. May 9, 2008); *Reed v. Advocate Health Care*, No. 06 C 3337, 2007 WL 2225901, at *2 (N.D. Ill. Aug. 1, 2007); *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 175 (S.D.N.Y. 2002); *Information Resources, Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591, 593 (S.D.N.Y. 1998). Accordingly, the plaintiffs' and their counsel's communications with the FDA about Bard's IVC filters should be discoverable.

Although the plaintiffs claim that Bard's discovery requests are irrelevant to "a single claim by a single plaintiff, let alone all of the cases in this MDL," and that any such discovery is "case-specific" and "can only be answered by individual plaintiffs on a case-by-case basis" (Joint Status Rpt. (Doc. 3102), at 19, Aug. 18, 2016), these arguments are without merit. First, the plaintiffs' relevance argument is directly at odds with their actions throughout discovery in this MDL (and before the JPML) where they have sought and obtained extensive discovery about the FDA Letters. Second, any evidence of bias, improper motivation, or lack of trustworthiness in the FDA Letters is relevant to any case in which the plaintiff seeks to use the FDA Letters against Bard, irrespective of which plaintiff or attorney was involved in the communication with the FDA. The issue is whether the FDA Letters themselves are biased or unreliable, not whether a particular plaintiff/counsel may have contributed to the bias/unreliability.[7]

---

[7] In state court cases where Bard has sought discovery concerning any communications that the plaintiff had with the FDA or NBC, the plaintiffs have refused to respond, necessitating motion practice. When multiplied across numerous cases, pursuing such discovery on a case-by-case basis is highly inefficient and wastes the judiciary's and the parties' resources.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Finally, communications to a federal agency are not protected by the work-product doctrine because any such protection would be waived. *See, e.g., Cante v. Baker*, *supra*; *Reed v. Advocate Health Care*, *supra* (citing additional cases).  Any other conclusion would result in a classic "sword and shield" scenario where the plaintiffs' counsel argue that communications with the FDA had nothing to do with the plaintiffs' claims, but on the other hand assert that the communications were made because of litigation.  Such an argument cannot stand.

Therefore, just as the plaintiffs have developed discovery about the FDA Letters available to any MDL plaintiff in the prosecution of his or her individual claims, so too should Bard be permitted to develop discovery about the FDA Letters available for use in the defense against these individual claims.

**2.  Plaintiffs' and their counsels' contacts with NBC are discoverable in the MDL.**

Between September 2, 2015, and December 31, 2015, NBC Nightly News and local NBC affiliates aired five stories about Bard's line of IVC filters ("the NBC Stories").[8]  The News Stories contain numerous factual errors, feature several internal Bard documents, and also closely align with the plaintiffs' themes in the MDL.  The NBC Stories have become focal points for the plaintiffs in the MDL.  In fact, the plaintiffs only noticed the deposition of Kay Fuller, a former Bard employee, after she appeared on one

---

[8] NBC Nightly News, *Why Did Firm Keep Selling Problem Blood Clot Filters*, Dec. 31, 2015, *available at* http://www.nbcnews.com/health/health-news/why-did-firm-keep-selling-problem-blood-clot-filters-n488166 (last visited Aug. 31, 2016); KSHB Kansas City News, *Medical Device Used to Filter Blood Clots Blamed for Deaths and Injuries*, Nov. 30, 2015, *available at* http://www.kshb.com/news/local-news/investigations/medical-device-used-to-filter-blood-clots-blamed-for-deaths-and-injuries (last visited Aug. 31, 2016); NBC Nightly News, *Did Forged Signature Clear Way Dangerous* [sic] *Medical Device*, Sept. 3, 2015, *available at* http://www.nbcnews.com/health/heart-health/did-forged-signature-clear-way-dangerous-medical-device-n417246 (last visited Aug. 31, 2016); NBC Nightly News, *Did Blood Clot Filter Used on Thousands of Americans Have Fatal Flaw?*, Sept. 2, 2016, *available at* http://www.nbcnews.com/health/health-news/did-blood-clot-filter-used-thousands-americans-have-fatal-flaw-n384536 (last visited Aug. 31, 2016); WPTV West Palm Beach News, *FDA Warns of Potentially Deadly Complications Associated with Blood Clot Filter Implants*, Sept. 2, 2015, *available at* http://www.wptv.com/news/local-news/investigations/fda-warns-of-potentially-deadly-complications-associated-with-blood-clot-filter-implants (last visited Aug. 31, 2016).

