**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ANGELA NOVY, *et al.*, | |
| Plaintiffs, | |
| v. | No.:  4:16-cv-01233-CDP |
| C.R. BARD, INC., *et al.*, | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND

Pursuant to 28 U.S.C. § 1447(c), and for the reasons that follow, the Court should remand this action to the Circuit Court for the Twenty-Second Judicial Circuit, City of St. Louis, State of Missouri.  There is an absence of complete diversity of the parties to this action and no federal question is raised.  Therefore, the Court lacks subject matter jurisdiction.

## FACTUAL BACKGROUND

The 48 properly joined Plaintiffs originally filed this action in the Circuit Court for the Twenty-Second Judicial Circuit, City of St. Louis, State of Missouri on May 6, 2016, pursuant to Missouri Rule 52.05(a), arising out of injuries sustained as a result of being implanted with a Bard "retrievable" IVC filter. (Pet., CM/ECF Doc. 4).  While the Plaintiffs are from a number of different States, numerous Plaintiffs share citizenship with both Defendants.  Plaintiffs Lisa Radzik, Allen Kotter, Denise Gill, Faith Hinchman, Sabir Saad, and William Salters are citizens of the State of New Jersey, as is Defendant C.R. Bard, Inc. (Id. at ¶¶ 19-22, 40, 51, 54; Not. of Rem., CM/ECF Doc. 1, ¶¶17, 20).  And Plaintiffs Heather Powers, Joseph Grossman, and James Maxfield are citizens of the State of Arizona, as is Defendant Bard Peripheral Vascular, Inc. ("BPV") (Pet. at ¶¶ 12, 16, 55; Not. of Rem. at ¶¶18, 20).  Defendant BPV is a wholly owned

subsidiary of Defendant C.R. Bard, Inc., and, amongst other things, Defendants manufactured, designed, marketed and sold the retrievable IVC filters at issue in this case.   (Id. at ¶¶ 54-60).

IVC filters are devices designed to be implanted into individuals to "catch" blood clots travelling from the lower portions of the body to the heart and lungs.  (Pet. at ¶ 75).  Originally, these filters were designed to be permanent implants, for use primarily by individuals contraindicated for anticoagulation therapy.  (Id. at ¶¶ 75, 78).  Defendants sought to expand this market by developing "retrievable" filters for prophylactic use among nontraditional patients that were temporarily at risk of developing blood clots.  (Id. at ¶¶ 79-83).

Defendants' first retrievable IVC filter was known as the Bard Recovery Filter.   (Id. at ¶ 83).  Defendants subsequently designed, manufactured, marketed, and sold additional retrievable IVC filters known as the G2, G2X (G2 Express), Eclipse, Meridian and Denali.  (Id. at ¶ 3 and generally).  Each of these devices are substantially similar for all pertinent purposes of this case, with each serving as the "next generation" of the previous device. (Id. at ¶¶117, 185, 188,196, 200).   Each of these devices suffer from the same design and manufacturing defects that, *inter alia*, cause them to be unnecessarily prone to migration related failure. (Id. at ¶¶ 60, 120-124, 127-128, 131-135, 137-143, 145-146, 173, 177, 185-86, 190, 198-99, 203-04, 206).  This migration can result in the product becoming imbedded, tilting, fracturing, perforating the user and/or otherwise becoming irretrievable.  (Id.)  Each of the Plaintiffs in this action suffered an injury caused by such a migration related failure of a Bard "retrievable" IVC filter, i.e., the product migrated, imbedded, tilted, fractured, perforated the user, and/or otherwise became irretrievable. (Id. at ¶¶ 6-53, 60).

Plaintiffs in this action have jointly alleged state law claims against Defendants for injuries suffered as a direct and proximate result of their injuries caused by Bard "retrievable" IVC filters.

Each of these claims involves common legal and medical issues.  (Id. at ¶¶ 1, 60).  Each Plaintiff in this action was implanted with a Bard "retrievable" IVC filter and thereafter suffered a migration related failure injury, as a result of the same manufacturing and design defects. (Supra).   All of the Plaintiffs allege, among other things, that they were victims of the same wrongful conduct and tortious acts, including, but not limited to, the Defendants' failure to conduct adequate safety and efficacy studies, the Defendants' distribution of inadequate and misleading marketing materials and literature to physicians and patients, and the lack of adequate warnings to physicians and patients.  (Pet. ¶60).   And the wrongful conduct and tortious acts at issue were done without any regard for individual Plaintiff differences. (Id. at ¶ 61).

