Ramon Rossi Lopez (CA Bar No. 86361)
(admitted *pro hac vice*)
LOPEZ McHUGH LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660
rlopez@lopezmchugh.com

Robert W. Boatman (009619)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone: (602) 530-8000
rwb@gknet.com

*Co-Lead/Liaison Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. 2:15-MD-02641-DGC<br><br>**PLAINTIFFS' BRIEF IN OPPOSITION TO BARD'S REQUEST TO DEPOSE PLC COUNSEL** |

# INTRODUCTION

Bard's extraordinary request to depose Plaintiffs' counsel in this case is neither supported by the law nor by the matters at issue in this litigation. Discovery into the speculative and collateral issue of why the FDA chose to investigate Bard (which resulted in undisputed acknowledgment of the violations by Bard) is not the type of information deemed crucial to a core issue in the case that would justify the highly disfavored request to depose opposing counsel. That is especially true here, where the attorneys have already verified under oath that the one conversation they had with the FDA did not discuss the warning letter issues. This brief is supported by the entire record before the Court in this matter, and by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     The Law.**

Courts recognize that requests to depose opposing counsel present unique concerns and implications and are, therefore, highly disfavored. As the Eighth Circuit noted in *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1330 (8th Cir.1986):

> [C]ircumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.
>
> \*\*\*
>
> The harassing practice of deposing opposing counsel (unless that counsel's testimony is critical and unique) appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the cost of litigation, demeans the profession, and constitutes an abuse of the discovery process.

The standard for deposing opposing counsel as outlined in *Shelton* is high. Although the Ninth Circuit has not adopted *Shelton*, many courts in this district have applied it[1]. An alternative, or coexisting standard, is the more flexible rule that the totality of the circumstances should be evaluated. *In re Subpoena issues to Dennis Friedman*, 350 F.3d 65, 71-72 (2d Cir. 2003). Yet, even under the more "flexible" totality of the circumstances standard articulated in *In re Subpoena issues to Dennis Friedman*, the court identified the important policy implications behind limiting such depositions and held the trial court must evaluate the need and importance of such discovery in light of these policy concerns.

The central inquiry is whether the requested discovery relates to a core or crucial issue in the litigation (and for which the information cannot be obtained from another source or by less intrusive means such as interrogatories or the production of documents) and the

---

[1] *In re Allergan, Inc*, 2016 WL 5922717, at \*3 (C.D. Cal. Sept. 23, 2016); *Flotsam of Cal., Inc. v. Huntington Beach Conference & Visitors Bureau*, No. C06-7028 MMC MEJ, 2007 WL 4171136, at \*1 (N.D. Cal. Nov. 26, 2007)
*In re Allergan, Inc.*, 14CV02004DOCKES, 2016 WL 5922717, at \*3 (C.D. Cal. Sept. 23, 2016)

2

need for such discovery outweighs the risks attendant to allowing the deposition of opposing counsel. *Id.* at 72.

As the following section will demonstrate, the role, if any, of contact between Plaintiffs' attorneys and the FDA's issuance of the warning letter is not a central issue to the case such that the deposition of opposing counsel should be allowed. In the first place, courts draw a sharp distinction between information that is relevant and information that is crucial under *Shelton*. In *Ditech Financial LLC v. SFR Invesstments Pool 1, LLC*, 2016 WL 4370034 at *2 (D. Nev. 2016), Ditech sought to depose SFR's attorney for information regarding its defense that "SFR was not a bona fide purchaser of the foreclosed property" at issue. *Id.* at *3. The court found:

> This information may be relevant to Ditech's defense, but the company has not shown it is crucial. Ditech has not cited to any authority that describes when relevant information becomes crucial. And the terms 'relevant' and 'crucial' cannot be synonymous. To hold otherwise would render the third Shelton factor redundant. Thus for information to be crucial, it must have some greater importance to the action than merely being relevant.

