James R. Condo (005867)
Amanda C. Sheridan (027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (GA Bar No. 545599)
(admitted *pro hac vice*)
Matthew B. Lerner (GA Bar No. 446986)
(admitted *pro hac vice*)
Nelson Mullins Riley & Scarborough, LLP
201 17th St. NW, Suite 1700
Atlanta, GA 30363
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' SUBMISSION REGARDING ISSUES IN DISPUTE AS TO PROTOCOLS FOR CONDUCT OF DISCOVERY IN DISCOVERY GROUP 1** |

After meeting and conferring on multiple occasions, the parties have jointly submitted to the Court those protocols for the conduct of discovery in the Discovery Group 1 cases upon which they agree. The parties also agree that providing the Court with the discovery protocols applicable to Bellwether Group 1, by April 28, 2017, as provided in Case Management Order No. 18, Section B, will allow the parties to obtain input from the Court on protocols for Discovery Group 1, and determine any other protocols which will advance discovery in Bellwether Group 1.

Defendants provide this submission to set forth their positions as to the issues remaining in dispute between the parties relative to protocols for the conduct of discovery in Discovery Group 1 cases, and attach as Exhibit A Defendants' Proposed Case Management Order for Discovery Group 1, which includes both those provisions upon which the parties are in agreement and Defendants' proposed additional protocols (which are bolded and underlined).

## I.     DEPOSITION PROTOCOLS GENERALLY

The parties are in agreement with respect to the language proposed in Section I of the Proposed Case Management Order for Discovery Group 1, which pertains to Deposition Protocols Generally.

## II.    DEPOSITIONS PERMITTED

1.  *Scope of Discovery to be Conducted in Discovery Group 1*

As the Court has noted, in order to identify the six ultimate bellwether cases, "all discovery need not be completed in every case in Discovery Group 1 before the bellwether cases are selected, but enough discovery will be needed to ensure that the parties have a reasonably informed basis for making selections." *See* Case Management Order No. 18, dated October 17, 2016 [Doc. 3685].  The parties have been unable to agree on the scope of discovery and protocols that will accomplish that goal.  Plaintiffs have indicated that they seek to conduct certain discovery that Defendants believe is excessive and unnecessary, at least at this stage, and/or which could be limited in certain respects to allow the parties to accomplish the targeted goal of the parties and the Court at this phase.

Fed. R. Civ. P. 26(b)(1) requires that discovery be "proportional to the needs of the case."  One factor bearing on proportionality is "the importance of discovery in resolving the issues."  At this stage of the MDL, the issues to be resolved are not the merits of each of the 12 Discovery Group 1 cases.  Instead, the issue to be resolved is a narrower one: which of the 12 cases are most representative of the inventory of cases in the MDL as a whole, and hence would make appropriate bellwether cases.  The representativeness of the

cases will turn on the nature and extent of the injuries of the individual plaintiffs at issue, and how those injuries reflect the attributes of the cases in the overall inventory of this MDL. Bard submits that proportionality should be assessed with the limited focus of this goal in mind.

To accomplish the mutual goals of the parties, Bard agrees that the parties should take the depositions of each plaintiff; plaintiffs' spouse or significant family member; the implanting physician; and one additional treating physician as selected by Defendants.

Bard does not believe that it is necessary to the goals for Discovery Group 1 that Plaintiffs take the depositions of any sales representatives. The discovery the parties have agreed upon amounts to at a minimum three depositions in each of the twelve cases, and in some cases four depositions, in a brief period of time. Those depositions should be adequate to permit the parties to make a well-informed choice of the final six cases which they request that the Court include in Bellwether Group 1 and for which final discovery can be done to facilitate trial on the merits of Plaintiffs' claims and Defendants' defenses in those six cases. Moreover, any depositions of sales representatives would reveal evidence pertinent to a specific case, and not evidence that might illuminate how a particular case is representative of the MDL inventory as a whole. Bard further addresses the issue of sales representatives in this submission at Para. C.

