# EXHIBIT E

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 2 0 2015

Sherri R. Carter, Executive Officer/Clerk
By: Roxanne Arraiga, Deputy

# SUPERIOR COURT OF CALIFORNIA

# COUNTY OF LOS ANGELES

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE (Rule 2.550)<br><br>ACTOS PRODUCT LIABILITY CASES<br><br>THIS DOCUMENT RELATES TO:<br><br>*Reuven Bar Yotam, et al. v. Takeda Pharmaceuticals North America, Inc., et al.*, San Francisco Superior Court, Case No. CGC-12-519107 | LASC Case No: BC411687<br><br>COURT'S RULING AND ORDER RE: DEFENDANTS' MOTION TO REGULATE *EX PARTE* CONTACT<br><br>Hearing Date: February 10, 2015 |

## I.

## BACKGROUND

In this coordinated litigation, Plaintiffs have sued the Defendants, manufacturers of the prescription drug Actos (the trade name for pioglitazone HC1 tablets), which is used to treat type 2 diabetes mellitus. Plaintiffs allege that they developed bladder cancer from ingesting the drug.

| | |
|---|---|
| 1 | The Plaintiffs in these cases allege various theories for products liability (including claims for |
| 2 | negligence, strict liability – failure to warn, strict liability – defective design, breach of the |
| 3 | implied warranty for a particular purpose, breach of the implied warranty of merchantability, |
| 4 | violation of the Unfair Competition Law ("UCL") and False Advertising Law ("FAL"), deceit |
| 5 | by concealment, negligent misrepresentation, and violation of the Consumer Legal Remedies |
| 6 | Act ("CLRA")). |
| 7 | The Takeda Defendants and Defendant Eli Lilly (collectively, "Defendants") have |
| 8 | brought the instant motion to regulate the Plaintiffs' counsel's *ex parte* contact with the treating |
| 9 | physicians. Specifically, the Defendants seek an order: 1) limiting Plaintiffs' counsel's *ex parte* |
| 10 | contacts with treating physicians in JCCP 4696 to a discussion of the physicians' records, course |
| 11 | of treatment and related issues such as diagnosis and prognosis; and 2) barring Plaintiffs' |
| 12 | counsel from discussing liability issues or theories, product warnings, Defendants' research |
| 13 | documents, medical literature, or related materials with, or showing or providing any such |
| 14 | documents to, treating physicians before the physicians depositions. |
| 15 | Alternatively, Defendants request an order: 1) authorizing Defendants' counsel to meet |
| 16 | *ex parte* with treating physicians to discuss liability issues and theories, product warnings, |
| 17 | Defendants' research documents, medical literature, and related materials (but not to discuss the |
| 18 | physicians' care and treatment of Plaintiffs); and 2) requiring the parties to disclose |
| 19 | contemporaneously any documents or other information – none of which should be allowed to |
| 20 | contain any highlighting or other annotations – shown or provided to the physicians. |
| 21 | Both sides have filed motions to seal. Defendants seek an order sealing documents |
| 22 | attached to Defendants' papers in support of the motion to seal. Plaintiffs have moved to seal |
| 23 | portions of Litzenburg Declaration in Connection with Plaintiffs' opposition to the Defendants' |
| 24 | motion limiting *ex parte* contact. |
| 25 | |

Plaintiffs also sought an order striking the Defendants' reply in support of Defendants' motion to seal and the supporting Declaration of Mollie Benedict. At the Court's February 10, 2015 hearing, the Court granted the Plaintiffs the chance to file supplemental briefing on the issues raised in the Plaintiffs' motion to strike the Defendants' reply. Plaintiffs also seek an order sealing exhibits 1 and 6 to their supplemental briefing.

