Robert W. Boatman (009619) - rwb@gknet.com
Paul L. Stoller (016773) - paul.stoller@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
602-530-8000

Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Matthew Lopez – mlopez@lopezmchugh.com
(CA Bar No. 263134; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660
949-812-5771

*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC<br><br>**PLAINTIFFS' SEPARATE SUBMISSION RE DISCOVERY GROUP 1 DISCOVERY PROTOCOL DISPUTES** |

In accordance with the stipulation filed by the Parties on December 16, 2016 [Doc. 4324], the Parties have filed today a stipulation for entry of a case management order with protocols for a number of issues relating to discovery in Discovery Group 1. Separate from those agreed protocols, Defendants have made several requests to restrict the ability of Plaintiffs to conduct discovery, confer with their witnesses, or otherwise to present their cases. Plaintiffs provide this separate memorandum to address those disputes.

**I.    Disputes Regarding Plaintiffs' Right to Depose Sales Representatives**

The parties have three separate disputes regarding Plaintiffs' depositions of Bard's sales representatives in individual cases. First, Defendants contend that Plaintiff should not be permitted to depose any sales representatives as part of the Discovery Group 1 discovery, and only be allowed to depose such individuals in the cases selected for inclusion in Bellwether Group 1. Second, Defendants contend this Court should preclude

1  Plaintiffs from examining these witnesses regarding relevant information and limit them
2  solely to their contacts with Plaintiffs' doctors.  Third, Defendants request this Court to
3  limit the time for these depositions beyond what the Court has already ordered in CMO
4  14.  There is no good basis for Defendants' requested limitations.[1]

As it relates to all of these issues, Plaintiffs note that sales representatives are important witnesses in every case.  Their testimony will be relevant to liability, punitive damages, and Bard's affirmative defenses.  In virtually every case, sales representatives are the primary contact between Bard and Plaintiffs' doctors; as such, they are a primary source of information from Bard to those doctors about the safety and efficacy of Bard IVC filters.  And, the doctors rely on them to provide complete and accurate information to their patients.  Plaintiffs' contend that Bard, through its sales representatives and other means, provided the medical community and the public with incomplete and inaccurate information about those filters.

Thus, what the sales representatives told and did not tell Plaintiffs' doctors regarding Bard IVC filters will be at issue in these cases.  Similarly, what those sales representative knew and did not know about Bard's IVC filters (and, thus, were or were not able to convey to doctors) is relevant in every case.  Plaintiffs' claims for failure to warn and negligent misrepresentation put the communications directly at issue; and, whether Plaintiffs' physicians would have implanted Bard IVC filters had they received complete and accurate information from Bard will be a question in every suit and on every claim.  The actions and inactions of the sales representatives are also relevant to Plaintiffs' claim for punitive damages based on Bard's scheme to hide relevant adverse information from doctors and the public.  And, Bard has put directly at issue the communications

---

[1] Defendants seek limitations of Plaintiffs' ability to take discovery beyond what is permitted by the Federal Rules of Civil Procedure and the Case Management Orders of this Court.  In so doing, Defendants have not provided Plaintiffs with any authority in support of their arguments.  As such attempts would normally be made by motion to which Plaintiffs could respond, Plaintiffs reserve the right to supplement their position as set forth in this Submission after they have received Defendants' arguments.

between its sales representatives and doctors by asserting the learned intermediary affirmative defense.

The Defense Fact Sheets in this MDL implicitly recognize the importance of these witnesses by requiring Defendants to identify both the sales representative for the territory in which the plaintiff's device was implanted at the time of implant and the supervisor(s) for that sales representative. These are, of course, important witnesses.

### A. Plaintiffs Should Be Allowed to Depose Bard's Sales Representatives Prior to Bellwether Trial Selection.

The parties' first dispute is whether Plaintiffs should be permitted to take the depositions of sales representatives and/or their supervisors prior to the selection of Bellwether Group 1 cases. Consistent with other MDLs, Plaintiffs have proposed to take the deposition of up to two sales representatives and/or their supervisors in the Discovery Group 1 cases in order to determine which cases are appropriate for inclusion in Bellwether Group 1. Defendants disagree – effectively contending that Plaintiffs should not be permitted to take case-specific discovery prior to bellwether case selection.

