James R. Condo (005867)
Amanda C. Sheridan (027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (GA Bar No. 545599)
(admitted *pro hac vice*)
Matthew B. Lerner (GA Bar No. 446986)
(admitted *pro hac vice*)
Nelson Mullins Riley & Scarborough, LLP
201 17th St. NW, Suite 1700
Atlanta, GA 30363
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants C. R. Bard, Inc.
and Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF SUBMISSION REGARDING ISSUES IN DISPUTE AS TO PROTOCOLS FOR CONDUCT OF DISCOVERY IN DISCOVERY GROUP 1** |

There is no provision allowing for response briefs pertaining to the Parties' Submissions Regarding Issues in Dispute as to Protocols for Conduct of Discovery in Discovery Group 1. Nonetheless, Plaintiffs have submitted a response [Doc. 4608]. If the Court is inclined to consider additional submissions regarding these issues, Defendants set forth their succinct reply below.

Defendants acknowledge that MDL courts have issued orders on both sides of these disputed issues. However, Defendants believe that the procedures and limitations

proposed in its Submission are reasonable and appropriate for <u>this litigation</u> given its maturity, nature, and needs, as well as the deadlines and time constraints involved. The purpose of discovery in Discovery Group 1 is to allow the Parties and the Court to select the final group of 6 cases which will make up Bellwether Group 1, which selection "shall be done in a manner consistent with achieving the goal of proportionate identification of representative cases." *See* Case Management Order No. 11 [Doc. 1662]. Additionally, as the Court has noted, in order to identify the 6 ultimate bellwether cases, "all discovery need not be completed in every case in Discovery Group 1 before the bellwether cases are selected, but enough discovery will be needed to ensure that the parties have a reasonably informed basis for making selections."). *See* Case Management Order No. 18 [Doc. 3685].

## I.     Depositions of Sales Representatives

Defendants believe that the testimony of sales representatives on case-specific facts will not further the goals for Discovery Group 1 and is best suited for the Bellwether Group 1 phase of discovery. The plaintiffs suggest that "it is precisely by learning **the facts specific to each case** [through deposing the sales personnel] that the parties and the Court will be able to determine whether a particular case is appropriate to serve as a bellwether trial." (Pls.' Resp. at 2.) (emphasis added). The plaintiffs have already taken the depositions of many managerial level sales and marketing individuals, who were asked exhaustive (and, in many instances, duplicative) questions regarding the training, goals, strategies, directives, and specific information provided to the national sales force.[1] Testimony from particular sales representatives on their interactions with a particular implanting physician can await discovery during the Bellwether Group 1 phase. Plaintiffs

---

[1] Plaintiffs mistakenly indicate that they have "only deposed the various vice presidents of sales and marketing at BPV over the years. They have not deposed even regional, let alone local sales personnel except for those in the *Austin* case." (Pls.' Resp. at 2). While Defendants do not question that this misstatement was the result of honest mistake, it is nonetheless far from accurate. In this MDL, and over the past year, the plaintiffs have deposed 2 marketing managers (Bret Baird and Kim Romney) and 4 regional sales managers (Bob DeLeon, Jack Sullivan, Dan Orms, and Bob Cortelezzi), as well as the former Vice President of Sales, Joe DeJohn and former Vice President of Marketing, Kevin Shifrin. Moreover, many, many local sales representatives have been deposed over the past decade.

are already permitted to take the implanter's deposition in the Discovery Group 1 phase, allowing them to discover from that witness what interactions the implanter had with the Bard sales representatives at issue.

If the Court should deem discovery of any sales personnel necessary at this stage, given the time constraints of the discovery schedule, Plaintiffs' professed need to depose these individuals (and multiple ones of them for each plaintiff) is met by an order that limits both the deposition time permitted and the scope of permissible inquiry for such depositions to the **facts specific to each case**, i.e., the promotion and marketing of the specific generation of filter and complication at issue, and communications regarding same to the implanting physician at issue.

## II. Order of Examination of Treating Physicians

The plaintiffs and their counsel enjoy the unique advantage of being able to communicate with the plaintiffs' treating physicians *ex parte* regarding the medical care of the plaintiff. Since Defendants do not enjoy the same ability to communicate with these physicians, Bard's ability to learn about their care and treatment of these plaintiffs is limited to their medical records and what can be learned during these depositions. As indicated in Defendants' original submission, Bard believes it would be fair to allow Defendants to be the first questioner on all treating physician depositions, given Defendants' inability to communicate with them at all outside of the deposition process. However, Defendants' proposed compromise to alternate first questioner is consistent with what has been done in other MDLs, including the Cook IVC filter MDL. *See In re: Cook Medical, Inc., IVC Filters Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2570 (S.D. Ind. 2016) ("Plaintiffs' counsel shall be the first examining counsel for the implanting physicians in a defendants' bellwether selection, and defendants' counsel shall be the first examining counsel for the implanting physician in a plaintiffs' bellwether selection."). The plaintiffs argue that alternating first examiner would somehow punish them for waiving *Lexecon*, (Pls.' Resp. at 3), failing to note that

- 3 -

1  judges outside the MDL context would likewise have the authority and discretion under
2  the federal rules to establish the order of interrogation at depositions. The plaintiffs in the
3  Cook IVC filter MDL similarly waived *Lexecon* and the court still alternated the order of
4  examination. *Id.*

