Robert W. Boatman (009619)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone: (602) 530-8000
rwb@gknet.com

Ramon Rossi Lopez (CA Bar No. 86361)
(admitted *pro hac vice*)
LOPEZ McHUGH LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660
rlopez@lopezmchugh.com

*Attorneys for Plaintiffs*

James R. Condo (#005867)
Amanda C. Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
Telephone:  602.382.6000
Facsimile:  602.382.6070
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH
LLP
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
Telephone: (404) 322-6000
Telephone: (602) 382-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC<br><br>**THE PARTIES' JOINT STATUS REPORT FOR THE FEBRUARY 17, 2017 CASE MANAGEMENT CONFERENCE** |

In accordance with Paragraph E of Case Management Order No. 19 [Doc. 4311], the Parties hereby submit their Joint Status Report for the February 17, 2017 Case Management Conference.

**I.**     **Deposition Discovery**

    A.     Fact Discovery

The following depositions have been completed:

| | |
|---|---|
| December 15, 2015 | 30(b)(6) re FDA Warning Letter |
| January 11, 2016 | Kay Fuller |
| January 20, 2016 | Continued 30(b)(6) re FDA Warning Letter |
| March 18, 2016 | 30(b)(6) re corporate structure |
| April 27, 2016 | 30(b)(6) re ESI systems structure |
| May 3, 2016 | Murray Asch, M.D. |
| May 11, 2016 | Carol Vierling |
| May 17, 2016 | Anne Bynon |
| May 24, 2016 | Len DeCant |
| June 2, 2016 | John DeFord |
| June 9, 2016 | Bret Baird |
| June 16, 2016 | Robert DeLeon |
| June 17, 2016 | Joe DeJohn |
| July 18, 2016 | Abithal Raji-Kubba |
| July 27, 2016 | Bill Little |
| July 27, 2016 | Judy Ludwig |
| July 29, 2016 | John Wheeler |
| August 9, 2016 | Maureen Uebelacker |
| August 16, 2016 | Daniel Orms |
| August 19, 2016 | Mary Edwards |
| August 24, 2016 | Cindi Walcott |
| August 30, 2016 | 30(b)(6) re REACH program |

| | | |
|---|---|---|
| 1 | September 7, 2016 | Steve Williamson |
| 2 | September 7, 2016 | 30(b)(6) re Sales/Marketing |
| 3 | September 7, 2016 | Kevin Shifrin |
| 4 | September 16, 2016 | Jack Sullivan |
| 5 | September 19, 2016 | Brian Doherty |
| 6 | September 23, 2016 | Holly Glass |
| 7 | September 29, 2016 | John Van Vleet |
| 8 | October 11, 2016 | Chris Ganser |
| 9 | October 18, 2016 | Natalie Wong |
| 10 | November 3, 2016 | Jack Sullivan (continued) |
| 11 | November 11, 2016 | Robert Cortelezzi |
| 12 | December 6, 2016 | David Peeler, M.D. |
| 13 | January 4, 2017 | John Kaufman, M.D. |
| 14 | January 18, 2017 | 30(b)(6) Meridian/Denali |
| 15 | January 18, 2017 | Kim Romney |
| 16 | January 19, 2017 | 30(b)(6) re Key Opinion Leaders |
| 17 | January 20, 2017 | Scott Trerotola, M.D. |
| 18 | January 24, 2017 | Scott Randall |
| 19 | January 26, 2017 | 30(b)(6) re Failure Rate Thresholds |
| 20 | January 26, 2017 | Anthony Venbrux, M.D. |
| 21 | January 30, 2017 | Frank Lynch, M.D. |
| 22 | January 31, 2017 | Mark Wilson |
| 23 | February 1, 2017 | William Stavropoulos, M.D. |
| 24 | February 2, 2017 | Mike Randall |
| 25 | February 2, 2017 | Kevin Boyle |
| 26 | The following depositions have been scheduled: | |
| 27 | None at the time of this filing. | |
| 28 | | |

3

B.     <u>Barazza Discovery</u>

The following depositions have been completed:

| | |
|---|---|
| October 19, 2016 | Diane Washington |
| October 28, 2016 | James Holt |
| November 10, 2016 | Gregory Lester |
| November 16, 2016 | Maria Barazza |
| November 30, 2016 | Edward Mims |
| December 1, 2016 | Nancy Mosher |
| December 6, 2016 | Thomas Flournay |
| December 6, 2016 | Delmar Lee Peck |
| December 15, 2016 | Denise Tomlin |
| January 24, 2017 | John Van Vleet |

