James R. Condo (#005867)
Amanda C. Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation | No. 2:15-MD-02641-DGC<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY THOMAS KINNEY, M.D. AS AN EXPERT FOR PLAINTIFFS**<br><br>(Assigned to the Honorable David G. Campbell) |

Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") submit this short reply brief in further support of its Motion to Disqualify Dr. Kinney.

The plaintiffs do not dispute that Dr. Kinney was an expert for Bard in previous litigation involving product liability claims concerning Bard's IVC filters. (Resp. Br. (Doc. 5803) at 6.) Nor do the plaintiffs dispute that Dr. Kinney had a confidential relationship with Bard as part of his consultancy regarding Bard's IVC filters. (*Id.* at 8-9.) Therefore, the only disputed issue is whether Dr. Kinney received confidential information from Bard's counsel as part of his retention as an expert witness (for the bright-line disqualification test and two-part disqualification test); and/or received or had reasonable access to Bard's confidential information that is sufficiently related to this MDL (for the two-part disqualification test). It defies logic to suggest that a physician can serve as an expert consultant to the same attorneys still representing Bard in identical litigation, and work directly for the company on multiple projects involving the same products at issue in this MDL, and not be extensively exposed to confidential information. Rather, as discussed in Bard's motion, and as now reinforced by the plaintiffs' response brief, Dr. Kinney clearly received both categories of confidential information.

Regarding Dr. Kinney's expert work for Bard on the product liability IVC filter cases, *Mattes* and *Ennis*, Dr. Kinney met with Bard's lead trial counsel privately to discuss the litigation. Counsel for Bard discussed the issues salient to the litigation and to Dr. Kinney's expert reports, and impressions of Dr. Kinney's opinions within the context of Bard's litigation strategy. The plaintiffs claim that Dr. Kinney's "expertise was limited to case-specific medical review of two plaintiffs' medical records, all unrelated to claims or defenses in this MDL"; and "Dr. Kinney provided case-specific medical reviews only." (Resp. Br. at 3, 6.) The expertise that Dr. Kinney provided and information that he received from Bard's lead trial counsel, however, are two different matters. Contacting experts, retaining experts, and working with experts do not take place in a vacuum. Rather, discussions of the nature of the lawsuits, the overarching litigation, and theories of

- 1 -

the parties are part-in-parcel to working with litigation experts, including Dr. Kinney. And the claims and defenses in *Mattes* and *Ennis* are the same as those in the MDL—were Bard's filters defectively designed, were the risks at issue inherent in all IVC filters and known to physicians for many years, were there any damages to the plaintiffs related to the alleged defective design, and were there alternative causes to the alleged damages.

Regarding Dr. Kinney's consulting work for Bard on its IVC Filters, the plaintiffs' response brief and Dr. Kinney's Declaration support Bard's position that he received confidential Bard information that is "sufficiently related" (indeed, is directly relevant) to this MDL:

- Part of Dr. Kinney's consulting with Bard involved Dr. Kinney meeting with John McDermott and Janet Hudnall—two witnesses who were deposed in this litigation—"about IVC filter fractures, including non-specific questions about whether fractured fragments could cause issues and whether loss of filter arms or legs could lead to less effective filtering, resulting in greater mechanical loading on the remaining filter arms/legs, or lead to fractures." (Resp. Br. at 11.) This work is not only "sufficiently related" to this litigation, it is directly relevant to the plaintiffs' design defect, negligence, and failure to warn claims.

- Part of Dr. Kinney's consulting with Bard involved animal studies to "evaluate various performance characteristics of IVC filters, specifically retrieval for IVC filters" (*Id.* at 11)—again, these issues are central to the plaintiffs' design defect and negligence claims.

- The plaintiffs in this litigation are critical of Bard's complaint handling and interactions with physicians, and part of Dr. Kinney's consulting with Bard involved "assist[ing] the Bard sales force with clinical calls received to their filter line." (*Id.* at 12.)

- Part of Dr. Kinney's consulting involved "evaluating various performance characteristics of the RNF, G2, and G2x filters, specifically as to ease of retrieval"

1  (*Id*. at 12), which are directly related to the plaintiffs' design defect, negligence,
2  and failure to warn claims.

3  - Part of Dr. Kinney's consulting involved a 20 week animal study to "evaluate[]
4  various performance characteristics of the 'G3' filter, specifically concerning
5  insertion and retrieval" (*Id*. at 13), which is directly relevant to the plaintiffs'
6  design defect, negligence, and failure to warn claims.

7  Thus, whether the bright-line test or the two-part test applies, Dr. Kinney's prior
8  relationship with Bard and the information that he received as part of this relationship
9  should result in his disqualification for side-switching.

10  Finally, the plaintiffs' argument that disqualification would result in prejudice to
11  them should not dissuade the Court from disqualifying Dr. Kinney.  The plaintiffs argue
12  that the jointly written report of Drs. Kinney, Roberts, and Kalva "was a collaborative
13  effort among the authors, similar to the methodology employed had the authors been
14  contributing to a medical article or presentation to the medical community" (*Id*. at 2), and
15  that "[a]lthough Dr. Kinney co-authored his expert report along with Drs. Anne Christine
16  Roberts and Sanjeeva Kalva, Drs. Robert and Kalva cannot simply opine in Dr. Kinney's
17  stead.  Their report was collaborative, not redundant." (*Id*. at 15.)  The plaintiffs'
18  argument, however, is either without merit, or should result in the report of Drs. Kinney,
19  Roberts, and Kalva being stricken for failure to comport with Rule 26.

20  Rule 26 requires each expert witness ("the witness") to prepare a report containing
21  "a complete statement of all opinions the witness will express and the basis and reasons
22  for them . . . ."  Thus, Rule 26 requires that the jointly written report of Drs. Kinney,
23  Roberts, and Kalva contain opinions that are jointly held by each of them.  As such,
24  disqualification of Dr. Kinney still leaves the plaintiffs with two other interventional
25  radiologist experts who hold the same opinions, and thereby resulting in no prejudice to
26  the plaintiffs.  If, on the other hand, the doctors hold unique opinions that have been
27  blended together into something akin "to a medical article or presentation to the medical
28

- 3 -

community," such a report does not comport with Rule 26 and should be stricken. Either way, Dr. Kinney's opinions should not reach the jury.

    For each of these reasons, and for the reasons discussed in Bard's Motion, the Court should disqualify Dr. Kinney as an expert for the plaintiffs.

RESPECTFULLY SUBMITTED this 16th day of May, 2017.

        s/ Richard B. North, Jr.
        Richard B. North, Jr.
        Georgia Bar No. 545599
        Matthew B. Lerner
        Georgia Bar No. 446986
        NELSON MULLINS RILEY & SCARBOROUGH, LLP
        Atlantic Station
        201 17th Street, NW / Suite 1700
        Atlanta, GA 30363
        PH: (404) 322-6000
        FX: (404) 322-6050
        richard.north@nelsonmullins.com
        matthew.lerner@nelsonmullins.com

        James R. Condo (#005867)
        Amanda Sheridan (#027360)
        SNELL & WILMER L.L.P.
        One Arizona Center
        400 E. Van Buren
        Phoenix, AZ 85004-2204
        PH: (602) 382-6000
        jcondo@swlaw.com
        asheridan@swlaw.com

        **Attorney for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of May 2017, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

                                              s/Richard B. North, Jr.
                                              Richard B. North, Jr.

**Nelson Mullins Riley & Scarborough**
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000