Ramon Rossi Lopez (admitted *pro hac vice*)
(CA Bar No. 86361)
LOPEZ McHUGH LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660
rlopez@lopezmchugh.com

Mark S. O'Connor (011029)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone: (602) 530-8000
mark.oconnor@gknet.com

*Attorneys for Plaintiffs*

James R. Condo (#005867)
Amanda C. Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
Telephone:  602.382.6000
Facsimile:  602.382.6070
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY &
   SCARBOROUGH LLP
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
Telephone: (404) 322-6000
Telephone: (602) 382-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants C. R. Bard, Inc. and
Bard Peripheral Vascular, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC |
| | **THE PARTIES' JOINT STATUS REPORT FOR THE JULY 13, 2017 CASE MANAGEMENT CONFERENCE** |

In accordance with Paragraph F.5 of Case Management Order No. 23 [Doc. 5770], the Parties hereby submit their Joint Status Report for the July 13, 2017 Case Management Conference.

**I.**     **Discovery**

    A.     MDL Common Discovery

The Parties completed MDL common discovery on February 3, 2017. The following depositions have been completed:

| | |
|---|---|
| December 15, 2015 | 30(b)(6) re FDA Warning Letter |
| January 11, 2016 | Kay Fuller |
| January 20, 2016 | Continued 30(b)(6) re FDA Warning Letter |
| March 18, 2016 | 30(b)(6) re corporate structure |
| April 27, 2016 | 30(b)(6) re ESI systems structure |
| May 3, 2016 | Murray Asch, M.D. |
| May 11, 2016 | Carol Vierling |
| May 17, 2016 | Anne Bynon |
| May 24, 2016 | Len DeCant |
| June 2, 2016 | John DeFord |
| June 9, 2016 | Bret Baird |
| June 16, 2016 | Robert DeLeon |
| June 17, 2016 | Joe DeJohn |
| July 18, 2016 | Abithal Raji-Kubba |
| July 27, 2016 | Bill Little |
| July 27, 2016 | Judy Ludwig |
| July 29, 2016 | John Wheeler |
| August 9, 2016 | Maureen Uebelacker |
| August 16, 2016 | Daniel Orms |
| August 19, 2016 | Mary Edwards |
| August 24, 2016 | Cindi Walcott |

| | | |
|---|---|---|
| 1 | August 30, 2016 | 30(b)(6) re REACH program |
| 2 | September 7, 2016 | Steve Williamson |
| 3 | September 7, 2016 | 30(b)(6) re Sales/Marketing |
| 4 | September 7, 2016 | Kevin Shifrin |
| 5 | September 16, 2016 | Jack Sullivan |
| 6 | September 19, 2016 | Brian Doherty |
| 7 | September 23, 2016 | Holly Glass |
| 8 | September 29, 2016 | John Van Vleet |
| 9 | October 11, 2016 | Chris Ganser |
| 10 | October 18, 2016 | Natalie Wong |
| 11 | November 3, 2016 | Jack Sullivan (continued) |
| 12 | November 11, 2016 | Robert Cortelezzi |
| 13 | December 6, 2016 | David Peeler, M.D. |
| 14 | January 4, 2017 | John Kaufman, M.D. |
| 15 | January 18, 2017 | Michael Randall - 30(b)(6) Meridian/Denali |
| 16 | January 18, 2017 | Kim Romney |
| 17 | January 19, 2017 | Robert Carr - 30(b)(6) Key Opinion Leaders |
| 18 | January 20, 2017 | Scott Trerotola, M.D. |
| 19 | January 24, 2017 | Scott Randall |
| 20 | January 25, 2017 | Gary Cohen, M.D. |
| 21 | January 26, 2017 | Chad Modra - 30(b)(6) Failure Rate Thresholds |
| 22 | January 26, 2017 | Anthony Venbrux, M.D. |
| 23 | January 30, 2017 | Frank Lynch, M.D. |
| 24 | January 31, 2017 | Mark Wilson |
| 25 | February 1, 2017 | William Stavropoulos, M.D. |
| 26 | February 2, 2017 | Mike Randall |
| 27 | February 2, 2017 | Kevin Boyle |
| 28 | June 6, 2017 | Rob Carr (Preemption Declaration) |

3

B.      MDL Expert Disclosure and Discovery

Plaintiffs made their initial disclosures of expert witnesses on March 3, 2017 and their initial disclosures relating to the Meridian and Denali devices on April 7, 2017. Those disclosures included the following witnesses:

David W. Bates, M.D., MSc

Rebecca Betensky, Ph.D.

Mark J. Eisenberg, M.D.

David Garcia, M.D.

Steven M. Hertz, M.D.

Sanjeeva Kalva M.D.

David A. Kessler, M.D.

Thomas Kinney, M.D., M.S.M.E.

Robert M. McMeeking, Ph.D., NAE, FREng, FRSE, LFASME

Robert O. Ritchie, Ph.D.

Suzanne Parisian, M.D.

Anne Christine Roberts, M.D.

Michael B. Streiff, M.D.

