James R. Condo (#005867)
Amanda C. Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY ROBERT VOGELZANG, M.D. AND KUSH DESAI, M.D. AS TESTIFYING EXPERTS; AND SCOTT RESNICK, M.D. AND ROBERT LEWANDOWSKI, M.D. AS CONSULTING EXPERTS FOR PLAINTIFFS**<br><br>(Assigned to the Honorable David G. Campbell) |

**MOTION**

Defendants C. R. Bard and Bard Peripheral Vascular, Inc. (collectively, "Bard") respectfully move this Court to disqualify two of the plaintiffs' testifying expert witnesses, Robert Vogelzang, M.D. and Kush Desai, M.D.; and two of the plaintiffs' consulting experts, Dr. Scott Resnick, M.D. and Robert Lewandowski, M.D. This motion is supported by Defendants' Memorandum of Points and Authorities, which is filed herewith.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      Introduction**

The four doctors who are subject to Bard's motion are colleagues at Northwestern University's Interventional Radiology department. In late 2015 and early 2016, Dr. Scott Resnick worked with Bard's counsel, Nelson Mullins Riley & Scarborough LLP, as an expert in the IVC filter litigation. Dr. Resnick has also been a consultant to Bard regarding the design inputs of IVC filters (2012, 2013, 2014); and IVC filter product development and adverse event investigation (2008).

Bard recently learned that Dr. Resnick met with the plaintiffs' counsel at least nine times and was intimately involved, along with Robert Lewandowski, as consulting experts in developing and drafting three reports of the plaintiffs' testifying experts, Dr. Robert Vogelzang (reports dated March 2, 2017, and April 7, 2017) and Dr. Kush Desai (report dated April 19, 2017 (co-signed by Dr. Vogelzang). Given the circumstances, allowing Dr. Resnick and his colleagues to act as the plaintiffs' experts would continue to expose Bard's confidential information and Nelson Mullins' mental impressions of the IVC filter litigation to the plaintiffs and their testifying experts, Drs. Vogelzang and Desai, thereby irreparably prejudicing Bard. Moreover, allowing these physicians to remain the plaintiffs' experts would encourage parties to retain a conflicted and undisclosed expert to actively collaborate on disclosed experts' opinions and inappropriately leverage confidential information obtained through a confidential relationship with the moving party. Accordingly, Bard respectfully requests that this Court enter an order disqualifying

the plaintiffs testifying experts, Drs. Vogelzang and Desai, and their consulting experts, Drs. Resnick and Desai.

**II.     Factual and Procedural Background**

    **A.  Bard's Attorneys Retained Dr. Resnick as an Expert in the IVC Filter Litigation.**

On October 6, 2015, Nelson Mullins formally retained Dr. Resnick as an expert for Bard in the IVC Filter litigation. *See* Ltr. from Counsel for Bard to S. Resnick, Oct. 6, 2015, attached as Exhibit A. As part of his retention, Dr. Resnick agreed not to work or consult for any other party in IVC filter product liability litigation. *See id.* Dr. Resnick then met with counsel for Bard, who disclosed mental impressions regarding the strengths and weaknesses of the parties' themes and theories of the litigation, and the strengths and weaknesses of the relevant medical evidence. Dr. Resnick's expert services also included reviewing relevant medical materials about a specific plaintiff and medical literature for discussion with counsel. Dr. Resnick was paid $5000 in 2016 for his work as Bard's expert.

