# EXHIBIT A

Page 1

1            IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF ARIZONA

3

4

5    IN RE BARD IVC FILTERS

6    PRODUCTS LIABILITY                     MD-15-02641-PHX-DGC

7    LITIGATION

8

9

10

11

12          VIDEOTAPED DEPOSITION OF THOMAS KINNEY, M.D.

13                      La Jolla, California

14                    Saturday, June 17, 2017

15                           Volume I

16

17

18

19

20

21

22    Reported by:

23    Gail E. Kennamer, CSR 4583, CCRR

24

25

Page 61

1   that to us.  I think that was given in camera to the
2   judge, but I told him to bring anything he had on that
3   case, and that's what he brought, so I just --
4           MR. BROWN:  Okay.
5           MR. LOPEZ:  I don't know how you guys are
6   handling that, to be honest with you, but --
7           MR. BROWN:  All right.
8           MR. LOPEZ:  -- he has it.
9     BY MR. BROWN:
10      Q.   All right.  So Dr. Kinney brought with him a
11  document entitled, "Mattes versus Bard.  Comments by
12  Dr. Thomas B. Kinney, M.D." and it's a three-and-a-half
13  page, single-spaced document.
14          MR. LOPEZ:  I guess the point is you claimed
15  privilege I think to that before.
16          MR. BROWN:  So am I correct that you --
17  plaintiffs have not seen this document?
18          MR. JOHNSON:  We have not reviewed it or seen
19  it.
20    BY MR. BROWN:
21      Q.   Okay.  Doctor --
22          MR. LOPEZ:  We were advised he had it.  We told
23  him because of your objection, we were not allowed to
24  review it or discuss it with him.
25    BY MR. BROWN:

Case 2:15-md-02641-DGC   Document 6683-1   Filed 07/12/17   Page 4 of 9
Thomas Kinney, M.D.
June 17, 2017
In Re: Bard IVC Filters Products Liability

Page 62

1    Q.   Doctor, have you provided this document that I
2    just described, Mattes versus Bard, to any counsel for the
3    plaintiff?
4    A.   I provided that to Laura.
5    Q.   Who is Laura?
6    A.   I don't remember her last name.  Sorry.
7    Q.   Do you remember what law firm she works for?
8    A.   No.  Sorry, Matthew, I don't.
9         MR. LOPEZ:  I can tell you.  He did provide it,
10   but we -- I have talked to Laura about this.  She was
11   instructed not to review it.
12        MR. BROWN:  Okay.
13        MR. LOPEZ:  In other words, we didn't -- we
14   didn't reference it in our opposition to the DQ motion.
15   Its content is still protected.
16        MR. BROWN:  I'm going to go ahead and mark as
17   Exhibit 5 --
18        MR. LOPEZ:  Just so there is no
19   misunderstanding, we do not agree it should be a protected
20   document.  It's just that we are honoring the fact that
21   you guys have done that.
22        MR. BROWN:  Okay.
23        MR. LOPEZ:  We think it's clearly a document
24   that's been put at issue.  Any claim by you all that it
25   somehow is privileged is ludicrous.  Best word I can think

Case 2:15-md-02641-DGC   Document 6683-1   Filed 07/12/17   Page 5 of 9
Thomas Kinney, M.D.                                June 17, 2017
In Re: Bard IVC Filters Products Liability

Page 310

1              MR. JOHNSON:  Form objection.  Question is also
2     vague.
3              THE WITNESS:  It's a suggestion, but there's --
4     I don't see them giving a lot of details about how they
5     are doing that.  It's -- It's a one-sentence structure
6     with no specifics.
7          We kind of talked about that, you know, like we
8     talked about whether there is, I don't know, prospective
9     randomized studies, the grades of those versus case
10    studies.  There is no mention about how that's done here.
11    I guess we're making assumptions.
12             MR. BROWN:  Okay.  Thank you, Doctor.  I don't
13    have any other questions for you.
14             THE WITNESS:  Thank you, I think.
15             MR. JOHNSON:  I will have some questions for
16    him.  I won't be too long.
17
18                       -EXAMINATION-
19     BY MR. JOHNSON:
20        Q.   Doctor, did I understand you to tell us that for
21    a number of years, Bard had you act in different
22    capacities on their behalf?
23        A.   I did many different things for Bard.  I did --
24    I trained physicians on how to put filters in and take
25    them out.

