Ramon Rossi Lopez – rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh, LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
602-530-8000

*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY ROBERT VOGELZANG, M.D. AND KUSH DESAI, M.D. AS TESTIFYING EXPERTS; AND SCOTT RESNICK, M.D. AND ROBERT LEWANDOWSKI, M.D. AS CONSULTING EXPERTS FOR PLAINTIFFS** |

**I.    Introduction**

Plaintiffs oppose Defendants' motion to disqualify Doctors Vogelzang and Desai as testifying experts. Bard has made no allegations that they had a confidential relationship with Bard or received Bard confidential information or Bard mental impressions ("*Def. Mem.*" at 2-4; Doc. 6678), and Doctors Vogelzang and Desai have both submitted sworn declarations verifying those facts. Declaration of Robert Vogelzang M.D. ("Vogelzang Dec.") (Exhibit 1), and Declaration of Kush Desai M.D. ("Desai Dec.") (Exhibit 2).

The disqualification motion is based *not* on any relationships Doctors Vogelzang or Desai had with Bard, but is based on consulting relationships their colleague Dr. Scott Resnick had with Bard.  Plaintiffs' Counsel did not know of Dr. Resnick's past

relationship consulting with Bard when they hired him as a non-testifying consultant, and since learning of such, as a result of Bard's motion (July 12, 2017), Plaintiffs' Counsel represents that he has instructed Doctors Vogelzang and Desai not to consult in any manner with Dr. Resnick on this case going forward, and they have agreed and complied. Thus, Dr. Resnick will not have any future role in this case, and that aspect of the motion is moot.

However, Bard's motion is deficient as to Doctors Vogelzang and Desai. For these two doctors, Bard makes no showing that either doctor: (1) had any confidential relationship with Bard; (2) is working for Plaintiffs under a conflict of interest; or (3) received Bard's confidential disclosures or attorney mental impressions. *Def. Mem.* at 2-4. Rather, the only allegation (made in a conclusory manner) by Bard as to confidential disclosures or mental impressions is that Bard made such disclosures to Dr. *Resnick*, not Dr. Vogelzang of Dr. Desai. *Def. Mem.* at 2-4. Dr. Resnick has provided a sworn declaration that confirms that he shared nothing confidential with Doctors Vogelzang or Desai. Declaration of Scott Resnick M.D. ("Resnick Dec.") at ¶¶ 3-12 (Exhibit 3).[1] Doctors Vogelzang and Desai have likewise provided sworn declarations that they received no confidential Bard information from Dr. Resnick. Exhibit 1 at ¶ 4; Exhibit 2 at ¶ 4. Therefore none of the opinions Doctors Vogelzang and Desai have offered in this case are affected in any way by such information.

Doctors Vogelzang and Desai provided expert reports in the MDL on medical monitoring and general causation (*i.e.*, complication rates, and design safety issues) (dated March 2, 2017, April 7, 2017, and April 19, 2017). Each report disclosed that their colleagues at Northwestern University, Doctors Resnick and Lewandowski, assisted with the work. Although Bard's motion targets both non-testifying consultant Dr. Resnick and testifying witnesses Doctors Vogelzang and Desai, its purpose is plainly to "take out" Doctors Vogelzang and Desai - two national leaders in the academic and clinical medicine

---

[1] Dr. Resnick also confirmed that he received no mental impressions from Bard attorneys. *Id.*

2

on IVC filters and Interventional Radiology as testifying experts in this MDL. Bard's effort fails since its allegations of a confidential relationship, a conflict of interest, and confidential disclosures go only to the non-testifying consultant Dr. Resnick, and not to the testifying experts Doctors Vogelzang and Desai.[2]

In summary, Bard's motion should be denied for three basic reasons:

1. No information provided by Bard to Dr. Resnick, a non-testifying consultant, was ever received by Doctors Vogelzang and Desai; and no such information is part of any opinion or the basis of any opinion given by Doctors Vogelzang and Desai. (No mental impressions of any kind, or confidential disclosures relevant to this case were made by Bard to Dr. Resnick, a non-testifying consultant. Resnick Dec. at ¶¶ 3-12.)

