1  James R. Condo (#005867)
   Amanda C. Sheridan (#027360)
2  SNELL & WILMER L.L.P.
   One Arizona Center
3  400 E. Van Buren, Suite 1900
   Phoenix, AZ 85004-2204
4  Telephone: (602) 382-6000
   jcondo@swlaw.com
5  asheridan@swlaw.com

6  Richard B. North, Jr. (admitted *pro hac vice*)
   Georgia Bar No. 545599
7  Matthew B. Lerner (admitted *pro hac vice*)
   Georgia Bar No. 446986
8  NELSON MULLINS RILEY & SCARBOROUGH LLP
   Atlantic Station
9  201 17th Street, NW, Suite 1700
   Atlanta, GA 30363
10 Telephone: (404) 322-6000
   richard.north@nelsonmullins.com
11 matthew.lerner@nelsonmullins.com

12 *Attorneys for Defendants*
   *C. R. Bard, Inc. and*
13 *Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation | No. 2:15-MD-02641-DGC<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY ROBERT VOGELZANG, M.D. AND KUSH DESAI, M.D. AS TESTIFYING EXPERTS; AND SCOTT RESNICK, M.D. AND ROBERT LEWANDOWSKI, M.D. AS CONSULTING EXPERTS FOR PLAINTIFFS**<br><br>(Assigned to the Honorable David G. Campbell) |

The fundamental issue in disqualification of experts is protecting one party from being unfairly disadvantaged when its confidential information is in the hands of an opposing expert. Bard maintains that its confidential information—indeed, opinion work product that Rule 26(b)(3)(B) says that courts must protect—is in the hands of Drs. Vogelzang, Desai, Resnick, and Lewandowski. The plaintiffs' response brief and the affidavit of Dr. Resnick reinforces Bard's position.

The thrust of the plaintiffs' response is that Bard has not identified any confidential information that Dr. Resnick received. To meet the plaintiffs' demand for more information, however, Bard must reveal the very confidential information and opinion work product that it has filed a motion to protect. Rather, Dr. Resnick's affidavit and his consulting agreements with Bard provide sufficient detail about the types of confidential information that Dr. Resnick received. Dr. Resnick attests that counsel for Bard provided him with medical literature and medical records for review and discussion. Ex. 3 to Pl. Opp. Br., at ¶ 2. This alone amounts to revealing confidential attorney work product to Dr. Resnick. *See, e.g., Rhodes v. E.I. Du Pont De Nemours & Co.*, 558 F. Supp. 2d 660, 671 (S.D. W. Va. 2008) ("Courts acknowledge that the document selection process "represent[s] the mental impressions of [the party's] counsel and [is] protected work product.") (citations omitted); *see also, e.g., Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("We believe that the selection and compilation of documents by counsel . . . falls within the highly-protected category of opinion work product."). Dr. Resnick attests that he had an in-person meeting with counsel for Bard that lasted for approximately three hours concerning these issues. Ex. 3 to Pl. Opp. Br., at ¶ 5. Dr. Resnick also attests that he has consulted for Bard "for many years, dating back to 2003," concerning IVC filters and other products. *Id.* ¶ 9. Likewise, Dr. Resnick attests that he was involved in two separate animal studies as part of his consultation with Bard concerning prototype IVC filters and adverse events associated with those filters. *Id.* ¶ 10. Bard's counsel also represents that Dr. Resnick received core work product—counsel's mental impressions of plaintiffs' arguments and evidence, Bard's arguments and evidence, counsel's thoughts

- 1 -

about all of the these issues, forward thinking discussions about expert opinions and expert discovery issues, and previewing trial themes. Finally, the numerous consulting agreements describe Dr. Resnick's role with Bard's IVC filters over the years, as discussed in Bard's motion (*see* Mot. at 2-3). In short, Dr. Resnick clearly received confidential and protected information about Bard's IVC filters.[1]

