1   James R. Condo (#005867)
    Amanda C. Sheridan (#027360)
2   SNELL & WILMER L.L.P.
    One Arizona Center
3   400 E. Van Buren, Suite 1900
    Phoenix, AZ 85004-2204
4   Telephone:  (602) 382-6000
    jcondo@swlaw.com
5   asheridan@swlaw.com

6   Richard B. North, Jr. (admitted *pro hac vice*)
    Georgia Bar No. 545599
7   Matthew B. Lerner (admitted *pro hac vice*)
    Georgia Bar No. 446986
8   NELSON MULLINS RILEY & SCARBOROUGH LLP
    Atlantic Station
9   201 17th Street, NW, Suite 1700
    Atlanta, GA  30363
10  Telephone: (404) 322-6000
    richard.north@nelsonmullins.com
11  matthew.lerner@nelsonmullins.com

12  *Attorneys for Defendants*
    *C. R. Bard, Inc. and*
13  *Bard Peripheral Vascular, Inc.*

14          **IN THE UNITED STATES DISTRICT COURT**

15              **FOR THE DISTRICT OF ARIZONA**

16  | IN RE:  Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC |
17  |  |  |
18  |  | **DEFENDANTS' SEPARATE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF CAROL KRUSE'S CLAIMS** |
19  |  |  |
20  |  |  |
21  | CAROL KRUSE, an individual, | (Assigned to the Honorable David G. Campbell) |
22  |  |  |
23  | Plaintiff, |  |
24  | v. |  |
25  | C. R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, INC., an Arizona corporation, |  |
26  |  |  |
27  |  |  |
28  | Defendants. |  |

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Pursuant to Fed. R. Civ. P. 56(c), Local Rule 56.1(a), and Case Management Order No. 53 (Doc. 5770), Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") respectfully submit this Separate Statement of Facts in Support of Motion for Summary Judgment as to Plaintiff Carol Kruse's Claims.

1.      Plaintiff Carol Kruse received a Bard G2® Filter on July 8, 2009. (Ex. A, Fourth Supplemental Plaintiff Fact Sheet of Plaintiff Carol Kruse (hereinafter "PFS"), at § II.2(a).)

2.      The Filter is not sold directly to patients. (Ex. B, G2 Filter Instructions for Use (the "G2 IFU") at page 1.)

3.      Plaintiff received her Filter because ████████████████ ███████████████████████████████████████████████████ ██████████████████████████ (Ex. C, Selected Plaintiff Medical Records .)

4.      According to Plaintiff's implanting physician, Dr. Shanon Smith, Plaintiff ████████████████████████████████████████████████████ ████████████████████████." (Ex. D, April 4, 2017 Dr. Shanon Smith Deposition Transcript ("Smith Dep. Tr.") at 123:2-12.)

5.      Plaintiff has a complex medical history that includes ██████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████(Ex. C, Selected Plaintiff Medical Records.)

6.      Plaintiff testified that, shortly after she received her filter in 2009, she began ████████████████████████████████████████████████████. (Ex. E, February 20, 2017 Carol Kruse Deposition Transcript ("Kruse Dep. Tr.) at 127:21 to 128:16.)

7.      Plaintiff testified that in approximately late 2010, before she underwent an attempted removal procedure, ████████████████████████████████████████ ██████████████████████████(Ex. E, Kruse Dep. Tr. at 129:16 to

- 1 -

130:3; 134:4-17.)

8.      Plaintiff testified that in 2009 or 2010, she saw TV advertisements soliciting potential IVC filter plaintiffs. (Ex. E, Kruse Dep. Tr. at 45:6-23.)

9.      Plaintiff testified that she saw these TV advertisements soliciting potential IVC filter plaintiffs before she underwent her Filter removal procedure in April 2011. Ex. E, Kruse Dep. Tr. at 48:23 to 49:7.)

10.     Plaintiff testified that, within "a couple of weeks" of seeing the TV advertisements soliciting potential IVC filter plaintiffs, she called the phone number she saw on the advertisement regarding her potential IVC filter claim. (Ex. E, Kruse Dep. Tr. at 45:24 to 46:15.)

11.     Although it was "years" before she formally hired an attorney regarding her potential IVC filter lawsuit, Plaintiff testified that she periodically received letters regarding her "case" from a lawyer named Russell Button. (Ex. E, Kruse Dep. Tr. at 46:24 to 47:22.)

