James R. Condo (#005867)
Amanda C. Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC |
| | **DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFF SHERR-UNA BOOKER'S CLAIMS** |
| SHERR-UNA BOOKER, an individual, | (Assigned to the Honorable David G. Campbell) |
| Plaintiff, | |
| v. | **(Oral Argument Requested)** |
| C. R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, INC., an Arizona corporation, | |
| Defendants. | |

Nelson Mullins Riley & Scarborough

L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

**MOTION**

Pursuant to Fed. R. Civ. P. 56(c), Local Rule 56.1, and Case Management Order No. 23 (Doc. 5770), Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") respectfully move this Court for partial summary judgment as to certain of Plaintiff Sherr-una Booker's product liability claims (Counts I, II, V, VI, VII, VIII, IX, XII) and her claim for punitive damages as alleged in Plaintiff's Short Form Complaint (2:16-cv-00474-DGC, Doc. 1).[1] For the reasons stated below, Bard is entitled to judgment as a matter of law as to certain claims asserted by the plaintiff.

This motion is supported by Defendants' Memorandum of Points and Authorities and Separate Statement of Facts ("SSOF") which are filed herewith.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     Introduction.**

Plaintiff Sherr-una Booker brings this product liability action for damages she claims to have suffered as a result of complications allegedly experienced related to a Bard G2® inferior vena cava ("IVC") filter, a prescription medical device that was placed in her IVC before undergoing surgery to remove a cancerous cervical mass to help prevent a potentially life-threatening pulmonary embolism. The subject G2 Filter was placed in Ms. Booker's IVC on June 21, 2007 (the "Filter"). Plaintiff claims that the Filter was defective because, after placement, it allegedly fractured, migrated, tilted, and one or more struts of the Filter perforated her IVC. REDACTED

REDACTED Notably, fracture, tilt, migration, perforation, and embolization are known and accepted potential complications with all

---

[1] Plaintiff and Bard have met and conferred regarding the claims that Plaintiff intends to pursue. Plaintiff has agreed that she is not pursuing claims for breach of express warranty (Count X) or breach of implied warranty (Count XI). However, Plaintiff represented during the meet and confer process that she intends to pursue all of the claims addressed in this Motion.

- 1 -

retrievable IVC filters, and they are risks that Bard specifically warned about in the Instructions for Use that accompanied the Filter. Ms. Booker's implanting physician also testified he was well-aware of these potential complications before placing the Filter.

Bard moves for partial summary judgment under Federal Rule of Civil Procedure 56 on the following grounds:

  A. Plaintiff's manufacturing defect claims (Counts I, V) fail as a matter of law because Plaintiff has failed to provide any evidence that the Filter deviated from Bard's manufacturing specifications.

  B. Plaintiff's failure to warn claims (Counts II, VII) and misrepresentation claims (Counts VIII, XII) fail as a matter of law because Bard provided legally adequate warnings of the complications experienced by Plaintiff to a learned intermediary (Plaintiff's implanting physician), and any alleged failure to warn by Bard was not the proximate cause of Plaintiff's alleged injuries.

  C. Plaintiff's failure to recall/retrofit claim (Count VI) fails as a matter of law because Bard was not under a duty to recall its products.

  D. Plaintiff's negligence *per se* claim (Count IX) fails as a matter of law because Plaintiff has failed to provide any evidence that Bard violated a state statute and any alleged violation of the Food, Drug, and Cosmetic Act ("FDCA") would be preempted by federal law.

  E. Plaintiff's punitive damages claim fails because there is no evidence that such are warranted.

## II. Statement of Undisputed Facts.

Plaintiff Sherr-una Booker received a Bard G2 Filter on June 21, 2007, before she underwent surgery to remove a cancerous cervical mass in New York. (SSOF ¶ 1.) The Filter is not sold directly to patients. (*Id.* at ¶ 2.) Ms. Booker's implanting physician, Dr. Marcus D'Ayala, placed the Filter in Plaintiff because ⬛⬛⬛⬛ REDACTED ⬛⬛⬛⬛

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

1   ██████████████ REDACTED ██████████████. (*Id.* at ¶ 3.)

