1  James R. Condo (#005867)
   Amanda C. Sheridan (#027360)
2  SNELL & WILMER L.L.P.
   One Arizona Center
3  400 E. Van Buren, Suite 1900
   Phoenix, AZ 85004-2204
4  Telephone: (602) 382-6000
   jcondo@swlaw.com
5  asheridan@swlaw.com

6  Richard B. North, Jr. (admitted *pro hac vice*)
   Georgia Bar No. 545599
7  Matthew B. Lerner (admitted *pro hac vice*)
   Georgia Bar No. 446986
8  NELSON MULLINS RILEY & SCARBOROUGH LLP
   Atlantic Station
9  201 17th Street, NW, Suite 1700
   Atlanta, GA 30363
10 Telephone: (404) 322-6000
   richard.north@nelsonmullins.com
11 matthew.lerner@nelsonmullins.com

12 *Attorneys for Defendants*
   *C. R. Bard, Inc. and*
13 *Bard Peripheral Vascular, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' SEPARATE STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF SHERR-UNA BOOKER'S CLAIMS** |
| SHERR-UNA BOOKER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>C. R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, INC., an Arizona corporation,<br><br>Defendants. | (Assigned to the Honorable David G. Campbell) |

Pursuant to Fed. R. Civ. P. 56(c), Local Rule 56.1(a), and Case Management Order No. 23 (Doc. 5770), Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") respectfully submit this Separate Statement of Facts in Support of Their Motion for Partial Summary Judgment as to Plaintiff Sherr-una Booker's Claims.

1. Plaintiff Sherr-una Booker received a Bard G2® Filter (the "Filter") on June 21, 2007, REDACTED. (Ex. A, Plaintiff Fact Sheet of Plaintiff Sherr-una Booker (hereinafter "PFS"), §§ II.1, II.2(a).)

2. The Filter is not sold directly to patients. (Ex. B, G2 Filter Instructions for Use (the "G2 IFU"), at page 1.)

3. Plaintiff's implanting physician, Dr. Marcus D'Ayala, placed the Filter in Plaintiff because she was about to undergo surgery to remove a cervical mass and was contraindicated for anticoagulation at the time of implant because of her bleeding complications – REDACTED. (Ex. C, March 21, 2017 Dr. Marcus D'Ayala Deposition Transcript ("D'Ayala Dep. Tr.") at 95:10 to 96:13.)

4. Before he placed the Filter, Dr. D'Ayala had the IFU that accompanied the Filter available to him to read. (Ex. C, D'Ayala Dep. Tr. at 94:20 to 95:2.)

5. The G2 IFU applicable in June 2007 (when Plaintiff received her Filter) included the following warnings:

   a. Under the bolded heading "**Potential Complications**," the G2 IFU reads as follows:

   - Movement or migration of the filter is a known complication of vena cava filters. This may be caused by placement in IVCs with diameters exceeding the appropriate labeled dimensions specified in the IFU. Migration of filters to the heart or lungs have also been reported in association with improper deployment, deployment into clots and/or dislodgment due to large clot burdens.

   - Filter fracture is a known complication of vena cava filters. There have been reports of embolization of vena cava filter fragments resulting in retrieval of the fragment using endovascular and/or surgical techniques.

- 1 -

> Most cases of filter fracture, however, have been reported without any adverse clinical sequelae.
>
> - Perforation or other acute or chronic damage of the IVC wall.
>
> * * *
>
> **All of the above complications have been associated with serious adverse events such as medical intervention and/or death. There have been reports of complications, including death, associated with the use of vena cava filters in morbidly obese patients. The risk/benefit ratio of any of these complications should be weighed against the inherent risk/benefit ratio for a patient who is at risk of pulmonary embolism without intervention.**

(Ex. B, G2 IFU.)

6. Plaintiff's expert, Dr. Derek Muehrcke, acknowledges that all IVC filters are known to have potential complications, including filter fracture, migration, tilt, and perforation. (Ex. D, July 24, 2017 Dr. Derek Muehrcke Deposition Transcript ("Muehrcke Dep. Tr.") at 55:22 to 57:9.)

7. Dr. Muehrcke testified that "[e]very filter can have a complication;" therefore, it would be "unrealistic" for a physician implanting a Bard IVC filter to expect that the filter would never migrate, tilt, perforate, or fracture. (Ex. D, Muehrcke Dep. Tr. at 102:16 to 103:2.)

