**Issued by the**
**UNITED STATES DISTRICT COURT**
DISTRICT OF ARIZONA

# SUBPOENA AND SUBPOENA *DUCAS TECUM* IN A CIVIL CASE

IN RE BARD IVC FILTERS PRODUCTS LIABILITY LITIGATION **MDL DOCKET # 15-2641**

THIS DOCUMENT RELATES TO :

EVAN HULICK,
C.A. No: CV-17-3178-PHX-DGC

---

**EVAN HULICK,**

Plaintiff,

v.

**C.R. BARD INCORPORATED**, et al.

Defendants.

---

To:   Westchester County Medical Center          Romeo Mateo, M.D.
      Valhalla New York 10595                    WCMC Valhalla, New York 10595

**YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents below and appear for deposition as noticed, to wit::

(1) Any records or documents of Westchester County Medical Center (WCMC) concerning an operative procedure upon Evan Hulick on January 2nd, 2016 for the placement of a Denali IVC filter and the removal of said IVC filter on September 22nd, 2016, MR#25931, Pt# 93514990, all to be certified

(2) The actual recovery cone retrieval system referred to in the operative report, a copy of which is attached;

(3) An exemplar cone retrieval system as used in said operative procedure

(4) An exemplar snare retrieval system routinely used by WCMC

(5) The actual Denali IVC removed from Evan Hulick

(6) An exemplar Denali IVC as referred to in the attached operative report

**Returnable to:**
Shafran & Rock, PLLC.
730 Broadway
Kingston, New York 12401

Deposition of Romeo Mateo to take place on the **28th day of November 2017 commencing at 11:00 A.M.** at 44 Church Street, White Plains, New York 10601. Telephone number for directions 914 448 7000.

An organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which each person will testify. Federal Rules of Civil Procedure, 30(b)(6).

**Issuing Officer's Signature and Title (Indicate if Attorney for Plaintiff or Defendant)**

September 19th 2017

**Issuing Officer's Name, Address and Phone Number**
Howard E. Shafran, Esq. (3423)
Shafran & Rock, PLLC
44 Church Street
White Plains, New York 10601

HOWARD E. SHAFRAN
Attorney for Evan Hulick
(NY Bar #2004091)

The following provisions of Fed. Rules Civ P. 45 are attached - Rule 45( c ) relating to the place of compliance; Rule 45(d) relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g) relating to your duty to respond to this subpoena and the potential consequences of not doing so.

**Copy sent to:**

Alfred P. Vigorito
Vigorito, Barker, Porter & Patterson, LLP
115 E. Stevens Avenue
Suite 206
Valhalla, NY 10595

Daniel K. Winters
Reed Smith LLP (NYC)
599 Lexington Avenue
New York, NY 10022

Richard B. North, Jr
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street
Suite 1700
Atlanta, GA 30363

William J O'Kane , Jr
Archer & Greiner, PC
One Centennial Square
33 E/ Euclid Avenue
Haddonfield, NJ 08033

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or
  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## WESTCHESTER MEDICAL CENTER
WORLD-CLASS MEDICINE THAT'S NOT A WORLD AWAY.®
VALHALLA • NEW YORK • 10595

Patient HULICK, EVAN
Attending
Birth Date 02/02/1991   Sex M
MR # 000000025931   Pt # 93514990
Rm/Bed
Adm Date 09/22/2016

Operative Report

Sep 27, 2016

Operative Report

```
NAME:          HULICK, EVAN
MR#:           25931
ADMIT DATE:    09/22/2016
SURGERY DATE:  09/22/2016
DISCHARGE DATE:
SURGEON:
BILLING NUMBER: 93514990
```

DATE OF OPERATION:  September 22, 2016.

PREOPERATIVE DIAGNOSES:
1. History of deep venous thrombosis of the left popliteal vein.
2. History of deep venous thrombosis of the right common femoral vein.
3. History of multiple traumas in December 2015.
4. History of inferior vena cava filter placement.

POSTOPERATIVE DIAGNOSES:
1. History of deep venous thrombosis of the left popliteal vein.
2. History of deep venous thrombosis of the right common femoral vein.
3. History of multiple traumas in December 2015.
4. History of inferior vena cava filter placement.

