# REDACTED DOCUMENT RELATING TO DOCKET 6679

# EXHIBIT B

## CONSULTING AGREEMENT

This agreement (the "Agreement") is entered into as of July, 31st 2008 (the "Effective Date") by and between Bard Peripheral Vascular, Inc., having an address at 1625 West Third Street, Tempe, AZ 85281 ("Bard") and Interventional Consultants LLC, having an address at 1520 West Nelson Street, Chicago, IL 60657 ("Consultant").

Consultant and Bard agree as follows:

1. **Services.** Bard hereby engages Consultant and Consultant hereby accepts Bard's engagement to provide the consulting services described in Exhibit A attached hereto and made a part hereof (the "Services"). Consultant shall perform the Services in a diligent, workmanlike and professional manner in accordance with industry standards. Bard or any affiliate of Bard may direct Consultant in the performance of the Services.

2. **Compensation.** As full and complete compensation for the performance of the Services and in consideration of the other obligations, representations and warranties made by Consultant hereunder, Bard agrees to pay Consultant in accordance with Exhibit B attached hereto and made a part hereof. The parties agree that the compensation paid under this Agreement (i) has not taken into account the volume or value of referrals or business generated between the parties, (ii) is not being given or accepted in exchange for an agreement, explicit or implicit, to purchase, prescribe, recommend, or otherwise influence the purchase of Bard's products and (iii) constitutes fair market value for the services rendered.

Except as otherwise set forth in Exhibit B, each month during the term of this Agreement Consultant agrees to send Bard an invoice for Services performed in the previous month. Within thirty (30) days of receipt of a correct invoice, Bard shall pay Consultant for the completed Services.

3. **Term.** Unless terminated earlier in accordance with Section 13, this Agreement shall be effective from the Effective Date until the earlier of (i) the completion of the Services or (ii) twelve (12) months from the Effective Date.

4. **Records.** Consultant shall keep accurate and complete records relating to the Services. All such records, whether paper or electronic, shall be the sole property of Bard and subject to Bard's control and review at any time. Promptly upon the termination or expiration of this Agreement, all such records, whether they were prepared by Consultant solely or jointly with others, all Confidential Information (as defined below), any other property of Bard and any materials provided to Consultant by Bard, shall be turned over by Consultant to Bard.

5. **Representations.** Consultant represents, warrants and covenants that (i) Consultant is free to enter into this Agreement and that Consultant is not, and will not

become, during the term of this Agreement, subject to any restrictions, including through any employment or other arrangement, which might prohibit or limit Consultant from performing the Services or which might enable another person or entity to claim any rights in or to technology, data or information developed (whether developed alone or with others) pursuant to this Agreement; and (ii) Consultant will comply with all applicable laws, rules and regulations in performing Consultant's obligations hereunder.

6. **Debarment.** Consultant certifies that Consultant and Consultant's directors, officers, agents, subcontractors and employees: (i) have not been and are not currently excluded pursuant to 42 U.S.C. §1320a-7 or similar state exclusion authority, debarred, or otherwise ineligible to participate in any Federal health care program as that term is defined in 42 U.S.C. §1320a-7b(f) or comparable state programs; (ii) have not been convicted of a criminal offense related to the provision of health care items or services or any other offense that may lead to exclusion under 42 U.S.C. §1320a-7 or similar state exclusion authority; or (iii) to Consultant's knowledge are not under investigation or otherwise aware of any circumstances which may result in being excluded from participation in any Federal or state health care program. Consultant maintains an ongoing obligation to ensure the accuracy of this certification. If any change in circumstance occurs to make this certification inaccurate, Consultant must notify Bard in writing immediately and Bard shall have the right to immediately terminate this Agreement if the above certification is or becomes untrue.

