# REDACTED DOCUMENTS RELATED TO DOCKET 7456

**7456 - Defendants' Motion and Memorandum in Support of Motion for Partial Summary Judgment of Plaintiff Sherr-Una Booker's Claims – Filed Redacted**

**7457 - Defendants' Separate Statement of Facts in Support of Their Motion for Partial Summary Judgment as to Plaintiff Sherr-Una Booker's Claims – Filed Redacted**

**Exhibit A – Filed Redacted**

**Exhibit C – Filed Redacted**

**Exhibit D – Filed Redacted**

**Exhibit E – Filed Redacted**

**Exhibit F – Filed Redacted**

**Exhibit G – Filed Redacted**

**Exhibit H – Filed Redacted**

# REDACTED DOCUMENTS RELATED TO DOCKET 7456

**7456 - Defendants' Motion and Memorandum in Support of Motion for Partial Summary Judgment of Plaintiff Sherr-Una Booker's Claims – Filed Redacted**

James R. Condo (#005867)
Amanda C. Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone:  (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
Telephone: (404) 322-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| IN RE:  Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC |
|---|---|
| | **DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFF SHERR-UNA BOOKER'S CLAIMS** |
| SHERR-UNA BOOKER, an individual, | (Assigned to the Honorable David G. Campbell) |
| Plaintiff, | |
| v. | **(Oral Argument Requested)** |
| C. R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, INC., an Arizona corporation, | |
| Defendants. | |

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

**MOTION**

Pursuant to Fed. R. Civ. P. 56(c), Local Rule 56.1, and Case Management Order No. 23 (Doc. 5770), Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") respectfully move this Court for partial summary judgment as to certain of Plaintiff Sherr-una Booker's product liability claims (Counts I, II, V, VI, VII, VIII, IX, XII) and her claim for punitive damages as alleged in Plaintiff's Short Form Complaint (2:16-cv-00474-DGC, Doc. 1).[1] For the reasons stated below, Bard is entitled to judgment as a matter of law as to certain claims asserted by the plaintiff.

This motion is supported by Defendants' Memorandum of Points and Authorities and Separate Statement of Facts ("SSOF") which are filed herewith.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     Introduction.**

Plaintiff Sherr-una Booker brings this product liability action for damages she claims to have ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[1] Plaintiff and Bard have met and conferred regarding the claims that Plaintiff intends to pursue. Plaintiff has agreed that she is not pursuing claims for breach of express warranty (Count X) or breach of implied warranty (Count XI). However, Plaintiff represented during the meet and confer process that she intends to pursue all of the claims addressed in this Motion.

Nelson Mullins Riley & Scarborough
— L.L.P. —
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

retrievable IVC filters, and they are risks that Bard specifically warned about in the Instructions for Use that accompanied the Filter. Ms. Booker's implanting physician also testified he was well-aware of these potential complications before placing the Filter.

Bard moves for partial summary judgment under Federal Rule of Civil Procedure 56 on the following grounds:

A. Plaintiff's manufacturing defect claims (Counts I, V) fail as a matter of law because Plaintiff has failed to provide any evidence that the Filter deviated from Bard's manufacturing specifications.

B. Plaintiff's failure to warn claims (Counts II, VII) and misrepresentation claims (Counts VIII, XII) fail as a matter of law because Bard provided legally adequate warnings of the complications experienced by Plaintiff to a learned intermediary (Plaintiff's implanting physician), and any alleged failure to warn by Bard was not the proximate cause of Plaintiff's alleged injuries.

C. Plaintiff's failure to recall/retrofit claim (Count VI) fails as a matter of law because Bard was not under a duty to recall its products.

D. Plaintiff's negligence *per se* claim (Count IX) fails as a matter of law because Plaintiff has failed to provide any evidence that Bard violated a state statute and any alleged violation of the Food, Drug, and Cosmetic Act ("FDCA") would be preempted by federal law.

E. Plaintiff's punitive damages claim fails because there is no evidence that such are warranted.

## II. Statement of Undisputed Facts.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000



### III.   Summary Judgment Standard.

Summary judgment is appropriate upon showing that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). "A moving party without the ultimate burden of persuasion at trial . . . has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.* "If . . . a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id.* at 1130-31 (internal citations omitted).

**IV.    Georgia Substantive Law Applies.**

The parties agree that Georgia substantive law governs Plaintiff's claims. Although Plaintiff filed her complaint directly in the MDL, she identified Georgia in her Short Form Complaint as the forum in which venue would be proper absent direct filing, (2:16-cv-00474-DGC, Doc. 1), so Georgia's conflict-of-law rules apply. (*See* Doc. 1485.) Georgia follows the *lex loci delicti* doctrine, which applies the substantive law of the place of injury. *See Coon v. Med. Ctr., Inc.*, 797 S.E.2d 828, 834 (Ga. 2017). Despite being implanted in New York, the place of injury here is Georgia because "at least a substantial amount, if not all, of the injuries allegedly caused by the [Filter's] alleged defects occurred in Georgia. Therefore, because 'the last event … necessary to make [Defendants] liable for the alleged tort[s]' likely occurred in Georgia, the Court applies Georgia law." *See Schmidt v. C. R. Bard, Inc.*, No. 6:14-CV-62, 2014 WL 5149175, at *2 (S.D. Ga. Oct. 14, 2014) (applying Georgia substantive law under *lex loci delicti* despite plaintiff being implanted with medical device in Michigan).

**V.    Argument and Citation of Authority.**

   **A.    Plaintiff's Manufacturing Defect Claims (Counts I, V) Fail as a Matter of Law Because Plaintiff Has Provided No Evidence that the Filter Deviated from Other G2 Filters.**

To prove that a medical device suffered from a manufacturing defect, Plaintiff must establish as a threshold matter that the device deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications. O.C.G.A. § 51-1-11(b)(1); *Jones v. Amazing Prods., Inc.*, 231 F. Supp. 2d 1228, 1236 (N.D. Ga. 2002) (when a plaintiff presents "no evidence to support the contention that the product had a manufacturing error specific only to [it, or that it] was not manufactured in accordance with its design," summary judgment of a manufacturing defect claim is appropriate); *accord Queen v. C. R. Bard*, 2013 U.S. Dist. LEXIS 78057, *13 (S.D. W. Va. June 4, 2013) (citing *Jones*, 231 F. Supp. 2d at 1236); *Wheeler v. Novartis Pharms. Corp.*, 944 F. Supp. 2d 1344, 1352-53 (S.D. Ga. 2013); *see also Banks v. ICI Americas, Inc.*, 450 S.E.2d 671, 673 (Ga. 1994).

- 5 -

Here, Plaintiff has failed to produce evidence that her Filter varied from the other G2 Filters in its lot or deviated from its design specifications. (SSOF ¶ 32.) Indeed, Plaintiff's engineering expert stated that he does not know how Bard IVC Filters look coming off of the manufacturing line. (*Id.* at ¶ 33.) Similarly, Plaintiff's materials science expert, testified that he is not familiar with the manufacturing process utilized by Bard to make the Filter "in a detailed sense," acknowledging that "I don't have a great recall of what exactly I read [regarding manufacturing specifications for Bard filters]." (*Id.* at ¶ 34) Moreover, Plaintiff's experts have examined the Filter and have failed to identify how, if at all, it varied from other G2 filters coming off the line or deviated from its design specifications. (*Id.* at ¶ 35.)[2] Since Plaintiff has not provided any evidence in support of her manufacturing defect claim, Bard is entitled to summary judgment.

**B.    Plaintiff's Failure to Warn Claims (Counts II, VI) and Misrepresentation Claims (Counts VIII, XII) Fail as a Matter of Law Because Bard Provided Legally Adequate Warnings to a Learned Intermediary, and Any Alleged Failure to Warn Could Not Be the Proximate Cause of Plaintiff's Alleged Injuries.**

Bard is entitled to summary judgment on Plaintiff's failure to warn claim because Bard provided legally adequate warnings of the Plaintiff's alleged complications to a learned intermediary, Ms. Booker's ███████████████████. Moreover, any alleged failure to warn by Bard was not the proximate cause of Plaintiff's alleged injuries.

Under Georgia law, "[t]o establish a claim for failure to warn, the plaintiff must show that the defendant had a duty to warn, that defendant breached that duty and the breach was the proximate cause of the plaintiff's injury." *Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1363 (N.D. Ga. 1999).[3] It is well settled under Georgia law that the

---

[2] Bard anticipates that Plaintiff will argue that her material science expert observed indications of possible surface defects on the Filter that possibly initiated a fracture. (SSOF ¶ 35.) However, Plaintiff has no evidence that these possible surface defects were a deviation from other G2 Filters coming off the line or its manufacturing or design specifications, which is what is required to prove a "manufacturing defect" claim under Georgia law. *See Jones*, 231 F. Supp. 2d at 1236.

[3] Under Georgia law, there are "no misrepresentation claims for products liability distinct from failure to warn claims." *Brazil v. Janssen Research & Dev. LLC*, No. 4:15-CV-0204-HLM, 2016 WL 4844442, at *11 (N.D. Ga. Mar. 24, 2016). Accordingly, Plaintiff's negligent and fraudulent misrepresentation claims (Counts VIII, XII) "collapse into the

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

learned intermediary doctrine provides a defense to medical device manufacturers in product liability cases in which the plaintiff alleges a failure to warn with respect to a medical device. *See, e.g. Lance v. Am. Edwards Labs.*, 452 S.E.2d 185 (Ga. Ct. App. 1994); *Hawkins v. Richardson-Merrell, Inc.*, 249 S.E.2d 286, 287-88 (Ga. Ct. App. 1978) (en banc); *see also Catlett v. Wyeth, Inc.*, 379 F. Supp. 2d 1374, 1381 (M.D. Ga. 2004) ("It is clear that Georgia courts would find the 'learned intermediary rule' encompasses any fraud, fraudulent concealment, misrepresentation, failure to warn or breach of warranty claims related to the sale and use of prescription drugs.").

"Under the learned intermediary doctrine, the manufacturer of a prescription drug or medical device does not have a duty to warn the patient of the dangers involved with the product, but instead has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and the manufacturer.  The rationale for the doctrine is that the treating physician is in a better position to warn the patient than the manufacturer, in that the decision to employ prescription medication [or medical devices] involves professional assessment of medical risks in light of the physician's knowledge of a patient's particular need and susceptibilities." *McCombs v. Synthes*, 587 S.E.2d 594, 595 (Ga. 2003) (internal citations omitted).

