# Exhibit 1

```
 1                UNITED STATES DISTRICT COURT
 2                     DISTRICT OF ARIZONA
 3
 4
 5      -------------------------------
                                       )
 6      IN RE BARD IVC FILTERS         )
        PRODUCTS LIABILITY             ) NO. MD-15-02641-PHX-DGC
 7      LITIGATION,                    )
                                       )
 8      -------------------------------
 9                       DO NOT DISCLOSE
             SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
10
11                    VIDEOTAPED DEPOSITION
                             - of -
12               CHRISTOPHER S. MORRIS, M.D.
13
14
15      taken on behalf of the Plaintiffs on Tuesday,
        July 25, 2017, at the Courtyard by Marriott,
16      25 Cherry Street, Burlington, Vermont,
        commencing at 9:08 AM.
17
18
19
20          VIDEO TECHNICIAN:  DEVYN MULHOLLAND
21          COURT REPORTER:  JOHANNA MASSÉ, RMR, CRR
22
23
24
```

Do Not Disclose - Subject to Further Confidentiality Review

```
 1       A.    Yes.
 2       Q.    What level of certainty did you apply to your
 3   opinions?
 4             MR. ROGERS:   Object to the form.
 5             You can respond.
 6       A.    I don't know really how to answer that
 7   question.  I think that's more of a legal term, as far
 8   as I can tell, but I approached this litigation the
 9   same way I practice interventional radiology on a daily
10   basis.  I always seek the truth, number one.  I use
11   many factors to help render my opinions.  That includes
12   first and foremost my personal experience, which I
13   consider large.  I also review the medical literature,
14   the pertinent medical literature, of which there's not
15   a lot of Level I or Level II evidence related to IVC
16   filters, unfortunately, and I'm -- I'm part of that
17   problem.  I've contributed to the Level III and below
18   evidence as well.
19             But I still use the literature to help me
20   make -- make these decisions.  I attend national
21   meetings, talk with colleagues, participate in journal
22   clubs, and honestly rely a lot on the FDA to -- to help
23   make these decisions as well.  So there are lots of
24   different factors that go into it.
```

```
 1      Q.    Right.  So --
 2      A.    My -- I approach the litigation using the
 3   same -- same methodology, essentially.  So I would say
 4   a high level of certainty.
 5      Q.    Right.  So I understand your answer was mostly
 6   about your methodology, your approach, what things
 7   you -- how you approach reaching a decision, and I'm --
 8   and I think the last part of your answer where you said
 9   "so I would say a high level of certainty," that's
10   really what I was getting after with my question is
11   what level of certainty, and you said a high level of
12   certainty.
13            So my question follow-up on that is, Did
14   you --
15      A.    I was going to say the reason I said all those
16   is because if I just relied on a hunch or what my
17   pulmonology colleague told -- told me that had never
18   placed a filter in his life, that methodology would
19   lead me to have less of a high level of certainty.
20      Q.    Of course.
21      A.    I might have a low -- so that's why I had to
22   give you the background on how I know that I reached a
23   high level of certainty in my opinions.
24      Q.    Yes.  And so if you were to put a numerical
```

```
 1   quantification to "high level of certainty," would it

 2   be -- what would it be, approximately?

 3           MR. ROGERS:  Object -- object to the form.

 4      A.   That is a very difficult question to answer,

 5   quant- --

 6      Q.   You're getting paid $500 an hour to answer

 7   hard questions.

 8      A.   Well, yeah.

 9           MR. ROGERS:  Object to the form.  That's not

10   the definition --

11           MR. ROTMAN:  I'll strike that.

12           MR. ROGERS:  -- of what makes a question

13   acceptable.

14           MR. ROTMAN:  I'll strike that.  I'll strike

15   that.

16      Q.   Maybe you can't answer it.

17      A.   I mean, you know, the -- so --

18      Q.   What level of --

19      A.   -- I have to -- I have to answer that

20   difficult question with a difficult answer.  And, you

21   know, we were talking on a break a little while ago

22   about memory issues.  My -- my benchmark for 100

23   percent certain medical science, so to speak my

24   touchstone, is my brother, who I'm very close to, who's
```

```
 1    a top ten neuroscience researcher specializing in

 2    Alzheimer's and memory disorders, so I gauge that as

 3    being 100 percent certain.  He has $50 million in

 4    grants.  He's the quintessential medical scientist that

 5    relies on Level I and Level II evidence.  So when I

 6    compare his body of work, which I know -- which I've

 7    been following my entire life -- again, he's -- you

 8    know, he's very close to me and -- and I really respect

 9    his degree of scientific validity.  When I compare that

10    to the literature that's available regarding IVC

11    filters, there's basically no -- no comparison, so how

12    can I make 100 percent certain opinions based on

13    literature which is less than Level I or Level II

14    evidence?

15         Q.   Understood.  And -- and so nevertheless, you

16    have reached opinions --

17         A.   Yes, I --

18         Q.   -- and you had -- and in order to do that, you

19    had to reach a certain point based on your review of

20    the evidence where you had a high level of certainty;

21    that's what you testified.  And I'm trying to

22    understand how to understand what you mean by "high

23    level of certainty."  So, for example, I asked you for

24    a numerical and I don't -- and I didn't get an answer
```

```
 1   to that.
 2       A.    And I can't answer that.
 3       Q.    And you can't answer that.
 4       A.    Right.
 5       Q.    So, you know, would -- would "high level" mean
 6   more than 80 percent certain?
 7             MR. ROGERS:  Object --
 8       Q.    Let me -- let me suggest that as a starting
 9   point.
10             MR. ROGERS:  Object to the form.  Asked and
11   answered.
12             You can respond.
13       A.    And your -- the question is related to all my
14   opinions?
15       Q.    Yeah.  Your opinions --
16       A.    Yeah.
17       Q.    -- in this case.
18       A.    I would say yes, I'm -- I'm more than a B -- B
19   student, so it would be more than 80 percent, yes.  I
20   generally score more than 90 percent.
21       Q.    So that's what you generally look for is more
22   than 90 percent certainty for your opinions in this
23   case?
24       A.    Generally speaking, yes.
```

