# Exhibit C



Deposition of:
# Anne Roberts , M.D.

*July 7, 2017*

In the Matter of:

# In Re: Bard IVC Filters Products Liability

Veritext Legal Solutions
1075 Peachtree St. NE , Suite 3625
Atlanta, GA, 30309
800.808.4958 | calendar-atl@veritext.com  | 770.343.9696

Page 244

1     on which data you're talking about.  I mean,
2     Kessler's report is filled with data.  And some of
3     it we looked at, and some of it we didn't.  So I'm
4     not sure which part of the data that you're
5     referring to.
6     BY MR. BROWN:
7         Q    Did you independently verify the
8     methodology that the -- strike that.
9              Did you independently verify the
10    methodology employed by Dr. Ritchie, Dr. Kessler,
11    and Dr. Betensky?
12             MR. JOHNSON:  Form.
13             THE WITNESS:  I don't know that I
14    independently reviewed their methodology.
15    BY MR. BROWN:
16        Q    Did you independently assess the
17    reliability of the underlying data that
18    Dr. Ritchie, Dr. Kessler, and Dr. Betensky relied
19    on?
20             MR. JOHNSON:  Form.
21             THE WITNESS:  I didn't -- well, again,
22    it probably depends on the data that you're
23    referring to.  So I can't tell you what part of
24    the data would, you know -- you know, that we
25    looked at.  But I -- and I can't remember what

1    data was available to us to look at to

2    independent- -- quote, independently review it.

3    BY MR. BROWN:

4        Q    Did you assume for purposes of your

5    report that Dr. Ritchie, Dr. Kessler, and

6    Dr. Betensky employed reliable methodologies?

7             MR. LOPEZ:  Form.

8             THE WITNESS:  Well, I think they are --

9    they all have -- Kessler, in particular, appeared

10   to be reliable.  So I assumed that he used

11   reliable methods to look at this.  I cannot really

12   comment on the other two.

13   BY MR. BROWN:

14       Q    And you assumed for purposes of your

15   report that Dr. Ritchie, Dr. Kessler, and

16   Dr. Betensky utilized reliable underlying data,

17   correct?

18       A    I assume so.

19       Q    Has any IVC filter manufacturer ever

20   shown you their premarket bench testing data?

21           MR. LOPEZ:  Form.

22           THE WITNESS:  My recollection is that

23   when we were doing the Bird's Nest filter study

24   that we had bench testing information available on

25   that filter.

Case 2:15-md-02641-DGC   Document 8220-3   Filed 10/18/17   Page 5 of 6
Anne Roberts , M.D.                                          July 7, 2017
In Re: Bard IVC Filters Products Liability

Page 269

1     A    Well, he's the author on this one -- the
2  2011 one.  So I suspect that he is involved in the
3  2016 one as well.
4     Q    As far as discussing how those
5  guidelines were created -- the 2016 guidelines,
6  would you defer to Dr. Kalva as more knowledgeable
7  about how that came about?
8     A    Yes, I would.  Because I wasn't on the
9  committee and he is, so I would certainly defer to
10 him.
11          MR. BROWN:  We can go off the record.
12          THE VIDEOGRAPHER:  This marks the end of
13 Media No. 4 in the deposition of Dr. Anne
14 Christine Roberts, M.D.  Going off the record.
15 The time is 5:25 p.m.
16          (Recess taken.)
17          THE VIDEOGRAPHER:  This marks the
18 beginning of Media No. 5 in the deposition of
19 Dr. Anne Christine Roberts, M.D.  This deposition
20 is being held at 4240 La Jolla Village Drive,
21 San Diego, California 92037.
22          The videographer is Scott Tanaka here on
23 behalf of Veritext Legal Solutions.  Today's date
24 is July 7th, 2017.  Back on the record.  The time
25 is 5:35 p.m.

Case 2:15-md-02641-DGC   Document 8220-3   Filed 10/18/17   Page 6 of 6
Anne Roberts, M.D.                                  July 7, 2017
In Re: Bard IVC Filters Products Liability

Page 296

1            MR. BROWN:  We're not.  We have nine
2     minutes.
3            THE VIDEOGRAPHER:  We are 6 hours, 53
4     minutes of record.
5     BY MR. BROWN:
6        Q    You don't have any written authority
7     that you're relying on to say that the type of
8     information that you're demanding from Bard is
9     needed to satisfy the informed consent standard of
10    care, do you?
11           MR. JOHNSON:  Form objection.
12           THE WITNESS:  I'm saying that a patient
13    that -- if a company knows that there's a problem
14    with their device or their drugs or whatever it
15    is, that they have a duty to make sure that a
16    practitioner is aware of that; if they're going to
17    continue to sell that device, that they need --
18    the physician needs to know so they can do an
19    adequate informed consent.
20    BY MR. BROWN:
21       Q    That's the Dr. Roberts' standard,
22    correct?
23           MR. LOPEZ:  Form.
24           THE WITNESS:  Well, we'll have to get
25    100 people in a room and find out.