# Exhibit A

## Cases Relied on by Plaintiffs That Partially Exclude Dr. Parisian's Opinions

| A. Causation Testimony Excluded | |
|---|---|
| **Case Name** | **Case Excerpt** |
| Bartoli[1] | "Third, as to causation, Dr. Parisian may not testify. Dr. Parisian is not qualified to give causation evidence of any kind." |
| Block[2] | "Woo Young further argues that Dr. Parisian should not be allowed to testify as to causation. Block responds that Dr. Parisian will not testify as to causation or diagnosis. If Dr. Parisian in fact attempts to offer such testimony at trial, the Court will prohibit such testimony at that time." |
| Heparin[3] | "Dr. Parisian is not qualified to offer testimony as to medical or physiological causation issues. Although she is a medical doctor, she is not an epidemiologist, immunologist, or hematologist, and therefore, does not have the necessary background and training to offer opinions concerning adverse reactions and deaths caused by contaminated Heparin." |
| In re Mirena[4] | "Defendants' motion with respect to testimony relating to medical causation or regulatory causation is granted…Dr. Parisian is an expert in the field of FDA regulations, and her testimony will be thus limited to that field. Defendants' motion with respect to proposed testimony by Dr. Parisian regarding safer alternatives to Mirena is granted." |
| Jones[5] | "Dr. Parisian's expertise lies in FDA regulations and in corporate compliance with FDA regulations. Her expertise does not lie in reviewing medical literature or determining whether causal associations exist between products and clinically significant hazards…Therefore, none of Dr. Parisian's testimony as to the existence of either causation or causal association will be permitted in front of a trier of fact in this case." |
| Phillips[6] | "[T]he Court is likely not to permit her to testify as an expert as to proper design of the device itself or causation of injuries." |
| B. Narrative Testimony Excluded | |
| Block[2] | "Woo Young argues that Dr. Parisian will testify in narrative form, but Block states that she will not do so." |
| Ethicon[7] | "Although an expert may testify about his review of internal corporate documents solely for the purpose of |

| | |
|---|---|
| | explaining the basis for his or her expert opinions—assuming the expert opinions are otherwise admissible—he or she may not offer testimony that is solely a conduit for corporate information." |
| *Fosamax*[7] | "In detailing the factual basis for her opinions, Dr. Parisian's report presents a narrative of select regulatory events through the summary or selective quotation from internal Merck documents, regulatory filings, and the deposition testimony of Merck employees. The Court agrees with Merck that, to the extent such evidence is admissible, it should be presented to the jury directly. Dr. Parisian's commentary on any documents and exhibits in evidence will be limited to explaining the regulatory context in which they were created, defining any complex or specialized terminology, or drawing inferences that would not be apparent without the benefit of experience or specialized knowledge. She will not be permitted to merely read, selectively quote from, or "regurgitate" the evidence." |
| *Heparin*[3] | "Dr. Parisian may not give a narrative history of Heparin contamination, which must be presented through direct evidence." |
| *In re Mirena*[4] | "Dr. Parisian may rely upon the regulatory history of Mirena, as well as documents reflecting communications between Bayer and the FDA and internal Bayer communications, in forming her regulatory opinions, but she may not present these documents to the jury with no analysis or merely read, selectively quote from, or 'regurgitate' the evidence. Defendants' motion with respect to Dr. Parisian's narrative testimony is granted insofar as she merely repeats facts, as opposed to using documents and background to opine on the FDA, the adequacy of Mirena's label and the reasonableness of Bayer's conduct pursuant to FDA regulations." |
| **C.  Legal Opinions Excluded** | |
| *Block*[2] | "Stating that Woo Young violated an FDA standard of care, or offering similar testimony, will not be permitted. Similarly, Dr. Parisian cannot testify that Woo Young is liable because it promoted its devices in manners inconsistent with the FDCA." |
| *Heparin*[3] | "Moreover, testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the jury.' While Dr. Parisian may offer testimony concerning what a manufacturer should do to comply with the regulations, she may not offer opinion testimony as to the reasonableness of the Defendants' conduct." |
| *Heparin*[3] | "As with Dr. Siporin, Dr. Parisian may not offer the 'ultimate question' testimony that Baxter's monitoring, quality control measures, or recalls were ineffective or inadequate. Testimony containing legal conclusions |

