# Exhibit B



Deposition of:
# Rebecca Betensky , Ph.D.

*June 23, 2017*

In the Matter of:

# In Re: Bard IVC Filters Products Liability

## Veritext Legal Solutions
1075 Peachtree St. NE , Suite 3625
Atlanta, GA, 30309
800.808.4958 | calendar-atl@veritext.com  | 770.343.9696

Page 125

1   for newer devices on the market as opposed to older

2   devices, right?

3                    MR. MANKOFF:   Object to form.

4        A    Again, my understanding is that this is a

5   sys -- it's a complex system and that is -- one driver

6   of reporting is the newness of the device, but there

7   are other -- may be other drivers as well.

8        Q    Let me see if I can restate that.

9             One driver of reporting that you understand

10  exists for medical devices in a general sense is that

11  newer medical devices are likely to receive more

12  reports as recorded in MAUDE than older devices, right?

13       A    I don't know about likely.  I can't say are

14  likely to.  I can say that's a possibility.

15       Q    Let me try it again.

16            You recognize that it's possible that newer

17  devices have more MAUDE reports of adverse events than

18  older devices, right?

19       A    That's possible.

20       Q    In your analysis you captured periods in

21  which the removal devices were new to the market,

22  right?

23       A    Yes.

24       Q    In your analysis you didn't start considering

25  adverse events for the Simon Nitinol filter until it

Rebecca Betensky , Ph.D.                           June 23, 2017
In Re: Bard IVC Filters Products Liability

Page 126

1    had been on the market for over ten years, right?

2        A    I believe that's true.

3        Q    *You did not do an apples-to-apples

4    comparison of time periods for any of the removable

5    filters as compared to the analogous time periods in

6    which the Simon Nitinol filter had been on the market,

7    right?

8                    MR. ROTMAN:  Please reread that

9    question.

10                       (*Record read)

11                    MR. MANKOFF:  Object to form.

12                    THE WITNESS:  I'm sorry.  Can you

13    restate that, please.

14                    MR. BUSMAN:  Sure.

15        Q    If you really wanted to do an accurate and

16    meaningful comparison between various of the Recovery

17    filters and the Simon Nitinol filter, you would have

18    wanted to compare MAUDE reports for any of the

19    recoverable filters in the first few years those

20    filters had been on the market as compared to the

21    reports for the first few years when the Simon Nitinol

22    filter was on the market, right?

23                    MR. MANKOFF:  Object to form.

24        A    Well, that's one analysis certainly, but I

25    guess I'm -- or let me back up.  But another way of

Rebecca Betensky , Ph.D.                              June 23, 2017
In Re: Bard IVC Filters Products Liability

                                                    Page 139

1    the typo but ...

2         Q    I think we're, I think we're -- I think maybe

3    I'm, I'm asking a different question, okay?

4              If you take a look at your rebuttal to

5    Dr. Feigal's report, paragraph 5, the response.

6         A    Yes.

7         Q    In the response, one, two, three lines you

8    state, "In my report, I used the term "risk" to mean

9    proportion, and I distinguish this from a rate, which I

10   agree cannot be calculated (see my section on Potential

11   limitations and responses, No person-time exposure/

12   cannot calculate incidence rates and ratios)."  Did I

13   read that correctly?

14        A    You did.  And I was making the point that --

15   a nuanced point, as I said, that I cannot calculate the

16   rate.  That is true and it remains true.  But I can, I

17   believe, bound that rate in reference to the reporting

18   risk ratio.

19        Q    I understand.  But for purposes of your

20   expert opinions in this case, whether you can or you

21   cannot, you did not calculate a rate, true?

22        A    That is true.

23        Q    Okay.  So let me try it again.

24             You did not calculate any rate in connection

25   with your expert opinions in this case, right?

Rebecca Betensky , Ph.D.                     June 23, 2017
In Re: Bard IVC Filters Products Liability

                                                    Page 140

1        A     I did not calculate any rate.  I calculated

2    what I call risk or proportion.

3        Q     If somebody cites your report or your

4    deposition and asserts that you have in any way

5    calculated a rate of adverse events for any filter,

6    that would be incorrect, right?

7        A     No, I would -- I wouldn't go so far as to say

8    it would be incorrect.  I would say that perhaps that

9    person doesn't have exactly the nuanced understanding

10   or is -- or maybe they have an understanding, but

11   they're not making the nuanced technical distinction

12   that I am making between a rate and a risk.

13           Even Dr. Thisted who's a very, very prominent

14   statistician -- I'll take that back.  He knows the

15   difference between a rate and risk although -- so let

16   me take that back.

17           Many people confuse the notion of rate and

18   risk.  I'm writing a paper right now with a neurologist

19   who is making that -- you know, who's confusing those

20   concepts.  So it's possible somebody is referring to my

21   report and carelessly calling it a rate when I'm using

22   the risk, and they mean risk.

23       Q     I understand.  That was helpful.  Let me do

24   what I've done before and try to drill down.

25       A     Okay.

Rebecca Betensky , Ph.D.                    June 23, 2017
In Re: Bard IVC Filters Products Liability

                                              Page 147

1    scientific background; did I understand you to testify

2    to that?

3         A    What I'm saying is that people -- some people

4    might not make the distinct -- the careful distinction

5    that a statistician would likely make between a risk

6    and a rate.  People may use different language as well.

7         Q    You would agree that at a minimum a

8    statistician would have an appropriate understanding of

9    the difference between a risk and a rate, a

10   statistician, right?

11        A    A statistician would understand.  It's not to

12   say that in writing something they might not be -- it's

13   possible that they might not be careful.  And you know,

14   you probably if you went -- let me finish that

15   sentence.  They might not be careful in making the

16   distinction.  And if you went through my CV maybe you

17   would even find papers that I wrote.  So it depends on

18   the context.

19        Q    If someone described your report and stated

20   that you had calculated any rates, that would not be a

21   careful distinction between risk and rate, right?

22        A    That would not be what I had done in my

23   report.

24        Q    Now, still on ... where is it?  Dr. Feigal's

25   report.  Excuse me, still on the rebuttal to