# Exhibit A



Deposition of:
# Michael Streiff , M.D.

*July 12, 2017*

In the Matter of:

# In Re: Bard IVC Filters Products Liability

Veritext Legal Solutions
1075 Peachtree St. NE , Suite 3625
Atlanta, GA, 30309
800.808.4958 | calendar-atl@veritext.com  | 770.343.9696

Case 2:15-md-02641-DGC   Document 8229-1   Filed 10/18/17   Page 3 of 4
Michael Streiff , M.D.                                                      July 12, 2017
In Re: Bard IVC Filters Products Liability

Page 277

```
 1      Q.   And, and you are not basing that
 2  statement on any kind of FDA regulation standard or
 3  some law.  That's just kind of a personal opinion?
 4      A.   Yeah, that's after looking at those
 5  documents.
 6           MR. O'CONNOR:  Object to the form of the
 7  question.
 8           THE WITNESS:  Sorry.
 9  BY MR. LERNER:
10      Q.   And, and when you say that manufacturers
11  should continuously apprise physicians of certain
12  information, again, that's not based on any
13  particular regulation, standard or law.  It's based
14  on your personal opinion?
15           MR. O'CONNOR:  Form.
16           THE WITNESS:  True.
17  BY MR. LERNER:
18      Q.   And when you use the term continuously
19  apprise, are you saying that manufacturers should
20  be providing information to doctors how often?
21      A.   I would say that if you have a -- you
22  know, obviously, I'm -- this is -- I'm an outsider.
23  The whole FDA, the vice pros, you know, approval
24  process or drug approval process, because I haven't
25  been involved with that either, but if you have --
```

Case 2:15-md-02641-DGC   Document 8229-1   Filed 10/18/17   Page 4 of 4
Michael Streiff , M.D.                                  July 12, 2017
In Re: Bard IVC Filters Products Liability

Page 278

1    if a company has a reasonable certainty that their
2    drug or device may have problems that need to be
3    corrected, they ought to, as soon as they feel
4    reasonably certain about that ought to let, you
5    know, let providers know, particularly ones that
6    are placing the devices in this case.
7         Q.   And, again, you're offering opinions,
8    your personal opinions that you and Dr. Garcia
9    have?
10        A.   True.
11             MR. O'CONNOR:  Object.
12             THE WITNESS:  That's all personal -- oh,
13   sorry.  All --
14             MR. O'CONNOR:  I object to the form of
15   the question.
16             THE WITNESS:  All personal opinions based
17   on reading the Kessler report.
18   BY MR. LERNER:
19        Q.   Okay.  And since you're not an expert in
20   FDA regulations, I assume you are not aware of what
21   information a device company can or cannot provide
22   to the public?
23             MR. O'CONNOR:  Form.
24             THE WITNESS:  That is true, yeah.
25   BY MR. LERNER: