# Exhibit H



Deposition of:
# Rebecca Betensky , Ph.D.

*June 23, 2017*

In the Matter of:

# In Re: Bard IVC Filters Products Liability

Veritext Legal Solutions
1075 Peachtree St. NE , Suite 3625
Atlanta, GA, 30309
800.808.4958 | calendar-atl@veritext.com  | 770.343.9696

Case 2:15-md-02641-DGC   Document 8230-2   Filed 10/18/17   Page 3 of 6
Rebecca Betensky, Ph.D.                                  June 23, 2017
In Re: Bard IVC Filters Products Liability

Page 122

1      Because you didn't have data for adverse
2  events for SNF prior to 2000 and you didn't have sales
3  data for SNF prior to 2000, there's no way for you, as
4  you sit here today, to say that if you had that data
5  and calculated reporting risk ratios perhaps the
6  reporting risk ratios would be greater for SNF over
7  removable, maybe they'd be lower.  You just don't know
8  one way or another, right?
9      A    I don't have the data so I don't know what
10 the number would be if I had had the data.  It could
11 go -- like you said, I could get -- I could have gotten
12 RRs that are larger than what I got.  I could have
13 gotten RRs that are smaller than what I got.
14     Q    Now, because you didn't have adverse --
15 strike that.
16          Based on the Weber effect, it would be more
17 likely to find the greatest number of adverse events in
18 connection with the SNF sometime within the first ten
19 years it was on the market, right?
20              MR. MANKOFF:  Object to form.
21     A    So --
22              THE WITNESS:  I'm sorry.  Can you
23 restate that?
24     Q    We were going -- I had asked you some
25 questions about the Weber effect, and, and perhaps I

Case 2:15-md-02641-DGC   Document 8230-2   Filed 10/18/17   Page 4 of 6
Rebecca Betensky , Ph.D.                    June 23, 2017
In Re: Bard IVC Filters Products Liability

Page 125

1   for newer devices on the market as opposed to older
2   devices, right?
3              MR. MANKOFF:  Object to form.
4        A    Again, my understanding is that this is a
5   sys -- it's a complex system and that is -- one driver
6   of reporting is the newness of the device, but there
7   are other -- may be other drivers as well.
8        Q    Let me see if I can restate that.
9              One driver of reporting that you understand
10  exists for medical devices in a general sense is that
11  newer medical devices are likely to receive more
12  reports as recorded in MAUDE than older devices, right?
13       A    I don't know about likely.  I can't say are
14  likely to.  I can say that's a possibility.
15       Q    Let me try it again.
16             You recognize that it's possible that newer
17  devices have more MAUDE reports of adverse events than
18  older devices, right?
19       A    That's possible.
20       Q    In your analysis you captured periods in
21  which the removal devices were new to the market,
22  right?
23       A    Yes.
24       Q    In your analysis you didn't start considering
25  adverse events for the Simon Nitinol filter until it

Case 2:15-md-02641-DGC   Document 8230-2   Filed 10/18/17   Page 5 of 6
Rebecca Betensky , Ph.D.                          June 23, 2017
In Re: Bard IVC Filters Products Liability

Page 126

1   had been on the market for over ten years, right?
2       A    I believe that's true.
3       Q    *You did not do an apples-to-apples
4   comparison of time periods for any of the removable
5   filters as compared to the analogous time periods in
6   which the Simon Nitinol filter had been on the market,
7   right?
8               MR. ROTMAN:  Please reread that
9   question.
10              (*Record read)
11              MR. MANKOFF:  Object to form.
12              THE WITNESS:  I'm sorry.  Can you
13  restate that, please.
14              MR. BUSMAN:  Sure.
15      Q    If you really wanted to do an accurate and
16  meaningful comparison between various of the Recovery
17  filters and the Simon Nitinol filter, you would have
18  wanted to compare MAUDE reports for any of the
19  recoverable filters in the first few years those
20  filters had been on the market as compared to the
21  reports for the first few years when the Simon Nitinol
22  filter was on the market, right?
23              MR. MANKOFF:  Object to form.
24      A    Well, that's one analysis certainly, but I
25  guess I'm -- or let me back up.  But another way of

Case 2:15-md-02641-DGC   Document 8230-2   Filed 10/18/17   Page 6 of 6
Rebecca Betensky , Ph.D.                        June 23, 2017
In Re: Bard IVC Filters Products Liability

Page 189

1    might have on the number of reports in the MAUDE
2    database for removable filters?
3         A    So again, I wasn't using the MAUDE database
4    directly.  I was using Bard's data which as I've said
5    I -- my understanding is overlaps with the MAUDE
6    database, but not necessarily entirely.  So, so I'm
7    not -- I don't know how reporting -- I, I didn't take
8    into account potential changes in reporting.
9         Q    Based on litigation?
10        A    Based on litigation.
11        Q    What, if anything, did you do in this case to
12   take into account the fact that the Simon Nitinol,
13   which was ten-years-old at the time that your analysis
14   began, may have been less likely to receive reports
15   than newer products?
16             MR. MANKOFF:  Object to form.
17        A    So again, I didn't have the data for that
18   first ten years.  And, I believe also that there is
19   some value, there is value to be comparing these
20   devices contemporaneously, so at the same time.
21             So if I had had the data for the first ten
22   years, I would have used it.  I would have probably
23   done both analyses, the one starting at 2000 to align
24   everything in calendar time when -- you know, to
25   control for medical advance, potential medical