James R. Condo (#005867)
Amanda C. Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone:  (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
Telephone: (404) 322-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF CAROL KRUSE'S CLAIMS** |
| CAROL KRUSE, an individual, | (Assigned to the Honorable David G. Campbell) |
| Plaintiff, | |
| v. | **(Oral Argument Requested)** |
| C. R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, INC., an Arizona corporation, | |
| Defendants. | |

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Plaintiff seeks to avoid summary judgment on all of her claims by (a) misconstruing the facts, (b) misinterpreting and misapplying the law, (c) asking this court to take the extraordinary step of recognizing claims that do not exist under Nebraska law, (d) asking this Court to ignore almost 140 years of binding Nebraska precedent on the issue of punitive damages, and (e) offering last-minute attempted solutions to save her claims, including belatedly seeking to reopen her bankruptcy estate, and submitting an Eleventh Hour declaration—one that contradicts her earlier, sworn deposition testimony—long after fact discovery closed. As explained in Bard's opening brief (Doc. 7341), and as explained in further detail below, Bard is entitled to judgment as a matter of law as to all of Plaintiff's claims.[1]

### A. All of Plaintiff's Claims Are Barred by Nebraska's Statute of Limitations.[2]

#### i. Plaintiff Knew of Her Injury on March 14, 2011.

Bard's Opening Brief laid out the uncontroverted facts establishing that Plaintiff knew, or reasonably should have known, on or before March 14, 2011, that her filter may be causing her abdominal pain. (*See* Defs.' Br. at 6-7.) The clearest, most succinct fact in the record on this point comes from Plaintiff's own deposition testimony, where, in the context of discussing her March 14, 2011, pre-operative clearance visit with her doctors,

---

[1] As part of her response papers, Plaintiff filed a 14-page "Controverting Statement of Facts" (Doc. 7948), and she relies on a 52-page "Omnibus Separate Statement of Facts" (Doc. 7950). The District of Arizona Local Rule 56.1(b) does not require a moving party to reply to a "controverting statement of facts" or respond to a non-moving party's "additional facts." Accordingly, Bard is not filing such a reply or response here. As noted throughout this Reply Brief, however, these allegations do not raise a genuine issue of material fact that would preclude summary judgment. Instead, Plaintiff's reference to these allegations appears to be largely an attempt to "pack" the summary judgment record with irrelevant allegations (e.g., allegations about filters that Plaintiff did not receive). To be clear, Bard disagrees with Plaintiff's characterization of many of these alleged "facts," even if such disagreement does not raise a genuine issue of material fact.

[2] Plaintiff argues that Counts III and IV "are not subject to Defendants' motion." (Pl.'s Resp. at 1.) This is not correct. While Bard acknowledges that it inadvertently omitted Counts III and IV from the parenthetical in its introduction in its Opening Brief, (*see* Defs.' Br. at 1), Bard's Motion is abundantly clear that, with respect to Bard's statute of limitations and judicial estoppel arguments, Bard is seeking summary judgment as to all of Plaintiff's claims. For example, at page two of Bard's Opening Brief, Bard stated it is moving for summary judgment on the grounds that "Plaintiff's claims are barred by Nebraska's 4-year statute of limitations," and that "Plaintiff's claims are barred by the doctrine of judicial estoppel." (Defs.' Br. at 2.)

Nelson Mullins Riley & Scarborough

L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

she testified under oath as follows:

> 4  Q.   And at this time period you had had
> 5  conversations with Kristi Eggers about potentially
> 6  ***my IVC filter is causing that pain; right***?
> 7  A.   ***Yes, abdominal pain***.

(Kruse Dep. Tr., at 138:4-7 (attached as Ex. E to Defs.' SSOF (emphasis added)); *see also id.* at Kruse Dep. Tr., at 134:23 to 135:10 (attached as Ex. E to Defs.' SSOF) (making clear that Plaintiff's testimony concerns her March 14, 2011, pre-operative clearance visit).) The above quoted testimony demonstrates Plaintiff's ***subjective knowledge*** as of March 14, 2011, that her G2 Filter may be causing her abdominal pain. This subjective knowledge is more than enough to trigger the statute of limitations under Nebraska law. The Nebraska Supreme Court has stated that "'discovery,' in the context of statutes of limitations, refers to the fact that one knows of the existence of an injury and not that he has a legal right to seek redress." *Lindsay Mfg. Co. v. Universal Sur. Co.*, 519 N.W.2d 530, 539 (Neb. 1994) (affirming trial court's grant of summary judgment to defendant on statute of limitations grounds, where evidence showed that plaintiff subjectively knew of alleged injury, and that knowledge triggered the relevant statute of limitations).

Plaintiff's Response Brief ignores Plaintiff's sworn testimony quoted above. Instead, Plaintiff argues that she did not know, and should not have reasonably known, that her filter may have been causing her abdominal pain before April 7, 2011. (*See, e.g.*, Pl.'s Resp. at 4 ("Plaintiff, however, disputes that any of these alleged facts demonstrate that Plaintiff knew of, or even had reason to know of, her injuries on any date before April 7, 2011."); Pl.'s CSOF at ¶ 7 ("[T]he reason for those discussions [with Plaintiff's medical care provider before April 2011] was simply because it had been brought to Plaintiff's attention that the filter was no longer needed and could be removed at a time convenient to her, not because Plaintiff knew or believed at that time that the filter was causing any pain.").) Plaintiff's argument should fail for two reasons.

First, it ignores Plaintiff's prior testimony that she had a conversation with her health care provider on March 14, 2011, specifically regarding her IVC filter and the fact

that it may be causing her pain.

