Ramon Rossi Lopez - rlopez@lopezmchugh.com
(CA Bar No. 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California  92660
949-812-5771

Mark Stephen O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
602-530-8000
*Co-Lead/Liaison Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MEMORANDUM TO SEAL DOCUMENTS LODGED UNDER SEAL IN SUPPORT OF PLAINTIFFS' OMNIBUS SEPARATE STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' RESPONSES TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGEMENT IN THE BELLWETHER CASES** |

## I.    __INTRODUCTION__

C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively referred to as "Bard" or "Defendants") request this Court perform the "exceptional" remedy of sealing documents from the public filed in association with a dispositive motion in derogation of common law and the First Amendment right of access to judicial documents. Plaintiffs oppose Bard's motion on several grounds. First, Bard failed to establish "compelling reasons" supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the

judicial process and in being made aware of public safety hazards. Second, Bard provides no specific facts showing that these documents are "trade secrets," that it would suffer a serious and specific harm from disclosure of this information (other than from public embarrassment, incrimination, or further litigation); and third, Bard's motion does not articulate a "narrowly tailored" remedy as required when contemplating suppression of the public's First Amendment right of access to these documents.

The majority of the documents Bard seeks to seal fall within two categories: (1) adverse events; and (2) product performance. These documents include the very information at the center of Plaintiffs' Opposition to Bard's Motions for Summary Judgment and these efforts appear to be a part of an ongoing effort to keep evidence from the public of risks and complications associated with and inherent in Bard IVC filters.

Bard put the documents it seeks to seal at-issue by filing motions for summary judgment in <u>every</u> bellwether action. The documents Bard urges the Court to seal are not only relevant, but necessary for Plaintiffs to fully and properly respond to Bard's dispositive motions seeking to defeat Plaintiffs' claims.[1]

Further, the motions before the Court, and the documents at-issue in this motion to seal, are of significant import to the general public, and particularly to thousands of other patients who unknowingly have an unreasonably dangerous device still implanted. Bard communicates to patients, health care providers, and its own sales force that its IVC filters are safe and effective because the devices met all minimum safety specifications in all performance categories, and its filters have the same (or better) failure rates as its own permanent only filter, the SNF, and as competitor filters. The documents and deposition testimony Bard moves to seal, however, establish that each of these claims are false and part of an ongoing effort to conceal the hazards associated with the Recovery, G2, G2X, Eclipse, Meridian and Denali filters from the public.

---

[1] This is an important litigation with significant stakes and a national scope. The bellwether Plaintiffs before this Court, Booker, Jones, Hyde, Kruse and Mulkey, are the first cases to reach the dispositive motion stage. There are thousands of people throughout this country who have an interest in how Plaintiffs respond and the evidence supporting their response.

In Bard's brief it represents to this Court it followed FOIA (Freedom of Information Act) "guidelines" to mark redactions to fifty-six documents that are subject to its Motion. Congress established nine exemptions, not "guidelines," for federal agencies, not manufacturers, to facilitate protection for certain categories of information such as an invasion of personal privacy, or harm to law enforcement investigations.[2] Neither the FDA nor their FOIA department articulates "guidelines" for redactions other than the list of exempted material noted in Footnote 2 to this Response. Bard's alleged adherence to FOIA "guidelines" is misplaced and frankly irrelevant as none of the documents at-issue were produced to the parties pursuant to a FOIA request.

Bard also suggests that evidence related to the Recovery filter is not relevant to the other filters in its filter product line. This discussion is premature, and does not need to be addresses herein. Briefly, Bard historically addresses this position in pre-trial motions *in limine*. In previous cases involving the same parties here, Bard's motions *in limine* regarding the issues of predicate devices, comparative failure rates, and other incidents of IVC filter failures were denied. *See*, Exhibit C, *Phillips v. C.R. Bard, Inc*., 290 F.R.D. 615 (D. Nev. 2013) and Exhibit D, *Jones v. C.R. Bard, et al*, No. 3:13-CV-0599-K, (N.D.T.X. Feb. 12, 2015). At the appropriate time, Plaintiffs will properly brief this issue.

