# EXHIBIT A
# (Filed Under Seal)

# Exhibit B
# (Filed Under Seal)

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CYNTHIA JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | Civil Action No. 3:13-CV-0599-K |
| | § | |
| C.R. BARD, INC., a foreign corporation, | § | |
| and | § | |
| BARD PERIPHERAL VASCULAR, INC., | § | |
| a foreign corporation, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants' Motions in Limine to exclude:

1. Certain Evidence Concerning the Recovery Filter and Other Complications That are Not Substantially Similar to the Incident at Issue (Doc. No. 122). The Court **defers** ruling on this motion. The Court will conduct a hearing outside the presence of the jury before the parties can go into anything other than Plaintiff's complications.

2. Plaintiff's Comparative Failure Rate-Type Evidence (Doc. No. 123). The Court **DENIES** this motion.

3. Evidence Regarding Alleged "Fraud on the FDA" and Purporting to Interpret FDA Regulations (Doc. No. 124). The Court **DENIES** this motion.

4. Evidence Prohibited Under Federal Rules of Evidence 402, 403, 404, and 609. The Court **defers** ruling on this motion. Defendants are **ordered** to produce a copy of the criminal consent decree/plea agreement that is the subject of this motion to the Court **for *in camera* inspection within five (5) days from the date this order is signed**.

5. Evidence or Argument Suggesting that Bard had a Financial Motive to

Downplay Risks (Doc. No. 126).
The Court **DENIES** this motion.

6.    Evidence or Argument Regarding Bard's State of Mind, Intent, Motive, and Ethics (Doc. No. 127).
The Court **defers** ruling on this motion. Plaintiff must approach the bench before attempting to offer such evidence and/or make such argument.

7.    Evidence or Argument that Bard had an Independent Duty to Test the G2 Filter (Doc. No. 128).
The Court **DENIES** this motion.

8.    Evidence of Financial Information During the Liability Phase of Trial (Doc. No. 129).
The Court **DENIES** this motion.

Also before the Court are Plaintiff's Motions in Limine to exclude:

1.    Reference to Counsel Advertising, Counsel Specializing, Contingency Fee Agreements, or the Circumstances Under Which Plaintiff Selected Counsel (Doc. No. 131).
The Court **GRANTS** the motion as to any fee agreements. The Court **DENIES** the motion as to circumstances in which Plaintiff selected her counsel. The Court **GRANTS** the motion as to general references to counsel advertising or specialization.

2.    References to Inferior Vena Cava Filter Products Being the "Gold Standard" or the "Standard of Care" or "Life Saving Devices" (Doc. No,. 132).
The Court **defers** ruling on this motion. Defendants must approach the bench first before attempting to make any such reference.

3.    Reference to Surgical Consent Forms (Doc. No. 133).
The Court **DENIES** this motion.

4.    Reference to Collateral Sources of Payment or the Taxation of Plaintiff's Recovery (Doc. No. 134).
The Court **GRANTS** this motion.

5.    Any Reference to the Adverse Impact of a Plaintiff's Verdict (Doc. No. 135).

The Court **defers** ruling on this motion. Defendants must approach the bench first before attempting to make any such reference.

6. References to the Number of Times Plaintiff's Experts' Testimony has not Been Accepted by Courts in Other Litigation (Doc. No. 136).
The Court **DENIES** this motion.

7. References to the Clearance of Bard IVC Filters by the FDA and Lack of Enforcement Action as Proof of Safety and Efficacy, and Referring to the Bard IVC Filters as "Approved" by the FDA (Doc. No. 137).
The Court **defers** ruling on this motion. Defendants must first approach the bench before attempting to offer any such evidence and/or argument and/or reference.

8. Reference of Failure Rates, Complication Rates, Percentages and Comparative Analysis of Injuries Beyond Those Produced in Complaint Files (Doc. No. 138).
The Court **GRANTS** this motion as it pertains to anything beyond what has been produced in the complaint files.

9. Argument or Evidence Regarding Negligence of Third Party/"Empty Chair" Defense (Doc. No. 139).
The Court **GRANTS** this motion.

10. References Suggesting that Defendants' IVC Filters are Lifesaving Devices and Statistics Regarding Thrombi and Pulmonary Embolism (Doc. No. 140).
The Court **DENIES** this motion.

11. Argument or Evidence that Defendants Could Not Have Added a Warning to its Label or Effectuated a Removal/Recall Without FDA Consent or Warned Physicians and Consumers Directly Regarding Increased Risks of Harm (Doc. No. 141).
The Court **GRANTS** this motion.

12. Evidence of the "SIR Guidelines for the Purpose of Supporting Legal Theories or Acceptable Rates of Complications and Safety Profiles (Doc. No. 142).
The Court **defers** ruling on this motion. Defendants must first approach the bench before offering any such evidence.

13. Defendants from Suggesting any Prior Medical Procedures Caused Cynthia

Jones' Filter to Fracture (Doc. No. 143).
The Court **DENIES** this motion.

These rulings on the aforementioned motions in limine are all temporary. These rulings may be revisited by the Court at any time before or during trial, either at a party's request or *sua sponte*.

Also before the Court are: (1) the parties' Joint Motion for Pretrial Conference (Doc. No. 120) and (2) Defendants' Motion to Bifurcate the Trial into Liability Phase and a Punitive Damages Phase (Doc. No. 130). The Court **DENIES** both motions.

**SO ORDERED.**

Signed February 12th, 2015.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE

# EXHIBIT D

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |  |
|---|---|---|
| _____ | ) | |
| KEVIN PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | 3:12-cv-00344-RCJ-WGC |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| C.R. BARD, INC. et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This case arises out of an allegedly defective surgically implanted medical device. Pending before the Court are twenty-five motions in limine, a motion to bifurcate trial, and a motion to seal.

