# EXHIBIT 3

Ramon Rossi Lopez – rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh, LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
602-530-8000

Co-Lead/Liaison Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC<br><br>**DECLARATION OF SCOTT RESNICK, M.D.** |

I, Scott Resnick, M.D. declare as follows:

1. I am a board-certified Diagnostic Radiologist, with a subspecialty in Interventional Radiology. As such, I have received a certificate of additional qualification in Interventional Radiology, granted by the American Board of Radiology. I am an attending interventional radiologist at Northwestern Memorial Hospital and have actively working in the field for 19 years. I currently hold the title of Associate Professor of Radiology and Surgery at the Northwestern University Feinberg School of Medicine. I completed medical school, radiology residency, and interventional radiology fellowship, all at Northwestern University. I served as the Director of Interventional Radiology Fellowship training program for 15 years and have been Director of the Northwestern Vein Center for 13 years. My clinical interests have included vein and vascular therapies for the entirety of my career.

2. In connection with the 2015 Bard consulting agreement, I received two types of information from Bard's counsel: medical records for an individual case, (Austin case) and a CD containing publicly available medical literature pertaining to IVC filters.

3. I did not share any of this information with my colleagues Drs. Desai or Vogelzang in connection with their reports or otherwise.

4. The Vogelzang and Desai reports were based on their clinical experience and their review of medical literature, which they independently developed in their own

careers and through their own research and their review of medical literature provided by counsel for plaintiffs.

5. I had one meeting with counsel for Bard, attorney Jim Rogers, in connection with the 2015 consulting agreement. Mr. Rogers came to meet me in Chicago. The meeting lasted approximately three hours. We discussed the Austin case. Mr. Rogers told me that although our focus was the Austin case, there were about 50 other cases, which Bard may seek my opinion about.

6. At this meeting (or at any time prior to this meeting or after this meeting) we did not discuss (and I was not otherwise provided with information about) Bard's defense theories. Mr. Rogers did not provide me with (and I have never received) any confidential information about Bard's legal defense or strategy.

7. I told Mr. Rogers my opinion about problems with the Bard filters in general, which were developed based on my clinical and academic experience, not from any experience consulting with Bard. I was never asked to consult on any of the approximately 50 additional cases that Mr. Rogers mentioned; nor was I ever contacted again by Mr. Rogers or anyone else on behalf of Bard regarding my opinions about the Austin case. It was my impression at the time that based on my opinions about the problems with Bard's retrievable filters, which I shared with Mr. Rogers, Bard and/or its lawyers were not interested in having me serve as an expert witness or consultant on their behalf. No Bard attorney ever followed up with me on the Austin case.

8. In connection with expert reports on behalf of plaintiffs done by Drs. Vogelzang and Desai in the Bard MDL, my role in creation of these reports was modest and supportive relative to the signees. In this capacity I reviewed a number of IVCF related journal articles, as well as Bard internal documents provided to me by plaintiff s' counsel, reviewed and discussed defense expert reports with the plaintiff expert report signees and plaintiff counsel, and made comments on draft reports following review. I did not share with them any information about the Austin case and did not provide them with any other information that I had received from Bard. The Austin case pertained to a question of specific causation (consisting of medical record review, which is why I understood Mr. Rogers provided me with the Austin medical records) in one plaintiff in state court, not to the issues of medical monitoring and general causation addressed by Drs. Vogelzang and Desai in the Bard MDL. Their reports addressed their clinical experience with the Bard retrievable filters, the medical literature, their opinions about medical monitoring, and their response to selected issues in defense expert reports. Thus they were the report signees. If these reports represented my opinion then I would have be a signatory to them.

9. Apart from my consult on the Austin case in 2015, I have consulted for Bard, both Bard Access Systems, Inc. as well as Bard Peripheral Vascular for many years, dating back to 2003. During this time, my typical consulting interaction was a product line review which would entail myself, and on most occasions one or more other

consulting physicians, sitting in a conference room into which multiple Bard product teams would enter in sequence, provide a brief presentation of existing products or new products in their team's development pipeline, and then a brief discussion would follow, typically related to product interest, clinical utility, and our assessment of the potential or likely market opportunity for each product. The substantial majority of these discussions involved Bard Access systems, Inc., a division of Bard to which the IVC filters does not belong. A small number of these discussions occurred with Bard Peripheral Vascular, to which the IVC filters did belong. This division also contained many additional products such as traditional angioplasty balloons, drug-eluting angioplasty balloons, bare metal stents, and covered stents (or stent grafts). It was discussions surrounding these non-filter items that occupied the vast majority of our time. IVC filtration was merely one item in a line of many, which we reviewed in succession. Nothing that occurred in the consulting meetings on the product lines, animal study, or the Austin case is relevant to the expert reports done by Drs. Vogelzang and Desai in the Bard MDL.

10. I did participate in a pre-existing animal study on 2 separate occasions as part of a single study process wherein I implanted and removed Bard filter prototypes in live sheep. I had no role in developing this protocol but rather followed the protocol as directed and gave my opinion on ease of device implantation and removal. I also made radiographic measurements regarding filter tilt and penetration.

11. Subsequently, when I later inquired to Bard Peripheral Vascular IVC filter research leader Mike Randall if I would be involved with further testing I was told Bard Peripheral Vascular had found other physicians to perform these animal tests.

12. I did not at any time share with Drs. Vogelzang or Desai any information relating in any way to the animal studies. I also did not share with them any information that I received from Bard. Accordingly, the reports of Drs. Vogelzang and Desai and their expert witness work for plaintiffs in the Bard MDL was not affected or advantaged by my relationship with Bard, my consulting work for Bard Peripheral Vascular, or information I received from Bard in connection with the Austin case specific medical record review and meeting.

In accordance with 28 U.S. Code § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on July ___ 2017.

1  Executed this 27th day of July, 2017 in Chicago, IL

Signature: _____
Printed Name: Scott Resnick, M.D.
Address: 251 E. Huron St. Chicago, IL 60611
Phone Number: 312-926-8433

Notary:

City/County of Cook

The foregoing declaration was acknowledged before me this 27th day of July, 2017.

_[signature]_
Notary Public
My Commission expires 09/09/2017

"OFFICIAL SEAL"
MILLISA VASICH
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 9/9/2017

_[signature]_
07.27.2017

4