**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC<br><br>**ORDER** |

This multidistrict litigation ("MDL") involves thousands of personal injury cases related to inferior vena cava ("IVC") filters manufactured and marketed by Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard"). Bard has filed a motion to disqualify one of Plaintiffs' expert witnesses, Dr. Thomas Kinney. Doc. 5677. The motion is fully briefed, and the Court heard arguments on December 15, 2017. The Court will deny the motion.

**I.    Background.**

Each Plaintiff in this MDL received an implant of a Bard IVC filter and claims that the filter is defective and has caused serious injury or death. Plaintiffs allege that Bard filters tilt, perforate the IVC, or fracture and migrate to neighboring organs. Plaintiffs claim that Bard filters are more dangerous than other IVC filters, and that Bard failed to warn about the higher risks. Plaintiffs assert a host of state law claims, including manufacturing and design defects, failure to warn, breach of warranty, and consumer fraud and unfair trade practices. Doc. 303-1. Bard disputes Plaintiffs' allegations, contending that overall complication rates for Bard filters are comparable to those of

other IVC filters, and the medical community is aware of the risks associated with IVC filters.[1]

The parties intend to use various expert witnesses at trial, including engineers, medical professionals, and regulatory experts. Dr. Kinney is a mechanical engineer, medical doctor, and interventional radiologist. Plaintiffs retained him to opine about the alleged design defects in Bard filters and Bard's alleged failure to warn physicians who implant them. Dr. Kinney and two colleagues, Drs. Anne Roberts and Sanjeeva Kalva, coauthored an expert report that, among other topics, addresses the information a physician would need to know about an IVC filter's safety and efficacy in order to conduct a proper risk-benefit analysis. *See* Doc. 5746-6 at 6-7.[2] The report also discusses clinical and testing data Bard possessed before marketing certain filters. *Id.* The report concludes in part that Bard was aware of design defects and high complication rates associated with its filters and failed to adequately warn physicians of those dangers. *Id.* at 19-29. Of the seven different versions of Bard filters at issue in this MDL, Dr. Kinney's report primarily addresses the Recovery and G2 filters.

Dr. Kinney previously served as consultant and expert witness for Bard. In June 2006, Bard retained him as an expert witness in *Mattes v. C. R. Bard, Inc.*, a district court case involving alleged perforation of the IVC caused by a Recovery filter. Eight months later, Bard retained Dr. Kinney as an expert witness in a state court case, *Ennis v. Hospital of the University of Pennsylvania*, which involved allegations that a Recovery filter had tilted and fractured. Dr. Kinney also served as an IVC filter consultant to Bard for several years beginning in 2005.

Defendants argue that Dr. Kinney must be disqualified because he has engaged in classic "side switching." Doc. 5677 at 2. Plaintiffs contend that disqualification is not

---

[1] For further discussion of IVC filters and Plaintiffs' claims, see the Court's order addressing Defendants' summary judgment motion regarding preemption. Doc. 8872 at 1-6.

[2] Page citations are to numbers placed at the top of each page by the Court's electronic filing system rather than the document's original page numbers.

warranted because Dr. Kinney received no confidential information from Bard that is relevant to this MDL. Doc. 5803 at 3-14. Plaintiffs also contend that disqualification would be unfairly prejudicial. *Id.* at 13-15.

## II. Disqualification Standard.

"Courts have inherent power to disqualify an expert witness to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and promote public confidence in the legal system." *In re Incretin Mimetics Prods. Liab. Litig.*, MDL No. 13-md-2452 AJB, 2015 WL 1499167, at *2 (S.D. Cal. Apr. 1, 2015) (citing *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir.1980)). While the Court's power to disqualify an expert witness is clear, determining when it should be exercised can be difficult.

Courts have developed two approaches. The first, often referred to as the "bright-line rule," requires disqualification "where it is undisputed that the consultant was previously retained as an expert by the adverse party in the same litigation and had received confidential information from the adverse party pursuant to the earlier retention." *Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991). Many cases recognize this rule. *See*, *e.g.*, *In re C. R. Bard, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2187, 2014 WL 6960396, at *7 (S.D. W. Va. Dec. 8, 2014); *Rhodes v. E.I. Du Pont de Nemours & Co.*, 558 F. Supp. 2d 660, 665-66 (S.D. W. Va. 2008); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 05-cv-0897, 2007 WL 4440173, at *2 (D.N.J. Dec. 17, 2007).

