Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California  92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
602-530-8000

*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC<br><br>**SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY THOMAS KINNEY, M.D. AS AN EXPERT FOR PLAINTIFFS** |

Plaintiffs provide this surreply in support of their opposition to Defendants' Motion to Disqualify Thomas Kinney, M.D. as an Expert for Plaintiffs ("Motion," Doc. 5677) and, specifically, to supplement the record as a result of Dr. Kinney's deposition that was taken after completion of the briefing on Defendants' Motion.

Bard took the deposition of Dr. Kinney in this matter on June 17, 2017, approximately one month after briefing was complete on its Motion to disqualify him.  In the Motion, Bard contends that Dr. Kinney was its consultant to whom it provided protected, confidential information.  In opposition to that Motion, Dr. Kinney provided a sworn declaration in which he attested that he had not been retained by Bard for any purposes related to this litigation and that had not received any information from Bard that related to the mental impressions of its counsel, legal theories, liability theories, or relating at all to the subject matter of his report in this litigation.

Despite its claims in the Motion and Dr. Kinney's sworn declaration refuting them, Bard failed to examine Dr. Kinney at his deposition regarding those subjects or to produce

1   any evidence that Dr. Kinney received from Bard any protected information that should

2   result in his disqualification in this MDL.  To the contrary, despite the elephant in the

3   room, Bard did not examine Dr. Kinney at all regarding what work he did for Bard as a

4   consultant or the information or types of information he received from Bard in that role.

5   Nor did it mark his declaration as an exhibit or ask him any questions about it.

6        Plaintiffs, on the other hand, examined Dr. Kinney regarding his work for Bard,

7   and that testimony provided further evidence that he was not, as Bard contends, a

8   litigation consultant with access to confidential information or attorney mental

9   impressions related to this litigation.  Plaintiffs have attached the relevant excerpts of Dr.

10   Kinney's deposition testimony as Exhibit A to this Surreply.  In relevant part, he testified

11   that his primary contact at Bard was Janet Hudnall but that he did speak to Richard North,

12   Rob Carr, and Dr. Ciavarella.  Other than Richard North, all of these individuals are

13   corporate, non-legal employees of Bard.  Further, he expressly disclaimed any contact

14   with Richard North relating to the lawsuits on which he had been retained.  *See id.* at

15   312:3-6.  Rather, Mr. North "contacted [him] about having the phone conversations with

16   helping physicians" having problems with filters.  *Id.* at 312:8-19.  In that role, Dr. Kinney

17   was "asked to give advice about particular [medical] cases.  Usually it was about

18   retrievals, difficult retrievals."  *Id.* at 313:11-13.  He considered himself to be a

19   "consultant giving a second opinion to a physician having a problem with a filter."  *Id.* at

20   313:18-21.  And, he would prepare progress notes for those calls of the advice that he

21   gave to the physician.  *Id.* at 313:22-314:5

22        In his errata, Dr. Kinney noted that, while Richard North set up his arrangement to

23   help physicians and Bard support staff with problem clinical cases, Mr. North did not

24   participate in the individual calls.  Bard personnel would put Dr. Kinney in contact with

25   the specific clinician involved with the problem case.  *See* Declaration, attached as Exhibit

26   B.

27        Dr. Kinney also produced at his deposition the one and only "report" he did for

28   Bard regarding the case in which he is alleged to have been a consulting expert (Mattes

2

1   versus Bard).  Plaintiffs have not reviewed that report; Plaintiffs understand that it has

2   been filed in camera.  Plaintiffs advised counsel for Bard that Dr. Kinney was prepared to

3   testify about the circumstances of his involvement and the purpose of his report.  Bard,

4   however, chose not to examine him on those issues or anything relating to the report.  *See*

5   *id.* at 61:8-62:15.

