# Exhibit A



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**_____

Food and Drug Administration
Los Angeles District
Pacific Region
19701 Fairchild
Irvine, CA 92612

Telephone: 949-608-2900
Fax: 949-608-4415

## WARNING LETTER

**VIA UNITED PARCEL SERVICE**
**SIGNATURE REQUIRED**

July 13, 2015                                               W/L # 27-15

Timothy M. Ring
Chairman and Chief Executive Officer
C.R. Bard Inc.
730 Central Ave.
Murray Hill, NJ 07974

Dear Mr. Ring:

During inspection of your C.R. Bard Inc. facility located at 289 Bay Rd, Queensbury, NY, on October 6, 2014, through November 25, 2014, and during inspection of your Bard Peripheral Vascular facility located at 1625 W. 3rd St., Tempe, AZ, on November 18, 2014, through January 05, 2015, investigators from the United States Food and Drug Administration (FDA) determined that your firm is a specification developer and manufacturer for the Inferior Vena Cava (IVC) filter delivery systems and components, including, but not limited to, the Denali Filter, the Simon Nitinol Filter and Recovery Cone Removal Kit.   This warning letter addresses violations found at the Bard Peripheral Vascular facility located at 1625 W. 3rd St., Tempe, AZ and C.R. Bard Inc. facility located at 289 Bay Rd, Queensbury, NY.  Under section 201(h) of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. § 321(h), these products are devices because they are intended for use in the diagnosis of disease or other conditions or in the cure, mitigation, treatment, or prevention of disease, or is intended to affect the structure or any function of the body.

We received responses dated December 17, 2014, January 15, 2015, February 18, 2015, March 16, 2015, April 17, 2015, and May 6, 2015, from Mr. Jason J. Gaede, Vice President Plant Operations, C.R. Bard Inc., Queensbury, NY.  We also received responses dated January 26, 2015, February 26, 2015, March 26, 2015, April 24, 2015, and May 22, 2015, from Steve S. Williamson, President, Bard Peripheral Vascular, a Division of C.R. Bard, Tempe, AZ.  These were responses to the observations noted on Form FDA 483s, Lists of Inspectional Observations that were issued to you at the close of our inspections.  We address your responses below, in relation to each of the noted violations.  These violations include, but are not limited to, the following:

C.R. Bard Inc.
Page 2

## Adulteration/Misbranding Violations at the Tempe, AZ facility

1.  FDA has learned that your firm manufactures the Recovery Cone Removal System, Model RC-15 in the United States without marketing clearance or approval, in violation of the Act. Under section 201(h) of the Act, 21 U.S.C. § 321(h), this product is a device because it is intended for use in the diagnosis of disease or other conditions or in the cure, mitigation, treatment, or prevention of disease, or is intended to affect the structure or any function of the body. As explained below, this device is being marketed without the required clearance or approval.

    The Recovery Cone Removal System, Model RC-15 is adulterated under section 501(f)(1)(B) of the Act, 21 U.S.C. § 351(f)(1)(B), because you do not have an approved application for premarket approval (PMA) in effect pursuant to section 515(a) of the Act, 21 U.S.C. § 360e(a), or an approved application for an investigational device exemption (IDE) under section 520(g) of the Act, 21 U.S.C. § 360j(g). The Recovery Cone Removal System, Model RC-15 is also misbranded under section 502(o) the Act, 21 U.S.C. § 352(o), because you did not notify the agency of your intent to introduce the device into commercial distribution, as required by section 510(k) of the Act, 21 U.S.C. § 360(k).

