Ramon Rossi Lopez – rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California  92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
602-530-8000

*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC |
| SHERR-UNA BOOKER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>C.R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, an Arizona corporation,<br><br>Defendants. | **PLAINTIFF'S MOTION *IN LIMINE* #4 AND MEMORANDUM IN SUPPORT TO EXCLUDE EVIDENCE THAT IVC FILTERS ARE THE GOLD STANDARD OR STANDARD OF CARE TREATMENT**<br><br>(The Honorable David G. Campbell)<br><br>(Oral Argument Requested) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE THAT IVC FILTERS ARE THE GOLD STANDARD OR STANDARD OF CARE TREATMENT**

Plaintiff moves *in limine* for an Order precluding evidence and argument relating to any alleged reference to IVC filters as the gold standard treatment or standard of care for the treatment of pulmonary embolisms and/or deep vein thrombosis.

**MEMORANDUM OF LAW**

Plaintiff's claims involve Bard's G2 IVC blood filter. Based on prior witness questioning, Plaintiff anticipates that Bard may seek to introduce testimony or evidence that IVC filters are the "standard of care" or the "gold standard" for the treatment of

pulmonary embolisms (PE) or deep vein thrombosis (DVT), especially if the patient cannot be treated with anticoagulation medication. The relevant issues are whether Bard's design of the G2 filter was defective and whether Bard failed to provide adequate warnings regarding the risks and complications of the G2 filter. Even if IVC filters generally are the "gold standard" or "standard of care" for treatment with PE or DVT that alleged fact does not make it more or less likely that Bard designed the G2 filter properly or that its warnings were adequate.

Plaintiff further anticipates Bard will attempt to use these statements or testimony to unfairly prejudice Plaintiff and her experts who disagree with the use of those terms or the appropriate indications for IVC filters, generally. Plaintiff will be forced to respond, creating a mini-trial over an issue that is entirely irrelevant and highly prejudicial to the issues the jury must resolve. Fed. R. Evid. 402, 403. Additionally, to permit such testimony would: (1) allow Bard to supplant the legal standard of care with its own manufactured narrative of the "standard of care"; (2) place greater weight on the effectiveness of IVC filters, including Bard products, compared to other proven alternative medications, products or procedures; and (3) result in undue delay, confusion, and prejudice without adding probative value.  Fed. R. Evid. 403.  For these reasons, any of Bard's "gold standard" or "standard of care" evidence relating to the use of IVC filters should be excluded.

First, admission of such unsupported testimony would enable Bard to supplant its own "standard of care" for the applicable legal standard without the scrutiny of a *Daubert* analysis which is otherwise required for the admissibility of scientific evidence on the standard of care.  This testimony or argument will confuse the jury and will undermine the Court's responsibility to determine the applicable law and charges to the jury. Admission of such evidence creates a substantial risk that jurors will confuse Bard's assertion that its products represent a "gold standard" or "standard of care," with the actual legal standard of care which Bard was obligated to follow in regard to its products.

Such evidence will allow jury to make impermissible and unsupported legal conclusions based on an ambiguous and factually deficient terms touted by Bard to describe its filters.

In addition, Bard's "gold standard" narrative would result in greater weight being unduly accorded to the use and effectiveness of its IVC filters.  If jurors hear that products like the G2 Filter are similar to a "gold standard," they are likely to improperly place a greater weight upon the product's use and effectiveness. Such a term suggests that no alternative products or procedures existed to treat Ms. Booker's condition or potential condition, or that if there were alternatives that Bard's IVC filters were the safer and more effective choice.  Such insinuations are incorrect and misleading.

Further, admission of such testimony will inevitably lead to a "trial within a trial" to address and rebut issues including: the definition of "gold standard" as it relates to treatment for PE, DVT, and other conditions; whether all IVC filters are entitled to have that designation; which brands or manufacturers' products constitute the "gold standard"; when did Bard's filters became the "gold standard", if they did at all; and whether Bard or some other company's branding of its filters, as opposed to clinical experience, resulted in the product's designation as the "gold standard' treatment for PE, DVT, and other diagnoses. These "mini-trials" would be particularly wasteful, confusing to the jury, and prejudicial to the Plaintiff.  *Wilson v. Maricopa County*, 2007 WL 686726, at *12-13 (D. Ariz. Mar. 2, 2007) (finding that evidence that creates mini-trials leads to unnecessarily lengthy trials for parties and jury and is precluded under Fed. Rule Evid. 403). Considering the time limits assigned to Ms. Booker's trial, it would be especially unfair for Plaintiff to have to combat such assertions with the clock running.  In addition, the prejudicial impact of Bard's "gold standard" argument would be high, given the possibility that the jury would simply assume that the G2 Filter constituted the best treatment available for Ms. Booker's condition.

At the same time, as discussed above, evidence that IVC filters constitute the "gold standard" or "standard of care" has little to no probative value; it has nothing to do with whether the design of Bard's G2 filter was defective or its warnings were adequate

and also as evidenced by the ambiguous nature of the term.  Thus, the prejudicial impact far outweighs any probative value.

Based upon the foregoing, Plaintiff respectfully requests that Defendant be precluded from introducing evidence or arguing that IVC filters are the "gold standard" or the "standard of care" for treatment of patients.

RESPECTFULLY SUBMITTED this 26th day of January, 2018.

GALLAGHER & KENNEDY, P.A.

By: */s/* Mark S. O'Connor
　　Mark S. O'Connor
　　2575 East Camelback Road
　　Phoenix, Arizona  85016-9225

LOPEZ McHUGH LLP
　　Ramon Rossi Lopez (CA Bar No. 86361)
　　(admitted *pro hac vice*)
　　100 Bayview Circle, Suite 5600
　　Newport Beach, California 92660

*Co-Lead/Liaison Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of January, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/ Gay Mennuti*

4