Ramon Rossi Lopez – rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California  92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
602-530-8000

*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC |
| SHERR-UNA BOOKER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>C.R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, an Arizona corporation,<br><br>Defendants. | **PLAINTIFF'S MOTION *IN LIMINE* #12 AND MEMORANDUM IN SUPPORT TO EXCLUDE EVIDENCE OF DR. KANG'S SOCIAL MEDIA POSTS**<br><br>(The Honorable David G. Campbell)<br><br>(Oral Argument Requested) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF DR. KANG'S SOCIAL MEDIA POSTS**

Plaintiff moves *in limine* for an Order precluding evidence and argument related to: (1) Dr. Brandon Kang's Twitter and Facebook accounts and use of the terms "lasso," cowboy," "GTFO" (Get The Filter Out), "#filterout," "#IRad," and the cowboy emoji; and (2) comments, posts, photos, or videos that Dr. Kang posted on these accounts.  None of the posts, photos, videos, comments, emojis or hashtag terms are relevant to Plaintiff or Dr. Kang's treatment of Plaintiff years earlier, and would be highly and unfairly prejudicial to Plaintiff's case. Fed. R. Evid. 401, 402, 403.

Dr. Kang treated Plaintiff in July 2014, and he did not even join Twitter until March 2017. *See* Exhibit A, Deposition of Dr. Brandon Kang, July 15, 2017, 76:14-21. It is clear from defense counsel's questioning at Dr. Kang's deposition that Bard seeks to introduce this evidence in an attempt to paint Dr. Kang as a reckless cowboy who lassos filters and gets them out in a cavalier manner. *Id.* at 73-76; 111-112; 174-175. This evidence is neither timely nor probative of his treatment of Plaintiff.

Dr. Kang testified that he joined Twitter and began using these hashtag terms and the cowboy emoji after he attended a Society of Interventional Radiology meeting in Washington D.C. in March of 2017. *Id.* at 76. Dr. Kang became aware, during the meeting that many interventional radiologists were "tweeting" about cases and sharing case experiences, and he decided it was a good way to become involved with other interventional radiologists. *Id.* Dr. Kang did not personally come up with any of these hashtag terms or the idea of using the cowboy emoji. *Id.* at 75-76. Dr. Kang used the lighthearted cowboy emoji and the hashtag terms as a way to be included in the online sharing and attention to work in the interventional radiology arena. *Id.* at 159-160. He also referred to himself as a magician on Twitter when he used a microwave ablation to make kidney tumors "disappear." *Id.* at 160. He called this procedure a "magic trick." *Id*. Dr. Kang takes his career as an interventional radiologist seriously, and he testified that he is not a cowboy or a magician, he is an interventional radiologist. *Id.* There is no evidence that Dr. Kang posted any "tweets" about Plaintiff's case or condition, and he did not join Twitter until years after he treated her.

Evidence of Dr. Kang's post-treatment Twitter and Facebook posts is irrelevant to his care and treatment of Plaintiff, and admitting such evidence would be highly prejudicial and misleading to the jury. Fed. R. Evid. 401, 402, 403. The implication—based on events occurring and information gained three years after Dr. Kang last treated Plaintiff—would be that Dr. Kang is reckless and acted irresponsibly in attempting to retrieve the filter piece from Plaintiff's right ventricle. In reality, the evidence in this case is quite the opposite. Dr. Kang conferred with a cardiothoracic surgeon before deciding to attempt the removal of the filter piece from Plaintiff's right ventricle. *Id.* at 22-23. The surgeon and Dr. Kang, in consultation with Plaintiff, were in agreement that the percutaneous removal attempt was in the best interest of the patient. *Id.* Dr. Kang arranged for a cardiothoracic surgeon to be on standby while he was attempting the removal in case a cardio problem arose. *Id.* at 43. Dr. Kang stopped the attempted removal when it became clear that it was problematic to continue. *Id.* at 41-42. No physician or expert has expressed any opinion in this matter that Dr. Kang's treatment of Plaintiff was outside the standard of care. In fact, Bard's own expert, Dr. Sobieszczyk, testified that he was not expressing any opinion that Dr. Kang breached the standard of care in his treatment of Plaintiff. *See* Exhibit B, Deposition Testimony of Piotr Sobieszczyk, M.D., 45:6-46:18; 111:3-16.

Based on the foregoing, Plaintiff requests the Court enter an Order granting Plaintiff's motion and excluding evidence of Dr. Kang's social media posts under Federal Rules of Evidence 401, 402 and 403.

3

RESPECTFULLY SUBMITTED this 26th day of January, 2018.

          GALLAGHER & KENNEDY, P.A.

          By: */s/ Mark S. O'Connor*
              Mark S. O'Connor
              2575 East Camelback Road
              Phoenix, Arizona 85016-9225

          LOPEZ McHUGH LLP
              Ramon Rossi Lopez (CA Bar No. 86361)
              (admitted *pro hac vice*)
              100 Bayview Circle, Suite 5600
              Newport Beach, California 92660

          *Co-Lead/Liaison Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

          */s/ Gay Mennuti*