Ramon Rossi Lopez – rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California  92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
602-530-8000

*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC |
| SHERR-UNA BOOKER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>C.R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, an Arizona corporation,<br><br>Defendants. | **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* #3 TO EXCLUDE EVIDENCE OF FDA WARNING LETTER**<br><br>(The Honorable David G. Campbell)<br><br>(Oral Argument Requested) |

Bard's Motion *in Limine* No. 3 [Doc. 9864] ("Motion") seeking to exclude evidence of the FDA's July 13, 2015, warning letter to Bard ("Warning Letter") on the bases of relevance, undue prejudice and hearsay should be denied.

**A.     The Warning Letter is relevant.**

Bard's claim that the Warning Letter is a "red herring" is wrong.  First, and most importantly, Bard vigorously opposed Plaintiffs' efforts to exclude (*see* Plaintiffs' Motion *in Limine* No. 1 [Doc. 9529]) evidence of FDA clearance or activity related to Bard's IVC filters.  *See* Defendants' Response to Plaintiffs' Motion *in Limine* No. 1 [Doc. 9690].

Bard argued that "compliance with federal regulatory standards . . . is certainly probative under Georgia law on the issues of reasonableness of the design, manufacture, and warnings of the G2 Filter." *Id.* at 2. Based on Georgia law, the Court agreed with Bard. *See* Order Denying Motion in Limine No. 1 [Doc. 9881].

Given this posture, the Warning Letter is now an essential piece of evidence to rebut Bard's suggestion that the FDA took no action and expressed no concerns related to its IVC filters. If Bard can use FDA's clearance of its filter as a shield in support of its defenses, fair play requires that Plaintiffs be allowed to use the Warning Letter to rebut any suggestion that, once the FDA cleared the filters, it had no concerns about their performance. The FDA's finding that Bard failed in its reporting and handling of cases involving filter failure in patients is of particular relevance given the nature of Plaintiffs' claims concerning failure rates and comparative product performance.[1]

Bard's argument that the Warning Letter is irrelevant since it is not a "final agency determination" is equally flawed. The FDA's position is that:

> Warning Letters are issued only for violations of regulatory significance. Significant violations are those violations that may lead to enforcement action if not promptly and adequately corrected. A Warning Letter is the agency's principal means of achieving prompt voluntary compliance with the Federal Food, Drug, and Cosmetic Act (the Act).

FDA Regulatory Procedures Manual, Exhibit 1, at § 4-1-1. Warning letters are direct communications with device manufacturers designed to ensure compliance. The fact that Bard may have avoided further action does not render the FDA's findings of violations irrelevant or inadmissible, particularly when Bard is expected to open the door relating to FDA clearance and regulation of its devices. *See Sadler v. Advanced Bionics, Inc.*, 2013 WL 1311148 at *1-2 (W.D. Ky. 2013) (FDA warning letter relevant and admissible).

---

[1] This is true regardless of whether Dr. D'Ayala relied on MAUDE database information in electing to use the G2 filter for Ms. Booker.

**B.     The Warning Letter is not unduly prejudicial.**

Given Bard's arguments relating to Plaintiffs' *Cisson* motion, Bard can hardly be heard now to complain of undue prejudice from Plaintiffs introducing evidence of the Warning Letter in response to Bard's evidence concerning FDA clearance and regulation of its filters. Any prejudice due to evidentiary heft the jury places on a regulatory agency's determinations is invited by Bard. The same goes for Bard's contention that it would be required to spend an inordinate amount of time to place the Warning Letter in context. Motion at 3. Any time spent placing the Warning Letter "in proper context" pales in comparison to the amount of time Plaintiffs will spend placing other FDA actions, including clearance of the devices for market, "in proper context." Moreover, Bard's acknowledgment that it can put such evidence into context for the jury ameliorates any risk of undue prejudice. *See Sadler*, 2013 WL 1311148 at *1-2 ("[Defendant] will have ample opportunity to show that the statements in the documents are mere observations.").

**C.     The Warning Letter is a Public Record and Admissible.**

Under Rule 803(8), a public record such as the Warning Letter may be admitted as a hearsay exception as long as it "contains factual findings and satisfies [the] trustworthiness requirement." *Sabel,* 737 F.Supp. at 142.[2] Before it can issue a warning letter, the FDA considers whether (1) evidence shows that a product is in violation of law or regulations and failure to correct the violation may result in enforcement action; and (2) the violations are of regulatory significance. Exhibit 1 at § 4-1-3. These factors demonstrate that, while the FDA is not making a final determination when it issues a warning letter, it is providing (1) factual findings taken from an examination performed

---

[2] While district courts are divided on the issue, many have held that FDA warnings, like the Warning Letter, are admissible under the public records hearsay exception in Rule 803(8). *See Guthrie v. Ball*, 2014 WL 5314576 at *4 (E.D. Tenn. 2014); *Musgrave v. Breg, Inc.,* 2011 WL 4502032 at *6 (S.D. Ohio 2011)("These portions of the FDA bulletins fall within the hearsay exception defined by Rule 803(8) because they are statements directly from the FDA 'setting forth matters observed pursuant to duty imposed by law as to which matters there was a duty to report'") (quoting Rule 803(8)); *Sabel,* 737 F.Supp. at 135.

---
(2) in the course of its administrative role—both of which place the warning letters within the public records hearsay exception articulated in Rule 803(8). *See Sadler,* 2013 WL 1311148 at *1-2 (finding that FDA warning letter was within the Rule 803(8) hearsay exception; "FDA officials conducted the investigation themselves as a neutral party with motivations to protect public health and safety. Therefore, the Court finds these documents sufficiently reliable to be excepted from the hearsay rule").[3]

For these reasons, evidence concerning the Warning Letter is admissible.

RESPECTFULLY SUBMITTED this 2nd day of February, 2018.

GALLAGHER & KENNEDY, P.A.

By: */s/ Mark S. O'Connor*
Mark S. O'Connor
2575 East Camelback Road
Phoenix, Arizona 85016-9225

LOPEZ McHUGH LLP
Ramon Rossi Lopez (CA Bar No. 86361)
(admitted *pro hac vice*)
100 Bayview Circle, Suite 5600
Newport Beach, California 92660

*Co-Lead/Liaison Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of February, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/ Gay Mennuti*

---

[3] Some of the cases Bard cites in support of its claims of inadmissibility are distinguishable. For instance, in *Ortho-McNeil-Janssen Pharmaceuticals, Inc. v. State*, the decision in that case turned on divergent language in Arkansas' version of Rule 803 to exclude a DDMAC warning letter. 432 S.W.3d 563, 579-80 (Ark. 2014). Moreover, three justices joined in a dissenting opinion that noted it was "apparent" the warning letter fell "clearly within the public-records exception." *Id.* at 581.