# Exhibit A

```
                    UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF ARIZONA

                    _____

In Re: Bard IVC Filters              )  MD-15-02641-PHX-DGC
Products Liability Litigation        )
                                     )
                                     )  Phoenix, Arizona
                                     )  October 29, 2015
                                     )
_____)




           BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE

                  REPORTER'S TRANSCRIPT OF PROCEEDINGS

                        SCHEDULING CONFERENCE
```

Official Court Reporter:
Patricia Lyons, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Ste. 312
401 West Washington Street, SPC 41
Phoenix, Arizona  85003-2150
(602) 322-7257

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared with Computer-Aided Transcription

13:07:50  1   have been available to the plaintiffs and the company knew
          2   they made design trade offs in trying to make these devices
          3   retrievable that made them more dangerous and they never told
          4   anybody.  When I've taken multiple depositions a lot of the
13:08:06  5   arguments I get from witnesses, corporate witnesses, well, the
          6   Simon Nitinol filter had other failure modes that were worse
          7   than the devices you're dealing with.  That's one of the
          8   reasons we need these adverse events so we can verify those
          9   claims and test them.
13:08:24 10        In the San Diego case, I honestly don't recall
         11   whether I requested it, I think I did, Simon Nitinol complaint
         12   files.  But in that case, you know, the judge was really
         13   worried about balancing that specific case, the cost involved
         14   versus the amount of, you know, the value of that one
13:08:44 15   individual case.  Maybe Mr. Lerner recalls.
         16        THE COURT:  All right.  Let me get the defense
         17   response and then I have a question for you.
         18        MR. NORTH:  Certainly, Your Honor.  I would note,
         19   first of all, we have already provided all complaint files for
13:09:03 20   all of the devices except Simon Nitinol and Denali through
         21   February of this year.  And we are willing, ready willing and
         22   able to update those, of course, at any time and periodically,
         23   and provide the data from newer complaints.
         24        We will also agree, Your Honor, to do the Denali just
13:09:23 25   because it's simple to do.  It's almost a computer function to

13:13:05  1          MR. LOPEZ:  They're the same.
         2          THE COURT:  So when --
         3          MR. LOPEZ:  They're supposed to be the same.  Let's
         4  say that.
13:13:11 5          THE COURT:  When you get a complaint filed under
         6  Number 1 for the G2, what's different in the adverse event
         7  tracking system with respect --
         8          MR. LOPEZ:  That's one of the reasons we want both,
         9  because we don't know.  In other words, that's a human
13:13:26 10 interpretation of what to put in a database versus information
         11 that may be in the medical records or any source document.
         12 And, again, they're supposed to put it in the database and
         13 that's subject to whose ever in charge of putting that
         14 information in that database.
13:13:45 15         It's like when we track our cases, we have medical
         16 records and files that are the source documents and what gets
         17 put in our database is just a summary of that.  So they're
         18 called backup documents, source documents.  They've been
         19 called different things.
13:14:03 20         THE COURT:  Item Number 2, updated versions of Bard's
         21 adverse event tracking system.  Is your position --
         22         MR. NORTH:  I understand it's the same thing.
         23         THE COURT:  So your position on that, like on Number
         24 1, is that you are willing to update for all filters except
13:14:20 25 Simon Nitinol?

| | | |
|---|---|---|
| 13:14:22 | 1 | MR. NORTH:  Yes, Your Honor. |
| | 2 | THE COURT:  Okay. |
| | 3 | Item Number 3 is the plaintiffs asking for updates |
| | 4 | for previously searched custodians, and the defendants saying |
| 13:14:46 | 5 | that is essentially seeking a redo of all previously searched |
| | 6 | custodians.  Could you explain that, Mr. North, how an update |
| | 7 | in your view would be a redo. |
| | 8 | MR. NORTH:  I'm sorry, I did not hear, Your Honor. |
| | 9 | THE COURT:  How, in your view, is an update on |
| 13:15:04 | 10 | previously searched custodians a redo of the discovery of |
| | 11 | those custodians? |
| | 12 | MR. NORTH:  First of all, Your Honor, with the |
| | 13 | exception of Denali all of these filters were developed some |
| | 14 | time ago.  The review of the ESI or the ESI was collected and |
| 13:15:24 | 15 | searched and produced after the Recovery filter was developed |
| | 16 | and sold, after the G2 was developed and first sold, and more |
| | 17 | recently in a production in the Utah case -- I mean, I'm |
| | 18 | sorry, Nevada case, the plaintiffs named 20 more custodians, I |
| | 19 | believe, I have the number here somewhere, and ran search |
| 13:15:44 | 20 | terms that included Eclipse and Meridian.  The latest version. |
| | 21 | And those were only two years ago.  So most of this search has |
| | 22 | been done.  To go back and take 80 custodians, many of whom |
| | 23 | are no longer with the company, of course, and redo all of the |
| | 24 | searches that have been done seems to us to be a redo. |
| 13:16:05 | 25 | THE COURT:  Well, I assume by update it just means a |