**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC |
| _____ | |
| Sherr-Una Booker, an individual, | No. CV-16-00474-PHX-DGC |
|     Plaintiff, | |
| v. | |
| C. R. Bard, Inc., a New Jersey corporation; and Bard Peripheral Vascular, Inc., an Arizona corporation, | **ORDER** |
|     Defendants. | |

The parties have filed various motions in limine ("MIL") in advance of the Booker bellwether trial. This order will rule on some of those motions.

**A.    Defendants' MIL No. 4 (Photograph of Michael Randall).**

Plaintiffs wish to introduce a photograph of Michael Randall, Bard's G2 Platinum project leader, flipping off the camera. Plaintiffs contend that the photograph is relevant because it was included in an internal Bard Powerpoint on the G2 Platinum. Bard asserts that the photograph was included in the Powerpoint presentation as an internal joke. Plaintiffs admit that "we don't know to whom this gesture was directed" (Doc. 9911 at 3), but they argue that it nonetheless is relevant as an indication of Bard's cavalier corporate culture.

Because even Plaintiffs don't know to whom the gesture was directed, the Court cannot conclude that it is relevant to any claims or defenses in this case. And even if the photograph were to have some marginal relevancy, such relevancy is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Even Plaintiffs admit that "the middle finger picture is indeed inflammatory." The motion in limine (Doc. 9865) is **granted**. The photograph will not be admitted.

### B. Defendants' MIL No. 5 (Dr. Kinney's work for Bard).

Defendants seek to exclude evidence that Plaintiffs' expert witness, Dr. Thomas Kinney, was an expert witness for Bard in two prior IVC filter cases and was a paid consultant to Bard for several years. Doc. 9868. Plaintiffs argue that this prior work is relevant because it "provides context for his opinions and his motivation to become an expert witness for the Plaintiffs," shows Bard's "lack of transparency with doctors and consultants, and the seriousness of the problems with its IVC filters," and shows a "corporate culture within Bard that disregarded concerns of consultants and patient safety." Doc. 9914 at 2-3.

The Court is not persuaded by Plaintiffs' arguments. In opposing Defendants' motion to disqualify Dr. Kinney on the basis of his prior work for Bard, Plaintiffs argued vigorously that the prior work had nothing to do with this lawsuit. Plaintiffs asserted that "[n]one of [Dr. Kinney's consulting] work related to the issues discussed, subject matter, or bases of the opinions rendered in his report in this MDL." Doc. 5803 at 6, n.2. Plaintiffs argued that his work for Bard from 2005 to 2008 had "absolutely nothing to do with the issues and causes of action in this MDL." *Id.* at 9. And they claimed that his work as an expert witness for Bard did not "even remotely relate[] to the issues and subject matter of Dr. Kinney's expert report in this MDL." *Id.* at 3. Given these strenuous assertions, the Court cannot accept Plaintiffs current argument that Dr. Kinney's work for Bard provides "context for his opinions," shows "a lack of transparency" with respect to the issues in this case, or shows a corporate culture of

disregard for patient safety. Doc. 9914 at 2-3. By Plaintiffs' own declaration, his prior work for Bard is simply not relevant to the issues in this case. The Court will **grant** Defendants' motion in limine. Doc. 9868. Plaintiffs may not question Dr. Kinney about his prior work for Bard, and should instruct him not to mention it in his testimony. If Plaintiffs believe Defendants make the prior work relevant by the nature of their cross examination at trial, they can raise that issue with the Court outside the hearing of the jury.

### C. Plaintiffs' MIL No. 2 (benevolent activities).

Plaintiffs seek to exclude evidence and argument relating to (1) any alleged benevolent activities such as charitable acts or services Bard provides to patients or society, (2) Bard's "good character" in general, and (3) the quality and intent of its workforce as a whole. Doc. 9866. In response, Defendants state that they will not present evidence that they "engaged in benevolent activities such as providing scholarships or making charitable contributions." Doc. 10053 at 1 n.1. Defendants do intend, however, to present evidence regarding the nature, quality, and usefulness of their products, the conscientiousness of their employees, references to their mission statement, and the fact that their products are designed to promote health and save lives. *Id.* at 2-3. Defendants assert that such evidence is relevant background information and is also necessary to rebut Plaintiffs' punitive damages claim that Defendants acted in a willful, malicious, and reckless manner.

