**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC<br><br>**ORDER** |

This multidistrict litigation proceeding ("MDL") involves thousands of personal injury cases related to inferior vena cava ("IVC") filters manufactured and marketed by Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard"). Plaintiffs have filed a motion to exclude the opinions of Drs. Clement Grassi and Christopher Morris (collectively, the "Doctors"). Doc. 7324. The motion is fully briefed, and the parties agree that oral argument is not needed. The Court will deny the motion.

**I.  Background.**

The IVC is a large vein that returns blood to the heart from the lower body. IVC filters are small metal devices implanted in the IVC to catch blood clots before they reach the heart and lungs. This MDL involves seven different versions of Bard filters – the Recovery, G2, G2 Express, G2X, Eclipse, Meridian, and Denali.

Each Plaintiff in this MDL was implanted with a Bard filter and claims it is defective and has caused serious injury or death. Plaintiffs, among other things, allege that Bard filters are more dangerous than other IVC filters because they have a higher risk of tilting, perforating the IVC, or fracturing and migrating to vital organs. Plaintiffs

assert a host of state law claims, including manufacturing and design defects, failure to warn, breach of warranty, and consumer fraud and unfair trade practices. Doc. 303-1. Bard disputes Plaintiffs' allegations, contending that Bard filters are safe and effective and that the medical community is aware of the risks associated with IVC filters.

The Doctors are interventional radiologists whom Defendants have identified as expert witnesses on various issues related to Bard filters. Plaintiffs do not dispute that the Doctors have expertise in the field of interventional radiology. Rather, Plaintiffs seek to exclude certain opinions purportedly based on (1) the criminal law standard of certainty, and (2) speculation and anecdotal personal experience. Doc. 7324.

## II. Legal Standard.

Under Rule 702, a qualified expert may testify on the basis of "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "the witness has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). An expert may be qualified to testify based on his or her "knowledge, skill, experience, training, or education." *Id.*

The proponent of expert testimony has the burden of showing that the expert is qualified and the proposed testimony is admissible under Rule 702. *See Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). The trial court acts as a gatekeeper to assure that expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

## III. Discussion.

### A. Opinions Based on a High Level of Certainty.

Plaintiffs seek to exclude Dr. Morris's testimony that he "reached a high level of certainty in his opinions" which means "more than 90 percent." Doc. 7324 at 3-4 (citing Doc. 7324-2 at 18-21). Plaintiffs similarly object to Dr. Grassi's testimony that in forming his opinions he looks for evidence that makes him feel "certain beyond any reasonable doubt." *Id.* at 5 (citing Doc. 7324-2 at 44). This testimony should be

excluded, Plaintiffs contend, because *Daubert* does not require scientific testimony to be known to a certainty. *Id.* at 7-8; Doc. 8209 at 3. But *Daubert* addressed the threshold reliability requirements for admissibility under Rule 702, noting that although certainty is not required, expert testimony must be based on "more than subjective belief or unsupported speculation." 509 U.S. at 590. *Daubert* says nothing about the exclusion of testimony where the expert is certain of his opinions.

Defendants note, correctly, that the essence of Plaintiffs' objection seems to be that the Doctors are *too* certain of their opinions. Doc. 7797 at 2. Plaintiffs explain in their reply that the problem is not that the Doctors hold their opinions to a high degree of certainty, but that they "applied the heightened standard *in forming their opinions*." Doc. 8209 at 3 (emphasis in original). Plaintiffs assert that the Doctors' testimony will confuse and mislead the jury and prejudice Plaintiffs by requiring them to prove their case to a higher level of certainty than the law requires. *Id.* But the Court, not the Doctors or any other witnesses, will instruct the jury on the law, and the instructions given will include the appropriate burdens of proof in a civil case. *See* Doc. 9433 at 15.

The Court will not exclude testimony regarding the Doctors' certainty of their opinions. If Plaintiffs believe the Doctors are attempting to instruct the jury on legal standards, they may object. If Plaintiffs believe a clarifying jury instruction is needed, they may propose one.

**B.     Opinions Based on "Speculation" and Anecdotal Personal Experience.**

Plaintiffs contend that Dr. Morris admitted that his opinion regarding asymptomatic limb fractures is mere "speculation." Doc. 7324 at 11 (citing Doc. 7324-2 at 24-25). Defendants respond that Plaintiffs take Dr. Morris's testimony out of context, and that he found Plaintiffs' hypothetical to be speculative, not his own opinion. Doc. 7797 at 13-15. Plaintiffs do not address this issue in their reply.

The Court cannot conclude from the deposition testimony that Dr. Morris conceded that his opinion was mere speculation. Plaintiffs may cross examine him on this point at trial.

Plaintiffs object to Dr. Grassi's statement that "[in his] own experience, [he has] not encountered unexpectedly high complication rates with Bard filter devices." Doc. 7324 at 12; *see* Doc. 7798-1 at 2. Plaintiffs note that the statement is anecdotal and based on Dr. Grassi's personal experience, but do not explain why this renders the statement inadmissible. Dr. Grassi may rely on his own clinical experience in stating his opinions, just as Plaintiffs' experts are allowed to do. *See McClellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092 (D. Or. 2010); *Primiano v. Cook*, 598 F.3d 558, 566 (9th Cir. 2010). Testimony about a doctor's own clinical experiences is not based on mere speculation. Plaintiffs may cross examine Dr. Grassi about the basis for his statement and the number of patients with Bard filters he has encountered, but Plaintiffs have identified no basis for excluding the statement under Rule 702.

**IT IS ORDERED** that Plaintiffs' motion to exclude defense expert opinions based on their use of the criminal law standard of certainty (Doc. 7324) is **denied**.

Dated this 21st day of February, 2018.

_____
David G. Campbell
United States District Judge