1 | Ramon Rossi Lopez (admitted *pro hac vice*)
2 | (CA Bar No. 86361)
  | LOPEZ McHUGH LLP
3 | 100 Bayview Circle, Suite 5600
  | Newport Beach, California 92660
4 | rlopez@lopezmchugh.com

5 | Mark S. O'Connor (011029)
  | GALLAGHER & KENNEDY, P.A.
6 | 2575 East Camelback Road
  | Phoenix, Arizona 85016-9225
7 | Telephone: (602) 530-8000
  | mark.oconnor@gknet.com

8 | *Attorneys for Plaintiffs*

9 | Richard B. North, Jr. (admitted *pro hac vice*)
10 | Georgia Bar No. 545599
  | Matthew B. Lerner (admitted *pro hac vice*)
11 | Georgia Bar No. 446986
  | NELSON MULLINS RILEY &
12 |     SCARBOROUGH LLP
  | 201 17th Street, NW / Suite 1700
13 | Atlanta, GA  30363
  | Telephone: (404) 322-6000
14 | Telephone: (602) 382-6000
  | richard.north@nelsonmullins.com
15 | matthew.lerner@nelsonmullins.com

16 | *Attorneys for Defendants C. R. Bard, Inc. and*
  | *Bard Peripheral Vascular, Inc.*
17 |

18 | UNITED STATES DISTRICT COURT

19 | DISTRICT OF ARIZONA

20 |
21 | In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC

22 | SHERR-UNA BOOKER, an individual, | **JOINT LIST OF PROPOSED JURY INSTRUCTIONS**

23 | Plaintiff,

24 | v.

25 | C.R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL
26 | VASCULAR, INC., an Arizona corporation,
27 |
  | Defendants.
28 |

1    Plaintiff Sherr-Una Booker and Defendants C. R. Bard, Inc. and Bard Peripheral

2    Vascular, Inc., through their respective counsel, hereby submit the joint proposed

3    attachments, Sections I, II(a), II(b), III and IV as directed.  The parties have made every

4    effort to include all applicable Jury Instructions and Objections to the proposed jury

5    instructions in this pleading.  However, the parties respectfully request the Court to give

6    them latitude to make adjustments to the proposed jury instructions and objections after

7    the Court rules on pending Motions *In Limine* and after the evidence is concluded in the

8    trial. The parties also note that the instructions are not always in the order in which the

9    parties anticipate that they will be made.

**SECTION I.**

**NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR DISTRICT COURTS OF THE NINTH CIRCUIT (2017)**

PL    § 1.2    Duty of Jury (Court Reads and Provides Written Set of Instructions at the Beginning of Trial)

DF    §1.2 or 1.3    Duty of Jury (*Defendant defers to the Court's preference*)

ST    § 1.4    Duty of Jury (Court Reads and Provides Written Instructions at End of Case) (*Plaintiff requests that the Court provide jurors with written instructions before the charge) (Defendants request that § 1.4 be given in the form that the Court prefers*)

ST    § 1.5    Claims and Defenses (*The parties agree to the use of the language provided in the jury questionnaire*)

ST    § 1.6    Burden of Proof—Preponderance of the Evidence

ST    § 1.9    What is Evidence

ST    § 1.10    What is Not Evidence

ST    § 1.11    Evidence for Limited Purpose

ST    § 1.12    Direct and Circumstantial Evidence

ST    § 1.13    Ruling on Objections

ST    § 1.14    Credibility of Witnesses

ST    § 1.15    Conduct of the Jury

ST    § 1.16    Publicity During Trial

ST    § 1.17    No Transcript Available to Jury

ST    § 1.18    Taking Notes

PL    § 1.19    Questions to Witnesses by Jurors (*Defendants would like to discuss this with the Court at the Pretrial Conference because of the time limits on the presentation of the case*)

ST    § 1.20    Bench Conferences and Recesses

ST    § 1.21    Outline of Trial

ST    § 2.2    Stipulations of Fact

ST    § 2.4    Deposition in Lieu of Live Testimony

ST    § 2.9    Impeachment Evidence—Witness

ST    § 2.11    Use of Interrogatories (*The parties agree that this charge should include the Plaintiff's sworn amended Fact Sheet served January 25,*

3

*2018 and Defendants' Fact Sheet)*

| ST | § 2.12 | Use of Requests for Admission |
| ST | § 2.13 | Expert Opinion |
| ST | § 2.14 | Charts and Summaries Not Received in Evidence |
| ST | § 2.15 | Charts and Summaries in Evidence |
| ST | § 2.16 | Evidence In Electronic Format |
| ST | § 3.1 | Duty to Deliberate |
| ST | § 3.2 | Consideration of Evidence—Conduct of the Jury |
| ST | § 3.3 | Communication with Court |
| ST | § 3.4 | Readback or Playback |
| ST | § 3.5 | Return of Verdict |
| ST | § 4.1 | Corporations and Partnerships—Fair Treatment |
| ST | § 4.2 | Liability of Corporations—Scope of Authority Not in Issue |

1
2

## 1.2 DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT THE BEGINNING OF TRIAL)

3

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

4

5

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

6
7
8

9

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

10
11
12

13

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 1.3 DUTY OF JURY (COURT READS INSTRUCTIONS AT THE BEGINNING OF TRIAL BUT DOES NOT PROVIDE WRITTEN COPIES)

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

## 1.4 DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE)

*(Plaintiff requests that the Court provide jurors with written instructions before the charge) (Defendants request that § 1.4 be given in the form that the Court prefers)*

Members of the Jury: Now that you have heard all of the evidence [and the arguments of the attorneys], it is my duty to instruct you on the law that applies to this case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]

*or*

[A copy of these instructions will be sent to the jury room for you to consult during your deliberations.]

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

7

## 1.5 CLAIMS AND DEFENSES

*(The parties agree to the use of the language provided in the jury questionnaire)*

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff asserts that [plaintiff's claims]. The plaintiff has the burden of proving these claims.

The defendant denies those claims [and also contends that [defendant's counterclaims and/or affirmative defenses]]. [The defendant has the burden of proof on these [counterclaims and/or affirmative defenses.]]

[The plaintiff denies [defendant's counterclaims and/or affirmative defenses].]

### 1.6 BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim [or affirmative defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**1.9 WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits that are admitted into evidence;

3.    any facts to which the lawyers have agreed; and

4.    any facts that I [may instruct] [have instructed] you to accept as proved.

## 1.10 WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)    Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered. In addition some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)    Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

# 1.11 EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [describe purpose] and not for any other purpose.]

## 1.12 DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## 1.13 RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

14

## 1.14 CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)   the opportunity and ability of the witness to see or hear or know the things testified to;

(2)   the witness's memory;

(3)   the witness's manner while testifying;

(4)   the witness's interest in the outcome of the case, if any;

(5)   the witness's bias or prejudice, if any;

(6)   whether other evidence contradicted the witness's testimony;

(7)   the reasonableness of the witness's testimony in light of all the evidence; and

(8)   any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

## 1.15 CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it[,although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

17

## 1.16 PUBLICITY DURING TRIAL

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

## 1.17 NO TRANSCRIPT AVAILABLE TO JURY

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

# 1.18 TAKING NOTES

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

## 1.19 QUESTIONS TO WITNESSES BY JURORS

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness. You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness. If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question on a form provided by the court. Do not sign the question. I will review the question with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror. This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case. If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons. Do not give undue weight to questions you or other jurors propose. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so. It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

### PROCEDURES

In the event the judge allows jurors to submit questions for witnesses, the judge may consider may consider taking the following precautions and using the following procedures:

1.  The preliminary instructions should describe the court's policy on juror-submitted questions, including an explanation of why some questions may not be asked. All juror-submitted questions should be retained by the clerk as part of the court record whether or not the questions are asked.

2.  At the conclusion of each witness's testimony, if a juror has a written question it is brought to the judge.

3.  Outside the presence of the jury, counsel are given the opportunity to make objections to the question or to suggest modifications to the question, by passing the written question between counsel and the court during a side-bar conference or by excusing jurors to the jury room.

4.  Counsel or the judge asks the question of the witness.

5.      Counsel are permitted to ask appropriate follow-up questions.

6.      The written questions are made part of the record.

## 1.20 BENCH CONFERENCES AND RECESSES

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess. Please understand that while you [are] [were] waiting, we [are] [were] working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum. I [may] [did] not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**1.21 OUTLINE OF TRIAL**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

1

## 2.2 STIPULATIONS OF FACT

2

3
The parties have agreed to certain facts [to be placed in evidence as Exhibit ___] [that will be read to you]. You must therefore treat these facts as having been proved.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 2.4 DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. [When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.]

The deposition of [name of witness] was taken on [date]. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

## 2.9 IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness [e.g., has been convicted of a crime, lied under oath on a prior occasion, etc.] may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

## 2.11 USE OF INTERROGATORIES

*[The parties agree that this charge should include the plaintiff's sworn amended Fact Sheet served on January 25, 2018 and Defendant's Fact Sheet.]*

Evidence [will now be] [was] presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

## 2.12 USE OF REQUESTS FOR ADMISSION

Evidence [will now be] [was] presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 2.13 EXPERT OPINION

You [have heard] [are about to hear] testimony from [name] who [testified] [will testify] to opinions and the reasons for [his] [her] opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**2.14 CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not admitted into evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

## 2.15 CHARTS AND SUMMARIES RECEIVED IN EVIDENCE

Certain charts and summaries [may be] [have been] admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

# 2.16 EVIDENCE IN ELECTRONIC FORMAT

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the [clerk] [bailiff].) If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with [the clerk] [the bailiff] present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.1 DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## 3.2 CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

## 3.3 COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

## 3.4 READBACK OR PLAYBACK

### Comment

If during jury deliberations a request is made by the jury or by one or more jurors for a readback of a portion or all of a witness's testimony, and the court in exercising its discretion determines after consultation with the lawyers that a readback should be allowed, the Committee recommends the following admonition be given in open court with both sides present:

> Because a request has been made for a [readback] [playback] of the testimony of [witness's name] it is being provided to you, but you are cautioned that all [readbacks] [playbacks] run the risk of distorting the trial because of overemphasis of one portion of the testimony. [Therefore, you will be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible.] [Because of the length of the testimony of this witness, excerpts will be [read] [played].] The [readback] [playback] could contain errors. The [readback] [playback] cannot reflect matters of demeanor [, tone of voice,] and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony [read] [played] cannot be considered in isolation, but must be considered in the context of all the evidence presented.

Although a court has broad discretion to read back excerpts or the entire testimony of a witness when requested by a deliberating jury, precautionary steps should be taken. Absent the parties' stipulation to a different procedure, the jury should be required to hear the readback in open court, with counsel for both sides present, and after giving the admonition set out above. *See United States v. Newhoff*, 627 F.3d 1163, 1167 (9th Cir. 2010); *see also* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.1.C (2013).

**3.5 RETURN OF VERDICT**

A verdict form has been prepared for you. [*Explain verdict form as needed.*] After you have reached unanimous agreement on a verdict, your [presiding juror] [foreperson] should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.

