1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC |
| | **CASE MANAGEMENT ORDER NO. 31** |

The Court held a final pretrial conference on March 2, 2018.  This order will reflect matters addressed at the conference.

1.    The parties' proposed final pretrial order (Doc. 10255) was approved by the Court as the final pretrial order in this case.  The order shall govern the presentation of evidence and other trial issues, and may be modified only to prevent manifest injustice.  Fed. R. Civ. P. 16(e).

2.    The parties did not object to any of the Court's decisions on excusing jurors for hardship.   Jurors identified in the Court's previous order and additional jurors discussed during the conference will be excused.

3.    The Court granted challenges for cause to a number of jurors based on questionnaire answers.  Those jurors were identified on the record and in an order filed after the conference.

4.    The Court concluded that 60 jurors should be called for trial on March 14, 2018.  This number will ensure enough qualified jurors to try to the case.

5.      The parties shall prepare a witness list to be handed to jurors on the morning of trial.  The list should be sent to chambers in Word format on or before **March  7, 2018**.

6.      The parties had no objections to the proposed preliminary instructions distributed at the start of the conference.  The parties may propose additional voir dire questions by **March 7, 2018**.

7.      Following the conference, the Court reporter conferred with the parties about transcription of the trial.  The parties requested that the reporter transcribe video deposition evidence presented during the trial.  The reporter has found such transcription very difficult in the past, due to the sometimes poor quality of the video and the pace of questioning.  The Court will not require the reporter to transcribe video deposition testimony.  To create an accurate record of what was shown to the jury, the parties shall jointly prepare a document that recites the pages and line numbers of all deposition testimony played to the jury and shall file it in the docket following the trial.  The parties need not do so for deposition testimony read to the jury – the reporter will record such testimony.

8.      Each side shall, 48 hours in advance, identify the live witnesses it intends to present.

9.      The parties shall provide the Court clerk with impeachment exhibits 24 hours in advance of their potential use.

10.     Trial will occur on March 14-16, 20-23, and 26-30, 2018.  This schedule, which adds March 26 as a trial day, will permit the jury to receive the case for deliberation by mid-day on March 29, 2018.

11.     The Court entered a number of legal rulings during the conference, and provides others now:

a.      For reasons stated in more detail on the record, the Court will not exclude evidence and argument by Defendants that the FDA took no enforcement action with respect to the G2 filter, or evidence regarding the information Defendants provided

- 2 -

to the FDA in connection with the 510(k) process.  The Court concludes that evidence regarding a lack of FDA action is relevant to the negligent design and punitive damages claims.  *See Browning v. Paccar*, 448 S.E.2d 260, 263 (Ga. 1994) ("The fact that none of such vehicles had been subjected to recall and Paccar had never been subjected to regulatory action with respect to the claimed defect despite the thousands of identical vehicles in use, tends to negate the allegation that the configuration was a dangerous design.").  The Court has previously concluded that Defendants' compliance with the 510(k) process is also relevant.  Doc. 9881.  The Court also finds that Plaintiffs have ample evidence to contest Defendants' assertions that they were fully transparent with the FDA.  The Court cannot conclude that the FDA's lack of enforcement was intended by the FDA as an assertion, making it subject to the hearsay rules.  Plaintiffs can object at trial to specific evidence they consider inadmissible.

b.   By **March 6, 2018**, the parties shall file two-page memoranda on why the testimony of withdrawn defense experts is not admissible under Fed. R. Civ. P. 32(a)(4) and Fed. R. Evid. 804(b)(1).

c.   The Court will permit Plaintiffs to present evidence from Defendants' sales and marketing witnesses.  The Court concludes that evidence of what Defendants' sales personnel were not told or were not instructed to convey is relevant to the claim of failure to warn.

d.   The parties shall confer on the counter-designations that should be presented when deposition testimony is played for the jury.  Only counter-designations needed to prevent a misleading presentation should to included.  The parties will also confer about the scheduling of live witnesses.  Generally, the Court would like to require witnesses to attend trial only once, but this rule may give way if the additional questioning of a witness would seriously interrupt the opponents' case.

e.   Because he was not disclosed as a witness during discovery, the Court held that Dr. Kandarpa may not be called by Plaintiffs as a witness at trial.  Fed. R. Civ. P. 37(e).

1          f.       Dr. Kinney may be called as a fact witness, but not regarding his

2  work for Bard.  Doc. 9868.

3          j.       The Court heard argument regarding Defendants' assertion that

4  evidence of cephalad migration by the Recovery filter should not be admitted.  The Court

5  concludes that such evidence will be necessary for the jury to understand the issues that

6  prompted creation and design of the G2, information that is relevant to the design defect

7  claim.    The Court also finds such evidence relevant in responding to Defendants'

8  assertion that the FDA's 510(k) clearance of the G2 amounted to a determination that the

9  G2 was as safe and efficient as the Recovery.  Plaintiffs should be permitted to argue that

10  the Recovery was not safe and efficient, and that the FDA's clearance of the G2 based on

11  the Recovery cannot be viewed as a reliable determination of safety or efficiency.  The

12  Court is concerned, however, that too heavy an emphasis on deaths caused by cephalad

13  migration of the Recovery filter – a kind of migration which did not occur in Ms.

14  Booker's case – would result in unfair prejudice that substantially outweighs the

15  probative value of the cephalad migration evidence.  The Court will not preclude

16  Plaintiffs from introducing evidence of cephalad migration or that deaths occurred as a

17  result, but Defendants may object if they believe Plaintiffs are overemphasizing the

18  cephalad migration deaths.

19          Dated this 2nd day of March, 2018.

20

21

22  _____

23                       David G. Campbell
                       United States District Judge

24

25

26

27

28