1

2

3

4

5

6

7            **IN THE UNITED STATES DISTRICT COURT**

8             **FOR THE DISTRICT OF ARIZONA**

9    In Re Bard IVC Filters Products          No. CV-MD -15-02641 PHX/PCT-DGC
     Liability Litigation
10                                             **PROPOSED AMENDED FINAL**
                                               **PRETRIAL ORDER**
11

12

13

14          The following is the joint Proposed Final Pretrial Order to be considered at the

15   Final Pretrial Conference set for March 2, 2018 at 10:00 a.m.

16   **A.      TRIAL COUNSEL FOR THE PARTIES**

17          Include  mailing  addresses,  office  phone  numbers,  fax  numbers,  and  email

18   addresses.

19          Plaintiff(s):

20
     Ramon Rossi Lopez
21   Josh Mankoff
     LOPEZ MCHUGH LLP
22   100 Bayview Circle, Suite 5600
     Newport Beach, California 92660
23   Telephone: 949.812.5771
     Facsimile: 949.737.1504
24   rlopez@lopezmchugh.com
25
     Mark S. O'Connor
26   GALLAGHER & KENNEDY, P.A.
     2575 East Camelback Road
27   Phoenix, Arizona 85016-9225
     Telephone: 602.530.8000
28

Facsimile: 603.530.8500
mark.oconnor@gknet.com

Joseph R. Johnson
BABBITT & JOHNSON, P.A.
1641 Worthington Road Suite 100
P.O. Box 4426 (3302-4426)
West Palm Beach, FL 33409
Telephone: (561) 684-2500
Facsimile: 561.684.6308
jjohnson@babbitt-johnson.com

Howard L. Nations
THE NATIONS LAW FIRM
3131 Briarpark Drive, Suite 208
Houston, Texas 77042
Phone: 713.807.8400
Facsimile: 713.807.8423
www.howardnations.com

David C. DeGreeff
WAGSTAFF & CARTMELL, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO  64112
Telephone: 816.701.1100
Facsimile: 816.531.2372
ddegreeff@wcllp.com

Julia Reed Zaic, Esq.
Laura Smith, Esq.
HEAVISIDE REED ZAIC
312 Broadway, Suite 203
Laguna Beach, California 92660
Telephone: 949.715.5228
julia@hrzlaw.com
laura@hrzlaw.com

Hadley L. Matarazzo, Esq.
FARACI LANG
First Federal Plaza
28 East Main St, Suite 1100
Rochester, NY 14614
Telephone: (585) 325-5150
hmatarazzo@faraci.com

Rob Roll
Robin Lourie
WATKINS, LOURIE, ROLL & CHANCE, PC
5607 Glenridge Drive, Suite 500
Atlanta, Georgia 30342
Telephone:  (404) 760 7400
rpl@wlr.net


Defendant(s):

James R. Condo (#005867)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone:  (602) 382-6000
Fax:
jcondo@swlaw.com

Richard B. North, Jr.
(admitted *pro hac vice*);
Georgia Bar No. 545599
Matthew B. Lerner
(admitted *pro hac vice*)
Georgia Bar No. 446986
Elizabeth C. Helm
(admitted *pro hac vice*)
Georgia Bar No. 289930
NELSON MULLINS RILEY &
SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Fax:
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com
kate.helm@nelsonmullins.com

**B.     STATEMENT OF JURISDICTION**

1.      Jurisdiction is appropriate in this Court as the parties to this action are citizens of different states and Plaintiff alleges that she has suffered damages in an amount exceeding the minimum jurisdictional limits of this Court, 28 U.S.C. § 1332.

Plaintiff is a citizen of the state of Georgia.  Defendant C.R. Bard, Inc. ("Bard") is a citizen of the state of Delaware and is a corporation duly organized and existing under the laws of the state of Delaware, with its principal place in New Jersey.  Defendant Bard Peripheral Vascular, Inc. ("BPV") is a citizen of the state of Arizona, is a wholly owned

subsidiary corporation of defendant Bard, and is duly organized and existing under the laws of the state of Arizona with its principal place of business in Arizona.

2.      Jurisdiction is not disputed.

**C.      STIPULATIONS AND UNCONTESTED FACTS AND LAW**

1.      The following material facts are admitted by the parties and require no proof:

a.      The Defendants in this case are C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. ("BPV").  BPV is the wholly-owned subsidiary of C. R. Bard, Inc., the parent company.  Throughout this case, including in this pretrial order, the jury instructions and the verdict form, C.R. Bard, Inc. and BPV will be referred to collectively as "Bard" or "Defendants."

b.      The product that is the subject of this lawsuit is a Bard G2® IVC Filter ("G2® filter") that was designed, manufactured, marketed and sold by Bard;

c.      The G2® Filter is conical in shape and consists of a main shaft to which twelve struts (six "arms" and six "legs") are attached;

d.      The G2® Filter is constructed of a nickel-titanium alloy called Nitinol;

e.      The G2® Filter is a medical device that is implanted in the inferior vena cava, the largest vein in the human body;

f.      The United States Food and Drug Administration ("FDA") cleared the G2® Filter for commercial availability through the 510(k) process outlined in the Food, Drug and Cosmetic Act ("FCDA");

g.      The G2® Filter was cleared for commercial availability in the United States for use in patients as a permanent device on August 29, 2005;

4

h.   The G2® IVC Filter was cleared for commercial availability in the United States for use in patients as a permanent device with the option for percutaneous retrieval on January 15, 2008;

i.   Plaintiff was under the care of Dr. Dean Martin who recommended that Ms. Booker receive an IVC filter.

j.   On June 21, 2007, a vascular surgeon, Dr. Marcus D'Ayala, implanted a G2® filter in Ms. Booker's inferior vena cava;

k.   On July 24, 2014, Dr. Brandon Kang retrieved the main body of Plaintiff's G2® Filter percutaneously, as well as one of the struts. He attempted, but was unable to, retrieve a second strut located in her inferior vena cava or a strut located in the right ventricle of her heart. On July 28, 2014, the strut located in Ms. Booker's right ventricle was removed by Dr. Richard Harvey via an open surgery. One strut remains in the wall of Ms. Booker's inferior vena cava.

2.   The following material facts, although not admitted, will not be contested at trial by evidence to the contrary:

a.   Plaintiff is not seeking to recover past or future lost wages as part of her damages.

3.   The following issues of law are uncontested and stipulated to by the parties:

a.   Plaintiff's claims and Bard's defenses are governed by Georgia substantive law.

4.   The law enumerated in any jury instructions stipulated to by the Parties.

## D.   CONTESTED ISSUES OF FACT AND LAW

1.   Disputed issues of fact:

a.   **Design Defect:**   Whether the filter implanted in Plaintiff had a Design Defect.

Plaintiff's Contention:  Ms. Booker contends that the risk of harm in the design of the G2® filter implanted in her outweighs the utility of that particular design, and that Bard exposed Ms. Booker to a greater risk of danger than Bard should have in using the design of the implanted filter rendering the filter defective.  Ms. Booker further contends that the G2® Filter implanted in her IVC migrated and tilted after it was properly implanted; that the G2® Filter struts perforated through her vena cava and then penetrated into her aorta, psoas muscle and spine; that 3 of the struts of the G2® Filter fractured, and 1 of the 3 struts embolized/migrated to the right ventricle of the heart requiring open heart surgery and repair of the tricuspid valve of the heart; that 1 one of the fractured struts of the G2® Filter is not able to be removed and remains in the vena cava; and that the defective design of the G2® Filter implanted in Ms. Booker caused her injury and damage.  Lastly, there were numerous safer, reasonable alternative IVC filter designs available to Defendants.

Defense Contention:  Bard denies that the G2® Filter implanted in Plaintiff was defective and unreasonably dangerous. Instead, the G2® Filter was both merchantable and reasonably suited to the use intended. *See* O.C.G.A. § 51–1–11(b)(1). The utility and benefits of the G2® Filter design outweigh the inherent risk of harm in the product design. Further, Bard exercised reasonable care in choosing the design for the G2® Filter after consideration of all relevant factors, including Bard's compliance with federal regulatory standards encompassed in the FDA 510(k) clearance process, and industry wide standards. Lastly, there was no feasible alternative

design at the time Bard designed the G2® Filter that would have been safer and provided the same utility for optional retrieval.

b.  **Design Defect - Proximate Cause:** Whether a design defect of the G2® Filter was the proximate cause of Plaintiff's injuries and damages.

Plaintiff's Contention:   Ms. Booker contends that the defective design of her Bard G2® Filter caused or contributed to cause her injuries.

Defendant's Contention:  Defendants denies that any alleged design defect in the G2® Filter caused or contributed to Plaintiff's injuries.

c.  **Failure to Warn:**  Whether Bard failed to adequately warn of the dangers arising from the use of its filter that it knew of or about which it reasonably should have known.

Plaintiff's Contention:   Ms. Booker contends that Bard failed to provide an adequate warning of the G2® filter's unacceptable safety risks or failed to adequately communicate warnings to Ms. Booker's physicians prior to and at the time of implantation. In addition, Ms. Booker contends that Bard's duty to warn is a continuing one, including the duty to warn both her and her physicians, and the duty to warn continued after the date of the first sale of the G2® filter and after implantation of the G2® filter in Ms. Booker.  Ms. Booker further contends that the G2® Filter implanted in her migrated and tilted after it was properly implanted in her vena cava; that the G2® Filter struts perforated through her vena cava and then penetrated into her aorta, psoas muscle and spine; that 3 of the struts of the G2® Filter fractured, and 1 of the 3 struts embolized/migrated to the right ventricle of the heart requiring open heart surgery and repair of the tricuspid valve of the heart; that 1 one of the fractured struts of the

G2® Filter is not able to be removed and remains in Ms. Booker's vena cava; that Ms. Booker's doctors would not have implanted the G2® Filter in her had they been adequately warned about the G2® Filter's unacceptable safety risks and/or would have intervened after implantation of the filter; and, the Defendant's failure to warn about the safety risks of the G2® Filter and/or failure to adequately communicate those risks to her doctors resulted in injury and damage to Ms. Booker.  Lastly, Ms. Booker contends Bard failed to meet its continuing duty to provide adequate warnings and/or adequately communicate those warnings to Ms. Booker and her physicians.

Defendants' Contention:  Defendants contend that their duty was to provide a warning to Dr. D'Ayala, the implanting physician.  The warning provided to Dr. D'Ayala was adequate.   The warnings contained in the G2® Filter IFU were legally adequate because they included the precise risks that Plaintiff experienced here. Further, any failure to warn Dr. D'Ayala was not the proximate cause of Plaintiff's injuries because Dr. D'Ayala was aware of these risks when he implanted the G2® Filter in Plaintiff, and there is insufficient evidence that he would have changed his prescribing decision had Bard provided the additional warnings that Plaintiff contends he should have been given (i.e., that risks associated with Bard's IVC filters were higher than those of competitor devices or the SNF).

d.   **Warning – Proximate Cause**:   Whether any alleged defect in the warning was the proximate cause of Plaintiff's alleged injuries and damages.

Plaintiff's Contention:  Ms. Booker contends that Bard's failure to adequately warn of the dangers arising from its G2® Filter that it

knew or reasonably should have known of, and/or Bard's failure to adequately communicate those dangers to her doctors, caused or contributed to cause her injuries. Additionally, Ms. Booker contends the Defendants have misstated the testimony of Dr. D'Ayala as set forth below, and that the evidence will be established at trial.

Defendants' Contention:  Bard denies that any alleged defect in the G2® Filter or the warning provided caused or contributed to Plaintiff's injuries. There is no evidence that Dr. D'Ayala read the IFU for the filter at issue. Further any failure to warn Dr. D'Ayala was not the proximate cause of Plaintiff's injuries because Dr. D'Ayala was aware of these risks when he implanted the G2® Filter in Plaintiff, and there is insufficient evidence that he would have changed his prescribing decision had Bard provided the additional warnings that Plaintiff contends he should have been given (i.e., that risks associated with Bard's IVC filters were higher than those of competitor devices or the SNF).

e.   **Negligent Design** – Whether Bard was negligent in the design of the filter.

Plaintiff's Contention:  Ms. Booker contends that Bard failed to use that degree of care which is used by ordinary careful persons under the same or similar circumstances in the design and/or testing of the G2® filter that was implanted in her, as well as in warning of the dangers associated with that filter and/or in communicating adequate warnings regarding that filter.  Ms. Booker further contends that the G2® Filter implanted in her migrated and tilted after it was properly implanted in her vena cava; that the G2® Filter struts perforated through her vena cava and then penetrated into her aorta, psoas muscle and spine; that 3 of the struts of the G2® Filter fractured, and

1 of the 3 struts embolized/migrated to the right ventricle of the heart requiring open heart surgery and repair of the tricuspid valve of the heart; that 1 one of the fractured struts of the G2® Filter is not able to be removed and remains in the vena cava; and that Defendants' negligence in the design and/or testing of its filter, and negligent failure to adequately warn of the dangers associated with that filter and/or communicate that warning to her doctors, caused her injury and damage.   Third, there were numerous safer, reasonable alternative IVC filter designs available to Defendants.   Lastly, in response to Defendants' statement below, improper testing of the filter is evidence of their failure to act reasonably and use the proper degree of care, as well as their breach of the duty of care.

Defendants' Contention:  Defendants deny they were negligent in the design of the filter or the warning provided.  Under Georgia law, a jury is to consider the same risk benefit factors for design defect in determining whether there was negligence in the design. Bard denies that the G2® Filter implanted in Plaintiff was defective and unreasonably dangerous. The utility and benefits of the G2® Filter design outweigh the inherent risk of harm in the product design. Further, Bard exercised reasonable care in choosing the design for the G2® Filter after consideration of all relevant factors, including Bard's compliance with federal regulatory standards encompassed in the 510(k) clearance process, and industry wide standards. Lastly, there was no feasible alternative design at the time Bard designed the G2® Filter that would have been safer and provided the same utility for optional retrieval.   There is no claim for "negligent testing" alleged in Plaintiff's Complaint or recognized under Georgia law.

