# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No.  MDL15-2641-PHX-DGC |
| —————————————————— | |
| Sherr-Una Booker, an individual,<br><br>                               Plaintiff,<br>v.<br>C. R. Bard, Inc., a New Jersey corporation; and Bard Peripheral Vascular, Inc., an Arizona corporation,<br><br>                               Defendants. | No. CV-16-0474-PHX-DGC |

## COURT'S PROPOSED FINAL JURY INSTRUCTIONS
## AND VERDICT

DATED:


_____
David G. Campbell
United States District Judge

### 1.4  DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE)

Members of the Jury:  Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

## 1.8  TWO OR MORE PARTIES – DIFFERENT LEGAL RIGHTS

There are two defendants in this case, C.R. Bard, Inc. and Bard Peripheral Vascular.  You should decide the case as to each defendant separately.  Unless otherwise stated, the instructions apply to all parties.

In these instructions I will refer to C.R. Bard, Inc. as "C.R. Bard," and to Bard Peripheral Vascular as "BPV."

## 1.9  WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of the witnesses;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I have instructed you to accept as proved.

## 1.10  WHAT IS NOT EVIDENCE (?)

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1. Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, may say in closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that is excluded or stricken, or that you were instructed to disregard, is not evidence and must not be considered.  In addition some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4. Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

## 2.13 EXPERT OPINION

You have heard testimony from a number of witnesses who testified to opinions and the reasons for their opinions. This opinion testimony is allowed because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

## 2.14 CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE (?)

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

## 2.15 CHARTS AND SUMMARIES RECEIVED IN EVIDENCE (?)

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

## 4.1 CORPORATIONS AND PARTNERSHIPS – FAIR TREATMENT

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

## 4.2 LIABILITY OF CORPORATIONS – SCOPE OF
## AUTHORITY NOT IN ISSUE

Under the law, a corporation is considered to be a person.  It can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

## COURT'S PROPOSED INSTRUCTION

Ms. Booker asserts four claims against C.R. Bard and BPV:  (1) Strict Product Liability – Design Defect; (2) Strict Product Liability – Failure to Warn; (3) Negligent Design; and (4) Negligent Failure to Warn.  I will instruct you on the law that applies to each of these claims.  You should consider each claim separately.

**STIPULATED REQUEST TO CHARGE NO. 2**

**NINTH CIRCUIT INSTRUCTION 1.6, 1.7**

Before I give you instructions about Ms. Booker's specific claims, let me give you a few instructions that will apply to all of the claims.

When a party has the burden of proving any claim or affirmative defense by a "preponderance of the evidence," it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.  You should base your decision on all of the evidence, regardless of which party presented it.

Some instructions will state that you must find that an event or condition or action was the "proximate cause" of Ms. Booker's injury.  Proximate cause means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred.  Thus, when I use the expression "proximate cause," I mean a cause that, in the natural or ordinary course of events, produced Ms. Booker's injury.

In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom.

There may be more than one proximate cause of an event.  Thus, to prove proximate cause, Ms. Booker need not prove that an act or omission was the only cause or the last or nearest cause.  It is sufficient if it combines with another cause resulting in the injury.  However, if an act or omission of any person not a party to the suit was the sole proximate cause of an occurrence, then no act or omission of any party could have been a proximate cause.

**STRICT LIABILITY – DESIGN DEFECT**

**STIPULATED REQUEST TO CHARGE NO. 4, 5, 6 (modified)**

**REQUEST FOR INSTRUCTION NO. 1 (P's version)**

**REQUEST FOR INSTRUCTION NO. 2 (Ds' version)**

Ms. Booker contends that C.R. Bard and BPV are strictly liable because of a defective design of the G2 IVC filter.

The manufacturer of a product that is sold as new property may be liable to any person who is injured because of a defect in the product that existed at the time the manufacturer sold the product. However, a manufacturer of a product is not an insurer, and the fact that a product may cause an injury does not necessarily make the manufacturer liable. To recover damages for strict product liability based on design defect, Ms. Booker must establish the following three elements by a preponderance of the evidence:

(a)     the product was defectively designed;

(b)     the design defect existed at the time the product left the control of C.R. Bard and BPV; and

(c)     the design defect in the product was the proximate cause of the Ms. Booker's injury.

