James R. Condo (005867)
Amanda C. Sheridan (027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Telephone: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation | No. 2:15-MD-02641-DGC<br><br>**BARD'S RESPONSE TO PLAINTIFF'S REQUEST TO PRECLUDE EVIDENCE REGARDING THE COMPLICATIONS ASSOCIATED WITH THE SIMON NITINOL FILTER** |

The Plaintiff has complained that Bard should not be permitted to introduce certain evidence regarding the Simon Nitinol Filter ("SNF"), apparently evidence of complications occurring with that filter. Originally, the Plaintiff argued that she was blocked from conducting discovery about those issues, citing Case Management Order No. 10 (Doc. 1319). Later in the discussion, the Plaintiff appeared to back away from that claim. Instead, she appears to be arguing now that Bard's internal handling of the SNF, both in designating the SNF as the predicate filter for its Recovery Filter regulatory

submission and in comparing reports of complications with the two filters, somehow precludes Bard's use of evidence demonstrating complications with the SNF. Bard disagrees.

As a threshold matter, Bard submits that Plaintiff's initial reliance on CMO 10 was misplaced. That order afforded the Plaintiff wide-ranging discovery concerning the SNF. The order allowed discovery regarding the sales and marketing of the SNF, and asked the parties to agree on the scope of that discovery, which the parties ultimately did. See Doc. 1483. The order also recognized that regulatory documents were being produced. Although not mentioned in the order, Bard separately produced to the Plaintiff all adverse event data concerning the SNF. In addition to the SNF complaint data maintained after Bard acquired the rights to the SNF, Bard produced comprehensive data regarding earlier adverse events concerning the filter (which was included in the "thumb" drive provided to the Court). The only materials the Plaintiff was not provided were design and development documents. Since the Plaintiff was not contending the SNF was defective, that material had no relevance to her claims. Nor does it have any bearing on the complication rates which are now her focus.

Given the absence of a disclosure or discovery issue, it is difficult to understand the basis of the Plaintiff's present complaint. Bard readily acknowledges the point of the documents provided the Court by the Plaintiff – i.e., that Bard identified the SNF as a "predicate" device for the Recovery Filter and that the reports of SNF complications received by Bard were often less than those received regarding retrievable filters (with some exceptions). In response to those documents, Bard should be entitled to present proof that the complications regarding the SNF, as a permanent filter, are reported much less frequently than complications regarding retrievable filters. In that regard, Bard's expert Dr. Christopher Morris has explained that phenomenon. See Report Excerpt attached as Exhibit "A". Bard should also be permitted to discuss the medical literature that supports the notion that the SNF does indeed experience significant complications itself, and in many instances, complications at a higher rate than the G2. Those articles

discussing the SNF complications were cited frequently in the reports of both sides' experts (as outlined in the "thumb" drive submitted by Bard). In short, the issue is no surprise, and has been a central part of this litigation from the outset.

As long as the Plaintiff argues that the SNF was a superior filter to the G2, Bard should be permitted to present evidence that refutes that claim. If the Plaintiff believes Bard's internal documents contradict the company's position on that issue, she is certainly free to cross-examine witnesses with those documents or otherwise contradict Bard's argument. However, she has cited no basis why evidence she considers to contradict Bard's position somehow bars the Defendants from introducing contrary evidence in the first instance. An alleged conflict in the evidence is the archetype justification for cross-examination; it is not a ground for exclusion.

In sum, the Plaintiff has evidently abandoned, and rightfully so, her initial assertion that CMO No. 10 denied her evidence necessary to rebut Bard's position. As a consequence, the alleged evidentiary conflict she complains about is appropriately addressed through cross-examination and the regular adversarial process.

RESPECTFULLY SUBMITTED this 19th day of March, 2018.

SNELL & WILMER L.L.P.

By: s/*Amanda C. Sheridan*
James R. Condo
Amanda C. Sheridan
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204

Richard B. North, Jr.
Matthew B. Lerner
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA  30363

**Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of March, 2018, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

s/Amanda C. Sheridan

4833-8197-4367