1
2
3

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

4 | In Re: Bard IVC Filters | ) | MD-15-02641-PHX-DGC
5 | Products Liability Litigation | )
| | ) | Phoenix, Arizona
6 | | ) | **March 14, 2018**
_____ | )
**Sherr-Una Booker, an individual,** | )
7 | | )
| Plaintiff, | )
8 | | ) | CV-16-00474-PHX-DGC
| v. | )
9 | | )
**C.R. Bard, Inc., a New Jersey** | )
10 | **corporation; and Bard Peripheral** | )
**Vascular, Inc., an Arizona** | )
11 | **corporation,** | )
| | )
12 | Defendant. | )
_____ | )

13

14

15          **BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE**

16          **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

17               **TRIAL DAY 1 A.M. SESSION**

18                    (Pages 1 - 114)

19

20

21   Official Court Reporter:
     Patricia Lyons, RMR, CRR
22   Sandra Day O'Connor U.S. Courthouse, Ste. 312
     401 West Washington Street, SPC 41
23   Phoenix, Arizona  85003-2150
     (602) 322-7257
24
     Proceedings Reported by Stenographic Court Reporter
25   Transcript Prepared with Computer-Aided Transcription

1                       **A P P E A R A N C E S**

2    For the Plaintiff:

3              Lopez McHugh
               By: **RAMON ROSSI LOPEZ,** ESQ.
4              100 Bayview Circle, Suite 5600
               Newport Beach, CA  92660

5
               Gallagher & Kennedy
6              By: **MARK S. O'CONNOR,** ESQ.
               2575 East Camelback Road, Suite 1100
7              Phoenix, AZ  85016

8              Heaviside Reed Zaic
               By: **JULIA REED ZAIC,** ESQ.
9              312 Broadway, Ste. 203
               Laguna Beach, CA  92651

10
               Snyder & Wenner, PC
11             By: **DAVID A. WENNER,** ESQ.
               2200 E. Camelback Rd., Ste. 213
12             Phoenix, AZ  85016

13

14   For Defendants:

15             Nelson Mullins Riley & Scarborough
               By: **RICHARD B. NORTH, JR.,** ESQ.
16             By: **ELIZABETH C. HELM,** ESQ.
               201 17th Street NW, Suite 1700
17             Atlanta, GA  30363

18             Snell & Wilmer
               By: **JAMES R. CONDO,** ESQ.
19             400 East Van Buren
               Phoenix, AZ  85004
20

21

22

23

24

25

**P R O C E E D I N G S**

10:01:31   1

2

3          THE COURTROOM DEPUTY:  MDL 2015-2645, Bard IVC

4    Filters Product Liability Litigation, on for jury trial.

08:30:36   5          Will the parties please announce.

6          MR. O'CONNOR:  Yes.  Good morning.  Mark O'Connor.

7          THE COURT:  We need you at a mic, Mr. O'Connor.

8          MR. O'CONNOR:  Excuse me.  Mark O'Connor for the

9    plaintiffs.

08:30:48  10          MR. WENNER:  David Wenner for plaintiffs, Your Honor.

11          MR. LOPEZ:  Ramon Lopez for the plaintiffs.

12          MS. REED ZAIC:  Julia Reed Zaic for the plaintiffs.

13          MR. NORTH:  Good morning, Your Honor.  Richard North

14    for the defendants.  And I'm joined by James Condo, Elizabeth

08:31:02  15    Helm, and also accompanying us is Mr. Greg Dadika from Bard.

16          THE COURT:  Good morning.

17          MR. DADICK:  Good morning, Your Honor.

18          THE COURT:  Counsel, let me cover a few matters with

19    you.

08:31:50  20          This morning we filed an order ruling on a number of

21    the deposition objections.  I think I made it through all but

22    five of the transcripts that you submitted.  I trust that will

23    get us through the week.  So my intent would not be to get

24    back to the deposition transcripts until the weekend.

08:32:13  25          So look over what I've ruled on.  If you want -- if

08:32:16  1    you think you're going to be presenting somebody I haven't

2    ruled on later this week, let me know tomorrow.  But I just

3    went in the order you listed them.  I think there's five left.

4         On those deposition designations, for purposes of the

08:32:30  5    Jones trial when we get there, I would ask you to please be a

6    bit more discriminating in the objections you make.  There

7    were some objections where I read eight grounds for the

8    objection, and I overruled it.  None of them applied.  And it

9    was evident to me that it was a laundry list.  It was just

08:32:51 10    every objection a person could think of.  Well, I've got to

11    look through each of those and think about them, and it just

12    takes time.  I spent nine hours reviewing deposition

13    objections in the last two days.  So please be a little more

14    focused.  It also dilutes the strength of the meritorious

08:33:09 15    objections if we're getting just laundry lists.

16         So please, going forward, do that, if you would, and

17    that will save some time on deposition designation objections.

18         As you saw, we finalized the questionnaire for the

19    Jones trial.  That has gone out.  So we'll follow the schedule

08:33:29 20    that we talked about before for getting those questionnaires

21    back and dealing with those in advance of the Jones trial.

22         I received from you a proposed amended final pretrial

23    order.  I haven't looked through it.  I'm assuming the only

24    change is the addition of the witness that we had an issue

08:33:50 25    about; is that correct?

08:33:52 1          MR. O'CONNOR:  That's correct, Your Honor.

2          MR. NORTH:  That's correct.

3          THE COURT:  All right.  I'm not going to do anything

4    with the amended version, then.  I'm going to leave the

08:33:59 5    original version in place, because I've marked that up some,

6    with my ruling that the plaintiffs can call that witness.

7          I also have filed, as you have seen, my proposed

8    final jury instructions.  I suspect it was because of the way

9    we directed you to submit them, but what you submitted was

08:34:29 10   sort of an unorganized set of objections.  And what I

11   literally did was put them in stacks of related topics, and

12   came up with one objection for each claim -- I'm sorry, one

13   instruction for each claim, each defense, put into it the

14   stuff I thought was relevant, left out the stuff I thought was

08:34:46 15   not.  I tried, as you probably have seen in the heading, to

16   list every one of your instructions that I used, and when it

17   was modified, I tried to put an italicized comment at the

18   bottom as to some of the reasons I left things out.

19         I do think we should instruct the jury in that way,

08:35:02 20   claim by claim and defense by defense.

21         I think what I would like to do, unless you think it

22   needs to happen sooner, is wait to address your comments on

23   those jury instructions until after the weekend so you can

24   look at them over the weekend.  Unless you think there's an

08:35:23 25   issue in there that we need to get resolved earlier in the

08:35:27   1   case.

2         Anybody have that view?  That we need to resolve it

3   before the weekend?

4         MR. O'CONNOR:  We don't think it's necessary to

08:35:43   5   resolve it before the weekend.  We could probably use the

6   weekend to get our thoughts organized on that.

7         THE COURT:  Right.

8         MR. NORTH:  We agree, Your Honor.

9         THE COURT:  Okay.

08:35:53  10         Let me look at next week and see if there's any

11   afternoons when I don't have a hearing.

12         I do not have a 4:30 haring on Thursday, the 22nd.

13   So why don't we set that as the time when we'll get your

14   comments on the final jury instructions.

08:36:36  15         Traci, could you put that into the 4:30 slot so we

16   don't put another hearing in there.

17         So please look them over and be prepared to give me

18   your comments at that time.

19         With respect to the voir dire this morning, you saw

08:36:52  20   an order that I entered last week on the proposed additional

21   voir dire.  I've added three FDA related questions, as I

22   indicate, and my intent will be to ask those this morning.

23         I will also review with the jury the specific days

24   that we will be in trial, including Monday the 26th, and ask

08:37:14  25   the other questions that I think I had previously identified

08:37:20    1    for the voir dire.  It's really just to see if there's another

            2    scheduling issue or something similar on the part of any of

            3    the jurors.

            4            Do any of you have any questions or comments on the

08:37:29    5    voir dire that I'll be asking this morning?

            6            MR. O'CONNOR:  No.  Just make sure you're going to

            7    ask those and we'll be able to follow up; is that right,

            8    Your Honor?

            9            THE COURT:  Right.

08:37:40   10            MR. O'CONNOR:  And when you're ready, I think we do

           11    have some questions in general about how jury selection is

           12    going to go this morning, but I'll wait until you're ready for

           13    that.

           14            THE COURT:  All right.

08:37:50   15            MR. NORTH:  That's fine, Your Honor.

           16            THE COURT:  Okay.  Let me tell you what I'd like to

           17    do this morning to save some time on jury selection.

           18            My normal practice is after I have asked the voir

           19    dire, to have you ask follow-up questions of the entire jury

08:38:10   20    panel.  We've got 60 jurors on this panel, and that will take

           21    some time.  I think we can save time by doing it a little

           22    differently.

           23            So this is what I think I'd like to do:  I will ask

           24    the voir dire questions and I'll ask the follow-up questions

08:38:23   25    that I think need to be asked, and that will include questions

08:38:27  1   about scheduling problems for jurors.

2        After that's finished, I'll have you come up to

3   sidebar.  Let's just have three of you per side come up to

4   sidebar.  I'll tell you who I'm going to excuse for hardship,

08:38:39  5   so that will eliminate the need to ask those folks follow-up

6   questions.

7        And I'll hear any challenges for cause you have to

8   make at that point, based on what you've heard in the voir

9   dire.

08:38:49 10        Then what I'm going to do is have you ask follow-up

11   questions of the first 20 jurors that remain.  And after each

12   side has asked follow-up questions of those 20 jurors, we'll

13   do another sidebar, and I'll hear challenges for cause.  And

14   then we'll ask another ten jurors questions, and then another

08:39:13 15   ten after that.

16        And my thought is what we'll be able to do by

17   following that procedure is avoid the need for you to ask

18   follow-up questions of the last 20 or maybe 30 jurors, which

19   could save us a fair amount of time.  And since we're pressed

08:39:27 20   for time overall in the trial, I think that would be helpful

21   and would be undoubtedly appreciated by the jurors.

22        So we'll go 20, 10, and 10.  And after each of those

23   groups, I'll have you come over to sidebar and hear your

24   challenges for cause.  And then, once we've got 15 jurors who

08:39:45 25   haven't been excused for hardship or challenge for cause,

08:39:48  1   we'll stop the follow-up process and we'll pick the jury.  And

2   we won't to have ask follow-up questions of the rest.

3              Any comments or questions on that?

4              MR. O'CONNOR:  I do have a question.  Your Honor,

08:40:02  5   when you're saying follow-up questions at that point, are you

6   also -- is that the point we should be asking the follow-up

7   questions on the questionnaires?

8              THE COURT:  Yes.

9              MR. O'CONNOR:  And this might be the appropriate time

08:40:14 10   to ask this question.  Mr. Wenner and I were going through

11   these.  It appears that Jurors 12 and 19 came late.  Their

12   questionnaires came late.  Are they going to be in their

13   original positions, or will they be at the end?

14             THE COURT:  They should be in their original

08:40:32 15   positions.

16             MR. O'CONNOR:  And, again, when we refer to the

17   jurors, I assume you want us to refer to the juror by number?

18             THE COURT:  Correct.

19             MR. O'CONNOR:  And can we go to the specific question

08:40:44 20   in the questionnaire if we have a question on their answer in

21   that?

22             THE COURT:  Yes.

23             MR. O'CONNOR:  And then --

24             THE COURT:  I mean, I assume what you mean is you can

08:40:52 25   say to Juror 12, "You responded to question number 3, thus and

08:40:55  1    so, I have a follow-up question."

2              MR. O'CONNOR:  Right.

3              THE COURT:  Yeah, that's fine.

4              MR. O'CONNOR:  In terms of a point to introduce

08:41:03  5    ourselves, are you going to allow us also -- at some point in

6    time I assume you're going to want us to introduce lawyers,

7    including those that were on the questionnaire identified

8    there.

9              THE COURT:  Yeah.  We're going to do that during my

08:41:15 10    voir dire.

11             MR. O'CONNOR:  All right.

12             THE COURT:  I'm going to actually introduce probably

13    one or two of you per side, and have you introduce everybody

14    else that's going to be participating in the trial.

08:41:26 15             MR. O'CONNOR:  Thank you.

16             And when it is our time to follow up, will it be

17    appropriate, and may the lawyers on each side give the jury a

18    very brief explanation of what we're going to do and why we're

19    asking questions?

08:41:42 20             THE COURT:  Tell me what you mean by that.

21             MR. O'CONNOR:  Just by way of introducing them, and

22    again saying that I'm going to be asking you questions and

23    some follow-up questions on what you've already answered,

24    please understand that it's not an attempt to pry, but our

08:41:55 25    role here representing our clients is to select a fair and

08:41:59  1    impartial jury.  And maybe give them a brief example of what

2    that would mean.

3         THE COURT:  I think it's fine.  I don't think you

4    need to give them an example.  I will also tell them that you

08:42:11  5    are asking follow-up questions on their questionnaire.  But if

6    you want to say something like that at the start, that's fine.

7         MR. O'CONNOR:  All right.  And I mean by that, you

8    know, sometimes in trials we're allowed to, for example, give

9    an example about ourself, why we might not be the right one on

08:42:28 10    a jury, and there's nothing wrong that.

11         THE COURT:  No.

12         MR. O'CONNOR:  You won't allow that?

13         THE COURT:  I don't.

14         MR. O'CONNOR:  Okay.

08:42:34 15         THE COURT:  And on that point, as you mention it,

16    what I'm permitting here is for you to get more information

17    from the juror.  You can ask questions about it.  What I'm not

18    going to allow is for a lawyer to lead a juror into a

19    challenge for cause.  If I think you are trying to lead them

08:42:49 20    into saying something that you -- that creates a question or

21    an answer that will allow a challenge for cause, rather than

22    get information, I'm going to interrupt you and stop you.

23         So please be sure to ask true follow-up questions to

24    get additional information, not to try to create a record that

08:43:08 25    you think allows a challenge for cause.

08:43:11  1          MR. O'CONNOR:  On that point, is it appropriate for

2    us to ask Juror Number whatever, 10, is it fair to say, based

3    upon your response, that you would start out with a

4    predisposition or leaning against the plaintiff?

08:43:26  5          THE COURT:  Yes, that's a fair question.  But if they

6    say I don't think so, then you shouldn't go, "But let me be

7    more specific.  Isn't it true that --"  And if you really try

8    to walk them into a corner, I'm not going to allow that.  Now,

9    you guys probably weren't planning to do that, but there are

08:43:42 10   some lawyers who try to do that, and we're here to get

11   information from them, not to try to elicit a specific answer

12   that supports a challenge for cause.

13          MR. O'CONNOR:  All right.

14          Is that good?

08:43:53 15   Thank you.

16          THE COURT:  By the way, as I'm thinking about it, all

17   of you who are sitting behind the bar, when we bring the jury

18   in, you're going to need to move to the back, if you would,

19   please, because we're going to sit them in order just behind

08:44:03 20   the bar.

21          Were there any questions from the defense on those

22   issues?

23          MR. NORTH:  No, Your Honor.

24          THE COURT:  Okay.  So we'll have a sidebar after my

08:44:13 25   voir dire, and at that point we'll identify the additional

08:44:17   1   jurors who will be included in the first round of follow-up

2   questions, and then we'll go incrementally to hopefully save

3   ourselves some time this morning.

4          I received from you all a book that I was told are

08:44:37   5   today's witnesses.  My question is what is it that you're

6   hoping I'll do with the book?

7          There's 400 pages in here.  Is this -- are these

8   transcripts?  Are these exhibits?  What is it exactly that you

9   are hoping I will do with this?

08:44:57   10          MR. LOPEZ:  Well, it was our understanding you wanted

11   that, Your Honor.  That if we're going to call a witness, you

12   want a notebook of the exhibits that we may use or are likely

13   to use for that witness.  If not, people will sleep shorter --

14   I mean, longer hours.

08:45:14   15          THE COURT:  I think what was said --

16          Traci?

17          THE COURTROOM DEPUTY:  No, no.  That's fine.

18          THE COURT:  I think what was said at the final

19   pretrial conference by the parties, one side or the other, was

08:45:23   20   it would be good to identify a day in advance the exhibits

21   that are going to be used, and I said good idea.  That was the

22   idea so you each know what the targeted exhibits are for the

23   next day.

24          If you want to do this every day, I'm happy to have

08:45:37   25   it at hand.  I think what I'd like is, somewhere, a copy of

08:45:41  1    exhibits you intend to use, and Traci can hand them to me as

2    we get to them.  Or you can do it like this.

3              MR. LOPEZ:  And I --

4              THE COURT:  I don't want to create work for you that

08:45:49  5    you otherwise don't need to do.  But I think the idea was

6    let's have at hand the target exhibits for a particular day.

7              MR. LOPEZ:  I'll talk to the folks that are working

8    on that.  As long as we can give it to you on the day that

9    we're going to do it, or maybe even at the time we put the

08:46:06 10    witness on --

11             THE COURT:  That's fine.

12             MR. LOPEZ:  -- that takes a little pressure off.

13             THE COURT:  That's fine.  And the idea is that I have

14    a copy in front of me if there's going to be some objection so

08:46:15 15    I can look at it and we don't have boxes full to go find it.

16    But yeah, you can give it to me as you call the witness.  But

17    I think telling each other what exhibits you think you'll be

18    using the same the next day will save everybody some effort as

19    well.

08:46:31 20             MR. LOPEZ:  Thank you, Your Honor.

21         (The Court and the courtroom deputy confer.)

22             THE COURT:  My last comment is, again, a reminder.

23    Please remember that opening statements are not argument, as

24    you get into there and preview the evidence, rather than argue

08:46:56 25    the case.

08:46:57   1          All right.  Plaintiff's counsel, do you have matters

       2     that you want to raise before we get started this morning?

       3          MR. LOPEZ:  Well, the only thing is we're going to --

       4     both sides are going to need time to go over our slides where

08:47:09   5     we have objections, and then whatever we're left with --

       6          THE COURT:  You mean there are slides you want me to

       7     look at and rule on?

       8          MR. LOPEZ:  Yes, sir.

       9          THE COURT:  Okay.  We've got 12 minutes to do that.

08:47:20  10     I'm not going to keep the jury waiting, as I indicated.  So

      11     give me a sense for what the issues are --

      12          MR. LOPEZ:  Your Honor -- we have a member of our

      13     trial team that had a medical issue yesterday, and we just --

      14     it just threw us -- he was actually going to give the opening.

