James R. Condo (#005867)
Amanda C. Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' POST-VERDICT MOTION FOR JUDGMENT AS A MATTER OF LAW AND MEMORANDUM IN SUPPORT**<br><br>(Assigned to the Honorable David G. Campbell) |
| SHERR-UNA BOOKER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>C. R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, INC., an Arizona corporation,<br><br>Defendants. | **(Oral Argument Requested)** |

# MOTION

Pursuant to Federal Rule of Civil Procedure 50(b), Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") respectfully renew their Rule 50(a) motion for judgment as a matter of law made at the close of the plaintiff's case and the close of evidence. Bard alternatively moves under Rule 59 for a new trial, and separately files its Rule 59 Motion setting forth the alternative grounds for relief.

This motion is supported by the accompanying memorandum of points and authorities, all pleadings, papers, and other documents on file with this Court, the minutes of the court clerk, and the reporter's transcripts of the trial.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   Introduction

The trial record contains legally insufficient evidence to uphold the verdict that Bard negligently failed to warn Dr. D'Ayala about the risks of the G2 Filter that Ms. Booker received on June 21, 2007. First, the plaintiff did not present evidence that Bard had knowledge that the risks associated with the filter so departed from the norm that failure to disclose the risks constituted an inadequate warning. Second, based on the evidence presented at trial and Dr. D'Ayala's trial testimony, the jury could not reasonably infer that Dr. D'Ayala would not have used the G2 Filter, or that Ms. Booker's injuries otherwise could have been avoided, if Bard had given a different warning.

Moreover, the jury found that Bard was not liable concerning the G2 Filter's design, not liable concerning Bard's conduct in designing the G2 Filter, and not strictly liable concerning the adequacy of the G2 Filter's warnings, which included the adequacy of the communication to Dr. D'Ayala. (*See* Jury Instructions (Doc. 10589), at 18 (strict liability failure-to-warn instruction.) Thus, in weighing whether to award punitive damages concerning the negligent failure-to-warn verdict, the proper scope of evidence was a fraction of the overall evidence submitted at trial. And that evidence was legally insufficient to allow an award of punitive damages.

For each of these reasons, judgment as a matter of law is warranted.

- 1 -

## II. Factual Background

Before the case was submitted to the jury, Bard made a Motion for Judgment as a Matter of Law pursuant to Rule 50(a). (Trial Tr., at 2385, Mar. 28, 2018, excerpts attached as Exhibit A.) Bard's Rule 50(a) Motion concerned Ms. Booker's failure-to-warn claims, and specifically the adequacy of the warning and whether the breach was a proximate cause of Ms. Booker's injury. (*Id.* at 2385:21-23.) Bard also moved for judgment as a matter of law regarding Ms. Booker's claim for punitive damages. (*Id.* at 2385:19-20.) The Court denied Bard's Motion on all grounds. (*Id.* at 2399:18-22.) The jury returned a verdict for Ms. Booker only on her negligent failure-to-warn claim and awarded punitive damages. (Verdict Form (Doc. 10595), at 2, 3.) The Court has not entered judgment yet, and therefore this Motion is timely filed under Rule 50(b).

## III. Argument and Citation of Authority

### A. Applicable Legal Standards

A motion for judgment as a matter of law "should be granted only if there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Martinez v. UPS Ground Freight Inc.*, No. CV-11-0961-PHX-DGC, 2013 WL 173770, at *1 (D. Ariz. Jan. 16, 2013) (citing *Winarto v. Toshiba Electronics Components, Inc.,* 274 F.3d 1276, 1283 (9th Cir.2001) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149 (2000))). Although on a motion for judgment as a matter of law under Rule 50 the court "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor," *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quotation omitted), the Court should only uphold a verdict if the record contains "substantial evidence adequate to support" the jury's conclusion. *Escriba v. Foster Poultry Farms, Inc*., 743 F.3d 1236, 1242 (9th Cir. 2014).

### B. Bard Is Entitled To Judgment as a Matter of Law Regarding the Plaintiff's Negligent Failure-To-Warn Claim

#### 1. Legally Insufficient Evidence of Inadequate Warning

To establish a failure-to-warn claim under Georgia law, "the plaintiff must show

- 2 -

the defendant had a duty to warn, the defendant breached that duty and the breach was the proximate cause of the plaintiff's injury." *Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1362 (N.D. Ga. 1999). "[A] manufacturer has a duty to warn of nonobvious foreseeable dangers from the normal use of its product." *Thornton v. E.I Du Pont de Nemours & Co.*, 22 F.3d 284, 289 (11th Cir. 1994) (citations omitted). The duty generally is "breached by (1) failing to adequately communicate the warning to the ultimate user[1] or (2) failing to provide an adequate warning of the product's potential risks." *Id*. at 289.

