1   James R. Condo (#005867)
    Amanda C. Sheridan (#027360)
2   SNELL & WILMER L.L.P.
    One Arizona Center
3   400 E. Van Buren, Suite 1900
    Phoenix, Arizona  85004-2202
4   Telephone:  602.382.6000
    Facsimile:  602.382.6070
5   jcondo@swlaw.com
    asheridan@swlaw.com
6
    Richard B. North, Jr. (admitted *pro hac vice*)
7   Georgia Bar No. 545599
    Matthew B. Lerner (admitted *pro hac vice*)
8   Georgia Bar No. 446986
    NELSON MULLINS RILEY & SCARBOROUGH LLP
9   201 17th Street, NW / Suite 1700
    Atlanta, GA  30363
10  Telephone: (404) 322-6000
    Telephone: (404) 322-6050
11  richard.north@nelsonmullins.com
    matthew.lerner@nelsonmullins.com
12
    *Attorneys for Defendants*
13  *C. R. Bard, Inc. and*
    *Bard Peripheral Vascular, Inc.*

14

15              **IN THE UNITED STATES DISTRICT COURT**

16                  **FOR THE DISTRICT OF ARIZONA**

17   IN RE:  Bard IVC Filters Products Liability        No. 2:15-MD-02641-DGC
     Litigation
18                                                      **DEFENDANTS' RESPONSE IN**
                                                        **OPPOSITION TO PLAINTIFF'S**
19                                                      **MOTION FOR**
                                                        **RECONSIDERATION**
20
                                                        (Assigned to the Honorable David G.
21                                                      Campbell)

22

23

24

25

26

27

28

*[Left margin vertical text: Nelson Mullins Riley & Scarborough L.L.P.; 201 17th Street NW, Suite 1700 Atlanta, GA 30363 (404) 322-6000]*

Nelson Mullins Riley & Scarborough

L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

1    Plaintiff's Motion for Reconsideration (Dkt. No. 10873) is based upon a false

2    premise. While Plaintiff claims there are two reports of "death from filter migration to

3    heart in Eclipse patients," (Pl.'s Mot. at 4 (citing Complaint File Nos. 313635 and

4    354264)), a close inspection of those two complaints confirms ***they are not cephalad***

5    ***migration-related deaths***, nor are they at all similar to the reports of Recovery Filter

6    cephalad migration deaths that Bard received in 2004 and 2005. Indeed, a review of the

7    complaint files confirms that for one of the events cited by Plaintiff (No. 313635), the

8    Eclipse Filter likely saved the patient's life, and only after a competitor filter was

9    subsequently implanted did the patient unfortunately pass away. For the other event cited

10   (No. 354264), the Eclipse Filter migrated only to the "proximity of the right atrium" (i.e.,

11   not fully lodged in the patient's heart), the cause of the patient's death was thought to be

12   pulmonary embolism, and the doctor involved in the case did not believe that the patient's

13   death was "related" to the filter.

14   With Plaintiff's false premise exposed, her Motion for Reconsideration becomes

15   nothing more than a rearguing of the points she made in her prior Response Brief (Dkt.

16   No. 10701) and during the argument concerning this issue on April 13, 2018. For the

17   reasons this Court has already articulated, (*see* Dkt. No. 10819, at 3-6), Plaintiff's

18   arguments concerning the alleged relevancy of Recovery Filter cephalad migration-related

19   deaths should be rejected.[1]

20

21   [1] This Court recently stated that "[a] motion for reconsideration will be denied 'absent a
     showing of manifest error or a showing of new facts or legal authority that could not have
22   been brought to [the Court's] attention earlier with reasonable diligence.'" *Salt River
     Project Agric. Improvement & Power Dist. v. Trench France SAS*, No. CV-17-01468-
23   PHX-DGC, 2017 WL 6554860, at *1 (D. Ariz. Dec. 22, 2017) (*quoting* LRCiv 7.2(g)(1);
     *citing Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003)). As a result, there are only
24   "four circumstances where a motion for reconsideration will be granted: (1) the moving
     party has discovered material differences in fact or law from those presented to the Court
25   at the time of its initial decision, and the party could not previously have known of the
     factual or legal differences through the exercise of reasonable diligence; (2) material
26   factual events have occurred since the Court's initial decision; (3) there has been a
     material change in the law since the Court's initial decision; or (4) the moving party makes
27   a convincing showing that the Court failed to consider material facts that were presented
     to the Court at the time of its initial decision." *Nicole-Pickett v. Wells Fargo Bank, N.A.*,
28   No. CV-16-03262-PHX-DGC, 2016 WL 7187988, at *1 (D. Ariz. Dec. 12, 2016). None
     of these circumstances occurred here, and Plaintiff provide no reason that these complaint

