# EXHIBIT A



# CARDIOTHORACIC & VASCULAR SURGICAL ASSOCIATES, P.A.

## Introduction

Nathan R. Bates, M.D., F.A.C.S.

Sara E. Clark, M.D.

Charles D. Cousar, M.D., F.A.C.S.

Alfred D. Harding, Jr., M.D., F.A.C.S.

Samuel P. Jacks, M.D.

Vasant Jayasankar, M.D., F.A.C.S.

Fawad N. Khawaja, M.D., F.A.C.S.

Raymond Lee, M.D., F.A.C.S.

Erin M. Moore, M.D., F.A.C.S.

Mark A. Mostovych, M.D., F.A.C.S.

Derek D. Muehrcke, M.D., F.A.C.S.

Geoffrey L. Risley, M.D., F.A.C.S.

Robert J. Still, M.D., F.A.C.S.

Danny Vo, M.D., F.A.C.S.



1824 King Street, Suite 200
Jacksonville, FL 32204
(904) 384-3343
(904) 400-6671 Fax

3599 University Blvd. S., Suite 602
Jacksonville, FL 32216
(904) 398-8147
(904) 400-6674 Fax

836 Prudential Drive, Suite 1804
Jacksonville, Fl 32207
(904) 398-3888
(904) 400-6675 Fax

300 Health Park Blvd., Suite 5000
St. Augustine, FL 32086
(904) 494-2394
(904) 400-6676 Fax

1893 Kingsley Avenue, Suite A
Orange Park, FL 32073
(904) 592-4940
(904) 400-6673 Fax

I have been asked to review records and imaging studies and to provide a case report on Doris Jones, who was implanted with a Bard Eclipse filter that subsequently failed resulting in injuries to her pulmonary artery. The Eclipse filter implanted in Mrs. Jones exhibited the following failure modes: caudal migration, tilt, and fracture of the filter with embolization of the fragment to the pulmonary vasculature. The failed filter threatens to cause future damage to her pulmonary artery and other adjacent vital organs and structures. The Eclipse filter implanted in Mrs. Jones fractured, and the filter fragment embolized to her pulmonary artery. The fragment is not retrievable without a major and complex invasive procedure. Due to these failures, an irremovable filter fragment remains in her and cannot be removed percutaneously as intended, expected, and represented by Bard.

My expert opinions are based on: (1) my personal experience with IVC filters, (2) my background, education, training, and clinical experience, (3) my review and understanding of the IVC filter literature, (4) my review of Mrs. Jones's medical records and radiology, (5) recognized and accepted principles of medicine, (6) my review of depositions previously taken in the IVC litigation, and (7) my review of Bard's internal documents. This methodology allows me to testify regarding medical facts specific to this case and to render the opinions contained in this report.

## Training

I have practiced as a board certified cardiothoracic surgeon for the past 24 years. I attended a seven year college-medical school curriculum at Grinnell College and Rush Presbyterian St. Luke Medical Center in Chicago, Illinois. My formal specialty training took place at Harvard Medical School and Massachusetts General Hospital, where I completed my general surgery residency and training in adult cardiothoracic surgery. I was then accepted in and completed a congenital heart surgery fellowship at Boston Children's Hospital, also at Harvard.

caudal migration. Mrs. Jones's filter ultimately failed in the unacceptable ways known by Bard to occur in the Eclipse filter – i.e. caudal migration, tilt, irretrievability, perforation/penetration, and fracture – which the Meridian was intended to correct. In my opinion, Bard should never have put the Eclipse on the market given its knowledge of the "unacceptable" risk of caudal migration associated with the design of that device (and the nearly identical G2). If such action had been taken Mrs. Jones would not have received the Bard Eclipse filter.

Mrs. Jones suffered pain, surgical intervention, and a filter fragment retained in her pulmonary artery as a result of the failures of her filter, none of which would have been required if the IVC filter functioned properly. It is clear based on the foregoing that Mrs. Jones's Eclipse filter needed to be removed. It was reasonable to attempt endovascular removal following discovery of her filter fracture. She now remains at high risk for PE. She is also at risk for her Eclipse filter fragment to perforate her pulmonary artery, clot her pulmonary artery without anticoagulation (which she is not a candidate for due to GI bleeding issues), and infection. Open removal of the IVC filter fragment operation would be at a significant risk to Mrs. Jones – particularly given her co-morbidities. Mrs. Jones also currently requires medical monitoring of her filter fragment due to the potential complications discussed in this report, which should include at least a yearly CT scan of the chest and examination by a physician.

Due to the filter's inadequate design, a strut fracture occurred. Specifically, the device's lack of strength and stability caused it to migrate, tilt, and fracture. In reaching this opinion, I reviewed Mrs. Jones's medical records and radiology and performed a differential diagnosis; there is no other reasonable cause for the failures of her filter.

Based upon the information available to Bard at the time the filter was implanted in Mrs. Jones, it was clear that the risks of the Bard Eclipse filter exceeded its benefits and that this filter did not perform in a manner reasonably expected by physicians and patients, nor in the manner represented by Bard.

The purpose of this IVC filter was to prevent death and injury by trapping large clots from moving to the heart or lungs and for the device itself to remain stable and centered. In using Bard's Eclipse filter, physicians reasonably expected that a properly placed filter would not migrate, tilt, perforate the vena cava and adjacent organs/structures, or fracture. In my opinion, because this filter failed in the manner previously described, Mrs. Jones was and continues to be exposed to risks that exceeded any benefits allegedly afforded by this particular filter; additionally, no physician or patient would reasonably expect this constellation of failure modes to

occur.

I am aware of Mrs. Jones's co-morbidities, medical history, and preexisting problems, and these were taken into consideration in rendering my opinions.

I hold the opinions set forth herein to a reasonable degree of medical and scientific certainty, and expressly reserve the right to alter my opinions as needed if additional information becomes available via ongoing discovery.

*Derek Muehrcke*      June 6th, 2017

Derek Muehrcke, M.D., FACS
300 Health Park Blvd, Suite 5000
Saint Augustine, Florida 32086