**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, <br> _____ <br> Doris Jones, an individual, <br>   Plaintiff, <br> v. <br> C. R. Bard, Inc., a New Jersey corporation; and Bard Peripheral Vascular, Inc., an Arizona corporation, <br>   Defendants. | No. MDL 15-02641-PHX-DGC <br><br> No. CV-16-00782-PHX-DGC <br><br> **ORDER** |

Plaintiff Doris Jones has filed a motion for reconsideration of the Court's order excluding evidence of deaths caused from cephalad migration of the Recovery filter under Rule 403. Doc. 10873. Defendants have filed a response. Doc. 10899. The Court will deny the motion in part as set forth below.

**I.  Background.**

The Court held a hearing with the parties on April 13, 2018, to discuss matters decided for the Booker trial that the parties wish to have reconsidered for the Jones trial. Doc. 10805. The Court took two matters under advisement: whether evidence of the design, testing, and complications of the Recovery filter should be admitted in the Jones trial, and whether evidence of deaths caused by cephalad migration of the Recovery filter

should be admitted. These matters were the subject of briefing before the hearing and argument during the hearing. *See* Docs. 10677, 10707.

Several days later, the Court issued an order finding that evidence of the design, testing, and complications of the Recovery filter is relevant to Ms. Jones' case and should not be excluded under Rule 403. Doc. 10819 at 2-3. The Court further found, however, that evidence of deaths caused by Recovery filters migrating to a patient's heart has only marginal relevance in Ms. Jones' case. *Id.* at 3-5. The Court held that the minimal probative value of the evidence is substantially outweighed by the danger of unfair prejudice because the death evidence may prompt a jury decision based on emotion. *Id.* at 5-6.

**II. Discussion.**

Plaintiff argues that the Court's decision is based on a false premise because cephalad migration continued to be associated with deaths in later devices, including the Eclipse. Doc. 10874 at 4-5. Plaintiff further argues that cephalad migration is relevant and substantially similar to her claims. *Id.* at 6-7. Finally, Plaintiff contends that the death evidence cannot reasonably be extracted from the overall complication evidence, and its exclusion would unreasonably curtail her proof in this case. *Id.* at 7-10.

Plaintiff's arguments and supporting evidence could have been presented to the Court in earlier briefing and argument. As a result, Plaintiff has not identified a legitimate basis for reconsideration. *See* LRCiv 7.2(g)(1); *Nicole-Pickett v. Wells Fargo Bank, N.A.*, No. CV-16-03262-PHX-DGC, 2016 WL 7187988, at *1 (D. Ariz. Dec. 12, 2016); *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262-63 (9th Cir. 1993). Because of the importance of this issue, however, the Court will address each of Plaintiff's arguments.

**A. The Evidentiary Basis for the Court's Ruling.**

At the April 13 hearing, counsel for Plaintiff agreed that there has been very little cephalad migration after the Recovery filter, in part because the G2 filter was given a wider design to correct the cephalad migration problem. Doc. 10874-1 at 4. Counsel was

not able to identify any instance of cephalad migration causing death in the G2 or later filters. *Id.* at 3-4. Plaintiff now claims that a review of thousands of complaints in Bard's Trackwise database shows that cephalad migration was not eliminated by later-generation filters, and that deaths caused by cephalad migration continued after the Recovery. Doc. 10874 at 4-6. A careful review of Plaintiff's evidence shows otherwise.

### 1. Evidence of cephalad migration deaths.

Plaintiff claims that two cases of cephalad migration by Eclipse filters resulted in patient deaths. Doc. 10874 at 5 (citing Complaint Nos. 313635, 354264); Doc. 10874-2 at 2-3, 33-99. Although both cases involved cephalad migration of an Eclipse filter and a patient's death, the evidence presented by Plaintiff does not show that the migrations caused either of the deaths.

In the first incident, records provided by Plaintiff show that the Eclipse filter did not migrate to the patient's heart; it migrated above the renal veins due to a large clot burden. Doc. 10874-2 at 34. The patient later died due to pulmonary embolism, but the death occurred after the Eclipse filter had been removed and replaced with a competitor's device. According to the records provided by Plaintiff, the treating physician reported that "the Bard filter did its job." *Id.*

In the second incident, the Eclipse filter migrated "within proximity to the right atrium" of the heart due to a "clot burden within the filter extending down into the patient's legs." *Id.* at 73-76. The patient later died, possibly due to pulmonary embolism. *Id.* The record provided by Plaintiff suggests that the cause of death was never determined because the coroner chose not to do an autopsy, and also states that the physician "did not feel that the filter was related to the patient's death." *Id.*

These are the only records provided by Plaintiff to support her claim that G2, G2X, or Eclipse filters caused death by cephalad migration. They do not support the claim. Thus, one of the fundamental grounds for the Court's previous order – that cephalad migration deaths stopped after the Recovery filter – remains intact.

### 2. Evidence of other cephalad migrations.

Plaintiff cites eight other complaint files purportedly showing cephalad migration by the G2-line of filters. Docs. 10874 at 3, 10874-2 at 2-4. One involved a G2 filter (No. 260851), two involved Eclipse filters (Nos. 291446 and 383261), and five involved G2X filters (Nos. 239963, 248122, 250927, 273135, and 283282). Doc. 10874-2 at 2-4. The last two G2X cases did not involve cephalad migration of a properly deployed filter, but instead resulted from faulty deployment. *Id.* at 4 (Nos. 273135 and 283282).[1]

Thus, out of approximately 180,000 G2 and G2X filters sold (according to Defendants (Doc. 10899 at 3)), Plaintiff provides evidence of cephalad migration by one G2 and three G2X filters. And out of approximately 66,000 Eclipse filters sold (again, according to Defendants (*id.*)), Plaintiff provides evidence of four cephalad migrations. Another premise of the Court's previous order thus remains intact – cephalad migrations largely ceased due to changes made to the G2-line of filters.

