1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gallagher & Kennedy, P.A.
2575 E East Camelback Road
Phoenix, Arizona  85016-9225
(602) 530-8000

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| In Re Bard IVC Filters Products Liability Litigation | No. CV-MD -15-02641 PHX/PCT-DGC |
|---|---|
| | **PROPOSED FINAL PRETRIAL ORDER** |

The following is the joint Proposed Final Pretrial Order to be considered at the Final Pretrial Conference set for May 4, 2018, at 10:00 a.m.

## A.    TRIAL COUNSEL FOR THE PARTIES

Include mailing addresses, office phone numbers, fax numbers, and email addresses.

Plaintiff(s):

Mark S. O'Connor
Paul L. Stoller
Shannon Clark
Lincoln Combs
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone: 602.530.8000
Facsimile: 603.530.8500
mark.oconnor@gknet.com
paul.stoller@gknet.com
slc@gknet.com
lincoln.combs@gknet.com


Julia Reed Zaic, Esq.
Laura Smith, Esq.
HEAVISIDE REED ZAIC
312 Broadway, Suite 203
Laguna Beach, California 92660
Telephone: 949.715.5228
julia@hrzlaw.com
laura@hrzlaw.com

Ramon Rossi Lopez
Josh Mankoff
LOPEZ MCHUGH LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660
Telephone: 949.812.5771
Facsimile: 949.737.1504
rlopez@lopezmchugh.com

1
2

Defendant(s):

James R. Condo (#005867)          Richard B. North, Jr.
Amanda Sheridan (#027360)        (admitted *pro hac* vice);
SNELL & WILMER L.L.P.             Georgia Bar No. 545599
One Arizona Center                Matthew B. Lerner
400 E. Van Buren, Suite 1900      (admitted *pro hac vice*)
Phoenix, AZ 85004-2204 Telephone: Georgia Bar No. 446986
(602) 382-6000 Fax:               Elizabeth C. Helm
jcondo@swlaw.com                  (admitted *pro hac vice*)
                                  Georgia Bar No. 289930
James Rogers                      NELSON MULLINS RILEY &
 (admitted *pro hac* vice);       SCARBOROUGH LLP
 South Carolina Bar No. 545599    Atlantic Station
 Nelson Mullins Riley &           201 17th Street, NW, Suite 1700
 Scarborough LLP                  Atlanta, GA 30363
 1320 Main Street                 Telephone: (404) 322-6000
 17th Floor                       richard.north@nelsonmullins.com
 Columbia, SC 29201               matthew.lerner@nelsonmullins.com
 Telephone:303-799-2000           kate.helm@nelsonmullins.com
 Jim.rogers@nelsonmullins.com

**B.**     **STATEMENT OF JURISDICTION**

1.     Jurisdiction is appropriate in this Court as the parties to this action are citizens of different states and Plaintiff alleges that she has suffered damages in an amount exceeding the minimum jurisdictional limits of this Court, 28 U.S.C. § 1332.

Plaintiff[1] is a citizen of the state of Georgia.  Defendant C.R. Bard, Inc. is a citizen of the state of Delaware and is a corporation duly organized and existing under the laws of the state of Delaware, with its principal place in New Jersey. Defendant Bard Peripheral Vascular, Inc. is a citizen of the state of Arizona, is a wholly owned subsidiary corporation of Defendant Bard, and is duly organized and existing under the laws of the state of Arizona with its principal place of business in Arizona.

2.     Jurisdiction is not disputed.

**C.**     **STIPULATIONS AND UNCONTESTED FACTS AND LAW**

1.     The following material facts are admitted by the parties and require no proof:

---

[1] Plaintiff's spouse, Alfred Jones, was dismissed by stipulation.  *See* Order granting Stipulation of Dismissal, April 13, 2018 (Doc. 10732).

2

1        a.      The Defendants in this case are C. R. Bard, Inc. and Bard Peripheral

2                Vascular, Inc. ("BPV").  BPV is the wholly-owned subsidiary of C.

3                R. Bard, Inc., the parent company.  Throughout this case, including in

4                this pretrial order, the jury instructions, and the verdict form, C.R.

5                Bard, Inc. and BPV will be referred to collectively as "Bard" or

6                "Defendants."

7        b.      The product that is the subject of this lawsuit is a Bard Eclipse® IVC

8                Filter ("Eclipse® filter") that was designed, manufactured, marketed,

9                and sold by Bard.

10       c.      The Eclipse® filter is conical in shape and consists of a main shaft to

11               which twelve struts (six "arms" and six "legs") are attached.

12       d.      The Eclipse® filter is constructed of a nickel-titanium alloy called

13               Nitinol.

14       e.      The Eclipse® filter is a medical device that is implanted in the

15               inferior vena cava ("IVC"), the largest vein in the human body.

16       f.      The United States Food and Drug Administration ("FDA") cleared

17               the Eclipse® filter for commercial availability through the 510(k)

18               process outlined in the Food, Drug and Cosmetic Act.

19       g.      The Eclipse® Filter was cleared for commercial availability in the

20               United States for use in patients as a permanent filter with an optional

21               retrievable procedure on January 14, 2010.

22       h.      Bard marketed the Eclipse® filter for both permanent and optional

23               placement.

24       i.      On August 24, 2010, a vascular surgeon, Dr. Anthony James Avino,

25               implanted an Eclipse® IVC filter in Mrs. Jones' IVC at Memorial

26               Health University Medical Center ("MUMC") in Savannah, Georgia.

27       j.      Mrs. Jones was properly indicated for placement of the Eclipse®

28               filter on August 24, 2010.

1        k.     Dr. Avino's placement of the Eclipse filter in Mrs. Jones was

2               appropriate and met the applicable standard of care for doctors in his

3               position.

4        l.      Dr. Avino did not cause, contribute to, and was not a factor in

5               producing any of the injuries claimed by Mrs. Jones in this lawsuit.

6        m.    Subsequent to implantation and after August 14, 2013, Mrs. Jones'

7               Eclipse® filter fractured and a strut embolized in her right pulmonary

8               artery.

9        n.     On April 22, 2015, a chest x-ray and CT angiogram revealed that

10              Mrs. Jones' Eclipse filter had fractured and the fractured strut had

11              embolized to her right pulmonary artery.

12        o.     On April 23, 2015, Dr. Kristin Nelson removed Mrs. Jones' Eclipse®

13              filter through a percutaneous procedure.

14        p.     Dr. Nelson's actions in retrieving the Eclipse filter from Mrs. Jones

15              IVC were appropriate and met the applicable standard of care for

16              doctors in her position.

17        q.     Dr. Nelson's decision not to attempt to retrieve the Eclipse filter

18              fragment from Mrs. Jones pulmonary artery was appropriate and met

19              the applicable standard of care for doctors in her position.

20        r.      Dr. Nelson did not cause, contribute to, and was not a factor in

21              producing any of the injuries claimed by Mrs. Jones in this lawsuit.

22        s.      The broken strut of the Eclipse filter remains in Mrs. Jones' right

23              pulmonary artery.

24        t.      Ms. Jones has not sought or received any medical care since March

25              16, 2016.

26    2.     The following material facts, although not admitted, will not be contested at

27  trial by evidence to the contrary:

28

1        a.    Plaintiff is not seeking to recover past or future lost wages as part of

2        her damages.

3    3.    The following issues of law are uncontested and stipulated to by the parties:

4        a.    Plaintiff's claims and Bard's defenses are governed by Georgia

5        substantive law.

6        b.    The law set forth in any jury instructions stipulated to by the Parties.

7  **D.**    **CONTESTED ISSUES OF FACT AND LAW**

8    1.    <u>Disputed issues of fact</u>:

9        a.    **Strict Liability - Design Defect:** Whether the Eclipse® filter

10        implanted in Plaintiff had a design defect.

11        <u>Plaintiff's Contention</u>:  Mrs. Jones contends that the Eclipse® filter

12        implanted in her was defectively designed, the defect existed at the

13        time the Eclipse® filter left Bard's control, and the design defect was

14        a proximate cause of Mrs. Jones' damages.  Mrs. Jones further

15        contends that the risk of harm in the design of the Eclipse® filter

16        implanted in her outweighs the utility of that particular design, and

17        that Bard exposed Mrs. Jones to a greater risk of danger than Bard

18        should have in using the design of the implanted filter rendering the

19        filter defective.  Mrs. Jones further contends that, due to the defective

20        design, the Eclipse® filter implanted in her IVC tilted, migrated, and

21        fractured after it was properly implanted; that one of the fractured

22        struts of the Eclipse® filter is not able to be removed and remains in

23        her pulmonary artery; and that the defective design of the Eclipse®

24        filter implanted in Mrs. Jones caused her injury and damage.  Lastly,

25        there were numerous safer, reasonable alternative IVC filter designs

26        available to Defendants.

27        <u>Defense Contention</u>: Bard denies that the Eclipse® filter implanted in

28        Plaintiff was defective and unreasonably dangerous. Instead, the

1      Eclipse® filter was both merchantable and reasonably suited to the

2      use intended. *See* O.C.G.A. § 51–1–11(b)(1). The utility and benefits

3      of the Eclipse® filter design outweigh the inherent risk of harm in the

4      product design. Further, Bard exercised reasonable care in choosing

5      the design for the Eclipse® filter after consideration of all relevant

6      factors, including Bard's compliance with federal regulatory

7      standards encompassed in the FDA 510(k) clearance process, and

8      industry wide standards. Lastly, there was no feasible alternative

9      design at the time Bard designed the Eclipse® filter that would have

10      been safer and provided the same utility for optional retrieval.

11      b.    **Strict Liability - Design Defect - Proximate Cause**: Whether a

12      design defect of the Eclipse® filter was a proximate cause of

13      Plaintiff's injuries and damages.

14      Plaintiff's Contention: Mrs. Jones contends that the defective design

15      of her Eclipse® filter caused or contributed to cause her injuries.

16      Defendants' Contention: Defendants denies that any alleged design

17      defect in the Eclipse® filter caused or contributed to Plaintiff's

18      injuries.

19      c.    **Strict Liability - Failure to Warn**: Whether Bard failed to

20      adequately warn of the dangers arising from the use of the Eclipse®

21      filter about which it knew or reasonably should have known.

22      Plaintiff's Contention: Mrs. Jones contends that Bard's warnings

23      were inadequate, that those warnings were inadequate when the

24      Eclipse® filter left Bard's control, and that the inadequate warning

25      was a proximate cause of her injuries.  Mrs. Jones contends that Bard

26      failed to provide adequate warnings of the Eclipse® filter's potential

27      dangers and that Bard failed to adequately communicate adequate

28      warnings to Mrs. Jones' physicians.  Mrs. Jones contends that Bard

6

1   failed to provide an adequate warning of the Eclipse® filter's

2   unacceptable safety risks or failed to adequately communicate

3   warnings to Mrs. Jones' physicians prior to and at the time of

4   implantation and thereafter.  Mrs. Jones further contends that the

5   Eclipse® filter implanted in her IVC tilted, migrated, and fractured

6   after it was properly implanted; that one of the struts embolized to

7   her right pulmonary artery and is not able to be removed and

8   remains; that no reasonable doctor would have implanted the

9   Eclipse® filter had Bard given adequate warnings; that Mrs. Jones'

10  doctors would not have implanted the Eclipse® filter in her had they

11  been adequately warned about the Eclipse® filter's unacceptable

12  safety risks and/or would have intervened after implantation of the

13  filter; and, Bard's failure to warn about the safety risks of the

14  Eclipse® filter and/or failure to adequately communicate those risks

15  to her doctors resulted in injury and damage to Mrs. Jones.  In

16  addition, Mrs. Jones contends that Bard's duty to warn is a

17  continuing one, including the duty to warn both her and her

18  physicians, and the duty to warn continued after the date of the first

19  sale of the Eclipse® filter and after implantation of the Eclipse®

20  filter in Mrs. Jones.  Lastly, Mrs. Jones contends Bard failed to meet

21  its continuing duty to provide adequate warnings and/or adequately

22  communicate those warnings to Mrs. Jones and her physicians.

23  Defendants' Contention: Defendants contend that their duty was to

24  provide a warning to Dr. Avino, the implanting physician. The

25  warning provided to Dr. Avino was adequate. The warnings

26  contained in the Eclipse® filter IFU were legally adequate because

27  they included the precise risks that Plaintiff experienced here.

28  Further, any failure to warn Dr. Avino was not the proximate cause

7

of Plaintiff's injuries because Dr. Avino was aware of these risks when he implanted the Eclipse® filter in Plaintiff, and there is insufficient evidence that he would have changed his prescribing decision had Bard provided the additional warnings that Plaintiff contends he should have been given (i.e., that risks associated with Bard's IVC filters were higher than those of competitor devices or the SNF).

    d.    **Strict Liability – Failure to Warn – Proximate Cause**: Whether any alleged defect in the warning was a proximate cause of Plaintiff's alleged injuries and damages.

Plaintiff's Contention: Mrs. Jones contends that Bard's failure to adequately warn of the dangers arising from its Eclipse® filter of which Bard knew or reasonably should have known, and/or Bard's failure to adequately communicate those dangers to Plaintiff's doctors, caused or contributed to cause her injuries.  Additionally, Mrs. Jones contends the Dr. Avino read and was aware of the warnings in the IFU and that Defendants' duty to warn extends beyond the IFU and includes other means of communication through which it failed to provide adequate warnings, that evidence will be established at trial.

Defendants' Contention: Bard denies that any alleged defect in the Eclipse® filter or the warning provided caused or contributed to Plaintiff's injuries. There is no evidence that Dr. Avino read the IFU for the filter at issue. Further any failure to warn Dr. Avino was not the proximate cause of Plaintiff's injuries because Dr. Avino was aware of these risks when he implanted the Eclipse® filter in Plaintiff, and there is insufficient evidence that he would have changed his prescribing decision had Bard provided the additional

1    warnings that Plaintiff contends he should have been given (i.e., that

2    risks associated with Bard's IVC filters were higher than those of

3    competitor devices or the SNF).

4    e.    **Negligent Design** – Whether Bard was negligent in the design and

5    development of the Eclipse® filter.

6    Plaintiff's Contention: Mrs. Jones contends that Bard owed her a duty

7    of reasonable care in the design, development, and testing of the

8    Eclipse® filter, including its predicate devices (the Recovery, G2, G2

9    Express/G2X filters), Bard breached that duty of care, Bard's breach

10   was a proximate cause of her injuries, and she suffered damages.

11   Mrs. Jones contends that Bard failed to use that degree of care which

12   is used by ordinary careful persons under the same or similar

13   circumstances in the design and/or testing of the Eclipse® filter that

14   was implanted in her, as well as in warning of the dangers associated

15   with that filter and/or in communicating adequate warnings regarding

16   that filter.  Mrs. Jones further contends that, due to the defective

17   design, development, and testing, the Eclipse® filter implanted in her

18   IVC tilted, migrated, and fractured after it was properly implanted;

19   that a fractured strut of the Eclipse® filter is not able to be removed

20   and remains in her pulmonary artery; and that Defendants'

21   negligence in the design, development, and/or testing of its filter was

22   a cause of her injury and damage.  There were numerous safer,

23   reasonable alternative IVC filter designs available to Defendants.

