1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX-DGC |
| _____ | |
| Doris Jones, an individual, | No. CV-16-00782-PHX-DGC |
| Plaintiff, | |
| v. | |
| C. R. Bard, Inc., a New Jersey corporation; and Bard Peripheral Vascular, Inc., an Arizona corporation, | **ORDER** |
| Defendants. | |

The case brought by Plaintiff Doris Jones has been selected as one of several bellwether cases and is set for trial this month. The parties have filed various motions in limine ("MIL") in advance of trial. This order will rule on those motions.

**I.    Background.**

In August 2010, before gastrointestinal surgery, Plaintiff was implanted with a Bard Eclipse filter due to recurrent deep vein thrombosis. Five years later, Plaintiff went to the emergency room with complaints of lightheadedness and arm pain. A chest scan revealed a fractured filter limb that had embolized in her right pulmonary artery. The filter was removed, but the fractured filter limb remains in place.

Plaintiff alleges that Bard filters are more dangerous than other IVC filters because they have higher risks of complications, including fracture. Plaintiff further alleges that Bard failed to warn physicians and patients about these higher risks. Plaintiff asserts various state law claims under Georgia law. The following claims remain for trial: design defect, failure to warn, and punitive damages. *See* Docs. 10404, 10732.

**II. Discussion.**

    **A. Plaintiff's MILs Nos. 1-3 (Other Medical Issues).**

Plaintiff has filed three motions seeking to exclude evidence of purported unrelated medical issues under Rules 402 and 403: (1) her anemia, hypertension, and vitamin B12 deficiency, and her alleged failure to take prescribed medications for those conditions; (2) her use of nonsteroidal anti-inflammatory drugs ("NSAIDs") and failure to follow medical advice against the use of those drugs; and (3) her treatment from Dr. Colleen Taylor for gastric bleeding in March 2016. Docs. 10813-15. Plaintiff contends that this evidence is not relevant to any issue in this case, and that any probative value is substantially outweighed by the danger of unfair prejudice and juror confusion.

        **1. Anemia, Hypertension, B12 Deficiency, and Prescriptions.**

When doctors discovered in April 2015 that Plaintiff's Eclipse filter had fractured, they also found that she was anemic, had a B12 deficiency, and suffered from hypertension. Doc. 10814 at 2. Dr. Kristen Nelson, an interventional radiologist, took charge of Plaintiff's care for the fractured filter, and Dr. David Chodos prescribed medications for Plaintiff's other conditions. *Id.* Plaintiff contends that evidence concerning those other conditions and her inability to obtain the prescriptions due to her limited access to healthcare is irrelevant and unfairly prejudicial. *Id.* at 2-3.

Defendants contend that Plaintiff's anemia is relevant to the issues of causation and damages, but make no such argument with respect her hypertension and B12 deficiency. Doc. 10905 at 1-2. The Court will **grant** the motion in limine on her hypertension and B12 deficiency. Defendants are precluded from presenting evidence or argument about Plaintiff's hypertension and B12 deficiency and her alleged failure to

take prescribed medications for those conditions.

Evidence of Plaintiff's anemia is relevant to causation and damages. Under Georgia law, "evidence concerning a plaintiff's 'other' injuries may be admissible to show that the injuries currently at issue are not the result of the defendant's alleged negligence." *Lindsey v. Turner*, 631 S.E.2d 789, 791 (Ga. Ct. App. 2006) (citing *Wages v. Sibran, Inc.*, 318 S.E.2d 679, 680 (Ga. Ct. App. 1984)); *see Kilday v. Kennestone Physicians Ctr., L.P.*, 676 S.E.2d 271, 273 (Ga. Ct. App. 2009) (same). In this case, Plaintiff claims that her tiredness is related to the Eclipse filter fragment lodged in her pulmonary artery. Doc. 10900-1 at 3. But Dr. Chodos has testified that one of the primary symptoms of anemia is fatigue (Doc. 10905-4 at 3), and Plaintiff complained of fatigue even before she received the filter implant (Doc. 10902-2 at 2). Given this evidence, Plaintiff's anemia is relevant to whether the filter fragment is a proximate cause of her fatigue, and the amount of any damages award based on fatigue. The Court will **deny** the motion in limine with respect to evidence of Plaintiff's anemia. *See Lindsey*, 631 S.E.2d at 791; *Levine v. Choi*, 522 S.E.2d 673, 674 (Ga. Ct. App. 1999) ("Evidence that plaintiff's injuries were pre-existing is sufficient for a jury to find the accident did not proximately cause the injuries."); *Blosfield v. Hall*, 511 S.E.2d 196, 197-99 (Ga. Ct. App. 1999) (affirming judgment for the defendant on a negligence claim where he presented evidence that the plaintiff's injuries were not caused by the accident).

