James R. Condo (#005867)
Amanda C. Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT TO SEAL CERTAIN TRIAL EXHIBITS**<br><br>(Assigned to the Honorable David G. Campbell) |

Pursuant to the Court's Protective Order in this case [ECF No. 269], Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") hereby respectfully move this Court for an order sealing certain exhibits entered into evidence during the *Booker v. Bard* trial. There are compelling reasons to find that the documents contain information that is both proprietary and confidential and that Bard would suffer severe prejudice and injury if the information was made public. As a result, Bard respectfully requests that the Court seal the exhibits identified in Exhibit A, attached hereto.

## I.     FACTUAL BACKGROUND

Attached as Exhibit A is a chart of the exhibits entered into evidence during trial that Bard has designated as falling within certain categories of documents that should be sealed, as discussed further below (the "Documents"). Although the exhibits are not available publicly, counsel in the *Booker* case takes the position that because they were admitted into evidence they are no longer governed by the Parties' Protective Order. [ECF No. 269]. Bard moves to seal the Documents, all of which were produced to Plaintiff as Confidential pursuant to Section III of the Protective Order. This Protective Order provides that "[t]he use of Confidential Information during trial will be addressed in a later agreement between the parties, or, if they cannot reach an agreement, by further order of the Court." [*Id.* at ¶ 28]. Bard requests an Order sealing the documents or alternatively finding that they remain protected by the Protective Order.

As described more thoroughly below, the Documents contain Bard's confidential trade secrets and/or contains or reflect highly competitive, confidential, or proprietary information.  The Documents are not made public by Bard and, if their content were obtained by Bard's competitors, it would give an unfair economic advantage to those competitors.[1] The medical device industry for IVC filters is a highly technical and sophisticated industry. It is also a highly competitive industry in which each company carefully guards its company documents, data, systems, processes, research and development, and analysis from competitors. *See* Declaration of Robert Carr ("Carr Decl."), attached as Exhibit B. This Court has already sealed similar documents in this litigation, including some of the exhibits in the Documents, which are separated into four categories of confidential and proprietary information that must be sealed to protect Bard's financial and business interests.[2]

---

[1] Bard is seeking to seal the Documents only and not the transcript of the trial.  While portions of the Documents were discussed during the trial, it is the full content of the documents that would reveal Bard's trade secrets and confidential and proprietary information.

[2] Many of the documents were filed in connection with Bard's Motion for Summary Judgment on Preemption and were sealed by the Court. [ECF Nos. 7787, 9692].

The first category of the Documents Bard seeks to seal relates to product testing. These include numerous test reports regarding bench and animal testing conducted as part of Bard's development of its IVC filters. A few representative examples include Exhibit 1578, "ETR-06-28-29, revision 0, project #8049, Caudal Migration Test Method Development and G2 Filter Resistance Test Report"; Exhibit 5233, "RD-SOP-054.00 (Recovery Filter EnduraTEC Fatigue Testing SOP NMT)"; and Exhibit 5304, "ETR-05-02-11 G1A Recovery Filter Femoral System Chronic Animal Study Report." This category of documents must be sealed to preserve Bard's competitive advantage in the medical device market. Bard has spent a great deal of time and considerable sums of money developing and implementing a robust, confidential product testing regime of its filter products, a regime that is central to its product development and which largely has remained consistent since its implementation during the Recovery® era, including during the development of the Denali filter which is still on the market. Thus, for Bard's competitors to have access to Bard's confidential testing regime would provide them insight into Bard's current testing regime, and therefore Bard's confidential, proprietary business operations.  This would cause Bard irreparable harm and would place Bard's competitors at a competitive advantage in the marketplace.

The second category of exhibits in the Documents that Bard seeks to seal relates non-testing product design and development materials. These include design reviews, product franchise reviews, financial analysis and projections, design proposals, and documents regarding other similar proprietary business operations. A few representative examples include Exhibit 5315, "Phase 3 Design Review G1A Recovery Filter Femoral Delivery System"; Exhibit 945, "Monthly Report, IVC Filters/Covered Stents, April 2004"; Exhibit 1062, "BPV/AngioMed New Product Development Review Meeting – April 26, 2004"; and Exhibit 5296, "G2 Filter Product Performance Specification, v.2." The exhibits contained in this category of the Documents also must be sealed to preserve Bard's competitive advantage in the highly competitive medical device market. Bard has invested heavily in research and development of its inferior vena cava filter products. This

extensive, confidential research and development is detailed in the exhibits contained in this category of the Documents. Bard does not have access to its competitors' design and development documents, so to provide Bard's competitors access to Bard's confidential and proprietary product design and development documents would place them at a competitive advantage over Bard in the marketplace, causing Bard irreparable harm.

