Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
602-530-8000

*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC |
| SHERR-UNA BOOKER, an individual, | **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR NEW TRIAL PURSUANT TO RULE 59** |
| Plaintiff, | |
| v. | (Assigned to the Honorable David G. Campbell) |
| C.R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, an Arizona corporation, | (Oral Argument Requested) |
| Defendants. | |

Bard's motion for a new trial should be denied. Although Bard cites general principles about when a new trial may be granted due to inconsistent verdicts, it fails to demonstrate that any of the elements required for a new trial apply here. Bard has not shown: 1) that the verdict is, in fact, inconsistent; 2) that Bard preserved this issue by properly objecting to the jury instructions at issue (which were proposed by Bard), the verdict form (also proposed by Bard over Plaintiff's objection), or the verdict before the jury was discharged (Ex. A.1, Mar. 29, 2018, Trial Tr., 2568:21-2568:24; Defendants' Proposed Verdict Form [Doc. 10253] at 3-4); or 3) that courts in the Ninth Circuit have authority to order a new trial for allegedly inconsistent general verdicts. *See Zhang v. Am. Gem Seafoods, Inc*., 339 F.3d 1020, 1034-1035 (9th Cir. 2003) ("[E]ven if the error had

Gallagher & Kennedy, P.A.
2575 E East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

1   been raised before the district court, we could not grant a new trial on the basis of legally

2   irreconcilable general verdicts.").  Further, a new trial cannot be granted under the "clear

3   weight of the evidence" standard because no mistake has been made. *Landes Constr. Co.*

4   *v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987).

5        This Response is supported by the following Memorandum of Points and

6   Authorities, the record in this case, and Plaintiff's Response to Bard's Motion for

7   Judgment as a Matter of Law [Doc. Number not yet available].

8                    **MEMORANDUM OF POINTS AND AUTHORITIES**

9        Bard fails to meet the high bar required for obtaining a new trial under Federal

10  Rule of Civil Procedure 59(a)(1)(A). While Rule 59 states that a court may grant a new

11  trial "for any reason for which a new trial has heretofore been granted in an action at law

12  in federal court," *id.*, overturning a jury's unanimous verdict and granting a new trial

13  typically is reserved for those rare instances "to prevent a miscarriage of justice" when "a

14  verdict [is] based upon false or perjurious evidence, . . . or when the verdict is "is contrary

15  to the clear weight of the evidence." *Crowley v. EpiCept Corp.*, 883 F.3d 739, 751 (9th

16  Cir. 2018) (citation and internal quotation omitted). When evaluating allegedly

17  inconsistent verdicts, the Court should not ordinarily substitute its judgment for that of the

18  jury, particularly on questions of witness credibility and weight of the evidence:

19          This Court will not willingly assume that the jury did not fairly and objectively
20          consider the evidence . . . . The credibility of witnesses and the weight to be given
            to the evidence are matters within the province of the jury and even if convinced
21          that a wrong verdict has been rendered, the reviewing court will not substitute its
22          judgment for that of the jury, so long as there was evidence which, if believed,
            would support the verdict rendered.
23

24  *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 511 (9th Cir. 2000)

25  (internal quotation and citation omitted). "The district court's denial of a Rule 59 motion

26  on this basis is virtually unassailable." *Crowley*, 883 F.3d at 751 (citation and internal

27  quotation omitted).

