James R. Condo (#005867)
Amanda C. Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION FOR NEW TRIAL PURSUANT TO RULE 59**<br><br>(Assigned to the Honorable David G. Campbell) |
| SHERR-UNA BOOKER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>C. R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, INC., an Arizona corporation,<br><br>Defendants. | **(Oral Argument Requested)** |

Plaintiff's attempts to reconcile the jury's verdicts on the basis of a post-sale duty to warn, (Pl.'s Resp. at 7), only highlights the fatal inconsistency in the jury's verdicts. Although the plaintiff attempts to harmonize the verdicts by claiming that the finding of a negligent failure to warn was based on the alleged violation of an alleged post-sale duty, her argument ignores the fact that, in exonerating Bard on the strict liability warning claim, the jury necessarily found that Bard did not breach its "continuing duty to adequately warn of defects in [the G2 filter] even after that product has left the control of [Bard]." (Jury Instructions No. 15 (Doc. 10589), at 19.) Thus, the jury's verdicts are, in fact, irreconcilably inconsistent under Georgia law. Furthermore, the Court has authority to order a new trial here, and Bard did not waive its objection to the inconsistency. Alternatively, the jury's negligent failure to warn verdict is against the clear weight of the evidence. Therefore, as demonstrated below and in Bard's Motion, the Court should exercise its authority under Rule 59(a) concerning the inconsistent verdicts and order a partial new trial on the limited issue of failure to warn liability.[1] Such an order is particularly appropriate given that Ms. Booker's case is the first bellwether trial in this MDL designed to assist the parties in reaching fair values for the claims brought by more than 3,700 plaintiffs, and a fundamentally inconsistent verdict defeats that aim.

## I. The Jury's Verdicts Are Irreconcilably Inconsistent and Bard Is Entitled To a New Trial.

Plaintiff's attempt to reconcile the jury's inconsistent verdicts by relying on the continuing duty to warn fails. As demonstrated in Bard's Motion, the elements of a failure to warn claim, whether under a negligence or strict liability theory, are analyzed the same way under Georgia law. *See, e.g., Shelton v. GALCO Int'l, Ltd.*, No. 3:16-CV-00033-TCB, 2017 WL 3597497, at *6 (N.D. Ga. July 19, 2017) ("In a products liability case, whether or not grounded in a strict liability or negligence theory, a manufacturer's duty to warn depends on the foreseeability of the use in question, the type of danger involved, and

---

[1] Plaintiff does not address and therefore concedes that if the Court grants Bard's Motion, a new trial should be limited to the issue of failure to warn liability.

- 1 -

the foreseeability of the user's knowledge of the danger."); *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010) (affirming summary judgment on plaintiff's strict liability and negligent failure to warn claims; "In standard products liability cases premised on a failure to warn, Georgia law insists that a plaintiff show that the defendant had a duty to warn, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injury."); *see also, e.g., Holizna v. Boston Sci. Corp.*, No. 2:12-CV-06173, 2015 WL 2452480, at *3 n.1 (S.D.W. Va. May 21, 2015) (citation omitted) ("Georgia recognizes separate claims for strict liability failure to warn and negligent failure to warn. Georgia courts, however, analyze these separate claims together.").

The Georgia Supreme Court's decision in *Chrysler Corp. v. Batten*, 264 Ga. 723, 450 S.E.2d 208 (1994), did not hold that failure to warn claims under strict liability and negligence theories are to be analyzed differently. Instead, the *Batten* court addressed the unremarkable question whether a negligent failure to warn claim is separate and distinct from a design or manufacturing defect claim for purposes of Georgia's statute of repose. *Id.*, 264 Ga. at 724, 450 S.E.2d at 211 (failure to warn claims "not necessarily coextensive" with design or manufacturing defect because claims involve different duties and thus not barred by statute of repose); *Fletcher v. Water Applications Distribution Grp., Inc.*, 333 Ga. App. 693, 697, 773 S.E.2d 859, 863 (2015) ("With respect to product manufacturers, Georgia law recognizes causes of action based on three general categories of product defect: manufacturing defects, design defects, and warning defects. The duties owed pursuant to each claim are not coextensive and must be analyzed separately."), *aff'd in part, rev'd in part sub nom. Certainteed Corp. v. Fletcher*, 300 Ga. 327, 329, 794 S.E.2d 641, 645 (2016), *reconsideration denied* (Dec. 8, 2016) (citing *Batten*, 264 Ga. at 724, 450 S.E.2d 208) ("Design defect and failure to warn claims are not necessarily coextensive."); *Battersby v. Boyer*, 241 Ga. App. 115, 116-17, 526 S.E.2d 159, 162 (1999) (distinguishing between strict liability theories for defective design and manufacture from "separate and distinct claims" based on negligent failure to warn).

