Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
602-530-8000
*Co-Lead/Liaison Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation<br><br>SHERR-UNA BOOKER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>C.R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, an Arizona corporation,<br><br>Defendants. | No. MD-15-02641-PHX-DGC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT TO SEAL CERTAIN TRIAL EXHIBITS**<br><br>(Assigned to the Honorable David G. Campbell) |

Plaintiff submits her Opposition in Response to Defendant C.R. Bard, Inc.'s and Bard Peripheral Vascular, Inc.'s Motion to Seal Certain Trial Exhibits ("Motion"). (Doc. 11010).

**I.    INTRODUCTION**

C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") have asked this Court, in derogation of common law and the First Amendment, for the exceptional remedy of ex post facto sealing of 81 exhibits published in open court during a 12-day trial.[1]

Plaintiff opposes Bard's Motion on the basis that Bard has waived the right to seek such protection as these documents have entered the public domain and can no longer be said to contain trade secrets by nature of the fact that members of the public were free to, and did,

---

[1] At least four of the documents Bard seeks to seal were admitted and deemed public by Judge Jones's Order in *Phillips v. C.R. Bard et al.*, Case No. 3:12-cv-00344-RCJ-WCG, District Court of Nevada, Jan. 26 - Feb. 9, 2015. (*See also*, Ex. A)

observe the trial proceedings without any request by Defendants to seal the courtroom prior to admission of these exhibits or contemporaneously while these exhibits were being used in court. A Ninth Circuit District Court agreed with Plaintiff's position in 2015 and denied an analogous motion Bard filed in a Recovery filter case utilizing many of the same documents, *Phillips v. C.R. Bard*.[2] *See* Ex. A, Order.  Defendants' arguments in the *Phillips* Motion are parallel to the arguments currently before the Court, including the same categories of exhibits[3] and relying on the same case law.[4] *See* Ex. B, *Phillips* Mot. To Seal Certain Trial Ex. and Tr. The District Court of Nevada held:

> "…[T]hese categories of information do not satisfy the compelling reasons test. The only harm that could come to Defendants form the release of this information is the precipitation of further lawsuits against it. Preventing lawsuits due to the release of inculpating information is not a compelling reason to seal otherwise public legal proceedings. Indeed, the exposure of facts relevant to the material claims in a lawsuit is the purpose of a trial, and these facts should remain public unless the harm likely to result from their release is unrelated to the nature of the claims. The information does not directly implicate trade secrets.
>
> Even if the test could be satisfied, Plaintiff correctly notes that Defendants have waived the issue because Defendants made no motion to seal the exhibits or testimony at the public trial. See e.g., *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 & n.11 (2nd Cir. 2004); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 680 (3d Cir. 1988); *Nat'l Polymer Prods. v. Borg–Warner Corp.*, 641 F.2d 418, 421 (6th Cir. 1981); *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 588 (E. D. Va. 2009) ("The First Amendment public right of access to these exhibits sprang into existence upon their being offered into evidence for the jury's consideration at trial, and since no request was made to seal them prior to or at that time, Savvis waived any future right to assert any competing interest to be weighed by the Court and, thus, any objection to the public availability of the exhibits in the Court's files.")." (emphasis added). *See* Ex. A, Order.

---

[2] Bard filed a "Motion To Seal Certain Trial Exhibits <u>and Transcripts</u>" (hereinafter "*Phillips* Motion") (emphasis added).

[3] The categories of documents are similar in both motions. Bard divided documents into three categories in *Phillips* (1) testing, (2) non-testing: design, development, sales, marketing, and FDA submissions/communications, and (3) complaint handling, trending analysis. For *Booker*, Bard separated the FDA related documents into its own group, creating a fourth category.

[4] Bard added <u>one</u> new case to the *Booker* Motion, *Bean v. Pearson Educ., Inc.*, No. CV 11- 8030-PCT-PGR, 2013 WL 2455930, at *2 (D. Ariz. June 5, 2013) (citing "[c]ompelling reasons to seal a typically exist when such court files might become "a vehicle for improper purposes, such as the use of records to . . . release trade secrets.").

2

1  *Phillips* aside, Bard has failed to establish compelling reasons supported by specific factual findings that outweigh the weighty public policies and constitutionally ensconced policies favoring disclosure, including promoting public awareness of public health and safety hazards. Bard's motion does not articulate a "narrowly tailored" remedy as required when contemplating suppression of the public's First Amendment right of access to these documents.

