James R. Condo (#005867)
Amanda C. Sheridan (#027360)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
jcondo@swlaw.com
asheridan@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
Taylor Tapley Daly (admitted *pro hac vice*)
Georgia Bar No. 697887
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Telephone: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation | No. 2:15-MD-02641-DGC<br><br>**THE DEFENDANTS' SUBMISSION OF BRIEFING REGARDING THE ISSUES IDENTIFIED IN CMO NO. 33**<br><br>(Assigned to the Honorable David G. Campbell)<br><br>**(Oral Argument Requested)** |

Pursuant to Case Management Order No. 33 (Doc. 11320), Defendants submit this memorandum to address the four issues set forth in the Order.

## I. THE FOURTH AND FIFTH BELLWETHER TRIALS

Bard believes that <u>Kruse</u> should proceed as the fourth bellwether case and <u>Hyde</u> as the fifth case. That order will provide the parties and the Court with more representative data, as <u>Hyde</u> is another fracture case, and two of the first three bellwether cases already tried (<u>Booker</u> and <u>Jones</u>) will have been fracture cases.

As of June 8, 2018, Bard had completed review of 3,488 plaintiffs' profile forms received in the MDL. That review revealed the following breakdown of the cases:

| # of PPF's Reviewed | # of Reported Fractures | % of Cases Involving Fracture |
|---|---|---|
| 3,488 | 662 | 19% |

Hence, while 100% of the bellwether cases tried thus far (<u>Booker</u> and <u>Jones</u>), have involved a fracture of the filter, that complication mode arises in only 19% of the MDL inventory. Moreover, <u>Hyde</u> is very similar to the <u>Jones</u> case, as it involves a fracture followed by a percutaneous retrieval of the filter. The parties need predictive insight and data regarding all of the complications alleged in this MDL other than fracture, as those other complications comprise more than 80% of the MDL pool. The <u>Hyde</u> case will present no new information in that regard.

## II. THE SIXTH BELLWETHER TRIAL

Bard proposes that the sixth bellwether trial be the <u>King</u> case. That case is more representative of the MDL inventory as a whole. The case involves an alleged perforation of a G2 filter, followed by an unsuccessful attempt to retrieve the device. It is much more reflective of the inventory than the other four candidates, which disproportionately involve factors found in only a small number of cases.

The data pertinent to that assessment, based on the review of 3,488 PPF's (as of June 8), is as follows:

| Recovery Filter Cases | | Fracture Cases | | Open Procedure Cases | |
|---|---|---|---|---|---|
| # | % | # | % | # | % |
| 319 | 9% | 662 | 19% | 101 | 3% |

Based on that breakdown, the remaining cases are outliers that are not representative of the MDL.

- DeWitt is a G2 case involving a fractured strut to the heart and possible open surgery performed to retrieve it.[1]  MDL data shows that only 3% of cases involve an open surgical procedure.  The DeWitt case is therefore unlike the majority of cases in the MDL.  Further, the parties have already tried a comparable case, as the Booker case involved the same filter and similar complications, including open heart surgery.  The Hyde case involves a fractured strut to the heart as well.

- Mixson is the case involving an Iraqi war veteran with bilateral leg amputations, and the Court has previously determined that these extreme circumstances disqualified the case as an appropriate bellwether trial.

- Peterson is an Eclipse filter with a perforation leading to bleeding and an open abdominal surgery.  The case is similar to the Booker case, which also involved an open surgery.  With the inclusion of Booker, 16% of the 6 bellwether trials already will be a surgery case (more than 5 times the percentage of surgery cases in the MDL).  Moreover, the same complication mode will have been litigated in other bellwether cases, since perforation has been alleged in Jones, Mulkey, Kruse, Hyde, and King.

- Tinlin involves a Recovery filter.  Tinlin experienced a fractured strut to the heart and open heart surgery.  Plaintiffs insist on trying a Recovery case despite

---

[1] Bard lacks updated medical records or information sufficient to determine whether or not this surgery took place.

-2-

the facts that Recovery filters make up only 9% of the MDL pool, and two Recovery filter cases (Phillips and Everett) have already proceeded to trial.  In addition, Tinlin involves a fracture and an open surgical procedure.  Tinlin is not representative for those reasons alone.  Equally important, Tinlin involves a plaintiff who suffers from debilitating and progressive multiple sclerosis.  She is wheelchair bound and has some limitations in her ability to communicate and travel.  As such, it is a case with unique facts and circumstances, unrelated to the filter issues, which could influence the case outcome.

