Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
602-530-8000

*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC |

**PLAINTIFFS' SUBMISSION RE BELLWETHER CASES, SNF FILINGS, AND REMAND OF MATURE CASES**

Per this Court's direction in CMO 33, Plaintiffs submit their brief with respect to the following issues: (a) The Plaintiff for the fourth and fifth bellwether trials (Hyde and Kruse); (b) the identity of the Plaintiff for the sixth bellwether trial (Peterson, Tinlin, King, Mixson, or DeWitt); (c) the presence of SNF cases in this MDL and what should happen with them; and (d) the appropriate time for remand of the "mature" cases discussed in previous Case Management Orders.

## I.     Order of the Fourth and Fifth Bellwether Trials

Of the first five bellwether selection, the *Hyde* and *Kruse* cases remain to be set for trial. Plaintiffs submit that this Court should set *Hyde* for trial first and then *Kruse*.

*Hyde* involves a G2x filter implanted on February 25, 2011; the case involves a filter fracture and multiple complications including tilt, perforation, embolization of the broken strut to the heart, and a complex filter retrieval. As Bard described the case in its bellwether case submission, "the case gives the parties the opportunity to test their arguments as to these numerous complications, including any interrelationship between the complication modes." [Doc. 5652.]

*Kruse* involves a G2 filter implanted in July 2009; it involves an unsuccessful percutaneous retrieval of the filter in 2009. The device remains in Ms. Kruse.

As a starting point, both *Hyde* and *Kruse* are defense picks for the bellwether pool. Plaintiffs previously identified Hyde as a Discovery Pool case but did not advocate for its inclusion in the bellwether pool. Thus, while the case is not a joint selection, like the *Mulkey* case, it enjoys more support from both parties as an appropriate case for a bellwether trial. Accordingly, Plaintiffs propose *Hyde* should be the fourth trial.

## II.    The Sixth Bellwether Trial

Plaintiffs propose the *Tinlin* case as the sixth bellwether trial; alternatively, Plaintiffs propose the *Dewitt* case.

With the first five bellwether trials, this Court selected three G2 cases (*Booker*, *Hyde*, and *Kruse*) and two Eclipse cases (*Jones* and *Mulkey*). Based on the MDL filings, as between those generations of devices, the breakdown is approximately as follows:

| | | |
|---|---|---|
| Recovery | | 14.9% |
| G2 (and G2 Express and G2x) | | 55.3% |
| Eclipse | | 29.8%[1] |

The parties will have tried more than a representative amount of Eclipse cases once *Mulkey* is tried. And, with the trials of *Booker*, *Hyde*, and *Kruse*, half the bellwether trials will be G2 cases – coming close to the 55-60% of filed cases. While it has the least representation of sales and filed cases, the lack of a Recovery case is conspicuous by its absence.

### A. This Court Should Select *Tinlin* as the Sixth Bellwether Case.

*Tinlin* is the only Recovery case in the current bellwether "pool," and the trial of a Recovery case is important to the bellwether process. Ms. Tinlin suffered signature failures by the Recovery filter – cranial migration and fracture. Without a Recovery trial, the parties have no information as to how those cases are going to be tried and no opportunity to test their best arguments as to the Recovery filter in this MDL. The selection of *Tinlin* will provide that essential information to the parties.

In the initial selections of bellwether cases, the Court noted that travel would be difficult for Ms. Tinlin. Plaintiffs have since confirmed that Ms. Tinlin is willing and ready to travel to Arizona for trial.

Plaintiffs believe also that, trial of a Recovery case will be beneficial to the bellwether process and the goal of global resolution. Recovery cases represent some of the more serious cases and resolution of those cases and their value will prompt earlier resolution between the parties. The more serious cases will have substantial influence on any potential global settlement. Further, as Plaintiffs have contended, the Recovery is the predicate device for the later generation filters and, without it, the other devices would not have been on the market. Thus, resolution of Recovery issues could affect later generation cases. Moreover, the trial of a Recovery case has the potential to result in findings that could be applicable to other and later generation cases.

Accordingly, Plaintiffs request that this Court select *Tinlin*.

---

[1] Of all the devices, the percentages are approximately as follows: Recovery 11.1, G2/G Express/G2X 41.3, Eclipse 22, Meridian 12.4, Denali 12.6.

