1           UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF ARIZONA

3                  _____

4   In Re: Bard IVC Filters            )   MD-15-02641-PHX-DGC
    Products Liability Litigation      )
5                                      )   Phoenix, Arizona
                                       )   **May 31, 2018**
6   _____)

7

8

9

10      BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE

11         REPORTER'S TRANSCRIPT OF PROCEEDINGS

12         <u>STATUS AND SCHEDULING CONFERENCE</u>

13

14

15

16

17

18

19

20

21   Official Court Reporter:
     Patricia Lyons, RMR, CRR
22   Sandra Day O'Connor U.S. Courthouse, Ste. 312
     401 West Washington Street, SPC 41
23   Phoenix, Arizona  85003-2150
     (602) 322-7257
24
     Proceedings Reported by Stenographic Court Reporter
25   Transcript Prepared with Computer-Aided Transcription

1                    **A P P E A R A N C E S**

2    For Plaintiff:

3            Gallagher & Kennedy
             By: **MARK S. O'CONNOR**, ESQ.
4            By: **PAUL L. STOLLER**, ESQ.
             By: **SHANNON L. CLARK**, ESQ.
5            By: **C. LINCOLN COMBS**, ESQ.
             2575 East Camelback Road, Suite 1100
6            Phoenix, AZ  85016

7            Lopez McHugh, LLP
             By: **RAMON ROSSI LOPEZ**, ESQ.
8            100 Bayview Circle, Suite 5600
             Newport Beach, CA  92660
9
             Lopez McHugh, LLP
10           By: **JOSHUA MANKOFF**, ESQ.
             214 Flynn Ave.
11           Moorestown, NJ  08057

12           Heaviside Reed Zaic
             By: **JULIA REED ZAIC**, ESQ.
13           By: **LAURA E. SMITH**, ESQ.
             312 Broadway, Ste. 203
14           Laguna Beach, CA  92651

15

16   For Defendants:

17           Nelson Mullins Riley & Scarborough
             By: **RICHARD B. NORTH, JR.** ESQ.
18           By: **ELIZABETH C. HELM**, ESQ.
             201 17th Street NW, Suite 1700
19           Atlanta, GA  30363

20           Nelson Mullins Riley & Scarborough.
             BY: **JAMES F. ROGERS**, ESQ.
21           1320 Main St.
             Columbia, SC  29201
22
             Snell & Wilmer
23           By: **AMANDA C. SHERIDAN**, ESQ.
             400 East Van Buren
24           Phoenix, AZ  85004

25

**P R O C E E D I N G S**

08:30:08  1

2

3          THE COURT:  So let's talk about scheduling.

4          It seems to me we need to cover the schedule I talked

14:09:15  5   about earlier today, which is things like motions in limine,

6   deposition designations, the final pretrial order.  We also

7   need to talk about the jury questionnaire and get dates for

8   that to be sent out.  We need to decide what the next

9   bellwether trial is so we know what we're preparing for.

14:09:39  10          We said in an earlier case management order that we

11   would pick the sixth bellwether plaintiff after the first two

12   trials, so we should talk about whether it's time to do that,

13   because I assume there's some additional discovery on that

14   plaintiff that needs to be done.

14:09:52  15          I'm thinking that the fifth and sixth trials will

16   occur in the first half of 2019, although we haven't picked

17   dates for it yet.

18          So those are the things that we need to talk about.

19          I don't know that we've set a final pretrial

14:10:11  20   conference date for the September trial.

21          MR. NORTH:  I don't think we've set a case either.

22   Which case it would be.

23          THE COURT:  Right.  Right.  We need to pick a

24   plaintiff.

14:10:23  25          So the dates we've set are September 10th through the

14:10:28   1    14th, 18th through the 21st, and 24th through the 28th.

2          But I may have overlooked something.  I've got to be

3    in DC for a meeting in the month of September for the Judicial

4    Conference of the United States.

14:10:54   5          (The Court and the courtroom deputy confer.)

6          THE COURT:  Counsel, we've got those dates set in

7    September.  I don't see that I've made accommodation for a

8    meeting I have to be at in DC that always happens in the

9    middle of September, so I need to figure out what that is and

14:12:54  10    we'll just adjust the schedule on one side or the other to

11    accommodate that.

12          But in light of that I think, what we ought to do --

13    I think what we ought to do is set the final pretrial

14    conference for Thursday, August 30th, if that works with

14:13:40  15    everybody.  And that would be a couple weeks before the start

16    of trial.

17          And I would say 10:00 a.m. like we did before so that

18    we've got enough time during the day to accomplish it.

19          If we did that, then in terms of the jury

14:14:05  20    questionnaire, following the same type of schedule we've had

21    before, I would propose that you jointly provide me with any

22    changes to the questionnaire in light of whoever the plaintiff

23    is by July 5th.

24          Nancy, could you check and see when the judicial

14:14:30  25    conference meeting is in September.  The Judicial Conference

14:14:34  1    of the United States.  It's not on the calendar and I've got

2    to take into that account for the trial schedule.  Thank you.

