Joe Johnson – jjohnson@babbittjohnson.com
(Florida Bar Number 372250; admitted *pro hac vice*)
Babbitt & Johnson, P.A.
1641 Worthington Road
Suite 100
West Palm Beach, FL  33409
(561) 684-2500

James P. Cannon – jpc.atty@yahoo.com
(Missouri Bar Number 37052; admitted *pro hac vice*)
James A. Montee – jmontee@monteelawfirm.com
(Missouri Bar Number 33489; admitted *pro hac vice*)
Montee Law Firm, P.C.
10200 Holmes
Kansas City, MO  64131
(816) 523-0521

*Counsel for Plaintiffs*

Ramon Rossi Lopez – rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle
Suite 5600
Newport Beach, California  92660
(949) 812-5771

Mark S. O'Connor – mark.oconnor@gknet.com
Arizona Bar Number 011029
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
(602) 530-8000

*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

In Re Bard IVC Filters Products                    No.: MD-15-02641-PHX-DGC
Liability Litigation


GEORGE LEUS, an individual,                    No.: CV-15-01623-PHX-DGC


                     Plaintiff,

v.

PLAINTIFF GEORGE LEUS' MOTION
FOR REMAND TO THE TRANSFEROR
DISTRICT COURT AND
MEMORANDUM IN SUPPORT

C.R. BARD, INC., a New Jersey
Corporation and BARD PERIPHERAL
VASCULAR, an Arizona corporation,

(Assigned to the The Honorable
David G. Campbell)

REQUEST FOR ORAL ARGUMENT

Defendants.

Plaintiff George Leus' submits his Motion for Remand to the Transferor Court and

Memorandum in Support.

I.     **INTRODUCTION**

1.  On June 11, 2013, plaintiff George Leus filed a civil action ("Federal Action") against

C.R. Bard, Inc. and Bard Peripheral Vascular (Hereinafter collectively known as

"*defendants*" and/or "*Bard*") in the United States District Court for the Western District

of Missouri – Western Division (Case No.: 4:13 – CV00585-GAF) (Hereinafter known as

the "*Transferor District Court*") alleging he suffered physical and emotional injuries,

including, but not limited to, bi-lateral above-the-knee amputations, as a result of a

defective Bard G2 IVC Filter.

2.  On August 17, 2015 the United States Judicial Panel on Multidistrict Litigation

(Hereinafter known as the "*Judicial Panel*") signed a Transfer Order transferring

plaintiff's case to the United States District Court – District of Arizona (Hereinafter

known as the "*Transferee District Court*") under 28 U.S.C. s1407 "*solely*" for

coordinated or consolidated pretrial proceedings under Case No.: MD-15-02641-PHX-

DGC. George Leus' case was one of the initial twenty-two (22) cases transferred under

the Transfer Order (**See Transfer Order – Exhibit A**).  At the time his case was

transferred substantial discovery, including the designation and deposition of expert witnesses, had been conducted.

3. Plaintiff George Leus believes that at this time it is in his best interest for his case to be remanded to the Transferor District Court for completion of case specific discovery and trial as a result of (1) his unique situation and injuries (2) the status of the multidistrict litigation and (3) the fact that the Court has concluded it is time to remand the MDL "Mature Cases" back to their home district and his case would have very likely been a MDL "Mature Case" if not for the timing of the transfer.

4. Plaintiff George Leus has not agreed to waive *Lexecon*.

## II.  REQUIREMENTS FOR REMAND TO TRANSFEROR DISTRICT COURT

28 U.S.C.A. s1407 (a) states "*[W]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings…Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated.*"

The Transfer Order specifically states "*[If] the  transferee Judge determines after close scrutiny that remand of any claim is appropriate, procedures are available whereby this may be accomplished with a minimum of delay.*"

This action was transferred solely for coordinated or consolidated pretrial proceedings [see **Transfer Order** – **Exhibit A]** and it has not been terminated in the Transferee District Court.

Coordinated and/or consolidated pretrial proceedings have been completed in the Transferee District Court.  The only thing remaining to accomplish in this multidistrict litigation

is conducting Bellwether trials; which the Court has opined during Case Management

Conferences are for the purpose of promoting global settlement.

