Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
602-530-8000

*Co-Lead/Liaison Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| IN RE: Bard IVC Filters Products Liability Litigation | No. 2:15-MD-02641-DGC<br><br>**JOINT MEMORANDUM RE PLAINTIFF TINLIN FOR THE NOVEMBER 2018 TRIAL**<br><br>(Assigned to the Honorable David G. Campbell) |
|---|---|

Pursuant to Civil Minute Entry dated July 13, 2018 (Doc. 11867) the Parties submit the following joint memorandum regarding the feasibility of Plaintiff Tinlin for the November 2018 trial date.

**Plaintiffs' Position**

**I.     Background on the *Tinlin* case**

Plaintiffs urge the Court to designate the *Tinlin* case as the next bellwether trial for the following reasons. Debra Tinlin is 52 years old and resides in Wisconsin. She has been married for over 25 years to police detective James Tinlin, and the Tinlins have an adult son. Ms. Tinlin served in the U.S. Army from 1982 to 1985. She was also employed as a preschool director and teacher. In 2004, Ms. Tinlin was diagnosed with multiple scleroses with complete paralysis of her right lower extremity. She uses a power wheelchair for mobility. Ms. Tinlin has other medical conditions which include depression, GERD,

1  reactive airway disease, Sjogren's syndrome (an immune system disorder), diabetes, arthritis, and morbid obesity. Her surgical history includes colon surgery, hemorrhoidectomy, hysterectomy, dilation and curettage procedure, thyroidectomy, cataract, and back surgery.

In 2005, Ms. Tinlin was hospitalized for exacerbation of multiple sclerosis. She developed deep vein thrombosis (DVT) and bilateral pulmonary embolisms (PE) during the hospitalization. On May 7, 2005, Joshua Riebe, M.D. at St. Mary's Hospital in Wisconsin implanted Ms. Tinlin with a Recovery filter. In 2013, two fractured filter struts migrated to Ms. Tinlin's right ventricle, causing massive pericardial effusion, cardiac tamponade, cardiogenic shock, and multi-organ failure. She underwent emergency intubation at Aurora BayCare Medical Center in Wisconsin and Alexander Roitstein, M.D. performed emergent surgical drainage of the pericardial effusion. On July 31, 2013, David Kress, M.D. successfully removed one of the fractured struts through open-heart surgery, the second strut could not be located in the heart and was later identified in the basilar interventricular septum. The filter body remains in Ms. Tinlin's body, with several struts projecting outside the lumen of the vena cava and adjacent to the lumbar spine, along with several pieces of wire in her lungs, which doctors believe to be fragments of the second fractured strut.

The *Tinlin* case was a part of the Discovery Group 1. The following individuals have already been deposed: Debra Tinlin, James Tinlin (spouse), Tim Fischer (Bard sales representative), and Dr. Joshua Riebe (implanter). The parties jointly interviewed Dr. Aaron Bubolz. To correct Defendants' assertion, Plaintiffs note that James Tinlin's deposition, Ms. Tinlin's husband, scheduled on the same day as Ms. Tinlin, was suspended after several hours because of Debra's discomfort and will need to be resumed. Plaintiffs also believe that Defendants were aware at that time of the need to update their medical record inventory

As Plaintiffs contended early on, there should be at least one Recovery case in the first phase of bellwether trials. Ms. Tinlin presents this Court the only opportunity for a

2

Recovery trial in the first phase of bellwether trials as it is the sole Recovery case in the parties' recommendations from Discovery Group 1.[1] She suffered signature complications and injuries from the Recovery's failure – fracture and cranial migration to the heart; Bard knew early on after Recovery went to the market it had significant problems with fractures and migrations that led to patient deaths at an alarming rate.

Ms. Tinlin's case provides an opportunity to determine Bard's liability for negligent design and warning of the Recovery filter's performance which led to fracture and migration. Determination of these issues will have significant impact on the values of numerous other cases in the MDL. More importantly, while Recovery cases represent 10-11% of the MDL cases, the parties agree that Recovery cases have the potential to constitute at least 50% of a global settlement value of the cases filed in this MDL. As such, the *Tinlin* case will be helpful to assess the value of other cases by comparison to her verdict both in terms of relative medical bills and damages for pain and suffering.

## II. Proposed Schedule

Plaintiffs believe discovery and pre-trial matters in *Tinlin* can be completed in a timely manner such that trial can reasonably proceed in November. In the discovery period for Bellwether Group 1, the parties completed all the discovery under CMO 24 for five bellwether cases in approximately 10 weeks. Given that the parties will have a single case in which they are conducting discovery, all the discovery under CMO 24 for *Tinlin* can reasonably be accomplished in six or seven weeks. Plaintiffs propose the following schedule:

| Plaintiffs' case-specific expert disclosures: | July 30, 2018 |
| Defendants' case-specific expert disclosures: | August 20, 2018 |
| Plaintiffs' case-specific rebuttal expert disclosures: | August 27, 2018 |

---

[1] The *Tinlin* case is representative of the hundreds of Recovery cases in this MDL; Further, as reported to MAUDE, more than 20 percent of all complaints regarding Bard filters related to the Recovery filter.

