James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
jcondo@swlaw.com
kgallardo@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC <br><br> Regarding No. CV-15-01623-DGC (*Leus v. C.R. Bard, Inc. et al.*) <br><br> **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF GEORGE LEUS'S MOTION FOR REMAND TO THE TRANSFEROR DISTRICT COURT** |

Plaintiff George Leus's attorney sought consolidation and creation of this MDL in 2015, when Mr. Leus's action against Bard had been pending close to two years. Counsel for Plaintiffs have since reiterated that they "want the [MDL] case to resolve here" and are "fully committed to [the bellwether] process." [Doc. 9243 at 80:18-81:22.] Yet Mr. Leus now seeks an end run around awaiting the results of the bellwether trials because, due to financial difficulties and his medical condition, he "believes he is best served . . .

returning to his home district." [Doc. 11876 at 9.] Plaintiffs supply no legal authority to support this request for remand, relying instead on faulty logic and unfounded attacks on Bard's willingness to settle following the bellwether trials. As this Court has repeatedly emphasized, the purpose of these trials—which have required immense time and attention from the Court and all parties—is to shape post-bellwether settlement negotiations as part of a coordinated process. [Doc. 9243 at 78:2-13.] Plaintiffs must show good cause to exempt Mr. Leus from these proceedings. They have not done so. Mr. Leus's personal circumstances are not unique: if this Court were to suggest remand in his case, it would open the door to myriad other plaintiffs seeking the same relief. And as a matter of law, unique circumstances and frustration with the length of litigation do not constitute good cause for this Court to suggest remand. This Court should deny Plaintiffs' motion.

**I. BACKGROUND**

Mr. Leus sued Defendants in the Western District of Missouri in June 2013 ("Missouri Federal Action"). He filed a successive lawsuit in New Jersey state court a year later. Because of his overlapping lawsuits, Mr. Leus consented to a stay of the Missouri Federal Action on January 16, 2015; the court then ordered a stay. [*Leus*, D. Ariz. No. 2:15-cv-1623, at Doc. 85, 87].

Counsel for Mr. Leus (Mr. Johnson) filed a motion for transfer and consolidation of several IVC filter actions with the United States Judicial Panel on Multidistrict Litigation ("JPML") on May 18, 2015, listing Mr. Leus's case as one of several that should be consolidated. [MDL No. 2641, Doc. 1 & 1-2]. While the parties awaited the JPML's decision, they filed a joint status report in the Missouri Federal Action requesting that the case remain stayed, and informing the court that a ruling from the JPML was impending. [*Leus*, D. Ariz. No. 2:15-cv-1623, at Doc. 90 ¶¶ 6-7.]

On August 17, 2015, the JMPL found that centralization of Mr. Leus's Missouri Federal Action and 21 additional cases would "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation," and would "conserve the resources of the parties, their counsel and the judiciary." [*In re Bard IVC*

*Filters*, Doc. 1 at 1.] The JPML determined that even though discovery was complete in some cases and some cases were near trial, "centralization still would promote efficiencies" and "the parties have not specifically identified any [advanced cases] that should be excluded." [*Id.* at 2.]

Once the MDL was formed, Bard identified thirteen cases "in which discovery is either complete or nearly complete." [Joint Report (Oct. 9, 2015), Doc. 174 at 8.][1] Leus was not among these cases. Plaintiffs contended that they needed extensive further discovery, and identified only three cases—"the most advanced from a trial-readiness standpoint"—estimated to be ready for remand in November 2016. [*Id.* at 8, 25.] Leus was not one of these cases, either. Plaintiffs also stated that they did "not believe that a firm date for remand of all cases . . . is appropriate at this time." [*Id.* at 36.]

