**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, <br> _____ <br> Doris Jones, an individual, <br>    Plaintiff, <br> v. <br> C. R. Bard, Inc., a New Jersey corporation; and Bard Peripheral Vascular, Inc., an Arizona corporation, <br>    Defendants. | No. MDL 15-02641-PHX DGC <br><br> No. CV-16-00782-PHX-DGC <br><br> **ORDER** |

After a three-week trial in May, the jury in the Jones bellwether case returned a verdict in favor of Defendants. Doc. 11350. Plaintiff has filed a motion to contact the jurors. Doc. 11663. Defendants have filed a response. Doc. 11843. No reply has been filed and neither side has requested oral argument. The Court will deny the motion.

**I.    Background.**

The jurors in this case were deadlocked after ten hours of deliberation. The Court conferred with the parties on how to proceed. Plaintiff urged the Court to "encourage [the jurors] to keep trying to arrive at a resolution[.]" Doc. 11412 at 3. The Court expressed doubt that further instructions would prove helpful given the length of deliberations. Doc. 11412 at 3-5. After considering the matter further, Plaintiff's counsel

asked that the Court urge the jurors to continue their deliberations. *Id.* at 6. Defense counsel asked the Court to declare a mistrial. *Id.*

The Court chose to grant Plaintiff's request and gave the jury this Circuit's model instruction for a deadlocked jury. *Id.* at 9-10; *see* Ninth Circuit Model Civil Jury Instructions § 3.7 (2017). After deliberating for two more hours, the jury returned a unanimous defense verdict. Doc. 11412 at 11-13; *see* Doc. 11350.

A month later, Plaintiff filed this motion to contact jurors pursuant to Local Rule of Civil Procedure 39.2. Doc. 11663. Defendants oppose the motion. Doc. 11843.

## II. Legal Standard.

Local Rule 39.2 requires the party seeking to interview jurors to file proposed interrogatories and an affidavit setting forth the reasons for the questions. LRCiv 39.2(b). The rule requires a showing of "good cause" consistent with Federal Rule of Evidence 606(b). *Id.*

Rule 606(b) "prohibits all post-verdict inquiries into a juror's deliberative process." *Harris Corp. v. Indep. Techs.*, No. CV-01-2995 ER(AJWX), 2002 WL 31006045, at *1 (C.D. Cal. July 25, 2002) (citing *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972)). Specifically, the rule prohibits a juror from testifying about "any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict[.]" Fed. R. Evid. 606(b)(1). The rule contains three exceptions: a juror may testify about whether (1) extraneous prejudicial information was improperly brought to the jury's attention, (2) an outside influence was improperly brought to bear upon any juror, or (3) there was a mistake in the verdict form. Fed. R. Evid. 606(b)(2)(A)-(C). Even under these limited exceptions, however, "[j]urors may not testify as to how they or other jurors were affected by the extraneous prejudicial information or outside influence; they may only testify as to its existence." *Hard v. Burlington N. R.R. Co.*, 870 F.2d 1454, 1461 (9th Cir. 1989).

"Strong policy considerations underlie this limitation on juror testimony."

- 2 -

*Mitchell v. United States*, No. CV-09-8089-PCT-MHM, 2009 WL 2905958, at *1 (D. Ariz. Sept. 4, 2009). Allowing inquiry into jury deliberations would "make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference." *McDonald v. Pless*, 238 U.S. 264, 267-68 (1915); *see Tanner v. United States*, 483 U.S. 107, 127 (1987) ("[L]ong recognized and very substantial concerns support the protection of jury deliberations from intrusive inquiry."); *Harrod v. Ryan*, No. CV-16-02011-PHX-GMS, 2016 WL 6082109, at *2 (D. Ariz. Oct. 18, 2016) ("Federal courts have long recognized that unduly speculative questioning of juries poses significant problems and should be discouraged.").

**III. Discussion.**

Plaintiff asked that the jurors be given an additional instruction to encourage them to break the deadlock and reach a unanimous verdict. Doc. 11412 at 3, 6. Plaintiff does not claim that the instruction given by the Court was improper or that any of the Rule 606(b) exceptions apply. Rather, Plaintiff states that she "has some concern that there was a fundamental misunderstanding by the jurors that they could hold their positions and that a mistrial and another trial at a later date would result." Doc. 11663 at 2. Noting that a few jurors were apparently emotional when polled about the verdict, Plaintiff claims that this "suggest[s] that they would have found for Plaintiff but felt that they needed to capitulate to reach a unanimous verdict[.]" *Id.* Plaintiff asserts that good cause exists for the jurors to be interviewed by her attorneys. *Id.*

The Court does not agree. The jury was specifically instructed that they should reach a unanimous verdict only if "each of you can do so without violating your individual judgments and conscience." Doc. 11412 at 9. The instruction made clear that no juror should "change an honest belief as to the weight or effect of the evidence solely because of the opinions of the other jurors, or for the mere purpose of returning a verdict." *Id.* at 10. The jury is presumed to have understood and followed this instruction. The fact that some jurors appeared emotional might well have been the

product of three weeks of a difficult and complicated trial and some 12 hours of deliberation.

Additionally, the Court finds that questioning the jurors in this case would result in an intrusive inquiry into their deliberations and thought processes. The first question Plaintiff seeks to ask is "what facts or arguments changed the vote of those jurors who had previously favored Plaintiff?" Doc. 11663 at 2. This question goes to the heart of the jury deliberations. It impermissibly seeks to discover the "juror's mental processes concerning the verdict" and the "effect of [facts and arguments] on that juror's or another juror's vote[.]" Fed. R. Evid. 606(b)(1).

Other proposed questions would ask the jurors to disclose their views on the weight of the evidence for the design defect claims: "What was the most important fact or facts that lead you to conclude that the Eclipse was not defectively designed? Are there other facts about the design of the Eclipse that you would have wanted to know?" Doc. 11663 at 2 (Questions 2 and 3). Plaintiff concedes that these and the other questions are designed to get the jurors to "discuss their thoughts and deliberations[.]" *Id.* at 3-4. But this would "make what was intended to be a private deliberation, the . . . subject of public investigation." *McDonald*, 238 U.S. at 267. Such practices risk undermining "full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople[.]" *Tanner*, 483 U.S. at 120-21.

Finally, Plaintiff suggests that interviewing the jury will provide valuable information for the parties. But that is the entire purpose of the bellwether trial process. The parties will gain ample information from the outcome of the bellwether trials.

Plaintiff has not shown good cause for the jurors to be interviewed. The Court will deny Plaintiff's motion.

**IT IS ORDERED** that Plaintiff's motion to contact jurors (Doc. 11663) is **denied**. Dated this 3rd day of August, 2018.

_____
David G. Campbell
United States District Judge