James R. Condo (#005867)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
jcondo@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation,<br><br>This Document Relates to:<br><br>Lisa Hyde, et al. v. C. R. Bard, Inc., et al.<br>CV-16-00893-PHX-DGC | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE OF RECOVERY® FILTER CEPHALAD MIGRATION DEATHS**<br><br>(Assigned to the Honorable David G. Campbell) |

Bard moves *in limine* to exclude any reference, evidence, or argument concerning reports of Bard's Recovery® Filter allegedly migrating to a patient's heart resulting in patient death, by respectfully showing the Court as follows[1]:

## ARGUMENT AND CITATION OF AUTHORITY

### I. Cephalad Migration Death Evidence is Irrelevant in this Case.

This Court repeatedly excluded evidence of cephalad migration deaths by the Recovery Filter for the *Jones* bellwether trial involving an Eclipse® Filter, denying Plaintiff Jones' repeated attempts to seek reconsideration of the ruling before and during the trial. *See* Docs. 10819, 10920, 11041, 11113, 11256, 11302; *see also* Trial Tr. Day 10, at 2224:3 to 2226:24, *Jones v. C. R. Bard, Inc., et al.* (D. Ariz. May 30, 2018), excerpts attached hereto as Exhibit A. As demonstrated in the Joint Report on Determining Filter Type, filed contemporaneously herewith, Bard believes that there is circumstantial evidence in this case that Ms. Hyde received an Eclipse Filter on February 25, 2011. Plaintiffs, to the contrary, intend to focus the evidence at trial on the G2®X Filter. For four reasons, regardless of whether Ms. Hyde was implanted with a G2X or an Eclipse Filter, evidence of cephalad migration deaths associated with the Recovery Filter is irrelevant in this case and should be excluded. Fed. R. Evid. §§ 401, 402.

*First,* critical to the Court's repeated rulings in *Jones* was "that cephalad migration deaths stopped after the Recovery Filter," and that "cephalad migrations largely ceased due to changes made to the G2-line of filters," which included the G2X and Eclipse filters. Doc. 10920 at 3-4. Even after a review of thousands of complaints in Bard's Trackwise database, Plaintiffs provided evidence of cephalad migration associated with only one G2 and three G2X filters (out of approximately 180,000 G2 and G2X filters sold), and only four Eclipse filters (out of approximately 66,000 sold). *See* Doc. 10920 at 4. Plaintiffs were "not able to identify any instance of cephalad migration causing death in the G2 or later filters." *Id.* at 3. Thus, these fundamental grounds apply equally in this case regardless of whether Ms. Hyde received a G2X or an Eclipse filter.

---

[1] Counsel for Defendants conferred with counsel for Plaintiffs and this motion is opposed.

- 2 -

***Second***, the cephalad migration death evidence is even more remote in time in this case than in the *Jones* and *Booker* cases. Ms. Hyde was implanted with her IVC Filter in February 2011, more than six months after Ms. Jones received her Eclipse Filter in August 2010, more than three and a half years after Ms. Booker received her G2® Filter in June 2007, and more than five years after the last report of a death associated with the Recovery Filter in late 2005. "The passage of more than [five] years and three filter generations makes the cephalad migration deaths too remote in time" to be relevant in this case. Doc. 10819 at 3.

***Third***, for the same reasons in *Jones*, the cephalad migration deaths say nothing about Ms. Hyde's remaining claims for trial: strict liability design defect, negligent design defect, negligence per se, and loss of consortium. *See* Docs. 10819 at 3-4; 11041 at 3; 12007 at 19. This remains true even if Ms. Hyde received a G2X Filter because proof of cephalad migration deaths from the Recovery Filter in 2004 and 2005 does not show that the G2X had a design defect when it left Bard's control more than five years later. *See* Doc. 10819 at 3. Additionally, Bard continues to believe that this evidence is irrelevant and inadmissible with regard to Ms. Hyde's negligent design claim concerning either the G2X or Eclipse filter.[2] But whatever probative value, if any, this evidence may have "remains marginal" at best, and is "not central to proof of design negligence." *Id.* at 4.

---

[2] "A showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect." *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991); *Reid v. BMW of N. Am.*, 464 F. Supp. 2d 1267, 1271 (N.D. Ga. 2006) ("Admission of other similar accidents or occurrences is governed by the federal substantial similarity doctrine and not state law."); *St. John v. Toyota Motor Corp.*, No. 8:10ML02151 JVS FMOX, 2013 WL 5775081, at *5 (C.D. Cal. Oct. 11, 2013) ("The Ninth Circuit has much the same standard" as that under Georgia law). This Court already "conclude[d] that instances of cephalad migration resulting in death are not substantially similar to complications experienced by the G2, G2X, or Eclipse [under] the substantial similarity requirement of Georgia law." *See* Doc. 10819 at 4-5. This is because "cephalad migration was largely eliminated by the design of the G2, and Plaintiffs ha[ve] identified no cephalad migration deaths caused by any of the G2 line of filters, including the Eclipse." *Id.*; Doc. 10920 at 3. Indeed, Ms. Hyde (like Ms. Jones) did not experience a migration of her filter in a cephalad direction to her heart or any other organ. *Cf.* Doc. 10920 at 5. Rather, Ms. Hyde's filter (like Ms. Booker's) allegedly migrated caudally, fractured, and one of its struts embolized to her heart. *Cf. id.* (Ms. Jones' "filter fractured and one of its struts travelled to her lung"). Therefore, regardless of whether Ms. Hyde received a G2X or Eclipse Filter, "deaths by cephalad migration of Recovery filters are not substantially

