# Exhibit A

```
                    UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF ARIZONA

                   _____


In Re: Bard IVC Filters              )  MD-15-02641-PHX-DGC
Products Liability Litigation        )
                                     )  Phoenix, Arizona
                                     )  May 30, 2018
_____)
Doris Jones, an individual,          )
                                     )
               Plaintiff,            )
                                     )  CV-16-00782-PHX-DGC
       v.                            )
                                     )
C.R. Bard, Inc., a New Jersey        )
corporation; and Bard Peripheral     )
Vascular, Inc., an Arizona           )
corporation,                         )
                                     )
               Defendants.           )
_____)



         BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE

              REPORTER'S TRANSCRIPT OF PROCEEDINGS

                 TRIAL DAY 10 - A.M. SESSION

                    (Pages 2131 - 2265)




Official Court Reporter:
Patricia Lyons, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Ste. 312
401 West Washington Street, SPC 41
Phoenix, Arizona   85003-2150
(602) 322-7257

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared with Computer-Aided Transcription
```

1    proposed.  I have reviewed again the DeFord excerpts and I've
2    reviewed my notes of the DeFord excerpts.
3            This is where I come down on the issue.
4            I continue to be of the view that deaths related to
5    the use of the Recovery filter are marginally relevant at best
6    in this case because of the fact that cephalad migration and
7    deaths related to cephalad migration largely stopped when the
8    Recovery filter ended, and were not present in any meaningful
9    degree in the G2, G2X, or the Eclipse.
10           The possibility that the deaths should have caused
11   Bard to recall the Recovery and therefore it wouldn't have
12   been the predicate for the G2, in my view, isn't a relevant
13   point in this case for reasons I stated in the order last
14   night.
15           However, I do agree that the complaint history with
16   the Recovery filter is a relevant point in the history of this
17   whole line of filters and is relevant for the jury to
18   understand.  I have not felt that the death component of that,
19   which, again, was largely eliminated with the G2, was
20   sufficiently relevant that it survived a 403 analysis.  I
21   thought the risk of unfair prejudice substantially outweighed
22   that limited relevance.
23           The question now is whether the testimony of
24   Dr. DeFord changes that balance.
25           What Dr. DeFord said specifically was in response to

Page 2225

1  a question about whether, if Bard put patient safety at the
2  forefront, it should have stepped back from selling the
3  Recovery.  In other words, pull it off the market, I think is
4  what the question was.  And his answer was that he disagreed
5  because the evaluation at the time was, and now I'm quoting,
6  "That this technology was saving many more lives than it was
7  unable to save.  And by -- and if we took it off the market
8  and did not have that technology available, then that would
9  further increase the risk to patients versus decrease the risk
10 to patients."  That's the end of the quote.
11         I do believe that for the jury to accurately evaluate
12 that decision by Bard with respect to the Recovery filter, it
13 would be relevant for them to know there were reported deaths
14 related to the Recovery filter.  If that were the central
15 issue in the case, it would be absolutely critical evidence.
16 But the DeFord testimony does, in my view, suggest that
17 knowledge of death would better allow the jury to evaluate the
18 decision made in 2004 and 2005 as to whether or not the
19 Recovery should not be sold.
20         So the question then becomes whether that increased
21 relevancy from Dr. DeFord's testimony changes the 403 balance
22 that I've been reaching a number of times throughout the case.
23         I think reasonable jurors -- jurists could come to
24 different conclusions on this.  It's a close question, in my
25 view.

1          But I continue to believe that death evidence
2     presents a risk of unfair prejudice when it's by a method of
3     migration that was not present in the G2, G2X, or Eclipse
4     filters, and when it occurred five and six years before the
5     Eclipse filter that was implanted in this case.
6          And whether or not Bard struck the right balance in
7     dealing with Recovery complications at that point in time,
8     although a relevant point on the history, is a remote relevant
9     point on the history.  And the jury's ability to evaluate that
10    specific point, in my view, with this additional death
11    evidence does not make that evidence so relevant that I come
12    to a different conclusion on the 403 balancing.  I continue to
13    think that the death evidence from a method of migration that
14    no longer existed, a filter that no longer existed, which is
15    likely to elicit an emotional response, creates a danger of
16    unfair prejudice that substantially outweighs the probative
17    value of the evidence, even with Dr. DeFord's additional
18    answer to that question.
19         That's my best judgment on the question.
20         So I'm going to continue to stand by the decision
21    I've been making, that the cephalad migration death evidence
22    should not be admitted.
23         That means I think you can have Dr. -- pardon me,
24    Mr. Carr excused.
25         MR. NORTH:  Thank you, Your Honor.

Page 2265

1        C E R T I F I C A T E

2

3        I, PATRICIA LYONS, do hereby certify that I am duly

4    appointed and qualified to act as Official Court Reporter for

5    the United States District Court for the District of Arizona.

6

7        I FURTHER CERTIFY that the foregoing pages constitute

8    a full, true, and accurate transcript of all of that portion

9    of the proceedings contained herein, had in the above-entitled

10   cause on the date specified therein, and that said transcript

11   was prepared under my direction and control, and to the best

12   of my ability.

13

14       DATED at Phoenix, Arizona, this 30th day of May,

15   2018.

16

17

18

19

20                                  s/ Patricia Lyons, RMR, CRR
                                    Official Court Reporter
21

22

23

24

25