**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, <br> _____ <br><br> Carol Kruse, an individual, <br><br>    Plaintiff, <br><br> v. <br><br> C. R. Bard, Inc., a New Jersey corporation; and Bard Peripheral Vascular, Inc., an Arizona corporation, <br><br>    Defendants. | No. MDL 15-02641-PHX-DGC <br><br><br> No. CV-15-01634-PHX-DGC <br><br> **ORDER** |

This multidistrict litigation proceeding ("MDL") involves thousands of personal injury cases brought against Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard"). Bard manufactures and markets medical devices, including inferior vena cava ("IVC") filters. The MDL Plaintiffs have received implants of Bard IVC filters and claim that they are defective and have caused Plaintiffs to suffer serious injury or death.

One of the MDL cases is brought by Plaintiff Carol Kruse, who had a Bard filter implanted nine years ago. Ms. Kruse's case has been selected as one of several bellwether cases. Defendants have filed a motion for summary judgment. Doc. 7341.

The motion is fully briefed, and the parties agree that oral argument is not necessary. The Court will grant the motion.

## I. Background.

The IVC is a large vein that returns blood to the heart from the lower body. An IVC filter is a device implanted in the IVC to catch blood clots before they reach the heart and lungs. This MDL involves multiple versions of Bard IVC filters – the Recovery, G2, G2X, Eclipse, Meridian, and Denali. These are spider-shaped devices that have multiple limbs fanning out from a cone-shaped head. The limbs consist of legs with hooks that attach to the IVC wall and curved arms to catch or break up blood clots. Each of these filters is a variation of its predecessor.

The MDL Plaintiffs allege that Bard filters are more dangerous than other IVC filters because they have higher risks of tilting, perforating the IVC, or fracturing and migrating to vital organs. Plaintiffs further allege that Bard failed to warn patients and physicians about these higher risks. Defendants dispute these allegations, contending that Bard filters are safe and effective, that their complication rates are low and comparable to those of other IVC filters, and that the medical community is aware of the risks associated with IVC filters.

## II. Plaintiff Carol Kruse.

Plaintiff Kruse has a history of blood clots. Before knee surgery in July 2009, she had a Bard G2 filter implanted to mitigate the risk of a pulmonary embolism during or after surgery. Dr. Shanon Smith implanted the filter without incident. Dr. Smith attempted to remove the filter on April 7, 2011, but was unsuccessful because the filter had tilted and perforated the IVC wall. The filter remains embedded in Plaintiff's IVC.

Plaintiff filed suit against Bard on April 6, 2015. She asserts various claims under Nebraska law.[1] The following claims remain: failure to warn (Counts II and VII), design defects (Counts III and IV), failure to recall (Count VI), misrepresentation (Counts VIII

---

[1] The parties agree that Nebraska law applies to Plaintiff's claims. Docs. 7348 at 18 n.7, 8009 at 3 & n.2.

- 2 -

and XII), negligence per se (Count IX), concealment (Count XIII), consumer fraud and unfair trade practices (Count XIV), and punitive damages. *See* Doc. 364 (master complaint).[2]

Defendants move for summary judgment on various grounds. Doc. 7348. Plaintiff opposes the motion. Doc. 8009. For reasons stated below, the Court will grant summary judgment on statute of limitations grounds.[3]

## III. Summary Judgment Standard.

A party seeking summary judgment "bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The evidence must be viewed in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and all justifiable inferences are drawn in that party's favor because "[c]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To avoid summary judgment, the factual dispute must be genuine – that is, the evidence must be sufficient for a reasonable jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

---

[2] The master complaint is the operative pleading in this MDL. It asserts 17 claims and seeks both compensatory and punitive damages. *Id.* ¶¶ 166-349. The allegations and claims asserted in the master complaint have been deemed pled in Plaintiff's previously filed individual complaint. Doc. 1485 at 1; *see* Doc. 1, Case No. 15-CV-01634-PHX-DGC. Plaintiff is not pursuing the claims for manufacturing defect (Counts I and V), breach of warranty (Counts X and XI), loss of consortium, wrongful death, and survival (Counts XV-XVII). Doc. 8009 at 2 n.1.

