Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California  92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
602-530-8000

*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC |
| LISA HYDE and MARK HYDE, a married couple, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE TRIAL** |
| Plaintiff, | (Assigned to the Honorable David G. Campbell) |
| v. | |
| C.R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, an Arizona corporation, | (Oral Argument Requested) |
| Defendants. | |

Plaintiffs oppose Defendants' C.R. Bard, Inc. and Bard Peripheral Vascular Inc., (collectively "Bard") Motion to Bifurcate Trial. The motion should be denied for three reasons: 1) Wisconsin law does not provide for bifurcation of trial of punitive damage amount, 2) Bard has not met its burden to justify any form of bifurcation, 3) Bifurcation would inconvenience the jury, prejudice Plaintiffs, and would neither expedite nor economize the trial.

**I.    Introduction**

It is clear Bard's motion is less a motion for bifurcation than a motion seeking exclusion of one piece of evidence: Bard's financial net worth. This is not true bifurcation.

The facts relevant to Bard's financial net worth are inexplicitly intertwined with liability facts necessary for a punitive damage claim which cannot and should not be separated under Wisconsin law.

## II. There Is No Conflict Between Wisconsin Law and Rule 42(b) And Wisconsin's Punitive Damage Statute Does Not Provide For Bifurcation.

Wisconsin law is clear on the distinction between bifurcation of "issues" and "claims". The matter before the Court, it would seem, is Bard's request to bifurcate the phases of a punitive damage *claim* to match that of the previous two bellwether trials. Framed this way, as opposed to the "bifurcation of issues" as Bard states at various points in its' motion.

> On its face §805.05(2) does not authorize the bifurcation of *issues*. While this alone is not necessarily indicative of an intent to disallow bifurcation, the drafting history of that subsection reveals that the omission of language providing for separate trials on individual issues was deliberate and was intended to disallow the bifurcation of *issues*. We note at the outset of our discussion that we do not often come upon extrinsic materials that so clearly and concisely provide insight into the intent of a body enacting a statute as those that guide our determination in this case.
>
> ***
>
> Moreover, the intent of the drafters to disallow affirmatively bifurcation of *issues* is found in the correspondence of the Judicial Council Committee members...in drafting § 805.05(2) to an inquiring member of the state judiciary:
>
> The rule has been intentionally written to provide that *only claims* can be bifurcated and that *issues cannot be bifurcated*. An exception to that is the bifurcation of an issue of insurance coverage under 803.04(2)(b)."

*Waters ex rel. Skow v. Pertzborn*, 243 Wis. 2d 703, 718 (Wis. 2001)(emphasis provided, footnote omitted).

A request to bifurcate portions of a claim does not appear to create conflict between section 805.05(2) of the Wisconsin Statute and Rule 42(b). Bard also suggests, and Plaintiffs agree, that Federal courts sitting in diversity often consider the relevant state law regarding bifurcation of the punitive damages claims from other triable issues if there is no

2

conflict with Rule 42(b). Mot. at 3, fn. 3.  With that clarification, Bard requests this Court to exercise its discretion to bifurcate a portion of Plaintiffs' punitive damage claim, to parallel the previous two bellwether trials. But the previous two bellwether trials, in which determinations of the monetary awards were bifurcated from the findings of punitive damages, were based on Georgia Law codified by statute:

> If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case.

O.C.G.A §51-12-5.1(d)(2)

Here, the Wisconsin's statutory direction with regard to punitive damages, Wis. Stat. §895.043(4), states the exact opposite.

> (4) Procedure. If the plaintiff establishes a prima facie case for the allowance of punitive damages:
> (a) The plaintiff may introduce evidence of the wealth of a defendant; and
> (b) The judge shall submit to the jury a special verdict as to punitive damages or, if the case is tried to the court, the judge shall issue a special verdict as to punitive damages.

Clearly Plaintiffs have already established a *prima facie* case for punitive damages. (Doc. 12007). Therefore, as the Georgia statute required a bifurcation of the decision regarding the amount of punitive damages, the Wisconsin statute does not require bifurcation as a means to exclude evidence as Bard seeks to do here.

Even if Wisconsin law provided no statutory direction, evidence necessary to prove Plaintiffs' design defect claims overlap significantly with regard to the evidence probative of an amount of a punitive damages award under Wisconsin law. Separating the punitive damage claim into two phases, thereby splitting the trial, is not necessary for convenience or judicial economy. In fact, it will hamper such goals,  increase trial time and costs, and prejudice the plaintiffs. For these reasons and those discussed *infra*, Plaintiffs respectfully request that this Court decline to exercise its discretion over this matter.

