Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California  92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
602-530-8000

*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC |
| LISA HYDE and MARK HYDE, a married couple,<br><br>Plaintiff,<br><br>v.<br><br>C.R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, an Arizona corporation,<br><br>Defendants. | **PLAINTIFFS' RESPONSE TO DEFENDENTS' MOTION *IN LIMINE* NO. 4 TO EXCLUDE TESTIMONY ABOUT PERSONAL OPINIONS OF DR. MUEHRCKE**<br><br>(Assigned to the Honorable David G. Campbell)<br><br>(Oral Argument Requested) |

**MEMORANDUM OF LAW IN SUPPORT**

**I. Dr. Muehrcke's testimony is proper, reliable, and admissible based on FRE 702 and under *Daubert*.**

The United States Supreme Court has distinguished between expert testimony based on scientific foundations and expert testimony based on personal knowledge or experience. *Victorino v. FCA US LLC*, 2018 WL 2551192, *4 (S.D. Cal. June 4, 2018) (*citing Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 150 (1999) and *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) ("The *Daubert* factors, peer review, publication, potential error rate, etc.,  simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory

behind it.")). As such, an expert's experience, training, and education can provide a sufficient foundation for reliability. *Victorino,* 2018 WL 2551192, at *4 (*citing Hangarter v. Provident Life and Accidental Ins*. Co., 373 F.3d 998, 1018 (9th Cir. 2004)).

    Dr. Muehrcke's opinion regarding why he does not use Bard filters is neither new nor controversial. It satisfies FRE 702 and the *Daubert* standard and is supported with specific reasons based on experience, training, and data. Moreover, Dr. Muehrcke's testimony at the *Jones* trial[1] is consistent with his deposition testimony,[2] so if Defendants considered it "inadmissible" under FRE 702, it had an opportunity to challenge it in a *Daubert* motion.

    Defendants' citation to *Ollier* is not persuasive for the same reasons the *Victorino* court distinguished it. *Victorino*, 2018 WL 2551192, at *4 (*citing Ollier v. Sweetwater Union High

---

[1] "Q. Do you currently use Bard filters? A. I do not use Bard filters. Q. Why not? A. I do not use Bard filters after I had an opportunity to see the internal documents that Bard had showing that there have been problems with their filters over a long period of time. Those problems were not relayed to physicians in their marketing material or through their representatives so that we could talk to our patients and give them an honest estimate of what their risk factors were when they had these filters placed. I personally felt betrayed by that. I was a loyal user of Bard at the time. . . .And when I had an opportunity to kind of see the internal documents and see that there were problems known for a long time, and that when these problems were dealt with, they were never studied in humans. They were just sold. They were put back into humans to see how they did without any real testing with them. I have a moral and ethical issue with that." Ex. A, *Jones v. CR Bard, et al.*, Tr. Trans. 05/18/18 at 759:23-760:17.

[2] The Pre-Trial Orders in *Jones* and *Hyde* state, "Dr. Muehrcke will testify consistent with his depositions and expert report in this case." In 2016, he testified: Q. Anything misleading if you're going to have an opinion on anything that was misleading? A. I, as an implanter, was never told about these complications. When asked about why are there so many iterations of this Bard IVC filter, it's because it would improve centering; it would improve the ability to retrieve it in somebody. We were never told about Bard internal documents and their concern. They did a health hazard analysis or any crisis meetings to figure out this device, and we were never told about that. Q. And that was back in 2004, the one that you're talking about? … A. -- but they've also made other iterations to the device and were not honest with us why those changes were made-- why the anchoring was put on the ECLIPSE®. You know, why and the MERIDIAN®, rather, and why they went to the DENALI®. Q. Well, haven't sales brochures and salespeople explained to you, oh, the MERIDIAN® has this new feature and it's supposed to do that, haven't they? A. The G2® -- the G2® brochure says improved centering, less migration, less perforation – that's not true based on Bard's internal data. Ex. B, Muehrcke Dep. 07/02/16 at 99:12-100:21. In 2017, Dr. Muehrcke testified: "Q. So you did not quit using BARD filters because of complications with the Denali; correct? A. …I've lost my trust in the filter. I felt that the other filters, which BARD had out there, of similar design, minor modifications, the Denali may be a better filter, but it's got to – it's almost got to prove that themselves. I'm not going to put them in. So predicated on the other BARD filters I'm not going to -- I'm not going to start putting those things in a bunch of patients... Ex. C, Muehrcke Dep. 07/24/17 at 26:25-27:25.

