# Exhibit A

```
                   UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF ARIZONA

                       _____

In Re: Bard IVC Filters          ) MD-15-02641-PHX-DGC
Products Liability Litigation    )
                                 ) Phoenix, Arizona
                                 ) March 2, 2018
_____)




        BEFORE:  THE HONORABLE DAVID G. CAMPBELL, JUDGE

              REPORTER'S TRANSCRIPT OF PROCEEDINGS

                   FINAL PRETRIAL CONFERENCE




Official Court Reporter:
Patricia Lyons, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Ste. 312
401 West Washington Street, SPC 41
Phoenix, Arizona  85003-2150
(602) 322-7257

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared with Computer-Aided Transcription
```

Page 33

1  you can't present that evidence because the plaintiffs can't
2  rebut it as fully as they would like to.
3           MR. LOPEZ:  Okay, Judge, I'm going to focus on one.
4  You asked me what it is I want you -- that I think is unfair,
5  and the kind of evidence that I think is irrelevant.
6           So what if they reported it all.  Let's assume they
7  perfectly reported every one of their adverse events.  And
8  when the FDA came in in 2015, they said, By the way, you've
9  done a great job, you accurately reported every adverse event
10 that ever happened, you categorized it right, you didn't hide
11 anything, and you sent it all to FDA.  So what?  What's the
12 relevance of that?
13          THE COURT:  Isn't that directly relevant to your
14 allegation that they acted negligently and that they acted
15 with bad intent and evil mind?
16          MR. LOPEZ:  No.  How can it be?  The evidence is
17 going to be that they put -- everything that they were
18 required to submit all the deaths for the Recovery filter, all
19 the caudal migrations for G2 filter, they all got sent to FDA.
20 And FDA -- what they're going to imply, I've heard it before,
21 FDA had all this.  FDA trends.  FDA pays close attention to
22 this kind of stuff.  We follow FDA's direction with everything
23 we did.
24          I mean, I don't -- I have no evidence to dispute
25 that.

Page 34

```
 1            THE COURT:  Well, but see, you're sort of shifting
 2   between on one hand saying it's not relevant, and on the other
 3   hand saying you can't dispute it.
 4            MR. LOPEZ:  Well, that just means there's two reasons
 5   not to let that in.
 6            THE COURT:  But I have great difficulty with the
 7   notion that -- what they will clarify -- characterize as their
 8   careful compliance with the legal requirements of getting
 9   approval is evidence that they didn't act negligently and
10   evidence that they didn't act with bad faith, intent, and
11   malice.  I think that is directly relevant to that.
12            Now, you might disagree with me, but that's why I
13   denied your Cisson motion.
14            The other side of that, that you can come back to
15   again, that I'm trying to wrestle with, is this notion that
16   they shouldn't be allowed to make those arguments because
17   you're not able to rebut it effectively because you couldn't
18   get discovery from the FDA.
19            MR. LOPEZ:  Right, that's one of the arguments.
20            THE COURT:  Well, it seems to me there's two
21   arguments.  That's one of them.  And the other argument you've
22   made is that this silence by the FDA is hearsay.
23            MR. LOPEZ:  That's one -- that's --
24            THE COURT:  And they can't present evidence of it
25   because it violates the hearsay rules.
```

Page 35

```
 1              MR. LOPEZ:  That's one of them.
 2              THE COURT:  Is there more?
 3              MR. LOPEZ:  Well, the more is the -- how misleading
 4   and unfair it is -- Judge, we're not -- we don't have time to
 5   do this.  We could do this if we had more time.  We could show
 6   all the times they misreported, didn't report,
 7   mischaracterized.  We probably don't have time to do that in
 8   this case.
 9              The fact that they reported all of these adverse
10   events to FDA is a gigantic "so what" in this case, because
11   it's not what they told FDA about those things -- first of
12   all, we don't even know who they mean at FDA.  For all we
13   know, these things get sent to FDA, we don't know, and it
14   goes to some process, data entry person, and it gets shipped
15   off to the MAUDE database, and not one person at FDA looks at
16   any of those and analyzes them.  There's no evidence that
17   that happened in this case, that the FDA gathered up
18   committees and grabbed all these adverse events and said,
19   Let's look at this and see if this company is selling an
20   adulterated or misbranded product, or whether or not we
21   should send them a letter that says you should consider
22   redesigning this or taking it off the market.
23              So the issue in this case is not what they may have
24   reported about the postmarket performance of their device to
25   FDA; it's what did they tell the doctors?  What did they --
```

Page 36

1  what did they put out in the real world?  The people -- the
2  real folks that need to know about this, and whether or not
3  it was given a reasonable chance to get to the plaintiff,
4  Shari Booker.
5              I mean, even if we were to stipulate that everything
6  was appropriately reported and sent to FDA, I mean, okay.
7  But that doesn't mean they did their job with respect to
8  Dr. D'Ayala, her subsequent treating --
9              THE COURT:  It's a great jury argument.  That point.
10             I just can't see that -- it seems to me the three
11 arguments you've made, that I have not yet disagreed with,
12 the first one was the relevancy, that I don't agree with.
13 The other three are that this there is this imbalance in
14 discovery because you couldn't get FDA depositions and you
15 couldn't subpoena them; second, this notion that the FDA
16 silence is hearsay; and the third that I think you just made
17 is that you think the assertion is misleading when they claim
18 we sent everything to the FDA before --
19             MR. LOPEZ:  Right.  Because we don't know what
20 happens at the other end.
21             THE COURT:  Okay.  I understand those issues.
22             MR. LOPEZ:  Okay.  Just one more.
23             THE COURT:  All right.
24             MR. LOPEZ:  And, again, we'll try to squeeze the
25 real -- what we think is the real evidence in the case into a

