# Exhibit B

Page 115

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| In re:  Bard IVC Filters,      )<br>Products Liability Litigation  )<br>                                )<br>                                )<br>                                ) MD-15-02641-PHX-DGC<br>_____  )<br>Sherr-Una Booker, an individual,)<br>                                ) Phoenix, Arizona<br>              Plaintiff,        ) March 14, 2018<br>        v.                      ) 1:06 p.m.<br>                                )<br>C.R. Bard, Inc., a New Jersey   )<br>corporation; and Bard Peripheral) CV-16-00474-PHX-DGC<br>Vascular, Inc., an Arizona      )<br>corporation,                    )<br>                                )<br>              Defendants.       )<br>_____  ) | |

BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY TRIAL - DAY 1 P.M.

(Pages 115 through 215)

Official Court Reporter:
Elaine Cropper, RDR, CRR, CCP
Sandra Day O'Connor U.S. Courthouse
401 West Washington Street
Suite 312, SPC 35
Phoenix, Arizona  85003-2150
(602) 322-7245

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

Page 138

```
 1   He'll come and testify live in this trial that Bard wanted to    01:44:27
 2   enter into a new area of technology, so this first permanent
 3   filter that was performing well, again, was not retrievable.
 4   And Bard wanted doctors and the medical community wanted, the
 5   evidence will show, a retrievable filter.                        01:44:44
 6           Looking at the Simon Nitinol filter on the bottom
 7   now, when they redesigned it and made the Recovery, Rob Carr
 8   was involved and the Recovery was in the works when they
 9   acquired this technology.  And in order to get it approved --
10   excuse me.  In order to get it cleared for market, they had to   01:45:13
11   show that it was substantially equivalent to the Simon Nitinol
12   filter.
13           Now, let's talk about that term for a moment,
14   substantially equivalent.  These filters are not FDA approved.
15   They are FDA cleared.  In order to get approval from the FDA,    01:45:29
16   it is a very rigorous process.  Bard did not go through that
17   process.  Bard went through the clearance process where,
18   instead of having to show independently that a device is safe
19   and effective, they went through a comparative process where
20   they had to show that they are as good as another filter on the  01:45:49
21   market.  They are substantially equivalent to another filter.
22           And that is how and that is why I lined these filters
23   up for you, starting with the Simon Nitinol filter.  There was
24   a clearance for the Recovery filter that was shown to be
25   substantially equivalent to the Simon Nitinol and then the G2    01:46:07
```

