# Exhibit B

**Expert Report**

Lisa Hyde v. CR Bard Inc.

Darren R. Hurst, M. D.
Director Vascular and Interventional Radiology
Department of Radiology
St. Elizabeth Health System
1 Medical Village Drive
Edgewood, KY 41017

pg. 1

i. 6/25/14 – Ms. Hyde saw Dr. Shehane where she again complained of chest pain and the results of the echocardiogram (were discussed) confirmed the location of the strut in the right ventricle of the heart.

j. 8/25/14 – Ms. Hyde travels to Stanford Health Care for removal of her filter and filter fragment. She is seen by William Kuo, M. D. in the interventional radiology department. After clinical evaluation, she is scheduled for IVC filter removal and right ventricular foreign body removal.

k. 8/26/14 – Under general anesthesia, Ms. Hyde has a complex filter removal procedure and removal of the fractured leg from the right ventricle. She is subsequently discharged without further issues.

4. **Opinions:**

   a. Summary:

      i. Lisa Hyde was implanted with a Bard G2x® IVC filter on 2/25/11. As discussed above, the placement was consistent with the standard of care and was indicated by the applicable Bard G2x IFU.

      ii. The filter subsequently caudally migrated within the inferior vena cava. This migration, and the penetration of multiple arms and legs of the filter, ultimately led to fracture of a stabilizing arm. The fractured arm embolized to the right ventricle of the heart. This caused intermittent symptoms of chest pain, pleurisy, and a fluttering feeling in the patient's chest. The fractured fragment was unstable and given its location (right ventricle) further migration would likely have caused significant morbidity or even death.

   b. Reasonable Expectations of Physicians for Medical Devices:

      i. In the everyday practice of medicine, I along with my colleagues/implanting and treating physicians have expectations of medical device companies like C.R. Bard, Inc. and Bard Peripheral Vascular (referred to collectively in this report as "Bard") when they design, manufacture, market, and sell medical devices. Fulfilling these expectations in their design, testing, manufacturing, warning, and marketing of IVC Filters allows physicians to properly and completely obtain informed consent from their patients. Fulfillment of these expectations also allows physicians to select the appropriate IVC filter and make appropriate therapeutic decisions on behalf of their patients whether an IVC filter is indicated or considered as a therapeutic option, and whether to use or not use a particular type of IVC filter.

      ii. Moreover, a patient has reasonable expectations on what he/she should know in the same or similar circumstances as a reasonable patient who has been prescribed or has considered having an IVC filter implanted.