1
2
3
4
5
6
7                     **IN THE UNITED STATES DISTRICT COURT**

8                       **FOR THE DISTRICT OF ARIZONA**

9   | IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC |

10

11  | This Document Relates to: | **PROPOSED FINAL PRETRIAL ORDER** |

12  | Lisa Hyde, et al. v. C. R. Bard, Inc., et al. CV-16-00893-PHX-DGC | (Assigned to the Honorable David G. Campbell) |

13

14

15          The following is the joint Proposed Final Pretrial Order to be considered at the

16  Final Pretrial Conference set for September 6, 2018.

17  **A.     TRIAL COUNSEL FOR THE PARTIES**

18          Include  mailing  addresses,  office  phone  numbers,  fax  numbers,  and  e-mail

19  addresses.

20          Plaintiffs:

21          Ramon Rossi Lopez
            (admitted *pro hac vice*)
22          Josh Mankoff
            (admitted *pro hac vice*)
23          LOPEZ MCHUGH LLP
24          100 Bayview Circle, Suite 5600
            Newport Beach, CA 92660
25          Telephone: (949) 812-5771
            Fax: (949) 737-1504
26          rlopez@lopezmchugh.com
27
28

Mark S. O'Connor (#011029)
Paul L. Stoller (#016773)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone: (602) 530-8000
Fax: (602) 530-8500
mark.oconnor@gknet.com

Julia Reed Zaic
(admitted *pro hac vice*)
Laura Smith
(admitted *pro hac vice*)
HEAVISIDE REED ZAIC
312 Broadway, Suite 203
Laguna Beach, California 92660
Telephone: (949) 715-5228
julia@hrzlaw.com
laura@hrzlaw.com

Stuart Goldenberg
(admitted *pro hac vice*)
Marlene Goldenberg
(admitted *pro hac vice*)
GOLDENBERGLAW
800 Lasalle Ave. #2150
Minneapolis, MN 55402
Telephone: (612) 333-4662
slgoldenberg@goldenberglaw.com
mjgoldenberg@goldenberglaw.com

Defendants:

James R. Condo (#005867)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
Fax: (602) 382.6070
jcondo@swlaw.com

//

//

//

2

James F. Rogers
(admitted *pro hac vice*)
South Carolina  Bar No. 12942
NELSON MULLINS RILEY & SCARBOROUGH LLP
The Meridian Building
17th Floor, Main Street
Columbia, SC 29201
Telephone: (803) 799-2000
Fax: (803) 256-7500
jim.rogers@nelsonmullins.com

Richard B. North, Jr.
(admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner
(admitted *pro hac vice*)
Georgia Bar No. 446986
Elizabeth C. Helm
(admitted *pro hac vice*)
Georgia Bar No. 289930
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Fax: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com
kate.helm@nelsonmullins.com

**B.**     **STATEMENT OF JURISDICTION**

1.     Jurisdiction is appropriate in this Court as the parties to this action are citizens of different states and Plaintiffs allege that they have suffered damages in an amount exceeding the minimum jurisdictional limits of this Court, 28 U.S.C. § 1332.

Plaintiffs are citizens of the state of Nevada. Defendant C. R. Bard, Inc. ("Bard") is a citizen of the state of Delaware and is a corporation duly organized and existing under the laws of the state of Delaware, with its principal place in New Jersey. Defendant Bard Peripheral Vascular, Inc. ("BPV") is a citizen of the state of Arizona, is a wholly owned subsidiary corporation of defendant Bard, and is duly organized and existing under the laws of the state of Arizona with its principal place of business in Arizona.

2.     Jurisdiction is not disputed.

**C.     STIPULATIONS AND UNCONTESTED FACTS AND LAW**

1.      The following material facts are admitted by the parties and require no proof:

a.      The Defendants in this case are C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. ("BPV"). BPV is the wholly-owned subsidiary of C. R. Bard, Inc., the parent company. Throughout this case, including in this pretrial order, the jury instructions and the verdict form, C. R. Bard, Inc. and BPV will be referred to collectively as "Bard" or "Defendants."

b.      The product that is the subject of this lawsuit is a retrievable Bard IVC Filter[1] ("Filter") that was designed, manufactured, marketed and sold by Bard;

c.      The Filter is conical in shape and consists of a main shaft to which twelve struts (six "arms" and six "legs") are attached;

d.      The Filter is constructed of a nickel-titanium alloy called Nitinol;

e.      The Filter is a medical device that is implanted in the inferior vena cava ("IVC"), the largest vein in the human body;

f.      The United States Food and Drug Administration ("FDA") cleared the Filter for commercial availability through the 510(k) process outlined in the Food, Drug and Cosmetic Act ("FCDA");

g.      The G2X® IVC Filter was cleared for commercial availability in the United States for use in patients as a permanent filter with the option for retrieval on October 31, 2008;

h.      The Eclipse IVC Filter was cleared for commercial availability in the United States for use in patients as a permanent filter with the option for retrieval on November 23, 2009;

---

[1] Plaintiffs and Defendants dispute the specific identity of the filter. Plaintiffs contend the filter implanted in Mrs. Hyde was a G2X Filter, Defendants contend the filter was an Eclipse.

4

    i.    Plaintiff Lisa Hyde was under the care of Dr. Vinodkumar Shah, M.D. who referred Mrs. Hyde to Dr. David Henry, an interventional radiologist, to consult with Mrs. Hyde regarding possible IVC filter.

    j.    On February 25, 2011, Dr. David Henry implanted the Filter in Mrs. Hyde's inferior vena cava;

    k.    On May 6, 2014, Mrs. Hyde underwent a CT scan revealing her IVC Filter had fractured, with the fractured strut having migrated to her right ventricle.

    l.    On August 26, 2014, Dr. William Kuo removed the Filter and fractured strut through a percutaneous procedure.

2.    The following material facts, although not admitted, will not be contested at trial by evidence to the contrary:

Plaintiffs are not seeking to recover past or future lost wages as part of their damages.

3.    The following issues of law are uncontested and stipulated to by the parties:

    a.    Plaintiffs' claims and Bard's defenses are governed by Wisconsin substantive law.

    b.    The law enumerated in any jury instructions stipulated to by the Parties.

    c.    The parties stipulate and agree that they are prohibited from making any reference or argument, or attempting to elicit any evidence in front of the jury suggesting and/or concerning the following topics, unless the issue is first raised with the Court outside the presence of the jury:

        1.    Plaintiffs' receipt of compensation for her medical bills and expenses (collateral source);

        2.    Mrs. Hyde's use of alcohol;

        3.    Mrs. Hyde's smoking;

4.      Mr. and Mrs. Hyde's prior bankruptcy;

5.      Expert opinion testimony by Mr. or Mrs. Hyde regarding her medical care and treatment;

6.      Other lawsuits or claims against Defendants. Pursuant to the Court's instruction in the Jones trial, the names of other cases will not be used, and both deposition and trial testimony will be referred to as "prior testimony." The parties also agree not to refer to the number of times a witness has been deposed.

7.      C. R. Bard's 1994 criminal conviction.

8.      When addressing the FDA clearance of the G2 IVC filter, the parties may state that the FDA cleared the G2 IVC filter two times and additionally the FDA also cleared changes to the delivery system for the G2 IVC filter two times.

D.      **CONTESTED ISSUES OF FACT AND LAW**

1.      **Disputed issues of fact**:

a.      **Design Defect:** Whether the filter implanted in Plaintiff Lisa Hyde had a Design Defect.

Plaintiffs' Contention: Mrs. Hyde contends that the IVC filter she received was a G2X filter. Mrs. Hyde contends that the Filter she received was defective in design, in a condition not contemplated by the ordinary user or consumer which is unreasonably dangerous to the ordinary user or consumer. Mrs. Hyde further contends that the Filter implanted in her IVC caudally migrated and tilted after it was properly implanted; that the Filter struts perforated through her vena cava and then penetrated into her retroperitoneum; that 1 of the fractured struts of the Filter fractured, and embolized/migrated to the right ventricle of the heart requiring interventional surgery. Lastly, foreseeable risks of harm posed by the Filter's design could have

been reduced or avoided by the adoption of a reasonable alternative design by the manufacturer and the omission of such alternative design rendered the product not reasonably safe. Plaintiffs are filing a separate Trial Brief that will include this issue.

Defense Contention: Defendants contend that the Plaintiffs' design defect claim is governed by Wis. Stat. 895.047(1). Defendants deny that there is evidence that the requirements of the statute: 1) the foreseeable risks of harm posed by the design of the filter implanted in Mrs. Hyde could have been reduced or avoided by the adoption of a reasonable alternative design by Bard; 2) the omission of the alternative design rendered the filter not reasonably safe and; 3) the filter implanted in Mrs. Hyde was unreasonably dangerous. Defendants have filed a separate Trial Brief on this issue. (Dkt. 12358).

b.  **Design Defect - Proximate Cause:** Whether a design defect of the Filter was the proximate cause of Plaintiffs' injuries and damages.

Plaintiffs' Contention: Mrs. Hyde contends that the defective design of her Bard Filter caused or contributed to cause her injuries.

Defendants' Contention: Defendants deny that any alleged design defect in the filter caused or contributed to Mrs. Hyde's injuries.

c.  **Negligent Design** – Whether Bard was negligent in the design of the Filter.

Plaintiffs' Contention: Mrs. Hyde contends that Bard failed to use that degree of care which is used by ordinary careful persons under the same or similar circumstances in the design and/or testing of the Filter that was implanted in her. Mrs. Hyde further contends that the Filter implanted in her migrated and tilted after it was properly implanted in her vena cava; that the Filter struts perforated through

her vena cava and then penetrated into her retroperitoneum; that 1 of the struts of the Filter fractured and embolized/migrated to the right ventricle of the heart requiring interventional surgery; and that Defendants' negligence/lack of ordinary care in the design of its Filter, and negligence/lack of ordinary care in testing its Filter caused her injury and damage. Defendants' lack of proper testing of the filter is evidence of their failure to act reasonably and use the proper degree of care, as well as their breach of the duty of care. Plaintiffs are filing a separate Trial Brief that will include this issue.

Defendants' Contention: Defendants deny they were negligent in the design of the filter. Defendants have filed a separate Trial Brief on this issue. (Dkt. 12358).

d. **Negligent Design Causation:** Whether a design defect of the Filter was the proximate cause of Plaintiffs' injuries and damages.

Plaintiffs' Contention: Mrs. Hyde contends that Bard's negligence caused or contributed to cause her injuries and damages.

Defendants' Contention: Bard denies that any alleged design defect in the filter caused or contributed to Ms. Hyde's injuries.

e. **Negligence *per se*:** Whether Defendants violated a safety statute which was designed to prevent injuries to patients like Plaintiff Lisa Hyde.

Plaintiffs' Contention: Mrs. Hyde contends that Bard's negligence *per se* caused or contributed to cause her injuries and damages. Mrs. Hyde contends that Bard's actions violated the following regulations and statutes:

21 U.S.C. § 331

21 U.S.C. § 352

21 C.F.R. § 803

1    21 C.F.R. § 806

2    21 C.F.R. § 820.250

3    21 U.S.C. § 321

4    21 C.F.R. § 820.100

5    21 C.F.R. § 820.198

6    In response to Defendants' contentions below, Bard is
7    incorrect that *Buckman* preempts Plaintiffs' negligence *per*
8    *se* claims. Defendant cites *Buckman* and *Perez, infra,* however
9    those cases are distinguishable because the present claims are based
10   upon Wisconsin common law negligence, not solely on the FDCA
11   regulations. To support their claims of negligence *per se*, Plaintiffs
12   will establish that Defendant negligently failed to design IVC filters
13   in a manner that complied with the previously cited regulations.
14   Plaintiffs are not attempting to enforce federal regulations, rather
15   they are relying on them to establish the standard of care in the
16   negligence claim.

17   This distinguishing of *Buckman* and the doctrine of implied
18   preemption to allow a negligence *per se* claim in Wisconsin was
19   explained well in *Garross v Medtronic, Inc*. 77 F. Supp. 3d 809
20   (E.D. Wis. 2015) and *Marvin v Zydus Pharmaceuticals. (USA), Inc.*
21   203 F. Supp. 3d 985 (W.D. Wis. 2016). In *Garross* the Court stated:

22   Nor are plaintiff's claims impliedly preempted. This is so
23   because none of them arise solely from a violation of federal law;
24   rather, each arises from an independent, well-recognized duty owed
25   under state law. *See Buckman,* 531 U.S. at 353, 121 S. Ct. 1012
26   (distinguishing between claims arising "from the manufacturer's
27   alleged failure to use reasonable care" and claims arising "solely"
28   from a violation of a federal requirement); *Bausch,* 630 F.3d at 558

9

(holding that claims which allege a "breach of a well-recognized duty owed to [plaintiff] under state law" are not impliedly preempted) *Id*. at 816.

*Garross,* 77 F. Supp.3d at 816. Wisconsin Federal Courts have found that violations of FDA regulations may constitute negligence *per se* since they are safety statutes. *See Lukaszewicz v. Ortho Pharm. Corp.,* 510 F. Supp. 961, 964 (E.D. Wis. 1981), *amended,* 532 F. Supp. 211 (E.D. Wis. 1981).

The Wisconsin Supreme Court has also explained:

> [A] safety statute merely establishes a minimum standard of care and the conduct, even though sanctioned or in conformity with the statute, is not thereby necessarily relieved of conforming to the common-law requirements of ordinary care. In any event the establishment of a statutory definition of negligence per se does not thereby result in a preemption of the entire negligence question. There remains the question of possible common-law negligence.

*Hoffmann v. Wisconsin Elec. Power Co.,* 262 Wis. 2d 264, 278 (Wis. 2003) (citations omitted). Moreover, a "statute does not change the common law unless the legislative purpose to do so is clearly expressed in the language of the statute." *Hoffman,* 262 Wis.2d at 278; *see also Fuchsgruber v. Custom Accessories, Inc.,* 244 Wis. 2d 758 (Wis. 2001) (stating to "accomplish a change in the common law, the language of the statute must be clear, unambiguous, and peremptory.") (citations omitted). Plaintiffs are filing a separate Trial Brief that will include this issue.

Defendants' Contention: Under Wisconsin law, "[f]or the violation of a safety statute to constitute negligence per se, a plaintiff must show: (1) the harm inflicted was the type the statute was designed to prevent; (2) the person injured was within the class of persons sought

to be protected; and (3) there is some expression of legislative intent that the statute become a basis for the imposition for civil liability." *Tatur v. Solsrud*, 498 N.W.2d 232 (Wis. 1993); 1009 Wis. JI-Civil. The Wisconsin Court of Appeals has held that, "[i]n Wisconsin, violations of FDA regulations may constitute negligence per se." *Kurer v. Parke, Davis & Co.*, 679 N.W.2d 867, 874 (Wis. Ct. App. 2004) (citing *Lukaszewicz v. Ortho Pharm. Corp.*, 510 F. Supp. 961, 964 (E.D. Wis.), *amended*, 532 F. Supp. 211 (E.D. Wis. 1981)). But such a claim is impliedly preempted under 21 U.S.C. § 337(a).

