Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California  92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
602-530-8000

*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC |
| LISA HYDE and MARK HYDE, a married couple,<br><br>Plaintiffs,<br><br>v.<br><br>C.R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, an Arizona corporation,<br><br>Defendants. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 5 TO EXCLUDE OPINION TESTIMONY OF DR. KANDARPA**<br><br>(Assigned to the Honorable David G. Campbell)<br><br>(Oral Argument Requested) |

## MEMORANDUM OF LAW IN SUPPORT

**I. Dr. Kandarpa's Testimony Is Proper Expert Opinion from a Fact Witness.**

Bard has overlooked the obvious in an attempt to exclude evidence that it knows is appropriate, albeit, not positive for Bard – Dr. Kandarpa is an interventional radiologist, his testimony is based on his observations while working as an agent for Bard. In his deposition on July 19, 2018 (referenced *infra* as Exhibit A), foundation was laid that qualified Dr. Kandarpa to provide specific opinions in connection with his work for Bard as medical monitor of the EVEREST retrievability trial. He was deposed specifically about his "role as medical monitor in that study." *See* Kandarpa Dep. Tr. at 24:9-15.

What matters here is the reliability of Dr. Kandarpa, which is dictated by his own personal knowledge and experience of the subject matter. Bard would be foolhardy to contend that Dr. Kandarpa is not qualified to render opinions about IVC filters – Bard hired and paid Dr. Kandarpa to be the medical monitor of Bard's EVEREST study because of Dr. Kandarpa's medical expertise in the field of interventional radiology. That he happens to also be a fact witness because of this involvement is of little consequence to determining the appropriateness of his testimony. Any opinion testimony by Dr. Kandarpa was "rationally based on (his) perception," and/or "helpful to clearly understanding (his) testimony or to determining a fact in issue." *Federal Rules of Evidence* ("FRE") 701(a) and (b). His responsibility as medical monitor was to adjudicate adverse events reported by study investigators and determine whether the event was related to the G2 filter. *See* Kandarpa Dep. Tr. at 24:16-25:3. Dr. Kandarpa's analysis included review of patient records, imaging studies, study reports, and adverse event summaries. *Id.* at 30:13-31:16. As such, Dr. Kandarpa's opinions are based on his observations, as an interventional radiologist, while working in his role as medical monitor. *Id.* at 35:6-13.

Demonstrating either ignorance or obtuseness, Bard states testimony that "results from process of reasoning which can be mastered only by specialists in the field," cannot be offered as lay witness testimony. Plaintiffs agree. Bard, however, intentionally omits that Dr. Kandarpa *is* a "specialist in the field" in which his testimony was provided. *See* Bard MIL No. 5 at 2:11-13. His opinions are rationally based on his perception as an interventional radiologist with the amount and level of knowledge, experience, and expertise. Indeed, Dr. Kandarpa knows what "a reasonable and practicing physician would want to know" (and, thus what an ordinary consumer like Mrs. Hyde would expect) with respect to the risks of IVC filters because he is one himself, and his qualifications as an expert in the field have been established. *See* Kandarpa Dep. Tr. at 131:3-10.

Additionally, Bard failed to recognize that one of Dr. Kandarpa's specific responsibilities as medical monitor of the EVEREST study, as bestowed by Bard, was to "establish adverse event complication definition" and "review and adjudicate

complications" and "adverse events as they occur. *Id.* at 146:23-147:16, 148:13- 17. Performance evaluation of the G2 filter (tilt, migration, perforation, fracture) was part of Dr. Kandarpa's role as the medical monitor. *Id.* at 53:9-12, 58:7-10, 93:8-11.

Taking one of Bard's own examples [*see* Bard MIL No. 5 at 2:6-13], Bard argues Dr. Kandarpa is drawing inferences from "undisclosed knowledge bases" because, with regard to filter migration, Dr. Kandarpa states that he did not form a specific opinion *during* the EVEREST study and "[i]t's something that happens that's generally known…" The very next question, which Bard omits, is, "Did you – are you saying you understood that was going on with the G2 filter?  Yes…in the study, yes." *See* Kandarpa Dep. Tr. at 60:18-22. So, yes, Dr. Kandarpa was aware of the phenomenon because of his prior experiences. Importantly, however, this prior belief was reaffirmed and demonstrated in the EVEREST study, over which he supervised and monitored closely <u>for Bard</u>.

Bard also complains that Dr. Kandarpa was not designated as an expert by Plaintiffs and that his testimony is somehow a "surprise" to Bard.  But, this bridge has been crossed and the Court ordered that Plaintiffs could notice and take the deposition of Dr. Kandarpa.[1] And, Bard, in turn, was provided equal opportunity to discover and prepare for the deposition of Dr. Kandarpa.  Dr. Kandarpa is not – nor would he have been – a retained expert by Plaintiffs.  He is a fact witness with expert qualifications in the field to which his testimony relates.  This happens all the time in cases involving science and medicine.

Further, Dr. Kandarpa was deposed as a witness "identified with an adverse party," pursuant to Federal Rules of Evidence ("FRE") 611(c)(2).  Dr. Kandarpa was contracted by Bard Peripheral Vascular (not Boston Biomedical Associates) as the Clinical Events Coordinator ("CEC") for the [EVEREST] study.  *See* Kandarpa Dep. Tr. at 205:20- 208:19.

---

[1] Plaintiffs sought to call Dr. Kandarpa live for trial in the *Booker* and *Jones* cases, but were denied, in part, for the reasons Bard asserts Plaintiffs should be denied now. The Court has revisited this important area of discovery and considered briefing and oral argument by both sides before ordering the parties can utilize testimony from Dr. Kandarpa for future MDL bellwether cases.

3

1     For the above stated reasons, Plaintiffs respectfully request that Defendants Motion in Limine No. 5 be denied.

RESPECTFULLY SUBMITTED this 28th day of August 2018.

    GALLAGHER & KENNEDY, P.A.

    By:*/s/ Mark S. O'Connor*
        Mark S. O'Connor
        2575 East Camelback Road
        Phoenix, Arizona 85016-9225

    LOPEZ McHUGH LLP
        Ramon Rossi Lopez (CA Bar No. 86361)
        (admitted *pro hac vice*)
        100 Bayview Circle, Suite 5600
        Newport Beach, California 92660

    *Co-Lead/Liaison Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 28th day of August 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

    */s/ Jessica Gallentine*

4