Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
602-530-8000

*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC |
| LISA HYDE and MARK HYDE, a married couple,<br><br>Plaintiffs,<br><br>v.<br><br>C.R. BARD, INC., a New Jersey corporation and BARD PERIPHERAL VASCULAR, an Arizona corporation,<br><br>Defendants. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* 6 TO EXCLUDE EVIDENCE OF AND ARGUMENT ABOUT INFORMED CONSENT**<br><br>(Assigned to the Honorable David G. Campbell)<br><br>(Oral Argument Requested) |

**MEMORANDUM OF LAW IN SUPPORT**

The Court granted Defendants' Motion for Summary Judgment with respect to Plaintiffs' failure to warn claims focused only on Mrs. Hyde's implanting physician, Dr. Henry, finding that "Plaintiffs have failed to present any evidence that an inadequate warning caused Mrs. Hyde's injuries, as required under Wisconsin law." *See* Doc. 12007, at 14:19-21. The Court further concluded "Plaintiffs identify no evidence suggesting that Mrs. Hyde would have chosen not to receive a G2X filter had she been informed the device had an increased risk of adverse events relative to other IVC Filters. Nor do Plaintiffs present evidence from which a reasonable inference can be drawn that an adequate warning would have altered Dr. Henry's decision to use a G2X filter." *Id.* at 15:10-15. This Order

1    centers on the facts and circumstances regarding the decision to use the Bard G2X filter,
2    and is silent about Bard's continuing duties to Plaintiffs, post-implantation.

3    Through common law decisions, Wisconsin imposes a duty to implement post-sale
4    warnings and remedial measures. *See Kozlowski v. John E. Smith's Sons Co.*, 87 Wis. 2d
5    882, 898-99, 275 N.W.2d 915, 922-23 (1979); *Sharp v. Case Corp.*, 227 Wis. 2d at 24, 595
6    N.W.2d at 39 (1999). Factors to consider in determining whether there is a continuing post-
7    sale duty to warn include "the nature of the industry, warnings given, the intended life of
8    the machine, safety improvements, the number of units sold and reasonable marketing
9    practices, combined with the consumer expectations inherent therein." *Id*.

10   Wisconsin federal courts have also recognized a manufacturer's post-sale duties. *See*
11   *Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311, 1318-19 (7th Cir. 1983)
12   (recognizing a post-sale duty to warn or retrofit); *Olsen v. Ohmeda Div. of Boc Group, Inc.*,
13   863 F. Supp. 870, 873-74 (E.D. Wis. 1994) (recognizing the post-sale duty to warn, but
14   holding that the duty did not apply because the manufacturer was neither aware nor should
15   have been aware of the defect before the injury).

16   Mrs. Hyde's Bard G2X filter was implanted on February 25, 2011 and removed in a
17   complex procedure on August 26, 2014. Evidence will be presented that ongoing post-sale
18   surveillance by Bard should have led to communications to physicians of the need to
19   monitor patients who received Bard permanent, optional filters and that Bard filters were
20   found to have increased risks caused by inherently dangerous design features of Bard filters,
21   and the need to take steps to remove it before increasing the risk of suffering injuries. Bard
22   should have also communicated the availability of safer alternative permanent and optional
23   Bard filter designs and been forthright why these alternative designs were necessary. This
24   information should have been conveyed to the medical community including Mrs. Hyde's
25   post-implant treating physicians. Mrs. Hyde will testify at trial that had she been provided
26   with this data known only to Bard, she would have taken steps to have the G2X filter
27   removed long before her filter suffered the failures, and she suffered injury.

28

Evidence provided from various Plaintiffs' experts regarding Bard's need to provide the medical community with additional information about the IVC filters so that physicians could engage in appropriate informed consent with patients regarding Bard's G2X IVC filter is still wholly relevant to Plaintiffs' case, and unaffected by the Court's prior ruling on Defendants' Motion for Summary Judgment.

