**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, _____ Lisa Hyde and Mark E. Hyde, a married couple,     Plaintiffs, v. C. R. Bard, Inc., a New Jersey corporation; and Bard Peripheral Vascular, Inc., an Arizona corporation,     Defendants. | No. MDL 15-02641-PHX-DGC No. CV-16-00893-PHX-DGC **ORDER** |

After the close of Plaintiffs' evidence at trial, Defendants made a motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. *See* Doc. 12778. Defendants have filed a written statement of authorities in support of the motion, to which Plaintiffs have responded. Docs. 12775, 12780. For the reasons stated below, the Court will grant the motion in part and deny it in part.

**I.    Rule 50 Standard.**

Rule 50 provides that a court may grant judgment as a matter of law if a party has been fully heard on an issue and the court finds that "a reasonable jury would not have a

legally sufficient evidentiary basis to find for the party on that issue[.]" Fed. R. Civ. P. 50(a)(1). The Rule 50 standard mirrors the standard for granting summary judgment under Rule 56 – "the inquiry under each is the same." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding whether to grant a Rule 50 motion, "the court 'may not make credibility determinations or weigh the evidence.'" *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000)). Rather, the court "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Reeves*, 530 U.S. at 150. The test is whether, "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

**II. Discussion.**

Defendants seek judgment as a matter of law on (1) loss of consortium, (2) damages for future injuries and medical costs associated with cardiac arrhythmia, (3) strict liability design defect, and (4) punitive damages.

**A. Loss of Consortium.**

Plaintiff Mark Hyde asserts a derivative claim for loss of consortium. Citing *Ballard v. Lumbermens Mutual Casualty Co.*, 148 N.W.2d 65 (Wis. 1967), Defendants argue that there has been no testimony of any impact on the Hydes' marriage, only Mr. Hyde's own worry and concern about his spouse. Trial Tr. at 1837. But *Ballard* upheld the jury's award of loss of consortium damages to a husband in part because "his wife complains of pain that brings her to tears and causes chronic sleeplessness." 148 N.W. 2d at 72. *Ballard* found "a distinct and separate item of damages to [the husband], who as the result of the negligence of the defendant's insured [could] no longer enjoy the pleasure of his wife's company[.]" *Id*. at 71.

Mr. Hyde testified that his wife does not sleep well and wakes up at night because of anxiety from the IVC filter's failure. Trial Tr. at 1659. He testified that their trip to Wisconsin in 2014 was not a normal family vacation because of their fear that Mrs. Hyde

might die due to the fractured strut in her heart. *Id.* at 1656. He further testified that their drive to Stanford for the removal procedure was a quiet ride. *Id.* at 1657. This evidence is sufficient for the jury to find that Mr. Hyde was deprived of "the pleasure of his wife's company." *Ballard*, 148 N.W.2d at 71. The fact that Mrs. Hyde's injuries did not cause Mr. Hyde to take off work, take on additional household chores, or take over care for their daughter (*see* Trial Tr. at 1837) may go to the amount of damages, but does not preclude the jury from finding some loss of consortium. Defendants' Rule 50 motion is denied with respect to this claim.

## II. Future Damages for Cardiac Arrhythmia.

Defendants seek judgment as a matter of law on the issue of future damages for any cardiac arrhythmia Mrs. Hyde may experience, including the future medical cost of an implantable defibrillator. Trial Tr. at 1838-39. Defendants argue that the mere possibility of future injury is not enough under Wisconsin law, and judgment as a matter of law is warranted because Dr. Muehrcke testified that the need for a defibrillator is only a "possibility" if Mrs. Hyde were to develop arrhythmia in the future. *Id.* at 1838.

Wisconsin law holds that future injuries and medical care must be established by a medical probability, not a mere possibility. *See Bleyer v. Gross*, 120 N.W.2d 156, 160 (Wis. 1963) (finding that "an expert opinion expressed in terms of a 'mere possibility' is insufficient to sustain a finding.") (citations omitted); *McGarrity v. Welch Plumbing Co.*, 312 N.W.2d 37, 44-45 (Wis. 1981) ("The court of appeals correctly held that an expert opinion expressed in terms of possibility or conjecture is insufficient[.]"); *Weber v. White*, 681 N.W.2d 137, 143 (Wis. 2004) ("The law does not require mathematical certainty to determine future health care expenses. As long as the decision is based on probability and not possibility, the court can make such an award.") (citing *Bleyer*).

Dr. Muehrcke opined that Mrs. Hyde would need a defibrillator *if* she were to develop arrhythmia in the future, but he never opined that arrhythmia was probable:

> Q. Do you have an opinion she may need any other type of device or equipment?

