Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
602-530-8000

*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC<br><br>**PLAINTIFFS' MOTION TO AMEND THE BELLWETHER TRIAL SCHEDULE** |

Plaintiffs hereby submit their motion to amend the bellwether trial schedule to remove the *Mulkey* case.

**BACKGROUND**

Typically, when an MDL is created, the litigation is in its infancy with limited to no discovery having been conducted. This MDL is unique in that the litigation was mature at the time of centralization. *In re: Bard IVC Filter Products Liability Litigation*, 122 F. Supp. 3d 1375, 1376 (JPML 2015). At that time, 22 cases were pending in various district courts throughout the country and, as noted by the Judicial Panel on Multidistrict Litigation (JPML), several of those cases had completed discovery and were near trial. *Id.* In addition, prior to the creation of the MDL, two cases went to trial, and approximately eight nearly went to trial before settling. These cases involved Recovery, G2, and Eclipse filters.

Within months of transfer of the cases to the MDL, the parties identified 13 cases that were ready or near ready for trial and therefore mature enough for early remand ("mature cases"). Doc. 174. Ten of the 13 mature cases were remanded upon recommendation of this Court by Order of the JPML on September 19, 2018. JPML Doc.

479. Nine of the 10 mature cases involve G2 filters and one case involves a Recovery filter. Plaintiffs' counsel is working to finalize the Record on Remand for each case so the parties can complete remaining discovery and motion practice, if any, and set trial dates in the various jurisdictions.

To date, four bellwether cases have been resolved in the MDL. This Court has overseen three jury trials and resolved one bellwether case on summary judgment, *Kruse*. The *Booker* case involved a G2 filter, and the *Jones* and *Hyde* cases both involved Eclipse filters.[1] The Court has scheduled a fourth bellwether case, *Mulkey*, for trial in February and a fifth bellwether case, *Tinlin*, for trial in May. The *Mulkey* case, like the *Jones* and *Hyde* cases, involves an Eclipse filter. The *Tinlin* case, on the other hand, will be the first bellwether case involving a Recovery filter to go to trial in the MDL. Notably, if the *Mulkey* case proceeds to trial, four of the first five bellwether cases to go to trial or be resolved on summary judgment would be chosen by Defendants to be part of the bellwether process.

There were also 13 cases pending in various state courts at the time of centralization. Doc. 174. Plaintiffs' counsel in these cases agreed not to commence a state court trial until June 2016 at the earliest so the cases could benefit from coordinated discovery. *Id.* Of those 13 cases, six settled within months to weeks of trial. These cases involved Recovery, G2and G2 Express filters.

Defense counsel made it clear at the October 4, 2018 case management conference that settlement discussions are ongoing. Transcript of October 4, 2018 Case Management Conference (Trans.) at 45-46. Specifically, Mr. North represented that "there are discussions with certain entities or persons ongoing already. So I don't think it's naturally – or inevitable that there are going to be no settlements before May." *Id.*; *see* also id. at 56 ("At [sic] I said, we are having some discussions and getting started in that regard. We can't talk to everybody at once, but we are doing that and starting that.") Mr. North also predicted

---

[1] The parties were unable to ascertain whether the filter implanted in Ms. Hyde was a G2X or Eclipse filter. For all intents and purposes, the *Hyde* case was tried as if it was an Eclipse filter applying the same evidentiary rulings the Court applied in the *Jones* case.

1  that "as we enter into 2019, discussions are going to accelerate and I think that we will make
2  a lot of strides as the first six months of that year progresses." *Id*. at 56-57.

3  In Case Management Order No. 38 (Doc. 12856), the Court ordered the parties to engage in good faith global settlement talks no later than November 30, 2018. (Doc. 12853). At this point in the litigation it is clear that the parties understand the strengths and weaknesses of the arguments and evidence, and understand the risks and costs associated with the litigation, especially as they pertain to the G2 and Eclipse filters. Considering the above history, the parties have more than enough data points for purposes of engaging in meaningful settlement discussions. To comply with the Court's Order and have progressive settlement discussions, the parties will need to dedicate significant resources in the next month or so to prepare for these discussions.

