James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
jcondo@swlaw.com
kgallardo@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THE BELLWETHER TRIAL SCHEDULE**<br><br>(Assigned to the Honorable David G. Campbell) |

Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") respond to the plaintiffs' motion to amend the bellwether trial schedule as follows:

## I.   Introduction

In its November 21, 2017, Order, this Court stated that "the bellwether cases have been carefully selected to represent cases consolidated in this MDL. The purpose of the bellwether trials is to give the parties insight into how their claims and defenses are received by juries…. Selective settlements (or dismissals) of bellwether cases is inconsistent with this purpose." (Case Management Order ("CMO") No. 28, Doc. 8871 at 1-2.) The plaintiffs' motion to selectively remove *Mulkey* from the trial schedule should be denied based on this overarching purpose. In addition, other factors militate against the relief the plaintiffs seek: (1) all evidence suggests that *Mulkey*, a **joint** selection, is not a fracture case, and would be the **only** non-fracture case in the bellwether process, thus providing critical information for the other non-fracture cases which comprise **80 percent** of the MDL, and is further representative of the **75 percent** of plaintiffs who still have their filters implanted; (2) the plaintiff cannot legally withdraw her *Lexecon* waiver; and (3) the amount of work purportedly involved in developing trial packages, a problem of the plaintiffs' own making, is not a sufficient basis for removing a unique and important bellwether trial.

## II.   *Mulkey* is Unique and Provides Critical Information as a Bellwether Case.

First, contrary to the plaintiffs' assertion, *Mulkey* was a joint selection by the parties. (*See* April 24, 2017, Plaintiffs' Submission of Cases for Bellwether Group 1, attached as Exhibit A, at 1 ("Both sides have agreed on the inclusion of the case of Deborah Mulkey, case no. 16-CV-00853, in Bellwether Group 1.").) Thus, in addition to *Mulkey*, the bellwether trials are currently split evenly: *Booker* and *Tinlin* for the plaintiffs, and *Jones* and *Hyde* for Bard.

Second, *Mulkey* is **not** a fracture case. Not a single one of her treating physicians has ever identified a fractured strut, and, accordingly, Ms. Mulkey has never received any

- 1 -

medical care related to any fractured strut. Not a single medical record for Ms. Mulkey mentions any fractured strut. Instead, the plaintiffs' only evidence of a fracture is the vague assertions by her retained experts. Dr. Derek Muehrcke insists that one of the filter struts fractured, but he does not know where that strut is located, and is "unable to say what sort of potential complications, if any, might be associated with [that] fractured strut." (July 24, 2017, Deposition of Dr. Derek Muehrcke, attached as Exhibit B, at 155:23 – 156:4.) Similarly, Dr. Darren Hurst claims that one of the struts is "truncated" such that a piece, rather than an entire strut, fractured, but also cannot say where that fragment is located, and speculates that it passed from Ms. Mulkey's body through her gastrointestinal tract. (July 21, 2017, Deposition of Dr. Darren Hurst, attached as Exhibit C, at 95:18 – 96:13; 98:13-16.) These opinions are disputed by Bard's expert. But, even if a filter strut fractured, as the plaintiffs' experts claim, the alleged fracture has been associated with no injury or damages. Simply put, the *Mulkey* trial should not remotely resemble the *Booker*, *Jones,* or *Hyde* trials.

Third, given the plaintiffs' efforts to try *Hyde* as a G2X case, and their constant use of Recovery Filter evidence throughout every bellwether trial, it is inconsistent for the plaintiffs to now claim that *Mulkey* would be "the third Eclipse case" or that *Tinlin* "will be the first bellwether case involving a Recovery filter." (Pl. Mot. at 2; October 4, 2018, CMC Hearing Tr., attached as Exhibit D, at 6:7-10 (the plaintiffs' counsel acknowledging "well, we certainly tried a G2X case.").) Moreover, Recovery Filter cases only comprise nine percent of the MDL, while G2 and Eclipse cases comprise almost 60 percent of the inventory (with the Meridian and Denali filters representing 28 percent of the cases). And, the plaintiffs' representation that "it is undisputed that a Recovery case has not been tried to verdict in any jurisdiction" is incorrect, since the *Everett* jury in the Superior Court for Maricopa County returned a defense verdict in 2012 in a Recovery case. As a result, the significance of *Tinlin* as a Recovery bellwether, and the allegedly duplicative nature of Eclipse cases, are far less than the plaintiffs suggest.

