# EXHIBIT F

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ZIMMER NEXGEN KNEE IMPLANT PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 2272 |
| This Document Applies to | ) ) ) | Master Docket Case No. 1:11-cv-05468 |
| Donna Carrea, No. 1:13-cv-06388 | ) | Honorable Rebecca Pallmeyer |

**REPLY IN SUPPORT OF ZIMMER'S MOTION TO
COMPEL PARTICIPATION IN BELLWETHER DISCOVERY**

"It's like déjà vu all over again," to quote the late Yogi Berra. *Carrea* was the last standing defense pick from the old broken trial plan after more than a dozen cases picked for bellwether consideration were abandoned by Plaintiffs' Counsel, and it is now the one remaining defense pick under the new trial plan still being negotiated by the parties. Let there be no mistake – Zimmer wants to take *Carrea* to trial, so long as it is not a *pro se* case. What Zimmer does not want is more déjà vu – *Currier*, *Davis, Earnheart*, *Womack*, *Millsap-Brown*, *Richardson*, *Teague*, *Lopez*, *Shoat*, *Subocz, Ebarb*, *Lawrence*, *Dobrzynski,* and now *Carrea* – all over again. Zimmer's defense pick – whether it is *Carrea* with new counsel or an entirely new selection – must be prepared to go to trial if it is pending and has submitted proof of loosening under CMO-8. There must be no more abandonment.

**I.   Abandonment of Bellwether Selections by Plaintiffs' Counsel Was Not Supposed to Happen Again.**

An account of the repeated motions to dismiss or withdraw by Plaintiffs' Counsel is unnecessary, as the story is well-known and has been retold numerous times. (*See e.g.*, Doc. 1545, 1549, 1578) In response to the serial abandonment of the defense bellwether picks, the Court ultimately directed the parties to develop some mechanism to prevent this problem from happening again:

> What I am committed to is some mechanism—we have to talk about it—**some mechanism to ensure that we don't have lawyers in this awkward position that these lawyers are in, having filed cases that then get picked for bellwether treatment, and they don't even want to try them at all. There has to be a way to preclude this happening anymore. There has to be a way that lawyers are not in this position.**
>
> ****
>
> I am saying I need some mechanism. *Lone Pine* would work for me, but if you think that's too drastic, then develop an alternative protocol, and we will deal with your alternative protocol. We will find a way to make sure that plaintiffs' lawyers are not in the situation that they feel I placed them in somehow. I want a mechanism that enables them to come forward and say, we have got a group of cases here. Some are stronger than others. Some are weaker than others. **But we are prepared to go forward on all of them. We are prepared to take any of them to trial. That's what I want.**

(*See* Sept. 11, 2014 Status Conf. Trans. at 95:24-96:6, 96:12-19) (emphasis added).

The mechanism developed by the parties and approved by the Court is the screening order embodied in Case Management Order No. 8, entered on December 10, 2014.  (CMO-8, Doc. 1265.)  CMO-8 required all Plaintiffs to submit (1) a medical record showing evidence of loosening of an MDL component or (2) an attorney certification that Plaintiffs' Counsel has reviewed the medical records and has a reasonable and good faith basis for recommending continued prosecution of the matter within MDL-2272.  (*Id.* at ¶¶ 1-2.)

On March 16, 2015, Zimmer selected *Lawrence, Ebarb,* and *Dobrzynski* (and later *Carrea* once *Dobrzynski* was dismissed*)* as bellwethers after they purportedly complied with CMO-8.  Despite affirmatively submitting CMO-8 evidence to Zimmer, Plaintiffs' Counsel for all three defense picks refused to participate in the bellwether process.  In the face of Zimmer's motion to compel their participation, Plaintiffs' Counsel for *Lawrence*  and *Ebarb* dismissed their cases, and Plaintiffs' Counsel for *Carrea* moved to withdraw as counsel.

