James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
jcondo@swlaw.com
kgallardo@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
Telephone: (404) 322-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' MOTION TO ENFORCE PROTECTIVE ORDER OVER CERTAIN TRIAL EXHIBITS**<br><br>(Assigned to the Honorable David G. Campbell) |

Pursuant to the Court's Protective Order in this case (Doc. 269), Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") hereby  respectfully move this Court for an order holding that certain exhibits admitted into evidence during the *Jones v. Bard* and *Hyde v. Bard* trials (collectively "the trials") remain subject to the provisions of the Protective Order.

/ / /

4823-6054-0537

**INTRODUCTION**

All of the exhibits at issue admitted into evidence during the trials were produced by Bard subject to the provisions of the Protective Order. (Doc. 269.) As the Court recognized, the exhibits are not filed on the docket or maintained by the Court after trial is concluded.[1] Bard acknowledges that some exhibits were partially displayed in open court, but there are compelling reasons to find that the remaining portions of the exhibits, which were **not** used, displayed, discussed, or otherwise made publicly available during the trials (hereinafter the "Documents"), contain information that is both proprietary and confidential, and that Bard would suffer severe prejudice and injury if the information was made public.

Bard acknowledges that the limited portions of the trial exhibits actually displayed, discussed, or otherwise read into evidence during the trials are public documents. But the remaining portions of these confidential Documents have never been made publicly available during the trials or otherwise. These Documents are only tangentially related to the underlying causes of action, do not shed light on the claims tried, and therefore have no effect on the public's understanding of the judicial process. On the other hand, public disclosure of this information that has never been publicly available would harm Bard's competitive standing and will be improperly used as a vehicle to gratify private spite or to promote public scandal. Therefore, Bard requests an Order finding that the confidential Documents identified in Exhibit 1, the Declaration of Robert Carr ("Carr Decl."),[2] remain subject to the terms of the Protective Order previously entered by this Court. Although the Court no longer has copies of these documents, Bard is not filing them to avoid creating a

---

[1] *See* 2018.04.13 Jones Pretrial Conf. Tr. at 23:14-15 ("I understand the exhibits have been given back to the parties"); *id*. at 23:17-18 (the Documents are "not in the docket"); *id* at 23:21-22 (the court does not have the exhibits "here anymore").

[2] Mr. Carr's Declaration attaches Exhibit A, a chart identifying all trial exhibits subject to this motion, and a description identifying which specific pages of each exhibit were displayed and discussed during trial. Thus, to the extent the plaintiffs' counsel needs to determine which pages of a trial exhibit are still protected in the future, they can simply refer to the chart.

public judicial record of the very documents Bard is trying to protect. Should the Court want to review the documents at issue before ruling on this motion, Bard is ready to submit the documents *in camera* at the Court's convenience.

### I. Procedural History

Before both trials, Bard raised concerns over its confidential information being publicly disseminated outside the confines of the trials. *See* 2018.09.06 *Hyde* Pretrial Conf. Tr. at 84:7-16 ("We don't believe, in light of the procedures that are in the courtroom, the fact that the exhibits are maintained, only go to the jury and then they're gone, that the full extent of the documents have been published in open court. And we would like the opportunity to address, after the close of the trial, the portions of either the exhibits that were simply just identified and never addressed…Or the portions of exhibits that were not discussed"); 2018.04.13 *Jones* Pretrial Conf. Tr. at 24:22-25:5 ("[I]n order to protect that from being disseminated publicly outside the confines of the trial….do we need to move to seal them?...I just want to make sure that we have that – that we preserve that right."). Although the Documents are not available publicly, the plaintiffs' counsel takes the position that because they were admitted into evidence they are no longer governed by the Parties' Protective Order. However, the Protective Order provides that "[t]he use of Confidential Information during trial will be addressed in a later agreement between the parties, or, if they cannot reach an agreement, by further order of the Court." (Doc. 269 at ¶ 28.)

