Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California  92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
602-530-8000

*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO AMEND THE BELLWETHER TRIAL SCHEDULE** |

Plaintiffs submit their reply to the motion to amend the bellwether trial schedule to remove the *Mulkey* case.

**ARGUMENT**

I. The *Mulkey* Case, Which Will Be Tried as a Fracture Case, Will Not Provide "New Insight into How the Claims and Defenses Are Received By Juries", Whereas the *Tinlin* Case Will.

Defendants say, and Plaintiffs agree, this Court should be guided by its prior Order, which states that "[t]he purpose of the bellwether trials is to give the parties insight into how their claims and defenses are received by juries . . . ." Doc. No. 13118 at 1 (quoting Case Management Order (CMO) No. 28 at 1-2). In that same Order, the Court also states that "[i]f the process is not going to result in trial of a representative sample of cases, the Court's view will be that the MDL should be terminated and all cases returned to their original districts." *Id.* at 2. Applying this Court's guiding principles, it is clear that trying the *Mulkey* case, essentially the third Eclipse case in a row, will not provide new insights into the parties' claims or defenses and should be removed from the bellwether process.[1]

Defendants go to great lengths to try to show the facts of the *Mulkey* case are significantly different from the facts in the *Jones* and *Hyde* cases when, in reality, they are very similar. First, the *Hyde* case was tried by Defendants as an Eclipse case using substantially the same evidence that they used in the *Jones* case with the same witnesses, and the fact that Plaintiffs tried it as G2X case does not change this fact. There is no reason to think *Mulkey* will be any different. Second, Defendants have known for well over a year that Plaintiffs will be trying *Mulkey* as a fracture case yet they continue to represent that *Mulkey* "would be the **only** non-fracture case in the bellwether process, thus providing

---

[1] Plaintiffs fully support the bellwether process and have always done so to the extent it is truly representative and accomplishes the goals for which it was established, to "enhance and accelerate both the [litigation] process itself and global resolutions." Fallon, Eldon E., et al., Bellwether Trials in Multidistrict Litigation, 82 Tul. L. Rev. 2323, 2325 (2008). Plaintiffs referred to the bellwether process as being stale to the extent the process involves trying yet another Eclipse case. Doc No. 12990 at 8. This is not applicable, however, if the process remains truly representative and the *Tinlin* case is tried next.

1

critical information for the other non-fracture cases . . . ." *Id.* at 1 (emphasis in original). The fact that Defendants' experts do not agree that there is a fracture is of no consequence here. A jury will ultimately decide this issue after having been presented with Plaintiffs' evidence that the filter is fractured.[2] In this respect, for all intents and purposes, there will be no real difference between the evidence presented in *Jones*, *Hyde* and *Mulkey* except that Defendants' experts will apparently say the filter is not fractured.

Defendants' argument regarding composition of the cases in the MDL is equally unpersuasive. *Id.* at 2. Nowhere in the Manual for Complex Litigation, 4th Edition, is the composition of cases discussed as a criteria for bellwether selection. Nor do Defendants cite any on point or persuasive support for this proposition presumably because, to the best of Plaintiffs' knowledge, there is none.[3] In fact, it would be nonsensical to include the percent or share of the cases as a criteria for bellwether selection because it would do nothing more than ensure the same type of case be tried multiple times, thereby frustrating the purpose of bellwether trials.

To date, it is undisputed that no Recovery filter case has been tried in the MDL or by counsel involved in the MDL or with the benefit of the vast discovery conducted in the

---

[2] Defendants are correct that the evidence Plaintiff will present includes the opinions of Drs. Hurst and Muehrcke, but they are not correct that this is the only evidence. It can be inferred from the testimony of the radiologist who read Plaintiff's January 5, 2017 CT images that he concedes he may have missed the filter fracture (among other failures of the device). (*See* Excerpt from Torin Walters, M.D. Deposition Trans. attached as Exhibit A). Specifically, he concedes that one strut is shorter than the rest and that if they are all supposed to be equal in length, then a piece of the shorter strut is missing. Exhibit A at 51-52. It is not disputed that all the arms are supposed to be the same length. Exhibit A at 52. Thus, his testimony supports Dr. Hurst's testimony that the filter is, in fact, fractured.

[3] Defendants' discuss *Collazo c. WEN by Chaz Dean Inc.* stating in a parenthetical in a footnote that bellwethers were chosen based on severity of injury and percentage representation. Doc No. 13118 at fn 1. This case is distinguishable; the court consolidated eight cases into the first bellwether trial, which is a very different scenario from the one presented here. *Collazo v. WEN by Chaz Dean, Inc.*, 2018 WL 3424957, at *1 (C.D. Cal. July 12, 2018).

2

MDL.[4] As of now, the parties have no understanding about how a jury would receive the claims or defenses in a Recovery case. This important insight will be gained from the *Tinlin* trial, which should be the next and final case tried in this MDL.[5]

### II. Ms. Mulkey Should be Permitted to Withdraw her *Lexecon* Waiver to Prevent Manifest Injustice and Because She is Not Trying to "Game the System".

The parties agree the Ninth Circuit has not addressed the issue of withdrawal of a *Lexecon* waiver. *Id.* at 3-4. Assuming this Court applies the manifest injustice standard articulated in *Waggoner v. Dallaire*, Ms. Mulkey has demonstrated manifest injustice. 767 F.2d 589, 593 (9th Cir. 1985).

