Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660
949-812-5771

Mark S. O'Connor (011029) – moconnor@beusgilbert.com
Beus Gilbert, PLLC
701 N 44th Street
Phoenix, Arizona 85008
480-429-3000

*Co-Lead/Liaison Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO ENFORCE PROTECTIVE ORDER OVER CERTAIN TRIAL EXHIBITS**<br><br>(Assigned to the Honorable David G. Campbell) |

Plaintiffs submit their Opposition in Response to Defendant C.R. Bard, Inc.'s and Bard Peripheral Vascular, Inc.'s Motion to Enforce Protective Order Over Certain Trial Exhibits in the *Jones* and *Hyde* trials ("Motion"). Doc. 13126.

### I. Introduction

C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") have asked this Court for a third time (Doc. 11642, Motion to Seal *Booker* Exhibits, and Doc. 11766, Motion for Reconsideration), in derogation of common law and the First Amendment, for the exceptional remedy of ex post facto sealing of pages of eight-three (83) exhibits admitted in open court, considered by the Court in making rulings, and presented to and relied on by jurors in deliberations in both the *Jones* and *Hyde* bellwether trials.

Plaintiffs oppose Bard's Motion since Defendants have waived the right to ex post facto seal exhibits admitted during a public trial. Further, Defendants have failed to establish any compelling reasons to support protection of the trial exhibits. Bard's motion is conspicuously devoid of any factual findings that might arguably outweigh Constitutionally ensconced policies favoring disclosure. Bard's motion does not articulate a "narrowly tailored" remedy which is critical to suppress the public's overriding First Amendment right of access to these exhibits which entered the public domain. This is true even if certain pages of the exhibits were not displayed during trial. The exhibits admitted in the trials and used in examination of witnesses can no longer be said to contain trade secrets. In fact, members of the public were free to, and did, observe the trial proceedings without any request by Defendants to seal the courtroom prior to admission of these exhibits or contemporaneously while these exhibits were being used in the public trials. *Phillips v. C.R. Bard*, No. 3:12-cv-00344-RCJ-WGC (D. Nev. June 1, 2015) ("Even if the test could be satisfied, Plaintiff correctly notes that Defendants have waived the issue because Defendants made no motion to seal the exhibits or testimony at the public trial." See e.g., *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 & n.11 (2nd Cir. 2004); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 680 (3d Cir. 1988); *Nat'l Polymer Prods. v. Borg–Warner Corp.*, 641 F.2d 418, 421 (6th Cir. 1981); *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 588 (E. D. Va. 2009) ("The First Amendment public right of access to these exhibits sprang into existence upon their being offered into evidence for the jury's consideration at trial, and since no request was made to seal them prior to or at that time, Savvis waived any future right to assert any competing interest to be weighed by the Court and, thus, any objection to the public availability of the exhibits in the Court's files.").

Additionally, Bard fails to cite any precedent to support its position or address the Court's two Orders that have adjudicated many of these issues which are once again raised in this Motion: Order regarding Motion to Seal *Booker* Exhibits (Doc. 11642) and Order regarding Motion for Reconsideration (Doc. 12068). Instead, Defendants distort the case law

cited, in a fairly confusing manner, and re-argue cases that have already been evaluated by the Court in turn wasting the Plaintiffs and the Courts resources and time.

## II.    Argument

### A.    Post-Trial The Factual Basis For The Protective Order No Longer Applies.

The Protective Order did not modify or address Bard's burden to establish "compelling reasons" before documents were attached as exhibits to dispositive motions or admitted as evidence at trial. Doc. 268.  The Order expressly states it does not apply, in any way, to the use of documents at trial in para. 28:

> The terms of this Protective Order do not preclude, limit, restrict, or otherwise apply to the use of Confidential Information at trial. The use of Confidential Information during trial will be addressed in a later agreement between the parties, or, if they cannot reach an agreement, by further order of the Court.

