James R. Condo (#005867)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
jcondo@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO ENFORCE PROTECTIVE ORDER OVER CERTAIN TRIAL EXHIBITS**<br><br>(Assigned to the Honorable David G. Campbell) |

Plaintiffs' Opposition to Bard's Motion to Enforce Protective Order Over Certain Trial Exhibits (Doc. 13433) fails to address several key issues: (1) Bard is moving only to enforce the Protective Order over certain, specifically identified portions of exhibits from the *Jones* and *Hyde* trials that were **never** publicly discussed or displayed in open Court, or otherwise made publicly available[1]; (2) Plaintiffs make no attempt to specifically address the individual trial exhibits at issue as is required; and (3) the law favors the least restrictive means for sealing documents, which is the narrowly tailored approach Bard has taken here, and not the *more* restrictive and untailored means of sealing the entire trial proceeding, as Plaintiffs claim. Because compelling reasons exist to protect Bard's confidential and trade secret information, and Bard's proposed limited protection of the non-public portions of exhibits introduced at trial is the least restrictive means of protecting that confidential and trade secret information, Bard respectfully requests that the Court grant its Motion to Enforce Protective Order Over Certain Trial Exhibits (the "Motion").

## I. ARGUMENT AND CITATION OF AUTHORITY

### A. Plaintiffs Fail to Address That the Trial Exhibit Portions Were *Never* Publicly Used, Discussed, Displayed, or Otherwise Made Publicly Available.

Plaintiffs assert that the Court is controlled by its previous rulings and that the Protective Order does not apply to the portions of the exhibits at issue because the Protective Order does not "apply to the use of Confidential Information at trial." (Pl. Br. at 2-3.) Plaintiffs ignore the fact that this specific and narrow issue was not previously raised by Bard, and thus not addressed in the Court's prior rulings. Plaintiffs also ignore the fact that the confidential information subject to Bard's motion was **not** displayed or discussed in the trials. Indeed, the Protective Order specifically states that "[t]he use of Confidential

---

[1] All of the documents at issue are produced by Bard, subject to a protective order, in cases involving its filters, and thus are available to the plaintiffs and their counsel. As the Court is aware, there continues to be attorney advertising about IVC filters on television and the internet and plaintiffs and their counsel continue to engage the media about this litigation.

- 1 -

Information will be addressed in a later agreement between the parties, or, if they cannot reach an agreement, by further order of the Court," and that "[t]he Supplying Party reserves the right, however, to petition the Court for protection with respect to such documents admitted into evidence as exhibits at trial." (Doc. 269 at 11-12.) Here, Bard does not seek to seal the portions of documents discussed in the trial transcripts or displayed in Court. Instead, Bard seeks to enforce the Protective Order over a subset of only the select pages of particularly sensitive and confidential trial exhibits never displayed or discussed in open court.[2] The existing Protective Order should protect the portions of these documents as it always has, along with the millions of other pages produced in this litigation never used at trial or otherwise publicly disclosed. And, despite the Court ruling in the pretrial conferences before both trials that Bard specifically preserved its right to address confidentiality issues after the trials (Mot. at 3), Plaintiffs now assert for the first time that Bard should have objected during each trial for each exhibit. But, Plaintiffs do not provide any authority to support that alleged requirement or for negating the Protective Order protection over confidential information that has **never** been made public.

The case law relied on by Plaintiffs suffers the same problem. All of the cases Plaintiffs cite address exhibits filed, used, displayed, or discussed in open court. *See e.g.*, *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, 2013 U.S. Dist. LEXIS 45050 at *16 (W.D. Pa. Mar. 29, 2013) ("Previous public disclosure of information **in open court**, and even outside of court, operates to waive any right to seal judicial records containing such information.") (quoting *Littlejohn,* 851 F.2d at 677); *Fleming v. Escort, Inc.*, 2013 WL 1290418 (D. Idaho Mar. 27, 2013)(refusing to seal information regarding companies' confidential and proprietary business and financial information because it was **discussed at open trial** and the moving party could not claim it was unaware disclosure was likely to occur); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 n.11 (2d Cir. 2004) (holding

---

[2] Bard does not seek protection for every Bard produced exhibit admitted during the trials, but instead identified the particularly sensitive and confidential ones.

