James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
jcondo@swlaw.com
kgallardo@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' SEPARATE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS DEBRA AND JAMES FRANCES TINLIN'S CLAIMS**<br><br>(Assigned to the Honorable David G. Campbell)<br><br>**(Oral Argument Requested)** |

Pursuant to Fed. R. Civ. P. 56(c), Local Rule 56.1(a), and Case Management Order No. 53 (Doc. 5770), Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") respectfully submit this Separate Statement of Facts in Support of Motion for Summary Judgment as to plaintiffs Debra and James Frances Tinlin's Claims.

1. On May 7, 2005, Dr. Joshua Riebe placed a Bard Recovery Filter in Debra Tinlin. (Ex. A, Medical Records of Mrs. Tinlin, at TINLIND_SMHMC_MDR00077-78.)

2. Before receiving a Recovery Filter, Mrs. Tinlin had never heard of IVC filters. (Ex. B, Debra Tinlin Dep. Tr., 88:14-17, Feb. 8, 2017.)

3. Mrs. Tinlin was asked during her deposition whether she was provided any written information regarding the filter, and she responded, "Not that I remember." (*Id.* at 90:10-12.)

4. Mrs. Tinlin has never spoken with anyone at Bard. (*Id.* at 165:6-8.)

5. Dr. Riebe believed that Mrs. Tinlin was an appropriate candidate for a retrievable filter. (Ex. C, Joshua Riebe, M.D., Dep. Tr., 146:19-21, Apr. 4, 2017.)

6. In Dr. Riebe's practice, he thinks that foreign bodies in patients should be removed if possible. (*Id.* at 146:25 to 147:13.)

7. For Mrs. Tinlin, Dr. Riebe testified that using a retrievable filter gave him more options for the future. (*Id.* at 147:21-24.)

8. Dr. Riebe did not routinely read instructions for use from medical device manufacturers. (*Id.* at 19:9-15.)

9. Dr. Riebe he does not recall ever seeing the Instructions for Use for the Recovery Filter. (*Id.* at 86:4-13.)

10. Dr. Riebe cannot recall whether he ever met with a Bard sales representative generally or between 2004 and 2005 specifically. (*Id.* at 17:2-6, 11-22; 167:15 to 168:5.)

11. Dr. Riebe does not recall seeing any marketing material concerning IVC filters generally, or the Recovery Filter brochure specifically. (*Id.* at 32:3-11; 38:22 to 39:3.)

12. Dr. Riebe cannot recall having attended any meetings where doctors spoke on behalf of Bard about IVC filters. (*Id.* at 32:12-20.)

13. Dr. Riebe testified that he does not recall ever receiving a dear doctor letter from Bard, that he receives "stacks and stacks" of mail at his facility, and that he generally throws letters from companies in the trash. (*Id.* at 79:17 to 80:10.)

14. Dr. Riebe further testified that his regular practice is to not read dear doctor letters from manufacturers, and he has no reason to believe that he ever would have read dear doctor letters from Bard if he received them. (*Id.* at 129:23 to 130:14.)

15. There is no evidence in the record that Dr. Riebe had any filter other than the Recovery Filter available for use with Mrs. Tinlin, or that different or additional information would have changed his decision to use the Recovery Filter for Mrs. Tinlin.

16. Dr. Riebe believes that Mrs. Tinlin needed to have an IVC filter placed. (*Id.* at 146:8-11.)

17. Dr. Riebe was not involved in the decision-making process about which brands of IVC filters his hospital stocked, and he believes that the hospital itself was the purchaser of the filters. (*Id.* at 23:5-22.)

18. Dr. Riebe does not know whether anyone in his clinic negotiated with the hospital concerning which products to stock. (*Id.* at 23:23 to 24:4.)

19. The Bard sales representative for Dr. Riebe's hospital in 2004 and 2005, Timothy Fischer, does not remember Dr. Riebe. (Ex. D, Timothy Fischer Dep. Tr., 23:10-11; 192:23 to 193:9; 257:3-15, Mar. 29, 2017.)

20. Mr. Fischer does not remember ever providing Dr. Riebe with Recovery Filter pamphlets or brochures. (*Id.* at 257:3-15.)

