# Exhibit D

Do Not Disclose - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT
 2                  DISTRICT OF ARIZONA
 3   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
 4
     In Re Bard IVC Filters Products
 5   Liability Litigation
 6                      No. MD-15-02641-PHX-DGC
 7
 8
     *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
 9
10       DO NOT DISCLOSE - SUBJECT TO FURTHER
                CONFIDENTIALITY REVIEW
11
       VIDEOTAPED DEPOSITION OF TIMOTHY A. FISCHER
12
             TAKEN AT: Quarles & Brady
13      LOCATED AT: 411 East Wisconsin Avenue
                    Milwaukee, WI
14
                   March 29, 2017
15             8:38 a.m. to 3:08 p.m.
16           REPORTED BY ANITA K. FOSS
            REGISTERED PROFESSIONAL REPORTER
17
18
19
     *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
20
21
22
23
24
25
```

Do Not Disclose – Subject to Further Confidentiality Review

```
 1                    A P P E A R A N C E S
 2   GALLAGHER & KENNEDY, P.A.
     Mark S. O'Connor, Esquire
 3   2575 East Camelback Road, Suite 1100
     Phoenix, AZ  85016
 4   602-530-8000
     mark.oconnor@gknet.com
 5   Appearing on behalf of the Plaintiffs.
 6   LOPEZ MCHUGH, LLP
     Nicholas R. Graham, Esquire
 7   100 Bayview Circle, Suite 5600
     Newport Beach, CA  92660
 8   949-737-1501
     ngraham@lopezmchugh.com
 9   Appearing on behalf of the Plaintiffs.
10   NELSON, MULLINS, RILEY & SCARBOROUGH, LLP
     Matthew B. Lerner, Esquire
11   201 17th Street NW, Suite 1700
     Atlanta, GA 30363
12   404-322-6158
     matthew.lerner@nelsonmullins.com
13   Appearing on behalf of Defendants.
14
                           I N D E X
15
16   Examination by                               Page
17   Mr. O'Connor. . . . . . . . . . . . . . . . .   5
     Mr. Graham. . . . . . . . . . . . . . . . . 181
18   Mr. O'Connor. . . . . . . . . . . . . . . . 212
     Mr. Lerner. . . . . . . . . . . . . . . . . 234
19   Mr. O'Connor. . . . . . . . . . . . . . . . 275
20
21                       E X H I B I T S
22                                                 Page
     Exhibit No.   Description                 Identified
23
          1          Guiding principles. . . . . . . . . 35
24
          2          Sales brochure. . . . . . . . . . . 47
25
```

```
 1        Q.    That's when Jack was a district manager?
 2        A.    District manager, correct.
 3        Q.    And what were your responsibilities as a
 4   sales representative?
 5        A.    To represent Bard products to hospitals
 6   and physicians, teach them how to use them or --
 7   well, teach their staff how to prep them for a case
 8   if they were going to use them, talk to them about
 9   new products, and things of that nature.
10        Q.    Did you know Dr. Joshua Riebe?
11        A.    I don't recognize that name.
12        Q.    Did you look at any medical records
13   regarding Debra Tinlin?
14        A.    No, I don't -- I haven't reviewed any
15   records on her.
16        Q.    Did you understand that this case, you're
17   here to testify in a case involving Debra Tinlin?
18        A.    That's my understanding.
19        Q.    What do you know about Debra Tinlin?
20        A.    I don't know a ton about her.  Something
21   filter fracture I think is -- and migration of
22   the -- of the fractured piece.
23        Q.    Did you --
24        A.    That's it.
25        Q.    -- obtain that information from a
```

1  could learn about these complaints and adverse
2  events would be from a sales rep telling them?
3        A.   My understanding is all -- were you going
4  to say something?
5             MR. LERNER:  I was going to say objection
6  to form, but you can respond.
7             THE WITNESS:  My understanding was that
8  Bard reported all of the events to the MAUDE
9  database and -- and so, no, I mean, there was not
10 another place that anybody could go see whatever
11 was reported.
12 BY MR. GRAHAM:
13       Q.   So it was your expectation that every
14 time a sales rep called in a complaint as part of,
15 you know, whatever process that complaint, Bard
16 would then put that into the MAUDE database?
17       A.   I think any device-related complaint went
18 to the MAUDE database.
19       Q.   It's your expectation that Bard would do
20 that for every -- every adverse event experienced
21 for the Recovery filter?
22       A.   For every product, yeah.
23       Q.   Earlier you had said the name Dr. Joshua
24 Riebe does not ring a bell to you?
25       A.   It doesn't.

```
 1        Q.   Am I might be pronouncing it wrong.  It's
 2   spelled R-I-E-B-E.
 3        A.   Doesn't ring a bell to me.
 4        Q.   Was Columbia St. Mary's hospital one of
 5   yours customers?
 6        A.   Columbia St. Mary's was.
 7        Q.   Would it make sense if I said Dr. Riebe
 8   was a doctor at Columbia St. Mary's?
 9        A.   At Columbia St. Mary's?  Nope.
10        Q.   Do you remember who your contact was at
11   Columbia St. Mary's?
12        A.   I think it was Bob Barris.
13        Q.   Was he a doctor?
14        A.   Interventional radiologist.
15        Q.   Was he the only one you would sell
16   filters to at Columbia St. Mary's?
17        A.   Yeah.  That wasn't a big practice of
18   mine.  So I think that group may have covered
19   Community Memorial Menomonee Falls as well.  And
20   that would have been Dr. Lane.  I mean, it's been a
21   dozen years.  So a number of the groups in the
22   Milwaukee area covered multiple facilities, so
23   sometimes they had physicians that stuck at one
24   facility and other times rotate around.  But no, so
25   there may have been other physicians in that group
```

1    of days I spent sitting in physician's offices
2    having long conversations.
3         Q.   And Dr. Riebe, if I'm pronouncing his
4    name right, is the doctor that implanted the filter
5    in this case.  Do you have any recollection of
6    having any conversation with him ever about IVC
7    filters?
8         A.   I don't -- I don't know who he is.  I
9    don't recall ever meeting him.
10        Q.   And so because you don't recall him, I
11   assume you have no recollection that you ever
12   provided him any brochures or pamphlets related to
13   the Recovery filter?
14        A.   I don't recall ever providing him any of
15   those things.
16        Q.   I want to go over a few of the documents.
17   I'm not going to go over all 25, just a handful of
18   the documents that you were shown today.  Let's
19   look at Exhibit 10, which was a memo from Temple.
20   And at the very top of that document it says,
21   "Review of FDA manufacturing user facility device
22   experience database, MAUDE."  So the MAUDE database
23   is something that we talked about earlier today?
24        A.   Yes.
25        Q.   And that information that was available