Ramon Rossi Lopez
rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California 92660
949-812-5771

Mark S. O'Connor (011029)
moconnor@beusgilbert.com
Beus Gilbert PLLC
701 North 44th St.
Phoenix, Arizona 85008
480-429-3000

*Co-Lead/Liaison Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC<br><br>**PLAINTIFFS DEBRA AND JAMES TINLIN'S SUPPLEMENTAL STATEMENT OF FACTS IN OPPOSITION TO BARD'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Assigned to the Honorable David G. Campbell) |

Pursuant to Fed. R. Civ. P. 56(c), Local Rule 56.1(a), and Case Management Order No. 53 (Doc. 5770), Plaintiffs Debra Tinlin and James Tinlin (collectively "Plaintiffs") respectfully submit this Supplemental Statement of Facts in Support of their Opposition to Bard's Motion for Summary Judgment.[1]

1. Ms. Tinlin believed her filter was placed permanently. (Ex. 1, Debra Tinlin Dep. Tr., 89:16-90:3; 104:15-105:10, Feb. 8, 2017.)

2. No information negative about the Recovery filter was relayed to Ms. Tinlin before the filter was placed in her. (*Id*. at 93:14-22.)

---

[1] Plaintiffs' Omnibus Statement of Facts, filed October 2, 2017, ECF 7950, is incorporated by reference herein.

3.      If she had been given the choice, Ms. Tinlin would have opted for a permanent filter. (*Id*. at 169:20-170:2.)

4.      Ms. Tinlin was born on March 6, 1964. (*Id*. at 36:13-14.)

5.      Ms. Tinlin was born in a small town in Wisconsin, has lived in Wisconsin for her whole life, and currently resides in the town of Bonduel. (*Id*. at 35:20-36:12.)

6.      Ms. Tinlin has a husband, Jim, who she has been married to since 1984. (*Id*. at 37:22-38:1.)

7.      Ms. Tinlin has one son, Andrew, who is currently 28 years old.  (*Id*. at 38:19-39:1.)

8.      Ms. Tinlin was implanted with a Bard Recovery filter on May 7, 2005.  (Ex. 2, Debra Tinlin Dep., Exh. 4.)

9.      On June 10, 2013, Ms. Tinlin was brought to the ER, diaphoretic and hypotensive, and was diagnosed with cardiac tamponade, cardiogenic shock, multi-organ system failure (including respiratory failure, circulatory failure, liver failure, renal failure, and complex metabolic derangement specifically hyperkalemia) and delirium. It was discovered that the filter had fractured and two struts had embolized to the right ventricle, causing a massive pericardial effusion around the heart with significant compression of the ventricles. She underwent emergent surgical drainage of 600mL of bloody effusion with drain placement but the struts could not be located. After ten days, she was discharged in improved condition, but removal of the fractured struts from her right ventricle was not attempted due to her critical status. (Ex. 3, Debra Tinlin Dep., Exh. 3, at 5 (referencing medical records).)

10.     On July 31, 2013, a fractured strut was successfully removed through open heart surgery and Ms. Tinlin reported feeling better. (*Id.*)

11.     On August 7, 2013, a follow -up chest CT demonstrated the filter in stable position with seven struts (not the original eight), and several of the remaining seven struts were seen projecting outside the lumen of the vena cava. A single 5mm retained foreign body was seen in the basilar interventricular septum. (*Id.*)

12.     The filter remains implanted, but Ms. Tinlin was advised in December 2015 that there are several pieces of wire in her upper and lower lungs, which are believed to be broken down pieces of the filter, possibly pieces of a second strut, as two pieces were originally reported to be seen in the heart but only one was removed. (*Id.*)

13.     At the time of the June 10, 2013 cardiac tamponade, Ms. Tinlin had been advised that the incident may affect her organs in the future. (*Id.* at 6.)

14.     As a result of her July 31, 2013 open heart surgery, Ms. Tinlin developed tracheomalacia due to the prolonged time with a breathing tube, while on life support. She can no longer wear her CPAP device for sleep apnea and also cannot lay on her back while sleeping causing severe sleep deprivation. (*Id.*)

15.     As a further result of her July 31, 2013 open heart surgery, her sternum did not fuse properly after the sternotomy and the bone marrow wore away. As a result, she had a hole in her diaphragm. (*Id.*)  This developed because of a sternal shift, where the right and the left side of the rib cage move independently, rub together, and damage and tear the diaphragm. This resulted in Ms. Tinlin having yet another procedure, a diaphragmatic hernia surgery repair. (Ex. 1, Debra Tinlin Dep. Tr., 122:10-20, Feb. 8, 2017.)

16.     To this day, laying on her back causes her to choke, gag, and cough and sleeping on her side is very painful due to the skeletal deformity caused by her sternum growing back together unevenly following the open heart surgery. (Ex. 3, Debra Tinlin Dep., Exh. 3, at 6 (referencing medical records).)

