1                **UNITED STATES DISTRICT COURT**

2                **FOR THE DISTRICT OF ARIZONA**

3             _____

4  **In Re: Bard IVC Filters**     ) MD-15-02641-PHX-DGC
    Products Liability Litigation  )

5                           ) Phoenix, Arizona
                           ) **March 18, 2019**

6  _____)

7

8

9

10

11       **BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE**

12         **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

13            **CASE MANAGEMENT CONFERENCE**

14

15

16

17

18

19

20

21  Official Court Reporter:
    Patricia Lyons, RMR, CRR
22  Sandra Day O'Connor U.S. Courthouse, Ste. 312
    401 West Washington Street, SPC 41
23  Phoenix, Arizona  85003-2150
    (602) 322-7257

24

25  Proceedings Reported by Stenographic Court Reporter
    Transcript Prepared with Computer-Aided Transcription

1                          **A P P E A R A N C E S**

2     For Plaintiffs:

3              Lopez McHugh
               By: **RAMON R. LOPEZ,** ESQ.
4              100 Bayview Circle, Suite 5600
               Newport Beach, CA  92660
5
               Gallagher & Kennedy
6              By: **MARK S. O'CONNOR,** ESQ.
               2575 East Camelback Road, Suite 1100
7              Phoenix, AZ  85016

8              Dalimonte Rueb LLP.
               By: **ASHLEY C. CROWELL,** ESQ.
9              85 Devonshire Street, Suite 1000.
               Boston, MA 02109
10
11    For Defendants:

               Nelson Mullins Riley & Scarborough
12             By: **ELIZABETH C. HELM,** ESQ.
               By: **MATTHEW B. LERNER,** ESQ.
13             201 17th Street NW, Suite 1700
               Atlanta, GA  30363
14
               Nelson Mullins Riley & Scarborough.
15             BY: **JAMES F. ROGERS,** ESQ.
               1320 Main St.
16             Columbia, SC  29201

17             Snell & Wilmer
               By: **JAMES R. CONDO,** ESQ.
18             400 East Van Buren
               Phoenix, AZ  85004
19

20

21

22

23

24

25

**P R O C E E D I N G S**

THE COURTROOM DEPUTY:  MDL case number 15-2641 regarding Bard IVC Filters Products Liability Litigation, on for case management conference.

Counsel, please announce for the record.

MR. O'CONNOR:  Good afternoon, Your Honor.  Mark O'Connor, co-lead for plaintiffs.

MR. LOPEZ:  Good afternoon, Your Honor.  Ramon Lopez, also co-lead for plaintiffs.

MS. CROWELL:  Ashley Crowell for the plaintiff.

THE COURT:  Afternoon.

MR. ROGERS:  Your Honor, Jim Rogers on behalf of the defendant, CR Bard.

MS. HELM:  Elizabeth Helm on behalf of Bard.

MR. LERNER:  Matthew Lerner on behalf of Bard.

MR. CONDO:  James Condo on behalf of Bard.

THE COURT:  All right.  Welcome back, everybody.

MR. ROGERS:  Thank you, Your Honor.

THE COURT:  Let's just dive into the issues I think we ought to cover.

I read your memorandum on the SNF cases.  I will tell you, what I'm inclined to do -- well, first, I should ask whether there's any update on that, whether there's been any more progress made on organizing plaintiffs in the SNF cases?

14:00:11   1          MR. LOPEZ:  No one has stepped up to be lead or

           2   liaison or co-lead role.  There's probably three, four people

           3   willing to serve on a committee to do that type of work, but

           4   thus far -- I don't know if anyone's on the phone that has

14:00:26   5   these cases, Your Honor.  But this was as of Friday, I think I

           6   had one more person who said she was interested in at least

           7   working on a committee.

           8          THE COURT:  Well, it seems to me that we can't

           9   proceed with that part of the MDL without a plaintiff steering

14:00:45  10   committee.  There is additional discovery that needs to be

          11   done in the SNF cases because I didn't allow discovery into

          12   the development of the Simon Nitinol filter in the main MDL.

          13          So we've got to get into place a steering committee

          14   and lead counsel, and they'll have to have some sort of a

14:01:06  15   cost-sharing agreement, and they've got to address the other

          16   issues that were identified in the last case management order.

          17          Without that, we can't move forward in the MDL.

          18          It seems to me that I have jurisdiction over those

          19   cases and if they are not moving forward, I've got authority

14:01:23  20   under Rule 41 to dismiss them for lack of prosecution.

          21          So what I would be inclined to do is issue an order

          22   that will go to all counsel, and I would ask plaintiffs' lead

          23   counsel to make sure, through an e-mail or some method, that

          24   everybody who's got a case in the MDL reads this order, and it

14:01:46  25   would require the attorneys who have SNF cases to organize a

14:01:53  1   steering committee, to appoint lead counsel, to confer with

2   defendants on the topics that I identified and to submit a

3   joint report by a specific dated, probably about 30 days from

4   now, and it would say if that isn't done, I'm going to dismiss

14:02:11  5   the SNF cases for lack of prosecution.  Because I think

6   between that 30-day opportunity plus the opportunity we've had

7   already since Case Management Order 41 was entered, is ample

8   time to get the case organized.  And if counsel aren't willing

9   to step forward, we can't proceed.  And that's the course we

14:02:33 10   need to follow.

