1  James R. Condo (#005867)
   Kristine L. Gallardo (#033975)
2  SNELL & WILMER L.L.P.
   One Arizona Center
3  400 E. Van Buren, Suite 1900
   Phoenix, AZ 85004-2202
4  Telephone: (602) 382-6000
   Facsimile: (602) 382-6070
5  jcondo@swlaw.com
   kgallardo@swlaw.com

6
   Richard B. North, Jr. (admitted *pro hac vice*)
7  Georgia Bar No. 545599
   Matthew B. Lerner (admitted *pro hac vice*)
8  Georgia Bar No. 446986
   NELSON MULLINS RILEY & SCARBOROUGH LLP
9  201 17th Street, NW / Suite 1700
   Atlanta, GA 30363
10 Telephone: (404) 322-6000
   Facsimile: (404) 322-6050
11 richard.north@nelsonmullins.com
   matthew.lerner@nelsonmullins.com
12
   *Attorneys for Defendants*
13 *C. R. Bard, Inc. and*
   *Bard Peripheral Vascular, Inc.*
14

15 **IN THE UNITED STATES DISTRICT COURT**

16 **FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| 17  IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC |
| 18 | **DEFENDANTS' MOTION *IN LIMINE* NO. 4 AND MEMORANDUM IN SUPPORT REGARDING A PATIENT AT DR. MUEHRCKE'S HOSPITAL** |
| 19 | |
| 20 | |
| 21  This Document Relates to: | (Assigned to the Honorable David G. Campbell) |
| 22  Debra Tinlin, et al. v. C. R. Bard, Inc., et al. CV-16-00263-PHX-DGC | |
| 23 | **(Oral Argument Requested)** |

24

25

26

27

28

During a recent deposition that Dr. Muehrcke gave in a state-court case, he offered testimony and opinions about a patient for whom he was a consulting physician. (Muehrcke Dep. Tr., 7:15-22, Oct. 18, 2018, attached as Exhibit A.) Dr. Muehrcke testified that the patient had a Bard filter where a strut had embolized to the heart and was causing cardiac tamponade. (*Id.* at 7:15 to 8:11.) Dr. Muehrcke testified that he wanted to remove the strut from the heart, but the patient's lung function was poor and she had signed a "do not resuscitate" order. (*Id.* at 8:17-24; 11:21 to 12:6.) The patient died, and Dr. Muehrcke testified that the cause of death was "tamponade and severe COPD." (*Id.* a 9:2-6; 11:9-10; 11:13 to 12:6.) Dr. Muehrcke testified that he thinks that the tamponade was caused by the filter strut. (*Id.* at 10:23 to 11:4.) No death caused by a filter strut in the heart has ever been reported to Bard concerning any of its IVC filters, however. For three reasons, Bard moves *in limine*[1] to exclude testimony or evidence about this patient.

1. <u>Facts and opinions about the patient have never been properly disclosed</u>.

As the Court outlined in CMO-8, Rule 26(a)(2)(B) requires "[f]ull and complete disclosures" of "the testimony the [expert] witness is expected to present during direct examination, together with the reasons therefor." (CMO No. 8, at 3 (citing Fed. R. Civ. Pro. 26 Advisory Committee Notes to the 1993 Amendments).) Nothing about the aforementioned patient, however, was disclosed in Dr. Muehrcke's Rule 26 Report in *Tinlin* (or any other Rule 26 Report or expert disclosure in any other case). Nor did Dr. Muehrcke provide any records or imaging concerning this patient in response to requests for production of documents as to all material that he relied on in reaching his opinions in *Tinlin*. (Not. of Taking Videotaped Dep. of Derek R. Muehrcke, 4 ¶ 2(b), Dec. 6, 2018, attached as Exhibit B.) Nor did Dr. Muehrcke testify during his *Tinlin* deposition about this patient.

