James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
jcondo@swlaw.com
kgallardo@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Telephone: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation,<br><br>This Document Relates to:<br><br>Debra Tinlin, et al. v. C. R. Bard, Inc., et al.<br>CV-16-00263-PHX-DGC | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE OF RECOVERY® FILTER CEPHALAD MIGRATION DEATHS**<br><br>(Assigned to the Honorable David G. Campbell)<br><br>**(Oral Argument Requested)** |

- 1 -

Bard respectfully re-urges its motion *in limine* (Doc. 9862) to exclude any reference, evidence, or argument at the *Tinlin* trial concerning a small number of reports of Bard's Recovery® Filter allegedly migrating to a patient's heart resulting in death.[1]

### I.     The Court's Reasoning in *Booker* Should Not Apply in this Case.

"A showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect." *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991).[2] While the Court found that Ms. Booker's complications with her G2® Filter included virtually all of the complications associated with the Recovery® Filter, it did not address whether instances of cephalad migration deaths were substantially similar to complications she experienced. (Doc. 10258 at 3-4.) Had it done so, the Court likely would have found, just as it did in *Jones* and *Hyde*, that "deaths by cephalad migration of Recovery filters are not substantially similar to Plaintiff's alleged injury." (Doc. 10920 at 5; Doc. 11041 at 2.) The Court should find the same here, because Mrs. Tinlin (like Ms. Jones and Hyde) did not experience a migration of her entire filter "in a cephalad direction to her heart or any other organ." (Doc. 10920 at 5.) Rather, her filter allegedly migrated caudally, fractured, and fractured struts embolized to her heart (like Ms. Hyde) and lungs (like Ms. Jones). Thus, this evidence—which Plaintiffs intend to use as direct evidence rather than just for impeachment—should be inadmissible. *See Cooper*, 945 F.2d at 1105.

Additionally, the Court's principle concern in *Booker*—that Plaintiffs would be unable to present the Recovery story without this evidence, (Doc. 10323 at 4)—should be obviated by the fact that they have done so twice now: in *Jones* and *Hyde*. In both cases, Plaintiffs were not "seriously hampered in [their] ability to prove Recovery filter complications, testing, and design when references to cephalad migration deaths [we]re removed." (Doc. 11041 at 12.) Indeed, they spent substantial trial time on Recovery even

---

[1] Counsel for Bard conferred with counsel for Plaintiffs and this motion is opposed.
[2] Dissimilar incidents involving the same model of product are equally barred. *Bryte ex rel. Bryte v. Am. Household, Inc.*, 429 F.3d 469, 479 (4th Cir. 2005) (affirming exclusion of other incidents "involving the same product" without substantial similarity showing).

though those cases involved G2®X or Eclipse® filters.³ The death evidence is simply not necessary to proof of a Recovery case, even if "the fact of the deaths could be viewed as making [Bard's] conduct . . . look more negligent." (*Id.* at 5-6.) This is especially true where Plaintiffs claim that other complications "caused her injuries, not cephalad migration." (*Id.* at 6.) Further, Plaintiffs are not precluded "from asserting that filter migration, tilt, fracture, and perforation can cause serious health effects including death," as they did extensively in *Jones* and *Hyde*. (*Id.* at 5.)⁴  This evidence should be excluded.

## II.     Cephalad Migration Death Evidence is Inadmissible Under Rule 403.

This Court was "concerned" in *Booker* "that too heavy an emphasis on deaths caused by cephalad migration of the Recovery filter – a kind of migration which did not occur in Ms. Booker's case – would result in unfair prejudice that substantially outweighs the probative value of the cephalad migration evidence." (Doc. 10323 at 4.) This concern is highly warranted in this Recovery Filter case, and substantially outweighs the minimal probative value, if any, this evidence may have. *See* Fed. R. Evid. 403.

