# Exhibit A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| In Re: Bard IVC Filters Products Liability Litigation ) | MD-15-02641-PHX-DGC |
| ) | |
| ) | Phoenix, Arizona |
| ) | May 22, 2018 |
| _____) | |
| Doris Jones, an individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CV-16-00782-PHX-DGC |
| v. ) | |
| ) | |
| C.R. Bard, Inc., a New Jersey ) | |
| corporation; and Bard Peripheral ) | |
| Vascular, Inc., an Arizona ) | |
| corporation, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TRIAL DAY 5 - A.M. SESSION

(Pages 935 - 1076)

Official Court Reporter:
Patricia Lyons, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Ste. 312
401 West Washington Street, SPC 41
Phoenix, Arizona  85003-2150
(602) 322-7257

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared with Computer-Aided Transcription

1     because it has two attachment points, it has very robust hooks

2     that hook into the inferior vena cava and rarely release, and

3     then it has a second attachment point at the cone of the

4     filter.

5               So when a device like this fractures, the severity of

6     the complication or the adverse event is very little or has

7     very little effect on the patient.

8               When we talk about a fracture and migration of an arm

9     of a filter such as in the Eclipse, the severity of that

10    complication could be catastrophic.  You can have a puncturing

11    of the right ventricle, you can have issues with the valves

12    where the filter fragment gets caught in the valve and then

13    requires open heart surgery.

14              So the degree of seriousness of the risk is much

15    higher in this device than the complications that we saw with

16    the other devices.

17    Q     And for catastrophic risk like that, what would be an

18    acceptable rate of risk generally, across all medical devices

19    you work with?

20    A     Right.  So when you look at devices in the risk/benefit

21    analysis, like I said, you can have a complication such as a

22    fracture or tilt of the -- that's inconsequential.  You're

23    willing to accept a higher rate of occurrence, maybe one out

24    of 1,000 patients or one out of 10,000 patients.  But when you

25    get to a catastrophic or potentially catastrophic event, your

Page 1005

1    Your Honor.

2              THE COURT:  So you're referring to lines 14 through

3    16?

4              MR. COMBS:  Yes, Your Honor.

5              MR. ROGERS:  Your Honor, I apologize if I misheard.

6    I thought he said page 837.  Is that --

7              MR. COMBS:  847.

8              THE COURT:  847, lines 14 through 16.

9              MR. ROGERS:  847, and it's lines 14 through what?

10             MR. COMBS:  16.

11             THE COURT:  16.

12             MR. ROGERS:  I concede the testimony, Your Honor.

13             THE COURT:  Objection is overruled.

14             MR. COMBS:  May I publish this, Your Honor?

15             THE COURT:  Yeah.

16   BY MR. COMBS:

17   Q    So, Dr. Hurst, just so we're clear, one in a million would

18   be .001 percent; correct?

19   A    Yes, that is correct.

20   Q    That would be an acceptable risk for a catastrophic event

21   for any medical device?

22   A    Correct.

23             MR. COMBS:  I'm done with that.

24             If you could pull up, Gay, please, 4459.

25             I'm not sure if this is in evidence or not,

1    a risk-free medical device; is that right?

2    A    There is no such thing as a risk-free medical device.

3    That is true.

4    Q    Doctor, you testified today about what you consider to be

5    acceptable rates of complications for filters.  Do you recall

6    that?

7    A    I do.

8    Q    And do you recall your testimony that you thought that if

9    it was a particularly serious outcome, you thought that a risk

10   of one out of a million was an acceptable rate.  Do you recall

11   that?

12   A    Catastrophic.  Yes.

13   Q    Catastrophic.  That's the word you used.

14   A    Yes, that's the word I used.

15   Q    Would you agree, Doctor, in order to measure whether or

16   not that standard can be satisfied, there has to be at least a

17   million of the filters that are out there in patients; is that

18   true?

19   A    No.  That's not the way statistics works.

20   Q    Okay.  Doctor, would you agree with me that previously you

21   had testified that you felt like if an IVC filter had a

22   complication rate of less than 1 percent, that that would be

23   an acceptable rate?

24   A    I did testify to that, yes.

25            I'm sorry, you said complication rate?

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| In Re: Bard IVC Filters<br>Products Liability Litigation | )  MD-15-02641-PHX-DGC<br>)<br>)  Phoenix, Arizona<br>)  May 24, 2018 |
| _____) | |
| Doris Jones, an individual, | )<br>) |
| Plaintiff, | )<br>) |
| v. | )  CV-16-00782-PHX-DGC<br>) |
| C.R. Bard, Inc., a New Jersey<br>corporation; and Bard Peripheral<br>Vascular, Inc., an Arizona<br>corporation, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |
| _____) | |

BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TRIAL DAY 7 - A.M. SESSION

(Pages 1348 - 1483)

Official Court Reporter:
Patricia Lyons, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Ste. 312
401 West Washington Street, SPC 41
Phoenix, Arizona  85003-2150
(602) 322-7257

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared with Computer-Aided Transcription

Page 1456

1    Q    And you talked about the Dear Doctor letter that was --

2    that Bard had sent regarding the Recovery filter?

3    A    Yes.

4    Q    And you're saying that that letter appropriately

5    represented what was going on at Bard at the time?

6    A    I believe that the information in that letter was

7    consistent with -- based on the information I reviewed, with

8    what Bard was observing about the Recovery filter at the time.

9    Q    Do you have any idea the type of catastrophic injuries

10   that were caused by the Recovery filter when it was on the

11   market?

12            MR. NORTH:   Objection, Your Honor.   402 and 403.

13            THE COURT:   As worded, I don't think it's a

14   violation of any prior ruling or irrelevant or subject to

15   403, so I'm going to overrule the objection.

16   BY MR. LOPEZ:

17   Q    You have no --

18   A    I'm sorry, I lost the question.

19   Q    The question is simply this:   You weren't provided with

20   data, actually information, about the type of catastrophic

21   injuries caused by the Recovery filter before you made your

22   determination that the information in the Dear Doctor letter

23   was appropriate.   True?

24   A    No, I don't agree with that.   I very much reviewed

25   internal Bard documents and health hazard evaluations that