# Exhibit B

```
 1                    UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF ARIZONA

 3                    _____

 4   IN RE: Bard IVC Filters Products      )
     Liability Litigation,                 ) MD 15-02641-PHX-DGC
 5                                         )
     _____)
 6                                         )
     Lisa Hyde and Mark Hyde, a married    ) Phoenix, Arizona
 7   couple,                               ) September 18, 2018
                                           )
 8                     Plaintiffs,         )
                                           )
 9            v.                           ) CV 16-00893-PHX-DGC
                                           )
10   C.R. Bard, Inc., a New Jersey        )
     corporation, and Bard Peripheral     )
11   Vascular, an Arizona corporation,    )
                                           )
12                     Defendants.         )
     _____)
13

14

15      BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE

16           REPORTER'S TRANSCRIPT OF PROCEEDINGS

17              TRIAL DAY 1 - A.M. SESSION

18

19

20

21   Official Court Reporter:
     Patricia Lyons, RMR, CRR
22   Sandra Day O'Connor U.S. Courthouse, Ste. 312
     401 West Washington Street, SPC 41
23   Phoenix, Arizona  85003-2150
     (602) 322-7257
24
     Proceedings Reported by Stenographic Court Reporter
25   Transcript Prepared with Computer-Aided Transcription
```

1        MR. LOPEZ:  I think that one might actually be 22.
2        THE COURT:  And it's the one that has "Lifesaving
3    Devices" in the title?
4        MR. LOPEZ:  Right.  I don't mind the evidence, but to
5    me that's argument, whether or not these things are lifesaving
6    devices.
7        THE COURT:  So what you're objecting to is the
8    reference at the beginning of "Lifesaving Devices"?
9        MR. LOPEZ:  Yes, sir.  Yes, Your Honor.
10       THE COURT:  All right.
11       MR. ROGERS:  Your Honor, we do plan to present to the
12   jury that evidence will show that filters are lifesaving
13   devices and I think, Your Honor, that we will support that
14   evidence at trial.  And this is what we believe the evidence
15   will show.
16       THE COURT:  All right.  I'm going to overrule the
17   objection in light of the representation that there will be
18   evidence on that point.
19       MR. LOPEZ:  Slide 52.  This one, Your Honor.
20       THE COURT:  99.99 --
21       MR. LOPEZ:  Bard filters are 99.99 percent effective.
22       THE COURT:  Okay.
23       MR. LOPEZ:  There's been no evidence to that thus
24   far.  I mean, that's argument.  I mean, there's no facts that
25   I'm aware of that have come in in either of the prior two

1  trials that show that Bard filters are 99.99 percent
2  effective.
3         THE COURT:  All right.
4         Mr. Rogers.
5         MR. ROGERS:  Your Honor, we believe there is evidence
6  of that and it is based on Bard's internal rates for tracking
7  that issue.
8         And Mr. Lopez -- I told him I would add to certain
9  slides it was a reported rate and he accepted that, and if it
10 would make him comfortable I can add that same language to
11 this slide.
12        THE COURT:  Do the math for me.  What is the internal
13 data that allows you to tell the jury the evidence will show
14 99.99 percent effectiveness?
15        MR. ROGERS:  That is the reported rate of PE deaths
16 with the Bard filters.
17        THE COURT:  All filters?
18        MR. ROGERS:  Well, that specific data point is in
19 relation to the G2X and the Eclipse filters, which are the
20 filters we have at issue in this trial.
21        THE COURT:  So you're saying the data will show that
22 deaths in recipients of G2X and Eclipse filters is less than
23 one --
24        MR. ROGERS:  .01 percent.
25        THE COURT:  -- one one-hundredth of 1 percent?

1       MR. ROGERS: Yes, Your Honor, if that's the way the
2  math works out. I'm not real good at that.
3       THE COURT: That's what it is, one one-hundredth of
4  1 percent.
5       Do you disagree that the internal data from Bard will
6  show that?
7       MR. LOPEZ: That the internal -- the internal data
8  shows that there have been that many reports, but this is
9  telling the jury that the other 99.99 got hit with a clot and
10 the device worked.
11      We didn't know anything about those other 99.- --
12 this is about effectiveness. He already has in here the
13 reported rates of fractures, migrations in the 90 percentile.
14 This is telling the jury that 99.99 --
15      THE COURT: I understand your point.
16      What is your response to that, Mr. Rogers?
17      MR. ROGERS: Your Honor, we believe the evidence will
18 show that. I mean based on the Bard internal rates.
19      THE COURT: Well, but for this to be right, wouldn't
20 100 percent of the filters have to have trapped a clot for
21 them to be --
22      MR. ROGERS: I would say, Your Honor, close to
23 100 percent of the patients experienced no known pulmonary
24 embolism.
25      THE COURT: Well, but that doesn't say that the clot

1    worked to stop the pulmonary embolism in each of them; right?
2         MR. ROGERS:  That is correct, Your Honor.  I have no
3    data that I could present to the jury that would show that a
4    clot was stopped by every filter that was placed.
5         THE COURT:  And isn't that what 99.99 percent
6    effective means?  It's effective in stopping clots
7    99.99 percent of the time?
8         MR. ROGERS:  Your Honor, I would disagree, but I see
9    that's where you're going and if you want me to pull this
10   slide, I'll be glad to do it.
11        THE COURT:  I'll sustain the objection to that slide.
12        MR. LOPEZ:  The next one is 53.  And this is
13   Dr. Kinney.  Dr. Kinney, the risk/benefits claims.  They're
14   identifying Dr. Kinney as a plaintiffs' expert.  And, of
15   course, the rule has been that if you're going to use the
16   testimony of the other side's expert, you can't -- as
17   testimony, you can't identify that expert as the plaintiffs'
18   ex- -- plaintiffs' expert.
19        Dr. Kinney may or may not testify in this case.
20   Depends on time and his availability.  He has not testified
21   thus far so there is no testimony from him about that.
22        THE COURT:  Mr. Rogers.
23        MR. ROGERS:  Well, Your Honor, based on some of
24   Mr. Lopez's prior representations, I thought that Dr. Kinney
25   was going to appear as a witness at the trial.  If that's the