James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
jcondo@swlaw.com
kgallardo@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 5: RETRIEVABLE FILTER SALES VERSUS SNF FILTER SALES** |
| This Document Relates to:<br><br>Debra Tinlin, et al. v. C. R. Bard, Inc., et al.<br>CV-16-00263-PHX-DGC | (Assigned to the Honorable David G. Campbell)<br><br>**(Oral Argument Requested)** |

Bard submits this response in opposition to Plaintiff's Motion *in Limine* No. 5:[1]

## I. SNF Sales Data is Relevant to Alternative Design and the Risk-Utility Test.

Under Wisconsin design defect law, Plaintiff is required to prove "a reasonable alternative design." Wis. Stat. Ann. § 895.047(1)(a). Throughout the bellwether process, the plaintiffs argued that the SNF was an alternative design regardless of the filter generation at issue, including arguing that the SNF was safer than the G2, G2X, and Eclipse Filters. (*See, e.g.*, *Booker* Trial Tr. at 136:22 – 137:12; 153:4-14, attached as Exhibit A; *Hyde* Trial Tr. 528:2-4 (ruling that Dr. McMeeking "can testify based on his analysis of the testing and the design of the filters, the SNF is safer than the other G2 family of filters," attached as Exhibit B); *id.* at 812:3 – 813:6 (Dr. Muehrcke testifying similarly).) Indeed, Plaintiff continues to argue to this day the SNF is a safer alternative, even though it was removed from the market in 2016. And, presumably, Plaintiff will again introduce post-implant evidence to prove the SNF was an alternative design. (*See e.g.*, Ex. B, *Hyde* Trial Tr. at 165:13-19 (quoting an email from December 27, 2005).) Thus, the medical community's rejection of the SNF and preference for the Recovery Filter and other retrievable filters, including post-implant, is highly relevant to two critical issues the jury must resolve:

(1) Is a permanent-only filter a reasonable alternative design to a retrievable filter?

(2) Is the SNF safer under the risk-utility test than the Recovery Filter?

Bard is entitled to show that the diminished sales after Ms. Tinlin's implant prove that the medical community viewed the Recovery Filter as a revolutionary product that offered significant benefits over the SNF. In other words, if Plaintiff intends to compare risk information between the Recovery Filter and SNF, then Bard should be permitted to

---

[1] Plaintiff's motion is unclear, but it appears that she seeks to exclude either all SNF data from 2005 onwards, or data after Ms. Tinlin's implant on May 7, 2005. In any event, both pre- and post-implant SNF sales data is relevant and not prejudicial.

compare the utility information between the Recovery Filter and SNF.[2]

The comments to The Restatement (Third) of Torts Section 2, upon which Wisconsin Statute Section 895.047 is based, state that, among other factors, "the range of consumer choice among products [is a] factor[] that may be taken into account….[The risk of harm] may be offset by evidence that the proposed alternative design would reduce the efficiency and the utility of the product….Sufficient evidence must be presented so that reasonable persons could conclude that a reasonable alternative could have been practically adopted." Restatement (Third) of Torts: Prod. Liab. § 2 (1998) cmt. f. Here, even assuming Plaintiff is correct that the SNF was theoretically an alternative to retrievable filters, the post-implant evidence through 2016 is highly probative of the alternative's "efficiency and [] utility," and that it could not have been, and was in fact not, "practically adopted."

## II. SNF Sales Data, Like Other Post-Implant Evidence, is Relevant to Punitive Damages.

The mere fact that some of the sales data occurred post-implant does not make it "irrelevant," "misleading," or "prejudicial." First, the timeline is not misleading because it makes explicitly clear that the data is from 2003 through 2016, and the jury will know when the Recovery Filter was removed from the market.

