Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California  92660
949-812-5771

Mark S. O'Connor (011029) – mark.oconnor@beusgilbert.com
Beus & Gilbert PLLC
701 N. 44th Street
Phoenix, Arizona  85008
480-429-3019

*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation<br><br>This Document Relates to All Actions | No. MD-15-02641-PHX-DGC<br><br>**PLAINTIFFS' MOTION SEEKING ESTABLISHMENT OF COMMON BENEFIT FEE AND EXPENSE ACCOUNTS PURSUANT TO CASE MANAGEMENT ORDER NO. 6 AND MODIFICATION OF CASE MANAGEMENT ORDER NO. 6**<br><br>(Assigned to the Honorable David G. Campbell) |

Pursuant to Case Management Order No. 6 (ECF 372) ("CMO 6"), Plaintiffs respectfully request that the Court direct the establishment of two funds: a common benefit fee fund, and an expense fund, as well as appointment of an escrow agent over the funds and to perform other duties set out in CMO 6.  Plaintiffs also respectfully request modification of CMO 6 to remove the requirement that the escrow agent be a certified public accountant, and instead approve the appointment of Citibank, N.A. to serve in that capacity.  Finally, Plaintiffs respectfully request that CMO 6 be modified to increase the common benefit assessments to account for the increased scope of this litigation, the amount of work conducted to date, and the amount of work to be done.

1

2

    **A.**    <u>**Establishment of Common Benefit Accounts and Appointment of Escrow Agent.**</u>

3

CMO 6 states:

4

5

6

7

> At an appropriate time, Plaintiffs' Co-Lead counsel shall ask the Court to direct that two interest-bearing accounts be established to receive and disburse funds as provided in this Order… The first fund shall be designated the "Bard IVC Filters Fee Fund" and the second fund shall be designated the "Bard IVC Filters Expense Fund." These funds will be held subject to the direction of this Court.

8

ECF No. 372, § IV(A).  CMO 6 also provides that:

9

10

11

12

13

> [T]he Court will appoint a qualified certified public accountant (the "CPA") to serve as escrow agent over the Funds and to keep detailed records of all deposits and withdrawals and to prepare tax returns and other tax filings in connection with the Funds. Such subsequent Order shall specify the hourly rates to be charged by the CPA and for the CPA's assistants, who shall be utilized where appropriate to control costs. The CPA shall submit quarterly detailed bills to the Court and to Plaintiffs' Co-Lead Counsel.

14

*Id.*

15

16

17

18

19

20

21

    On October 5, 2018, this Court ordered the parties to meet in person for the purpose of engaging in good faith global settlement negotiations, to occur no later than November 20, 2018. *See* ECF No. 12856.  The parties have continued to meet and confer in compliance with the Court's Order. Counsel for Defendants have also indicated that settlement discussions have begun with certain parties, and a term sheet signed with two law firms representing large groups of plaintiffs. Additionally, certain mature cases in this MDL have been remanded from this Court to their transferor jurisdictions.

22

23

24

25

    Therefore, Plaintiffs believe that the appropriate time has come to ask the Court to enter an Order directing the establishment of a "Bard IVC Filters Fee Fund" and of  a "Bard IVC Filters Expense Fund," both of which will be held subject to the direction of this Court. See CMO 6, at § IV(A).

26

27

28

    Additionally, Plaintiffs ask that the Court approve, rather than a CPA, the appointment of Citibank, a bank that has experience serving in the capacity as an escrow agent, as escrow agent for the funds.  The proposed Escrow Agreement with Citibank is

1   attached hereto as Exhibit 1.[1]  Further, although CMO No. 6 contemplated a subsequent

2   order that specified hourly rates for the CPA, Plaintiffs propose that the escrow agent's

3   (Citibank's) fees will be as set forth in Schedule B to the Escrow Agreement to be entered

4   into with Citibank.  Such fees would be paid from the Bard IVC Filters Expense Fund and

5   considered a shared cost, as CMO No. 6 contemplates.  Plaintiffs' Co-Lead Counsel

6   would be responsible for arranging for the preparation of tax filings related to each

7   account.

