# Exhibit B

```
 1                UNITED STATES DISTRICT COURT
 2                    DISTRICT OF ARIZONA
 3     *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
 4
       In Re Bard IVC Filters Products
 5     Liability Litigation
 6                        No. MD-15-02641-PHX-DGC
 7
 8
       *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
 9
10       DO NOT DISCLOSE - SUBJECT TO FURTHER
                 CONFIDENTIALITY REVIEW
11
         VIDEOTAPED DEPOSITION OF JOSHUA RIEBE, MD
12
                TAKEN AT: Radisson Hotel
13            LOCATED AT: 2040 Airport Drive
                         Green Bay, WI
14
                        April 4, 2017
15                 10:09 a.m. to 2:15 p.m.
16            REPORTED BY ANITA K. FOSS
              REGISTERED PROFESSIONAL REPORTER
17
18
19
       *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
20
21
22
23
24
25
```

1    than you personally?

2        A.   I don't have an opinion.

3             MS. DAVIS:  Object to the form.

4    BY MR. GOLDENBERG:

5        Q.   All right.  If the manufacturer knew

6    about serious adverse events, would you want to

7    make sure that you understood what those would be?

8        A.   Yes.

9        Q.   Okay.  And why is that?

10       A.   I'm using a tool that they're giving me,

11   and I can't possibly know all the problems in

12   manufacturing that tool and all the complications

13   they've had, where they distribute that throughout

14   the world.  I would expect that they would disclose

15   that to me.

16       Q.   You personally, for example, you're not

17   doing any testing on these devices; correct?

18       A.   Correct.

19       Q.   You would expect the manufacturer would

20   do that, true?

21       A.   Yes.

22       Q.   You're not keeping track of adverse

23   events that occur with this device; correct?

24       A.   I'm not sure that that's true.

25       Q.   Well, nobody's reporting adverse events

```
 1   directly to you; is that fair?
 2       A.   Correct.
 3       Q.   Okay.  When is the first time you ever
 4   put in a retrievable filter?
 5       A.   I don't remember.
 6       Q.   Okay.  What's the difference between a
 7   permanent filter and a retrievable filter?
 8       A.   A permanent filter is placed and is
 9   expected to stay in for the life of that patient.
10   A retrievable filter has the option to be removed
11   if the patient and the clinicians decide that they
12   want that removed.
13       Q.   Do you know who purchases the filters --
14   I'm sorry, I should back up.  I apologize.  What
15   hospital do you typically work at?  What hospital
16   do you have privileges at here?
17       A.   St. Vincent's in Green Bay, St. Mary's in
18   Green Bay, Prevea Clinic in Green Bay, St. Nicholas
19   in Sheboygan, Bay Area Medical Center in Marinette,
20   St. Claire's in Oconto Falls.
21       Q.   So I assume these are all places that you
22   go to on a regular basis?
23       A.   Yes.
24       Q.   Is that also -- was that also true back
25   in 2005?
```

Do Not Disclose - Subject to Further Confidentiality Review

1              MS. DAVIS:  Object to the form.
2              THE WITNESS:  Can you repeat that?  I was
3    distracted.
4    BY MR. GOLDENBERG:
5         Q.   Sure.  That's okay.  Would you agree that
6    you need complete and accurate information
7    regarding a filter from the manufacturer to help
8    conduct a risk-benefit analysis?
9         A.   Yes.
10             MS. DAVIS:  Object to the form.
11   BY MR. GOLDENBERG:
12        Q.   And if there are risks that are not
13   disclosed or the true risks are not disclosed, then
14   you cannot conduct a -- conduct a proper
15   risk-benefit analysis for the patient; right?
16        A.   Yes.
17             MS. DAVIS:  Object to the form.
18   BY MR. GOLDENBERG:
19        Q.   Is part of that analysis determining
20   whether a patient should receive a permanent or
21   retrievable filter?
22        A.   Can you be more specific?
23        Q.   Sure.  When you're evaluating a specific
24   patient and implanting a specific device in a
25   patient, would that -- would part of that analysis

Do Not Disclose - Subject to Further Confidentiality Review

1   be whether a patient should receive a permanent or
2   a temporary filter?
3        A.   Yes.
4        Q.   Okay.  And what do you consider in making
5   that decision, at least as of 2005, if you
6   remember.
7        A.   In making the choice between permanent or
8   temporary filter --
9        Q.   Yes.
10       A.   -- there are clinical aspects as part of
11  the decision, and there are also tool -- call it
12  tool elements that you would want to know about.
13       Q.   Imagine that there's going to be a jury
14  hearing this that have no idea what this is.  So
15  when you say "tool aspects," what do you mean by
16  that?
17       A.   The specific device you're implanting,
18  you would want to know about that device --
19       Q.   Sure.
20       A.   -- when you're deciding if that's going
21  to be in for the life of the patient or potentially
22  temporary.
23       Q.   Okay.  When you're looking at the
24  potential risk to a patient, would you want to know
25  if some devices are reported to have substantially

```
 1   higher failure rates than other devices?
 2          MS. DAVIS:  Object to the form.
 3          THE WITNESS:  Yes.
 4   BY MR. GOLDENBERG:
 5      Q.   Would you want to know if the rates of
 6   certain adverse events are substantially higher
 7   from one filter versus another?
 8      A.   Yes.
 9          MS. DAVIS:  Object to the form.
10   BY MR. GOLDENBERG:
11      Q.   Would you want to know if the company had
12   concerns about the efficacy of its own filter?
13      A.   Yes.
14          MS. DAVIS:  Object to the form.
15   BY MR. GOLDENBERG:
16      Q.   Would you want to know if a newer, safe
17   filter was available for use?
18      A.   Yes.
19      Q.   And by the way, if there are objections,
20   and there inevitably will be, we just need to make
21   sure we don't talk over each other.  So she's
22   allowed to object, but you can continue to give
23   your answer, okay?
24      A.   Okay.
25      Q.   All right.  Would you want to know if
```

 1   Bard itself internally deemed the Recovery filter
 2   to have unacceptable risks?
 3        A.   Yes.
 4             MS. DAVIS:  Object to the form.
 5   BY MR. GOLDENBERG:
 6        Q.   Would you want to know if Bard, even
 7   today, does not understand the root cause of why
 8   its filters are migrating?
 9             MS. DAVIS:  Object to the form.
10             THE WITNESS:  Yes.
11   BY MR. GOLDENBERG:
12        Q.   Would you want to know if they, even
13   today, did not understand the root cause of why
14   their filters are perforating?
15        A.   Yes.
16             MS. DAVIS:  Object to the form.
17   BY MR. GOLDENBERG:
18        Q.   Or tilting?
19        A.   Yes.
20             MS. DAVIS:  Same objection.
21   BY MR. GOLDENBERG:
22        Q.   Or fracturing?
23        A.   Yes.
24             MS. DAVIS:  Same objection.
25   BY MR. GOLDENBERG: