James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2202
Telephone: (602) 382.6000
Facsimile: (602) 382.6070
jcondo@swlaw.com
kgallardo@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Telephone: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants
C. R. Bard, Inc. and
Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC |
| | **DEFENDANTS' TRIAL BRIEF ON THIRD PARTY FAULT** |
| This Document Relates to: | (Assigned to the Honorable David G. Campbell) |
| Debra Tinlin, et al. v. C. R. Bard, Inc., et al. CV-16-00263-PHX-DGC | |

Bard submits this Trial Brief to address the legal issues of apportionment of fault and alternative causal possibilities concerning the negligent medical treatment that Plaintiff Debra Tinlin received from Dr. Joshua Riebe and Dr. Robert Haller.

## I. Background

On May 7, 2005, Dr. Joshua Riebe placed a Bard Recovery® Filter in Mrs. Tinlin. Plaintiffs' expert, Dr. Hurst, opines that the very next day the filter had already experienced tilt of 18 degrees, caudal migration of 9 mm, and multiple penetrations of struts through Mrs. Tinlin's IVC (including five Grade 3 penetrations) based on his review of the CT scan from May 8, 2005. (*See* Hurst Rep. at 3 (Doc. 16895-1) (filed under seal).) Bard submits that Dr. Riebe's decision to implant the Recovery Filter in Mrs. Tinlin after measuring her IVC diameter at greater than 28 mm constituted medical negligence that was a substantial factor in producing her alleged injuries. Bard has offered Dr. Morris to opine that Dr. Riebe's decision fell below the standard of care. Dr. Morris specifically opines that:

> The inferior vena cava diameter, as measured by Dr. Riebe, and as my independent calculations confirmed, was greater than 28 mm. The Bard Recovery IVCF should not be placed into an inferior vena cava that measures greater than 28 mm in diameter. The Bard Recovery IVCF can migrate either cranially or caudally, if the inferior vena cava is larger than 28 mm in diameter. In actuality, this IVCF moved caudally a distance of less than 2 cm, a distance which is below the standard definition of migration. In addition, placing an IVCF into a large inferior vena cava may predispose the IVCF to tilt, which this IVCF also exhibited. In the worst-case scenario, an IVCF can migrate into the heart, if placed into an inferior vena cava that is larger than the indicated size. Dr. Riebe fell beneath the standard of care when he placed this ICF into an inferior vena cava that was larger than 28 mm in diameter.

(Morris Rep. at 15-16 (Doc. 15081-1) (filed under seal).)

Indeed, it is undisputed that the Instructions for Use ("IFU") that accompanied the Recovery Filter that Mrs. Tinlin received warned that the filter "***must not be***" used in patients with IVCs exceeding 28 mm. (Recovery IFU (Doc. 16893-1).) The IFU explicitly included the following black box warning:

**CAUTION: If the IVC diameter exceeds 28 mm, the filter must not be inserted into the IVC.**

(*Id.*) The IFU also clearly warned elsewhere that "The Recovery Filter should not be

implanted in: . . . Patients with an IVC diameter larger than 28 mm," and "The Recovery Filter is intended to be used in the inferior vena cava (IVC) with a diameter less than or equal to 28 mm." (*Id.*) The IFU further warned that "Movement or migration of the filter is a known complication of vena cava filters. *This may be caused by placement in IVCs with diameters exceeding the appropriate labeled dimensions specified in the IFU.*" (*Id.* (emphasis added).) Yet Dr. Riebe did not routinely read IFUs from medical device manufacturers, and he does not recall ever seeing the IFU for the Recovery Filter. (*See* Defs.' Sep. Stmt. of Facts in Supp. of Mot. Summ. J., ¶¶ 8-9 (Doc. 15073).)

