# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No.  MDL15-2641-PHX-DGC |
| Debra Tinlin and James Tinlin, | No. CV-16-00263-PHX-DGC |
| Plaintiffs, | |
| v. | |
| C. R. Bard, Inc., a New Jersey corporation; and Bard Peripheral Vascular, Inc., an Arizona corporation, | |
| Defendants. | |

## THE PARTIES' JOINT SUBMISSION OF PROPOSED JURY INSTRUCTIONS

Pursuant to the Court's direction, the parties are providing this joint submission regarding proposed jury instructions.

RESPECTFULLY SUBMITTED this 12th day of April, 2019.

BEUS GILBERT PLLC

NELSON MULLINS RILEY & SCARBOROUGH, LLP


*s/ Mark S. O'Connor (with permission)*
Mark S. O'Connor (011029)
BEUS GILBERT PLLC
701 N 44th Street
Phoenix, AZ 85008

Ramon Rossi Lopez
(admitted *pro hac vice*)
CA Bar No. 86361
LOPEZ & McHUGH LLP
Phoenix, AZ 85016-9225
100 Bayview Circle, Suite 5600
Newport Beach, CA 92660

*Co-Lead/Liaison Counsel for Plaintiffs*

*s/ Richard B. North, Jr.*
Richard B. North, Jr. (*pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (*pro hac vice*)
Georgia Bar No. 446986
Atlantic Station
201 17th Street NW / Suite 1700
Atlanta, GA 30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

James R. Condo (005867)
SNELL & WILMER LLP
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
jcondo@swlaw.com

*Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.*

## <u>PROPOSED PRELIMINARY INSTRUCTION</u>

You are now the jury in this case and it is my duty to instruct you on the law. It your duty to find the facts from all of the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you, whether you agree with it or not, and you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions. It is the final instructions that will govern your deliberations and your duties as jurors.

Please do not read into these instructions or the final instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

To help you follow the evidence, I will give you a brief summary of the positions of the parties. This is a personal injury case against a medical product manufacturer. The plaintiff, Debra Tinlin, had a Bard Recovery IVC filter placed in her inferior vena cava, which we'll refer to throughout the trial as the IVC, the vein that carries blood back to the heart. An IVC filter is intended to catch a blood clot before it reaches the heart or lungs. Defendants C.R. Bard, Inc., Bard Peripheral Vascular designed, manufactured and sold the filter.

Mrs. Tinlin and her husband allege that the filter was defectively designed and that Defendants were negligent.  They allege that Mrs. Tinlin was injured by the filter and they seek to recover money from defendants to compensate for their injuries and to punish defendants for their allegedly wrongful conduct.  They also allege that Defendants failed to warn about the risks of the filter implanted in her.

Defendants deny that their filter was defectively designed or that they were negligent or failed to warn of the risks of the filter.  Defendants assert that they are not responsible for any injuries or damages suffered by Mr. and Mrs. Tinlin.  There are two defendants in this case, C.R. Bard, Inc., and Bard Peripheral Vascular. From time to time the parties may refer to them as Bard or BPV.

You should decide the case as to each defendant separately. Unless otherwise stated, the instructions apply to all of the parties. The evidence you are to consider in deciding what the facts are will consist of the sworn testimony of the witnesses, the exhibits that are admitted into evidence, any facts to which all of the lawyers have agreed, and those will be identified for you as agreed upon or stipulated facts, and any facts that I may instruct you to accept as proved.

In reaching your verdict, you may consider only the testimony and exhibits received in evidence. Certain things are not evidence and you may not consider them in deciding what the facts are. I will list them for you.

First, arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements this afternoon, their closing arguments at the end of the trial, or at other times is intended to help you interpret the evidence but it is not evidence.

If the facts as you remember them differ from the way the lawyers have stated them, your memory of the facts controls.

Second, questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules and regulations of evidence. You should not be influenced by any lawyer's objection or by my ruling on it.

Third, testimony that is excluded or stricken or that I instruct you to disregard is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose. If I instruct to you consider certain evidence only for a limited purpose, you must do so and may not consider that evidence for any other purpose.

Finally, anything you may see or hear when the Court is not in session is not evidence. You are to decide the case solely on the evidence that will be received during the trial.

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you can find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

There are Rules of Evidence that control what can be received into evidence during the trial. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the Rules of Evidence, that lawyer may object.

If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess at what the answer might have been.

4

Sometimes, as I've already indicated, I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means that when you are deciding the case, you must not consider the stricken evidence for any purpose.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says or part of it or none of it.

In considering the testimony of any witness, you may take into account the opportunity and ability of the witness to see or hear or know the things testified to, the witness's memory, the witness's manner while testifying, the witness's interest in the outcome of the case if any, the witness's bias or prejudice if any, whether other evidence contradicted the witness's testimony, the reasonableness of the witness's testimony in light of all of the evidence, and any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things and make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences but do not decide the testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest. The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it. What is important is how believable the witnesses were and how much weight you think their testimony deserves.

I will now say a few words about your conduct as jurors. First, please keep an open mind throughout the trial and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, as I've already mentioned, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I instruct you otherwise, do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.

This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging or any Internet chat room, blog, website or application

including, but not limited to, Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.

This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else, including your family members, your employer, the media or press, and the people involved in the trial although, obviously, you can notify your family and your employer that you have been seated as a juror in this case and how long you expect the trial to last.

But if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the Court immediately.

Because you will receive all of the evidence and legal instruction you properly may consider to return a verdict during this trial, do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it. Do not do any research such as consulting dictionaries, searching the Internet or using other reference materials and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view anyplace discussed during the trial.

Also, do not do any research about the case, the law, or the people involved including the parties, the witnesses, or the lawyers until you have been excused as jurors.

If you happen to read or hear anything touching on this case in the media, please turn away immediately and report the contact to me as soon as possible.

We have these rather detailed rules to protect each party's right to have this case decided only on the evidence that is presented here in court. Witnesses in court take an oath to tell the truth and the accuracy of their testimony is tested through the trial process.

If you do any research or investigation outside of the courtroom or gain any information through improper communication, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. At least it will be based on information that these parties never had an opportunity to address during the trial. Each of the parties is entitled to a fair trial by an impartial jury and if you decide the case based on information not presented in the Court, you will have denied the parties a fair trial.

Please remember that you have taken an oath to follow these rules and it is very important that you do so. A juror who violates these restrictions jeopardizes the fairness of this trial and a mistrial could result that would require the entire trial process to start

over again. If any of you is exposed to any outside information, please notify me immediately.

I urge you to pay close attention to the trial testimony as it is given. When you deliberate at the end of the case, you will not have a transcript of what was said. Even though we have a court reporter taking down everything that is said, it takes several days after a trial is over for the court reporter to go back and clean up that transcript and compare it with the recording and get it completely accurate. And that process won't be finished by the time you're deliberating so you will not have a transcript of the trial and as a result, we urge you to pay close attention to the evidence as it is given.

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let note-taking distract you. When you leave each day or during a break, your notes should be left in the courtroom on your chair. Nobody will read your notes. Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

From time to time during the trial it may become necessary for me to talk to the lawyers outside of your hearing, either by having a conference here at the side of the bench as we did this morning or by calling a recess and excusing you from the courtroom. We will do our best to keep such conferences to a minimum. Please understand that the purpose of those conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the Rules of Evidence and to avoid confusion and error.

I may not always grant a lawyer's request for a conference. Please do not consider my granting or denying a request for a conference as any indication of my opinion of what your verdict should be.

Trials proceed in the following way: First each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. The plaintiff will then present evidence and counsel for the defendant may cross-examine. Then the defendant may present evidence and counsel for the plaintiff may cross-examine.

After all of the evidence has been presented, I will give you instructions on the law that apply to this case and the attorneys will make their closing arguments. After that you will go to the jury room to deliberate on your verdict.

Counsel, are there any additions or corrections to the instructions?

## PLAINTIFFS' PROPOSED INSTRUCTION RE:
## REMOTE PARTICIPATION BY MRS. TINLIN

For medical reasons and on the instructions of her doctors, Mrs. Tinlin is not in the courtroom in Phoenix for the trial and is participating by videoconference at a location near her home in Wisconsin.  You should not draw any inference concerning any of her claims as a result of her participation by videoconference.

**Defendants' Objection**:

The defendants object to the plaintiffs' proposed instruction because it does not clarify the reason Mrs. Tinlin cannot travel.  The letter to the Court from the plaintiff's primary care physician, Dr. Heather Stanko, made it clear that she cannot travel because of her neurological issues.   There is no evidence that any issues regarding her IVC filter prevent her from attending the trial.  By failing to clarify that point, the plaintiffs' proposed instruction allows the jury to speculate that her absence is indeed related to the filter.  The final sentence in the plaintiffs' proposed instruction is too vague to dispel that notion.

**Plaintiffs' Response:**

Plaintiffs' proposed instruction uses neutral language, avoids commenting on the evidence, and explicitly instructs the jury to draw no inference from Mrs. Tinlin's remote participation.  More than one doctor with different specialties submitted letters recommending that Mrs. Tinlin not travel.  Defendants' proposal, to read a portion of a letter from one of these doctors, represents a comment on the evidence, which is not appropriate for this instruction.

## DEFENDANTS' PROPOSED INSTRUCTION RE:
## REMOTE PARTICIPATION BY MRS. TINLIN

Mrs. Tinlin is not in the courtroom in Phoenix for the trial and will be participating by videoconference at a location near her home in Wisconsin.  Her doctors determined that she is unable to travel because she is wheelchair bound due to longstanding right leg paralysis and coordination difficulties complicated by muscle spasms and poor endurance.

