Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California  92660
949-812-5771

Mark S. O'Connor (011029) – moconnor@beusgilbert.com
BEUS GILBERT, PLLC
701 N.44th St.
Phoenix AZ 85008
480-429-3019
*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC<br><br>(Oral Argument Requested)<br><br>**PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* NO. 4 REGARDING A PATIENT AT DR. MUEHRCKE'S HOSPITAL**<br><br>(Assigned to the Honorable David G. Campbell)<br><br>**(Tinlin Bellwether Case)** |

Plaintiffs oppose Defendants' Motion *in Limine* No. 4 to exclude evidence about a recent patient of Dr. Muehrcke who suffered cardiac tamponade because of a Bard filter strut in her heart. Bard's improper disclosure argument fails for three reasons. *First*, the facts and opinions at issue were properly disclosed. Dr. Muehrcke already disclosed his opinions in his report, including the opinion that "pulmonary fragments are known to cause bleeding, hemoptysis, pneumothorax, and death. . . . an additional strut can embolize at any time to her heart causing her to suffer cardiac tamponade and multi-organ failure again." Exhibit A, Muehrcke Expert Report, p. 9. Dr. Muehrcke relies on his experience as a doctor as the basis for these opinions. The specific incident Bard seeks to exclude regarding Dr. Muehrcke's recent patient was discussed at a deposition in a related set of cases, along with other similar incidents[1]. The later-occurring incident did not change his opinions; it only served to further support his already disclosed opinions. Bard's counsel had full and ample time to inquire about the set of facts regarding this particular patient. That Bard's counsel did not elicit further details at Dr. Muehrcke's deposition in this case should not bar Dr. Muehrcke from explaining how all of his experience, including recent experiences, provide support for his opinions about the risks of Recovery filter facture.[2]

---

[1] For example, Dr. Muehrcke testified about the following relevant experience: "Q. What data have you reviewed showing that the filter strut that has been in the heart for ten years that has caused no problems can cause a problem in the future? . . . Can [you cite] any actual data that any foreign object in the heart that's been there for more than ten years that has caused no problems will cause a problem in the future?" Dr. Muehrcke responded: "Well, just, . . . my clinical experience as a physician, my education, and talking to other cardiac surgeons lead me to believe that . . . like the one we talked about earlier in the deposition . . . years later after a Bard filter was placed where it can poke through the heart and cause tamponade. I think it's a ticking time bomb. . . . . clearly this filter is unstable. It's already disintegrated. There's no reason why it's not going to fall apart further and have further fragments go to the heart. The filter is tilted 20 degrees. It's not functional. . . . I think that the filter has failed in a catastrophic fashion . . . And I think it's dangerous to have a fragment in the heart which can perforate and kill a person at any time with any heartbeat. And it can happen again because the filter is still in there." Exhibit B, Muehrcke McMahill Dep. 98:7-99:23.

[2] Bard's contention that Plaintiff should have produced documents related to this death in response to the deposition notice is without merit. There are no such documents responsive to the discovery request, no discoverable documents within Plaintiff's custody or control related to this incident, considering that medical records of an unrelated party are protected under HIPAA. The facts and opinions Dr. Muehrcke provided are based on

- 1 -

*Second*, Dr. Muehrcke should be allowed to explain these facts to rebut any Bard contention that patients do not die from fractured Bard filters. Should Bard make any such contention, Dr. Muehrcke's testimony would directly contradict it with evidence of the risks and consequences of filter fracture.

*Third*, the facts and opinions are proper under Rule 702. The evidence Bard seeks to exclude—Dr. Muehrcke's experience with a patient who died from a Bard filter fracture that migrated to her heart—is part of his experience; they are facts that support his opinions, not conclusions about this case. Here, Dr. Muehrcke's principle is that a metal fragment can cause bleeding around the heart and can disrupt the functioning of that organ, which is essential to life. His method "is the application of extensive experience to analyze" the clinical data to treat patients. *See* Rule 702 Committee Notes to 2000 Amendment (indicating similar principle and method warrants admission of opinion "when a law enforcement agent testifies regarding the use of code words in a drug transaction"); *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006) (reversing exclusion of physician experience expert evidence under Rules 702 and 403 because the medical knowledge at issue was reliable and highly relevant). To the extent Bard wishes to argue at trial that there is not enough information to make any conclusions about the patient here, Bard can cross examine Dr. Muehrcke on his recollection and about the patient's medical history, which Dr. Muehrcke readily admitted was complicated. "A trial court should admit medical expert testimony if physicians would accept it as useful and reliable." *Id*.

