1
2
3
4
5
6
7
8                 **IN THE UNITED STATES DISTRICT COURT**

9                     **FOR THE DISTRICT OF ARIZONA**

10

11   | IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC |

12

13   This Document Relates to:                          **PROPOSED FINAL PRETRIAL ORDER**

14   Debra Tinlin, et al. v. C. R. Bard, Inc., et al.   (Assigned to the Honorable David G. Campbell)
     CV-16-00263-PHX-DGC

15

16

17          The following is the joint Proposed Final Pretrial Order to be considered at the

18   Final Pretrial Conference set for April 29, 2019.

19          **A.      TRIAL COUNSEL FOR THE PARTIES**

20          Include mailing addresses, office phone numbers, fax numbers, and e mail

21   addresses.

22          Plaintiffs:

23          Ramon Rossi Lopez
            (admitted *pro hac vice*)
24          Josh Mankoff
            (admitted *pro hac vice*)
25          LOPEZ MCHUGH LLP
            100 Bayview Circle, Suite 5600
26          Newport Beach, CA 92660
            Telephone: (949) 812-5771
27          Fax: (949) 737-1504
            rlopez@lopezmchugh.com
28

Mark S. O'Connor (#011029)
BEUS GILBERT PLLC
701 N. 44th Street
Phoenix, AZ 85008
480-429-3000
moconnor@beusgilbert.com

Julia Reed Zaic
(admitted *pro hac vice*)
Laura Smith
(admitted *pro hac vice*)
HEAVISIDE REED ZAIC
312 Broadway, Suite 203
Laguna Beach, California 92660
(949) 715-5228
julia@hrzlaw.com
laura@hrzlaw.com

Wendy R. Fleishman
(admitted *pro hac vice*)
Daniel E. Seltz
(admitted *pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
250 Hudson Street, 8th Floor
New York, NY 10013
(212) 355-9500
wfleishman@lchb.com
dseltz@lchb.com

Calle M. Mendenhall
(admitted *pro hac vice*)
FARRIS, RILEY & PITT LLP
505 N. 20th Street
Birmingham, AL 35203
(205) 324-1212

Ashley Crowell
(admitted *pro hac vice*)
DALIMONTE RUEB LLP
2425 E. Camelback Road, Suite 500
Phoenix, AZ 85019
833-443-7529

Defendants:

James R. Condo (#005867)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
Fax: (602) 382.6070
jcondo@swlaw.com

James F. Rogers
(admitted *pro hac vice*)
South Carolina  Bar No. 12942
NELSON MULLINS RILEY & SCARBOROUGH LLP
The Meridian Building
17th Floor, Main Street
Columbia, SC 29201
Telephone: (803) 799-2000
Fax: (803) 256-7500
jim.rogers@nelsonmullins.com

Richard B. North, Jr.
(admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner
(admitted *pro hac vice*)
Georgia Bar No. 446986
Elizabeth C. Helm
(admitted *pro hac vice*)
Georgia Bar No. 289930
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Fax: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com
kate.helm@nelsonmullins.com

**B.**   **STATEMENT OF JURISDICTION**

1.     Jurisdiction is appropriate in this Court as the parties to this action are citizens of different states and Plaintiffs allege that they have suffered damages in an amount exceeding the minimum jurisdictional limits of this Court, 28 U.S.C. § 1332.

2.     Plaintiffs are citizens of the state of Wisconsin. Defendant C. R. Bard, Inc. ("Bard") is a citizen of the state of Delaware and is a corporation duly organized and existing under the laws of the state of Delaware, with its principal place in New Jersey. Defendant Bard Peripheral Vascular, Inc. ("BPV") is a citizen of the state of Arizona, is a wholly owned subsidiary corporation of defendant Bard, and is duly organized and existing under the laws of the state of Arizona with its principal place of business in Arizona.

3.     Jurisdiction is not disputed.

## C.   STIPULATIONS AND UNCONTESTED FACTS AND LAW

1.     The following material facts are admitted by the parties and require no proof:

a.     The Defendants in this case are C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. ("BPV"). BPV is the wholly-owned subsidiary of C. R. Bard, Inc., the parent company. Throughout this case, including in this pretrial order, the jury instructions and the verdict form, C. R. Bard, Inc. and BPV will be referred to collectively as "Bard" or "Defendants."

b.     The product that is the subject of this lawsuit is a Bard Recovery IVC Filter ("Filter") that was designed, manufactured, marketed and sold by Bard;

c.     The Filter consists of a main cap to which twelve struts (six "arms" and six "legs") are attached;

d.     The Filter is constructed of a nickel-titanium alloy called Nitinol;

e.     The Filter is a medical device that is implanted in the inferior vena cava ("IVC"), the largest vein in the human body;

f.     The United States Food and Drug Administration ("FDA") cleared the Filter for commercial availability through the 510(k) process outlined in the Food, Drug and Cosmetic Act ("FCDA");

g.     On November 27, 2002, the FDA cleared the Recovery IVC Filter for commercial availability in the United States for use in patients as a permanent filter. On July 25, 2003, the FDA further cleared the Recovery IVC filter for use in patients as a retrievable device.

h.     In May, 2005, Plaintiff Debra Tinlin was diagnosed with bilateral DVT and pulmonary embolism.

i.     Plaintiff Debra Ann Tinlin was under the care of Diana Christel, M.D., who referred Mrs. Tinlin to Dr. Joshua Riebe, a radiologist, to consult with Mrs. Tinlin regarding possible IVC filter placement.

1           j.       On May 7, 2005, Dr. Joshua Riebe implanted the Filter in

2  Mrs. Tinlin's inferior vena cava.

3           k.       On June 10, 2013, Mrs. Tinlin was brought to the Emergency

4  Department at Aurora Bay Care Medical Center in Green Bay, Wisconsin. A CT scan of

5  her chest revealed two fractured, embolized arms of the Filter in the right ventricle.

6           l.       On July 30, 2013, David Charles Kress, MD removed an embolized

7  IVC arm in Mrs. Tinlin's right heart ventricle through open heart surgery. Dr. Kress could

8  not find the second embolized arm despite also exploring Mrs. Tinlin's left ventricle.

9           m.      On August 7, 2013, a follow-up chest CT demonstrated the filter with

10  only one arm remaining fully attached. Three embolized arms were in various locations of

11  Mrs. Tinlin's pulmonary arteries. The filter remains implanted.

12      2.      The following material facts, although not admitted, will not be contested at

13  trial by evidence to the contrary:

14           Plaintiffs are not seeking to recover past or future lost wages as part of their

15      damages.

16      3.      The following issues of law are uncontested and stipulated to by the parties:

17           a.       Plaintiffs' claims and Bard's defenses are governed by Wisconsin

18  substantive law.

19           b.       The law enumerated in any jury instructions stipulated to by the

20  Parties.

21           c.       The parties stipulate and agree that they are prohibited from making

22  any reference or argument, or attempting to elicit any evidence in front of the jury

23  suggesting and/or concerning the following topics, unless the issue is first raised with the

24  Court outside the presence of the jury:

25               i.       Plaintiffs' receipt of compensation for her medical bills and

26  expenses (collateral source);

27               ii.      Other lawsuits or claims against Defendants. Pursuant to the

28  Court's instruction in the *Jones* trial, the names of other cases will not be used, and both

deposition and trial testimony will be referred to as "prior testimony." The parties also
agree not to refer to the number of times a witness has been deposed or testified at trial.

        iii.    C. R. Bard's 1994 criminal conviction.

        iv.    Expert opinion testimony by Mr. or Mrs. Tinlin regarding her
medical care and treatment.

        v.    Mrs. Tinlin's previous miscarriages.

        vi.    Mrs. Tinlin's Stage III chronic kidney disease.

## D.    CONTESTED ISSUES OF FACT AND LAW

    **1.**    **Disputed issues of fact.**

    a.    **Design Defect**:  Whether the filter implanted in Plaintiff Debra Tinlin
had a Design Defect.

        i.    <u>Plaintiffs' Contention</u>: Mrs. Tinlin contends that the Filter she
received was defective in design, in a condition not contemplated by the ordinary user or
consumer which is unreasonably dangerous to the ordinary user or consumer. Mrs. Tinlin
further contends nearly all of the arms of the Filter implanted in her fractured after it was
properly implanted in her vena cava; that almost all of the Filter struts perforated through
her vena cava; that three embolized arms are in various locations of Mrs. Tinlin's
pulmonary arteries; that one arm penetrated the interventricular septum; that one of the
struts of the Filter embolized/migrated to the right ventricle of the heart, requiring
interventional open heart surgery.  The open heart surgery resulted in yet further harm and
ongoing injuries to Ms. Tinlin.  Ms. Tinlin's injuries from the filter are ongoing and
require ongoing care.

        ii.    Lastly, foreseeable risks of harm posed by the Filter's design
could have been reduced or avoided by the adoption of a reasonable alternative design by
the manufacturer and the omission of such alternative design rendered the product not
reasonably safe. Plaintiffs reference and incorporate their Trial Brief on Wisconsin law
concerning this issue, filed in the *Hyde* case, *see* Dkt. 12400, and reserve the right to
respond to any further trial briefs filed by Bard.

iii.     Defendants' Contention: Defendants contend that the Plaintiffs' design defect claim is governed by Wis. Stat. 895.047(1). Defendants deny that there is evidence that the requirements of the statute: 1) the foreseeable risks of harm posed by the design of the filter implanted in Mrs. Hyde could have been reduced or avoided by the adoption of a reasonable alternative design by Bard; 2) the omission of the alternative design rendered the filter not reasonably safe and; 3) the filter implanted in Mrs. Hyde was unreasonably dangerous. Defendants have filed a separate Trial Brief on this issue. (Dkt. 16944).

b.     **Design Defect - Causation:** Whether a design defect of the Filter was a substantial factor in causing the Plaintiffs' alleged injuries and damages.

i.     Plaintiffs' Contention: Mrs. Tinlin contends that the defective design of her Bard Filter caused or contributed to cause her injuries.

ii.     Defendants' Contention: Defendants deny that any alleged design defect in the filter caused or contributed to Mrs. Tinlin's injuries. Defendants have filed a separate Trial Brief on this issue. (Dkt. 16944).

c.     **Negligent Design** – Whether Bard was negligent in the design of the Filter.

i.     Plaintiffs' Contention: Mrs. Tinlin contends that Bard failed to use that degree of care which is used by ordinary careful persons under the same or similar circumstances in the design and/or testing of the Filter that was implanted in her. Mrs. Tinlin further contends that nearly all of the arms of the Filter implanted in her fractured after it was properly implanted in her vena cava; that almost all of the Filter struts perforated through her vena cava; that three embolized arms are in various locations of Mrs. Tinlin's pulmonary arteries; that one arm penetrated the interventricular septum; that one of the struts of the Filter embolized/migrated to the right ventricle of the heart requiring interventional open heart surgery; and that Defendants' negligence/lack of ordinary care in the design of its Filter, and negligence/lack of ordinary care in testing its Filter caused her injury and damage. The open heart surgery resulted in yet further harm

and ongoing injuries to Ms. Tinlin.  Ms. Tinlin's injuries from the filter are ongoing and require ongoing care.

     ii.  Defendants' lack of proper testing of the filter is evidence of their failure to act reasonably and use the proper degree of care, as well as their breach of the duty of care. Plaintiffs reference and incorporate their Trial Brief on Wisconsin law concerning this issue, filed in the *Hyde* case, *see* Dkt. 12400, and reserve the right to respond to any further trial briefs filed by Bard.

     iii.  <u>Defendants' Contention</u>: Defendants deny they were negligent in the design of the filter. Defendants have filed a separate Trial Brief on this issue. (Dkt. 16944).

    d.  **Negligent Design Causation:** Whether a design defect of the Filter was a substantial factor in causing the Plaintiffs' alleged injuries and damages.

     i.  <u>Plaintiffs' Contention</u>: Mrs. Tinlin contends that Bard's negligence caused or contributed to cause her injuries and damages.

     ii.  <u>Defendants' Contention</u>: Bard denies that any alleged design defect in the filter caused or <u>contributed</u> to Ms. Tinlin's injuries.

    e.  **Strict Liability – Failure to Warn:**  Whether Bard failed to adequately warn of the dangers arising from the use of the Recovery filter about which it knew or reasonably should have known.

     i.  <u>Plaintiffs' Contention</u>: Mrs. Tinlin contends that Bard's warnings were inadequate, that those warnings were inadequate when the Recovery filter left Bard's control, and that the inadequate warning was a proximate cause of her injuries. Mrs. Tinlin contends that Bard failed to provide adequate warnings of the Recovery filter's potential dangers and that Bard failed to adequately communicate adequate warnings to Mrs. Tinlin's physicians.  Mrs. Tinlin contends that Bard failed to provide an adequate warning of the Recovery filter's unacceptable safety risks or failed to adequately communicate warnings to Mrs. Tinlin's physicians prior to and at the time of implantation and thereafter.  Mrs. Tinlin further contends that the Recovery filter implanted in her

failed after it was properly implanted, that she suffered injuries as a result of that failure, that no reasonable doctor would have implanted the Recovery filter had Bard given adequate warnings, that Mrs. Tinlin's doctors would not have implanted the Recovery filter had they been adequately warned about the Recovery filter's unacceptable safety risks and/or would have intervened after implantation of the filter to prevent or mitigate injury, and, Bard's failure to warn about the safety risks of the Recovery filter and/or failure to adequately communicate those risks to her doctors resulted in injury and damage to Mrs. Tinlin.  In addition, Mrs. Tinlin contends that Bard's duty to warn is a continuing one, including the duty to warn both her and her physicians, and the duty to warn continued after the date of the first sale of the Recovery filter and after implantation of the Recovery filter in Mrs. Tinlin.  Lastly, Mrs. Tinlin contends that Bard failed to meet its continuing duty to provide adequate warnings and/or adequately communicate those warnings to Mrs. Tinlin and her physicians.

ii.    Defendants' Contention:  Defendants deny that its warnings were not adequate.  They warned of the very conditions Ms. Tinlin alleges occurred in her filter.  Defendants also contend that, under the learned intermediary rule, any duty to warn ran to the implanting physician, rather than to the plaintiff herself. Further the implanting physician did not read the warnings. Defendants have filed a separate Trial Brief on this issue. (Dkt. 16944).

As to Plaintiffs' "continuing duty to warn" claim, despite failing to pursue this legal theory during litigation, including in their briefing in response to Bard's motion for summary judgment, Plaintiffs now contend Bard had a post-sale duty to warn in this case. However, Plaintiffs should be barred from presenting argument on this theory to the jury or presenting evidence in support because this case does not present the "specific context" in which the Wisconsin Supreme Court has recognized such a duty and, further, Plaintiffs cannot meet the elements of such a claim. *See Olsen by Olsen v. Ohmeda, Div. of Boc Grp., Inc.*, 863 F. Supp. 870, 875 (E.D. Wis. 1994), *aff'd sub nom. Wisconsin Health Care*

1   *Liab. Ins. Plan v. Ohmeda, a Div. of BOC Grp., Inc.*, 77 F.3d 485 (7th Cir. 1996);

2   *Kozlowski v. John E. Smith's Sons Co.*, 87 Wis.2d 882, 275 N.W.2d 915 (1979).

3       The Wisconsin Supreme Court has only recognized a post-sale duty to warn in a

4   specific context: when the nature of the industry is such that the product has a "limited

5   market" wherein the manufacturer should know of "all [customers] that own its product."

6   *Kozlowski*, 87 Wis.2d at 900-01, 275 N.W.2d at 923; *see also Olsen*, 863 F. Supp. at 875.

7   This case does not fall within that narrow context because Bard's customers are

8   physicians and Bard is unable, because of privacy laws, to know all of the patients who

9   receive and "own" a Bard IVC filter implant. The Plaintiffs also cannot meet a critical

10   element of a post-sale duty to warn claim as articulated by *Kozlowski* because they cannot

11   show that Bard developed a safety feature which could be subsequently added to

12   Plaintiff's Recovery Filter. *See Olsen*, 863 F. Supp. at 875 (indicating *Kozlowski* required

13   a showing that manufacturer must have developed a subsequent, addable safety feature for

14   the product).

15       Plaintiffs' rely on *Bushmaker v. A. W. Chesterton Co.*, 09-cv-726-SLC, 2013 WL

16   11079371 (W.D. Wis. Mar. 1, 2013) (*Bushmaker I*) to support their argument regarding

17   the alleged elements of a "continuing duty to warn." But *Bushmaker I* is wrongly decided.

