**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL15-2641-PHX-DGC |
| ──────────────────────────── | |
| Debra and James Tinlin, a married couple, | No. CV16-0263-PHX-DGC |
| Plaintiffs, | |
| v. | **ORDER** |
| C. R. Bard, Inc., a New Jersey corporation; and Bard Peripheral Vascular, Inc., an Arizona corporation, | |
| Defendants. | |

This multidistrict litigation proceeding ("MDL") involves thousands of personal injury cases brought against Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard"). Bard manufactures and markets medical devices, including inferior vena cava ("IVC") filters. The MDL Plaintiffs received implants of Bard IVC filters and claim they are defective and have caused serious injury or death.

One of the MDL cases is brought by Plaintiff Debra Tinlin. She received a Bard filter fourteen years ago. Her case has been chosen as one of several bellwether cases and is set for trial in May 2019. Defendants have filed a motion for summary judgment. Doc. 15071. The motion is fully briefed. Docs. 15696, 16011. The parties request oral argument, but it will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv

7.2(f). For reasons stated below, the Court will grant the motion in part and deny it in part.

## I. Background.

The IVC is a large vein that returns blood to the heart from the lower body. An IVC filter is a device implanted in the IVC to catch blood clots before they reach the heart and lungs. This MDL involves multiple versions of Bard IVC filters – the Recovery, G2, G2X, Eclipse, Meridian, and Denali. They are spider-shaped devices that have multiple limbs fanning out from a cone-shaped head. The limbs consist of legs with elastic hooks that attach to the IVC wall, and bent arms to catch or break up blood clots.

The MDL Plaintiffs allege that Bard filters are more dangerous than other IVC filters because they have higher risks of tilting, perforating the IVC, or fracturing and migrating to vital organs. Plaintiffs further allege that Bard failed to warn patients and physicians about these higher risks. Defendants dispute these allegations, contending that Bard filters are safe and effective, that their complication rates are low and comparable to those of other IVC filters, and that the medical community is aware of the risks associated with IVC filters.

## II. The Tinlin Plaintiffs.

Plaintiff Debra Tinlin has a history of deep vein thrombosis and pulmonary emboli. She received a Bard Recovery filter on May 7, 2005. Dr. Joshua Riebe implanted the filter.

On June 10, 2013, Ms. Tinlin experienced cardiac tamponade after the filter fractured and two struts embolized in the right ventricle of her heart. She had emergency surgery to drain a pericardial effusion. No fractured strut was found during the procedure. She was discharged ten days later.

On July 31, 2013, a fractured strut was removed through open heart surgery. A chest scan showed several other struts perforating the IVC wall. Subsequent scans revealed multiple fractured struts in the pulmonary arteries. These struts and the filter have not been removed.

Ms. Tinlin and her husband assert various claims against Bard under Wisconsin law, some of which have been withdrawn.[1] The following claims remain: failure to warn (Counts II and VII), design defect (Counts III and IV), misrepresentation (Counts VIII and XII), concealment (Count XIII), deceptive trade practices (Count XIV), and loss of consortium (Count XV). *See* Doc. 364 (master complaint); Doc. 1, Case No. CV-16-00263 (short-form complaint).[2]

Defendants seek summary judgment on the remaining claims and future damages, but not on Plaintiff's request for punitive damages. Doc. 15071 at 2-4. The Court will grant summary judgment on the misrepresentation and deceptive trade practices claims, deny summary judgment on the claims for failure to warn, design defect, concealment, and loss of consortium, and grant summary judgment in part with respect to future damages.

### III. Summary Judgment Standard.

A party seeking summary judgment "bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is warranted where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

---

[1] The parties agree that Wisconsin law governs the Tinlins' claims. Doc. 15071 at 3 n.1.

[2] The master complaint is the operative pleading in this MDL. It gives notice, pursuant to Rule 8, of the allegations that Plaintiffs assert generally. Plaintiff-specific allegations are contained in individual short-form complaints and fact sheets. *See* Doc. 249 at 6. The master complaint asserts seventeen claims and seeks both compensatory and punitive damages. Doc. 364 ¶¶ 166-349. The Tinlins do not assert wrongful death or survival claims (Counts XVI and XVII), and have withdrawn claims for manufacturing defect (Counts I and V), failure to recall (Count VI), negligence per se (Count IX), and breach of warranty (Counts X and XI). *See* Doc. 15071 at 2.

Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences are drawn in that party's favor because "[c]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions[.]" *Id.* at 255; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

### III. Failure to Warn Claims (Counts II and VII).

Plaintiffs assert strict liability and negligent failure to warn claims. *See* Doc. 364 ¶¶ 171-81, 210-17; Doc. 1 at 3, Case No. CV-16-00263. To establish each claim, Plaintiffs must show, among other things, that the lack of an adequate warning was a cause of their injuries. *See* Wis. Stat. § 895.047(1)(e) (a plaintiff asserting a strict liability claim must prove that "the defective condition was a cause" of her injuries); *Kessel v. Stansfield Vending, Inc.*, 714 N.W.2d 206, 211 (Wis. Ct. App. 2006) (a plaintiff claiming negligent failure to warn must prove a "causal connection between the defendant's breach of the duty of care and the plaintiff's injury"). "Under Wisconsin law, negligence or defect 'caused' an injury if it was a substantial factor in producing the injury." *Burton v. Am. Cyanamid*, No. 07-CV-0303, 2019 WL 325318, at *2 (E.D. Wis. Jan. 25, 2019); *see Sumnicht v. Toyota Motor Sales, U.S.A.*, 360 N.W.2d 2, 11 (Wis. 1984) ("The long-standing test for cause in Wisconsin is whether the defect was a substantial factor in producing the injury."); *Morgan v. Pa. Gen. Ins.*, 275 N.W.2d 660, 666 (Wis. 1979) ("The test of cause-in-fact is whether the negligence was a 'substantial factor' in producing the injury."); *Fandrey v. Am. Family Mut. Ins.*, 680 N.W.2d 345, 353 (Wis. 2004) ("When Wisconsin courts currently speak of 'cause,' they do so in the context of the substantial factor test for cause-in-fact."); *see also* Wis JI-Civil 1500 (general causation standard).

Defendants contend that the failure to warn claims fail because Plaintiffs cannot show that an adequate warning would have changed Dr. Riebe's decision to use a Recovery filter for Ms. Tinlin. Doc. 15071 at 3, 7-9. The Court does not agree.[3]

Defendants note that Dr. Riebe does not recall seeing the Recovery's instructions for use ("IFU") and does not routinely read IFUs or "dear doctor" letters. Doc. 15071 at 8-9. But "it does not follow that he would have ignored any warnings provided by [D]efendants." *Stevens v. Stryker Corp.*, No. 12-CV-63-BBC, 2013 WL 12109101, at *6 (W.D. Wis. May 9, 2013). Defendants do not contend that IFUs and "dear doctor" letters are the only avenues by which Bard can provide warnings to physicians. *See* Doc. 15071 at 9. Dr. Riebe testified that sales representatives for IVC filter manufacturers, including Bard, visited the hospital where he performed surgery and called on him as a customer throughout his practice. Doc. 15702 ¶ 10; *see* Doc. 15702-1 at 3, 10. Because Bard sales representatives could have personally provided warnings about the Recovery to Dr. Riebe, the fact that he did not read IFUs or "dear doctor" letters does not establish a lack of causation.

Dr. Riebe testified that he needed complete and accurate information from medical device manufacturers to help him conduct a proper risk-benefit analysis. Doc. 15702-1 at 5. He stated that he would have wanted to know about the Recovery's alleged higher risks of failure, and that Bard did not understand the root causes, did not have a good

---

[3] Defendants assert that they had a duty to warn Dr. Riebe, and not Ms. Tinlin directly, under the learned intermediary doctrine. *Id.* at 7-8. The Wisconsin Supreme Court has not decided whether to adopt the doctrine, and federal courts applying Wisconsin law are split on the issue. *See* Doc. 12007 at 14 n.6 (discussing the conflicting case law). The Court need not decide the issue on the present motion because summary judgment is not warranted on the failure to warn claims even under the learned intermediary doctrine. *See Forst v. SmithKline Beecham Corp.*, 602 F. Supp. 2d 960, 968 (E.D. Wis. 2009) (because a triable issue existed as to whether the defendant adequately warned the prescribing physician about the drug's risks, "the 'learned intermediary' doctrine would not preclude any 'failure to warn' claim, even if the court determined that the doctrine applied"). Defendants argue in their reply that Plaintiffs cannot prove causation if the duty to warn is owed to Ms. Tinlin (Doc. 16011 at 3-4), but the Court will not grant summary judgment based on an argument raised for the first time in a reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

- 5 -

understanding of the long-term performance of its retrievable filters or the dynamics of the IVC, had placed the Recovery on hold due to migration problems, and internally found the Recovery to have unacceptable risks. *Id.* at 6-8, 14. This information would have been important for understanding the Recovery's safety and conducting a proper risk-benefit analysis. *Id.* at 8-9, 19; *see* Doc. 15701 ¶¶ 17-22. Bard's knowledge that overweight patients tend to have large expansions of their IVCs, if shared with Dr. Riebe, would have helped him select a filter that would have remained in place in Ms. Tinlin. Doc. 15702-1 at 22; *see* Doc. 15702 ¶ 5.

