James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2202
Telephone: (602) 382.6000
Facsimile: (602) 382.6070
jcondo@swlaw.com
kgallardo@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Telephone: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC |
| | **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' SUPPLEMENT TO MOTION *IN LIMINE* NO. 2: VENA CAVA SIZE** |
| This Document Relates to: | |
| Debra Tinlin, et al. v. C. R. Bard, Inc., et al. CV-16-00263-PHX-DGC | (Assigned to the Honorable David G. Campbell) |
| | **(Oral Argument Requested)** |

The size of Mrs. Tinlin's IVC is one of the most important facts in this case relating to both the warning and design defect claims. Indeed, the Recovery® Filter Instructions for Use ("IFU") clearly and explicitly warned in a bolded, black box warning:

> **CAUTION: If the IVC diameter exceeds 28 mm, the filter must not be inserted into the IVC.**

(Recovery IFU (Doc. 16893-1).) Dr. Riebe ignored this clear warning. All of the experts in this case agree that implanting an IVC filter in a patient with an oversized IVC can lead to tilt, migration, fracture, and penetration—the very complications that Mrs. Tinlin allegedly experienced. Dr. McMeeking also agreed that a patient's IVC size may impact the effectiveness of his alternative design features: caudal anchors, penetration limiters, and two-tiered design. (Ex. A, McMeeking Dep. at 19:1-24; 29:15 to 30:4.) Yet Plaintiffs contend that this evidence is irrelevant. This Court should deny Plaintiffs' motion for the reasons stated in Bard's original response (Doc. 16890), as well as the following reasons:

There is no question that Bard has satisfied its burden of presenting expert evidence that Dr. Riebe fell below the standard of care in order for the jury to consider his medical negligence for apportionment. *Zintek v. Perchik*, 471 N.W.2d 522, 528 (Wis. Ct. App. 1991); Wis. JI-Civil 1023; (*Cf.* Mot. at 2). As demonstrated below, Bard also has sufficient evidence that his negligence "may have contributed to" Plaintiffs' injuries, and, therefore, *Connar* "mandates the inclusion of [Dr. Riebe] on the special verdict." *Zintek*, 471 N.W.2d at 528 (citing *Connar v. West Shore Equipment of Milwaukee*, 227 N.W.2d 660, 662 (Wis. 1975)) ("[A] jury must have the opportunity to consider the negligence of all who may have contributed to the tortious event."). Therefore, this Motion should be denied as premature "at this pretrial juncture," and the Court should reserve ruling until "the evidence [h]as closed." *Id.* at 527 (denial of motion *in limine* "[u]nderstandabl[e]").

Whether Dr. Riebe's medical negligence was a "substantial factor"[1] in producing Plaintiffs' alleged injuries is a broad question of fact for the jury to decide. *E.g.*, Wis. JI-Civil 1023 ("A person's [medical] negligence is a cause of a plaintiff's (injury)

---

[1] "Substantial factor" denotes that the "conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense." *Clark v. Leisure Vehicles, Inc.*, 292 N.W.2d 630, 635 (Wis. 1980).

- 1 -

(condition) if the negligence was a substantial factor in producing the present condition of the plaintiff's health."); *Tutkowski v. Rudesill*, 902 N.W.2d 809 (Wis. Ct. App. 2017) ("Wisconsin's common law formulation of the substantial factor test is broad and traditionally reserved to a jury determination."), *review dismissed*, 905 N.W.2d 842 (Wis. 2017); *Morgan v. Pa. Gen. Ins. Co.*, 275 N.W.2d 660, 666 (Wis. 1979) ("Whether negligence was a cause-in-fact of an injury is a factual question for the jury if reasonable men could differ on the issue, and the question only becomes one of law for judicial decision if reasonable men could not disagree.").

