**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC |
| Debra and James Tinlin, a married couple, Plaintiffs, | No. CV-16-00263-PHX-DGC |
| v. | **ORDER** |
| C. R. Bard, Inc., a New Jersey corporation; and Bard Peripheral Vascular, Inc., an Arizona corporation, Defendants. | |

Plaintiffs move to exclude certain opinions of Dr. Morris and evidence that Ms. Tinlin's medical care was an intervening cause of injury. Docs. 15077, 16576. The motions are fully briefed. Docs. 15661, 16032, 16890. The parties request oral argument, but it will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f). For reasons stated below, the Court will grant the motion to exclude Dr. Morris's opinions and grant in part and deny in part the motion in limine regarding medical care as an intervening cause of injury.

## I. Background.

On May 7, 2005, Dr. Riebe implanted a Bard Recovery filter in Plaintiff Debra Tinlin's inferior vena cava ("IVC"). Ms. Tinlin had multiple chest scans after the implantation, including one taken by Dr. Haller on April 15, 2008.

Ms. Tinlin experienced cardiac tamponade on June 10, 2013. A chest scan showed evidence of two fractured Recovery struts in the right ventricle of her heart. Dr. Roitstein performed emergency surgery to drain a large pericardial effusion. The procedure – a subxiphoid pericardial window – involved removing a small piece of the heart sac and inserting a drainage tube through the incision.

On July 31, 2013, Dr. Kress removed a fractured strut through open heart surgery. A subsequent chest scan revealed multiple fractured struts in the pulmonary arteries. These struts and the filter have not been removed.

## II. Motion to Exclude Dr. Morris's Opinions About Drs. Roitstein and Kress.

In his case-specific report, Dr. Morris opines that an interventional radiologist could have drained Ms. Tinlin's pericardial effusion through percutaneous placement of a drainage tube. Doc. 15081-2 at 18, ¶ 6. He claims that this procedure "likely would have been performed more expeditiously, with less morbidity and risk than [Dr. Roitstein's] surgical procedure, using moderate sedation rather than general anesthesia." *Id.*

Dr. Morris further opines that the fractured strut Dr. Kress removed potentially could have been retrieved percutaneously by an interventional radiologist, which "might have precluded open heart surgery, with all of its attendant risks and morbidity, including tracheomalacia and epigastric ventral hernia." *Id.* at 18-19, ¶ 7. Dr. Morris notes that a chest scan taken two days before the surgery revealed no strut in the heart. *Id.* He opines that the failure to perform a chest scan immediately before surgery is significant because "it was possible that neither arm fragment was still located in the heart, and therefore, open heart surgery would have been contraindicated." *Id.* at 19, ¶ 7.

Plaintiffs have filed a motion to exclude these opinions, arguing that Dr. Morris is not qualified to opine on the standard of care for cardiothoracic surgeons and his opinions

are unreliable and would be unhelpful and confusing to the jury. Doc. 15081-1 at 3-4. Defendants make clear that they are not offering Dr. Morris to opine on the standard of care for the surgeries performed by Drs. Roitstein and Kress, or any related breach. Doc. 15661 at 6, 11. Defendants assert that they are merely "exercising [their] right under Wisconsin law to present expert testimony that may 'weaken' Plaintiffs' claim of injuries[.]" *Id.* at 11 (citations omitted).

Under Wisconsin law, "when a tortfeasor causes an injury to another person who then undergoes unnecessary medical treatment of those injuries despite having exercised ordinary care in selecting her doctor, the tortfeasor is responsible for all of that person's damages arising from any mistaken or unnecessary surgery." *Hanson v. Am. Family Mut. Ins.*, 716 N.W.2d 866, 871 (Wis. 2006) (citing *Butzow v. Wausau Mem'l Hosp.*, 187 N.W.2d 349, 351-52 (Wis. 1971)). The rule was first announced in *Selleck v. City of Janesville*, 75 N.W. 975, 976 (Wis. 1898):

> The plaintiff is not held responsible for the errors or mistakes of a physician or surgeon in treating an injury received by a defect[,] providing she exercises ordinary care in procuring the services of such physician. Where one is injured by the negligence of another, . . . if her damages have not been increased by her own subsequent want of ordinary care she will be entitled to recover in consequence of the wrong done, and the full extent of damage, although the physician that she employed omitted to employ the remedies most approved in similar cases, and by reason thereof the damage to the injured party was not diminished as much as it otherwise should have been.

The *Selleck* rule remains good law in Wisconsin. *See Fouse v. Persons*, 259 N.W.2d 92, 95 (Wis. 1977) ("The rule for awarding damages for injuries aggravated by subsequent mistaken medical treatment was established in *Selleck* . . . and has been followed since."); *Paddock v. United States*, No. 16-CV-947, 2018 WL 3696618, at *3 (E.D. Wis. Aug. 3, 2018) (discussing the "long-standing principle set forth in *Selleck*"); *see also* Wis Civil-JI 1710 (citing *Selleck* to support the jury instruction for aggravation of injury because of medical negligence).

