# Exhibit B

```
 1                    UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF ARIZONA

 3                    _____

 4   In Re: Bard IVC Filters          ) MD-15-02641-PHX-DGC
     Products Liability Litigation    )
 5                                    )
                                      ) Phoenix, Arizona
 6                                    ) October 29, 2015
                                      )
 7   _____)

 8

 9

10

11

12        BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE

13            REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                    SCHEDULING CONFERENCE

15

16

17

18

19

20

21   Official Court Reporter:
     Patricia Lyons, RMR, CRR
22   Sandra Day O'Connor U.S. Courthouse, Ste. 312
     401 West Washington Street, SPC 41
23   Phoenix, Arizona  85003-2150
     (602) 322-7257
24
     Proceedings Reported by Stenographic Court Reporter
25   Transcript Prepared with Computer-Aided Transcription
```

```
09:49:43   1   come to this case, whether they filed one or two cases, I've
           2   tried to keep up with that, but to the extent they want access
           3   to it, as long as they file the appropriate protective order
           4   and joint prosecution agreements that we have that everyone
09:50:00   5   else has signed, they'll have ready access to it.
           6              THE COURT:  All right.  Is there anything I need to
           7   do with respect to the document depository?
           8              MR. LOPEZ:  I don't think so, Your Honor.  It's been
           9   up and running a long time now and everyone has access to it.
09:50:15  10              THE COURT:  All right.  Does anybody on the plaintiff
          11   side in the courtroom want to say anything on that issue?
          12              How about on the phone?
          13              Okay.
          14              Let me raise an issue that may jump the gun a bit --
09:50:52  15   well, we might as well take it up now.
          16              The question is, during the course of this MDL what
          17   do we do with discovery that is not common-benefit discovery
          18   in the many cases that are currently part of this MDL?
          19              Before we even go there, let me pause and ask a
09:51:13  20   different question.
          21              Mr. Lopez, you have indicated in a couple of your
          22   filings that you anticipate there will be hundreds more cases,
          23   I think is the phrase that's been used.
          24              MR. LOPEZ:  Yes, Your Honor.
09:51:25  25              THE COURT:  Give me your best sense what's coming and
```

```
09:51:27   1    why you think it's coming.
           2           MR. LOPEZ:  Your Honor, again, I apologize for
           3    sitting down.  If I move back, I hit the person behind me, so
           4    if it's okay --
09:51:35   5           THE COURT:  That's fine if you stay --
           6           MR. LOPEZ:  I notice everybody standing up.  I don't
           7    want to look like I have less respect for the Court sitting
           8    down.
           9           THE COURT:  No.
09:51:44  10           MR. LOPEZ:  This is always a moving target, and I
          11    know the filings in the beginning of an MDL does not reflect
          12    what might be coming.  I can just tell you based on meetings
          13    we've had and conference calls we've had and just what I've --
          14    I've done kind of an audit of this.  I mean, I think the
09:52:01  15    number's going to hit a thousand for sure.  I mean, this
          16    involves 300,000 or more devices with literature suggesting
          17    that it could be a 40 percent failure rate.  So I hope there's
          18    not 180,000 or 140,000, whatever 40 percent is of that.
          19    120,000.
09:52:28  20           Best I can tell you is it looks like there's going to
          21    be at least a thousand cases that will be filed within the
          22    next 60, 90, 120 days.  I don't know.  I mean, sometimes these
          23    cases after 90 days there's 100 cases and all of a sudden
          24    you're in discovery six, seven months down the road and
09:52:47  25    there's 2,000 cases on file.
```

```
09:52:50   1            But I know that just in this group of lawyers that
           2   are here, the number of cases that are under review go well
           3   above a thousand.  Maybe closer to 2,000.
           4            THE COURT:  How about from the defense side, have you
09:53:16   5   got any projection on what's going to happen?
           6            MR. NORTH:  Your Honor, we obviously don't have very
           7   much information on that.  We have noted a real uptick in
           8   attorney advertising, which, obviously, will generate more
           9   cases.  But our best prediction has been 3 to 500.  But,
09:53:33  10   again, we're sort of at a disadvantage in trying to make that
          11   prediction.
          12            I will say, Your Honor, I've noted in a couple of
          13   past MDL's that some judges have thought it best to wait two
          14   or three months after the MDL gets going to get a better sense
09:53:47  15   of how many cases are coming in or going to come in before
          16   establishing a bellwether process.  Some judges don't like to
          17   do that, but some have.
          18            THE COURT:  Yes, sir.  Let's have you identify
          19   yourself.
09:54:01  20            MR. DALIMONTE:  Your Honor, John Dalimonte on behalf
          21   of plaintiffs.
          22            I have some information that might be helpful with
          23   regard to the numbers that might be coming.
          24            One of the reasons why there haven't been a whole
09:54:15  25   number of cases filed within the last couple of months is
```

```
10:12:49   1    that issue sooner rather than later.  And I don't think that
           2    affects the drafting of the common complaint.  That's going to
           3    state what it states.  It's really a question of what
           4    procedures we apply after that's on file.
10:13:15   5               MR. DALIMONTE:  The only thing is in the master
           6    complaint we would incorporate some language that specifically
           7    addresses where the complaint is going to go.
           8               So, for instance, it may have some broad language in
           9    there that specifically provides that the case would remand
10:13:35  10    back to the originating jurisdiction where the plaintiff would
          11    otherwise be entitled to file.
          12               THE COURT:  Are you saying that would be in place of
          13    venue allegations in the complaint?
          14               MR. DALIMONTE:  Correct.
10:14:04  15               THE COURT:  Well, let me tell you my view on this,
          16    and I'll give the defendants an opportunity to respond before
          17    I make a decision.  My view is this:  It makes a lot of sense
          18    to come up with a procedure that gets cases directly in this
          19    court and not go through the full transfer process.
10:14:20  20               It makes a lot of sense to have a short-form
          21    complaint and short-form answer so that you're not spending
          22    time crafting answers to new complaints that are filed or
          23    considering whether a 12(b)(6) motion should be made with
          24    respect to a particular complaint.
10:14:37  25               It makes a lot of sense to get the filing fees in
```

