**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, <br> _____ <br><br> Debra and James Tinlin, a married couple, <br>   Plaintiffs, <br> v. <br> C. R. Bard, Inc., a New Jersey corporation; and Bard Peripheral Vascular, Inc., an Arizona corporation, <br>   Defendants. | No. MDL 15-02641-PHX DGC <br><br><br> No. CV-16-00263-PHX-DGC <br><br><br><br> **ORDER** |

The parties have filed motions in limine ("MIL") in advance of the Tinlin bellwether trial. The Court previously ruled on Plaintiffs' MIL 1. Doc. 17285. This order will rule on the remaining motions.

**I.     Plaintiffs' MILs.**

   **A.     MIL 2 – Ms. Tinlin's IVC Size.**

The diameter of Ms. Tinlin's inferior vena cava ("IVC") measured between 28 and 29 mm when she received her Recovery filter. Plaintiffs seek to preclude Defendants from using this evidence to show that Dr. Riebe's decision to implant a Recovery filter

constitutes negligence that was a cause of Ms. Tinlin's injuries. Doc. 16578 at 1-2. Plaintiffs contend that the evidence is irrelevant and unfairly prejudicial because Dr. Riebe is not a defendant in the case and no medical malpractice claim is asserted against him. *Id.* at 2-3.

Wisconsin law has "established without a doubt that, when apportioning negligence, a jury must have the opportunity to consider the negligence of all parties to the transaction, whether or not they be parties to the lawsuit and whether or not they can be liable to the plaintiff or to the other tortfeasors." *Connar v. W. Shore Equip. of Milwaukee, Inc.*, 227 N.W.2d 660, 662 (Wis. 1975); *see Heldt v. Nicholson Mfg. Co.*, 240 N.W.2d 154, 157 (Wis. 1976) (trial court did not err in including the plaintiff's employer in the verdict where the record was replete with evidence of its negligence); *Hauboldt v. Union Carbide Corp.*, 467 N.W.2d 508, 515 (Wis. 1991) ("We have held that in an action for negligence, the jury must be given the opportunity to consider the possible negligence of all persons, whether parties or not, who might have contributed to the total negligence.") (citing *Connar*); *York v. Nat'l Cont'l Ins.*, 463 N.W.2d 364, 367 (Wis. Ct. App. 1990) ("If there is evidence of conduct that, if believed by the jury, would constitute negligence on the part of an actor, then that actor should be included in the special verdict."). The fact that Dr. Riebe is not a party to this case and cannot be found liable does not preclude Defendants from presenting evidence that he was negligent in selecting a Recovery filter for Ms. Tinlin and that this was a cause of her injuries.

Ms. Tinlin's IVC size also is relevant to the failure to warn claims. The Recovery's instructions for use ("IFU") cautioned that "[i]f the IVC diameter exceeds 28 mm, the filter must not be inserted into the IVC." Doc. 16893-1 at 2. Plaintiff claims that Dr. Riebe would have read an IFU that contained an adequate warning and may have changed his decision to use a Recovery for Ms. Tinlin. *See* Doc. 16893 at 4. Existing warnings in the IFU clearly are relevant.

In his Tinlin report, Dr. Morris opines that a Recovery filter should not be placed in an IVC larger than 28 mm because this can lead to tilt and migration. Doc. 15081-2

at 16-17, ¶ 1. He further opines that Dr. Riebe's decision to implant a Recovery in Ms. Tinlin fell below the standard of care. *Id.* Based on Dr. Morris's recent deposition testimony, Plaintiffs contend that he can only speculate that the IVC size and Dr. Riebe's decision to implant a Recovery caused Ms. Tinlin's injuries. Doc. 16748 at 2-3.

Plaintiff has the burden of proof as to her claimed injuries, and her "medical testimony in meeting such burden cannot be based on mere possibilities." *Hernke v. N. Ins. Co. of N.Y.*, 122 N.W.2d 395, 399 (Wis. 1963). But in challenging Plaintiff's claim, Defendants are "not required to confine [themselves] to reasonable medical probabilities." *Id.* Rather, Defendants "may attempt to weaken the claim of injuries with medical proof which is couched in terms of possibilities." *Id.*; *see Felde v. Kohnke*, 184 N.W.2d 433, 441 (Wis. 1971) ("It is clear that a contrary opinion to that presented by an opposing party may be presented in terms of possibilities[.]"); *Roy v. St. Lukes Med. Ctr.*, 741 N.W.2d 256, 264 (Wis. Ct. App. 2007) (explaining that "a defense expert is allowed to produce evidence of possibilities").

