**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **IN RE: BARD IVC FILTERS** | No. 2:15-MD-02641-DGC |
| **PRODUCTS LIABILITY LITIGATION** | |
| | |
| _____ | |
| | |
| **This Document Relates to All Actions** | |
| _____ | |

## RESPONSE OF MARC J. BERN & PARTNERS LLP IN OPPOSITION TO PLAINTIFFS' MOTION SEEKING ESTABLISHMENT OF COMMON BENEFIT FEE AND EXPENSE ACCOUNTS PURSUANT TO CASE MANAGEMENT ORDER NO. 6 AND MODIFICATION OF CASE MANAGEMENT ORDER NO. 6

Comes now, Marc J. Bern & Partners LLP ("MJB") on its own behalf and as a firm representing hundreds of clients who would be negatively impacted by the Plaintiffs Steering Committee's ("PSC") request to substantially increase the 8% common benefit fund assessment to a 14% assessment, and opposes the PSC's motion pursuant to Case Management Order No. 6 ("CMO 6") seeking establishment of two funds – a common benefit fee fund and an expense fund – and PSC's request for the modification of CMO 6 ("Plaintiff's Motion"). MJB files this Response in Opposition to Plaintiff's Motion, and respectfully shows the Court the following:

### INTRODUCTION

The law firm of Marc J. Bern & Partners LLP represents over 200 clients whose cases are filed and pending in the United States District Court, District of Arizona, in the *In Re Bard IVC Filters Products Liability Litigation*, multidistrict litigation MD-15-02641 ("this MDL"). MJB acted in reliance on the representations of the PSC, memorialized in CMO 6, that "the [common benefit fee and cost] assessment amount is 8%" and that the assessment "shall not be altered" when filing each of its clients' cases related to injuries caused by Bard IVC filters in this MDL.

1

CMO 6, Doc. No. 372, p. 10; *see* Exhibit A. MJB relied heavily in the representations made in CMO 6 in assessing its clients' litigation choices, its expenditures on their cases, and in its decisions regarding resolution of these cases.

The PSC now requests that this Court modify CMO 6 and **<u>almost double</u>** the common benefit assessment from a total of 8% (6% for fees and 2% for costs) to a total of 14% (9% for fees and 5% for costs). The requested assessment increase will drastically and negatively impact all plaintiffs with cases pending in this MDL, including MJB's clients. Most importantly, the requested assessment increase is excessive and quite simply unwarranted. The current 8% assessment is adequate, and because the PSC has not shown that a 14% assessment is necessary for the advancement of the litigation, Plaintiff's Motion to modify CMO 6 should be denied.

### A.   MJB Reasonably Relied on CMO 6's Representation that the 8% Assessment Would Not Be Altered.

MJB is currently in the process of resolving nearly two hundred of its Bard IVC filter cases pending in this MDL. As such, MJB has reasonably relied upon the representation by the PSC, memorialized in CMO 6, that the common benefit assessment was 6% and that it would not be altered.  CMO 6's assessment provision states that "the assessment amount is 8%, which includes 6% for attorneys' fees and 2% for expenses. The assessment represents a holdback (*In re Zyprexa Prods. Liab. Litig.*, 267 F.Supp.2d 256 (E.D.N.Y. 2006)) ***and shall not be altered.*** CMO 6 [Doc. 372, p. 10] (emphasis added). A sudden increase in the common benefit assessment now will cause irreparable damage to our clients given MJB's reliance on CMO 6.

### B.   The PSC Has Not Shown That an Increase in the Assessment is Necessary.

The burden is on the PSC to demonstrate that any increase to the common benefit assessment over 8% is required to reasonably and adequately advance the litigation. Having failed to make this showing, the PSC's request must be denied. The common benefit assessment may

not be increased more than 8% unless – and only if – the PSC sufficiently demonstrates that any such increase is **<u>necessary</u>** to adequately advance the litigation. Pursuant to the Participation Agreement executed between participating attorneys and the PSC, participating attorneys will not support a common benefit assessment in excess of 8% "unless it should become apparent that fees in excess of 6% or costs and expenses in excess of 2% *are required to reasonably and adequately advance the litigation." See* CMO 6, Exhibit A [Doc. 372] (emphasis added).

