# EXHIBIT A

1  Ramon Rossi Lopez - rlopez@lopezmchugh.com
   (California Bar Number 86361; admitted *pro hac vice*)
2  Lopez McHugh LLP
   100 Bayview Circle, Suite 5600
3  Newport Beach, California  92660
   949-812-5771
4
   Mark S. O'Connor (011029) – mark.oconnor@beusgilbert.com
5  Beus & Gilbert PLLC
   701 N. 44th Street
6  Phoenix, Arizona  85008
   480-429-3019
7
   *Co-Lead/Liaison Counsel for Plaintiffs*
8
9              UNITED STATES DISTRICT COURT
10                 DISTRICT OF ARIZONA
11 In Re Bard IVC Filters Products Liability          No. MD-15-02641-PHX-DGC
   Litigation
12
13 This Document Relates to All Actions               **PLAINTIFFS' MOTION SEEKING**
                                                       **ESTABLISHMENT OF COMMON**
14                                                     **BENEFIT FEE AND EXPENSE**
                                                       **ACCOUNTS PURSUANT TO CASE**
15                                                     **MANAGEMENT ORDER NO. 6 AND**
                                                       **MODIFICATION OF CASE**
16                                                     **MANAGEMENT ORDER NO. 6**

17                                                     (Assigned to the Honorable David G.
                                                       Campbell)
18
19
20        Pursuant to Case Management Order No. 6 (ECF 372) ("CMO 6"), Plaintiffs

21 respectfully request that the Court direct the establishment of two funds: a common

22 benefit fee fund, and an expense fund, as well as appointment of an escrow agent over the

23 funds and to perform other duties set out in CMO 6.  Plaintiffs also respectfully request

24 modification of CMO 6 to remove the requirement that the escrow agent be a certified

25 public accountant, and instead approve the appointment of Citibank, N.A. to serve in that

26 capacity.  Finally, Plaintiffs respectfully request that CMO 6 be modified to increase the

27 common benefit assessments to account for the increased scope of this litigation, the

28 amount of work conducted to date, and the amount of work to be done.

A.   **Establishment of Common Benefit Accounts and Appointment of Escrow Agent.**

CMO 6 states:

> At an appropriate time, Plaintiffs' Co-Lead counsel shall ask the Court to direct that two interest-bearing accounts be established to receive and disburse funds as provided in this Order… The first fund shall be designated the "Bard IVC Filters Fee Fund" and the second fund shall be designated the "Bard IVC Filters Expense Fund." These funds will be held subject to the direction of this Court.

ECF No. 372, § IV(A).  CMO 6 also provides that:

> [T]he Court will appoint a qualified certified public accountant (the "CPA") to serve as escrow agent over the Funds and to keep detailed records of all deposits and withdrawals and to prepare tax returns and other tax filings in connection with the Funds. Such subsequent Order shall specify the hourly rates to be charged by the CPA and for the CPA's assistants, who shall be utilized where appropriate to control costs. The CPA shall submit quarterly detailed bills to the Court and to Plaintiffs' Co-Lead Counsel.

*Id.*

On October 5, 2018, this Court ordered the parties to meet in person for the purpose of engaging in good faith global settlement negotiations, to occur no later than November 20, 2018. *See* ECF No. 12856.  The parties have continued to meet and confer in compliance with the Court's Order. Counsel for Defendants have also indicated that settlement discussions have begun with certain parties, and a term sheet signed with two law firms representing large groups of plaintiffs. Additionally, certain mature cases in this MDL have been remanded from this Court to their transferor jurisdictions.

Therefore, Plaintiffs believe that the appropriate time has come to ask the Court to enter an Order directing the establishment of a "Bard IVC Filters Fee Fund" and of  a "Bard IVC Filters Expense Fund," both of which will be held subject to the direction of this Court. See CMO 6, at § IV(A).

Additionally, Plaintiffs ask that the Court approve, rather than a CPA, the appointment of Citibank, a bank that has experience serving in the capacity as an escrow agent, as escrow agent for the funds.  The proposed Escrow Agreement with Citibank is

2

attached hereto as Exhibit 1.[1]  Further, although CMO No. 6 contemplated a subsequent order that specified hourly rates for the CPA, Plaintiffs propose that the escrow agent's (Citibank's) fees will be as set forth in Schedule B to the Escrow Agreement to be entered into with Citibank.  Such fees would be paid from the Bard IVC Filters Expense Fund and considered a shared cost, as CMO No. 6 contemplates.  Plaintiffs' Co-Lead Counsel would be responsible for arranging for the preparation of tax filings related to each account.

### B.    Modification of Common Benefit Assessment Percentages.

The PSC also seeks amendment of CMO 6 to provide for an increase in the assessments for common benefit attorneys' fees and costs, from a total of eight percent (six percent for fees and two percent for costs) to a total of fourteen percent (nine percent for fees and five percent for costs). This increase is necessary because the scope, size, duration, and cost of this litigation have outstripped the PSC's expectations at the time that they requested the current assessment percentages of six and two percent.  The requested percentages are still well within reason and within the amounts approved in other MDL's. Importantly, the requested assessment amount remains a holdback, not an order of disbursement.  Under CMO 6, eventual disbursements to those who performed common benefit work will be made only with review and approval by the Court or under a procedure ordered by the Court.  *See* CMO 6, at 12.

