Ramon Rossi Lopez - rlopez@lopezmchugh.com
(California Bar Number 86361; admitted *pro hac vice*)
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, California  92660
949-812-5771

Mark S. O'Connor (011029) – moconnor@beusgilbert.com
BEUS GILBERT, PLLC
701 N.44th St.
Phoenix AZ 85008
480-429-3019
*Co-Lead/Liaison Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC <br><br> **PLAINTIFFS' TRIAL BRIEF ON ALLOCATION OF FAULT OF DR. HALLER** <br><br> (Assigned to the Honorable David G. Campbell) |
| This Document Relates to: <br><br> *Debra Tinlin, et al. v. C. R. Bard, Inc., et al.* <br> CV-16-00263-PHX-DGC | |

Pursuant to the Court's request during the pretrial hearing in the *Tinlin* matter on April 29, 2019, Plaintiffs respectfully submit this supplemental briefing on application of the *Selleck* rule as to Dr. Roger Haller, because Mrs. Tinlin was originally injured before Dr. Haller read her CT scan.

Dr. Haller is the radiologist who reviewed Mrs. Tinlin's CT scan during a course of treatment unrelated to her Recovery filter, which was implanted in Mrs. Tinlin three years prior on May 7, 2005. In April 2008, Dr. Haller reviewed the CT scan specifically for lung-related issues, only, and did not identify fractured struts that had embolized to Mrs. Tinlin's heart. Five years later, on June 10, 2013, Mrs. Tinlin experienced cardiogenic shock and multi-organ failure. At that time, Mrs. Tinlin's medical team discovered her Recovery filter had fractured, and two struts had embolized to her right ventricle. On July 31, 2013, Mrs. Tinlin underwent open heart surgery to remove a fractured strut. Other pieces of her Recovery filter remain in her upper and lower lungs.

Bard argues Dr. Haller committed malpractice in April 2008 by failing to see and/or identify the fractured struts in Mrs. Tinlin's heart. *See* Defendants' Trial Brief on Third Party Fault, Dkt. 16946 at 5-6. However, Bard has not specified how Dr. Haller's alleged negligence actually caused or contributed to Mrs. Tinlin's injuries, though even if it had, such negligence evidence would be irrelevant. Under Wisconsin law, Mrs. Tinlin suffered an injury as a matter of law when her filter fractured and struts migrated to her heart and lungs, thus, Bard is not entitled to allocation of fault of Dr. Haller under the *Selleck* rule.

Under the *Selleck* rule, defendants are liable for "damages for injuries aggravated by subsequent mistaken medical treatment … [a]ssuming that the plaintiff exercised good faith and due care in the selection of [her] treating physician." *Fouse v. Persons*, 259 N.W.2d 92, 94-95 (1977). Where there are separate injuries, or where an original injury is aggravated, as in the malpractice context, "there are separate torts rather than joint liability," and apportionment is ***improper***. *Johnson v. Heintz*, 243 N.W.2d 815, 826 (Wis. 1976) (specifically distinguishing between two tortfeasors whose "actions concur in

time . . . to create an injury-producing situation," and where the actions of others "resulted in distinguishable separate injuries to the same subject.") (citing Prosser, *Law of Torts*, p. 317, sec. 52 (4th ed. 1971)).  Pursuant to Wisconsin law, for purposes of determining when an injury has occurred, courts look for "physical injurious change" to the patient's body.  *See Estate of Genrich v. Ohic Ins. Co.,* 769 N.W.2d 481, 487 (Wis. 2009)(injurious change triggered SOL on date sponge was left in patient; infection caused by sponge and surgery to remove it "inflicted an *additional* injury"). An injurious change occurs "when the [negligent act or omission] causes a greater harm than [that which] existed at the time of the [negligent act or omission]." *Id.* In fact *Genrich* made clear, an injury may be asymptomatic, but "once a claimant has sustained an injury and has an enforceable claim, that claimant cannot sit on that claim until all consequential damages have come to fruition." *See id.*

