James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ  85004-2202
Telephone:  (602) 382-6000
Facsimile:  (602) 382-6070
jcondo@swlaw.com
kgallardo@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street, NW / Suite 1700
Atlanta, GA  30363
Telephone:  (404) 322-6000
Telephone:  (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. 2:15-MD-02641-DGC |
| | **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' TRIAL BRIEF ON ALLOCATION OF FAULT OF DR. HALLER** |
| This Document Relates to:<br><br>Debra Tinlin, et al. v. C. R. Bard, Inc., et al.<br>CV-16-00263-PHX-DGC | (Assigned to the Honorable David G. Campbell) |

Pursuant to the Court's April 30, 2019 Minute Entry Order (Doc. 17453), Bard submits its response to Plaintiffs' Trial Brief. For the reasons that follow, the Court should allow relevant evidence and argument concerning Dr. Haller's medical negligence:

***First,*** because the medical negligence of Dr. Haller preceded Plaintiffs' alleged injuries in this case—the pericardial effusion, resulting open heart surgery, and post-surgical complications—the *Selleck* rule does not apply.[1] *Cf. Hanson v. Am. Family Mut. Ins. Co.*, 716 N.W.2d 866 (Wis. 2006); Wis. JI-Civil 1710. Although the *Selleck* doctrine does not define what constitutes an "injury" for purposes of the rule, in this products liability case, under Wisconsin law, Mrs. Tinlin was not injured until June 2013, because it was not until then that she had an objective basis for her injury. *See S.J.D. v. Mentor Corp.*, 463 N.W.2d 873, 877 (Wis. Ct. App. 1990) (products liability action involving medical device accrued when physician inspected device during surgery and found that it had fractured into pieces providing the plaintiff with the objective basis for his injury).[2]

***Second,*** because Dr. Haller was not engaged to treat Mrs. Tinlin for this alleged original injury—asymptomatic fractured struts—the *Selleck* rule simply does not apply. Under Wisconsin law, "when a tortfeasor causes an injury to another person who then undergoes unnecessary medical treatment *of those injuries* despite having exercised ordinary care in selecting her doctor, the tortfeasor is responsible for all of that person's damages arising from any mistaken or unnecessary surgery." (Doc. 17285 at 3 (quoting *Hanson*, 716 N.W.2d at 871) (emphasis added).) The *Selleck* rule makes clear that the

---

[1] The *Selleck* rule governs a defendants' ultimate liability for damages, not the admissibility of evidence or testimony concerning related medical negligence. *Cf.* Wis. JI-Civil 1710 (citing *Selleck* to support the jury instruction on the calculation of damages for an injury aggravated by subsequent medical negligence). None of the cases cited by Plaintiffs hold otherwise, nor support the exclusion of this evidence at the pretrial stage.

[2] Bard does not dispute that, for purposes of the medical malpractice statute of limitations, Mrs. Tinlin suffered a "physical injurious change" at the time her filter fractured and struts embolized to her heart. *Estate of Genrich v. OHIC Ins. Co.*, 769 N.W.2d 481, 487 (Wis. 2009) ("physical injurious change" is the "benchmark for establishing the date of 'injury' under [medical malpractice statute of limitations]"); *Doe 56 v. Mayo Clinic Health Sys.--Eau Claire Clinic, Inc.*, 880 N.W.2d 681, 687 (Wis. 2016) ("physical injurious change" is test for medical malpractice claims under medical malpractice statute). But Plaintiffs cite no authority, and Bard has found none, using this standard when applying the *Selleck* rule in a products liability case.

"plaintiff is not held responsible for the errors or mistakes of a physician or surgeon in *treating an injury received by a defect*[,] providing she exercises ordinary care in procuring the services of such physician." (*Id.* (quoting *Selleck v. City of Janesville*, 75 N.W. 975, 976 (Wis. 1898) (emphasis added).) Indeed, in applying the *Selleck* rule to the facts of this case, this Court found it critical that Bard did "not dispute that the surgeries performed by Drs. Roitstein and Kress *were undertaken to treat injuries Ms. Tinlin sustained from the Recovery arm fragment in her heart.*" (*Id.* at 4 (emphasis added).)[3]

Yet Plaintiffs admit that Mrs. Tinlin was referred to Dr. Haller "to get a CT scan performed on her lungs due to asthma and an enlarged thymus," (Doc. 17357 at 2), "during a course of treatment unrelated to her Recovery Filter." (Doc. 17492 at 2.) Plaintiffs make clear that the "CT scan was ordered as a review of Mrs. Tinlin's lungs, not her IVC filter." (Doc. 17357 at 6.) In fact, Plaintiffs contend that this explains Dr. Haller's failure to identify the struts in her heart: he "would not have been looking for abnormalities related to the IVC filter." (*Id.*) He "reviewed the CT scan specifically for lung-related issues, only." (Doc. 17492 at 2.) Bard could find no case applying *Selleck* in a situation where, as here, the plaintiff underwent medical treatment for an <u>unrelated</u> medical issue that contributed to her later injuries. Thus, *Selleck* does not apply.

