# Exhibit A

Private Bank



# Citi Preferred Custody Services

Agreement
Between
Citibank, N.A.
As "Escrow Agent"
and

Lopez McHugh LLP Plaintiffs' Counsel

(the "Designated Counsel")

_____

(Account Number)

*Citibank Escrow Agent Custody Account*

THIS ESCROW AGREEMENT (the "Agreement") is made this [   ] day of January, 2019 between / among Lopez McHugh LLP, counsel for Plaintiffs ("**Designated Counsel**" herein) and CITIBANK, N.A. (the "**Escrow Agent**" herein).

Designated Counsel appoints said Escrow Agent with the duties and responsibilities and upon the terms and conditions provided in Schedule A annexed hereto and made apart hereof.

**ARTICLE FIRST:** The above-named parties agree that the following provisions shall control with respect to the rights, duties, liabilities, privileges and immunities of the Escrow Agent:

a) The Escrow Agent shall neither be responsible for or under, nor chargeable with knowledge of, the terms and conditions of any other agreement, instrument or document executed between/among the parties hereto, except as may be specifically provided in Schedule A annexed hereto. This Agreement sets forth all of the obligations of the Escrow Agent, and no additional obligations shall be implied from the terms of this Agreement or any other agreement, instrument or document.

b) The Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by it by Designated Counsel or counsel for C.R. Bard, Inc. or their respective authorized agents (provided that the Escrow Agent receives written notice from Designated Counsel and/or from counsel for C.R. Bard, Inc. that the person or entity is an authorized agent) without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order. The Escrow Agent may act in reliance upon any signature believed by it to be genuine, and may assume that such person has been properly authorized to do so. Concurrent with the execution of this Agreement, the authorized agents of the Designated Counsel and C.R. Bard, Inc. shall deliver to the Escrow Agent authorized signers' forms in the form of Exhibit C-1 and C-2 in Schedule A.[1]

c) Designated Counsel agrees to reimburse the Escrow Agent on demand for, and to indemnify and hold the Escrow Agent harmless against and with respect to, any and all loss, liability, damage or expense (including, but without limitation, attorneys' fees, costs and disbursements) that the Escrow Agent may suffer or incur in connection with this Agreement and its performance hereunder or in connection herewith, except to the extent such loss, liability, damage or expense arises from its willful misconduct or gross negligence as adjudicated by the District of Arizona (the "MDL Court").The Escrow Agent shall have the right at any time and from time to time to charge, and reimburse itself from, the property held in escrow hereunder upon written approval from Designated Counsel or the MDL Court. Anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for any special, indirect, punitive, incidental or consequential losses or damages of any kind whatsoever (including but not limited to lost profits) even if the Escrow Agent has been advised of the likelihood of such losses or damages and regardless of the form of action.

d) The Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected in acting in

accordance with the opinion and instructions of such counsel.  Designated Counsel agree to reimburse the Escrow Agent on demand for such legal fees, disbursements and expenses and in addition, the Escrow Agent shall have the right to reimburse itself for such fees, disbursements and expenses from the property held in escrow hereunder.

e)      The Escrow Agent shall be under no duty to give the property held in escrow by it hereunder any greater degree of care than it gives its own similar property.

f)      The Escrow Agent shall invest the property held in escrow in such a manner as directed in Schedule A annexed hereto, which may include deposits in Citibank and mutual funds advised, serviced or made available by Citibank or its affiliates even though Citibank or its affiliates may receive a benefit or profit therefrom.  The Escrow Agent and any of its affiliates are authorized to act as counterparty, principal, agent, broker or dealer while purchasing or selling investments as specified herein.  The Escrow Agent and its affiliates are authorized to receive, directly or indirectly, fees or other profits or benefits for each service, task or function performed, in addition to any fees as specified in Schedule B hereof, without any requirement for special accounting related thereto.

