# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: DEPUY ORTHOPAEDICS, INC., PINNACLE HIP IMPLANT PRODUCTS LIABILITY LITIGATION | § § § § § | MDL Docket No.<br><br>3:11-MD-2244-K |
| ------------------------------------------------------<br>This Document Relates to All Cases<br>------------------------------------------------------ | § § § § | |

### AMENDED PRELIMINARY HOLDBACK ORDER

Before the Court is Plaintiffs' Executive Committee's (PEC) Motion to Modify the Preliminary Holdback Order and for an Assessment on Settling Cases along with Supporting Brief (Doc. 913) ("PEC's Motion to Modify"). The PEC requests the Court increase the ten percent holdback percentage established in its August 29, 2018 Preliminary Holdback Order (Doc. 889) and order an assessment of common benefit funds.

The Court has considered the PEC's Motion to Modify, Defendants' Response thereto (Doc. 915), the PEC's Reply (Doc. 918), and the Parties' subsequent communications with and disclosures to the Special Master. The Court has also received multiple requests to establish a briefing schedule to permit settling plaintiffs and other interested parties an opportunity to be heard regarding modification of the holdback percentage.

1

A. The Court has Broad Common Benefit Holdback Authority

The Court can create a holdback from potential settlement payments or judgments that must be paid by Defendants through its inherent authority to establish common benefit funds, assess parties and their counsel, and appropriate and distribute those funds. *See In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006 (5th Cir. 1977). A common benefit fund is designed to compensate attorneys for the costs incurred and work performed for the common benefit of all plaintiffs and their counsel. *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 647 (E.D. La. 2010). The primary theory supporting such funds is the common benefit doctrine, which holds that persons who obtain the benefits of a lawsuit without contributing to defraying its costs are unjustly enriched at the successful litigant's expense. *See id.* The Court appointed the members of the PEC, and those attorneys have an affirmative obligation to take on expenses and perform work on behalf of all plaintiffs in this MDL.

Typically, courts addressing common benefit holdback and assessment issues have the benefit of a known "master" or "global" settlement agreement amount or class action settlement. There is no master settlement agreement in this case; in fact, until late November 2018, Defendants repeatedly informed the Court that every case in the MDL was defensible and settlement was not being considered. Beginning on November 21, 2018, the Defendants began informing the Court that at least 3,000 of the over 10,000 cases pending in this MDL were subject to confidential inventory settlements with select plaintiff attorneys. Notwithstanding the imminent nature of

2

payments in potentially thousands of cases and acknowledging that tens of millions of dollars of common-benefit fees and expenses are potentially in controversy, the Defendants have informed the Court that they are unable to calculate the amount subject to the Court's August 29, 2018, Preliminary Holdback Order for approximately four months. The Defendants also inform the Court that settlement proceeds will be distributed as early as December 10, 2018, and have contacted the District Clerk to make arrangements to deposit funds into the Court's registry. Unlike cases in which the ultimate settlement or judgment value is known, Defendants' domino confidential settlements have left the Court without necessary information about the total or projected value of settlement, let alone the amount of holdback funds that will be deposited in the Court's registry.

Despite the extensive motion practice and briefing in this case on the issue of common benefit holdback and the Court seeking information from the Defendants, the Court has incomplete information about the PEC's common benefit fees and expenses as they relate to plaintiffs' ultimate recoveries. The Defendants did not provide the information about the gross holdback funds that would be deposited pursuant to the over 3,000 cases where settlement agreements are being negotiated as requested in the Court's November 29, 2018, Order. Because the information was not provided, the Court cannot accurately determine the ratio of the PEC's common benefit fees and expenses to the plaintiffs' recoveries—recoveries aided by common benefit resources from the PEC—without Defendants' cooperation and disclosure of

3

gross settlement or holdback values for the proposed settlements. The Court must therefore, in an abundance of caution, exercise its managerial power to establish an equitable common benefit fund and ensure the attorneys working for the plaintiffs' common benefit are adequately compensated for their contributions and reimbursed for the appropriate expenses that contributed to the plaintiffs' successes. *See In re Air Crash Disaster*, 549 F.2d at 1013-14 (citing FED. R. CIV. P. 42(a) and emphasizing the strength and necessity of the trial court's managerial power in multidistrict litigation); *id.* at 1020 (acknowledging that although the trial court could not determine the exact percentage that should be contributed to a common fund without a liability finding, the interest of justice required such a fund be established so the court could make a just distribution when it had adequate information to do so). And as in this case, "[t]he need for a court to exercise its managerial powers . . . may take precedence over the desires of counsel." *Id.* at 1014.

