**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX-DGC <br> **ORDER** |

The Plaintiffs Steering Committee ("PSC") moves to modify Case Management Order No. 6 ("CMO 6 ") to increase the common benefit assessments. Doc. 16932 at 3-6. Defendants and counsel for many individual plaintiffs oppose the proposed increases. Docs. 17367, 17387-17404, 17433, 17555. A hearing was held on May 29, 2019. Doc. 17966. For reasons stated below, the Court will grant the motion in part and deny it in part.

**I.    CMO 6 – Common Benefit Funds and Assessments.**

CMO 6 was issued early in this MDL to provide for the fair and equitable sharing among plaintiffs and their counsel of the burden of litigating this complex case. Doc. 372 at 1. CMO 6 provides that compensable common benefit work includes meetings and conference calls, court appearances, discovery, document review, expert retention and development, legal research, motion practice, bellwether cases and trials, settlement efforts, and all other work that advances this litigation to conclusion. *Id.* at 1-2, 7-8. The time spent performing common benefit work must be authorized by Plaintiffs' Co-Lead Counsel and recorded accurately and contemporaneously. *Id.* at 8-9.

1 | CMO 6 provides for the establishment of two interest-bearing accounts to receive and disburse common benefit funds: the "Bard IVC Filters Fee Fund" and the "Bard IVC Filters Expense Fund." *Id.* at 9. The Court has granted the PSC's request to establish these accounts and has appointed Citibank, N.A., as escrow agent. *See* Docs. 17777, 16932 at 2-3. The accounts will be funded through assessments on the gross monetary recoveries received by plaintiffs and their counsel in this MDL. *Id.* at 9. The current total assessment amount is 8%, which includes 6% for attorneys' fees and 2% for expenses. *Id.* at 10.

**II.     The PSC's Motion to Increase the Assessment Percentages.**

The PSC proposes to increase the attorneys' fees assessment to 9% and the expense assessment to 5%. Doc. 16932 at 3. The PSC contends that the duration, scope, size, and cost of this litigation have outstripped the PSC's expectations when it proposed the initial assessment percentages. *Id.* The PSC further contends that the current percentages are conservative and MDL courts routinely approve increases as litigation develops. *Id.* at 4-5.

**A.     The Litigation's Duration and Scope.**

Given that Bard had been litigating IVC filter cases for years when the MDL was formed in late 2015, the PSC asserts that "trials stretching into 2019 seemed unlikely." *Id.* at 4. The Court cannot conclude that bellwether trials were unforeseeable when CMO 6 was entered. Such trials are commonplace in mass tort MDLs and were discussed at the first case management conference. *See* Doc. 174 at 25-26.

The PSC estimated, however, that all bellwether trials would conclude by April 2017. *Id.* at 25. The final bellwether trial ultimately was scheduled for May 2019 – more than two years later than the PSC expected. Moreover, the parties did not complete all common discovery and file dispositive motions until late 2017, nearly a year longer than the PSC expected. *Id.* at 24-25. Although the overall duration of this litigation is not long for a mass tort MDL, the PSC's initial expectation that the litigation would end sooner was not unreasonable.

The common benefit work has included millions of pages of document review, substantial ESI discovery, dozens of depositions, many experts and Daubert challenges,

multiple summary judgment motions, numerous motions in limine, three three-week bellwether trials, post-trial motions and appeals, and substantial settlement efforts. Defendants' preemption motion involved more discovery and was more complex than the PSC anticipated. Several trial preservation depositions will yet be taken, and the PSC has agreed to prepare trial packets for lawyers whose cases are remanded or transferred.

