**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | |
|---|---|
| **In Re: Bard IVC Filters** <br> Products Liability Litigation | ) MD-15-02641-PHX-DGC <br> ) <br> ) <br> ) Phoenix, Arizona <br> ) July 2, 2019 <br> ) |

_____)

**BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

<u>**TELEPHONIC CONFERENCE**</u>

Official Court Reporter:
Patricia Lyons, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Ste. 312
401 West Washington Street, SPC 41
Phoenix, Arizona  85003-2150
(602) 322-7257

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared with Computer-Aided Transcription

```
 1            T E L E P H O N I C   A P P E A R A N C E S

 2

 3    For the Plaintiffs:

 4            Lopez McHugh, LLP
              By: RAMON R. LOPEZ, ESQ.
 5            100 Bayview Circle, Ste. 5600
              Newport Beach, CA   92660
 6
              Beus gilbert, PLLC
 7            By: MARK S. O'CONNOR, ESQ.
              701 N. 44th St.
 8            Phoenix, AZ   85008

 9
              Heaviside Reed Zaic
10            By: JULIA REED ZAIC, ESQ.
              312 Broadway, Ste. 203
11            Laguna Beach, CA   92651

12

13    For the Defendants:

14            Nelson Mullins Riley & Scarborough
              By: RICHARD B. NORTH, JR., ESQ.
15            By: MATTHEW B. LERNER, ESQ.
              By: ELIZABETH C. HELM, ESQ.
16            201 17th Street NW, Suite 1700
              Atlanta, GA   30363
17

18

19    For SNF cases:

20            Baum Hedlund Aristei & Goldman, PC
              By: NICOLE K. H. MALDONADO, ESQ.
21            10940 Wilshire Blvd., 17th Fl.
              Los Angeles, CA   90024
22

23

24

25
```

1         **P R O C E E D I N G S**

3         THE COURTROOM DEPUTY:  This is MDL case 15-2641 in
4    regards to Bard IVC Filters Products Liability Litigation, on
5    for telephonic conference.
6         THE COURT:  All right, who's on the phone?
7         MR. LOPEZ:  Good afternoon, Your Honor.  Ramon Lopez
8    on behalf of plaintiffs.
9         MR. O'CONNOR:  Your Honor, Mark O'Connor on behalf of
10   plaintiffs.  Good afternoon.
11        MS. REED ZAIC:  Julia Reed Zaic on behalf of the
12   plaintiffs, Your Honor.
13        MR. NORTH:  Your Honor, Richard North on behalf of
14   the defendants.
15        THE COURT:  Anybody else?
16        MS. HELM:  Yes, Your Honor.  This is Elizabeth Helm
17   on behalf of the defendants.
18        MR. LERNER:  Your Honor, this is Matthew Lerner on
19   behalf of the defendants.
20        THE COURT:  Anyone else?
21        MR. SCHULTZ:  Your Honor, Matt Schulz from Levin
22   Papantonio, just calling in on behalf of my set of clients.  I
23   don't intend to speak, however, unless asked.
24        MS. GOLDENBERG:  Your Honor, this is Marlene
25   Goldenberg calling in on behalf of my clients, for plaintiffs,

1    but I also don't intend on speaking.
2            THE COURT:  All right.  We only need to have folks
3    who wish to speak identify themselves.  But thank you to
4    Mr. Schulz and Ms. Goldenberg.
5            All right.  Counsel, one of you, I think it might
6    have been the defense side, called and requested this
7    conference saying there were some questions about what needs
8    to be submitted on July 10th, which is the extended date from
9    the date set in Case Management Orders 42 and 43.  So why
10   don't you tell me what the issue is that we need to address.
11           MR. NORTH:  Your Honor, this is Richard North.
12           I think that what we probably need to address is not
13   necessarily with Your Honor, although we certainly welcome
14   your advice, but between my office and the clerk's office,
15   perhaps with Ms. Outley as a liaison.
16           In preparing these zip files we just want to make
17   certain that we prepare them in a fashion -- timewise in a
18   fashion that is most useful for the clerk as far as organizing
19   them.  Whether they should be grouped by district or grouped
20   in some other fashion.  So it's mostly just technical
21   logistical issues on how to group and format the zip files for
22   use by the clerk.
23           THE COURT:  Well, Mr. North, we previously -- or I
24   should say you previously put together zip files for the
25   mature cases when they were remanded, as reflected in the

1    order that was entered on January 29th at Docket 14973.

