**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | |
|---|---|
| **In Re: Bard IVC Filters** Products Liability Litigation | ) MD-15-02641-PHX-DGC ) ) ) Phoenix, Arizona ) **August 8, 2019** ) |

_____)

**BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TELEPHONIC CONFERENCE**

Official Court Reporter:
Patricia Lyons, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Ste. 312
401 West Washington Street, SPC 41
Phoenix, Arizona  85003-2150
(602) 322-7257

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared with Computer-Aided Transcription

**T E L E P H O N I C   A P P E A R A N C E S**

For the Plaintiffs:

    Beus Gilbert, PLLC
    By: **MARK S. O'CONNOR**, ESQ.
    701 N. 44th St.
    Phoenix, AZ  85008

    Heaviside Reed Zaic
    By: **LAURA SMITH**, ESQ.
    312 Broadway, Ste. 203
    Laguna Beach, CA  92651

    Gallagher & Kennedy PA
    By: **SHANNON L. CLARK**, ESQ.
    2575 E Camelback Rd., Ste. 1100
    Phoenix, AZ 85016

For the Defendants:

    Nelson Mullins Riley & Scarborough
    By: **RICHARD B. NORTH, JR.**, ESQ.
    By: **MATTHEW LERNER**, ESQ.
    201 17th Street NW, Suite 1700
    Atlanta, GA  30363

**P R O C E E D I N G S**

THE COURTROOM DEPUTY: This is MDL 15-2641 regarding Bard IVC Filters Products Liability Litigation, on for telephonic conference.

Can just the speakers announce, please.

MR. O'CONNOR: Yes. Hi. This is Mark O'Connor, co-lead for the plaintiffs. And, again, I would just like to make a record that Julia Reed Zaic, who is on our executive committee who prepared the papers that were filed today that we're going to be talking about, unfortunately had a conflict and regrets that she cannot be available.

Shannon Clark is on the phone, I'll let him announce his appearance, and I believe Laura Smith is also present and I'll let her announce her appearance. For the plaintiffs.

MR. CLARK: Afternoon, Your Honor. Shannon Clark from Gallagher and Kennedy.

MS. SMITH: Good afternoon, Your Honor. Laura Smith from Heaviside Reed Zaic.

MR. NORTH: Richard North on behalf of the defendants.

MR. LERNER: Matthew Lerner on behalf of the defendants.

THE COURT: All right. Good afternoon, everybody.

Mr. O'Connor, did you say something about papers

1   that were filed today?

2         MR. O'CONNOR: No, Your Honor. I meant in
3   connection with the joint notice regarding the non- the
4   settlement/non-settlement tracks and also our position about
5   the issue that's going to be taken today. So it's a document
6   that Ms. Reed Zaic was very highly involved in and I know
7   that she was planning on being available for a hearing on
8   this. Unfortunately, today she had a conflict and I just
9   wanted to notify the Court of that. Therefore, Shannon Clark
10   is going to be taking the lead on this.

11         THE COURT: This is a document that was filed a week
12   and a half ago; right?

13         MR. O'CONNOR: Yes, that's the one I'm referring to.

14         THE COURT: All right.

15         Well, let me tell you the issue, counsel, that
16   prompted me to set this call.

17         We have in Exhibit J of the materials that you
18   submitted on July 26 a list of Track 3 cases for which no
19   federal jurisdiction is proper. That exhibit lists 23 cases,
20   by my count, where the plaintiffs state of residence is
21   either Arizona or New Jersey.

22         In addition to that, Exhibit E, which is the exhibit
23   that addresses venue and where the parties agree to venue,
24   includes one case with an Arizona resident and one case with
25   a New Jersey resident.

