1
2
3
4
5
6           **IN THE UNITED STATES DISTRICT COURT**
7
8             **FOR THE DISTRICT OF ARIZONA**
9

| 10 | IN RE: Bard IVC Filters Products Liability Litigation | Case No. MDL 15-02641-PHX-DGC |
|----|---|---|
| 11 | | **AGREED MOTION TO ESTABLISH THE LCHB BARD IVC QUALIFIED SETTLEMENT FUND AND TO APPOINT FUND ADMINISTRATOR** |

### AGREED MOTION TO ESTABLISH A QUALIFIED SETTLEMENT FUND, AND TO APPOINT A FUND ADMINISTRATOR

Lieff Cabraser Heimann & Bernstein, LLP ("Claimants' Counsel") hereby files this Agreed Motion to Establish A Qualified Settlement Fund And To Appoint Fund Administrator (the "Motion") and respectfully moves this Court for an Order (a) to establish a fund, which shall be called the "LCHB Bard IVC Qualified Settlement Fund" (the "Fund"), (b) to appoint the Fund Administrator. This Motion is substantively identical to two motions recently filed by other counsel in this litigation and approved by this Court. *See* Doc. Nos. 21626, 21627.

In support of this Motion, Claimants' Counsel respectfully states as follows:

1.      Lieff Cabraser Heimann & Bernstein, LLP represents plaintiffs and other individuals, collectively "Claimants," who are asserting claims and seeking damages arising out of certain alleged acts and events against Defendant C.R. Bard, Inc.

2050253.2

2. Defendant C.R. Bard, Inc., including Defendant's parent companies, affiliates, subsidiaries, and any and all other of its past, present, and future related entities (collectively, "Bard") is alleged to be liable for Claimants' claims.

3. Bard denies any and all liability to Claimants. In an effort to resolve their outstanding disputes, the Parties entered into a confidential "Master Compromise, Settlement, Release and Indemnity Agreement" between Bard, on the one hand, and Claimants' Counsel on the other hand (hereinafter the "Master Settlement Agreement"). Bard entered into the Master Settlement Agreement solely to avoid the expense, inconvenience, and burden of litigation, and the distraction and diversion of its personnel and resources; and has done so without admission of liability or wrongdoing.

4. Bard has agreed to pay to the Fund a confidential settlement amount ("Settlement Amount") in full settlement and discharge of all of the Claimants' claims and in exchange for a full release and discharge and satisfaction of other settlement requirements by Claimants, as set forth in the Master Settlement Agreement and the Confidential Settlement Agreement and Release (hereinafter, the "Release"). The Master Settlement Agreement contemplates that the exact allocation among, and distribution to, the Claimants in settlement of their claims will be finalized at a future time based upon determinations that have yet to be made, which include consideration of the circumstances of the individual Claimants. Furthermore, the final reimbursement amount, if any, alleged by Medicare, Medicaid, and/or private lien holders with respect to these claims is also yet to be determined. The Parties, therefore, ask this Court to order the establishment of the Fund to facilitate resolution of those claims through collection, allocation, final disbursement, and accounting of settlement proceeds and to appoint a Fund Administrator in connection with these activities.

5. Upon establishment of the Fund, and pursuant to the terms of the Master Settlement Agreement, Bard shall pay or cause to be paid the agreed-upon Settlement Amount into the Fund by wire transfer or check made payable to the Fund. All aspects of the administration of the Fund shall remain subject to the jurisdiction of the Court until

2050253.2

such time as the Fund has settled all eligible claims according to the terms of the Master Settlement Agreement.

6. The Fund shall be a Qualified Settlement Fund as described in Treas. Reg. Section 1.468B-1, established by order of this Court, and the Fund shall remain subject to the continuing jurisdiction of this Court until such settlement payments are distributed to eligible claimants according to the terms of the Master Settlement Agreement. Settlement payments within the Fund will be held in a fiduciary capacity. The Fund shall comply with the Treasury Regulations Section 1.468B-1 et seq. regarding taxation and tax reporting obligations.

7. This Court shall have jurisdiction over this matter under Treas. Reg. Section 1.468B-1(c)(1), which states in relevant part that a Qualified Settlement Fund "is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) of any of the foregoing and is subject to the continuing jurisdiction of that governmental authority." The Fund Administrator and/or its attorneys shall be indemnified and held harmless against reasonable expenses, costs and fees (including attorney fees), judgment, awards, and liabilities of all kinds incurred by the Fund Administrator from any and all claims made by any person or entity that attempts to assert a right of payment, reimbursement or garnishment against the Fund, except to the extent that it is finally determined by this Court that the Fund Administrator and/or its attorneys was/were negligent or acted with willful misconduct in connection with the administration of this Fund.

