Mark S. O'Connor (011029)
BEUS GILBERT PLLC
701 North 44th St.
Phoenix, AZ 85008
Telephone: (480) 429-3000
moconnor@beusgilbert.com

Ramon Rossi Lopez (admitted *pro hac vice*)
(CA Bar No. 86361)
LOPEZ MCHUGH LLP
100 Bayview Circle, Suite 5600
Newport Beach, CA 92660
rlopez@lopezmchugh.com

*Attorneys for Plaintiffs*

James R. Condo (#005867)
Kristine L. Gallardo (#033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2204
Telephone: (602) 382-6000
jcondo@swlaw.com
kgallardo@swlaw.com

Richard B. North, Jr. (admitted *pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (admitted *pro hac vice*)
Georgia Bar No. 446986
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com

*Attorneys for Defendants*
*C. R. Bard, Inc. and*
*Bard Peripheral Vascular, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

IN RE: Bard IVC Filters Products Liability Litigation

No. 2:15-MD-02641-DGC

**JOINT MEMORANDUM ADDRESSING QUESTIONS POSED BY THE COURT**

(Assigned to the Honorable David G. Campbell)

In an order dated November 10, 2020 (Doc. 21720), the Court ordered the parties to submit a joint memorandum three days in advance of a hearing scheduled for December 8, 2020. (Doc. 21720). In that order, the Court identified seven issues for the parties to address in the memorandum. The first four questions posed by the Court stem from the parties October 23, 2020 report. (Doc. 21663). The final three questions pertain to the parties' November 6, 2020 motion to extend the deadline for dismissal of certain cases. (Doc. 21717). As directed by the Court, the parties submit the following information for the Court's consideration:

**1. Whether plaintiffs' counsel gave each plaintiff a deadline to either accept the allocated settlement amount or opt out of the settlement (referencing the October 23 report).**

In February of 2020, Freese & Goss and Matthews & Associates ("FG/MA") informed their clients of the Bard Settlement and gave plaintiffs an initial deadline of April 30, 2020 to accept the settlement or opt out of the settlement. Although some plaintiffs did not meet the initial deadline, FG/MA endeavored to be lenient with the deadline enforcement -- knowing that the pandemic and pandemic related issues had caused irregularities and hardships for many. In light of the ongoing, and worsening, pandemic-related issues, FG/MA requested and Bard agreed to extend the deadline to October 20, 2020. Although that extended deadline has passed, FG/MA has continued to pursue and accept releases or opt-out decisions from the 327 clients previously identified to the Court. To date, Bard has accepted those releases.

**2. Whether any of the 99 plaintiffs who were considering the settlement amount have since decided to accept the amount or opt out of the settlement (referencing the October 23 report).**

Since October 23, 2020, FG/MA has secured settlement decisions in 54 of the 99 cases identified in the Court's order as involving dismissed plaintiffs who were still considering the settlement. Of those 54 plaintiffs whose cases were resolved, 36 have

accepted their settlement offer and executed releases and 18 have chosen to opt out. Of the remaining 45 plaintiffs, 5 have been determined to be deceased, 22 have been reclassified as non-responsive and 18 remain considering the settlement.

**3. The specific efforts plaintiffs' counsel have made (a) to idenitify known heirs of the 43 deceased plaintiffs; (b) to contact – via phone, email, or mail – the 78 unresponsive plaintiffs; and (c) to locate the 107 missing plaintiffs identified in the October 23 report (Doc. 21663 at 2).**

FG/MA used the following efforts to identify, locate and contact missing or non-responsive plaintiffs or their heirs:

(a) For deceased plaintiffs, FG/MA undertook one or more of the following efforts: (a) FG/MA reviews the client's intake questionnaire and medical records to determine if any relatives or heirs are listed, (b) FG/MA uses Westlaw and Lexis to generate a list of heirs, (c) FG/MA performs general web searches for obituaries in the plaintiff's last known city of residence, (d) FG/MA enlists the help of lead counsel/referring counsel (particularly if located in the plaintiff's home community) to see if any information can be uncovered regarding a deceased plaintiff's heirs. Once a plaintiff's heirs are located, FG/MA attempts to contacts all known heirs by mail with a general letter.

