1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

**In Re: Bard IVC Filters**                    ) **MD-15-02641-PHX-DGC**
**Products Liability Litigation**              )
                                               ) Phoenix, Arizona
                                               ) **July 15, 2020**
_____) 10:01 a.m.


**BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TELEPHONIC CONFERENCE**


Official Court Reporter:
Patricia Lyons, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Ste. 312
401 West Washington Street, SPC 41
Phoenix, Arizona  85003-2150
(602) 322-7257

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared with Computer-Aided Transcription

1              **T E L E P H O N I C   A P P E A R A N C E S**

2    For the Plaintiffs:

3              Beus Gilbert, PLLC
               By: **MARK S. O'CONNOR,** ESQ.
4              701 N. 44th St.
               Phoenix, AZ  85008
5
               Freese & Goss, PLLC
6              By: **TIM GOSS,** ESQ.
               3500 Maple Ave., Ste. 1100
7              Dallas, TX  75219

8              Matthews & Associates
               By: **DAVID P. MATTHEWS,** ESQ.
9              2905 Sackett St.
               Houston, TX  77098
10

11

12   For Defendants:

13             Nelson Mullins Riley & Scarborough
               By: **RICHARD B. NORTH, JR.,** ESQ.
14             By: **ELIZABETH HELM,** ESQ.
               201 17th Street NW, Suite 1700
15             Atlanta, GA  30363

16             Snell & Wilmer
               By: **JAMES R. CONDO,** ESQ.
17             400 East Van Buren
               Phoenix, AZ  85004
18

19   Also Present:  Russell Gaudreau

20                  Christina Guerra

21

22

23

24

25

**P R O C E E D I N G S**

10:01:31   1

2

10:01:12   3      THE COURTROOM DEPUTY:  This is Multidistrict

4  Litigation case 15-2641 regarding Bard IVC Filters Products

5  Liability Litigation, on for telephonic conference.

6      Counsel, if you can all please announce again for the

7  record, starting with the plaintiffs.

8      MR. O'CONNOR:  Your Honor, this is Mark O'Connor and

9  I'm the co-lead counsel for the plaintiffs.

10:01:30   10      MR. MATTHEWS:  David Matthews for the plaintiffs.

11      THE COURT:  Any other plaintiffs' counsel?

12      All right.  How about defense counsel?

13      MR. NORTH:  Your Honor, Richard North for the

14  defendants.

10:01:58   15      MR. GAUDREAU:  Your Honor, this is Russell Gaudreau

16  for the defendants.

17      MR. CONDO:  Good morning, Your Honor.  Jim Condo for

18  defendants.

19      MS. HELM:  And good morning, Your Honor.

10:02:06   20  Elizabeth Helm for the defendants.

21      THE COURT:  Okay.  That's six names.  But I

22  understand we have 12 people on the call.  Who else is on the

23  call?

24      MR. GOSS:  Your Honor, this is Tim Goss for the

10:02:23   25  plaintiffs.  For some reason, I got dropped off and just got

10:02:26  1    added back in.  So I'm not sure if others got dropped as well.

2          MS. GUERRA:  Christina Guerra with Baron & Budd for

3    the plaintiffs.

4          THE COURT:  All right.  That's eight names.  Who are

10:02:43  5    the other four who are on the line?

6          THE JUDICIAL ASSISTANT:  Judge, it's Nancy.  I'm on

7    the line.

8          THE COURT:  Okay.  Jeff is also on the phone?

9          THE LAW CLERK:  Yes, Judge, I'm on the line as well.

10:03:03 10          THE COURT:  All right.  Any lawyers we missed?

11          For the plaintiffs I have O'Connor, Matthews, Goss,

12    and Guerra.  Any others?

13          And I have four for the defense:  North, Gaudreau,

14    Condo, and Helm.  Any others?

10:03:22 15          MR. NORTH:  Well, for the --

16          THE COURT:  Do we have anybody else on the call?

17          Okay.  Mr. O'Connor, I take it Mr. Lopez is not on

18    the call?

19          MR. O'CONNOR:  Your Honor, I did not hear from

10:03:39 20    Mr. Lopez one way or the other.  I assumed he was going to be

21    on the call, but I have not talked to him and did not hear him

22    join.

