1
2
3
4

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

5   **In Re: Bard IVC Filters**              ) **MD-15-02641-PHX-DGC**
    **Products Liability Litigation**        )
6                                            ) Phoenix, Arizona
                                             ) **December 8, 2020**
7   _____) 2:00 p.m.

8
9
10

11          **BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE**

12              **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

13                  **TELEPHONIC CONFERENCE**

14
15
16
17
18
19
20

21   Official Court Reporter:
     Patricia Lyons, RMR, CRR
22   Sandra Day O'Connor U.S. Courthouse, Ste. 312
     401 West Washington Street, SPC 41
23   Phoenix, Arizona   85003-2150
     (602) 322-7257
24
     Proceedings Reported by Stenographic Court Reporter
25   Transcript Prepared with Computer-Aided Transcription

```
 1              T E L E P H O N I C   A P P E A R A N C E S

 2      For the Plaintiffs:

 3              Beus Gilbert, PLLC
                By: MARK S. O'CONNOR, ESQ.
 4              701 N. 44th St.
                Phoenix, AZ  85008
 5
                Freese & Goss, PLLC
 6              By: TIM GOSS, ESQ.
                3500 Maple Ave., Ste. 1100
 7              Dallas, TX  75219

 8              Lopez McHugh
                By: RAMON ROSSI LOPEZ, ESQ.
 9              100 Bayview Circle, Suite 5600
                Newport Beach, CA  92660
10
                Goldenberg Law PLLC
11              By: STUART GOLDENBERG, ESQ.
                800 LaSalle Ave., Ste. 2150
12              Minneapolis, MN  55402

13              Moody Law Firm, Inc.
                By: WILLARD J. MOODY, JR.
14              500 Crawford St., Ste. 200
                Portsmouth, VA  23704
15

16      For Defendants:

17              Nelson Mullins Riley & Scarborough
                By: RICHARD B. NORTH, JR., ESQ.
18              201 17th Street NW, Suite 1700
                Atlanta, GA  30363
19
                Snell & Wilmer
20              By: JAMES R. CONDO, ESQ.
                400 East Van Buren
21              Phoenix, AZ  85004

22              Also present:  RUSSELL GAUDREAU

23

24

25
```

**P R O C E E D I N G S**

10:01:31  1

2

3          THE COURTROOM DEPUTY:  Multidistrict Litigation

4     15-2641, In Re Bard IVC Filters Products Liability

14:00:32  5     Litigation, on for telephonic motion hearing.

6          Counsel, please announce for the record.

7          MR. GOSS:  Tim Goss for the plaintiffs.

8          MR. O'CONNOR:  Mark O'Connor for the plaintiffs.

9          MR. GOLDENBERG:  Stuart Goldenberg for the

14:00:50  10    plaintiffs.

11          MR. MOODY:  Will Moody for the plaintiffs.

12          MR. LOPEZ:  Your Honor, I think I was on mute.

13     Ramon Lopez on behalf of the plaintiffs as well.

14          THE COURT:  Okay.  Let's hear defense counsel.

14:01:11  15          MR. NORTH:  Richard North for the defendants.

16          MR. CONDO:  James Condo for the defendants.

17          I heard Mr. North and Mr. Condo.  Who else from the

18     defense?

19          MR. GAUDREAU:  Russell Gaudreau for the defense,

14:01:30  20     Your Honor.

21          THE COURT:  Anybody else?

22          Okay.  Counsel, I've read the various submissions

23     that have come in over the last month or two and I want to

24     talk through the status of the cases as I understand them.  I

14:01:55  25     want to first talk about the cases that are still in the MDL.

14:01:58  1   So those would be the Track 2 cases.

2          Then after that I want to talk about the cases that

3   were dismissed without prejudice and what's happening with

4   those.

14:02:13  5          Based on the most recent filings you've made,

6   including today, my understanding of the Track 2 cases is as

7   follows:  I understand there's about 950 or so cases where

8   there have been releases signed and settlements concluded.

