David M. Langevin (admitted *pro hac vice*)
Rhett A. McSweeney (admitted *pro hac vice*)
MCSWEENEY LANGEVIN LLC
2116 2nd Ave. S,
Minneapolis, MN 55404
Telephone: 612.746.4646
Facsimile: 612.454.2678
dave@westrikeback.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filter Products Liability Litigation | Case No. MDL 15-02641-PHX-DGC |

### AGREED MOTION TO ESTABLISH A QUALIFIED SETTLEMENT FUND AND APPOINT QUALIFIED SETTLEMENT FUND ADMINISTRATOR

McSweeney Langevin ("Claimants' Counsel"), as counsel for certain plaintiffs in this MDL 2641, hereby files this Agreed Motion to Establish a Qualified Settlement Fund and to Appoint Qualified Settlement Fund Administrator (the "Motion") and respectfully move this Court for an Order (a) to establish a fund, which shall be called the McSweeney Langevin Bard IVC Qualified Settlement Fund (the "Fund") and (b) to appoint a Qualified Settlement Fund Administrator. In support of this Motion, movant respectfully state as follows:

1.   McSweeney Langevin represents plaintiffs and other individuals, collectively "Claimants," who are asserting claims and seeking damages arising out of certain alleged acts and events more particularly described in the Master Complaint filed in this MDL.

2.   Defendant C.R. Bard, Inc., including Defendant's parent companies, affiliates, subsidiaries, and any and all other of its past, present, and future related entities (collectively, "Bard") is alleged to be liable for Claimants' claims.

3. Bard denies any and all liability to Claimants. In an effort to resolve their outstanding disputes, the Parties entered into a confidential "Master Compromise, Settlement, Release and Indemnity Agreement" between Bard, on the one hand, and McSweeney Langevin on the other hand (hereinafter the "Master Settlement Agreement"). Bard entered into the Master Settlement Agreement solely to avoid the expense, inconvenience, and burden of litigation, and the distraction and diversion of its personnel and resources; and has done so without admission of liability or wrongdoing.

4. Bard has agreed to pay to the Fund a confidential settlement amount ("Settlement Amount") in full settlement and discharge of all of the Claimants' claims and in exchange for a full release and discharge and satisfaction of other settlement requirements by Claimants, as set forth in the Master Settlement Agreement and the Confidential Settlement Agreement and Release (hereinafter, the "Release"). The Master Settlement Agreement contemplates that the exact allocation among, and distribution to, the Claimants in settlement of their claims will be finalized at a future time based upon determinations that have yet to be made by a Special Master, which include consideration of the circumstances of the individual Claimants. Furthermore, the final reimbursement amount, if any, alleged by Medicare, Medicaid and or private lien holders with respect to these claims is also yet to be determined. The Parties, therefore, ask this Court to order the establishment of the Fund to facilitate resolution of those claims through collection, allocation, final disbursement, and accounting of settlement proceeds and to appoint a Fund Administrator in connection with these activities.

5. Upon establishment of the Fund, and pursuant to the terms of the Master Settlement Agreement, Bard shall pay or cause to be paid the agreed-upon Settlement Amount into the Fund by wire transfer or check made payable to the Fund. All aspects of the

administration of the Fund shall remain subject to the jurisdiction of the Court until such time as the Fund has settled all eligible claims according to the terms of the Master Settlement Agreement.

6. The Fund shall be a Qualified Settlement Fund as described in Treas. Reg. Section 1.468B-1, established by order of this Court, and the Fund shall remain subject to the continuing jurisdiction of this Court until such settlement payments are distributed to eligible claimants according to the terms of the Master Settlement Agreement. Settlement payments within the Bard Qualified Settlement Fund will be held in a fiduciary capacity. The Fund shall comply with the Treasury Regulations Section 1.468B-1 et seq. regarding taxation and tax reporting obligations.

7. This Court shall have jurisdiction over this matter under Treas. Reg. Section 1.468B-1(c)(1), which states in relevant part that a Qualified Settlement Fund "is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) of any of the foregoing and is subject to the continuing jurisdiction of that governmental authority."

8. Claimants request that the Court approve the appointment of ARX Management, LLC ("ARX") as the Qualified Settlement Fund Administrator (the "Fund Administrator"). ARX possesses comprehensive knowledge and experience administering qualified settlement funds. ARX submits to the personal jurisdiction of this Court. The Fund Administrator shall, upon request, prepare and deliver to the Court such reports related to the administration of the Fund as the Court may request from time to time. ARX's address is as follows: 1730 Holly Avenue, El Segundo, California 90245.

9. With the approval of and upon an order of this Court, the Fund shall fully settle, subject to the satisfaction of all applicable terms and conditions as set forth in the Master Settlement Agreement, all eligible claims. No settlement proceeds shall be set apart for any individual Claimant, or otherwise made available so that he or she may draw upon or otherwise control said settlement proceeds until such time as the Release is executed by such Claimant and all other applicable terms and conditions are satisfied, in accordance with the Master Settlement Agreement.

