Ben C. Martin
bmartin@martinbaughman.com
Texas Bar No. 13052400
**Martin|Baughman**
3141 Hood St. Suite 600
Dallas, Texas 75219
T: 214-761-6614
F: 214-744-7590

*Appearing In Propria Persona*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| In Re Bard IVC Filters Products Liability Litigation | No. MD-15-02641-PHX-DGC |
|---|---|
| | **MOTION OF LAW OFFICES OF BEN C. MARTIN AND MARTIN\|BAUGHMAN TO REDUCE AND EXEMPT CLIENT RECOVERIES FROM COMMON BENEFIT FEE AND EXPENSE ASSESSMENT AND MEMORANDUM OF LAW IN SUPPORT** |
| | (Assigned to the Honorable David G. Campbell) |

**I.     INTRODUCTION**

The Law Offices of Ben C. Martin and the law firm of Martin|Baughman (collectively, "BCM") respectfully files this Motion to Reduce and Exempt Client Recoveries from Common Benefit Fee and Expense Assessment and Memorandum of Law in Support.

In accordance with governing Ninth Circuit law and the recent, highly persuasive opinion that U.S. District Judge Vincent Chhabria issued in *In re: Roundup Products Liab. Litig.*, 2021 WL 3161590 (N.D. Cal. 2021), this Court

– 1 –

should hold that the settlements reached between Bard and BCM clients who have not filed suit in any forum, and settlements reached between Bard and BCM clients whose cases were filed in state court or in federal court after the close of the MDL, are not subject to any fee or costs assessments applicable to the Bard MDL cases.

In addition, for the sake of equity and fairness, BCM respectfully requests that this Court reduce the fee and costs assessment amounts applied to BCM clients whose cases were remanded from the MDL to the average assessment paid on cases that settled based on the MDL proceeding's efforts. This result would not only fairly compensate the MDL's leadership for the common benefit work that they performed, but it would also fairly compensate BCM for the significant, time-intensive, additional work that its attorneys performed in preparing and bringing these cases to trial after the MDL proceeding had concluded, which produced a significantly higher than average settlement value for BCM clients whose cases were remanded from the MDL.

## II.  RELEVANT FACTUAL AND PROCEDURAL HISTORY

BCM has reached a settlement with Bard with respect to five hundred and seven (507) of its clients.[1] The claims of two hundred and sixty-four (264) of those clients have yet to be filed in any court, state or federal.[2] Moreover, BCM also has settled 41 cases which were filed in federal court after the close of the MDL (and

---

[1] Declaration of Ben C. Martin in Support of Motion of Law Offices of Ben C. Martin and Martin Baughman to Reduce and Exempt Client Recoveries from Common Benefit Fee and Expense Assessment (Jan. 25, 2022) at ¶ 2.
[2] *Id.*

– 2 –

thus were never part of the MDL) and one case that was filed and pending in state court at the time it settled.[3]

BCM's litigation efforts, which were ongoing in earnest until October 2021, significantly increased the average settlement value for clients of BCM far above and beyond the average settlement value that would have been achieved relying solely on the common fund work generated in the MDL.[4]

Specifically, BCM worked up expert reports (including bringing in new experts) in order to litigate thrombotic injury, embedded filter, and perforation cases, which resulted in significant settlements believed to be well beyond any achieved by others using the MDL's work product.[5] BCM also worked up experts to dispute the efficacy of Bard's filters, including Dr. Harlan Krumholz. BCM worked with Dr. McMeeking on developing a report on an additional safer alternative design to the Bard filters. Significantly, that safer alternative design was a retrievable filter, whereas the MDL only worked up a safer alternative permanent filter.[6] BCM's own unique work in this regard, in addition to BCM's willingness to litigate cases through to trial, has resulted in BCM's clients receiving a per case average settlement that is significantly higher than the averages achieved to date by others. BCM was required to expend significant time and effort by multiple attorneys, and significant expenses (including the cost of working up new expert

---

[3] *Id.*
[4] *Id.* at ¶ 3.
[5] *Id.* at ¶¶ 4-5.
[6] *Id.*

– 3 –

reports), in order to achieve this result, which would not have been possible based solely on the MDL work product.

BCM had numerous lawyers (two partners, ten associates, 3 contract lawyers, and several paralegals) working full-time to prepare for multiple Bard trials, while simultaneously working up hundreds of additional Bard cases, all of which were moving toward trial.[7] BCM has continuously pushed its Bard cases toward trial since the MDL was closed in September 2019. The takeaway point is that BCM put in many thousands of hours over two years and was not willing to back down unless Bard offered a settlement that was significantly higher than what the already-settled cases had resolved for.

