IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation | : : : | No. MDL 15-02641-PHX-DGC |

**DECLARATION IN SUPPORT OF MOTION OF LAW OFFICES OF BEN C. MARTIN AND MARTIN|BAUGHMAN TO REDUCE AND EXEMPT CLIENT RECOVERIES FROM COMMON BENEFIT FEE AND EXPENSE ASSESSMENT**

Ben C. Martin declares under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.  I am the sole owner of the Law Offices of Ben C. Martin and a shareholder of the law firm of Martin|Baughman. The Law Offices of Ben C. Martin and Martin|Baughman are referred to herein collectively as "BCM". I am licensed and in good standing to practice law in Texas and Pennsylvania.

2.  I represent 507 clients for whom I negotiated a settlement with C.R. Bard, Inc. ("Bard"). A list of those clients is attached hereto as Exhibit A. The claims of two hundred and sixty-four (264) of those clients have not been filed in any court, state or federal. A list of those clients is attached hereto as Exhibit B. Forty-one (41) of the 507 clients that are part of the settlement had cases that were filed in federal court after the close of the MDL (and thus were never part of the MDL). A list of those clients is attached hereto as Exhibit C. The settlement also includes one case that was filed and pending in state court at the time of settlement. That case is identified on Exhibit D.

– 1 –

3.     BCM's litigation efforts significantly increased the average settlement value for clients of BCM far above and beyond the average settlement value that would have been achieved relying solely on the common fund work generated in the MDL. To the extent this is not conceded, and/or data is not provided, by the Common Benefit Fee and Costs Committee ("CBFCC") and/or the PEC in response to this motion, BCM requests discovery (pursuant to an appropriate protective order) on the subject of the settlements reached and assessments paid by firms that did not continue to litigate after the close of the MDL.

4.     BCM's litigation efforts after its cases were remanded (beginning in September 2019) include working up expert reports (including bringing in new experts) in order to litigate thrombotic injury, embedded filter, and perforation cases; working up experts to dispute the efficacy of Bard's filters, including Dr. Harlan Krumholz, and strengthening the MDL position on efficacy by providing crucial updates to the MDL report of Dr. David Garcia from recent studies on efficacy including the systematic reviews and meta-analyses authored by Drs. Krumholz and Bikdeli. BCM also worked with Dr. Robert McMeeking on developing a report on an additional safer alternative design to the Bard filters. Significantly, that safer alternative design was a retrievable filter, whereas the MDL only worked up a safer alternative permanent filter.

5.     BCM's development of cases related to thrombosis included an additional report and a deposition of Dr. David Garcia regarding his thrombosis opinions and the hiring of a new expert, Dr. John LaDisa, who is a biomedical engineer with an

expertise in fluid dynamics, to offer opinions regarding how and why Bard's filters (and in particular the Meridian filter) are thrombogenic. Fifty-five of the 507 settled BCM cases are thrombosis cases. A list of those clients is attached hereto as Exhibit E.

6. Post-remand, BCM prepared nineteen cases for trial; tried seven to verdict; and was actively in trial in three cases pending in three separate federal courts when its settlement was reached. BCM won four trials for a total of $7.1 million.[1] Since September 2019, BCM filed or responded to at least 143 *Daubert* motions and 90 motions for summary judgment and defended or took at least 587 depositions, including depositions of 180 plaintiffs, 130 experts, 66 fact witnesses, 203 treating physicians, 5 sales representatives, and 3 Bard managers/supervisors. BCM served 181 expert reports on Bard post-MDL, including reports from thirteen experts who were not part of the MDL.

