Mark S. O'Connor (011029) – mark.oconnor@beusgilbert.com
Beus Gilbert McGroder PLLC
701 N. 44th Street
Phoenix, Arizona  85008
480-429-3019
*Co-Lead and Liaison Counsel to Common Benefit Fee and Cost Committee*

Howard Nations – nations@howardnations.com
(TX 14823000; admitted *pro hac vice*)
The Nations Law Firm
9703 Richmond, Suite 200
Houston, Texas 77042
713-807-8400
*Co-Chair Common Benefit Fee and Cost Committee*

Wendy Fleishman – wfleishman@lhcb.com
(NY 2500429; admitted *pro hac vice*)
Lieff Cabraser Heimann & Bernstein
250 Hudson Street, 8th Floor
New York, NY 10013
212-355-9500
*Co-Chair Common Benefit Fee and Cost Committee*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation | No. MDL 15-02641-PHX-DGC<br><br>**COMMON BENEFIT FEES AND COSTS COMMITTEE'S RESPONSE IN OPPOSITION TO EMERGENCY MOTION OF LAW OFFICES OF BEN C. MARTIN AND MARTIN BAUGHMAN TO STAY DISTRIBUTION PENDING APPEAL *AND* MOTION FOR SUPERSEDEAS BOND** |

The Common Benefit Fees and Costs Committee ("CBFCC") opposes the Emergency Motion of Law Offices of Ben C. Martin and Martin Baughman (collectively, "MB") to Stay Distribution Pending Appeal [Doc. 22164].  The motion fails the criteria applied to stays (or injunctive relief of any sort) and creates an unworkable dilemma for the CBFCC in collecting and distributing funds ordered to be paid for common benefit fees and expenses, particularly in light of the confidential nature of the settlements.

The CBFCC moves the Court to Require MB to post a supersedeas bond in an amount sufficient to ensure payment of any attorneys' fees award levied against MB to replenish Phase 3 common benefit fees expended on the CBFCC's work addressed to MB's district court motion work and the Ninth Circuit Appeal.

### A. MB IS NOT ENTITLED TO A STAY

At the outset, it is not clear that MB's request is legally appropriate. The cases it relies upon are for stays from execution of a money judgment. Here, there is no judgment.[1] Yet, assuming that the standard for a stay of judgment (or similar form of injunctive relief applies), MB fails to demonstrate that such relief should be granted under that standard.

Under *Mi Familia Vota v. Hobbs*, 977 F.3d 948 (9th Cir. 2002), upon which MB relies, a stay pending appeal should only be granted where the court finds: (1) the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) the applicant will be irreparably injured absent a stay; (3) the issuance of the stay will not substantially injure the other parties interested in the proceeding; *and* (4) the public interest favors imposition of a stay. *See id.* at 952 (emphasis added).

**1. MB has not shown a likelihood of success on the merits.**

MB relies on a single case to maintain its appeal, *In re Roundup,* arguing the facts of its request for relief from paying common benefit assessemnts are squarely at issue in that case, currently on appeal. *In re Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d 950 (N.D. Cal. 2021) (appeal pending). However, this Court has already examined *In re Roundup* and opined that the facts supporting the appeal in that case in no way resemble the facts in the instant action. [Doc. 22162]. In fact, the Court meticulously described in seven points why the facts supporting the appeal in *In re Roundup* in no way resemble the same facts MB deems "squarely at issue" here. [Doc. 22164, at 2.] Whereas *In re Roundup* examined an attempt to assess all cases of any kind related to the Roundup product, the assessments ordered here were focused. Significantly, MB voluntarily entered into a Participation

---

[1] The applicability of Rule 62(b) hinges on the Court entering a judgment. *Arnaudov v. California Delta Mech. Inc.*, MC-16-00085-PHX-MTL, 2022 WL 1224259, at *1 (D. Ariz. Apr. 26, 2022).

2

Agreement and therefore subjected all its cases to the Court's ordered assessment. What is more, unlike the appellants in *In re Roundup*, MB failed to object to the Court's assessments in a timely fashion, despite having multiple opportunities to do so. Accordingly, as *In re Roundup* is inapplicable to these proceedings, MB has failed to show a likelihood of success on the merits.[2]

