Mark S. O'Connor (011029) – mark.oconnor@beusgilbert.com
Beus Gilbert McGroder PLLC
701 N. 44th Street
Phoenix, Arizona 85008
480-429-3019
*Co-Lead and Liaison Counsel to Common Benefit Fee and Cost Committee*

Howard Nations – nations@howardnations.com
(TX 14823000; admitted *pro hac vice*)
The Nations Law Firm
9703 Richmond, Suite 200
Houston, Texas 77042
713-807-8400
*Co-Chair Common Benefit Fee and Cost Committee*

Wendy Fleishman – wfleishman@lhcb.com
(NY 2500429; admitted *pro hac vice*)
Lieff Cabraser Heimann & Bernstein
250 Hudson Street, 8th Floor
New York, NY 10013
212-355-9500
*Co-Chair Common Benefit Fee and Cost Committee*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation | No. MDL 15-02641-PHX-DGC <br><br> **COMMON BENEFIT FEES AND COST COMMITTEE'S REPLY IN SUPPORT OF ITS MOTION FOR SUPERSEDEAS BOND OR ALTERNATIVE RELIEF** |

The Common Benefit Fees and Costs Committee ("CBFCC") hereby submits its reply in support of its Motion for Supersedeas Bond and other forms of alternative relief ("Motion") [Doc. 22174]. The Law Offices of Ben C. Martin and Martin Baughman's (collectively, "MB's") response is riddled with misstatements of both law and fact and provides no legitimate basis to block the relief MB has forced the CBFCC to seek.

**I.    THIS COURT HAS BROAD DISCRETION TO ORDER THE REQUESTED BOND.**

MB'S Response ignores the broad discretion this Court possesses to grant the CBFCC's request in order to preserve the status quo during MB's appeal of the Court's order.  Courts presiding over MDLs have substantial latitude and discretion over their cases that far exceeds that of a Court in an ordinary proceeding.  *See Hamer v. LivaNova Deutschland GmbH*, 994 F.3d 173, 178 (3d Cir. 2021) ("[A]n MDL court needs to have broad discretion to keep the parts in line"); *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020) ("of course, an MDL court has broad discretion to create efficiencies and avoid duplication—of both effort and expenditure—across cases within the MDL"); *Freeman v. Wyeth*, 764 F.3d 806, 809 (8th Cir. 2014) ("MDL courts must be given greater discretion to organize, coordinate and adjudicate its proceedings"); *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 698–99 (9th Cir. 2011) (noting that a district court judge presiding over an MDL "needs to have broad discretion to administer the proceeding as a whole."); *In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 460 F.3d 1217, 1231–32 (9th Cir. 2006) (holding that judges presiding over an MDL have broad discretion—"more so than in an action involving only a few parties and a handful of claims"); *In re Wilson*, 451 F.3d 161, 173 (3d Cir. 2006) (observing MDL judge's "unusually broad discretion to carry out its functions"); *In re Showa Denko K.K. L–Tryptophan Prods. Liab. Litig.*, 953 F.2d 162, 165 (4th Cir. 1992); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1019 (1st Cir. 1988).

Consistent with the goals of coordinated proceedings, "[t]he court has considerable discretion to use fees as a tool in a class action or a multidistrict consolidation."  Manual

2

for Complex Litigation § 14 (4th ed. 2004) (citing Deborah R. Hensler et al., *Class Action Dilemmas: Pursuing Public Goals for Private Gain* 490 (2000); *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801–02, 819–20 (3d Cir. 1995)). And, therefore, in light of "the unique contours of [each] case," the MDL trial court may exercise its broad discretion when it comes to awarding and distributing attorney fees in a common-fund case. *Id.* § 14.121.

Other district courts have employed this broad discretionary authority to issue orders sequestering a percentage of settlement or judgment funds. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 657 (E.D. Pa. 2003).