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

1  of the News Stories, and their questioning of Ms. Fuller related principally to statements

2  that she made during the News Story.  The plaintiffs have examined seven other current

3  and former Bard employees to date about the NBC News Stories, including showing a

4  deponent a clip of one of the Stories before proceeding with questioning.[9]  Thus, the

5  plaintiffs have developed discovery about the NBC News Stories that is available to all

6  MDL plaintiffs.

7  Any communications that the plaintiffs or their counsel had with NBC, including

8  the provision of cherry-picked and out-of-context Bard documents, could have biased the

9  NBC News Stories (and clearly did), and hence, such communications are relevant for use

10  in Bard's defense against use of the Stories.[10]  The plaintiffs have also argued throughout

11  this litigation that Bard attempted to "influence" public perception about its filters with

12  physicians and more broadly, but when confronted with Bard's discovery requests that

13  would reveal *their* efforts to "influence" public perception about Bard's IVC Filters (not

14  to mention spur the filing of lawsuits, and scare patients who are at risk of potentially fatal

15  pulmonary embolism away from a potentially life-saving device), they refuse to respond.

16  In sum, the plaintiffs should not be permitted to help manufacture news stories, use those

17  stories to their advantage in litigation, and then avoid discovery of their efforts. *See, e.g.,*

18  *Smith v. Boeing Co.*, No. 05-1073-WEB, 2008 WL 2475750 (D. Kan. June 17, 2008).

19  As with the FDA Letters, the plaintiffs incorrectly claim that Bard's discovery

20  requests are irrelevant and plaintiff-specific. (Joint Status Rpt. (Doc. 3102), at 19, Aug.

---

[9] Kay Fuller Dep. Tr., *passim*, Jan. 11, 2016; Carol Vierling Dep. Tr., *passim*, May 11, 2016; Chad Modra Dep. Tr., 470:19 to 471:8, Jan. 20, 2016; John DeFord Dep. Tr., 42:17 to 66:21; 436:11 to 442:19, June 2, 2016; Robert DeLeon Dep. Tr., 23:12 to 27:25, June 16, 2016; Joseph DeJohn Dep. Tr., 65:5 to 69:11, June 17, 2016; William Little Dep. Tr., 43:20 to 49:3; 500:19 to 505:22, July 27, 2016; Ann Bynon Dep. Tr., 11:1 to 24:24, May 17, 2016.
[10] As with the FDA-related discovery requests, Bard reserves its right to challenge the admissibility of any of the NBC News Stories at trial, and thinks that they should be inadmissible for several reasons.  However, for purposes of discovery, Bard needs to prepare for the possibility that the Stories, or parts thereof, may appear at trial.  Moreover, whether the communications between plaintiffs or their counsel and NBC are themselves admissible or inadmissible is not the issue.  Rather, the lack of trustworthiness of the NBC Stories that plaintiff influence would reveal strengthens Bard's argument that the NBC Stories should be inadmissible.

Nelson Mullins Riley & Scarborough

L.L.P.

201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

18, 2016). The plaintiffs' routine questioning of Bard witnesses about the NBC News Stories during depositions—and apparently deposing Kay Fuller only because of her appearance in one of the NBC News Stories—undercuts the plaintiffs' relevance argument. Moreover, any evidence of bias is relevant to any case in which the plaintiff seeks to use the NBC News Stories against Bard, irrespective of which plaintiff/counsel was involved in the communication with NBC. Finally, any claim that counsel's communications with NBC amounts to work product is without merit. Bard has found no case to support such a claim, and to date, the plaintiffs have not cited a supportive case either. For good reason: once the communications took place with NBC, counsel had no control over what information NBC chose to use in its stories—or, in other words, the disclosure substantially increased the chance that Bard would obtain the information disclosed. To find otherwise would again create a classic "sword and shield" scenario whereby counsel claims that the NBC News Stories have no part in the litigation, while simultaneously arguing that their communications were made to NBC because of litigation.

For each of these reasons, Bard should be permitted to develop discovery about the NBC News Stories to defend itself if and when MDL plaintiffs use the News Stories in furtherance of their claims.

**3.**  **Documents and information regarding the plaintiffs' litigation and medical funding arrangements are discoverable.**

In its written discovery requests to the plaintiffs, Bard asked for information, terms, and documents regarding both traditional, direct litigation funding agreements and agreements to provide medical assistance to plaintiffs. Both are relevant to assessing the plaintiffs' claims and Bard's defenses, and therefore should be discoverable.