As multiple Plaintiffs share citizenship with both Defendants in this action, complete diversity is lacking.  Accordingly, the Court should remand this action to the Twenty-Second Judicial Circuit, City of St. Louis, State of Missouri without delay.

## ARGUMENT

### A.  Complete Diversity Does Not Exist

The Court lacks subject matter jurisdiction and should remand this action to the Twenty-Second Judicial Circuit, City of St. Louis, State of Missouri.  While Defendants removed on diversity of citizenship grounds, Defendants cannot meet their burden of establishing federal jurisdiction.  Complete diversity does not exist because Plaintiffs Radzik, Kotter, Gill, Hinchman, Saad, and Salters share New Jersey Citizenship with Defendant C.R. Bard, Inc., and Plaintiffs Powers, Grossman, and Maxfield share Arizona citizenship with Defendant BPV.

"A defendant may remove a state law claim to federal court only if the action originally could have been filed there." *In re Prempro Products Liability Litigation*, 591 F.3d 613, 619 (8th Cir. 2010). A removing defendant must establish federal jurisdiction by a preponderance of the

evidence and "[a]ll doubts about federal jurisdiction should be resolved in favor of remand to state court." *Id.* at 620.

For a Court to properly exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332 (the jurisdictional basis alleged by Defendants), the amount in controversy must exceed $75,000, and there must be complete diversity of citizenship.  28 U.S.C. § 1332; *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007).   "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship."  *OnePoint Solutions, LLC*, 486 F.3d at 346.

Complete diversity of citizenship does not exist in this case.  Multiple Plaintiffs share state citizenship with both Defendants.   Accordingly, the Court lacks subject matter jurisdiction and should remand this action without delay.

**B.  <u>The Court Should Decide Subject Matter Jurisdiction Before Personal Jurisdiction</u>**

The Court should first decide subject matter jurisdiction in this case and remand prior to reaching the issue of personal jurisdiction.  The subject matter jurisdiction inquiry in this case is in no way arduous.  Multiple Plaintiffs share citizenship with both Defendants, and there is no legitimate basis for creating diversity by way of either fraudulent joinder or fraudulent misjoinder. As the Judges of this District of done previously in similar cases, the Court should remand prior to reaching the issue of personal jurisdiction.

It is within the Court's discretion whether to address personal jurisdiction or subject matter jurisdiction first; however, if the subject matter jurisdiction is non-arduous, "both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587-88 (1999).

4

In this case, the subject matter jurisdiction inquiry is far from arduous.  The analysis of this type of multiple Plaintiff case is well established in this District and quite straightforward. Questions of personal jurisdiction are much more fact intensive.  Accordingly, the Judges of this District have on numerous prior occasions rejected requests to determine personal jurisdiction prior to remand in similar cases.[1]

While the subject matter jurisdiction inquiry is easily resolved, the personal jurisdiction inquiry potentially implicates difficult questions.  Personal jurisdiction is generally a fact intensive issue, and the due process inquiry is far from straightforward.