*Id.* at *3 (emphasis supplied). In other contexts, courts have rejected the idea that information sought for the sole purpose of undermining other documents is crucial. *See Rojas v. Marko Zaninovich, Inc.*, 2011 WL 2636071 at *3 (E.D. Cali. 2011). In *Rojas*, plaintiffs brought suit for a myriad of alleged labor-related violations, including failure to provide meal periods, failure to pay reporting time wages, etc. *Id.* at *1. In support of their motion for class certification, Plaintiffs included fifty-five declarations from various class members. *Id.* Defendant sought to depose the attorneys who had gathered some of the declarations. *Id.*

Defendant argued that the deposition would be "only for the purpose of demonstrating to the court that the process for obtaining the declarations was so flawed as to undermine completely the confidence in the declarations." *Id.* The court found that defendant had failed to "show that the information is relevant to the preparation of its case, let alone crucial to it." *Id.* The fact that defendant already had "sworn testimony" further obviated the need to depose the attorney. *Id.*

Furthermore, courts have interpreted "crucial" as requiring a showing that the information sought provides a missing link in the otherwise-established set of elements or factors. *See Boughton v. Cotter Corp.*, 65 F.3d 823, 831 (10th Cir. 1995). In *Boughton*, the Tenth Circuit applied the *Shelton* factors where plaintiffs sought to depose defense counsel. *Id.* at 829. Although plaintiffs argued that the attorney's deposition was essential for their punitive damages claims, the court noted:

> [I]n order to demonstrate that [the attorney's] state of mind was crucial to their case the plaintiffs would first have to establish as many other elements of the fraud as possible, including the statements made, through alternative sources. The failure of the plaintiffs to make a substantial effort to establish as many elements of the alleged wrongs as was possible through alternative sources before seeking the testimony of defendants' counsel not only undermines the argument that all the information sought from him was exclusively within his possession, it also undermines the argument that the particular information (if there was any) that was exclusively within his possession would be proof of a crucial link or corroborative of a weak link in a chain of proven elements to establish punitive damages.

*Id.* at 831 (emphasis supplied). In other words, before the court would allow plaintiffs to argue that the information they sought was crucial, plaintiffs would first have to establish other elements of their claim in order to lend credibility to their argument that the attorney possessed the crucial element.

The facts in *Rojas* closely mirror those before this Court. Bard seeks to depose Plaintiffs' counsel on the grounds that such a deposition might reveal that Plaintiffs' counsel's actions undermine the validity of the FDA's findings in the 2014 Warning Letter. However, like the *Rojas* defendant, Bard must then show how undermining the findings is relevant to its case—particularly in the face of the sworn testimony Bard already has from Plaintiffs' counsel, and the fact that Bard has admitted to the violations.

Furthermore, as *Ditech* indicates, Bard must then go further to meet its greater burden of proving that the information is "crucial." Bard cannot meet this burden. It has not indicated what other evidence supports its argument that Plaintiffs' counsel improperly influenced the FDA's investigation. It has not demonstrated that Plaintiffs' counsel holds the key element in proving influence. Finally, it has not shown how proving influence would affect its affirmative defenses or the outcome of the case. Indeed, Bard cannot even argue

it did not commit the violations. In short, Bard is hard-pressed to demonstrate that the information it seeks is *relevant*, let alone that it is *crucial* to Bard's case.

## II. Discovery into the Connection Between Contact by Plaintiffs' Attorneys and the FDA Issuance of a Warning Letter to Bard is not a Central Issue of Crucial Importance to this Case.

Bard seeks discovery on an issue that involves matters of little, if any, relevance and which may not result in any evidence that would ever be admitted in any trial.[2]

To link up Bard's theory, Bard must first show that it was Plaintiffs' counsel's contact with the FDA that spurred the FDA to investigate Bard. First, even if this were true, the question becomes "so what?" There is nothing wrong with allowing people uniquely knowledgeable about injuries and deaths being caused by a product to notify the appropriate governmental agency so that it can fulfill its role in protecting the public from defective products.[3] For example, after hearing evidence during trial about Bard's Recovery Filter, a juror became so concerned that she questioned whether she and her fellow jurors were required to report the safety issues and information they had seen:

> Shouldn't we be notifying (now) FDA, Doctors, patients who are related to these Filters implants to prevent a sudden, painfull (*sic*) death?
>
> Are we, jurors, legally responsible for communicating these risks?
>
> Don't you have enough witnesses (*sic*) statements to state that patients are in (some) risk to have the filter migrating (fracturing) to their heart?
> (*Phillips v. Bard*, CV0344-RCJ-WGC, Jury Notes, Dkt. 299 (Jan. 28, 2015), attached as **Ex. A**)

---

[2] Admissibility of FDA-related evidence is questionable in medical device cases cleared via the 510(k) process. *See*, *Cisson v. Bard*, 86 F.Supp.3d 510, 515-17 (S.D.W. Va. 2015), *aff'd sub nom. In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair System Products Liab. Litig.*, 810 F.3d 913 (4th Cir. 2016) (holding that evidence of compliance with FDA regulations and the process by which a device is cleared by FDA was inadmissible as irrelevant or, alternatively, unduly prejudicial, and if admitted would result in a mini-trial as to strengths and weaknesses of the process; an irrelevant matter).