2. *First Questioner in Depositions of Treating Physicians*

While Defendants do not agree that Plaintiffs or Plaintiffs' counsel should be allowed *ex parte* communications with Plaintiffs' treating physicians relating to their liability theories and strategies, Defendants do not dispute that Plaintiffs or Plaintiffs' counsel may discuss the medical care of the particular plaintiff at issue with his or her treating physician in advance of that physician's deposition. Because Defendants do not enjoy the same access to these critical fact witnesses as do Plaintiffs, Defendants believe that it is appropriate for Defendants' counsel to be the first questioner of each treating physician. Plaintiffs disagree and assert that they should be the first questioner of each

such witness. Specifically, Plaintiffs have proposed that they should have the opportunity to identify every treating physician that they "may" call at trial and that each such witness identified is a "plaintiffs' witness," such that they should be allowed first questioning. Defendants strongly oppose this procedure, and, from a practical standpoint, anticipate that Plaintiffs would lay claim to every treating physician that could conceivably give favorable testimony to Plaintiffs, including opinions which would go beyond those formed during the physicians' care and treatment of plaintiffs. Defendants believe that this procedure is fundamentally flawed and unfair, in that it would allow Plaintiffs to not only meet *ex parte* with these treating physicians, but it would then allow Plaintiffs' counsel to elicit testimony in a manner and of a substance based upon or derived from those *ex parte* conversations wherein Plaintiffs' counsel had the opportunity to advance their theories of liability unimpeded, with no requirement that the physician at issue be provided the other side of that coin or even that the information provided be accurate, fulsome, or reliable.[1] In essence, Plaintiffs propose that they be entitled to meet in confidence with these critical fact witnesses, and discuss and advocate for the testimony they seek to elicit. Defendants do not believe that the fundamental notions of fairness allow for such a result.

In a spirit of compromise, Defendants have suggested that Plaintiffs' counsel and Defendants' counsel alternate as lead questioners at the depositions of treating physicians, with Plaintiffs' counsel being the first examining counsel for the implanting physicians in each case which was a Defendants' Discovery Group 1 selection, and Defendants' counsel being the first examining counsel for the implanting physicians in each case which was a Plaintiffs' Discovery Group 1 selection.[2] Bard believes that this same protocol of

---

[1] Moreover, as discussed at Section III below, Plaintiffs seek to conduct unconditional and unrestrained *ex parte* communications with the physician, wherein the Plaintiffs' counsel may advocate for any theory of liability or show the physician in question any subset of documents of their choosing, completely unchecked by Defendants having a similar or commensurate opportunity.

[2] In *In re: Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2502 (D. S.C. 2014), the Court's order allowed for Defendant's counsel to be the first questioner of every discovery deposition of Plaintiffs' healthcare providers. *See also In re: Cook Medical, Inc., IVC Filters Marketing, Sales*

- 4 -

alternating the first examiner should apply to any other treating doctor depositions taken in Discovery Group 1 cases.

### III. PROTOCOL RELATED TO DEPOSITIONS OF TREATING PHYSICIANS

The parties are in agreement with respect to the language proposed in Section II.A., which prohibits Defendants from *ex parte* communications with Plaintiffs' treating physicians.

#### A. *Ex Parte* Communications with Treating Physicians

Defendants believe that now is the time to address a recurring issue in many MDL's, and to obtain a ruling from the Court prior to the commencement of treating physician depositions. The issue is *ex parte* communications with treating physicians, an issue that is always hotly contested in MDLs. This is because Plaintiffs' treating physicians often provide the most important testimony in the litigation, particularly so in those states that recognize the learned intermediary doctrine. Therefore, it is critical that these fact witnesses remain independent and not influenced by *ex parte* presentations by counsel on either side before deposition.

The risk with *ex parte* communications in this type of litigation is that plaintiffs' lawyers meet *ex parte* with these treating physicians and use that opportunity to show them cherry-picked internal company documents that support plaintiffs' liability or causation theory of the cases without providing context or opposing viewpoints. Without exception, the physicians have never seen these internal company documents nor did they consider those documents during the course of their treatment of the plaintiff at issue, nor

---

*Practices and Products Liability Litigation*, MDL No. 2570 (S.D. Ind. 2016) ("Plaintiffs' counsel shall be the first examining counsel for the implanting physicians in a defendants' bellwether selection, and defendants' counsel shall be the first examining counsel for the implanting physician in a plaintiffs' bellwether selection."). Although Defendants do not believe there is a legitimate basis for Plaintiffs to conduct *ex parte* communications regarding Defendants' internal documents or Plaintiffs theories of liability prior to the treating physicians depositions, as discussed at Section III below, should the Court allow limited or unlimited *ex parte* communications, allowing Defendants to be the first questioner of each of Plaintiffs' treating physicians would help level the playing field with respect to attempts to bias these critical fact witnesses.

would they have any reason to see them outside of the litigation. Busy physicians seldom sit for their depositions for more than a few hours, and, if unlimited *ex parte* communications are permitted, Defendants must spend valuable deposition time filling in the context and examining the physician on the viewpoints advocated by plaintiffs' counsel in their *ex parte* meetings, while also attempting to actually examine the physician's on their very relevant treatment of plaintiff, and the physician's own knowledge of the benefits and risks of the product, which should be the central purpose of these fact witness depositions. Critically, because in most or all cases physicians will be unwilling, incapable, and/or unable to be compelled to attend trial, these depositions will be the only testimony from these key witnesses that the jury will hear. This creates an uneven playing field between the parties, where plaintiffs' counsel enjoy unfettered pre-deposition *ex parte* communications with these physicians, while denying equal access to defendants.  As a number of other MDL courts have done, this Court can and should level the playing field by limiting these *ex parte* communications to discussions about Plaintiffs' medical treatment.