For the reasons discussed *infra,* the motion to limit Plaintiffs' counsel's ex parte contact with treating physicians is granted. The Court issues the instant order: 1) limiting Plaintiffs' counsel's *ex parte* contacts with treating physicians in JCCP 4696 to a discussion of the physicians' records, course of treatment and related issues such as diagnosis and prognosis; and 2) barring Plaintiffs' counsel from discussing liability issues or theories, product warnings, Defendants' research documents, medical literature, or related materials with, or showing or providing any such documents to, treating physicians before the physicians' depositions. Further, having considered all supplemental papers filed subsequent to the hearing dealing with Defendants' motion to seal[1], the Court grants in full the Defendants' motion to seal and the Plaintiffs' motions to seal. The Plaintiffs' motion to strike Defendants' reply brief in support of Defendants' motion to seal and the supporting Benedict Declaration is denied.

## II.

## MOTIONS TO SEAL

### 1. Defendants' Motion to Seal

Defendants seek an order sealing the following exhibits:

---

[1] In their Response to Plaintiffs' Supplemental Brief, Defendants request the Court strike or at least disregard all of the Plaintiffs' Supplemental Brief apart from that portion of Section II that Defendants claim relates to the purportedly new material with which Plaintiffs took issue in their motion to strike. That request is denied, as the Court has considered all arguments advanced by Plaintiffs in the Supplemental Brief.

1. Pages 20-27 and 89 of Exhibit 31 to Dr. David Chappell's October 2, 2014 deposition in the *Rohyans* case, respectively, communications with FDA re: Actos' risk of bladder cancer and a November 2004 Protocol Amendment for the KPNC study (Exhibit B to the Declaration of Molly F. Benedict in Support of Defendants' Motion for Order Regulating Plaintiffs' Counsel's *Ex Parte* Contacts with Treating Physicians);

2. The European Medicines Agency's July 21, 2011 CHMP assessment report for Actos, Glustin, Competcact, Glubrava, and Tandemact, bates numbered TAL-STUARA-00101923-61 (Exhibit C to the Declaration of Molly F. Benedict in Support of Defendants' Motion for Order Regulating Plaintiffs' Counsel's *Ex Parte* Contacts with Treating Physicians); and

3. Portions of the transcript of the October 2, 2014 deposition of David Chappell, M.D., pages 89-90, 91, and 183 (Exhibit D to the Declaration of Molly F. Benedict in Support of Defendants' Motion for Order Regulating Plaintiffs' Counsel's *Ex Parte* Contacts with Treating Physicians).

At the outset, Defendants claim that the motion to seal is not subject to the requirements of California Rule of Court ("CRC") 2.550, because these exhibits are materials produced in discovery and filed in connection with a discovery motion. CRC 2.550(a)(3) provides that Rules 2.550-2.551 "do not apply to discovery motions and records filed or lodged in connection with discovery motions or proceedings. However, the rules do apply to discovery materials that are used at trial or submitted as a basis for adjudication of matters other than discovery motions or proceedings." See CRC 2.550(a)(3). Notwithstanding this rule, however, "a right of public access may exist and sealing rules may apply where the discovery motion involves 'questions of great significance to members of the public.'" California Practice Guide, Civil Procedure Before Trial, ¶9:418.26 (The Rutter Group 2014) (citing *H.B. Fuller Co. v. Doe* (2007) 151 Cal.App.4th 879, 893).

Here, the Court determines that the instant discovery motion *does* involve "questions of great significance to members of the public." The *Actos* coordinated litigation before this Court, as well as the Actos cases around the United States, affects hundreds of Plaintiffs throughout the United States. The *ex parte* motion brought by the Defendants undoubtedly is of great significance to members of the public. Accordingly, the Court believes that Rules 2.550-2.551

apply to the motions to seal, and the Court will apply those applicable rules in determining whether sealing is appropriate.

Unless confidentiality is required by law, court records are presumed to be open to the public. CRC 2.550(c). Therefore, pleadings, motions, discovery documents, and other papers may not be filed under seal merely by stipulation of the parties. A prior court order must be obtained. California Practice Guide, Civil Procedure Before Trial, The Rutter Group, ¶9:416 (2014) (citing CRC 2.551(a) and *H.B. Fuller Co. v. Doe, supra,* 151 Cal.App.4th at 888).