It is undisputed that the sales representatives who spoke with Plaintiffs' physicians about Bard's IVC filters and, in some instances, their supervisors will be deposed in every case that goes to trial. The question is whether those should occur before or after the selection of bellwether trials. Plaintiffs believe that the deposition of the primary sales representatives at the time of implantation and possibly their supervisors will be critical to narrowing down the Discovery Group 1 cases to those that best exemplify Defendants' conduct. As discussed above, sales representatives are the most direct salespersons for a medical device company and their actions, inactions, statements, and/or misinformation can be persuasive or detrimental in helping medical providers make the ultimate decision as to whether, why, and when to use a device. For example, if the sales representative in a given case testifies that he or she withheld important information, provided deceptive or inaccurate information, or simply lacked knowledge regarding important facts as to safety

3

or efficacy, the Court will likely want to be aware of those facts prior to determining whether the case should serve as a bellwether.

The necessity of sales representative depositions in discovery pool cases has been recognized in numerous medical product-liability MDLs. *See, e.g., In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Prods. Liab. Litig.*, MDL No. 2502, Amended Case Management Order No. 6, at 5 (D. N.C. May 22, 2014) ("Plaintiffs may begin noticing depositions of up to two (2) sales representatives identified by Pfizer in each Discovery Pool case …."); *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, Case Management Order No. 2 (E.D. La. Sept. 18, 2015) ("One Sales Representative as determined by the Plaintiffs"); *In re Mirena IUD Prods. Liab. Litig.*, MDL No. 2434, Order No. 18C (S.D. N.Y. Aug. 15, 2014) (permitting two or three sales representative depositions per case); *In re Chantix (Varenicline) Prods. Liab. Litig.*, MDL No. 2092, Order No. 4B (N.D. Al. Sept. 28 2010) (permitting depositions of sales representatives).

Consistent with these cases and to avoid any concerns at this stage regarding a physician's dealings with multiple sales representatives over time, Plaintiffs proposed a limit of two depositions of sales representatives and/or their supervisors prior to bellwether selection. Plaintiffs believe this is a fair proposal in light of the importance of these witnesses. Accordingly, Plaintiffs request the Court allow the depositions of up to two sales representatives and/or their supervisors prior to bellwether selection.

B. <u>Defendants' Request to Limit the Substance of Plaintiffs' Examination of Sales Representatives Is Groundless.</u>

Defendants next ask this Court to limit the subject matter about which Plaintiffs may examine Defendants' sales representative. They frame their request as one limiting Plaintiffs' examination to

> case specific questions, relating to relationships and communications the sale representative had with Plaintiff's treating physicians, and relating to the filter type at issue in the particular case, and <u>not to common issues on which sales employees have been deposed previously in this MDL</u>.

4

1  (Emphasis added.) Defendants have provided no rationale for such a restriction other than
2  that Plaintiffs have deposed other internal corporate witnesses on general liability issues.
3  But, the very real effect of this proposed limitation would be to preclude Plaintiffs from
4  examining Bard's employees about important information in the case – the information
5  and warnings the sales representatives did <u>not</u> provide to Plaintiffs or their doctors.

6        As discussed above, the communications between the sales representatives and
7  Plaintiffs' doctors are directly at issue for the claims and defenses in this litigation. It is
8  particularly the information that the sales representatives did not provide to the doctors
9  that Bard seeks to avoid by its proposed limitations. Among other things, Plaintiffs intend
10 to examine the sales representatives regarding whether they were aware of certain
11 information regarding the safety and efficacy of the Bard IVC filters. Of course, they
12 could not have provided Plaintiffs' doctors information of which they were not themselves
13 aware. And, to the extent that sales representatives did not provide doctors with important
14 information, it is relevant whether the sales representatives were themselves aware of
15 whether the information was likewise withheld from them.[2] Indeed, Plaintiffs' need to
16 depose the sales representatives is in many ways the mirror of Bard's need to depose the
17 doctors prior to selection of bellwether cases. Just as Bard needs to know the testimony of
18 the doctors in these cases, Plaintiffs need to understand what the sales representatives
19 knew and did not know, and what they told and did not tell the doctors.