5  It appears from their respective submissions that the parties view the purpose of these treating physician depositions very differently. Defendants view these depositions as discovery depositions, particularly since they are the only means available to Defendants to learn about the physicians' care of the plaintiffs, beyond what can be gleaned from the physicians' medical records themselves. Plaintiffs, on the other hand, view these depositions as trial preservation depositions. While Defendants do not dispute that such depositions can and often are one and the same, Defendants believe it is fundamentally unfair for Plaintiffs, after conferring *ex parte* with these physicians, to then conduct their trial direct examination before the Defendants have even had the opportunity to discover what the physicians will say. It occurs to Defendants that the easiest solution, and one that will leave neither party prejudiced, would be for the parties to conduct evidentiary depositions (if needed) of the physicians at issue in the Bellwether Group 1 cases during discovery of Bellwether Group 1. There will already be depositions of additional treating physicians conducted during that phase, and to allow these physicians to be redeposed at that time, with Plaintiffs to conduct a trial direct for those witnesses they intend to call in their case at trial, followed by a cross-examination, would satisfy the concerns of both Defendants and Plaintiffs, and would be consistent with the orders Plaintiffs reference from *In re Lipitor*.

### III.   Plaintiffs' *Ex Parte* Contacts with Treating Physicians

Defendants acknowledge that there are MDL courts on both sides of the *ex parte* issue. However, Plaintiffs have failed to propose a solution to (or even acknowledge) the "cart-before-the-horse" issue that the unlimited *ex parte* communications they insist upon will create. Namely, if the plaintiffs elicit opinions from the treating physician at

- 4 -

1 deposition that go beyond those formed during the physician's medical treatment of the
2 plaintiff without first identifying the physician as an expert and providing a written report
3 of their opinion **before** their deposition, that would be in contravention of Ninth Circuit
4 case law, *see, e.g.*, *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 819-26
5 (9th Cir. 2011), Federal Rule of Civil Procedure 26(a)(2), and this Court's Standing Case
6 Management Order.

7      As discussed in Defendants' Submission, Plaintiffs have no legitimate need to have
8 *ex parte* communications with the treating physicians beyond the scope of Plaintiff's
9 relevant medical treatment, as has been recognized by a number of MDL courts in similar
10 litigation. Plaintiffs' treating physicians are fact witnesses (unless designated as experts)
11 with no personal knowledge of Bard's internal documents or other documents related to
12 Plaintiffs' theories of liability.  The only purpose for discussing or showing these
13 documents to the physicians is to elicit opinion testimony at deposition beyond the
14 medical treatment rendered to the individual plaintiff.  Plaintiffs do not address the issue
15 raised by their proposal, including its interplay with the Court's Standing Order, nor have
16 they provided any assurances that they would refrain from eliciting such extraneous
17 testimony or proposed any "solution" to the conundrum their proposal presents.  Instead,
18 Plaintiffs remain silent on this critical issue.  Defendants believe that, in addition to the
19 other reasons set forth in their submission for limiting *ex parte* communications as the
20 other MDL courts referenced in Defendants' submission have done, the issue created by
21 the eliciting of testimony of treating physicians beyond that which was formed during the
22 physician's course of care of the plaintiff at issue is one which must be addressed at this
23 juncture. Perhaps Plaintiffs intend to submit the required Rule 26(a)(2) expert reports for
24 each of these treating physicians.  However, there is no indication that they intend to do
25 so, nor is there reason to believe any such reports would be received sufficiently in
26 advance of the physicians' deposition to allow Defendants the opportunity to adequately
27 prepare to respond.

28

Limiting Plaintiffs' *ex parte* communications with treating physicians to the plaintiffs' medical treatment at issue in the litigation is an approach supported by other MDL courts and consolidated proceedings, and would avoid this "cart-before-the-horse" issue while still preserving Plaintiffs' ability to communicate with their treating physicians about medical treatment issues.

DATED this 12th day of January, 2017.

        s/Richard B. North, Jr.
        Richard B. North, Jr.
        Georgia Bar No. 545599
        Matthew B. Lerner
        Georgia Bar No. 446986
        NELSON MULLINS RILEY & SCARBOROUGH, LLP
        Atlantic Station
        201 17th Street, NW / Suite 1700
        Atlanta, GA  30363
        PH: (404) 322-6000
        FX: (404) 322-6050
        richard.north@nelsonmullins.com
        matthew.lerner@nelsonmullins.com

        James R. Condo (#005867)
        Amanda Sheridan (#005867)
        SNELL & WILMER L.L.P.
        One Arizona Center
        400 E. Van Buren
        Phoenix, AZ 85004-2204
        PH: (602) 382-6000
        JCondo@swlaw.com
        ASheridan@swlaw.com

        **Attorney for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 12, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notification of such filing to all counsel of record.

                         s/Richard B. North, Jr.
                         Richard B. North, Jr.
                         Georgia Bar No. 545599
                         NELSON MULLINS RILEY & SCARBOROUGH, LLP
                         Atlantic Station
                         201 17th Street, NW / Suite 1700
                         Atlanta, GA  30363
                         PH: (404) 322-6000
                         FX: (404) 322-6050
                         Richard.North@nelsonmullins.com