The following depositions have been scheduled:

| | |
|---|---|
| February 27, 2017 | Linda Walker |

C.     <u>Discovery Group I</u>

The following depositions have been completed:

| | |
|---|---|
| January 25, 2017 | Lisa Hyde |
| January 25, 2017 | Mark Hyde |
| January 26, 2017 | Justin Peterson |
| January 26, 2017 | Lisa Peterson |
| January 26, 2017 | Michael King |
| January 26, 2017 | Jessica King |
| February 3, 2017 | Doris Jones |
| February 3, 2017 | Alfred Jones, Sr. |
| February 4, 2017 | Joseph Mixson |
| February 4, 2017 | Virginia Mixson |
| February 7, 2017 | Deborah Ann Kaiser |
| February 7, 2017 | Brandy Ball |

| | | |
|---|---|---|
| 1 | February 8, 2017 | Debra Mulkey |
| 2 | February 8, 2017 | Joshua Thompson |
| 3 | February 8, 2017 | Debra Ann Tinlin |
| 4 | February 8, 2017 | James Tinlin |

5        The following depositions have been scheduled:

| | | |
|---|---|---|
| 6 | February 13, 2017 | Brent Dewitt |
| 7 | February 13, 2017 | Providenica Dewitt |
| 8 | February 16, 2017 | Randy Nelson |
| 9 | February 16, 2017 | Judy Nelson |
| 10 | February 20, 2017 | Sherr-Una Booker |
| 11 | February 20, 2017 | Shomari Cottle |
| 12 | February 20, 2017 | Carol Kruse |
| 13 | February 20, 2017 | Diane Bierre |

**II.**   **Anticipated Motion for Summary Judgment**

    A.   Defendants' Position

Now that fact discovery has been completed, the defendants anticipate filing a motion for summary judgment applicable to all cases. Specifically, the defendants plan to file a motion for summary judgment demonstrating that plaintiffs' claims are impliedly and expressly preempted. Of course, the defendants are fully aware of the decision in Medtronic, Inc. v. Lohr, 518 U.S. 470 (1996), which generally held that claims involving medical devices cleared under the 510(k) process are not preempted.

The process utilized by the FDA to review Bard's inferior vena cava filters, however, is readily distinguishable from the process at issue in Lohr.[1]

First, the statutory and regulatory framework of 510(k) review for medical devices has evolved significantly since the time the Lohr device was cleared for use. Perhaps

---

[1] As an aside, a number of courts have found tension between Lohr and later Supreme Court preemption decisions, and suggested that "perhaps some of those rules warrant revisiting and reconciliation." Caplinger v. Medtronic, Inc., 784 F.3d 1335, 1340 (10th Cir. 2015), cert. denied, 136 S. Ct. 796 (2016) (Gorsuch, J.).

1    more important, the extensive special controls the FDA imposed on Bard's filters, coupled

2    with the clinical studies required by the agency and the FDA's detailed review of the

3    devices demonstrate that the FDA imposed "requirements" for the devices that did not

4    exist in the <u>Lohr</u> scenario.

5         The plaintiffs' claim that expert discovery is needed before such a motion can be

6    adjudicated is incorrect.  Courts throughout this country routinely decide preemption

7    motions at an early stage of the proceedings, either through Rule 12(b)(6) motions or

8    motions for summary judgment.   That is because the preemptive effect of the regulatory

9    scheme and the FDA's activities requires a legal determination by the Court, and courts

10   generally do not look to experts retained by the parties to conduct that legal analysis.  The

11   plaintiffs also claim that a recent evidentiary ruling by another court, involving another

12   product altogether, somehow precludes the filing of a good faith motion for summary

13   judgment in the first instance.  There is no precedent for giving another court's evidentiary

14   ruling such a preclusive effect.

15        The motion contemplated by the defendants involves a critical issue, and one of

16   first impression concerning the particular product involved here.  If permitted, the

17   defendants anticipate filing this motion by mid-March.