Robert L. Vogelzang, M.D.

Defendants made their initial disclosures of expert witnesses on April 14, 2017 and their initial disclosures relating to the Meridian and Denali devices on May 12, 2017. Those disclosures included the following witnesses:

Christine L. Brauer, Ph.D.

Paul Briant, Ph.D., P.E.

Audrey A. Fasching, Ph.D., P.E.

David W. Feigal. Jr., M.D., M.P.H.

Clement J. Grassi, M.D.

Mark W. Moritz, M.D.

Christopher S. Morris, M.D.

1        Frederick B. Rogers, M.D., FACS

2        Moni Stein, M.D., FSIR

3        Ronald A. Thisted, Ph.D.

4        Donna Bea Tillman, Ph.D., M.P.A.

5        Plaintiffs made their rebuttal disclosures of expert witnesses on May 12, 2017.

6    Those disclosures included the following witnesses:

7        Rebecca Betensky, Ph.D.

8        Kush Desai, M.D.

9        Mark J. Eisenberg, M.D.

10        Steven M. Hertz, M.D.

11        Robert M. McMeeking, Ph.D.

12        Robert O. Ritchie, Ph.D.

13        Robert L. Vogelzang, M.D.

14        The following expert depositions have been taken:

15        May 9, 2017              David W. Bates, M.D., MSc (class-action)

16        May 16, 2017             Steven M. Hertz, M.D. (class-action)

17        May 17, 2017             Christopher S. Morris, M.D.

18        June 5, 2017             Robert L. Vogelzang, M.D.

19        June 6, 2017             Kush Desai, M.D.

20        June 9, 2017             Robert O. Ritchie, Ph.D.

21        June 15, 2017            Clement J. Grassi, M.D.

22        June 17, 2017            Thomas Kinney, M.D., M.S., M.E.

23        June 21, 2017            David L. Garcia, M.D.

24        June 21, 2017            Suzanne Parisian, M.D.

25        June 21, 2017            Anne Christine Roberts, M.D.

26        June 23, 2017            Rebecca Betensky, Ph.D.

27        June 26, 2017            Audrey Fasching, Ph.D., PE

28        July 6, 2017             Mark J. Eisenberg, M.D., MPH, FACC, FAHA

| | | |
|---|---|---|
| 1 | July 6, 2017 | Robert M. McMeeking, Ph.D., NAE, FREng, |
| 2 | | FRSE, LFASME |
| 3 | The following expert witness depositions are scheduled: | |
| 4 | July 7, 2017 | Anne Christine Roberts, M.D. |
| 5 | July 11, 2017 | Sanjeeva Kalva, M.D. |
| 6 | July 12, 2017 | Michael B. Streiff, M.D. |
| 7 | July 13, 2017 | Paul Briant, Ph.D, PE |
| 8 | July 18, 2017 | Mark W. Moritz, M.D. |
| 9 | July 18, 2017 | Frederick B. Rogers, M.D., MS, FACS |
| 10 | July 20, 2017 | David W. Feigal, Jr., M.D., MPH |
| 11 | July 21, 2017 | Darren R. Hurst, M.D. |
| 12 | July 24, 2017 | Derek D. Muehrcke, M.D. |
| 13 | July 25, 2017 | Christopher S. Morris, M.D. |
| 14 | July 26, 2017 | J. Matthew Sims, M.C., M.S. |
| 15 | July 28, 2017 | Ronald A. Thisted, Ph.D. |
| 16 | July 31, 2017 | David A. Kessler, M.D. |
| 17 | July 31, 2017 | Moni Stein, M.D. |
| 18 | August 2, 2017 | Christine L. Brauer, M.D., Ph.D. |
| 19 | August 4, 2017 | Robert O. Ritchie, Ph.D. (continued) |
| 20 | August 4, 2017 | Donna Bea Tillman, Ph.D.MPA, FRAPS |
| 21 | August 4, 2017 | Lora K. White, RN, BSN, CNLCP, CCM, |
| 22 | | MSCC |

23.    C.     *Barazza* Class Action Discovery

24.       The Parties have completed the depositions of the named plaintiffs. The following

25. depositions were taken:

| | | |
|---|---|---|
| 26 | October 19, 2016 | Diane Washington |
| 27 | October 28, 2016 | James Holt |
| 28 | November 10, 2016 | Gregory Lester |

| | |
|---|---|
| November 16, 2016 | Maria Barazza |
| November 30, 2016 | Edward Mims |
| December 1, 2016 | Nancy Mosher |
| December 6, 2016 | Thomas Flournay |
| December 6, 2016 | Delmar Lee Peck |
| December 15, 2016 | Denise Tomlin |
| January 24, 2017 | John Van Vleet |
| February 27, 2017 | Linda Walker |
| May 11, 2017 | Ana Hernandez |

The Parties have designated and disclosed experts on class certification issues, including Plaintiffs' rebuttal expert reports.  Many of those class certification experts are also the same experts in the general MDL and have been deposed (or are scheduled to be deposed) at the same time for both the MDL and the class action.