    **B.  Dr. Resnick Consulted with Bard Regarding IVC Filters in 2008, 2012, 2013, and 2014 and He Was Exposed to Confidential Information about the Development, Design, and Use of Bard's IVC Filters.**

In 2008, 2012, 2013, and 2014, Dr. Resnick was also a paid consultant for Bard in matters relating to the central issues in this litigation, including the design, development, and adverse event investigation of Bard's IVC filters. *See* Consulting Agreements between Bard and S. Resnick, July 31, 2008, at Ex. A (tasks include "Provide input in products in development including Filters . . . . Consult concerning product failure investigations and potential health hazards . . . ."); Feb. 7, 2012, at Ex. A ("Assisting in the design inputs on filters"); Aug. 1, 2013, at Ex. A ("Assisting in the design inputs on filters"), collectively attached as Exhibit B. During the course of his 2012, 2013, and 2014 consulting work, Dr. Resnick was also expected to conduct site visits to consult with Bard personnel while carrying out his duties. *See id.* During this time, Dr. Resnick's IVC filter-related work with Bard included helping to design an animal study protocol for the

G2 Platinum filter, meeting with Bard to evaluate plans for IVC filter development, consultation with Bard regarding the Denali Filter, and helping to design the Denali Tubular Concept Animal Study Protocol.

### C. Dr. Resnick Collaborated with Plaintiffs' Counsel and Testifying Experts on Several Expert Reports.

Dr. Resnick is colleagues with Drs. Lewandowski, Vogelzang, and Desai at Northwestern Memorial Hospital's Vascular and Interventional Radiology department. Together, the four doctors formed a consultancy called, SBBK Consultants, LLC, specifically for the Bard IVC filter litigation. K. Desai Dep. Tr. 29:17 to 30:5, June 6, 2017, excerpts attached as Exhibit C. As of June 5, 2017, SBBK Consultants had billed the MDL plaintiffs $132,875, which the four doctors divided evenly. Ltrs. from S. Resnick to Counsel for Pls., Mar. 15, Apr. 4, Apr. 24, 2017, collectively attached as Exhibit D; Ex. C, Desai Dep. Tr., 30:10 to 31:9.

All four doctors were extensively involved in all aspects of the expert work on behalf of the plaintiffs. All four participated in meetings with plaintiffs' counsel, reviewed the reports of other plaintiffs' experts, reviewed the medical literature, reviewed the reports of Bard's experts, reviewed Bard's internal documents that were produced during discovery, met amongst themselves, and drafted three separate Rule 26 reports. *See* Ex. D. Dr. Vogelzang signed the first two reports dated March 2 and April 7, 2017; and Drs. Vogelzang and Desai each signed the report dated April 19, 2017. Dr. Resnick and Dr. Lewandowski did not sign any of the reports.

Dr. Resnick met in person or by phone with plaintiffs' counsel at least nine times for a total of 10.5 hours, and usually alongside Drs. Vogelzang, Desai, and Lewandowski. *See id*. Dr. Resnick also met with separately with Drs. Vogelzang, Desai, and/or Lewandowski for another 4.5 hours. *See id.* Finally, Dr. Resnick spent 25.5 hours drafting the three expert reports that only Dr. Vogelzang and/or Dr. Desai signed. *See id.*

Bard learned of these facts at the depositions of Drs. Vogelzang and Desai in June.[1]

**III.    Argument and Citation to Authority**

    **A.    Legal Standard for Disqualifying Experts**

Federal courts have "the inherent power to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and promote public confidence in the legal system" by disqualifying experts who present a conflict of interest. *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004) (citing *Campbell Indus. V. M/V Gemini*, 619 F. 2d 24, 27 (9th Cir. 1980)). The rules that govern expert disqualification are designed to protect against the potential or threat that the moving party's confidences may be disclosed; thus, an actual showing of a breach is not required. *See Michelson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 1989 WL 31514, at *4 (S.D.N.Y. Mar. 28, 1989).

There are two tests that federal courts apply to determine whether a party's expert should be disqualified: the bright-line test and the two-part test. "Under the bright-line rule, when it is undisputed that an expert, who was previously retained by the adverse party in the same litigation and received confidential information as part of that earlier retention, is now blatantly side-switching, disqualification is clear." *Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991).