Case 2:15-md-02641-DGC   Document 6683-1   Filed 07/12/17   Page 6 of 9
Thomas Kinney , M.D.
June 17, 2017
In Re: Bard IVC Filters Products Liability

Page 311

1       I did animal studies to evaluate new designs.

2       I participated in the patent lawsuit that had to do

3    with dialysis catheters.

4       And then I did phone conversations with them, in

5    contact with their clinical support staff or sales

6    personally about particular problems.

7       Q.   All right.  And you did that for a number of

8    years?

9       A.   From about 2004 to about 2007 is what I recall.

10      Q.   Who were your primary contact people with Bard?

11   You mentioned Janet Hudnall, for example.

12      A.   Hudnall was one of my major contacts.  But I do

13   remember talking to Richard North, I think.  He was the

14   guy -- he was the person that contacted me about the phone

15   conversations, if I remember right.

16      It could have been Dr. Civarella.  I don't remember.

17   It's quite a while ago now.

18      Q.   And did you mention Rob Carr?

19      A.   You know, Rob Carr was always in the background,

20   but he -- I didn't -- he didn't solicit me directly.  I

21   remember Janet, and I remember either Richard North or

22   Civarella.

23      Q.   Richard North?

24      A.   I think so.  Why?

25      Q.   He's an attorney for Bard, defending them in

Case 2:15-md-02641-DGC   Document 6683-1   Filed 07/12/17   Page 7 of 9
Thomas Kinney , M.D.                                    June 17, 2017
In Re: Bard IVC Filters Products Liability

Page 312

1    this litigation?
2         A.   Correct.
3         Q.   Right.  All right.  And was your contact with
4    Richard North relating to one of those cases identified on
5    your case list?
6         A.   It was not.
7         Q.   Okay.
8         A.   That was -- As I recall, he contacted me about
9    the phone conversations with helping physicians --
10        Q.   All right.
11        A.   -- is what I recall.
12        Q.   Okay.  So the context with respect to that
13   contact would have been he or somebody acting as an
14   intermediary where you would be asked to speak with
15   another physician who is having a problem with a filter?
16        A.   Correct.
17        Q.   And you would troubleshoot that issue with that
18   physician?
19        A.   Correct.
20        Q.   Would you prepare a report regarding your
21   interaction with that other physician?
22        A.   Yes.  Generally, as what I recall Richard North
23   asking me to do is --
24             MR. BROWN:  Hang on one second.
25             Were you a retained consultant for Bard at the time

Page 313

1    that you were contacting Richard North?
2              THE WITNESS:  I believe I might have been
3    because I --
4              MR. JOHNSON:  Let me rephrase the question.
5         Q.   I don't want to know what Richard North told
6    you.  I want to know what your interaction was with a
7    third-party physician who was having a problem with a
8    filter.
9         A.   What was my --
10        Q.   Involvement with that physician.
11        A.   I was asked to give advice about particular
12   cases.  Usually it was about retrievals, difficult
13   retrievals.
14        Q.   All right.  But the communications and the
15   advice that you gave would have been with that physician
16   who was treating a patient?
17        A.   Correct.
18        Q.   And did you consider yourself to be a -- a
19   consultant giving a second opinion to a physician having a
20   problem with a filter?
21        A.   I would say yes.
22        Q.   And would you prepare what amounts to a progress
23   note of your advice that you gave to that physician?
24        A.   I did.  Yeah.
25        Q.   Much the same as a progress note that you would

Page 314

1   make if one of your colleagues at one of your hospitals
2   asked you for your advice relating to a problem with a
3   filter?
4               MR. BROWN:  Object to the form.
5               THE WITNESS:  Correct.
6     BY MR. JOHNSON:
7       Q.   All right.  Were you also a trainer for Bard,
8   that is, did you train other physicians on how to implant
9   the filter and explant filters?
10      A.   Yes.
11      Q.   All right.  With regard to the report that you
12  prepared for this litigation, does it set forth your
13  opinions within a reasonable degree of medical
14  probability?
15      A.   Yes.
16      Q.   All right.  And you told us that you were first
17  retained in this litigation in December of 2016 or January
18  of 2017?
19      A.   I -- I kind of recall January, but I could be
20  wrong about that.
21      Q.   There is a list in your report of Bard
22  documents.  Do you recall that?
23      A.   Yes.
24      Q.   And do you recall reviewing all of those
25  documents?