2. The case law does not extend the sanction of disqualification from a non-testifying consultant (Resnick) to a testifying expert (Vogelzang and Desai), when there are no allegations or evidence to show the testifying experts (Vogelzang and Desai) had a confidential relationship with or received confidential disclosures or attorney mental impressions from the moving party.

3. The well accepted policy goal mitigating against disqualification of "ensuring that parties have access to expert witnesses who possess specialized knowledge," fully applies in this case.[3]

**II.  Background**

Doctors Vogelzang and Desai are interventional radiologists at Northwestern University, who have published about Bard's IVC Filters, and they are testifying experts

---

[2] Similarly, Bard makes no allegations that non- testifying consultant Dr. Lewandowski, also at Northwestern, had or has a confidential relationship with Bard or received any confidential information or attorney mental impressions from any source; and the motion as to Dr. Lewandowski should also be denied.

[3] *Mays v. Reassure America Life Insurance*, 293 F. Supp. 2d 954, 957 (E.D. Ark. 2003).

3

in this case. Bard makes no allegations and offers no evidence that they had a confidential relationship, a conflict of interest, or that Bard provided them any confidential information. They work together with Doctors Resnick and Lewandowski in their practice of clinical and academic medicine, and Doctors Resnick and Lewandowski assisted Doctors Vogelzang and Desai in their work in the MDL relating to the experience of their clinical practice group with IVC filters. This was disclosed in each of the expert reports written by Doctors Vogelzang and Desai disclosed on March 2, 2017, April 7 and 19, 2017, as well in as in the depositions of Drs. Vogelzang and Desai on June 5, 2017, and June 6, 2017.

At no time from March 2, 2017 (when expert discovery period was still open) until June 29, 2017 (when Bard sent a letter), did Bard raise any issue about confidential disclosures to plaintiffs' non-testifying consultant Dr. Resnick, or any other expert at Northwestern; and Bard did not ask any substantive questions at the depositions of Doctors Vogelzang and Desai to establish any disclosure of any information whatsoever from Bard was provided by Dr. Resnick to Doctors Vogelzang and Desai.

Dr. Vogelzang has sworn under oath that his report and opinions are based on his own clinical experience and review of the published literature; and that he did not receive any Bard confidential information or attorney mental impressions from Dr. Resnick. *See* Vogelzang Dec. ¶ 4. Dr. Desai has also sworn under oath that his report and opinions are based on his own clinical experience and review of the literature, and that he never obtained from Dr. Resnick any Bard confidential information or mental impressions. *See* Desai Dec. ¶ 4. Thus, Bard sets forth no allegations or evidence that any confidential information relevant to this case was ever given by Dr. Resnick to Doctors Vogelzang and Desai. Yet that is the only possible basis of the motion to disqualify Doctors Vogelzang and Desai.

Dr. Resnick, the interventional radiologist to whom Bard claims in its motion it provided relevant confidential information, is a non-testifying consultant. Dr. Resnick was a consultant to Bard on issues not related to IVC filter litigation from 2008 to 2014,

4

pursuant to contracts signed in 2008, 2012, and 2013.  As his Declaration sets forth, that work did not relate to the litigation or attorney mental impressions of Bard; rather, it related to product line review, and one animal study.  *See* Resnick Dec.  ¶¶ 9, 10.  This work is not ongoing. *Id.*  ¶ 11.  Dr. Resnick did not discuss any confidential aspect of this work with Doctors Vogelzang and Desai, and nothing about this work appears in any opinion or basis of any opinion expressed by Doctors Vogelzang or Desai.  *Id*. ¶ 12.