The plaintiffs' argument that Drs. Vogelzang and Desai have been instructed "not to consult in any manner with Dr. Resnick on this case going forward" (Pl. Resp. at 2), does not cure the harm to Bard and serves as an implicit acknowledgement that Dr. Resnick should never have been involved as an expert for the plaintiffs. Moreover, Dr. Resnick and his Northwestern colleagues are inextricably linked in this litigation. The opinions in the reports of Drs. Vogelzang and Desai are not their own, but rather were developed and written hand-in-glove and after numerous and lengthy discussions with Drs. Resnick and Lewandowski. Although Dr. Resnick attests that "[t]he Vogelzang and Desai reports were based on their clinical experience and their review of medical literature, which they independently developed in their own careers and through their own research and their review of medical literature provided by counsel for plaintiffs," Ex. 3 to Pl. Opp. Br., at ¶ 4, Dr. Resnick omits critical facts that are reflected in the SBBK invoices: Dr. Resnick spent 21 hours reviewing material as part of his work as a plaintiffs' expert; he spent 9.5 hours conferring with the plaintiffs' counsel; he spent 4.5 hours meeting with his Northwestern colleagues about the litigation; and he spent 25.5 hours writing the three reports that Drs. Vogelzang and/or Desai signed. Thus, although Dr. Resnick claims that "my role in creation of these reports was modest and supportive relative to the changes," *id.* para. 8, he actually spent 60.5 hours on the project as of April 2017, and he has billed more than $30,000 for his work. As the SBBK invoices

---

[1] Dr. Resnick's claim that he did not receive "Bard's defense theories" should carry little weight and does not address Bard's contention that he received core work product and attorney mental impressions. Regardless of Dr. Resnick's view of his three-hour long meeting with Bard's counsel after reviewing medical records and medical literature selected by Bard's counsel, Bard submits that Dr. Resnick received core work product and attorney mental impressions.

reflect, the scope of Dr. Resnick's work is identical to that of Drs. Vogelzang, Desai, and Lewandowski, and Dr. Resnick's total time on the reports is also similar to the time spent by Drs. Vogelzang, Desai, and Lewandowski, who billed 74.25 hours, 81.75 hours, and 49.25 hours, respectively.[2]  Accordingly, the opinions of all four doctors are inseparably intertwined.

Moreover, although Drs. Vogelzang and Desai attest in nearly identical language in their affidavits (Paragraph 4 of Exhibits 1 and 2 to the plaintiffs' opposition) that they did not receive any mental impressions of Bard's attorneys, their claim does not seem credible.  Both physicians worked closely with Dr. Resnick for the entirety of the project, and Dr. Resnick could not possibly have walled off the confidential information that he received from Bard even if he tried. *Michelson*, *Michelson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 1989 WL 31514, at **3-4 (S.D.N.Y. Mar. 28, 1989) (conversations with moving party "could subliminally affect his testimony and assessment of facts" and "try as he might, [he] cannot possibly create separate spaces within his memory . . . ."); *Auto-Kaps, LLC v. Clorox Co.*, 2016 WL 1122037, at *5 (E.D.N.Y. Mar. 22, 2016) ("[a]n expert cannot build a Chinese wall in his own mind, despite his best efforts to do so"). Moreover, Bard still does not know the full scope of the physicians' communications among themselves.  And while Bard has requested all such communications, and this Court ordered in CMO-26 that "Plaintiffs shall produce communications among their experts to Defendants," and "[i]f Plaintiffs conclude that any such communications are properly withheld, they shall provide Defendants with a privilege log that identifies the specific basis which Plaintiffs' conclude that the communications are protected under Rule 26(b)," the plaintiffs have produced neither the communications nor a privilege log. Given the inconsistency between Dr. Resnick's affidavit about the scope of his work and what the contemporaneously created invoices reveal, the communications among the

---

[2] Even if Dr. Resnick were to step aside, per the agreement with plaintiffs' counsel, he would still receive one quarter of the fees that SBBK receives.

- 3 -

experts could reveal similar inconsistencies between the experts' affidavits and what was actually communicated.