12.     Plaintiff testified that she called her daughter shortly after seeing the TV advertisements regarding potential IVC filter lawsuits to discuss her IVC filter. (Ex. E, Kruse Dep. Tr. at 14:4-19.)

13.     On March 14, 2011, Ms. Kruse visited her ███████████████████ ████████████████████████████ (Ex. C, Selected Plaintiff Medical Records.)

14.     The medical record associated with this March 14, 2011, procedure notes Mr. Kruse ████████████████████████████████████████ ████████████████ (Ex. C, Selected Plaintiff Medical Records.)

15.     As of March 14, 2011, Plaintiff was still having ███████████ ████████████████████████████████████████ ██████████████ (Ex. E, Kruse Dep. Tr. at 134:23 to 138:16.)

16.     Plaintiff admits that at least as of April 7, 2011, she first attributed symptoms to her Bard G2 Filter. (Ex. A, PFS at § II.13(c).)

17.     Dr. Smith testified that before he placed the Filter, he had the IFU that

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

accompanied the Filter available to him to read. (Ex. D, Smith Dep. Tr. at 152:25 to 153:6.)

18.    The G2 IFU applicable in July 2009 (when Plaintiff received her Filter) contains specific warnings regarding the risks of filter tilt, migration, fracture, perforation, and inability to retrieve. (Ex. B, G2 IFU.)

19.    Specifically, the IFU states as follows:

a.    Under the bolded heading "**Potential Complications**," the G2 IFU reads as follows:

- Movement or migration of the filter is a known complication of vena cava filters.
- Filter fracture is a known complication of vena cava filters.
- Perforation or other acute or chronic damage of the IVC wall.

\* \* \*

**All of the above complications have been associated with serious adverse events such as medical intervention and/or death. There have been reports of complications including death, associated with the use of vena cava filters in morbidly obese patients. The risk/benefit ratio of any of these complications should be weighed against the inherent risk/benefit ration for a patient who is at risk of pulmonary embolism without intervention.**

(Ex. B, G2 IFU.)

b.    In the bolded "**Clinical Experience**" section, the IFU notes that in the clinical trial regarding the G2 Filter, "filter tilt" was observed 15 times, and that there were "3 technical failures for retrieval resulted from inability to engage the filter apex with the Recovery Cone® Removal System due to filter tilt leading to embedding of the filter apex into the vena caval wall." (Ex. B, G2 IFU.)

c.    Under the bolded "**G2® Filter Removal**" heading, the G2 IFU states in bolded language as follows:

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

- 3 -

**It is possible that complications such as those described in the "Warnings", "Precautions," and "Potential Complications" sections of this Instructions for Use may affect the recoverability of the device and result in the clinician's decision to have the device remain permanently implanted.**

(Ex. B, G2 IFU.)

20.     Dr. Smith testified that he was independently aware of the risks of filter tilt, migration, perforation, and fracture, and that he would have discussed with Plaintiff the potential complications associated with her receiving an IVC filter. (Ex. D, Smith Dep. Tr. at 100:2-14; 153:7-17.)

21.     Dr. Smith testified that more information is helpful. (Ex. D, Smith Dep. Tr. at 181:16-20.)

22.     Dr. Smith never testified that had he received some additional information from Bard, he would have used a different device with Plaintiff.

23.     Dr. Smith testified that "it's possible" he would have changed his treatment of Plaintiff had he received some additional information from Bard about the G2 Filter. (Ex. D, Smith Dep. Tr. at 60:25 to 62:3.)

24.     When asked whether the alleged facts and documents shown to Dr. Smith by Plaintiff's counsel would have changed his decision to use a G2 Filter with Plaintiff, Dr. Smith testified that he "wouldn't want to say how they would influence me without knowing what they say in detail." (Ex. D, Smith Dep. Tr. at 148:21 to 149:5.)

25.     Dr. Smith testified that he relied on his training, experience, the experience of his colleagues, and the applicable medical literature when he makes treatment decisions regarding his patients, including Ms. Kruse. (Ex. D, Smith Dep. Tr. at 145:21 to 146:12.)

26.     Dr. Smith did not testify that he relied on any statement by Bard, or any omission of material fact, in deciding to use the Filter.

27.     On April 7, 2011, Plaintiff underwent an unsuccessful percutaneous filter removal procedure. (Ex. A, PFS at § II.11.)

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

28. Dr. Smith attempted ███████████████████████

███████████████████████████████████████████████

███ (Ex. D, Smith Dep. Tr. at 74:16-25.)