2   Before he placed the Filter, Dr. D'Ayala had the Instructions for Use ("IFU") that

3   accompanied the Filter available to him to read. (*Id.* at ¶ 4.) The relevant IFU contains

4   specific warnings regarding the risks of filter fracture, movement, migration,

5   embolization, and perforation. (*Id.* at ¶ 5.) Dr. D'Ayala was well aware of the risks

6   associated with IVC filters, including the risks of fracture, movement, migration,

7   embolization, and perforation when he implanted the Filter. (*Id.* at ¶ 8.) Dr. D'Ayala

8   specifically took the risk of fracture into consideration when weighing the risks and

9   benefits of implanting the Filter in Ms. Booker. (*Id.* at ¶ 9.) Dr. D'Ayala discussed with

10  Ms. Booker the risks and benefits of IVC filter placement, and then obtained her informed

11  consent before placing the Filter. (*Id.* at ¶ 16.) Notably, complications such as tilt,

12  migration, embolization, perforation, fracture, and inability to retrieve are complications

13  associated with all brands of retrievable IVC filters, not just Bard's IVC filters. Indeed,

14  even Plaintiff's expert acknowledges that all IVC filters are known to have complications,

15  including filter fracture, migration, tilt, and perforation. (*Id.* at ¶¶ 6-7.)

16  Although she experienced a number of medical issues during the years after

17  placement of the Filter, Ms. Booker did not develop any symptoms or complications

18  relating to the Filter until she moved to Georgia in October 2010. (*Id.* at ¶ 18.) Ms. Booker

19  did not attribute any of those symptoms to the Filter until sometime between April to July

20  of 2014. (*Id.* at ¶ 19.) On June 26, 2014, while Ms. Booker was hospitalized for right

21  lower quadrant pain, ████████████ REDACTED ████████████

22  ████████████████████████████████████████████████

23  ████████████████████████████████. (*Id.* at ¶ 20.) Ms.

24  Booker was referred through the ER to Dr. Brandon Kang, an interventional radiologist,

25  for further readings and possible Filter removal. (*Id.* at ¶ 21.) ████ REDACTED ████

26  ████████████████████████████████████████████████

27  ████████████████████████████████████████ (*Id.*) On

28  July 23, 2014, Ms. Booker underwent ████████ REDACTED ████████,



. (*Id.* at ¶ 22.) Dr. Kang was unable to retrieve the other fractured strut from her IVC, REDACTED .

(*Id.* at ¶ 23.) REDACTED

(*Id.* at ¶ 24.) REDACTED

(*Id.* at ¶ 25.) On July 28, 2014, Ms. Booker REDACTED . (*Id.* at ¶ 26.) REDACTED

(*Id.* at ¶ 27.) REDACTED , and no doctor has attributed any abdominal pain that Ms. Booker has allegedly experienced to the strut that remains embedded in the wall of her IVC. (*Id.* at ¶ 28.)

## III.    Summary Judgment Standard.

Summary judgment is appropriate upon showing that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). "A moving party without the ultimate burden of persuasion at trial . . . has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.* "If . . . a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id.* at 1130-31 (internal citations omitted).

**IV.    Georgia Substantive Law Applies.**

The parties agree that Georgia substantive law governs Plaintiff's claims. Although Plaintiff filed her complaint directly in the MDL, she identified Georgia in her Short Form Complaint as the forum in which venue would be proper absent direct filing, (2:16-cv-00474-DGC, Doc. 1), so Georgia's conflict-of-law rules apply. (*See* Doc. 1485.) Georgia follows the *lex loci delicti* doctrine, which applies the substantive law of the place of injury. *See Coon v. Med. Ctr., Inc.*, 797 S.E.2d 828, 834 (Ga. 2017). Despite being implanted in New York, the place of injury here is Georgia because "at least a substantial amount, if not all, of the injuries allegedly caused by the [Filter's] alleged defects occurred in Georgia. Therefore, because 'the last event … necessary to make [Defendants] liable for the alleged tort[s]' likely occurred in Georgia, the Court applies Georgia law." *See Schmidt v. C. R. Bard, Inc.*, No. 6:14-CV-62, 2014 WL 5149175, at *2 (S.D. Ga. Oct. 14, 2014) (applying Georgia substantive law under *lex loci delicti* despite plaintiff being implanted with medical device in Michigan).