8. Dr. D'Ayala was well aware of the risks associated with IVC filters, including the risks of fracture, movement, migration, embolization, and perforation when he implanted the Filter. (Ex. C, D'Ayala Dep. Tr. at 93:10 to 95:5.)

9. Dr. D'Ayala was aware of the risk of fracture associated with the Filter and took this risk into consideration when weighing the risks and benefits of implanting the Filter in Ms. Booker. (Ex. C, D'Ayala Dep. Tr. at 95:1-9.)

10. Dr. D'Ayala does not recall specific discussions with any Bard sales representatives regarding the Filter. (Ex. C, D'Ayala Dep. Tr. at 114:8-15.)

11. Although Dr. D'Ayala testified on occasion that he would have "wanted to know" certain alleged factual information presented by Plaintiff's counsel, he admitted that it would be "[d]ifficult to say with certainty" whether the information he was shown

- 2 -

1  would have changed his prescribing decision, and that it "would depend upon what other
2  filters we had at the time and what their problems would have been." (Ex. C, D'Ayala
3  Dep. Tr. at 63:22-25.)

4     12.   Dr. D'Ayala testified that "you have to have a way of treating these difficult
5  patients. So some filter has to be used. And it becomes a matter of deciding which filter is
6  best, so to speak. And sometimes that's not entirely clear." (Ex. C, D'Ayala Dep. Tr. at
7  70:21-25.)

8     13.   Dr. D'Ayala testified that the information that Plaintiff's counsel showed
9  him was not peer-reviewed or reliable information, and that it is important to have
10 complete and reliable information when deciding whether or not he would have prescribed
11 the Filter. (Ex. C, D'Ayala Dep. Tr. at 121:12 to 122:1.)

12    14.   Dr. D'Ayala does not rely on information contained in a medical device
13 manufacturer's internal documents, or their preliminary or internal investigations, when
14 deciding which IVC filter to use because such incomplete information is unreliable,
15 misleading, and could negatively impact his practice. (Ex. C, D'Ayala Dep. Tr. at 106:7 to
16 107:7.)

17    15.   Dr. D'Ayala relies on reliable information from device manufacturers as
18 well as his experience, the experience of his colleagues, the FDA, and the applicable
19 medical literature when deciding which IVC filter to use. (Ex. C, D'Ayala Dep. Tr. at
20 105:12 to 106:7.)

21    16.   Dr. D'Ayala discussed with Ms. Booker the risks and benefits of IVC filter
22 placement, as well as the possible future percutaneous procedure to retrieve the IVC filter,
23 and then obtained her informed consent before placing the Filter. (Ex. C, D'Ayala
24 Dep. Tr. at 96:17 to 98:6.)

25    17.   It was not Dr. D'Ayala's practice in 2007 to provide Plaintiff with any
26 written materials about the Filter or the procedure or to give her a copy of the IFU. (Ex. C,
27 D'Ayala Dep. Tr. at 98:8-15.)

28

18. Although she experienced a number of medical issues during the years after placement of the Filter, Ms. Booker did not develop any symptoms or complications relating to the Filter until after she moved to Georgia in October 2010. (Ex. E, February 20, 2017 Plaintiff Sherr-una Booker Deposition Transcript, ("Booker Dep. Tr.") at 90:25 to 91:5; 163:5-12.)

19. Ms. Booker does not attribute any of those symptoms to the Filter until sometime between April to July of 2014. (Ex. A, PFS at § 11.13(b); Ex. E, Booker Dep. Tr., at 218:24 to 223:13.)

20. On June 26, 2014, while Ms. Booker was hospitalized for right lower quadrant pain, REDACTED. (Ex. F, Selected Plaintiff Medical Records, at BOOKERS_GWIMC_MDR01365-1366; BOOKERS_GWIMC_MDR01379-1381.)

21. Ms. Booker was referred through the ER to Dr. Brandon Kang, an interventional radiologist, for further readings and possible Filter removal. REDACTED (Ex. F, Selected Plaintiff Medical Records, at BOOKERS_GWIMC_MDR01355-1356.)

22. On July 23, 2014, Ms. Booker underwent REDACTED. (Ex. F, Selected Plaintiff Medical Records, at BOOKERS_GWIMC_MDR00724-726.)