PROCEDURES PERFORMED:
1. Ultrasound-guided catheterization of the right internal jugular vein.
2. Venogram of the superior vena cava and inferior vena cava.
3. Percutaneous removal of the inferior vena cava filter using the Recovery Cone technique.

SURGEON:  Romeo Mateo, M.D.

ASSISTANT:  Dr. Ansab Haider.

ANESTHESIA:  General endotracheal anesthesia.

HISTORY AND INDICATIONS:  The patient is a 25-year-old male with history of obesity as well as a previous history of a deep venous thrombus in his left popliteal artery for which he was being treated with anticoagulation. He was then involved in a head-on collision motor vehicle accident on December 15th for which he suffered numerous injuries in multiple areas of his body and requiring long hospital stay at the Westchester Medical Center. During that hospitalization, he had a catheter related deep venous thrombus in the right common femoral vein, which was partially occlusive. Because of this, he was placed on anticoagulation; however, because of his need for multiple procedures, he underwent placement of a Denali IVC filter on January 2, 2016 by Dr. Mateo. Remarkably, he survived despite having numerous operations and having a very rocky postoperative stay. He was seen in the office and an elective removal of the filter was recommended because he was fully recovered and moving

# WESTCHESTER MEDICAL CENTER
### WORLD-CLASS MEDICINE THAT'S NOT A WORLD AWAY.®
### VALHALLA • NEW YORK • 10595

| | | | |
|---|---|---|---|
| Patient HULICK, EVAN | Birth Date 02/02/1991 | Sex M | Rm/Bed |
| Attending | MR # 000000025931 | Pt # 93514990 | Adm Date 09/22/2016 |

around much better.

DESCRIPTION OF PROCEDURE: The patient was brought into the operating room suite and placed on the table in supine position. After general endotracheal anesthesia was given, an ultrasound probe was used to evaluate his internal jugular vein, which showed it was wide open with no evidence of filling defects. The procedure was done in the hybrid operating room suite #14. The both groin areas and the abdomen and chest as well as the right neck area was prepped and draped in the usual sterile fashion. We then used the micropuncture technique to access the right internal jugular vein. As we passed the J-wire after placing the micropuncture catheter, we noted that the wire may have gone through one of the side branches. Therefore, after advancing the sheath, we pulled back on the wire and then advanced it into the main lumen of the internal jugular vein and superior vena cava. Afterwards, we were able to advance the 11-French sheath further inwards without difficulty. A repeat venogram of the superior vena cava showed no evidence of extravasation and good flow of contrast into the right side of the heart. Through the 11-French sheath, we then passed down a Glidewire together with a catheter and this easily went into the inferior vena cava. We passed the catheter inferior to the level of the filter and shot a venogram of the inferior vena cava showing good flow through the filter, which had only a slight tilt to it. There were no filling defects. We then carefully positioned the Glidewire and catheter, so that the top of the filter was adjacent to and parallel to the catheter and we advanced the catheter into the right iliac vein. We then placed an Amplatz wire through the catheter and removed the catheter. Over the Amplatz wire, we then advanced the 10-French catheter that came with the Recovery Cone retrieval system. Once we passed the 11-French sheath, we followed the radiopaque marker of the 10-French sheath down to the level of 2 cm just superior to the tip of the filter. We then removed the dilator. We loaded up the Recovery Cone onto the wire and inserted it into the 10-French catheter. The Recovery Cone then went down fairly easily and upon opening of the Recovery Cone just superior to the filter, we were able to engage the filter at the first shot. There was good coaxial alignment of the Recovery Cone onto the top of the filter. So, the Recovery Cone was placed on top of the filter and the 10-French catheter was advanced in order to close up the Recovery Cone, which then was able to be easily grab the filter. We then pulled on the filter and the filter came out easily and entered the 10-French Recovery Cone catheter. After going into the 10 Frendh catheter completely for about 5 cm., the filter itself would not go any further and therefore, a decision was made to remove the filter, which was already totally inside the 10-French catheter, in one assembly together with !0 french catheter and wire at the same time. We followed up the filter and the
catheter as it made its way up towards the superior vena cava and at that point, we went ahead and we removed the catheter through the 11 French sheath. We
inspected it and the filter was completely inside the catheter and we
removed it. The filter itself had a fair amount of fibrin as well as some scar tissue within the filter legs which probably explained why the filter itself was not able to be pulled out through the catheter. It was also noted at
that point also that the radiopaque band that was normally at the tip of the 10-French catheter was no longer seen after removal of the catheter and the filter. Therefore, under fluoroscopy, one can see that the radiopaque band had come off and had migrated and could now be seen in the