7. **Anti-kickback Statute; Use of Other Products.** Bard and Consultant hereby agree that, during the term of this Agreement and in connection with the Services, neither party will knowingly or willfully engage in any activity, or request or suggest to the other party that such other party engage in any activity, which would violate any provision of 42 U.S.C. §1320a-7b(b), as interpreted by 42 C.F.R. Prt. 1000, et seq., as amended (hereinafter collectively referred to as the "Anti-kickback Statute"). Bard hereby expressly acknowledges and agrees that nothing contained herein is intended to prohibit or restrict, nor will any provision hereof be construed in a manner as prohibiting or restricting, Consultant's right to utilize, in Consultant's sole discretion, any product manufactured or service provided by any third party.

8. **Confidential Information.** Consultant acknowledges that information or materials of Bard, its affiliates or third parties will be made available to Consultant or developed by Consultant in connection with the performance of the Services ("Confidential Information"). During the term of this Agreement and thereafter, Consultant shall not: (i) disclose to any third party any of the Confidential Information; (ii) permit any third party to have access to the Confidential Information; or (iii) use the Confidential Information for any purpose other than in connection with Consultant's performance of the Services. Notwithstanding the foregoing (1) the term "Confidential Information" shall not include any information or material that: (a) is or becomes available in the public domain through no fault of, or act or failure to act on the part of Consultant; (b) is rightfully in Consultant's possession at the time of disclosure as evidenced by Consultant's written records maintained in the ordinary course of business; or (c) is obtained by Consultant from any third party that is lawfully in possession of such Confidential Information and not in violation of any contractual or

legal obligation with respect to such Confidential Information. Consultant shall not disclose to any third party Bard's interest in the subject matter of this Agreement, the subject matter of any Services or any results obtained by or on behalf of Bard. Consultant agrees to return all Confidential Information at the conclusion of the performance of the Services or at an earlier date at the request of Bard.

9. **Ownership.** Consultant agrees that all data, research results, deliverables, work product, inventions, discoveries and other information relating to the Services shall be the property of Bard and Consultant agrees to execute any documents or undertake any further actions requested by Bard to protect its rights thereto.

10. **Patient Information.** Consultant will be responsible for obtaining all necessary approvals from those locations or facilities at which the Services will be performed as well as verifying that appropriate patient informed consents and authorizations have been received. Consultant agrees to comply with applicable U.S. state and federal laws and regulations relating to the security, protection and privacy of individually identifiable health care information, including without limitation, the U.S. Federal Health Insurance Portability and Accountability Act of 1996 and regulations promulgated thereunder, as they may be amended from time-to-time.

11. **Independent Contractor; Code of Conduct.** Consultant and any employee or agent of Consultant shall be an independent contractor without the capacity to bind Bard, and shall make no representation to the contrary. Consultant shall be responsible to Bard for all Services performed by Consultant's employees, agents and subcontractors. Consultant has reviewed Bard's Business Ethics Policy (available at www.crbard.com/about/governance/principles/ethics/index.cfm) and agrees to act in all material respects in accordance with such policy.

12. **Indemnification.** Consultant shall defend, indemnify and hold Bard and its employees, directors, officers, affiliates and agents harmless from and against any and all claims, losses, damages, liabilities, judgments, awards and costs whatsoever, including reasonable attorneys' fees, arising out of or resulting from any breach of Consultant's representations, warranties or obligations hereunder.

13. **Termination.** Except as provided in Section 6, Bard may terminate this Agreement for any reason upon fifteen (15) days' written notice to Consultant, in which case the fees payable hereunder shall be pro-rated on a performance basis. In addition to any other remedies available to Bard, if at the time of termination compensation previously paid to Consultant exceeds the amount owing, Consultant shall promptly refund to Bard any excess paid. Sections 7, 8, 9, 10, 11, 12 and 13 of this Agreement shall survive the termination or expiration of this Agreement.

14. **Assignment and Subcontracting.** This Agreement may not be assigned by Consultant, including by the operation of law or otherwise. Subject to the foregoing, this Agreement is binding upon and shall inure to the benefit of Consultant and Bard

and its successors in interest. Consultant shall not subcontract the performance of the Services or any portion thereof to a third party without the prior written consent of Bard.