Under the learned intermediary doctrine, a manufacturer discharges its duty to warn by apprising the prescribing physician of potential dangers that may result from the

---

failure to warn claims," and fail for the same reasons. *Swicegood v. Pliva, Inc.*, 543 F. Supp. 2d 1351, 1357 (N.D. Ga. 2008). Even if Plaintiff's misrepresentation claims are distinct from her failure-to-warn claims, they still fail because Plaintiff has no evidence of reliance. *Id.* at 1355 (justifiable reliance is an essential element of both negligent and fraudulent misrepresentation under Georgia law). Plaintiff does not remember receiving any written information regarding the Filter, has never spoken to anyone at Bard, and did not even know Bard ███████ red the Filter until after she retained her lawyers. (SSOF ¶¶ 29-31.) Further, ███████ does not recall specific discussions with any Bard sales representatives rega ████ lter, nor was it his practic █████ e Plaintiff with any written materials about the Filter. (*Id.* at ¶¶ 10, 17.) ███████ does not rely on information contained in a manufacturer's internal docu ████ heir preliminary or internal investigations, when deciding which IVC filter to use because such incomplete information is unreliable, misleading, and could negatively impact his practice. (*Id.* at ¶ 14.) Instead, he relies on reliable information from device manufacturers as well as his experience, the experience of his colleagues, the FDA, and the applicable medical literature when deciding which IVC filter to use. (*Id.* at ¶ 15.)

device's use. *Hawkins*, 249 S.E.2d at 288; *Ellis v. C.R. Bard, Inc.,* 311 F.3d 1272, 1277–78, 1281 (11th Cir. 2002) (per curiam) (applying Georgia law, finding that manufacturer adequately warned doctors and nurses of risks of third-party activation of morphine pump because evidence demonstrated the doctors and nurses all had actual knowledge of risk); *Presto v. Sandoz Pharm. Corp.*, 487 S.E.2d 70, 73 (Ga. Ct. App. 1997) ("a warning as to possible danger in [the prescription product's] use to the prescribing physician is sufficient"). If the warning provided to the learned intermediary is legally adequate, the plaintiff cannot recover. *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 816 (11th Cir. 2010).

Here, the Filter is a prescription medical device not available to the general public. (SSOF ¶ 2.) Accordingly, the learned intermediary doctrine controls here, and Bard only had a duty to warn ███████, the physician who implanted the Filter, of the risks of its use. ███████ testimony establishes that the warnings accompanying the Filter were adequate to warn him of the specific complications encountered by Ms. Booker. Before he placed the Filter, ███████ had the IFU that accompanied the Filter available to him. (*Id.* at ¶ 4). ████████████████████████████████████

████████████████████████████████████

████████████████████. (*Id.* at ¶ 5). Under the heading "Potential Complications," the IFU reads:

- Movement or migration of the filter is a known complication of vena cava filters. This may be caused by placement in IVCs with diameters exceeding the appropriate labeled dimensions specified in the IFU. Migration of filters to the heart or lungs have also been reported in association with improper deployment, deployment into clots and/or dislodgment due to large clot burdens.

- Filter fracture is a known complication of vena cava filters. There have been reports of embolization of vena cava filter fragments resulting in retrieval of the fragment using endovascular and/or surgical techniques. Most cases of filter fracture, however, have been reported without any adverse clinical sequelae.

- Perforation or other acute or chronic damage of the IVC wall.

\* \* \*

**All of the above complications have been associated with serious adverse events such as medical intervention and/or death. There have been reports of complications, including death, associated with the use of vena cava filters in morbidly obese patients. The risk/benefit ratio of any of these complications should be weighed against the inherent risk/benefit ratio for a patient who is at risk of pulmonary embolism without intervention.**

(*Id.*) (emphasis in original). Because the IFU warned ▮▮▮▮▮▮▮▮ regarding the relevant risks of using the Filter, Bard's warnings were legally adequate. *See Presto*, 487 S.E.2d at 73 ("a warning as to possible danger in [the prescription product's] use to the prescribing physician is sufficient").[4]

Moreover, Bard cannot be liable for failure to warn of the ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ because those complications are well known by medical professionals. Where a product is sold to a particular group or profession, the manufacturer is not required to warn against risks generally known to such group or profession. *Exxon Corporation v. Jones*, 433 S.E.2d 350, 353 (Ga. Ct. App. 1993) (quoting *Eyster v. Borg-Warner Corp.,* 206 S.E.2d 668 (Ga. Ct. App. 1974)); *see Ellis*, 311 F.3d at 1277–78, 1281. Accordingly, even had the IFU not provided the necessary warnings, which Bard denies, Bard could not be liable for failure to warn of the ▮▮▮▮▮▮▮▮ because they were widely known, and well documented, by the medical community. Indeed, Plaintiff's expert acknowledges that *all* IVC filters are known to have complications, including filter fracture, migration, tilt, and perforation. (SSOF ¶¶ 6-7). Because the relevant risks involved in implanting the Filter were well documented and well known to medical professionals, including ▮▮▮▮▮▮▮▮, Bard cannot be liable for any failure to warn of those risks. *See Ellis*, 311 F.3d at 1279-80.

In addition, because ▮▮▮▮▮▮▮▮ had actual knowledge of the ▮▮▮▮▮▮▮▮

---

[4] Plaintiff may argue that Bard failed to warn Dr. ▮▮▮▮▮▮ regarding the relative complication rates of Bard's IVC filters compared to com▮▮▮▮ vices. Bard can find no Georgia law creating a duty on a manufacturer to provide comparative rates of complication for its product to other similar products on the market. For the reasons and arguments stated at footnote 3, page 9 of Bard's Motion for Summary Judgment filed in *Jones v. C. R. Bard, Inc., et al.,* wh▮▮▮▮▮▮ orporated herein by reference, Bard had no legal duty to provide warnings to ▮▮▮▮▮▮ regarding the rates of complications with the Filter in comparison to any othe▮

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

1    ██████████████████████████ when he implanted the Filter, any failure to

2    warn by Bard is not the proximate cause of her injuries.[5] *See Bodymasters Sports Indus.,*

3    *Inc. v. Wimberley*, 501 S.E.2d 556, 561 (Ga. Ct. App. 1998). To prove the proximate

4    cause element of a failure to warn claim under Georgia law, "a plaintiff must also prove:

5    (1) that the prescribing physician was not aware of the alleged risk at issue, and (2) but for

6    the inadequate warning, the physician would not have used or prescribed the product."

7    *Watkins v. Eli Lilly & Co.*, No. 1:08-CV-1665, 2010 WL 11493785, at *8 (N.D. Ga. Mar.

8    31, 2010) (citing *Wheat*, 46 F. Supp. 2d, at 1363); *accord Porter v. Eli Lilly & Co.*, 291 F.

9    App'x 963, 964 (11th Cir. 2008). "If a plaintiff fails to meet this burden, the causal

10    connection is broken, and plaintiff cannot prove that the breach was the proximate cause

11    of his injuries." *Watkins*, 2010 WL 11493785, at *8.

12        Here, ██████████ had the IFU available to him before implanting the Filter, which

13    warns of fracture, movement, migration, embolization, and perforation. (SSOF ¶¶ 4-5).

14    ████████████████████████████████████████████████████████████

15    ███████████████████████████████████████████████████. (*Id.* at ¶ 8).

16    ████████████████████████████████████████████████████████████

17    ████████████████████████████████████████████████████████████

18    ██████████████████████████████. *Watkins*, 2010 WL 11493785, at *8; *see also*

19    *Bodymasters*, 501 S.E.2d at 561.

20        Further, although ██████████████ testified on occasion that he would have "wanted to

21    know" certain alleged factual information presented by Plaintiff's counsel, he admitted

22    that it would be "[d]ifficult to say with certainty" whether the information he was shown

23    would have changed his prescribing decision, and that it "would depend upon what other

24    filters we had at the time and what their problems would have been." (SSOF at ¶ 11). Dr.

25

---

26    [5] Relevantly, Georgia courts do not follow the "heeding presumption." *Wheat*, 46 F. Supp.
       2d at 1362-63; *see Porter v. Eli Lilly & Co.*, 2008 WL 544739, *9-12 (N.D. Ga. Feb. 25,
27    2008), *aff'd*, 291 F. App'x 963 (11th Cir. 2008) (Georgia courts do not follow the
       "heeding presumption," which "vitiate[s] the need for a plaintiff to establish proximate
28    cause for her injuries").

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

█████ a also testified that "you have to have a way of treating these difficult patients. So some filter has to be used. And it becomes a matter of deciding which filter is best, so to speak. And sometimes that's not entirely clear." (*Id.* at ¶ 12). ████████ further testified that the information that Plaintiff's counsel showed him was not peer-reviewed or reliable information, and that it is important to have complete and reliable information when deciding whether or not he would have prescribed the Filter (*Id.* at ¶ 13).

In the absence of evidence establishing that an alleged failure to warn was the proximate cause of Plaintiff's injury – that is, that ████████ was unaware of the alleged risk and that a different warning would have probably caused ████████ to choose a different product – Plaintiff's failure to warn claims fail as a matter of law. *Watkins*, 2010 WL 11493785, at *8.

## C. Plaintiff's Failure to Recall/Retrofit Claim (Count VI) Fails as a Matter of Law Because Bard Had No Duty to Recall Its Products.

"[N]o common law duty exists under Georgia law requiring a manufacturer to recall a product after the product has left the manufacturer's control" unless a manufacturer voluntarily recalls the product (in which case the manufacturer must exercise ordinary care in doing so), or the recall is required by a governmental statute or entity. *Ford Motor Co. v. Reese*, 684 S.E.2d 279, 283–84 (Ga. Ct. App. 2009). Absent these special circumstances, "a manufacturer's duty to implement alternative safer designs is limited to the time the product is manufactured, not months or years later when technology or knowledge may have changed. Any other rule would render a manufacturer a perpetual insurer of the safety of its products, contrary to established Georgia law." *Id.* (citations omitted). Bard has not voluntarily recalled the G2 Filter, nor has any governmental agency or statute required such recall. Therefore, Bard is entitled to summary judgment on Plaintiff's negligent failure to recall/retrofit claim.

///

///

///

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Nelson Mullins Riley & Scarborough

— L.L.P. —
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

**D.** **Plaintiff's Negligence *Per Se* Claim (Count IX) Fails as a Matter of Law Because Plaintiff Has Failed to Provide Any Evidence that Bard Violated a State Statute and Any Alleged Violation of the FDCA Would Be Preempted by Federal Law.**

Under Georgia law, "a defendant is considered negligent per se based upon violation of a statute if there is evidence that the defendant violated the statute, the injured person was in the class the statute was intended to protect, the injured person suffered the type of harm the statute intended to guard against, and the alleged negligence per se proximately caused the injuries." *Leonard v. Medtronic, Inc*., No. 1:10-CV-03787-JEC, 2011 WL 3652311, at *7 (N.D. Ga. Aug. 19, 2011). However, "a private litigant cannot bring a state-law claim against a defendant when the state-law claim is in substance (even if not in form) a claim for violating the FDCA [Food, Drug, and Cosmetic Act]—that is, when the state claim would not exist if the FDCA did not exist." *Id.* (quoting *Riley v. Cordis Corp*., 625 F. Supp. 2d 769, 777 (D. Minn. 2009)). This is because "no private right of action exists for a violation of the FDCA." *Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1284 n.10 (11th Cir. 2002) (applying Georgia substantive law); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001); 21 U.S.C. § 337(a).