# Exhibit 2

Do Not Disclose - Subject to Further Confidentiality Review

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

No. MD-15-02641-PHX-DGC

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IN RE BARD IVC FILTERS PRODUCTS

LIABILITY LITIGATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DO NOT DISCLOSE

SUBJECT TO FURTHER CONFIDENTIALITY REVIEW

VIDEOTAPED DEPOSITION OF CLEMENT J. GRASSI, MD

Thursday, June 15, 2017

9:24 a.m.

Held At:

Nelson Mullins Riley & Scarborough LLP

One Post Office Square

Boston, Massachusetts

REPORTED BY:

Maureen O'Connor Pollard, RMR, CLR, CSR

Golkow Litigation Services - 1.877.370.DEPS

Do Not Disclose - Subject to Further Confidentiality Review

Page 91

```
 1      mentioned as compared to there being only one
 2      that must explain all fractures?
 3           A.   My own personal opinion is that I have
 4      not yet encountered an explanation which has
 5      weight of evidence behind it.  Whether it is
 6      connected with one factor or multifactorial, I
 7      really can't say.  What I can say is it's my
 8      ==opinion that there has not been a mechanism==
 9      ==which has yet been proven by the persons who==
10      ==have advanced it.==
11           Q.   When you say "proven," what level of
12      certainty does it take in your -- according to
13      your own standards that you're applying here to
14      say something is proven?
15                MR. BROWN:  Object to the form.
16           A.   That's a difficult question, only
17      because proof varies scientifically.  For
18      example, we could go back to some of Koch's
19      postulates -- that's spelled K-O-C-H -- in
20      which, medically speaking, if you have an
21      offending agent, the methodology is to identify
22      the offending agent, show that it causes a
23      problem in the human, then take the offending
24      agent and reintroduce it into the human and
```

Do Not Disclose - Subject to Further Confidentiality Review

Page 94

1      A.   I would say that the one that would
2   fit for me --
3         MR. BROWN:  Just object to the form.
4         You can answer.
5      A.   The one that would fit for me would --
6   in consideration of the fact that this involves
7   many patients, many devices which have already
8   been implanted, and the protection against a
9   very fearful disease, that is pulmonary embolus,
10  that I would look for evidence where I felt
11  certain beyond any reasonable doubt.
12  BY MR. ROTMAN:
13     Q.   And is that the kind of evidence that
14  you're applying for your opinions in this case?
15     A.   Overall, yes.
16     Q.   And on the issue of explanations for
17  why the Bard retrievable filters fracture, are
18  you aware of what steps Bard has taken to answer
19  that question?
20     A.   Yes, I know that Bard has improved,
21  honed, and refined its various newer devices as
22  time has progressed.
23     Q.   But I'm asking a different question.
24  I'm asking, what has Bard done to figure out why

Do Not Disclose - Subject to Further Confidentiality Review

Page 128

1   and observe that there was a fracture.  They
2   observed a trend, but there's no way of knowing
3   when the fracture occurred, and if in that
4   particular patient the fracture occurred on day
5   two after it was implanted, or if it occurred on
6   the day before the filter was removed when they
7   observed it.
8              So my own opinion is that further work
9   has to be done on this particular subject before
10  I'm convinced of that direct relationship.
11       Q.   And again, you're using the word
12  "convinced."  Yes?
13       A.   Yes.
14       Q.   And this opinion of yours that more
15  work needs to be done, you have not done that
16  work yourself, have you?
17       A.   No, I have not done it personally.
18       Q.   You have not done any studies to
19  evaluate whether the risk of complications
20  increases with the increased duration of a
21  filter being implanted, a Bard retrievable
22  filter being implanted in a patient?
23       A.   No, I haven't performed those specific
24  research studies.