| | impermissibly 'convey a witness; unexpressed, and perhaps erroneous legal standards to the jury.'" |
|---|---|
| *In re: Ethicon*[8] | "In addition to representing inappropriate legal conclusions, such testimony is not helpful to the jury in determining the facts at issue in these cases and runs the risk of misleading the jury and confusing the issues. Insofar as this Motion challenges the FDA-related testimony discussed here, the Motion is GRANTED." |
| **D.  Corporate Knowledge, Intent, or Ethics Excluded** | |
| *Bartoli*[1] | "As to NPC's specific objections, first, Dr. Parisian may not testify as to NPC's intent, motive, or bad faith. As discussed above, 'intent is not a proper subject for expert testimony.' Similarly, 'bad company' opinions are not admissible." |
| *Bartoli*[1] | "Second, as to pharmaceutical industry ethical standards, ghostwriting, and undisclosed company funding of publications, Dr. Parisian may not testify. There is nothing to suggest that she is an expert in pharmaceutical company ethics-she has never worked at a pharmaceutical company, and ethical standards for such companies do not come from the FDA, which is the agency about whose operations Dr. Parisian has expertise. Likewise, her testimony regarding ghostwriting and undisclosed company funding is inadmissible because she opines, without foundation, that employing such practices does not provide 'fair and balanced' information and that it must be disclosed." |
| *Block*[2] | "Block responds that Dr. Parisian will not express any opinions on the intent, motives, or state of mind of Woo Young. The Court finds that this issue is moot to the extent that Dr. Parisian might testify as to the intent, motives, or state of mind of Woo Young." |
| *Fosamax*[7] | "To the extent Merck's motion seeks to preclude Dr. Parisian from testifying as to the knowledge, motivations, intent, state of mind, or purposes of Merck, its employees, the FDA, or FDA officials, it is GRANTED. Dr. Parisian conceded at the hearing that her regulatory expertise does not give her the ability to read minds. Nevertheless, her report is replete with such conjecture. This is not a proper subject for expert or even lay testimony." |
| *Fosamax*[7] | "She also asserts that "Merck attacks the credibility of physicians not favorable to Merck," but this statement is based upon a single email exchange between Merck employees. (*Id.* ¶ 233–34.) These are not expert opinions but mere 'bad company' testimony with marginal relevance to the issues in controversy. If other opinions are shown at trial to be insufficiently based on expert analysis, they will be excluded." |

| | |
|---|---|
| *Heparin*[3] | "Nor may she testify concerning the state of mind, intent, knowledge, purposes, or motivations of Defendants, its employees, or the FDA." |
| *In re Mirena*[4] | "Defendants are correct that an expert's testimony on the 'intent, motives or states of mind of corporations, regulatory agencies and others' is inadmissible." |
| *In re Mirena*[4] | "Dr. Parisian...will not be permitted to simply recite or regurgitate documents and speculate on Bayer's motives based on these documents." |
| *Jones*[5] | "[A]ny testimony on Novartis' state of mind or intent is excluded as a question for the jury rather than for Dr. Parisian." *Id.* at 1264. |

\* Plaintiffs cite a *single* case that permitted Dr. Parisian's testimony in its entirety, *In re Xarelto* (Rivaroxaban) Prod. Liab. Litig., No. MDL 2592, 2017 WL 1352860 (E.D. La. Apr. 13, 2017). After summarizing the defendants' motion in one paragraph, the court, with no analysis, denied their motion in three sentences. Id. at \*3 ("The Court finds that Dr. Parisian is qualified by virtue of education and experience and she uses sound methodology in reaching her conclusions. The thrust of the Defendants' objections seems to be that they are concerned the witness may assume an advocate role at trial. If Dr. Parisian assumes an advocate role at trial, the Court will address it at that time. For the time being, however, Defendants' Motion (R. Doc. 5112) is DENIED.")

---

[1] *Bartoli v. Novartis Pharm. Corp.*, No. CIV.A. 3:13-0724, 2014 WL 1515870, at \*6–7 (M.D. Pa. Apr. 17, 2014) ("Dr. Parisian may not testify as to NPC's intent, pharmaceutical industry ethical standards, ghostwriting, and undisclosed company funding of publications, or causation.").

[2] *Block v. Woo Young Med. Co*., 937 F. Supp. 2d 1028 (D. Minn. 2013)

[3] *In re Heparin Product Liability Litigation,* 2011 WL 1059660 (N.D. Ohio Mar. 21, 2011)

[4] *In re Mirena IUD Prod. Liab. Litig*., 169 F. Supp. 3d 396 (S.D.N.Y. 2016)

[5] *Jones v. Novartis Pharm. Corp.*, 235 F. Supp. 3d 1244  (N.D. Ala. 2017) (granting in part and denying in part Defendant's Motion to Strike Dr. Parisian's testimony finding that "Dr. Parisian may not testify on the following issues: (1) causation, including "causal association"; (2) how a change in labeling might have impacted the decision of a prescribing physician; (3) whether or not Novartis was put on "notice," including by Study 2202; (4) how a change in advertising and marketing might have impacted the decision of a prescribing physician; (5) Novartis' state of mind, intent, or motive, including what Novartis "knew"; and (6) comparisons between ONJ, BRONJ, or the drug Zometa.").

[6] *Phillips v. C.R. Bard, Inc.,* No. 3:12-CV-00344-RCJ, 2014 WL 7177256 (D. Nev. Dec. 16, 2014)

[7] *In re: Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2nd 164 (S.D.N.Y. 2009)

[8] *In re: Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig*., No. MDL 2327, 2016 WL 4608165 (S.D.W. Va. Sept. 2, 2016)