Second, Plaintiff supports this argument, not with evidence in the record prior to the close of discovery, but by a proffered declaration submitted long after the close of discovery. In her declaration, Plaintiff states that she did not know, and had no reason to know, that her filter had "caused any injury" until April 7, 2011. (*See* Pl.'s CSOF at ¶ 16.) This Court should ignore Plaintiff's self-serving and contradictory statements in her Declaration. When, as here, "a plaintiff, without reasonable explanation, testifies to facts materially different concerning a vital issue, the change clearly being made to meet the exigencies of the pending action, the evidence is discredited as a matter of law and should be disregarded." *Momsen v. Nebraska Methodist Hosp.*, 313 N.W.2d 208, 213 (Neb. 1981). That is precisely what Plaintiff has done here: Her proffered declaration (a) plainly contradicts a material fact (i.e., whether she knew by March 14, 2011, that her filter was potentially causing her abdominal pain); (b) concerns a vital issue (i.e., whether the statute of limitations is triggered); and (c) the change is clearly being made to meet the exigencies of the pending action (i.e., Plaintiff recognizes her claims would be time-barred without her change in testimony). Accordingly, consistent with *Momsen*, this Court should disregard Plaintiff's declaration.[3]

Plaintiff also fails to support her arguments with controlling authorities from

---

[3] The *Momsen* rule is consistent with the wealth of other authorities that have recognized the "sham affidavit" rule and have held that a plaintiff cannot unilaterally create a genuine issue of material fact simply by offering an affidavit that clearly contradicts her prior sworn testimony. *See, e.g.*, *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289 (8th Cir. 1988) (holding that a party cannot avoid summary judgment by contradicting his own earlier testimony); *Adams v. Greenwood*, 10 F.3d 568, 572 (8th Cir. 1993) ("[A]n affidavit denying what is established by one's own evidence . . . does not preclude summary judgment."); *Shupe v. Bank of Am. NA*, No. CV-13-00019-TUC-JGZ, 2015 WL 1120010, at *4 (D. Ariz. Mar. 12, 2015), *aff'd sub nom. Shupe v. Bank of Am., N.A.*, 671 F. App'x 435 (9th Cir. 2016) (applying the sham affidavit rule and disregarding an affidavit submitted in response to a summary judgment motion, finding that the affidavit was provided "in an effort to supplement [the plaintiff's] previous testimony and avoid summary judgment").

The Eighth Circuit persuasively explained the reasoning for this rule: "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983).

Nelson Mullins Riley & Scarborough
— L.L.P. —
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Nebraska. Instead, Plaintiff cites *Iowa law, not Nebraska law*, in an attempt to support her position. Specifically, at page 4 of her Response Brief, Plaintiff cites *Vacura v. Plott*, 666 F.2d 1200, 1204 (8th Cir. 1981), to argue that the statute of limitations should start when a plaintiff learns of "*actionable* injury." (Pl.'s Resp. at 4 (emphasis added).) But *Vacura* arose from an appeal from the Northern District of Iowa, and the court was applying Iowa law. *See generally Vacura*, 666 F.2d 1200. According to the *Vacura* court, in Iowa, the statute of limitations begins to run when a plaintiff knows or reasonably should have known "of one's cause of action for negligence." *See id.* at 1204. That is not the standard in Nebraska, where the statute begins to run when a plaintiff knows or reasonably should have known of her "injury or damage." *Thomas v. Countryside of Hastings, Inc.*, 524 N.W.2d 311, 313 (Neb. 1994). Thus, Plaintiff's reliance on *Vacura* is misplaced, and that case is completely irrelevant to Plaintiff's claims arising under Nebraska law.[4]

### ii. Plaintiff's Status as a Bellwether Plaintiff Does Not Save Her Claims From the Statute of Limitations.

Plaintiff asks this Court to take the extraordinary step and deny summary judgment as to her claims—notwithstanding that they are time-barred—for the mere fact that her case is one of the first five bellwether cases selected in this MDL. (*See* Pl.'s Resp. at 7-8.) Plaintiff cites no precedent or authority for a court to reject an otherwise meritorious argument that would dispose of a case merely because it is a bellwether case. Moreover, Plaintiff's argument is based on a false assumption: That her case, with a meritorious statute of limitations defense, is not representative of a significant portion of the 323 cases

---

[4] Plaintiff also attempts to downplay the significance of her seeing a TV advertisement soliciting potential IVC filter plaintiffs and then calling a lawyer and her daughter, arguing that Plaintiff did not testify that the advertisements were "soliciting potential plaintiffs." (Pl.'s Resp. 6.) While Plaintiff may not have uttered those precise words, her argument is inconsistent with the facts. Plaintiff herself testified that the advertisement she saw stated, "if you've had an IVC filter placed and have had, you know, problems, please call this number." (Kruse Dep. Tr., at 49:2-7 (attached as Ex. E to Defs.' SSOF).) Additionally, in response to the Plaintiff Fact Sheet question regarding whether Plaintiff had "ever seen any television or print advertisement *regarding possible claims* against inferior Vena Cava Filter manufacturers," Plaintiff responded "Yes." (*See* Plaintiff's PFS at § I.14 (attached as Ex. A to Defs.' SSOF (emphasis added)).) Based on these facts in the record, it strains credulity to suggest that the advertisement she saw was anything but a solicitation seeking potential IVC filter plaintiffs.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

in the Discovery Group Pool 1. To the contrary, Bard has conducted a preliminary statute of limitations assessment of the 323 cases in Pool 1 and has determined that approximately 84 of the cases—or 26% of the 323—have potential statute of limitations defenses. Accordingly, Plaintiff's case, and Bard's meritorious statute of limitations defense, is representative of a significant percentage of the Pool 1 cases.