Bard's request to redact fifty six (56) exhibits and seal twelve (12) exhibits[3] in their entirety to Plaintiffs' Oppositions to Bard's Motion for Summary Judgment should be

---

[2] FOIA authorizes agencies, like the FDA, to withhold information when they reasonably foresee that disclosure would harm an interest protected by one of these nine exemptions. The nine exemptions available to federal agencies are described below:
Exemption 1: Information that is classified to protect national security.
Exemption 2: Information related solely to the internal personnel rules and practices of an agency.
Exemption 3: Information that is prohibited from disclosure by another federal law.
Exemption 4: Trade secrets or commercial or financial information that is confidential or privileged.
Exemption 5: Privileged communications within or between agencies.
Exemption 6: Information that, if disclosed, would invade another individual's personal privacy.
Exemption 7: Information compiled for law enforcement purposes.
Exemption 8: Information that concerns the supervision of financial institutions.
Exemption 9: Geological information on wells.

[3] Bard's representation in its brief about the information it seeks to seal is incorrect. Plaintiffs review revealed Bard seeks to seal portions of Plaintiffs' OSOF and a total of sixty eight (68) exhibits cited in Plaintiffs' OSOF; fifty six (56) redacted exhibits and twelve (12) in their entirety.

denied for the following reasons: (1) Defendants failed to meet the burden to show "compelling reasons" based on specific facts that demonstrate real and actual harm that result from disclosure; (2) the documents at-issue cannot be objectively characterized as either trade secrets or confidential information; and (3) Bard does not articulate a "narrowly tailored" remedy as required when contemplating suppression of the public's First Amendment right of access to these documents.

## II.   **PROCEDURAL HISTORY**

On November 9, 2015, the Court granted a stipulated blanket protective order pursuant to Rule 26 of the Federal Rules of Civil Procedure. (Dkt. No. 268). The Order provided a broad definition of what information could meet the "good cause" standard under Rule 26 and allowed Bard to self-designate discovery materials as protected.[4]  The protective order did not modify or address Bard's burden regarding what has to be established ("compelling reasons") to hold secret documents attached to a dispositive motions or revealed at trial. In the course of this litigation Bard claims to have produced millions of pages of documents in response to discovery requests. Pursuant to the blanket

---

Only 30 exhibits are listed in the exhibit index to Defendants' Notice of Filing Redacted Documents. The remaining 26 exhibits Bard seeks to redact are not identified in Bard's Motion to Seal. *See*, Dkt. No. 8444. These additional exhibits can only be discovered by searching through the 712-pages attached to Bard's Notice. (Dkt. No. 8443).

Not once does Bard list or reference all the exhibits it proposes to seal. Instead, Bard states inaccurate totals and fails to account for all the exhibits attached to Dkt. No. 8443-2 and 8444-3. It is Defendants burden to complete this laborious task and identify the substance it seeks to seal (including page/line references for deposition transcripts) and articulate the specific reasons for each and every document requested.

As stated in the Protective Order, it is Bard's burden, not Plaintiffs, to effectively protect documents it deems confidential: "Nothing in this Order shall be deemed to shift the burden of proof to the party challenging the confidential designation with regard to whether the materials produced pursuant to his Order are entitled to protection under the law as Confidential Information." (Dkt. No. 268).

It is clear Bard has not met its burden and in turn, made it an arduous endeavor for Plaintiffs to adequately oppose this Motion. Plaintiffs elaborate on their arguments against each of Bard's proposed redactions in Exhibits A and B, attached.

[4] Courts frequently enter umbrella or blanket protective orders to govern voluminous productions to expedite discovery efforts rather than requiring a showing of good cause on a document-by-document basis for all responsive documents produced at the outset of litigation.  *United States ex rel. Brown v. Celgene Corp.,* 2016 WL 6542729, at *4 (C.D. Cal. Mar. 14, 2016).

protective, Bard designated <u>all</u> documents produced and depositions taken as protected under the "good cause" standard.