## I.   FACTS AND PROCEDURAL HISTORY

The inferior vena cava ("IVC") is a vein that returns blood to the heart from the lower body. (Compl. ¶ 15, ECF No. 1-1). An IVC filter is a medical device residing in the IVC that catches blood clots or "thrombi" that travel from the lower portions of the body towards the heart and lungs, where they can cause serious injury or death. (*Id.* ¶¶ 14–16). IVC filters have been on the market since the 1960s. (*Id.* ¶¶ 13, 18). The first IVC filters were "permanent" filters, i.e., designed to remain in the patient for the patient's life. (*Id.* ¶ 18). In 2003, manufacturers began

producing "optional" or "retrievable" IVC filters that can be removed from a patient once the risk of a blood clot has subsided. (*Id.*). At issue in the present case is the Recovery Filter System ("RFS"). Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (C.R. Bard's subsidiary) "designed, set specifications [for], manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Recovery Filter System and G2 Filter System ("G2FS") to be implanted in patients . . . ." (*Id.* ¶¶ 3–4). Although Plaintiff makes general allegations concerning the G2FS, as well as the RFS, he alleges only having had a defective RFS implanted in him. (*See id.* ¶¶ 49–51).

Due to manufacturing and design defects, the RFS has a high fracture and migration rate as compared to other IVC filters, and these defects can cause serious injury or death. (*See id.* ¶¶ 25–30). Defendants failed to conduct clinical testing such as animal studies on the RFS, and even after they became aware of large numbers of adverse event reports ("AER") from health care providers reporting serious injury or death due to the migration of the entire device or fractured pieces of the device, they failed to recall the RFS or even warn those who had been implanted with one, although they withdrew the RFS from the market. (*See id.* ¶¶ 31–35, 43–48). Plaintiff makes similar allegations concerning the G2FS, but again, he does not allege having been implanted with a G2FS. (*See id.* ¶¶ 36–42).

Plaintiff was implanted with Defendants' RFS on August 4, 2005. (*Id.* ¶¶ 49–50). The RFS subsequently failed and migrated to Plaintiff's heart, perforating his heart and causing severe and life-threatening complications requiring emergency open-heart surgery on April 30, 2010, and resulting in various economic and non-economic damages. (*Id.* ¶ 51). Plaintiff sued

Case 2:15-cv-02641-RCJ-CWC Document 88591-3 Filed 11/17/15 Page 11 of 51

Defendants in state court for: (1) negligence; (2) strict products liability—failure to warn; (3) strict products liability—design defects; (4) strict products liability—manufacturing defects; (5) breach of the implied warranty of merchantability; (6) negligent misrepresentation; and (7) violation of the Deceptive Trade Practices Act ("DTPA"), Nevada Revised Statutes §§ 598.0915(5), (15), 598.0923(2), and 598.0925(1)(a). Defendants removed, demanded a jury trial, and answered. Defendants filed four motions in limine and a motion for summary judgment. The Court denied the motions in limine and granted the motion for summary judgment in part. Plaintiff has now filed sixteen motions in limine, and Defendants have filed eight.

## II. LEGAL STANDARDS

A motion in limine is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence. Black's Law Dictionary defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial. Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." Black's Law Dictionary 1171 (10th ed. 2014). Although the Federal Rules of Evidence do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c) (providing that trial should be conducted so as to "prevent inadmissible evidence from being suggested to the jury by any means")).

Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

In limine rulings are preliminary and therefore "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

///

///

III.    **ANALYSIS**

A.      **Plaintiff's Motions in Limine**

1.      **Motion No. 195**

Plaintiff asks the Court to exclude references to his counsel's practices, advertisements, or fees.  The Court grants the motion in part.  *See* Fed. R. Evid. 401, 402.  Defendants object only that it should be permissible for counsel to ask jurors during voir dire whether they have seen advertisements about IVC filter litigation.  Without yet deciding whether the Court will permit this question during voir dire, the Court will not categorically exclude it at this time.

2.      **Motion No. 196**

Plaintiff asks the Court to exclude reference to IVC filters as the "gold standard" of treatment for the relevant medical problems.  The Court denies the motion.  If Defendants have competent expert evidence that IVC filters are the preferred method of treatment, the expert may adduce the evidence as background information.

3.      **Motion No. 197/198**[1]

Plaintiff asks the Court to exclude reference to surgical consent forms.  The Court denies the motion because it cannot tell whether such evidence will be relevant without the context of trial.  It is possible that consent forms may contain warnings relevant to the duty to warn or comparative fault.

///

///

---

1 Some motions have been filed in both sealed and unsealed versions.

**4.     Motion No. 199**

Plaintiff asks the Court to exclude references to collateral sources of payment for

Plaintiff's medical bills.  The Court grants the motion. *See McConnell v. Wal-Mart Stores, Inc.*,

995 F. Supp. 2d 1164, 1169–73 & nn.1–3 (D. Nev. 2014) (Jones, J.).  Defendants respond that

they do not intend to offer such evidence, unless Plaintiff "opens the door" and makes such

evidence relevant.

**5.     Motion No. 200**

Plaintiff asks the Court to exclude references to a "litigation crisis," or the potential

impact of a verdict in Plaintiff's favor on the medical industry, the economy, or jurors

themselves.  The Court grants the motion. *See* Fed. R. Evid. 401, 402.  Defendants respond that

they do not intend to offer such evidence, unless Plaintiff "opens the door" and makes such

evidence relevant.

**6.     Motion No. 201**

Plaintiff asks the Court to exclude references to the previous exclusion of Plaintiff's

expert witnesses in other cases.  The Court denies the motion.  The Court cannot say without the

context of trial that such commentary or questions would be irrelevant or otherwise inadmissible

in all cases.  For example, such evidence may be relevant as impeachment of an expert's claim of

his or her qualifications made in front of the jury.

**7.     Motion No. 202/203**

Plaintiff asks the Court to exclude reference to FDA approvals of the device at issue of

lack of any enforcement activities by the FDA against Defendants based on the device.  The

Court denies the motion. Such evidence is relevant to show whether industry standards have been complied with, which is relevant to whether Defendants were negligent.

8.     **Motion No. 204**

Plaintiff asks the Court to exclude reference to failure rates, complication rates, percentages, or comparative analysis of injuries different from those asserted in this case. The Court denies the motion. The Court cannot say this kind of evidence would be irrelevant. The overall rate of injury for the device at issue is relevant to whether Defendants exercised due care. For example, a jury could rationally reason that a defendant is not negligent for distributing a device that has an overall injury rate of 0.1% if other similar devices have similar injury rates, even if the rates of a particular kind of injury are higher for the defendant's device. That is, perhaps the device at issue had a higher injury rate for some kinds of injuries but a lower rate for other kinds of injuries, but the overall rate of injury was comparable. Certain kinds of injuries might also be more likely to cause more serious harm. This is a complex determination relating to whether Defendants were negligent that the Court will not take from the jury on a motion in limine.