The second approach applies where "the parties dispute whether the earlier retention and passage of confidential information occurred." *Wang*, 762 F. Supp. at 1248. It includes two parts: (1) whether it was reasonable for the party seeking disqualification to believe it had a confidential relationship with the expert, and (2) whether the expert received confidential information relevant to the current litigation. *See id.*; *Bard Pelvic Repair Sys.*, 2014 WL 6960396, at *7. When both questions are answered "yes," the expert usually should be disqualified. *Id.* Before making a final

decision, however, courts consider public policy factors, including whether disqualification would be fair and promote confidence in the legal system. *See id.*; *Rhodes*, 558 F. Supp. 2d at 667-68; *Howmedica*, 2007 WL 4440173, at *2.

Some courts decline to adopt either the bright-line rule or the two-part test, but the essential factors remain the same: a confidential relationship, disclosure of confidential information, and policy considerations. *See In re Incretin Mimetics*, 2015 WL 1499167, at *3-8; *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1095-96 (N.D. Cal. 2004); *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 3991107, at *5 (N.D. Cal. Aug. 2, 2013); *Auto-Kaps, LLC v. Clorox Co.*, No. 15 Civ. 1737 (BMC), 2016 WL 1122037, at *2 (E.D.N.Y. Mar. 22, 2016).

In this case, the parties address disqualification under both the bright-line rule and the two-part test. The Court will follow suit.[3]

## III. Bright-Line Rule.

The parties agree that Dr. Kinney previously had a confidential relationship with Bard. The question is whether he received confidential information. For purposes of disqualification, confidential information is "information which is 'of either particular significance or that which can be readily identified as either attorney work product or within the scope of the attorney-client privilege.'" *Incretin Mimetics*, 2015 WL 1499167, at *5 (quoting *Paul*, 123 F.R.D. at 279).

Disqualification under the bright-line rule appears to be warranted only when it is undisputed that the expert received relevant confidential information. *Wang*, 762 F. Supp. at 1248; *see Theriot v. Parish of Jefferson*, No. 95-2453, 1996 WL 392149, at *2 (E.D. La. July 8, 1996) (applying bright-line rule in a "clear cut" case of side switching); *Freight Tracking Techs., LLC v. Va. Int'l Gateway, Co.*, No. 2:13cv708, 2015 WL 12602453, at *3 n.1 (E.D. Va. Feb. 11, 2015) (bright-line rule applies only to "clear

---

[3] The Ninth Circuit has not adopted a specific approach, but has recognized in dicta that district courts can disqualify "an expert who is initially retained by one party, dismissed, and employed by the opposing party in the same or related litigation." *Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996).

cases" where there has been "an exchange of confidential information between an expert and one party, then the expert's retention by the opposing party in the same litigation"). Because Plaintiffs dispute whether Dr. Kinney received confidential information from Bard that relates to this MDL (Doc. 5803 at 3-13), the Court concludes that the bright-line rule does not apply.

Defendants' reliance on *Rhodes* and *Bard Pelvic Repair System* is misplaced. Each case included uncontroverted evidence that attorney work product was disclosed to the expert.

In *Rhodes*, the attorney testified that he carefully selected case-related documents for the expert to review and that those documents revealed confidential case strategy. 558 F. Supp. 2d at 669. The expert was also given a memorandum prepared by the lawyer on key legal issues. *Id.* at 771. Defendants have presented no such evidence here.

In *Bard Pelvic Repair System*, counsel for Bard testified that the expert participated in many discussions involving attorney work product in the form of mental impressions and defense strategy. 2014 WL 6960396, at *9. The attorney documented more than 75 substantive contacts with the expert, including many face-to-face meetings. *Id.* at *10. Some meetings concerned the vetting of other potential experts and strategies for cross-examining the plaintiffs' experts. *Id.* at *9-10. The expert spent more than 50 hours on the case, and testified that he understood his communications with Bard's counsel were confidential. *Id.* at 10. Disqualification was warranted under the bright-line rule because the expert "had a close working relationship with Bard's counsel, and in the course of that relationship received confidential information such as litigation strategy, mental impressions regarding strengths and weaknesses of the pelvic mesh cases, the role of experts at trial, and Bard's anticipated defenses." *Id.*

In this case, Defendants assert that their counsel shared mental impressions about the *Mattes* and *Ennis* cases with Dr. Kinney (Doc. 5677 at 7), but offer no supporting evidence. Dr. Kinney has testified that he reviewed medical records in *Mattes* and *Ennis*,

but received no attorney work product and had no discussions with counsel concerning legal issues or case strategy. Doc. 5803-1 ¶¶ 12-13.