6        In sum, Dr. Kinney's deposition testimony only further supports his declaration in

7   opposition to Bard's Motion.  For the reasons set forth in Plaintiffs' Opposition, Bard's

8   continued failure to adduce any evidence that it provided Dr. Kinney with protected

9   information relevant to the subject matter of his report or this litigation is fatal to its

10  Motion.

11       RESPECTFULLY SUBMITTED this 12th day of July 2017.

12                          GALLAGHER & KENNEDY, P.A.

13                          By:*/s/ Paul L. Stoller*
14                               Mark S. O'Connor
                                 Paul L. Stoller
15                               2575 East Camelback Road
                                 Phoenix, Arizona  85016-9225
16

17                          LOPEZ McHUGH LLP
                                 Ramon Rossi Lopez (CA Bar No. 86361)
18                               (admitted *pro hac vice*)
                                 100 Bayview Circle, Suite 5600
19                               Newport Beach, California 92660

20                          *Co-Lead/Liaison Counsel for Plaintiffs*

21

22                          **CERTIFICATE OF SERVICE**

23       I hereby certify that on this 12th day of July, 2017, I electronically transmitted the

24  attached document to the Clerk's Office using the CM/ECF System for filing and

25  transmittal of a Notice of Electronic Filing.

26                          */s/ Deborah Yanazzo*

27

28  6090025/26997-1

                                        3

# EXHIBIT A

Thomas Kinney , M.D.                    June 17, 2017
In Re: Bard IVC Filters Products Liability

Page 1

1                IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF ARIZONA

3

4

5    IN RE BARD IVC FILTERS

6    PRODUCTS LIABILITY              MD-15-02641-PHX-DGC

7    LITIGATION

8

9

10

11

12          VIDEOTAPED DEPOSITION OF THOMAS KINNEY, M.D.

13                    La Jolla, California

14                  Saturday, June 17, 2017

15                        Volume I

16

17

18

19

20

21

22    Reported by:

23    Gail E. Kennamer, CSR 4583, CCRR

24

25

Thomas Kinney , M.D.                    June 17, 2017
In Re: Bard IVC Filters Products Liability

Page 61

1    that to us.  I think that was given in camera to the

2    judge, but I told him to bring anything he had on that

3    case, and that's what he brought, so I just --

4               MR. BROWN:  Okay.

5               MR. LOPEZ:  I don't know how you guys are

6    handling that, to be honest with you, but --

7               MR. BROWN:  All right.

8               MR. LOPEZ:  -- he has it.

9      BY MR. BROWN:

10       Q.   All right.  So Dr. Kinney brought with him a

11   document entitled, "Mattes versus Bard.  Comments by

12   Dr. Thomas B. Kinney, M.D." and it's a three-and-a-half

13   page, single-spaced document.

14              MR. LOPEZ:  I guess the point is you claimed

15   privilege I think to that before.

16              MR. BROWN:  So am I correct that you --

17   plaintiffs have not seen this document?

18              MR. JOHNSON:  We have not reviewed it or seen

19   it.

20      BY MR. BROWN:

21       Q.   Okay.  Doctor --

22              MR. LOPEZ:  We were advised he had it.  We told

23   him because of your objection, we were not allowed to

24   review it or discuss it with him.

25      BY MR. BROWN:

Thomas Kinney , M.D.                    June 17, 2017
In Re: Bard IVC Filters Products Liability

Page 62

1      Q.   Doctor, have you provided this document that I

2   just described, Mattes versus Bard, to any counsel for the

3   plaintiff?

4      A.   I provided that to Laura.

5      Q.   Who is Laura?

6      A.   I don't remember her last name.  Sorry.

7      Q.   Do you remember what law firm she works for?

8      A.   No.  Sorry, Matthew, I don't.

9           MR. LOPEZ:  I can tell you.  He did provide it,

10   but we -- I have talked to Laura about this.  She was

11   instructed not to review it.

12           MR. BROWN:  Okay.

13           MR. LOPEZ:  In other words, we didn't -- we

14   didn't reference it in our opposition to the DQ motion.

15   Its content is still protected.

16           MR. BROWN:  I'm going to go ahead and mark as

17   Exhibit 5 --

18           MR. LOPEZ:  Just so there is no

19   misunderstanding, we do not agree it should be a protected

20   document.  It's just that we are honoring the fact that

21   you guys have done that.