    FDA reviewed labeling for the Recovery Cone Removal System, Model RC-15, which revealed that this device is intended to percutaneously remove the Recovery Filter, Recovery G2 Filter and the G2X Filter as indicated. FDA is aware that your firm submitted both in-vitro and in-vivo testing demonstrating the use of the Recovery Cone Removal System, Model RC-15 for removal of the Recovery Filter (K031328), the G2X Filter (K082305), the G2 Express Filter (K080668), and the G2 Filter (K073090). However, the Recovery Cone System, Model RC-15 was not included as part of the clearances for any of the aforementioned IVC filters. Therefore, your firm is marketing the Recovery Cone Removal System, Model RC-15 in the United States without marketing clearance or approval. Percutaneous retrieval systems, such as the Recovery Cone Removal System, Model RC-15, are regulated as manual surgical instruments intended for specialized use within a specific medical specialty, and thus require marketing authorization in order to be legally marketed in the United States.

Your firm has not submitted any correspondence to FDA regarding this violation to date.

2.  FDA has also learned that your firm manufactures the Recovery Cone Removal System, Model FBRC in the United States without marketing clearance or approval, in violation of the Act. Under section 201(h) of the Act, 21 U.S.C. § 321(h), this product is a device because it is intended for use in the diagnosis of disease or other conditions or in the cure, mitigation, treatment, or prevention of disease, or intended to affect the structure or any function of the body. As explained below, this device is being marketed without the required clearance or approval.

    The Recovery Cone Removal System, Model FBRC is adulterated under section 501(f)(1)(B) of the Act, 21 U.S.C. § 351(f)(1)(B), because you do not have an approved

application for premarket approval (PMA) in effect pursuant to section 515(a) of the Act, 21 U.S.C. § 360e(a), or an approved application for an investigational device exemption (IDE) under section 520(g) of the Act, 21 U.S.C. § 360j(g) for the device as described and marketed. The Recovery Cone Removal System, Model FBRC is also misbranded under section 502(o) the Act, 21 U.S.C. 352(o), because you introduced or delivered into interstate commerce for commercial distribution a device with major changes/modifications to the intended use without submitting a new premarket notification to the agency as required by section 510(k), 21 U.S.C. 360(k), and 21 C.F.R. 807.81(a)(3)(ii).

You have listed the Recovery Cone Removal System, Model FBRC as a class I surgical snare under 21 CFR 878.4800. Devices classified under 21 CFR 878.4800 (Surgical Instrument, Manual) are exempt from premarket notification, unless they exceed the limitations on exemptions at 21 CFR 878.9(a). However, there is evidence that the Recovery Cone Removal System, Model FBRC is intended for uses that are different from those of legally marketed devices under 21 CFR 878.4800 (Surgical Instrument, Manual). Devices of this type usually consist of a non-powered, hand-held, or hand-manipulated device that is either reusable or disposable, which are intended to be used in general surgical procedures. Manual surgical instruments intended for specialized uses within a specific medical specialty are classified under regulations separate from 21 CFR 878.4800, depending on the labeled specialized use of the device. However, your firm is marketing the Recovery Cone Removal System, Model FBRC for a specialized intended use, namely percutaneous removal of inferior vena cava filters, specifically your firm's G2X Filter, G2 Express Filter, and G2 Filter. The labeling for the Recovery Cone Removal System, Model FBRC also indicates that your product is intended to percutaneously remove a foreign body.

Based on the above, FDA believes that the Recovery Cone Removal System, Model FBRC is regulated as a percutaneous retrieval system, which is a manual surgical instrument intended for specialized use within a specific medical specialty, cardiovascular surgery. Because there is evidence that the Recovery Cone Removal System, Model FBRC is intended for uses that are different from those of legally marketed devices classified under 21 CFR 878.4800, it exceeds the limitations described in 21 C.F.R. 878.9(a) and is not exempt from premarket notification.

Your firm has not submitted any correspondence to the FDA regarding this violation to date. For a device requiring premarket approval, the notification required by section 510(k) of the Act, 21 U.S.C. § 360(k), is deemed satisfied when a PMA is pending before the agency. 21 C.F.R. 807.81(b). The kind of information you need to submit in order to obtain approval or clearance for your device is described on the Internet at http://www.fda.gov/cdrh/devadvice/3122.html. The FDA will evaluate the information you submit and decide whether your product may be legally marketed.