The Court concludes that some evidence regarding the nature of Defendants' business is relevant to the jury's understanding of the issues in this case. The Court also concludes that Defendants' must be permitted to rebut Plaintiffs' themes, stated repeatedly throughout briefing on the expert motions, that Defendants knowingly disregarded patient safety, used patients for experimentation, and placed profits over safety.

Countering Plaintiffs' punitive damages arguments does not mean, however, that Defendants can present irrelevant evidence or try this case on the basis of corporate character. *See* Fed. R. Evid. 404(a). The Court will draw appropriate lines on the basis of objections made during trial. Plaintiffs' motion in limine (Doc. 9866) is **denied**.

### D. Plaintiffs' MIL No. 5 (evidence not produced in complaint files).

Plaintiffs ask the Court to exclude evidence and argument relating to failure rates, complication rates, percentages, or comparative analysis of any injuries that were not produced to Plaintiffs during discovery. Doc. 9870. Defendants assert that all such information was produced. Doc. 10060. Plaintiffs' motion in limine (Doc. 9870) is **denied as moot**. If Plaintiffs believe Defendants are using undisclosed evidence at any time during trial, they may object.

### E. Plaintiffs' MIL No. 7 (prior judicial opinions).

Plaintiffs seek to exclude evidence and argument relating to prior judicial opinions about Plaintiffs' experts, including the number of times their testimony has been precluded in other cases. Doc. 9872. Defendants state that they do not intend to mention such evidence during opening statements, but it may become relevant during trial. The Court concludes that the rulings of other judges in other cases addressing other claims are not relevant to this case, and will **grant** the motion in limine. Doc. 9872. If Defendants believe such rulings become relevant in light of an expert's testimony, they may raise the issue with the Court outside the hearing of the jury.

### F. Plaintiffs' MIL No. 8 (adverse impact of a plaintiff's verdict).

Plaintiffs assert that Defendants must be precluded from arguing at trial that a verdict against them will have an adverse impact on the medical community, future medical device research or costs, and the availability of medical care. Doc. 9873. Plaintiffs also argue that Defendants must be precluded from mentioning tort reform or any perceived "litigation crisis." *Id.* Defendants state that they do not intend to mention such matters during opening statements, but they may become relevant during trial. The Court concludes that the matters identified in Plaintiffs' motion are not relevant to this

case, and will **grant** the motion in limine. Doc. 9873. If Defendants believe such matters become relevant during trial, they may raise the issue with the Court outside the hearing of the jury.

### G. Plaintiffs' MIL No. 11 (informed consent form).

Plaintiffs seek to exclude evidence and argument relating to the "Permission For Operation And/Or Procedure" form Ms. Booker signed prior to insertion of her IVC filter. Doc. 9876. Plaintiffs argue that the form is not specific to IVC filters or Bard filters, and therefore is irrelevant and likely to confuse the jury. *Id.*

Defendants state that they have "no intention of arguing that the Consent Form warned the Plaintiff about the potential risks of the G2® Filter." Doc. 10061 at 2. But Defendants argue that the consent form "is still relevant and material to establish that the Plaintiff and her implanting physician, Marcus D'Ayala, M.D. . . . discussed a course of treatment that included implanting a G2® Filter, and that the Plaintiff agreed to this course of treatment." *Id.*

Plaintiffs' failure to warn claim alleges that Bard "knew or reasonably should have known that the users of Bard IVC Filters, including Plaintiffs, would not realize or discover on their own the dangers presented by Bard IVC Filters." Doc. 364, ¶ 213. The complaint further alleges that "Bard breached [its] duties by failing to provide adequate warnings to Plaintiffs communicating the information and dangers described above and/or providing instruction for safe use of Bard IVC Filters." *Id.*, ¶ 216. Georgia law, which will apply in Ms. Booker's case, includes the "learned intermediary" doctrine. Under this doctrine, a medical device manufacturer has no "duty to warn the patient of the dangers involved with the product, but instead has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and manufacturer." *McCombs v. Synthes (U.S.A.)*, 587 S.E.2d 594, 595 (Ga. 2003) (citing *Ellis v. C. R. Bard, Inc.*, 311 F.3d 1272, 1279-80 (11th Cir. 2002)). Thus, what Dr. D'Ayala knew about the risks of IVC filters, and what he told Ms. Booker, are relevant to the failure to warn claim.