1

**4.1 CORPORATIONS AND PARTNERSHIPS—FAIR TREATMENT**

2

3

   All parties are equal before the law and a [corporation] [partnership] is entitled to the same fair and conscientious consideration by you as any party.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 4.2 LIABILITY OF CORPORATIONS—SCOPE OF AUTHORITY NOT IN ISSUE

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

**SECTION II (A)**
**STIPULATED NON-MODEL JURY INSTRUCTIONS**

The parties stipulate that the following instructions based on the Georgia Pattern Instructions should be given to the jury:

| | |
|---|---|
| Charge No. 1 | Expert Testimony |
| Charge No. 2 | Torts; Proximate Cause; Definition |
| Charge No. 3 | Negligent Design and Warning |
| Charge No. 4 | Strict Liability In tort: General Explanation and Burden of Proof |
| Charge No. 5 | Strict Liability; Design Defect |
| Charge No. 6 | Strict Liability:  Design Defect; Alternative Design Evidence |
| Charge No. 7 | Defect Due to Inadequate Warning |
| Charge No. 8 | Damages – Preliminary Instructions |
| Charge No. 9 | Damages, Expenses—Medical Expenses |
| Charge No. 10 | Damages:  Pain and Suffering; Generally |
| Charge No. 11 | Damages:  Pain and Suffering; Mental |
| Charge No. 12 | Damages:  Pain and Suffering; Future |
| Charge No. 13 | Punitive Damages Liability (Phase I) |
| Charge No. 14 | Punitive Damages – Clear and Convincing (Defined) (Phase I) |
| Charge No. 15 | Punitive Damages – Liability (Phase I) |
| Charge No. 16 | Punitive Damages – Required Recovery of Compensatory Damages (Phase I) |
| Charge No. 17 | Effect of Instructions as to Damages |
| Charge No. 18 | Punitive Damages – Measure of Damages (Phase II) |
| Charge No. 19 | Punitive Damages – Conclusion (Phase II) |

41

**STIPULATED REQUEST TO CHARGE NO. 1**

<u>EXPERT TESTIMONY</u>

In order for Bard to show that Dr. Amer, a non-party, was negligent and that his negligence was one of the proximate causes of Ms. Booker's injury, Bard must present expert testimony.  An expert's opinion on the issue of whether Dr. Amer's alleged negligence caused Ms. Booker's injury cannot be based on speculation or possibility.  It must be based on reasonable medical probability or reasonable medical certainty.  If you find that the expert's testimony regarding causation is not based on reasonable medical probability or reasonable medical certainty, then Bard has not proven that Ms. Booker's injury was proximately caused by Dr. Amer's alleged negligence.

Suggested Pattern Jury Instructions, Counsel of Superior Court Judges of Georgia, § 62.300, Vol. 1, 5th Edition (modified to fit the facts of non-party)

*Zwiren v. Thompson*, 276 Ga. 498, 503 (2003)

**STIPULATED REQUEST TO CHARGE NO. 2**

<u>TORTS; PROXIMATE CAUSE; DEFINITION</u>

Proximate cause means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the sole proximate cause of an occurrence, then no act or omission of any party could have been a proximate cause.

When I use the expression "proximate cause," I mean a cause that, in the natural or ordinary course of events, produced the plaintiff's injury. It need not be the only cause, nor the last or nearest cause. It is sufficient if it combines with another cause resulting in the injury.

Council of Superior Court Judges Suggested Pattern Civil Jury Instructions, 60.200; *Illinois v. Wilson*, 935 NE2d 587 (2010).

43

**STIPULATED REQUEST TO CHARGE NO. 3**

NEGLIGENT DESIGN AND WARNING

Plaintiff claims that Defendants were negligent in the design of the filter and in the adequacy of the warning that accompanied it.   To recover for her claims based on negligence Plaintiff must prove by a preponderance of the evidence that Defendants had a duty of reasonable care to Plaintiff, that Defendants breached that duty in the design of the IVC filter or in the adequacy of the warning provided, that Defendants' breach was the proximate cause of the Plaintiff's injuries, and that Plaintiff suffered damages.

If Plaintiff failed to prove any one of these elements by a preponderance of the evidence, then you must find that Bard was not negligent.

*Persinger v. Step By Step Infant Dev. Ctr.*, 253 Ga. App. 768, 769 (2002).

**STIPULATED REQUEST TO CHARGE NO. 4**

<u>STRICT LIABILITY IN TORT:</u>
<u>GENERAL EXPLANATION AND BURDEN OF PROOF</u>

Ms. Booker contends that Bard is liable because of a defective G2® IVC filter manufactured by Bard.

The manufacturer of a product that is sold as new property may be liable or responsible to any person who is injured because of a defect in the product that existed at the time the manufacturer sold the product.  However, a manufacturer of a product is not an insurer, and the fact that a product may cause an injury does not necessarily make the manufacturer liable.  To recover damages under this rule, Ms. Booker must establish the following three elements by a preponderance of the evidence:

    (a)    the product was defective;

    (b)    the defect existed at the time the product left the Bard's control; and

    (c)    the defect in the product was the proximate cause of the Ms. Booker's injury.

The types of product defects alleged by Ms. Booker are a design defect and/or a defect because of inadequate warning.  There is not a single general way to define what constitutes a defect in a product.  Whether or not a product is defective is a question of fact to be determined by you, the jury, in each case, based on the instruction that I will give you.

Council of Superior Court Judges Suggested Pattern Civil Jury Instructions, 62.610 (modified to include party names);

O.C.G.A. § 51-1-11; [Based on the Court's prior ruling, any mention of manufacturing defect has been deleted.]; *Center Chemical v. Parzini*, 234 Ga. 868 (1975);

*Banks v. ICI Americas, Inc.*, 264 Ga.732 (1994);

*S K. Hand Tool Corp. v. Lowman*, 223 Ga. App. 712 (1996).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED REQUEST TO CHARGE NO. 5**

<u>STRICT LIABILITY; DESIGN DEFECT</u>

A product may be found to be defective because of its particular design.  Although Bard is not required to ensure that a product design is incapable of producing injury, Bard has a duty to exercise reasonable care in choosing the design for a product.

Suggested Pattern Jury Instructions, Counsel of Superior Court Judges of Georgia, § 62.640, Vol. 1, 5th Edition (modified to include party names)

O.C.G.A. § 51-1-11

*Hunt v. Harley-Davidson Motor Co., Inc.*, 147 Ga. App. 44 (1978)

*Banks v. ICI Americas Inc.,* 264 Ga. 732 (1994)

**STIPULATED REQUEST TO CHARGE NO. 6**

<u>STRICT LIABILITY:  DESIGN DEFECT; ALTERNATIVE DESIGN EVIDENCE</u>

In determining whether a product was defective, you may consider evidence of alternative designs that would have made the product safer and could have prevented or minimized Ms. Booker's injury.  In determining the reasonableness of Bard's choice of product design, you should consider:

1) the availability of an alternative design at the time Bard designed this product;

2) the level of safety from an alternative design compared to the actual design;

3) the feasibility of an alternative design, considering the market and technology at the time the product was designed;

4) the economic feasibility of an alternative design;

5) the effect an alternative design would have on the product's appearance and utility for multiple purposes; and

6) any adverse effects on Bard or the product from using an alternative design.

Suggested Pattern Jury Instructions, Counsel of Superior Court Judges of Georgia, § 62.660, Vol. 1, 5th Edition (modified to include party names)

*Banks v. ICI Americas Inc.,* 264 Ga. 732 (1994)

*Wilson Foods Corporation v. Turner*, 218 Ga. App. 74 (1995)

**STIPULATED REQUEST TO CHARGE NO. 7**

<u>DEFECT DUE TO INADEQUATE WARNING</u>

Bard had a duty to give an adequate warning of known or reasonably foreseeable dangers arising from the use of its G2® Filter.  Bard owes this duty to warn to all persons whom the manufacturer should reasonably foresee may use or be affected by the product. Bard's duty to warn may have been breached by:

      a)      failing to provide an adequate warning of the G2® Filter's potential dangers or

      b)      failing to adequately communicate to the ultimate user(s) the warning provided.

A product, however well or carefully made, that is sold without an adequate warning of such danger may be said to be in a defective condition.  If you find by a preponderance of the evidence that Bard did not warn or did not adequately warn when a warning should have been given, then you may find the G2® Filter to be defective for that reason, and Ms. Booker is entitled to recover.

Suggested Pattern Jury Instructions, Counsel of Superior Court Judges of Georgia, § 62.680, Vol. 1, 5th Edition (modified to include party and product names);

O.C.G.A. § 51-1-11;

*Center Chemical Co. v. Parzini*, 234 Ga. 868 (1975);

*Chrysler Corp. v. Batten,* 264 Ga. 723 (1994);

*Wilson Foods Corporation v. Turner*, 218 Ga. App. 74 (1995);

1

2       *McComb v. Synthes (U.S.A.),* 227 Ga. 252, 253 (2003).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED REQUEST TO CHARGE NO. 8**

<u>DAMAGES – PRELIMINARY INSTRUCTIONS</u>

Damages are given as pay or compensation for injury done.

Where one party is required to pay damages to another, the law seeks to ensure that the damages awarded are fair to both parties.

If you believe from a preponderance of the evidence that Ms. Booker is entitled to recover, you should award to Ms. Booker such sums as you believe are reasonable and just in this case.

Counsel of Superior Court Judges Suggested Pattern Civil Jury Instructions, 66.001 (modified to include party names);

O.C.G.A. § 51-12-4;

O.C.G.A. § 51-12-9.

# STIPULATED REQUEST TO CHARGE NO. 9

## <u>DAMAGES, EXPENSES—MEDICAL EXPENSES</u>

In all cases, necessary expenses resulting from the injury are a legitimate item of damages.

As to medical expenses, such as hospital, doctor, and medicine bills, the amount of the damage would be the reasonable value of such expense as was reasonably necessary.

Council of Superior Court Judges Suggested Pattern Civil Jury Instructions, 66.040;

O.C.G.A. § 51-12-7;

*Georgia Power Co. v. Clark*, 69 Ga. App. 273 (1943);

*Georgia Railway and Power Co. v. Ryan*, 24 Ga. App. 290 (1919).

**STIPULATED REQUEST TO CHARGE NO. 10**

<u>DAMAGES:  PAIN AND SUFFERING; GENERALLY</u>

Pain and suffering is a legal item of damages.  The measure is the enlightened conscience of fair and impartial jurors.  Questions of whether, how much, and how long Ms. Booker has suffered or will suffer are for you to decide.

Council of Superior Court Judges Suggested Pattern Civil Jury Instructions, 66.501(modified to include party names);

*Western, etc. Railroad Co. v. Young*, 83 Ga. 512, 515 (1889);

*Redd v. Peters*, 100 Ga. App. 316 (1959).

**PLAINTIFF'S REQUEST TO CHARGE NO. 11**

DAMAGES:  PAIN AND SUFFERING; MENTAL

Pain and suffering includes mental suffering, but mental suffering is not a legal item of damage unless there is physical suffering also.