1        f.    **Design Defect Causation:**  Whether a design defect of the G2®
2    Filter was the proximate cause of Plaintiff's injuries and damages.

3    Plaintiff's Contention:  Ms. Booker contends that Bard's negligence
4    caused or contributed to cause her injuries and damages.

5    Defendants' Contention:  Bard denies that any alleged design defect
6    in the G2® Filter caused or contributed to Plaintiff's injuries.

7        g.    **Negligent Failure to Warn:**  Whether Bard was negligent in the
8    warning provided to Ms. Booker's doctors about the risks of the
9    filter.

10   Plaintiff's Contention:  Ms. Booker contends that Bard failed to use
11   that degree of care which is used by ordinary careful persons under
12   the same or similar circumstances in the design and/or testing of the
13   G2® filter that was implanted in her, as well as communicating
14   adequate warnings regarding that filter.  Ms. Booker further contends
15   that the G2® Filter implanted in her migrated and tilted after it was
16   properly implanted in her vena cava; that the G2® Filter struts
17   perforated through her vena cava and then penetrated into her aorta,
18   psoas muscle and spine; that 3 of the struts of the G2® Filter
19   fractured, and 1 of the 3 struts embolized/migrated to the right
20   ventricle of the heart requiring open heart surgery and repair of the
21   tricuspid valve of the heart; that 1 one of the fractured struts of the
22   G2® Filter is not able to be removed and remains in the vena cava;
23   that Ms. Booker's doctors would not have implanted the G2® Filter
24   in her had they been adequately warned about the G2® Filters safety
25   risks and/or would have intervened after implantation of the filter;
26   and that Defendants' negligence in the design and/or testing of its
27   filter, and negligent failure to adequately warn of the dangers
28   associated with that filter and/or communicate that warning to her

11

1   doctors, caused her injury and damage.  Additionally, Ms. Booker

2   contends Bard failed to meet its continuing duty to provide adequate

3   warnings and/or adequately communicate those warnings to Ms.

4   Booker and her doctors.  Lastly, Ms. Booker contends the Defendants

5   have misstated the testimony of Dr. D'Ayala as set forth below, and

6   that the evidence will be established at trial.

7   <u>Defendants' Contention</u>:   Bard denies that it was negligent. Bard

8   acted reasonably in all manners concerning the warnings of the G2®

9   Filter. The warnings contained in the G2® Filter IFU were legally

10  adequate because they included the precise risks that Plaintiff

11  experienced here: filter fracture, movement, migration, embolization,

12  and perforation. Dr. D'Ayala, as well as the entire medical

13  community, was aware of these risks associated with all IVC filters

14  when he implanted the G2® Filter in Plaintiff. Bard was not required

15  to warn of complication rates of the G2® Filter compared to other

16  products on the market, and to do so would not be feasible.

17  h.   **Negligent Failure to Warn – Causation:**   Whether any alleged

18  negligence in providing the warning that accompanied the G2® Filter

19  was a proximate cause of Plaintiff's alleged injuries and damages.

20  <u>Plaintiff's Contention</u>:  Ms. Booker contends that Bard's negligence

21  caused or contributed to cause her injuries and damages.

22  Additionally, Ms. Booker contends the Defendants have misstated

23  the testimony of Dr. D'Ayala as set forth below, and that the

24  evidence will be established at trial.

25  <u>Defendants' Contention</u>:   Bard contends that it provided legally

26  adequate warnings concerning the G2® Filter, particularly in light of

27  the state of the art during the relevant time period. The warnings

28  contained in the G2® Filter IFU were adequate because they

12

1    included the precise risks that Plaintiff experienced here: filter

2    fracture, movement, migration, embolization, and perforation. Dr.

3    D'Ayala was aware of these risks associated with all IVC filters

4    when he implanted the G2® Filter in Plaintiff. Bard was not required

5    to warn of complication rates of the G2® Filter compared to other

6    products on the market, and to do so would not be feasible.

7    i.    **Non-Party at Fault:**  Whether non-party Sarwat Kamal Amer, M.D.

8          was wholly or partially at fault for any injuries and damages to

9          Plaintiff.

10   Plaintiff's Contention:   Ms. Booker contends this is not properly

11   included as a disputed issue of fact.  Defendants cannot meet their

12   burden of proof to submit this issue to the jury.  *See* Disputed Issues

13   of Law, below, which Plaintiff adopts herein.

14   Defendants' Contention:   Bard contends that Dr. Amer was the

15   diagnostic radiologist who read Plaintiff's lumbosacral spine x-ray on

16   March 26, 2009, which showed her G2® Filter had fractured but with

17   all struts remaining adjacent to the filter in the IVC. Dr. Amer failed

18   to properly report the condition of Plaintiff's filter to her treating

19   physicians, and therefore precluded her treating physicians from fully

20   evaluating her medical condition and options for treatment. This

21   failure was a breach of the standard of care governing diagnostic

22   radiologists. This failure constituted the sole proximate cause and/or

23   contributing cause to Plaintiff's injuries and damages, by creating a

24   missed opportunity to remove the filter and any fractured strut

25   through a percutaneous procedure.

26   j.    **Assumption of the Risk:**  Whether Plaintiff assumed the risk of any

27         of the injuries she alleges.

28

13

1   <u>Plaintiff's Contention</u>: Ms. Booker contends this is not properly
2   included as a disputed issue of fact, as the assumption of the risk
3   doctrine is not applicable to the facts, circumstances and claims in
4   this case.   Furthermore, Defendants are asserting the learned
5   intermediary defense in this case. Under this doctrine, the
6   manufacturer has no "duty to warn the patient of the dangers
7   involved with the product, but instead has a duty to warn the patient's
8   doctor, who acts as a learned intermediary between the patient and
9   manufacturer." *McCombs v. Synthes (U.S.A.)*, 587 S.E.2d 594, 595
10   (Ga. 2003) (citing *Ellis v. C. R. Bard, Inc.*, 311 F.3d 1272, 1279-80
11   (11th Cir. 2002)). The manufacturer's warnings to the physician,
12   however, "must be adequate or reasonable under the circumstances of
13   the case." *Id*.  As detailed above, Ms. Booker contends her doctors
14   were not adequately warned and, thus, she was incapable of assuming
15   the risk associated with the G2® Filter.

16   <u>Defendants' Contention</u>:   Bard contends that Dr. D'Ayala made
17   Plaintiff aware of the risks of the filter when he provided her with a
18   written informed consent before implanting the filter, he discussed
19   the risks with her and she executed a written consent form.

20   k.   **Intervening Cause**:   Whether the actions of others caused or
21   contributed to Plaintiff's injuries.

22   <u>Plaintiff's Contention</u>:   Ms. Booker contends this is not properly
23   included as a disputed issue of fact to the extent the treating
24   physicians at issue were not disclosed as non-parties at fault.
25   Furthermore, Defendants cannot meet their burden of proof to submit
26   this issue to the jury regarding Dr. Amer.  *See* Disputed Issues of
27   Law, below, which Plaintiff adopts herein.  Lastly, Ms. Booker
28   contends this is not properly included as a disputed issue of fact

14

based on the facts, circumstances and claims in this case.

Defendants' Contention:   Bard contends that the evidence and testimony shows that there were several missed opportunities by Plaintiff's treating physicians to identify and address the condition of the filter before the strut migrated to her right ventricle.  Further, Dr. Kang and Plaintiff's other treating physicians admit that he damaged her tricuspid valve during his attempts to retrieve the strut embedded in the heart muscle. An open heart procedure was required to damage that repair.   Under Georgia law, the jury is entitled to consider evidence regarding the medical care provided by Ms. Booker's healthcare providers during the course of her medical treatment, and to determine whether such conduct proximately caused or contributed to some or all of her injuries regardless of whether that conduct was "wrongful or negligent." *Jordan v. Everson*, 806 S.E.2d 533, 534 (Ga. 2017).

l.   **Compensatory Damages –** Whether Plaintiff is entitled to damages and, if so, the amount of the damages.

Plaintiff's Contention:  Ms. Booker contends she sustained injuries and damages and is entitled to a damage award for the following: medical expenses, such as hospital, doctor, and medicine bills both in the past and in the future; mental and physical pain and suffering in the past, present and future; and, impairment of bodily or physical faculties in the past, present and future.  Further, Plaintiff contends the alleged facts and conclusions stated by the Defendants below are a misstatement of the evidence.

<u>Defendants' Contention</u>:   Bard contends that no doctor has specifically attributed any abdominal pain that Plaintiff has allegedly experienced to the strut that remains embedded in the wall of her IVC. The pain Plaintiff allegedly experiences in her chest, which she attributes to the surgery to remove the strut from her heart, could have been avoided had the G2® Filter been timely retrieved or had the strut been left embedded in the heart wall muscle.

m.   **Punitive Damages** - Whether Plaintiff is entitled to an award of punitive damages and, if so, the amount of the award.

<u>Plaintiff's Contention</u>:   Ms. Booker contends that there is clear and convincing evidence of Bard's willful misconduct, malice, fraud, wantonness, oppression, and/or that its entire want of care raises the presumption of a conscious indifference to the consequences of its actions, which entitles her to an award of punitive damages.  She is entitled to an award of punitive damages not as compensation, but in a proper amount necessary to punish, penalize or deter Defendants and others in light of the circumstances of the case.

<u>Defendants' Contention</u>:   Bard denies that Plaintiff is entitled to punitive damages. Punitive damages are not warranted because there is no evidence Bard acted with the requisite state of mind in the design of the G2® Filter or in the warnings provided, and Bard otherwise complied with all applicable FDA regulations, which tends

to show that there is no clear and convincing evidence of the requisite state of mind necessary to support an award of punitive damages.

2.      Disputed issues of law:

a.      The following was proposed by Plaintiff as issues of law that are uncontested and stipulated to by the parties, but was not agreed to by Bard:

Strict Liability (General Aspects)

To recover, the person injured by an allegedly defective product must establish that (a) the product was defective, (b) the defect existed at the time the product left the manufacturer's control, and (c) the defect in the product was the proximate cause of the person's injury. See O.C.G.A § 51-1-11; *Banks v. ICI Americas, Inc.*, 450 S.E.2d 671 (Ga. 1994); *SK Hand Tool Corp. v. Lowman*, 479 S.E.2d 103 (1996) (en banc); Council of Superior Court Judges' Suggested Pattern Civil Jury Instructions, 62.610.

The manufacturer of a new product that is defective at the time it leaves the hands of the manufacturer and which proximately causes injury to a natural person is strictly liable for the defect and has the burden of loss shifted to it when loss is caused by the defect. O.C.G.A. §51-1-11(b); *Ellis v. Rich's, Inc.*, 212 S.E.2d 373 (Ga. 1975); *Orkin Exterminating Co., Inc. v. Dawn Food Products*, 366 S.E.2d 792 (Ga. App. 1988).

Failure to Warn (Negligent and Strict Liability):

To establish a failure to warn claim under Georgia law, "the plaintiff must show the defendant had a duty to warn, the defendant breached that duty and the breach was the proximate cause of the plaintiff's injury." *Wheat v. Sofamor*, *S.N.C.*, 46 F. Supp. 2d 1351, 1362 (N.D. Ga. 1999).

17

"[A] manufacturer has a duty to warn of nonobvious foreseeable dangers from the normal use of its product." *Thornton v. E.I Du Pont de Nemours & Co.*, 22 F.3d 284, 289 (11th Cir. 1994) (citations omitted).

The duty to warn arises "whenever the manufacturer knows or reasonably should know of the danger arising from the use of its product." *Chrysler Corp. v. Batten*, 450 S.E.2d 208, 211 (Ga. 1994).

Under Georgia Law, the duty to warn is "breached by (1) failing to adequately communicate the warning to the ultimate user or (2) failing to provide an adequate warning of the product's potential risks." *Thornton*, 22 F.3d at 289.

In cases involving medical devices, Georgia applies the "learned intermediary" doctrine. Under this doctrine, the manufacturer has no "duty to warn the patient of the dangers involved with the product, but instead has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and manufacturer." *McCombs v. Synthes (U.S.A.)*, 587 S.E.2d 594, 595 (Ga. 2003) (citing *Ellis v. C. R. Bard, Inc.*, 311 F.3d 1272, 1279-80 (11th Cir. 2002)). The manufacturer's warnings to the physician, however, "must be adequate or reasonable under the circumstances of the case." *Id.*

The duty to warn is a continuing one and may arise "months, years, or even decades after the date of the first sale of the product." *Watkins v. Ford Motor Co.*, 190 F.3d 1213, 1218 (11th Cir. 1999).

The general rule in Georgia is that the adequacy of a warning is an issue for the jury. *Thornton*, 22 F.3d at 289.

The "question that must be answered by the fact finder is whether the warning

18

given was sufficient or was inadequate because it did not 'provide a complete disclosure of the existence and extent of the risk involved.'" *Watkins*, 190 F.3d at 1220 (quoting *Thornton*, 22 F.3d at 289*); see Cason v. C. R. Bard, Inc.*, 2015 WL 9913809 at *4-5 (N.D. Ga. Feb. 9, 2015); *Cisson v. C. R. Bard, Inc.*, 2013 WL 5700513 at *7-8 (S.D. W. Va. Oct. 18, 2003).

Design Defect (Negligent and Strict Liability):

Under Georgia law, negligent or defective design is generally a jury question. See *Davis v. Glaze*, 354 S.E.2d 845 (Ga. 1987); *Smokey Mountain Enterprises, Inc. v. Bennett*, 359 S.E.2d 366 (Ga. App. 1987).

Under Georgia law, ordinary negligence means the absence of or the failure to use that degree of care that is used by ordinarily careful persons under the same or similar circumstances. For a plaintiff to recover damages from a defendant in such a case, there must be injury to the plaintiff resulting from the defendant's negligence.  See O.C.G.A.§ 51-1-2; Council of Superior Court Judges' Suggested Pattern Civil Jury Instructions, 60.010.