There is not a single general way to define what constitutes a design defect in a product. Whether or not a product is defective is a question of fact to be determined by you, the jury, based on the instruction that I will give you.

Although C.R. Bard and BPV are not required to ensure that a product design is incapable of producing injury, they have a duty to exercise reasonable care in choosing the design for a product.

In determining whether a product was defectively designed, you may consider evidence of alternative designs that would have made the product safer and could have prevented or minimized Ms. Booker's injury. In determining the reasonableness of the product design chosen by C.R. Bard and BPV, you should consider:

1)     the availability of an alternative design at the time C.R. Bard and BPV designed this product;

13

2) the level of safety from an alternative design compared to the actual design;

3) the feasibility of an alternative design, considering the market and technology at the time the product was designed;

4) the economic feasibility of an alternative design;

5) the effect an alternative design would have on the product's appearance and utility for multiple purposes; and

6) any adverse effects on C.R. Bard, BPV, or the product from using an alternative design.

In determining whether a product was defective, you may consider proof of a manufacturer's compliance with federal or state safety and non-safety standards or regulations and industrywide customs, practices, or design standards. Compliance with such standards or regulations is a factor to consider in deciding whether the product design selected was reasonable considering the feasible choices of which the manufacturer knew or should have known. However, a product may comply with such standards or regulations and still contain a design defect.

To determine whether a product suffers from a design defect, you must balance the inherent risk of harm in a product design against the utility or benefits of that product design. You must decide whether the manufacturer acted reasonably in choosing a particular product design by considering all relevant evidence, including the following factors:

1) the usefulness of the product;

2) the severity of the danger posed by the design;

3) the likelihood of that danger;

4) the avoidability of the danger, considering the user's knowledge of the product, publicity surrounding the danger, the effectiveness of warnings, and common knowledge or the expectation of danger;

5) the user's ability to avoid the danger;

6) the technology available when the product was manufactured;

14

7)      the ability to eliminate the danger without impairing the product's usefulness or making it too expensive;

8)      the feasibility of spreading any increased cost through the product's price;

9)      the appearance and aesthetic attractiveness of the product;

10)     the product's utility for multiple uses;

11)     the convenience and durability of the product;

12)     alternative designs for the product available to the manufacturer; and

13)     the manufacturer's compliance with industry standards or government regulations.

If you decide that the risk of harm in the product's design outweighs the utility of that particular design, then the manufacturer exposed the consumer to greater risk of danger than the manufacturer should have in using that product design, and the product is defective. If after balancing the risks and utility of the product, you find by a preponderance of the evidence that the product suffered from a design defect that proximately caused Ms. Booker's injury, then Ms. Booker is entitled to recover.

**STRICT LIABILITY – FAILURE TO WARN**

**STIPULATED REQUEST TO CHARGE NO. 7 (modified)**

**REQUEST FOR INSTRUCTION NO. 4 (P's version)**

**PLAINTIFF'S REQUEST TO CHARGE NO. 4 (Court's version)**

**DEFENDANTS' REQUEST FOR INSTRUCTION NO. 3 (Ds' version)**

Ms. Booker contends that C.R. Bard and BPV are strictly liable because they failed to give adequate warnings regarding the G2 IVC filter.

The manufacturer of a product that is sold as new property may be liable to any person who is injured because of an inadequate warning with respect to the product that existed at the time the manufacturer sold the product. However, a manufacturer of a product is not an insurer, and the fact that a product may cause an injury does not necessarily make the manufacturer liable.

The manufacturer of a medical device does not have a duty to warn the patient of the dangers involved with the product, but instead has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and the manufacturer.

To recover damages for strict liability based on an inadequate warning, Ms. Booker must establish the following three elements by a preponderance of the evidence:

(a)    the warning given with the product was inadequate;

(b)    the inadequate warning existed at the time the product left the control of C.R. Bard and BPV; and

(c)    the inadequate warning was the proximate cause of the Ms. Booker's injury.

There is no a single general way to define what constitutes an inadequate warning in a product. Whether or not a warning is inadequate is a question of fact to be determined by you, the jury, based on the instruction that I will give you.

C.R. Bard and BPV had a duty to give an adequate warning of known or reasonably foreseeable dangers arising from the use of its G2 IVC Filter. C.R. Bard and BPV owe this duty to warn to all physicians whom the manufacturer should reasonably foresee may use the product. Their duty to warn may have been breached by:

a)      failing to provide an adequate warning of the G2 Filter's potential dangers or

b)      failing to adequately communicate to Ms. Booker's physicians the warning provided.