08:47:40  15     We've got a new set of slides, and we've exchanged them.

      16     We've had -- we just had some technical stuff going on

      17     yesterday.

      18          THE COURT:  So let me ask this question:  How many

      19     slides are objected to on each side?

08:47:53  20          MR. LOPEZ:  I haven't had a chance to look.

      21          MS. REED ZAIC:  Defendants have objected to

      22     approximately six slides.  Due to a bit of disorganization

      23     because of the issue yesterday, Your Honor, and doing this

      24     quickly, I've now reviewed this.  There's no issue with the

08:48:10  25     first two, they've already been taken out.  The next set of

08:48:13  1    slides the defendants have objected to, I'll let Mr. North

       2    discuss that, he believes there is some undue emphasis on some

       3    Recovery filter matters.

       4            MR. NORTH:  If they've taken those two out, that's

08:48:26  5    good.

       6            The only other thing is I was going to make, for the

       7    record, I think there's an undue emphasis in their

       8    presentation on Recovery filter migration deaths.  I'm sure

       9    the Court's going to allow that in at this juncture, but just

08:48:39 10    for the record, I wanted to mention that.

      11            THE COURT:  Okay.

      12            So do you want me to look at the slides and make a

      13    ruling, Mr. North?

      14            MR. NORTH:  I have them here, Your Honor.

08:48:47 15            THE COURT:  Why don't you walk over and show them the

      16    ones that you have a concern about, just to make sure they're

      17    still being used.

      18            MS. REED ZAIC:  I believe they are, Your Honor.  And

      19    the counter to that would be the four slides only discuss a

08:48:57 20    few of the Recovery filter migration deaths leading up to the

      21    product hold, and none afterward, as part of the regulatory

      22    history of the Recovery leading to the G2.

      23            THE COURT:  All right.  Look at that, make sure

      24    you're on the same page, and then hand me the slides.  I'll be

08:49:10 25    happy to look at them.

08:49:11   1          MS. REED ZAIC:  We would like to keep these in.

           2   These deal with the first and the second migration death, and

           3   it actually deals with the product hold.  There are no other

           4   migration deaths.  And there were several others that we did

08:49:22   5   not include.  It just deals with the regulatory hold.

           6          THE COURT:  Okay.  Why don't you bring that forward,

           7   please.

           8          MR. NORTH:  May I approach, Your Honor?

           9          THE COURT:  Yes.

08:50:37  10          A question for plaintiffs' counsel.  The complaint

          11   records that you are showing, it's too small for me to read.

          12          MS. REED ZAIC:  I understand that.  It's actually --

          13   on the PowerPoint it's a call-out next to it.

          14          THE COURT:  Okay.  So what's on the right is

08:50:50  15   what's --

          16          MS. REED ZAIC:  Is what is going to be discussed --

          17          THE COURT:  -- quoted from --

          18          MS. REED ZAIC:  Yes.  And what's on the left is too

          19   small to read.

08:50:58  20          THE COURT:  And are these internal Bard documents on

          21   the left?

          22          MS. REED ZAIC:  Yes, they are.

          23          THE COURT:  Okay.  I'm going to allow these slides to

          24   be used.

08:51:17  25          MS. REED ZAIC:  Thank you, Your Honor.

08:51:17   1       THE COURT:  As I indicated in the ruling on the

           2   Recovery filter problems and deaths, I think it's relevant

           3   because of the design defect claim in the G2 and the fact that

           4   the Recovery was the predicate.

08:51:30   5       I still am sensitive to the notion that those deaths

           6   should not be overemphasized.  As you've already seen in a

           7   number of my deposition rulings, I'm allowing them to be

           8   mentioned, but to the extent they're repeated too often or if

           9   it were ever to be the case, as Mr. North posited at one

08:51:48  10   point, that there is a real focus in questioning on this death

          11   and this death and this death, it seems to be nothing but

          12   trying to elicit sympathy from the jury.  That, to me, would

          13   be inappropriate.  But I think what is in the slides is fair

          14   game, and I'm going to allow those to be used.

08:52:03  15       MS. REED ZAIC:  Thank you, Your Honor.

          16       THE COURT:  Defendants, did you have matters that you

          17   want to raise before we start?

          18       MR. NORTH:  Well, Your Honor, they have provided us

          19   with a long list, very long list, of objections to our

08:52:13  20   opening, and I find them very confusing because they object to

          21   some slides that are in their own opening.  They object to 15

          22   slides because they said they postdate -- have information

          23   that postdate the date of implant, 2007 in this case, yet half

          24   of their slides postdate the implant, and there is a

08:52:35  25   continuing duty to warn claim in this case.

08:52:39  1        I mean, they have like 20 to 25 objections.  That

2    sums up about half or two-thirds of them right there.

3        THE COURT:  What do plaintiffs want me to do with

4    your objections?

08:52:49  5        MS. REED ZAIC:  Your Honor, again, because of the

6    issue yesterday, we'll withdraw the objections.  There is one

7    objection there that I would like to discuss.  In one of the

8    slides -- I'm sorry, I can't quite pull it -- there is a claim

9    that the G2 filter was cleared by the FDA four times, and that

08:53:03 10   is completely inaccurate and misleading.  The filter was

11   cleared twice, once for permanence, once for retrievability.

12   The other two 510(k) applications were simply for the delivery

13   systems.  I think it is misleading to present to the jury that

14   the filter itself was cleared four times.

08:53:21 15        THE COURT:  Mr. North.

16        MR. NORTH:  We can clarify.  We can put "delivery

17   system" in parentheses.

18        THE COURT:  Do you have a copy of that slide?

19        MR. NORTH:  I do, Your Honor.  Let me --

08:53:28 20        Do you know what slide number that is?

21        MS. REED ZAIC:  I apologize.  Again -- it might have

22   been provided to me, hold on.

23        MR. LOPEZ:  Actually, Your Honor, I think we're

24   objecting to all three -- all except for the one that was

08:53:46 25   cleared that Mrs. -- that Ms. Booker received.  He has three

08:53:50  1    clearances after that of a device that she did not get.

2         MR. NORTH:  May I approach, Your Honor?

3         THE COURT:  Please.

4         So you have the ability to edit this?

08:54:19  5         MR. NORTH:  Yes, Your Honor.

6         THE COURT:  Now, what is -- what is the basis for

7    objecting to the second clearance?

8         MR. LOPEZ:  Well, all that happened after Ms. Booker

9    got her implant.

08:54:30 10         THE COURT:  Okay.

11         I'm going to allow you to use the slide, but I want

12    you to clarify it to say that the first in August of 2005 was

13    for permanent use of the G2; the second in November of 2005

14    was for the retrievable use of the G2.

08:54:48 15         MR. NORTH:  Excuse me, Your Honor, that was for the

16    delivery system.

17         THE COURT:  Okay.

18         MR. NORTH:  -- delivery system.

19         THE COURT:  All right.  Then put that in there.

08:54:55 20         The third was for the retrievable use?

21         MR. NORTH:  I believe so.

22         THE COURT:  And the fourth was for delivery system?

23         In any event --

24         MR. NORTH:  I'll clarify -- I think the fourth was

08:55:05 25    actually the G2X, which is the same filter but just a

08:55:08   1    different hook on the top.

2           THE COURT:  Okay.  If it's a G2X, take it out.  We're

3    only talking about the G2 in this case.

4           MR. NORTH:  Okay.

08:55:14   5    THE COURT:  But specify what it was cleared for so

6    that it isn't a suggestion that the FDA passed four times on

7    just the same filter.

8           MR. NORTH:  Certainly.

9           THE COURT:  With that clarification, I'll allow you

08:55:25  10    to use the slide.

11          MR. NORTH:  Thank you.

12          MR. LOPEZ:  Your Honor, I think there are a number of

13    other objections that we had that we're just glossing over.  I

14    mean --

08:55:30  15    THE COURT:  Well, your co-counsel just withdrew them,

16    I thought, Mr. Lopez.

17          MR. LOPEZ:  Okay.

18          THE COURT:  Is there something significant you think

19    we need to address, Mr. Lopez?

08:55:38  20    MR. LOPEZ:  Well, I mean, he's got some statistical

21    stuff up there that -- I mean, there's -- I mean, we can deal

22    with it during the trial, but it's pretty inflammatory and

23    misleading, and there's just no foundation for about a third

24    of his slides, but --

08:55:54  25    THE COURT:  Well, the question -- everybody gets to

08:55:56   1   state during opening what they think the evidence will show.

2   That's the rule we're following.  And if a party says they

3   think the evidence will show something, and it doesn't show

4   that at the end of the day, that's fair game in argument on

08:56:10   5   the other side.

6        So if defendants believe in good faith the evidence

7   will show that, they can present that to the jury as what they

8   think the evidence will show.  If you think it won't show

9   that, you can make that point during trial and in your closing

08:56:25  10   argument.

11        MR. LOPEZ:  Well, there's certain things that -- I

12   understand what you're saying.  A part of me wants to say

13   let's just handle it that way because it is, in our opinion,

14   kind of outrageous that some of the statistics are being put

08:56:38  15   up.  But I don't -- for example, he's got -- he's put an NIH

16   thing where it states there's so many deaths and things like

17   that.  I mean, that's actually putting evidence into the case.

18   Plus he's done some statistics --

19        THE COURT:  Hold on just a minute.  It's not putting

08:56:55  20   evidence into the case.  I'm going to instruct the jury at the

21   start of the trial and the end of the trial that what you say

22   when you're standing in front of them is not evidence, and

23   that if their understanding of the evidence differs from what

24   you say, their understanding controls.

08:57:10  25        Now, clearly the defendants can't stand up and say

08:57:12  1   you think the evidence will show something unless you've got

2   an evidentiary basis for making that assertion.

3           MR. LOPEZ:  Okay.

4           THE COURT:  If they do, they can make the assertion,

08:57:20  5   and the evidence may or may not bear it out.

6           But I guess my point is, Mr. Lopez, it doesn't seem

7   to me appropriate for me to wade into your opening statements

8   and say, No, I don't think the evidence will support these

9   four points or these three points.

08:57:39  10          MR. LOPEZ:  Your Honor, may we remind the jury that

11  some of these things were said in opening statement -- or not

12  the jury, but maybe remind them through testimony or through a

13  witness that this was represented in opening statement?  May

14  we ask that question of a witness?

08:57:55  15          THE COURT:  I think in an appropriate circumstance,

16  that's a fair question.  I think in an --

17          MR. LOPEZ:  Then I'll withdraw my question.

18          THE COURT:  -- in an inappropriate circumstance, it's

19  an argument to the jury.  I'll just have to rule at the time.

08:58:06  20  But, yeah, if you ask a witness, "It was suggested to the jury

21  that such and such were the statistics, do you agree," I think

22  that's a fair question from both sides.

23          MR. LOPEZ:  Thank you, Your Honor.

24          THE COURT:  All right.  Anything else we need to

08:58:20  25  cover?

08:58:21  1          MR. NORTH:  Nothing further, Your Honor.

       2          THE COURT:  Okay.

       3          Yes, Mr. O'Connor?

       4          MR. O'CONNOR:  Your Honor, just two things.  I

08:58:25  5   apologize.  When you asked us to introduce ourselves, we did

       6   not introduce our client, Sheri Booker, and so I just want --

       7          THE COURT:  So where is Ms. Booker?

       8          MR. O'CONNOR:  Ms. Booker's there.  And this is her

       9   lawyer, Robin Lourie, sitting next to her.

08:58:48 10          THE COURT:  All right.  Good morning.

      11          MS. LOURIE:  Hi.

      12          MR. O'CONNOR:  And, Your Honor, when we do bring the

      13   jury in, do you want us to stand behind a podium?

      14          THE COURT:  When you're asking questions, if you want

08:58:52 15   to face the jurors -- well, when you're questioning the jurors

      16   in the box, you won't need to, but when you want to ask jurors

      17   there, if you just turn around and face them, Tricia can't

      18   hear you.  So come around to this side of the lectern, pull

      19   the mic over.  That way you can face them and still talk into

08:59:04 20   the mic.

      21          MR. O'CONNOR:  This here?

      22          THE COURT:  Yes.  Come around to this side when

      23   you're talking to the jurors in the back.

      24          MR. O'CONNOR:  Also, Mr. Wenner is going to be

08:59:13 25   helping me.  If I need to walk over here to get a note, will

08:59:16  1    that be --

          2            THE COURT:  Yeah, that's fine.

          3            MR. O'CONNOR:  Thank you.

          4            THE COURT:  Okay.  We will get the jury up and

08:59:20  5    seated, and then we'll come in and get started.

          6        (Recess was taken from 8:59 to 9:16.  Proceedings resumed

          7    in open court with the jury panel present.)

          8            THE COURT:  Thank you.  Please be seated.

          9            THE COURTROOM DEPUTY:  MDL case 2015-2641, Bard IVC

09:22:37  10   Filters product liability litigation, on for jury trial.

          11           Will the parties please announce.

          12           MR. O'CONNOR:  Your Honor, good morning.

          13           THE COURT:  Good morning.

          14           MR. O'CONNOR:  My name is Mark O'Connor, one of the

09:22:49  15   attorneys for the plaintiff.

          16       Would you like me to introduce the others,

          17   Your Honor?

          18           THE COURT:  No, we'll do that in a minute,

          19   Mr. O'Connor.  Thank you.

09:22:56  20           MR. NORTH:  Good morning, Your Honor.  Richard North

          21   on behalf of the defendants.

          22           THE COURT:  All right.  Good morning.

          23       And good morning, ladies and gentlemen of the jury

          24   panel.  Thank you all for being with us this morning.

09:23:08  25       This is the case, as you already know, of Booker

09:23:12  1   versus two Bard defendants, C.R. Bard, Inc., and Bard

2   Peripheral Vascular, Inc.

3            And before we do anything, we need to get Mikaela a

4   chair -- oh, no, you're doing the mic.  Okay.  Good.  I

09:23:27  5   thought you were just standing.

6            We are here to pick a jury in this case this morning.

7   We are going to do this just as efficiently as we can so all

8   of you who are here for this process won't have to spend any

9   more time than necessary if you are not chosen to be on the

09:23:40  10   jury.

11           As you can imagine, it is important that we select

12   jurors for this trial who can be fair and impartial to both

13   sides.  If you were a participant in this trial, on either

14   side, that is obviously the kind of jury that you would want

09:23:56  15   to have.

16           In order to choose a fair and impartial jury, we have

17   already, as you know, sent you a rather lengthy questionnaire.

18   Thank you for taking the time to fill it out and return it to

19   us.  I'm sure that was not a convenient thing for you to do,

09:24:12  20   but that has already saved us a lot of time in jury selection,

21   and the parties and I were able to gain a lot of valuable

22   information from those questionnaires.

23           As we indicated, they will not be used for any other

24   purpose.  They will be destroyed after we have chosen the jury

09:24:27  25   in this case.

09:24:29  1        There are some additional questions that we need to

2   ask you this morning, and I'm going to ask you a few questions

3   and then the lawyers will ask you questions, either following

4   up on your answers to me this morning or on information that

09:24:42  5   you provided in the questionnaire when you sent it to me.

6        Please understand that these questions are not

7   intended to pry unnecessarily into your personal affairs or to

8   embarrass you in any way.  Each question is designed to help

9   us in selecting a fair and impartial jury in this case.

09:25:03 10        Before I and the lawyers ask you questions this

11   morning, we're going to place all of you under oath.  We do

12   that to make sure that we have fully accurate information when

13   we choose the jury in this case.

14        Obviously it is very important that you answer each

09:25:21 15   question that you are asked today fully and accurately to the

16   best of your ability.

17        Please do not withhold any information in order to be

18   seated on this jury.  Please be straightforward in your

19   answers rather than answering in the way that you feel I or

09:25:37 20   the lawyers would expect you to answer.

21        When I ask you a question this morning, if your

22   answer to the question is yes, please raise your hand, and I

23   will then ask you a few follow-up questions.  Mikaela will

24   bring you the microphone.  We'll have you stand so all of the

09:25:56 25   lawyers can see you, and then I'll ask some follow-up

09:25:58 1    questions.  When you do that, we're going to ask you to

2    identify yourself by the number that you're now wearing and

3    that you've been assigned.

4          We don't do that to be impersonal towards you.  The

09:26:08 5    reason we do is that is because you're going to be disclosing

6    some information about yourselves, and everything we say in

7    this trial is going to be in the public record one day, and in

8    this day of identity theft, we don't want your personal

9    information in the public record with your name.  So that's

09:26:24 10   why we will simply refer to you as a number, and when somebody

11   reads that transcript someday, they'll have no idea who

12   provided the information and it won't compromise your privacy

13   or personal information in any way.

14         So if your answer is yes, raise your hand, we'll

09:26:44 15   bring you the mic, stand up and identify yourself with a

16   number, and I'll ask some follow-up questions.

17         If your answer to any question is no, you don't need

18   to do anything.  I will assume it was no by virtue of the fact

19   that you did not raise your hand.

09:26:59 20        I recognize that it might be difficult for some of

21   you to stand and speak in a public setting like this.  That's

22   not always easy.  But please recognize that all jurors are in

23   the same situation, and it is important that you answer every

24   question to which you have relevant information.

09:27:15 25        If you would feel more comfortable answering a

09:27:18  1  particular question in a less-public setting, just let me know

2  and we'll reserve that answer until later after we've excused

3  the jury panel.  But it will still need to be in front of the

4  court staff and the lawyers so we can take it into account in

09:27:32  5  selecting the jury.

6  All right.  With that introduction, I'm going to ask

7  all of the members of the jury panel please stand to be sworn.

8  (The jury panel was sworn.)

9  THE COURT:  Thanks.  Please have a seat.

09:28:08  10  As mentioned at the start, my name is Dave Campbell.

11  I am a United States District Court judge.  This is a federal

12  court, a United States District Court, but it hears matters

13  that arise within the State of Arizona that fall within the

14  jurisdiction of the federal court, and this case that we're

09:28:24  15  going to be trying is such a case.  So that's why it's here in

16  Arizona federal court as opposed to across the street in state

17  court.