Ms. Booker has consistently argued throughout this case that the warnings in the G2 Filter's IFU "were inadequate because they did not include risk rates or disclose that those risks associated with the G2 filter were higher than those of other filters, including Bard's own Simon Nitinol filter." (Or. on Bard's Mot. for Sum. Judgment (Doc. 8874), at 6 (citing Pl.'s Resp. Br.).) Ms. Booker has consistently argued that the IFU was inadequate because Bard had knowledge that the G2 Filter had a greater propensity to migrate, fracture, and perforate the IVC. (*Id.*) And Ms. Booker has consistently argued that the "G2 filter involved substantially greater risks of failure than competitor filters and even Bard's own SNF filter." (*Id.* at 8 (citing Pl.'s Resp. Br.).)

In denying Bard's Motion for Summary Judgment regarding the adequacy of the G2 Filter's warnings, the Court noted, "presumably there is a point where the risks of a product *so depart from the norm* that a failure to disclose them constitutes an inadequate warning. Whether that point was reached in this case will be for the jury to decide." (*Id.* at 10 (emphasis added).) The Court further noted that "[t]he jurors in this case, unlike in *Nolley*,[2] will be presented with proposed warnings and will have a means by which to

---

[1] Georgia follows the learned intermediary doctrine, under which the manufacturer has no "duty to warn the patient of the dangers involved with the product, but instead has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and manufacturer." *McCombs v. Synthes (U.S.A.)*, 587 S.E.2d 594, 595 (Ga. 2003) (citing *Ellis v. C. R. Bard, Inc.*, 311 F.3d 1272, 1279-80 (11th Cir. 2002)).

[2] The Court was referring to *Nolley v. Greenlee Textron, Inc.*, No. 1:06-CV-228-MHS, 2007 WL 5369405, at *7 (N.D. Ga. Dec. 6, 2007), which Bard cited in support of its Motion for Summary Judgment. In that case, the Northern District of Georgia granted summary judgment because the plaintiff lacked "essential expert evidence as to what

- 3 -

determine whether the actual warnings were adequate." (*Id.*)  Thus, the denial of summary judgment foresaw the presentation of evidence at trial that (1) the risks associated with the G2 Filter were *significantly higher* than risks of other, alternative filters; and (2) identified proposed warnings that the jury could consider when weighing whether Bard's warnings were adequate.

At trial, however, the plaintiff failed to present legally sufficient evidence on either point.  Specifically, the plaintiff did not present evidence that Bard had knowledge that the risks associated with the G2 Filter so departed from the norm that failure to disclose the risks constituted an inadequate warning.  For that reason, the plaintiff presented legally insufficient evidence to meet her burden.  Indeed, although expert testimony about such a complex issue is required, *see, e.g., In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, 227 F. Supp. 3d 452, 469 (D.S.C. 2017) ("While the specific language used by courts vary to some degree, all jurisdictions require expert testimony at least where the issues are medically complex and outside common knowledge and lay experience.") (collecting cases), none of the plaintiff's experts testified that the G2 Filter had rates of complication that were significantly higher than other filters. (Or. (Doc. 9771), Jan. 22, 2018, at 8 ("The Court concludes that Dr. Muehrcke should not be permitted to opine on Bard filter failure rates."); Or. (Doc. 9772), Jan. 22, 2018, at 8 ("Dr. Hurst cannot (1) opine that Bard filters have higher complication rates than other IVC filters and have unacceptable risks of caudal migration."); Ex. A, Trial Tr., 624:11-22 (Dr. McMeeking testifying that he is not offering opinions that the G2 Filter had higher complication rates than any other filter.).)  In short, the plaintiff utterly failed to present any evidence at the trial on the fundamental premise of her warning claim.  Nor did the plaintiff present proposed warnings that the jury could consider when weighing whether Bard's warnings to Dr. D'Ayala were adequate in June 2007.  Thus, the plaintiff is missing the necessary evidence to establish an element of her claim.