1    This is an Eclipse Filter case. The jury will be asked to decide whether *the Eclipse*

2    is defective and unreasonably dangerous, and whether Bard provided appropriate and

3    adequate warnings *concerning the Eclipse*. But, Plaintiff would rather try this case as a

4    referendum on the Recovery Filter. Indeed, Plaintiff's Motion for Reconsideration once

5    again makes clear her desire to inflame the jury by attempting to inject into this case

6    irrelevant evidence regarding Recovery cephalad migration-related deaths. This Court

7    correctly found such evidence to have, at most, "marginal relevancy" in this Eclipse case.

8    (Dkt. No. 10819, at 5.) Bard respectfully requests that this Court reconfirm its conclusion

9    that evidence of Recovery cephalad migration deaths should be excluded from this Eclipse

10   case pursuant to Rule 403 because the probative value, if any, of such evidence is

11   substantially outweighed by the prejudicial effect.

**ARGUMENT AND CITATION TO AUTHORITIES**

12

13   **A. Plaintiff Still Cannot Identify Any Reports of Death Caused by the Cephalad**

14   **Migration of a G2, G2X, or Eclipse Filter.**

15   Plaintiff requested leave to file her Motion for Reconsideration ostensibly because

16   she claims to have identified deaths allegedly caused by the cephalad migration of a Bard

17   G2, G2X, or Eclipse Filter. Bard's position has consistently been that Bard's later

18   generation IVC filters largely resolved the problem of cephalad migration, and that,

19   notwithstanding having sold more than 180,000 G2/G2X Filters and more than 66,000

20   Eclipse Filters, and producing the relevant internal complaint files regarding those

21   devices to Plaintiff, Bard was unaware of any report of a G2, G2X, or Eclipse Filter

22   migrating to a patient's heart and allegedly causing the patient's death. Bard's position is

23   confirmed by Plaintiff's Motion for Reconsideration, including by the information

24

25

26   files, produced to Plaintiff two years ago, "could not have been brought to the Court's
     attention earlier with reasonable diligence." "No motion for reconsideration of an Order
     may repeat any oral or written argument made by the movant . . . that resulted in the

27   Order," and it is not "the time to ask the Court to rethink what it has already thought."
     L.R. Civ. 7.2(g)(1); *Nicole-Pickett*, 2016 WL 7187988 at *1. As a result, Plaintiff's

28   motion should be denied.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

1    provided in Plaintiff's Exhibit B, which purports to be a "representative summary" of

2    cephalad migrations involving Bard's later generation filters. Specifically, a close

3    inspection of the two death-related complaints identified in Plaintiff's Exhibit B --

4    Complaint File Nos. 313635 and 354264 -- reveals that, contrary to Plaintiff's claims, the

5    complaints are not reports of "death from filter migration to heart in Eclipse patients."

6    (Pl.'s. Mot. at 4 (citing Complaint File Nos. 313635 and 354264).)

7           **Complaint No. 313635:** Plaintiff claims that this report discusses "death from

8    filter migration to heart." (Pl.'s Mot. at 4.) Plaintiff's characterization of this report is

9    simply not accurate.

10          The Complaint Record Detail Report, attached as a portion of Exhibit B to

11   Plaintiff's Motion (*see* Pl.'s Mot., Ex. B, at 33-38 (Bates labeled BPV-COMP-00025535

12   to 25540), demonstrates that Complaint No. 313635 *is not* a report of death caused by

13   the cephalad migration of an Eclipse Filter, as Plaintiff claims. In fact, the complaint file

14   confirms that the Eclipse Filter likely initially saved the patient's life. ████████████

15   ████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████

18   ████████████████████ █ ███████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████████████

24   _____

25   [2] ████████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████████████

28   █████████████████████████

[REDACTED]

Thus, according to the complaint file, the patient did not die "from filter migration to heart," as Plaintiff claims. [REDACTED]

[REDACTED]

[REDACTED].[3]

**Complaint No. 354264:** Again, Plaintiff claims that this report discusses "death from filter migration to heart." (Pl.'s Mot. at 4.) Again, Plaintiff's characterization of this report is simply not accurate.