### 3. Plaintiff's other arguments.

Plaintiff argues that ongoing cephalad migration played a role in the contemplated redesign of the Eclipse shortly after it was launched. Doc. 10874 at 4-5. But the documents relied on do not support this assertion. The memo from Bard employee Brett Baird largely addresses whether the introduction of electropolishing was well received by customers, and says nothing about cephalad migration. Doc. 10874-4. The Idea POA Eclipse Anchor Filter document contemplates the addition of anchor hooks to the Eclipse due to the "increased frequency of migration in the *caudal* direction with the G2 and G2X as compared to the Recovery." Doc. 10874-5 at 2 (emphasis added). Although the document noted generally the need for a long-term filter that "[s]tays in the deployed location without migrating cranially or caudally," the addition of caudal anchors was meant to "[r]educe caudal migrations [and] tilt, fracture, and penetration secondary to caudal migrations." *Id.* at 2-3. These documents simply do not show that cephalad

---

[1] Plaintiff cites one additional complaint of cephalad migration, but it is of a Recovery filter, not a G2, G2X, or Eclipse. *Id.* (No. 257249).

- 4 -

migration continued to be a significant problem after the Recovery.

After considering the evidence cited in Plaintiff's motion for reconsideration, the Court continues to conclude that Recovery filter cephalad migration deaths are only marginally relevant in this Eclipse filter case. The Court also continues to find that the limited relevancy of this evidence is substantially outweighed by the danger of unfair prejudice, and that the death evidence is therefore inadmissible under Rule 403.

### B. Substantial Similarity.

In its previous order, the Court cited Georgia case law holding that "evidence of other incidents involving the product is admissible, and relevant to the issue[] of . . . punitive damages, provided there is a showing of substantial similarity." Doc. 10819 at 4 (quoting *Gen. Motors Corp. v. Moseley*, 447 S.E.2d 302, 306 (Ga. Ct. App. 1994)). Plaintiff's Eclipse filter did not migrate in a cephalad direction to her heart or any other organ. Rather, the filter fractured and one of its struts travelled to her lung. Because deaths by cephalad migration of Recovery filters are not substantially similar to Plaintiff's alleged injury from her Eclipse filter, the Court continues to conclude that they are not substantially similar for purposes of punitive damages.

Plaintiff argues in this section of her motion that the Recovery deaths are a "direct cause" of the design change to the G2, asserting that Defendants' efforts to address cephalad migration resulted in a poorly-tested widening of the G2 filter that in turn led to new complications that adversely affected Plaintiff. Doc. 10874-2 at 6. Even if this causal chain were to be accepted, it represents the marginal relevancy the Court recognized in its original order – limited relevancy the Court finds to be substantially outweighed by the danger of unfair prejudice.

### C. Impact of Excluding Cephalad Migration Death Evidence.

Plaintiff asserts for the first time in her motion for reconsideration that cephalad migration death evidence cannot reasonably be extracted from the overall Recovery-filter complication evidence, and that eliminating the death evidence would hamstring her ability to prove that the Eclipse lacked the necessary design changes to make a safe and

non-defective filter. Doc. 10874 at 7-10. Plaintiff claims that there is no testimony regarding Defendants' cephalad migration investigation or root cause analysis that is independent of the deaths. *Id.* at 9. Defendants counter that Plaintiff's concerns are overblown, that the parties can work together to review and edit the death evidence as needed, and that Plaintiff has substantial non-death evidence at her disposal. Doc. 10899 at 9.

On this record, the Court cannot determine whether exclusion of all cephalad migration death references would seriously hinder Plaintiff's ability to prove her claims. The Court will address this issue in more detail at the final pretrial conference on **May 4, 2018**. If the Court finds that removing all references to cephalad migration deaths will seriously hinder Plaintiff's presentation of her claims, it will consider allowing some references. The purpose of allowing these references, however, will be to make key evidence understandable, not to allow Plaintiff to rely on the death evidence to support her claims. The purpose of considering this issue on May 4 is *not* to reconsider whether Plaintiff may make the cephalad migration deaths a component of her case – the Court's Rule 403 ruling stands. The purpose will be to consider whether some references to death must remain in the evidence in order for Plaintiff to effectively present evidence of Recovery filter complications, testing, and design.

At the final pretrial conference, Plaintiff may present up to **six key trial exhibits and three depositions** to illustrate how death references cannot be removed without seriously impairing her ability to prove her case. Plaintiff shall provide the selected evidence to Defendants by the close of business on **May 1, 2018**, and the parties shall confer in good faith before the final pretrial conference to identify areas of disagreement. The Court will rule on the admissibility of the exhibits and deposition testimony and, as necessary, draw lines for the parties to apply to other evidence.

**IT IS ORDERED:**

1. Plaintiff Doris Jones' motion for reconsideration (Doc. 10873) is **denied in part** as set forth above.

2. In light of the issue to be addressed at the final pretrial conference, the April 30 deadline for submitting deposition designations that include cephalad migration is extended to **May 7, 2018**.

Dated this 27th day of April, 2018.

*David G. Campbell*
United States District Judge