24   Lastly, improper testing of the filter is evidence of Bard's failure to

25   act reasonably and use the proper degree of care, as well as its breach

26   of the duty of care.

27   Defendants' Contention: Defendants deny they were negligent in the

28   design of the filter or the warning provided. Under Georgia law, a

1   jury is to consider the same risk benefit factors for design defect in

2   determining whether there was negligence in the design. Bard denies

3   that the Eclipse® filter implanted in Plaintiff was defective and

4   unreasonably dangerous. The utility and benefits of the Eclipse®

5   filter design outweigh the inherent risk of harm in the product design.

6   Further, Bard exercised reasonable care in choosing the design for the

7   Eclipse® filter after consideration of all relevant factors, including

8   Bard's compliance with federal regulatory standards encompassed in

9   the 510(k) clearance process, and industry wide standards. Lastly,

10  there was no feasible alternative design at the time Bard designed the

11  Eclipse® filter that would have been safer and provided the same

12  utility for optional retrieval. There is no claim for "negligent testing"

13  alleged in Plaintiff's Complaint or recognized under Georgia law.

14          f.      **Negligent Design – Causation**: Whether a design defect of the

15                  Eclipse® filter was a proximate cause of Plaintiff's injuries and

16                  damages.

17                  Plaintiff's Contention: Mrs. Jones contends that Bard's negligence

18                  caused or contributed to cause her injuries and damages.

19                  Defendants' Contention: Bard denies that any alleged design defect

20                  in the Eclipse® filter caused or contributed to Plaintiff's injuries.

21          g.      **Negligent Failure to Warn**: Whether Bard was negligent in the

22                  warning provided to Mrs. Jones' doctors about the risks of the

23                  Eclipse® filter.

24                  Plaintiff's Contention: Mrs. Jones contends that Bard owed her a duty

25                  of reasonable care to provide adequate and appropriate warnings as to

26                  the complications and dangers of the Eclipse® filter, Bard breached

27                  that duty of care, Bard's breach was a proximate cause of her

28                  injuries, and she suffered damages.  Mrs. Jones contends that Bard

1    failed to use that degree of care which is used by ordinary careful

2    persons under the same or similar circumstances in providing

3    adequate warnings and in communicating adequate warnings

4    regarding the Eclipse® filter.  Mrs. Jones further contends that the

5    Eclipse® filter implanted in her IVC tilted, migrated, and fractured

6    after it was properly implanted; that a fractured strut of the Eclipse®

7    filter is not able to be removed and remains in her pulmonary artery;

8    that Mrs. Jones' doctors would not have implanted the Eclipse® filter

9    in her had they been adequately warned about the Eclipse® filter's

10    safety risks and/or would have intervened after implantation of the

11    filter; and that Defendants' negligence in the design and/or testing of

12    its filter, and negligent failure to adequately warn of the dangers

13    associated with that filter and/or communicate that warning to her

14    doctors, caused her injury and damage.  Additionally, Mrs. Jones

15    contends Bard failed to meet its continuing duty to provide adequate

16    warnings and/or adequately communicate those warnings to Mrs.

17    Jones and her doctors.  Lastly, Mrs. Jones contends Dr. Avino read

18    and was aware of the warnings in the IFU and that Defendants' duty

19    to warn extends beyond the IFU and includes other means of

20    communication through which it failed to provide adequate warnings,

21    that evidence will be established at trial.

22    <u>Defendants' Contention</u>: Bard denies that it was negligent. Bard

23    acted reasonably in all manners concerning the warnings of the

24    Eclipse® filter. The warnings contained in the Eclipse® filter IFU

25    were <u>legally</u> adequate because they included the precise risks that

26    Plaintiff experienced here: filter fracture, movement, migration,

27    embolization, and perforation. Dr. Avino, as well as the entire

28    medical community, was aware of these risks associated with all IVC

11

1    filters when he implanted the Eclipse® filter in Plaintiff. Bard was

2    not required to warn of complication rates of the Eclipse® filter

3    compared to other products on the market, and to do so would not be

4    feasible.

5    h.    **Negligent Failure to Warn – Causation**: Whether any alleged

6          negligence in providing warnings regarding the Eclipse® filter was a

7          proximate cause of Plaintiff's alleged injuries and damages.

8          Plaintiff's Contention: Mrs. Jones contends that Bard's negligence

9          caused or contributed to cause her injuries and damages.

10         Additionally, Mrs. Jones contends Dr. Avino read and was aware of

11         the warnings in the IFU and that Defendants' duty to warn extends

12         beyond the IFU and includes other means of communication through

13         which it failed to provide adequate warnings, that evidence will be

14         established at trial.

15         Defendants' Contention: Bard contends that it provided legally

16         adequate warnings concerning the Eclipse® filter, particularly in

17         light of the state of the art during the relevant time period. The

18         warnings contained in the Eclipse® filter IFU were adequate because

19         they included the precise risks that Plaintiff experienced here: filter

20         fracture, movement, migration, embolization, and perforation. Dr.

21         Avino was aware of these risks associated with all IVC filters when

22         he implanted the Eclipse® filter in Plaintiff. Bard was not required to

23         warn of complication rates of the Eclipse® filter compared to other

24         products on the market, and to do so would not be feasible.

25    i.    **Compensatory Damages** – Whether Plaintiff is entitled to damages

26          and, if so, the amount of the damages.

27          Plaintiff's Contention: Mrs. Jones contends she sustained injuries and

28          damages and is entitled to a damage award for the following: medical

expenses, such as hospital, doctor, and medicine bills both in the past and in the future; mental and physical pain and suffering in the past, present, and future; and, impairment of bodily or physical faculties in the past, present, and future.

Defendants' Contention:    Bard contends that no doctor has specifically attributed any of the symptoms that Plaintiff has allegedly experienced to the strut that remains embolized in her pulmonary artery.

j.    **Punitive Damages** - Whether Plaintiff is entitled to an award of punitive damages and, if so, the amount of the award.

Plaintiff's Contention: Mrs. Jones contends that there is clear and convincing evidence of Bard's willful misconduct, malice, fraud, wantonness, oppression, and/or that its entire want of care raises the presumption of a conscious indifference to the consequences of its actions, which entitles her to an award of punitive damages.  She is entitled to an award of punitive damages not as compensation, but in a proper amount necessary to punish, penalize or deter Defendants and others in light of the circumstances of the case.

Bard's argument with respect to O.C.G.A. § 51-12-5.1(e) is meritless.  First, although the Eclipse® has the same relevant design characteristics as the G2 IVC filter and Bard's G2 Express and G2X IVC filters, Bard made changes to the filter in an effort to market and sell it as a separate device; in doing so, it obtained separate FDA approval and then represented to the FDA that this was a new and different filter.  It is legally a separate device because Bard marketed and sold it as a separate device; it is also not identical to the G2.  Second, part of Plaintiff's punitive damage claim in this case is the very deception that Bard created in the name change and marketing

1    of the Eclipse to deceive the medical community and to avoid the

2    "baggage" of the prior devices, including the G2.  Thus, it is

3    precisely that Bard misled the market by offering a "new" device that

4    gives rise to punitive damages in this case.  Moreover, based on the

5    differences between the Eclipse and the G2, Bard has argued in this

6    case that evidence this Court found relevant and admissible as to the

7    G2 in the *Booker* case is irrelevant and/or inadmissible in this case.

8    Because the Court granted Bard's motion, Bard is judicially estopped

9    from contending the Eclipse is the same device as the G2.

10   Further, the limitation of punitive damage awards under O.C.G.A. §

11   51-12-5.1(e)(1) does not apply to awards of punitive damages

12   recovered in this Court.

13   Finally, even if Bard's analysis were accepted by the Court, the

14   *Booker* verdict is not final given Bard's post-trial motions and

15   presumably appeal.  In the absence of a final award, O.C.G.A. § 51-

16   12-5.1(e)(1) cannot be used to bar punitive damages claims in post-

17   *Booker* cases.

18   Defendants' Contention: Bard denies that Plaintiff is entitled to

19   punitive damages. Punitive damages are not warranted because there

20   is no evidence Bard acted with the requisite state of mind in the

21   design of the Eclipse® filter or in the warnings provided, and Bard

22   otherwise complied with all applicable FDA regulations, which tends

23   to show that there is no clear and convincing evidence of the requisite

24   state of mind necessary to support an award of punitive damages.

25   Bard also contends that pursuant to O.C.G.A. § 51-12-5.1(e), the jury's

26   award of punitive damages in the *Booker* case bars an award of

27   punitive damages in this matter.

28

14

O.C.G.A. § 51-12-5.1(e)(1) states that "[i]n a tort case in which the cause of action arises from product liability, there shall be no limitation regarding the amount which may be awarded as punitive damages. Only one award of punitive damages may be recovered in a court in this state from a defendant for any act or omission if the cause of action arises from product liability, regardless of the number of causes of action which may arise from such act or omission."

In various pre-trial filings, Plaintiff has made it clear that she will argue to the jury that her Eclipse filter and the G2 filter at issue in the *Booker* case have the same design, that the Eclipse filter suffered from the same design and warning defects as the G2 Filter, and that the "core design problems" with both filters derived from the problematic design of the Recovery filter. *See* doc. 10707. Accordingly, Bard anticipates that Plaintiff will attempt to ask a jury for a ***second*** award of punitive damages from Bard for the ***same acts*** or omissions for which the *Booker* jury already awarded punitive damages. Under this scenario, Georgia law prohibits an award of punitive damages in the *Jones* case, and Bard should be entitled to judgment in its favor as a matter of law and dismissal of Plaintiff's punitive damages claim.

2.      Disputed issues of law:

      a.      Plaintiff's proposed issues of law

The following are issues of law proposed by Plaintiff to which Bard does not agree:

           i.      Strict Liability (General Aspects)

To recover, the person injured by an allegedly defective product must establish that (a) the product was defective, (b) the defect existed at the time the product left the manufacturer's control, and (c) the defect in the product was a proximate cause of the person's injury. *See* O.C.G.A § 51-1-11; *Banks v. ICI Americas, Inc.*, 450 S.E.2d 671 (Ga. 1994); *SK Hand Tool Corp. v. Lowman*, 479 S.E.2d 103 (1996) (en banc); Council of

1  Superior Court Judges' Suggested Pattern Civil Jury Instructions, 62.610.

2      The manufacturer of a new product that is defective at the time it leaves the hands

3  of the manufacturer and which proximately causes injury to a natural person is strictly

4  liable for the defect and has the burden of loss shifted to it when loss is caused by the

5  defect. O.C.G.A. §51-1-11(b); *Ellis v. Rich's, Inc.*, 212 S.E.2d 373 (Ga. 1975); *Orkin*

6  *Exterminating Co., Inc. v. Dawn Food Products*, 366 S.E.2d 792 (Ga. App. 1988).

7          ii.      Failure to Warn (Negligent and Strict Liability):

8      To establish a failure to warn claim under Georgia law, "the plaintiff must show

9  the defendant had a duty to warn, the defendant breached that duty and the breach was the

10  proximate cause of the plaintiff's injury." *Wheat v. Sofamor*, S.N.C., 46 F. Supp. 2d

11  1351, 1362 (N.D. Ga. 1999).

12      "[A] manufacturer has a duty to warn of nonobvious foreseeable dangers from the

13  normal use of its product." *Thornton v. E.I Du Pont de Nemours & Co.*, 22 F.3d 284, 289

14  (11th Cir. 1994) (citations omitted).

15      The duty to warn arises "whenever the manufacturer knows or reasonably should

16  know of the danger arising from the use of its product." *Chrysler Corp. v. Batten*, 450

17  S.E.2d 208, 211 (Ga. 1994).

18      Under Georgia Law, the duty to warn is "breached by (1) failing to adequately

19  communicate the warning to the ultimate user or (2) failing to provide an adequate

20  warning of the product's potential risks." *Thornton*, 22 F.3d at 289.

21      In cases involving medical devices, Georgia applies the "learned intermediary"

22  doctrine.  Under this doctrine, the manufacturer has no "duty to warn the patient of the

23  dangers involved with the product, but instead has a duty to warn the patient's doctor,

24  who acts as a learned intermediary between the patient and manufacturer." *McCombs v.*

25  *Synthes (U.S.A.)*, 587 S.E.2d 594, 595 (Ga. 2003) (citing *Ellis v. C. R. Bard, Inc.*, 311

26  F.3d 1272, 1279-80 (11th Cir. 2002)).  The manufacturer's warnings to the physician,

27  however, "must be adequate or reasonable under the circumstances of the case." *Id*.

28

16

1    The duty to warn is a continuing one and may arise "months, years, or even

2  decades after the date of the first sale of the product." *Watkins v. Ford Motor Co.*, 190

3  F.3d 1213, 1218 (11th Cir. 1999).

4    The general rule in Georgia is that the adequacy of a warning is an issue for the

5  jury. *Thornton*, 22 F.3d at 289.

6    The "question that must be answered by the fact finder is whether the warning

7  given was sufficient or was inadequate because it did not 'provide a complete disclosure

8  of the existence and extent of the risk involved.'" *Watkins*, 190 F.3d at 1220 (quoting

9  Thornton, 22 F.3d at 289); *see Cason v. C. R. Bard, Inc*., 2015 WL 9913809 at *4-5 (N.D.

10  Ga. Feb. 9, 2015); *Cisson v. C. R. Bard, Inc.*, 2013 WL 5700513 at *7-8 (S.D. W. Va. Oct.

11  18, 2003).

12                     iii.    Design Defect (Negligent and Strict Liability):

13    Under Georgia law, negligent or defective design is generally a jury question.  *See*

14  *Davis v. Glaze*, 354 S.E.2d 845 (Ga. 1987); *Smokey Mountain Enterprises, Inc. v. Bennett*,

15  359 S.E.2d 366 (Ga. App. 1987).

16    Under Georgia law, ordinary negligence means the absence of or the failure to use

17  that degree of care that is used by ordinarily careful persons under the same or similar

18  circumstances.  For a plaintiff to recover damages from a defendant in such a case, there

19  must be injury to the plaintiff resulting from the defendant's negligence. *See* O.C.G.A.§

20  51-1-2; Council of Superior Court Judges' Suggested Pattern Civil Jury Instructions,

21  60.010.

22    Georgia uses a "risk-utility" test for product liability claims. *Banks*, 450 S.E.2d at

23  674.

24    "A product may be found defective because of its particular design.  Although a

25  manufacturer is not required to ensure that a product design is incapable of producing

26  injury, the manufacturer has a duty to exercise reasonable care in choosing the design for

27  a product."  Council of Superior Court Judges' Suggested Pattern Civil Jury Instructions,

28  62.640.

To determine whether a product suffers from a design defect, there must be a balancing of the inherit risk of harm in a product design against the utility or benefits of that product design.  There must be a determination whether the manufacturer acted reasonably in choosing a particular product design by considering all relevant evidence, including, but not limited to, the following factors:

- the usefulness of the product;
- the severity of the danger posed by the design;
- the likelihood of that danger;
- the avoidability of the danger, considering the user's knowledge of the product, publicity surrounding the danger, the effectiveness of warnings, and common knowledge or the expectation of danger;
- the user's ability to avoid the danger;
- technology available when the product was manufactured;
- the ability to eliminate danger without impairing the usefulness of the product or making it too expensive;
- the feasibility of spreading any increased cost through product's price or by purchasing insurance;
- the appearance and aesthetic attractiveness of the product;
- the product's utility for multiple uses;
- the convenience and durability of the product;
- alternative designs for the product available to the manufacturer;
- and the manufacturer's compliance with the industry standards and government regulations.