Defendants also assert that evidence of Plaintiff's failure to take prescribed medication for her anemia is relevant to causation. Doc. 10905 at 3. The Court agrees, but, as noted below, will allow evidence of Plaintiff's inability to pay for the medication if Defendants pursue this line of defense.

On a related matter, Defendants do not assert a comparative negligence defense. Docs. 10930, 10932; *see* Ga. Code. Ann. § 51-12-33(a); Ga. Pattern Jury Instruction § 60.141. Defendants do request a jury instruction on the duty to mitigate damages, but they do not raise this as a disputed issue in the proposed pretrial order. Docs. 10930-4 at 13, 10932 at 12-13. The parties should be prepared at the final pretrial conference to

discuss whether failure to mitigate damages will be asserted in this case.

### 2. Use of NSAIDs and March 2016 Treatment from Dr. Taylor.

Plaintiff suffers from migraine headaches. Doc. 10813 at 2. Against the advice of her doctors, she treats the headaches with NSAIDs such as Ibuprophen and "Goody's" headache powder. *Id.* Plaintiff also suffers from ulcers and gastric bleeding, and the use of NSAIDs exacerbates this condition. *Id.* In March 2016, Plaintiff was treated by Dr. Taylor for gastric bleeding that was caused in part by her use of NSAIDs. *Id.*; Doc. 10815 at 2.

Various medical records and physician testimony designated by Defendants, including testimony from Dr. Taylor, concerns Plaintiff's failure to follow medical advice with respect to the use of NSAIDs. Plaintiff contends that there is no evidence that taking NSAIDs impacted the Eclipse filter or the fragment that remains in her pulmonary artery, and that her use of the drugs is not related to any of her claims or injuries. Doc. 10813 at 2-3. Plaintiff claims that Defendants seek to present the evidence in an attempt to portray her as irresponsible and somehow at fault for her condition. *Id.*; *see* Doc. 10815 at 3.

Defendants counter that Plaintiff's medical conditions are interrelated and she placed the conditions at issue when she filed suit. Doc. 10902 at 1-2. Defendants claim that the gastric bleeding caused by Plaintiff's use of NSAIDs is one of the reasons she cannot take anticoagulants, thereby increasing the risk of future clotting. Doc. 10908 at 2. Defendants claim that they should be allowed to cross-examine Plaintiff's expert witnesses about whether she can take anticoagulants if she stops using NSAIDs, and that it is for the jury to decide whether her use of the drugs contributed to her current condition. *Id.* at 3; 10902 at 3.

As noted above, however, Defendants do not assert the defense of comparative negligence. Thus, whether Plaintiff contributed to her need for the filter is not relevant. And Plaintiff has made clear that her injuries related to the filter do not include her gastrointestinal problems or any of the symptoms for which she obtained treatment from

Dr. Taylor. Doc. 10815 at 2. Given this position, it is irrelevant whether Plaintiff failed to mitigate those conditions.

The motions in limine (Docs. 10813, 10815) are **granted**. Defendants are precluded from presenting evidence or argument about Plaintiff's use of NSAIDs and any testimony from Dr. Taylor regarding the same.[1]

### B. Plaintiff's MIL No. 4 (Tobacco Use).

Plaintiff seeks to exclude evidence that she smokes cigarettes. Doc. 10816. Plaintiff admits to smoking about a half-pack a day for the past 20-30 years, but claims that evidence of this habit is irrelevant and carries the risk of unfair prejudice. *Id.* at 1-3; Doc. 10905-2 at 2. Defendants argue that the jury should be entitled to consider whether smoking is a cause of Plaintiff's shortness of breath. Doc. 10911 at 2. Defendants further argue that they should be allowed to cross-examine Plaintiff's experts on whether smoking is an independent risk factor for pulmonary embolism, and whether smoking was accounted for in determining Plaintiff's normal life expectancy. *Id.* at 2-3. The Court agrees with Defendants in part.