The third category of exhibits in the Documents that Bard seeks to seal relates to Bard's quality system procedures, complaint and adverse event responses, reporting and handling, device tracking procedures, and corrective action procedures, particularly as it relates to complaint analysis and/or trending regarding the G2® Filter, the G2®X Filter, and the Recovery® Filter. Representative examples include Exhibit 2052, "G2 and G2X Fracture Analysis – 11/30//2008"; Exhibit 2245, "Recovery (Gen 1) – Fracture and Migration Complaint Update – 6/20/2006"; and Exhibit 2217, "IVC Filters Retrospective Review," a review and analysis of two years of filter complaints between 2013 and 2015. Bard's complaint tracking and trending analysis is central to its ability to develop its products successfully. Again, Bard does not have access to its competitors' quality system procedures and complaint and trending analyses, so providing Bard's competitors this crucial, confidential information about Bard's products would put Bard's competitors at a decided advantage at the marketplace.

The final category of exhibits in the Documents that Bard seeks to seal relates to FDA submissions and FDA contacts discussing Bard's products, including communications between Bard and FDA as part of the confidential portion of the 510(k) clearance process and post-market communications. These documents contain much of the same confidential testing and design information that Bard submitted to the FDA. Representative examples include Exhibit 5189, the July 10, 2002, IMPRA Recovery Permanent Special 510(k) (K022236); Exhibit 5195, a November 30, 2004, Letter from the FDA to Bard regarding the Recovery IFU and Dear Doctor Letter; and Exhibit 5335, and an August 23, 2007, Letter from Bard to the FDA regarding the G2 Everest Study Annual Progress Report. The exhibits in this category of the Documents contain

- 4 -

1  confidential, proprietary information provided to the FDA in communications that was not
2  intended to be made public, the dissemination of which would lead to Bard's competitors
3  gaining an upper hand in the marketplace, as Bard does not have access to similar
4  information, documents, or communications belonging to its competitors.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. Legal Standard for Sealing Documents With Bard's Confidential Information.

While compelling reasons must be shown to seal exhibits at trial, even under this higher, compelling reasons sealing standard, the Court should still consider "whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Kamakana v. City & Cnty. of Honolulu,* 447 F.3d 1172, 1179 (9th Cir. 2006); *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) ("[T]he district court correctly concluded that the legal principles set forth in *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir.2006), control the decision whether to seal paragraph 6 of Trial Exhibit 80 from public access."); *Brock v. Skolnik*, 3:11-CV-00086-ECR, 2011 WL 6026298 at *2 (D. Nev. Dec. 2, 2011) (*quoting Pintos v. Pacific Creditors Ass'n,* 605 F.3d 665, 678 (9th Cir.2010)). Moreover, where, as here, a party produces confidential documents in reliance on a confidentiality agreement between the parties, this reliance weighs in favor of finding confidentiality, although such production in reliance on a confidentiality agreement does not, on its own, require the sealing of those documents. *See In re Denture Cream Prods. Liab. Litig.*, Civil Action No. 09-2051-MD, 2013 WL 214672, at *10 (S.D. Fla. Jan. 18, 2013); *see also, Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) ("When a court grants a protective order for information produced during discovery, it already has determined that 'good cause' exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality."). As discussed below, Bard has a compelling interest in maintaining the confidentiality of its proprietary and trade secret information, which, if disclosed to the

- 5 -

1  public and Bard's competitors, would cause harm to Bard. Accordingly, Bard respectfully
2  requests that the Court seal the Documents.

3     **B. There Are Compelling Reasons To Preserve Proprietary Information in**
4       **the Documents.**

5     The compelling reasons standard is met in this case by showing that public
6  disclosure of the documents will cause a clearly defined and serious injury to Bard.
7  "Where the material includes information about proprietary business operations, a
8  company's business model or agreements with clients, there are compelling reasons to
9  seal the material because possible infringement of trade secrets outweighs the general
10 public interest in understanding the judicial process." *Selling Source, LLC v. Red River*
11 *Ventures, LLC,* 2:09-CV-01491-JCM, 2011 WL 1630338 (D. Nev. Apr. 29, 2011). The
12 Protective Order in this case states "All Confidential Information shall be used only for
13 the purpose of this lawsuit only . . . except as permitted by this Order." [ECF No. 269, ¶
14 12]. These types of provisions are common in legal proceedings and are routinely
15 enforced. *See Culinary Foods, Inc. v. Raychem Corp.*, 151 F.RD. 297, 307 (N.D. Ill.
16 1993) ("We hold that confidential information obtained by Culinary in this litigation may
17 not be disseminated to litigants in other cases against Raychem."); *cf Smithkline Beecham*
18 *Corp. v. Synthon Pharmaceuticals Ltd.*, 210 F.RD. 163, 169 (M.D.N.C. 2002) (refusing to
19 modify protective order to allow plaintiffs to use confidential documents in other
20 litigation).