28

                                              2

1  **I.      The Verdict Was Not Inconsistent.**

2          When evaluating an allegedly inconsistent verdict, the court "must accept any

3  reasonable interpretation of the jury's actions," *Zhang*, 339 F.3d at 1038, and it must

4  uphold an allegedly inconsistent verdict "unless it is impossible under a fair reading to

5  harmonize answers," *Magnussen v. YAK, Inc.*, 73 F.3d 245, 246 (9th Cir. 1996) (citation

6  and internal quotation omitted). "[W]here there is a view of the case that makes the jury's

7  answers to special interrogatories consistent, they must be resolved that way. For a search

8  for one possible view of the case which will make the jury's finding inconsistent results in

9  a collision with the Seventh Amendment." *Id.* at 249 (quoting *Atlantic & Gulf Stevedores*

10 *v. Ellerman Lines*, 369 U.S. 355, 364 (1962)). Where, as here, a general verdict is

11 challenged, even "legally inconsistent verdicts may nonetheless stand on appeal even

12 though inconsistent." *Williams v. Gaye*, 885 F.3d 1150, 1176 (9th Cir. 2018) (quoting

13 *Zhang*, 339 F.3d 1020 at 1035) ("[T]here is no duty to reconcile inconsistent general

14 verdicts.")).

15         Contrary to Bard's assertion, the strict liability failure to warn claim and the

16 negligent failure to warn claim are *not* identical under Georgia law. Bard acknowledged

17 that two separate claims for failure to warn exist under Georgia law by submitting and

18 agreeing to separate jury charges on strict liability failure to warn and negligent failure to

19 warn [Doc. 10254] and by proposing a verdict form [Doc. 10253] that allowed the jury to

20 consider the two claims as separate and distinct, with elements that differed, as explained

21 below. Because of the differences in the two causes of action, the verdicts are reconcilable

22 and should stand.

23         The Georgia Supreme Court has held that while "factual overlap between these

24 claims is possible, in that some products are defective solely due to an inadequate or

25 absent warning, . . . the claims are not necessarily coextensive." *Chrysler Corp. v. Batten*,

26 450 S.E.2d 208, 211 (Ga. 1994) (citations omitted). Specifically, where a negligent failure

27 to warn claim "arises from a manufacturer's post-sale knowledge acquired months, years,

28 or even decades after the date of the first sale of the product," Georgia recognizes a

distinction. *Id.; see also Bryant v. Hoffmann-La Roche, Inc.*, 585 S.E.2d 723, 730 & n. 6 (Ga. App. 2003) (noting that where plaintiff "asserted strict liability and negligent failure to warn claims" regarding injury from a prescription drug, the negligence claim "exists separately from the strict liability claim"); *Dorminey v. Harvill Mach., Inc.*, 233 S.E.2d 815, 816 (Ga. App. 1977) (noting that "there may be cases that require instructions on both strict liability and negligence").

Bard overlooks two key distinctions in the two separate causes of action related to timing of the warning and who must be warned. Under the strict liability failure to warn instruction, the jury was told, "The manufacturer of a product that is sold as new property may be liable to any person who is injured because of an inadequate warning . . . that existed <u>at the time the manufacturer sold the product</u>." Jury Instruction No. 15 [Doc 10589 at 18-19] (emphasis supplied). The same instruction provided that one of three required elements was that "the inadequate warning existed <u>at the time the product left the control of Bard</u>," and emphasized that a product is "in a defective condition" if it "<u>is sold</u> without an adequate warning," *Id.* (emphasis supplied).  In contrast, Instruction Number 17 (negligent failure to warn) provided more generally that "Ms. Booker must prove . . . that Bard had a duty of reasonable care to Ms. Booker, [and] . . . breached that duty in the adequacy of the warnings about the G2 filter." *Id.* at 21. No timing element was specified.[1]  It was therefore entirely consistent for the jury to find no strict liability failure to warn while finding that Bard was negligent in breaching its duty to warn about later-acquired information. *Flores v. City of Westminster*, 873 F.3d 739, 756 (9th Cir. 2017) (affirming denial of motion for a new trial in part because alleged inconsistency resulted from the parties' imperfect drafting of the jury form); *see also Restatement (Third) of*

---

[1] The strict liability instruction that "[a] manufacturer's duty to warn arises when the manufacturer knows or reasonably should know of the danger," thereby establishing a "continuing duty to adequately warn . . . even after that product has left the control of the manufacturer," does not render the two causes of action identical. This additional instruction addresses when a duty may arise, but does not alter the earlier instruction that the defect is measured at the time the product was sold or left Bard's control. *Id.* at 19. The evidence reasonably could allow the jury to conclude that the warning was not defective at the time the filter left Bard's control, but became inadequate based on knowledge Bard gained through post-sale testing, review, and evaluation of its G2 filters.