Georgia courts following *Batten* consistently examine failure to warn claims

brought under either theory using the same duty-based negligence analysis. *See generally* J. Kennard Neal and Catherine Payne, *Ga. Prods. Liab. Law* §§ 2:1, 8:1 (4th ed. 2018). Indeed, this is why the Georgia Pattern Jury Instructions do not have a separate charge for negligent failure to warn, but rather have unified charges on inadequate warning. *See* Council of Superior Court Judges of Georgia, *Suggested Pattern Jury Instructions*, Vol. I: Civil Cases, 62.680-62.683 (5th ed. 2016). One of these unified charges specifically provides:

> A manufacturer's duty to warn arises when the manufacturer knows or reasonably should know of the danger presented by the use of a product. Therefore, a manufacturer has a continuing duty to adequately warn the public of defects in a product even after that product has left the control of the manufacturer to be sold or distributed to the consumer.

*Id.* at 62.683 (citing *Batten*, 264 Ga. 723, 450 S.E.2d 208).

This Georgia pattern jury instruction qualifies the general unified charge on "Defect Due to Inadequate Warning," *id.* at 62.680, and explains the well recognized principle "that Georgia law imposes a continuing duty upon manufacturers to warn of a danger arising from a product after its sale or distribution." *Ford Motor Co. v. Reese*, 300 Ga. App. 82, 85-86, 684 S.E.2d 279, 284 (2009); *DeLoach v. Rovema Corp.*, 241 Ga. App. 802, 804, 527 S.E.2d 882, 883 (2000) ("Georgia law recognizes a manufacturer's duty to warn consumers of danger arising from the use of a product based on knowledge acquired after the product is sold.").

Despite the clear Georgia law on this issue, Plaintiff asserts that the verdicts can be reconciled because the strict liability instruction (Instruction No. 15) focused the jury on the time the product was sold or left the control of Bard, while the negligent failure to warn instruction (Instruction No. 17) had "no timing element [] specified," (Pl.'s Resp. at 4).[2] Yet, as the Plaintiff acknowledges in footnote 1 of her Response, the strict liability

---

[2] Plaintiff's other attempt to distinguish the two theories by asserting that Bard's duty to warn under a negligence theory "was not limited only to users and implanters" is contrary to Georgia law. (Pl.'s Resp. at 5.) Under the learned intermediary doctrine recognized in Georgia, Bard only had a continuing duty to warn Ms. Booker's implanting physician. *See, e.g.*, *In re Mentor Corp. ObTape Transobturator Sling Prod. Liab. Litig.*, No. 3:07-CV-00101, 2010 WL 2196629, at *1–2 (M.D. Ga. May 28, 2010) ("The Court does not suggest that in this case the continuing duty to warn is owed directly to the Plaintiffs who

instruction also explicitly provided that Bard had a continuing duty to warn even after the G2 filter was sold or left its control. (*Id.* at 4 n.1.) Thus, Plaintiff's entire effort to reconcile the verdicts based on a continuing duty to warn is belied by the very instructions that she attempts to parse in her Response.

As part of its finding of no liability for strict liability failure to warn, the jury necessarily found (by following the detailed Instruction No. 15) that Bard did not breach its "continuing duty to adequately warn of defects in [the G2 filter] even after that product has left the control of [Bard]." (Jury Instructions (Doc. 10589) at 19). "[Plaintiff's] argument necessarily implies that the jury disregarded its instructions. Thus, the argument directly offends well-established precedents requiring the court to presume that juries follow the law." *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894, 901-02 (9th Cir. 1997) (citations omitted) ("In interpreting jury verdicts, we must assume that the jury followed the trial court's instructions. Therefore we must assume the jury found certain facts" in accordance with the instruction when rendering its general verdict). Hence, under *Westinghouse*, the jury could not find, as Plaintiff invites this Court to conclude, that Bard "breach[ed] its duty to warn about later-acquired information." (Pl.'s Resp. at 4.)

Accordingly, the jury's findings are fatally inconsistent. As addressed in Bard's Motion, as many courts have done when faced with verdicts of no liability on strict liability failure to warn but liability on negligent failure to warn, this Court should order a new trial on Ms. Booker's failure to warn claim.