The documents at-issue in the Motion are of significant import to the public in general, and particularly to thousands of other patients who unknowingly have an unreasonably dangerous device or fragment of the device still implanted.[5] Plaintiff requests the Court deny Bard's Motion to Seal Certain Trial Exhibits.[6]

**II.  PROCEDURAL HISTORY**

On November 9, 2015, the Court granted a stipulated blanket protective order pursuant to Rule 26 of the Federal Rules of Civil Procedure. (Doc. 268). *See* Ex. C. The Order provides a broad definition of information that can meet the "good cause" standard under Rule 26 and allowed Bard to self-designate discovery materials as protected. The Order did not modify or address Bard's burden to establish "compelling reasons" before documents are attached to dispositive motions or revealed at trial. The Order expressly states it does not apply, in any way, to the use of documents at trial in Section XX, para. 28:

> The terms of this Protective Order do not preclude, limit, restrict, or otherwise apply to the use of Confidential Information at trial. The use of Confidential Information during trial will be addressed in a later agreement between the parties, or, if they cannot reach an agreement, by further order of the Court.

Bard has no basis for reliance on this Protective Order at or after trial. (Doc. 101101 at 5). To the extent Bard intended to seal any documents public view, it was incumbent on Bard to obtain a separate order from the Court before the start of trial to address the use of the documents during a public trial.

---

[5] Bard has sold over 30,000 of Recovery filters and 115,000 G2 filters. BPV-17-01-00237176

[6] Based on review of the exhibits Bard seeks to seal, Plaintiff suspects Bard may be exercising creative liberties by using its motion as a vehicle to protect evidence relevant to the punitive damage verdict regarding Bard's knowledge about the risks of its IVC filter line and its efforts to downplay those risks to both to public and the FDA. (Doc. 11010, Exhibit A at 2-4).

3

In accordance with the Pretrial Order requirements, prior to trial the parties exchanged exhibit lists and as subsequent 12-day jury trial began on March 13, 2018 during which two hundred and seventy-four (274) exhibits were admitted into evidence. (*See* Minute Orders, Doc. 10479, 10481, 10485, 10496, 10498, 10519, 10525, 10556, 10565, 10580, 10586, and 10590). Bard now moves to seal eighty-one (81) trial exhibits; 60% are exhibits Bard introduced into evidence.

## III.  ARGUMENT

### A.  No Exceptional Circumstances Exist Allowing for Ex-Post Facto Sealing of Exhibits Admitted During a Public Trial.

Courts have overwhelmingly denied requests seeking after-the-fact sealing of allege trade secret information disclosed in open court.[7]

Bard does not dispute that the documents it seeks to seal were discussed and admitted as trial exhibits in open court to the public. The Court allowed members of the public, who had

---

[7] *See Warner Chilcott Co., LLC v. Mylan Inc.*, 2014 U.S. Dist. LEXIS 181576 at * 3 (D.N.J. Dec. 10, 2014); *see also, Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, 2013 U.S. Dist. LEXIS 45050 at *16 (W.D. Pa. Mar. 29, 2013)("Previous public disclosure of information in open court, and even outside of court, operates to waive any right to seal judicial records containing such information."  "[I]t is well established that the release of information in open court is a publication of that information and, if no effort is made to limit its disclosure [prior to the proceeding], operates as a waiver of any rights a party had to restrict its future use.'")(quoting *Littlejohn*, 851 F.2d at 677; *Fleming v. Escort, Inc.*, 2013 WL 1290418 (D. Idaho Mar. 27, 2013)(refusing to seal information regarding companies' confidential and proprietary business and financial information because it was discussed at open trial and the moving party could not claim it was unaware disclosure was likely to occur.); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 n.11 (2d Cir. 2004)(holding that "[o]nce [information] is public, it necessarily remains public" and further stating that "[o]nce the cat is out of the bag, the ball game is over"); *In re Google Inc. Gmail Litig.*, 2014 U.S. Dist. LEXIS 136420, 2014 WL 1053744032-33 (N.D. Cal. Aug. 6, 2014)("In sum, where, as here, the parties did not request closure of the courtroom ... and the disclosures were not inadvertent, the Court will not permit an ex-post facto redaction of statements made in open court in the transcript."); *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, U.S. Dist. LEXIS 6763, 2010 WL 2710566, at *10-12 (D.N.J. July 7, 2010)(denying post-hearing motion to seal transcript because information disclosed during open court is part of the public record; "the onus is on the parties to request sealing of the courtroom prior to a hearing that will involve the discussion of allegedly confidential information."); *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.,* 2012 U.S. Dist. LEXIS 58227, 2012 WL 1432519, *20-21 (D. Ariz. Apr. 25, 2012)("neither party made any request prior to the proceeding to restrict public access to the proceeding. Nor did the parties take any steps to limit or object to the public disclosure of this information at the proceeding. Thus, the parties have already voluntarily 'let the cat out of the bag,' and this Court is unwilling, let alone able, to undo what is already done.").