For those reasons, Bard believes the King case is significantly more representative of the bulk of the MDL inventory than the other candidates.

### III.     THE DISPOSITION OF SNF CASES

At present, there are roughly 90 Simon Nitinol Filter ("SNF") cases pending in this MDL. However, the Plaintiffs' Steering Committee has never developed a case against that device, and thus, there is no evidence to support the plaintiffs' claims that the SNF is defective.  Bard understands that the Plaintiffs' Lead Counsel are now engaged in discussions with the attorneys involved in those cases and will be requesting 30 additional days to complete those discussions.  Bard does not oppose that request and stands ready to consider any proposal Plaintiffs suggest regarding how to handle them.

In the meantime, Bard notes that if the cases are part of this MDL, Defendants should be permitted to file a motion for summary judgment addressing those cases.  The Plaintiffs have developed no evidence, through expert opinion or otherwise, supporting their claims in those cases.  In fact, Plaintiffs' principal claim against Bard's retrievable filters is a contention that those devices are not substantially equivalent to the Simon Nitinol Filter, which they tout as a superior alternative design.

If the cases are not properly a part of this MDL, they should promptly be dismissed outright rather than remanded.  Specifically, they should not be remanded to individual courts throughout the country for individual proceedings.  It would be antithetical to the purpose of multidistrict litigation to remand almost 100 cases for separate discovery on

-3-

common issues of fact.

In short, if all or some of those plaintiffs intend to proceed with their cases, they should be required to do so within the framework of this MDL.

## IV. MATURE CASES

The Court has asked the parties to address the appropriate time for remand of the "mature" cases in this MDL. To ensure that the Court and the parties obtain the maximum benefit from the MDL bellwether process, Bard submits that remand of those cases should be postponed until a later point in that process.

Previously, Plaintiffs asked the Court to permit case-specific discovery in the ten mature cases, so that the cases would be ready for trial once remanded to their transferor courts. (Doc. 8851). The Court declined to do so. (Doc. 8871). In reaching that conclusion, the Court noted that it "anticipates that the parties and the Court will be busy over the next few months preparing for motions hearings and trial." (Doc. 8871).

That same concern militates against remanding the mature cases at this juncture. The Court has already scheduled two more bellwether trials in this MDL during the second half of 2018. The Court has further announced its intention to schedule two additional bellwether trials during the first half of 2019. As a result, the parties will be fully engaged in preparing and trying those four cases.

The simultaneous remand of ten cases for additional discovery and trial settings will undoubtedly distract the parties and the attorneys involved in this MDL from an appropriate focus on those trials. To provide the parties (and the Court) the best insight into the strengths and weaknesses of the cases, and ultimately the settlement value of the MDL inventory, it is essential that the parties focus their best efforts and resources on presenting the strongest cases possible. Remanding ten cases immediately will create conflicts not only for the attorneys, but also for expert and fact witnesses. Those conflicts and distractions will invariably impact the quality of the presentations at the bellwether trials, and undermine the predictive value of the results.

Moreover, there already exist a number of competing obligations over the next

twelve months. There are presently four state court cases scheduled for trial in the fall of 2018, and another eleven scheduled in the first half of 2019. Adding another 10 remanded MDL cases to that mix virtually ensures the parties, their attorneys, the experts, and other witnesses will not be able to devote the time and attention that a successful bellwether process demands.

Given those concerns, Bard submits that the Court should consider remanding the ten mature cases in early 2019. By that time, the parties will have completed four bellwether trials. With a January 2019 remand, the parties could complete the remaining fact-specific discovery in those cases during the first half of 2019, and have them ready for trial in their transferor jurisdictions following the completion of the six MDL bellwether trials.

DATED this 15th day of June, 2018.

*s/Richard B. North, Jr.*
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
Taylor Tapley Daly
Georgia Bar No. 697887
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com
taylor.daly@nelsonmullins.com

James R. Condo (#005867)
Amanda Sheridan (#005867)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
JCondo@swlaw.com
ASheridan@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2018, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

*s/ Richard B. North, Jr.*
Richard B. North, Jr.