###### B. Alternatively, the Court Should Select *Dewitt*.

Should the Court not select *Tinlin*, Plaintiffs request that it select *Dewitt*. In CMO 23, the Court concluded that *Dewitt* may be a good candidate for a bellwether after resolution of his medical issues in 2017. CMO 23 (Doc. 5770) at 2.

*Dewitt* is a G2 case involving tilt, perforation of the filter through the IVC, and fracture. There were multiple attempts to retrieve the filter percutaneously without success but the broken piece was retrieved from the lung. Since this Court's initial selection of the first five bellwether cases, Mr. Dewitt has had an open abdominal procedure to remove his filter. Thus, his medical treatment is complete and the issues that this Court found to exclude the *Dewitt* case as a bellwether have been resolved.

The case is representative of the numerous G2 cases filed in the MDL. As noted in Plaintiffs' Submission of Cases for Bellwether Group 1, many (if not the majority) of the filed cases involve multiple complications, including more than 43 percent of the cases involving irretrievable filters. *Dewitt* provides the opportunity to litigate issues relating to irretrievability and the procedures required to remove irretrievable filters.

Further, this Court's first five selections include one joint selection of the parties (*Mulkey*), one selection by Plaintiffs (*Booker*), and three selections by Bard (*Jones*, *Hyde*, and *Kruse*). The bellwether process should provide reasonable information as to case values on both sides of the spectrum. Thus, while Bard attacks Plaintiffs' selections in *Tinlin* and *Dewitt* as being on the more serious end of the spectrum, those cases even the scale as compared to Bard's selections. They further provide valuable information as to the value of higher-end cases – information that provides an idea as to the ceiling for all cases and, thus, is relevant to all cases and to any global or mass settlement where serious cases are the driving and dominant issue.

###### C. Bard's Remaining Proposed Cases Are Inappropriate.

The selection of *Nelson* would be inappropriate for at least two reasons. First, it is yet another Eclipse case. A third Eclipse trial would mean that 50 percent of the bellwether trials would be for a device that represents less than 25 percent of the MDL filings and approximately 26 percent of Bard's sales as between the devices eligible for these bellwether cases. As Bard demonstrated in *Jones*, its defense in Eclipse cases will be specific to that device – it argued repeatedly to the jury that the Eclipse is not the G2, claiming that electropolishing makes the Eclipse a different device with different performance. Particularly in a case that involves a fracture (the complication Bard contends was reduced by electropolishing), Bard's trial strategy in an Eclipse case makes it such that those cases provide information that is truly only useful in other Eclipse cases.

Additionally, as this Court noted in its order selecting the bellwether cases, *Nelson* is extremely similar to the *Jones* case and would not provide the parties with "the range of information hoped for from bellwether trials." CMO 23, at 1. Simply, trying another Eclipse case and particularly *Nelson*, would dramatically skew the bellwether process in favor of a device that represents only about a quarter of Bard's sales. Plaintiffs believe this is consistent with the Court's objective, given that it did not identify *Nelson* among the potential sixth bellwether cases in CMO 33.

For the reasons set forth in Plaintiffs' Submission of Cases for Bellwether Group 1 (Doc. 5723) and Plaintiffs' Response to Defendants' Submission Regarding Selection of Cases for Bellwether Group 1 (Doc. 5724) and as this Court stated on the record at the May 3, 2017, Case Management Conference (and as concluded by the Court in CMO 23), the *King* case would not be an appropriate bellwether trial. That case involves highly specific issues relating to the plaintiff's counsel's involvement with the explanting physician and a "no interest" loan that Bard contended was inappropriate and demonstrates the case is not representative. For these reasons, this Court stated at the May 3, 2017, CMC that *King* was "fairly clearly out of the mix." May 3, 2017, CMC Transcript at 4-5.

Indeed, in its own bellwether filing (Doc. 5652), Bard conceded that *King* was not representative but asked that the Court strike one of Plaintiffs' picks to "even the playing

4

field." Doc. 5652, at 14.  The Court found that King was not a proper bellwether "[b]oth because the defendants have a concern about involvement by some plaintiffs' attorneys in the treating physician who became involved in that individual's treatment and because there was a non-Bard recovery device used in the recovery attempt."  May 3, 2017, CMC Transcript at 5.  It further found that Plaintiffs' lead counsel was not at fault for the expert in that case and denied Bard's requests to strike another pick. *Id.*  Nothing has changed that would make *King* an appropriate bellwether trial.