3            So if you could get your joint comments to me by

4    July 5th, we would mail out the questionnaire to 200 people

14:14:49  5    again by July 13th, with instructions that it be returned to

6    the Court by August 10th.  You could pick up copies of the

7    questionnaire by August 17th.  I would provide you with my

8    list of people excused for hardship by August 24th.  And then

9    we would go through the same process at the final pretrial

14:15:14  10   conference on August 30th that we had before.

11           Any concerns or questions about that schedule?

12           MR. LOPEZ:  No, Your Honor.

13           MR. NORTH:  None, Your Honor.

14           THE COURT:  Okay.

14:17:12  15   I would then suggest that we have motions in limine

16   due by Friday, July 27th, with responses by Friday,

17   August 10th.  Same kind of approach we've taken before.

18   Short, focused motions in limine.

19           That we have the final pretrial order submitted by

14:17:55  20   August 17th.  And that we have deposition designations

21   submitted by August 15th.  Because I'll have some time, some

22   travel time, when I could work on those in the week after

23   that.

24           MR. LOPEZ:  Did you say 15, Your Honor?

14:18:43  25           THE COURT:  15, yeah.

14:18:54   1              Any concerns about those dates?

2              MR. LOPEZ:  Not from plaintiffs, Your Honor.

3              MR. NORTH:  None, Your Honor.

4              THE COURT:  Okay.  Do you think we need to have

14:19:06   5      another hearing like we had in April on issues that you may

6      want me to revisit for this third trial?  Or should we do that

7      as part of the final pretrial conference?  We did it earlier

8      after the Booker trial, I think just to get them on the table.

9              MR. LOPEZ:  Well, I think we should, Your Honor.

14:19:28  10      We -- you may not want to hear this today, but we need to

11      revisit this time issue that keeps burdening the plaintiffs

12      more than it does the defense.

13              We heard your mandate from last time.  We did our

14      best to stay within that, but I think it's important for the

14:19:42  15      Court to know that we sent home or did not call our regulatory

16      expert, our reporting rates expert, or our SIR guidelines

17      expert in this case because we didn't have time to do it.  And

18      those are -- those are primary defenses in the case.  And

19      there's just no way we could have called them.

14:20:06  20              And we talked about this once before when we talked

21      about timing of these cases.  Because I tried a Recovery

22      case -- Recovery case is a little simpler because your

23      evidence stops at a certain period of time.  We were in trial

24      with Judge Jones from like 8:00 in the morning until 6:00 at

14:20:26  25      night and it took us about eight or nine days to get our

14:20:30   1    evidence in just in a Recovery case.  And you know Judge

2    Jones, he -- if he felt we were being cumulative or overdoing

3    it, he would have told us.

4         We're doing our best to fit within these confines,

14:20:43   5    but I have to remind the Court that way back when, when we

6    talked about timing these cases, we talked about three weeks

7    and then you had mentioned that that would be mean 12 days

8    because you're only in court -- and then the number of hours

9    that you had set at that time was 66.  And so I thought, just

14:21:04  10    in thinking through that, if we got an extra two hours we

11    probably got 35.  I always said it takes 35 hours to try these

12    cases.  I've always said that.  And that's even tough to do.

13    And now we're -- we've basically got a day and a half less to

14    try these cases.

14:21:22  15         When I agreed to -- I wasn't taking into

16    consideration deliberation time for the jury.  Technically we

17    have a day and a half left in a 12-day trial that we could

18    have really used on the plaintiff side.

19         We'd like to revisit that.  I don't know if you want

14:21:39  20    us to brief it.  I don't know if you want us to lay out our

21    rationale and why it is unfair to the plaintiffs who have the

22    burden of proof in this case and to lay out for you the

23    defense -- I mean the defense knows what our case is.  I'll

24    lay out in detail what these three experts would say and what

14:21:55  25    additional evidence we can't put in.

14:21:57  1          Then we get to the defense part of the case and we're

2     100 miles an hour trying to cross-examine.

3          And I don't think we're going to get a real feel for

4     the bellwether results unless the plaintiffs have a little bit

14:22:13  5     more time to really put on the evidence that we just don't get

6     to put on in these cases.

7          I promise you there's a lot of stuff on SRI

8     guidelines, on reporting rates, and on this FDA defense that

9     we just don't get -- the jury never sees.  They didn't see it

14:22:30 10     last time and didn't see it this time.  And if we have the

11     same restriction, they're not going to see it next time.

12          So, again, Your Honor, I'm only saying this because

13     we want to get a real feel for whether or not these bellwether

14     cases are going to tell us something.  I think the plaintiffs

14:22:44 15     have to have a better opportunity to present their cases

16     because there's some state court cases coming up where we're

17     not going to have these restrictions and maybe we'll get a

18     read there.  Which will be good.  I mean, it'll show in a

19     different set of circumstances, maybe even without FDA

14:23:00 20     evidence, what those cases are worth.