The United States Supreme Court in *Lexecon, Inc. et al. v. Milberg Weiss Bershad Hynes & Lerach et al*, 523 U.S. 26 (1998) made it clear that (1) the strict remand requirement contained in 28 U.S.C. s1407 should suffice to establish the substantial significance of any denial of a plaintiff's right to remand once the pretrial stage has been completed and (2) a plaintiff has the right to have his case tried in the forum of his choice following the conclusion of pretrial proceedings.

### III.   <u>PROCEDURAL HISTORY</u>

On June 17, 2008 a Bard G2 IVC Filter was implanted in plaintiff George Leus.

On July 20, 2012 "both" of plaintiff's legs were amputated above-the-knee at the age of thirty-four (34).  Plaintiff alleges that the loss of both legs was caused by the IVC Filter tilting and its struts completely perforating thru the caval wall of the inferior vena cava.

Plaintiff filed his lawsuit against Bard in the Transferor District Court on June 11, 2013. Substantial discovery was conducted and a trial date was set for July 27, 2015.  Mediation was unsuccessful.

On June 16, 2014, during the discovery phase of the action being litigated in the Transferor District Court, plaintiff filed a separate state court action in the Superior Court of New Jersey – Camden County (Case No.: L-2416-14)("New Jersey State Court Action") naming Bard and the physician who implanted the IVC Filter as defendants for jurisdictional purposes.

On January 2, 2015 Bard filed a Motion in the Transferor District Court seeking a dismissal or stay of the Federal Action on the grounds that both the Federal action and the New Jersey State Court Action should not be allowed to proceed simultaneously.

On February 2, 2015 the Transferor District Court granted a stay of the Federal action while discovery continued in the New Jersey State Court.

On August 17, 2015 plaintiff's case was transferred to the Transferee District Court under 28 U.S.C. s1407 for coordinated or consolidated pretrial proceedings.

After significant discovery was conducted in the New Jersey State Court Action, it was dismissed by agreement of the parties on May 10, 2016 ending the stay of the Federal Action [see **Dismissal – Exhibit B**].

IV.    <u>ARGUMENT</u>

<u>WHY PLAINTIFF GEORGE LEUS' CASE SHOULD BE REMANDED
TO THE TRANSFEROR DISTRICT COURT AT THIS TIME</u>

1.    <u>Failure to Remand is Detrimental to Plaintiff's Health and Well-Being</u>

A *Life Care Plan* in the amount of nearly Three Million Dollars established (and provided Bard) in the action previously being prosecuted in the Transferor District Court set forth the numerous special needs required over the course of plaintiff George Leus' life and the associated costs, including, but not limited to (1) durable medical equipment (2) prosthetics (3) therapy (4) architectural renovations (5) transportation needs (6) home care and (7) on-going medical care and treatment.

In addition, plaintiff is unable to work because of his injuries.

Plaintiff filed his lawsuit seeking, in part, an award of damages necessary to pay for these special needs to make the remainder of his life the best it can be considering his immense physical disability.

At the time plaintiff's case was transferred by the Judicial Panel it had been over two (2) years since plaintiff filed his initial Complaint in the Transferor District Court and over three (3) years since he suffered injuries as a result of the alleged negligent acts of defendant Bard.

It is fast approaching an "additional" three (3) years since his case was transferred to this Transferee District Court for purposes of multidistrict litigation.

Plaintiff, during this five (5) year period since he filed his initial Complaint in the Transferor District Court, has resided in a one (1) bedroom apartment with his Mother and his only source of income is derived from Social Security Disability waiting for his day in Court to attempt to recover the money necessary to pay for those special needs required over the course of his lifetime.

The manner in which plaintiff will live the remainder of his life is dictated by whether he is awarded compensation by a jury in his action against Bard. He has been waiting five (5) years for his day in Court and there is no realistic hope this will occur anytime in the near future if his case remains part of the multidistrict litigation pending in the Transferee District Court.