3

| Deadline for completion of all discovery: | September 7, 2018 |

Under CMO 24, each side is allowed five depositions of fact witnesses. Plaintiffs believe that the seven-week discovery period they propose is ample time to complete those depositions.[2]

Plaintiffs further propose written discovery responses be due within 20 days of service and the parties accomplish service, as they have for various other filings and discovery papers, via email. Simply, it is feasible for discovery to be timely completed for trial in November. Plaintiffs see no basis for a summary-judgment motion, considering the Court's prior rulings in the other bellwether cases. Nonetheless, if Bard plans to move for summary judgment, Plaintiffs are willing to respond within 10 days to expedite the process.[3] Plaintiffs propose the following schedule for any summary-judgment or case-specific *Daubert* motions:

| Motion(s) due: | September 21 |
| Plaintiffs' response(s): | October 1 |
| Reply: | October 8. |

To address Defendants concerns regarding ongoing medical care, Plaintiff has sought no treatment or follow-up regarding her filter since April 2017. To the extent Defendants seek medical records outside of her treatment for the filter, Plaintiffs agree to work with Defendants to expedite medical record production. There should not be any significant issues or delays in obtaining the records. Once the parties identify the necessary depositions, Plaintiffs agree to expedite the process of scheduling of depositions. Further, Plaintiffs have confirmed their experts' availability and received commitments to obtain expert reports within the ten-day period.

---

[2] Again, the parties previously completed five times that many depositions in approximately 10 weeks for the other five bellwether cases.

[3] Since many of the issues relating to the claims in the *Tinlin* case have been briefed in the prior summary-judgment motions. Thus, an expedited process is entirely reasonable.

4

The Court has already reserved time for the fourth bellwether trial. The *Mulkey* circumstances were unforeseen and necessitated the Court to adjust the original bellwether schedule. However, Defendants' selection of the *Kruse* bellwether case (with a statute of limitations issue) was not representative or appropriate; and Plaintiffs believe it was selected by the defense for the purpose of dismissal. The Court has committed time and resources to complete the bellwether process and, as it has noted, it has imposed on other judges of the court in order to facilitate this process. Accordingly, the parties owe it to the Court and their respective clients to see that the bellwether process is carried out in a timely and efficient manner. As the Court and Defendants are keenly aware, there are thousands of other plaintiffs awaiting the result of the bellwether process. Plaintiffs see no reason that the parties cannot work together to uphold the integrity of the bellwether process by appropriately using the time already reserved by the Court and ensure the November trial date is utilized.

Preparing the *Tinlin* case to be ready for trial in November will require expedited procedures and some heavy lifting by both sides, however, it can clearly be accomplished. The Court and both parties recognize the path to global resolution is through the trials scheduled by this Court. Losing the November trial date would cause significant interruption in the parties' progress. Indeed, as Mr. North indicated at the pre-trial conference on May 31, 2018 (during the *Jones* jury deliberations), Bard will likely be ready to have global settlement discussions at the end of this year, after the November trial. Putting off *Tinlin* until next year would result in no trial in November and delay the MDL and potential global resolution.

Finally, for the reasons articulated above, Plaintiffs believe very strongly there needs to be a bellwether trial in November. While the health issues in the *Mulkey* case are unavoidable and not the fault of any party, it's important for both parties to continue moving forward in the bellwether process and prepare the *Tinlin* case to be ready for a November trial date.

**Defendants' Position:** Initially, Defendants note that the Plaintiffs have filed a notice suggesting that Ms. Mulkey remains unavailable for trial, based solely on representations of counsel. The Defendants are not in a position to challenge those representations, but suggest that at some point, before the case is continued once again, updated medical records should be produced to justify the further delay. In the meantime, with regard to the *Tinlin* case, Defendants have reviewed the case materials and conclude that discovery in *Tinlin* cannot reasonably be completed in time for a November 2018 trial for several reasons.

Most importantly, the second phase of discovery completed in the other five bellwether cases has not taken place yet in *Tinlin*. When the Court selected the initial five bellwether cases in early May of 2017, the parties commenced a second phase of discovery – beyond the basic depositions that had already been taken – to depose additional treating physicians and fact witnesses.[4] Thereafter, the parties designated case-specific experts who submitted detailed reports pursuant to Fed. R. Civ. P. 26, and then were subsequently deposed. Critically, when the parties commenced that second phase of discovery in those five cases, they had current medical information regarding all of the plaintiffs. None of that second phase discovery has been undertaken, much less completed, in the Tinlin case.