At a case management conference in January 2016, the Court and the parties addressed the thirteen cases Bard had identified, and the Court directed the parties to confer over what discrete tasks needed to be completed in those cases. [Doc. 701 at 60-71]. After conferring, the parties agreed in March 2016 that three cases should be removed from the list of "mature" cases because of the "amount of remaining discovery," and provided the court with the discrete tasks outstanding for the remaining ten close-to-trial-ready cases. [Doc. 914.] The Court adopted this amended list, in April 2016, observing that the ten mature cases were "not generally subject to ongoing discovery" and would "be treated as mature cases." [Doc. 1319 at 2.] Meanwhile, on May 10, 2016, the parties filed a stipulation of dismissal in Mr. Leus's New Jersey Lawsuit. [Doc. 11876-1 at 8.]

In December 2016, with input from the parties, the Court found that it was "premature" to remand any of the ten cases to their home districts, but that the "conclusion does not preclude the parties from discussing specific cases which may be subject to remand before the expert work is completed." [Doc. 4311.] The parties have never discussed remanding Mr. Leus's case.

---

[1] At the time this Joint Report was filed in October 2015, 54 cases were in the MDL. *See id.* at 6.

- 3 -

At the Case Management Conference in November 2017, the Court reiterated that the purpose of the bellwether process was to "get a representative look at how the cases play in front of a jury" to provide a basis for settlement. [Doc. 9243 at 74:1-78:13]. Plaintiffs' counsel responded:

> **[T]he plaintiffs want the case to resolve here. And, again, we agree that the bellwether process is what we hope will make that happen. . . . I understand that the obligation is try to get everything resolved here. The plaintiffs are fully committed to that process. I just want you to know that. We're not asking for remands. . . .**

[*Id.* at 80:20-24; 81:16-22.]

Plaintiffs now seek a remand of Mr. Leus's case.

## II. LEGAL STANDARD

"The statutory power to order a remand … lies in the [JPML], not the transferee district judge." *In re Roberts*, 178 F.3d 181, 184 (3d Cir. 1999). The MDL Court instead may enter an order suggesting to the JPML that a case is ready for remand. *In re Wilson*, 451 F.3d 161, 165 n. 5 (3d Cir. 2006). The JPML will "remand an action prior to the completion of pretrial proceedings[2] only upon a showing of good cause." *In re CBS Color Tube Patent Litig.*, 342 F. Supp. 1403, 1405 (J.P.M.L. 1972). The movant "bears the burden of establishing that the relief sought [transfer] is warranted." *In re Reciprocal of Am. (ROA) Sales Practices Litig.*, No. CV 04-2410, 2012 WL 13018843, at *2 (W.D. Tenn. Apr. 11, 2012) (denying request for suggestion of remand); *In re Maxim Integrated Prod., Inc.* MDL No. 2354, No. 12-244, 2015 WL 1757779, at *3 (W.D. Pa. Apr. 17, 2015) (denying request for suggestion of remand and commenting that where a case was "not trial-ready," the good cause standard applied).

Plaintiffs fail to cite, let alone apply, these standards. They have not shown good cause to remand Mr. Leus's case.

---

[2] As discussed in more detail below, coordinated settlement proceedings are, by definition, "pretrial" proceedings.

### III. ARGUMENT

**A. Facilitating Settlement Valuation Through the Bellwether Process Is an Explicit Goal of These Coordinated Pretrial Proceedings.**

The JPML created this MDL—at the behest of Mr. Leus's attorney—"to serve the convenience of the parties and witnesses[,] promote the just and efficient conduct of the litigation," and "conserve the resources of the parties, their counsel and the judiciary." [Doc. 1 & 11876-1.] Remand is not appropriate where a case "will benefit from further coordinated proceedings." *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2012 WL 1963350, at *2 (D. Kan. May 30, 2012).