***Fourth***, the cephalad migration deaths are not relevant to punitive damages in this case because, as the Court found in *Jones*, they "shed little light on [Bard's] state of mind when marketing different filters with different complications, years later." Doc. 10819 at 5. This evidence is simply not relevant in this case because the deaths were not caused by the Eclipse (or its predicate device, the G2X), nor the G2X (or its predicate device, the G2® Express), nor even the G2 Express (or its predicate device, the G2). Instead, the deaths involved the Recovery Filter, and stopped when Bard ceased distributing the Recovery in 2005 – more than five years and three filter generations before Ms. Hyde received her filter in February 2011. *Id.* Bard should not be punished for their sale of an Eclipse or G2X filter to Ms. Hyde for "deaths that occurred five years earlier, from a filter she did not receive, and by a means of migration she did not experience." Doc. 11041 at 4; *see also State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 422 (2003) ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages.").[3]

Accordingly, evidence regarding cephalad migration deaths is irrelevant in this case and should be excluded under Federal Rules of Evidence §§ 401, 402.

## II.   Cephalad Migration Death Evidence is Inadmissible Under Rule 403.

Even if the cephalad migration death evidence had some minimal probative value in this case, that value would be substantially outweighed by the danger of unfair prejudice to Bard. *See* Fed. R. Evid. 403. This Court repeatedly found in the *Jones* case involving an Eclipse Filter "that deaths caused by a non-predicate device, and by a form

---

similar to Plaintiff's alleged injury." Doc. 10920 at 5. Accordingly, this evidence – which Plaintiffs intend to use for direct evidence rather than to impeach expert testimony, as apparent from the *Booker* trial – is inadmissible as to Ms. Hyde's negligent design claim. *See Cooper*, 945 F.2d at 1105.

[3] Because "[t]he parties shall not repeat arguments previously made," (Docs. 11659 at 3; 11871 at 3), Bard does not address the various other arguments that were previously raised by Plaintiffs and rejected by the Court, (Docs. 10920 at 4-5; 11041 at 3-6; 11113; Ex. A), such as the repeated argument that "if the Recovery had been recalled there would have been no predicate for the G2 and, therefore, no Eclipse filter to injure her." Doc. 11256. But Bard does note for the Court's convenience that there are no claims for failure to warn or failure to recall remaining in this case. *See* Doc. 12007 at 19. Therefore, Plaintiffs' arguments here predicated on those claims fail for the same reasons as in *Jones*.

of migration that was eliminated years earlier, are of sufficiently limited probative value that their relevancy is substantially outweighed by the danger of unfair prejudice" because the death evidence may "prompt a jury decision based on emotion." Docs. 10819 at 6; 10920 at 5. "The danger of this emotional reaction substantially outweighs any marginal relevancy of the death evidence in this case." Doc. 10819 at 6.

The Court repeatedly upheld this Rule 403 analysis even after hearing the evidence in the *Jones* bellwether trial. *See* Ex. A, at 2226:1-5 ("I continue to believe that death evidence presents a risk of unfair prejudice when it's by a method of migration that was not present in the G2, G2X, or Eclipse filters, and when it occurred five and six years before the Eclipse filter that was implanted in this case."); *id.* at 2226:12-18. This Rule 403 balance remains the same even if Ms. Hyde received a G2X filter because, as demonstrated above, the deaths were caused by a non-predicate device, by a method of migration that was not present in the G2X filters, and occurred five and six years before Ms. Hyde was implanted in this case. Doc. 10819 at 6; Ex. A, at 2226:1-5.

This case is unlike the *Booker* case involving a G2 filter for which the Recovery was the predicate device. *See* Doc. 10819 at 6. But even in *Booker* the Court expressed concern "that too heavy an emphasis on deaths caused by cephalad migration of the Recovery filter – a kind of migration which did not occur in Ms. Booker's [or Ms. Hyde's] case – would result in unfair prejudice that substantially outweighs the probative value of the cephalad migration evidence." Docs. 10323 at 4; 10819 at 6. Moreover, after the *Booker* bellwether trial, this Court found that "cephalad migration and deaths related to cephalad migration largely stopped when the Recovery filter ended, and were not present in any meaningful degree in the G2, G2X, or the Eclipse." Ex. A, at 2224: 6-9. Therefore, the probative value, if any, of this evidence in a G2X case is substantially outweighed by the risk of unfair prejudice. This evidence will serve no purpose other than to inflame the jury and impermissibly "prompt a jury decision based on emotion," which is precisely why this Court excluded it in *Jones*. Docs. 10819 at 6. The Court should do the same here.

Finally, as demonstrated in the *Jones* bellwether trial, Ms. Hyde will not be seriously hampered in her "ability to prove the Recovery Filter complications, testing, and design when references to cephalad migration deaths are removed." Doc. 11041 at 12. This is true regardless of whether Ms. Hyde received a G2X or Eclipse Filter. Therefore, this evidence should be excluded under Rule 403.

## CONCLUSION

For these reasons, Bard respectfully requests that the Court grant its Motion.

RESPECTFULLY SUBMITTED this 10th day of August, 2018.

       s/ Richard B. North, Jr.
       Richard B. North, Jr.
       Georgia Bar No. 545599
       Matthew B. Lerner
       Georgia Bar No. 446986
       NELSON MULLINS RILEY & SCARBOROUGH, LLP
       Atlantic Station
       201 17th Street, NW / Suite 1700
       Atlanta, GA  30363
       PH: (404) 322-6000
       FX: (404) 322-6050
       richard.north@nelsonmullins.com
       matthew.lerner@nelsonmullins.com

       James R. Condo (#005867)
       SNELL & WILMER L.L.P.
       One Arizona Center
       400 E. Van Buren
       Phoenix, AZ 85004-2204
       PH: (602) 382-6000
       jcondo@swlaw.com

       **Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of August 2018, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

s/Richard B. North, Jr.<br>
Richard B. North, Jr.