[3] This bellwether case was set for trial in September 2018. Doc. 11659. In mid-July, the Court informed the parties that it had concluded that summary judgment must be granted in favor of Defendants. Doc. 11839. The Court stated that it would issue an order granting summary judgment and setting forth its analysis. *Id.* This is the order.

- 3 -

**IV. Discussion.**

**A. Nebraska's Statute of Limitations and Discovery Rule.**

Under Nebraska law, civil actions generally must be brought within the time period prescribed by the applicable statute of limitations. Neb. Rev. Stat. § 25-201. Nebraska's statute of limitations for product liability actions requires that such actions, other than asbestos-related suits, "be commenced within four years next after the date on which the death, injury, or damage complained of occurs." Neb. Rev. Stat. § 25-224(1).

Nebraska courts have adopted a discovery rule for § 25-224(1). *See Condon v. A. H. Robins Co.*, 349 N.W.2d 622, 623-27 (1984). Under this rule, an injury "occurs" within the meaning of the statute, and the limitations period begins to run, when the plaintiff first "discovers, or in the exercise of reasonable diligence should have discovered, the existence of [the] injury[.]" *Id.* at 627. "Discovery refers to the fact that one knows of the existence of an injury . . . and not that one knows who or what may have caused that injury[.]" *Thomas v. Countryside of Hastings, Inc.*, 524 N.W.2d 311, 313 (Neb. 1994). Similarly, "one need not know the full extent of one's damages before the limitations period begins to run[.]" *Gordon v. Connell*, 545 N.W.2d 722, 726 (Neb. 1996).

**B. Plaintiff's Claims Are Time Barred Under § 25-224(1).**

Because Plaintiff filed suit on April 6, 2015, her claims are time barred if the four-year limitations period set forth in § 25-224(1) began to run on or before April 5, 2011. Defendants argue that Plaintiff discovered her injury no later than March 14, 2011, when Plaintiff underwent a pre-op exam before the attempted removal of the G2 filter. Doc. 7348 at 6-8. Plaintiff contends that her claims are timely because she did not discover her injury until after the removal procedure on April 7, 2011. Doc. 8009 at 5-8.

The Court agrees with Defendants. The undisputed evidence shows that Plaintiff clearly knew of the existence of the injury well before then. Plaintiff began experiencing new and unfamiliar abdominal pain only a few days after the filter was implanted in 2009. Doc. 7350-4 at 12. Plaintiff had not felt this pain before the filter was implanted,

*id.*, and she continued to have occasional abdominal pain when she twisted and bent certain ways, *id.* at 18. The abdominal pain was not related to digestive problems or Plaintiff's low back pain. *Id.* at 17-18.

Sometime in 2009 or 2010, Plaintiff saw a TV ad with a phone number for people with IVC filters to call if they were having "problems" with their filters. *Id.* at 4-8; Doc. 7350-1 at 4. Plaintiff called the number. Doc. 7350-4 at 3-5.

In late 2010, Plaintiff discussed her abdominal pain and the fact that she had an IVC filter with Kristi Eggers, a nurse who worked with local doctors and with Plaintiff at a nursing home. *Id.* at 13. Plaintiff testified about her conversation with Eggers as follows:

> Q. When is the first time you remember speaking to a doctor about having your IVC filter removed after it was implanted?
>
> A. That would have been – her name is Kristi Eggers, and she was [a] nurse practitioner . . . . *And in our conversation I told her that I had a filter, and, you know, I had this infrequent pain*, and she said, "Well, you know, can you have the filter removed?" And that's kind of how we got to talking about it. So I called Dr. Smith and said let's see if we can get it out.

Doc. 7350-4 at 13-14 (emphasis added).