3

### III.  **Bard Has Not Met Its Burden To Justify Bifurcation.**

FRCP 42(b) "confers broad discretion upon the district court to bifurcate a trial", with the intention of deferring costly or possibly unnecessary proceedings." *Hangarter v. Provident Life & Accident Insurance Co*., 373 F.3d 998, 1021 (9th Cir.2004) (citations omitted). Yet, the "normal procedure" cited by the Ninth Circuit is to try punitive damages liability and amount determination issues together, with appropriate instructions clarifying the difference, since the evidence on these issues "usually overlaps substantially." *Hangarter*, 373 F.3d, at1021. *See also, Conboy v. Wynn Las Vegas*, LLC, 2013 WL 1701073, at *14 (D. Nev. Aprds. 18, 2013) (citing *Hangarter*). Regardless of the broad discretion provided by Rule 42(b), the moving party has the "burden of proving that the bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties." *Spectra–Physics Lasers, Inc. v. Uniphase Corp*., 144 F.R.D. 99, 101 (N.D.Cal.1992) (citations omitted); *Clark v. I.R.S*., 772 F. Supp. 2d 1265, 1269 (D. Haw. 2009).

Bard is not moving to separate punitive damage evidence from the liability trial. Rather, Bard is advocating a strained interpretation of the Wisconsin statute to permit bifurcation of specific financial evidence of financial net worth. Bard's motion provides no specific basis for bifurcating a punitive damage claim into two phases in the *Hyde* trial. The motion merely cites to holdings and reasoning as to why such bifurcation was ordered. At the same time Bard urges that evidence of its financial net worth should be excluded at the trial.  Bard fails to provide a plausible explanation as to why evidence of Bard's financial net worth is prejudicial and somehow warrants a separate trial. In determining whether to exclude the financial condition of a company, jurisdictions in the Ninth Circuit have found uncompelling that ["t]he most persuasive argument in favor of separating the issue of a defendants' wealth from the rest of the trial is that the defendants will be somehow prejudiced if information of their finances is intermingled with the evidence on the issue of liability."*Hamm v. Am. Home Products Corp.*, 888 F. Supp. 1037, 1039 (E.D. Cal. 1995). The *Hamm* court found equally unpersuasive "that the jury…will be unable or unwilling to

4

distinguish between evidence pertaining to liability or culpability and evidence pertaining to the measure of damages." *Id* at 1039. The Court went on to explain that "any concerns about potential prejudice to the defendant may be directly addressed, and the prejudice cured, with appropriate limiting instructions."

Bard's arguments are conspicuously devoid of any sound legal basis grounded in Wisconsin law.  Conversely, a single trial will not only promote interests of judicial economy, but will result in a minimal, if any, prejudice to Bard.  As discussed, factors which should be considered to accomplish punishment or deterrence of a defendant, are similar to factors a jury must weigh to determine Bard's product liability. Without statutory authority or direction as provided by Georgia law in the last two bellwether trials, Bard has not met its burden of proof in showing, based on the law determining punitive damages in this trial, how it will be prejudiced so irreparably that the only option available is to bifurcate a portion of a punitive damages claim into two phases of trial where the relevant statute and pattern jury instructions clearly indicate that in Wisconsin, there is only one phase.

**IV.   Bifurcation Would Not Promote Economy or Expeditious Proceedings And Would Prejudice Plaintiffs**

In addition to clear statutory authority permitting evidence of a Defendant's financial wealth after showing a *prima facie* case, Wisconsin pattern jury instruction on punitive damages provides eight factors for determining the amount of a punitive damages award:

1) The seriousness of the hazard to the public;
2) The profitability of the misconduct;
3) The attitude and conduct on discovery of the misconduct;
4) The degree of the manufacturer's awareness of the hazard and of its excessiveness;
5) The employees involved in causing or concealing the misconduct;
6) The duration of both the improper behavior and its concealment;
7) The financial condition of the manufacturer and the probable effect on the manufacturer of a particular judgment; and

5

1        8) The total punishment the manufacturer will probably receive from other sources.
WIS JI-CIVIL 1707.2.