*Sch. Dist.*, 768 F.3d 843 (9th Cir. 2014). In *Ollier,* the Ninth Circuit found the proposed testimony of expert school administrators was unreliable because the inspections were "cursory" and "superficial," and one expert admitted that the opinions were "speculative." *Id.* at 861. In contrast to *Ollier* and consistent with *Victorino*, Dr. Muehrcke's methodology has neither been questioned nor his experiences and observations considered speculative. Like the expert in *Victorino*, Dr. Muehrcke has specific personal experience implanting and removing every iteration of Bard IVC filters from Recovery to Denali, and variety of competitor filters, and implants and removes approximately 20 and 25 filters per year respectively. Due to his increased awareness of Bard filter injuries, he conducted an analysis of retrievable filters by following all hospital patients implanted with a retrievable filter since 2004, including his own, his partners (seven heart and five vascular surgeons), and interventional radiologists at Flagler Hospital. His opinion is therefore reliable.[3]

Defendants argue "because it is not proper expert testimony," the probative value is substantially outweighed by the prejudicial effect. It is clear, however, that Dr. Muehrcke's reason for no longer using Bard filters meets FRE 702 and the *Daubert* standard. Since his opinion is reliable and admissible, the alleged prejudicial effect is diminished, and exclusion of this testimony is not warranted. Further, Plaintiffs will be prejudiced without it as Dr. Muehrcke's reason for not using Bard filters supports Plaintiffs' design defect claim. He has first-hand experience with Bard filters and is highly qualified to provide opinions about inherent failure modes; which confirms his reliable methodology and sound basis for his opinions and the reason he does not use Bard filters in his own practice. Moreover, the testimony is responsive to questions from defense counsel regarding his use of Bard filters and refutes testimony from Bard's experts who claim to have good experiences with Bard filters. When methodology is sound and reliable, admissible evidence is to be attacked by cross examination, contrary evidence, or the burden of proof, not exclusion. FRE 702; *In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892, 931 (N.D. Cal. 2017).

---

[3] *See* Ex. D, Muehrcke Rep. at 2; "[The expert's] in-person inspection was not merely visual. [The expert] has specific personal experience with the design and operation of the Class Vehicles and has been involved with analyzing hydraulic components. He conducted an in-person inspection of Victorino's vehicle twice..." *Victorino,* 2018 WL 2551192, at *4.

**II. Dr. Muehrcke's testimony is relevant to and probative of both design defect claims.**

Bard's contention that this testimony is relevant only to failure-to-warn claims ignores the elements of design defect under Wisconsin law.[4] The Wisconsin strict liability statute requires proof that the alleged defect "rendered the product unreasonably dangerous to persons or property." Wis. Stat. Ann. § 895.047.[5] To the extent Defendants dispute this element, Dr. Muehrcke's testimony, developed after studying Bard's filter performance at his institution and reviewing Bard's design and performance data, that he no longer uses Bard filters, is probative of the inherently and unreasonably dangerous design of Bard filters which are responsible for injurious failure modes. Fn. 2, *supra*. Dr. Muehrcke's opinion that he felt betrayed and had moral and ethical issues with Bard's conduct is also relevant to Plaintiffs' punitive damages claim because it is probative of Bard's awareness of filter hazards and the failure to take proper remedial measures. *Sharp v. Case Corp.*, 227 Wis. 2d 1, 23, 595 N.W.2d 380, 390 (1999) ("In a products liability case, a manufacturer may be found to have acted in reckless disregard if, after having gained specific knowledge of a product's defect and its potential harm, the manufacturer fails to take some action that the defect demands, such as adequate testing procedures, effective quality control, sufficient warnings or adequate remedial procedures such as product recalls or post-sale warnings"). "If the evidence relied upon sufficiently relates to the case at hand, disputes about the degree of relevance or accuracy above this minimum threshold may go to the testimony's weight, but not its admissibility." FRE 702; *In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d at 931.

---

[4] Bard also states Dr. Muehrcke's opinion is inflammatory without any explanation or argument for Plaintiffs to oppose.

[5] Negligent design defect claims overlap to a degree and require similar proof. *Kilty v. Weyerhaeuser Co.,* 16-CV-515-WMC, 2018 WL 2464470, at *3–4 (W.D. Wis. June 1, 2018)

3

RESPECTFULLY SUBMITTED this 23rd day of August 2018.

                            GALLAGHER & KENNEDY, P.A.

                            By: */s/ Mark S. O'Connor*
                                  Mark S. O'Connor
                                  2575 East Camelback Road
                                  Phoenix, Arizona  85016-9225

                          LOPEZ McHUGH LLP
                            Ramon Rossi Lopez (CA Bar No. 86361)
                            (admitted *pro hac vice*)
                            100 Bayview Circle, Suite 5600
                            Newport Beach, California 92660

                          *Co-Lead/Liaison Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of August 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

                                    */s/ Jessica Gallentine*