1  very short period of time, and we're trying to do that.
2            Then one of the reasons there's -- these are
3  considered a mini trial, I mean, we have documents that show
4  the state of the FDA during this period of time was in a --
5  in that department there's a GAO report that says that the
6  FDA was incapable of dealing with adverse events and
7  premarket approvals, premarket clearances, and postmarket
8  surveillance.
9            I'm hoping the Court is going to allow to get in
10 that kind of evidence if, in fact, there's some innuendo,
11 there's some type of suggestion by the defendants that this
12 FDA -- that there's an FDA that sits there in wait for the
13 next MDR to be reported by Bard to see whether or not there's
14 a problem with the device.
15           Those are the kinds of things I'm concerned about,
16 Judge.  Is the jury being given a false impression that
17 somehow or other the FDA is diligently and vigilantly looking
18 at all of this data as it comes in, and the fact that they
19 just sat there and did nothing, in some instances for 12 or
20 13 years, means that the FDA must have blessed this thing.
21           THE COURT:  Okay.  I think I understand the points
22 you've made.
23           MR. LOPEZ:  Thank you, Your Honor.
24           THE COURT:  Defense counsel.
25           MR. NORTH:  Your Honor, respectfully, I would take

Page 38

1    issue with Mr. Lopez's claim that he cannot rebut the
2    evidence.  There is a written record taller than I am of
3    documentation sent to the FDA.  That's what my witnesses will
4    be testifying about.  It's all in the written record.  It was
5    submitted for -- as a part of the preemption motion.  The
6    communications are there.  It's not just some witness getting
7    on the stand and saying, I sent everything.  It is documented
8    completely.
9            He also has all of the tests we performed.  He has
10   10 million pages of tests and e-mails and references and
11   communications.  He's got all the evidence in the world.  If
12   he thinks we hid something from the FDA, he can ask --
13   cross-examine our witnesses, Here's the document, why didn't
14   you give that test to the FDA?  He's got all of the materials
15   he needs.
16           With regard to the FDA's inaction, we believe that
17   we are entitled just to say we gave the FDA this
18   information -- he can challenge that if he wants to -- and
19   the FDA never recalled the product.
20           First of all, as we cited in the pretrial order,
21   there is a Georgia case right on point, Browning versus
22   Paccar, that talks about with regard to a mass-produced
23   product that is under the auspices of an agency that has the
24   authority to recall that product.  The absence of a recall is
25   some evidence going into the risk utility reasonableness

Page 39

1  equation.
2         And for much the same reason, or same rationale that
3  I believe the Court articulated here in denying the
4  plaintiffs' motion in limine based on Cisson.  At bottom it
5  sounds to me like Mr. Lopez is asking this Court to
6  reconsider its ruling on his Motion in Limine Number 1, and
7  for the reasons that we argued in response to that motion and
8  for the reasons set forth in this Court's order, we would ask
9  the Court to adhere to that ruling.
10         I'm happy to ask -- to answer any questions that the
11 Court may have.
12         THE COURT:  Okay.  Thank you.
13         All right.  Well, here are my conclusions on this
14 issue, Counsel.  As I've already indicated, I believe that
15 evidence by the defendants that they sought to comply with
16 regulatory obligations is relevant.  I think it's relevant to
17 the negligence claim.  I think it's relevant to the punitive
18 damages claim.  May be relevant to other issues as well.  So
19 I'm not going to exclude it on relevancy grounds.
20         With respect to the argument from plaintiffs that it
21 is misleading because the plaintiffs don't believe that Bard
22 was as transparent and as forthcoming as it ought to be, I
23 think that is fair game for a jury trial, and that the
24 defendants can present evidence as to why they thought Bard
25 was not forthcoming.  In fact, that has been a lot of what