1  filter that Ms. Booker received, also known as the Recovery G2,   01:46:10
2  because it was another version of the Recovery filter also
3  known as the modified Recovery filter.  They build on each
4  other like building blocks.
5           Bard chose to use these devices and show substantial   01:46:25
6  equivalence.  It was in control of that choice and it chose the
7  products that it had to show substantial equivalence to.  It
8  chose its own products.  So going from the Simon Nitinol
9  filter, which was the permanent filter, the developments of the
10 Recovery filter was a new era for Bard.  And testimony in this   01:46:46
11 case will show that in order to develop a new medical device
12 product, you need to understand the environment in which it is
13 being used.
14          You'll hear from an engineer who will probably
15 testify this week.  In fact, experts are hired on both sides of   01:47:04
16 this matter.  Not surprisingly, they don't always agree.
17 You'll hear from an engineer that the very first step of
18 designing a medical device to put in the human body is to
19 understand where it goes, to understand the environment of use.
20          If you would look at your screens, I would like to      01:47:25
21 take you a little more up close and personal to the inferior
22 vena cava and the environment in which these filters are
23 placed.  There are the lungs surrounding the heart and the vena
24 cava is the large blue vein returning blood.  And if you look
25 at the proximity of the vena cava, which is the blue vein -- on 01:48:01

```
                                                          Page 144
 1   trial to determine safety and efficacy and that Recovery was    01:57:04
 2   not ready for market.
 3            Coincidentally, the testimony and evidence will also
 4   show that when Bard acquired this technology from the company
 5   that it bought it from, at that time that company had a         01:57:17
 6   long-term clinical trial planned to occur in Europe which never
 7   took place and not before Sheri Booker received her filter.
 8            So let's talk about Bard's choices.  Considering all
 9   of that, why did they market it?  And the testimony and
10   evidence in this trial will show that they had an opportunity.  01:57:45
11   They had the opportunity to be first to market with the first
12   retrievable IVC filter in the form of the Recovery filter.
13   That middle filter I showed you on the first slide.  The first
14   product on the market holds the market share.
15            And recall these are not FDA approved.  These are FDA  01:58:11
16   cleared.  And you'll hear during the trial that the FDA
17   clearance process is an exemption to the approval process.
18   You'll also hear it referred to as the 510(k) process as His
19   Honor mentioned to you in the facts stipulated to at the
20   beginning of the trial.                                         01:58:35
21            The 510(k) clearance process, the number 510(k) is
22   the code section.  It's a regulatory number showing the code in
23   the regulations.  An analogy would be those that have access to
24   401(k)s, that is a tax code section.  510(k) is a regulatory
25   code section.                                                   01:58:54
```

```
                                                           Page 145
 1              So 510(k) is the regulation that allows medical     01:58:56
 2    devices to be cleared to market, not approved, based on a
 3    comparison to another device on the market, like I said
 4    earlier; and Bard chose this path of clearance, not approval,
 5    by comparing its products to its own products in order to get  01:59:10
 6    them cleared.  It's an honor system.  FDA does not test.  FDA
 7    does not have hospitals to test in.  FDA does not verify the
 8    data that the manufacturer provides.
 9              Expert testimony in this case will tell you that you
10    must -- a manufacturer must assure the FDA that any device    01:59:34
11    submitted under this 510(k) route, because it's an exception,
12    is comparatively as safe and effective.  It has to be compared
13    to another device, not independent safety and efficacy, but a
14    comparison is it as safe and effective.
15              When Bard submitted its 510(k) submissions for its  02:00:07
16    retrievable filter and the G2 after it, there was a quote.
17    They had to assure the FDA that the data and information
18    submitted in the premarket notification are truthful and
19    accurate and that no facts material for review of the
20    substantial equivalence of this device have been knowingly    02:00:25
21    omitted from this submission.  And that's because it's an honor
22    system.  Again, the FDA does not test.
23              So let's go back through the regulatory history
24    before we move on.  The Bard had a permanent filter, the Simon
25    Nitinol.  It wanted to enter the retrievable IVC filter market. 02:00:52
```

Page 146

```
 1   They went through the 510(k) process and showed the FDA that      02:00:57
 2   the Recovery filter was substantially equivalent to its
 3   permanent Simon Nitinol filter.  After that, after reports of
 4   adverse events, they redesigned the Recovery filter with a new
 5   Recovery filter also called the G2.                               02:01:16
 6            The G2 was initially cleared with the FDA as a
 7   permanent device, as was the Recovery, and later given the
 8   ability by the FDA to retrieve it.  But the claim here is it
 9   was substantially equivalent initially to the SNF.
10            I think the evidence will show that it was not.  The    02:01:36
11   depiction I have up on the screen right now is the information
12   that Bard had internal about its testing.  It tested the
13   migration resistance, again, the ability for a filter in this
14   environment to resist migrating out of place, to resist
15   movement, and they had data that the Simon Nitinol filter could  02:01:56
16   resist migration at 80 millimeters of mercury.  That's a
17   pressure measurement.  80.  Their data showed that the Recovery
18   filter could only resist migration at 50.
19            The standard that they set internally was their own.
20   What they reported to the FDA is that it was substantially       02:02:18
21   equivalent with setting a standard of 50 millimeters of
22   mercury, knowing that what they were comparing it to could
23   resist as high as 80.  That means the Recovery filter could
24   move more easily.  And the evidence will show that Bard knew
25   that but they did not provide the raw data to the FDA.  Their    02:02:37
```

Page 215

```
 1                    C E R T I F I C A T E                        04:34:28
 2
 3            I, ELAINE M. CROPPER, do hereby certify that I am
 4    duly appointed and qualified to act as Official Court Reporter
 5    for the United States District Court for the District of      04:34:28
 6    Arizona.
 7
 8            I FURTHER CERTIFY that the foregoing pages constitute
 9    a full, true, and accurate transcript of all of that portion of
10    the proceedings contained herein, had in the above-entitled   04:34:28
11    cause on the date specified therein, and that said transcript
12    was prepared under my direction and control, and to the best of
13    my ability.
14
15            DATED at Phoenix, Arizona, this 15th day of March,    04:34:28
16    2018.
17
18
19
20                              s/Elaine M. Cropper                 04:34:28
21                         _____
                             Elaine M. Cropper, RDR, CRR, CCP
22
23
24
25                                                                  04:34:28
```