The District Court for the Western District of Wisconsin addressed this question twice. In its first opinion that predated *Kurer*, the court held that violations of FDA regulations cannot constitute negligence per se under Wisconsin law because, "[f]ar from containing an expression that FDA regulations are intended to form the basis for civil liability, the law expresses the opposite intent. Violations of the FDA are enforceable only by the United States." *Cali v. Danek Med., Inc.*, 24 F. Supp. 2d 941, 954 (W.D. Wis. 1998) (citing 21 U.S.C. § 337(a)). There is no private right of action to enforce the FDCA, therefore "it is apparent that the third [*Tatur*] element is . . . absent." *Id.*; *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) ("The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the medical device provisions.").

After the *Kurer* decision, however, the District Court revisited its *Cali* opinion, and ultimately held that "the plaintiffs may bring a claim of negligence per se under Wisconsin law based on an alleged

violation of [FDA] regulations." *Marvin v. Zydus Pharma.*, 203 F. Supp. 3d 985, 992 (W.D. Wis. 2016). Although the *Marvin* court noted that the issue was "a close call" because the *Kurer* decision failed to address whether § 337(a)'s limitation on private rights of action showed a legislative intent to impose civil liability under state law, the court ultimately acknowledged that "it is the current statement on the law in Wisconsin." *Id.*

As this Court is aware, however, "the plain language of § 337(a) and the *Buckman* decision indicate that, where the FDCA is concerned, such claim fails." (Dkt. 10404 at 17 (citation omitted)). This is a question of federal preemption, therefore the Court should "look primarily to Supreme Court and Ninth Circuit cases" over contrary Wisconsin authority. (Dkt. 8872 at 7). Plaintiffs assert no violation of a Wisconsin ordinance, regulation, or statute in support of their negligence per se claim. Thus, "as in *Buckman*, [Plaintiffs'] negligence per se claim (or, more appropriately characterized, [their] negligence claim based solely on violations of the FDA-Imposed Requirements or other FDA regulations) is impliedly preempted by the FDCA." Doc. 10404 at 16 (citations omitted); *see also Perez. v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (finding fraud on the FDA claim preempted where the plaintiff was not suing under state law for conduct that happens to violate the FDCA, but instead is suing solely "because the conduct violates the FDCA."). This Court agreed in both the *Booker* and *Jones* bellwether cases, and granted summary judgment on similar negligence per se claims "because allowing the claim[s] to go forward would authorize an impermissible action to enforce provisions of the FDCA and its implementing regulations." (Dkts. 8874 at 17; 10404 at 17).

12

f.   **Negligence *Per Se* Causation:** Whether Bard's alleged violation of cited regulations and statutes was the proximate cause of Plaintiffs' injuries and damages.

Plaintiffs' Contention: Mrs. Hyde contends that Bard's negligence *per se* caused or contributed to cause her injuries and damages.

Defendants' Contention: Bard denies that it violated any of the cited regulations and statutes and denies that any alleged violation caused or contributed to Ms. Hyde's injuries.

g.   **Compensatory Damages -** Whether Plaintiffs are entitled to damages and, if so, the amount of the damages.

Plaintiffs' Contention: Mrs. Hyde contend she sustained injuries and damages and is entitled to a damage award for the following: medical expenses, such as hospital, doctor, and medicine bills both in the past and in the future; mental and physical pain and suffering in the past, present and future; and, impairment of bodily or physical faculties in the past, present and future. Plaintiffs also seek loss of consortium damages for Mr. Hyde.

Defendants' Contention: Defendants contend that no doctor has specifically attributed any of the symptoms that Mrs. Hyde has allegedly experienced to the filter or fractured strut, and Plaintiffs are not entitled to recover compensatory damages.

Mr. Hyde's loss of consortium is an independent cause of action that constitutes a direct injury to the spouse of the injured party. *Kottka* v. *PPG Indus., Inc.*, 388 N.W.2d 160, 170 (Wis. 1986). However, a spouse's loss of consortium is derivative in the sense that it does not arise unless the other spouse has sustained an injury. *Blunt v. Medtronic, Inc.*, 760 N.W.2d 396, 404 n.12 (Wis. 2009). "As a result, the merits of the loss of consortium claim would be

13

1   considered by the jury only if they find Bard liable for one or both
2   the design defect claims.

3   h.   **Punitive Damages** - Whether Plaintiffs are entitled to an award of
4   punitive damages and, if so, the amount of the award.

5   Plaintiffs' Contention: Mrs. Hyde contends that there is
6   evidence that Bard acted maliciously towards Plaintiffs and/or in an
7   intentional disregard of the rights of the Plaintiffs. Bard acted with
8   the purpose to disregard the Plaintiffs' rights, or was aware that its
9   acts were substantially certain to result in the plaintiffs' rights being
10   disregarded. It acted deliberately, with actual disregard of the
11   plaintiffs' right to safety, health or life, and acted in a sufficiently
12   aggravated manner to warrant punishment by punitive damages
13   whether or not Bard intended to cause harm or injury to Mrs. Hyde.
14   The amount of punitive damages will be determined by the jury after
15   considering the seriousness of the hazard to the public, the
16   profitability of the misconduct, the attitude and conduct on the
17   discovery of  the misconduct, the degree of the manufacturer's
18   awareness of the hazard and of its excessiveness, the employees
19   involved in causing or concealing the misconduct, the duration of
20   both the improper behavior and its concealment, the financial
21   condition of Bard and the probably effect on the Bard of a particular
22   judgment, and the total punishment the manufacturer will probably
23   receive from other sources.

24   Punitive damages under Wisconsin law are governed by Wis.
25   Stat. § 895.043. Pursuant to section 3, a "plaintiff may receive
26   punitive damages if evidence is submitted showing that the defendant
27   acted maliciously toward the plaintiff or in an intentional disregard
28   for the rights of the plaintiff." Wis. Stat. § 895.043(3).

14

"[T]he purpose of punitive damages is to punish the wrongdoer, and to deter the wrongdoer and others from similar conduct, rather than to compensate the plaintiff for any loss…. [O]nly when an award can be fairly categorized as 'grossly excessive,' in relation to the [S]tate's interests in punishment and deterrence, does it enter the zone of arbitrariness that violates due process." *J.K. v. Peters*, 808 N.W.2d 141, 154 (Wis. Ct. App. 2011).

"In order to meet the 'intentional disregard' standard, the defendant's conduct must be (1) deliberate, (2) in actual disregard of the rights of another, and (3) 'sufficiently aggravated to warrant punishment by punitive damages.' *Centrifugal Acquisition Corp. v. Moon*, 849 F. Supp. 2d 814, 839 (E.D. Wis. 2012) (citing *Berner Cheese Corp. v. Krug,* 312 Wis.2d 251, 752 N.W.2d 800, 814 (2008)). A defendant's conduct giving rise to punitive damages need not be directed at the plaintiff seeking punitive damages. This burden does not require a plaintiff to show that defendant intended to cause harm or injury to the plaintiff. *Wosinski v. Advance Cast Stone Co.,* 901 N.W.2d 797, 820-21 (Wi. Ct. App. 2017) (citing *Strenke v. Hogner,* 694 N.W.2d 296 (Wis. 2005).).

"If the finder of fact concludes punitive damages are available and decides to award them, it then determines the amount of punitive damages by considering factors such as the grievousness of the defendant's acts, the degree of malice involved, the potential damage which might have been done by such acts as well as the actual damage, and the defendant's ability to pay." *Centrifugal Acquisition Corp. v. Moon*, 849 F. Supp. 2d 814, 839 (E.D. Wis. 2012) (quoting *Boelter v. Tschantz,* 779 N.W.2d 467, 474 (Wis. Ct. App. 2009)). A plaintiff who establishes a prima facie case for punitive damages may

introduce evidence of the defendant's wealth, and the "judge shall submit to the jury a special verdict as to punitive damages…." Wis. Stat. § 895.043(4). Other factors which may be considered include:

1. the seriousness of the hazard to the public;

2. the profitability of the misconduct;

3. the attitude and conduct on discovery of the misconduct;

4. the degree of the manufacturer's awareness of the hazard and of its excessiveness;

5. the employees involved in causing or concealing the misconduct;

6. the duration of both the improper behavior and its concealment;

7. the financial condition of the manufacturer and the probable effect on the manufacturer of a particular judgment; and

8. the total punishment the manufacturer will probably receive from other sources.

Defendants' Contention: Defendants deny that Plaintiffs are entitled to recover punitive damages. Punitive damages are not warranted because there is no evidence that Bard acted maliciously toward Mrs. Hyde or in an intentional disregard of her rights. Punitive damages are governed by statute, *see* W.S.A. 895.043, and they are imposed for the dual purposes of deterrence and punishment. *See Kimble v. Land Concepts, Inc.*, 845 N.W.2d 395, 406 (Wis. 2014). They may be awarded only when the jury finds by clear and convincing evidence that "the defendant acted maliciously toward the plaintiff or in an intentional disregard of the plaintiff's rights." W.S.A. 895.043(3). By enacting this statute, Wisconsin's Legislature changed the common law and heightened the state-of-mind

16

requirement of a defendant from a "wanton, willful and reckless" disregard for another's rights to an "intentional disregard" for another's rights. *Berner Cheese Corp. v. Krug*, 752 N.W.2d 800, 814 (Wis. 2008) (citations and quotations omitted). Indeed, according to the Wisconsin Supreme Court, by passing the punitive damages statute, "the legislature tried to make it harder for plaintiffs to recover punitive damages." *Strenke*, 694 N.W.2d at 303.

Malicious conduct under the statute means acts that "are the result of hatred, ill will, desire for revenge, or inflicted under circumstances where insult or injury is intended." *Id.* at 302 (internal quotation marks and citation omitted). Intentional disregard means a person "acts with the purpose to disregard the plaintiff's rights, or is aware that his or her acts are substantially certain to result in the plaintiff's rights being disregarded." *Id.* at 304. "[T]he act or conduct must actually disregard the rights of the plaintiff." *Id.* "Finally, the act or conduct must be sufficiently aggravated to warrant punishment by punitive damages." *Id.* at 304–05.

Punitive damages cannot be awarded if the alleged malicious or intentional disregard conduct did not cause the plaintiff's injury. "Juries are not given license to roam the caverns of their consciences to punish conduct they deem despicable unless a plaintiff can prove that he or she has suffered some actual damage as a result of the conduct." *Kehl v. Economy Fire & Cas. Co.*, 147 Wis. 2d 531, 534 (Wis. App. 1988). In other words, punitive damages may not be awarded based on conduct that did "not cause or contribute to the plaintiff's loss." *Henrikson*, 758 N.W.2d at 211.

The trial court must serve as a "gatekeeper[] before sending a question on punitive damages to the jury." *Strenke*, 694 N.W.2d at

17

305. "[A] question on punitive damages may not be given to the jury unless the trial court concludes that a reasonable jury could find from the evidence that entitlement to punitive damages has been proven by the middle burden of proof, clear and convincing evidence." *Id.* (internal quotation marks and citation omitted). Thus, "punitive damages are not recoverable if the wrongdoer's conduct is merely negligent." *Id.* "Only when the conduct is so aggravated that it meets the elevated standard of an 'intentional disregard of rights' should a circuit court send the issue to a jury." *Id.*

A plaintiff is "not entitled to punitive damages as a matter of right." *Wangen v. Ford Motor Co.*, 294 N.W.2d 437, 458 (Wis. 1980). Thus, even if the issue of punitive damages makes it to a jury, and a jury finds that a defendant's conduct meets the requisite standard of conduct, a jury does not have to award punitive damages. *Id.* Rather, punitive damages may be withheld at the jury's discretion; its refusal to award punitive damages is not reviewable. *Id.* But the jury may not award punitive damages unless it has also awarded compensatory damages. *Tucker v. Marcus*, 418 N.W.2d 818, 820 (Wis. 1988).

Wisconsin law provides that punitive damages may not exceed twice the amount of compensatory damages recovered by the plaintiff, or $200,000, whichever is greater. Wis. Stat. § 895.043(6)

    i.   **Product Identification** – Whether Mrs. Hyde received a G2X or Eclipse Filter.

  2.  **Disputed issues of law**:

    a.  The following was proposed by Plaintiffs as issues of law that are uncontested and stipulated to by the parties, but was not agreed to by Bard:

        i.    Product Liability (General Aspects)

18

Wisconsin's product liability law is a statutory scheme, enacted in 2011. *Forsythe v. Indian River Transp. Co.*, 344 Wis. 2d 520 (Wis. 2012). Common law is not superseded by the 2011 enacted statutory scheme. If pre-2011 common law rulings are not inconsistent with the statute, they stand. "Wisconsin's 2011 codification of its product liability law generally does not supersede the common law." *Janusz v. Symmetry Med. Inc*., 256 F. Supp. 3d 995, 1000–01 (E.D. Wis. 2017).

## ii.     Strict Liability (General Aspects)

Wisconsin Jury Instruction-Civil 3200 sets forth the elements of a strict liability claim as follows: "(1) that the product was in a defective condition unreasonably dangerous; (2) that the product was defective when it left the possession or control of the seller; (3) that the defect was a cause (substantial factor) of the plaintiffs' injury; (4) that the seller was engaged in the business of selling such products (it does not apply to an isolated or infrequent sale); and (5) that the product was one which the seller expected to and did reach the consumer without substantial change."

## iii.     Design Defect (Negligent and Strict Liability)

Under Wisconsin law, negligent or defective design is generally a jury question. *See, e.g., Tidmore v. Midwest Trailer Sales, Inc.,* 2007 WL 5390049 (Wis. Cir. Ct. 2007). "As the Seventh Circuit has recognized, there is significant overlap between [negligent and strict liability] claims. *See Krien v. Harsco Corp.*, 745 F.3d 313, 317 (7th Cir. 2014) ("[A] claim of strict products liability is much like a negligence claim because it requires proof either that the product was unreasonably dangerous or, what amounts to the same thing, that it was defective.").

To succeed on a negligence claim, Plaintiffs must prove:

(1)     the existence of a duty of care on the part of the defendant,

(2)     a breach of that duty of care,

(3)     a causal connection between the defendant's breach of the duty of care and the plaintiffs' injury, and

(4)     actual loss or damage resulting from the [breach].

19

*Kilty v. Weyerhaeuser Co.,* 16-CV-515-WMC, 2018 WL 2464470, at *3–4 (W.D. Wis. June 1, 2018) (citing *Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶ 23, 291 Wis. 2d 283, 717 N.W.2d 17); *Forsythe v. Indian River Transp. Co*., 344 Wis. 2d 520 (Wis. 2012).

To recover on a strict liability design defect claim, the person injured by an allegedly defective product must establish that (1) the foreseeable risks of harm posed by the product's design could have been reduced or avoided by the adoption of a reasonable alternative design by the manufacturer and the omission of the alternative design renders the product not reasonably safe, (2) the defective condition rendered the product unreasonably dangerous to persons or property, (3) the defective condition existed at the time the product left the manufacturer's control, (4) the product reached the user or consumer without substantial change in the condition in which it was sold, and (5) the defective condition was a cause of Plaintiffs' damages. Wis. Stat. § 895.047; WIS JI-CIVIL 3260.1.