Moreover, the punitive damages claim remains. Bard's failure to properly inform doctors and, by extension, patients of additional information about its IVC filters once implanted in Mrs. Hyde is direct evidence showing that Defendants acted maliciously toward Plaintiff and in intentional disregard of her rights. Wis Stat § 895.043. [1]"A review of our common law reveals that the phrase "disregard of rights" described a type of conduct that involved indifference on the defendant's part to the consequences of his or her actions." *Sharp*, 227 Wis.2d at 21, 595 N.W.2d 380.

Reports of Drs. Kinney, Roberts, Kalva, and Hurst regarding "informed consent" each show Bard's disregard toward the rights of all patients, including Mrs. Hyde. As opined by Drs. Kinney, Roberts and Kalva, patients need "the safety and effectiveness data that companies possess from their testing and monitoring of their medical devices, especially implanted devices such as IVC filters, to allow physicians to provide full and fair balanced informed consent to patients for whom these devices are prescribed and indicated." *See*, Def. Mot. *in Limine* No. 5, Exhibit A Report of Kinney, et al. at 9. These opinions are probative of informed consent and doctors'/patients' expectations, and Bard's choice to withhold the information was a disregard of Mrs. Hyde's rights as a patient. Withholding critical safety information amounts to a purposeful disregard of rights and shows that Bard was aware that withholding such information would impair doctor decisions regarding care of patients with filters, and result in harm to patients like Mrs. Hyde. Importantly, Bard's conduct need not be directly aimed at Mrs. Hyde herself. Therefore, the Court's Summary Judgement Order, which addressed Mrs. Hyde's choice at

---

[1] A person acts in an intentional disregard of the rights of the plaintiff if the person acts with a purpose to disregard the plaintiff's rights or is aware that his or her acts are substantially certain to result in the plaintiff's rights being disregarded. Wis Stat § 895.043

3

implant, should not have bearing on post-sale evidence of Bard's conduct. *See, Strenke v. Hogner*, 279 Wis. 2d 52, 58 (Wis. 2005) (holding that a defendant's conduct giving rise to punitive damages need not be directed at the specific plaintiff in order to recover under the statute).

The same applies to Dr. Hurst's expert report, opinions, and potential trial testimony as it relates to "informed consent." Sections (b), (c), and (d) of Dr. Hurst's report go directly to Mrs. Hyde's punitive damages claims. *See*, Def. Mot. *in Limine* No. 5, Exhibit B, Report of Darren Hurst, M.D. The reasonable expectations of physicians for medical devices, the ethics behind the AMA codes as the standard of care relative to informed consent, patient communication, decision making, and opinions that Bard failed to properly notify doctors and patients of important safety information are clear and key examples of Bard showing an indifference to the consequences of its actions. Dr. Hurst sets forth AMA codes as the standard of care for informed consent and then opines that a failure to follow them while continuing to market a medical device (e.g., the G2X for the years that followed Mrs. Hyde's implantation) violated the standard of care. *Id.* at Section (c) at 7. In conjunction with the fact, as mentioned above, Mrs. Hyde would have taken steps to have her G2X removed before realizing its catastrophic failure, Bard's failure to comply with the aforementioned informed consent standards of care is evidence Plaintiffs can present to show that Bard was aware that their actions were substantially certain to result in Mrs. Hyde's rights being disregarded.

Plaintiffs respectfully request that Defendants Motion *in Limine* No. 6 be denied.

4

RESPECTFULLY SUBMITTED this 28th day of August 2018.

GALLAGHER & KENNEDY, P.A.

By: */s/ Mark S. O'Connor*
Mark S. O'Connor
2575 East Camelback Road
Phoenix, Arizona 85016-9225

LOPEZ McHUGH LLP
Ramon Rossi Lopez (CA Bar No. 86361)
(admitted *pro hac vice*)
100 Bayview Circle, Suite 5600
Newport Beach, California 92660

*Co-Lead/Liaison Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of August 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/ Jessica Gallentine*