> A. *If she's found to develop arrhythmia*, she could require an AICD in the future, an automatic implantable defibrillator.
>
> Q. Explain to the members of the jury what that is, please.
>
> A. The scar inside her ventricle can cause the milieu for ventricular arrhythmias, which can be lethal. *If she were to develop those arrhythmias*, she would have to have a device implanted[.]
>
> . . .
>
> Q. And do you have an opinion today about what the future care will – that Lisa Hyde will need as a result of this Bard filter?
>
> A. Well, I think she's going to need to have monitoring, pretty much.
>
> Q. And then, if necessary, you talked about –
>
> A. AICD is a *possibility*.

Trial Tr. at 825-27, 884 (emphasis added). This testimony is not sufficient under Wisconsin law to support an award of damages for the cost of a defibrillator or any other medical costs or injuries associated with future cardiac arrhythmia. The Court will grant judgment as a matter of law in this regard.[1]

Plaintiffs argue that specific categories of damages are not the proper subject of a Rule 50 motion. Trial Tr. at 1846. But Rule 50(a)(1)(A) explicitly provides that the court may resolve an "issue" against a party, and the advisory committee notes make clear that judgment as a matter of law may be entered "with respect to issues . . . that may not be wholly dispositive of a claim[.]" Fed. R. Civ. P. 50, note to 1993 amendment.

Plaintiffs cite *Ehlinger v. Sipes*, 454 N.W.2d 754, 756-57 (Wis. 1990), for the proposition that where there is testimony of some future risk of harm, that is sufficient to submit to the jury. Trial. Tr. at 1846. But *Ehlinger* involved the issue of causation, not

---

[1] Dr. Muehrcke's opinions about future medical monitoring for arrhythmias is sufficient to go to the jury. He testified that he "thinks" Mrs. Hyde will need to be monitored for arrhythmias. *Id.*; *see Bleyer*, 120 N.W.2d at 160 (noting that an opinion expressed in terms of "I feel" or "I believe" is sufficient to meet the probability requirement).

- 4 -

an award of damages for future harm. 454 N.W.2d at 756-57, 763 (finding that whether the doctor's alleged negligence was a substantial factor in causing the plaintiffs' injuries was for the jury to decide). As noted, Wisconsin law clearly holds that damages for the risk of future injury may be awarded only where the damages are established to a medical probability. *See Bleyer*, 120 N.W.2d at 160.

Relying on *Brantner v. Jenson*, 360 N.W.2d 529 (Wis. 1985), Plaintiffs contend that fear of future injury can be sufficiently certain for the jury to award mental distress damages even where there is only a mere possibility that injury may occur. Trial Tr. at 1847. The Court agrees, but Defendants do not appear to seek judgment on damages for Mrs. Hyde's fear of developing arrhythmia. Defendants seek judgment on the injuries and damages Mrs. Hyde would sustain if she develops the condition. The Court will enter judgment on that portion of Plaintiffs' damages claim.

## III. Strict Liability Design Defect Claim.

Defendants argue that the design defect claim fails as a matter of law because Plaintiffs have identified no reasonable alternative design as required by Wis. Stat. § 895.047(1)(a). Trial Tr. 1839-43; Doc. 12775. The Court does not agree. Plaintiffs have presented evidence that caudal anchors and penetration limiters were incorporated into Bard's Meridian and Denali filters, and that Bard knew as early as 2006 that one of its competitors had designed anchors to reduce caudal migration by flipping two of the hooks that secured the filter to the IVC wall. *See* Doc. 12007 at 13. Moreover, if the jury were to find that Mrs. Hyde received a G2X filter, the jury could determine that electropolishing to reduce fractures – as Bard introduced in the Eclipse filter – is a reasonable alternative design.

Defendants contend that the SNF cannot serve as a reasonable alternative design for purposes of § 895.047 because Dr. McMeeking offered no opinion that the SNF was an alternative filter for Mrs. Hyde and Dr. Henry testified that he wanted to implant a filter with a retrieval option. Trial Tr. at 1840. But it is clear from the evidence that both the G2X and Eclipse were cleared for permanent use, and Mrs. Hyde's filter may

have served as a permanent device absent its failure. Mrs. Hyde testified that this was her expectation. Trial Tr. at 1663.

Defendants argue that a district court recently found that a retrievable filter is not a reasonable alternative design for a permanent filter. *See Oden v. Boston Sci. Corp.*, 2018 U.S. Dist. LEXIS 102639 (E.D.N.Y. June 4, 2018). *Oden* granted a Rule 12(b)(6) motion to dismiss because the plaintiff failed to plead a reasonable alternative design. *Id.* at *12-13. *Oden* noted that the plaintiff had received a permanent filter, and that the complaint alleged that retrievable filters were not designed to be permanent. *Id.* The evidence in this case suggests, however, that the G2X and Eclipse filters were designed to be permanent filters, as was the SNF, and that Ms. Hyde's filter would have remained in place if it had not fractured. Whether the retrievability of the G2X and Eclipse made them sufficiently unlike the SNF to disqualify the SNF as a reasonable alternative design is a question for the jury to decide.