12  The Court also noted its intention to recommend remand of all cases in the MDL shortly after completion of the May 2019 bellwether trial. *Id.* Plaintiffs will also need to dedicate significant resources over the next six months to create trial packages (e.g., scheduling and conducting multiple preservation depositions for expert witnesses) so that remand counsel can take these cases to trial if a global resolution cannot be achieved in the MDL.

## I.  ARGUMENT

"The ultimate goal of a bellwether trial is for the court to 'enhance and accelerate both the [litigation] process itself and the global resolutions that often emerge from that process.'" *Collazo v. WEN by Chaz Dean, Inc.*, 2018 WL 3424957, *3 (C.D. Cal., July 12, 2018) (quoting Fallon, Eldon E., et. al., Bellwether Trials in Multidistrict Litigation, 82 Tul. L. Rev. 2323, 2325 (2008)); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.315 (2004) (Bellwether trials are designed "to produce reliable information about other mass tort cases"). Representativeness is a core element of the bellwether process. *In re Chevron U.S.A., Inc*., 109 F.3d 1016, 1019 (5th Cir. 1997).

Bellwether trials serve two important purposes: "First, bellwether trials allow coordinating counsel to hone their presentation skills for subsequent trials and can lead to the development of 'trial packages' for use by local counsel upon dissolution of MDLs. Second, and perhaps most importantly, bellwether trials can precipitate and inform settlement negotiations . . . by providing guidance on how similar claims may fare before subsequent juries." Fallon, Eldon E., et al., Bellwether Trials in Multidistrict Litigation, 82 Tul. L. Rev. 2323, 2338 (2008).

> A. The *Mulkey* Trial is Redundant, a Waste of Judicial Resources at this Phase, and Impedes Plaintiffs' Ability to Sufficiently Prepare for Settlement Negotiations and Create Trial Packages for Remanded Cases Starting June 2019

"Test cases should produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis and what range of values the cases may have if resolution is attempted on a group basis." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.315. This is not a one size fits all proposition. Each transferee court "must consider the unique factual and legal aspects specific to its litigation and then fashion an appropriate, custom-made trial selection formula." Fallon, 82 Tul. L. Rev. at 2343. These considerations can and should be applied when determining whether the bellwether trial schedule should be amended. In fact, the Court already did so when it deviated from an earlier case management order and decided not to pick a replacement case for *Kruse* as a sixth bellwether case for trial. Trans. at 32.

Ms. Mulkey was implanted with Bard's Eclipse filter. If the *Mulkey* case goes to trial, it will be the third Eclipse case to be tried in this MDL. With regard to cases involving Eclipse filters, as a result of the *Jones* and *Hyde* trials, the parties are familiar with the strengths, weaknesses and values of these cases. The question of whether the Eclipse filter is defectively designed and whether the warnings were adequate is the same for all Eclipse cases.

4

Moreover, Ms. Mulkey's injuries/damages are significant and practically the same as *Jones* and *Hyde*. Defendants argue that it is important to try a case where, according to Defendants, the injury is less serious. Trans. at 11. *Mulkey* does not fit that criterion. Ms. Mulkey suffered a failed retrieval attempt, her Eclipse filter caudally migrated (similar to *Jones* and *Hyde*), an arm of that filter fractured (the same fracture that occurred in *Jones* and *Hyde*), and several struts of the filter perforated her IVC (some in the same locations as *Jones* and/or *Hyde*). Additionally, as of her last imaging in January 2017, the perforated struts are interacting with her duodenum and L3-L4 disc space, and one strut is abutting her aorta (similar to *Hyde*). Even if these injuries were somehow considered insignificant, the parties already have a range of values from the three cases that have been tried to verdict in the MDL as well as the numerous cases discussed above that have settled. *See Collazo,* 2018 WL 3424957, *3 (finding that in the bellwether context when dealing with only differing severities of similar injuries and not differing causation, it makes no sense to separate cases into different trials based on perceived differences in injuries). With this much information, the parties can easily extrapolate from these results and always do in the context of a global settlement in a MDL. Extrapolation is inevitable when dealing with a global settlement because it is impossible, even with the number of trials that have occurred in the MDL and in trials prior to the MDL and settlements to date, to account for all the factors that could potentially affect value. The Bellwether process to date has utilized appropriate time, money and judicial resources in supplementing existing trial and settlement data provided in both state and federal court cases tried and resolved outside of the purview of this MDL. Trying to verdict another Eclipse case with similar injuries, the same evidentiary rulings and a similar jury pool will not produce any further informative data points, nor will it further the purposes of the MDL, settlement, or creation of trial packages for the cases to be remanded after the May 2019 trial.