But, most critically, as this Court recognized during the Case Management

1  Conference, *Mulkey*'s importance as a bellwether is based on the **nature and extent** of
2  the plaintiff's injuries, not the generation of filter or type of failure mode. *Mulkey* is the
3  only bellwether involving a G2 or Eclipse in which the filter is still implanted. This is
4  representative of over **75 percent** of the MDL plaintiffs. And, even if Ms. Mulkey's filter
5  fractured, the damages from that fracture are wholly different from *Booker*, *Jones,* and
6  *Hyde*. Indeed, *Mulkey* was a joint pick because of the limited nature of Ms. Mulkey's
7  injuries. (*See* Ex. A at 1, only stating that "Ms. Mulkey's case involves an Eclipse filter
8  that has perforated and become embedded in her [IVC]"; *id.* at 10 (not listing fracture as a
9  failure mode).) Importantly, over **80 percent** of the MDL cases do not involve fracture.
10 Thus, *Mulkey* is the **only** opportunity for the parties to test the value of the sort of
11 damages claimed by the vast majority of the plaintiffs in the MDL.

12 **III.    Ms. Mulkey Cannot Withdraw Her *Lexecon* Waiver.**

13 None of the cases cited by the plaintiffs permitted the withdrawal of a Lexecon
14 waiver. The Ninth Circuit has not addressed this issue. However, the withdrawal of a
15 stipulation, which is already the law of the case, can only be done if the plaintiffs show it
16 is necessary to prevent "manifest injustice." *Waggoner v. Dallaire*, 767 F.2d 589, 593 (9th
17 Cir. 1985) (holding "the withdrawal of the stipulation was itself error [because] [t]he
18 stipulation and our first decision on its legal effect were part of the law of this case. The
19 trial court thus could not permit Dallaire to withdraw the stipulation unless Dallaire
20 presented evidence to the court showing that withdrawal of the stipulation was necessary
21 to prevent manifest injustice."). This aligns with other courts that have specifically
22 addressed this issue because, although the standard has been described as "good cause,"
23 *Lexecon* waivers "are analogous to a stipulation of fact or a stipulation to proceed for trial
24 before the court without a jury." *In re Fosamax Prod. Liab. Litig.*, No. 06 MD 1789 JFK,
25 2011 WL 1584584, at *2 (S.D.N.Y. Apr. 27, 2011). Thus, the unilateral dissolution of
26 such a stipulation made with the advice of counsel is permitted "only upon a 'showing of
27 good cause such as fraud, collusion, mistake or duress, or [where] the agreement is
28 unconscionable or contrary to public policy, or the text of the agreement suggests an

ambiguity indicating that the words did not fully and accurately represent the parties' agreement.'") (citation omitted).[1]

Moreover, this is not the first time the plaintiffs have unilaterally altered the bellwether selections through dismissal or refusal of *Lexecon* waivers. Although the Court previously ruled that two plaintiffs initially selected by Bard provided colorable reasons for refusing *Lexecon* waivers, the end result is the same. (CMO No. 15, Doc. 3214 at 1; *see also*, CMO No. 19, Doc. 4311 at 1-2 (striking two of the plaintiffs' bellwether selections to counterbalance the voluntary dismissal of two of Bard's selections).) This exploitation of the bellwether system is a common problem. In *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 628 F.3d 157, 163–64 (5th Cir. 2010), the Fifth Circuit affirmed the district court's order converting a bellwether's dismissal without prejudice into a dismissal with prejudice, and holding that future voluntarily dismissals would be treated similarly. The court explained that a plaintiff "must be prepared to undergo the costs, psychological, economic and otherwise, that litigation entails. That the plaintiff becomes one of a mass of thousands pursuing particular defendants lends urgency to this reality. Courts must be exceedingly wary of mass litigation in which plaintiffs are unwilling to move their cases to trial. Any individual case may be selected as a bellwether, and no plaintiff has the right to avoid the obligation to proceed with his own suit, if so selected." *Id.* at 163. To hold otherwise "would set a precedent that other

---

[1] *See also, In re Bair Hugger Forced Air Warming Devices Products Liab. Litig.*, 322 F. Supp. 3d 911, 912 (D. Minn. 2018) (denying the plaintiffs' request even though the plaintiffs claimed harm from an allegedly adverse choice of law ruling and even though none of the plaintiffs at issue had been selected for bellwether trials); *In re Zimmer Durom Hip Cup Prod. Liab. Litig.*, No. CIV.A. 09-4414, 2015 WL 5164772, at *4 (D.N.J. Sept. 1, 2015) (denying the plaintiffs' request after applying the Third Circuit's "manifest injustice" standard for modifying stipulations). Similarly, the two cases the plaintiffs cite that did not specifically address *Lexecon* waiver support denying the plaintiffs' motion. *See Collazo v. WEN by Chaz Dean, Inc.*, No. 215CV01974ODWAGR, 2018 WL 3424957, at *1 (C.D. Cal. July 12, 2018) (selecting representative bellwethers by dividing them according to severity of injury and calculating the percentage of each in the MDL); *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) (holding that "a trial of fifteen of the 'best' and fifteen of the 'worst' cases" "lack[s] the requisite level of representativeness so that the results could permit a court to draw sufficiently reliable inferences about the whole that could, in turn, form the basis for a judgment affecting cases other than the selected thirty.").