**II.     Plaintiffs' Counsel's Withdrawal in *Carrea* Must Be Considered in the Larger Context of This MDL's Bellwether Process, and No Future Motions to Withdraw or Voluntary Dismissals Should Be Granted on the Basis of Failure to Screen.**

Plaintiffs' Counsel in *Carrea*, Zimmer's last remaining bellwether selection, filed a response to Zimmer's motion to compel declining to participate in bellwether discovery and filed a simultaneous motion to withdraw from the case, citing an impasse over further handling of the claim.  The result is a bellwether selection with a *pro se* plaintiff.  As now-Seventh Circuit Judge David Hamilton explained from the district court bench:

> When an attorney seeks to withdraw from a case and no substitute counsel have appeared, the court must consider the interests not only of the counsel but also the client, the other parties, and the court…Because of the challenges that a pro se party can pose for both the court and the opposing party, the court does not routinely grant motions to withdraw.  Too often, a plaintiff's attorney will seek to withdraw from a weak case, leaving the case like an orphan on the court's and the opponent's doorstep.  The court and the opponent are thus left the task of educating the pro se party about applicable law and procedure, and often about the weaknesses in his case.  Typically, such education should be the responsibility of that party's original lawyer.

*Burns v. General Motors Corp.*, 1:06-cv-00499-DFH-WTL, 2007 WL 4438622, at *1-2 (S.D. Ind. Nov. 30, 2007) (emphasis added).  This is especially true in the context of an MDL, where it is simply unrealistic to expect a *pro se* plaintiff to effectively prosecute her own case – let alone a bellwether - and coordinate with the Court and the other parties within the MDL.

The Carreas have consented to the withdrawal of counsel, and they are now seeking new counsel.  The reasons for the withdrawal of counsel are unknown because Zimmer does not know what was said in the *ex parte* filing in support of the motion to withdraw.  The important question, however, is not *what* was said or done by Plaintiffs' Counsel; the important question is *when*.

- 3 -

- *When* did Plaintiffs' Counsel make a reasonable inquiry of the merits of Mrs. Carrea's claim against Zimmer?[1]

- *When* did Plaintiffs' Counsel examine the medical records submitted with Plaintiff's Fact Sheet?[2]

- *When* did Plaintiffs' Counsel, a member of the Plaintiffs' Steering Committee, follow the Court's admonition in 2013 to review the case for merit?[3]

- *When* did Plaintiffs' Counsel evaluate the plaintiff's medical records as required by CMO-8?[4]

Like all of the defense picks that went before it, there can be little doubt that the answer to these questions of *When* is the same: *When* the case was picked as a bellwether.

Zimmer is prepared to move forward with *Carrea* as its defense pick under the new trial plan if the *pro se* plaintiffs find new counsel as directed by the Court. If not, Zimmer will be prepared to make a new defense pick consistent with the agreement reached by the parties and approved by the Court at the September 3rd status conference. Zimmer's selection of a case, however, cannot be the trigger for when the Plaintiffs' Counsel finally evaluates the merits of the case to determine if there is a willingness to take the case to trial. Trial certification post-bellwether selection is not working. All cases that have submitted purported compliance with CMO-8 should be deemed certified for trial if still pending by a date selected by the Court. Also, after that date, the Court should deny any future motions to voluntarily dismiss or withdraw as counsel if they are based on a failure to screen by Plaintiffs' Counsel. Finally, sanctions should be leveled against any Plaintiffs' Counsel who evades the letter and spirit of CMO-8 by submitting proof of loosening of an MDL component for cases they have no intention of taking to trial.

---

[1] *See* Rule 11. Plaintiffs' Counsel signed the Short Form Complaint on August 2, 2013.
[2] *See* CMO-2. In 2013, Plaintiffs' Counsel submitted the Plaintiff Fact Sheet and medical records in 2013.
[3] The Court ordered Plaintiffs' Counsel to screen their inventory by self-policing in early 2013. The Court was clear: [I]t's not going to happen again that you're going to propose cases that they're going to withdraw because they are going to evaluate the pool." (March 15, 2013 Status Conf. Trans., 15:12-14).
[4] *See* CMO-8, providing Plaintiffs' Counsel until February 15, 2015 to submit evidence of loosening of an MDL component.