Attached as Carr Declaration Exhibit A is a detailed chart identifying the exhibits admitted into evidence during the trials that Bard designates as falling within certain categories of protectable information, as discussed further below. In most instances, only a page or a few pages of a multi-page document were displayed or discussed during the trials. The Documents contain Bard's confidential trade secrets and/or contain or reflect highly competitive, confidential, or proprietary information, and this Court has already

- 3 -

sealed similar documents in this litigation, including some of the exhibits in the Documents.[3]

In order for this sensitive commercial information to retain its confidentiality, Bard respectfully requests an Order finding that the Documents, all of which were produced to Plaintiff as Confidential pursuant to Section III of the Protective Order, remain subject to the terms of the Protective Order.

**II.     Factual Background**

The medical device industry for IVC filters is a highly technical and sophisticated industry. It is also a highly competitive industry in which each company carefully guards its company documents, data, systems, processes, research and development, and analysis from competitors. (*See* Ex. 1, Carr Decl.) To remain competitive, Bard has invested great amounts of time and considerable sums of money in medical device research, testing, development, design, analysis, regulatory compliance, and evaluation. This heightened level of competitiveness in the medical device market warrants protecting Bard's efforts in developing such precise and valuable medical devices, such as the Bard Filters at issue here.

In response, these Documents are not made public by Bard because if their content were obtained by Bard's competitors, it would give an unfair economic advantage to those competitors. The Documents are separated into four categories of confidential and proprietary information Bard contends should not be a matter of public record and should remain subject to the Protective Order to safeguard Bard's financial and business interests: (1) Product Design and Development Materials, (2) FDA Communications, (3) Quality Assurance Procedures, and (4) Financial Sales and Marketing Analysis.

**ARGUMENT AND CITATION OF AUTHORITY**

There are compelling reasons that the Documents are entitled to post-trial protection. Bard is not asking for court records to be sealed or to restrict access to

---

[3] Many of the documents were filed in connection with Bard's Motion for Summary Judgment on Preemption and were sealed by the Court. (Docs. 7787, 9692.)

4823-6054-0537

evidence discussed or displayed in open court. Instead, this is a unique situation whereby Bard merely seeks protection against the post-trial dissemination of materials that were not presented publicly at trial, and that were previously subject to this Court's Protective Order in light of the plaintiffs' position that "anything that comes into evidence is a matter of public record." *See* 2018.04.13 *Jones* Pretrial Conf. Tr. 25:9-21 (instructing Bard to file a motion in light of the plaintiff's position).

As to the trial exhibits, although all the exhibits were admitted into evidence, only some were actually discussed or displayed openly at trial. These unused exhibits, or unused portions of exhibits, are not part of the record compiled in these legal proceedings. The Documents were not filed with the Court, were not discussed or displayed at trial, were not otherwise revealed publicly, and are not otherwise publicly available. *See* 2018.04.13 Jones Pretrial Tr. at 23. Thus, there are no court records to seal.

Under these facts, Bard fears that public disclosure would eviscerate the effectiveness of protective orders, particularly in light of the fact that courts routinely provide for post-trial protection of confidential materials. *See e.g.*, *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993) ("Where the district court does protect material during discovery, it is common to provide [] for post-trial protection including the return or destruction of protected material."). Bard simply wants its confidential information to be kept confidential by the parties. It is Bard's position, therefore, that an exhibit that was admitted but not displayed in open court, or was admitted and only a portion was displayed or discussed, retains its confidentiality in some degree and should be afforded protection from unwarranted disclosure by way of continued protection governed by the Protective Order. (Doc. 269.)[4]

---

[4] Earlier this year, an Eastern District of Virginia court denied Defendants' motion with respect to "the trial testimony, the exhibits *presented openly at trial*, and jury instructions" but recognized, in a footnote, that "[t]he Court analyzes these materials *separate from the exhibits in evidence that were not discussed or displayed* at trial because it is so abundantly clear that the former should not be sealed and the latter present a somewhat closer question." *Benedict v. Hankook Tire Co. Ltd.*, 323 F. Supp. 3d 747, 767 (E.D. Va. 2018) (emphasis added). However, the district court determined that it "need not resolve that issue conclusively, given that it independently denies Defendants' motion on the