"In determining what constitutes manifest injustice, courts may consider (1) the effect of the stipulation on the party seeking to withdraw the stipulation; (2) the effect on the other parties to the litigation; (3) the occurrence of intervening events since the parties agreed to the stipulation; and (4) whether the evidence contrary to the [stipulation] is substantial." *Morrison v. Zangpo,* 2008 WL 4449585, at *4 (N.D. Cal. Sept. 30, 2008) (quoting *State Farm Fire & Cas. v. McDevitt*, No. C-00-2240 EDL, 2001 U.S. Dist. LEXIS 7529 (N.D. Cal. 2001)) (alteration in original)); *Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co.,* 2015 WL 5675861, at *10 (N.D. Cal. Sept. 28, 2015)Where the stipulation is procedural rather than factual, as is the case here, courts have found the fourth element inapplicable. *Id.*

Here, the effect on Ms. Mulkey has been articulated in Plaintiffs' moving brief as

---

[4] As Defendants correctly point out, Plaintiffs were admittedly mistaken in stating there has not been a Recovery tried to verdict in any jurisdiction. Doc. No. 13118 at 2. The case referenced by Defendants was tried in 2012 when Bard IVC filter litigation was in its infancy, *three years before the MDL was created*, by counsel not involved in this MDL without the benefit of the vast discovery conducted after 2012 and in this MDL. Under these circumstances, this verdict provides little, if any, insight into how claims and defenses in a Recovery filter case are received by a jury.

[5] If the *Tinlin* case is tried next, it will be the fifth case resolved as part of the bellwether process. As this Court has noted, "five or six cases should provide the parties with ample information to achieve global settlement if such settlement is possible." CMO 28 at 2. Under these circumstances, five cases is sufficient to accomplish this goal.

3

have the intervening events have changed this bellwether process into one that constitutes manifest injustice. If the *Mulkey* case is tried, itis no longer representative or informative to the parties. Doc No. 12990 at 8. The effect on Defendants of removing her case from the trial calendar would be minimal. Plaintiffs agree that Ms. Mulkey's case should be remanded and tried as it is a mature case. Doing so will ensure that neither party loses the benefit of the work completed.. Moreover, it would allow for the parties to try this case "in front a different judge" that may "make different evidentiary calls and different calls on how much time to afford parties" as well as "a different state's jury" that "may see things differently." Transcript of October 4, 2018 Case Management Conference (Trans.) at 32. If the case is tried in Kentucky, it will be instructive to the parties. This would be fair to both parties and would prevent manifest injustice. Lastly, trying the case in Kentucky using the trial package assembled by the Plaintiffs' Steering Committee ("PSC") would greatly diminish the Ms. Mulkey's litigation expenses.

Defendants' argument that Plaintiffs are trying to game the system is absurd. In support of this argument, Defendants make the baseless accusation that Plaintiffs have tried to game the system in the past through dismissal or refusal of *Lexecon* waivers. Doc No. 13118 at 4. With regard to the two Plaintiffs who refused to waive *Lexecon*, the Court "concluded that Plaintiffs are not attempting to manipulate the bellwether selection process by strategically withholding of waivers, and that counsel for the two Plaintiffs provided colorable reasons for declining waivers." *See* CMO 15 (Doc No. 3214). As such, this argument is frivolous and should be disregarded.

### III. Development of Trial Packages Is One of the Reasons for Conducting Bellwether Trials.

Judge Fallon correctly noted that an important purpose of bellwether trials is "the development of 'trial packages' for use by local counsel upon dissolution of MDLs." Tul. L. Rev. at 2338. While there are more than 20 firms on the PSC, there are only a handful of firms whose counsel have participated as trial counsel. These counsel, who know the

4

case inside and out, must create the trial packages. While six months may seem like sufficient time to do so[6], the Court must take into account that trial testimony will have to be taken of both parties' experts at numerous locations throughout the country in addition to all the other work that goes into the creation of trial packages. It will take significant time to coordinate, prepare, and conduct these depositions as well as significant time to cut this testimony for the trial packages. This can and should only be done by counsel with experience trying these cases. Many of these attorneys who are necessary to this process are on the trial team for the *Mulkey* case, including several who have handled the depositions and examination at trial of the expert witnesses. Several others are on the trial team for an Arizona State court case that will be tried during this six-month period. This severely hampers Plaintiffs counsel's ability to complete this important task in the required time frame.

Defendants' argument that there are other options such as delaying remands rather than disrupting the bellwether process if Plaintiffs are unable to timely prepare trial packages is unavailing. Doc No. 13118 at 6. Delaying remands would have a far greater disruptive effect on the bellwether process. Four cases have been resolved in this MDL, including three cases tried to verdict. An additional case, *Tinlin*, will be tried to verdict by the time this Court fulfills its intention to remand all cases in this MDL. CMO 38 (Doc No. 12856). It is clear that by May 2019, even without the *Mulkey* trial, the bellwether process will have run its course and remand is required since the ultimate goal of the bellwether process will have been accomplished.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion should be granted in its entirety.

---

[6] It is also important to note that the upcoming holiday season means that these is, in reality, an even tighter time frame.

5

1  RESPECTFULLY SUBMITTED this 31st day of October, 2018.

2                           GALLAGHER & KENNEDY, P.A.

3                           By: */s/* Mark S. O'Connor
                                Mark S. O'Connor
                                2575 East Camelback Road
                                Phoenix, Arizona  85016-9225

                          LOPEZ McHUGH LLP
                                Ramon Rossi Lopez (CA Bar No. 86361)
                                (admitted *pro hac vice*)
                                100 Bayview Circle, Suite 5600
                                Newport Beach, California 92660

                          *Co-Lead/Liaison Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of October, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/ Jessica Gallentine*