To the extent Bard intended to seal any exhibits or pages of exhibits, it was incumbent on Bard to obtain a separate order from the Court before the start of trial, request to seal the courtroom, or contemporaneously address the need to seal when a particular exhibit was admitted or referred to at trial.  Bard did not even object pursuant to Federal Rules of Evidence 403 that specific pages were "not necessary to the public's understanding of the ultimate issues tried" or "commercially sensitive, proprietary, or trade secret business information." Doc. 13136 at 7 and 8. The Protective Order does not treat trial exhibits differently simply because certain pages were displayed or not. And Bard has not provided any authority suggesting that "unused" pages of an admitted trial exhibit should remain protected. As this Court has determined in the *Booker* Order, "[t]he protective order makes clear that exhibits are now part of the public domain and no longer confidential or subject to being sealed." Doc. 11642 at 2. Bard has no factual basis and has not shown a compelling reason to otherwise justify enforcement of the Protective Order after trial.[1]

---

[1] Bard asserts that "if the protective order is not enforced, the information may become a vehicle for improper purpose" as a compelling reason for sealing all pages of exhibits not displayed in trial. Doc. 13126 at 15. Plaintiffs have no intent "to gratify private spite or

### B.   Legal Presumption Favors Public Access To All Exhibits Admitted During a Public Trial, Regardless of Whether Specific Pages Were Not Displayed.

Courts have overwhelmingly denied requests seeking after-the-fact sealing of any alleged confidential or trade secret information disclosed in open court. [2] A trial is a proceeding open to the public and "[t]rue public access to a proceeding means access to knowledge of what occurred there ... not only by witnessing a proceeding firsthand, but also by learning about it through a secondary source." *Carnegie Mellon Univ. v. Marvell Tech.*

---

public scandal" as Defendants have suggested. *Id*. A case Bard relies on in its moving papers best describes the realities inherent in trial. "The publicity of a trial and the release of information therein is the price paid for open trials." *Poliquin v. Garden Way, Inc*., 989 F.2d 527, 535 (1st Cir. 1993).

[2] *See Warner Chilcott Co., LLC v. Mylan Inc*., 2014 U.S. Dist. LEXIS 181576 at * 3 (D.N.J. Dec. 10, 2014); *see also, Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd*., 2013 U.S. Dist. LEXIS 45050 at *16 (W.D. Pa. Mar. 29, 2013)("Previous public disclosure of information in open court, and even outside of court, operates to waive any right to seal judicial records containing such information." "[I]t is well established that the release of information in open court is a publication of that information, and, if no effort is made to limit its disclosure [prior to the proceeding], operates as a waiver of any rights a party had to restrict its future use.'")(quoting *Littlejohn*, 851 F.2d at 677; *Fleming v. Escort, Inc*., 2013 WL 1290418 (D. Idaho Mar. 27, 2013)(refusing to seal information regarding companies' confidential and proprietary business and financial information because it was discussed at open trial and the moving party could not claim it was unaware disclosure was likely to occur.); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 n.11 (2d Cir. 2004)(holding that "[o]nce [information] is public, it necessarily remains public" and further stating that "[o]nce the cat is out of the bag, the ball game is over"); *In re Google Inc. Gmail Litig*., 2014 U.S. Dist. LEXIS 136420, 2014 WL 1053744032-33 (N.D. Cal. Aug. 6, 2014)("In sum, where, as here, the parties did not request closure of the courtroom ... and the disclosures were not inadvertent, the Court will not permit an ex-post facto redaction of statements made in open court in the transcript."); *Pfizer, Inc. v. Teva Pharms. USA, Inc*., U.S. Dist. LEXIS 6763, 2010 WL 2710566, at *10-12 (D.N.J. July 7, 2010)(denying post-hearing motion to seal transcript because information disclosed during open court is part of the public record; "the onus is on the parties to request sealing of the courtroom prior to a hearing that will involve the discussion of allegedly confidential information."); *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.,* 2012 U.S. Dist. LEXIS 58227, 2012 WL 1432519, *20-21 (D. Ariz. Apr. 25, 2012)("neither party made any request prior to the proceeding to restrict public access to the proceeding. Nor did the parties take any steps to limit or object to the public disclosure of this information at the proceeding. Thus, the parties have already voluntarily 'let the cat out of the bag,' and this Court is unwilling, let alone able, to undo what is already done.").