- 2 -

that "[o]nce [information] **is public**, it necessarily remains public" and further stating that "[o]nce the cat is out of the bag, the ball game is over"); *In re Google Inc. Gmail Litig.*, 2014 U.S. Dist. LEXIS 136420, 2014 WL 1053744032-33 (N.D. Cal. Aug. 6, 2014) ("In sum, where, as here, the parties did not request closure of the courtroom ... and the disclosures were not inadvertent, the Court will not permit an ex-post facto redaction of **statements made in open court** in the transcript."); *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, U.S. Dist. LEXIS 6763, 2010 WL 2710566, at *10-12 (D.N.J. July 7, 2010) (denying post-hearing motion to seal transcript because **information disclosed during open court** is part of the public record); *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.,* 2012 U.S. Dist. LEXIS 58227, 2012 WL 1432519, *2 (D. Ariz. Apr. 25, 2012) ("[T]he Court notes that the parties' requests are somewhat unusual in that they are seeking to seal portions of a **transcript** from a proceeding **held in open court"**) (emphasis added).

In contrast, here, the 'cat was never let out of the bag,' for the portions of the exhibits Bard seeks to protect. Although Plaintiffs assert the cases cited by Bard conflict with *Kamakana*, a closer reading reveals that is not the case. For example, in *Livingston v. Isuzu Motors, Ltd.*, 910 F. Supp. 1473, 1480 (D. Mont. 1995), the court explained the unusual procedural background that is similar to this MDL: "All of the protected exhibits were used at public trial of this cause; afterwards the exhibits were returned to the party who produced them. This was done because the sheer volume of exhibits made a storage problem for the Clerk of Court and because copies of each party's exhibits had been furnished to their opponents. Thus, although they were used at trial, such exhibits did not enter the public record as it existed following the trial." *See also*, *Jochims v. Isuzu Motors, Ltd.*, 151 F.R.D. 338, 341 (S.D. Iowa 1993) (generally same). This is exactly the situation before the Court (and in fact was raised by the Court prior to the *Booker* trial), and is a legitimate basis for finding the documents are still governed by the existing Protective Order.

Plaintiffs attempt to distinguish *Livingston* by claiming that its' protective order "expressly governed the use of documents at trial," even though it is only apparent that the

- 3 -

1  "protective order [] contemplated use of such documents at trial without loss of their
2  confidentiality." *Id*. at 1480. This point is irrelevant because Bard is only seeking to
3  enforce the Protective Order over information that was **not** used at trial. Even if it was
4  relevant, the Protective Order entered in the MDL provides the same contemplation, and
5  gives Bard the opportunity to protect its confidential information used at trial.

6  Thus, the *Livingston* court concluded that "the confidential documents are not now
7  part of the public record; the continued treatment of the documents as confidential will not
8  impose a burden upon any party to this action. For these reasons, the Protective Order
9  previously entered by the court remains in effect and shall continue to remain in effect."
10 *Id*. This is precisely the situation before the Court. Further, Plaintiffs fail to identify any
11 harm or burden they would incur if the Protective Order remains in force over the
12 confidential information at issue. The Court should reach the same conclusion here.

### B.   Plaintiffs Fail to Specifically Address the Individual Trial Exhibits.

14 Plaintiffs fail to address the specific documents and pages discussed in the Motion,
15 the Declaration of Robert Carr, and the exhibit chart, all of which specifically address the
16 types of confidential and trade secret information at issue and the specific pages of each
17 trial exhibit that were not displayed or discussed during trial.

18 The most glaring example is the complete Meridian Design History File, which is
19 over 1,500 pages and was an exhibit in the *Hyde* trial.  Only <u>one</u> page of that file was
20 admitted at trial and discussed. But, Plaintiffs appear to claim that the admission of that
21 one page somehow removes the Protective Order's protection over the entire file. Indeed,
22 on the one hand, Plaintiffs assert that Bard's motion is not specific enough and incorrectly
23 suggest that Bard is required to discuss each and every page that was not discussed or
24 displayed during the trials, but on the other, Plaintiffs just generally state that everything
25 should become public, regardless of whether it was actually publicly discussed or
26 displayed. Bard specifically identified the exhibits and pages of those exhibits it is seeking
27 to protect. The fact that Bard organized the exhibits into broader categories does not mean
28 it has failed to meet the "compelling reasons" standard. As Bard explained in its Motion,

1  these documents reveal Bard's confidential business processes that are the same as are
2  used today – so, for example, it does not matter which generation(s) of filter a particular
3  bench test covers, because Bard uses the same bench test for its current and future filters.
4  This double-standard should not be permitted.