21. Dr. Robert McMeeking has opined that several features should have been incorporated into the Recovery Filter that "would have helped to mitigate or eliminate the failures I have identified that occurred in Mrs. Tinlin's filter. . . : caudal anchors, penetration limiters, two-tier design, and a better (smoother and rounded) chamfer at the mouth of the 'cap' on the filter." (Ex. E, McMeeking *Tinlin* Rule 26 Rep. at 3.)

- 2 -

22. Dr. McMeeking has also identified several other permanent-only filters as "alternative filters" to the Recovery Filter, including the Simon Nitinol Filter, the Greenfield Filter, the Cook Tulip Filter, and the Bird's Nest Filter. (*Id.*)

23. Dr. Derek Muehrcke has opined that Mrs. Tinlin should have an attempt to remove all of her intrapulmonary fragments because of the future risks of bleeding, hemoptysis, pneumothorax, and death. (Ex. F, Muehrcke *Tinlin* Rep. at 9, 10.)

24. Dr. Muehrcke cannot quantify the future risks of bleeding, hemoptysis, pneumothorax, and death for Mrs. Tinlin. (Ex. G, Muehrcke Dep. Tr., 167:9-21, Jan. 11, 2019.)

25. Dr. Muehrcke has opined that Mrs. Tinlin should have the Recovery Filter removed because of the risk of future complications with the filter; and if a percutaneous attempt fails, then he would consider open (surgical) removal of the filter. (Ex. F, Muehrcke Rep. at 9, 10.)

26. Dr. Muehrcke thinks that the risk of additional complications related to the filter itself is 40% at 5.5 years, and refused to offer an opinion about whether the filter could be percutaneously retrieved. (Ex. G, Muehrcke Dep. Tr., 168:10-14; 168:21 to 169:25.)

27. Dr. Muehrcke has opined that Mrs. Tinlin should have yearly cardiology EKGs and follow up to monitor her heart rhythm and cardiac function because of the risks of arrhythmias, cardiac failure, and endocarditis. (Ex. F, Muehrcke Rep. at 9, 10.)

28. Dr. Muehrcke cannot quantify the risks of arrhythmias, cardiac failure, and endocarditis for Mrs. Tinlin. (Ex. G, Muehrcke Dep. Tr., 257:1-7; 12-14.)

29. Dr. Muehrcke has opined that Mrs. Tinlin should have yearly follow up with a cardiac surgeon to monitor her diaphragm hernia. (Ex. F, Muehrcke Rep. at 10.)

30. Dr. Muehrcke he thinks that the risk of recurrent or additional hernias for Mrs. Tinlin is about 5%. (Ex. G, Muehrcke Dep. Tr., 157:8-11.)

31. Dr. Muehrcke has opined that Mrs. Tinlin should have semi-annual surveillance from a pulmonologist to monitor her shortness of breath from tracheomalacia and diaphragm injuries. (Ex. F, Muehrcke Rep. at 9.)

32. Dr. Muehrcke did not perform a differential diagnosis concerning Mrs. Tinlin's shortness of breath. (Ex. G, Muehrcke Dep. Tr., 125:7-12.)

33. Mrs. Tinlin's morbid obesity could cause shortness of breath. (*See id.* at 162:15-19.)

34. Dr. Darren Hurst has opined that the filter fragments in Mrs. Tinlin's pulmonary arteries can cause complications like pneumothorax/collapse of the lung, abscess, and hemorrhage into the lung; and that Mrs. Tinlin will require lung resection to remove the filter struts if they become symptomatic. (Ex. H, Hurst *Tinlin* Rep. at 20.)

35. Dr. Hurst does not know what the risk is that the events identified in the preceding paragraph will occur for Mrs. Tinlin. (Ex. I, Hurst Dep. Tr., 225:18 to 226:4; 226:18 to 229:4, Jan. 7, 2019.)

36. Dr. Hurst has opined that Mrs. Tinlin has experienced chronic cough and exacerbation of her asthma because of treatment with the Recovery Filter. (Ex. H, Hurst Rep. at 20.)

37. Dr. Hurst cannot determine whether Mrs. Tinlin's chronic cough and exacerbation of her asthma are related to the filter or Mrs. Tinlin's preexisting medical conditions. (*See* Ex. I, Hurst Dep., 220:25 to 221:10.)

RESPECTFULLY SUBMITTED this 1st day of February, 2019.

s/Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
FX: (602) 382-6070
JCondo@swlaw.com
KGallardo@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

Nelson Mullins Riley & Scarborough
L.L.P.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000

- 5 -