17.     Ms. Tinlin's implanting physician, Dr. Riebe, would have liked to have known at the time of Ms. Tinlin's implantation:

a.      Bard itself internally deemed the Recovery filter to have unacceptable risks (Ex. 4, Joshua Riebe, M.D., Dep. Tr.) at 27:25-28:3);

b.      Bard does not understand the root cause of why its filters migrate (*id.* at 28:6-10);

     c.     Bard does not understand the root cause of why its filters perforate (*id.* at 28:12-15);

     d.     Bard does not understand the root cause of why its filters tilt (*id.* at 28:18-19);

     e.     Bard does not understand the root cause of why its filters fracture (*id.* at 28:22-23);

     f.     Bard did not have a good understanding of the long-term performance of its IVCs filters (*id.* at 29:1-4);

     g.     If any company, including Bard, was concerned about its IVC filters' migration (*id.* at 49:22-50:2; 51:7-13);

     h.     Bard was considering discontinuing the Recovery filter at the time of Ms. Tinlin's implantation (*id.* at 52:8-14); and

     i.     Bard was aware of large data sets that reported issues with Recovery migration (*id.* at 78:7-13).

18.     All of the above information, not disclosed to Dr. Riebe, is important to Dr. Riebe for the risk-benefit profile for IVC filters to minimize the risk to patients. This is of paramount importance to him. (*Id.* at 15:18-16:7; 29:19-24.)

19.     Dr. Riebe would have also expected Bard to have:

     a.     Completed a safety study on the Recovery filter before it began to sell it (*id.* at 53:19-24);

     b.     Completed root-cause analyses for why filers were fracturing, migrating, and killing people (*id.* at 59:21-24); and

     c.     Disclosed to him that the Recovery filter had a higher fatality rate than numerous other available IVC filters (*id.* 61:24-64:8).

20.     Information not known or disclosed to Dr. Riebe could not be relayed to his patients, and he could not consider information unknown to him for his own analysis for a proper risk-benefit decision for patient safety. (*Id.* at 25:5-16; 30:1-3; 54:1-2.)

21.     If a company fails to disclose safety information to him, he cannot know that information to relay it.  (*Id*. at 171:22-172:6.)

22.     Dr. Riebe would have liked to have known all of this information (*supra* at ¶¶ 17a-h; 19a-b) so both he and the patient could understand the safety of the device. (*Id*. at 60:2-6.)

23.     Dr. Riebe understood that the Recovery filter was an "optional" filter, and testified that he typically told his patients that a retrievable filter could also be left in permanently, and may not be able to be retrieved. (*Id*. at 149:18-150:9.)

24.     Dr. Riebe expressed no disagreement at his deposition that, in Ms. Tinlin's case, the filter did remain implanted as a permanent filter. (*Id*. at 165:2-6.)

25.     Dr. Muehrcke testified that Ms. Tinlin is at risk of complications, including arrhythmia and cardiac failure due to her filter, and explicitly agreed that this was his opinion "to a reasonable degree of medical probability."  (Ex. 5, Dr. Derek Muehrcke Dep. Tr., 249:15-250:10, Jan. 11, 2019.)

26.     Dr. Muehrcke also testified that that Ms. Tinlin is at a greater risk of future complications. (*Id*. at 258:10-259:3.)

27.     Dr. Darren Hurst's expert report states that Ms. Tinlin faces either continuous monitoring and follow-up or lung resection: "These embolized arms are in locations that are not amenable to percutaneous removal, and if they become symptomatic will require lung resection for removal.  At the least, they will require life-long follow-up with CT imaging to document their stability."  (Ex. 6, Dr. Darren Hurst Dep., Exh. 3, at 20.)

28.     At his deposition, Dr. Hurst testified that Ms. Tinlin will need CT imaging on ongoing basis, "every year or every other year to just make sure that she's not developing an issue related to the fragments."  (Ex. 7, Dr. Darren Hurst Dep. Tr., 229:5-15, Jan. 7, 2019.)

29.     Dr. Darren Hurst's expert report further states that Ms. Tinlin's filter "is unstable and is causing the patient multiple issues and symptoms and will need removal

1  using advanced endovascular techniques that will require referral to a specialist in

2  complex removal of these devices." (Ex. 6, Dr. Darren Hurst Dep., Exh. 3, at 21.)

3       30.    Plaintiffs' engineering expert, Dr. McMeeking, explained in his expert

4  report that "[R]easonable alternative designs and alternative features available to Bard

5  before Mrs. Tinlin received her filter include many features that I have previously

6  identified in my reports and deposition testimony: caudal anchors, penetration limiters,

7  two-tier design, and a better (smoother and rounded) chamfer at the mouth of the "cap" on

8  the filter.  Many of these design features existed in other IVC filter products already on

9  the market, including the Simon Nitinol Filter, the Cook Gunther Tulip filter, the

10  Greenfield filter, and the Cook Bird's Nest filter."  (Ex. 8, Dr. McMeeking Expert Report,

11  Dec. 7, 2018, at 3.)

12       RESPECTFULLY SUBMITTED this 1st day of March, 2019.

13

14                BEUS GILBERT PLLC

15                By:  */s/ Mark S. O'Connor*

16                   Mark S. O'Connor

                 Beus Gilbert PLLC

17                   701 North 44th St.

18                   480-429-3000

19                LOPEZ McHUGH LLP

                 Ramon Rossi Lopez (CA Bar No. 86361)

20                   (admitted *pro hac vice*)

                 100 Bayview Circle, Suite 5600

21                   Newport Beach, California 92660

22                *Co-Lead/Liaison Counsel for Plaintiffs*

23

24

25

26

27

28

1694264.3          - 6 -

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on this 1st day of March 2019, I electronically transmitted the

3  attached document to the Clerk's Office using the CM/ECF System for filing and

4  transmittal of a Notice of Electronic Filing.

5                                                    */s/ Jessica Gallentine*_____

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28