11        Any thoughts on those issues?

12        MR. LOPEZ:  No.  I mean, I think that's -- I'm sorry

13   Your Honor.  I'm glad to hear you say that.  Your teeth are a

14   lot sharper than mine when it comes to -- I mean, I did my

14:02:44 15   best.  I've even suggested that those are things that might

16   happen if they didn't step forward with some kind of an

17   organizational committee, lead counsel.

18        THE COURT:  All right.

19        MR. ROGERS:  Your Honor, I don't think we have

14:03:01 20   anything to add.

21        Anybody have anything?

22        MR. LERNER:  That's fine, Your Honor.

23        THE COURT:  All right.  We'll put that out in the

24   order that comes out after today's hearing.  If they get

14:03:09 25   organized, then we'll go forward with the discovery in that

14:03:12   1    part of the case.

2              Let's talk next about settlement procedures.  I

3    appreciate the joint proposal you made.  Let me describe what

4    I'm inclined to do.  It's close to what you've proposed but

14:03:31   5    I've been talking with the staff here about how we do this in

6    a way so that it's manageable from our side when cases start

7    getting divided up into different categories and some are

8    being remanded and some are not.

9              I would be inclined to set a date, probably July 1st,

14:03:53  10    about a month after the Tinlin case will be over, by which the

11    parties would submit to me a memorandum that divides all of

12    the cases in the MDL into three categories, which would

13    correspond with what you've proposed.

14             The first category that we might call Track 1 would

14:04:16  15    be the tentatively settled cases.  So that would include cases

16    where there's been a term sheet or release obtained.

17             The second category that we can call Track 2 would be

18    the cases that you can avow are near settlement because there

19    are good faith settlement negotiations under way.

14:04:37  20             And the third category would be cases that don't fall

21    in either of those two categories.

22             That would be submitted to me in advance of or by

23    July 1.  And what I would then do is on July 15 I would remand

24    all of the cases in the third category.  And that would leave

14:05:05  25    in the MDL the Track 1 and Track 2 cases.

14:05:13  1        I would then require a report to be filed on the 1st

2    of each month as to what's happening, but I would set a sort

3    of benchmark date four months later, which I guess would be

4    November 1st, by which the cases in Track 1 would have to have

14:05:31  5    reached the point of a stipulated dismissal.  In other words,

6    you would have had to have documented the settlement and got

7    the dismissal, and by which the cases in Track 2 would be

8    ready to shift from near settled to settlement track cases

9    because you will have a term sheet or a release in hand.  You

14:05:52  10    asked for three months, but because I don't want to do this

11    too often it would be the same date, four months out.

12        My intent would be then the following:  Every case in

13    Track 1 that has not been dismissed would be remanded.  And

14    every case on Track 2 that is not transitioned from settlement

14:06:15  15    discussions to term sheet or release being signed would be

16    remanded.

17        Now, I recognize that there may be unusual situations

18    where you really do have a settlement done and you can't get a

19    signature or there's a medical lien or something holding up

14:06:33  20    the dismissal.  So I think what I would do is say for very

21    good cause, at that four-month mark you can tell me whether

22    there are Track 1 cases we ought to hold a little longer, and

23    I would put them on a 30-day list, to be dismissed 30 days

24    later without further notice.  That would give you a month to

14:06:55  25    try to tie up the loose ends so you really could get them

14:06:59  1    dismissed before they're remanded.

2              And I'd do the same thing on Track 2.  Namely, if

3         there are cases where you really are close to a term sheet and

4         there's a very good reason not to just remand them, I would

14:07:10  5    put them on the 30-day list.  If within 30 days you produced

6         an avowal or copy of the release or term sheet so they went

7         into the settlement track cases, then that's what would

8         happen.  Otherwise, they would be dismissed 30 days later

9         without further notice.  And the notion would be there's no

14:07:32 10    discretion at the end of the 30 days.  That's sort of the

11        grace period you have to tie up loose ends, but at the end of

12        the 30 days cases get remanded if they either don't settle on

13        Track 1 finally or don't shift from Track 2 to Track 1.

14             So what that would mean is as of November 1st we

14:07:51 15    would have only one track of cases left in the MDL:  Those

16        that have really achieved a settlement in principle.

17             Because you asked for six months to get those

18        documented, I would grant that period so that there would be

19        another benchmark date six months later, which is I think

14:08:14 20    May 1st, at which point all remaining cases would be remanded

21        if they weren't dismissed.  But I'd probably allow you one

22        more 30-day last opportunity at that time if there's truly

23        some last-minute things that would occur.

24             So that basically matches the timing you've proposed

14:08:33 25    and it would put some structure in it so we know when things

14:08:39   1    are happening.

2             Part of it would be the notion you proposed that if

3    during the course of this settlement discussion period either

4    party in the case decides there's no point keeping it on the

14:08:51   5    settlement track and you want remand, you can tell me that in

6    the 1st of the month report.  And any case identified in the

7    1st of the month report would be remanded on the 15th of the

8    month.  So we would be doing remands once a month on the 15th

9    of the month.  I don't want to be bothering the MDL panel with

14:09:15  10    multiple requests for remand, but if any party in the case

11    said we're done talking settlement, that would go in the next

12    1st of the month report and would be remanded on the 15th of

13    that month.  So we'd have that procedure in play to get cases

14    remanded when settlement discussions clearly break down.