As such, Bard is left only with Dr. Muehrcke's say-so—from a deposition in another case—about the patient without any meaningful way to challenge the facts

---

[1] Counsel for Defendants conferred with counsel for Plaintiff and this motion is opposed.

underpinning his opinions, or to challenge the opinions themselves. On such a critical issue—where Dr. Muehrcke may tell the jury that patients like Ms. Tinlin are at risk of death because of filter struts in the heart, and where he may tell the jury that he has seen first-hand a patient die because of a Bard filter strut in the heart—Bard should be entitled to a full exploration of the factual underpinnings of this extraordinary claim, especially given that Bard has never received a report of a death from a filter strut in the heart.

Because the plaintiffs have not disclosed anything about Dr. Muehrcke's patient as part of his Rule 26 Report or in response to Bard's document requests that accompanied his deposition notice, Bard has not been afforded a full exploration of this issue ahead of trial. As such, the Court should exclude any testimony or evidence about the patient.

2.   <u>Dr. Muehrcke's opinions about the patient should be excluded under Rule 702.</u>

Rule 702 requires that all expert opinions be "based on sufficient facts or data," "the product of reliable principles and methods," and that the expert "reliably applied the principles and methods to the facts of the case." The plaintiffs cannot meet their burden regarding Dr. Muehrcke's opinions about this patient.[2]

Dr. Muehrcke provided no facts or data about the patient's medical condition beyond his recollection from a brief consult with the patient's cardiologist several months prior. Indeed, he suggested that the patient had a complicated medical history, which is relevant to the reliability of his opinions about the cause of death, including that "she was a sick lady," that "[t]he pulmonologist wouldn't clear her" for surgery, that the failure to clear her was "very unusual," and that she had a newly established do not resuscitate order because "apparently she had suffered a lot before."

Additionally, Dr. Muehrcke did not explain how his opinion that the filter strut caused the patient's death is the product of reliable principles and methods—he simply

---

[2] As discussed *supra*, Bard believes that any testimony about this patient is completely out of bounds in *Tinlin* because the opinions were not disclosed as part of Dr. Muehrcke's Rule 26 Report in the case. Out of an abundance of caution, however, Bard is raising the admissibility of the opinions in the *in limine* context to prevent extraordinary prejudice if counsel references the patient during opening statements or elicits reference to the patient during Dr. Muehrcke's direct examination.

- 2 -

said that the tamponade caused the death. Dr. Muehrcke does not say whether he used a differential diagnosis or some other process to reach his opinion. Because Dr. Muehrcke does not identify any principle or method, there is no way to ascertain whether any such principle or method is reliable or whether he even used a principle or method.

Finally, without establishing that his opinions are based on sufficient facts and data and reliable principles and methods, Dr. Muehrcke cannot satisfy the final element of the Rule 702 analysis that he "reliably applied the principle and methods to the facts of the case." In addition to this fatal shortcoming, Dr. Muehrcke provides no insight into how he is able to rule out other issues in causing the patient's death, such as respiratory distress alone, any of the patient's undisclosed "multiple medical problems," and whether the patient would have died even if the filter strut was not present in the heart given her respiratory distress and do not resuscitate order. Indeed, no autopsy was performed on the patient to establish a definitive cause of death, which underscores the importance of the Rule 702 requirements and analysis.

For each of these reasons, Dr. Muehrcke's opinions about his patient should be inadmissible under Rule 702.

3.      <u>Testimony about the patient should be excluded on Rule 403 grounds.</u>

Dr. Muehrcke currently has an unchecked ability to provide powerfully misleading facts and opinions to the jury: "Filter struts in the heart can cause death, and I know because I recently had a patient who was killed by a Bard filter strut in her heart." And with no discovery about Dr. Muehrcke's claims, Bard has no way to meaningfully challenge these unfairly prejudicial facts or opinions, or offer any expert of its own to show that the statements are misleading. As such, the testimony should be excluded.

* * * *

For each of the foregoing reasons, the Court should grant Bard's motion *in limine* number 4.

- 3 -

1    RESPECTFULLY SUBMITTED this 29th day of March, 2019.

s/ Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
FX: (602) 382-6070
JCondo@swlaw.com
KGallardo@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

- 4 -