Because Mrs. Tinlin did not experience a fatal migration of the ***entire*** Recovery Filter to her heart, the "jury could easily be confused or misled into imposing liability on the mere basis of what *could* have happened rather than what *did* happen." *Bauerlein v. Equity Residential Properties Mgmt. Corp.*, No. CIV 04-1904 PHXSMM, 2007 WL 1546101, at *1 (D. Ariz. May 24, 2007) (excluding evidence of other deaths involving defendant's products). This evidence will serve no purpose other than to inflame the jury and impermissibly "prompt a jury decision based on emotion." (Doc. 10819 at 6.) Indeed, Plaintiffs spent substantial trial time on this evidence in *Booker* and heavily emphasized it

---

³ A search of the transcripts shows that "Recovery" was mentioned more in *Jones* (over 800 times) and *Hyde* (over 600 times) than the actual filters at issue in those cases ("Eclipse" mentioned little over 700 and 600 times in *Jones* and *Hyde*, respectively, and "G2X" less than 600 times in *Hyde*). Contrast *Booker* where "Recovery" was mentioned nearly half the time (over 800 times) than "G2" (nearly 1500 times), the filter at issue.

⁴ Plaintiffs even repeatedly presented the migration deaths generally to the jury in *Jones* and *Hyde*, referring to them as "catastrophic" injuries or events. (*See* Exs. A, B; *e.g., id., Hyde* Trial Tr. at 924:24-925:1 ("[A]s of the date you had that review, there was already a migration of a Recovery filter in a patient that caused a catastrophic injury. Do you recall that?").) Bard believes this is a fair compromise for the exclusion of this evidence. (*Id.*)

- 2 -

1  in closing. (*See, e.g.*, Ex. C, *Booker* Trial Tr. at 2490:13-15 ("They just put [the Recovery] out blindly into the world without knowing what was going to happen. And guess what happened? 19 people died from that Recovery device."); *id.* at 2492:11-17 ("[T]he Recovery filter was causing more deaths than any other device on the market, including their [SNF]. Isn't that – I mean, that is not a stop sign. I mean, that is a giant wall to stop. Our device is causing more fatalities than the device that allowed us to get it on the market."); *id.* at 2494:18-22 ("Don't you think they should have told Dr. Cohen so he wouldn't have had statistic number six? Because I'm sure if they would have told Dr. Cohen, somebody they were paying that was a consultant to them, they didn't have the decency to tell him, then they just allowed two of his patients to die.").) Admission of this evidence will unfairly prejudice Bard, waste time, likely confuse the jury, and prevent the parties from trying the issues presented by this particular case. It should be excluded.

### III. Admitting Cephalad Migration Death Evidence Would Violate Due Process.

Pursuant to the Due Process clause, "[a] defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003). Due Process prohibits imposing punitive damages to "punish and deter conduct that b[ears] no relation" to a plaintiff's injury. *Id.* at 422–23. The Wisconsin Supreme Court has also made clear that punitive damages may not be awarded based on conduct that did "not cause or contribute to the plaintiff's loss." *Henrikson v. Strapon*, 758 N.W.2d 205, 211 (Wis. 2008); *see also Kehl v. Economy Fire & Cas. Co.*, 433 N.W.2d 279, 280 (Wis. Ct. App. 1988); (Doc. 12734 ("*Kehl* and *Henrikson* make clear that actions of a defendant are not admissible on punitive damages unless they caused or contributed to the plaintiff's loss.").) Here, Mrs. Tinlin did not suffer a fatal migration of the ***entire*** Recovery Filter to her heart. Therefore, this evidence bears no relation to Bard's potential liability for her underlying tort claims, and both Due Process and Wisconsin law prohibit its use to impose punitive damages on Bard in this case. *See Campbell*, 538 U.S. at 423; (Doc. 12734.)

For these reasons, Bard respectfully requests that the Court grant its Motion.

- 3 -

RESPECTFULLY SUBMITTED this 29th day of March, 2019.

s/Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
jcondo@swlaw.com
kgallardo@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**