Second, in *Hyde*, the Court held that post-implant evidence, such as adverse event rates and FDA communications were admissible to rebut the plaintiff's punitive damages claim. (Sept. 7, 2018, Order, Doc. 12533, at 3 ("Post-market [FDA] communications are also relevant to Plaintiff's punitive damages claim that Bard acted maliciously and with intentional disregard for the rights of others.") (citing Wis. Stat. § 895.043(3)); Sept. 4, 2018, *Hyde* Order, Doc. 12507, at 7 ("The SIR guidelines are relevant to Defendants'

---

[2] Although Bard disputes that consumer expectations and post-sale warnings are relevant, to the extent such evidence is permitted, the SNF sales data is relevant to show that there was a trend toward the use of retrievable filters before Plaintiff's implant date, that trend continued after that date, and that is consistent with the implanting physician's testimony that he wanted to place a retrievable filter because it gave him more options in the future. (Bard's Statement of Facts in Support of Summary Judgment, Doc. 15073 at ¶ 7.)

1  awareness of filter complication rates and the extent of harm posed by filter
2  complications, and can also inform the jury of risk levels found acceptable by
3  interventional radiologists – a relevant fact for deciding whether Defendants' acted with a
4  disregard for patient safety."); Ex. B, *Hyde* Trial Tr. at 2913:20 – 2914:6 (permitting
5  closing argument regarding Bard's overall internal adverse event rates).) Even though
6  Plaintiff again intends to introduce post-implant evidence of Bard's knowledge regarding
7  the SNF's performance compared to Bard's retrievable filters, she seeks to deprive Bard
8  from using evidence directly contrary to her claim. Plaintiff cannot have it both ways.

9        Third, "Plaintiffs have stated that their punitive damages case will be based in part
10 on Bard's failure to take post-sale remedial actions." (Sept. 7, 2018, *Hyde* Order, Doc.
11 12533 (*citing* Doc. 12400 at 17-19).) This includes Plaintiff's argument that the Recovery
12 Filter should have been removed from the market or recalled long after Plaintiff was
13 treated with her filter, even after subsequent generations of Bard's retrievable filters were
14 cleared. Bard's knowledge of physician demand and preference for its retrievable filters,
15 relative to the SNF, provides important context and is highly relevant to rebut Plaintiff's
16 claim. The declining SNF sales are highly probative evidence of the medical community's
17 demand for retrievable filters over permanent-only filters, and why keeping the Recovery
18 Filter on the market and never recalling it, despite the availability of the SNF, was
19 reasonable in response to physician demand.

20       Similar to the SIR Guidelines, Plaintiff's challenge to the sales data's "veracity will
21 go to [its] weight, not [its] admissibility." (Sept. 4, 2018, *Hyde* Order, Doc. 12507, at 8.)
22 Other than pointing out the SNF sales data is post-implant, Plaintiff offers no reason for
23 why its relevance is substantially outweighed by the risk of unfair prejudice. Plaintiff is
24 free to make the arguments she makes in her motion during trial. But, preventing Bard
25 from offering evidence to rebut Plaintiff's claims regarding whether the SNF was a
26 realistic alternative design is what would truly be prejudicial.

## CONCLUSION

28       For these reasons, Bard respectfully requests that the Court deny this Motion.

RESPECTFULLY SUBMITTED this 12th day of April, 2019.

        s/ Richard B. North, Jr.
        Richard B. North, Jr.
        Georgia Bar No. 545599
        Matthew B. Lerner
        Georgia Bar No. 446986
        NELSON MULLINS RILEY & SCARBOROUGH, LLP
        Atlantic Station
        201 17th Street, NW / Suite 1700
        Atlanta, GA 30363
        PH: (404) 322-6000
        FX: (404) 322-6050
        richard.north@nelsonmullins.com
        matthew.lerner@nelsonmullins.com

        James R. Condo (#005867)
        Kristine L. Gallardo (#033975)
        SNELL & WILMER L.L.P.
        One Arizona Center
        400 E. Van Buren
        Phoenix, AZ 85004-2204
        PH: (602) 382-6000
        FX: (602) 382-6070
        JCondo@swlaw.com
        KGallardo@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**