8          **B.     <u>Modification of Common Benefit Assessment Percentages.</u>**

9          The PSC also seeks amendment of CMO 6 to provide for an increase in the

10  assessments for common benefit attorneys' fees and costs, from a total of eight percent

11  (six percent for fees and two percent for costs) to a total of fourteen percent (nine percent

12  for fees and five percent for costs). This increase is necessary because the scope, size,

13  duration, and cost of this litigation have outstripped the PSC's expectations at the time

14  that they requested the current assessment percentages of six and two percent.  The

15  requested percentages are still well within reason and within the amounts approved in

16  other MDL's. Importantly, the requested assessment amount remains a holdback, not an

17  order of disbursement.  Under CMO 6, eventual disbursements to those who performed

18  common benefit work will be made only with review and approval by the Court or under a

19  procedure ordered by the Court.  *See* CMO 6, at 12.

20         CMO 6 established policies, procedures, and guidelines for the "fair and equitable

21  sharing among plaintiffs, and their counsel, of the burden of services performed and

22  expenses incurred by attorneys acting for the common benefit of all plaintiffs in this

23  complex litigation."  CMO 6, at 1.  CMO 6 provided that, in exchange for receiving the

24  benefit of work performed for plaintiffs' common benefit, all plaintiffs and attorneys who

25  reach settlements or recover monetary damages or other monetary relief are subject to an

26  assessment of their gross monetary recovery.  *Id.* at 9-10.  CMO 6 established assessment

27  _____

28  [1] Counsel for Bard have reviewed the draft escrow agreement and agree to the procedures
set out within it, but will oppose the requested assessment percentage increases described
below.

3

1   amounts of 6 percent for attorneys' fees and 2 percent for expenses.  *Id.* at 10.

2          At the time that Plaintiffs requested that the Court designate these percentages, the

3   PSC expected that this MDL would be smaller and of a shorter duration than it has turned

4   out to be. At the time this MDL had formed, Bard had been litigating filter cases for years.

5   Although the PSC was fully aware of the need for substantial further discovery and

6   eventual trials, given the record that had already been established prior to the MDL's

7   establishment, trials stretching into 2019 seemed unlikely.  Further, while the MDL now

8   includes (as March 15, 2019) 6,753 active cases, in 2015, when the PSC requested the

9   entry of CMO 6, they estimated that the MDL would comprise approximately 1,000 cases.

10  *See* ECF No. 291, at 5. Those expectations were reasonable, and drove the choice of

11  conservative assessment percentages.[2] At the same time, the Common Benefit

12  Participation Agreement, which the Court approved at the time that it entered CMO 6,

13  anticipated a potential increase in the assessment amount.  *See* ECF No. 372, Exh. A, at 3

14  (providing for eight percent assessment "unless it should become apparent that fees in

15  excess of 6% or costs in excess of 2% are required to reasonably and adequately advance

16  the litigation").

17         As the MDL grew in size, and as the parties prepared for multiple bellwether trials,

18  the number of hours and dollars expended on common benefit work has come to dwarf the

19  PSC's initial estimates.  Consistent with CMO 6, participating counsel have submitted

20  their contemporaneously recorded time to Co-Lead Counsel and to a special master

---

22  [2] *In re Nuvaring Products Liab. Litig.*, MDL No. 1908, ECF No. 1129 (E.D. Mo.) (11
    percent for fees, 4.5 percent for costs); *In re: Depuy Orthopaedics, Inc. Pinnacle Hip*
23  *Implant Prods. Liab. Litig.*, MDL No. 22-44 (N.D. Tex.), ECF No. 889 (seven percent for
    fees; three percent for costs); *In re Bair Hugger Forced Air Warming Products Liab.*
24  *Litig.*, MDL 2666, ECF No. 47 (D. Minn.) (10-16 percent for fees; two percent for costs);
    *See, e.g., In Re: Kugel Mesh Hernia Patch Products Liability Litigation*, MDL No. 1842
25  (D.R.I.), ECF No. 2382 (in case involving Bard, eight percent for fees and four percent for
    costs) (attached as Exhibit A to ECF No. 271); *In re Genetically Modified Rice Litig.*,
26  MDL No. 1811, ECF No. 2574 (6-8 percent for fees; 3 percent for costs); *see also In re*
    *Guidant Corp. Implantable Defibrillators Products Liability Litigation*, MDL No. 1708,
27  2008 WL 682174, at *16 (D. Minn. Mar. 7, 2008) (14.375% of global settlement amount
28  as a common benefit fee award).