All of the experts in this case agree that implanting an IVC filter in a patient with an IVC diameter greater than 28 mm can lead to tilt, migration, fracture, and penetration. For example, Plaintiffs' engineering expert, Dr. McMeeking, agreed "that tilt and perforation can occur more readily if the Recovery filter is implanted in a patient with an inferior vena cava of greater diameter than the device is indicated for," and "that, if Mrs. Tinlin's inferior vena cava was larger than the Recovery filter was indicated for, that that could have contributed to what [he] termed the failures of that filter." (Ex. A, McMeeking Dep. at 32:5-10; 37:11-20.) Likewise, Plaintiffs' medical expert, Dr. Muehrcke, agreed that if a Bard retrievable filter is placed in a patient with an IVC greater than 28 mm that that could cause the filter to tilt, migrate (caudally or cranially), fracture, and penetrate the IVC. (*See* Ex. B, Muehrcke Dep. at 21:16 to 23:12.) Dr. Muehrcke further agreed that, if the filter was placed in a patient whose IVC measures greater than 28 mm, as in Mrs. Tinlin's case, and the filter later fractures, migrates, tilts, or perforates the IVC, as in Mrs. Tinlin's case, you cannot rule out that the fracture, migration, perforation, or tilt occurred because of the placement into a large IVC. (*See id.* at 23:20 to 24:13.)

Additionally, Mrs. Tinlin's Recovery Filter ultimately fractured, with multiple struts moving to her heart and pulmonary arteries, and she subsequently underwent several surgical procedures. The fractured struts found in her heart, however, were seen in medical imaging as early as April 2008, **more than five years** before a CT scan in June 2013 showed one of the filter struts perforating her right ventricle with an associated

pericardial effusion. (*See* Ex. C, Sobieszczyk Rep. at 6.) These struts were not recognized or reported by her radiologists. Although the CT scan from April 15, 2008 clearly shows evidence of filter fragment embolization to the right ventricle, Dr. Robert Haller, the radiologist, failed to identify the fractured struts. Bard submits that this failure constituted medical negligence that was a substantial factor in producing Plaintiffs' alleged injuries in this case: the pericardial effusion, resulting open heart surgery, and post-surgical complications.

Both Dr. Owens, Bard's medical expert, and Dr. Hurst, Plaintiffs' medical expert, agree that Dr. Haller breached the standard of care by failing to identify the asymptomatic fractured struts on April 15, 2008 that were seen in Mrs. Tinlin's heart. (*See* Owens Rep. at 1-2 (Doc. 16892-1) (filed under seal); Hurst Dep. Tr. at 147:2-7 (Doc. 16892-2) (filed under seal) ("I would -- yes, this is a deviation from the standard of care. You have to -- you have to identify this on the CT scan.").) Dr. Haller's negligence prevented Mrs. Tinlin's treating physicians from having information to evaluate her medical condition before she sustained her alleged injuries in this case. (*See* Owens Rep. at 2 (Doc. 16982-1) (filed under seal); Hurst Dep. Tr. at 147:8 to 148:6 (Doc. 16892-2) (filed under seal).) Bard has also submitted an expert report of Dr. Piotr Sobieszczyk that addresses the causal connection between Dr. Haller's negligence and Plaintiffs' alleged injury. (*See* Ex. C, Sobieszczyk Rep. at 6.)

## II.     Alternative Causal Possibilities

Under Wisconsin law, Bard has the right to suggest potential alternative causes of Plaintiffs' injuries to "weaken" those claims of injuries even "with medical proof couched in terms of possibilities." *Felde v. Kohnke*, 184 N.W.2d 433, 441 (Wis. 1971); *Westrich v. Mem'l Health Ctr., Inc.*, 831 N.W.2d 824 (Wis. Ct. App. 2013) (finding reversible error in exclusion of evidence establishing a "potential alternative cause" for plaintiff's injury where causation was a "key issue"). As the Supreme Court of Wisconsin made clear:

> The burden of proof as to injuries is upon the plaintiff, and h[er] medical testimony in meeting such burden cannot be based on mere possibilities. However, a defendant in resisting such claim of injuries is not required to

- 4 -

confine himself to reasonable medical probabilities. . . . We see no inconsistency in requiring that one with the burden of proof produce medical testimony which is based upon reasonable medical probabilities and at the same time in permitting the side which does not have the burden of proof to attempt to upset such proof by showing other relevant possibilities.