February 27, 2019 letter from Heather A. Stanko, M.D.

**Plaintiffs' Objection:**

Plaintiffs' proposed instruction uses neutral language, avoids commenting on the evidence, and explicitly instructs the jury to draw no inference from Mrs. Tinlin's remote participation.  More than one doctor with different specialties submitted letters recommending that Mrs. Tinlin not travel.  Defendants' proposal, to read a portion of a letter from one of these doctors, represents a comment on the evidence, which is not appropriate for this instruction.

**Defendants' Response**:

By utilizing neutral language without any factual basis for it, the Plaintiffs' proposed instruction creates the strong possibility that the jury will assume Mrs. Tinlin is not able to attend trial because of complications related to her filter.  However, there is no evidence whatsoever to support that assumption.  Mrs. Tinlin was confined to a wheelchair before she ever received an IVC filter in 2005.  She is not being currently treated for any debilitating conditions related to the filter.  In explaining why she could not travel to Phoenix, her treating physicians did not refer to anything related to the filter as a reason why she could not travel to Phoenix.  One physician merely referred to "medical issues", and her primary treating physician Dr. Heather Stanko cited the reasons set forth in this proposed instruction to explain Mrs. Tinlin's inability to travel.  This instruction is almost a direct quote from Dr. Stanko's letter, substituting the term "coordination difficulties" for the more technical term "dysmetria."  Wikepedia defines "dysmetria" as "a lack of coordination of movement typified by the undershoot or overshoot of intended position with the hand, arm, leg, or eye."  <u>See</u> https://en.wikipedia.org/wiki/Dysmetria.  The use of the term "coordination difficulties" is clearly a fair and accurate lay-friendly paraphrase of the term.  Most important, Dr. Stanko's letter makes it absolutely clear that Mrs. Tinlin's inability to travel is related to her neurological conditions, and totally unrelated to any complication with the filter.  The Plaintiffs should not be allowed to create the possibility that the jury might assume otherwise.

## <u>THE PARTIES' PROPOSED INSTRUCTION RE: INTRODUCTION</u>

Members of the Jury:  Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done as indicating that I have an opinion regarding the evidence or what your verdict should be.

Final Instruction No. 1 from <u>Hyde</u>

## **THE PARTIES' PROPOSED INSTRUCTION RE:  THE DEFENDANTS**

Although there are two defendants in this case, C.R. Bard, Inc. and Bard Peripheral Vascular, Inc., you should decide the case as to the two defendants jointly.  As a result, in these instructions and in the verdict form, we will refer to defendants collectively as "Bard."  Unless otherwise stated, the instructions apply to both Bard and Plaintiffs.

Final Instruction No. 2 from <u>Hyde</u>

### THE PARTIES' PROPOSED INSTRUCTION RE:  THE EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of the witnesses;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I have instructed you to accept as proved.

Final Instruction No. 3 from <u>Hyde</u>

## <u>THE PARTIES' PROPOSED INSTRUCTION RE: WHAT IS NOT EVIDENCE</u>

In reaching your verdict, you may consider only the testimony of the witnesses, the exhibits received into evidence, and facts to which the parties have agreed.  Which I have instructed you to accept.

Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.  Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, may say in closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of the facts controls.

2.  Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objections or by my rulings on them.

3.  Testimony that is excluded or stricken, or that you were instructed to disregard, is not evidence and must not be considered.  In addition, some evidence is received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4.  Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received during the trial.

Final Instruction No. 4 from <u>Hyde</u>

## **THE PARTIES' PROPOSED INSTRUCTION RE: REDACTIONS**

      Some exhibits admitted into evidence have been partially "redacted," which means that certain contents of the exhibits have been blacked out or whited out.  The parties and I have redacted information that is not properly admitted as evidence.  You may give the unredacted information in any exhibit whatever weight you choose, but you must disregard the redacted information and must not speculate about what it might say.

Final Instruction No. 5 from <u>Hyde</u>

## THE PARTIES' PROPOSED INSTRUCTION RE:  EXPERT OPINIONS

You have heard testimony from a number of witnesses who testified to opinions and the reasons for their opinions.  This opinion testimony is allowed because of the education or experience of those witnesses.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Final Instruction No. 6 from <u>Hyde</u>

## THE PARTIES' PROPOSED INSTRUCTION RE: FDA EMPLOYEE TESTIMONY

Federal law prohibits current FDA employees from testifying in court regarding any function of the FDA, and prohibits current and former FDA employees from testifying about information acquired in the discharge of their official duties, without authorization of the Commissioner of the FDA. As a result, neither side in this case was able to present testimony from current FDA employees or former FDA employees regarding the discharge of their duties related to this case.

Each side has presented expert witnesses to testify about FDA procedures and the 510(k) process in this case, but this testimony was based on the expertise of these witnesses and work they did after being retained as experts in this litigation.

Final Instruction No. 7 from Hyde

## THE PARTIES' PROPOSED INSTRUCTION RE: CHARTS AND SUMMARIES

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the evidence in the case.  These have been referred to as demonstrative exhibits.  The demonstrative exhibits are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

Final Instruction No. 8 from Hyde

## **THE PARTIES' PROPOSED INSTRUCTION RE:  CORPORATIONS**

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

Final Instruction No. 9 from <u>Hyde</u>

## THE PARTIES' PROPOSED INSTRUCTION RE:  CORPORATIONS

Under the law, a corporation is considered to be a person.  It can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

Final Instruction No. 10 from <u>Hyde</u>

## THE PARTIES' PROPOSED INSTRUCTION RE: PLAINTIFFS' CLAIMS

Plaintiff Debra Tinlin asserts four claims against Bard: strict liability based on design defect, negligent design, strict liability based on failure to warn, and negligent failure to warn.  Plaintiff James Tinlin asserts a derivative claim for loss of consortium. I will instruct you on the law that applies to each of these claims.  You should consider each claim separately.

Plaintiffs seek compensatory damages, which are damages to compensate them for their alleged injuries.  Plaintiffs also seek punitive damages to punish Bard for its allegedly wrongful conduct.  I will instruct you on the law that applies to compensatory and punitive damages.

Final Instruction No. 11 from <u>Hyde</u> (modified)

## THE PARTIES' PROPOSED INSTRUCTION RE: BURDEN OF PROOF

Before I give you instructions about Plaintiffs' specific claims, I will give you a few instructions about the verdict form you will complete after your deliberations and the burden of proof for the claims.

The verdict form requires you to state whether you find for Plaintiffs or Bard on each claim.  For each claim, the burden is on Plaintiffs to satisfy you by the greater weight of the credible evidence, to a reasonable certainty, that you should find for Plaintiffs.  If you find that Plaintiffs have met this burden of proof on any claim, you should find for Plaintiffs on that claim.  If you find that Plaintiffs have not met this burden of proof on any claim, you should find for Bard on that claim.

 "Credible evidence" means evidence you believe in light of reason and common sense.

The "greater weight" of the credible evidence means that the evidence in favor of a finding for a party has more convincing power than the evidence opposed to it.

"Reasonable certainty" means that you are persuaded based upon a rational consideration of the evidence.  Absolute certainty is not required, but a guess is not enough to meet the burden of proof.

Final Instruction No. 12 from Hyde

## THE PARTIES' PROPOSED INSTRUCTION RE: STRICT LIABILITY DESIGN

Mrs. Tinlin contends that Bard is strictly liable because of a defective design of the Bard IVC filter she received.  To prove liability of Bard for the strict liability design defect claim, Mrs. Tinlin must establish each of the following five elements:

1.  The filter is defective because the foreseeable risks of harm posed by the filter's design could have been reduced or avoided by the adoption of a reasonable alternative design by Bard, and the omission of the alternative design renders the product not reasonably safe.

2.  The defective condition rendered the filter unreasonably dangerous to persons or property.

3.  The defective condition existed at the time the filter left the control of Bard.

4.  The filter reached the user or consumer without substantial change in the condition in which it was sold.

5.  The defective condition was a cause of Mrs. Tinlin's damages.

Final Instruction No. 13 from <u>Hyde</u>

## DEFENDANTS' PROPOSED INSTRUCTION RE: DESIGN DEFECT

A broad range of factors may be considered in determining whether an alternative design is reasonable and whether its omission renders a product not reasonably safe.  The factors include, among others, and the magnitude and probability of the foreseeable risks of harm, the instructions and warnings accompanying the product
Restatement (3d) of Torts, Product Liability, sec. 2, comment f.

**Plaintiffs' Objection**: Plaintiffs object to this instruction because Wisconsin has only adopted the Restatement (Third) provisions set forth in Wis. Stat. 895.047(a), which do not include the one proposed here.  Moreover, Wisconsin has not adopted the comments to the Restatement (Third).  The Court rejected Bard's proposal to include this instruction in the *Hyde* case.  *See* Doc. No. 12438, at 46.

**Defendants' Response:** The Defendants acknowledge that the Court declined to offer this instruction in the ***Hyde*** trial.  However, the Defendants respectfully submit that the jury needs more guidance about standard for a design defect.  This formulation comes directly from the comments of the Restatement (Third). As set forth in the Defendants' trial brief, when enacting Wis. Stat. 895.047 (1), the Wisconsin legislature clearly intended to adopt the standard for design defect set forth in the Restatement (Third). The comments to the Restatement provide helpful guidance on the factors pertinent to the terms (such as "alternative design" and "not reasonably safe" set forth in the standard.