With respect to Bard's Rule 403 argument, the new facts disclosed by Dr. Muehrcke are relevant and admissible. Rule 403 requires balancing probative value against unfair prejudice, but Bard has cited no cases for how this balancing should occur. To the contrary, Bard intends to argue that filters fractures do not cause harm, while precluding Dr. Muehrcke from offering facts about a relevant counter-example. *See Forrest v. Beloit Corp.*, 424 F.3d 344, 355-360 (3d Cir. 2005) (noting unfair prejudice, confusion, and misleading

---

his experience, not the underlying medical records. And Bard knew about this experience well before Dr. Muehrcke's deposition in this case, and could have conducted "a full exploration of the factual underpinnings of this extraordinary claim" at the deposition. Bard Mot. at 2.

- 2 -

nature of testimony regarding the absence of prior accidents); *Klonowski v. Int'l Armament Corp.*, 17 F.3d 992, 996 (7th Cir. 1994) (noting under Wisconsin law, negative evidence "generally held inadmissible"). It would be prejudicial to Plaintiffs for Dr. Muehrcke not to be able to respond that "filter struts in the heart can cause death" and provide fact-based support. Bard Mot. at 3. Bard certainly can challenge through cross examination any similarities and differences between that patient and this case as well as Dr. Muehrcke's perception, memory, narration, and sincerity on this issue.

Bard has not specified any unfair prejudice other than the bald assertion that the evidence is "unfairly prejudicial facts or opinions" and "misleading." Bard Mot. at 3.[3] Far from being "powerfully misleading" (Bard. Mot. at 3), the facts at issue specifically counter Bard's blanket assertion that no one has died from a filter fracture. *C.f. Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991) (evidence of prior accident admissible to impeach claim that product is "generally safe" even with incident would be excluded if used to prove negligence, design defect, or notice) (citing *Hale v. Firestone Tire & Rubber Co.*, 820 F.2d 928, 935 (8th Cir. 1987) (prior accident evidence admissible to rebut contention that safety cage would protect people from injury)). Specific evidence of a patient being injured by a Bard filter rebuts Bard's claims that filters save lives, that there have been very few failures or deaths, that fractured fragments are harmless, or that Bard employees' relatives used Bard filters. The exclusion of such evidence would be far more unfairly prejudicial to Plaintiffs.

For the above stated reasons, Plaintiffs respectfully request that Defendant's Motion *In Limine* No. 4 be denied.

---

[3] Even in the tricky context of criminal cases, extrinsic acts were "not of such a heinous nature that they were likely to incite the jury to an irrational decision," thus "the trial court did not abuse its discretion in admitting the evidence of extrinsic offenses." *U.S. v. Hewes*, 729 F.2d 1302, 1315 (11th Cir. 1984). Rather, a limiting instruction was appropriate to cure any potential prejudice. *Id.* To the extent there is any danger of prejudice here, a limiting instruction would be more appropriate than exclusion.

RESPECTFULLY SUBMITTED this 12th day of April, 2019.

        BEUS GILBERT, PLLC.


By: */s/ Mark S. O'Connor*
    Mark S. O'Connor
    BEUS GILBERT, PLLC
    701 N.44th St.
    Phoenix AZ 85008
    480-429-3019

    LOPEZ McHUGH LLP
    Ramon Rossi Lopez (CA Bar No. 86361)
    (admitted *pro hac vice*)
    100 Bayview Circle, Suite 5600
    Newport Beach, California 92660

    *Co-Lead/Liaison Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of April, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/ Jessica Gallentine*