18   The post-sale duty to warn recognized by the Wisconsin Supreme Court in *Kozlowski* is

19   narrow and requires, *inter alia*, (a) that the manufacturer know of all customers that own

20   its product, (b) that a safety feature be added to the product at issue at some point in time

21   after sale, and (c) that the manufacturer fail to warn it's known customers of the

22   availability of the safety feature. *See Kozlowski*, 87 Wis.2d at 900-01, 275 N.W.2d at 923

23   *Bushmaker I* greatly expanded the duty recognized in *Kozlowski*, concluding that a post-

24   sale duty to warn may arise—even in the absence of a "limited market," where the

25   defendant knows "all" of the customers who "own the product," and when the defendant

26   subsequently added safety feature to the product—if "it was both practically and

27   economically feasible for the defendant to have provided warnings and that any warnings

28   would have been effective in reaching the users of its products." *Bushmaker I*, 2013 WL

11079371 at *8. To reach this conclusion, the court inappropriately relied on *Sharp ex rel. Gordon v. Case Corp.*, 227 Wis.2d 1 (Wis. 1999) and the fact that in *Sharp*, the issue of post-sale duty to warn was submitted to the jury. *See Bushmaker I*, 2013 WL 11079371 at *6-7. But *Bushmaker I* acknowledges that it is unclear in *Sharp* whether "the viability of a post-sale failure to warn theory was ever in dispute." *Bushmaker I*, 2013 WL 11079371 at *7.[1] The *Bushmaker I* court also erroneously relied on the *Restatement (Third) of Torts: Products Liability § 10*, even though it recognized "Wisconsin has not adopted § 10." *Bushmaker I*, 2013 WL 11079371 at *8. Given the Wisconsin Supreme Court's binding precedent in *Kozlowski* that articulates the narrow circumstances in which a post-sale duty to warn may arise, it was inappropriate for the *Bushmaker I* court to expand Wisconsin law by relying on a case (*Sharp*) that did not directly address the issue and the Restatement (Third) § 10, which the Wisconsin legislature has not adopted.[2]

Finally, even if this Court is persuaded that *Bushmaker I* accurately articulated a post-sale duty to warn under Wisconsin law, Plaintiffs have failed to make the requisite showing under *Bushmaker I*. Plaintiffs have disclosed no evidence during discovery to indicate "that it was both practically and economically feasible for the defendant to have provided warnings and that any warnings would have been effective in reaching the users of its products." *Bushmaker v. A. W. Chesterton Co.*, No. 09-CV-726-SLC, 2013 WL 11079371, at *8 (W.D. Wis. Mar. 1, 2013). Such a showing is required *before* a claim for post-sale duty to warn can be presented to a jury. *See Bushmaker v. A. W. Chesterton Co.* (*Bushmaker II*), No. 09-CV-726-SLC, 2013 WL 842666, at *3 ("Although the court's initial review of plaintiff's proffer on Sunday afternoon seemed sufficient to allow him to

---

[1] The issue of whether a post-sale duty to warn exists was addressed in the Wisconsin Court of Appeals' decision in *Sharp*. *See Sharp v. Case Corp.*, 216 Wis.2d 113 (Table Decision), 573 N.W.2d 899, 1997 WL 757498 (Wis. Ct. App. 1997). But that opinion is an unpublished opinion that carries no precedential value. *See* Wis. Rules of Appellate Procedure, Rule 809.23(3).

[2] This is in stark contrast to Wisconsin's clear legislative decision to adopt Restatement (Third) § 2 by enacting Wis. Stat. § 895.047(1)(a). (*See* Bard's trial brief on this issue filed in <u>Hyde</u> [Dkt. No. 12358] at 4-6 (describing how Wis. Stat. § 895.047(1)(a) is a codification of Restatement (Third) § 2).)

proceed on this theory, upon more careful consideration, I am now—and dispositively—persuaded that plaintiff does not have sufficient evidence from which a jury reasonably could conclude that it would have been technically and economically feasible for Philip Carey to have issued post-sale warnings that could have been effectively communicated to and acted upon by the end users of its products.").  Consequently, Plaintiffs should be barred from presenting this legal theory or evidence to support it at trial.

f.      **Strict Liability – Failure to Warn – Causation:** Whether Bard's warnings or lack of warnings were a substantial factor in causing the Plaintiffs' alleged injuries and damages.

i.      <u>Plaintiffs' Contention</u>: Mrs. Tinlin contends that Bard's failure to adequately warn of its dangers arising from its Recovery filter of which Bard knew or reasonably should have known, and/or Bard's failure to adequately communicate those dangers to Plaintiff and her doctors, caused or contributed to cause her injuries.

ii.     <u>Defendants' Contention</u>:  Bard denies that any alleged defect in the warnings caused or <u>contributed</u> to Ms. Tinlin's injuries.

g.      **Negligent Failure to Warn**: Whether Bard was negligent in the warning provided about the risks of the Recovery filter.

i.      <u>Plaintiffs' Contention</u>: Mrs. Tinlin contends that Bard owed her a duty of reasonable care to provide adequate an appropriate warnings as to the complications and dangers of the Recovery filter, Bard breached that duty of care, Bard's breach was a proximate cause of her injuries, and she suffered damages.  Mrs. Tinlin contends that Bard failed to use that degree of care which is used by ordinary careful persons under the same or similar circumstances in providing adequate warnings in communicating adequate warnings regarding the Recovery filter.  Mrs. Tinlin further contends that the Recovery filter implanted in her IVC failed; that her doctors would not have implanted the Recovery filter in had they been adequately warned about the Recovery filter's safety risks and/or would have intervened to prevent or mitigate injury after implantation of the filter; and that Bard's negligence in the design and/or testing of

its filter, and negligent failure to adequately warn of the dangers associated with that filter and/or communicate that warning to her doctors, caused her injury and damage. Additionally, Mrs. Tinlin contends Bard failed to meet its continuing duty to provide adequate warnings and/or adequately communicate those warnings to Mrs. Tinlin and her doctors.

          ii.    <u>Defendants' Contention</u>: Defendants deny they were negligent in providing the warnings about the risks of the filter. Defendants also contend that, under the learned intermediary rule, any duty to warn ran to the implanting physician, rather than to the plaintiff herself. Further, the implanting physician did not read the warnings. Defendants have filed a separate Trial Brief on this issue. (Dkt. 16944).

        h.    **Negligent Failure to Warn – Causation:** Whether any alleged negligence in providing warnings regarding the Recovery filter was a substantial factor in causing the Plaintiff's alleged injuries and damages.

          i.    <u>Plaintiffs' Contention</u>: Mrs. Tinlin contends that Bard's negligence caused or contributed to cause her injuries and damages.

          ii.    <u>Defendants' Contention</u>:  Bard denies that it was negligent in providing a warning and that any alleged defect in the warnings caused or contributed to Ms. Tinlin's injuries.

        i.    **Compensatory Damages -** Whether Plaintiffs are entitled to damages and, if so, the amount of the damages.

          i.    <u>Plaintiffs' Contention</u>: Mrs. Tinlin contend she sustained injuries and damages and is entitled to a damage award for the following: medical expenses, such as hospital, doctor, and medicine bills both in the past and in the future; mental and physical pain and suffering in the past, present and future; impairment of bodily or physical faculties in the past, present and future; and disability and disfigurement in the past, present, and future. Plaintiffs also seek loss of consortium damages for Mr. Tinlin.

ii.     Defendants' Contention: Defendants contend that Plaintiffs are not entitled to recover compensatory damages.

iii.     Mr. Hyde's loss of consortium is an independent cause of action that constitutes a direct injury to the spouse of the injured party. *Kottka* v. *PPG Indus., Inc.*, 388 N.W.2d 160, 170 (Wis. 1986). However, a spouse's loss of consortium is derivative in the sense that it does not arise unless the other spouse has sustained an injury. *Blunt v. Medtronic, Inc.*, 760 N.W.2d 396, 404 n.12 (Wis. 2009). "As a result, the merits of the loss of consortium claim would be considered by the jury only if they find Defendants liable for one of the Plaintiffs' claims.

j.     **Punitive Damages** - Whether Plaintiffs are entitled to an award of punitive damages and, if so, the amount of the award.

i.     Plaintiffs' Contention: Mrs. Tinlin contends that there is evidence that Bard acted maliciously towards Plaintiffs and/or in an intentional disregard of the rights of the Plaintiffs. Bard acted with the purpose to disregard the Plaintiffs' rights, or was aware that its acts were substantially certain to result in the plaintiffs' rights being disregarded. It acted deliberately, with actual disregard of the plaintiffs' right to safety, health or life, and acted in a sufficiently aggravated manner to warrant punishment by punitive damages whether or not Bard intended to cause harm or injury to Mrs. Tinlin. The amount of punitive damages will be determined by the jury after considering the seriousness of the hazard to the public, the profitability of the misconduct, the attitude and conduct on the discovery of  the misconduct, the degree of the manufacturer's awareness of the hazard and of its excessiveness, the employees involved in causing or concealing the misconduct, the duration of both the improper behavior and its concealment, the financial condition of Bard and the probably effect on the Bard of a particular judgment, and the total punishment the manufacturer will probably receive from other sources.

ii.     Punitive damages under Wisconsin law are governed by Wis. Stat. § 895.043. Pursuant to section 3, a "plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or

in an intentional disregard for the rights of the plaintiff." Wis. Stat. § 895.043(3). "[T]he purpose of punitive damages is to punish the wrongdoer, and to deter the wrongdoer and others from similar conduct, rather than to compensate the plaintiff for any loss…. [O]nly when an award can be fairly categorized as 'grossly excessive,' in relation to the [S]tate's interests in punishment and deterrence, does it enter the zone of arbitrariness that violates due process." *J.K. v. Peters*, 808 N.W.2d 141, 154 (Wis. Ct. App. 2011).

iii.    "In order to meet the 'intentional disregard' standard, the defendant's conduct must be (1) deliberate, (2) in actual disregard of the rights of another, and (3) 'sufficiently aggravated to warrant punishment by punitive damages.' *Centrifugal Acquisition Corp. v. Moon*, 849 F. Supp. 2d 814, 839 (E.D. Wis. 2012) (citing *Berner Cheese Corp. v. Krug,* 312 Wis.2d 251, 752 N.W.2d 800, 814 (2008)). A defendant's conduct giving rise to punitive damages need not be directed at the plaintiff seeking punitive damages. This burden does not require a plaintiff to show that defendant intended to cause harm or injury to the plaintiff. *Wosinski v. Advance Cast Stone Co.,* 901 N.W.2d 797, 820-21 (Wi. Ct. App. 2017) (citing *Strenke v. Hogner,* 694 N.W.2d 296 (Wis. 2005).).

iv.    "If the finder of fact concludes punitive damages are available and decides to award them, it then determines the amount of punitive damages by considering factors such as the grievousness of the defendant's acts, the degree of malice involved, the potential damage which might have been done by such acts as well as the actual damage, and the defendant's ability to pay." *Centrifugal Acquisition Corp. v. Moon*, 849 F. Supp. 2d 814, 839 (E.D. Wis. 2012) (quoting *Boelter v. Tschantz,* 779 N.W.2d 467, 474 (Wis. Ct. App. 2009)). A plaintiff who establishes a prima facie case for punitive damages may introduce evidence of the defendant's wealth, and the "judge shall submit to the jury a special verdict as to punitive damages…." Wis. Stat. § 895.043(4). Other factors which may be considered include:

A.    the seriousness of the hazard to the public;

B.    the profitability of the misconduct;

C. the attitude and conduct on discovery of the misconduct;

D. the degree of the manufacturer's awareness of the hazard and of its excessiveness;

E. the employees involved in causing or concealing the misconduct;

F. the duration of both the improper behavior and its concealment;

G. the financial condition of the manufacturer and the probable effect on the manufacturer of a particular judgment; and

H. the total punishment the manufacturer will probably receive from other sources.

v. Defendants' Contention: Defendants deny that Plaintiffs are entitled to recover punitive damages. Punitive damages are not warranted because there is no evidence that Bard acted maliciously toward Mrs. Tinlin or in an intentional disregard of her rights. Punitive damages are governed by statute, *see* W.S.A. 895.043, and they are imposed for the dual purposes of deterrence and punishment. *See Kimble v. Land Concepts, Inc.*, 845 N.W.2d 395, 406 (Wis. 2014). They may be awarded only when the jury finds by clear and convincing evidence that "the defendant acted maliciously toward the plaintiff or in an intentional disregard of the plaintiff's rights." W.S.A. 895.043(3). By enacting this statute, Wisconsin's Legislature changed the common law and heightened the state-of-mind requirement of a defendant from a "wanton, willful and reckless" disregard for another's rights to an "intentional disregard" for another's rights. *Berner Cheese Corp. v. Krug*, 752 N.W.2d 800, 814 (Wis. 2008) (citations and quotations omitted). Indeed, according to the Wisconsin Supreme Court, by passing the punitive damages statute, "the legislature tried to make it harder for plaintiffs to recover punitive damages." *Strenke*, 694 N.W.2d at 303.

vi.     Malicious conduct under the statute means acts that "are the result of hatred, ill will, desire for revenge, or inflicted under circumstances where insult or injury is intended." *Id.* at 302 (internal quotation marks and citation omitted). Intentional disregard means a person "acts with the purpose to disregard the plaintiff's rights, or is aware that his or her acts are substantially certain to result in the plaintiff's rights being disregarded." *Id.* at 304. "[T]he act or conduct must actually disregard the rights of the plaintiff." *Id.* "Finally, the act or conduct must be sufficiently aggravated to warrant punishment by punitive damages." *Id.* at 304–05.

vii.    Punitive damages cannot be awarded if the alleged malicious or intentional disregard conduct did not cause the plaintiff's injury. "Juries are not given license to roam the caverns of their consciences to punish conduct they deem despicable unless a plaintiff can prove that he or she has suffered some actual damage as a result of the conduct." *Kehl v. Economy Fire & Cas. Co.*, 147 Wis. 2d 531, 534 (Wis. App. 1988). In other words, punitive damages may not be awarded based on conduct that did "not cause or contribute to the plaintiff's loss." *Henrikson*, 758 N.W.2d at 211.

viii.   The trial court must serve as a "gatekeeper[] before sending a question on punitive damages to the jury." *Strenke*, 694 N.W.2d at 305. "[A] question on punitive damages may not be given to the jury unless the trial court concludes that a reasonable jury could find from the evidence that entitlement to punitive damages has been proven by the middle burden of proof, clear and convincing evidence." *Id.* (internal quotation marks and citation omitted). Thus, "punitive damages are not recoverable if the wrongdoer's conduct is merely negligent." *Id.* "Only when the conduct is so aggravated that it meets the elevated standard of an 'intentional disregard of rights' should a circuit court send the issue to a jury." *Id.*

ix.     A plaintiff is "not entitled to punitive damages as a matter of right." *Wangen v. Ford Motor Co.*, 294 N.W.2d 437, 458 (Wis. 1980). Thus, even if the issue of punitive damages makes it to a jury, and a jury finds that a defendant's conduct meets the requisite standard of conduct, a jury does not have to award punitive damages.

1   *Id.* Rather, punitive damages may be withheld at the jury's discretion; its refusal to award

2   punitive damages is not reviewable. *Id.* But the jury may not award punitive damages

3   unless it has also awarded compensatory damages. *Tucker v. Marcus*, 418 N.W.2d 818,

4   820 (Wis. 1988).

5                    x.      Wisconsin law provides that punitive damages may not exceed

6   twice the amount of compensatory damages recovered by the plaintiff, or $200,000,

7   whichever is greater. Wis. Stat. § 895.043(6).

8            k.    **Allocation of fault:  Whether the jury may consider the**

9   **negligence of Dr. Joshua Riebe and Dr. Robert Haller and allocate a percentage of**

10  **negligence to either or both of them.**

11                   i.      <u>Defendants' Contention:</u> The jury is entitled to consider the

12  negligence of both Dr. Joshua Riebe and Dr. Robert Haller and to allocate a percentage of

13  negligence to each of them because their actions caused or contributed to Mrs. Tinlin's

14  injuries. *See*, *Connar v. W. Shore Equip. of Milwaukee, Inc.*, 227 N.W.2d 660, 662 (Wis.

15  1975) ("It is established without doubt that, when apportioning negligence, a jury must

16  have the opportunity to consider the negligence of all parties to the transaction, whether or

17  not they be parties to the lawsuit and whether or not they can be liable to the plaintiff or to

18  the other tort-feasors either by operation of law or because of a prior release. . . . At the

19  requested-special-verdict-stage of a lawsuit, it is immaterial that the entity is not a party or

20  is immune from further liability[;] the apportionment must include all whose negligence

21  may have contributed to the arising of the cause of action."); *Johnson v. Heintz*, 243

22  N.W.2d 815, 826-827 (Wis. 1976) ("When the harm may be attributed to the concurring

23  breaches of duties of two or more actors, a similar rationale has stimulated the

24  development of our comparative negligence special verdict system to facilitate financial

25  apportionment of the resulting expense on the basis of degree of culpability. . . .

26  [Nonparties] activity may have been slight in its contribution to the impacts, but under the

27  evidence here a special verdict embracing all of the actors could have been requested.")

28  Defendants have filed a separate Trial Brief on this issue. (Dkt. 16946).

ii.    *Plaintiffs' Contention*: As set forth in Plaintiffs' Motion *In Limine* No. 1, because Mrs. Tinlin "exercised good faith and due care in the selection of [her] treating physician[s] . . . under the *Selleck* rule the defendants are liable for the full amount of damages caused by the aggravation." *Fouse v. Persons*, 259 N.W.2d 92, 95 (Wis. 1977). Here, Bard has not alleged that Mrs. Tinlin failed to exercise good faith and due care in selecting her treating physicians, so any alleged negligence by her doctors is irrelevant, and the jury should not be requested to allocate fault or damages. Instead, the jury must decide whether Defendants' actions were a substantial factor in causing the injuries alleged. WIS-JI-CIVIL 1023; WIS JI-CIVIL 1500.

The cases cited by the Defendants are inapposite. *Connar v. W. Shore Equip., Inc.*, required apportionment only for those "whose negligence may have contributed to the arising of the cause of action," 227 N.W.2d 660, 662 (Wis. 1975), while here, any alleged negligence on behalf of Mrs. Tinlin's physicians occurred at a later time and did not form a basis for the causes of action relating to the filter failure. In *Johnson v. Heintz*, the Wisconsin Supreme Court specifically distinguished between two tortfeasors whose "actions concur in time . . . to create an injury-producing situation," and where the actions of others "resulted in distinguishable separate injuries to the same subject." 243 N.W.2d 815, 826 (Wis. 1976) (citing Prosser, *Law of Torts*, p. 317, sec. 52 (4th ed. 1971)). Where there are separate injuries, or where an original injury is aggravated, as in the malpractice  context, "there are separate torts rather than joint liability," and apportionment is improper. *Id.*

Moreover, even if Wisconsin law provides for the allocation of fault in this case, Bard lacks the required expert opinion that the alleged negligence of Dr. Riebe and Dr. Haller was the proximate cause of and substantial factor in causing any injury, so a directed verdict is proper on this issue.