A jury reasonably could infer from this evidence that Bard's failure to warn Dr. Riebe about the Recovery's higher risks of failure, Bard's lack of knowledge about the root causes, and the Recovery's known migration problems in overweight patients was a substantial factor in Dr. Riebe's decision to choose a Recovery for Ms. Tinlin. *See Burton v. Am. Cyanamid*, 334 F. Supp. 3d 949, 967 (E.D. Wis. 2018) (denying summary judgment where the jury could draw "the permissible inference . . . that the persons responsible for selecting [the product] would have heeded warnings regarding the risk . . . if such warnings had been issued"); *Stevens*, 2013 WL 12109101, at *6 (finding a triable issue with respect to causation even though the physician generally did not rely on information he received from the defendants when he decided to use their medical device); *Forst*, 602 F. Supp. 2d at 969 (a jury could rely on the prescribing physician's testimony that the lack of warning about the drug's increased risk for suicide prevented him from doing a proper risk-benefit analysis in concluding that his decision to prescribe would have changed); *Michaels v. Mr. Heater, Inc.*, 411 F. Supp. 992, 1007 (W.D. Wis. 2006) (denying summary judgment where the jury reasonably could find that the failure to provide adequate warnings was a substantial factor in causing the plaintiff's injuries).[4]

---

[4] Defendants object to Dr. Riebe's testimony that he would have wanted to know certain information about the Recovery, claiming that the testimony lacks foundation and the questions are incomplete hypotheticals. Doc. 16011 at 5 n.5. But Defendants do not provide a basis for the objections. Dr. Riebe clearly is qualified to testify about information he would want to know from IVC filter manufacturers in order to conduct a proper risk-benefit analysis. Defendants have not shown that this testimony should be disregarded at the summary judgment stage. *See Quanta Indemnity Co. v. Amberwood*

Defendants contend that because Dr. Riebe had no involvement in selecting the IVC filters used at his hospital, and never suggested that any filter other than a Recovery could have been used for Ms. Tinlin, no reasonable inference can be drawn that he would have selected a different filter regardless of what warning Bard provided. Doc. 15071 at 9. But Dr. Riebe testified that he often would switch to a Cook Bird's Nest filter for patients with large IVCs. Doc. 15702-1 at 25; *see* Doc. 15702 ¶ 5.

Defendants have not shown, as a matter of undisputed fact, that their alleged failure to warn was not a cause of Plaintiffs' injuries. The Court will deny summary judgment on the failure to warn claims.[5]

## IV. Misrepresentation Claims (Counts VIII and XII).

Wisconsin common law recognizes three distinct claims of misrepresentation: negligent, strict liability, and intentional or fraudulent. *See Van Den Heuvel v. AI Credit Corp.*, 951 F. Supp. 2d 1064, 1073 (E.D. Wis. 2013) (citing *Ollerman v. O'Rourke Co., Inc.*, 288 N.W.2d 95, 99 (Wis. 1980)); *see also Kaloti Enters, Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 211 (Wis. 2005) (noting that "intentional misrepresentation [is] sometimes referred to as fraudulent misrepresentation"). Each claim requires the plaintiff to show that she relied to her detriment on a false representation of fact. *See Van Den Heuvel*, 951 F. Supp. 2d at 1073; *Blenker Bldg. Sys., Inc. v. Array Fin. Servs.*, 340 F. Supp. 3d 792, 797-98 (W.D. Wis. 2018); *Novell v. Migliaccio*, 749 N.W.2d 544, 553

---

*Dev. Inc.*, No. CV 11-1807-PHX-JAT, 2014 WL 1246144, at *2 (D. Ariz. March 26, 2014) (material that could be presented in a form admissible at trial may be used to avoid summary judgment).

[5] Defendants assert that any failure to warn was not the "proximate cause" of Plaintiffs' injuries. Docs. 15071 at 7, 16011 at 5. But the use of "proximate cause" to describe the extent of liability based on lack of causal connection "has long since been abandoned in Wisconsin in favor of the 'substantial factor' test used to establish cause-in-fact, which is a jury issue." *Fandrey*, 680 N.W.2d at 353 (citations omitted); *see Michaels*, 411 F. Supp. at 1006 (noting that "proximate cause" is "a legal theory that Wisconsin no longer uses to discuss the causal connection between wrongdoing and injury"). Under current Wisconsin law, "proximate cause" is "simply short hand for the public policies a court may consider to deny recovery even if the plaintiff proves cause-in-fact." *Stevens*, 2013 WL 12109101, at *6. Defendants identify no such public policies.

(Wis. 2008); *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 239 (Wis. 2004); *Whipp v. Iverson*, 168 N.W .2d 201, 203-204 (Wis. 1969); *see also* Wis JI-Civil 2400.