Moreover, "[c]ausation is often an inference the trier of fact is to draw from the circumstances" and need not come from one single source. *Betz ex rel. Larimore v. W. Bend Mut. Ins. Co.*, 859 N.W.2d 628 (Wis. Ct. App. 2015); *Gil v. Reed*, 381 F.3d 649, 660 (7th Cir. 2004) (applying Wisconsin law and concluding that a party may rely on other side's expert testimony to prove her case); *Stevens v. Stryker Corp*, No. 12-CV-63-BBC, 2013 WL 4758948, at *2 (W.D. Wis. Sept. 4, 2013) (rejecting argument that expert did "not develop his own opinion about general causation," finding it "[u]nnecessary for the same expert to provide opinions about both specific and general causation," and that because "defendants' experts identify the same potential causes" that "the testimony of the other experts about the link between pain pumps and chondrolysis" was sufficient).[2]

Although no expert, including Dr. McMeeking, can say exactly what caused Mrs. Tinlin's alleged filter complications because the device is still implanted in her, there is credible evidence upon which the jury can base a reasoned choice between possible inferences. First, the IFU explicitly warned against implanting the filter in IVCs exceeding 28 mm because doing so may cause "movement or migration" of the filter. (Doc. 16893-1.) Second, the very next day after implant, according to Dr. Hurst, Mrs. Tinlin's filter had already experienced tilt of 18 degrees, caudal migration of 9 mm, and multiple

---

[2] *See also Enea v. Linn*, 650 N.W.2d 315, 319 (Wis. 2002) ("[M]edical experts may rely on the reports and medical records of others in forming opinions that are within the scope of their own expertise."); *State v. Cadden*, 201 N.W.2d 773, 775 (Wis. 1972) ("[C]ourtroom testimony, when based on the medical observations and findings of other [experts], is sufficiently reliable to permit medical conclusions.").

penetrations of struts through her IVC. (*See* Doc. 16895-1 at 3.) Finally, <u>all of the relevant experts</u> in this case agree that tilt, migration, penetration, and fracture can occur from implanting the filter in an oversized IVC, which could have caused or contributed to Mrs. Tinlin's alleged injuries in this case. (*See* Morris Rep. at 15-16 (Doc. 15081-1); Muehrcke Dep. 21:16 to 23:12 (Doc. 16946-1); McMeeking Dep. at 32:5-10 (16948-1).)[3]

In particular, Dr. McMeeking agreed "that, if Mrs. Tinlin's [IVC] was larger than the Recovery filter was indicated for, that that could have contributed to what [he] termed the failures of that filter." (McMeeking Dep. at 37:11-20 (Doc. 16948-1).) He also agreed that a patient's IVC size may impact the effectiveness of his purported alternative design features, making Mrs. Tinlin's IVC size directly probative of Plaintiffs' design defect claims. (*See* Ex. A, McMeeking Dep. at 19:1-24; 29:15 to 30:4.) Furthermore, Dr. Muehrcke agreed that, if the filter was placed in an IVC greater than 28 mm (as in Mrs. Tinlin's case), and the filter later fractures, migrates, tilts, or perforates the IVC (as in Mrs. Tinlin's case), you cannot rule out that the fracture, migration, perforation, or tilt occurred because of the placement into a large IVC. (*See* Muehrcke Dep. at 23:20 to 24:13 (Doc. 16946-1).) Finally, Dr. Morris testified "to a reasonable degree of medical certainty" that the size of Mrs. Tinlin's IVC "could have caused or contributed to the complications that occurred with her Recovery filter." (Ex. C, Morris. Dep. at 170:4-18.)[4]

Thus, Bard has removed the issue of causation from the realm of speculation by establishing, through expert testimony, a logical basis for the inference that Dr. Riebe's medical negligence caused or contributed to Plaintiffs' alleged injuries. *See* Wis. JI-Civil 1023; *Betz*, 859 N.W.2d at 628 ("Causation is often an inference the trier of fact is to draw from the circumstances"). Therefore, whether his negligence was a "substantial factor" in producing Plaintiffs' injuries should be a question for the jury to decide, *Morgan*, 275 N.W.2d at 666, and they must have the opportunity to consider his negligence when apportioning fault in this case. *Connar*, 227 N.W.2d at 662; *Zintek*, 471 N.W.2d at 528.

---

[3] (*See also* Ex. B, Hurst Dep. at 88 to 91 (agrees the filter was contraindicated according to the IFU and that he "probably would have thought twice about placing that device").)
[4] Dr. Morris's qualifications to offer this opinion are unchallenged.

1  RESPECTFULLY SUBMITTED this 22nd day of April, 2019.

s/Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
jcondo@swlaw.com
kgallardo@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**

- 4 -