1    Defendants do not dispute that the surgeries performed by Drs. Roitstein and Kress were undertaken to treat injuries Ms. Tinlin sustained from the Recovery arm fragment in her heart. *See* Docs. 15081-2 at 6-7, 16952 at 5. Nor do Defendants present any evidence or argument that Ms. Tinlin was negligent in selecting the doctors to perform the surgeries. Thus, even if the surgeries were unnecessary as Dr. Morris suggests, Plaintiffs still can recover resulting damages under the *Selleck* rule if Defendants are found liable at trial.

As a result, Defendants have not shown that Dr. Morris's opinions about the treatment provided by Drs. Roitstein and Kress are relevant to any issue in the case. The opinions would be unhelpful and confusing to the jury. The Court will grant the motion to exclude the opinions. *See* Fed. Rs. Evid. 401-03.[1]

**III.     Motion in Limine No. 1: Medical Care as an Intervening Cause of Injury.**

Plaintiffs argue that under the *Selleck* rule, Defendants should be precluded from offering Dr. Morris's opinions that an interventional radiologist could have drained Ms. Tinlin's pericardial effusion and retrieved the Recovery arm fragment from her heart through percutaneous procedures less intrusive than heart surgeries. Doc. 16576 at 1-2 & n.1 (citing Doc. 15661 at 2). The Court agrees for reasons stated above, and will grant the motion in limine in this regard.

Plaintiffs argue more broadly that Defendants should be precluded from offering any evidence that Ms. Tinlin's medical care was an intervening cause of her injury. *Id.* at 2. But Plaintiffs identify no specific evidence other than Dr. Morris's opinions discussed above.

Defendants make clear that they intend to present evidence that Dr. Riebe's decision to implant a Recovery in Ms. Tinlin after measuring her IVC diameter at larger than 28 mm constitutes negligence that was an intervening cause of her injuries. Doc. 16890 at 3-4. Defendants also intend to present evidence that the April 15, 2008 chest scan showed

---

[1] Given this ruling, the Court need not determine whether the opinions are reliable under Rule 702 and *Daubert*. Nor must the Court decide whether Dr. Morris is qualified to opine on the standard of care for cardiothoracic surgeons given Defendants' avowal that no such opinion will be offered at trial. *See* Doc. 15661 at 6, 11.

- 4 -

foreign metallic bodies in Ms. Tinlin's heart, and Dr. Haller's failure to identify this abnormality prevented Ms. Tinlin's treating physicians from properly evaluating her condition before the Recovery arm fragments became symptomatic and caused her injury five years later. *Id.* at 4. Defendants argue that the *Selleck* rule does not apply because the negligence of Drs. Riebe and Haller preceded Ms. Tinlin's injuries – her cardiac tamponade and pericardial effusion procedure, the open heart surgery to remove a fractured strut, and subsequent medical complications. *Id.*[2]

Defendants also raise this issue in the parties' proposed final pretrial order, asserting that the jury is entitled to consider the negligence of both Dr. Riebe and Dr. Haller, and to allocate a percentage of fault to each of them because their negligence was a cause of Ms. Tinlin's injuries. Doc. 16952 at 18 (citing *Connar v. W. Shore Equip. of Milwaukee, Inc.*, 227 N.W.2d 660, 662 (Wis. 1975) (explaining that "when apportioning negligence, a jury must have the opportunity to consider the negligence of all parties to the transaction")). In response, Plaintiffs reference their motion in limine and contend that under the *Selleck* rule, Defendants are liable for the full amount of damages caused by the aggravation of Ms. Tinlin's injuries. *Id.* at 19; *see also* Doc. 16950 at 45. But Plaintiffs fail to address Defendants' argument that the *Selleck* rule does not apply because the alleged negligence of Drs. Riebe and Haller preceded, rather than aggravated, Ms. Tinlin's injuries.

Plaintiffs have not shown that evidence regarding the medical care provided by Drs. Riebe and Haller should be excluded. The Court will deny the motion in limine in this respect.[3]

---

[2] Defendants contend that an asymptomatic filter complication is not an injury. *Id.*

[3] Plaintiffs contend that a directed verdict is proper on this issue because Defendants lack the requisite expert opinion that the alleged negligence of Drs. Riebe and Haller was a cause of Ms. Tinlin's injuries. Doc. 16952 at 19. Plaintiff will be free to raise this argument at the appropriate time during trial. *See* Fed. R. Civ. P. 50.

**IT IS ORDERED:**

1. Plaintiffs' motion to exclude certain opinions of Dr. Morris (Doc. 15077) is **granted**. Dr. Morris is precluded from opining that the surgeries performed by Drs. Roitstein and Kress were unnecessary. *See* Doc. 15081-2 at 18-19, ¶¶ 6-7.

2. Plaintiffs' motion in limine regarding medical care as an intervening cause of injury (Doc. 16576) is **granted in part and in denied part**. The motion is **granted** regarding the medical care provided by Drs. Roitstein and Kress and **denied** with respect to the care provided by Drs. Riebe and Haller.

Dated this 23rd day of April, 2019.

_David G. Campbell_
David G. Campbell
Senior United States District Judge