10:14:40  1    this court to -- especially if the case is going to grow, to
          2    fund any staffing that might be needed to deal with this
          3    issue.
          4           That's not going to work if I say you file here, you
10:14:56  5    try your case here.  I don't think it's going to work.  It may
          6    be there will be some who will still file here, but there will
          7    be a lot still going through the transfer process.
          8           It seems to me plaintiffs have a right to file in
          9    their own district, get it transferred here and go back to
10:15:11 10    that district for trial and I shouldn't be depriving them of
         11    that right in the interest of coming up with an expedient
         12    process.
         13           What we ought to do is say the filing of a short-form
         14    complaint in Arizona does not subject you to Arizona
10:15:25 15    jurisdiction for trial, it can go to the district where you're
         16    from.  But down the road we will make decisions on bellwether
         17    trials; we will seek *Lexecon* waivers; we'll find the most
         18    efficient way to resolve this case as we would in MDL, but
         19    you're not forfeiting your right to go home up front by filing
10:15:44 20    a short-form complaint.
         21           That leaves the case exactly where it would be if we
         22    went through the transfer process, but we've saved the
         23    complexity of transfer, we've adopted a short-form complaint
         24    and answer process, and we're getting funds in this court, so
10:15:59 25    we're getting all the benefits of it.

```
10:30:57   1              THE COURT:  Are you worried about the 120 days in
           2   Rule 4(m)?
           3              MR. STOLLER:  Potentially.  But I don't --
           4              THE COURT:  It's filed; right?
10:31:02   5              MR. STOLLER:  -- been filed --
           6              THE COURT:  The cases have been filed, so there's no
           7   statute of limitations issue, it's just a 4(m) issue of 120
           8   days?
           9              MR. STOLLER:  Correct.
10:31:10  10              THE COURT:  That won't prejudice any plaintiff.
          11              MR. LOPEZ:  Let me ask, because of interim period and
          12   tolling, would those cases have an opportunity to adopt the
          13   master complaint in lieu of the complaint they may have
          14   already filed that's been transferred here?
10:31:23  15              THE COURT:  Well, yeah.  I mean, it makes sense.
          16   Because what we're going to say is newly filed cases are going
          17   to be governed by the master complaint anyway.
          18              Any other questions on that issue?
          19              MR. LOPEZ:  No, Your Honor.
10:31:41  20              THE COURT:  Okay.
          21              We're going to take a break for the benefit of the
          22   court reporter.  We will resume in 15 minutes at quarter to.
          23              (Recess was taken from 10:32 to 10:46.)
          24              THE COURT:  All right, Counsel, let's talk about what
10:46:34  25   is Item IV-C on the agenda.
```

10:46:41  1       It appears to me from reading the joint submission
          2  that both sides are thinking that we should at some point have
          3  bellwether trials.  The difference in the parties' proposals
          4  really concerns how much discovery should be done between now
10:46:59  5  and when we get to the bellwether phase.  Is that generally
          6  accurate?
          7       MR. LOPEZ:  Yes, Your Honor.
          8       MR. NORTH:  Yes, Your Honor.
          9       THE COURT:  And I understood from the parties'
10:47:13 10  proposals that for non-bellwether cases, the parties would
         11  develop what I think you called simple profile forms that
         12  would have basic information disclosed in non-bellwether
         13  cases.  But that other non-common-benefit discovery would not
         14  go forward in those cases during the MDL.  Is that accurate?
10:47:47 15       MR. LOPEZ:  I think so.
         16       MR. NORTH:  I think so, Your Honor.  A process where
         17  we would have the profile forms first and then that would give
         18  us sufficient information to choose a bellwether pool at some
         19  point.  And then there would be regular fact sheets and full
10:48:00 20  blown discovery on non-common issues in that bellwether pool.
         21       MR. LOPEZ:  Mr. North and I talked about the fact
         22  that we've got to sit down and meet and confer about what that
         23  process would look like.  There's a lot of history and some
         24  other cases, but I think we're in general agreement we're not
10:48:18 25  going to use our resources on cases -- case-specific issues