Plaintiff will claim that the filter's defective design caused her injuries, and Defendants can respond with Dr. Morris's testimony that her injuries possibly were caused by placement of the filter in an IVC that exceeded 28 mm. Plaintiffs will be free to argue that this is a mere possibility and Dr. Morris's opinions are nothing more than speculation and conjecture. *See id.* at 3-5. But the fact that Dr. Morris could not "affirmatively state" the cause of Ms. Tinlin's injuries is no basis for excluding his opinions under Wisconsin law. Doc. 16748 at 3; *see Hernke*, 122 N.W.2d at 399; *Roy*, 741 N.W.2d at 264. The motion in limine (Doc. 16578) is **denied**.[1]

---

[1] Defendants contend that the jury may apportion fault to Dr. Riebe based solely on evidence that he breached the standard of care and therefore was negligent. Docs. 16946 at 8-9, 16893 at 4. This is not correct. To apportion fault to physicians in this case, Defendants must "prove that [they] were *causally* negligent." *Hegarty v. Beauchaine*, 727 N.W.2d 857, 901 (Wis. Ct. App. 2006) (emphasis added). This requires a showing not only of negligence, but also that the negligence was a substantial factor in producing Ms. Tinlin's injuries. *See Fandrey v. Am. Family Mut. Ins.*, 680 N.W.2d 345, 353 (Wis. 2004); *Burton v. Am. Cyanamid*, No. 07-CV-0303, 2019 WL 325318, at *2 (E.D. Wis. Jan. 25, 2019); Wis JI-Civil 1023 (medical negligence standard); *see also Hegarty*, 727 N.W.2d at 903 (rejecting the argument that the jury should have been allowed to apportion fault to other physicians where the defendants failed to show that

- 3 -

**B. MIL 3 – Unrelated Medical Conditions.**

Plaintiffs seek to exclude evidence concerning certain medical conditions that they claim are unrelated to the injuries caused by the Recovery filter:

- Graves' disease
- Surgical resection of the thyroid gland
- Hypothyroidism
- Sjogren's syndrome
- Hypertension
- Uterine and rectal prolapse
- Fibromyalgia and rheumatoid arthritis
- Pernicious anemia

Doc. 16577 at 1-2. Plaintiffs contend that these conditions are not relevant to any issue in the case and would only mislead the jury, confuse the issues, and waste time. *Id.* at 3.

Defendants counter that the conditions carry symptoms that overlap with some of Ms. Tinlin's claimed injuries – future cardiac complications, shortness of breath, back pain, and a weakened trachea. Doc. 16938 at 3. Defendants cite various medical articles purportedly showing the causal connections (*id.* at 2-5), but it is not clear that the documents will be admissible at trial. Nor do Defendants identify any expert medical testimony they will offer on the issue.

Under Wisconsin law, however, Defendants may cross-examine Plaintiffs' experts as to whether it is possible that Ms. Tinlin's medical conditions are related to her claimed injuries. *See Hernke*, 122 N.W.2d at 399. The Court cannot conclude that Ms. Tinlin's medical conditions are irrelevant or otherwise inadmissible. The motion in limine (Doc. 16577) is **denied**.[2]

---

"the alleged negligence *caused* [the patient's] injuries") (emphasis in original).

[2] Defendants assert that the Recovery filter protected Ms. Tinlin when she needed to stop anticoagulation treatment for various medical procedures between 2005 and 2015, including procedures for uterine and rectal prolapse. Doc. 16938 at 3. Defendants agree that they need not divulge the specific reasons that Ms. Tinlin temporarily stopped taking anticoagulants as long as they can offer evidence that she needed to do so multiple times over the years for conditions unrelated to this case. *Id.* at 3-4. The parties should confer and agree on how evidence that Ms. Tinlin stopped anticoagulation from time to time will be presented during trial.

### C. MIL 4 – Rates of Filter Complications.

Plaintiffs anticipate that Defendants will attempt to use a chart they created from their internal TrackWise database regarding reporting rates of IVC filter complications. Doc. 16579 at 2. Plaintiffs contend that the chart is an untrustworthy hearsay document that fails the requirements of the business records exception provided by Rule 803(6). *Id.* at 2-3. Plaintiffs further contend that the chart is inadmissible under Rule 403 because any probative value it may have is substantially outweighed by the danger of unfair prejudice. *Id.* at 3-4.