Here, the PSC has not made an adequate or conclusive showing that could support the need for an assessment increase above 8%. The PSC has failed to submit any evidence that the current 8% assessment is inadequate. The PSC claims that a modification is needed because "records reflect tens of thousands of hours devoted to this litigation, and the PSC has contributed more than $6 million to fund the litigation." No time records have been produced, despite a claim that such records have allegedly been kept and submitted to Co-Lead Counsel.

The PSC has not argued, let alone demonstrated, *why* an assessment increase over 8% is necessary. A recital and listing of work that the PSC had previously completed under the 8% assessment does not show that an assessment increase is required to advance the litigation in the future, let alone a ***substantial*** increase above what CMO 6 already provides. The work that the PSC describes as a "massive undertaking" likewise fails to demonstrate how the current 8% assessment is inadequate to cover any required costs, or why an increase is necessary. It is not clear what this "massive undertaking" entailed, and certainly unclear whether any of the work performed as cited by the PSC warrants an assessment increase. *See* Exhibit B, Doc. 291, p. 4-5. Certainly, all work cited was expected from the outset. The PSC asserts that this litigation has involved "lengthy motion practice" but offers no argument or evidence of extraordinary briefing efforts beyond what is expected to be performed in an MDL proceeding – or any proceeding. The

PSC asserts that it had to litigate three bellwether trials but offers no reason why it did not expect to litigate bellwether trials from the infancy of this MDL – bellwether trials are common practice in any MDL. Indeed, motion practice, document review, depositions, expert reports, and procuring testimony are all expected when litigating (in an MDL proceeding or otherwise). Nothing that the PSC states indicated they went beyond and above what is normally expected of a Plaintiff Steering Committee in an MDL.

The increase in common benefit assessment is not justified by the length of the litigation. While the litigation was extended for one year from the initial estimated schedule as proposed by the PSC at the outset of the litigation (*see* Doc. 174, p. 24-25), a modest one-year extension in the time the does not justify a near doubling of the common benefit assessment. The fact that the number of hours and cost will grow as a litigation proceeds is expected of any litigation.

Nor does the PSC show that the original 8% assessment is inadequate to cover these actions and all future actions. The PSC claims that it will help on litigations designated for remand. The MDL court (and by extension the PSC created by the MDL court) concludes its role in a case once the case is remanded back to the transferor court. Assessments typically are not, ***and should not be***, imposed on MDL cases to fund PSC activities occurring outside of the MDL. The PSC also incorrectly suggests that two potential future activities require additional funds: (1) the pursuit of a settlement and (2) the continued involvement of the PSC in post-remand cases. Neither of these are a proper basis for taxing plaintiffs' or MJB's recoveries, for the reasons cited in the Response of Freese & Goss and Matthews & Associates which MJB joined.

Vague language and undetailed claims of additional workload does not provide the court with an accurate assessment of whether an assessment increase is needed. CMO 6 mandates that any increase of the common benefit assessment over 8% requires a showing that additional funds

*are required to reasonably and adequately advance the litigation*. Here, the PSC fails to demonstrate *why* any increase in the assessment is needed to do just that: reasonably and adequately advance the litigation.

### C.  The Current 8% Assessment is More than Reasonable and Adequate.

The PSC did not put forth any evidence to show that the current 8% assessment is not adequate or reasonable to advance this litigation. Indeed, the PSC does not even offer any reason to explain why the current 8% assessment is inadequate to achieve this purpose. This especially true when one looks at the different Common Benefit Assessment involved in other litigations. *See, e.g.*, *In re Baycol Prods. Liab. Litig.*, MDL 1431 (PTO 25) (6% assessment in MDL consisting of 1,253 actions); *In re Rezulin Prods. Liab. Litig.*, 2002 WL 441342 (S.D.N.Y. 2002) (PTO 67) (6% assessment in MDL consisting of "hundreds" of actions); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, MDL 1407 (Amended CMO 8) (4% assessment in MDL consisting of 900 actions); *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, MDL 926 (PTO 13 and 13A) (4% assessment in MDL consisting of 1,778 actions); *In re Baush & Lomb Contact Lens Solution Prods. Liab. Litig.*, MDL 1785 (PTO 15) (6% assessment in MDL consisting of over 400 actions). In none of these smaller MDLs does the common benefit assessment reach CMO 6's 8% assessment, let alone exceed it.