CMO 6 established policies, procedures, and guidelines for the "fair and equitable sharing among plaintiffs, and their counsel, of the burden of services performed and expenses incurred by attorneys acting for the common benefit of all plaintiffs in this complex litigation."  CMO 6, at 1.  CMO 6 provided that, in exchange for receiving the benefit of work performed for plaintiffs' common benefit, all plaintiffs and attorneys who reach settlements or recover monetary damages or other monetary relief are subject to an assessment of their gross monetary recovery.  *Id.* at 9-10.  CMO 6 established assessment

---

[1] Counsel for Bard have reviewed the draft escrow agreement and agree to the procedures set out within it, but will oppose the requested assessment percentage increases described below.

1  amounts of 6 percent for attorneys' fees and 2 percent for expenses.  *Id.* at 10.

2      At the time that Plaintiffs requested that the Court designate these percentages, the

3  PSC expected that this MDL would be smaller and of a shorter duration than it has turned

4  out to be. At the time this MDL had formed, Bard had been litigating filter cases for years.

5  Although the PSC was fully aware of the need for substantial further discovery and

6  eventual trials, given the record that had already been established prior to the MDL's

7  establishment, trials stretching into 2019 seemed unlikely.  Further, while the MDL now

8  includes (as March 15, 2019) 6,753 active cases, in 2015, when the PSC requested the

9  entry of CMO 6, they estimated that the MDL would comprise approximately 1,000 cases.

10  *See* ECF No. 291, at 5. Those expectations were reasonable, and drove the choice of

11  conservative assessment percentages.[2] At the same time, the Common Benefit

12  Participation Agreement, which the Court approved at the time that it entered CMO 6,

13  anticipated a potential increase in the assessment amount.  *See* ECF No. 372, Exh. A, at 3

14  (providing for eight percent assessment "unless it should become apparent that fees in

15  excess of 6% or costs in excess of 2% are required to reasonably and adequately advance

16  the litigation").

17      As the MDL grew in size, and as the parties prepared for multiple bellwether trials,

18  the number of hours and dollars expended on common benefit work has come to dwarf the

19  PSC's initial estimates.  Consistent with CMO 6, participating counsel have submitted

20  their contemporaneously recorded time to Co-Lead Counsel and to a special master

---

22  [2] *In re Nuvaring Products Liab. Litig.*, MDL No. 1908, ECF No. 1129 (E.D. Mo.) (11
    percent for fees, 4.5 percent for costs); *In re: Depuy Orthopaedics, Inc. Pinnacle Hip
    Implant Prods. Liab. Litig.*, MDL No. 22-44 (N.D. Tex.), ECF No. 889 (seven percent for
23  fees; three percent for costs); *In re Bair Hugger Forced Air Warming Products Liab.
    Litig.*, MDL 2666, ECF No. 47 (D. Minn.) (10-16 percent for fees; two percent for costs);
24  *See, e.g., In Re: Kugel Mesh Hernia Patch Products Liability Litigation*, MDL No. 1842
25  (D.R.I.), ECF No. 2382 (in case involving Bard, eight percent for fees and four percent for
    costs) (attached as Exhibit A to ECF No. 271); *In re Genetically Modified Rice Litig.*,
26  MDL No. 1811, ECF No. 2574 (6-8 percent for fees; 3 percent for costs); *see also In re
    Guidant Corp. Implantable Defibrillators Products Liability Litigation*, MDL No. 1708,
27  2008 WL 682174, at *16 (D. Minn. Mar. 7, 2008) (14.375% of global settlement amount
28  as a common benefit fee award).

retained to monitor timekeeping in this litigation. Those records reflect tens of thousands of hours devoted to this litigation, and the PSC has contributed more than $6 million to fund the litigation. This massive collective undertaking has been to the benefit of the thousands of plaintiffs who have filed cases in this MDL, putting them in a position to resolve their cases. It has included the review of millions of pages of Bard's documents, dozens of depositions, including of numerous experts on both sides, lengthy motion practice – including a dispositive motion based on preemption, which was unanticipated due to the scarcity of such motions related to 510(k)-cleared devices, resulting in additional expert fees and expenses as well as effort lasting the better part of a year – and the full trial of three bellwether cases and dispositive motions for four plaintiffs, not including the round of dispositive motions for the *Tinlin* trial. The number of hours and dollars will only grow, and likely substantially, because the parties will be preparing for and conducting the upcoming *Tinlin* trial, and also expend significant amounts of time and money related to efforts to reach and then implement settlement. At the same time, it appears reasonably likely that this litigation will continue after remand after the *Tinlin* trial; the PSC will continue to fund cases post-remand using common benefit funds and assessments, and assist with trials. The parties are also litigating their respective appeals stemming from the bellwether trials.