  Wisconsin Supreme Court precedent thus establishes that the presence of a foreign body is an injury, and Bard's contention that Mrs. Tinlin was not injured is incorrect as a matter of law. Mrs. Tinlin experienced an injurious change at a point in time when her Recovery filter fractured and the struts embolized to her heart.  As of the time of this injurious change, Bard's defective Recovery filter was causing greater harm than had existed at the time Bard negligently caused her to receive the defective filter.  If Dr. Haller indeed failed to see the fractured filter struts in Mrs. Tinlin's heart in a CT scan, as Bard alleges, then Mrs. Tinlin already experienced an "injurious change" at the time of the fracture and embolization of the struts to her heart, which occurred prior to Dr. Haller's review.   As such, even if Dr. Haller negligently caused Mrs. Tinlin harm, leading to further complications, any such negligence would only have aggravated existing injuries.

  Bard unpersuasively argues that *Selleck* does not apply to Dr. Haller's alleged negligence because he could not have aggravated an existing injury that was "asymptomatic."  *See* Dkt. 16946 at 13.  On its face, it's a fallacy for Bard to claim Dr. Haller's alleged negligence did not aggravate an existing injury while also seeking to blame him for the later resulting complications and surgical intervention.  Regardless,

whether an injury is symptomatic is not determinative for when the injury occurs; rather, the test is whether the patient has experienced "injurious change." *See Estate of Genrich*, 769 N.W.2d at 487 (Wis. 2009) (finding that injury arises when the negligent act or omission causes a greater harm than that which existed at the time of the negligent act or omission).

Moreover, Bard is marginalizing the seriousness of Mrs. Tinlin's injuries at the applicable time. Even if Mrs. Tinlin was not then aware of the danger, Bard has long known that fractured filters, along with struts embolizing in patients' organs, are serious and hazardous adverse events associated with its IVC filters. In fact, Bard's own medical director, Dr. David Ciavarella, testified that the presence of a fractured strut confers risk of severe injury, so the fracture itself is an injury because it increases the risk of severe harm and death. *See* Exhibit A, *Hyde v. Bard* Trial Tr. (confirming "fragment then going into the heart, specifically . . . could have resulted in death had there not been urgent open heart surgery to effect a repair and remove the fragment.") Furthermore, fractured struts in the heart, even if asymptomatic, can cause fibrosis, like the sponge in *Genrich* that caused injury even before it caused the symptomatic infection.

To the extent that Dr. Haller was negligent in seeing or identifying fractured struts lodged in Mrs. Tinlin's heart in her CT scans, any further injuries Mrs. Tinlin experienced would only be aggravations of those existing injuries.  Additionally, Bard has not alleged that Mrs. Tinlin failed to exercise good faith and due care in selecting any of her treating physicians.  Pursuant to *Selleck*, any alleged negligence of Dr. Haller is irrelevant and Bard would ultimately be responsible for resulting damages aggravated by such negligence.  The jury should therefore not be permitted to allocate fault or damages to Dr. Haller.

- 3 -

RESPECTFULLY SUBMITTED this 1st day of May 2019.

BEUS GILBERT, PLLC.

By:*/s/ Mark S. O'Connor*

Mark S. O'Connor
BEUS GILBERT, PLLC
701 N.44th St.
Phoenix AZ 85008
480-429-3019

LOPEZ McHUGH LLP
Ramon Rossi Lopez (CA Bar No. 86361)
(admitted *pro hac vice*)
100 Bayview Circle, Suite 5600
Newport Beach, California 92660

*Co-Lead/Liaison Counsel for Plaintiffs*

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that on this 1st day of May 2019, I electronically transmitted the |
| 3 | attached document to the Clerk's Office using the CM/ECF System for filing and |
| 4 | transmittal of a Notice of Electronic Filing. |
| 5 | |
| 6 | /s/ Jessica Gallentine |