***Third,*** even if the Court finds that the *Selleck* rule applies, Dr. Haller's medical negligence is highly relevant to the jury's determination of causation and should not be excluded at this pretrial stage. As this Court recognized, "Plaintiff has the burden of proof as to her claimed injuries," and "Defendants 'may attempt to weaken the claim of injuries with medical proof which is couched in terms of possibilities.'" (Doc. 17401 at 3 (citation omitted). Indeed, under Wisconsin law, Bard has the "right to suggest alternative casual possibilities" even with "possibility testimony . . . offered in direct testimony by defense experts." *Woody v Mercy Medical Center of Oshkosh*, No. 07CV678, 2010 WL 6620187 (Wis. Cir. Ct. Oct. 25, 2010) (denying the plaintiff's motions *in limine*).

---

[3] Unlike with Drs. Rotstein and Kress, the jury can apportion fault to Dr. Haller because Bard has expert opinion testimony on breach of the standard of care and the causal connection to Plaintiffs' injury. *Zintek v. Perchik*, 471 N.W.2d 522 (Wis. Ct. App. 1991).

At trial, "Plaintiff will claim that the filter's defective design caused her injuries." (Doc. 17401 at 3.) Just as with Dr. Riebe, Bard should be able to respond with testimony from its experts, as well as from Plaintiffs' experts, that her injuries possibly were caused by Dr. Haller's failure to identify the fractured struts five years earlier. (*Cf.* Doc. 17401 at 3.) This is true even if the Court ultimately finds at the close of evidence that *Selleck* applies, and if Plaintiffs request at that time that the jury be instructed that the amount of damages "should not be decreased because of the doctor's negligence." Wis. JI-Civil 1710; *E.g.*, *Lievrouw v. Roth*, 459 N.W.2d 850, 859 (Wis. Ct. App. 1990) (defendants' expert not barred from testifying that part of the plaintiff's injuries were caused by his treating physicians, not the accident; but jury instructed, at the plaintiff's request, not to reduce damages pursuant to Wis. JI-Civil 1710); *see also Fouse v. Persons*, 259 N.W.2d 92, 95 (1977) (defendants' experts not barred from testifying that the plaintiff's disability resulted from his treating physicians, not the accident; but finding that the plaintiff could have requested a Wis. JI-Civil 1710 instruction).[4]

***Finally,*** even if applicable, the *Selleck* rule would be applied only *after* the jury determines that the injuries sustained and surgeries incurred as a result were caused by Bard. *E.g.*, *Hach v. Am. Family Mut. Ins. Co.*, 779 N.W.2d 723 (Wis. Ct. App. 2010) (emphasis added) (discussing *Hanson*: "The plaintiff was entitled to all of her past medical expenses *only after* the *Selleck* rule was applied to the jury's findings" that the treatment was causally related to the accident); *Paddock v. United States*, No. 16-CV-947, 2018 WL 3696618, at *3 (E.D. Wis. Aug. 3, 2018) ("*Hanson* does not relieve a plaintiff of the need to prove that the injuries sustained (and thus the medical expenses incurred as a result) were caused by the accident at issue."). The jury still must determine whether Plaintiffs' alleged injuries (including the fractured struts) were caused by Bard or by Dr. Riebe. Therefore, it is premature to apply the *Selleck* rule at this pretrial stage.

---

[4] *Cf. Hanson*, 716 N.W.2d at 876-77 (finding curative instruction appropriate where the defendants' expert testimony left the impression that part of the plaintiff's injuries were caused by the physician, not the accident; but holding trial court's modified version of Wis. JI-Civil 1710 was "erroneous" and "unnecessary" where it included commentary on the alleged malpractice and the causal relationship of the surgery to the accident).

RESPECTFULLY SUBMITTED this 3rd day of May, 2019.

s/Richard B. North, Jr.
Richard B. North, Jr.
Georgia Bar No. 545599
Matthew B. Lerner
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA 30363
PH: (404) 322-6000
FX: (404) 322-6050
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204
PH: (602) 382-6000
jcondo@swlaw.com
kgallardo@swlaw.com

**Attorneys for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.**