**The parties to this Agreement acknowledge that non-deposit investment products are not obligations of, or guaranteed by, Citibank/Citigroup nor any of its affiliates; are not FDIC insured; and are subject to investment risks, including the possible loss of principal amount invested.  Only deposits in the United States are subject to FDIC insurance.**

g)      The Escrow Agent shall have no obligation to invest or reinvest the property held in escrow if all or a portion of such property is deposited with the Escrow Agent after 11:00 AM Eastern Time on the day of deposit.  Instructions to invest or reinvest that are received after 11:00 AM Eastern Time will be treated as if received on the following business day in New York.  The Escrow Agent shall have the power to sell or liquidate the foregoing investments whenever the Escrow Agent shall be required to distribute amounts from the escrow property pursuant to the terms of this Agreement.  Requests or instructions received after 11:00 AM Eastern Time by the Escrow Agent to liquidate all or any portion of the escrowed property will be treated as if received on the following business day in New York.  The Escrow Agent shall have no responsibility for any investment losses resulting from the investment, reinvestment or liquidation of the escrowed property, as applicable, provided that the Escrow Agent has made such investment, reinvestment or liquidation of the escrowed property in accordance with the terms, and subject to the conditions of this Agreement.

h)      In the event of any disagreement between/among any of the parties to this agreement, or between/among them or either or any of them and any other person, resulting in adverse claims or demands being made in connection with the subject matter of the Escrow, or in the event that the Escrow Agent, in good faith, be in doubt as to what action it should take hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not become liable in any way or to any person for its failure or refusal to act, and the Escrow Agent shall be entitled to continue so to refrain from acting until (i) the rights of all parties shall have been fully and finally adjudicated by the MDL Court, or (ii) all differences shall have been adjusted and all doubt resolved by agreement among all of the interested persons, and the Escrow Agent shall have been notified thereof in writing signed by all

such persons.  The Escrow Agent shall have the option, after 30 calendar days' notice to the other parties of its intention to do so, to file an action in interpleader requiring the parties to answer and litigate any claims and rights among themselves.  The rights of the Escrow Agent under this paragraph are cumulative of all other rights which it may have by law or otherwise.

i)    The Escrow Agent is authorized, for any securities at any time held hereunder, to register such securities in the name of its nominee(s) or the nominees of any securities depository, and such nominee(s) may sign the name of any of the parties hereto to whom or to which such securities belong and guarantee such signature in order to transfer securities or certify ownership thereof to tax or other governmental authorities.

j)    For purposes of this Agreement, a "business day" shall mean a day (other than a Saturday, a Sunday or other public holiday) on which banks are open for general business in New York City.

k)    Notice to the parties shall be given as provided in Schedule A annexed hereto.

l)    The provisions of this Article First shall survive the termination or expiration of this Agreement or the removal or resignation of the Escrow Agent.

**ARTICLE SECOND:**  The Escrow Agent shall make payments of income earned on the escrowed property as provided in Schedule A annexed hereto.  Each such payee shall provide to the Escrow Agent an appropriate W-9 form for tax identification number certification or a W-8 form for non-resident alien certification.  The Escrow Agent shall be responsible only for income reporting to the Internal Revenue Service with respect to income earned on the escrowed property.

a)    Designated Counsel acknowledges that they are solely responsible for, and that neither Citibank nor any of its affiliates have any responsibility for, any party's compliance with any laws, regulations or rules applicable to the use of the services provided by Citibank under this Agreement, including, but not limited to, any laws, regulations or rules, in such party's jurisdiction or any other jurisdiction, relating to tax, foreign exchange and capital control, and for reporting or filing requirements that may apply as a result of such party's country of citizenship, domicile, residence or taxpaying status.

b)    Citigroup, Inc., its affiliates, and its employees are not in the business of providing tax or legal advice to any taxpayer outside of Citigroup, Inc. and its affiliates.  This Agreement and any amendments or attachments are not intended or written to be used, and cannot be used or relied upon, by any such taxpayer or for the purpose of avoiding tax penalties.  Any such taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