**B. The Common Benefit Holdback is not an Assessment, and an Assessment is Premature**

In its Motion to Modify, the PEC appears to conflate the common benefit stages of holdback and assessment. The common benefit holdback in the Court's Preliminary Holdback Order and this Amended Preliminary Holdback Order are set-asides, not levies. *In re Zyprexa*, 467 F. Supp. 2d 256, 266 (E.D.N.Y. 2006). The Court is not assessing—i.e., distributing—common benefit funds now. And although the PEC has specifically requested an assessment of common benefit fees, this request is premature. To assess common benefit fees, the Court must "set and conduct a hearing in the full

4

sense of the word." *In re Air Crash Disaster*, 549 F.2d at 1021. The PEC—as well as other "Participating Counsel"—must offer relevant evidence regarding their fees and expenses and be available for cross-examination. *Id.*; *see also* Order Regarding Management of Timekeeping, Cost Reimbursement and Related Common Benefit Issues ("CMO 7") (Doc. 153). The Court will then consider the contribution of time, skill, and costs advanced by all counsel acting on behalf of the plaintiffs and distribute an assessment, if any, accordingly. *Id.* at 1020. This process requires time for evidentiary hearings, briefing, and input from the parties, and it cannot be completed on the "expedited" schedule the PEC requests.

### C. Changed Circumstances Require Adjustment of the Common Benefit Holdback Percentage

On August 29, 2018, the Court entered its Preliminary Holdback Order (Doc. 889), ordering Defendants and their counsel to hold back 10 percent of the gross value of any settlement or judgment in a case that has been or is included in this MDL for the common benefit fund pending the determination of a common benefit assessment, if any. *Id.* Of the holdback, 70 percent was to be allocated to common benefit attorneys' fees, and 30 percent was to be allocated for common benefit costs. *Id.* At that time, the Court found 10 percent to be conservative and appropriate. *Id.*

Soon thereafter, the Court began receiving notifications from Defendants that numerous cases were settling. On November 26, 2018, the Special Master conducted a telephonic hearing to address the adequacy of the preliminary holdback percentage due to the unknown amount of the recent settlements, the terms of which Defendants

5

contend are protected by mutual confidentiality provisions. Following the hearing, the PEC submitted its Motion to Modify (Doc. 913), formally requesting the Court to reconsider the percentages set in the Preliminary Holdback Order.

The Court issued the Preliminary Holdback Order when Defendants informed the Court that all cases pending in the MDL were defensible, settlement was not an option, and without the benefit of the common-benefit fees and expenses being sought by the PEC. Subsequently, Defendants notified the Court that several thousand cases involving Pinnacle hips, the vast majority of which are before the Court in this MDL, may soon be settled. Between November 21 and 28, 2018, Defendants notified the Court nearly 3000 cases had been settled or were in the process of settlement.

On November 29, 2018, in light of Plaintiffs' Motion to Modify and the sheer number of cases identified in Defendants' November settlement notifications, the Court ordered Defendants to provide the following by November 30, 2018: (1) the gross amount that would be placed in the registry of the Court for the 2965 cases identified in the November 21, 23, 26, 27, and 28, 2018 submissions if the cases were settled on the terms proposed by the plaintiffs; and (2) the earliest possible date that any settlement proceeds would be distributed to a plaintiff or plaintiff's attorney for each of the 2965 cases identified in the November 21, 23, 26, 26, and 28, 2018 submissions if the cases were settled on the terms proposed to the plaintiffs. (Doc. 914).

Defendants responded to the Court's Order on November 30, 2018, indicating the gross value of holdback funds is unknown and cannot be known for several months, and there is no planned timeline for distribution of settlement proceeds other than notifying the Court that settlement funds could begin being distributed as early as December 10, 2018. Defendants notified the Court of additional settlements on November 29 and December 3 and 4, 2018. Now, approximately 3300 cases have settled or are in the process of settling.

As the Court recognized in its Preliminary Holdback Order, this MDL has entailed and required extensive motion practice, discovery, depositions, bellwether trials, document productions, post-verdict motions and briefing, and appeals. The Court recognizes that through the entirety of this litigation, all plaintiffs have benefitted and continue to benefit from the efforts and expense of the PEC. But because of mutual confidentiality provisions in Defendants' agreements with the settling plaintiffs, neither the PEC nor the Court know the gross value of settlement.