The PSC states that while it was prepared for protracted litigation, it did not fully anticipate the scope of this MDL when it proposed the initial assessment percentages. Doc. 17687 at 3. The Court finds there was significant unanticipated common benefit work that justifies an increase in the attorneys' fees assessment percentage. The Court will increase the attorneys' fees assessment from 6% to 8%. The Court will not grant the requested increase to 9% because the Court does not agree with the PSC's argument that this case will include a significant amount of future work by the PSC. During oral argument, Mr. Lopez noted that some transferor courts may allow the parties to take updated depositions of Bard or other witnesses and that members of the PSC may be asked to consult with lawyers who try cases in transferor courts. Even if true, the Court does not view these as responsibilities of the PSC that should be charged to the common benefit.

The Court notes that the 8% assessment for attorneys' fees represents a holdback, not a determination of the final amount to be disbursed out of the common benefit fee fund. *See* Doc. 372 at 10.

**B.     Reliance on the Current Assessment Percentages.**

In February 2019, the parties informed the Court that a large number of cases had settled in principle and many others were near settlement. *See* Doc. 15176, 15629. Nearly 2,000 of the cases settled in principle by execution of a settlement term sheet have been brought by the law firms of Freese & Goss and Matthews & Associates. Doc. 17367 at 1. Counsel from these settling law firms and Defendants have represented that another 2,000 or so cases are near settlement. The settling law firms argue that they relied on the 6% attorneys' fees assessment in negotiating the settlements, and that it would be unfair to increase the assessment at this late date. Docs. 17367 at 2-3, 17404 at 2. Other law firms

with cases in this MDL have joined these arguments. Docs. 17367, 17387-17403, 17433, 17555.

The purpose of a common benefit fund is to ensure that attorneys who perform work that benefits all plaintiffs and their counsel are reasonably compensated. The PSC managed and litigated this complex litigation to a conclusion, obtained a $3.6 million jury verdict in the Booker case and a fair settlement in the Tinlin case, withstood Defendants' preemption challenge to the viability of every plaintiffs' claims, and amassed evidence and experts that benefit all plaintiffs and their counsel. The settling law firms do not challenge the quality of this work, nor do they dispute that the work benefitted them and their clients significantly.

The justifiable reliance argument of the settling law firms has persuasive force, but the Court concludes that simple fairness requires that these firms – which will benefit financially from the work of the PSC – pay reasonable compensation to the lawyers who secured the benefit. The Court also notes that the PSC's motion is based in part on uncertainty about settlement values because Defendants and the settling law firms have declined to disclose the terms of their settlement agreements, even to the PSC. In light of this uncertainty, the PSC believes that the current 6% assessment for attorneys' fees may not be sufficient to reasonably compensate the PSC for the tens of thousands of hours of common benefit work performed to date. *Id.* at 3-4. This is a legitimate concern. The Court has no information about the value of the settlements reached to date, and concludes that this is another reason to increase the attorneys' fee assessment to 8%.

The Court reaches a difference conclusion with respect to costs. The justifiable reliance argument is more compelling when applied to individual plaintiffs. Although the PSC initially argued that an increased assessment would not change the amounts individual plaintiffs would receive in any settlement (Doc. 17687 at 2), it acknowledged at the hearing that costs generally are born by clients and the proposed 3% increase would be paid directly by individual plaintiffs, including those who have already agreed on settlement terms with Defendants. The Court is more concerned about increasing the amount of costs to be borne

by individual plaintiffs (especially after they have reached a settlement in principle) than it is about requiring lawyers to pay their fair share of the work that secured settlements for their cases. The Court will not increase cost amounts for individual plaintiffs at this late date.

**IT IS ORDERED:** The PSC's motion to modify CMO 6 (Doc. 16932 at 3-6) is **granted in part and denied in part**. The attorneys' fees assessment is increased from 6% to 8%. The 2% expense assessment is not changed. The first sentence of Section IV(B)(3) of CMO 6 is amended to read as follows: "The assessment amount is 10%, which includes 8% for attorneys' fees and 2% for expenses." *See* Doc. 372 at 10.

Dated this 31st day of May, 2019.

*David G. Campbell*
David G. Campbell
Senior United States District Judge