2              Is there a reason you can't just do it in the same
3    manner that you did there?

4              MR. NORTH:  Well, I do believe we plan to do that,
5    Your Honor.  But we, of course, are talking about a different
6    volume of cases.  For example -- well, the numbers are still
7    shifting a little and we have told everyone from the plaintiff
8    side, or are telling them, that after tomorrow we can't have
9    people shifting between tracks because that's what's making it
10   difficult, or did last week, to finalize.

11             But right now the numbers seem to indicate that the
12   total number of cases that will be subject to immediate remand
13   is probably a little bit less than 2,000.  So just because of
14   the volume of that, as opposed to eight -- mature cases,
15   organizing them in groups, for example -- or in other ways
16   that might assist the clerk's office.

17             THE COURT:  Mr. North, you've been breaking up and so
18   I have not been able to follow the last three or four
19   sentences.  Could you go back to where you said the number
20   seems to indicate that there's just under 2,000.  And then you
21   went on to explain why that's a problem and you broke up and I
22   couldn't follow it.

23             MR. NORTH:  I apologize, Your Honor.

24             It appears there are just under 2,000 cases that will
25   be subject to remand under the Court's order and that volume

1    obviously is much different and larger than the eight mature
2    cases we had remanded.
3            So we were just trying to find ways to make it easier
4    for the clerk's office to provide them with zip files for that
5    volume.
6            THE COURT:  Explain to me, if you would, Mr. North,
7    why the zip file would be different for different plaintiffs.
8            MR. NORTH:  Well, Your Honor, it has to do, as I
9    understand it, and I must tell you my paralegal is a better
10   expert on this, it has to do with the volume of data, because
11   the biggest part of one of these zip files for an individual
12   case involves all the different orders over the lifetime of
13   the MDL that have been packaged together and will be in
14   accordance with the Court's remand order, and then for each
15   individual case there's usually just one or two additional
16   pleadings, the short-form complaint and notices of appearance.
17           So the question is, for example, if there are 35
18   cases being transferred back to the Northern District of
19   Georgia, do we need 35 sets of that group, overall group of
20   orders over the lifetime of the MDL?  Or do we need one set of
21   that data for each district?
22           THE COURT:  Well, just speaking off the top of my
23   head, I imagine if I was a judge in that district, I would not
24   want to get 35 zip files.  I would want to get one that
25   covered what was done in the MDL.  And if it became necessary

1    in a particular case for me to look at the short-form
2    complaint or the plaintiff's fact sheet that an individual
3    plaintiff produced, then I would ask the plaintiff for those
4    documents.
5           I've assumed the whole purpose of the zip file is to
6    convey to the transferor districts what happened in the MDL.
7    What rulings were made that are relevant to the ultimate
8    disposition of the case.  And that would include the kind of
9    stuff that was included in that January 29th order.
10          Unless somebody would like to point out why it's
11   wrong, I would say we ought not complicate this process by
12   trying to create separate zip files for each plaintiff that
13   includes two or three documents specific to that plaintiff.
14   We should let the judges get those from the parties and
15   otherwise just put in the zip file the general documents from
16   the MDL.
17          MR. NORTH:  Your Honor, this is Richard North again.
18   That would certainly make our lives easier.
19          THE COURT:  How about plaintiff's counsel.  Do you
20   have a view on this issue?
21          Mr. Lopez or Mr. --
22          MR. O'CONNOR:  This is Mark O'Connor.  My vote is for
23   simplicity.
24          MR. LOPEZ:  I started to talk.  I was on mute, Your
25   Honor.

1          I think the idea of just having one zip file with
2   that large volume of materials that on the remand order would
3   make sense to go to each court, and then just the individual
4   pleadings of each case that is being remanded.
5          THE COURT:  Well, I was with you until that last
6   sentence.  What are you saying should happen with the
7   pleadings for an individual case?
8          MR. LOPEZ:  I guess I thought I was just repeating
9   what you had said, and Mr. North.  I agree with the process of
10  each one of these individual cases don't need to have that
11  entire remand order with all of that volume of material for
12  each file, but I thought the pleadings from each case should
13  be included with the remand.
14         THE COURT:  Well, I'm not following --
15         MR. LOPEZ:  Just the complaint -- just the complaint,
16  Your Honor, and notice of appearance.  I don't know whether
17  there's individual answers.  I think there's a general answer,
18  also, for all these complaints.
19         THE COURT:  Then you are saying, Mr. Lopez, you think
20  that there needs to be a separate zip file for every case that
21  is remanded?
22         MR. LOPEZ:  I guess where I'm having difficulty, I
23  don't know what happens when these cases get -- for example,
24  use Mr. North's example, 35 cases get remanded to the Northern
25  District of Georgia, I don't even know where they go.  I mean,

1  do they just get sent to the presiding judge?  Do they go to a
2  central filing area, the clerk, who then distributes the cases
3  or goes to the presiding judge to determine what to do with
4  all those things?
5            THE COURT:  Well, I can tell you, Mr. Lopez, that
6  cases that were transferred pursuant to an MDL order in most
7  districts, if not all, will go back to the judges that had
8  them before the MDL transfer order came out.  If those judges
9  are no longer on the bench, they'll be reassigned by the clerk
10 to some judge in the court.
11           If we send a case there under a 1404(a) transfer
12 because it was directly filed here, then it will be up to the
13 clerk to assign it to whichever judge would come up next on
14 the wheel.
15           There may be some districts that consolidate all of
16 the remanded cases in front of a single judge, but I think
17 there's a good chance that in others they'll get distributed
18 among a number of judges.
19           But the view I was expressing was that when it comes
20 to the zip file that we're going to send those districts, that
21 will include 60 or 80 or 100 different orders from the MDL.
22 We should just send the district one.  If we're sending back
23 35 cases, we shouldn't give them 35 separate zip drives, each
24 of which has a 100 general orders and a different complaint.
25 That's going to be a logistical nightmare for the districts,

1  it's going to be a logistical nightmare to put together for
2  1900 different cases.
3          It seems to me we give them one zip drive with the
4  general orders and then when they land on the desk of a judge,
5  if the judge wants to see the short-form complaint or the
6  plaintiff fact sheet or the answer, which is really only a
7  notice of appearance that was filed for that specific
8  plaintiff, the judge can ask for it.  But we shouldn't try to
9  take on the burden of creating a different zip drive for each
10 case or put on the transferor courts the burden of having to
11 keep track of an envelope that comes in with 35 different zip
12 drives in it.
13         I guess the question is whether you disagree with
14 that.
15         MR. LOPEZ:  This is Ramon Lopez again on behalf of
16 the plaintiffs.  I don't.  I don't disagree with it at all.  I
17 guess the only issue is where does that one document with all
18 of the orders go?  If it's to different judges in the same
19 district court?
20         THE COURT:  Well, that's going to be up to the
21 district.  I will tell you, when we remanded the mature cases,
22 there were some districts which said don't send us the zip
23 drive until we ask for it.  Others took the zip drive, and I
24 assume what they then did was give it to the judges that got
25 the cases.  Whether or not they actually entered it into their

1  dockets, I don't know.  They asked for it by e-mail, which we
2  transferred at least to some of them by e-mail.
3          So my guess is different districts will want it in
4  different ways.  But the key -- it seems to me our part of
5  that task is simply to make available to them the relevant
6  orders from this case, and deliver it to them by e-mail or a
7  zip drive for them to use as they choose so they don't have to
8  try to get all of those from the parties or through PACER or
9  through some other method.
10         And my view is that you all should put together what
11 we did before, which was -- in fact, the order calls for a
12 stipulated designation of record that will identify all of the
13 relevant documents, and then a zip drive that will include all
14 of those documents in the stipulated designation of record.
15 And there will be only one.  There won't be 1900 of them for
16 the 1900 cases that get remanded.
17         I guess I'm inviting your reaction, Mr. Lopez, to
18 that.
19         MR. LOPEZ:  Yeah, I mean, like Mr. O'Connor said, I'm
20 for simplicity for sure.
21         I guess it's just logistically and procedurally I
22 don't know where that one large file with all of the orders
23 goes.  Does it go to each district?  Do we just tell the
24 district it's available if they need it?  Or where it is?
25 Where is that?  How do we convey that to each district, where

1   to find that if they need it?

2   THE COURT: My expectation, confirmed by Nancy who is
3   writing me notes at sidebar, is that we will send it -- we
4   will send it to the Clerk of the Court for each district that
5   receives transferred cases.

6   And what the clerk does then with it in terms of
7   distributing it to judges who get the cases, will be up to
8   them. But we'll make it available to the Clerk of Court for
9   every district that gets cases back.

10   MR. LOPEZ: Okay.

11   That makes all the sense in the world to me, as long
12   as -- yeah, that's fine, at least from my perspective, Your
13   Honor, on behalf of plaintiffs. Makes sense.

14   THE COURT: All right.

15   So, Mr. North, we'll just do one.

16   MR. NORTH: You have just made my staff very happy,
17   Your Honor.

18   THE COURT: So just to review -- hold on just one
19   minute.

20   Just to review, I'm looking now at Case Management
21   Order Number 42 which is at Docket 16343, and I'm looking
22   specifically at paragraph 4(h) which is on page 7. It
23   identifies the three things that you need to get to us by
24   July 10. It says July 1st but we extended that.

25   One thing we need from you by that date is an updated

1    joint proposed report to be sent to the Judicial Panel on
2    Multidistrict Litigation with these cases that are going to be
3    transferred.  And you previously created such a report, which
4    is at Docket 12534, as cited in the order.  We need it to be
5    updated because things have happened in the case since that
6    report was created.
7               The second thing we need is an updated stipulated
8    designation of record.  That's going to identify the portions
9    of the record that we think are relevant to all of these
10   courts that are going to get cases.  And you previously
11   created one of those for the mature cases at Docket 131 -- I'm
12   sorry -- 13158.  So that just needs to be updated to cover
13   what's happened since then.
14              The third thing is the single zip file that contains
15   the documents listed in that updated designation of record.
16              Those are the things that we need by July 10th, in
17   addition to your report on which cases are in Track 1 and
18   Track 2 as set out in that order and Case Management Order 43.
19              Are there any questions on those matters?
20              MR. NORTH:  Your Honor, Richard North on behalf of
21   the defendants.
22              I don't believe there are.  On those first two things
23   our office has been in constant contact with the plaintiffs,
24   and particularly Ms. Reed Zaic, and I believe we've just about
25   finalized, or, if not, I think we may have already finalized

1  the first two things that were mentioned there and the zip
2  file was our only question in getting that completed.
3              MS. REED ZAIC:  This is Julia Reed Zaic on behalf of
4  the plaintiffs, Your Honor.
5              I concur with that.  It was actually a relatively
6  smooth process with just the simple issue of logistics and the
7  exhibit of the report on which tracks the plaintiffs will be
8  adding to.
9              THE COURT:  Okay.  That's good.
10             Let me mention one other matter, which is yesterday
11 we received a status report from Ms. Maldonado on the SNF
12 cases.  Does she happen to be on this call?
13             MS. MALDONADO:  I am, Your Honor.
14             THE COURT:  All right.  Ms. Maldonado, what I
15 gathered from the chart, and thank you for your efforts in
16 putting this together, is that there are eight cases in your
17 second column where the parties are not negotiating and
18 therefore not part of the Track 1 or Track 2 settlement list
19 that comes in on July 10.  And by my count there are 45 cases
20 where you can't get plaintiffs' counsel to respond to you as
21 to whether or not they're in settlement discussions or not.
22 Is that right?
23             MS. MALDONADO:  Your Honor, that's correct.  The
24 Column 2, the eight cases where they're not negotiating, at
25 the time I spoke to the plaintiff firms and those in that

1  particular column, they were not -- a lot had indicated they
2  hadn't been contacted yet.  So I'm -- it was about two weeks
3  prior to when the report was due, so there might be some --
4  that's why I wanted to give you another update for the Court.
5  Those eight cases might be in negotiation right now.  I'm not
6  quite sure.  And I'm working with defense counsel on this,
7  too, who might have a better understanding.
8              And then, yeah, the 45 cases that are in the last
9  column, most of those are from Mr. Burns' office.  I just
10 haven't received any responses back from those individuals, so
11 I don't know -- I don't particularly know where they stand.
12 And maybe defense counsel can shed some light on that as well
13 once they finalize the Track 1 and Track 2 list of cases that
14 are settling.
15             So I'm happy to update the Court by July 15th, and
16 maybe I'll get some more information for the Court so we can
17 make a determination by then.
18             THE COURT:  Mr. North, do you know if you all are
19 talking with Marc J. Bern and Partners about settling their 29
20 SNF cases?
21             MR. NORTH:  Your Honor, I wish I could answer that.
22 I saw Ms. Maldonado's report last night and I tried my best to
23 contact settlement counsel today to get clarification of that
24 and was unable to reach him.  I will continue to do so.
25             THE COURT:  All right.  Well, I think it does make

1   sense to see where these cases, these SNF cases, land in the
2   Track 1, Track 2 or Remand categories come July 10th.  So why
3   don't we have you file an updated report on July 15, as you
4   proposed, Ms. Maldonado.
5           I will tell you my thought is that if we end up with
6   eight or ten or even 20 SNF cases, I'm not sure it's going to
7   make sense to -- well, that are not in settlement, I'm not
8   sure it's going to make sense to keep them here as an MDL.
9   Certainly there wouldn't be --
10          MS. MALDONADO:  I agree.
11          THE COURT:  Certainly there wouldn't be an MDL
12  created for that small a number of cases.
13          Ms. Maldonado agrees.
14          Do defense counsel have thoughts on that?
15          MR. NORTH:  Your Honor, this is Richard North.
16          I do agree if the ultimate number is in the range the
17  Court is discussing, certainly.
18          THE COURT:  All right.  Let's see where things stand
19  on July 15th.
20          If there are, say, 15 or 20 cases that are not in
21  settlement and therefore are going to be remanded or
22  transferred, we're going to need to talk about -- well, I
23  assume what we're going to need to do is come up with some
24  sort of a supplement to the general report which will explain
25  to any judge that receives this back that this is an SNF case,

1  there was no discovery done on SNF cases in the MDL; there
2  were no bellwether trials; there were no expert disclosures;
3  therefore, much of what they would get in the designation of
4  record may not be relevant.  And it will be up to those judges
5  to sort out where to begin and what to do with the SNF cases.
6          But why don't we cross that bridge after July 15th
7  when we see how many there are that are likely to be remanded
8  and we'll figure out, and I'll get you on the phone to talk
9  about what we tell the courts that are going to get those
10 cases.
11         MS. MALDONADO:  That sounds great, Judge.  Thank you.
12         THE COURT:  All right.  Are there other matters we
13 need to take up today?
14         MR. NORTH:  Your Honor, Richard North.  Nothing from
15 defendants.
16         MR. LOPEZ:  Ramon Lopez, Your Honor.  I certainly
17 have nothing to raise at this time.
18         THE COURT:  All right.  Thank you all.  Have a happy
19 4th.
20         MR. LOPEZ:  All right.  You too.
21         MR. NORTH:  Thank you, Your Honor.
22      (End of transcript.)
23                        * * * * *
24
25

# **C E R T I F I C A T E**

I, PATRICIA LYONS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control, and to the best of my ability.

DATED at Phoenix, Arizona, this 12th day of July, 2019.

<u>s/ Patricia Lyons, RMR, CRR</u>
Official Court Reporter