1       And Exhibit G, which is the list of cases without
2  service, includes a New Jersey resident.
3       And when we look at the exhibits for Track 1 and
4  Track 2, Track 1 has by our count 112 cases where the
5  plaintiff is either an Arizona or a New Jersey resident, and
6  Track 2 has 124 cases where it's either an Arizona or New
7  Jersey resident.
8       So I've got -- I've got a couple of questions.  One
9  is with respect to the Track 3 cases where it looks like we
10 don't have diversity jurisdiction, and I think there may be
11 as many as 26 of those, plaintiffs said you want to brief it.
12 That was unclear to me because it seems whether or not a
13 plaintiff resides in Arizona or New Jersey ought not to be a
14 fact in dispute.  And if the plaintiff does, then there's no
15 diversity jurisdiction.  So I don't see what there is to
16 brief with respect to each of these individual cases.
17      And so that's my first question, what is it you all
18 are proposing to brief?
19      The second question is what, if anything, in your
20 view, should I do with the more than 200 cases in Tracks 1
21 and 2 where it appears there is no diversity jurisdiction?
22      So let's start with Plaintiffs' counsel on the first
23 question of what kind of briefing you think needs to happen.
24      MR. CLARK:  Your Honor, Shannon Clark again.
25      As far as briefing, the tension here is because of

1    the mechanics of how this MDL has arose, you know, and the
2    delays in sort of addressing the personal jurisdiction issue,
3    which typically would be the first thing assessed.  There is
4    a potential at least for some level of prejudice that if
5    these cases are dismissed, then, you know, not knowing what
6    the statutes various tolling doctrines would be in the
7    various jurisdictions.
8            So the thought was, one, the PLC and PEC do not
9    directly represent some of these cases that are affected or
10   potentially affected by this issue, so, you know, for I guess
11   lack of a better term political reasons would like those
12   lawyers who are directly involved to have some opportunity to
13   propose a resolution so it's not us making the decision or
14   either potentially making the decision or not doing something
15   that would affect their cases directly on something like
16   this.
17           So our thought was that if we could have a short
18   respite during which those affected parties, or the lawyers
19   for those parties, could be contacted and say, look, here's
20   the issue, and then -- briefing may be too strong of a word.
21   I would suggest what could happen during that time, and it
22   doesn't have to be a long time, but if there could be a
23   communication that there could be instruction that those
24   parties should contact Bard, have a brief meet and confer and
25   then prepare a very brief request for whatever relief they

1    want to request.

2            And, you know, again, without being able to speak
3    directly for some of those affected parties, I think in most
4    cases that may be some agreement that the case is dismissed,
5    but I think a lot of good could come from that besides just
6    the political reasons.  There may be some opportunities for
7    some stipulations, some things to avoid cases having to be
8    refiled and potential litigation over that.  The parties
9    might be able to stipulate to transfer.

10           Just by way of an example, and this is
11   hypothetically, but potentially a New Jersey resident could
12   agree to dismiss C.R. Bard and make a strategic decision to
13   do that since Bard BPV is really the primary actor here
14   that's involved in the documents and design and things.

15           So there's a variety of things that could happen.
16   And I think affording the parties a short opportunity to have
17   that discussion would, one, make this an issue directly
18   between the affected parties and Bard, and, two, potentially
19   save a lot of, you know, hassle on the back end of this and
20   starting over in different jurisdictions.  And that may end
21   up happening anyway, but I think there's a process there that
22   doesn't cost anybody a whole lot of time that at least cleans
23   some of this up.

24           So that would be our request, is to have an
25   opportunity for that type of communication to occur, to have

1     a short either notice or request for relief, if there is such
2     a thing, or it may just be an agreement to dismiss the case.
3     But I think having that dialogue would be helpful.
4           THE COURT: Mr. Clark, am I correct that as far as
5     savings statutes are concerned, it really only is two states,
6     Arizona and New Jersey? Because those are the only states
7     where a resident lacks diversity -- a case brought by a
8     resident lacks diversity jurisdiction.
9           MR. NORTH: That's correct, Your Honor. As far as
10    you said savings statutes, plural, I'm not -- I do not
11    believe, although I have not drilled down deeply on this,
12    that New Jersey has a, quote, savings statute. From what I
13    can tell from preliminary research, there is a fairly robust
14    equitable tolling doctrine that kind of serves the same
15    purpose. But just to be clear on the record, I'm not
16    representing there is a New Jersey savings statute. There is
17    one in Arizona, I'm sure of that.
18          THE COURT: Okay. All right.
19          Defense counsel, what are your thoughts?
20          MR. NORTH: Your Honor, Richard North on behalf of
21    the defendants.
22          We certainly have no objection to Mr. Clark's
23    request for a short period of time for the steering committee
24    to communicate with the individual plaintiffs' lawyers about
25    this situation. But ultimately we do not believe that

1   briefing would be necessary base we do believe, as the Court
2   suggested, whether there is diversity or not is a clear-cut
3   determination.
4           THE COURT:  Mr. Clark, how much time are you
5   proposing we take to have these discussions?
6           MR. CLARK:  Your Honor, I would say 30 days would be
7   a reasonable period of time.  It could potentially occur more
8   quickly than that, but with summer schedules and things I
9   want to make sure there is sufficient time for, you know,
10  some type of communication to occur.
11          But as far as -- and I guess part of this, that
12  question would be influenced by -- I'm sorry, that answer
13  would be influenced by whatever the Court's resolution of
14  your second question is because if we're talking about a
15  small handful of cases that, you know, by my count I think
16  there are eight affected firms in Exhibit J.  If we're
17  talking about the 236 cases on the other exhibits, indeed
18  that may be a broader thing that may take a little bit more
19  time.
20          THE COURT:  Okay. Hold on for just a minute,
21  please.
22          All right.  Counsel, let's address the second
23  question and get your thoughts on what we should do with the
24  cases in Track 1 and Track 2 where the exhibits suggest we
25  don't have diversity jurisdiction.

1           MR. CLARK: Your Honor, would you like me to proceed
2    first? This is Shannon Clark again.
3           THE COURT: Sure.
4           MR. CLARK: With respect to the cases that are Track
5    1, which I understand to be settled cases, and Track 2, which
6    are cases that are undergoing settlement discussions, our
7    opinion is that we should not do anything with those at this
8    juncture.
9           The settled cases will be dismissed in due course
10   once the settlement documentation is done, and presumably the
11   settlement discussion ones will -- it's premature to have to
12   do anything with those.
13          The concern that we would have is that if 200 and
14   some cases are dismissed or something, there's going to be a
15   lot of confusion about folks who thought their cases had
16   settled or are now going to be in some other process where
17   they have to refile or, you know, start looking at what other
18   jurisdiction they're going to be in, and I think that will
19   create a lot of chaos and a lot of confusion that could be
20   avoided if we just let that settlement process play out.
21          I think having that system with those two tiers of
22   cases on there made a lot of sense and avoids having to deal
23   with remand issues for cases that are going to be wrapping
24   up.
25          If there are cases that fall out of that category

1  for one way or another, then they would be treated the same
2  way as a Track 3 case would be.
3           So our position is that we not do anything with that
4  at this point.  I think it would be just -- I think we should
5  let those be for now and deal with it if and when any of
6  those cases fall off of the settlement tracks.
7           THE COURT:  Defense counsel, what are your thoughts?
8           MR. NORTH:  Your Honor, Richard North for the
9  defendant.
10          I believe Tracks 1 and 2 actually raise somewhat
11 different issues.
12          With regard to Track 2, those are cases that are
13 subject to ongoing settlement negotiations, but we fully
14 anticipate that a number of those are going to be shifted to
15 Track 3 eventually, and some sooner rather than later.  So
16 this issue is going to arise with the Track 2 cases.  The
17 issue will present itself prior to remand in a number of
18 these.
19          We think -- and the fact of the matter is the Court
20 does not have jurisdiction over those if there is indeed no
21 diversity.
22          We believe that the Track 2 cases should be
23 dismissed.  That doesn't mean the parties and attorneys
24 cannot continue to discuss settlement, because they're
25 probably going to have the right to refile in New Jersey and

1  Arizona anyway.  But for both, because there is no
2  jurisdiction and because I think it would be very cumbersome
3  for the court and the clerk and the parties to have to
4  revisit this diversity jurisdiction issue any time cases are
5  shifted from Track 2 to Track 3 for remand that they should
6  be dismissed at this time.
7           With regard to Track 1, I don't have any strong
8  feelings.  We do not -- because those cases are settled.
9  We're going to honor the settlement agreement regardless
10 whether they're dismissed or not.  So if the Court wants to
11 be consistent and dismiss those, that's fine.  It's not going
12 to have any real impact.  Or, since they're settled, if the
13 Court wants to just leave them, that's fine with us, too.
14           MR. CLARK:  Your Honor, could I add one thing,
15 though, as a practical matter to follow up on that?
16           For a case that has shifted off of Track 1 or 2 for
17 whatever reason to Track 3, I think we're going to get some
18 resolution on that issue very quickly, probably within 30
19 days, and that would basically be the path any of these sort
20 of newly added cases to Track 3 would travel.
21           But on Track 2, if there are settlement discussions
22 that are ongoing and the case is dismissed, what's going to
23 happen is, by way of example, the Arizona savings statutes
24 requires an action that's dismissed for certain reasons to be
25 refiled within six months to avail itself of that practice.

1              As a practical matter, I guess people could, if
2     they're dismissed, docket six months and we have to get that
3     on file, but this process could take longer than six months
4     to fully vet and have things reduced down to settlement
5     agreements where there's a binding contract.
6              So the concern I would have is just that now you're
7     adding 124 cases where they're in kind of a limbo status
8     where they may or may not have to take action, may or may not
9     have to file things, defendants may or may not have to
10    answer.  That seems like a lot of additional work and chaos
11    and expense and inconvenience to at least the state court
12    that could potentially in large part be avoided if the cases
13    are -- remain kind of parked there until if and when they get
14    off of Track 2.
15             THE COURT:  All right.  I understand what both
16    parties have said.
17             This is what I'm going to do with these issues.
18             Normally, I am anxious to resolve diversity -- well,
19    subject matter jurisdiction issues because I can't move
20    forward in a case if I don't have subject matter jurisdiction
21    over it.
22             In this MDL obviously, my lack of subject matter
23    jurisdiction over one case doesn't impair my ability to move
24    forward with the MDL because there's subject matter
25    jurisdiction over most of them.

             1          I also never take an action in a case if I doubt my
             2   subject matter jurisdiction.  But in this case I'm not doing
             3   anything on Tracks 1 or Track 2.  They're just -- they're
             4   just sitting on those tracks.  If I were asked to do
             5   something with one of those cases, I would first need to
             6   decide if I had subject matter jurisdiction.  But the
             7   structure of Tracks 1 and 2 is we're not doing anything with
             8   them for the designated periods of time.
             9          It may be that some of the Track 2 cases get
            10   settled.  And it seems to me leaving them there for that
            11   possibility is probably wise and avoiding any work that would
            12   be created by dismissing them at this point.
            13          So I'm not going to act on the Track 1 and Track 2
            14   subject matter jurisdiction issues at this time.  We're just
            15   going to leave those cases where they are.  And if you all
            16   settle them, great.  If you don't, then we'll deal with them.
            17          And if they do move into Track 3, one of the issues
            18   that we'll need to address is diversity jurisdiction, and
            19   we'll have a precedent for how to deal with them by virtue of
            20   what we do with the current Track 3 cases that we're going to
            21   be addressing.
            22          So to summarize that first point, we're not doing
            23   anything at this point with the 112 or so cases on Track 1
            24   and the 124 cases or so on Track 2.  We'll leave them where
            25   they are and deal with them if they get on to Track 3 where I

1     actually have to do something with the cases.
2              With respect to the Exhibit J Track 3 cases, the 23
3     or so cases where it appears there is no subject matter
4     jurisdiction, those are all direct-filed cases.  I am going
5     to allow the parties 30 days to discuss what should happen
6     with those cases.
7              And assuming that the parties agree that there is a
8     lack of diversity jurisdiction, I'm also assuming the result
9     from my side will be that I simply dismiss them.  But the
10    parties may in the meantime reach some sort of agreement as
11    to equitable tolling or some other issue they need to resolve
12    to make it easier when those cases are actually dismissed.
13             So we're going to -- let me ask Jeff.
14             Do we have a date 30 days out for other things we
15    could tie this to?
16             LAW CLERK:  Only thing would be the first of the
17    month they file reports on what cases --
18             THE COURT:  Right.  We're going to get September 1st
19    reports.
20         (The Court and the law clerk confer.)
21             THE COURT:  Yeah.  Okay.  That's okay.
22             So we'll look at the calendar and pick a specific
23    date.  We'll tie it to other events if there are other events
24    that it ought to be tied with.
25             I'll enter an order that allows the parties 30 days

1  to address all Track 3 cases that lack subject matter
2  jurisdiction.  As I indicated, that's all of the cases on
3  Exhibit J, but I think there's also two on Exhibit E and one
4  on Exhibit G that you ought to look at as well.
5        And what we will require in 30 days is a joint
6  report from the parties as to what it is we should do with
7  those Track 3 cases.
8        And if there is a dispute between the plaintiff and
9  the defendant as to whether there is subject matter
10 jurisdiction, we'll talk about it on the phone.  I mean, the
11 fact that these are Track 3 cases means they're either going
12 to be -- if I have jurisdiction, they're either going to be
13 transferred to the district where they should have been filed
14 had they not been directly filed or I'm going to recommend
15 that the JPML panel transfer them back to the transferor
16 courts.  Those are the only things that will happen here on
17 out with Track 3 cases.
18        But if there is no subject matter jurisdiction, then
19 my view is if they were directly filed, I should dismiss them
20 because I never had jurisdiction over them.
21        If they were transferred here, I probably should
22 transfer them back with a suggestion that the transferor
23 court look at the issue of subject matter jurisdiction and
24 dismiss.
25        But I won't do that on these Track 3 cases until we

1    get your report in 30 days.  And maybe in the meantime you've
2    worked out other arraignments on of some of those cases.
3            Any other comments or questions about that?
4            MR. CLARK:  Not from the plaintiff, Your Honor.
5            MR. NORTH:  Nothing from the defendants, Your Honor.
6            THE COURT:  Okay.  Hold on just one minute.
7         (The Court and the law clerk confer.)
8            THE COURT:  One point Jeff just pointed out to me is
9    if we look at Exhibit E, as I mentioned, there's two cases
10   there that appear to have subject matter jurisdiction issues.
11   Now, these are Track 3 cases that were directly filed here
12   and where the parties have agreed to use the venue identified
13   in the short-form complaint.  And one of those cases, which
14   is the Vollick V-O-L-L-I-C-K case, which is civil 17-2588,
15   identifies the transfer venue as Arizona.  Now, what it
16   doesn't say is that the plaintiffs live in Arizona.  I'm
17   assuming that's why it should be sent to Arizona, but that's
18   not entirely clear.  So that's what you ought to look at.
19           The second case in Exhibit E identifies New Jersey
20   as the place that it should be sent, and that is the Dukes,
21   D-U-K-E-S, case, which is at 19-1348.
22           So you may be agreeing that venue is proper in
23   Arizona and New Jersey for reasons other than those being the
24   residency of the plaintiffs, in which event there isn't a
25   diversity jurisdiction problem.  But that's what you ought to

1    look at.

2              And then the other case which is in Exhibit G, and
3    these are the direct-filed cases that have not been served,
4    the Fuller case, which is civil 18-1414, shows that the
5    transfer should go to New Jersey.  Again, same issue.  We
6    didn't know if that's because the plaintiff's there or some
7    other fact causes you to think New Jersey is the right venue.

8              But those are the three cases besides the Exhibit J
9    cases that we identified.  So include those, if you would, in
10   the list of cases to be discussed during the next 30 days.

11             All right.  Anything else we need to talk about --
12   well, let me mention one other thing.

13             We expect probably next week we will be issuing the
14   order transferring Track 3 cases to districts that have
15   proper venue and the order recommending to the panel that it
16   transfer cases that were transferred here back to the
17   transferor courts.  That's not going to happen with respect
18   to some of the cases that are still in issue that we've
19   identified in previous orders.  But we expect those two
20   orders to go out next week so that most of the Track 3 cases
21   as of next week will be either directly transferred by me
22   under 1404 or will have made a recommendation to the panel
23   that it transfer them back.

24             All right.  Anything else we need to talk about
25   today?

1       MR. O'CONNOR:  I don't think there's anything else from the plaintiffs, Your Honor.  Thank you.  This is Mark O'Connor.

4       MR. NORTH:  Nothing for the defendants, Your Honor.

5       THE COURT:  Okay.  Thank you all.

6       MR. NORTH:  Thank you.

7       MR. CLARK:  Thank you.

8    (End of transcript.)

9           * * * * *

# C E R T I F I C A T E

I, PATRICIA LYONS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control, and to the best of my ability.

DATED at Phoenix, Arizona, this 18th day of August, 2019.

s/ Patricia Lyons, RMR, CRR
Official Court Reporter