8. Claimants request that the Court approve the appointment of ARCHER Systems, LLC ("ARCHER") as the Fund Administrator (the "Fund Administrator"). ARCHER possesses comprehensive knowledge and experience administering qualified settlement funds. ARCHER submits to the personal jurisdiction of this Court. The Fund Administrator shall, upon request, prepare and deliver to the Court such reports related to

the administration of the Fund as the Court may request from time to time. ARCHER's address is as follows: 1775 St. James Place, Suite 200, Houston, TX 77056.

9. With the approval of and upon an order of this Court, the Fund shall fully settle, subject to the satisfaction of all applicable terms and conditions as set forth in the Master Settlement Agreement, all eligible claims. No settlement proceeds shall be set apart for any individual Claimant, or otherwise made available so that he or she may draw upon or otherwise control said settlement proceeds until such time as the Release is executed by such Claimant and all other applicable terms and conditions are satisfied, in accordance with the Master Settlement Agreement.

10. Subject to satisfaction of all applicable terms and conditions set forth in the Master Settlement Agreement and the Release, the Fund shall be liable to make payments to eligible claimants in the manner so specified in the Master Settlement Agreement.

11. In some circumstances, Claimants may elect a structured settlement annuity. Likewise, Claimants' Counsel may elect to place all or a portion of their contingent legal fees into one of several types of tax-advantaged investments as Plaintiffs' attorneys have the ability defer fees until a later taxable year. To facilitate Claimants' structured settlements or attorney fee structure(s), if any, the Fund, by and through the Fund Administrator, may purchase and assign structured settlements, whether "qualified" or "non-qualified." Any "qualified" structured settlement shall be issued by a life insurance company that holds an issuer credit rating equivalent to a National Association of Insurance Commissioners NAIC 1 designation. Claimants request that no bond be required, provided the Fund, which includes all principal and interest earned thereon, shall be deposited in an account comprised of (a) any obligations of, or any obligation guaranteed as to principal and interest by, the United States of America or any agency or instrumentality thereof, including the Federal Deposit Insurance Corporation; or (b) U.S. dollar denominated deposit accounts with domestic commercial or national banks that have a short term issuer rating on the date of purchase of "A-1" or better by S&P or "Prime-1" or better by Moody's and maturing no more than 360 days after the date of

purchase (provided that ratings on holding companies are not considered as the rating of the bank); or (c) money market accounts or money market funds registered under the Federal Investment Company Act of 1940, whose shares are registered under the Securities Act, and rated "AAAm" or "AAAm-G" or better by S&P, and "Aaa," "Aa1" or "Aa2" if rated by Moody's, including any mutual fund for which the Fund Administrator or an affiliate of the Fund Administrator serves as investment manager, administrator, shareholder servicing agent, and/or custodian. Income realized by investment of the Fund shall be available to the Fund Administrator as payment for tax preparation and filing, quarterly and annual tax payments, general administration services including, without limitation, the fees and costs associated with investment advisors, accountants, agents, managers, attorneys, actuaries, auditors, or insurers, which are incurred to maintain and administer the Fund. Any investment losses realized by investment of Fund or any portion thereof shall be charged to the Fund. To the extent the Fund Administrator invests any funds in the manner provided for in this paragraph ("Eligible Investments"), Claimants' Counsel, Defendant, and Fund Administrator shall not be liable for any loss(es) which may be incurred by reason of any such investment (or reinvestment) including, but not limited to, loss(es) that occur due to decreases in account value as a result of negative yields on direct or indirect investments in Eligible Investments. Such funds should be invested such that the following investment policy is implemented, as appropriate: (i) safety of principal; (ii) zero bank balance exposure through use of custodial/trust accounts (to avoid the risk of bank deposit forfeiture); and (iii) zero sweep disbursement accounts. In no instance will securities held pursuant to this agreement be lent or hypothecated. The Escrow Agent shall be responsible for following the investment requirements of this paragraph, pursuant to the instructions of the Fund Administrator.  Upon receipt of directions to distribute funds, the Fund Administrator may direct the Escrow Agent to liquidate appropriate Fund investments and place the funds in an FDIC- insured demand deposit account established with the Escrow Agent consistent with subparagraphs 6(c) above, which shall be a zero-balance account used solely for the purpose of making

distributions from the Fund.. The Fund shall be held at Citibank, NA, which is a financial institution doing business in the State of New York (hereinafter "Escrow Agent"), for the benefit of and titled in the legal name of the Fund according to the above terms and conditions and the Master Settlement Agreement, and said financial institution shall be responsible for any and all investment related decisions, pursuant to these terms and conditions. Notwithstanding the foregoing, Escrow Agent shall not be allowed to distribute any income or principal from the Fund except upon the written instructions of the Fund Administrator upon written approval or authorization by Bard, or if requested, upon an order of this Court in accordance with, or as may be otherwise provided in, the Master Settlement Agreement.

12. Bard shall have no responsibility for the expenses or administration of the Fund and shall have no liability to the Claimants in connection with such administration or decisions made by the Fund Administrator in the discharge of any and all Settlement Administrators' duties. Said expenses, if any, may be paid out of the Settlement Amount deposited and held in the Fund. Bard shall cooperate in the administration of the Fund to the extent reasonably necessary to effectuate its terms, including providing all information reasonably necessary for the Fund Administrator to complete the Fund's accounting. Aside from the foregoing sentence and subject to Bard's rights under the Master Settlement Agreement, no relationships or responsibilities are created hereby between Bard and the Fund and its Fund Administrator. Bard shall in no way be associated with the administration of the Fund or be liable in respect of any dispute between or among any Claimants and their respective counsel in respect of any costs, expenses, legal fees or litigation costs to be deducted from the Fund.

13. Claimants request that the Fund Administrator be authorized to incur costs necessary to administer the Fund and hire professionals and other experts necessary to administer the Fund, including but not limited to, accountants, Special Masters counsel, mediators or arbitrators, as necessary. Upon the satisfaction of all applicable terms and conditions set forth in the Master Settlement Agreement, all amounts to be paid from the

Fund pursuant to the Master Settlement Agreement, including all expenses which may be incurred by the Fund Administrator and all costs associated with providing the agreed Releases shall be paid from the Fund or by Claimants' Counsel and shall not be the responsibility of Bard. Distribution of these Fund amounts shall not require further Court Order.

14. All taxes on the income component of the Fund and expenses and costs incurred in connection with the taxation of the Fund (including, without limitation, expenses of tax attorneys and accountants) shall be paid out of the Fund, shall be considered to be a cost of administration of the settlement, and shall be timely paid by the Fund Administrator without prior order of the Court.

15. Subject to the terms and conditions in the Master Settlement Agreement, the Fund Administrator shall have the right to rely upon any affidavit, certificate, letter, notice, electronic mail, or other document believed by the Fund Administrator to be genuine and sufficient, and upon any other evidence believed by the Settlement Claims Administrator, in his reasonable judgment, to be genuine and sufficient, which may be provided to the Fund Administrator by the Claimants, Bard, or their counsel.

16. The Fund Administrator shall be authorized to distribute all attorneys' fees and expenses to counsel for Claimants consistent with existing contingency fee contracts, upon deposit of settlement proceeds in the Fund and satisfaction of the required terms of the Master Settlement Agreement. Court approval for such distributions shall only be required to the extent required by law for claims involving deaths and/or minors.

17. Upon completion of any structured settlements agreements and final distribution of monies paid from the Fund to eligible claimants under the terms of the Master Settlement Agreement, the Fund Administrator shall take appropriate steps to wind-down the Fund, including remitting unused funds back to Bard, as dictated by the Master Settlement Agreement and thereafter be discharged from any further responsibility with respect to the Fund.

2050253.2

18. To the extent any paragraphs in this Motion conflict or are in any way inconsistent with the terms and conditions of the Master Settlement Agreement, the Master Settlement Agreement controls.

19. The Fund Administrator will obtain a Federal Taxpayer Identification Number for the Fund that is the subject of this Motion, upon the execution of an order by the Court establishing the Fund.

20. WHEREFORE, Claimants respectfully request that the Court enter an Order:

   a. Establishing the Fund as a Qualified Settlement Fund within the meaning of Treas. Reg. Section 1.468B-1 and pursuant to the jurisdiction conferred on this Court by Treas. Reg. Section 1.468B-1(c)(1);

   b. Appointing ARCHER as the Fund Administrator pursuant to the terms, conditions, and restrictions of this Motion and granting said Administrators the authority to conduct any and all activities necessary to administer this Fund as described in this Motion;

   c. Authorizing the Fund, subject to the approval of and upon further order of this Court following joint motion by Claimants and Bard under the terms and conditions as set forth in the Master Settlement Agreement, to enter into individual Releases with persons asserting Claims, including the use of settlements with periodic payments and authorizing the Fund to effect qualified assignments of any resulting structured settlement liability within the meaning of Section 130(c) of the Internal Revenue Code to the qualified assignee;

   d. Authorizing the Fund Administrator, following completion of all structured settlement agreements and final distribution of monies paid from the Fund to eligible claimants under the terms of the Master Settlement Agreement, to take appropriate steps to wind-down the fund, including remitting unused funds back to Bard and thereafter discharging the Fund Administrator from any further responsibility with respect to the Fund.

Dated: October 15, 2020

Respectfully submitted,

*[signature]*

Wendy R. Fleishman
wfleishman@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

On behalf of Claimants

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 15, 2020, the foregoing AGREED MOTION TO ESTABLISH THE LCHB BARD IVC QUALIFIED SETTLEMENT FUND AND TO APPOINT FUND ADMINISTRATOR in this matter was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system on all counsel of record.

*/s/ Wendy R. Fleishman*
Wendy R. Fleishman

-10-

2050253.2