As a result of these efforts, over the past six weeks, FG/MA has resolved 11 cases involving deceased plaintiffs. In 4 of those cases, heirs for the deceased executed settlement releases. In 7 of those cases, heirs for the deceased opted-out of the settlement. Additionally, FG/MA has successfully identified heirs in 2 cases, and after attempting to contact the heirs, has recategorized those two cases as non-responsive. Despite the resolution or recategorization of 13 cases involving deceased plaintiffs, the total number of deceased plaintiffs has remained constant because 13 cases previous categorized as non-responsive, unable to be located, or considering settlement have been determined to be deceased and added to the deceased category.

(b) For "non-responsive" plaintiffs, FG/MA undertook one or more of the following efforts: (a) FG/MA includes the non-responsive client in all scheduled communications, (b) FG/MA makes individualized attempts to reach the non-responsive client by phone, email and letter, (c) FG/MA uses subscription services, including Westlaw, Lexis and Spokeo, to confirm a non-responsive client's address or search for an alternative address for the client, (d) FG/MA enlists the help of lead counsel/referring counsel (particularly if located in the plaintiff's home community) to assist in making contact with the plaintiff. Until the point that FG/MA has reason to believe its contact information is incorrect, FG/MA will continue using letters, emails and calls to try and engage the client.

As a result of these efforts, FG/MA has resolved 18 of the 78 cases involving plaintiffs that had been designated as non-responsive. Eleven of these previously non-responsive clients have executed a release and 7 of them have chosen to opt out of the settlement. Five additional plaintiffs were recategorized from non-responsive to deceased. Two formerly non-responsive plaintiffs are currently considering the settlement. Fifty-three plaintiffs remain non-responsive. Although 25 non-responsive clients saw their claims resolved or recategorized, the overall number of non-responsive plaintiffs has increased from 78 to 111 over the past six weeks. This increase is primarily attributable to FG/MA's successful efforts in locating 68 clients who had been previously designated as missing -- but finding that a portion of those newly-located clients (34) remained non-responsive even after being found.

(c) For "missing" plaintiffs, FG/MA undertook one or more of the following efforts: (a) when one mode of communication is shut off (e.g. mail had been returned), FG/MA continues to use all remaining communication channels (e.g. phone calls and email) to reach the missing client, (b) FG/MA uses subscription services, including Westlaw, Lexis and Spokeo, to look for addresses for missing clients, (c) FG/MA enlists the help of lead counsel/referring counsel (particularly if located in the plaintiff's home

community) to see if any information can be uncovered regarding a missing plaintiff's whereabouts.

Over the past six weeks, FG/MA has succeeded in locating 68 of the 107 clients who had been previously designated as not-able-to-be-located. Of those 68 clients, 34 have been non-responsive since being located and have been recategorized as such. The remaining formerly-missing clients have either accepted the settlement and executed releases (11 cases), have chosen to opt out of the settlement (16 cases) or are presently considering their settlement offer (4 cases). Three plaintiffs that had been categorized as missing have been determined to be deceased. Thus, FG/MA's efforts have succeeded in reducing the number of missing plaintiffs from 107 to 39.

**4. Whether some or all of the 327 cases in which the plaintiffs have not signed a release or opted out of the settlement should remain dismissed, or whether the dismissals should be vacated and the cases remanded or transferred to appropriate courts.**

In the six weeks since October 23, 2020, exactly 110 of the 327 dismissed cases that had been identified to the Court as not having executed a settlement release or made an opt-out decision, have been resolved. Of these 110 cases, 62 plaintiffs executed settlement releases and 48 plaintiffs chose to opt out of the settlement (resulting in a cumulative total of 149 opt-outs). An additional group of plaintiffs have been located or recategorized during that six week period -- allowing for the potential to resolve their cases in the near future. The following chart reflects the change in status for the group identified in the parties' report and the current number and breakdown of remaining plaintiffs.

| | October 23, 2020 | December 4, 2020 |
|---|---|---|
| Considering the settlement | 99 | 24 |
| Deceased with no known heirs | 43 | 43 |
| Nonresponsive to inquiries | 78 | 111 |
| Not able to be located | 107 | 39 |
| TOTAL | 327 | 217 |

Because FG/MA believes there is potential to resolve additional cases, and due to the ongoing pandemic and upcoming holiday, FG/MA respectfully proposes that the Court take the following actions: (a) at its convenience, vacate, and transfer or remand the cases where plaintiffs have elected to opt out; and (b) set this matter for a status conference on or about January 27, 2020 at which time FG/MA will provide a further update on the remaining 217 clients and a decision may be made as to how to proceed with their cases. Until that time, FG/MA will continue their efforts to locate, contact and secure decisions from the remaining group of clients. In addition, the parties will provide the Court with an updated list of the present opt-outs prior to the December 8th hearing.

**5. The reasons why the settlement funds have not been disbursed to the 901 plaintiffs identified in the motion for extension of time (Doc. 21717).**

The 901 plaintiffs identified in the November 6 motion are part of approximately 10 different inventory settlements. That number was updated to 953 in the report filed on November 13, 2020. See Doc. 21726. Since that date, 42 of the plaintiffs have dismissed their cases. In turn, 96 additional plaintiffs have returned releases, leaving a present total of 948 plaintiffs who have submitted releases but not dismissed their cases. The defendants have already paid the settlement monies into the Qualified Settlement Funds for four of those inventory settlements, representing more than half of the remaining plaintiffs. Once the defendants fund the settlements, the disbursement of the funds is left to the discretion of the plaintiffs' attorneys.

The plaintiffs' attorneys have yet to disburse the funds for several reasons: (a) the need to resolve outstanding liens; (b) the need to involve bankruptcy trustees and/or determination of the requirement to do so; (if it is determined that a trustee in bankruptcy is required the administration and distribution of the settlement funds will need to be approved by the trustee and the bankruptcy court); (c) estate and probate issues (including the establishment of an estate specifically for purposes of the administration and

distributions of the settlement, and where required submitting the settlement to a probate court for final approval); or (d) difficulties in locating a plaintiff.

In four of the inventory settlements, the settlement agreements require the resolution of outstanding liens prior to funding of the settlement, and that resolution process has not yet concluded. With the two remaining inventory settlements, the plaintiffs' law firms have yet to satisfy the conditions precedent in the agreements for funding. The defendants stand ready to fund those settlements once the plaintiffs' firms do so.

**6. The specific steps that need to be taken for the settlement funds to be disbursed, and the time it will take to complete each such step (referencing the cases identified in the November 6 motion).**

For the four inventory settlements that have been funded, the decision when to disburse those funds lies with the plaintiffs' attorneys. Prior to disbursing those funds, in addition to those matters set forth in response to No. 5, above, and the release of the settlement money from a Qualified Settlement Fund, plaintiffs' attorneys must provide each plaintiff with a cost and fee account distribution statement for review and approval by the client.

As noted, with four of the inventory settlements, the lien resolution process needs to be concluded. At that time, those settlements will be funded, and the decision when to disburse those funds will lie with the plaintiffs' attorneys.

For the remaining two inventory settlements, the plaintiffs' law firms need to satisfy the conditions precedent in their agreements. At that juncture, the defendants will promptly fund the settlements. Then, the decision when to disburse those funds will lie with the plaintiffs' attorneys.

**7. The reasons, if any, why dismissals would not be filed by the requested March 15, 2021 deadline given that each of the 901 plaintiffs have signed a release, "thereby committing to the settlements and waiving the ability to opt out of the settlements."**

Once the defendants have funded the settlements, the timing of dismissals is determined by the plaintiffs' attorneys. Presently, the parties anticipate that the dismissals of all of the 911 remaining cases should be filed prior to March 15, 2021 (if the requested extension is granted). The only possible impediments to filing dismissals prior to that date would be unresolved matters set forth in section 5 and 6, above.

RESPECTFULLY SUBMITTED this 4th day of December, 2020.

BEUS GILBERT PLLC

By: /s/ *Mark O'Connor* (with permission)
Mark S. O'Connor (011029)
701 North 44th St.
Phoenix, AZ 85008

Ramon Rossi Lopez
(admitted *pro hac vice*)
CA Bar No. 86361
LOPEZ MCHUGH LLP
100 Bayview Circle, Suite 5600
Newport Beach, CA 92660

*Co-Lead/Liaison Counsel for Plaintiffs*

NELSON MULLINS RILEY & SCARBOROUGH, LLP

By: /s/ *Richard B. North, Jr.*
Richard B. North, Jr. (*pro hac vice*)
Georgia Bar No. 545599
Matthew B. Lerner (*pro hac vice*)
Georgia Bar No. 446986
Atlantic Station
201 17th Street, NW / Suite 1700
Atlanta, GA 30363

James R. Condo (005867)
Kristine L. Gallardo (033975)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2204

*Attorneys for C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.*