23          THE COURT:  Okay.  All right.  Counsel --

24          Go ahead.  Did you just say something, Mr. O'Connor?

10:04:03 25          MR. O'CONNOR:  I said I will text Ramon Lopez right

10:04:07   1     now.

           2                 THE COURT:  Okay.

           3                 All right.  Well, I set this call, as you all know,

           4     after I received the parties' filing on July 10th about the

10:04:22   5     status of settlements.  I've read that a couple of times.  I

           6     do want to say at the outset that you all should have told me

           7     about this going in.  It was very frustrating for me that you

           8     entered into an agreement to dismiss cases that were not

           9     finally settled.

10:04:46  10                 In my view, a case that is subject to a lawyers-only

          11     term sheet is not settled.  In fact, I don't know that

          12     plaintiffs' counsel have the authority to dismiss a case

          13     without their client's consent.  And I don't think I would

          14     have approved it, any matter that involved dismissal without

10:05:04  15     the client's final consent, because that takes the case beyond

          16     my control in a status where it is not settled and raises

          17     other serious concerns.

          18                 I don't think there's a way to undo it now given the

          19     fact that there is a process underway with lots of cases being

10:05:30  20     settled.  But, to me, this was clearly inconsistent with Case

          21     Management Order Number 42 which contemplated final

          22     settlements and should not have happened without you informing

          23     me of it.

          24                 What I want to do now is figure out the best course

10:05:45  25     to follow in light of what has happened.

10:05:49   1         So I have some questions based on what's been filed.

2    Let me ask those questions and then I'll be happy to hear

3    other comments you all want to make.

4         The filing that you made on the 10th confused me a

10:06:05   5    little bit because on page 3 it says that there were 4,642

6    cases settled, but on page 6 -- hold on just one moment -- on

7    page 6 it says that there were 4,332 cases dismissed.  So

8    there's a discrepancy in those numbers of 310 cases.

9         Could somebody explain that, please.

10:06:40  10         MR. NORTH:  Your Honor, this is Richard North.

11    People that were more directly involved can correct me if I'm

12    mistaken, but my present understanding is the difference is

13    the settlements included cases, 300 or so, that were not in

14    the MDL.  So the gross number of cases subject to the term

10:06:58  15    sheets is larger than the reference on page 6, which is a

16    total of the number of MDL cases that were part of those

17    settlements.

18         MR. GOSS:  Your Honor, this is Tim Goss.  That's my

19    understanding as well, what that discrepancy would be as well.

10:07:21  20         THE COURT:  Okay.  The filing says that 3,317 cases

21    have been resolved and the claimants have provided releases,

22    so there are an additional 921 claims advancing through the

23    administration process, with 94 claimants having rejected the

24    allocation in the aggregate settlement.

10:07:53  25         Is there any time limit within the master settlement

10:07:58  1    agreements for this process to be completed and, if not, what

2    is the timing when you believe these 921 cases will be

3    resolved?

4         MR. GOSS:  Your Honor, this is Tim Goss of Freese &

10:08:15  5    Goss.  First of all, the numbers have changed a bit because we

6    received an additional a little over 100 releases and since

7    the date we filed this brief, so now the 921 outstanding would

8    be 816.

9         And out of the total opt-outs, which were 94 at the

10:08:36 10    time we filed the brief, it's now 98.  So we have 816

11    outstanding.  So we have -- currently we have an October 4th

12    deadline.  So we would expect by October 4th we'd be able to

13    report back to the Court as to where we are as of that date.

14         THE COURT:  Okay.  Say that again, if you would,

10:09:17 15    Mr. Goss.

16         MR. GOSS:  Sure.  I'll speak louder.  So -- yes,

17    Your Honor.

18         So when we filed that brief, there were 921

19    outstanding claimants.  Since we filed our brief we have

10:09:31 20    received additional releases, so that number is now 816.  At

21    the time we filed our brief, Your Honor, there were 94

22    opt-outs.  That number is now 98.  We have a deadline by

23    agreement with Bard of October 4th to get the releases in.

24    And so we would anticipate that on October 4th we could

10:10:00 25    provide the Court with the outstanding deadline -- I'm sorry,

10:10:04  1    the outstanding releases as of that date.

2                   THE COURT:  All right.

3                   Mr. Goss, what has happened with the 98 opt-outs?

4    Have any of those filed new cases?

10:10:21  5                   MR. GOSS:  They have not.  And that's because, as the

6    tolling agreement provides, that when we give Bard a final

7    notice of opt-outs, that they have a certain time period after

8    that, after that deadline, after that final notice, to refile

9    their case in a federal court of competent jurisdiction.  So

10:10:42  10    the short answer to your question is they have not been

11    refiled.

12                   THE COURT:  I assume that final notice is somehow

13    tied to that October 4th deadline?

14                   MR. GOSS:  Yes, Your Honor.

10:11:08  15                   THE COURT:  All right.

16                   There's a statement in the joint filing, I can't

17    remember precisely what it said, but I inferred from it that

18    in addition to these 4,332 cases, there have been other

19    settlements by other plaintiffs' counsel with Bard, and I

10:11:47  20    guess my question is, number one, is that true?  And, number

21    two, if it is true, is it following the same kind of format

22    that has been described in the joint filing?

23                   MR. NORTH:  Your Honor, Richard North for the

24    defendants.  Mr. Gaudreau, settlement counsel, can correct me

10:12:06  25    if I'm wrong, but my understanding is that all of the cases

10:12:10   1    that are presently in Track 2 are subject to master settlement

2    agreements that are structured very similarly and that those

3    attorneys are now attempting -- plaintiffs' attorneys are

4    attempting to secure the releases prior to the November date

10:12:25   5    that I believe the Court has now set.

6           Of those cases, however, there are only 47 of those

7    cases, my understanding is, that have been dismissed with a

8    tolling agreement, and those were actually part originally of

9    the Freese & Goss settlements, that original settlement, and

10:12:45  10    then for some reason, which I'm not clear about, did not get

11    subject to the master settlement agreement in time.  They were

12    in Track 2 and they are now subject to that tolling agreement.

13    But only 47 cases has that occurred in, as I understand it.

14           THE COURT:  So if I understand you, Mr. North, you're

10:13:09  15    saying that of the dismissed cases, besides the 4,332 that are

16    addressed in this joint filing that you made, there are

17    another 47 that have been dismissed that are subject to a

18    similar kind of agreement?

19           MR. NORTH:  Yes, Your Honor.  And there's --

10:13:35  20           (overlapping voices)

21           MR. NORTH:  None of those cases have been refiled.

22    They are being processed through the same settlement structure

23    as Mr. Goss and Mr. Matthews' settlement.  That's my

24    understanding.

10:13:47  25           THE COURT:  What is the law firm?

10:13:49  1          MR. NORTH:  The Johnston law firm, I believe.

         2          THE COURT:  And have any of those claimants opted

         3  out?

         4          MR. NORTH:  That, I do not personally know.

10:14:04  5          MR. GAUDREAU:  Your Honor, this is Gaudreau.  They

         6  have not opted out.  There have been no opt-outs.  They're

         7  still in the process of getting released and signed.  Their

         8  deadline to provide releases is still in the future.

         9          THE COURT:  When is that?

10:14:24 10          MR. GAUDREAU:  I have to look in the agreement, but

        11  my expectation is it is probably coming up in the next month

        12  or so.  It probably coincides with the October date that Tim,

        13  Mr. Goss, referenced.  They were settled basically along the

        14  same lines as those cases.

10:14:41 15          THE COURT:  Are those 47 cases all of the cases that

        16  the Johnston law firm has or does that firm have cases either

        17  in Track 2 or were covered by the 4,332?

        18          MR. GAUDREAU:  I have to go back and look.  I think

        19  when you reference the number of cases in the filing as to how

10:15:01 20  many cases were subject to a situation where you have a

        21  dismissal with a tolling agreement, I think those numbers were

        22  actually included in the number we provided in the filing, and

        23  that is the universe.  They don't have other cases other than

        24  what was in the Freese & Goss settlement in that kind of

10:15:18 25  sidecar settlement that was done with their additional cases

10:15:21   1    that they had.

2              MR. GOSS:  Your Honor, Tim Goss --

3              THE COURT:  Hold on just a minute, Mr. Goss.

4              By sidecar, you mean the 47, Mr. Gaudreau?

10:15:34   5              MR. GAUDREAU:  Yes, Your Honor.  Yes.  That was an

6    accounting error on our end.  We thought that we captured all

7    the cases, but they actually had other cases that may have

8    been filed under another firm.  I'm not sure how it played

9    out.  But essentially they had the same terms as the other

10:15:49   10   cases as far as Freese & Goss know.

11             THE COURT:  Okay.  Mr. Goss.

12             MR. GOSS:  Sure.  I was just going to state that they

13   do have cases in our 4,332, and what I've inferred from all of

14   this is that they have an additional 47 cases.

10:16:07   15             THE COURT:  Okay.

16             Mr. North, in your description you said all Track 2

17   cases are under similar agreements.  Could you explain what

18   you mean by that, please.

19             MR. NORTH:  I was talking about the structure of the

10:16:20   20   agreement with the master settlement agreement with the

21   plaintiffs' attorneys, then go and secure releases and present

22   their clients with their allocation of the settlement funds

23   that Bard has agreed to pay for the inventory.

24             I think that all of those other deals, as I

10:16:39   25   understand it, that are on Track 2 are structured similarly.

10:16:44  1      MR. GAUDREAU:  Your Honor, this is Russell Gaudreau.

2      They are structured similarly, except for none of them have a

3      tolling agreement assigned to them because all of them were

4      scheduled to have releases provided to us just before the

10:17:01  5      November deadline for Track 2.  So it was our assumption we

6      would have all of the releases in and there would be no

7      issue -- there would be no reason to have to protect opt-outs

8      in those settlements.

9      THE COURT:  So your expectation, as I understand it,

10:17:16 10      Mr. Gaudreau, is that everything left in Track 2 will have a

11      release executed before the Track 2 deadline arrives; is that

12      right?

13      MR. GAUDREAU:  Yes, Your Honor.  With one -- with a

14      limited exception.  I just want to make sure it's clear that

10:17:35 15      just like the Freese & Goss arrangements, agreements, the

16      other settlement agreement provides for this limited opt-out

17      right to the extent that if somebody does not want to

18      participate, and so those cases will still be in the MDL, they

19      will not be dismissed, as like -- as what happened with the

10:17:52 20      Freese & Goss situation, but, Your Honor, there could be a

21      limited number of cases that opt out of those deals, but they

22      will not be dismissed that remain in Track 2.

23      THE COURT:  All right.  So if they opt out before the

24      Track 2 deadline, then presumably they would get remanded or

10:18:13 25      transferred to their original district; is that right?

10:18:17   1          MR. GAUDREAU:  Yes, Your Honor.  That's correct.

           2          THE COURT:  So I take it from what you're saying,

           3   Mr. Gaudreau, that it's not anticipated that there will be any

           4   of the current cases in Track 2 that will find themselves in a

10:18:30   5   position of having been dismissed and then opting out of the

           6   settlement and having to be subject to a tolling agreement; is

           7   that right?

           8          MR. GAUDREAU:  That is correct, Your Honor.

           9          THE COURT:  Okay.  Let me make a note.  Just a

10:18:49  10   minute.

          11          So, stated differently, the cases that remain in

          12   Track 2, as you understand it, will never be subject to a

          13   tolling agreement; right?  They'll just stay in the MDL until

          14   I send them home.

10:19:08  15          MR. GAUDREAU:  Correct, Your Honor.  They will not be

          16   dismissed pursuant to a tolling agreement.

          17          THE COURT:  My -- the numbers I have from our court

          18   personnel is that there are 1,911 cases that are remaining in

          19   the MDL.

10:19:46  20          Does that correspond with the number you understand,

          21   Mr. Gaudreau, are subject to Track 2 agreements?

          22          MR. GAUDREAU:  Your Honor, can you give me one

          23   second, I need to go to my sheet here.  I believe that Track 2

          24   settlement number -- just bear with me, please, Your Honor.

10:20:07  25   We have 1,000- -- 1,888 cases in Track 2 that are resolved.

10:20:16   1   It's my understanding that there were 109 cases, when we went

2   back and looked at this, that either elected to be remanded or

3   did not make an affirmative election.  But the Court has not

4   yet remanded them.  So I think there are -- as I said, I think

10:20:30   5   there are 1,888 Track 2 cases that are subject to settlements.

6   There's -- I'm not sure if my math is wrong, but there's -- we

7   saw 109 cases that are not part of the settlement that may

8   still be sitting awaiting to be remanded.

9               THE COURT:  So those are cases, as you understand it,

10:20:48  10   that are in Track 2 but have not been part of this settlement

11   we've been discussing for the past two or three minutes?

12               MR. GAUDREAU:  Yes, Your Honor.  Yes, Your Honor.

13               MR. NORTH:  Your Honor, Richard North, if I could

14   interject.  We've been looking at this and Mr. Gaudreau would

10:21:07  15   not be aware of this, but we have been looking at the

16   inventory on our database and I believe there are a small

17   number of cases, probably several dozen, that fell through the

18   cracks we had just discovered.  These are mostly cases that

19   had service issues or profile form issues in some of the

10:21:27  20   previous waves, and once those were rectified they somehow did

21   not make it onto a list.

22               I think that we should get that list for the Court,

23   they did fall between the cracks somehow, so that they could

24   be remanded or transferred at this point.

10:21:46  25               THE COURT:  Mr. North, are those separate from the

10:21:48   1   109 cases that Mr. Gaudreau just described?

2          MR. NORTH:  I think that they're part of those cases,

3   Your Honor, but I would have to reconcile my database on the

4   cases with Mr. Gaudreau's settlement numbers there.  We could

10:22:06   5   do that --

6          THE COURT:  Well -- okay.

7          Coming back to you, Mr. Gaudreau, as to the number of

8   cases you described as 109 that are not subject to a

9   settlement agreement, is it your understanding -- it sounds

10:22:22  10   like there's some that might have just fallen through the

11   cracks, as Mr. North said, but is it your understanding that

12   those are cases where settlement discussions have occurred and

13   the parties or the counsel have declined to reach a settlement

14   and, therefore, at the end of the Track 2 period, those simply

10:22:45  15   will be remanded or transferred?  Is that the status that you

16   understand?

17          MR. GAUDREAU:  Yes, Your Honor.  And I have to admit

18   I'm not completely -- it's not completely clear to me.  My

19   guess is it more so people that have fallen through the

10:23:01  20   cracks, but my understanding is when the Track 2 deadline

21   lapses, those cases will simply just go back and be remanded

22   pursuant to Your Honor's order.

23          THE COURT:  Okay.  Well, I think one thing we need to

24   do is we need to have you all talk, Mr. North and Mr. Gaudreau

10:23:36  25   and whoever else ought to be in that discussion, and provide

10:23:41  1    me with an update of the status of Track 2 cases.  That is the

       2    number that are subject to a settlement and will be resolved

       3    by the time we get to the end of the Track 2 period.  And

       4    those that are not subject to a settlement, whether they have

10:23:58  5    rejected a settlement or whether they fell through the cracks,

       6    we're still going to let the Track 2 period time run its

       7    course.  But I would like to have a handle on exactly what the

       8    status is of those Track 2 cases to make sure that we don't

       9    have any fall through the cracks on our side.  So I'll ask you

10:24:20 10    all to provide that update.  We'll set a date in a moment.

      11         MR. NORTH:  Certainly, Your Honor.  This is

      12    Richard North.

      13         THE COURT:  Let's come back for a minute, then, to

      14    the 4332 cases, which I'll assume for the moment include the

10:24:45 15    47 cases that the Johnston firm has that were dismissed with

      16    tolling agreements.

      17         I've received an update today of 98 opt-outs, 816

      18    still working their way through the process, with an

      19    October 4th deadline.

10:25:05 20         And my understanding from what was said a moment ago

      21    is that the time for those cases to be refiled if they were

      22    going to be refiled as a new case has not arrived because the

      23    point in time for plaintiffs' counsel to give Bard a final

      24    opt-out list has not arrived.

10:25:27 25         I don't want those cases to be refiled as new cases

10:25:32  1    for reasons that were addressed in the order that I entered

2    because then they're no longer the case that was in the MDL

3    and, therefore, although I assume issue preclusion would

4    apply, they won't have law of the case coming with them back

10:25:50  5    to the court that gets them, they won't have all of the

6    depositions that have been taken, they won't have the many

7    rulings we've made.  So those should land on the desk of

8    another judge as a remand or a transfer from me rather than as

9    a new filing.

10:26:09 10        So what I want to do, I think, is -- and I'll be

11   interested in your thoughts as to how we do it -- but I want

12   to vacate the settlements in the 98 opt-outs that we know of

13   so far, which will return them to the MDL, and then I can

14   transfer or remand them to the courts.  And, obviously, you

10:26:32 15  can continue your settlement discussions with those

16   individuals if they're interested, but at least they then go

17   back to the courts with the body of work that's been done in

18   the MDL as part of them.

19        And I want to have in place a procedure to ensure

10:26:47 20  that any other opt-outs from among the 816 that are currently

21   being worked on, and the 47 if they're not part of that 816,

22   so that any of those opt-outs also have their dismissals

23   vacated so they come back into the MDL and they get sent to

24   other districts with the MDL rulings and discovery in place.

10:27:15 25        Are there any thoughts or comments on that or on how

10:27:21  1    best to accomplish it?

2           MR. GAUDREAU:  Your Honor, this is Russell Gaudreau.

3    Given the fact that we have an October deadline to provide

4    releases, one suggestion could be that we provide you with a

10:27:39  5    list within a reasonable time after that date of the cases

6    that have not provided releases.  We then vacate the

7    dismissals associated with those cases, which will reinstate

8    them in the MDL, and you simply remand or transfer them after

9    that.  That would be my suggestion, if that's possible.

10:28:00 10           THE COURT:  Other thoughts?

11           MR. GOSS:  This is Tim Goss.  That, of course, works

12    for us as well.

13           And I would alert the Court, too, I suspect, because

14    I've looked at the 98, and as I understand it, that all the 98

10:28:18 15    were all direct files, I suspect that any future opt-outs that

16    we have out of the 816, my suspicion is those are also

17    direct-filed cases, so obviously if we could get with Bard and

18    agree with what the proper transferee or transferor court

19    would be in those cases.

10:28:41 20           THE COURT:  Right.  If they were originally -- yeah,

21    I guess it would be transferee because they were originally

22    filed here and I'm sending them to those other courts.  But we

23    would need to agree on a court those could be sent to.

24           Mr. Matthews, I think you are on the phone.  Are you

10:28:59 25    in agreement with this?

10:29:03   1          MR. MATTHEWS:  Yes, Your Honor, I am.  I do believe
         2    there is a transferee court selected in the short-form
         3    complaint that could assist the parties and the Court in
         4    determining the proper transferee court.
10:29:22   5          THE COURT:  All right.
         6          All right.  Understanding that the deadline is
         7    October 4th, would you all be in a position to give me that
         8    list by a couple of weeks after October 4th?
         9          MR. GOSS:  This is Tim Goss.  I think that would be
10:30:01  10    fine, Your Honor.
        11          MR. MATTHEWS:  This is David Matthews.  And I agree
        12    with that, Judge, and I do believe that, over time, some of
        13    the these potentials that had rejected may have changed their
        14    mind at that point.  I just want to alert the Court the
10:30:19  15    numbers may change somewhat in favor of more accepting an
        16    offer.  But, yes, I think two weeks would be fine.
        17          THE COURT:  Looks like October 4th is a Sunday.
        18          So what I'm going to say in the order is that by
        19    October 23rd, which is a Friday, parties or counsel in the
10:31:01  20    case will provide me with a list of everyone who has opted out
        21    of the settlement whose case has been dismissed, with the
        22    appropriate transferee court, and at that point I will vacate
        23    the dismissals of those cases and I will transfer them to the
        24    appropriate transferee court unless they happen to be a case I
10:31:30  25    got in the MDL, in which event I'll recommend a remand by the

10:31:38   1   judicial panel.  And we will send along with those cases the

           2   same order that we've been sending to other transferee courts

           3   that describe the history of the MDL and the designated items

           4   of record, et cetera.

10:31:57   5        And I'm going to include in the order a requirement

           6   that no opt-out case be refiled on its own.  In other words,

           7   they all remain alive by coming back into the MDL and being

           8   transferred rather than by a new case being filed.

           9        And I'm going to assume that the 47 Johnston law firm

10:32:28  10   cases are part of the 432.  But, in any event, it will apply

          11   to those 47 cases and any others that have been dismissed

          12   without a settlement in place where somebody opts out of the

          13   settlement.

          14        Any comments or questions on that?

10:32:56  15        Okay.  Coming back to the Track 2 cases, I'm going to

          16   ask Mr. North and Mr. Gaudreau and any plaintiffs' counsel

          17   involved to make a joint filing by July 31st on the status of

          18   Track 2 cases.  That will inform me of how many are under a

          19   settlement agreement; how many are not under a settlement

10:33:34  20   agreement; any other information about things that have fallen

          21   through the cracks, such as whether there are cases where

          22   something other needs to be done because of a lack of service

          23   or some other problem that needs to be addressed, just so

          24   we're on top of where things stand in Track 2.

10:33:54  25        And we'll do it with the understanding that by the

10:34:00   1    time we get to the end of the Track 2 period we're going to

2    have a lot the cases that have been settled that will be

3    dismissed, but we'll have some number of cases that haven't

4    been settled that will be either transferred or remanded.  And

10:34:14   5    if we can get just the current information you have as of

6    July 31st on Track 2 cases, that's what I'm looking for.

7            Any questions on that?

8            MR. GAUDREAU:  Your Honor, this is Russell Gaudreau.

9    The one issue doing it by July 31st, and I don't have the

10:34:34  10    agreements in front of me for those 1,888 cases that are

11    subject to master settlement agreements, but I believe their

12    deadline to provide releases is at some point in October.  So

13    it may be that they don't have releases like the Freese & Goss

14    settlement tab because of the time because they basically

10:34:59  15    still have time to reach out to their claimants.

16            But we will provide whatever information we can on

17    the 31st.  Just so you know, under the agreement they have

18    more time.  It has to do with the payment dates and all that

19    information.  So they won't be as mature as the Freese & Goss

10:35:19  20    settlement, but they will be on track to doing it and they

21    have the same limited number of opt-outs in them.

22            Just so it's clear.

23            THE COURT:  When you say the same limited number of

24    opt-outs, you mean to trigger payment from the defendant; is

10:35:33  25    that right?

10:35:36   1          MR. GAUDREAU:  Correct, Your Honor.

           2          THE COURT:  Okay.

           3          MR. NORTH:  Your Honor --

           4          THE COURT:  My understanding --

10:35:40   5          Go ahead, Mr. North.

           6          MR. NORTH:  Yes.  I'm sorry, Your Honor.

           7           We can easily by the 31st provide you with the list

           8  of all those cases that are subject to a master settlement

           9  agreement also in Track 2 and those cases that are not

10:35:56  10  subject -- in Track 2 that are not subject to such an

          11  agreement that are probably ripe for remand or transfer.

          12          MR. GAUDREAU:  I'm sorry --

          13          THE COURT:  No, no.  I understand your point,

          14  Mr. Gaudreau, about the fact some of those cases subject to a

10:36:14  15  master settlement agreement might yet become opt-outs by the

          16  time we get to the end of the Track 2 period.

          17           But in addition to that basic division, Mr. North,

          18  between those subject to settlement agreement and those not, I

          19  would appreciate what information you could provide me about

10:36:32  20  those that are not, just so we understand their nature,

          21  whether we should go ahead and remand or transfer them

          22  immediately, whether there's anything else that needs to

          23  happen.  I just don't know exactly what all occurred when they

          24  fell through the cracks and I want to make sure I understand

10:36:50  25  the status of those cases.  So if you could give me an update

10:36:54   1   on those, that would be helpful.

          2            MR. GAUDREAU:  Absolutely, Your Honor.

          3            THE COURT:  Jeff, do you have questions that we

          4   haven't covered in the call?

10:37:14   5            THE LAW CLERK:  I have one comment.  For cases that

          6   will be transferred or remanded, either by November 2nd or

          7   before, if the venue is New Jersey or Arizona, if they could

          8   explain why diversity jurisdiction exists, that would be

          9   helpful.

10:37:36  10            THE COURT:  Yes.  That's a good point.

         11            So, yeah, I think your point, Jeff, would be, then,

         12   that when we get -- when we get a list of cases on

         13   October 23rd that have opted out of the settlement and as to

         14   which we're going to vacate dismissal -- and we've already

10:38:05  15   indicated that we want the transferee court identified or, if

         16   it was in the original MDL, the remand court identified -- but

         17   if the court to which they will go is Arizona or New Jersey,

         18   we need an explanation as to why there's diversity

         19   jurisdiction so that we either can keep it here in my docket

10:38:33  20   if it's an Arizona case, or we can transfer it to a New Jersey

         21   federal court if there's diversity jurisdiction.  If there

         22   isn't diversity jurisdiction, then we just dismiss for lack of

         23   subject matter jurisdiction.

         24            Is that your point, Jeff?

10:38:55  25            THE LAW CLERK:  Yes, that's correct.

10:38:57  1     THE COURT:  Okay.  So we'll need that on the

2     October 23rd filing.  We'll need you to address diversity

3     jurisdiction for the opt-out cases that are either Arizona or

4     New Jersey cases.

10:39:04  5     And obviously when we get to the end of Track 2,

6     we'll need the same thing for the cases that aren't settled

7     because we'll need to know, if they're Arizona and New Jersey

8     cases, do we keep them here and send them to New Jersey or do

9     we have a lack of diversity jurisdiction.

10:39:22  10     Any questions on that?

11     Nancy, did you have questions that we ought to cover?

12     THE JUDICIAL ASSISTANT:  No, not really.  I was just

13     concerned about the New Jersey and Arizona as well.  Jeff

14     covered it.

10:39:43  15     THE COURT:  Okay.  All right.

16     Do any of the plaintiffs' counsel have additional

17     thoughts that you want to express before we conclude the call?

18     Okay.  How about from the defense side?

19     MR. NORTH:  Nothing for the defendants, Your Honor.

10:40:06  20     THE COURT:  All right.  I'm going to enter an order

21     that will reflect what we've talked about today, the July 31st

22     report, the October 23rd report, and the order that no

23     dismissed case be refiled as a new case because we're going to

24     have them all come back into the MDL if they don't finally

10:40:31  25     settle.  And we'll get that order out in the next day or two.

10:40:35   1                    Okay.  Thank you all.

           2                    MR. NORTH:  Thank you, Your Honor.

           3                    THE LAW CLERK:  Your Honor --

           4                    (overlapping voices)

10:40:42   5                    THE COURT:  Hold on a minute, Counsel.

           6                    Jeff, go ahead.

           7                    THE LAW CLERK:  This is Jeff again.  We probably

           8    should have a date, if we don't already, for after the

           9    November 2nd Track 2 deadline ends for another status report.

10:40:57  10    I know we were initially getting monthly reports.  But we

          11    should have a date, I think, as well, after November 2nd.

          12                    THE COURT:  Yeah.  I agree.  If we don't, let's put

          13    that in the order too, Jeff.  I'll send you a revised draft

          14    shortly and we can make sure we get that in as well.

10:41:26  15                    THE LAW CLERK:  Okay.

          16                    THE COURT:  Okay.  Thanks everybody.

          17              (End of transcript.)

          18                              *  *  *  *  *

          19

          20

          21

          22

          23

          24

          25

**C E R T I F I C A T E**

     I, PATRICIA LYONS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

     I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control, and to the best of my ability.

     DATED at Phoenix, Arizona, this 1st day of April, 2021.


s/ Patricia Lyons, RMR, CRR
Official Court Reporter