9          In the filing on December 4th, the parties provided

14:02:37 10   some math to get to 948.  That doesn't work in my -- because

11   I added it up, it's more like a thousand but there may be a

12   typo or something in there.  But anyway, there's 950 to 1,000

13   cases where releases have been signed, and the parties are

14   asking that they have until March 15th of next year to

14:03:02 15   finalize the settlements in those cases.

16          A second category of cases that remain in Track 2

17   are cases that the parties are now suggesting should be

18   remanded or transferred.  In the filing that was made on

19   November 13th, there's two charts for these cases.  There is

14:03:35 20   chart A, which includes about 20 cases and which the parties

21   say are ready to be remanded because those are individuals

22   who have opted out.  And then there is -- actually, I take

23   that back.  I think Exhibit A are cases that people have

24   opted out, but they are in the category of the Smith cases to

14:04:09 25   be reinstated.  So let's talk about those.

14:04:14   1        Exhibit D to the November 13th filing -- somebody

2        has their phone on speaker and you are making a lot of noise.

3        If you guys could mute your phones unless you're talking,

4        that would be helpful.

14:04:32   5        The November 13th filing also has an Exhibit D that

6        has 123 pages of cases with about five cases per page, so

7        something like 615 cases.

8        The parties indicate that they think these cases

9        should be remanded.  I'm looking at page 3 of the

14:04:55  10   November 13th filing and the parties say that only a small

11   number of these plaintiffs have actually opted out.  However,

12   for a variety of reasons, the other plaintiffs have not

13   signed a release as of this date.  The parties are hopeful

14   that a majority of those plaintiffs will eventually finalize

14:05:13  15   this settlement, but they're listed in Exhibit D to be

16   transferred back to their original or transferred to their

17   home courts.  So that's about 615 or so cases.

18        And then also in the November 13th filing is

19   Exhibit C that identifies about 30 cases that lack

14:05:37  20   jurisdiction and the parties propose that those be dismissed.

21        My first question for you is whether those three

22   categories, the 950 or so that have been settled and you

23   wanted until March to finalize, the 615 or so that are to be

24   transferred, and the 30 or so that are to be dismissed for

14:06:01  25   lack of jurisdiction, whether that encompasses all of the

14:06:05  1    Track 2 cases, or are there other cases in Track 2 that are

2    not included in one of those three categories?

3            MR. NORTH:  Your Honor, can you hear me?

4    Richard North.

14:06:24  5            THE COURT:  I can now.

6            MR. NORTH:  I'm sorry, I had it on mute.

7            That is my understanding, that that accounts for all

8    of the cases.  Now, when we finally knock them out or get

9    them transferred or dismissed, I can't promise the Court

14:06:41  10   there may not be one errant one or two that we somehow missed

11   in our database.  But that is supposed to be an exhaustive

12   accounting.

13           The one thing I would note, though, is that those

14   numbers keep shifting in that I believe we received 70 or 80

14:06:53  15   more releases since we filed the report on Friday.

16           THE COURT:  Those would be releases of people who

17   would have been in the Exhibit D group to be transferred?

18           MR. NORTH:  Yes, Your Honor.

19           THE COURT:  Okay.

14:07:13  20           Do plaintiffs agree that those categories encompass

21   all of the Track 2 cases, assuming there isn't a straggler or

22   two somewhere?

23           MR. LOPEZ:  Your Honor, this is Ramon Lopez.  The

24   difficulty we have with that is really not -- I mean, there's

14:07:30  25   probably hundreds of lawyers out there that still have cases.

14:07:36   1   We really have to rely on the defendants to maybe keep track

2   of that.  I know that I've been able to respond as to my

3   cases for what's on that list, but I wouldn't be -- I'm not

4   sure how we actually find out whether or not there are some

14:07:59   5   that are on the list that shouldn't be or not on the list

6   that should be.

7        So we're relying really on Mr. North, Mr. Gaudreau,

8   who are keeping, obviously, universal track of those sorts of

9   things.  We're really not.  I don't know how we could,

14:08:17   10  frankly.

11       THE COURT:  All right.  I'm going to assume for a

12  moment those include all of the Track 2 cases.

13       I would like to know more about what you said in the

14  November 13th memo with respect to the 615 or so cases in

14:08:41   15  Track 2 that are listed in Exhibit D for transfer.

16       You say in the memo on page 3, this is Docket 21726,

17  "The parties note that only a small number of these

18  plaintiffs have actually opted out of the settlements, for a

19  variety of reasons.  The other plaintiffs have not signed a

14:09:02   20  release as of this date.  The parties are hopeful that a

21  majority of those plaintiffs will eventually finalize their

22  settlements."

23       My understanding, notwithstanding that statement, is

24  the parties are in agreement that those 615 cases should be

14:09:17   25  transferred, with the exception of a few that may have opted

14:09:21    1    into a settlement.  Is that correct?

            2            MR. NORTH:  Your Honor, Richard North for the

            3    defendants.  We believe, consistent with the Court's previous

            4    orders, that if people have not signed releases by now, they

14:09:42    5    were set to be dismissed after the report I believe in

            6    November.  So we have put them on that list.  Obviously, we

            7    continue to get additional releases.  But the defendants

            8    don't have any control over the timing of the releases that

            9    are being returned to us by the plaintiffs' attorneys.

14:10:02   10            THE COURT:  You said dismissed.  I think you meant

           11    transferred, Mr. North.

           12            MR. NORTH:  Yes.  I'm sorry, Your Honor,

           13    transferred.

           14            THE COURT:  All right.

14:10:16   15            Well, yeah, you're right.  We did set that deadline.

           16            What we're going to do is, before we finish today's

           17    call, is set a date within the next few weeks for you all to

           18    submit a final chart of cases to be transferred that will

           19    include these cases in Exhibit B, and I'll be specific about

14:10:37   20    the information that needs to be included.  But if you've

           21    gotten another 70 or 80 releases, then obviously those will

           22    come out of the chart.  But we wanted to do this transfer

           23    early in January, so we're going to need to get a finalized

           24    list from you all of everything included.

14:10:59   25            Let's talk for a minute -- we're getting a lot of

14:11:09   1   static on the line.  I don't know if we can do anything about

           2   that.  Can you all still hear me?

           3           MR. LOPEZ:  I can hear you fine.  I hear the static.

           4   I can hear you fine, Your Honor.

14:11:25   5           THE COURT:  Okay.  We'll keep going, then.

           6           With respect to the cases that were dismissed

           7   without prejudice, in the October 23rd memo, the number that

           8   you provided for those was 4,347.  That was a bit higher than

           9   the number that you had provided in July by 20 or 30 cases.

14:11:48  10   But I'll assume that's the approximate number.

          11           And it appears from your recent filings that there

          12   are a couple of categories we ought to talk about.

          13           First are the plaintiffs dismissed without prejudice

          14   who have opted out of the settlement.  In the December 4th

14:12:09  15   filing, you said there were 149 of them.  In the filing you

          16   made today, you said that there were 140 of them because

          17   eight had decided to accept their settlements, but that -- I

          18   think there's one missing because there were 149 not 148

          19   mentioned in the December 4th filing, so that is a bit of a

14:12:40  20   discrepancy.

          21           But my understanding, then, is that these 140 or so

          22   people whose cases have been dismissed and who have opted out

          23   will need to have their cases reinstated, and then they will

          24   be included in the January order that transfers them to their

14:13:01  25   home districts.  Is that consistent with your understanding?

14:13:08    1          MR. GOSS:  Yes, Your Honor.  This is Tim Goss.  And

            2    the reason for the one missing plaintiff, it was a formatting

            3    issue, so the correct number is 140.  And those 140, those

            4    cases should be reinstated and transferred.

14:13:31    5          THE COURT:  Okay.

            6          Just one second.  Let me look at something.

            7          Mr. Goss, as I mentioned a moment ago, in the

            8    November 13th memo the parties Exhibit A, which was a list of

            9    20 plaintiffs who had opted out, people whose cases have been

14:14:06   10    dismissed without prejudice.  Am I correct in assuming those

           11    20 people are included in this 140?

           12          MR. GOSS:  Your Honor, I'm not familiar with that

           13    20.  But I do know the 140 is the whole universe of cases

           14    where we've had opt-outs.  So --

14:14:30   15          THE COURT:  And you -- go ahead.

           16          MR. GOSS:  Your Honor, I'm sorry, I'm not familiar

           17    with the 20, I don't have the filing in front of me.  Maybe

           18    Mr. North can address that.  But the 140 is the universe of

           19    opt-outs that we currently have for our group of plaintiffs.

14:14:51   20          THE COURT:  Mr. North.

           21          MR. NORTH:  Yes, Your Honor, that's my

           22    understanding, is that those 20 are subsumed in the 140 that

           23    was referenced today.

           24          THE COURT:  Okay.  So we have 140 who have opted

14:15:08   25    out.  And then, based on the December 4th filing, there's

14:15:14   1   about 217 that are unresolved because they're either still

2   considering the settlement or they are deceased or they're

3   nonresponsive or they cannot being located.  And I recognize

4   that number is probably moving as well.

14:15:31   5         My question is this:  Of the 4,347 or so cases that

6   were dismissed without prejudice, is it true to say that the

7   only cases that have not resulted in a settlement and a

8   release are these 140 opt-outs and the 217 unresolved cases?

9         MR. GOSS:  Yes, Your Honor.  A little over

14:16:00   10   90 percent of the clients have provided releases.

11         THE COURT:  All right.  So as to the -- by my math,

12   if you subtract 140 and the 217 from the number I had in the

13   October 23rd filing, that means there's about 3,918 of the

14   cases that were previously dismissed without prejudice that

14:16:25   15   have now been fully resolved with releases.  Is that --

16         MR. GOSS:  Your Honor, the number -- the number -- I

17   asked that same exact question of my staff this afternoon.

18   The number I got was 3,919.  And it may be that one number

19   that we keep -- that we keep being off by, but my number is

14:16:47   20   3919.

21         THE COURT:  Okay.  And as to the 217 that remain

22   unresolved, you would like a status conference on

23   January 27th to talk about where those stand; is that right?

24         MR. GOSS:  That's correct, Your Honor.  I think we

14:17:08   25   made progress in the last 60 days.  A little over a hundred

14:17:10  1   were resolved.  I think we can continue to make progress.

       2   It's just kind of slow treading right now.

       3          THE COURT:  Okay.

       4          Well, what that means to me, then, is that what we

14:17:24  5   need to do -- well, first of all, I will grant additional

       6   time to March 15th for the remaining Track 2 cases to be

       7   resolved, that is the 950 or so where parties have accepted

       8   the settlement.  So we will grant that extension as you have

       9   requested.

14:17:50 10          We will enter an order dismissing for lack of

      11   jurisdiction the 30 cases that are in Exhibit C to the

      12   November 13th report, although I understand, Mr. North, you

      13   sent us an e-mail about one of those that was included by

      14   error.

14:18:09 15          MR. NORTH:  Yes, Your Honor.  Right.

      16          THE COURT:  We'll go ahead and do those dismissals.

      17          And then, what we need to do is get from you a chart

      18   for transfers or remands that includes the 615 or so cases

      19   that are in Exhibit B to the November 13th filing, which

14:18:35 20   apparently might have changed a bit in numbers, but also

      21   includes the 140 cases that have been dismissed that are also

      22   going to be transferred.  Because we only want to do one

      23   transfer order.  We think that is much easier for receiving

      24   districts to get.  So we want to send the Track 2 cases and

14:18:57 25   the dismissed cases to other courts all in one order.  So

14:19:01  1   we're going to need a chart from you that includes both

2   categories.

3           And what I'm going to ask you to do in that chart is

4   add a column at the end that indicates whether the case is a

14:19:16  5   Track 2 case or a dismissed case so we can make sure, before

6   we enter the order transferring those cases, we reinstate the

7   dismissed cases.  Just to have a clear record that they're

8   back in the MDL before we enter the transfer order.  That

9   way, with that chart, we should be able to do one transfer

14:19:40  10  order that gets rid of these 600 and something Track 2 cases

11  and the 140 dismissed cases.

12          We're going to need to have you figure out which

13  districts we're transferring to on a few of these.

14  There's -- I notice one case in Exhibit D -- actually two

14:20:06  15  cases in Exhibit D where you say the district isn't

16  identified in the complaint.  That doesn't help us.  We need

17  to know from you which case -- or which district to transfer

18  to.  So please work those out before you submit the chart

19  because we need to have the precise district it's going to.

14:20:34  20          And the other thing I want to mention is that

21  previously in one of the filings since October, and I can't

22  remember which, you indicated that there were two cases to be

23  remanded by the MDL panel and the rest were to be

24  transferred.

14:20:51  25          In the charts you've given us recently, you don't

14:20:54  1    have any being remanded.  So we need to find those two cases

2    that are subject to remand rather than transfer and have them

3    included in a separate chart so we know what we're remanding

4    and what we are transferring.

14:21:11  5            Are there any questions about what I've just said?

6            MR. NORTH:  None from the defendants, Your Honor.

7            MR. LOPEZ:  Your Honor, Ramon Lopez.  I hesitate to

8    ask this, I probably should know the answer, but what is the

9    difference between remand and transfer, I guess is my

14:21:33 10   question.

11           THE COURT:  Well, the remand, Mr. Lopez, are the

12   cases -- the remand are the cases that we got through the MDL

13   panel, and the MDL panel remands them to the original court.

14           The transfers are the cases that were directly filed

14:21:50 15   in Arizona and I just transfer those to their courts by Rule

16   1404(a).  They don't go back through the MDL panel.

17           MR. LOPEZ:  Okay.  I understand now.  Thank you,

18   Your Honor.

19           MR. NORTH:  Your Honor, this is Richard North.  I

14:22:03 20   will verify this for the Court, but I have some recollection

21   that those two cases originally identified for remand, that

22   we subsequently got releases on those.  But I will verify

23   that for the Court.

24           THE COURT:  Okay.  Yeah, if you could just make sure

14:22:20 25   of that we before we submit this chart.  Because we're going

14:22:22  1  to take that chart and do two things:  First, we're going to

2  reinstate the cases on it that are going to be transferred or

3  remanded; and then, secondly, we're going to transfer or

4  remand, and we want to have all of the cases in front of us

14:22:37  5  so we can do that in one fell swoop and not burden the

6  transferor courts with multiple waves of cases.

7  Mr. North, how soon do you think you can have that

8  chart finalized?  I'm not asking you that to try to get you

9  to do it in the next few days, I just want to know what is

14:23:01  10  reasonable with the amount of cases that need verifying.

11  MR. NORTH:  Your Honor, my colleague, Ms. Turner,

12  may shoot me for saying this, but I believe we can get this

13  done by the end of next week, if that would be suitable for

14  the Court.

14:23:15  15  THE COURT:  That's fine.  Yeah.  So that is

16  December 18th?

17  MR. NORTH:  Yes.

18  THE COURT:  I'll tell you what, Mr. North, I'm not

19  going to have my folks working Christmas week to try to do

14:23:30  20  this because it's a huge task for our clerk's office.  So I

21  am probably -- and I don't think I'm going to ask them to do

22  that between Christmas and New Year's.  I'm probably not

23  going to have them actually put that order together and do

24  the work in the clerk's office until we start on January 4th

14:23:53  25  or 5th, so why don't you take until December 30th to get it.

14:23:58  1          MR. NORTH:  Okay.

2          THE COURT:  Both because that might make it easier

3     for you, but we also want the latest information when we do

4     it, and if there are cases that drop out between the 18th and

14:24:08  5     the 30th, it would be good not to include them.

6          MR. NORTH:  Understood, Your Honor.

7          THE COURT:  Let me mention one other thing, and then

8     I'll be happy to hear your questions.  I also want to ask

9     Jeff and Nancy if they have things they want to add.

14:24:31 10          You did indicate in the filings that plaintiffs'

11    counsel would prefer to file motions to withdraw for

12    plaintiffs that are nonresponsive or can't be found in front

13    of me rather than the transferor courts.  I'm not going to do

14    that.  And the reason I'm not going to do it is this:  I

14:24:51 15    don't want to send a case back to another judge without a

16    plaintiffs lawyer in the case because that just creates a

17    huge problem for that judge.  I think whoever filed the case

18    here needs to ride it back to that court, and if they haven't

19    been able to locate their client or get them to respond, then

14:25:12 20    they can address it with the judge, but at least that judge

21    has a lawyer to talk to.  If I send them back a case with a

22    pro se plaintiff where counsel just withdraws, I'm just

23    creating a huge headache for them and I don't want to do

24    that.

14:25:28 25          So motions to withdraw for folks that are not

14:25:30  1   responsive or can't be found will need to be addressed in the

2   transferor courts with those judges in the locales where

3   presumably the plaintiffs are located.  And that might create

4   a bit more work for you but I think it creates a lot less for

14:25:45  5   those judges, and so that's the approach I want to take on

6   it.

7          Jeff, do you have things that we've missed that we

8   ought to talk about?

9          THE LAW CLERK:  I do think it would be helpful to

14:26:00 10   have a separate chart for the dismissed cases that we're

11   going to vacate the dismissals, separate from the chart that

12   includes them as part of the remand and transfer cases.  So

13   that if we do a separate order vacating dismissals it will be

14   easier to do it that way.

14:26:22 15          THE COURT:  Are you thinking -- (brief audio

16   interference) yeah, I did.  Are you thinking we would have a

17   chart listing the dismissed cases and a chart of cases to be

18   transferred that would include all of the dismissed cases?

19   In other words, we just want a chart to attach to the

14:26:37 20   dismissal order, but we want those same cases to be in the

21   transfer chart; is that right?

22          THE LAW CLERK:  Correct.  It would be easier to

23   vacate all the dismissals if we just have one chart to work

24   from for that, and then, of course, that would be included if

14:26:54 25   they are going to be remanded and transferred on the other

14:26:57  1    chart.

2              MR. NORTH:  Your Honor, Richard North.  That would

3    be easy to do.

4              THE COURT:  Okay.

14:27:05  5              Yeah, so let's do that.  Yeah, that's a good point,

6    Jeff.  That will make our dismissal order easier.

7              Did you have other points, Jeff, that you wanted to

8    mention?

9              THE LAW CLERK:  No, that's it, Judge.

14:27:15 10              THE COURT:  Nancy, are you on the line?

11              I'm not hearing Nancy.

12              THE COURTROOM DEPUTY:  Judge, this is Christine.

13    You had mentioned the status hearing January 27th.

14              THE COURT:  Right.  4 p.m.?

14:27:33 15              THE COURTROOM DEPUTY:  That works, yes.

16              THE COURT:  That work?  Yeah, let's do that status

17    conference at 4 p.m. on January 27th.

18              And, Mr. Goss, if you could file an updated memo the

19    day before so I'll be more prepared for that discussion.

14:27:52 20              MR. GOSS:  Certainly, Your Honor.

21              THE COURT:  Christine, do you have other matters

22    that need to be addressed?

23              THE COURTROOM DEPUTY:  That was it, Your Honor.

24    Thank you.

14:28:02 25              THE COURT:  Okay.

14:28:04  1          How about from plaintiffs' counsel, are there

2      matters we need to talk about that we haven't covered?

3              MR. LOPEZ:  Yes, Your Honor.  Ramon Lopez.  With

4      respect to -- there are some cases that are not accepting the

14:28:23  5      settlement, they're usually cases that are low-value cases

6      where there's really not what one might consider a

7      compensable or ascertainable injury.  Some of those clients

8      are rejecting their settlements.

9          And this is -- I'm not talking just about my cases,

14:28:46  10     this is a situation that a number of us have where, in our

11     agreement with the -- with Bard, they've agreed to allow

12     these cases to be dismissed without prejudice, and I believe

13     some have a tolling agreement for a year in the event, you

14     know, this plaintiff should subsequently develop a more

14:29:10  15     serious complication of the device.

16         I don't know, I haven't seen where -- you mentioned

17     earlier dismissals without prejudice, but I'm not sure you're

18     talking about this kind of situation.

19         My question to you is do we bring those motions

14:29:29  20     before Your Honor or is this also something we should address

21     with a transferor court?

22             THE COURT:  Well, if I understand what you're

23     saying, Mr. Lopez, it's a situation where plaintiff's lawyer

24     has a client who has filed a claim in the MDL, the lawyer's

14:29:55  25     judgment is that it's a low-value claim because there's

14:29:57  1  little or no injury, the client won't take the low-value

2  settlement that's been offered.

3  MR. LOPEZ:  That's correct.  Yes, Your Honor.  For

4  the most part, that's correct.

14:30:10  5  THE COURT:  Well, here's -- here's a thought,

6  thinking out loud, and I'm happy to hear your reaction to it.

7  If we weren't in the MDL and a plaintiff filed a

8  case in my court and the defendant offered a settlement

9  amount that the plaintiff's lawyer thought was reasonable and

14:30:30  10  the plaintiff thought was too low, I don't think what I would

11  do with that case is dismiss it.

12  The plaintiff brought the case.  The plaintiff has a

13  right to pursue the case.  I suppose if the plaintiff's

14  lawyer has a basis for doing so in the fee agreement or under

14:30:56  15  the ethical rules for seeking to withdraw, the plaintiff's

16  lawyer could seek to withdraw.

17  But I guess I'm having trouble with the notion that

18  I would dismiss a case even without prejudice because the

19  plaintiff wouldn't accept a settlement offer.

14:31:14  20  I'm interested in your thoughts on that.

21  MR. LOPEZ:  Yeah, I'm not sure it's so much that

22  they wouldn't accept it, although that is part of it.  The

23  issue is, I mean we -- we do inform some of these clients

24  that if they accept this settlement, despite the fact that

14:31:37  25  they really don't have an injury, that they are going to

14:31:43  1  waive their rights should the device that's still in them

2  later fracture or cause them additional harm.  And under

3  those circumstances the client or the plaintiff has to make a

4  decision, do I take this nominal amount of money and give up

14:32:03  5  my rights or do I dismiss this case without prejudice and

6  wait until I have an injury that is worth me pursuing an

7  injury case.

8      In some jurisdictions, and maybe many, the statute

9  doesn't really begin to run on those cases and, in fact, you

14:32:30  10  can file a second lawsuit if you have a subsequent

11  complication from the same exposure, so.

12      Then, of course, there's the argument that the

13  statute of limitations hasn't really begun on that injury in

14  most jurisdictions.  It depends on how the judge might see

14:32:48  15  whether or not the injury has occurred to start.

16      So for the most part, you know, I can't speak for

17  anyone else, but I know I've got a case where we had to file

18  the complaint without really finding out whether or not there

19  was a compensable injury that we would have pursued because

14:33:07  20  we thought we had a statute.  And then, you know, as time

21  went on, it was pretty clear.  I had a device that, you know,

22  by looking at the medical records and speaking with the

23  client, there was really a no harm, no foul type of

24  situation.  So in that particular case, advised the client,

14:33:32  25  hey, if you take this money, you know, that's it.  I mean, if

14:33:35  1  something happens in the future with your device, you're

2  going to release and give up all your rights.

3       So that's the situation I'm talking about.  I mean,

4  that would be the rationale to dismiss the case without

14:33:52  5  prejudice and allow the plaintiff to just go on his or her

6  merry way as if the case had never been filed, and then if

7  something happens in the future preserve that plaintiff's

8  right to file another lawsuit.

9       THE COURT:  And am I correct in understanding, then,

14:34:11  10  Mr. Lopez, that the client, the plaintiff, would be

11  consenting to the dismissal without prejudice?

12       MR. LOPEZ:  Oh, of course, Yes, Your Honor.  That

13  would be the client's choice, in fact.

14       THE COURT:  Right.

14:34:23  15       Mr. North, what are your thoughts?

16       MR. NORTH:  I'm not really familiar with the

17  situation that Mr. Lopez is discussing.  I mean, I think it's

18  a difficult situation when claims have been brought by people

19  that really do not have injuries at the present time, but I'm

14:34:43  20  not sure what can be done about it from our standpoint.

21       THE COURT:  Well, I will say this, Mr. Lopez:  The

22  idea of you or another plaintiff's lawyer moving to dismiss

23  with the plaintiff's consent without prejudice in front of me

24  doesn't present the same concern I have about a motion to

14:35:11  25  withdraw that I just described, because I would be getting

14:35:17 1    rid of the case if I granted the motion to dismiss without

2    prejudice and I wouldn't be burdening another judge with an

3    unrepresented plaintiff.

4         And I'm thinking it might make more sense for those

14:35:28 5    motions to be brought in front of me where I understand

6    what's happening in the MDL.  Obviously, the defense could

7    respond to the motion to dismiss if they decided to oppose it

8    or have something to say about it.

9         So my thought for the time being, I think, is if you

14:35:44 10   have those situations or others do, then those motions should

11   be filed in front of me.  And the defendant can respond and

12   then we'll decide what to do with those motions to dismiss

13   without prejudice.

14        MR. LOPEZ:  Your Honor, I should have added, and I

14:36:01 15   think I said this when I first started, it's actually in some

16   of the master settlement agreements, I know it's in ours,

17   that it only applies to a certain category of the way these

18   cases were categorized.  And it's the category where there is

19   basically a product in place -- what we call a product in

14:36:20 20   place case, where the defense has already agreed that we can

21   dismiss those without prejudice.  And I believe we also

22   tolled the case for a year.  Obviously that will be in our

23   motion.

24        THE COURT:  Right.  And some of those will be

14:36:37 25   unopposed.  But I guess the short answer is yeah, you ought

14:36:41  1    to file those in front of me rather than wait for a transfer.

2        MR. LOPEZ:  All right, Your Honor.  And I'll advise

3    others to do the same.

4        THE COURT:  Okay.

14:36:54  5        Are there other questions from plaintiffs' counsel?

6        How about from defense counsel?

7        MR. NORTH:  Nothing for the defendants, Your Honor.

8        THE COURT:  Okay.  We will put this in a minute

9    entry and get it out to you, and everybody have a happy

14:37:06 10   holiday.  Thank you.

11       MR. NORTH:  Thank you --

12       MR. LOPEZ:  Same to you, Your Honor, and your staff.

13   Thank you.

14       THE COURT:  Thank you.

14:37:13 15      (End of transcript.)

16                          *  *  *  *  *

17

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3            I, PATRICIA LYONS, do hereby certify that I am duly

4    appointed and qualified to act as Official Court Reporter for

5    the United States District Court for the District of Arizona.

6

7            I FURTHER CERTIFY that the foregoing pages constitute

8    a full, true, and accurate transcript of all of that portion

9    of the proceedings contained herein, had in the above-entitled

10   cause on the date specified therein, and that said transcript

11   was prepared under my direction and control, and to the best

12   of my ability.

13

14           DATED at Phoenix, Arizona, this 1st day of April,

15   2021.

16

17

18

19

20                           s/ Patricia Lyons, RMR, CRR
                             Official Court Reporter
21

22

23

24

25