10. Subject to satisfaction of all applicable terms and conditions set forth in the Master Settlement Agreement and the Release, the Fund shall be liable to make payments to eligible claimants in the manner so specified in the Master Settlement Agreement.

11. The Fund Administrator may, with the consent of the persons with whom it enters into an individual Release, purchase and assign any structured settlements. The decision by some Claimants to elect structured settlements shall not preclude others from as prompt as possible a receipt of a lump sum cash award. Likewise, Claimants' Counsel may elect to place all or a portion of their contingent legal fees into one of several types of tax-advantaged investments as Plaintiffs' attorneys have the ability defer fees until a later taxable year.[1] To facilitate Claimants' structured settlements or attorney fee structure(s), if any, the Fund, by and through the Fund Administrator, may purchase and assign structured settlements whether

---

[1] *See Childs v. Commissioner*, 103 T.C. 634 (1994), *aff'd*, 89 F.3d 856 (11th Cir. 1996).

"qualified"[2] or "non-qualified".[3] Any "qualified" structured settlement shall be issued by a life insurance company that holds an issuer credit rating equivalent to a National Association of Insurance Commissioners NAIC 1 designation.

12. The Fund Administrator and/or its attorneys shall be indemnified and held harmless by Claimants from any claims made by any alleged lienholder, or other person or entity that attempts to assert a right of payment, reimbursement, or garnishment against the Fund. Should the Fund Administrator and/or its attorneys be named as a party to, or threatened to be made a party to, any portended, pending or completed action, suit or proceeding of any kind, whether civil, administrative or arbitrative, and whether brought by or against or otherwise involving the Fund, by reason of the Fund Administrator and/or its attorneys having served in any capacity on behalf of the Fund, the Fund Administrator and/or its attorneys shall be indemnified and held harmless by the Claimants against reasonable expenses, costs, and fees (including attorney fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by the Fund Administrator and/or its attorneys in connection with or resulting from such actual or threatened action, suit or proceeding; except to the extent that it is finally determined by this Court that the Fund Administrator and/or its attorneys was/were negligent or acted with willful misconduct in connection with the administration of this Fund.

---

[2] Structured Settlement Payments are assigned to a qualified assignee by entering into qualified assignments of such structured settlement payments within the meaning of Section 130(c) of the Internal Revenue Code. The qualified assignee shall, respecting each person who is to receive periodic payments under a settlement agreement, purchase one or more qualified funding assets within the meaning of Section 130(d) of the Internal Revenue Code to fund any structured settlement payments assigned to the qualified assignee.

[3] A non-qualified assignment does not rely upon nor must it comply with Internal Revenue Code Section 104 and/or 130 to effect such assignment. See P.L.R. 200836019.

13. Bard shall have no responsibility for the expenses or administration of the Fund and shall have no liability to the Claimants in connection with such administration or decisions made by the Fund Administrator in the discharge of any and all Fund Administrator's duties. Said expenses, if any, may be paid out of the Settlement Amount deposited and held in the Fund. Bard shall cooperate in the administration of the Fund to the extent reasonably necessary to effectuate its terms, including providing all information reasonably necessary for the Fund Administrator, to complete the Fund's accounting. Aside from the foregoing sentence and subject to Bard's rights under the Master Settlement Agreement, no relationships or responsibilities are created hereby between Bard and the Fund and its Fund Administrator. Bard shall in no way be associated with the administration of the Fund or be liable in respect of any dispute between or among any Claimants and their respective counsel in respect of any costs, expenses, legal fees or litigation costs to be deducted from the Fund.

14. Claimants request that no bond be required, provided the Fund, which includes all principal and interest earned thereon, shall be deposited in an account comprised of (a) United States Agency, Government Sponsored Enterprises (GSEs) or Treasury securities or obligations (or a mutual fund invested solely in such instruments), (b) cash equivalent securities, and/or (c) certificates of deposit, provided all said certificates of deposit are fully insured by the FDIC. The Fund shall be held at First Bankers Trust, 1201 Broadway St., Quincy, IL 62301 (hereinafter "Escrow Agent"), for the benefit of and titled in the legal name of the Fund according to the above terms and conditions and the Master Settlement Agreement, and said financial institution shall be responsible for any and all investment related decisions, pursuant to these terms and conditions. Notwithstanding the foregoing, Escrow Agent shall not be allowed to distribute any income or principal from the Fund except upon the written instructions of the

Fund Administrator upon written approval or authorization by Bard, or if requested, upon an order of this Court in accordance with, or as may be otherwise provided in, the Master Settlement Agreement.

15. The monies to be held in the Fund are the sole property of the Fund. Until such time as funds are distributed from the Fund, Claimants shall not possess any rights to demand or receive any portion of the escrowed funds and shall not possess any right to mortgage, pledge, or encumber the same in any manner. To the extent possible, as determined under federal income tax principles, this Motion shall be construed to prevent the Claimants from being in constructive receipt of any amounts held by the Fund.

16. Claimants request that the Fund Administrator be authorized to incur costs necessary to administer the Fund and hire professionals and other experts necessary to administer the Fund, including but not limited to, accountants, Special Masters counsel, mediators, or arbitrators, as necessary. Upon the satisfaction of all applicable terms and conditions set forth in the Master Settlement Agreement, all amounts to be paid from the Fund pursuant to the Master Settlement Agreement, including all expenses which may be incurred by the Fund Administrator and all costs associated with providing the agreed Releases shall be paid from the Fund or by Claimants' Counsel and shall not be the responsibility of Bard. Distribution of these Fund amounts shall not require further Court Order.

17. All taxes on the income component of the Fund and expenses and costs incurred in connection with the taxation of the Fund (including, without limitation, expenses of tax attorneys and accountants) shall be paid out of the Fund, shall be considered to be a cost of administration of the settlement, and shall be timely paid by the Fund Administrator without prior order of the Court.

18. Subject to the terms and conditions in the Master Settlement Agreement, the Fund Administrator shall have the right to rely upon any affidavit, certificate, letter, notice, electronic mail, or other document believed by the Fund Administrator to be genuine and sufficient, and upon any other evidence believed by the Fund Administrator, in his reasonable judgment, to be genuine and sufficient, which may be provided to the Fund Administrator by the Claimants, Bard, or their counsel.

19. The Fund Administrator shall be authorized to distribute all attorneys' fees and expenses to counsel for Claimants consistent with existing contingency fee contracts, upon deposit of settlement proceeds in the Fund and satisfaction of the required terms of the Master Settlement Agreement. Court approval for such distributions shall only be required to the extent required by law for claims involving deaths and/or minors.

20. Upon completion of any structured settlements agreements and final distribution of monies paid from the Fund to eligible claimants under the terms of the Master Settlement Agreement, the Fund Administrator shall take appropriate steps to wind-down the Fund, including remitting unused funds back to Bard, and thereafter be discharged from any further responsibility with respect to the Fund.

21. To the extent any paragraphs in this Motion conflict or are in any way inconsistent with the terms and conditions of the Master Settlement Agreement, the Master Settlement Agreement controls.

22. The Fund Administrator will obtain a Federal Taxpayer Identification Number for the Fund that is the subject of this Motion, upon the execution of an order by the Court establishing the Fund.

WHEREFORE, Claimants respectfully request that the Court enter an Order:

a. Establishing the Fund as a Qualified Settlement Fund within the meaning of Treas. Reg. Section 1.468B-1 and pursuant to the jurisdiction conferred on this Court by Treas. Reg. Section 1.468B-1(c)(1);

b. Appointing ARX Management, LLC as the Fund Administrator pursuant to the terms, conditions, and restrictions of this Motion and granting said Administrator the authority to conduct any and all activities necessary to administer this Fund as described in this Motion;

c. Authorizing the Fund, subject to the approval of and upon further order of this Court following joint motion by Claimants and Bard under the terms and conditions as set forth in the Master Settlement Agreement, to enter into individual Releases with persons asserting Claims, including the use of settlements with periodic payments and authorizing the Fund to effect qualified assignments of any resulting structured settlement liability within the meaning of Section 130(c) of the Internal Revenue Code to the qualified assignee; and

d. Authorizing the Fund Administrator, following completion of all structured settlement agreements and final distribution of monies paid from the Fund to eligible claimants under the terms of the Master Settlement Agreement, to take appropriate steps to wind-down the fund, including remitting unused funds back to Bard, and thereafter discharging the Fund Administrator from any further responsibility with respect to the Fund.

DATED: November 17, 2021

Respectfully submitted,

/s/ David M. Langevin
**David M. Langevin, Esq.**
**McSweeney Langevin**
2116 Second Avenue South
Minneapolis, MN 55106

Telephone: (612) 746-4646
Facsimile: (612) 454-2678
dave@westrikeback.com

**ATTORNEYS FOR PLAINTIFFS**

**AGREED AS TO SUBSTANCE AND FORM:**
*/s/ Russell Gaudreau*
**Russell Gaudreau**
gaudreaur@gtlaw.com **Bina Palnitkar**
bina@gtlaw.com
**Greenberg Traurig, LLP**
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
P: 214.665.3727
F: 214.665.3601
**ATTORNEYS FOR DEFENDANT**
**C.R. BARD, INC.**

### CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2021, I electronically transmitted the foregoing document using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

/s/ *David M. Langevin*