Any amount of fee that is above the fee for the average settlement value achieved by members of the Fee Committee and others who chose not to litigate post-remand was earned 100% due to the additional time, effort and money that BCM invested since September 2019, rather than as the result of common fund work. To the extent that additional fee is taxed at 20% of BCM's fee by the Fee Committee, then that additional fee constitutes a windfall to the attorneys who stopped litigating in the fall of 2019, to the detriment of BCM. To the extent that fees earned by BCM on recoveries that are above the average settlements achieved to date are paid into the common benefit fund, recipients of those fees will be unjustly enriched at the expense of BCM.

---

[7] *Id.* at ¶¶ 6-10.

– 4 –

Further, the Fee Committee must concede that thrombosis is an injury that was not initially addressed, and not adequately addressed, by the MDL.[8] As a result, BCM partner Ben Martin worked up an additional report with Dr. David Garcia on thrombotic injuries and conducted an additional deposition which included this area of testimony. Furthermore, BCM hired a new expert, Dr. John LaDisa, who is a biomedical engineer with an expertise in fluid dynamics, to offer opinions regarding how and why Bard's filters (and in particular the Meridian filter) are thrombogenic. BCM thus respectfully submits that because thrombosis injuries were inadequately addressed in the MDL, plaintiffs with such injuries should not be subject to any fee or cost assessment.

BCM prepared nineteen cases for trial; tried seven to verdict; and was actively in trial in three cases pending in three separate federal courts when its settlement was reached.[9] BCM won four trials for a total of $7.1 million.[10] Since September 2019, BCM filed or responded to at least 143 Daubert motions and 90 motions for summary judgment and defended or took at least 587 depositions, including depositions of plaintiffs, experts, fact witnesses, treating physicians, sales representatives, and Bard managers/supervisors.[11] BCM served 181 expert reports

---

[8] *Id.* at ¶¶ 4-5.

[9] *Id.* at ¶ 6.
[10] *Id.*
[11] *Id.*

– 5 –

on Bard post-MDL, including reports from thirteen experts who were not part of the MDL.[12]

Another example of BCM's efforts is the case of a client that was filed in the U.S. District Court for the Eastern District of Pennsylvania.[13] On remand from this MDL proceeding, the Pennsylvania-based federal district court granted summary judgment in Bard's favor on the client's claims for strict liability and negligent design defect. At considerable additional expense to BCM, BCM hired a highly experienced Pennsylvania appellate attorney with considerable background in drug and device injury appeals to prosecute the client's appeal to the Third Circuit. As a result of outside appellate counsel's work, the Third Circuit decided to certify two unsettled questions of Pennsylvania law in medical device cases to the Supreme Court of Pennsylvania. Then, at considerable additional costs, outside counsel prepared a thorough and highly persuasive brief arguing that Pennsylvania's highest court should recognize the general availability, under Pennsylvania law, of strict liability and negligent design defect claims involving prescription medical devices under Pennsylvania law. As a result of that substantial additional work, none of which the MDL common fund work touched upon, and at considerable additional

---

[12] *Id.*

[13] In accordance with the confidentiality provisions of the settlement agreement, BCM does not identify this client by name herein, even though the proceedings discussed above are all matters of public record. The client is identified by name in Exhibit F to Ben C. Martin's declaration filed under seal in support of this motion. *Id.* at ¶ 10.

out-of-pocket expense, BCM achieved a settlement for the client that was significantly larger than Bard had ever previously offered in that case.

### III.   ARGUMENT

**A.   In Accordance With Ninth Circuit Precedent And *In re: Roundup*, This Court Should Exclude Unfiled Cases, Cases Pending in State Court, and Cases Filed in Federal Court after the Close of the MDL From Any Fee Or Costs Assessment**

In his recent opinion in the *In re: Roundup Products Liab. Litig.*, 2021 WL 3161590 (N.D. Cal. 2021), U.S. District Judge Vincent Chhabria produced a scholarly and highly persuasive opinion concluding that an MDL court simply lacks the power to tax fees and costs for MDL work product against clients whose cases were never filed in any court and clients whose cases were pending in state court. *Id.* at *9-*15.

In so ruling, Judge Chhabria recognized that his decision was in accord with governing Ninth Circuit precedent. In *Hartland v. Alaska Airlines*, 544 F.2d 992, 1001 (9th Cir. 1976), the Ninth Circuit issued a writ of mandamus to overturn a federal district court's order imposing fee holdbacks on claimants who either had a case pending in state court or had not filed any case in any court. A little over one year later, in *Vincent v. Hughes Air West, Inc.*, 587 F.2d 759, 765-66 (9th Cir. 1977), the Ninth Circuit once again confirmed that a claimant who settles a case without having filed suit in any jurisdiction cannot be required to contribute to common fund work.

The Ninth Circuit, whose decisions are precedent binding on this Court, is not alone in recognizing these sorts of limitations on the power of an MDL court to assess fees on cases that are not a part of the MDL proceeding either because they were pending instead in state court or were never filed in any court. The Eighth Circuit reached the same result in *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 874 (8th Cir. 2014), holding that in an MDL proceeding, "the district court does not have the power to order parties in cases not before it to contribute to the Fund." The Eighth Circuit proceeded to emphasize that its holding would apply even to those state court claimants whose attorneys also represented other clients in the federal MDL proceeding. *Id.*

Although Judge Chhabria's opinion in *In re: Roundup* did not expressly address whether holdbacks can or should apply to cases filed in federal court after the close of an MDL proceeding, the rationale of that decision compels the conclusion that no holdbacks should apply to such cases, because the MDL proceeding never possessed jurisdiction over them. And the same result would follow under the Eighth Circuit's decision in *Genetically Modified Rice*, 764 F.3d at 874, where that federal appellate court observed that in an MDL proceeding, "the district court does not have the power to order parties in cases not before it to contribute to the Fund."

Relevant to BCM, over half of the law firm's inventory of cases that have settled with Bard were cases in which no claim had ever been filed in any court. In accordance with the legal authorities discussed above, the plaintiffs in those cases

cannot, and thus should not, have any MDL fees or costs holdbacks assessed against their recoveries. And the same result likewise follows for BCM cases that were pending in state court or were filed in federal court after the close of the MDL, as they were never a part of this federal MDL proceeding.

> **B. Because The Enhanced Recoveries That BCM Clients Whose Cases Were Remanded from the MDL Received Were Due Almost Entirely To BCM's Own Work, Equity Demands A Reduction In The Fee And Costs Assessments In Those Cases**

The purpose of a common benefit fund is "to avoid the unjust enrichment of those who profit from a common fund at the expense of those whose labors produced the fund." *In re Xarelto Prods. Liab. Litig.*, MDL No. 2592, 2020 U.S. Dist. LEXIS 50440, at *10 (E.D. La March 24, 2020).

As explained above, the outsized results that BCM was able to achieve for its clients whose cases were remanded from the MDL resulted predominantly, if not almost entirely, from work that BCM performed for its clients above and beyond the common fund work that was made available to BCM through this MDL proceeding.

Just as it would be unfair for BCM to be a free rider in accessing this common fund work for use in BCM cases that were part of this MDL proceeding, it would likewise be unfair for those whose work created the common fund materials to be a free rider in sharing the benefits of the results that were solely attributable to BCM's attorneys' work that was above and beyond the common fund work and materials.

– 9 –

BCM thus proposes that the fair and equitable outcome would be for each of BCM's settled cases against Bard that were remanded from the MDL to be assessed for fees and costs at the average amount paid on cases that settled solely as the result of the common fund materials and work (*i.e.*, the average settlement on cases that were not remanded for trial).[14] That would necessarily provide a fair payment for common fund work in each of the cases in which BCM represented clients whose cases were at one time part of the MDL and have settled, but it would avoid penalizing BCM for its extra work and resulting unique success in these cases, while unfairly rewarding the common fund attorneys for results above and beyond the average recovery that were in no way attributable to their efforts. Moreover, as explained above, because thrombosis injuries were inadequately addressed in the MDL and were not contemplated by the MDL, BCM clients with such injuries whose cases were pending in the MDL should not be subject to any fee or cost assessment.

Pending the resolution of this dispute either by means of settlement or an order that is no longer subject to any further appellate review, BCM respectfully requests that the entire fee assessment at issue herein be set aside and held in escrow.

---

[14] BCM recognizes that the assessment amounts paid for non-BCM clients is confidential information that is in the possession of the Common Benefit Fee and Costs Committee (CBFCC) and/or the PEC. To the extent those entities are not willing to share this information confidentially with the Court and BCM as part of the resolution of this matter, BCM requests that it be permitted to conduct discovery on this issue pursuant to an appropriate protective order.

That is the only way to assure that the disputed funds will be available to be distributed in accordance with the ultimate resolution of this dispute.

## IV. CONCLUSION

For the foregoing reasons, BCM respectfully requests the issuance of an order excluding BCM clients whose cases were pending in state court, whose cases were filed in federal court after the close of the MDL, or whose claims were never filed in any court, from any obligation to pay a fee or costs holdback in this case. And BCM also respectfully requests that the amount of fee and costs holdback to be applied to its cases that were at one time part of the MDL be capped at the average fee and costs amount paid on those cases that settled solely as the result of common fund work.

RESPECTFULLY SUBMITTED this 25th day of January, 2022.

/s/ Ben C. Martin_____
Ben C. Martin
bmartin@martinbaughman.com
**Martin|Baughman**
3141 Hood St. Suite 600
Dallas, Texas 75219
T: 214-761-6614
F: 214-744-7590

*Appearing In Propria Persona*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of January, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/ Ben C. Martin*
Ben C. Martin