7. The work-up of these cases for trial required significant time and resources. For example, in *Conn v. Bard, et al.*, Cause No. 4:14-cv-00298, Southern District of Texas, Houston Division, one of the three cases BCM was simultaneously trying

---

[1] BCM received the following verdicts in the following cases:
(1) *Peterson v. C. R. Bard, Inc., et al.*, Cause no. 3:19-cv-01701-MO, D. Oregon: $926,000 verdict on May 14, 2021;
(2) *Wright v. C.R. Bard, Inc., et al.*, Cause no. 3:19-cv-2176-S, N.D. Texas: $2.55 million verdict on May 28, 2021;
(3) *Johnson v. C.R. Bard, Inc., et al.*, Cause no. 3:19-cv-00760-wmc, W.D. Wisconsin: $3.3 million verdict on June 17, 2021; and
(4) *Branch v. C.R. Bard, Inc., et al.*, Cause no. 3:19-cv-02130-S, N.D. Texas: $386,250 verdict on July 21, 2021.

at the time of settlement, Bard filed 31 stand-alone motions *in limine*. These came after Bard filed ten notices of adoption of MDL orders (many of which misrepresented the MDL orders and therefore demanded a substantive response), three *Daubert* motions and a motion for summary judgment. Bard also listed over 4,000 exhibits before revising and reducing that list just before trial. This list does not include plaintiff's filings, which were both necessary and numerous as well. BCM prepared deposition designations for more than 30 witnesses, responded to the Court's request for supplemental briefing regarding Bard's motion for summary judgment, and prepared multiple letter briefs on the eve of trial in response to the Court's requests.

8.     *Conn* was not an outlier. In *Couturier v. Bard, et al.*, Cause No. 2:19-cv-12497, Eastern District of Louisiana, Bard filed (and BCM responded or objected to) five *Daubert* motions, a motion for summary judgment, 26 stand-alone motions *in limine*, and an exhibit list with approximately 5400 exhibits (which Bard whittled down to just 1100 exhibits, but which still required individual objections). As in *Conn*, BCM also filed and responded to multiple trial briefs on behalf of Mr. Couturier immediately before trial. That case was tried and, unfortunately, resulted in a defense verdict, in which BCM filed a motion for new trial and was preparing to appeal on its client's behalf at the time of settlement.

9.     BCM had numerous lawyers (two partners, ten associates, 3 contract lawyers, and several paralegals) working full-time[2] to prepare for multiple Bard trials, while simultaneously working up approximately two hundred additional Bard cases, all of which were moving toward trial. BCM continuously pushed its Bard cases toward trial from September 2019 until October 2021. BCM put in thousands of hours over those two years.

10.    Another example of BCM's efforts is a case filed in the U.S. District Court for the Eastern District of Pennsylvania, Cause No. 12-CV-1253 GJP.[3] On remand from this MDL proceeding, the Pennsylvania-based federal district court granted summary judgment in Bard's favor on BCM's client's claims for strict liability and negligent design defect. At considerable additional expense to BCM, BCM hired a highly experienced Pennsylvania appellate attorney with considerable background in drug and device injury appeals to prosecute BCM's client's appeal to the Third Circuit. As a result of outside appellate counsel's work, the Third Circuit decided to certify two unsettled questions of Pennsylvania law in medical device cases to the Supreme Court of Pennsylvania. Then, at considerable additional costs, outside counsel prepared a thorough and highly persuasive brief arguing that Pennsylvania's highest court should recognize the general availability, under Pennsylvania law, of strict liability and negligent design defect claims involving prescription medical devices under Pennsylvania law. As a result of that substantial additional work, none

---

[2] The contract lawyers worked hourly on an as-needed basis.
[3] The Plaintiff's identity is disclosed in Exhibit F.

of which the MDL common fund work touched upon, and at considerable additional out-of-pocket expense, BCM achieved a settlement for BCM's client.

11.     On October 28, 2021, my partner Laura Baughman and I conferred without success with Howard Nations and Mark O'Connor, who are part of and represented the Common Benefit Fee and Costs Committee, regarding the substance of this motion. Previous to that, Ms. Baughman and I raised these issues before Special Master Corodemus. The CBFCC agreed in writing as part of the resolution of the matter before Judge Corodemus that CBFCC would not contend that BCM had waived any position on the appropriateness of its clients/cases being subject to the 8/2 common benefit fees/expenses assessment should BCM file a motion with this Court to modify the assessments.

Dated:  January 25, 2022

_____
Ben C. Martin