### 2. MB cannot show irreparable harm if a stay is not ordered.

MB provides no legal basis to interrupt the distribution of well-earned fees derived from an agreement that MB not only voluntarily participated in, but from which MB actively derives benefits therefrom. Indeed, pursuant to the Participation Agreement, MB is currently being paid common benefit fees on the exact categories of cases it now seeks to be exempt. If anything, it is the recipients of these fees who will be irreparably injured as they abided by the voluntary agreement's terms and lack redress to replace the fees they were awarded through an extensive and meticulous process. Those fees, of course, were allocated based on projections for fees and costs that are now in jeopardy based on MB's belated effort to change the rules. In the unlikely event this Court's order is overturned by the Ninth Circuit, MB knows the percentage distributions awarded to each firm because they are participating counsel who were awarded, and are currently collecting, common benefit fees. It also must keep the settlement amounts confidential. MB is in the best, and perhaps only, position to seek reimbursement from participating counsel as they are the ones responsible for navigating their confidentiality agreements. To require the CBFCC to be privy to BCM's settlement amounts (which would happen via reverse mathematics with any sequestration of the ten percent fees and costs at issue) would thrust the CBFCC into the confidentiality dispute Bard now has with MB.

---

[2] MB's sole hope of success is that the Ninth Circuit would find that court jurisdiction cannot be conferred by participation in a participation agreement under which the participants voluntarily submit to the court's jurisdiction. But, as the Court already noted, Judge Chhabria did not take a position on this issue. 544 F. Supp. 3d at 968. And a rule that a party (and/or its lawyers) cannot submit to a court's jurisdiction through a voluntary agreement would thwart centuries of law and forum selection clauses in a stunning array of agreements.

**3. Imposing a stay will substantially injure the other parties interested in the proceeding.**

Requiring thirty (30) law firms who earned these fees years ago (and which MB seeks delay payment for an additional 2-3 years[3]) would substantially injure the rights of all firms receiving the common benefit fees they earned. In addition, by putting the onus of collection and sequestering the disputed fees on the CBFCC as MB seeks, MB's request would delay final administration of the MDL, thus increasing Phase 3 fees and expenses. This, in turn, would reduce amounts paid to the common benefit firms. For firms that finance their litigation efforts and maintain staff at their offices while awaiting payment, delaying distribution of funds further will increase interest for such firms. Others finance their litigation without assistance and incumbencies against such resources injure the firms who were ordered a certain percentage of fees as payment for work already completed.

**4. The public interest lies in denying a stay.**

MB seeks relief from an agreement it voluntarily entered and two Case Management Orders ("CMO") to which it did not object. For that reason alone, public policy weighs against issuing a stay. But more broadly, there should be some incentive for attorneys to stand by deals they make. As the Court identified in its Order, MB's novel arguments present a very clear risk to the entire functioning of the mass tort and MDL litigation. If participants can garner the substantial work product from an MDL but avoid paying a fair assessment for that work, lawyers who do the work will not get compensated and will not agree to perform common benefit work.[4]

**B. MB SHOULD BE REQUIRED TO POST A SUPERSEDEAS BOND**

Fed. R. App. P. 7 provides, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure

---

[3] The *Booker v. Bard et al.*, appeal to the Ninth Circuit took over two years before the final mandate was issued. That appeal was filed in 2018 and did not suffer delays due to COVID-19 backlogs and bottlenecks.

[4] The Bard IVC MDL litigation closely mirrored the Cook IVC MDL litigation. Leadership from both litigations coordinated strategies early on. Ben C. Martin serves as Co-Lead Counsel in the Cook IVC MDL litigation.

4

payment of costs on appeal." Courts have interpreted this to mean that the supersedeas bond is set at an amount totaling the district court's judgment, anticipated costs on appeal, and sometimes anticipated attorneys' fees on appeal. *Azizian v. Federated Dept. Stores, Inc.*, 499 F.3d 950, 958 (9th Cir. 2007) (the term "costs on appeal" in Rule 7 includes all expenses defined as "costs" by an applicable fee-shifting statute, including attorney's fees). "District courts have inherent discretionary authority in setting supersedeas bonds." *Mi Familia Vota*, 977 F.3d at 952.

Here, it is a certainty that MB's appeal will further deplete the pool of common benefit fees and expenses otherwise allocated to attorneys whose work helped create the fund and who performed common benefit work. *See* CMO 51. To date, fees and expenses related to MB's motion to reduce or exempt certain cases from assessments has cost the common benefit recipients nearly $40,000.00. It is anticipated that this figure will easily reach six figures by the time MB's appeal is fully researched, briefed and, possibly, argued to the Ninth Circuit (and perhaps further). The CBFCC is tasked with this work. Because MB is the cause of this substantial depletion of common benefit funds owed to Participating Counsel, MB should be ordered to reimburse those fees and expenses it is causing to be wasted. *See* 9th Cir. R. 39-1.1, *et seq.*; Ariz. Rev. Stat. § 12-341.01.

In addition to using the Court's inherent authority to award fees, MB's appeal is tantamount to a breach of the Participation Agreement. This Participation Agreement is a contract and its breach subjects MB to an award of attorneys' fees. *See 3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co.*, 990 F.2d 487 (9th Cir. 1993) (applying California law to award attorneys' fees based on breach of contract). Other Courts have treated PLC Members' Participation Agreement as a contract. *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 617 Fed. Appx. 136, 142 (3d Cir. 2015). Here, the Participation Agreement was not only contractual in nature, but also has been adopted into the court's record by Case Management Order No. 6. *See* CMO 6 (Doc 372).[5]

---

[5] It is well established a lawyer can bind their client to an agreement. *George Nicolais & Associates, Inc. v. Acquvest, Inc.*, 322 Fed. Appx. 519, 520 (9th Cir. 2009); *Camerican Int'l, Inc. v. L & A Juice Co., Inc.*, 879 F.2d 865 (9th Cir. 1989); *Dacanay v. Mendoza*, 573 F.2d

5

**C. IN THE ALTERNATIVE, IF THE COURT IS INCLINED TO STAY DISTRIBUTION OF FEES AND EXPENSES FROM MB SETTLED CASE, THE COURT SHOULD REQUIRE ALL FEES AND COST DISTRIBUTIONS STAYED FROM THE MB SETTLED CASES**

While the CBFCC does not believe a stay is warranted for the reasons stated above, should the Court be inclined to stay distribution of common benefit fees and costs from the subject cases, and should the Court *not* be inclined to require MB to post a superseadeas bond as security for attorneys' fees, then the CBFCC requests that *all* fees and expenses be withheld from the subject cases pending final resolution of MB's appeal. In other words, rather than reserving ten percent for the CMO 6 and its amended assessments (to which MB did not timely object), the Court should require that the total amount of fees and expenses to be deducted from each case in dispute be reserved into an interest-bearing account until the conclusion of the appeal.

This would accomplish two important objectives. First, it would protect the confidential nature of the settlements. With a ten percent amount applied to each case, it is not difficult to calculate the total settlement amount. However, the CBFCC does not know the amount of case-specific expenses incurred for each settled case or what the agreed percentage of the recovery goes to attorneys' fees. Thus, reserving and segregating all fees and costs applicable to these cases would allow prompt resolution of liens and distribution of funds to the clients, but also protect the confidential nature of the settlements.

Second, reserving all attorneys' fees would create a corpus from which any award of attorneys' fees to replenish the common benefit fees depleted by MB's litigation and appeal of this issue can be funded and the CBFCC will not have to incur further fees and expenses in a collection action against MB.

**D. CONCLUSION**

For these reasons, MB's request for a stay should be denied. Alternately, MB should be required to post a supersedeas bond in an amount appropriate to secure any award of

---

1075, 1078 (9th Cir. 1978). Accordingly, as a PLC member subject to the Court's Orders, MB has bound itself and its clients to the common benefit fee and expense assessment.

6

attorneys' fees to equitably compensate the common benefit fund for its depletion through Phase 3 attorneys' fees and expenses expended addressing MB's requested relief and appeal. The CBFCC suggests that the amount to be secured should be not less than $300,000.00.

RESPECTFULLY SUBMITTED this 17th day of June, 2022.

BEUS GILBERT MCGRODER PLLC

By: */s/ Mark S. O'Connor*
   Mark S. O'Connor
   701 N. 44th Street
   Phoenix, Arizona 85008
*Co-Lead Counsel for Plaintiffs/Liaison Counsel to the Common Benefit Fee and Cost Committee*

THE NATIONS LAW FIRM
   Howard Nations (TX Bar No. 14823000)
   (admitted *pro hac vice*)
   9703 Richmond, Suite 200
   Houston, Texas 77042
   713-807-8400
*Co-Chair, Common Benefit Fee and Cost Committee*

LIEFF CABRASER HEIMANN & BERNSTIEN
   Wendy Fleishman (NY Bar No. 2500429)
   (admitted *pro hac vice*)
   250 Hudson Street, 8th Floor
   New York, NY 10013
   212-355-9500
Co-*Chair, Common Benefit Fee and Cost Committee*

**CERTIFICATE OF SERVICE**

    I hereby certify that on 17 June 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing and emailed the foregoing to:

    Ben C. Martin, Esq.
    Laura Baughman, Esq.
    Martin Baughman
    3141 Hood Street, Level 6
    Dallas, Texas  75219
    bmartin@martinbaughman.com
    lbaughman@martinbaughman.com

                                               */s/ Jessica Gallentine*