Even absent the extraordinary discretion awarded to courts presiding over an MDL, it is well within a court's discretion to require a supersedeas bond. Fed. R. App. P. 7; *Azizian v. Federated Dept. Stores, Inc.*, 499 F.3d 950, 958 (9th Cir. 2007).

Not only does MB's Response fail to address the applicable legal standards, it fails to address or rebut the CBFCC's arguments on the merits.

## II.    MB'S RESPONSE FAILS TO ADDRESS OR REBUT CBFCC'S MOTION ON THE MERITS.

MB fails to substantively dispute the necessity of a supersedeas bond. MB's response suggests that imposing a supersedeas bond (permitted by Fed. R. App. P. 7) is an "attempt[] to punish [MB] for pursuing its appellate rights." Response at p. 3. MB offers no reason why the CBFCC would have any interest in "punish[ing]" it, because there is none. The purpose of the Committee's request is simply to protect the common fund pool designated to compensate and reimburse participating counsel (including MB) for their work in the MDL. MB's only substantive objection is that the supersedeas bond should

3

not include anticipated attorneys' fees. Yet, it would be wholly appropriate to sequester funds directly from MB to reimburse the common fund pool.  MB's motion and subsequent appeal will substantially deplete funds that are otherwise designated to reimburse the 31 firms who are receiving common benefit funds.  And MB's motion is in clear breach of the Participation Agreement, which likewise entitles the prevailing party to an award of reasonable attorneys' fees under general contract law and Section 12-341.01 of the Arizona Revised Statutes.

Similarly, MB fails to rebut the argument that the Court should require all fees and cost distributions stayed from the MB settled cases.  MB merely argues that escrowing MB's fees is not necessary to (a) protect the confidential nature of the settlements or (b) replenish the common benefit fees depleted by MB's litigation and appeal.  Response at p. 4.  As set out below, these arguments fail.

### A. THE REQUESTED SUPERSEDEAS BOND SHOULD INCLUDE ANTICIPATED ATTORNEYS' FEES ON APPEAL.

MB and the CBFCC agree that a supersedeas bond may include anticipated attorneys' fees on appeal upon the showing of an applicable fee shifting statute.  Response at p. 3 (citing *Azizian*, 499 F.3d at 953).  CBFCC's Motion stated that Arizona Revised Statutes § 12-341.01(A) is an applicable fee shifting statute because this is a contested action arising out of a contract and this matter was centralized in Arizona.  Motion at p. 5-6.  In the Response, MB summarily concludes that this matter does not arise out of contract, for the matter instead concerns this Court's power to assess fees and costs against parties not before this Court.  Response at. P. 4.

4

Not so.  A.R.S. § 12-341.01 broadly states: "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees."  The Participation Agreement is a contract.  *See In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 617 Fed. Appx. 136, 142 (3d Cir. 2015) (citing similar agreement including all cases in which appellant law firm had financial interest, filed or unfiled, regardless of jurisdiction).  MB is party[1] to and bound by the terms of the Participation Agreement.  The Participation Agreement requires the contracting firms to pay an assessment of 10 percent.  Doc. 18038 at 5.  MB now disputes whether it should pay its 10 percent.  This is a textbook example of a contested action arising out of a contract.  Therefore, CBFCC requests the Court to include anticipated attorneys' fees in the bond.

Imposition of a supersedeas bond is the traditional remedy to protect a party's financial interests on appeal.  Here, however, the CBFCC believes that the alternative of requiring the escrowing of all fees and expenses applicable to the cases that form the basis of MB's appeal is a preferable option because it not only allows restoration of funds that MB has depleted and will continue to deplete but also protects the confidential nature of the settlements.

---

[1] "As a member of the PSC, BCM was included as 'Participating Counsel' under CMO 6. Doc. 372 at 2-3. As Participating Counsel, BCM agreed to the terms of the 'Participation Agreement'…." Doc. 22162 at 3.

> **i. STAYING DISTRIBUTION OF THE ASSESSMENTS WITHOUT ESCROWING MB'S FEES WOULD REVEAL CONFIDENTIAL SETTLEMENT AMOUNTS.**

MB correctly points out that "The data that [MB] has provided to this Court under seal will enable this Court to enter an order directing the CBFCC in the aggregate what total amount of disputed assessments to hold back." Response at p. 3. However, MB mistakenly claims that providing the total amount would not permit the CBFCC to employ "reverse mathematics" to determine the settlements achieved. *Id.*

The purpose of the confidentiality agreement is to keep the per case settlement average confidential. Providing the CBFCC the aggregate total amount of disputed assessments destroys this purpose. Knowing the assessment fee is 10 percent (8 percent fees/2 percent expenses), and now knowing the total number of cases that are the subject of MB's motion and appeal, the CBFCC may readily determine the per case average. For example:

> Held back assessment: $100
> Assessment:           10%
> Total cases:          5
> Average settlement:   $200 per case (($100 / 0.1) / 5)

Accordingly, because the confidentiality will be breached by revealing the total aggregate amount to be held back from assessments on MB's cases, the CBFCC again requests that *all* fees and expenses be withheld from the subject cases pending final resolution of MB's appeal.

> **ii. STAYING DISTRIBUTION OF THE ASSESSMENTS WITHOUT ESCROWING MB'S FEES WOULD DEPLETE THE COMMON BENEFIT FEES.**

6

As noted in the CBFCC's Motion, reserving all attorneys' fees would create a corpus from which any award of attorneys' fees to replenish the common benefit fees depleted by MB's litigation and appeal of this issue can be funded. Motion at p. 7. In its Response, MB merely states there is no authority for this request. Response at p. 5. This is contrary to the extensive authority cited above, which provides that an MDL Court has broad discretion to use fees as a tool and preserve the status quo on appeal. Absent a bond, and absent the sort of relief requested here, PLC Members appointed by MDL judges (and other participating attorneys in an MDL) would be incentivized to dispute fee assessments. This would be because such a dispute would have leverage to obtain favorable discounts on assessments knowing an appeal would only further deplete the common fund. In other words, a Common Benefit Fees and Costs Committee would always face a lose-lose scenario, as it would be forced to either: (a) litigate the appeal, incurring fees and costs, thereby depleting the common fund, or (b) exempt the disputing attorney's assessment fees, thereby depleting the common fund. Moreover, both scenarios fly in the face of a MDL Court's uniquely necessary inherent power to create a fair compensation scheme for all who work for the common benefit of all plaintiffs.

### B. MB's Response Inaccurately And Inappropriately Frames Its Position As A Fight To Safeguard Clients' Interests.

Rather than advancing additional arguments to contest the CBFCC's arguments on the merits, MB's Response advances inaccurate policy arguments purportedly based on its clients' interests.

MB's Response disingenuously portrays its appeal as a means to safeguard client interests, when in reality, MB's purpose on appeal is to increase its own fee income on

these cases (to the detriment of all other counsel in this litigation).  In other words, MB's Response operates under a fundamental misunderstanding of its client interests—using client interests as a sword and a shield—when the raised client interests would not be affected by an appeal of the fee assessment, only the cost assessment.

For instance, MB asserts, "What is at issue here is not money that would otherwise belong to BCM but rather to the clients in those cases." Response at p. 2.  The Participation Agreement, adopted into the court's record by Case Management Order No. 6 [Doc 372], provides that the litigation expense fund is financed by percentage-based assessments upon the recoveries of counsel to the Participation Agreement.  CMO 6 at p. 9-11.  Only the 2 percent assessment pertains to expenses, which are traditionally born by the client (and here, are a very modest contribution toward substantial expenses which have already been determined to have benefited all Bard IVC filter litigants).[2]  Yet it is reasonable to assess clients 2 percent given the enormous savings each client had in not having to conduct discovery in their own cases.[3]  The fact that MB accessed the trial package containing expert reports and depositions created with common benefit funds more than 5000 times is testament to the benefit it conferred on MB's clients.  The other 8 percent is for attorneys' fees, which must come from MB's attorneys' fee percentage/compensation with its clients.  Hence, MB's motion is largely based on a

---

[2] Indeed, given that MB successfully lobbied the PEC to have attorneys conduct trial testimony preservation depositions for four MDL experts that primarily benefited MB in its post-MDL trials, MB's clients in particular received a vast benefit from MDL work product.  Not only were MB clients able to avoid the expense of presenting those experts for trial testimony (which was substantial), common benefit fee dollars were awarded to the attorneys taking those depositions, including Mr. Martin.

[3] In the extremely unlikely event that MB's appeal is successful, it would be very easy for MB to provide each of its clients with a second check for the 2 percent assessment.

8

fundamental misunderstanding of how common benefit funds are built based on fee and costs assessments in MDL litigation and a lack of familiarity with this Court's orders[4].

Furthermore, MB asserts "it is undisputed that those clients did not themselves agree in any binding manner that the recoveries in their cases would be subject to this Court's authority or jurisdiction."[5] Response at p. 2. While true, this is irrelevant. It is well-established a lawyer can bind his or her client to an agreement. *See, e.g.*, *George Nicolais & Associates, Inc. v. Acquvest, Inc.*, 322 Fed. Appx. 519, 520 (9th Cir. 2009); *Camerican Int'l, Inc. v. L & A Juice Co., Inc.*, 879 F.2d 865 (9th Cir. 1989); *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978). As a party to the Participation Agreement, MB has bound its clients to the terms of that agreement.

Last, MB claims that "clients would suffer if the fee distributions were made now and then, down the road, [MB] wins its Ninth Circuit appeal, leaving no readily available, segregated proceeds from which those clients could recover the dispute fee and cost assessments." Response at p. 4. This argument fails. There are only 31 firms that are receiving common benefit funds. MB is one of them, so all it would be required to do would be to notify those 30 remaining firms of the claim for reimbursement. Indeed, MB has designated these firms as parties to its appeal, so they will already have notice of the Ninth Circuit's decision. But at least, under the CBFCC's method, the onus of collecting

---

[4] Doc.18038 at 4-5. The Court was clear in when it delineated between a plaintiff's common benefit costs assessment (which is did not increase), and payment of a portion of a plaintiff's attorney's fees (common benefit fee assessment) for the attorney's "fair share of the work that secured settlements for their cases."

[5] Interestingly, this quoted language implies this Court lacks jurisdiction; yet, only two sentences later, MB takes the opposite stance and states, "the challenged assessments constitute a *res* over which this Court possesses jurisdiction." Response at p. 2.

9

that would fall on MB and not the CBFCC, avoiding further depletion of common benefit funds.

### III. CONCLUSION

For these reasons, the Court should grant the CBFCC's request for a supersedeas bond encompassing anticipated attorneys' fees, or in the alternative, the CBFCC's request require all fees and cost distributions stayed from the MB settled cases.

RESPECTFULLY SUBMITTED this 1st day of July 2022.

    BEUS GILBERT MCGRODER PLLC

    By: */s/ Mark S. O'Connor*
        Mark S. O'Connor
        701 N. 44th Street
        Phoenix, Arizona 85008
    *Co-Lead Counsel for Plaintiffs/Liaison Counsel to the Common Benefit Fee and Cost Committee*

    THE NATIONS LAW FIRM
        Howard Nations (TX Bar No. 14823000)
        (admitted *pro hac vice*)
        9703 Richmond, Suite 200
        Houston, Texas 77042
        713-807-8400
    *Co-Chair, Common Benefit Fee and Cost Committee*

    LIEFF CABRASER HEIMANN & BERNSTIEN
        Wendy Fleishman (NY Bar No. 2500429)
        (admitted *pro hac vice*)
        250 Hudson Street, 8th Floor
        New York, NY 10013
        212-355-9500
    *Co-Chair, Common Benefit Fee and Cost Committee*

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 1, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

                                        */s/ Jessica Gallentine*

8812316v1/26997-0001