Production of any third-party funding discovery will allow Bard to gain a more realistic and comprehensive perspective of the plaintiffs' claims. For instance, if the plaintiffs' counsel has a duty, or an obligation, to a third party to provide a return on their investment, it is possible that the counsel may not represent the best interests of the

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30163
(404) 322-6000

1  plaintiffs, may represent the plaintiffs in a way they otherwise may not, or may not

2  negotiate settlement in good faith, or may request an unreasonably high damages award to

3  cover expenses.  Examples of funding arrangements include, consumer legal funding,

4  whereby personal injury plaintiffs receive lump sums of money from a financer, and the

5  plaintiffs are required to pay back the financers plus interest and fees at the conclusion of

6  the lawsuits; loans to law firms made for funding litigation and repaid as a portion of the

7  attorney's contingent share of the lawsuits proceeds; the buying and selling of lawsuits

8  where the plaintiffs' firms have a vested interest in the outcome to recoup their

9  investment.[11]

10  Similarly, production of any funding arrangements between plaintiffs and third

11  parties concerning payment for medical services also will allow Bard to assess alleged

12  damages in the case.  Funding arrangements can include loans to patients at high interest

13  rates and pressuring of patients to undergo unnecessary medical procedures.[12]  Such a

14  system can create or inflate damages, can impact global settlement negotiations, and

15  should be evaluated by the jury in determining any damages award.

16  Bard's litigation funding discovery requests are both relevant and permissible, and

17  several courts have found that documents pertaining to, or memorializing, the contractual

18  agreement between a plaintiff and a third-party funder are discoverable and should be

19  produced, or at a minimum identified on a privilege log. *See, e.g., Fisher v. Ocwen Loan*

20  *Serv., LLC*, No 4:12-CV-543, 2016 U.S. Dist. LEXIS 32967 (E.D. Tex. Mar. 15, 2016);

21  *Morley v. Square, Inc.*, No. 4:14cv172, 2015 U.S. Dist. LEXIS 155569 (E.D. Mo. Nov.

22  18, 2015); *Cohen v. Cohen*, No. 09 CIV. 10230 LAP, 2015 WL 745712, at *1 (S.D.N.Y.

23  Jan. 30, 2015); *Berger v. Seyfarth Shaw LLP*, No. C 07-05279 JSW (MEJ), 2008 WL

24  4681834 (N.D. Cal. Oct. 21, 2008); *Abrams v. First Tenn. Bank*, No. 3:03-cv-428, 2007

25

26  [11] ABA Comm'n on Ethics 20/20, Draft *White Paper on Alternative Litigation Finance*
(Oct. 19, 2011), attached as Exhibit D; *Inside Massive Injury Lawsuits, Clients Get*
27  *Traded Like Commodities for Big Money*, Bloomberg Business, Oct. 22, 2015, attached as
Exhibit E.
[12]  *See Special Report: Investors Profit by Funding Surgery for Desperate Women*
28  *Patients*, Reuters News, Aug. 18, 2015, attached as Exhibit F.

WL 320966, at *1-2 (E.D. Tenn. Jan. 30, 2007).   Moreover, many of these funding arrangements, by their nature, cut across multiple plaintiffs and/or plaintiffs' firms, and therefore are appropriate for discovery in the MDL.   Because some funding agreements could be plaintiff-specific, however, a hybrid discovery approach may be appropriate where the plaintiffs' counsel identify all funding agreements that implicate multiple plaintiffs or plaintiffs' firms, and the Plaintiff's Fact Sheet is amended to require individual plaintiffs in the MDL to identify any funding agreement applying specifically to his or her claim.   In all events, however, the Court should order the plaintiffs to produce any and all funding agreements.

## CONCLUSION

Throughout the MDL, the plaintiffs have developed their arguments about the FDA Letters and the NBC News Stories.   Bard should be permitted to discover whether the plaintiffs played a role in creating or influencing the very evidence that they are now using against Bard.   Bard should also be permitted to discovery about the existence and terms of funding agreements that might prevent the plaintiffs or their counsel from engaging in good faith settlement negotiations and impacts a proper damages assessment. For each of these reasons, the Court should order the plaintiffs to fully respond to Bard's written discovery requests about these issues.

DATED this 2nd day of September, 2016.

s/Matthew B. Lerner
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

James R. Condo (#005867)
Amanda Sheridan (#005867)
SNELL & WILMER L.L.P.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
JCondo@swlaw.com
ASheridan@swlaw.com

**Attorney for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

- 10 -

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2016, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

s/Matthew B. Lerner
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
PH: (404) 322-6000
FX: (404) 322-6050
matthew.lerner@nelsonmullins.com