---

[1] *See e.g., Clayton v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.,* No.: 4:14-cv-01927-JAR (Ross, J.) (Memorandum and Order of Remand, E.D. Mo. April 16, 2015, CM/ECF Doc. 32) (Exhibit 1) (involving Risperdal) *; Bradshaw v. Mentor Worldwide, LLC,* No.:   4:15-cv-00332-SNLJ (Limbaugh, J.) (Memorandum and Order, E.D. Mo. June 4, 2015, CM/ECF Doc. 24) (Exhibit 2) (involving pelvic mesh) ("The defendants in *Prempro* might have made a personal jurisdiction argument in that case, but it was not addressed.  The same appears to be so for the many other cases in which plaintiffs from different states file products liability lawsuits against a common defendant. . .In each of those cases (and many more similar cases), this Court has granted motions to remand because diversity jurisdiction---and therefore subject matter jurisdiction— did not exist.  The Court will do so here, as well.); *Clark, et al. v. Pfizer, Inc., et al.,* No.: 4:15-cv-00546-HEA (Autrey, J.) (Opinion, Memorandum and Order, E.D. Mo. August 5, 2015, CM/ECF Doc. 24) (Exhibit 3) (involving the pharmaceutical Lipitor) (in Ordering remand for lack of subject matter jurisdiction before reaching the personal jurisdiction analysis, the Court explained:  "On the issues presented in these dueling Motions-namely, whether to first address subject matter jurisdiction or personal jurisdiction, and whether to apply the doctrine of fraudulent misjoinder-this Court will follow the great weight of authority from this District."); *Hebron, et al. v. Abbvie Inc., et al.,* No.: 4:15-cv-01910-ERW (Weber, J.) (Memorandum and Order of Remand, E.D. Mo. December 18, 2014, CM/ECF Doc. 28) (Exhibit 4) (involving the testosterone replacement therapy product AndroGel) ("[H]ere, the Court declines to rule on the personal jurisdiction issue first, as the inquiry regarding subject matter jurisdiction is not 'arduous.'"); *Swann, et al. v. Johnson & Johnson, et al.,* No.: 4:14-cv-1546-CAS (Shaw, J.) (Memorandum and Order, E.D. Mo. December 3, 2014, CM/ECF Doc. 31) (Exhibit 5) (involving talcum powder) ("Issues of personal jurisdiction and venue would require a more fact-intensive inquiry.  Therefore, the Court will first take up the issue of subject matter jurisdiction."); *Butler, et al. v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.,* et al., No.:  4:14-cv-1485-RWS (Sippel, J.) (Memorandum and Order of Remand, E.D. Mo. October 8, 2014, CM/ECF Doc. 21) (involving the pharmaceutical product Risperdal) (Exhibit 6) ("I decline to rule on issues of personal jurisdiction first, as the inquiry regarding subject-matter jurisdiction is not 'arduous.'").

Given the straightforward and well established subject matter jurisdiction inquiry for this type of case, the much more fact intensive personal jurisdiction inquiry should be left to be addressed by the State Court following remand.

### C.  **The Plaintiffs Have Not Been Fraudulently Joined**

The Defendants have attempted to circumvent any possibility of the Court remanding prior to examining personal jurisdiction by tying their fraudulent joinder argument to their personal jurisdiction argument, but this tactic is wholly devoid of merit.  A lack of personal jurisdiction cannot serve as the basis for asserting fraudulent joinder because it does not relate to the substantive merits of the Plaintiffs' claims.   *See Simmons v. Skechers USA, Inc.*, 2015 WL 1604859 at *3 (E.D. Mo. April 9, 2015) (Jackson, J.).   As Judge Jackson explained in a procedurally similar multi-Plaintiff case:

> Here, defendants are not asking the Court to evaluate the non-Missouri plaintiffs' claims to determine whether they are viable under substantive state law. Rather, defendants are challenging the propriety of joining the non-Missouri plaintiffs' claims into a single action by asserting a procedural challenge to personal jurisdiction. Yet, defendants cite no case that holds that the theory of fraudulent joinder—an inquiry into substantive viability of claims—countenances a procedural challenge to a court's personal jurisdiction over a defendant. This Court rejects such a contorted theory of fraudulent joinder. Consequently, because defendants' only argument that the non-Missouri plaintiffs were fraudulently joined is a procedural challenge to personal jurisdiction rather than a substantive challenge to the viability of the claims, the Court concludes that the non-Missouri plaintiffs were not fraudulently joined in this action.

2015 WL 1604859, at *3.  However, given the clear-cut nature of the subject matter jurisdiction inquiry, the Court retains its discretion to remand without ever reaching Judge Jackson's analysis. *See Bradshaw,* No. 4:15-cv-00332-SNLJ (Exhibit 2); *Clark,* No.:  4:15-cv-00546-HEA (Exhibit 3); *see also*, *Liljeberg v. Continental Tire the Americas, LLC*, 2012 WL 602306 at *3 (M.D. Ala. Feb. 24, 2012) (Watkins, J.)  ("This action presents the question of whether an alleged lack of personal jurisdiction over a defendant is sufficient to find the defendant to be fraudulently joined

to the suit.  Ultimately, this question need not be answered. . . Because this case can be resolved on simple narrow grounds by only answering the subject matter jurisdiction question, it is reasonable to use this discretion to do just that.); *YA Global Investments, L.P. v. McKenzie Bay Int'l, Ltd.*, 2010 WL 398379 at *4 (D.N.J. Jan. 27, 2010) (Greenway, J.) ("[D]efendants' challenge to complete diversity is based solely on their contention that the Court lacks personal jurisdiction over SST.  As set forth above, the Court need not resolve the complex issue of personal jurisdiction with Plaintiff's remand motion."); *Burks v. General Motors Corp.*, 297 F. Supp.2d 889, 890-91 (N.D. Miss. 2003) (Mills, J.) ("[T]he sole basis offered for finding that [Defendant] was fraudulently joined is the claim that Mississippi lacks personal jurisdiction over him.  That may be the case, but if so, it must be determined by a court that has subject matter jurisdiction.  This Court does not.");

Finally, even if a personal jurisdiction argument could serve as a basis for fraudulent joinder, and the Court elected to examine the issue prior to remand, there is a sufficiently reasonable basis supporting personal jurisdiction in this case to defeat Defendants' fraudulent joinder argument.  "[J]oinder is not fraudulent where 'there is arguably a reasonable basis for predicting that the state law might impose liability based on the facts involved.'"  *Knudson v. Systs. Painters, Inc.*, 634 F.3d 968, 980 (8th Cir. 2011) (quoting *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003)).  Under this standard, it must be "*clear* under governing state law that the complaint does not state a cause of action. . . ."  *Id*. (emphasis in original).

While Defendants wish for the Court to engage in a Plaintiff-by-Plaintiff inquiry, the specific jurisdiction inquiry focuses on the relations among the defendant, the forum, and the litigation.  *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 780 (1984).  A plaintiff's residence may be relevant in determining the defendant's contacts with the forum, but the "plaintiff's

residence in the forum State is not a separate requirement, and the lack of residence will not defeat jurisdiction established on the basis of defendant's contacts." *Id*.  This means that in a multi-Plaintiff action in which the Defendant's conduct in the forum state makes up part of the common nexus of operative facts underlying the litigation, there are sufficient contacts for the forum state to exercise personal jurisdiction over all properly joined claims.  *See Gracey v. Janssen Pharm. Inc.,* (E.D. Mo. May 4, 2015), 2015 WL 2066242 at n. 2 (Jackson, J).

In the present case, Plaintiffs allege conduct falling squarely within the Missouri long-arm statute and sufficient contacts with Missouri such that asserting specific personal jurisdiction over Defendants satisfies the due process requirements of the Fourteenth Amendment.  Defendants marketed, promoted, and sold their retrievable IVC filters throughout Missouri.  Indeed, two Plaintiffs in this action were implanted with the products at issue in the State of Missouri, Angela Novy and Tammy Dykema.  (Pet. at ¶¶6, 28).  Because Defendants chose to enter the Missouri market and, moreover, have continuously and deliberately exploited the Missouri market, they must reasonably anticipate being hauled into court here in an action based upon the products that they marketed, promoted, and sold and their conduct in so marketing, promoting, and selling the products in Missouri.  *See Keeton,* 465 U.S. at 779, 780.  Plaintiffs – each of them – are suing defendants for the very activity being conducted, in part, in Missouri – that is, marketing, promoting, and selling their retrievable IVC filters.

Plaintiffs' claims in this case are properly joined, as they all arise from the same series of transactions or occurrences and involve questions of law or fact common to all.  Clearly, Plaintiffs Novy and Dykema are victims of Defendants transacting business and committing torts in the State of Missouri.  And the contacts that Defendants had with Missouri relate to all Plaintiffs' claims because they are part of the same series of transactions or occurrences giving rise to this action, as

a whole.  Because these contacts in Missouri gave rise to this action as a whole, the Court can exercise personal jurisdiction over the claims of all properly joined Plaintiffs.  As Judge Jackson explained when presented with the same issue in a similar multi-Plaintiff pharmaceutical case:

> According to defendants, no federal or state court in Missouri can exercise personal jurisdiction over defendants and comport with due process with respect to the out-of-state plaintiffs' claims. The parties do not dispute, however, that Missouri courts have personal jurisdiction over defendants with respect to the in-state plaintiffs' claims. **Missouri courts, thus, may properly exercise personal jurisdiction over defendants with respect to this cause of action as a whole arising out of or related to its contacts and conduct in Missouri.**

*Gracey*, 2015 WL 2066242 at n. 2. (emphasis added).

The *Keeley v. Pfizer* and *Neeley v. Wolters Kluwler Health, Inc*. line of cases Defendants rely upon for the proposition that the claims of the non-Missouri Plaintiffs must be dismissed for a lack of personal jurisdiction are inapposite to the present situation.   These cases all involved single Plaintiffs (or single and derivative Plaintiffs) and did not involve the commission of any torts in the State of Missouri.  Unlike these the cases, the Defendants in the present case do have the contacts necessary to support this cause of action because they did commit torts in the State of Missouri that relate to this cause of action as whole since all claims arise out of the same series of transactions or occurrences.

In sum, there is a more than reasonable basis for finding the propriety of specific personal jurisdiction over this action, in its entirety, such that there is no basis for finding fraudulent joinder.

**D.  <u>No Grounds Exist for Finding Fraudulent Misjoinder</u>**

Defendants also argue that the Plaintiffs' claims should be severed under the doctrine of procedural/fraudulent misjoinder.  Such arguments have been repeatedly been rejected by the

Judges of this District in the past pursuant to the Eighth Circuit precedent of *In re Prempro*, 591 F.3d 613 (8th Cir. 2010).[2]  The Court should likewise reject this argument in the present case.

The fraudulent misjoinder theory encompasses the argument that a non-diverse Plaintiff has been illegitimately added to an action solely to destroy diversity. *Id*. at 620. While the Eighth Circuit has not determined whether fraudulent misjoinder constitutes a legitimate basis for removal, it has opined that, to even reach the point necessitating the Court make that determination, the joinder of the non-diverse plaintiff would have be egregiously improper.  *Id*. at 622.  In sum, "'mere misjoinder' is not "fraudulent misjoinder."  *Id*. at 621.

*In re Prempro* involved women and next-of-kin of deceased women who jointly filed suits in state court against a number of manufacturers of hormone replacement therapy (HRT) drugs for breast cancer allegedly caused by the drugs.  Certain Plaintiffs were nondiverse from certain Defendants, and the Defendants removed on a fraudulent misjoinder theory.

The Court in *In re Prempro* analyzed Federal Rule of Civil Procedure 20(a)(1), which "allows multiple plaintiffs to join in a single action if (i) they assert claims with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "(ii) any question of law or fact common to all plaintiffs will arise in the action," and recognized the Eighth Circuit's broad and flexible definition of the term "transaction."  *Id*. (internal quotation omitted). The Court interpreted Rule 20 to permit "'all reasonably related claims for relief by or against

---

[2] *See supra* note 1; *see also, e.g., Parker v. Pfizer, Inc.*, 2015 WL 3971169 (E.D. Mo. June 30, 2015) (Shaw, J.) (Multi-Plaintiff action involving Viagra); *Gracey*, 2015 WL 2066242; *Simmons*, 2015 WL 1604859; *D.B., et al. v. Forest Pharmaceuticals, Inc.*, No. 4:14-cv-01803-RWS (Sippel, J.) (Memorandum and Order of Remand, E.D. Mo. Oct. 30, 2014, CM/ECF Doc. 12) (Multi-Plaintiff action involving Lexapro) (Exhibit 7); *Hogans, et al. v. Johnson & Johnson, et al.*, No. 4:14-cv-01385-JCH (Hamilton, J.) (Memorandum and Order, E.D. Mo. September 24, 2014, CM/ECF Doc. 38) (Multi-Plaintiff action involving talcum powder) (Exhibit 8); *Dickerson v. GlaxoSmithKline, LLC*, No. 4:10-cv-00972-AGF (Fleissig, J.)  (Memorandum and Order, E.D. Mo. July 12, 2010, CM/ECF Doc. 28) (Multi-Plaintiff action involving Avandia) (Exhibit 9).

different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.'" *Id*., (quoting *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)).

The Court concluded that the Defendants did not meet their burden of establishing that the Plaintiffs' claims were egregiously misjoined because, *inter alia*, the Plaintiffs' claims arose from a series of transactions between Defendants and individuals that used their products and involved similar tortuous conduct by Defendants conducted on a national scale that caused similar injuries. The Court further found that, given the nature of the Plaintiffs' claims, the litigation likely would contain common questions of law and fact, such as the causal link between the Defendants' products and the Plaintiffs' injuries and the Defendants' knowledge of the dangers of their products.  Based upon the "palpable connection between the plaintiffs' claims against the manufacturers," as they all related to similar drugs and injuries and the Defendants' knowledge of the risks, the Court could not say that the plaintiffs' claims had "'no real connection' to each other such that they [were] egregiously misjoined." *Id*. at 623, *quoting Tapscott*, 77 F.3d at 1360. Without making a finding on whether the Plaintiffs' claims were properly joined, the Court held: "Without any evidence that the plaintiffs acted with bad faith, we decline to conclude they egregiously misjoined their claims."  *Id*.

As in *In re Prempro*, it is clear in the present case that the Plaintiffs' claims are not egregiously misjoined.  Applying both Rule 20 of the Federal Rules of Civil Procedure and Rule 52.05(a) of the Missouri Rules of Civil Procedure (which are identical in all significant respects) to the joinder in the present case, joinder of these claims is quite proper.  Plaintiffs' claims arise out of the same series of transactions or occurrences and involve common questions of law and fact.  All of the Plaintiffs claim they were implanted with related retrievable IVC filters that were manufactured, designed and sold by these Defendants.  All of the Plaintiffs' claims involve

11

questions surrounding the same alleged manufacturing and design defects along with Defendants'

failure to conduct adequate safety and efficacy studies, distribution of inadequate and misleading

marketing materials and literature physicians and patients, and lack of adequate warnings, and all

Plaintiffs assert the same cause of action.

Defendants' attempt to demonstrate the propriety of severance by arguing that Plaintiffs'

claims involve the laws of different states, unique medical histories, different durations of use, *etc.*

is of no consequence.  As Judge Sippel explained in a similar case addressing similar arguments:

> Defendant attempts to distinguish this case from <u>Prempro</u> and the previous remands
> from this Court by arguing in their Notice of Removal that each plaintiffs' claim
> will depend upon unique factual determinations, that the laws of many states apply
> to plaintiffs' claims, and that plaintiffs must have filed this suit for the sole purpose
> of defeating federal jurisdiction.   These arguments are woefully insufficient to
> demonstrate the propriety of jurisdiction here.

*D.B.,* No. 4:14-cv-01803-RWS (Exhibit 7).  Indeed, these differences are of little consequence as

the wrongful conduct at issue was done without any regard for individual Plaintiff differences.

(Pet. at ¶60).

*Alday v. Organon USA, Inc.*, 2009 WL 3531802 (E.D. Mo. Oct. 27, 2009) (Sippel, J.) and

*Boschert v. Pfizer, Inc.*, 2009 WL 1383183 (E.D. Mo. May 14, 2009), relied upon by Defendants

to establish the opposite, are of no value to their position as those opinions were decided prior to

and without the guidance of *Prempro*.  Judge Sippel has remanded numerous cases since then,

relying on *Prempro*, and Judge Shaw has even expressly recognized the outdated nature of pre-

*Prempro* cases on this issue:

> *Boschert*, however, was decided in 2009, *prior* to the *Prempro* decision.   This
> Court decided the case without the benefit of the Eighth Circuit's guidance on the
> doctrine of fraudulent misjoinder as detailed in *Prempro*, and therefore, the Court
> declines to follow the outdated reasoning in *Boschert*.

*Swann v. Johnson & Johnson*, No. 4:14-cv-1546-CAS, 2014 WL 6850776 at \*4 (E.D. Mo. Dec. 3, 2014) (Shaw, J.) (emphasis in original).

Similarly, Defendants' attempt to argue fraudulent misjoinder based on Plaintiffs receiving different products is also misguided.   The claims in the present case are even more similar than the Plaintiffs' claims were in *In Re Prempro,* which involved different products by different manufacturers. All the products in the present case were manufactured by the same Defendants and are alleged to be substantially similar in all pertinent respects, other than name, including containing the same alleged defects at issue.  Indeed, Defendants admit the relationship between these claims and products by seeking to have all of these cases transferred to the same multi-district proceedings, MDL 2641.

While the Defendants also attempt to draw intricate distinctions between the alleged defects and the mechanism of injury, this analysis is beyond what is called for in the fraudulent misjoinder context.  In the fraudulent misjoinder analysis, the determination is whether the claims are egregiously misjoined.  The analysis Defendants wish for the Court to engage in is properly left on a motion to sever once the action is remanded to the state court.

Defendants' further attempt to argue that Plaintiffs' claims are egregiously misjoined due a lack of personal jurisdiction is equally insufficient.  As with fraudulent joinder, Plaintiffs assert that personal jurisdiction cannot even support an allegation of fraudulent misjoinder.  And, as with fraudulent joinder, such an argument does not divest the Court of its discretion to resolve the simple question of subject matter jurisdiction without reaching the more complex question of personal jurisdiction.

Regardless, as set forth above, the concept of exercising personal jurisdiction in this case is not so egregious as to justify misjoinder.   As this Court explained while rejecting this very argument in a similar multi-Plaintiff case involving the drug Xarelto:

> Finally, even assuming the Eighth Circuit Court of Appeals had explicitly recognized fraudulent misjoinder as an exception to the complete-diversity requirement and that a lack of personal jurisdiction over a nondiverse defendant supported the theory that the parties had been fraudulently misjoined, personal jurisdiction over the nondiverse defendants is not so improbable here to demonstrate that the parties have been "egregiously misjoined."

*Littlejohn, et al. v. Janssen Research & Development, LLC, et al.*, No. 4:15-cv-0194-CDP (E.D. Mo. April 13, 2015) (Perry, J.) (Exhibit 10); *see also*, *Turley, et al. v. Janssen Research & Development, LLC, et al.*, No. 4:15-cv-01553-SNLJ (E.D. Mo. Dec. 23, 2015) (Limbaugh, J.) (Exhibit 11).

Defendants' reliance on non-Eighth Circuit opinions regarding the fraudulent misjoinder analysis is also of no consequence.   These out of Circuit, District Court opinions are not in any way persuasive given the consistently applied analysis set forth by the Eighth Circuit in *In re Prempro*.

In sum, there is simply no basis for finding procedural/fraudulent misjoinder in this case.[3] Similar arguments in similar cases have repeatedly been rejected by the Judges of this District. The analysis is straightforward, and this action should be remanded without further delay.

---

[3] While wholly irrelevant, Plaintiffs feel obligated to address Defendants' reference to attorney Ramon Lopez's involvement with MDL 2641. Mr. Lopez's involvement with this case has absolutely no bearing on the remand determination and is nothing more than an attempt to district the Court from the clear-cut subject matter jurisdiction analysis in this case.  Mr. Lopez is the federal-state liaison for this MDL and obviously has an involvement in cases, such as the present, that are properly filed state court.  Mr. Lopez represents non-diverse Plaintiffs in this action, and his mere involvement in this case does not create subject matter jurisdiction or demonstrate the propriety of transfer of this case to MDL 2641 where it does not otherwise exist.

Respectfully submitted,


**NIEMEYER, GREBEL & KRUSE, LLC**

By:    /s/ Michael S. Kruse
        Michael S. Kruse #57818MO
        10 S. Broadway, Suite 1125
        St. Louis, MO 63102
        314/241-1919 telephone
        314/665-3017 facsimile
        kruse@ngklawfirm.com
        *Attorneys for Plaintiffs*


## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing was served via the Court's CM/ECF filing system, this 8th day of August, 2016, to all counsel of record.


/s/ Michael S. Kruse