[3] The decisions Bard cites regarding a party using a governmental entity to advance its own interests have no bearing here. *See, e.g.*, *Three Crown Ltd. P'ship v. Salomon Bros., Inc.*, 1993 WL 277182 (S.D.N.Y. 1993) (dealing with the production of documents, not depositions, in the context of a grand jury proceeding); *Cante v. Baker*, 2008 WL 2047885 (E.D.N.Y. 2008) (analyzing whether conversations with a government entity amounted to a waiver of the attorney-client privilege); *Reed v. Advocate Health Care*, 2007 WL 2225901 (N.D. Ill. 2007) (same).

5

1    Although Plaintiffs' counsel did not request that the FDA investigate Bard
2    concerning warning letter issues, it would not have been improper *had any* of them done
3    so.
4    The second question becomes: how does Bard prove the causal link it hopes to make?
5    Even if Plaintiffs' counsel had asked the FDA to investigate Bard (which they did not), how
6    can any juror determine whether it was such a request or other information (such as
7    discovery of violation during a routine audit) that spawned the investigation?  This is an
8    issue of the FDA's state of mind, which cannot be answered by questions of Plaintiffs'
9    counsel.
10   Then, even if there is a possibility of somehow linking the initial investigation to
11   conversations with Plaintiffs' counsel, Bard would then need to connect the findings of
12   violation with such contact.  In other words, the reason the investigation was triggered does
13   not have any relevance or logical link to the findings of violation by the FDA.  There are
14   numerous findings of serious violations by Bard.  They are well documented.  Bard had
15   **admitted** to most of them.  How does the reason the investigation was launched have any
16   relevance to the findings of violations?  Does Bard hope to argue "our bad conduct and
17   breach of laws and regulations would have never been discovered if the attorneys hadn't
18   told on us?"  Unless Bard can link the results of the independent investigation of the FDA
19   to Plaintiffs' counsel, the reason for the investigation is irrelevant.  A convicted criminal is
20   a criminal, whatever the person reporting the crime's relationship to the criminal.  It is the
21   findings of the FDA (again, most of which are admitted by Bard) that is relevant to this
22   litigation, not the road that lead the FDA to finding these violations.  To allow Bard's
23   attorney to question PLC attorneys in this context is purely discovery for harassment, as
24   opposed to obtaining crucial information concerning an issue of central importance to this
25   case.
26   Finally, no further discovery is necessary because both Mr. Dalimonte and Mr.
27   Brenes have provided verified interrogatory answers on the issue, and both have verified
28   that the one phone call (over a year before the warning letter) did not discuss any of the

6

matters contained in the warning letter.  The question has been answered.  The Court, in an appropriately narrowed fashion, has given Bard the opportunity to pursue this issue and Plaintiffs' counsel has answered the question.  This is sufficient and fair discovery into an issue of sparse relevance to the MDL cases.[4]

## CONCLUSION

The law rightfully imposes a higher burden of relevance and importance before allowing an attorney to depose their opposing counsel. As demonstrated herein, the discovery sought by Bard does not rise to the level of constituting an issue of crucial importance to the case so as to warrant the deposition of opposing counsel.  For the foregoing reasons, Plaintiffs request that Bard's request to depose opposing counsel be denied.

RESPECTFULLY SUBMITTED this 16th day of December, 2016.

GALLAGHER & KENNEDY, P.A.

By: /s/Robert W. Boatman
Robert W. Boatman
2575 East Camelback Road
Phoenix, Arizona  85016-9225

LOPEZ McHUGH LLP
Ramon Rossi Lopez (CA Bar No. 86361)
(admitted *pro hac vice*)
100 Bayview Circle, Suite 5600
Newport Beach, California 92660

*Attorneys for Plaintiffs*

---

[4] If any further discovery were to be allowed, it should be via interrogatory, not a deposition, so as to minimize the risk of improper intrusion into Plaintiffs' work product or attorney/client matters.  *See Friedman*, 350 F.3d at 72.

7

1  **CERTIFICATE OF SERVICE**

2  I hereby certify that on December 16, 2016, the foregoing was electronically filed
3  with the Clerk of Court using the CM/ECF system which will automatically send email
4  notification of such filing to all attorneys of record.

6                                             *s/ Deborah Yanazzo*

5761517/26997-0001