   1.   *Plaintiffs' Ex Parte Communications with Treating Physicians Should be Limited to the Plaintiffs' Relevant Medical History*

Given the unfairness that results when Plaintiffs are permitted to "poison the well" by *ex parte* discussions about their general liability theories with physician fact witnesses prior to the witnesses' depositions, multiple MDL courts in medical device and pharmaceutical cases have limited such contacts to discussions of the plaintiffs' medical conditions that are the subject of the lawsuit. *See, e.g.*, *In re Mirena IUD Prods. Liab. Litig.*, 13-MD-2434 (S.D.N.Y. Jun. 16, 2014) (attached hereto as Exhibit B); *In re Chantix (Varenicline) Prods. Liab. Litig.*, No. 2:09-cv-2039-IPJ, 2011 WL 9995561 (N.D. Ala. June 30, 2011); *In re Ortho Evra Prods. Liab. Litig.*, MDL No. 1742, No. 1:06-40000, 2010 WL 320064 (N.D. Ohio Jan 20, 2010); *In re NuvaRing Prods. Liab. Litig.*, No. 4:08MD1964 RWS, 2009 WL 775442 (E.D. Mo. Mar. 20, 2009).

- 6 -

For example, in *In re Ortho Evra Products Liability Litigation*, MDL No. 1742, No. 1:06-40000, 2010 WL 320064 (N.D. Ohio Jan 20, 2010), the defendants moved the MDL court for an order limiting the plaintiffs' *ex parte* contacts with their physicians "to discussion of the plaintiff's medical condition and prohibiting discussion of liability issues, warnings, and Company documents." *Id.* at *1. The court agreed with the defendants that allowing the plaintiffs to engage in unfettered *ex parte* discussions with physicians would give the plaintiffs an unfair advantage by allowing them to lobby their theories of liability and causation. The court mandated that "Plaintiffs' counsel will not act in a manner which would result in woodshedding or gaining an unfair advantage by ambush when engaged in *ex parte* contact with treating physicians. Such conduct will not be tolerated." *Id.* To that end, the court limited the plaintiffs' *ex parte* contacts with treating physicians to discussion of "the physicians' records, course of treatment and related matters, but not as to liability issues or theories, product warnings, Defendant research documents or related material. Violations of this approach, as stated above, will result in sanctions." *Id.* at *2.

Similarly, in *In re Chantix (Varenicline) Products Liability Litigation*, No. 2:09-cv-2039-IPJ, 2011 WL 9995561, at *4 (N.D. Ala. June 30, 2011), the court limited plaintiffs' counsel's *ex parte* communications with plaintiffs' treating physicians "to the individual care of the individual plaintiffs, such as the plaintiffs' treatment, medical records and conversations with their health care providers," and prohibited discussions of "defendant's internal documents." More recently, in *In re Mirena IUD Products Liability Litigation*, 13-MD-2434, at 1 (S.D.N.Y. Jun. 16, 2014), the court limited Plaintiffs' counsel's *ex parte* communications to "the particular Plaintiff's medical conditions that are at issue in this litigation, including the physicians' records, course of treatment, product warnings and related matters" and prohibited Plaintiffs' counsel from discussing "liability issues or theories and Defendants' research documents or related materials." *See also In re NuvaRing Prods. Liab. Litig.*, No. 4:08MD1964 RWS, 2009 WL 775442 (E.D. Mo.

Mar. 20, 2009) (finding that any plaintiff *ex parte* communications with treating physicians would be limited to the plaintiffs' medical condition at issue in the litigation).

This approach has also been followed in various state court coordinated proceedings as well. For example, in the *Pelvic Mesh/Gynecare* litigation, the court ordered that plaintiffs' counsel's *ex parte* communications with plaintiffs' physicians be limited to "discussions of the facts of the treatment that the given treating physician provided to the given plaintiff and the plaintiff's medical condition and medical history." *In re Pelvic Mesh/Gynecare Litig.*, Dkt No. ATL-L-6341-10, at 6 (N.J. Super. Ct. Law Div. Dec. 3, 2013) (attached hereto as Exhibit C).[3] The court also prohibited plaintiffs' counsel "from showing the treating doctor any depositions or internal documents produced by defendants or scientific studies or literature prior to the deposition." *Id.; see also In re Pelvic Mesh/Bard Litig.*, Dkt. No. BER-L-17717-14, at 2 (N.J. Super. Ct. Mar. 18, 2015) (emphasis added) ("Until further order, Plaintiffs' counsel may talk to treating physicians about care and treatment but are not permitted to share corporate documents with the doctors.") (attached hereto as Exhibit D). Similarly, in the *Actos* litigation, a California state court limited "Plaintiffs' counsel's *ex parte* contacts with treating physicians...to a discussion of the physicians' records, course of treatment and related issues such as diagnosis and prognosis" and prohibited Plaintiffs' counsel from discussing "liability issues or theories, product warnings, Defendants' research documents, medical literature, or related materials with, or showing or providing any such documents to, treating physicians before the physicians' depositions." *In re Actos Prods. Liab. Cases*, No. BC411687, at 16 (Cal. Super. Ct. Mar. 20, 2015) (attached hereto as Exhibit E).

---

[3] The court ordered that: "Plaintiff's counsel may not have ex parte discussions with the treating doctors about (1) their understanding of the risks and benefits of pelvic mesh products except as to what they knew and understood about when they used a particular product on the particular patient; (2) their past and present use of pelvic mesh products in general; (3) the risk and benefit information they received from agents or sales representatives of the defendants; (4) scientific literature, seminars, warnings or other tools the doctor used to obtain knowledge about the risks and benefits of the products; (5) theories of liability of the plaintiffs in the pelvic mesh litigation." *See* Exhibit C.

- 8 -

Even putting aside the unfairness of permitting Plaintiffs to "poison the well" with these *ex parte* discussions, because treating physicians are supposed to be fact witnesses (unless designated as experts), Plaintiffs do not have a legitimate need to discuss internal Bard documents with them unless they have personal knowledge of the documents. Plaintiffs' true purpose for discussing these documents, as the undersigned counsel have experienced in prior MDL proceedings and as is well publicized in legal commentary on this issue, is to elicit opinion testimony from these physicians beyond Plaintiff's course of treatment. But treating physicians who offer opinions beyond the medical treatment rendered to the plaintiff fall within the scope of Rule 26's written report requirement. *See, e.g., Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 819-26 (9th Cir. 2011) (finding that treating physicians who offer opinions reached outside of their treatment of the plaintiff are required to submit an expert report in compliance with Rule 26(a)(2)[4]); *Meyers v. Amtrak*, 619 F.3d 729, 735 (7th Cir. 2010) (same); *Brooks v. Union Pac. R.R.*, 620 F.3d 896, 900 (8th Cir. 2010) (same); *Mohney v. USA Hockey, Inc.*, 138 Fed. Appx. 804, 811 (6th Cir. 2005) (same). Plaintiffs should not be allowed to circumvent the Federal Rules of Civil Procedure and this Court's Standing Case Management Order by engaging in *ex parte* discussions with treating physicians about internal Bard documents for expert opinion purposes prior to their deposition without first identifying these physicians as experts and providing written reports of their opinions before their depositions.

Accordingly, the Court should adopt an approach similar to the *Mirena, Chantix, Ortho Evra* and *NuvaRing* MDL courts and the *In re Actos* and *In re Pelvic Mesh* consolidated proceedings and enter an order limiting any *ex parte* communications with the Plaintiffs' treating physicians to the Plaintiffs' medical condition at issue in the litigation. Such an order would preserve the Plaintiffs' ability to communicate with their

---

[4] Rule 26(a)(2)(B) requires witnesses to provide "a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case . . . ."

- 9 -

physicians while also ensuring that the physicians are not influenced before their depositions by the Plaintiffs' theories of liability and/or portions of Bard's confidential internal documents that are selected and presented in a plaintiff-friendly manner. Plaintiffs lose nothing by such an order because they have no legitimate need to discuss this information prior to the deposition. Plaintiffs remain free to show any documents they wish to treating physicians at deposition, when defense counsel will be present and will be able to lodge appropriate objections and show the physicians whatever additional documents are necessary to avoid misleading the witness.

### B. Disclosure of Documents Prior to Depositions of Treating Physicians.

Admittedly, some federal courts have declined to limit plaintiffs' *ex parte* communications, but even these courts still leveled the playing field by requiring plaintiffs to provide **disclosures** detailing their *ex parte* communications before the physicians were deposed. *See, e.g.*, *In re: Benicar (Olmesartan) Prod. Liab. Litig.*, No. 15-2606 (RBK/JS), 2016 WL 1370998, at *6 (D.N.J. Apr. 6, 2016) ("Plaintiffs must identify when the communication occurred, the means (in-person, telephone, e-mail, etc.), its approximate duration, the participants, and the identity of any documents or electronically stored information shown, provided to or otherwise described to the physician. All written communications shall be produced. This discovery shall be produced to defendants at least two (2) weeks before the first scheduled date of the physician's deposition."); *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, No. MDL 2592, 2016 WL 915288, at *6 (E.D. La. Mar. 9, 2016) (collecting cases).

Defendants do not believe Plaintiffs have a legitimate purpose for showing or discussing with Plaintiffs' treating physicians Defendants internal documents or other documents related to Plaintiffs' theories of liability. However, if the Court allows such *ex parte* contact, the parties are in agreement with the protocols relating to production of documents used in *ex parte* communications with treaters, and documents that may be shown to treaters during their depositions, as provided in the parties' Joint [Proposed]

Case Management Order, Section III.B.

### C. Depositions of Sales Representatives

Plaintiffs have proposed to take two (or more) Bard sales representatives in each Discovery Group 1 case. Such depositions unnecessarily broaden the scope of discovery to be conducted during this phase. Plaintiffs indicate that sales representatives they intend to take in all Discovery Group 1 cases may include the sales representative who was assigned to the implanting physician for the filter at issue in the case as well as sales representatives in the region who may have promoted prior generations of Bard's filters to that same physician. Plaintiffs' counsel further compound this over-broad proposed discovery by stating that different counsel representing different Discovery Group 1 plaintiffs may have their own strategies with respect to the depositions of sales personnel to be taken in Discovery Group 1 cases. Plaintiffs have already deposed multiple sales personnel at every level of the Bard organization (national, regional, and even local), as well as many managerial-level marketing employees. Through those depositions, the plaintiffs have painstakingly explored the gamut of sales issues relating to these 12 cases, including policies, strategies, communications to the sales force, reports from the sales force, and communications to doctors. The additional benefit (if any) of deposing individual sales representatives at this preliminary stage would be marginal, at best. Moreover, the testimony of sales representatives will provide little or no insight as to whether an individual case is representative of the MDL inventory, and hence, an appropriate selection for a bellwether trial. Defendants believe additional sales representative depositions are best suited for the Bellwether Group 1 phase of discovery when evidence related to the liability in an individual case then becomes important.[5]

---

[5] If still more sales personnel are to be deposed during Discovery Group 1 discovery, Defendants request that the depositions be limited to a single deposition of the primary sales representative who promoted the filter at issue in each particular case to the implanting physician and that it be limited to a total of four (4) hours, with three (3) hours allotted to Plaintiffs and one (1) hour allotted to Defendants. Defendants further request that the scope of permissible inquiry for any sales representative depositions be limited to the subject matter at issue in each given case, i.e., the promotion and marketing of the specific generation of filter at issue and communications regarding same to the implanting

DATED this 3rd day of January, 2017.

        s/Richard B. North, Jr.
        Richard B. North, Jr.
        Georgia Bar No. 545599
        Matthew B. Lerner
        Georgia Bar No. 446986
        NELSON MULLINS RILEY & SCARBOROUGH, LLP
        Atlantic Station
        201 17th Street, NW / Suite 1700
        Atlanta, GA 30363
        PH: (404) 322-6000
        FX: (404) 322-6050
        richard.north@nelsonmullins.com
        matthew.lerner@nelsonmullins.com

        James R. Condo (#005867)
        Amanda Sheridan (#005867)
        SNELL & WILMER L.L.P.
        One Arizona Center
        400 E. Van Buren
        Phoenix, AZ 85004-2204
        PH: (602) 382-6000
        JCondo@swlaw.com
        ASheridan@swlaw.com

        **Attorney for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

---

physician at issue. Otherwise, this aspect of bellwether-related discovery will simply become an expansion of general fact discovery, which should be concluding.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 3, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notification of such filing to all counsel of record.

                s/Richard B. North, Jr.
                Richard B. North, Jr.
                Georgia Bar No. 545599
                NELSON MULLINS RILEY & SCARBOROUGH, LLP
                Atlantic Station
                201 17th Street, NW / Suite 1700
                Atlanta, GA  30363
                PH: (404) 322-6000
                FX: (404) 322-6050
                Richard.North@nelsonmullins.com