California Rule of Court 2.550 states that the Court may order a record be filed under seal only if it expressly finds facts that establish:

1) There exists an overriding interest that overcomes the public right of access to the record;

2) The overriding interest supports sealing the record;

3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed;

4) The proposed sealing is narrowly tailored; and

5) No less restrictive means exist to achieve the overriding interest. CRC 2.550(d).

These findings embody *constitutional* requirements for a request to seal court records, protecting the First Amendment Right of public access to civil trials. California Practice Guide, Civil Procedure Before Trial, The Rutter Group, ¶9:418 (2014) (citing *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178; *Huffy Corp. v. Sup. Ct. (Winterthur Swiss Ins. Co.)* (2003) 112 Cal.App.4th 97, 104; and *People v. Jackson* (2005) 128 Cal.App.4th 1009, 1026-1027). Importantly, "[a] record must not be filed under seal without a court order. The court must not permit a record to be filed under seal based solely on the agreement or stipulation of

1 the parties." CRC 2.551(a). CMO No. 3 echoes these requirements, providing that any motion
2 to seal must comply with the provisions of CRC 2.550, et seq.[2]

3     Taking the CRC 2.550 factors in turn, it is apparent that there exists an overriding
4 interest that overcomes the public right of access to these records.

5     Exhibit 31 to the Chappell Deposition, pages 20-27 is the response to the FDA's July 28,
6 2011 Advice/Information Request Letter that contains an unpublished nested-case control study
7 from the KPNC clinical study. The overriding interests at issue with this document are that: 1) it
8 is an unpublished clinical study and related document; 2) it constitutes information submitted to
9 a governmental or regulatory agency that is exempt from public disclosure; and 3) was produced
10 pursuant to a protective order.

11     Exhibit 31 to the Chappell Deposition, page 89 is the November 8, 2004 proposed
12 amendment to protocol for nested-case control study from a KPNC clinical study. This
13 document contains proprietary marketing, development, and research information; is an
14 unpublished clinical study; constitutes information submitted to a governmental or regulatory
15 agency that is exempt from public disclosure; and was produced pursuant to a protective order.

16     The CHMP Assessment Report is the third exhibit for which Defendants seek a sealing
17 order. This Report constitutes proprietary marketing, development, and research information. It
18 also is information submitted to a governmental or regulatory agency that is exempt from public
19 disclosure, and was produced pursuant to a protective order.

20     Finally, Defendants seek an order sealing three portions of the transcript of the Chappell
21 Deposition, dealing with: 1) discussion of June 1, 2012 email discussing unpublished clinical
22 results and strategy for potential publication of results; 2) discussion of April 28, 2011 email to
23 external consultant discussing unpublished clinical study results and interpretation of data; and

---

[2] See CMO No. 3 at 9.

3) discussion of draft of internal company document entitled "Global PROactive GPST Meeting Minutes" that includes a summary of internal company meeting discussing unpublished preliminary clinical data.

There is an overriding interest in sealing each of these exhibits. As Defendants note, these documents represent proprietary knowledge and commercially valuable information. They contain confidential information related to opinion leaders or other consultants; proprietary marketing, development and research information; unpublished clinical studies and related doctrines and information submitted to a governmental or regulatory agency exempt from public disclosure. These overriding interests support the sealing of these records, and a substantial probability exists that these overriding interests will be prejudiced if the records are not sealed. The proposed sealing is narrowly tailored, as Defendants seek only orders sealing these specific documents, and not the other portions of the enumerated exhibits.

Finally, there are no less restrictive means to achieve the overriding interest.

Plaintiffs claim that these documents were used during a prior trial, and that one of the documents (the European Medicine Agency web page) is a public site. However, the European Medicine Agency's website reference provided by Plaintiffs is not the same document filed by Defendants. Further, the use of internal documents in other Actos cases does not automatically transform confidential documents into public ones.

For these reasons, the Court determines that Defendants' motion is well-taken and is granted pursuant to CRC 2.550.

### 2. Plaintiffs' motion to seal portions of Litzenburg Declaration

Plaintiffs have filed the Litzenburg Declaration and the exhibits attached thereto under seal "out of an abundance of caution" consistent with CRC 2.550 and CMO No. 3. Plaintiffs, while filing the sealing motion, do not believe that the documents and information at issue should be sealed under CRC 2.550(c).

Defendants have filed a brief in support of the sealing order, and note that there are two documents at issue in Plaintiffs' motion for which the sealing order is sought:

1) Exhibit 4, an internal email discussing physicians, opinion leaders, and other consultants, and contains proprietary knowledge and commercially valuable information; and

2) Exhibit 7, financial and related information involving Dr. David Chappell, who is not a party to this case.

A sealing order is warranted for both exhibits. Exhibit 4 does indeed appear to be an internal email discussing various physicians, and it does contain proprietary knowledge and confidential information. Exhibit 7 reflects various payments made to Dr. Chappell and expenses claimed by him on a spreadsheet, as well as honoraria paid to him. Both exhibits contain commercially sensitive information, and this commercially sensitive information overcomes the public's right to access these records. A substantial probability exists that these overriding interests will be prejudiced if the records are not sealed. The proposed sealing is also narrowly tailored, as there are two exhibits to the Litzenburg Declaration dealing with commercially sensitive information, and financial information involving Dr. Chappell. There are no less restrictive means to protect these interests than by the sealing order.

As such, a sealing order is also warranted in full as to these two exhibits to the Litzenburg Declaration, and the Plaintiffs' motion to seal is granted.

In connection with the supplemental briefing, Plaintiffs seek an order sealing Exhibits 1 and 6. These exhibits are:

1. Takeda's response to an FDA information request and related cover letter; and

2. An unpublished scientific article entitled "Final Report of a Cohort Study of Pioglitazone and Bladder Cancer in Patients with Diabetes."

Having reviewed these exhibits, the Court determines that the CRC 2.550 analysis applies to both exhibits (again, given the public's interest in the Actos cases in California and throughout the country). The Court agrees that Exhibit 1 contains confidential communications

8

with the FDA (and a cover letter) that were subject to the initial motion to seal filed by Defendants. The Court also believes that Exhibit 6 contains confidential information, as it is an unpublished scientific article which may or may not be accepted for publication. The confidential information in both exhibits overcomes the public's right to access these records. A substantial probability exists that these overriding interests will be prejudiced if the records are not sealed. The proposed sealing is also narrowly tailored, as there are only two exhibits to the supplemental briefing for which Defendants seek the sealing order. There are no less restrictive means to protect the confidential communications and the unpublished article than through a sealing order. As such, the motion to seal Exhibits 1 and 6 to the Plaintiffs' Supplemental Brief is granted.

### III.

### OBJECTIONS TO EVIDENCE

Defendants have lodged objections to the Declarations of Thomas Girardi, Mark Crawford, and Timothy Litzenburg submitted in support of Plaintiffs' opposition to the motion for an order regulating Plaintiffs' counsel's ex parte contacts with treating physicians. The Court's rulings on the objections follow.

1. Girardi Decl., ¶3: **Sustained**.

2. Girardi Decl., ¶4: **Sustained**.

3. Girardi Decl., ¶5a: **Sustained**.

4. Girardi Decl., ¶5b: **Sustained**.

5. Girardi Decl., ¶5c: **Sustained**.

6. Girardi Decl., ¶5d: **Sustained**.

7. Girardi Decl., ¶6: **Sustained**.

8. Girardi Decl., ¶7a-f: **Sustained**.

9

9. Girardi Decl., ¶8: **Sustained**.

10. Girardi Decl., ¶9: **Sustained**.

11. Girardi Decl., ¶10: **Sustained**.

12. Girardi Decl., ¶11, l. 3-9: **Sustained**.

13. Girardi Decl., ¶11, l. 9-17: **Sustained**.

14. Girardi Decl., ¶12, l. 18-23: **Sustained**.

15. Girardi Decl., ¶12, l. 23-27: **Sustained**.

16. Girardi Decl., ¶13, p. 4:28-5:7: **Sustained**.

17. Girardi Decl., ¶13, p. 5:7-11: **Sustained**.

18. Girardi Decl., ¶14, ¶14: **Sustained**.

19. Crawford Decl., ¶3, l. 6-7: **Overruled**.

20. Crawford Decl., ¶6, l. :3-6: **Overruled**.

21. Crawford Decl., ¶9, l. 25-28: **Overruled**.

22. Crawford Decl., ¶10, l. 6-8: **Overruled**.

23. Crawford Decl., ¶14, l. 3-7: **Overruled**.

24. Litzenburg Decl., ¶2, l. 3-5: **Overruled**.

25. Litzenburg Decl., ¶3: **Overruled**.

26. Litzenburg Decl., ¶4, l. 9-10: **Sustained**.

27. Litzenburg Decl., ¶4, l. 10-13: **Overruled**.

28. Litzenburg Decl., ¶5, l. 16-18: **Overruled**.

29. Litzenburg Decl., ¶12, l. 23-25: **Sustained**, with respect to statement "in their 15 year misinformation campaign," otherwise, **overruled**.

////

////

////

10

## IV.

## MOTION TO REGULATE EX PARTE CONTACT WITH PHYSICIANS

By virtue of the instant motion, Defendants Takeda and Eli Lilly seek an order from the Court regulating Plaintiffs' counsel's *ex parte* contact with Plaintiffs' treating physicians. In particular, the proposed parameters of such an order would be:

1) limiting Plaintiffs' counsel's *ex parte* contacts with treating physicians in JCCP 4696 to a discussion of the physicians' records, course of treatment and related issues such as diagnosis and prognosis; and

2) barring Plaintiffs' counsel from discussing liability issues or theories, product warnings, Defendants' research documents, medical literature, or related materials with, or showing or providing any such documents to, treating physicians before the physicians depositions.

As an alternative, Defendants seek an order:

1) authorizing Defendants' counsel to meet *ex parte* with treating physicians to discuss liability issues and theories, product warnings, Defendants' research documents, medical literature, and related materials (but not to discuss the physicians' care and treatment of Plaintiffs); and

2) requiring the parties to disclose contemporaneously any documents or other information – none of which should be allowed to contain any highlighting or other annotations – shown or provided to the physicians.

There is significant history leading up to the Defendants' filing of the instant motion, which will not be repeated here (it is discussed more thoroughly *supra* and is set forth in the papers). The major points, however, are these. Plaintiffs' counsel have been providing Plaintiffs' treating physicians (including Dr. David Chappell in the *Rohyans* case) with various documents (deemed "confidential") outside of the normal discovery process, and in anticipation of their depositions. Counsel has been making this contact with the treating physicians on an *ex parte* basis. The treating physicians have not been designated as experts, yet they are still provided with various documents weeks before their depositions occur. The treating physicians are able to review these documents, and, according to Defendants, the views of the treating physicians are "tainted" as a result.

**1. Regulation of *ex parte* contacts with counsel and the physician-patient privilege**

There are two broad issues for the Court's consideration on this motion. The first is the extent to which the Court may regulate, consistent with the physician-patient privilege, Plaintiffs' counsel's *ex parte* communications with treating physicians. Defendants claim that Plaintiffs' counsel is effectively transforming the treating physicians into undesignated experts (by providing the physicians with the designated-confidential documents prior to, and in anticipation of, deposition), and giving Plaintiffs an unfair advantage. With respect to expert witnesses, CCP §2034.260(c) provides in part:

> **(c)** If any witness on the list is an expert as described in subdivision (b) of Section 2034.210, the exchange shall also include or be accompanied by an expert witness declaration signed only by the attorney for the party designating the expert, or by that party if that party has no attorney.

In turn, CCP §2034.210(b) provides:

> (b) If any expert designated by a party under subdivision (a) is a party or an employee of a party, or has been *retained* by a party *for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action*, the designation of that witness *shall include or be accompanied by an expert witness declaration* under Section 2034.260. (Emphasis added.)

In *Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, the California Supreme Court discussed the role of the treating physician as a witness, and noted as follows:

> A treating physician is a percipient expert, but that does not mean that his testimony is limited only to personal observations. Rather, like any other expert, *he may provide both fact and opinion testimony.* As the legislative history clarifies, what distinguishes the treating physician from a retained expert is not the *content* of the testimony, but the *context* in which he *became familiar with the plaintiff's injuries* that were ultimately the subject of litigation, and which form the factual basis for the medical opinion. The contextual nature of the inquiry is implicit in the language of section 2034, subdivision (a)(2), which describes a retained expert as one "retained by a party *for the purpose* of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action." (Italics added.) A treating physician is not *consulted* for litigation purposes, but rather *learns* of the plaintiff's *injuries* and *medical history* because of the underlying physician-patient relationship. *Schreiber, supra,* 22 Cal.4th at 35-36.

12

While the treating physicians are percipient "experts" (and may in fact provide fact and opinion testimony), they are not *designated* experts. By providing the confidential literature to the treating physicians on an *ex parte* basis, Plaintiffs, in effect, would circumvent the specific requirements under the Code of Civil Procedure for expert witness designations.

The Court is not persuaded by Plaintiffs' argument that any limitation on counsel's ability to engage in *ex parte* communications "would severely undermine a Plaintiff's ability to prove a failure to warn claim." As Defendants point out in their reply brief, Plaintiffs' counsel may meet *ex parte* with treating physicians and ask them questions about the information obtained by an examination of their patients. Plaintiffs' counsel may then use the information learned from the *ex parte* contacts to tailor deposition questioning. As Defendants note, during deposition, Plaintiffs' counsel may show the treating physicians medical articles and documents (those which have been deemed confidential) and ask them whether they would have made prescribing decisions had they known certain facts at the relevant time.

Plaintiffs claim in the motion that to provide the confidential exhibits to the treating physicians at the time of deposition would exponentially lengthen the deposition, and it would be "impossible" to complete the testimony. However, the parties are ordered to cooperate on the length of the treating physician depositions. The Court will be willing to permit extended depositions, within reason and on a showing of good cause, where confidential documents are brought to the attention of the treating physicians at their depositions. This would prevent any unfair element of surprise, and at the same time, would permit Plaintiffs the full right to question the physicians at deposition about their treating decisions based in part on the confidential documents.

There is authority for the *ex parte* limiting order. In *In re Ortho Evra Prods. Liab. Litig.* (N.D. Ohio Jan. 20, 2010) 2010 WL 320064 at *2, the Court held "Plaintiffs' counsel may meet *ex parte* to discuss the physicians' records, course of treatment and related matters, but not as to

13

liability issues or theories, product warnings, Defendant research documents or related materials." *See also In re: Chantix (Verenicline) Prods. Liab. Litig.* (N.D. Ala. June 30, 2011) 2011 U.S. Dist. LEXIS 156968 at *18 (noting that plaintiffs' counsel's *ex parte* communications must be "limited to the individual care of the individual plaintiffs, such as the plaintiffs' treatment, medical records and conversations with their health care providers" and that "[p]laintiffs' counsel shall not discuss defendants' internal documents with plaintiffs' health care providers outside of a deposition"). The Court finds that it does have authority to regulate Plaintiffs' counsel's *ex parte* contacts.

### 2. CMO No. 3

The second major issue posed by the motion is the effect of CMO No. 3 on the *ex parte* contacts with Plaintiffs' treating physicians. According to Plaintiffs, CMO No. 3 specifically permits them to provide this confidential material to treating physicians, provided they abide by the terms of the CMO. Defendants, however, claim that CMO No. 3 does not allow Plaintiffs' counsel to send Defendants' confidential documents to treating physicians before their depositions. The applicable language from CMO 3 states:

> (c) A plaintiff's current or former healthcare provider who has agreed to maintain the confidentiality of any document subject to this order: or who has agreed on the record at deposition to maintain the confidentiality of any document intended to be used at the deposition *may be shown or questioned about Confidential Discovery Material at the deposition*, provided that no copies of the Confidential Discovery Material *shall be left in the possession of the healthcare provider witness* and copies of that Confidential Discovery Material shall not be attached to or included with any original or copy of the transcript of that deposition provided to the healthcare provider; however, copies of the Confidential Discovery Material shall be attached to the deposition transcript and made available for the use of the deponent in the event he or she testifies at trial.
>
> Counsel present at the deposition should make a good faith effort to obtain the healthcare provider's agreement on the record to maintaining confidentiality and no counsel shall make efforts to dissuade the healthcare provider from refusing to agree on the record to maintaining the confidentiality of any such documents. Regardless of whether any deponent signs the Declaration attached as Exhibit A, this Order will apply to any deponent who is shown or examined about Confidential Discovery Material and the deponent cannot take any exhibits with

14

them nor can he/she reveal any information learned from the confidential materials shown to them. This paragraph is not intended to prevent any party or deponent from seeking other relief from this Court. See CMO No. 3, ¶7(c) (emphasis added).

By its terms, there is nothing in this provision demonstrating an agreement to an *ex parte* disclosure of documents designated "confidential." The record is vague as to whether Defendants' counsel understood that CMO No. 3 was intended to permit such *ex parte* disclosure, but for their part, Defendants' counsel adamantly states there was no such agreement. The Court is not persuaded by Plaintiffs' assertions that the parties' past course of dealing in other Actos cases warrants a different result. The Miller Firm apparently sent materials to treating physicians in a number of Actos cases, but there is nothing to indicate that they were provided with documents deemed *confidential* under the CMO.

There does not appear to be any real dispute that, as a general principle, ex parte contact between Plaintiffs' counsel and the Plaintiff's treating physician is permissible. However, the means by which Plaintiffs are dealing with the treating physicians on an *ex parte* basis appears to stand in opposition CMO No. 3, and circumvent the requirements for designation of experts.

With all of that said, Defendants' alternative relief (to permit Defendants *ex parte* contact with the treating physicians) is not appropriate. To allow such alternative relief would potentially invade the physician-patient privilege. It is better, from a practical standpoint, to require Defendants' contacts with Plaintiffs' treating physicians occur within the scope of the discovery process.

For all of these reasons, the Court finds that CMO No. 3 does not allow Plaintiffs to, on an *ex parte* basis and outside the scope of a deposition, provide Plaintiffs' treating physicians with confidential documents.

V.

CONCLUSION

For the foregoing reasons, the motion to limit Plaintiffs' counsel's ex parte contact with treating physicians is granted. The Court orders as follows: 1) Plaintiffs' counsel's *ex parte* contacts with treating physicians in JCCP 4696 shall be limited to a discussion of the physicians' records, course of treatment and related issues such as diagnosis and prognosis; and 2) Plaintiffs' counsel may not discuss liability issues or theories, product warnings, Defendants' research documents, medical literature, or related materials with, or showing or providing any such documents to, treating physicians before the physicians depositions. The Defendants' motion to seal, and the Plaintiffs' motions to seal, are granted in full. The Plaintiffs' motion to strike Defendants' reply brief in support of Defendants' motion to seal and the supporting Benedict Declaration is denied.

The issues addressed in this Ruling and Order present controlling questions of law as to which there are substantial grounds for difference of opinion. Pursuant to Code of Civil Procedure §166.1, the Court finds that appellate resolution of these issues may materially assist in the resolution of the litigation.

Dated: March 20, 2015

**KENNETH R. FREEMAN**

_____
Kenneth Freeman
Judge of the Superior Court