20       Defendants cannot argue that the information they seek to preclude is irrelevant;
21 instead, they contend that this information has already come in from other sources. But
22 that does not somehow make the examination of these witnesses on crucial evidence

---

[2] Similarly, what the sales representatives knew about IVC filters other than the device implanted in individual Plaintiffs is relevant and important. In its FDA 510(k) clearance submissions, Bard identified each preceding IVC filter as the predicate device for the newer device and represented the new device was substantially equivalent to its predecessor. It cannot now be heard to claim that the devices are so different that witnesses cannot be asked about the similarities and differences in the filters or to make comparisons to other Bard devices or competitor devices. This is particularly true for sales representatives who may have sold different filters to the same doctors over time.

somehow disproportionate to the needs of the case.  Indeed, it is precisely the connection (or lack thereof) of Bard's internal knowledge regarding its devices, their failures, and the injuries they caused to what its sales representatives knew or did not know and what they conveyed or did not convey to doctors that is at issue – particularly on claims relating to failure to warn and Bard's affirmative learned intermediary defense.

The proscription that Defendants seek is also unworkable.  Who is to be the arbiter at the deposition of what falls within or outside of Defendants' proposed fair territory?  Defendants opposed the appointment of a special master in this case.  There will not be anyone in the room to call balls and strikes as to what constitutes proper areas of examination and what is improper.  Indeed, the result of the proposed limitation will only serve to prolong depositions and create further disputes.

This Court should deny Defendants' attempt to preclude Plaintiffs from examining Defendants' employees and former employees regarding relevant information.

C. Defendants' Proposal to Further Limit Deposition Time Lacks Merit.

Bard proposes to limit the total time for deposition of its sales representatives to four hours.  However, there is no basis to depart from Federal Rule of Civil Procedure 30(d) or the heavily negotiated CMO 14 in this MDL.  Those provide existing, appropriate limits on the time for depositions.  These depositions do not warrant different treatment.

The sales representatives are likely to be witnesses called at trial; and because most no longer work for Bard, they will not appear live.  Thus, they will appear by depositions and, due to the tight schedule, the depositions Plaintiffs take in discovery will likely have to serve as both discovery deposition and trial deposition – there will not be reasonable opportunity for separate depositions.  For Plaintiffs, that will necessarily require more time than if they were just taking one or the other.

Additionally, consistent with Defendants' actions for virtually every current and former employee who has been deposed in this MDL, Plaintiffs expect that Defendants will spend in excess of ten hours preparing each of these witnesses.  In fairness, Plaintiffs should have at least their allotted time under CMO 14 to conduct these depositions.

6

For these reasons, this Court should reject Defendants' proposed restrictions on the time for which Plaintiffs may depose Bard's sales representatives.

## II. Plaintiffs Should Be the First Examiner for Those Treating Physicians They Would Call at Trial.

The parties disagree on the order of examination of treating physicians. Because of their involvement with Plaintiffs' IVC filters and their treatment of Plaintiffs' injuries, many of Plaintiffs' treating physicians will be witnesses for the bellwether trials. However, because the Court has ordered that the bellwether trials shall proceed in this District and most, if not all, of the doctors live outside Arizona, none will be called live; they will be presented by deposition. And, because of the discovery schedule for these cases, there will not be separate discovery and trial depositions of the doctors; there will be a single deposition. That deposition will be used at trial for their testimony.

 If the bellwether cases were proceeding to trial in their home Districts, Plaintiffs would be calling many of these doctors live in their case in chief. As the party with the burden of proof, that would mean Plaintiffs would call those doctors first. Because the depositions of the doctors will be used for their trial testimony, Plaintiffs believe the logical order of examination should be as it would proceed at trial – with the party that would be calling the witness examining first, the opposing party then cross examining the doctors, and then the first party conducting re-direct examination. This is consistent with Rule 30(c)(1), which provides that "[t]he examination and cross-examination of a deponent proceed <u>as they would at trial</u> …." (Emphasis added.)

Defendants do not agree, instead proposing that the parties alternate who examines first without regard to who would first call the witness or how the testimony will be presented at trial. That proposal, however, would result in awkward and stilted testimony at trial for at least half the doctors – Defendants cross examining before Plaintiffs put on a direct examination, and Defendants presumably questioning last even though Plaintiffs

7

bear the burden of proof.  Given the depositions are trial testimony, there is no good rationale to proceed in this manner.[3]

Plaintiffs recognize that they would not necessarily call every treater in their case in chief.  Accordingly, they propose that the order of examination be determined as follows:

> 1.   By no later than January 16, 2017, Plaintiffs shall identify the physicians who they have a good faith belief they would call as witnesses in their case in chief for each of the Discovery Group 1 cases.  By no later than January 23, 2017, Defendants shall identify any physician not identified by Plaintiffs who they have a good faith belief they would call in their case in chief for each of the Discovery Group 1 cases.
>
> 2.   For any physician who is deposed in Discovery Group 1:
>
> a. Plaintiffs' counsel shall be the first examiner for any physician who Plaintiffs have identified by January 16, 2017 as a witness they would call in their case in chief;
>
> b. Defendants' counsel shall be the first examiner for any physician who Defendants have identified by January 23, 2017 as a witness they would call in their case in chief; and
>
> c. The party noticing the deposition shall be the first examiner for any other physician.

Plaintiffs submit that this proposal preserves the ordinary presentation of evidence at trial and will permit the best presentation of evidence to juries in the bellwether trials.  Plaintiffs propose that this provision be included in Section II of the proposed Case Management Order as Section II.B as set forth in the attached Exhibit.

### III.   The Court Should Reject Defendants' Proposed Restrictions on Plaintiffs' Ability to Communicate With Their Treating Physicians

Contrary to the trend of almost every court to consider the issue recently, Defendants ask the Court to limit Plaintiffs' ability to communicate with their own treating physicians.  In particular, they ask the Court to restrict the subject matter that Plaintiffs' counsel may discuss in *ex parte* meetings with Plaintiffs' treating physicians;

---

[3] Plaintiffs recognize that many MDL orders regarding the order of examination for depositions of treating physician provide for some form of alternating priority.  However, Plaintiffs are not aware of any of those cases involving (a) trials not proceeding in the Districts of the plaintiffs and their witnesses and (b) the treating physician depositions serving as trial depositions of witnesses that Plaintiffs would otherwise call at trial.  Nor are Plaintiffs aware of any of those courts considering Rule 30(c)(1).

8

they also ask the Court to require Plaintiffs' counsel to "inform" Plaintiffs' physicians that they do not have to communicate with those attorneys. Neither requested restriction is appropriate.

> A. Defendants' Request to Limit the Subject Matter of Plaintiffs' Counsels' *Ex Parte* Communications with Treating Physicians.

Defendants propose that the Court limit Plaintiffs' discussion with doctors to "medical history and conditions of the particular Plaintiff treated by the physician" and prohibit Plaintiffs from discussing with them "liability issues or theories and Defendants' internal documents, research, analysis, trending, or related materials."

This issue is not new to product liability cases; nor is it new to MDLs. Indeed, in three separate MDLs this year, courts have struck down similar attempts by Defendants to restrict the substance of communications by plaintiffs' counsel with treating physicians. *See In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, 2016 WL 915288 (E.D. La. Mar. 9, 2016); *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545, 2016 WL 929343 (N.D. Ill. Mar. 7, 2016); *In re Benicar (Olmesartan) Prods. Liab. Litig.*, MDL No. 2026, 2016 WL 1370998 (D.N.J. Apr. 6, 2016). In each of those cases, the defendants sought a similar order to what Defendants seek here; and, in each of those cases, the court denied the request.

Those courts all rely, at least in part, on Judge Eldon Fallon's decision in *In re Vioxx Prods. Liab. Litig.*, 230 F.R.D. 473 (N.D. La. Mar. 20, 2007). In *Xarelto*, Judge Fallon noted that "federal courts have routinely recognized the propriety of allowing for *ex parte* interviews under many circumstances." *Xarelto*, 2016 WL 915288 at *4 (citing *Hickman v. Taylor*, 329 U.S. 495, 511-12 (1947)). He concluded that "imposing restrictions on the substantive content of *ex parte* contacts between Plaintiffs' counsel and prescribing or treating physicians would be both unenforceable and unreasonable." *Id.* He further found that the limitations proposed by the defendants – like those proposed by Defendants here – created an undue burden on the physician-patient relationship. He also determined that the defendants' proposal was not enforceable – he could not "surgically

9

remove delicate insinuations" from the communications at issue. In conclusion, he denied defendants' requests in total, finding that "a strong dose of cross-examination [is] the cure for Defendants' perceived ills." *Id.* at *6.

In *In re Benicar*, Judge Schneider of the District of New Jersey noted that the defendants' request was "rooted in [their] belief that otherwise plaintiffs' counsel has 'a unique and unfair opportunity to sway the perspective and testimony of key witnesses.'" 2016 WL 1370998, at *3. But, he found "[t]he problem with defendants' argument is that there is no credible evidence to support it." *Id.* The court agreed with the language in *Xarelto* expressing a "healthy skepticism that plaintiffs' counsel could or would unduly influence the plaintiffs' physicians." *Id.* (and then quoting *Xarelto*, 2016 WL 915288 at *5). Like Judge Fallon, Judge Schneider found that the cure for defendants' perceived ills is cross examination: "as noted, defendants are free to explore the extent of a physician's contacts with plaintiffs' counsel at the physician's deposition." *Id.* *4. He also noted that

> if, as defendants argue, they want to be on an "equal footing" with plaintiffs, one wonders whether they would agree to limit their "ex parte" contacts with defense oriented fact witnesses such as present and former employees outside the "control group", ex-employee sales representatives, etc. Although possible, the Court is doubtful defendants would agree to a reciprocal limitation. Defendants argue if a bar Order is not entered plaintiffs' counsel has "a unique and unfair opportunity to sway the perspectives and testimony of key witnesses." DB at 7. Defendants ignore the fact plaintiffs can make essentially the same argument as to witnesses associated with the defendants. Moreover, it is disingenuous for defendants to ask to be put on an "equal footing" with plaintiffs when to date the physicians have been subject to defendants' marketing communications which likely extolled the benefits of their drugs.

*Id.* And, like Judge Fallon, he found that defendants' request would be "almost impossible and certainly problematic to police the communications between plaintiffs' counsel and physicians." *Id.* *5.

The reasoning of these cases holds true here.

B.  <u>Defendants' Request that the Court Require Plaintiffs to Warn Doctors that They May Decline Interviews Is, Likewise, Inappropriate.</u>

Defendants next ask this Court to require Plaintiffs to give an admonition to treating physicians prior to speaking with them; there is no basis for such prophylactic

10

measure here. It is not clear what Defendants are actually attempting to prevent. The only reason to require such a "warning" would be to deter doctors from communicating with Plaintiffs' attorneys. But, the doctors' relationships with their patients actually require them to communicate with plaintiffs and their representatives. Moreover, Defendants provide no reason why doctors should have special warnings that do not apply to other third-party witnesses.

The same rationale that applies to regulating the content of Plaintiffs' counsel's communications, as expressed in *Xarelto*, *Vioxx*, *Testosterone*, and *Benicar*, exists as to Defendants' requested warning to physicians. As the courts have noted, federal courts have recognized the propriety of *ex parte* interviews; and, in these situations, there is a patient-doctor relationship that carries with it special duties and obligations from the doctor that do not exist in other circumstances.

There is also no evidence that Plaintiffs' counsel have acted improperly in their communications with any witness or potential witness in this MDL.

This Court should deny Defendants' request.

**IV.   Conclusion**

Plaintiffs have submitted herewith a form of the proposed CMO that addresses these issues as Plaintiffs request herein. That form of order is attached as Exhibit A.

RESPECTFULLY SUBMITTED this 3rd day of January 2017.

        GALLAGHER & KENNEDY, P.A.

        By:*/s/ Paul L. Stoller*
            Robert W. Boatman
            Paul L. Stoller
            Shannon L. Clark
            2575 East Camelback Road
            Phoenix, Arizona  85016-9225

        LOPEZ McHUGH LLP
            Ramon Rossi Lopez (CA Bar No. 86361)
            (admitted *pro hac vice*)
            Matthew Lopez (CA Bar No. 263134)
            (admitted *pro hac vice*)

100 Bayview Circle, Suite 5600  
Newport Beach, California 92660  

*Co-Lead/Liaison Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of January, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

<u>/s/ Deborah Yanazzo</u>

5767866/26997-0001