18        B.    <u>Plaintiffs' position</u>

19        The Court previously addressed premature filings of summary judgment motions,

20   i.e., motions for "summary judgment must consider all relevant evidence collected and

21   presented by the parties."  (*See*, Doc. 1481, Apr. 20, 2016.)  Not all evidence has been

22   collected and presented by the parties at this juncture; neither party has yet engaged in

23   exchange of expert disclosures, exchanged reports, or otherwise conducted expert

24   discovery in this MDL.  To allow for summary judgment motions on what Bard purports

25   to be significant changes in the "statutory and regulatory framework of 510(k) review for

26   medical devices" would be premature.  That is because the claims Bard makes as a basis

27   for its request are squarely in the province of expert opinion including "extensive special

28   controls the FDA imposed on Bard's filters, coupled with the clinical studies required by

the agency and the FDA's detailed review of the devices". This is especially true since the parties are prohibited from conducting discovery on the FDA; Plaintiffs can neither cross examine nor otherwise conduct discovery against any employee of the FDA as to its actions, inactions, processes, etc. *See* 21 C.F.R. §20.1 (a-b). Thus, they would only be able to respond to Defendants' arguments regarding FDA processes through expert testimony – which has not yet taken place in this MDL.

Furthermore, the relevance of FDA evidence Bard seeks to use as a basis to preempt claims is tenuous at best. Bard is well aware of the holdings against it last year and again as to other defendants as recent as last month excluding FDA-related evidence as having no relevance to these types of cases. *See*, *Huskey v. Ethicon Inc., et al*., Appeal 15-2118 (Doc. 55), United States Court of Appeals for the Fourth Circuit, January 26, 2017 (Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Joseph R. Goodwin, District Judge (2:12-cv-05201; 2:12-md-02327) (courtesy copy attached hereto as Exhibit A). *See also In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prods. Liab. Litig.,* 810 F.3d 913 (4th Cir. Jan. 14, 2016).

**III.    Plaintiffs' Request to Defer Expert Issues on Meridian and Denali Devices**

    A.    Plaintiffs' position

Plaintiffs seek to continue deadlines for expert disclosures and discovery with regard to the Meridian and Denali devices only. Plaintiffs' basis for seeking this extension are as follows: First, none of the potential bellwether cases in Discovery Group 1 and in the early remand cases involve Meridian or Denali; all involve earlier devices (Recovery through Eclipse). Plaintiffs suggest that a later schedule for the Meridian and Denali expert disclosures and reports makes sense for when those cases will actually be tried and to focus the parties' current efforts and discovery on the cases that will be tried this year and next. Moreover, Plaintiffs have dealt with the late production consisting mostly of later generation devices, and still yet unresolved privilege log/redaction issues pending.

1    Defendants' argument regarding the amount of Meridian and Denali cases is

2    irrelevant to Plaintiffs' request.  Plaintiffs do not ask to forego expert disclosure and

3    discovery on these devices forever; rather, Plaintiffs suggest that it is more practical to

4    focus immediate expert discovery on the cases that are going to be tried in the next 12 to

5    18 months and to come up with an expert disclosure schedule that makes sense for when

6    Meridian and Denali cases are actually likely to be tried.

7    Defendants' other arguments presuppose the contents of expert opinions and

8    reports relating to the later devices.  While Bard's later devices are built on the foundation

9    of its Recovery and G2 devices, that does not necessarily mean that all the issues will be

10   the same.  Indeed, Defendants typically claim quite to the contrary – attempting to

11   distance their later devices from their predicates.  Certainly this Court is capable of

12   determining at a later time if rulings it makes as to expert opinions regarding earlier

13   devices should impact expert testimony regarding later devices.

14   Plaintiffs propose an extension as to the Meridian and Denali devices only.

15   B.    Defendants' Position

16   The defendants object to the plaintiffs' attempt to effectively modify the

17   scheduling order and the structure of this MDL by delaying expert reports regarding the

18   Meridian and Denali filters.  From its inception (more than a year ago), the schedule has

19   contemplated expert disclosures related to all cases, and now that the deadlines for those

20   disclosures are only weeks away, the parties' expert submissions addressing all filter

21   models should be nearing completion.  To exempt the Denali and Meridian filters from

22   that requirement at this eleventh hour would unnecessarily prolong and complicate this

23   MDL.

24   It is true, as the plaintiffs note, that none of the 12 cases in Discovery Group I

25   happen to involve one of those two filters.  However, together, those two filters make up

26   roughly 25% of the case inventory in this MDL (Meridian – 13%; Denali – 11%). In fact,

27   there are more cases involving both of those filters than there are involving the Recovery

28

1   Filter, which presently accounts for only 10% of the cases.  Without question, those two

2   filters are a significant component of this proceeding.

3       To delay generic expert reports regarding those two filters would require the parties

4   (and the Court) to duplicate a great deal of their efforts. Second expert reports

5   (significantly overlapping the initial reports) would have to be submitted.  Second

6   depositions would have to be taken of the experts when the time comes.  Second Daubert

7   motions would have to be filed and considered, where appropriate.  The need to duplicate

8   those multiple phases of the schedule would ultimately delay the remand and resolution of

9   the 25% of the cases involving those filters.

10      In short, the preparation of expert reports concerning those two later generation

11   filters should already be nearing completion.  There is no basis for extending those

12   deadlines at this late juncture.

13   **IV.    Further Deposition of Michael Randall**

14      Plaintiffs respectfully request that the Court order Defendants make available

15   Michael Randall for one half day of further deposition.  Plaintiffs took the deposition of

16   Mr. Randall on February 2, 2017.  After seven hours of testimony, Defendants terminated

17   the deposition based on the presumptive time limits of Rule 30(d)(1) and CMO 14.

18   Plaintiffs requested of Defendants at the time and request now of this Court that they be

19   permitted additional time to depose the witness based on Mr. Randall's failure to respond

20   directly and concisely to the majority of the questions posed to him.  Defendants disagree

21   that additional time is necessary and oppose Plaintiffs' request.

22      A.    Plaintiffs' position

23      Federal Rule of Civil Procedure 30(d)(1) provides that "[t]he court must allow

24   additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the

25   deponent or if the deponent, another person, or any other circumstance impedes or delays

26   the examination."  Here, Plaintiffs deposed Mr. Randall for seven hours in his individual

27   capacity. However, that time was not sufficient to fairly examine him as a result of his

28   repeated non-responsive and overlong answers to what were often very simple questions.

9

1   Mr. Randall is presently a Director in the research and development department at

2   Bard Peripheral Vascular.  Mr. Randall began working on IVC filters at BPV in 2006; in

3   2008, he was the project leader for the "G2 Platinum" filter project; and by 2009, he was

4   project manager for all filters.  In those capacities, he has been intimately involved in the

5   design, testing, and development of Bard's IVC filters for the past nine years as well as

6   with responding to sales and quality assurance issues relating to them.

7   While his decade long involvement with filters alone supports an extended

8   deposition, Plaintiffs seek additional time because Mr. Randall's manner of answering

9   questions unduly prolonged the deposition.  Specifically, whether as a result of simply not

10   listening attentively, not understanding the questions, or for some other reasons, Mr.

11   Randall's answers were unresponsive.

12   Simple yes-or-no questions often took multiple questions to elicit a proper,

13   responsive answer.  Rather than burden the court with what would otherwise be a large

14   portion of the transcript, Plaintiffs have attached as Appendix A to this report examples of

15   Mr. Randall's recurring failure to answer questions from approximately the first third of

16   the deposition transcript.  These examples demonstrate that Mr. Randall repeatedly failed

17   to answer questions directly, requiring follow up questions – either repeating the question

18   that Mr. Randall had not answered or requiring counsel to engage in a series of questions

19   and answers that led back to Mr. Randall eventually answering the initial question.

20   The following question and answer is a succinct example of Mr. Randall's failure

21   to answer simple questions with direct and responsive answers:

22   You do know that some filters move more frequently than other
23   filters. Correct?

24   MR. LERNER: Objection to form.

25   THE WITNESS: I know of -- what I know from the literature. There
    are clinical studies out there that have migration -- that have migration rates
26   in them.  I kind of -- I am hesitant to say I know how they react to one
    another because to truly study and compare filters, they should be ran in a
27   prospective clinical study at the same time to ensure that they're being used
    in the same manner, they have the same population. Then you can make a
28   comparison relative to each other to say, well, this one moves more than
    this one.

10

Based upon the data that's out there, I know this company manufacturer has a clinical trial that they've done, and it's a certain subset of patient population, and the distribution is different than our clinical trial, and they have a filter migration rate. We have a filter migration rate. So there's different ones.

But to truly compare them, they should be run in the same clinical study. They should have the same population, and they should be run under the same guidance. I think that's the only way you can make a true comparison of this filter migrates more than that filter.

In terms of do I know there's different rates out there by the literature and different clinicals that they have, yes, I do know that because every filter manufacturer has a clinical study conducted to commercialize the device.

Transcript of deposition of Michael Randall at 61:11-62:16. The examples of this are numerous and repeated throughout Mr. Randall's deposition and we have identified a number of them in Appendix A from just the first third of the deposition.

In fairness to Mr. Randall, he did ultimately provide responsive answers in most circumstances. However, his failure to answer simply and directly in the first instance resulted in significantly lengthening his deposition – far too often he took long and circuitous detours to get to those answers and it often took multiple questions to get answers to relatively simple questions

At the second break in Mr. Randall's deposition, Plaintiffs' counsel raised these issues with defense counsel, noting that if the witness continued to answer questions in the way he had for the first two hours, the parties would not complete the deposition that day. Plaintiffs' counsel asked defense counsel to speak with the witness to ask him to listen more closely to the question and to answer those questions.  Unfortunately, Mr. Randall's manner of answering questions did not change.  As a result, Plaintiffs were unable to fairly complete the deposition of Mr. Randall.

In the meet and confer on this issue, Defendants did not suggest that Plaintiffs' counsel's questioning or subject matters with Mr. Randall were in any way improper or duplicative; however, they suggested generically that the examination of Mr. Randall in his individual capacity was "overlapping" with his testimony as a Rule 30(b)(6) witness for defendants on the Meridian and Denali filters. Defendants failed to provide any

express examples.  Plaintiffs dispute this contention; the 30(b)(6) deposition addressed general questions regarding the filters that were there subject, and in his role as corporate representative, Mr. Randall gave testimony on behalf of the defendants on those subjects. Not only is his personal testimony necessarily distinct from testimony given in the role as a 30(b)(6) witness, Plaintiffs asked Mr. Randall entirely different questions on discrete issues at his personal deposition than those asked when he testified on behalf of the companies.  The questions and testimony "overlap" only to the extent that both had to do with the Meridian and Denali filters generally.  Even then, only the last 150 minutes of the seven hours of his personal deposition had anything to do with those filters. Simply, Defendants' contention lacks factual basis.

Plaintiffs believe they will need an additional three hours to complete their intended deposition of Mr. Randall, particularly given that his manner of answering questions requires more than what would be the normal amount of time for a witness.  In accordance with Rule 30(d)(1), Plaintiffs respectfully request the Court allow them that additional time.

### B.    Defendants' Position

The plaintiffs cannot justify their request to extend the deposition of Bard employee Mike Randall.  Mr. Randall is a Director of Research and Development at Bard Peripheral Vascular.  In that capacity, he has had supervisory responsibility for filters over the last several years, including the development of the Meridian and Denali filters.

On January 18, 2017, Mr. Randall appeared as Bard's corporate representative to testify in response to a Fed. R. Civ. P. 30(b)(6) notice focused on the Meridian and Denali filters.   That deposition lasted an entire day, running from 9:00 a.m. until 5:20 p.m.  Two weeks later, on February 2nd, Mr. Randall was deposed in his individual capacity.   That deposition also focused heavily on the same filters (as evidenced by the fact that the word "Denali" appears in the transcript 143 times, and "Meridian" appears 72 times).   After more than seven additional hours of testimony, the plaintiffs announced they needed at least 2 more hours with the witness.  Although Bard's attorneys were willing to provide a

few additional minutes, they objected to prolonging the deposition as much as the plaintiffs demanded.

Despite having deposed Mr. Randall for a total of 14 hours, the plaintiffs are now demanding even more.  They justify their request with the claim that Mr. Randall did not respond to their questions, and somehow delayed the deposition.  The transcript, however, does not support their characterization.  If anything, the transcript demonstrates that the plaintiffs' counsel prolonged the deposition with combative and repetitive questioning.  The colloquies at Pages 57-65 and Pages 110-113 (attached collectively as Appendix B) are just two examples.

Bard believes that, at some point, "enough is enough."  Over a year of fact discovery, the plaintiffs have taken dozens of depositions of Bard employees, including six other employees involved with research and development.  They have deposed Mr. Randall twice, once as a corporate representative and once as an individual, for more than 14 hours.  Bard objects to prolonging that deposition further.

## V.   Production of Documents Relating to Employees Who May Have Been Disciplined or Fired for Off Label Promotion

Plaintiffs request the production of documents for six Bard employees who may have been disciplined or fired for off label promotion. Bard has refused to supply this information.

### A.   Plaintiffs' Position

In Plaintiffs Notice of 30(b)(6) (Opinion Leaders and Sales) Plaintiffs identified the following topic:

> 10. Any employees of BARD who were disciplined in writing or fired for promoting or selling the RELEVANT PRODUCTS in any situation that is contrary to the IFUs. This should include, but not be limited to, the employee name, position, year, supervisor and reason for such warning, discipline or firing.

In addition, Plaintiff requested the following documents in Request for Production (RFP) 11:

> 11. Any documents regarding any employees of BARD who were disciplined in writing or fired for promoting or selling the RELEVANT PRODUCTS in any situation that is contrary to the IFUs. This should include, but not be limited to, the

13

employee name, position, year, supervisor and reason for such warning, discipline or firing.

Bard initially refused to provide these documents and cited the following reason: "As to sales reps who were terminated or were disciplined in writing for off-label promotion of IVC filters, I have confirmed that Bard does not maintain a list of filter sales reps who were terminated or disciplined in writing for off label promotion. The only way to obtain that information would be for someone to go through the files of the hundreds of sales reps that have been employed at Bard since 2002. So, given the tremendous burden that would impose on Bard along with the Court's previous order limiting the scope of sales rep discovery in the MDL, we object to your request number 10."

Plaintiffs have had numerous meet and confers with counsel for Bard over RFP 11 and further narrowed their request to the following Bard employees who were fired or "left" Bard in 2008, including Jason Greer (who indisputably was fired for off label promotion):

1. Jason Greer-District Manager of Sales

2. Robert DeLeon-Regional Manager of Sales

3. Janet Hudnall-Marketing Director

4. Bob Cortelezzi-Regional Manager of Sales

5. Joe DeJohn-Vice President of Sales

6. Jack Sullivan-Regional Manager of Sales

Despite this narrowed and targeted request for manager-level or higher employees, defense counsel for Bard has still refused to supply this information.

It is undisputed in deposition testimony that more than 60 percent of Bard's filters are used off label. Jason Greer was specifically fired for off label promotion in 2008. At or near that same time period, many of Bard's marketing and sales managers in charge of IVC filters were either terminated or left Bard. This included: Robert DeLeon, Janet Hudnall, Bob Cortelezzi, Joe DeJohn, and Jack Sullivan.

1    Through discovery thus far, Plaintiffs have uncovered an elaborate off label

2    marketing scheme starting with a plan written by marketing director Janet Hudnall to

3    expand uses of IVC beyond the indications for use.  Numerous documents and testimony

4    support the execution of this plan.

5    In proving negligence and for punitive damages purposes, these documents will

6    further confirm this plan and Bard's knowledge of this scheme.  At the very least,

7    Plaintiffs should be entitled to these requested documents at the managerial level.

8    B.    <u>Defendants' position</u>

9    The plaintiffs originally requested that Bard identify and produce any documents

10   relating to "any" employee at Bard who was "disciplined in writing" or "fired" for off-

11   label promotion or sales of Bard's IVC filters for over a 14-year period.  Given that Bard

12   does not maintain a list of such employees, Bard objected to the request because it would

13   have been incredibly burdensome and would have required a review of personnel files for

14   every employee who was engaged in marketing or sales of IVC filters spanning a period

15   of more than 14 years.  As part of the meet and confer process, the plaintiffs then limited

16   (temporarily) that request to seven employees but also requested that Bard produce the

17   entire "employment files," notwithstanding the fact that by their very nature, employment

18   files contain highly sensitive and private information far beyond disciplinary and

19   termination information. The plaintiffs' request also listed employees who were not

20   terminated (John DeFord - who has now been removed from plaintiffs' list) and

21   employees who left the company well after 2008 (Jack Sullivan).

22   All of the listed employees have been deposed by current or former members of the

23   PSC, some on multiple occasions. There is no testimony or evidence from the millions of

24   pages of ESI and the over 100 corporate depositions that any of these individuals—with

25   the possible exception of Jason Greer, portions of whose employment file has been

26   previously provided—were disciplined or terminated for off-label promotion of Bard IVC

27   filters.  Contrary to the plaintiffs' theory as to why there was a changing of the guard at

28   the sales managerial level, as has been explained in several corporate depositions, various

1  employees left BPV in or around 2008 after Bard hired a new BPV President.  Not

2  surprisingly, the new division president in turn began putting a new management team in

3  place to oversee the dozens of products sold at the division, not because of any particular

4  concern relating to Bard's IVC filters or the promotion of those filters.

5      While the plaintiffs have taken a few, out-of-context documents (primarily from

6  the early 2000's) to try to support its off-label promotion claim, there is simply no

7  evidence of any elaborate scheme by Bard to promote its filters off label.  In fact, Bard

8  has had extensive policies and procedures in place which prohibit off-label marketing or

9  promotion of its products, including IVC filters.[2]

10      Notwithstanding the foregoing, Bard believes, as a compromise, that it would be

11  appropriate to follow a similar approach that the Court took when the plaintiffs' requested

12  the entire employment files for several Bard employees involved with the FDA Warning

13  Letter.  In that order, the Court provided that Bard "need not produce the entire

14  employment files for these individuals [b]ut Defendants shall produce, under the

15  protective order, documents from the files relating to any internal discipline, reprimands,

16  adverse consequences, negative employment reviews, or comparable information, taken

17  against any of these four individuals on the basis of under-reporting or non-reporting

18  addressed in the FDA warning letter." CMO 13 (June 21, 2016).  Similarly, Bard

19  respectfully requests that the Court limit the production of employment files for the listed

20  employees to only those non-privileged portions relating to those employees being

21  disciplined or terminated (if any) for off-label promotion of Bard's IVC filters.

22  **VI.**   **Other Issues Not Yet Ripe for the Court**

23      The parties are currently engaged in attempts to meet and confer regarding several

24  issues with respect to Defendants' production of documents, privilege issues, and

25  _____

26  [2] Of note, the medical community accepts and recognizes the benefits of IVC filters for
   various uses and has set guidelines for their use even when technically being used "off-

27  label." *See., e.g.,* Caplin, Drew, *Quality Improvement Guidelines for the Performance of
   Inferior Vena Cava Filter Placement for the Prevention of  Pulmonary Embolism,* VASC

28  INTERV RADIOL 2011; 22:1499, 1501 (2011).  Even the Bard FDA-approved clinical studies
   and protocols for filters have included off-label uses.

responses to written discovery.  At this time, those issues may still be resolved and are not ripe for determination by the Court.  These include the following:

1.    The stripping and non-production of certain attachments to emails produced by Defendants;

2.    Issues with respect to Defendants' redaction of produced materials;

3.    Defendants' privilege log for the documents produced beginning in September 2016;

4.    Defendants' responses and objections to Plaintiffs' first set of interrogatories; and

5.    Defendants' responses and objections to Plaintiffs' second set of interrogatories.

The defendants note that many of these issues were not raised by the plaintiffs until February 8th.  The defendants are working with the plaintiffs' counsel, and anticipate that the issues should be resolved without the need of the Court's intervention.

**VII.    Future Joint Submissions**

To ameliorate logistical issues that have arisen repeatedly with the preparation of these joint submissions, the defendants ask that future orders require the parties to exchange drafts of the submission containing any issues they want addressed at least four (4) business days before the filing deadline, and that the parties exchange responses to each side's proposed submissions two (2) days before the deadline.

Respectfully submitted this 13th day of February 2017.

GALLAGHER & KENNEDY, P.A.                    SNELL & WILMER L.L.P.

By: s/ Paul L. Stoller                                      By: /s/ Richard B. North
     Robert W. Boatman (009619)                       James R. Condo
     2575 East Camelback Road                          Amanda C. Sheridan
     Phoenix, Arizona 85016-9225                       One Arizona Center
                                                                         400 E. Van Buren, Suite 1900
                                                                         Phoenix, Arizona  85004-2202

Ramon Rossi Lopez
(admitted *pro hac vice*)
CA Bar No. 86361
LOPEZ McHUGH LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660

Attorneys for Plaintiffs

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
Nelson Mullins Riley & Scarborough LLP
201 17th Street, NW / Suite 1700
Atlanta, GA 30363

Attorneys for C. R. Bard, Inc. and Bard
Peripheral Vascular, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2017, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

s/ Deborah Yanazzo