    D.    <u>Bellwether Group 1 Depositions</u>

        1.    <u>Fact Discovery</u>

In addition to the numerous fact witness depositions taken by the Parties before the last status conference, the Parties have scheduled or have already taken the following fact witness depositions in the five Bellwether case since that status conference:

| | |
|---|---|
| May 31, 2017 | Angelic Thompson (Mulkey) |
| May 31, 2017 | Lorelie Thompson (Mulkey) |
| May 31, 2017 | Torin Walters, M.D. (Mulkey) |
| June 1, 2017 | Pho Nguyen, M.D. (Mulkey) |
| June 15, 2017 | Brandon Kang, M.D. (Booker) |
| June 20, 2017 | Richard Harvey, M.D. (Booker). |
| June 26, 2017 | Eric Hairston (Booker) |
| June 27, 2017 | Brody Puckett (Kruse, postponed due to illness) |
| July 7, 2017 | Amy Sparks, M.D. (Hyde) |
| July 11, 2017 | Colleen Taylor, M.D. (Jones) |

| | | |
|---|---|---|
| 1 | July 12, 2017 | Aaron Donner (Mulkey) |
| 2 | August 3, 2017 | Chris Smith (Jones) |
| 3 | August 3, 2017 | Tim Hug (Hyde) |

The parties are also working on coordinating a date for the deposition of Bryan Vogel, a BPV employee in field assurance.

Per CMO 25 (Doc. 6227), the deadline for deposing medical witnesses (treating physicians) is August 7, 2017, and the deadline for deposing all other fact witnesses is August 15, 2018.

2.      Case-Specific Expert Disclosures and Discovery

On June 5, 2017, Plaintiffs disclosed case-specific expert reports by the following expert witnesses in all five bellwether cases:

Darren Hurst, M.D.

Derek D. Muehrcke, M.D.

On June 5, 2107, Plaintiffs disclosed the case-specific expert report of David Garcia, M.D. in the Jones bellwether case.

On June 9, 2017, in accordance with the agreement of the Parties, Plaintiffs disclosed case-specific expert reports by Robert M. McMeeking, Ph.D., NAE, FREng, FRSE, LFASME in all five bellwether cases.

On June 12, 2017, in accordance with the agreement of the Parties, Plaintiffs disclosed case-specific expert reports by the following expert witnesses in all five bellwether cases:

Robert O. Ritchie, Ph.D.

J. Matthew Sims, MC, MS & Lora K. White, RN, BSN, CNLCP, CCM, MSCC

On July 3, 2017, Defendants disclosed case-specific expert reports for the following expert witnesses:

Mark W. Moritz, M.D.

Christopher S. Morris, M.D.

8

1        Moni Stein, M.D., FSIR

2        The Parties have agreed that Defendants may have until July 13, 2017 to disclose

3   certain medical experts in the Hyde and Booker and to disclose their engineering experts'

4   case-specific opinions by that same date.

5        Per CMO 25, Plaintiffs are required to file their rebuttal case-specific expert

6   disclosures for Bellwether Group I by July 17, 2017, the depositions of all case-specific

7   experts (other than medical witnesses) must be completed by August 7, 2017, and the

8   completion of depositions of non-medical witnesses must be completed by August 15,

9   2017.  [Doc. 6227]

10  **II.    Plaintiffs' Request to Take Trial Deposition of Dr. Henry in Booker Case.**

11       In their bellwether submission, Plaintiffs noted their request to take a trial

12  deposition of the implanting physician in the Hyde case, Dr. David A. Henry.  At the last

13  Case Management Conference, this Court stated: "Before ruling that the plaintiffs can

14  redepose the doctors, I would want to look at those depositions and understand the

15  arguments."  Defendants do not agree that a trial deposition of Dr. Henry is appropriate.

16       The Parties' respective positions are set forth below:

17       A.    Plaintiffs' Position

18       During the depositions of Dr. Henry, Plaintiff Lisa Hyde's treating physician who

19  implanted her G2X IVC filter, Dr. Henry's counsel repeatedly interposed inappropriate

20  objections and instructed Dr. Henry not to answer questions on grounds not permitted in

21  the Rules of Civil Procedure.

22       The effect of those inappropriate objections and instructions was that Plaintiff was

23  precluded from obtaining trial usable testimony from Dr. Henry.  Plaintiffs have attached

24  as **Exhibit A** to this report multiple examples of such interfering objections and

25  instructions.  In accordance with the Court's statement at the last Case Management

26  Conference, Plaintiffs will separately submit under seal the entire transcript for the Court

27  for the Court to review.

28

Plaintiffs contend that, had Dr. Henry been examined at trial, this Court would not have permitted such restricted testimony resulting from such positions and behavior by counsel for the witness and that Plaintiffs would have had the opportunity to elicit, and the jury would have had the opportunity to hear, without unnecessary interruption, Dr. Henry's testimony regarding the care and treatment of plaintiff and the information that he considered or would have considered important in deciding to recommend the G2X filter for Plaintiff Lisa Hyde.  In particular, Dr. Henry's attorney completely precluded Plaintiffs from examining Dr. Henry regarding information in Bard's internal documents that predated his implantation of the filter in Ms. Hyde – important information for the jury to assess in light of Bard's assertion of the learned-intermediary affirmative defense.

Accordingly, Plaintiffs respectfully request the Court permit them to take a trial deposition of Dr. Henry with either a special master present to control the conduct of counsel and the witness or with the Court present telephonically as trial judge for the deposition.

B.    Defendants' Position

The deposition of Dr. David Henry, who placed Ms. Hyde's G2X Filter, should not be reconvened.  First, although Dr. Henry's counsel instructed him not to answer approximately five to seven questions during the deposition, the questions called for expert testimony (i.e., present opinions that were not formed during the treatment of Ms. Hyde), which is inappropriate under Wisconsin law. *See Alt v. Cline*, 589 N.W.2d 21, 25-26 (Wis. 1999) (discussing the basis in substantive Wisconsin law for the privilege "to refuse to testify if the expert is called by a litigant" unless the witness consents to be an expert).  Counsel for Dr. Henry explained the law, why counsel's questions called for expert opinions, and how the questions could be rephrased. *See, e.g.,* David Henry Dep. Tr., 21:18 to 22:8; 26:7 to 27:16; 28:17-21; 29:15-23; 30:21 to 31:13; 31:23 to 34:8; 44:2-18; 87:25 to 88:4, excerpts attached as **Exhibit B**.

Second, even if the questions did not call for expert opinions, any objections that counsel for Ms. Hyde perceived as inaccurate could have been met by rephrasing the

questions, which counsel did in several instances, so that they were tied to Dr. Henry's treatment of Ms. Hyde.

Third, at the deposition, counsel could have called the Court when he thought that his examination was being so prejudiced that the deposition would need to be reconvened. For each of these reasons, requiring Bard and a third party witness to reconvene a deposition in Wisconsin to answer five to seven questions is not warranted.

**III.    Plaintiffs' Request to Depose Dr. Altonaga**

Plaintiffs have requested to depose Dr. William Altonaga, the Medical Director at Bard during the relevant time period, in the bellwether cases.  Under CMO 23, Discovery Protocols for Bellwether Group 1 [Doc. 5881], the Court ordered that no more than five depositions of case relevant fact (non-expert) witnesses could be taken in each Bellwether Group I case, and that "[t]hese depositions may include Bard present or former employees only if the depositions will likely produce probative evidence that could reasonably have been obtained during general discovery."  Bard has opposed the request.

The Parties submit their respective positions as follows:

A.    Plaintiffs' Position

Dr. Altogana was Bard's medical director throughout the time period relevant to the devices in the bellwether cases.  In that role, he was responsible for reviewing the available information with respect to those devices and ensuring their safety and efficacy. As such, he had particular responsibility to stay apprised of developments and problems with filters including those at issue in the bellwether cases before and after they entered the market.  He was also responsible to make decisions regarding the devices at issue in the bellwether cases (G2, G2X, and Eclipse) and whether they were sold, marketed, and what warnings Bard would give relating to them, including in the IFUs.

Specific to the bellwether cases, Plaintiffs expect that Dr. Altonaga will provide testimony regarding his knowledge of developments and problems associated with filters before and after they entered the market and also his decisions as medical director specific to the particular devices and relevant timings for each Plaintiff.  Further, as medical

1  director, Dr. Altonaga is responsible to prepare reports including Health Hazard

2  Evaluations regarding filter problems and adverse events.  For example, his knowledge of

3  adverse events relating to the G2 and G2X devices as well as internal tracking and

4  trending of those events at the time that Lisa Hyde's G2X filter was implanted in February

5  2011 and as it remained in her body until August 2014 are highly probative of issues in

6  Ms. Hyde's case.  Similarly, his recommendations and actions as medical director with

7  respect to the G2X at those times are particularly relevant to Ms. Hyde's claims.  Dr.

8  Altonaga has similarly relevant knowledge and information for the devices implanted in

9  the other bellwether plaintiffs (the G2 and Eclipse filters) on the pertinent dates in each of

10  those cases.

11        Although Dr. Altonaga was deposed in a state-court IVC filter case prior to the

12  MDL, that deposition did not address the facts and issues specific to these cases.  He was

13  deposed in a case in San Diego County in October 2013.  That case, Giordano, involved a

14  specific and unique set of facts – distinct from the bellwethers and nearly all the cases in

15  this MDL.  In particular, the plaintiff suffered a perforation and exsanguination that led to

16  her death.  That injury is simply one that is not present in any of these bellwether cases,

17  and exists rarely, if at all, across the MDL.

18        Further, Dr. Altonaga was primarily examined about the time period prior to when

19  he became medical director (and, thus, prior to the time period of the devices in the

20  bellwether cases).  And, of the eight exhibits marked at his deposition, seven were

21  corporate documents from the time period prior to when he was medical director.

22        Dr. Altonaga has never been deposed regarding the time period at issue for these

23  bellwether cases, and he has never been deposed on the particular facts of these cases and

24  his knowledge – as the top medical person at the company – at the particular times

25  relevant to these cases.  He was not deposed regarding the adverse events,

26  tracking/trending, and decisions made regarding the bellwether devices.  Nor was he

27  examined regarding any of the injuries in the bellwether cases.

28

1    Plaintiffs note that, other than Dr. Altonaga, they have not requested the deposition

2    of any other "corporate" witness in the bellwethers other than the sales representatives

3    deposed in the first phase of discovery or the immediate supervisors of those sales

4    representatives and one adverse event investigator who investigated at least two of the

5    bellwether cases.  And, Plaintiffs did not seek to depose Dr. Altonaga during common

6    discovery precisely because his testimony is more appropriate in case-specific context

7    because of the direct particular relevance of his knowledge at specific dates

8        B.    Defendants' Position

9        As a part of bellwether discovery, Plaintiffs are seeking to depose Dr. Bill

10   Altonaga, the former medical director of Bard Peripheral Vascular.  However, Dr.

11   Altonaga has no knowledge specific to the bellwether cases.  Further, before the creation

12   of this MDL, Dr. Altonaga was deposed by a member of the Plaintiffs' Steering

13   Committee (with the Plaintiffs' co-lead counsel participating by telephone) for almost 7

14   hours.   That deposition focused on a wide array of general issues regarding Bard's filters,

15   and in no way focused on the facts of the case in which it was noticed.  Thereafter,

16   Plaintiffs did not once ask to re-depose Dr. Altonaga again in this MDL during the year

17   afforded for general fact discovery.

18   Case Management Order No. 24 [Doc. 5883] states that the depositions taken as a

19   part of bellwether discovery "may include Bard present or former employees only if the

20   depositions will likely produce probative evidence that could not reasonably have been

21   obtained during general discovery."  Here, Plaintiffs have made no effort to make the

22   showing required by Case Management Order No. 24.   Nor could they.   Plaintiffs could

23   readily have requested an additional deposition of Dr. Altonaga as a part of the dozens of

24   comparable depositions they took during the year-long period of fact discovery, and

25   covered the same general issues they now mention, but clearly chose not to do so.

26   Plaintiffs should not be permitted now to extend general fact discovery (which concluded

27   in February) under the guise of taking additional corporate depositions during the

28   bellwether discovery phase.

13

1    Bard also notes that it has cooperated with Plaintiffs to arrange depositions during

2    this phase of past and present Bard employees with specific knowledge potentially

3    relevant to the bellwether cases.  Dr. Altonaga, however, presents a different issue, as he

4    has no information specific to these bellwether plaintiffs, and any general information he

5    has could have been readily "obtained during general discovery."

6    **IV.    Discoverability of Communications Between or Among Plaintiffs' Experts**

7        Several of Plaintiffs' expert reports were written by more than one expert.

8    Defendants have requested production of correspondence exchanged among the authors of

9    these jointly written reports that in any way relate to this case or the expert reports they

10   jointly drafted.  They do not seek production of the draft reports themselves.  Plaintiffs have

11   objected to these requests to the extent that such communications are protected from

12   discovery under the Federal Rules of Civil Procedure and include communications with

13   Plaintiffs' counsel that are protected work product.

14       The plaintiffs have produced the following jointly written expert reports:

15       •   David Garcia, M.D. and Michael B. Streiff, M.D.

16       •   Sanjeeva Kalva, M.D., Thomas Kinney, M.D., M.S.M.E., and Anne Christine

17       Roberts, M.D.

18       •   Robert L. Vogelzang, M.D. and Kush R. Desai, M.D.

19       •   J. Matthew Sims, MC, MS & Lora K. White, RN, BSN, CNLCP, CCM,

20       MSCC

21       The Parties provide their respective positions as follows:

22       A.    Defendants' Position

23       At the outset of expert discovery, the Parties agreed that document requests could

24   be served on the expert witnesses with the deposition notices, and that subpoenas would

25   not be necessary.  Defendants' deposition notices to the Plaintiffs' experts requested "all

26   communications and emails between you and any fact or expert witness in the Case[.]"

27   Some of the deposition notices also requested certain witnesses to provide "all

28   communications and emails between you and other physicians at Northwestern or

1    Interventional Cardiologist's LLC that relate in any way to the Case, the Report of Robert

2    L. Vogelzang, M.D. (signed March 2, 2017), or the Medical Monitoring (Morris) Rebuttal

3    Report of Kush R. Desai, M.D. and Robert L. Vogelzang, M.D. (signed April 19,

4    2017)[.]"[1]  *See also* Am. Dep. Notice of David Garcia M.D. (signed May 6, 2017)[2]

5    (requesting "all communications and emails between you and Dr. Michael Streiff that

6    relate in any way to the Case or the expert reports you and Dr. Michael Streiff submitted

7    in this case.").

8         Because the plaintiffs submitted jointly written expert reports, Bard narrowly seeks

9    the communications among the authors of these reports that relate to this case or the

10   drafting or contents of the reports, but not the draft reports themselves.  This limited group

11   of communications is relevant and not subject to work-product protection.[3]

12        Rule 26 limits work-product protection to communications between counsel for a

13   party and that party's testifying expert witness. *See* Fed. R. Civ. P. 26(b)(4)(C).  As the

14   Advisory Committee notes to the 2010 Amendments make clear, "inquiry about

15   communications the expert had with anyone other than the party's counsel about the

16   opinions expressed is unaffected by the rule." Advisory Committee Notes to 2010

17   Amendment, Fed. R. Civ. P. 26.  The Ninth Circuit, as well as other appellate and district

18   courts, likewise have ruled that an expert's communications with non-attorneys are

19   discoverable. *See Republic of Ecuador v. Mackay*, 742 F.3d 860, 870 (9th Cir. 2014)

20

---

21   [1] According to their expert report, Dr. Vogelzang and Dr. Desai wrote their report with
     Scott Resnick, M.D. and Robert Lewandowski, M.D.  All four physicians are colleagues

22   at Northwestern Memorial Hospital.  Consequently, Defendants are seeking
     communications among all four authors of the report and their notes regarding those

23   communications.

24   [2] *See* Exhibit A(2)(a)(vi), (vii), and (viii) to exemplar Deposition Notices of Plaintiffs
     Experts Desai and Garcia attached here as **Exhibit C**.

25   [3] Defendants have met and conferred on this issue with Plaintiffs on multiple occasions,

26   including during an expert deposition, through a followup meet and confer letter, and
     then, after the meet and confer letter was sent, during calls with Plaintiffs' counsel.

27   Because a number of expert depositions are scheduled that will be impacted by this issue,

28   Defendants believe that resolution of this issue is needed so that the remaining expert
     depositions can be completed timely.

("Rule [26] allows for discovery of . . . communications the expert had with anyone other than the party's counsel about the opinions expressed."); *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189-92 (11th Cir. 2013) (finding that a testifying expert's communications with other experts were discoverable); *Republic of Ecuador v. Bjorkman*, 735 F.3d 1179 (10th Cir. 2013) (affirming order compelling discovery of communications between testifying expert and non-attorneys); *Whole Women's Health v. Lakey*, 301 F.R.D. 266, 268-71 (W.D. Tex. 2014) (finding that communications between testifying experts and a non-testifying consulting expert were generally discoverable); *United States v. Veolia Evnt. N. Am. Ops., Inc.*, No. CV 13-MC-03-LPS, 2014 WL 5511398, at *7 (D. Del. Oct. 31, 2014), amended, No. CV 13-MC-03-LPS, 2014 WL 6449973 (D. Del. Nov. 17, 2014) (ordering discovery of communications between testifying experts and non-attorneys).

Moreover, the fact that counsel may have been "copied" on such communications does not impact discoverability of the communications. *See In re Application of Republic of Ecuador v. Douglas*, 153 F. Supp. 3d 484, 491–92 (D. Mass. 2015) (ordering that testifying expert's "communications with non-attorneys—including communications in which attorneys are merely copied, but in which no attorney work product exists—must be provided.").

Because the communications are relevant and not protected by the work-product doctrine, the Court should permit the limited discovery of correspondence exchanged among the authors of jointly written reports (including Dr. Resnick and Dr. Lewandowski) that in any way relate to this case or concerning the drafting or contents of the reports.

B.    Plaintiffs' Position

Plaintiffs contend that this issue is not ripe for the Court's consideration.  Bard raised this issue mere days before the delivery of its draft of the joint report, and there has not been a proper meet and confer between the Parties.  Indeed, Bard first contended that it seeks "the communications among the authors of these [joint] reports that relate to the drafting or contents of the reports" (as distinct from the broader categories of its document

16

1    subpoena list to experts) shortly before the parties exchanged drafts and filed this report.

2    Plaintiffs do not, at present, even know what, if any, documents exist that would be

3    responsive to this request were it proper.

4         Moreover, Bard's request runs directly contrary to Federal Rule of Civil Procedure

5    26(b)(4)(B), which precludes discovery of drafts of an expert's report.  Here, Bard does

6    not address Rule 26(b)(4)(B) and ignores that the communications between joint authors

7    of a report regarding the "drafting or contents of the reports" is essentially asking for

8    drafts of the reports themselves.  *See, e.g.*, *In re Application of Republic of Ecuador*, 280

9    F.R.D. 506, 512-513 (N.D. Ca. 2012) ("Amended Rule 26 provides work product

10   protection for draft reports and disclosures required under Rule 26(b)(3)(A) and (B),

11   regardless of the form in which the draft is recorded"); *United States v. Veolia*

12   *Environment N. Am. Ops., Inc.*, 2014 WL 5511398, at *5 (Oct. 31, 2014) ("documents'

13   contents reveal them to be draft reports, demonstrating counsel's collaborative

14   interactions with expert consultants—notwithstanding the form these documents take").

15        Subject to the above, Plaintiffs have not objected to the production of

16   communications by and between their experts except to the extent that those

17   communications are work-product communications between Plaintiffs' counsel and the

18   experts.  Such communications are undeniably protected under Federal Rule of Civil

19   Procedure 26(b)(4)(C).  And, while "inquiry about communications the expert had with

20   anyone other than the party's counsel about the opinions expressed is unaffected by the

21   rule," Advisory Committee Note to Fed. R. Civ. P. 26, Plaintiffs have not objected to the

22   production of any such communications.  Contrary to Bard' suggestion, Plaintiffs have not

23   objected to communications between experts and others on which counsel were merely

24   "copied."

25        Plaintiffs are not aware that the identified experts have withheld any

26   communications by and between the joint authors of their reports that did not involve

27   information protected under Federal Rule of Civil Procedure 26(b)(4)(B) or (C).  Plaintiffs

28   are in the process of determining whether any such documents exist.

## V.    Defendants' Motion for Summary Judgment on Preemption

Defendants filed a motion for summary judgment based on preemption on March 24, 2017 [Doc. 5397].  In accordance with CMO 23, Defendants made Bard employees Robert Carr and John Van Vleet available for depositions.  Mr. Carr was deposed on June 6, 2017.    Although Mr. Van Vleet was scheduled to be deposed on June 16, Plaintiffs withdrew their request to depose him.

In accordance with CMO 23, the Parties submitted their respective positions regarding the remaining schedule relating to discovery, expert discovery, response to Defendants' Motion for Summary Judgment Regarding Preemption, and the schedule for briefing on Defendants' Motion and Incorporated Memorandum to Seal. [Doc. 5872]. That proposal is pending before the court.

Plaintiffs' request to revise their proposed schedule, as set forth in the Parties' Joint Submission, to include July 21, 2017, for service of their expert report.  Plaintiffs' submit this change to accommodate the schedule of their expert.[4]

Defendants oppose the Plaintiffs' attempt to unilaterally revise the deadline for their submission of expert reports on the preemption issues, because Plaintiffs have made no prior effort to meet and confer with Defendants regarding that issue and have not addressed (much less discussed with Defendants) how the change of that deadline will impact the related deadlines in the proposed schedule.  Plaintiffs' dismissal of the need to meet and confer on that issue overlooks the fact that both parties' proposed schedules built off the same deadline for plaintiffs' disclosure of expert reports.

Finally, Parties recently submitted a motion to revise the briefing schedule relating to the Motion to Seal because of issues arising from an inadvertent production of Bard

---

[4] Bard's "opposition" to Plaintiffs' request to change one date in <u>Plaintiffs'</u> proposed schedule for briefing on the preemption motion lacks merit.  There is not agreed or set schedule yet; and the proposed schedule at issue is Plaintiffs' proposal; not a joint one. Plaintiffs have not proposed to change any other date in their proposed schedule – only to move their expert disclosure one week.

documents from FOIA services. That joint motion is pending before the Court.  [Doc. 6477].

## VI.   Procedures for Medical Monitoring Class Certification Hearing

Per Amended CMO 16 [Doc. No. 4141], the Court will hold a class certification hearing at 2:30 pm on August 11, 2017.  During the upcoming status conference, the Parties would appreciate the opportunity to discuss with the Court its preferences for the hearing, whether the Court wants the parties to present evidence of any expert or fact witnesses, and the amount of time that will be allotted to each side for the hearing.

## VII.   Science Day Proposed Procedure

The Parties have discussed the timing and procedure for the upcoming science day.

The Parties anticipate and propose that each side be allocated two hours for their presentations.  If the Court has availability, the Parties propose conducting the Science Day on August 10, the day before the hearing on the motion for class certification.  The Parties would appreciate having an opportunity to discuss with the Court its preferences and expectations regarding Science Day presentations during the upcoming status conference.

## VIII.  Miscellaneous Motions

### A.   Motion to Disqualify Plaintiffs' Expert Dr. Kinney

Defendants' motion to disqualify one of the plaintiffs' experts, Dr. Thomas Kinney [Doc. 5677], has been filed and is fully briefed.  The Parties will be prepared to address any questions the Court may have, if any, relating to that motion at the upcoming status conference.

### B.   Motion to Disqualify Plaintiffs' Experts Drs. Vogelzang and Desai

Defendants wish to alert the Court that it anticipates filing in the near future a motion to disqualify two more of Plaintiffs' experts, Drs. Vogelzang and Desai.  These doctors are members of the Division of Interventional Radiology at Northwestern Memorial Hospital in Chicago and submitted a joint report on behalf of Plaintiffs which they both signed.  According to their joint report and their deposition testimony, they

19

1    wrote their report in conjunction with their colleagues at Northwestern, Scott Resnick,

2    M.D. and Robert Lewandowski, M.D.

3         In their motion, Defendants will contend that Drs. Vogelzang and Desai should be

4    disqualified because Dr. Resnick actively collaborated in drafting their report. Dr. Resnick

5    is a current consultant for Bard Peripheral Vascular, Inc., and is subject to various

6    confidentiality obligations to Bard.  In addition, Dr. Resnick has recently consulted with

7    Bard's counsel in at least one Bard IVC filter case involving members of the Plaintiffs'

8    Steering Committee. Dr. Resnick is also a signatory to a retention agreement regarding

9    that work.  As a consequence, Defendants contend that Dr. Resnick has a clear conflict of

10   interest that would warrant his disqualification as an expert witness.  Because of his active

11   collaboration with Drs. Vogelzang and Desai in the preparation of those reports,

12   Defendants contends that Dr. Resnick's conflict in turn taints the other experts with the

13   result that they should be excluded.

14        Plaintiffs will respond to Bard's anticipated motion in due course when filed.

15   However, Plaintiffs note that, once again, Bard has failed to provide any substance in

16   support of its allegations.  Bard has provided no proof that it provided any protected

17   information to Dr. Resnick; it has provided no proof that, if Dr. Resnick possessed

18   protected information, he actually shared that information with Drs. Vogelzang and Desai;

19   and it has provided no proof that Drs. Vogelzang and Desai have relied on any protected

20   information in coming to their conclusions.  Quite to the contrary, Bard deposed both

21   expert witnesses and failed to raise any of the foregoing issues with either of them –

22   despite the express disclosure in their reports of the fact that they work with Dr. Resnick

23   and wrote their report "in conjunction with" him.

24        Dr. Resnick is not a testifying expert retained by Plaintiffs; he is a colleague of

25   Drs. Vogelzang and Desai at Northwestern Memorial Hospital in the Division of

26   Radiology Studies.  Moreover, the reports and opinions of Drs. Vogelzang and Desai are

27   based solely on publicly available information, identified documents that were disclosed

28   in this litigation, and their own education, training, and clinical experience.  They have not

1    relied on any protected work-product information of Bard from any source, including Dr.

2    Resnick (assuming he has any such information).

3          Further, as with Dr. Kinney, the timing of Bard's raising this issue is highly

4    prejudicial to Plaintiffs.  Bard has known about the Plaintiffs' experts', Drs. Vogelzang

5    and Desai, relationship to Dr. Resnick (who Bard claims was its consultant) since at least

6    March 3 of this year when Plaintiffs served the first expert report of Dr. Vogelzang.  That

7    report disclosed the relationship with Dr. Resnick.  Nonetheless, Bard first raised its claim

8    that Dr. Resnick was its consultant and its intended motion very recently – even after the

9    depositions of Drs. Vogelzang and Desai.  Were disqualification of two of Plaintiffs'

10   experts warranted and an appropriate remedy (which neither is), the timing – after experts

11   have been disclosed and expert discovery is closed – would be unfairly prejudicial to

12   Plaintiffs.

13   **VIII.   <u>Scheduling Issues Leading to Bellwether Trials</u>**

14         Plaintiffs request to discuss with the Court the timing and procedure leading up to

15   the trial of the bellwether cases.  In particular, Plaintiffs would like to discuss potential

16   dates and timing for the trial setting(s), the pretrial conference(s), the procedures and

17   process for the parties to address objections and admissibility of trial exhibits and the

18   designation of deposition testimony.

19   **IX.    <u>Resolution of Choice-of-Laws or Conflicts-of-Law Issues in Bellwether Cases</u>**

20         The Parties have discussed that several of the bellwether cases may involve choice-

21   of-law/conflicts-of-laws issues that are likely to impact the briefing on any summary

22   judgment motions filed with respect to those cases.  Plaintiffs would like to address with

23   the Court how it would like to handle resolution of the choice-of-law/conflicts-of-laws

24   issues.

25

26

27

28

1

2

Respectfully submitted this 7th day of July 2017.

GALLAGHER & KENNEDY, P.A.

3

SNELL & WILMER L.L.P.

4

By: *s/ Paul L. Stoller*

Mark S. O'Connor (011029)

5

Paul L. Stoller (016773)

2575 East Camelback Road

6

Phoenix, Arizona 85016-9225

7

Ramon Rossi Lopez

(admitted *pro hac vice*)

8

CA Bar No. 86361

LOPEZ McHUGH LLP

9

100 Bayview Circle, Suite 5600

Newport Beach, California 92660

10

*Attorneys for Plaintiffs*

11

By: *s/ Richard B. North*

James R. Condo (005867)

Amanda C. Sheridan (027360)

One Arizona Center

400 E. Van Buren, Suite 1900

Phoenix, Arizona  85004-2202

Richard B. North, Jr. (admitted *pro hac vice*)

Georgia Bar No. 545599

Matthew B. Lerner (admitted *pro hac vice*)

Georgia Bar No. 446986

Nelson Mullins Riley & Scarborough LLP

201 17th Street, NW / Suite 1700

Atlanta, GA  30363

12

*Attorneys for C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.*

13

14

## **CERTIFICATE OF SERVICE**

15

I hereby certify that on July 7, 2017, the foregoing was electronically filed with the

16

Clerk of Court using the CM/ECF system which will automatically send email notification

17

of such filing to all attorneys of record.

18

19

*s/ Deborah Yanazzo*

20

21

22

23

24

25

26

27

28