Courts will apply the two-part test when the expert's "side-switching" is less blatant. The two-part inquiry to determine whether an expert should be disqualified based on a conflict of interest is: (1) was it objectively reasonable for the moving party to conclude that it had a confidential relationship with the expert and (2) did the moving

---

[1] Although Dr. Vogelzang's March 2 and April 7, 2017, reports state that he worked with Drs. Resnick and Desai on IVC filter issues in a clinical setting, they do not mention that Drs. Desai and Resnick actively collaborated on developing the specific opinions in the reports. The jointly written report of Drs. Vogelzang and Desai, dated April 19, 2017, specifically says that it was written in conjunction with Drs. Resnick and Lewandowski, but Bard did not learn of the full extent of the Dr. Resnick's role until the depositions of Drs. Vogelzang and Desai in June.

party disclose confidential information to the expert?  *See Rhodes v. E.I. Du Pont Newmour and Co.*, 558 F. Supp. 2d 660, 667 (S.D. W. Va. 2008).

To establish whether a confidential relationship exists between the moving party and the expert, courts consider a number of factors. Such factors include: whether the relationship was one of long standing and frequent contacts; whether the expert is to be called as a witness in the underlying case; whether the moving party funded or directed the formation of the opinion; whether the parties entered into a formal confidential agreement; whether the expert was retained to assist in litigation; whether work product was discussed or documents were provided to the expert; whether the expert was paid a fee; and whether the expert derived any specific ideas from work done under the direction of the retaining party.  *Id.*; *see also Hewlett-Packard Co.*, 300 F. Supp. 2d at 1093. Establishing a reasonable expectation of a confidential relationship is not a high bar.  *See AstraZeneca Pharmaceuticals, LP v. Teva Pharm. USA, Inc.*, 2007 WL 4292384, at *2 (D.N.J. Dec. 4, 2007).

To establish whether the moving party disclosed confidential information to the expert, the analysis centers on whether confidential information that is sufficiently related to the instant litigation was transmitted to the expert.  *See Rhodes*, 558 F. Supp. 2d at 667. Information is considered confidential if it is "of either particular significance or . . .readily identified as either attorney work product or within the scope of the attorney client privilege." *Hewlett-Packard Co.*, 300 F. Supp. 2d at 1093.  Such information includes: the moving party's themes, theories of liability and damages; the moving party's potential defenses; the role both sides' experts could play in litigation; and exposure to confidential information directly relating to the central issues of the litigation.  *See id*; *Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588, 591 (D. Minn. 1986).

If the answer to each inquiry of the two-part test is "yes," the next consideration is whether policy objectives favor disqualification.  The policy objectives in favor of disqualification include the court's interest in preventing conflicts of interest, maintaining judicial integrity, and ensuring that confidentiality agreements are honored.  *See Hewlett-*

*Packard Co.*, 300 F. Supp. 2d at 1092-1093, 1095. These interests in favor of disqualification are then weighed against interests discouraging disqualification, including maintaining accessibility to experts with specialized knowledge, the availability of other experts, and whether the nonmoving party will be unduly burdened by disqualification. *See Rhodes*, 558 F. Supp. 2d at 667-668.

Finally, the two-part expert disqualification analysis applies to potentially conflicted entities and individual experts in the same way. *See Kane v. Chobani*, 2013 WL 3991107 at *5 (N.D. Cal. Aug. 2, 2013) (finding that confidential relationship and exchange of confidential information between moving party and experts in consulting firm merited disqualification of entire firm); *Mays v. Reassure Am. Life Ins. Co.*, 293 F. Supp. 2d 954, 957-58 (E.D. Ark. 2003) (applying two-prong expert disqualification analysis to CPA firm); *In re Ambassador Group., Inc.* 879 F. Supp. 237, 241-246 (E.D.N.Y. 1994) (same).

### B. Drs. Resnick, Vogelzang, Desai, and Lewandowski Should Be Disqualified Under The Bright-Line Test.

In the seminal case *Wang Labs., Inc. v. Toshiba Corp.*, the Eastern District of Virginia case outlined the bright-line test to disqualify "side-switching" experts who engage in blatant side-switching. 762 F. Supp. 1246, 1248 (E.D. Va. 1991). Federal courts treat "side-switching [as] the paradigm of inappropriate expert conduct," which threatens judicial integrity and public confidence in the fairness of the legal process. *Id.* The *Wang* court reasoned that "no one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained as an expert by the adverse party in the same litigation and had received confidential information from the adverse party pursuant to the earlier retention." *Id.*

During Dr. Resnick's work as Bard's expert in the IVC filter litigation in 2015 and 2016, counsel for Bard met with Dr. Resnick, shared mental impressions regarding the strengths and weaknesses of the parties' themes and theories of the litigation, and the

strengths and weaknesses of the relevant medical evidence.

Despite agreeing not to consult with any other party in IVC filter product liability litigation and the clear conflict of interest in consulting directly against Bard in IVC filter product liability litigation, Dr. Resnick has worked closely with the plaintiffs as a consulting expert with plaintiffs' counsel, had direct and extensive discussions with Drs. Vogelzang, Desai, and Lewandowski about the issues in this litigation, and was directly and extensively involved in the formation and drafting of three expert reports along with Drs. Vogelzang, Desai, and Lewandowski. Given this extensive involvement, any suggestion that Dr. Resnick did not expose the mental impressions of Bard's counsel to plaintiffs' counsel and his co-experts would be incredulous.

The various principles underlying disqualification as espoused by the *Wang Labs* court—preventing the disclosure of confidential information to adverse parties, maintaining judicial integrity, and reinforcing public confidence in the legal system—all favor disqualification of all four doctors. Because of Dr. Resnick's direct and extensive involvement in all aspects of the formation and drafting of the plaintiffs' expert reports, each of these experts effectively has engaged in blatant "side-switching." Within this context, any suggestion that Drs. Vogelzang, Desai, and Lewandowski are distinct individuals who should be analyzed separately from Dr. Resnick is based on the fiction that the work and opinions they produced for the plaintiffs are not irrevocably intertwined with that of Dr. Resnick. Accordingly, all of the doctors should be disqualified.

**C.      Drs. Resnick, Vogelzang, Desai, and Lewandowski Should Be Disqualified Under the Two-Factor Test.**

Even if the Court determines that the two-factor test applies, Drs. Resnick, Vogelzang, Desai, and Lewandowski should still be disqualified.

**1.      Bard Had an Objectively Reasonable Expectation of a Confidential Relationship with Dr. Resnick.**

First, when Dr. Resnick was retained as an expert for Bard, he agreed that "you may not disclose communications or other information disclosed to you in connection

with your engagement to any person or entity unless such disclosure is authorized by Nelson Mullins Riley & Scarborough LLP, or ordered by a court." Ex. ___, Ltr. to S. Resnick, at 1. Likewise, in his work as a consultant to Bard in 2008, 2012, 2013, and 2014, Dr. Resnick signed consulting agreements with Bard, each of which contained explicit confidentiality provisions that "[d]uring the term of this Agreement and thereafter, Consultant shall not: (i) disclose to any third party any of the Confidential Information . . . or (iii) use the Confidential Information for any purpose other than in connection with Consultant's performance of Services." *See* Ex. B, Consulting Agreements, at BPV-ResnickConsult_000002; 000009; 000018.

Courts have found that confidentiality provisions indicate a confidential relationship between the expert and the moving party. *See See Kane v. Chobani*, 2013 WL 3991107 at *6 (N.D. Cal. Aug. 2, 2013) (confidential relationship found where disclosures were covered by a confidentiality provision in a written agreement); *Oracle Corp. v. DrugLogic, Inc.*, 2012 WL 2244305, at *6 (N.D. Cal. June 15, 2012) (holding that plaintiff had objectively reasonable expectation of confidential relationship with defendant's disclosed expert because he previously signed multiple agreements with confidentiality provisions); *Lake Cherokee Hard Drive Techs. LLC v. Bass Computers, Inc.*, 2012 WL 708354, at *2 (E.D. Tex. Mar. 5, 2012) (finding a reasonable expectation of a confidential relationship because expert at issue signed a confidentiality agreement); *Rhodes*, 558 F. Supp. 2d at 671 (same); *Hewlett-Packard*, 330 F. Supp. 2d at 1098 (asserting that confidentiality agreement memorializing expert's relationship with party was indication of confidential agreement); *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1084 (C.D. Cal. 2001) (finding that confidentiality agreement indicates understanding of confidentiality between parties).

**2. Dr. Resnick Received and Had Access to Bard's Confidential Information Related to Both the Instant Litigation and the Opinions Expressed in Drs. Vogelzang and Desai's Expert Reports.**

Dr. Resnick's confidential relationship with Bard granted him access to various

forms of Bard's confidential information that are directly relevant to this litigation. During Dr. Resnick's work as Bard's expert in the IVC filter litigation in 2015 and 2016, counsel for Bard shared with Dr. Resnick mental impressions regarding the strengths and weaknesses of the parties' themes and theories of the litigation, and the strengths and weaknesses of the relevant medical evidence.  Moreover, during Dr. Resnick's work as a consultant for Bard, he received information pertaining to the testing and design of Bard's IVC filters; information pertaining to product investigations and potential health hazards, information salient to the design and development of animal studies for the G2 Platinum and Denali Filters, and information about Bard's development of future IVC filters.

The confidential information that Dr. Resnick was exposed to is of particular significance to the MDL plaintiffs' design-defect, failure-to-warn, misrepresentation, and negligence claims, all of which are intertwined with his opinions, and by extension his colleagues' opinions in this litigation given the experts' close coordination in the formation and drafting of the Rule 26 reports.. *See Rhodes*, 558 F. Supp. 2d at 679 (holding that because factual and scientific issues in the instant litigation were so "intertwined" with the expert's prior engagement with the moving party that such issues were functionally the same for purpose of disqualification).

Moreover, courts have applied the two-part disqualification test to entities, such as SBBK, the consulting firm of Drs. Resnick, Vogelzang, Desai, and Lewandowski. *See Kane*, 2013 WL 3991107 at *5; *Mays v. Reassure Am. Life Ins. Co.*, 293 F. Supp. 2d 954, 957-58 (E.D. Ark. 2003); *In re Ambassador Group., Inc.* 879 F. Supp. 237, 241-246 (E.D.N.Y. 1994). In *Kane,* for example, Chobani, Inc. entered into a consulting and confidentiality agreement with EAS Consulting Group, a consulting group specializing in FDA regulation. 2013 WL 3991107, at *2. EAS provided services to Chobani related to Chobani's FDA-regulated labeling of its yogurt products. *Id.* After two years, EAS was approached by the plaintiffs in a pending lawsuit involving allegations that Chobani yogurt labels were misleading. *Id.* at **1, 3.  An EAS consultant took the new engagement and continued consulting for Chobani. *Id.* at **3-4.  Applying the two-part

- 9 -

analysis, the *Kane* court ruled that EAS as an entity was disqualified from the litigation because its "expert witness who previously worked for an adversary [had] . . . acquired confidential information during the course of their engagement." *Id.* at *5.

Likewise EAS in *Kane*, SBBK (and by extension Drs. Resnick, Vogelzang, Desai, and Lewandowski) should be disqualified from this litigation. Dr. Resnick, a member of SBBK, entered into agreements with Bard and Bard's attorneys where he was exposed to confidential information central to the MDL plaintiffs' claims. Now, Drs. Vogelzang, Desai, and Lewandowski, through SBBK, are offering opinions against Bard about these very issues. Indeed, SBBK is more suitable for disqualification than EAS because Dr. Resnick actively and extensively contributed to the expert reports of his SBBK members against Bard, and thus SBBK was in a position to use the confidential information that it learned from Bard and its counsel to aid the plaintiffs. Even if Dr. Resnick has not explicitly relayed confidential details about Bard to his SBBK partners, which Bard views as an incredible position, there is a significant danger that the information affected opinions that made it into the expert reports that Dr. Resnick collaborated on with Drs. Vogelzang and Desai. *See, e.g.*, *Michelson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 1989 WL 31514, at **3-4 (S.D.N.Y. Mar. 28, 1989) (noting that there is no way to "protect against a potential future breach" where defendant's expert worked for moving party on issue related to litigation because conversations with moving party "could subliminally affect his testimony and assessment of facts" and "try as he might, [he] cannot possibly create separate spaces within his memory"); *see also, e.g., Auto-Kaps, LLC v. Clorox Co.*, 2016 WL 1122037, at *5 (E.D.N.Y. Mar. 22, 2016) (noting that it is impossible for the plaintiff's expert to segregate confidential information he acquired while previously working with defendant on similar products at issue because "[a]n expert cannot build a Chinese wall in his own mind, despite his best efforts to do so).

### 3. Policy Considerations Weigh in Favor of Disqualifying Drs. Resnick, Vogelzang, Desai, and Lewandowski.

Disqualification of Drs. Resnick, Vogelzang, Desai, and Lewandowski is in accordance with courts' policy objectives, including preventing conflicts of interest, maintaining judicial integrity, and ensuring access to experts. First, Dr. Resnick's extensive involvement in the drafting of Drs. Vogelzang's and Desai's expert reports is a clear conflict of interest given his work for Bard as a litigation expert and his consultancy with Bard concerning IVC filters. Second, the continued participation of Drs. Resnick, Vogelzang, Desai, and Lewandowski threatens judicial integrity because it encourages parties to disclose experts that work closely with a conflicted, undisclosed expert, while allowing the conflicted expert to leverage his or her insider knowledge by actively collaborating on the expert opinion. In fact, courts have relied on the existence of ethics screens and/or limited contact between conflicted experts within the same entity to protect against disclosures of confidential information. *See, e.g. Stencel*, 174 F. Supp. 2d at 1086-1087 (treating imposition of ethics screens that insulate adverse attorneys as relevant to disqualification analysis, and viewing the location of experts at issue, who were employed by the same firm but in offices 500 miles apart as a factor militating against disqualification); *In re Ambassador,* 879 F. Supp. at 245 (noting that measures to wall of information between experts "dispel[s] fears of possible future disclosures off confidential information."); *Viscase Corp. v. W.R. Grace & Co.-Conn.*, 1992 WL 13679, at *2 (N.D. Ill. Jan 24, 1992) (noting that operating procedures within company restricted information to only those working within division); *Commonwealth Ins. Co. v. Stone Container Corp.*, 178 F. Supp. 2d 938, 949 (M.D. Ill. 2001) (finding that disqualification is less likely where company's experts are situated in different offices and different states). Here, there is no such screen or distance protecting Bard's confidential information, and in fact Dr. Resnick worked closely with Drs. Vogezang, Lewandowski on numerous expert reports. Finally, there is no likelihood here that other expert interventional radiologists are inaccessible to the plaintiffs if Drs. Resnick, Vogelzang, Desai, and Lewandowski are

- 11 -

disqualified. There are thousands of board certified interventional radiologists that do not have a conflict of interest with Bard in this IVC litigation. Indeed, the MDL plaintiffs have disclosed three other interventional radiologist experts who offer similar opinions.

**IV. Conclusion**

For each of these reasons, Defendants request that this Court grant Defendants' Motion and disqualify Drs. Resnick, Vogelzang, Desai, and Lewandowski as experts for the plaintiffs.

RESPECTFULLY SUBMITTED this 12th of July, 2017.

s/ *Richard B. North, Jr.*
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

James R. Condo (#005867)
Amanda Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

**Attorney for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of July 2017, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

                                                s/Richard B. North, Jr.
                                                Richard B. North, Jr.

Nelson Mullins Riley & Scarborough L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000