Dr. Resnick was consulted individually by Bard in 2015 on a state-court specific-causation issue in the *Austin* IVC case.  (*Def. Mem*. Exhibit A.)  He was asked to review medical records and he discussed the case with a Bard attorney (the same attorney who took the depositions of Doctors Vogelzang and Desai in the Bard MDL and did not ask any questions relating to Dr. Resnick's consultation with Bard).  Dr. Resnick describes in his Declaration what he told the Bard attorney during the consult and what the Bard attorney told him.  In that meeting, Dr. Resnick told Bard's lawyer what his concerns were with its filters, and that those concerns were based on his prior clinical and academic experience, not on anything he learned in connection with this litigation.  Resnick Dec.  ¶¶ 6-7.  Dr. Resnick also states in his Declaration that he did not receive any attorney mental impressions or other attorney work product information from Bard or its lawyers at this meeting or at any other time.  *See* Resnick Dec. ¶¶ 5-7.  Bard has not consulted with Dr. Resnick since learning from Dr. Resnick at that 2015 meeting that he was critical of the Bard filters.  *Id*. ¶ 7.  Dr. Resnick did not discuss this consultation or any information he received from Bard with Doctors Vogelzang and Desai, and nothing about this work appears in any opinion or basis of any opinion expressed by Doctors Vogelzang or Desai.  Resnick Dec. ¶¶ 3-4; Vogelzang Dec. ¶ 4; Desai Dec. ¶ 4.  Furthermore, since learning of Dr. Resnick's consulting history with Bard, Plaintiffs' counsel has instructed Drs. Vogelzang and Desai not to consult in any manner with Dr. Resnick on this case going forward, and they have agreed and complied.

5

### III. Applicable Legal Standards

#### A. Disqualification of an Expert Is a Drastic Measure and Can Only Be Considered Where Confidential Disclosures of Significance or Attorney Work Product Are Made to an Expert

"Disqualification is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Chamberlain Grp., Inv. V. Interlogix, Inc.,* No. 01 C 6157, 2002 WL 653893, at *2 (N.D. Ill. Apr. 19, 2002) (quotation marks omitted). "[T]he party seeking disqualification bears a high standard of proof to show that disqualification is warranted." *Rhodes v. E.I. Du Pont De Nemours & Co.*, 558 F. Supp. 2d 660, 664 (S.D. W. Va. 2008) (quotation marks omitted). "[I]f, despite a relationship conducive to [confidential] disclosures, no significant disclosures were made, disqualification is inappropriate." *English Feedlot, Inc. v. Norden Laboratories, Inc.,* 833 F. Supp. 1498, 1502 (D. Colo. 1993) (citing *Paul v. Rawlings Sporting Goods Co.,* 123 F.R.D. 271, 278 (S.D. Ohio 1988)).

Federal courts have developed two tests for evaluating whether an expert should be disqualified for alleged side-switching: the bright-line test and two-part test. *See Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246 (E.D. Va. 1991); *Rhodes*, 558 F. Supp. 2d at 665-67. The first test, the bright-line test, declared that "no one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained as an expert by the adverse party in the same litigation *and had received confidential information from the adverse party pursuant to the earlier retention*." 762 F. Supp. at 1248 (emphasis added).

The second test, known as the two-part test, has two prongs: "First, was it objectively reasonable for the first party who claims to have retained the consultant ... to conclude that a confidential relationship existed? Second, was any confidential or privileged information disclosed by the first party to the consultant?" *Wang*, 762 F. Supp. at 1248; *see also Rhodes*, 558 F. Supp. 2d at 667; *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092–93 (N.D. Cal. 2004). The first prong of the two-part test considers whether there was an objectively reasonable expectation of a confidential

1 relationship between the expert who has allegedly switched sides and the party that
2 initially retained that expert. *Wang*, 762 F. Supp. at 1248. The second prong of the two-
3 part test considers whether confidential information was provided by the initially-retaining
4 party to the expert who has allegedly switched sides. *Wang*, 762 F. Supp. at 1248.

> In the specific context of expert disqualification, *confidential information essentially is information of either significance or that which can be readily identified as either attorney work product or within the scope of the attorney-client privilege.* Confidential information in this context includes, among other things: discussions of the retaining party's strategies in the litigation, the kinds of experts the party expected to retain, the party's views of the strengths and weaknesses of each side, the role of each of the party's witnesses to be hired, and anticipated defenses.

*Rhodes*, 558 F. Supp. 2d at 667 (internal citations, quotation marks, alterations omitted and emphasis added). Crucially, even where confidential information is exchanged, that information "must be sufficiently related to the instant litigation to merit disqualification" of the expert to whom it is communicated. *Id.*

Both tests require that the moving party show that relevant confidential information, sufficiently related to the instant litigation, was actually given to the expert, whom is being challenged. *Id.* Vague and ambiguous allegations as to the disclosure and receipt of relevant confidential information are not sufficient to meet this test. *In re Ambassador Group, Inc. Litig.*, 879 F. Supp. 237, 242-43 (E.D.N.Y. 1994) ("Savage's statements were vague and ambiguous … Accordingly the court credits Lambert's testimony that she was not privy to any confidential information…."); *Rhodes*, 558 F. Supp. at 667 (citing *U.S. ex rel. Cherry Hill Convalescent Center v Health Care Rehab Sys. Inc.*, 994 F. Supp. 244, 249 (D.N.J. 1997) ("The confidential information must also be sufficiently related to the instant litigation to merit disqualification"). Only where both prongs are answered in the affirmative *may* disqualification be considered. *Rhodes*, 558 F. Supp. 2d at 667; *Hewlett-Packard*, 330 F. Supp. 2d at 1093; *Wang*, 762 F. Supp. at 1248.

Further, some courts have applied an even more stringent standard when a party seeks to disqualify an expert who was "neither a former expert or consultant nor a former

1  employee of the party seeking disqualification," such as Doctors Vogelzang and Desai.
2  *See Sarl v. Sprint Nextel Corp.*, No. 09–2269–CM/DJW, 2013 WL 501783, at *7 (D. Kan.
3  Feb. 8, 2013); *Formosa Plastics Corp., USA v. Kajima Intern., Inc.*, 216 S.W.3d 436, 450,
4  452 (Tex. App. 2006). In these instances, exclusion is limited to when a disclosure
5  concerns "legal strategies or other litigation-related issues that would not otherwise be
6  subject to discovery." *Sarl*, 2013 WL 501783, at *7. In doing this, the moving party must
7  "clearly identif[y] any prejudice" resulting from "specific and unambiguous disclosures."
8  *Formosa*, 216 S.W.3d at 450, 452.

9  Courts "should also 'balance the competing policy objectives' in determining
10 expert disqualification." *Rhodes*, 558 F. Supp. 2d at 667–68 (quoting *Cordy v. Sherwin-*
11 *Williams Co.*, 156 F.R.D. 575, 580 (D.N.J. 1994)). These objectives have been
12 summarized as follows:

> The policy objectives …favoring disqualification include preventing conflicts of interest and maintaining the integrity of the judicial process. The main policy objectives militating against disqualification are ensuring that parties have access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling. Courts have also expressed concern that if experts are too easily subjected to disqualification, unscrupulous attorneys and clients may attempt to create an inexpensive relationship with potentially harmful experts solely to keep them from the opposing party.

19 *Mays v. Reassure Am. Life Ins. Co.*, 293 F. Supp. 2d 954, 957 (E.D. Ark. 2003) (citations
20 omitted). Courts "also should consider issues of fundamental fairness and whether any
21 prejudice might occur if an expert is or is not disqualified." *Hewlett-Packard*, 330 F.
22 Supp. 2d at 1094 (internal citation omitted).

23 Lastly, in instances where there is concern regarding expert reliance on confidential
24 information, a sworn affidavit is sufficient to alleviate any concerns and deny a motion for
25 disqualification. *See Williams v. Old Faithful Tours, Inc.*, No. 11–CV–287–F, 2012 WL
26 9490920, at *4 (D. Wyo. 2012) ("Additionally, if any confidential information was
27 disclosed it would not prejudice... [the moving party] ... since [the expert] ... affirms,
28

8

under oath, that he neither received nor used any confidential or other information provided by... [the moving party] ... in developing his report").

Under each of these tests, Bard's motion as to the disqualification of testifying experts Doctors Vogelzang and Desai fails.

**IV. Argument**

    **A. Bard's Motion to Disqualify Doctors Vogelzang and Desai, Two Testifying Experts for Which Bard Does Not Allege a Confidential Relationship, a Conflict of Interest, or That They Received Confidential Material Should be Denied.**

The part of the motion that seeks to disqualify Doctors Vogelzang and Desai is a gross overreach on the facts and the law. On the facts, there is simply no allegation or evidence that either testifying expert, Vogelzang or Desai, based any opinion in this case on Bard confidential information, nor, more importantly, that they ever received any such information from Dr. Resnick or any other source. *Def. Mem.* at 2-6. In the face of a total absence of such allegations or evidence, and so that the record is perfectly clear, Doctors Vogelzang and Dr. Desai have sworn under oath that their opinions in this case are based only on their clinical and academic experience, and that they did not at any time receive from Dr. Resnick any Bard confidential information or mental impressions information. *See* Vogelzang Dec. ¶¶ 3-4, and Desai Dec. ¶¶ 3-4. Dr. Resnick confirms under oath that he did not provide any information from his consulting with Bard to Doctors Vogelzang or Desai. Resnick Dec. ¶ 3. Thus, on the facts, no Bard confidential information was received our used in any way by Doctors Vogelzang and Desai. Thus, the motion must be denied as to Doctors Vogelzang and Desai, the two testifying experts.

On the law, application of the disqualification case law tests to the testifying experts Doctors Vogelzang or Desai is even more of a stretch. Bard does not cite a single case of extending the disqualification doctrine – under any test – to testifying experts who have specialized knowledge, but who have no confidential relationship, no conflict of interest and for whom there is no evidence that they received confidential information from the moving party. The case law does not support Bard's attempt to extend the

9

doctrine from the Dr. Resnick consulting agreement with Bard to Doctors Vogelzang and Desai, who have no such agreement, and received no confidential information. *See Sarl v. Sprint Nextel Corp.*, No. 09–2269–CM/DJW, 2013 WL 501783, at *7 (D. Kan. Feb. 8, 2013) (reasoning that exclusion should be limited to when the disclosure concerned "legal strategies or other litigation-related issues that would not otherwise be subject to discovery"); *Formosa Plastics Corp., USA v. Kajima Intern., Inc.*, 216 S.W.3d 436, 450, 452 (Tex. App. 2006) (denying a motion to disqualify an expert who worked in the same consultant firm for the moving party's prior expert because the moving party did not "clearly identif[y] any prejudice" from "specific and unambiguous disclosures"). Nonetheless, Bard cites three cases arguing that the disqualification doctrine applies to "conflicted entities and individual experts in the same way." *Def. Mem.* at 6. None of the cases support Bard's motion as to Doctors Vogelzang and Desai.

None of these cases even plausibly support Bard's claim that a testifying expert who did not have access to the moving party's confidential information could somehow be disqualified because a non-testifying expert consulted with the moving party.

For example, *Kane v. Chobani*, 12–CV–02425–LHK, 2013 WL 3991107 (N.D. Cal. Aug. 2, 2013), did not involve a relationship between a non-testifying consultant and a testifying expert. *See Id.* at *2. Rather it concerned a litigation expert (Elizabeth Campbell from EAS) who first consulted with the defense in a case and specifically discussed with the defense: "the defense's anticipated motion to dismiss," "specific allegations in the case," "details about the defense litigation strategy," and "specifically about Plaintiff's counsel," *id.* at *2, *6; and then the **same litigation expert** switched over to be a testifying expert for the plaintiff. *Id.* at *2,*6. The *Kane* court unequivocally found that this amounted to disclosure of confidential information relevant to the current litigation by the defendant to the litigation expert [Campbell], who later switched sides. *Id.* at *6. In this case, Bard contends that it retained Dr. Resnick not Doctors Vogelzang, Desai, or SBBK Consultants Inc. (Dr. Desai was a medical resident from 2008-2012 and joined SBBK in 2017.) Moreover, none of the *Kane*-type attorneys' mental impressions

10

were ever provided by Bard to Dr. Resnick, Resnick Dec. at ¶¶ 3-12, and more importantly, were ever received by Doctors Vogelzang and Desai. Thus, *Kane* is a straightforward application of the rule that a litigation expert from one side can't receive specific attorney mental impressions information from one party's counsel about the party's litigation strategy and then switch sides to become a testifying expert for the other party to the litigation. The case offers no support to the contorted disqualification theory Bard advances here specifically as to Dr. Vogelzang and Dr. Desai for whom Bard provides no allegations or evidence that either had a confidential relationship, a conflict of interest, or access to Bard mental impressions through Dr. Resnick or anyone else.

*Mays v. Reassure America Life Insurance*, 293 F. Supp. 2d 954, the second case Bard relies upon, is silent on Bard's "theory" about how a non-testifying consultant can contaminate two other testifying experts for whom there are no allegations or evidence of a confidential relationship, conflict of interest, or access to Bard mental impressions. Instead the case is a routine denial of a disqualification motion, applying the two-part test and underlying equitable policies and finding no confidential relationship exited and no confidential information was disclosed. *Mays*, 293 F. Supp. at 957-58.

The third and final case Bard cites, *In re Ambassador Group*, also does nothing to advance its theory here as it relates to Doctors Vogelzang and Desai; it too is a routine denial of a disqualification motion under the two-part test, in which the court found the allegations of confidential information were too "vague and ambiguous." 879 F. Supp. at 242, 243. *In re Ambassador Group* does not address the question of institutional disqualification where the challenged experts were not alleged to have a confidential relationship with the moving party; nor does it address the notion that a consulting relationship had by one doctor or any confidential information that the doctor might have

11

could somehow be imputed to testifying experts like Doctors Vogelzang and Desai because they share a clinical practice and work together.[4]

But even if Bard could develop a legally tenable disqualification theory as to Doctors Vogelzang and Desai, there is no evidence or allegations in this record that the two doctors ever received (let alone used) Bard's confidential disclosures. The evidence is the opposite. The Declarations state that the opinions of Doctors Vogelzang and Desai are based on their own clinical and academic experience, and that no Bard confidential disclosures or attorney mental impressions were ever provided to Doctors Vogelzang and Desai. *See* Vogelzang Dec. ¶¶ 3-4; Desai Dec. ¶¶ 3-4; Resnick Dec. ¶¶ 3-4, 12. Bard, on the other hand, offers nothing but vague supposition – calling it "incredulous" to suggest that Doctors Vogelzang and Desai were not exposed to protected information. (Def. Mem. at 7.) But, given the opportunity to take discovery and offer actual evidence on this issue at full-blown, day-long depositions of both Doctors Vogelzang and Desai, Bard failed to take any testimony on the issues. And if this Court were to review the reports by Doctors Vogelzang and Desai, it will be clear, as stated in the Declarations that the reports simply do not reveal, reflect, or utilize any Bard confidential information or mental impressions of Bard's lawyers.

Thus, Bard's argument as to Doctors Vogelzang and Desai relies on nothing but vague, ambiguous, and conclusory allegations, not facts. This is woefully insufficient to disqualify experts. *See In re Ambassador*, 879 F. Supp. at 242-43; *Rhodes*, 558 F. Supp. at 667; *Mays*, 293 F. Supp. 2d at 957.

**B.     It Would Be Fundamentally Unfair To Disqualify Doctors Vogelzang And Desai.**

Furthermore, the case law calls for the court to consider the fundamental fairness of the severe sanction of disqualification. As applied to Doctors Vogelzang and Desai, it is

---

[4] If anything, *In re Ambassador Group*, demonstrates that Bard has fallen well short of demonstrating any legal basis for disqualification of Doctors Vogelzang or Desai given *Ambassador*'s holding that the conflict standards for expert witnesses are far less stringent than the attorney-client conflict standards for attorneys. 879 F. Supp. at 242.

12

clear Bard wants to "take out of the MDL" two nationally prominent and respected experts, uniquely qualified to address the issues in this case by the fact that they run a leading center in the United States at Northwestern University dealing with complex IVC filter retrievals.

First, Bard does not allege a consulting or other relationship with Doctors Vogelzang and Desai. Disqualifying them based on the past affiliation of one of their medical partners – particularly where Doctors Vogelzang and Desai do not possess any confidential information of Bard – would be a particularly unfair result.

Second, the loss of experts at this stage – after completion of expert disclosures and discovery and immediately before class certification on medical monitoring and motion practice leading up to the bellwether cases – is particularly prejudicial to Plaintiffs. Bard learned of Dr. Resnick's role in this case five months ago,[5] but waited until the close of discovery, after the expert reports were done and depositions given (in which Bard elected not to develop any record on this issue) to make this motion. In *Kane*, the court granted a disqualification "in the initial stages [when] discovery had not yet commenced," noting "Plaintiffs' counsel have not suggested that they would be unduly burdened," if disqualification of the expert was granted. 2013 WL 3991107, at *7. This case is the opposite; here if disqualification of Doctors Vogelzang and Desai were allowed, the Defendants would be rewarded for their dilatory tactics; and Plaintiffs would be severely prejudiced in that all MDL plaintiffs, a potential class, and the court would lose the services of highly and uniquely specialized experts (Vogelzang and Desai), and plaintiffs would also suffer substantial financial forfeiture (over $100,000 for expert services billed by experts that are subject of this motion). Courts are reluctant to disqualify experts at such a late stage because the prejudicial effect would be overwhelming. *See Hewlett-Packard*, 330 F. Supp. 2d at 1097-98 ("At this late stage. . . [the non-moving party] clearly would suffer hardship if ... [the expert] ... were disqualified: it relied on ... [the

---

[5] The first report from Dr. Vogelzang was, dated March 2, 2017, and it disclosed Dr. Resnick's participation.

13

expert's] ... declaration in preparing its claim construction briefs and oral argument"); *In re Malden Mills*, 275 B.R. 670, 675 (Bankr. D. Mass. 2002) ("Allowing the disqualification ... this close to the end of discovery without the … the required showing for disqualification harms the Defendants' preparation of this case"). Thus, allowing for disqualification of Doctors Vogelzang and Desai here would severely undercut the specific policies that underpin the doctrinal policy against expert disqualification. *Mays*, 293 F. Supp. at 957 (citing policy of access to experts with specialized knowledge), *Kane*, 2013 WL 3991107, at *7 (same).

In sum, Bard has utterly failed to meet its heavy burden in a disqualification motion to establish (or even make any showing) that relevant confidential information to the instant litigation was ever disclosed to Doctors Vogelzang and Desai. The issue as to any future involvement as to Dr. Resnick, the non-testifying consultant who actually had consulted with Bard, is moot since Doctors Vogelzang and Desai have been instructed to halt any communication with Dr. Resnick regarding this case. Therefore, the part of the motion that relates to Doctors Vogelzang and Desai should be denied. Bard has failed to meet any of the elements necessary to seek their disqualification, since the record is clear that Doctors Vogelzang and Desai received no Bard confidential information, and no mental impressions.

### V. Conclusion

For all the reasons stated above, the motion to disqualify Doctors Vogelzang and Desai should be denied. The motion as to Dr. Resnick is moot since no future communications with him in this case will occur.

RESPECTFULLY SUBMITTED this 28th day of July 2017.

GALLAGHER & KENNEDY, P.A.

By: */s/ Mark S. O'Connor*
    Mark S. O'Connor
    2575 East Camelback Road
    Phoenix, Arizona 85016-9225

LOPEZ McHUGH LLP
Ramon Rossi Lopez (CA Bar No. 86361)
(admitted *pro hac vice*)
100 Bayview Circle, Suite 5600
Newport Beach, California 92660

HAUSFELD LLP
Steven Rotman (admitted *pro hac vice*)
Richard S. Lewis (admitted *pro hac vice*)
1700 K Street N.W., Ste. 650
Washington, DC 20006

*Co-Lead/Liaison Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of July 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/ Gay Mennuti*