The plaintiffs also argue that Bard has identified no case law extending disqualification from a non-testifying consultant to a testifying expert, but the plaintiffs do not address a critical issue raised in Bard's motion: SBBK as an entity, which includes Drs. Vogelzang, Desai, Resnick and Lewandowski, should be disqualified because Dr. Resnick, a conflicted and undisclosed expert, closely collaborated on the opinion and expert reports of his SBBK colleagues. Numerous courts, including in the Ninth Circuit, have analyzed disqualification of entities when individuals within those entities provide expert opinions to opposing parties. *See Kane v. Chobani*, 2013 WL 3991107, at *5 (N.D. Cal. Aug. 2, 2013) (finding that confidential relationship and exchange of confidential information between moving party and experts in consulting firm merited disqualification of entire firm from serving as an expert for the plaintiff, including the CEO of EAS who did not previously consult with the defendants); *Mays v. Reassure Am. Life Ins. Co.*, 293 F. Supp. 2d 954, 957-958 (applying two-prong expert disqualification analysis to CPA firm); *In re Ambassador Group., Inc.* 879 F. Supp. 237, 241-246 (same). Thus, under this framework, whether Drs. Vogelzang and Desai, as individuals, had a confidential relationship with Bard is irrelevant.

Dr. Resnick's extensive relationship with Bard, and his collaboration on the plaintiffs' expert reports, should disqualify SBBK as a whole. The plaintiffs should not be able to successfully argue on the one hand that Drs. Vogelzang and Desai as individuals are immune from disqualification because they did not have a confidential relationship with Bard, but on the other hand allow a clearly conflicted SBBK colleague to collaborate extensively on, draft, and bill comparable time for the reports of Drs. Vogelzang and Desai. This is exactly the type of "inappropriate expert conduct" that threatens judicial integrity, and underscores why entities as a whole are eligible for disqualification. And when considering that disqualification is designed to ensure that one party is not unfairly disadvantaged when its confidential information is in the hands of an opposing expert,

- 4 -

1  Drs. Vogelzang, Desai, Resnick, and Lewandowski should be disqualified whether viewed
2  as individuals or as the SBBK entity.

3  Finally, disqualifying Drs. Vogelzang, Desai, Resnick, and Lewandowski does not
4  amount to "fundamental unfairness" as the plaintiffs argue.  The plaintiffs' claim that
5  Bard employed "dilatory tactics" (Pl. Resp. at 13) in the timing of its motion to disqualify
6  is inaccurate.  But Bard only learned the extent of Dr. Resnick's collaboration after the
7  June 5 and 6, 2017, depositions of Drs. Vogelzang and Desai when counsel for Bard asked
8  about Dr. Resnick's involvement in this litigation and discovered that it was extensive
9  when the plaintiffs produced the invoices for SBBK.  At that point, Bard expeditiously
10 analyzed the relevant law, conferred with the plaintiffs, and filed its motion to disqualify.
11 Moreover, if one party is going to be prejudiced by an expert's conflict of interest, it
12 should be the party that created the conflict—the plaintiffs could have prevented this issue
13 by asking at the outset whether Drs. Vogelzang, Desai, Resnick, and Lewandowski had
14 previously provided any expert or consulting work to Bard.  Because they did not, the
15 experts' work in this litigation has resulted in, and will continue to result in, irreparable
16 harm to Bard.

17  For all of these reasons, and as further discussed in Bard's motion, Drs. Vogelzang,
18 Desai, Resnick, and Lewandowski should be disqualified as experts for the plaintiffs.

19  RESPECTFULLY SUBMITTED this 4th of August, 2017.

s/  Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

- 5 -

1
2
3
4
5

James R. Condo (#005867)
Amanda Sheridan (#027360)
S<small>NELL</small> & W<small>ILMER</small> L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

6
7

**Attorney for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

- 6 -

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of August 2017, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

                                            s/Richard B. North, Jr.
                                            Richard B. North, Jr.

Nelson Mullins Riley & Scarborough L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000