29. Plaintiff's vascular and interventional radiologist expert, Dr. Darren Hurst, testified that Plaintiff's Filter could "likely" be removed via a complex percutaneous procedure. (Ex. F, July 21, 2017 Dr. Darren Hurst Deposition Transcript at 159:1-11.)

30. On February 5, 2013, Plaintiff filed a Chapter 7 Bankruptcy Petition. (Ex. G, Carol Kruse Bankruptcy Case (Case No. 13-40196-TLS, U.S Bankruptcy Court, District of Nebraska (Lincoln Office)), Bankruptcy Petition ("Kruse Bankruptcy Petition); Ex. E, Kruse Dep. Tr. at 187:8-20.)

31. In her Petition, Plaintiff filled out a Schedule in which she verified all of her "personal property . . . of whatever kind." (Ex. G, Kruse Bankruptcy Petition, Schedule B - Personal Property.)

32. Under No. 21 ("Other contingent and unliquidated claims of every nature") of Schedule B of her Bankruptcy Petition, Plaintiff marked an "X" for "NONE." (Ex. G, Kruse Bankruptcy Petition, Schedule B - Personal Property, No. 21.)

33. Under No. 35 ("Other personal property of any kind not already listed") of Schedule B of her Bankruptcy Petition, Plaintiff marked an "X" for "NONE." (Ex. G, Kruse Bankruptcy Petition, Schedule B - Personal Property, No. 35.)

34. Plaintiff filled out "Schedule F - Creditors Holding Unsecured Nonpriority Claims," in which she identified $36,067.44 in such claims. (Ex. G, Kruse Bankruptcy Petition, Schedule F -Creditors Holding Unsecured Nonpriority Claims.)

35. Plaintiff signed the Petition, declaring under penalty of perjury that the information provided in the Petition is true and correct. (Ex. G, Kruse Bankruptcy Petition at page 3 ("Signatures").)

36. On February 8, 2013, an Interim Trustee was appointed to Plaintiff's bankruptcy estate. (Ex. H, Carol Kruse Bankruptcy Case (Case No. 13-40196-TLS, U.S Bankruptcy Court, District of Nebraska (Lincoln Office)), Notice of Chapter 7

Nelson Mullins Riley & Scarborough

L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Bankruptcy Case, Meeting of Creditors, & Deadlines.)

37.     On April 1, 2013, after making a "diligent inquiry into the financial affairs" of Plaintiff, the bankruptcy trustee declared that he did not "receive[] any property" for the estate, and that "there is no property available for distribution," and he certified that Plaintiff's estate has been fully administered. (Ex. I, Carol Kruse Bankruptcy Case (Case No. 13-40196-TLS, U.S Bankruptcy Court, District of Nebraska (Lincoln Office)) Docket Report ("Kruse Bankruptcy Docket Report") at No. 7.)

38.     On June 3, 2013, Plaintiff obtained a bankruptcy discharge order. (Ex. J, Carol Kruse Bankruptcy Case (Case No. 13-40196-TLS, U.S Bankruptcy Court, District of Nebraska (Lincoln Office)), Discharge Order; Ex. E, Kruse Dep. Tr. at 187:24 to 188:16.)

39.     As of the date of this filing, Plaintiff has not filed a motion to reopen her bankruptcy estate. (Ex. I, Kruse Bankruptcy Docket Report.)

40.     Plaintiff testified that she never spoke to anyone at Bard. (Ex. E, Kruse Dep. Tr. at 187:1-3.)

41.     Plaintiff testified that she never received any written or verbal information about her filter before she received it. (Ex. A, PFS at § II.8.)

42.     Plaintiff testified that she never researched IVC filters. (Ex. E, Kruse Dep. Tr. at 87:25 to 88:5.)

43.     Plaintiff testified that she did not know that Bard was the manufacturer of her Filter until the day she underwent her unsuccessful retrieval procedure. (Ex. E, Kruse Dep. Tr. 87:8-24.)

RESPECTFULLY SUBMITTED this 28th day of August, 2017.

s/Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA  30363

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

James R. Condo (#005867)
Amanda Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

1

2

**CERTIFICATE OF SERVICE**

3

    I hereby certify that on this 28th day of August 2017, the foregoing was

4

electronically filed with the Clerk of Court using the CM/ECF system which will

5

automatically send email notification of such filing to all attorneys of record.

6

7

                                       s/Richard B. North, Jr.
                                         Richard B. North, Jr.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000