**V.    Argument and Citation of Authority.**

    **A.    Plaintiff's Manufacturing Defect Claims (Counts I, V) Fail as a Matter of Law Because Plaintiff Has Provided No Evidence that the Filter Deviated from Other G2 Filters.**

To prove that a medical device suffered from a manufacturing defect, Plaintiff must establish as a threshold matter that the device deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications. O.C.G.A. § 51-1-11(b)(1); *Jones v. Amazing Prods., Inc.*, 231 F. Supp. 2d 1228, 1236 (N.D. Ga. 2002) (when a plaintiff presents "no evidence to support the contention that the product had a manufacturing error specific only to [it, or that it] was not manufactured in accordance with its design," summary judgment of a manufacturing defect claim is appropriate); *accord Queen v. C. R. Bard*, 2013 U.S. Dist. LEXIS 78057, *13 (S.D. W. Va. June 4, 2013) (citing *Jones*, 231 F. Supp. 2d at 1236); *Wheeler v. Novartis Pharms. Corp.*, 944 F. Supp. 2d 1344, 1352-53 (S.D. Ga. 2013); *see also Banks v. ICI Americas, Inc.*, 450 S.E.2d 671, 673 (Ga. 1994).

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Here, Plaintiff has failed to produce evidence that her Filter varied from the other G2 Filters in its lot or deviated from its design specifications. (SSOF ¶ 32.) Indeed, Plaintiff's engineering expert stated that he does not know how Bard IVC Filters look coming off of the manufacturing line. (*Id.* at ¶ 33.) Similarly, Plaintiff's materials science expert, testified that he is not familiar with the manufacturing process utilized by Bard to make the Filter "in a detailed sense," acknowledging that "I don't have a great recall of what exactly I read [regarding manufacturing specifications for Bard filters]." (*Id.* at ¶ 34) Moreover, Plaintiff's experts have examined the Filter and have failed to identify how, if at all, it varied from other G2 filters coming off the line or deviated from its design specifications. (*Id.* at ¶ 35.)[2] Since Plaintiff has not provided any evidence in support of her manufacturing defect claim, Bard is entitled to summary judgment.

**B.    Plaintiff's Failure to Warn Claims (Counts II, VI) and Misrepresentation Claims (Counts VIII, XII) Fail as a Matter of Law Because Bard Provided Legally Adequate Warnings to a Learned Intermediary, and Any Alleged Failure to Warn Could Not Be the Proximate Cause of Plaintiff's Alleged Injuries.**

Bard is entitled to summary judgment on Plaintiff's failure to warn claim because Bard provided legally adequate warnings of the Plaintiff's alleged complications to a learned intermediary, Ms. Booker's implanting physician, Dr. D'Ayala. Moreover, any alleged failure to warn by Bard was not the proximate cause of Plaintiff's alleged injuries.

Under Georgia law, "[t]o establish a claim for failure to warn, the plaintiff must show that the defendant had a duty to warn, that defendant breached that duty and the breach was the proximate cause of the plaintiff's injury." *Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1363 (N.D. Ga. 1999).[3] It is well settled under Georgia law that the

---

[2] Bard anticipates that Plaintiff will argue that her material science expert observed indications of possible surface defects on the Filter that possibly initiated a fracture. (SSOF ¶ 35.) However, Plaintiff has no evidence that these possible surface defects were a deviation from other G2 Filters coming off the line or its manufacturing or design specifications, which is what is required to prove a "manufacturing defect" claim under Georgia law. *See Jones*, 231 F. Supp. 2d at 1236.

[3] Under Georgia law, there are "no misrepresentation claims for products liability distinct from failure to warn claims." *Brazil v. Janssen Research & Dev. LLC*, No. 4:15-CV-0204-HLM, 2016 WL 4844442, at *11 (N.D. Ga. Mar. 24, 2016). Accordingly, Plaintiff's negligent and fraudulent misrepresentation claims (Counts VIII, XII) "collapse into the

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

learned intermediary doctrine provides a defense to medical device manufacturers in product liability cases in which the plaintiff alleges a failure to warn with respect to a medical device. *See, e.g. Lance v. Am. Edwards Labs.*, 452 S.E.2d 185 (Ga. Ct. App. 1994); *Hawkins v. Richardson-Merrell, Inc.*, 249 S.E.2d 286, 287-88 (Ga. Ct. App. 1978) (en banc); *see also Catlett v. Wyeth, Inc.*, 379 F. Supp. 2d 1374, 1381 (M.D. Ga. 2004) ("It is clear that Georgia courts would find the 'learned intermediary rule' encompasses any fraud, fraudulent concealment, misrepresentation, failure to warn or breach of warranty claims related to the sale and use of prescription drugs.").

"Under the learned intermediary doctrine, the manufacturer of a prescription drug or medical device does not have a duty to warn the patient of the dangers involved with the product, but instead has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and the manufacturer.  The rationale for the doctrine is that the treating physician is in a better position to warn the patient than the manufacturer, in that the decision to employ prescription medication [or medical devices] involves professional assessment of medical risks in light of the physician's knowledge of a patient's particular need and susceptibilities." *McCombs v. Synthes*, 587 S.E.2d 594, 595 (Ga. 2003) (internal citations omitted).

Under the learned intermediary doctrine, a manufacturer discharges its duty to warn by apprising the prescribing physician of potential dangers that may result from the

failure to warn claims," and fail for the same reasons. *Swicegood v. Pliva, Inc.*, 543 F. Supp. 2d 1351, 1357 (N.D. Ga. 2008). Even if Plaintiff's misrepresentation claims are distinct from her failure-to-warn claims, they still fail because Plaintiff has no evidence of reliance. *Id.* at 1355 (justifiable reliance is an essential element of both negligent and fraudulent misrepresentation under Georgia law). Plaintiff does not remember receiving any written information regarding the Filter, has never spoken to anyone at Bard, and did not even know Bard manufactured the Filter until after she retained her lawyers. (SSOF ¶¶ 29-31.) Further, Dr. D'Ayala does not recall specific discussions with any Bard sales representatives regarding the Filter, nor was it his practice to provide Plaintiff with any written materials about the Filter. (*Id.* at ¶¶ 10, 17.) Dr. D'Ayala does not rely on information contained in a manufacturer's internal documents, or their preliminary or internal investigations, when deciding which IVC filter to use because such incomplete information is unreliable, misleading, and could negatively impact his practice. (*Id.* at ¶ 14.) Instead, he relies on reliable information from device manufacturers as well as his experience, the experience of his colleagues, the FDA, and the applicable medical literature when deciding which IVC filter to use. (*Id.* at ¶ 15.)

Nelson Mullins Riley & Scarborough

L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

device's use. *Hawkins*, 249 S.E.2d at 288; *Ellis v. C.R. Bard, Inc.,* 311 F.3d 1272, 1277–78, 1281 (11th Cir. 2002) (per curiam) (applying Georgia law, finding that manufacturer adequately warned doctors and nurses of risks of third-party activation of morphine pump because evidence demonstrated the doctors and nurses all had actual knowledge of risk); *Presto v. Sandoz Pharm. Corp.*, 487 S.E.2d 70, 73 (Ga. Ct. App. 1997) ("a warning as to possible danger in [the prescription product's] use to the prescribing physician is sufficient"). If the warning provided to the learned intermediary is legally adequate, the plaintiff cannot recover. *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 816 (11th Cir. 2010).

Here, the Filter is a prescription medical device not available to the general public. (SSOF ¶ 2.) Accordingly, the learned intermediary doctrine controls here, and Bard only had a duty to warn Dr. D'Ayala, the physician who implanted the Filter, of the risks of its use. Dr. D'Ayala's testimony establishes that the warnings accompanying the Filter were adequate to warn him of the specific complications encountered by Ms. Booker. Before he placed the Filter, Dr. D'Ayala had the IFU that accompanied the Filter available to him. (*Id.* at ¶ 4). The relevant IFU contains specific warnings regarding the risks of filter fracture, movement, migration, embolization, and perforation of the IVC, the complications experienced by Ms. Booker. (*Id.* at ¶ 5). Under the heading "Potential Complications," the IFU reads:

- Movement or migration of the filter is a known complication of vena cava filters. This may be caused by placement in IVCs with diameters exceeding the appropriate labeled dimensions specified in the IFU. Migration of filters to the heart or lungs have also been reported in association with improper deployment, deployment into clots and/or dislodgment due to large clot burdens.

- Filter fracture is a known complication of vena cava filters. There have been reports of embolization of vena cava filter fragments resulting in retrieval of the fragment using endovascular and/or surgical techniques. Most cases of filter fracture, however, have been reported without any adverse clinical sequelae.

- Perforation or other acute or chronic damage of the IVC wall.

\* \* \*

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

**All of the above complications have been associated with serious adverse events such as medical intervention and/or death. There have been reports of complications, including death, associated with the use of vena cava filters in morbidly obese patients. The risk/benefit ratio of any of these complications should be weighed against the inherent risk/benefit ratio for a patient who is at risk of pulmonary embolism without intervention.**

(*Id.*) (emphasis in original). Because the IFU warned Dr. D'Ayala regarding the relevant risks of using the Filter, Bard's warnings were legally adequate. *See Presto*, 487 S.E.2d at 73 ("a warning as to possible danger in [the prescription product's] use to the prescribing physician is sufficient").[4]

Moreover, Bard cannot be liable for failure to warn of the complications with the Filter experienced by Ms. Booker because those complications are well known by medical professionals. Where a product is sold to a particular group or profession, the manufacturer is not required to warn against risks generally known to such group or profession. *Exxon Corporation v. Jones*, 433 S.E.2d 350, 353 (Ga. Ct. App. 1993) (quoting *Eyster v. Borg-Warner Corp.,* 206 S.E.2d 668 (Ga. Ct. App. 1974)); *see Ellis,* 311 F.3d at 1277–78, 1281. Accordingly, even had the IFU not provided the necessary warnings, which Bard denies, Bard could not be liable for failure to warn of the complications experienced by Ms. Booker because they were widely known, and well documented, by the medical community. Indeed, Plaintiff's expert acknowledges that *all* IVC filters are known to have complications, including filter fracture, migration, tilt, and perforation. (SSOF ¶¶ 6-7). Because the relevant risks involved in implanting the Filter were well documented and well known to medical professionals, including Dr. D'Ayala, Bard cannot be liable for any failure to warn of those risks. *See Ellis*, 311 F.3d at 1279-80.

In addition, because Dr. D'Ayala had actual knowledge of the complications of

---

[4] Plaintiff may argue that Bard failed to warn Dr. D'Ayala regarding the relative complication rates of Bard's IVC filters compared to competitor devices. Bard can find no Georgia law creating a duty on a manufacturer to provide comparative rates of complication for its product to other similar products on the market. For the reasons and arguments stated at footnote 3, page 9 of Bard's Motion for Summary Judgment filed in *Jones v. C. R. Bard, Inc., et al.*, which are incorporated herein by reference, Bard had no legal duty to provide warnings to Dr. D'Ayala regarding the rates of complications with the Filter in comparison to any other product.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

IVC filter use encountered by Ms. Booker when he implanted the Filter, any failure to warn by Bard is not the proximate cause of her injuries.[5] *See Bodymasters Sports Indus., Inc. v. Wimberley*, 501 S.E.2d 556, 561 (Ga. Ct. App. 1998). To prove the proximate cause element of a failure to warn claim under Georgia law, "a plaintiff must also prove: (1) that the prescribing physician was not aware of the alleged risk at issue, and (2) but for the inadequate warning, the physician would not have used or prescribed the product." *Watkins v. Eli Lilly & Co.*, No. 1:08-CV-1665, 2010 WL 11493785, at *8 (N.D. Ga. Mar. 31, 2010) (citing *Wheat*, 46 F. Supp. 2d, at 1363); *accord Porter v. Eli Lilly & Co.*, 291 F. App'x 963, 964 (11th Cir. 2008). "If a plaintiff fails to meet this burden, the causal connection is broken, and plaintiff cannot prove that the breach was the proximate cause of his injuries." *Watkins*, 2010 WL 11493785, at *8.

Here, Dr. D'Ayala had the IFU available to him before implanting the Filter, which warns of fracture, movement, migration, embolization, and perforation. (SSOF ¶¶ 4-5). When he implanted the Filter, Dr. D'Ayala knew that fracture, movement, migration, embolization, and perforation were known complications with the Filter. (*Id.* at ¶ 8). Because Dr. D'Ayala had actual knowledge that the Filter could fracture, move, migrate, embolize, and perforate Ms. Booker's IVC, any failure to warn regarding these risks is not the proximate cause of her injuries. *Watkins*, 2010 WL 11493785, at *8; *see also Bodymasters*, 501 S.E.2d at 561.

Further, although Dr. D'Ayala testified on occasion that he would have "wanted to know" certain alleged factual information presented by Plaintiff's counsel, he admitted that it would be "[d]ifficult to say with certainty" whether the information he was shown would have changed his prescribing decision, and that it "would depend upon what other filters we had at the time and what their problems would have been." (SSOF at ¶ 11). Dr.

[5] Relevantly, Georgia courts do not follow the "heeding presumption." *Wheat*, 46 F. Supp. 2d at 1362-63; *see Porter v. Eli Lilly & Co.*, 2008 WL 544739, *9-12 (N.D. Ga. Feb. 25, 2008), *aff'd*, 291 F. App'x 963 (11th Cir. 2008) (Georgia courts do not follow the "heeding presumption," which "vitiate[s] the need for a plaintiff to establish proximate cause for her injuries").

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

D'Ayala also testified that "you have to have a way of treating these difficult patients. So some filter has to be used. And it becomes a matter of deciding which filter is best, so to speak. And sometimes that's not entirely clear." (*Id.* at ¶ 12). Dr. D'Ayala further testified that the information that Plaintiff's counsel showed him was not peer-reviewed or reliable information, and that it is important to have complete and reliable information when deciding whether or not he would have prescribed the Filter (*Id.* at ¶ 13).

In the absence of evidence establishing that an alleged failure to warn was the proximate cause of Plaintiff's injury – that is, that Dr. D'Ayala was unaware of the alleged risk and that a different warning would have probably caused Dr. D'Ayala to choose a different product – Plaintiff's failure to warn claims fail as a matter of law. *Watkins*, 2010 WL 11493785, at *8.

### C.    Plaintiff's Failure to Recall/Retrofit Claim (Count VI) Fails as a Matter of Law Because Bard Had No Duty to Recall Its Products.

"[N]o common law duty exists under Georgia law requiring a manufacturer to recall a product after the product has left the manufacturer's control" unless a manufacturer voluntarily recalls the product (in which case the manufacturer must exercise ordinary care in doing so), or the recall is required by a governmental statute or entity. *Ford Motor Co. v. Reese*, 684 S.E.2d 279, 283–84 (Ga. Ct. App. 2009). Absent these special circumstances, "a manufacturer's duty to implement alternative safer designs is limited to the time the product is manufactured, not months or years later when technology or knowledge may have changed. Any other rule would render a manufacturer a perpetual insurer of the safety of its products, contrary to established Georgia law." *Id.* (citations omitted). Bard has not voluntarily recalled the G2 Filter, nor has any governmental agency or statute required such recall. Therefore, Bard is entitled to summary judgment on Plaintiff's negligent failure to recall/retrofit claim.

///

///

///

**D.     Plaintiff's Negligence *Per Se* Claim (Count IX) Fails as a Matter of Law Because Plaintiff Has Failed to Provide Any Evidence that Bard Violated a State Statute and Any Alleged Violation of the FDCA Would Be Preempted by Federal Law.**

Under Georgia law, "a defendant is considered negligent per se based upon violation of a statute if there is evidence that the defendant violated the statute, the injured person was in the class the statute was intended to protect, the injured person suffered the type of harm the statute intended to guard against, and the alleged negligence per se proximately caused the injuries." *Leonard v. Medtronic, Inc.*, No. 1:10-CV-03787-JEC, 2011 WL 3652311, at *7 (N.D. Ga. Aug. 19, 2011). However, "a private litigant cannot bring a state-law claim against a defendant when the state-law claim is in substance (even if not in form) a claim for violating the FDCA [Food, Drug, and Cosmetic Act]—that is, when the state claim would not exist if the FDCA did not exist." *Id.* (quoting *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009)). This is because "no private right of action exists for a violation of the FDCA." *Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1284 n.10 (11th Cir. 2002) (applying Georgia substantive law); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001); 21 U.S.C. § 337(a).

Plaintiff's negligence *per se* claim (Count IX) is based exclusively on alleged violations of the FDCA and its applicable regulations. (*See* Master Complaint for Damages for Individual Claims [Dkt. No. 364] at ¶¶ 229-234). Nowhere in Plaintiff's Master Complaint or Short Form Complaint does Plaintiff identify any alleged violations of Georgia statutes. Because Plaintiff's "claim of negligence per se would not exist prior to the enactment of the FDCA . . . because the claim only alleges violation of that law," such claims are impliedly preempted by federal law. *Leonard*, 2011 WL 3652311, at *8. (finding negligence per se claim impliedly preempted by § 337(a) because "Plaintiffs cannot create a private right of action under the guise of a state law claim."). Accordingly, Plaintiff's negligence *per se* claim fails as a matter of law.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

### E.    Plaintiff Has Offered No Evidence Sufficient To Bring a Punitive Damages Claim.

Under Georgia law, Bard should be entitled to summary judgment on the Plaintiff's punitive damages claim. As a preliminary matter, under Georgia law, a plaintiff has no right to punitive damages, which are only assessed in extreme cases. *See Roberts v. Forte Hotels, Inc.*, 489 S.E.2d 540, 542 (Ga. Ct. App. 1997). To authorize punitive damages, Plaintiff must show clear and convincing evidence of "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to the consequences" of the tortious act. O.C.G.A. § 51-12-5.1(b). "Conscious indifference to consequences means an intentional disregard of the rights of another, knowingly or willfully;" indeed, under Georgia law, even clear and convincing evidence of gross negligence will not support an award of punitive damages. *COMCAST Corp. v. Warren*, 650 S.E.2d 307, 311 (Ga. Ct. App. 2007).

Moreover, a manufacturer's "compliance with county, state, and federal regulations is not the type of behavior which supports an award of punitive damages," and, "as a general rule," punitive damages are "improper where a defendant [in a products liability case] has adhered to . . . safety regulations." *Stone Man, Inc. v. Green*, 435 S.E.2d 205, 206 (Ga. 1993). "This is because 'such compliance does tend to show that there is no clear and convincing evidence of 'willful misconduct, malice, fraud, oppression, or that entire want of care which would raise the presumption of [a] conscious indifference to [the] consequences.'" *Barger v. Garden Way, Inc.*, 499 S.E.2d 737, 743 (Ga. Ct. App. 1998). While compliance with safety regulations does not automatically preclude punitive damages if "there is other evidence showing culpable behavior," to survive summary judgment, Plaintiff still "must present some evidence of 'willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.'" *Edwards v. Ethicon, Inc.*, 30 F. Supp. 3d 554, 564 (S.D. W. Va. 2014) (citations omitted) (applying Georgia law and granting summary judgment on punitive damages claim).

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Here, punitive damages are not warranted because there is no evidence that Bard acted with the malice, fraud, wantonness, oppression, or entire want of care necessary to sustain an award of punitive damages. O.C.G.A. § 51-12-5.1(b). Instead, Bard complied with applicable FDA regulations in bringing the Filter to market, resulting in the Filter being twice cleared by the FDA through the 510(k) process outlined in the FDCA: for permanent use on August 29, 2005 and for retrievable use on January 15, 2008. (SSOF ¶ 36); *see* 21 U.S.C. § 360e(b)(1)(B) (establishing 510(k) clearance); 21 C.F.R. 807.87 (outlining process for 510(k) clearance application); *see generally* Defendants' Motion for Summary Judgment Regarding Preemption (Doc. 5396). Bard also complied with applicable regulations in the Filter's labeling. Furthermore, there is no evidence in this case that Bard intentionally disregarded Plaintiff's rights, which is necessary to show a "conscious indifference to consequences," *COMCAST*, 650 S.E.2d at 311, or that Bard specifically acted with the purpose of causing damage and loss. Because Plaintiff cannot offer evidence that Bard acted deliberately and with malice with regard to Plaintiff, or with an entire want of care, her punitive damages claim should fail.

## VI.   Conclusion.

For these reasons, Bard respectfully requests that this Court grant Bard's Motion for Partial Summary Judgment.

RESPECTFULLY SUBMITTED this 7th day of September, 2017.

s/Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

James R. Condo (#005867)
Amanda Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and
Bard Peripheral Vascular, Inc.**

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

- 15 -

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on this 7th day of September 2017, the foregoing was

3   electronically filed with the Clerk of Court using the CM/ECF system which will

4   automatically send email notification of such filing to all attorneys of record.

5

6                                      s/Richard B. North, Jr.
                                       Richard B. North, Jr.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28