23. Dr. Kang was unable to REDACTED. (*Id.*)

24. Dr. Kang REDACTED

- 4 -

1    REDACTED. (Ex. F, Selected Plaintiff
2    Medical Records, at BOOKERS_GWIMC_MDR00724-726; BOOKERS_GWIMC_
3    MDR00719.)

4    25.    REDACTED
5    REDACTED (Ex. F, Selected Plaintiff Medical Records, at BOOKERS_
6    GWIMC_MDR00810-811; Ex. G, March 22, 2017 Dr. Salil Patel Deposition Transcript
7    ("Patel Dep. Tr.") at 104:14 to 105:4; Ex. H, June 20, 2017 Dr. Richard Harvey
8    Deposition Transcript ("Harvey Dep. Tr.") at 91:1-11.)

9    26.    On July 28, 2014, Ms. Booker REDACTED
10   REDACTED
11   REDACTED. (Ex. F, Selected Plaintiff Medical Records, at BOOKERS_
12   GWIMC_MDR00447-449.)

13   27.    REDACTED
14   REDACTED (Ex. F, Selected Plaintiff
15   Medical Records, at BOOKERS_GWIMC_MDR00447-449.)

16   28.    REDACTED, and no doctor
17   has attributed any abdominal pain that Ms. Booker has allegedly experienced to the strut
18   that remains embedded in the wall of her IVC. (Ex. E, Booker Dep. Tr. at 202:8 to 203:4.)

19   29.    Plaintiff does not remember receiving any written information or brochure
20   regarding her IVC filter. (Ex. E, Booker Dep. Tr. at 162:11-19.)

21   30.    Plaintiff has never spoken to anyone at Bard. (Ex. E, Booker Dep. Tr. at
22   251:20-24.)

23   31.    Plaintiff did not know that Bard was the manufacturer of her IVC filter until
24   after she contacted her lawyer about her potential legal claim. (Ex. E, Booker Dep. Tr. at
25   166:10-12.)

26   32.    There is no evidence establishing that the Filter deviated from Bard
27   manufacturing specifications for other G2 Filters in its lot or deviated from its design
28   specifications.

33. Plaintiff's engineering expert, Dr. McMeeking, stated that he does not know how Bard IVC Filters look coming off of the manufacturing line. (Ex. I, April 22, 2014 Robert McMeeking Deposition Transcript ("McMeeking Dep. Tr.") at 146:15 to 147:4; 268:25 to 269:3.)

34. Plaintiff's materials science expert, Dr. Ritchie, testified that he is not familiar with the manufacturing process utilized by Bard to make the Filter "in a detailed sense," acknowledging that "I don't have a great recall of what exactly I read [regarding manufacturing specifications for Bard filters]." (Ex. J, May 8, 2014 Dr. Robert Ritchie Deposition Transcript ("Ritchie Dep. Tr.") at 65:13 to 66:6.)

35. Moreover, Plaintiff's experts have examined the Filter and have failed to identify how, if at all, it varied from other G2 filters coming off the line or deviated from its design specifications. While Dr. Ritchie observed possible indications of a surface defect on the Filter that possibly initiated a fracture, he testified "I'm not absolutely certain that it's there, but inclusions are not uncommon in these materials, and generally they initiate cracks. And without cutting that out precisely, you can't be certain." (Ex. K, August 4, 2017, Dr. Robert Ritchie Deposition Transcript ("Ritchie Dep. Tr. II") at 75:14 to 76:1; 81:17-22.)

36. The Filter was cleared by the FDA for permanent use on August 29, 2005, and for retrievable use on January 15, 2008 through the 510(k) process outlined in the Food, Drug, and Cosmetic Act. (Ex. L, August 29, 2005 FDA Clearance Letter;[1] Ex. M, January 15, 2008 FDA Clearance Letter.[2]).

---

[1] Available at http://www.accessdata.fda.gov/cdrh_docs/pdf5/K050558.pdf, last accessed September 15, 2014.

[2] Available at http://www.accessdata.fda.gov/cdrh_docs/pdf7/K073090.pdf, last accessed September 15, 2014.

RESPECTFULLY SUBMITTED this 7th day of September, 2017.

s/Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

James R. Condo (#005867)
Amanda Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

- 7 -

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of September, 2017, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

/s/Richard B. North, Jr.
Richard B. North, Jr.