**WESTCHESTER MEDICAL CENTER**
WORLD-CLASS MEDICINE THAT'S NOT A WORLD AWAY.®
VALHALLA • NEW YORK • 10595

| | | |
|---|---|---|
| Patient HULICK, EVAN | Birth Date 02/02/1991  Sex M | Rm/Bed |
| Attending | MR # 000000025931   Pt # 93514990 | Adm Date 09/22/2016 |

area of the right ventricle. At this point, emergent intraoperative consultation from Dr. Malekan of cardiothoracic surgery as well as Dr. McCabe of interventional radiology was obtained. Both of them came into the OR room #14 and evaluated the images under fluoroscopy. Both came to the recommendation that no invasive attempts of removing this very small metallic band should be done at that point because the potential risk would not justify the intended potential benefits. Therefore, at this point, we went ahead and went back down to the inferior vena cava with 5-French catheter and shot a venogram of the inferior vena cava in AP and lateral views showing good filling of the inferior vena cava. There was no evidence of dissection or extravasation and no evidence of any filling defects. We shot a final venogram of the internal jugular vein, brachiocephalic vein and superior vena cava showing an intact superior vena cava with contrast flowing into the right ventricle. At the end of the case also prior to removing the sheath, we obtained a formal portable chest x-ray showing no obvious pneumothorax. The radiopaque metal band is still to be seen in the area of the right ventricle on the plain chest x-ray. The 11-French sheath was removed. Manual pressure was held in the right neck area for several minutes with satisfactory hemostasis. The subcutaneous tissue was closed with a single 4-0 Vicryl stitch and Steri-Strips were placed across the incision in the neck followed by a small dressing and a Tegaderm. The patient tolerated the procedure well, was able to extubate well and was taken to the recovery area in stable condition.

DICT: ROMEO MATEO, M.D.
DD: 09/26/16 09 40 PM
DT:09/27/2016 01:55:41/HN
Job#: 329725

================== END OF DOCUMENT / CHANGE LOG FOLLOWS ==================

Elec. Signed By
MATEO, ROMEO #805630
on 10/01/2016 10:56 ET

Page created: Wednesday, October 5, 2016 9:51 AM For: XRBM

## RadiologyReport -(PID/MRN:0025931 - Accession #:6380956)

| | | | |
|---|---|---|---|
| Patient Name: | EVAN HULICK | | |
| Patient ID: | 0025931 | DOB: | 2/2/1991 |
| Accession Number: | 6380956 | Age/Gender: | 25 years 7 months/Male |
| Study Date: | 9/23/2016 10:46:51 AM | Exam Status: | Final |
| PCP Toggle: | ROMEO MATEO, MD Contact Info +/- | Site: | Westchester Medical Center |
| Referrer 1: | NIU ZHANG | Exam: | CHEST PA AND LATERAL |
| Referrer 2: | | | |
| Allergies: | No Known Allergies | Reason 1: | |
| | | Reason 2: | |
| History: | 9/23/2016 12:00 AM IVC FILTER REMOVAL----METAL IN LEFT LOWER LUNG----MON:N----NO DATA FOR THIS MODALITY----ISOL: N PAGER:-1111-SVC:SRGEN---IODINE ALRGY:N--O2:N-VENT:N-----CONTRAIND:N (N. MOTTA) | Additional Exam Indicators: Alerts: | ROUTINE |
| Comments: | | | |

Scanned Documents:
Fuji Report:

HISTORY: IVC filter removal. Metal in the left lower lung.

TECHNIQUE: Chest PA and lateral

COMPARISON: 9/22/2016.

FINDINGS:
Small circular radiopaque foreign body in the posterior aspect of the left lower lobe as seen on the lateral projection.
Low lung volumes which results in accentuation of bronchovascular markings and distortion of mediastinal structures. There is left greater than right basilar subsegmental atelectasis, which was seen on prior CT exam. There is increased opacity noted in the right upper lobe, which could represent atelectasis and/or infiltrate. There is also a linear radio-opaque density in the left upper abdomen similar to previous study, correlate with prior surgical history. There is a kyphosis of the thoracic spine noted.

IMPRESSION:
Circular radiopaque foreign body in the region of the left lower lobe, correlate with CT study dated 9/22/2016 and clinical history.
Left greater than right basilar atelectasis.
There is increased opacity noted in the right upper lobe, which could

represent atelectasis and/or infiltrate.

Findings were discussed with Dr. Alfadda at approximately 11:45 AM on 9/23/2016.

Resident Radiologist:  Yachao Zhang MD Resident Radiologist
Report Electronically Signed by:  Perry Gerard MD
Report Electronically Signed on:  9/23/2016 3:33 PM
Transcribed Date:  9/23/2016 10:44 AM

Print Report

## RadiologyReport -(PID/MRN:0025931 - Accession #:6380718)

| | | | |
|---|---|---|---|
| Patient Name: | EVAN HULICK | | |
| Patient ID: | 0025931 | DOB: | 2/2/1991 |
| Accession Number: | 6380718 | Age/Gender: | 25 years 7 months/Male |
| Study Date: | 9/22/2016 8:25:52 PM | Exam Status: | Final |
| PCP Toggle: | ROMEO MATEO, MD Contact Info +/- | Site: | Westchester Medical Center |
| Referrer 1: | ANSAB HAIDER, MD | Exam: | CT THORAX C- |
| Referrer 2: | | | |
| Allergies: | No Known Allergies | Reason 1: | |
| | | Reason 2: | |
| History: | | Additional Exam Indicators: | STAT |
| | | Alerts: | |
| Comments: | 9/22/2016 12:00 AM IVC FILTER REMOVAL----RETAINED FOREIGN BODY--CARDIAC CT--MON:N----NO DATA FOR THIS MODALITY----ISOL:N PAGER:-1104-SVC:SRGEN---IODINE ALRGY:N--O2:N-VENT:N-----CONTRAIND:N-GLUCOPH:N (S. Osman)  9/22/2016 6:47 PM PT HAS 20G AS PER HANNA PTS NURSE (M. Williams)  9/22/2016 5:15 PM paged #1104 twice in an attempt to discuss and clarivy study. no response to pages. (E. Charrow PA) Less | | |

Scanned Documents:
Fuji Report:

CLINICAL INDICATION: IVC filter removal.

CT of the thorax was performed without intravenous contrast.

Correlation is made to radiograph obtained earlier the same day.

FINDINGS:

Evaluation of the vascular and soft tissue structures is limited without the use of intravenous contrast.

The heart is enlarged. No pericardial effusion. Enlargement of the pulmonary artery. There is a persistent left superior vena cava. No

Case 2:15-md-02641-DGC   Document 7734   Filed 09/20/17   Page 11 of 11

Page 2 of 2

significant mediastinal or axillary lymphadenopathy. Hila are not well assessed given the lack of intravenous contrast.

Bilateral subsegmental airspace disease, likely atelectasis given the low lung volumes and postoperative period. Probable underlying congestive changes. No pleural effusions. Central airways are patent. Radiodense material in the left basilar segment correlate with surgical history.

Evaluation of the upper abdomen is highly suboptimal given the increased noise. Excreted contrast material within severely hydronephrotic right kidney and a mildly hydronephrotic left kidney. Lobular contour of both kidneys likely correlates with underlying scarring. Excreted contrast material into the gallbladder.

Heterotopic dystrophic calcification in the anterior upper abdomen and left thoracic chest wall likely related to previous surgery. Surgical clips overlying the left scapula. Increased thoracic kyphosis with diffuse increase density of the osseous structures maybe related to renal osteodystrophy. Correlate with renal function.

IMPRESSION:
Low lung volumes. Cardiomegaly with trace pericardial effusion. Pulmonary hypertension.

Bilateral posterior subsegmental airspace disease likely atelectasis due to low lung volumes and postoperative period.

Bilateral hydronephrosis with probable underlying renal scarring.

FINDINGS which suggest renal osteodystrophy.

Report Electronically Signed by: Lesli LeCompte MD
Report Electronically Signed on: 9/22/2016 10:50 PM
Transcribed Date: 9/22/2016 10:39 PM

Print Report