15. **Miscellaneous.** This Agreement and the Exhibits attached hereto constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all prior agreements between Bard and Consultant with respect to the matters addressed herein and can only be modified by a written amendment signed by Consultant and Bard. Notwithstanding the foregoing, the obligations of Consultant under any existing nondisclosure or confidentiality agreements with Bard shall continue. In the event of any inconsistency between the terms of this Agreement and the terms of any Exhibit attached hereto, the terms of this Agreement shall govern and prevail. This Agreement shall be governed by and construed in accordance with the law of the state of New York.

**IN WITNESS WHEREOF**, Bard and Consultant have executed this Agreement as of the date first above written.

| INTERVENTIONAL CONSULTANTS LLC | BARD PERIPHERAL VASCULAR, INC. |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Print Name: Scott Resnick | Jim Beasley |
| Print Title: Managing Partner | President |

## EXHIBIT A

## DESCRIPTION OF THE SERVICES

ESTIMATED BUDGET & PROPOSED CONSULTING SERVICES



  Time and Place. Services shall be rendered by Consultant as Bard may reasonably request and the parties hereby agree that the nature, extent, duration, time and place of such Services shall be agreed by the parties in advance, taking into account Consultant's other professional commitments.

  The estimates set forth in this Exhibit A are not commitments on behalf of Bard but merely estimates of currently anticipated Services that Bard may require from Consultant. Bard reserves the right to modify the estimates set forth in Exhibit A, including the right to remove, add or revise any or all of the items set forth in Exhibit A.

# EXHIBIT B

## COMPENSATION/PAYMENT SCHEDULE



## **CONSULTING AGREEMENT**

This agreement (the "Agreement") is entered into as of February 7, 2012 (the "Effective Date") by and between Bard Peripheral Vascular, Inc., having an office address at 1415 West Third Street, Tempe, AZ 85281 ("Bard") and Interventional Consultants LLC having an address at 1520 West Nelson Street, Chicago, IL 60657 ("Consultant").

Consultant and Bard agree as follows:

1. **Services**. Bard hereby engages Consultant and Consultant hereby accepts Bard's engagement to provide the consulting services described in Exhibit A attached hereto and made a part hereof (the "Services"). Consultant shall perform the Services in a diligent, workmanlike and professional manner in accordance with industry standards. Bard or any affiliate of Bard may direct Consultant in the performance of the Services.

2. **Compensation**. As full and complete compensation for the performance of the Services and in consideration of the other obligations, representations and warranties made by Consultant hereunder, Bard agrees to pay Consultant in accordance with Exhibit B attached hereto and made a part hereof. The parties agree that the compensation paid under this Agreement (i) has not taken into account the volume or value of referrals or business generated between the parties, (ii) is not being given or accepted in exchange for an agreement, explicit or implicit, to purchase, prescribe, recommend, or otherwise influence the purchase of Bard's products and (iii) constitutes fair market value for the services rendered.

Except as otherwise set forth in Exhibit B, each month during the term of this Agreement Consultant agrees to send Bard an invoice for Services performed in the previous month. Within thirty (30) days of receipt of a correct invoice, Bard shall pay Consultant for the completed Services.

Bard reserves the right to disclose Consultant's name, license number and the compensation paid to Consultant hereunder, as well as any expenses paid for or reimbursed by Bard hereunder, to any third parties, including, without limitation, state or federal government agencies, in each case, as and to the extent determined by Bard in good faith to be required by applicable laws, rules or regulations. Bard shall not be liable for errors that may occur in any reporting, either by Bard or any such third party. Consultant agrees to provide Bard with any documentation or information necessary to make any such disclosure

3. **Term**. Unless terminated earlier in accordance with Section 12, this Agreement shall be effective from the Effective Date until the earlier of (i) the completion of the Services or (ii) twelve (12) months from the Effective Date.

4. **Records**. Consultant shall keep accurate and complete records relating to the Services. All such records, whether paper or electronic, shall be the sole property of Bard and subject to Bard's control and review at any time. Promptly upon the termination or expiration of this Agreement, all such records, whether they were prepared by Consultant solely or jointly with others, all Confidential Information (as defined below), any other property of Bard and any materials provided to Consultant by Bard, shall be turned over by Consultant to Bard.

5. **Representations**. Consultant represents, warrants and covenants that (i) Consultant is free to enter into this Agreement and that Consultant is not, and will not become, during the term of this Agreement, subject to any restrictions which might prohibit or limit Consultant from performing the Services or which might enable another person or entity to claim any rights in or to technology, data or information developed (whether developed alone or with others) pursuant to this Agreement; and (ii) Consultant will comply with all applicable laws, rules and regulations in performing Consultant's obligations hereunder.

6. **Debarment**. Consultant certifies that Consultant and Consultant's directors, officers, agents, subcontractors and employees: (i) have not been and are not currently excluded pursuant to 42 U.S.C. §1320a-7 or similar state exclusion authority, debarred, or otherwise ineligible to participate in any Federal health care program as that term is defined in 42 U.S.C. §1320a-7b(f) or comparable state programs; (ii) have not been convicted of a criminal offense related to the provision of health care items or services or any other offense that may lead to exclusion under 42 U.S.C. §1320a-7 or similar state exclusion authority; or (iii) to Consultant's knowledge are not under investigation or otherwise aware of any circumstances which may result in being excluded from participation in any Federal or state health care program. Consultant maintains an ongoing obligation to ensure the accuracy of this certification. If any change in circumstance occurs to make this certification inaccurate, Consultant must notify Bard in writing immediately and Bard shall have the right to immediately terminate this Agreement if the above certification is or becomes untrue.

7. **Anti-kickback Statute; Use of Other Products.** Bard and Consultant hereby agree that, during the term of this Agreement and in connection with the Services, neither party will knowingly or willfully engage in any activity, or request or suggest to the other party that such other party engage in any activity, which would violate any provision of 42 U.S.C. §1320a-7b(b), as interpreted by 42 C.F.R. Prt. 1000, et seq., as amended (hereinafter collectively referred to as the "Anti-kickback Statute"). Bard hereby expressly acknowledges and agrees that nothing contained herein is intended to prohibit or restrict, nor will any provision hereof be construed in a manner as prohibiting or restricting, Consultant's right to utilize, in Consultant's sole discretion, any product manufactured or service provided by any third party.

8. **Confidential Information**. Consultant acknowledges that information or materials of Bard, its affiliates or third parties will be made available to Consultant or developed by Consultant in connection with the performance of the Services

BPVHCPProductCollaborationConsultingAgmt(11 12 09).doc

2

("Confidential Information"). During the term of this Agreement and thereafter, Consultant shall not: (i) disclose to any third party any of the Confidential Information; (ii) permit any third party to have access to the Confidential Information; or (iii) use the Confidential Information for any purpose other than in connection with Consultant's performance of the Services. Notwithstanding the foregoing (1) the term "Confidential Information" shall not include any information or material that: (a) is or becomes available in the public domain through no fault of, or act or failure to act on the part of Consultant; (b) is rightfully in Consultant's possession at the time of disclosure as evidenced by Consultant's written records maintained in the ordinary course of business; or (c) is obtained by Consultant from any third party that is lawfully in possession of such Confidential Information and not in violation of any contractual or legal obligation with respect to such Confidential Information and (2) Consultant shall have the right to disclose Confidential Information to a subcontractor provided that (a) Bard has provided its written consent with respect to such subcontractor pursuant to Section 15 and (b) Consultant shall disclose only such Confidential Information as is necessary for subcontractor to perform its services.

Consultant shall not disclose to any third party Bard's interest in the subject matter of this Agreement, the subject matter of any Services or any results obtained by or on behalf of Bard.

Consultant acknowledges that remedies at law would be inadequate to protect Bard against any actual or threatened breach of this Section 8 by Consultant, and, without prejudice to any other rights and remedies otherwise available to Bard, Consultant agrees to the granting of injunctive relief in Bard's favor without proof of actual damages.

If Consultant is (i) requested in any judicial or administrative proceeding or by any governmental or regulatory authority to disclose any Confidential Information, Consultant shall give Bard prompt notice of such a request so that Bard may seek an appropriate protective order or waive compliance or (ii) compelled by a judicial or administrative proceeding or by any governmental or regulatory authority to disclose the Confidential Information, it will give Bard prompt notice of such event and will furnish only that portion that is legally required and will exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be afforded to the Confidential Information.

9. **Ownership**. Any Invention (as defined below) conceived or reduced to practice by Consultant, individually or jointly, (i) during the term of this Agreement, (ii) within one year after termination or expiration of this Agreement, if such Invention relates to a product, material or process related to the Services or (iii) which is based (in whole or in part) on or derived from Confidential Information, shall be promptly and fully disclosed to Bard and, whether or not so disclosed, shall become the property of Bard. For the purpose of this Agreement, "Inventions" shall mean any of the following that relate to the Services: inventions, discoveries, patent applications, patents, certificates of invention, trademarks, copyrightable subject matter, writings, improvements, ideas,

BPVHCPProductCollaborationConsultingAgmt(11 12 09).doc

designs, drawings, computer models, data, concepts, formulas, know how, trade secrets, test results, names, tradenames, tradedress and all materials or methods incorporating the foregoing.

Consultant warrants that (i) all Inventions are or will be original creations; and (ii) Consultant shall not misappropriate the intellectual property rights of a third party in connection with the performance of the Services.

Consultant will assist Bard, during the term of this Agreement and thereafter, in the procurement, maintenance, protection, assignment, and enforcement of Bard's rights with respect to Inventions. In addition, Consultant will, upon Bard's request, promptly deliver to Bard (without further consideration but at Bard's expense) executed assignments or other instruments and do such other acts as may be deemed necessary or desirable by Bard to protect Bard's worldwide rights with respect to any Inventions. It is understood that Consultant will take such action whenever Bard shall make such request whether during the term of this Agreement or thereafter.

10. **Independent Contractor**. Consultant's status shall be that of an independent contractor without the capacity to bind Bard. Neither Consultant nor any employee, agent or subcontractor of Consultant shall be considered an agent or employee of Bard. Without limiting the generality of the foregoing, Consultant shall have no authority to act on Bard's behalf or to commit Bard to any course of conduct, and shall make no representation to the contrary. Consultant shall be responsible for ensuring payment of all unemployment, social security, payroll, contributions and other taxes with respect to such employees, agents or subcontractors. Consultant shall be responsible to Bard for all Services performed by Consultant's employees, agents and subcontractors.

11. **Indemnification**. Consultant shall defend, indemnify and hold Bard and its employees, directors, officers, affiliates and agents harmless from and against any and all claims, losses, damages, liabilities, judgments, awards and costs whatsoever, including reasonable attorneys' fees and court costs and including without limitation bodily injury, death or property damages arising out of or resulting from any breach of Consultant's representations, warranties or obligations hereunder.

12. **Termination**. Bard shall have the right to terminate this Agreement for any reason upon thirty (30) days' written notice to Consultant, in which case the fees payable hereunder shall be pro-rated on a performance basis. Except as provided in Section 6, if either party is in breach of any of the terms of this Agreement, the other party shall have the right to terminate this Agreement upon ten (10) days' written notice to the defaulting party specifying such breach; provided, however, if said defaulting party cures the default within the ten (10) day period this Agreement shall continue in full force and effect. In addition to any other remedies available to Bard, if at the time of termination compensation previously paid to Consultant exceeds the amount owing, Consultant shall promptly refund to Bard any excess paid.

13. **Survival.** Sections 4, 7, 8, 9, 10, 11 and 12 of this Agreement shall survive the termination or expiration of this Agreement.

14. **Assignment and Subcontracting.** This Agreement may not be assigned by Consultant, including by the operation of law or otherwise. Subject to the foregoing, this Agreement is binding upon and shall inure to the benefit of Consultant and Bard and its successors in interest. Consultant shall not subcontract the performance of the Services or any portion thereof to a third party without the prior written consent of Bard.

15. **Waiver.** A waiver by either party of any term or condition of this Agreement in any instance shall not be deemed or construed to be a waiver of such term or condition for the future, or of any subsequent breach thereof. All rights, remedies, undertakings or obligations contained in this Agreement shall be cumulative and none of them shall be in limitation of any other right, remedy undertaking or obligation of either party.

16. **Notices.** Any notice required or permitted by the Agreement shall be in writing and shall be (i) delivered personally, effective on the date of delivery, (ii) sent via overnight delivery by a nationally recognized overnight courier to be effective the day following deposit, or (iii) sent by certified or registered mail, postage prepaid, return receipt requested, to be effective three (3) days after deposit. Notices shall be addressed to the party concerned at the address set forth in the preamble of this Agreement or at such other address as such party may subsequently designate by like notice from time to time.

Any notice given to Bard shall also be given to C. R. Bard, Inc. 730 Central Avenue, Murray Hill, NJ 07974, Attn: General Counsel.

17. **Entire Agreement; Inconsistencies.** This Agreement and the Exhibits attached hereto constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all prior agreements between Bard and Consultant with respect to the matters addressed herein and can only be modified by a written amendment signed by Consultant and Bard. Notwithstanding the foregoing, the obligations of Consultant under any existing nondisclosure or confidentiality agreements with Bard shall continue. In the event of any inconsistency between the terms of this Agreement and the terms of any Exhibit attached hereto, the terms of this Agreement shall govern and prevail.

18. **No Third Party Beneficiaries.** Nothing herein, express or implied, is intended to or shall confer upon any other person or entity any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

19. **Code of Conduct.** Consultant has reviewed Bard's Business Ethics Policy (available at http://www.crbard.com/uploadedFiles/CorpSite/About_Bard/I-1.pdf) and agrees to act in all material respects in accordance with such policy.

20. **Governing Law.** This Agreement shall be governed by and construed in accordance with the law of the state of New York.

21. **Severance.** If a court of competent jurisdiction determines that any portion of this Agreement is unenforceable, then (i) that portion shall be deemed to be amended to reflect the original intent of the parties to the extent permitted by law and, (ii) it shall not affect the enforceability of the remainder of this Agreement.

22. **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, Bard and Consultant have executed this Agreement as of the date first above written.

| INTERVENTIONAL CONSULTANTS, LLC | BARD PERIPHERAL VASCULAR, INC. |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Print Name: Scott Resnick | Print Name: |
| Print Title: Interventional Consultants, LLC Managing Partner | Print Title: |

License Numbers and States in which Licensed:

_____

_____

# EXHIBIT A

## DESCRIPTION OF THE SERVICES

ESTIMATED BUDGET & PROPOSED CONSULTING SERVICES

| Year | Quarter | Tasks | Estimated Hours/Details |
|------|---------|-------|-------------------------|
|      |         |       |                         |

BPVHCPProductCollaborationConsultingAgmt(11 12 09).doc

<u>Time and Place</u>. Services shall be rendered by Consultant as Bard may reasonably request and the parties hereby agree that the nature, extent, duration, time and place of such Services shall be agreed by the parties in advance, taking into account Consultant's other professional commitments.

The estimates set forth in this <u>Exhibit A</u> are not commitments on behalf of Bard but merely estimates of currently anticipated Services that Bard may require from Consultant. Bard reserves the right to modify the estimates set forth in <u>Exhibit A</u>, including the right to remove, add or revise any or all of the items set forth in <u>Exhibit A</u>.

## EXHIBIT B

## COMPENSATION/PAYMENT SCHEDULE

Fees. [redacted]

Travel. In the event Consultant is requested to travel by Bard from Consultant's location to Bard's location, [redacted]

Expenses. Bard shall promptly reimburse Consultant for its reasonable out-of-pocket expenses approved in advance by Bard, incurred by Consultant incident to the rendering of Services hereunder, upon Consultant's submission of appropriate written vouchers or receipts as are reasonably satisfactory to Bard.

BPVHCPProductCollaborationConsultingAgmt(11 12 09).doc