Plaintiff's negligence *per se* claim (Count IX) is based exclusively on alleged violations of the FDCA and its applicable regulations. (*See* Master Complaint for Damages for Individual Claims [Dkt. No. 364] at ¶¶ 229-234). Nowhere in Plaintiff's Master Complaint or Short Form Complaint does Plaintiff identify any alleged violations of Georgia statutes. Because Plaintiff's "claim of negligence per se would not exist prior to the enactment of the FDCA . . . because the claim only alleges violation of that law," such claims are impliedly preempted by federal law. *Leonard*, 2011 WL 3652311, at *8. (finding negligence per se claim impliedly preempted by § 337(a) because "Plaintiffs cannot create a private right of action under the guise of a state law claim."). Accordingly, Plaintiff's negligence *per se* claim fails as a matter of law.

Nelson Mullins Riley & Scarborough

L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

**E.      Plaintiff Has Offered No Evidence Sufficient To Bring a Punitive Damages Claim.**

Under Georgia law, Bard should be entitled to summary judgment on the Plaintiff's punitive damages claim. As a preliminary matter, under Georgia law, a plaintiff has no right to punitive damages, which are only assessed in extreme cases. *See Roberts v. Forte Hotels, Inc.*, 489 S.E.2d 540, 542 (Ga. Ct. App. 1997). To authorize punitive damages, Plaintiff must show clear and convincing evidence of "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to the consequences" of the tortious act. O.C.G.A. § 51-12-5.1(b). "Conscious indifference to consequences means an intentional disregard of the rights of another, knowingly or willfully;" indeed, under Georgia law, even clear and convincing evidence of gross negligence will not support an award of punitive damages. *COMCAST Corp. v. Warren*, 650 S.E.2d 307, 311 (Ga. Ct. App. 2007).

Moreover, a manufacturer's "compliance with county, state, and federal regulations is not the type of behavior which supports an award of punitive damages," and, "as a general rule," punitive damages are "improper where a defendant [in a products liability case] has adhered to . . . safety regulations." *Stone Man, Inc. v. Green*, 435 S.E.2d 205, 206 (Ga. 1993). "This is because 'such compliance does tend to show that there is no clear and convincing evidence of 'willful misconduct, malice, fraud, oppression, or that entire want of care which would raise the presumption of [a] conscious indifference to [the] consequences.'" *Barger v. Garden Way, Inc.*, 499 S.E.2d 737, 743 (Ga. Ct. App. 1998). While compliance with safety regulations does not automatically preclude punitive damages if "there is other evidence showing culpable behavior," to survive summary judgment, Plaintiff still "must present some evidence of 'willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.'" *Edwards v. Ethicon, Inc.*, 30 F. Supp. 3d 554, 564 (S.D. W. Va. 2014) (citations omitted) (applying Georgia law and granting summary judgment on punitive damages claim).

Here, punitive damages are not warranted because there is no evidence that Bard acted with the malice, fraud, wantonness, oppression, or entire want of care necessary to sustain an award of punitive damages. O.C.G.A. § 51-12-5.1(b). Instead, Bard complied with applicable FDA regulations in bringing the Filter to market, resulting in the Filter being twice cleared by the FDA through the 510(k) process outlined in the FDCA: for permanent use on August 29, 2005 and for retrievable use on January 15, 2008. (SSOF ¶ 36); *see* 21 U.S.C. § 360e(b)(1)(B) (establishing 510(k) clearance); 21 C.F.R. 807.87 (outlining process for 510(k) clearance application); *see generally* Defendants' Motion for Summary Judgment Regarding Preemption (Doc. 5396). Bard also complied with applicable regulations in the Filter's labeling. Furthermore, there is no evidence in this case that Bard intentionally disregarded Plaintiff's rights, which is necessary to show a "conscious indifference to consequences," *COMCAST*, 650 S.E.2d at 311, or that Bard specifically acted with the purpose of causing damage and loss. Because Plaintiff cannot offer evidence that Bard acted deliberately and with malice with regard to Plaintiff, or with an entire want of care, her punitive damages claim should fail.

## VI.   Conclusion.

For these reasons, Bard respectfully requests that this Court grant Bard's Motion for Partial Summary Judgment.

RESPECTFULLY SUBMITTED this 7th day of September, 2017.

s/Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

1

2
James R. Condo (#005867)
Amanda Sheridan (#027360)
3
SNELL & WILMER L.L.P.
One Arizona Center
4
400 E. Van Buren
Phoenix, AZ 85004-2204
5
PH: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com
6

7
**Attorneys for Defendants C. R. Bard, Inc. and
Bard Peripheral Vascular, Inc.**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of September 2017, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

s/Richard B. North, Jr.
Richard B. North, Jr.

# REDACTED DOCUMENTS RELATED TO DOCKET 7456

## 7457 - Defendants' Separate Statement of Facts in Support of Their Motion for Partial Summary Judgment as to Plaintiff Sherr-Una Booker's Claims – Filed Redacted

James R. Condo (#005867)
Amanda C. Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

Nelson Mullins Riley & Scarborough L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

IN RE: Bard IVC Filters Products Liability Litigation,

SHERR-UNA BOOKER, an individual,

Plaintiff,

v.

C. R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, INC., an Arizona corporation,

Defendants.

No. 2:15-MD-02641-DGC

**DEFENDANTS' SEPARATE STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF SHERR-UNA BOOKER'S CLAIMS**

(Assigned to the Honorable David G. Campbell)

Pursuant to Fed. R. Civ. P. 56(c), Local Rule 56.1(a), and Case Management Order No. 23 (Doc. 5770), Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") respectfully submit this Separate Statement of Facts in Support of Their Motion for Partial Summary Judgment as to Plaintiff Sherr-una Booker's Claims.

1. ██████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████

2.     The Filter is not sold directly to patients. (Ex. B, G2 Filter Instructions for Use (the "G2 IFU"), at page 1.)

3. ████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████. (Ex. C, March 21, 2017 ████████████████ Deposition Transcript ("D'Ayala Dep. Tr.") at 95:10 to 96:13.)

4.     Before he placed the Filter, ████████ had the IFU that accompanied the Filter available to him to read. (Ex. C, D'Ayala Dep. Tr. at 94:20 to 95:2.)

5.     The G2 IFU applicable in June 2007 (when Plaintiff received her Filter) included the following warnings:

    a.     Under the bolded heading "**Potential Complications**," the G2 IFU reads as follows:

- Movement or migration of the filter is a known complication of vena cava filters. This may be caused by placement in IVCs with diameters exceeding the appropriate labeled dimensions specified in the IFU. Migration of filters to the heart or lungs have also been reported in association with improper deployment, deployment into clots and/or dislodgment due to large clot burdens.

- Filter fracture is a known complication of vena cava filters. There have been reports of embolization of vena cava filter fragments resulting in retrieval of the fragment using endovascular and/or surgical techniques.

Most cases of filter fracture, however, have been reported without any adverse clinical sequelae.

- Perforation or other acute or chronic damage of the IVC wall.

* * *

**All of the above complications have been associated with serious adverse events such as medical intervention and/or death. There have been reports of complications, including death, associated with the use of vena cava filters in morbidly obese patients. The risk/benefit ratio of any of these complications should be weighed against the inherent risk/benefit ratio for a patient who is at risk of pulmonary embolism without intervention.**

(Ex. B, G2 IFU.)

6.      Plaintiff's expert, Dr. Derek Muehrcke, acknowledges that all IVC filters are known to have potential complications, including filter fracture, migration, tilt, and perforation. (Ex. D, July 24, 2017 Dr. Derek Muehrcke Deposition Transcript ("Muehrcke Dep. Tr.") at 55:22 to 57:9.)

7.      Dr. Muehrcke testified that "[e]very filter can have a complication;" therefore, it would be "unrealistic" for a physician implanting a Bard IVC filter to expect that the filter would never migrate, tilt, perforate, or fracture. (Ex. D, Muehrcke Dep. Tr. at 102:16 to 103:2.)

8.      ▮▮▮▮▮ was well aware of the risks associated with IVC filters, including the risks of fracture, movement, migration, embolization, and perforation when he implanted the Filter. (Ex. C, ▮▮▮▮▮. Tr. at 93:10 to 95:5.)

9.      ▮▮▮▮▮ was aware of the risk of fracture associated with the Filter and took this risk into consideration when weighing the risks and benefits of ▮▮▮▮▮ ▮▮▮▮▮. (Ex. C, D'Ayala Dep. Tr. at 95:1-9.)

10.     Dr. D'Ayala does not recall specific discussions with any Bard sales representatives regarding the Filter. (Ex. C, D'Ayala Dep. Tr. at 114:8-15.)

11.     Although ▮▮▮▮▮ testified on occasion that he would have "wanted to know" certain alleged factual information presented by Plaintiff's counsel, he admitted that it would be "[d]ifficult to say with certainty" whether the information he was shown

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

- 2 -

would have changed his prescribing decision, and that it "would depend upon what other filters we had at the time and what their problems would have been." (Ex. C, █████ Dep. Tr. at 63:22-25.)

12.     █████████ testified that "you have to have a way of treating these difficult patients. So some filter has to be used. And it becomes a matter of deciding which filter is best, so to speak. And sometimes that's not entirely clear." (Ex. C, █████ Dep. Tr. at 70:21-25.)

13.     █████████ testified that the information that Plaintiff's counsel showed him was not peer-reviewed or reliable information, and that it is important to have complete and reliable information when deciding whether or not he would have prescribed the Filter. (Ex. C, █████ Dep. Tr. at 121:12 to 122:1.)

14.     Dr. █████ does not rely on information contained in a medical device manufacturer's internal documents, or their preliminary or internal investigations, when deciding which IVC filter to use because such incomplete information is unreliable, misleading, and could negatively impact his practice. (Ex. C, █████ Dep. Tr. at 106:7 to 107:7.)

15.     Dr. █████ relies on reliable information from device manufacturers as well as his experience, the experience of his colleagues, the FDA, and the applicable medical literature when deciding which IVC filter to use. (Ex. C, █████ Dep. Tr. at 105:12 to 106:7.)

16.     Dr. █████ ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. (Ex. C, █████ Dep. Tr. at 96:17 to 98:6.)

17.     █████████████████████████████████████████████████████████████████████████████████████████████████. (Ex. C, █████ Dep. Tr. at 98:8-15.)

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

18. Although ███████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████. (Ex. E,
February 20, 2017 Plaintiff Sherr-una Booker Deposition Transcript, ("Booker Dep. Tr.")
at 90:25 to 91:5; 163:5-12.)

19. ████████████████████████████████████████
██████████████████████████████. (Ex. A, PFS at § 11.13(b); Ex. E, Booker
Dep. Tr., at 218:24 to 223:13.)

20. ████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████(
████████████████████████████████████████████████████████████
███████████████

21. ████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██ ██ ██ █ ███ ████ ███ ████ ████ █ █████
███████████

22. ████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████

23. ████████████████████████████████████████
████████████████████████████████

24. ████████████████████████████████████████
████████████████████████████████████████████████████████████

Nelson Mullins Riley & Scarborough

L.L.P.

201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

25. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

29. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

30.     Plaintiff has never spoken to anyone at Bard. (Ex. E, Booker Dep. Tr. at 251:20-24.)

31.     Plaintiff did not know that Bard was the manufacturer of her IVC filter until after she contacted her lawyer about her potential legal claim. (Ex. E, Booker Dep. Tr. at 166:10-12.)

32.     There is no evidence establishing that the Filter deviated from Bard manufacturing specifications for other G2 Filters in its lot or deviated from its design specifications.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

33.     Plaintiff's engineering expert, Dr. McMeeking, stated that he does not know how Bard IVC Filters look coming off of the manufacturing line. (Ex. I, April 22, 2014 Robert McMeeking Deposition Transcript ("McMeeking Dep. Tr.") at 146:15 to 147:4; 268:25 to 269:3.)

34.     Plaintiff's materials science expert, Dr. Ritchie, testified that he is not familiar with the manufacturing process utilized by Bard to make the Filter "in a detailed sense," acknowledging that "I don't have a great recall of what exactly I read [regarding manufacturing specifications for Bard filters]." (Ex. J, May 8, 2014 Dr. Robert Ritchie Deposition Transcript ("Ritchie Dep. Tr.") at 65:13 to 66:6.)

35.     Moreover, Plaintiff's experts have examined the Filter and have failed to identify how, if at all, it varied from other G2 filters coming off the line or deviated from its design specifications. While Dr. Ritchie observed possible indications of a surface defect on the Filter that possibly initiated a fracture, he testified "I'm not absolutely certain that it's there, but inclusions are not uncommon in these materials, and generally they initiate cracks. And without cutting that out precisely, you can't be certain." (Ex. K, August 4, 2017, Dr. Robert Ritchie Deposition Transcript ("Ritchie Dep. Tr. II") at 75:14 to 76:1; 81:17-22.)

36.     The Filter was cleared by the FDA for permanent use on August 29, 2005, and for retrievable use on January 15, 2008 through the 510(k) process outlined in the Food, Drug, and Cosmetic Act. (Ex. L, August 29, 2005 FDA Clearance Letter;[1] Ex. M, January 15, 2008 FDA Clearance Letter.[2]).

---

[1] Available at http://www.accessdata.fda.gov/cdrh_docs/pdf5/K050558.pdf, last accessed September 15, 2014.

[2] Available at http://www.accessdata.fda.gov/cdrh_docs/pdf7/K073090.pdf, last accessed September 15, 2014.

RESPECTFULLY SUBMITTED this 7th day of September, 2017.

s/Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

James R. Condo (#005867)
Amanda Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and
Bard Peripheral Vascular, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of September, 2017, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

s/Richard B. North, Jr.
Richard B. North, Jr.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

# REDACTED DOCUMENTS RELATED TO DOCKET 7456

## Exhibit A – Filed Redacted

# Exhibit A

DOCUMENT SUBMITTED UNDER SEAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

*MDL No. 2641*
*In Re Bard IVC Filter Products Liability Litigation*

---

### PLAINTIFF FACT SHEET

Each plaintiff who allegedly suffered injury as a result of a Bard Inferior Vena Cava Filter must complete the following Plaintiff Fact Sheet ("Plaintiff Fact Sheet"). In completing this Fact Sheet, you are **under oath and must answer every question.** You must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details as requested, please provide as much information as you can and then state that your answer is incomplete and explain why, as appropriate. If you select an "I Don't Know" answer, please state all that you do know about that subject. If any information you need to complete any part of the Fact Sheet is in the possession of your attorney, please consult with your attorney so that you can fully and accurately respond to the questions set out below. If you are completing the Fact Sheet for someone who cannot complete the Fact Sheet for himself/herself, please answer as completely as you can.

The Fact Sheet shall be completed in accordance with the requirements and guidelines set forth in the applicable Case Management Order. A completed Fact Sheet shall be considered interrogatory answers pursuant to Fed. R. Civ. P. 33 and responses to requests for production pursuant to Fed. R. Civ. P. 34 and will be governed by the standards applicable to written discovery under Fed. R. Civ. P. 26 through 37. Therefore, you must supplement your responses if you learn that they are incomplete or incorrect in any material respect. The questions and requests for production of documents contained in this Fact Sheet are non-objectionable and shall be answered without objection. This Fact Sheet shall not preclude Bard Defendants from seeking additional documents and information on a reasonable, case-by-case basis, pursuant to the Federal Rules of Civil Procedure and as permitted by the applicable Case Management Order.

In filling out this form, "healthcare provider" shall mean any medical provider, doctor, physician, surgeon, pharmacist, hospital, clinic, medical center, physician's office, infirmary, medical/diagnostic laboratory, or any other facility that provides medical care or advice, along with any pharmacy, x-ray department, radiology department, laboratory, physical therapist/physical therapy department, rehabilitation specialist, chiropractor, or other persons or entities involved in your diagnosis, care and/or treatment.

In filling out this form, the terms "You" or "Your" refer to the person who received a Bard Inferior Vena Cava Filter manufactured and/or distributed by C. R. Bard, Inc. or Bard Peripheral Vascular, Inc. ("Bard Defendants") and who is identified in Question 1(a) below.

To the extent that the form does not provide enough space to complete your responses or answers, please attach additional sheets as necessary, Information provided by Plaintiff will only

be used for the purposes related to this litigation and may be disclosed only as permitted under the protective order in this litigation.

## I. BACKGROUND INFORMATION

1.    Please state:

    (a)    Full name of the person who received the Bard inferior vena cava filter, including maiden name:___Sherr-Una Booker___

    (b)    List all names by which you have ever been known, if different from that listed in 1(a):___Sherr-Una Cottle___

    (c)    Full name of the person completing this form, if different from the person listed in 1(a) above, and the relationship of the person completing this form to the person listed in 1(a) above: _____

    (d)    The name and address of your primary attorney:

        Robin P. Lourie

        WATKINS, LOURIE, ROLL & CHANCE, PC

        3348 Peachtree Road, NE, Tower Place 200, Suite 1050

        Atlanta, GA  30326

    (e)    When did you first retain an attorney to represent you in your lawsuit against Bard? ████████ ██4

2.    Your Social Security Number: ___████████_____

3.    Your Date of Birth: ___████████_____

4.    Your current residential address:

    ████████████_____

    ███████████_____

5.    If you have lived at this address for less than 10 years, provide each of your prior residential addresses from 2000 to the present:

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

6.   ██████████████████████████████

If yes, provide the names and addresses of each spouse and the inclusive dates of your

marriage to each person:

████████████████████ _____

7.   ████████████████████

If Yes, please provide the following information with respect to each child:

| Full Name of Child | Date of Birth | Home Address | Whether Biological/Adopted |
|---|---|---|---|
| ███████████████████████████████████████████████ | | | |
| | | | |
| | | | |
| | | | |

8.   Identify the name and age of any person who currently resides with you and their

relationship to you:

████████████████████ _____

9.   Identify the name and age of any person who has resided with you at any point over the

past ten (10) years:



10.  Identify all secondary and post-secondary schools you attended, starting with high

school, and please provide the following information with respect to each:

| Name of School | Address | Dates of Attendance | Degree Awarded | Major or Primary Field of Study |
|---|---|---|---|---|
| ████████████████████████████████████████████████████████ | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

3



11.   Please provide the following information for your employment history over the past 10 years up until the present:

| Employer Name | Address | Job Title/Description of Duties | Dates of Employment | Salary/Rate of Pay |
|---|---|---|---|---|
|  |  |  |  |  |

12.   Have you ever served in any branch of the military? Yes_____   No__X____

If Yes, please provide the following information:

(a)    Branch and dates of service, rank upon discharge, and type of discharge received:

_____

(b)    Were you discharged from the military at any time for any reason relating to your medical, physical, or psychiatric condition? Yes_____     No_____

If Yes, state what that condition was:_____

_____

13.      ████████████████████████████████████████████████

14.    Before contacting any attorney regarding this lawsuit or claim, had you ever seen any television or print advertisements regarding possible claims against inferior Vena Cava Filter manufacturers?   Yes_____    No__X____

If Yes, set forth the approximate date and nature of any such advertisement, whether the advertisement included the name of a law firm, whether the advertisement specifically mentioned C. R. Bard, Inc., Bard Peripheral Vascular, Inc., or "Bard", and other details that you recall. _____

---

## II. CLAIM INFORMATION

1.    Have you ever received a Bard Inferior Vena Cava Filter? Yes_X____     No_____

If Yes, please check the box(es) for each type of Bard Inferior Vena Cava Filter you have received:

☐    Recovery®

X    G2®

☐    G2®X

☐    G2®Express

☐    Eclipse®

☐    Meridian®

☐    Denali®

☐    Simon Nitinol

☐    Other (please identify):_____

2.    For each Bard Inferior Vena Cava Filter identified above, please provide the following information:

    (a)    The date each Bard Inferior Vena Cava Filter was implanted in you:

    ██████████ _____

    (b)    The product code and lot number of each Bard Inferior Vena Cava Filter implanted in you:

      REF:RF – 310F   LOT-GFRC 0710 _____

    (c)    Current location of the Bard Inferior Vena Cava Filter, including any portion thereof, if known:

    █████████████████████████████████████

3.    Describe your understanding of the medical condition for which you received the Bard Inferior Vena Cava Filter(s): ████████████████████ _____

_____

4.    Give the name and address of the doctor who implanted the Bard Inferior Vena Cava Filter(s):__████████████ _____

__████████████████ _____

5.    Give the name and address of the hospital or other healthcare facility where the Bard Inferior Vena Cava Filter was implanted:__████████████

████████████ _____

6.    Have you ever been implanted with any other vena cava filters or related product(s) besides the Bard Inferior Vena Cava Filter(s) for the treatment of the same or similar condition(s) identified in your response to question 3 above? Yes_____   No__X____

If Yes:

    (a)    Please identify any such device(s) or product(s)._____

(b)    When was this device or product implanted in you?_____

_____

(c)    Did the implantation take place before, at the same time, or after the procedure during which you were implanted with a Bard Inferior Vena Cava Filter?

_____

(d)    Who was the physician who implanted this other device or product?

_____

(e)    At what hospital or facility was this other device or product implanted in you?

_____

(f)    Why was this other device or product implanted in you?

_____

7.    Other than the Bard Inferior Vena Cava Filter device that is the subject of your lawsuit or identified in response to question 6 above, are you aware of any other Vena Cava Filter(s) implanted inside your body at any time?    Yes_____

No__X____

If yes, please provide the following information:

(a)    Product name:_____

(b)    Date of procedure placing it and name and address of doctor who placed it:

_____

(c)    Condition sought to be treated through placement of the device:

_____

(d)    Any complications you encountered with the medical product or procedure:

_____

(e)    Does that product remain implanted inside of you today?    Yes_____    No_____

8.    ████████████████████████████████████████████

(a)     Provide the date you received the written and/or verbal information or
        instructions:

███████████████████████████████████████████

(b)     Identify by name and address the person(s) who provided the information and
        instructions:

███████████████████████████████████████ ____

_____

(c)     What information or instructions did you receive?

_____

(d)     If you have copies of the written information or instructions you received, please
        attach copies to your response.

_____

(e)     ███████████████████████████████████████████

(f)     ███████████████████████████████████████████

_____

(g)     If yes to (e), what potential complications were described to you?

_____

9.      ███████████████████████████████████████████

If Yes:

(a)     Has any doctor recommended removal of the Bard Inferior Vena Cava Filter(s)?

        Yes _____      No _____

        If Yes:

        (i)     Identify by name and address every doctor who recommended removal of
                the Bard Inferior Vena Cava Filter(s):_____

                _____

        (ii)    For each doctor identified in response to question 8(a)(i) above, state your
                understanding of why the doctor recommended removal._____

8

     (iii)    For each doctor identified in response to question 8(a)(i) above, state when the doctor recommended removal._____

_____

10.

(e)    Explain why you consented to have the Bard Inferior Vena Cava Filter(s), or any portion thereof, removed?

9



(f)    Does any medical provider, physician, entity, or anyone else acting on your behalf have possession of any portion of the Bard Inferior Vena Cava Filter that was previously implanted in you and subsequently removed?

11.    Has any doctor or healthcare provider unsuccessfully attempted to remove the Bard Inferior Vena Cava Filter(s) implanted in you?

Filter Removal/Attempted Removal #3

Doctor:_____

Hospital/Medical Facility:_____

Date:_____

(c) ████████████████████████████████████

accessing them through the jugular and femoral

veins._____

    ☐   Unknown

(d) ████████████████████████████████████

remains._____

    ☐   Unknown

(e)   Please check all that apply regarding attempted removal procedure #3:

    ☐   Attempted but unsuccessful percutaneous removal procedure

    ☐   Attempted but unsuccessful open abdominal procedure

    ☐   Attempted but unsuccessful open chest procedure

    ☐   Other, Describe: _____

    ☐   Unknown

12.   Do you claim that your Bard Inferior Vena Cava Filter(s) fractured?

11



5450502v2/26997-0001

(1) 

(2)

13.

5450502v2/26997-0001



(b)    When was the first time you experienced symptoms of any of the bodily injuries you claim in your lawsuit to have resulted from the Bard Inferior Vena Cava Filter(s)?



(c)    When did you first attribute these bodily injuries to the Bard Inferior Vena Cava Filter(s)?  June 26, 2014 _____

_____

(d)    To the best of your knowledge and recollection, please state the approximate date when you first saw a health care provider for any of the bodily injuries, or symptoms related thereto, you claim to have experienced related to the Bard Inferior Vena Cava Filter(s)?

(e)



14



(f)     Are you currently experiencing symptoms related to your claimed bodily injuries?

(g)     Are you currently seeing, or have you ever seen, a doctor or healthcare provider

for any of the bodily injuries or symptoms listed above?

h)      Were you hospitalized at any time for the bodily injuries you listed above?

15

14.

15.

16.

17.

5450502v2/26997-0001



18.

19.

---

### III. MEDICAL BACKGROUND

---

1. Provide your current: ▇▇▇▇▇ Height ▇▇▇▇ Weight ▇▇▇▇▇▇

2. Provide your: ▇▇▇▇▇ Weight ▇▇▇▇▇ (approximate, if unknown) at the time the Bard Inferior Vena Cava Filter was implanted in you.

3. In chronological order, list any and all surgeries, procedures and/or hospitalizations you had in the ten (10) year period BEFORE implantation of the Bard Inferior Vena Cava Filter(s). Identify by name and address the doctor(s), hospital(s) or other healthcare provider(s) involved with each surgery or procedure; and provide the approximate date(s) for each:

| Approximate Date | Description of Surgery or Hospitalization | Doctor or Healthcare Provider Involved |
|---|---|---|
| | | |

5450502v2/26997-0001



*[Attach additional sheets as necessary to provide the same information for any and all surgeries and hospitalizations leading up to the implantation of the Bard Inferior Vena Cava Filter.]*

4.  In chronological order, list any and all surgeries, procedures and/or hospitalizations you had AFTER implantation of the Bard Inferior Vena Cava Filter(s).  Identify by name and address the doctor(s), hospital(s) or other healthcare provider(s) involved with each surgery or procedure; and provide the approximate date(s) for each:

*[Attach additional sheets as necessary to provide the same information for any and all surgeries and hospitalizations after the implantation of the Bard Inferior Vena Cava Filter.]*

5.  To the extent not already provided in the charts above, provide the name, address, and telephone number of every doctor, hospital or other health care provider from which you have received medical advice and/or treatment from ten (10) years before the date the filter was implanted to the present:

18



19

6.    *Before the implantation* of the Bard Inferior Vena Cava Filter(s), did you regularly exercise or participate in activities that required lifting or strenuous physical activity? (Please include all physical activities associated with daily living, physical fitness, household tasks, and employment-related activities.)

7.    *Since the implantation* of the Bard Inferior Vena Cava Filter(s), have you regularly exercised or participated in activities that required lifting or strenuous physical activity? (Please describe all range of physical activities associated with daily living, physical fitness, household tasks, and employment-related activities.)

8.    During the past ten (10) years, what have been your primary hobbies or recreational

(c)      For what period of time do you claim that you were or have been unable to participate in any hobbies or recreational activities as a result of having been implanted with a Bard Inferior Vena Cava Filter(s)? ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9.      To the best of your knowledge, have you ever been told by a doctor or another health care provider that you have suffered, may have suffered, or presently do suffer from any of the following:



\* \* \* \* \* \* \* \* \* \*

THE FOLLOWING QUESTIONS ARE CONFIDENTIAL AND SUBJECT TO THE PROTECTIVE ORDER APPLICABLE TO THIS CASE.

(A)     Have you been diagnosed with and/or treated for any drug, alcohol, chemical and/or other addiction or dependency during the five (5) years prior to the filing of this lawsuit through the present? ▮▮▮▮▮▮▮▮▮▮

If yes, specify type and time period of dependency, type of treatment received, name of treatment provider, and current status of condition:

(B)     Have you experienced, been diagnosed with or received psychiatric or psychological treatment of any type, including therapy, for any mental health conditions including depression, anxiety, or other emotional or psychiatric disorders during the five (5) years prior to the filing of this lawsuit through the present? ▮▮▮▮▮▮▮▮

If yes, specify condition, date of onset, medication/treatment, treating physician and current status of condition:

* * * * * * * * * *

10.   Do you now or have you ever smoked tobacco products? ▮▮▮▮▮▮▮▮▮▮

If yes:

How long have/did you smoke?_____

12.   List each prescription medication you have taken for more than three (3) months at a time during the timeframe beginning five (5) years prior to implantation of the Bard Inferior Vena Cava Filter and continuing to the present, giving the name and address of the pharmacy where you received/filled the medication, the reason you took the medication, and the approximate dates of use.





## IV.  INSURANCE INFORMATION

1.  Provide the following information for any past or present medical insurance coverage from the timeframe beginning five (5) years prior to implantation of the Bard Inferior Vena Cava Filter and continuing to the present:

| Insurance Company Name and Address | Policy Number | Name of Policy Holder/Insured (if different than | Approximate Dates of Coverage |
|---|---|---|---|
| | | | |
| | | | |

2.  To the best of your knowledge, have you ever been approved to receive or are you currently receiving Medicare/Medicaid benefits due to age, disability, condition, or any other reason or basis?



*[Please note: if you are not currently a Medicare-eligible beneficiary, but become eligible for Medicare during the pendency of this lawsuit, you must supplement your response at that time.*

23

*This information is necessary for all parties to comply with Medicare regulations. See 42 U.S.C. 1395y(b)(8), also known as Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 and 42 U.S.C. 1395y(b)(2) also known as the Medicare Secondary Payer Act.]*

## V.  PRIOR CLAIM INFORMATION

1.     Have you filed a lawsuit or made a claim in the last ten (10) years, other than in the present suit relating to any bodily injury?

Yes__X____     No_____

If yes, please specify the following:

(a)      Court in which the lawsuit/claim was filed or initiated:__To the best of my knowledge, the claim was made in 2006._____

(b)      Case/Claim Number:__Unknown_____

2.

## VI.  FACT WITNESSES

1.     Identify by name, address, and relationship to you, all persons (other than your healthcare providers) who possess information concerning your injuries and/or current medical condition:

| Name | Address | Relationship to You | Information You |
|------|---------|---------------------|----------------|



## VII. IDENTIFICATION OF DOCUMENTS AND OTHER ELECTRONICALLY STORED INFORMATION

For the period beginning three (3) years prior to the implantation of the Bard Inferior Vena Cava Filter until the present, please identify all research, including on-line research, that you conducted regarding the medical complaints or condition for which you received the Bard Inferior Vena Cava Filter (pulmonary thromboembolism, anticoagulant therapy, etc.) Identify the date, time, and source, including any websites visited. (Research conducted subsequent to and for the purpose of understanding the legal and strategic advice of your counsel is not considered responsive to this request.)
<u>I may have researched pulmonary embolisms and drugs back in 2001 – 2002. I was in the hospital when the IVC was placed in 2007, and I did not conduct research.</u>

## VIII. DOCUMENT REQUESTS

1.  RELEASES.

    **NOTE:         Please sign and attach to this Fact Sheet the authorizations for the release of records appended hereto.**

2.  DOCUMENTS.  State whether you have any of the following documents in your possession, custody, and/or control.  If you do, please provide a true and correct copy of any such documents with this completed Fact Sheet.  Please ensure that the production of

documentation includes specific reference to the questions to which the document is provided in response, and please identify any documents you are producing responsive to a question with Bates Stamp identifiers.

(a)     If you were appointed by a Court to represent the plaintiff in this lawsuit, produce any documents demonstrating such appointment.

    (i)     Not applicable ____X_____

    (ii)     The documents are attached_____     [OR]   I have no documents_____

(b)     If you represent the Estate of a deceased person in this lawsuit, produce a copy of the decedent's death certificate and autopsy report (if applicable).

    (i)     Not applicable___X_____

    (ii)     The documents are attached_____     [OR]   I have no documents_____

(c)     Produce each and every medical record of each and every medical facility, pharmacy, or practitioner of the healing arts identified by you in response to the questions in Sections II and III above regarding your medical care and history for the time period beginning ten (10) years prior to the implantation of the Bard Inferior Vena Cava Filter and continuing to the present.

    (i)     Not applicable_____

    (ii)     The documents are attached _X_*other documents have been requested but have not yet been received).   [OR]   I have no documents_____

(d)     Produce any communication (sent or received) in your possession, which shall include materials accessible to you from any computer on which you have sent or received such communications, concerning the Bard Inferior Vena Cava Filter(s) or subject of this litigation, including, but not limited to all letters, emails, blogs, Facebook posts, Tweets, newsletters, etc. sent or received by you.  (Research conducted subsequent to and to understand the legal and strategic advice of your counsel is not considered responsive to this request.)

    (i)     Not applicable_____

    (ii)     The documents are attached _X_____     [OR]   I have no documents_____

(e)     Produce all documents, including journal entries, lists, memoranda, notes, diaries, photographs, video, DVDs or other media, discussing or referencing the Bard Inferior Vena Cava Filter(s), the injuries and/or damages you claim resulted from

the Bard Inferior Vena Cava Filter(s), and/or evidencing your physical condition from three (3) years prior to the implantation of the Bard Inferior Vena Cava Filter(s) to present. (Research conducted subsequent to and to understand the legal and strategic advice of your counsel is not considered responsive to this request.)

(i)      Not applicable_____

(ii)      The documents are attached_____     [OR]   I have no documents _X_____

(f)      Produce any Bard Inferior Vena Cava Filer product packaging, labeling, advertising, or any other product-related items in your possession, custody or control.

(i)      Not applicable_____

(ii)      The documents are attached_____     [OR]   I have no documents__X____

(g)      Produce all documents concerning any communication between you, your attorney(s), your agent(s), your expert(s), or your representative(s) and the Food and Drug Administration (FDA), or between you and any employee or agent of the Bard Defendants, regarding Bard Inferior Vena Cava Filters.

(i)      Not applicable_____

(ii)      The documents are attached_X_____     [OR]   I have no documents_____

(h)      Produce all documents that you, your attorney(s), your agent(s), your expert(s), or your representative(s) provided to the Food and Drug Administration (FDA) and/or the Department of Health and Human Services regarding Bard Inferior Vena Cava Filters.

(i)      Not applicable_____

(ii)      The documents are attached_____     [OR]   I have no documents_X_____

(i)      Produce all documents concerning any communication between you, your attorney(s), your agent(s), your expert(s), or your representative(s) with anyone at any television station, radio station, newspaper, periodical, magazine, weblog, internet website, or any other media outlet regarding Bard Inferior Vena Cava Filters.

(i)      Not applicable_____

(ii)      The documents are attached_____     [OR]   I have no documents_X_____

(j)     Produce all documents that you, your attorney(s), your agent(s), your expert(s), or your representative(s) provided to anyone at any television station, radio station, newspaper, periodical, magazine, weblog, internet website, or any other media outlet regarding Bard Inferior Vena Cava Filters.

     (i)     Not applicable_____

     (ii)     The documents are attached_____     [OR]   I have no documents__X____

(k)     Produce all documents in your possession, custody, or control evidencing or relating to any correspondence or communication between C. R. Bard, Inc. or Bard Peripheral Vascular, Inc. (or any related companies or divisions) and any of your doctors, healthcare providers, and/or you relating to Bard Inferior Vena Cava Filters, except as to those communications which are protected by the attorney-client privilege or attorney work product doctrine.

     (i)     Not applicable_____

     (ii)     The documents are attached_____     [OR]   I have no documents__X____

(l)     Produce all documents in your possession, custody, or control reflecting, describing, or in any way relating to any instructions or warnings you received prior to implantation of any Inferior Vena Cava Filter(s) concerning the risks and/or benefits associated with Inferior Vena Cava Filter(s), including but not limited to the Bard Inferior Vena Cava Filter implanted in you.

     (i)     Not applicable_____

     (ii)     The documents are attached_____     [OR]   I have no documents__X____

(m)     Produce any and all documents reflecting the model number and lot number of the Bard Inferior Vena Cava Filter(s) you received.

     (i)     Not applicable_____

     (ii)     The documents are attached__X____   [OR]   I have no documents_____

(n)     If you underwent surgery or any other procedure to remove, in whole or in part, the Bard Inferior Vena Cava Filter(s), produce any and all documents, other than documents that may have been generated by expert witnesses retained by your counsel for litigation purposes that relate to any evaluation of the Bard Inferior Vena Cava Filter(s) removed from you.

     (i)     Not applicable_____

          (ii)      The documents are attached_____   [OR]   I have no documents___X___

(o)     If you claim lost wages or lost earning capacity, produce copies of your Federal and State tax returns for the five (5) years prior to implantation of the Bard Inferior Vena Cava Filter(s) to the present redacting irrelevant information.

          (i)      Not applicable_____

          (ii)      The documents are attached___X___   [OR]   I have no documents_____

(p)     Produce all documents in your possession, custody, or control concerning payment by Medicare on behalf of the injured party and relating to the injuries claimed in this lawsuit.  This includes, but is not limited to Interim Conditional Payment summaries and/or estimates prepared by Medicare or its representatives regarding payments made on your behalf for medical expenses relating to the subject of this litigation.

          (i)      Not applicable_____

          (ii)      The documents are attached_____   [OR]   I have no documents___X___

*[Please note: if you are not currently a Medicare-eligible beneficiary, but become eligible for Medicare during the pendency of this lawsuit, you must supplement your response at that time. This information is necessary for all parties to comply with Medicare regulations.  See 42 U.S.C. 1395y(b)(8), also known as Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 and 42 U.S.C. 1395y(b)(2) also known as the Medicare Secondary Payer Act.]*

(q)     Produce all screenshots of all webpages of each type of social media used by you (including, but not limited to, Facebook, Twitter, Instagram, Vine, Snapchat, YouTube, LinkedIn) showing any and all "posts" and/or "messages" from the date of implantation to the present.

          (i)      Not applicable_____

          (ii)      The documents are attached___X___   [OR]   I have no documents_____

(r)     Produce the Bard Inferior Vena Cava Filter(s) or any and all components thereof previously implanted in you.

          <u>Plaintiff's counsel has the filter and a strut.  Plaintiff will produce these for inspection after a protocol for device inspection has been entered in the case.</u>

## **VERIFICATION**

I, _Sherr-una Booker_, declare under penalty of perjury, subject to all applicable laws and in the presence of the below named witness, that I have carefully reviewed the final copy of this Plaintiff Fact Sheet dated _7/29/16_ and verified that all of the information provided is true and correct to the best of my knowledge, information and belief.

_Amy Nimtz_
Signature of Witness

_Sherr-una Booker_
Signature of Plaintiff

_Amy Nimtz_
Name of Witness

_3340 Peachtree Rd. NE. Ste 1050._
Address of Witness   _Atlanta, Ga 30326_

29

# REDACTED DOCUMENTS RELATED TO DOCKET 7456

## Exhibit C – Filed Redacted

Do Not Disclose - Subject to Further Confidentiality Review

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF ARIZONA

 3                          -  -  -

 4   IN RE BARD IVC FILTERS        : NO. MD-15-02641-PHX-DGC

     PRODUCTS LIABILITY LITIGATION    :

 5

 6

 7                          -  -  -

 8                     MARCH 21, 2017

 9                          -  -  -

              DO NOT DISCLOSE - SUBJECT TO FURTHER

10                  CONFIDENTIALITY REVIEW

11              Videotape deposition of  █████████

     ████  ████████ M.D., taken pursuant to notice, was held at

13   the law offices of Aaronson Rappaport Feinstein &

14   Deutsch, LLP, 600 Third Avenue, New York, New York

15   10016, beginning at 12:45 p.m., on the above date,

16   before Amanda Dee Maslynsky-Miller, a Certified

17   Realtime Reporter and Notary Public in and for the

18   State of New York.

19

20                          -  -  -

21

22

23

              GOLKOW TECHNOLOGIES, INC.

24        877.370.3377 ph | 917.591.5672 fax

                  deps@golkow.com

25
```

Do Not Disclose - Subject to Further Confidentiality Review

```
 1    would I have used a different device if I knew at

 2    the time that the Bard filter was not ideal or as

 3    good as some of the other implants?  The answer

 4    would have to be yes.

 5    BY MR. MATTHEWS:

 6         Q.       You would have used --

 7         A.       I would have used a different filter

 8    if there was a different filter that I knew of that

 9    was better, in terms of its safety profile.

10         Q.       In terms of the documents that you

11    have, I think they are Exhibit-2 and 3, the health

12    hazard report and then the investigation conducted

13    by Bard that showed a fivefold increased risk for

14    fracture and embolization of that fracture, and you

15    told us that would be the type of information you

16    would want to know in your benefit/risk analysis,

17    knowing that --

18         A.       Yes.

19         Q.       -- and seeing that today, would that

20    have been enough to use another filter?

21              MS. HELM:  Object to the form.

22              THE WITNESS:  Difficult to say with

23    certainty.  It would depend upon what other filters

24    we had at the time and what their problems would

25    have been.  But it would have been a very important
```

Do Not Disclose - Subject to Further Confidentiality Review

```
 1    if you extrapolate indwelling time with the G2
 2    filter, that making it a 25 percent filter fracture
 3    rate for the G2.
 4                   Do you understand that premise within
 5    the paper?
 6         A.      I think I understand the premise.
 7    I'm not so sure that I understand the science behind
 8    it.
 9         Q.      Well, let me ask you this question,
10    then, Doctor: ███████████████████████████████
      ██████████████████████████████████ that there was even a 12
12    percent probability of fracture with that filter,
13    would you have used a G2?
14                   MS. HELM:   O████ to the form.
15                   THE WITNESS:  Unlikely.
16    BY MR. MATTHEWS:
17         Q.      If there was a 25 percent risk of
18    filter fracture, can we safely say you would not
19    have used that filter?
20         A.      Most likely.  But you have to
21    understand that you have to have a way of treating
22    these difficult patients.  So some filter has to be
23    used.  And it becomes a matter of deciding which
24    filter is best, so to speak.  And sometimes that's
25    not entirely clear.
```

1    longer contraindicated for anticoagulants?

2              MR. MATTHEWS:  Object to the form.

3              THE WITNESS:  Yes.

4    BY MS. HELM:

5         Q.    And as you sit here today, ████████

██ █████████████████████████████████████████████████

██ ████

8         A.    I can only guess.

9         Q.    We're not asking you to guess.

10   ████████████████████████████

██ ████████████████████████████████████████████████

██ ████████████████████████████████████████████████

██ ████

14             MR. MATTHEWS:  Object to the form.

15             THE WITNESS:  Of the G2 filter?

16   BY MS. HELM:

17        Q.    Yes.

18        A.    ███████████████████████████

██ ██████████████████████████.

20        Q.    And, in fact, you previously looked

21   at Exhibit-4, which was the IFU --

22        A.    Yes.

23        Q.    -- for the G2 filter.

24   ████████████████████████████

██ ██████████████████████████████████████

1      ██████████████?

2           A.        ███.

3           Q.        And, specifically, in Section G of

4      the IFU, it discusses that one of the known

5      complications of the G2 filter is movement or

6      migration; is that right?

7           A.        It does.

8           Q.        And it also specifically addresses

9      that filter fracture is a known complication of vena

10     cava filters, does it not?

11          A.        It does.

12          Q.        And, in fact, fracture is a

13     complication of all vena cava filters, isn't it?

14          A.        It is.  As is migration.

15          Q.        Thank you.

16                              ████████████████████

██   ██████████████████████████████████████████

██   █████████     There have been reports of embolization

19     of vena cava filter fragments resulting in retrieval

20     of the fragment using endovascular and/or surgical

21     techniques.  Most cases a filter fracture, however,

22     have been reported without any adverse clinical

23     sequelae.

24                    Is that right?

25          A.        Uh-huh.



1       Q.       ████████████████████████

█  ████, you were aware, as you've stated, that filter

3    fracture was a risk associated with a G2 and all

4    filters; is that right?

5       A.       Yes.

6       Q.       And you took that into consideration

7    when weighing the risk/benefit ███████████████

█  ████████████████  is that right?

9       A.       Yes.

10      Q.       ███████████████████

Do Not Disclose – Subject to Further Confidentiality Review



```
 1    ███████████████████████████████████████████

 █    ████████

 3         A.       I'm not entirely sure that that is

 4    clear to me from the record.  ███████████████

 █    ███████████████████████████████

 █    ████████████████████████████████████████████

 █    ████████████

 █              ██████████████████████████████

 █    ████████████████████████████████████████████

 █    ███████████████████████████████████████████

 █    ████████████████████████████████████████████

 █    ██████████████████████████████████████

 █    ████████████████████

14         Q.       Back on Page -- and I apologize, I'm

15    jumping around -- but back on Page 71 --

16         A.       Sure.

17         Q.       -- in your handwritten note it says,

18    ███████████████████████████████████████

19              Is that right?  I hope that's what it

20    says.

21         A.       Yes.

22         Q.       Schedule for insertion --

23         A.       Yes.

24         Q.       -- of retrievable filter today?

25         A.       ███████████████████████████████
```



Do Not Disclose - Subject to Further Confidentiality Review

```
1    ████████████████████████████?

2              MR. MATTHEWS:  Object to the form.

3              THE WITNESS:  ████████████████

█    ███████████████████████████████████

█    █████████████████████████████████

█    ████████████████████████

7    BY MS. HELM:

8         Q.   ████████████████████████

█    ██████████████████████████████████████

█    ██████████████████████████████████████

█    ██████████

█         ██     ██

13        Q.   ████████████████████████

█    █████████████████

█         ██     ██

16        Q.   Why not?

17        A.   I've never done so.  It's just not my

18   practice to do so.  I think that as a physician when

19   you're dealing with a patient, it's really on you to

20   make some important decisions for them.  And I think

21   an IFU is a complicated document.  You may correct

22   me if I'm wrong, but I think the IFU is mostly

23   intended for legal purposes.  I'm not so sure it's

24   intended to guide medical practice.  And I don't

25   think its intent is in any way to guide a patient in
```

Do Not Disclose - Subject to Further Confidentiality Review

```
 1                    And I assume that you're also not

 2   aware that a number of Bard witnesses and employees

 3   have had their depositions taken --

 4        A.      I am not.

 5        Q.      -- about these documents and the

 6   actions and information in these documents?

 7                    You're not aware of that, are you?

 8        A.      No.

 9        Q.      And plaintiff's counsel didn't show

10   you any of that testimony, did he?

11        A.      No.

12        Q.      When it comes to making decisions for

13   your patients and weighing the risk and benefits of

14   medical devices that you use with your patients, you

15   rely on a number of sources, don't you?

16        A.      I do.

17        Q.      You rely on the FDA?

18        A.      Yes.

19        Q.      You rely on your partners and

20   colleagues?

21        A.      Yes.

22        Q.      You rely on available medical

23   literature regarding the device or the product?

24        A.      Yes.

25        Q.      You rely on your own experiences?
```

Do Not Disclose - Subject to Further Confidentiality Review

```
1        A.      I do.

2        Q.      And you work with a number of

3   different medical devices, I think you said as many

4   as 50; is that right?

5        A.      Off the top of my head I would say

6   yes.

7        Q.      And what you rely on is the

8   manufacturer of medical devices to provide you with

9   reliable information about the device; is that fair?

10       A.      Yes.

11       Q.      And you would not want to receive

12  unreliable or preliminary or internal investigations

13  without knowing the outcome or the results; is that

14  right?

15       A.      That's right.

16       Q.      Because getting unreliable or

17  incomplete information could harm your patient care,

18  couldn't it?

19       A.      It could be misleading, yes.

20       Q.      And it could negatively impact your

21  practice, couldn't it?

22       A.      Yes.

23       Q.      So in making treatment decisions for

24  patients, you are not -- you don't rely on

25  information contained in internal documents from the
```

Do Not Disclose - Subject to Further Confidentiality Review

```
 1   medical -- let me start that over.  I got lost in my

 2   own question.

 3                In making treatment decisions for

 4   your patients, you're not relying on information

 5   contained in internal documents from manufacturers

 6   of medical devices, are you?

 7        A.     No.

 8        Q.     It has been suggested to you today

 9   that Bard Recovery and G2 filters have complication

10   rates that are significantly higher than other

11   filters.

12                Do you recall that being suggested to

13   you?

14        A.     Yes.

15        Q.     In your own experience, did the G2

16   filter have an unexpectedly high complication rate

17   over other filters?

18        A.     In the short-term, no; in the

19   long-term, I think it is well recognized that those

20   filters are associated with a high incidence of

21   fracture and fragment migration.  Based on my

22   experience, I have not seen a lot of filters

23   fragment or migrate.

24        Q.     In fact, in one of the articles you

25   wrote in 2012 -- was it this one or the other one --
```

Do Not Disclose - Subject to Further Confidentiality Review

```
 1   designed --

 2        A.      No.

 3        Q.      -- an IVC filter, correct?

 4        A.      No.

 5        Q.      And you've never built one?

 6        A.      I just do my best to put them in.

 7        Q.      Thank you.

 8                Do you recall any specific

 9   discussions you had with the sales reps from Bard

10   regarding the G2 filter?

11        A.      No.

12        Q.      Do you recall ever raising any

13   questions or concerns with the sales reps regarding

14   the G2 filter?

15        A.      No.

16        Q.      Your decision to stop using Bard

17   filters was based on your review of literature; is

18   that right?

19        A.      It would be based on multiple --

20   multiple factors.  As I told you before, my personal

21   experience was that initially the complication rate

22   was low and acceptable.  But long-term durability of

23   these implants became clear based on reports

24   published in the literature, based on discussions

25   with colleagues.
```

1    general?  Yes, of course.  I think we alluded to

2    that previously in the sense that we have pushed

3    away from using filters and make sure that when we

4    use them, we use them in those patients who have

5    absolute indications for implantation.

6         Q.      Doctor, you were asked a number of

7    times today, if something is true, would that have

8    impacted your decision of whether to use a certain

9    filter or not.

10              Do you recall those questions?

11        A.      Yes, I do.

12        Q.      What you have not been provided today

13   is with any peer-reviewed or reliable information

14   showing that those "ifs" are, in fact, true; is that

15   right?

16              MR. MATTHEWS:  Object to the form.

17              MR. LERNER:  That's more a statement

18   than a question, don't you think?

19              THE WITNESS:  I agree.

20   BY MS. HELM:

21        Q.      And for you to make an evaluation and

22   to make a decision relating to whether you would

23   have done something or not, it would be important

24   for you to have reliable and complete information;

25   is that right?

Do Not Disclose - Subject to Further Confidentiality Review

```
 1          A.      Yes.

 2                  MS. HELM:  That's all I have right

 3    now.

 4                  MR. MATTHEWS:  I have just some quick

 5    follow-ups.

 6                  THE WITNESS:  Okay.

 7                       -  -  -

 8                  EXAMINATION

 9                       -  -  -

10    BY MR. MATTHEWS:

11          Q.      You were just asked about

12    peer-reviewed information that's been put in front

13    of you.

14          A.      Yes.

15          Q.      The Nicholson article is a

16    peer-reviewed journal article; is that correct?

17          A.      It is.

18          Q.      And let me show you the next exhibit,

19    which is the VJ study, which is called --

20                  MS. HELM:  What exhibit?

21                  MS. BLAS:  12.

22                       -  -  -

23                  (Whereupon, Exhibit-12, Fractured

24    Bard Recovery, G2, and G2, Express Inferior Vena

25    Cava Filters:  Incidence, Clinical Consequences, and
```

# REDACTED DOCUMENTS RELATED TO DOCKET 7456

## Exhibit E – Filed Redacted



Deposition of:

## Sherr-Una Booker

*February 20, 2017*

In the Matter of:

## In Re: Bard IVC Filters Products Liability

Veritext Legal Solutions

1075 Peachtree St. NE , Suite 3625
Atlanta, GA, 30309
800.808.4958 | calendar-atl@veritext.com  | 770.343.9696

Sherr-Una Booker                                    February 20, 2017
In Re: Bard IVC Filters Products Liability

Page 90

1       A    You mean ███████████████? 

2       Q    I'm sorry, Great -- I don't know where I

3   got Delta Dental. ██████████████████████

███████████████████████████████    ████████████

████████████████████████████████████████████████

████████████████████████████████████

7       A    I believe I have a week, took a week off.

8       Q    ████████████████████████████████████

███████████████

██   ██    ██████████████████████████████████

████████████████████████████████████████████████

██████    ████████████████████████████████████████

███████████████

14      Q    █████████████████████████████████████████

████████████████████    ██████████████████████

██   ██    ████████

██   ██    █████████████████

██   ██    ████████████████████████

19      Q    █████████████████████████████████████

█████████████████████████

██   ██    ███████████████████

22      Q    ████████████████████████████████████

██████████████████████████    ██████████████████████.

24      A    I believe it was June.

25      Q    You moved to Georgia in -- when?

Sherr-Una Booker                                     February 20, 2017
In Re: Bard IVC Filters Products Liability

Page 91

1       A    2010.

2       Q    When in 2010?

3       A    October.

4       Q    Well -- okay.

5       A    October 2010.

6       Q    So from October of 2010 until June of

7    2011, were you employed?

8       A    No.

9       Q    ████████████████████████████████████

██    ████████

██    █    ████████████████████████.

12      Q    █████████████████████████████████████

██    ███████████████████████████████████████

██    █████████████████

██    █    ████████████████████████

16      Q    █████████████████████████████████████

██    ██████████████████████

██    █    █████████████████████████████████

██    ████████████████████    ████████████████████████

██    ███████████

21      Q    ████████████████████████████████████

██    ████████████████████████████████████

██    █    ████████████████

24      Q    ████████████████████████████████████

██    █    ████████████████████████████

Sherr-Una Booker                    February 20, 2017
In Re: Bard IVC Filters Products Liability



Page 162

Sherr-Una Booker                          February 20, 2017
In Re: Bard IVC Filters Products Liability

Page 163



Case 2:15-md-02641-DGC   Document 8183-8   Filed 10/13/17   Page 84 of 117
Sherr-Una Booker                              February 20, 2017
In Re: Bard IVC Filters Products Liability

Page 166

1  ████████████████

2       A    I don't remember talking to anybody.

3       Q    ██████████████████████████████████████

█ ███████████████████   ██████████████████████

█ ████████████████████████████████████████████

█ ████████████████████████████████████████████

█ ████████████████████████████████████████████

█ ██████████

█      ██   ███████████████████████

10      Q    When did you first learn that you had a

11  Bard filter?

12      A    Sometime after I hired my lawyers.

13      Q    ██████   ████████████████████████████████

█ ████████████████████████████████████████

█ ██████████████████████████████████████  ████

█ █████████████████████████████████████████████

█      ██   ██████████████████████████████

█      ██   █████████████████

█      ██   ███████████████  ████████

█      ██   █████████████████████████

█ █████████████████████████████████████████████

█ █████████████████████████████████████████████

█ ██████████████████

█      ██   ████████████████████████████████

█ █████████████████████

Sherr-Una Booker                              February 20, 2017
In Re: Bard IVC Filters Products Liability

Page 202



1      Q    Okay.

17



Sherr-Una Booker                    February 20, 2017
In Re: Bard IVC Filters Products Liability

Page 218

1    us your Instagram, if you would look up your

2    Instagram name.  Thank you.

3              Go off the record.

4              THE VIDEOGRAPHER:  Going off the record,

5    the time is 3:30.

6              (Recess 3:30-3:43 p.m.)

7              THE VIDEOGRAPHER:  And we are back on the

8    record.  The time is 3:43.  You may continue.

9    BY MS. HELM:

10        Q    Ms. Booker, while we were on break, were

11   you able to look up the app that you talked about

12   that you're using for medical care now?

13        A    Yes.

14        Q    And what's it --

15        A    It's called Doctors On Demand.

16        Q    And were you able to look up your

17   Instagram name?

18        A    Yes.

19        Q    And what is it?

20        A    ███████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████

████████████████

24        Q    Would you look at -- I'm sorry, let me

25   find my page.  We're going to stay in Exhibit 2.  On

Sherr-Una Booker                              February 20, 2017
In Re: Bard IVC Filters Products Liability

Page 219



1    page 14 of Exhibit 2, I want to just make sure we're

2    clear.  There's a question that starts with a B in

3    parentheses, do you see that?  It says:

9         Q

21        Q    So the information that you provided under

22   oath on page 14 of Exhibit 2 that you signed in July

23   of 2016 is incorrect?

24        A    Yes.

25        Q    Okay.  Did you have a chance to read it

Sherr-Una Booker                    February 20, 2017
In Re: Bard IVC Filters Products Liability

Page 220

1    before you signed it and attested that it was true

2    and correct in July of 2016?

3         A    Yeah.

4         Q    Okay.

5         A    Yes, I did.

6         Q    Okay.  And you understand that this

7    information was provided us as if you were under

8    oath in July of --

9         A    Yes.

10        Q    2000 --

11        A    I should have elaborated more.  Sorry.

12        Q    ███████████████████████████████████

     ███████████████████████████████████████████

     ██████████████████

         █    ██████████████████████████████████

     ████████

         █    █████████████████

         █    ██████████████

         █    ██████████

20        A    ████████████████████████████████

     █████████████████████████████  ████████

     ██████████████████████████████████████

     ████████████████████████████████

     ███████████████████████████████

     ███████  ██████████████████████████████

Sherr-Una Booker                              February 20, 2017
In Re: Bard IVC Filters Products Liability

Page 221



Sherr-Una Booker
In Re: Bard IVC Filters Products Liability
February 20, 2017

Page 222



20    Q

24    A    -- correct.

25    Q    And this was right -- while you were

Sherr-Una Booker                                February 20, 2017
In Re: Bard IVC Filters Products Liability



Sherr-Una Booker                    February 20, 2017
In Re: Bard IVC Filters Products Liability

Page 251

1    you taken any?

2        A     No.

3        Q     Have you gone on any kind of a web page or

4    chatroom or anything and talked to anybody else who

5    has an IVC filter?

6        A     No.

7        Q     Do you know anyone else who has an IVC

8    filter?

9        A     No.

10       Q     Other than you, has anybody else in your

11   family ever filed a lawsuit, that you're aware of,

12   for injuries?

13       A     What kind of injuries?

14       Q     Any kind of injuries.  From an accident,

15   where they claimed someone else caused them to be

16   injured?

17       A     In my family?

18       Q     Yes, ma'am.

19       A     None that I know of.

20       Q     Have you ever spoken with anyone at Bard?

21       A     No.

22       Q     Have you ever tried to speak to anyone at

23   Bard?

24       A     No.

25       Q     Have you deleted anything off your

# REDACTED DOCUMENTS RELATED TO DOCKET 7456

## Exhibit F – Filed Redacted

# REDACTED DOCUMENTS RELATED TO DOCKET 7456

## Exhibit G – Filed Redacted

Do Not Disclose - Subject to Further Confidentiality Review

```
 1                  UNITED STATES DISTRICT COURT

 2                     DISTRICT OF ARIZONA

 3

     In Re Bard IVC Filters      ) No. MD-15-02641-PHX-DGC

 4   Products Liability          )

     Litigation                  )

 5                               )

 6           DO NOT DISCLOSE - SUBJECT TO FURTHER

                   CONFIDENTIALITY REVIEW

 7

           VIDEOTAPED DEPOSITION OF ███████████████

 8

 9

10                     March 22, 2017

11                       12:54 p.m.

12

13

14

15

           Gwinnett Consultants in Cardiology

16                   755 Walther Road

                   Lawrenceville, Georgia

17

18

19

20

21

22

23

     Reported by:   F. Renee Finkley, RPR, RMR, CRR, CLR,

24   CCR-B-2289
```



1        A.    ███████████████████████████. TTE

█  ███████████████████████████.

3        Q.    Okay.  And you -- and that's Exhibit A6,

4   correct?

5        A.    A6 is -- yes.

6        Q.    Okay.

7        A.    I'm not sure why it's labeled --██████

█  ████████████████████████████████████

9   because you'll see at the very bottom of it.

10       Q.    See, I'm not completely losing my mind,

11   because it definitely says in ████████████████

12       A.    Yes, it does.  That's -- I think that's

13   just boilerplate computer --

14       Q.    That's fine.  That's fine.

15             And based on this study, ███████████████

█  ███████████████████████████████████████████

█  ███████████████████████████████████████████

█        ████  █████████████

19       Q.    ████████████████████████████████████

█  ████████████

█        ████  ██████

22       Q.    ████████████████████████████

█        ████  ██████

24       Q.    ████████████████████████████



1 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬

▬ ▬ ▬▬▬ .

5    Q.    And in the ▬▬ ▬▬▬▬▬▬▬

▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

9    A.    I ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬▬▬▬▬▬▬

▬ ▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬▬▬▬▬

▬ ▬ ▬▬▬

▬ ▬ ▬▬▬ ▬▬▬▬▬▬▬▬▬

▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬

24    A.    I'm not sure I understand the question.

# REDACTED DOCUMENTS RELATED TO DOCKET 7456

## Exhibit H – Filed Redacted

```
 1                UNITED STATES DISTRICT COURT
                       DISTRICT OF ARIZONA
 2

    ------------------------------§
 3                                §
    In Re Bard IVC Filters         § No. MD-15-02641-PHX-DGC
 4  Products Liability Litigation  §
                                  §
 5  ------------------------------§
 6
 7
 8                          - - -
 9                Tuesday, June 20, 2017
10                          - - -
11
                      ** DO NOT DISCLOSE **
12
         ** SUBJECT TO FURTHER CONFIDENTIALITY REVIEW **
13
14                          - - -
15
16
17        Videotaped deposition of ██████████,
       M.D., held at Mahaffey, Pickens & Tucker,
18     1550 North Brown Road, Suite 125, Lawrenceville,
       Georgia, commencing at 10:02 a.m., on the above
19     date, before Susan D. Wasilewski, Registered
       Professional Reporter, Certified Realtime
20     Reporter, Certified Realtime Captioner, Certified
       Manager of Reporting Services, Florida
21     Professional Reporter, Certified Court Reporter
       (NJ), and Realtime Systems Administrator
22
                            - - -
23
                  GOLKOW LITIGATION SERVICES
24         877.370.3377 ph | 917.591.5672 fax
                     deps@golkow.com
25
```

1       Q.    Fair enough.   Throughout your testimony today

2   you have testified that during ███████████████████████

███  ██████████████████████████████████████

███  ██████████████████████████████████  ████████████

███  ██████████████████████████████████████████

███  ████████████████████████████████████████

███  ████████████████████

███     ███    █████

9       Q.    Okay.   ████████████████████████████████████

███  ███████████████████████████████████████

███     ███    ██████████████.

12      Q.    Okay.   And would you agree with me that any

13  medical professional who is ████████████████████████

███  █████████████████████████████████████████████

███  ████████████████████████████████████████████

███  ███████

███     ███    ████████████████████████.  We see it all

18  the time, pacemaker placements and defibrillator

19  placements, so it's not unusual for -- sometimes even

20  when it's not damaged, they will get tricuspid

21  regurgitation from just the lie of the pacemaker

22  lead, so it's something you see.

23      Q.    ████████████████████████████████████████

███  ████████████████████████████████████████

███     ███    █████    ██████████████    ██████████████