### B. Judicial Estoppel Bars Plaintiff's Claims.

Bard established in its Opening Brief that (a) Plaintiff has taken inconsistent positions between her bankruptcy case and this case, (b) the Bankruptcy Court adopted Plaintiff's prior inconsistent position, and (c) Plaintiff derived an unfair advantage in her bankruptcy proceeding by concealing her claims. Plaintiff does not dispute the first two points. Instead, she incorrectly argues only that she has not derived an unfair advantage.

Plaintiff's argument is based on the assumption that her personal injury claim against Bard is fully exempt from her creditors under Neb. Rev. Stat. Ann. § 25-1563.02. That statute, however, applies only to *liquidated* claims. The case that Plaintiff cites, *In re Rhea*, 335 B.R. 428 (Bankr. D. Neb. 2004), states unequivocally that "*unliquidated causes of action cannot be exempted under § 25–1563.02.*" *In re Rhea*, 335 B.R. 428, 430 (Bankr. D. Neb. 2004) (emphasis added) (citing *In re Key*, 255 B.R. 217 (Bankr. D. Nebr. 2000)). It is undisputed that Plaintiff's current action against Bard has not been reduced to a dollar figure. It is, therefore, an unliquidated claim not subject to exemption under § 25-1563.02. Additionally, Plaintiff admits that damages that do not compensate her for personal injuries, such as "property damage," are not exempt under the relevant statute. (Pl.'s Resp. at 10.) But in her same Response Brief, Plaintiff claims "she has suffered injury to her property" for which she is seeking compensation. (Pl.'s Resp. at 23.[5]) Without question, then, according to Plaintiff's own argument, her case against Bard, and any recovery from it, is not fully exempt under the statute. Accordingly,

---

[5] Bard disputes this claim, and notes that Plaintiff's Master Complaint never makes such an allegation. *See* Argument at Section G, *infra*.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Plaintiff did derive an unfair advantage in her bankruptcy proceeding.[6] *See, e.g.*, *Jones v. Bob Evans Farms, Inc.*, 811 F.3d 1030, 1034 (8th Cir. 2016) (holding that a plaintiff derives an unfair advantage in her bankruptcy case by concealing a civil claim from her estate because the proceeds of any settlement could have been available to pay creditors). Finally, as noted in Bard's Opening Brief, this Court is well within its discretion to reject Plaintiff's last-minute candor by amending her bankruptcy schedules, particularly under the circumstances here, where Plaintiff has shown a repeated propensity to take contradictory positions in litigation, depending on the exigencies of the situation. *See Jones*, 811 F.3d at 1032 & 1034.[7]

### C. Plaintiff Fails to Identify a Genuine Dispute as to Any Material Fact Regarding Her Failure to Warn Claim.

#### i. Plaintiff's Concessions Establish That She Cannot Prove Causation.

Plaintiff's Response Brief concedes undisputed facts that establish, as a matter of law, that she cannot prove the essential element of causation to sustain her failure to warn claims. Plaintiff argues that if her implanting physician, Dr. Smith, received allegedly "adequate warnings," "'*[i]t's possible*' that he would have used a different device." (Pl.'s Resp. at 15 (emphasis added).) Similarly, Plaintiff argues that Dr. Smith "*may well have decided to use a different filter*" and that he "*may have used a different device*" had

---

[6] Plaintiff argues that she "did not contact her current attorneys until late 2013," and, thus, she did not know she had a "valid" claim until "well after her bankruptcy had already been discharged." (Pl.'s Resp. at 11.) While the caveat "current attorneys" may make her allegation technically correct, it is misleading. She testified she contacted Mr. Russell Button, *a former associate of Plaintiff's current lawyers*, shortly after seeing the TV advertisement in 2009 or 2010, and he periodically sent her letters regarding her "case." (Kruse Dep. Tr., at 45:24 to 46:15, 46:24 to 47:22 (attached as Ex. E to Defs.' SSOF).) She also stated under oath in her PFS response that she first retained an attorney on or about the 184th day of 2013 (i.e., July 3, 2013), which can hardly be construed as "late 2013." (Plaintiff's PFS at § I.1.(e) (attached as Ex. A to Defs.' SSOF).) As shown by these facts and the facts identified by Bard in support of its statute of limitations defense, Plaintiff knew of her potential claim against Bard when she received her bankruptcy discharge on June 3, 2013, not "well after her bankruptcy had already been discharged."

[7] In its Opening Brief, Bard argued that any damages that could be recovered against Bard should be capped at an amount sufficient to satisfy Plaintiff's creditors and the costs and fees incurred by the trustee. (Defs.' Br. at 9-10.) Plaintiff did not respond to this argument, and, thus, it should be deemed conceded by Plaintiff.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Bard's warnings been different. (Pl.'s Resp. at 15-16 (emphasis added).) Mere possibilities—and speculation as to what Dr. Smith "may have done" in a hypothetical situation—are insufficient to establish causation as a matter of established Nebraska law. *See Roskop Dairy, L.L.C. v. GEA Farm Techs., Inc.*, 871 N.W.2d 776, 799 (Neb. 2015) ("[S]peculation and conjecture are not sufficient to establish causation.").

The Nebraska Supreme Court has clearly enunciated the standard to prove causation: A plaintiff must present evidence that a certain event (i.e., an inadequate warning, a dangerous condition, or an allegedly defective drug) was the "probable" cause of her injuries. *See, e.g.*, *Swoboda v. Mercer Mgmt. Co.*, 557 N.W.2d 629, 632 (Neb. 1997) ("Swoboda was not required to eliminate all alternate theories regarding how the accident may have happened, but she was ***required to establish with a reasonable probability*** that the accident happened in the manner alleged in her petition." (emphasis added)); *see also Parker v. United States*, No. 8:16CV00199, 2017 WL 2963870, at *3 (D. Neb. June 7, 2017) ("The evidence must be sufficient to make the theory of causation reasonable and ***not merely possible***.").

In *Doe v. Zedek*, 587 N.W.2d 885 (Neb. 1999), the Nebraska Supreme Court stated that "the term '***possible' does not encompass . . . 'more likely than not***.' 'Possible' is mere speculation, which is not sufficient." *Id.* at 893–94 (emphasis added).[8] In other words, the Nebraska Supreme Court has held that evidence of a mere "possibility" is not sufficient to establish a plaintiff's burden to prove all elements by a preponderance of the evidence, i.e., "more likely than not." Accordingly, Plaintiff's attempt to save her failure-to-warn claims by relying on "possibilities" and speculation as to what Dr. Smith "may well have" done are insufficient as a matter of law to prove causation. Because Plaintiff

---

[8] The Court's complete statement is as follows: "First, the term 'possible' does not encompass either 'reasonable medical certainty' or 'reasonable probability,' i.e., more likely than not. 'Possible' is mere speculation, which is not sufficient." *Zedek*, 587 N.W.2d at 893-94. Although the Court's statement is in the context of the standard for medical expert testimony to prove causation, that does not alter the analysis or the opinion's impact on this case. The Court in *Zedek* clearly refuses to equate "possibility" with "more probable than not," which is the standard of Plaintiff's burden of proof.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

cannot raise a genuine issue of material fact as to the essential element of causation—that is, that a different warning would have probably changed Dr. Smith's decision to use a G2 Filter—her failure to warn claims fail as a matter of law.[9]

### ii. Bard's Duty to Warn Extends Only to Plaintiff's Implanting Physician.

Plaintiff concedes that the learned intermediary doctrine applies in this case. (Pl.'s Resp. at 13 ("Nebraska applies the learned intermediary doctrine to failure-to-warn claims.").) Plaintiff also does not dispute that the Bard G2 Filter is a prescription medical device. And, like Bard, Plaintiff relies on the leading Nebraska Supreme Court opinion, *Freeman v. Hoffman-La Roche, Inc.*, 618 N.W.2d 827 (Neb. 2000), to provide the law regarding the learned intermediary doctrine in Nebraska. (*See* Pl.'s Resp. at 13.) *Freeman* is unequivocal regarding to whom a prescription pharmaceutical drug or medical device manufacturer owes a duty: The Court stated that a manufacturer's "duty to warn extends ***only to members of the medical profession and not to the consumer***." *Freeman*, 618 N.W.2d at 841 (emphasis added).

Even after agreeing that the learned intermediary doctrine applies in this case, and

---

[9] At page 15 of her Response Brief, Plaintiff argues, "[Dr. Smith] testified that if he had been presented with data showing that another filter was safer, '[y]ou would have to decide which filter . . . you would want to use . . . based on' that data." (Pl.'s Resp. at 15.) That Dr. Smith testified that he would "have to decide which filter" to use is not evidence that he probably would have used a difference device. Regardless, in her Response Brief, Plaintiff uses ellipses to omit a critical fact from Dr. Smith's testimony: His testimony was offered in the context of deciding whether to use the ***Recovery Filter***, ***not the G2 Filter***, which is the device that Plaintiff actually received. The complete question and answer, which Plaintiff did not provide in her Response Brief, illuminates the full context of Dr. Smith's testimony:

```
 8    Q.   (BY MR. ARBON) And if you had been told that the
 9        G -- or a Recovery filter in this case, had -- was
10        associated with reported deaths at a rate of 4.6
11        higher than the other filters, would you think you
12        would want to use that filter or another filter?
13                 MS. HELM:  Object to the form.
14    A.   You would have to decide which filter, yes, you
15        would want to use, Recovery or G2 if this is based on
16        Recovery data.
```

(Smith Dep. Tr., at 51:8-16 (attached as Ex. 7 to Pl.'s CSOF).)

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

after citing *Freeman*, Plaintiff inexplicably alleges that she, herself, was "owed a duty to be adequately warned of potential complications of her filter by Defendants." (Pl.'s Resp. at 14.) To support her argument, Plaintiff relies on Bard's G2 Filter IFU, which states, "Federal (U.S.A.) law restricts this device to sale by or on the order of a physician." (Ex. B to Defs.' SSOF.) She then points to billing records that purportedly show she was billed $2,372.00 for her filter as proof that she "purchased" her filter. (Pl.'s Resp. at 14.)

Plaintiff's argument fails for three reasons. First, Plaintiff's billing record is not evidence that she actually purchased her filter. While she may have been billed by her hospital, it is certainly conceivable that her insurer, identified as Blue Cross on the document provided by Plaintiff, paid the bill. At most, the factual record is entirely devoid of evidence that Plaintiff, herself, purchased her filter.

Second, even if Plaintiff purchased her G2 Filter, that does not create a legal duty for Bard to directly warn her about potential IVC filter complications. Plaintiff has identified no authority stating that a patient is owed a duty to be warned by a product manufacturer in a state that recognizes the learned intermediary doctrine merely because the patient purchased her prescription device or medication.

Third, the statement in the IFU that the device may be sold "by" or "on the order" of a physician does not alter the relationship between Bard, the device manufacturer, and the consumer, Ms. Kruse. Bard does not sell its prescription medical devices directly to consumers, and Plaintiff's argument does not dispute that fact. Instead, prescription medical devices are sold by manufacturers, like Bard, to learned intermediaries, i.e., physicians, who decide whether to use the devices with their patients. That is the genesis of the learned intermediary doctrine in the first place. The learned intermediary is in the best position to advise his patient as to the use of a prescription medical device, and, therefore, a medical device manufacturer's duty is to warn the physician, not the patient. Thus, the fact that a physician may "charge" his patient for the cost of a Bard G2 Filter does not somehow create a duty on Bard to warn the consumer directly.[10]

─────────────────

[10] Plaintiff also relies on testimony from a Bard corporate witness, Dr. Christopher

At bottom, Plaintiff's argument that Bard had a duty to warn her directly regarding potential risks associated with the G2 Filter, a prescription medical device, is contrary to the Nebraska Supreme Court's holding in *Freeman*. Plaintiff's argument should, therefore, be rejected.

### iii. Bard's Warnings Are Legally Adequate.

Plaintiff concedes that Dr. Smith was independently aware of the risks of IVC filter fracture, migration, perforation, and tilt, all of which are complications that Plaintiff allegedly experienced. (Pl.'s Resp. at 15.) Plaintiff argues that Bard's G2 warnings are somehow inadequate because Bard did not warn about the severity of those risks, and because Bard did not provide comparative rate information in its IFU.[11] (*See* Pl.'s Resp. at 14.) Regarding Plaintiff's "severity" argument, Plaintiff fails to cite any legal authority to support her argument. And, regardless, Bard's G2 Filter IFU explicitly warned that the complications associated with use of the device "**have been associated with serious adverse events such as medical intervention and/or death**." (Ex. B to Defs.' SSOF (emphasis in original).) Plaintiff has failed to articulate what additional warnings about the severity of potential IVC filter complications should have been included in the IFU, and she has failed to offer evidence demonstrating that any additional severity warnings

Ganser, and a Bard expert, Dr. Clement Grassi, to support her argument that Bard owed her a duty to warn. (Pl.'s Resp. at 14.) Bard does not agree with Plaintiff's characterization of that testimony. But regardless, the testimony of a fact or expert witness has no bearing on the ***legal question*** regarding to whom a prescription medical device manufacturer owes a duty to warn. That question has been conclusively decided by the Nebraska Supreme Court in *Freeman*.

[11] Bard preemptively addressed Plaintiff's "comparative rate" argument in footnote 5 of Bard's Opening Brief, and the issue has been and is being addressed in other briefing, including in the summary judgment papers filed in the *Jones v. C. R. Bard, et al.* matter. Bard fully incorporates herein by reference its arguments in the *Jones* summary judgment briefing concerning the lack of a duty to provide comparative warnings. In her Response Brief, Plaintiff accuses Bard of "bypass[ing] the page limits" and "violat[ing] the spirit" of the Court's orders by referencing these arguments. (Pl.'s Resp. at 15 n.5.) This Court should reject Plaintiff's argument for two reasons. First, Plaintiffs in this MDL have repeatedly resorted to the use of "omnibus" briefs that they later incorporate by reference in other papers. (*See, e.g.*, Pls.' Resp. to Defs.' Dr. Kessler *Daubert* Mot. (Doc. 7805) (incorporating by reference Plaintiffs omnibus statement of law into their Response Brief).) Second, this Court's Case Management Order No. 26 (Doc. 6799) specifically instructed the parties that "[i]f issues are to be addressed that apply to some or all of the bellwether cases, they should be briefed only once." That is precisely what Bard has done.

would have altered her physician's decision to use the device.

### D.  Plaintiff's Semantics Do Not Save Her Failure to Recall/Retrofit Claims.

Plaintiff argues that the Court should deny summary judgment as to Count VI, failure to recall/retrofit, because Bard "mischaracterizes" the claim as a post-sale duty to warn claim. (Pl.'s Resp. at 16.) This Court should reject Plaintiff's argument. Regardless of semantics, the concepts "post-sale duty to warn," "failure to recall," or "failure to retrofit," all have at least one thing in common: They contemplate a cause of action that is based on a manufacturer's duty to take some form of action after the product is placed in the stream of commerce.[12] That is precisely what the Eighth Circuit in *Anderson* held to be contrary to Nebraska Supreme Court precedent. *Anderson v. Nissan Motor Co.*, 139 F.3d 599, 602 (8th Cir. 1998). The *Anderson* court stated "that Nebraska favors limiting the state's products liability law ***to actions or omissions which occur at the time of manufacture or sale***. Based on this conclusion, we hold that the district court correctly dismissed Anderson's claims for post-sale duty to warn and duty to retrofit pursuant to Rule 12(b)(6)." *Id.* (emphasis added).

In support of her argument, Plaintiff quotes *Burke v. Deere & Co.*, 6 F.3d 497, 510 (8th Cir. 1993), which states that "a duty to recall is not generally incorporated in a duty to warn." (Pl.'s Resp. at 16.) Plaintiff's reliance on *Burke* is puzzling. First, the Eighth Circuit in *Burke* was applying Iowa law, not Nebraska law. *See generally Burke*, 6 F.3d 497. Second, to the extent *Burke* has any applicability to this case, it actually supports Bard's position. The court in *Burke* succinctly stated, "We repeat, we find no independent duty to retrofit or recall under Iowa law." *Id.* at 510.

Finally, in advocating against summary judgment, Plaintiff asks this Court to be the first court in the country to recognize a post-sale duty to recall or retrofit in Nebraska. In

---

[12] Plaintiff herself confuses this same terminology when she states that *Anderson* "concluded that Nebraska courts would not recognize a duty to recall and/or retrofit." (Pl.'s Resp. at 16-17.) The *Anderson* court held that Nebraska does not recognize claims for "post-sale duty to warn and duty to retrofit." *Anderson v. Nissan Motor Co.*, 139 F.3d 599, 601 (8th Cir. 1998).

doing so, Plaintiff invites this MDL Court sitting in Arizona to take the extraordinary step of creating new causes of action for a state, Nebraska, located approximately 1,000 miles away. This Court should decline Plaintiff's invitation. As the Nebraska Supreme Court stated, questions "of public policy," such as whether the State of Nebraska should recognize causes of action that are premised on duties that arise after a manufacturer sells a product, are "better left to the Legislature." *Pelzek v. Am. Legion*, 463 N.W.2d 321, 324 (Neb. 1990) (refusing to recognize a common law cause of action for negligence based on an alleged violation of a dramshop statute, where neither the state legislature nor the common law of Nebraska had previously recognized such a claim).

### E.  Plaintiff Asks This Court to Recognize an Exception for Negligence Per Se That Does Not Exist.

Plaintiff argues that "negligence per se must be recognized in Nebraska in *extraordinary* cases." (Pl.'s Resp. at 19.) But Plaintiff fails to identify any case that has applied this purported exception to the "ordinary rule," as recognized by Plaintiff, "that violation of a statute or regulation does not constitute negligence per se."[13] (*Id.*) Instead, Plaintiff relies on outdated cases and, again, on semantics to read into Nebraska law an exception that does not exist. (*See id.* ("[I]f these modifiers 'ordinarily' or 'generally' are to have any meaning, then negligence per se must be recognized in Nebraska in *extraordinary* cases.").) The Nebraska Supreme Court cases that Plaintiff cites [14] all predate the 2016 Nebraska Supreme Court opinion upon which Bard relies, *Scheele v. Rains*, 874 N.W.2d 867 (Neb. 2016). Last year in *Scheele*, the Nebraska Supreme Court stated, without caveat, and without any modifiers, that "violation of a regulation or statute is not negligence per se, but may be evidence of negligence to be considered with all the

---

[13] Moreover, Plaintiff fails to identify any case that has applied this alleged exception in an action alleging violation of the Federal Food, Drug and Cosmetic Act or the regulations promulgated in accordance with that Act (which are the federal statutes and regulations upon which Plaintiff's negligence per se claim is based), or alleging violation of Nebraska's consumer protection statutes.

[14] *Goodenow v. State Dep't of Corr. Servs.*, 610 N.W.2d 19 (Neb. 2000), *Maresh v. State*, 489 N.W.2d 298 (Neb. 1992), and *Walton v. Patil*, 783 N.W.2d 438 (Neb. 2010).

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

other evidence in the case." *Id.* at 872. The Nebraska Supreme Court could not have been clearer and left no room for exceptions. Accordingly, this Court should refuse to recognize an exception to Nebraska's negligence per se rule that does not exist.

### F. Plaintiff Cannot Establish Reliance, Which Forecloses her Misrepresentation/Concealment Claims.

Notwithstanding having the entire record at her disposal, Plaintiff still does not cite to any record evidence demonstrating that she, or her physician, relied on any misrepresentation by Bard.

Regarding Dr. Smith,[15] instead of pointing to ***record evidence***, Plaintiff relies on her ***pleadings***. (*See* Pl.'s Resp. at 20-21 (referencing six paragraphs from the Master Complaint).) But Plaintiff is not responding to a motion to dismiss under Rule 12(b)(6), where the sufficiency of Plaintiff's pleadings is tested. In response to Bard's summary judgment motion, Plaintiff is obligated under Rule 56(c) to support her position by "citing to particular parts of materials in the record." The only record evidence that Plaintiff cites is Dr. Smith's testimony where he states he relies on "multiple sources" in making treatment decisions. (Pl.'s Resp. at 21.) Plaintiff then emphasizes the words "but not limited to" when listing the specific sources of information upon which Dr. Smith testified he relies (training, experience, colleagues' experience, and medical literature), suggesting that Dr. Smith testified as to other sources of information. Plaintiff, however, does not cite, nor can she cite (because Dr. Smith never testified to it), testimony that Dr. Smith said he relies on a manufacturer's communications or internal documents (which Plaintiff alleges forms the basis of a misrepresentation) when making treatment decisions.

Regarding her own lack of reliance, Plaintiff still cannot point to any statement by Bard that she relied upon in consenting to receive her filter. Although she claims that "she

---

[15] Bard's argument in its Motion raises the issue of whose "reliance" is relevant for purposes of deciding the misrepresentation and concealment claims. (Defs.' Mot. at 15.) Plaintiff's Response Brief cites no authority for the proposition that someone else's alleged reliance (i.e., Dr. Smith's) can be substituted for ***Plaintiff's*** lack of reliance to support a misrepresentation or concealment claim.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

did receive at least general information about her *filter* before implantation," (Pl.'s Resp. at 21 (citing Pl.'s CSOF ¶ 41) (emphasis added)), that claim is belied by the deposition testimony that Plaintiff cites. In her Controverting Statement of Facts, Plaintiff cites her sworn deposition testimony at pages 124:18 to 125:12. That testimony is as follows:

> 18   Q.   Do you remember having a conversation with
> 19   Dr. Smith where he went through the potential risks
> 20   associated with the IVC clot filter placement that
> 21   are described in this form?
> 22          MR. ARBON:  Objection to form.
> 23          THE WITNESS:  The procedures that he
> 24   explained were general type procedures. ***There was***
> 25   ***nothing specific as to, you know, this is what will***
> 1    ***happen with a clot filter***.
> 2    BY MR. NASH:
> 3    Q.   Understood.  But you do remember, then, a
> 4    conversation with Dr. Smith about the general risks?
> 5    A.   Yes.
> 6    Q.   And you acknowledged those potential
> 7    risks?
> 8    A.   The general risks, yes.
> 9    Q.   And signed your informed consent to go
> 10   ahead with the procedure?
> 11   A.   Yes.  I did read and I understood the
> 12   information.

(Kruse Dep. Tr., at 124:18 to 125:12 (attached as Ex. 3 to Pl.'s CSOF) (emphasis added).) The above testimony from Plaintiff is clear that she ***did not*** receive any information "about her filter" as she claims in her Response Brief. (Pl.'s Resp. at 21.) The reality is that Plaintiff testified she relied on ***her doctors*** in deciding whether to receive an IVC filter. Her testimony on this point is as follows:

> 13   Q.   Did you rely on your doctor, Dr. Smith,
> 14   to -- and Dr. Chingren to use their medical judgment
> 15   to decide whether it's important for you to receive
> 16   an IVC filter?
> 17   A.   Yes.

(Kruse Dep. Tr., at 125:13-17 (attached as Ex. 3 to Pl.'s CSOF).) Plaintiff never

Nelson Mullins Riley & Scarborough

L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

testified that she received any information from Bard, much less relied on the same, in choosing to receive her G2 Filter. Indeed, she did not even know Bard was the manufacturer of her device until the day of her unsuccessful removal procedure in 2011, (*see* Kruse Dep. Tr., at 87:8-24 (attached as Ex. E to Defs.' SSOF)), so she could not have possibly relied on any act or omission by Bard. Where, as here, a plaintiff cannot show that she "received the information" that is allegedly false, she cannot prove the essential element of reliance as a matter of law. *Knights of Columbus Council 3152 v. KFS BD, Inc.*, 791 N.W.2d 317, 328 (Neb. 2010). Accordingly, Plaintiff's misrepresentation and concealment claims fail as a matter of law.

### G. Plaintiff's Consumer Fraud Claims Fail.

Plaintiff's Response Brief fails to raise any genuine issue of material fact regarding her consumer fraud claims.

Regarding her Consumer Protection Act ("CPA") claim, Plaintiff claims she has "suffered injury to her property" because her IVC filter has been allegedly damaged. Plaintiff's argument fails for two reasons. First, Plaintiff's Master Complaint does not claim any "property damage" or seek compensation for alleged injury to property, such as Plaintiff's filter. Plaintiff cannot now, for the first time, claim "property damage" in a response to a motion for summary judgment, where such claim is absent from the pleadings. Second, although Plaintiff claims she "purchased her filter," she has proffered no evidence of a purchase. As noted above, the billing record that she submitted may be proof that the hospital attempted to charge her for the filter, but it does not evidence consummation of a transaction whereby Plaintiff "purchased" her device.

Plaintiff also claims she has identified "a multitude" of alleged violations of the CPA, and she cites to various paragraphs of her omnibus statement of facts. (Pl.'s Resp. at 23 n.10.) But while Plaintiff makes this bald assertion, she fails to identify how any of the alleged statements in those paragraphs constitutes "unfair competition," "conspiracies in restraint of trade," "monopolies," "transactions and agreements not to use or deal in commodities or services of competitor," or "acquisition of corporate stock by another

Nelson Mullins Riley & Scarborough
— L.L.P. —
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

corporation to lessen competition," which are the acts prohibited by the CPA for which a plaintiff may seek civil remedies under § 59-1609. *See, e.g.*, Neb. Rev. Stat. §§ 59-1602 to 1606, & 1609. Because Plaintiff fails to identify any conduct of Bard that constitutes a prohibit act under §§ 59-1602 to 1606, her CPA claim fails as a matter of law.

Regarding her Uniform and Deceptive Trade Practices Act ("UDTPA") claim, Plaintiff argues that the very last line of the Master Complaint, in which Plaintiff generically requests "[s]uch other additional and further relief as Plaintiffs may be entitled to in law or in equity" (*see* Master Complaint (Doc. 364)), somehow transforms her action for money damages for alleged personal injuries into an action for an injunction that would be cognizable under Nebraska's UDTPA, § 87-303(a). This vague prayer for relief, likely found in the vast majority of litigants' civil complaints, can hardly be interpreted as Plaintiff seeking *an injunction*¸ which is the relief afforded to plaintiffs under § 87-303(a). Moreover, Plaintiff fails to identify in her Response Brief what injunctive relief she is seeking in this case,[16] and she fails to identify what future harm she would suffer if Bard is not enjoined. *See Estate of Joyce Rosamond Petersen v. Boland*, No. 8:16CV183, 2016 WL 6102339, at *6 (D. Neb. Oct. 19, 2016) (dismissing the plaintiff's UDTPA claim, even though the plaintiff "pray[ed] for injunctive relief," because the complaint only sought "damages for a past violation" and failed to identify any "future harm" at issue, that is, harm for which an injunction was necessary to prevent). Accordingly, Plaintiff's UDTPA claim, like her CPA claim, fails as a matter of law.

### H. Plaintiff's Claim for Punitive Damages Fails as a Matter of Law.

In previous representations to this Court, Plaintiff and her counsel argued that "Nebraska does not allow punitive damages." (Pls.' April 24, 2017, Submission of Cases for Bellwether Group 1 (Doc. 5723), at 21.) As she has done in other aspects of her Response Brief, Plaintiff now takes the opposite, contradictory position to meet the exigencies of litigation. She now argues that she is entitled to recover punitive damages

---

[16] Plaintiff could not seek an injunction to enjoin Bard from selling the G2 Filter, for example, because Bard stopped selling that device in the United States in 2011.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Nelson Mullins Riley & Scarborough

— L.L.P. —
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

"so long as they are paid over to counties and appropriated for school funding." (Pl.'s Resp. at 24.) Plaintiff's argument should be rejected for three reasons.

First, Plaintiff's Master Complaint never requests that an award of punitive damages be paid to Nebraska schools. Plaintiff cannot now, for the first time in response to a summary judgment motion, ask for this new form of relief.

Second, Plaintiff's argument, and her reliance on the Nebraska Constitution for the "Nebraska school" exception, is misplaced because it confuses the issue of *to whom* fines and penalties shall be paid, with *whether fines and penalties may be imposed in the first instance*. (*See, e.g.*, Pl.'s Resp. at 24 (arguing that Bard is "overlooking the *one instance* in which such damages may be awarded").) As the Nebraska Supreme Court has stated, Neb. Const. art. VII, § 5 "relates *to whom* penalties shall be paid . . . . It *does not* relate to imposition of penalty." *In re Rogers' Estate*, 22 N.W.2d 297, 303 (Neb. 1946) (emphasis added). This latter issue—whether punitive damages may be awarded at all in a civil action in Nebraska—has been settled since 1878. *See generally Boyer v. Barr*, 8 Neb. 68, 74 (1878). As the Nebraska Supreme Court stated more than 50 years ago,

> It has been a fundamental rule of law in this state that *punitive, vindictive, or exemplary damages will not be allowed*, and that the measure of recovery in all civil cases is compensation for the injury sustained. This rule is so well settled that we dispose of it merely by the citation of cases so holding.

*Abel v. Conover*, 104 N.W.2d 684, 688 (Neb. 1960) (emphasis added) (citing *Boyer*, 8 Neb. 68; *Atkins v. Gladwish*, 41 N.W. 347 (Neb. 1889); *Bee Pub. Co. v. World Pub. Co.*, 82 N.W. 28 (Neb. 1900); *Wilfong v. Omaha & Council Bluffs St. Ry. Co.*, 262 N.W. 537 (Neb. 1935)). Contrary to Plaintiff's allegation, Bard *is not* "selectively apply[ing] the state constitutional provision." (Pl.'s Resp. at 24.) Bard is merely asking this Court to apply Nebraska law that has been settled for almost 140 years.

Third, substantially the same argument advanced by Plaintiff in her Response Brief has been rejected by the District of Nebraska. In *Factory Mut. Ins. Co. v. Neb. Beef, Inc.*, No. 8:09CV159, 2009 WL 2886315 (D. Neb. Sept. 2, 2009), a party in a civil action sought punitive damages, arguing that "the language of the Nebraska Constitution leaves

the door open for punitive damages, albeit punitive damages appropriated to the schools rather than to a particular party." *Id.* at *3. The court rejected the argument, noting that the party "failed to provide any legal support for [it's] position." *Id.* The Court also noted that the party failed to show that it had "standing to pursue punitive damages on behalf of another," i.e., the common schools of Nebraska. *Id.* Given the "overwhelming support indicating the [party's] prayer for punitive damages is insufficient as a matter of law," the court struck the party's claim for punitive damages. *Id.*

Here, in light of Nebraska's "[c]lear constitutional prohibition" against punitive damages, *Enron Corp. v. Lawyers Title Ins. Corp.*, 940 F.2d 307, 313 (8th Cir. 1991), this Court should grant summary judgment on Plaintiff's punitive damages claim. *See e.g.*, *Bamford, Inc. v. Regent Ins. Co.*, No. 8:13CV200, 2014 WL 12539650, at *2 (D. Neb. June 12, 2014) (granting defendant's motion for summary judgment on plaintiff's claim for punitive damages, finding that "Nebraska's Supreme Court has read the state Constitution to prohibit punitive damages"); *Kabasinskas v. Haskin*, No. 8:10CV111, 2011 WL 1897546, at *6 (D. Neb. May 18, 2011) (granting Defendant's motion for partial summary judgment on the issue of punitive damages); *Sherman v. Sunsong Am., Inc.*, 485 F. Supp. 2d 1070, 1088 (D. Neb. 2007) ("Punitive damages are not allowed under Nebraska law, and consequently I will grant summary judgment in favor of all Defendants as to the ninth cause of action."); *Stoltenberg v. Unum Life Ins. Co. of Am.*, No. 8:04CV288, 2005 WL 2044895, at *5 (D. Neb. Aug. 25, 2005) ("[T]he court finds plaintiff cannot maintain an action for punitive damages and defendant's motion to dismiss plaintiff's prayer for punitive damages should be granted.").

## **CONCLUSION**

For these reasons, and for the reasons stated in Bard's Opening Brief, Bard respectfully requests that this Court grant Bard's Motion for Summary Judgment.

RESPECTFULLY SUBMITTED this 25th day of October, 2017.

s/Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

James R. Condo (#005867)
Amanda Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of October 2017, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

s/Richard B. North, Jr.
Richard B. North, Jr.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000