On October 3, 2017, Plaintiffs filed their Omnibus Statement of Facts (here on after "OSOF") for all five bellwether cases and case-specific Oppositions to Bard's Motions for Summary Judgment. (Dkt. Nos. 7943, 7945, 7947, 7950, 7050, and 8163).[5] In support of their Omnibus Statement of Facts, five Plaintiffs collectively filed 121 exhibits (58 are public documents) to establish the 22-year history of six Bard IVC filters. Out of the hundreds of millions of pages Bard claims to have produced, these limited exhibits provide concise evidence that Bard is aware its IVC filters pose a severe hazard to public safety and act to conceal and misrepresent these risks. In accordance with paragraph 25 of the protective order, Plaintiffs lodged all exhibits conditionally under seal. Pursuant to paragraph 25 of the Protective Order, Bard had 14 days to move to seal any exhibits it alleged met the heightened "compelling reasons" standard; the Motion before the Court. Plaintiffs now file their Opposition to Bard's Motion to Seal the following materials: Plaintiffs' OSOF and exhibits 2, 6, 7, 8, 9, 10, 11, 13, 18, 21, 24, 26,  34, 36, 37, 43, 44, 45, 48, 51, 52, 60, 62, 68, 72,  77, 78, 79, 80, 81, 84, 86, 87, 89, 90, 95,  96,  98, 99, 100, 101, 102, 103, 104, 106, 112, 113, 114, 115, 116, 117, 121, H-G, H-H, H-K, and M-C to Plaintiffs' Booker, Hyde, Jones, Kruse, and Mulkey Omnibus Statement of Facts.

## III.   <u>ARGUMENT</u>

### A.   **BARD CANNOT MEET THE HEAVY "COMPELLING REASONS" BURDEN REQUIRED TO JUSTIFY SEALING DOCUMENTS WHICH FORM THE BASIS OF PLAINTIFFS' OPPOSITION TO BARD'S MOTION FOR SUMMARY JUDGEMENT.**

#### 1.   **Standard for Sealing Summary Judgment-related Documents**

Courts historically recognize a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications,*

---

[5] Plaintiffs filed a Notice of Errata (Dkt. No. 8185) on October 13, 2017 to correct page numbers and citations to their OSOF. Converse to Bard's assertion in its Motion, no additional exhibits were added or attached to the Notice.

*Inc.,* 435 U.S. 589, 597 (1978). To overcome the "strong presumption in favor of access" in relation to a dispositive motion, the party seeking to seal bears the burden of overcoming this presumption by meeting the "compelling reasons" standard. *Kamakana v. City & County of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. Haw. 2006). "That is, the party must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Id*. at 1178-79 (internal citations and quotations omitted).

"In turn the Court must conscientiously balance the competing interest of the public and the party who seeks to keep certain judicial records secret." *Id*. at 1179. (internal citations and quotations omitted). After considering these interests, if the court decides to seal certain judicial records, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad*, 49 F.3d at 1434 (citing *Valley Broadcasting Co. v. U.S. Dist. Ct*., 798 F.2d 1289, 1295 (9th Cir.1986)).

Conclusory statements concerning hypothetical harm that may result from public disclosure of such documents fail to carry this burden. *Id*. at 1182. Whenever a document has been filed in connection with a dispositive motion, even if the document had been previously sealed upon a showing of good cause, the "compelling reasons" standard applies. *Id*. at 1179-80. *See also*, *In re Pradaxa (Diabigatran Etexilate) Products Liability Litigation*, 2014 WL 321656, at *4 (S.D. Ill. Jan. 29, 2014) (ordering a German drug maker to de-designate 85 documents previously marked as confidential and ordering the court clerk to unseal the documents).

The Ninth Circuit disfavors sealing broad categories of documents; particularly where specific details regarding the need for such protection are absent. *Kamakana* at 1184. The movant party must demonstrate a genuine need and provide a detailed

-6-

explanation of that need and specific facts supporting the harm that may result. *Id.* at 1182-84.

Under the "compelling reasons" standard, a district court must then weigh "relevant factors" and base its decision "on a compelling reason," and "articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 679 (9th Cir. 2010)(citing *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir.1995)). "Relevant factors" include the "public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Hagestad*, 49 F.3d at 1434 (quoting *EEOC v. Erection Co., Inc.*, 900 F.2d 168, 170 (9th Cir.1990)) (*See also*, *Kamakana* 447 F.3d at 1179). ("Compelling reasons sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files have become a vehicle for "improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets."). However, the mere fact that unsealing such records may lead to embarrassment, incrimination, or exposure to litigation is not a compelling reason to seal court records. *Id.*

Judge Breyer further articulated the *Kamakana* "compelling reasons" standard providing specific instructions for Hewitt-Packard to follow. *See*, Exhibit E, *In re Hewlett-Packard Co. S'holder Derivative Litig.,* 3:12-CV-06003-CRB (N.D. Cal. Mar. 13, 2015). Under the *Kamakana* "compelling reasons" standard, defendants must identify a "limited amount of exceptionally sensitive information that timely deserves protection" outlined by page and line number and including "specific factual findings" for each. *Id.* (quoting, *O'Connor v. Uber Technologies, Inc.*, No. c-13-3826-EMC, 2015 WL355496, at *1 (N.D. Cal. Jan. 27, 2015)). [6]

---

[6] The district court found that in light of the "public interest in understanding the judicial process", the Northern District of California would not allow defendants arguments that a public filing would put them at a competitive or legal disadvantage. *Id.* (quoting *Kamakana*, 44 7 F .3d at 1178- 79). Eight motions in total were filed by Hewitt-Packard and all eight were denied.

As will be discussed below, Bard has not provided any "compelling reasons" to seal any of the documents at-issue which contain neither trade secrets nor confidential information.

## B.   BARD FAILED TO MEET ITS BURDEN TO SHOW COMPELLING REASONS BASED ON SPECIFIC FACTS THAT ACTUAL RESULTING HARM OUTWEIGHS THE STRONG PRESUMPTION OF ACCESS TO COURT RECORDS.

Bard must establish "compelling reasons" to support redactions to fifty-six (56) exhibits and twelve (12) exhibits in their entirety. Bard generally claims that "none of the redacted documents are necessary for the public to understand the Court's ruling in the Motions for Summary Judgment" and the information it seeks to seal are "Bard's trade secret regarding testing and development of its filters and internal analysis of the perform of its products as described in the Declarations of Rob Carr" (Dkt. 8444 at 3).[7] Bard once again offers <u>no</u> specific grounds or reasons why disclosure of specific documents would put it at any potential competitive disadvantage or provide Bard's competitors with an economic advantage. Bard's main argument is that it has spent substantial amount of time and money developing its products, Plaintiffs do not dispute this fact; however, this alone does not serve as a compelling reason or a definitive economic advantage to its competitors. Speculative commercial harm is insufficient to seal information. Bard fails to even identify the substance of the information it seeks to seal other than vague generalities. Nor can such a showing be made. It is clear; Bard has not met its burden.

Bard's reliance on case law is also misplaced. The majority of the cases Bard cites to support its arguments for sealing are not relevant to the issues at bar. As an alternative to articulating "compelling reasons" with "specific fact" to justify that its redactions/sealing are necessary to protect so called trade secrets (which it is required to do and clearly did not), Bard relies on a lengthy string cite to focus on "categories of redacted information"

---

[7] The Declaration of Rob Carr is not relevant to the documents here. Defendants attached this declaration to its Motion to Seal based on preemption; <u>none</u> of the exhibits are the same. (Dkt. No. 7355).

without differentiating or distinguishing between the Ninth Circuit's standard for evaluating "good cause" (non-dispositive motions) or "compelling reasons (dispositive motions) to overcome the "strong presumption in favor of access".[8] *See*, *Kamakana* at 1178-79. Critically, most of the document categories advanced by Bard are not even at-issue here, such as "regulatory correspondence," "unpublished clinical studies," and "business plans."  Bard has not even provided a plausible comparison or relevance of the categories between the standard it cites and the exhibits it seeks to seal.

Instead, Bard primarily relies on *In re Incretin-Based Therapies Products Liability Litigation* ("*Incretins*") to overcome its burden as Bard did previously in its Second Amended Motion to its Motion for Summary Judgment Regarding Preemption (Dkt. No. 7355). *See*, *In re Incretin-Based Therapies Products Liability Litigation*, No. 13MD2453 AJB (MDD), 2015 WL 11658712, *3-2 (S.D. Cal. Nov. 18, 2015). The motion before the *Incretins* Court related to preemption and the court did not evaluate the data underlying the FDA's actions or the information allegedly withheld from the FDA. *Id*. at 4. The primary reasoning was that the data could cause "confusion" to the general public; however, that determination is not present in the exhibits at-issue in Bard's Motion. *Id*. Here the majority of the exhibits at-issue provides no information regarding testing or data, and the four (4) exhibits that include this information are presented in summary form. *See*, exhibits 8, 62, 72, 78. From a review of Plaintiffs' Exhibits A and B attached to this Response, confusing data and testing methods is not at-issue in the documents Bard seeks to seal. *Id*. Last, Novo and Merck rely on foreign privacy laws in their business practices, Health Canada (Canada's equivalent of the FDA), which has specific privacy laws that the *Incretins* Court

---

[8] *Clark v. Metro. Life Ins. Co.*, 2010 WL 1006823 (D. Nev. Mar. 16, 2010) (This case involves a non-dispositive motion); *Bracco Diagnostics, Inc. v. Amersham Health Inc.*, CIVA 3-6025FLW, 2007 WL 2085350 (D.N.J. July 18, 2007) (This case involves a non-dispositive motion). *Medicis Pharm. Corp. v. Acella Pharm., LLC*, CV 10-1780- PHX-JAT, 2012 WL 2260928 at *2 (D. Ariz. June 15, 2012) (This case involves a non-dispositive motion). *Spectrum Pharm., Inc. v. Sandoz Inc.*, No. 2:12-CV-00111-GMN, 2014 WL 4202540, at *2 (D. Nev. Aug. 21, 2014) (This is the one of two cases (the other is *In re Incretins*) Bard cites that involves a dispositive motion. To distinguish, Bard does not identify which documents it regards as "proprietary business plans" and none of the exhibits Plaintiffs cited could be categorized as "communicates to the FDA.").

found to be more restrictive than the Ninth Circuits laws. *Id*. Bard's reliance on this case is misdirected and unsupported.

Other District Courts within the Ninth Circuit have found that underlying data is not determinative of a trade secret, and alternatively can be critical to the public's understanding. *See*, *Apple, Inc. v. Samsung Elecs. Co*., No. 11-CV-01846-LHK, (N.D. Cal. 2012). The determining factors in *Apple, Inc.* for this rationale were that (1) Apple could not show harm was likely to result from the release of its data; and (2) the information played an important role in Apple's claim for damages, making the information important to the public. *Id*. at 9. As such, the court denied requests to seal trial exhibits containing financial information including profit margins, profits on specific products, sales figures, revenue, costs, and tax accounting procedures. *Id*. Bard has not and could not show harm would likely result from the release of its documents that relate to adverse events and product performance.

Bard previously made similar arguments in a multidistrict litigation relating to its defective transvaginal mesh device. *See*, *In re C. R. Bard, Inc. Pelvic Repair System Prods. Liab. Litig.* 2013 U.S. Dist. LEXIS 70189 (S.D. W. Va. May 17, 2013). A discovery dispute arose in those proceedings regarding whether two categories of materials were trade secret. *Id.* at *14. A set of materials involved internal memoranda that "Bard contends reveal the internal thought processes, testing, analysis, hypothesis and research and development methods both for products in development at the time the documents were written and for future development." *Id*. at *18-19. The court rejected Bard's claims of trade secret because Bard's claims were conclusory and uncorroborated. *Id*. at 16-19. The court explained:

> Bard's statements do not indicate the reasons why such information is trade secret or otherwise entitled to protection. Bard does not explain how such information, in the hands of a competitor, would inflict harm.

*Id.* at *19.

Bard's failure here to provide specific factual support for its claims of trade secret is strikingly similar to the factual deficiency in *Biocore, Inc. v. Khosrowshahi,* 96 F. Supp. 2d 1221, 1231-32 (D. Kan. 2000) ("*Biocore*"). In *Biocore*, a company alleged that its business procedures for conducting clinical trial studies and obtaining FDA clearance under FDA regulations were trade secrets. As in the present matter, *Biocore*, the plaintiff, failed to produce evidence describing the procedures, and failed to explain how its procedures differed from others in the field or from the general FDA requirements. The court ruled that Biocore had failed to establish the documents were trade secret because "[p]laintiffs failed to meet their burden of proving that their method of conducting efficacy studies is different from methods that are matters of general knowledge in the trade." *Id*. at 1231. The court explained its decisions as follows:

> While both of these items are marked confidential, they contain nothing but basic information. Plaintiffs do not show that the validation protocol and validation procedures are not generally known. They provide no evidence regarding protocols and procedures which other companies use. Neither document describes any procedure that appears to be out of the ordinary; the documents list obvious procedures which every company in the field would also follow with slight but obvious variations for specific equipment and products.

*Id.* at 1232 (internal citations omitted). As in *Biocore*, Bard has failed to provide anything beyond general and unsupported claims.

## C.   THE DOCUMENTS CANNOT BE CHARACTERIZED AS TRADE SECRETS.

Bard's documents at-issue cannot be objectively characterized as trade secrets or confidential information. The information contained in these documents has no inherent or intrinsic actual or potential value. The majority of the information is stale, and several of the documents involve products which have not been sold since 2009. (*See*, exhibits 2, 6, 7, 8, 9, 10, 11, 13, 18, 21, 24, 26,  34, 36, 37, 43, 44, 45, 48, 51, 52, 60, 62, 68, 72,  77, 78, 79, 80, 81, 84, 86, 87, 89, 90, 95,  96,  98, 99, 100, 101, 102, 103, 104, 106, 112, 113, 114,

115, 116, 117, 121, H-G, H-H, H-K, and M-C). Secret or confidential information becomes "stale" over time and thus a previous confidential designation no longer applies. *See, Salomon Smith Barney, Inc. v. HBO & Co*., 2001 WL 225040, at *2 (S.D.N.Y. Mar. 7, 2001) (stating that although there may have been reasons to mark documents as confidential at the time they were generated, there was insufficient cause shown "for so treating them today").

Bard argues generally that the medical device industry is competitive, and that Bard did not disseminate these documents outside of the company. Bard appears to supplant "confidentiality" with "trade secret" because "[b]usiness information alleged to be confidential 'is not entitled to the same level of protection from disclosure as trade secret information.'" *Republic of Philippines v. Westinghouse Elec. Corp*., 949 F.2d 653, 663 (3d Cir. 1991)(quoting *Littlejohn v. BIC Corp*., 851 F.2d 673, 685 (3d Cir. 1988). Trade secrets have been defined in the Ninth Circuit as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *In re Elec. Arts, Inc*., 298 F. App'x 568, 569–70 (9th Cir. 2008) (applying the Restatement's definition of trade secret in the record-sealing context). Bard fails to make a specific factual showing of how disclosure of this testimony would reveal a trade secret, put it at any potential competitive disadvantage or provide Bard's competitors with an economic advantage.

The documents Bard seeks to redact include adverse events and product performance which are generally known in the medical device industry through mandatory reports to FDA's MAUDE (Manufacturer User Device Experience) database and medical literature. Bard makes no claim and provides no evidence showing differences when compared to other manufacturers nor describes any documents or testimony that it regards as either a trade secret or developed exclusively by Bard for Bard's exclusive use. *See,* Dkt. 8444. The documents discuss information about injuries caused by the filter and whether the product is performing as intended. *See*, Plaintiffs' Exhibits A and B. Plaintiffs have

created a chart outlining each fact and exhibit Bard seeks to seal to show the Court that these documents do not include formulas, patterns, or compilations of information which would provide an opportunity or advantage to Bard's competitors.

Bard's competitors arguably have no use for information Bard seeks to seal since all of the documents concern Recovery, G2, Eclipse and Meridian filter lines which are no longer being sold in this country. (*See*, exhibits 2, 6, 7, 8, 9, 10, 11, 13, 18, 21, 24, 26,  34, 36, 37, 43, 44, 45, 48, 51, 52, 60, 62, 68, 72,  77, 78, 79, 80, 81, 84, 86, 87, 89, 90, 95,  96, 98, 99, 100, 101, 102, 103, 104, 106, 112, 113, 114, 115, 116, 117, 121, H-G, H-H, H-K, and M-C). There is nothing in these documents that would provide any value to any competitor or to Bard in keeping them a secret from its competitors. Speculative commercial harm is insufficient to overcome the "strong presumption in favor of public access."

Further, "the mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."  *Kamakana* at 1179.  Bard filed a motion to seal documents subject to the second IVC filter trial in the country.[9] A district court in the Ninth Circuit found "the only harm that could come to Defendants form the release of this information is the precipitation of further lawsuits against it. Preventing lawsuits due to the release of inculpating information is not a compelling reason to seal otherwise public legal proceedings. Indeed, the exposure of facts relevant to the material claims in a lawsuit is the purpose of a trial, and these facts should remain public unless the harm likely to result from their release is unrelated to the nature of the claims. The information does not directly implicate trade secrets." *See*, Exhibit F, *Phillips v. C.R. Bard, Inc.,* 290 F.R.D. 615 (D. Nev. 2013).

---

[9] The first IVC filter trial was *Everett v. C.R. Bard, et al.* No. CV2009-019232 (Ariz. Super. June 6, 2012). The Booker bellwether case scheduled start March 13, 2017 will be the third IVC filter case adjudicated at a trial.

1    To meet the "compelling standard" a company must at minimum establish that the
2    materials are subject to trade secret. Simply being marked as "confidential" or suggesting
3    speculative commercial harm is entirely inadequate to be a compelling reason. Further,
4    Bard's motion does not articulate a "narrowly tailored" remedy as required when
5    contemplating suppression of the public's First Amendment right of access to these
6    documents.

7    **IV.    CONCLUSION**

8    The burden of proof to redact/seal information and documents from the public is
9    necessarily a heavy one, and it lies squarely on Bard. Bard has not satisfied its burden of
10   establishing "compelling reasons" for sealing or that any of the documents that are the
11   subject of its motion to seal could be deemed "trade secrets," and it certainly has not
12   satisfied its heavy burden of overcoming the common law and First Amendment rights of
13   access to these documents. The Court of Appeals has rejected requests to seal documents
14   under the "compelling reasons" standard where the movant makes nothing more than
15   "conclusory statements about the content of the documents—that they are confidential and
16   that, in general," their disclosure would harm the movant. *Kamakana* at 1182. This is
17   exactly the approach Bard has taken in its' motion. Bard's motion should be denied

18   RESPECTFULLY SUBMITTED this 17th day of November, 2017.

19                                   GALLAGHER & KENNEDY, P.A.

20
                                     By: */s/Mark S. O'Connor*
21                                        Mark S. O'Connor
                                          2575 East Camelback Road
22                                        Phoenix, Arizona  85016-9225

23
                                     LOPEZ McHUGH LLP
24                                        Ramon Rossi Lopez (CA Bar No. 86361)
                                          (admitted *pro hac vice*)
25                                        100 Bayview Circle, Suite 5600
                                          Newport Beach, California 92660
26

27                                        *Co-Lead/Liaison Counsel for Plaintiffs*

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HEAVISIDE REED ZAIC
Julia Reed Zaic, Esq. (CA Bar No. 224671)
(admitted *pro hac vice*)
Laura Smith, Esq. (CA Bar No. 313879)
(admitted *pro hac vice*)
312 Broadway, Suite 203
Laguna Beach, California  92660

I hereby certify that on this 17th day of November, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/ Gay Mennuti*

-15-