9.     **Motion No. 205**

Plaintiff asks the Court to exclude argument or evidence relating to the fault of non-parties. The Court grants them motion in part. It is true that the jury may only apportion fault as between parties to the case. *See* Nev. Rev. Stat. § 41.141(2)(b)(2). Defendants respond that the statute does not prevent them from arguing "that non-parties" were negligent and are responsible to some degree." Neither Plaintiff nor Defendants are completely correct. A jury may not

apportion fault to non-parties, and evidence or argumentation directed to showing non-parties' *comparative* fault is therefore inadmissible, but "[n]othing in NRS 41.141 prohibits a party defendant from attempting to establish that either no negligence occurred or that the *entire* responsibility for a plaintiff's injuries rests with nonparties . . . ." *Banks v. Sunrise Hosp.*, 102 P.3d 52, 67 (Nev. 2004) (emphasis added). That is, Defendants may argue that non-parties were *entirely* at fault and that Defendants were not at fault at all, and they may adduce otherwise admissible evidence in support. But they may not argue that non-parties are *partially* at fault or adduce evidence tending only to show comparative fault.

### 10. Motion No. 206/207

Plaintiff asks the Court to exclude evidence that IVC filters are "lifesaving devices." The Court denies the motion. Defendants may adduce testimony that this is true if they have it. Plaintiff also asks the Court to exclude statistics concerning thrombi and pulmonary embolisms in the general population. The Court cannot say that this would be irrelevant as background information.

### 11. Motion No. 208/209

Plaintiff asks the Court to exclude arguments that Defendants could not affix warning labels, given the physician additional warnings, or have enacted a recall without FDA approval. The Court denies the motion. Evidence of FDA requirements in changing warnings or the feasibility of having a particular warning changed by a particular date is relevant to whether Defendants were negligent in not changing warnings.

///

12.     **Motion No. 219/220**

Plaintiff asks the Court to exclude certain opinions of Dr. David Feigal, to wit: (1) that an epidemiological analysis determined there is no reliable evidence the IVF filter posed a greater risk of harm than other devices; (2) that complaint data cannot be used to make safety assessments or comparisons regarding medical devices; and (3) that there are "stimulated reporting" factors that could theoretically explain the higher reported failure rates for the IVF filter at issue. Plaintiff first argues that Dr. Feigal failed to apply reliable principles to sufficient facts or data as to the epidemiological analysis. The Court rejects this argument. The quoted segment of the deposition does not show that Dr. Feigal did not use reliable methods. It shows that Plaintiff's attorney and Dr. Feigal disagreed about how closely he had followed Dr. Feigal's own previously stated definition of an epidemiological analysis. Dr. Feigal's failure (if it can be called that) to include certain of Defendants' data in his analysis does not necessarily render his methods invalid or the data he used unreliable. Plaintiff may impeach Dr. Feigal by pointing out (if it is true) that there was certain relevant evidence available to him that he did not consider.

Next, Dr. Feigal's opinion that complaint data cannot be used to make safety assessments or comparisons of devices is not the kind of expert opinion amenable to a proper methods–sufficient data examination because the opinion is not the result of a scientific test. It is an opinion about what methods are appropriate in making a certain kind of assessment. Plaintiff may counter this opinion with that of his own expert or challenge Dr. Feigal's reasoning on cross-examination. The same is true of Dr. Feigal's opinion that there are "stimulated reporting" factors that could explain the higher reported failure rates for the IVF filter at issue. Plaintiff

argues that Dr. Feigal has no support, apart from speculation, that any stimulated reporting phenomena occurred in this case. If that is true, the testimony may be inadmissible for a lack of foundation, but the Court cannot categorically exclude it at this time.

**13.    Motion No. 221/222**

Plaintiff asks the Court to exclude the testimony of Dr. Tsuda, who is expected to testify only that Plaintiff's physician did not breach his own duty of care when he implanted the device. The Court denies the motion. It is not yet clear whether Plaintiff will argue at trial that An IVF filter should not have been used in his case.

**14.    Motion No. 223/224**

Plaintiff asks the Court to exclude testimony that the IVC filter was misplaced or could not be expected to perform as it was placed. The Court denies the motion. This kind of testimony would plainly be relevant to causation, i.e., whether any defect was a cause of the harm. Defendants must have competent evidence to this effect, but the Court cannot categorically exclude it.

**15.    Motion No. 225/226**

Plaintiff asks the Court to exclude testimony that Plaintiff did not take his anti-coagulant medication as prescribed, and that if he had, he would not have developed clots. The Court denies the motion. Again, Defendants must have competent evidence of Plaintiff's failure to take his prescribed medication, and any expert as to the likelihood of not developing clots if the medication had been taken must be admitted both as to his qualifications and his methods, but

the Court cannot categorically exclude this kind of evidence, which is plainly relevant to causation and comparative fault.

    **16.**    **Motion No. 227/228**

Plaintiff asks the Court to exclude evidence of the Society of Interventional Radiology ("SIR") Guidelines to show acceptable rates of complications. The Court denies the motion. Defendants will have to adduce a qualified expert as to the use of these guidelines in the industry to evaluate safety and that the guidelines at issue should apply to the device at issue, but if they can do so, industry standards are relevant to the negligence question.

    **B.**    **Defendants' Motions in Limine**

    **1.**    **Motion No. 211**

Defendants ask the Court to exclude evidence of other incidents of IVC failure if not sufficiently similar to the alleged failure in this case. The Court denies the motion. Failures of any kind causing injury occurring before the incident here are relevant to Defendants' knowledge of the risk of harm to Plaintiff and thus to whether they exercised due care. The evidence would not be admissible to show causation, however, and Defendants might be entitled to a limiting instruction.

    **2.**    **Motion No. 212**

Defendants ask the Court to exclude evidence of comparative failure rates of their IVC filter and other manufacturers' IVC filters. The Court denies the motion. The Court must consider the basis of any such testimony in the context of trial. Knowledge of a higher failure rate than those of competitors may be relevant to the negligence issue.

### 3. Motion No. 213

Defendants ask the Court to exclude evidence that Defendants withheld evidence from the FDA. The Court denies the motion. If Plaintiff has such evidence, it is as relevant as the FDA's approvals. The parties must argue to the jury what this evidence means. Plaintiff may not argue that the FDA would not have approved the device had it had full disclosure and certainly may not bring a state law fraud claim based on such an argument. Those issues and claims are preempted. But the issue is still relevant to Defendants' state of mind, i.e., to their knowledge of the risk, which is relevant to the negligence question. To rule otherwise would be to establish a "ceiling of care" based on FDA approval.

### 4. Motion No. 214

Defendants ask the Court to exclude evidence of C.R. Bard's criminal conviction in 1994 based on conduct in the 1980s. The Court agrees that the evidence would be much more prejudicial than probative, unless Plaintiff intends to use the fact to impeach a witness in the present case who was personally responsible for the previous criminal activity at C.R. Bard. That does not appear to be the case. Plaintiff responds that the evidence is admissible under Rule 404(b) as tending to show a "habit or custom" of Defendants. But that rule does not concern habits or customs, only "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." Fed. R. Evid. 404(b). It is Rule 406 that concerns habit-type evidence, and there is no claim that Defendants have a "habit" of violating the law in some particular way relevant to this case. In any case, Rule 406 cannot be used to circumvent Rule 404 if it does not relate to some narrowly concrete habit of behavior, and one previous incident of a particular

behavior is insufficient to show a habit. *Scott v. ABC*, 878 F.2d 386 (9th Cir. 1989) ("Rule 406 may be invoked only where a high degree of specificity and frequency of uniform response is present.").

### 5.    Motion No. 215

Defendants ask the Court to exclude argumentation of a financial motive for downplaying the risks of the device.  The Court denies the motion.  Such a motive, if it can be shown, and not merely speculated upon, is at least relevant to punitive damages.

### 6.    Motion No. 216

Defendants ask the Court to exclude evidence of state of mind, intent, motive, or ethics. The Court denies the motion.  It targets too broad an area for the Court to make a categorical exclusion without the context of a particularized objection at trial.

### 7.    Motion No. 217

Defendants ask the Court to exclude arguments that Defendants had an independent duty to conduct additional testing or that liability can result merely from a failure to do so.  The Court grants the motion in part.  Evidence of testing, and whether any additional testing was performed based on knowledge of certain defects or rates of failure, is relevant to whether Defendants exercised due care.  There is, however, no independent duty to test, and liability cannot be based purely on a failure to conduct certain kinds of tests.  Plaintiff has correctly identified the distinction in response.

///

///

**8.      Motion No. 218**

Defendants ask the Court to exclude evidence of their financial condition during the liability phase.  The Court grants the motion.  *See* Nev. Rev. Stat. § 42.005(4).  The Court for the same reason grants the motion to bifurcate the trial into liability and punitive damages phases.  Of course, as Plaintiff notes in response, such evidence may become admissible to rebut testimony adduced on behalf of Defendants that certain tests or designs were economically unfeasible.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

## CONCLUSION

IT IS HEREBY ORDERED that the Motions in Limine (ECF Nos. 199, 200, 214, 218), the Motion to Bifurcate Trial (ECF No. 243), and the Motion to Seal (ECF No. 244) are GRANTED.

IT IS FURTHER ORDERED that the Motions in Limine (ECF Nos. 195, 205, 217) are GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the Motions in Limine (ECF Nos. 196, 197, 198, 201, 202, 203, 204, 206, 207, 208, 209, 211, 212, 213, 215, 216, , 219, 220, 221, 222, 223, 224, 225, 226, 227, 228) are DENIED.

IT IS FURTHER ORDERED that the Motion in Limine (ECF Nos. 261, 262) is STRICKEN as untimely. *See* Local R. 16-3(b).

IT IS SO ORDERED.

Dated this 20th day of January, 2015.

_____
ROBERT C. JONES
United States District Judge

# EXHIBIT E

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE HEWLETT-PACKARD COMPANY          No. 3:12-cv-06003-CRB
SHAREHOLDER DERIVATIVE
LITIGATION                                            **ORDER DENYING PENDING**
                                                      **ADMINISTRATIVE MOTIONS TO**
                                                      **FILE UNDER SEAL**
THIS DOCUMENT RELATES TO:

ALL ACTIONS

_____/

         This litigation now having been resolved, the Court must determine which documents,

or portions thereof, should remain permanently shielded from public view.  The Court has

received numerous motions to seal certain portions of documents which number in the

thousands of pages, most of which are heavily or entirely redacted.  Specifically, the Court

now has before it the following pending motions:  Hewlett Packard's Administrative Motion

to File Under Seal (dkt. 337); Hewlett Packard's Administrative Motion to File Under Seal

(dkt. 367); Objector A.J. Copeland's Administrative Motion to File Under Seal (dkt. 378);

Objector Harriet Steinberg's Administrative Motion to File Under Seal (dkt. 380); Objectors

A.J. Copeland's and Harriet Steinberg's Administrative Motion to File Under Seal (dkt. 390);

Hewlett Packard's Objection re Unsealing in Part of Consolidated Shareholder Derivative

Complaint; Hewlett Packard's Administrative Motion to File Under Seal (dkt. 398);

Directors' Administrative Motion to File Under Seal (dkt. 401); and Objector Harriet

Steinberg's Administrative Motion to File Under Seal (dkt. 404).

**United States District Court**
For the Northern District of California

For the following reasons, all pending motions to seal are hereby DENIED.  As an

initial matter, 

It has also not escaped the Court's attention that

2



**United States District Court**
For the Northern District of California

1 ███████████████████████████████████████████████████

2 ████████████████████████████████████████████

3 █████████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ██████████████████████████████████████████████████████████

6 ██████████████████████████████████████████████████████████

7 ██████████████████████

8    For the foregoing reasons, the pending administrative motions to seal are DENIED.[1]

9    **IT IS SO ORDERED.**

10

11 Dated: July 28, 2015

12                                              CHARLES  R.  BREYER
                                               UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

---

25    [1]  No motion for reconsideration will be entertained unless HP identifies within three days "a
limited amount of exceptionally sensitive information that truly deserves protection" under the
26 "compelling reasons" standard of Kamakana v. City and Cty. of Honolulu, 447 F.3d 1172, 1178–79 (9th
Cir. 2006), outlined by page and line number and including "specific factual findings" for each.  See
27 O'Connor v. Uber Technologies, Inc., No. c-13-3826-EMC, 2015 WL 355496, at *1 (N.D. Cal. Jan. 27,
2015). In light of the "public interest in understanding the judicial process" as it relates to the settlement
28 of these claims, the Court will not countenance arguments that public filing would put HP at a
competitive or legal disadvantage.  See Kamakana, 447 F.3d at 1178–79.

4

# EXHIBIT F

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

_____
                                        )
KEVIN PHILLIPS,                         )
                                        )
            Plaintiff,                  )          3:12-cv-00344-RCJ-WGC
                                        )
      vs.                               )
                                        )          **ORDER**
C.R. BARD, INC. et al.,                 )
                                        )
            Defendants.                 )
_____)

     This case arises out of an allegedly defective medical device. The parties settled during trial. Defendants have asked the Court to seal certain trail exhibits and portions of the trial transcript.

     A court may "make any order which justice requires to protect the party or person from annoyance, embarrassment, oppression or undue burden or expense" upon motion by a party or a person from whom discovery is sought. Fed. R. Civ. Pro. 26(c). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir.2006). There is a strong presumption towards public access to judicial records. *See id.* at 1178. Under *Kamakana*, judicial records are

separated into two groups, each with its own standard to be met if litigants wish to seal them. First, judicial records attached to dispositive motions must meet the "compelling reasons" standard in order for those documents to be sealed. *Id.* at 1180.  Those compelling reasons must outweigh the competing interests of the public in gaining access to the judicial records and to understand the judicial process. *Id.* at 1178–79.  Second, judicial records attached to nondispositive motions must meet the lesser "good cause" standard to be sealed. *Id.*  A motion to seal transcripts and evidence adduced at trial must satisfy the "compelling reasons" test, because a trial is a dispositive proceeding. *In re Elec. Arts, Inc.*, 298 Fed. App'x 568, 569 (9th Cir. 2008). The Court of Appeals has rejected requests to seal documents under the "compelling reasons" standard where the movant makes nothing more than "conclusory statements about the content of the documents—that they are confidential and that, in general," their disclosure would harm the movant. *Id.* at 1182.

Defendants argue that three categories of material should be sealed: (1) product design and testing, including confidential communications between Defendants and the FDA; (2) sales and marketing information; and (3) Defendant's internal quality control procedures, complaint and adverse event responses, reporting and handling, device tracking procedures, and corrective action procedures.  The Court finds that these categories of information do not satisfy the compelling reasons test.  The only harm that could come to Defendants form the release of this information is the precipitation of further lawsuits against it.  Preventing lawsuits due to the release of inculpating information is not a compelling reason to seal otherwise public legal proceedings.  Indeed, the exposure of facts relevant to the material claims in a lawsuit is the

purpose of a trial, and these facts should remain public unless the harm likely to result from their release is unrelated to the nature of the claims. The information does not directly implicate trade secrets.

Even if the test could be satisfied, Plaintiff correctly notes that Defendants have waived the issue because Defendants made no motion to seal the exhibits or testimony at the public trial. *See, e.g.*, *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 & n.11 (2nd Cir. 2004); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 680 (3d Cir. 1988); *Nat'l Polymer Prods. v. Borg–Warner Corp.*, 641 F.2d 418, 421 (6th Cir. 1981); *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 588 (E. D. Va. 2009) ("The First Amendment public right of access to these exhibits sprang into existence upon their being offered into evidence for the jury's consideration at trial, and since no request was made to seal them prior to or at that time, Savvis waived any future right to assert any competing interest to be weighed by the Court and, thus, any objection to the public availability of the exhibits in the Court's files.").

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Seal (ECF No. 317) is DENIED.

IT IS FURTHER ORDERED that the Motion (ECF No. 326) is DENIED without prejudice, as it has been incompletely filed.

IT IS SO ORDERED.

Dated this 1st day of June, 2015.

_____
ROBERT C. JONES
United States District Judge

# EXHIBIT G

Case 2:15-md-02641-DGC   Document 8859-1   Filed 11/17/17   Page 34 of 51

We are updating the design of this site.    Learn more.

Try the new test version at https://clinicaltrials.gov/beta/     Show less

 U.S. National Library of Medicine     

*ClinicalTrials.gov*

---

## Prospective, Multi-center, Single-arm Study to Assess the Safety of Retrieval of the Recovery G2 Filter. (EVEREST)

**This study has been completed.**

**Sponsor:**

C. R. Bard

**ClinicalTrials.gov Identifier:**

NCT00556426

First Posted: November 12, 2007

Last Update Posted: June 1, 2012

---

 The safety and scientific validity of this study is the responsibility of the study sponsor and investigators. Listing a study does not mean it has been evaluated by the U.S. Federal Government. Read our disclaimer for details.

---

**Information provided by (Responsible Party):**

C. R. Bard

| Full Text View | Tabular View | **Study Results** | Disclaimer |
|---|---|---|---|
| | | | How to Read a Study Record |

---

Results First Submitted: May 26, 2009

| | |
|---|---|
| **Study Type:** | Interventional |
| **Study Design:** | Intervention Model: Single Group Assignment; Masking: None (Open Label);   Primary Purpose: Treatment |
| **Conditions:** | Pulmonary Embolism<br>Venous Thromboembolic Disease |
| **Intervention:** | Device: Bard Recovery G2 Filter System |

## ▶ Participant Flow

 **Hide Participant Flow**

### Recruitment Details

| Key information relevant to the recruitment process for the overall study, such as dates of the recruitment period and locations |
| --- |
| Eleven Investigators at 11 sites enrolled a total of 100 study subjects between December 7, 2005 and July 24, 2006. |

### Pre-Assignment Details

| Significant events and approaches for the overall study following participant enrollment, but prior to group assignment |
| --- |
| No text entered. |

### Reporting Groups

|  | Description |
| --- | --- |
| **All Patients Receiving the Filter** | All enrolled subjects |

### Participant Flow:   Overall Study

|  | **All Patients Receiving the Filter** |
| --- | --- |
| **STARTED** | 100 |
| **COMPLETED** | 91 |
| **NOT COMPLETED** | 9 |
|     **Withdrawal by Subject** | 3 |
|     **Death** | 6 |

## ▶ Baseline Characteristics

 **Hide Baseline Characteristics**

### Population Description

| Explanation of how the number of participants for analysis was determined. Includes whether analysis was per protocol, intention to treat, or another method. Also provides relevant details such as imputation technique, as appropriate. |
| --- |

11/14/2017    Prospective, Multi-center, Single-arm Study to Assess the Safety of Retrieval of the Recovery G2 Filter...Study Results - ClinicalTrials.gov

Case 2:15-md-02641-DGC   Document 6859-1   Filed 11/17/17   Page 36 of 51

No text entered.

### Reporting Groups

| | Description |
|---|---|
| **Participants Receiving a Filter** | Patients who were at temporary, increased risk of pulmonary embolism requiring inferior vena cava (IVC) interruption, and for whom Recovery G2 Filter retrieval could reasonably be expected to occur within 6 months of device placement. |

### Baseline Measures

| | **Participants Receiving a Filter** |
|---|---|
| **Overall Participants Analyzed** [Units: Participants] | 100 |
| **Age** [Units: Years] Mean (Standard Deviation) | 52.1  (16.7) |
| **Gender** [Units: Number of participants] | |
| **Female** | 33 |
| **Male** | 67 |
| **Region of Enrollment** [Units: Participants] | |
| **United States** | 100 |
| **Indication for Placement** [1] [Units: Number of Participants] | |
| **active thromboembolic disease** | 43 |
| **no active thromboembolic disease** | 57 |

[1]  Patients with active thromboembolic disease (the presence of Deep Vein Thrombosis (DVT) or pulmonary embolism (PE) within 3 months of study enrollment).

▶ Outcome Measures

➕ **Show All Outcome Measures**

**1.  Primary:  Technical Success (Retrieval)   [ Time Frame: 1 month post filter retrieval**

or through 6 months following implantation ]

➕ **Show Outcome Measure 1**

2. **Primary:  Clinical Success (Retrieval)   [ Time Frame: Time of Retrieval or through 6 months of implantation ]**

➕ **Show Outcome Measure 2**

3. **Primary:  Percentage of Participants With Adverse Events Through 30 Days Post Retrieval   [ Time Frame: 30 days post retrieval ]**

➕ **Show Outcome Measure 3**

4. **Secondary:  Filter Migration > 2cm   [ Time Frame: 30 days post retrieval or 6 months following filter placement ]**

➕ **Show Outcome Measure 4**

5. **Secondary:  Incidence of Filter Fracture   [ Time Frame: at 6 months or at retrieval of the filter ]**

➕ **Show Outcome Measure 5**

▶ **Serious Adverse Events**

➖ **Hide Serious Adverse Events**

| Time Frame | No text entered. |
|---|---|
| Additional Description | No text entered. |

**Reporting Groups**

| | Description |
|---|---|
| **All Patients Receiving the Filter** | All enrolled subjects |

**Serious Adverse Events**

| | All Patients Receiving the Filter |
|---|---|
| **Total, Serious Adverse Events** | |
| **# participants affected / at risk** | **6/100 (6.00%)** |
| **General disorders** | |
| **Discomfort due to device penetration** [†] | |

| | |
|---|---|
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 76 |
| **Respiratory, thoracic and mediastinal disorders** | |
| **Pulmonary Embolism** † | |
| # participants affected / at risk | 2/100 (2.00%) |
| # events | 76 |
| **Vascular disorders** | |
| **Caval Stenosis** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 76 |
| **Deep Vein Thrombosis** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 76 |
| **Inferior Vena Caval Occlusion** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 76 |

† Events were collected by systematic assessment

 **Other Adverse Events**

🔲 Hide Other Adverse Events

| | |
|---|---|
| **Time Frame** | No text entered. |
| **Additional Description** | No text entered. |

**Frequency Threshold**

| | |
|---|---|
| **Threshold above which other adverse events are reported** | 0% |

**Reporting Groups**

| | Description |
|---|---|
| **All Patients Receiving the Filter** | All enrolled subjects |

**Other Adverse Events**

| | All Patients Receiving the Filter |
|---|---|

11/14/2017    Prospective, Multi-center, Single-arm Study to Assess Safety of Retrieval of IVC Filter... - Study Results - ClinicalTrials.gov

Case 2:15-md-02641-DGC Document 8859-1 Filed 11/17/17 Page 39 of 51

| | |
|---|---|
| **Total, Other (not including serious) Adverse Events** | |
| **# participants affected / at risk** | **70/100 (70.00%)** |
| **Blood and lymphatic system disorders** | |
| **Anemia** † | |
| # participants affected / at risk | 15/100 (15.00%) |
| # events | 15 |
| **Lymphocytosis** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Pancytopenia** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Cardiac disorders** | |
| **Atrial Fibrillation** † | |
| # participants affected / at risk | 2/100 (2.00%) |
| # events | 2 |
| **Atrial Flutter** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Cardiac Failure Congestive** † | |
| # participants affected / at risk | 3/100 (3.00%) |
| # events | 3 |
| **Coronary Artery Disease** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Myocardial Infarction** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Pericardial Effusion** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Pericardial Hemorrhage** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Sinus Tachycardia** † | |

| | |
|---|---|
| # participants affected / at risk | 2/100 (2.00%) |
| # events | 2 |
| **Supraventricular Tachycardia** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Ventricular Tachycardia** † | |
| # participants affected / at risk | 3/100 (3.00%) |
| # events | 3 |
| **Ear and labyrinth disorders** | |
| **Ear Pain** * | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Gastrointestinal disorders** | |
| **Abdominal Mass** * | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Abdominal Pain Upper** * | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Constipation** * | |
| # participants affected / at risk | 2/100 (2.00%) |
| # events | 2 |
| **Diabetic Gastroparesis** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Diarrhea** * | |
| # participants affected / at risk | 3/100 (3.00%) |
| # events | 3 |
| **Duodenitis** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Dysphagia** † | |
| # participants affected / at risk | 3/100 (3.00%) |
| # events | 3 |
| **Esophagitis** † | |
| # participants affected / at risk | 2/100 (2.00%) |
| # events | 2 |

11/14/2017   Case 2:15-md-02641-DGC   Document 8859-1   Filed 11/17/17   Page 41 of 51   ClinicalTrials.gov

Prospective, Multicenter, Single-arm Study to Assess Safety of Retrieval of the Recovery G2 Filter. Study Results — ClinicalTrials.gov

| | |
|---|---|
| **Frequent Bowel Movements** * | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Gastric Ulcer** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Gastritis** † | |
| # participants affected / at risk | 2/100 (2.00%) |
| # events | 2 |
| **Gastrointestinal Hemorrhage** † | |
| # participants affected / at risk | 3/100 (3.00%) |
| # events | 3 |
| **Gastrointestinal Stenosis** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Hiatus Hernia** † | |
| # participants affected / at risk | 2/100 (2.00%) |
| # events | 2 |
| **Ileus Paralytic** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Large Intestinal Ulcer Hemorrhage** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Nausea** * | |
| # participants affected / at risk | 2/100 (2.00%) |
| # events | 2 |
| **Pancreatitis** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Rectal Hemorrhage** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Retroperitoneal Hematoma** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Vomiting** * | |
| # participants affected / at risk | 2/100 (2.00%) |

| | |
|---|---|
| # events | **2** |
| **General disorders** | |
|    **Adverse Drug Reaction** [*] | |
|       # participants affected / at risk | **1/100 (1.00%)** |
|       # events | **1** |
|    **Chest Pain** [*] | |
|       # participants affected / at risk | **2/100 (2.00%)** |
|       # events | **2** |
|    **Edema Peripheral** [†] | |
|       # participants affected / at risk | **2/100 (2.00%)** |
|       # events | **2** |
|    **General Physical Health Deterioration** [†] | |
|       # participants affected / at risk | **1/100 (1.00%)** |
|       # events | **1** |
|    **Heparin Induced Thrombocytopenia** [†] | |
|       # participants affected / at risk | **2/100 (2.00%)** |
|       # events | **2** |
|    **Pain** [*] | |
|       # participants affected / at risk | **4/100 (4.00%)** |
|       # events | **4** |
|    **Pyrexia** [†] | |
|       # participants affected / at risk | **3/100 (3.00%)** |
|       # events | **3** |
| **Hepatobiliary disorders** | |
|    **Cholecystitis** [†] | |
|       # participants affected / at risk | **1/100 (1.00%)** |
|       # events | **1** |
| **Immune system disorders** | |
|    **Drug Hypersensitivity** [*] | |
|       # participants affected / at risk | **1/100 (1.00%)** |
|       # events | **1** |
|    **Hypersensitivity** [†] | |
|       # participants affected / at risk | **1/100 (1.00%)** |
|       # events | **1** |
| **Infections and infestations** | |
|    **Bacteremia** [†] | |

Case 2:15-md-02641-DGC   Document 8859-1   Filed 11/17/17   Page 43 of 51

| | |
|---|---|
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Clostridium Colitis** † | |
| # participants affected / at risk | 3/100 (3.00%) |
| # events | 3 |
| **Endocarditis Staphylococcal** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Groin Abscess** * | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Infection** * | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Oral Candidiasis** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Osteomyelitis** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Pelvic Abscess** * | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Pneumonia** † | |
| # participants affected / at risk | 12/100 (12.00%) |
| # events | 12 |
| **Postoperative Infection** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Postoperative Wound Infection** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Respiratory Tract Infection** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Sepsis** † | |
| # participants affected / at risk | 3/100 (3.00%) |
| # events | 3 |

| Sinusitis † | |
|---|---|
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Staphylococcal Infection †** | |
| # participants affected / at risk | 4/100 (4.00%) |
| # events | 4 |
| **Urinary Tract Infection †** | |
| # participants affected / at risk | 12/100 (12.00%) |
| # events | 12 |
| **Viral Infection †** | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Wound Infection †** | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Injury, poisoning and procedural complications** | |
| **Anemia Postoperative †** | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Clavicle Fracture †** | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Device Migration †** | |
| # participants affected / at risk | 10/100 (10.00%) |
| # events | 10 |
| **Incision Site Complication \*** | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Patella Fracture †** | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Postmastectomy Lymphedema †** | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Seroma †** | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |

| | |
|---|---|
| **Wound Dehiscence** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Investigations** | |
| **Anticoagulation Drug Level Above Therapeutic** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Liver Function Test Abnormal** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Scan Adrenal Gland Abnormal** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Metabolism and nutrition disorders** | |
| **Dehydration** † | |
| # participants affected / at risk | 3/100 (3.00%) |
| # events | 3 |
| **Fluid Overload** * | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Hypoglycemia** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Musculoskeletal and connective tissue disorders** | |
| **Back Pain** * | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Chest Wall Pain** * | |
| # participants affected / at risk | 2/100 (2.00%) |
| # events | 2 |
| **Dislocation of Joint Prosthesis** † | |
| # participants affected / at risk | 2/100 (2.00%) |
| # events | 2 |
| **Hip Fracture** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Joint Dislocation** † | |

11/14/2017    Prospective Multicenter Guidelin... Study to Assess the Safety of Retrieval of the Recovery G2 Filter - Study Results - ClinicalTrials.gov

Case 2:15-md-02641-DGC Document 8859-1 Filed 11/17/17 Page 46 of 51

| | |
|---|---|
| # participants affected / at risk | 2/100 (2.00%) |
| # events | 2 |
| **Muscle Spasms** [*] | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Musculoskeletal Pain** [*] | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Osteoarthritis** [†] | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Pain in Extremity** [*] | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Neoplasms benign, malignant and unspecified (incl cysts and polyps)** | |
| **Breast Cancer in Situ** [†] | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Chondrosarcoma** [†] | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Colon Cancer Metastatic** [†] | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Nervous system disorders** | |
| **Dizziness** [*] | |
| # participants affected / at risk | 2/100 (2.00%) |
| # events | 2 |
| **Headache** [*] | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Metabolic Encephalopathy** [†] | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Paresthesia** [†] | |

| | |
|---|---|
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Restless Leg Syndrome** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Psychiatric disorders** | |
| **Acute Psychosis** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Anxiety** * | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Confusional State** * | |
| # participants affected / at risk | 2/100 (2.00%) |
| # events | 2 |
| **Depression** * | |
| # participants affected / at risk | 3/100 (3.00%) |
| # events | 3 |
| **Insomnia** * | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Major Depression** † | |
| # participants affected / at risk | 4/100 (4.00%) |
| # events | 4 |
| **Obsessive Compulsive Disorder** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Psychotic Disorder** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Renal and urinary disorders** | |
| **Acute Renal Failure** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Dysuria** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |

| | |
|---|---|
| **Micturition Urgency** † | |
| # participants affected / at risk | **1/100 (1.00%)** |
| # events | **1** |
| **Pyuria** † | |
| # participants affected / at risk | **1/100 (1.00%)** |
| # events | **1** |
| **Renal Cysts** † | |
| # participants affected / at risk | **1/100 (1.00%)** |
| # events | **1** |
| **Renal Failure** † | |
| # participants affected / at risk | **3/100 (3.00%)** |
| # events | **3** |
| **Renal Impairment** † | |
| # participants affected / at risk | **2/100 (2.00%)** |
| # events | **2** |
| **Renal Mass** † | |
| # participants affected / at risk | **1/100 (1.00%)** |
| # events | **1** |
| **Reproductive system and breast disorders** | |
| **Scrotal Edema** † | |
| # participants affected / at risk | **1/100 (1.00%)** |
| # events | **1** |
| **Respiratory, thoracic and mediastinal disorders** | |
| **Atelectasis** † | |
| # participants affected / at risk | **2/100 (2.00%)** |
| # events | **2** |
| **Chronic Respiratory Disease** † | |
| # participants affected / at risk | **1/100 (1.00%)** |
| # events | **1** |
| **Hiccups** * | |
| # participants affected / at risk | **1/100 (1.00%)** |
| # events | **1** |
| **Pleural Effusion** † | |
| # participants affected / at risk | **3/100 (3.00%)** |
| # events | **3** |
| **Pneumothorax** † | |
| # participants affected / at risk | **2/100 (2.00%)** |

| | |
|---|---|
| # events | 2 |
| **Pulmonary Embolism** † | |
| # participants affected / at risk | 3/100 (3.00%) |
| # events | 3 |
| **Respiratory Failure** † | |
| # participants affected / at risk | 3/100 (3.00%) |
| # events | 3 |
| **Vocal Cord Paresis** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Skin and subcutaneous tissue disorders** | |
| **Decubitus Ulcer** † | |
| # participants affected / at risk | 2/100 (2.00%) |
| # events | 2 |
| **Dermatitis Acneiform** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Pruritus** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Rash** * | |
| # participants affected / at risk | 4/100 (4.00%) |
| # events | 4 |
| **Vascular disorders** | |
| **Adrenal Hemorrhage** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Arterial Hemorrhage** † | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Catheter Site Hemorrhage** * | |
| # participants affected / at risk | 1/100 (1.00%) |
| # events | 1 |
| **Deep Vein Thrombosis** † | |
| # participants affected / at risk | 13/100 (13.00%) |
| # events | 13 |
| **Hematoma** * | |

11/14/2017　　Prospective, Multicenter, Single-arm Study to Assess the Safety of a trial of IDE Recovery Filter - Study Results - ClinicalTrials.gov

Case 2:15-md-02641-DGC  Document 8859-1  Filed 11/17/17  Page 50 of 51

| | |
|---|---|
| # participants affected / at risk | **1/100 (1.00%)** |
| # events | **1** |
| **Hemorrhage** † | |
| # participants affected / at risk | **1/100 (1.00%)** |
| # events | **1** |
| **Lymphedema** † | |
| # participants affected / at risk | **1/100 (1.00%)** |
| # events | **1** |
| **Thrombophlebitis Superficial** † | |
| # participants affected / at risk | **1/100 (1.00%)** |
| # events | **1** |
| **Vena Cava Thrombosis** † | |
| # participants affected / at risk | **1/100 (1.00%)** |
| # events | **1** |
| **Vena Caval Injury** † | |
| # participants affected / at risk | **1/100 (1.00%)** |
| # events | **1** |

†   Events were collected by systematic assessment

*   Events were collected by non-systematic assessment

 **Limitations and Caveats**

 **Hide Limitations and Caveats**

| Limitations of the study, such as early termination leading to small numbers of participants analyzed and technical problems with measurement leading to unreliable or uninterpretable data |
|---|
| No text entered. |

▶ **More Information**

➖ **Hide More Information**

**Certain Agreements:**

| |
|---|
| Principal Investigators are **NOT** employed by the organization sponsoring the study. |
| There **IS** an agreement between Principal Investigators and the Sponsor (or its agents) that restricts the PI's rights to discuss or publish trial results after the trial is completed. |

Case 2:15-md-02641-DGC Document 8859-1 Filed 11/17/17 Page 51 of 51

The agreement is:

☐ The only disclosure restriction on the PI is that the sponsor can review results communications prior to public release and can embargo communications regarding trial results for a period that is **less than or equal to 60 days**. The sponsor cannot require changes to the communication and cannot extend the embargo.

☑ The only disclosure restriction on the PI is that the sponsor can review results communications prior to public release and can embargo communications regarding trial results for a period that is **more than 60 days but less than or equal to 180 days**. The sponsor cannot require changes to the communication and cannot extend the embargo.

☐ Other disclosure agreement that restricts the right of the PI to discuss or publish trial results after the trial is completed.

**Results Point of Contact:**

Name/Title: John Reviere, Director of Clinical Affairs

Organization: C.R. Bard

phone: 480-303-2644

e-mail: john.reviere@crbard.com

| | |
|---|---|
| Responsible Party: | C. R. Bard |
| ClinicalTrials.gov Identifier: | NCT00556426    History of Changes |
| Other Study ID Numbers: | BPV-RC-1332 |
| First Submitted: | November 8, 2007 |
| First Posted: | November 12, 2007 |
| Results First Submitted: | May 26, 2009 |
| Results First Posted: | May 11, 2011 |
| Last Update Posted: | June 1, 2012 |