Given this factual disagreement, Defendants have not shown that Dr. Kinney's disqualification is appropriate under the bright-line rule.

## IV. Two-Part Test.

The key question under the two-part test is whether the evidence shows that Dr. Kinney received confidential information from Bard. The Court concludes that Defendants have not met their burden of making this showing.[4]

Dr. Kinney served as a paid consultant to Bard between 2005 and 2008. To facilitate this work, the parties entered into several agreements, each of which contemplated the disclosure of confidential information. The first was a "Confidential Information Agreement" in which the Bard agreed to disclose confidential information relating to IVC filters. Docs. 5747, 5803-1 ¶ 7. In others, Dr. Kinney acknowledged that he would receive confidential information in connection with the performance of his consulting services. For example, in the August 8, 2007 agreement, Dr. Kinney, who was referred to as "Provider," gave this express acknowledgment: "Provider acknowledges that confidential or proprietary information or materials, including but not limited to the Protocol, will be made available to Provider or developed by Provider in connection with performance of the Services[.]" Doc. 5747-5, ¶ 8. Other agreements contain similar acknowledgements. *See*, *e.g.*, Doc. 5679-2, ¶ 8. Dr. Kinney was also involved in three animal studies for Bard, and the agreement for each contained a provision concerning confidential information. Docs. 5747-1 ¶ 5, 5747-3 ¶ 5, 5747-4 ¶ 8. And as noted above, he was retained as an expert witness in two Bard cases.

---

[4] The *Rhodes* court stated that the second element of the two-part test is satisfied if "the expert received *or had reasonable access to*" confidential information. 558 F. Supp. 2d at 667 (emphasis added). But *Rhodes* does not discuss disqualification based solely on "reasonable access" to confidential information, and the Court has not seen it addressed in other cases. The Court therefore concludes that the two-part test is satisfied only if the expert actually received confidential information.

- 6 -

It appears likely from these agreements and retentions that Dr. Kinney actually received confidential information. But likelihood is not enough. Defendants must present evidence that confidential information was in fact conveyed. In a recent unpublished decision, the Ninth Circuit noted that such evidence must be "specific and unambiguous." *In re: Incretin-Based Therapies Products Liability Litigation*, No. 15-56997, 2017 WL 6030735, at *3 (9th Cir. Dec. 6, 2017) (citing *Hewlett-Packard*, 330 F. Supp. 2d at 1094).

Defendants have not produced specific and unambiguous evidence that Dr. Kinney received confidential information. They claim in their briefing that he received such information from various attorneys – attorneys who are still involved in this litigation – but they provide no declarations from those attorneys concerning information they shared with Dr. Kinney. Nor do Defendants provide evidence from any other Bard employee regarding such information. Indeed, aside from providing very general descriptions, Defendants make no effort to identify the confidential information Dr. Kinney received or the parts of his expert report that are based on Bard confidences. If Defendants were concerned about publicly disclosing the very information they seek to protect, they could have proposed an *in camera* submission, but they have not done so.

Dr. Kinney, by contrast, avows that he never received confidential information from Bard. Doc. 5803-1. Although the Court might be inclined to view this evidence as self-serving in light of the extensiveness of his prior relationship and the number of confidentiality provisions he executed, Dr. Kinney's declaration is uncontroverted. Defendants present no declarations of their own.

Disqualification is a drastic measure, to be used sparingly. *Hewlett-Packard*, 330 F. Supp. 2d at 1092. "Cases granting disqualification are rare because courts are generally reluctant to disqualify expert witnesses, especially those . . . who possess useful specialized knowledge." *Rhodes*, 558 F. Supp. 2d at 664 (quotation marks and citations omitted). "Accordingly, the party seeking disqualification bears a 'high standard

of proof' to show that disqualification is warranted." *Id*. (citations omitted). Defendants have not met this high standard of proof with respect to Dr. Kinney.

**IT IS ORDERED:**

1. Defendants' motion to disqualify Thomas Kinney, M.D. as an expert for Plaintiffs (Doc. 5677) is **denied**.

2. Plaintiffs' motion for leave to file a surreply (Doc. 6682) is **granted**. The Clerk is directed to file the lodged surreply (Doc. 6683).

Dated this 21st day of December, 2017.

*David G. Campbell*
United States District Judge