22           MR. BROWN:  Okay.

23           MR. LOPEZ:  We think it's clearly a document

24   that's been put at issue.  Any claim by you all that it

25   somehow is privileged is ludicrous.  Best word I can think

Page 310

1            MR. JOHNSON:  Form objection.  Question is also

2     vague.

3            THE WITNESS:  It's a suggestion, but there's --

4     I don't see them giving a lot of details about how they

5     are doing that.  It's -- It's a one-sentence structure

6     with no specifics.

7         We kind of talked about that, you know, like we

8     talked about whether there is, I don't know, prospective

9     randomized studies, the grades of those versus case

10    studies.  There is no mention about how that's done here.

11    I guess we're making assumptions.

12           MR. BROWN:  Okay.  Thank you, Doctor.  I don't

13    have any other questions for you.

14           THE WITNESS:  Thank you, I think.

15           MR. JOHNSON:  I will have some questions for

16    him.  I won't be too long.

17

18                      -EXAMINATION-

19      BY MR. JOHNSON:

20         Q.   Doctor, did I understand you to tell us that for

21    a number of years, Bard had you act in different

22    capacities on their behalf?

23         A.   I did many different things for Bard.  I did --

24    I trained physicians on how to put filters in and take

25    them out.

Thomas Kinney , M.D.                          June 17, 2017
In Re: Bard IVC Filters Products Liability

Page 311

1       I did animal studies to evaluate new designs.

2       I participated in the patent lawsuit that had to do

3    with dialysis catheters.

4       And then I did phone conversations with them, in

5    contact with their clinical support staff or sales

6    personally about particular problems.

7       Q.   All right.  And you did that for a number of

8    years?

9       A.   From about 2004 to about 2007 is what I recall.

10      Q.   Who were your primary contact people with Bard?

11   You mentioned Janet Hudnall, for example.

12      A.   Hudnall was one of my major contacts.  But I do

13   remember talking to Richard North, I think.  He was the

14   guy -- he was the person that contacted me about the phone

15   conversations, if I remember right.

16      It could have been Dr. Civarella.  I don't remember.

17   It's quite a while ago now.

18      Q.   And did you mention Rob Carr?

19      A.   You know, Rob Carr was always in the background,

20   but he -- I didn't -- he didn't solicit me directly.  I

21   remember Janet, and I remember either Richard North or

22   Civarella.

23      Q.   Richard North?

24      A.   I think so.  Why?

25      Q.   He's an attorney for Bard, defending them in

Thomas Kinney , M.D.                    June 17, 2017
In Re: Bard IVC Filters Products Liability

Page 312

1    this litigation?

2          A.   Correct.

3          Q.   Right.  All right.  And was your contact with

4    Richard North relating to one of those cases identified on

5    your case list?

6          A.   It was not.

7          Q.   Okay.

8          A.   That was -- As I recall, he contacted me about

9    the phone conversations with helping physicians --

10         Q.   All right.

11         A.   -- is what I recall.

12         Q.   Okay.  So the context with respect to that

13   contact would have been he or somebody acting as an

14   intermediary where you would be asked to speak with

15   another physician who is having a problem with a filter?

16         A.   Correct.

17         Q.   And you would troubleshoot that issue with that

18   physician?

19         A.   Correct.

20         Q.   Would you prepare a report regarding your

21   interaction with that other physician?

22         A.   Yes.  Generally, as what I recall Richard North

23   asking me to do is --

24              MR. BROWN:  Hang on one second.

25         Were you a retained consultant for Bard at the time

Page 313

1    that you were contacting Richard North?

2              THE WITNESS:  I believe I might have been

3    because I --

4              MR. JOHNSON:  Let me rephrase the question.

5         Q.   I don't want to know what Richard North told

6    you.  I want to know what your interaction was with a

7    third-party physician who was having a problem with a

8    filter.

9         A.   What was my --

10        Q.   Involvement with that physician.

11        A.   I was asked to give advice about particular

12   cases.  Usually it was about retrievals, difficult

13   retrievals.

14        Q.   All right.  But the communications and the

15   advice that you gave would have been with that physician

16   who was treating a patient?

17        A.   Correct.

18        Q.   And did you consider yourself to be a -- a

19   consultant giving a second opinion to a physician having a

20   problem with a filter?

21        A.   I would say yes.

22        Q.   And would you prepare what amounts to a progress

23   note of your advice that you gave to that physician?

24        A.   I did.  Yeah.

25        Q.   Much the same as a progress note that you would

Thomas Kinney , M.D.                    June 17, 2017
In Re: Bard IVC Filters Products Liability

                                                    Page 314

1    make if one of your colleagues at one of your hospitals

2    asked you for your advice relating to a problem with a

3    filter?

4              MR. BROWN:  Object to the form.

5              THE WITNESS:  Correct.

6      BY MR. JOHNSON:

7         Q.   All right.  Were you also a trainer for Bard,

8    that is, did you train other physicians on how to implant

9    the filter and explant filters?

10        A.   Yes.

11        Q.   All right.  With regard to the report that you

12   prepared for this litigation, does it set forth your

13   opinions within a reasonable degree of medical

14   probability?

15        A.   Yes.

16        Q.   All right.  And you told us that you were first

17   retained in this litigation in December of 2016 or January

18   of 2017?

19        A.   I -- I kind of recall January, but I could be

20   wrong about that.

21        Q.   There is a list in your report of Bard

22   documents.  Do you recall that?

23        A.   Yes.

24        Q.   And do you recall reviewing all of those

25   documents?

# EXHIBIT B

1    Ramon Rossi Lopez - rlopez@lopezmchugh.com
     (California Bar Number 86361; admitted *pro hac vice*)
2    Lopez McHugh LLP
     100 Bayview Circle, Suite 5600
3    Newport Beach, California  92660
     949-812-5771
4
     Mark S. O'Connor (011029) – mark.oconnor@gknet.com
5    Gallagher & Kennedy, P.A.
     2575 East Camelback Road
6    Phoenix, Arizona  85016-9225
     602-530-8000
7
     *Co-Lead/Liaison Counsel for Plaintiffs*
8
                     UNITED STATES DISTRICT COURT
9
                         DISTRICT OF ARIZONA
10
11   In Re Bard IVC Filters Products          No. MD-15-02641-PHX-DGC
     Liability Litigation
12                                            **DECLARATION OF RAMON ROSSI
                                              LOPEZ IN SUPPORT OF SURREPLY IN
13                                            OPPOSITION TO DEFENDANTS'
                                              MOTION TO DISQUALIFY THOMAS
14                                            KINNEY, M.D. AS AN EXPERT FOR
                                              PLAINTIFFS**
15

16          I, Ramon Rossi Lopez, declare under the penalty of perjury under the laws of the

17   United States of America as follows:

18          1.      I am an adult person over eighteen years over eighteen (18) years of age

19   residing in Orange County, California.

20          2.      I am an attorney duly licensed to practice law in the State of California. I am

21   admitted pro hac vice in the above captioned matter and I am a partner of Lopez McHugh,

22   LLP and Co-Lead Counsel for *In re Bard IVC Filter Products Liability Litigation*, MDL

23   No. 2641.

24          3.      In my role as Co-Lead Counsel in this MDL, I have worked with Thomas

25   Kinney, M.D., who is an expert witness for Plaintiffs in this action.

26          4.      I attended Dr. Kinney's deposition in this action on June 17, 2017, and I

27   have received from Dr. Kinney a draft errata sheet for that deposition.  The errata sheet is

28   due on July 17, 2017 and is not yet final.

5.      In his errata sheet, Dr. Kinney noted the following supplementation to his testimony at page 313, lines 2-1 should read:  "Richard North did not contact me directly with the individual cases. It was a Bard Staff Member who would get me in contact by phone with a clinician with a specific clinical question."

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 12th day of July 2017.



2