BPV-17-01-00204233

C.R. Bard Inc.
Page 4

FDA requests that Bard Peripheral Vascular immediately cease activities that result in the misbranding or adulteration of the Recovery Cone Removal System, Model RC-15 and the Recovery Cone Removal System, Model FBRC, such as the commercial distribution of the devices for the uses discussed above.

## Quality System Violations

The inspections also revealed that these devices are adulterated within the meaning of section 501(h) of the Act, 21 U.S.C. § 351(h), in that the methods used in, or the facilities or controls used for, their manufacture, packing, storage, or installation are not in conformity with the current good manufacturing practice requirements of the Quality System regulation found at Title 21, Code of Federal Regulations (CFR), Part 820.

The inspection of your Bard Peripheral Vascular Facility located at 1625 W. 3rd St., Tempe, AZ also revealed that the IVC Denali Filter Delivery System is misbranded under Section 502(t)(2) of the Act, 21 U.S.C. § 352(t)(2), in that your firm failed or refused to furnish material or information regarding the devices that is required by or under Section 519 of the Act, 21 U.S.C. § 360i, and 21 CFR Part 803 - Medical Device Reporting.

**Quality System Regulation Violations at the Tempe, AZ facility and Queensbury, NY facility**

3.  Failure to establish and maintain procedures for receiving, reviewing, and evaluating complaints as required by 21 CFR 820.198(a). Your current procedures governing complaint investigation activities at your facilities, CQA-STD-24 Standard for Product Complaint Handling Rev. 11 and CQA-STD-55, Standard for Complaint Investigation Process Rev. 01, MP9113, Complaint Investigation Activity Rev. 40, SOPQ0153100, BPV Complaint Handling System, Rev. 18, and SOPQ0700200, Complaint Investigation Procedures, Rev. 15 do not ensure product complaints are adequately evaluated. For example:

    a.  Your current procedures governing complaint investigation activities, CQA-STD-24 Standard for Product Complaint Handling Rev. 11, CQA-STD-55, Standard for Complaint Investigation Process Rev. 01, MP9113, Complaint Investigation Activity Rev. 40, SOPQ0153100, BPV Complaint Handling System, Rev. 18, and SOPQ0700200, Complaint Investigation Procedures, Rev. 15 do not include adequate instructions for ensuring that complaints involving a device or device component provided by a supplier are adequately evaluated for root cause of the alleged device failure and that appropriate corrective action is implemented with your suppliers.

    b.  Complaint 562535 for a G2 Filter, embolization of a detached filter arm with associated areas of hemorrhage and necrosis in the right lung was filed as a malfunction Medical Device Report [MDR] and should have been filed as a death. The following complaints were filed as malfunctions and should have been filed as serious injuries: Complaint 628924, Eclipse Filter, detached filter limb resulting in pericardial effusion and cardiac catheterization; 574429, G2 Express

BPV-17-01-00204234

C.R. Bard Inc.
Page 5

Filter, broken filter and surgical intervention; 602904, Denali Jugular System, detached filter arm embedded in IVC wall with filter retrieval; 443237, G2 Filter, detached filter limb in renal vein with IVC wall perforation and blood thinner treatment; 446809, G2 Express Filter, IVC perforation and aneurysm; 454485, G2 Filter, abdominal pain with filter legs protruding through IVC wall and percutaneous removal; 562566, G2 Filter, abdominal pain with filter legs perforating IVC wall, partial retrieval and residual filter leg fragment embedded in IVC wall.

c.  Complaints 507112, 507109, 507115, 507252, 507280, 507302, 507311 and 507325 report at least 10 patients who were exposed to scheduled retrieval surgical procedures to remove an IVC filter that were not successful. However, these complaint files do not document sufficient information to allow for adequate complaint investigation and disposition, including, but not limited to, MDR determination. For example, the complaints do not include information regarding prolonged or repeated surgery that may have occurred as a result of failed attempts to remove the filters, information regarding why the filters were scheduled to be removed and potential complications related to leaving them in the patient due to failed removal, and/or if any additional drugs or anesthetics had to be supplied to the patients.

We find that your responses dated December 17, 2014, January 15, 2015, February 18, 2015, March 16, 2015, April 17, 2015 and May 6, 2015 from Mr. Jason J. Gaede, Vice President Plant Operations, C.R. Bard Inc., Queensbury, NY and your responses dated January 26, 2015, February 26, 2015, March 26, 2015, April 24, 2015, and May 22, 2015, from Mr. Steve S. Williamson, President, Bard Peripheral Vascular, a Division of C.R. Bard, Tempe, AZ do not adequately address these deficiencies. For example, your January 26, 2015, response states that you made clerical errors and that you opened a CAPA to track training and determination of root cause with corrective and preventive actions. Your response is inadequate and does not assure that your complaint handling system reviews and evaluates complaints adequately. Additionally, the revised complaint procedures provided with your initial responses do not include adequate corrections to complaint investigation procedures with regards to the above stated deficiencies. Your follow-up responses do not address any corrections for complaint handling deficiencies. Your responses also state that all actions have been implemented with respect to the violation and that your firm considers your response to be complete.

**Quality System Regulation Violations at the Queensbury, NY facility**

4.  Failure to validate, with a high degree of assurance and approve according to established procedures, a manufacturing process that cannot be fully verified by subsequent inspection and testing, to ensure the process will continue to meet specifications as required by 21 CFR 820.75(a).

    a.  Specifically, IVC filter cleaning, to include removal of chemical processing contaminants, has not been validated for IVC Filters to include Simon Nitinol Filters, Eclipse Filters and Denali Filters. For example, production of Denali

BPV-17-01-00204235

C.R. Bard Inc.
Page 6

Filters requires the use of several processing agents, including, but not limited to the following: nitric acid, methanol, sulfamic acid solution, thermo quench salt, glycolic acid, citric acid, and/or hydrofluric acid. The cleaning processes for IVC filters are not validated or otherwise verified to demonstrate that the above substances are reduced to acceptable levels during routine processing under worst case conditions.    Therefore, your manufacturing process was not validated with a high degree of assurance and approved according to established procedures, nor were the process results fully verified by subsequent inspection and test, as 21 CFR 820.75(a) requires.

b.  Your firm's own Process Qualification (PQ) Final Report PRT10-064 Rev A., dated May 29, 2013, states that a 100% inspection plan is necessary for all failed predefined acceptance criteria during process validation.  In particular, the PQ Final Report defines process capability acceptance criteria for Denali Filter Part #RM5109000 dimensions of C, D, L, M, G, N, W, F, T, U and the radial force functional test to be a CpK greater than or equal to 1.33 as a requirement to validate the process.  Your process qualification failed to meet this predefined acceptance criteria for these filter dimensions and functional test.  Therefore, according to your own manufacturing process validation document, 100% inspection for verification of these specifications on each lot of product is required to mitigate your failed process validation.  However, your firm has not ensured 100% inspection of dimensions N, W, F, G and M, which lacked validation.    Your firm has also not conducted adequate subsequent process validation studies to eliminate this requirement.  As a result, your manufacturing process was not validated with a high degree of assurance and approved according to established procedures, nor were the process results fully verified by subsequent inspection and test, as 21 CFR 820.75(a) requires.

We find that your responses dated December 17, 2014, January 15, 2015, February 18, 2015, March 16, 2015, April 17, 2015, and May 6, 2015, are not adequate for the following reasons:

* With regard to your promised corrections for IVC filter cleaning lacking process validation, we find your response partially adequate. We acknowledge your firm's actions to date associated with the CAPA you opened in response to this observation, GF-CAPA-15-002. We acknowledge that you reviewed 510K submission data for the Denali Filters, conducted recent cytotoxicity testing for Denali Filters and revised your Process Validation procedure, SOP 820.100.6, Rev 43., to specifically include the requirement of validating cleaning processes for components or devices that undergo contact with processing agents.  We acknowledge your progress to date validating the cleaning processes for Denali Filters manufactured by both of your suppliers and Simon Nitinol Filters; however, this data will need further review during a follow-up inspection to verify adequacy of actions taken. We also acknowledge your performance of exhaustive extraction testing for the Denali Filters manufactured by one of your suppliers; however, the other supplier of these filters uses a different manufacturing process, processing agents, and equipment.  Because of these differences, we recommend that you perform exhaustive extraction testing for Denali Filters manufactured by this supplier to ensure no residuals are present on these devices.  Additionally, your firm has stated it is no longer manufacturing the Eclipse Filters as of 9/8/14; however, your firm has not indicated plans

BPV-17-01-00204236

C.R. Bard Inc.
Page 7

regarding the stored inventory of these devices and continues to market them in the United States. Your response to date does not indicate corrective action for these devices that may still be in inventory and/or may still be distributed.

• With regard to your promised corrections relating to process validation of your Denali Filter Part #RM5109000 dimensions of F, N, W, G and M, we find that your response is not adequate. Your Process Qualification (PQ) Final Report PRT10-064 Rev A., dated May 29, 2013, states that a 100% inspection plan is necessary for all failed predefined acceptance criteria during process validation. In particular, the PQ Final Report defines process capability acceptance criteria for Denali Filter Part #RM5109000 dimensions and/or functional tests of C, D, L, M, G, N, W, F, T, U and Radial Force to be a CpK greater than or equal to 1.33 as a requirement to validate the process. This predefined acceptance criterion was not met. Consequently, your firm conducted a retrospective analysis to change this original process validation criterion. You state your firm retrospectively analyzed data and determined that dimensions N and W may stay on AQL 0.65 limited inspections because the analysis demonstrated a 95/99.9% confidence level. However, your rationale for changing the original process validation acceptance criterion for dimensions N and W is not adequately supported.

Further, you have not been successful at validating the manufacturing process with respect to dimensions F, G and M, which failed predefined acceptance criteria. Your firm has not provided adequate data to support that these dimensions have been 100% inspected for every lot of product manufactured, as required by your firm's own manufacturing process validation document, PQ Final Report PRT10-064. And lastly, the corrective actions proposed as part of CAPA GF-CAPA-15-001 are in progress, and will need verification of implementation upon completion during a future inspection. For these reasons, your responses dated December 17, 2014, January 15, 2015, February 18, 2015, March 16, 2015, April 17, 2015, and May 6, 2015, are inadequate.

5. Failure to establish and maintain procedures for acceptance of incoming product and to inspect, test or otherwise verify incoming product as conforming to specified requirements as required by 21 CFR 820.80(b).

Specifically, based on your Process Qualification (PQ) Final Report PRT10-064 Rev A., dated May 29, 2013, process capability acceptance criteria of CpK greater than or equal to 1.33 for Denali Filter Part #RM5109000 dimensions C, D, L, M, G, N, W, F, T, U and the radial force functional test were not met. As a result, these dimensions and/or functional tests were to remain on a 100% inspection plan during manufacture at your supplier in order to be accepted into inventory. However, your firm accepted supplier lot numbers #33511-39, #33511-42, #33511-43, #33511-44, #33511-45, #33511-46, #33511-47, #33511-48, #33511-49, #33511-50, #33511-51, #33511-53, #33595-2A-20, #33595-2A-27, #33595-2A-29, #33595-2A-31, #33595-2A-30, #33595-2A-33, #33595-2A-35, #33595-2A-39, #33595-2A-40, #33595-4, and #33771-112 of Denali Filter Part #RM5109000, which your supplier inspected with an AQL 0.65 sampling plan for dimensions N, W, F, G, and M, rather than 100% inspection. Your firm also accepted

C.R. Bard Inc.
Page 8

supplier lot numbers #33771-129 and #34360-24 of Denali Filter Part #RM5109000, inspected by your supplier with an AQL 0.65 sampling plan for dimensions N and W, rather than 100% inspection. Your procedures for acceptance of incoming product, including Inspection Plan IP #1450935 Rev. 2., were not adequately established and maintained to verify that incoming product conformed to your specified requirements of 100% inspection plan for dimensions N, W, F, G, and M. As a result, you failed to inspect, test or otherwise verify incoming product as conforming to your specified acceptance requirements, as required by 21 CFR 820.80(b).

We find your responses dated December 17, 2014, January 15, 2015, February 18, 2015, March 16, 2015, April 17, 2015, and May 6, 2015, partially adequate. Your responses do not clarify whether acceptable corrective actions have been taken with the above stated lots of Denali Filter components that lacked 100% inspection of dimensions N, W, F, G, and M to ensure your specified acceptance requirements have been met for these accepted lots. Your response does not contain evidence that the above stated lots indicating an AQL 0.65 sampling plan for dimensions F, G and M were in fact inspected at 100% for F, G and M. Further, your response does not contain evidence that your supplier's AQL 0.65 sampling plan is an adequate inspection, test, or verification of incoming product for dimensions N and W. We acknowledge your firm has opened CAPA GF-CAPA-15-005 to address systemic corrections to this observation; however, outputs of this CAPA are still in progress and will need to be verified during an FDA inspection of your firm.

6. Failure to establish and maintain procedures to ensure that all purchased or otherwise received product and services conform to specified requirements, as required by 21 CFR 820.50. In particular, 21 CFR 820.50(a) requires that each manufacturer establish and maintain requirements, including quality requirements, that must be met by suppliers, contractors, and consultants.

Specifically, your Process Qualification (PQ) Final Report PRT10-064 Rev A., dated May 29, 2013, documented that process capabilities for filter dimensions C, D, L, M, G, N, W, F, T, U and the functional test radial force, as defined under section 7 Acceptance Criteria – Process Qualification of this report, were not met for all dimensions and functional tests. The PQ Final Report states that because the process capabilities were not met, these filter dimensions and functional test should remain on a 100% inspection plan at your supplier until such time that objective evidence indicates process capability has been demonstrated. However, your supplier failed to inspect the product on a 100% inspection plan for filter dimensions N, W, F, G and M, and process capability was not demonstrated through objective evidence. For example, from approximately May 11, 2013 to August 5, 2013, your supplier of Denali Filter Part #RM5109000 provided you with a Certificate of Compliance for supplier lot numbers #33511-39, #33511-42, #33511-43, #33511-44, #33511-45, #33511-46, #33511-47, #33511-48, #33511-49, #33511-50, #33511-51, #33511-53, #33595-2A-20, #33595-2A-27, #33595-2A-29, #33595-2A-31, #33595-2A-30, #33595-2A-33, #33595-2A-35, #33595-2A-39, #33595-

C.R. Bard Inc.
Page 9

2A-40, #33595-4, and #33771-112. These certificates documented the supplier did not conduct 100% inspection for filter dimensions N, W, F, G and M. Your firm did not begin to address the issue with your supplier until approximately August 5, 2013 during an audit of your supplier, which was after most of these 23 lots were accepted into your inventory and used in the manufacture of finished Denali IVC Filter devices.

In the PQ Final Report PRT10-064 Rev A., your firm establishes purchasing control procedures as required by 21 CFR 820.50(a). These procedures include continued 100% inspection by your supplier for process capabilities that were not met with regards to filter dimensions C, D, L. M, G, N, W, F, T, U and for process capabilities that were not met with respect to the functional test radial force. However, when filter dimensions N, W, F, G, and M failed your established process capabilities, your supplier did not conduct 100% inspection. By failing to maintain adequate supplier control procedures (i.e., by failing to ensure 100% inspection was conducted for failed process capabilities), your firm violated 21 CFR 820.50(a), which requires that manufacturers establish and maintain requirements that must be met by suppliers.

Additionally, when suppliers are placed on Limited Approved status, such as your supplier of the Denali Filter Part #RM5109000, Norman Noble Inc., you do not have adequate instructions in your supplier control procedures, including but not limited to CQA-STA-18 Supplier Performance Management Rev. 05, to re-evaluate suppliers to ensure that the supplier is better able to meet your specifications.

We find that your responses December 17, 2014, January 15, 2015, February 18, 2015, March 16, 2015, April 17, 2015, and May 6, 2015, appear adequate, but are still in progress and will need to be verified during an FDA inspection of your firm.

## MDR Violations at the Tempe, AZ facility

Our inspection of your Bard Peripheral Vascular facility located at 1625 W. 3rd St., Tempe, AZ also revealed that the Cardiovascular intravascular filter, (IVC Denali Filter Delivery System), is misbranded under Section 502(t)(2) of the Act, 21 U.S.C. § 352(t)(2), in that your firm failed or refused to furnish material or information regarding the devices that is required by or under Section 519 of the Act, 21 U.S.C. § 360i, and 21 CFR Part 803 - Medical Device Reporting. Significant deviations include, but are not limited to:

7. Failure to submit a report to FDA no later than 30 calendar days after the day that your firm received or otherwise became aware of information, from any source, that reasonably suggests that a device that your firm markets has malfunctioned and this device or a similar device that your firm markets would be likely to cause or contribute to a death or serious injury, if the malfunction were to recur, as required by 21 CFR 803.50(a)(2).

C.R. Bard Inc.
Page 10

For example, Complaint numbers 574292, 427438, 418704, and 416808 describe a malfunction of your firm's device, which is classified as a long term implant. Your firm did not rule out that the reported malfunctions would not be likely to cause or contribute to a death or serious injury, if it were to recur. Therefore, an MDR should have been submitted for each of the referenced complaints.

We reviewed your firm's responses received by the FDA, including the January 26, 2015, response, and conclude the response is not adequate. Your firm did not submit MDRs for the above referenced complaints and failed to justify why such malfunctions would not be likely to cause or contribute to a death or serious injury, if the malfunctions were to recur.

8. Failure to obtain and submit to the FDA information that is incomplete or missing from reports submitted by user facilities, importers, and other initial reporters; and if unable to submit complete information on a report, failure to provide a statement in your firm's report explaining why required information was incomplete and the steps taken by your firm to obtain the information, as required by 21 CFR 803.50(b)(2) and 21 CFR 803.50(b)(3).

Specifically, your firm submitted 15 MDRs to the FDA, which did not identify the patient's "Age at Time of Event" or "Date of Birth" in Blocks A2 and A4, respectively, of the FDA Form 3500A. In addition, your firm did not include an explanation of why the required information was not provided and the steps taken to obtain such information.

We reviewed your firm's responses received by the FDA, including the January 26, 2015, response, and conclude the response is not adequate. Although the FDA has received supplement reports for some of the MDRs, we have not received supplements for all.

The eMDR Final Rule requiring manufacturers and importers to submit electronic Medical Device Reports (eMDRs) to FDA was published on February 13, 2014. The requirements of this final rule will take effect on August 14, 2015. If your firm is not currently submitting reports electronically, we encourage you to visit the following web link for additional information about the electronic reporting requirements:

http://www.fda.gov/ForIndustry/FDAeSubmitter/ucm107903.htm

If your firm wishes to discuss MDR Reportability criteria or to schedule further communications, it may contact the Reportability Review Team by email at:

ReportabilityReviewTeam@fda.hhs.gov

Your firm should take prompt action to correct the violations addressed in this letter. Failure to promptly correct these violations may result in regulatory action being initiated by the FDA without further notice. These actions include, but are not limited to, seizure, injunction, and civil money penalties. Also, federal agencies may be advised of the issuance of Warning Letters about devices so that they may take this information into account when considering the award of contracts. Additionally, premarket approval applications for Class III devices to which the Quality

C.R. Bard Inc.
Page 12

Sincerely yours,

Alonza E. Cruse, Director
Los Angeles District

Cc:

Kevin J. Bovee
Director of Quality Assurance
C.R. Bard, Inc.
289 Bay Road
Queensbury, NY 12804

Jason J. Gaede
Vice President, Plant Operations
C.R. Bard, Inc.
289 Bay Road
Queensbury, NY 12804

Mark M. Walaska
Staff Vice President Manufacturing
Bard Peripheral Vascular, Inc.
1625 W. 3rd St.
Tempe, AZ 85281

Steve S. Williamson
President
Bard Peripheral Vascular, Inc.
1625 W. 3rd St.
Tempe, AZ 85281

Patricia Christian
Vice President, Quality, Regulatory and Medical Affairs
C.R. Bard, Inc.
730 Central Ave.
Murray Hill, NJ 07974

Gin Schulz
Vice President, Corporate Quality Assurance
C.R. Bard, Inc.
730 Central Ave.
Murray Hill, NJ 07974

BPV-17-01-00204241

C.R. Bard Inc.
Page 11

System regulation violations are reasonably related will not be approved until the violations have been corrected. Requests for Certificates to Foreign Governments will not be granted until the violations related to the subject devices have been corrected.

Please notify this office in writing within fifteen (15) business days from the date you receive this letter of the specific steps your firm has taken to correct the noted violations, as well as an explanation of how your firm plans to prevent these violations, or similar violations, from occurring again. Include documentation of the corrections and/or corrective actions (including any systemic corrective actions) that your firm has taken. If your firm's planned corrections and/or corrective actions will occur over time, please include a timetable for implementation of those activities. If corrections and/or corrective actions cannot be completed within fifteen (15) business days, state the reason for the delay and the time within which these activities will be completed. Your firm's response should be comprehensive and address all violations included in this Warning Letter.

Your written response should be sent to the Food and Drug Administration; Attention:

> Dr. Raymond W. Brullo
> Compliance Officer, Los Angeles District
> U. S. Food and Drug Administration
> 19701 Fairchild
> Irvine, CA 92612

A copy of your written response should also be sent to:

> LCDR Catherine M. Beer
> Compliance Officer
> U. S. Food and Drug Administration
> One Winners Circle, Suite 110
> Albany, NY 12205

If you have any questions about the content of this letter please contact: Dr. Raymond W. Brullo at (949) 608-2918.

Finally, you should know that this letter is not intended to be an all-inclusive list of the violations at your facility. It is your responsibility to ensure compliance with applicable laws and regulations administered by FDA. The specific violations noted in this letter and in the Form FDA 483, Inspectional Observations (FDA 483), issued at the close out of the inspection may be symptomatic of serious problems in your firm's manufacturing and quality management systems. You should investigate and determine the causes of the violations, and take prompt actions to correct the violations and to bring your products into compliance.

BPV-17-01-00204242

C.R. Bard Inc.
Page 13


bcc:

NYK-DO CB: (Beer/Alexander)
NYK-DO IB: (Frankovic/Terzian/Warner/Izyk)
CFSAN via CMS
HFI-35 (purged) via CMS
Legal file
CMS Case # 453127
EI file C.R. Bard, Queensbury NY (1313046)

LOS-DO DCB file
LOS-DO IB [M. Maxwell, S. Perkins, M. Saale – e-copies]
CMS Case # 453127 [issued version for CO redaction]
Legal File
Factory File
Chron [Brullo]

BPV-17-01-00204243