The consent form signed by Ms. Booker states that Dr. D'Ayala "has fully explained to me the nature and purpose of the operation/procedure and has also informed me of expected benefits and complications, attendant discomforts and risks that may arise, as well as possible alternatives to the proposed treatment[.]" Doc. 9876-2, ¶ 2. This document is plainly relevant to Plaintiffs' failure to warn claim. The arguments made in Plaintiffs' motion – that the form is not specific to IVC filters or Bard filters, and therefore does not show what Ms. Booker knew about risks of Bard filters – can be made to the jury. The Court does not find that the jury will be confused by admission of the form, assuming it satisfies other evidentiary rules. Plaintiffs' motion in limine (Doc. 9876) is **denied**.

### H. Plaintiffs' MIL No. 12 (Dr. Kang's social media posts).

Plaintiffs seek to exclude evidence and argument related to Dr. Brandon Kang's Twitter and Facebook accounts and his use of the terms "lasso," cowboy," "GTFO" (Get The Filter Out), "#filterout," "#IRad," and a cowboy emoji, as well as comments, posts, photos, or videos that Dr. Kang posted on his social media accounts. Doc. 9877. Plaintiffs assert that the posts were not made until 2017, years after Dr. Kang's treatment of Ms. Booker, and are irrelevant and unfairly prejudicial. *Id.*

Defendants argue that Dr. Kang's social media posts "reflect his approach and attitude about filter removal." Doc. 10063 at 2. Defendants argue that "[a] disputed issue in this case is whether Dr. Kang's failed retrieval attempt, which admittedly damaged Ms. Booker's tricuspid valve, was unduly aggressive. Plaintiffs claim Dr. Kang acted appropriately. Bard, however, will present expert and other evidence that Dr. Kang should have followed a more conservative approach." *Id.*

Although Dr. Kang's attempt to retrieve Ms. Booker's filter is plainly relevant to whether Defendants or Dr. Kang caused some of her injuries, the Court cannot conclude that his subsequent social media posts – which were not about Ms. Booker's case and which were made approximately three years after the attempted removal – are relevant. Even if it could be argued that they reflect Dr. Kang's reckless character, the Court

concludes that such marginally probative character evidence would not be admissible under Rule 403. Any relevancy would be substantially outweighed by the danger of unfair prejudice. The Court will **grant** Plaintiffs' motion in limine. Doc. 9877.

**I.    Plaintiffs MIL No. 14 (personal traits of employees and witnesses).**

Plaintiffs seek to exclude argument or evidence relating to the religion, religious beliefs, religious activities, church membership, church affiliation, socioeconomic status, marital status, parental relationships, family health status, and children of Defendants' current and former employees and other witnesses." Doc. 9879. Plaintiffs contend that Defendants may seek to elicit such information to cause jury sympathy. *Id.*

Defendants agree that "*no party* should elicit information from any witness regarding their religion, religious beliefs, religious activities, church membership or affiliation." Doc. 10064 at 2 (emphasis added). Defendants argue, however, that some background information will be needed to introduce witnesses to the jury and to help them become comfortable in the courtroom. Defendants also note that at least one of its witnesses has a heavy foreign accent, and a brief explanation may be needed for the jury.

The Court agrees that neither side should elicit evidence barred by Rule 610 ("Evidence of a witness's religious beliefs or opinions is not admissible to attach or support the witness's credibility."). Some background information will be necessary to introduce witnesses to the jury, but questions designed to prompt sympathy or empathy are not proper. The Court will rule on objections during trial. In light of this general guidance, the Court will **deny** Plaintiffs' motion in limine as moot. Doc. 9879.

Dated this 15th day of February, 2018.

_____
David G. Campbell
United States District Judge