In evaluating Ms. Booker's pain and suffering, you may consider the following factors, if proven: interference with normal living; interference with enjoyment of life; impairment of bodily health and vigor; fear of extent of injury; shock of impact; actual pain and suffering, past and future; mental anguish, past and future; and the extent to which Ms. Booker must limit activities.

Council of Superior Court Judges Suggested Pattern Civil Jury Instructions, 66.502 [2nd paragraph as to willful or wanton act omitted];

*OB-GYN Associates of Albany v. Littleton*, 259 Ga. 663 (1889);

*Southern Railway Co. v. Jackson*, 146 Ga. 243 (1916);

*Chapman v. Western Union Telegraph Co.*, 88 Ga. 763 (1892);

*Nationwide Mutual Fire v. Lam*, 248 Ga. App. 134 (2001);

*Lee v. State Farm Mutual*, 272 Ga. 583 (2000);

*American Security Co. v. Cook*, 49 Ga. 723 (1934);

*Stephens v. Waits*, 53 Ga. App. 44 (1936);

*Williams v. Vinson*, 104 Ga. App. 886, 893 (1961);

*Langren v. Hodges*, 60 Ga. App. 567 (1939);

*Atlanta Coastline Railroad Co. v. Ouzts*, 82 Ga. App. 36, 62 (1950).

**STIPULATED REQUEST TO CHARGE NO. 12**

<u>DAMAGES:  PAIN AND SUFFERING; FUTURE</u>

     If you find that Ms. Booker's pain and suffering will continue into the future, you should award damages for such future pain and suffering as you believe Ms. Booker will endure.  In making such award, your standard should be your enlightened conscience as impartial jurors.  You would be entitled to take into consideration for the fact that Ms. Booker is receiving a present cash award for damages not yet suffered.

Counsel of Superior Court Judges Suggested Pattern Civil Jury Instructions, 66.503 (modified to include party names);

*Southern Railway Co. v. Bottoms*, 35 Ga. App. 804 (1926);

*Brock v. Cato*, 75 Ga. App. 79, 82 (1947);

*Williams v. Vinson*, 104 Ga. App. 886, 893 (1961);

*Shore v. Ferguson*, 142 Ga. 657 (1914);

*Everett v. Holmes*, 126 Ga. App. 208 (1972).

55

**STIPULATED REQUEST TO CHARGE NO. 13**

<u>PUNITIVE DAMAGES LIABILITY (PHASE I)</u>

In tort actions, there may be aggravating circumstances that may warrant the awarding or imposing of additional damages called punitive damages.

Before you may award punitive damages, Ms. Booker must prove that Bard's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences. Ms. Booker must prove that Bard is liable for punitive damages must be proven by a higher standard than that for proof of other damages; that is, by clear and convincing evidence.

Council of Superior Court Judges Suggested Pattern Civil Jury Instructions, 66.700 (modified to include party names);

O.C.G.A. § 51-12-5.1(a);

1    O.C.G.A. § 51-12-5.1(b).

# STIPULATED REQUEST TO CHARGE NO. 14

## PUNITIVE DAMAGES – CLEAR AND CONVINCING (DEFINED) (PHASE I)

As to the issue of punitive damages, Ms. Booker must prove to a reasonable certainty by clear, convincing, and decisive evidence that Ms. Booker is entitled to relief. This is a different and higher burden of proof than a mere preponderance of the evidence. Clear and convincing evidence is defined as evidence that will cause the jury to firmly believe each essential element of the claim to a high degree of probability. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence but less than beyond a reasonable doubt.

Council of Superior Court Judges Suggested Pattern Civil Jury Instructions, 02.040 (modified to include party names);

*Clark v. Cotton*, 263 Ga. 861 (1994).

**STIPULATED REQUEST TO CHARGE NO.  15**

PUNITIVE DAMAGES – LIABILITY (PHASE I)

If Ms. Booker fails to prove by clear and convincing evidence, that Bard was guilty of willful misconduct, malice, fraud, wantonness, oppression, or entire want of care that would raise the presumption of conscious indifference to consequences, then you would not be authorized to award punitive damages.

Mere negligence, although amounting to gross negligence, will not alone authorize an award (imposition) of punitive damages.

Punitive damages, when authorized, are awarded (imposed) not as compensation but solely to punish, penalize, or deter a defendant.  In your verdict you should specify whether you do or do not decide to impose punitive damages.

Council of Superior Court Judges Suggested Pattern Civil Jury Instructions, 66.702 (modified to include party names);

*Alliance Transp. Inc. v. Mayer*, 165 Ga. App. 344, 345 (1983).

**STIPULATED REQUEST TO CHARGE NO. 16**

PUNITIVE DAMAGES – REQUIRED RECOVERY OF COMPENSATORY
DAMAGES (PHASE I)

There can be no recovery of punitive damages in this case unless there is first a recovery by Ms. Booker of compensatory damages.

*Motor Finance Company vs. Harris*, 150 Ga. App. 762 (1979).

**STIPULATED REQUEST TO CHARGE NO. 17**

<u>EFFECT OF INSTRUCTIONS AS TO DAMAGES</u>

The fact I have instructed you as to the proper measure of damages should not be considered as indicating any view of mine as to which party is entitled to your verdict in this case.  Instructions as to the measure of damages are given for your guidance only in the event you should find in favor of Ms. Booker from a preponderance of the evidence in the case in accordance with the other instructions.

Kevin F. O'Malley, Jay E. Grenig, & Hon. William C. Lee, Federal Jury Practice and Instructions § 106.02 (6th ed. 2012).

**STIPULATED REQUEST TO CHARGE NO.  18**

<u>PUNITIVE DAMAGES – MEASURE OF DAMAGES (PHASE II)</u>

The measure of punitive damages is your enlightened conscience of an impartial jury.

Counsel of Superior Court Judges Suggested Pattern of Civil Jury Instructions, 66.741 (modified);

O.C.G.A. § 51-12-5.1.

**STIPULATED REQUEST TO CHARGE NO.  19**

<u>PUNITIVE DAMAGES – CONCLUSION (PHASE II)</u>

Any award you make should be both reasonable and just in light of your previous award of compensatory damages, the conduct and circumstances of Bard, and the purpose of punitive damages.

Council of Superior Court Judges Suggested Pattern Civil Jury Instructions, 66.780 (modified)

**SECTION II (B)**
**STIPULATED NON-MODEL INSTRUCTIONS**

The parties agree that the following instructions based on the Georgia Pattern Instructions should be given to the jury.  However the parties propose instructions with variations in the language.  For each instruction included in this section the parties have included their proposed instruction, the basis for it, and objection to the opposing party's proposed instruction.

1    Strict Liability; Design Defect; Compliance with Industry Standards or Government Regulations

2    Strict Liability; Design Defect; Risk-Utility Test and Factors

3    Tort Damages; Apportionment of Damages

4    Continuing Duty to Warn

**REQUEST FOR INSTRUCTION NO. 1**

**PLAINTIFF'S PROPOSED CHARGE**

<u>STRICT LIABILITY; DESIGN DEFECT; COMPLIANCE WITH INDUSTRY
STANDARDS OR GOVERNMENT REGULATIONS</u>

In determining whether a product was defective, you may consider proof of a manufacturer's compliance with federal or state safety (and non-safety) standards or regulations and industrywide customs, practices, or design standards. Compliance with such standards or regulations is a factor to consider in deciding whether the product design selected was reasonable considering the feasible choices of which the manufacturer knew or should have known. However, a product may comply with such standards or regulations and still contain a design defect.

Suggested Pattern Jury Instructions, Counsel of Superior Court Judges of Georgia, 62.670, Vol. 1, 5th Edition;

*Banks v. ICI Americas Inc.,* 264 Ga. 732 (1994);

*Doyle v. Volkswagenwerk Artiengesellschaft,* 267 Ga. 574 (1997).

**Plaintiff's Position**

Plaintiff contends that the Georgia Pattern charge is the correct law in the state of Georgia as adopted in *Banks* and *Doyle.*  The *Doyle* case involved evidence of compliance by a car manufacturer with "federal motor vehicle safety standards".  *Doyle*, 267 Ga. at 575.  The Georgia Supreme Court addressed whether compliance with the safety standard governing seat belts was sufficient to warrant summary judgment to the car manufacturer.  The Court held that compliance with the federal standard was one factor to consider, but that compliance with the standard was not dispositive of whether  the manufacturer was reasonable in the designing the product.  Alternatively, Plaintiff requests the Court to insert "and non-safety" after the word "safety" in the pattern charge.

**REQUEST FOR INSTRUCTION NO. 1**

**DEFENDANTS' PROPOSED VERSION**

<u>STRICT LIABILITY; DESIGN DEFECT; COMPLIANCE WITH INDUSTRY
STANDARDS OR GOVERNMENT REGULATIONS</u>

In determining whether a product was defective, you may consider proof of a manufacturer's compliance with federal or state standards or regulations and industrywide customs, practices, or design standards. Compliance with such standards or regulations is a factor to consider in deciding whether the product design selected was reasonable considering the feasible choices of which the manufacturer knew or should have known. However, a product may comply with such standards or regulations and still contain a design defect.

*Banks v. ICI Americas Inc.,* 264 Ga. 732 (1994);

*Doyle v. Volkswagenwerk Artiengesellschaft,* 267 Ga. 574 (1997).

**Defendants' Objection to the Georgia Instruction**

Defendants object to the Georgia pattern instruction because it is not accurate statement of the law, it contains the word "safety," but that is not included in the rulings from the Georgia Supreme Court. The instruction reads: "In determining whether a product was defective, you may consider proof of a manufacturer's compliance with federal or state <u>safety</u> standards or regulations and industrywide customs, practices, or design standards." (Emphasis added).  But *Doyle* does not limit compliance to "safety" standards or regulations. " Under the risk-utility test, compliance with federal standards or regulations is a factor for the jury to consider in deciding the question of reasonableness, that is, whether the product design selected was a reasonable one from among the feasible choices of which the manufacturer was aware or should have been aware. It does not render a manufacturer's choice of design immune from liability. That is not to say that

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

evidence of such compliance is not significant, for it is. But, instead of acting as an impenetrable shield from liability, compliance, more appropriately, is to be a piece of the evidentiary puzzle."  267 Ga. 574, 577

**REQUEST FOR INSTRUCTION NO. 2**

**PLAINTIFF'S PROPOSED VERSION**

STRICT LIABILITY; DESIGN DEFECT; RISK-UTILITY TEST AND FACTORS

To determine whether a product suffers from a design defect, you must balance the inherent risk of harm in a product design against the utility or benefits of that product design. You must decide whether the manufacturer acted reasonably in choosing a particular product design by considering all relevant evidence, including the following factors:

1) the usefulness of the product;

2) the severity of the danger posed by the design;

3) the likelihood of that danger;

4) the avoidability of the danger, considering the user's knowledge of the product, publicity surrounding the danger, the effectiveness of warnings, and common knowledge or the expectation of danger;

5) the user's ability to avoid the danger;

6) the technology available when the product was manufactured;

7) the ability to eliminate the danger without impairing the product's usefulness or making it too expensive;

8) the feasibility of spreading any increased cost through the product's price or by purchasing insurance;

9) the appearance and aesthetic attractiveness of the product;

10) the product's utility for multiple uses;

11) the convenience and durability of the product;

12) alternative designs for the product available to the manufacturer; and

13) the manufacturer's compliance with industry standards or government regulations.

If you decide that the risk of harm in the product's design outweighs the utility of that particular design, then the manufacturer exposed the consumer to greater risk of danger than the manufacturer should have in using that product design, and the product is defective. If after balancing the risks and utility of the product, you find by a preponderance of the evidence that the product suffered from a design defect, then the plaintiff is entitled to recover.

Suggested Pattern Jury Instructions, Counsel of Superior Court Judges of Georgia, 62.660, Vol. 1, 5th Edition;

*Banks v. ICI Americas Inc.,* 264 Ga. 732 (1994).

**Plaintiff's Position**

Plaintiff contends that the Georgia Pattern charge is appropriate as written.

**REQUEST FOR INSTRUCTION NO. 2**

**DEFENDANTS' PROPOSED VERSION**

STRICT LIABILITY; DESIGN DEFECT; RISK-UTILITY TEST AND FACTORS

To determine whether a product suffers from a design defect, you must balance the inherent risk of harm in a product design against the utility or benefits of that product design. You must decide whether the manufacturer acted reasonably in choosing a particular product design by considering all relevant evidence, including the following factors:

1)   the usefulness of the product;

2)   the severity of the danger posed by the design;

3)   the likelihood of that danger;

4)   the avoidability of the danger, considering the user's knowledge of the product, publicity surrounding the danger, the effectiveness of warnings, and common knowledge or the expectation of danger;

5)   the user's ability to avoid the danger;

6)   the technology available when the product was manufactured;

7)   the ability to eliminate the danger without impairing the product's usefulness or making it too expensive;

8)   the feasibility of spreading any increased cost through the product's price;

9)   the appearance and aesthetic attractiveness of the product;

10)  the product's utility for multiple uses;

11)  the convenience and durability of the product;

12)  alternative designs for the product available to the manufacturer; and

13)  the manufacturer's compliance with industry standards or government regulations.

70

If you decide that the risk of harm in the product's design outweighs the utility of that particular design, then the manufacturer exposed the consumer to greater risk of danger than the manufacturer should have in using that product design, and the product is defective. If after balancing the risks and utility of the product, you find by a preponderance of the evidence that the product suffered from a design defect, then the plaintiff is entitled to recover.

Suggested Pattern Jury Instructions, Counsel of Superior Court Judges of Georgia, 62.660, Vol. 1, 5th Edition;

*Banks v. ICI Americas Inc.,* 264 Ga. 732 (1994).

**Defendants' Objection to the Georgia Instruction**

Defendants object to the inclusion of the phrase "or by purchasing insurance" in factor 8 because it improperly inserts insurance into the case. The only change to the charge is the deletion of that language. Whether a party is insured or has the capability to purchase insurance is not admissible under Georgia law. *Conley.  V. Gallup*, 213 Ga. App. 487 (1994).

**REQUEST FOR INSTRUCTION NO. 3**

**DEFENDANTS' PROPOSED VERSION**

TORT DAMAGES; APPORTIONMENT OF DAMAGES
(MODIFIED TO INCLUDE NON-PARTY'S NAME)

If you believe that the plaintiff is entitled to recover and further find that the damages sustained by plaintiff were caused by persons or entities who are not parties to this action, you shall consider the fault of all persons or entities whose negligence contributed to the injury or damage. In determining the total amount of damages, you should not make any reduction because of the negligence, if any, of Dr. Sarwat Amer, who is a not a party in this cause of action. The court, in entering judgment, will take into account your allocation of negligence among all persons (or entities) who you find contributed to the plaintiff's damages.

Georgia Pattern Instructions 66.810 Tort Damages; Apportionment of Damages (modified to include non-party's name);

O.C.G.A. §51-12-33; apportionment of fault of non-parties (*Zaldivar v. Prickett*, 297 Ga. 589 (2015); *Walker v. Tensor Machinery, Ltd.*, 298 Ga. 297 (2015)).

**Defendant's Position**

This is the pattern instruction in Georgia. The jury is otherwise charged on Bard's burden of proof on the non-party at fault issue, and therefore the sentence added by Plaintiff is not necessary.

72

**REQUEST FOR INSTRUCTION NO. 3**

**PLAINTIFFS' PROPOSED VERSION**

TORT DAMAGES; APPORTIONMENT OF DAMAGES (MODIFIED TO INCLUDE
NON-PARTY'S NAME AND TO ADD BURDEN OF PROOF)

If you believe that Ms. Booker is entitled to recover and further find that the damages sustained by Ms. Booker were caused by Dr. Amer, who is not a party to this action, you shall consider the fault of Dr. Amer whose negligence contributed to the injury or damage. In determining the total amount of damages, you should not make any reduction because of the negligence, if any, of Dr. Amer, who is a not a party in this cause of action. The Court, in entering judgment, will take into account your allocation of negligence among all persons (or entities) who you find contributed to Ms. Booker's damages. Bard bears the burden of proving the fault of Dr. Amer.

Georgia Pattern Instructions 66.810 Tort Damages; Apportionment of Damages (modified to include non-party's name and burden of proof);

O.C.G.A. §51-12-33; apportionment of fault of non-parties (*Zaldivar v. Prickett*, 297 Ga. 589 (2015); *Walker v. Tensor Machinery, Ltd.*, 298 Ga. 297 (2015)).

**Plaintiff's Position**

Plaintiff requests the Court to give the modified version of the charge to include the name of Dr. Amer instead of "persons or entities" to prevent confusion to the jury. If the pattern language is used the jury may think that there are additional parties or entities to whom they can attribute fault. Additionally, Plaintiff asks the Court to charge the jury on burden of proof at the same time as giving the Apportionment instruction so the jury is clear there is a shift in the burden of proof on this issue.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**REQUEST FOR INSTRUCTION NO. 4**

**DEFENDANTS' PROPOSED VERSION**

<u>CONTINUING DUTY TO WARN</u>

A manufacturer's duty to warn arises when the manufacturer knows or reasonably should know of the danger presented by the use of a product. Therefore, a manufacturer has a continuing duty to adequately warn the public of defects in a product even after that product has left the control of the manufacturer to be sold or distributed to the consumer.

*Chrysler Corp. v. Batten,* 264 Ga. 723 (1994)

Georgia Pattern Instruction 62.683 Continuing Duty to Warn.

**Defendant's Position**

This is the language of the pattern instruction.  The sentence added by Plaintiff is a citation by the Georgia Supreme Court to language from cases in from Maryland and New York.  See, *Chrysler Corp. v. Batten,* 264 Ga. 723, 450 S.E. 2d 208, 212.  It was not adopted as part of the pattern instruction.

**REQUEST FOR INSTRUCTION NO. 4**

**PLAINTIFFS' PROPOSED VERSION**

<u>CONTINUING DUTY TO WARN</u>

A manufacturer's duty to warn arises when the manufacturer knows or reasonably should know of the danger presented by the use of a product. Therefore, a manufacturer has a continuing duty to adequately warn the public of defects in a product even after that product has left the control of the manufacturer to be sold or distributed to the consumer. Because the duty to warn is a continuing one, it may arise months, years, or even decades after the date of the first sale of the product.

Georgia Pattern Instruction 62.683 Continuing Duty to Warn;

*Chrysler Corp. v. Batten,* 264 Ga. 723 (1994).

**Plaintiff's Position**

Plaintiff added the last sentence to the pattern charge, which is a direct quote from the *Chrysler* case, and which has been adopted in other Georgia cases.  This sentence is a correct statement of Georgia law and it is pertinent to the evidence in this matter.  Plaintiff had this filter in her body for 7 years before a physician discovered the problems with it. Bard had a duty during this 7 years to warn users of its product about the dangers of its product, and Plaintiff contends that the jury should be instructed that this is the law in the state of Georgia.

## SECTION III
## PLAINTIFF'S PROPOSED NON-MODEL JURY CHARGES

Plaintiff requests the Court give the following non-model jury charges:

Charge No. 1      Inferences

Charge No. 2      Limiting Instruction:  FDA 510(k) Clearance

Charge No. 3      Products Liability-Defect Due to Inadequate Warning: Manufacturer Held To the Knowledge and Skill of An Expert

Charge No. 4      Products Liability-Manufacturer's Duty to Warn

Charge No. 5      Products Liability-Duty To Warn of Known Dangers and Dangers That Should Have Been Known

Charge No. 6      Skill Required of a Physician

Charge No. 7      Medical Negligence-Differing Views

Charge No. 8      Skill Required Of A Physician-Hindsight

Charge No. 9      Intervening Act

Charge No. 10     Damages-Plaintiff's Pre-Existing Condition

Charge No. 11     Damages: Plaintiff Competent to Testify Concerning His/Her Injuries

Charge No. 12     Damages: Medical Expenses-Future

Charge No. 13     Damages-Pain and Suffering ; Generally

Charge No. 14     Damages: Proof of Permanent Injury

Charge No. 15     Damages: Life Expectancy

Charge No. 16     Punitive Damages-(Phase II)

Charge No. 17     Punitive Damages-Reprehensibility (Phase II)

1

**PLAINTIFF'S REQUEST TO CHARGE NO. 1**

2

<u>INFERENCES</u>

3

4       You are to consider only the evidence in the case.  However, you are not limited to

5   the statements of the witnesses.  You may draw from the facts you find have been proved

6   such reasonable inferences as seem justified in light of your experience.

7       "Inferences" are deductions or conclusions that reason and common sense lead you

8   to draw from facts established by the evidence in the case.

9

10   Kevin F. O'Malley, Jay E. Grenig, & Hon. William C. Lee, *Federal Jury Practice and*
    *Instructions* § 104.20 (6th ed. 2012).

11

12

13   **Defendants' Objection**

14       Defendants believe that the Ninth Circuit instructions adequately instruct the jury

15   on how to interpret the evidence and this instruction is not necessary.

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S REQUEST TO CHARGE NO. 2**

<u>LIMITING INSTRUCTION:  FDA 510(k) CLEARANCE</u>

The fact that Bard submitted the G2® IVC filter for clearance by the Food and Drug Administration, (the "FDA"), and the FDA cleared the device for sale in the United States is not evidence of any finding by the FDA that the G2® Filter is safe and effective for its intended uses

The reason for this has to do with the process by which medical devices are presented to the FDA and cleared for sale.  As you know, the G2® IVC filter is a medical device.  A prescription medical device must be authorized by the FDA to be sold in the United States.  Under the Food, Drug and Cosmetic Act – the federal law that governs medical devices – there are two different processes by which the FDA allows medical devices to be sold.

One is called the Premarket Approval process.  (You may hear this referred to as a "PMA.")  This process requires that the manufacturer submit a "premarket application" containing detailed information regarding the safety and efficacy of its devices, of which the FDA then does a detailed review.

The G2® Filter, like most medical devices, did not go through the PMA process. The G2® Filter went through the second process which is called the "510(k) process." Under this process, the FDA permits a medical device to be sold in the United States if it is shown to be substantially equivalent to a pre-existing, legally marketed medical device – that is, to another medical device that has previously been cleared by the FDA for sale in the United States.  This pre-existing device is called the "predicate device."

The FDA cleared the G2® under the 510(k) process in August 2005.  This meant that the G2® Filter device could legally be sold and used in the United States.  It does *not* mean that the FDA specifically investigated or approved the device for safety or effectiveness, and therefore, you may not consider the clearance by the FDA as evidence that the G2® is a safe or effective medical device.  Also, you may not consider the FDA's

clearance of the G2® Filter implanted in Ms. Booker when considering if Bard/the defendants satisfied any standard of care in designing the device.

**Defendants' Objection**

Defendants object to this instruction on the grounds that it contradicts the Court's Ruling on Plaintiff's motion in limine No. 1, and is an improper attempt to comment on the evidence.

Defendants further object on the grounds that the instruction is not an accurate instruction on the law, and is an attempt to have the Court provide "instruction" and comment on facts that should be testified to by witnesses or presented through exhibits. Among other things, the instruction erroneously advises the jurors that they cannot "consider[]" the evidence of FDA compliance. To the contrary, while evidence of FDA clearance does not establish that the standard of care is satisfied, as the Court's order and Georgia law made clear, the jury can certainly "consider" that evidence in assessing the reasonableness of the defendants' conduct and other related issues.

Defendants further object on the grounds that the facts asserted in the charge are not an accurate description of the FDA 510(k) process. The instruction implies that manufacturers submit "detailed information" to the FDA only in conjunction with PMA devices, which is not the case, as the record in this case makes it abundantly clear that Bard submitted very detailed information to the FDA with regard to the IVC filters. The instruction also erroneously suggests that the FDA did not "investigate" the IVC filters, a claim belied by the record of FDA review and inquiry concerning Bard's submissions.

Defendants do not offer an alternative limiting instruction as the Court previously limited the evidence for the jury to consider, and Defendants intend to comply with that ruling.

**PLAINTIFF'S REQUEST TO CHARGE NO. 3**

<u>PRODUCTS LIABILITY – DEFECT DUE TO INADEQUATE WARNING;
MANUFACTURER HELD TO THE KNOWLEDGE AND SKILL OF AN EXPERT</u>

In cases such as the instant case, a manufacturer is held to the knowledge and skill of an expert.  This is relevant in determining (1) whether the manufacturer knew or should have known of a danger in its product and (2) whether the manufacturer was negligent in failing to communicate this superior knowledge.  The manufacturer's status as an expert means that at a minimum, it must keep abreast of scientific knowledge, discoveries, and advances and is presumed to know what is imported thereby.

Even more importantly, a manufacturer has a duty to test and inspect its product.  The extent of research and experiment must be commensurate with the dangers involved.  A product must not be made available without disclosures of these dangers that the application of reasonable foresight would reveal.   Nor, may a manufacturer rely unquestioningly on others to sound such disclosure concerning a danger in this product.  Rather, each manufacturer must bear the burden of showing that its own conduct was proportionate to the scope of its duty.

*Borel v. Fibreboard Paper Prods., Corp*., 493 F 2d 1076, 1080-1090 (5th Circuit);

*The Corporation of Mercer University v. National Gypsum Co., et al.*, 1986 WL 12445 (M.D. Ga. 1986).

**Defendants' Objection**

Defendants object to this charge on the grounds that it is not a proper statement of Georgia law.  The cases cited by Plaintiff do not apply to this case. *Borel v. Fibreboard Paper Prods, Corp*. 493 F. 2d 1076 (1973) applies Texas law. Plaintiff cites no case that stands for this proposition under Georgia law.  In addition, *The Corporation of Mercer*

*University v. National Gypsum Co*, 1986 WL 12445 (M.D. Ga. 1986) is not applicable.  It was a property damage claim over the removal of asbestos and does not stand for the proposition stated in the charge. The charge expands the duty of a manufacturer beyond what is required by Georgia law.

Defendants propose that the stipulated charge on failure to warn in Section 2A, No. 7 is the appropriate charge.

## PLAINTIFF'S REQUEST TO CHARGE NO. 4

### PRODUCTS LIABILITY – MANUFACTURER'S DUTY TO WARN

You must decide whether adequate efforts were made by Bard to communicate all risks that were known to Bard or reasonably should have been known to Bard to the physician who implanted the G2® Filter in Ms. Booker, and whether the warning that Bard communicated was adequate.  A warning is inadequate if it does not provide a complete disclosure of both the existence of the risk and the extent of the danger and the severity of any potential injury involved.

*Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1994);

*Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 335 (1984);

*Watkins v. Ford Motor Co*., 190 F. 3d 1213, 1220 (11th Cir. 1999);

*Stapleton v. Kawasaki Heavy Indus., Inc.,* 608 F.2d 571, 573 (5th Cir. 1979);

*White v. W.G.M. Safety Corp.*, 707 F. Supp. 544, 549 (S.D. Ga. 1988);

*Bryant v. Hoffman-La Roche, Inc*., 262 Ga. App. 401, 410 (2003);

*Sands v. Kawasaki Motors Corp.*, 2009 WL 3152859, at *5 (S.D. Ga. Sept. 30, 2009).

**Defendants' Objection**

Defendants object to this charge on the grounds that it is not a proper statement of Georgia law and attempts to extend the duty to warn beyond what is required.  It is also duplicative of the stipulated charge No. 7 on failure to warn and will confuse the jury. Further in the case involving a learned intermediary, the fact the risks were known in the medical community is a factor that should be considered by the jury. *See Wheat v. Sofamor, S.N.C.,* 46 F.Supp.2d 1351, 1363 (N.D.Ga.1999) and *Ellis. C.R. Bard, Inc.*, 311 F.3d 1272 (2002).  Defendants propose as an alternative instruction:

1    You must decide whether adequate efforts were made by Bard to communicate all

2  risks that were known to Bard or reasonably should have been known to Bard to the

3  physician who implanted the G2® Filter in Ms. Booker, and whether the warning that

4  Bard communicated was adequate.  However, in making that determination you make take

5  into account whether the risks were generally known by Dr. D'Ayala and the medical

6  community generally.

1

## PLAINTIFF'S REQUEST TO CHARGE NO. 5

2

3

<u>PRODUCTS LIABILITY – DUTY TO WARN OF KNOWN DANGERS AND
DANGERS THAT SHOULD HAVE BEEN KNOWN</u>

4

5

6

7

In considering whether Bard violated its duty to warn, you may consider not only what dangers Bard knew at the time the product was sold, but also what Bard should have known at that time by the application of reasonable, developed human skill.

8

9

10

*Bishop v. Farhat*, 227 Ga. App. 201, 206 (1997).

11

12

13

**Defendants' Objection**

14

15

16

17

18

Defendants object to this charge on the grounds that it is duplicative of the Stipulated Charge on Failure to Warn in Section 2, No. 7.   This charge is a paraphrase from *Bishop v. Farhat*, which actually cites to *Chrysler Corp. v Batten*, 264 Ga. 723 (1994). The Georgia Pattern Charge (Stipulated Charge No. 7) is likewise taken from *Batten*. Therefore, there is no need for an additional charge.

19

20

21

22

23

24

25

26

27

28

## STIPULATED REQUEST TO CHARGE NO. 6

### SKILL REQUIRED OF A PHYSICIAN

A person professing to practice medicine for compensation must bring to the exercise of the profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be an act for which a recovery maybe had.

O.C.G.A. § 51-1-27

This standard, when applied to the facts and circumstances of any particular case, must be of such degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by the profession generally.

If Dr. Amer, in the treatment and care of Ms. Booker, used that degree of care and skill ordinarily employed by the profession generally under similar conditions and like surrounding circumstances, then Dr. Amer would not be negligent; therefore, there could be no finding of malpractice. If, on the other hand, Dr. Amer failed to use such degree of care and skill, that would be negligence, and if injury resulted because of such failure, Dr. Amer would be liable for such injury as a result of malpractice.

*Hinkle v. Smith*, 12 Ga. App. 497 (1913);

*Mills v. Emory*, 114 Ga. App. 63 (1966);

*Simpson v. Dixon*, 167 Ga. App. 344 (1983).

The presumption in a case alleging medical malpractice is that the doctor's services were performed in an ordinarily skillful manner. Bard may overcome this legal presumption by introducing evidence that Dr. Amer did not treat Ms. Booker in an ordinarily skillful manner. Expert testimony is usually required to overcome the presumption, and the burden is on Bard to show a lack of due care and skill by a preponderance of the evidence.

*Beach v. Lipham*, 276 Ga. 302 (2003).

1       In order for it to be shown that Dr. Amer's alleged negligence was the proximate

2   cause of Ms. Booker's injury, Bard must present expert testimony.  An expert's opinion

3   on the issue of whether Dr. Amer's alleged negligence caused Ms. Booker's injury cannot

4   be based on speculation or possibility.  It must be based on reasonable medical probability

5   or reasonable medical certainty.   If you find that the expert's testimony regarding

6   causation is not based on reasonable medical probability or reasonable medical certainty,

7   then Bard has not proved that Ms. Booker's injury was proximately caused by Dr. Amer's

8   alleged negligence.

9   *Zwiren v. Thompson*, 276 Ga. 498, 503 (2003).

10  Suggested Pattern Jury Instructions, Counsel of Superior Court Judges of Georgia, §

11  62.300, Vol. 1, 5th Edition (modified to include party and non-party names, and to fit non-party at fault scenario).

12

13

14  **Defendants' Objection**

15      Defendants object to this charge on the grounds that it is not adjusted to this case.

16  The jury is not being asked to find Dr. Amer "liable" for medical malpractice. Also, the

17  jury does not have to find that Dr. Amer's actions were the sole proximate cause of

18  Plaintiff's injuries – only that they contributed to her injuries.  *See* O.C.G.A. § 51-12-33.

19  The charge will confuse the jury.

20

21

22

23

24

25

26

27

28

86

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S REQUEST TO CHARGE NO. 7**

<u>MEDICAL NEGLIGENCE – DIFFERING VIEWS</u>

In considering the expert testimony provided to you, a mere difference in views between medical professionals as to techniques to be employed, or as to medical judgment exercised, is insufficient in and of itself to support a finding of medical malpractice if it is shown that the technique employed or judgment exercised is an acceptable and customary method of performing the medical services or in making decisions regarding care and treatment of a patient.

*Condra v. Atlanta Orthopaedics*, 285 Ga. 667, 672 (2009);

*Brannen v. Prince*, 204 Ga. App. 866 (1992), overruled on other grounds by *Gillis v. City of Waycross*, 247 Ga. App. 119 (2000);

*Hodges v. Effingham County Hospital Authority*, 182 Ga. App. 173, 177, 355 S.E.2d 104 (1987).

**Defendants' Objection**

Defendants object to this charge on the grounds that it does not conform to the evidence and it is confusing and misleading.  Plaintiff has offered no expert witness on the standard of care of a diagnostic radiologist.  Defendants are not pursuing a medical malpractice claim. Further, the charge implies that conflicting opinions by experts would preclude a finding that Dr. Amer violated the standard of care, which is incorrect.

# PLAINTIFF'S REQUEST TO CHARGE NO. 8

## SKILL REQUIRED OF A PHYSICIAN - HINDSIGHT

In a medical malpractice case, the doctor, (Dr. Amer) cannot be found negligent on the basis of an assessment of Ms. Booker's condition that only later, in hindsight, proves to be incorrect as long as the initial assessment was made in accordance with the reasonable standards of medical care.

Suggested Pattern Jury Instructions, Counsel of Superior Court Judges of Georgia, § 62.311, Vol. 1, 5th Edition (modified to include non-party facts and names);

*McNabb v. Landis*, 223 Ga. App. 894 (1996);

*Haynes v. Hoffman*, 164 Ga. App. 236, 238 (1982);

*Smith v. Finch*, 285 Ga. 709 (2009) (Approving the first sentence of the pattern hindsight instruction).

**Defendants' Objection**

Defendants object to this charge on the grounds that it does not apply to the facts of this case.   The cases cited, such as *Smith v. Finch*, are cases in which a disease or condition was diagnosed (incorrectly) and later symptoms or changes (to which they did not have insight) allowed for a correct diagnosis.  In this case there was no "diagnosis" by Dr. Amer, in fact that is why he violated the standard of care; he failed to report the condition to which he did have insight.

**PLAINTIFF'S REQUEST TO CHARGE NO. 9**

<u>INTERVENING ACT</u>

If the character of the intervening act claimed to break the connection between the original wrongful act and subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrongdoer, the causal connection is not broken, and the original wrongdoer is responsible for all of the consequences resulting from the intervening act.

*Goldstein, Garber & Salama, LLC v. JB*, 300 Ga. 840 (2017);

*Ontario Sewing Mach. Co., LTV v. Smith*, 275 Ga. 683 (2002).

**Defendants' Objection**

Defendants object to this charge on the grounds that it duplicative of the Georgia Pattern charge, and attempts to expand and complicate the issue and confuse the jury. Defendants propose as the alternative charge, Defendants' Charge No. 6 contained in Section IV, which is the Georgia Pattern Charge on Intervening Act.

**PLAINTIFF'S REQUEST TO CHARGE NO. 10**

<u>DAMAGES – PLAINTIFF'S PRE-EXISTING CONDITION</u>

I charge you that Bard must take Ms. Booker in whatever condition it finds her.  A negligent actor must bear the risk that its liability will be increased by reason of the actual physical condition of the other toward whom its act is negligent.

*Coleman v. Atlanta Obstetrics & Gynecology Group*, 194 Ga. App. 508, 510 (1990);

*AT Systems Southeast, Inc. v. Carnes*, 272 Ga. App. 671 (2005).

**Defendants' Objection**

Defendants object to this charge on the grounds that it is inapplicable to this case. Bard does not contend that her complications with her filter were preexisting, but instead that her myriad of unrelated medical symptoms and issues cannot be attributed to Bard. This charge will serve only to confuse and mislead the jury.

**PLAINTIFF'S REQUEST TO CHARGE NO. 11**

<u>DAMAGES:  PLAINTIFF COMPETENT TO
TESTIFY CONCERNING HIS/HER INJURIES</u>

Ms. Booker is competent to testify concerning her injuries and it is not necessary for her to submit expert medical testimony or evidence establishing that the occurrence in question caused any onset of symptoms or the receipt of medical treatment.  Also you, the jury, may conclude such a causal connection from your own common knowledge.

*Hutcheson v. Daniels*, 224 Ga. App. 560, 561 (1997) (where no significant lapse of time between date of alleged negligence event and the onset of the physical injury);

*Jordan v. Smoot*, 191 Ga. App. 74(1) (1989);

*Madden v. Solomon*, 196 Ga. App. 512, 513 (1990).

**Defendants' Objection**

Defendants objects to this charge on the grounds that it is not a proper statement of the law or the cases cited and it is not applicable to this case.  The issue in the cases cited by Plaintiff was not whether the plaintiff was competent to offer testimony about his/her injuries, but whether the jury is competent to make "common sense deductions" as lay fact finders.  See, *Lancaster v. USAA Casualty Insurance*, 232 Ga. App. 805, 502 S.E.2d 752, 754 (1998) which addresses *Hutcheson*, and explained that it stands for the proposition that there are some cases in which expert testimony was not necessary to prove causation of an injury that occurred within a short period of time after an accident or incident.  The evidence in this case is that Plaintiff suffered from a complicated medical history.  There are numerous medical experts, and Ms. Booker is not qualified to offer medical opinion or opinions on the causation of the myriad of symptoms she has had, many of which were caused by unrelated medical conditions.

**PLAINTIFF'S REQUEST TO CHARGE NO. 12**

<u>DAMAGES:  MEDICAL EXPENSES - FUTURE</u>

Members of the jury, if you find that Ms. Booker is entitled to a recovery in this action, Ms. Booker seeks to recover not only for her past medical expenses, but for medical expenses that may be incurred in the future.  If you find that Ms. Booker is entitled to recover and that the evidence shows with reasonable certainty that Ms. Booker will sustain future medical expenses proximately caused by Bard's actions, and if you find that the evidence shows with reasonable certainty the amount of such future medical expenses, Ms. Booker would be entitled to recover those amounts, reduced to present case value.

*Bennett v. Haley*, 132 Ga. App. 512, 208 S.E. 2d 302 (1974);

*Peak v. Cody*, 113 Ga. App. 674, 149 S.E. 2d 519 (1964).

**Defendants' Objection**

Defendants object to this charge on the grounds that it is not adjusted to the evidence in the case.

**PLAINTIFF'S REQUEST TO CHARGE NO. 13**

<u>DAMAGES – PAIN AND SUFFERING; GENERALLY</u>

I charge you that if you find in favor of Ms. Booker, you may consider the pain and suffering which Ms. Booker has endured as a result of the negligence of Bard, if any.  If you find that she suffered pain, either mental or physical, or both mental and physical, up to the present time, you may make an allowance therefore up to the present time.  If you find that her injuries are such as will probably cause future pain and suffering, either mental or physical, or both mental and physical, you would also be authorized to allow compensation for such future mental and physical pain and suffering.

Now in connection with the subject of pain and suffering, I charge you that the impairment of bodily or physical faculties, if any, may cause physical or mental suffering whether there is a direct pecuniary loss or not.  I charge you that every person is entitled to retain and enjoy each and every power of body and mind with which he has been endowed, and no one, without being answerable in damages, can wrongfully deprive another by a physical injury of such power or faculty or materially impair the same.

Deprivation or impairment of such can be classed with pain and suffering.  If one be handicapped by physical injuries from performing the tasks incident to her station in life, or if the character of the injuries be such as to cause one mental anxiety, or dread of physical suffering, reasonably certain to continue in the future, you may consider such elements in assessing damages for pain and suffering.  Such loss or impairment of any power or faculty is a matter for compensation and may be considered by you in determining damages for pain and suffering, if any.

In arriving at the damages to be awarded for pain and suffering, you should act impartially and in accordance with your conscience.  The amount should be reasonable and just as to all parties and should compensate Ms. Booker for the injuries sustained. The only guide for you in determining compensation for mental and physical pain and

suffering is the enlightened conscience of impartial jurors acting under the sanctity of your oath to compensate Ms. Booker with fairness to Bard.

As can be seen, there is no mathematical formula for determining damages for pain and suffering. The legal guide is the enlightened conscience of the jury. However, counsel are permitted, in arguing their case, to present any reasonable theory to you for your consideration in determining such an amount.

*The Atlanta Street Railroad Company v. Jacobs*, 88 Ga. 647, 651-653, 15 S.E. 825 (1891);

*City Council of Augusta v. Drawdy*, Ga App. 543, 547, 43 S.E. 2d 569 (1947);

*Florida Central and Peninsular Railroad Company v. Burney*, 98 Ga. 1, 6-8, 26 S.E 730 (1895).

**Defendants' Objection**

Defendants object to this charge as duplicative of the stipulated charges in Section 2 A, Nos. 10, 11 and 12. Defendants further object on the grounds that this charge is an attempt to have the Court comment on the evidence, and will serve no purpose except to confuse the jury. Defendants propose Stipulated charges 10, 11 and 12 as the alternative.

**PLAINTIFF'S REQUEST TO CHARGE NO. 14**

<u>DAMAGES:  PROOF OF PERMANENT INJURY</u>

I charge you that with respect to the permanency, if any, of Ms. Booker's injury, a permanent injury may be proved either by the opinions of physicians or by proof of facts from which you would be authorized to infer that the injury was permanent.

*Southern Railway Co. V. Clariday*, 124 Ga. 958, 959, 53 S.E. 461 (1905).

**Defendants' Objection**

Defendants object to this charge on the grounds that it is not a proper statement of the law in Georgia and it is not conformed to the facts of the case.  The jury must find by a preponderance of the evidence that Plaintiff has suffered a permanent injury. *See Furney v. Tower*, 34 Ga. App. 739 (1925).

**PLAINTIFF'S REQUEST TO CHARGE NO. 15**

<u>DAMAGES:  LIFE EXPECTANCY</u>

You may determine the life expectancy of a person when his age is shown without any other direct evidence on the subject. You are also entitled to consider the evidence pertaining to his health, habits, surroundings, and method of living, in deciding this matter.

Council of Superior Court Judges Suggested Pattern Civil Jury Instructions, 66.301;

*Davis V. Whitcomb,* 30 App. 497 (16);

*Savannah, etc. Railway v. Stewart*, 71 Ga. 427.

**Defendants' Objection**

Defendants object to this charge on the grounds that it does not conform to the evidence of the case.

**PLAINTIFF'S REQUEST TO CHARGE NO. 16**

<u>PUNITIVE DAMAGES – (PHASE II)</u>

Given that you have now determined that punitive damages should now be awarded against Bard, you must now decide what amount of damages should be awarded that will be sufficient to punish, penalize, or deter Bard in light of the circumstances of this case.

In considering the amount of punitive damages, you may consider the following factors:

1)   the nature and egregiousness or reprehensibility of Bard's conduct;

2)   the extent and duration of Bard's wrongdoing and the likelihood of its recurrence;

3)   the intent of Bard in committing the wrong;

4)   the profitability of Bard's wrongdoing;

5)   the amount of compensatory damages you have previously awarded;

6)   the financial circumstances, that is, the financial condition and/or the net worth of Bard;

Council of Superior Court Judges Suggested Pattern Civil Jury Instructions, 66.750 [modified];

*Hospital Authority of Gwinnett County vs. Jones,* 259 Ga. 759 (1989) (reversed on other grounds);

*Holman vs. Burgess,* 199 Ga. App. 61, 63 (1991).

**Defendant's Objection**

97

Defendants object to this charge on the grounds that it does not follow the pattern charge and improperly instructs the jury to punish Bard. The pattern charge does not include the first sentence. Bard proposes as an alternative the charge with the first sentence deleted and starting with "In considering…" Defendants refer the court to the comments on this charge from the Georgia Civil Pattern Jury Instructions as set forth below:

66.750        **Punitive Damages; Amount; Guidelines**

*(Note: Georgia statutory law does not recognize guidelines for punitive damages.* State Farm Mutual Automobile Insurance Company v. Campbell, *538 US 408; 123 S. Ct. 1513 [2003] arises from another state and has not been interpreted in Georgia as of this writing. Procedures and evidence addressed are specific to that case; however, in broad language, the opinion addresses and condemns perceived due process problems that occur in many jurisdictions, including Georgia. The trial judge needs to be aware of its [6-3] holding and the trend that it supports. Much of its language may be dicta, but the case is perceived by many to be a bellwether case on punitive damages. The extent of the effect is not known.*

*The guidelines of* State Farm Mutual Automobile Insurance Company v. Campbell*, are written for postjudgment review, but there is strong language suggesting that postjudgment review [as has often been relied on in Georgia] may not suffice as a substitute for jury guidance and may not be adequate to comply with due process. Punishment without due process [i.e., notice of prohibited conduct and severity of punishment] is the issue, and therefore some guidance adjusted to the evidence is probably necessary. The extent of required guidance is not known. Prompted by a very strong trend in U.S. cases, Georgia case law, especially* Hospital Authority of Gwinnett Co. V. Jones, *has recognized the guidelines that follow. Some of these guidelines may*

*conflict with or duplicate those suggested in* State Farm v. Campbell. *Adjustments to the charge have been made accordingly.)*

In considering the amount of punitive damages, you may consider the following factors:

1) the nature and egregiousness (reprehensibility) of the defendant's conduct *(See 66.760, Reprehensibility; Amplified)*

2) the extent and duration of the defendant's wrongdoing and the (possibility) (likelihood) of its recurrence *(The word "possibility" is from the opinion; substitution of "likelihood" may avoid a burden of proof conflict.)*

3) the intent of the defendant in committing the wrong

4) the profitability of the defendant's wrongdoing *(Give only if supported by evidence.)*

5) the amount of actual damages awarded

6) the previous awards of punitive damages against the defendant (for the same or similar conduct) *(Parenthetical qualifier added due to language of* State Farm v. Campbell*; give only if supported by evidence.)*

7) potential or prior criminal (civil) sanctions against the defendant based upon the same wrongful acts *(Give only if supported by evidence.)*

8) the financial circumstances, that is, the financial condition and or the net worth of the defendant *(Give only if supported by evidence.)*

*(Note: The supreme court identifies net worth an area with great potential for bias but gives no guidance for a charge or other solution. A general sympathy charge has been criticized as insufficient. Consider giving a limiting charge on sympathy and prejudice specifically addressing financial circumstances. See 66.773 Bias,*

*Sympathy, Prejudice and 02.550 Sympathy.)*

9) any other pertinent circumstances *(Note: This catchall is from Georgia case law but may violate due process and* State Farm v. Campbell.*)*

*Hospital Authority of Gwinnett Co. v. Jones,* 259 Ga. 759, 764 (1989); reversed on other grounds

State Farm *and* BMW v. Gore, *517 US 559 (1996) set the following guidelines for review of any punitive award:*

*1) degree of reprehensibility of the defendant's conduct;*

*2) proportionality between conduct, compensatory award, and punitive award; and comparison between the punitive award and authorized civil penalties imposed in comparable cases.*

100

**PLAINTIFF'S REQUEST TO CHARGE NO. 17**

<u>PUNITIVE DAMAGES – REPREHENSIBILITY (PHASE II)</u>

In making your award, you should consider the degree of the reprehensibility of Bard's wrongdoing.  You should consider all of the evidence, both aggravating and mitigating, to decide how much punishment, penalty or deterrence Bard's conduct deserves.  In assessing reprehensibility, you may consider whether

    (a)    the harm caused was physical, as opposed to economic;

    (b)    the conduct showed an indifference to or a reckless disregard of the health or safety of others; and

    (c)    the conduct involved repeated actions or was an isolated incident;

Council of Superior Court Judges Suggested Pattern Civil Jury Instructions, 66.760 (modified).

**Defendants' Objection**

Defendant objects to this charge on the grounds that, as the drafters of the Georgia Pattern Instructions, notes, this charge "amplifies" the factor of reprehensibility. Defendants believe that the Pattern Charge 66.750 is sufficient as is addressed in Bard's objection to Plaintiff's Charge No. 16.

1
2

# SECTION IV
# DEFENDANTS' PROPOSED NON-MODEL JURY INSTRUCTIONS

3

Defendants request the Court give the following non-model jury charges:

4
5

| Charge No. 1 | Burden of Proof |
|---|---|
| Charge No. 2 | No Action By FDA |
| Charge No. 3 | Learned Intermediary |
| Charge No. 4 | Failure to Read Warning |
| Charge No. 5 | Jury Deliberation: Product Defect |
| Charge No. 6 | Torts; Proximate Cause: Foreseeability: Natural and Probable Consequences; Intervening Cause |
| Charge No. 7 | Break in Causal Chain |
| Charge No. 8 | Assumption of the Risk Defense: Products Liability |
| Charge No. 9 | Tort Damages: Duty to Lessen |
| Charge No. 10 | Punitive Damages; Dissimilar Conduct |

## DEFENDANTS' REQUEST FOR INSTRUCTION NO. 1

<u>BURDEN OF PROOF</u>

Ms. Booker has the burden of proof on her claims, which means that the she must prove whatever it takes to make her case, except for any admissions (in pleadings) by the defendant. The plaintiff must prove her case by a preponderance of the evidence.

Ms. Booker has the burden of proof on her claim for punitive damages.  She must prove that claim by clear and convincing evidence.

Bard has the burden of proof on its claim that there is a non-party at fault (Dr. Amer).  Bard must prove whatever it takes to make their case on that claim, except for any admissions (in pleadings) by the plaintiff or Dr. Amer. Bard must prove their case by a preponderance of the evidence.

Taken from Georgia Pattern Charge 02.020 Burden of Proof; Generally; Preponderance of Evidence, Defined

**Plaintiff's Objection**

The language of the charge above does not track the entire Georgia pattern charge. It leaves out the definition of preponderance of the evidence, and as such it is incomplete and misleading.  Moreover, this charge is duplicative of charges that have already been stipulated to by the parties.  (Ninth Circuit charge 1.6-Burden of Proof and Section 2a Number 14-Ga Pattern 02.040-Punitive Damages-Clear and Convincing).  The Plaintiff has requested the Court to charge on the burden of proof in the non-party at fault issue when the Court charges the jury on apportionment. (Section 2b Number 3-Apportionment).

1

2

3

4

# DEFENDANTS' REQUEST FOR INSTRUCTION NO. 2

## NO ACTION BY FDA

5

6

The fact that the FDA did not require Bard to take any action as to the G2® Filter is a fact you may consider in evaluating whether it was a dangerous design.

7

8

9

10

11

12

13

14

Under Georgia law, when a plaintiff claims a design defect in a widely-distributed product, "[t]he fact that . . . [defendant] had never been subjected to regulatory action with respect to the claimed defect . . . tends to negate the allegation that the configuration was a dangerous design." *Browning v. Paccar, Inc.*, 214 Ga. App. 496, 498, 448 S.E.2d 260, 263 (1994).   As such, "evidence that the customary methods for protecting the public from defective [products] had not been instituted in connection with these [products] was relevant to show defendant's design and manufacture was not negligent." *Id.*

15

16

**Plaintiff's Objection**

17

18

19

20

21

22

This narration is not an instruction.  Moreover, inaction by the FDA is not a factor contained in the *Banks* test as set forth in pattern instruction 62.650.  The Court has not ruled on admissibility of lack of enforcement evidence.  (See Plaintiff's MIL #1 ruling).  Moreover, the case law cited is inapplicable.  Although Bard's filters were not recalled, they were subject to regulatory action.  Additionally, there is no manufacturing defect claim in this case.

23

24

25

26

27

28

**Plaintiff's Proposed Charge:**

LIMITING INSTRUCTION:  FDA 510(k) CLEARANCE

The fact that Bard submitted the G2® IVC filter for clearance by the Food and Drug Administration, (the "FDA"), and the FDA cleared the device for sale in the United States is not evidence of any finding by the FDA that the G2® Filter is safe and effective for its intended uses.[1]

The reason for this has to do with the process by which medical devices are presented to the FDA and cleared for sale.  As you know, the G2® IVC filter is a medical device.  A prescription medical device must be authorized by the FDA to be sold in the United States.  Under the Food, Drug and Cosmetic Act – the federal law that governs medical devices – there are two different processes by which the FDA allows medical devices to be sold.

One is called the Premarket Approval process.  (You may hear this referred to as a "PMA.")  This process requires that the manufacturer submit a "premarket application" containing detailed information regarding the safety and efficacy of its devices, of which the FDA then does a detailed review.

The G2® Filter, like most medical devices, did not go through the PMA process.  The G2® Filter went through the second process which is called the "510(k) process."  Under this process, the FDA permits a medical device to be sold in the United States if it is shown to be substantially equivalent to a pre-existing, legally marketed medical device –

---

[1] See Doc. 9881, at 4.

that is, to another medical device that has previously been cleared by the FDA for sale in the United States.  This pre-existing device is called the "predicate device."

The FDA cleared the G2® under the 510(k) process in August 2005.  This meant that the G2® Filter device could legally be sold and used in the United States.  It does *not* mean that the FDA specifically investigated or approved the device for safety or effectiveness, and therefore, you may not consider the clearance by the FDA as evidence that the G2® is a safe or effective medical device.  Also, you may not consider the FDA's clearance of the G2® Filter implanted in Ms. Booker when considering if Bard/the defendants satisfied any standard of care in designing the device.[2]

---

[2] *See* Doc. 9881, at 7.

## DEFENDANTS' REQUEST FOR INSTRUCTION NO. 3

<u>LEARNED INTERMEDIARY</u>

The manufacturer of a medical device does not have a duty to warn the patient of the dangers involved with the product, but instead has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and the manufacturer.

*McCombs v. Synthes*, 277 Ga. 252, 253, 587 S.E.2d 594 (2003)

**Plaintiff's Objection**

This instruction is not complete. Plaintiff proposes the addition of a sentence at the end of the instruction.

**Plaintiff's Proposed Charge:**

### **Learned Intermediary**

The manufacturer of a medical device does not have a duty to warn the patient of the dangers involved with the product, but instead has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and the manufacturer. However, the manufacturer's warnings to the physician must be adequate or reasonable under the circumstances of the case.

*McCombs v. Synthes*, 277 Ga. 252, 253, 587 S.E.2d 594 (2003)

1
2
3

## DEFENDANTS' REQUEST FOR INSTRUCTION NO. 4

### FAILURE TO READ WARNING

4   If you find that Plaintiff failed to prove by a preponderance of the evidence that Dr.
5   D'Ayala read the warning provided by Defendants, you must find for Defendants on the
6   Plaintiff's claims relating to failure to warn or the adequacy of the warning.

7   "[F]ailure to read instructions or printed warnings will prevent a plaintiff from
8   recovering on a claim grounded on failure to provide adequate warning of the product's
9   potential risk." *Wilson Foods Corp. v. Turner*, 218 Ga. App. 74, 75, 460 S.E.2d 532, 534
10  (1995); *Camden Oil Co., LLC v. Jackson*, 609 S.E.2d 356, 358 (Ga. App. 2004) ("where a
11  plaintiff does not read an allegedly inadequate warning, the adequacy of the warning's
12  contents cannot be a proximate cause of the plaintiff's injuries").

13

14  **Plaintiff's Objection**

15  This charge does not conform to the evidence in the case.  The implanting
16  physician, Dr. D'Ayala, testified in his deposition that he read the IFU for the Bard G2®
17  Filter.  There is no contradictory evidence on this issue.  This instruction would be
18  misleading to the jury.  (D'Ayala Deposition, March 21, 2017, p. 45:7-25; pp.93-95).
19  Moreover, the cases cited by Defendants are cases in which the plaintiff was the ultimate
20  user/consumer of the product and are distinguishable from a medical device case, where
21  the learned intermediary doctrine applies.

22
23
24
25
26
27
28

## DEFENDANTS' REQUEST FOR INSTRUCTION NO. 5

### <u>JURY DELIBERATION; PRODUCT DEFECT</u>

If you find by a preponderance of the evidence that the product was defective in design or the adequacy of the warning provided when it left the control of the manufacturer and that the plaintiff's injury was proximately caused by that defect, then you would return a verdict for the plaintiff, unless the plaintiff is denied recovery under some other principle of law given to you in these charges.

If after considering all the evidence, you do not believe by a preponderance of the evidence that the product by which plaintiff claims to have been injured was defective in design or adequacy of the warning when it left the manufacturer's control or that the product was the proximate cause of the plaintiff's injury, then you would end your deliberations; the plaintiff would not be entitled to recover; and you would return a verdict for the defendant.

Georgia Pattern Instruction 62.720 Jury Deliberation; Product Defect

**Plaintiff's Objection:**

This instruction ignores the fact that the manufacturer has a continuing duty to warn because it is couched in terms of when the product "left the control of the manufacturer". Here, the G2® Filter remained in Ms. Booker's body for years after it left the manufacturer's control. Under Georgia law, Bard had a continuing duty to warn well beyond when the product left its control. The applicable Georgia pattern instruction regarding the continuing duty to warn is number 62.683 and it has been submitted by the Plaintiff (Section 2b, Number 4-see below).

**Plaintiffs' Proposed Charge:**

### **Continuing Duty to Warn**

1    A manufacturer's duty to warn arises when the manufacturer knows or reasonably

2 should know of the danger presented by the use of a product. Therefore, a manufacturer

3 has a continuing duty to adequately warn the public of defects in a product even after that

4 product has left the control of the manufacturer to be sold or distributed to the consumer.

5 Because the duty to warn is a continuing one, it may arise months, years, or even decades

6 after the date of the first sale of the product.

7

8 Georgia Pattern Instruction 62.683 Continuing Duty to Warn (modified to include last

9 sentence)

10

11    *Chrysler Corp. v. Batten,* 264 Ga. 723 (1994)

**DEFENDANTS' REQUEST FOR INSTRUCTION NO. 6**

<u>TORTS; PROXIMATE CAUSE; FORESEEABILITY; NATURAL AND PROBABLE
CONSEQUENCE; INTERVENING CAUSE RULES</u>

A defendant may be held liable for an injury when that person commits a negligent act that puts other forces in motion or operation resulting in the injury when such other forces are the natural and probable result of the act that the defendant committed and that reasonably should have been foreseen by the defendant. When the injuries could not reasonably have been foreseen as the natural, reasonable, and probable result of the original negligent act, then there can be no recovery. If the chain reaction that resulted from the defendant's alleged negligence, if any, meets the above tests, then the plaintiff may recover.

Georgia Pattern Instruction 60.202 Torts; Proximate Cause; Foreseeability; Natural and Probable Consequence; Intervening Cause Rules

*Stern v. Wyatt,* 140 Ga. App. 704, 705 (1976)

*Stapleton v. Amerson,* 96 Ga. App. 471, 472 (1957)

**Plaintiff's Objection**

Plaintiff objects to this charge because Defendants have not met their burden of proof to establish fault of a non-party, i.e., no expert testimony has been disclosed suggesting a breach of duty and causation by a non-party. Plaintiff has a pending MIL on this issue. If the Courts give an instruction on intervening act the Plaintiff requests the following instruction.

**Plaintiff's Proposed Charge:**

**Intervening Act**

111

If the character of the intervening act claimed to break the connection between the original wrongful act and subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrongdoer, the causal connection is not broken, and the original wrongdoer is responsible for all of the consequences resulting from the intervening act.

*Goldstein, Garber & Salama, LLC v. JB*, 300 Ga. 840 (2017);

*Ontario Sewing Mach. Co., LTV v. Smith*, 275 Ga. 683 (2002).

**DEFENDANTS' REQUEST FOR INSTRUCTION NO. 7**

<u>BREAK IN CAUSAL CHAIN</u>

If you find that acts of others intervened and caused or contributed to Plaintiff's injuries, those acts of others may be considered the proximate cause of Plaintiff's injuries because there is no requirement that an intervening act be wrongful or negligent to break the "causal chain."

*Jordan v. Everson*, 302 Ga. 364 (2017)

**Plaintiff's Objection:**

This charge contains an incorrect statement of the law and mixes up concepts of sole cause and contributing cause. In addition, the proposed language of this charge was not quoted from the *Jordan* case but appears to be an erroneous paraphrase of limited language in the case. In addition, this charge does not conform to the evidence and is subject to Plaintiff's pending Motions *in Limine* regarding lack of evidence of fault of a non-party.

**DEFENDANTS' REQUEST FOR INSTRUCTION NO. 8**

<u>ASSUMPTION OF THE RISK DEFENSE; PRODUCTS LIABILITY</u>

If a person knows of a product's defect and is aware of the danger but nevertheless proceeds unreasonably to make use of the product, he/she cannot later hold another person responsible for any injury suffered due to taking such a risk. If you find by a preponderance of the evidence that

    1)the plaintiff knew of the danger posed by the defective product,

    2)the plaintiff understood and appreciated the risks of that defect, and

    3)the plaintiff knowingly and voluntarily exposed himself/herself to such a risk, then the plaintiff would not be entitled to recover for the resulting injury or damages, and you would return a verdict for the defendant.


Georgia Pattern Instruction 62.710 Assumption of the Risk Defense; Products Liability

*Center Chemical Co. v. Parzini,* 234 Ga. 868 (1975)

*Beringause v. Fogleman Truck Lines Inc.,* 200 Ga. App. 822, 824 (1991)

*Sharpnack v. Hoffinger Industries Inc.,* 223 Ga. App. 833 (1996)

*Raymond v. Amanda Co., LTD.,* 925 F. Supp. 1572 (N.D. Ga. 1996)


**Plaintiff's Objection**

Plaintiff contends that there is no valid assumption of the risk defense in this matter, thus, the charge should not be given by the Court.  However, should the Court give an assumption of the risk charge, Plaintiff asks the Court to instruct the jury that the burden of proof shifts to the Defendants on this affirmative defense.

114

**Plaintiff's Proposed Charge:**

### Assumption of the Risk Defense; Products Liability

If a person knows of a product's defect and is aware of the danger but nevertheless proceeds unreasonably to make use of the product, he/she cannot later hold another person responsible for any injury suffered due to taking such a risk. Bard bears the burden of proof to prove by a preponderance of the evidence that:

1) the plaintiff knew of the danger posed by the defective product,

2) the plaintiff understood and appreciated the risks of that defect, and

3) the plaintiff knowingly and voluntarily exposed himself/herself to such a risk, then the plaintiff would not be entitled to recover for the resulting injury or damages, and you would return a verdict for the defendant.

Georgia Pattern Instruction 62.710 Assumption of the Risk Defense; Products Liability (modified to include burden of proof)

*Center Chemical Co. v. Parzini,* 234 Ga. 868 (1975)

*Beringause v. Fogleman Truck Lines Inc.,* 200 Ga. App. 822, 824 (1991)

*Sharpnack v. Hoffinger Industries Inc.,* 223 Ga. App. 833 (1996)

*Raymond v. Amanda Co., LTD.,* 925 F. Supp. 1572 (N.D. Ga. 1996)

115

## DEFENDANTS' REQUEST FOR INSTRUCTION NO. 9

### TORT DAMAGES; DUTY TO LESSEN

When a person is injured by the negligence of another, she must mitigate his or her damages as much as is practicable by the use of ordinary care and diligence.

If you find that plaintiff has suffered damages as alleged, under the law, she is bound to reduce those damages, as much as is practicable, by the use of ordinary care. If you believe that by the use of such care that she could have reduced the damages, you would determine to what extent and reduce such damages to that extent.

Georgia Pattern Instruction 66.015 Tort Damages; Duty to Lessen

O.C.G.A. §51-12-11

*Mallock v. Kicklighter*, 10 Ga. App. 605 (1912)

**Plaintiff's Objection:**

Defendants have withdrawn their mitigation defense in this case, thus, this instruction has no bearing on the case.

116

**DEFENDANTS' REQUEST FOR INSTRUCTION NO. 10**

<u>PUNITIVE DAMAGES DISSIMILAR CONDUCT</u>

You may have heard evidence of other conduct and procedures of the defendant. For the purpose of aggravation of punitive damages, you may not consider evidence of any conduct of the defendant that is dissimilar to that which resulted in the plaintiff's injury—unless such dissimilar conduct was related to the specific harm suffered by the plaintiff in this case.

Georgia Pattern Instruction 66.772 Dissimilar Conduct

**Plaintiff's Objection:**

This charge is not applicable to the facts of the case.  Plaintiff does not know what dissimilar conduct this instruction is intended to cover.  The instruction is vague and confusing.

1

2

3

4          RESPECTFULLY SUBMITTED this 28th day of February, 2018.

5          LOPEZ McHUGH LLP                    SNELL & WILMER L.L.P.

6
   By: s/ Ramon Rossi Lopez
7          Ramon Rossi Lopez                   By: s/ Amanda C. Sheridan
           (admitted *pro hac vice*)               James R. Condo
8          CA Bar No. 86361                        Amanda C. Sheridan
           100 Bayview Circle, Suite 5600          One Arizona Center
9          Newport Beach, California 92660         400 E. Van Buren, Suite 1900
                                                   Phoenix, Arizona  85004-2202
10         Mark S. O'Connor
           GALLAGHER & KENNEDY                     Richard B. North, Jr. (*pro hac vice*)
11         2575 East Camelback Road                Matthew B. Lerner (*pro hac vice*)
           Phoenix, Arizona 85016-9225             Nelson Mullins Riley
12                                                  & Scarborough LLP
           *Attorneys for Plaintiffs*              201 17th Street, NW / Suite 1700
13                                                 Atlanta, GA  30363
                                                   *Attorneys for C. R. Bard, Inc. and Bard*
14                                                 *Peripheral Vascular, Inc.*

15

16                          **CERTIFICATE OF SERVICE**

17         I hereby certify that on this 28th day of February, 2018, I electronically transmitted

18  the attached document to the Clerk's Office using the CM/ECF System for filing and

19  transmittal of a Notice of Electronic Filing.

20
                                          *s/ Amanda C. Sheridan*
21

22

23

24

25

26

27

28

                                          118