Georgia uses a "risk-utility" test for product liability claims.  *Banks*, 450 S.E.2d at 674.

"A product may be found defective because of its particular design.  Although a manufacturer is not required to ensure that a product design is incapable of producing injury, the manufacturer has a duty to exercise reasonable care in choosing the design for a product."  Council of Superior Court Judges' Suggested Pattern Civil Jury Instructions, 62.640.

To determine whether a product suffers from a design defect, there must be a balancing of the inherit risk of harm in a product design against the utility or benefits of that product design.   There must be a determination whether the manufacturer acted reasonably in choosing a particular product design by considering all relevant evidence, including, but not limited to, the following factors:

- the usefulness of the product;

- the severity of the danger posed by the design;

- the likelihood of that danger;

- the avoidability of the danger, considering the user's knowledge of the product, publicity surrounding the danger, the effectiveness of warnings, and common knowledge or the expectation of danger;

- the user's ability to avoid the danger;

- technology available when the product was manufactured;

- the ability to eliminate danger without impairing the usefulness of the product or making it too expensive;

- the feasibility of spreading any increased cost through product's price or by purchasing insurance;

- the appearance and aesthetic attractiveness of the product;

- the product's utility for multiple uses;

- the convenience and durability of the product;

- alternative designs for the product available to the manufacturer;

- and the manufacturer's compliance with the industry standards and

government regulations.

*Banks*, 450 S.E.2d at 675 n. 6, Council of Superior Court Judges' Suggested Pattern Civil Jury Instructions, 62.650.

In determining whether a product was defective, the jury may consider evidence of alternative designs that would have made the product safer and could have prevented or minimized the plaintiff's injury. In determining the reasonableness of the manufacturer's choice of product design, the jury should consider 1) the availability of an alternative design at the time the manufacturer designed this product; 2) the level of safety from an alternative design compared to the actual design; 3) the feasibility of an alternative design, considering the market and technology at the time the product was designed; 4) the economic feasibility of an alternative design; 5) the effect an alternative design would have on the product's appearance and utility for multiple purposes; and 6) any adverse effects on the manufacturer or the product from using an alternative design.  Council of Superior Court Judges' Suggested Pattern Civil Jury Instructions, 62.660.

In determining whether a product was defective, the jury may consider proof of a manufacturer's compliance with federal or state safety standards or regulations and industrywide customs, practices, or design standards. Compliance with such standards or regulations is a factor to consider in deciding whether the product design selected was reasonable considering the feasible choices of which the manufacturer knew or should have known. However, a product may comply with such standards or regulations and still contain a design defect.  Council of Superior Court Judges' Suggested Pattern Civil Jury Instructions, 62.670.

Punitive Damages:

Under Georgia law, punitive damages may be awarded where "it is shown by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Ga. Code Ann. § 51-12-5.1(b).

Under the conscious indifference standard, "punitive damages are available where a manufacturer knows that its product is potentially dangerous and chooses to do nothing to make it safer or to warn consumers." *Cisson*, 2013 WL 5700513, at *13 (citations omitted).

Punitive damages are awarded not as compensation to a plaintiff but solely to punish, penalize or deter a defendant. *See* O.C.G.A. §51-12-5.1(b),(c); Council of Superior Court Judges' Suggested Pattern Civil Jury Instructions, 66.700, 66.702.

b.     The following was proposed by Defendant as an issue of law that is uncontested and stipulated to by the parties, but was not agreed to by Plaintiff:

The "learned intermediary" doctrine applies to this case.

As to Plaintiff's statement of law in Section 2.a. above, Bard agrees that Georgia law applies to Plaintiff's claims, but does not agree that all of the citations listed by Plaintiff are undisputed or applicable to the facts of this case.  The parties have stipulated to many jury charges and have submitted others with objections, included some cited by Plaintiff herein.

c.     Whether Defendants can meet their burden of proof to submit the non-party fault of Sarwat Kamal Amer, M.D., to the Jury.

<u>Plaintiff's Contention</u>:  Plaintiff contends Bard cannot meet its burden of proof, as it has not disclosed expert testimony or evidence supporting proximate cause for consideration by a jury as required by Georgia law. Under Georgia law, to argue the fault of a non-party such as Dr. Amer, Bard must show that (1) Dr. Amer committed a tort (medical malpractice), and (2) the tort was a proximate cause of Ms. Booker's injuries.  *Zaldivar v. Prickett*, 297 Ga. 589, 591, 774 S.E. 2d 688, 691 (2015).  "A mere showing of negligence without proof of causation" is not sufficient. *Id*. Moreover, causation can only be established though expert testimony, which Bard has not supplied. *Id*.  This issue is addressed in Plaintiff's motion *in limine* No. 13, identified below.

<u>Defendant's Contention</u>:  that this is not an appropriate issue to be addressed in the Pretrial Order because it is the subject of a pending motion in limine and has already been briefed.  In fact, Plaintiff admits the issue is pending before the Court.  Rather than repeat the  arguments set forth in the briefing, Defendants incorporate their response to Plaintiff's motion in limine No. 13 instead.  (Dkt. 10066).

d.    Whether Defendants can offer evidence at trial of the lack of FDA enforcement related to the G2® filter (or any other Bard filter).

<u>Plaintiff's Contention</u>:   Plaintiff contends this evidence is speculative, misleading and highly prejudicial without probative value, as it would allow Bard to improperly insinuate that the lack of such action by the FDA is evidence of the safety and efficacy of the filters, and the reasonableness of Bard's conduct.   Moreover, the knowledge, motivations, intent, state of mind, and purposes of the FDA or FDA officials are inadmissible. *See, e.g., In re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009). Any suggestion or argument based on why the FDA did not take enforcement action against Bard relative to its IVC filters would impermissibly invite the jury to speculate as to what the FDA intended or what the agency or its employees were thinking or aware of.

<u>Defendant's Contention</u>:   Under Georgia law, when a plaintiff claims a design defect in a widely-distributed product, "[t]he fact that . . . [defendant] had never been subjected to regulatory action with respect to the claimed defect . . . tends to negate the allegation that the configuration was a dangerous design." *Browning v. Paccar, Inc.*, 214 Ga. App. 496, 498, 448 S.E.2d 260, 263 (1994).   As such, "evidence that the customary methods for protecting the public from defective [products] had not been instituted in connection with these [products] was relevant to show defendant's design and manufacture was not negligent." *Id.*

Second, with respect to Plaintiff's failure to warn claim, FDA inaction is relevant and admissible to show that a particular risk or risks were "known or reasonably scientifically knowable." *Carlin v. Superior Court*, 13 Cal. 4th 1104, 1114 (1996) ("In appropriate cases, FDA action or inaction, though not dispositive, may be admissible . . . to show whether a risk was known or reasonably scientifically knowable" for purposes of assessing a failure to warn claim); *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. MDL 05 1708 DWF/AJB, 2007 WL 2023569, at *3 (D. Minn. July 6, 2007) (citing *Carlin* and reserving ruling).  That the FDA did not institute enforcement action necessitating such a result is relevant to the reasonableness of Bard's actions in continuing to market the G2® Filter as of the time Plaintiff received her implant, and to show that Bard's conduct did not meet requisite "willful misconduct, malice, fraud, wantonness, oppression, or … conscious indifference" standard for Plaintiff's punitive damages claim. *See* Ga. Code Ann. § 51-12-5.1(b).

Third, as this Court has already suggested, Doc. 9881 at 8, evidence that the FDA did not take enforcement action against Bard is relevant and admissible as rebuttal evidence in the event that Plaintiffs attempt to use FDA-related evidence (such as the FDA warning letter) in an attempt to show wrongdoing by Defendants.   *See generally Broyles v. Cantor*

*Fitzgerald & Co*, No. CV 10-854-JJB-CBW, 2016 WL 4718150, at *2 (M.D. La. Sept. 8, 2016) ("[T]he Court cautions that if CA Funds "opens the door" by putting the S.E.C. investigation at issue to prove Commonwealth's underlying wrongdoing . . . and Stifel Financial's alleged knowledge of liability to CA Funds, then the scope and outcome of the S.E.C. investigation shall be deemed to be fair game and admissible."). Moreover, because the FDA has the power to initiate enforcement actions for violation of FDA regulations, the lack of such an enforcement action is relevant to rebut any allegation or insinuation by Plaintiff that Bard violated any FDA regulation.

e.    Whether Plaintiff can present the testimony of Defendants' withdrawn expert witnesses, Drs. Moritz, Rogers and Stein.

Defendant's Contention:  After the time set by the Court to file motions in limine, Plaintiff designated deposition testimony of three expert witnesses (Dr. Moritz, Dr. Rogers and Dr. Stein) identified by Bard in the MDL, but whom Bard specifically withdrew in this specific case.  Bard objects to the playing of these depositions.  As a consequence, the testimony designated by the plaintiff is not an authorized admission by a party-opponent under Fed. R. Evid. 801(d)(2)(C) and is therefore inadmissible hearsay.  *See Glendale Fed. Bank, FSB v. United States*, 39 Fed. Cl. 422, 425 (1997), cited and followed by *In re Hanford Nuclear Res. Litig.*, 534 F.3d 986, 1016 (9th Cir. 2008).  Under *Glendale*, an expert remains autonomous at the time of his deposition, and he does not become the sponsoring party's agent merely because he has been retained as an expert witness.  *See Glendale*, 39 Fed. Cl. at 424.  If an expert is withdrawn prior to trial, an opposing party may not introduce that witness's deposition testimony as an "admission" by the party.  In the event the Court decides to admit some of this designated testimony, contrary to the rule set forth in *Glendale*,  Bard respectfully wishes to reserve the right to counter-designate other portions of the deposition to place the "sound bites" cited by the plaintiff in

appropriate context. Defendants also object to Plaintiff identifying Dr. Rogers as a fact witness. His deposition testimony is about this treatment and opinions of IVC filter patients who receive the filter in a "trauma" setting. Plaintiff's implant of the her filter was not because of a trauma.

Plaintiff's Contention: Plaintiff contends that the civil litigation process is, at its core, a search for the truth. Defendants designated these physicians as expert witnesses to give opinions both in the MDL generally and in certain specific cases. These witnesses were not consulting experts; to the contrary, they were disclosed, provided expert reports, and were deposed at considerable expense to the Plaintiffs in this litigation. This all occurred months ago. On or about February 5, 2018, following Plaintiff's designation of deposition testimony of these witnesses for trial, the Defendants attempted for the first time to withdraw these experts. Moreover, after withdrawing these experts from this case on the eve of trial, Defendants have now disclosed these physicians as experts in the pending Arizona state court consolidation.

This is nothing more than an improper attempt by the Defendants to conceal and suppress the truth, and one that is not supported by the law. The majority opinion is as follows: "[C]ourts have repeatedly observed that once a party has given testimony through deposition or expert reports, those opinions do not 'belong' to one party or another, but rather are available for all parties to use at trial." *See e.g. NetAirus Technologies, LLC v. Apple, Inc.*, 2013 WL 9570686, at *3 (C.D. Cal. November 11, 2013) (citing *Kerns v. Pro–Foam of South Alabama, Inc.*, 572 F.Supp.2d 1303, 1311 (S.D.Ala.2007)). The cases cited by the Defendants represent the minority position, and are not binding on this Court. The *Glendale* case is a 20-year-old decision by the Court of Federal Claims, and the *In re Hanford* case cited *Glendale* on an unrelated issue – i.e. cross-examination of a witness during trial with prior trial testimony, not use of a withdrawn expert's testimony at trial. Simply put, Ms. Booker is entitled both under

the law and fundamental principles of fairness to present this evidence at trial.  Lastly, Defendants informed Plaintiff they intended to file a motion on this issue nearly a month ago, and no such motion has been filed to date.

f.     Whether evidence of sales and marketing is admissible.

Defendants' Contention:  Because of the time limits for trial and to address 10 witnesses listed by Plaintiff, Defendants raise this issue.  After the time set by the Court to file motions in limine, Plaintiff designated deposition testimony of nine (9) sales and marketing employees or former employees of Bard.   Many of them were not employed at the time of Plaintiff's implant and only one of them (Robert Ferrara) had any contact with the implanting physician. However, that  doctor's testimony is that he does not recall any conversations with the sales representative and he did not rely on any sales or marketing information from Bard.  In fact the Court granted summary judgment on Plaintiff's misrepresentation claim because Plaintiff failed to provide any evidence that the implanting doctor relied on any information from Bard.  (Dkt 8874 at page 14).  As a result any testimony relating to the sales and marketing of Bard filters is not relevant or admissible under rules 401 and 402 and serves no purpose other than to prejudice the jury.  Further, the testimony is not admissible for the jury to determine whether to consider punitive damages because punitive damages must be based on the "conduct that harmed the plaintiff," and not harm caused to others. *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 422-23 (2003); *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007).

Plaintiff's Contention:   This is an evidentiary/admissibility issue, not a disputed issue of law.  This issue should be addressed by Defendants via objections to deposition designation.  Moreover, Defendants were aware of the Court's summary judgment Order over two months prior to the motion in limine deadline in this case – plenty of time to address issues such as this in briefing.  Lastly, the testimony of sales and marketing employees of Bard

is relevant to numerous issues in this case, including without limitation punitive damages, complaint handling, and failure to adequately warn and properly communicate that warning to physicians.  Additionally, under the applicable Georgia law, punitive damages are awarded not as compensation to a plaintiff but solely to punish, penalize or deter a defendant. See O.C.G.A. §51-12-5.1(b),(c); Council of Superior Court Judges' Suggested Pattern Civil Jury Instructions, 66.700, 66.702.

**E.      LIST OF WITNESSES**

1.      Each party understands that it is responsible for ensuring that the witnesses it wishes to call to testify are subpoenaed.  Each party further understands that any witness a party wishes to call shall be listed on that party's list of witnesses; the party cannot rely on the witness having been listed or subpoenaed by another party.

2.      Many of the parties' summaries state that the witness will testify consistent with his/her deposition.  The parties do not waive any objections, and these descriptions are subject to the prior rulings by the Court on motions in limine and the pending motions in limine.  Counsel agrees that they and the witnesses will abide by those rulings.

3.      It is unclear to the parties whether an additional, joint witness list is required given the lists provided in (and as an attachment to) this pretrial order.  The parties have agreed to seek guidance from the Court on that issue at the upcoming case management conference on March 2, 2018.

**Plaintiff's Witnesses**

4.      Defendants have set forth a number of objections and raised several issues in the Section titled "Defendants' Witnesses", below.  Plaintiff does not believe this Pretrial Order is the proper forum for raising those issues, and asserts that many of these

issues are untimely and should have been raised in motions *in limine*. Plaintiff is ready to address any issues the Court wishes to at the upcoming Pretrial Conference on March 2, 2018, and requests the opportunity to brief these issues as needed.

5.      Plaintiff reserves the right to call witnesses for rebuttal as needed.

6.      Witnesses who shall be called at trial (Live and/or by deposition):

**Fact Witnesses:**

Sherr-Una Booker
c/o Gallagher & Kennedy
2575 E. Camelback Road, 11th Floor
Phoenix, Arizona  85016

Sherr-Una Booker is the Plaintiff in this action. She will testify regarding her medical care and treatment, as well as he surrounding and related circumstances; the nature, extent, and severity of her injuries and suffering; the physical and mental pain, suffering and discomfort associated with the injuries; and the impact of the injuries on her life, including without limitation the ongoing emotional and physical impact on her life. Lastly, she will testify consistent with her deposition given in this matter.

Shomari Cottle
c/o Gallagher & Kennedy
2575 E. Camelback Road, 11th Floor
Phoenix, Arizona  85016

Mr. Cottle is Plaintiff's son. He will testify regarding his observations of Plaintiff's daily issues and injuries caused by her G2® filter and the failures of that filter, the overall impact of the injury on her daily activities and quality of life, and Plaintiff's mental and physical condition before and after the implant of her G2® filter. He will also testify consistent with his deposition in this matter.

Marcus D'Ayala, MD
New York Methodist Hospital
Department of Surgery
506 Sixth Street
Brooklyn, NY 11215

Dr. D'Ayala will testify regarding his examinations, care, treatment, observations and diagnosis of Plaintiff related to her IVC filter and resulting injuries and complications, as well as the nature and extent of injuries and complications caused by the failure of Plaintiff's G2® filter.  Plaintiff further anticipates Dr. D'Ayala will testify consistent with his medical records and his deposition taken in this case.

> Richard L. Harvey, MD
> Cardiovascular & Thoracic Surgeons
> 631 Professional Dr., Suite 200
> Lawrenceville, GA 30046

Dr. Harvey will testify regarding his examinations, care, treatment, observations and diagnosis of Plaintiff related to her IVC filter and resulting injuries and complications, as well as the nature and extent of injuries and complications caused by the failure of Plaintiff's G2® filter.  Plaintiff further anticipates Dr. Harvey will testify consistent with his medical records and his deposition taken in this case.

> Brandon Sang Joon Kang, MD
> 1000 Medical Center Blvd.
> Lawrenceville, GA 30046

Dr. Kang will testify regarding his examinations, care, treatment, observations and diagnosis of Plaintiff related to her IVC filter and resulting injuries and complications, as well as the nature and extent of injuries and complications caused by the failure of Plaintiff's G2® filter.  Plaintiff further anticipates Dr. Kang will testify consistent with his medical records and his deposition taken in this case.

> Salil J. Patel, MD
> 755 Walther Rd.
> Lawrenceville, GA 30046

Dr. Patel will testify regarding his examinations, care, treatment, observations and diagnosis of Plaintiff related to her IVC filter and resulting injuries and complications, as well as the nature and extent of injuries and complications caused by the failure of Plaintiff's G2® filter.  Plaintiff further anticipates Dr. Patel will testify consistent with his medical records and his deposition taken in this case.

1

> Shari Allen (O'Quinn)
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

2

3

Ms. Allen was the Regulatory Affairs Manager for BPV in 2004 and the Director of Regulatory Affairs and Clinical for BPV in 2005 and 2006.  Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her depositions taken on November 2, 2010, in *Newton v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2009-019232, and October 9, 2013, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC.

4

5

6

7

8

> William Altonaga, M.D.
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

9

10

Dr. Altonaga was a consultant to and acting Medical Director for C.R. Bard beginning in 2001 and into 2004.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on October 22, 2013, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC.

11

12

13

14

> Murray R. Asch, M.D.
> c/o Lakeridge Health Corporation
> Director of Interventional Radiology
> 580 Harwood Ave. S
> Oshawa, ON L1S 2J4

15

16

17

Dr. Asch is an Interventional Radiologist who was involved in a pilot study to assess the retrievability of the Recovery filter.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his study and work with Bard, as well as his depositions taken on May 2, 2016, in *In re Bard IVC Filters Prod. Liab. Litig.*, MDL No. 2641, United States District Court, District of Arizona ("the Bard IVC Filter MDL") and January 5, 2011, in *Lindsay, et al. v. C.R. Bard, Inc., et al.*, United States District Court, Southern District of New York, Case No. 1:09-cv-05475-SHS.

18

19

20

21

22

> Robert M. Carr, Jr.
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

23

24

Mr. Carr has been an employee at BPV since 2002; prior to that, he was an employee at NMT working on filters.  At BPV, he was the Program Director for Research & Development from 2002 through 2010, Director Research & Development Biopsy from 2010 through 2012, Senior Director Research & Development Biopsy & Imaging from 2013 through 2014, and Vice President International since 2015.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with NMT and Bard and his depositions taken on March 18, 2016, and January 19, 2017, in the

25

26

27

28

31

Bard IVC Filter MDL; May 8, 2007, in *Hutson v. C.R. Bard, Inc., et al.*, Commonwealth of Kentucky, McCracken Circuit Court, Division II, Case No. 06-CI-680; March 4, 2010, in *Campbell v. C.R. Bard, Inc.*, Commonwealth of Kentucky, Scott Circuit Court, Division I, Case No. 08-CI-00541; September 23, 2010, in *Vedas v. C.R. Bard, Inc.*, et al., Superior Court of Arizona, Maricopa County, Case No. CV2010-019655; September 14, 2012, in *Albrecht, et al. v. Bard Peripheral Vascular, Inc.*, Circuit Court of Greene County, Missouri, Case. No. 1031-cv10504; April 17, 2013, in *Bouldry, et al. v. C.R. Bard, Inc., et al.*, United States District Court, Southern District of Florida, Case No. 12-809-51-CIV-Rosenbaum; October 25, 2013, in *Anderson v. C.R. Bard, Inc., et al.*, United States District Court, Eastern District of New York, Case No. CV11-2632 (DRH); November 5, 2013, in *Giordano v. C.R. Bard, Inc.*, et al., Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC; December 19, 2013, in *Payne v. C.R. Bard, Inc., et al.*, United States District Court, Middle District of Florida, Orlando Division, Case No. 6:11-cv-01582-Orl-37GJK; October 29, 2014, in *Tillman v. C.R. Bard, Inc.*, United States District Court, Middle District of Florida, Jacksonville, Case No. 3:13-cv-222-J-34-JBT; and December 19, 2014, in *Kilver v. C.R. Bard, Inc.*, United States District Court, Central District of Illinois, Case No. 1:13-cv-01219-MMM-JAG.

> Andrzej Chanduskzko
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Chandskzko has been an employee of BPV since 2002; prior to that, he was an employee at NMT working on IVC filters. At BPV, he was a Senior Engineer, Research & Development Staff Engineer from 2004 through 2008, Staff Engineer from 2009 through 2014, and Principal Engineer since 2015. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and NMT, as well as his depositions taken on September 22, 2010, in *Vedas v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-019655, June 21, 2013, in *Anderson v. C.R. Bard, Inc., et al.*, United States District Court, Eastern District of New York, Case No. CV11- 2632 (DRH), October 10, 2013, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-WGC, and April 23, 2015, in *Arnold, et al. v. C.R. Bard, Inc., et al.*, United States District Court, Northern District of Texas, Dallas Division, Case No. 5:13-cv-00609-HLH.

> David Ciavarella, M.D.
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Dr. Ciavarella has been Vice President Corporate Clinical Affairs at C.R. Bard since 2004. Plaintiff expects that he is knowledgeable regarding the matters that were the

subject of his employment with Bard and depositions taken on March 1, 2011, and August 29, 2012, in *Tyson v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010- 011149, November 12, 2013, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC, and July 29, 2014, in *Coker v. C.R. Bard, Inc., et al.*, United States District Court, Northern District of Georgia, Atlanta Division, Case No. 1:13-cv-0515.

> Len DeCant
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. DeCant was Vice President Research & Development for BPV from 2002 to 2007. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on May 24, 2016, in the Bard IVC Filter MDL.

> David Dimmit
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Dimmit is the Vice President and Group Controller at C.R. Bard; Plaintiff expects that he is knowledgeable regarding matters that are/were subject to his employment with Bard and his deposition was taken on January 26, 2017 as to the defendants' financial status, assets, and net worth. Plaintiff does not anticipate use of Mr. Dimmit's testimony unless there is a finding of punitive conduct and the trial proceeds to a punitive damages phase pursuant to O.C.G.A. 51-12-5.1.  In accordance with CMO 30, Plaintiff intends to take a supplemental deposition of a person with knowledge pursuant to F.R.C.P. 30(b) in order to supplement the subject matter to which Mr. Dimmit testified in early 2017. Plaintiff is not currently aware of that witness' identity or if Mr. Dimmit will be produced again.

> Mary Edwards
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Edwards was Vice President Regulatory Affairs/Clinical Affairs at C.R. Bard from 1999 to 2005.  Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her depositions taken on January 20, 2014, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC, and August 19, 2016, in the Bard IVC Filter MDL.

> Robert Ferrara
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Ferrara was the Bard sales representative who called on and made presentations to Plaintiff's treating physicians during the relevant time period.  Plaintiff expects Mr. Ferrara will testify on the subject matter of his employment at Bard, and consistent with his deposition given in this case.

> Christopher Ganser
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Ganser was Vice President, Regulatory Science at C.R. Bard from 2005 through 2006 and Vice President Quality, Environmental Services, & Safety from 2007 through 2010. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on February 28, 2011, in *Newton v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2009-019232, September 9, 2013, in *Anderson v. C.R. Bard, Inc., et al.*, United States District Court, Eastern District of New York, Case No. CV11-2632 (DRH), and October 11, 2016, in the Bard IVC Filter MDL.

> David Mickey Graves
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Graves was an Engineer at BPV beginning in 2004 to at least 2014.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on February 27, 2014, in *Ocasio, et al. v. C.R. Bard, Inc., et al.*, United States District Court, Middle District of Florida, Tampa Division, Case No. 8:13-cv-01962-DSM-AEP.

> Janet Hudnall
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Hudnall was an employee at BPV from 1998 to 2008, and has recently become employed by Bard again; she held positions as Product Development Engineer, Product Manager, and Marketing Manager.  Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her depositions taken on November 3, 2010, in *Newton v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2009-019232, and November 1, 2013, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-WGC.

> Brian Hudson
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Hudson was an employee at BPV from 1999 to 2012; he held positions as Quality Engineer, Senior Risk Manager, and Associate Director Quality Assurance.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on January 21, 2011, in *Tyson v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-011149, and January 17, 2014, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC.

> Krishna Kandarpa, M.D.
> National Institute of Health
> Bethesda, MD 20892

Dr. Kandarpa was the Medical Monitor for Bard's EVEREST Retrievability Study. Plaintiff expects he is knowledgeable about and will provide testimony concerning the EVEREST Study and all documents related to the same, including his observations, his concerns and findings, complications and adverse events that occurred during the study, design and purpose of the study, his recommendations to and interactions with Bard and its representatives/agents based on the study, and all other related facts and circumstances.

> Thomas Kinney, MD, MSME
> c/o Gallagher & Kennedy
> 2575 E. Camelback Road, 11th Floor
> Phoenix, Arizona  85016

Dr. Kinney is an Interventional Radiologist who was a consultant, key opinion leader and invited panel member for Bard on IVC filters. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his relationship with Bard, and will testify consistent with expert report and deposition given in this litigation.  He is also disclosed as an expert, below.

> Bill Little
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Little was Vice President of Global Marketing at BPV from 2008 through 2011. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on July 21, 2016, in the Bard IVC Filter MDL.

Chad Modra
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Modra was Director Quality Assurance and Vice President Quality Assurance at BPV from 2011 through 2014. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on March 28, 2013, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJWGC, June 6, 2014, in *Ocasio, et al. v. C.R. Bard, Inc., et al.*, United States District Court, Middle District of Florida, Tampa Division, Case No. 8:13-cv-01962-DSM-AEP, and December 15, 2015, and January 20, 2016, in the Bard IVC Filter MDL.

Frederick B. Rogers, M.D.
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Dr. Rogers was the author of a large study establishing that IVC filters do not reduce the rate of PE in trauma patients.   Plaintiff further expects that he is knowledgeable regarding the matters that were the subject of his deposition taken on July 18, 2017, in *In re:  Bard IVC Filters Products Liability Litigation*, No. MD-15-02641-PHX-DGC, and will testify consistent with that deposition.  He is also disclosed as an expert, below.

Gin Schulz
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Schulz was Vice Present Quality Assurance at BPV from 2005 to 2011 and in the Quality Assurance department at C.R. Bard since 2011, including as Vice President Quality Assurance. Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her depositions taken on September 13, 2013, in *Anderson v. C.R. Bard, Inc., et al.*, United States District Court, Eastern District of New York, Case No. CV11-2632 (DRH), and January 30, 2014, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-WGC.

Carol Vierling
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Vierling was the Director, Regulatory Affairs at BPV from 1994 through 2002. Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her deposition taken on May 11, 2016, in the Bard IVC Filter MDL.

1

2           Steve Williamson
            c/o Counsel for Bard Peripheral Vascular and C.R. Bard
3

4    Mr. Williamson has been President at BPV since 2012. Plaintiff expects that he is

5    knowledgeable regarding the matters that were the subject of his employment with Bard
     and his deposition taken on September 7, 2016, in the Bard IVC Filter MDL.
6

7           Natalie Wong
            c/o Counsel for Bard Peripheral Vascular and C.R. Bard
8

9    Ms. Wong has been an employee of BPV since 2004; she has held positions as Quality

10   Engineer, Field Assurance Quality Engineering Manager, Quality Engineering Manager,
     and Senior Quality Engineer, New Product Development. Plaintiff expects that she is
11   knowledgeable regarding the matters that were the subject of her employment with Bard

12   and her depositions taken on September 21, 2010, in *Vedas v. C.R. Bard, Inc., et al.*,

13   Superior Court of Arizona, Maricopa County, Case No. CV2010-019655, and October 18,
     2016, in the Bard IVC Filter MDL.
14

15          Expert Witnesses:

16          Rebecca Betensky, Ph.D.
            655 Huntington Avenue
17          Building II, Room 421
            Boston, MA  01225
18

19   Dr. Betensky is a biostatistician.  Dr. Betensky is expected to testify about her analysis

20   and data relating to complication rates of Bard's defective IVC filter, various design
     failure modes effects analysis documents, and about various filter migration test results.
21   Dr. Betensky will testify consistent with her deposition and expert report.  Further, Dr.

22   Betensky will testify about the foundation and bases for her opinions, including her

23   review of medical and scientific literature, Bard documents, and other information she has
     reviewed and relied upon.  Dr. Betensky will also respond to opinions and testimony of
24   defense experts.

25          Darren R. Hurst, M.D.
            c/o Gallagher & Kennedy
26          2575 E. Camelback Road, 11th Floor
            Phoenix, Arizona  85016
27

28   Dr. Hurst is Plaintiff's vascular and interventional radiologist expert.  Dr. Hurst is
     expected to testify as to the Defendants' liability and the design problems associated with

the IVC filter, causation, and damages.   Dr. Hurst will testify consistent with his deposition and expert report in this case.   Further, Dr. Hurst will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon. Dr. Hurst will also provide foundational testimony for Plaintiff's medical illustrations and animations.  Dr. Hurst will also respond to opinions and testimony of defense experts.

> David A. Kessler, M.D.
> c/o Gallagher & Kennedy
> 2575 E. Camelback Road, 11th Floor
> Phoenix, Arizona  85016

Dr. Kessler is a medical doctor and former FDA commissioner.  Dr. Kessler is expected to testify consistent with his expert report and depositions.  Further, Dr. Kessler will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon.   Plaintiff also anticipates that Dr. Kessler will also respond to opinions and testimony of defense experts.

> Thomas Kinney, MD, MSME
> c/o Gallagher & Kennedy
> 2575 E. Camelback Road, 11th Floor
> Phoenix, Arizona  85016

Dr. Kinney is an interventional radiology expert for Plaintiff.  Dr. Kinney is expected to testify about the general liability of the Bard defendants.  Dr. Kinney will further testify consistent with his deposition and expert report in this litigation.  Further, Dr. Kinney will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon.  Dr. Kinney will also respond to opinions and testimony of defense experts.

> Robert McMeeking, Ph.D.
> c/o Gallagher & Kennedy
> 2575 E. Camelback Road, 11th Floor
> Phoenix, Arizona  85016Dr.

McMeeking is a materials and mechanical engineer and is experienced in safety, reliability and effectiveness of biomedical implant devices.  Dr. McMeeking is expected to testify that the design of the G2® filter is inherently dangerous and prone to numerous

failure modes.  There are safer alternative designs which were available to Defendants. Dr. McMeeking is expected to testify and describe alternative designs of IVC filters including the Simon Nitinol filter, which are feasible and reduce the tendency to tilt, perforate, migrate, fracture and otherwise fail.

Dr. McMeeking is expected to testify about his analyses and calculations which predict stress, strain, and strength of the Bard G2® vena cava filter.  He will explain why the filter testing conducted by Defendants was inadequate and misleading.  Further, Dr. McMeeking will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon.  Dr. McMeeking is also expected to testify about the following:

- The G2® IVC filter has a design that makes it prone to migration, tilting and perforation/penetration through the vena cava.

- The driving force for tilting is the relaxation of strain energy in the filter.

- Tilting allows arms and legs to spread out, thereby reducing the strain and strain energy in the filter.

- The filter design makes it probable that limbs will perforate into the wall of the vena cava.

- Pressure applied from the arms and legs of the filter provide the driving forces that lead to penetration in the vena cava walls.

- The filter design causes increased pressure from the arms and legs against the vena cava wall.

- The relatively sharp ends of some arms and legs of the IVC filter can press aggressively into the vena cava wall thereby contributing to higher pressure to the vena cava wall when the filter becomes severely tilted.

- A severely tilted filter will likely perforate the vena cava wall.

- The association between failure modes found with Bard filters.

Dr. McMeeking may also respond to opinions and testimony of defense experts.  In addition, Plaintiff anticipates that Dr. McMeeking will testify consistent with his expert reports and depositions given to date.

Mark Moritz, M.D.

c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Dr. Moritz gave general expert opinions on behalf of Bard in the MDL, as well as case specific opinions in at least one of the MDL bellwethers.    Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his deposition taken on July 18, 2017, in *In re:  Bard IVC Filters Products Liability Litigation*, No. MD-15-02641-PHX-DGC, and will testify consistent with that deposition.


Derek David Muehreke, M.D.
c/o Gallagher & Kennedy
2575 E. Camelback Road, 11th Floor
Phoenix, Arizona  85016

Dr. Muehrcke is a cardiothoracic and vascular surgeon.  Dr. Muehrcke is expected to testify about the liability of the Bard defendants as well as causation and damages caused by the defective IVC filter.  Dr. Muehrcke will testify consistent with his deposition and expert report in this case.  Further, Dr. Muehrcke will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon.  Dr. Muehrcke will also provide foundational testimony for Plaintiff's medical illustrations and animations. Dr. Muehrcke will also respond to opinions and testimony of defense experts.

Frederick B. Rogers, M.D.
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Dr. Rogers gave general expert opinions on behalf of Bard in the MDL, as well as case specific opinions in at least one of the MDL bellwethers.  He was the author of a large study establishing that IVC filters do not reduce the rate of PE in trauma patients. Plaintiff further expects that he is knowledgeable regarding the matters that were the subject of his deposition taken on July 18, 2017, in *In re:  Bard IVC Filters Products Liability Litigation*, No. MD-15-02641-PHX-DGC, and will testify consistent with that deposition.

J. Matthew Sims, MC, MS
c/o Gallagher & Kennedy
2575 E. Camelback Road, 11th Floor
Phoenix, Arizona  85016

1   Mr. Sims is a Vocational Economist expert for the Plaintiff.  He will provide testimony
2   and opinion as to the present value of the life care plan for Plaintiff and projection of costs
3   prepared by Plaintiff's Medical Services Consultant and Life Care Planner expert, Lora
    White.  He will testify consistent with his expert report and deposition given in this case.
4
5              Moni Stein, MD
               c/o Counsel for Bard Peripheral Vascular and C.R. Bard
6
7   Dr. Stein gave general expert opinions on behalf of Bard in the MDL, as well as case
    specific opinions in at least one of the MDL bellwethers.    Plaintiff expects that he is
8   knowledgeable regarding the matters that were the subject of his deposition taken on July
9   31, 2017 in *In re:  Bard IVC Filters Products Liability Litigation*, No. MD-15-02641-
    PHX-DGC, and will testify consistent with that deposition.
10
11             Michael Streiff, M.D.
               c/o Gallagher & Kennedy
12             2575 E. Camelback Road, 11th Floor
13             Phoenix, Arizona  85016

14  Dr. Streiff is a hematology expert for Plaintiff.  Dr. Streiff is expected to testify about the
15  general liability of the Bard defendants, including without limitation the risk versus
16  benefit analysis associated with the use of IVC filters.  Dr. Streiff will further testify
    consistent with his deposition and expert report in this litigation.  Further, Dr. Streiff will
17  testify about the foundation and bases for his opinions, including his review of medical
18  and scientific literature, medical and scientific literature he has authored and the
19  associated research, Bard documents, and other information he has reviewed and relied
    upon.  Dr. Streiff will also respond to opinions and testimony of defense experts.
20             Lora K. White, RNBC, BSN, CCM, CNLCP
21             c/o Gallagher & Kennedy
               2575 E. Camelback Road, 11th Floor
22             Phoenix, Arizona  85016
23
24  Ms. White is a Medical Services Consultant and Life Care Planner expert for the Plaintiff.
    She prepared a life care plan for Plaintiff and projection of costs for the same arising from
25  the injuries and damages caused by the failure of Plaintiff's Bard G2® filter.  She will
26  testify consistent with her expert report and deposition given in this case.
27      7.  Witnesses who may be called at trial (Live and/or by deposition):
28
               Brett Baird

41

c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Baird was a Senior Product Manager for BPV in 2007 and a Marketing Manager for BPV from 2008 through 2011.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on June 9, 2016, in the Bard IVC Filter MDL.

Brian Barry
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Barry was the Vice President Regulatory/Clinical Affairs for Bard Access Systems from 1994 through 1997, Vice President Corporate Regulatory Affairs for C.R. Bard from 1997 through 2000, and Vice President of Regulatory Affairs and Clinical Affairs for C.R. Bard from 2003 to 2007.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on January 31, 2014, in *Jones v. C.R. Bard, Inc.*, United States District Court, Northern District of Texas, Dallas Division, Case No. 3:13-cv-00599-K.

Kevin Boyle
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Boyle was Vice President of Research & Development at BPV from 2013 through 2015.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on February 2, 2017, in the Bard IVC Filter MDL.

Gary S. Cohen, M.D.
Temple University
Medicine Education and Research Building (MERB)
3500 N. Broad Street
Philadelphia, PA 19140

Dr. Cohen is an Interventional Radiologist at Temple University Hospital.  He was a consultant and key opinion leader for Bard on IVC filters.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his deposition taken on January 25, 2017, in the Bard IVC Filter MDL.

Robert Cortelezzi
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Cortelezzi was an employee at BPV from approximately 1990 to 2008; he was a Regional Manager from 2004 through 2008.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on November 11, 2016, in the Bard IVC Filter MDL.

1

2       Thomas Ferari
      c/o Counsel for Bard Peripheral Vascular and C.R. Bard

3

4 Mr. Ferari was an Engineer at BPV.  Plaintiff expects that he is knowledgeable regarding

5 the matters that were the subject of his employment with Bard and his depositions taken
on October 20, 2010, in *Vedas v. C.R. Bard, Inc., et al.*, Superior Court of Arizona,

6 Maricopa County, Case No. CV2010- 019655, and all related cross-noticed cases and

7 April 2, 2014, in *Coker v. C.R. Bard, Inc., et al.*, United States District Court, Northern
District of Georgia, Atlanta Division, Case No. 1:13-cv-0515.

8

9

10       Kay Fuller
      c/o Counsel for Bard Peripheral Vascular and C.R. Bard

11

12 Ms. Fuller was Senior Regulatory Specialist at BPV from 1999 through 2004.  Plaintiff

13 expects that she is knowledgeable regarding the matters that were the subject of her
employment with Bard and her depositions taken on November 9, 2010, in *Newton v. C.R.*

14 *Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2009-

15 019232, and January 11, 2016, in the Bard IVC Filter MDL.

16       Holly Glass
      c/o Counsel for Bard Peripheral Vascular and C.R. Bard

17

18 Ms. Glass was Vice President Government & Public Relations at C.R. Bard from 2002

19 through 2009.  Plaintiff expects that she is knowledgeable regarding the matters that were
the subject of her employment with Bard and her deposition taken on September 23, 2016,

20 in the Bard IVC Filter MDL.

21

22       Jason Greer
      c/o Counsel for Bard Peripheral Vascular and C.R. Bard

23

24 Mr. Greer was a Sales Representative and then District Manager at BPV from 1999

25 through 2007.  Plaintiff expects that he is knowledgeable regarding the matters that were
the subject of his employment with Bard and his depositions taken on June 20, 2010, in

26 *Newton v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No.

27 CV2009-019232, October 22, 2010, in *Vedas v. C.R. Bard, Inc., et al.*, Superior Court of
Arizona, Maricopa County, Case No. CV2010-019655, August 11, 2014, in *Barkley, et al.*

28 *v. C.R. Bard, Inc., et al.*, Arizona Superior Court, Maricopa County, Case No. CV2011-

021250, and September 26, 2011, in *Tyson v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-011149.

>Eric Hairston
>c/o Gallagher & Kennedy
>2575 E. Camelback Road, 11th Floor
>Phoenix, Arizona  85016

Mr. Hairston is Plaintiff's friend.  He will testify regarding his observations of Plaintiff's daily issues and injuries caused by her G2® filter and the failures of that filter, the overall impact of the injury on her daily activities and quality of life, his recollection of conversations Plaintiff had with her physicians while he was present, and Plaintiff's mental and physical condition before and after the implant of her G2® filter.  He will also testify consistent with his deposition in this matter.

>John Lehman, M.D.
>c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Dr. Lehman was Group Medical Director and Vice President of Medical Affairs for C.R. Bard from 1991 to 1995; he was a consultant and acting Medical Director for C.R. Bard in 2003 and 2004.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on April 2, 2013, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-WGC, and all related cross-noticed cases and August 7, 2014, in *Coker v. C.R. Bard, Inc., et al.*, United States District Court, Northern District of Georgia, Atlanta Division, Case No. 1:13-cv-0515.

>Frank Lynch, M.D.
>Penn State College of Medicine
>500 University Drive
>Hershey PA 17033

Dr. Lynch is an Interventional Radiologist at Penn State Hospital. He was a consultant and key opinion leader for Bard on IVC filters. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his relationship with Bard and his deposition taken on January 30, 2017, in the Bard IVC Filter MDL.

>John McDermott
>c/o Counsel for Bard Peripheral Vascular and C.R. Bard

1
2
3
4
5

Mr. McDermott was President of BPV from 1996 through 2006.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on November 1, 2010, in *Tyson v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-011149, and February 5, 2014, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC.

6
7

> Patrick McDonald
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

8
9
10

Mr. McDonald is an employee of BPV as a Sales Representative and Field Sales Trainer. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his deposition taken on July 29, 2016 in the Bard IVC Filter MDL.

11
12

> Daniel Orms
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

13
14
15

Daniel Orms was an employee of BPV from 1997 through 2012 as a Sales Representative, District Manager, and Regional Manager. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on August 16, 2016, in the Bard IVC Filter MDL.

16
17

> Abithal Raji-Kubba
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

18
19
20

Ms. Raji-Kubba was Vice President Research & Development at BPV from 2007 through 2010 and Vice President Lutonix Technology Center from 2011 through 2012.  Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her deposition taken on July 18, 2016, in the Bard IVC Filter MDL.

21
22

> Michael Randall
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

23
24
25
26

Mr. Randall has been an employee of BPV in the Research & Development department since 2006; he has held several positions, including Engineer, Program Manager, Associate Director, and Director. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on January 18, 2017, and February 2, 2017, in the Bard IVC Filter MDL.

27
28

> Kim Romney
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Romney has been an employee of BPV since 2011 and is presently a Senior Product Manager for Ports and Filters.  Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her depositions taken on August 30, 2016, September 7, 2016, and January 18, 2017, in the Bard IVC Filter MDL.

>    Jack Sullivan
>    c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Sullivan was an employee at BPV from 1994 to 2013; he was in the Sales department and held positions including District Manager and Regional Manager. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on September 16, 2016, and November 3, 2016, in the Bard IVC Filter MDL.

>    Alex Tessmer
>    c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Tessmer was an employee and engineer at BPV in the Research & Development department from 1997 through 2004. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on June 12, 2013, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-WGC.

>    Doug Uelmen
>    c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Uelmen was an employee at C.R. Bard and then BPV from approximately 1981 through 2005; he was Vice President Quality Assurance at BPV from 2003 through 2005. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on October 4, 2013, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC, and May 13, 2014, in *Coker v. C.R. Bard, Inc.*, et al., United States District Court, Northern District of Georgia, Atlanta Division, Case No. 1:13-cv-0515.

>    John Van Vleet
>    c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Van Vleet has been the Vice President Regulatory Affairs/Clinical Affairs at BPV since 2007. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on September 29, 2016, and January 17, 2017, in the Bard IVC Filter MDL.

>    Bryan Vogel

46

1

                  c/o Counsel for Bard Peripheral Vascular and C.R. Bard

2

3

Mr. Vogel has been a Clinical Specialist II for Bard since 2012.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on August 15, 2017, in the Bard IVC Filter MDL.

4

5

                  John Weiland
                  c/o Counsel for Bard Peripheral Vascular and C.R. Bard

6

7

Mr. Weiland has been the President and Chief Operating Officer of C.R. Bard throughout the relevant time period. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on April 23, 2014, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJWGC.

8

9

10

                  John Wheeler
                  c/o Counsel for Bard Peripheral Vascular and C.R. Bard

11

12

Mr. Wheeler has been employed in the Quality Assurance department at BPV since 2012. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on July 29, 2016, in the Bard IVC Filter MDL.

13

14

15

                  Mark Wilson
                  c/o Counsel for Bard Peripheral Vascular and C.R. Bard

16

17

Mr. Wilson worked in the Sales department at BPV from 2006 through 2010 as a sales training manager. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and the deposition taken on January 31, 2017, in the Bard IVC Filter MDL.

18

19

20

       8.     Witnesses who are unlikely to be called at trial (Live and/or by deposition):

21

22

       N/A

23

**Defendants' Witnesses:**

24

Because of the time limits, Defendants request that the following issues be

25

26

addressed during the Pretrial Conference.  The parties have met and conferred on these

27

issues and, as set forth above, Plaintiff does not believe these issues are appropriate for

28

inclusion in this pretrial order:

1.      Defendants request direction from the Court on how witnesses will be presented at trial. Plaintiff has designated testimony from the depositions of 38 of Bard's employees and former employees and has subpoenaed 20 of Defendants' employees to appear at trial.  Defendants request that the full deposition designations (including both Plaintiff's and Defendants' cuts) be played at the time Plaintiff calls the witness. Defendants also request that they be allowed to take any employee called by Plaintiff in her case on direct when Plaintiff has completed her cross examination so that the witness may be excused.  Defendants understand any time use for their deposition cuts or direct examinations of witness called by Plaintiff will count against Defendants' total time for its case.

2.      Defendants object to Dr. Krishna Kandarpa.  He was never disclosed as a fact witness in response to a specific interrogatory asking for the identity of witnesses and the subject matter of their expected testimony.

3.      Defendants object to Plaintiff calling Dr. Thomas Kinney as a fact witness. The Court has previously granted Defendants' motion in limine (Dkt. 9868) to exclude fact evidence regarding Dr. Kinney's consulting work for Bard.  (Dkt. 10075).

4.      Given the large number of Bard employees and former who have been subpoenaed by Plaintiff, and for whom Bard's counsel has accepted subpoenas, and for the efficiency of the trial under the time limits, Defendants request that the parties provide each other with the names of witnesses who will be called live at least 48 hours  in advance of the witness being called, excluding Saturdays and Sundays – meaning that witnesses to be called on Tuesday would be identified on Friday.

5.      Defendants' witnesses who shall be called at trial:

The witnesses, if any, who Defendants "shall call" at trial will be drawn from their "may call" list of witnesses below and are dependent on Plaintiff meeting the burden of proof on her claims.

6.      Witnesses who may be called at trial:

Defendants intend to call only one regulatory expert, but at the time of filing the pretrial order are still addressing availability issues and conflicts with the trial dates Defendants will notify Plaintiff as soon as they have determined which expert is available.

**Bret Baird**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Mr. Baird is a former employee of BPV. While at BPV, Mr. Baird held various positions, including Marketing Manager. In those roles, Mr. Baird was involved with and has personal knowledge of, among other things, BPV's marketing strategies, policies, and practices with regard to certain of Bard's IVC filters. He may also provide testimony that was the subject of his previous deposition testimony.

**Kevin Boyle**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Mr. Boyle is currently the Vice President of Research and Development for BPV. Mr. Boyle may testify about BPV's policies and procedures in place for its research and development of its products, including IVC filters. He may testify regarding the testing, development, and design of Bard's IVC filters. He may also provide testimony that was the subject of his previous deposition testimony.

**Christine L. Brauer, Ph.D.**
Brauer Device Consultants, LLC
Rockville, Maryland 20850
301-545-1990

49

**Expert Witness**

**ubject Matter:** Dr. Brauer may provide expert testimony concerning FDA regulatory requirements, FDA regulatory compliance, the FDA clearance process, and post-clearance monitoring requirements. Dr. Brauer may further testify about the specific steps Bard followed to obtain FDA clearance of its IVC filters, and Bard's compliance with post-clearance monitoring requirements. To the extent that evidence related to the FDA Warning and 483 Letters is admitted, Dr. Brauer may testify regarding the same. Dr. Brauer is expected to offer opinions and testify consistent with her expert report(s) served in the MDL, and her previous deposition testimony.

**Paul Briant, Ph.D., P.E.**
Exponent
149 Commonwealth Drive
Menlo Park, CA 94025
650-326-9400

**Expert Witness**

**Subject Matter:** Dr. Briant is a mechanical engineer who specializes in mechanical engineering, solid mechanics, and finite element analysis (FEA) of structures, including medical devices. He is a Principal Engineer with Exponent Failure Analysis Associates. Dr. Briant may provide expert testimony on mechanical engineering, solid mechanics, and finite element analysis (FEA). He may respond to assumptions, opinions, and testimony offered by Plaintiff's expert Dr. McMeeking. Dr. Briant is expected to offer opinions and testify consistent with his expert report(s) served in the MDL, and his previous deposition testimony.

**Robert Carr**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Mr. Carr is currently Vice President of International at BPV. He previously held the title of Senior Director of Research and Development at BPV, with responsibility for IVC filters. Mr. Carr may provide testimony regarding biomedical and biomechanical engineering generally, as well as testimony regarding the design, development, manufacture, testing, clearance, evolution, and use of Bard filters, specifically. Mr. Carr may also provide testimony that was the subject of his previous deposition testimony or the subject of declarations/affidavits he has submitted in this action.

**Andre Chanduszko**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Mr. Chanduszko is an employee of BPV working as a staff engineer with responsibilities related to the design, development, and testing of IVC filters. Mr. Chanduszko may provide testimony regarding biomedical and biomechanical engineering generally, as well as testimony regarding the design, development, manufacture, testing, clearance, evolution, and use of Bard filters, specifically. Mr. Chanduszko may also provide testimony that was the subject of previous disclosures or his previous deposition testimony.

**David Ciavarella, M.D.**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Dr. Ciavarella is an employee of C. R. Bard, Inc. He is currently Vice President, Corporate Clinical Affairs at Bard, and he has held that title since he began working for C. R. Bard in 2004. Dr. Ciavarella may testify concerning any and all apsects of Bard's clinical affairs policies, procedures, and practices that are, or have been, in place with respect to Bard's IVC filters. Dr. Ciavarella may also provide testimony that was the subject of his previous deposition testimony.

Based on reports received by Bard, Dr. Ciavarella may also testify concerning the rates of complications with Bard's IVC filters and analyses performed by Bard regarding adverse event rates. Dr. Ciavarella may also testify that the complication rates reported to Bard remain below the guidelines established by the Society of Interventional Radiologists and Bard's action limits. He may also provide testimony that was the subject of his previous deposition testimony.

**Daniel Cousin, M.D.**
4801 Linton Blvd,
Suite 11A, Box 490
Delray Beach, FL 33445
646-303-3125

**Expert Witness**

**Subject Matter:** Dr. Cousin is currently the Clinical Director and staff radiologist at Bayview Radiology. Dr. Cousin will testify as to the standard of care for diagnostic radiologists and the fact that Dr. Sarwat Kamal Amer violated the standard of care. Dr. Cousin is expected to offer opinions and testify consistent with his expert report(s) served in this case, and his previous deposition testimony.

**Joni Creal**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Ms. Creal started with BPV in 2009. She is Associate Director of Regulatory Affairs. She may testify about BPV's overall regulatory strategy for its filter lines. She may also testify concerning other regulatory options considered by BPV when it determined the best approach to gain FDA clearance for its products. Ms. Creal may testify regarding communications between the FDA and BPV concerning the clearance process for its filters, and any communication between BPV and the FDA concerning these matters. Ms. Creal may also testify regarding BPV's response to requests from the FDA. Ms. Creal may also testify concerning BPV's decision to conduct clinical trials, and the process and procedures for clinical trials and studies.

Ms. Creal may also testify regarding the steps that BPV took to ensure that the FDA was always abreast of complications, product improvements, and potential changes to IFUs for its filters. In this regard, Ms. Creal may testify regarding BPV's open and frank communications with the FDA and the FDA's appreciation for BPV's openness and honesty.

Ms. Creal may also testify concerning BPV and Bard's strong corporate policy against off-label marketing. In this regard, she may testify regarding the measures undertaken by BPV and Bard to ensure that employees of the corporations did not market any product off-label. Moreover, Ms. Creal may also testify concerning specific actions taken by BPV and Bard if and when they discovered off-label marketing. She may also testify about FAQs and Dear Doctor letters relating to filters and also patient brochures to the extent those become an issue in this case.

Ms. Creal may also testify concerning BPV and Bard's policies concerning monetary gifts and agreements to fund medical studies. She may also testify concerning how these policies reflect BPV and Bard's resolve to ensure that any gift or agreement complies with federal regulations. She may also testify about physician training programs relating to filters and Bard's relationships with certain physicians referred to as key opinion leaders. She may testify concerning FDA's warning letter to Bard regarding its IVC filters, and Bard's responses and actions conducted in response to that letter. Finally, she may testify about studies conducted by Bard relating to safety of its filters.

**John DeFord**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Dr. DeFord is currently Senior Vice President of Science, Technology and Clinical Affairs of C. R. Bard. Dr. DeFord may testify regarding any and all aspects of the design, development, testing, clearance, evolution, and use of Bard filters, including Bard's policies and procedures for design, testing, and evaluation of filters. Dr. DeFord may also provide testimony that was the subject of his previous deposition testimony.

**Audrey Fasching, Ph.D., P.E.**
Anamet, Inc.
26102 Eden Landing Road, Suite 3
Hayward, CA 94545
510-887-8811

**Expert Witness**

**Subject Matter:** Dr. Fasching is a metallurgical engineer with experience in the areas of failure analysis, welding, heat treatment, corrosion and biomaterials, including nitnol. She is a Senior Materials Engineer at Anamet. She may provide expert testimony about the properties and uses of nitinol in medical devices, industry standards for manufacture of medical device grade nitinol, her observations of the various filter conditions through examination of the filter at issue in this case and other Bard IVC filters. Dr. Fashing may respond to assumptions, opinions, and testimony offered by Plaintiff's expert Dr. McMeeking. Dr. Fasching is expected to offer opinions and to testify consistent with her expert report(s) served in the MDL, and her previous deposition testimony.

**David W. Feigal, M.D., M.P.H.**
11806 Barranca Road
Santa Rosa Valley, CA 93012
540-738-2550

**Expert Witness**

**Subject Matter:** Dr. Feigal is a medical doctor with a Master's Degree in Public Health in the fields of epidemiology and biostatistics. Dr. Feigal may provide expert testimony as an epidemiologist regarding the available resources for analysis of complications rates in IVC filters and the limitations of those resources in accurately reporting rates, predicting rates, or comparing rates of those devices. He may respond to assumptions, opinions, and testimony offered by various Plaintiff's experts as they relate to such analyses. Dr. Feigal is expected to offer opinions and testify consistent with his expert report served in the MDL, and his previous deposition testimony.

**Clement J. Grassi, M.D., FSIR**
18 Sussex Road
Winchester, MA 01890
617-732-7263

**Expert Witness**

**Subject Matter:** Dr. Grassi is a medical doctor and is a Fellow of the Society of Interventional Radiology. He is certified in Radiology and holds a Certificate of Added Qualifications in Vascular and Interventional Radiology. From 1985 to 2001, Dr. Grassi held positions of Clinical Fellow, Instructor, and Assistant Professor of Radiology at Harvard Medical School. He is currently affiliated with Hallmark Health and partners Healthcare System. Dr. Grassi may provide expert testimony about the historical use, risks, and benefits of IVC filters; the health conditions that IVC filters are used to treat; and his experience with the Society of Interventional Radiology, specifically including the history and use of the Quality Improvement Guidelines and Practice Parameters relating to IVC Filters that have been published by the SIR. He may also testify about the medical

literature related to IVC filters. He may respond to assumptions, opinions, and testimony offered by various Plaintiff's experts as they relate to the same. Dr. Grassi is expected to offer opinions and testify consistent with his expert report served in the MDL, and his previous deposition testimony.

**Mickey Graves**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Mr. Graves is a Senior Research and Development Engineer with BPV. Mr. Graves may testify about BPV's policies and procedures in place for its research and development of its products, including IVC Filters. He may testify regarding the testing, development, and design of Bard's IVC Filters. He may also testify regarding the evolution of Bard's IVC Filters, including the fact that Bard is constantly evaluating the medical devices it sells, and it is constantly striving to improve the performance of those devices. He may also provide testimony that was the subject matter of his previous deposition testimony.

**Janet Hudnall**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Ms. Hudnall is a former employee of BPV who worked for BPV from 1998 to 2008. While at BPV, Ms. Hudnall held various positions, including Senior Marketing Manager. In those roles, Ms. Hudnall was involved with and has personal knowledge of, among other things, BPV's marketing strategies, policies, and practices with regard to the Bard's IVC filter line of products. Ms. Hudnall may testify concerning BPV's marketing strategies, policies, and practices with regard to the Recovery® and G2® Filters.

Ms. Hudnall may also testify concerning the training provided by BPV to physicians to familiarize them with the implantation and retrieval of the G2® Filter. Ms. Hudnall may also testify concerning BPV's practices and policies regarding complaints that were communicated by users. Ms. Hudnall may also testify concerning BPV's decision to conduct a clinical trial, called the EVEREST Study, and issues and events associated with or related to the EVEREST Study. In this regard, Ms. Hudnall may testify concerning the selection and clearance process for securing investigators and investigation sites, the creation and development of the study protocol, the creation and development of the informed consent form, and the steps taken by BPV to ensure that the study ran properly and according to established guidelines. She may also provide testimony that was the subject of her previous deposition testimony.

**Brian Hudson**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP

201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Mr. Hudson has been an employee of BPV since 1999 as a Quality Engineering Technician, a Senior Engineering Technician, and a Quality Engineer, Mr. Hudson may provide testimony regarding filter risk assessment and analysis, review of testing protocols and regulatory compliance data, and the creation of Failure Modes and Effects Analyses (FMEA) that assess the potential hazards related to filters and the mitigation of those hazards.  He may also provide testimony that was the subject of his previous deposition testimony.

**Judy Ludwig**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Ms. Ludwig is currently Senior Manager of Field Assurance at BPV. Ms. Ludwig may testify regarding any and all aspects of Bard's quality assurance processes that are in place or that have been in place for Bard's retrievable IVC filters. Ms. Ludwig may testify regarding Bard's processes and procedures for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its filters.  She may also testify to certain communications and inspections/audits with FDA.  To the extent that evidence related to the FDA Warning and 483 Letters is admitted, Ms. Ludwig may offer testimony regarding the same. Ms. Ludwig may also provide testimony that was the subject of her previous deposition testimony.

**Chad Modra**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Mr. Modra was formerly Vice President of Quality Assurance at BPV, and is currently Staff Vice President of Operations at C. R. Bard, Inc. Mr. Modra may testify regarding any and all aspects of Bard's quality assurance processes that are in place or that have been in place for Bard's retrievable IVC filters. Mr. Modra may testify regarding Bard's processes and procedures for addressing complaints, including complaint handling, investigations, and MDR reporting for its IVC filters. He may also testify to certain communications and inspections/audits with FDA. To the extent that evidence related to the FDA Warning and 483 Letters is admitted, Mr. Modra may offer testimony regarding the same. Mr. Modra may also provide testimony that was the subject of his previous deposition testimony or the subject of declarations/affidavits he has submitted in this action.

**Christopher S. Morris, M.D.**
Department of Radiology

The University of Vermont Medical Center
111 Colchester Avenue
Burlington, VT 05401
802-847-8359

**Expert Witness**

**Subject Matter:** Dr. Morris is a medical doctor and is a Fellow of the Society of Interventional Radiology. He is certified in Radiology and holds a Certificate of Added Qualifications in Vascular and Interventional Radiology. Dr. Morris is a Professor of Radiology and Surgery at the College of Medicine at the University of Vermont. Dr. Morris may provide expert testimony about the historical use, risks, and benefits of IVC filters; the health conditions that IVC filters are used to treat; alternate treatments for DVT and Pulmonary Embolism; and the medical literature related to IVC filters. Dr. Morris will also testify regarding his personal experience placing and retrieving IVC filters, including Bard IVC filters, and specifically that Bard retrievable filters, including the G2 filter, are safe and effective. He may respond to assumptions, opinions, and testimony offered by various Plaintiff's experts as they relate to the same. Dr. Morris is expected to offer opinions and testify consistent with his expert report(s) served in the MDL, and his previous deposition testimony.

**Shari O'Quinn**

May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Ms. O'Quinn is a former employee of BPV who worked for BPV from 2003 to 2007. Ms. O'Quinn held three different positions while working for BPV, including Manager of Regulatory Affairs, Director of Regulatory Affairs, and Director of Regulatory and Clinical Affairs. Ms. O'Quinn may testify concerning BPV's overall regulatory strategy for its filter lines, including the regulatory approach taken by BPV concerning the G2® Filter. Ms. O'Quinn may testify regarding communications between the FDA and Bard concerning Bard's filters. She may also testify concerning Bard's post-market activities concerning Bard's IVC filters, including investigations, and communications with FDA. She may also provide testimony that was the subject of her previous deposition testimony.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Abithal Raji-Kubba**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Ms. Raji-Kubba was the Vice President of Research and Development for BPV. She was with the company from at least 2007 through 2011. She may testify regarding her involvement in and knowledge of the design modifications that were made to Bard's IVC filter line of products and the premarket testing that was conducted on the modified devices. She may also testify regarding her knowledge regarding why these design changes were needed and if and to what extent they made each IVC filter a safer device and could have been instituted sooner. She may also provide testimony that was the subject of her previous deposition testimony.

**Mike Randall**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Mr. Randall is currently a Director of Research and Development for BPV. Mr. Randall may provide testimony regarding biomedical and biomechanical engineering generally, as well as testimony regarding the design, development, manufacture, testing, clearance, evolution, and use of Bard filters, specifically. Mr. Randall may also provide testimony that was the subject of his previous deposition testimony.

**Kimberly Romney**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Ms. Romney is currently the Senior Product Manager for C. R. Bard, Inc. She may provide testimony regarding BPV's marketing strategies, policies, and practices with regard to Bard's IVC filter line of products. Ms. Romney may also testify regarding communications by Bard to health care providers regarding its filters and changes or revisions to those communications over time. She may also provide testimony that was the subject of her previous deposition testimony.

**Gin Schulz**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Ms. Schulz is a former employee of C. R. Bard, Inc. While at C. R. Bard, Inc., Ms. Schulz was the Staff Vice President of Quality Assurance Operations. Prior to working in this capacity, she worked for BPV as a Vice President of Quality Assurance. Ms. Schulz may testify live at trial regarding any and all aspects of Bard's quality assurance processes that are in place or that have been in place for Bard's IVC filters. Ms. Schulz may testify regarding Bard's processes and procedures for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its filters. Ms. Schulz may also provide testimony that was the subject of her previous deposition testimony.

Based on reports received by Bard, she may also testify regarding the rates of complications with Bard's IVC filters and any analysis performed by Bard regarding adverse event rates. Ms. Schulz may also testify that the complication rates with Bard's commercially available filters (whether fracture, migration, perforation, or tilt) remain below the guidelines established by the Society of Interventional Radiologists and Bard's action limits. She may also testify that, upon receiving reports of adverse events, Bard was and has been proactive in investigating those reports and analyzing whether the risk of fracture for its products is in line with industry standards and guidelines, which it is and always has been. She may also provide testimony that was the subject of her previous deposition testimony.

**Piotr Sobieszczyk, M.D.**
Department of Medicine
Cardiovascular Division
Harvard Medical School
75 Francis St.
Boston, MA 02459
857-307-1991

**Expert Witness**

**Subject Matter:** Dr. Sobieszczyk is currently an Attending Physician in the Cardiovascular Division at Brigham and Women's Hospital and in its Vascular Medicine Section, and serves as an associate director of the Cardiac Catheterization Laboratory and Medical Director of the Vascular Diagnostic Laboratory with an academic appointment as Instructor in Medicine at the Harvard Medical School. Dr. Sobieszczyk has extensive experience treating patients with pulmonary embolism and deep vein thrombosis, including patients with IVC filters over his career spanning from 1997 to present.

Dr. Sobieszczyk will testify as to his experience with IVC filters, the different types of filters, the benefits and risks of IVC filters, including optional filters such as the G2® filter. He will testify regarding the fact that all filters have complications, including migration, perforation, tilt, fracture, occlusion, among others. Dr. Sobieszczyk will respond to opinions and testimony offered by any expert relative to these issues. Dr. Sobieszczyk is expected to offer opinions and testify regarding the Plaintiff and her medical course and treatment as set forth in his expert report served in this case, and his previous deposition testimony.

**Mehdi Syed**

1
2

May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

3

**Fact Witness**

4
5
6
7

**Subject Matter:** Mr. Syed is the current Vice President of Operations Finance at C. R. Bard, Inc. Mr. Syed may testify about the net worth of BPV and C. R. Bard, Inc., as well as the percentage of Bard's revenue attributable to BPV and filter products specifically. Mr. Syed may also testify about the nature of Bard's shareholders and the process and rationale behind dividend payments. He may also provide testimony that is the subject of his deposition tentatively scheduled in the MDL on March 2, 2018.

8
9
10

**Alex Tessmer**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

11

**Fact Witness**

12
13
14
15
16

**Subject Matter:** Mr. Tessmer is a Product Manager at BPV. Mr. Tessmer was previously employed by BPV as an engineer between 1997 and June 2005. In that position, Mr. Tessmer contributed to filter product development occurring during the period 2002 to June 2005. He may provide general testimony regarding mechanical engineering and specific testimony regarding product design, technology development, and materials testing. He may also provide testimony that was the subject of his previous deposition testimony.

17
18
19
20

**Ronald A. Thisted, Ph.D.**
Office of the Provost
The University of Chicago
Levi Hall, Room 432
5801 South Ellis Avenue
Chicago, IL 60637
773-702-5539

21

**Expert Witness**

22
23
24
25
26

**Subject Matter:** Dr. Thisted is a Professor in the Department of Public Health Sciences, the Department of Statistics, the Department of Anesthesia & Critical Care, the Undergraduate College, and the Committee on Clinical Pharmacology and Pharmacogenomics at the University of Chicago. He is an expert in the fields of statistics, biostatistics, mathematics, and epidemiology. He may respond to assumptions, opinions, and testimony offered by various Plaintiff's experts as they relate to the same. Dr. Thisted is expected to offer opinions and testify consistent with his expert report served in the MDL, and his previous deposition testimony.

27
28

**Donna-Bea Tillman, Ph.D., MPA, FRAPS**
Biologics Consulting
400 N. Washington Street, Suite 100

Alexandria, Virginia 22314
703-739-5695

**Expert Witness**

**Subject Matter:** Dr. Tillman may provide expert testimony concerning FDA regulatory requirements, FDA regulatory compliance, the FDA clearance process, and post-clearance monitoring requirements. Dr. Tillman may further testify about the specific steps Bard followed to obtain FDA clearance of its IVC filters, and Bard's compliance with post-clearance monitoring requirements. To the extent that evidence related to the FDA Warning and 483 Letters is admitted, Dr. Tillman may testify regarding the same. Dr. Tillman is expected to offer opinions and testify consistent with her expert report(s) served in the MDL, and her previous deposition testimony.

**John Van Vleet**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Mr. Van Vleet an employee of BPV. While at BPV, Mr. Van Vleet has been the Vice President of Regulatory and Clinical Affairs since 2007. Mr. Van Vleet may testify concerning any and all aspects of Bard's clinical affairs policies, procedures, and practices that are, or have been, in place with respect to Bard's IVC filters. Mr. Van Vleet may also testify regarding the regulatory clearance process and communications between the FDA and BPV. Mr. Van Vleet may also provide testimony that was the subject of his previous deposition testimony or the subject of declarations/affidavits he has submitted in this action.

**Bryan Vogel**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Mr. Vogel is a Principal Clinical Assurance Specialist at BPV. He may testify regarding his role and Bard's processes, procedures, and practices for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its filters. He may also testify regarding the qualifications and training of BPV's Field Assurance personnel. He may also provide testimony that was the subject matter of his previous deposition testimony.

**John Wheeler**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

60

**Subject Matter:** Mr. Wheeler is a former Field Assurance Engineering Manager at BPV. He may testify regarding Bard's processes, procedures, and practices for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its filters. He may also testify regarding the qualifications and training of BPV's Field Assurance personnel. He may also testify regarding BPV's tracking and trending of complaints regarding Bard IVC filters. He may also provide testimony that was the subject matter of his previous deposition testimony.

**Steven Williamson**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Mr. Williamson is the current President of BPV. Mr. Williamson may testify concerning BPV's broad and overarching policies as a company and specifically concerning Bard's IVC filters, including, but not limited to, the companies' business practices, research and development, manufacturing, marketing and sales policies, and regulatory strategies and policies. Mr. Williamson may also provide testimony that was the subject of his previous deposition testimony.

**Natalie Wong**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Ms. Wong is an employee of BPV. She began working for the company in 2002 and has been the Quality Engineering Manager in Field Assurance since 2007. Prior to working in this capacity, she worked for BPV as a Senior Quality Engineer. Ms. Wong may testify regarding any and all aspects of Bard's quality control and field assurance processes that are, or have been, in place for Bard's IVC filters. Ms. Wong may testify regarding Bard's processes and procedures for adverse complaint handling, complaint investigation, trending analysis, root cause analysis, data integrity audits, and design failure mode analysis relating to Bard's IVC filters.

Based on reports received by Bard, she may also testify regarding the rates of complications with Bard's IVC filters and analyses performed by Bard regarding adverse event rates.   She may also provide testimony that was the subject of her previous deposition testimony.

**F.      LIST OF EXHIBITS**

1.      The parties have listed exhibits on their exhibit lists subject to pending motions in limine and other rulings by the Court.  By listing exhibits, the parties do not contend that the exhibits are necessarily admissible and do not intend to waive any objection they have to the admissibility of the same.

2.      The parties have met and conferred on the issue of exchanging and providing to the Courtroom Deputy Clerk with impeachment exhibits 48 hours in advance of the trial.  The parties agree they would like to seek alternative arrangements with the Court, and request the opportunity to discuss this at the pretrial conference.

3.      The following Exhibit Lists are attached hereto:  **Exhibit A** – Plaintiff's Exhibit List with Defense Objections; **Exhibit B** – Defendants' Additional Exhibit List with Plaintiff's and Defendants' Objections.

a.      <u>Defendants' Contention</u>:  Many of the documents listed as potential exhibits were produced by Defendants subject to a Protective Order (Dkt. 268 and 269).  Throughout this litigation the parties have been filing and moving to seal certain documents pursuant to that Order.  However, the Protective Order does not cover the use of documents as exhibits at trial.  (See, Dkt 268, Para, 28).  Defendants raise this issue to preserve it.  Until the exhibits are admitted, Defendants do not know which exhibits, if any, they need to move to seal.  Defendants request that the exhibits be maintained by the Court reporter and not made available publicly throughout the trial and until the Court rules on any motion to seal, and that the Court set a briefing schedule for a post-trial briefing schedule on a motion to seal.

b.    Plaintiff's Contention:    Plaintiff disagrees with this request and contends the exhibits are public record at the time admitted into evidence.  There is a strong presumption towards public access to judicial records. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir.2006); A motion to seal transcripts and evidence adduced at trial must satisfy the "compelling reasons" test, because a trial is a dispositive proceeding. *In re Elec. Arts, Inc.*, 298 Fed. App'x 568, 569 (9th Cir. 2008). Judicial records attached to dispositive motions must meet the "compelling reasons" standard in order for those documents to be sealed. *Kamakana*, 447 F.3d at 1180

4.    The following exhibits are admissible in evidence and may be marked in evidence by the Clerk:

a.    Any exhibit listed in **Exhibits A and B** that is not objected to is agreed to by the parties as admissible.

5.    As to the following exhibits, the parties have reached the following stipulations:

a.    Plaintiff's Exhibits:

The following records are stipulated to be authentic and satisfy the business records exception, but the parties reserve all other available objections:

(i)    Plaintiff's medical records and bills;

b.    Defendants' Exhibits: N/A

5.    As to the following exhibits, the party against whom the exhibit is to be offered objects to the admission of the exhibit and offers the objection stated below:

a. <u>Plaintiff's Exhibits</u>:  See attached **Exhibit A**.

b. <u>Defendants' Exhibits</u>:  See attached **Exhibit B**.

The parties shall submit their exhibit lists in writing, five days before trial, in a format to be designated by the Court at the Final Pretrial Conference, in WordPerfect® 9.0 format either by email to Nancy_Outley@azd.uscourts.gov or on an IBM-compatible computer disk.

6. Each party hereby acknowledges by signing this joint Proposed Final Pretrial Order that any objections not specifically raised herein are waived.

## G. DEPOSITIONS TO BE OFFERED

1. Per the deadline set by the Court, by March 1, 2018, the parties will submit their respective deposition designations to the Court, with the portions to be read or submitted at trial identified by page and line number.[1]  Additionally, the party offering each deposition will provide the Court with a copy of the deposition with the portions of the deposition to be offered highlight in color by March 2, 2018.  If multiple parties are offering the same deposition, the parties will provide only one copy of such deposition containing each party's highlighting in a different color.

2. The parties have included deposition designations subject to pending motions in limine and other rulings by the Court.  By making those designations the parties do not contend that the testimony is necessarily admissible and do not intend to waive any objection they have to the admissibility of the same. Each party hereby acknowledges by signing this joint Proposed Final Pretrial Order that any deposition for

---

[1] Plaintiff will provide a list of the witnesses for which deposition testimony is designated at the time of submission of the designations on March 1, 2018.

which a designation is not provided by March 1, 2018, will not be allowed, absent good cause.

Defendants may offer the following witnesses by deposition designations[2]:

| DEPOSITION DATE | WITNESS |
|---|---|
| March 21, 2017 | Marcus D'Ayala, M.D.* |
| June 20, 2017 | Richard Harvey, M.D.* |
| March 22, 2017 | Salil Patel, M.D.* |
| June 15, 2017 | Brandon Kang, M.D.* |
| June 26, 2017 | Eric Hairston* |
| July 18, 2016 | Abithal Raji-Kubba |
| May 11, 2016 | Carol Vierling* |
| January 20, 2017 | Scott Trerotola, M.D. |
| August 19, 2016 | Mary Edwards* |
| August 7, 2014 | John Lehmann, M.D.* |
| September 16, 2016  November 3, 2016 | Jack Sullivan* |
| February 1, 2017 | William Stavropoulos, M.D. |
| June 2, 2016 | John DeFord |
| January 31, 2014 | Brian Barry |
| January 30, 2014 | Gin Schulz* |
| April 7, 2017 | Robert Ferrara* |
| October 18, 2016 | Natalie Wong*[3] |
| September 23, 2016 | Holly Glass* |

[2] Defendants assert that the witnesses with an * were also designated by Plaintiff. The accuracy of this statement has not been confirmed by Plaintiff.

[3] Ms. Wong lives in the Phoenix area and within 100 miles of the Court, and will only be called by deposition if she is unavailable due to health reasons.

65

| July 29, 2014 | David Ciavarella, M.D.* |
|---|---|

**H.     MOTIONS IN LIMINE (JURY TRIAL)**

All motions *in limine* have been filed and fully briefed.  Those that have not yet been ruled on are set forth in Section I, below.

**I.     LIST OF PENDING MOTIONS**

1.     Defendants' Motion and Memorandum in Support of Motion *in Limine* No.1 to Exclude Evidence of Recovery Filter Complications and Other Complications that are Not Substantially Similar to the Incident at Issue (Doc. 9862)

2.     Defendants' Motion and Memorandum in Support of Motion *in Limine* No. 2 to Exclude Irrelevant and Prejudicial Evidence  Regarding the Development of the Recovery Filter (Doc. 9863)

3.     Defendants' Motion and Memorandum in Support of Motion *in Limine* No. 3 to Exclude Evidence  of FDA Warning Letter (Doc. 9864)

4.     Plaintiff's Motion *in Limine* # 3 and Memorandum in Support to Exclude Descriptions of Filters as "Lifesaving" or "Life-Extending" Devices (Doc. 9867)

5.     Plaintiff's Motion *in Limine* # 4 and Memorandum in Support to Exclude Evidence that IVC Filters are the Gold Standard or Standard of Care Treatment (Doc. 9869)

6.     Plaintiff's Motion *in Limine* # 6 and Memorandum in Support to Exclude Argument or Evidence Regarding Fault of Non-Parties/"Empty Chair" Defense and "Standard of Care" of Plaintiff's Healthcare Providers not Subject to Notice of Non-Party Fault (Doc. 9871)

7.    Plaintiff's Motion *in Limine* #9 and Memorandum in Support to Exclude Evidence of Trade Associations, Societies or Organizations (Doc. 9874)

8.    Plaintiff's Motion *in Limine* # 10 and Memorandum in Support to Exclude Evidence that Defendants Needed FDA Consent Before Adding a Warning to Its Label or Issuing a Recall (Doc. 9875)

9.    Plaintiff's Motion *in Limine* # 13 and Memorandum in Support to Exclude Reference to Alleged Fault of Non-Party Sarwat Kamal Amer, M.D. (Doc. 9878)

10.   Defendants' Amended Motion and Incorporated Memorandum to Seal re Bard's Separate Statement of Facts in Support of Their Motion for Summary Judgment Regarding Preemption, Exhibits A and B to Defendants' Separate Statement of Facts, Exhibits to Ex A - Declaration of Robert Carr, and exhibits to Ex. B - Declaration of John D. Van Vleet. (Doc. 5401)

## J.    PROCEDURES FOR EXPEDITING TRIAL

The parties agree to the following procedures that might expedite trial to the extent possible:    (a) presenting stipulated summaries of work history and professional background and qualifications of witnesses rather than using deposition excerpts.   The parties agree to meet and confer and establish a time before a deposition is played to provide the proposed summary to opposing counsel for review and approval; (b) using summary exhibits in place of voluminous documentary evidence.   The parties agree to meet and confer and establish a time for a summary exhibit is going to be used to provide the proposed summary exhibit to opposing counsel; (c) stipulations on authenticity and

foundation; and (d) using the courtroom technology to expedite the presentation of evidence. The parties will also contact Nancy Outley at 602-322-7645 to arrange a time to visit the courtroom and examine its technology.

**K.    ESTIMATED LENGTH OF TRIAL**

All times set forth by the parties below are approximate and given to the best of counsels' ability. Nothing about these stated times is intended to limit the total time available to either party in the event less time is used for one of the categories, as that time will simply be reallocated to another category.

3 hours for Plaintiff's opening statements and closing arguments

24 hours for Plaintiff(s) case (including Case-in Chief and Cross-Examination)

25 hours for Defendant(s) case in its entirety

1.5 hours for Plaintiff's rebuttal

1.5 hours for Plaintiff's Punitive Damages Case

**L.    JURY DEMAND**

A jury trial has been requested.

    1.    The parties stipulate that the request was timely and properly made;

**M.    JOINT PROPOSED JURY INSTRUCTIONS, JOINT PROPOSED VOIR DIRE QUESTIONS, AND PROPOSED FORMS OF VERDICT FOR JURY TRIALS**

The joint Proposed Jury Instructions, joint Proposed Voir Dire Questions, and Proposed Forms of Verdict shall be filed in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

**N.    CERTIFICATIONS**

The undersigned counsel for each of the parties in this action does hereby certify and acknowledge the following:

1. All discovery has been completed.

2. The identity of each witness has been disclosed to opposing counsel. Defendants cannot stipulate to this and incorporate their objection in Section E.

3. Each exhibit listed herein:  (1) is in existence; (2) is numbered; and (3) will be disclosed and shown to opposing counsel at a later date mutually agreeable to the parties.  The parties agree demonstrative exhibits will be exchanged or made available for inspection at a later date agreed to by the parties.

4. The parties agree and stipulate that the statement of the case used in the juror questionnaire approved by the Court is to be used as the parties' joint statement of the case.

5. The parties have complied in all respects with the mandates of the Court's Rule 16 Scheduling Order and Order Setting Final Pretrial Conference.

6. The parties have made all of the disclosures required by the Federal Rules of Civil Procedure (unless otherwise previously ordered to the contrary).

7.      The parties acknowledge that once this Proposed Final Pretrial Order has been signed and lodged by the parties, no amendments to this Order can be made without leave of Court.

**O.      INFORMATION FOR COURT REPORTER**

In order to facilitate the creation of an accurate record, the Parties will file a "Notice to Court Reporter" **one week before trial** containing the following information that may be used at trial:

1.      Proper names, including those of witnesses.

2.      Acronyms.

3.      Geographic locations.

4.      Technical (including medical) terms, names or jargon.

5.      Case names and citations.

6.      Pronunciation of unusual or difficult words or names.

The parties will also send to the court reporter a copy of the concordance from key depositions.

LOPEZ McHUGH LLP

SNELL & WILMER L.L.P.

By: *s/ Ramon Rossi Lopez*
 Ramon Rossi Lopez
 (admitted *pro hac vice*)
 CA Bar No. 86361
 100 Bayview Circle, Suite 5600
 Newport Beach, California 92660

 Mark S. O'Connor
 GALLAGHER & KENNEDY
 2575 East Camelback Road
 Phoenix, Arizona 85016-9225

 *Attorneys for Plaintiffs*

By: *s/ Amanda C. Sheridan*
 James R. Condo
 Amanda C. Sheridan
 One Arizona Center
 400 E. Van Buren, Suite 1900
 Phoenix, Arizona  85004-2202

 Richard B. North, Jr. (*pro hac vice*)
 Matthew B. Lerner (*pro hac vice*)
 Nelson Mullins Riley
  & Scarborough LLP
 201 17th Street, NW / Suite 1700
 Atlanta, GA  30363

 *Attorneys for C. R. Bard, Inc. and Bard
 Peripheral Vascular, Inc.*

_____

Based on the foregoing,

**IT IS ORDERED** that this Proposed Final Pretrial Order jointly submitted by the parties is hereby **APPROVED** and **ADOPTED** as the official Pretrial Order of this Court.

DATED this ___ day of _____, 2018.

_____
 David G. Campbell
 United States District Judge

71