A manufacturer's duty to warn arises when the manufacturer knows or reasonably should know of the danger presented by the use of a product. Therefore, a manufacturer has a continuing duty to adequately warn of defects in a product even after that product has left the control of the manufacturer to be sold or distributed to the consumer.

You must decide whether adequate efforts were made by C.R. Bard and BPV to communicate all risks that were known or reasonably should have been known to C.R. Bard and BPV, to the physician who implanted the G2 Filter in Ms. Booker, and whether the warning that C.R. Bard and BPV communicated was adequate.

A product, however well or carefully made, that is sold without an adequate warning of such danger may be said to be in a defective condition.  If you find by a preponderance of the evidence that C.R. Bard or BPV did not adequately warn when an adequate warning should have been given, and that this inadequate warning proximately caused Ms. Booker's injury, then you may find the G2 Filter to be defective for that reason, and Ms. Booker is entitled to recover.


*[The Court has not included Defendants' "failure to read warning instruction" – Defendants' request No. 4 – in light of Plaintiff's assertion that Dr. D'Ayala said he read the warning.  Defendants may propose an instruction if there is evidence suggesting he did not.]*

## NEGLIGENCE – DESIGN DEFECT

### STIPULATED REQUEST TO CHARGE NO. 3 (design defect)

Ms. Booker claims that C.R. Bard and BPV were negligent in the design of the G2 IVC filter she received.   To recover on this claim, Ms. Booker must prove by a preponderance of the evidence that:

(1)      C.R. Bard and BPV had a duty of reasonable care to Ms. Booker,

(2)      C.R. Bard and BPV breached that duty in the design of the IVC filter,

(3)      the breach was the proximate cause of the her injury, and

(4)      she suffered damages.

Reasonable care is that degree of care that is used by ordinarily careful manufacturers under the same or similar circumstances.

If Ms. Booker has failed to prove any one of the four elements by a preponderance of the evidence, then you must find that C.R. Bard and BPV were not negligent.

## NEGLIGENCE – FAILURE TO WARN

### STIPULATED REQUEST TO CHARGE NO. 3 (failure to ward)

Ms. Booker claims that C.R. Bard and BPV were negligent in failing to warn about the risks of the G2 IVC filter she received.  To recover on this claim, Ms. Booker must prove by a preponderance of the evidence that:

(1)     C.R. Bard and BPV had a duty of reasonable care to Ms. Booker,

(2)     C.R. Bard and BPV breached that duty in the adequacy of the warnings about the IVC filter,

(3)     the breach was the proximate cause of the her injury, and

(4)     she suffered damages.

Reasonable care is that degree of care that is used by ordinarily careful manufacturers under the same or similar circumstances.

If Ms. Booker has failed to prove any one of the four elements by a preponderance of the evidence, then you must find that C.R. Bard and BPV were not negligent.

*[The Court has not included Defendants' "failure to read warning instruction" – Defendants' request No. 4 – in light of Plaintiff's assertion that Dr. D'Ayala said he read the warning.  Defendants may propose an instruction if there is evidence suggesting he did not.]*

## COMPARATIVE FAULT – DR. AMER

## COURT'S INSTRUCTION

## REQUEST FOR INSTRUCTION NO. 3 (P's version, modified)

## STIPULATED REQUEST TO CHARGE NO. 1 (modified)

## STIPULATED REQUEST TO CHARGE NO. 6

C.R. Bard and BPV contend that Ms. Booker's injuries were caused, in whole or in part, by the negligence of Dr. Sarwat Amer.  C.R. Bard and BPV bear the burden of proving Dr. Amer's negligence by a preponderance of the evidence.

If you find that Ms. Booker is entitled to recover for her injury, and you further find that Defendants have shown that the damages sustained by Ms. Booker were caused in whole or in part by the negligence of Dr. Amer, you should consider the negligence of Dr. Amer even though he is not a party to this case.  The verdict form will instruct you to assign a percentage of fault to Dr. Amer if you conclude that he is at fault.  That percentage can be anywhere from zero to 100 percent, and is for you to decide based on the evidence.

To show that Dr. Amer's negligence caused or contributed to Ms. Booker's damages, C.R. Bard and BPV must prove that:

(1)     Dr. Amer had a duty of reasonable care to Ms. Booker,

(2)     Dr. Amer breached that duty,

(3)     the breach was a proximate cause of the Ms. Booker's injury, and

(4)     Ms. Booker suffered damages.

In assessing the conduct of Dr. Amer, the following instructions apply:

(a)  A person professing to practice medicine for compensation must bring to the exercise of the profession a reasonable degree of care and skill.  This means such degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by the profession generally.

(b)  If Dr. Amer, in the treatment and care of Ms. Booker, used that degree of care and skill ordinarily employed by the profession generally under similar conditions and like surrounding circumstances, then Dr. Amer was not negligent.  If, on the other hand, Dr. Amer failed to use such degree of care and skill, he was negligent.

(c) A doctor is presumed to have performed in an ordinarily skillful manner.  C.R. Bard and BPV may overcome this presumption by introducing evidence that Dr. Amer did not treat Ms. Booker in an ordinarily skillful manner.  Expert testimony is usually required to overcome the presumption.

(d)  In order to show that Dr. Amer's alleged negligence was the proximate cause of Ms. Booker's injury, C.R. Bard and BPV must present expert testimony.  An expert's opinion on the issue of whether Dr. Amer's alleged negligence caused Ms. Booker's injury cannot be based on speculation or possibility.  It must be based on reasonable medical probability or reasonable medical certainty.  If you find that the expert's testimony regarding causation is not based on reasonable medical probability or reasonable medical certainty, then C.R. Bard and BPV have not proved that Ms. Booker's injury was proximately caused by Dr. Amer's alleged negligence.

When determining the total amount of Ms. Booker's damages in this case, if any, you should not reduce the damages because of the negligence, if any, of Dr. Amer.  You should instead determine the full amount of Ms. Booker's damages, and the Court, in entering judgment, will allocate those damages according to your allocation of fault among all persons or entities whom you find contributed to Ms. Booker's damages.  The verdict form will help you understand the process of assigning fault.

## INTERVENING CAUSE – DR. KANG

## COURT'S INSTRUCTION

C.R. Bard and BPV contend that the action of Dr. Brandon Kang constituted an intervening cause of Ms. Booker's injuries.  An intervening cause is a cause of Ms. Booker's injury that breaks the chain of causation between C.R. Bard and BPV on one hand, and Ms. Booker on the other hand.  If you find that Dr. Kang's action was an intervening cause of all or part of Ms. Booker's injury, then C.R. Bard and BPV are not the proximate cause of that part of her injury that Dr. Kang unforeseeably caused, and cannot be held liable for that part of her injury.

For C.R. Bard and BPV to prove that Dr. Kang's action was an intervening cause of all or part of Ms. Booker's injury, they must prove by a preponderance of the evidence that:

(1)     Dr. Kang's action was not foreseeable by C.R. Bard and BPV,

(2)     C.R. Bard and BPV did not trigger Dr. Kang's action, and

(3)     Dr. Kang's action was sufficient by itself to cause all or part of the injury.

To eliminate Dr. Kang's action as an intervening cause, it is not necessary that C.R. Bard and BPV anticipated the details of his action and the injury it caused.  It is sufficient if the character of his action could reasonably have been anticipated by C.R. Bard and BPV.

To constitute an intervening cause, C.R. Bard and BPV need not prove that Dr. Kang's action was wrongful or negligent.

*[The Court crafted this instruction in place of Plaintiff's Request to Charge No. 9 and Defendants' Request for Instruction No. 6.  This instruction is based on Jordan v. Everson, 806 S.E.2d 533, 534 (Ga. 2017), Zaldivar v. Prickett, 774 S.E.2d 688, 698 (Ga. 2015), and Coleman v. Atlanta Obstetrics & Gynecology Grp., P.A., 390 S.E.2d 856, 858 (Ga. Ct. App. 1990).]*

## ASSUMPTION OF THE RISK

### DEFENDANTS' REQUEST FOR INSTRUCTION NO. 8 (modified)

C.R. Bard and BPV assert an "assumption of the risk" defense. If Ms. Booker knew of the G2 IVC Filter's defect and was aware of the danger, but nevertheless proceeded unreasonably to make use of the product, she cannot later hold C.R. Bard and BPV responsible for any injury suffered due to taking such a risk.

To establish the defense of assumption of the risk, C.R. Bard and BPV must prove by a preponderance of the evidence that:

1) Ms. Booker knew of the danger posed by the G2 IVC Filter,

2) Ms. Booker understood and appreciated the risks of that product, and

3) Ms. Booker knowingly and voluntarily exposed herself to such a risk.

If you find that C.R. Bard and BPV have proved each of these elements by a preponderance of the evidence, then Ms. Booker is not entitled to recover for the resulting injury or damages, and you should return a verdict for C.R. Bard and BPV.

*[Note:  The Court also has not included in any of these instructions the parties' proposed instruction on actions or inactions by the FDA – Plaintiff's Request to Charge No. 2 and Defendants' Request for Instruction No. 2.  The Court considers both of them to be too much of a comment on the evidence.  The parties may propose FDA-related instructions during trial as the evidence develops.]*

**DAMAGES**

**NINTH CIRCUIT INSTRUCTION 5.1 (modified)**

**STIPULATED REQUEST TO CHARGE NO. 8**

**STIPULATED REQUEST TO CHARGE NO. 9**

**STIPULATED REQUEST TO CHARGE NO. 10 (modified)**

**PLAINTIFF'S REQUEST TO CHARGE NO. 11**

**STIPULATED REQUEST TO CHARGE NO. 12**

**PLAINTIFF'S REQUEST TO CHARGE NO. 10 (modified)**

**PLAINTIFF'S REQUEST TO CHARGE NO. 12 (modified)**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, I do not mean to suggest for which party your verdict should be rendered.

If you find for Ms. Booker on any or all of her claims, you must determine her damages. Ms. Booker has the burden of proving damages by a preponderance of the evidence. It is for you to determine what damages, if any, have been proved. Your award must be based on evidence and not upon speculation, guesswork or conjecture.

Damages are given as pay or compensation for injury done. Where one party is required to pay damages to another, the law seeks to ensure that the damages awarded are fair to both parties. If you find by a preponderance of the evidence that Ms. Booker is entitled to recover damages, you should award to Ms. Booker such sums as you believe are reasonable and just in this case.

Necessary expenses resulting from the injury are a legitimate item of damages. As to medical expenses, such as hospital, doctor, and medicine bills, the amount of the damage would be the reasonable value of such expense as was reasonably necessary.

Ms. Booker seeks to recover not only for her past medical expenses, but also for medical expenses that may be incurred in the future. If you find that the evidence shows with reasonable certainty that Ms. Booker will sustain future medical expenses proximately caused by the actions of C.R. Bard and BPV, and if you find that the evidence shows with reasonable certainty the amount of such future medical expenses, Ms. Booker would be entitled to recover those amounts, reduced to present case value.

Pain and suffering are recoverable as damages. The measure of damages for pain and suffering is left to the enlightened conscience of fair and impartial jurors. Questions of whether, how much, and how long Ms. Booker has suffered or will suffer are for you to decide.

Pain and suffering include mental suffering, but mental suffering is not recoverable as damages unless there is also physical suffering. In evaluating Ms. Booker's pain and suffering, you may consider the following factors, if proven:

    (1)    interference with normal living;

    (2)    interference with enjoyment of life;

    (3)    impairment of bodily health and vigor;

    (4)    fear of extent of injury;

    (5)    shock of impact;

    (6)    actual pain and suffering, past and future;

    (7)    mental anguish, past and future; and

    (8)    the extent to which Ms. Booker must limit activities.

If you find that Ms. Booker's pain and suffering will continue into the future, you should award such damages for future pain and suffering as you believe Ms. Booker will endure. In making such an award, your standard should be your enlightened conscience as impartial jurors. You may take into consideration the fact that Ms. Booker is receiving a present cash award for damages not yet suffered.

C.R. Bard and BPV must take Ms. Booker in whatever condition they find her. A negligent actor must bear the risk that its liability will be increased by reason of the actual physical condition of the person toward whom its act is negligent. Thus, if you find that Ms. Booker's injuries were increased by her existing physical condition, you may award damages for those increased injuries provided you find they were proximately caused by C.R. Bard and BPV.

*[Not given:  Plaintiff's Request to Charge No. 11;  Plaintiff's Request to Charge No. 13;  Plaintiff's Request to Charge No. 14;  Plaintiff's Request to Charge No. 15; Defendants' Request for Instruction No. 9.]*

## PUNITIVE DAMAGES – PHASE 1

## STIPULATED REQUEST TO CHARGE NO. 13 (modified)

## STIPULATED REQUEST TO CHARGE NO. 14

## STIPULATED REQUEST TO CHARGE NO.  15

## STIPULATED REQUEST TO CHARGE NO. 16

In cases such as this, there may be aggravating circumstances that warrant the award of additional damages called punitive damages.  Punitive damages are intended to punish, penalize, and deter wrongful conduct.

Before you may award punitive damages, Ms. Booker must prove that the actions of C.R. Bard and BPV showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences.

Ms. Booker must make this proof by clear and convincing evidence. This is a different and higher burden of proof than a preponderance of the evidence.  Clear and convincing evidence is defined as evidence that will cause you to firmly believe, to a high degree of probability, that the requirements for punitive damages have been proved.

If Ms. Booker fails to prove by clear and convincing evidence that C.R. Bard and BPV were guilty of willful misconduct, malice, fraud, wantonness, oppression, or entire want of care that would raise the presumption of conscious indifference to consequences, then you may not award punitive damages.  Mere negligence, even amounting to gross negligence, will not alone authorize an award of punitive damages.

In the verdict form, you will be asked to specify whether Ms. Booker is entitled to recover punitive damages, but you will not yet be asked to determine an amount of punitive damages.  If you decide that she should be awarded punitive damages, then you will receive some brief additional instructions, evidence, and argument before setting the amount.

There can be no recovery of punitive damages in this case unless there is first a recovery by Ms. Booker of compensatory damages.

**PUNITIVE DAMAGES – PHASE 2**

**STIPULATED REQUEST TO CHARGE NO.  18**

**STIPULATED REQUEST TO CHARGE NO.  19**

**PLAINTIFF'S REQUEST TO CHARGE NO. 16 (modified)**

**PLAINTIFF'S REQUEST TO CHARGE NO. 17 (modified)**

Members of the jury, you have decided that Ms. Booker should be awarded punitive damages.  In order to determine the amount of punitive damages, the parties will now present brief additional evidence and arguments.

The measure of punitive damages is your enlightened conscience as an impartial jury.  Any award you make should be both reasonable and just in light of your previous award of compensatory damages, the conduct and circumstances of C.R. Bard and BPV, and the purpose of punitive damages.

In considering the amount of punitive damages, you may consider the following factors:

1)      the nature, egregiousness, or reprehensibility of C.R. Bard and BPV's conduct;

2)      the extent and duration of C.R Bard and BPV's wrongdoing and the likelihood of its recurrence;

3)      the intent of C.R. Bard and BPV in committing the wrong;

4)      the profitability of C.R. Bard and BPV's wrongdoing;

5)      the amount of compensatory damages you have previously awarded;

6)      the financial circumstances, that is, the financial condition or the net worth of C.R. Bard and BPV.

You should consider all of the evidence, both aggravating and mitigating, to decide how much punishment, penalty, or deterrence C.R. Bard and BPV's conduct deserves in the form of punitive damages.

*[Not included:  Defendants' Request for instruction No. 10 – Defendants may request if the evidence supports this proposed instruction.]*

### 3.1 DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## 3.2 CONSIDERATION OF EVIDENCE – CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start

over. If any juror is exposed to any outside information, please notify the court immediately.

## 2.16 EVIDENCE IN ELECTRONIC FORMAT

The exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room.  A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits.  You will also be provided with a paper list of all exhibits received in evidence.  You may request a paper copy of any exhibit received in evidence by sending a note through the bailiff.  If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the bailiff, signed by your foreperson or by one or more members of the jury.  Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the bailiff present for the sole purpose of assuring that the only matter that is discussed is the technical problem.  When the court technician or any non-juror is in the jury room, the jury shall not deliberate.  No juror may say anything to the court technician or any non-juror other than to describe the technical problem or to seek information about operation of the equipment.  Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case.  You may not use the computer for any other purpose.  At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material.  Do not attempt to alter the computer to obtain access to such materials.  If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials.  Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

### 3.3 COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone – including the court – how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.