18  Traci Abraham is the courtroom deputy clerk.  She'll

19  be keeping us on time and keeping us organized throughout the

09:28:40  20  trial and correcting mistakes I make.

21  Tricia Lyons is the court reporter.  She will be

22  taking down everything that is said during the trial.

23  Tricia, are you going to have another reporting

24  helping?

09:28:51  25  THE COURT REPORTER:  Yes.  Elaine Cropper.

09:28:53   1        THE COURT:  Elaine Cropper is another court reporter

2   in the courthouse who will be sitting in from time to time to

3   help Tricia during the trial.

4        I have a number of law clerks who assist me in the

09:29:06   5   work here.  They're Margo Casselman, Joe Drummey,

6   Jeff Kilmark, and Mikaela Colby, and also a law clerk by the

7   name of Patrick Tighe, T-I-G-H-E.

8        And my judicial assistant is Nancy Outley.  You'll

9   see her coming in and out of the courtroom from time to time.

09:29:23   10        Do any of you know me or any members of my staff on

11   any basis?  If so, please raise your hand.

12        PROSPECTIVE JUROR:  I'm Number 34.

13        THE COURT:  Yes, sir.

14        PROSPECTIVE JUROR:  I work in the courthouse as a

09:29:44   15   court security officer, so I run across everybody in here from

16   time to time during the day.

17        THE COURT:  You see us all the time.  All right.

18        Do you feel that the fact that you work in the

19   courthouse, that you're around us from time to time, would

09:29:56   20   have any effect upon your ability to be a fair and impartial

21   juror in this case?

22        PROSPECTIVE JUROR:  It's possible.

23        THE COURT:  You think it could have an effect upon

24   you?

09:30:05   25        PROSPECTIVE JUROR:  Yes.

09:30:06   1          THE COURT:  Okay.  Thank you.

           2          Any other responses to that question?

           3          I see no hands.

           4          The plaintiff in this case is represented by

09:30:28   5   Ramon Lopez of the Lopez McHugh firm, and Mark O'Connor of

           6   Gallagher & Kennedy.

           7          Gentlemen, would you stand.

           8          And would one of you also introduce the other

           9   lawyers -- well, first introduce your client, and then

09:30:41  10   introduce the other lawyers who will be involved for the

          11   plaintiff in this case.

          12          MR. O'CONNOR:  I will, Your Honor.

          13          This is our client, Sheri Booker.

          14          Stand up, Sheri.

09:30:54  15          And the -- may she be seated?

          16          The other lawyers who -- I'll just go in order down

          17   here, and there's a number of other lawyers, I think, that may

          18   be heard from during this case, so I'll introduce them all.

          19          This is David Wenner.

09:31:16  20          Next to Mr. Wenner is Mr. Ramon Lopez.

          21          Julia Reed Zaic.

          22          Robin Lourie.

          23          And I just have a handful of others that may be in

          24   and out of the court.  Josh Mankoff.

09:31:41  25          Josh, if you could stand up.

09:31:42  1                Who works with Mr. Lopez's firms.

          2                Joe Johnson.

          3                David DeGreeff.

          4                Hadley Matarazzo.

09:32:02  5                THE COURT:  Mic, please, Mr. O'Connor.

          6                MR. O'CONNOR:  Excuse me.

          7                Lori Smith, where are you?

          8                Thank you.

          9                And I think that covers -- there is one other

09:32:10 10     attorney who is not with us today but may be here later,

         11     Your Honor.  That would be Howard Nations.

         12                THE COURT:  Okay.  Do any members of the jury panel

         13     know the plaintiff or believe you know any of these other

         14     lawyers on any basis?

09:32:26 15                I see no hands.

         16                All right.  The defendants are represented by

         17     Richard North.  He is with the Nelson Mullins Riley &

         18     Scarborough firm, and James Condo from the firm of

         19     Snell & Wilmer.

09:32:41 20                Gentlemen, would you introduce those who are here

         21     with you, including your client representative.

         22                MR. NORTH:  Yes, Your Honor.

         23                First is Mr. Greg Dadika, who is here on behalf of

         24     C.R. Bard and Bard Peripheral Vascular.

09:32:55 25                And also appearing with us is Ms. Elizabeth Helm,

09:32:57  1    from my office.

2              THE COURT:  All right.  Would you introduce the other

3     two gentlemen who are at counsel table.

4              MR. NORTH:  Yes.  This is Mr. Mike Cozzen, who is an

09:33:05  5    advisor to us, and Mr. Scott Russell, who runs the graphics

6     for us.

7              THE COURT:  Okay.  Thank you gentlemen.

8              Do any members of the jury panel know these people on

9     any basis?

09:33:15 10             I see no hands.

11             Ladies and gentlemen, downstairs, when you arrived,

12    you were handed a list of possible witnesses in the trial.  I

13    don't think all of these witnesses will testify, but they

14    might.  And so we wanted to give you this list and see if you

09:33:36 15    recognize any of these names as individuals you might know.

16             So if you think you know anybody on this list, please

17    raise your hand.

18             PROSPECTIVE JUROR:  I'm Juror 29.  On the last page

19    is a John Wheeler listed.  The company I work for, we also

09:33:59 20    have a John Wheeler working for us, so I'm not sure.

21             THE COURT:  Do you know where he's located?

22             PROSPECTIVE JUROR:  I'm not positive without seeing

23    in our Rolodex.

24             THE COURT:  Okay.  Counsel, do you know the location

09:34:09 25    of the John Wheeler on the witness list?

09:34:13  1    MR. NORTH:  Ms. Helm knows John Wheeler and says it

2    is not him.

3        THE COURT:  Okay.  Must be two John Wheelers.

4        Thank you very much.

09:34:20  5    Does anybody else on the jury panel recognize anybody

6    on the witness list?

7        Is there anybody on the jury panel who has not had

8    time to look over the whole list?

9        Okay.  Thank you, all.

09:34:38  10   When we sent out the questionnaire to you, ladies and

11   gentlemen, we indicated that this is going to be a three-week

12   trial.  It's going to take us through the end of the month.  I

13   want to tell you the specific days that we will be in trial

14   the case.

09:34:53  15   We are going to be in trial the rest of this week, so

16   today, tomorrow, and Friday.

17       Next week, we will not be in trial on Monday because

18   I have other cases I need to hear.  But starting Tuesday

19   morning, we'll be in trial next week Tuesday through Friday.

09:35:09  20   And then the week after that, which is the week of

21   Monday the 26th, we will be in trial Monday through Friday.

22       We've timed the case so that we can get it finished

23   for you probably by Thursday afternoon of that last week.  We

24   think that will leave enough time for the jury to deliberate

09:35:29  25   and be done by the end of the business day on Friday,

09:35:32   1    March 30th.  We're pretty confident of that.

2              There have been jury deliberations, however, as you

3    know, that take more time.  So there is at least a possibility

4    that the jury may want to come back and deliberate on Monday,

09:35:45   5    April 2nd.  I don't think that will happen, but that's

6    possible.

7              The daily schedule for the trial will be to start

8    right at 9 o'clock every day, and we're going to do our best

9    to start right on time so we're not wasting any of your time.

09:36:00  10    We will go until noon and take a one-hour break.  We'll go

11    from 1:00 until 4:30.  There may be days when I need to break

12    by 4:15 because I have another hearing at 4:30.  But we'll

13    until 4:15 or 4:30 every day.  We'll take a 15-minute break in

14    the middle of the morning, and one in the middle of the

09:36:22  15    afternoon.  In fact, we'll take a break this morning at about

16    10:30 for 15 minutes.  We'll do our best to stay on time so,

17    as I say, we're not wasting any of your time.

18              Now, you're all here because you indicated that that

19    should not be an issue, or, if you identified an issue, when I

09:36:34  20    looked at your questionnaire it didn't look to me like one

21    that would interfere with your jury service.

22              We ask jurors to serve even when inconvenient because

23    you, as you know, the right to a jury trial is a

24    constitutional right in this country.  It's one of our great

09:36:51  25    protections in the Constitution.

09:36:54  1      But jurors can be excused for undue hardship.  And by

2      undue hardship, I mean more than inconvenience.  I mean a

3      genuine hardship that would be experienced by you or your

4      family.

09:37:03  5      So the follow-up question I want to ask you is

6      whether this trial schedule that I have just described for you

7      would create an undue hardship for any of you.  If so, please

8      raise your hand.

9          PROSPECTIVE JUROR:  Juror Number 12.

09:37:26  10         THE COURT:  Yes, ma'am.

11         PROSPECTIVE JUROR:  I will be out of town.  I'm going

12     to Washington, D.C.  I have a funeral to attend, and I'm

13     leaving tomorrow.

14         THE COURT:  Okay.  And that's a funeral that is in

09:37:36  15     Washington, D.C.?

16         PROSPECTIVE JUROR:  Yes.

17         THE COURT:  Of a friend or a family member?

18         PROSPECTIVE JUROR:  Family member.

19         THE COURT:  Okay.  Thank you.

09:37:49  20     Oh, Juror Number -- well, it looks like it is 19 at

21     the end of the row, Mikaela.  If you don't mind taking --

22         We're going to try to pass this mic in order because

23     it aids us in keeping notes.

24         PROSPECTIVE JUROR:  Hi.  I'm Juror 19.  I live all

09:38:02  25     the way in Casa Grande, and I only have one vehicle that is

09:38:05  1   reliable.  That is a hardship for me because I drive so far

2   for me to be coming back and forth every day on one reliable

3   vehicle that me and my husband both use for work, is really

4   hard for me.

09:38:20  5          THE COURT:  So if you're driving here, he doesn't

6   have it for work?

7          PROSPECTIVE JUROR:  Right.  I actually had to take

8   and he to get a ride.  And he drives to Eloy.  So I live in

9   Casa Grande.

09:38:30  10         THE COURT:  Is there any substitute accommodation

11   that can be made?

12         PROSPECTIVE JUROR:  Probably if I had enough time,

13   which would start next week, but I couldn't be here the first

14   few days of trial.

09:38:40  15         THE COURT:  All right.  Thank you.

16         PROSPECTIVE JUROR:  I'm Number 28.  If it goes to

17   April 1st, I have a minor coming to stay with me from out of

18   state.

19         THE COURT:  On April 1st?

09:38:57  20         PROSPECTIVE JUROR:  On April 1st.

21         THE COURT:  Okay.  You're okay up until then?

22         PROSPECTIVE JUROR:  Yeah.  I mean, the 30th is the

23   first night of Passover, which is not a hardship, but it is,

24   in fact, that night.

09:39:09  25         THE COURT:  It starts on the evening of the 30th.

09:39:11  1          PROSPECTIVE JUROR:  Starts on Friday.

       2          THE COURT:  Right.  Okay.  And that would be at

       3  sunset on Friday.

       4          PROSPECTIVE JUROR:  Um-hmm.

09:39:15  5          THE COURT:  Okay.  Thank you.

       6          PROSPECTIVE JUROR:  Juror Number 40.  I'm sorry, I

       7  didn't understand what you said about the 26th.  The original

       8  documentation said you would not be in session on that date.

       9  Has that changed?

09:39:41 10          THE COURT:  It has changed.  And we did that to try

      11  to give more time for jury deliberation at the end of the

      12  trial as we looked at evidence.

      13          Does that create a problem?

      14          PROSPECTIVE JUROR:  The afternoon of the 26th is an

09:39:52 15  issue for me.  It's a medical problem that my wife is having,

      16  and we struggled to get that appointment, and it would be a

      17  significant problem for us.

      18          THE COURT:  Okay.  And what is your jury number

      19  again, sir?

09:40:08 20          PROSPECTIVE JUROR:  Four zero.

      21          THE COURT:  Okay.  Thank you.

      22          PROSPECTIVE JUROR:  I'm Juror Number 46.  I'm a

      23  special education teacher in a small inner city school

      24  district.  Since receiving the questionnaire, this is the

09:40:20 25  busiest time of year for us, we have a lot of transitions, and

09:40:24  1    a lot of meetings have been scheduled since then, and I have

2    not been able to get all of them covered.

3            I'm also trying to prep my students to take AzMERIT

4    the first week of April, and when I'm gone, I was at jury duty

09:40:38  5    last week, and they typically pull my sub, so that my students

6    are not getting their service minutes, which is very difficult

7    for them as I'm prepping them for the state assessment.

8            I also have parent-teacher conferences today,

9    tomorrow, and Friday.

09:40:52 10            THE COURT:  Okay.  Thank you.

11            PROSPECTIVE JUROR:  I'm Juror Number 56.  I also

12    understood that we wouldn't be in session on the 26th.  My

13    brother's getting married that week, and I'm scheduled to

14    still be with our family for events during that time in

09:41:16 15    Washington state.

16            THE COURT:  Okay.  So you're scheduled to be in

17    Washington on the 26th?

18            PROSPECTIVE JUROR:  Yes, returning to Phoenix on the

19    27th.

09:41:28 20            THE COURT:  Okay.  Thank you.

21            PROSPECTIVE JUROR:  I'm Juror Number 60.

22            THE COURT:  Could you stand, sir, please.

23            PROSPECTIVE JUROR:  Yes, sir.  I just live very far

24    away and I don't have transportation.  I'm also tasked to a

09:41:44 25    military unit, military training unit.

09:41:48  1            THE COURT:  Where do you live?

          2            PROSPECTIVE JUROR:  Yuma, Arizona.

          3            THE COURT:  Okay.  And you don't have any means of

          4    transportation?

09:41:55  5            PROSPECTIVE JUROR:  No.  I had to use public

          6    transportation to come here.

          7            THE COURT:  Okay.  Thank you.

          8            PROSPECTIVE JUROR:  Juror Number 75.  I have an issue

          9    that I -- well, I'm a newly diagnosed cancer patient, and I

09:42:27 10    have several appointments scheduled during those dates.

         11    During most of those dates.

         12            THE COURT:  And these are appointments for your

         13    health care?

         14            PROSPECTIVE JUROR:  Yes, sir.

09:42:39 15            THE COURT:  Okay.  Thank you.

         16            PROSPECTIVE JUROR:  103.  I also have a conflict on

         17    the 26th.  I have an interview for MBA school, W.P. Carey.

         18            THE COURT:  Is that an interview that can be

         19    rescheduled, or is that just a --

09:43:06 20            PROSPECTIVE JUROR:  That's the slot available for my

         21    interview.

         22            THE COURT:  Okay.  Thank you.

         23            PROSPECTIVE JUROR:  I'm Juror 105.  I currently have

         24    medical issues.  I actually have three doctors appointments

09:43:21 25    scheduled for next week to see if I actually have colon rectal

09:43:25 1    cancer.  I also have a disease called POTS.  I can have a

2    seizure at any moment.

3                    THE COURT:  Okay.  Thank you.

4                    PROSPECTIVE JUROR:  I'm Juror 107.  I'm a caregiver

09:43:42 5    to my 80-year-old mother, so I have to be there with her every

6    day.  I can't do it for the three weeks.

7                    THE COURT:  Okay.  Is there any alternative

8    arrangements that can be made for her?

9                    PROSPECTIVE JUROR:  No.

09:43:57 10    THE COURT:  Okay.  Thank you.

11                   PROSPECTIVE JUROR:  Juror 111.  I actually wrote in

12    to be excused for infertility treatment, but I was delayed off

13    last week.  I have an interview today at 2 o'clock via phone,

14    and so I'm looking for employment.  However, I'm willing to

09:44:18 15    serve if there are breaks, like you said, Your Honor.

16                   THE COURT:  Well, let me ask you a question on that

17    last point.  You said if there are breaks like I said.  If we

18    follow the schedule I described, would you be able to do that,

19    or would it interfere with your treatments and your --

09:44:38 20                   PROSPECTIVE JUROR:  I had to cancel my treatment

21    because I had to be here today, and they wouldn't start my

22    treatment knowing that I was with jury duty.

23                   THE COURT:  Okay.  And in terms of your job search,

24    could you do that around the time we've got scheduled?

09:44:51 25                   PROSPECTIVE JUROR:  I will definitely attempt it.

09:44:54  1          THE COURT:  Okay.  Thank you.

2          PROSPECTIVE JUROR:  I'm Juror 116.  I've been

3    currently in the last couple weeks, three weeks actually,

4    taking epidural shots in my back -- I've got some issues to

09:45:14  5    deal with as a result of a couple of surgeries -- and I'm

6    scheduled to have another one on the 26th.  But maybe we could

7    put that off.

8          The only other incident that I may have a problem

9    with, no one can predict this, but I have a brother in Montana

09:45:31  10   that is terminally ill with stage 5 cancer -- stage 5 kidney

11   failure.  And I guess nobody can predict that, but it doesn't

12   look very good.  I talked to his son yesterday.

13         THE COURT:  All right.  You are Juror Number 116; is

14   that right?

09:45:48  15         PROSPECTIVE JUROR:  Yes.

16         THE COURT:  And did you say you can reschedule the

17   26th?

18         PROSPECTIVE JUROR:  Yeah, I can move it around.  It's

19   an epidural shot.  We're trying to get the pain under control.

09:45:57  20   It's caused me some issues, but I can work around that.

21         THE COURT:  Would you be able to sit through a trial

22   with a back issue?

23         PROSPECTIVE JUROR:  I believe so.

24         THE COURT:  Assuming you can stand up when you needed

09:46:07  25   to?

09:46:09  1          PROSPECTIVE JUROR:  Yes, I believe so.

2          THE COURT:  Okay.  Thank you.

3          PROSPECTIVE JUROR:  Hi.  I'm Number 126.  I have a

4     quarterly business review with one of my clients, and we're

09:46:26  5     supposed to be the first week of April, so I thought it

6     wouldn't be a problem, but we rescheduled to the 21st to the

7     23rd in San Diego.

8          THE COURT:  I'm sorry, I got confused.  You said

9     it's -- is it in April, or did it get moved into --

09:46:42 10          PROSPECTIVE JUROR:  It got moved to the 21st through

11     the 23rd.

12          THE COURT:  Okay.  And tell me again the nature of

13     the meeting.

14          PROSPECTIVE JUROR:  It's a quarterly business review.

09:46:50 15     It's the company that I work for.

16          THE COURT:  Is that something that can be rescheduled

17     if you're put on jury duty?

18          PROSPECTIVE JUROR:  It was rescheduled.  I didn't get

19     to pick the time.  We work with their schedule.

09:47:00 20          THE COURT:  Okay.  Thank you.

21          Any other responses?

22          I see no hands.

23          All right.  Let me ask a couple of other questions,

24     ladies and gentlemen, in addition to those that were included

09:47:13 25     in the questionnaire.

09:47:17  1          Have any of you on the jury panel ever worked for the

2    United States Food and Drug Administration?

3          Do any of you have a family member who has ever

4    worked for the FDA, the Food and Drug Administration?

09:47:34  5          I see no hands.

6          Is there anyone who has knowledge of or experience

7    with the process of FDA for having a product or device cleared

8    to be placed on the market and sold to consumers?  Do you have

9    any experience with FDA clearance or approval?

09:48:01  10         PROSPECTIVE JUROR:  Juror Number 16.  The company I

11   work for conducts clinical trials, mostly Phase I drug trials,

12   but all of our work is subject to FDA regulation.  So I'm

13   familiar at a high level with the process.

14         THE COURT:  Did you say familiar at a high level?

09:48:20  15         PROSPECTIVE JUROR:  At a high level.

16         THE COURT:  Okay.  So are you personally involved in

17   those clinical trials?

18         PROSPECTIVE JUROR:  I work with the data that's

19   generated by the trials.  I don't actually conduct the trial

09:48:28  20   myself.

21         THE COURT:  Okay.  Do you prepare data to be

22   submitted to the FDA?

23         PROSPECTIVE JUROR:  Yes.

24         THE COURT:  Do you communicate yourself with the

09:48:34  25   people at the FDA?

09:48:37  1          PROSPECTIVE JUROR:  Only if there's an inspection, an

        2   FDA inspection, we'll actually communicate directly with an

        3   auditor.  But not on a regular basis.

        4          THE COURT:  Okay.  And is your company a company that

09:48:47  5   does this for its own products, or do you do it for other

        6   companies' products?

        7          PROSPECTIVE JUROR:  We do it for other companies.

        8          THE COURT:  What is the nature of the business that

        9   your company is in?

09:48:58 10          PROSPECTIVE JUROR:  We're a clinical research

       11   organization.

       12          THE COURT:  Okay.

       13          There will be evidence in this case about FDA

       14   involvement with the product that is at issue.  The parties

09:49:11 15   disagree on the significance of that involvement and whether

       16   it should have any influence on the jury's decision, and there

       17   will be discussion and evidence regarding that.

       18          Do you think that you could listen to that evidence

       19   fairly and impartially and make your decision based on the

09:49:26 20   evidence that is given during the trial?  Or do you think your

       21   own views and opinions about the FDA would override that

       22   evidence?

       23          PROSPECTIVE JUROR:  Honestly, I think it would -- I

       24   don't think I could be 100 percent impartial.

09:49:40 25          THE COURT:  You think it would have an effect upon

09:49:42  1    your ability to be fair?

2             PROSPECTIVE JUROR:  Yes.

3             THE COURT:  Okay.  Thank you.

4             Any other responses?

09:50:03  5             PROSPECTIVE JUROR:  Juror 57.  I do work with my

6    current job with the FDA, Food and Drug Administration, in the

7    terms of food safety.

8             THE COURT:  Okay.  And what exactly do you do with

9    food safety?

09:50:16 10             PROSPECTIVE JUROR:  My program is involved in the

11   foodborne outbreak investigations, and we are involved in

12   testing food during the foodborne outbreaks.  We communicate

13   with the FDA, and we are reporting to them the significant

14   findings.

09:50:31 15             THE COURT:  Okay.  So is this a company that does the

16   work that you're involved with?

17             PROSPECTIVE JUROR:  No, I'm working for the state.

18             THE COURT:  For the state.  Okay.

19             So you do investigations on behalf of the FDA of

09:50:42 20   foodborne outbreaks?

21             PROSPECTIVE JUROR:  No.  It's part of the geological

22   investigation of the foodborne outbreaks like E. coli,

23   salmonella.

24             THE COURT:  And do you do it for the state and then

09:50:54 25   just report the results to the FDA?  Or do you do it for the

09:50:57  1    FDA?

2            PROSPECTIVE JUROR:  That's correct.  The state with

3    the CDC, Center for Disease Control.

4            THE COURT:  Okay.  Do you personally have involvement

09:51:07  5    with the FDA as a result of that work?

6            PROSPECTIVE JUROR:  I do communicate with them.

7            THE COURT:  And --

8            PROSPECTIVE JUROR:  The results.  I can be asked and

9    explain the findings and interpret the results.

09:51:18  10           THE COURT:  Have you ever had any involvement in the

11   FDA's role of reviewing products before they go to market?

12           PROSPECTIVE JUROR:  No.  No.

13           THE COURT:  In light of what you heard me ask

14   Juror 16, the fact that there will be evidence in this case

09:51:30  15   about the FDA's involvement, with disagreement among the

16   parties on whether that is significant or not, do you think

17   you could be fair and impartial and base your decision just on

18   the evidence presented during trial?

19           PROSPECTIVE JUROR:  I think I can make my decisions.

09:51:45  20           THE COURT:  Based on the evidence?

21           PROSPECTIVE JUROR:  Based on the evidence.

22           THE COURT:  Okay.  Thank you.

23           Any other responses to that question?

24           All right.  The last question is related, but I want

09:52:08  25   to make sure we've covered everything, and it's this:  As I've

09:52:12   1   mentioned, this case will include evidence of the FDA

2   clearance of a medical product, and my question is whether any

3   of you have any strong feelings, favorable or unfavorable,

4   about the FDA or its oversight of medical products?  If you

09:52:29   5   have strong feelings about the FDA, good or bad, please raise

6   your hand.

7            I see no hands.

8            Yes, ma'am.

9            PROSPECTIVE JUROR:  Number 28.  My mother was given a

09:52:45   10  drug that I'm assuming was approved, and this was many years

11  ago, and it didn't affect her, but it affected me.  So I think

12  I do have strong feelings, I don't know if against or for, but

13  because it didn't have favorable effects on me.

14            THE COURT:  Okay.  Would you be able to set aside any

09:53:06   15  feelings from that experience and make your decision just

16  based on the evidence that you hear during this trial?

17            PROSPECTIVE JUROR:  You know, I don't know, because

18  it -- because of that, it left me with the inability to have

19  children.  So --

09:53:22   20            THE COURT:  So it is possible it could affect --

21            PROSPECTIVE JUROR:  Yes, it is possible.

22            THE COURT:  Okay.

23            Any other responses to that question?

24            I see no hands.

09:53:50   25            You may not be able to answer this question fully

09:53:56  1    because you haven't met everybody else on the jury panel, but

2    based on just looking around, do any of you recognize somebody

3    on the jury panel that you knew before today?

4         Okay.  I'll try to remember to ask that question

09:54:10  5    again at the end, after there's been a few more questions.

6         The last question I have is whether any of you have

7    done any research or been exposed to any information about

8    this case since you filled out the jury questionnaire?  If so,

9    please raise your hand.

09:54:29  10        I see no hands.

11        Okay.  What we're going to do, ladies and gentlemen,

12   is I'm going to take a minute to talk to the lawyers at the

13   side of the bench here to try to save some time in the

14   questioning.

09:54:40  15        While we do that, if you want to stand up where you

16   are, that's fine.  It will only take a minute, and then we'll

17   be asking some follow-up questions of you.

18        Counsel, if you could approach, please.

19      (Bench conference as follows:)

09:55:12  20        THE COURT:  Okay, everybody.

21        So I'm going to excuse for hardship Jurors 12, 19,

22   40, 46, 56, 60, 75, 103, 105, 107, and 126.

23        Depending on how we do on the number of jurors, I'll

24   also at least consider excusing Juror 111 and 116.  Although I

09:56:48  25   want to make sure we have enough jurors before we excuse those

09:56:51  1    folks.

2                So based on what we've heard so far, are there

3    challenges for cause from plaintiffs?

4                MR. O'CONNOR:  Yes, Your Honor.

09:57:01  5    THE COURT:  Come right here and speak into the mic,

6    would you.  Whoever is speaking, we've got to do it so the

7    court reporter can hear.

8                MR. WENNER:  Your Honor, Juror Number -- this is

9    David Wenner for plaintiffs.  Mr. Mxxxxx said in court that he

09:57:22  10   cannot be impartial in this case.  He also, in his

11   questionnaire, answered 60 yes, that he can't be impartial.

12   He does clinical trials --

13               THE COURT:  Before you go on.  Let me just see if

14   there's any objection from the defendant on Juror 16.

09:57:40  15   MR. NORTH:  No objection.

16               THE COURT:  Okay.  He did say that he can't be fair

17   and impartial, so I'm going to grant the challenge for cause

18   to Juror 16.

19               Any others, Mr. Wenner or Mr. O'Connor?

09:57:59  20   MR. WENNER:  Yes, Your Honor.  Juror Number 34 is the

21   security officer in the courthouse.  He's --

22               THE COURT:  Right.  Well, just to save time, let me

23   see if there's an objection.  If not, we'll hear more.

24               MR. NORTH:  Your Honor, I would submit that we should

09:58:12  25   have some follow-up questions.  I think he worded it, he says

09:58:14  1    he questions whether he can be fair.

2            THE COURT:  Okay.  Go ahead, Mr. Wenner, if you have

3    other points you want to make.

4            MR. WENNER:  Just if we have enough jurors,

09:58:23  5    Your Honor, and so if he starts out saying, Well, I question

6    if I could be fair, I think that's a problem.

7            THE COURT:  Okay.  At this point I'm not going to

8    grant the challenge for cause.  You can ask follow-up

9    questions of him.

09:58:40  10           Are there any others from plaintiffs?

11           MR. WENNER:  Not based on what was said so far,

12   Your Honor, but we have follow-up questions.

13           THE COURT:  Sure.  Right.

14           How about from the defense?

09:58:54  15           MR. NORTH:  Not at this juncture, Your Honor.

16           THE COURT:  Okay.  So what we need to do before you

17   leave, Mr. Wenner, let's all count up the lowest 20 numbers

18   that remain, and those will be the folks you're going to ask

19   follow-up questions of, and make sure we wind up on the same

09:59:09  20   number.

21           I get through Juror 51.

22           Looks like you're not doing it the same way I am.

23           Okay.  Let me tell you who we're not going to

24   include.  We're going to go through Juror 51, but we're not

09:59:36  25   including the following because they've been excused for

09:59:40    1    hardship or challenge for cause:  12, 16, 19, 40, and 46.

            2         So we'll take out those.  We'll go through 51.  We'll

            3    let plaintiffs go first and ask your questions, and then

            4    defendant, and then we'll bring you back to sidebar and see

09:59:59    5    who we're going to challenge for cause in that group.

            6         MR. WENNER:  At this stage, are we going to ask the

            7    follow-ups from questionnaire?

            8         THE COURT:  Yes.  Your follow-up questions of those

            9    jurors come in.

10:00:11   10         MR. WENNER:  What time is the morning break,

           11    Your Honor?

           12         THE COURT:  10:30.

           13         MR. CONDO:  Your Honor, Jim Condo.  For the jurors

           14    excused, 12 and 19, are they going to leave now?

10:00:23   15         THE COURT:  (Shakes head.)

           16         MR. CONDO:  Okay.  So they'll stay in the box.

           17         THE COURT:  You just won't ask them questions.

           18         MR. CONDO:  Just won't ask any questions.  Okay.

           19         THE COURT:  All right.

10:00:34   20       (Bench conference concludes.)

           21         THE COURT:  Thank you, ladies and gentlemen, for your

           22    patience.

           23         All right.  Ladies and gentlemen, what we're now

           24    going to do is ask some follow-up questions, but to save time

10:00:55   25    for you, what we're going to do is ask them to just some of

10:00:59  1   you, the lowest 20 on the list after we've had a sidebar.  Not

2   all of you, but it's actually about the lowest 25.  And we're

3   going to talk again.  And if we need to ask more questions,

4   we'll come back and ask questions of the next ten, and then

10:01:14  5   we'll talk again.  We're going to do that to save your time.

6   If we ask all 60 of you, we may not need to ask that many

7   questions to get the jury.  So we're going to kind of do in it

8   increments and hopefully save the time that would otherwise be

9   taken in asking questions that aren't needed.

10:01:30  10          Again, as I mention, please understand the questions

11   from the lawyers are not intended to pry unnecessarily.  They

12   need to ask follow-up questions to answers you've given in the

13   questionnaire in order to make their best judgment of who

14   should be a fair and impartial juror.

10:01:44  15          So we're going to start with plaintiffs' counsel.

16          Mr. O'Connor.

17          MR. O'CONNOR:  Thank you, Your Honor.

18          Good morning.  And just like Judge Campbell said, I'm

19   going to ask questions --

10:02:05  20          THE COURT:  Mr. O'Connor, I'm sorry, you need to stay

21   at the mic.

22          MR. O'CONNOR:  I'm going to ask you questions follow

23   up to the questionnaires.  And, again, my objective here is

24   not to pry or embarrass anybody.  Our goal here is to do what

10:02:20  25   we can for our client and for everyone here to make sure that

10:02:24  1    we have a fair and impartial jury to hear this case.

2        So let me start with Juror Number 4.  You filled out

3    a questionnaire, and thank you.  And going through your

4    questionnaire, and you had indicated that you have feelings in

10:02:48  5    favor of device manufacturers.  Am I correct about that?

6        PROSPECTIVE JUROR:  Yes.

7        THE COURT:  And Juror 4, let's hand you the mic.  If

8    you wouldn't mind standing up so the lawyers behind

9    Mr. O'Connor can see you, we'll have you answer.  Thank you.

10:03:03  10       MR. O'CONNOR:  And so is it fair to say, Juror

11    Number 4, based on that response, that you're starting out

12    this case with feelings that are in favor for the defendant,

13    who is a manufacturer, a device manufacturer?

14       PROSPECTIVE JUROR:  Yes, that's correct.

10:03:21  15       MR. O'CONNOR:  And that's how -- you feel strongly

16    about that, I take it?

17       PROSPECTIVE JUROR:  Yes, I do.  I have been in

18    medical field for 32 years.  I deal with patient charts, and

19    I've coded innumerable number of inferior vena cava filter

10:03:35  20    implantations, and I'm in favor of the medical field, of

21    course.

22       MR. O'CONNOR:  Understood.  Thank you for that.  I

23    appreciate that.

24       And so it sounds as though that, based upon that,

10:03:45  25    you're starting in favor -- in other words, the parties aren't

10:03:50  1    starting on an equal --

       2          THE COURT:  Mr. O'Connor, I don't mean to interrupt

       3    you, but just in the interest of time, I think you've covered

       4    that ground.  If you could just try to cover new ground.

10:03:58  5          MR. O'CONNOR:  Sure.

       6          THE COURT:  And before you do it, let me say

       7    something to the whole jury panel.

       8          I'm not doing anything to undo your answer.

       9          PROSPECTIVE JUROR:  Yes.

10:04:03  10         THE COURT:  But I want to make this clear to all of

      11    the jurors.  All of us, if we let it happen, could think of

      12    something from an experience in our life that would affect us

      13    in a particular case.  What the jury's going to be instructed

      14    to do in this case is to set aside any biases or preferences

10:04:19  15    or opinions that they might already have and judge the

      16    evidence fairly.

      17         So the important question is:  Do you think you can

      18    do that?  If you don't think you can do that because you have

      19    stronger feelings, then that's what we need to know.  But if

10:04:35  20    you think you could set aside any opinion or experience and

      21    treat the evidence fairly, that's very important for us to

      22    know as well.

      23         So I guess the follow-up I would ask, Juror 4, is:

      24    Are your feelings strong enough that you think it would be

10:04:47  25    hard to set them aside in evaluating this case?

10:04:51  1              PROSPECTIVE JUROR:  I think I would have a real

        2       problem with that.

        3              THE COURT:  Okay.  That's a fair answer.  Okay.

        4       Thanks.

10:04:57  5              Sorry for any interruption, Mr. O'Connor.

        6              MR. O'CONNOR:  No, Your Honor.

        7              And just one more follow-up?

        8              THE COURT:  Yes.

        9              MR. O'CONNOR:  Just so long as -- and, again, thank

10:05:05 10       you.  I believe that you said in response to question

       11       number 60, you specifically stated you did not feel you could

       12       be fair and impartial in this lawsuit.  Is that fair?

       13              PROSPECTIVE JUROR:  That is correct.

       14              MR. O'CONNOR:  All right.

10:05:18 15              THE COURT:  Thank you.

       16              MR. O'CONNOR:  Juror Number 11 is not present.

       17              Juror Number 17.  How are you?

       18              And, again, thank you for responding to our

       19       questionnaire.  You'll get a microphone here.

10:06:05 20              You ranked personal injury lawyers at a two, that you

       21       don't have an especially favorable view when you answered the

       22       question.  Did I understand that correctly?

       23              PROSPECTIVE JUROR:  That's correct.

       24              MR. O'CONNOR:  And can you explain why that is?

10:06:21 25              PROSPECTIVE JUROR:  Just over my career, I've seen

10:06:22  1    that personal injury attorneys seem to take good intentions

2    and make things into very disfavorable outcomes.

3             THE COURT:  I'm sorry, excuse me.

4             Juror 17, could you just speak up a little bit, it is

10:06:40  5    a little hard to hear you.

6             PROSPECTIVE JUROR:  Yes.  Sorry.

7             THE COURT:  I think we got that.  If you could just

8    raise your voice a bit.

9             PROSPECTIVE JUROR:  Of course, Your Honor.

10:06:48  10            MR. O'CONNOR:  And that feeling, do you think that is

11   going to cause you difficulty in starting out this case being

12   fair and impartial?

13            PROSPECTIVE JUROR:  Yes.

14            MR. O'CONNOR:  And I think you also said that you

10:06:59  15   have strong feelings about medical devices, such as IVC

16   filters.  Did I understand that correctly?

17            PROSPECTIVE JUROR:  That's correct.

18            MR. O'CONNOR:  You feel that there are more benefits

19   to risks, and that is something you have felt about long

10:07:12  20   before you received this questionnaire.  Is that fair?

21            PROSPECTIVE JUROR:  Yes, that's correct.

22            MR. O'CONNOR:  You have very strong feelings about

23   medical devices, including IVC filters?

24            PROSPECTIVE JUROR:  Correct.

10:07:22  25            MR. O'CONNOR:  And, again, starting out with that

10:07:24  1   belief, before you ever came here, is that something that you

2   believe will impact your ability and cause you difficulty in

3   being fair and impartial in this lawsuit?

4           PROSPECTIVE JUROR:  Yes, I believe so.

10:07:42  5           MR. O'CONNOR:  So if evidence that's presented in

6   this case conflicts with your prior feelings and prior

7   knowledge, you would have difficulty being objective and

8   listening to it.  Is that fair?

9           PROSPECTIVE JUROR:  I believe I would be objective.

10:07:56  10           MR. O'CONNOR:  But still, your predisposition would

11   cause to you lean towards medical device companies?

12           PROSPECTIVE JUROR:  I'm not sure I would agree with

13   that, no.

14           MR. O'CONNOR:  Just going through your feelings that

10:08:16  15   we talked about, about your strong feelings that you had

16   before here, you are in favor and believe that medical devices

17   like filters bring more benefits than risk?

18           PROSPECTIVE JUROR:  Yes, definitely.

19           MR. O'CONNOR:  And that will affect your ability to

10:08:32  20   be fair and impartial in this case?

21           PROSPECTIVE JUROR:  Yes, it will.

22           MR. O'CONNOR:  Excuse me, may I consult with

23   Mr. Wenner, Your Honor?

24           THE COURT:  Yes.

10:08:49  25           MR. O'CONNOR:  I was just reminded, in your written

10:08:51  1   answers to our questionnaire, Juror 17, you specifically said

2   you could not be fair and impartial; is that right?

3            PROSPECTIVE JUROR:  Yes.  I'm not sure which question

4   you're asking about, but --

10:09:02  5            MR. O'CONNOR:  I'll remind you of that.

6            THE COURT:  It is question 60.

7            MR. O'CONNOR:  Number 60.  "Do you know of any reason

8   you could not be fair and impartial," and your response was,

9   and what you told us here today is you strongly believe IVC

10:09:21  10  filters are worth the risk of being placed; is that correct?

11           PROSPECTIVE JUROR:  That's correct.

12           MR. O'CONNOR:  And that will affect your ability to

13  be fair and impartial here?

14           PROSPECTIVE JUROR:  That's my belief, yes.

10:09:37  15           MR. O'CONNOR:  Thank you.

16           THE COURT:  Thank you, sir.

17           MR. O'CONNOR:  Juror Number 34.  You told us you work

18  here.

19           PROSPECTIVE JUROR:  I do.

10:10:24  20           MR. O'CONNOR:  And I imagine that means you see

21  lawyers and parties every day of the week.

22           PROSPECTIVE JUROR:  I've been dealing with lawyers

23  for the last 30-some years.

24           MR. O'CONNOR:  I can understand your feelings.

10:10:36  25           It sounds as though just what you do everyday is

10:10:39   1   going to cause you difficulties sitting down and hearing the

2   case where there's a dispute in a civil matter.

3          PROSPECTIVE JUROR:  Correct.

4          MR. O'CONNOR:  You probably hear all sorts of stories

10:10:50   5   working in the courthouse.

6          PROSPECTIVE JUROR:  Correct.

7          MR. O'CONNOR:  And it's natural when people hear

8   stories to develop opinions.

9          PROSPECTIVE JUROR:  Correct.

10:10:59   10          MR. O'CONNOR:  And it's fair to say that any opinions

11   you have about lawyers and lawsuits, that you just can't set

12   those aside coming here and hearing the evidence?

13          PROSPECTIVE JUROR:  Correct.

14          MR. O'CONNOR:  And in terms of the plaintiff or the

10:11:09   15   defendant, do you have feelings where you have opinions that

16   are stronger against one party or another?

17          PROSPECTIVE JUROR:  If I have any feelings at all,

18   it's going to be with the attorneys.  Only because I'm a

19   police officer for over 30 years.  So I did a lot of

10:11:30   20   testifying, have a lot of defense attorneys trying to trick

21   you up on the stand, and stuff like that.  So that's going

22   make it kind of hard for me to --

23          MR. O'CONNOR:  You're going to judge the lawyers and

24   you're going to judge the questions, and you can't leave that

10:11:42   25   experience behind you?

10:11:43   1          PROSPECTIVE JUROR:  No.  That would be too hard.

2          MR. O'CONNOR:  And law enforcement on top of your

3    work here, I take it, is going to affect your ability

4    strongly, even before you even came in here, to be fair and

10:11:52   5    impartial in this case.  Is that fair?

6          PROSPECTIVE JUROR:  Correct.

7          MR. O'CONNOR:  Thanks.  Appreciate that.

8          Juror 49, where are you?  Hi.

9          And, again, I want to thank you, just like everybody,

10:12:37  10    for being very responsive to our written questions and giving

11    us the information we needed to do what we need to do on

12    behalf of our respective clients.

13          But I believe you had indicated --

14          THE COURT:  Mr. O'Connor, mic, please.

10:12:54  15          MR. O'CONNOR:  Pardon me?

16          THE COURT:  Mic, please.  You can come around this

17    side and move the mic --

18          MR. O'CONNOR:  I'll do that.

19          You have feelings about medical devices and medical

10:13:09  20    companies.  Is that fair?  Medical device companies.

21          PROSPECTIVE JUROR:  None directly, per se.  Just it

22    seems to me incumbent that such a device would carry with it

23    high risk.

24          MR. O'CONNOR:  Pardon me?

10:13:25  25          PROSPECTIVE JUROR:  It seems to me that a device that

10:13:29  1    would be inserted upstream of the heart would carry high risk.

2    That is what I believe I put on there.

3              MR. O'CONNOR:  And those high risks are something

4    that you think that is normal or natural for a medical device?

10:13:44  5              PROSPECTIVE JUROR:  I would think it's inescapable.

6              MR. O'CONNOR:  Pardon me?

7              PROSPECTIVE JUROR:  I would think that is

8    inescapable, yes.

9              MR. O'CONNOR:  And so if evidence on risk/benefit

10:13:54  10   were to come through witnesses in this case, it sounds as

11   though you feel strongly that no matter what benefits there

12   are, every device has risk, and that's just something that

13   patients need to live with.  Is that fair?

14             PROSPECTIVE JUROR:  Yes.  I'm afraid a decision like

10:14:07  15   that would have to be made on the basis of the lesser of two

16   evils.

17             MR. O'CONNOR:  And that is an issue that you feel

18   very strongly about before you ever came here.  True?

19             PROSPECTIVE JUROR:  Yes.

10:14:21  20             MR. O'CONNOR:  As a matter of fact, I think we had a

21   question, number 60, that asks you if you could be fair and

22   impartial, and you do not -- from what you know already about

23   this case, you believe you could not be fair and impartial.

24             PROSPECTIVE JUROR:  I guess what I'm saying is it

10:14:38  25   would be difficult for me to allow empathy to sway me from the

10:14:45  1    fact what we're doing here is highly risky to begin with.

2         MR. O'CONNOR:  Fair enough.  And I appreciate that.

3    Meaning that you would have -- you would favor a medical

4    device company, the evidence for the medical device company,

10:14:59  5    knowing what you believe that medical devices come with risks,

6    and sometimes people have to set those risks.

7         PROSPECTIVE JUROR:  Yes.  Unless there were

8    negligence or deceit involved, yes.

9         MR. O'CONNOR:  So is it fair to say, Juror 49, that

10:15:21  10   you are starting out with strong feelings in favor of the

11   medical device company in this case?

12        PROSPECTIVE JUROR:  Yeah, I think so.

13        MR. O'CONNOR:  And that it would be difficult for you

14   to be fair and impartial based upon your feelings that you

10:15:31  15   developed long before you came here.

16        PROSPECTIVE JUROR:  It would be difficult.

17        MR. O'CONNOR:  All right.

18        Let me consult with my attorney here.

19      (Counsel confer.)

10:16:00  20        MR. O'CONNOR:  And just to take this full circle,

21   when we asked you in question number 60 do you know of any

22   reason you could not be a fair and impartial, unbiased juror

23   in this lawsuit, you said yes, and your answer was "How can

24   risk be removed from a renal filter?"

10:16:19  25        That was your answer?

10:16:22  1          PROSPECTIVE JUROR:  Yes.

          2          MR. O'CONNOR:  And you felt that way long before you

          3   even answered this questionnaire?

          4          PROSPECTIVE JUROR:  Yes.

10:16:38  5          MR. O'CONNOR:  And that is still the way you feel

          6   coming here today?

          7          PROSPECTIVE JUROR:  Yes.

          8          MR. O'CONNOR:  Thank you.

          9          Is Juror 29 still here?

10:17:25 10          Hello, Juror 29.

         11          THE COURT:  Mic, please, Mr. O'Connor.

         12          MR. O'CONNOR:  Thank you, Your Honor.

         13          I'm talking to Juror 29.

         14          You answered the questionnaire in that you feel that

10:17:44 15   there are verdicts that are just too high.  Is that fair?

         16          PROSPECTIVE JUROR:  Yeah.

         17          MR. O'CONNOR:  And can you tell us how you came about

         18   that feeling?

         19          PROSPECTIVE JUROR:  Basic news coverage, media

10:17:58 20   coverage on how people are awarded things for certain

         21   lawsuits.

         22          MR. O'CONNOR:  Is that a strong feeling that you

         23   have, that verdicts are simply too high?

         24          PROSPECTIVE JUROR:  Yes.

10:18:11 25          MR. O'CONNOR:  Is that a feeling that you had long

10:18:14  1   before you came here to this court?

2          PROSPECTIVE JUROR:  Yes.

3          MR. O'CONNOR:  And that feeling that you have that

4   verdicts are too high, does that mean that you would have

10:18:22  5   difficulty being fair and impartial to the side that is going

6   to be requesting money damages?

7          PROSPECTIVE JUROR:  Not necessarily.  I think I would

8   feel -- I would base it on what's to come in the future.

9          MR. O'CONNOR:  This is a case for damages.  Are you

10:18:44 10   starting this case with a bias in favor of one party or the

11   other?

12          PROSPECTIVE JUROR:  Considering that I have a device

13   implanted in myself, not anything that's covered here, it's

14   possible that I do.

10:19:00 15          MR. O'CONNOR:  And that you feel the fact you have a

16   medical device would cause you to favor a medical device

17   company?

18          PROSPECTIVE JUROR:  It's possible.  I'd have to see

19   the evidence in order to make an educational judgment.

10:19:14 20          MR. O'CONNOR:  But is it a feeling that concerns you

21   before you even start this case, that you may be viewing one

22   side, the medical device manufacturer, in a better light than

23   the party that is asking for damages?

24          PROSPECTIVE JUROR:  Yeah, I do.

10:19:30 25          MR. O'CONNOR:  And so the parties aren't really

10:19:31  1  starting out with equal footing, in your mind?

2              PROSPECTIVE JUROR:  Not necessarily, no.

3              MR. O'CONNOR:  You don't think they're starting out

4  equal.  Is that fair?  Do you agree that's fair?

10:19:43  5              PROSPECTIVE JUROR:  (Nods head.)

6              THE COURT:  Juror 29, let me ask you a follow-up

7  question, both with respect to your view on verdicts and the

8  fact that you have an implant.

9              Do you think you could set those feelings aside and

10:19:52 10  decide this case strictly on the evidence, or do you think

11  that would be hard for you to do because of your feelings

12  about verdicts or your implant?

13              PROSPECTIVE JUROR:  I'd like to think that I would,

14  but I can't say honestly that yes, I would.

10:20:06 15              THE COURT:  Do you think it could affect you?

16              PROSPECTIVE JUROR:  It could affect me, yes.

17              THE COURT:  Okay.  Thank you.

18              MR. O'CONNOR:  Thank you, Juror 29.  I appreciate

19  that.

10:20:34 20              Juror Number 30, I do have some questions for you.

21              And, again, thank you for being responsive to our

22  questions.

23              You said that you don't believe in lawsuits.

24              PROSPECTIVE JUROR:  I don't.

10:20:49 25              MR. O'CONNOR:  Can you tell me about that.

10:20:52  1          PROSPECTIVE JUROR:  I probably don't believe in a lot

2     of them.  I don't feel some people are subject to, like,

3     accidents, and go back and think about the old McDonald's

4     lawsuit, you know, the coffee with the water was too hot and

10:21:07  5     they sued and made a bundle of money.

6          We -- my husband and I could have personally sued for

7     his medical surgery that was botched, but we didn't.  I don't

8     believe in myself to sue anybody for anything, because

9     accidents do happen.  There may be cases, say somebody's

10:21:34 10     driving under the influence and they go out and cause an

11     accident.  That, I believe in suing.

12          MR. O'CONNOR:  First of all, I'm sorry about and you

13     your husband's situation, and thank you for sharing that with

14     us.

10:21:49 15          It sounds, Juror Number 30, that coming here, before

16     you ever got here today, that you look suspiciously at a party

17     that would bring a lawsuit for damages.  Is that fair?

18          PROSPECTIVE JUROR:  Depending on the reasoning.  Like

19     I said, if somebody went out for -- they were drunk and there

10:22:08 20     was an accident, somebody was hurt, in that case, because

21     somebody did something intentionally -- but I know there's a

22     lot of things that happen in this world that are not

23     intentional, but people take the advantage of an accident or

24     something and they go ahead and sue.

10:22:25 25          MR. O'CONNOR:  Your feeling about litigation in

10:22:27   1    general, though, is that something that will cause you to be

           2    suspect or question or have difficulty being fair towards my

           3    client, who is bringing this lawsuit?

           4              PROSPECTIVE JUROR:  I think it's possible.

10:22:43   5              MR. O'CONNOR:  So, in other words, you're sitting

           6    here and you are telling us that you believe that you would

           7    have difficulty being fair and impartial, especially when it

           8    comes to hearing the plaintiff's side of this case?

           9              PROSPECTIVE JUROR:  Yes.

10:22:58  10              MR. O'CONNOR:  And that's a feeling that you've had

          11    before you ever got here?

          12              PROSPECTIVE JUROR:  Long, long time ago.

          13              MR. O'CONNOR:  And sometimes --

          14              THE COURT:  Mr. O'Connor, I think we've covered this

10:23:07  15    ground enough.

          16              MR. O'CONNOR:  Pardon me?

          17              THE COURT:  We've covered this ground enough.

          18              MR. O'CONNOR:  All right.  Thank you.

          19              Where is Juror Number 10?

10:23:52  20              Thank you for answering questions.

          21              You're driving all the way from Payson?

          22              PROSPECTIVE JUROR:  Yes.

          23              MR. O'CONNOR:  Every day?

          24              PROSPECTIVE JUROR:  Well, I can stay here.

10:24:02  25              MR. O'CONNOR:  So will travel cause you any

10:24:03  1    difficulties in attending to the evidence on a regular basis?

2              PROSPECTIVE JUROR:  No.

3              MR. O'CONNOR:  You're a registered nurse.

4              PROSPECTIVE JUROR:  I am.  I was.  I'm not registered

10:24:19  5    anymore.  I'm retired.

6              MR. O'CONNOR:  All right.  Well, thank you for the

7    time you did that.

8              If you're selected as a juror -- you've had

9    experience with medical devices in patients?

10:24:34  10             PROSPECTIVE JUROR:  Yes.

11             MR. O'CONNOR:  What about IVC filters?

12             PROSPECTIVE JUROR:  My experience with them is I

13   worked in the recovery room, and so I took care of patients

14   who had had them inserted.

10:24:47  15             MR. O'CONNOR:  All right. and is there anything about

16   your experience just working in the medical field, knowing

17   about medical devices, that you think would impact or affect

18   your ability to hear the evidence in this case?

19             PROSPECTIVE JUROR:  I don't think so.

10:25:01  20             MR. O'CONNOR:  Are you able to listen to evidence

21   that will concern risk and benefits of a medical device?

22             PROSPECTIVE JUROR:  Yes.

23             MR. O'CONNOR:  In terms of -- did you work directly

24   with medical device companies?

10:25:11  25             PROSPECTIVE JUROR:  No.

10:25:12  1          MR. O'CONNOR:  Did you have any contact with medical

2     device representatives?

3          PROSPECTIVE JUROR:  I probably did when they were

4     orienting you to new equipment.  But that would be all.

10:25:26  5          MR. O'CONNOR:  I thought I read that you had actually

6     used Bard products in the hospital you worked at.

7          PROSPECTIVE JUROR:  I'm sure that I have.

8          MR. O'CONNOR:  Does that -- have you developed any

9     feelings that there are some devices that are better than

10:25:42 10     others in terms of brands?

11          PROSPECTIVE JUROR:  No.

12          MR. O'CONNOR:  There's going to be a number of

13     experts in the medical field and technical backgrounds and

14     engineers coming in here to talk to the jury that's going to

10:25:59 15     be empaneled in this case.  You worked around a lot of doctors

16     yourself.

17          Is there anything about your background, what you've

18     done all those years, that would make it difficult for you to

19     listen to the evidence, the testimony from an expert, like a

10:26:14 20     doctor or somebody in the medical field, objectively?

21          PROSPECTIVE JUROR:  I don't think so.

22          MR. O'CONNOR:  All right.  Thank you.

23          I'm sorry, I did have one more question for you,

24     Juror Number 10.

10:26:45 25          You did indicate that you have a master's degree in

10:26:49  1    bioethics.

2              PROSPECTIVE JUROR:  I do.

3              MR. O'CONNOR:  What does that subject entail?

4              PROSPECTIVE JUROR:  Trying to determine what is right

10:26:59  5    and wrong, and, of course, in my field in medical care,

6         listening to both sides and trying to determine what is right.

7              MR. O'CONNOR:  And is that -- that degree, did you

8         apply it while you were working as a nurse?

9              PROSPECTIVE JUROR:  Yes.  I was on the ethics

10:27:22 10    committee of the hospital.

11             MR. O'CONNOR:  And being involved in bioethics and

12        having been on the ethics committee, do you have -- do you

13        think that that may in any way affect how you'll listen to the

14        evidence and affect your ability to be fair and impartial?

10:27:47 15            PROSPECTIVE JUROR:  I think it should help.  I don't

16        think it would affect it.

17             MR. O'CONNOR:  Thank you.  I appreciate that.

18             Juror Number 16.

19             THE COURT:  He's not one of the ones we're going to

10:28:41 20    question --

21             MR. O'CONNOR:  Thank you, Your Honor --

22             THE COURT:  No offense to you, Juror 16, but you had

23        already answered the specific question.  Thank you.

24             MR. O'CONNOR:  Juror Number 23.

10:29:13 25            Thank you for answering the questionnaire.

10:29:16   1          You had indicated in your questionnaire that you feel

           2   damages are too high, money damages.  Did I read that

           3   correctly in your questionnaire?

           4          PROSPECTIVE JUROR:  I don't recall what I answered.

10:29:28   5          MR. O'CONNOR:  Pardon me?

           6          PROSPECTIVE JUROR:  I don't recall what I answered.

           7   I don't recall seeing an amount.

           8          MR. O'CONNOR:  Do you feel that -- do you have a

           9   feeling that money damages are too high from what you've read

10:29:38  10   or heard?

          11          PROSPECTIVE JUROR:  No.

          12          MR. O'CONNOR:  Thank you.

          13          Well, excuse me, I do have one more question.

          14          Did you sit as a juror prior?  Do you have prior jury

10:29:50  15   experience?

          16          PROSPECTIVE JUROR:  Not on federal.

          17          MR. O'CONNOR:  Okay.  Thank you.

          18          Juror Number 26.

          19          You indicated your daughter works for Gore.

10:30:11  20          PROSPECTIVE JUROR:  Yes.

          21          MR. O'CONNOR:  Up in Flagstaff?

          22          PROSPECTIVE JUROR:  No, here in Phoenix.

          23          MR. O'CONNOR:  What does she do?

          24          PROSPECTIVE JUROR:  Assembles devices.

10:30:18  25          MR. O'CONNOR:  Medical devices?

10:30:20  1              PROSPECTIVE JUROR:  Yes.

        2              MR. O'CONNOR:  Do you discuss her work with her?

        3              PROSPECTIVE JUROR:  No.

        4              MR. O'CONNOR:  Is there anything about what your

10:30:24  5     daughter does that causes you to feel that you may not be fair

        6     and impartial in this case?

        7              PROSPECTIVE JUROR:  No.

        8              MR. O'CONNOR:  Do you have any experience yourself

        9     with medical devices?

10:30:32 10              PROSPECTIVE JUROR:  No.

       11              MR. O'CONNOR:  What kind of devices does your

       12     daughter assemble?  Do you know?

       13              PROSPECTIVE JUROR:  No, I don't know.

       14              MR. O'CONNOR:  Okay.  Thank you.

10:30:48 15              THE COURT:  Mr. O'Connor, we're going to go ahead and

       16     take a break at this point since we're a little past 10:30.

       17              Ladies and gentlemen on the jury panel, let me

       18     mention something to you before we break.

       19              Please do not discuss this case during the break or

10:31:02 20     at any time during the trial.  That's an instruction I'm going

       21     to give the jury, and the reason we do that is because you

       22     need to make your decision based on what you hear in evidence

       23     in the courtroom, and not on what somebody else may say to

       24     you.  So the instruction to the jury throughout the case will

10:31:17 25     be not to talk to anyone about the case or allow anybody to

10:31:21  1    talk to them.

2              Please leave your number on your seat so that when

3    you come back into the courtroom you can sit in the same

4    location.

10:31:30  5             As you go out the door, there are restrooms in both

6    directions on this floor and on the two floors below.

7              We're going to take a 15-minute break.  So we will

8    resume at about 13 minutes to the hour, and then we'll get

9    this done as soon as we can.

10:31:45 10             So we'll excuse the jury panel at this time.

11             (The jury panel exited the courtroom at 10:31.)

12             THE COURT:  All right.  Mr. O'Connor, do you have any

13    other questions you're going to be asking?

14             MR. O'CONNOR:  I'm going to have to --

10:32:51 15             THE COURTROOM DEPUTY:  Ma'am, if you would --

16             THE COURT:  Thank you, ma'am.

17             MR. O'CONNOR:  I think we're getting close, but I'm

18    going to have to talk to Mr. Wenner.

19             THE COURT:  Okay.  If you do have more, I'd ask you

10:32:59 20    to just pick up the pace a little bit, just because we're

21    already at 10:30 and we've only finished the first round of

22    questioning.

23             MR. O'CONNOR:  Thank you.

24             THE COURT:  Okay.  Any questions you have, we'll do

10:33:08 25    that, but then we'll go to defense questioning.

10:33:10  1           We'll see you at 13 minutes to the hour.

2           (Recess taken from 10:33 to 10:48.  Proceedings resumed

3      in open court with the jury present.)

4               THE COURT:  Thank you.  Please be seated.

10:48:15  5           All right.  Thank you, ladies and gentlemen, for

6      being back.

7               Any further questions, Mr. O'Connor?

8               MR. O'CONNOR:  Yes.  Just two more members.

9               THE COURT:  Okay.  Let's do it in about three

10:48:34 10      minutes, please.

11              MR. O'CONNOR:  All right.

12              Juror Number 21.  You're a nurse; is that right?

13              PROSPECTIVE JUROR:  That's correct.

14              MR. O'CONNOR:  I think you said you have favorable

10:48:41 15      feelings towards medical device companies?

16              PROSPECTIVE JUROR:  I do.

17              MR. O'CONNOR:  And knowing that, does that mean

18      you're starting with a bias in favor of medical devices?

19              PROSPECTIVE JUROR:  Not at all.  No.

10:48:55 20              MR. O'CONNOR:  You do use Bard products?

21              PROSPECTIVE JUROR:  All the time.

22              MR. O'CONNOR:  Is that going to affect your ability

23      to be fair and impartial?

24              PROSPECTIVE JUROR:  No.

10:49:02 25              MR. O'CONNOR:  Do you have experience with IVC

10:49:05   1   filters?

2           PROSPECTIVE JUROR:  I did years ago.

3           MR. O'CONNOR:  What did you do?  What was your

4   involvement?

10:49:12   5           PROSPECTIVE JUROR:  I worked in the operating room,

6   and years ago I worked where we did vascular procedures, in

7   another state, and I helped put in a couple IVCs.  Since then

8   I haven't worked in that particular arena.

9           MR. O'CONNOR:  You also said that you believe in caps

10:49:26  10   on damages.  I thought we saw you had that.  Did I read that

11   incorrectly?

12           PROSPECTIVE JUROR:  I don't recall that.  I think

13   sometimes they have been extreme, like the example of the

14   McDonald's coffee cup.  But I understand people have lives

10:49:42  15   they have to try to live after.

16           MR. O'CONNOR:  Can you listen to any instructions

17   about damages in this case?

18           PROSPECTIVE JUROR:  Oh, yeah.

19           MR. O'CONNOR:  Thank you.

10:49:52  20           Finally, Juror Number 35.  I'll come around and talk

21   to you for a moment.

22           And thank you for answering this.

23           In reading your responses, I'll -- it appears that

24   you don't have great feelings about lawyers, personal injury

10:50:14  25   lawyers.  Did I read that correctly?

10:50:16   1        PROSPECTIVE JUROR:  No.  I just feel oftentimes there

         2    are frivolous lawsuits.

         3        MR. O'CONNOR:  Pardon me?

         4        PROSPECTIVE JUROR:  There are oftentimes frivolous

10:50:25   5    lawsuits.

         6        MR. O'CONNOR:  That feeling, do you think that's

         7    going to affect your ability to be fair and impartial in this

         8    case?

         9        PROSPECTIVE JUROR:  No.

10:50:32  10        MR. O'CONNOR:  You, I think, indicated you have

        11    feelings about capping damages?

        12        PROSPECTIVE JUROR:  Not capping damages, but I often

        13    feel damages are too high.

        14        MR. O'CONNOR:  All right.  How will that affect you

10:50:43  15    in hearing the evidence in this case?

        16        PROSPECTIVE JUROR:  I don't think it would affect me.

        17    It's a case-by-case basis.

        18        MR. O'CONNOR:  I mean, is there anything in your mind

        19    that you think enough is enough and that you couldn't go

10:50:54  20    beyond a certain point despite what the evidence would show?

        21        PROSPECTIVE JUROR:  No.  Not if the evidence

        22    indicated.

        23        MR. O'CONNOR:  The last question I have is your

        24    feelings about jurors making emotional decisions.  Can you

10:51:06  25    explain that, please.

10:51:08   1          PROSPECTIVE JUROR:  It has to do with the damages

2      awarded.  They're -- oftentimes the cases are very hard to

3      hear and difficult, and I think jurors make decisions based on

4      sympathy for the person that was injured.

10:51:21   5          MR. O'CONNOR:  If you're on this jury and you receive

6      instructions that talk about damages and what jurors are

7      responsible to do in terms of awarding damages, will you have

8      any difficulty following that instruction?

9          PROSPECTIVE JUROR:  No.

10:51:36  10          MR. O'CONNOR:  Thank you.

11          THE COURT:  Thank you, Mr. O'Connor.

12          Defense questions.

13          MR. NORTH:  Thank you, Your Honor.  If we could start

14      with Juror Number 9, I believe.

10:52:02  15          THE COURT:  Mr. Mike -- Mr. Mike.  Sorry.  Mr. North,

16      pull the mic down to you, if you would, please.

17          MR. NORTH:  There we go.  Does that work?

18          THE COURT:  Yes.

19          MR. NORTH:  Juror Number 9, on your questionnaire

10:52:13  20      response you said you had a favorable view of personal injury

21      lawyers.  Do you recall that?

22          PROSPECTIVE JUROR:  Yes.

23          MR. NORTH:  Could you explain that a little bit for

24      us.

10:52:26  25          PROSPECTIVE JUROR:  I'm not sure if that's what I

10:52:28  1    exactly said.  I was kind of down the middle.

2                 MR. NORTH:  Okay.  Thank you.

3                 If could you pass the mic to Number 10.

4                 I'm going to try to go in order.

10:52:43  5                 I wanted to follow up with a couple questions.  You

6    said you had used Bard products through your work as a nurse.

7                 PROSPECTIVE JUROR:  Yes.  Yes.

8                 MR. NORTH:  Do you recall any specific Bard products

9    you worked with?

10:52:54  10                 PROSPECTIVE JUROR:  No.

11                 MR. NORTH:  Do you recall having any problem problems

12    with those Bard products?

13                 PROSPECTIVE JUROR:  No.

14                 MR. NORTH:  If we can move it down to Number 14,

10:53:03  15    please.

16                 I believe you told us in the questionnaire that your

17    brother suffered from blood clots, unfortunately?

18                 PROSPECTIVE JUROR:  Yes, he did.  And he died.

19                 MR. NORTH:  Did he actually die from those clots?

10:53:20  20                 PROSPECTIVE JUROR:  Yes.  He actually had diabetes

21    and it caused the blood clots in his legs.

22                 MR. NORTH:  And your mother, I believe she had some

23    problems.  Was that due to a device or to some error on the

24    part of a physician?

10:53:34  25                 PROSPECTIVE JUROR:  It was an error on a colonoscopy.

10:53:39 1    They tore her intestines and she had a heart attack while they

2    were doing the procedure, and she passed away five days later.

3              MR. NORTH:  That didn't have anything to do, to your

4    knowledge, with the device itself?

10:53:56 5              PROSPECTIVE JUROR:  It had to do with the actual

6    procedure.

7              MR. NORTH:  Okay.

8              Excuse me, Your Honor.

9              And I believe you formerly worked with two

10:54:11 10   pharmaceutical companies?

11             PROSPECTIVE JUROR:  Yes.

12             MR. NORTH:  That was with diabetes medications?

13             PROSPECTIVE JUROR:  Insulin and some diabetes

14   medications.

10:54:22 15             MR. NORTH:  It was unclear to me, are you still

16   working with those companies?

17             PROSPECTIVE JUROR:  I'm not.

18             MR. NORTH:  How are you employed now?

19             PROSPECTIVE JUROR:  I'm self-employed.  Formed my own

10:54:31 20   company.

21             MR. NORTH:  I'm sorry, what company?

22             PROSPECTIVE JUROR:  Formed my own company as an

23   educator.

24             MR. NORTH:  Is that in the area of nutrition?

10:54:37 25             PROSPECTIVE JUROR:  Nutrition and diabetes.

10:54:40  1              MR. NORTH:  Okay.  Thank you.

          2              PROSPECTIVE JUROR:  You're welcome.

          3              MR. NORTH:  Okay.  If we could go all the way down to

          4    Number 1 -- I mean 21.

10:55:03  5         Do you recall in your work with filters or the

          6    experience you've had with filters whether any of those were

          7    Bard filters?

          8              PROSPECTIVE JUROR:  It was probably 16 years ago.

          9    No.

10:55:15 10              MR. NORTH:  Okay.  And you said you've used or had

         11    exposure to a lot of Bard products.  What sort of Bard

         12    products have you used in the course of your career?

         13              PROSPECTIVE JUROR:  Catheters, blades.  Everything

         14    every day.

10:55:25 15              MR. NORTH:  Have you ever had any particular problems

         16    with the Bard products?

         17              PROSPECTIVE JUROR:  No.

         18              MR. NORTH:  Number 23.  I'm sorry, no questions for

         19    23.

10:55:43 20         If we can go to 26.  Sorry about that.

         21         Sir, you mentioned that your daughter works at Gore?

         22              PROSPECTIVE JUROR:  Yes.

         23              MR. NORTH:  Given that fact, are you familiar with

         24    Bard?

10:55:59 25              PROSPECTIVE JUROR:  No, I'm not.

10:56:02  1              MR. NORTH:  That's all the questions I have.

2              Number 28.

3              You indicated you had some concern about being fair

4    because of your mother's experience.

10:56:16  5              PROSPECTIVE JUROR:  Um-hmm.

6              MR. NORTH:  That was with a particular

7    pharmaceutical?

8              PROSPECTIVE JUROR:  Um-hmm.  Yes, it was.

9              MR. NORTH:  What was that particular drug?

10:56:23 10              PROSPECTIVE JUROR:  Diethylstilbestrol.  DES.

11              MR. NORTH:  And she had some sort of adverse reaction

12    or problem because of that?

13              PROSPECTIVE JUROR:  Well, the problem was in their

14    children.

10:56:37 15              MR. NORTH:  Okay.  And did she ever sue the company?

16              PROSPECTIVE JUROR:  No.

17              MR. NORTH:  Because of that, do you believe you'll

18    have a hard time having an open mind and listening to the

19    evidence put on regarding a medical device product that would

10:56:53 20    have been reviewed by the FDA?

21              PROSPECTIVE JUROR:  A little bit, yeah, I think so.

22              MR. NORTH:  That will affect how you view things as

23    you come in here?

24              PROSPECTIVE JUROR:  Yes.

10:57:02 25              MR. NORTH:  Do you believe you can set aside those

10:57:03  1    personal feelings?

2              PROSPECTIVE JUROR:  It's pretty personal to me, so I

3         don't know.

4              MR. NORTH:  Okay.  Thank you for your honesty.

10:57:15  5         Number 29.

6              I believe you said in your questionnaire that both

7         your son and yourself had had lawsuits in the past?

8              PROSPECTIVE JUROR:  Personal injury lawsuits, yes.

9              MR. NORTH:  Will that in any way affect your ability

10:57:37  10   to be fair here?

11             PROSPECTIVE JUROR:  No.

12             MR. NORTH:  Thank you.  That's all I have.

13             Number 30, please.

14             You responded in response to some of Mr. O'Connor's

10:57:52  15   questions concerning some of the feelings you have about

16        litigation you have had in the past and -- but when you filled

17        out the questionnaire that we submitted, you indicated that

18        you believed you could be fair and listen and base your

19        verdict on the evidence and the Judge's instructions here.  Do

10:58:09  20   you still believe that to be true?

21             PROSPECTIVE JUROR:  Yes.

22             MR. NORTH:  Number 33, please.

23             I believe you indicated that you had a cousin who

24        died from a blood clot.

10:58:29  25        PROSPECTIVE JUROR:  Correct.

10:58:31  1          MR. NORTH:  Do you know whether your cousin had a

2    filter implanted?

3          PROSPECTIVE JUROR:  I do not.

4          MR. NORTH:  I believe you indicated in your

10:58:41  5    questionnaire that you had seen some advertisements.

6          PROSPECTIVE JUROR:  Correct.

7          MR. NORTH:  Do you believe that you're able to set

8    that aside and listen to the evidence in this courtroom?

9          PROSPECTIVE JUROR:  I do.

10:58:55 10          MR. NORTH:  Thank you.

11          Number 34, please.

12          If I understood your previous response, it sounded

13    like the bias you were discussing was against us as attorneys,

14    as opposed to the parties; is that correct?

10:59:09 15          PROSPECTIVE JUROR:  A little bit.  But I've been

16    involved in all kinds of cases and with the way things are

17    done on both sides, I just don't think I can be impartial,

18    knowing what goes on.

19          MR. NORTH:  As far as your feelings against

10:59:25 20    attorneys, do you have more negative feelings towards defense

21    attorneys or plaintiffs' attorneys, or is it sort of across

22    the board?

23          PROSPECTIVE JUROR:  Most of mine has been defense

24    attorneys.

10:59:35 25          MR. NORTH:  Okay.  Is that criminal defense?

10:59:38  1              PROSPECTIVE JUROR:  And some in civil.

2              MR. NORTH:  That's all the questions I have.

3              Number 38.

4              I believe you indicated in your questionnaire

11:00:09  5    response that you had a low opinion of medical device

6    manufacturers; is that correct?

7              PROSPECTIVE JUROR:  Yes, that is.

8              THE COURT:  If you want to come around this side,

9    Mr. North, feel free.

11:00:26 10              MR. NORTH:  There we go.

11              Could you tell us briefly the basis of that.

12              PROSPECTIVE JUROR:  Well, my grandma had a hip

13    replacement and it is not working for her, so that was one

14    thing that I was kind of a little leery on.  And also I've --

11:00:42 15    I used to work at Bolero Bowling Alley, so I dealt with a lot

16    of seniors that we had to call the paramedics a couple times

17    because of their implants.

18              MR. NORTH:  Okay.

19              Number 49, please.

11:01:14 20              You were asked a number of questions by Mr. O'Connor

21    concerning your views about risks and benefits.  You do not

22    have a past familiarity with inferior vena cava filters, do

23    you?

24              PROSPECTIVE JUROR:  No, I don't.

11:01:26 25              MR. NORTH:  And you don't know what the evidence will

11:01:28  1   be that will be played in this courtroom regarding IVC

2   filters, do you?

3        PROSPECTIVE JUROR:  No, I don't.

4        MR. NORTH:  Are you willing to keep an open mind and

11:01:34  5   listen to the instructions of the Court and base your verdict,

6   if you are empaneled as a juror, based on the evidence you

7   hear in this court?

8        PROSPECTIVE JUROR:  Yes.

9        MR. NORTH:  Number 50, please.

11:01:52  10       If I read your questionnaire correctly, it indicated

11  you have a high opinion of personal injury attorneys.  Does

12  that sound familiar?

13       PROSPECTIVE JUROR:  I don't remember saying that, no.

14       MR. NORTH:  Okay.  So you don't have any bias for or

11:02:07  15  against any particular attorneys --

16       PROSPECTIVE JUROR:  No.

17       MR. NORTH:  -- which side?

18       PROSPECTIVE JUROR:  No.

19       MR. NORTH:  Number 51, please.

11:02:19  20       I thought your questionnaire also indicated you had a

21  high opinion of personal injury attorneys.  Does that --

22       PROSPECTIVE JUROR:  I don't recall putting that down.

23       MR. NORTH:  Okay.  It also indicated you had seen

24  some advertisements on TV.

11:02:33  25       PROSPECTIVE JUROR:  I have.

11:02:34  1        MR. NORTH:  Do you believe you can put those aside

2        and base your verdict on the evidence here, as opposed to

3        anything you may have seen on TV?

4              PROSPECTIVE JUROR:  Yes, I do.

11:02:48  5        MR. NORTH:  Your Honor, that's all.

6              THE COURT:  Thank you.

7              Would you hand the mic back down to Juror 38.  I

8        would like to just ask a follow-up question.

9              Ma'am, you indicated that based on your grandmother's

11:03:00 10       hip experience and some of the implant issues you saw at your

11       work that you have a somewhat low opinion of medical device

12       manufacturers.  Do you think you could set that opinion aside

13       and not have it influence your evaluation of the evidence in

14       this case, or do you think it would be hard to set it aside?

11:03:18 15       PROSPECTIVE JUROR:  It would be kind of hard just

16       because I've gotten close to a lot of my senior bowlers and

17       I've heard some of their stories on their implants and stuff.

18       But if needed, I would try to make fair judgments.

19             THE COURT:  Okay.  Thanks very much.

11:03:39 20       All right, ladies and gentlemen, I'm going to talk

21       with the attorneys again at the side for just a minute.  Feel

22       free to stand up for a minute if you want.  We'll do this as

23       quickly as we can.

24             (Bench conference as follows:)

11:04:10 25       THE COURT:  All right, Counsel, let's have you say

11:04:12  1    your name when you speak.

2              I think what we ought to do is have the person making

3         the challenges give a sentence explanation, see if the other

4         side and I agree.  I'll be happy to hear more if there's a

11:04:28  5    disagreement.

6              Let's start with plaintiff's challenges for cause.

7              MR. WENNER:  This is David Wenner, Your Honor.  Juror

8         Number 4 said she can't be fair and impartial.  She also

9         answered that on number 60 on the questionnaire.

11:04:40  10             Juror Number --

11             THE COURT:  We're doing them one at a time.

12             MR. WENNER:  Oh.  Sorry.

13             THE COURT:  By the way, you can speak louder.

14        There's a white-noise system on so they can't hear at sidebar.

11:04:53  15             MR. NORTH:  Your Honor, in good faith I cannot oppose

16        it, and I should state for the record that as the juror went

17        out on break, she said "good luck" to me.

18             THE COURT:  Okay.  Thank you.

19             I will grant the challenge for cause to Juror 4.

11:05:06  20             Your next one, Mr. Wenner.

21             MR. WENNER:  Your Honor, Juror Number 17.  She also

22        answered number 60 she can't be fair.  She said while

23        Mr. O'Connor was questioning her she can't be fair and

24        impartial, strong feelings in favor of medical device

11:05:23  25    companies, and she did state on the record she couldn't be

11:05:27   1   fair and impartial.

2      MR. NORTH:  For the record it's a he.  But we do not

3   object to that challenge.

4      THE COURT:  It's a what?

11:05:35   5      MR. NORTH:  He.  It's a he.

6      MR. O'CONNOR:  Oh.  Sorry.

7      THE COURT:  My notes show that juror said their view

8   would affect their fairness, so I'm going to grant the

9   challenge for cause to Juror 17.

11:05:51   10      MR. WENNER:  Juror Number 34, Your Honor.  He, I

11   believe, in the questioning said it would be hard, and I

12   thought when Mr. North questioned Juror Number 34 that he said

13   that he could not be impartial, so I would move to strike him

14   for cause as well.

11:06:15   15      MR. NORTH:  We won't object.  We agree.

16      THE COURT:  All right.  I'm going to grant the

17   challenge for cause to Juror 34 because I agree as well.

18      MR. WENNER:  Juror 49.  She said --

19      THE COURT:  This is a he again.

11:06:37   20      MR. WENNER:  Sorry, Your Honor.

21      THE COURT:  That's okay.

22      MR. WENNER:  Looking at my notes.  Juror Number 49

23   said "can't be fair."  Starts out with strong feelings and

24   that he answered, I believe, the questionnaire saying he

11:06:51   25   couldn't be fair.

11:06:53  1        MR. NORTH:  Your Honor, we don't believe he should

2      be -- I'm sorry.  Richard North.

3        We don't believe he should be let go for cause.  He

4      said at the end that he knew nothing about IVC filters.  He

11:07:06  5      was willing to keep an open mind.  The alleged bias he

6      referenced only had to do with general thoughts of risks and

7      benefits, but he has no specific knowledge about these devices

8      and did commit to being fair.

9        THE COURT:  Well, he did say he thought he could view

11:07:23  10      the evidence with an open mind.  He did say during questioning

11      from defense -- pardon me, plaintiff's counsel that it would

12      be difficult to be fair, and he checked question 60 to say

13      that he could not be fair.

14        That's a closer call, but I'm going to grant the

11:07:40  15      challenge for cause to Juror 49.

16        MR. WENNER:  Your Honor, I apologize for this one,

17      Juror Number 30.  She specifically said that she does not

18      believe in suing, that she believes in certain type lawsuits

19      if they're intentional, and she said everyone makes mistakes.

11:08:04  20      I believe in response to Mr. O'Connor's questions that she

21      said she didn't think she could be fair.

22        Now, I'm aware that Mr. North tried to rehabilitate

23      her, I believe, but she did state on the record that she

24      couldn't be fair.  And clearly twice in her questionnaire she

11:08:19  25      said "I don't believe in suing."

11:08:22  1          THE COURT:  Mr. North.

2          MR. NORTH:  Yes, Your Honor.  She stated on the

3    questionnaire that there was no reason why she could not be

4    fair in response to number 60, and she confirmed that response

11:08:31  5    here again when I asked her and reminded her of that answer,

6    and said she was willing to base her verdict on the evidence

7    presented at during this trial, consistent with her answer on

8    the questionnaire.

9          THE COURT:  Give me just a minute.

11:09:09  10         MR. WENNER:  Question 59.  Question 46.

11         THE COURT:  Hold on just a minute, please.

12         I'm going to grant the challenge for cause to

13    Juror 30.  Again, I think that is a close question, but she

14    did indicate she had difficulty being fair.

11:09:53  15         MR. WENNER:  Juror Number 29.  She -- apologize for

16    going back in order, Your Honor.  She stated she would start

17    out favoring the defendant.  She had strong feelings in favor

18    of the medical device company, so she starts out feeling --

19         THE COURT:  That's good.

11:10:12  20         MR. NORTH:  Your Honor, I believe she did not say in

21    her questionnaire she couldn't be fair.  I don't think she's

22    ever said she couldn't base her verdict on the evidence at the

23    trial.

24         THE COURT:  Did you want to say more on that,

11:10:24  25    Mr. Wenner?

11:10:26  1          MR. WENNER:  Your Honor, that if she starts out

       2    favoring the defendant, we don't start out on an even playing

       3    field, tabula rasa, and so I don't know what more she could

       4    say if she said she starts out favoring --

11:10:38  5          THE COURT:  Well, a lot of folks said that, and then

       6    when asked if they could set it aside they said they could.

       7    She, however, my notes show specifically said that the

       8    feelings she has about implants could affect her fairness in

       9    the case, after she had been questioned.  So it's not where

11:10:55 10    she started, but where she ended that will cause me to grant

      11    that challenge for cause.

      12          MR. WENNER:  That's all I have, Your Honor.

      13          THE COURT:  Okay.

      14          Mr. North.

11:11:04 15          MR. NORTH:  I have two, Your Honor.  First Number 28.

      16    That's the woman whose mother had a bad experience with DES.

      17          THE COURT:  Your response, Mr. Wenner?

      18          MR. WENNER:  I think that's a fair challenge.

      19          THE COURT:  I agree, and I'll grant the challenge for

11:11:21 20    cause to Juror 28.

      21          MR. NORTH:  My last one, Your Honor, is 38, the juror

      22    that you questioned last.  She has had negative or witnessed

      23    negative experiences with devices and implants in the senior

      24    citizens she takes care of, and indicated a great deal of

11:11:40 25    uncertainty whether she could be fair.

11:11:43  1        MR. WENNER:  Your Honor, I think in response to your

2    question, she said she would make a fair judgment, so I would

3    oppose that challenge for cause.

4        THE COURT:  I'm going to grant the challenge for

11:11:53  5    cause to Juror 38.  She said she would try hard to be fair,

6    but she said it would be difficult because of her experience

7    with her grandma's implant and others she's treated.

8        Okay, so with those challenges for cause, let's count

9    the number we have so far.

11:12:22 10        So by my count, we have 12 jurors.  Everybody agree

11    with that?

12        Let me list them for you all to make sure we're in

13    agreement.  The remaining jurors we've so far questioned are

14    9, 10, 14, 21, 23, 26, 33, 35, 42, 44, 50, and 51.

11:13:06 15        MR. O'CONNOR:  I thought 42 and 44 were some of the

16    ones -- 42 and 46, I think, were excused, and didn't we excuse

17    44 on the hardship?

18        THE COURT:  No.  We excused 40.

19        THE COURTROOM DEPUTY:  I'm sorry.  42 and 44 didn't

11:13:19 20    show up.  They've been marked off.  Here's my list.

21        THE COURT:  They're on my list.  I need to take off

22    the ones -- okay.

23        THE COURTROOM DEPUTY:  Do you want me to give you the

24    numbers that didn't show?

11:13:30 25        THE COURT:  No.  That means we're two short.  Okay.

11:13:32  1    So let's see.  That means we have --

2              MR. NORTH:  44 was --

3              THE COURT:  We've got ten jurors.  They're 9, 10, 14,

4    21, 23, 26, 33, 35, 50, and 51.  Is that right?

11:14:00  5              Okay.  So let's do another ten.  And they will be

6    through Juror 76.  So there will be Jurors 53, 57 -- oops, 58

7    isn't here.  Sorry.

8              THE COURTROOM DEPUTY:  Yeah, 58's gone.

9              THE COURT:  Then the ten will go through 77, I think.

11:14:34  10   No.  68 isn't here either.  We'll go through 81.  So the ten

11   will be 53, 57, 59, 61, 63, 64, 76, 77, and 81.

12             THE COURTROOM DEPUTY:  Yes.

13             MR. WENNER:  What was the last --

14             THE COURT:  81.

11:15:01  15             THE COURTROOM DEPUTY:  Did you get Number 68?

16             THE COURT:  68 is not here and 58 is not here.

17             MR. WENNER:  Can you read them one more time.

18             THE COURT:  Sure.  53, 57, 59, 61, 63, 64, 76, 77,

19   and 81.

11:15:30  20             Does that give us ten?

21             THE COURTROOM DEPUTY:  No.  We need to go through 82.

22             THE COURT:  That gives us only nine.  Let's add 82 to

23   the list.

24             Okay.  And let's be a bit more quick in the

11:15:49  25   questioning this time.  I don't want to shortchange you, but

11:15:54  1    we've got to keep moving.

2              Any other issues we need to address?

3              Okay.  Plaintiffs will go first.

4              Hold on a minute, Counsel.

11:16:10  5    MR. WENNER:  If we can just have five minutes to sort

6    out our notes, it'll make it a lot quicker.

7              THE COURT:  No, we're not going to take five minutes.

8    We have to keep moving.  If you want to take a minute or two,

9    you can.  But let's keep moving.

11:16:23  10   (Bench conference concludes.)

11             THE COURT:  Thank you for your patience, ladies and

12   gentlemen.

13             We need to do a bit more questioning, but I want to

14   give the lawyers a minute to make sure they're organized so we

11:16:42  15   can do this as efficiently as we can.  So if you want to stay

16   standing for another minute or two while they organize, feel

17   free.  We know those benches in the back are unusually hard.

18   Feel free to stand up if you want to for this additional

19   minute or two.

11:17:44  20             Mr. O'Connor, if it would help in your organizing, we

21   can start with defense questions, and that will give you a few

22   more minutes to go through those files.

23             MR. O'CONNOR:  That would help us, Your Honor.  Thank

24   you.

11:17:55  25             THE COURT:  Mr. North, are you able to go now?

11:17:57   1                MR. NORTH:  Yes.

           2                THE COURT:  Let's have you go first, and that will

           3      save some time for Mr. O'Connor to look through his files.

           4                MR. NORTH:  I'm sorry, Your Honor, I got lost on my

11:18:10   5      notes.  Is it through 81 or 82?

           6                THE COURT:  It is through 82.

           7                MR. NORTH:  Thank you.

           8                Number 57, please.

           9                Sir, you indicated in response to one of the

11:18:34  10      questions that I believe a friend of yours had had

          11      difficulties with a hip replacement?

          12                PROSPECTIVE JUROR:  Yes.

          13                MR. NORTH:  Would you be able to put that aside, that

          14      experience aside, and listen to the evidence fairly that's

11:18:50  15      presented here?

          16                PROSPECTIVE JUROR:  Yes.

          17                MR. NORTH:  Thank you.

          18                Number 61, please.

          19                I believe you indicated, sir, that you have a

11:19:07  20      relative that works at Medtronic or used to work at Medtronic.

          21                PROSPECTIVE JUROR:  Yeah, my uncle used to work at

          22      Medtronic, and Johnson & Johnson before that.

          23                MR. NORTH:  Do you know what he did for those

          24      companies?

11:19:19  25                PROSPECTIVE JUROR:  For Medtronic, he was vice

11:19:21  1    president of eastern sales.

2        MR. NORTH:  Would that in any way affect your ability

3    to be fair and unbiased here in this trial?

4        PROSPECTIVE JUROR:  I would like to think it

11:19:32  5    wouldn't.

6        MR. NORTH:  Okay.  Thank you.

7        Number 63, please.

8        Sir, I believe you indicated that your mother had had

9    complications with a drug, Pradaxa?

11:19:49 10        PROSPECTIVE JUROR:  Yes.  Caused some --

11        MR. NORTH:  Will that in any way affect your ability

12    to listen to this evidence and be fair today?

13        PROSPECTIVE JUROR:  No, sir.

14        MR. NORTH:  I believe you indicated you had heard

11:20:02 15    some television advertisements?

16        PROSPECTIVE JUROR:  Yes.

17        MR. NORTH:  Will you be able to put those aside or

18    anything you've seen on TV aside and base your verdict on the

19    evidence presented in this courtroom?

11:20:13 20        PROSPECTIVE JUROR:  Yes, sir.

21        MR. NORTH:  Number 64, please.

22        Sir, I believe you indicated earlier that you had

23    some concern because you had a big event planned in April; is

24    that correct?

11:20:35 25        PROSPECTIVE JUROR:  That's correct.

11:20:37  1          MR. NORTH:  Do you think that given the fact that

2       this case is going to end by March 30th, that you can not be

3       distracted and focus on the evidence in this case?

4               PROSPECTIVE JUROR:  I would hope so.

11:20:48  5          MR. NORTH:  Thank you, sir.  That's all I have for

6       you.

7               Number 68, please.

8               THE COURT:  Let's hand the mic back down, please, if

9       we could.

11:21:00 10         THE COURTROOM DEPUTY:  68 isn't here.

11              THE COURT:  Actually, 68 is not here, Mr. North.

12              MR. NORTH:  Oh.  Okay.  I'm sorry.

13              Number 77.

14              PROSPECTIVE JUROR:  Yes.

11:21:21 15         MR. NORTH:  I believe you said in the questionnaire

16      that you have a very favorable view of personal injury

17      attorneys?

18              PROSPECTIVE JUROR:  Possibly, yes.  I don't recall

19      what I put on that questionnaire.

11:21:32 20         MR. NORTH:  Do you have any bias particularly against

21      plaintiffs' attorneys or defense attorneys, on one side or the

22      other?

23              PROSPECTIVE JUROR:  I wouldn't say I do, no.

24              MR. NORTH:  Okay.  Thank you.

11:21:41 25         And then Number 82.

11:21:45 1      I believe you indicated that you have a medical

2      implant yourself.

3           PROSPECTIVE JUROR:  I do.

4           MR. NORTH:  Have you had any complications with that?

11:21:53 5           PROSPECTIVE JUROR:  No, sir.

6           MR. NORTH:  Thank you.

7           That's all I have.

8           THE COURT:  Okay.

9           Mr. O'Connor.

11:21:59 10           MR. O'CONNOR:  Yes.  Thank you, Your Honor.

11           Juror Number 61, just in your questionnaire I thought

12      you indicated that you view medical device companies

13      favorably?

14           PROSPECTIVE JUROR:  I do.  Not only does my unc- --

11:22:26 15      not only did my uncle worked for Medtronic, but I have a

16      cousin who has a pacemaker.

17           MR. O'CONNOR:  I'm sorry?

18           PROSPECTIVE JUROR:  I have a cousin who has a

19      pacemaker.

11:22:38 20           MR. O'CONNOR:  And when you view them favorably, is

21      that something you felt before you came here to court?

22           PROSPECTIVE JUROR:  Yeah.  My uncle worked in medical

23      sales for pretty large companies for a very long time.

24           MR. O'CONNOR:  This case involves claims against a

11:22:49 25      medical device company.  Do you feel that your feelings you

11:22:52  1   have favoring medical device companies will affect your

2   ability to be fair and impartial?

3        PROSPECTIVE JUROR:  Like I said earlier, I hope it

4   wouldn't, but without knowing all the evidence, I have no

11:23:01  5   idea.

6        MR. O'CONNOR:  So are you starting out today in favor

7   of the medical device company?

8        PROSPECTIVE JUROR:  Most likely, yes.

9        MR. O'CONNOR:  Before we start evidence, you're

11:23:11  10  more -- you have stronger feelings for one side as opposed to

11  the other?

12        PROSPECTIVE JUROR:  You could say that, yes.

13        MR. O'CONNOR:  Thank you, sir.

14        Number 57.

11:23:32  15        How often do you communicate with the FDA?

16        PROSPECTIVE JUROR:  Not very often.  On job-related

17  issues.

18        MR. O'CONNOR:  Your relationship and your work with

19  the FDA, do you think that will affect the way you hear

11:23:49  20  evidence that may come through this case through testimony

21  about communications between a company and the FDA?

22        PROSPECTIVE JUROR:  Small grant from the FDA, but I

23  don't think that it will affect whatever I'm doing here.

24        MR. O'CONNOR:  I didn't understand --

11:24:03  25        PROSPECTIVE JUROR:  We have a small grant from the

11:24:05  1   FDA.  They're supporting part of my work.  I don't think this

2   will affect whatever I'm doing here.

3            MR. O'CONNOR:  So if there's evidence about the FDA,

4   do you think you could be fair and impartial?

11:24:16  5            PROSPECTIVE JUROR:  Excuse me?

6            MR. O'CONNOR:  If there is some testimony about

7   communications with the FDA, do you feel that you could be

8   fair and impartial hearing that testimony?

9            PROSPECTIVE JUROR:  Yes.

11:24:26 10            MR. O'CONNOR:  Thank you, sir.

11            Number 81, where are you, sir?

12            Hi.  Thank you for answering the questionnaire.

13            We looked at your questionnaire and it appears that

14   you favor caps on damages.  Did we read that correctly?

11:24:47 15            PROSPECTIVE JUROR:  I think I do because large sums

16   sometimes are given.

17            MR. O'CONNOR:  Do you feel there's too many lawsuits,

18   personal injury lawsuits?

19            PROSPECTIVE JUROR:  I don't have an opinion on that.

11:25:00 20            MR. O'CONNOR:  Do you feel verdicts are too high?

21            PROSPECTIVE JUROR:  Occasionally.

22            MR. O'CONNOR:  So there is going to be issues about

23   damages in this case and money damages, and the jury that's

24   empaneled in this case will be instructed about damages and

11:25:16 25   instructed about monetary awards.  How do you feel that your

11:25:21  1  feelings about caps may affect your ability to follow the

       2  Court's instructions?

       3           PROSPECTIVE JUROR:  I don't think it would.

       4           MR. O'CONNOR:  You feel you could be fair and

11:25:29  5  impartial?

       6           PROSPECTIVE JUROR:  I would.

       7           MR. O'CONNOR:  Is there any limit you have in mind

       8  you just can't go beyond?

       9           PROSPECTIVE JUROR:  There's not.  There's not.

11:25:52 10           MR. O'CONNOR:  Number 53.

      11       I think when we went through your questionnaire,

      12  thank you for answering that, that you indicated that you do

      13  have a favorable opinion for medical device companies.

      14           PROSPECTIVE JUROR:  I don't recall what I put down.

11:26:12 15           MR. O'CONNOR:  Do you?

      16           PROSPECTIVE JUROR:  I don't, no.

      17           MR. O'CONNOR:  As you sit here, is there one party in

      18  the Plaintiff Sheri Booker versus Bard Medical Device Company

      19  that you feel you favor one more than the other right now?

11:26:28 20           PROSPECTIVE JUROR:  No.

      21           MR. O'CONNOR:  So you feel you could be fair and

      22  impartial?

      23           PROSPECTIVE JUROR:  Yeah.

      24           MR. O'CONNOR:  May I talk to Mr. Wenner one second?

11:26:37 25           THE COURT:  Sure.

11:26:37  1         (Counsel confer.)

        2              MR. O'CONNOR:  One more, Your Honor.  Thank you.

        3              Number 82, where are you?

        4              Thank you, sir.  I'll try to be brief.

11:27:03  5              You have a medical device?

        6              PROSPECTIVE JUROR:  I do.

        7              MR. O'CONNOR:  And can you tell us about that device?

        8              PROSPECTIVE JUROR:  Yeah.  It's a full left hip

        9   implant.

11:27:13 10              MR. O'CONNOR:  How has your experience been with that

       11   device?

       12              PROSPECTIVE JUROR:  Pretty good.  Lot better than it

       13   was before.

       14              MR. O'CONNOR:  This case involves a medical device.

11:27:22 15   In your experience, do you think that would affect your

       16   ability to be fair and impartial?  In other words, do you

       17   think you may have feelings that favor medical device

       18   companies based upon your experience?

       19              PROSPECTIVE JUROR:  Not necessarily, no.

11:27:33 20              MR. O'CONNOR:  Do you feel that there's anything

       21   about your experience with your medical condition or the

       22   device that will affect your ability to listen to the evidence

       23   in this case and be fair and impartial to both parties?

       24              PROSPECTIVE JUROR:  I think I can be fair and

11:27:46 25   impartial.

11:27:49  1          MR. O'CONNOR:  Thank you.  I appreciate that.

       2          Thank you, Your Honor.

       3          THE COURT:  Okay.  Thanks.

       4          All right, ladies and gentlemen, we're going to have

11:28:00  5   one more discussion at sidebar.  We're getting close.  Feel

       6   free to stand while we do this.

       7      (Bench conference as follows:)

       8          THE COURT:  All right.  Counsel, let's start with

       9   plaintiffs.  Challenges for cause, Mr. Wenner?

11:28:46 10          MR. WENNER:  Yes, Your Honor.  The only one is Juror

      11   Number 61.  He said that he would start out favoring the

      12   manufacturer and he's had positive experience with medical

      13   devices, his uncle worked for Medtronics, and he specifically

      14   said he would start off favoring the defendant.

11:29:09 15          MR. NORTH:  Your Honor, he said several times,

      16   though, I think that he would like to think he could listen to

      17   the evidence.  We all start out with feelings one way or the

      18   other.  He never said he could not be fair or not be unbiased.

      19          THE COURT:  I think you captured his wording

11:29:24 20   correctly, he said he would like to think he could.  He also

      21   said he would start in favor of the defendant.  I took that to

      22   mean that he leans towards the defendants.  So I'm going to

      23   grant the challenge for cause to Juror 61.

      24          Any others from the plaintiff side?

11:29:41 25          MR. NORTH:  No challenges for cause.

11:29:42  1          MR. WENNER:  No, Your Honor.

       2          THE COURT:  We have enough for 15.  Let's identify

       3  exactly who they are.

       4          Traci, come keep me on track here.

11:30:01  5          Okay.  So these are the 15 that I think we now have

       6  available, the lowest numbered 15:

       7              9, 10, 14, 21, 23, 26, 33, 35, 50 and 51, 53, 57, 59,

       8  63, and 64.

       9          MR. WENNER:  Who was the last one?

11:30:46 10          THE COURT:  64.

      11          Does everybody agree with that?

      12          MR. NORTH:  Agree.

      13          THE COURT:  Plaintiff's counsel, you agree?

      14          MR. WENNER:  Just to clarify -- yes.  Yes,

11:30:55 15  Your Honor.

      16          THE COURT:  Do you have a question on that,

      17  Mr. Wenner?

      18          MR. WENNER:  When we do our strikes, it's the first

      19  nine jurors that are going to be seated --

11:31:03 20          THE COURT:  What we're going to do is against these

      21  15, you're each going to exercise three peremptory strikes.

      22  If there's no overlap, that will leave us with nine.  If there

      23  is overlap, we'll take the lowest numbered nine that remain.

      24  Okay?

11:31:16 25          I want to give you time to talk this over, so I think

11:31:18    1    what I'm going to do is tell the jurors they can step out for

            2    ten minutes.  Is that enough time?

            3              MR. NORTH:  Yes.

            4              MR. WENNER:  Should be.

11:31:27    5              THE COURT:  And then we'll have them come back and

            6    sit in the back of the courtroom and call forward those who

            7    have been chosen to serve.

            8              She can't hear you.  Come over here.

            9              MR. O'CONNOR:  Mark O'Connor.  At our last break,

11:31:37   10    some of them started wandering in --

           11              THE COURT:  We'll keep them out of the courtroom.

           12              MR. O'CONNOR:  Okay.

           13         (Bench conference concludes.)

           14              THE COURT:  All right.  Ladies and gentlemen, we have

11:31:51   15    done enough questioning to choose the jury, we believe.  So

           16    what we're going to do is this:  It now takes us ten or 15

           17    minutes to actually do the jury selection.  During that time

           18    we're going to excuse you from the courtroom.  Please remember

           19    not to talk about the case with anybody.

11:32:09   20              As you leave, you can take those sheets with you and

           21    you can hand them to Traci at the back door as you go.

           22              When you come back in 15 minutes, we're going to have

           23    you just sit in the back of the courtroom.  You don't need to

           24    sit in any order.  And then we'll call forward the individuals

11:32:23   25    who have been chosen to serve on the jury.

11:32:26 1         So we will go ahead and excuse all of the jurors at

2  this point.  Please be back outside in about 15 minutes, if

3  you would.

4      (The jury panel exited the courtroom at 11:32.)

11:34:13 5        THE COURT:  All right.  Counsel, let's take, as we

6  indicated, about ten minutes for you to exercise your

7  peremptories.  When you've done that, let Traci know who they

8  are and I'll come back in the courtroom after we've done that.

9        MR. WENNER:  Do you want us to put an X on the jury

11:34:37 10  list?

11        THE COURTROOM DEPUTY:  Yes, please.

12        THE COURT:  Yeah, that would be fine.  Thanks.

13      (Recess taken from 11:35 to 11:55.  Proceedings resumed

14  in open court outside the presence of the jury panel.)

11:55:44 15        THE COURT:  Please be seated.

16        All right.  Counsel, as I think Traci's already told

17  you, after the peremptory strikes, the nine jurors will be

18  Jurors 9, 10, 21, 23, 26, 33, 50, 53, and 57.

19        Are there any challenges to the peremptory strikes

11:56:28 20  from the plaintiffs?

21        MR. WENNER:  I don't know who they struck.  I didn't

22  see -- Your Honor -- apologize.  I didn't see who they struck,

23  so it's hard -- I didn't see the numbers they struck.

24        THE COURT:  Well, Traci --

11:56:54 25      (The Court and the courtroom deputy confer.)

11:56:59  1         THE COURT:  Defendants struck 51, 59, and 63.  And

2    you also struck 59.

3         And for defendants' information, the plaintiffs

4    struck 35, 14, and 59.

11:57:35  5         Any challenges from plaintiffs?

6         MR. WENNER:  No, Your Honor.

7         THE COURT:  You need to answer me.

8         MR. WENNER:  I'm sorry, Your Honor.  I said no.

9    Sorry.  Apologize.

11:57:57 10         THE COURT:  How about from --

11         MR. NORTH:  No challenges from the defendants,

12    Your Honor.

13         THE COURT:  Okay.  We'll bring in the jury panel and

14    call forward those who have been chosen to serve.  I'm to ask

11:58:06 15    them -- go ahead, Nancy -- I'm going to ask if any of them

16    have thought of anything else that could affect them, just to

17    make sure we don't have previously undisclosed issues with any

18    of the nine.

19         (Jury panel entered the courtroom at 11:58.)

12:00:07 20         THE COURT:  Thank you, ladies and gentlemen, for your

21    patience.  We have identified the individuals who will serve

22    on this jury, and so Traci will call forward those persons.

23         THE COURTROOM DEPUTY:  Juror Number 9.

24         Ma'am, second row, all the way to the end here.

12:00:45 25         Juror Number 10.

12:00:57   1          Juror 21.

           2          Juror 23.

           3          Juror 26.

           4          Juror 33.   Juror 33, you'll be in the second row.

12:01:46   5          Juror 50.

           6          Juror 53.

           7          Juror 57.

           8          When you take the numbers off, please don't put them

           9   on the books.  Throw those numbers out, okay?  Just don't put

12:02:26  10   them on our books.  Thank you.

          11          THE COURT:  All right.  For those of you who have

          12   been chosen to serve on the jury, I have one other question.

          13   Have any have you thought of anything you didn't mention in

          14   your questionnaire or this morning that would affect your

12:02:40  15   ability to serve as a fair and impartial juror on this case?

          16          Okay.  I see no hands.

          17          Traci.

          18      (The Court and the courtroom deputy confer.)

          19          THE COURT:  As for the rest of you, you're done.  You

12:02:57  20   don't have to go back to the jury office unless you have a

          21   question or you need something from them.  You can just leave

          22   the courthouse directly.  Thank you very much for being here,

          23   for filling out the questionnaire, and helping us choose the

          24   jury.

12:03:51  25      (Excused jury panel members exited the courtroom.)

12:03:56  1      THE COURT:  Please be seated.

2      Ladies and gentlemen of the jury panel, I'm going to

3 ask you to be sworn as jurors in this case.

4      THE COURTROOM DEPUTY:  If you'll please raise your

12:04:05  5 right hand.

6      (The jury was sworn.)

7      THE COURT:  Okay.  Please be seated.

8      Ladies and gentlemen, even though you've been

9 waiting, we've been working, and so we now need to take a

12:04:26 10 lunch break, even though you've just been on a break.  The

11 lawyers haven't had a break and they need time for lunch and

12 to organize so that we can get started with the trial after

13 lunch.

14      So we're going to break for an hour.  We will plan to

12:04:39 15 begin at 1:05.

16      Let me mention to you a couple of things.  Please

17 remember not to talk to anybody about the case or to allow

18 anybody to talk to you about it.  I'll be giving you more

19 detailed instructions after lunch.  Please don't read anything

12:04:56 20 about the case or do any research on your own.  Obviously,

21 that's so you can maintain an open mind and base your decision

22 just on the evidence you hear during the trial.

23      In your notebooks you will find a badge that says

24 Juror on it.  We would like you to wear that when you're in

12:05:10 25 and around the courthouse.  That way people who are here will

12:05:15  1    know you're on a jury and won't make a comment about a case in

2    your presence that might influence you in some way.  If you

3    leave the courthouse, you don't need to keep wearing it, but

4    when you're in and around the courthouse, please do.

12:05:28  5             As you leave, Traci or Nancy will take you out this

6    door and show you a jury assembly room on the other side of

7    that wall.  That's where you'll gather after the lunch break,

8    and then we'll bring you in here to start the afternoon

9    session.

12:05:43 10             That's where you'll gather in the mornings as well.

11             As far as lunch is concerned, there's a little kiosk

12    by the front door that has some sandwiches and salads.  If you

13    go east on Washington, there's restaurants on both sides of

14    the street here, and about three blocks down.

12:06:04 15             I think that's all we need to cover before we start.

16             When you come back, I'll give you some preliminary

17    instructions.  You'll then hear opening statements from the

18    lawyers where they explain what they think the evidence will

19    show, and then we'll get right into the evidence of the case,

12:06:16 20    and we'll go until 4:30 today.

21             Counsel, are there any other matters we need to

22    address before we excuse the jurors?

23             MR. O'CONNOR:  Nothing from the plaintiffs.  Thank

24    you, Your Honor.

12:06:27 25             MR. NORTH:  Nothing from the defendants, Your Honor.

12:06:29  1          THE COURT:  Okay.

       2          We will see you at 1:05.  You can just leave those

       3    books on your chair.

       4       (The jury exited the courtroom at 12:06.)

12:07:00  5          THE COURT:  Plaintiff's counsel, so I don't mess up

       6    names of your attorneys, could you just give me a written list

       7    of everybody who's going to participate in the trial, because

       8    I don't know all of the folks who might be -- by name who

       9    might be coming up to participate.

12:07:15 10          MR. O'CONNOR:  I thank I did give you a list.  I'll

      11    make another one.

      12          THE COURT:  Well, you gave me a sheet that has who's

      13    sitting at counsel table, but you mentioned several others

      14    this morning who I assumed might be participating.  I just

12:07:26 15    need the names of the lawyers who will be participating.

      16          MR. O'CONNOR:  We did a list.  I can do another.

      17          THE COURT:  If you could give me one that I can have

      18    here.

      19          And, Mr. North, am I correct that it's you and

12:07:37 20    Mr. Condo and Ms. Helm who will be handling the trial?

      21          MR. NORTH:  Yes, Your Honor.

      22          THE COURT:  Okay.  All right.

      23          You can take this black lectern that's against the

      24    wall and bring it over and face it toward the jury.  One of

12:07:51 25    these two mics has a long enough cord you can put it on the

12:07:56  1    black lectern, so you can face the jury during opening

2    statements.  We'll ask you to stay at the lectern and speak

3    into the mic so we can hear you.

4            Anything else we need to address before we break?

12:08:08  5            Okay.  I'll see you at 1:05.

6        (Recess taken at 12:08.)

7        (End of a.m. session transcript.)

8                        * * * * *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                       **C E R T I F I C A T E**

2

3              I, PATRICIA LYONS, do hereby certify that I am duly

4     appointed and qualified to act as Official Court Reporter for

5     the United States District Court for the District of Arizona.

6

7              I FURTHER CERTIFY that the foregoing pages constitute

8     a full, true, and accurate transcript of all of that portion

9     of the proceedings contained herein, had in the above-entitled

10    cause on the date specified therein, and that said transcript

11    was prepared under my direction and control, and to the best

12    of my ability.

13

14             DATED at Phoenix, Arizona, this 14th day of March,

15    2018.

16

17

18

19

20                               s/ Patricia Lyons, RMR, CRR
                                 Official Court Reporter
21

22

23

24

25