---

alternative warnings should have been given and whether such warnings would have been heeded."

- 4 -

Moreover, Bard presented the unrebutted expert testimony of Dr. Clement Grassi that establishes "the norm" for what the medical community knew about adverse events of IVC filters generally. *Martinez v. UPS Ground Freight Inc.*, No. CV-11-0961-PHX-DGC, 2013 WL 173770, at *1 (D. Ariz. Jan. 16, 2013) (noting that the court "may consider evidence that is not rebutted" and favorable to the moving party). Dr. Grassi testified at length that the medical literature available before and after Ms. Booker was treated with the G2 Filter discussed IVC filters, as a whole, fracturing at rates up to 10%, penetrating the IVC at rates up to 41%, and migrating at rates up to 18% (Ex. A, Trial Tr., 1973:7-18). Dr. Grassi's unrebutted testimony also establishes that these rates were well known within the interventional radiology community, and that the Society of Interventional Radiology published, posted on their website, and sent an article discussing these rates to more than 5000 interventional radiologists worldwide no fewer than three times before June 2007 (*Id*. at 1977:5-8; 1977:17 to 1979:1). Against that background, nothing in the record supports a finding that Bard knew before or after June 2007 that the rates of complication for the G2 Filter were significantly higher than the reported rates that the medical community knew about regarding IVC filters as a whole, as summarized in the Society of Interventional Radiology Guidelines. Therefore, nothing in the record supports a finding that the G2 Filter's complication rates so departed from the norm that a failure to disclose them constituted an inadequate warning. Accordingly, judgment as a matter of law is warranted.

### 2. Legally Insufficient Evidence of Causation

To prove the proximate cause element of a failure-to-warn claim under Georgia law, "a plaintiff must also prove: (1) that the prescribing physician was not aware of the alleged risk at issue, and (2) but for the inadequate warning, the physician would not have used or prescribed the product." *Watkins v. Eli Lilly & Co.*, No. 1:08-CV-1665, 2010 WL 11493785, at *8 (N.D. Ga. Mar. 31, 2010) (citing *Wheat*, 46 F. Supp. 2d, at 1363); *accord Porter v. Eli Lilly & Co.*, 291 F. App'x 963, 964 (11th Cir. 2008). "If a plaintiff fails to meet this burden, the causal connection is broken, and plaintiff cannot prove that the

breach was the proximate cause of his injuries." *Watkins*, 2010 WL 11493785, at *8.

In denying Bard's Motion for Summary Judgment, the Court noted that "Dr. D'Ayala's testimony is sufficient evidence of causation at the summary judgment stage, because it can be inferred that he would not have implanted the G2 Filter had he been warned about its higher complication rates." (Or. on Bard's Mot. for Sum. Judgment (Doc. 8874), at 13 (emphasis added) (quotations omitted).) Dr. D'Ayala's trial testimony about the G2 Filter was limited, however. Further, what little testimony that was offered related to unsupported assertions of counsel that the G2 Filter had *much higher* complication rates than other filters, including questions about the G2 Filter having "a *fivefold risk* for fracture compared to other filters"[3] or a "*25% risk* of filter fracture."[4] The plaintiff's counsel never even identified the date or source of the alleged information providing the premise for these questions, much less produced evidence to substantiate them.[5]

At trial, the plaintiff failed to present legally sufficient evidence that before or after June 21, 2007, when Ms. Booker received the G2 Filter, Bard had knowledge that the G2 Filter had a fivefold risk of fracture compared to other filters, a 25% risk of fracture, or even a 10% risk of fracture as discussed in the medical literature for IVC filters generally.

---

[3] Ex. A, Trial Tr., 897:18 (playing D'Ayala Dep. Tr. 61:18 to 63:9, excerpts attached as Exhibit B).

[4] *Id.* at 126:10-15.

[5] The remainder of the warnings-related questions during Dr. D'Ayala's trial testimony was limited to risks concerning the Recovery Filter. (Ex. A, Trial Tr., 897:18 (playing D'Ayala Dep. Tr., 33:10-15 (2004 "crisis management plan" regarding the Recovery Filter); 33:17-22 (adverse events regarding the Recovery Filter); 33:24 to 34:5 (independent investigation regarding the Recovery Filter); 34:7-19 (higher fracture and death rate regarding the Recovery Filter); 37:22 to 40:2 (Recovery Filter Remedial Action Plan); 43:20 to 44:1 (MAUDE database analysis regarding Recovery Filter); 51:4-10 (higher rates of complication for the Recovery Filter); 63:10 to 64:2 (discussing exhibits regarding the Recovery Filter). *See also id* at 49:16-22 (concerning a hypothetical question about Bard's knowledge "in 2006 . . . showing within the company of a 500 percent greater risk with Bard filter compared with other filters," which other testimony demonstrates was about the Recovery Filter (*Id*. at 397:9-10 (playing Ciavarella Dep. Tr., 179:16 to 180:21, excerpts attached as Exhibit C)).) Counsel for the plaintiff also asked a couple of questions about a single study concerning the G2 Filter that was published in the publicly available medical literature in August 2010, more than three years after Ms. Booker received a G2 Filter. (Ex. B, D'Ayala Dep. Tr., at 66:19 to 70:5.)

- 6 -

1   Thus, the jury could not reasonably infer that the fracture rate for the G2 Filter was so
2   high that Dr. D'Ayala would not have used the filter.

3         Moreover, the plaintiff's new theme at trial that the G2 Filter presented a "cascade
4   of complications" was never explored with Dr. D'Ayala in his trial testimony. (*See, e.g.,*
5   Ex. A, Trial Tr., 141:2-3 (discussing "a cascade of complications" during the plaintiff's
6   opening).)  In fact, Dr. D'Ayala was not asked a single question about a "cascade of
7   complications" or anything resembling the "cascade of complications" theory. Nor was
8   Dr. D'Ayala asked whether information about the potential interrelatedness of
9   complications would have impacted his decision to use the G2 Filter for Ms. Booker. As
10  such, the jury had no significant probative evidence to support a reasonable inference that
11  Dr. D'Ayala would not have used the filter if warned about a "cascade of complications."
12  *See Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 802-03 (9th Cir. 2009) ("A
13  reasonable inference cannot be supported by only threadbare conclusory statements
14  instead of significant probative evidence. Consequently, JMOL is appropriate when the
15  jury could have relied only on speculation to reach its verdict.").

16        Finally, if the plaintiff argues that Bard should have given a different warning to
17  Dr. D'Ayala (or any other of Ms. Booker's physicians) *after* Ms. Booker received the G2
18  Filter, the jury cannot reasonably infer from Dr. D'Ayala's testimony (or anyone else's
19  testimony) that such a warning would have avoided Ms. Booker's damages in this case.
20  For example, the jury would need to speculate that Dr. D'Ayala could have contacted Ms.
21  Booker, that Ms. Booker was still in New York at the time, that Ms. Booker would have
22  gone back to see Dr. D'Ayala, that Dr. D'Ayala would have recommended filter retrieval
23  given Ms. Booker's clinical condition at the time, that Ms. Booker would have consented
24  to undergo filter retrieval, and that Dr. D'Ayala would have been able to retrieve the filter.
25  Such inferences are impermissibly speculative and cannot support a verdict. *Id.*

26        For each of these reasons, judgment as a matter of law is warranted.

27        **C.**    **Bard Is Entitled To Judgment as a Matter of Law Regarding the Plaintiff's Punitive Damages Claim**
28

At the conclusion of Ms. Booker's case, the jury found that Bard had no liability concerning the G2 Filter's design (strict liability design defect claim) and Bard's conduct in designing the G2 Filter (negligent design claim), and no liability concerning the adequacy of the G2 Filter's warnings, including the adequacy of the communication to Dr. D'Ayala (strict liability failure-to-warn claim). (*See* Jury Instructions (Doc. 10589), at 18 (strict liability failure-to-warn instruction.).  Under the verdict, Bard's liability was limited to negligently failing to warn about the risks of the G2 Filter.[6]  Thus, the proper scope of evidence available for the jury to consider in arriving at a finding of punitive damages is a fraction of the overall evidence submitted at trial.  And that evidence is legally insufficient to allow a finding of clear and convincing evidence that Bard acted with conscious indifference to the consequences of its actions.  As such, judgment as a matter of law is warranted.

<u>Limited Scope of Punitive Damages Evidence</u>

In *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), the United States Supreme Court held that pursuant to the Due Process Clause, "[a] defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *Id.* at 422.  Due process prohibits imposing punitive damages to "punish and deter conduct that b[ears] no relation" to a plaintiff's injury. *Id.* at 422-23 ("A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business."). *See also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996) (a punitive damages award based on conduct unrelated to the plaintiff's harm enters the "zone of arbitrariness" that violates due process); *see Philip Morris USA v. Williams,* 549 U.S. 346, 353 (2007) ("Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury

---

[6] As Bard argues in its contemporaneously filed Rule 59 Motion, these verdicts were irreconcilably inconsistent.  But if the verdicts were not irreconcilably inconsistent, the proper scope of evidence available for the jury to consider regarding punitive damages would still be significantly limited.

- 8 -

that it inflicts upon non-parties or those whom they directly represent").[7]  Here, because Bard's acts related to the G2 Filter's design were not the premise of a finding of liability, and Bard's acts related to the G2 Filter's warnings were not the premise of a finding of liability in strict liability, the appropriate scope of conduct that the jury was permitted to consider in arriving at a finding of punitive damages is necessarily and narrowly limited.  For example, evidence of migration deaths associated with the Recovery Filter is beyond the scope of permissible evidence for the jury to consider because it relates to design issues of a different filter than the G2 Filter that Ms. Booker received, the jury found that the G2 Filter was not defectively designed, and there is no evidence that anyone (much less Ms. Booker) experienced a fatal migration of a G2 Filter to the heart.  Likewise, evidence about the EVEREST study that occurred after Ms. Booker received the G2 Filter and that might bear on Bard's conduct related to the design of the G2 Filter is beyond the scope of permissible evidence for punitive damages.

<u>Legally Insufficient Evidence of Punitive Conduct</u>

The Official Code of Georgia section 51–12–5.1(b) provides that "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."  Conduct that gives rise to liability is not enough to award punitive damages:  "There must be circumstances of aggravation or outrage."  *Walker v. Sturbridge Partners, Ltd.,* 470 S.E.2d 738 (Ga. App.

---

[7] As other courts have held, allowing the jury to consider evidence that does not have a "nexus to the specific harm" suffered by the Plaintiff violates the defendant's due process rights.  *See, e.g.*, *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 797 (8th Cir. 2004) (as a matter of due process, "courts cannot award punitive damages to plaintiffs for wrongful behavior that they did not themselves suffer"); *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1016 (9th Cir. 2007) (vacating punitive damages award in part because of a significant risk that the jury awarded punitive damages based on unethical behavior that did not specifically harm the plaintiff); *INGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 313-14 (4th Cir. 2003) (district court erred in submitting punitive damages claim to the jury by "extend[ing] its focus beyond" the conduct that allegedly caused plaintiff's harm).

1996), aff'd in part and rev'd on other grounds, *Sturbridge Partners, Ltd. v. Walker,* 482 S.E.2d 339 (Ga. 1997).  To meet the punitive damages standard "even gross negligence[,] is inadequate to support a punitive damage award." *Howard v. Alamo Corp.,* 455 S.E.2d 308 (Ga. App. 1995).

In denying Bard's Motion for Summary Judgment, the Court noted that the jury could conclude that Bard "knew the G2 Filter was failing at a significantly higher rate than other IVC filters but did nothing to correct the problem or to warn doctors or patients of the increased risk." (Or. (Doc. 8874), Nov. 22, 2017, at 20 (quotation omitted).)  As discussed *supra*, however, the jury found that Bard acted properly in designing the G2 Filter (negligent design defect) and in giving adequate warnings regarding the G2 Filter (strict liability failure to warn).  As such, Bard could not also have acted improperly with circumstances "of aggravation or outrage" worse than "even gross negligence" in failing to warn about the risks of the G2 Filter.

To the contrary, the unrebutted testimony of Bard's witnesses was that Bard worked with the FDA in clearing the G2 Filter for use, including the Instructions for Use. (*See, e.g.,* Ex. A, Trial Tr., 1426:15-23.)  The Instructions for Use specifically warned about the risks of injury that Ms. Booker ultimately experienced, including movement of the filter, migration, fracture, perforation of the IVC wall, embolization of fractured fragments, and the potential need for endovascular and/or surgical removal of the fragments. (Trial Ex. 994, G2 Instructions for Use, Oct. 2006, attached as Exhibit D.) And Dr. D'Ayala testified that he had these Instructions for Use available to him before he treated Ms. Booker. (Ex. A, Trial Tr., 897:18 (playing D'Ayala Dep. Tr., 33:10-15).) Thus, while the jury may have found that Bard was negligent regarding some aspect of its warnings, the evidence viewed in the light most favorable to the plaintiff does not support a finding that Bard was *more* than *grossly negligent*, as is necessary to award punitive damages under Georgia law. *See Heston v. Taser Int'l, Inc.*, 431 F. App'x 586, 589 (9th Cir. 2011) (affirming district court's order vacating the punitive damages award where TASER had "made efforts, albeit insufficiently, to warn its customers about the risks

posed by prolonged TASER deployment. While this may amount to negligence, it does not rise to the level of 'willful or wanton' conduct.")[8]

Like Georgia punitive damages law, Arizona punitive damages law requires "something more" than gross negligence, such as wrongful conduct motivated by spite, malice, intent to defraud, or conscious and deliberate disregard of the interest and rights of others. *Martinez v. UPS Ground Freight Inc.*, No. CV-11-0961-PHX-DGC, 2013 WL 173770, at *1 (D. Ariz. Jan. 16, 2013). In *Martinez*, this Court denied the defendant's motion for summary judgment on punitive damages, but granted judgment as a matter of law during trial, noting that the evidence viewed in the light most favorable to the plaintiff could constitute gross negligence or even reckless disregard for the safety of others, but that such a finding is still insufficient to warrant punitive damages. As in *Martinez*, the trial record here does not support a punitive damages award related to the jury's verdict

---

[8] *See, e.g., Stone Man, Inc. v. Green*, 435 S.E.2d 205, 206 (Ga. 1993) (finding that "compliance with county, state, and federal regulations is not the type of behavior which supports an award of punitive damages," and, "as a general rule," punitive damages are "improper where a defendant [in a products liability case] has adhered to . . . safety regulations."); *Hernandez v. Crown Equip. Corp.*, 92 F. Supp. 3d 1325, 1357 (M.D. Ga. 2015) ("[E]ven assuming that most or even all of the 741 accidents were sufficiently similar to the one here to impute constructive notice to Crown, forklift manufacturers clearly have to weigh the benefits of a particular design against the possibility that other risks might be increased" and "Crown was not consciously indifferent" to the risk because it made different design changes other than those proposed by the plaintiff); *Moore v. Wright Med. Tech., Inc.*, No. 1:14-CV-62, 2016 WL 1298975, at *6 (S.D. Ga. Mar. 31, 2016) (finding that the plaintiff alleged a viable failure to warn claim because "Defendant published materials in which it claimed to have never experienced modular neck fractures since 1985, even though Defendant knew those statements were false," but such evidence did not justify bringing a punitive damages claim); *Stuckey v. N. Propane Gas Co.*, 874 F.2d 1563 (11th Cir. 1989) (affirming the district court's finding that "the evidence did not show [the manufacturer's] culpability rose to a level sufficient to justify an award of punitive damages under Georgia law" even though "[t]he propane industry in general has long been familiar with this phenomenon of 'odor fade'" such that in certain circumstances, leaking propane would become odorless and causing a greater risk of explosions); *see also Kodadek v. Lieberman*, 247 Ga. App. 606, 609–10, 545 S.E.2d 25, 29–30 (2001) (affirming the trial court's granting judgment notwithstanding the verdict on the issue of punitive damages where there was insufficient evidence that the defendants (a hospital and medical providers) "showed the requisite degree of willful misconduct . . . or otherwise evinced that entire want of care as to authorize . . . punitive damages); *Roseberry v. Brooks*, 218 Ga. App. 202, 209–10, 461 S.E.2d 262, 268–69 (1995), as supplemented on denial of reconsideration (July 28, 1995) (affirming a directed verdict on punitive damages, noting that evidence of mere negligence falls short of "clearly and convincingly evincing that entire want of care as will support punitive damages").

that Bard negligently failed to warn about the risks of the G2 Filter, particularly considering that the jury found no liability regarding the plaintiff's strict liability failure-to-warn claim. Accordingly, judgment as a matter of law is warranted.

## IV.    CONCLUSION

For the foregoing reasons, this Court should enter judgment as a matter of law regarding the plaintiff's negligent failure to warn cause of action and the jury's award of punitive damages.

RESPECTFULLY SUBMITTED this 23rd day of April, 2018.

s/ Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

James R. Condo (#005867)
Amanda Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of April, 2018, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

s/ Richard B. North, Jr.<br>
Richard B. North, Jr.