The Complaint Record Detail Report, attached as a portion of Exhibit B to Plaintiff's Motion (*see* Pl.'s. Mot., Ex. B, at 72-76 (Bates labeled BPV-COMP-00026440 to 26444), demonstrates that Complaint No. 354264 *is not* a report of death caused by the cephalad migration of an Eclipse Filter, as Plaintiff claims. The complaint file notes

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

Thus, as shown in the Complaint Record Detail Report attached to Plaintiff's

---

[3] Plaintiff tacitly recognizes that this complaint is dissimilar from the Recovery Filter cephalad migration deaths -- where the entire device *and* a large clot burden migrated to a patient's heart, allegedly causing death (*see, e.g.*, Pl.'s' Mot., Ex. N, at 6-7 (Bates labeled BPV-17-01-00153663 to 153664 (noting that in first report of Recovery cephalad migration-related death, the filter was encased in clot and was found to have migrated to the patient's right atrium))) -- but she tries to find similarities with the Eclipse events by arguing that both "were associated with large clot burdens." (*See* Pl.'s' Mot. at 6 n.3.) That the Recovery and Eclipse death events both involved "large clot burdens" only tells a small portion of the story. Indeed, a case involving a migration of a large clot and a Bard filter to the heart is very different from a case involving a Bard filter that stopped a clot from reaching a patient's heart, the Bard filter and clot being removed, and then a competitor filter implanted, with the patient later passing away due to another pulmonary embolism. Plaintiff's attempt to claim that these two types of events are identical or substantially similar strains credulity.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

1  Motion, it was never determined that this patient died "from filter migration to heart," as

2  Plaintiff claims. ███████████████████████████████████████████████████████

3  ███████████████████████████████████████████████████████████████████████

4  ████████████████████████████

5  **Remaining Complaints Identified in Plaintiff's Exhibit B:** Plaintiff also

6  identifies additional purported non-fatal cephalad migration events associated with the

7  G2, G2X, and Eclipse Filters. But Bard has never argued that its later generation IVC

8  filters are 100% free from the risk of cephalad migration. To the contrary, Bard has

9  consistently argued that the risk of cephalad migration is a risk associated with all makes

10  and models of IVC filters, and that reports of cephalad migration of filters to the heart

11  have been associated with many different filters, including the SNF and competitor

12  filters. That is why cephalad migration is described in the SIR Guidelines, and why Bard

13  warns of such migration in each and every one of its retrievable filter IFUs.

14  Bard's position is that its subsequent generation IVC filters largely addressed and

15  resolved the complication of cephalad migration as compared to the Recovery. Notably,

16  Plaintiff presents no evidence or data suggesting that cephalad migration occurred with

17  Bard's subsequent generation filters anywhere near the same frequency as with the

18  Recovery. Instead, Plaintiff's counsel admitted during argument that "there is not a lot of

19  cephalad migration" with Bard's later generation filters, and that Bard's later generation

20  filters "by and large" "fix[ed]" cephalad migration. (4/13/18 Pretrial Conference Trans.

21  at 14:9-10; 15:19-21.)

22  Finally, most of the non-death cephalad migrations identified in Plaintiff's Exhibit

23  B do not involve migrations to the heart (e.g., Complaint File Nos. 291446, 239963,

24  248122, and 260851), or they involve circumstances where the filter legs did not fully

25  open and deploy at implant, events which are unlike the Recovery Filter cephalad

26  migration-related deaths (e.g., Complaint File Nos. 250927[4], 273135[5], and 283282). In

27  ─────────────────

28  [4] Plaintiff's narrative in her "Representative Summary" fails to note ████████████
████████████████████████████████████████████████████████████████

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

1  fact, the only non-Recovery Filter cephalad migration event identified in Plaintiff's

2  Exhibit B, Complaint File No. 383261, ███████████████████████████████

3  ████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████ (Pl.'s' Mot., Ex.

5  B, at 123 (Bates labeled BPV-COMP-00027608).)

6                              *      *      *

7        As   demonstrated   above,   and   contrary   to   Plaintiff's   argument,   Bard's

8  representations to this Court that it is unaware of any report of a G2, G2X, or Eclipse

9  Filter migrating to a patient's heart and allegedly causing the patient's death remains

10  100% accurate. Plaintiff has gone to great lengths to try to argue that two reports out of

11  the numerous patients who received G2/G2X/Eclipse Filters (out of more than 246,000

12  sold) who subsequently passed away are examples of "death from filter migration to

13  heart," (*see* Pl.'s Mot. at 4), but those efforts have proven fruitless. The two Eclipse

14  death  events  are  simply  not  examples  of  patient  death  due  to  an  alleged  cephalad

15  migration of the filters to the patients' hearts.

16        Because the fundamental premise of Plaintiff's Motion is proven to be false, and

17  there are still no confirmed reports of cephalad migration to the heart allegedly causing

18  death associated with Bard's later generation filters, the logic that underlies this Court's

19  original ruling remains fully sound, and Plaintiff's Motion for Reconsideration should be

20  denied.

21  **B. Any Marginal Probative Value of Evidence Concerning Recovery Filter**

22  **Cephalad Migration-Related Deaths Is Substantially Outweighed by the Risk**

23  **of Unfair Prejudice.**

24        This  Court  previously  found  that  the  "marginal  relevanc[e]"  of  evidence

25  ─────────────────────────────────────────────

26  ██████████████████" (Pl.'s' Mot., Ex. B, at 154 (Bates labeled
    TW_COMPLAINT_004754).)

27  [5] Plaintiff's narrative in her "Representative Summary" fails to note that ████████

28  (*See* Pl.'s' Mot., Ex. B, at 187 (Bates labeled TW_COMPLAINT_005181).)

- 6 -

Nelson Mullins Riley & Scarborough L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

1    concerning Recovery Filter cephalad migration death is "substantially outweighed by the

2    danger of unfair prejudice." (Dkt. No. 10819, at 5.) That marginal relevance remains

3    unchanged despite Plaintiff's Motion for Reconsideration, given the Court's fundamental

4    premise -- i.e., that there are no confirmed reports of a G2, G2X, or Eclipse Filter

5    migrating to a patient's heart and allegedly causing the patient's death -- remains

6    accurate.

7           Moreover, Plaintiff's Motion confirms the unfairly prejudicial impact that

8    evidence of Recovery cephalad migration death would have on this Eclipse case. For

9    example, Plaintiff argues that testimony from Dr. Gary Cohen (a physician who *did not*

10   treat Ms. Jones) is "powerful evidence that Bard knew about risks with its product [i.e.,

11   the Recovery] but failed to tell physicians about it, including the fact that the Recovery

12   had been placed on a QC hold." (Pl.'s Mot. at 9 n. 6.) Using such testimony to argue that

13   Bard failed to warn about the Recovery Filter, in a case involving the Eclipse Filter,

14   would unfairly prejudice Bard and would confuse the issues. It would inappropriately

15   invite the jury to find that Bard has a propensity to fail to warn doctors about all of its

16   products, including the Eclipse, which is a violation of Federal Rule of Evidence, Rule

17   404(a)&(b). Plaintiff's use of such testimony would also run afoul of this Court's prior

18   conclusion that "Bard's general failure to disclose problems with the Recovery is not

19   relevant to design of the G2 and is only marginally relevant, if relevant at all, to Bard's

20   alleged failure to warn claim with respect to the G2. The danger of unfair prejudice from

21   these questions substantially outweighs any probative value." (Dkt. No. 10438.)

22          Similarly, Plaintiff seeks to inappropriately use evidence of Recovery Filter

23   cephalad migration death root cause analyses to try to prove that Bard conducted

24   inadequate root cause analyses with its Eclipse Filter. (*See, e.g.*, Pl.'s' Mot. at 4.)

25   Plaintiff also seeks to use evidence of Recovery cephalad migration deaths to prove that

26   Bard, "in the face of continued cephalad migrations," inappropriately "reevaluat[ed] its

27

28

1    design once again within months of the Eclipse launch."[6] Again, using such evidence to

2    try to prove propensity is prohibited by Rule 404(a)&(b).

3        At bottom, this Court previously recognized the inherent risk of unfair prejudice

4    that would be presented if evidence of Recovery Filter cephalad migration-related deaths

5    is injected into this Eclipse case. (*See, e.g.*, Dkt. No. 10438, at 5-6.) Plaintiff's Motion

6    only confirms that risk. Because Plaintiff has not presented any new evidence

7    demonstrating the relevance of evidence of cephalad migration death, this Court should

8    confirm its finding that any probative value of such evidence is substantially outweighed

9    by the risk of unfair prejudice.

10   **C. Evidence of Recovery Cephalad Migration-Related Deaths Can Be Removed**

11   **From This Case.**

12       Plaintiff's concern that evidence of Recovery Filter cephalad migration-related

13   deaths cannot "reasonably be extracted" from the "overall complication evidence" is

14   overblown. The parties can review their proposed deposition designations and documents

15   that concern Recovery issues, and edit or redact the materials as necessary to remove

16   references to Recovery cephalad migration-related deaths. Thus, Plaintiff's concern can

17   be addressed by careful review and editing.[7]

18       Additionally, Plaintiff has substantial non-Recovery and non-death migration

19   evidence at her disposal. Indeed, Bard has produced to Plaintiff millions of pages of

20

21   [6] The factual premise of Plaintiff's argument -- that Bard sought to "redesign" the Eclipse
     within months of is release -- is simply not accurate. As Bard's internal documents and
22   communications to FDA make clear, Bard simultaneously developed the Eclipse,
     Meridian, and Denali Filters at the time.

23   [7] Regarding Plaintiff's Exhibit O, Plaintiff has not met and conferred regarding
     application of the Court's April 18, 2018, Order excluding Recovery Filter migration-
24   related deaths to deposition designations.  In an effort to meet the then April 20, 2018,
     deadline to submit all deposition designations and objections, counsel for Bard attempted
25   to identify deposition testimony and exhibits impacted by the Court's ruling on an
     expedited basis. Defense counsel's attempt to quickly identify testimony impacted by the
26   Court's ruling included providing Plaintiff with Defendant's objection language to insert
     into the transcript wherever Plaintiff did not agree to strike certain testimony.  Defense
27   counsel received no counter-proposals and heard nothing further from Plaintiff's counsel
     until various excerpts appeared in Plaintiff's Exhibit O.  Defendants stand ready to meet
28   and confer regarding the implementation of the Court's ruling to deposition designations.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

Nelson Mullins Riley & Scarborough
L.L.P.
201 17ᵗʰ Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

1   documents in this MDL, including the complete Eclipse design files, regulatory

2   correspondence files, marketing, and post-market surveillance materials. Additionally,

3   Plaintiff's allegations regarding the absence of Recovery complication or migration-

4   related evidence outside the context of Recovery cephalad migration deaths are simply

5   inaccurate. Contrary to Plaintiff's claim that there are "no documents reviewing or

6   analyzing Recovery migrations independent of the deaths," (Pl.'s Mot. at 7), Bard has

7   produced voluminous such documents, including evidence regarding the Asch clinical

8   study and investigation into the reported cephalad migration from that trial (an issue that

9   had some prominence in the Booker trial), post-market Recovery migration resistance

10  assessments and testing, and the individual non-death Recovery cephalad migration

11  complaint files produced by Bard in this case (and which include their own root cause

12  analyses).   Similarly,   Bard   has   produced   comprehensive   investigations,   failure

13  investigation reports, and health hazard evaluations concerning Recovery Filter fracture

14  (fracture being the complication that Ms. Jones actually experienced), and G2 Filter

15  caudal migration. Accordingly, Plaintiff has substantial non-cephalad migration-related

16  death evidence to fairly try her case.[8] And, as this Court concluded, Plaintiff may rely on

17  her experts to attempt to prove her case without resorting to the unfairly prejudicial

18  evidence of Recovery cephalad migration-related deaths. (*See, e.g.*, Dkt. No. 10438, at

19  4.)

20                                    **CONCLUSION**

21          For the stated above, Bard respectfully requests that this Court deny Plaintiff's

22  Motion for Reconsideration.

23

24                                     s/*Richard B. North, Jr.*
                                       Richard B. North, Jr.
                                       Georgia Bar No. 545599
25                                     Matthew B. Lerner

26  _____

27  [8] Indeed, Plaintiff attached to her Motion for Reconsideration various documents
    concerning non-Recovery cephalad migration-related death issues that she feels support
28  her claims. (*See, e.g.*, Pl.'s Mot., Exs. D, E, and H.)

Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com


James R. Condo (#005867)
Amanda Sheridan (#005867)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
JCondo@swlaw.com
ASheridan@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and
Bard Peripheral Vascular, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of April, 2018, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

s/Richard B. North, Jr.
Richard B. North, Jr.

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

- 11 -