*Banks*, 450 S.E.2d at 675 n.6, Council of Superior Court Judges' Suggested Pattern Civil Jury Instructions, 62.650.

In determining whether a product was defective, the jury may consider evidence of alternative designs that would have made the product safer and could have prevented or minimized the plaintiff's injury.  In determining the reasonableness of the manufacturer's

1   choice of product design, the jury should consider 1) the availability of an alternative
2   design at the time the manufacturer designed this product; 2) the level of safety from an
3   alternative design compared to the actual design; 3) the feasibility of an alternative design,
4   considering the market and technology at the time the product was designed; 4) the
5   economic feasibility of an alternative design; 5) the effect an alternative design would
6   have on the product's appearance and utility for multiple purposes; and 6) any adverse
7   effects on the manufacturer or the product from using an alternative design.  Council of
8   Superior Court Judges' Suggested Pattern Civil Jury Instructions, 62.660.

9          In determining whether a product was defective, the jury may consider proof of a
10  manufacturer's compliance with federal or state safety standards or regulations and
11  industrywide customs, practices, or design standards. Compliance with such standards or
12  regulations is a factor to consider in deciding whether the product design selected was
13  reasonable considering the feasible choices of which the manufacturer knew or should
14  have known. However, a product may comply with such standards or regulations and still
15  contain a design defect. Council of Superior Court Judges' Suggested Pattern Civil Jury
16  Instructions, 62.670.

17                      iv.   Punitive Damages:

18         Under Georgia law, punitive damages may be awarded where "it is shown by clear
19  and convincing evidence that the defendant's actions showed willful misconduct, malice,
20  fraud, wantonness, oppression, or that entire want of care which would raise the
21  presumption of conscious indifference to consequences."  Ga. Code Ann. § 51-12-5.1(b).

22         Under the conscious indifference standard, "punitive damages are available where
23  a manufacturer knows that its product is potentially dangerous and chooses to do nothing
24  to make it safer or to warn consumers."  *Cisson*, 2013 WL 5700513, at *13 (citations
25  omitted).

26         "[P]unitive damages are available where a manufacturer knows that its product is
27  dangerous and chooses to do nothing to make it safer or to warn consumers."  [Court's
28  Order, dated Nov. 22, 2017, (Dkt. 8874), at 19.]

Punitive damages are awarded not as compensation to a plaintiff but solely to punish, penalize or deter a defendant.  *See* O.C.G.A. § 51-12-5.1(b),(c); Council of Superior Court Judges' Suggested Pattern Civil Jury Instructions, 66.700, 66.702.

    b. Defendants' proposed issues of law

The following are issues of law proposed by Bard to which Plaintiff does not agree:

1. The "learned intermediary" doctrine applies to this case.

2. As to Plaintiff's statement of law in Section 2.a. above, Bard agrees that Georgia law applies to Plaintiff's claims, but does not agree that all of the citations listed by Plaintiff are undisputed or applicable to the facts of this case.  The parties have stipulated to many jury charges and have submitted others with objections, included some cited by Plaintiff herein.

3. Whether Defendants can offer evidence at trial that the FDA never instituted any enforcement or suggested a recall related to the Eclipse® filter (or any other Bard filter).

> Plaintiff's Contention: Plaintiff contends this evidence is speculative, misleading, and highly prejudicial without probative value, as it would allow Bard to improperly insinuate that the lack of such action by the FDA is evidence of the safety and efficacy of the filters, and the reasonableness of Bard's conduct.  Moreover, the knowledge, motivations, intent, state of mind, and purposes of the FDA or FDA officials are inadmissible.  *See, e.g.*, *In re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009).  Any suggestion or argument based on why the FDA did not take enforcement action against Bard relative to its IVC filters would impermissibly invite the jury to speculate as to what the FDA intended or what the agency or its employees were thinking or of which they were aware.  Moreover, it is false and misleading to elicit testimony from its witnesses as Bard during the *Booker* trial that Bard never received a warning letter addressing the design of its filters of regarding the warnings it

1    provided related to its filters. *See*, *Booker* Trial Transcript, March 28,
2    2018 at 2311:1-11. In fact, the warning letter is not part of the 510(k)
3    process and as enforcement actions regarding post-market matters, it
4    is misleading and actually false to insinuate that the same FDA
5    department overseeing the 510(k) process and issuing clearance
6    letters regarding substantial equivalence is the same as the
7    department that handles post-market matters.

8    Defendants' Contention: Under Georgia law, when a plaintiff claims
9    a design defect in a widely-distributed product, "[t]he fact that . . .
10   [defendant] had never been subjected to regulatory action with
11   respect to the claimed defect . . . tends to negate the allegation that
12   the configuration was a dangerous design." *Browning v. Paccar,*
13   *Inc.*, 214 Ga. App. 496, 498, 448 S.E.2d 260, 263 (1994).  As such,
14   "evidence that the customary methods for protecting the public from
15   defective [products] had not been instituted in connection with these
16   [products] was relevant to show defendant's design and manufacture
17   was not negligent." Id.

18   Second, with respect to Plaintiff's failure to warn claim, FDA
19   inaction is relevant and admissible to show that a particular risk or
20   risks were "known or reasonably scientifically knowable." Carlin v.
21   Superior Court, 13 Cal. 4th 1104, 1114 (1996) ("In appropriate cases,
22   FDA action or inaction, though not dispositive, may be admissible . .
23   . to show whether a risk was known or reasonably scientifically
24   knowable" for purposes of assessing a failure to warn claim); In re
25   Guidant Corp. Implantable Defibrillators Prod. Liab. Litig., No.
26   MDL 05 1708 DWF/AJB, 2007 WL 2023569, at *3 (D. Minn. July 6,
27   2007) (citing Carlin and reserving ruling). That the FDA did not
28   institute enforcement action necessitating such a result is relevant to

21

1    the reasonableness of Bard's actions in continuing to market the

2    Eclipse® filter as of the time Plaintiff received her implant, and to

3    show that Bard's conduct did not meet requisite "willful misconduct,

4    malice, fraud, wantonness, oppression, or ... conscious indifference"

5    standard for Plaintiff's punitive damages claim. See Ga. Code Ann. §

6    51-12-5.1(b).

7    Third, as this Court has already suggested, Doc. 9881 at 8, evidence

8    that the FDA did not take enforcement action against Bard is relevant

9    and admissible as rebuttal evidence in the event that Plaintiffs

10   attempt to use FDA-related evidence (such as the FDA warning

11   letter) in an attempt to show wrongdoing by Defendants. See

12   generally Broyles v. Cantor Fitzgerald & Co, No. CV 10-854-JJB-

13   CBW, 2016 WL 4718150, at *2 (M.D. La. Sept. 8, 2016) ("[T]he

14   Court cautions that if CA Funds "opens the door" by putting the

15   S.E.C. investigation at issue to prove Commonwealth's underlying

16   wrongdoing . . . and Stifel Financial's alleged knowledge of liability

17   to CA Funds, then the scope and outcome of the S.E.C. investigation

18   shall be deemed to be fair game and admissible."). Moreover,

19   because the FDA has the power to initiate enforcement actions for

20   violation of FDA regulations, the lack of such an enforcement action

21   is relevant to rebut any allegation or insinuation by Plaintiff that Bard

22   violated any FDA regulation.

23   **E.      LIST OF WITNESSES**

24   1.      Each party understands that it is responsible for ensuring that the witnesses

25   it wishes to call to testify are subpoenaed.  Each party further understands that any

26   witness a party wishes to call shall be listed on that party's list of witnesses; the

27   party cannot rely on the witness having been listed or subpoenaed by another party.

28   Plaintiff has submitted to Bard's counsel a list of Bard employees and officers that

she may call at trial and requested that Bard's counsel determine whether counsel can accept service for those witnesses and whether such witnesses may be unavailable for trial.  The parties are working cooperatively to facilitate the subpoena and attendance of witnesses.

2.      Many of the parties' summaries state that the witness will testify consistent with his/her deposition.  The parties do not waive any objections, and these descriptions are subject to the prior rulings by the Court on motions in limine and the pending motions in limine.  Counsel agrees that they and the witnesses will abide by those rulings.

3.      The parties agree to provide 48-hours notice of witness they intend to call.  Bard renews its request made at the April 13, 2018 (which the Court indicated would be appropriate) that Plaintiff identify which of the almost 20 subpoenaed witnesses she actually intends to call and approximately when each of those witnesses will need to appear.  *See* Dkt. 10768.

4.      Defendants object to Dr. Krishna Kandarpa who is listed by Plaintiff as a "will call" witness.  As with the Booker case in which he was excluded,  Plaintiff did not disclose him as a fact witness until March 29, 2018 in response to a specific interrogatory that was served over a year earlier asking for the identity of witnesses and the subject matter of their expected testimony.  This was months after discovery was closed in 2017, and Bard has not has the opportunity to depose him.  Plaintiff response: Plaintiff disclosed Dr. Kandarpa as a witness in supplemental interrogatory responses; even if Plaintiff had identified Dr. Kandparpa as a witness in her original responses, Bard would not have been able to depose Dr. Kandarpa during the discovery period because (a) that witness was outside the scope of permitted bellwether discovery and (b) Defendants' served their interrogatories such that the answers were not due until the very end of the bellwether discovery period such that they could not have timely deposed Dr. Kandarpa in any event.  Regardless, Plaintiff should be allowed to call Dr. Kandarpa to provide necessary

23

1    foundation for records related to his role as medical monitor for the Everest trial.

2    5.    Defendants object to the use of the deposition of Medhi Syed, who Plaintiff

3    also lists as a "will call" witness if the jury decides to award punitive damages.

4    Plaintiff has not submitted her deposition designation to Defendants or the Court

5    for review.  In Booker, Defendants provided their objections to designations to

6    Plaintiff, but Plaintiff did not submit them to the Court.  Plaintiff's response:

7    Plaintiff provided Defendants with all designations for Mr. Syed during the Booker

8    trial.  Plaintiff has not added any designations for this trial.  If Defendants believe

9    this Court needed to rule on objections, Defendants should have submitted those

10   objections in accordance with the schedule for deposition designations in this case.

11   6.    **Plaintiff's Witnesses:**

12   a.    Witnesses Plaintiff intends to call at trial (live and/or by deposition)

13   **Fact Witnesses:**

14   Doris Jones
     c/o Gallagher & Kennedy
15   2575 E. Camelback Road, 11th Floor
     Phoenix, Arizona 85016
16

17   Doris Jones is the Plaintiff in this action. She will testify regarding her medical care and

18   treatment, as well as he surrounding and related circumstances; the nature, extent, and

19   severity of her injuries and suffering; the physical and mental pain, suffering and

20   discomfort associated with the injuries; and the impact of the injuries on her life,

21   including without limitation the ongoing emotional and physical impact on her life.

22   Lastly, she will testify consistent with her deposition given in this matter.

23   Sharese May
     c/o Gallagher & Kennedy
24   2575 E. Camelback Road, 11th Floor
     Phoenix, Arizona 85016

25   Sharese May is Plaintiff's daughter.  She has knowledge and is expected to testify

26   regarding Plaintiff's medical condition leading up to implantation of the Eclipse IVC

27   filter, her conditions and symptoms following implantation of the filter, her medical

28   conditions and symptoms that led her to go to the Emergency Room on April 22, 2015,

24

the procedure to remove her filter, her condition after retrieval of the filter, and her pain, suffering, emotional distress, and mental anguish as a result of the filter's failure.  She will also testify about her mother's role in providing daycare for her children while she works and her mother's fears concerning the embedded fragment in the pulmonary artery and how that would impact her responsibilities for the children.

> Shanice Matthew
> c/o Gallagher & Kennedy
> 2575 E. Camelback Road, 11th Floor
> Phoenix, Arizona 85016

Shanice Matthew is Plaintiff's daughter.  She has knowledge and is expected to testify regarding Plaintiff's medical condition leading up to implantation of the Eclipse IVC filter, her conditions and symptoms following implantation of the filter, her medical conditions and symptoms that led her to go to the Emergency Room on April 22, 2015, the procedure to remove her filter, her condition after retrieval of the filter, and her pain, suffering, emotional distress, and mental anguish as a result of the filter's failure.

> Anthony Avino, M.D.
> Savannah Vascular Institute
> 4750 Waters Avenue, Suite 500
> Savannah, Georgia 31404

Dr. Avino is an Interventional Radiologist at Memorial Health University Medical Center in Savannah, Georgia.  He was the implanting physician of the Eclipse filter in Plaintiff on August 24, 2010.  Plaintiff expects that his testimony at trial will be consistent with the testimony at his deposition taken on March 23, 2017, in this MDL.

> Kirsten Nelson, M.D.
> Savannah Vascular Institute
> 4750 Waters Avenue, Suite 500
> Savannah, Georgia 31404

Dr. Nelson is an Interventional Radiologist at Memorial Health University Medical Center in Savannah, Georgia.  She was the doctor who retrieved the body of the broken Eclipse filter from Plaintiff's IVC on April 23, 2015.  Plaintiff expects that her testimony at trial will be consistent with the testimony at her deposition taken on March 23, 2017, in this MDL.

> David Chodos, M.D.

1
2

> Wake Forest University Baptist Medical Center
> Medical Center Blvd
> Winston-Salem, NC 27157

3      Dr. Chodos was a physician at Memorial Health University Medical Center in

4   Savannah, Georgia, at the time of Plaintiff's admission to the Emergency Room at the

5   hospital on April 22, 2015.  He was Plaintiff's treating physician for that admission.  He

6   has knowledge and Plaintiff expects that he will testify regarding Plaintiff's admission to

7   the Emergency Room, her medical condition at the time, the discovery that her Eclipse

8   filter had broken and that a piece had migrated to her right pulmonary artery, the decision

9   to remove the broken filter and not to attempt to retrieve the broken piece, the decision to

10  refer Plaintiff to an interventional radiologist for removal, and Plaintiff's care and

11  treatment during her stay at Memorial Health University Medical Center from April 22 to

12  24, 2015.

13
> William Altonaga, M.D.
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

14  Dr. Altonaga was a consultant to and acting Medical Director for C.R. Bard beginning in

15  2001 and into 2004.  Plaintiff expects that he is knowledgeable regarding the matters that

16  were the subject of his employment with Bard and his deposition taken on October 22,

17  2013, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego

18  County, East County Regional Center, Case No. 00069363-CU-PO-EC.

19
> Murray R. Asch, M.D.
> c/o Lakeridge Health Corporation
20
> Director of Interventional Radiology
> 580 Harwood Ave. S
21
> Oshawa, ON L1S 2J4

22  Dr. Asch is an Interventional Radiologist who was involved in a pilot study to assess the

23  retrievability of the Recovery filter. Plaintiff expects that he is knowledgeable regarding

24  the matters that were the subject of his study and work with Bard, as well as his

25  depositions taken on May 2, 2016, in *In re Bard IVC Filters Prod. Liab. Litig.*, MDL No.

26  2641, United States District Court, District of Arizona ("the Bard IVC Filter MDL") and

27  January 5, 2011, in *Lindsay, et al. v. C.R. Bard, Inc., et al.*, United States District Court,

28  Southern District of New York, Case No. 1:09-cv-05475-SHS.

26

Brett Baird
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Baird was a Senior Product Manager for BPV in 2007 and a Marketing Manager for BPV from 2008 through 2011. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on June 9, 2016, in the Bard IVC Filter MDL.

Robert M. Carr, Jr.
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Carr has been an employee at BPV since 2002; prior to that, he was an employee at NMT working on filters. At BPV, he was the Program Director for Research & Development from 2002 through 2010, Director Research & Development Biopsy from 2010 through 2012, Senior Director Research & Development Biopsy & Imaging from 2013 through 2014, and Vice President International since 2015. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with NMT and Bard and his depositions taken on March 18, 2016, and January 19, 2017, in the Bard IVC Filter MDL; May 8, 2007, in *Hutson v. C.R. Bard, Inc., et al.*, Commonwealth of Kentucky, McCracken Circuit Court, Division II, Case No. 06-CI-680; March 4, 2010, in *Campbell v. C.R. Bard, Inc.*, Commonwealth of Kentucky, Scott Circuit Court, Division I, Case No. 08-CI-00541; September 23, 2010, in *Vedas v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-019655; September 14, 2012, in *Albrecht, et al. v. Bard Peripheral Vascular, Inc.*, Circuit Court of Greene County, Missouri, Case. No. 1031-cv10504; April 17, 2013, in *Bouldry, et al. v. C.R. Bard, Inc., et al.*, United States District Court, Southern District of Florida, Case No. 12-809-51-CIV-Rosenbaum; October 25, 2013, in *Anderson v. C.R. Bard, Inc., et al.*, United States District Court, Eastern District of New York, Case No. CV11-2632 (DRH); November 5, 2013, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC; December 19, 2013, in *Payne v. C.R. Bard, Inc., et al.*, United States District Court, Middle District of Florida, Orlando Division, Case No. 6:11-cv-01582-Orl-37GJK;

October 29, 2014, in *Tillman v. C.R. Bard, Inc.*, United States District Court, Middle District of Florida, Jacksonville, Case No. 3:13-cv-222-J-34-JBT; and December 19, 2014, in *Kilver v. C.R. Bard, Inc.*, United States District Court, Central District of Illinois, Case No. 1:13-cv-01219-MMM-JAG.

Andrzej Chanduskzko
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Chandskzko has been an employee of BPV since 2002; prior to that, he was an employee at NMT working on IVC filters. At BPV, he was a Senior Engineer, Research & Development Staff Engineer from 2004 through 2008, Staff Engineer from 2009 through 2014, and Principal Engineer since 2015. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and NMT, as well as his depositions taken on September 22, 2010, in *Vedas v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-019655, June 21, 2013, in *Anderson v. C.R. Bard, Inc., et al.*, United States District Court, Eastern District of New York, Case No. CV11- 2632 (DRH), October 10, 2013, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-WGC, and April 23, 2015, in *Arnold, et al. v. C.R. Bard, Inc., et al.*, United States District Court, Northern District of Texas, Dallas Division, Case No. 5:13-cv-00609-HLH.

David Ciavarella, M.D.
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Dr. Ciavarella has been Vice President Corporate Clinical Affairs at C.R. Bard since 2004. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and depositions taken on March 1, 2011, and August 29, 2012, in *Tyson v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010- 011149, November 12, 2013, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC, and July 29, 2014, in *Coker v. C.R. Bard, Inc., et al.*, United States District Court, Northern District of Georgia, Atlanta Division, Case No. 1:13-cv-0515.

Len DeCant
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. DeCant was Vice President Research & Development for BPV from 2002 to 2007. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on May 24, 2016, in the Bard IVC Filter MDL.

> David Dimmit
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Dimmit is the Vice President and Group Controller at C.R. Bard; Plaintiff expects that he is knowledgeable regarding matters that are/were subject to his employment with Bard and his deposition was taken on January 26, 2017 as to the defendants' financial status, assets, and net worth. Plaintiff does not anticipate use of Mr. Dimmit's testimony unless there is a finding of punitive conduct and the trial proceeds to a punitive damages phase pursuant to O.C.G.A. 51-12-5.1.

> Christopher Ganser
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Ganser was Vice President, Regulatory Science at C.R. Bard from 2005 through 2006 and Vice President Quality, Environmental Services, & Safety from 2007 through 2010. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on February 28, 2011, in *Newton v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2009-019232, September 9, 2013, in *Anderson v. C.R. Bard, Inc.*, et al., United States District Court, Eastern District of New York, Case No. CV11-2632 (DRH), and October 11, 2016, in the Bard IVC Filter MDL.

> David Mickey Graves
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Graves was an Engineer at BPV beginning in 2004 to at least 2014. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on February 27, 2014, in *Ocasio, et al. v. C.R. Bard, Inc., et al.*, United States District Court, Middle District of Florida, Tampa Division, Case No. 8:13-cv-01962-DSM-AEP.

> Janet Hudnall
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

1   Ms. Hudnall was an employee at BPV from 1998 to 2008, and has recently become

2   employed by Bard again; she held positions as Product Development Engineer, Product

3   Manager, and Marketing Manager. Plaintiff expects that she is knowledgeable regarding

4   the matters that were the subject of her employment with Bard and her depositions taken

5   on November 3, 2010, in *Newton v. C.R. Bard, Inc., et al.*, Superior Court of Arizona,

6   Maricopa County, Case No. CV2009-019232, and November 1, 2013, in *Phillips v. C.R.*

7   *Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-

8   WGC.

9                    Krishna Kandarpa, M.D.
                     National Institute of Health
10                   Bethesda, MD 20892

11   Dr. Kandarpa was the Medical Monitor for Bard's EVEREST Retrievability Study.

12   Plaintiff expects he is knowledgeable about and will provide testimony concerning the

13   EVEREST Study and all documents related to the same, including his observations, his

14   concerns and findings, complications and adverse events that occurred during the study,

15   design and purpose of the study, his recommendations to and interactions with Bard and

16   its representatives/agents based on the study, and all other related facts and circumstances.

17                   Thomas Kinney, MD, MSME
                     c/o Gallagher & Kennedy
18                   2575 E. Camelback Road, 11th Floor
                     Phoenix, Arizona 85016

19   Dr. Kinney is an Interventional Radiologist who was a consultant, key opinion leader and

20   invited panel member for Bard on IVC filters. Plaintiff expects that he is knowledgeable

21   regarding the matters that were the subject of his relationship with Bard, and will testify

22   consistent with expert report and deposition given in this litigation. He is also disclosed as

23   an expert, below.

24                   Bill Little
                     c/o Counsel for Bard Peripheral Vascular and C.R. Bard
25   Mr. Little was Vice President of Global Marketing at BPV from 2008 through 2011.

26   Plaintiff expects that he is knowledgeable regarding the matters that were the subject of

27   his employment with Bard and his deposition taken on July 21, 2016, in the Bard IVC

28   Filter MDL.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Chad Modra
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Modra was Director Quality Assurance and Vice President Quality Assurance at BPV from 2011 through 2014. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on March 28, 2013, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJWGC, June 6, 2014, in *Ocasio, et al. v. C.R. Bard, Inc., et al.*, United States District Court, Middle District of Florida, Tampa Division, Case No. 8:13-cv-01962-DSM-AEP, and December 15, 2015, and January 20, 2016, in the Bard IVC Filter MDL.

Daniel Orms
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Daniel Orms was an employee of BPV from 1997 through 2012 as a Sales Representative, District Manager, and Regional Manager. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on August 16, 2016, in the Bard IVC Filter MDL.

Abithal Raji-Kubba
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Raji-Kubba was Vice President Research & Development at BPV from 2007 through 2010 and Vice President Lutonix Technology Center from 2011 through 2012. Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her deposition taken on July 18, 2016, in the Bard IVC Filter MDL.

Michael Randall
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Randall has been an employee of BPV in the Research & Development department since 2006; he has held several positions, including Engineer, Program Manager, Associate Director, and Director. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on January 18, 2017, and February 2, 2017, in the Bard IVC Filter MDL.

Frederick B. Rogers, M.D.

c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Dr. Rogers was the author of a large study establishing that IVC filters do not reduce the rate of PE in trauma patients. Plaintiff further expects that he is knowledgeable regarding the matters that were the subject of his deposition taken on July 18, 2017, in *In re: Bard IVC Filters Products Liability Litigation*, No. MD-15-02641-PHX-DGC, and will testify consistent with that deposition. He is also disclosed as an expert, below.

Gin Schulz
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Schulz was Vice Present Quality Assurance at BPV from 2005 to 2011 and in the Quality Assurance department at C.R. Bard since 2011, including as Vice President Quality Assurance. Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her depositions taken on September 13, 2013, in *Anderson v. C.R. Bard, Inc., et al.*, United States District Court, Eastern District of New York, Case No. CV11-2632 (DRH), and January 30, 2014, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-WGC.

Christopher Smith
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Smith was the supervisor of Melanie Vilece during the relevant time period and when she was the sales representative for Memorial Health University Medical Center.  Plaintiff expects that Mr. Smith has knowledge and would testify at trial regarding the information Bard provided and did not provide to its sales force and to physicians relating to the IVC filters marketed and sold to physicians and hospitals and specifically what information was provided to him and to the sales representatives reporting to him, including Melanie Vilece, regarding Bard's IVC filters and what information they would and could have conveyed to physicians who would use those devices.  Plaintiff expects that his testimony at trial will be consistent with the testimony at his deposition taken on April 11, 2017, in this MDL.

Mehdi Syed
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

1    Mr. Syed is the Vice President of Operations at Becton Dickinson and was designated by

2    Bard to testify on the subjects notices for the deposition relating to punitive damages and

3    Bard's financial condition; Plaintiff expects that he is knowledgeable regarding matters

4    that are/were subject to his employment with Bard and his deposition was taken on March

5    2, 2018, as to Defendants' financial status, assets, and net worth.  Plaintiff does not

6    anticipate use of Mr. Syed's testimony unless there is a finding of punitive conduct and

7    the trial proceeds to a punitive damages phase pursuant to O.C.G.A. § 51-12-5.1.

8                    Alex Tessmer
                     c/o Counsel for Bard Peripheral Vascular and C.R. Bard

9    Mr. Tessmer was an employee and engineer at BPV in the Research & Development

10   department from 1997 through 2004. Plaintiff expects that he is knowledgeable regarding

11   the matters that were the subject of his employment with Bard and his deposition taken on

12   June 12, 2013, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of

13   Nevada, Case No. 3:12-cv-00344-RCJ-WGC.

14                   Carol Vierling
                     c/o Counsel for Bard Peripheral Vascular and C.R. Bard
15
16   Ms. Vierling was the Director, Regulatory Affairs at BPV from 1994 through 2002.

     Plaintiff expects that she is knowledgeable regarding the matters that were the subject of
17
     her employment with Bard and her deposition taken on May 11, 2016, in the Bard IVC
18
     Filter MDL.
19
                     Melanie Vilece-Sussman
20                   c/o Counsel for Bard Peripheral Vascular and C.R. Bard

21   Ms. Vilece-Sussman was a sales representative for Bard Peripheral Vascular Incorporated

22   ("BPV") at the time of and preceding the implantation of the Eclipse IVC filter in

23   Plaintiff.  Ms. Vilece-Sussman's territory included Memorial Health University Medical

24   Center in Savannah, Georgia.  Plaintiff expects that her testimony at trial will be

25   consistent with the testimony at her deposition taken on April 7, 2017, in this MDL.

                     Steve Williamson
26                   c/o Counsel for Bard Peripheral Vascular and C.R. Bard

27   Mr. Williamson has been President at BPV since 2012. Plaintiff expects that he is

28   knowledgeable regarding the matters that were the subject of his employment with Bard

and his deposition taken on September 7, 2016, in the Bard IVC Filter MDL.

Natalie Wong
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Wong has been an employee of BPV since 2004; she has held positions as Quality Engineer, Field Assurance Quality Engineering Manager, Quality Engineering Manager, and Senior Quality Engineer, New Product Development. Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her depositions taken on September 21, 2010, in Vedas v. C.R. Bard, Inc., et al., Superior Court of Arizona, Maricopa County, Case No. CV2010-019655, and October 18, 2016, in the Bard IVC Filter MDL.

### **Expert Witnesses:**

David Garcia, M.D.
University of Washington School of Medicine
Division of Hematology, Box 357710
Seattle, Washington 98195-7710

Dr. Garcia is a hematology expert for Plaintiff.  Dr. Garcia is expected to testify about the general liability of the Bard defendants, including without limitation the risk versus benefit analysis associated with the use of IVC filters.  Dr. Garcia has also disclosed case-specific opinions relating to Mrs. Jones' condition, including that the presence of the filter fragment in her pulmonary artery presents a significant risk factor for the development of future thrombus and that the filter fragment has likely caused injury to the inner wall of the pulmonary artery, such that it could cause future thrombus from that injury; a future thrombus in the pulmonary artery could be significant and Mrs. Jones should be therapeutically anticoagulated indefinitely.  Dr. Garcia will further testify consistent with his deposition and expert report in this litigation.  Further, Dr. Garcia will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, medical and scientific literature he has authored and the associated research, Bard documents, and other information he has reviewed and relied upon.  Dr. Garcia will also respond to opinions and testimony of defense experts.

Darren R. Hurst, M.D.
c/o Gallagher & Kennedy

2575 E. Camelback Road, 11th Floor
Phoenix, Arizona 85016

Dr. Hurst is Plaintiff's vascular and interventional radiologist expert. Dr. Hurst is expected to testify as to the Defendants' liability and the design problems associated with the IVC filter, causation, and damages. Dr. Hurst will testify consistent with his deposition and expert report in this case. Further, Dr. Hurst will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon. Dr. Hurst will also provide foundational testimony for Plaintiff's medical illustrations and animations. Dr. Hurst will also respond to opinions and testimony of defense experts.

Thomas Kinney, MD, MSME
c/o Gallagher & Kennedy
2575 E. Camelback Road, 11th Floor
Phoenix, Arizona 85016

Dr. Kinney is an interventional radiology expert for Plaintiff. Dr. Kinney is expected to testify about the general liability of the Bard defendants. Dr. Kinney will further testify consistent with his deposition and expert report in this litigation. Further, Dr. Kinney will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon. Dr. Kinney will also respond to opinions and testimony of defense experts.

Robert McMeeking, Ph.D.
c/o Gallagher & Kennedy
2575 E. Camelback Road, 11th Floor
Phoenix, Arizona 85016Dr.

Dr. McMeeking is a materials and mechanical engineer and is experienced in safety, reliability and effectiveness of biomedical implant devices. Dr. McMeeking is expected to testify that the design of the Eclipse filter is inherently dangerous and prone to numerous failure modes and there were safer alternative designs which were available to Defendants. Dr. McMeeking is expected to testify and describe alternative designs of IVC filters including the Simon Nitinol filter, which are feasible and reduce the tendency to tilt, perforate, migrate, fracture, and otherwise fail.

Dr. McMeeking is expected to testify about his analyses and calculations which predict

stress, strain, and strength of the Eclipse filter. He will explain why the filter testing conducted by Defendants was inadequate and misleading.  Further, Dr. McMeeking will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon.  Dr. McMeeking is also expected to testify about the following:

- The Eclipse filter has a design that makes it prone to migration, tilting, perforation/penetration through the vena cava, and fracture.

- The driving force for tilting is the relaxation of strain energy in the filter.

- Tilting allows arms and legs to spread out, thereby reducing the strain and strain energy in the filter.

- The filter design makes it probable that limbs will perforate into the wall of the vena cava.

- Pressure applied from the arms and legs of the filter provide the driving forces that lead to penetration in the vena cava walls.

- The filter design causes increased pressure from the arms and legs against the vena cava wall.

- The relatively sharp ends of some arms and legs of the IVC filter can press aggressively into the vena cava wall thereby contributing to higher pressure to the vena cava wall when the filter becomes severely tilted.

- A severely tilted filter will likely perforate the vena cava wall.

- The association between failure modes found with Bard filters.

Dr. McMeeking may also respond to opinions and testimony of defense experts. In addition, Plaintiff anticipates that Dr. McMeeking will testify consistent with his expert reports and depositions given to date.

> Mark Moritz, M.D.
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Dr. Moritz gave general expert opinions on behalf of Bard in the MDL, as well as case specific opinions in at least one of the MDL bellwethers. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his deposition taken on July 18, 2017, in *In re: Bard IVC Filters Products Liability Litigation*, No. MD-15-02641-

PHX-DGC, and will testify consistent with that deposition.

Derek David Muehreke, M.D.
c/o Gallagher & Kennedy
2575 E. Camelback Road, 11th Floor
Phoenix, Arizona 85016

Dr. Muehrcke is a cardiothoracic and vascular surgeon. Dr. Muehrcke is expected to testify about the liability of the Bard defendants as well as causation and damages caused by the defective IVC filter. Dr. Muehrcke will testify consistent with his deposition and expert report in this case. Further, Dr. Muehrcke will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon. Dr. Muehrcke will also provide foundational testimony for Plaintiff's medical illustrations and animations. Dr. Muehrcke will also respond to opinions and testimony of defense experts.

Frederick B. Rogers, M.D.
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Dr. Rogers gave general expert opinions on behalf of Bard in the MDL, as well as case specific opinions in at least one of the MDL bellwethers. He was the author of a large study establishing that IVC filters do not reduce the rate of PE in trauma patients. Plaintiff further expects that he is knowledgeable regarding the matters that were the subject of his deposition taken on July 18, 2017, in *In re: Bard IVC Filters Products Liability Litigation*, No. MD-15-02641-PHX-DGC, and will testify consistent with that deposition.

J. Matthew Sims, MC, MS
c/o Gallagher & Kennedy
2575 E. Camelback Road, 11th Floor
Phoenix, Arizona 85016

Mr. Sims is a Vocational Economist expert for the Plaintiff. He will provide testimony and opinion as to the present value of the life care plan for Plaintiff and projection of costs prepared by Plaintiff's Medical Services Consultant and Life Care Planner expert, Lora White. He will testify consistent with his expert report and deposition given in this case.

Moni Stein, MD
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Dr. Stein gave general expert opinions on behalf of Bard in the MDL, as well as case specific opinions in at least one of the MDL bellwethers. Plaintiff expects that he is

knowledgeable regarding the matters that were the subject of his deposition taken on July

31, 2017 in *In re: Bard IVC Filters Products Liability Litigation*, No. MD-15-02641-

PHX-DGC, and will testify consistent with that deposition.

> Lora K. White, RNBC, BSN, CCM, CNLCP
> c/o Gallagher & Kennedy
> 2575 E. Camelback Road, 11th Floor
> Phoenix, Arizona 85016

Ms. White is a Medical Services Consultant and Life Care Planner expert for the Plaintiff.

She prepared a life care plan for Plaintiff and projection of costs for the same arising from

the injuries and damages caused by the failure of Plaintiff's Bard Eclipse Filter. She will

testify consistent with her expert report and deposition given in this case.

> b.    Witnesses Plaintiff may call at trial (live and/or by deposition)

**Fact Witnesses:**

> Shari Allen (O'Quinn)
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Allen was the Regulatory Affairs Manager for BPV in 2004 and the Director of

Regulatory Affairs and Clinical for BPV in 2005 and 2006. Plaintiff expects that she is

knowledgeable regarding the matters that were the subject of her employment with Bard

and her depositions taken on November 2, 2010, in *Newton v. C.R. Bard, Inc., et al.*,

Superior Court of Arizona, Maricopa County, Case No. CV2009-019232, and October 9,

2013, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego

County, East County Regional Center, Case No. 00069363-CU-PO-EC.

> Brian Barry
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Barry was the Vice President Regulatory/Clinical Affairs for Bard Access Systems

from 1994 through 1997, Vice President Corporate Regulatory Affairs for C.R. Bard from

1997 through 2000, and Vice President of Regulatory Affairs and Clinical Affairs for C.R.

Bard from 2003 to 2007. Plaintiff expects that he is knowledgeable regarding the matters

that were the subject of his employment with Bard and his deposition taken on January 31,

2014, in Jones v. C.R. Bard, Inc., United States District Court, Northern District of Texas,

Dallas Division, Case No. 3:13-cv-00599-K.

Kevin Boyle
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Boyle was Vice President of Research & Development at BPV from 2013 through

2015. Plaintiff expects that he is knowledgeable regarding the matters that were the

subject of his employment with Bard and his deposition taken on February 2, 2017, in the

Bard IVC Filter MDL.

Gary S. Cohen, M.D.
Temple University
Medicine Education and Research Building (MERB)
3500 N. Broad Street
Philadelphia, PA 19140

Dr. Cohen is an Interventional Radiologist at Temple University Hospital. He was a

consultant and key opinion leader for Bard on IVC filters. Plaintiff expects that he is

knowledgeable regarding the matters that were the subject of his deposition taken on

January 25, 2017, in the Bard IVC Filter MDL.

Robert Cortelezzi
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Cortelezzi was an employee at BPV from approximately 1990 to 2008; he was a

Regional Manager from 2004 through 2008. Plaintiff expects that he is knowledgeable

regarding the matters that were the subject of his employment with Bard and his

deposition taken on November 11, 2016, in the Bard IVC Filter MDL.

John DeFord
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. DeFord has been an employee of C.R. Bard since 2004; he is presently the Senior

Vice President for Science, Technology, and Clinical Affairs and has held that position

since approximately 2007; from 2004 to 2007, he was Vice President of Science and

Technology.  Plaintiff expects that his testimony at trial will be consistent with the

testimony taken at his deposition on June 2, 2016, in this MDL.

Mary Edwards
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Edwards was Vice President Regulatory Affairs/Clinical Affairs at C.R. Bard from

1999 to 2005. Plaintiff expects that she is knowledgeable regarding the matters that were

the subject of her employment with Bard and her depositions taken on January 20, 2014,

in Giordano v. C.R. Bard, Inc., et al., Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC, and August 19, 2016, in the Bard IVC Filter MDL.

>Thomas Ferari
>c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Ferari was an Engineer at BPV. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on October 20, 2010, in *Vedas v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010- 019655, and all related cross-noticed cases and April 2, 2014, in *Coker v. C.R. Bard, Inc., et al.*, United States District Court, Northern District of Georgia, Atlanta Division, Case No. 1:13-cv-0515.

>Kay Fuller

Ms. Fuller was Senior Regulatory Specialist at BPV from 1999 through 2004. Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her depositions taken on November 9, 2010, in *Newton v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2009-019232, and January 11, 2016, in the Bard IVC Filter MDL.

>Holly Glass
>c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Glass was Vice President Government & Public Relations at C.R. Bard from 2002 through 2009. Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her deposition taken on September 23, 2016, in the Bard IVC Filter MDL.

>Jason Greer
>c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Greer was a Sales Representative and then District Manager at BPV from 1999 through 2007. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on June 20, 2010, in *Newton v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2009-019232, October 22, 2010, in *Vedas v. C.R. Bard, Inc., et al.*, Superior Court of

Arizona, Maricopa County, Case No. CV2010-019655, August 11, 2014, in *Barkley, et al. v. C.R. Bard, Inc., et al.*, Arizona Superior Court, Maricopa County, Case No. CV2011-021250, and September 26, 2011, in T*yson v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-011149.

> Brian Hudson
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Hudson was an employee at BPV from 1999 to 2012; he held positions as Quality Engineer, Senior Risk Manager, and Associate Director Quality Assurance. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on January 21, 2011, in *Tyson v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-011149, and January 17, 2014, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC.

> Alfred Jones
> c/o Gallagher & Kennedy
> 2575 E. Camelback Road, 11th Floor
> Phoenix, Arizona 85016

Mr. Jones is Plaintiff's husband.  He will testify regarding his observations of Plaintiff's daily issues and injuries caused by her Eclipse Filter and the failures of that filter, the overall impact of the injury on her daily activities and quality of life, and Plaintiff's mental and physical condition before and after the implant of her Eclipse Filter. He will also testify consistent with his deposition in this matter.

> John Lehmann, M.D.
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Dr. Lehmann was Group Medical Director and Vice President of Medical Affairs for C.R. Bard from 1991 to 1995; he was a consultant and acting Medical Director for C.R. Bard in 2003 and 2004. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on April 2, 2013, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-WGC, and all related cross-noticed cases and August 7, 2014, in

*Coker v. C.R. Bard, Inc., et al.*, United States District Court, Northern District of Georgia, Atlanta Division, Case No. 1:13-cv-0515.

> John McDermott
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. McDermott was President of BPV from 1996 through 2006.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on November 1, 2010, in *Tyson v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-011149, and February 5, 2014, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC.

> Patrick McDonald
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. McDonald is an employee of BPV as a Sales Representative and Field Sales Trainer. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his deposition taken on July 29, 2016 in the Bard IVC Filter MDL.

> Kim Romney
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Romney has been an employee of BPV since 2011 and is presently a Senior Product Manager for Ports and Filters. Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her depositions taken on August 30, 2016, September 7, 2016, and January 18, 2017, in the Bard IVC Filter MDL.

> Jack Sullivan
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Sullivan was an employee at BPV from 1994 to 2013; he was in the Sales department and held positions including District Manager and Regional Manager. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on September 16, 2016, and November 3, 2016, in the Bard IVC Filter MDL.

> Doug Uelmen
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Uelmen was an employee at C.R. Bard and then BPV from approximately 1981 through 2005; he was Vice President Quality Assurance at BPV from 2003 through 2005.

1   Plaintiff expects that he is knowledgeable regarding the matters that were the subject of

2   his employment with Bard and his depositions taken on October 4, 2013, in *Giordano v.*

3   *C.R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County

4   Regional Center, Case No. 00069363-CU-PO-EC, and May 13, 2014, in *Coker v. C.R.*

5   *Bard, Inc., et al.*, United States District Court, Northern District of Georgia, Atlanta

6   Division, Case No. 1:13-cv-0515.

7              John Van Vleet
             c/o Counsel for Bard Peripheral Vascular and C.R. Bard

8   Mr. Van Vleet has been the Vice President Regulatory Affairs/Clinical Affairs at BPV

9   since 2007. Plaintiff expects that he is knowledgeable regarding the matters that were the

10  subject of his employment with Bard and his depositions taken on September 29, 2016,

11  and January 17, 2017, in the Bard IVC Filter MDL.

12             Bryan Vogel
             c/o Counsel for Bard Peripheral Vascular and C.R. Bard
13
14  Mr. Vogel has been a Clinical Specialist II for Bard since 2012. Plaintiff expects that he is

    knowledgeable regarding the matters that were the subject of his employment with Bard
15
    and his deposition taken on August 15, 2017, in the Bard IVC Filter MDL.
16
               John Weiland
17             c/o Counsel for Bard Peripheral Vascular and C.R. Bard

18  Mr. Weiland has been the President and Chief Operating Officer of C.R. Bard throughout

19  the relevant time period. Plaintiff expects that he is knowledgeable regarding the matters

20  that were the subject of his employment with Bard and his deposition taken on April 23,

21  2014, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of Nevada, Case

22  No. 3:12-cv-00344-RCJWGC.

23             John Wheeler
             c/o Counsel for Bard Peripheral Vascular and C.R. Bard

24  Mr. Wheeler has been employed in the Quality Assurance department at BPV since 2012.

25  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of

26  his employment with Bard and his deposition taken on July 29, 2016, in the Bard IVC

27  Filter MDL.

28

                                          43

Mark Wilson
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Wilson worked in the Sales department at BPV from 2006 through 2010 as a sales training manager. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and the deposition taken on January 31, 2017, in the Bard IVC Filter MDL.

### **Expert Witnesses:**

Rebecca Betensky, Ph.D.
655 Huntington Avenue
Building II, Room 421
Boston, MA 01225

Dr. Betensky is a biostatistician. Dr. Betensky is expected to testify about her analysis and data relating to complication rates of Bard's defective IVC filter, various design failure modes effects analysis documents, and about various filter migration test results. Dr. Betensky will testify consistent with her deposition and expert report. Further, Dr. Betensky will testify about the foundation and bases for her opinions, including her review of medical and scientific literature, Bard documents, and other information she has reviewed and relied upon. Dr. Betensky will also respond to opinions and testimony of defense experts.

Suzanne Parisian, M.D.
MD Assist President
7117 N. 3rd St.
Phoenix, AZ 85020

Suzanne Parisian, M.D., is an expert in the field of FDA rules and regulations. Dr. Parisian is expected to testify consistent with her expert reports and depositions. Further, Dr. Parisian will testify about the foundation and bases for her opinions, including her review of medical and scientific literature, Bard documents, and other information she has reviewed and relied upon. Plaintiff also anticipates that Dr. Parisian will also respond to opinions and testimony of defense experts.

Michael Streiff, M.D.
c/o Gallagher & Kennedy
2575 E. Camelback Road, 11th Floor
Phoenix, Arizona 85016

Dr. Streiff is a hematology expert for Plaintiff.  Dr. Streiff is expected to testify about the general liability of the Bard defendants, including without limitation the risk versus benefit analysis associated with the use of IVC filters.  Dr. Streiff will further testify consistent with his deposition and expert report in this litigation.  Further, Dr. Streiff will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, medical and scientific literature he has authored and the associated research, Bard documents, and other information he has reviewed and relied upon.  Dr. Streiff will also respond to opinions and testimony of defense experts.

8.  **Defendants' Witnesses:**

Defendants' witnesses who shall be called at trial (either live or by deposition):

**Andre Chanduszko**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Mr. Chanduszko is an employee of BPV working as a staff engineer with responsibilities related to the design, development, and testing of IVC filters. Mr. Chanduszko may provide testimony regarding biomedical and biomechanical engineering generally, as well as testimony regarding the design, development, manufacture, testing, clearance, evolution, and use of Bard filters, specifically. Mr. Chanduszko may also provide testimony that was the subject of previous disclosures or his previous deposition testimony.

**Chad Modra**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Mr. Modra was formerly Vice President of Quality Assurance at BPV, and is currently Staff Vice President of Operations at C. R. Bard, Inc. Mr. Modra may testify regarding any and all aspects of Bard's quality assurance processes that are in place or that have been in place for Bard's retrievable IVC filters. Mr. Modra may testify regarding Bard's processes and procedures for addressing complaints, including complaint handling, investigations, and MDR reporting for its IVC filters. He may also testify to certain communications and inspections/audits with FDA. To the extent that evidence related to the FDA Warning and 483 Letters is admitted, Mr. Modra may offer testimony regarding the same. Mr. Modra may also provide testimony that was the subject of his previous deposition testimony or the subject of declarations/affidavits he has submitted in this action.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Christopher S. Morris, M.D.**
Department of Radiology
The University of Vermont Medical Center
111 Colchester Avenue
Burlington, VT 05401
802-847-8359

**Expert Witness**
**Subject Matter:** Dr. Morris is a medical doctor and is a Fellow of the Society of Interventional Radiology. He is certified in Radiology and holds a Certificate of Added Qualifications in Vascular and Interventional Radiology. Dr. Morris is a Professor of Radiology and Surgery at the College of Medicine at the University of Vermont.  Dr. Morris may provide expert testimony about the historical use, risks, and benefits of IVC filters; the health conditions that IVC filters are used to treat; alternate treatments for DVT and Pulmonary Embolism; and the medical literature related to IVC filters.  Dr. Morris will also testify regarding his personal experience placing and retrieving IVC filters, including Bard IVC filters, and specifically that Bard retrievable filters, including the G2 filter, are safe and effective.  He may respond to assumptions, opinions, and testimony offered by various Plaintiff's experts as they relate to the same. Dr. Morris is expected to offer opinions and testify consistent with his expert report(s) served in the MDL, and his previous deposition testimony.

**Mike Randall**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Mr. Randall is currently a Director of Research and Development for BPV. Mr. Randall may provide testimony regarding biomedical and biomechanical engineering generally, as well as testimony regarding the design, development, manufacture, testing, clearance, evolution, and use of Bard filters, specifically. Mr. Randall may also provide testimony that was the subject of his previous deposition testimony.

**Moni Stein, MD**
8121 Crossgate Ct N.
Dublin, OH 53217

**Expert Witness**
**Subject Matter:**  Dr. Stein is currently Chief of Intervention Radiology at Columbus Radiology Corporation-Radiology Partners.  Dr. Stein's qualifications and opinions and the basis of his opinions are disclosed in his expert reports and are also expected to be consistent with his deposition.

**John Van Vleet**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Mr. Van Vleet an employee of BPV. While at BPV, Mr. Van Vleet has been the Vice President of Regulatory and Clinical Affairs since 2007. Mr. Van Vleet may testify concerning any and all aspects of Bard's clinical affairs policies, procedures, and practices that are, or have been, in place with respect to Bard's IVC filters. Mr. Van Vleet may also testify regarding the regulatory clearance process and communications between the FDA and BPV. Mr. Van Vleet may also provide testimony that was the subject of his previous deposition testimony or the subject of declarations/affidavits he has submitted in this action.

Witnesses who may be called at trial (either live or by deposition):

**Anthony Avino, MD**
4750 Waters Ave. #500
Savannah, GA 31404
912-352-8346

**Fact Witness**
**Subject Matter:**  Dr. Avino is a physician who treated Plaintiff.  Bard expects he will provide testimony regarding that care and treatment and testimony that was the subject of his previous deposition.

**Bret Baird**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Mr. Baird is a former employee of BPV. While at BPV, Mr. Baird held various positions, including Marketing Manager. In those roles, Mr. Baird was involved with and has personal knowledge of, among other things, BPV's marketing strategies, policies, and practices with regard to certain of Bard's IVC filters. He may also provide testimony that was the subject of his previous deposition testimony.

**Brain Barry**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:**  Mr. Barry is a former employee of C.R. Bard. He may testify regarding the matters that were the subject of his employment with Bard and his deposition.

**Kevin Boyle**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Mr. Boyle is currently the Vice President of Research and Development for BPV. Mr. Boyle may testify about BPV's policies and procedures in place for its research and development of its products, including IVC filters. He may testify regarding the testing, development, and design of Bard's IVC filters. He may also provide testimony that was the subject of his previous deposition testimony.

**Paul Briant, Ph.D., P.E.**
Exponent
149 Commonwealth Drive
Menlo Park, CA 94025
650-326-9400

**Expert Witness**

**Subject Matter:** Dr. Briant is a mechanical engineer who specializes in mechanical engineering, solid mechanics, and finite element analysis (FEA) of structures, including medical devices. He is a Principal Engineer with Exponent Failure Analysis Associates. Dr. Briant may provide expert testimony on mechanical engineering, solid mechanics, and finite element analysis (FEA). He may respond to assumptions, opinions, and testimony offered by Plaintiff's expert Dr. McMeeking.  Dr. Briant is expected to offer opinions and testify consistent with his expert report(s) served in the MDL, and his previous deposition testimony.

**Robert Carr**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Mr. Carr is currently Vice President of International at BPV. He previously held the title of Senior Director of Research and Development at BPV, with responsibility for IVC filters. Mr. Carr may provide testimony regarding biomedical and biomechanical engineering generally, as well as testimony regarding the design, development, manufacture, testing, clearance, evolution, and use of Bard filters, specifically. Mr. Carr may also provide testimony that was the subject of his previous deposition testimony or the subject of declarations/affidavits he has submitted in this action.

**David Chodos**
Wake Forest University Baptist Medical Center
Medical Center Blvd.
Winston Salem, NC 27157
336-716-4507

**Fact Witness**
**Subject Matter:**  Dr. Chodos is a physician who treated Plaintiff.  He may testify about his care and treatment of Plaintiff and testimony that was the subject of his deposition taken in this case.

**David Ciavarella, M.D.**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Dr. Ciavarella is an employee of C. R. Bard, Inc. He is currently Vice President, Corporate Clinical Affairs at Bard, and he has held that title since he began working for C. R. Bard in 2004. Dr. Ciavarella may testify concerning any and all apsects of Bard's clinical affairs policies, procedures, and practices that are, or have been, in place with respect to Bard's IVC filters. Dr. Ciavarella may also provide testimony that was the subject of his previous deposition testimony.

Based on reports received by Bard, Dr. Ciavarella may also testify concerning the rates of complications with Bard's IVC filters and analyses performed by Bard regarding adverse event rates. Dr. Ciavarella may also testify that the complication rates reported to Bard remain below the guidelines established by the Society of Interventional Radiologists and Bard's action limits. He may also provide testimony that was the subject of his previous deposition testimony.

**Robert Cortelezzi**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Mr. Cortelezzi was an employee at BPV from approximately 1990 to 2008; he was a Regional Manager from 2004 through 2008.  He may testify regarding the matters that were the subject of his employment with Bard and his deposition taken on November 11, 2016, in the Bard IVC Filter MDL.

**Joni Creal**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP

49

201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Ms. Creal started with BPV in 2009. She is Associate Director of Regulatory Affairs. She may testify about BPV's overall regulatory strategy for its filter lines. She may also testify concerning other regulatory options considered by BPV when it determined the best approach to gain FDA clearance for its products. Ms. Creal may testify regarding communications between the FDA and BPV concerning the clearance process for its filters, and any communication between BPV and the FDA concerning these matters. Ms. Creal may also testify regarding BPV's response to requests from the FDA. Ms. Creal may also testify concerning BPV's decision to conduct clinical trials,  and the process and procedures for clinical trials and studies.

Ms. Creal may also testify regarding the steps that BPV took to ensure that the FDA was always abreast of complications, product improvements, and potential changes to IFUs for its filters. In this regard, Ms. Creal may testify regarding BPV's open and frank communications with the FDA and the FDA's appreciation for BPV's openness and honesty.

Ms. Creal may also testify concerning BPV and Bard's strong corporate policy against off-label marketing. In this regard, she may testify regarding the measures undertaken by BPV and Bard to ensure that employees of the corporations did not market any product off-label. Moreover, Ms. Creal may also testify concerning specific actions taken by BPV and Bard if and when they discovered off-label marketing. She may also testify about FAQs and Dear Doctor letters relating to filters and also patient brochures to the extent those become an issue in this case.

Ms. Creal may also testify concerning BPV and Bard's policies concerning monetary gifts and agreements to fund medical studies. She may also testify concerning how these policies reflect BPV and Bard's resolve to ensure that any gift or agreement complies with federal regulations. She may also testify about physician training programs relating to filters and Bard's relationships with certain physicians referred to as key opinion leaders. She may testify concerning FDA's warning letter to Bard regarding its IVC filters, and Bard's responses and actions conducted in response to that letter. Finally, she may testify about studies conducted by Bard relating to safety of its filters.

**Len DeCant**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Mr. DeCant is a former employee of BPV.  He served as Vice President of Research and Development from 2002 through 2007.  Mr. DeCant may testify regarding

any and all aspects of the design, development, testing, clearance, evolution, and use of Bard filters, including Bard's policies and procedures for design, testing, and evaluation of filters. Mr. DeCant may also provide testimony that was the subject of his previous deposition testimony.

**John DeFord**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter**: Dr. DeFord is currently Senior Vice President of Science, Technology and Clinical Affairs of C. R. Bard. Dr. DeFord may testify regarding any and all aspects of the design, development, testing, clearance, evolution, and use of Bard filters, including Bard's policies and procedures for design, testing, and evaluation of filters. Dr. DeFord may also provide testimony that was the subject of his previous deposition testimony.

**Mary Edwards**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Ms. Edwards is a former Vice President for Regulatory/Clinical  Affairs of BPV.  She may provide testimony regarding of the regulatory clearance process undertaken by BPV for the Recovery® Filter including the 510(k) processes and actions taken by BPV. Additionally, Ms. Edwards may testify concerning BPV's overall regulatory strategy for its filter lines, including the regulatory approach taken by BPV concerning the Recovery® Filter. In addition, Ms. Edwards may also testify concerning other regulatory options considered by BPV when it determined the best approach to gain FDA clearance for its new product. Ms. Edwards may testify regarding the regulatory history of Bard's filters, communications between the FDA and BPV concerning the Recovery® Filter, the clearance process for the Recovery® Filter, and post-clearance communications BPV had with the FDA while she was employed with BPV and testimony that was the subject of her depositions.

**Audrey Fasching, Ph.D., P.E.**
Anamet, Inc.
26102 Eden Landing Road, Suite 3
Hayward, CA 94545
510-887-8811

**Expert Witness**
**Subject Matter:** Dr. Fasching is a metallurgical engineer with experience in the areas of failure analysis, welding, heat treatment, corrosion and biomaterials, including nitinol. She

is a Senior Materials Engineer at Anamet. She may provide expert testimony about the properties and uses of nitinol in medical devices, industry standards for manufacture of medical device grade nitinol, her observations of the various filter conditions through examination of the filter at issue in this case and other Bard IVC filters. Dr. Fashing may respond to assumptions, opinions, and testimony offered by Plaintiff's expert Dr. McMeeking. Dr. Fasching is expected to offer opinions and to testify consistent with her expert report(s) served in the MDL, and her previous deposition testimony.

**David W. Feigal, M.D., M.P.H.**
11806 Barranca Road
Santa Rosa Valley, CA 93012
540-738-2550

**Expert Witness**
**Subject Matter:** Dr. Feigal is a medical doctor with a Master's Degree in Public Health in the fields of epidemiology and biostatistics. Dr. Feigal may provide expert testimony as an epidemiologist regarding the available resources for analysis of complications rates in IVC filters and the limitations of those resources in accurately reporting rates, predicting rates, or comparing rates of those devices. He may respond to assumptions, opinions, and testimony offered by various Plaintiff's experts as they relate to such analyses. Dr. Feigal is expected to offer opinions and testify consistent with his expert report served in the MDL, and his previous deposition testimony.

**Christopher Ganser**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Mr. Ganser is a retired employee of C. R. Bard who has worked for Bard for approximately twenty-two years, and retired in 2011. He held various positions while working for Bard, Vice President of Quality Assurance and Environmental Services and Safety. Mr. Ganser may testify concerning how such policies, procedures, and practices were developed, implemented and reviewed. Mr. Ganser may also testify concerning any and all aspects of Bard's quality control and field assurance practices and procedures that are, or have been, in place with respect to Bard's IVC filters as well as testimony that was the subject of his deposition.

**Holly Glass**
8280 Greensboro Drive, Suite 601
McLean, Va 22101
703-752-1115

**Fact Witness**
**Subject Matter:**  Ms. Glass was Vice President Government & Public Relations at C.R.

Bard from 2002 through 2009. She may testify regarding the matters that were the subject of her employment with Bard and her deposition taken on September 23, 2016, in the Bard IVC Filter MDL.

**Clement J. Grassi, M.D., FSIR**
18 Sussex Road
Winchester, MA 01890
617-732-7263

**Expert Witness**
**Subject Matter:** Dr. Grassi is a medical doctor and is a Fellow of the Society of Interventional Radiology. He is certified in Radiology and holds a Certificate of Added Qualifications in Vascular and Interventional Radiology. From 1985 to 2001, Dr. Grassi held positions of Clinical Fellow, Instructor, and Assistant Professor of Radiology at Harvard Medical School. He is currently affiliated with Hallmark Health and partners Healthcare System. Dr. Grassi may provide expert testimony about the historical use, risks, and benefits of IVC filters; the health conditions that IVC filters are used to treat; and his experience with the Society of Interventional Radiology, specifically including the history and use of the Quality Improvement Guidelines and Practice Parameters relating to IVC Filters that have been published by the SIR. He may also testify about the medical literature related to IVC filters. He may respond to assumptions, opinions, and testimony offered by various Plaintiff's experts as they relate to the same. Dr. Grassi is expected to offer opinions and testify consistent with his expert report served in the MDL, and his previous deposition testimony.

**Mickey Graves**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Mr. Graves is a Senior Research and Development Engineer with BPV. Mr. Graves may testify about BPV's policies and procedures in place for its research and development of its products, including IVC Filters. He may testify regarding the testing, development, and design of Bard's IVC Filters. He may also testify regarding the evolution of Bard's IVC Filters, including the fact that Bard is constantly evaluating the medical devices it sells, and it is constantly striving to improve the performance of those devices. He may also provide testimony that was the subject matter of his previous deposition testimony.

**Jason Greer**
Address unknown

**Fact Witness**
**Subject matter**: Mr. Greer was a Sales Representative and then District Manager at BPV

from 1999 through 2007.  He may testify regarding the matters that were the subject of his employment with Bard and his deposition.

**Kenneth Herbst, MD**
5761 LaJolla Hermosa Ave.
LaJolla, CA 92037

**Expert Witness**
**Subject Matter:**  Dr. Herbst is a hematologistDr. Stein's qualifications and opinions and the basis of his opinions are disclosed in his expert report and are also expected to be consistent with his deposition.

**Janet Hudnall**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
**Fact Witness**
**Subject Matter:** Ms. Hudnall is a former employee of BPV who worked for BPV from 1998 to 2008. While at BPV, Ms. Hudnall held various positions, including Senior Marketing Manager. In those roles, Ms. Hudnall was involved with and has personal knowledge of, among other things, BPV's marketing strategies, policies, and practices with regard to the Bard's IVC filter line of products. Ms. Hudnall may testify concerning BPV's marketing strategies, policies, and practices with regard to the Recovery® and G2® Filters.

Ms. Hudnall may also testify concerning the training provided by BPV to physicians to familiarize them with the implantation and retrieval of the G2® Filter. Ms. Hudnall may also testify concerning BPV's practices and policies regarding complaints that were communicated by users. Ms. Hudnall may also testify concerning BPV's decision to conduct a clinical trial, called the EVEREST Study, and issues and events associated with or related to the EVEREST Study. In this regard, Ms. Hudnall may testify concerning the selection and clearance process for securing investigators and investigation sites, the creation and development of the study protocol, the creation and development of the informed consent form, and the steps taken by BPV to ensure that the study ran properly and according to established guidelines. She may also provide testimony that was the subject of her previous deposition testimony.

**Brian Hudson**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Mr. Hudson has been an employee of BPV since 1999 as a Quality

Engineering Technician, a Senior Engineering Technician, and a Quality Engineer, Mr. Hudson may provide testimony regarding filter risk assessment and analysis, review of testing protocols and regulatory compliance data, and the creation of Failure Modes and Effects Analyses (FMEA) that assess the potential hazards related to filters and the mitigation of those hazards. He may also provide testimony that was the subject of his previous deposition testimony.

**Alfred Jones**
May be contacted through Plaintiff's counsel

**Fact Witness**

**Subject Matter:** Bard expects Mr. Jones to provide testimony consistent with his deposition given in this case.

**John Lehman, M.D.**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363

**Fact Witness**

**Subject Matter:** Dr. Lehman was Group Medical Director and Vice President of Medical Affairs for C.R. Bard from 1991 to 1995; he was a consultant and acting Medical Director for C.R. Bard in 2003 and 2004. He may provide testimony regarding the matters that were the subject of his work with Bard and his depositions.

**William Little**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Mr. Little is BPV's former Vice President of Global Marketing. He may provide testimony regarding BPV's marketing strategies, policies, and practices with regard to Bard's IVC filter line of products. He may also testify regarding communications by Bard to health care providers regarding its filters and changes or revisions to those communications over time. He may also provide testimony that was the subject matter of his previous deposition testimony.

**Judy Ludwig**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Ms. Ludwig is currently Senior Manager of Field Assurance at BPV. Ms. Ludwig may testify regarding any and all aspects of Bard's quality assurance processes

that are in place or that have been in place for Bard's retrievable IVC filters. Ms. Ludwig may testify regarding Bard's processes and procedures for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its filters. She may also testify to certain communications and inspections/audits with FDA.  To the extent that evidence related to the FDA Warning and 483 Letters is admitted, Ms. Ludwig may offer testimony regarding the same. Ms. Ludwig may also provide testimony that was the subject of her previous deposition testimony.

**Shanice Matthews**
May be contacted through Plaintiff's counsel

**Fact Witness**
**Subject Matter:** Bard expects Ms. Matthews to provide testimony consistent with her deposition given in this case.

**Sharese May**
May be contacted through Plaintiff's counsel

**Fact Witness**
**Subject Matter:** Bard expects Ms. May to provide testimony consistent with her deposition given in this case.

**John McDermott**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:**  Mr. McDermott was President of BPV from 1996 through 2006.  He may testify about matters that were the subject of his employment with Bard and his depositions.

**Patrick McDonald**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:**  Mr. McDonald is an employee of BPV as a Sales Representative and Field Sales Trainer. He may testify regarding the matters that were the subject of his deposition.

**Kristen Nelson, MD**
4750 Waters, Ave #500
Savannah, GA 31404
912-350-8346

**Fact Witness**

**Subject Matter:** Dr. Nelson is a physician who treated Plaintiff.  She may testify about her care and treatment of Plaintiff and testimony that was the subject of her deposition taken in this case.

**Daniel Orms**

May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter**:  Mr. Orms is a former employee of BPV.  He may testify about matters that were the subject of his employment with Bard and his depositions.

**Shari O'Quinn**

May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Ms. O'Quinn is a former employee of BPV who worked for BPV from 2003 to 2007. Ms. O'Quinn held three different positions while working for BPV, including Manager of Regulatory Affairs, Director of Regulatory Affairs, and Director of Regulatory and Clinical Affairs.  Ms. O'Quinn may testify concerning BPV's overall regulatory strategy for its filter lines, including the regulatory approach taken by BPV concerning the G2® Filter. Ms. O'Quinn may testify regarding communications between the FDA and Bard concerning Bard's filters. She may also testify concerning Bard's post-market activities concerning Bard's IVC filters, including investigations, and communications with FDA. She may also provide testimony that was the subject of her previous deposition testimony.

**Abithal Raji-Kubba**

May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Ms. Raji-Kubba was the Vice President of Research and Development for BPV. She was with the company from at least 2007 through 2011. She may testify regarding her involvement in and knowledge of the design modifications that were made to Bard's IVC filter line of products and the premarket testing that was conducted on the modified devices. She may also testify regarding her knowledge regarding why these design changes were needed and if and to what extent they made each IVC filter a safer device and could have been instituted sooner. She may also provide testimony that was the subject of her previous deposition testimony.

57

**Kimberly Romney**

May be contacted c/o Nelson Mullins Riley & Scarborough LLP

201 17th Street NW, Suite 1700, Atlanta, GA 30363

404-322-6000

**Fact Witness**

**Subject Matter:** Ms. Romney is currently the Senior Product Manager for C. R. Bard, Inc. She may provide testimony regarding BPV's marketing strategies, policies, and practices with regard to Bard's IVC filter line of products. Ms. Romney may also testify regarding communications by Bard to health care providers regarding its filters and changes or revisions to those communications over time. She may also provide testimony that was the subject of her previous deposition testimony.

**Gin Schulz**

May be contacted c/o Nelson Mullins Riley & Scarborough LLP

201 17th Street NW, Suite 1700, Atlanta, GA 30363

404-322-6000

**Fact Witness**

**Subject Matter:** Ms. Schulz is a former employee of C. R. Bard, Inc. While at C. R. Bard, Inc., Ms. Schulz was the Staff Vice President of Quality Assurance Operations. Prior to working in this capacity, she worked for BPV as a Vice President of Quality Assurance. Ms. Schulz may testify live at trial regarding any and all aspects of Bard's quality assurance processes that are in place or that have been in place for Bard's IVC filters. Ms. Schulz may testify regarding Bard's processes and procedures for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its filters. Ms. Schulz may also provide testimony that was the subject of her previous deposition testimony.

Based on reports received by Bard, she may also testify regarding the rates of complications with Bard's IVC filters and any analysis performed by Bard regarding adverse event rates. Ms. Schulz may also testify that the complication rates with Bard's commercially available filters (whether fracture, migration, perforation, or tilt) remain below the guidelines established by the Society of Interventional Radiologists and Bard's action limits. She may also testify that, upon receiving reports of adverse events, Bard was and has been proactive in investigating those reports and analyzing whether the risk of fracture for its products is in line with industry standards and guidelines, which it is and always has been. She may also provide testimony that was the subject of her previous deposition testimony.

**Christopher Smith**

May be contacted c/o Nelson Mullins Riley & Scarborough LLP

201 17th Street NW, Suite 1700, Atlanta, GA 30363

404-322-6000

**Fact Witness**

**Subject Matter:** Mr. Smith is a former employee of BPV. He may testify about matters that were the subject of his employment with Bard and his deposition.

**William Stavropoulos, MD**

May be contacted c/o Samantha Conway, Christie & Young, P.C.
1880 John F. Kennedy Blvd, 10th Floor
Philadelphia, PA 19103

**Fact Witness**

**Subject matter:** Dr. Stavropoulos was the principal investigator for his facility on the EVEREST study. He has written articles concerning IVC filters. Additionally, Dr. Stavropoulos may testify regarding his clinical experience with IVC filters such as his experience with and techniques for placing and retrieving IVC filters, as well as indications for the use of IVC filters. He may also testify regarding the advantages of retrievable IVC filters. He may discuss the benefits, risks, and potential complications of IVC filters, such as migration, fracture, and perforation, and the imaging and other evaluation of those events and their clinical significance, if any. He may also testify regarding the MAUDE database and whether it can be used to determine the fracture rate of a medical device. He may also discuss the dynamic nature of the IVC as well as the body's reaction to and endothelialization of IVC filters. He may also testimony about matters that were the subject of his deposition.

**Jack Sullivan**

May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter**: Mr. Sullivan was a former Regional Sales Manager for BPV from 2005 to 2013. Prior to 2005, he held other sales positions with BPV. He may testify about BPV's sales practices and procedures, and the sales person's role in interacting with a doctor and the responsibility of sales people to report adverse events as well as about matters that were the subject of his depositions..

**Melanie Vilece Sussman**

May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Ms. Sussman is a former employee of BPV. She may testify about matters that were the subject of her employment with Bard and her deposition.

**Mehdi Syed**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Mr. Syed is the current Vice President of Operations Finance at C. R. Bard, Inc. Mr. Syed may testify about the net worth of BPV and C. R. Bard, Inc., as well as the percentage of Bard's revenue attributable to BPV and filter products specifically. Mr. Syed may also testify about the nature of Bard's shareholders and the process and rationale behind dividend payments. He may also provide testimony that is the subject of his deposition.

**Colleen Taylor MD**
5353 Reynolds St.
Savannah, GA 31405
912-819-5999

**Fact Witness**
**Subject Matter:** Dr. Taylor is a physician who treated Plaintiff.  She may testify about her care and treatment of Plaintiff and testimony that was the subject of her deposition taken in this case.

**Alex Tessmer**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Mr. Tessmer is a Product Manager at BPV. Mr. Tessmer was previously employed by BPV as an engineer between 1997 and June 2005. In that position, Mr. Tessmer contributed to filter product development occurring during the period 2002 to June 2005. He may provide general testimony regarding mechanical engineering and specific testimony regarding product design, technology development, and materials testing. He may also provide testimony that was the subject of his previous deposition testimony.

**Ronald A. Thisted, Ph.D.**
Office of the Provost
The University of Chicago
Levi Hall, Room 432
5801 South Ellis Avenue
Chicago, IL 60637
773-702-5539

**Expert Witness**

**Subject Matter:** Dr. Thisted is a Professor in the Department of Public Health Sciences, the Department of Statistics, the Department of Anesthesia & Critical Care, the Undergraduate College, and the Committee on Clinical Pharmacology and Pharmacogenomics at the University of Chicago. He is an expert in the fields of statistics, biostatistics, mathematics, and epidemiology. He may respond to assumptions, opinions, and testimony offered by various Plaintiff's experts as they relate to the same. Dr. Thisted is expected to offer opinions and testify consistent with his expert report served in the MDL, and his previous deposition testimony.

**Donna-Bea Tillman, Ph.D., MPA, FRAPS**
Biologics Consulting
400 N. Washington Street, Suite 100
Alexandria, Virginia 22314
703-739-5695

**Expert Witness**
**Subject Matter:** Dr. Tillman may provide expert testimony concerning FDA regulatory requirements, FDA regulatory compliance, the FDA clearance process, and post-clearance monitoring requirements. Dr. Tillman may further testify about the specific steps Bard followed to obtain FDA clearance of its IVC filters, and Bard's compliance with post-clearance monitoring requirements. To the extent that evidence related to the FDA Warning and 483 Letters is admitted, Dr. Tillman may testify regarding the same. Dr. Tillman is expected to offer opinions and testify consistent with her expert report(s) served in the MDL, and her previous deposition testimony.

**Scott Trerotola, MD**
May be contacted c/o Samantha Conway, Christie & Young, P.C.
1880 John F. Kennedy Blvd, 10th Floor
Philadelphia, PA 19103

**Fact Witness**
**Subject Matter:** Dr. Trerotola may testify regarding his clinical experience with IVC filters such as his experience with and techniques for placing and retrieving IVC filters, as well as indications for the use of IVC filters. He may also testify regarding the advantages of retrievable IVC filters. He may discuss the benefits, risks, and potential complications of IVC filters, such as migration, fracture, and perforation, and the imaging and other evaluation of those events and their clinical significance, if any. He may also discuss the dynamic nature of the IVC as well as the body's reaction to and endothelialization of IVC filters. He may also provide testimony that was the subject of his previous deposition testimony.

**Doug Uelman**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Mr. Uelmen was employed by Bard from 1996 to 2005 as Vice President for Quality Assurance. Prior to working in that capacity, Mr. Uelmen was BPV's Director of Quality Assurance. Mr. Uelmen may testify regarding any and all aspects of Bard's quality control processes that are in place or that have been in place for Bard's IVC filters. Mr. Uelmen may testify regarding Bard's processes and procedures for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its filters. He may also provide testimony that was the subject of his previous deposition testimony.

**Carol Vierling**

May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter**: Ms. Vierling is a former employee of BPV who held the position of Director of Regulatory Affairs from 1992 through June 2002. Ms. Vierling may also testify regarding the 510(k) submission submitted by Bard to the FDA for the Recovery® Filter in 2002. In this regard, she may testify regarding her signing of the Truthfulness and Accuracy Statement included in that submission. She may also testify regarding the cover letter to the FDA that accompanied the 510(k) submission, why it identified Kay Fuller as the new FDA contact person for this device, how she signed that cover letter, and why she signed the cover letter in the manner that she did. She may also testify to her interactions with Kay Fuller and that Ms. Fuller never expressed any concerns to her regarding the Recovery® Filter 510(k) submission, the testing of that device, the safety or efficacy of that device, or the Asch clinical study regarding that device. She may also provide testimony that was the subject of her previous deposition testimony.

**Bryan Vogel**

May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Mr. Vogel is a Principal Clinical Assurance Specialist at BPV. He may testify regarding his role and Bard's processes, procedures, and practices for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its filters. He may also testify regarding the qualifications and training of BPV's Field Assurance personnel. He may also provide testimony that was the subject matter of his previous deposition testimony.

**John Weiland**

May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363

404-322-6000

**Fact Witness**
**Subject Matter:** Mr. Weiland is a retired President and Chief Operating Officer of Bard. He may testify regarding the matters that were the subject of his deposition.

**John Wheeler**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:** Mr. Wheeler is a former Field Assurance Engineering Manager at BPV. He may testify regarding Bard's processes, procedures, and practices for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its filters. He may also testify regarding the qualifications and training of BPV's Field Assurance personnel. He may also testify regarding BPV's tracking and trending of complaints regarding Bard IVC filters. He may also provide testimony that was the subject matter of his previous deposition testimony.

**Steve Williamson**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject Matter:**  Mr. Williamson is the current President of BPV. Mr. Williamson may testify concerning BPV's broad and overarching policies as a company and specifically concerning Bard's IVC filters, including, but not limited to, the companies' business practices, research and development, manufacturing, marketing and sales policies, and regulatory strategies and policies. He may also provide testimony that was the subject of his previous deposition testimony.

**Mark Wilson**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**
**Subject matter:** Mark Wilson was the Director of Sales, Training, and Development at C.R. Bard, Inc. from 2004 to 2011. Mr. Wilson may provide testimony regarding Bard's sales practices and procedures. He may also testify regarding training programs for Bard's sales personnel. He may also provide testimony that was the subject of his previous deposition.

**Natalie Wong**

May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000

**Fact Witness**

**Subject Matter:** Ms. Wong is an employee of BPV. She began working for the company in 2002 and has been the Quality Engineering Manager in Field Assurance since 2007. Prior to working in this capacity, she worked for BPV as a Senior Quality Engineer. Ms. Wong may testify regarding any and all aspects of Bard's quality control and field assurance processes that are, or have been, in place for Bard's IVC filters. Ms. Wong may testify regarding Bard's processes and procedures for adverse complaint handling, complaint investigation, trending analysis, root cause analysis, data integrity audits, and design failure mode analysis relating to Bard's IVC filters.

Based on reports received by Bard, she may also testify regarding the rates of complications with Bard's IVC filters and analyses performed by Bard regarding adverse event rates.  She may also provide testimony that was the subject of her previous deposition testimony.

**F.   LIST OF EXHIBITS**

1.   The parties have listed exhibits on their exhibit lists subject to pending motions in limine and other rulings by the Court.  By listing exhibits, the parties do not contend that the exhibits are necessarily admissible and do not intend to waive any objection they have to the admissibility of the same.

2.   The parties have met and conferred on the issue of exchanging and providing to the Courtroom Deputy Clerk with impeachment exhibits 48 hours in advance of the trial.  The parties agree that they would like to provide those to the Courtroom Deputy Clerk only 24 hours in advance of the witness testifying, and pursuant to the Court's instructions that they be in a sealed envelope.

3.   The following Exhibit Lists are attached hereto:

Exhibit A – Plaintiff's Exhibit List with Defense Objections; Exhibit B – Defendants' Additional Exhibit List with Plaintiff's and Defendants' Objections.

   a.   <u>Defendants' Contention</u>: Many of the documents listed as potential exhibits were produced by Defendants subject to a Protective Order (Dkt.

268 and 269). Throughout this litigation the parties have been filing and moving to seal certain documents pursuant to that Order. However, the Protective Order does not cover the use of documents as exhibits at trial. (See, Dkt 268, Para, 28). Defendants raise this issue to preserve it. Until the exhibits are admitted, Defendants do not know which exhibits, if any, they need to move to seal. Defendants request that the exhibits be maintained by the Court reporter and not made available publicly throughout the trial and until the Court rules on any motion to seal, and that the Court set a briefing schedule for a post-trial briefing schedule on a motion to seal. Bard requests the same procedure as was implemented by the Court in *Booker*, that the motion be filed 21 days after the last transcript is placed on the docket. See, Dkt. 10768

b.      Plaintiff's Contention: Plaintiff disagrees with this request and contends the exhibits are public record at the time admitted into evidence. There is a strong presumption towards public access to judicial records. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir.2006); A motion to seal transcripts and evidence adduced at trial must satisfy the "compelling reasons" test, because a trial is a dispositive proceeding. *In re Elec. Arts, Inc.*, 298 Fed. App'x 568, 569 (9th Cir. 2008). Judicial records attached to dispositive motions must meet the "compelling reasons" standard in order for those documents to be sealed. *Kamakana*, 447 F.3d at 1180.

4.      The following exhibits are admissible in evidence and may be marked in evidence by the Clerk:

The parties continue to meet and confer regarding exhibits and will attempt to stipulate to the admission of exhibits in advance of trial.

5.      As to the following exhibits, the parties have reached the following stipulations:

65

a.      Plaintiff's Exhibits:

The following records are stipulated to be authentic and satisfy the business

records exception, but the parties reserve all other available objections:

        (i)      Plaintiff's medical records and bills;

        The parties have met and conferred and Plaintiff have agreed that

        Plaintiff will not object to her medical records collected by Marker

        Group on the basis of FRE 802 and require Defendants to prove the

        exception under FRE 803(4).  Plaintiff reserves her right to object to

        such records on the basis of FRE 402, 403, hearsay within hearsay,

        and any other evidentiary basis.

b.      Defendants' Exhibits:

The following records are stipulated to be authentic and satisfy the business

records exception, but the parties reserve all other available objections:

The parties have met and conferred and Bard has reiterated its position that

it will not object to exhibits that are regularly kept business records on the

basis of FRE 802, and require Plaintiff to prove the exception under Rule

803(6).  When Plaintiff provides Defendants with the exhibit list for each

witness at trial, Defendants will identify the exhibits to which this

agreement applies.   However; Plaintiff has taken the position that

Defendants have agreed that all documents that were produced by

Defendants in this litigation are business records of Bard.  While the vast

majority of the documents produced are Bard's business records,

Defendants also produced documents it obtained from third parties through

the course of discovery and other documents that are not Bard's regularly

kept business records.

6.      As to the following exhibits, the party against whom the exhibit is to be

offered objects to the admission of the exhibit and offers the objection stated

below:

a.  Plaintiff's Exhibits: *See* attached Exhibit A.

b.  Defendants' Exhibits: *See* attached Exhibit B.

The parties shall submit their exhibit lists in writing, five days before trial, in a format to be designated by the Court at the Final Pretrial Conference, in WordPerfect® 9.0 format either by email to Nancy_Outley@azd.uscourts.gov or on an IBM-compatible computer disk.

7.  Each party hereby acknowledges by signing this joint Proposed Final Pretrial Order that any objections not specifically raised herein are waived.

## G.   DEPOSITIONS TO BE OFFERED

1.  Pursuant to this Court's minute entry of April 20, 2018, the parties have submitted their respective deposition designations to the Court on <u>April 23, and April 30, 2018</u>.  Additional designations for witnesses potentially affected by the Court's ruling related to cephalad migration deaths will be submitted in conformity with any Order issued by the Court at the Final Pretrial Conference on May 4, 2018.  After all designations are submitted to the Court, the parties will file their lists of their designations for the record.

2.  The parties have included deposition designations subject to pending motions in limine and other rulings by the Court.  By making those designations the parties do not contend that the testimony is necessarily admissible and do not intend to waive any objection they have to the admissibility of the same.

3.  In addition to the depositions submitted to the Court, the parties reserve the right to play the video of any deposition for which the parties exchanged designations and that were ruled on in the *Booker* case or for which there are no objections.

4.  The parties agree to exchange for review and final cuts, the videos and transcripts of any video deposition to be played at trial at least 48 hours before it is played, and to have the video and transcript finalized at least 24 hours before it is played.

5.  <u>Issues of Dispute with Respect to Deposition Designations.</u>

a.  <u>Dr. Rogers, Dr. Brauer, and Dr. Moritz.</u>

1    <u>Defendant's position:</u> Plaintiff has indicated that she intends to play the

2    video depositions of Dr. Rogers, Christine Brauer, PhD, and Dr. Moritz.

3    Those witnesses are retained experts who Bard does not intend to call at

4    trial.   Bard has asserted objections to the designations that indicate that the

5    witness was retained by Bard in violation of the Court's prior ruling and

6    under FRE 403.  Bard objects to the playing of those depositions as they are

7    cumulative and the testimony can be obtained from other witnesses.  Bard

8    requests that Plaintiff be required to make the showing established by the

9    Court in the *Booker* trial before any of those depositions are played.  See.

10   Dkt   10382

11   <u>Plaintiff's position</u>: This Court has previously ruled that Plaintiff in the

12   *Booker* case may utilize the testimony of these witnesses; Plaintiff intends to

13   do so in the same manner as in the *Booker* case.

14          b.      <u>Dr. Stein</u>

15   <u>Defendants' position:</u> Plaintiff has also indicated that she intends to play the

16   video deposition of Dr. Stein, an expert retained by Bard, and who Bard

17   intends to call live at trial.  As a result, Plaintiff will have the opportunity to

18   examine Dr. Stein and the playing of his deposition is cumulative.

19   <u>Plaintiff's position</u>: Plaintiff has not retained Dr. Stein and cannot compel

20   Dr. Stein to appear in Plaintiff's case in chief.  As such, Dr. Stein is

21   unavailable and Plaintiff intends to play designated deposition testimony.

22   **H.    MOTIONS IN LIMINE (JURY TRIAL)**

23          All motions in limine have been filed, and fully briefed. Those that have not yet

24   been ruled on are set forth in Section I, below.

25   **I.    LIST OF PENDING MOTIONS**

26          1.    The parties have filed and fully briefed motions in limine.

27   **J.    PROCEDURES FOR EXPEDITING TRIAL**

28          The parties agree to the following procedures that might expedite trial to the extent

possible:

1.    At least 24 hours before the video is to be played, meet and confer on a stipulated summary of work history and professional background and qualifications of witnesses called via deposition rather than using deposition excerpts.  ;

2.    Using summary exhibits in place of voluminous documentary evidence. The parties agree to meet and confer and establish a time for a summary exhibit is going to be used to provide the proposed summary exhibit to opposing counsel;

3.    stipulations on authenticity and foundation; and

4.    using the courtroom technology to expedite the presentation of evidence.

## K.    ESTIMATED LENGTH OF TRIAL

28 hours for Plaintiff.

27 hours for Bard,

Bard objects to any additional time being added to the trial after the entry of this Pretrial Order.  In the Booker case, Bard made strategic decisions based on the time allocated by the Court from the very outset of trial.  Those strategic decisions included, but were not limited to, determining the amount of time to spend on the cross-examination of several of the plaintiff's principal experts.  As just one example of the Defendants' efforts to budget their time, they spent only 30 minutes cross-examining the Plaintiff's expert Dr. Robert McMeeking, even though he was the only witness presented by the Plaintiff that directly supported her claim that the filter at issue was defectively designed.  The Defendants believe that the Court's decision to afford the plaintiff additional time in Booker, while certainly within the Court's discretion, unfairly penalized the Defendants for abiding by the limitations set by the Court and caused prejudice (particularly given how the Plaintiff squandered the time originally provided with repetitive questioning and the frequent focus on collateral issues).  See, e.g.,*Amarel v. Connell*, 102 F.3d 1494, 1514 (9th Cir. 1996), *as amended* (Jan. 15, 1997); see also *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1509 (9th Cir. 1995) (noting

unfairness to defendant in providing plaintiff additional time after defendant had
already made strategic decisions based on the court's original allocation).

Plaintiffs' response: Bard's argument is based on a false premise. Bard was not
prejudiced in the *Booker* trial by the plaintiff's use of time; Bard rested with
significant time left on its clock. It is simply not the case that Bard was required to
use time in response to the plaintiff's need for additional time in that trial. Second,
Bard's witnesses as well as Bard's unwillingness to stipulate to the admission of its
business records were a significant factor in the amount of time the plaintiff was
required to use in the *Booker* trial. Absent those issues, Plaintiff's counsel believes
that Ms. Booker's trial team would not have required additional time. Further,
Bard's claim that Plaintiff's use of time impacted its strategy is simply not true.
Bard points to its decision to cross examine Dr. McMeeking for only 30 minutes.
But Dr. McMeeking testified on the third day of trial; Plaintiff did not ask the
Court for additional time until the next week of trial. Nothing precluded Bard from
using equal time on cross examination or from asking for additional time during
trial commensurate to the plaintiff.

Regardless, Bard's "motion" here is premature. Plaintiff endeavors to complete her
case within the time allotted. Plaintiff also believes that Bard's stipulation at the
April 13, 2018, pretrial conference that its documents are business records in
combination with the parties' meet and confer regarding exhibits will resolve some
of the time issues that plagued the *Booker* trial. The issue of whether or not
additional time may or should be awarded is something this Court should not pre-
judge or decide in a vacuum. A decision without regard to how trial would
implicate Plaintiff's right to due process.

**L.    JURY DEMAND**

A jury trial has been requested.

1.     The parties stipulate that the request was timely and properly made;

**M.    JOINT PROPOSED JURY INSTRUCTIONS, JOINT PROPOSED VOIR DIRE QUESTIONS, AND PROPOSED FORMS OF VERDICT FOR JURY TRIALS**

The joint Proposed Jury Instructions, joint Proposed Voir Dire Questions, and Proposed Forms of Verdict shall be filed in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

**N.    CERTIFICATIONS**

The undersigned counsel for each of the parties in this action does hereby certify and acknowledge the following:

1.    All discovery has been completed.

2.    The identity of each witness has been disclosed to opposing counsel.

3.    Each exhibit listed herein: (1) is in existence; (2) is numbered; and (3) will be disclosed and shown to opposing counsel at a later date mutually agreeable to the parties. The parties agree demonstrative exhibits will be exchanged or made available for inspection at a later date agreed to by the parties.

4.    The parties agree and stipulate that the statement of the case used in the juror questionnaire approved by the Court is to be used as the parties' joint statement of the case.

5.    The parties have complied in all respects with the mandates of the Court's Rule 16 Scheduling Order and Order Setting Final Pretrial Conference.

6.    The parties have made all of the disclosures required by the Federal Rules of Civil Procedure (unless otherwise previously ordered to the contrary).

7.    The parties acknowledge that once this Proposed Final Pretrial Order has been signed and lodged by the parties, no amendments to this Order can be made without leave of Court.

## O.    INFORMATION FOR COURT REPORTER

In order to facilitate the creation of an accurate record, the Parties will file a "Notice to Court Reporter" one week before trial containing the following information that may be used at trial:

1.    Proper names, including those of witnesses.

2.    Acronyms.

3.    Geographic locations.

4.    Technical (including medical) terms, names or jargon.

5.    Case names and citations.

6.    Pronunciation of unusual or difficult words or names. The parties will also send to the court reporter a copy of the concordance from key depositions.

Respectfully submitted this 1st day of May 2018.

GALLAGHER & KENNEDY, P.A.

By: *s/Mark S. O'Connor*
    Mark S. O'Connor
    Paul L. Stoller
    2575 East Camelback Road
    Phoenix, Arizona 85016-9225

    Ramon Rossi Lopez
    (admitted *pro hac vice*)
    CA Bar No. 86361
    LOPEZ McHUGH LLP
    100 Bayview Circle, Suite 5600
    Newport Beach, California 92660

    *Attorneys for Plaintiffs*

SNELL & WILMER L.L.P.

By: *s/Kate Helm (w/permission on behalf of)*
    James R. Condo
    Amanda C. Sheridan
    One Arizona Center
    400 E. Van Buren, Suite 1900
    Phoenix, Arizona  85004-2202

    Richard B. North, Jr. (admitted *pro hac vice*)
    Georgia Bar No. 545599
    James Rogers (admitted *pro hac vice*)
    South Carolina Bar. No. 012942
    Elizabeth C. Helm (admitted *pro hac vice*)
    Georgia Bar No. 289930
    Matthew B. Lerner (admitted *pro hac vice*)
    Georgia Bar No. 446986
    Nelson Mullins Riley & Scarborough LLP
    201 17th Street, NW / Suite 1700
    Atlanta, GA  30363

    *Attorneys for C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Based on the foregoing,

**IT IS ORDERED** that this Proposed Final Pretrial Order jointly submitted by the parties is hereby **APPROVED** and **ADOPTED** as the official Pretrial Order of this Court.

DATED this ___ day of _____, 2018.

_____
David G. Campbell
United States District Judge