Plaintiff claims her shortness of breath is related to the Eclipse filter fragment in her pulmonary artery. Doc. 10909-1 at 3. But Dr. Taylor prescribed an Albuterol bronchodilator inhaler for Plaintiff's shortness of breath in part because of her "long history of smoking." Doc. 10911-2 at 3-4. This evidence is directly relevant to Plaintiff's claim that the filter fragment is the cause of her shortness of breath.

Plaintiff contends that Defendants should be barred from presenting evidence that she smokes because they have no expert to opine that smoking has caused any of her symptoms. Doc. 10816 at 3. Under Georgia law, issues of causation generally "are for the jury to resolve . . . except in plain and undisputed cases." *Ogletree v. Navistar Int'l Transp. Corp.*, 535 S.E.2d 545, 548 (Ga. Ct. App. 2000). Expert testimony is required

---

[1] Plaintiffs contend that any failure on her part to seek follow-up care from Dr. Taylor's treatment is irrelevant. Doc. 10815 at 3. This issue is moot because Defendants do not intend to present Dr. Taylor's testimony on this topic. Doc. 10908 at 1 n.1.

to establish causation only where medical questions are involved and the causal link "cannot be determined from common knowledge and experience." *Nixon v. Pierce Cty. Sch. Dist.*, 746 S.E.2d 225, 228 (Ga. Ct. App. 2013) (citation omitted).

It is common knowledge that long-term smoking can cause shortness of breath and shorten a person's life expectancy. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 138 (2000) (finding that "the adverse health consequences of tobacco use [are] well known," including that "cigarette smoking causes . . . chronic bronchitis and emphysema"); *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1194 (11th Cir. 2004) (ordinary consumers "with access to knowledge common to the community, could not be unaware of the dangers of smoking"); *Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263, 273 (D.R.I. 2000) (taking judicial notice of "the community's common knowledge of the general disease-related health risks of smoking"); *Johnson v. Brown & Williamson Tobacco Corp.*, 122 F. Supp. 2d 194, 204 (D. Mass. 2000) ("[T]his Court is firmly convinced that the risks of smoking were quite clear to the population at large before 1969."); *Paugh v. R.J. Reynolds Tobacco Co.*, 834 F. Supp. 228, 231 (N.D. Ohio 1993) ("[T]he risks of smoking are an inherent characteristic of cigarettes, and . . . knowledge of these risks has been common to the community since well before 1966.").

The same cannot be said, however, with respect to pulmonary embolism. Defendants cite a medical article published in late 2013 for the proposition that smoking is a risk factor for pulmonary embolism, but the article makes clear that this theory "remains controversial."[2] Defendants have not shown that the causal link between smoking and pulmonary embolism can be "determined from common knowledge and experience." *Nixon,* 746 S.E.2d at 228. Nor have Defendants identified an expert who will testify to this causal link.

The motion in limine (Doc. 10816) is **granted in part and denied in part**. Defendants will not be permitted to present evidence or cross-examine Plaintiff's experts

---

[2] *See Current and Former Smoking and Risk for Venous Thromboembolism: A Systematic Review and Meta-Analysis*, http://journals.plos.org/plosmedicine/article?id= 10.1371/journal.pmed.1001515 (last visited May 2, 2018).

on whether smoking contributes to the risk for pulmonary embolism. Defendants may, however, present evidence to show that smoking is a cause of Plaintiff's shortness of breath. Defendants also may cross-examine Plaintiff's experts on whether smoking was accounted for in determining her life expectancy.

Plaintiff's reliance on *Seymour Electric & Air Conditioning Service, Inc. v. Statom*, 710 S.E.2d 874 (Ga. Ct. App. 2011), is misplaced. That case involved the potential exposure to carbon monoxide from a negligently installed furnace. The plaintiffs "failed to come forward with any evidence that a physician ever tested them for carbon monoxide poisoning or diagnosed them as having that condition." 710 S.E.2d at 877. In this case, by contrast, Plaintiff admits to a long-term smoking habit. A jury reasonably could find, without the need for expert testimony, that smoking contributes to her shortness of breath and may shorten her life expectancy.

Plaintiff notes that other courts have excluded evidence of smoking under Rule 403. Doc. 10816 at 2-3. Those cases are inapposite. *See Nolte v. AbbVie, Inc.*, No. 14 C 1748, 2018 U.S. Dist. LEXIS 2547, at *205-06 (N.D. Ill. Jan. 6, 2018) (finding that the evidence had limited probative value where the doctor did not address whether it was significant that the plaintiff had quit smoking three years prior to his pulmonary embolism); *Allegro Ventures, Inc. v. Almquist*, No. 11-cv-2009-L (WVG), 2014 WL 1871628, at *4 (S.D. Cal. May 8, 2014) ("[I]t is clear that evidence of Almquist's smoking and drinking do not bear on the threshold issue of Almquist's status as an employee or as a seaman."); *In re Prempro Prods. Liab. Litig.*, No. 4:03CV1507-WRW, 2006 WL 3806391, at *4 (E.D. Ark. Dec. 27, 2006) (issuing summary ruling excluding evidence of smoking unless the defendant could show "heavier evidence than they presented during the hearing").

### C. Plaintiff's MIL No. 5 (Other Bard Filter Implants).

Two Bard employees testified in the Booker trial that their relatives had received Bard filter implants. Doc. 10817 at 2. Plaintiff seeks to exclude similar testimony in her case as irrelevant and otherwise inadmissible under Rule 403. *Id.* Defendants counter

that such evidence is highly relevant to the claims in this case, particularly punitive damages, and that the evidence is necessary to rebut any attacks by Plaintiff on the credibility of Bard witnesses. Doc. 10896 at 2-3.

The Court generally agrees with Plaintiff that any probative value of this evidence is outweighed by the dangers set forth in Rule 403, at least to the extent that a Bard witness offers gratuitous testimony that a relative received a Bard filter implant. *See* Doc. 10567 at 108. But such testimony may be appropriate if the line of questioning suggests that the Bard witness viewed adverse event data only in terms of "numbers" and "rates" rather than "people with names." Doc. 10584 at 80-81.

The motion in limine (Doc. 10817) is **granted**. Defendants shall not elicit testimony on direct examination that Bard employees or their relatives have received Bard filter implants. If Defendants believe such testimony becomes appropriate during trial, they can raise that issue with the Court outside the hearing of the jury.[3]

### D. Plaintiff's MIL No. 6 (Experts Retained in Other Litigation).

In the Booker trial, counsel for Defendants asked Dr. Robert McMeeking whether he was retained in the Cook IVC filter litigation by some of the same attorneys that had retained him in this litigation. He answered, "Yes, some of them are the same attorneys." Doc. 10818 at 1-2.

Plaintiff seeks to exclude similar testimony in her trial, claiming that the "implicit message is that Plaintiff's attorneys are driving the litigation, hiring experts to sue multiple manufacturers in lawsuits all over the country." *Id.* at 2. The Court does not agree. As Plaintiff concedes, it is entirely appropriate to ask an expert how many times he has been retained by the same attorneys. *Id.* at 3; *see* Doc. 10895 at 2-3 (citing cases).

---

[3] In the Booker trial, the Court sought to strike a balance by allowing some evidence regarding the nature of Bard's business and the conscientiousness of Bard employees without having the case tried on the basis of specific employee conduct. Doc. 10075 at 3-4. The Court excluded a photograph of a Bard employee flipping off the camera and the "better stay away from the buffet line" comment by a Bard executive. The Court found this evidence unfairly prejudicial to Bard and not highly probative to any issue in the case. Similarly, evidence that relatives of Bard employees have received Bard filters has, at most, only marginal relevancy and may prove unfairly prejudicial to Plaintiff.

Plaintiff states that none of her attorneys were involved in actually preparing Dr. McMeeking for his testimony in the Cook litigation, but he did not testify that the attorneys did so. To the extent Plaintiff believes that any testimony by Dr. McMeeking on this point is not entirely accurate or complete, she may clarify matters on re-direct. The motion in limine (Doc. 10818) is **denied**.

### E. Plaintiff's MIL No. 7 (Attorney Advertising).

In the Booker trial, the parties stipulated to the exclusion of evidence regarding contingency fee agreements, Plaintiff's counsel specializing in personal injury and products liability litigation, and advertising by Plaintiff's counsel or any counsel nationally for IVC filter cases. Doc. 10235 at 2. Defendants have refused to enter into a similar stipulation in this case, contending that the growing trend in product liability litigation is to admit evidence of attorney advertising where it is probative of credibility regarding the plaintiff's injuries. Doc. 10914 at 2-3. Defendants, however, provide no basis for the admission of evidence regarding (1) contingency fee agreements or (2) Plaintiff's counsel specializing in personal injury and products liability litigation. The motion in limine (Doc. 10811) will be **granted** on these two subjects.

Defendants claim that the testimony of Plaintiff's husband about how he first contacted counsel is relevant to whether Plaintiff filed suit because of symptoms she was experiencing with her Eclipse filter or in response to attorney advertising. *Id.* The Court does not agree. In response to a question about why he decided to file suit, Mr. Jones explained as follows:

> I never decided to file. I was worried about my wife's health being she had this strut stuck in her and was told that the procedure was supposed to be a permanent procedure. But then that happened, it broke, and she had to go back under and have it removed. And I just was just looking for some answers. . . . I was looking on Facebook and a little pop-up – and when it popped up, that's what took my mind back to thinking about my wife more so. And I was wondering if I could get further any information about filters, not looking to go as far as suing.

Doc. 10811-2 at 4-5. This testimony has, at most, only marginal relevancy to Plaintiff's

claimed injuries. The testimony does not show that Plaintiff and her husband were prompted by attorney advertising to file suit. To the contrary, Mr. Jones testified that he was not looking to sue. *Id.* at 5. Moreover, any probative value of the evidence is substantially outweighed by the danger of unfair prejudice and juror confusion. The motion in limine will be **granted** with respect to evidence that Plaintiff did not report complaints about her Eclipse filter and the fractured strut until after her husband saw information about IVC filters on Facebook.

Defendants contend that evidence of an attorney advertising website, www.filterlaw.com, is necessary to refute Plaintiff's evidence that the change in brand name to Eclipse was to create a "break with the baggage" associated with the G2 line of filters. Doc. 10914 at 3-4. Defendants assert that the "baggage" Bard was referring to was the filter law website. *Id.* at 4 (citing 10914-2 at 3). The Court will defer ruling on this issue until trial. If Plaintiff presents the "break with baggage" evidence at trial and Defendants believe that evidence of the filter law website is relevant, they may raise that issue with the Court outside the hearing of the jury.

### F. Defendants' MIL No. 1 (Financial Information).

Defendants seek to exclude evidence of Plaintiff's financial status, including her inability to pay for medical expenses or obtain medical care. Doc. 10808. Defendants contend that such evidence is irrelevant and highly prejudicial because it may garner sympathy from the jury. *Id.* at 2. Plaintiff counters that Defendants have chosen to make this a material issue by seeking to present evidence that Plaintiff failed to take medications and otherwise follow-up on her medical care. Doc. 10916 at 2.

As explained above, the Court finds that evidence of Plaintiff's failure to take prescribed medication for her anemia is relevant to causation. To the extend Defendants argue that this failure has caused her shortness of breath, the Court will allow evidence of Plaintiff's inability to pay for the medication. The Court otherwise finds evidence of Plaintiff's financial status to be irrelevant and potentially prejudicial.

/ / /

**G.     Defendants' MIL No. 2 (Other Lawsuits).**

In the Booker trial, the parties stipulated to the exclusion of evidence of other lawsuits against Defendants. Doc. 10235 at 2. Plaintiffs contend that the other lawsuits will be material in this case if Defendants are allowed to offer evidence that Plaintiff filed suit in response to attorney advertising. Doc. 10915 at 2. The Court has excluded this evidence for reasons set forth above. Defendants' motion in limine (Doc. 10809) is therefore **granted**.

Dated this 3rd day of May, 2018.

_____
David G. Campbell
United States District Judge