21    Courts have long recognized that the four categories of exhibits in the Documents
22 contain information that requires sealing to protect Bard's financial and business interests.
23 Courts in the Ninth Circuit, including in the District of Arizona, have consistently held
24 that documents containing confidential business information, like the first three categories
25 identified above, should be sealed. *See e.g., Bean v. Pearson Educ., Inc.*, No. CV 11-
26 8030-PCT-PGR, 2013 WL 2455930, at *2 (D. Ariz. June 5, 2013) ("Compelling reasons
27 to seal a typically exist when such court files might become "a vehicle for improper
28 purposes, such as the use of records to . . . release trade secrets."); *TriQuint*

- 6 -

*Semiconductor, Inc. v. Avago Techs. Ltd.*, No. CV 09-1531-PHX-JAT, 2011 WL 4947343, at *2 (D. Ariz. Oct. 18, 2011), on reconsideration, No. CV 09-1531-PHX-JAT, 2011 WL 5190264 (D. Ariz. Nov. 1, 2011) (in holding that a party had shown compelling reasons for sealing, noting that "[w]here a party shows that its documents contain sources of business information that might harm its competitive standing, the need for public access to the records is lessened."); *Clark v. Metro. Life Ins. Co.*, 2010 WL 1006823 (D. Nev. Mar. 16, 2010) (sealing "confidential internal business deliberations, organization, and capabilities"); *JL Beverage Co., LLC v. Beam, Inc.*, 2013 WL 1088363 (D. Nev. Mar. 14, 2013) *reconsideration denied*, 2013 WL 3027453 (D. Nev. June 14, 2013) (sealing "sales figures, advertising numbers, and strategy information relating to Defendants' Pucker Vodka line of products"); *Medicis Pharm. Corp. v. Acella Pharm., LLC*, CV 10-1780-PHX-JAT, 2012 WL 2260928 at *2 (D. Ariz. June 15, 2012) (sealing exhibits related to "Medicis' marketing strategy, Acella's product formulation,…various emails and deposition transcripts, viscosity test data, sales and marketing information, and various other documents" because "[m]uch of this information has been previously sealed by the Court, has been designated as confidential by the parties pursuant to the protective order in this case, or could otherwise potentially harm the parties if released publicly because of its confidential and sensitive nature.").

Courts in the Ninth Circuit have also held that FDA communications and documents, which are contained in the fourth category of the Documents, warrant sealing. *Spectrum Pharm., Inc. v. Sandoz Inc.*, No. 2:12-CV-00111-GMN, 2014 WL 4202540, at *2 (D. Nev. Aug. 21, 2014) (sealing among other "proprietary business plans" and "business practices," "actual and planned confidential communications with the FDA"); *Citizens Comm'n on Human Rights v. Food & Drug Admin.,* 1993 WL 1610471, *7 (C.D.Cal.1993) (A drug application to FDA "by definition contains trade secret information because it contains significant information about how a...drug product is formulated, chemically composed, manufactured, and quality controlled."), *aff'd in part & remanded in part on other grounds,* 45 F.3d 1325 (9th Cir.1995); *see also*, *Bracco*

*Diagnostics, Inc. v. Amersham Health Inc.*, CIVA 3-6025FLW, 2007 WL 2085350 (D.N.J. July 18, 2007) (sealing "regulatory correspondence" with the FDA, "cost and profit information," "unpublished clinical studies," and "internal analyses on products which are not intended for publication or dissemination").

Importantly, courts in the Ninth Circuit have found that documents in these categories should remain sealed even after being used at trial. For example, in *Livingston v. Isuzu Motors, Ltd.*, 910 F. Supp. 1473, 1480 (D. Mont. 1995), the court found that although exhibits were used at trial, they never remained with the clerk of court and were not made part of "the public record as it existed following the trial." The court further noted that "during the trial these documents were regarded by all parties as confidential, sensitive information, and by implication agreed that the untoward release of them had the potential to harm defendants. Finally, the confidential documents are not now part of the public record; the continued treatment of the documents as confidential will not impose a burden upon any party to this action." *Id.* The court relied on an opinion in related litigation sealing similar exhibits, *Jochims v. Isuzu Motors, Ltd.*, 151 F.R.D. 338, 341 (S.D. Iowa 1993). In that case, the court sealed trial exhibits including "internal engineering standards, confidential information regarding advertising expenditures, and test reports relating to the design and development of the Trooper. They are the kind of technical and commercial information commonly subject to confidentiality orders in cases of this kind. Depriving these documents of their confidential status would be inimical to Isuzu's competitive interests." *Id.* As a result, the categories of trial exhibits identified above and in Exhibit A should be sealed.

Sealing each category of information listed above is further warranted in this case because Bard has continually and successfully made efforts to protect the information from its competitors, in part because it could be used by competitors against Bard. *See In re Denture Cream Products Liab. Litig.*, 09-2051-MD, 2013 WL 214672 (S.D. Fla. Jan. 18, 2013) (finding documents confidential in part because the defendant "consistently treated the information as closely guarded secrets"); [*See* ECF No. 269; Ex. B, Carr Decl.]

The Documents reflect confidential and proprietary information concerning the design, development, testing (including clinical testing), and regulatory compliance activities concerning Bard's IVC filters; that detail Bard's product development activities, proprietary testing, and implementation of various proprietary processes and procedures. [Ex. B, Carr Decl. ¶ 3, 10]. The information in the Documents took years for Bard to develop and reflects Bard's crucial and confidential business information. [*Id.* at ¶ 11-13]. Moreover, the information contained in the Documents would be of economic value to Bard's competitors. [*Id.*]. Bard invests substantial amounts of money in medical device research, testing, clinical trials, development, design, analysis, regulatory compliance, and evaluation. [*Id.*]. Thus, if Bard's competitors obtained the Documents, they would have an unfair economic advantage over Bard.

Finally, Bard invests substantial sums of money in medical device research, testing, development, design, analysis, regulatory compliance, and evaluation of its products and does not make such information public. Thus, there is no doubt that the proprietary information that Bard seeks to protect constitutes an overriding interest warranting protection.

### C. The Resulting Prejudice From Public Disclosure Requires This Court's Protection

As stated above, the Documents contain highly confidential and sensitive information about Bard's design, product development, and testing of its filters, and allowing unrestricted access to this information would cause real and tangible harm to Bard. *See e.g., In re Eli Lilly & Co.*, *Prozac Products Liability Litigation*, 142 F.R.D. 454, 460 (S.D. Ind. 1992) (holding pharmaceutical company would suffer harm if the manufacturing process it has expended time and money developing became known to competitors); *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 305 *order clarified*, 153 F.R.D. 614 (N.D. Ill. 1993) ("[D]isclosing Raychem's product design modification and changes would decrease Raychem's incentive to invest in safety devices.

Raychem's competitors would get free access to information which Raychem has spent a great deal of time and money producing and protecting").

It is well documented that the current market for pharmaceuticals and medical devices is highly competitive. *See, e.g.*, *In re Gabapentin Patent Litigation*, 312 F. Supp. 2d 653, 659 (D.N.J. 2004) (noting the pharmaceutical industry is highly competitive and granted protective order). To remain competitive, Bard has invested great amounts of time and considerable sums of money over the past decades in medical device research, testing, development, design, analysis, regulatory compliance, and evaluation. This heightened level of competitiveness in the medical device market warrants protecting Bard's efforts in developing such precise and valuable medical devices, such as the Bard Filters at issue here. There is no valid reason for Bard's competitors to obtain the results of Bard's extensive product testing and development without having to incur similar expenditures in time and money, since it would give them an unfair economic advantage in this highly competitive marketplace. Any disclosure of Bard's information to any of its competitors through open court records would certainly injure Bard's interest and standing in the marketplace. Therefore, Bard respectfully requests that the Court seal the Documents. *See, e.g., In re Gabapentin Patent Litigation*, 312 F. Supp. 2d 653 (holding that evidence supported finding that good cause existed for continued secrecy of materials).

## **CONCLUSION**

The public disclosure of the Documents would reveal confidential, proprietary, and trade secret information and would create a heightened risk of irreparable harm to Bard's competitive business concerns. Further, the Documents' inclusion in the public record would not only harm Bard because of the trade secrets and confidential information it contains, but it would also eviscerate the significant time and resources Bard has expended in protecting its business information. The potential for abuse and for competitive loss are real. Accordingly, Defendants request that the exhibits identified in Exhibit A be sealed.

RESPECTFULLY SUBMITTED this 7th day of May, 2018.

s/ Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

James R. Condo (#005867)
Amanda Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of May, 2018, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

                                          s/ Richard B. North, Jr.
                                          Richard B. North, Jr.

Nelson Mullins Riley & Scarborough L.L.P.
201 17th Street, N.W., Suite 1700
Atlanta, GA 30363
(404) 322-6000

- 12 -