*Torts: Prod. Liab.* § 2, cmt. n (1998) ("[N]egligence retains its vitality as an independent theory of recovery for a wide range of product-related, harm-causing behavior not involving defects at time of sale. . . see § 10."); *id.* at § 10, cmt. j ("[A] plaintiff may seek recovery based on both a time-of-sale defect and a post-sale failure to warn.").[2]

Moreover, the instructions for strict liability failure to warn indicated that Bard "owes this duty to warn <u>to all physicians</u> whom the manufacturer should reasonably foresee <u>may use the product</u>," and that the jury should decide "whether adequate efforts were made by Bard to communicate all risks that were known or reasonably should have been known to Bard, <u>to the physician who implanted the G2 filter in Ms. Booker</u>." Jury Instruction No. 15 [Doc 10589] at 18-19 (emphasis supplied). In contrast, the negligent failure to warn instruction was not limited only to users and implanters, but is fairly read to apply more generally to "the patient's doctor" under the learned intermediary doctrine. Jury Instruction No. 17 [Doc 10589] at 21 (emphasis supplied).

The evidence presented in the case reasonably supports the jury's finding of negligence but not strict liability. ███████████████████████████████████████ ██████████████████████ *See* Ex. A.2, Mar. 28, 2018, Trial Tr., 2352:19-2352:24 (testimony ████████████████████████████████ Ex. E, Trial Ex. 5296 at 15███████████ ██████████████████████████████████ The jury, however, was not told when Ms. Booker's filter was sold or left Bard's control, so the jury may have determined that it had insufficient evidence to find for Ms. Booker on the design defect claim. Or the jury

---

[2] The timing distinction in the jury instructions regarding when a duty to warn arises under strict liability and negligence principles is recognized in other states. *See, e.g., Rosa v. TASER Int'l, Inc.*, 684 F.3d 941, 949 (9th Cir. 2012) ("[T]hough California law measures the strict liability duty to warn from the time a product was distributed, a manufacturer may be liable under negligence for failure to warn of a risk that was subsequently discovered."); *Nissen Corp. v. Miller*, 594 A.2d 564, 569 (Md. 1991) (distinguishing strict liability from negligence in part based on whether there was "a defect in the product at the time it leaves the control of the seller"); *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 861 P.2d 1299, 1310 (Kan. 1993) ("Under a negligence theory, the duty to warn may be post sale . . . . The duty to warn under a theory of strict liability exists only at the time the product leaves the manufacturer's control."); *Densberger v. United Techs. Corp.*, 283 F.3d 110, 69 (2d Cir. 2002) (applying Connecticut law and noting that "[i]n finding [defendant] liable for failure to warn under the negligence theory . . . the jury must have based its verdict solely on a violation of a duty to warn post-sale. This is so, because, according to the jury instructions, such a duty exists only in negligence and cannot be the basis for recovery either in strict liability.").

may have determined that the evidence available to Bard after the G2 launch in 2005, Ex. F., Trial Ex. 2321 at 1, but before its likely sale date—up to three years prior to when it was implanted in June 2007 (Ex. A.3 Mar. 15, 2018, Trial Tr., 237:2-5)—was not sufficient to establish liability. It would have been reasonable for the jury to conclude, however, that evidence shortly before Ms. Booker's implant, or in the years after implant but before the failures were detected, was sufficient to establish negligence—which would produce the result seen here. In any of these scenarios, a finding of negligence and not strict liability was proper based on the jury instructions in this case.

A finding of negligence without strict liability is also supported by the weight of the evidence, as addressed more fully below and in Plaintiff's response to Bard's Motion for a Directed Verdict, which is incorporated by reference. By way of example, evidence was presented that as of December 27, 2005, employees at Bard were expressing concern about migration "accompanied in a majority of cases by tilting," and "lack of efficacy." Ex. G, Trial Ex. 991 at 1. ██████████████████████████████████████████ ██████████████████████████████████ Ex. H, Trial Ex. 1221 at 1-2. ███████████████████████████████████████████████ ██████████████ Ex. I, Trial Ex. 2248 at 20.

By July 31, 2007, the SNF had 1 migration, 2 perforations, and 7 fractures compared with the G2, which had 45 migrations (35 caudal), 13 fractures, and 19 perforations. Ex. J, Trial Ex. 925 at 1, 3, 7. ████████████████████████ ███████████████████████████████████████████████ ████████ Ex. K, Trial Ex. 1295 at 1. ████████████████████ ███████████████████████████████████ ██████████" Ex. L, Trial Ex. 6046. ████████████ ██████████████████████████████████████ ██████████████████████████████████████ Ex. M, Trial Ex. 2252 at 4.

1 [REDACTED]

2 [REDACTED]

3 [REDACTED] Ex. N,

4 Trial Ex. 1222 at 6, 13. As of May 6, 2008, Bard was concerned with "hampered" market

5 growth because of "recent clinical data," and noted that EVEREST clinical data was

6 available. Ex. O, Trial Ex. 932 at 5-6. [REDACTED]

7 [REDACTED] Ex.

8 P, Trial Ex. 5290. [REDACTED]

9 [REDACTED]

10 [REDACTED]

11 [REDACTED] Ex. Q, Trial Ex. 2052 at 18.

12      Based on any of the one of the above evidence described above, the jury may have

13 determined that Bard's failure to warn arose after the product left Bard's control; it was

14 therefore rational for the jury to find for Bard on strict liability failure to warn while

15 finding for Ms. Booker on the negligent failure to warn claim.

16
17 **II.   Bard Waived the Issue by Failing to Object to the Jury Instructions, the Verdict Form and the Verdict Before the Jury was Discharged.**

18      Even if the Court accepted Bard's incorrect argument that the jury's two failure-to-

19 warn verdicts cannot be reconciled, Bard waived this issue by proposing jury instructions

20 and a verdict form that allowed an allegedly inconsistent verdict, and in failing to object to

21 the inconsistent verdict before the jury was dismissed. Having both invited the error about

22 which it now complains and sat silent instead of objecting to the verdict before the jury

23 was dismissed and any alleged confusion about the verdict could have been cured, Bard

24 has waived any argument that the Court should grant a new trial.

25      A party must identify jury instructions and verdict forms that permit an alleged

26 inconsistency and propose alternatives that prevent the inconsistency from arising. *Zhang*,

27 339 F.3d at 1028, 1037. In *Zhang*, the defendants argued that the jury rendered a split

28

verdict that was legally irreconcilable. *Id*. at 1032. The court held that the failure to propose jury instructions or object under Rule 51 operates as a "complete waiver":

> To excuse [the appellants] from the well-established rules of waiver would permit the sort of "sandbagging" that the rules are designed to prevent . . . . The appellants might have thought that it was advantageous not to propose instructions [that addressed that the two challenged counts were equivalent], because the jury then might have concluded that they were liable on both claims.

*Id*. at 1029, 1030, 1037 ("Like defects in the sufficiency of the evidence, the potential for a legally irreconcilable verdict should be addressed through jury instructions properly proposed under Rule 51.").

Similarly, "[a] party waive[s] its objection to the jury's verdict . . . by not objecting to the alleged inconsistency prior to the dismissal of the jury." *Williams v. Gaye*, 885 F.3d 1150, 1175 (9th Cir. 2018) (citation and internal quotation omitted); *Philippine Nat'l Oil Co. v. Garrett Corp*., 724 F.2d 803, 806 (9th Cir. 1984) (holding that a party "waived its right to object to the verdict by failing to object when the verdict was read").

In *Williams*, the court noted that the defendants did not object to the verdict before discharge or "during a colloquy with the district court after the jury was discharged. They thus waived their challenge to any perceived inconsistencies between the jury's general verdicts." 885 F.3d at 1175.

Likewise, in *Mason v. Ford Motor Co.*, the court declined to consider whether two verdicts were inconsistent under Georgia law after the jury found for the plaintiff on a negligence claim and for the defendant on a strict liability claim.  307 F.3d 1271, 1272 (11th Cir. 2002). As here, the defendant argued that a new trial was warranted because the verdicts were inconsistent. *Id.* at 1273. The court held that "verdict form used . . . [was] best categorized as one that solicited a general verdict on each of two theories of liability," and was therefore a general verdict. *Id.* at 1275. It then held that the defendant's "failure to raise its objection before the jury was discharged waived the right to contest the verdicts on the basis of alleged inconsistency." *Id.* at 1275-76. As in this case, the

defendant "made no objection focused on inconsistency either when the verdict form was proposed or when the jury returned its verdict." *Id.* at 1276 & n. 7.

Bard did not object to the verdict.[3]  Had it done so, the verdict form could have been revised to instruct the jury, for example, that if Question A.2, regarding strict liability, is answered in the negative, then question A.4, regarding negligent failure to warn, should be skipped. *See* Verdict Form [Doc. 10595] at 1-2.

Bard's claim that it "was not given the opportunity to object to the inconsistent general verdicts . . . and thus did not waive its objection," Mot. at 4 n. 2, is without merit. First, Bard cites no case for the proposition that a finding of waiver is only appropriate if the Court has invited comment before the jury is dismissed.  Its reliance on cases in which the court invited objection are unhelpful since it is incumbent on the parties, not the court, to object to the verdict.[4]  Indeed in both *Williams* and *Philippine Nat'l Oil Company*, the Ninth Circuit found waiver based on a failure to object to an alleged inconsistent verdict and in neither opinion did the court indicate that parties were polled for objections before

---

[3] To the contrary, Bard preserved objections only to its request for jury instruction Number Four (regarding "failure to read warning"). *See*, Ex. A.4, Mar. 28, 2018, Trial Tr., 2308:10-2308:23; Joint List of Proposed Jury Instructions [Doc. 10254] at 108. Moreover, it did not offer an objection to the final verdict form. *See* Ex. A.1 Mar. 29, 2018, Trial Tr., 2568:23-2568:24 ("Your Honor, . . . we're comfortable with the verdict form. We don't have anything."); Defendants' Proposed Verdict Form [Doc. 10253] at 3-4 (providing separate questions for strict liability failure to warn and negligent failure to warn and failing to propose an instruction to skip the latter if the former is answered in the negative). Tellingly, Bard has proposed separate instructions and verdict form questions for strict liability failure to warn and negligent failure to warn in the second bellwether case, which is also governed by Georgia law. *See* Joint Notice of Filing Jury Instructions, Ex. D.1, (Comprehensive Final Jury Instructions with Competing Instructions) [Doc. 10930-5] at 23-24, 29; Ex. D.2, Defendant's Proposed Form [Doc. 10927] at 3.

[4] *Flores v. City of Westminster*, 873 F.3d 739, 757 (9th Cir. 2017) (finding waiver after objection was invited); *L.A. Nut House v. Holiday Hardware Corp*., 825 F.2d 1351, 1354-55 & n.3 (9th Cir. 1987) (analyzing waiver in the context of special interrogatories and finding no waiver); *Brandon v. Liddy*, No. CV-12-0788-PHX-FJM, 2014 U.S. Dist. LEXIS 122009, at *3 (D. Ariz. Sep. 2, 2014) (finding waiver after objection was invited and denying new trial based on inconsistent verdicts under *Zhang*, 339 F.3d 1020).

dismissing the jury. *Williams*, 885 F.3d at 1175,[5] *Philippine Nat'l Oil Co*., 724 F.2d at 806 (waiver for failure to raise objection at "the time the verdict was read").

Second, as a factual matter, Bard's claim that it "was not given the opportunity to object," Mot. at 4 n. 2 is unsupported by the record.[6]   In fact, Bard had ample opportunity to object to both the verdict form and the verdict and should not now be permitted to argue an issue that should have been raised while there was still an opportunity to address and correct it.  The verdict was read at 9:33 A.M., and the alleged inconsistency became apparent at 9:34 A.M. Ex. A.5, Mar. 30, 2018, Trial Tr., 2574:20-2575:18.  The jury was not dismissed for nearly two hours, at 11:27 A.M., and in the interim there were three bench conferences totaling approximately 24 minutes. *Id.* at 2619:22, 2578:7-2583:17, 2587:5-2590:9, 2605:21-2614:11. One of these bench conferences was requested by Bard. *Id.* at 2586:25-2587:2.  As in *Zhang*, "The appellants never objected on the grounds that the standards should be identical, nor did they assert that if they were exonerated from liability under one law, they must be exonerated under the other as well."  339 F.3d at 1030.  Had Bard raised an objection either under Rule 51, when the jury instructions were discussed, or after the alleged inconsistent verdict had been read, the alleged inconsistency could have been addressed. Failure to do so constitutes waiver. *Cf. Mason v. Ford Motor Co.*, 307 F.3d 1271, 1275 n. 7 (11th Cir. 2002) (declining to consider whether objection was required under Rule 51); *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 56 (2d Cir. 2002) ("Objection to an inconsistency between two general verdicts that is traced to an alleged error in the jury instruction or verdict sheet is properly made under Fed. R. Civ. P. 51. Yet to avail itself of relief under this Rule, a party must object before the jury retires to deliberate.").

---

[5] Neither the appellate *Williams* opinion nor the underlying trial court order indicated that the parties were invited to object after the verdict was rendered. *See Williams v. Bridgeport Music, Inc.*, No. LA CV13-06004 JAK (AGRx), 2015 U.S. Dist. LEXIS 97262, at *111 (C.D. Cal. July 14, 2015) (referencing a discussion of potential inconsistent verdicts before the verdict was returned).

[6] And it offers no explanation for Bard not objecting to its own proposed jury instructions or verdict form.

### III.   Under 9th Circuit Precedent, This Court May Not Order a New Trial Based on Allegedly Inconsistent General Verdicts.

Bard concedes that the verdict form was general and not specific. Mot. at 4 n. 2 (characterizing the issue as one of "inconsistent general verdicts").  *Zhang* confirms that the verdict form here was a general one, explaining that where the jury finds on ultimate legal conclusions and applies the law to facts, it has rendered a general verdict.  339 F.3d at 1031 (stating that "general verdicts require the jury to apply the law to the facts, and therefore require legal instruction, whereas special verdicts compel the jury to focus exclusively on its fact-finding role.") (citation and internal quotation omitted).

In the case of an alleged inconsistency in a general verdict form, the verdict must stand. "Ninth Circuit precedent dictates that we cannot" direct a "trial court to grant a new trial due to inconsistencies between general verdicts." *Id.* at 1035-1037 (collecting cases and discussing "majority rule," but noting that it has also considered whether two allegedly inconsistent verdicts can be reconciled).

The cases relied on by Defendants are inapposite. In *Floyd v. Laws*, the court declined to order a new trial where it was able to reconcile an allegedly inconsistent special verdict. 929 F.2d 1390, 1394, 1399-1400 (9th Cir. 1991) ("the trial court was faced with no apparent inconsistency in the special verdict").  In *Toner*, the Court similarly held that the two verdicts were not inconsistent and affirmed a judgment for the plaintiff. *Toner v. Lederle Labs., a Div. of Am. Cyanamid Co.,* 828 F.2d 510, 512–13 (9th Cir. 1987) (implying that the verdicts at issue were special, and not general); *see Zhang*, 339 F.3d at 1034-1035 (holding new trial not warranted for allegedly inconsistent general verdicts, even if argument had not been waived).

Similarly, in *Bonner v. Normandy Park*, the court held that the general verdicts should stand:

> Although the elements of assault and battery may have similarities to the elements of excessive force from a legal perspective, the jury does not have the benefit of examining these elements from the same legal lens as a trained attorney. This is precisely why the historical and majority rule does not

11

compel a district court to grant a motion for a new trial simply
because inconsistencies may exist.

No. C07-962RSM, 2009 U.S. Dist. LEXIS 12641, at *4 (W.D. Wash. Feb. 2,
2009); *Lam v. City of San Jose*, No. 14-cv-00877-PSG, 2016 U.S. Dist. LEXIS 64356, at
**23-25 (N.D. Cal. May 13, 2016) (holding "arguably inconsistent general verdicts do not
necessitate a new trial").

Bard's argument that the two verdicts at issue were "even more than a
prerequisite," Mot. at 9, should likewise be rejected. Dicta in *Zhang* suggests that a
situation where "one legal conclusion is the prerequisite for another," *id.* at 1034, might
result in a different outcome, but *Zhang* does not define the term or cite any authority for
the statement, and neither does Bard. Bard cites one case that sheds light on the meaning
of a "legal prerequisite," but that case demonstrates that the claims at issue here were not
dependent on each other. *Duhn Oil Tool*, 818 F. Supp. 2d 1193, 1221 (E.D. Cal. 2011).

In *Duhn Oil Tool*, the verdict form was intended to resolve questions of
obviousness and anticipation in seven patent claims. The inconsistent verdicts arose
because the parties agreed that six of the patent claims depended on the first claim, and
the jury found that the first claim was valid while the remaining six were not, a finding
that, in the patent context, is "irreconcilable as a matter of law." *Id.* at 1202-1203, 1214.
This is because "the legal conclusion that [the first, independent claim] is obvious is an
absolute prerequisite to the legal conclusion that [the] dependent claims" are apparent. *Id.*
at 1220. This case is distinguishable for two reasons.  First, merely because two claims are
similar (or identical as claimed by Bard) does not make them legal prerequisites within the
specialized meaning of the patents at issue in *Duhn Oil Tool*.

Second, unlike here, the verdict questions at issue in *Duhn Oil Tool* were not
general verdicts. In that case, the court held that fourteen questions at issue were "located
in the twilight zone" between special and general verdicts, comprising "a series of quasi-
general verdicts expressing conclusions on the subsidiary legal issue of obviousness; and .
. . a series of generalized special verdicts expressing conclusions on the subsidiary factual

issue of anticipation." *Id.* at 1219.[7]  Those fourteen specific questions are nothing like the two general ones at issue here, involving conclusions of law on ultimate issues. *C.f. Bonner*, No. C07-962RSM, 2009 U.S. Dist. LEXIS 12641, at **4-5 (assault and battery claims not prerequisite to finding excessive force because the claims "simply are not predicated on one another"); *Westinghouse Elec. Corp. v. Gen. Cir. Breaker & Elec. Supply Inc.*, 106 F.3d 894, 901 (9th Cir. 1997) (affirming denial of motion for new trial where jury's factual findings could be used to correct inconsistent finding on ultimate issue that resulted from incorrect jury instruction).

Even if the verdicts conflict in some way, Bard's motion for a new trial should be denied because a general verdict cannot be overturned on the basis of inconsistency.

**IV.    The Weight of the Evidence Supports the Verdict in Favor of Ms. Booker.**

The burden for establishing grounds for a new trial based on the weight of evidence is "very high" and is proper only when "it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *Cheeks v. Gen. Dynamics*, No. CV-12-01543-PHX-JAT, 2015 U.S. Dist. LEXIS 35853, at **3-8 (D. Ariz. Mar. 23, 2015) (internal quotation omitted, citing 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2803 (1995); *Lind v. Schenley Industries, Inc.*, 278 F.2d 79, 90 (3d Cir. 1960)). "A decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (citation and internal quotation omitted). A new trial should be granted only "[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (citation and internal quotation omitted).

---

[7] Ultimately, the court granted a new trial on the anticipation claims, which it held resembled special verdicts; its grant of a new trial on the obviousness claims was moot because it granted a directed verdict on that issue. *Id.* at 1218, 1231.

1    Here, the weight of the evidence supports the jury's verdict. The evidence in

2    support of this conclusion is contained in Section I, above, and in Plaintiff's Response to

3    Bard's Motion for Judgment as a Matter of Law [Doc. No. not yet assigned], which is

4    incorporated by reference. Contrary to Bard's assertion that it "adequately communicated

5    those risk[s] to Dr. D'Ayala," Mot. at 12, Dr. D'Ayala testified that he "would have used

6    a different filter if there was a different filter that [he] knew of that was better, in terms of

7    its safety profile." Ex. B.1, Trial Tr., 897:18 (playing D'Ayala Dep. Tr., 62:25-63:20,

8    excerpts attached as Ex. B.2). Further, if he "knew back in 2007 . . . that there was even a

9    12 percent probability of fracture with the filter," he would have been unlikely to use the

10    G2. *Id.* at 70:9-20. As explained in Plaintiff's response to the Motion for a Directed

11    Verdict, the jury could reasonably infer that Bard had information about such high failure

12    rates and failed to give it doctors. Indeed, Dr. D'Ayala stopped using the G2 filter based

13    on adverse event reports and what he learned in the literature. *Id.* at 31:13-32:1.

14    None of this evidence reached Dr. D'Ayala (or any of Ms. Booker's physicians).

15    The sales representative that called on Dr. D'Ayala testified that he was not even aware

16    that the G2 filter had more caudal migrations than the Recovery filter, Ex. C.1, Trial Tr.,

17    1273:8-9 (playing Ferrara Dep. Tr. 249:22-250:8, excerpts attached as Ex. C.2), and that

18    he did not share information other than from "true clinical trial[s]." *Id.* at 249:22-250:8.

19    Mr. Carr testified that Bard would not provide information about bench tests or fracture

20    resistance to doctors, even if asked by a doctor to do so, because Bard considered the

21    information confidential. Ex A.6, Trial Tr., 1111:14-1113:8.

22    Thus, there is sufficient evidence to support the jury's verdict that Bard was

23    negligent in failing to provide adequate warnings to Ms. Booker's physicians.

24    **V.    Conclusion**

25    Bard's motion for a new trial should be denied because the verdicts are not

26    inconsistent and because Bard waived the issue by failing to propose a verdict form that

27    prevented the alleged inconsistency now complained of and failed to object to the verdict

28

before the jury was dismissed. Moreover, the substantial weight of the evidence presented in this case shows that the verdict is consistent and no mistake was made.

RESPECTFULLY SUBMITTED this 7th day of May 2018.

GALLAGHER & KENNEDY, P.A.

By: */s/ Mark S. O'Connor*
    Mark S. O'Connor
    2575 East Camelback Road
    Phoenix, Arizona 85016-9225

LOPEZ McHUGH LLP
    Ramon Rossi Lopez (CA Bar No. 86361)
    (admitted *pro hac vice*)
    100 Bayview Circle, Suite 5600
    Newport Beach, California 92660

*Co-Lead/Liaison Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of May 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/ Gay Mennuti*