**II.  The Court Has Authority To Order a New Trial for Irreconcilably Inconsistent General Verdicts.**

When inconsistent general verdicts cannot be reconciled, the Court has the authority to order a new trial if the legal conclusions in the verdicts are predicated on one

---

were ultimately implanted with the product, but that duty may require notification of their physicians who implanted the product."); *Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1363 (N.D. Ga. 1999) ("[I]n the case of a prescription drug or device, a warning to the prescribing physician is sufficient."). Plaintiff did not cite any authority to the contrary.

1   another. *See Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1034 (9th Cir. 2003)
2   ("Unless one legal conclusion is the prerequisite for another, inconsistencies between
3   them must stand."). Indeed, "*Zhang* establishes that verdicts cannot stand in the face of
4   such inconsistency, even assuming *arguendo* that the issue is subject to waiver." *Duhn Oil*
5   *Tool, Inc. v. Cooper Cameron Corp.*, 818 F. Supp. 2d 1193, 1220 (E.D. Cal. 2011)
6   (emphasis original). The *Zhang* court held that it could not disturb the inconsistent general
7   verdicts on appeal because "there [wa]s no legal reason that the verdicts on the two
8   discrimination claims would have had to be identical. Neither is predicated on the other."
9   339 F.3d at 1036. That is not the case here.

10   Plaintiff erroneously asserts that Ninth Circuit precedent prohibits a trial court from
11   ordering a new trial on the basis of an inconsistent general verdict, and that "the verdict
12   must stand." (Pl.'s Resp. at 11-13.) But the argument misconstrues a key point in *Zhang*.
13   (*Id.*) Although "legally inconsistent verdicts may nonetheless stand *on appeal*," the Ninth
14   Circuit held only that it lacked appellate authority to "*direct*[] the trial court to grant a new
15   trial due to inconsistencies between general verdicts," not that the district court lacked
16   authority to do so in the first instance. *Zhang*, 339 F.3d at 1035 (emphasis added).

17   In fact, numerous district courts within the Ninth Circuit recognize that they have
18   authority to grant a new trial under *Zhang*, even if some ultimately determined the
19   verdicts did not warrant a new trial because they did not involve legal prerequisites. *See,*
20   *e.g.*, *Duhn*, 818 F. Supp. 2d at 1221 (citing *Zhang*, 339 F.3d at 1034) (ordering new trial
21   on legally inconsistent verdict involving legal prerequisites); *see also Bonner v.*
22   *Normandy Park*, No. C07-962RSM, 2009 WL 279070, at *1 (W.D. Wash. Feb. 2, 2009)
23   (citing *Zhang*, 339 F.3d at 1034) (recognizing "well-established principle" that "[o]nly
24   when one legal conclusion is the prerequisite for another should an inconsistent verdict be
25   set aside;" but claims were "not predicated on one another"); *Lam v. City of San Jose*, No.
26   14-CV-00877-PSG, 2016 WL 10654047, at *7 (N.D. Cal. May 13, 2016) (recognizing
27   authority under *Zhang* but finding claims "were independent"); *Apple, Inc. v. Samsung*
28   *Elecs. Co.*, 920 F. Supp. 2d 1079, 1101 (N.D. Cal. 2013) (recognizing authority under

- 5 -

*Zhang* but denying new trial because "[o]nly verdicts that entail two legal conclusions that cannot logically coexist . . . warrant the Court's intervention."), *aff'd in part, rev'd in part*, 786 F.3d 983 (Fed. Cir. 2015), *rev'd and remanded on other grounds*, 137 S. Ct. 429, 196 L. Ed. 2d 363 (2016); *Rutherford v. McKissack*, No. C09-1693 MJP, 2011 WL 3421532, at *2 (W.D. Wash. Aug. 4, 2011) (applying "legal prerequisite" standard but denying Rule 50(b) motion where "two claims involve different legal standards and neither is a prerequisite to the other"), *aff'd*, 505 F. App'x 677 (9th Cir. 2013).

As demonstrated above and in Bard's Motion, the jury's inconsistent verdicts in Ms. Booker's case presents the precise situation contemplated in *Zhang*. The elements of failure to warn under a theory of negligence or strict liability are identical under Georgia law and are thus more than legal prerequisites. The jury's necessary findings and ultimate verdict that Bard provided an "adequate warning of the G2 filter's potential dangers" and "adequately communicate[d] to Ms. Booker's physicians the warnings provided," cannot logically coexist with its contrary findings and ultimate verdict that Bard breached its duty to warn "in the adequacy of the warnings about the G2 filter," and was therefore "negligent in failing to warn about the risks of the G2 IVC filter." (Jury Instructions (Doc. 10589), at 18, 21.) This is especially so given that the jury found that Bard did not breach its continuing duty to warn (*Id.* at 19.) Thus, the jury's verdicts are fatally inconsistent, and this Court has the authority to order a new trial on Ms. Booker's failure to warn claim.

**III.     Bard Did Not Waive Its Objection to the Inconsistent Verdicts.**

Contrary to Plaintiff's assertion, the Ninth Circuit recognizes that a party does not waive objections to an inconsistent verdict by failing to object immediately and move for resubmission absent counsel affirmatively misleading the court such as when counsel was given the opportunity to object but declined to do so. *See Los Angeles Nut House v. Holiday Hardware Corp.*, 825 F.2d 1351, 1354-55 (9th Cir. 1987); *Flores v. City of Westminster*, 873 F.3d 739, 757 n.11 (9th Cir. 2017) (citing *Los Angeles Nut House*, 825 F.2d at 1354-55 & n.3) (finding waiver where "[t]he parties were twice asked if they saw any reason the jury could not be discharged and did not object."); 9-49 *Moore's Federal*

Nelson Mullins Riley & Scarborough L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

*Practice - Civil* § 49.20 (2018) ("The Ninth Circuit distinguished the waiver cases on the basis that in nearly all of them, counsel had been given an opportunity to object to inconsistencies before the jury's discharge but that counsel had declined to do so. Thus, the Ninth Circuit reasoned, waiver would be an appropriate result in those instances where counsel had affirmatively misled the judge in order to get the jury dismissed prior to objecting to the inconsistency.").[3]

Bard was not given the opportunity to object nor did it mislead the Court in order to get the jury dismissed before objecting to the inconsistency, and thus Bard did not waive its objection.[4] *Flores*, 873 F.3d at 757 n.11; *Los Angeles Nut House*, 825 F.2d at 1354; *see also Brandon v. Liddy*, No. CV-12-0788-PHX-FJM, 2014 WL 4304011, at *1 (D. Ariz. Sept. 2, 2014) (counsel specifically given opportunity to address any "issues with what the verdicts mean," but declined, resulting in waiver of objection to inconsistency in general verdicts); *Cf. Williams v. Bridgeport Music, Inc.*, No. LACV1306004JAKAGRX, 2015 WL 4479500, at *35 (C.D. Cal. July 14, 2015) (counsel was specifically "invited to move to correct the verdict if an inconsistent one were returned"), *aff'd sub nom. Williams v. Gaye*, 885 F.3d 1150 (9th Cir. 2018) (reversing district court's reconciliation of inconsistent general verdicts due to waiver).

Moreover, as a practical matter, a contemporaneous objection would have been inappropriate. For Bard's Motion, Bard undertook extensive research and analysis of Georgia law and the jury instructions, and Plaintiff did likewise in its response—this

---

[3] The authority relied upon by Plaintiff is distinguishable. *Philippine* waivers apply in cases challenging purported conflicts between legal conclusions when a jury's verdict finds liability but awards zero damages. *Philippine Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 805-06 (9th Cir. 1984). That is not the case here. *Philippine* also predates the Ninth Circuit's discussion of the appropriate application of waiver in *Los Angeles Nut House*, 825 F.2d at 1354-55. Likewise, *Mason v. Ford Motor Co.*, 307 F.3d 1271 (11th Cir. 2002), is not controlling on this Court. It is well recognized that "[t]he circuits are not uniform as to the effect of a failure to object to inconsistencies." 9-49 *Moore's Federal Practice - Civil* § 49.20 (2018) ("It is important to note that in nearly all of the cases where waiver has been invoked, the trial court had given counsel an opportunity to object to the jury's verdict before the jury was discharged and counsel raised no objection until appeal.").

[4] The irreconcilable nature of the verdicts was not apparent to counsel for Bard until after the jury was discharged when counsel had the opportunity to research the issue. Thus, counsel for Bard lacked a good faith basis to object to the verdict at the time.

critical analysis would not have been possible through a contemporaneous objection, immediate argument, and an immediate ruling by the Court before the jury was discharged. Additionally, although the Court has complete discretion to resubmit inconsistent verdicts to the jury, *Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1057 (9th Cir. 2003), *as amended on denial of reh'g* (Apr. 17, 2003) ("[W]here the jury is still available, a district court's decision to resubmit an inconsistent verdict for clarification is within its discretion."), exercising it here would have required the Court to instruct the jury on the specific inconsistency, which could have biased further jury deliberations and potentially led to an improper compromise verdict.[5]

Furthermore, even if the Court were to find waiver, the jury's fatally inconsistent verdicts cannot stand. *See Duhn*, 818 F. Supp. 2d at 1220 (emphasis original) ("*Zhang* establishes that verdicts cannot stand in the face of such inconsistency, even assuming *arguendo* that the issue is subject to waiver."). This is especially true given the import of the verdict in the *Booker* case to the bellwether process, not just her individual case. The jury's inconsistent verdicts threaten to render the outcome meaningless to this purpose. Accordingly, the Court should order a new trial limited to failure to warn liability.

**IV.   The Jury's Verdict Is Against the Clear Weight of the Evidence.**

As demonstrated in Bard's Rule 50(b) Motion and Reply in Support, the trial record contains legally insufficient evidence to uphold the jury's verdict that Bard negligently failed to warn Dr. D'Ayala about the risks of the G2 filter that Ms. Booker received. Alternatively, the weight of the evidence demonstrates plaintiff presented insufficient evidence of an alternative warning, insufficient evidence that the G2 Filter fractured at significantly higher rates than other filters; insufficient evidence that a warning about an alleged "cascade of complications" would have changed Dr. D'Ayala's

---

[5] The inconsistency between the two general verdicts here cannot be easily or definitively traced to any alleged error in the jury instruction or verdict sheet; therefore waiver under Rule 51 does not apply under these circumstances. *Cf. Zhang*, 339 F.3d at 1037. Moreover, Plaintiff's misquote the "complete waiver" rule in *Zhang*, (Pl.'s Resp. at 8), which applies under Rule 50, not Rule 51. *Zhang*, 339 F.3d at 1029 ("This Court strictly applies the rule that Rule 50 allows complete waiver if an objection is not properly made.").

decision to use the G2 Filter for Ms. Booker; and insufficient evidence that a post-implant warning to Dr. D'Ayala would have avoided Ms. Booker's damages.[6] Thus, even after giving full respect to the jury's findings, the clear weight of the evidence presented at trial demonstrates that "the jury has made a mistake." *Landes v. Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). Accordingly, this Court should order a new trial on Bard's liability for failure to warn.

## V. CONCLUSION

For the foregoing reasons, and for the reasons stated in Bard's Motion, this Court should order a new trial on the limited issue of Bard's liability for failure to warn.

RESPECTFULLY SUBMITTED this 14th day of May, 2018.

```
                          s/ Richard B. North, Jr.
                          Richard B. North, Jr.
                          Georgia Bar No. 545599
                          Matthew B. Lerner
                          Georgia Bar No. 446986
                          NELSON MULLINS RILEY & SCARBOROUGH, LLP
                          Atlantic Station
                          201 17th Street, NW / Suite 1700
                          Atlanta, GA  30363
                          PH: (404) 322-6000
                          FX: (404) 322-6050
                          richard.north@nelsonmullins.com
                          matthew.lerner@nelsonmullins.com

                          James R. Condo (#005867)
                          Amanda Sheridan (#027360)
                          SNELL & WILMER L.L.P.
                          One Arizona Center
                          400 E. Van Buren
                          Phoenix, AZ 85004-2204
                          PH: (602) 382-6000
                          jcondo@swlaw.com
                          asheridan@swlaw.com
```

---

[6] Although the plaintiff suggests that Bard should be liable to Ms. Booker for failing to warn the medical community in general, her argument is contrary to Georgia law, which provides that under the learned intermediary doctrine Bard only had a post-sale duty to warn Ms. Booker's implanting physician. *See, e.g.*, *In re Mentor Corp. ObTape Transobturator Sling Prod. Liab. Litig.*, 2010 WL 2196629, at *1–2 ("The Court does not suggest that in this case the continuing duty to warn is owed directly to the Plaintiffs who were ultimately implanted with the product, but that duty may require notification of their physicians who implanted the product."); *Wheat*, 46 F. Supp. 2d at 1363 ("[I]n the case of a prescription drug or device, a warning to the prescribing physician is sufficient.").

- 9 -

**Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of May, 2018, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

s/ Richard B. North, Jr.
Richard B. North, Jr.