4

not been selected to be jurors, observe the trial. Each day reporters, attorneys, consultants, attorneys from Bard's competitor (Cook, Inc.), other Plaintiffs, and interested spectators viewed the proceedings. The documents were discussed extensively by the witnesses, highlighted and blown up on a large screen for everyone in the court room to view. Thus, it's argument that it "consistently treated the information as closely guarded secrets" relying on *In re Denture Cream Products Liab. Litig.*, 2013 WL 214672 (S.D. Fla. Jan. 18, 2013) and Robert Carr's Declaration for support[8] rings hollow. Bard was aware this information would be disclosed during trial and would be required to move to seal the courtroom to the extent it believed any of this information should be sealed from the public. Since Bard never moved to seal the courtroom or otherwise safeguard these documents from public disclosure. Bard decided not to treat these documents as "closely guarded secrets" and waived the right to seek protection as these documents have now entered the public domain.

Bard cites two cases supporting sealing court records ex-post facto, *Livingston v. Isuzu Motors*, 910 F. Supp. 1473, 1480 (D. Mont. 1995) and *Jochims v. Isuzu Motors*, 151 F.R.D. 338 (S.D. Iowa 1993). Those cases held that "although the trial record had not been sealed, there was no common law right of access to confidential documents used at trial." *Livingston,* 910 F. Supp. at 1480 (describing and relying on holding in *Jochims*, 151 F.R.D. 338). The holding directly conflicts with the Ninth Circuit's *Kamakana* decision finding a "strong presumption in favor of access" to judicial materials. 447 F.3d at 1178.[9]

Not only are they inconsistent with controlling authority, both of Bard's cases have important factual differences from *Booker*. Unlike in *Booker*, the protective orders in *Jochims* and *Livingston* expressly governed the use of documents at trial and both parties treated the documents as confidential at trial. *Jochims*, 151 F.R.D. at 341; *Livingston* 910 F. Supp. at 1480.

---

[8] Declaration of Robert Carr attached to Bard's Motion states it is "In Support of Defendants <u>Motion for Summary Judgement Regarding Preemption</u>". From Plaintiff's review, only a few documents that were attached to the preemption motion are at-issue here.

[9] This reasoning also conflicts with *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122 (9th Cir. Or. 2003), which held that when discovery materials are made part of the judicial record but sealed before disclosure to the public and subsequently returned to the defendant after settlement of the case, a third party could still obtain copies of those records absent a showing of "compelling reasons" that outweighed the common law right of access.

5

Here, the Protective Order entered in the MDL expressly does not apply to the use of documents at trial. To the extent Bard intended documents to be sealed from the public, Bard was required to obtain a separate order from the Court. *See* Ex. C, Protective Order.

There is no Ninth Circuit authority allowing the sealing information once disclosed in open court;[10] disclosure operates as publication of the information. Bard not only failed to request that the courtroom be sealed, but actively admitted into evidence more than half of the exhibits it now moves to seal. A retroactive order sealing exhibits that have entered the public domain will not resolve that Bard voluntarily "let the cat out of the bag."

### B.  Bard Cannot Meet the Heavy Burden Required to Justify Sealing Trial Exhibits Which Form the Basis of The Jury Verdict.

#### 1. "Compelling Reasons" Standard for Sealing Judgment-Related Documents.

Courts historically recognize a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978). To overcome the "strong presumption in favor of access" in relation to a dispositive motion or proceeding, the party seeking to seal bears the burden of meeting the "compelling reasons" standard. *Kamakana* 447 F.3d at 1178.

Under the "compelling reasons" standard, a district court must then weigh "relevant factors" and base its decision "on a compelling reason," and "articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 679 (9th Cir. 2010) (citing *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). Relevant factors include the "public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Hagestad*, 49 F.3d at 1434 (quoting *EEOC v. Erection Co., Inc*., 900 F.2d 168, 170 (9th Cir.1990). The mere fact that unsealing such records may lead to embarrassment, incrimination, or exposure to litigation is not a compelling reason to seal court records. *Id. See also, In re Pradaxa (Diabigatran Etexilate) Products Liability*

---

[10] *See e.g., TriQuint Semiconductor, Inc*. 2012 U.S. Dist. LEXIS 58227 at 821 (stating "the parties did not cite to, nor has the Court found, any language in *Kamakana* that references the sealing of information that has already been disclosed at a public proceeding").

6

*Litigation*, 2014 WL 321656, at *4 (S.D. Ill. Jan. 29, 2014) (ordering a German drug maker to de-designate 85 documents previously marked as confidential and ordering the court clerk to unseal the documents).

The Ninth Circuit disfavors sealing broad categories of documents, particularly when specific details regarding the need for such protection are absent. *Kamakana,* 447 F.3d at 1184. The movant party must demonstrate a genuine need, provide a detailed explanation of that need and specific facts supporting the harm that may result. *Id.* at 1182-84.

**2. "Narrowly Tailored" Standard for Limiting the Public's Right of Access Under The 1st Amendment.**

The First Amendment places similar restraints on secrecy. The public's right of access to court records under the First Amendment can be overcome only by "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Hagestad,* 49 F.3d at 1434 (emphasis added); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)

As is the case with the federal common law standard, this is a high threshold that is not easily met, as proponents of secrecy must identify specific reasons why secrecy is warranted and must also demonstrate that any available alternatives to public access would not adequately protect their interests. *Oregonian Pub. Co. v. U.S. Dist. Ct*., 920 F.2d 1462, 1465 (9th Cir. 1990).

**C.     Bard Fails to Meet Its Burden For Its Requested Relief.**

**1.    Bard Failed to Show Compelling Reasons Based on Specific Facts That Actual Harm Outweigh the Strong Presumption of Access to Court Records.**

Bard must establish "compelling reasons" to support sealing eighty-one (81) documents listed in Exhibit A to its Motion. Bard generally claims that the information in it's documents reflect "confidential and proprietary information that must be sealed to protect Bard's financial and business interests." (Doc. 11010 at 2). Bard offers no specific grounds or reasons why disclosure of each document would place Bard at a potential competitive disadvantage or provide Bard's competitors with an economic advantage. Bard fails even to

7

identify the substance of the information it seeks to seal; Bard has only listed the subject matter and the titles of certain documents that fall into each category. Nor can such a showing be made.[11] Bard does not explain how such information, in the hands of a competitor, would inflict harm especially on stale technology regarding products and information most of its witnesses claim they have no recollection of on the stand. Notably Bard fails to offer any supporting affidavits, declarations or other evidence in support.[12] Thus, Bard has not met its heavy burden.

Bard's reliance on case law is also inapposite. Many of the cases Bard cites to support its arguments to seal are simply irrelevant. Bard relies on a lengthy string cite regarding "categories of sealed information" without differentiating or distinguishing between the Ninth Circuit's standard for evaluating "good cause" and "compelling reasons" to overcome the "strong presumption in favor of access". *See Kamakana,* 447 F.3d at 178-79. Critically, these cases are focused on discovery matters and motions for summary judgment; none of them address sealing trial exhibits ex post facto.

In 2013, Bard was involved in a dispute regarding whether two categories of materials were trade secret. *See In re C. R. Bard, Inc. Pelvic Repair System Prods. Liab. Litig.* 2013 U.S. Dist. LEXIS 70189 (S.D. W. Va. May 17, 2013); *Id.* at *14. In that case, "Bard contend[ed] [the documents] revealed the internal thought processes, testing, analysis, hypothesis and research and development methods both for products in development at the time the documents were written and for future development." [13] *Id*. at *18-19. The court rejected Bard's claims of trade secret as conclusory and unsupported.

---

[11] Although this is a tedious task to accomplish, Plaintiff is obligated to review each document Bard requested to seal and Bard must do the same instead of categorizing them in broad groups by the title of the document. It is Bard's burden to review each of these exhibits and determine if proposed redactions for trade secret information are warranted, rather than make sweeping assumptions based on general information such as discussion of failure modes or testing.

[12] Robert Carr's declaration does not support the Motion as it was prepared for Bard's Motion to Seal Preemption Related Documents. Only a few documents referenced in the Declaration are at-issue here.

[13] Similar to Bard's categories 2 and 3.

8

> Bard's statements do not indicate the reasons why such information is trade secret or otherwise entitled to protection. Bard does not explain how such information, in the hands of a competitor, would inflict harm. *Id.* at *19.

Bard's failure to provide specific factual support for its claims of trade secret is strikingly similar to the factual deficiency in *Biocore, Inc. v. Khosrowshahi,* 96 F. Supp. 2d 1221, 1231-32 (D. Kan. 2000) ("*Biocore*"). In *Biocore*, a company alleged that its business procedures for conducting clinical trial studies and for obtaining FDA clearance under FDA regulations were trade secrets.[14] As in the present matter, *Biocore* as the plaintiff in the matter, failed to produce evidence describing the procedures it summarily deemed trade secrets and failed to explain how its procedures differed from others in the field or from the general FDA requirements. Accordingly *Biocore* failed to establish the documents were trade secrets because it failed to meet its burden of "proving that their method of conducting efficacy studies is different from methods that are matters of general knowledge in the trade." *Id.* at 1231.

> While both items are marked confidential, they contain nothing but basic information. Plaintiffs do not show that the validation protocol and validation procedures are not generally known. They provide no evidence regarding protocols and procedures which other companies use. Neither document describes any procedure that appears to be out of the ordinary; the documents list obvious procedures which every company in the field would also follow with slight but obvious variations for specific equipment and products.

*Id.* at 1232 (internal citations omitted). As in *Biocore*, Bard fails to provide anything beyond general and unsupported claims.

### 2. Bard Fails To Provide A Narrowly Tailored Approach Or Demonstrate Adequate Available Alternatives To Public Access.

Bard's fails to articulate a "narrowly tailored" remedy as required when contemplating suppression of the public's First Amendment right of access to these documents. *Hagestad*, 49 F.3d at 1434.

Bard has not met the high threshold and identified specific reasons why secrecy is warranted other than vague generalities and categories as discussed above. *See Oregonian Pub. Co.,* 920 F.2d at 1465. More importantly, Bard has not demonstrated that any available

---

[14] Similar to Bard's category 4.

9

alternatives to public access would not adequately protect their interests. *Id.* Bard has requested only one resolution, to seal all 81 exhibits in their entirety, which is not a narrowly-tailored remedy. Bard fails to justify its requested infringement on the public's First Amendment right of access; resolution of court cases offers public accountability, fosters public confidence, and provides notice of the legal consequences of behaviors and choices. *See* Federal Judicial Center, *Sealing Court Records And Proceedings*, 2010.

### D. Bard's Exhibits Cannot Be Characterized as Trade Secrets.

The documents at-issue cannot be objectively characterized as trade secrets or confidential information. At least four of the documents Bard to seeks were seal admitted at the *Phillips* trial and deemed public records in a subsequent Order, including a Recovery 510(k) submission, G2 design verification and validation testing report, a fracture analysis/R002, and a Corrective Action memorandum. [15] (*See* Ex. A, Order; *see also*, Ex. D, E, F, and G, the four public documents). These four documents are representative of the four categories of exhibits Bard is seeking to seal here and further supports Plaintiff's position that these exhibits cannot be characterized as trade secrets as these four documents, along with 250 similar ones, are currently available for the public and competitors to view. (*See* Ex. H, chart with exhibit categories).

The information contained in these documents have no inherent or intrinsic actual or potential value. For 74 of 81 exhibits involve products which have not been sold since 2009. Secret or confidential information becomes "stale" over time and a previous confidential designation can no longer apply. *See Salomon Smith Barney, Inc. v. HBO & Co.*, 2001 WL 225040, at *2 (S.D.N.Y. Mar. 7, 2001) (finding that there may have been confidentiality when documents were generated, but insufficient cause shown "for so treating them today").

---

[15] **Category 1** (Ex. D): Tr. Ex. 5303, ETR-05-02-05 (G2® Design Verification and Validation Testing), Version 0 admitted in *Phillips*, Version 2 admitted in *Booker*. From a cursory review of each page, the exhibits are almost identical, except for an approval page in Rev. 2. **Category 2** (Ex. E): Tr. Ex. 1951 1/31/2005 Memorandum from Peter Palermo to Kerry Chunko Re. "Quality Plan 2005 Memo" includes Corrective Action Plan (CAPA), manufacturing process **Category 3** (Ex. F): Tr. Ex. 1945, 10/1/2006 E-mail from Natalie Wong to Several Re. "Fracture Docs" includes risk/benefit ppt, R002, "Steps for calculating estimated rates"; **Category 4** (Ex. G): Tr. Ex. 5190 July 10, 2002 IMPRA Recovery Permanent Special 510(k) (K022236);

10

Allegedly confidential business information 'is not entitled to the same level of protection from disclosure as trade secret information.'" *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991), quoting *Littlejohn v. BIC Corp.*, 851 F.2d at 685. Trade secrets are defined in the Ninth Circuit as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569–70 (9th Cir. 2008). Bard does not identify which policies and procedures these documents would allegedly reveal, how the information in these documents would reveal such information, or how these policies and procedures differ from those generally known and used in the industry.

Bard argues generally that the medical device industry is competitive; "sealing each category of information listed above is further warranted in this case because Bard has continually made efforts to protect the information from its competitors, in part because it could be used by competitors against Bard." (Doc. 11010 at 8). Bard, however, fails to mention that at least one attorney from Bard's competitor was present at the *Booker* trial, this fact alone diminishes Bard's "competitive advantage" argument. (Doc. 11010 at 3-4).

Further, Bard's competitors arguably have no use for information Bard seeks to seal since all but seven of the documents concern the SNF, Recovery and G2 filter lines which are no longer marketed in this country. (Exhibits 5602, 5691, 5706, 5851, 5872, 5874, and 5842). Bard has not articulated the specific content within these documents that will be of value to competitors. Listing the titles of documents without reference to their substances does not operate as a compelling reason. (Doc. 11010 at 3-4). As such, speculative commercial harm is insufficient to overcome the "strong presumption in favor of public access." Bard has offered no evidence that policies and procedures used from 2002 through 2009 are still in place today. Similarly, the manufacturing process for the Recovery filter has been replaced, the Recovery filter and each generation through the Meridian filter have been removed from the market. Bard now only sells the Denali retrievable filter, which has a different manufacturing process

and is cut from single piece of metal. Bard's competitors have little to no commercial use for information regarding products that are no longer on the market.

To meet the "compelling reason standard" a company must at minimum establish the specific information that is subject to trade secret. *Selling Source, LLC v. Red River Ventures, LLC*, 2011 U.S. Dist. LEXIS 49664, *18 (D. Nev. Apr. 29, 2011).[16] Simply marking as "confidential" or suggesting commercial harm without specific facts is inadequate to establish a compelling reason to seal 81 trial exhibits.

### E.   There is Substantial Public Interest in the Information Bard is Moving to Seal.

The public has a strong interest in the subject matter of this trial. As a general matter, the public has a right to learn what occurred during this trial. "Indeed, the common law right of access to federal courts is designed to promote "a better understanding of the operation of government as well as confidence in and respect for our judicial system."" *Publicker Indus.*, 773 F.2d at 1070. The public also has a financial stake in this trial. *See Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.,* 2013 U.S. Dist. LEXIS 45050 at * 30 (W.D. Pa. Mar. 29, 2013). Tax payer dollars underwrite salaries of court personnel, juror expenses, and the space afforded to the parties in the courthouse. A long trial and complicated litigation, like this case, incurs great costs on the court's time and resources; "what transpired in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947).

The public has a right to know evidence indicating the existence of a public safety hazard. Plaintiff's punitive damage award establishes the jury's intent to punish, penalize, or deter Bard's conduct. O.C.G.A. § 51-12-5.1 The exact evidence Bard is trying to seal was relied on by jurors in determining this award. Some courts have held the public has a right to know whether a company has tried to conceal and/or failed to take appropriate safety steps regarding dangers in its products. *See Culinary Foods v. Raychem Corp.*, 151 F.R.D. 297 (N.D. Ill. 1993).

---

[16] This is an unpublished opinion by a district court wherein both parties stipulated that the documents were trade secret.

In *Culinary Foods*, plaintiff filed a product liability claim alleging the manufacturer was aware of dangers and defects in a pipe that led to a fire and continued to manufacture and market the product. 151 F.R.D. 297 (N.D. Ill. 1993). The court held that evidence showing the manufacturer knew of the dangers and either failed to act or attempted to conceal the information could not be sealed even under the "good cause" standard. *Id.* at 301. The court explained:

> Although the information regarding the hazards of products and the corporation's knowledge of the information may be embarrassing and incriminating, this alone is insufficient to bar public disclosure. Furthermore, where trade secrets are not at issue, common sense would indicate that the greater a corporation's motivations for secrecy, the greater the public's need to know. In addition, we agree ... it is inconceivable to this court that under such circumstances the public interest is not a vital factor to be considered in determining, whether to further conceal that information and whether a court should be a party to that concealment. *Id.* (internal quotations and citations omitted).

Here, the public as well as those thousands of patients implanted with a Recovery or G2 filter have a substantial interest in knowing information Bard withheld from the public suggesting the Recovery and G2 filters expose patients to increased risk, Bard knew its devices were not reasonably safe for human use, and Bard purposefully downplayed and concealed these risks while actively marketing the G2 filters as being as safe and effective as all other available IVC filters. Bard's exhibits reveal, among other things, the public safety information that is of importance to the public.[17]

Courts uniformly hold that the public's interest in access to court records is strongest when records concern issues of public health or safety. The Sixth Circuit previously vacated orders sealing evidence, emphasizing that the public had a particularly strong interest in the court records because the "litigation potentially involves the health of citizens who have an

---

[17] The exhibits Bard tries to seal show that Bard has failed to warn the public that the Recovery and G2 filters anchoring mechanism may have been deficient; that it set the migration resistance specification to low; that multiple tests showed that even when perfectly deployed, the device failed to meet its own minimum safety specifications; that when tilted, in a vena cava that distends, or when one or more struts have fractured, the device fails to meet a minimum safety level for migration resistance; that multiple test confirmed the Recovery filter is less able to resist clot challenges than other devices; that the G2 filter was known to have substantially higher reported failure rates than all other devices; or that according to Bard's own policy and procedure, its devices were not reasonably safe for human use. These documents contain information revealing a public safety hazard and Bard's efforts to downplay and conceal that hazard from the public.

13

interest in knowing the accurate 'tar' and nicotine content of the various brands of cigarettes on the market." *United States v. General Motors*, 99 F.R.D. 610, 612 (D.D.C. 1983); *see also, In re Air Crash at Lexington, Ky.,* August 27, 2006, No. 5:06-CV-316-KSF, 2009 WL 1683629, at *8 (E.D. Ky. June 16, 2009). Another court noted, in granting a motion to unseal court records, "the greater the public's interest in the case the less acceptable are restraints on the public's access to the proceedings." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983).

## IV.  CONCLUSION

Bard waived the right to seek protection of documents that have entered the public domain with its knowledge and can no longer be said to contain trade secrets. Bard has failed to rebut this presumption and offers no compelling reason why such information should be deemed trade secret or otherwise entitled to protection. Bard does not explain how such information, in the hands of a competitor, would inflict harm nor does Bard offer a narrowly tailored remedy. For all these reasons, the Court should deny Bard's requests to seal certain trial exhibits.

RESPECTFULLY SUBMITTED this 25th day of May, 2018.

GALLAGHER & KENNEDY, P.A.

By: */s/ Mark S. O'Connor*
　　Mark S. O'Connor
　　2575 East Camelback Road
　　Phoenix, Arizona  85016-9225

LOPEZ McHUGH LLP
　　Ramon Rossi Lopez (CA Bar No. 86361)
　　(admitted *pro hac vice*)
　　100 Bayview Circle, Suite 5600
　　Newport Beach, California 92660

*Co-Lead/Liaison Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of May 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/ Gay Mennuti*