**III.    SNF Cases Filed in This MDL**

Plaintiffs do not believe that Simon Nitinol Filter (SNF) cases are properly part of this MDL.  The Master Complaint (Doc. 364) is limited to Bard's retrievable filters. Paragraph two of the complaint states as follows:

> The subject IVC filters are part of Bard's IVC "retrievable" filter product line and include the following devices: Recovery, G2, G2X (G2 Express), Eclipse, Meridian, and Denali (for convenience, these devices will be referred to in this complaint under the generic term "Bard IVC Filters").

*See also* ¶¶ 11 and 12 (listing same devices).  The factual background in the Master Complaint demonstrates that the facts supporting the claims relating to Bard's actions in the design, development, marketing, and sale pertain to its retrievable filters.  And, the Short Form Complaint does not include the SNF.  *See* CMO 4.

Similarly, the August 17, 2015, Transfer Order for this MDL states that "[a]ll actions involve common factual questions arising from allegations that defects in the design of Bard's retrievable inferior vena cava filters ("IVC filters") make them more likely to fracture, migrate, tilt, or perforate the inferior vena cava, causing injury."

Bard has identified 93 cases involving SNF filters in the MDL; several of those involve multiple filters, and, according to Bard, four cases involve an SNF and another Bard retrievable IVC filter.  To Plaintiffs' Lead Counsel's understanding, these cases have been filed by 23 different law firms.  Lead Counsel has sent letters to those firms to determine what action those firms desire or intend to take with their cases.

Because of the number of firms and plaintiffs involved, Co-Lead Counsel requests 30 days to permit final responses and decisions by each firm and plaintiff.  Some of these

5

firms have multiple clients, and each plaintiff should be afforded a reasonable opportunity to be full informed of their options in light of the fact that this MDL will not litigate any cause of action where the issue and allegations involve the SNF as the defective product. Bard has agreed that the requested 30 days is reasonable.

## IV. Remand of the "Mature" Cases

Plaintiffs believe that the previously identified "mature" cases should all be remanded to their courts or original jurisdiction at this point. All common discovery, expert disclosure, and discovery has been completed; and this Court has ruled on all summary judgment motions, *Daubert* issues, and other generic issues that apply to all the cases in the MDL. Simply, further participation of these cases in the MDL will not provide any additional benefits to the parties and there is no reason to delay remand.

Plaintiffs have conferred with Bard and it does not agree to immediate remand, contending that remand of these cases will "disrupt the bellwether process." Quite to the contrary, however, these cases will give the parties more data – products, time periods, jurisdictions (law), venues (e.g., jury venires), plaintiff demographics, etc. Moreover, these ten mature cases are also probably the oldest cases whose trials or resolutions would have happened two or more years ago but for having been swept into the MDL. Indeed, in the parties' Stipulation Regarding Status of Mature Cases (Doc. 914) in March 2016, the parties anticipated that these cases would be "ripe for remand in 4-6 months."[2]

Further, because these plaintiffs and cases were full participants in the MDL, fairness dictates that they should have access to the evidence and expert testimony developed in the MDL after remand. Bard appears to agree, but Plaintiffs request that the Court confirm that these plaintiffs should be allowed to use the evidence and expert testimony developed in the MDL after remand of their cases.

---

[2] Plaintiffs also note that the trials scheduled to commence in Arizona state court on August 6, 2018, have settled. Thus, the parties will not have the benefit of the information that would have come from trying those cases – making early remand even more important to the overall settlement process.

RESPECTFULLY SUBMITTED this 15th day of June 2018.

          GALLAGHER & KENNEDY, P.A.

          By: */s/ Mark S. O'Connor*
            Mark S. O'Connor
            2575 East Camelback Road
            Phoenix, Arizona  85016-9225

          LOPEZ McHUGH LLP
            Ramon Rossi Lopez (CA Bar No. 86361)
            (admitted *pro hac vice*)
            100 Bayview Circle, Suite 5600
            Newport Beach, California 92660

          *Co-Lead/Liaison Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

          */s/ Gay Mennuti*

7