21          But if we want to get a real read in the MDL about

22     the liability picture, the damages picture, the defenses, and

23     whether or not if you remand all these cases back to different

24     courts what they're really going to look like, I don't think

14:23:20 25     we're going to under the circumstances that we have right now.

14:23:23   1          I just -- again, I want to be able to articulate this

           2    better and lay it out for the Court so the Court more fully

           3    understands why we, with this tremendous burden of proof that

           4    we have, are trying two-thirds of a case.

14:23:38   5          I know the evidence.  I know that I haven't shown you

           6    yet what it is that we are not able to put into evidence, but

           7    it's a fairly significant amount of expert testimony and

           8    evidence and testimony from corporate witnesses.

           9          We took five or six corporate witnesses out of this

14:23:56  10    thing that were pretty important to us.  We had to make -- you

          11    know, we had to make decisions.  Then the case-specific part

          12    comes in, and that's different for every case.

          13          THE COURT:  I understand what you've said.

          14          MR. LOPEZ:  Thank you, Your Honor.

14:24:11  15          THE COURT:  Do defendants want to say anything on

          16    that point?

          17          MR. NORTH:  Your Honor, we personally believe that

          18    the restrictions are reasonable and viable and we have

          19    endeavored to live within them and I think have successfully

14:24:23  20    done so, and I think it imposes a sense of necessary order and

          21    limitation to the trial.

          22          (The Court and the judicial assistant confer.)

          23          MR. LOPEZ:  Your Honor, may I add one thing quickly?

          24          The defense called a regulatory expert, a reporting

14:25:27  25    rates expert, and an SRI guidelines expert.  That's how we had

14:25:31  1    to put that evidence in, through their experts.  And we didn't

2    have that opportunity to do it because we just don't have time

3    to do it in our case in chief.

4         THE COURT:  I understand what you've said.

14:25:40  5         I will think about this when I set the overall

6    schedule.  If I am not inclined to give you additional time,

7    I'll let you brief it so that you can make a full argument.

8         What else, though, do you think we need to address?

9    Do we need to set a hearing where we revisit other issues, or

14:26:00  10   can we do that at the final pretrial conference?

11        MR. LOPEZ:  Couple things.  Number one, we've agreed

12   on one of the three that should be in the next -- we haven't

13   agreed on the order.  Mr.--

14        THE COURT:  That's a different question.

14:26:13  15       MR. LOPEZ:  Oh.  I'm sorry.

16        THE COURT:  The question is issues we need to

17   revisit.  We set a hearing two weeks after the last trial to

18   do that.

19        MR. LOPEZ:  I understand.

14:26:21  20       THE COURT:  I won't set one unless we need to do it

21   again.

22        MR. LOPEZ:  Just one, then.  It's Dr. Kandarpa.  He's

23   being deposed in a state court case as part of a state court

24   case.  We want to cross-notice it in that case.

14:26:37  25       Again, we can continue to try these cases without

14:26:39  1  what might be the most important witness on a G2 case, from

       2  the standpoint at least from the plaintiffs' perspective, or

       3  we can arrange so that the prejudice is gone on the next two,

       4  three, four, or five bellwether cases to get Dr. Kandarpa's

14:27:00  5  testimony by videotape.

       6          THE COURT:  Remind me who he is and what the basis

       7  was.

       8          MR. LOPEZ:  Dr. Kandarpa was the medical monitor of

       9  the EVEREST trial.

14:27:08 10          THE COURT:  But what did I rule on him?

      11          MR. LOPEZ:  That because he was not revealed in a

      12  witness -- in the interrogatories when interrogatories were

      13  sent out prior to trial, that he was not revealed as a

      14  potential witness.

14:27:20 15          THE COURT:  Oh, that's right.  Okay.  I remember now.

      16          So you want to use him in the next trial?

      17          MR. LOPEZ:  We do.

      18          THE COURT:  And you say he is being deposed?

      19          MR. LOPEZ:  I can't remember the date.  Mr. Lerner

14:27:31 20  may know.

      21          MR. LERNER:  He's being deposed in late June.

      22          THE COURT:  Is that one of the Arizona cases?

      23          MR. LERNER:  It's for a Florida case.

      24          MR. LOPEZ:  It's cross-noticed in the state court

14:27:48 25  Arizona case.

14:27:52  1          MR. CLARK:  Your Honor, to clarify, this was

        2   cross-noticed in the Arizona consolidated cases and in this

        3   case.  Again, that was one of the things we were going to talk

        4   about today.  We did not want you to think we were sort of

14:28:04  5   violating your order on discovery cutoff, but out of

        6   precaution wanted to make sure that was clear.

        7          THE COURT:  Okay.

        8          I assume the position of the defendants is the same

        9   as it's been before?

14:28:17 10          MR. NORTH:  Right, Your Honor.  Even though they've

       11   known about him, questioned witnesses about him two years ago,

       12   he was never identified in discovery responses and we've been

       13   proceeding, I think both parties and the Court, as if the --

       14   well, with the parameters of the evidence set, and if it's

14:28:34 15   going to start shifting on things like this that weren't

       16   disclosed, I think we're opening up a Pandora's box because

       17   there are other things that could be opened quickly too.

       18          THE COURT:  All right.  Let me think about that as

       19   well.  I want to look back at my ruling.

14:28:51 20          MR. CLARK:  There is a subpart to that.  My

       21   understanding is the deposition also will relate to there's a

       22   foundational issue with respect to some documents that were

       23   produced by Bard but were not Bard documents.  So part of that

       24   deposition, I think, will lay that foundation.  So there's

14:29:05 25   sort of two parts.  There's a substantive witness issue, but

14:29:07  1   also the foundational aspect of the exhibits.  So just for the

2   Court's consideration as you think about it.

3          THE COURT:  Okay.

4          Besides those two issues, are there matters that we

14:29:17  5   need to address in terms of revisiting prior rulings?

6          MS. REED ZAIC:  Your Honor, we would like the *Cisson*

7   on decision, the FDA decision, revisited on a motion in

8   limine.  These last two trials have been based on Georgia law

9   and part of your opinion was based on Georgia law.  The next

14:29:32 10   three plaintiffs are not in Georgia and Georgia law wouldn't

11   be applied.

12          THE COURT:  That's the argument that I should exclude

13   FDA evidence?

14          MS. REED ZAIC:  Yes, Your Honor.

14:29:51 15          THE COURT:  It was fully briefed before and I decided

16   it.  What I think I'd like to do on that issue is have you

17   file a five-page memorandum building on the previous briefing

18   and explaining why the outcome should be different under a

19   different state's law.  Just focusing in on that issue.  I

14:30:10 20   don't think we need to re-brief everything we briefed before;

21   we can read that again.  And allow the defendants file a

22   five-page response.

23          And that's obviously something that should be decided

24   sooner rather than later because that will change the nature

14:30:24 25   of the trial if I were to grant it.

14:30:27  1        So I think what I'd like to do on that issue is have

2   the plaintiff file the five-page memorandum by June 15th.

3   Which is two weeks from tomorrow.  Does that work?

4        MS. REED ZAIC:  It does as long as we know which case

14:30:51  5   is next.  Which law to argue.

6        THE COURT:  We're going to decide that.  And then a

7   five-page memo in response from defendants by June 29th.  Two

8   weeks after.

9        And what I will do is go back and reread those briefs

14:31:13 10   and the order and take into account the new law and decide

11   whether that changes the outcome of that ruling.

12        All right.  I think with those issues identified,

13   I'll indicate in the order that comes out whether I need more

14   briefing on the request for additional time in the Kandarpa

14:31:35 15   issue.  I understand those issues pretty well so I don't think

16   we'll need to brief those.  I don't think we need a hearing on

17   them.

18        We'll look at the *Cisson* briefing.  If we think we

19   need oral argument, we'll just set a phone conference at some

14:31:46 20   point in early July so we can get that decided.

21        All right.  Mr. Lopez, you were going to say

22   something about the next bellwether plaintiff.

23        MR. LOPEZ:  Yes.  Mr. North and with Mr. O'Connor and

24   me have agreed Mulkey should one of the next two.  The dispute

14:32:16 25   is whether or not the Kruse case or the Hyde case should be

14:32:20  1    one of those next two.

2              I just conferred with Mr. O'Connor again and we're

3         trying to figure out what the fourth case is going to be, Your

4         Honor.  We're fine with the Mulkey case being the next case

14:32:36  5    set so we don't have to worry about coin flip this time or

6         delaying the process any further.

7              THE COURT:  Tell me the basics of Mulkey.  What

8         filter?  What kind of injury?

9              MR. O'CONNOR:  I believe it's Eclipse.

14:32:53 10          THE COURT:  It's an Eclipse?

11             MR. NORTH:  Your Honor, it's an Eclipse.  It involves

12        tilt, perforation, and an unsuccessful retrieval attempt.

13             THE COURT:  Okay.  Is there any objection to that

14        being the September trial?

14:33:13 15          MR. NORTH:  No, Your Honor.  We believe it should be

16        because it was a joint pick by both sides.  It was the only

17        one of the five cases that both sides nominated for the pool.

18        So I think it's entirely appropriate.

19             THE COURT:  What state law is that?

14:33:25 20          MS. HELM:  Kentucky.

21             THE COURT:  Kentucky?

22             MS. HELM:  Yes, sir.

23             THE COURT:  Is that any clearer than Georgia law?

24             MS. HELM:  I'm just going to refrain from saying

14:33:35 25    anything to my brethren in Georgia.

14:33:39  1          THE COURT:  I think the assumption has to be yes.

2          MR. O'CONNOR:  It is Kentucky.

3       (The Court and the judicial assistant confer.)

4          THE COURT:  All right, Counsel, I have just learned

14:35:01  5   the item that I hadn't accounted for in the schedule requires

6   me to be out on September 11th, 12th, and 13th, which is a

7   Tuesday, Wednesday, and Thursday.

8          So what I am thinking is that we should shift the trial a

9   week later so that we start on the -- we go the 18th through

14:35:40 10   the 21st, the 25th through the 28th, and August 2nd through --

11   I'm sorry, October 2nd through October 5th.  And I'll adjust

12   that a bit more if I agree we should add time on the overall

13   trial as the plaintiff has requested.

14          We're going to be up against the problem we often are,

14:36:08 15   which is I won't have any flexibility on the back end because

16   coming -- starting the week of October 8th I've got to be back

17   in DC again.  So we'll kind of be locked into those days.  But

18   at least we can get the three-week trial in then.

19          If we weren't to do that, I have no time in October, so

14:36:25 20   we'd really lose the opportunity to try the case in September.

21          MR. LOPEZ:  Good idea.  I think --

22          THE COURT:  Just a second.

23       (The Court and the courtroom deputy confer.)

24          THE COURT:  Go ahead, Mr. Lopez.

14:36:43 25          MR. LOPEZ:  Maybe jury selection on the 14th, Your

14:36:45  1    Honor?

2        THE COURT:  Yeah, that's a possibility.  Problem is I

3    fly back from DC the evening of the 13th on the last flight

4    out.  If for any reason that flight were to be canceled, which

14:37:14  5    has been known to happen flying out of National, I wouldn't be

6    here on the 14th.  I'm just reluctant to call in all of the

7    jurors on a day when there's a risk I won't be here.  I think

8    I'd be here, but --

9        MR. LOPEZ:  I understand.

14:37:28 10        THE COURT:  -- that's the problem.

11        But, as Traci points out, another thing we can do is

12    we could -- no, that's not going to work either.  I've got to

13    be out on the 17th.

14        (The Court and the courtroom deputy confer.)

14:38:08 15        THE COURT:  Traci has pointed out we might have some

16    flexibility to be in trial on Monday the 24th of September

17    and/or Monday, October 1st, which will give us an additional

18    time to work within those days.  So I'll look at all of that

19    in connection with the request for additional time that's been

14:38:28 20    made.

21        But that means that the trial start date is now going to

22    be October 18th.  I can't start it on the 17th.

23        THE COURTROOM DEPUTY:  September.

24        THE COURT:  September.  I've got another meeting on

14:38:46 25    the 17th.

14:38:52  1          I'll tie that schedule down in the order that comes

       2   out after this.

       3          I think when Nancy walked in we were talking about

       4   bellwether trials.  We agreed Mulkey is September.

14:39:10  5          What are your thoughts on how we pick the October

       6   plaintiff?  Are you going to discuss that?  Are you going to

       7   leave it up to me?

       8          MR. LOPEZ:  I think Mr. North and I agreed we would

       9   submit to you kind of our positions why it should be, two

14:39:23 10   pages, and just let Your Honor decide which one based on each

      11   party's rationale and why it should be the fourth.

      12          THE COURT:  All right.

      13          MR. LOPEZ:  We want Hyde, they want Kruse.  That's

      14   the bottom line.

14:39:35 15          THE COURT:  Pardon?

      16          MR. LOPEZ:  We wanted the Hyde case, they want the

      17   Kruse case.

      18          THE COURT:  Do you really mean two pages?

      19          MR. LOPEZ:  Yes, sir.

14:39:44 20          THE COURT:  Okay.  Two pages per side.  By June 15th.

      21          And that raises the question that I mentioned a

      22   minute ago, which is selecting a sixth bellwether plaintiff.

      23          The two questions in my mind:  Do we need to do that?

      24   And, if so, how soon do we need to do that?  Recognizing that

14:40:18 25   the trial of that case would be about a year from now under

14:40:22  1    the schedule we're currently on.

2              What are your thoughts?

3              MR. LOPEZ:  Well, there's not a Recovery case in the

4    mix right now.  Although I will tell the Court there are a

14:40:34  5    number of Recovery cases.  I think three of the four in Judge

6    Brodman's Court scheduled for August are Recovery cases.

7    Maybe we'll get a bellwether read from that.  Of course, that

8    is a non-punitive state.

9              But there are also some Recovery cases that, as you

14:40:54 10    know, Your Honor, we have these early remands that were --

11    some had already gone through MSJs and we just need to

12    schedule MILs.  And maybe the consideration would be instead

13    of moving it out, moving it out, moving it out and having this

14    thing delayed until we get more bellwether kind of data is to

14:41:14 15    let us propose to you some of these cases that we're so close

16    to trial that maybe they could be remanded and tried with a

17    different judge while we're dealing with the five that we're

18    dealing with now.

19             MR. NORTH:  Your Honor, I believe, I'd have to look

14:41:32 20    at the data again, but the last time I looked just two, three

21    weeks ago, only about nine percent of the cases in this MDL

22    are Recovery filter.

23             But more important, when we launched on this

24    bellwether selection process a year and a half ago or

14:41:45 25    whenever, we had a pool of cases that we together went and

14:41:49  1    took a baseline of basic depositions in all of those cases,

2    and then we selected the five bellwethers we presently have

3    from that group.

4          If we go and pick another case, we're going to be

14:42:02  5    starting from scratch.  It's been a while since I've looked at

6    those cases, but we have a pool of cases where both parties

7    have already taken four, five depositions in each case.  And I

8    think that intent was always to draw the next bellwether from

9    that group since we're already pretty far advanced there, and

14:42:22  10   I think that's what we should plan to do.

11         I don't think there's an immediate rush since the

12   trial would be a year from now.  I think maybe if we selected

13   that bellwether by the time of the next trial, that would

14   still give us nine months to do what little additional work is

14:42:37  15   necessary, assuming it comes from that pool where we've

16   already done basic discovery.

17         THE COURT:  In the order that I entered at Docket

18   5770, I noted that besides the five that had been chosen,

19   there were four other candidates that the parties had briefed.

14:43:02  20   And they were -- actually there were five other candidates.

21   There was Nelson, Peterson -- actually there was more than

22   that.  Nelson, Peterson, Tinlin, King, Mixson, and DeWitt.

23         I said in the order the Court will select the sixth

24   bellwether case from Discovery Group 1 after two bellwether

14:43:35  25   trials have been completed.

14:43:39  1        I think what I'd like to do is this:  I'm going to

2    expand your two-page memos to four pages and I'm going to ask

3    to you address two subjects.  One is who should be the fourth

4    bellwether, and the other should be who should be the sixth

14:43:59  5    bellwether.  And if you can agree, great.  If not, give me

6    your thoughts on that subject in light of where we are in the

7    case.

8            Just make a note here.

9            MR. LOPEZ:  15?

14:44:20 10            THE COURT:  Yeah, that's June 15th.

11            And we will address the Mulkey motion for summary

12    judgment that has been briefed in the next month or two.

13            What else do we need to cover from your side?

14            MR. LOPEZ:  That's all I can think of right now, Your

14:44:55 15    Honor.

16            MR. NORTH:  Your Honor, the only other thing I would

17    mention, and I don't know if this is the appropriate time, but

18    some -- at some point as this MDL evolves and prior to any

19    remands on a significant level, there are a couple of issues

14:45:14 20    that I think ought to be addressed, one in particular, that

21    would help winnow down the cases.

22            We believe we have a valid summary judgment motion as

23    to a large -- well, about 100 cases because they all involve

24    the Simon Nitinol filter and there has never been any expert

14:45:31 25    reports disclosed here alleging any defects with the Simon

14:45:34  1   Nitinol filter.  And, to the contrary, the plaintiffs'

2   evidence has always centered upon the Simon Nitinol filter as

3   a viable design alternative.  And that's something -- it's not

4   a front-burner issue, but something down the line we'd like

14:45:49  5   the Court to entertain the possibility of us trying to begin

6   to narrow down the pool of these cases with a motion such as

7   that.

8            MR. LOPEZ:  I don't want to speak out of turn, Your

9   Honor, but I don't think Simon Nitinol filter is even part of

14:46:03 10   this MDL.  We've got no discovery on Simon Nitinol filter.

11   I'd have to look at what the JPML order says, but I don't

12   think we petitioned -- I think this was supposed to be

13   retrievable --

14            THE COURT:  Is it true, though, we have in this MDL

14:46:18 15   100 Simon Nitinol cases?

16            MR. LOPEZ:  We might.  They probably keep track of

17   that better than I do.  But I can find out.

18            MR. NORTH:  94 is the last count I had, Your Honor.

19            THE COURT:  What do we do with those, Mr. Lopez?

14:46:30 20            MR. LOPEZ:  We have to talk to the folks that are

21   involved in that, in those cases, which we have not done.

22            We made it pretty clear in the beginning we weren't

23   going to be doing discovery on the Simon Nitinol filter.  So

24   if they are depending on this committee to have done discovery

14:46:48 25   in those cases, we haven't.  I mean as far as liability.  Of

14:46:51  1   course, as you know, we wanted discovery on it as part of the

2   retrievable cases, but we've not focused any of our generic

3   discovery on the Simon Nitinol filter.

4           MR. NORTH:  I will have to check, Your Honor, but I

14:47:05  5   do believe a number of the cases have been filed by members of

6   the plaintiffs' steering committee.

7           MR. LOPEZ:  Okay.  I don't think it's part of the

8   master complaint, to be honest.  I don't think it is.  I'm

9   told it's not.

14:47:22 10           THE COURT:  Well, assuming that we have those cases

11   in the MDL, we need to do something with them.

12           MR. LOPEZ:  Mr. O'Connor and I will deal with that.

13   Why don't you let us see -- we'll find out who they are, we'll

14   either put together a conference call or send out an

14:47:39 15   appropriate notice to those folks and then let us report back

16   to you within the next ten days, two weeks.

17           THE COURT:  I hate to do it, but I'm going to make

18   these six-page memos, and that's going to be our third issue.

19   Unless you can reach agreement.  If you all disagree on how --

14:48:07 20   if the plaintiffs' view is they're not part of the MDL, they

21   should be sent back to their districts, and the defendants

22   disagree, no, they're part of the MDL and should be resolved

23   here, I'm going to have to decide that issue.  If you're in

24   agreement what needs to happen, that's great.  But let's

14:48:23 25   include that just so we're dealing with that issue as well.

14:48:26  1          What else do we need to address?

2          MR. NORTH:  Nothing further from the defense, Your

3     Honor.

4          MR. LOPEZ:  Nothing further from the plaintiffs, Your

14:48:33  5     Honor.

6          THE COURT:  Let me ask you all a question, then, that

7     I haven't raised before, and that's the overall question of

8     settlement talks.

9          We've got the bellwether trial schedule in place.  I

14:48:47 10     intend to push through to a conclusion, and my intent would be

11     shortly after that to remand everything else.  My assumption

12     being the results in six bellwether trials will give the

13     parties a very good idea how these cases play in front of

14     juries.  If you can't settle it with that, then the MDL has

14:49:09 15     served its purpose and they ought to go home.

16          What I haven't been of a mind to do is finish the

17     bellwether trials and then go into a sort of limbo while time

18     drags on and the parties do some sort of minuet on settlement.

19     But I don't know whether your thought is that the time to talk

14:49:31 20     settlement is after bellwether six or whether that process

21     starts beforehand or whether you're thinking we're not going

22     to talk settlement, in which event I'll just remand after the

23     sixth bellwether verdict.

24          I'm interested in your thoughts.  I'm not going to

14:49:49 25     lean on you to settle.  I don't think that's a proper role for

14:49:52  1    a judge.  But I need to figure out the overall schedule and

       2    decide how it should be put in place to accommodate what you

       3    all are thinking is the necessary settlement discussions while

       4    we are in the MDL.  If any.  So I invite your thoughts on

14:50:09  5    that.

       6            MR. LOPEZ:  Well, first of all, I don't think you'll

       7    ever hear a plaintiffs lawyer say he's not interested in

       8    discussing settlement of any case.

       9            THE COURT:  I haven't yet.

14:50:21 10            MR. LOPEZ:  We didn't start this MDL just so we can

      11    try 3,000 cases.

      12            The reason we have this MDL, Your Honor, I know

      13    you've heard me say this before, is I had a few cases and a

      14    few of us had a number of cases that were about five percent

14:50:37 15    of what this MDL reveals right now and we were invited to have

      16    a global settlement discussion with Bard three times,

      17    including after what I thought was a successful trial with

      18    Judge Jones in a Recovery case.  And the interest -- the

      19    disinterest in that did not come from us.  So we were

14:51:00 20    prepared.

      21            In fact, we prepared our cases three years ago with

      22    much detail and demands to Bard about settling cases.  I can't

      23    speak for them, but it seemed like their MO was then, and

      24    maybe it is now, keep taking us to the courthouse steps before

14:51:20 25    they settle.

14:51:20   1          I don't know.  I can tell you that we did a demand

       2   letter and gave them cases, spent I don't know how much money

       3   doing a forensic report on those cases and various ranges of

       4   values depending on the device, the year of the device, the

14:51:39   5   age of the plaintiff.  We spent, I don't know, probably close

       6   to $100,000 doing that.  We just -- the response we got was --

       7   I mean, in a short phrase, we'll see you in trial.

       8          So we're interested in this.  We don't think -- we

       9   have a history of having settled cases with Bard.  Other folks

14:52:02  10   have, too.  So we're just sitting and waiting for Bard to tell

      11   us they're interested in having serious discussions about

      12   settlement because we've got -- we know the cases, the

      13   relative value of these cases.  I think the Booker case

      14   helped.  I think this case is going to help no matter how it

14:52:19  15   turns out.

      16          So that's where we are.  We've got people -- we've

      17   told people if you've got a case, whether MDL or state court,

      18   you've better be prepared to try it because I don't think Bard

      19   is interested in settling these cases beyond one case and

14:52:37  20   trial at a time.

      21          MR. NORTH:  Your Honor, as can often be the case I

      22   disagree with about 95 percent of Mr. Lopez's description of

      23   the history of discussions and settlement activity and the

      24   litigation.

14:52:52  25          But be that as it may, there will certainly come a

14:52:55   1   time when my client will be interested in sitting down.  I
         2   think we need more data and information right now.  I don't
         3   think we're at that point.  I don't think it will necessarily
         4   take all six bellwethers to get to that point, but I do think
14:53:11   5   we're not there yet.  I think certainly we need some input
         6   from this one and probably one or two more.  I think by the
         7   end of the year we might be in a position.  And I need to talk
         8   to my client further about that.  But my impression is that by
         9   the end of the year we might be in a position to start talking
14:53:27  10   more reasonably if we have sufficient data we believe at that
        11   point.

        12          THE COURT:  Well, are you going to want to have
        13   settlement talks before I remand?

        14          MR. NORTH:  I think so, Your Honor.  I think it would
14:53:42  15   be in everybody's best interest before we have 3,000-plus
        16   cases hitting the federal courts throughout the country.
        17   Certainly would be in everybody's best interest to do that.

        18          THE COURT:  Okay.  Well, I will tell you that I'm not
        19   one of these MDL judges who will feel like I have failed if I
14:54:04  20   remand the cases.  I won't.

        21          My view of the purpose of the MDL is pretrial
        22   procedure and discovery, and then an added benefit is
        23   bellwether trials if the parties agree.  And that's it.  Once
        24   I've done that, I've done my job.  And I'm not going to feel
14:54:25  25   any hesitancy about remanding these cases when we've done that

14:54:29  1    work.

2            I say that just so you understand that I'm not going

3    to be of a mind to drag this MDL on to accommodate settlement

4    talks.  We'll get the bellwethers done.

14:54:40  5            If there is a good reason to hold on to them for a

6    month or two so parties can finish settlement talks, I'll

7    certainly consider that.  But I'm not going to let it linger

8    once we've gotten through the bellwether trials.

9            As I've indicated to you previously, I don't see a

14:54:59 10    need for further bellwether trials beyond the six.  If six

11    doesn't give you a good enough idea of what the case is worth,

12    12 won't, in my view.  Or won't give you any better idea.  So

13    factor that in to your thinking about when you all want to

14    start talking.

14:55:13 15            And if at some point you think that you want me to

16    build something into the schedule of these bellwether trials

17    to accommodate that, I'll be happy to consider it.  But, as

18    indicated, my present intention is to get the sixth trial done

19    by this time next year.  So it will probably be a March and

14:55:33 20    May trial next year.  Maybe February and April -- April

21    doesn't work very well.

22            Anyway, it will be my intent to march through and get

23    those done, unless there is a real good reason to build in

24    some sort of hiatus at some point for whatever settlement

14:55:52 25    talks need to happen.

14:55:53  1          MR. LOPEZ:  Your Honor, I feel like I should mention

        2  these early remand cases, too.  I mean, some of those poor

        3  people have been waiting five, six years.  I mean, they're

        4  ready to go to trial four, five months before this MDL started

14:56:08  5  and now we're almost -- we're getting close to the three-year

        6  anniversary I think.  The JPML hearing, I think it got

        7  assigned to you some time in August, September something like

        8  that, 2015.

        9          THE COURT:  Yeah, and I have raised the question of

14:56:24 10  remand a couple times and the parties have said not yet.  So

       11  I'm happy to send those cases home next week if you think it's

       12  time.  I actually can't remember what the last reasoning was

       13  for not doing it.

       14          MR. LOPEZ:  I think it was all the *Daubert* things,

14:56:42 15  the things we went through to get ready for the first trial.

       16          THE COURT:  If there's not a reason to hang on to

       17  that ten or so cases, then I'm good sending it back.  That's

       18  fine with me.

       19          MR. LOPEZ:  Can we add two pages to our six pages?

14:56:56 20          THE COURT:  No.  But we will add a fourth topic and

       21  leave it at six pages.  So topic number 4 will be --

       22          MR. LOPEZ:  Remanding the ten cases.

       23          THE COURT:  I think we called them mature cases or

       24  something.

14:57:08 25          MR. LOPEZ:  I think we called them mature.  We called

14:57:11  1    them early remands.  But the word early --

       2            THE COURT:  Yeah.  That'll be a fourth topic for our

       3    six pages.

       4            MR. LOPEZ:  Okay.  Thank you, Your Honor.

14:57:18  5            THE COURT:  All right.  I think that covers

       6    everything.  We'll get an order out on these issues and we'll

       7    let you know as soon as we hear something from the jury.

       8            MR. NORTH:  Thank you, Your Honor.

       9            MR. LOPEZ:  Thank you, Your Honor.

14:57:27 10        Your Honor, did you say how long the jury's going to

      11    deliberate today?

      12            THE COURT:  Have they indicated?

      13        We leave it to them to decide how long they want to

      14    go.

14:57:37 15        (The Court and the courtroom deputy confer.)

      16            THE COURT:  We've told them they can go as long as

      17    they want.  They haven't told us yet how long they want to go.

      18        My practice is not to call them back in at the end of

      19    the day when they're done, just to let them leave.  But if we

14:57:52 20    get word they've left, we'll let you know so we don't keep you

      21    hanging around.

      22            MR. LOPEZ:  Thank you.

      23        (End of transcript.)

      24                            *  *  *  *  *

      25

1                          **C E R T I F I C A T E**

2

3              I, PATRICIA LYONS, do hereby certify that I am duly

4     appointed and qualified to act as Official Court Reporter for

5     the United States District Court for the District of Arizona.

6

7              I FURTHER CERTIFY that the foregoing pages constitute

8     a full, true, and accurate transcript of all of that portion

9     of the proceedings contained herein, had in the above-entitled

10    cause on the date specified therein, and that said transcript

11    was prepared under my direction and control, and to the best

12    of my ability.

13

14             DATED at Phoenix, Arizona, this 7th day of June,

15    2018.

16

17

18

19

20                          s/ Patricia Lyons, RMR, CRR
                            Official Court Reporter

21

22

23

24

25