2. **Plaintiff George Leus does Not Benefit from Continued Participation in the Multidistrict Litigation Pending in the Transferee District Court**

All pretrial discovery has been completed in the multidistrict litigation pending in the Transferee District Court and there is nothing left to accomplish other than conducting bellwether trials which are simply and "*added benefit*" to the multidistrict litigation. The Court made this clear in Case Management Order No. 28 (Doc. 8871) stating "[*T*]*he primary purpose of the MDL – common discovery and rulings on common issues – will have been accomplished, and the added benefit of bellwether trials to assist the parties in resolving the litigation globally will be lost if settlements or dismissals skew the representative nature of bellwether cases*." The Court has opined on several occasions that bellwether cases should be tried to promote "global settlement" of MDL cases.

Plaintiff George Leus is <u>not</u> one of the six (6) cases included in Bellwether Group 1. As such, his continued participation in the multidistrict litigation is "solely" for the purpose of settlement.

The bellwether trial process is long and arduous. The Court in Case Management Order No. 26 (Doc. No. 6799) advised the parties that "*it may be difficult for the Court to conduct all six bellwether trials within a 12 or 18 month period, given the Court's docket and administrative responsibilities*." In fact, Case Management Order No. 34 (Doc. No. 11659) states that the sixth Bellwether trial will not be held until May, 2019.

In addition, the bellwether trial process in this MDL is somewhat unique in that it deals with different models of Bard IVC Filters; each presenting separate and unique evidentiary issues. As such, plaintiff George Leus does not necessarily directly benefit from those bellwether trials involving models other than the G2 filter implanted in his body.

As of the filing of this motion, a bellwether case involving the Bard G2 model has been tried to a verdict and a Final Pre-Trial Order entered. As such, plaintiff George Leus has already benefited from common pretrial discovery and the "*added benefit*" of a bellwether trial that relates to his IVC filter model (G2).

Plaintiff George Leus' case was one of the twenty-two (22) initial cases ("Initial Case") transferred to this Court nearly three (3) years ago under 28 U.S.C. s1407. In light of his extensive injuries his case was not a good representative for bellwether trials.

The MDL has now grown to over 3,000 cases and although plaintiff was an Initial Case he is now just a member of a large group of cases with no realistic hope of having his case tried in the Transferee District Court for years to come.

At this point in time, plaintiff George Leus has only two (2) realistic options.  The first, to wait out the MDL bellwether trials in the hopes of having his case settled.  The second, to have his case tried in his home District Court.

If the Court, fully empowered to do so, is not of the mind to remand plaintiff George Leus' case to the Transferor District Court for trial at this time then plaintiff is left waiting for bellwether trials to finish with the hope his case might be settled someday which is highly speculative and very unlikely to happen considering the character, value and uniqueness of his case.  Further, Bard has shown no signs of settling any IVC Filter case involved in the MDL.

Bard is in the unique position of controlling the settlement of claims and there is no guarantee, whatsoever, that after the completion of all bellwether trials it would even enter into meaningful settlement negotiations; opting instead to force remand of all cases to their home districts dragging on litigations for years to come.

Furthermore, even if settlement discussion ensued after completion of bellwether trials, it is very unlikely that plaintiff George Leus' case would fit within any group settlement and/or matrix system considering the magnitude of his injuries and value of his case.  Any settlement with plaintiff George Leus is likely to be outside any group settlement and/or matrix system.  Obviously, a remand back to the Transferor District Court would not prevent Bard from settling with plaintiff.  As such, waiting for bellwether trials to be conducted in the hopes of settlement is unlikely to bear fruit and not beneficial to plaintiff considering his physical condition and need to be compensated in order to satisfy his special needs.  A remand back to the Transferor District Court may result in a trial date prior to the completion of the bellwether trials in light of the fact much of the case specific discovery had been completed prior to transfer.

The MDL has served its purpose as it relates to plaintiff George Leus who may now benefit from the "additional" common pretrial discovery conducted since transfer and the insight gained from a G2 Bellwether trial.  Beyond that, plaintiff believes he is best served at this time returning to his home district for trial.  Further participation in the MDL is counter-productive for those reasons stated above.  Plaintiff George Leus can only get his life in order with the money necessary to pay for his special needs. Plaintiff wants his day in Court in his home district and believes this will occur long before Bard is in a position and/or willing to discuss settlement of his claim.

A remand of plaintiff's case at this time is not detrimental to Bard who is currently defending cases outside the MDL

A remand of plaintiff's case to the Transferor District Court at this time is permitted and contemplated under 28 U.S.C s1407 *and Lexecon*.

3. <u>Plaintiff George Leus' Case Should be Considered a "Mature Case" Despite Not Being Included in the MDL Mature Case List</u>

The Court identified thirteen (13) "Mature Cases" in Case Management Order No. 4 (Doc. 363) ("MDL Mature Cases") on December 17, 2015.

Case Management Order No. 8 (Doc. 519) states [T]he Court and parties concluded at the conference that these cases should not be subject to a separate discovery track, but that some or all of them may be ready for remand before other cases in this MDL proceedings.  The parties should confer and agree on additional discovery or motion practice needed for these 13 cases and shall file a stipulation identifying the specific litigation steps to be taken with respect to these cases.  The purpose will be to remand these cases as soon as reasonably possible, rather than postponing their disposition until the end of this MDL proceeding.

Plaintiff George Leus' case was filed in the Transferor Court on June 11, 2013.  Of the thirteen (13) MDL Mature Cases identified in Case Management Order No. 4 (Doc. 363) signed by Judge Campbell on December 17, 2015, only two (2) were filed in their respective Transferor Courts prior to plaintiff George Leus filing his claim.

At the time the MDL Mature Case list was being decided upon, plaintiff George Leus' case was under a stay Order in the Transferor District Court but was being actively prosecuted in the New Jersey State Court Action (see section II Procedural History).  As such, because his case was still pending in the New Jersey State Court it was not even one to be considered when putting together the MDL Mature Cases list.

This unusual procedural history very likely prevented plaintiff George Leus' case from being an MDL Mature Case.

## V.    PROCEDURE FOR REMAND

The Court in Case Management Order No. 34 (Doc. 11659) stated it would look into the proper procedure for remand of the MDL Mature Cases and invite briefing if necessary.  Plaintiff George Leus believes whatever procedure is utilized to accomplish this task can also be utilized to remand his case to the Transferor District Court.

## VI.    CONCLUSION

For the foregoing reasons, the Court should at this time remand plaintiff George Leus' case to the Transferor District Court utilizing the procedure in which it remands the MDL Mature Cases.

WHEREFORE, plaintiff George Leus respectfully requests this Court's Order remanding his case back to the Transferor District Court.

Respectfully Submitted,

*/s/ Joe Johnson*
_____

BABBIT & JOHNSON, P.A.
Joe Johnson #FL372250
(Admitted Pro Hac Vice)
1641 Worthington Road
Suite 100
West Palm Beach, FL  33409
jjohnson@babbitt-johnson.com

*/s/ James P. Cannon*
_____

MONTEE LAW FIRM, P.C.
James P. Cannon  #37052MO
(Admitted Pro Hac Vice)
James A. Montee  #33489 MO
(Admitted Pro Hac Vice)
10200 Holmes
Kansas City, MO  64131
(816) 523-0521
Fax:  (816) 523-0084
jpc.atty@yahoo.com
jmontee@monteelawfirm.com

**COUNSEL FOR PLAINTIFF**

*/s/ Ramon Rossi Lopez*
_____

LOPEZ MCHUGH LLP
Ramon Rossi Lopez #CA86361
(Admitted Pro Hac Vice)
100 Bayview Circle
Suite 5600
Newport Beach, CA  92660
rlopez@lopezmchugh.com

*/s/ Mark S. O'Connor*

11

_____
GALLAGHER & KENNEDY, PA
Mark S. O'Connor #AZ011029
2575 East Camelback Road
Phoenix, Arizona  85016-9225
Mark.oconnor@gknet.com

**CO-LEAD/LIAISON COUNSEL FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of July, 2018, the foregoing was electronically filed with the clerk of the Court using CM\ECF system which will automatically send email notification of such filing to all attorneys of record.

**/s/ Jessica Gallentine**
_____