The lapse of more than a year between the first phase of discovery in the Tinlin case and the commencement of the second phase will present particularly difficult challenges. Ms. Tinlin has numerous complicated, and ongoing, medical conditions which result in symptoms and disabilities that Bard believes to be unrelated to the IVC filter. These include multiple sclerosis, diabetes, hypertension, obstructive sleep apnea, anemia, chronic back pain, and obesity. Because of those conditions, she has undoubtedly received additional medical care since the initial discovery was accomplished in early 2017. The Plaintiffs dismiss that concern, claiming that Ms. Tinlin has received no

---

[4] CMO No. 21 [Doc. 4866], Section II. A. provides that the parties could take depositions of the principal plaintiff, spouse, implanting physician, and one additional treater in phase one discovery in the bellwether cases.

6

medical care "related to the filter" since 2017. However, notably, they do not claim that she has had ***no*** medical care. Ms. Tinlin's entire medical history and her present condition is highly relevant to the injuries and damages she is claiming. Hence, to assess the underlying causes of her symptoms and disabilities, the Defendants are entitled to collect and analyze updated medical records from the multiple healthcare treaters and facilities that have treated her over the past year. Once those records are obtained, an analysis of all records collected in the case will need to be undertaken by medical experts, potentially including medical experts with specialties in areas in which Bard has not historically identified experts.[5] The complexity of Ms. Tinlin's medical conditions is very likely to require Bard to depose several key treating physicians to obtain information necessary for Bard's experts to fully understand her complicated medical history, causation, and prognosis. Second, expert witnesses have not been identified in the case, nor have reports been exchanged. Bard believes the task of collecting updated medical records and accomplishing this final fact and expert discovery will require a minimum of 120 days, and therefore the case cannot be ready for a November 2018 trial.

With regard to medical records, the parties suspended discovery in this case in early 2017. However, in order to prepare for the depositions of any of Plaintiff's treating physicians, Bard will need to obtain updated records. As has been reported to the Court in past submissions and discussions, it takes an average of 45 to 60 days from the date that properly executed authorizations are sent to the providers for the agreed upon vendor to obtain the records. Plaintiffs then have an additional 10 days during which to review the records for highly confidential information, during which time the records are unavailable

---

[5] By way of one example, Ms. Tinlin alleges certain symptoms or impairments to be related to her surgery to retrieve the filter strut as opposed to progression of her multiple sclerosis. As a result, Defendants anticipate they may retain an expert neurologist in this case, which is a specialty Defendants have never retained in any prior filter case. In short, while the Plaintiffs may be prepared to rely entirely on their usual experts to present their case, the Defendants believe that, once they are able to assess Ms. Tinlin's present medical condition, it is likely that they will need to retain a new expert, in a new field, to rebut that case and the Plaintiffs' claims.

to Defendants. That preliminary phase alone could take as long as 60 days. The Plaintiffs' aggressive schedule completely overlooks the need to collect updated medical records, and would require Defendants to prepare – and try – the case without current information about Ms. Tinlin's medical course.

Once the records have been collected, a number of depositions will need to be taken. Thus far, the parties have taken only four depositions in this matter: Mr. and Mrs. Tinlin, the implanting doctor, and Bard's sales representative. Even then, Plaintiff James Tinlin's deposition has not been completed, as it was suspended due to Ms. Tinlin's physical discomfort, so that he could accompany her home. Ms. Tinlin's deposition was not completed either, and was held open, because of Plaintiff's failure to identify medical providers and records in advance of the deposition. Beyond the physician who implanted the filter, Ms. Tinlin has been treated by many, many other doctors over the past several years. For example, in her Plaintiff Fact Sheet, Plaintiff Tinlin identified 8 physicians who she alleges told her that her symptoms were related to the filter – none of these physicians have been deposed thus far. *See* Plaintiff Debra Tinlin Plaintiff Fact Sheet at p. 12 (available for *in camera* review at the Court's discretion.) Ms. Tinlin identified at least one additional physician who has allegedly treated her for her injuries or symptoms related to the filter – he has not yet been deposed either. Moreover, Plaintiffs previously identified five of Ms. Tinlin's treating physicians who they reasonably anticipate calling in their case in chief at trial, and of those five, only one (the implanter) has been deposed.[6] Given the logistical challenges in scheduling physician depositions (because of their schedules), it would be literally impossible to complete the necessary depositions in the six weeks allotted under the Plaintiffs' schedule. In short, there remains much to be

---

[6] This process of identifying case specific treaters to depose will be done in accordance with CMO No. 24 [Doc. 5883], Section II, which provides the protocols by which case specific witnesses, including treater doctors, must be identified. It permits the parties to depose five case witnesses (in addition to those depositions permitted under CMO No. 21 [Doc. 4866]) and to exceed this number "by mutual agreement or Order of the Court" where the depositions are proportionate to the needs of the case. CMO No. 24, Section II. B. and E.

accomplished to complete just the fact discovery in this case, and that fact discovery cannot possibly be completed in the extremely short period of time contemplated by the Plaintiffs

After updated medical records have been collected, and depositions of treating physicians accomplished, the parties will still need to identify experts and exchange reports, followed by depositions of those experts. The Plaintiffs' proposed schedule would have the parties designate their case-specific experts, and provide reports, before the bulk of the fact depositions could possibly be finished. By necessity, those reports would be based on an incomplete picture since the factual development of the case will still be underway.

Once the expert phase is completed, the parties will be in a position to file *Daubert* and dispositive motions. The Plaintiffs' suggestion that those motions are not necessary simply seeks to deprive the Defendants of its rights. Assuming the Court permits such motions, as it has in every other bellwether case, the following chart sets forth a realistic schedule of events necessary to complete discovery (with the acknowledgment that even these deadlines are extremely ambitious):

| Action | Timetable |
|---|---|
| Plaintiffs provide updated provider list for Ms. Tinlin and executed medical authorizations | July 27, 2018 |
| Parties obtain updated records from known treaters and from newly identified treaters. | July 27, 2018 to September 20, 2018 |
| Parties identify treating physicians to be deposed and any additional fact witnesses, and take depositions on a rolling basis, as medical records become available.[7] | August 20, 2018 to October 5, 2018 |

---

[7] While Defendants will certainly endeavor to accomplish the contemplated depositions of treating physicians and expert witnesses in the time period indicated, past experience suggests that this may not prove feasible. It is Defendants' experience that treating

9

| | |
|---|---|
| Plaintiffs' case-specific expert disclosures | September 30, 2018 |
| Defendants' case specific expert disclosures | October 30, 2018 |
| Case-specific expert depositions | October 15, 2018 to November 15, 2018 |
| Dispositive and *Daubert* Motions due | December 15, 2018 |

This schedule, if adopted, would have the case ready for trial in the February time slot, if Ms. Mulkey is for some reason still unable to proceed to trial.

In sum, Defendants do not believe that reasonable discovery can be accomplished in this case prior to the November trial date, such that Defendants have a fair opportunity to meaningfully defend the case. Rather than advance the bellwether process, the Plaintiffs' extraordinarily aggressive proposal would completely undermine that process. There is no way that Bard could possibly consider the trial result instructive or indicative of anything, other than a "rush to judgment", if obtained following a truncated procedure that deprives Defendants of its rights to appropriately defend the claims asserted against them. The Defendants are committed to this process, as they believe they have consistently demonstrated, but see no benefit in compromising the validity of the process by trying a bellwether case without appropriate discovery and motions practice. For these reasons, Defendants request that the trial of the *Tinlin* matter be continued until 2019 as previously scheduled.

---

physicians and expert witnesses have limited availability in their schedules, and the proposed schedule may in fact prove untenable.

RESPECTFULLY SUBMITTED this 20th day of July, 2018.

| GALLAGHER & KENNEDY, P.A. | SNELL & WILMER L.L.P. |
|---|---|
| By: */s/ Mark O'Connor*<br>    Mark S. O'Connor (011029)<br>    2575 East Camelback Road<br>    Phoenix, Arizona 85016-9225<br><br>    Ramon Rossi Lopez<br>    (admitted *pro hac vice*)<br>    CA Bar No. 86361<br>    LOPEZ McHUGH LLP<br>    100 Bayview Circle, Suite 5600<br>    Newport Beach, California 92660<br>    *Co-Lead/Liaison Counsel for*<br>       *Plaintiffs* | By: */s/Richard North* (with permission)<br>    James R. Condo (005867)<br>    Amanda C. Sheridan (027360)<br>    One Arizona Center<br>    400 E. Van Buren, Suite 1900<br>    Phoenix, Arizona 85004-2202<br><br>    Richard B. North, Jr. (*pro hac vice*)<br>    Georgia Bar No. 545599<br>    Matthew B. Lerner (*pro hac vice*)<br>    Georgia Bar No. 446986<br>    Nelson Mullins Riley & Scarborough LLP<br>    201 17th Street, NW / Suite 1700<br>    Atlanta, GA  30363<br><br>    *Attorneys for C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.* |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of July, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

                                                                          */s/ Jessica Gallentine*