An express and legitimate purpose of pretrial consolidation and coordination is to facilitate settlement. "Pretrial, as an adjective, means before trial ... all judicial proceedings before trial are pretrial proceedings." *In re Patenaude*, 210 F.3d 135, 144–45 (3d Cir. 2000) (internal quotation and alteration omitted) ("[T]here is no basis for concluding that settlement conferences are not pretrial proceedings."). Conducting bellwether trials in aid to informing a global settlement promotes the "just and efficient conduct of the litigation" and conserves the resources of all stakeholders. *See id.*; *accord In re Zyprexa Prod. Liab. Litig.*, 375 F. Supp. 2d 170, 172 (E.D.N.Y. 2005) (holding that remand was "premature" when "settlement negotiations are in process").

In another Third Circuit case, the petitioners—like Mr. Leus here—argued that the remaining discovery was case specific and that the MDL process "only serve[d] to delay the resolution of their cases." *In re Wilson*, 451 F.3d 161, 169 (3d Cir. 2006). The court rejected this argument, holding: "Petitioners here likewise seek to equate the completion of common discovery with the end of 'coordinated or consolidated' proceedings. As we made clear in *Patenaude*, the test is not whether proceedings on issues common to all cases have concluded; it is whether the issues overlap, either with MDL cases that have already concluded or those currently pending." *Id.* at 170-171.

As Plaintiffs concede, the express purpose of the bellwether process in this MDL is to facilitate coordinated settlement for the consolidated cases. [Doc. 11876 at 4; CMO

28, Dkt. 8871, at 1 ("The purpose of the bellwether trials is to give the parties insight into how their claims and defenses are received by juries, in the hope of helping facilitate a global settlement before the cases are remanded to their original jurisdictions.").] Counsel for Plaintiffs has represented to this Court that Plaintiffs are committed to the bellwether process to that end.

Despite this commitment, Plaintiffs argue that Mr. Leus should be exempt from further bellwether proceedings. They claim that (1) because one G2 bellwether has taken place, Mr. Leus has no further benefit from the remaining bellwether trials, (2) Mr. Leus's medical and financial situation causes him concern about the delay in resolution, and (3) because his case was among the initial 22 cases transferred, the Court should give special accord to Mr. Leus's concerns about delay. These arguments do not establish good cause to suggest remand.

### B. Plaintiffs Have Not Shown Good Cause to Suggest Remand.

As Plaintiffs have argued, more than 40% of the cases in the MDL involve G2/G2X filters. [Doc. 11553 at 3 n.1.] Yet Plaintiffs claim (even though the next bellwether trial features either a G2X or Eclipse filter) that Mr. Leus's case is ripe for remand now because he "does not necessarily directly benefit from those bellwether trials involving models other than the G2." [Doc. 11876 at 7.] If that statement were accurate—and it is not—it would apply to 40% of the MDL litigants, not just Mr. Leus. Plaintiffs' argument also ignores that the bellwether trials provide data for settlement value and range based not only on type of device but also by type of injury, potential third party causation, and other legal and factual issues and theories that may differ in otherwise representative cases. *See Price v. Biomet, Inc.*, No. 3:12-MD-2391-RLM, 2016 WL 463271, at *1–3 (N.D. Ind. Feb. 8, 2016) (commenting that legal issues "don't distinguish between the implant types" and rejecting suggestion of remand where plaintiff sought remand in an MDL involving multiple types of medical implants).[3] In

---

[3] *See also* Doc. 11952 at 3 (Plaintiffs' argument that a Recovery case, representing 10-11% of the MDL pool, "will be helpful to assess the value of other cases by comparison").

addition, a representative case provides useful reference points for settling even outlier cases. The argument that Mr. Leus alone cannot benefit from further bellwether trials is, in short, specious.

The length of the MDL proceeding likewise provides no basis for remand. Mr. Leus's attorney requested in 2015 that his case be consolidated with others for the MDL. At that point, the Missouri Federal Action had been pending for close to two years and the duplicate New Jersey state court action had been in progress for a year. Yet Mr. Leus now asserts that he, and he alone, does not benefit from the coordinated proceedings because he has been waiting too long "for his day in Court." [Doc. 11876 at 6, 7.] Plaintiffs provide no authority to suggest that the slow pace of multi-district litigation is good cause for a remand. It is not:

> [T]he gist of [the] motion appears to be that, because this case has been pending for some years, is progressing slowly and has at times focused on other parties, its continued inclusion in the MDL is no longer of benefit as its individual claims could have been resolved more quickly in a separate action. . . [T]he Court is unconvinced that such an assertion forms the basis for a suggestion for remand.

*In re ROA Sales Practices Litig.*, 2012 WL 13018843, at *3. Similarly, a plaintiff's financial circumstances do not affect whether remand is appropriate. *See In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, No. 05-7097, 2010 WL 1418399, at *2 (N.D. Ill. Apr. 6, 2010) (denying application for suggestion of remand while "sympathiz[ing] with the length of [the] litigation and [plaintiff's] financial difficulties," and holding that "the delay associated with inclusion in the MDL" did not support remand).

Many MDL plaintiffs have been in litigation against Bard for several years. Many plaintiffs, like any cross section of the population, have financial difficulties. And as the Court is aware, Mr. Leus is far from the only MDL plaintiff to have a serious medical

condition. Even just within the small cohort of Discovery Group 1 cases from which bellwethers were selected, plaintiffs included another double amputee, a plaintiff who has debilitating multiple sclerosis and is wheelchair bound, and a plaintiff whose trial was postponed because of ongoing medical issues that restricted travel. Yet by Mr. Leus's rationale, the Court should remand: (1) any plaintiffs with G2 or G2X filters (more than 40% of the pool), (2) any plaintiffs who have long had pending claims against Bard (likely hundreds, given that the MDL had more than 50 cases just over a month after its creation), (3) any plaintiffs with serious medical conditions, and (4) any plaintiffs suffering financial difficulties. This unworkable approach would eviscerate the MDL pool, undermine the bellwether process, and waste the benefits of consolidation and coordination that warranted creating this action and selecting bellwethers in the first place.

Mr. Leus may no longer appreciate the benefits of consolidated proceedings. But Mr. Leus, like the rest of the MDL plaintiffs, has "benefitted from membership in the assemblage," will benefit from the information obtained through the bellwether process, and cannot now seek to "renounce those benefits." *In re Heparin Prod. Liab. Litig.*, No. 1:10HC60098, 2016 WL 489449, at *1–2 (N.D. Ohio Jan. 27, 2016); *see also Markowitz v. Toyota Motor Sales, U.S.A., Inc.*, No. 810ML02151JVSFMOX, 2015 WL 13036874, at *2 (C.D. Cal. June 25, 2015) (commenting that the fact that a plaintiff may still benefit from coordinated proceedings is sufficient reason to reject transfer). Mr. Leus's change of heart, and frustration with the length of the litigation, is not cause for remand. He must take the bitter with the sweet, and like the rest of the MDL litigants, await the results of the bellwether process. *See also In re: Wright Med. Tech. Inc.*, No. 1:12-CV-664-WSD, 2016 WL 4592176, at *3–4 (N.D. Ga. Mar. 22, 2016) ("The remand of a single case could interfere with a global resolution, by forcing Defendants to defend a non-Bellwether trial while the MDL proceeds … remand is unnecessary, and denying remand will serve the overarching common and related issues in the MDL.").

**IV. CONCLUSION**

1  For all these reasons, Defendants respectfully request that this Court deny Plaintiff George Leus's Motion for Remand.

RESPECTFULLY SUBMITTED this 27th day of July, 2018

By: s/Richard B. North, Jr.
Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
Nelson Mullins Riley & Scarborough LLP
201 17th Street, NW / Suite 1700
Atlanta, GA 30363

James R. Condo (005867)
Kristine L. Gallardo (033975)
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

*Attorneys for C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of July 2018, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

          s/Richard B. North, Jr.
          Richard B. North, Jr.