Plaintiff underwent a pre-op exam on March 14, 2011. Doc. 7350-2 at 13-15. The progress note for that exam, signed by Eggers, states: "[Patient] is planning to have [the] IVC filter removed. This has been causing her pain for the last 3-4 months." Doc. 7350-2 at 13. When shown this progress note during her deposition, Plaintiff did not dispute that it said the G2 filter had been causing her pain. *Id.* at 16. The following exchange then occurred:

> Q. At this time period you were experiencing the abdominal pain that you described before where it would hurt when you twisted or bent certain ways; right?
>
> A. Correct.

| | | |
|---|---|---|
| 1 | Q. | And you were going in to get this pre-op clearance to have your IVC filter removed? |
| 2 | | |
| 3 | A. | Yes. |
| 4 | Q. | And at this time period you had had conversations with Kristi Eggers about potentially my IVC filter is causing that pain; right? |
| 5 | | |
| 6 | A. | Yes, abdominal pain. |

*Id.* at 18-19.

This evidence shows that Plaintiff knew of her abdominal pain before the removal procedure on April 7, 2011, and even suspected that it was caused by the G2 filter. For purposes of § 25-224(1), Plaintiff discovered the existence of her injury – and the limitations period began to run – more than four years before she filed suit. *See Alston v. Hormel Foods Corp.*, 730 N.W.2d 376, 385 (Neb. 2007) (explaining that the discovery rule tolls the statute of limitations only where the plaintiff "is wholly unaware that he or she has suffered an injury or damage"). The Court will grant Defendants' summary judgment motion on statute of limitations grounds. *See Gordon*, 545 N.W.2d at 726 (affirming summary judgment and finding that the plaintiff discovered his injury within the limitations period where "he certainly knew that he had been injured, because he continued to experience pain").

Plaintiff contends that the date she discovered her injury is a disputed issue of fact that should be left to the jury. Doc. 8009 at 5. But Plaintiff does not dispute the facts set forth above. *See* Doc. 7959 ¶¶ 6-7, 13-15. Those facts, even when construed in her favor, show that Plaintiff experienced previously unknown pain after the filter implant, continued to have the pain, albeit infrequently, called the IVC number designated for people with filter problems, mentioned the pain to Kristi Eggers, suggested to Eggers that the pain was caused by the filter, and scheduled an appointment to have the filter removed. When Plaintiff met with Eggers before the removal procedure on March 14, 2011, Eggers stated in the progress note that the filter "has been causing her pain for the

last 3-4 months." Doc. 7350-2 at 13. No jury reasonably could find that Plaintiff first discovered her injury on April 7, 2011.

In claiming that she "neither knew nor had reason to know that her pain was filter-related in March 2011," Plaintiff cites the following exchange at the end of her deposition:

> Q. Did you know or have reason to know that pain was filter related in March of 2011?
>
> A. No.
>
> Q. When was the first time that you had any reason to believe that your filter was – there is anything wrong with your filter?
>
> A. When the filter retrieval was unsuccessful and Dr. Smith came in and said, you know, the filter is tilted and that's why we couldn't get it out.

Docs. 7959 at 6, 8009 at 6 (citing Doc. 7959-1 at 27). These statements contradict her prior testimony about the G2 filter causing her abdominal pain and the March 2011 progress note. The statements do not present "a sufficient disagreement to require submission to a jury." *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (quoting *Anderson*, 477 U.S. at 251-52); *see Craig v. Cty. of Santa Clara*, No. 17-CV-02115-LHK, 2018 WL 3777363, at *16 (N.D. Cal. Aug. 9, 2018) (citing *Kennedy* and finding that deposition testimony did not create a triable issue where it flatly contradicted prior statements and other evidence); *Watkins v. City of San Jose*, No. 15-CV-05786-LHK, 2017 WL 1739159, at *13 (N.D. Cal. May 4, 2017) (same); *Lansmont Corp. v. SPX Corp.*, No. 5:10-CV-05860 EJD, 2012 WL 6096674, at *4 (N.D. Cal. Dec. 7, 2012) ("To the extent [the] deposition testimony is internally inconsistent, it does not itself create a dispute of material fact because the former statement is rejected as self-serving, vague and contrary to the remaining evidence.").

Even if the Court were to credit these closing questions in Plaintiff's deposition, they say only that Plaintiff did not know her pain was caused by the filter until after the

unsuccessful removal procedure on April 7, 2011. But that knowledge is not required to satisfy the discovery rule and trigger the statute of limitations period under Nebraska law. "Discovery refers to the fact that one knows of the existence of an injury . . . and not that one knows who or what may have caused that injury[.]" *Thomas*, 524 N.W.2d at 313. "It is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only that a problem existed." *Reinke Mfg. Co. v. Hayes*, 590 N.W.2d 380, 390 (Neb. 1999); *see Lindsay Mfg. Co. v. Universal Sur. Co.*, 519 N.W.2d 530, 504-05 (Neb. 1994). Thus, even if Plaintiff did not suspect that her abdominal pain was filter-related, summary judgment would be warranted because there is no dispute that she knew of her abdominal pain more than four years before she filed suit. *See Gordon*, 545 N.W.2d at 726.

Plaintiff presents a declaration in which she asserts that she had no reason to know that the G2 filter had caused any injury until Dr. Smith attempted to remove the device. Doc. 7959-1 at 31. This assertion does not help Plaintiff for the same reason – she did not need to know the cause of her pain for the limitations period to be triggered.

Similarly, it is immaterial whether Plaintiff knew before the removal procedure that the G2 filter had tilted, migrated, perforated her IVC, and fractured. Docs. 7959-1 at 31, 8009 at 7. A plaintiff "need not know the full extent of [her] damages before the limitations period begins to run[.]" *Gordon*, 545 N.W.2d at 726. Regardless of when Plaintiff became aware that the G2 filter had failed, she "discovered facts sufficient to put [her] on notice of [the] injury well with the statutory period of limitations." *Reinke*, 590 N.W.2d at 390.

Plaintiff's declaration contains other assertions the Court must address. She does not dispute in her declaration that she and Eggers discussed her abdominal pain, her IVC filter, and the filter's removal before March 14, 2011. Doc. 7959-1 at 30-31. But she states, nonetheless, that the reason she scheduled the removal procedure "was not because [she] knew that or believed at that time that the filter was causing any pain, but simply because it had been brought to her attention that the filter was no longer needed and it

was a convenient time for [her] to have the procedure." *Id.* She similarly states that she met with Eggers for the pre-op exam "only because [she] thought the filter was no longer needed and because April 2011 was a convenient time for [her] to have the procedure." *Id.* at 31. These statements are wholly inconsistent with Plaintiff's deposition testimony that she had conversations with Eggers about the G2 filter causing her abdominal pain and, as a result of the conversation, made an appointment to have the filter removed. Doc. 7350-2 at 13-15, 19.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting [her] prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (citations omitted). "This sham affidavit rule prevents a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting [her] own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Kennedy*, 952 F.2d at 266); *see Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (explaining that the sham affidavit rule is necessary to maintain the principle that the summary judgment procedure is an integral part of the federal rules). Because a court is not to weigh conflicting evidence or make credibility determinations on summary judgment, however, the sham affidavit rule "should be applied with caution." *Van Asdale*, 577 F.3d at 998 (citation omitted).

As noted above, certain statements in Plaintiff's declaration flatly contradict her prior deposition testimony. There is "clear and unambiguous" inconsistency, *Yeager*, 693 F.3d at 1080, between Plaintiff's deposition testimony and the conclusory assertion in her declaration that "[t]he first time [she] knew or had a reasonable basis for knowing that the Bard G2 filter . . . had caused any injury was after Dr. Smith attempted to remove the filter on April 7, 2011." Doc. 7959-1 at 31. This is not a case of "newly-remembered facts, or new facts, accompanied by a reasonable explanation[.]" *Yeager*, 693 F.3d at 1081. Nor can the declaration be construed as simply "clarifying prior testimony

elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy[.]" *Van Asdale*, 577 F.3d at 999. Plaintiff affirmatively testified during her deposition that she talked to Eggers about the G2 filter causing her pain. Doc. 7350-4 at 13-15, 19. This testimony renders implausible Plaintiff's subsequent declaration that she had no reason to suspect that the G2 filter was the cause of her pain and scheduled the removal procedure only because the filter was no longer needed and it was a convenient time for the procedure. Doc. 7350 at 30-31. The Court therefore will disregard the declaration in this respect. *See Yeager*, 693 F.3d at 1081; *Welsh v. Trimac Transp. Servs. (W.) Inc.*, No. CV-11-01625-PHX-ROS, 2014 WL 12617737, at *4 (D. Ariz. Mar. 31, 2014) (finding statements in a summary judgment affidavit to be a sham where the plaintiff offered no explanation as to why he stated to the contrary in his deposition testimony); *see also Momsen v. Neb. Methodist Hosp.*, 313 N.W.2d 208, 213 (Neb. 1981) ("Where a party without reasonable explanation testifies to facts materially different concerning a vital issue, the change clearly being made to meet the exigencies of pending litigation, such evidence is discredited as a matter of law and should be disregarded." (citations omitted)).

Plaintiff argues that Defendants' own expert in interventional radiology has opined that Plaintiff's other health problems could have been a cause of her pain. Doc. 8009 at 7. But that opinion does not change the fact that Plaintiff herself felt pain she had not experienced before the filter was implanted, and discovery under Nebraska law "refers to the fact that one knows of the existence of an injury . . . and not that one knows who or what may have caused that injury[.]" *Thomas*, 524 N.W.2d at 313. Nor does it change the fact that Plaintiff called the IVC legal number for people with filter problems, talked to Eggers about the pain she was experiencing and her suspicion that is was caused by the filter, scheduled to have the filter removed, and had a pre-op meeting with Eggers that resulted in a progress note stating that Plaintiff's filter "has been causing her pain for the last 3-4 months." Doc. 7350-2 at 13.

Finally, Plaintiff asserts that the statute of limitations defense should be

disregarded because this is a bellwether case. But the Court cannot conclude that legal defenses available under Nebraska law, and that would apply if this case were tried in Nebraska federal court, are somehow inapplicable because this is a bellwether trial. The Court is to apply the law of the transferee district when deciding cases in this MDL proceeding. *See In re Zicam Cold Remedy Mktg., Sales Practices, & Prods. Liab. Litig.*, 797 F. Supp. 2d. 940, 941 (D. Ariz. 2011) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 525 (1990)).[4]

**IT IS ORDERED:**

1. The following claims are **dismissed** based on Plaintiff's withdrawal of the claims before Defendants moved for summary judgment: manufacturing defect (Counts I and V), breach of warranty (Counts X and XI), loss of consortium, wrongful death, and survival (Counts XV-XVII).

2. Defendants' motion for summary judgment (Doc. 7341) is **granted** on the remaining claims: failure to warn (Counts II and VII), design defect (Counts III and IV), failure to recall (Count VI), misrepresentation (Counts VIII and XII), negligence per se (Count IX), concealment (Count XIII), consumer fraud and unfair trade practices (Count XIV), and punitive damages.

Dated this 17th day of August, 2018.

*David G. Campbell*

David G. Campbell
Senior United States District Judge

---

[4] Plaintiff asserts that Defendants have not moved for summary judgment on the design defect claims (Counts III and IV). Doc. 8009 at 2. Defendants admit that they inadvertently omitted these counts from the introduction section of their motion, but note that the motion otherwise makes clear that, with respect to the statute of limitations argument, Defendants seek summary judgment as to all of Plaintiff's claims. Plaintiff had a full and fair opportunity to respond to that argument. The Court finds that the Nebraska statute of limitations for product liability cases applies to all of Plaintiff's claims. Given this ruling, the Court need not address Defendants' other summary judgment arguments.