As noted above, many of the factors relevant to punitive damages are also relevant to Plaintiffs' case-in-chief. Moreover, to prove a claim for punitive damages, Plaintiff must show that Bard acted maliciously or in an intentional disregard of the rights of the plaintiff. WIS JI-CIVIL 1707.2. A person acts in an intentional disregard of the rights of the plaintiff when he acts with the *purpose* to disregard the plaintiff's rights or is aware that his or her acts are substantially certain to result in the plaintiffs' rights being disregarded. *Id*. To find an intentional disregard of plaintiff's rights under Wisconsin law, a jury must be satisfied that the defendant's act or course of conduct was, for one thing, deliberate. WIS JI-CIVIL 1707.2(1).

Examining legislative intent of the punitive damages statute, the Wisconsin Supreme Court found that a plaintiff must prove the defendant exercised an increased level of consciousness at which the defendant disregarded the plaintiff's rights to show a defendant's deliberate actions. *Strenke v. Hogner*, 279 Wis. 2d 52 (Wis. 2001). Proving an increased level of consciousness required under Wisconsin law would certainly include evidence to support many of the eight factors contained in the pattern jury instructions and would lead to overlap in evidence that would have to be presented twice to the jury if Defendants' motion for bifurcation were to be granted. Presenting identical and overlapping evidence in two separate trials flies in the face of judicial economy, expedition of trial time, and convenience for the jurors and parties. Moreover, requiring Plaintiffs to present evidence to the jury for a second time to support the elements/factors for determining an amount for punitive damages will severely prejudice Plaintiffs. The duplicative and redundant nature of presenting most of the same evidence for all eights factors to a jury that will have been seated for approximately three weeks will greatly harm Plaintiffs credibility, appear advantageous, and the repetitive presentation will certainly give the perception that Plaintiffs are attempting to "gild the lily".

6

In addition to showing the deliberateness of Bard's conduct, under Wisconsin law, Plaintiffs must also show that its conduct was sufficiently aggravated to warrant punishment with punitive damages. The case law Defendants rely on include conduct involving gang-related violent crimes, racial discrimination, financial abuses of the elderly, intoxication, etc. *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 603–04 (9th Cir. 2016) (referencing gang violence and other associative conduct); *United States v. Big D Enterprises, Inc*., 184 F.3d 924 (8th Cir. 1999) (referencing racial discrimination regarding child); *Parsons v. First Inv'rs Corp*., 122 F.3d 525, 527 (8th Cir. 1997)(fleecing elderly clients to invest in junk bonds); *Strenke v. Hogner*, 2004 WL 1097753, at *4 (Wis. Ct. App. 2004) (regarding evidence of severe intoxication).

In other words, conduct that would normally shock the conscious of any lay individual upon its mere mention. Yet the nature of the facts in a product liability matter involve notions of profit when balanced with harm to human health. The matters are inherently financial and more difficult for Plaintiffs to show punitive conduct in the absence of a criminal backdrops as Defendants juxtapose their arguments. Punitive conduct for a company is based in profitability, in the financial gains and stature it possesses in order to show the motivations that support a punitive damage claim. The law of Wisconsin requires Plaintiffs to prove deliberate conduct as well as display the aggravated nature of the behavior; which when it comes to corporate conduct, it is imperative to show the financial motivations absent the socially reprehensible and criminal nature extant in other types of cases, but not present in corporate conduct-based cases for punitive damages.

Moreover, the only evidence Bard singles out as desiring of its exclusion is the company's financial net worth which is clearly permitted in presenting a claim for punitive damages under Wis. Stat. §895.043(4). Bard provides no reasoned argument other than conclusory statements requesting this exclusion and provides no reasoning steeped in Wisconsin punitive damage law.

**V.     Conclusion**

For the above stated reasons, Plaintiff respectfully requests this Court deny Bard's Motion to Bifurcate Trial.

RESPECTFULLY SUBMITTED this 20th day of August 2018.

GALLAGHER & KENNEDY, P.A.

By: */s/Mark S. O'Connor*
Mark S. O'Connor
2575 East Camelback Road
Phoenix, Arizona  85016-9225

LOPEZ McHUGH LLP
Ramon Rossi Lopez (CA Bar No. 86361)
(admitted *pro hac vice*)
100 Bayview Circle, Suite 5600
Newport Beach, California 92660

*Co-Lead/Liaison Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of August 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/ Jessica Gallentine*