Page 40

1  this case has been about, at least in the portions I've seen
2  in the motions, and what wasn't told to the FDA, and that the
3  FDA wasn't a good reviewer of information in any event.
4        So I don't think there is a basis to exclude it as
5  misleading.  It's the defendants' side of the case.  The
6  plaintiffs think it is misleading and can seek to prove that
7  to the jury.  That is not a basis for excluding it.
8        As to the argument that the FDA's silence is
9  hearsay, I am not going to limit now any testimony from the
10 defense on that point, but the argument can be made at trial.
11 And the reason I'm not going to now is because I think the
12 cases are fairly narrow in saying that when a person in an
13 exchange intends silence to be an assertion, it is an
14 assertion by that person for purposes of the hearsay rule.  I
15 don't believe that the FDA views its inaction as an assertion
16 of anything.  And I don't think, therefore, that its inaction
17 is hearsay within the meaning of this rule.
18        Now, that could be different in a specific context.
19 And if there is a point where you believe, Mr. Lopez, or
20 plaintiffs' counsel do, that the silence that the defendants
21 are seeking to communicate to the jury was intended to be an
22 assertion by the declarant, namely the FDA or anybody else,
23 you can object.  And if I agree with you, it will be hearsay.
24 But that has to be the context in which it is hearsay, in my
25 judgment.

```
 1              The last argument that the defendants -- or the
 2    plaintiffs made was a more general argument that there is an
 3    imbalance here because Bard can talk about everything it
 4    shared with the FDA, and the plaintiffs are hobbled because
 5    they can't test that through discovery of the FDA in
 6    depositions or subpoenas.  I understand that issue.  We've
 7    talked about that before in that case.  It's been present all
 8    along.
 9              But it does appear to me that what has happened in
10    this case is that there has been considerable discovery done
11    on Bard's communications with the FDA.  Plaintiffs have been
12    thorough in deposing every witness who claims to have
13    communicated with the FDA, and obtaining every document that
14    was shared with the FDA, and identifying lots of evidence
15    that the plaintiffs was not shared with the FDA in doing FOIA
16    requests of the FDA and bringing forward experts who will
17    opine about what the FDA does and does not do.
18              Given that state of the record, I cannot conclude
19    that there is such an imbalance of available information in
20    this case that I should foreclose the defendants from making
21    their FDA defense for all of the reasons I stated in ruling
22    on the Cisson motion.
23              So at this point I'm not going to foreclose any of
24    that.  But I will rule on objections.  As we're going through
25    the trial, if you think I'm missing the point, ask me for a
```

1  sidebar and we'll have a sidebar so I make sure I understand
2  the point before I rule on it.
3       While we're on that point, let me mention, during a
4  trial, your objections should not be speaking objections.
5  Stand up and say, you know, "Objection.  Hearsay."
6  "Objection.  Relevancy."  If I don't understand what you're
7  objecting to, I'll ask you for more clarification.  If you
8  don't think I understand, you can ask for a sidebar.  What I
9  don't want to do is end up having a debate with you in front
10 of the jury, which I think can lead to information being
11 shared with the jury that really should be kept at sidebar.
12      MR. LOPEZ:  I think that is bringing back memories
13 for both Mr. North and I when we tried our case in front of
14 Judge Jones.  We had one sidebar.
15      THE COURT:  One?
16      MR. LOPEZ:  One.  In fact, at the end of it, he goes,
17 Why are we at sidebar?
18      THE COURT:  Well, my son-in-law clerked for
19 Judge Jones, so I understand his point.
20      MR. LOPEZ:  And, Your Honor, just on that, before you
21 leave that, there was one thing Mr. North said and I don't --
22 I don't want to have to wait, but I think he gave an example
23 of the type of thing I think he probably shouldn't be able to
24 say, and that is, We gave it all -- the FDA took no actions to
25 recall this device.

```
 1              I mean, I don't think he should be able to say that.
 2   I mean, that's going to open up -- you're going to need to
 3   give me two or three more days to try this case if that's the
 4   kind of stuff that comes in.
 5              THE COURT:  Well, I know that's your view.  I'm not
 6   going to agree with you now.  And when we get there, if I
 7   think you're right in the context of trial, I'll sustain it.
 8              And incidentally, on the length of the trial, which
 9   has been alluded to a couple times here, I do want to remind
10   everybody that we agreed these were three-week trials to
11   begin with.  I am absolutely confident you can use every
12   minute of a six-month trial if we let you do it.  I know you
13   could.  You could go on forever about this.
14              What I'm trying to keep in mind is we're going to
15   have nine citizens in this box who will try, through three
16   weeks of evidence, to keep track of everything, and I am
17   absolutely persuaded that a fourth, fifth, or sixth week
18   wouldn't make a difference in how this case come out.  You
19   know better than I do, there is only so much a jury can
20   absorb.  And if we run down every rabbit trail in this case,
21   we will waste time and we won't help get a fair result.
22              And on that point, I just have to say it, I know
23   you're protecting the record and your flexibility, but almost
24   8,000 exhibits?  I have never seen a trial where the outcome
25   turned on more than ten or 15 exhibits.  Maybe 20.  But you
```

```
                                                              Page 133
 1                         C E R T I F I C A T E

 2

 3            I, PATRICIA LYONS, do hereby certify that I am duly

 4    appointed and qualified to act as Official Court Reporter for

 5    the United States District Court for the District of Arizona.

 6

 7            I FURTHER CERTIFY that the foregoing pages constitute

 8    a full, true, and accurate transcript of all of that portion

 9    of the proceedings contained herein, had in the above-entitled

10    cause on the date specified therein, and that said transcript

11    was prepared under my direction and control, and to the best

12    of my ability.

13

14            DATED at Phoenix, Arizona, this 12th day of March,

15    2018.

16

17

18

19

20                                   s/ Patricia Lyons, RMR, CRR
                                     Official Court Reporter
21

22

23

24

25
```