The consumer-contemplation test is used to determine elements (1) and (2) above. A product is said to be "defective" when it is in a condition not contemplated by the ordinary user or consumer which is unreasonably dangerous to the ordinary consumer. *Green v. Smith & Nephew AHP, Inc.*, 245 Wis.2d 772 (Wis. 2001). Wisconsin uses the "consumer contemplation" test for product-liability claims. *Green v. Smith & Nephew AHP, Inc.,* 245 Wis. 2d 772 (Wis. 2001); *In re Zimmer Nexgen Knee Implant Products Liab. Litig.,* 218 F. Supp. 3d 700, 723 (N.D. Ill. 2016), *aff'd sub nom. In re Zimmer, NexGen Knee Implant Products Liab. Litig.,* 884 F.3d 746 (7th Cir. 2018) (citing *Green v. Smith & Nephew AHP, Inc.*, 245 Wis. 2d 772, 826, 629 N.W.2d 727, 752 (2001)). Since the enactment of the Wis. Stat. §895.047 there is no law directly on point addressing the consumer expectation test, yet the Seventh Circuit interpreting Wisconsin law agreed that a consumer's expectation is at least a factor to consider. *In re Zimmer*, 218 F. Supp. 3d 700, 723. Ill. 2016).

20

1                         iv.          Negligence *per se*

2        "Negligence *per se* arises from the violation of a safety statute of three

3 requirements are met: 1) the safety statute was designed to prevent the harm inflicted, 2)

4 the person injured was in a protected class, and 3) the legislature has expressed its intent

5 that the statutory section serve as a basis for the imposition of civil liability." *Totsky v.*

6 *Riteway Bus Serv., Inc.,* 607 N.W.2d 637, 644 (Wis. 2000). "The violation of [a] safety

7 statute constitutes negligence *per se*." *Id*. "A safety statute is a legislative enactment

8 designed to protect a specified class of persons from a particular type of harm. *Id.*

9 (quoting *Betchkal v. Willis,* 378 N.W.2d 684 (1985)). Under this standard, the CGMP

10 standards qualify as safety statutes. 21 C.F.R. § 820.1 (The CGMP requirements "are

11 intended to ensure that finished devices will be safe…and otherwise in compliance with

12 the Federal Food, Drug, and Cosmetic Act…"). Further, the FDCA and CGMPs were

13 enacted to protect consumers. ***See https://www.fda.gov/aboutfda/transparency/basics/***

14 ***ucm214416.htm*** ("The FDCA was the "first comprehensive federal *consumer protection*

15 *law*…") (emphasis added). Wisconsin courts previously held that "[i]n Wisconsin,

16 violations of FDA regulations may constitute negligence *per se*." *Kurer v. Parke,,*

17 *Davis & Co.*, 679 N.W.2d 867, 874 (Wis. Ct. App. 2004) (citing *Lukaszewicz v. Ortho*

18 *Pharm. Corp.,* 510 F. Supp. 961, 964 (E.D. Wis.), *amended*, 532 F. Supp. 211 (E.D. Wis.

19 1981)). The Court in *Kurer* continued, "Further, it is a 'well-established rule that the

20 enactment of safety statutes or legislation giving a commission jurisdiction over a certain

21 activity does not abolish the duty arising under common-law negligence.'" *Kurer*, 679

22 N.W.2d at 874 (citing *Kemp v. Wisconsin Elec. Power Co.,* 172 N.W.2d 161 (1969)). *See*

23 *also Marvin v. Zydus Pharma.,* 203 F. Supp.3d 985, 986 (W.D. Wis. 2016) (concurring

24 that Wisconsin continues to recognize negligence *per se* claims and that such claims are

25 not preempted).

26                         v.          <u>Punitive Damages</u>

27       <u>Plaintiffs' Contention</u>: Under Wisconsin law, punitive damages may be awarded in

28 addition to compensatory damages where the jury finds that the defendant acted

maliciously toward the plaintiffs or in an intentional disregard of the rights of the plaintiffs. A defendant acts are malicious when they are the result of hatred, ill will, desire for revenge, or inflicted under circumstances where insult to injury is intended. A defendant acts in an intentional disregard of the rights of the plaintiffs if the defendant acts with a purpose to disregard the plaintiffs' rights or is aware that his or her acts are substantially certain to result in the plaintiffs' rights being disregarded. A defendant's conduct giving rise to punitive damages need not be directed at the specific Plaintiffs seeking punitive damages in order to recover punitive damages and there is no requirement that a defendant intended to cause harm or injury to the plaintiffs. *Strenke v. Hogner*, 279 Wis. 2d 52, 58 (Wis. 2005); WIS JI-CIVIL 1707.2

A result or consequence is intentional if the defendant acts with a purpose to cause the result or consequence or is aware that the result or consequence is substantially certain to occur from the person's conduct. The result or consequence here is the disregard of rights. *Strenke*, 279 Wis. 2d at 69–70; WIS JI-CIVIL 1707.2

A jury may find an intentional disregard of the plaintiffs' rights if jurors are satisfied that the defendant's act or course of conduct was: (1) deliberate; (2) an actual disregard of the plaintiffs' right to safety, health, or life, a property right or some other right; and (3) sufficiently aggravated to warrant punishment by punitive damages. WIS JI-CIVIL 1707.2.

Defendants' Contention: Defendants disagree with Plaintiffs' analysis of Wisconsin law on strict liability design defect. Defendants further disagree  that the appropriate test for product defect is the consumer expectations test. The appropriate test is the risk benefit test under the Restatement Third as adopted by Wisconsin in 2011. As to the strict liability and negligence claims, Defendants incorporate their Trial Brief addressing the issues under Wisconsin law (Dkt 12358). As to the remaining claims, Bard's position on the law is set forth above in the Contested Issues of Fact and Law.

**E.    LIST OF WITNESSES**

1.    Each party understands that it is responsible for ensuring that the witnesses it wishes to call to testify are subpoenaed. Each party further understands that any witness a party wishes to call shall be listed on that party's list of witnesses; the party cannot rely on the witness having been listed or subpoenaed by another party.

2.    Many of the parties' summaries state that the witness will testify consistent with his/her deposition. The parties do not waive any objections, and these descriptions are subject to the prior rulings by the Court on motions *in limine* and the pending motions *in limine*. Counsel agrees that they and the witnesses will abide by those rulings.

**Plaintiffs' Witnesses**

1.    Plaintiffs reserve the right to call witnesses for rebuttal as needed.

2.    Witnesses who shall be called at trial (Live and/or by deposition):

**Fact Witnesses:**

Mrs. Lisa Hyde
c/o Gallagher & Kennedy
2575 E. Camelback Road, 11th Floor
Phoenix, AZ 85016

Mrs. Hyde is a Plaintiff in this action. She will testify regarding her medical care and treatment, as well as he surrounding and related circumstances; the nature, extent, and severity of her injuries and suffering; the physical and mental pain, suffering and discomfort associated with the injuries; and the impact of the injuries on her life, including without limitation the ongoing emotional and physical impact on her life. Lastly, she will testify consistent with her deposition given in this matter.

Mr. Mark Hyde
c/o Gallagher & Kennedy
2575 E. Camelback Road, 11th Floor
Phoenix, AZ 85016

Mr. Hyde is Plaintiff Lisa Hyde's husband. He will testify regarding his observations of Plaintiff Lisa Hyde's daily issues and injuries caused by her Filter and the failures of that filter, the overall impact of the injury on her daily activities and quality of life, the impact

of her injuries on their relationship, and Plaintiff Lisa Hyde's mental and physical condition before and after the implant of her Filter. He will also testify consistent with his deposition in this matter.

> David Henry, MD
> Radiology Consultants of Iowa
> 1948 1st Ave. NE
> Cedar Rapids, IA 52402

Dr. Henry will testify regarding his examinations, care, treatment, observations and diagnosis of Plaintiff Lisa Hyde related to her IVC filter and resulting injuries and complications, as well as the nature and extent of injuries and complications caused by the failure of Plaintiff Lisa Hyde's IVC Filter. Plaintiffs further anticipate Dr. Henry will testify consistent with his medical records and his deposition taken in this case.

> William T. Kuo, MD
> Interventional Radiology
> 300 Pasteur Dr., Rm. H3652
> Stanford, CA 94305

Dr. Kuo is an Interventional Radiologist at Stanford Medical Center and Hospital in Stanford, California. He was the doctor who performed a complex retrieval of the Filter and also a filter strut from Lisa Hyde's right ventricle on August, 26, 2014. Plaintiffs expect that his testimony at trial will be consistent with the testimony at his deposition taken on March 23, 2017, in this MDL.

> Shari Allen (O'Quinn)
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Ms. Allen was the Regulatory Affairs Manager for BPV in 2004 and the Director of Regulatory Affairs and Clinical for BPV in 2005 and 2006. Plaintiffs expect that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her depositions taken on November 2, 2010, in *Newton v. C. R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2009-019232, and October 9, 2013, in *Giordano v. C. R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC.

1

2

William Altonaga, M.D.
c/o Counsel for Bard Peripheral Vascular and C. R. Bard

3 Dr. Altonaga was a consultant to and acting Medical Director for C. R. Bard beginning in

4 2001 and into 2004. Plaintiffs expect that he is knowledgeable regarding the matters that

5 were the subject of his employment with Bard and his deposition taken on October 22,

6 2013, in *Giordano v. C. R. Bard, Inc., et al.*, Superior Court of California, San Diego

7 County, East County Regional Center, Case No. 00069363-CU-PO-EC.

8

9

10

Murray R. Asch, M.D.
c/o Lakeridge Health Corporation
Director of Interventional Radiology
580 Harwood Ave. S
Oshawa, ON L1S 2J4

11 Dr. Asch is an Interventional Radiologist who was involved in a pilot study to assess the

12 retrievability of the Recovery filter. Plaintiffs expect that he is knowledgeable regarding

13 the matters that were the subject of his study and work with Bard, as well as his

14 depositions taken on May 2, 2016, in *In re Bard IVC Filters Prod. Liab. Litig.*, MDL

15 No. 2641, United States District Court, District of Arizona ("the Bard IVC Filter MDL")

16 and January 5, 2011, in *Lindsay, et al. v. C. R. Bard, Inc., et al.*, United States District

17 Court, Southern District of New York, Case No. 1:09-cv-05475-SHS.

18

19

Robert M. Carr, Jr.
c/o Counsel for Bard Peripheral Vascular and C. R. Bard

20 Mr. Carr has been an employee at BPV since 2002; prior to that, he was an employee at

21 NMT working on filters. At BPV, he was the Program Director for Research &

22 Development from 2002 through 2010, Director Research & Development Biopsy from

23 2010 through 2012, Senior Director Research & Development Biopsy & Imaging from

24 2013 through 2014, and Vice President International since 2015. Plaintiffs expect that he

25 is knowledgeable regarding the matters that were the subject of his employment with

26 NMT and Bard and his depositions taken on March 18, 2016, and January 19, 2017, in the

27 Bard IVC Filter MDL; May 8, 2007, in *Hutson v. C. R. Bard, Inc., et al.*, Commonwealth

28 of Kentucky, McCracken Circuit Court, Division II, Case No. 06-CI-680; March 4, 2010,

in *Campbell v. C. R. Bard, Inc.*, Commonwealth of Kentucky, Scott Circuit Court, Division I, Case No. 08-CI-00541; September 23, 2010, in *Vedas v. C. R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-019655; September 14, 2012, in *Albrecht, et al. v. Bard Peripheral Vascular, Inc.*, Circuit Court of Greene County, Missouri, Case. No. 1031-cv10504; April 17, 2013, in *Bouldry, et al. v. C. R. Bard, Inc., et al.*, United States District Court, Southern District of Florida, Case No. 12-809-51-CIV-Rosenbaum; October 25, 2013, in *Anderson v. C. R. Bard, Inc., et al.*, United States District Court, Eastern District of New York, Case No. CV11-2632 (DRH); November 5, 2013, in *Giordano v. C. R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC; December 19, 2013, in *Payne v. C. R. Bard, Inc., et al.*, United States District Court, Middle District of Florida, Orlando Division, Case No. 6:11-cv-01582-Orl-37GJK; October 29, 2014, in *Tillman v. C. R. Bard, Inc.*, United States District Court, Middle District of Florida, Jacksonville, Case No. 3:13-cv-222-J-34-JBT; and December 19, 2014, in *Kilver v. C. R. Bard, Inc.*, United States District Court, Central District of Illinois, Case No. 1:13-cv-01219-MMM-JAG.

> Charis Campbell
> 7778 E Black Rock Rd
> Scottsdale, AZ  85255

Ms. Campbell is a former Bard employee, identified in discovery as a member of clinical affairs department at BPV. Her name also appears on a number of EVEREST Medical Monitor Meeting Minutes with members of BBA and Bard, and as having been present in meetings with Dr. Krishna Kandarpa, who was contracted by and/or on behalf of Bard to adjudicate the adverse events arising from said retrievability trial. She is identified as a representative of Bard who provided an overview of the EVEREST program and device to Dr. Kandarpa and others.

Plaintiffs expect that she is knowledgeable regarding matters that are the subject of her employment with Bard, in particular her involvement in and with the EVEREST trial, interactions with Dr. Kandarpa in his role as medical monitor, and the contents and

subject matter of meetings, and the minutes of said meetings, relating to said trial and the complications, adverse events, findings and opinions of Dr. Kandarpa and others involved in the trial from both BBA and Bard regarding the design, performance and increased risks identified from patient data and the adjudication of the adverse events reported and related to the Modified Recovery G2 filter.

> Andrzej Chanduszko
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Mr. Chanduszko has been an employee of BPV since 2002; prior to that, he was an employee at NMT working on IVC filters. At BPV, he was a Senior Engineer, Research & Development Staff Engineer from 2004 through 2008, Staff Engineer from 2009 through 2014, and Principal Engineer since 2015. Plaintiffs expect that he is knowledgeable regarding the matters that were the subject of his employment with Bard and NMT, as well as his depositions taken on September 22, 2010, in *Vedas v. C. R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-019655, June 21, 2013, in *Anderson v. C. R. Bard, Inc., et al.*, United States District Court, Eastern District of New York, Case No. CV11- 2632 (DRH), October 10, 2013, in *Phillips v. C. R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-WGC, and April 23, 2015, in *Arnold, et al. v. C. R. Bard, Inc., et al.*, United States District Court, Northern District of Texas, Dallas Division, Case No. 5:13-cv-00609-HLH.

> David Ciavarella, M.D.
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Dr. Ciavarella has been Vice President Corporate Clinical Affairs at C. R. Bard since 2004. Plaintiffs expect that he is knowledgeable regarding the matters that were the subject of his employment with Bard and depositions taken on March 1, 2011, and August 29, 2012, in *Tyson v. C. R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010- 011149, November 12, 2013, in *Giordano v. C. R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center,

Case No. 00069363-CU-PO-EC, and July 29, 2014, in *Coker v. C. R. Bard, Inc., et al.*, United States District Court, Northern District of Georgia, Atlanta Division, Case No. 1:13-cv-0515.

> Len DeCant
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Mr. DeCant was Vice President Research & Development for BPV from 2002 to 2007. Plaintiffs expect that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on May 24, 2016, in the Bard IVC Filter MDL.

> David Dimmit
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Mr. Dimmit is the Vice President and Group Controller at C. R. Bard; Plaintiffs expect that he is knowledgeable regarding matters that are/were subject to his employment with Bard and his deposition was taken on January 26, 2017 as to the defendants' financial status, assets, and net worth.

> Mehdi Syed
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Mr. Syed is the Vice President of Operations at Becton Dickinson and was designated by Bard to testify on the subject notices for the deposition relating to punitive damages and Bard's financial condition; Plaintiffs expect that he is knowledgeable regarding matters that are/were subject to his employment with Bard and his deposition was taken on March 2, 2018, as to Defendants' financial status, assets, and net worth.

> Mary Edwards
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Ms. Edwards was Vice President Regulatory Affairs/Clinical Affairs at C. R. Bard from 1999 to 2005. Plaintiffs expect that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her depositions taken on January 20, 2014, in *Giordano v. C. R. Bard, Inc., et al.*, Superior Court of California, San Diego County,

1   East County Regional Center, Case No. 00069363-CU-PO-EC, and August 19, 2016, in

2   the Bard IVC Filter MDL.

3          Robert Ferrara
           c/o Counsel for Bard Peripheral Vascular and C. R. Bard
4

5   Mr. Ferrara was the Bard sales representative who called on and made presentations to

6   Mrs. Hyde's treating physicians during the relevant time period. Plaintiffs expect

7   Mr. Ferrara will testify on the subject matter of his employment at Bard, and consistent

8   with his deposition given in this case.

9          Christopher Ganser
           c/o Counsel for Bard Peripheral Vascular and C. R. Bard
10

11  Mr. Ganser was Vice President, Regulatory Science at C. R. Bard from 2005 through

12  2006 and Vice President Quality, Environmental Services, & Safety from 2007 through

13  2010. Plaintiffs expect that he is knowledgeable regarding the matters that were the

14  subject of his employment with Bard and his depositions taken on February 28, 2011, in

15  *Newton v. C. R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case

16  No. CV2009-019232, September 9, 2013, in *Anderson v. C. R. Bard, Inc., et al.*, United

17  States District Court, Eastern District of New York, Case No. CV11-2632 (DRH), and

18  October 11, 2016, in the Bard IVC Filter MDL.

19         David Mickey Graves
           c/o Counsel for Bard Peripheral Vascular and C. R. Bard
20

21  Mr. Graves was an Engineer at BPV beginning in 2004 to at least 2014. Plaintiffs expect

22  that he is knowledgeable regarding the matters that were the subject of his employment

23  with Bard and his deposition taken on February 27, 2014, in *Ocasio, et al. v. C. R. Bard,*

24  *Inc., et al.*, United States District Court, Middle District of Florida, Tampa Division, Case

25  No. 8:13-cv-01962-DSM-AEP.

26         Janet Hudnall
           c/o Counsel for Bard Peripheral Vascular and C. R. Bard
27

28

Ms. Hudnall was an employee at BPV from 1998 to 2008, and has recently become employed by Bard again; she held positions as Product Development Engineer, Product Manager, and Marketing Manager. Plaintiffs expect that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her depositions taken on November 3, 2010, in *Newton v. C. R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2009-019232, and November 1, 2013, in *Phillips v. C. R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-WGC.

> Brian Hudson
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Mr. Hudson was an employee at BPV from 1999 to 2012; he held positions as Quality Engineer, Senior Risk Manager, and Associate Director Quality Assurance. Plaintiffs expect that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on January 21, 2011, in *Tyson v. C. R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-011149, and January 17, 2014, in *Giordano v. C. R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC.

> Krishna Kandarpa, M.D.
> National Institute of Health
> Bethesda, MD 20892

Dr. Kandarpa was the Medical Monitor for Bard's EVEREST Retrievability Study. Plaintiffs expect he is knowledgeable about and will provide testimony concerning the EVEREST Study and all documents related to the same, including his observations, his concerns and findings, complications and adverse events that occurred during the study, design and purpose of the study, his recommendations to and interactions with Bard and its representatives/agents based on the study, and all other related facts and circumstances.

1

2

3

Thomas Kinney, MD, MSME
c/o Gallagher & Kennedy
2575 E. Camelback Road, 11th Floor
Phoenix, AZ 85016

4   Dr. Kinney is an Interventional Radiologist who was a consultant, key opinion leader and

5   invited panel member for Bard on IVC filters. Plaintiffs expect that he is knowledgeable

6   regarding the matters that were the subject of his relationship with Bard, and will testify

7   consistent with expert report and deposition given in this litigation, as well as his

8   experience and writings relating to Bard IVC Filters. Further, Dr. Kinney will testify

9   about the foundation and bases for his opinions, including his review of medical and

10   scientific literature, Bard documents, and other information he has reviewed and relied

11   upon. Dr. Kinney will also respond to opinions and testimony of defense experts.

12

13

14

Sanjeeva Kalva, M.D.
c/o Gallagher & Kennedy
2575 E. Camelback Road, 11th Floor
Phoenix, AZ 85016

15   Dr. Kalva is an interventional radiology expert for Plaintiffs. Dr. Kalva is expected to

16   testify about the general liability of the Bard Defendants. Dr. Kalva will further testify

17   consistent with his deposition and expert report in this litigation, as well as his experience

18   and writings relating to Bard IVC filters. Further, Dr. Kalva will testify about the

19   foundation and bases for his opinions, including his review of medical and scientific

20   literature, Bard documents, and other information he has reviewed and relied upon.

21   Dr. Kalva will also respond to opinions and testimony of defense experts.

22

23

24

Anne Roberts, MD
c/o Gallagher & Kennedy
2575 E. Camelback Road, 11th Floor
Phoenix, AZ 85016

25   Dr. Roberts is an interventional radiology expert for Plaintiffs. Dr. Roberts is expected to

26   testify about the general liability of the Bard Defendants. Dr. Roberts will further testify

27   consistent with her deposition and expert report in this litigation, as well as her experience

28   and writings relating to Bard IVC filters. Further, Dr. Roberts will testify about the

31

foundation and bases for her opinions, including her review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon. Dr. Roberts will also respond to opinions and testimony of defense experts.

> Bill Little
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Mr. Little was Vice President of Global Marketing at BPV from 2008 through 2011. Plaintiffs expect that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on July 21, 2016, in the Bard IVC Filter MDL.

> Chad Modra
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Mr. Modra was Director Quality Assurance and Vice President Quality Assurance at BPV from 2011 through 2014. Plaintiffs expect that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on March 28, 2013, in *Phillips v. C. R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJWGC, June 6, 2014, in *Ocasio, et al. v. C. R. Bard, Inc., et al.*, United States District Court, Middle District of Florida, Tampa Division, Case No. 8:13-cv-01962-DSM-AEP, and December 15, 2015, and January 20, 2016, in the Bard IVC Filter MDL.

> Frederick B. Rogers, M.D.
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Dr. Rogers was the author of a large study establishing that IVC filters do not reduce the rate of PE in trauma patients. Plaintiffs further expect that he is knowledgeable regarding the matters that were the subject of his deposition taken on July 18, 2017, in *In re: Bard IVC Filters Products Liability Litigation*, No. MD-15-02641-PHX-DGC, and will testify consistent with that deposition. He is also disclosed as an expert, below.

> Gin Schulz
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

1   Ms. Schulz was Vice Present Quality Assurance at BPV from 2005 to 2011 and in the

2   Quality Assurance department at C. R. Bard since 2011, including as Vice President

3   Quality Assurance. Plaintiffs expect that she is knowledgeable regarding the matters that

4   were the subject of her employment with Bard and her depositions taken on

5   September 13, 2013, in *Anderson v. C. R. Bard, Inc., et al.*, United States District Court,

6   Eastern District of New York, Case No. CV11-2632 (DRH), and January 30, 2014, in

7   *Phillips v. C. R. Bard, Inc.*, United States District Court, District of Nevada, Case

8   No. 3:12-cv-00344-RCJ-WGC.

9           Carol Vierling
            c/o Counsel for Bard Peripheral Vascular and C. R. Bard
10

11  Ms. Vierling was the Director, Regulatory Affairs at BPV from 1994 through 2002.

12  Plaintiffs expect that she is knowledgeable regarding the matters that were the subject of

13  her employment with Bard and her deposition taken on May 11, 2016, in the Bard IVC

14  Filter MDL.

15          Steve Williamson
            c/o Counsel for Bard Peripheral Vascular and C. R. Bard
16

17  Mr. Williamson has been President at BPV since 2012. Plaintiffs expect that he is

18  knowledgeable regarding the matters that were the subject of his employment with Bard

19  and his deposition taken on September 7, 2016, in the Bard IVC Filter MDL.

20          Natalie Wong
            c/o Counsel for Bard Peripheral Vascular and C. R. Bard
21

22  Ms. Wong has been an employee of BPV since 2004; she has held positions as Quality

23  Engineer, Field Assurance Quality Engineering Manager, Quality Engineering Manager,

24  and Senior Quality Engineer, New Product Development. Plaintiffs expect that she is

25  knowledgeable regarding the matters that were the subject of her employment with Bard

26  and her depositions taken on September 21, 2010, in *Vedas v. C. R. Bard, Inc., et al*.,

27  Superior Court of Arizona, Maricopa County, Case No. CV2010-019655, and October 18,

28  2016, in the Bard IVC Filter MDL.

1     Expert Witnesses:

2     Rebecca Betensky, Ph.D.
      c/o Gallagher & Kennedy
3     2575 E. Camelback Road, 11th Floor
      Phoenix, AZ 85016
4

5 Dr. Betensky is a biostatistician. Dr. Betensky is expected to testify about her analysis and

6 data relating to complication rates of Bard's defective IVC filter, various design failure

7 modes effects analysis documents, and about various filter migration test results.

8 Dr. Betensky will testify consistent with her deposition and expert report. Further,

9 Dr. Betensky will testify about the foundation and bases for her opinions, including her

10 review of medical and scientific literature, Bard documents, and other information she has

11 reviewed and relied upon. Dr. Betensky will also respond to opinions and testimony of

12 defense experts.

13     Darren R. Hurst, M.D.
      c/o Gallagher & Kennedy
14     2575 E. Camelback Road, 11th Floor
      Phoenix, AZ 85016
15

16 Dr. Hurst is Plaintiffs' vascular and interventional radiologist expert. Dr. Hurst is

17 expected to testify as to the Defendants' liability and the design problems associated with

18 the IVC filter, causation, and damages. Dr. Hurst will testify consistent with his

19 deposition and expert report in this case. Further, Dr. Hurst will testify about the

20 foundation and bases for his opinions, including his review of medical and scientific

21 literature, Bard documents, and other information he has reviewed and relied upon.

22 Dr. Hurst will also provide foundational testimony for Plaintiffs' medical illustrations and

23 animations. Dr. Hurst will also respond to opinions and testimony of defense experts.

24     David A. Kessler, M.D.
      c/o Gallagher & Kennedy
25     2575 E. Camelback Road, 11th Floor
      Phoenix, AZ 85016
26

27 Dr. Kessler is a medical doctor and former FDA commissioner. Dr. Kessler is expected to

28 testify consistent with his expert report and depositions. Further, Dr. Kessler will testify

about the foundation and bases for his opinions, including his review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon. Plaintiffs also anticipate that Dr. Kessler will also respond to opinions and testimony of defense experts.

> Suzanne Parisian
> c/o Gallagher & Kennedy
> 2575 E. Camelback Road, 11th Floor
> Phoenix, AZ 85016

Dr. Parisian is a medical doctor and former FDA employee. Dr. Parisian is expected to testify consistent with her expert report and depositions. Further, Dr. Parisian will testify about the foundation and bases for her opinions, including his review of medical and scientific literature, Bard documents, and other information she has reviewed and relied upon. Plaintiffs also anticipate that Dr. Parisian will also respond to opinions and testimony of defense experts.

> Thomas Kinney, MD, MSME
> c/o Gallagher & Kennedy
> 2575 E. Camelback Road, 11th Floor
> Phoenix, AZ 85016

Dr. Kinney is an interventional radiology expert for Plaintiffs. Dr. Kinney is expected to testify about the general liability of the Bard defendants. Dr. Kinney will further testify consistent with his deposition and expert report in this litigation. Further, Dr. Kinney will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon. Dr. Kinney will also respond to opinions and testimony of defense experts.

> Robert McMeeking, Ph.D.
> c/o Gallagher & Kennedy
> 2575 E. Camelback Road, 11th Floor
> Phoenix, AZ 85016Dr.

Dr. McMeeking is a materials and mechanical engineer and is experienced in safety, reliability, and effectiveness of biomedical implant devices. Dr. McMeeking is expected to testify that the design of the G2X® and Eclipse filters are inherently dangerous and

35

1    prone to numerous failure modes rendering them not reasonably safe, that there existed

2    safer alternative designs which were available to Defendants, and that the risks of either or

3    both filters could have been reduced or avoided by the adoption of a reasonable alternative

4    design by Defendants, and the omission of the alternative design rendered the devices not

5    reasonably safe.. Dr. McMeeking is expected to testify and describe alternative designs of

6    IVC filters, which were  feasible at relevant times prior to Plaintiff's implantation and

7    explanation of the subject Bard filter, and would have reduced the tendency of said to tilt,

8    perforate, migrate, fracture, impede the intended, expected and represented simple

9    retrieval of the device, and otherwise fail.

10   Dr. McMeeking will testify consistent with his prior depositions, testimony in *Booker* and

11   *Jones* trials, and expert report. Further, Dr. McMeeking will testify about the foundation

12   and bases for his opinions, including his review of medical, engineering and scientific

13   literature and learned treatises, experience, teachings, training, Bard documents, and other

14   information he has reviewed and relied upon. Dr. McMeeking will also respond to

15   opinions and testimony of defense experts. Dr. McMeeking may also respond to opinions

16   and testimony of defense experts. In addition, Plaintiffs anticipate that Dr. McMeeking

17   will testify consistent with his expert reports and depositions given to date.

18                       Mark Moritz, M.D.
                         c/o Counsel for Bard Peripheral Vascular and C. R. Bard
19

20   Dr. Moritz gave general expert opinions on behalf of Bard in the MDL, as well as case

21   specific opinions in at least one of the MDL bellwethers.  Plaintiffs expect that he is

22   knowledgeable regarding the matters that were the subject of his deposition taken on

23   July 18, 2017, in *In re: Bard IVC Filters Products Liability Litigation*, No. MD-15-02641-

24   PHX-DGC, and will testify consistent with that deposition.

25                       Derek David Muehrcke, M.D.
                         c/o Gallagher & Kennedy
26                       2575 E. Camelback Road, 11th Floor
                         Phoenix, AZ 85016
27

28   Dr. Muehrcke is a cardiothoracic and vascular surgeon. Dr. Muehrcke is expected to

testify about the liability of the Bard defendants as well as causation and damages caused by the defective IVC filter. Dr. Muehrcke will testify consistent with his deposition and expert report in this case. Further, Dr. Muehrcke will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon. Dr. Muehrcke will also provide foundational testimony for Plaintiffs' medical illustrations and animations. Dr. Muehrcke will also respond to opinions and testimony of defense experts.

> Frederick B. Rogers, M.D.
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Dr. Rogers gave general expert opinions on behalf of Bard in the MDL, as well as case specific opinions in at least one of the MDL bellwethers. He was the author of a large study establishing that IVC filters do not reduce the rate of PE in trauma patients. Plaintiffs further expect that he is knowledgeable regarding the matters that were the subject of his deposition taken on July 18, 2017, in *In re: Bard IVC Filters Products Liability Litigation*, No. MD-15-02641-PHX-DGC, and will testify consistent with that deposition.

> J. Matthew Sims, MC, MS
> c/o Gallagher & Kennedy
> 2575 E. Camelback Road, 11th Floor
> Phoenix, AZ 85016

Mr. Sims is a Vocational Economist expert for the Plaintiffs. He will provide testimony and opinion as to the present value of the life care plan for Plaintiffs and projection of costs prepared by Plaintiffs' Medical Services Consultant and Life Care Planner expert, Lora White. He will testify consistent with his expert report and deposition given in this case.

> Moni Stein, MD
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Dr. Stein gave general expert opinions on behalf of Bard in the MDL, as well as case specific opinions in at least one of the MDL bellwethers.  Plaintiffs expect that he is

1    knowledgeable regarding the matters that were the subject of his deposition taken on

2    July 31, 2017 in *In re: Bard IVC Filters Products Liability Litigation*, No. MD-15-02641-

3    PHX-DGC, and will testify consistent with that deposition.

4

                  Michael Streiff, M.D.
                  c/o Gallagher & Kennedy

5                    2575 E. Camelback Road, 11th Floor
                  Phoenix, AZ 85016

6

7    Dr. Streiff is a hematology expert for Plaintiffs. Dr. Streiff is expected to testify about the

8    general liability of the Bard defendants, including without limitation the risk versus

9    benefit analysis associated with the use of IVC filters. Dr. Streiff will further testify

10    consistent with his deposition and expert report in this litigation. Further, Dr. Streiff will

11    testify about the foundation and bases for his opinions, including his review of medical

12    and scientific literature, medical and scientific literature he has authored and the

13    associated research, Bard documents, and other information he has reviewed and relied

14    upon. Dr. Streiff will also respond to opinions and testimony of defense experts.

15

                  Lora K. White, RNBC, BSN, CCM, CNLCP
                  c/o Gallagher & Kennedy

16                    2575 E. Camelback Road, 11th Floor
                  Phoenix, AZ 85016

17

18    Ms. White is a Medical Services Consultant and Life Care Planner expert for the

19    Plaintiffs. She prepared a life care plan for Plaintiffs and projection of costs for the same

20    arising from the injuries and damages caused by the failure of Plaintiffs' Bard Filter. She

21    will testify consistent with her expert report and deposition given in this case.

22         7.     Witnesses who may be called at trial (Live and/or by deposition):

23

                  Brett Baird
                  c/o Counsel for Bard Peripheral Vascular and C. R. Bard

24

25    Mr. Baird was a Senior Product Manager for BPV in 2007 and a Marketing Manager for

26    BPV from 2008 through 2011. Plaintiffs expects that he is knowledgeable regarding the

27    matters that were the subject of his employment with Bard and his deposition taken on

28    June 9, 2016, in the Bard IVC Filter MDL.

Brian Barry
c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Mr. Barry was the Vice President Regulatory/Clinical Affairs for Bard Access Systems from 1994 through 1997, Vice President Corporate Regulatory Affairs for C. R. Bard from 1997 through 2000, and Vice President of Regulatory Affairs and Clinical Affairs for C. R. Bard from 2003 to 2007. Plaintiffs expect that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on January 31, 2014, in *Jones v. C. R. Bard, Inc.*, United States District Court, Northern District of Texas, Dallas Division, Case No. 3:13-cv-00599-K.

Kevin Boyle
c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Mr. Boyle was Vice President of Research & Development at BPV from 2013 through 2015. Plaintiffs expect that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on February 2, 2017, in the Bard IVC Filter MDL.

Gary S. Cohen, M.D.
Temple University
Medicine Education and Research Building (MERB)
3500 N. Broad Street
Philadelphia, PA 19140

Dr. Cohen is an Interventional Radiologist at Temple University Hospital. He was a consultant and key opinion leader for Bard on IVC filters. Plaintiffs expect that he is knowledgeable regarding the matters that were the subject of his deposition taken on January 25, 2017, in the Bard IVC Filter MDL.

Robert Cortelezzi
c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Mr. Cortelezzi was an employee at BPV from approximately 1990 to 2008; he was a Regional Manager from 2004 through 2008. Plaintiffs expect that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on November 11, 2016, in the Bard IVC Filter MDL.

39

1     Thomas Ferari
2     c/o Counsel for Bard Peripheral Vascular and C. R. Bard

3   Mr. Ferari was an Engineer at BPV. Plaintiffs expect that he is knowledgeable regarding

4   the matters that were the subject of his employment with Bard and his depositions taken

5   on October 20, 2010, in *Vedas v. C. R. Bard, Inc., et al.*, Superior Court of Arizona,

6   Maricopa County, Case No. CV2010- 019655, and all related cross-noticed cases and

7   April 2, 2014, in *Coker v. C. R. Bard, Inc., et al.*, United States District Court, Northern

8   District of Georgia, Atlanta Division, Case No. 1:13-cv-0515.

9     Kay Fuller
10    c/o Counsel for Bard Peripheral Vascular and C. R. Bard

11  Ms. Fuller was Senior Regulatory Specialist at BPV from 1999 through 2004. Plaintiffs

12  expect that she is knowledgeable regarding the matters that were the subject of her

13  employment with Bard and her depositions taken on November 9, 2010, in *Newton v.*

14  *C. R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2009-

15  019232, and January 11, 2016, in the Bard IVC Filter MDL.

16    Holly Glass
17    c/o Counsel for Bard Peripheral Vascular and C. R. Bard

18  Ms. Glass was Vice President Government & Public Relations at C. R. Bard from 2002

19  through 2009. Plaintiffs expect that she is knowledgeable regarding the matters that were

20  the subject of her employment with Bard and her deposition taken on September 23, 2016,

21  in the Bard IVC Filter MDL.

22    Jason Greer
23    c/o Counsel for Bard Peripheral Vascular and C. R. Bard

24  Mr. Greer was a Sales Representative and then District Manager at BPV from 1999

25  through 2007. Plaintiffs expect that he is knowledgeable regarding the matters that were

26  the subject of his employment with Bard and his depositions taken on June 20, 2010, in

27  *Newton v. C. R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case

28  No. CV2009-019232, October 22, 2010, in *Vedas v. C. R. Bard, Inc., et al.*, Superior

Court of Arizona, Maricopa County, Case No. CV2010-019655, August 11, 2014, in *Barkley, et al. v. C. R. Bard, Inc., et al.*, Arizona Superior Court, Maricopa County, Case No. CV2011-021250, and September 26, 2011, in *Tyson v. C. R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-011149.

> John Lehman, M.D.
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Dr. Lehman was Group Medical Director and Vice President of Medical Affairs for C. R. Bard from 1991 to 1995; he was a consultant and acting Medical Director for C. R. Bard in 2003 and 2004. Plaintiffs expect that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on April 2, 2013, in *Phillips v. C. R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-WGC, and all related cross-noticed cases and August 7, 2014, in *Coker v. C. R. Bard, Inc., et al.*, United States District Court, Northern District of Georgia, Atlanta Division, Case No. 1:13-cv-0515.

> Frank Lynch, M.D.
> Penn State College of Medicine
> 500 University Drive
> Hershey PA 17033

Dr. Lynch is an Interventional Radiologist at Penn State Hospital. He was a consultant and key opinion leader for Bard on IVC filters. Plaintiffs expect that he is knowledgeable regarding the matters that were the subject of his relationship with Bard and his deposition taken on January 30, 2017, in the Bard IVC Filter MDL.

> John McDermott
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Mr. McDermott was President of BPV from 1996 through 2006. Plaintiffs expect that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on November 1, 2010, in *Tyson v. C. R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-011149, and February 5,

2014, in *Giordano v. C. R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC.

> Tim Hug
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Mr. Hug was the supervisor of Matthew Fermanich during the relevant time period and when was the sales representative for Wheaton Franciscan Healthcare. Plaintiffs expect that Mr. Hug has knowledge and would testify at trial regarding the information Bard provided and did not provide to its sales force and to physicians relating to the IVC filters marketed and sold to physicians and hospitals and specifically what information was provided to him and to the sales representatives reporting to him, including Matthew Fermanich, regarding Bard's IVC filters and what information they would and what could have conveyed to physicians who would use those devices. Plaintiffs expect that his testimony at trial will be consistent with the testimony at his deposition taken on August 23, 2017, in this MDL

> Matt Fermanich
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Mr. Fermanich was a sales representative for Bard Peripheral Vascular Incorporated ("BPV") at the time of and preceding the implantation of the G2X filter in Plaintiffs. Mr. Fermanich's territory included Wheaton Franciscan Healthcare in Franklin, Wisconsin. Plaintiffs expect that his testimony at trial will be consistent with Hsu deposition taken on March 24, 2017, in the Bard IVC Filter MDL.

> Abithal Raji-Kubba
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

Ms. Raji-Kubba was Vice President Research & Development at BPV from 2007 through 2010 and Vice President Lutonix Technology Center from 2011 through 2012. Plaintiffs expect that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her deposition taken on July 18, 2016, in the Bard IVC Filter MDL.

1
2

> Michael Randall
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard

3  Mr. Randall has been an employee of BPV in the Research & Development department

4  since 2006; he has held several positions, including Engineer, Program Manager,

5  Associate Director, and Director. Plaintiffs expect that he is knowledgeable regarding the

6  matters that were the subject of his employment with Bard and his depositions taken on

7  January 18, 2017, and February 2, 2017, in the Bard IVC Filter MDL.

8
> Kim Romney
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard
9

10  Ms. Romney has been an employee of BPV since 2011 and is presently a Senior Product

11  Manager for Ports and Filters. Plaintiffs expect that she is knowledgeable regarding the

12  matters that were the subject of her employment with Bard and her depositions taken on

13  August 30, 2016, September 7, 2016, and January 18, 2017, in the Bard IVC Filter MDL.

14
> Jack Sullivan
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard
15

16  Mr. Sullivan was an employee at BPV from 1994 to 2013; he was in the Sales department

17  and held positions including District Manager and Regional Manager. Plaintiffs expect

18  that he is knowledgeable regarding the matters that were the subject of his employment

19  with Bard and his depositions taken on September 16, 2016, and November 3, 2016, in the

20  Bard IVC Filter MDL.

21
> Alex Tessmer
> c/o Counsel for Bard Peripheral Vascular and C. R. Bard
22

23  Mr. Tessmer was an employee and engineer at BPV in the Research & Development

24  department from 1997 through 2004. Plaintiffs expect that he is knowledgeable regarding

25  the matters that were the subject of his employment with Bard and his deposition taken on

26  June 12, 2013, in *Phillips v. C. R. Bard, Inc.*, United States District Court, District of

27  Nevada, Case No. 3:12-cv-00344-RCJ-WGC.

28

1

2

   Doug Uelmen
   c/o Counsel for Bard Peripheral Vascular and C. R. Bard

3 Mr. Uelmen was an employee at C. R. Bard and then BPV from approximately 1981

4 through 2005; he was Vice President Quality Assurance at BPV from 2003 through 2005.

5 Plaintiffs expect that he is knowledgeable regarding the matters that were the subject of

6 his employment with Bard and his depositions taken on October 4, 2013, in *Giordano v.*

7 *C. R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County

8 Regional Center, Case No. 00069363-CU-PO-EC, and May 13, 2014, in *Coker v. C. R.*

9 *Bard, Inc.*, et al., United States District Court, Northern District of Georgia, Atlanta

10 Division, Case No. 1:13-cv-0515.

11

   John Van Vleet
   c/o Counsel for Bard Peripheral Vascular and C. R. Bard

12

13 Mr. Van Vleet has been the Vice President Regulatory Affairs/Clinical Affairs at BPV

14 since 2007. Plaintiffs expect that he is knowledgeable regarding the matters that were the

15 subject of his employment with Bard and his depositions taken on September 29, 2016,

16 and January 17, 2017, in the Bard IVC Filter MDL.

17

   Bryan Vogel
   c/o Counsel for Bard Peripheral Vascular and C. R. Bard

18

19 Mr. Vogel has been a Clinical Specialist II for Bard since 2012. Plaintiffs expect that he is

20 knowledgeable regarding the matters that were the subject of his employment with Bard

21 and his deposition taken on August 15, 2017, in the Bard IVC Filter MDL.

22

   John Weiland
   c/o Counsel for Bard Peripheral Vascular and C. R. Bard

23

24 Mr. Weiland has been the President and Chief Operating Officer of C. R. Bard throughout

25 the relevant time period. Plaintiffs expect that he is knowledgeable regarding the matters

26 that were the subject of his employment with Bard and his deposition taken on April 23,

27 2014, in *Phillips v. C. R. Bard, Inc.*, United States District Court, District of Nevada, Case

28 No. 3:12-cv-00344-RCJWGC.

1
2

        John Wheeler
        c/o Counsel for Bard Peripheral Vascular and C. R. Bard

3

Mr. Wheeler has been employed in the Quality Assurance department at BPV since 2012.

4

Plaintiffs expect that he is knowledgeable regarding the matters that were the subject of

5

his employment with Bard and his deposition taken on July 29, 2016, in the Bard IVC

6

Filter MDL.

7
8

        Mark Wilson
        c/o Counsel for Bard Peripheral Vascular and C. R. Bard

9

Mr. Wilson worked in the Sales department at BPV from 2006 through 2010 as a sales

10

training manager. Plaintiffs expect that he is knowledgeable regarding the matters that

11

were the subject of his employment with Bard and the deposition taken on January 31,

12

2017, in the Bard IVC Filter MDL.

13

      8.     Witnesses who are unlikely to be called at trial (Live and/or by deposition):

14

      N/A

15

**Defendants' Witnesses:**

16

     Because of the time limits, Defendants request that the following issues be

17

addressed during the Pretrial Conference. The parties have met and conferred on these

18

issues and, as set forth above, Plaintiffs do not believe these issues are appropriate for

19

inclusion in this pretrial order:

20

     1.     Given the large number of Bard employees and former who have been

21

subpoenaed by Plaintiffs, and for whom Bard has accepted subpoenas, and for the

22

efficiency of the trial under the time limits, Defendants request that, as the Court directed

23

and parties agreed in the previous MDL trials, the parties provide each other with the

24

names of witnesses who will be called live at least 48 hours  in advance of the witness

25

being called, and provide depositions designations at least 24 hours before the deposition

26

is played.

27

     2.     Dr. Murray Asch

28

a.  <u>Defendants' Contention</u>: Plaintiffs have indicated that they intend to call Dr. Murray Asch by prior testimony and designated from a deposition. Pursuant to FRE 804(b)(1), Defendants have designated from Dr. Asch's testimony in the *Booker* and *Jones* trials, and Plaintiffs have indicated that they object to the use of his prior trial testimony. Defendants are prepared to address this during the Pretrial Conference and, because there is no video of that testimony, Defendants seek the Court's direction as to how it prefers Dr. Asch's testimony should be presented at trial.

b.  <u>Plaintiffs' Contention</u>: Dr. Asch was deposed by agreement of the parties in Ontario, Canada on May 2, 2016, as part of the MDL 2641 generic discovery process. Both parties and their representatives to the Hyde action had an opportunity and similar motive at said deposition to develop testimony by direct, cross-, or redirect examination pursuant to 804(b), at said deposition. Accordingly, pursuant to Rule 32(a)(4) Fed. R. Civ. P. either party may use Dr. Asch's deposition testimony for any purpose. Plaintiffs object to the use of any prior trial testimony by Dr. Asch per Federal Rules of Evidence 801(c)(1) and (2), 802, and failure to satisfy 804.

3.   Plaintiffs have indicated that they intend to play the depositions of certain of Defendants' expert witnesses who Defendants do not intend to call during this trial. Defendants request the same ruling as the Court made in the previous trials that while Plaintiffs may use portions of the depositions, "they may not disclose through argument or deposition excerpts that the experts were originally retained by Defendants." (Dkt 10382, Page 3:22-26). And further that before a deposition of a Bard expert may be played that "there should be some showing … that no other expert of similar qualifications is available, or that the unavailable expert has some unique testimony to contribute." (*Id*., Page 4:104).

4.   Plaintiffs list two regulatory experts (Dr. Kessler and Dr. Parisian). Defendants request that Plaintiffs identify which one they intend to call.

4.      **Defendants' Witnesses:**

Defendants' witnesses who shall be called at trial (either live or by deposition):

**Robert Carr**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Carr is currently Vice President of International at BPV. He previously held the title of Senior Director of Research and Development at BPV, with responsibility for IVC filters. Mr. Carr may provide testimony regarding biomedical and biomechanical engineering generally, as well as testimony regarding the design, development, manufacture, testing, clearance, evolution, and use of Bard filters, specifically. Mr. Carr may also provide testimony that was the subject of his previous deposition testimony or the subject of declarations/affidavits he has submitted in this action.

**Andre Chanduszko**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Chanduszko is an employee of BPV working as a staff engineer with responsibilities related to the design, development, and testing of IVC filters. Mr. Chanduszko may provide testimony regarding biomedical and biomechanical engineering generally, as well as testimony regarding the design, development, manufacture, testing, clearance, evolution, and use of Bard filters, specifically. Mr. Chanduszko may also provide testimony that was the subject of previous disclosures or his previous deposition testimony.

**Chad Modra**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Modra was formerly Vice President of Quality Assurance at BPV, and is currently Staff Vice President of Operations at C. R. Bard, Inc. Mr. Modra may

47

testify regarding any and all aspects of Bard's quality assurance processes that are in place or that have been in place for Bard's retrievable IVC filters. Mr. Modra may testify regarding Bard's processes and procedures for addressing complaints, including complaint handling, investigations, and MDR reporting for its IVC filters. He may also testify to certain communications and inspections/audits with FDA. To the extent that evidence related to the FDA Warning and 483 Letters is admitted, Mr. Modra may offer testimony regarding the same. Mr. Modra may also provide testimony that was the subject of his previous deposition testimony or the subject of declarations/affidavits he has submitted in this action.

**Christopher S. Morris, M.D.**
Department of Radiology
The University of Vermont Medical Center
111 Colchester Avenue
Burlington, VT 05401
802-847-8359
Expert Witness

**Subject Matter:** Dr. Morris is a medical doctor and is a Fellow of the Society of Interventional Radiology. He is certified in Radiology and holds a Certificate of Added Qualifications in Vascular and Interventional Radiology. Dr. Morris is a Professor of Radiology and Surgery at the College of Medicine at the University of Vermont. Dr. Morris may provide expert testimony about the historical use, risks, and benefits of IVC filters; the health conditions that IVC filters are used to treat; alternate treatments for DVT and Pulmonary Embolism; and the medical literature related to IVC filters. Dr. Morris will also testify regarding his personal experience placing and retrieving IVC filters, including Bard IVC filters, and specifically that Bard retrievable filters are safe and effective. He may respond to assumptions, opinions, and testimony offered by various Plaintiffs' experts as they relate to the same. Dr. Morris also may provide expert testimony about Plaintiffs' medical treatment and her IVC filter. Dr. Morris is expected to offer opinions and testify consistent with his expert report(s) served in the MDL, and his previous deposition testimony.

**Mike Randall**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Randall is currently a Director of Research and Development for BPV. Mr. Randall may provide testimony regarding biomedical and biomechanical engineering generally, as well as testimony regarding the design, development, manufacture, testing, clearance, evolution, and use of Bard filters, specifically. Mr. Randall may also provide testimony that was the subject of his previous deposition testimony.

**John Van Vleet**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Van Vleet an employee of BPV. While at BPV, Mr. Van Vleet has been the Vice President of Regulatory and Clinical Affairs since 2007. Mr. Van Vleet may testify concerning any and all aspects of Bard's clinical affairs policies, procedures, and practices that are, or have been, in place with respect to Bard's IVC filters. Mr. Van Vleet may also testify regarding the regulatory clearance process and communications between the FDA and BPV. Mr. Van Vleet may also provide testimony that was the subject of his previous deposition testimony or the subject of declarations/affidavits he has submitted in this action.

Witnesses who may be called at trial (either live or by deposition):

**Murray Asch**
c/o Lakeridge Health Corporation
Director of Interventional Radiology
580 Harwood Ave. S
Oshawa, ON L1S 2J4

Dr. Asch is an Interventional Radiologist who was involved in a pilot study to assess the retrievability of the Recovery filter. Defendants expect that he is knowledgeable regarding the matters that were the subject of his study and work with Bard, as well as his deposition taken on May 2, 2016, in *In re Bard IVC Filters Prod. Liab. Litig.*, MDL No. 2641,

United States District Court, District of Arizona ("the Bard IVC Filter MDL") and his trial testimony in *Booker v. Bard* and *Jones v. Bard*, United States District Court, District of Arizona

**Brain Barry**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Barry is a former employee of C. R. Bard. He may testify regarding the matters that were the subject of his employment with Bard and his deposition.

**Kevin Boyle**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Boyle is currently the Vice President of Research and Development for BPV. Mr. Boyle may testify about BPV's policies and procedures in place for its research and development of its products, including IVC filters. He may testify regarding the testing, development, and design of Bard's IVC filters. He may also provide testimony that was the subject of his previous deposition testimony.

**Paul Briant, Ph.D., P.E.**
Exponent
149 Commonwealth Drive
Menlo Park, CA 94025
650-326-9400
Expert Witness

**Subject Matter:** Dr. Briant is a mechanical engineer who specializes in mechanical engineering, solid mechanics, and finite element analysis (FEA) of structures, including medical devices. He is a Principal Engineer with Exponent Failure Analysis Associates. Dr. Briant may provide expert testimony on mechanical engineering, solid mechanics, and finite element analysis (FEA). He may respond to assumptions, opinions, and testimony offered by Plaintiffs' expert Dr. McMeeking. Dr. Briant is expected to offer opinions and testify consistent with his expert report(s) served in the MDL, and his previous deposition

testimony.

**David Ciavarella, M.D.**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Dr. Ciavarella is an employee of C. R. Bard, Inc. He is currently Vice President, Corporate Clinical Affairs at Bard, and he has held that title since he began working for C. R. Bard in 2004. Dr. Ciavarella may testify concerning any and all aspects of Bard's clinical affairs policies, procedures, and practices that are, or have been, in place with respect to Bard's IVC filters. Dr. Ciavarella may also provide testimony that was the subject of his previous deposition testimony.

Based on reports received by Bard, Dr. Ciavarella may also testify concerning the rates of complications with Bard's IVC filters and analyses performed by Bard regarding adverse event rates. Dr. Ciavarella may also testify that the complication rates reported to Bard remain below the guidelines established by the Society of Interventional Radiologists and Bard's action limits. He may also provide testimony that was the subject of his previous deposition testimony.

**Robert Cortelezzi**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Cortelezzi was an employee at BPV from approximately 1990 to 2008; he was a Regional Manager from 2004 through 2008. He may testify regarding the matters that were the subject of his employment with Bard and his deposition taken on November 11, 2016, in the Bard IVC Filter MDL.

**Joni Creal**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Ms. Creal started with BPV in 2009. She is Associate Director of Regulatory Affairs. She may testify about BPV's overall regulatory strategy for its filter

lines. She may also testify concerning other regulatory options considered by BPV when it determined the best approach to gain FDA clearance for its products. Ms. Creal may testify regarding communications between the FDA and BPV concerning the clearance process for its filters, and any communication between BPV and the FDA concerning these matters. Ms. Creal may also testify regarding BPV's response to requests from the FDA. Ms. Creal may also testify concerning BPV's decision to conduct clinical trials, and the process and procedures for clinical trials and studies.

Ms. Creal may also testify regarding the steps that BPV took to ensure that the FDA was always abreast of complications, product improvements, and potential changes to IFUs for its filters. In this regard, Ms. Creal may testify regarding BPV's open and frank communications with the FDA and the FDA's appreciation for BPV's openness and honesty.

**Len DeCant**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. DeCant is a former employee of BPV. He served as Vice President of Research and Development from 2002 through 2007. Mr. DeCant may testify regarding any and all aspects of the design, development, testing, clearance, evolution, and use of Bard filters, including Bard's policies and procedures for design, testing, and evaluation of filters. Mr. DeCant may also provide testimony that was the subject of his previous deposition testimony.

**John DeFord**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter**: Dr. DeFord is currently Senior Vice President of Science, Technology and Clinical Affairs of C. R. Bard. Dr. DeFord may testify regarding any and all aspects of the design, development, testing, clearance, evolution, and use of Bard filters, including Bard's policies and procedures for design, testing, and evaluation of filters. Dr. DeFord

may also provide testimony that was the subject of his previous deposition testimony.

**Mary Edwards**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Ms. Edwards is a former Vice President for Regulatory/Clinical Affairs of BPV. She may provide testimony regarding of the regulatory clearance process undertaken by BPV for the Recovery® Filter including the 510(k) processes and actions taken by BPV. Additionally, Ms. Edwards may testify concerning BPV's overall regulatory strategy for its filter lines, including the regulatory approach taken by BPV concerning the Recovery® Filter. In addition, Ms. Edwards may also testify concerning other regulatory options considered by BPV when it determined the best approach to gain FDA clearance for its new product. Ms. Edwards may testify regarding the regulatory history of Bard's filters, communications between the FDA and BPV concerning the Recovery® Filter, the clearance process for the Recovery® Filter, and post-clearance communications BPV had with the FDA while she was employed with BPV and testimony that was the subject of her depositions.

**Audrey Fasching, Ph.D., P.E.**
Anamet, Inc.
26102 Eden Landing Road, Suite 3
Hayward, CA 94545
510-887-8811
Expert Witness

**Subject Matter:** Dr. Fasching is a metallurgical engineer with experience in the areas of failure analysis, welding, heat treatment, corrosion and biomaterials, including nitinol. She is a Senior Materials Engineer at Anamet. She may provide expert testimony about the properties and uses of nitinol in medical devices, industry standards for manufacture of medical device grade nitinol, her observations of the various filter conditions through examination of the filter at issue in this case and other Bard IVC filters. Dr. Fasching may respond to assumptions, opinions, and testimony offered by Plaintiffs' expert

Dr. McMeeking. Dr. Fasching is expected to offer opinions and to testify consistent with her expert report(s) served in the MDL, and her previous deposition testimony.

**David W. Feigal, M.D., M.P.H.**
11806 Barranca Road
Santa Rosa Valley, CA 93012
540-738-2550
Expert Witness

**Subject Matter:** Dr. Feigal is a medical doctor with a Master's Degree in Public Health in the fields of epidemiology and biostatistics. Dr. Feigal may provide expert testimony as an epidemiologist regarding the available resources for analysis of complications rates in IVC filters, including the SIR Guidelines and the limitations of those resources in accurately reporting rates, predicting rates, or comparing rates of those devices. He may respond to assumptions, opinions, and testimony offered by various Plaintiffs' experts as they relate to such analyses. Dr. Feigal is expected to offer opinions and testify consistent with his expert report served in the MDL, and his previous deposition testimony.

**Matt Fermanich**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Fermanich was a sales representative for Bard assigned to the territory where Plaintiffs' implanting facility is located at the time of Plaintiffs' filter implant. Mr. Fermanich will testify at trial consistent with his deposition taken in this MDL on March 27, 2017.

**Timothy Hug**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Hug is a Vice President of Sales for BPV. Mr. Hug will testify at trial about Bard's sales practices and procedures. Mr. Hug may also provide testimony that will be consistent with his deposition taken on August 23, 2017.

1
2
3

**Christopher Ganser**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

4 **Subject Matter:** Mr. Ganser is a retired employee of C. R. Bard who has worked for Bard

5 for approximately twenty-two years, and retired in 2011. He held various positions while

6 working for Bard, Vice President of Quality Assurance and Environmental Services and

7 Safety. Mr. Ganser may testify concerning how such policies, procedures, and practices

8 were developed, implemented and reviewed. Mr. Ganser may also testify concerning any

9 and all aspects of Bard's quality control and field assurance practices and procedures that

10 are, or have been, in place with respect to Bard's IVC filters as well as testimony that was

11 the subject of his deposition.

12
13
14

**Holly Glass**
8280 Greensboro Drive, Suite 601
McLean, VA 22101
703-752-1115
Fact Witness

15 **Subject Matter:** Ms. Glass was Vice President Government & Public Relations at C. R.

16 Bard from 2002 through 2009. She may testify regarding the matters that were the subject

17 of her employment with Bard and her deposition taken on September 23, 2016, in the

18 Bard IVC Filter MDL.

19
20
21
22

**Clement J. Grassi, M.D., FSIR**
18 Sussex Road
Winchester, MA 01890
617-732-7263
Expert Witness

23 **Subject Matter:** Dr. Grassi is a medical doctor and is a Fellow of the Society of

24 Interventional Radiology. He is certified in Radiology and holds a Certificate of Added

25 Qualifications in Vascular and Interventional Radiology. From 1985 to 2001, Dr. Grassi

26 held positions of Clinical Fellow, Instructor, and Assistant Professor of Radiology at

27 Harvard Medical School. He is currently affiliated with Hallmark Health and partners

28 Healthcare System. Dr. Grassi may provide expert testimony about the historical use,

risks, and benefits of IVC filters; the health conditions that IVC filters are used to treat; and his experience with the Society of Interventional Radiology, specifically including the history and use of the Quality Improvement Guidelines and Practice Parameters relating to IVC Filters that have been published by the SIR. He may also testify about the medical literature related to IVC filters. He may respond to assumptions, opinions, and testimony offered by various Plaintiffs' experts as they relate to the same. Dr. Grassi is expected to offer opinions and testify consistent with his expert report served in the MDL, and his previous deposition testimony.

**Mickey Graves**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Graves is a Senior Research and Development Engineer with BPV. Mr. Graves may testify about BPV's policies and procedures in place for its research and development of its products, including IVC Filters. He may testify regarding the testing, development, and design of Bard's IVC Filters. He may also testify regarding the evolution of Bard's IVC Filters, including the fact that Bard is constantly evaluating the medical devices it sells, and it is constantly striving to improve the performance of those devices. He may also provide testimony that was the subject matter of his previous deposition testimony.

**David Henry, M.D.**
Radiology Consultants of Iowa, PLC – Sioux City
2720 Stone Park Blvd.
Sioux City, IA 51104
404-322-6000
Fact Witness

**Subject Matter:** Dr. Henry will testify regarding his treatment of Plaintiffs related to her IVC filter. Dr. Henry is expected to testify consistent with his deposition taken on April 6, 2017.

**Janet Hudnall**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Ms. Hudnall is a former employee of BPV who worked for BPV from 1998 to 2008. While at BPV, Ms. Hudnall held various positions, including Senior Marketing Manager. In those roles, Ms. Hudnall was involved with and has personal knowledge of, among other things, BPV's marketing strategies, policies, and practices with regard to the Bard's IVC filter line of products. Ms. Hudnall may testify concerning BPV's marketing strategies, policies, and practices with regard to the Recovery® and G2® Filters.

Ms. Hudnall may also testify concerning the training provided by BPV to physicians to familiarize them with the implantation and retrieval of the G2® Filter. Ms. Hudnall may also testify concerning BPV's practices and policies regarding complaints that were communicated by users. Ms. Hudnall may also testify concerning BPV's decision to conduct a clinical trial, called the EVEREST Study, and issues and events associated with or related to the EVEREST Study. In this regard, Ms. Hudnall may testify concerning the selection and clearance process for securing investigators and investigation sites, the creation and development of the study protocol, the creation and development of the informed consent form, and the steps taken by BPV to ensure that the study ran properly and according to established guidelines. She may also provide testimony that was the subject of her previous deposition testimony.

**Brian Hudson**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Hudson has been an employee of BPV since 1999 as a Quality Engineering Technician, a Senior Engineering Technician, and a Quality Engineer, Mr. Hudson may provide testimony regarding filter risk assessment and analysis, review

of testing protocols and regulatory compliance data, and the creation of Failure Modes and Effects Analyses (FMEA) that assess the potential hazards related to filters and the mitigation of those hazards. He may also provide testimony that was the subject of his previous deposition testimony.

**Lisa Hyde**
May be contacted c/o Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, CA 92660
Fact Witness

**Subject Matter:** Ms. Hyde may offer testimony related to her alleged claims and damages in this litigation.

**Mark Hyde**
May be contacted c/o Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, CA 92660
Fact Witness

**Subject Matter:** Mr. Hyde may offer testimony related to his alleged claims and damages in this litigation and the damages claimed by Mrs. Hyde.

**William Kuo, M.D.**
Stanford University
300 Pasteur Dr. Rm H3652
MC 5642
Stanford, CA 94305
Fact Witness

**Subject Matter:** Dr. Kuo will testify regarding his treatment of Plaintiffs related to her IVC filter. Dr. Kuo is expected to testify consistent with his deposition taken on March 23, 2017.

**John Lehman, M.D.**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
Fact Witness

**Subject Matter:** Dr. Lehman was Group Medical Director and Vice President of Medical Affairs for C. R. Bard from 1991 to 1995; he was a consultant and acting Medical Director for C. R. Bard in 2003 and 2004. He may provide testimony regarding the matters that were the subject of his work with Bard and his depositions.

**William Little**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Little is BPV's former Vice President of Global Marketing. He may provide testimony regarding BPV's marketing strategies, policies, and practices with regard to Bard's IVC filter line of products. He may also testify regarding communications by Bard to health care providers regarding its filters and changes or revisions to those communications over time. He may also provide testimony that was the subject matter of his previous deposition testimony.

**Judy Ludwig**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Ms. Ludwig is currently Senior Manager of Field Assurance at BPV. Ms. Ludwig may testify regarding any and all aspects of Bard's quality assurance processes that are in place or that have been in place for Bard's retrievable IVC filters. Ms. Ludwig may testify regarding Bard's processes and procedures for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its filters. She may also testify to certain communications and inspections/audits with FDA. To the extent that evidence related to the FDA Warning and 483 Letters is admitted, Ms. Ludwig may offer testimony regarding the same. Ms. Ludwig may also provide testimony that was the subject of her previous deposition testimony.

**John McDermott**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. McDermott was President of BPV from 1996 through 2006. He may testify about matters that were the subject of his employment with Bard and his depositions.

59

**Patrick McDonald**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. McDonald is an employee of BPV as a Sales Representative and Field Sales Trainer. He may testify regarding the matters that were the subject of his deposition.

**Daniel Orms**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter**: Mr. Orms is a former employee of BPV. He may testify about matters that were the subject of his employment with Bard and his depositions.

**David Poll, M.D.**
Department of Cardiology
Penn Medicine
230 West Washington Square
Philadelphia, PA 19106
(215) 829-5064
Expert Witness

**Subject Matter:** Dr. Poll is a clinical cardiologist who is board certified in internal medicine, cardiovascular disease, and nuclear cardiology. Dr. Poll may provide expert testimony relating to Plaintiffs' IVC filter and any medical treatment related to her cardiac region as well as Plaintiffs' alleged cardiac-related health issues. He may respond to assumptions, opinions, and testimony offered by various Plaintiffs' experts as they relate to the same. Dr. Poll is expected to offer opinions and testify consistent with his expert report(s) served in the MDL, and his previous deposition testimony.

**Shari O'Quinn**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Ms. O'Quinn is a former employee of BPV who worked for BPV from 2003 to 2007. Ms. O'Quinn held three different positions while working for BPV, including Manager of Regulatory Affairs, Director of Regulatory Affairs, and Director of

Regulatory and Clinical Affairs. Ms. O'Quinn may testify concerning BPV's overall regulatory strategy for its filter lines, including the regulatory approach taken by BPV concerning the Bard filters. Ms. O'Quinn may testify regarding communications between the FDA and Bard concerning Bard's filters. She may also testify concerning Bard's post-market activities concerning Bard's IVC filters, including investigations, and communications with FDA. She may also provide testimony that was the subject of her previous deposition testimony.

**Abithal Raji-Kubba**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Ms. Raji-Kubba was the Vice President of Research and Development for BPV. She was with the company from at least 2007 through 2011. She may testify regarding her involvement in and knowledge of the design modifications that were made to Bard's IVC filter line of products and the premarket testing that was conducted on the modified devices. She may also testify regarding her knowledge regarding why these design changes were needed and if and to what extent they made each IVC filter a safer device and could have been instituted sooner. She may also provide testimony that was the subject of her previous deposition testimony.

**Kimberly Romney**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Ms. Romney is currently the Senior Product Manager for C. R. Bard, Inc. She may provide testimony regarding BPV's marketing strategies, policies, and practices with regard to Bard's IVC filter line of products. Ms. Romney may also testify regarding communications by Bard to health care providers regarding its filters and changes or revisions to those communications over time. She may also provide testimony that was the subject of her previous deposition testimony.

1

2

3

**Gin Schulz**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

4  **Subject Matter:** Ms. Schulz is a former employee of C. R. Bard, Inc. While at C. R.

5  Bard, Inc., Ms. Schulz was the Staff Vice President of Quality Assurance Operations.

6  Prior to working in this capacity, she worked for BPV as a Vice President of Quality

7  Assurance. Ms. Schulz may testify live at trial regarding any and all aspects of Bard's

8  quality assurance processes that are in place or that have been in place for Bard's IVC

9  filters. Ms. Schulz may testify regarding Bard's processes and procedures for adverse

10  complaint handling, complaint investigation, and reporting of adverse events to the FDA

11  regarding its filters. Ms. Schulz may also provide testimony that was the subject of her

12  previous deposition testimony.

13  Based on reports received by Bard, she may also testify regarding the rates of

14  complications with Bard's IVC filters and any analysis performed by Bard regarding

15  adverse event rates. Ms. Schulz may also testify that the complication rates with Bard's

16  commercially available filters (whether fracture, migration, perforation, or tilt) remain

17  below the guidelines established by the Society of Interventional Radiologists and Bard's

18  action limits. She may also testify that, upon receiving reports of adverse events, Bard was

19  and has been proactive in investigating those reports and analyzing whether the risk of

20  fracture for its products is in line with industry standards and guidelines, which it is and

21  always has been. She may also provide testimony that was the subject of her previous

22  deposition testimony.

23

24

25

**Christopher Smith**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

26  **Subject Matter:** Mr. Smith is a former employee of BPV. He may testify about matters

27  that were the subject of his employment with Bard and his deposition.

28

1

2

3

4

**Amy Sparks, M.D.**
Sparks Family Medicine, Ltd.
10155 W. Twain Ave., Suite #110
Las Vegas, Nevada 89147
(702) 722-2200 Phone
Fact Witness

5

6

**Subject Matter:** Dr. Sparks will testify regarding her medical treatment of Plaintiffs.

Dr. Sparks is expected to testify consistent with her deposition taken on July 7, 2017.

7

8

9

**William Stavropoulos, MD**
May be contacted c/o Samantha Conway, Christie & Young, P.C.
1880 John F. Kennedy Blvd, 10th Floor
Philadelphia, PA 19103
Fact Witness

10

11

12

13

14

15

16

17

18

19

20

21

**Subject Matter:** Dr. Stavropoulos was the principal investigator for his facility on the EVEREST study. He has written articles concerning IVC filters. Additionally, Dr. Stavropoulos may testify regarding his clinical experience with IVC filters such as his experience with and techniques for placing and retrieving IVC filters, as well as indications for the use of IVC filters. He may also testify regarding the advantages of retrievable IVC filters. He may discuss the benefits, risks, and potential complications of IVC filters, such as migration, fracture, and perforation, and the imaging and other evaluation of those events and their clinical significance, if any. He may also testify regarding the MAUDE database and whether it can be used to determine the fracture rate of a medical device. He may also discuss the dynamic nature of the IVC as well as the body's reaction to and endothelialization of IVC filters. He may also testimony about matters that were the subject of his deposition.

22

23

24

**Jack Sullivan**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

25

26

27

28

**Subject Matter**: Mr. Sullivan was a former Regional Sales Manager for BPV from 2005 to 2013. Prior to 2005, he held other sales positions with BPV. He may testify about BPV's sales practices and procedures, and the sales person's role in interacting with a doctor and the responsibility of sales people to report adverse events as well as about

1 matters that were the subject of his depositions.

2 **Mehdi Syed**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
3 201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
4 Fact Witness

5 **Subject Matter:** Mr. Syed is the current Vice President of Operations Finance at C. R.

6 Bard, Inc. Mr. Syed may testify about the net worth of BPV and C. R. Bard, Inc., as well

7 as the percentage of Bard's revenue attributable to BPV and filter products specifically.

8 Mr. Syed may also testify about the nature of Bard's shareholders and the process and

9 rationale behind dividend payments. He may also provide testimony that is the subject of

10 his deposition.

11 **Alex Tessmer**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
12 201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
13 Fact Witness

14 **Subject Matter:** Mr. Tessmer is a Product Manager at BPV. Mr. Tessmer was previously

15 employed by BPV as an engineer between 1997 and June 2005. In that position,

16 Mr. Tessmer contributed to filter product development occurring during the period 2002

17 to June 2005. He may provide general testimony regarding mechanical engineering and

18 specific testimony regarding product design, technology development, and materials

19 testing. He may also provide testimony that was the subject of his previous deposition

20 testimony.

21 **Ronald A. Thisted, Ph.D.**
Office of the Provost
22 The University of Chicago
Levi Hall, Room 432
23 5801 South Ellis Avenue
Chicago, IL 60637
24 773-702-5539
Expert Witness
25

26 **Subject Matter:** Dr. Thisted is a Professor in the Department of Public Health Sciences,

27 the Department of Statistics, the Department of Anesthesia & Critical Care, the

28 Undergraduate College, and the Committee on Clinical Pharmacology and

Pharmacogenomics at the University of Chicago. He is an expert in the fields of statistics, biostatistics, mathematics, and epidemiology. He may respond to assumptions, opinions, and testimony offered by various Plaintiffs' experts as they relate to the same. Dr. Thisted is expected to offer opinions and testify consistent with his expert report served in the MDL, and his previous deposition testimony.

**Donna-Bea Tillman, Ph.D., MPA, FRAPS**
Biologics Consulting
400 N. Washington Street, Suite 100
Alexandria, Virginia 22314
703-739-5695
Expert Witness

**Subject Matter:** Dr. Tillman may provide expert testimony concerning FDA regulatory requirements, FDA regulatory compliance, the FDA clearance process, and post-clearance monitoring requirements. Dr. Tillman may further testify about the specific steps Bard followed to obtain FDA clearance of its IVC filters, and Bard's compliance with post-clearance monitoring requirements. To the extent that evidence related to the FDA Warning and 483 Letters is admitted, Dr. Tillman may testify regarding the same. Dr. Tillman is expected to offer opinions and testify consistent with her expert report(s) served in the MDL, and her previous deposition testimony.

**Scott Trerotola, MD**
May be contacted c/o Samantha Conway, Christie & Young, P.C.
1880 John F. Kennedy Blvd, 10th Floor
Philadelphia, PA 19103
Fact Witness

**Subject Matter:** Dr. Trerotola may testify regarding his clinical experience with IVC filters such as his experience with and techniques for placing and retrieving IVC filters, as well as indications for the use of IVC filters. He may also testify regarding the advantages of retrievable IVC filters. He may discuss the benefits, risks, and potential complications of IVC filters, such as migration, fracture, and perforation, and the imaging and other evaluation of those events and their clinical significance, if any. He may also discuss the dynamic nature of the IVC as well as the body's reaction to and endothelialization of IVC filters. He may also provide testimony that was the subject of his previous deposition

1    testimony.

2    **Doug Uelman**
     May be contacted c/o Nelson Mullins Riley & Scarborough LLP
3    201 17th Street NW, Suite 1700, Atlanta, GA 30363
     404-322-6000
4    Fact Witness

5    **Subject Matter:** Mr. Uelmen was employed by Bard from 1996 to 2005 as Vice

6    President for Quality Assurance. Prior to working in that capacity, Mr. Uelmen was

7    BPV's Director of Quality Assurance. Mr. Uelmen may testify regarding any and all

8    aspects of Bard's quality control processes that are in place or that have been in place for

9    Bard's IVC filters. Mr. Uelmen may testify regarding Bard's processes and procedures for

10   adverse complaint handling, complaint investigation, and reporting of adverse events to

11   the FDA regarding its filters. He may also provide testimony that was the subject of his

12   previous deposition testimony.

13   **Carol Vierling**
     May be contacted c/o Nelson Mullins Riley & Scarborough LLP
14   201 17th Street NW, Suite 1700, Atlanta, GA 30363
     404-322-6000
15   Fact Witness

16   **Subject Matter**: Ms. Vierling is a former employee of BPV who held the position of

17   Director of Regulatory Affairs from 1992 through June 2002. Ms. Vierling may also

18   testify regarding the 510(k) submission submitted by Bard to the FDA for the Recovery®

19   Filter in 2002. In this regard, she may testify regarding her signing of the Truthfulness and

20   Accuracy Statement included in that submission. She may also testify regarding the cover

21   letter to the FDA that accompanied the 510(k) submission, why it identified Kay Fuller as

22   the new FDA contact person for this device, how she signed that cover letter, and why she

23   signed the cover letter in the manner that she did. She may also testify to her interactions

24   with Kay Fuller and that Ms. Fuller never expressed any concerns to her regarding the

25   Recovery® Filter 510(k) submission, the testing of that device, the safety or efficacy of

26   that device, or the Asch clinical study regarding that device. She may also provide

27   testimony that was the subject of her previous deposition testimony.

28

66

1

2

3

**Bryan Vogel**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

4  **Subject Matter:** Mr. Vogel is a Principal Clinical Assurance Specialist at BPV. He may

5  testify regarding his role and Bard's processes, procedures, and practices for adverse

6  complaint handling, complaint investigation, and reporting of adverse events to the FDA

7  regarding its filters. He may also testify regarding the qualifications and training of BPV's

8  Field Assurance personnel. He may also provide testimony that was the subject matter of

9  his previous deposition testimony.

10

11

12

**John Weiland**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

13  **Subject Matter:** Mr. Weiland is a retired President and Chief Operating Officer of Bard.

14  He may testify regarding the matters that were the subject of his deposition.

15

16

17

**John Wheeler**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

18  **Subject Matter:** Mr. Wheeler is a former Field Assurance Engineering Manager at BPV.

19  He may testify regarding Bard's processes, procedures, and practices for adverse

20  complaint handling, complaint investigation, and reporting of adverse events to the FDA

21  regarding its filters. He may also testify regarding the qualifications and training of BPV's

22  Field Assurance personnel. He may also testify regarding BPV's tracking and trending of

23  complaints regarding Bard IVC filters. He may also provide testimony that was the

24  subject matter of his previous deposition testimony.

25

26

27

**Steve Williamson**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

28  **Subject Matter:** Mr. Williamson is the current President of BPV. Mr. Williamson may

testify concerning BPV's broad and overarching policies as a company and specifically concerning Bard's IVC filters, including, but not limited to, the companies' business practices, research and development, manufacturing, marketing and sales policies, and regulatory strategies and policies. He may also provide testimony that was the subject of his previous deposition testimony.

**Mark Wilson**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mark Wilson was the Director of Sales, Training, and Development at C. R. Bard, Inc. from 2004 to 2011. Mr. Wilson may provide testimony regarding Bard's sales practices and procedures. He may also testify regarding training programs for Bard's sales personnel. He may also provide testimony that was the subject of his previous deposition.

**Natalie Wong**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Ms. Wong is an employee of BPV. She began working for the company in 2002 and has been the Quality Engineering Manager in Field Assurance since 2007. Prior to working in this capacity, she worked for BPV as a Senior Quality Engineer. Ms. Wong may testify regarding any and all aspects of Bard's quality control and field assurance processes that are, or have been, in place for Bard's IVC filters. Ms. Wong may testify regarding Bard's processes and procedures for adverse complaint handling, complaint investigation, trending analysis, root cause analysis, data integrity audits, and design failure mode analysis relating to Bard's IVC filters.

Based on reports received by Bard, she may also testify regarding the rates of complications with Bard's IVC filters and analyses performed by Bard regarding adverse event rates. She may also provide testimony that was the subject of her previous deposition testimony.

**F.    LIST OF EXHIBITS**

1.    The parties have listed exhibits on their exhibit lists subject to pending motions *in limine* and other rulings by the Court. By listing exhibits, the parties do not contend that the exhibits are necessarily admissible and do not intend to waive any objection they have to the admissibility of the same.

2.    The parties have met and conferred on the issue of exchanging and providing to the Courtroom Deputy Clerk with impeachment exhibits 48 hours in advance of the trial. The parties agree they would like to provide any impeachment exhibits to the Courtroom Deputy Clerk, 24 hours before their intended use.

3.    If the Court grants, Defendants' Motion in Limine relating to Recovery migration deaths, Defendants propose that the parties use the same redactions to exhibits agreed to and approved by the Court in the *Jones* trial.

4.    The following Exhibit Lists are attached hereto: **Exhibit A** – Plaintiffs' Exhibit List with Defense Objections; **Exhibit B** – Defendants' Additional Exhibit List with Plaintiffs' and Defendants' Objections.

a.    <u>Defendants' Contention</u>:

Many of the documents listed as potential exhibits were produced by Defendants subject to a Protective Order (Dkt. 268 and 269). Throughout this litigation the parties have been filing and moving to seal certain documents pursuant to that Order. However, the Protective Order does not cover the use of documents as exhibits at trial. (See, Dkt 268, Para, 28). The Court addressed this in the prior bellwether trials and in its ruling on Bard's Motion for reconsideration. Pursuant to the Court's ruling in Dkt 12069, Defendants raise this issue to preserve it and are prepared to address it during the Pretrial Conference. Until the exhibits are admitted, Defendants do not know which exhibits, if any, they need to move to seal. Further, many of the exhibits are admitted, but the substance is not discussed in open Court. Defendants request that the exhibits be maintained by the Court reporter and not made available publicly throughout the trial and until the Court

1    rules on any motion to seal, and that the Court set a briefing schedule for a post-

2    trial briefing schedule on a motion to seal.

3          b.    <u>Plaintiffs' Contention:</u>

4          Plaintiffs disagree with this Defendants' Contention and maintain that

5    exhibits are public record at the time admitted into evidence. "It is well established

6    that the release of information in open court is a publication of that information."

7    *Littlejohn v. BIC Corp.,* 851 F.2d 673, 680 (3d Cir. 1988). Further, Plaintiffs

8    contend Local Rule 5.6 regards the pre-trial sealing of exhibits and has no

9    application to the use of exhibits at trial.

10         As the Court explained in its Orders, "'the release of information in open

11   court is a publication of that information and . . . operates as a waiver of any rights

12   a party had to restrict its future use.'" (Doc. 11642 at 2; Doc. 12069 at 3; (quoting

13   *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CIV.A. 09-290, 2013 WL

14   1336204, at \*5 (W.D. Pa. Mar. 29, 2013)). To the extent an exhibit was not merely

15   admitted into evidence but also was published or discussed in open court, the

16   exhibit is no longer confidential, and Defendants have waived the right to have the

17   exhibit sealed. *See In re Google Inc. Gmail Litig.,* No. 13-MD-02430-LHK, 2014

18   WL 10537440, at \*6 (N.D. Cal. Aug. 6, 2014) ("[W]here, as here, the parties did

19   not request closure of the courtroom . . . and the disclosures were not inadvertent,

20   the Court will not permit an ex post facto redaction of statements made in open

21   court[.]"); *Fleming v. Escort, Inc.,* No. CV 09-105-S-BLW, 2013 WL 1290418, at

22   \*4.

23         5.    The following exhibits are admissible in evidence and may be marked in

24   evidence by the Clerk:

25              a.    Any exhibit listed in **Exhibits A and B** that is not objected to

26                    is agreed to by the parties as admissible.

27         6.    As to the following exhibits, the parties have reached the following

28   stipulations:

70

1        The following records are stipulated to be authentic and satisfy the business

2    records exception, but the parties reserve all other available objections:

3        a.    Plaintiffs' medical records and bills.

4        7.    As to the following exhibits, the party against whom the exhibit is to be

5    offered objects to the admission of the exhibit and offers the objection stated below:

6        a.    <u>Plaintiffs' Exhibits</u>: See attached **Exhibit A**.

7        b.    <u>Defendants' Exhibits</u>: See attached **Exhibit B**.

8        The parties shall submit their exhibit lists in writing, five days before trial, in a

9    format to be designated by the Court at the Final Pretrial Conference, in WordPerfect®

10    9.0 format either by e-mail to Nancy_Outley@azd.uscourts.gov or on an IBM-compatible

11    computer disk.

12    **G.    DEPOSITIONS TO BE OFFERED**

13        1.    Per the deadline set by the Court, on August 22, 2018, the parties submitted

14    to the Court their respective new depositions with designations not previously reviewed

15    by the Court with subsequent rulings on objections with the portions to be read or

16    submitted at trial identified by page and line number. Pursuant to their stipulation and the

17    Court's approval, on September 4, 2018, the parties will submit any additional and/or

18    withdrawn case specific deposition testimony and objections based on the Court's ruling

19    on  Bard's Motion for summary judgment, pending orders on Motions in Limine, or the

20    unique aspects of Wisconsin law to deposition testimony previously reviewed by the

21    Court in the prior bellwether trials.

22        2.    The parties have included deposition designations subject to pending

23    motions in limine and other rulings by the Court. By making those designations the parties

24    do not contend that the testimony is necessarily admissible and do not intend to waive any

25    objection they have to the admissibility of the same.

26    **H.    MOTIONS IN LIMINE (JURY TRIAL)**

27        All motions *in limine* have been filed and fully briefed. Those that have not yet

28    been ruled on are set forth in Section I, below.

1    **I.**    **LIST OF PENDING MOTIONS**

2        1.    Plaintiffs' MIL #1 To Exclude Or Limit FDA Evidence That Is Beyond The

3            Scope Of The Court's Order

4        2.    Plaintiffs' MIL #2 To Exclude Or Limit Argument And Evidence Re The

5            Surgeon General' Call To Action

6        3.    Plaintiffs' MIL #3 To Exclude Evidence That November 2012 And

7            May 2013 Incidents Caused Or Contributed To Hyde's G2X Filter

8            Failure/Fracture

9        4.    Plaintiffs' MIL #4 To Exclude Or Limit Argument And Evidence Regarding

10            Bard's G2X IFU

11        5.    Plaintiffs' MIL #5 To Exclude Evidence Of Interventional Radiologist

12            ("SIR") "Guidelines"

13        6.    Defendants' MIL #1 To Exclude Evidence Of Recovery Filter Cephalad

14            Migration Deaths

15        7.    Defendants' MIL #2 To Exclude Evidence Of Marketing Materials

16        8.    Defendants' MIL #3 To Exclude Evidence Of The SNF As A Reasonable

17            Alternative Design

18        9.    Defendants' MIL #4 To Exclude Testimony About Personal Opinions Of

19            Dr. Muehrcke

20        10.    Defendants' MIL #5 To Exclude Opinion Testimony Of Dr. Kandarpa

21        11.    Defendants' MIL #6 To Exclude Evidence And Argument About Informed

22            Consent

23        12.    Defendants' Motion To Bifurcate Trial And Plaintiffs' Response In

24            Opposition

25    **J.**    **PROCEDURES FOR EXPEDITING TRIAL**

26        The parties agree to the following procedures that might expedite trial to the extent

27    possible: (a) presenting stipulated summaries of work history and professional background

28    and qualifications of witnesses rather than using deposition excerpts. The parties agree to

72

1   meet and confer and at least 24 hours before a deposition is played to provide the

2   proposed summary to opposing counsel for review and approval;  (b) stipulations on

3   authenticity and foundation; and (c) using the courtroom technology to expedite the

4   presentation of evidence. The parties will also contact Nancy Outley at 602-322-7645 to

5   arrange a time to visit the courtroom and examine its technology.

6   **K.   ESTIMATED LENGTH OF TRIAL**

7           All times set forth by the parties below are approximate and given to the best of

8   counsels' ability. Nothing about these stated times is intended to limit the total time

9   available to either party in the event less time is used for one of the categories, as that time

10  will simply be reallocated to another category.

11          <u>33 hours for Plaintiffs</u>

12                  1.5 hours opening statement

13                  2.5 hours for closing, rebuttal and punitive damages

14                  29 hours for direct and cross examination

15          <u>30 hours for Bard</u>

16          Bard objects to any additional time being added to the trial after the entry of this

17  Pretrial Order. In the previous MDL trials, Bard made strategic decisions based on the

18  time allocated by the Court from the very outset of trial. Those strategic decisions

19  included, but were not limited to, determining the amount of time to spend on the cross-

20  examination of several of the Plaintiffs' principal experts. The Defendants believe that the

21  Court's decision to afford the Plaintiffs additional time, while certainly within the Court's

22  discretion, unfairly penalized the Defendants for abiding by the limitations set by the

23  Court and caused prejudice (particularly given how the Plaintiffs squandered the time

24  originally provided with repetitive questioning and the frequent focus on collateral issues).

25  *See*, *e.g.*, *Amarel v. Connell*, 102 F.3d 1494, 1514 (9th Cir. 1996), *as amended* (Jan. 15,

26  1997); see also *Gen. Signal Corp. v. MCI Telecommunications Corp*., 66 F.3d 1500, 1509

27  (9th Cir. 1995) (noting unfairness to defendant in providing Plaintiffs additional time after

28  defendant had already made strategic decisions based on the court's original allocation).

**L.    JURY DEMAND**

A jury trial has been requested.

     1.    The parties stipulate that the request was timely and properly made.

**M.    JOINT PROPOSED JURY INSTRUCTIONS, JOINT PROPOSED VOIR DIRE QUESTIONS, AND PROPOSED FORMS OF VERDICT FOR JURY TRIALS**

The joint Proposed Jury Instructions, joint Proposed *Voir Dire* Questions, and Proposed Forms of Verdict shall be filed in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

**N.    CERTIFICATIONS**

The undersigned counsel for each of the parties in this action does hereby certify and acknowledge the following:

     1.    All discovery has been completed.

     2.    The identity of each witness has been disclosed to opposing counsel. Defendants cannot stipulate to this and incorporate their objection in Section E.

     3.    Each exhibit listed herein: (1) is in existence; (2) is numbered; and (3) will be disclosed and shown to opposing counsel at a later date mutually agreeable to the parties. The parties agree demonstrative exhibits will be exchanged or made available for inspection at a later date agreed to by the parties.

     4.    The parties agree and stipulate that the statement of the case used in the juror questionnaire approved by the Court is to be used as the parties' joint statement of the case.

     5.    The parties have complied in all respects with the mandates of the Court's Rule 16 Scheduling Order and Order Setting Final Pretrial Conference.

6.    The parties have made all of the disclosures required by the Federal Rules of Civil Procedure (unless otherwise previously ordered to the contrary).

7.    The parties acknowledge that once this Proposed Final Pretrial Order has been signed and lodged by the parties, no amendments to this Order can be made without leave of Court.

**O.    INFORMATION FOR COURT REPORTER**

In order to facilitate the creation of an accurate record, the Parties will file a "Notice to Court Reporter" **one week before trial** containing the following information that may be used at trial:

1.    Proper names, including those of witnesses.

2.    Acronyms.

3.    Geographic locations.

4.    Technical (including medical) terms, names or jargon.

5.    Case names and citations.

6.    Pronunciation of unusual or difficult words or names.

//
//
//
//
//
//
//
//
//
//
//
//

1    The parties will also send to the court reporter a copy of the concordance from key

2    depositions.

3    LOPEZ McHUGH LLP                     NELSON MULLINS RILEY &
                                          SCARBOROUGH LLP
4

5    By: s/ Ramon Rossi Lopez
         Ramon Rossi Lopez               By: s/ Richard B. North, Jr.
6        (admitted *pro hac vice*)           Richard B. North, Jr.
         CA Bar No. 86361                    (admitted *pro hac vice*)
7        100 Bayview Circle, Suite 5600      Georgia Bar No. 545599
         Newport Beach, California 92660     James F. Rogers
8                                            (admitted *pro hac vice*)
         Mark S. O'Connor                    South Carolina Bar. No. 012942
9        GALLAGHER & KENNEDY                 Elizabeth C. Helm
         2575 East Camelback Road            (admitted *pro hac vice*)
10       Phoenix, Arizona 85016-9225         Georgia Bar No. 289930
                                             Matthew B. Lerner
11       *Attorneys for Plaintiffs*          (admitted *pro hac vice*)
                                             Georgia Bar No. 446986
12                                           201 17th Street, NW / Suite 1700
                                             Atlanta, GA  30363
13

14                                           James R. Condo
                                             SNELL & WILMER LLP
15                                           One Arizona Center
                                             400 E. Van Buren, Suite 1900
16                                           Phoenix, AZ 85004-2202
17

18                                           *Attorneys for C. R. Bard, Inc. and Bard*
                                             *Peripheral Vascular, Inc.*
19

20

21

22

23

24

25

26

27

28

1

_____

2          Based on the foregoing,

3          **IT IS ORDERED** that this Proposed Final Pretrial Order jointly submitted by the

4

5   parties is hereby **APPROVED** and **ADOPTED** as the official Pretrial Order of this Court.

6          DATED this ___ day of _____, 2018.

7

8

9                                    _____

10                                              David G. Campbell
                                        United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28