Defendants' reliance on *Brockert v. Wyeth Pharmaceuticals, Inc.*, 287 S.W.3d 760 (Tex. App. 2009), fares no better. Trial Tr. at 1841. *Brockert* involved a prescription drug. The proposed alternative would have removed a key ingredient. *Id.* at 770-71 ("In essence, Brockert argues that the product Prempro should have been a different product: its predecessor Premarin. But . . . Texas law does not recognize this sort of categorical attack on a product."). Similarly, the products at issue in *Pinello v. Andreas Stihl Ag & Co. KG*, No. 8:08-CV-00452 LEK, 2011 WL 1302223 (N.D.N.Y. Mar. 31, 2011), were entirely different. *See id.* at *15-16 ("Plaintiff does not offer an alternative design that might retain the 'inherent usefulness' of a handheld cutoff machine; rather, they point to an entirely different product that is not handheld.").

Defendants note that Dr. McMeeking performed no testing or analysis to support his proposed designs, and contend an untested theoretical design may not serve as a reasonable alternative for purposes of § 895.047. Trial. Tr. at 1842-43 (citing *Am. Family Mut. Ins. Co. v. Electrolux Home Prods., Inc.*, No. 11-CV-678-SLC, 2014 WL 2893179 (W.D. Wis. June 26, 2014)). But caudal anchors were not theoretical. Caudal

anchors were a feature of the Greenfield retrievable filter, which was on the market when Bard designed the G2X and Eclipse. *See* Restatement (Third) of Torts, cmt. f ("[O]ther products already available on the market . . . may serve as reasonable alternatives to the product in question."). The fact that Dr. McMeeking did not test his proposed designs or develop a prototype does not preclude the jury from finding that the designs are reasonable alternatives. *See Lynn v. Yamaha Golf-Car Co.*, 894 F. Supp. 2d 606, 629-30 (W.D. Pa. 2012) (citing Restatement (Third) cmt. f for the proposition that a plaintiff need not produce a prototype of the reasonable alternative design to make out a prima facie case of design defect). The request for judgment as a matter of law on the design defect claim is denied.

**IV. Punitive Damages.**

Defendants argue that Plaintiffs' evidence fails to meet the heightened standard for punitive damages set forth in Wis. Stat. § 895.043 and *Strenke v. Hogner*, 694 N.W.2d 296 (Wis. 2005). Trial Tr. at 1843-45. Under the statute, a jury may award punitive damages only if it finds, by clear and convincing evidence, that Defendants acted maliciously toward Plaintiffs or with an intentional disregard of Plaintiffs' rights. Wis. Stat. § 895.043(3); *see* Wis JI-Civil 205, 1707.2. A person acts with an intentional disregard of the plaintiff's rights if the person acts "with the purpose to disregard the plaintiff's rights, or is aware that his or her acts are substantially certain to result in the plaintiff's rights being disregarded." *Strenke*, 694 N.W.2d at 304. The acts must be deliberate. *Id.*

Defendants contend that there is no evidence that Bard acted deliberately. Trial Tr. at 1845. But Defendants do not claim that any of Bard's actions were accidental or that Bard was forced to take the actions it did. To the contrary, Bard deliberately chose the design of the G2X and Eclipse and the testing and marketing of the devices. A jury reasonably could conclude that Bard's actions were deliberate. *See Strenke*, 694 N.W.2d at 307 (finding that the defendant's acts of drinking more than 15 beers and then driving while intoxicated were deliberate because "nobody was holding him down and pouring

these drinks down his throat involuntarily" and nobody "made [him] get behind the wheel of his car").

Defendants further contend that there is no evidence that Bard acted with an actual disregard for Mrs. Hyde's health or well-being. Trial Tr. at 1845. But Plaintiffs need not show that Bard's conduct was directed at Mrs. Hyde specifically. Plaintiffs have presented evidence from which the jury could find that Mrs. Hyde's injury was the result of Bard's intentional disregard "for the safety of product users, consumers or others who might be harmed by the product." *Strenke*, 694 N.W.2d at 307 (citation omitted). The request for judgment as a matter of law on punitive damages is denied.

**IT IS ORDERED** that Defendants' Rule 50 motion for judgment as a matter (Doc. 12778) is **granted** with respect to damages for future injuries and medical costs associated with cardiac arrhythmia and **denied** in all other respects.

Dated this 2nd day of October, 2018.

David G. Campbell
Senior United States District Judge