Moreover, while Defendants label the *Mulkey* case as "less" serious, during the first Eclipse trial, they described the similar injuries Ms. Jones suffered as not serious at all. For

example, Defendants described Ms. Jones' sequelae related to her fracture as "not considered to be significant problems" and an incidental finding with no symptoms related to the fracture. *Jones v. C.R. Bard at al.*, Tr. Trans., 189:5-6; 17-21.

Finally, the *Mulkey* case was picked by Defendants for inclusion in the bellwether discovery pool, and by both parties for inclusion in the bellwether case selection pool. The *Jones*, *Kruse* and *Hyde* cases were chosen by Defendants only for inclusion in the bellwether selection pool. Thus, if the *Mulkey* case is tried in February, only one case selected exclusively by the Plaintiffs for inclusion in the bellwether selection pool will have been tried, the *Booker* case. This great of an imbalance further frustrates the ultimate goal of a bellwether process, and trying the *Mulkey* case in February only serves to exacerbate this imbalance.

With regard to the *Tinlin* case, it is undisputed that a Recovery case has not been tried to verdict in any jurisdiction and doing so would give the parties a valuable data point. It is more important to get a new data point for a different device than a third data point in an Eclipse case that differs from the others only slightly with regard to types of injury; the defendants have consistently labeled all of these cases as non-serious.[2] *See id.* In fact, if a defense verdict were returned in the *Mulkey* case, the parties would likely not learn anything new – especially in front of a similar jury, in the same venue, with the same evidentiary rulings.

It makes far more sense to try the *Tinlin* case in May and allow Plaintiffs six months (likely less due to holidays) to focus on the other important tasks at hand. Specifically, the Court has required the parties to engage in good faith global settlement talks no later than November 30, 2018. (Doc. 12853). The Court has also stated that, if global resolution cannot be achieved, it will remand the remaining MDL cases in early summer following

---

[2] Defendants have repeatedly argued that Recovery cases are a small percentage of the cases in the MDL. This is irrelevant. Recovery cases will be a significant component of any settlement regardless of the percentage of cases.

6

the *Tinlin* trial. In the coming weeks, Plaintiffs will have to expend significant resources preparing for settlement discussions.

While Plaintiffs are gearing up for what we hope will be fruitful settlement discussions, we will also need to start preparing trial packages so that, if we are unable to achieve a resolution, remand counsel will be ready to try their cases.

> Trial packages come in different shapes and sizes, but typically will include various databases of material such as the relevant documents acquired in discovery, other valuable background information, expert reports, deposition and trial testimony (both transcripts and video, if available), biographies of potential witnesses, transferee court rulings and transcripts, and the coordinating attorneys' work product and strategies with respect to all of this material. Ideally, these materials will be well-organized, indexed, and electronically searchable.

Fallon, 82 Tul. L. Rev. at 2339. It will take Plaintiffs at least four to six months to prepare high-quality trial packages. For example, trial testimony of the parties' experts needs to be taken (a process defense counsel has agreed is necessary for both sides) because there is no way the general experts can testify in person in the majority of the remand cases. This alone will take three to four months to complete, thus necessitating the near-immediate need to begin the process in order to accomplish it in the allotted time frame.

If the *Mulkey* case proceeds to trial in February, significant time and money that should be spent fulfilling two key purposes of an MDL, settlement and trial packages, and judicial resources will be diverted to trying a case that will provide little to no useful information to the parties. Far more valuable information will be obtained from ensuring that the remand cases get to trial quickly. Plaintiffs agree with Your Honor's position that "it would be good and informative for [us] to try one of these cases in front a different judge and in front of a different state's jury. Judges see things differently than [Your Honor] and make different evidentiary calls and different calls on how much time to afford parties. Juries from other states may see things differently." Trans. at 32. In addition, those that have served as trial counsel in this MDL are also trial counsel for many of the 10 recently remanded cases and resources will be diverted to getting those cases to trial. For all of this to occur, Plaintiffs should be afforded the time to prepare to take the videotaped trial

testimony of all the experts, put together trial packages and position the 10 remand cases for trial before the *Tinlin* trial commences in May of 2019, as opposed to trying another with the same device and similar injuries which Defendants have downplayed in previous trials.

B. Just Cause Exists For Ms. Mulkey To Withdraw Her "*Lexecon* Waiver"

A Plaintiff may withdraw a valid *Lexecon* waiver for "good cause." *In re Bair Hugger Forced Air Warming Devices Products Liab. Litig.*, 322 F. Supp. 3d 911, 912 (D. Minn. 2018). Few courts have addressed this issue, but all agree the standard is "just cause." *In re Bair Hugger*, 322 F. Supp. 3d at 912. *In re Zimmer Durom Hip Cup Prods. Liab. Litig.*, MDL No. 2158, 2015 WL 5164772, at *3 (D.N.J. Sept. 1, 2015) (stating that retraction requires a showing of good cause); *In re Fosamax Prods. Liab. Litig.*, 2011 WL 1584584, at *2 (S.D.N.Y. Apr. 27, 2011) (permitting retraction of Lexecon waiver only upon a showing of good cause).

Considering the facts presented *supra*, just cause exists for Ms. Mulkey to withdraw her *Lexecon* waiver because the process she agreed to was to be representative so as to effectuate the means for this court to enhance and accelerate both the process itself and global resolutions. *See Collazo*, 2018 WL 3424957, *3. Instead, she is being subjected to a process that has become stale – i.e. this would be the third Eclipse trial involving a fracture, third Eclipse trial with caudal migration or movement, third Eclipse trial with perforation(s), and third Eclipse trial involving a case selected by the defense.. Trying Ms. Mulkey's case would negate the "core benefit" of the process in which she agreed to participate, i.e., trial of a representative case to provide useful information for global resolution. *In re Chevron*, 109 F.3d at 1019.

Whereas there are benefits that come with entering into the Bellwether process, e.g., expedited discovery, there can be no benefit to trying what amounts to a non-representative case. Requiring Ms. Mulkey to remain part of a process that has not played out to this point to be representative (if her particular case is tried) will require her to accept terms that were

8

not on the table when she agreed to become part of the bellwether process. There can be nothing learned from her case as the third round of similar cases, yet doing so subjects her to a trial for which further expenses and resources will be expended to her potential detriment is tantamount to asking her to shoulder a burden for the benefit of all when none exists.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court amend the bellwether trial schedule to remove the *Mulkey* case from the trial calendar and maintain the May trial date for *Tinlin*.

RESPECTFULLY SUBMITTED this 18th day of October, 2018.

                                  GALLAGHER & KENNEDY, P.A.

                                  By: */s/* Mark S. O'Connor
                                      Mark S. O'Connor
                                      2575 East Camelback Road
                                      Phoenix, Arizona 85016-9225

                                LOPEZ McHUGH LLP
                                      Ramon Rossi Lopez (CA Bar No. 86361)
                                      (admitted *pro hac vice*)
                                      100 Bayview Circle, Suite 5600
                                      Newport Beach, California 92660

                                *Co-Lead/Liaison Counsel for Plaintiffs*

9

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of October, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/ Jessica Gallentine*