plaintiffs could use to manipulate the integrity of the court's bellwether process. It would have subjected [the defendant] to the rigors and costs of trial preparation against [the plaintiff] without reaching a resolution of [the plaintiff's] claim." *Id.* at 163-64.[2]

Here, the plaintiffs admit they are trying to do exactly what courts almost unanimously find improper: prioritize a 'worst' case under the guise of establishing a global settlement value rather than trying statistically representative cases. (*See* Ex. D, Oct. 4, 2018, CMC Tr. at 6:12-25 ("I know [defense] counsel will be quick to point out that the Recovery cases only make up about 11 percent of the docket, but…11 percent of the cases are probably 50 percent of the value [of] the global litigation."); *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 1441804, at *9 (S.D.N.Y. Apr. 12, 2016). ("The [] Plaintiffs also criticize the selection of Scheuer as a bellwether trial and the decision to try it first, asserting that '[i]t is axiomatic that plaintiffs' counsel always want to try their best case first in MDL litigation.' But if by 'best,' the [] Plaintiffs mean 'most likely to result in a large plaintiff's verdict,' that proposition is by no means 'axiomatic.' After all, because the primary purpose of bellwether trials is to provide data points for settlement discussions with respect to the universe of cases, the goal is to select the 'best' representatives of the universe of cases, not outliers likely to result in victory for one side or the other.").[3]

Lastly, the plaintiffs claim that Ms. Mulkey "is being subjected to a process that has become stale." However, for three years, the plaintiffs have fully supported this Court's plan to try five to six bellwether cases. The only thing that has changed is that the

---

[2] *See also, e.g., In re: Cook Medical, Inc. Pelvic Repair System Prod. Liab. Litig.*, MDL No. 2440, (S.D.W.Va.) Pretrial Order # 59, attached as Exhibit E (noting repeated voluntary dismissals or withdrawals as counsel); *In re: Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, MDL No. 2272, (N.D. Ill.) Brief and CMO Nos. 11 and 12, attached as Exhibit F (discussing issues with serial abandonment of bellwether cases and entering a "*Lone Pine*" order requiring the plaintiffs to provide certain evidence to ensure they can proceed to trial, and requiring the plaintiffs' counsel to dismiss with prejudice or withdraw from all other cases).

[3] *See also*, Bard's Submission Regarding Selection of Cases for Bellwether Group 1, Doc. 5652, (citing authorities holding "representativeness" is the key element for bellwether selections).

1  plaintiffs failed to prevail in three of the first four bellwether trials. The plaintiffs suggest
2  that Ms. Mulkey will receive a settlement if her case does not proceed as a bellwether.
3  However, it is more likely that *Mulkey* will be remanded as a mature case, and
4  Ms. Mulkey will go through a multi-week trial either way. Whether Ms. Mulkey's case is
5  tried as a bellwether or on remand, she filed a lawsuit and must accept that it may go to
6  trial either in Arizona or her home state of Kentucky. Thus, there is no harm to
7  Ms. Mulkey or her case by holding her to her prior consent to the bellwether process. On
8  the other hand, plaintiffs dismissing bellwether cases on the eve of trial harms the
9  defendants and the Court. *In re Bair Hugger*, 322 F. Supp. 3d at 913 ("Plaintiffs seem to
10 argue that retraction would not unduly inconvenience the parties and the Court. This is
11 wrong. The *Bair Hugger* MDL has progressed for the past few months in reliance on
12 Plaintiffs' *Lexecon* waivers. Changing course now would waste the resources expended in
13 advancing the current list of Bellwethers and [choosing an alternative] would delay the
14 more than 4,500 cases in this MDL by many months.").

15 **IV.     Trial Packages Are Not a Sufficient Basis for Removing *Mulkey*.**

16         The plaintiffs argued over four months ago that "Plaintiffs believe that the
17 previously identified 'mature' cases should all be remanded to their courts or [sic] original
18 jurisdiction at this point." (Pls.' Submission re: Bellwether Cases, SNF Filings, and
19 Remand of Mature Cases, Doc. 11553 at 7.) At that time, Bard contended that immediate
20 remand would "disrupt the bellwether process." *Id*. Now, the plaintiffs are using their
21 request to disrupt the bellwether process even further. The plaintiffs currently have at least
22 six months to prepare trial packages. The dozens of plaintiffs' firms involved in this
23 MDL, and more than 20 firms on the Plaintiffs' Steering Committee alone, have ample
24 resources to adequately staff the work associated with this MDL, an MDL that they
25 requested from the JPML in the first place. If the plaintiffs are truly unable to meet their
26 burden, there are options (like delaying remands) rather than disrupting the bellwether
27 process.
28

**V.     Conclusion**

For the foregoing reasons, the plaintiffs' motion should be denied in its entirety.

RESPECTFULLY SUBMITTED this 25th day of October, 2018.

        s/Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
jcondo@swlaw.com
kgallardo@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of October, 2018, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

s/Richard B. North, Jr.
Richard B. North, Jr.