- 4 -

Dated:  October 6, 2015  Respectfully submitted,

FAEGRE BAKER DANIELS LLP


/s/ J. Stephen Bennett
J. Stephen Bennett (Ill. State Bar #6226615)
Abigail M. Butler (Ind. State Bar #22295-02)
Peter A. Meyer (Ind. State Bar # 27968-53)
110 West Berry Street, Suite 2400
Fort Wayne, Indiana  46802-2322
Telephone: (260) 424-8000
Fax: (260) 460-1700
Email: stephen.bennett@faegrebd.com
Email: abigail.butler@faegrebd.com
Email: peter.meyer@faegrebd.com

Andrea Roberts Pierson (Ind. State Bar #18435-49-A)
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone: (317) 237-0300
Fax: (317) 237-1000
Email: andrea.pierson@faegrebd.com

James A. O'Neal (Minn. State Bar #8248X)
Bruce Jones (Minn. State Bar #179553)
Amy R. Fiterman (Minn. State Bar #285493)
90 South Seventh Street, Suite 2200
Minneapolis, Minnesota  55402
Telephone: (612) 766-7000
Fax: (612) 766-1600
Email: james.oneal@faegrebd.com
 bruce.jones@faegrebd.com
 amy.fiterman@faegrebd.com

*Lead counsel for Zimmer, Inc.*

- 6 -

## CERTIFICATE OF SERVICE

        I certify that on October 6, 2015 a copy of the foregoing **REPLY IN SUPPORT OF ZIMMER'S MOTION TO COMPEL PARTICIPATION IN BELLWETHER DISCOVERY** was filed electronically.  Parties may access this filing through the Court's electronic records system.  An as-filed copy is being sent via First-Class, United States Mail to Plaintiffs as follows:

    Donna and Leo Carrea
    3185 Woodfield Court
    Yorktown Heights, NY  10598


                                    /s/ J. Stephen Bennett

US.102476788.01

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ZIMMER NEXGEN KNEE IMPLANT PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 2272 |
| This Document Applies to All Cases | ) ) ) ) | Master Docket Case No. 1:11-cv-05468 Honorable Rebecca Pallmeyer |

## CASE MANAGEMENT ORDER NO. 11

On December 10, 2015, the Court entered Case Management Order No. 8, which required all plaintiffs to provide evidence or certification of loosening of a NexGen Flex femoral component, a 5950 NexGen MIS Stemmed Tibial Component, or any other tibial component implanted with a NexGen Flex femoral component. (*See* Doc. 1256 in Case No. 1:11-cv-05468, ¶¶ 1-2.) On January 22, 2016, the Court entered Case Management Order No. 9, which required each plaintiff to designate his or her case as a "Track One" or "Track Two" case. (*See* Doc. 1651 in Case No. 1:11-cv-05468, ¶¶ 1-4.) Plaintiffs in Track One were required to submit one or more of the following: (1) a medical record demonstrating knee flexion greater than 120 degrees; (2) a certification by counsel that he or she had reviewed the medical records and conferred with the client, and as a result, had a reasonable and good faith basis for contending that the client achieved high flexion activity; and/or (3) a medical record demonstrating implantation and subsequent loosening of a 5950 NexGen MIS Stemmed Tibial Component. (*Id.*)

On January 22, 2016, the Court also entered Case Management Order No. 10, wherein the Court stated its commitment to have full resolution of these consolidated proceedings by the end of 2017. To that end, the Court identified a bellwether trial schedule and a plan for global mediation. (*See* Doc. 1652 in Case No. 1:11-cv-05468). It is now clear to the Court that

US.106760360.01

additional support for Plaintiff's claims is necessary in furtherance of the goals set forth in Case Management Order No. 10.

Therefore, the Court now determines that an order in the nature of the order used in *Lore v. Lone Pine Corp.*, No. L33606-85 (N.J.Super.Ct. Law Div., Monmouth Co., Jan. 1, 1986), is necessary to ensure that certain cases in Track One have sufficient merit to proceed to trial and orders the following:

1. Plaintiffs who meet the following criteria shall provide the Expert Declaration form attached to this order by September 13, 2016.

   a. Plaintiff has complied with CMO-2, CMO-8, and CMO-9, **and**,

   b. Plaintiff has designated his or her case as a Track One case under CMO 9, **and,**

   c. Plaintiff intends to pursue any of the following claims:

      (1) femoral loosening resulting from high flexion activities, regardless of the tibial component implanted;

      (2) loosening of a tibial component other than an MIS 5950 tibial component resulting from high flexion activities;

      (3) tibial loosening resulting from high flexion activities of an MIS tibial component which was implanted with a drop down stem.

For the sake of clarity, Plaintiffs who intend to pursue a claim regarding loosening of a MIS 5950 tibial component without a drop down stem are **not** required to provide an Expert Declaration form under this order even if that claim includes a theory that high flexion activity contributed to or enhanced the loosening of the MIS 5950 tibial component, unless a Plaintiff is also pursuing a claim of femoral loosening resulting from high flexion activities, as described in

- 2 -

section c.1. If Plaintiffs who wish to allege femoral loosening in addition to loosening of a MIS 5950 Tibial Component without a stem extension fail to complete the Expert Declaration form, those Plaintiffs will be precluded from pursuing a theory that the femoral component loosened due to high-flexion at trial. If Plaintiffs who allege loosening of a MIS 5950 Tibial Component with a stem extension fail to complete the Expert Declaration form, they will be precluded from pursuing a high-flexion theory at trial.

Plaintiff's counsel should email completed Expert Declarations to defense counsel, Faegre Baker Daniels LLP, at nicole.brett@faegrebd.com.

2. Failure of Plaintiffs subject to the terms of paragraph 1 to provide the signed Expert Declaration before September 1, 2016 may result in the dismissal of a Plaintiff's case with prejudice, as set forth below:

    a. For any Track One, high-flexion Plaintiff who is required to comply with this order and fails to comply with this Order in a timely and complete manner, Zimmer will notify the plaintiff and the Court of the failure to comply by filing a notice of non-compliance on the MDL's Master Docket on September 21, 2016.

    b. Any non-compliant Plaintiffs will then have until October 21, 2016 to provide the expert declaration required in paragraph 1 and to file a brief with the Court showing cause for the failure to provide the expert declaration before the September 21, 2016 deadline.

    c. On November 4, 2016, Zimmer will file a final list of Plaintiffs who still have yet to comply with this Order. The Court will promptly dismiss those Plaintiffs' cases with prejudice.

- 3 -

US.106760360.01

  d.  The Court will also review any briefs attempting to show cause for late compliance and determine whether good cause exists, such that those cases can proceed, rather than being dismissed with prejudice.

3.  <u>New Cases and Cases Without a Served Plaintiff Fact Sheet or Proof of Loosening</u>

In cases in which the Plaintiff has not yet served a Plaintiff Fact Sheet, proof of loosening, and proof of high-flexion under CMO Nos. 2, 8, and 9, or in which a Complaint has not been filed as of the date of this Order, Plaintiffs meeting the criteria of paragraph 1c above shall submit the Expert Declaration attached to this Order within 180 days of the date upon which the case was filed. If a Plaintiff in such a case fails to comply with this Order and provide the Expert Declaration within that time frame, upon written notification by Zimmer, Plaintiffs shall have 30 days to comply. The failure to supply the Expert Declaration shall subject a Plaintiff to the deficiency process outlined in Case Management Order No. 2.

  SO ORDERED.

Dated: June 10, 2016

                HON. REBECCA R. PALLMEYER
                United States District Judge

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ZIMMER NEXGEN KNEE IMPLANT PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 2272 |
| | ) | Master Docket Case No. 1:11-cv-05468 |
| This Document Applies to All Track 1 High Flex Cases | ) ) ) | Honorable Rebecca Pallmeyer |

**PLAINTIFF'S MEDICAL DECLARATION OF CAUSATION**

1. Plaintiff's name:_____

2. Plaintiff's counsel:_____

3. Plaintiff's Civil Action No.:_____

4. Name of medical declarant:_____

5. Date of Plaintiff's implant surgery:_____

6. Date(s) of Plaintiff's revision surgery or surgeries:_____

7. I am an orthopaedic surgeon. I have attached my curriculum vitae to this declaration.

8. I certify that I have reviewed and considered the evidence made available to me, which included Plaintiff's medical records, x-rays and/or x-ray reports and the declaration of Plaintiff. Upon consideration of same, I can state to a reasonable degree of medical certainty that Plaintiff's engagement in high-flexion activity, including activities which required flexion greater than 120 degrees was a cause of the loosening of Plaintiff's (*specify femoral, tibial, or both*) knee component(s).

I hereby declare under the penalty of perjury that the foregoing is true and correct.

Executed on: _____    _____
                                        Surgeon Declarant's Signature

US.106760431.01

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ZIMMER NEXGEN KNEE IMPLANT PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 2272 |
| This Document Relates to All Cases | ) ) ) | Master Docket Case No. 1:11-cv-05468 Honorable Rebecca Pallmeyer |

## CASE MANAGEMENT ORDER NO. 12

This Court intends to proceed to conclusion of consolidated proceedings of this MDL by the end of 2018, through use of trials, dispositive motions, settlement efforts and following that, recommendation of remand of any unresolved cases. To that end, this Case Management Order No. 12 ("CMO-12") directs the parties as to further case management. CMO-12 shall control the next group of trial selections, the trial process, and the process towards resolution of cases within this MDL.

1. <u>Screening, Withdrawals, and Dismissals.</u> Before the Court selects the pool of cases to be worked up for the next set of trials ("Trial Pool"), and to mitigate the possibility of trial dismissals, the Court urges all counsel for plaintiffs to review their cases and ensure that they will proceed towards trial, if selected. If counsel for a plaintiff concludes there is not justification to proceed, counsel must file a stipulation of dismissal with prejudice, or a motion for leave to withdraw, on or before October 20, 2017. All motions for leave to withdraw not filed on or before October 20, 2017 will be denied, absent good cause shown. Any case not dismissed by October 20, 2017 that, without good cause, later becomes the subject of a motion for voluntary dismissal or a motion to withdraw may be the subject of sanctions.

2. <u>Census.</u> The Court understands that a spreadsheet census containing a list of all pending cases remaining in the MDL - sorted by Plaintiff name, Plaintiff's law firm, the device(s) at issue (NexGen Flex femoral component or MIS Tibial Component), and categorized

US.114416877.03

by the type of loosening in Flex cases (femoral or tibial loosening) (the "Census") - has been circulated to counsel for the plaintiffs with cases centralized in the MDL. Prior to October 17, 2017, counsel for all plaintiffs shall inform Plaintiffs' Co-Lead Counsel, Tobias Millrood, if they disagree with the categorization of their case(s) in the Census. If counsel for any plaintiff did not receive a copy of the Census, counsel shall promptly contact Mr. Millrood to obtain a copy in time to make any needed adjustments prior to the October 17, 2017 deadline. By October 23, 2017, counsel for Zimmer and Plaintiffs will provide to the Court a finalized version of the Census.

3. <u>Trial Eligibility</u>. All plaintiffs that have complied with CMO-8 and CMO-9, or who had a deadline to comply with these orders prior to October 20, 2017, are eligible for trial selection, except as otherwise provided in this paragraph. In cases in which plaintiffs have complied with CMO-9, only those cases that meet the criteria for Track One cases, as defined in CMO-9, are eligible for trial selection. In cases in which plaintiffs have failed to comply with CMO-9 but had a deadline to do so prior to October 20, 2017, cases will be included and eligible for trial if a Flex femoral component or a 5950 MIS Tibial Component is confirmed to have been implanted. Cases in which counsel files a stipulation of dismissal or a motion to withdraw on or before October 20, 2017 will be excluded from eligibility for trial selection.

4. <u>Trial Pool Selection</u>. The trial case pool ("Trial Pool") will consist of 36 cases selected randomly from all cases in the MDL that are eligible for trial under Paragraph 3 above. Using the Census, twelve cases will be selected for each of three categories on October 23, 2017, or as soon as convenient for the Court on any date thereafter: (1) cases involving loosening of an MIS Tibial Component; (2) cases involving loosening of a NexGen Flex femoral component without an MIS Tibial component; and (3) cases involving loosening of a tibial component other than an MIS Tibial Component when the tibial component was implanted with a Flex femoral

US.114416877.03

component. By October 30, 2017, the parties will exchange all medical records and x-rays in their respective possessions for the 36 plaintiffs in the Trial Pool. On November 10, 2017, each party will strike four cases from each category by filing a Notice of Trial Pool Strikes with the Court at 12 PM CST. In that same filing, each party will provide notice if a party in any of the Trial Pool cases refuses to waive the venue rights recognized under *Lexecon*. Should any party refuse to waive *Lexecon* in a case, the opposing side will receive an additional strike for each non-waiving party. The opposing side will also have the option of requesting that the Court try the case in which the party refused to waive *Lexecon* via an inter-district transfer, with the consent of the transferor district. Thus, such a non-waiver of *Lexecon* will not eliminate the case from the Trial Pool.

5. <u>Trial Selection.</u> On November 17, 2017, the parties will each submit one-page briefs (no more than 12 pages total) containing a summary of facts and a statement of appropriateness for trial selection of each of the remaining cases. The Court will then select two cases involving loosening of an MIS Tibial Component for trial workup. At that point, Zimmer will select one case from either the NexGen Flex femoral loosening category or the NexGen Flex tibial loosening category for trial workup. Then, the Court will select three additional cases from the NexGen Flex femoral loosening and NexGen Flex tibial loosening categories by selecting two cases from the category from which Zimmer did not make its pick, and one case from the category in which Zimmer did make its pick. Thus, six total cases will be prepared for trial, with two cases from each of the three categories.

6. <u>Trial Ready Dates.</u> The six cases should be worked up and ready for trial on the following timeline:

**Two MIS Tibial Component Loosening Cases – June 2018**

**Two NexGen Flex Femoral Loosening Cases – September 2018**

- 3 -

US.114416877.03

**Two NexGen Flex Tibial Loosening Cases – November 2018**

Discovery will begin in all cases upon selection of a case, and it will conclude 45 days before the trial's start date. 90 days prior to each trial setting's actual trial start date, the Court will declare which one of the two cases will proceed to trial for that trial setting. The parties agree not to seek consolidation of cases for trial, and that all of the trials will thus be single-plaintiff trials.

7. <u>Deadlines for Trials.</u> The parties and the Court will determine case-specific pretrial schedules and deadlines, including the exact trial start date, in a separate order, once the six cases selected for trial have been identified.

8. <u>Parallel Resolution Program and Mediation Deadline.</u> While the parties proceed towards trials as described above, the Court expects a parallel program aimed at a plan for resolution of cases. The parties are required to hold a good-faith mediation aimed at a global resolution with a private mediator or a district judge prior to January 31, 2018.

9. <u>Remand.</u> The Court will entertain suggestion of remand motions for the orderly wind-up of this MDL, but not until after the three trials contemplated by CMO-12 have been completed. Priority for remand will be given to the three cases that were worked up for trial as part of CMO-12, but not selected for trial.

ENTER:

Dated: [DATE]
October 11, 2017

*Rebecca R. Pallmeyer* (signature)

Hon. Rebecca R. Pallmeyer
United States District Judge