4823-6054-0537

Because Bard is not asking the Court to seal presumptively public court records, Bard is of the opinion that a compelling reasons standard is not necessary. Bard acknowledges, however, that the Court already concluded that the compelling interest standard applies. 2018.04.13 *Jones* Pretrial Conf. Tr. 24:19-21; *see also* 2018.09.06 *Hyde* Pretrial Conf. Tr. at 84:18-23 ("I'm not going to argue with the Court that that is not the proper burden, and I understand the Court's position on that, but we should be given the opportunity to address the exhibits that were not discussed or exhibits that were only partially published in the open courtroom"). Thus, Bard concedes that case law analyzing when it is appropriate to seal presumptively public court records is therefore instructive. *See e.g.*, *Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) (holding that a party seeking to seal documents from the public must articulate "compelling reasons" in favor of sealing).

There are compelling reasons to keep this information confidential sufficient to overcome the presumption of access. First, the public interest in access to this confidential information is minimal. The Documents are not otherwise publicly available and the information contained therein is not necessary to the public's understanding of the ultimate issues tried. Second, Bard has a compelling interest in maintaining the confidentiality of its commercially sensitive, proprietary, and trade secret business information. The need for public access to the Documents is lessened by the fact the Documents contain confidential and commercially sensitive information, the disclosure of which would harm Bard's competitive standing. Because Bard's Motion is narrowly tailored to a compelling confidentiality interest, it should be granted.

---

ground" defendants failed to comply with the court's local rule for sealing court records. *Id*. Unlike in *Benedict*, this Court already determined Bard did not have to comply with the sealing procedures set forth in Local Rule 5.6. *See* 2018.09.06 *Hyde* Pretrial Conf. Tr. at 83:7-18.

4823-6054-0537

**I.     The public interest in access to this confidential information is minimal.**

"[A]ccess to judicial records is not absolute," but the Ninth Circuit recognizes a strong presumption in favor of access when deciding whether to seal records. *Kamakana*, 447 F.3d at 1178. Here, however, the public interest in access to this information is minimal because (1) the exhibits are not otherwise publicly available, and (2) the information is not necessary to the public's understanding of the ultimate issues tried. Therefore, Bard requests that the documents remain subject to the Protective Order of this Court.

  A.     The exhibits at issue are not otherwise publicly available.

Although *Hyde* and *Jones* were "public" trials, the Documents are not available to the public. As a general rule, the public is permitted access to information produced during discovery, but these Documents were formerly sealed for "good cause" under Rule 26(c). *See San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999) ("It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public.").

Bard urges the Court to consider where, as here, a party produces confidential documents in reliance on a confidentiality agreement between the parties, that this reliance weighs in favor of continued secrecy. *See In re Denture Cream Prods. Liab. Litig.*, Civil Action No. 09-2051-MD, 2013 WL 214672, at *10 (S.D. Fla. Jan. 18, 2013). Bard recognizes, however, that "good cause" under Rule 26 is not enough to satisfy the compelling reasons test. *See Kamakana*, 447 F.3d at 1180.

  B.     The confidential information at issue is not necessary to the public's understanding of the ultimate issues tried.

The public's interest is further diminished here with respect to these trial exhibits because they do not shed light on the plaintiffs' claims and therefore have no effect on the public's understanding of the judicial process. The public does not have an interest in the confidential information contained in the Documents because this information was of

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4823-6054-0537

scant, if any, relevance to the underlying causes of action and thus would not aid in the public's understanding of the matters decided. *See e.g.*, *France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-CV-04967-WHO, 2014 WL 4965995, at *3 (N.D. Cal. Oct. 3, 2014) (finding "the public interest in access to this information is minimal as the information is not necessary to the public's understanding of the ultimate issues in this trial.").

In *Seattle Times Co. v. Rhinehart,* the Supreme Court recognized this diminished interest with respect to records attached to non-dispositive motions finding the public has less of a need for access to those records because they are often "unrelated, or only tangentially related, to the underlying cause of action." 467 U.S. 20, 33, 104 S.Ct. 2199 (1984). *See also United States v. Celgene Corp.,* No. CV 10-3165 GHK (SS), 2016 WL 6609375, at *4 (C.D. Cal. Aug. 23, 2016) (during pretrial discovery the defendant showed good cause for keeping the information confidential as the court found "[t]his kind of proprietary or private information is simply not dispositive of the specific questions at issue in the Motion to Strike and would not aid in the public's understanding of the matters to be decided" provided it was "not 'more than tangentially related to the merits' to Relator's claims or Defendant's defenses"). Here, this kind of propriety or private information is simply not dispositive of the specific questions at issue in *Hyde* or *Jones* and therefore the public's interest in access to these Documents is minimal.

**II.     Bard has a compelling interest in maintaining the confidentiality of its commercially sensitive, proprietary, and trade secret business information.**

In general, "compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such "court files might have become a vehicle for improper purposes[.]" *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Courts have also found that 'compelling reasons' sufficient to outweigh the public's interest in disclosure exist where sealing is required to prevent judicial documents from being used as sources of business information that might harm a litigant's

- 8 -

competitive standing. *See In re Elec. Arts, Inc.*, 298 Fed. Appx. 568, 569 (9th Cir. 2008); *Beaulieu Grp., LLC v. Bates*, No. EDCV151090JGBKKX, 2016 WL 7626471, at *2 (C.D. Cal. Oct. 18, 2016).

Here, the Documents should remain subject to the Protective Order because (1) the information is confidential and commercially sensitive; (2) disclosure would harm Bard's competitive standing; and, (3) if disclosed, the information might become a vehicle for improper purposes, namely misuse by the plaintiffs.

### A. The information is confidential and commercially sensitive.

Courts in the Ninth Circuit, including this District, have consistently held that documents containing confidential business information should be sealed. *See e.g., Bean v. Pearson Educ., Inc.*, No. CV 11-8030-PCT-PGR, 2013 WL 2455930, at *2 (D. Ariz. June 5, 2013) ("Compelling reasons to seal a typically exist when such court files might become "a vehicle for improper purposes, such as the use of records to . . . release trade secrets."); *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, No. CV 09-1531-PHX-JAT, 2011 WL 6182346, at *2 (D. Ariz. Dec. 13, 2011) (in holding that a party showed compelling reasons for sealing, the court observed that "[w]here a party shows that its documents contain sources of business information that might harm its competitive standing, the need for public access to the records is lessened."); *Clark v. Metro. Life Ins. Co.*, No. 308-CV-00158-LRH-VPC, 2010 WL 1006823, at *1 (D. Nev. Mar. 16, 2010) (because MetLife "sufficiently alleged" that the materials "bring attention to MetLife's confidential internal business deliberations, organization, and capabilities," the court concluded that MetLife put forth compelling reasons for sealing the requested documents); *Medicis Pharm. Corp. v. Acella Pharm., LLC*, CV 10-1780-PHX-JAT, 2012 WL 2260928 at *2 (D. Ariz. June 15, 2012) (sealing exhibits related to "Medicis' marketing strategy, Acella's product formulation,…various emails and deposition transcripts, viscosity test data, sales and marketing information, and various other documents" because "[m]uch of this information has been previously sealed by the Court,

has been designated as confidential by the parties pursuant to the protective order in this case, or could otherwise potentially harm the parties if released publicly because of its confidential and sensitive nature.").

Importantly, courts in the Ninth Circuit have found that these types of business documents should remain sealed even after being used at trial. For example, in *Livingston v. Isuzu Motors, Ltd.*, 910 F. Supp. 1473, 1480 (D. Mont. 1995), the court found that although exhibits were used at trial, they never remained with the clerk of court and were not made part of "the public record as it existed following the trial." The court further noted that "during the trial these documents were regarded by all parties as confidential, sensitive information, and by implication agreed that the untoward release of them had the potential to harm defendants. Finally, the confidential documents are not now part of the public record; the continued treatment of the documents as confidential will not impose a burden upon any party to this action." *Id.* The court relied on an opinion in a related litigation sealing similar exhibits, *Jochims v. Isuzu Motors, Ltd.*, 151 F.R.D. 338, 341 (S.D. Iowa 1993). In that case, the court sealed trial exhibits including "internal engineering standards, confidential information regarding advertising expenditures, and test reports relating to the design and development of the Trooper" because "[t]hey are the kind of technical and commercial information commonly subject to confidentiality orders in cases of this kind. Depriving these documents of their confidential status would be inimical to Isuzu's competitive interests." *Id.*

Similarly here, the Documents never remained with the clerk of court and were not made part of the public record as it existed following the trial. And, these documents (exhibit numbers identified in parentheses below, and as further described in Exhibit 1) indisputably contain confidential and commercially sensitive business information:

          *i.*      *Product Design and Development Materials*

These exhibits include design assessment documents, including analysis of adverse events to inform design modifications (0354) and Design Failure Mode and Effects

- 10 -

Analyses (0631, 0635, 1763, 4457) that Bard uses to internally evaluate the performance of its products based on every potential known failure mode. The most egregious example of these Documents that should be sealed is Volume 2 of the Meridian Design History File, only one page of which was admitted during trial (1861). Design History Files contain every major design document for a product, from concept to completion. Just this volume of the Design History file contains over 1,500 pages of critical design and testing materials. This category further contains design input and performance documents, including Design Input Summaries (4455), Product Performance Specifications (4420, 4456, 4897), Project Plans (4486), and product development documents (6089, 8572, 8573, 8583), which are subparts of the Design History File, and document the various steps taken to bring products to market. Lastly, this category contains extensive animal and bench testing (4896, 5384, 5385, 5929, 5934, 8358, 8359, 8368, 8373, 8546, 8574, 8575).

### ii. FDA Communications

Documents related to regulatory requirements such as FDA 510(k) filings and correspondence that include, incorporate, or otherwise discuss some or all of the above types of design and testing documents should remain protected (0691, 4603, 5272, 5273, 5379, 5486, 5488, 5586, 5587, 5588, 5512, 6013). Although some of the testing results may be in summary form, the regulatory correspondence contains a wealth of product development and design information that could be used by Bard's competitors. Courts have held that FDA communications and documents warrant protection. *See e.g.*, *Citizens Comm'n on Human Rights v. Food & Drug Admin.,* 1993 WL 1610471, *7 (C.D. Cal. 1993) (A drug application to FDA "by definition contains trade secret information because it contains significant information about how a...drug product is formulated, chemically composed, manufactured, and quality controlled."), *aff'd in part & remanded in part on other grounds,* 45 F.3d 1325 (9th Cir. 1995); *see also Bracco Diagnostics, Inc. v. Amersham Health Inc.*, CIVA 3-6025FLW, 2007 WL 2085350 (D.N.J. July 18, 2007)

4823-6054-0537

(finding that Amersham "has a legitimate private interest in protecting non-public correspondence with the governmental agency primarily responsible for its regulation and therefore sealing "regulatory correspondence" with the FDA, "cost and profit information," "unpublished clinical studies," and "internal analyses on products which are not intended for publication or dissemination"). Notably, when subject to a FOIA request, the FDA redacts all of the extensive confidential business information contained in these regulatory submissions. Similar protection is warranted here. *See Spectrum Pharm., Inc. v. Sandoz Inc.*, No. 2:12-CV-00111-GMN, 2014 WL 4202540, at *2 (D. Nev. Aug. 21, 2014) (sealing among other "proprietary business plans" and "business practices," "actual and planned confidential communications with the FDA").

### iii.     Quality Assurance Procedures

These documents include internal adverse event analyses, including complaint tracking and trending, Failure Investigation Memoranda, and Health Hazard Evaluations (0443, 0447, 0614, 0677, 0769, 0924, 1140, 4469, 4607, 4820, 4895, 5970). These documents reflect Bard's extensive quality assurance program to track and trend adverse events, and the procedures it uses as part of that program to investigate certain adverse events or trends. These procedures are also incorporated into the monthly management reports providing senior management with adverse event analyses (4504, 4507, 4509, 4512, 4514, 4515, 4519, 4522, 4528, 4532, 4533, 4534). Similarly, this data was incorporated into a chart of various adverse event analyses compiled for this litigation (4565). Risk analyses for different IVC filter generations, including risks of the manufacturing process and inherent characteristics of the product (4895, 5967), are part of the process that Bard uses to evaluate its devices. The most important document in this category is a Quality Management Board Review presentation (5946), which includes Quality Assurance analysis, such as adverse event tracking and trending, corrective action and audit information, and other extensive Quality Assurance information for all of BPV's products. Lastly, this category includes Standard and Division Operating Procedures and

4823-6054-0537

corporate policies for risk analysis and management (5563, 5565, 7961, 7962) that Bard developed to govern the Quality Assurance procedures for all of its products.

### iv. *Financial Sales and Marketing Analysis*

The last category of documents includes detailed market analysis, including financial projections for Bard's own products and its' competitors. Concept and Idea Product Opportunity Appraisals analyzing the IVC filter market, various design issues, and financial data (0504, 0591, 0770, 1742, 4454) provide historical and future financial analyses, as well as design evaluation to determine the potential effects in the marketplace. Filter Franchise Reviews (0571) analyzing Bard's and competitors' lines of IVC filters similarly include detailed analysis of design issues, financial data, and future projections based on past data. Lastly, this category includes Commercialization Plans, Post-Market Reviews, and other sales and competitor analysis including market strategies and financial analysis (1568, 1788, 2238, 4468), all of which include sensitive financial information.

B. <u>Public disclosure of Bard's confidential information would harm Bard's competitive standing.</u>

The medical industry is a highly technical and a highly competitive industry in which each company carefully guards its company documents. *See e.g.*, *In re Gabapentin Patent Litigation*, 312 F. Supp. 2d 653, 659 (D.N.J. 2004) (noting the pharmaceutical industry is highly competitive and granting protective order). Bard has continually and successfully made efforts to protect its confidential information from its competitors, in part because it could be used by competitors against Bard. *See In re Denture Cream Products Liab. Litig.,* 09-2051-MD, 2013 WL 214672 (S.D. Fla. Jan. 18, 2013) (finding documents confidential in part because the defendant "consistently treated the information as closely guarded secrets"); (*See* Doc. 269; Ex. 1, Carr Decl.) Public disclosure of this information would allow competitors to take advantage of this information in developing medical devices, allowing Bard's competitors to gain an unfair advantage by using it to

4823-6054-0537

determine which features of its own products it could further develop and improve in order to gain market share over Bard. *See e.g.*, *TVIIM, LLC v. McAfee, Inc.*, No. 13-CV-04545-HSG, 2015 WL 4448022, at *3 (N.D. Cal. July 19, 2015) (granting defendant's motion to seal trial exhibits).

Bard invests substantial amounts of money in medical device research, testing, clinical trials, development, design, analysis, regulatory compliance, and evaluation. (*Id.*) Public disclosure of the Documents would not only harm Bard because of the trade secrets and confidential information they contain, but it would also eviscerate the significant time and resources Bard has expended in protecting its business information. Critically, the commercially sensitive nature of these Documents is not limited to the Documents themselves; they reflect the testing, methods, procedures, and corporate policies that Bard continues to perform on products today, and will continue to use in the future.

Thus, if Bard's competitors obtained the Documents, they would have an unfair economic advantage over Bard (Ex. 1, Carr Decl.), and could extrapolate information contained in the Documents to apply to Bard's current and future products. *See e.g.*, *In re Eli Lilly & Co.*, *Prozac Products Liability Litigation*, 142 F.R.D. 454, 460 (S.D. Ind. 1992) (holding pharmaceutical company would suffer harm if the manufacturing process it has expended time and money developing became known to competitors); *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 305 *order clarified*, 153 F.R.D. 614 (N.D. Ill. 1993) ("[D]isclosing Raychem's product design modification and changes would decrease Raychem's incentive to invest in safety devices. Raychem's competitors would get free access to information which Raychem has spent a great deal of time and money producing and protecting").

There is simply no valid reason for Bard's competitors to obtain the results of Bard's extensive product testing to shortcut their own development of competitor products, or to otherwise attempt to use Bard's internal data against Bard in the

- 14 -

marketplace. As demonstrated, the public release of the Documents would cause real and tangible harm to Bard.

    C. <u>If the protective order is not enforced, the information may become a vehicle for improper purposes such as to gratify private spite or promote public scandal.</u>

Enforcing the Protective Order does not prejudice any litigant, and any plaintiff who files a lawsuit against Bard has access to the documents at issue. Once a protective order is entered, Bard produces the documents or plaintiffs have access to them through the plaintiffs' MDL counsel. To the contrary, Bard's concern about the public dissemination of its confidential business information is not merely speculative. As the Court will recall, prior to the formation of the MDL, counsel for the plaintiffs provided numerous trial exhibits from the *Phillips v. Bard* trial to NBC. Bard sought discovery of counsel's contacts with NBC, but because the plaintiffs agreed that the NBC news stories were inadmissible and would not be used during the MDL trials, the discovery was irrelevant. (September 6, 2016, Order, Doc. 3313.) Moreover, because the plaintiffs conceded that such news stories are inadmissible, the sole purpose of any similar release of trial exhibits in the future would be squarely in the realm of "private spite or promoting public scandal," or to simply obtain free advertising. In other instances lawyers or groups advertising to file lawsuits against Bard have quoted from those exhibits on their websites (*See* Exhibit 2 (websites linking to an NBC video and stating "[a]n investigation by NBC News reviewed internal documents showing that C.R. Bard was concerned about the safety of the G2 filter"; "[c]onfidential documents revealed that employees of the medical device giant voiced concerns about the G2 series filters…").) The fact that these confidential Documents may become a vehicle for improper purposes is a compelling reason sufficient to justify the Documents remain subject to the terms of the Protective Order previously entered by this Court.

4823-6054-0537

### III. Bard's compelling interests in maintaining the confidentiality of its proprietary information outweighs the common law right of access.

As shown, there are compelling reasons sufficient to outweigh the public's minimal interest in disclosure and to justify maintaining Bard's confidential information. At issue are confidential business documents that are tangentially related to the underlying causes of action, do not shed light on the claims tried, and therefore have no effect on the public's understanding of the judicial process. On the other hand, public disclosure of this information that is not otherwise publicly available would harm Bard's competitive standing and may be improperly used as a vehicle to gratify private spite or to promote public scandal. These are compelling reasons to keep this information confidential sufficient to overcome the presumption of access. *See e.g.*, *Selling Source, LLC v. Red River Ventures, LLC,* 2:09-CV-01491-JCM, 2011 WL 1630338, at *2 (D. Nev. Apr. 29, 2011) (because "the material includes information about proprietary business operations…there are compelling reasons to seal the material because possible infringement of trade secrets outweighs the general public interest in understanding the judicial process.").

Because Bard has articulated "compelling reasons" the documents should remain confidential, showing this Court the specific prejudice or competitive harm that will result from public disclosure, and because the public has minimal interest in this proprietary information that is not otherwise publicly available, Bard has established that its confidentiality interests in the Documents sufficiently outweigh the general public's interest.

### CONCLUSION

In conclusion, Bard requests an Order that the Documents remain subject to the terms of the Protective Order previously entered by this Court.

4823-6054-0537

RESPECTFULLY SUBMITTED this 26th day of October, 2018.

SNELL & WILMER L.L.P.

By: *s/Kristine L. Gallardo*
James R. Condo
Kristine L. Gallardo
One Arizona Center
400 E. Van Buren St., Ste. 1900
Phoenix, AZ 85004-2204

Richard B. North, Jr. (admitted *pro hac vice*)
Matthew B. Lerner (admitted *pro hac vice*)
NELSON MULLINS RILEY &
  SCARBOROUGH LLP
201 17th Street, NW / Suite 1700
Atlanta, GA  30363

*Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of October, 2018, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

*s/Kathy Sprinkle*

4823-6054-0537