*Group, Ltd.*, CIV.A. 09-290, 2013 WL 1336204, at *5 (W.D. Pa. Mar. 29, 2013)(citing *United States v. Antar*, 38 F.3d 1348, 1360 (3d Cir.1994)).

The exhibits at-issue were discussed extensively by witnesses in open court. Furthermore, highlighted, pages blown up and displayed on a large screen for everyone in the court room to view, and for examination and consideration by jurors in deliberations. In most trials, like in *Booker*, *Jones* and *Hyde*, each and every page of an exhibit is not displayed during trial. Whether due to time limitations or an effort to streamline of the case, it does not affect the relevancy of the entirety of any document or deem undisplayed portions unnecessary to the adjudication of the claims. Further, in both trials counsel from both sides often requested that jurors review exhibits in their entirety during deliberations. Obviously, the complete context of any individual document was essential to a thorough understanding of its probative value. Unless a redaction was requested during trial, the entirety of the exhibit became a part of the judicial record at the time it was admitted.

Bard was aware the information it now seeks to seal would be disclosed and had multiple opportunities to seek protection of its exhibits prior to and during trial. Since Bard never moved to seal the courtroom, objected to the admission of these exhibits as a whole or in part, or otherwise safeguarded these exhibits from public disclosure, Bard decided not to treat these documents as "closely guarded secrets" and waived protection of these exhibits which have now entered the public domain. *See* footnote 2.

Bard has not provided any precedent to warrant sealing portions of admitted exhibits after trial. Instead Bard relies on several inapplicable cases regarding non-dispositive motions which applied a "good cause" standard for dispositive motions related to pre-trial adjudication and not admissibility at trial..[3] Conversely, Plaintiffs have authority which is

---

[3] *In re Denture Cream Prods. Liab. Litig.*, Civil Action No. 09-2051-MD, 2013 WL 214672, at *10 (S.D. Fla. Jan. 18, 2013) (non-dispositive discovery motion); *France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-CV-04967-WHO, 2014 WL 4965995, at *3 (N.D. Cal. Oct. 3, 2014) (non-dispositive *Daubert* motions and motions in *limine*); *Seattle Times Co. v. Rinehart,* 467 U.S. 20, 33, 104 S.Ct. 2199 (1984)( non-dispositive pre-trial discovery

both analogous and instructive.. *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd*., CIV.A. 09-290, 2013 WL 1336204 (W.D. Pa. Mar. 29, 2013). Defendants in *Carnegie Mellon Univ.* made similar arguments as Bard and sought to seal pages of an admitted exhibit that were not displayed at trial. The court found "[a]s this was an open proceeding, the public maintains its right to secure knowledge of what occurred there, and it would be inconsistent with Third Circuit precedent to seal the materials discussed at such an open proceeding. *Antar*, 38 F.3d at 1360 ("[F]or what exists of the right of access if it extends only to those who can squeeze through the door?"). Even if the materials were not shown for the jury's consideration, the slides remain part of the judicial trial record." *Id.* at *6 (citing *Littlejohn v. BIC Corp*., 851 F.2d 673, 684 (3d Cir. 1988).

Defendants' reliance once again on *Livingston v. Isuzu Motors*, 910 F. Supp. 1473, 1480 (D. Mont. 1995) and *Jochims v. Isuzu Motors*, 151 F.R.D. 338 (S.D. Iowa 1993) is misplaced.[4] Those cases held that "although the trial record had not been sealed, there was no common law right of access to confidential documents used at trial." *Livingston,* 910 F.

---

motions); *United States v. Celgene Corp.,* No. CV 10-3165 GHK (SS), 2016 WL 6609375, at *4 (C.D. Cal. Aug. 23, 2016)( non-dispositive pre-trial discovery motions); *Bean v. Pearson Educ., Inc.*, No. CV 11-8030-PCT-PGR, 2013 WL 2455930, at *2 (D. Ariz. June 5, 2013)(dispositive motion for summary judgement); *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.,* No. CV 09-1531-PHXJAT, 2011 WL 6182346, at *2 (D. Ariz. Dec. 13, 2011)(dispositive motion for summary judgement); *Clark v. Metro. Life Ins.Co.*, No. 308-CV-00158-LRH-VPC, 2010 WL 1006823, at *1 (D. Nev. Mar. 16, 2010)(non-dispositive discovery motion); *Medicis Pharm. Corp. v. Acella Pharm., LLC*, CV 10-1780-PHX-JAT, 2012 WL 2260928 at *2 (D. Ariz. June 15, 2012)(non-dispositive motion for attorney's fees); *Citizens Comm'n on Human Rights v. Food & Drug Admin.,* 1993 WL 1610471, *7 (C.D. Cal. 1993)(dispositive motion for summary judgement); *See Spectrum Pharm., Inc. v. Sandoz Inc.*, No. 2:12-CV-00111-GMN, 2014 WL 4202540, at *2 (D. Nev. Aug. 21, 2014)(dispositive motion for summary judgement); *In re Eli Lilly & Co., Prozac Products Liability Litigation*, 142 F.R.D. 454, 460 (S.D. Ind. 1992)(entry of protective order); *Culinary Foods, Inc. v. Raychem Corp.,* 151 F.R.D. 297, 305 *order clarified*, 153 F.R.D. 614 (N.D. Ill. 1993)(entry of protective order); *Selling Source, LLC v. Red River Ventures, LLC,* 2:09-CV-01491-JCM, 2011 WL 1630338, at *2 (D. Nev. Apr. 29, 2011)(non-dispositive motion to quash and compel discovery).
[4] As noted in the Court's Order regarding the Motion to Seal *Booker* Exhibits. Doc. 11642 at 3.

Supp. at 1480 (describing and relying on holding in *Jochims*, 151 F.R.D. 338). The holding directly conflicts with the Ninth Circuit's *Kamakana* decision finding a "strong presumption in favor of access" to judicial materials. 447 F.3d at 1178.[5]

Not only are they inconsistent with controlling authority in the Ninth Circuit, both of Bard's cited cases have important factual differences from *Jones* and *Hyde*. Unlike in *Booker, Jones* and *Hyde*, the protective orders in *Jochims* and *Livingston* expressly governed the use of documents at trial and both parties treated the documents as confidential at trial. *Jochims*, 151 F.R.D. at 341; *Livingston* 910 F. Supp. at 1480. Here, the Protective Order entered in the MDL expressly does not apply to the use of documents at trial. To the extent it intended documents to be sealed from the public, Bard was should have moved for separate order from the Court, to either seal the courtroom, or  to preclude admission of the pages now at-issue.

There is no Ninth Circuit authority that recognizes the Defendants' strategy. From the cases cited by both parties, once an exhibit is admitted into evidence the entire exhibit, regardless of which pages were displayed, becomes part of the judicial record. Bard not only failed to request that the courtroom be sealed, but actively admitted into evidence more than half of the exhibits it now moves to seal. Withholding or sealing certain pages of admitted exhibits from the public based on the assertion that after trial all pages not displayed now contain "commercially sensitive, property and trade secret business information" prohibits the strong assumption in favor of access and greatly limits the public's understanding of the ultimate issues tried and adjudicated by the jury. *Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172 (9th Cir. 2006). A retroactive order sealing hundreds (maybe thousands) of pages of admitted exhibits that have entered the public domain will not resolve that Bard

---

[5] This reasoning also conflicts with *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122 (9th Cir. 2003), which held that when discovery materials are made part of the judicial record but sealed before disclosure to the public and subsequently returned to the defendant after settlement of the case, a third party could still obtain copies of those records absent a showing of "compelling reasons" that outweighed the common law right of access.

voluntarily "let the cat out of the bag."[6]

**C.    Bard Has Not Meet the Compelling Reasons Standard Required to Justify Sealing Trial Exhibits Which Form the Basis of The Jury Verdict.**

To overcome the "strong presumption in favor of access" in relation to a dispositive motion or proceeding, the party seeking to seal bears the burden of meeting the "compelling reasons" standard. *Kamakana* 447 F.3d at 1178. Under the "compelling reasons" standard, a district court must then weigh "relevant factors" and base its decision "on a compelling reason," and "articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 679 (9th Cir. 2010)(citing *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). Relevant factors include the "public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Hagestad*, 49 F.3d at 1434 (quoting *EEOC v. Erection Co., Inc.*, 900 F.2d 168, 170 (9th Cir.1990).

The Ninth Circuit disfavors sealing broad categories of documents, particularly when specific details regarding the need for such protection are absent. *Kamakana,* 447 F.3d at 1184. The movant party must demonstrate a genuine need, provide a detailed explanation of that need and specific facts supporting the harm that may result. *Id.* at 1182-84.[7]

---

[6] Bard relies on an administrative procedure unique to this District Court to further its position; even though the exhibits are not available for download from on the docket, this does not make the exhibits unavailable to the public.

[7] The First Amendment places similar restraints on secrecy. The public's right of access to court records under the First Amendment can be overcome only by "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Hagestad,* 49 F.3d at 1434 (emphasis added); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984). As is the case with the federal common law standard, this is a high threshold that is not easily met, as proponents of secrecy must identify specific reasons why secrecy is warranted and must also demonstrate that any available alternatives to public access would not adequately protect their interests. Oregonian Pub. Co. v. U.S. Dist. Ct., 920 F.2d 1462, 1465 (9th Cir. 1990).

Bard is required to but has failed to establish "compelling reasons" to support sealing eighty-three (83) documents listed in Exhibit A to its Motion. Bard claims that the information in the pages not displayed at trial reflect "confidential and proprietary information that must be sealed to protect Bard's financial and business interests" and are "not necessary to the public's understanding of the ultimate issues tried." Doc. 13126 at 7, 8. Bard offers no specific grounds or reasons why disclosure of each page not displayed would place Bard at a potential competitive disadvantage or provide Bard's competitors with an economic advantage. Bard fails even to identify the substance of the information it seeks to seal; Bard has only listed the description of the exhibit from the exhibit list and divided them into four categories, which is supported by a declaration from Robert Carr reciting the exact information in the Motion and Exhibit A about the categories.[8] It is Bard's burden to review each of the eight-three (83) exhibits at-issue and identify the trade secret information, rather than make sweeping assumptions that all pages not displayed at trial must be sealed. Further, Bard does not explain how such information, in the hands of a competitor, would inflict harm especially on stale technology regarding products and information most of its witnesses claim they have no recollection of on the stand. Thus, Bard has not met its heavy burden.

As mentioned *supra*, Bard's reliance on case law is also inapposite. Many of the cases Bard cites to support sealing documents are simply irrelevant. Critically, these cases are focused on discovery matters and motions for summary judgment; none of them address sealing all pages of trial exhibits not displayed ex post facto.

Bard's failure to provide specific factual support for its claims of trade secret is strikingly similar to the factual deficiency in *Biocore, Inc. v. Khosrowshahi,* 96 F. Supp. 2d 1221, 1231-32 (D. Kan. 2000) ("*Biocore*"). In *Biocore*, a company alleged that its business procedures for conducting clinical trial studies and for obtaining FDA clearance under FDA

---

[8] The declaration does not even specify the exhibits relation to Bard's products at-issue; that is whether the exhibit relates to SNF, Recovery, G2, G2X, Eclipse, Meridian or Denali. All of the categories are general with the exception of the Meridian Design History Files.

regulations were trade secrets.[9] As in the present matter, *Biocore* as the plaintiff in the matter, failed to produce evidence describing the procedures it summarily deemed trade secrets and  failed to explain how its procedures differed from others in the field or from the general FDA requirements.[10] Accordingly, *Biocore* failed to establish the documents were trade secrets because it failed to meet its burden of "proving that their method of conducting efficacy studies is different from methods that are matters of general knowledge in the trade." *Id.* at 1231.

> While both items are marked confidential, they contain nothing but basic information. Plaintiffs do not show that the validation protocol and validation procedures are not generally known. They provide no evidence regarding protocols and procedures which other companies use. Neither document describes any procedure that appears to be out of the ordinary; the documents list obvious procedures which every company in the field would also follow with slight but obvious variations for specific equipment and products.

*Id.* at 1232 (internal citations omitted). As in *Biocore*, Bard fails to provide anything beyond general and unsupported claims.

### D.    Bard's Exhibits Cannot Be Characterized As Trade Secrets.

To meet the "compelling reason standard" a company must at minimum establish the specific information that is subject to trade secret. *Selling Source, LLC v. Red River Ventures, LLC,* 2:09-CV-01491-JCM, 2011 WL 1630338, at *2 (D. Nev. Apr. 29, 2011). The information contained within the pages Bard seeks to seal have no inherent or intrinsic actual or potential value. None of the filters mentioned in the exhibits are currently sold by Bard and the majority of the exhibits involve products which have not been sold since 2009.

_____

[10] Bard cites to *Citizens Comm'n on Human Rights v. Food & Drug Admin.,* 1993 WL 1610471, *7 (C.D. Cal. 1993) to support its claim that 510(k) filings and regulatory documents should be sealed. *Citizens* discusses the application of FOIA exemptions, which are mandated by federal statue, and does not address the Ninth Circuit standard for sealing exhibits. Note, Bard has requested FOIA productions and can use the FOIA produced documents as exhibits at trial. Furthermore, the new pharmaceutical drug application discussed in *Citizens* is substantially different and vastly more involved than a 510(k) medical device application. *See,* https://www.fda.gov/medicaldevices/deviceregulationandguidance/overview /default.htm, visited Nov. 15, 2018.

Secret or confidential information becomes "stale" over time and a previous confidential designation can no longer apply. *See Salomon Smith Barney, Inc. v. HBO & Co.*, 2001 WL 225040, at *2 (S.D.N.Y. Mar. 7, 2001) (finding that there may have been confidentiality when documents were generated, but insufficient cause shown "for so treating them today.").

Allegedly confidential business information "is not entitled to the same level of protection from disclosure as trade secret information." *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991)(quoting *Littlejohn v. BIC Corp.*, 851 F.2d at 685). Trade secrets are defined in the Ninth Circuit as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569–70 (9th Cir. 2008). Bard does not identify which policies and procedures in the specific pages it seeks to seal would allegedly reveal, how the pages of these exhibits would reveal such information, or how these policies and procedures differ from those generally known and used in the industry. The closest Bard comes to providing the Court with an explanation is a verbatim quote (although Bard fails to include quotation marks in its cite) from *TVIIM, LLC v. McAfee, Inc.*, No. 13-CV-04545-HSG, 2015 WL 4448022, at *3 (N.D. Cal. July 19, 2015)(the Court sealed two pages of two exhibits subject to motion *in limine* rulings).[11]

---

[11] Bard argues generally that the medical device industry is competitive; "Bard has continually and successfully made efforts to protect the information from its competitors, in part because it could be used by competitors against Bard" yet it fails to identify which pages of the exhibits are of current importance. Doc. 13136 at 13; *Carnegie Mellon Univ.*, 2013 WL 1336204, at *5 (citing *Leucadia, Inc. v. Applied Extrusion Tech., Inc.,* 998 F.2d 157, 165 (3d Cir.1993)("…the movant must show through must show through current evidence that public dissemination of the pertinent material would cause present competitive harm.). Members of the press, attorneys from both parties, witnesses, jury consultants, numerous interested bystanders all attended the *Jones* and *Hyde* trials, and potentially even Bard's competitors which were present at the *Booker* trial; this alone diminishes Bard's "competitive advantage" argument.

Further, Bard's competitors arguably have no use for information Bard seeks to seal since all exhibits concern the SNF, Recovery, G2, Eclipse, and Meridian filter lines which have been discontinued and are no longer marketed in this country. Bard has not articulated the specific content within these documents that will be of value to competitors. Listing exhibit descriptions without reference to their substance does not operate as a compelling reason. As such, speculative commercial harm is insufficient to overcome the "strong presumption in favor of public access." Bard continues to offer no evidence that policies and procedures used then are still in place today as Bard now only sells the Denali retrievable filter, which has a different manufacturing process and is cut from single piece of metal. Bard's competitors have little to no commercial use for information regarding products that are no longer on the market. Simply marking as "confidential" or suggesting commercial harm without specific facts is inadequate to establish a compelling reason to seal all pages not displayed for eight-three (83) trial exhibits.

**E. There is Substantial Public Interest In The Information Bard Is Moving to Seal.**

The public has a strong interest in the subject matter of this trial. As a general matter, the public has a right to learn what occurred during this trial. "Indeed, the common law right of access to federal courts is designed to promote "a better understanding of the operation of government as well as confidence in and respect for our judicial system."" *Publicker Indus.*, 773 F.2d at 1070. The public also has a financial stake in this trial. *See Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.,* 2013 U.S. Dist. LEXIS 45050 at * 30 (W.D. Pa. Mar. 29, 2013). Tax payer dollars underwrite salaries of court personnel, juror expenses, and the space afforded to the parties in the courthouse. A long trial and complicated litigation, like this case, incurs great costs on the court's time and resources; "what transpired in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947).

Here, the public as well as those thousands of patients implanted with a Recovery, G2, Eclipse or Meridian filter have a substantial interest in knowing information relied on

and admitted at the bellwether trials.  Courts uniformly hold that the public's interest in access to court records is strongest when records concern issues of public health or safety which Plaintiffs assert. The Sixth Circuit previously vacated orders sealing evidence, emphasizing that the public had a particularly strong interest in the court records because the "litigation potentially involves the health of citizens who have an interest in knowing the accurate 'tar' and nicotine content of the various brands of cigarettes on the market." *United States v. General Motors*, 99 F.R.D. 610, 612 (D.D.C. 1983); *see also, In re Air Crash at Lexington, Ky.,* August 27, 2006, No. 5:06-CV-316-KSF, 2009 WL 1683629, at *8 (E.D. Ky. June 16, 2009). Another court noted, in granting a motion to unseal court records, "the greater the public's interest in the case the less acceptable are restraints on the public's access to the proceedings." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983).

### III.   CONCLUSION

Bard waived the right to seek protection of exhibits that have entered the public domain with its knowledge. The trial exhibits, regardless of the pages displayed, can no longer be said to contain trade secrets. Bard has failed to rebut this presumption favoring nonprotection and offers no compelling reason why such information should be deemed trade secret or otherwise entitled to protection. Bard does not explain how such information would inflict harm nor does Bard offer a narrowly tailored remedy. For all these reasons, the Court should deny Bard's requests seal pages not displayed in court for admitted trial exhibits.

DATED:  November 16, 2018         LOPEZ McHUGH LLP

By: */s/ Ramon Rossi Lopez*
    Ramon Rossi Lopez (CA Bar No. 86361)
    (admitted *pro hac vice*)
    100 Bayview Circle, Suite 5600
    Newport Beach, California 92660

    Mark S. O'Connor
    BEUS GILBERT, PLLC
    701 N 44th Street
    Phoenix, Arizona 85008

    *Co-Lead/Liaison Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of November 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

    */s/ Marilyn B. Wass*