      **C.**    **Bard has shown compelling interests, and the law favors the least restrictive means for sealing documents, such as the approach Bard has taken here, and not the *more* restrictive means of sealing the entire trial proceeding as Plaintiff claims is required.**

Plaintiffs make no attempt to address Mr. Carr's declaration addressing the documents and the harm to Bard if they are disclosed, the detailed chart attached to that declaration, or otherwise address the four categories of confidential information discussed in Bard's motion and the legal authority recognizing those categories of information as protected from public disclosure even under the compelling interest standard. To the contrary, Plaintiffs' blanket asssertions are not supported in the case law. *Compare Spectrum Pharmaceuticals, Inc. v. Sandoz Inc*., No. 2:12-CV-00111-GMN, 2014 WL 4202540, at *2 (D. Nev. Aug. 21, 2014) (finding compelling reasons to seal documents submitted in support of Sandoz's motion for summary judgment, including documents related to a new drug application submitted to the FDA, technical information about the product, and specific efforts to obtain FDA approval, including actual and planned confidential communications with the FDA); *TVIIM, LLC v. McAfee, Inc*., No. 13-CV-04545-HSG, 2015 WL 4448022, at *4 (N.D. Cal. July 19, 2015) (finding "that Defendant has articulated 'compelling reasons' to seal [certain slides and pages of trial exhibits]. Furthermore, the Court finds that Defendant's proposed redactions of Mr. McFarlane's demonstratives and Trial Exhibit 34 are 'narrowly tailored' to seal only sealable material"); *PQ Labs, Inc. v. Qi*, No. C 12-450 CW, 2014 WL 4617216, at *1 (N.D. Cal. Sept. 15, 2014) (granting motion to "seal from the public record, by redaction, certain parts of the Reporter's Transcript of the trial proceedings on March 10 and March 11, 2014, which concern Plaintiffs' trade secrets; and (2) to seal certain trial exhibits which were admitted into evidence on March 10 and 11, 2014, and which contain trade secrets,

pricing and customer data, and other confidential information"); *Pal v. New York Univ.*, No. 06 CIV. 5892 (PAC), 2010 WL 2158283, at *2 (S.D.N.Y. May 27, 2010) (sealing exhibits after case settled mid-trial and the media intervened requesting access to certain exhibits).

Moreover, Plaintiffs' conclusion that these documents should be public because Bard has not established that each document constitutes a trade secret is based on the wrong legal standard. Specifically, a judicial record does *not* need to contain a trade secret in order to be sealed; the fact that a document contains a trade secret can be sufficient, but it is not necessary. *See Fujitsu Ltd. v. Belkin Int'l, Inc.,* 2012 WL 6019754 (N.D. Cal. Dec. 3, 2012) ("Additionally, compelling reasons may exist if sealing is required to prevent judicial documents from being used as sources of business information that might harm a litigant's competitive standing.") (internal quotations omitted); *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991) ("[T]he district court expressly recognized that '[t]he potential effects of the disclosure of business information that might harm the litigant's competitive standing may in some cases meet the burden of the judicial record under seal.' Although the district court did discuss such information in relation to trade secrets, it did not state that only trade secrets could be protected, and we see no error of law.") (internal citation omitted); *In re Gabapentin Patent Litig.*, 312 F. Supp. 2d 653, 667 (D.N.J. 2004) (affirming the sealing of confidential business information and papers that "consist largely of protectable trade secrets" and noting that "[t]his case is not about misappropriation of trade secrets."). While the definition of a trade secret may be helpful in determining whether the presumption of public access has been overcome to seal these documents, it is not dispositive. Thus, Plaintiffs' reliance on nearly all of their cited legal authority, defining actionable trade secrets in the context of misappropriation claims, is inapplicable.

Not only have Plaintiffs applied the wrong legal standard, but many of their cases actually support finding that Bard's documents at issue here are in fact trade secrets or constitute other confidential business information that should be protected. For example,

Plaintiffs' reliance on *BioCore, Inc. v. Khosrowshahi*, 96 F. Supp. 2d 1221 (D. Kan. 2000) *rev'd and remanded*, 80 F. App'x 619 (10th Cir. 2003), another misappropriation of trade secrets case, misrepresents the bench trial opinion and fails to note that it was *reversed* by the Tenth Circuit. In contrast to Bard's documents, the validation protocol and procedures that *BioCore* held were not trade secrets were documents describing FDA procedures, some of which came from the FDA itself. *Id.* at 1232 ("While plaintiffs suggest that not all of the documents in these exhibits came from the FDA, plaintiffs do not suggest that the validation information which the exhibits contain was anything but public information."). On the other hand, the Court in *BioCore* found that the "entire manufacturing process" was a trade secret because the "manufacturing process yields a product which consumers purchase because they believe that it out-performs other wound care products in the market. Information about the manufacturing process therefore has economic value and the fact that it is not generally known enables plaintiffs to produce products which their customers find to be superior to competing products." *Id*. at 1226. Regardless, the bench trial opinion finding the trade secret was not misappropriated was reversed, and the Tenth Circuit reinstated the original jury's verdict.

Other cases relied on by Plaintiffs further support protecting the documents at issue here. For example, in *In re Electronic Arts, Inc*., 298 F. App'x 568 (9th Cir. 2008), the Ninth Circuit found that the district court committed reversible error in refusing to seal, under the compelling interest standard, "the pricing terms, royalty rates, and guaranteed minimum payment terms" found in a two year old Licensing Agreement. *Id*. at 569. The Ninth Circuit further noted that "[t]his is also information that plainly falls within the definition of 'trade secrets,'" but also made clear that "[i]n *Kamakana*, we held that unless a particular court record is one 'traditionally kept secret,' a strong presumption in favor of access is the starting point." *Id*. (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *see also*, *Kamakana*, 447 F.3d at 1184–85 (explaining that 'traditionally kept secret' differs from "trade secret" because the former "is a term of art specific to the right of access; a class of documents is covered by that term if there is

- 7 -

'neither a history of access nor an important public need justifying access.'" *See also, Republic of Philippines*, 949 F.2d at 663 (only stating that confidential business information "is not entitled to the same level of protection" as actionable misappropriated trade secrets). Thus, Bard has adequately shown that there are compelling reasons to protect its confidential business information subject to its Motion, regardless of whether it is considered a 'trade secret' or information 'traditionally kept secret', should be protected from public disclosure since it has never been publicly disclosed in open Court or otherwise.

### D. Plaintiffs have not demonstrated any real public interest in the confidential information.

Plaintiffs also generally assert that because safety is at issue, the public's interest in the information outweighs the competitive harm Bard would suffer if this information was released. Mr. Carr specifically address the harm to Bard of full public disclosure of the documents. However, Plaintiffs do not explain how the public interest is further served by the release of this limited information when the complete documents are available to any plaintiff with a lawsuit against Bard involving one of its retrievable IVC filter, the trial transcripts are publicly available, every exhibit page displayed or discussed in the transcripts is publicly available, and **hundreds** of complete trial exhibits not subject to this Motion are publicly available. This is in addition to the wealth of information available on the internet about Bard IVC filters, including through plaintiffs' lawyer advertising, and the amount of publicity and information already made publicly available through the formation of this MDL.

## II.  CONCLUSION

The public disclosure of the exhibits introduced at the *Jones* and *Hyde* trials would reveal confidential, proprietary and trade secret information and would create a heightened risk of irreparable harm to Bard's competitive business concerns. Accordingly, Bard requests an Order that the portions of the documents identified in Bard's Motion continue to be subject to the terms of the Protective Order in this case.

This 30th day of November, 2018.

        s/Elizabeth C. Helm
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
Elizabeth C. Helm
Georgia Bar No. 289930
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
PH: (404) 322-6000
FX: (404) 322-6050
Richard.North@nelsonmullins.com
Matthew.Lerner@nelsonmullins.com
Kate.Helm@nelsonmullins.com

James R. Condo (#005867)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
JCondo@swlaw.com

**Attorneys for Defendant C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of November, 2018, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

                                        s/Elizabeth C. Helm
                                        Elizabeth C. Helm

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000