14:09:32  15             And my understanding is that that is a unilateral

16    opt-out opportunity.  Either side can say we're done talking

17    about a case, it's time for remand, and I do it.

18             Before I go on to the other issues I want to raise,

19    let me get your reaction to those ideas.

14:10:13  20             MR. LOPEZ:  I think the way you've outlined it is

21    pretty consistent, I think, when both sides talked about this.

22    The only issue, I think there's maybe a built-in time period

23    here where that can happen, my concern is that the cases that

24    are remanded on July 15 will not have -- that's pretty quick

14:10:35  25    for us.  In fact, I spoke to Mr. North about this several

14:10:40   1    months ago.  There has to be a time period, Your Honor, I

           2    don't know if that's 60 or 90 days, where you're going to have

           3    to -- I call them de bene esse depositions, but put the

           4    depositions of each side's generic experts where they're

14:10:51   5    actually doing trial directs and crosses in the can.

           6          I think we ought to maybe build in a time period for

           7    us to have accomplished that.

           8          I can tell you that won't be, obviously, before we

           9    get some time beyond the Tinlin case.  And I think maybe

14:11:12  10    starting July 1st.  I mean, August is a tough time to corral

          11    experts.  But I think that's probably a 90-day period where

          12    both sides would put cross-examination and direct examination

          13    of experts to be ruled upon by probably the transferor court.

          14    I don't know.  I don't know whether that's something that gets

14:11:44  15    submitted to you, but I'm thinking probably not.

          16          THE COURT:  I'm thinking probably not, too.  I would

          17    just love to go through some more depositions.

          18          MR. LOPEZ:  Especially when you have to deal with 50

          19    different states.  That's been done in other MDLs.  It's

14:11:56  20    something we haven't done as of right now because, obviously,

          21    on both sides, you can't have experts that are going to appear

          22    all over the country.

          23          THE COURT:  So that has not happened up until now?

          24          MR. LOPEZ:  It has not happened.

14:12:08  25          THE COURT:  Okay.

14:12:09  1          What are the defense thoughts on this issue?

2          MR. ROGERS:  Your Honor, just an initial reaction is

3     I think what you described certainly sounds plausible and

4     consistent with what the parties described.

14:12:22  5          My only hesitation is I'm not directly involved in

6     the settlement process.  I would like Your Honor to allow us

7     that if we report back to the client or to the folks who are

8     involved in the settlement, if there is some issue, if we

9     could raise that with the Court at some later time.

14:12:43 10          As of today, I can't identify anything that I think

11     would be a problem.

12          THE COURT:  And what is your reaction to

13     Mr. Lopez's --

14          MR. ROGERS:  Oh, for preservation depositions?   I

14:12:58 15     think that makes sense.  I think we can probably work together

16     and get that done.

17          THE COURT:  I suppose what we could do is go ahead

18     and keep this July 1st date in place by which you'll tell us

19     which cases are in the three tracks.  And then we could either

14:13:29 20     remand cases at that point with an explanation in the report

21     that there are trial depositions coming, or we could delay the

22     remand of the third category for 60 days to allow you to take

23     the depositions so when the remand occurs, those would be

24     included with the designation of record.

14:13:51 25          So we'd keep the basic timing in place in terms of

14:13:55   1   moving forward on settlement, but we'd build in a period

2   before remand for you to get those done.  Would that

3   accommodate your interest?

4           MR. LOPEZ:  Well, actually, I think maybe move that

14:14:05   5   date -- this is just a suggestion -- maybe move the July date

6   to August.  We're not going to get these all done in one

7   month.  But as you've noted, I've seen more than ten remands,

8   by the time this gets on that court's docket, they don't even

9   have a status conference for three, four months.  We're going

14:14:23  10   to have plenty of time before this becomes an issue where

11   lawyers are even going to need these depositions.  As long as

12   we have 90 days.  I don't know that you need to delay the

13   remands.  It's up to you.  I don't know what maybe the

14   court -- remand court's or the transferor court's not going to

14:14:46  15   want them back until that happens.  I don't know.  But my

16   guess is if we took six months to do that, it's not going to

17   be an issue they're ready to address yet.  But I think it's

18   something we can do.  That August month always bothers me,

19   concerns me, about availability of lawyers, if we have a

14:15:05  20   problem we need to talk to you about, or experts, Judge.

21           THE COURT:  I think I mentioned this to you last time

22   you were here, that the experience we had with the mature

23   cases was the courts to which those cases were remanded didn't

24   want the designation of record.  They said we don't want that,

14:15:21  25   we'll wait until the judge has it and is putting a case

14:15:28   1   management order in place and then we'll come get it at that

          2   point.

          3        So I think you're right that there will be a period

          4   of time when you can get the depositions done.

14:15:39   5        I don't want to wait 90 days after Tinlin before we

          6   hit the point where we're dividing this case up between those

          7   we're going to keep here for settlement purposes and those

          8   we're going to remand because I want to keep the momentum

          9   going to get as much settlement discussion done as possible.

14:15:55  10        MR. LOPEZ:  I agree.  I wasn't suggesting -- I was

         11   suggesting you don't have to remand them out any further --

         12   you don't to have increase that any more than about 30 days to

         13   July 1.  You can even leave it at July 1 and I think then

         14   maybe impose a time limit for us to finish those depositions,

14:16:11  15   about 90 days.  I don't think it's going to affect your

         16   schedule getting those cases remanded then have them go

         17   wherever they're going to go and filter up whenever they're

         18   going to filter up for the first case management.  So July 1

         19   or August 1, I don't think it makes that much difference.

14:16:30  20        MR. ROGERS:  Your Honor, I would agree with that.

         21        The only thing that I do think we probably ought to

         22   note for the record, though, is while I agree generally with

         23   Mr. Lopez that we probably do need an opportunity to do some

         24   preservation depositions, I don't know that that will be cause

14:16:36  25   for there to be -- that everybody person needs to be preserved

14:16:53 1   for some reason.  So I think we need to at least reserve the

2   right to object to different depositions as to whether or not

3   they need to be preserved, but I think we can negotiate that

4   and bring to the Court's attention anything where there's

14:17:07 5   disagreement.

6          THE COURT:  All right.  I will include something for

7   those depositions, but I think I'm going to keep the date for

8   dividing it up into tracks on July 1st.

9          There's a couple of other matters I wanted to raise

14:17:22 10  with you.  Last -- in the last 30 days we've had over 370

11  cases added to this MDL.  I suspect as long as we have this

12  MDL on the docket we're going to keep getting cases.  And

13  there needs to be a cutoff point where we say after this date

14  cases aren't part of this MDL, otherwise this would go on

14:17:59 15  forever on these settlement tracks.

16         It seems to me there's a couple of ways of doing

17  this, and I haven't checked with the JPML to see if they have

18  a preference, but one way would be to have a specific date,

19  like May 1st or June 1st, I would vacate the order that allows

14:18:21 20  direct filing in Arizona and, assuming they would agree, ask

21  the MDL panel after that date not to transfer further cases

22  here.  So this MDL would be closed.

23         I suspect, although I don't know, that that kind of

24  action would significantly stem the tide of cases being filed.

14:18:48 25  There would be more cases filed, and I guess the question

14:18:49  1  would be, six months after that, are there enough for somebody

2  to approach the MDL panel to create a second MDL?  But it

3  seems to me we need to come to a point where we say this MDL

4  is done and is not just going to stay open ended for as long

14:19:08  5  as people choose to file cases.

6       I'm interested in your thoughts on that issue.

7       MR. LOPEZ:  I'm looking at the critical dates you

8  have here for settlement.  I mean there would really be no

9  reason to file cases here after July 1, because that means

14:19:24  10  unless the case -- unless that's a prerequisite to it being

11  settled.  But even if it was, it doesn't have to be filed

12  here.

13       In other words, if Bard is going to continue to

14  maintain if you want to settle the case you have to file it,

14:19:37  15  we're already going to be in the remand period after July 1

16  anyway, right?  So that case is going to either fall into one

17  of the three categories.  So it's either settled or it's a

18  case that has to be remanded.

19       This doesn't solve the influx of cases that are

14:20:00  20  getting filed here, but I'm just thinking of a good argument

21  to the JPML, you know, that you're in a remand period anyway,

22  why are we sending -- we don't really need to continue to send

23  cases to Your Honor.

24       I mean, those were just my thoughts as you were

14:20:13  25  saying this.

14:20:14  1        THE COURT:  Sounds like you're not disagreeing with

2   the idea of a cutoff date of some kind.

3        MR. LOPEZ:  No.  I think there should be, frankly.

4        MR. ROGERS:  Your Honor, we're kind of scurrying

14:20:27  5   around to see if we had thoughts.  And, you know, I don't know

6   that we're coming up with any that are particularly good or

7   bad.

8        I certainly understand the Court's need to try to

9   create some kind of stopgap for new filings, and I think

14:20:40  10  Mr. Lopez pointed out correctly that if a case does come in

11  after that, then it can still be dealt with.

12       I don't know.  Like I said, I'm not really -- I don't

13  see really much reason to object to having anything like that.

14  Certainly understand why the Court would like to do that from

14:21:02  15  a judicial management standpoint.

16       THE COURT:  I will tell you one of the things that

17  prompted this thought was a break in the Duke versus North

18  Carolina basketball game when a filter ad came up and I

19  thought to myself as long as this MDL is pending, or maybe

14:21:20  20  others, people will be putting up ads.

21       What I think I will do is talk to the JPML about the

22  best way to do it.  We looked and couldn't find a clear set of

23  orders that dealt with the end date for cases, although there

24  are some out there that have dealt with that.

14:21:41  25       But I do think, however we set up that end date, it

14:21:45  1    would have to include an end of the direct filing in this

2    court as well.  So we have to sort of close that avenue off

3    and get the panel to agree they're not going to transfer

4    cases.  So we'll do a little more looking into that.

14:22:00  5         There's a related issue.  I don't know if you've

6    thought about this, but this was raised in an earlier case

7    management order.  And that is we have a lot of cases in this

8    MDL that weren't transferred by the panel, they were directly

9    filed under the direct filing order.  I haven't asked them,

14:22:18  10   but I assume there's a decent chance the panel will say that's

11   not up to us to remand, they didn't come to us, we didn't send

12   them to you, so we can't send them back.  And what has to

13   happen is it has to be a 1404(a) transfer by me back to those

14   courts with potentially a 1406(a) transfer, and it would

14:22:45  15   obviously need to be coordinated with whatever we're asking

16   the MDL panel to remand so it would have to happen at the same

17   time.

18        Have you given any thought into that issue?  Any

19   insights on whether I'm wrong on that or whether there's a

14:23:00  20   particularly easy method?

21        MR. ROGERS:  Your Honor, I think you're exactly

22   right.  I mean I think that would be the only mechanism to get

23   them out of the district here would be a transfer.  We have

24   not really given any consideration as to what that process

14:23:16  25   should look like.  I think as far as from a mechanistic

14:23:21  1    standpoint that would be the only way to do it.

2    MR. LOPEZ:  I think he's probably right.  But as I

3    used the phrase "transferor court" with you I'm realizing in

4    many instances that transferor court, I just meant the court

14:23:32  5    that would have original jurisdiction.  So I'll say I've not

6    dealt with this issue in the past, but that sounds right.  If

7    it hasn't been transferred here there will be no transfer to a

8    different court, it would probably have to come from Your

9    Honor.

14:23:48  10    THE COURT:  Well, what that would mean, I think, is,

11    for example, this July 1st report where we're going to divide

12    it up, we would need to have you identify among the remand

13    cases which of them were transferred by the panel and which of

14    them were direct filed here so I would know on July 15th

14:24:16  15    whether I'm sending them to a panel with a recommend remand or

16    whether I'm issuing an order transferring them to whatever

17    district they would have been filed in.

18    I think what that also means is that when you on July

19    1st identify the cases that were filed here, you're going to

14:24:32  20    have to tell me what the district is where it would have been

21    filed had we not had the direct filing, so I know where to

22    send it under 1404(a).

23    I'm guessing what we will do at that point is have a

24    standard order that gives -- we'll probably be sending more

14:24:54  25    than one case to the various districts.  It will transfer them

14:24:58  1    and explain why it's doing it under 1404(a), which I think is

2    clearly satisfied for a trial in that district, and it would

3    attach, presumably, the kind of report we give to the MDL

4    panel so those courts get a full explanation of what's

14:25:14  5    happened, and we'd send the zip drive to them with designation

6    of record.  But we'll have to do orders transferring them to

7    the 93 districts from which they came, I presume.  Assuming

8    one came from every district in the country.

9         Any other thoughts on that?

14:25:45 10         MR. LOPEZ:  Not from us, Your Honor.

11         MR. ROGERS:  Your Honor, I think you're absolutely

12    correct about that.

13         THE COURT:  All right.  One other thought on all of

14    this.  What this also means is that what I'm going to have to

14:25:58 15    get from you by July 1st is an update to that report that we

16    used when we remanded the 10 mature cases.  It sort of

17    recounted the history of the case.  You'll need to update that

18    to include the Tinlin trial and any rulings you think ought to

19    be included.

14:26:19 20         We need to update the designation of record, but I

21    recognize -- I don't know if we want to do it at that time or

22    hold it open for 90 days for these trial depositions to be

23    taken so they can be included in -- I guess that's not really

24    part of a designation of record, that's more of a transfer

14:26:36 25    packet that the plaintiffs give to plaintiffs' counsel.  So

14:26:42  1   maybe we don't need to do that; we can just designate what's

       2   in the record that's relevant and you can add the trial

       3   depositions to the trial packet that you're preparing for the

       4   lawyers who will receive these.

14:26:59  5              Any other thoughts on this whole issue of --

       6              MR. LOPEZ:  Only one thing.  I'm not sure -- I don't

       7   know, I have no idea how many were direct filing versus

       8   transfer cases, but I'm not sure both sides are going to agree

       9   exactly what court those should go back to in many instances,

14:27:19 10   so that's going to require some meeting and conferring.  Well,

       11   I don't know what do we do with 100 cases somebody is saying

       12   should go to Wisconsin and --

       13              THE COURT:  If they weren't transferred here, I think

       14   I need to decide that.  I need to decide which courts they go

14:27:36 15   back to or go to.

       16              MR. LOPEZ:  So we need -- I'm sorry.

       17              So we need to narrow the scope of where we disagree

       18   on where you're supposed to send them.

       19              THE COURT:  Right.

14:27:47 20              MR. ROGERS:  Your Honor, I would think the majority

       21   of those we would be able to agree on.  But there's certainly

       22   are going to be certain cases that have got certain fact

       23   patterns that it's not so clear.  And I don't think that would

       24   be a very big pool but I don't know that.

14:28:01 25              THE COURT:  All right.  Any other issues we need to

14:28:03  1    talk about on this remand and settlement topic?

        2                MR. LOPEZ:  Nothing from the plaintiffs, Your Honor.

        3                MR. ROGERS:  No, Your Honor.

        4                THE COURT:  All right.  There has been a motion filed

14:28:17  5    by defense counsel to dismiss duplicative complaints filed in

        6    the MDL.  There are seven plaintiffs identified for whom two

        7    complaints by two different sets of lawyers have been filed.

        8                I will note one of the plaintiffs listed, Pamela

        9    Smith, actually filed a motion to dismiss her second filed

14:28:48 10    actions and we granted it so that is now down to one complaint

       11    from Ms. Smith.

       12                And there's another plaintiff, Leslie Sheffield, who

       13    had two complaints.  It's not on your list, but there was a

       14    stipulation filed there as well, and that was granted.

14:29:09 15                As to the other six that are on the list, it seems to

       16    me that if we have two complaints from two lawyers for those

       17    six and they've received three letters from defense saying

       18    please do something with this and nothing's happened, then I

       19    ought to just dismiss the second filed case for each of those

14:29:30 20    plaintiffs.

       21                I know, Mr. O'Connor, that one of them had Gallagher

       22    and Kennedy in the first filed case and some other lawyer in

       23    the second.  But that would leave your old firm in that case

       24    in if I dismiss the second.

14:29:50 25                Do plaintiffs' counsel have any disagreement on that

14:29:52   1    notion?  Apparently they've received ample notice because

         2    three letters have been sent to them asking to resolve it and

         3    it's not been resolved.

         4          MR. LOPEZ:  Maybe after three chances to resolve it

14:30:05   5    among themselves, I think the Court needs to take some kind of

         6    action.  That seems like a reasonable one to me.

         7          MR. ROGERS:  Your Honor, no real issues.  I think our

         8    primary concern is just getting it down to one case and which

         9    one goes.  I don't think we care so much about --

14:30:20  10          THE COURT:  Okay.  I think under the first-filed

        11    rule, although not squarely on point, I'll leave that one in

        12    place and dismiss the second filed case, without prejudice,

        13    obviously, because we don't want to terminate the first case

        14    when we dismiss the second.

14:30:35  15          Let's talk about the remote appearance of Ms. Tinlin.

        16          I've read the motion, I've read the response filed by

        17    Bard.

        18          And there were several conditions, I guess I'll say,

        19    that Bard wanted to be included in any arrangement for

14:31:00  20    Ms. Tinlin to testify remotely.  One would be that she would

        21    be alone in the room in the court where she's testifying

        22    except for a courtroom deputy clerk who could hand her

        23    exhibits and a videographer.  Bard would have counsel in the

        24    courthouse in case any issues arose, and I assume plaintiff's

14:31:23  25    counsel would as well.

14:31:29   1          Any exhibit she would be asked to testify about would

2     be there in the room with her so they could be handed to her

3     by the courtroom deputy clerk who's there.

4          Plaintiffs would pay the cost of any such video

14:31:46   5     transmission.

6          And a jury instruction would be given explaining why

7     Ms. Tinlin could not appear live at trial.  And Bard suggests

8     that it make clear it's due to other health conditions

9     unrelated to the filter that she's unable to attend.

14:32:06  10          Do plaintiff's counsel have any thoughts on those

11     conditions that Bard would like to have placed on this?

12          MR. O'CONNOR:  Your Honor, we were going to look at

13     it in more detail and possibly file a reply.

14          I don't think we have much of a disagreement about

14:32:27  15     both sides having a lawyer in the vicinity.  I haven't thought

16     about the document issue, but that seems to be the way we have

17     done it with other witnesses anyway, so I don't see a problem

18     with that.

19          As far as the instruction, I think I would request we

14:32:45  20     be given an opportunity to put something together because I

21     don't know pointing it out to the jury one way or the other

22     how much of her health condition is related to the filter or

23     not, I just don't know.  I'm not a medical doctor.  But I

24     don't think it would be appropriate to point out too much to

14:33:04  25     the jury other than possibly, I'm thinking out loud, a

14:33:06  1    statement that because of health reasons she has to appear

        2    remotely, without saying what it's related to or not related

        3    to.

        4            I think a lot of issues will come out through the

14:33:18  5    testimony and I think you're going to instruct the jury anyway

        6    that they need to listen closely to all testimony, make their

        7    own assessment.

        8            I don't think it's appropriate for us to be

        9    responsible for the costs if it was a taxable cost, obviously.

14:33:39 10            So those are our thoughts up front.  When we first

       11    read it we thought they wanted to have their lawyer present

       12    but not ours, but I reread that and saw that and that makes

       13    sense to me.

       14            But I think we'd like an opportunity to look at it

14:33:51 15    and possibly file a reply.  Those are our initial thoughts

       16    from our end, though.

       17            THE COURT:  I do think that it probably makes sense

       18    to have the lawyers not in the room with her.  Certainly when

       19    somebody's testifying at trial we don't have a lawyer at that

14:34:13 20    person's elbow and opposing lawyer sitting next to that

       21    attorney.

       22            Clearly the exhibits would need to be there in

       23    advance so they can be handed to her.

       24            I'm happy to let you work out any jury instruction.

14:34:26 25    I think the jury would need to be told why she's not here and

14:34:35  1    why she's testifying remotely.  If it's due to medical

       2    conditions that the plaintiffs do not contend are related to

       3    the filter, I think it would be appropriate to let the jury

       4    know that.  You'll need to look and see if that's the case.

14:34:50  5            I guess there was one other thing that Bard

       6    mentioned, and that was that they don't have a problem with

       7    her listening in to jury selection or openings and closings

       8    but wouldn't want her on a video screen on the courtroom for

       9    the jury to watch during that time because Bard thinks that

14:35:06 10    would call undue attention to her.  What are your thoughts on

      11    that?

      12            MR. O'CONNOR:  Your Honor, you're right, that was the

      13    other issue.

      14            Initially our feeling is we should have a right to

14:35:16 15    allow Mrs. Tinlin to have the option and at least report to

      16    you and counsel what parts of the trial she may want to be

      17    present at.  For example, if she were here, she would hear all

      18    the testimony.

      19            If there's going to be a witness that she has a right

14:35:33 20    or should be present, such as say a medical expert, we would

      21    like the option to at least notify the Court and parties ahead

      22    of time and make those arrangements.

      23            I don't think we suggested in our motion that we

      24    thought she should be limited to just the opening, closing,

14:35:51 25    jury selection and her testimony, but certainly that was not

14:35:54   1   our intent and we would like to have that option.  I doubt

2   that we would want to have her available and that she would

3   need to be present for every single witness and every aspect

4   of the trial, but I do think we could envision some witnesses

14:36:10   5   where she should be present remotely to hear the testimony.

6        THE COURT:  What is your reaction having her on the

7   screen in the courtroom during times when she's not

8   testifying?

9        MR. O'CONNOR:  I don't think we need to have her on

14:36:23  10   the screen.  Other than for her testimony --

11        THE COURT:  Sure.  She clearly needs to be on --

12        MR. O'CONNOR:  And we're trying to right now figure

13   out the logistics and the equipment.  I think she should be

14   able to be in a position to observe herself, but I don't know

14:36:38  15   that the jury has to see her, other than probably during jury

16   selection at some point and during opening and closing

17   perhaps.  But at least during jury selection I think we need

18   the opportunity to introduce her, have the jury see her.

19        THE COURT:  Yeah.  And if you don't want to pay for a

14:37:01  20   hookup for that, you can always put a photograph of her up as

21   well if the question is whether they know her.

22        MR. O'CONNOR:  Oh, that's --

23        THE COURT:  You know, when we've done testimony

24   remotely here in the courtroom, we've had a screen set up

14:37:16  25   between these two tables, that's a 50-inch screen, pretty big

14:37:19  1    one.  We could probably have it brought over a little closer,

        2    and defense counsel can move over, so the jury -- well, I

        3    don't know.

        4         Christine, can we actually put it on the screens in

14:37:30  5    the jury box, too?  We might be able to.

        6         THE COURTROOM DEPUTY:  That would be the exhibits.  I

        7    don't think we can do her.  But if there is a way to do her,

        8    we can't have the exhibits on the same screen.

        9         THE COURT:  That's a fair point.

14:37:44 10    So we'd probably just have her on about a 50-inch

       11    screen probably somewhere in front of Christine.

       12         And when you mark an exhibit that goes on the jury

       13    screen, she wouldn't be able to see that on the screen she's

       14    looking at but she'd have a hard copy in front of her.  The

14:38:08 15    jury would be able to see her, listen to her.

       16         It's a pretty good connection.  Every time I've done

       17    it, it's real time, there's not a break in it.  At least in

       18    the locations we've done it before.  And she can see wherever

       19    the camera on the screen is pointed.  So we'd probably point

14:38:20 20    it at the questioner, the lectern, during her testimony.  And

       21    that's what she would be seeing on her screen.

       22         Have you made contact with the court in Green Bay

       23    about this possibility?

       24         MR. LOPEZ:  We have, Your Honor.  That person has

14:38:38 25    been on vacation.  Haven't had a chance to talk to her about

14:38:42  1  what she found out, but I'm pretty sure she said we're going

2  to need somebody who will coordinate with somebody here on the

3  logistics or the technology or whatever it is you want to call

4  it.

14:38:54  5          I don't have any specific -- I know we've got that in

6  the works.

7          THE COURT:  The person here who is best to coordinate

8  with is Brian Lalley.  L-A-L-L-E-Y.

9          Is that the correct spelling?

14:39:14  10         THE COURTROOM DEPUTY:  L-A-L-L-E-Y.  Yes.

11         THE COURT:  L-A-L-L-E-Y.  He's great.  I would

12  suggest you contact him.

13         In fact, Christine, maybe we can give him a heads up

14  on this, letting him know --

14:39:27  15        THE COURTROOM DEPUTY:  Yes, Your Honor.

16         THE COURT:  -- what needs to be arranged.  He can

17  reach out to his counterpart in that federal courthouse to see

18  if they've got the right facilities.

19         One of the first questions they're going to ask is

14:39:36  20  what's the date when this is going to happen because they'll

21  have to schedule equipment here and there.  So you'll need to

22  figure out where in your case you want to present her, and we

23  probably ought to do it at a set time, like 9 o'clock in the

24  morning here, rather than have her wait there and technical

14:39:55  25  folks wait until some other witness finishes.

14:39:59 1       And I'm assuming the courthouse in Green Bay will

2       have the equipment necessary to do it.  If not, she may need

3       to go to another location in Wisconsin.  But Brian will know

4       the answer to that.

14:40:14 5       MR. ROGERS:  Your Honor, would you mind repeating

6       Brian's last name.

7       THE COURT:  Lalley.  L-A-L-L-E-Y.

8       MR. LOPEZ:  Do we have contact information for him?

9       MR. ROGERS:  We'll find it.

14:40:29 10      MR. O'CONNOR:  He's here.

11      MR. LOPEZ:  He's outside the court?

12      MR. O'CONNOR:  No, no.  He's in this courthouse.

13      THE COURT:  He's an employee of this courthouse.  If

14      you call the main number in the court they can put you through

14:40:41 15      to him.

16      But we'll give him a heads up about this.

17      I am okay under Rule 43 having her testify in that

18      manner.  I think this is the sort of rare exception Rule 43

19      was designed to allow.  I'm going to say that in the order

14:41:05 20      that comes out.

21      I'll leave it to you all to talk about instruction

22      issues, see if you can come up with an agreed instruction.  If

23      not, I'll make that decision at the final pretrial conference.

24      And also to coordinate about the exhibits that will be in

14:41:20 25      front of her at the time.

14:41:24   1          All right.  Anything else on that issue we need to

2      address?

3              MS. HELM:  No, Your Honor.

4              MR. LOPEZ:  No, Your Honor.

14:41:32   5          THE COURT:  Okay.

6              Couple of other matters.

7              The plaintiffs have filed a motion to seal materials

8      submitted with your summary judgment brief.  It doesn't

9      address the correct standard, which is the compelling reason

14:41:56  10      standard since this is a summary judgment motion.  We denied a

11      previous motion to seal by Bard for just that reason.  So I'm

12      going to deny the motion to seal.  If you could refile it

13      addressing the compelling reason standard, which is the reason

14      that applies when material is in support of a summary judgment

14:42:16  15      brief then we'll consider that motion.

16              We mailed out the Tinlin jury questionnaires last

17      week, as scheduled.  The due date for their return is

18      April 5th and we'll have them available for you to pick up on

19      April 12th.

14:42:37  20              We've got a motion in limine and deposition

21      designation deadline of March 29, as you know.

22              And the proposed final pretrial order is due

23      April 12th with the final pretrial conference scheduled for

24      April 30th at 10:00 a.m.

14:42:55  25              Let me just check something.

14:43:21  1          Yeah, that's right.  April 30th, 10:00 a.m.

2          What else do we need to discuss, if anything?

3          MR. LOPEZ:  Well, we had on these March 29 deposition

4     designations we're working through that but there's an issue

14:43:36  5     that we went back and forth on last year -- last year.  It was

6     last hearing but also last week regarding some of the

7     affirmative designations and 804 and rule -- all those things

8     we dealt with with Dr. Asche.  Unfortunately, we didn't meet

9     and confer until this morning.  So it sounds to me like we may

14:43:57 10     be narrowing the scope of what we may or may not need to put

11     before you on maybe some of these witnesses, Your Honor.  We

12     don't need to bother even talking about it right now.  I was

13     all prepared to give our side of it, but based on the offer

14     that was made by Ms. Helm before we came in, it looks like, if

14:44:16 15     nothing else, we'll be able to narrow the scope of what you

16     may have to deal with in that regard.

17          It has to do with affirmatively designating former or

18     current Bard employees versus counter-designating to ours and

19     how we work through that so we don't have two sets of

14:44:35 20     designations and give them to you as two sets.  We may object

21     under 32 or 804.  I've got the subsections.  But the same

22     subsections.  Unavailability issue and whether or not you made

23     reasonable attempts to procure the appearance of the witness.

24          It's not an issue right now, but it could be so we

14:44:57 25     may have to come to you on some of these witnesses on the

14:45:00  1    March 29 designations until you've ruled on some of those, but

2    we'll see.

3              THE COURT:  Okay, that's fine.

4              Any issues from the defense?

14:45:11  5              MR. ROGERS:  No, Your Honor.

6              THE COURT:  Okay.  We'll get an order out.  Thank you

7    all.

8              MR. O'CONNOR:  Thank you.

9              MR. LOPEZ:  Thank you, Your Honor.

14:45:19  10             MR. ROGERS:  Thank you, Your Honor.

11         (End of transcript.)

12                            *  *  *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      **C E R T I F I C A T E**

2

3          I, PATRICIA LYONS, do hereby certify that I am duly

4   appointed and qualified to act as Official Court Reporter for

5   the United States District Court for the District of Arizona.

6

7          I FURTHER CERTIFY that the foregoing pages constitute

8   a full, true, and accurate transcript of all of that portion

9   of the proceedings contained herein, had in the above-entitled

10  cause on the date specified therein, and that said transcript

11  was prepared under my direction and control, and to the best

12  of my ability.

13

14         DATED at Phoenix, Arizona, this 23rd day of March,

15  2019.

16

17

18

19

20                           s/ Patricia Lyons, RMR, CRR
                             Official Court Reporter
21

22

23

24

25