4

1    retained to monitor timekeeping in this litigation. Those records reflect tens of thousands

2    of hours devoted to this litigation, and the PSC has contributed more than $6 million to

3    fund the litigation.  This massive collective undertaking  has been to the benefit of the

4    thousands of plaintiffs who have filed cases in this MDL, putting them in a position to

5    resolve their cases.  It has included the review of millions of pages of Bard's documents,

6    dozens of depositions, including of numerous experts on both sides, lengthy motion

7    practice – including a dispositive motion based on preemption, which was unanticipated

8    due to the scarcity of such motions related to 510(k)-cleared devices, resulting in

9    additional expert fees and expenses as well as effort lasting the better part of a year – and

10   the full trial of three bellwether cases and dispositive motions for four plaintiffs, not

11   including the round of dispositive motions for the *Tinlin* trial. The number of hours and

12   dollars will only grow, and likely substantially, because the parties will be preparing for

13   and conducting the upcoming *Tinlin* trial, and also expend significant amounts of time and

14   money related to efforts to reach and then implement settlement.  At the same time, it

15   appears reasonably likely that this litigation will continue after remand after the *Tinlin*

16   trial; the PSC will continue to fund cases post-remand using common benefit funds and

17   assessments, and assist with trials.  The parties are also litigating their respective appeals

18   stemming from the bellwether trials.

19          It is entirely common for MDL courts to approve increases in assessment

20   percentages as the litigation takes shape and the full scope of work required to press it

21   forward and prepare for trial reveals itself.  It is impossible to predict with any certainty

22   litigation costs, which, among other factors, are driven by the defendant's strategy and

23   tactics, and by what discovery reveals.  In light of those practical realities, courts

24   commonly approve comparable or greater increases in initial assessment percentages.  *See*

25   *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545, ECF No.

26   2894 (N.D. Ill.) (increasing total assessment from ten percent to 19.5 percent); *In re*

27   *Benicar (Olmesartan) Prods. Liab. Litig.*, MDL No. 2606, ECF No. 1215 (D.N.J.)

28   (increasing total assessment from 8 percent to 9.5 percent); *In re Guidant*, 2008 WL

682174, at *2, *15-16 (approving master settlement overriding prior holdback amounts). Even with the increase requested, the total assessment percentage of fourteen percent still falls within amounts approved in MDL's of comparable scale.  *See* note 1, above.

**C.    Conclusion**

In sum, Plaintiffs request that the Court enter an order:

1.    Appointing Citibank to serve as escrow agent over the Funds.

2.    Directing the escrow agent to keep detailed records of all deposits and withdrawals, to prepare tax returns and other tax filings in connection with the Funds, and specifying the hourly rates to be charged by the escrow (to be used where appropriate to control costs).

3.    Ordering the escrow agent to submit quarterly detailed bills to the Court and to Plaintiffs' Co-Lead Counsel.

4.    Allowing for the escrow agent's bills, as set out in Exhibit B to the Escrow Agreement, to be paid from the Bard IVC Filters Common Benefit Expense Fund as a shared cost.

5.    Amending CMO No. 6 so that, in Section IV(A), references to "the CPA" are replaced by the term "Escrow Agent."

6.    Increasing the assessment percentages set out in Section IV(B)(3) to nine percent for attorneys' fees and five percent for expenses.

The accompanying proposed Order reflects the requested relief described above.

RESPECTFULLY SUBMITTED this 12th day of April 2019.

BEUS GILBERT PLLC

By:/s/ Mark S. O'Connor
    Mark S. O'Connor
    701 N. 44th Street
    Phoenix, Arizona  85008

LOPEZ McHUGH LLP
    Ramon Rossi Lopez (CA Bar No. 86361)
    (admitted *pro hac vice*)
    100 Bayview Circle, Suite 5600
    Newport Beach, California 92660

*Co-Lead/Liaison Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of April 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.


*/s/ Jessica Gallentine*