*Hernke v. N. Ins. Co. of New York*, 122 N.W.2d 395, 399–400 (Wis. 1963); *accord Woody v. Mercy Medical Center of Oshkosh*, No. 07CV678, 2010 WL 6620187 (Wis. Cir. Ct. Oct. 25, 2010) (denying the plaintiff's motions *in limine* and holding that the defense has the "right to suggest alternative casual possibilities" even with "possibility testimony . . . offered in direct testimony by defense experts").[1]

Under Wisconsin law, "[a] doctor who fails to conform to th[e] standard [of care] is negligent." Wis. JI-Civil 1023 (Medical Negligence). In the medical negligence context, "[a] person's negligence is a cause of a plaintiff's (injury) (condition) if the negligence was a substantial factor in producing the present condition of the plaintiff's health." *Id.* Bard has offered expert opinion evidence that both Dr. Riebe and Dr. Haller fell below the standard of care, and were therefore negligent, which Plaintiffs have not challenged. In particular, Bard submits that Dr. Riebe's decision to implant the Recovery Filter in Mrs. Tinlin after measuring her IVC diameter at greater than 28 mm constituted medical negligence that was a substantial factor in producing her alleged injuries. (*See* Morris Rep. at 15-16 (Doc. 15081-1) (filed under seal).) Had Dr. Riebe followed the IFU and the standard of care, Mrs. Tinlin would never have received the filter, nor been injured by it as she alleges. Put simply, this lawsuit would not exist.

Likewise, Bard submits that Dr. Haller's failure to later identify the fractured struts before Mrs. Tinlin sustained her alleged injuries in this case—the pericardial effusion,

---

[1] *See also Roy v. St. Lukes Med. Ctr.*, 741 N.W.2d 256, 264 (Wis. Ct. App. 2007) ("[A] defense expert is allowed to produce evidence of possibilities."); *Van Vreede v. Mich*, 513 N.W.2d 708 (Wis. Ct. App. 1994) (defendants permitted to "weaken the claim for injuries with medical proof couched in terms of possibilities"); *Noel v. Wisconsin Health Care Liab. Ins. Plan*, 458 N.W.2d 388 (Wis. Ct. App. 1990) (direct testimony of defendant's experts based on "medical possibilities" proper); *Baumgarten v City View Nursing Home*, No. 02CV2768, 2005 WL 6073784 (Wis. Cir. Ct. Feb. 21, 2005) ("[T]he defense argues that a defendant, because the burden of proving the claim lies with the plaintiff, may properly offer competent medical testimony as to alternative possibilities rather [than] being required to demonstrate medical probability. That is a correct statement of law.").

resulting open heart surgery, and post-surgical complications—constituted medical negligence that was also a substantial factor in producing Plaintiffs' alleged injuries. (*See* Ex. C, Sobieszczyk Rep. at 6; Owens Rep. at 1-2 (Doc. 16892-1) (filed under seal); Hurst Dep. Tr. at 147:2 to 148:6 (Doc. 16892-2) (filed under seal).) Dr. Haller's negligence prevented Mrs. Tinlin's treating physicians from having information to evaluate and treat her medical condition before she sustained her alleged injuries in this case. Therefore, Bard has the right to "weaken" Plaintiffs' claim for injuries by having the jury consider Dr. Riebe's and Dr. Haller's medical negligence as potential alternative causes of those injuries when determining causation in this case, even "with medical proof couched in terms of possibilities." *Felde*, 184 N.W.2d at 441.

### III. Apportionment of Fault

The jury ***must*** have the opportunity to consider the negligence of all potential tort-feasors who contributed to the injury, including nonparties like Dr. Riebe and Dr. Haller. *See Connar v. West Shore Equipment of Milwaukee*, 227 N.W.2d 660, 662 (Wis. 1975) ("It is established without doubt that, when apportioning negligence, a jury must have the opportunity to consider the negligence of all parties to the transaction, whether or not they be parties to the lawsuit and whether or not they can be liable to the plaintiff or to the other tort-feasors either by operation of law or because of a prior release."); *see also Johnson v. Heintz*, 243 N.W.2d 815, 826-827 (Wis. 1976) ("[A] special verdict embracing all of the actors [including nonparties] could have been requested.");[2] *Heldt v. Nicholson*

---

[2] Plaintiffs' misinterpretation of certain language from *Johnson v. Heintz* in the proposed pretrial order does not affect apportionment in this case. For one, the actions of Bard, Dr. Riebe, and Dr. Haller did not "result[] in distinguishable separate injuries" to Mrs. Tinlin. *Johnson*, 243 N.W.2d at 826. Rather, as Bard explains in Section VII, *infra*, the very injuries for which Plaintiffs brought this action against Bard—the pericardial effusion, resulting open heart surgery, and post-surgical complications—are the very same injuries that resulted from Dr. Riebe's negligent decision to place the filter in the first place, and Dr. Haller's negligent failure to identify fractured struts ***more than five years before*** the pericardial effusion occurred. Each of these alleged injuries first occurred *after* Dr. Riebe's and Dr. Haller's medical negligence. Prior to this time Mrs. Tinlin was asymptomatic. Additionally, the *Johnson* court ultimately found that apportionment was appropriate in that case even though it involved successive tortfeasors. *Id.* ("A common principle of tort law is the desirability of limiting a negligent defendant's liability to that part of the harm which he has in fact caused, as distinguished from the harm arising from other causes. . . . When the harm may be attributed to the concurring breaches of duties of

- 6 -

*Mfg. Co.*, 240 N.W.2d 154, 157 (Wis. 1976) ("[I]t would have been error for the judge to have failed to include [nonparty] in the negligence portion of the verdict" where the record was "replete" with evidence of the nonparty's negligence); *Payne v. Bilco Co.*, 195 N.W.2d 641, 645-646 (Wis. 1972) (holding that it "would necessarily have been prejudicial" to the defendants to exclude the nonparty from the special verdict because "it was necessary that all the alleged tortfeasors be included in the special verdict for comparison purposes."); *Martz v. Trecker*, 535 N.W.2d 57, 61 (Wis. Ct. App. 1995) (finding nonparty "properly included" in the special verdict because "it gave the jury the opportunity to consider the negligence of all parties for comparison purposes").

The *Connar* standard is "applicable to any tort action," including cases involving medical negligence so long as expert testimony is provided on breach of the standard of care. *See Zintek v. Perchik*, 471 N.W.2d 522, 528 (Wis. Ct. App. 1991) ("[A]s applied in this case, *Connar* required that an expert give an opinion to a reasonable degree of medical certainty that [the nonparty physicians] were negligent before any question concerning their alleged negligence could be included on the special verdict."), *overruled on other grounds by Steinberg v. Jensen*, 534 N.W.2d 361 (Wis. 1995); Wis. JI-Civil 1023 ("A doctor who fails to conform to th[e] standard [of care] is negligent.").

As described above, Bard has offered expert opinion evidence that both Dr. Riebe and Dr. Haller fell below the standard of care, and were therefore negligent. (*See* Morris Rep. at 15-16 (Doc. 15081-1) (filed under seal); Owens Rep. at 1-2 (Doc. 16892-1) (filed under seal).) Plaintiffs' own expert, Dr. Hurst, agrees that Dr. Haller breached the standard of care. (Hurst Dep. Tr. at 147:2-7 (Doc. 16892-2) (filed under seal) ("I would -- yes, this is a deviation from the standard of care. You have to -- you have to identify this on the CT scan.").) Plaintiffs have not challenged these opinions. Therefore, the jury "must have the opportunity to consider the negligence" of Dr. Riebe and Dr. Haller "when apportioning negligence" in this case. *Connar*, 227 N.W.2d at 662.

---

two or more actors, a similar rationale has stimulated the development of our comparative negligence special verdict system to facilitate financial apportionment of the resulting expense on the basis of degree of culpability.").

### IV. Submitting Apportionment to Jury Requires Negligence Not Causation

"[T]he decision whether the special verdict shall inquire as to the alleged negligence of a non-party raises a question of law, namely whether evidence exists which warrants submission of the matter to the jury." *Zintek*, 471 N.W.2d at 527. "In *CONNAR*, the supreme court described the quantum of evidence which **mandates** the inclusion of non-parties on the special verdict:

> *Only one question* must be affirmatively answered by the trial judge before submitting a negligence question to the jury: Is there evidence of conduct which, if believed by the jury, would constitute *negligence* on the part of the person or other legal entity inquired about.

*Id.* at 528 (quoting *Connar*, 227 N.W.2d at 662) (emphasis added); *accord Renschler Co. v. MSA Prof'l Servs., Inc.*, 833 N.W.2d 873 (Wis. Ct. App. 2013) (holding inclusion of nonparty on special verdict form was proper based on this principle).

Critically, "[i]n Wisconsin, negligence and causation are separate inquiries." Wis. JI-Civil 1001, Cmt. (citing *Fondell v. Lucky Stores, Inc.*, 270 N.W.28 205, 228 (Wis. 1978) ("Cause and negligence are separable legal concepts predicated on distinct legal tests.")); Wis. JI-Civil 1005 (Negligence: Defined); Wis. JI-Civil 1500 (Cause). Therefore, *Connar* does **not** require the Court to consider whether there is evidence of causation "before submitting a negligence question to the jury" and "mandat[ing] the inclusion of non-parties on the special verdict." *Zintek*, 471 N.W.2d at 528. Rather, the "only" question the Court must affirmatively answer is whether there is evidence of "negligence." *Id.*; *Cf. Hoida, Inc. v. M & I Midstate Bank*, 717 N.W.2d 17, 38 (Wis. 2006) (citations omitted) ("Negligence is defined in Wisconsin as follows: A person is negligent when [he/she] fails to exercise ordinary care. Ordinary care is the care which a reasonable person would use in similar circumstances. A person is not using ordinary care and is negligent, if the person, without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.").

While the *Connar* standard is "applicable to any tort action," in the medical

- 8 -

negligence context, *Connar* requires "that an expert give an opinion to a reasonable degree of medical certainty that [nonparty physicians] were *negligent* before any question concerning their alleged negligence [can] be included on the special verdict." *Id.* (emphasis added).[3] "A doctor who fails to conform to th[e] standard [of care] is negligent." Wis. JI-Civil 1023. Thus, to submit the question of Dr. Riebe's and Dr. Haller's medical negligence to the jury for apportionment, Bard need only present expert evidence that they fell below the standard of care. There is no dispute that Bard has offered expert opinion evidence "to a reasonable degree of medical certainty that [both Dr. Riebe and Dr. Haller] were negligent." *Zintek*, 471 N.W.2d at 528; Wis. JI-Civil 1023. Thus, there is "evidence of conduct which, if believed by the jury, would constitute negligence on the part of the person or other legal entity inquired about." *Connar*, 227 N.W.2d at 662. Again, this is the "only" question that this Court must affirmatively answer "before submitting a negligence question to the jury." *Id.* Because Bard has satisfied its initial burden, *Connar* "mandates the inclusion of non-parties [Dr. Riebe and Dr. Haller] on the special verdict." *Zintek*, 471 N.W.2d at 528.

### V. Legal Causation is Broad, and is a Question of Fact for the Jury

Whether Dr. Riebe's and Dr. Haller's medical negligence was a substantial factor in producing Plaintiffs' alleged injuries is a question of fact for the jury to decide. Under Wisconsin law, "[t]he test of cause-in-fact is whether the negligence was a 'substantial factor' in producing the injury." *Morgan v. Pennsylvania Gen. Ins. Co.*, 275 N.W.2d 660, 666 (Wis. 1979) (citations omitted). The same is true in the medical negligence context: "[a] doctor who fails to conform to th[e] standard [of care] is negligent. . . . A person's negligence is a cause of a plaintiff's (injury) (condition) if the negligence was a substantial factor in producing the present condition of the plaintiff's health." Wis. JI-

---

[3] This is because "medical negligence cannot be established without expert testimony." *Id.* (citations omitted) ("Without expert testimony, the jury in a professional negligence case has no standard which enables it to determine whether a defendant failed to exercise the degree of care and skill required of the defendant."); Wis. JI-Civil 1023 ("Th[e] standard [of care] is within the special knowledge of experts in the field of medicine and can only be established by the testimony of experts.")

Civil 1023 (Medical Negligence). "The phrase 'substantial factor' denotes that the [] conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense." *Clark v. Leisure Vehicles, Inc.*, 292 N.W.2d 630, 635 (Wis. 1980).

"Under this test, there can be more than one substantial factor contributing to the same result and thus more than one cause-in-fact." *Morgan*, 275 N.W.2d at 666; *Stewart v. Wulf*, 271 N.W.2d 79, 83 (Wis. 1978) ("[A]n injury may be produced by several substantial factors, acting in sequence or simultaneously, and responsibility need not be restricted to the last and most immediate factor."). "It need not be the sole factor or primary factor" in producing the injury, "only a 'substantial factor'" *Clark*, 292 N.W.2d at 635. "The contribution of these factors under [Wisconsin's] comparative negligence doctrine are all considered and determined in terms of percentages of total cause." *Blashaski v. Classified Risk Ins. Corp.*, 179 N.W.2d 924, 927 (Wis. 1970) ("Under the substantial-factor doctrine of causation, there is a tendency by this court to treat acts which might constitute proximate cause in a strict sense or intervening cause or superseding cause or a 'static condition' as substantial factors in the chain of causation. Consequently, there may be several substantial factors contributing to the same result."); *accord Sampson v. Laskin*, 224 N.W.2d 594, 597-98 (Wis. 1975).

Furthermore, "[w]hether negligence was a cause-in-fact of an injury is a factual question for the jury if reasonable men could differ on the issue, and the question only becomes one of law for judicial decision if reasonable men could not disagree." *Morgan*, 275 N.W.2d at 666; *Stewart*, 271 N.W.2d at 83; *Fandrey ex rel. Connell v. Am. Family Mut. Ins. Co.*, 680 N.W.2d 345, 354 (Wis. 2004) (holding that "the 'substantial factor' test used to establish cause-in-fact . . . is a jury issue."); *see also Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311, 1322 n. 23 (7th Cir. 1983) (citing *Hass v. Chicago & North Western Ry. Co.*, 179 N.W.2d 885 (Wis. 1970)) (applying Wisconsin law, "Cause-in-fact is a factual question for the jury."); *Tutkowski v. Rudesill*, 902 N.W.2d 809 (Wis. Ct. App. 2017) ("Wisconsin's common law formulation of the substantial factor test is broad and

traditionally reserved to a jury determination."), *review dismissed*, 905 N.W.2d 842 (Wis. 2017). "Causation is often an inference the trier of fact is to draw from the circumstances." *Betz ex rel. Larimore v. W. Bend Mut. Ins. Co.*, 859 N.W.2d 628 (Wis. Ct. App. 2015) (quoting *Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 84 Wis.2d 455, 458-459, 267 N.W.2d 652 (1978)).

"In addition to Wisconsin's broad formulation of duty [that everyone owes a duty of care to the entire world], it is important to note that Wisconsin's substantial factor test for cause-in-fact is equally as broad." *Fandrey*, 680 N.W.2d at 352 n.8 (citation omitted). "Given Wisconsin's broad formulation of duty and causation (cause-in-fact) it is true that the determination to deny liability is essentially one of public policy rather than of duty or causation, if 'causation' is understood in its current context as referring to 'cause-in-fact,' or 'substantial factor.'" *Id.* at 353 (citation and quotations omitted). "Once it is established that a plaintiff's negligence was a substantial factor in producing an injury, the only limitation on liability is public policy factors—what was previously referred to as 'proximate cause.'" *Id.* at 351 n.7.

## VI.     Burden of Proof on Causation

Plaintiffs contend that Bard cannot prove that Dr. Riebe's negligence was the "proximate cause" of Mrs. Tinlin's injuries. As is addressed above, proximate cause is not the standard under Wisconsin law. Further, evidence of causation need not come from one single source. *See Gil v. Reed*, 381 F.3d 649, 660 (7th Cir. 2004) (applying Wisconsin law and concluding that a party may rely on other side's expert testimony to prove her case); *Stevens v. Stryker Corp*, No. 12-CV-63-BBC, 2013 WL 4758948, at *2 (W.D. Wis. Sept. 4, 2013) (rejecting defendant's argument that the plaintiff's expert did "not develop his own opinion about general causation," finding it "[u]nnecessary for the same expert to provide opinions about both specific and general causation," and that because "defendants' experts identify the same potential causes" that "the testimony of the other experts about the link between pain pumps and chondrolysis" was sufficient); *State v. Cadden*, 201 N.W.2d 773, 775 (Wis. 1972) ("[S]ince in their daily practice physicians

normally rely on the facts and opinions of other experts, courtroom testimony, when based on the medical observations and findings of others, is sufficiently reliable to permit medical conclusions."); *Enea v. Linn*, 650 N.W.2d 315, 319 (Wis. 2002) ("medical experts may rely on the reports and medical records of others in forming opinions that are within the scope of their own expertise.").

Here, there is credible evidence upon which a trier of fact can base a reasoned choice between possible inferences. Bard has removed the issue of causation from the realm of speculation by establishing, through expert testimony, a logical basis for the inference which it claims, namely that medical negligence caused or contributed to Plaintiffs' injuries. *Connar*, 227 N.W.2d at 662 ("evidence of conduct which, if believed by the jury, would constitute negligence"); Wis. JI-Civil 1023 (Medical Negligence) ("A person's negligence is a cause of a plaintiff's (injury) (condition) if the negligence was a substantial factor in producing the present condition of the plaintiff's health.").

## VII. The *Selleck* Rule Does Not Apply to Drs. Riebe's and Haller's Negligence

Because the medical negligence of Dr. Riebe and Dr. Haller preceded any of Plaintiffs' alleged injuries in this case, the *Selleck* rule simply does not apply. *Cf. Hanson v. Am. Family Mut. Ins. Co.*, 716 N.W.2d 866, 874 (Wis. 2006) (citing *Selleck v. Janesville*, 75 N.W. 975 (Wis. 1898)) (emphasis added) ("The *Selleck* rule . . . essentially states that when a tortfeasor causes an injury to another person who *then* undergoes unnecessary medical treatment of those injuries despite having exercised ordinary care in selecting her doctor, the tortfeasor is responsible for all of that person's damages arising from any mistaken or unnecessary surgery."); *Fouse v. Persons*, 259 N.W.2d 92, 95 (1977) (discussing *Selleck* "rule for awarding damages for injuries aggravated by subsequent mistaken medical treatment."); Wis. JI-Civil 1710 (Aggravation of Injury Because of Medical Negligence) ("If (plaintiff) used ordinary care in selecting (doctor) [which (he)(she) did in this case] and (doctor) was negligent and (his) (her) negligence aggravated the (plaintiff)'s injury(ies) (failed to reduce the injury(ies) as much as (it) (they) should have been), (plaintiff)'s damages for personal injuries should be for the

entire amount of damages sustained and should not be decreased because of the doctor's negligence.").

The *Selleck* rule only governs liability for damages from the "aggravation" of (or failure to reduce) the original injury because of subsequent negligent medical treatment. *See* Wis. JI-Civil 1710. A necessary predicate to the rule is an original injury to aggravate. Mrs. Tinlin necessarily could not have been injured by Bard or the Recovery Filter *before* Dr. Riebe decided to implant the filter in Mrs. Tinlin. To say otherwise would stand logic on its head. Rather Mrs. Tinlin could only have been injured, as she alleges, *after* Dr. Riebe made the negligent decision to place the filter. Indeed, all of Plaintiffs' alleged injuries in this case occurred *long after* Dr. Riebe's negligent decision to implant the filter.

Likewise, Dr. Haller's negligent failure to identify the fractured struts in Mrs. Tinlin's heart in April 2008, which were asymptomatic at the time, occurred ***more than five years*** before a CT scan in June 2013 later showed one of the filter struts perforating her right ventricle with an associated pericardial effusion. (*See* Ex. C, Sobieszczyk Rep. at 6.) Plaintiffs brought this action against Bard to recover damages for this pericardial effusion, the resulting open heart surgery, and post-surgical complications. Prior to these alleged injuries Mrs. Tinlin was asymptomatic. Therefore, the *Selleck* rule concerning the liability for aggravation or failure to diminish an original injury allegedly caused by Bard simply does not apply to Dr. Riebe's and Dr. Haller's negligent medical care which preceded those alleged injuries.

RESPECTFULLY SUBMITTED this 12th day of April, 2019.

s/Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
jcondo@swlaw.com
kgallardo@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**