## DEFENDANTS' PROPOSED INSTRUCTION RE: RISK UTILITY

The test for strict liability design defect requires you to weigh the risks and benefits of the filter.  Products are not generically defective merely because they are dangerous.  A reasonably designed product still carries with it elements of risk that must be protected against by the user or consumer since some risks cannot be designed out of the product at reasonable cost.

The balancing of risks and benefits in judging product design and marketing must be done in light of the knowledge of risks and risk-avoidance techniques reasonably attainable at the time of distribution.

Restatement (3d) of Torts, Product Liability, sec. 2, comment a.

**Plaintiffs' Objection**: Plaintiffs object to this instruction because Wisconsin has only adopted the Restatement (Third) provisions set forth in Wis. Stat. 895.047(a), which do not include the one proposed here.  Moreover, Wisconsin has not adopted the comments to the Restatement (Third).  The proposed instruction is also argumentative and misstates the law on reasonable alternative design.  The Court rejected Bard's proposal to include this instruction in the *Hyde* case.  *See* Doc. No. 12438, at 47.

**Defendants' Response:** The Defendants acknowledge that the Court declined to offer this instruction in the *Hyde* trial.  However, the Defendants respectfully submit that the jury needs more guidance about standard for a design defect.  This formulation comes directly from the comments of the Restatement (Third). As set forth in the Defendants' trial brief, when enacting Wis. Stat. 895.047 (1), the Wisconsin legislature clearly intended to adopt the standard for design defect set forth in the Restatement (Third). The comments to the Restatement provide helpful guidance on the factors pertinent to the terms (such as "alternative design" and "not reasonably safe" set forth in the standard.

## DEFENDANTS' PROPOSED INSTRUCTION RE: INDUSTRY PRACTICE

Industry practice may be relevant to whether the omission of an alternative design rendered the product not reasonably safe.

Restatement (3d) of Torts, Product Liability, sec. 2, comment d.

**Plaintiffs' Objection**: Plaintiffs object to this instruction because Wisconsin has only adopted the Restatement (Third) provisions set forth in Wis. Stat. 895.047(a), which do not include the one proposed here.  Moreover, Wisconsin has not adopted the comments to the Restatement (Third).  The Court rejected Bard's proposal to include this instruction in the *Hyde* case.  *See* Doc. No. 12438, at 48.

**Defendants' Response:** The Defendants acknowledge that the Court declined to offer this instruction in the ***Hyde*** trial.  However, the Defendants respectfully submit that the jury needs more guidance about standard for a design defect.  This formulation comes directly from the comments of the Restatement (Third). As set forth in the Defendants' trial brief, when enacting Wis. Stat. 895.047 (1), the Wisconsin legislature clearly intended to adopt the standard for design defect set forth in the Restatement (Third). The comments to the Restatement provide helpful guidance on the factors pertinent to the terms (such as "alternative design" and "not reasonably safe" set forth in the standard.

## DEFENDANTS' PROPOSED INSTRUCTION RE:  DESIGN DEFECT

In determining whether the filter is defectively designed, you must consider not only the risks associated with the product but also the benefits.

Godoy v. E. I. Du Pont De Nemours and Co., 768 N.W.2d 674, 697 (Wis. 2009) (Prosser, J. concurring)

**Plaintiffs' Objection**: Plaintiffs object to this instruction because Wisconsin has only adopted the Restatement (Third) provisions set forth in Wis. Stat. 895.047(a), which do not include the one proposed here.  Moreover, Wisconsin has not adopted the comments to the Restatement (Third).  The Court rejected Bard's proposal to include this instruction in the *Hyde* case.  *See* Doc. No. 12438, at 48.

**Defendants' Response:** The Defendants acknowledge that the Court declined to give this instruction in the *Hyde* trial.  However, the Defendants respectfully submit that the jury needs more guidance on the proper definitions of the terms utilized by the Wisconsin statute as the standard for a design defect.   The statements in this opinion, although pre-dating the adoption of the statute, attempt to define a defective design claim under the Restatement (Third). The statements are consistent with the comments to the Restatement.

## DEFENDANTS' PROPOSED INSTRUCTION RE:  DESIGN DEFECT

The balancing of risks and benefits in judging product design must be done in light of the knowledge of risks and risk-avoidance techniques reasonably attainable at the time of distribution.

Godoy v. E. I. Du Pont De Nemours and Co., 768 N.W.2d 674, 696 (Wis. 2009) (Prosser, J. concurring)

**Plaintiffs' Objection**: This proposed instruction is substantively identical to the second half of Defendants' proposed instruction, titled "Risk Utility," above, and rejected in *Hyde*.  *See* Doc. No. 12438, at 46. Plaintiffs object to this instruction because Wisconsin has only adopted the Restatement (Third) provisions set forth in Wis. Stat. 895.047(a), which do not include the one proposed here.  Moreover, Wisconsin has not adopted the comments to the Restatement (Third).

**Defendants' Response:** The Defendants acknowledge that the Court declined to give this instruction in the ***Hyde*** trial.  However, the Defendants respectfully submit that the jury needs more guidance on the proper definitions of the terms utilized by the Wisconsin statute as the standard for a design defect.   The statements in this opinion, although pre-dating the adoption of the statute, attempt to define a defective design claim under the Restatement (Third). The statements are consistent with the comments to the Restatement.

**DEFENDANTS' PROPOSED INSTRUCTION RE:  DESIGN DEFECT**

The burden of presenting sufficient evidence of a reasonable alternative design requires proof of the availability of  technologically feasible and practical alternative design that would have reduced or prevented the plaintiff's harm.

Godoy v. E. I. Du Pont De Nemours and Co., 768 N.W.2d 674, 698 (Wis. 2009) (Prosser, J. concurring)

**Plaintiffs' Objection**:  Plaintiffs object to this instruction because Wisconsin has only adopted the Restatement (Third) provisions set forth in Wis. Stat. 895.047(a), which do not include the one proposed here.  Moreover, Wisconsin has not adopted the comments to the Restatement (Third).  The Court should adhere to the instructions on the design defect claim that it adopted in the *Hyde* case.

**Defendants' Response:** The Defendants acknowledge that the Court declined to give this instruction in the ***Hyde*** trial.  However, the Defendants respectfully submit that the jury needs more guidance on the proper definitions of the terms utilized by the Wisconsin statute as the standard for a design defect.   The statements in this opinion, although pre-dating the adoption of the statute, attempt to define a defective design claim under the Restatement (Third). The statements are consistent with the comments to the Restatement.

## **DEFENDANTS' PROPOSED INSTRUCTION RE:  DESIGN DEFECT**

In determining whether the design of the filter is defective, you may consider the following factors:

1)   Conformity of the design to the practices of other manufacturers in the industry at the time of manufacture;

2)   the open and obvious nature of the alleged danger;

3)   the extent of the claimant's use of the very product alleged to have caused the injury and the period of time involved in such use by the claimant and others prior to the injury without any harmful incident;

4)   the ability of the manufacturer to eliminate danger without impairing the product's usefulness or making it unduly expensive; and

5)   the relative likelihood of injury resulting from the product's present design.

Sumnicht v. Toyota Motor Sales, U.S.A., Inc., 360 N.W.2d 2 Wis. 1984; see also Green v. Smith & Nephew AHP, Inc.), 629 N.W.2d 727, 767 (Wis. 2001) (Sykes, J. dissenting) (noting traditional factors cited in Sumnicht are comparable to Restatement (Third) test).

**Plaintiffs' Objection**:  Plaintiffs object to this instruction because Wisconsin has only adopted the Restatement (Third) provisions set forth in Wis. Stat. 895.047(a), which do not include the one proposed here.  Moreover, Wisconsin has not adopted the comments to the Restatement (Third).  The Court should adhere to the instructions on the design defect claim that it adopted in the *Hyde* case.

**Defendants' Response:** The Defendants acknowledge that the Court declined to give this instruction in the ***Hyde*** trial.  However, the Defendants respectfully submit that the jury needs more guidance on the proper definitions of the terms utilized by the Wisconsin statute as the standard for a design defect.   The statements in this opinion, although pre-dating the adoption of the statute, attempt to define a defective design claim under the Restatement (Third). The statements are consistent with the comments to the Restatement.

## DEFENDANTS' PROPOSED INSTRUCTION
## RE:  REBUTTABLE PRESUMPTION

There was evidence received that at the time of sale, the product complied in material respects with relevant standards, conditions, or specifications adopted or approved by a federal or state law or agency.  From this evidence, a rebuttable presumption arises that the product was not defective.  However, there is also evidence which may be believed by you that the product is defective.  You must resolve this conflict.  Unless you are satisfied by the greater weight of the credible evidence, to a reasonable certainty, that it is more probable than not that the product was defective, you should find that the product was not defective.

WIS-JI-CIVIL 3260.1

**Plaintiffs' Objection**: The parties previously briefed this issue, and this instruction and defense are not available to Defendants.  *See* Order, July 26, 2018 (Doc. 12007), at 10-12 ("Because the 510(k) clearance process focuses on equivalence, not safety, the presumption of non-defectiveness afforded by § 895.047(3)(b) is not applicable.").  Bard's proposal to include this instruction was also rejected in the *Hyde* case.  *See* Doc. 12438, at 49.

**Defendants' Response:** The Defendants acknowledge the Court's previous ruling regarding this issue. However, the Defendants respectfully submit that the Court engrafted a limitation on the statute that is not supported by the plain language of the provision. Specifically, the Court suggested that only compliance with "safety" standards are relevant under this defense, when the  statute does not contain that qualification, rather speaking only in terms of "relevant standards," conditions, or specifications adopted or approved by a federal or state law or agency." Consistent with that language, the Defendants will urge the Court at the appropriate time to reconsider its previous ruling and instruct the jury regarding the presumption set forth in this Wisconsin statute.

## THE DEFENDANTS' PROPOSED INSTRUCTION
## RE:  INHERENT CHARACTERISTIC

Mrs. Tinlin may not recover on the strict liability design defect claim if the damages were caused by an inherent characteristic of the product that would be recognized by an ordinary person with ordinary knowledge common to the community that uses or consumes the product.

Final Instruction No. 14 from <u>Hyde</u>


**Plaintiffs' Objection:** Plaintiffs object to this instruction because it is not found in the Wisconsin pattern jury instructions, and the statutory provision that provides for an "inherent characteristic" defense directs this question to "the court," and not a jury.  *See* Wisc. Stat. § 895.047(3)(d).  Further, it is not applicable to the facts of the case.  There is no evidence than an ordinary person, be it Ms. Tinlin or her doctors, had the ability or knowledge to recognize, understand, or appreciate the unreasonable dangers associated with Bard IVC filters and the risks of injuries caused by their failures.

**Defendants' Response**:

This instruction, which was given in <u>Hyde</u>, is based on a defense codified by Wis. Stat. sec. 895,047 (3)(d).   In the previous trial, the Court ruled that the requested instruction was appropriate, noting that "the Court cannot conclude as a matter of law that Defendants are not entitled to this statutory defense." See Doc. 12810.  Additionally, the plaintiffs' suggestion that Mrs. Tinlin's doctors could not recognize the risks associated with the device will not be supported by those physicians' own testimony at trial.  The suggestion will also be contradicted by evidence such as the SIR Guidelines that show the risks were widely recognized in the medical community.

**THE PARTIES' PROPOSED INSTRUCTION RE:**
**STRICT LIABILITY FAILURE TO WARN**

Mrs. Tinlin contends that Bard is strictly liable because it failed to give adequate warnings regarding the Recovery IVC filter.

To recover damages for strict liability based on an inadequate warning, Mrs. Tinlin must establish all of the following five elements by a preponderance of the evidence:

1. The filter is defective because of inadequate instructions or warnings only if the foreseeable risks of harm posed by the filter could have been reduced or avoided only by the provision of reasonable instructions or warnings by Bard, and the omission of the instructions or warnings renders the product not reasonably safe.

2. The defective condition rendered the filter unreasonably dangerous to persons or property.

3. The defective condition existed at the time the filter left the control of Bard.

4. The filter reached the user or consumer without substantial change in the condition in which it was sold.

5. The defective condition was a cause of Mrs. Tinlin's damages.

WIS JI-CIV 3260.1

## DEFENDANTS' PROPOSED INSTRUCTION RE: LEARNED INTERMEDIARY

For medical devices such as an IVC filter that are available only upon prescription of a duly licensed physician, the warning required is not to the general public or the patient, but to the prescribing doctor.  That is because the treating doctor is in the best position to understand the patient's needs and assess the risks and benefits of a particular course of treatment.

See Menges v. Depuy Motech, Inc., 61 F. Supp. 2d 817, 830 (N.D. Inc. 1999) (applying Wisconsin law); Monson v. Acromed Corp., No. 96-C-1336, 1999 WL 1133273 at * 20 (E.D. Wis. May 12, 1999); see also In re Zimmer, 884 F.3d 746, 751 (7th Cir. 2018).

_____

**Plaintiffs' Objection**: As Plaintiffs explained in their summary judgment opposition brief, the Wisconsin Supreme Court has never held that the learned intermediary doctrine applies in Wisconsin.  *See* Doc. 15696, at 3-4.  Like other courts have chosen, this Court should not "create Wisconsin law without some indication that the state's highest court would apply the doctrine if given the opportunity to do so." *Forst v. SmithKline Beecham Corp.*, 602 F. Supp. 2d 960, 968 (E.D. Wis. 2009) (citing *Peters v. Astrazeneca, LP*, 417 F. Supp. 2d 1051, 1054 (W.D. Wis. 2006)). Notably, there is no pattern Wisconsin jury instruction addressing the learned intermediary doctrine.

**Defendants' Response**: While the Wisconsin courts have never addressed the learned intermediary rule, the vast majority of federal courts forecasting Wisconsin law have ruled that, consistent with the vast majority (45-plus) jurisdictions in this country, the state would indeed adopt the rule. **See, e.g.,** In re Zimmer, 884 F.3d 746, 751 (7th Cir. 2018).

## THE PARTIES' PROPOSED INSTRUCTION RE: NEGLIGENT DESIGN

Ms. Tinlin also claims that Bard was negligent in the design of the Bard IVC filter she received.

A person is negligent when he or she fails to exercise ordinary care. Ordinary care is the care which a reasonable person would use in similar circumstances. A person is not using ordinary care if the person, without intending to do harm, does something or fails to do something that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.

It is the duty of a manufacturer to exercise ordinary care in the design of its product so as to render the product safe for its intended use and also safe for unintended uses which are reasonably foreseeable. It is the further duty of the manufacturer, in the exercise of ordinary care, to make all reasonable and adequate tests and inspections of its product so as to guard against any defective condition which would render such product unsafe when used as it is intended to be used. A manufacturer is charged with knowledge of its own methods of designing its product and the defects in such methods, if any.

Failure of the manufacturer to perform any such duty constitutes negligence.

Final Instruction No. 15 from <u>Hyde</u>

## PLAINTIFFS' PROPOSED INSTRUCTION RE: NEGLIGENT FAILURE TO WARN

Mrs. Tinlin claims that Bard was negligent in failing to warn about the risks of the Recovery IVC filter implanted in her. A manufacturer of a product has a duty to exercise ordinary care to warn of dangers which it knows, or should know, are associated with the proper use of the product. This duty exists whether or not the product was properly designed. "Proper use" means a use which is intended by the manufacturer. In addition, a manufacturer has the duty to warn of dangers inherent in a use not intended by the manufacturer if such unintended use is reasonably foreseeable by the manufacturer.

However, a manufacturer does not have a duty to warn about dangers that are known to the user, or are obvious to or readily discoverable by potential users, or are so commonly known that it can reasonably be assumed that users will be familiar with them.

WIS JI-CIVIL 3242 (modified)

**Plaintiffs' Position**: The last sentence of the Wisconsin pattern instruction on negligent failure to warn has been omitted because it is unnecessary in this case, and would only cause confusion. The omitted sentence is: "Additionally, the manufacturer does not have to warn about dangers associated with unforeseeable misuses of the product."

**Defendants' Response**:

There is no justification for omitting the final sentence of the pattern instruction. That sentence is particularly appropriate in this case, given the anticipated evidence that the device was misused in this case. Specifically, the physician who implanted the Recovery Filter did so despite the fact that, by his own admission, Mrs. Tinlin's inferior vena cava exceeded 28 mm in diameter. The device was therefore contraindicated in Mrs. Tinlin. The defendants' proposed instruction (which follows) includes that sentence.

## DEFENDANTS' PROPOSED INSTRUCTION RE:
## <u>NEGLIGENT FAILURE TO WARN</u>

A manufacturer of a product has a duty to exercise ordinary care to warn of dangers which he or she knows, or should now, are associated with the proper use of the product.  This duty exists whether or not the product was properly designed.  "Proper use" means a use which is intended by the manufacturer.  In addition, a manufacturer has the duty to warn of dangers inherent in a use not intended by the manufacturer if such unintended use is reasonably foreseeable by the manufacturer.

However, a manufacturer does not have a duty to warn about dangers that are known to the user, or are obvious to or readily discoverable by potential users, or are so commonly known that it can reasonably be assumed that users will be familiar with them.  Additionally, the manufacturer does not have to warn about dangers associated with unforeseeable misuses of the product.

WIS-JI-CIVIL 3242

## PLAINTIFFS' PROPOSED INSTRUCTION RE: POST-SALE DUTY TO WARN

A manufacturer of a product has a duty to warn of dangers associated with the use of the product that it learns of after it has begun selling the product if it was both practically and economically feasible for it to have provided warnings, and any warnings would have been effective in reaching the users of its products.

*Bushmaker v. A. W. Chesterton Co.*, 09-cv-726, 2013 WL 11079371, at *8 (W.D. Wis. Mar. 1, 2013); *Kozlowski v. John E. Smith's Sons Co.*, 275 N.W.2d 915 (1979).

**Defendants' Objection**: Bard objects to Plaintiffs' proposed instruction regarding their post-sale duty to warn claim.

*First*, Plaintiffs' proposed charge misstates Wisconsin law. To the extent Wisconsin recognizes a post-sale duty to warn, it is under the circumstances articulated by the court in *Kozlowski v. John E. Smith's Sons Co.*, 87 Wis.2d 882, 275 N.W.2d 915 (1979). Plaintiffs' reliance on *Bushmaker v. A. W. Chesterton Co.*, 09-cv-726-SLC, 2013 WL 11079371 (W.D. Wis. Mar. 1, 2013) (*Bushmaker I*) to support their argument regarding the alleged elements of a "continuing duty to warn " is misplaced because *Bushmaker I* inappropriately expanded Wisconsin law and is wrongly decided. *See* Bard's position on this issue in the Parties' Proposed Pre-trial Order at Section D(1)(e).

*Second*, Plaintiffs' cannot establish the <u>Kozlowski</u> elements for a post-sale duty to warn because it cannot establish (a) that Bard knew of all customers that own its product (the Recovery), and (b) that a safety feature was added to the product (the Recovery) at issue at some point in time after sale.

*Third*, even if the *Bushmaker I* opinion accurately articulated a post-sale duty to warn under Wisconsin law, Plaintiffs cannot establish the requisite showing under *Bushmaker I* "that it was both practically and economically feasible for the defendant to have provided warnings and that any warnings would have been effective in reaching the users of its products." *Bushmaker I*, 2013 WL 11079371, at *8.

**Plaintiffs' Response:** Defendants do not dispute that a post-sale duty to warn exists under the circumstances set out in this instruction, and have not demonstrated an absence of genuine issues of material fact that would prevent this question from being put to the jury; nor could they in this case, which involves a well-developed record of post-market knowledge of the Recovery filter's dangers and a failure to warn. Further, Defendants' misread *Kozlowski* as an articulation of the specific "elements" of a post-sale duty to warn claim rather than a discussion of factors to consider when determining the ability of manufacturers in certain industries to warn their customers. *See generally Kozlowski*, 275 N.W.2d at 898-904. Finally, contrary to Defendants' characterization, this instruction does not introduce a separate "claim," but instead provides further explanation

of the scope of Defendants' duty to warn, as introduced in the immediately preceding instruction.

## DEFENDANTS' PROPOSED INSTRUCTION RE: LEARNED INTERMEDIARY

Again, for medical devices such as IVC filters that are available only upon prescription of a duly licensed physician, the warning required is not to the general public or the patient, but to the prescribing doctor.

Menges v. Depuy Motech, Inc., 61. F. Supp. 2d 817, 830 (N.D. Ind.) (applying Wisconsin law).

**Plaintiffs' Objection**: As Plaintiffs explained in their summary judgment opposition brief, the Wisconsin Supreme Court has never held that the learned intermediary doctrine applies in Wisconsin.  *See* Doc. 15696, at 3-4.  Like other courts have chosen, this Court should not "create Wisconsin law without some indication that the state's highest court would apply the doctrine if given the opportunity to do so."  *Forst v. SmithKline Beecham Corp.*, 602 F. Supp. 2d 960, 968 (E.D. Wis. 2009) (citing *Peters v. Astrazeneca, LP*, 417 F. Supp. 2d 1051, 1054 (W.D. Wis. 2006)).  Notably, there is no pattern Wisconsin jury instruction addressing the learned intermediary doctrine.

**Defendants' Response**: While the Wisconsin courts have never addressed the learned intermediary rule, the vast majority of federal courts forecasting Wisconsin law have ruled that, consistent with the vast majority (45-plus) jurisdictions in this country, the state would indeed adopt the rule. **See, e.g.,** In re Zimmer, 884 F.3d 746, 751 (7th Cir. 2018).

## THE PARTIES' PROPOSED INSTRUCTION RE:  CAUSATION

If you find that the Bard IVC filter was defectively or negligently designed, or that or that Bard failed to provide an adequate warning about the risks of the Recovery filter, you must also decide whether that design or inadequate warning caused injury to Mrs. Tinlin.  An injury may have more than one cause.  The defective or negligent design or inadequate warning caused an injury if it was a substantial factor in producing the injury. An injury may be caused by one cause or by the combination of multiple causes.

Final Instruction No. 16 from Hyde (modified to include failure to warn)

## DEFENDANTS' PROPOSED INSTRUCTION RE:
## <u>MEDICAL NEGLIGENCE</u>

In treating Mrs. Tinlin's injuries and condition, the doctors were required to use the degree of care, skill, and judgment which reasonable doctors who are specialists who practice the specialties which the doctors practice would exercise in the same or similar circumstances, having due regard for the state of medical science at the time Mrs. Tinlin was treated. A doctor who fails to conform to this standard is negligent. The burden is on the defendants to prove that one or more of the doctors were negligent.

A doctor is not negligent, however, for failing to use the highest degree of care, skill and judgment or solely because a bad result may have followed his care and treatment. The standard you must apply in determining if a doctor was negligent is whether that doctor failed to use the degree of care, skill, and judgment which reasonable  specialists would exercise given the state of medical knowledge at the time of the treatment in issue.

You have heard testimony during this trial from doctors who have testified as expert witnesses. The reason for this is because the degree of care, skill, and judgment which a reasonable doctor would exercise is not a matter within the common knowledge of laypersons. This standard is within the special knowledge of experts in the field of medicine and can only be established by the testimony of experts. You, therefore, may not speculate or guess what the standard of care, skill and judgment is in deciding this case but rather must attempt to determine it from the expert testimony that you heard during this trial. In determining the weight to be given an opinion, you should consider the qualifications and credibility of the expert and whether reasons for the opinion are based on facts in the case., You are not bound by any expert's opinion.

A person's negligence is a cause of a plaintiff's injury or condition if the negligence was a substantial factor in producing the present condition of the plaintiff's health. This question does not ask about "the cause" but rather "a cause." The reason for this is that there can be more than one cause of an injury or a condition. The negligence of one or more person(s) can cause an injury or condition or an injury and condition can be the result of the natural progression of the injury or condition.  In addition, the injury or condition can be caused jointly by a person's negligence and also the natural progression of the injury or condition.

If you conclude from the evidence that the present condition of the plaintiff's health was caused jointly by the negligence of one or more doctor's negligence and also the natural progression of the plaintiff's injury or condition, then you should find that the doctor's negligence was a cause of the plaintiff's present condition of health.

WIS-JI-CIVIL 1023

**Plaintiffs' Objection**: This instruction, developed for cases, unlike this one, where a plaintiff has brought a claim for negligence against her doctor, is inapplicable and confusing.  First, Bard cannot establish that any purported negligence on the part of any of Mrs. Tinlin's doctors was a cause of her injuries, so this instruction should not be given.  Second, this instruction introduces confusion, as the immediately preceding, proposed and agreed-upon instruction on causation (itself drawn from WI JI-CIV 1500 and given in *Hyde* as No. 16) sufficiently instructs the jury on multiple or joint causation. In particular, the last paragraph is confusing in that it presents "the natural progression of the plaintiff's injury or condition" as an alternative cause of Mrs. Tinlin's condition, rather than her filter.  References to the plaintiff's "present condition of health" are also confusing, and do not fit the facts of this case.  Fourth, the reference to burden of proof for this instruction introduces further confusion; the previous instruction concerning burden of proof referenced Plaintiffs' burden of proof for "claims."

**Defendants' Response**: For the reasons set forth in the pre-trial order, and in Bard's trial brief, Wisconsin law requires that the jury allocate fault on the verdict form to all parties whose negligence may have contributed to the Plaintiffs' injuries.  This instruction is the Wisconsin pattern instruction regarding contentions of medical negligence, and will assist the jury in determining whether fault should be allocated to one or more of the Plaintiff's treating physicians.

## PLAINTIFFS' PROPOSED INSTRUCTION RE:
## <u>MEDICAL NEGLIGENCE</u>[1]

Defendants contend that Mrs. Tinlin's injuries were caused, in whole or in part, by the negligence of her doctors.  The burden is on the defendants to prove that one or more of the doctors were negligent.

In treating Mrs. Tinlin's injuries and condition, the doctors were required to use the degree of care, skill, and judgment which reasonable doctors who are specialists who practice the specialties which the doctors practice would exercise in the same or similar circumstances, having due regard for the state of medical science at the time Mrs. Tinlin was treated.  A doctor who fails to conform to this standard is negligent.

A doctor is not negligent, however, for failing to use the highest degree of care, skill and judgment or solely because a bad result may have followed his care and treatment. The standard you must apply in determining if a doctor was negligent is whether that doctor failed to use the degree of care, skill, and judgment which reasonable  specialists would exercise given the state of medical knowledge at the time of the treatment in issue.

You have heard testimony during this trial from doctors who have testified as expert witnesses. The reason for this is because the degree of care, skill, and judgment which a reasonable doctor would exercise is not a matter within the common knowledge of laypersons. This standard is within the special knowledge of experts in the field of medicine and can only be established by the testimony of experts. You, therefore, may not speculate or guess what the standard of care, skill and judgment is in deciding this case but rather must attempt to determine it from the expert testimony that you heard during this trial. In determining the weight to be given an opinion, you should consider the qualifications and credibility of the expert and whether reasons for the opinion are based on facts in the case. You are not bound by any expert's opinion.

A person's negligence is a cause of a plaintiff's injury or condition if the negligence was a substantial factor in producing the present condition of the plaintiff's health. This question does not ask about "the cause" but rather "a cause." The reason for this is that there can be more than one cause of an injury or a condition.

---

[1] For the reasons stated in their objection to Defendants' proposed medical negligence instruction, Plaintiffs do not believe this instruction should be given because Bard  cannot meet the elements of medical negligence. If the Court determines that such an instruction is necessary, Plaintiffs propose using this simplified version of WIS JI-CIV 1023.

If you conclude from the evidence that Mrs. Tinlin's injuries were caused jointly by the negligence of one or more doctor's negligence, then you should find that the doctor's negligence was a cause of the plaintiff's injuries.

WIS-JI-CIVIL 1023

**<u>Defendants' Objection:</u>** The Defendants believe that the pattern instruction should be given as authorized in Wisconsin, and not in a form edited by the Plaintiffs.

## DEFENDANTS' PROPOSED INSTRUCTION ON
## ALLOCATION OF NEGLIGENCE

If you believe that plaintiffs are entitled to recover and you further find that that the damages sustained by Mrs. Tinlin were caused by persons who are not parties to this action, you must consider the negligence of all parties to the transaction, whether or not they are parties, and allocate a percentage to each entity or person you determine was negligent.  There will be a place on the verdict form for you to allocate the percentage of negligence to Dr. Riebe and/or Dr. Haller.

See *Connar v. West Shore Equipment of Milwaukee*, 227 N.W.2d 660, 662 (Wis. 1975) ("It is established without doubt that, when apportioning negligence, a jury must have the opportunity to consider the negligence of all parties to the transaction, whether or not they be parties to the lawsuit and whether or not they can be liable to the plaintiff or to the other tort-feasors either by operation of law or because of a prior release."); *see also Johnson v. Heintz*, 243 N.W.2d 815, 826-827 (Wis. 1976) ("[A] special verdict embracing all of the actors [including nonparties] could have been requested."); *Martz v. Trecker*, 535 N.W.2d 57, 61 (Wis. Ct. App. 1995) (nonparty "properly included" in the special verdict because "it gave the jury the opportunity to consider the negligence of all parties for comparison purposes").

The *Connar* standard is "applicable to any tort action," including cases involving medical negligence so long as expert testimony is provided on breach of the standard of care. *See Zintek v. Perchik*, 471 N.W.2d 522, 528 (Wis. Ct. App. 1991)

**Plaintiffs' objection:** As set forth in Plaintiffs' Motion *In Limine* No. 1, because Mrs. Tinlin "exercised good faith and due care in the selection of [her] treating physician[s] . . . under the *Selleck* rule the defendants are liable for the full amount of damages caused by the aggravation." *Fouse v. Persons*, 259 N.W.2d 92, 95 (Wis. 1977). Bard has not alleged that Mrs. Tinlin failed to exercise good faith and due care in selecting her treating physicians, so any alleged negligence by the doctors is irrelevant, and the jury should not be requested to allocate fault or damages. Instead, the jury must decide whether Defendants' actions were a substantial factor in causing the injuries alleged. The agreed instruction on causation, drawn from WIS JI-CIV 1500 and given as No. 16 in *Hyde*, accurately reflects the jury's responsibility and is sufficient.  Moreover, this instruction should only be given if Defendants can meet the elements of negligence on the part of Mrs. Tinlin's doctors, and they cannot show that any purported negligence was the cause of Mrs. Tinlin's injuries.

**Defendants' Response**:  As the Defendants have set forth in a trial brief regarding these issues, the Plaintiffs are improperly conflating the "*Selleck* rule", which is inapplicable here, with the allocation of fault permitted under Wisconsin law.  The Plaintiffs' suggestion that the general causation standard is sufficient completely

overlooks the fact that Wisconsin law clearly authorizes an allocation of fault on the verdict form when multiple actors have been negligent.  Bard has provided the Court with a survey of the applicable Wisconsin law on this issue in a trial brief being filed on April 12, 2019.

## THE PARTIES' PROPOSED INSTRUCTION RE: DAMAGES

It is the duty of the court to instruct you about the measure of damages. By instructing you on damages, I do not mean to suggest for which party your verdict should be rendered.

If you find for Mrs. Tinlin on any claim, the verdict form will require you to find the amount of damages that will reasonably compensate her for her injuries or losses. In considering the amount to be awarded as damages, if any, the burden of proof rests on Mrs. Tinlin to satisfy you by the greater weight of the credible evidence, to a reasonable certainty, that she sustained damages with respect to the claim and the amount of the damages sustained.  As you have seen, instruction 12 provides a further explanation of this burden of proof.

If you find for Mrs. Tinlin on one or both of her claims, you must determine her compensatory damages.  Your answer to this question should be the amount of money that will fairly and reasonably compensate Mrs. Tinlin for the injuries she has suffered to date and is reasonably certain to suffer in the future as a result of the defective or negligent design of the Bard IVC filter.

Personal injuries include pain and suffering, which means any physical pain, worry, distress, embarrassment, and humiliation which Mrs. Tinlin has suffered in the past and is reasonably certain to suffer in the future.  You should consider the extent to which Mrs. Tinlin's injuries have impaired and will impair her ability to enjoy the normal activities, pleasures, and benefits of life.  Also consider the nature of her injuries, the effect produced by her injuries in the past, and the effect the injuries are reasonably certain to produce in the future, bearing in mind her age, prior mental and physical condition, and the probable duration of her life.

Determining damages for pain and suffering cannot always be made exactly or with mathematical precision.  You should award as damages amounts which will fairly compensate Mrs. Tinlin for her injuries.

Personal injuries can also include health care and treatment expenses.  If you are satisfied that Mrs. Tinlin will require health care and treatment in the future for injuries sustained as a result of the negligent or defective design, include in your damages award the sum of money that will reasonably and necessarily be expended in the future for that care and treatment.

The amount of damages is for you to determine from the evidence.  You should not be affected by sympathy or resentment.  Nor should you make any deductions because of a doubt in your minds as to the liability of Bard.  What the attorneys ask for in their arguments is not a measure of damages.  The opinion or conclusions of counsel as to

what damages should be awarded should not influence you unless it is sustained by the evidence.   Examine the evidence – carefully and dispassionately – and determine the amount of damages from the evidence in the case.

Final Instruction No. 17 from <u>Hyde</u>

## PLAINTIFFS' PROPOSED INSTRUCTION RE: PERSONAL INJURIES: PAST HEALTH CARE EXPENSES

(Question _____) (Subdivision _____ of question _____) asks what sum of money will fairly and reasonably compensate (plaintiff) for past health care services.

You will insert as your answer to this (question) (subdivision) the sum of money you find has reasonably and necessarily been incurred from the date of the accident up to this time for the care of the injuries sustained by (plaintiff) as a result of the accident.

Billing statements (which may include invoices) for health care services (plaintiff) has received since the accident have been admitted into evidence.

**[NOTE: Use the following paragraph if no evidence has been received disputing the value, reasonableness, or necessity of health care services provided to plaintiff:** These billing statements establish the value, reasonableness, and necessity of health care services provided to (plaintiff). You must still determine whether the health care services were provided for the injuries sustained by (plaintiff) as a result of the accident.]

**[NOTE: Use the following paragraph if evidence has been received disputing the value, reasonableness, or necessity of health care services provided to plaintiff:** The party challenging the (value of) (reasonableness and necessity of) (plaintiff)'s past health care services has the burden to prove they were not (reasonable in amount) (reasonably and necessarily provided to care for (plaintiff)). Unless you are satisfied by the greater weight of the credible evidence, to a reasonable certainty, that the billing statements (were not reasonable in amount) (do not reflect health care services reasonably and necessarily provided to care for (plaintiff)), you must find (the billing statements reflect the reasonable value of the health care services) (the health care services reflected in the billing statements were reasonably and necessarily provided to care for (plaintiff)). You must still determine whether the health care services were provided for the injuries sustained by (plaintiff) as a result of the accident.]

WIS JI-CIV 1756

**Defendants' Objection:** The defendants' object to this Instruction because the subject matter is already covered by Final Instruction No. 17 from Hyde (based on WIS-JI-CIVIL 1750.2, which has been proposed jointly by the parties. That Pattern Instruction is a much more efficient and concise explanation of damages than the multiple separate instructions proposed by the plaintiffs.

**Plaintiffs' Response:** While Final Instruction No. 17 from Hyde provides an overview of the concept and different types of damages, it is helpful to the jury to break out elements of damages into inquiries. Moreover, using this instruction is in accord with recommendations of the Committee on Civil Jury Instructions. "The Committee does not

generally recommend the use of a single verdict question to determine damages where the plaintiff seeks to recover different types of damages for personal injuries. *See* Comment to 1750.2 in Wisconsin Jury Instructions (2018).

## PLAINTIFFS' PROPOSED INSTRUCTION RE: PERSONAL INJURIES: FUTURE HEALTH CARE EXPENSES

(Question _____) (Subdivision _____ of question _____) asks what sum of money will fairly and reasonably compensate plaintiff for future health care services. If you are satisfied that plaintiff will require health care services in the future for injuries sustained as a result of (e.g. the accident), you will insert as your answer to this question (subdivision) the sum of money you find will reasonably and necessarily be incurred in the future to care for (plaintiff).

WIS JI-CIV 1758

**Defendants' Objection:** The defendants' object to this Instruction because the subject matter is already covered by Final Instruction No. 17 from <u>Hyde</u> (based on WIS-JI-CIVIL 1750.2, which has been proposed jointly by the parties. That Pattern Instruction is a much more efficient and concise explanation of damages than the multiple separate instructions proposed by the plaintiffs. Moreover, the Plaintiffs' real complaint with this instruction and the following ones (which the defendants believe is likewise unfounded) focuses on the form of the verdict rather than the jury instructions.

**Plaintiffs' Response:** While Final Instruction No. 17 from <u>Hyde</u> provides an overview of the concept and different types of damages, it is helpful to the jury to break out elements of damages into separate inquiries reflected in this and its surrounding instructions. Moreover, using this instruction is in accord with recommendations of the Committee on Civil Jury Instructions. "The Committee does not generally recommend the use of a single verdict question to determine damages where the plaintiff seeks to recover different types of damages for personal injuries. *See* Comment to 1750.2 in Wisconsin Jury Instructions (2018).

## PLAINTIFFS' PROPOSED INSTRUCTION RE: PERSONAL INJURIES: PAST PAIN, SUFFERING, AND DISABILITY (DISFIGUREMENT)

(Question _____) (Subdivision _____ of Question _____) asks what sum of money will fairly and reasonably compensate (plaintiff) for past pain, suffering, and disability (disfigurement).

Your answer to this (question) (subdivision) should be the amount of money that will fairly and reasonably compensate (plaintiff) for the pain, suffering, and disability (disfigurement) (she) has suffered from the date of the accident up to this time as a result of the accident.

Pain, suffering, and disability (disfigurement) includes any physical pain, humiliation, embarrassment, worry and distress which (plaintiff) has suffered in the past. You should consider to what extent (his) (her) injuries impaired (her) ability to enjoy the normal activities, pleasures, and benefits of life.

WIS JI-CIV 1766

**Defendants' Objection:** The defendants' object to this Instruction because the subject matter is already covered by Final Instruction No. 17 from <u>Hyde</u> (based on WIS-JI-CIVIL 1750.2, which has been proposed jointly by the parties. That Pattern Instruction is a much more efficient and concise explanation of damages than the multiple separate instructions proposed by the plaintiffs.

**Plaintiffs' Response:** While Final Instruction No. 17 from <u>Hyde</u> provides an overview of the concept and different types of damages, it is helpful to the jury to break out elements of damages into separate inquiries reflected in this and its surrounding instructions. Moreover, using this instruction is in accord with recommendations of the Committee on Civil Jury Instructions. "The Committee does not generally recommend the use of a single verdict question to determine damages where the plaintiff seeks to recover different types of damages for personal injuries. *See* Comment to 1750.2 in Wisconsin Jury Instructions (2018).

## PLAINTIFFS' PROPOSED INSTRUCTION RE: PERSONAL INJURIES: FUTURE PAIN, SUFFERING, AND DISABILITY (DISFIGUREMENT)

(Question _____) (Subdivision _____ of question _____) asks what sum of money will fairly and reasonably compensate (plaintiff) for future pain, suffering, (and) disability, (and disfigurement).

If you are satisfied that (plaintiff) will endure pain, suffering, (and) disability, (and disfigurement) in the future as a result of the accident, you will insert as your answer to this (question) (subdivision) the sum of money you find will fairly and reasonably compensate (plaintiff) for this future pain, suffering, (and) disability, (and disfigurement).

Pain, suffering, (and) disability, (and disfigurement) includes:

- physical pain

- worry

- distress

- embarrassment

- humiliation

In answering this damage question, you should consider the following factors:

- the extent (plaintiff)'s injuries have impaired and will impair (his) (her) ability to enjoy the normal activities, pleasures, and benefits of life;

- the nature of (plaintiff)'s injuries;

- the effect the injuries are reasonably certain to produce in the future bearing in mind (plaintiff)'s age, prior mental and physical condition, and the probable duration of (his) (her) life.

WIS JI-CIV 1766

**Defendants' Objection:** The defendants' object to this Instruction because the subject matter is already covered by Final Instruction No. 17 from <u>Hyde</u> (based on WIS-JI-CIVIL 1750.2, which has been proposed jointly by the parties. That Pattern Instruction is a much more efficient and concise explanation of damages than the multiple separate instructions proposed by the plaintiffs.

**Plaintiffs' Response:** While Final Instruction No. 17 from <u>Hyde</u> provides an overview of the concept and different types of damages, it is helpful to the jury to break out elements of damages into separate inquiries reflected in this and its surrounding

instructions.  Moreover, using this instruction is in accord with recommendations of the Committee on Civil Jury Instructions.  "The Committee does not generally recommend the use of a single verdict question to determine damages where the plaintiff seeks to recover different types of damages for personal injuries.  *See* Comment to 1750.2 in Wisconsin Jury Instructions (2018).

## <u>PLAINTIFFS' PROPOSED INSTRUCTION RE: FURTHER INJURY</u><br><u>IN SUBSEQUENT EVENT</u>[2]

      In answering question(s) _____, which relate(s) to the amount of money which will reasonably compensate Mrs. Tinlin for injuries sustained in the (occurrence) (accident) on____ , you may also consider that Mrs. Tinlin later sustained another injury on __ .

      If the earlier injury was a substantial factor in causing the later injury, then you may include in your answer to question(s) _____ reasonable compensation for the later injury.

WIS JI-CIV 1725

**Defendants' Objection:** The defendants' object to this Instruction because the subject matter is already covered by Final Instruction No. 17 from <u>Hyde</u> (based on WIS-JI-CIVIL 1750.2, which has been proposed jointly by the parties.  That Pattern Instruction is a much more efficient and concise explanation of damages than the multiple separate instructions proposed by the plaintiffs.

**Plaintiffs' Response:** Plaintiffs disagree that WIS JI-CIV 1750.2 covers this instruction, or the concept of a further injury from a subsequent result.

---

[2] Plaintiffs propose that this instruction is read if Bard is permitted to argue that Mrs. Tinlin's subsequent procedures were avoidable.  *See* Plaintiffs' Motion *in Limine*  No. 1.

## THE PARTIES' PROPOSED INSTRUCTION RE:  PRESENT VALUE

In determining the amount of damages for medical expenses incurred by Mrs. Tinlin in the future, if any, you must determine the present worth in dollars of the future damages.

A lump sum of money received today may be worth more than the same sum paid in installments over a period of months or years.  This is because a sum received today can be invested and earn money at current interest rates.  By making a reduction for the earning powers of money, your answer will reflect the present value in dollars of an award of future damages.

This instruction, which asks you to reduce future damages to present value, does not apply to that portion of future damages which represents future pain and suffering.

Final Instruction No. 18 from <u>Hyde</u>

## <u>PLAINTIFFS' PROPOSED PLAINTIFFS' PROPOSED INSTRUCTION RE: DAMAGES: EFFECTS OF INFLATION</u>

In computing the amount of future economic damages, you may take into account economic conditions, present and future, and the effects of inflation.

WIS JI-CIV 1797

## **THE PARTIES' PROPOSED INSTRUCTION RE: LOSS OF CONSORTIUM**

Plaintiff James Tinlin asserts a claim for loss of consortium. This claim is derivative of the strict liability design defect and negligent design claims asserted by Plaintiff Debra Tinlin. You therefore may award loss of consortium damages to Mr. Tinlin only if you find Bard liable to Mrs. Tinlin on one or both of her claims.

"Consortium" involves the love and affection, the companionship and society, the privileges of sexual relations, the comfort, aid, advice and solace, the rendering of material services, the right of support, and any other elements that normally arise in a close, intimate, and harmonious marriage relationship. A wrongful invasion, impairment, or deprivation of any of these rights, resulting from a disabling injury to a spouse, is a legal loss and a basis for damages to the other spouse harmed or deprived.

In evaluating this claim, you should consider the nature, form, and quality of the relationship that existed between the spouses up to the time of the injury. Based on that relationship, determine what sum of money will represent fair and reasonable compensation for any loss of consortium that was sustained by Mr. Tinlin as a result of the injury.

If you find that the loss will continue in the future, include an amount of damages for the period you are convinced it will continue to exist.

Compensation for loss of consortium, except as it relates to material services, is not measured by any rule of market value. Instead, it is measured on the basis of what you find is fair and reasonable compensation for the loss sustained by the deprived spouse. Compensation for material services is to be measured by what it would reasonably cost in the market for like services.

Final Instruction No. 19 from <u>Hyde</u>

**THE PARTIES' PROPOSED INSTRUCTION RE:  LIFE EXPECTANCY**

In determining future damages as a result of Plaintiffs' injuries or losses, you may consider the fact that at this time Ms. Tinlin is 54 years of age and has a life expectancy of 29.61 more years.

Testimony based on mortality tables was received in evidence as an aid in determining such expectancy.  That evidence is not, however, conclusive or binding upon you as to Mrs. Tinlin's actual or probable expectancy of life.  Mortality tables are based upon averages, and there is no certainty that any person will live the average duration of life rather than a longer or shorter period.  To determine the probable length of life of Mrs. Tinlin, you should consider all of the facts and circumstances established by the credible evidence bearing upon that subject.

Final Instruction No. 20 from <u>Hyde</u>

## **THE PARTIES' PROPOSED INSTRUCTION RE:  TAXATION**

In determining the amount of compensatory damages, if any, you must not include in the award, or add to it, any sum to compensate Plaintiffs for state or federal income taxes, since damages received as an award for personal injuries or loss of consortium are not subject to income taxes. You may not subtract from, or exclude from, your award of compensatory damages any amount because Plaintiffs are not required to pay income taxes.

Final Instruction No. 21 from <u>Hyde</u>

## DEFENDANTS' PROPOSED INSTRUCTION RE:  PUNITIVE DAMAGES

Punitive damages may be awarded, in addition to compensatory damages, if you find that Bard acted maliciously toward Plaintiffs or in an intentional disregard of the rights of Plaintiffs.

A person acts maliciously when the acts are the result of hatred, ill will, desire for revenge, or inflicted under circumstances where insult or injury is intended.

A person acts in an intentional disregard of the rights of a plaintiff if the person acts with the purpose to disregard the plaintiff's rights, or is aware that his or her acts are substantially certain to result in the plaintiff's rights being disregarded.  Before you can find an intentional disregard of the rights of the plaintiff, you must be satisfied that the defendant's act or course of conduct was:

1.  deliberate;

2.  an actual disregard of the plaintiff's right to safety, health, or life, a property right, or some other right; and

3.  sufficiently aggravated to warrant punishment by punitive damages.

A defendant's conduct giving rise to punitive damages need not be directed at the plaintiff seeking punitive damages.  There is no requirement that the defendant intended to cause harm or injury to the plaintiff.

The purpose of punitive damages is to punish a wrongdoer or deter the wrongdoer and others from engaging in similar conduct in the future.  Punitive damages are not awarded to compensate the plaintiff for any loss he or she has sustained.  A plaintiff is not entitled to punitive damages as a matter of right.  Even if you find that the defendant acted maliciously or in an intentional disregard of the plaintiff's rights, you do not have to award punitive damages.  Punitive damages may be awarded or withheld at your discretion.

Punitive damages may not be awarded to punish a defendant for harming others.  Evidence of actual harm to nonparties may help to show that the defendant's conduct that harmed the plaintiff also posed a substantial risk to the general public, and so was particularly reprehensible; however, punitive damages may not be used to punish the defendant directly for harm to those nonparties.

Final Instruction No. 22 from Hyde

## PLAINTIFFS' INSTRUCTION RE: PUNITIVE DAMAGES

Punitive damages may be awarded, in addition to compensatory damages, if you find that Bard acted maliciously toward Plaintiffs or in an intentional disregard of the rights of Plaintiffs.

A person acts maliciously when the acts are the result of hatred, ill will, desire for revenge, or inflicted under circumstances where insult or injury is intended.

A person acts in an intentional disregard of the rights of a plaintiff if the person acts with the purpose to disregard the plaintiff's rights, or is aware that his or her acts are substantially certain to result in the plaintiff's rights being disregarded.  Before you can find an intentional disregard of the rights of the plaintiff, you must be satisfied that the defendant's act or course of conduct was:

1. deliberate;

2. an actual disregard of the plaintiff's right to safety, health, or life, a property right, or some other right; and

3. sufficiently aggravated to warrant punishment by punitive damages.

A defendant's conduct giving rise to punitive damages need not be directed at the plaintiff seeking punitive damages.  There is no requirement that the defendant intended to cause harm or injury to the plaintiff.

The purpose of punitive damages is to punish a wrongdoer or deter the wrongdoer and others from engaging in similar conduct in the future.  Punitive damages are not awarded to compensate the plaintiff for any loss he or she has sustained.  A plaintiff is not entitled to punitive damages as a matter of right.  Even if you find that the defendant acted maliciously or in an intentional disregard of the plaintiff's rights, you do not have to award punitive damages.  Punitive damages may be awarded or withheld at your discretion.

If you determine that punitive damages should be awarded, you may then award such sum as will accomplish the purpose of punishing or deterring wrongful conduct. Factors you should consider include:

1. the seriousness of the hazard to the public;

2. the profitability of the misconduct

3. the attitude and conduct on discovery of the misconduct;

4. the degree of the manufacturer's awareness of the hazard and of its excessiveness;

5. the employees involved in causing or concealing the misconduct;

6. the duration of both the improper behavior and its concealment;

7. the financial condition of the manufacturer and the probable effect on the manufacturer of a particular judgment; and

8. the total punishment the manufacturer will probably receive from other sources.

*Hyde* Instruction No. 22 (modified)

**Plaintiffs' Position:** Plaintiffs seek to strike language that Bard pressed to be included in the *Hyde* case based on facts that are not applicable here.  The *Hyde* case involved a later generation filter, and Bard argued that the proposed language is "particularly needed in a case, like the present one, where the Plaintiffs seek to present a large volume of evidence concerning earlier generation products and unrelated injuries allegedly caused by those products." Doc. No. 12438, at 66.  Unlike *Hyde*, this case involves a Recovery filter, and Bard's rationale for inclusion of this language is not applicable.  Plaintiffs' additional proposed language is drawn directly from WI JI-CIV 1707.2.

**Defendants' Response:** The statement omitted by the plaintiffs is set forth in the comments to Wis JI-CIVIL 1702, and those comments specifically suggest utilizing this language when appropriate in a particular case. Bard submits this accurate statement of Wisconsin law is needed in this case where the Plaintiffs will seek to present a large volume of evidence concerning unrelated injuries allegedly caused by the Recovery Filter, as well as issues regarding later generations of filters.  The defendants also object to the plaintiffs' proposed instruction because it includes the part of the pattern instruction related to the amount of punitive damages.  That part of the instruction is more appropriately suited for the second phase of the trial (if that phase occurs).  In **Hyde**, the Court in fact reserved that aspect of the instruction for any second phase.

## THE DEFENDANTS' PROPOSED INSTRUCTION RE:
## <u>PUNITIVE DAMAGES BURDEN</u>

The burden of proof for punitive damages rests upon Plaintiffs. The burden is to convince you by evidence that is clear, satisfactory, and convincing, to a reasonable certainty, that an award of punitive damages is warranted.

Clear, satisfactory, and convincing evidence is evidence which when weighed against that opposed to it clearly has more convincing power. It is evidence which satisfies and convinces you that punitive damages should be awarded because of its greater weight and clear convincing power.

The evidence required to meet this burden of proof must be more convincing than merely the greater weight of the credible evidence, but may be less than beyond a reasonable doubt.

In the verdict form, you will be asked to specify whether Plaintiffs are entitled to recover punitive damages, but you will not yet be asked to determine an amount of punitive damages. If you decide that Plaintiffs should be awarded punitive damages, then you will receive some brief additional instructions, evidence, and argument before setting the amount.

There can be no recovery of punitive damages in this case unless there is first a recovery by Plaintiffs of compensatory damages.

Final Instruction No. 23 from <u>Hyde</u> (deleting reference to "middle burden")

**<u>Plaintiffs' Objection</u>**: The following language, taken from WIS JI-CIV 205, should be read, as it was in *Hyde*, at the start of the third paragraph: "This burden of proof is known as the 'middle burden.'"

**<u>Defendants' Response</u>**: As they stated in the previous trial, Bard believes the reference to a "middle burden" is unduly confusing.

## THE PARTIES' PROPOSED INSTRUCTION RE:  DELIBERATIONS

Before you begin your deliberations, please elect one member of the jury as your presiding juror.  The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not be unwilling to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Final Instruction No. 24 from <u>Hyde</u>

## **THE PARTIES' PROPOSED INSTRUCTION RE:  DELIBERATIONS**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other form of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contract to the court.

> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, the law, or the people involved – including the parties, the witnesses or the lawyers – until you have been excused as jurors.  If you happen to reach or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

As I've explained before, these rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start

over.   If any juror is exposed to any outside information, please notify the court immediately.

Final Instruction No. 25 from <u>Hyde</u>

**THE PARTIES' PROPOSED INSTRUCTION RE: ACCESS TO EXHIBITS**

The exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room.  A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment, how to locate and view the exhibits on the computer, and how to print the exhibits.  You will also be provided with a paper list of all exhibits received in evidence.  You may request a paper copy of any exhibit received in evidence by sending a note through the bailiff.  If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the bailiff, signed by your presiding juror or by one or more members of the jury.  Do not refer to or discuss any exhibit you are attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the bailiff present for the sole purpose of assuring that the only matter that is discussed is the technical problem.  When the court technician or any non-juror is in the jury room, the jury shall not deliberate.  No juror may say anything to the court technician or any non-juror other than to describe the technical problem or to seek information about operation of the equipment.  Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable you to view the exhibits received in evidence in this case.  You may not use the computer for any other purpose.  At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material.  Do not attempt to alter the computer to obtain access to such materials.  If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials.  Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

Final Instruction No. 26 from Hyde

## THE PARTIES' PROPOSED INSTRUCTION RE:
## <u>COMMUNICATIONS WITH COURT</u>

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in the open court with the parties present.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Please remember that you are not to tell anyone – including the court – how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note you may send out to the Court.

Final Instruction No. 27 from <u>Hyde</u>

## THE PARTIES' PROPOSED INSTRUCTION RE:  VERDICT FORM

As noted, a verdict form has been prepared for you.  [*Explain verdict form as needed*].  After you have reached unanimous agreement on a verdict, the presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the bailiff that you are ready to return to the courtroom.

Final Instruction No. 28 from Hyde

## THE PARTIES' PROPOSED INSTRUCTION A RE: AMOUNT OF PUNITIVE DAMAGES

Members of the jury, you have decided that Plaintiffs should be awarded punitive damages.  In order to determine the amount of punitive damages, the parties have presented evidence and will now present brief arguments.  In considering the amount of punitive damages that will accomplish the purpose of punishing or deterring wrongful conduct, you may consider the following factors:

1. the seriousness of the hazard to the public;

2. the profitability of the misconduct;

3. the attitude and conduct on discovery of the misconduct;

4. the degree of the manufacturer's awareness of the hazard and of its excessiveness;

5. the employees involved in causing or concealing the misconduct;

6. the duration of both the improper behavior and its concealment;

7. the financial condition of the manufacturer and the probable effect on the manufacturer of a particular judgment; and

8. the total punishment the manufacturer will probably receive from other sources.

Final Instruction "A" from Hyde