### 2.    <u>Disputed issues of law</u>

The following was proposed by Plaintiffs as issues of law that are uncontested and stipulated to by the parties, but was not agreed to by Bard:

### a.   Product Liability (General Aspects)

Wisconsin's product liability law is a statutory scheme, enacted in 2011. *Forsythe v. Indian River Transp. Co.*, 344 Wis. 2d 520 (Wis. 2012). Common law is not superseded by the 2011 enacted statutory scheme. If pre-2011 common law rulings are not inconsistent with the statute, they stand. "Wisconsin's 2011 codification of its product liability law generally does not supersede the common law." *Janusz v. Symmetry Med. Inc.*, 256 F. Supp. 3d 995, 1000–01 (E.D. Wis. 2017).

### b.   Strict Liability (General Aspects)

Wisconsin Jury Instruction-Civil 3200 sets forth the elements of a strict liability claim as follows: "(1) that the product was in a defective condition unreasonably dangerous; (2) that the product was defective when it left the possession or control of the seller; (3) that the defect was a cause (substantial factor) of the plaintiffs' injury; (4) that the seller was engaged in the business of selling such products (it does not apply to an isolated or infrequent sale); and (5) that the product was one which the seller expected to and did reach the consumer without substantial change."

### c.   Design Defect (Negligent and Strict Liability)

Under Wisconsin law, negligent or defective design is generally a jury question. *See, e.g., Tidmore v. Midwest Trailer Sales, Inc.*, 2007 WL 5390049 (Wis. Cir. Ct. 2007). "As the Seventh Circuit has recognized, there is significant overlap between [negligent and strict liability] claims. *See Krien v. Harsco Corp.*, 745 F.3d 313, 317 (7th Cir. 2014) ("[A] claim of strict products liability is much like a negligence claim because it requires proof either that the product was unreasonably dangerous or, what amounts to the same thing, that it was defective.").

To succeed on a negligence claim, Plaintiffs must prove:

1.   the existence of a duty of care on the part of the defendant,

2.   a breach of that duty of care,

3.   a causal connection between the defendant's breach of the duty of care and the plaintiffs' injury, and

4. actual loss or damage resulting from the [breach].

*Kilty v. Weyerhaeuser Co.,* 16-CV-515-WMC, 2018 WL 2464470, at *3–4 (W.D. Wis. June 1, 2018) (citing *Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶ 23, 291 Wis. 2d 283, 717 N.W.2d 17); *Forsythe v. Indian River Transp. Co*., 344 Wis. 2d 520 (Wis. 2012).

To recover on a strict liability design defect claim, the person injured by an allegedly defective product must establish that (1) the foreseeable risks of harm posed by the product's design could have been reduced or avoided by the adoption of a reasonable alternative design by the manufacturer and the omission of the alternative design renders the product not reasonably safe, (2) the defective condition rendered the product unreasonably dangerous to persons or property, (3) the defective condition existed at the time the product left the manufacturer's control, (4) the product reached the user or consumer without substantial change in the condition in which it was sold, and (5) the defective condition was a cause of Plaintiffs' damages. Wis. Stat. § 895.047; WIS JI-CIVIL 3260.1.

The consumer-contemplation test is used to determine elements (1) and (2) above. A product is said to be "defective" when it is in a condition not contemplated by the ordinary user or consumer which is unreasonably dangerous to the ordinary consumer. *Green v. Smith & Nephew AHP, Inc.*, 245 Wis.2d 772 (Wis. 2001). Wisconsin uses the "consumer contemplation" test for product-liability claims. *Green v. Smith & Nephew AHP, Inc.,* 245 Wis. 2d 772 (Wis. 2001); *In re Zimmer Nexgen Knee Implant Products Liab. Litig.,* 218 F. Supp. 3d 700, 723 (N.D. Ill. 2016), *aff'd sub nom. In re Zimmer, NexGen Knee Implant Products Liab. Litig.,* 884 F.3d 746 (7th Cir. 2018) (citing *Green v. Smith & Nephew AHP, Inc.*, 245 Wis. 2d 772, 826, 629 N.W.2d 727, 752 (2001)). Since the enactment of the Wis. Stat. §895.047 there is no law directly on point addressing the consumer expectation test, yet the Seventh Circuit interpreting Wisconsin law agreed that a consumer's expectation is at least a factor to consider. *In re Zimmer*, 218 F. Supp. 3d 700, 723. Ill. 2016).

### d. **Damages:**

Intervening cause stemming from Mrs. Tinlin's treatment. *See Fouse v. Persons*, 259 N.W.2d 92, 95 (1977) (citing *Selleck v. Janesville*, 75 N.W. 975 (Wis. 1898)). If the jury finds Bard negligent, "then the defense of intervening cause is unavailing unless the court determines as a matter of law that there are policy factors which should relieve the first actor from liability." *Stewart v. Wulf*, 271 N.W.2d 79, 86 (Wis. 1978). An intervening act is a superseding cause only if "the conscience of the court would be shocked if the first actor were not relieved from liability." *Rixmann v. Somerset Pub. Sch.*, 266 N.W.2d 326, 334 (Wis. 1978) (internal quotations and citation omitted).

### e. **Failure to Warn (Negligent and Strict Liability[3]):**

To establish a failure to warn claim under Wisconsin law, "whether under a strict liability or negligence theory, plaintiffs must establish four elements: '(1) existence of a duty to warn; (2) proof of a failure to warn adequately; (3) proof of causation injury; and (4) actual damages resulted from the injury.'" *Below by Below v.*

---

[3] Wis. Stat. § 895.047(1) provides in relevant part: Liability of manufacturer. In an action for damages caused by a manufactured product based on a claim of strict liability, a manufacturer is liable to a claimant if the claimant establishes all of the following by a preponderance of the evidence:

    (a) That the product is defective because it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings…. A product is defective because of inadequate instructions or warnings only if the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the manufacturer and the omission of the instructions or warnings renders the product not reasonably safe.

    (b) That the defective condition rendered the product unreasonably dangerous to persons or property.

    (c) That the defective condition existed at the time the product left the control of the manufacturer.

    (d) That the product reached the user or consumer without substantial change in the condition in which it was sold.

    (e) That the defective condition was a cause of the claimant's damages.

1   *Yokohama Tire Corp.*, 13-cv-529, 2017 WL 570985, at *2 (W.D. Wis. Feb. 13, 2017)

2   (quoting *Lemmerman v. Blue Cross Blue Shield of Wis.*, 713 F. Supp. 2d 791, 811 (E.D.

3   Wis. 2010)).  *See also Forst v. SmithKline Beecham Corp.*, 602 F. Supp. 2d 960, 967 (E.D.

4   Wis. 2009) (failure to warn claim requires showing of breach of duty to warn, and that the

5   breach caused the plaintiff's injuries).

6          "A manufacturer has a duty to warn about dangers it knows or should know are

7   associated with its products."  *Below by Below*, 2017 WL 570985, at *2 (citing

8   *Lemmerman*, 713 F. Supp. 2d at 811).

9          "The duty to warn arises when the manufacturer has, or should have, knowledge of

10   a dangerous use."  *Mohr v. St. Paul Fire & Marine Ins. Co.*, 674 N.W.2d 576, 589  (Wis.

11   App. 2003).

12          The application of the learned intermediary doctrine has not been decided by

13   Wisconsin appellate courts.  This Court, collecting prior authority, held that "[t]he

14   Wisconsin Supreme Court has not decided whether to adopt the learned intermediary

15   doctrine, and federal courts applying Wisconsin law are split on the issue." ECF

16   No. 12007, at 14 n.6. Another Court overseeing multidistrict litigation against Bard

17   regarding other medical devices has come to the same conclusion. *Rodenkirch-Kleindl v.*

18   *C.R. Bard, Inc.*, No. 2:13-CV-26026, 2016 WL 7116144, at *3 (S.D. W. Va. Dec. 6,

19   2016).  Other Courts have declined to apply the doctrine.  "The court need not and will

20   not apply the 'learned intermediary' doctrine in this case. To echo our sister court in the

21   Western District of Wisconsin, 'this court will not create Wisconsin law without some

22   indication that the state's highest court would apply the doctrine if given the opportunity

23   to do so.'" *Forst v. SmithKline Beecham Corp.*, 602 F. Supp. 2d 960, 968 (E.D. Wis. 2009)

24   (citing *Peters v. Astrazeneca, LP*, 417 F. Supp. 2d 1051, 1054 (W.D. Wis. 2006)).

25          Unless no reasonable jury, properly instructed, could find negligence, the adequacy

26   of a warning is typically a jury question.  *See Kurer v. Parke, Davis & Co.*, 679 N.W. 2d

27   867, 876 (Wis. App. 2004). Bard's duty to warn is a continuing one, because it was both

28   practically and economically feasible for it to provide adequate warnings after the

Recovery filter reached the market .  "[I]n order for a duty to warn, post-sale, to exist, the plaintiff must have some evidence …  that it was both practically and economically feasible for the defendant to have provided warnings and that any warnings would have been effective in reaching the users of its products." *Bushmaker v. A. W. Chesterton Co.*, 09-cv-726, 2013 WL 11079371, at \*8 (W.D. Wis. Mar. 1, 2013).

### f.   Punitive Damages

<u>Plaintiffs' Contention</u>: Under Wisconsin law, punitive damages may be awarded in addition to compensatory damages where the jury finds that the defendant acted maliciously toward the plaintiffs or in an intentional disregard of the rights of the plaintiffs. A defendant acts are malicious when they are the result of hatred, ill will, desire for revenge, or inflicted under circumstances where insult to injury is intended. A defendant acts in an intentional disregard of the rights of the plaintiffs if the defendant acts with a purpose to disregard the plaintiffs' rights or is aware that his or her acts are substantially certain to result in the plaintiffs' rights being disregarded. A defendant's conduct giving rise to punitive damages need not be directed at the specific Plaintiffs seeking punitive damages in order to recover punitive damages and there is no requirement that a defendant intended to cause harm or injury to the plaintiffs. *Strenke v. Hogner*, 279 Wis. 2d 52, 58 (Wis. 2005); WIS JI-CIVIL 1707.2.

A result or consequence is intentional if the defendant acts with a purpose to cause the result or consequence or is aware that the result or consequence is substantially certain to occur from the person's conduct. The result or consequence here is the disregard of rights. *Strenke*, 279 Wis. 2d at 69–70; WIS JI-CIVIL 1707.2

A jury may find an intentional disregard of the plaintiffs' rights if jurors are satisfied that the defendant's act or course of conduct was: (1) deliberate; (2) an actual disregard of the plaintiffs' right to safety, health, or life, a property right or some other right; and (3) sufficiently aggravated to warrant punishment by punitive damages. WIS JI-CIVIL 1707.2.

Defendants' Contention: Defendants disagree with Plaintiffs' analysis of Wisconsin law on strict liability design defect. Defendants further disagree that the appropriate test for product defect is the consumer expectations test. The appropriate test is the risk benefit test under the Restatement Third as adopted by Wisconsin in 2011. As to the strict liability and negligence claims. As to all issues, Defendants incorporate their Trial Briefs addressing the issues under Wisconsin law (Dkt 16944 and 16946).

**E.  LIST OF WITNESSES**

1.  Each party understands that it is responsible for ensuring that the witnesses it wishes to call to testify are subpoenaed. Each party further understands that any witness a party wishes to call shall be listed on that party's list of witnesses; the party cannot rely on the witness having been listed or subpoenaed by another party.

2.  Many of the parties' summaries state that the witness will testify consistent with his/her deposition. The parties do not waive any objections, and these descriptions are subject to the prior rulings by the Court on motions *in limine* and deposition designations previously submitted to the Court in the MDL and the pending motions *in limine* and the pending motion for summary judgment filed in this case. Counsel agrees that they and the witnesses will abide by those rulings.

**Plaintiffs' Witnesses**

1.  Plaintiffs reserve the right to call witnesses for rebuttal as needed.

2.  Witnesses who shall be called at trial (Live and/or by deposition):

**Fact Witnesses:**

> Mrs. Debra Tinlin
> c/o Beus Gilbert
> 701 N 44th Street
> Phoenix, Arizona 85008

Mrs. Tinlin is the Plaintiff in this action.  She will testify regarding her medical care and treatment, as well as he surrounding and related circumstances; the nature, extent, and severity of her injuries and suffering; the physical and mental pain, suffering and

discomfort associated with the injuries; and the impact of the injuries on her life, including without limitation the ongoing emotional and physical impact on her life. Lastly, she will testify consistent with her deposition given in this matter.

> Mr. James Tinlin
> c/o Beus Gilbert
> 701 N 44th Street
> Phoenix, Arizona 85008

Mr. Tinlin is the Plaintiff's husband.  He will testify regarding his observations of Plaintiff's daily issues and injuries caused by her Filter and the failures of that filter, the overall impact of the injury on her daily activities and quality of life, and Plaintiff's mental and physical condition before and after the implant of her Filter.  He will also testify consistent with his deposition in this matter.

> Leah Nitke, D.O.
> 2845 Greenbrier Road, Suite 120
> Green Bay, WI 54311

Dr. Nitke will testify regarding her examinations, care, treatment, observations and diagnosis of Plaintiff related to her IVC filter and resulting injuries and complications, as well as the nature and extent of injuries and complications caused by the failure of Plaintiff's Filter.  Plaintiff further anticipates Dr. Nitke will testify consistent with her medical records and her deposition taken in this case.

> Joshua Riebe, M.D.
> Green Bay Radiology
> 2941 S Ridge Road
> Green Bay, WI 54304

Dr. Riebe will testify regarding his examinations, care, treatment, observations and diagnosis of Plaintiff related to her IVC filter and resulting injuries and complications, as well as the nature and extent of injuries and complications caused by the failure of Plaintiff's Filter.  Plaintiff further anticipates Dr. Riebe will testify consistent with his medical records and his deposition taken in this case.

> Heather Stanko, M.D.

Neurology Consultants of Bellin Health
725 S Webster Avenue, Suite 201
Green Bay, WI 54301

Dr. Stanko will testify regarding her examinations, care, treatment, observations and diagnosis of Plaintiff related to her IVC filter and resulting injuries and complications, as well as the nature and extent of injuries and complications caused by the failure of Plaintiff's Filter.  Plaintiff further anticipates Dr. Stanko will testify consistent with her medical records and her deposition taken in this case.

Timothy Fisher
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Fisher was a territory and fields sales manager for Bard. Plaintiff expects that Mr. Fischer  has knowledge and would testify at trial regarding the information Bard provided and did not provide to its sales force and to physicians relating to the IVC filters marketed and sold to physicians and hospitals and specifically what information was provided to him and to the sales representatives reporting to him regarding Bard's IVC filters and what information they would and what could have conveyed to physicians who would use those devices. Plaintiff expects that his testimony at trial will be consistent with the testimony at his deposition taken on March 29, 2017, in this MDL

Hugh Magee
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Magee was a sales representative for Bard Peripheral Vascular Incorporated ("BPV") at the time of and preceding the implantation of the filter in Plaintiff. Plaintiffs expect that his testimony at trial will be consistent with his deposition taken on October 17, 2017, in the Bard IVC Filter MDL.

Shari Allen (O'Quinn)
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Allen was the Regulatory Affairs Manager for BPV in 2004 and the Director of Regulatory Affairs and Clinical for BPV in 2005 and 2006.  Plaintiff expects that she is

knowledgeable regarding the matters that were the subject of her employment with Bard

and her depositions taken on November 2, 2010, in *Newton v. C.R. Bard, Inc., et al.*,

Superior Court of Arizona, Maricopa County, Case No. CV2009-019232, and October 9,

2013, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego

County, East County Regional Center, Case No. 00069363-CU-PO-EC.

> William Altonaga, M.D.
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Dr. Altonaga was a consultant to and acting Medical Director for C.R. Bard beginning in

2001 and into 2004.  Plaintiff expects that he is knowledgeable regarding the matters that

were the subject of his employment with Bard and his deposition taken on October 22,

2013, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego

County, East County Regional Center, Case No. 00069363-CU-PO-EC.

> Murray R. Asch, M.D.
> c/o Lakeridge Health Corporation
> Director of Interventional Radiology
> 580 Harwood Ave. S
> Oshawa, ON L1S 2J4

Dr. Asch is an Interventional Radiologist who was involved in a pilot study to assess the

retrievability of the Recovery filter.  Plaintiff expects that he is knowledgeable regarding

the matters that were the subject of his study and work with Bard, as well as his

depositions taken on May 2, 2016, in *In re Bard IVC Filters Prod. Liab. Litig.*, MDL No.

2641, United States District Court, District of Arizona ("the Bard IVC Filter MDL") and

January 5, 2011, in *Lindsay, et al. v. C.R. Bard, Inc., et al.*, United States District Court,

Southern District of New York, Case No. 1:09-cv-05475-SHS.

> Robert M. Carr, Jr.
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Carr has been an employee at BPV since 2002; prior to that, he was an employee at

NMT working on filters.  At BPV, he was the Program Director for Research &

Development from 2002 through 2010, Director Research & Development Biopsy from

2010 through 2012, Senior Director Research & Development Biopsy & Imaging from

2013 through 2014, and Vice President International since 2015.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with NMT and Bard and his depositions taken on March 18, 2016, and January 19, 2017, in the Bard IVC Filter MDL; May 8, 2007, in *Hutson v. C.R. Bard, Inc., et al.*, Commonwealth of Kentucky, McCracken Circuit Court, Division II, Case No. 06-CI-680; March 4, 2010, in *Campbell v. C.R. Bard, Inc.*, Commonwealth of Kentucky, Scott Circuit Court, Division I, Case No. 08-CI-00541; September 23, 2010, in *Vedas v. C.R. Bard, Inc.*, et al., Superior Court of Arizona, Maricopa County, Case No. CV2010-019655; September 14, 2012, in *Albrecht, et al. v. Bard Peripheral Vascular, Inc.*, Circuit Court of Greene County, Missouri, Case. No. 1031-cv10504; April 17, 2013, in *Bouldry, et al. v. C.R. Bard, Inc., et al.*, United States District Court, Southern District of Florida, Case No. 12-809-51-CIV-Rosenbaum; October 25, 2013, in *Anderson v. C.R. Bard, Inc., et al.*, United States District Court, Eastern District of New York, Case No. CV11-2632 (DRH); November 5, 2013, in *Giordano v. C.R. Bard, Inc.*, et al., Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC; December 19, 2013, in *Payne v. C.R. Bard, Inc., et al.*, United States District Court, Middle District of Florida, Orlando Division, Case No. 6:11-cv-01582-Orl-37GJK; October 29, 2014, in *Tillman v. C.R. Bard, Inc.*, United States District Court, Middle District of Florida, Jacksonville, Case No. 3:13-cv-222-J-34-JBT; and December 19, 2014, in *Kilver v. C.R. Bard, Inc.*, United States District Court, Central District of Illinois, Case No. 1:13-cv-01219-MMM-JAG.

> Andrzej Chanduskzko
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Chandskzko has been an employee of BPV since 2002; prior to that, he was an employee at NMT working on IVC filters.  At BPV, he was a Senior Engineer, Research & Development Staff Engineer from 2004 through 2008, Staff Engineer from 2009 through 2014, and Principal Engineer since 2015.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard

1    and NMT, as well as his depositions taken on September 22, 2010, in *Vedas v. C.R. Bard,*

2    *Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-019655, June

3    21, 2013, in *Anderson v. C.R. Bard, Inc., et al.*, United States District Court, Eastern

4    District of New York, Case No. CV11- 2632 (DRH), October 10, 2013, in *Phillips v. C.R.*

5    *Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-

6    WGC, and April 23, 2015, in *Arnold, et al. v. C.R. Bard, Inc., et al.*, United States District

7    Court, Northern District of Texas, Dallas Division, Case No. 5:13-cv-00609-HLH.

8           David Ciavarella, M.D.
            c/o Counsel for Bard Peripheral Vascular and C.R. Bard
9

10   Dr. Ciavarella has been Vice President Corporate Clinical Affairs at C.R. Bard since 2004.

11   Plaintiff expects that he is knowledgeable regarding the matters that were the subject of

12   his employment with Bard and depositions taken on March 1, 2011, and August 29, 2012,

13   in *Tyson v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No.

14   CV2010- 011149, November 12, 2013, in *Giordano v. C.R. Bard, Inc., et al.*, Superior

15   Court of California, San Diego County, East County Regional Center, Case No.

16   00069363-CU-PO-EC, and July 29, 2014, in *Coker v. C.R. Bard, Inc., et al.*, United States

17   District Court, Northern District of Georgia, Atlanta Division, Case No. 1:13-cv-0515.

18          Len DeCant
            c/o Counsel for Bard Peripheral Vascular and C.R. Bard
19

20   Mr. DeCant was Vice President Research & Development for BPV from 2002 to 2007.

21   Plaintiff expects that he is knowledgeable regarding the matters that were the subject of

22   his employment with Bard and his deposition taken on May 24, 2016, in the Bard IVC

23   Filter MDL.

24          David Dimmit
            c/o Counsel for Bard Peripheral Vascular and C.R. Bard
25

26   Mr. Dimmit is the Vice President and Group Controller at C.R. Bard; Plaintiff expects that

27   he is knowledgeable regarding matters that are/were subject to his employment with Bard

28

and his deposition was taken on January 26, 2017 as to the defendants' financial status, assets, and net worth

> Mehdi Syed
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Syed is the Vice President of Operations at Becton Dickinson and was designated by Bard to testify on the subject notices for the deposition relating to punitive damages and Bard's financial condition; Plaintiff expects that he is knowledgeable regarding matters that are/were subject to his employment with Bard and his deposition was taken on March 2, 2018, as to Defendants' financial status, assets, and net worth.

> Mary Edwards
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Edwards was Vice President Regulatory Affairs/Clinical Affairs at C.R. Bard from 1999 to 2005.  Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her depositions taken on January 20, 2014, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC, and August 19, 2016, in the Bard IVC Filter MDL.

> Robert Ferrara
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Ferrara was the Bard sales representative who called on and made presentations to Plaintiff's treating physicians during the relevant time period.  Plaintiff expects Mr. Ferrara will testify on the subject matter of his employment at Bard, and consistent with his deposition given in this case.

> Christopher Ganser
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Ganser was Vice President, Regulatory Science at C.R. Bard from 2005 through 2006 and Vice President Quality, Environmental Services, & Safety from 2007 through 2010. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of

his employment with Bard and his depositions taken on February 28, 2011, in *Newton v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2009-019232, September 9, 2013, in *Anderson v. C.R. Bard, Inc., et al.*, United States District Court, Eastern District of New York, Case No. CV11-2632 (DRH), and October 11, 2016, in the Bard IVC Filter MDL.

> David Mickey Graves
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Graves was an Engineer at BPV beginning in 2004 to at least 2014.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on February 27, 2014, in *Ocasio, et al. v. C.R. Bard, Inc., et al.*, United States District Court, Middle District of Florida, Tampa Division, Case No. 8:13-cv-01962-DSM-AEP.

> Janet Hudnall
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Hudnall was an employee at BPV from 1998 to 2008, and has recently become employed by Bard again; she held positions as Product Development Engineer, Product Manager, and Marketing Manager.  Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her depositions taken on November 3, 2010, in *Newton v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2009-019232, and November 1, 2013, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-WGC.

> Brian Hudson
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Hudson was an employee at BPV from 1999 to 2012; he held positions as Quality Engineer, Senior Risk Manager, and Associate Director Quality Assurance.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on January 21, 2011, in *Tyson v. C.R.*

1 │ *Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-011149,

2 │ and January 17, 2014, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California,

3 │ San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC.

4
5
>           Krishna Kandarpa, M.D.
>           National Institute of Health
>           Bethesda, MD 20892

6 │ Dr. Kandarpa was the Medical Monitor for Bard's EVEREST Retrievability Study.

7 │ Plaintiff expects he is knowledgeable about and will provide testimony concerning the

8 │ EVEREST Study and all documents related to the same, including his observations, his

9 │ concerns and findings, complications and adverse events that occurred during the study,

10 │ design and purpose of the study, his recommendations to and interactions with Bard and

11 │ its representatives/agents based on the study, and all other related facts and circumstances.

12
13
14
>           Sanjeeva Kalva, M.D.
>           c/o Beus Gilbert
>           701 N 44th Street
>           Phoenix, Arizona 85008

15 │ Dr. Kalva is an Interventional Radiologist and a key opinion leader on IVC filters.

16 │ Plaintiff expects that he is knowledgeable regarding the matters that were the subject of

17 │ his interactions with Bard, his experience with its filter, and deposition given in this

18 │ litigation.

19
20
21
>           Thomas Kinney, MD, MSME
>           c/o Beus Gilbert
>           701 N 44th Street
>           Phoenix, Arizona 85008

22 │ Dr. Kinney is an Interventional Radiologist. He is expected to testify about his experience

23 │ with IVC filters and will testify consistent with his expert report and deposition given in

24 │ this litigation.  He is also disclosed as an expert, below.

25
26
>           Bill Little
>           c/o Counsel for Bard Peripheral Vascular and C.R. Bard

27 │ Mr. Little was Vice President of Global Marketing at BPV from 2008 through 2011.

28 │ Plaintiff expects that he is knowledgeable regarding the matters that were the subject of

1    his employment with Bard and his deposition taken on July 21, 2016, in the Bard IVC

2    Filter MDL.

3           Patrick MacDonald
            c/o Counsel for Bard Peripheral Vascular and C.R. Bard
4

5    Mr. MacDonald is a sales representative and sales trainer at Bard. Plaintiff expects that he

6    is knowledgeable regarding the matters that were the subject of his employment with Bard

7    and his deposition taken on July 29, 2016, in Austin v. C.R. Bard, in 17th Judicial Circuit,

8    Broward County Florida, Case No. 15-008373 and the Bard IVC Filter MDL

9           Chad Modra
            c/o Counsel for Bard Peripheral Vascular and C.R. Bard
10

11   Mr. Modra was Director Quality Assurance and Vice President Quality Assurance at BPV

12   from 2011 through 2014. Plaintiff expects that he is knowledgeable regarding the matters

13   that were the subject of his employment with Bard and his depositions taken on March 28,

14   2013, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of Nevada, Case

15   No. 3:12-cv-00344-RCJWGC, June 6, 2014, in *Ocasio, et al. v. C.R. Bard, Inc., et al.*,

16   United States District Court, Middle District of Florida, Tampa Division, Case No. 8:13-

17   cv-01962-DSM-AEP, and December 15, 2015, and January 20, 2016, in the Bard IVC

18   Filter MDL.

19          Daniel Orms
            c/o Counsel for Bard Peripheral Vascular and C.R. Bard
20

21   Mr. Orms was a sales representative and district manager at Bard from 1997 through 2012.

22   Plaintiff expects that he is knowledgeable regarding the matters that were the subject of

23   his employment with Bard and his deposition taken on August 16, 2016, in Austin v. C.R.

24   Bard, in 17th Judicial Circuit, Broward County Florida, Case No. 15-008373 and the Bard

25   IVC Filter MDL.

26          Frederick B. Rogers, M.D.
            c/o Counsel for Bard Peripheral Vascular and C.R. Bard
27

28

1   Dr. Rogers was the author of a large study establishing that IVC filters do not reduce the

2   rate of PE in trauma patients.   Plaintiff further expects that he is knowledgeable regarding

3   the matters that were the subject of his deposition taken on July 18, 2017, in *In re:  Bard*

4   *IVC Filters Products Liability Litigation*, No. MD-15-02641-PHX-DGC, and will testify

5   consistent with that deposition.  He is also disclosed as an expert, below.

6           Gin Schulz
        c/o Counsel for Bard Peripheral Vascular and C.R. Bard
7

8   Ms. Schulz was Vice Present Quality Assurance at BPV from 2005 to 2011 and in the

9   Quality Assurance department at C.R. Bard since 2011, including as Vice President

10  Quality Assurance. Plaintiff expects that she is knowledgeable regarding the matters that

11  were the subject of her employment with Bard and her depositions taken on September 13,

12  2013, in *Anderson v. C.R. Bard, Inc., et al.*, United States District Court, Eastern District

13  of New York, Case No. CV11-2632 (DRH), and January 30, 2014, in *Phillips v. C.R.*

14  *Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-

15  WGC.

16          Carol Vierling
        c/o Counsel for Bard Peripheral Vascular and C.R. Bard
17

18  Ms. Vierling was the Director, Regulatory Affairs at BPV from 1994 through 2002.

19  Plaintiff expects that she is knowledgeable regarding the matters that were the subject of

20  her employment with Bard and her deposition taken on May 11, 2016, in the Bard IVC

21  Filter MDL.

22          Alison Walsh
        c/o Counsel for Bard Peripheral Vascular and C.R. Bard
23

24  Ms. Walsh was a sales representative at Bard from 2003 through 2006.Plaintiff expects

25  that she is knowledgeable regarding the matters that were the subject of her employment

26  with Bard and her deposition taken on January 23, 2014, in the *Phillips v. C.R. Bard, Inc.*,

27  United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-WGC

28          Steve Williamson

1

c/o Counsel for Bard Peripheral Vascular and C.R. Bard

2

3

Mr. Williamson has been President at BPV since 2012. Plaintiff expects that he is

4

knowledgeable regarding the matters that were the subject of his employment with Bard

and his deposition taken on September 7, 2016, in the Bard IVC Filter MDL.

5

Natalie Wong

6

c/o Counsel for Bard Peripheral Vascular and C.R. Bard

7

Ms. Wong has been an employee of BPV since 2004; she has held positions as Quality

8

Engineer, Field Assurance Quality Engineering Manager, Quality Engineering Manager,

9

and Senior Quality Engineer, New Product Development. Plaintiff expects that she is

10

knowledgeable regarding the matters that were the subject of her employment with Bard

11

and her depositions taken on September 21, 2010, in *Vedas v. C.R. Bard, Inc., et al.*,

12

Superior Court of Arizona, Maricopa County, Case No. CV2010-019655, and October 18,

13

2016, in the Bard IVC Filter MDL.

14

John Worland, M.D.
21605 Crestone Needles Drive

15

Parker, Colorado 80138

16

Mr. Worland is an interventional radiologist in Aurora, Colorado at the Medical Center of

17

Aurora. Plaintiff expects that he is knowledgeable regarding his experience with IVC

18

filters and subject matters discussed at his deposition taken on March 16, 2011, in

19

*Bloomquist v. C.R. Bard, et al.*in United States District Court, Western District of

20

Missouri, Case. No. 09-CV-5086-SW-RED.

21

**Expert Witnesses:**

22

Rebecca Betensky, Ph.D.

23

655 Huntington Avenue
Building II, Room 421

24

Boston, MA  01225

25

Dr. Betensky is a biostatistician.  Dr. Betensky is expected to testify about her analysis

26

and data relating to complication rates of Bard's defective IVC filter, various design

27

failure modes effects analysis documents, and about various filter migration test results.

28

Dr. Betensky will testify consistent with her deposition and expert report.  Further, Dr.

Betensky will testify about the foundation and bases for her opinions, including her review of medical and scientific literature, Bard documents, and other information she has reviewed and relied upon. Dr. Betensky will also respond to opinions and testimony of defense experts.

> Darren R. Hurst, M.D.
> c/o Beus Gilbert
> 701 N 44th Street
> Phoenix, Arizona 85008

Dr. Hurst is Plaintiff's vascular and interventional radiologist expert. Dr. Hurst is expected to testify as to the Defendants' liability and the design problems associated with the IVC filter, causation, and damages. Dr. Hurst will testify consistent with his deposition and expert report in this case. Further, Dr. Hurst will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon. Dr. Hurst will also provide foundational testimony for Plaintiff's medical illustrations and animations. Dr. Hurst will also respond to opinions and testimony of defense experts.

> David A. Kessler, M.D.
> c/o Beus Gilbert
> 701 N 44th Street
> Phoenix, Arizona 85008

Dr. Kessler is a medical doctor and former FDA commissioner. Dr. Kessler is expected to testify consistent with his expert report and depositions. Further, Dr. Kessler will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon. Plaintiff also anticipates that Dr. Kessler will also respond to opinions and testimony of defense experts.

> Suzanne Parisian, M.D.
> MD Assist, Inc.
> 7117 N. 3rd St.
> Phoenix, AZ 85020

Dr. Parisian is a medical doctor and former FDA employee. Dr. Parisian is expected to testify consistent with her expert report and depositions. Further, Dr. Parisian will testify

about the foundation and bases for her opinions, including his review of medical and scientific literature, Bard documents, and other information she has reviewed and relied upon.  Plaintiff also anticipates that Dr. Parisian will also respond to opinions and testimony of defense experts.

> Thomas Kinney, MD, MSME
> c/o Beus Gilbert
> 701 N 44th Street
> Phoenix, Arizona 85008

Dr. Kinney is an interventional radiology expert for Plaintiff.  Dr. Kinney is expected to testify about the general liability of the Bard defendants.  Dr. Kinney will further testify consistent with his deposition and expert report in this litigation.  Further, Dr. Kinney will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon.  Dr. Kinney will also respond to opinions and testimony of defense experts.

> Robert McMeeking, Ph.D.
> c/o Beus Gilbert
> 701 N 44th Street
> Phoenix, Arizona 85008

Dr. McMeeking is a materials and mechanical engineer and is experienced in safety, reliability and effectiveness of biomedical implant devices.  Dr. McMeeking is expected to testify that the design of the Recovery filter is inherently dangerous and prone to numerous failure modes.  There are safer alternative designs which were available to Defendants.  Dr. McMeeking is expected to testify and describe alternative designs of IVC filters including the Simon Nitinol filter, which are feasible and reduce the tendency to tilt, perforate, migrate, fracture and otherwise fail.

Dr. McMeeking is expected to testify about his analyses and calculations which predict stress, strain, and strength of the Bard Recovery vena cava filter.  He will explain why the filter testing conducted by Defendants was inadequate and misleading.  Further, Dr. McMeeking will testify about the foundation and bases for his opinions, including his review of medical and scientific literature, Bard documents, and other information he has reviewed and relied upon.  Dr. McMeeking is also expected to testify about the following:

1      •     The Recovery filter has a design that makes it prone to migration, tilting and
2           perforation/penetration through the vena cava.

3      •     The driving force for tilting is the relaxation of strain energy in the filter.

4      •     Tilting allows arms and legs to spread out, thereby reducing the strain and
5           strain energy in the filter.

6      •     The filter design makes it probable that limbs will perforate into the wall of
7           the vena cava.

8      •     Pressure applied from the arms and legs of the filter provide the driving
9           forces that lead to penetration in the vena cava walls.

10      •     The filter design causes increased pressure from the arms and legs against
11           the vena cava wall.

12      •     The relatively sharp ends of some arms and legs of the IVC filter can press
13           aggressively into the vena cava wall thereby contributing to higher pressure
14           to the vena cava wall when the filter becomes severely tilted.

15      •     A severely tilted filter will likely perforate the vena cava wall.

16      •     The association between failure modes found with Bard filters.

17  Dr. McMeeking may also respond to opinions and testimony of defense experts.  In

18  addition, Plaintiff anticipates that Dr. McMeeking will testify consistent with his expert

19  reports and depositions given to date.

20         Mark Moritz, M.D.
        c/o Counsel for Bard Peripheral Vascular and C.R. Bard
21

22  Dr. Moritz gave general expert opinions on behalf of Bard in the MDL, as well as case

23  specific opinions in at least one of the MDL bellwethers.  Plaintiff expects that he is

24  knowledgeable regarding the matters that were the subject of his deposition taken on July

25  18, 2017, in *In re:  Bard IVC Filters Products Liability Litigation*, No. MD-15-02641-

26  PHX-DGC, and will testify consistent with that deposition.

27         Derek David Muehrcke, M.D.
        c/o Beus Gilbert
28         701 N 44th Street
        Phoenix, Arizona 85008

1   Dr. Muehrcke is a cardiothoracic and vascular surgeon.  Dr. Muehrcke is expected to

2   testify about the liability of the Bard defendants as well as causation and damages caused

3   by the defective IVC filter.  Dr. Muehrcke will testify consistent with his deposition and

4   expert report in this case.  Further, Dr. Muehrcke will testify about the foundation and

5   bases for his opinions, including his review of medical and scientific literature, Bard

6   documents, and other information he has reviewed and relied upon.  Dr. Muehrcke will

7   also provide foundational testimony for Plaintiff's medical illustrations and animations.

8   Dr. Muehrcke will also respond to opinions and testimony of defense experts.

9
            Frederick B. Rogers, M.D.
            c/o Counsel for Bard Peripheral Vascular and C.R. Bard
10

11   Dr. Rogers gave general expert opinions on behalf of Bard in the MDL, as well as case

12   specific opinions in at least one of the MDL bellwethers.  He was the author of a large

13   study establishing that IVC filters do not reduce the rate of PE in trauma patients.

14   Plaintiff further expects that he is knowledgeable regarding the matters that were the

15   subject of his deposition taken on July 18, 2017, in *In re:  Bard IVC Filters Products*

16   *Liability Litigation*, No. MD-15-02641-PHX-DGC, and will testify consistent with that

17   deposition.

18
            J. Matthew Sims, MC, MS
            c/o Beus Gilbert
19          701 N 44th Street
            Phoenix, Arizona 85008
20

21   Mr. Sims is a Vocational Economist expert for the Plaintiff.  He will provide testimony

22   and opinion as to the present value of the life care plan for Plaintiff and projection of costs

23   prepared by Plaintiff's Medical Services Consultant and Life Care Planner expert, Lora

24   White.  He will testify consistent with his expert report and deposition given in this case.

25
            Moni Stein, MD
            c/o Counsel for Bard Peripheral Vascular and C.R. Bard
26

27   Dr. Stein gave general expert opinions on behalf of Bard in the MDL, as well as case

28   specific opinions in at least one of the MDL bellwethers.   Plaintiff expects that he is

knowledgeable regarding the matters that were the subject of his deposition taken on July

31, 2017 in *In re:  Bard IVC Filters Products Liability Litigation*, No. MD-15-02641-

PHX-DGC, and will testify consistent with that deposition.

> Michael Streiff, M.D.
> c/o Beus Gilbert
> 701 N 44th Street
> Phoenix, Arizona 85008

Dr. Streiff is a hematology expert for Plaintiff.  Dr. Streiff is expected to testify about the

general liability of the Bard defendants, including without limitation the risk versus

benefit analysis associated with the use of IVC filters.  Dr. Streiff will further testify

consistent with his deposition and expert report in this litigation.  Further, Dr. Streiff will

testify about the foundation and bases for his opinions, including his review of medical

and scientific literature, medical and scientific literature he has authored and the

associated research, Bard documents, and other information he has reviewed and relied

upon.  Dr. Streiff will also respond to opinions and testimony of defense experts.

> Lora K. White, RNBC, BSN, CCM, CNLCP
> c/o Beus Gilbert
> 701 N 44th Street
> Phoenix, Arizona 85008

Ms. White is a Medical Services Consultant and Life Care Planner expert for the Plaintiff.

She prepared a life care plan for Plaintiff and projection of costs for the same arising from

the injuries and damages caused by the failure of Plaintiff's Bard Filter.  She will testify

consistent with her expert report and deposition given in this case.

**3.**      **Witnesses who may be called at trial (Live and/or by deposition):**

> Brett Baird
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Baird was a Senior Product Manager for BPV in 2007 and a Marketing Manager for

BPV from 2008 through 2011.  Plaintiff expects that he is knowledgeable regarding the

1  matters that were the subject of his employment with Bard and his deposition taken on

2  June 9, 2016, in the Bard IVC Filter MDL.

3          Brian Barry
           c/o Counsel for Bard Peripheral Vascular and C.R. Bard
4

5  Mr. Barry was the Vice President Regulatory/Clinical Affairs for Bard Access Systems

6  from 1994 through 1997, Vice President Corporate Regulatory Affairs for C.R. Bard from

7  1997 through 2000, and Vice President of Regulatory Affairs and Clinical Affairs for C.R.

8  Bard from 2003 to 2007.  Plaintiff expects that he is knowledgeable regarding the matters

9  that were the subject of his employment with Bard and his deposition taken on January 31,

10  2014, in *Jones v. C.R. Bard, Inc.*, United States District Court, Northern District of Texas,

11  Dallas Division, Case No. 3:13-cv-00599-K.

12          Kevin Boyle
           c/o Counsel for Bard Peripheral Vascular and C.R. Bard
13

14  Mr. Boyle was Vice President of Research & Development at BPV from 2013 through

15  2015.  Plaintiff expects that he is knowledgeable regarding the matters that were the

16  subject of his employment with Bard and his deposition taken on February 2, 2017, in the

17  Bard IVC Filter MDL.

18          Gary S. Cohen, M.D.
           Temple University
19          Medicine Education and Research Building (MERB)
           3500 N. Broad Street
20          Philadelphia, PA 19140

21  Dr. Cohen is an Interventional Radiologist at Temple University Hospital.  He was a

22  consultant and key opinion leader for Bard on IVC filters.  Plaintiff expects that he is

23  knowledgeable regarding the matters that were the subject of his deposition taken on

24  January 25, 2017, in the Bard IVC Filter MDL.

25          Robert Cortelezzi
           c/o Counsel for Bard Peripheral Vascular and C.R. Bard
26

27  Mr. Cortelezzi was an employee at BPV from approximately 1990 to 2008; he was a

28  Regional Manager from 2004 through 2008.  Plaintiff expects that he is knowledgeable

regarding the matters that were the subject of his employment with Bard and his

deposition taken on November 11, 2016, in the Bard IVC Filter MDL.

> Thomas Ferari
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Ferari was an Engineer at BPV.  Plaintiff expects that he is knowledgeable regarding

the matters that were the subject of his employment with Bard and his depositions taken

on October 20, 2010, in *Vedas v. C.R. Bard, Inc., et al.*, Superior Court of Arizona,

Maricopa County, Case No. CV2010- 019655, and all related cross-noticed cases and

April 2, 2014, in *Coker v. C.R. Bard, Inc., et al.*, United States District Court, Northern

District of Georgia, Atlanta Division, Case No. 1:13-cv-0515.

> Kay Fuller
> 308 Meadowlark Rd
> Santa Ynez, CA 93460

Ms. Fuller was Senior Regulatory Specialist at BPV from 1999 through 2004.  Plaintiff

expects that she is knowledgeable regarding the matters that were the subject of her

employment with Bard and her depositions taken on November 9, 2010, in *Newton v. C.R.*

*Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2009-019232,

and January 11, 2016, in the Bard IVC Filter MDL.

> Brooke Gillette
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Gillette was sales representative at C.R. Bard from 2003 through 2006. Plaintiff

expects that she is knowledgeable regarding the matters that were the subject of her

employment with Bard and her deposition taken on July 11, 2014, in the *Rackliff v. C.R.*

*Bard, et al*., Superior Court of Arizona, Maricopa County, Case no. CV2011-021206.

> Holly Glass
> c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Glass was Vice President Government & Public Relations at C.R. Bard from 2002

through 2009.  Plaintiff expects that she is knowledgeable regarding the matters that were

the subject of her employment with Bard and her deposition taken on September 23, 2016,

in the Bard IVC Filter MDL.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jason Greer
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Greer was a Sales Representative and then District Manager at BPV from 1999 through 2007.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on June 20, 2010, in *Newton v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2009-019232, October 22, 2010, in *Vedas v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-019655, August 11, 2014, in *Barkley, et al. v. C.R. Bard, Inc., et al.*, Arizona Superior Court, Maricopa County, Case No. CV2011-021250, and September 26, 2011, in *Tyson v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-011149.

John Lehman, M.D.
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Dr. Lehman was Group Medical Director and Vice President of Medical Affairs for C.R. Bard from 1991 to 1995; he was a consultant and acting Medical Director for C.R. Bard in 2003 and 2004.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on April 2, 2013, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJ-WGC, and all related cross-noticed cases and August 7, 2014, in *Coker v. C.R. Bard, Inc., et al.*, United States District Court, Northern District of Georgia, Atlanta Division, Case No. 1:13-cv-0515.

Frank Lynch, M.D.
Penn State College of Medicine
500 University Drive
Hershey PA 17033

Dr. Lynch is an Interventional Radiologist at Penn State Hospital. He was a consultant and key opinion leader for Bard on IVC filters. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his relationship with Bard and his deposition taken on January 30, 2017, in the Bard IVC Filter MDL.

John McDermott
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. McDermott was President of BPV from 1996 through 2006.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on November 1, 2010, in *Tyson v. C.R. Bard, Inc., et al.*, Superior Court of Arizona, Maricopa County, Case No. CV2010-011149, and February 5, 2014, in *Giordano v. C.R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County Regional Center, Case No. 00069363-CU-PO-EC.

Abithal Raji-Kubba
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Raji-Kubba was Vice President Research & Development at BPV from 2007 through 2010 and Vice President Lutonix Technology Center from 2011 through 2012.  Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her deposition taken on July 18, 2016, in the Bard IVC Filter MDL.

Michael Randall
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Randall has been an employee of BPV in the Research & Development department since 2006; he has held several positions, including Engineer, Program Manager, Associate Director, and Director. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on January 18, 2017, and February 2, 2017, in the Bard IVC Filter MDL.

Kim Romney
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Ms. Romney has been an employee of BPV since 2011 and is presently a Senior Product Manager for Ports and Filters.  Plaintiff expects that she is knowledgeable regarding the matters that were the subject of her employment with Bard and her depositions taken on August 30, 2016, September 7, 2016, and January 18, 2017, in the Bard IVC Filter MDL.

1
2

Jack Sullivan
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

3    Mr. Sullivan was an employee at BPV from 1994 to 2013; he was in the Sales department

4    and held positions including District Manager and Regional Manager. Plaintiff expects

5    that he is knowledgeable regarding the matters that were the subject of his employment

6    with Bard and his depositions taken on September 16, 2016, and November 3, 2016, in the

7    Bard IVC Filter MDL.

8

Alex Tessmer
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

9    Mr. Tessmer was an employee and engineer at BPV in the Research & Development

10   department from 1997 through 2004. Plaintiff expects that he is knowledgeable regarding

11   the matters that were the subject of his employment with Bard and his deposition taken on

12   June 12, 2013, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of

13   Nevada, Case No. 3:12-cv-00344-RCJ-WGC.

14
15

Doug Uelmen
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

16   Mr. Uelmen was an employee at C.R. Bard and then BPV from approximately 1981

17   through 2005; he was Vice President Quality Assurance at BPV from 2003 through 2005.

18   Plaintiff expects that he is knowledgeable regarding the matters that were the subject of

19   his employment with Bard and his depositions taken on October 4, 2013, in *Giordano v.

20   C.R. Bard, Inc., et al.*, Superior Court of California, San Diego County, East County

21   Regional Center, Case No. 00069363-CU-PO-EC, and May 13, 2014, in *Coker v. C.R.

22   Bard, Inc.*, et al., United States District Court, Northern District of Georgia, Atlanta

23   Division, Case No. 1:13-cv-0515.

24
25

John Van Vleet
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

26   Mr. Van Vleet has been the Vice President Regulatory Affairs/Clinical Affairs at BPV

27
28

since 2007. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his depositions taken on September 29, 2016, and January 17, 2017, in the Bard IVC Filter MDL.

Bryan Vogel
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Vogel has been a Clinical Specialist II for Bard since 2012.  Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on August 15, 2017, in the Bard IVC Filter MDL.

John Weiland
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Weiland has been the President and Chief Operating Officer of C.R. Bard throughout the relevant time period. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on April 23, 2014, in *Phillips v. C.R. Bard, Inc.*, United States District Court, District of Nevada, Case No. 3:12-cv-00344-RCJWGC.

John Wheeler
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Wheeler has been employed in the Quality Assurance department at BPV since 2012. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and his deposition taken on July 29, 2016, in the Bard IVC Filter MDL.

Mark Wilson
c/o Counsel for Bard Peripheral Vascular and C.R. Bard

Mr. Wilson worked in the Sales department at BPV from 2006 through 2010 as a sales training manager. Plaintiff expects that he is knowledgeable regarding the matters that were the subject of his employment with Bard and the deposition taken on January 31, 2017, in the Bard IVC Filter MDL.

**4.      Any witness identified by Defendants.**

1

**Defendants' Witnesses:**

2       Because of the time limits, Defendants request that the following issues be

3   addressed during the Pretrial Conference. The parties have met and conferred on these

4   issues and, as set forth above, Plaintiffs do not believe these issues are appropriate for

5   inclusion in this pretrial order:

6       1.       Plaintiffs have indicated that they intend to play the depositions of certain of

7   Defendants' expert witnesses who Defendants do not intend to call during this trial.

8   Defendants request the same ruling as the Court made in the previous trials that while

9   Plaintiffs may use portions of the depositions, "they may not disclose through argument or

10  deposition excerpts that the experts were originally retained by Defendants." (Dkt 10382,

11  Page 3:22-26). And further that before a deposition of a Bard expert may be played that

12  "there should be some showing … that no other expert of similar qualifications is

13  available, or that the unavailable expert has some unique testimony to contribute." (*Id*.,

14  Page 4:104).

15      2.       Plaintiffs list two regulatory experts (Dr. Kessler and Dr. Parisian).

16  Defendants request that Plaintiffs identify which one they intend to call.

17      3.       Plaintiffs have listed Dr. Kinney as both a fact and an expert witness, and

18  state that they intend to call him to testify about his consulting work for Bard.  Defendants

19  object to Dr. Kinney testifying as a fact witness and refers to the Court's Order granting

20  Defendants' Motion *in Limine* on this topic.  (Dkt. 10075 at page 2).  "Plaintiffs may not

21  question Dr. Kinney about his prior work for Bard, and should instruct him not to mention

22  it in his testimony." (*Id*. At page 3:3-4).

23      4.       Plaintiffs have identified multiple interventional radiologists as experts

24  witnesses they intend to call as expert witnesses (including three named by Defendants in

25  other cases, two of whom Defendants withdrew).  Defendants object to this as cumulative,

26  and ask Plaintiffs to identify who they intend to call.

27      5.       Given the large number of witnesses who have been listed as possible trial

28  witnesses including Bard employees and former who have been subpoenaed by Plaintiffs,

and for whom Bard has accepted subpoenas, and for the efficiency of the trial under the time limits, Defendants request that, as the Court directed and parties agreed in the previous MDL trials, the parties provide each other with the names of witnesses who will be called live at least 48 hours in advance of the witness being called.

**DEFENDANTS' WITNESSES:**

Defendants' witnesses who shall be called at trial (either live or by deposition):

**Robert Carr**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Carr is currently Vice President of International at BPV. He previously held the title of Senior Director of Research and Development at BPV, with responsibility for IVC filters. Mr. Carr may provide testimony regarding biomedical and biomechanical engineering generally, as well as testimony regarding the design, development, manufacture, testing, clearance, evolution, and use of Bard filters, specifically. Mr. Carr may also provide testimony that was the subject of his previous testimony or the subject of declarations/affidavits he has submitted in this action.

**Andre Chanduszko**
May be contacted c/o Nelson Mullins
Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Chanduszko is an employee of BPV working as a staff engineer with responsibilities related to the design, development, and testing of IVC filters. Mr. Chanduszko may provide testimony regarding biomedical and biomechanical engineering generally, as well as testimony regarding the design, development, manufacture, testing, clearance, evolution, and use of Bard filters, specifically. Mr. Chanduszko may also provide testimony that was the subject of previous disclosures or his previous testimony.

**Chad Modra**
May be contacted c/o Nelson Mullins Riley & Scarborough

LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Modra was formerly Vice President of Quality Assurance at BPV, and is currently Staff Vice President of Operations at C. R. Bard, Inc. Mr. Modra may testify regarding any and all aspects of Bard's quality assurance processes that are in place or that have been in place for Bard's retrievable IVC filters. Mr. Modra may testify regarding Bard's processes and procedures for addressing complaints, including complaint handling, investigations, and MDR reporting for its IVC filters. He may also testify to certain communications and inspections/audits with FDA. To the extent that evidence related to the FDA Warning and 483 Letters is admitted, Mr. Modra may offer testimony regarding the same. Mr. Modra may also provide testimony that was the subject of his previous testimony or the subject of declarations/affidavits he has submitted in this action.

**Christopher S. Morris, M.D.**
Department of Radiology
The University of Vermont Medical Center
111 Colchester Avenue
Burlington, VT 05401
802-847-8359
Expert Witness

**Subject Matter:** Dr. Morris is a medical doctor and is a Fellow of the Society of Interventional Radiology. He is certified in Radiology and holds a Certificate of Added Qualifications in Vascular and Interventional Radiology. Dr. Morris is a Professor of Radiology and Surgery at the College of Medicine at the University of Vermont. Dr. Morris may provide expert testimony about the historical use, risks, and benefits of IVC filters; the health conditions that IVC filters are used to treat; alternate treatments for DVT and Pulmonary Embolism; and the medical literature related to IVC filters. Dr. Morris will also testify regarding his personal experience placing and retrieving IVC filters, including Bard IVC filters, and specifically that Bard retrievable filters are safe and effective. He may respond to assumptions, opinions, and testimony offered by various Plaintiffs' experts as they relate to the same. Dr. Morris also may provide expert

testimony about Plaintiffs' medical treatment and her IVC filter. Dr. Morris is expected to

offer opinions and testify consistent with his expert report(s) served in the MDL, and in

this case, and his previous deposition and trial testimony.

Witnesses who may be called at trial (either live, by deposition or prior testimony):

**Murray Asch**
c/o Lakeridge Health Corporation
Director of Interventional Radiology
580 Harwood Ave. S
Oshawa, ON L1S 2J4

**Subject Matter:** Dr. Asch is an Interventional Radiologist who was involved in a pilot

study to assess the retrievability of the Recovery filter. Defendants expect that he is

knowledgeable regarding the matters that were the subject of his study and work with

Bard, as well as his deposition taken on May 2, 2016, in *In re Bard IVC Filters Prod. Liab.*

*Litig.*, MDL No. 2641, United States District Court, District of Arizona ("the Bard IVC

Filter MDL") and his trial testimony in *Booker v. Bard* and *Jones v. Bard*, United States

District Court, District of Arizona

**Brain Barry**
May be contacted c/o Nelson Mullins Riley & Scarborough
LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Barry is a former employee of C. R. Bard. He may testify

regarding the matters that were the subject of his employment with Bard and his

deposition.

**Kevin Boyle**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Boyle is currently the Vice President of Research and Development

for BPV. Mr. Boyle may testify about BPV's policies and procedures in place for its

research and development of its products, including IVC filters. He may testify regarding

the testing, development, and design of Bard's IVC filters. He may also provide testimony that was the subject of his previous deposition testimony.

> **Paul Briant, Ph.D., P.E.**
> Exponent
> 149 Commonwealth Drive
> Menlo Park, CA 94025
> 650-326-9400
> Expert Witness

**Subject Matter:** Dr. Briant is a mechanical engineer who specializes in mechanical engineering, solid mechanics, and finite element analysis (FEA) of structures, including medical devices. He is a Principal Engineer with Exponent Failure Analysis Associates. Dr. Briant may provide expert testimony on mechanical engineering, solid mechanics, and finite element analysis (FEA). He may respond to assumptions, opinions, and testimony offered by Plaintiffs' expert Dr. McMeeking. Dr. Briant is expected to offer opinions and testify consistent with his expert report(s) served in the MDL, and his previous deposition and trial testimony.

> **David Ciavarella, M.D.**
> May be contacted c/o Nelson Mullins Riley & Scarborough LLP
> 201 17th Street NW, Suite 1700, Atlanta, GA 30363
> 404-322-6000
> Fact Witness

**Subject Matter:** Dr. Ciavarella is an employee of C. R. Bard, Inc. He is currently Vice President, Corporate Clinical Affairs at Bard, and he has held that title since he began working for C. R. Bard in 2004. Dr. Ciavarella may testify concerning any and all aspects of Bard's clinical affairs policies, procedures, and practices that are, or have been, in place with respect to Bard's IVC filters. Dr. Ciavarella may also provide testimony that was the subject of his previous deposition testimony.

Based on reports received by Bard, Dr. Ciavarella may also testify concerning the rates of complications with Bard's IVC filters and analyses performed by Bard regarding adverse event rates. Dr. Ciavarella may also testify that the complication rates reported to Bard remain below the guidelines established by the Society of Interventional Radiologists and Bard's action limits. He may also provide testimony that was the subject

1    of his previous deposition testimony.

2            **Robert Cortelezzi**
        May be contacted c/o Nelson Mullins Riley & Scarborough LLP
3       201 17th Street NW, Suite 1700, Atlanta, GA 30363
        404-322-6000
4       Fact Witness

5    **Subject Matter:** Mr. Cortelezzi was an employee at BPV from approximately 1990 to

6    2008; he was a Regional Manager from 2004 through 2008. He may testify regarding the

7    matters that were the subject of his employment with Bard and his deposition taken on

8    November 11, 2016, in the Bard IVC Filter MDL.

9            **Joni Creal**
        May be contacted c/o Nelson Mullins Riley & Scarborough LLP
10      201 17th Street NW, Suite 1700, Atlanta, GA 30363
        404-322-6000
11      Fact Witness

12   **Subject Matter:** Ms. Creal started with BPV in 2009. She is Associate Director of

13   Regulatory Affairs. She may testify about BPV's overall regulatory strategy for its filter

14   lines. She may also testify concerning other regulatory options considered by BPV when it

15   determined the best approach to gain FDA clearance for its products. Ms. Creal may

16   testify regarding communications between the FDA and BPV concerning the clearance

17   process for its filters, and any communication between BPV and the FDA concerning

18   these matters. Ms. Creal may also testify regarding BPV's response to requests from the

19   FDA. Ms. Creal may also testify concerning BPV's decision to conduct clinical trials, and

20   the process and procedures for clinical trials and studies.

21           Ms. Creal may also testify regarding the steps that BPV took to ensure that the

22   FDA was always abreast of complications, product improvements, and potential changes

23   to IFUs for its filters. In this regard, Ms. Creal may testify regarding BPV's open and

24   frank communications with the FDA and the FDA's appreciation for BPV's openness and

25   honesty.

26           **Len DeCant**
        May be contacted c/o Nelson Mullins Riley & Scarborough LLP
27      201 17th Street NW, Suite 1700, Atlanta, GA 30363
        404-322-6000
28      Fact Witness

**Subject Matter:** Mr. DeCant is a former employee of BPV. He served as Vice President of Research and Development from 2002 through 2007. Mr. DeCant may testify regarding any and all aspects of the design, development, testing, clearance, evolution, and use of Bard filters, including Bard's policies and procedures for design, testing, and evaluation of filters. Mr. DeCant may also provide testimony that was the subject of his previous deposition testimony.

**John DeFord**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter**: Dr. DeFord is currently Senior Vice President of Science, Technology and Clinical Affairs of C. R. Bard. Dr. DeFord may testify regarding any and all aspects of the design, development, testing, clearance, evolution, and use of Bard filters, including Bard's policies and procedures for design, testing, marketing and evaluation of filters. Dr. DeFord may also provide testimony that was the subject of his previous deposition testimony.

**Mary Edwards**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Ms. Edwards is a former Vice President for Regulatory/Clinical Affairs of BPV. She may provide testimony regarding of the regulatory clearance process undertaken by BPV for the Recovery® Filter including the 510(k) processes and actions taken by BPV. Additionally, Ms. Edwards may testify concerning BPV's overall regulatory strategy for its filter lines, including the regulatory approach taken by BPV concerning the Recovery® Filter. In addition, Ms. Edwards may also testify concerning other regulatory options considered by BPV when it determined the best approach to gain FDA clearance for its new product. Ms. Edwards may testify regarding the regulatory history of Bard's filters, communications between the FDA and BPV concerning the Recovery® Filter, the clearance process for the Recovery® Filter, and post-clearance

communications BPV had with the FDA while she was employed with BPV and testimony that was the subject of her depositions.

**Audrey Fasching, Ph.D., P.E.**
Anamet, Inc.
26102 Eden Landing Road, Suite 3
Hayward, CA 94545
510-887-8811
Expert Witness

**Subject Matter:** Dr. Fasching is a metallurgical engineer with experience in the areas of failure analysis, welding, heat treatment, corrosion and biomaterials, including nitinol. She is a Senior Materials Engineer at Anamet. She may provide expert testimony about the properties and uses of nitinol in medical devices, industry standards for manufacture of medical device grade nitinol, her observations of the various filter conditions through examination of the filter at issue in this case and other Bard IVC filters. Dr. Fasching may respond to assumptions, opinions, and testimony offered by Plaintiffs' expert Dr. McMeeking. Dr. Fasching is expected to offer opinions and to testify consistent with her expert report(s) served in the MDL, and her previous deposition testimony.

**David W. Feigal, M.D., M.P.H.**
11806 Barranca Road
Santa Rosa Valley, CA 93012
540-738-2550
Expert Witness

**Subject Matter:** Dr. Feigal is a medical doctor with a Master's Degree in Public Health in the fields of epidemiology and biostatistics. Dr. Feigal may provide expert testimony as an epidemiologist regarding the available resources for analysis of complications rates in IVC filters, including the SIR Guidelines and the limitations of those resources in accurately reporting rates, predicting rates, or comparing rates of those devices. He may respond to assumptions, opinions, and testimony offered by various Plaintiffs' experts as they relate to such analyses. Dr. Feigal is expected to offer opinions and testify consistent with his expert report served in the MDL, and his previous deposition testimony.

**Thomas Ferari**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP

1    201 17th Street NW, Suite 1700, Atlanta, GA 30363
     404-322-6000
2    Fact Witness

3    **Subject Matter:** Mr. Ferari is a contract engineer for Bard.  He may provide testimony

4    that was the subject of his previous deposition.

5    **Timothy Fischer**
     May be contacted c/o Nelson Mullins Riley & Scarborough LLP
6    201 17th Street NW, Suite 1700, Atlanta, GA 30363
     404-322-6000
7    Fact Witness

8    **Subject Matter:** Mr. Fischer is a former employee of BPV.  He may provide testimony

9    that was the subject of his prior deposition.

10   **Kay Fuller**
     308 Meadowlark Rd
11   Santa Ynez, CA 93460

12   **Subject Matter:** Ms. Fuller is a former employee of BPV.  She may provide testimony

13   that was the subject of her previous deposition.

14   **Brooke Gillette**
     May be contacted c/o Nelson Mullins Riley & Scarborough LLP
15   201 17th Street NW, Suite 1700, Atlanta, GA 30363
     404-322-6000
16   Fact Witness

17   **Subject Matter:** Ms. Gillette is a former employee of Bard.  She may provide testimony

18   that was the subject of her previous deposition.

19   **Christopher Ganser**
     May be contacted c/o Nelson Mullins Riley & Scarborough LLP
20   201 17th Street NW, Suite 1700, Atlanta, GA 30363
     404-322-6000
21   Fact Witness

22   **Subject Matter:** Mr. Ganser is a retired employee of C. R. Bard who has worked for Bard

23   for approximately twenty-two years, and retired in 2011. He held various positions while

24   working for Bard, Vice President of Quality Assurance and Environmental Services and

25   Safety. Mr. Ganser may testify concerning how such policies, procedures, and practices

26   were developed, implemented and reviewed. Mr. Ganser may also testify concerning any

27   and all aspects of Bard's quality control and field assurance practices and procedures that

28   are, or have been, in place with respect to Bard's IVC filters as well as testimony that was

1   the subject of his deposition.

2   **Holly Glass**
3   8280 Greensboro Drive, Suite 601
    McLean, VA 22101
    703-752-1115
4   Fact Witness

5   **Subject Matter:** Ms. Glass was Vice President Government & Public Relations at C. R.

6   Bard from 2002 through 2009. She may testify regarding the matters that were the subject

7   of her employment with Bard and her deposition.

8   **Clement J. Grassi, M.D., FSIR**
    18 Sussex Road
9   Winchester, MA 01890
    617-732-7263
10  Expert Witness

11  **Subject Matter:** Dr. Grassi is a medical doctor and is a Fellow of the Society of

12  Interventional Radiology. He is certified in Radiology and holds a Certificate of Added

13  Qualifications in Vascular and Interventional Radiology. From 1985 to 2001, Dr. Grassi

14  held positions of Clinical Fellow, Instructor, and Assistant Professor of Radiology at

15  Harvard Medical School. He is currently affiliated with Hallmark Health and partners

16  Healthcare System. Dr. Grassi may provide expert testimony about the historical use,

17  risks, and benefits of IVC filters; the health conditions that IVC filters are used to treat;

18  and his experience with the Society of Interventional Radiology, specifically including the

19  history and use of the Quality Improvement Guidelines and Practice Parameters relating to

20  IVC Filters that have been published by the SIR. He may also testify about the medical

21  literature related to IVC filters. He may respond to assumptions, opinions, and testimony

22  offered by various Plaintiffs' experts as they relate to the same. Dr. Grassi is expected to

23  offer opinions and testify consistent with his expert report served in the MDL, and his

24  previous deposition and trial testimony.

25  **Mickey Graves**
    May be contacted c/o Nelson Mullins Riley & Scarborough LLP
26  201 17th Street NW, Suite 1700, Atlanta, GA 30363
    404-322-6000
27  Fact Witness

28  **Subject Matter:** Mr. Graves is a Senior Research and Development Engineer with BPV.

Mr. Graves may testify about BPV's policies and procedures in place for its research and development of its products, including IVC Filters. He may testify regarding the testing, development, and design of Bard's IVC Filters. He may also testify regarding the evolution of Bard's IVC Filters, including the fact that Bard is constantly evaluating the medical devices it sells, and it is constantly striving to improve the performance of those devices. He may also provide testimony that was the subject matter of his previous deposition testimony.

> **Janet Hudnall**
> May be contacted c/o Nelson Mullins Riley & Scarborough LLP
> 201 17th Street NW, Suite 1700, Atlanta, GA 30363
> 404-322-6000
> Fact Witness

**Subject Matter:** Ms. Hudnall is a former employee of BPV who worked for BPV from 1998 to 2008. While at BPV, Ms. Hudnall held various positions, including Senior Marketing Manager. In those roles, Ms. Hudnall was involved with and has personal knowledge of, among other things, BPV's marketing strategies, policies, and practices with regard to the Bard's IVC filter line of products. Ms. Hudnall may testify concerning BPV's marketing strategies, policies, and practices with regard to the Recovery® and G2® Filters.

Ms. Hudnall may also testify concerning the training provided by BPV to physicians to familiarize them with the implantation and retrieval of the G2® Filter. Ms. Hudnall may also testify concerning BPV's practices and policies regarding complaints that were communicated by users. Ms. Hudnall may also testify concerning BPV's decision to conduct a clinical trial, called the EVEREST Study, and issues and events associated with or related to the EVEREST Study. In this regard, Ms. Hudnall may testify concerning the selection and clearance process for securing investigators and investigation sites, the creation and development of the study protocol, the creation and development of the informed consent form, and the steps taken by BPV to ensure that the study ran properly and according to established guidelines. She may also provide

testimony that was the subject of her previous deposition testimony.

**Brian Hudson**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Hudson has been an employee of BPV since 1999 as a Quality Engineering Technician, a Senior Engineering Technician, and a Quality Engineer, Mr. Hudson may provide testimony regarding filter risk assessment and analysis, review of testing protocols and regulatory compliance data, and the creation of Failure Modes and Effects Analyses (FMEA) that assess the potential hazards related to filters and the mitigation of those hazards. He may also provide testimony that was the subject of his previous deposition testimony.

**Sanjeeva Kalva, M.D.**
c/o Beus Gilbert
701 N. 44St.
Phoenix, Arizona 85005
Expert Witness

**Subject Matter:** Dr. Kalva is an interventional radiologist retained by plaintiffs as an expert witness.  He is expected to testify about the expert report he partially authored with Dr. Thomas Kinney and Dr. Ann Roberts, and their compensation as expert witnesses.  He is further expected to testify consistent with his deposition given in the MDL.

**Sanjeeva Kandarpa, M.D.**
National Institute of Biomedical Imaging and Bioengineering
Division of Applied Science and Technology
9000 Rockville Pike
Building 31 Room 1C14 31 Center Dr. Bethesda, MD 20814

**Subject Matter:** Dr. Kandarpa was the medical monitor for the Everest Study.  He may provide testimony that was the subject of his previous deposition testimony.

**John Lehman, M.D.**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
Fact Witness

**Subject Matter:** Dr. Lehman was Group Medical Director and Vice President of Medical Affairs for C. R. Bard from 1991 to 1995; he was a consultant and acting Medical

Director for C. R. Bard in 2003 and 2004. He may provide testimony regarding the matters that were the subject of his work with Bard and his depositions.

> **William Little**
> May be contacted c/o Nelson Mullins Riley & Scarborough LLP
> 201 17th Street NW, Suite 1700, Atlanta, GA 30363
> 404-322-6000
> Fact Witness

**Subject Matter:** Mr. Little is BPV's former Vice President of Global Marketing. He may provide testimony regarding BPV's marketing strategies, policies, and practices with regard to Bard's IVC filter line of products. He may also testify regarding communications by Bard to health care providers regarding its filters and changes or revisions to those communications over time. He may also provide testimony that was the subject matter of his previous deposition testimony.

> **Judy Ludwig**
> May be contacted c/o Nelson Mullins Riley & Scarborough LLP
> 201 17th Street NW, Suite 1700, Atlanta, GA 30363
> 404-322-6000
> Fact Witness

**Subject Matter:** Ms. Ludwig is currently Senior Manager of Field Assurance at BPV. Ms. Ludwig may testify regarding any and all aspects of Bard's quality assurance processes that are in place or that have been in place for Bard's retrievable IVC filters. Ms. Ludwig may testify regarding Bard's processes and procedures for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its filters. She may also testify to certain communications and inspections/audits with FDA. To the extent that evidence related to the FDA Warning and 483 Letters is admitted, Ms. Ludwig may offer testimony regarding the same. Ms. Ludwig may also provide testimony that was the subject of her previous deposition testimony.

> **John McDermott**
> May be contacted c/o Nelson Mullins Riley & Scarborough LLP
> 201 17th Street NW, Suite 1700, Atlanta, GA 30363
> 404-322-6000
> Fact Witness

**Subject Matter:** Mr. McDermott was President of BPV from 1996 through 2006. He may testify about matters that were the subject of his employment with Bard and his

1   depositions.

2               **Patrick McDonald**
                May be contacted c/o Nelson Mullins Riley & Scarborough LLP
3               201 17th Street NW, Suite 1700, Atlanta, GA 30363
                404-322-6000
4               Fact Witness

5   **Subject Matter:** Mr. McDonald is an employee of BPV as a Sales Representative and

6   Field Sales Trainer. He may testify regarding the matters that were the subject of his

7   deposition.

8               **Michael Miller, MD**
                University of Maryland School of Medicine
9               Cardiovascular Medicine Division
                110 S Paca St., Suite 7-124
10              Baltimore, MD, 21201

11  **Subject Matter:** Dr. Miller is a cardiologist and an expert retained by Bard.  He may

12  testify regarding the opinions in his expert reports submitted in this case.

13              **Leah Nitke, D.O.**
                Aurora Health Center
14              2845 Greenbrier Rd, Ste 120
                Green Bay, WI 54311
15

16  **Subject matter:** Dr. Nitke is Ms. Tinlin's primary care provider and may testify

17  regarding her care and treatment of Ms. Tinlin.  She may testify regarding the matters that

18  were the subject of her deposition.

19              **David Owens, MD**
                4545 Harris Trail
20              Atlanta, GA 30327

21  **Subject Matter:** Dr. Owens is a radiologist and an expert retained by Bard.  He may

22  testify regarding the opinion in his expert report submitted in this case.

23              **Daniel Orms**
                May be contacted c/o Nelson Mullins Riley & Scarborough LLP
24              201 17th Street NW, Suite 1700, Atlanta, GA 30363
                404-322-6000
25              Fact Witness

26  **Subject Matter**: Mr. Orms is a former employee of BPV. He may testify about matters

27  that were the subject of his employment with Bard and his depositions.

28              **Shari O'Quinn**

May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Ms. O'Quinn is a former employee of BPV who worked for BPV from 2003 to 2007. Ms. O'Quinn held three different positions while working for BPV, including Manager of Regulatory Affairs, Director of Regulatory Affairs, and Director of Regulatory and Clinical Affairs. Ms. O'Quinn may testify concerning BPV's overall regulatory strategy for its filter lines, including the regulatory approach taken by BPV concerning the Bard filters. Ms. O'Quinn may testify regarding communications between the FDA and Bard concerning Bard's filters. She may also testify concerning Bard's post-market activities concerning Bard's IVC filters, including investigations, and communications with FDA. She may also provide testimony that was the subject of her previous testimony.

**Abithal Raji-Kubba**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Ms. Raji-Kubba was the Vice President of Research and Development for BPV. She was with the company from at least 2007 through 2011. She may testify regarding her involvement in and knowledge of the design modifications that were made to Bard's IVC filter line of products and the premarket testing that was conducted on the modified devices. She may also testify regarding her knowledge regarding why these design changes were needed and if and to what extent they made each IVC filter a safer device and could have been instituted sooner. She may also provide testimony that was the subject of her previous deposition testimony.

**Mike Randall**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mr. Randall is the former Director of Research and Development for BPV. Mr. Randall may provide testimony regarding biomedical and biomechanical engineering generally, as well as testimony regarding the design, development, manufacture, testing, clearance, evolution, and use of Bard filters, specifically. Mr. Randall may also provide testimony that was the subject of his previous testimony.

> **Joshua Riebe, MD**
> Green Bay Radiology
> 2941 S Ridge Rd
> Green Bay, WI 54304

**Subject Matter:** Dr. Riebe implanted the filter in Mrs. Tinlin. He may testify about his care and treatment of Mrs. Tinlin. He may also provide testimony that was the subject of his deposition in this case.

> **Kimberly Romney**
> May be contacted c/o Nelson Mullins Riley & Scarborough LLP
> 201 17th Street NW, Suite 1700, Atlanta, GA 30363
> 404-322-6000
> Fact Witness

**Subject Matter:** Ms. Romney is currently the Senior Product Manager for C. R. Bard, Inc. She may provide testimony regarding BPV's marketing strategies, policies, and practices with regard to Bard's IVC filter line of products. Ms. Romney may also testify regarding communications by Bard to health care providers regarding its filters and changes or revisions to those communications over time. She may also provide testimony that was the subject of her previous deposition testimony.

> **Gin Schulz**
> May be contacted c/o Nelson Mullins Riley & Scarborough LLP
> 201 17th Street NW, Suite 1700, Atlanta, GA 30363
> 404-322-6000
> Fact Witness

**Subject Matter:** Ms. Schulz is a former employee of C. R. Bard, Inc. While at C. R. Bard, Inc., Ms. Schulz was the Staff Vice President of Quality Assurance Operations. Prior to working in this capacity, she worked for BPV as a Vice President of Quality Assurance. Ms. Schulz may testify live at trial regarding any and all aspects of Bard's quality assurance processes that are in place or that have been in place for Bard's IVC

1    filters. Ms. Schulz may testify regarding Bard's processes and procedures for adverse

2    complaint handling, complaint investigation, and reporting of adverse events to the FDA

3    regarding its filters. Ms. Schulz may also provide testimony that was the subject of her

4    previous deposition testimony.

5         Based on reports received by Bard, she may also testify regarding the rates of

6    complications with Bard's IVC filters and any analysis performed by Bard regarding

7    adverse event rates. Ms. Schulz may also testify that the complication rates with Bard's

8    commercially available filters (whether fracture, migration, perforation, or tilt) remain

9    below the guidelines established by the Society of Interventional Radiologists and Bard's

10   action limits. She may also testify that, upon receiving reports of adverse events, Bard was

11   and has been proactive in investigating those reports and analyzing whether the risk of

12   fracture for its products is in line with industry standards and guidelines, which it is and

13   always has been. She may also provide testimony that was the subject of her previous

14   deposition testimony.

15        **Christopher Smith**
         May be contacted c/o Nelson Mullins Riley & Scarborough LLP
16       201 17th Street NW, Suite 1700, Atlanta, GA 30363
         404-322-6000
17       Fact Witness

18   **Subject Matter:** Mr. Smith is a former employee of BPV. He may testify about matters

19   that were the subject of his employment with Bard and his deposition.

20        **Heather Stanko, MD**
         Neurology Consultants of Bellin Health
21       725 South Webster Ave, Suite 201
         Green Bay, WI 54301
22

23   **Subject Matter:** Dr. Stanko is Mrs. Tinlin's neurologist.  She may testify about her care

24   and treatment of Mrs. Tinlin.  She may testify about matters that were the subject of her

25   deposition given in this case.

26        **Piotr Sobiesczyk**
         Harvard Medical School
27       Department of Medicine
         Cardiovascular Division
28       75 Francis Street

Boston, MA 02115

**Subject Matter:** Dr. Sobiesczyk is a Cardiovascular Specialist and was retained by Bard as an expert.  He may testify about the matters contained in his expert report in this case and his prior testimony in the MDL.

> **William Stavropoulos, MD**
> May be contacted c/o Samantha Conway, Christie & Young, P.C.
> 1880 John F. Kennedy Blvd, 10th Floor
> Philadelphia, PA 19103
> Fact Witness

**Subject Matter:** Dr. Stavropoulos was the principal investigator for his facility on the EVEREST study. He has written articles concerning IVC filters. Additionally, Dr. Stavropoulos may testify regarding his clinical experience with IVC filters such as his experience with and techniques for placing and retrieving IVC filters, as well as indications for the use of IVC filters. He may also testify regarding the advantages of retrievable IVC filters. He may discuss the benefits, risks, and potential complications of IVC filters, such as migration, fracture, and perforation, and the imaging and other evaluation of those events and their clinical significance, if any. He may also testify regarding the MAUDE database and whether it can be used to determine the fracture rate of a medical device. He may also discuss the dynamic nature of the IVC as well as the body's reaction to and endothelialization of IVC filters. He may also testimony about matters that were the subject of his deposition.

> **Jack Sullivan**
> May be contacted c/o Nelson Mullins Riley & Scarborough LLP
> 201 17th Street NW, Suite 1700, Atlanta, GA 30363
> 404-322-6000
> Fact Witness

**Subject Matter**: Mr. Sullivan was a former Regional Sales Manager for BPV from 2005 to 2013. Prior to 2005, he held other sales positions with BPV. He may testify about BPV's sales practices and procedures, and the sales person's role in interacting with a doctor and the responsibility of sales people to report adverse events as well as about matters that were the subject of his depositions.

1

2

3

              **Mehdi Syed**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

4 **Subject Matter:** Mr. Syed is the current Vice President of Operations Finance at C. R.

5 Bard, Inc. Mr. Syed may testify about the net worth of BPV and C. R. Bard, Inc., as well

6 as the percentage of Bard's revenue attributable to BPV and filter products specifically.

7 Mr. Syed may also testify about the nature of Bard's shareholders and the process and

8 rationale behind dividend payments. He may also provide testimony that is the subject of

9 his deposition.

10

11

12

              **Alex Tessmer**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

13 **Subject Matter:** Mr. Tessmer is a Product Manager at BPV. Mr. Tessmer was previously

14 employed by BPV as an engineer between 1997 and June 2005. In that position,

15 Mr. Tessmer contributed to filter product development occurring during the period 2002

16 to June 2005. He may provide general testimony regarding mechanical engineering and

17 specific testimony regarding product design, technology development, and materials

18 testing. He may also provide testimony that was the subject of his previous deposition

19 testimony.

20

21

22

23

24

            **Ronald A. Thisted, Ph.D.**
Office of the Provost
The University of Chicago
Levi Hall, Room 432
5801 South Ellis Avenue
Chicago, IL 60637
773-702-5539
Expert Witness

25 **Subject Matter:** Dr. Thisted is a Professor in the Department of Public Health Sciences,

26 the Department of Statistics, the Department of Anesthesia & Critical Care, the

27 Undergraduate College, and the Committee on Clinical Pharmacology and

28 Pharmacogenomics at the University of Chicago. He is an expert in the fields of statistics,

biostatistics, mathematics, and epidemiology. He may respond to assumptions, opinions, and testimony offered by various Plaintiffs' experts as they relate to the same. Dr. Thisted is expected to offer opinions and testify consistent with his expert report served in the MDL, and his previous deposition testimony.

**Donna-Bea Tillman, Ph.D., MPA, FRAPS**
Biologics Consulting
400 N. Washington Street, Suite 100
Alexandria, Virginia 22314
703-739-5695
Expert Witness

**Subject Matter:** Dr. Tillman may provide expert testimony concerning FDA regulatory requirements, FDA regulatory compliance, the FDA clearance process, and post-clearance monitoring requirements. Dr. Tillman may further testify about the specific steps Bard followed to obtain FDA clearance of its IVC filters, and Bard's compliance with post-clearance monitoring requirements. To the extent that evidence related to the FDA Warning and 483 Letters is admitted, Dr. Tillman may testify regarding the same. Dr. Tillman is expected to offer opinions and testify consistent with her expert report(s) served in the MDL and her previous testimony.

**Debra Tinlin**
408 E. Park St.
Bonduel, WI 54107

**Subject Matter:** Mrs. Tinlin is a plaintiff.

**James Tinlin**
408 E Park St
Bonduel, WI 54107

**Subject Matter:** Mr. Tinlin is a plaintiff.

**Scott Trerotola, MD**
May be contacted c/o Samantha Conway, Christie & Young, P.C.
1880 John F. Kennedy Blvd, 10th Floor
Philadelphia, PA 19103
Fact Witness

**Subject Matter:** Dr. Trerotola may testify regarding his clinical experience with IVC filters such as his experience with and techniques for placing and retrieving IVC filters, as

1  well as indications for the use of IVC filters. He may also testify regarding the advantages

2  of retrievable IVC filters. He may discuss the benefits, risks, and potential complications

3  of IVC filters, such as migration, fracture, and perforation, and the imaging and other

4  evaluation of those events and their clinical significance, if any. He may also discuss the

5  dynamic nature of the IVC as well as the body's reaction to and endothelialization of IVC

6  filters. He may also provide testimony that was the subject of his previous deposition

7  testimony.

8  **Doug Uelman**
   May be contacted c/o Nelson Mullins Riley & Scarborough LLP
9  201 17th Street NW, Suite 1700, Atlanta, GA 30363
   404-322-6000
10  Fact Witness

11  **Subject Matter:** Mr. Uelmen was employed by Bard from 1996 to 2005 as Vice

12  President for Quality Assurance. Prior to working in that capacity, Mr. Uelmen was

13  BPV's Director of Quality Assurance. Mr. Uelmen may testify regarding any and all

14  aspects of Bard's quality control processes that are in place or that have been in place for

15  Bard's IVC filters. Mr. Uelmen may testify regarding Bard's processes and procedures for

16  adverse complaint handling, complaint investigation, and reporting of adverse events to

17  the FDA regarding its filters. He may also provide testimony that was the subject of his

18  previous deposition testimony.

19  **John Van Vleet**
   May be contacted c/o Nelson Mullins Riley & Scarborough LLP
20  201 17th Street NW, Suite 1700, Atlanta, GA 30363
   404-322-6000
21  Fact Witness

22  **Subject Matter:** Mr. Van Vleet an employee of BPV. While at BPV, Mr. Van Vleet has

23  been the Vice President of Regulatory and Clinical Affairs since 2007. Mr. Van Vleet may

24  testify concerning any and all aspects of Bard's clinical affairs policies, procedures, and

25  practices that are, or have been, in place with respect to Bard's IVC filters. Mr. Van Vleet

26  may also testify regarding the regulatory clearance process and communications between

27  the FDA and BPV. Mr. Van Vleet may also provide testimony that was the subject of his

28  deposition testimony or the subject of declarations/affidavits he has submitted in this

1   action.

2   **Timothy Vartanian, MD, PhD**
    Weill Cornell Medicine
3   Brain and Mind Research Institute
    Judith Jaffe Multiple Sclerosis Center
4   1305 York Avenue, 2ND Floor
    New York, NY 10021, USA
5

6   **Subject Matter:** Dr. Vartanian is neurologist and was retained by Bard as an expert in

7   this case.  He may testify about the matters in his expert report produced in this case.

8   **Carol Vierling**
    May be contacted c/o Nelson Mullins Riley & Scarborough LLP
9   201 17th Street NW, Suite 1700, Atlanta, GA 30363
    404-322-6000
10  Fact Witness

11  **Subject Matter**: Ms. Vierling is a former employee of BPV who held the position of

12  Director of Regulatory Affairs from 1992 through June 2002. Ms. Vierling may also

13  testify regarding the 510(k) submission submitted by Bard to the FDA for the Recovery®

14  Filter in 2002. In this regard, she may testify regarding her signing of the Truthfulness and

15  Accuracy Statement included in that submission. She may also testify regarding the cover

16  letter to the FDA that accompanied the 510(k) submission, why it identified Kay Fuller as

17  the new FDA contact person for this device, how she signed that cover letter, and why she

18  signed the cover letter in the manner that she did. She may also testify to her interactions

19  with Kay Fuller and that Ms. Fuller never expressed any concerns to her regarding the

20  Recovery® Filter 510(k) submission, the testing of that device, the safety or efficacy of

21  that device, or the Asch clinical study regarding that device. She may also provide

22  testimony that was the subject of her previous deposition testimony.

23  **Bryan Vogel**
    May be contacted c/o Nelson Mullins Riley & Scarborough LLP
24  201 17th Street NW, Suite 1700, Atlanta, GA 30363
    404-322-6000
25  Fact Witness

26  **Subject Matter:** Mr. Vogel is a Principal Clinical Assurance Specialist at BPV. He may

27  testify regarding his role and Bard's processes, procedures, and practices for adverse

28  complaint handling, complaint investigation, and reporting of adverse events to the FDA

1  regarding its filters. He may also testify regarding the qualifications and training of BPV's

2  Field Assurance personnel. He may also provide testimony that was the subject matter of

3  his previous deposition testimony.

4        **Allison Walsh**
          May be contacted c/o Nelson Mullins Riley & Scarborough LLP
5        201 17th Street NW, Suite 1700, Atlanta, GA 30363
          404-322-6000
6        Fact Witness

7  **Subject Matter:** Ms. Walsh is a former employee of Bard.  She may testify regarding the

8  matters that were the subject of his deposition.

9        **John Weiland**
          May be contacted c/o Nelson Mullins Riley & Scarborough LLP
10       201 17th Street NW, Suite 1700, Atlanta, GA 30363
          404-322-6000
11       Fact Witness

12  **Subject Matter:** Mr. Weiland is a retired President and Chief Operating Officer of Bard.

13  He may testify regarding the matters that were the subject of his deposition.

14        **John Wheeler**
          May be contacted c/o Nelson Mullins Riley & Scarborough LLP
15       201 17th Street NW, Suite 1700, Atlanta, GA 30363
          404-322-6000
16       Fact Witness

17  **Subject Matter:** Mr. Wheeler is a former Field Assurance Engineering Manager at BPV.

18  He may testify regarding Bard's processes, procedures, and practices for adverse

19  complaint handling, complaint investigation, and reporting of adverse events to the FDA

20  regarding its filters. He may also testify regarding the qualifications and training of BPV's

21  Field Assurance personnel. He may also testify regarding BPV's tracking and trending of

22  complaints regarding Bard IVC filters. He may also provide testimony that was the

23  subject matter of his previous deposition testimony.

24        **Steve Williamson**
          May be contacted c/o Nelson Mullins Riley & Scarborough LLP
25       201 17th Street NW, Suite 1700, Atlanta, GA 30363
          404-322-6000
26       Fact Witness

27  **Subject Matter:** Mr. Williamson is the current President of BPV. Mr. Williamson may

28  testify concerning BPV's broad and overarching policies as a company and specifically

concerning Bard's IVC filters, including, but not limited to, the companies' business practices, research and development, manufacturing, marketing and sales policies, and regulatory strategies and policies. He may also provide testimony that was the subject of his previous deposition testimony.

**Mark Wilson**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Mark Wilson was the Director of Sales, Training, and Development at C. R. Bard, Inc. from 2004 to 2011. Mr. Wilson may provide testimony regarding Bard's sales practices and procedures. He may also testify regarding training programs for Bard's sales personnel. He may also provide testimony that was the subject of his previous deposition.

**Natalie Wong**
May be contacted c/o Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700, Atlanta, GA 30363
404-322-6000
Fact Witness

**Subject Matter:** Ms. Wong is an employee of BPV. She began working for the company in 2002 and has been the Quality Engineering Manager in Field Assurance since 2007. Prior to working in this capacity, she worked for BPV as a Senior Quality Engineer. Ms. Wong may testify regarding any and all aspects of Bard's quality control and field assurance processes that are, or have been, in place for Bard's IVC filters. Ms. Wong may testify regarding Bard's processes and procedures for adverse complaint handling, complaint investigation, trending analysis, root cause analysis, data integrity audits, and design failure mode analysis relating to Bard's IVC filters.

Based on reports received by Bard, she may also testify regarding the rates of complications with Bard's IVC filters and analyses performed by Bard regarding adverse event rates. She may also provide testimony that was the subject of her previous deposition testimony.

**John Worland**

21605 Crestone Needles Drive
Parker, Colorado 80138

**Subject Matter:** Mr. Worland is a radiology technician in Colorado.  He may testify about the matters that were the subject of his deposition.

**Any witness identified by Plaintiffs.**

F.    **LIST OF EXHIBITS**

1.    The parties have listed exhibits on their exhibit lists subject to pending motions in limine and other rulings by the Court. By listing exhibits, the parties do not contend that the exhibits are necessarily admissible and do not intend to waive any objection they have to the admissibility of the same.

2.    The parties have met and conferred on the issue of exchanging and providing to the Courtroom Deputy Clerk with impeachment exhibits 48 hours in advance of the trial. The parties agree they would like to provide any impeachment exhibits to the Courtroom Deputy Clerk, 24 hours before their intended use.

3.    As the Court has ordered in prior MDL trials, the parties agree to provide a list of exhibits to be used with each witness at least 24 hours before the witness is called to testify.

4.    If the Court grants Defendants' Motion *in Limine* relating to Recovery migration deaths, Defendants propose that the parties use the same redactions to exhibits agreed to and approved by the Court in the *Jones* and *Hyde* trials.

5.    The following Exhibit Lists are attached hereto: **Exhibit A** – Plaintiffs' Exhibit List with Defendants' Objections; **Exhibit B** – Defendants' Additional Exhibit List with Plaintiffs' and Defendants' Objections.

a.    Defendants' Contention:  Many of the documents listed as potential exhibits were produced by Defendants subject to a Protective Order (Dkt. 268 and 269). Throughout this litigation the parties have been filing and moving to seal certain documents pursuant to that Order. However, the Protective Order does not cover the use of documents as exhibits at trial. (*See*, Dkt. 268, Para, 28). The Court addressed this in the

1    prior bellwether trials and in its ruling on Bard's Motion for reconsideration. Pursuant to

2    the Court's ruling in Dkt. 12069, Defendants raise this issue to preserve it and are

3    prepared to address it during the Pretrial Conference. Until the exhibits are admitted,

4    Defendants do not know which exhibits, if any, they need to move to seal. Defendants

5    request that the exhibits be maintained by the Court reporter and not made available

6    publicly throughout the trial and that Defendants be given a reasonable time after the

7    conclusion of the trial to determine whether they intend to file a motion to seal, and that

8    the Court set a briefing schedule for a post-trial briefing schedule on a motion to seal, if

9    Defendants determine that they intend to move to seal any of the admitted exhibits.

10            b.    Plaintiffs' Contention:  Plaintiffs disagree with this Defendants'

11   Contention, and maintain their position that exhibits are public record at the time admitted

12   into evidence, and that the Court need only adhere to its prior Order on these issues.  *See*

13   Doc. 14446. Further, Plaintiffs contend Local Rule 5.6 regards the pre-trial sealing of

14   exhibits and has no application to the use of exhibits at trial.

15            As the Court explained in its Orders, "'the release of information in open court is a

16   publication of that information and . . . operates as a waiver of any rights a party had to

17   restrict its future use.'" (Doc. 11642 at 2 (quoting *Carnegie Mellon Univ. v. Marvell Tech.*

18   *Grp., Ltd.*, No. CIV.A. 09-290, 2013 WL 1336204, at *5 (W.D. Pa. Mar. 29, 2013); Doc.

19   12069 at 3; Doc. 14446.) The Court has explicitly held that trial exhibits are not subject to

20   the protective order.  Doc. 14446. To the extent an exhibit was not merely admitted into

21   evidence but also was published or discussed in open court, the exhibit is no longer

22   confidential, and Defendants have waived the right to have the exhibit sealed. *See In re*

23   *Google Inc. Gmail Litig.,* No. 13-MD-02430-LHK, 2014 WL 10537440, at *6 (N.D. Cal.

24   Aug. 6, 2014) ("[W]here, as here, the parties did not request closure of the courtroom . . .

25   and the disclosures were not inadvertent, the Court will not permit an ex post facto

26   redaction of statements made in open court[.]"); *Fleming v. Escort, Inc.,* No. CV 09-105-

27   S-BLW, 2013 WL 1290418, at *4.

28

6.      The following exhibits are admissible in evidence and may be marked in evidence by the Clerk:

a.      Any exhibit listed in **Exhibits A and B** that is not objected to is agreed to by the parties as admissible.

7.      As to the following exhibits, the parties have reached the following stipulations:

8.      The following records are stipulated to be authentic and satisfy the business records exception, but the parties reserve all other available objections:

a.      Plaintiffs' medical records and bills.

9.      As to the following exhibits, the party against whom the exhibit is to be offered objects to the admission of the exhibit and offers the objection stated below:

a.      Plaintiffs' Exhibits: *See* attached **Exhibit A**.

b.      Defendants' Exhibits: *See* attached **Exhibit B**.

The parties shall submit their exhibit lists in writing, five days before trial, in a format to be designated by the Court at the Final Pretrial Conference, in WordPerfect® 9.0 format either by e-mail to Nancy_Outley@azd.uscourts.gov or on an IBM-compatible computer disk.

## G.      DEPOSITIONS TO BE OFFERED

The parties have included deposition designations subject to pending motions in limine and other rulings by the Court. By making those designations the parties do not contend that the testimony is necessarily admissible and do not intend to waive any objection they have to the admissibility of the same.

### 1.      Deposition Designations:

Defendants' Position: Because of new issues raised by Plaintiffs regarding deposition designations and because of issues that occurred with the deposition designations played in the prior MDL trials, Defendants request that the parties provide depositions designations and the exhibits they intend to display at least 48 hours before the deposition designations are played, and that the completed transcript of the video to be

1  played and copies of the exhibits as they will be displayed be provided at least 24 hours
2  before the deposition designations are played.

3      Plaintiffs' Response:  Plaintiffs do not agree that Defendants' proposal is
4  reasonable or necessary.  There is nothing about this trial, or the deposition designations
5  alluded to by Defendants, that necessitates a departure from the process used in previous
6  trials.  Further, the notice requirements that Defendants propose would be unreasonably
7  burdensome, and do not reflect practical realities of trial preparation, in which decisions
8  about specific exhibits, for example, are made more rapidly than what Defendants'
9  proposal contemplates.

10          **a.    Deposition of Dr. Kalva:**

11      Defendants' Position:  As Defendants stated on the deposition submitted to the
12  Court for review, Defendants object to plaintiff's use of the deposition of Dr. Kalva on the
13  basis that Plaintiffs have not demonstrated that this expert witness is unavailable under
14  Federal Rule of Civil Procedure 32(a)(4) or Federal Rule of Evidence 804.

15      Plaintiffs' Position: As Plaintiffs stated in the deposition submitted to the Court,
16  Plaintiffs are only offering Dr. Kalva as a percipient witness and his role as the author of a
17  relevant article relating to his personal experience with Bard filters.  His testimony does
18  not need to be treated any differently than that of other fact witnesses.

19      **H.    MOTIONS IN LIMINE (JURY TRIAL)**

20      All motions *in limine* have been filed and fully briefed, with the exception of
21  Plaintiffs' Motion *in Limine* No. 2, which Plaintiffs supplemented on April 8, 2019 (Doc.
22  16748) and to which Defendants are permitted, pursuant to the Court's Order of April 8,
23  2018 (Doc. 16749), to file a supplemental response by April 24, 2019. Those that have not
24  yet been ruled on are set forth in Section I, below.

25      **I.    LIST OF PENDING MOTIONS**

26      1.    Plaintiffs' Motion to Exclude Certain Opinions and Testimony of
27  Christopher S. Morris, M.D. (Doc. 15077);

28

2.      Plaintiffs' Motion *in Limine* No. 1: Medical Care as Intervening Cause of Injury (Doc. 16576);

3.      Plaintiffs' Motion *in Limine* No. 2: Vena Cava Size (Doc. 16578) (supplement filed on April 8, 2019 (Doc. 16748);

4.      Plaintiffs' Motion *in Limine* No. 3 to Preclude Evidence of Unrelated Medical Conditions (Doc. 16577);

5.      Plaintiffs' Motion *in Limine* No. 4: Bard's Internal Rates Based on Reporting Rates of Filter Complications (Doc. 16579);

6.      Plaintiffs' Motion *in Limine* No. 5: Retrievable Filter Sales Versus SNF Filter Sales (Doc. 16580);

7.      Plaintiffs' Motion *in Limine* No. 6: Social Security Disability Benefits Which are Barred by Wisconsin's Collateral Source Rule (Doc. 16581);

8.      Defendants' Motion to Strike Portions of Dr. McMeeking's *Tinlin* Rule 26 Report (Doc. 14016);

9.      Defendants' Motion for Summary Judgment As to Plaintiffs Debra and James Frances Tinlin's Claims (Doc. 15071);

10.     Defendants' Motion to Exclude the Tinlin Case-Specific Opinions of Robert M. McMeeking, Ph.D. (Doc. 15075);

11.     Defendants' Motion *in Limine* No. 1 to Exclude Evidence of Recovery Filter Cephalad Migration Deaths (Doc. 16575);

12.     Defendants' Motion *in Limine* No. 2 to Exclude Evidence of FDA Warning Letter (Doc. 16572);

13.     Defendants' Motion *in Limine* No. 3 to Exclude Evidence of the Crisis Communications Plan (Doc. 16573);

14.     Defendants' Motion *in Limine* No. 4 Regarding a Patient at Dr. Muehrcke's Hospital (Doc. 16574).

1     **J.     PROCEDURES FOR EXPEDITING TRIAL**

2          The parties agree to the following procedures that might expedite trial to the extent

3     possible: (a) presenting stipulated summaries of work history and professional background

4     and qualifications of witnesses rather than using deposition excerpts. The parties agree to

5     meet and confer and at least 24 hours before a deposition is played to provide the

6     proposed summary to opposing counsel for review and approval; (b) stipulations on

7     authenticity and foundation; and (c) using the courtroom technology to expedite the

8     presentation of evidence. The parties will also contact Nancy Outley at 602-322-7645 to

9     arrange a time to visit the courtroom and examine its technology.

10     **K.     ESTIMATED LENGTH OF TRIAL**

11          All times set forth by the parties below are approximate and given to the best of

12     counsels' ability. Nothing about these stated times is intended to limit the total time

13     available to either party in the event less time is used for one of the categories, as that time

14     will simply be reallocated to another category.

15          33 hours for Plaintiffs

16               1.5 hours opening statement

17               2.5 hours for closing, rebuttal and punitive damages

18               29 hours for direct and cross examination

19

20          These estimates are based on the Court's order (Doc. 12971) allocating 33 hours to

21     Plaintiffs.  Plaintiffs believe that they may require additional time, and reserve the right to

22     make that request during trial.

23          30 hours for Bard

24          Bard objects to any additional time being added to the trial after the entry of this

25     Pretrial Order. In the previous MDL trials, Bard made strategic decisions based on the

26     time allocated by the Court from the very outset of trial. Those strategic decisions

27     included, but were not limited to, determining the amount of time to spend on the cross-

28     examination of several of the Plaintiffs' principal experts. The Defendants believe that the

Court's decision to afford the Plaintiffs additional time, while certainly within the Court's discretion, unfairly penalized the Defendants for abiding by the limitations set by the Court and caused prejudice (particularly given how the Plaintiffs squandered the time originally provided with repetitive questioning and the frequent focus on collateral issues). *See*, *e.g.*, *Amarel v. Connell*, 102 F.3d 1494, 1514 (9th Cir. 1996), *as amended* (Jan. 15, 1997); see also *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1509 (9th Cir. 1995) (noting unfairness to defendant in providing Plaintiffs additional time after defendant had already made strategic decisions based on the court's original allocation).

**L.**     **JURY DEMAND**

A jury trial has been requested.

The parties stipulate that the request was timely and properly made.

**M.**     **JOINT PROPOSED JURY INSTRUCTIONS, JOINT PROPOSED VOIR DIRE QUESTIONS, AND PROPOSED FORMS OF VERDICT FOR JURY TRIALS**

The Joint Proposed Jury Instructions and Proposed Forms of Verdict shall be filed contemporaneously with this Final Proposed Pretrial Order.  As Case Management Order No. 43 directs, the parties' Proposed Jury Instructions will include an instruction concerning Ms. Tinlin's remote participation in the trial. Because Case Management Order No. 43 also provides that voir dire shall be limited to follow-up questions to the jury questionnaire, the parties are not submitting separate or additional voir dire questions.

**N.**     **CERTIFICATIONS**

The undersigned counsel for each of the parties in this action does hereby certify and acknowledge the following:

1.     All discovery has been completed.

2.     The identity of each witness has been disclosed to opposing counsel. Defendants cannot stipulate to this and incorporate their objections to Plaintiffs' multiple experts in Section E.

3.     Each exhibit listed herein: (1) is in existence; (2) is numbered; and (3) will be disclosed and shown to opposing counsel at a later date mutually agreeable to the

1    parties. The parties agree demonstrative exhibits will be exchanged or made available for

2    inspection at a later date agreed to by the parties.

3        4.    The parties agree and stipulate that the statement of the case used in the

4    juror questionnaire approved by the Court is to be used as the parties' joint statement of

5    the case.

6        5.    The parties have complied in all respects with the mandates of the Court's

7    Rule 16 Scheduling Order and Order Setting Final Pretrial Conference.

8        6.    The parties have made all of the disclosures required by the Federal Rules of

9    Civil Procedure (unless otherwise previously ordered to the contrary).

10       7.    The parties acknowledge that once this Proposed Final Pretrial Order has

11   been signed and lodged by the parties, no amendments to this Order can be made without

12   leave of Court.

13   **O.**     **<u>INFORMATION FOR COURT REPORTER</u>**

14       In order to facilitate the creation of an accurate record, the Parties will file a

15   "Notice to Court Reporter" **one week before trial** containing the following information

16   that may be used at trial:

17       1.    Proper names, including those of witnesses.

18       2.    Acronyms.

19       3.    Geographic locations.

20       4.    Technical (including medical) terms, names or jargon.

21       5.    Case names and citations.

22       6.    Pronunciation of unusual or difficult words or names.

23

24

25

26

27

28

1    LOPEZ McHUGH LLP                    NELSON MULLINS RILEY &
2                                        SCARBOROUGH LLP

3    By: s/ Mark S. O'Connor            By: s/ Richard B. North, Jr.
         Ramon Rossi Lopez                  Richard B. North, Jr.
4        (admitted *pro hac vice*)          (admitted *pro hac vice*)
         CA Bar No. 86361                   Georgia Bar No. 545599
5        100 Bayview Circle, Suite 5600     James F. Rogers
         Newport Beach, California 92660    (admitted *pro hac vice*)
6                                           South Carolina Bar. No. 012942
         Mark S. O'Connor                   Elizabeth C. Helm
7        BEUS GILBERT PLLC                  (admitted *pro hac vice*)
         701 N. 44th Street                 Georgia Bar No. 289930
8        Phoenix, AZ 85008                  Matthew B. Lerner
                                            (admitted *pro hac vice*)
9        *Attorneys for Plaintiffs*         Georgia Bar No. 446986
                                            201 17th Street, NW / Suite 1700
10                                          Atlanta, GA  30363

11                                          James R. Condo
                                            SNELL & WILMER LLP
12                                          One Arizona Center
                                            400 E. Van Buren, Suite 1900
13                                          Phoenix, AZ 85004-2202

14                                          *Attorneys for C. R. Bard, Inc. and Bard
                                            Peripheral Vascular, Inc.*
15

16                          _____

17

18

19

20

21

22

23

24

25

26

27

28

1   Based on the foregoing,

2   **IT IS ORDERED** that this Proposed Final Pretrial Order jointly submitted by the

3   parties is hereby **APPROVED** and **ADOPTED** as the official Pretrial Order of this Court.

4   DATED this ___ day of _____, 2019.

5

6                                    _____
                                     David G. Campbell
                                     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28