Plaintiffs assert negligent and fraudulent misrepresentation claims. *See* Doc. 364 ¶¶ 218-28, 245-59; Doc. 1 at 3, Case No. CV-16-00263. Defendants argue that the claims fail because Plaintiffs cannot show that Ms. Tinlin or Dr. Riebe relied on any Bard representation in selecting a Recovery filter. Doc. 15071 at 9-10. The Court agrees.

Plaintiffs assert that a Bard sales representative may have met with Dr. Riebe in the past. Doc. 15696 at 7 (citing Doc. 15702 ¶ 10). But even if this were true, Plaintiffs present no evidence that the sales representative made representations on which Dr. Riebe relied in selecting a Recovery for Ms. Tinlin. Absent such evidence, Plaintiffs cannot establish their misrepresentation claims. *See Blenker Bldg. Sys.*, 340 F. Supp. 3d at 798 (noting that "reliance is an element of all common law misrepresentation claims") (citing *Novell*, 749 N.W.2d at 553); *Kimberly Area Sch. Dist. v. Zdanovec*, 586 N.W.2d 41, 51 (Wis. Ct. App. 1998) (the element of reliance is "common to all types of misrepresentation").

Plaintiffs assert that Dr. Riebe relied on risk-benefit information from those who trained him. Doc. 15696 at 7. Dr. Riebe was trained by Dr. John McDermott, an interventional radiologist at the University of Wisconsin. *Id.* Plaintiffs claim that Dr. McDermott was involved in a 2004 email with Bard employees that downplayed concerns about the number of Recovery migrations in bariatric patients. *Id.*; *see* Doc. 15702-1 at 23. From this evidence, Plaintiffs contend, "[i]t is more than reasonable to infer that Bard's actions caused Dr. Riebe's use of the Recovery filter and Ms. Tinlin's injuries." Doc. 15696 at 7.

But Plaintiffs present no evidence that misleading statements about Recovery migration problems were shared with Dr. Riebe, or that he relied on any such statements in selecting a Recovery for Ms. Tinlin. Moreover, it appears that the "John McDermott"

involved in the email is the former president of Bard Peripheral Vascular, and not the physician who trained Dr. Riebe at the University of Wisconsin. *See* Doc. 16011 at 6-7.[6]

Reliance is an essential element of Plaintiff's common law misrepresentation claims. *See Blenker Bldg. Sys.*, 340 F. Supp. 3d at 798; *Kimberly Area Sch. Dist.*, 586 N.W.2d at 51. Plaintiffs have failed to make a showing sufficient to establish the existence of this element. The Court will grant summary judgment on the negligent and fraudulent misrepresentation claims. *See Celotex*, 477 U.S. at 322; *Valente v. Sofamor, S.N.C.*, 48 F. Supp. 2d 862, 877 (E.D. Wis. 1999) (granting summary judgment where "the plaintiffs [did] not present evidence to show that they or their doctors relied on the defendants' alleged misrepresentations regarding the efficacy and safety of [their] pedicle screw device"); *Staudt v. Artifex Ltd.*, 16 F. Supp. 2d 1023, 1031 (E.D. Wis. 1998) (granting summary judgment where the plaintiff failed to point to any evidence that he relied on the defendants' misrepresentations about their spinal devices); *Collins v. Eli Lilly Co.*, 342 N.W.2d 37, 54 (Wis. 1984) (granting summary judgment on a misrepresentation claim because "[e]ven assuming that the defendants made misrepresentations concerning [their drug], since there was no reliance on those misrepresentations, there can be no recovery under this cause of action").

## V. Concealment Claim (Count XIII).

A defendant is liable for fraudulent concealment in Wisconsin "when, having a duty to disclose, he intentionally fails to do so with the intent to deceive the plaintiff and thereby induces the plaintiff to act to his or her detriment." *Schmidt v. Bassett Furniture Indus.*, No. 08-C-1035, 2009 WL 3380354, at *10 (E.D. Wis. Oct. 20, 2009) (citing *Kaloti Enters.*, 699 N.W.2d at 211-12); *see Ollerman*, 288 N.W.2d at 100 (noting that the "failure to disclose [a] fact is treated in the law as equivalent to a representation of the

---

[6] In the email, McDermott wrote to various high-level Bard employees that "*we* have had several discussions with physicians about bariatric patients and I've asked *our Filter team* to summarize what we know to date." Doc. 15702-2 at 2 (emphasis added). He further stated that he would provide a "summary of *our filter complaints [and] shipments*." *Id.* A copy of the email provided by Defendants shows McDermott's email address as "John.McDermott@crbard.com." Doc. 16011-1 at 2.

- 9 -

non-existence of the fact."). Plaintiffs allege that Defendants failed to disclose, among other things, that Bard filters had higher risks of complications than other IVC filters. *See* Doc. 364 ¶¶ 261-62.

Defendants contend that there is no evidence showing that Bard's alleged concealment of adverse information about the Recovery caused Plaintiffs' injuries. Doc. 15071 at 10. But as explained above, Dr. Riebe testified that he expected Bard to warn him about the Recovery's higher risks of complications. *See* Docs. 15701 ¶¶ 17-22, 15702-1 at 5-9, 12-19. He explained that a manufacturer's concealment of true risks prevents him from conducting a proper risk-benefit analysis. Doc. 15702-1 at 5. A jury reasonably could conclude from this evidence that Bard's failure to disclose the Recovery's true risks was a cause of Dr. Riebe's decision to use the device for Ms. Tinlin, and her resulting injuries. The Court will deny summary judgment on the concealment claim.

## VI. Deceptive Trade Practices Act Claim (Count XIV).

Plaintiffs assert a violation of Wisconsin's Deceptive Trade Practices Act, Wis. Stat. § 100.18. *See* Doc. 364 ¶ 321; Doc. 1 at 4, Case No. CV-16-00263. The statute prohibits sellers from making, with the intent to induce the public to enter into an obligation relating to the purchase of goods, any representation that is untrue, deceptive, or misleading. § 100.18(1). The statute provides a private right of action for "[a]ny person suffering pecuniary loss because of a violation[.]" § 100.18(11)(b)(2). "[T]here are three elements in a § 100.18 cause of action: (1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was 'untrue, deceptive or misleading,' and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff." *Novell*, 749 N.W.2d at 553 (citing *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 732 N.W.2d 792, 798 (Wis. 2007)); *see Skyrise Constr. Grp. v. Annex Constr., LLC*, No. 18-CV-381, 2019 WL 699964, at \*6 (E.D. Wis. Feb. 20, 2019); Wis JI-Civil 2418.

Defendants argue that Plaintiffs' § 100.18 claim fails for lack of causation. Doc. 15071 at 10. Plaintiffs do not dispute that causation is an essential element of such a claim. *See* Doc. 15696 at 8 (citing *Andersen v. Vavreck*, No. 15-CV-667-PP, 2017 WL 680424, at *3 (E.D. Wis. Feb. 21, 2017) (a plaintiff asserting a violation of § 100.18 must show that "the representation caused him to suffer a pecuniary loss")). Rather, Plaintiffs cite *Novell* for the proposition that a § 100.18 claim requires no element of reliance. *Id.*

But the question in *Novell* was "whether *reasonable* reliance is a necessary element in a § 100.18 claim." 749 N.W.2d at 551 (emphasis in original). The *Novell* court made clear that although reasonable reliance is not an element, "[r]eliance is an aspect of the third element, whether a representation *caused* the plaintiff's pecuniary loss." 749 N.W.2d at 553 (emphasis added); *see Ramsden v. Farm Credit Servs. of N. Cent. Wis. ACA*, 590 N.W.2d 1 (Wis. Ct. App.1998) (noting that reliance in a misrepresentation claim is equivalent to the causation element in a traditional negligence claim). Wisconsin district courts have read *Novell* "to mean that satisfying the element of causation for a claim under § 100.18 requires more than a showing by the plaintiff that it sustained a loss that is somehow connected to a misrepresentation made to 'the public.'" *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 923 (W.D. Wis. 2010) (citing *Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F. Supp. 2d 659, 663 (W.D. Wis. 2009)). Rather, "the question is whether 'the representation materially induced the plaintiff's decision to act and whether the plaintiff would have acted in the absence of the representation.'" *Id.* (quoting *Novell*, 749 N.W.2d at 554; alterations omitted); *see also Tim Torres Enters. v. Linscott*, 416 N.W.2d 670, 675 (Wis. Ct. App. 1987) (interpreting § 100.18 "as requiring some proof beyond the content of the advertisement itself to establish that the plaintiff was in fact damaged by it"); Wis JI-Civil 2418 (in determining whether the plaintiff's loss was caused by the defendant's representation, "the test is whether [the plaintiff] would have acted in its absence").

Plaintiffs assert that the record is replete with examples of Bard's misleading statements to the public. Doc. 15696 at 9. But Plaintiffs present no evidence showing

that the statements materially induced Ms. Tinlin or Dr. Riebe to select a Recovery filter, or that a different filter would have been selected in the absence of the statements. Without such evidence, Plaintiffs cannot show that the statements caused them to suffer a pecuniary loss. The Court will grant summary judgment on the § 100.18 claim. *See Valente*, 48 F. Supp. 2d at 874 (granting summary judgment where "the plaintiffs [did] not show that they or their doctors relied on the defendants' allegedly fraudulent representations when they elected to undergo spinal fusion surgery [and therefore could] not show a causal connection between the defendants' alleged conduct and any pecuniary loss suffered as a result of their continued back pain"); *Monson v. Acromed Corp.*, No. 96-C-1336, 1999 WL 1133273, at *24 (E.D. Wis. May 12, 1999) (finding summary judgment warranted regardless of whether reliance is an element of a § 100.18 claim because the record was devoid of evidence showing a causal connection between the defendants' statements and the plaintiff's loss); *Andersen*, 2017 WL 680424, at *3 (granting summary judgment where the plaintiff "failed to make a sufficient showing that his damages were caused by the defendants' conduct").

**VII. Design Defect Claims (Counts III and IV).**

Plaintiffs assert strict liability and negligent design defect claims. *See* Doc. 364 ¶¶ 182-97; Doc. 1 at 3, Case No. CV-16-00263. Defendants contend that each claim fails because Plaintiffs offer no reasonable alternative design for the Recovery. Doc. 15071 at 10-13. The Court does not agree.[7]

Defendants do not dispute that Plaintiffs' engineering expert, Dr. Robert McMeeking, offers several alternative designs to the Recovery that he believes would

---

[7] Wisconsin's strict liability statute, Wis. Stat. § 895.047, expressly requires evidence of a reasonable alternative design to show that a product is defective. § 895.047(1)(a); *see also Janusz v. Symmetry Med. Inc.*, 256 F. Supp. 3d 995, 1000 (E.D. Wis. 2017); Wis JI-Civil 3260.1. Defendants contend that such evidence is also required to establish a negligent design claim. Doc. 15071 at 10-11 (citing *Below v. Yokohama Tire Corp.*, No. 15-CV-529-WMC, 2017 WL 679153, at *3 (W.D. Wis. Feb. 21, 2017) (noting that "the two theories are similar . . . because the reasonableness of a product's design turns essentially on whether the seller could have come up with a less dangerous design")). The Court need not decide the issue for purposes of summary judgment because Plaintiffs have presented sufficient evidence of a reasonable alternative design.

have helped reduce the risk of the failures that occurred in Ms. Tinlin's filter. Doc. 15071 at 11. Specifically, Dr. McMeeking opines that "reasonable alternative designs and alternative features available to Bard before Ms. Tinlin received her filter include . . . caudal anchors, penetration limiters, two-tier design, and a better (smoother and rounded) chamfer at the mouth of the 'cap' on the filter." Doc. 15073 ¶ 21; *see* Doc. 15074-3 at 3. Dr. McMeeking explains that "[m]any of these design features existed in other IVC filter products already on the market, including the Simon Nitinol Filter, the Cook Gunther Tulip filter, the Greenfield filter, and the Cook Bird's Nest filter." Doc. 15701 ¶ 30; *see* Doc. 15071-8 at 4. A jury reasonably could find from this evidence that specific and reasonable alternative design changes were available when Defendants developed the Recovery. *See Rogers v. K2 Sports, LLC*, 348 F. Supp. 3d 892, 902-03 (W.D. Wis. 2018) (denying summary judgment where the plaintiff's expert opined that the helmet in question did not provide sufficient protection due to a tapered edge while other helmets without tapering provided the necessary protection); *see also* Docs. 12007 at 13, 12805 at 5-6 (finding in the Hyde case that Dr. McMeeking's opinions constituted sufficient evidence that reasonable alternative designs were available to Bard when it developed the G2X and Eclipse filters).[8]

Defendants contend that permanent IVC filters, such as the Simon Nitinol filter ("SNF"), are not reasonable alternative designs for the retrievable Recovery. Doc. 15071 at 11-13. But the Recovery was designed and cleared for permanent use (Doc. 7950 ¶¶ 8, 17), and Plaintiffs have presented evidence that Ms. Tinlin's filter remains implanted as a permanent device (Doc. 15701 ¶¶ 23-24). Whether the retrievability of the Recovery makes it sufficiently unlike the SNF and other permanent filters to disqualify them as reasonable alternative designs is a question for the jury to decide. *See* Doc. 12805 at 6.[9]

---

[8] Defendants note that summary judgment would be warranted if their motions to exclude Dr. McMeeking's opinions are granted (Doc. 15071 at 11), but the motions were denied in relevant respects (Doc. 16992).

[9] Defendants' reliance on *Oden v. Boston Scientific Corp.*, 2018 U.S. Dist. LEXIS

- 13 -

Defendants further contend that the Cook filters and Bard's later-generation filters are not reasonable alternative designs because Dr. McMeeking believes they are defective. Doc. 15071 at 13. Defendants cite *Tunnel v. Ford Motor Co.*, 385 F. Supp. 2d 582 (W.D. Va. 2005), which found that Virginia requires a showing that "the proposed alternative would truly cure a product of its alleged defects[.]" 385 F. Supp. 2d at 586. But a manufacturer may be liable under Wisconsin's product liability statute where the alternative design would have "reduced" the harm posed by the product. Wis. Stat. § 895.047(1)(a); *see* Doc. 12007 at 13. Defendants do not dispute that specific alternative design features identified by Dr. McMeeking – caudal anchors, penetration limiters, and a chamfered cap – help reduce the risk of filter failures like those experienced by Ms. Tinlin.[10]

Plaintiffs have presented sufficient evidence of a reasonable alternative design. The Court will deny summary judgment on the design defect claims. *See Rogers*, 348 F. Supp. 3d at 902-03.[11]

**VIII. Future Damages.**

Wisconsin law holds that future injuries and healthcare must be established by a medical probability. *See Pucci v. Rausch*, 187 N.W.2d 138, 142 (Wis. 1971) (citing cases). "But medical probability does not mean absolute certainty or metaphysical certainty." *Reyes v. Greatway Ins.*, 582 N.W.2d 480, 485 (Wis. Ct. App. 1998). As long

---

102639 (E.D.N.Y. June 4, 2018), is misplaced because the case involved the granting of a motion to dismiss where the plaintiff had received a permanent filter and alleged that retrievable filters were not designed to be permanent. *Id.* at *12-13. Although Dr. Riebe found Ms. Tinlin to be a candidate for a retrievable filter (Doc. 15073 ¶ 5), the Recovery also can serve as a permanent device (*see* Docs. 7950 ¶¶ 8, 15701 ¶ 24).

[10] Defendants note in their reply that Dr. McMeeking agrees that his proposed design changes may not have "avoided" Ms. Tinlin's injuries. Doc. 16011 at 8. But as explained above, it is sufficient that the alternative design would have "reduced" the risk of harm. Wis. Stat. § 895.047(1)(a).

[11] Given this ruling and the denial of summary judgment on the claims for failure to warn and concealment, Mr. Tinlin's claim for loss of consortium (Count XV) survives summary judgment. *See* Doc. 15071 at 3, 14; *Finnegan v. Wis. Patients Comp. Fund*, 666 N.W.2d 797, 805 (Wis. 2003) ("[A] derivative claim for loss of consortium or loss of society and companionship does not have its own elements distinct from the negligence claim to which it attaches[.]") (citing Wis JI-Civil 1815).

as an expert's opinion is based on probability, and not mere possibility or conjecture, the opinion is sufficient to support an award of future damages. *Weber v. White*, 681 N.W.2d 137, 143 (Wis. 2004). Defendants contend that Plaintiffs' medical experts could not opine that Ms. Tinlin "probably" will have future complications and medical expenses from her Recovery filter. Doc. 15071 at 14-15.

### A. Dr. Derek Muehrcke.

Dr. Muehrcke testified that he believes Ms. Tinlin is at future risk for various complications from her Recovery filter because the filter disintegrated, sending multiple fragments to the heart and lungs, and the filter remains unstable with several missing arms. Doc. 15702-4 at 7-8. He opines that Ms. Tinlin's risk of future complications is 40 percent at five and half years. Doc. 15704-5 at 8. He holds these opinions to a reasonable degree of medical probability. Doc. 15702-4 at 8.

Dr. Muehrcke's opinions are expressed "not in terms of 'possibilities' but 'probabilities[.]'" *Bleyer*, 120 N.W.2d at 160. The opinions therefore are sufficient to support a jury finding that Ms. Tinlin probably will suffer future injuries from the Recovery which will require further medical treatment. *See id.*; *Weber*, 681 N.W.2d at 143 (noting that Wisconsin law "does not require mathematical certainty" to establish future medical care and finding the expert's estimate that the plaintiff's future care would "probably be around 20 to 25 visits a year . . . on an average" sufficient to support an award of future chiropractic expenses); *Reyes*, 582 N.W.2d at 485 (finding that the "doctor's use of the term 'significant chance' indicates an opinion to a reasonable degree of medical probability"); *Pucci*, 187 N.W.2d at 142 (noting that opinions expressed in terms of "I feel" or "I believe" have been held to be sufficient) (citing *Hintz v. Mielke*, 112 N.W.2d 720, 725 (Wis. 1961)). The Court will deny summary judgment with respect to the future injuries and medical care opined to by Dr. Muehrcke.[12]

---

[12] Defendants note that Dr. Muehrcke did not perform a differential diagnosis for Ms. Tinlin's shortness of breath, but make no argument as to why this warrants summary judgment. Doc. 15071 at 14.

- 15 -

**B. Dr. Darren Hurst.**

Defendants assert that Dr. Hurst could not opine that Ms. Tinlin probably will experience pneumothorax, abscess, and lung hemorrhage in the future. Doc. 15071 at 15 (citing Doc. 15073 ¶¶ 34-35). Defendants contend that the monitoring and medical intervention costs that Dr. Hurst recommends for these conditions should not be compensable, but specifically identify only the costs for lung resection and life-long CT scans. *Id.*

**1. Lung Resection.**

Dr. Hurst states in his report that three filter arms embolized in Ms. Tinlin's right lung, but makes clear that "the future behavior and possible morbidity and mortality of these embolized arms *is currently unknown*." Doc. 15074-6 at 3 (emphasis added). He further states that filter fragments in the lungs of other patients have resulted in pneumothorax, abscess, and lung hemorrhage, and the filter arms in Ms. Tinlin's lung will require lung resection for removal "if they become symptomatic[.]" *Id.* But Dr. Hurst does not know whether it is probable that the filter arms will cause pneumothorax, abscess, or lung hemorrhage. He testified that "[f]or all of these potential complications, there's no data," there "are only case reports of similar types of objects in the lungs that have caused these problems," and "[n]o one has done a long-term study because it is so new." Doc. 15074-7 at 7.

This testimony shows that the risk of future complications from the filter arms in Ms. Tinlin's lung is a mere possibility, and "an expert opinion expressed in terms of a 'mere possibility' is insufficient to sustain a finding" of future damages. *Bleyer v. Gross*, 120 N.W.2d 156, 160 (Wis. 1963); *see McGarrity v. Welch Plumbing Co.*, 312 N.W.2d 37, 44-45 (Wis. 1981) ("The court of appeals correctly held that an expert opinion expressed in terms of possibility or conjecture is insufficient[.]"). The Court will grant summary judgment on future medical costs for a lung resection.

/ / /

/ / /

### b. CT Scans.

The Court reaches a difference conclusion with respect to future CT scans. Dr. Hurst opines that the filter arms in Ms. Tinlin's lung "*will require* life-long follow up with CT imaging to document their stability." Doc. 15074-6 at 3 (emphasis added). He testified that he "think[s] she probably will need a CT [scan] either every year or every other year to just make sure that she's not developing an issue related to the fragments." Doc. 15701-7 at 3. This evidence is sufficient to support an award for the costs of future CT scans. *See Weber*, 681 N.W.2d at 143; *Pucci*, 187 N.W.2d at 142. The Court will deny summary judgment in this regard.

### 3. Chronic Cough and Asthma.

Defendants contend that Dr. Hurst could not determine whether Ms. Tinlin's chronic cough and exacerbation of her asthma are related to her filter. Doc. 15071 at 15 (citing Doc. 15073 ¶ 37). But Dr. Hurst found that the chronic cough "is almost certainly related to her tracheomalacia." Doc. 15704-7 at 3.[13] He further found that the tracheomalacia "would exacerbate asthma." *Id.* at 4. This evidence is sufficient to support a finding that Ms. Tinlin's chronic cough and asthma problems are related to her Recovery filter. The Court will deny summary judgment on this issue.[14]

**IT IS ORDERED:**

1. The following claims are **dismissed** based on Plaintiffs' withdrawal of the claims before Defendants moved for summary judgment: manufacturing defect (Counts I and V), failure to recall (Count VI), negligence per se (Count IX), and breach of warranty (Counts X and XI).

---

[13] Ms. Tinlin's tracheomalacia presumably was caused by the tracheotomy procedure during her open heart surgery to remove a fractured strut from the right ventricle.

[14] Defendants assert in their reply that future medical costs are compensable only if they are "reasonably certain" to occur. Doc. 16011 at 10 (citing *Meracle v. Children's Serv. Soc'y of Wis.*, 437 N.W.2d 532, 535 (Wis. 1989)). But Defendants have not shown that this standard differs from the "probability" standard applied above. *See Meracle*, 437 N.W.2d at 535 (noting that *Bleyer* similarly held that medical testimony about future expenses must be expressed "not in terms of 'possibilities' but 'probabilities' ").

2. Defendants' motion for summary judgment (Doc. 15071) is **granted in part and denied in part** as follows:

    a. The motion is **granted** on Plaintiffs' misrepresentation and deceptive trade practices claims (Counts VIII, XII, and XIV), and future costs for a lung resection.

    b. The motion is **denied** on Plaintiffs' claims for failure to warn (Counts II and VII), design defect (Count III and IV), fraudulent concealment (Count XIII), and loss of consortium (Count XV), and future medical costs for CT scans, chronic cough, and asthma.

Dated this 16th day of April, 2019.

David G. Campbell
Senior United States District Judge