| | | |
|---|---|---|
| 14:28:56 | 1 | As you saw from what we submitted to the Court |
| | 2 | yesterday, we have a lot of people working various aspects of |
| | 3 | the case.  Some of the same, but a lot of different people. |
| | 4 | We anticipated you were going to push this thing, especially |
| 14:29:07 | 5 | the first phase.  So it's easy for me to say yes we can get it |
| | 6 | done by the end of the year because I'm going to make sure |
| | 7 | everybody gets it done.  I'm probably not going to do a lot of |
| | 8 | this work other than make sure it happens. |
| | 9 | THE COURT:  Okay. |
| 14:29:23 | 10 | MR. LOPEZ:  That's my position. |
| | 11 | MR. NORTH:  Your Honor, normally I would say 60 days |
| | 12 | are fine, but from past experience it seems like every |
| | 13 | December 31 deadline I've ever seen in a case people need the |
| | 14 | first couple weeks of January because of the holiday.  I would |
| 14:29:36 | 15 | say let's try to finish this by January 15th in case |
| | 16 | Ms. Fuller's not available because of the holidays or |
| | 17 | something of that nature. |
| | 18 | MR. LOPEZ:  I would probably agree with that, Your |
| | 19 | Honor. |
| 14:29:58 | 20 | THE COURT:  Okay:  Just a minute. |
| | 21 | (The Court and the courtroom deputy confer.) |
| | 22 | THE COURT:  What I'd like to do is say the first |
| | 23 | phase of discovery will be finished by January 15th, and that |
| | 24 | you will have talked through the issues you need to confer |
| 14:31:12 | 25 | about related to discovery by then so that you can file a |

14:31:16   1   joint report on these other issues the following week.
           2        The following week I'm in trial.  It goes into the last
           3   week of January.  But I am available January 29th, which is a
           4   Friday, and I'm thinking I'd like to hold the next status
14:31:33   5   conference on January 29th to decide what the next phase of
           6   discovery will include.
           7        So I will need from you by this report that comes in the
           8   week before that, your thoughts, having talked through all of
           9   these issues we talked about that I'm going to identify in my
14:31:51  10   case management order and I can talk through again.
          11        So my thought is you're not just doing discovery by
          12   January 15th, there's going to be a lot of meeting and
          13   conferring on ESI, on other issues where you have
          14   disagreements so that your positions can be laid out fairly
14:32:06  15   clearly in a status report that comes in probably on January
          16   20th probably, so that we have time to look it over before the
          17   29th.
          18        And then the intent on the 29th will be for me to make
          19   concrete discovery decisions on these other issues that are in
14:32:25  20   dispute and set another fairly tight discovery period to get
          21   the additional discovery done, probably three more months, so
          22   that we keep the case moving.
          23        And whether we need any additional discovery beyond that
          24   we can address at the time, when and how we approach
14:32:42  25   bellwethers or expert disclosures, all of those issues, we can

| | |
|---|---|
| 14:32:46 1 | address at the time. |
| 2 | I guess part of my thought is if we could do the |
| 3 | additional discovery in the next three-month phase, then the |
| 4 | discovery phase that would occur after that would be expert |
| 14:32:58 5 | disclosures and depositions, followed by *Daubert* reports. And |
| 6 | somewhere along the way we would be choosing bellwethers. |
| 7 | So let's set January 29th at 9 a.m. for the next status |
| 8 | conference. And let's say that you are going to submit to me |
| 9 | the discovery report by Friday -- I'm sorry, Wednesday, |
| 14:33:21 10 | January 20th. Wednesday, January 20th. |
| 11 | And what I will do in the case management order is I'm |
| 12 | going to list the topics that I want you to address in that |
| 13 | status report that we've talked about today, just so that |
| 14 | we've got a clean list, and it's basically all these other |
| 14:33:51 15 | discovery issues that we've talked through. And I may put an |
| 16 | observation or two in there to inform your discussions. |
| 17 | So, with that schedule in mind and the fact that we're |
| 18 | going to be together on the 29th, let's come back to the |
| 19 | briefing. |
| 14:34:24 20 | I would like to have the privilege log issue fully |
| 21 | briefed by the 29th, and the issue of whether parties can be |
| 22 | bound by depositions taken before they were in the case fully |
| 23 | briefed by the 29th. And I think I'd also like to have the |
| 24 | Lehmann report fully briefed by the 29th. Is all of that |
| 14:34:56 25 | doable? |