Defendants assert that they have been fully candid in explaining what the internally calculated reporting rates represent, and Plaintiffs will be free to challenge the accuracy of the rates through evidence of their own and cross-examination of Defendants' witnesses. Doc. 16896 at 2-4. Defendants note that the chart was admitted in the Booker trial over Plaintiffs' hearsay and Rule 403 objections. *Id.* at 2; *see* Doc. 16896-1 at 13-16.

The Court will not predetermine whether Defendants will be able to lay adequate foundation for admission of the chart in the Tinlin trial, or whether the chart should be precluded under Rule 403. The motion in limine (Doc. 16579) is **denied**.[3]

### D. MIL 5 – Retrievable Filter Sales Versus SNF Sales.

Plaintiffs seek to preclude Defendants from using a chart comparing the sales of the permanent Simon Nitinol filter ("SNF") with those of retrievable filters between 2002 and 2016. Doc. 16580 at 1-2. Plaintiffs contend that the chart is not relevant because Ms. Tinlin received her filter in 2005. *Id.* at 2.

Plaintiffs will present evidence that the SNF is a reasonable alternative design to the Recovery filter. The Court concludes that Defendants should be allowed to present evidence of diminished SNF sales to show that the medical community viewed

---

[3] Defendants were precluded in the Hyde trial from using reporting rates to claim that Bard filters are "99.9% effective." *See* Doc. 16579-2. Defendants do not state that they will attempt to make the same claim in this case, but if they decide to do so, they should first raise the issue with the Court outside the presence of the jury.

1 retrievable filters – including the Recovery – as offering benefits over permanent-only filters. The fact that the chart includes sales after Ms. Tinlin received her filter can be pointed out to the jury and goes to the weight of the evidence, not its admissibility. Plaintiffs have not shown that admission of the rates chart would mislead the jury or result in unfair prejudice. The motion in limine (Doc. 16580) is **denied**.

### E.  MIL 6 - Social Security Benefits.

Plaintiffs contend that evidence regarding social security disability benefits Ms. Tinlin applied for or received is barred by Wisconsin's collateral source rule. Doc. 16581 at 1-2. "[T]he collateral source rule states that benefits an injured person receives from sources that have nothing to do with the tortfeasor may not be used to reduce the tortfeasor's liability to the injured person." *Leitinger v. DBart, Inc.*, 736 N.W.2d 1, 7 (Wis. 2007). The rule "generally precludes introduction of evidence regarding benefits a plaintiff obtained from sources collateral to the tortfeasor." *Id.* at 9.

Plaintiffs seek to exclude a June 8, 2005 letter Dr. Stanko wrote in support of Ms. Tinlin's application for permanent disability, a phone message regarding a request for the letter, and Dr. Stanko's deposition testimony about the letter. Doc. 16581 at 2; *see* Doc. 16583. Defendants make clear, however, that they will not offer evidence of Ms. Tinlin's disability to show that she received benefits from a collateral source as compensation for her claimed injuries or to offset any potential damages award. Doc. 16897 at 2. Indeed, Defendants acknowledge that "an award of damages cannot be limited or reduced by a collateral source payment." Doc. 16897 at 2. Defendants instead intend to use the evidence to show that Ms. Tinlin's deep vein thrombosis with pulmonary emboli was a serious condition and she was permanently disabled before her Recovery filter failed. Doc. 16897 at 2-3.

Plaintiffs have not shown that the challenged evidence is inadmissible. The motion in limine (Doc. 16581) is **denied**.

/ / /

/ / /

- 6 -

## II. Defendants' MILs.

### A. MIL 1 – Recovery Death Evidence.

In each of the other bellwether cases tried in this MDL – Booker, Jones, and Hyde – Defendants have moved to exclude evidence of deaths caused by Recovery filter cephalad migration. Docs. 9862, 10677, 10288. The Court denied the motion in the Booker case, which concerned a G2 filter, finding that the evidence concerned the device that was a predicate for the G2 in Defendants' FDA submissions and also would be necessary for the jury to understand what prompted design changes in the G2. Doc. 10323 at 4. The Court reached a different conclusion in the Jones and Hyde cases because the G2 design eliminated cephalad migration, the cases concerned filters that were two or three generations after the Recovery (G2X and Eclipse), the plaintiffs received the filters more than four years after the Recovery was taken off the market, and Recovery filter cephalad migration deaths – which stopped after the G2 was introduced – said little if anything about the plaintiffs' claims regarding the G2X and Eclipse. The Court concluded that Recovery death evidence had only marginal relevance that was substantially outweighed by the danger of unfair prejudice. Docs. 10819 at 3-5, 12533 at 6-7; *see* Docs. 10920, 11041 (orders denying motion for reconsideration in Jones).

Defendants contend that the Court's reasoning in Booker should not apply in this case because the Court did not consider whether cephalad migration was substantially similar to complications Ms. Booker's G2 filter experienced. Doc. 16575 at 2. But this case concerns the Recovery filter. Plaintiffs contend that the Recovery was defectively designed, presented unusually high risks to patients, and continued to be marketed despite Defendants' knowledge of high failure rates and deaths. Plaintiff Tinlin contends that she never would have received a Recovery filter if Defendants' had disclosed these increased risks to her doctor, and that Defendants' continued marketing of this dangerous product warrants punitive damages. The Recovery deaths are directly relevant to these claims.

To establish the strict liability design defect claim, Plaintiffs must show that the Recovery's "foreseeable risks of harm" could have been reduced by an alternative

reasonable design, and that omission of the alternative design rendered the Recovery "not reasonably safe." Wis. Stat. § 897.047(1)(a). Plaintiffs must also show that the alleged defect rendered the Recovery "unreasonably dangerous[.]" § 895.047(b). Recovery filter patient deaths and Defendants' knowledge of those deaths go directly to the Recovery's foreseeable risks of harm and whether it was unreasonably dangerous.

Defendants contend that Plaintiff Tinlin did not experience the kind of whole-filter cephalad migration that resulted in the reported deaths, but Plaintiffs contend that same filter defects and instability that caused cephalad migration led to the kinds of migration, tilting, perforation of the IVC, and fracturing that Ms. Tinlin experienced.

Recovery death evidence also is relevant to Plaintiffs' failure to warn and concealment claims. Ms. Tinlin's implanting physician, Dr. Riebe, testified that he needed complete and accurate information from medical device manufacturers to help him conduct a proper risk-benefit analysis. Doc. 15702-1 at 5. He explained that a manufacturer's concealment of true risks prevents him from conducting such an analysis. *Id.* He further stated that he would have wanted to know that Bard had placed the Recovery on hold due to significant migration problems and internally found the Recovery to have unacceptable risks. *Id.* at 6-8, 14. This information would have been important to him in understanding the Recovery's safety and conducting a proper risk-benefit analysis. *Id.* at 8-9, 19. The fact that patients died from Recovery migration problems is probative on the causation issue – that is, whether Dr. Riebe would have selected a different filter for Ms. Tinlin had he been warned about the Recovery's true risks, as Plaintiffs describe them.

Defendants cite *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991), for the proposition that a showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other incidents of product failure as direct proof of negligence or defect. Doc. 16575 at 2. But substantial similarity is not required when the other incidents are used to impeach an expert's testimony that a product is safe. *See Cooper*, 945 F.2d at 1105. Indeed, even where other-incident evidence may have

"some prejudicial effect, it [is] also highly probative of the credibility of the assertion of [defense] experts that the [product] was generally safe." *Id.* Defendants clearly will assert in this case that the Recovery filter was safe and effective.

Defendants note that the Court expressed concern in Booker that too heavy an emphasis on deaths could result in unfair prejudice that substantially outweighs the probative value of the cephalad migration evidence. *Id.* at 3 (citing Doc. 10323 at 4). The Court has the same concern in this case, but this is no basis for precluding the evidence before trial. Defendants may object during trial if they believe Plaintiffs are overemphasizing the cephalad migration deaths.

Defendants contend that admitting the death evidence to support an award of punitive damages would violate due process and Wisconsin law. *Id.* at 4. To recover punitive damages, Plaintiffs must show that Defendants "acted maliciously" or in an "intentional disregard of the rights" of Plaintiffs. Wis. Stat. 895.043(3); *see Strenke v. Hogner*, 694 N.W.2d 296, 304-05 (Wis. 2005). The jury may consider Defendants' "attitude and conduct" and "the degree of [Defendants'] awareness of the hazard and of its excessiveness." Wis JI-Civil § 1707.2; *see* Doc. 12438 at 38-39. Evidence that Bard continued to market the Recovery in the face of unusually high patient deaths is relevant to Bard's state of mind.[4] Moreover, the death evidence "can help to show that the conduct that harmed [Ms. Tinlin] also posed a substantial risk of harm to the general public, and so was particularly reprehensible[.]" *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007); *see State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 419 (2003) (explaining the "most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct," which includes whether "the tortious conduct evinced an indifference to or a reckless disregard

---

[4] The Court reached a different conclusion in Jones because cephalad migration deaths stopped when the Recovery was taken off the market in 2005, and the deaths shed little light on Defendants' state of mind when marketing different filters with different complications, years later. Doc. 10819 at 5.

of the health or safety of others") (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996)).

Defendants' reliance on *Henrikson* and *Kehl* is misplaced. Doc. 16575 at 4. Each case involved a separate act of fleeing the scene of the accident that caused the plaintiff no injury. *See Henrikson v. Strapon*, 758 N.W.2d 205, 215 (Wis. Ct. App. 2008) ("[T]here is no evidence that Strapon's fleeing the scene caused an injury to Henrikson or aggravated any injury he received from being hit by Strapon's car[.]"); *Kehl v. Econ. Fire & Cas.*, 433 N.W.2d 279, 281 (Wis. Ct. App. 1988) ("The collision . . . resulted from negligence and was distinct from the fleeing, which was a separate volitional act."). Plaintiffs contend that the Recovery migration problems that caused Ms. Tinlin's injuries and the deaths of other patients resulted from the same flawed design. Doc. 16943 at 2.

Defendants have not shown that Recovery death evidence is inadmissible in this case. The motion in limine (Doc. 16575) is **denied**.

### B. MIL 2 – FDA Warning Letter.

Defendants re-urge their motion to exclude the 2015 FDA warning letter. Docs. 9864, 16572; *see* Doc. 9864-1; Ex. 1680. The Court previously found the that the following topics in the letter lack probative value: Topics 1 and 2 (Recovery cone retrieval system), topic 4(a) (filter cleaning process), and topics 4(b), 5, 6, 7 and 8 (Denali filter). Doc. 10258 at 6-8; Booker Trial Tr. at 1890. Plaintiffs have not shown that topics 1, 2, 4 and 6 are relevant to any issue in this case. Plaintiffs contend that topics 7 and 8 show that Bard failed to properly report adverse events, and this evidence demonstrates a pattern of concealment that is relevant to the failure to warn claims and punitive damages. Doc. 16945 at 2. But the adverse events in topics 7 and 8 involved Bard's latest-generation filter – the Denali – which is not at issue in this case. The Court will **grant** the motion (Doc. 16572) with respect to topics 1-2 and 4-8.

Topic 3 concerns Bard's regulatory violations for failure to establish and maintain procedures for receiving, evaluating, and reporting IVC filter complaints, and expressly references the G2 and Eclipse – the filters at issue in the other bellwether trials.

Doc. 9864-1 at 5-6. The Court deferred ruling on the relevance of topic 3 until trial in Booker, and took the same approach in Jones and Hyde. *See* Doc. 10805. The Court ultimately concluded in Booker that topic 3 was relevant because much evidence had been presented about the MAUDE database and adverse event reports to the FDA, the data upon which Bard relied in making reports, and Bard's root cause analysis. Topic 3 was relevant to rebut the implication, if not the express argument, that the FDA never took action against Bard. *See* Booker Trial Tr. at 1888-89. The Court noted that topic 3 included reference to the G2, the filter at issue in Booker. *Id.* at 1889. The Court reached similar conclusions in Jones and Hyde. *See* Docs. 11256, 12736.

Defendants contend that topic 3 should be excluded in this case because it has nothing to do with the Recovery filter and is not otherwise relevant to any issue or claim. Doc. 16572 at 2-4. Defendants further contend that the presentation of evidence about the warning letter would waste important trial time and only confuse the jury about the true issues in the case. *Id.* at 4.

Plaintiffs counter that topic 3 is relevant for the same reasons it was relevant in the other bellwether trials. Doc. 16945 at 2-4. Plaintiffs assert that although topic 3 does not reference the Recovery by name, it covers Bard's processes for the entire IVC filter line, including the Recovery. *Id.* at 3-4. Plaintiffs note that the Court previously rejected Defendants' Rule 403 objections. *Id.* at 4.

The decision on this issue will need to be made at trial once the relevancy of topic 3 can be determined in light of all the facts presented. Plaintiffs shall raise the issue with the Court outside the presence of the jury before seeking to admit the FDA warning letter. The motion (Doc. 16572) is **denied** in this regard.[5]

### C. MIL 3 – Crisis Communications Plan.

Defendants seek to exclude the Recovery Filter Crisis Communications Plan ("CCP") that Bard had prepared in 2004 to help manage damaging media coverage about

---

[5] If topic 3 of the letter is deemed admissible at trial, Plaintiffs shall make appropriate redactions before offering it into evidence. *See* Booker Trial Tr. at 1889-90.

- 11 -

a Recovery migration death. Doc. 16573. Defendants contend that the CCP is irrelevant for three reasons.

First, Plaintiffs cannot show a substantial similarity between the cephalad migration death that prompted the CCP and Ms. Tinlin's filter failures and resulting injuries. *Id.* at 2 (citing *Cooper*, 945 F.2d at 1105; *State Farm*, 538 U.S. at 422). But as explained above, cephalad migration deaths are relevant to Plaintiffs' claims.

Second, the CCP was never put into action and therefore had no causal impact on Plaintiffs' claims or injuries. *Id.* at 2-3. Defendants' causal connection is not the only relevant issue in this case. The CCP is relevant to Defendants' understanding of the risks presented by Recovery, their response to those risks, and, potentially, their state of mind for punitive damages.

Third, the CCP does not support Plaintiffs' punitive damages claim because retaining a public relations firm to help manage negative media coverage of product failures is good corporate policy. *Id.* at 3. This may be a good jury argument, but it does not render the CCP irrelevant. The CCP notes that, as a result of unfavorable press coverage, "stock prices may plummet [and] analysts may downgrade the affected company's rating[.]" Doc. 16573-1 at 3. The CCP goes to Bard's attitude toward Recovery complications and is relevant to Plaintiffs' claim that Bard acted with intentional disregard of Plaintiff's rights. *See* Wis. Stat. 895.043(3); Wis JI-Civil § 1707.2. Defendants will be free to argue that the CCP was never finalized and contains "template language" not specific to or approved by Bard (Doc. 16753 at 4), but this goes to CCP's evidentiary weight, not its admissibility.

The Court cannot conclude that the CCP is irrelevant. Nor does the Court find it inadmissible under Rule 403. The motion in limine (Doc. 16573) is **denied**.

### D. MIL 4 – Patient at Dr. Muehrcke's Hospital.

Dr. Muehrcke was a consulting physician for a patient who had a Bard filter and purportedly died from cardiac tamponade. He recently opined in a state-court deposition that the patient's cardiac tamponade was caused by a fractured strut that had embolized to

her heart. Doc. 16574-1 at 8. Defendants seek to preclude Plaintiffs from referencing this opinion during opening statements or eliciting it during Dr. Muehrcke's direct examination because it is not included in Dr. Muehrcke's expert reports and was not offered during his deposition in this case. Doc. 16574 at 2-3 & n.2.

As the Court outlined in Case Management Order No. 8, expert reports under Rule 26(a)(2)(B) must set forth "the testimony the witness is expected to present during direct examination, together with the reasons therefor." Doc. 519 at 3, ¶ 6 (citation omitted). Plaintiffs note that Dr. Muehrcke opines in his Tinlin report that "pulmonary fragments are known to cause . . . death" and "an additional strut can embolize at any time to [Ms. Tinlin's] heart causing her to suffer cardiac tamponade[.]" Doc. 16951 at 2. But this says nothing about his opinion in the state-court case that one of his patients died from cardiac tamponade caused by a fractured strut. Plaintiffs have not timely disclosed that opinion in this case, nor have they shown that the failure to disclose is substantially justified or harmless. Plaintiffs therefore are precluded from eliciting the opinion during opening statements and direct examination of Dr. Muehrcke. *See* Fed. R. Civ. P. 37(c)(1) (a party that fails to disclose information required by Rule 26(a) "is not allowed to use that information . . . at a trial, unless the failure was substantially justified or harmless"); *see also Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."). The motion in limine (Doc. 16574) is **granted**.[6]

Dated this 26th day of April, 2019.

_David G. Campbell_
David G. Campbell
Senior United States District Judge

---

[6] Given this ruling, the Court need not address whether the opinion should be excluded under Rules 403 and 702. *See* Doc. 16574 at 3-4.

- 13 -