The substantial increase in the number of plaintiffs in this MDL underscores the fact that an assessment increase over 8% is neither warranted nor justified. The PSC originally argued for a 9% common benefit assessment because it ***underestimated*** the size of the MDL. When CMO 6 was entered, it was estimated that this MDL would be comprised of approximately 1,000 plaintiffs. When first advocating for an 9% assessment, the PSC cited the relatively small (1,000 plaintiff) size of the MDL as a reason that the more typical 4%-6% assessment would be

inadequate.  According to the PSC, the Bard IVC MDL warranted a larger per-case percentage precisely because there were fewer cases: "where there are a large number of plaintiffs, a smaller percentage assessment can provide the same actual amount as a larger percentage assessment applied to a smaller number of plaintiffs." *See* Exhibit B, Doc. 291, p. 4-5.

As of March 15, 2019, the PSC represents that the MDL includes 6,753 active cases, with the number of active cases in this MDL steadily growing every day. *See* Motion at p. 4. This increase in the number of plaintiffs in this MDL is almost seven-fold. CMO 6 resulted in an 8% assessment per plaintiff for the PSC's funds. The increase in the number of plaintiffs, from the originally expected 1000 plaintiffs to the now 6,753 plaintiffs in this MDL, means that nearly ***seven times*** the funds will be available from the assessment as set forth in CMO 6 than originally estimated. Using the PSC's own logic, the fact that the number of plaintiffs in this MDL has increased nearly seven-fold should allow the costs of litigation to be spread more broadly and the per-plaintiff assessment to go *down*. At a minimum, a seven-fold increase in the number of plaintiffs from whom assessments will be collected should suffice to cover litigation fees and costs without the need for assessments to increase.

Any claims that such funds are not adequate for litigation at this time, as the cases in this MDL are now in the late stages of the litigation, especially ***without any supporting evidence or showing*** that an assessment increase is necessary "to reasonably and adequately advance the litigation" should be disregarded – or, at the very least, very carefully examined.

### D.  A Common Benefit Assessment Increase Will Stifle Settlement Efforts.

As previously stated, MJB relied heavily on CMO 6's representation of the Common Benefit Agreement of 8%. MJB has been working with other plaintiff's law firms outside of the PSC to come to a resolution on their Bard IVC filter cases. The increased assessment is excessive

and unwarranted in all cases and is particularly unfair and burdensome when applied to cases that are near resolution under a reasonable expectation that the common benefit assessment would be 8%. MJB requests that their clients who will soon enter a settlement term sheet or otherwise resolve their cases be excluded from any increase in the common benefit assessment above 8%.

## **CONCLUSION**

Plaintiff's Motion seeks a substantial increase in the common benefit assessment – from 8% to 14% - but fails to show why an assessment increase over 8% is necessary to reasonably and adequately advance this litigation. Thus, for the reasons stated herein, MJB requests that this Court deny this motion.  Alternatively, if CMO 6 is modified to increase the common benefit assessment, MJB requests that any of its clients who (it is anticipated) will resolve their cases be excluded from any increase in the common benefit assessment above 8%.  The undersigned also requests any other and further relief to which MJB and/or its clients may be justly entitled.

Date:   April 26, 2019             Respectfully submitted,
MARC J. BERN & PARTNERS LLP

/s/ Debra J. Humphrey
Debra J. Humphrey
One Grand Central Place
60 East 42nd Street, Suite 950
New York, NY 10165
Tel: (212) 702-5000
Fax: (212) 818-0164
Email: dhumphrey@bernllp.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of April 2019, I electronically transmitted the foregoing document, RESPONSE OF MARC J. BERN & PARTNERS LLP IN OPPOSITION TO PLAINTIFFS' MOTION to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record.

<u>/s/ Debra J. Humphrey</u>