It is entirely common for MDL courts to approve increases in assessment percentages as the litigation takes shape and the full scope of work required to press it forward and prepare for trial reveals itself. It is impossible to predict with any certainty litigation costs, which, among other factors, are driven by the defendant's strategy and tactics, and by what discovery reveals. In light of those practical realities, courts commonly approve comparable or greater increases in initial assessment percentages. *See In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545, ECF No. 2894 (N.D. Ill.) (increasing total assessment from ten percent to 19.5 percent); *In re Benicar (Olmesartan) Prods. Liab. Litig.*, MDL No. 2606, ECF No. 1215 (D.N.J.) (increasing total assessment from 8 percent to 9.5 percent); *In re Guidant*, 2008 WL

682174, at *2, *15-16 (approving master settlement overriding prior holdback amounts). Even with the increase requested, the total assessment percentage of fourteen percent still falls within amounts approved in MDL's of comparable scale. *See* note 1, above.

## C.    Conclusion

In sum, Plaintiffs request that the Court enter an order:

1.    Appointing Citibank to serve as escrow agent over the Funds.

2.    Directing the escrow agent to keep detailed records of all deposits and withdrawals, to prepare tax returns and other tax filings in connection with the Funds, and specifying the hourly rates to be charged by the escrow (to be used where appropriate to control costs).

3.    Ordering the escrow agent to submit quarterly detailed bills to the Court and to Plaintiffs' Co-Lead Counsel.

4.    Allowing for the escrow agent's bills, as set out in Exhibit B to the Escrow Agreement, to be paid from the Bard IVC Filters Common Benefit Expense Fund as a shared cost.

5.    Amending CMO No. 6 so that, in Section IV(A), references to "the CPA" are replaced by the term "Escrow Agent."

6.    Increasing the assessment percentages set out in Section IV(B)(3) to nine percent for attorneys' fees and five percent for expenses.

The accompanying proposed Order reflects the requested relief described above.

Case 2:15-md-02641-DGC Document 14931 Filed 04/12/19 Page 8 of 8

RESPECTFULLY SUBMITTED this 12th day of April 2019.

BEUS GILBERT PLLC

By:*/s/ Mark S. O'Connor*
    Mark S. O'Connor
    701 N. 44th Street
    Phoenix, Arizona 85008

LOPEZ McHUGH LLP
    Ramon Rossi Lopez (CA Bar No. 86361)
    (admitted *pro hac vice*)
    100 Bayview Circle, Suite 5600
    Newport Beach, California 92660

*Co-Lead/Liaison Counsel for Plaintiffs*

Case 2:15-md-02641-DGC Document 16931 Filed 04/22/19 Page 8 of 8

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of April 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/ Jessica Gallentine*

# EXHIBIT 1

Private Bank                                                       

# Citi Preferred Custody Services

Agreement
Between
Citibank, N.A.
As "Escrow Agent"
and

Lopez McHugh LLP Plaintiffs' Counsel

(the "Designated Counsel")

(Account Number)

*Citibank Escrow Agent Custody Account*

THIS ESCROW AGREEMENT (the "Agreement") is made this [   ] day of January, 2019 between / among Lopez McHugh LLP, counsel for Plaintiffs ("**Designated Counsel**" herein) and CITIBANK, N.A. (the "**Escrow Agent**" herein).

Designated Counsel appoints said Escrow Agent with the duties and responsibilities and upon the terms and conditions provided in Schedule A annexed hereto and made apart hereof.

**ARTICLE FIRST:**  The above-named parties agree that the following provisions shall control with respect to the rights, duties, liabilities, privileges and immunities of the Escrow Agent:

a)    The Escrow Agent shall neither be responsible for or under, nor chargeable with knowledge of, the terms and conditions of any other agreement, instrument or document executed between/among the parties hereto, except as may be specifically provided in Schedule A annexed hereto.  This Agreement sets forth all of the obligations of the Escrow Agent, and no additional obligations shall be implied from the terms of this Agreement or any other agreement, instrument or document.

b)    The Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by it by Designated Counsel or counsel for C.R. Bard, Inc. or their respective authorized agents (provided that the Escrow Agent receives written notice from Designated Counsel and/or from counsel for C.R. Bard, Inc. that the person or entity is an authorized agent) without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order.  The Escrow Agent may act in reliance upon any signature believed by it to be genuine, and may assume that such person has been properly authorized to do so.  Concurrent with the execution of this Agreement, the authorized agents of the Designated Counsel and C.R. Bard, Inc. shall deliver to the Escrow Agent authorized signers' forms in the form of Exhibit C-1 and C-2 in Schedule A.[1]

c)    Designated Counsel agrees to reimburse the Escrow Agent on demand for, and to indemnify and hold the Escrow Agent harmless against and with respect to, any and all loss, liability, damage or expense (including, but without limitation, attorneys' fees, costs and disbursements) that the Escrow Agent may suffer or incur in connection with this Agreement and its performance hereunder or in connection herewith, except to the extent such loss, liability, damage or expense arises from its willful misconduct or gross negligence as adjudicated by the District of Arizona (the "MDL Court").The Escrow Agent shall have the right at any time and from time to time to charge, and reimburse itself from, the property held in escrow hereunder upon written approval from Designated Counsel or the MDL Court.  Anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for any special, indirect, punitive, incidental or consequential losses or damages of any kind whatsoever (including but not limited to lost profits) even if the Escrow Agent has been advised of the likelihood of such losses or damages and regardless of the form of action.

d)    The Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected in acting in

accordance with the opinion and instructions of such counsel. Designated Counsel agree to reimburse the Escrow Agent on demand for such legal fees, disbursements and expenses and in addition, the Escrow Agent shall have the right to reimburse itself for such fees, disbursements and expenses from the property held in escrow hereunder.

e)      The Escrow Agent shall be under no duty to give the property held in escrow by it hereunder any greater degree of care than it gives its own similar property.

f)      The Escrow Agent shall invest the property held in escrow in such a manner as directed in Schedule A annexed hereto, which may include deposits in Citibank and mutual funds advised, serviced or made available by Citibank or its affiliates even though Citibank or its affiliates may receive a benefit or profit therefrom. The Escrow Agent and any of its affiliates are authorized to act as counterparty, principal, agent, broker or dealer while purchasing or selling investments as specified herein. The Escrow Agent and its affiliates are authorized to receive, directly or indirectly, fees or other profits or benefits for each service, task or function performed, in addition to any fees as specified in Schedule B hereof, without any requirement for special accounting related thereto.

**The parties to this Agreement acknowledge that non-deposit investment products are not obligations of, or guaranteed by, Citibank/Citigroup nor any of its affiliates; are not FDIC insured; and are subject to investment risks, including the possible loss of principal amount invested. Only deposits in the United States are subject to FDIC insurance.**

g)      The Escrow Agent shall have no obligation to invest or reinvest the property held in escrow if all or a portion of such property is deposited with the Escrow Agent after 11:00 AM Eastern Time on the day of deposit. Instructions to invest or reinvest that are received after 11:00 AM Eastern Time will be treated as if received on the following business day in New York. The Escrow Agent shall have the power to sell or liquidate the foregoing investments whenever the Escrow Agent shall be required to distribute amounts from the escrow property pursuant to the terms of this Agreement. Requests or instructions received after 11:00 AM Eastern Time by the Escrow Agent to liquidate all or any portion of the escrowed property will be treated as if received on the following business day in New York. The Escrow Agent shall have no responsibility for any investment losses resulting from the investment, reinvestment or liquidation of the escrowed property, as applicable, provided that the Escrow Agent has made such investment, reinvestment or liquidation of the escrowed property in accordance with the terms, and subject to the conditions of this Agreement.

h)      In the event of any disagreement between/among any of the parties to this agreement, or between/among them or either or any of them and any other person, resulting in adverse claims or demands being made in connection with the subject matter of the Escrow, or in the event that the Escrow Agent, in good faith, be in doubt as to what action it should take hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not become liable in any way or to any person for its failure or refusal to act, and the Escrow Agent shall be entitled to continue so to refrain from acting until (i) the rights of all parties shall have been fully and finally adjudicated by the MDL Court, or (ii) all differences shall have been adjusted and all doubt resolved by agreement among all of the interested persons, and the Escrow Agent shall have been notified thereof in writing signed by all

such persons.  The Escrow Agent shall have the option, after 30 calendar days' notice to the other parties of its intention to do so, to file an action in interpleader requiring the parties to answer and litigate any claims and rights among themselves.  The rights of the Escrow Agent under this paragraph are cumulative of all other rights which it may have by law or otherwise.

i)       The Escrow Agent is authorized, for any securities at any time held hereunder, to register such securities in the name of its nominee(s) or the nominees of any securities depository, and such nominee(s) may sign the name of any of the parties hereto to whom or to which such securities belong and guarantee such signature in order to transfer securities or certify ownership thereof to tax or other governmental authorities.

j)       For purposes of this Agreement, a "business day" shall mean a day (other than a Saturday, a Sunday or other public holiday) on which banks are open for general business in New York City.

k)       Notice to the parties shall be given as provided in Schedule A annexed hereto.

l)       The provisions of this Article First shall survive the termination or expiration of this Agreement or the removal or resignation of the Escrow Agent.

**ARTICLE SECOND:**  The Escrow Agent shall make payments of income earned on the escrowed property as provided in Schedule A annexed hereto.  Each such payee shall provide to the Escrow Agent an appropriate W-9 form for tax identification number certification or a W-8 form for non-resident alien certification.  The Escrow Agent shall be responsible only for income reporting to the Internal Revenue Service with respect to income earned on the escrowed property.

a)       Designated Counsel acknowledges that they are solely responsible for, and that neither Citibank nor any of its affiliates have any responsibility for, any party's compliance with any laws, regulations or rules applicable to the use of the services provided by Citibank under this Agreement, including, but not limited to, any laws, regulations or rules, in such party's jurisdiction or any other jurisdiction, relating to tax, foreign exchange and capital control, and for reporting or filing requirements that may apply as a result of such party's country of citizenship, domicile, residence or taxpaying status.

b)       Citigroup, Inc., its affiliates, and its employees are not in the business of providing tax or legal advice to any taxpayer outside of Citigroup, Inc. and its affiliates.  This Agreement and any amendments or attachments are not intended or written to be used, and cannot be used or relied upon, by any such taxpayer or for the purpose of avoiding tax penalties.  Any such taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

**ARTICLE THIRD:**  The Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 30 calendar days' written notice to the parties to the Escrow Agreement herein.  Any such resignation shall terminate all obligations and duties of the Escrow Agent hereunder. On the effective date of such resignation, the Escrow Agent shall deliver this Escrow Agreement together with any and all related instruments or documents to any successor Escrow Agent agreeable to the parties, subject to this Escrow Agreement herein.  If a successor Escrow Agent has not been appointed prior to the expiration of 30 calendar days following the date of the notice of such resignation, the then acting Escrow Agent may petition the MDL Court for the appointment of a successor Escrow Agent, or other appropriate relief.  Any such resulting appointment shall be binding upon all of the parties to this

Agreement.

**ARTICLE FOURTH:**  The Escrow Agent shall receive the fees provided in Schedule B annexed hereto. In the event that such fees are not paid to the Escrow Agent within 30 calendar days of presentment to the party responsible for such fees as set forth in said Schedule B, then the Escrow Agent may pay itself such fees from the property held in escrow hereunder.  Once fees have been paid, no recapture or rebate will be made by the Escrow Agent.  The provisions of this Article Fourth shall survive the termination or expiration of this Agreement or the removal or resignation of the Escrow Agent.

**ARTICLE FIFTH:**  Any modification of this Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto.

**ARTICLE SIXTH:**  In the event funds transfer instructions are given, whether in writing, by facsimile or otherwise, the Escrow Agent is authorized to seek confirmation of such instructions by telephone call back to the person or persons designated in Schedule A annexed hereto, and the Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated.  To assure accuracy of the instructions it receives, the Escrow Agent may record such call backs.  If the Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it will not execute the instruction until all issues have been resolved.  The persons and telephone numbers for call backs may be changed only in writing actually received and acknowledged by the Escrow Agent.  The parties agree to notify the Escrow Agent of any errors, delays or other problems within 30 calendar days after receiving notification that a transaction has been executed.  If it is determined that the transaction was delayed or erroneously executed as a result of the Escrow Agent's error, the Escrow Agent's sole obligation is to pay or refund such amounts as may be required by applicable law.  In no event shall the Escrow Agent be responsible for any incidental or consequential damages or expenses in connection with the instruction.  Any claim for interest payable will be at the Escrow Agent's published savings account rate in effect in New York, New York.

**ARTICLE SEVENTH:**  This Agreement shall be governed by the law of the State of New York in all respects.  The parties hereto irrevocably and unconditionally submit to the jurisdiction of the MDL Court in connection with any proceedings commenced regarding this Escrow Agreement, including but not limited to, any interpleader proceeding or proceeding for the appointment of a successor escrow agent the Escrow Agent may commence pursuant to this Agreement, and all parties irrevocably submit to the jurisdiction of such courts for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue of inconvenient forum.  The parties hereto hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

**ARTICLE EIGHTH:**  This Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Agreement.  Facsimile signatures on counterparts of this Agreement shall be deemed original signatures with all rights accruing thereto.

**ARTICLE NINTH:**  The Escrow Agent shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control (including, but not limited to, any provision of any present or future law or regulation or any act of any governmental authority, any act of God or war or terrorism, or the unavailability of the Federal Reserve Bank wire services or any electronic communication facility).

**ARTICLE TENTH:**  No printed or other material in any language, including prospectuses, notices, reports, and promotional material which mentions "Citibank" by name or the rights, powers, or duties of

the Escrow Agent under this Agreement shall be issued by any other parties hereto, or on such party's behalf, without the prior written consent of the Escrow Agent.

**ARTICLE ELEVENTH:**  To help the U.S. Government fight the funding of terrorism and money laundering activities and to comply with Federal law requiring financial institutions to obtain, verify and record information on the source of funds deposited to an account, the parties hereto agree to provide the Escrow Agent with the name, address, taxpayer identification number, and remitting bank for all parties depositing funds at Citibank pursuant to the terms and conditions of this Agreement.  For a non-individual person such as a business entity, a charity, a trust or other legal entity, the Escrow Agent will ask for documentation to verify its formation and existence as a legal entity.  The Escrow Agent may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

**ARTICLE TWELFTH**: In the event that any escrow property shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the property deposited under this Agreement, the Escrow Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and in the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the parties hereto or to any other person, by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

**ARTICLE THIRTHEENTH:** This Agreement (including the schedules hereto) constitutes the entire agreement among the parties hereto relating to the holding, investment and disbursement of the Escrowed Funds (as defined in Schedule A) and sets forth in their entirety the obligations and duties of Escrow Agent with respect to the escrowed property; provided, that, to the extent there exists a conflict between the terms and provisions of this Agreement and the MDL Common Benefit Order (as defined in Schedule A annexed hereto), (i) solely as between / among Designated Counsel and any other person or party, the terms and provisions of the MDL Common Benefit Order will control and (ii) to the extent governing the actions of the Escrow Agent, the terms and conditions of this Agreement shall control.

[The remainder of this page is intentionally blank.]

In witness whereof the parties have executed this Agreement as of the date first above written.

**CITIBANK, N.A.**
as Escrow Agent

**By:** _____
                          (Signature)

**Title:** _____

**Date:** _____


**DESIGNATED COUNSEL**

**By:** _____
                          (Signature)

**Title:** _____

**Date:** _____

**SEC Shareholder Disclosure Rule 14b-2:**  SEC Rule 14b-2 directs us to contact you to request authorization to provide your name, address and share position with respect to the referenced account to requesting companies whose stock you have voting authority over.  Under the Rule, we *must* make the disclosures for accounts opened after December 28, 1986, if requested, *unless* you specifically object to disclosure.  Hence, failure to respond will be deemed consent to disclosure.  Thank you for assisting us in complying with this SEC rule.

☐  Yes, we are authorized to release your name, address and share positions.
☐  No, we are not authorized to release your name, address and share positions.

_____        _____
*(Signature)*                                                                         *(Date)*

Reference Account No.: _____

*2018 Version 1.0*

*Citi Private Bank is a business of Citigroup Inc. ("Citigroup"), which provides its clients access to a broad array of products and services available through bank and non-bank affiliates of Citigroup.  Not all products and services are provided by all affiliates or are available at all locations.*

*Citigroup Inc. and its affiliates do not provide tax or legal advice. To the extent that this material or any attachment concerns tax matters, it is not intended to be used and cannot be used by a taxpayer for the purpose of avoiding penalties that may be imposed by law. Any such taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.*

*Custody Services are provided by Citibank N.A.*

*© 2018 Citigroup Inc. All Rights Reserved. Citi, Citi and Arc Design and other marks used herein are service marks of Citigroup Inc.*

*or its affiliates, used and registered throughout the world.*

*Citibank, N.A. Member FDIC*



Citi **Private Bank**

# Important information about opening a new account at Citi Private Bank:

To help the United States Government fight terrorism and money laundering, Federal law requires financial institutions to obtain, verify, and record information that identifies each individual, business or entity that opens an account or establishes a relationship.  What this means for you:

For individuals — when you open an account or establish a relationship, we will ask for your:

- name,
- date of birth,
- residential street address, and
- identification number, such as a social security number, taxpayer identification number, national identification number or passport number.

For businesses and other entities, such as corporations, trusts, etc. — when you open an account or establish a relationship, we will ask for your:

- official name,
- principal place of business or local business street address, and
- taxpayer identification number or other registration number.

For individuals, we may also ask to see (and retain a copy of) your driver's license, passport or other identifying documents that will help us identify you.  For businesses or entities, we may also ask for a copy of your formation documents or other related documentation.  If we have difficulty verifying an accountholder's identity, we may not be able to open an account or establish a relationship, or we may have to block or close the account.

Thank you for your cooperation.

## Schedule A

This "**Schedule A**" is the Schedule A referred to in that certain Escrow Agreement dated [_____], 2019 (the Escrow Agreement, including this schedule and any other schedules and/or exhibits attached hereto, all of the terms and conditions of which are incorporated herein by reference, in each case as amended and/or supplemented from time to time in accordance with the terms hereof, the "**Escrow Agreement**") by **Lopez McHugh LLP,** Plaintiffs' Counsel (the "**Designated Counsel**") and **Citibank, N.A.** (the "**Escrow Agent**").

**WHEREAS**, on [_____], 2019, the Court presiding over the federal Multidistrict litigation styled *In re: Bard IVC Filters Products Liability Litigation*, Judge David G. Campbell, MDL No. 2641 (the "MDL Court") entered "Order Establishing Common Benefit Funds" (the "MDL Common Benefit Order"), a copy of which is attached hereto as **Exhibit A**;

**WHEREAS**, the MDL Common Benefit Order authorizes and directs Plaintiffs' Co-Lead Counsel, including Designated Counsel, to establish two interest bearing bank accounts, the "Bard IVC Filters Fee Fund" and "Bard IVC Filters Expense Fund" (collectively, "Common Benefit Funds"); and

**WHEREAS**, in the MDL Common Benefit Order, the MDL Court authorized Citibank, N.A. to serve as a third party escrow agent to administer and maintain the Common Benefit Funds, the parties hereto agree to the terms and conditions of this Escrow Agreement as provided herein.

## I.   Description of Transaction

Consistent with the terms of the MDL Common Benefit Order approving this Escrow Agreement, the parties hereto hereby appoint Citibank, N.A. as the escrow agent for the Escrowed Funds (as hereinafter defined) and direct Citibank, N.A., as the escrow agent, to open and maintain two separate escrow accounts (the "**Escrow Accounts**" and individually, an **"Escrow Account"**), upon the terms and conditions set forth in this Escrow Agreement.  Citibank, N.A. hereby accepts such appointment as the escrow agent for the Escrowed Funds and agrees to open and maintain the Escrow Accounts and to act as the escrow agent for the Escrowed Funds, upon the terms and conditions set forth in this Escrow Agreement.  The title of the Escrow Accounts shall be the "**Bard IVC Filters Fee Fund**" and the "**Bard IVC Filters Expense Fund**."

Upon execution of this Escrow Agreement, all claims subject to the MDL Common Benefit Order (the "Covered Claims") where plaintiff or plaintiff's counsel agree or have agreed to settle, compromise, dismiss, or reduce the amount of a Covered Claim or, with or without trial, recover a judgment for monetary damages or other monetary relief, are subject to an fourteen percent (14%) assessment of the gross

1

*Citi Private Bank – Schedule A*

1695455.1

monetary recovery, nine percent (9%) of  which is to be paid into the Bard IVC Filters Fee Fund and five percent (5%) of which is to be paid into the Bard IVC Filters Expense Fund (collectively, the "**Assessment Amount**").   The amount of all deposits in the Escrow Account, and any interest, net realized gains or other earnings accrued on such deposits, minus any distributions therefrom hereunder are collectively referred to as the "**Escrowed Funds.**"  The Escrow Agent shall have no duty to solicit the delivery of any property into the Escrow Account.

In accordance with the preceding paragraph, Greenberg Traurig, LLP (the "Defendants' Counsel") is directed to withhold the Assessment Amount from any amounts paid to plaintiffs on any Covered Claims, and to pay the assessment directly into the Escrow Accounts as a credit against the settlement or judgment.   Such assessment payment(s) may be made in periodic lump sums of no  more than thirty (30) days apart for multiple cases that have settled and have been funded in accordance with the terms of various settlement agreements.

Defendants' Counsel shall deliver at least monthly notice to the Escrow Agent of all settlements or judgments related to Covered Claims, including the name of the plaintiff(s), the docket number or case name for which assessment payments have been made, and the corresponding Assessment Amount due to be deposited to the Escrow Accounts for each plaintiff (collectively, the "**Assessment Payment Schedule**").

As each Assessment Amount is deposited to the Escrow Accounts in accordance with the preceding paragraph, should the Assessment Amount received by the Escrow Agent not match the amount stated on the Assessment Payment Schedule for any plaintiff, the Escrow Agent shall promptly notify Defendants' Counsel.

**Other than as provided in Section VII herein, the Escrow Agent will not disclose any of the information contained on the Assessment Payment Schedule other than to the Defendants.**

The Escrow Agent is not a party to any other provisions, covenants or agreements as may exist between the parties subject to the MDL Common Benefit Order and shall not distribute or release the Escrowed Funds except in accordance with the express terms and conditions of this Escrow Agreement.

## II.   Investment Instructions

Unless otherwise instructed in writing by Designated Counsel, the Escrow Agent shall invest and reinvest the Escrowed Funds in the Citibank Money Market Deposit Account ("**MDA**"), a money market deposit account of Citibank, N.A., insured by the Federal Deposit Insurance Corporation ("**FDIC**") to the applicable limits for interest bearing deposits.   The Escrowed Funds shall at all times remain available for distribution as may be instructed in writing as provided herein.

2

## III.    Disbursement Instructions

The Escrow Agent shall retain the Escrowed Funds in the Escrow Account until it is presented with a court order from the MDL Court.  Such court order shall be provided to the Escrow Agent by Designated Counsel along with appropriate disbursement instructions (a "**Disbursement Authorization Notice**") signed by Designated Counsel.  Each Disbursement Authorization Notice will direct the Escrow Agent to make a payment as required by the court order issued and will contain the specific dollar amount to be disbursed along with appropriate wire transfer instructions for the recipient of the funds.  Upon receipt of a Disbursement Authorization Notice, the Escrow Agent shall disburse the amount of the Escrowed Funds specified in such notice by wire transfer of immediately available funds as directed in such notice.  There may be more than one Disbursement Authorization Notice issued.

## IV.    Tax Information

Designated Counsel shall be responsible for and the taxpayer on all taxes due on the interest or income earned on the Escrowed Funds, if any, for the calendar year in which such interest or income is earned.  A W-9 for each of the Designated Counsel shall be provided to the Escrow Agent upon execution of this Escrow Agreement.

## V.    Termination of the Escrow Account

This Escrow Agreement, the duties of the Escrow Agent and the Escrow Account shall automatically terminate upon the payment in full by the Escrow Agent of the Escrowed Funds as directed herein, following a court order from the MDL Court relieving the Escrow Agent of its duties and obligations under the MDL Common Benefit Order.

## VI.    Notices

Any notice or other communication required or permitted to be delivered to any party under this Escrow Agreement shall be in writing and shall be deemed properly delivered, given and received when delivered (by hand, by registered mail, by courier or express delivery service or by facsimile) to the address or facsimile telephone number set forth beneath the name of such party below (or to such other address or facsimile telephone number as such party shall have specified in a written notice given to the other parties):

If to Plaintiffs' Designated
Counsel:

|  | Name: | Lopez McHugh LLP |
|---|---|---|
|  | Address: | 100 Bayview Circle, Suite 5600 |
|  |  | Newport Beach, CA 92660 |

3

*Citi Private Bank – Schedule A*

1695455.1

<pre>
                    Attn:   Ramon Lopez

              Telephone:   (949) 737-1501

              Facsimile:   (949) 737-1504


    If to the Defendants:
                    Name:

                  Address:



                    Attn:

              Telephone:
              Facsimile:


    If to the Escrow Agent:
                    Name:   Citibank, N.A.
                  Address:   Citi Private Bank
                             388 Greenwich Street, 29th Floor
                             New York, NY 10013

                    Attn:   John P. Howard

              Telephone:   (212) 783-7109

              Facsimile:   (212) 783-7131
</pre>

## VII.    <u>Account Statements and Advices</u>

Unless instructed otherwise in writing by the Defendants, the Escrow Agent shall prepare monthly account statements for the Escrow Accounts and deliver such statements **ONLY** to the Defendants as listed in the "Notices" section herein.  The Defendants **ONLY** shall also receive advices for all transactions in the Escrow Account as any such transactions occur.

Separately and apart from the account statements and advices provided to the Defendants in accordance with the preceding paragraph, at the end of every calendar quarter during which Escrowed Funds are held in the Escrow Accounts, the Escrow

*Citi Private Bank – Schedule A*

1695455.1

Agent shall deliver a statement to Designated Counsel at the address set forth in Section VI of this Schedule A which provides only the **total** balance of the Escrowed Funds on deposit in each Escrow Account at the end of each calendar quarter.  For the sake of clarity, the statement provided pursuant to this paragraph will not include any individual transactions or transaction activity.

## VIII.  Authorized Persons of Designated Counsel

The Escrow Agent shall be authorized to take instructions from Ramon Lopez on behalf of Designated Counsel with respect to the Escrowed Funds.  The above person(s) shall also be the designated callback authorized individuals of Designated Counsel, to be notified by the Escrow Agent upon the release of all or a portion of the Escrowed Funds from the Escrow Account.

## IX.  Certificate of Incumbency

A Certificate of Incumbency for Designated Counsel shall be provided to the Escrow Agent upon execution of this Escrow Agreement in the form of Exhibit C-1 and Exhibit C-2 attached hereto.

## X.  Fee Information

Designated Counsel shall be responsible for and agree to promptly pay the Escrow Agent, upon request from the Escrow Agent, Escrow Agent's compensation as set forth on Schedule B for its services as escrow agent hereunder, and to reimburse the Escrow Agent for all costs and expenses in connection with the performance of its duties and obligations hereunder, including reasonable attorneys' fees incurred by the Escrow Agent.

## XI.  Amendment to or Modification of Escrow Agreement

This Escrow Agreement shall not be amended or modified without providing advance written notice of the proposed amendment or modification to the Defendants and the Escrow Agent and obtaining the Defendants' and the Escrow Agent's written consent.  Any proposed amendment or modification that is made without the Defendants' or Escrow Agent's written consent shall be invalid.  Any transfer or assignment of the rights, interests or obligations hereunder in violation of the terms hereof shall be void and of no force or effect.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation | No. 2:15-MD-02641-DGC **[PROPOSED] ORDER ESTABLISHING COMMON BENEFIT FUNDS** (Assigned to the Honorable David G. Campbell) |

Case Management Order No. 6 ("CMO No. 6") stated, "At an appropriate time, Plaintiffs' Co-Lead counsel shall ask the Court to direct that two interest-bearing accounts be established to receive and disburse funds as provided in this Order… The first fund shall be designated the 'Bard IVC Filters Fee Fund' and the second fund shall be designated the 'Bard IVC Filters Expense Fund.'" CMO No. 6 also stated that "the Court will appoint a qualified certified public accountant (the "CPA") to serve as escrow agent over the Funds and to keep detailed records of all deposits and withdrawals and to prepare tax returns and other tax filings in connection with the Funds. Such subsequent Order shall specify the hourly rates to be charged by the CPA and for the CPA's assistants, who shall be utilized where appropriate to control costs. The CPA shall submit quarterly detailed bills to the Court and to Plaintiffs' Co-Lead Counsel."

Plaintiffs have now moved for an order establishing the two funds to receive and disburse funds for the purposes and pursuant to the limitations instructions set out in CMO No. 6. Plaintiffs have also moved to amend CMO No. 6 to allow for the appointment as escrow agent not of a CPA, but of Citibank N.A. ("Citibank"), a bank which regularly serves in the capacity of

1  an escrow agent, to serve as escrow agent for the Bard IVC Filters Fee Fund and Bard IVC Filters

2  Expense Fund.  Further, although CMO No. 6 contemplated a subsequent order that specified

3  hourly rates for the CPA, Plaintiffs propose that the escrow agent's fees will be as set forth in

4  Schedule B to the Escrow Agreement to be entered into with Citibank.  Such fees would be paid

5  from the Bard IVC Filters Expense Fund and considered a shared cost, as CMO No. 6 states.

6  Plaintiffs' Co-Lead Counsel would be responsible for arranging for the preparation of tax filings

7  related to each account.

8       The Court approves Plaintiffs' proposal, and hereby appoints Citibank to serve as Escrow

9  Agent, to perform the duties as described in CMO No. 6, and approves the fees as set forth in

10  Schedule B to the Escrow Agreement.  The Court hereby amends CMO No. 6 so that, in Section

11  IV(A), references to "the CPA" are replaced by the term "Escrow Agent."   Also as requested,

12  Plaintiffs' Co-Lead Counsel will be responsible for arranging for the preparation of tax filings

13  related to each account.

14       Finally, the Court approves the Plaintiffs' Steering Committee's request to amend CMO 6

15  to provide for an increase in the assessments for common benefit attorneys' fees and costs, from a

16  total of eight percent (six percent for fees and two percent for costs) to a total of fourteen percent

17  (nine percent for fees and five percent for costs).

18       DATED this _____ day of _____, 20_____.

19

20

21                                        _____

22                                        David G. Campbell
                                          United States District Judge

23

24

25

26

27

28

[PROPOSED] ORDER CONCERNING
ESTABLISHINGCOMMON BENEFIT FUNDS
CASE NO.  2:16-CV-01374-DGC