**ARTICLE THIRD:**  The Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 30 calendar days' written notice to the parties to the Escrow Agreement herein.  Any such resignation shall terminate all obligations and duties of the Escrow Agent hereunder. On the effective date of such resignation, the Escrow Agent shall deliver this Escrow Agreement together with any and all related instruments or documents to any successor Escrow Agent agreeable to the parties, subject to this Escrow Agreement herein.  If a successor Escrow Agent has not been appointed prior to the expiration of 30 calendar days following the date of the notice of such resignation, the then acting Escrow Agent may petition the MDL Court for the appointment of a successor Escrow Agent, or other appropriate relief.  Any such resulting appointment shall be binding upon all of the parties to this

Agreement.

**ARTICLE FOURTH:**  The Escrow Agent shall receive the fees provided in Schedule B annexed hereto. In the event that such fees are not paid to the Escrow Agent within 30 calendar days of presentment to the party responsible for such fees as set forth in said Schedule B, then the Escrow Agent may pay itself such fees from the property held in escrow hereunder.  Once fees have been paid, no recapture or rebate will be made by the Escrow Agent.  The provisions of this Article Fourth shall survive the termination or expiration of this Agreement or the removal or resignation of the Escrow Agent.

**ARTICLE FIFTH:**  Any modification of this Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto.

**ARTICLE SIXTH:**  In the event funds transfer instructions are given, whether in writing, by facsimile or otherwise, the Escrow Agent is authorized to seek confirmation of such instructions by telephone call back to the person or persons designated in Schedule A annexed hereto, and the Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated.  To assure accuracy of the instructions it receives, the Escrow Agent may record such call backs.  If the Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it will not execute the instruction until all issues have been resolved.  The persons and telephone numbers for call backs may be changed only in writing actually received and acknowledged by the Escrow Agent.  The parties agree to notify the Escrow Agent of any errors, delays or other problems within 30 calendar days after receiving notification that a transaction has been executed.  If it is determined that the transaction was delayed or erroneously executed as a result of the Escrow Agent's error, the Escrow Agent's sole obligation is to pay or refund such amounts as may be required by applicable law.  In no event shall the Escrow Agent be responsible for any incidental or consequential damages or expenses in connection with the instruction.  Any claim for interest payable will be at the Escrow Agent's published savings account rate in effect in New York, New York.

**ARTICLE SEVENTH:**  This Agreement shall be governed by the law of the State of New York in all respects.  The parties hereto irrevocably and unconditionally submit to the jurisdiction of the MDL Court in connection with any proceedings commenced regarding this Escrow Agreement, including but not limited to, any interpleader proceeding or proceeding for the appointment of a successor escrow agent the Escrow Agent may commence pursuant to this Agreement, and all parties irrevocably submit to the jurisdiction of such courts for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue of inconvenient forum.  The parties hereto hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

**ARTICLE EIGHTH:**  This Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Agreement.  Facsimile signatures on counterparts of this Agreement shall be deemed original signatures with all rights accruing thereto.

**ARTICLE NINTH:**  The Escrow Agent shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control (including, but not limited to, any provision of any present or future law or regulation or any act of any governmental authority, any act of God or war or terrorism, or the unavailability of the Federal Reserve Bank wire services or any electronic communication facility).

**ARTICLE TENTH:**  No printed or other material in any language, including prospectuses, notices, reports, and promotional material which mentions "Citibank" by name or the rights, powers, or duties of

the Escrow Agent under this Agreement shall be issued by any other parties hereto, or on such party's behalf, without the prior written consent of the Escrow Agent.

**ARTICLE ELEVENTH:**  To help the U.S. Government fight the funding of terrorism and money laundering activities and to comply with Federal law requiring financial institutions to obtain, verify and record information on the source of funds deposited to an account, the parties hereto agree to provide the Escrow Agent with the name, address, taxpayer identification number, and remitting bank for all parties depositing funds at Citibank pursuant to the terms and conditions of this Agreement.  For a non-individual person such as a business entity, a charity, a trust or other legal entity, the Escrow Agent will ask for documentation to verify its formation and existence as a legal entity.  The Escrow Agent may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

**ARTICLE TWELFTH**: In the event that any escrow property shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the property deposited under this Agreement, the Escrow Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and in the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the parties hereto or to any other person, by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

**ARTICLE THIRTHEENTH:** This Agreement (including the schedules hereto) constitutes the entire agreement among the parties hereto relating to the holding, investment and disbursement of the Escrowed Funds (as defined in Schedule A) and sets forth in their entirety the obligations and duties of Escrow Agent with respect to the escrowed property; provided, that, to the extent there exists a conflict between the terms and provisions of this Agreement and the MDL Common Benefit Order (as defined in Schedule A annexed hereto), (i) solely as between / among Designated Counsel and any other person or party, the terms and provisions of the MDL Common Benefit Order will control and (ii) to the extent governing the actions of the Escrow Agent, the terms and conditions of this Agreement shall control.

[The remainder of this page is intentionally blank.]

In witness whereof the parties have executed this Agreement as of the date first above written.

**CITIBANK, N.A.**
as Escrow Agent

**By:** _____
(Signature)

**Title:** _____

**Date:** _____


**DESIGNATED COUNSEL**

**By:** _____
(Signature)

**Title:** _____

**Date:** _____

**SEC Shareholder Disclosure Rule 14b-2:**  SEC Rule 14b-2 directs us to contact you to request authorization to provide your name, address and share position with respect to the referenced account to requesting companies whose stock you have voting authority over.  Under the Rule, we _must_ make the disclosures for accounts opened after December 28, 1986, if requested, _unless_ you specifically object to disclosure.  Hence, failure to respond will be deemed consent to disclosure.  Thank you for assisting us in complying with this SEC rule.


☐   Yes, we are authorized to release your name, address and share positions.
☐   No, we are not authorized to release your name, address and share positions.

_____          _____
_(Signature)_                                                    _(Date)_

Reference Account No.: _____

_2018 Version 1.0_

_Citi Private Bank is a business of Citigroup Inc. ("Citigroup"), which provides its clients access to a broad array of products and services available through bank and non-bank affiliates of Citigroup.  Not all products and services are provided by all affiliates or are available at all locations._

_Citigroup Inc. and its affiliates do not provide tax or legal advice. To the extent that this material or any attachment concerns tax matters, it is not intended to be used and cannot be used by a taxpayer for the purpose of avoiding penalties that may be imposed by law. Any such taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor._

_Custody Services are provided by Citibank N.A._

_©2018 Citigroup Inc. All Rights Reserved. Citi, Citi and Arc Design and other marks used herein are service marks of Citigroup Inc._

_or its affiliates, used and registered throughout the world._

_Citibank, N.A. Member FDIC_



Citi **Private Bank**

# Important information about opening a new account at Citi Private Bank:

To help the United States Government fight terrorism and money laundering, Federal law requires financial institutions to obtain, verify, and record information that identifies each individual, business or entity that opens an account or establishes a relationship.  What this means for you:

For individuals — when you open an account or establish a relationship, we will ask for your:

- name,
- date of birth,
- residential street address, and
- identification number, such as a social security number, taxpayer identification number, national identification number or passport number.

For businesses and other entities, such as corporations, trusts, etc. — when you open an account or establish a relationship, we will ask for your:

- official name,
- principal place of business or local business street address, and
- taxpayer identification number or other registration number.

For individuals, we may also ask to see (and retain a copy of) your driver's license, passport or other identifying documents that will help us identify you.  For businesses or entities, we may also ask for a copy of your formation documents or other related documentation.  If we have difficulty verifying an accountholder's identity, we may not be able to open an account or establish a relationship, or we may have to block or close the account.

Thank you for your cooperation.

## Schedule A

This "**Schedule A**" is the Schedule A referred to in that certain Escrow Agreement dated [_____], 2019 (the Escrow Agreement, including this schedule and any other schedules and/or exhibits attached hereto, all of the terms and conditions of which are incorporated herein by reference, in each case as amended and/or supplemented from time to time in accordance with the terms hereof, the "**Escrow Agreement**") by **Lopez McHugh LLP,** Plaintiffs' Counsel (the "**Designated Counsel**") and **Citibank, N.A.** (the "**Escrow Agent**").

WHEREAS, on [_____], 2019, the Court presiding over the federal Multidistrict litigation styled *In re: Bard IVC Filters Products Liability Litigation*, Judge David G. Campbell, MDL No. 2641 (the "MDL Court") entered "Order Establishing Common Benefit Funds" (the "MDL Common Benefit Order"), a copy of which is attached hereto as **Exhibit A**;

WHEREAS, the MDL Common Benefit Order authorizes and directs Plaintiffs' Co-Lead Counsel, including Designated Counsel, to establish two interest bearing bank accounts, the "Bard IVC Filters Fee Fund" and "Bard IVC Filters Expense Fund" (collectively, "Common Benefit Funds"); and

WHEREAS, in the MDL Common Benefit Order, the MDL Court authorized Citibank, N.A. to serve as a third party escrow agent to administer and maintain the Common Benefit Funds, the parties hereto agree to the terms and conditions of this Escrow Agreement as provided herein.

## I.      Description of Transaction

Consistent with the terms of the MDL Common Benefit Order approving this Escrow Agreement, the parties hereto hereby appoint Citibank, N.A. as the escrow agent for the Escrowed Funds (as hereinafter defined) and direct Citibank, N.A., as the escrow agent, to open and maintain two separate escrow accounts (the "**Escrow Accounts**" and individually, an **"Escrow Account"**), upon the terms and conditions set forth in this Escrow Agreement.  Citibank, N.A. hereby accepts such appointment as the escrow agent for the Escrowed Funds and agrees to open and maintain the Escrow Accounts and to act as the escrow agent for the Escrowed Funds, upon the terms and conditions set forth in this Escrow Agreement.  The title of the Escrow Accounts shall be the "**Bard IVC Filters Fee Fund**" and the "**Bard IVC Filters Expense Fund**."

Upon execution of this Escrow Agreement, all claims subject to the MDL Common Benefit Order (the "Covered Claims") where plaintiff or plaintiff's counsel agree or have agreed to settle, compromise, dismiss, or reduce the amount of a Covered Claim or, with or without trial, recover a judgment for monetary damages or other monetary relief, are subject to an fourteen percent (14%) assessment of the gross

1

monetary recovery, nine percent (9%) of  which is to be paid into the Bard IVC Filters Fee Fund and five percent (5%) of which is to be paid into the Bard IVC Filters Expense Fund (collectively, the "**Assessment Amount**").   The amount of all deposits in the Escrow Account, and any interest, net realized gains or other earnings accrued on such deposits, minus any distributions therefrom hereunder are collectively referred to as the "**Escrowed Funds.**"  The Escrow Agent shall have no duty to solicit the delivery of any property into the Escrow Account.

In accordance with the preceding paragraph, Greenberg Traurig, LLP (the "Defendants' Counsel") is directed to withhold the Assessment Amount from any amounts paid to plaintiffs on any Covered Claims, and to pay the assessment directly into the Escrow Accounts as a credit against the settlement or judgment.   Such assessment payment(s) may be made in periodic lump sums of no  more than thirty (30) days apart for multiple cases that have settled and have been funded in accordance with the terms of various settlement agreements.

Defendants' Counsel shall deliver at least monthly notice to the Escrow Agent of all settlements or judgments related to Covered Claims, including the name of the plaintiff(s), the docket number or case name for which assessment payments have been made, and the corresponding Assessment Amount due to be deposited to the Escrow Accounts for each plaintiff (collectively, the "**Assessment Payment Schedule**").

As each Assessment Amount is deposited to the Escrow Accounts in accordance with the preceding paragraph, should the Assessment Amount received by the Escrow Agent not match the amount stated on the Assessment Payment Schedule for any plaintiff, the Escrow Agent shall promptly notify Defendants' Counsel.

**Other than as provided in Section VII herein, the Escrow Agent will not disclose any of the information contained on the Assessment Payment Schedule other than to the Defendants.**

The Escrow Agent is not a party to any other provisions, covenants or agreements as may exist between the parties subject to the MDL Common Benefit Order and shall not distribute or release the Escrowed Funds except in accordance with the express terms and conditions of this Escrow Agreement.

## II.  Investment Instructions

Unless otherwise instructed in writing by Designated Counsel, the Escrow Agent shall invest and reinvest the Escrowed Funds in the Citibank Money Market Deposit Account ("**MDA**"), a money market deposit account of Citibank, N.A., insured by the Federal Deposit Insurance Corporation ("**FDIC**") to the applicable limits for interest bearing deposits.   The Escrowed Funds shall at all times remain available for distribution as may be instructed in writing as provided herein.

### III.     Disbursement Instructions

The Escrow Agent shall retain the Escrowed Funds in the Escrow Account until it is presented with a court order from the MDL Court.  Such court order shall be provided to the Escrow Agent by Designated Counsel along with appropriate disbursement instructions (a "**Disbursement Authorization Notice**") signed by Designated Counsel.  Each Disbursement Authorization Notice will direct the Escrow Agent to make a payment as required by the court order issued and will contain the specific dollar amount to be disbursed along with appropriate wire transfer instructions for the recipient of the funds.  Upon receipt of a Disbursement Authorization Notice, the Escrow Agent shall disburse the amount of the Escrowed Funds specified in such notice by wire transfer of immediately available funds as directed in such notice.  There may be more than one Disbursement Authorization Notice issued.

### IV.     Tax Information

Designated Counsel shall be responsible for and the taxpayer on all taxes due on the interest or income earned on the Escrowed Funds, if any, for the calendar year in which such interest or income is earned.  A W-9 for each of the Designated Counsel shall be provided to the Escrow Agent upon execution of this Escrow Agreement.

### V.     Termination of the Escrow Account

This Escrow Agreement, the duties of the Escrow Agent and the Escrow Account shall automatically terminate upon the payment in full by the Escrow Agent of the Escrowed Funds as directed herein, following a court order from the MDL Court relieving the Escrow Agent of its duties and obligations under the MDL Common Benefit Order.

### VI.     Notices

Any notice or other communication required or permitted to be delivered to any party under this Escrow Agreement shall be in writing and shall be deemed properly delivered, given and received when delivered (by hand, by registered mail, by courier or express delivery service or by facsimile) to the address or facsimile telephone number set forth beneath the name of such party below (or to such other address or facsimile telephone number as such party shall have specified in a written notice given to the other parties):

If to Plaintiffs' Designated
Counsel:

| | |
|---|---|
| Name: | Lopez McHugh LLP |
| Address: | 100 Bayview Circle, Suite 5600 |
| | Newport Beach, CA 92660 |

3

Attn:  Ramon Lopez

Telephone:  (949) 737-1501

Facsimile:  (949) 737-1504

If to the Defendants:

Name:

Address:

Attn:

Telephone:
Facsimile:

If to the Escrow Agent:

Name:    Citibank, N.A.
Address:  Citi Private Bank
388 Greenwich Street, 29th Floor
New York, NY 10013

Attn:    John P. Howard

Telephone:  (212) 783-7109

Facsimile:  (212) 783-7131

## VII.    <u>Account Statements and Advices</u>

Unless instructed otherwise in writing by the Defendants, the Escrow Agent shall prepare monthly account statements for the Escrow Accounts and deliver such statements **ONLY** to the Defendants as listed in the "Notices" section herein.  The Defendants **ONLY** shall also receive advices for all transactions in the Escrow Account as any such transactions occur.

Separately and apart from the account statements and advices provided to the Defendants in accordance with the preceding paragraph, at the end of every calendar quarter during which Escrowed Funds are held in the Escrow Accounts, the Escrow

4

Agent shall deliver a statement to Designated Counsel at the address set forth in Section VI of this Schedule A which provides only the **total** balance of the Escrowed Funds on deposit in each Escrow Account at the end of each calendar quarter. For the sake of clarity, the statement provided pursuant to this paragraph will not include any individual transactions or transaction activity.

## VIII. Authorized Persons of Designated Counsel

The Escrow Agent shall be authorized to take instructions from Ramon Lopez on behalf of Designated Counsel with respect to the Escrowed Funds. The above person(s) shall also be the designated callback authorized individuals of Designated Counsel, to be notified by the Escrow Agent upon the release of all or a portion of the Escrowed Funds from the Escrow Account.

## IX. Certificate of Incumbency

A Certificate of Incumbency for Designated Counsel shall be provided to the Escrow Agent upon execution of this Escrow Agreement in the form of Exhibit C-1 and Exhibit C-2 attached hereto.

## X. Fee Information

Designated Counsel shall be responsible for and agree to promptly pay the Escrow Agent, upon request from the Escrow Agent, Escrow Agent's compensation as set forth on Schedule B for its services as escrow agent hereunder, and to reimburse the Escrow Agent for all costs and expenses in connection with the performance of its duties and obligations hereunder, including reasonable attorneys' fees incurred by the Escrow Agent.

## XI. Amendment to or Modification of Escrow Agreement

This Escrow Agreement shall not be amended or modified without providing advance written notice of the proposed amendment or modification to the Defendants and the Escrow Agent and obtaining the Defendants' and the Escrow Agent's written consent. Any proposed amendment or modification that is made without the Defendants' or Escrow Agent's written consent shall be invalid. Any transfer or assignment of the rights, interests or obligations hereunder in violation of the terms hereof shall be void and of no force or effect.

**Schedule B**

**ESCROW AGENT FEE SCHEDULE**

**Bard Common Benefit Escrow Account**
**Citibank, N.A., Escrow Agent**

**Acceptance Fee**
To cover the acceptance of the Escrow Agency appointment, the study of the Escrow Agreement, and supporting documents submitted in connection with the execution and delivery thereof, and communication with other members of the working group:

> **WAIVED**

**Administration Fee**
To cover maintenance of the Escrow Account including safekeeping of assets, normal administrative functions of the Escrow Agent, including maintenance of the Escrow Agent's records, follow-up of the Escrow Agreement's provisions, and any other duties required by the Escrow Agent under the terms of the Escrow Agreement:

> **$5,000.00, one-time fee**

**1099 Tax Preparation Fee**
To cover preparation of Form 1099 for each calendar year:

> **WAIVED**

**Transaction Fees**
To cover all checks, wire transfers, postage and overnight delivery charges incurred by the Escrow Agent as required under the terms and conditions of the Escrow Agreement:

> **WAIVED**

**Legal Fees**

> **At cost, if applicable.**

**Other Fees**

> **$2,500** per amendment, when necessary

**Date Submitted**: December 18, 2018

**TERMS AND CONDITIONS**: The above schedule of fees does not include charges for out-of-pocket expenses or for any services of an extraordinary nature that we or our legal counsel may be called upon from time to time to perform in either an agency or fiduciary capacity, nor does it include the fees of our legal counsel. Fees are also subject to satisfactory review of the documentation, and we reserve the right to modify them should the characteristics of the transaction change. Our participation in this program is subject to internal approval of the third party depositing monies into the escrow account. The Acceptance Fee, if any, is payable upon execution of the documents. Should this schedule of fees be accepted and agreed upon and work commenced on this program but subsequently halted and the program is not brought to market, the Acceptance Fee and legal fees incurred, if any, will still be payable in full. This Fee Schedule is offered for, and applicable to the program cited above **only**, and is guaranteed for thirty calendar days from the date on this proposal. After thirty calendar days, this offer can be extended in writing only by an authorized representative of Citibank, N.A.