During the Special Master's November 26, 2018 telephonic hearing regarding common benefit issues, Defendants stated they did not object to the PEC submitting information pertaining to common benefit attorneys' fees and expenses to the Court for *in camera* review. The PEC has since submitted *in camera* its approximation of the common benefit attorneys' fees and expenses it has incurred in this case. The Court will consider the reasonableness and necessity of the PEC's and other plaintiffs' attorneys' common benefit fees and expenses, as well as the appropriateness of any

7

lodestar adjustment, at the time of assessment. Nevertheless, given the substantial time and expense the PEC has devoted to this litigation, the Court seeks to ensure the common benefit fund will allow for equitable sharing of fees and expenses for counsel who have acted for the common benefit of all plaintiffs. The PEC's costs and fees are significant. Without knowing Defendants' gross settlement amount or projected contribution to the common benefit fund, principles of equity require a temporary upward adjustment of the current holdback percentage pending the Court receiving additional briefing from the parties and scrutinizing the information provided by the PEC regarding the common-benefit fees and expenses being sought in this MDL. The Court has received the Special Master's filing of the *in camera* submissions from the parties (Doc. No. 923).

**D. In an Exercise of Prudence, the Common Benefit Holdback is Increased to 25 Percent**

The Court will not overextend its authority and interfere with the confidentiality of the parties' settlement negotiations or agreements. But Defendants refuse to shed any light on the projected amount subject to the common benefit holdback for thousands of cases, and thousands of cases involved in this MDL appear to be in various stages of settlement. With no guidance from Defendants, the Court finds Plaintiffs' Motion to Modify has merit, and it has reconsidered the percentage of common benefit holdback.

In an exercise of prudence, the Court orders the percentage of preliminary common benefit holdback be increased to 25 percent. Of the holdback, 18.5 percent

8

of the gross settlement or judgment value shall be held back for common benefit attorneys' fees, and 6.5 percent of the gross value shall be held back for costs expended for the common benefit of plaintiffs.

The Court once again notes that the holdback is preliminary in nature and may be subject to change based on additional information provided by the PEC, Defendants, and other counsel, as well the Court's monitoring of the gross balance of the common benefit fund in the its registry. The Court increases the holdback percentage at this time to ensure it does not unfairly assess fees and expenses against plaintiffs who may resolve their cases with the Defendants at a later date.

**E. Necessity for Briefing Schedule to Evaluate the Temporary Holdback Percentage**

The Court anticipates this Order will not be the final adjustment to the holdback percentage and will consider the additional evidence and briefing provided by settling plaintiffs and all interested parties before promptly making the appropriate adjustments based on complete information. The Court further acknowledges that given the expedited nature of the PEC's Motion to Modify, little time has been afforded for other plaintiffs' counsel to object to or comment to that Motion. The Court has received numerous requests to file briefing from settling plaintiffs and other interested parties. The Court will afford all counsel an opportunity to object to, comment on, and offer evidence related to the temporary holdback percentage by filing any briefing by December 17, 2018. The Defendants are ORDERED to notify all settling plaintiffs through their counsel by providing a copy of this Order.

9

The Court further ORDERS the Defendants and their counsel shall hold back 25 percent of the gross value of any settlement or judgment in a case that has been or is included in this MDL for the common benefit fund pending the determination of a common benefit assessment, if any. Of the holdback, 18.5 percent of the gross value shall be held back for common benefit attorneys' fees, and 6.5 percent of the gross value shall be held back for costs expended for the common benefit of plaintiffs.

Further, it is ORDERED that the Defendants shall deposit all holdback funds in an interest-bearing common benefit fund in the registry of the Court. The money in the Common Benefit Fund shall not be distributed unless the Court makes a common benefit assessment by separate order.

Further, it is ORDERED that Defendants shall provide monthly statements *in camera* to the Special Master showing the aggregate of the amount that has been deposited in the Court's registry pursuant to this Order. Defendants' first statement is due by December 15, 2018. Details of any individual settlement agreements or individual settlement agreement amounts subject to confidentiality provisions shall not be disclosed to the Court or the Special Master.

Finally, it is ORDERED that Defendants shall abide by this Order for cases in this MDL that are remanded from this Court to a state court or transferred to other federal judicial districts pursuant to 28 U.S.C. § 1407(a).

**SO ORDERED.**

Signed December 9th, 2018.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE